Andrew G. Dietderich
Sharon Cohen Levin
Christopher J. Dunne
Jacob M. Croke
Alexa J. Kranzley
**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, NY 10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

*Counsel to the Authorized Foreign Representatives*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>PRINCE GLOBAL HOLDINGS LIMITED *et al.*,[1]<br><br>Debtors in Foreign Proceedings. | Chapter 15<br><br>Case No. 26-(_____) (__)<br><br>(Joint Administration Requested) |

**VERIFIED PETITION UNDER CHAPTER 15 FOR RECOGNITION OF**
**FOREIGN MAIN PROCEEDINGS AND RELATED RELIEF**

Paul Pretlove, David Standish and James Drury, in their capacities as the authorized foreign representatives (collectively, the "Authorized Foreign Representatives") for Prince Global Holdings Limited and its affiliated debtors (collectively, the "Debtors") regarding the Debtors' provisional liquidation proceedings (the "BVI Proceedings") in the Eastern Caribbean Supreme Court in the BVI High Court of Justice (Commercial Division) (the "BVI Court") pursuant to section 170 of the BVI Insolvency Act, 2003 ("BVI Insolvency Act"), hereby submit this verified petition (the "Verified Petition" and, together with the petitions, the "Petitions") for entry of an

---

[1]   The Debtors in these Chapter 15 Cases are incorporated in the British Virgin Islands and maintain their registered address at Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands, VG1110.  A complete list of the Debtors and their company numbers is attached as Exhibit A.

order, substantially in the form attached hereto as Exhibit B (the "Order"), pursuant to sections 105(a), 362, 1504, 1507, 1509, 1515, 1517, 1519, 1520 and 1521 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code"). In support of the Petitions, the Authorized Foreign Representatives have filed contemporaneously herewith (a) the *Declaration of Paul Pretlove in Support of the (A) Emergency Motion for Entry of Orders Granting (I) Ex Parte Relief and (II) Provisional Relief, Pursuant to Section 1519 of the Bankruptcy Code and (B) the Verified Petition Under Chapter 15 for Recognition of Foreign Main Proceedings and Related Relief* (the "Pretlove Declaration") and (b) the *Declaration of Andrew Barrington Chissick in Support of the (A) Emergency Motion for Entry of Orders Granting (I) Ex Parte Relief and (II) Provisional Relief, Pursuant to Section 1519 of the Bankruptcy Code and (B) the Verified Petition Under Chapter 15 for Recognition of Foreign Main Proceedings and Related Relief* (the "Chissick Declaration"), each of which is incorporated herein by reference along with the exhibits thereto. In further support, the Authorized Foreign Representatives respectfully represent as follows:

**Background**

1. The Debtors were controlled by Chen Zhi and are alleged to be associated with a transnational criminal organization referred to as the "Prince Group," a conglomerate alleged to have engaged in widespread patterns of criminal behavior such as cryptocurrency- and investment-related fraud. Pretlove Declaration ¶¶ 12–18.

2. Following years of reporting by various news outlets and human rights agencies on forced labor and scam compounds in Cambodia with alleged ties to the Prince Group, authorities in multiple jurisdictions launched formal criminal investigations into the Prince Group and its controlling stakeholder, Chen "Vincent" Zhi ("Mr. Chen"). These include an indictment from the U.S. Department of Justice ("DOJ"), a civil forfeiture action and sanctions in the United States, United Kingdom and other jurisdictions. *Id.* ¶¶ 19–31.

3.      On October 14, 2025, the DOJ unsealed an indictment against Mr. Chen, charging him with wire fraud conspiracy and money laundering conspiracy for directing the Prince Group's operation of forced-labor scam compounds across Cambodia that stole billions of dollars from victims in the United States and around the world.  The same day, the U.S. Attorney's Office for the Eastern District of New York and the DOJ's National Security Division filed a civil forfeiture complaint (the "Forfeiture Complaint") in the U.S. District Court for the Eastern District of New York against approximately 127,271 Bitcoin that are proceeds and instrumentalities of Mr. Chen's fraud and money laundering schemes.  *Id.* ¶¶ 19–28.

4.      The U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") and Financial Crimes Enforcement Network ("FinCEN"), alongside the United Kingdom's Foreign, Commonwealth and Development Office, immediately imposed sweeping sanctions on 146 targets within and connected to the Prince Group, including the Debtors, and designated the Prince Group as a "transnational criminal organization" responsible for crimes including online investment scams and the laundering of stolen funds.  *Id.* ¶¶ 28–30.

5.      OFAC alleges that the Debtors were part of the complex network of companies that were used by Mr. Chen and the Prince Group to conceal, hold, transfer and launder proceeds derived from their alleged criminal activities including forced labor, human trafficking, fraud and other serious criminal conduct.  *See id.* ¶¶ 28, 30.

6.      On January 5, 2026, in response to these actions and actions taken by other sovereigns, the Attorney General of the BVI applied, on public interest grounds, to liquidate the Debtors and appoint provisional liquidators while the application for liquidation remained pending. The Debtors include 28 of the Prince Group entities registered in the BVI that were included in

the OFAC sanctions, as well as two other companies identified in the Forfeiture Complaint.  *Id.* ¶¶ 30, 40.

7.      The appointment of the joint provisional liquidators was necessary to (i) divest Mr. Chen and his associates of control of the Debtors and prevent further use of the Debtors as vehicles for criminal activity, (ii) identify and preserve the Debtors' assets, (iii) conduct thorough investigations into past transactions, and (iv)  review banking records, asset transfers, and corporate dealings to identify and locate the potential money laundering activities.  *Id.* ¶ 43.

8.      Between January 9 and January 14, 2026, the Honourable Justice Abbas Mithani of the BVI Court found that it was just, equitable and in the public interest that provisional liquidators be appointed for the Debtors and granted *ex parte* orders for the appointment of the Authorized Foreign Representatives from Interpath as joint provisional liquidators (the "BVI Orders").

9.      The BVI Orders allow the Authorized Foreign Representatives, as court-appointed officers, to take control of the Debtors, carry out a full investigation of their affairs and use the tools available to them to trace, secure and preserve their assets.  Further, the BVI Orders grant the Authorized Foreign Representatives the rights and powers of a liquidator, as described by the BVI Insolvency Act, "to the extent necessary to maintain the value of the assets owned by the [Debtors] and to carry out the functions for which they are appointed."  BVI Orders ¶¶ 2–3.[2]

10.     Additionally, the Authorized Foreign Representatives are entitled to take further steps in accordance with the BVI Orders.  The BVI Orders provide the Authorized Foreign Representatives with the ability to conduct discovery, investigate and wrest control of assets from the prior stakeholders. BVI Orders ¶ 3(i).  Pursuant to the BVI Orders, the Authorized Foreign Representatives have commenced an investigation of the Debtors' financial affairs.   The Authorized Foreign

---

[2]     The text of each of the 30 BVI orders is identical.

Representatives have also retained, among other advisors, Sullivan & Cromwell LLP ("S&C") to assist in the provisional liquidation.

11.     The Authorized Foreign Representatives and S&C have investigated the organizational structure of the Prince Group and its subsidiaries, directors and assets.

12.     The purpose of chapter 15 of the Bankruptcy Code is to provide effective mechanisms for dealing with cases of cross-border insolvency, with the express objectives of: (i) cooperation between United States courts, trustees, examiners, debtors, debtors-in-possession and the courts and other competent authorities of foreign countries; (ii) greater legal certainty for trade and investment; (iii) fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, shareholders and other interested entities, including the debtor; (iv) the protection and maximization of the debtor's assets; and (v) the facilitation of the rescue of financially troubled businesses.  11 U.S.C. §§ 1501(a)(1)–(5); *see In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399, 413 (Bankr. S.D.N.Y. 2014).  To that end, the Authorized Foreign Representatives request recognition of the BVI Proceedings as foreign main proceedings to obtain this Court's assistance in facilitating the Authorized Foreign Representatives' efforts to identify, secure, protect and trace assets held by the Debtors or on their behalf and in investigating the Debtors' businesses, financial affairs and potential claims against third parties.

13.     Recognition of the BVI Proceedings as foreign main proceedings would confer upon the Debtors the protections afforded by sections 362 and 1520 of the Bankruptcy Code, thereby preventing any bad actors from taking steps to abscond with property of the Debtors in the United States or otherwise interfering with the BVI Proceedings and implementation of the BVI Orders.

**Jurisdiction, Eligibility, and Venue**

14.     The Court has jurisdiction to consider this Verified Petition pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* M-431 from the U.S. District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.).

15.     These chapter 15 cases ("Chapter 15 Cases") have been properly commenced with respect to each of the Debtors in accordance with sections 1504, 1509(a) and 1515 of the Bankruptcy Code by the filing of the Petitions.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1410(1), as each of the Debtors has a ratable interest in an advance payment retainer of $25,000 held by S&C in a client trust account in New York, New York.

17.     The presence of property within the United States renders each of the Debtors eligible to file these Chapter 15 Cases pursuant to section 109(a) of the Bankruptcy Code.  *See In re Barnet*, 737 F.3d 238, 247–51 (2d Cir. 2013) (applying the property requirement of section 109(a) to chapter 15 cases); *Suntech*, 520 B.R. at 411 (same); *In re Serviços de Petróleo Constellation S.A.*, 600 B.R. 237, 268–69 (Bankr. S.D.N.Y. 2019) (finding that a per-entity retainer in New York bank accounts satisfied section 109(a)); *In re Octaviar Admin. Pty Ltd.*, 511 B.R. 361, 372–74 (Bankr. S.D.N.Y. 2014) (same).

**Relief Requested**

18.     The Authorized Foreign Representatives request that this Court enter the Order, pursuant to sections 105(a), 362, 1504, 1507, 1509, 1515, 1517, 1519, 1520 and 1521 of the Bankruptcy Code:

    a.   granting the Petitions in these Chapter 15 Cases and recognizing the BVI Proceedings as "foreign main proceedings" for each of the Debtors pursuant to

section 1517 of the Bankruptcy Code, and granting all relief afforded to foreign main proceedings under section 1520 of the Bankruptcy Code;

b. finding that the Authorized Foreign Representatives are the duly appointed "foreign representatives" of each of the Debtors within the meaning of section 101(24) of the Bankruptcy Code and are authorized to act on behalf of each Debtor in these Chapter 15 Cases;

c. providing that the BVI Orders are recognized, granted comity and entitled to full force and effect in accordance with their terms, and that such terms shall be binding and fully enforceable in the United States, and entrusting the Authorized Foreign Representatives with the administration or realization of all of the Debtors' assets within the territorial jurisdiction of the United States, including prosecution of any causes of action belonging to the Debtors;

d. waiving the 14-day stay of effectiveness of the Order; and

e. granting such other and further relief as the Court deems just and proper.

## Basis for Relief

19. Under section 1517(a) of the Bankruptcy Code, subject to the public policy exception contained in section 1506, a court shall enter an order recognizing a foreign proceeding if each of the following three requirements are met: (i) such foreign proceeding is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502; (ii) the foreign representative applying for recognition is a person or body; and (3) the petition meets the requirements of section 1515. 11 U.S.C. § 1517(a); *see In re Olinda Star Ltd.*, 614 B.R. 28, 45 (Bankr. S.D.N.Y. 2020); *In re Ocean Rig UDW Inc.*, 570 B.R. 687, 698–99 (Bankr. S.D.N.Y. 2017).

20. As set forth below, each of the requirements of section 1517(a) is satisfied for each of the Debtors, and the BVI Proceedings should be recognized as foreign main proceedings. The BVI Proceedings are provisional liquidation proceedings commenced in the public interest pursuant to section 170 of the BVI Insolvency Act under the supervision of the BVI Court. The Authorized Foreign Representatives are the duly appointed foreign representatives of each of the

Debtors.  Recognition does not contravene U.S. public policy; rather, it advances U.S. policy interests by facilitating cooperation with U.S. regulatory and law enforcement authorities and by supporting the tracing, recovery and preservation of assets that may ultimately be available for the benefit of those harmed by the conduct attributed to the Prince Group.

**A.      The BVI Proceedings Are "Foreign Proceedings"**

21.      Section 101(23) requires that a "foreign proceeding" be (i) either judicial or administrative in character, (ii) collective in nature, (iii) pending in a foreign country and authorized or conducted under a law related to insolvency or the adjustment of debts, (iv) a proceeding in which the debtor's assets and affairs are subject to the control or supervision of a foreign court and (v) for the purpose of reorganizing the debtor or liquidating its assets.  11 U.S.C. § 101(23).

22.      Each of the BVI Proceedings satisfies each of these elements.  They are judicial proceedings pending in the BVI, commenced under the BVI Insolvency Act—a law relating to insolvency— in which the assets and affairs of the Debtors are subject to the control and supervision of the BVI Court through the appointment of the Authorized Foreign Representatives as joint provisional liquidators, pending the determination of the underlying applications for liquidation.  The BVI Proceedings are also collective in nature.  They were commenced in the public interest and are not directed toward the enforcement of the rights of any single creditor or stakeholder.  Rather, they are intended to (i) centralize control of the Debtors' affairs under court supervision, (ii) preserve the Debtors' assets, (iii) facilitate investigation of the Debtors' activities and transactions and (iv) enable coordinated administration and recovery.  *See* Chissick Declaration ¶¶ 56–58.

23.      This Court has consistently recognized BVI and other similar offshore provisional liquidation proceedings as foreign proceedings under chapter 15 of the Bankruptcy Code.  *See,*

-8-

*e.g.*, *Olinda Star*, 614 B.R. at 40–41 (recognizing BVI provisional liquidation as a foreign proceeding); *Ocean Rig*, 570 B.R. at 701–02 (recognizing Cayman Islands provisional liquidation as a foreign proceeding); *Suntech*, 520 B.R. at 416–20 (recognizing Cayman Islands provisional liquidation as a foreign proceeding); *In re Fleming Int'l Reinsurance Ltd.*, No. 25-12353 (JPM) [D.I. 39] (Bankr. S.D.N.Y. Nov. 20, 2025) (recognizing Bermuda provisional liquidation as a foreign proceeding); *In re Northeast Ins. Co. Ltd.*, No. 25-12275 (MEW) [D.I. 9] (Bankr. S.D.N.Y. Nov. 17, 2025) (recognizing Bermuda provisional liquidation as a foreign proceeding).

**B.      The BVI Proceedings Qualify as "Foreign Main Proceedings"**

24.      The BVI Proceedings satisfy the definition of "foreign main proceeding" as set forth in section 1502(4) of the Bankruptcy Code.  This section defines a "foreign main proceeding" as "a foreign proceeding pending in the country where the debtor has the center of its main interests."  11 U.S.C. § 1502(4).

25.      While the Bankruptcy Code does not define "center of main interests" ("COMI"), section 1516(c) provides that, in the absence of evidence to the contrary, a non-individual debtor's registered office "is presumed to be the center of the debtor's main interests."  11 U.S.C. § 1516(c); *In re Gerova Fin. Grp., Ltd.*, 482 B.R. 86, 91 (Bankr. S.D.N.Y. 2012).  *See also* H.R. Rep. No. 109-31, pt. 1, at 112–13 (2005) ("The presumption that the place of the registered office is also the center of the debtor's main interest is included for speed and convenience of proof where there is no serious controversy.").

26.      The relevant time for determining a debtor's COMI is the date on which the chapter 15 petition is filed.  *See In re Fairfield Sentry Ltd. (Fairfield II)*, 714 F.3d 127, 137 (2d Cir. 2013). To the extent that a debtor's COMI has shifted prior to filing, courts may conduct a more "holistic analysis" to ensure that a debtor did not manipulate its COMI in bad faith.  *Ocean Rig*, 570 B.R.

-9-

at 704; *Fairfield II*, 714 F.3d at 137 (examining period between commencement of foreign proceeding and chapter 15 filing to ascertain whether COMI was improperly manipulated).

27.     Each Debtor's registered office is located in the BVI and has been since each Debtor's incorporation.  Moreover, the BVI Proceedings were not initiated by the Debtors or their former controllers, but by the BVI Attorney General acting in the public interest, negating any inference of COMI manipulation.  Accordingly, each Debtor is entitled to the statutory presumption that its COMI is located in the BVI.

28.     Even apart from the statutory presumption, the multi-factor analysis employed by courts in this District confirms that each Debtor's COMI is located in the BVI.  Courts have identified several non-exclusive factors relevant to the COMI determination, including the location of those who actually manage the debtor and the jurisdiction whose law would apply to most disputes.  *See In re SPhinX, LTD.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006); *Fairfield II*, 714 F.3d at 130.  These factors are not to be applied mechanically, and no single factor is dispositive. *Fairfield II*, 714 F.3d at 137.  Where, as here, a debtor is an entity with no fixed operations in any single jurisdiction, courts generally look to the jurisdiction under whose court supervision the provisional liquidation, liquidation or winding up of the debtor's affairs is being administered. *See Olinda Star*, 614 B.R. at 42; *Suntech*, 520 B.R. at 417–18; *In re Fairfield Sentry Ltd.*, No. 10 Civ. 7311 (GBD), 2011 WL 4357421 (S.D.N.Y. 2011), at *10–16; *In re Betcorp Ltd.,* 400 B.R. 266, 292 (Bankr. D. Nev. 2009).  The Authorized Foreign Representatives were appointed by the BVI Court, derive their authority exclusively from the BVI Orders, are officers of the BVI Court and are required to report to and are supervised by the BVI Court.  The BVI is the jurisdiction whose law governs the Debtors' corporate existence, the provisional liquidation and the

Authorized Foreign Representatives' powers and obligations. *See* Chissick Declaration ¶¶ 24, 49–52; BVI Orders ¶¶ 1–3, 14.

29. Furthermore, pursuant to section 245 of the BVI Business Companies Act, 2004, the situs of the ownership of shares of a BVI company is deemed to be in the BVI. *See* Chissick Declaration ¶ 60. As each Debtor was incorporated under the laws of the BVI as a company limited by shares, the BVI is the situs of the ownership of each Debtor's shares.

30. Courts also consider whether a debtor's COMI is ascertainable by third parties. *See Fairfield II*, 714 F.3d at 130. Here, third parties can ascertain that the BVI is the Debtors' COMI: the Debtors are incorporated in the BVI, the BVI Proceedings are pending and publicly noticed and the Authorized Foreign Representatives have been appointed by the BVI Court as officers of the BVI Court.

31. Accordingly, the COMI of each of the Debtors is in the BVI, and the BVI Proceedings should be recognized as foreign main proceedings pursuant to section 1517(b)(1) of the Bankruptcy Code.

**C.     The Authorized Foreign Representatives Are "Foreign Representatives" Under Section 101(24) of the Bankruptcy Code**

32. Section 101(24) of the Bankruptcy Code defines a "foreign representative" as a person or body authorized in a foreign proceeding to administer the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding. 11 U.S.C. § 101(24). The Authorized Foreign Representatives—Paul Pretlove, David Standish and James Drury—are each individuals appointed by the BVI Court as joint provisional liquidators of the Debtors. BVI Orders ¶ 1. They are officers of the BVI Court, and their authority to act on behalf of the Debtors derives exclusively from the BVI Orders, which expressly authorize them to seek recognition of their

appointment in this Court and in other jurisdictions.  BVI Orders ¶ 3(c); Chissick Declaration ¶¶ 49–51.

33.    This Court and other courts have consistently recognized offshore provisional liquidators as "foreign representatives" within the meaning of section 101(24).  *See, e.g.*, *Olinda Star*, 614 B.R. at 45 (finding a BVI joint provisional liquidator to be a proper "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code); *Ocean Rig*, 570 B.R. at 701 (finding Cayman court-appointed JPLs to be foreign representatives); *Fleming*, No. 25-12353 (JPM) at *3 [D.I. 39] (finding Bermuda JPLs to be foreign representatives); *Northeast*, No. 25-12275 (MEW) [D.I. 9] (same).

**D.    The Petitions Satisfy the Requirements of Section 1515**

34.    Section 1515 of the Bankruptcy Code requires that a petition for recognition be accompanied by evidence of the foreign proceeding and the appointment of the foreign representative, together with a statement identifying all known foreign proceedings with respect to the debtor.  11 U.S.C. § 1515(b), (c).

35.    The Authorized Foreign Representatives have satisfied each of these requirements. Certified copies of the BVI Orders—the orders commencing the BVI Proceedings and appointing the Authorized Foreign Representatives as joint provisional liquidators of the Debtors—were filed with the Petitions, and a statement confirming that the BVI Proceedings are the only known pending foreign proceedings with respect to the Debtors was also submitted.

**E.    Recognition Would Not Be Manifestly Contrary to U.S. Public Policy**

36.    Section 1506 of the Bankruptcy Code provides that a court may decline to grant relief if the action would be "manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506.  This public policy exception is "narrowly construed."  *In re Sino-Forest Corp.*, 501 B.R. 655, 665 (Bankr. S.D.N.Y. 2013).  *See also In re Toft*, 453 B.R. 186, 195

(Bankr. S.D.N.Y. 2011) ("[T]hose courts that have considered the public policy exception codified in [section] 1506 have uniformly read it narrowly and applied it sparingly. . .").

37.     Far from contravening U.S. public policy, recognition of the BVI Proceedings affirmatively advances U.S. policy interests.  The BVI Proceedings were commenced in the public interest by the BVI Attorney General to divest a designated transnational criminal organization of control over the Debtors and to preserve assets for the benefit of those harmed by the conduct attributed to the Prince Group—objectives directly aligned with the enforcement actions of the DOJ, OFAC, and FinCEN.

38.     The Authorized Foreign Representatives have actively engaged with U.S. law enforcement and regulatory authorities, and those engagements have been productive.  *See* Pretlove Declaration ¶ 48.  Recognition will facilitate continued coordination between the Authorized Foreign Representatives and U.S. authorities, support the objectives of the U.S. sanctions regime through court-supervised administration by independent, licensed insolvency practitioners and enable the tracing and preservation of the Debtors' assets, including assets within the United States.

**F.      The Debtors are Entitled to Automatic Relief**

39.     Recognition of a foreign main proceeding triggers the automatic protections set forth in section 1520(a) of the Bankruptcy Code—most critically, the application of the automatic stay under section 362(a) to the Debtors and their property within the territorial jurisdiction of the United States.  11 U.S.C. § 1520(a).

40.     These protections are of particular importance here, where persons associated with Mr. Chen have already taken affirmative steps to interfere with the Authorized Foreign Representatives' powers and duties under the BVI Orders and have expressly threatened litigation in the United States.  *See* Pretlove Declaration ¶¶ 54–59.  Accordingly, the Authorized Foreign

Representatives request that the Court confirm the applicability of these protections upon entry of the Order.

**G.     Additional Relief is Necessary and Appropriate**

41.     Upon recognition of the BVI Proceedings, whether as foreign main or nonmain proceedings, this Court may grant "any appropriate relief" under section 1521(a) of the Bankruptcy Code where necessary to effectuate the purpose of chapter 15 and to protect the Debtors' assets or the interests of creditors.  11 U.S.C. § 1521(a).  Such relief must ensure that the interests of creditors and other interested entities are sufficiently protected.  11 U.S.C. § 1522(a); *In re CGG S.A.*, 579 B.R. 716, 720 (Bankr. S.D.N.Y. 2017) (stating that relief under section 1521 of the Bankruptcy Code will only be granted if the "interests of the Foreign Debtor, its creditors and shareholders" are "sufficiently protected" under section 1522 of the Bankruptcy Code); *In re Rede Energia S.A.*, 515 B.R. 69, 94 (Bankr. S.D.N.Y. 2014) (same).

42.     The additional relief requested here is necessary and appropriate.  If the Court were to enter the Order without granting the BVI Orders comity, this would unduly restrict the reach of the BVI Orders at a time when persons associated with Mr. Chen are actively seeking to interfere with the Authorized Foreign Representatives' powers and duties under the BVI Orders.  *See* Pretlove Declaration ¶¶ 54–60. Likewise, if the Court were to enter the Order without entrusting the Authorized Foreign Representatives with the administration and realization of the Debtors' property in the United States, the Authorized Foreign Representatives would be unable to adequately protect and maximize the value of such assets.

1.     The BVI Orders Should Be Granted Comity

43.     The Authorized Foreign Representatives request that this Court recognize and enforce the BVI Orders within the territorial jurisdiction of the United States.

-14-

44.     In determining whether to extend comity to a foreign court order, courts consider whether the foreign forum provided a full and fair proceeding before a court of competent jurisdiction, under a system of jurisprudence likely to secure an impartial administration of justice. *See Hilton* v. *Guyot*, 159 U.S. 113, 202–03 (1895) ("The principle upon which I think our enforcement of foreign judgments must proceed is this: that in a court of competent jurisdiction, where according to its established procedure, the whole merits of the case were open, at all events, to the parties, however much they may have failed to take advantage of them") (quoting Lord Herschell in the House of Lords); *In re Atlas Shipping A/S*, 404 B.R. 726, 733 (Bankr. S.D.N.Y. 2009) ("Federal courts generally extend comity whenever the foreign court had proper jurisdiction and enforcement does not prejudice the rights of United States citizens or violate domestic public policy") (internal citations omitted); *JP Morgan Chase Bank* v. *Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 424 (2d Cir. 2005) ("Deference to the foreign court is appropriate so long as the foreign proceedings are procedurally fair and . . . do not contravene the laws or public policy of the United States.").

45.     Principles of comity "strongly counsel approval of enforcement in the United States of [provisions in foreign court orders], even if those provisions could not be entered in a plenary chapter 11 case." *In re Metcalfe & Mansfield Alt. Invs.*, 421 B.R. 685, 696 (Bankr. S.D.N.Y. 2010). U.S. bankruptcy courts are "not required to make an independent determination about the propriety of individual acts of a foreign court"—rather, comity should be extended so long as the foreign proceeding "comports with our notions of procedural fairness." *Id.* at 697; *In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*, 238 B.R. 25, 59 (Bankr. S.D.N.Y. 1999), *aff'd sub nom. In re Petition of Bd. of Dirs. of Hopewell Int'l Ins., Ltd.*, 275 B.R. 699 (S.D.N.Y. 2002).

46. The BVI Orders satisfy this standard. The BVI is a British Overseas Territory with an English-style common law legal system based upon the doctrine of precedent. *See* Chissick Declaration ¶¶ 26–27. The BVI Proceedings were commenced on the application of the BVI Attorney General in the public interest, heard on an *ex parte* basis by the Honourable Justice Abbas Mithani, and resulted in the appointment of independent, licensed insolvency practitioners as officers of the BVI Court. The BVI Orders have since been continued on an *inter partes* basis, and any party with a legitimate interest may apply to the BVI Court to vary or discharge them. *See* Chissick Declaration ¶ 23; BVI Orders ¶¶ 15–16. The BVI Proceedings afford all interested parties access to a sophisticated insolvency regime administered by an impartial court in accordance with fundamental standards of due process. Granting comity to the BVI Orders will ensure that the Authorized Foreign Representatives' authority under those orders is recognized and enforceable within the United States. *See* Pretlove Declaration ¶¶ 62–66.

2. Entrustment is Warranted

47. The Authorized Foreign Representatives request that the Court entrust them with the administration and realization of all of the Debtors' assets within the territorial jurisdiction of the United States pursuant to section 1521(a)(5) of the Bankruptcy Code and to the extent authorized by the BVI Court.

48. Persons associated with Mr. Chen have purported to appoint competing directors of 25 of the Debtors, and counsel retained by those individuals has expressly threatened litigation in the United States to challenge the Authorized Foreign Representatives' authority and asset realization efforts. *See* Pretlove Declaration ¶¶ 55–58.

49. An order entrusting the Authorized Foreign Representatives with sole authority over the Debtors' U.S. assets will eliminate any ambiguity as to who is authorized to act on behalf

-16-

of the Debtors in the United States and foreclose the ability of adverse actors to interfere with the court-supervised administration of the Debtors' estates.

**H.  Waiver of the 14-Day Stay of Effectiveness Should Be Granted**

50.  The Authorized Foreign Representatives request that the Court cause the Order to become effective immediately upon entry, notwithstanding the 14-day stay of effectiveness imposed by the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), including Bankruptcy Rules 1018, 7062 and 9014.

51.  The facts and circumstances of these Chapter 15 Cases demand immediate relief. Persons associated with Mr. Chen have already taken affirmative steps to interfere with the Authorized Foreign Representatives' powers and duties under the BVI Orders, including by purporting to appoint competing directors and threatening to commence litigation in the United States. *See* Pretlove Declaration ¶¶ 55–58.  A hearing on applications seeking to discharge the BVI Orders is scheduled for April 16 and 17, 2026 in the BVI.  *See* Chissick Declaration ¶ 46. Any delay in the effectiveness of the Proposed Order may create a window during which adverse actors could take steps to dissipate or divert the Debtors' assets in the United States before the protections of recognition take effect.

52.  This Court routinely grants waivers of the 14-day stay of effectiveness in chapter 15 cases.  *See, e.g.*, *Fleming*, No. 25-12353 (JPM) [D.I. 39]; *Northeast*, No. 25-12275 (MEW) [D.I. 9]; *In re Yuzhou Grp. Holdings Co. Ltd.*, No. 24-11441 (LGB) [D.I. 26] (Bankr. S.D.N.Y. May 2, 2025); *In re New Look Secured Issuer plc*, No. 19-11005 (SMB) [D.I. 14] (Bankr. S.D.N.Y. May 3, 2019); *In re Lehman Brothers Int'l (Europe) (in administration)*, No. 18-11470 (SCC) [D.I. 15] (Bankr. S.D.N.Y. June 19, 2018); *CGG S.A.*, No. 17-11636 (MG) [D.I. 25].

**Notice**

53.     Notice of this Verified Petition will be provided to (a) the Debtors; (b) the United States Trustee for the Southern District of New York; (c) the United States Attorney for the Southern District of New York; (d) the United States Attorney for the Eastern District of New York; (e) the United States Department of the Treasury's Office of Foreign Assets Control; (f) the United States Department of Justice; (g) the United States Department of the Treasury's Financial Crimes Enforcement Network; (h) all parties that have filed a notice of appearance in these Chapter 15 Cases; and (i) all parties required to be given notice under Bankruptcy Rule 2002(q)(1) of which the Authorized Foreign Representatives are aware.  The Authorized Foreign Representatives submit that no other or further notice of this Verified Petition is necessary or required.

**No Prior Request**

54.     No prior request for the relief sought in this Verified Petition has been made to this or any other court.

WHEREFORE, for the foregoing reasons, the Authorized Foreign Representatives respectfully request entry of the Order attached hereto as Exhibit B, (i) recognizing the BVI Proceedings as foreign main proceedings, (ii) recognizing the Authorized Foreign Representatives as the Debtors' foreign representatives, (iii) granting additional relief under section 1521, (iv) waiving the 14-day stay of effectiveness of the Order and (v) granting such other and further relief as the Court deems just and proper.

Dated: April 8, 2026                          Respectfully submitted,
New York, New York

/s/ *Andrew G. Dietderich*
Andrew G. Dietderich
Sharon Cohen Levin
Christopher J. Dunne
Jacob M. Croke
Alexa J. Kranzley
**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile:  (212) 558-3588
Email:  dietdericha@sullcrom.com
levinsc@sullcrom.com
dunnec@sullcrom.com
crokej@sullcrom.com
kranzleya@sullcrom.com

*Counsel to the Authorized Foreign Representatives*

## VERIFICATION OF PETITION

Paul Pretlove, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury as follows:

I am a managing director of Interpath Ltd and a duly appointed joint provisional liquidator of the Debtors. As such, I have full authority to verify the foregoing Verified Petition on behalf of the Debtors.

I have read the foregoing Verified Petition, and I am informed and believe that the factual allegations contained therein are true and accurate to the best of my knowledge, information and belief.

Executed this 8th day of April, 2026 in London, UK.

Paul Pretlove
Joint Provisional Liquidator and Authorized
Foreign Representative of the Debtors