# <u>EXHIBIT C</u>

## BVI Orders

26-10769-mg    Doc 3-3    Filed 04/08/26    Entered 04/08/26 22:20:25    Exhibit C - BVI Orders    Pg 1 of 450



**FILED**
HIGH COURT
**TERRITORY OF**
**THE VIRGIN ISLANDS**

**Case Number :BVIHCOM2026/0003**

**Submitted Date:13/01/2026 09:39**

**Filed Date:13/01/2026 09:39**

**Fees Paid:0.00**



Case Number :BVIHCOM2026/0003

FILED
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0003

Submitted Date:12/01/2026 14:5

Filed Date:12/01/2026 14:58

Fees Paid:0.00

BETWEEN:

IN THE MATTER OF AMBER HILL VENTURES LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

Applicant

-v-

AMBER HILL VENTURES LIMITED

Respondent

---

ORDER ON APPLICATION FOR JOINT PROVISIONAL LIQUIDATORS

---

BEFORE:     THE HONOURABLE JUSTICE ABBAS MITHANI

DATED:       THE 9th DAY OF JANUARY, 2026

ENTERED:   THE 12th DAY OF JANUARY, 2026

PENAL NOTICE

The effect of this Order is that the directors, former directors, office holders and former office holders of the Respondent, AMBER HILL VENTURES LIMITED ("the Company") are replaced by the joint provisional liquidators and that the directors, former directors, office holders and former office holders are prohibited from taking any action in relation to the Company's affairs without prior consent of the joint provisional liquidators.

If you, the directors, former directors, office holders and former office holders of the Company fail to comply with the terms of this order, proceedings may be commenced against you for contempt of court and you may be liable to be imprisoned, fined or have your assets seized.

**This order must be complied with by any person affected by it upon whom it is served. Any other person who knows of this order and does anything which helps or permits the directors, former directors, office holders and/or former office holders of the Company to breach its terms may also be held to be in contempt of Court and may be imprisoned, fined or have their assets seized.**

**UPON THE ORDINARY APPLICATION** filed by the Applicant on 5 January 2026 seeking the appointment of James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110, Paul Pretlove and David Standish, both eligible overseas insolvency practitioner of Interpath Ltd, 10 Fleet Place, London EC4M 7RB, England as joint provisional liquidators of the Company pursuant to section 170 of the Insolvency Act 2003, (**"the Application"**) coming on for hearing.

**AND UPON HEARING** Paul B. Dennis K.C. and with him Nadine Whyte Laing and Koya Ryan of O'Neal Webster for the Applicant.

**AND UPON** the Attorney General Dawn J. Smith being present.

**AND UPON** Mr. Paul Pretlove and Mr. James Drury, two of the proposed joint provisional liquidators being present.

**AND UPON READING** the Application, the originating application to appoint liquidators of the Company, the first affidavit of the Attorney General, the affidavit of Jeni-Lee Watson and the other documents on the Court file.

**AND UPON** the Application being heard ex parte.

**IT IS HEREBY ORDERED THAT:**

1.    James Drury, Paul Pretlove and David Standish be appointed jointly and severally as provisional liquidators (the **"Joint Provisional Liquidators"**) of the Company until further order.

2.    The Joint Provisional Liquidators have the rights and powers of a liquidator to the extent necessary to maintain the value of the assets owned by the Company and to carry out the functions for which they are appointed.

3. In addition to the powers outlined in 2 above, the Joint Provisional Liquidators shall have the following specific powers which may be exercised without further sanction or intervention of this Honourable Court:

   a. to gain entry to the Company's premises and take possession of and preserve the books and records of the Company;

   b. to identify any assets which may remain in the possession or control of the Company, and to take such steps as may be necessary to protect any such assets from removal or dissipation;

   c. to seek the recognition (or its equivalent) of the appointment of the Joint Provisional Liquidators in the United States, United Kingdom, Singapore, Hong Kong, Taiwan Thailand and Cambodia or elsewhere for the purposes of securing, realising and remitting assets to the control of the Joint Provisional Liquidators and for the purpose of obtaining access to and control of the records of the Company;

   d. to commence, continue, discontinue or defend, including by way of counterclaim or similar response, any action or other legal proceedings in the name and on behalf of the Company in so far as necessary to protect the assets and information of the Company including:

      (i) issuing proceedings against the directors, former directors, office holders and former office holders of the Company, if so advised.

      (ii) intervening (if so advised) in ongoing proceedings which involve the Company and/or its directors, former directors, office holders and/or its former office holders.

   e. to vote the shares of the Company in order to prevent the dissipation of its assets.

   f. to carry on the business of the Company so far as may be necessary for its beneficial provisional liquidation;

   g. to take all necessary steps to obtain from any person documents or copy documents which belong to the Company or have been created or maintained on its behalf or which the Company has a right to obtain or inspect.

   h. to appoint an agent including a solicitor, or accountant to do any business that the Joint Provisional Liquidators are unable to do themselves in discharge of their duties, or which can be more conveniently done by an agent;

i. to investigate the affairs of the Company so far as necessary to protect and, if necessary, retrieve the assets and records of the Company;

j. to retain, manage and operate the existing bank accounts of the Company including, without limitation, the power to change, remove and replace the signatories of these accounts and, where necessary, to open new bank accounts;

k. The Joint Provisional Liquidators may draw down payments on account of their remuneration, expenses and disbursements from time to time at a rate of 80% of their time costs and 100% of their expenses and disbursements, subject to these being subsequently approved by the court, and in the event that such sums are not approved, the unapproved sums be repaid to the Company within 7 days;

l. to apply to the Court for directions concerning any matter arising out of the exercise of the above powers; and

m. to do all other things as may be incidental to the exercise of the above functions and powers.

n. to consult and share information with the Applicant to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company.

o. to cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4. The Joint Provisional Liquidators are authorised and directed to implement the protocol for consultation and information sharing between them and the Applicant in the draft which is attached hereto **("the Protocol")**.

5. Any disclosure of information by the Joint Provisional Liquidators to the Applicant made in good faith and in accordance with the Protocol shall be deemed authorised by the Court and shall not constitute a breach of duty, confidence, data protection obligations or contractual restrictions binding upon the Company.

6. The Joint Provisional Liquidators shall not be required to disclose material subject to legal professional privilege or litigation privilege.

7.   The Joint Provisional Liquidators and the Applicant have liberty to apply on short notice for directions, variation or termination of the Protocol.

8.   The costs of the provisional liquidation, including the proper fees and disbursements of the Joint Provisional Liquidators and the Applicant's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

9.   The powers set out in paragraph 3 above are to the exclusion of any power exercised or purported to be exercised by any existing director of the Company in so far as such power concerns the affairs of the Company and its assets within the jurisdiction of the Virgin Islands.

10.   Save as provided in paragraph 3 above the Joint Provisional Liquidators may not exercise any of the powers set out at Schedule 2 to the Insolvency Act, 2003 without sanction of the court.

11.   Pursuant to section 174 of the Insolvency Act, 2003 alternatively pursuant to the inherent jurisdiction of the Court, all actions, suits or proceedings of any nature whatsoever against the Company be and are hereby restrained until further order of the Court.

12.   During the period of their appointment, any act required or authorized to be done by the Joint Provisional Liquidators may be done by any one or more of them.

13.   This order was made at a hearing without notice to the respondent.  There will be a further hearing in respect of the order on or before *29th January 2026* with a time estimate of 30 minutes, for directions only (**the Return Date**).

14.   The Joint Provisional Liquidators are to file and serve a report within one clear day before the Return Date summarising steps taken, any immediate concerns and recommended next steps.

15.   The Company is at liberty to apply to vary or discharge the order upon giving 72 hours' notice to the Applicant and the Joint Provisional Liquidators.

16.   The Joint Provisional Liquidators are at liberty to apply to vary or discharge the order if the allegations set out above are not substantiated or for some other reason upon giving 72 hours' notice to the Applicant and the Company.

17.   The Applicant is not required to give an undertaking in damages.

18.   The costs of this Application be costs in the provisional liquidation.

19.   The Joint Provisional Liquidators are not required to pay or provide security.

BY THE COURT

_____

REGISTRAR

**Protocol for Consultation and Information-Sharing Between the Liquidators and the Attorney General**

This Protocol is annexed to and forms part of the Order of the BVI Commercial Court (the **Court**) made on 9 January 2026 in Claim No. BVIHC (COM) 2026/0003 **("the Order")**. Capitalised terms bear the meanings given in the Order unless the context otherwise requires.

### 1. *Purpose and status*

This Protocol sets out a consultative framework between the Liquidators and the Attorney General to facilitate effective cooperation in the public interest, including in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of Amber Hill Ventures Limited **("the Company")** For the avoidance of doubt, this Protocol is made pursuant to and with the approval of the Court, and disclosures made in good faith in accordance with this Protocol are deemed authorised by the Court.

### 2. *Guiding principles*

The Liquidators shall remain independent and act in the interests of the Company's creditors as a whole and the integrity of the winding up. The Attorney General's participation under this Protocol is consultative and does not fetter the Liquidators' statutory powers or duties, nor the Attorney General's independent functions. Both parties shall conduct themselves with candour, proportionality and respect for legal professional privilege, confidentiality, data protection and rule of law.

Nothing in this Protocol is intended to limit or restrict the ability of the Company's stakeholders to constitute a creditors' committee.

### 3. *Definitions*

- Attorney General means the Attorney General of the Virgin Islands and includes designated officers acting on the Attorney General's behalf for the purposes of this Protocol.
- The Company means Amber Hill Ventures Limited which is the subject of the Order.
- Confidential Information means non-public information concerning the Company, the liquidation, related investigations, counterparties and assets, including personal data and material subject to confidentiality obligations owed by the Company or the Liquidators.

- Privileged Material means material subject to legal professional privilege or litigation privilege, or any analogous protection recognised by the Court.

### 4. Appointment and representation

The Attorney General shall constitute a consultative committee and may nominate up to three designated representatives for liaison with the Liquidators, with at least one senior contact identified (the **AGs Committee**). The Attorney General may change representatives on notice to the Liquidators.

The AGs Committee shall serve alongside any creditors' committee (if one is formed), and the Liquidators shall have equal regard to the views expressed by both the AGs Committee and the creditors' committee (if formed).

### 5. Consultation framework

5.1 Meetings. The Liquidators shall convene regular consultation meetings (in person or virtual) with the Attorney General not less than once per quarter, and ad hoc meetings as reasonably required. The Liquidators shall chair meetings and circulate a brief agenda in advance. These meetings may be consolidated with meetings of the creditors' committee (if one is formed).

5.2 Attendance. The Liquidators may invite professional advisers and members of the liquidation team. The Attorney General may invite relevant law enforcement or regulatory personnel, provided confidentiality undertakings are observed.

5.3 Minutes. The Liquidators shall keep concise minutes recording attendees, topics discussed and any agreed actions, subject to privilege and sensitivity redactions where appropriate.

### 6. Reporting

6.1 Periodic reports. The Liquidators shall provide to the Attorney General a confidential report not less than once per quarter covering, to the extent appropriate and not prejudicial to the estate:

- status of asset identification, recovery actions and investigations;
- key applications to the Court and outcomes;
- known factual matters relevant to potential criminal offences or regulatory breaches; and
- anticipated steps in the next period.

6.2 Urgent matters. The Liquidators shall promptly notify the Attorney General of matters reasonably judged to be urgent, including (but not limited to) risk of dissipation, destruction of records, or flight of suspects.

6.3 Templates. The Liquidators may adopt reporting templates and may omit details where disclosure would prejudice recoveries, negotiations, privilege, or legal processes.

### 7. Information requests by the Attorney General

7.1 Scope. The Attorney General may request access to documents, data and information reasonably required in relation to the Company or related persons or entities.

7.2 Process. Requests shall be made in writing, identifying the categories sought, the purpose, and any timing sensitivities. The Liquidators shall acknowledge within 3 business days and respond within a reasonable time, taking into account volume, complexity and competing duties.

7.3 Reasonableness and sequencing. The Liquidators may propose reasonable narrowing, staging or alternative formats, including summaries or redactions, to protect privilege, confidentiality, commercial sensitivity, or the integrity of civil recovery efforts.

7.4 Court supervision. If disagreement arises which cannot be resolved promptly, either party may seek directions from the Court on short notice.

### 8. Authorised disclosures and gateways

8.1 Court authorisation. Subject to sections 9–12, the Liquidators are authorised by the Court to disclose Confidential Information to the Attorney General for the limited purposes of regulatory or criminal investigation and prosecution, restraint, confiscation, forfeiture, mutual legal assistance, and related protective measures, and to receive Confidential Information from the Attorney General for liquidation purposes.

8.2 Statutory gateways. To the extent any statutory or regulatory gateway is required for disclosure or use of information, the parties shall cooperate to identify and use such gateways, including by seeking further directions or orders of the Court as needed.

8.3 No breach. Disclosures made in good faith under this Protocol shall not constitute a breach of duty, confidence, data protection laws, or contractual restrictions binding on the Company, and the Liquidators shall have the protection of the Court accordingly.

### 9. Privilege and confidentiality

9.1 Privilege preserved. The Liquidators shall not be required to disclose Privileged Material. Any inadvertent disclosure shall not constitute a waiver of privilege, and the Attorney General shall promptly return or delete such material and refrain from review or use upon notification.

9.2 Common interest. Where appropriate, and subject to legal advice, the parties may agree that certain exchanges are made on a common interest or joint interest basis to preserve privilege.

9.3 Use restrictions. The Attorney General shall maintain Confidential Information in confidence and use it solely for lawful law enforcement, regulatory and public interest purposes. Dissemination shall be limited to personnel with a need to know who are bound by equivalent confidentiality obligations.

9.4 Protective measures. Upon reasonable request, the Attorney General shall implement protective measures for sensitive materials, including secure handling protocols, restricted circulation, and, where appropriate, applications to seal or redact in criminal or regulatory proceedings to avoid prejudice to the estate.

### 10. Data protection and personal data

The parties shall process personal data lawfully, fairly and securely, with appropriate technical and organisational measures. Where cross-border transfers are contemplated, the parties shall cooperate to ensure a lawful transfer mechanism and, where necessary, seek the Court's directions.

### 11. Preservation and holds

The Liquidators shall implement and maintain appropriate document preservation measures in respect of the Company's records. The Attorney General shall notify the Liquidators of any preservation requirements arising from criminal investigations or proceedings, including anticipated requests or production deadlines, to allow timely compliance.

### 12. Coordination to avoid prejudice and duplication

The parties shall coordinate to minimise prejudice to the estate, civil recoveries and criminal processes, including by sequencing steps, agreeing standstills where appropriate, and consulting on timing of public filings or applications likely to have cross-impact. The Liquidators' primary duty to protect and realise assets shall be respected.

### 13. Public statements and confidentiality vis-à-vis third parties

Public statements about the Company, the liquidation or related investigations shall be coordinated to the extent practicable. The Liquidators may make statements required by law or the Court or necessary to protect assets or correct the market. The Attorney General may make statements required in the exercise of public functions, having regard to the Liquidators' requests to withhold sensitive details.

### 14. Costs and resourcing

The reasonable costs incurred by the Liquidators in complying with this Protocol, including costs of retrieval, review, redaction, secure transmission and liaison, are costs of the liquidation. Where requests impose material incremental burdens, the parties shall confer on pragmatic staging or cost-efficient approaches and, failing agreement, may seek the Court's directions.

### 15. Non-fetter and independence

Nothing in this Protocol fetters or derogates from the Liquidators' statutory powers and duties, or from the Attorney General's independent decision-making. The consultative role does not confer any power of direction over the Liquidators.

### 16. Conflicts and recusals

If a conflict of interest arises affecting any representative, that person shall recuse from relevant consultations. The parties shall notify each other of any material conflicts that could affect the integrity of cooperation, and may seek the Court's directions where necessary.

### 17. International cooperation

Where the Attorney General is engaged in mutual legal assistance, or cooperation with foreign authorities, the parties shall consult on scope and timing to ensure that disclosures and steps taken are consistent

with this Protocol and do not unduly prejudice the liquidation or foreign proceedings. The Attorney General shall take reasonable steps, where feasible, to secure protective handling by foreign authorities of any Confidential Information provided.

### 18. Records and audit trail

The Liquidators shall maintain a record of disclosures made to the Attorney General under this Protocol sufficient to evidence compliance, subject to privilege. The Attorney General shall, upon reasonable request, confirm receipt and any onward lawful use or disclosure to other agencies.

### 19. Duration, variation and termination

This Protocol takes effect upon the making of the Order and continues until the earlier of dissolution of the Company or further order of the Court. It may be varied by written agreement between the Liquidators and the Attorney General approved by the Court, or otherwise by order of the Court. The Court may suspend or terminate this Protocol upon application by either party.

### 20. Notices

Formal notices under this Protocol shall be in writing and sent to the designated contacts of each party as notified from time to time. Operational communications may be conducted by secure electronic means.

### 21. Dispute resolution and directions

Any dispute arising under or in connection with this Protocol shall, in the first instance, be addressed through consultation. Failing prompt resolution, either party may apply to the Court for directions on short notice.

### 22. Safe harbour

No act or omission of the Liquidators done in good faith and with reasonable care in reliance on this Protocol, or any directions of the Court, shall give rise to personal liability. The Liquidators shall be entitled to the usual indemnities out of the assets of the Company.

## Schedule 1 – Illustrative categories of information for disclosure

A. Corporate records: constitutional documents, registers, organisational charts, officer and registered agent details.

B. Financial records: bank statements, ledgers, invoices, loan agreements, asset registers, related party transactions.

C. Communications: selected emails and messaging data from corporate systems relevant to suspected criminality.

D. Counterparty materials: KYC files, contracts, correspondence with intermediaries and fiduciaries.

E. Investigation work product: non-privileged factual memoranda, forensic accounting outputs, chain-of-custody logs.

F. Court materials: statements of affairs, affidavits, pleadings and orders (including sealed materials as authorised).

G. Asset tracing: non-privileged tracing schedules, dashboards, and summaries of restraints or recovery actions.

H. Preservation: litigation hold notices and repositories metadata (to the extent disclosure assists law enforcement).

Disclosure of any category remains subject to sections 9–12 of the Protocol.

## Schedule 2 – Template quarterly consultation report (confidential)

1. Executive summary and key developments.

2. Asset position: discoveries, realisations, restraints and pending recovery actions.

3. Investigations: factual findings, cooperating witnesses, outstanding enquiries.

4. Legal proceedings: applications filed or contemplated; coordination with foreign courts.

5. Law enforcement interface: requests received/made; disclosures; pending deadlines.

6. Risks and mitigants: dissipation risks, data loss risks, reputational issues.

7. Next steps and proposed timetable; matters requiring Attorney General input.

8. Appendices: schedules of documents disclosed; privilege log (if applicable).

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0003

BETWEEN:

IN THE MATTER OF AMBER HILL VENTURES LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF

THE LAWS OF THE VIRGIN ISLANDS.

 THE ATTORNEY GENERAL

Applicant

-v-

AMBER HILL VENTURES LIMITED

Respondent

---

**ORDER ON APPLICATION FOR
JOINT PROVISIONAL LIQUIDATORS**

---



O'Neal Webster

Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 l Fax: (284) 393 5805
www.onealwebster.com

**Case Number :BVIHCOM2026/0002**



**Submitted Date:13/01/2026 11:25**

**Filed Date:13/01/2026 11:26**

**Fees Paid:0.00**



**Case Number :BVIHCOM2026/0002**

FILED
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS

Submitted Date:12/01/2026 13:02

Filed Date:12/01/2026 13:02

Fees Paid:0.00

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0002

BETWEEN:

IN THE MATTER OF AUSPICIOUS TYCOON LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

Applicant

-v-

AUSPICIOUS TYCOON LIMITED

Respondent

---

ORDER APPLICATION FOR JOINT PROVISIONAL LIQUIDATORS

---

BEFORE:      THE HONOURABLE JUSTICE ABBAS MITHANI

DATED:       THE 9th DAY OF JANUARY, 2026

ENTERED:     THE 12th DAY OF JANUARY, 2026

PENAL NOTICE

The effect of this Order is that the directors, former directors, office holders and former office holders of the Respondent, AUSPICIOUS TYCOON LIMITED ("the Company") are replaced by the joint provisional liquidators and that the directors, former directors, office holders and former office holders are prohibited from taking any action in relation to the Company's affairs without prior consent of the joint provisional liquidators.

If you, the directors, former directors, office holders and former office holders of the Company fail to comply with the terms of this order, proceedings may be commenced against you for contempt of court and you may be liable to be imprisoned, fined or have your assets seized.

**This order must be complied with by any person affected by it upon whom it is served. Any other person who knows of this order and does anything which helps or permits the directors, former directors, office holders and/or former office holders of the Company to breach its terms may also be held to be in contempt of Court and may be imprisoned, fined or have their assets seized.**

**UPON THE ORDINARY APPLICATION** filed by the Applicant on 5 January 2026 seeking the appointment of James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110, Paul Pretlove and David Standish, both eligible overseas insolvency practitioner of Interpath Ltd, 10 Fleet Place, London EC4M 7RB, England as joint provisional liquidators of the Company pursuant to section 170 of the Insolvency Act 2003, ("**the Application**") coming on for hearing.

**AND UPON HEARING** Paul B. Dennis K.C. and with him Nadine Whyte Laing and Koya Ryan of O'Neal Webster for the Applicant.

**AND UPON** the Attorney General Dawn J. Smith being present.

**AND UPON** Mr. Paul Pretlove and Mr. James Drury, two of the proposed joint provisional liquidators being present.

**AND UPON READING** the Application, the originating application to appoint liquidators of the Company, the first affidavit of the Attorney General, the affidavit of Jeni-Lee Watson and the other documents on the Court file.

**AND UPON** the Application being heard ex parte.

**IT IS HEREBY ORDERED THAT:**

1. James Drury, Paul Pretlove and David Standish be appointed jointly and severally as provisional liquidators (the **"Joint Provisional Liquidators"**) of the Company until further order.

2. The Joint Provisional Liquidators have the rights and powers of a liquidator to the extent necessary to maintain the value of the assets owned by the Company and to carry out the functions for which they are appointed.

3. In addition to the powers outlined in 2 above, the Joint Provisional Liquidators shall have the following specific powers which may be exercised without further sanction or intervention of this Honourable Court:

a. to gain entry to the Company's premises and take possession of and preserve the books and records of the Company;

b. to identify any assets which may remain in the possession or control of the Company, and to take such steps as may be necessary to protect any such assets from removal or dissipation;

c. to seek the recognition (or its equivalent) of the appointment of the Joint Provisional Liquidators in the United States, United Kingdom, Singapore, Hong Kong, Taiwan Thailand and Cambodia or elsewhere for the purposes of securing, realising and remitting assets to the control of the Joint Provisional Liquidators and for the purpose of obtaining access to and control of the records of the Company;

d. to commence, continue, discontinue or defend, including by way of counterclaim or similar response, any action or other legal proceedings in the name and on behalf of the Company in so far as necessary to protect the assets and information of the Company including:

(i) issuing proceedings against the directors, former directors, office holders and former office holders of the Company, if so advised.

(ii) intervening (if so advised) in ongoing proceedings which involve the Company and/or its directors, former directors, office holders and/or its former office holders.

e. to vote the shares of the Company in order to prevent the dissipation of its assets.

f. to carry on the business of the Company so far as may be necessary for its beneficial provisional liquidation;

g. to take all necessary steps to obtain from any person documents or copy documents which belong to the Company or have been created or maintained on its behalf or which the Company has a right to obtain or inspect.

h. to appoint an agent including a solicitor, or accountant to do any business that the Joint Provisional Liquidators are unable to do themselves in discharge of their duties, or which can be more conveniently done by an agent;

i.  to investigate the affairs of the Company so far as necessary to protect and, if necessary, retrieve the assets and records of the Company;

j.  to retain, manage and operate the existing bank accounts of the Company including, without limitation, the power to change, remove and replace the signatories of these accounts and, where necessary, to open new bank accounts;

k.  The Joint Provisional Liquidators may draw down payments on account of their remuneration, expenses and disbursements from time to time at a rate of 80% of their time costs and 100% of their expenses and disbursements, subject to these being subsequently approved by the court, and in the event that such sums are not approved, the unapproved sums be repaid to the Company within 7 days;

l.  to apply to the Court for directions concerning any matter arising out of the exercise of the above powers; and

m.  to do all other things as may be incidental to the exercise of the above functions and powers.

n.  to consult and share information with the Applicant to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company.

o.  to cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4.  The Joint Provisional Liquidators are authorised and directed to implement the protocol for consultation and information sharing between them and the Applicant in the draft which is attached hereto ("the Protocol").

5.  Any disclosure of information by the Joint Provisional Liquidators to the Applicant made in good faith and in accordance with the Protocol shall be deemed authorised by the Court and shall not constitute a breach of duty, confidence, data protection obligations or contractual restrictions binding upon the Company.

6.  The Joint Provisional Liquidators shall not be required to disclose material subject to legal professional privilege or litigation privilege.

7. The Joint Provisional Liquidators and the Applicant have liberty to apply on short notice for directions, variation or termination of the Protocol.

8. The costs of the provisional liquidation, including the proper fees and disbursements of the Joint Provisional Liquidators and the Applicant's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

9. The powers set out in paragraph 3 above are to the exclusion of any power exercised or purported to be exercised by any existing director of the Company in so far as such power concerns the affairs of the Company and its assets within the jurisdiction of the Virgin Islands.

10. Save as provided in paragraph 3 above the Joint Provisional Liquidators may not exercise any of the powers set out at Schedule 2 to the Insolvency Act, 2003 without sanction of the court.

11. Pursuant to section 174 of the Insolvency Act, 2003 alternatively pursuant to the inherent jurisdiction of the Court, all actions, suits or proceedings of any nature whatsoever against the Company be and are hereby restrained until further order of the Court.

12. During the period of their appointment, any act required or authorized to be done by the Joint Provisional Liquidators may be done by any one or more of them.

13. This order was made at a hearing without notice to the respondent. There will be a further hearing in respect of the order on or before 29th January 2026 with a time estimate of 30 minutes, for directions only (**the Return Date**).

14. The Joint Provisional Liquidators are to file and serve a report within one clear day before the Return Date summarising steps taken, any immediate concerns and recommended next steps.

15. The Company is at liberty to apply to vary or discharge the order upon giving 72 hours' notice to the Applicant and the Joint Provisional Liquidators.

16. The Joint Provisional Liquidators are at liberty to apply to vary or discharge the order if the allegations set out above are not substantiated or for some other reason upon giving 72 hours' notice to the Applicant and the Company.

17.    The Applicant is not required to give an undertaking in damages.

18.    The costs of this Application be costs in the provisional liquidation.

19.    The Joint Provisional Liquidators are not required to pay or provide security.

**BY THE COURT**



_____
**REGISTRAR**

**Protocol for Consultation and Information-Sharing Between the Liquidators and the Attorney General**

This Protocol is annexed to and forms part of the Order of the BVI Commercial Court (the **Court**) made on 9 January 2026 in Claim No. BVIHC (COM) 2026/0002 (**"the Order"**). Capitalised terms bear the meanings given in the Order unless the context otherwise requires.

### 1. Purpose and status

This Protocol sets out a consultative framework between the Liquidators and the Attorney General to facilitate effective cooperation in the public interest, including in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of Auspicious Tycoon Limited (**"the Company"**) For the avoidance of doubt, this Protocol is made pursuant to and with the approval of the Court, and disclosures made in good faith in accordance with this Protocol are deemed authorised by the Court.

### 2. Guiding principles

The Liquidators shall remain independent and act in the interests of the Company's creditors as a whole and the integrity of the winding up. The Attorney General's participation under this Protocol is consultative and does not fetter the Liquidators' statutory powers or duties, nor the Attorney General's independent functions. Both parties shall conduct themselves with candour, proportionality and respect for legal professional privilege, confidentiality, data protection and rule of law.

Nothing in this Protocol is intended to limit or restrict the ability of the Company's stakeholders to constitute a creditors' committee.

### 3. Definitions

- Attorney General means the Attorney General of the Virgin Islands and includes designated officers acting on the Attorney General's behalf for the purposes of this Protocol.
- The Company means Auspicious Tycoon Limited which is the subject of the Order.
- Confidential Information means non-public information concerning the Company, the liquidation, related investigations, counterparties and assets, including personal data and material subject to confidentiality obligations owed by the Company or the Liquidators.

- Privileged Material means material subject to legal professional privilege or litigation privilege, or any analogous protection recognised by the Court.

### 4. Appointment and representation

The Attorney General shall constitute a consultative committee and may nominate up to three designated representatives for liaison with the Liquidators, with at least one senior contact identified (the **AGs Committee**). The Attorney General may change representatives on notice to the Liquidators.

The AGs Committee shall serve alongside any creditors' committee (if one is formed), and the Liquidators shall have equal regard to the views expressed by both the AGs Committee and the creditors' committee (if formed).

### 5. Consultation framework

5.1 Meetings. The Liquidators shall convene regular consultation meetings (in person or virtual) with the Attorney General not less than once per quarter, and ad hoc meetings as reasonably required. The Liquidators shall chair meetings and circulate a brief agenda in advance. These meetings may be consolidated with meetings of the creditors' committee (if one is formed).

5.2 Attendance. The Liquidators may invite professional advisers and members of the liquidation team. The Attorney General may invite relevant law enforcement or regulatory personnel, provided confidentiality undertakings are observed.

5.3 Minutes. The Liquidators shall keep concise minutes recording attendees, topics discussed and any agreed actions, subject to privilege and sensitivity redactions where appropriate.

### 6. Reporting

6.1 Periodic reports. The Liquidators shall provide to the Attorney General a confidential report not less than once per quarter covering, to the extent appropriate and not prejudicial to the estate:

- status of asset identification, recovery actions and investigations;
- key applications to the Court and outcomes;
- known factual matters relevant to potential criminal offences or regulatory breaches; and
- anticipated steps in the next period.

6.2 Urgent matters. The Liquidators shall promptly notify the Attorney General of matters reasonably judged to be urgent, including (but not limited to) risk of dissipation, destruction of records, or flight of suspects.

6.3 Templates. The Liquidators may adopt reporting templates and may omit details where disclosure would prejudice recoveries, negotiations, privilege, or legal processes.

### 7. Information requests by the Attorney General

7.1 Scope. The Attorney General may request access to documents, data and information reasonably required in relation to the Company or related persons or entities.

7.2 Process. Requests shall be made in writing, identifying the categories sought, the purpose, and any timing sensitivities. The Liquidators shall acknowledge within 3 business days and respond within a reasonable time, taking into account volume, complexity and competing duties.

7.3 Reasonableness and sequencing. The Liquidators may propose reasonable narrowing, staging or alternative formats, including summaries or redactions, to protect privilege, confidentiality, commercial sensitivity, or the integrity of civil recovery efforts.

7.4 Court supervision. If disagreement arises which cannot be resolved promptly, either party may seek directions from the Court on short notice.

### 8. Authorised disclosures and gateways

8.1 Court authorisation. Subject to sections 9–12, the Liquidators are authorised by the Court to disclose Confidential Information to the Attorney General for the limited purposes of regulatory or criminal investigation and prosecution, restraint, confiscation, forfeiture, mutual legal assistance, and related protective measures, and to receive Confidential Information from the Attorney General for liquidation purposes.

8.2 Statutory gateways. To the extent any statutory or regulatory gateway is required for disclosure or use of information, the parties shall cooperate to identify and use such gateways, including by seeking further directions or orders of the Court as needed.

8.3 No breach. Disclosures made in good faith under this Protocol shall not constitute a breach of duty, confidence, data protection laws, or contractual restrictions binding on the Company, and the Liquidators shall have the protection of the Court accordingly.

### 9. Privilege and confidentiality

9.1 Privilege preserved. The Liquidators shall not be required to disclose Privileged Material. Any inadvertent disclosure shall not constitute a waiver of privilege, and the Attorney General shall promptly return or delete such material and refrain from review or use upon notification.

9.2 Common interest. Where appropriate, and subject to legal advice, the parties may agree that certain exchanges are made on a common interest or joint interest basis to preserve privilege.

9.3 Use restrictions. The Attorney General shall maintain Confidential Information in confidence and use it solely for lawful law enforcement, regulatory and public interest purposes. Dissemination shall be limited to personnel with a need to know who are bound by equivalent confidentiality obligations.

9.4 Protective measures. Upon reasonable request, the Attorney General shall implement protective measures for sensitive materials, including secure handling protocols, restricted circulation, and, where appropriate, applications to seal or redact in criminal or regulatory proceedings to avoid prejudice to the estate.

### 10. Data protection and personal data

The parties shall process personal data lawfully, fairly and securely, with appropriate technical and organisational measures. Where cross-border transfers are contemplated, the parties shall cooperate to ensure a lawful transfer mechanism and, where necessary, seek the Court's directions.

### 11. Preservation and holds

The Liquidators shall implement and maintain appropriate document preservation measures in respect of the Company's records. The Attorney General shall notify the Liquidators of any preservation requirements arising from criminal investigations or proceedings, including anticipated requests or production deadlines, to allow timely compliance.

### 12. Coordination to avoid prejudice and duplication

The parties shall coordinate to minimise prejudice to the estate, civil recoveries and criminal processes, including by sequencing steps, agreeing standstills where appropriate, and consulting on timing of public filings or applications likely to have cross-impact. The Liquidators' primary duty to protect and realise assets shall be respected.

### 13. Public statements and confidentiality vis-à-vis third parties

Public statements about the Company, the liquidation or related investigations shall be coordinated to the extent practicable. The Liquidators may make statements required by law or the Court or necessary to protect assets or correct the market. The Attorney General may make statements required in the exercise of public functions, having regard to the Liquidators' requests to withhold sensitive details.

### 14. Costs and resourcing

The reasonable costs incurred by the Liquidators in complying with this Protocol, including costs of retrieval, review, redaction, secure transmission and liaison, are costs of the liquidation. Where requests impose material incremental burdens, the parties shall confer on pragmatic staging or cost-efficient approaches and, failing agreement, may seek the Court's directions.

### 15. Non-fetter and independence

Nothing in this Protocol fetters or derogates from the Liquidators' statutory powers and duties, or from the Attorney General's independent decision-making. The consultative role does not confer any power of direction over the Liquidators.

### 16. Conflicts and recusals

If a conflict of interest arises affecting any representative, that person shall recuse from relevant consultations. The parties shall notify each other of any material conflicts that could affect the integrity of cooperation, and may seek the Court's directions where necessary.

### 17. International cooperation

Where the Attorney General is engaged in mutual legal assistance, or cooperation with foreign authorities, the parties shall consult on scope and timing to ensure that disclosures and steps taken are consistent with this Protocol and do not unduly prejudice the liquidation or foreign proceedings. The Attorney

General shall take reasonable steps, where feasible, to secure protective handling by foreign authorities of any Confidential Information provided.

### 18. Records and audit trail

The Liquidators shall maintain a record of disclosures made to the Attorney General under this Protocol sufficient to evidence compliance, subject to privilege. The Attorney General shall, upon reasonable request, confirm receipt and any onward lawful use or disclosure to other agencies.

### 19. Duration, variation and termination

This Protocol takes effect upon the making of the Order and continues until the earlier of dissolution of the Company or further order of the Court. It may be varied by written agreement between the Liquidators and the Attorney General approved by the Court, or otherwise by order of the Court. The Court may suspend or terminate this Protocol upon application by either party.

### 20. Notices

Formal notices under this Protocol shall be in writing and sent to the designated contacts of each party as notified from time to time. Operational communications may be conducted by secure electronic means.

### 21. Dispute resolution and directions

Any dispute arising under or in connection with this Protocol shall, in the first instance, be addressed through consultation. Failing prompt resolution, either party may apply to the Court for directions on short notice.

### 22. Safe harbour

No act or omission of the Liquidators done in good faith and with reasonable care in reliance on this Protocol, or any directions of the Court, shall give rise to personal liability. The Liquidators shall be entitled to the usual indemnities out of the assets of the Company.

---

**Schedule 1 – Illustrative categories of information for disclosure**

A.  Corporate records: constitutional documents, registers, organisational charts, officer and registered agent details.

B.  Financial records: bank statements, ledgers, invoices, loan agreements, asset registers, related party transactions.

C.  Communications: selected emails and messaging data from corporate systems relevant to suspected criminality.

D.  Counterparty materials: KYC files, contracts, correspondence with intermediaries and fiduciaries.

E.  Investigation work product: non-privileged factual memoranda, forensic accounting outputs, chain-of-custody logs.

F.  Court materials: statements of affairs, affidavits, pleadings and orders (including sealed materials as authorised).

G.  Asset tracing: non-privileged tracing schedules, dashboards, and summaries of restraints or recovery actions.

H.  Preservation: litigation hold notices and repositories metadata (to the extent disclosure assists law enforcement).

Disclosure of any category remains subject to sections 9–12 of the Protocol.

---

**Schedule 2 – Template quarterly consultation report (confidential)**

1.  Executive summary and key developments.

2.  Asset position: discoveries, realisations, restraints and pending recovery actions.

3.  Investigations: factual findings, cooperating witnesses, outstanding enquiries.

4.  Legal proceedings: applications filed or contemplated; coordination with foreign courts.

5.  Law enforcement interface: requests received/made; disclosures; pending deadlines.

6.  Risks and mitigants: dissipation risks, data loss risks, reputational issues.

7.  Next steps and proposed timetable; matters requiring Attorney General input.

8.  Appendices: schedules of documents disclosed; privilege log (if applicable).

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0002

BETWEEN:

IN THE MATTER OF AUSPICIOUS TYCOON LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF
THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

Applicant

-v-

AUSPICIOUS TYCOON LIMITED

Respondent

---

**ORDER ON APPLICATION FOR
JOINT PROVISIONAL LIQUIDATORS**

---



O'Neal
Webster

Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 l Fax: (284) 393 5805
www.onealwebster.com



**Case Number :BVIHCOM2026/0001**

**Submitted Date:13/01/2026 11:18**

**Filed Date:13/01/2026 11:18**

**Fees Paid:0.00**



**Case Number :BVIHCOM2026/0001**

**FILED
HIGH COURT**
TERRITORY OF
THE VIRGIN ISLANDS

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0001

**Submitted Date:12/01/2026 13:00**

**Filed Date:12/01/2026 13:00**

**Fees Paid:0.00**

BETWEEN:

IN THE MATTER OF BRIGHT TEAM GLOBAL LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

Applicant

-v-

BRIGHT TEAM GLOBAL LIMITED

Respondent

_____

ORDER APPLICATION FOR JOINT PROVISIONAL LIQUIDATORS

_____

BEFORE:    THE HONOURABLE JUSTICE ABBAS MITHANI

DATED:    THE 9th DAY OF JANUARY, 2026

ENTERED:    THE 12th DAY OF JANUARY, 2026

### PENAL NOTICE

The effect of this Order is that the directors, former directors, office holders and former office holders of the Respondent, BRIGHT TEAM GLOBAL LIMITED ("the Company") are replaced by the joint provisional liquidators and that the directors, former directors, office holders and former office holders are prohibited from taking any action in relation to the Company's affairs without prior consent of the joint provisional liquidators.

If you, the directors, former directors, office holders and former office holders of the Company fail to comply with the terms of this order, proceedings may be commenced against you for contempt of court and you may be liable to be imprisoned, fined or have your assets seized.

**This order must be complied with by any person affected by it upon whom it is served. Any other person who knows of this order and does anything which helps or permits the directors, former directors, office holders and/or former office holders of the Company to breach its terms may also be held to be in contempt of Court and may be imprisoned, fined or have their assets seized.**

**UPON THE ORDINARY APPLICATION** filed by the Applicant on 5 January 2026 seeking the appointment of James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110, Paul Pretlove and David Standish, both eligible overseas insolvency practitioner of Interpath Ltd, 10 Fleet Place, London EC4M 7RB, England as joint provisional liquidators of the Company pursuant to section 170 of the Insolvency Act 2003, ("**the Application**") coming on for hearing.

**AND UPON HEARING** Paul B. Dennis K.C. and with him Nadine Whyte Laing and Koya Ryan of O'Neal Webster for the Applicant.

**AND UPON** the Attorney General Dawn J. Smith being present.

**AND UPON** Mr. Paul Pretlove and Mr. James Drury, two of the proposed joint provisional liquidators being present.

**AND UPON READING** the Application, the originating application to appoint liquidators of the Company, the first affidavit of the Attorney General, the affidavit of Jeni-Lee Watson and the other documents on the Court file.

**AND UPON** the Application being heard ex parte.

**IT IS HEREBY ORDERED THAT:**

1.    James Drury, Paul Pretlove and David Standish be appointed jointly and severally as provisional liquidators (the "**Joint Provisional Liquidators**") of the Company until further order.

2.    The Joint Provisional Liquidators have the rights and powers of a liquidator to the extent necessary to maintain the value of the assets owned by the Company and to carry out the functions for which they are appointed.

3. In addition to the powers outlined in 2 above, the Joint Provisional Liquidators shall have the following specific powers which may be exercised without further sanction or intervention of this Honourable Court:

    a. to gain entry to the Company's premises and take possession of and preserve the books and records of the Company;

    b. to identify any assets which may remain in the possession or control of the Company, and to take such steps as may be necessary to protect any such assets from removal or dissipation;

    c. to seek the recognition (or its equivalent) of the appointment of the Joint Provisional Liquidators in the United States, United Kingdom, Singapore, Hong Kong, Taiwan Thailand and Cambodia or elsewhere for the purposes of securing, realising and remitting assets to the control of the Joint Provisional Liquidators and for the purpose of obtaining access to and control of the records of the Company;

    d. to commence, continue, discontinue or defend, including by way of counterclaim or similar response, any action or other legal proceedings in the name and on behalf of the Company in so far as necessary to protect the assets and information of the Company including:

        (i) issuing proceedings against the directors, former directors, office holders and former office holders of the Company, if so advised.

        (ii) intervening (if so advised) in ongoing proceedings which involve the Company and/or its directors, former directors, office holders and/or its former office holders.

    e. to vote the shares of the Company in order to prevent the dissipation of its assets.

    f. to carry on the business of the Company so far as may be necessary for its beneficial provisional liquidation;

    g. to take all necessary steps to obtain from any person documents or copy documents which belong to the Company or have been created or maintained on its behalf or which the Company has a right to obtain or inspect.

    h. to appoint an agent including a solicitor, or accountant to do any business that the Joint Provisional Liquidators are unable to do themselves in discharge of their duties, or which can be more conveniently done by an agent;

i. to investigate the affairs of the Company so far as necessary to protect and, if necessary, retrieve the assets and records of the Company;

j. to retain, manage and operate the existing bank accounts of the Company including, without limitation, the power to change, remove and replace the signatories of these accounts and, where necessary, to open new bank accounts;

k. The Joint Provisional Liquidators may draw down payments on account of their remuneration, expenses and disbursements from time to time at a rate of 80% of their time costs and 100% of their expenses and disbursements, subject to these being subsequently approved by the court, and in the event that such sums are not approved, the unapproved sums be repaid to the Company within 7 days;

l. to apply to the Court for directions concerning any matter arising out of the exercise of the above powers; and

m. to do all other things as may be incidental to the exercise of the above functions and powers.

n. to consult and share information with the Applicant to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company.

o. to cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4. The Joint Provisional Liquidators are authorised and directed to implement the protocol for consultation and information sharing between them and the Applicant in the draft which is attached hereto (**"the Protocol"**).

5. Any disclosure of information by the Joint Provisional Liquidators to the Applicant made in good faith and in accordance with the Protocol shall be deemed authorised by the Court and shall not constitute a breach of duty, confidence, data protection obligations or contractual restrictions binding upon the Company.

6. The Joint Provisional Liquidators shall not be required to disclose material subject to legal professional privilege or litigation privilege.

7.  The Joint Provisional Liquidators and the Applicant have liberty to apply on short notice for directions, variation or termination of the Protocol.

8.  The costs of the provisional liquidation, including the proper fees and disbursements of the Joint Provisional Liquidators and the Applicant's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

9.  The powers set out in paragraph 3 above are to the exclusion of any power exercised or purported to be exercised by any existing director of the Company in so far as such power concerns the affairs of the Company and its assets within the jurisdiction of the Virgin Islands.

10. Save as provided in paragraph 3 above the Joint Provisional Liquidators may not exercise any of the powers set out at Schedule 2 to the Insolvency Act, 2003 without sanction of the court.

11. Pursuant to section 174 of the Insolvency Act, 2003 alternatively pursuant to the inherent jurisdiction of the Court, all actions, suits or proceedings of any nature whatsoever against the Company be and are hereby restrained until further order of the Court.

12. During the period of their appointment, any act required or authorized to be done by the Joint Provisional Liquidators may be done by any one or more of them.

13. This order was made at a hearing without notice to the respondent.  There will be a further hearing in respect of the order on or before *29th January 2026* with a time estimate of 30 minutes, for directions only (**the Return Date**).

14. The Joint Provisional Liquidators are to file and serve a report within one clear day before the Return Date summarising steps taken, any immediate concerns and recommended next steps.

15. The Company is at liberty to apply to vary or discharge the order upon giving 72 hours' notice to the Applicant and the Joint Provisional Liquidators.

16. The Joint Provisional Liquidators are at liberty to apply to vary or discharge the order if the allegations set out above are not substantiated or for some other reason upon giving 72 hours' notice to the Applicant and the Company.

17.   The Applicant is not required to give an undertaking in damages.

18.   The costs of this Application be costs in the provisional liquidation.

19.   The Joint Provisional Liquidators are not required to pay or provide security.

BY THE COURT



REGISTRAR

**Protocol for Consultation and Information-Sharing Between the Liquidators and the Attorney General**

This Protocol is annexed to and forms part of the Order of the BVI Commercial Court (the **Court**) made on 9 January 2026 in Claim No. BVIHC (COM) 2026/0001 **("the Order")**. Capitalised terms bear the meanings given in the Order unless the context otherwise requires.

### 1. Purpose and status

This Protocol sets out a consultative framework between the Liquidators and the Attorney General to facilitate effective cooperation in the public interest, including in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of Bright Team Global Limited **("the Company")** For the avoidance of doubt, this Protocol is made pursuant to and with the approval of the Court, and disclosures made in good faith in accordance with this Protocol are deemed authorised by the Court.

### 2. Guiding principles

The Liquidators shall remain independent and act in the interests of the Company's creditors as a whole and the integrity of the winding up. The Attorney General's participation under this Protocol is consultative and does not fetter the Liquidators' statutory powers or duties, nor the Attorney General's independent functions. Both parties shall conduct themselves with candour, proportionality and respect for legal professional privilege, confidentiality, data protection and rule of law.

Nothing in this Protocol is intended to limit or restrict the ability of the Company's stakeholders to constitute a creditors' committee.

### 3. Definitions

- Attorney General means the Attorney General of the Virgin Islands and includes designated officers acting on the Attorney General's behalf for the purposes of this Protocol.
- The Company means Bright Team Global Limited which is the subject of the Order.
- Confidential Information means non-public information concerning the Company, the liquidation, related investigations, counterparties and assets, including personal data and material subject to confidentiality obligations owed by the Company or the Liquidators.

- Privileged Material means material subject to legal professional privilege or litigation privilege, or any analogous protection recognised by the Court.

### 4. Appointment and representation

The Attorney General shall constitute a consultative committee and may nominate up to three designated representatives for liaison with the Liquidators, with at least one senior contact identified (the **AGs Committee**). The Attorney General may change representatives on notice to the Liquidators.

The AGs Committee shall serve alongside any creditors' committee (if one is formed), and the Liquidators shall have equal regard to the views expressed by both the AGs Committee and the creditors' committee (if formed).

### 5. Consultation framework

5.1 Meetings. The Liquidators shall convene regular consultation meetings (in person or virtual) with the Attorney General not less than once per quarter, and ad hoc meetings as reasonably required. The Liquidators shall chair meetings and circulate a brief agenda in advance. These meetings may be consolidated with meetings of the creditors' committee (if one is formed).

5.2 Attendance. The Liquidators may invite professional advisers and members of the liquidation team. The Attorney General may invite relevant law enforcement or regulatory personnel, provided confidentiality undertakings are observed.

5.3 Minutes. The Liquidators shall keep concise minutes recording attendees, topics discussed and any agreed actions, subject to privilege and sensitivity redactions where appropriate.

### 6. Reporting

6.1 Periodic reports. The Liquidators shall provide to the Attorney General a confidential report not less than once per quarter covering, to the extent appropriate and not prejudicial to the estate:

- status of asset identification, recovery actions and investigations;
- key applications to the Court and outcomes;
- known factual matters relevant to potential criminal offences or regulatory breaches; and
- anticipated steps in the next period.

6.2 Urgent matters. The Liquidators shall promptly notify the Attorney General of matters reasonably judged to be urgent, including (but not limited to) risk of dissipation, destruction of records, or flight of suspects.

6.3 Templates. The Liquidators may adopt reporting templates and may omit details where disclosure would prejudice recoveries, negotiations, privilege, or legal processes.

### 7. Information requests by the Attorney General

7.1 Scope. The Attorney General may request access to documents, data and information reasonably required in relation to the Company or related persons or entities.

7.2 Process. Requests shall be made in writing, identifying the categories sought, the purpose, and any timing sensitivities. The Liquidators shall acknowledge within 3 business days and respond within a reasonable time, taking into account volume, complexity and competing duties.

7.3 Reasonableness and sequencing. The Liquidators may propose reasonable narrowing, staging or alternative formats, including summaries or redactions, to protect privilege, confidentiality, commercial sensitivity, or the integrity of civil recovery efforts.

7.4 Court supervision. If disagreement arises which cannot be resolved promptly, either party may seek directions from the Court on short notice.

### 8. Authorised disclosures and gateways

8.1 Court authorisation. Subject to sections 9–12, the Liquidators are authorised by the Court to disclose Confidential Information to the Attorney General for the limited purposes of regulatory or criminal investigation and prosecution, restraint, confiscation, forfeiture, mutual legal assistance, and related protective measures, and to receive Confidential Information from the Attorney General for liquidation purposes.

8.2 Statutory gateways. To the extent any statutory or regulatory gateway is required for disclosure or use of information, the parties shall cooperate to identify and use such gateways, including by seeking further directions or orders of the Court as needed.

8.3 No breach. Disclosures made in good faith under this Protocol shall not constitute a breach of duty, confidence, data protection laws, or contractual restrictions binding on the Company, and the Liquidators shall have the protection of the Court accordingly.

### 9. Privilege and confidentiality

9.1 Privilege preserved. The Liquidators shall not be required to disclose Privileged Material. Any inadvertent disclosure shall not constitute a waiver of privilege, and the Attorney General shall promptly return or delete such material and refrain from review or use upon notification.

9.2 Common interest. Where appropriate, and subject to legal advice, the parties may agree that certain exchanges are made on a common interest or joint interest basis to preserve privilege.

9.3 Use restrictions. The Attorney General shall maintain Confidential Information in confidence and use it solely for lawful law enforcement, regulatory and public interest purposes. Dissemination shall be limited to personnel with a need to know who are bound by equivalent confidentiality obligations.

9.4 Protective measures. Upon reasonable request, the Attorney General shall implement protective measures for sensitive materials, including secure handling protocols, restricted circulation, and, where appropriate, applications to seal or redact in criminal or regulatory proceedings to avoid prejudice to the estate.

### 10. Data protection and personal data

The parties shall process personal data lawfully, fairly and securely, with appropriate technical and organisational measures. Where cross-border transfers are contemplated, the parties shall cooperate to ensure a lawful transfer mechanism and, where necessary, seek the Court's directions.

### 11. Preservation and holds

The Liquidators shall implement and maintain appropriate document preservation measures in respect of the Company's records. The Attorney General shall notify the Liquidators of any preservation requirements arising from criminal investigations or proceedings, including anticipated requests or production deadlines, to allow timely compliance.

### *12. Coordination to avoid prejudice and duplication*

The parties shall coordinate to minimise prejudice to the estate, civil recoveries and criminal processes, including by sequencing steps, agreeing standstills where appropriate, and consulting on timing of public filings or applications likely to have cross-impact. The Liquidators' primary duty to protect and realise assets shall be respected.

### *13. Public statements and confidentiality vis-à-vis third parties*

Public statements about the Company, the liquidation or related investigations shall be coordinated to the extent practicable. The Liquidators may make statements required by law or the Court or necessary to protect assets or correct the market. The Attorney General may make statements required in the exercise of public functions, having regard to the Liquidators' requests to withhold sensitive details.

### *14. Costs and resourcing*

The reasonable costs incurred by the Liquidators in complying with this Protocol, including costs of retrieval, review, redaction, secure transmission and liaison, are costs of the liquidation. Where requests impose material incremental burdens, the parties shall confer on pragmatic staging or cost-efficient approaches and, failing agreement, may seek the Court's directions.

### *15. Non-fetter and independence*

Nothing in this Protocol fetters or derogates from the Liquidators' statutory powers and duties, or from the Attorney General's independent decision-making. The consultative role does not confer any power of direction over the Liquidators.

### *16. Conflicts and recusals*

If a conflict of interest arises affecting any representative, that person shall recuse from relevant consultations. The parties shall notify each other of any material conflicts that could affect the integrity of cooperation, and may seek the Court's directions where necessary.

### *17. International cooperation*

Where the Attorney General is engaged in mutual legal assistance, or cooperation with foreign authorities, the parties shall consult on scope and timing to ensure that disclosures and steps taken are consistent

with this Protocol and do not unduly prejudice the liquidation or foreign proceedings. The Attorney General shall take reasonable steps, where feasible, to secure protective handling by foreign authorities of any Confidential Information provided.

### 18. Records and audit trail

The Liquidators shall maintain a record of disclosures made to the Attorney General under this Protocol sufficient to evidence compliance, subject to privilege. The Attorney General shall, upon reasonable request, confirm receipt and any onward lawful use or disclosure to other agencies.

### 19. Duration, variation and termination

This Protocol takes effect upon the making of the Order and continues until the earlier of dissolution of the Company or further order of the Court. It may be varied by written agreement between the Liquidators and the Attorney General approved by the Court, or otherwise by order of the Court. The Court may suspend or terminate this Protocol upon application by either party.

### 20. Notices

Formal notices under this Protocol shall be in writing and sent to the designated contacts of each party as notified from time to time. Operational communications may be conducted by secure electronic means.

### 21. Dispute resolution and directions

Any dispute arising under or in connection with this Protocol shall, in the first instance, be addressed through consultation. Failing prompt resolution, either party may apply to the Court for directions on short notice.

### 22. Safe harbour

No act or omission of the Liquidators done in good faith and with reasonable care in reliance on this Protocol, or any directions of the Court, shall give rise to personal liability. The Liquidators shall be entitled to the usual indemnities out of the assets of the Company.

---

**Schedule 1 – Illustrative categories of information for disclosure**

A. Corporate records: constitutional documents, registers, organisational charts, officer and registered agent details.

B. Financial records: bank statements, ledgers, invoices, loan agreements, asset registers, related party transactions.

C. Communications: selected emails and messaging data from corporate systems relevant to suspected criminality.

D. Counterparty materials: KYC files, contracts, correspondence with intermediaries and fiduciaries.

E. Investigation work product: non-privileged factual memoranda, forensic accounting outputs, chain-of-custody logs.

F. Court materials: statements of affairs, affidavits, pleadings and orders (including sealed materials as authorised).

G. Asset tracing: non-privileged tracing schedules, dashboards, and summaries of restraints or recovery actions.

H. Preservation: litigation hold notices and repositories metadata (to the extent disclosure assists law enforcement).

Disclosure of any category remains subject to sections 9–12 of the Protocol.

---

**Schedule 2 – Template quarterly consultation report (confidential)**

1. Executive summary and key developments.

2. Asset position: discoveries, realisations, restraints and pending recovery actions.

3. Investigations: factual findings, cooperating witnesses, outstanding enquiries.

4. Legal proceedings: applications filed or contemplated; coordination with foreign courts.

5. Law enforcement interface: requests received/made; disclosures; pending deadlines.

6. Risks and mitigants: dissipation risks, data loss risks, reputational issues.

7. Next steps and proposed timetable; matters requiring Attorney General input.

8. Appendices: schedules of documents disclosed; privilege log (if applicable).

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0001

BETWEEN:

IN THE MATTER OF BRIGHT TEAM GLOBAL LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

Applicant

-v-

BRIGHT TEAM GLOBAL LIMITED

Respondent

---

**ORDER ON APPLICATION FOR**
**JOINT PROVISIONAL LIQUIDATORS**

---



O'Neal Webster

Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 I Fax: (284) 393 5805
www.onealwebster.com



**Case Number :BVIHCOM2026/0004**

**FILED**
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS

**Submitted Date:13/01/2026 11:33**

**Filed Date:13/01/2026 11:33**

**Fees Paid:0.00**



**Case Number :BVIHCOM2026/0004**

**FILED**
**HIGH COURT**
TERRITORY OF
THE VIRGIN ISLANDS

**Submitted Date:12/01/2026 13:06**

**Filed Date:12/01/2026 13:06**

**Fees Paid:0.00**

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0004

BETWEEN:

IN THE MATTER OF DELIGHTFUL THRIVE LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

Applicant

-v-

DELIGHTFUL THRIVE LIMITED

Respondent

_____

ORDER APPLICATION FOR JOINT PROVISIONAL LIQUIDATORS

_____

BEFORE:     THE HONOURABLE JUSTICE ABBAS MITHANI

DATED:      THE 9th DAY OF JANUARY, 2026

ENTERED:    THE 12th DAY OF JANUARY, 2026

### PENAL NOTICE

The effect of this Order is that the directors, former directors, office holders and former office holders of the Respondent, DELIGHTFUL THRIVE LIMITED ("the Company") are replaced by the joint provisional liquidators and that the directors, former directors, office holders and former office holders are prohibited from taking any action in relation to the Company's affairs without prior consent of the joint provisional liquidators.

If you, the directors, former directors, office holders and former office holders of the Company fail to comply with the terms of this order, proceedings may be commenced against you for contempt of court and you may be liable to be imprisoned, fined or have your assets seized.

**This order must be complied with by any person affected by it upon whom it is served. Any other person who knows of this order and does anything which helps or permits the directors, former directors, office holders and/or former office holders of the Company to breach its terms may also be held to be in contempt of Court and may be imprisoned, fined or have their assets seized.**

**UPON THE ORDINARY APPLICATION** filed by the Applicant on 5 January 2026 seeking the appointment of James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110, Paul Pretlove and David Standish, both eligible overseas insolvency practitioner of Interpath Ltd, 10 Fleet Place, London EC4M 7RB, England as joint provisional liquidators of the Company pursuant to section 170 of the Insolvency Act 2003, (**"the Application"**) coming on for hearing.

**AND UPON HEARING** Paul B. Dennis K.C. and with him Nadine Whyte Laing and Koya Ryan of O'Neal Webster for the Applicant.

**AND UPON** the Attorney General Dawn J. Smith being present.

**AND UPON** Mr. Paul Pretlove and Mr. James Drury, two of the proposed joint provisional liquidators being present.

**AND UPON READING** the Application, the originating application to appoint liquidators of the Company, the first affidavit of the Attorney General, the affidavit of Jeni-Lee Watson and the other documents on the Court file.

**AND UPON** the Application being heard ex parte.

**IT IS HEREBY ORDERED THAT:**

1. James Drury, Paul Pretlove and David Standish be appointed jointly and severally as provisional liquidators (the **"Joint Provisional Liquidators"**) of the Company until further order.

2. The Joint Provisional Liquidators have the rights and powers of a liquidator to the extent necessary to maintain the value of the assets owned by the Company and to carry out the functions for which they are appointed.

3. In addition to the powers outlined in 2 above, the Joint Provisional Liquidators shall have the following specific powers which may be exercised without further sanction or intervention of this Honourable Court:

   a. to gain entry to the Company's premises and take possession of and preserve the books and records of the Company;

   b. to identify any assets which may remain in the possession or control of the Company, and to take such steps as may be necessary to protect any such assets from removal or dissipation;

   c. to seek the recognition (or its equivalent) of the appointment of the Joint Provisional Liquidators in the United States, United Kingdom, Singapore, Hong Kong, Taiwan Thailand and Cambodia or elsewhere for the purposes of securing, realising and remitting assets to the control of the Joint Provisional Liquidators and for the purpose of obtaining access to and control of the records of the Company;

   d. to commence, continue, discontinue or defend, including by way of counterclaim or similar response, any action or other legal proceedings in the name and on behalf of the Company in so far as necessary to protect the assets and information of the Company including:

      (i) issuing proceedings against the directors, former directors, office holders and former office holders of the Company, if so advised.

      (ii) intervening (if so advised) in ongoing proceedings which involve the Company and/or its directors, former directors, office holders and/or its former office holders.

   e. to vote the shares of the Company in order to prevent the dissipation of its assets.

   f. to carry on the business of the Company so far as may be necessary for its beneficial provisional liquidation;

   g. to take all necessary steps to obtain from any person documents or copy documents which belong to the Company or have been created or maintained on its behalf or which the Company has a right to obtain or inspect.

   h. to appoint an agent including a solicitor, or accountant to do any business that the Joint Provisional Liquidators are unable to do themselves in discharge of their duties, or which can be more conveniently done by an agent;

i.      to investigate the affairs of the Company so far as necessary to protect and, if necessary, retrieve the assets and records of the Company;

j.      to retain, manage and operate the existing bank accounts of the Company including, without limitation, the power to change, remove and replace the signatories of these accounts and, where necessary, to open new bank accounts;

k.      The Joint Provisional Liquidators may draw down payments on account of their remuneration, expenses and disbursements from time to time at a rate of 80% of their time costs and 100% of their expenses and disbursements, subject to these being subsequently approved by the court, and in the event that such sums are not approved, the unapproved sums be repaid to the Company within 7 days;

l.      to apply to the Court for directions concerning any matter arising out of the exercise of the above powers; and

m.      to do all other things as may be incidental to the exercise of the above functions and powers.

n.      to consult and share information with the Applicant to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company.

o.      to cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4.    The Joint Provisional Liquidators are authorised and directed to implement the protocol for consultation and information sharing between them and the Applicant in the draft which is attached hereto ("the Protocol").

5.    Any disclosure of information by the Joint Provisional Liquidators to the Applicant made in good faith and in accordance with the Protocol shall be deemed authorised by the Court and shall not constitute a breach of duty, confidence, data protection obligations or contractual restrictions binding upon the Company.

6.    The Joint Provisional Liquidators shall not be required to disclose material subject to legal professional privilege or litigation privilege.

7. The Joint Provisional Liquidators and the Applicant have liberty to apply on short notice for directions, variation or termination of the Protocol.

8. The costs of the provisional liquidation, including the proper fees and disbursements of the Joint Provisional Liquidators and the Applicant's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

9. The powers set out in paragraph 3 above are to the exclusion of any power exercised or purported to be exercised by any existing director of the Company in so far as such power concerns the affairs of the Company and its assets within the jurisdiction of the Virgin Islands.

10. Save as provided in paragraph 3 above the Joint Provisional Liquidators may not exercise any of the powers set out at Schedule 2 to the Insolvency Act, 2003 without sanction of the court.

11. Pursuant to section 174 of the Insolvency Act, 2003 alternatively pursuant to the inherent jurisdiction of the Court, all actions, suits or proceedings of any nature whatsoever against the Company be and are hereby restrained until further order of the Court.

12. During the period of their appointment, any act required or authorized to be done by the Joint Provisional Liquidators may be done by any one or more of them.

13. This order was made at a hearing without notice to the respondent. There will be a further hearing in respect of the order on or before *29ᵗʰ January 2026* with a time estimate of 30 minutes, for directions only (**the Return Date**).

14. The Joint Provisional Liquidators are to file and serve a report within one clear day before the Return Date summarising steps taken, any immediate concerns and recommended next steps.

15. The Company is at liberty to apply to vary or discharge the order upon giving 72 hours' notice to the Applicant and the Joint Provisional Liquidators.

16. The Joint Provisional Liquidators are at liberty to apply to vary or discharge the order if the allegations set out above are not substantiated or for some other reason upon giving 72 hours' notice to the Applicant and the Company.

17. The Applicant is not required to give an undertaking in damages.

18. The costs of this Application be costs in the provisional liquidation.

19. The Joint Provisional Liquidators are not required to pay or provide security.

BY THE COURT



REGISTRAR

**Protocol for Consultation and Information-Sharing Between the Liquidators and the Attorney General**

This Protocol is annexed to and forms part of the Order of the BVI Commercial Court (the **Court**) made on 9 January 2026 in Claim No. BVIHC (COM) 2026/0004 **("the Order").** Capitalised terms bear the meanings given in the Order unless the context otherwise requires.

### 1. Purpose and status

This Protocol sets out a consultative framework between the Liquidators and the Attorney General to facilitate effective cooperation in the public interest, including in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of Delightful Thrive Limited **("the Company")** For the avoidance of doubt, this Protocol is made pursuant to and with the approval of the Court, and disclosures made in good faith in accordance with this Protocol are deemed authorised by the Court.

### 2. Guiding principles

The Liquidators shall remain independent and act in the interests of the Company's creditors as a whole and the integrity of the winding up. The Attorney General's participation under this Protocol is consultative and does not fetter the Liquidators' statutory powers or duties, nor the Attorney General's independent functions. Both parties shall conduct themselves with candour, proportionality and respect for legal professional privilege, confidentiality, data protection and rule of law.

Nothing in this Protocol is intended to limit or restrict the ability of the Company's stakeholders to constitute a creditors' committee.

### 3. Definitions

- Attorney General means the Attorney General of the Virgin Islands and includes designated officers acting on the Attorney General's behalf for the purposes of this Protocol.
- The Company means Delightful Thrive Limited which is the subject of the Order.
- Confidential Information means non-public information concerning the Company, the liquidation, related investigations, counterparties and assets, including personal data and material subject to confidentiality obligations owed by the Company or the Liquidators.

- Privileged Material means material subject to legal professional privilege or litigation privilege, or any analogous protection recognised by the Court.

### 4. Appointment and representation

The Attorney General shall constitute a consultative committee and may nominate up to three designated representatives for liaison with the Liquidators, with at least one senior contact identified (the **AGs Committee**). The Attorney General may change representatives on notice to the Liquidators.

The AGs Committee shall serve alongside any creditors' committee (if one is formed), and the Liquidators shall have equal regard to the views expressed by both the AGs Committee and the creditors' committee (if formed).

### 5. Consultation framework

5.1 Meetings. The Liquidators shall convene regular consultation meetings (in person or virtual) with the Attorney General not less than once per quarter, and ad hoc meetings as reasonably required. The Liquidators shall chair meetings and circulate a brief agenda in advance. These meetings may be consolidated with meetings of the creditors' committee (if one is formed).

5.2 Attendance. The Liquidators may invite professional advisers and members of the liquidation team. The Attorney General may invite relevant law enforcement or regulatory personnel, provided confidentiality undertakings are observed.

5.3 Minutes. The Liquidators shall keep concise minutes recording attendees, topics discussed and any agreed actions, subject to privilege and sensitivity redactions where appropriate.

### 6. Reporting

6.1 Periodic reports. The Liquidators shall provide to the Attorney General a confidential report not less than once per quarter covering, to the extent appropriate and not prejudicial to the estate:

- status of asset identification, recovery actions and investigations;
- key applications to the Court and outcomes;
- known factual matters relevant to potential criminal offences or regulatory breaches; and
- anticipated steps in the next period.

6.2 Urgent matters. The Liquidators shall promptly notify the Attorney General of matters reasonably judged to be urgent, including (but not limited to) risk of dissipation, destruction of records, or flight of suspects.

6.3 Templates. The Liquidators may adopt reporting templates and may omit details where disclosure would prejudice recoveries, negotiations, privilege, or legal processes.

### 7. Information requests by the Attorney General

7.1 Scope. The Attorney General may request access to documents, data and information reasonably required in relation to the Company or related persons or entities.

7.2 Process. Requests shall be made in writing, identifying the categories sought, the purpose, and any timing sensitivities. The Liquidators shall acknowledge within 3 business days and respond within a reasonable time, taking into account volume, complexity and competing duties.

7.3 Reasonableness and sequencing. The Liquidators may propose reasonable narrowing, staging or alternative formats, including summaries or redactions, to protect privilege, confidentiality, commercial sensitivity, or the integrity of civil recovery efforts.

7.4 Court supervision. If disagreement arises which cannot be resolved promptly, either party may seek directions from the Court on short notice.

### 8. Authorised disclosures and gateways

8.1 Court authorisation. Subject to sections 9–12, the Liquidators are authorised by the Court to disclose Confidential Information to the Attorney General for the limited purposes of regulatory or criminal investigation and prosecution, restraint, confiscation, forfeiture, mutual legal assistance, and related protective measures, and to receive Confidential Information from the Attorney General for liquidation purposes.

8.2 Statutory gateways. To the extent any statutory or regulatory gateway is required for disclosure or use of information, the parties shall cooperate to identify and use such gateways, including by seeking further directions or orders of the Court as needed.

8.3 No breach. Disclosures made in good faith under this Protocol shall not constitute a breach of duty, confidence, data protection laws, or contractual restrictions binding on the Company, and the Liquidators shall have the protection of the Court accordingly.

### 9. Privilege and confidentiality

9.1 Privilege preserved. The Liquidators shall not be required to disclose Privileged Material. Any inadvertent disclosure shall not constitute a waiver of privilege, and the Attorney General shall promptly return or delete such material and refrain from review or use upon notification.

9.2 Common interest. Where appropriate, and subject to legal advice, the parties may agree that certain exchanges are made on a common interest or joint interest basis to preserve privilege.

9.3 Use restrictions. The Attorney General shall maintain Confidential Information in confidence and use it solely for lawful law enforcement, regulatory and public interest purposes. Dissemination shall be limited to personnel with a need to know who are bound by equivalent confidentiality obligations.

9.4 Protective measures. Upon reasonable request, the Attorney General shall implement protective measures for sensitive materials, including secure handling protocols, restricted circulation, and, where appropriate, applications to seal or redact in criminal or regulatory proceedings to avoid prejudice to the estate.

### 10. Data protection and personal data

The parties shall process personal data lawfully, fairly and securely, with appropriate technical and organisational measures. Where cross-border transfers are contemplated, the parties shall cooperate to ensure a lawful transfer mechanism and, where necessary, seek the Court's directions.

### 11. Preservation and holds

The Liquidators shall implement and maintain appropriate document preservation measures in respect of the Company's records. The Attorney General shall notify the Liquidators of any preservation requirements arising from criminal investigations or proceedings, including anticipated requests or production deadlines, to allow timely compliance.

### 12. Coordination to avoid prejudice and duplication

The parties shall coordinate to minimise prejudice to the estate, civil recoveries and criminal processes, including by sequencing steps, agreeing standstills where appropriate, and consulting on timing of public filings or applications likely to have cross-impact. The Liquidators' primary duty to protect and realise assets shall be respected.

### 13. Public statements and confidentiality vis-à-vis third parties

Public statements about the Company, the liquidation or related investigations shall be coordinated to the extent practicable. The Liquidators may make statements required by law or the Court or necessary to protect assets or correct the market. The Attorney General may make statements required in the exercise of public functions, having regard to the Liquidators' requests to withhold sensitive details.

### 14. Costs and resourcing

The reasonable costs incurred by the Liquidators in complying with this Protocol, including costs of retrieval, review, redaction, secure transmission and liaison, are costs of the liquidation. Where requests impose material incremental burdens, the parties shall confer on pragmatic staging or cost-efficient approaches and, failing agreement, may seek the Court's directions.

### 15. Non-fetter and independence

Nothing in this Protocol fetters or derogates from the Liquidators' statutory powers and duties, or from the Attorney General's independent decision-making. The consultative role does not confer any power of direction over the Liquidators.

### 16. Conflicts and recusals

If a conflict of interest arises affecting any representative, that person shall recuse from relevant consultations. The parties shall notify each other of any material conflicts that could affect the integrity of cooperation, and may seek the Court's directions where necessary.

### 17. International cooperation

Where the Attorney General is engaged in mutual legal assistance, or cooperation with foreign authorities, the parties shall consult on scope and timing to ensure that disclosures and steps taken are consistent with this Protocol and do not unduly prejudice the liquidation or foreign proceedings. The Attorney

General shall take reasonable steps, where feasible, to secure protective handling by foreign authorities of any Confidential Information provided.

### 18. Records and audit trail

The Liquidators shall maintain a record of disclosures made to the Attorney General under this Protocol sufficient to evidence compliance, subject to privilege. The Attorney General shall, upon reasonable request, confirm receipt and any onward lawful use or disclosure to other agencies.

### 19. Duration, variation and termination

This Protocol takes effect upon the making of the Order and continues until the earlier of dissolution of the Company or further order of the Court. It may be varied by written agreement between the Liquidators and the Attorney General approved by the Court, or otherwise by order of the Court. The Court may suspend or terminate this Protocol upon application by either party.

### 20. Notices

Formal notices under this Protocol shall be in writing and sent to the designated contacts of each party as notified from time to time. Operational communications may be conducted by secure electronic means.

### 21. Dispute resolution and directions

Any dispute arising under or in connection with this Protocol shall, in the first instance, be addressed through consultation. Failing prompt resolution, either party may apply to the Court for directions on short notice.

### 22. Safe harbour

No act or omission of the Liquidators done in good faith and with reasonable care in reliance on this Protocol, or any directions of the Court, shall give rise to personal liability. The Liquidators shall be entitled to the usual indemnities out of the assets of the Company.

**Schedule 1 – Illustrative categories of information for disclosure**

A. Corporate records: constitutional documents, registers, organisational charts, officer and registered agent details.

B. Financial records: bank statements, ledgers, invoices, loan agreements, asset registers, related party transactions.

C. Communications: selected emails and messaging data from corporate systems relevant to suspected criminality.

D. Counterparty materials: KYC files, contracts, correspondence with intermediaries and fiduciaries.

E. Investigation work product: non-privileged factual memoranda, forensic accounting outputs, chain-of-custody logs.

F. Court materials: statements of affairs, affidavits, pleadings and orders (including sealed materials as authorised).

G. Asset tracing: non-privileged tracing schedules, dashboards, and summaries of restraints or recovery actions.

H. Preservation: litigation hold notices and repositories metadata (to the extent disclosure assists law enforcement).

Disclosure of any category remains subject to sections 9–12 of the Protocol.

**Schedule 2 – Template quarterly consultation report (confidential)**

1. Executive summary and key developments.

2. Asset position: discoveries, realisations, restraints and pending recovery actions.

3. Investigations: factual findings, cooperating witnesses, outstanding enquiries.

4. Legal proceedings: applications filed or contemplated; coordination with foreign courts.

5. Law enforcement interface: requests received/made; disclosures; pending deadlines.

6. Risks and mitigants: dissipation risks, data loss risks, reputational issues.

7. Next steps and proposed timetable; matters requiring Attorney General input.

8. Appendices: schedules of documents disclosed; privilege log (if applicable).

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0004

BETWEEN:

IN THE MATTER OF DELIGHTFUL THRIVE LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

Applicant

-v-

DELIGHTFUL THRIVE LIMITED

Respondent

---

**ORDER ON APPLICATION FOR
JOINT PROVISIONAL LIQUIDATORS**

---



O'Neal
Webster
Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 | Fax: (284) 393 5805
www.onealwebster.com

**Case Number :BVIHCOM2026/0005**



**FILED**
HIGH COURT
**TERRITORY OF**
**THE VIRGIN ISLANDS**

**Submitted Date:13/01/2026 11:40**

**Filed Date:13/01/2026 11:40**

**Fees Paid:0.00**



**Case Number :BVIHCOM2026/0005**

```
                                                  ┌─────────────────────┐
                                                  │        FILED        │
                                                  │   HIGH COURT        │
                                                  │    TERRITORY OF     │
                                                  │  THE VIRGIN ISLANDS │
                                                  └─────────────────────┘
```

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0005

**Submitted Date:12/01/2026 13:08**

**Filed Date:12/01/2026 13:08**

**Fees Paid:0.00**

BETWEEN:

IN THE MATTER OF EVEN SINCERITY LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

Applicant

-v-

EVEN SINCERITY LIMITED

Respondent

---

ORDER APPLICATION FOR JOINT PROVISIONAL LIQUIDATORS

---

BEFORE:      THE HONOURABLE JUSTICE ABBAS MITHANI

DATED:       THE 9th DAY OF JANUARY, 2026

ENTERED:     THE 12 DAY OF JANUARY, 2026

### PENAL NOTICE

The effect of this Order is that the directors, former directors, office holders and former office holders of the Respondent, EVEN SINCERITY LIMITED ("the Company") are replaced by the joint provisional liquidators and that the directors, former directors, office holders and former office holders are prohibited from taking any action in relation to the Company's affairs without prior consent of the joint provisional liquidators.

If you, the directors, former directors, office holders and former office holders of the Company fail to comply with the terms of this order, proceedings may be commenced against you for contempt of court and you may be liable to be imprisoned, fined or have your assets seized.

**This order must be complied with by any person affected by it upon whom it is served. Any other person who knows of this order and does anything which helps or permits the directors, former directors, office holders and/or former office holders of the Company to breach its terms may also be held to be in contempt of Court and may be imprisoned, fined or have their assets seized.**

**UPON THE ORDINARY APPLICATION** filed by the Applicant on 5 January 2026 seeking the appointment of James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110, Paul Pretlove and David Standish, both eligible overseas insolvency practitioner of Interpath Ltd, 10 Fleet Place, London EC4M 7RB, England as joint provisional liquidators of the Company pursuant to section 170 of the Insolvency Act 2003, (**"the Application"**) coming on for hearing.

**AND UPON HEARING** Paul B. Dennis K.C. and with him Nadine Whyte Laing and Koya Ryan of O'Neal Webster for the Applicant.

**AND UPON** the Attorney General Dawn J. Smith being present.

**AND UPON** Mr. Paul Pretlove and Mr. James Drury, two of the proposed joint provisional liquidators being present.

**AND UPON READING** the Application, the originating application to appoint liquidators of the Company, the first affidavit of the Attorney General, the affidavit of Jeni-Lee Watson and the other documents on the Court file.

**AND UPON** the Application being heard ex parte.

**IT IS HEREBY ORDERED THAT:**

1.    James Drury, Paul Pretlove and David Standish be appointed jointly and severally as provisional liquidators (the **"Joint Provisional Liquidators"**) of the Company until further order.

2.    The Joint Provisional Liquidators have the rights and powers of a liquidator to the extent necessary to maintain the value of the assets owned by the Company and to carry out the functions for which they are appointed.

3.  In addition to the powers outlined in 2 above, the Joint Provisional Liquidators shall have the following specific powers which may be exercised without further sanction or intervention of this Honourable Court:

a.  to gain entry to the Company's premises and take possession of and preserve the books and records of the Company;

b.  to identify any assets which may remain in the possession or control of the Company, and to take such steps as may be necessary to protect any such assets from removal or dissipation;

c.  to seek the recognition (or its equivalent) of the appointment of the Joint Provisional Liquidators in the United States, United Kingdom, Singapore, Hong Kong, Taiwan Thailand and Cambodia or elsewhere for the purposes of securing, realising and remitting assets to the control of the Joint Provisional Liquidators and for the purpose of obtaining access to and control of the records of the Company;

d.  to commence, continue, discontinue or defend, including by way of counterclaim or similar response, any action or other legal proceedings in the name and on behalf of the Company in so far as necessary to protect the assets and information of the Company including:

   (i)  issuing proceedings against the directors, former directors, office holders and former office holders of the Company, if so advised.

   (ii) intervening (if so advised) in ongoing proceedings which involve the Company and/or its directors, former directors, office holders and/or its former office holders.

e.  to vote the shares of the Company in order to prevent the dissipation of its assets.

f.  to carry on the business of the Company so far as may be necessary for its beneficial provisional liquidation;

g.  to take all necessary steps to obtain from any person documents or copy documents which belong to the Company or have been created or maintained on its behalf or which the Company has a right to obtain or inspect.

h.  to appoint an agent including a solicitor, or accountant to do any business that the Joint Provisional Liquidators are unable to do themselves in discharge of their duties, or which can be more conveniently done by an agent;

i.  to investigate the affairs of the Company so far as necessary to protect and, if necessary, retrieve the assets and records of the Company;

j.  to retain, manage and operate the existing bank accounts of the Company including, without limitation, the power to change, remove and replace the signatories of these accounts and, where necessary, to open new bank accounts;

k.  The Joint Provisional Liquidators may draw down payments on account of their remuneration, expenses and disbursements from time to time at a rate of 80% of their time costs and 100% of their expenses and disbursements, subject to these being subsequently approved by the court, and in the event that such sums are not approved, the unapproved sums be repaid to the Company within 7 days;

l.  to apply to the Court for directions concerning any matter arising out of the exercise of the above powers; and

m.  to do all other things as may be incidental to the exercise of the above functions and powers.

n.  to consult and share information with the Applicant to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company.

o.  to cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4.  The Joint Provisional Liquidators are authorised and directed to implement the protocol for consultation and information sharing between them and the Applicant in the draft which is attached hereto ("the Protocol").

5.  Any disclosure of information by the Joint Provisional Liquidators to the Applicant made in good faith and in accordance with the Protocol shall be deemed authorised by the Court and shall not constitute a breach of duty, confidence, data protection obligations or contractual restrictions binding upon the Company.

6.  The Joint Provisional Liquidators shall not be required to disclose material subject to legal professional privilege or litigation privilege.

7.   The Joint Provisional Liquidators and the Applicant have liberty to apply on short notice for directions, variation or termination of the Protocol.

8.   The costs of the provisional liquidation, including the proper fees and disbursements of the Joint Provisional Liquidators and the Applicant's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

9.   The powers set out in paragraph 3 above are to the exclusion of any power exercised or purported to be exercised by any existing director of the Company in so far as such power concerns the affairs of the Company and its assets within the jurisdiction of the Virgin Islands.

10.   Save as provided in paragraph 3 above the Joint Provisional Liquidators may not exercise any of the powers set out at Schedule 2 to the Insolvency Act, 2003 without sanction of the court.

11.   Pursuant to section 174 of the Insolvency Act, 2003 alternatively pursuant to the inherent jurisdiction of the Court, all actions, suits or proceedings of any nature whatsoever against the Company be and are hereby restrained until further order of the Court.

12.   During the period of their appointment, any act required or authorized to be done by the Joint Provisional Liquidators may be done by any one or more of them.

13.   This order was made at a hearing without notice to the respondent.  There will be a further hearing in respect of the order on or before *29th January 2026* with a time estimate of 30 minutes, for directions only (**the Return Date**).

14.   The Joint Provisional Liquidators are to file and serve a report within one clear day before the Return Date summarising steps taken, any immediate concerns and recommended next steps.

15.   The Company is at liberty to apply to vary or discharge the order upon giving 72 hours' notice to the Applicant and the Joint Provisional Liquidators.

16.   The Joint Provisional Liquidators are at liberty to apply to vary or discharge the order if the allegations set out above are not substantiated or for some other reason upon giving 72 hours' notice to the Applicant and the Company.

17. The Applicant is not required to give an undertaking in damages.

18. The costs of this Application be costs in the provisional liquidation.

19. The Joint Provisional Liquidators are not required to pay or provide security.

BY THE COURT



REGISTRAR

**Protocol for Consultation and Information-Sharing Between the Liquidators and the Attorney General**

This Protocol is annexed to and forms part of the Order of the BVI Commercial Court (the **Court**) made on 9 January 2026 in Claim No. BVIHC (COM) 2026/0005 **("the Order")**. Capitalised terms bear the meanings given in the Order unless the context otherwise requires.

## 1. Purpose and status

This Protocol sets out a consultative framework between the Liquidators and the Attorney General to facilitate effective cooperation in the public interest, including in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of Even Sincerity Limited ("the Company") For the avoidance of doubt, this Protocol is made pursuant to and with the approval of the Court, and disclosures made in good faith in accordance with this Protocol are deemed authorised by the Court.

## 2. Guiding principles

The Liquidators shall remain independent and act in the interests of the Company's creditors as a whole and the integrity of the winding up. The Attorney General's participation under this Protocol is consultative and does not fetter the Liquidators' statutory powers or duties, nor the Attorney General's independent functions. Both parties shall conduct themselves with candour, proportionality and respect for legal professional privilege, confidentiality, data protection and rule of law.

Nothing in this Protocol is intended to limit or restrict the ability of the Company's stakeholders to constitute a creditors' committee.

## 3. Definitions

- Attorney General means the Attorney General of the Virgin Islands and includes designated officers acting on the Attorney General's behalf for the purposes of this Protocol.
- The Company means Even Sincerity Limited which is the subject of the Order.
- Confidential Information means non-public information concerning the Company, the liquidation, related investigations, counterparties and assets, including personal data and material subject to confidentiality obligations owed by the Company or the Liquidators.

- Privileged Material means material subject to legal professional privilege or litigation privilege, or any analogous protection recognised by the Court.

### 4. Appointment and representation

The Attorney General shall constitute a consultative committee and may nominate up to three designated representatives for liaison with the Liquidators, with at least one senior contact identified (the **AGs Committee**). The Attorney General may change representatives on notice to the Liquidators.

The AGs Committee shall serve alongside any creditors' committee (if one is formed), and the Liquidators shall have equal regard to the views expressed by both the AGs Committee and the creditors' committee (if formed).

### 5. Consultation framework

5.1 Meetings. The Liquidators shall convene regular consultation meetings (in person or virtual) with the Attorney General not less than once per quarter, and ad hoc meetings as reasonably required. The Liquidators shall chair meetings and circulate a brief agenda in advance. These meetings may be consolidated with meetings of the creditors' committee (if one is formed).

5.2 Attendance. The Liquidators may invite professional advisers and members of the liquidation team. The Attorney General may invite relevant law enforcement or regulatory personnel, provided confidentiality undertakings are observed.

5.3 Minutes. The Liquidators shall keep concise minutes recording attendees, topics discussed and any agreed actions, subject to privilege and sensitivity redactions where appropriate.

### 6. Reporting

6.1 Periodic reports. The Liquidators shall provide to the Attorney General a confidential report not less than once per quarter covering, to the extent appropriate and not prejudicial to the estate:

- status of asset identification, recovery actions and investigations;
- key applications to the Court and outcomes;
- known factual matters relevant to potential criminal offences or regulatory breaches; and
- anticipated steps in the next period.

6.2 Urgent matters. The Liquidators shall promptly notify the Attorney General of matters reasonably judged to be urgent, including (but not limited to) risk of dissipation, destruction of records, or flight of suspects.

6.3 Templates. The Liquidators may adopt reporting templates and may omit details where disclosure would prejudice recoveries, negotiations, privilege, or legal processes.

### 7. Information requests by the Attorney General

7.1 Scope. The Attorney General may request access to documents, data and information reasonably required in relation to the Company or related persons or entities.

7.2 Process. Requests shall be made in writing, identifying the categories sought, the purpose, and any timing sensitivities. The Liquidators shall acknowledge within 3 business days and respond within a reasonable time, taking into account volume, complexity and competing duties.

7.3 Reasonableness and sequencing. The Liquidators may propose reasonable narrowing, staging or alternative formats, including summaries or redactions, to protect privilege, confidentiality, commercial sensitivity, or the integrity of civil recovery efforts.

7.4 Court supervision. If disagreement arises which cannot be resolved promptly, either party may seek directions from the Court on short notice.

### 8. Authorised disclosures and gateways

8.1 Court authorisation. Subject to sections 9–12, the Liquidators are authorised by the Court to disclose Confidential Information to the Attorney General for the limited purposes of regulatory or criminal investigation and prosecution, restraint, confiscation, forfeiture, mutual legal assistance, and related protective measures, and to receive Confidential Information from the Attorney General for liquidation purposes.

8.2 Statutory gateways. To the extent any statutory or regulatory gateway is required for disclosure or use of information, the parties shall cooperate to identify and use such gateways, including by seeking further directions or orders of the Court as needed.

8.3 No breach. Disclosures made in good faith under this Protocol shall not constitute a breach of duty, confidence, data protection laws, or contractual restrictions binding on the Company, and the Liquidators shall have the protection of the Court accordingly.

### 9. Privilege and confidentiality

9.1 Privilege preserved. The Liquidators shall not be required to disclose Privileged Material. Any inadvertent disclosure shall not constitute a waiver of privilege, and the Attorney General shall promptly return or delete such material and refrain from review or use upon notification.

9.2 Common interest. Where appropriate, and subject to legal advice, the parties may agree that certain exchanges are made on a common interest or joint interest basis to preserve privilege.

9.3 Use restrictions. The Attorney General shall maintain Confidential Information in confidence and use it solely for lawful law enforcement, regulatory and public interest purposes. Dissemination shall be limited to personnel with a need to know who are bound by equivalent confidentiality obligations.

9.4 Protective measures. Upon reasonable request, the Attorney General shall implement protective measures for sensitive materials, including secure handling protocols, restricted circulation, and, where appropriate, applications to seal or redact in criminal or regulatory proceedings to avoid prejudice to the estate.

### 10. Data protection and personal data

The parties shall process personal data lawfully, fairly and securely, with appropriate technical and organisational measures. Where cross-border transfers are contemplated, the parties shall cooperate to ensure a lawful transfer mechanism and, where necessary, seek the Court's directions.

### 11. Preservation and holds

The Liquidators shall implement and maintain appropriate document preservation measures in respect of the Company's records. The Attorney General shall notify the Liquidators of any preservation requirements arising from criminal investigations or proceedings, including anticipated requests or production deadlines, to allow timely compliance.

### 12. Coordination to avoid prejudice and duplication

The parties shall coordinate to minimise prejudice to the estate, civil recoveries and criminal processes, including by sequencing steps, agreeing standstills where appropriate, and consulting on timing of public filings or applications likely to have cross-impact. The Liquidators' primary duty to protect and realise assets shall be respected.

### 13. Public statements and confidentiality vis-à-vis third parties

Public statements about the Company, the liquidation or related investigations shall be coordinated to the extent practicable. The Liquidators may make statements required by law or the Court or necessary to protect assets or correct the market. The Attorney General may make statements required in the exercise of public functions, having regard to the Liquidators' requests to withhold sensitive details.

### 14. Costs and resourcing

The reasonable costs incurred by the Liquidators in complying with this Protocol, including costs of retrieval, review, redaction, secure transmission and liaison, are costs of the liquidation. Where requests impose material incremental burdens, the parties shall confer on pragmatic staging or cost-efficient approaches and, failing agreement, may seek the Court's directions.

### 15. Non-fetter and independence

Nothing in this Protocol fetters or derogates from the Liquidators' statutory powers and duties, or from the Attorney General's independent decision-making. The consultative role does not confer any power of direction over the Liquidators.

### 16. Conflicts and recusals

If a conflict of interest arises affecting any representative, that person shall recuse from relevant consultations. The parties shall notify each other of any material conflicts that could affect the integrity of cooperation, and may seek the Court's directions where necessary.

### 17. International cooperation

Where the Attorney General is engaged in mutual legal assistance, or cooperation with foreign authorities, the parties shall consult on scope and timing to ensure that disclosures and steps taken are consistent

with this Protocol and do not unduly prejudice the liquidation or foreign proceedings. The Attorney General shall take reasonable steps, where feasible, to secure protective handling by foreign authorities of any Confidential Information provided.

### 18. Records and audit trail

The Liquidators shall maintain a record of disclosures made to the Attorney General under this Protocol sufficient to evidence compliance, subject to privilege. The Attorney General shall, upon reasonable request, confirm receipt and any onward lawful use or disclosure to other agencies.

### 19. Duration, variation and termination

This Protocol takes effect upon the making of the Order and continues until the earlier of dissolution of the Company or further order of the Court. It may be varied by written agreement between the Liquidators and the Attorney General approved by the Court, or otherwise by order of the Court. The Court may suspend or terminate this Protocol upon application by either party.

### 20. Notices

Formal notices under this Protocol shall be in writing and sent to the designated contacts of each party as notified from time to time. Operational communications may be conducted by secure electronic means.

### 21. Dispute resolution and directions

Any dispute arising under or in connection with this Protocol shall, in the first instance, be addressed through consultation. Failing prompt resolution, either party may apply to the Court for directions on short notice.

### 22. Safe harbour

No act or omission of the Liquidators done in good faith and with reasonable care in reliance on this Protocol, or any directions of the Court, shall give rise to personal liability. The Liquidators shall be entitled to the usual indemnities out of the assets of the Company.

---

### Schedule 1 – Illustrative categories of information for disclosure

A. Corporate records: constitutional documents, registers, organisational charts, officer and registered agent details.

B. Financial records: bank statements, ledgers, invoices, loan agreements, asset registers, related party transactions.

C. Communications: selected emails and messaging data from corporate systems relevant to suspected criminality.

D. Counterparty materials: KYC files, contracts, correspondence with intermediaries and fiduciaries.

E. Investigation work product: non-privileged factual memoranda, forensic accounting outputs, chain-of-custody logs.

F. Court materials: statements of affairs, affidavits, pleadings and orders (including sealed materials as authorised).

G. Asset tracing: non-privileged tracing schedules, dashboards, and summaries of restraints or recovery actions.

H. Preservation: litigation hold notices and repositories metadata (to the extent disclosure assists law enforcement).

Disclosure of any category remains subject to sections 9–12 of the Protocol.

---

### Schedule 2 – Template quarterly consultation report (confidential)

1. Executive summary and key developments.

2. Asset position: discoveries, realisations, restraints and pending recovery actions.

3. Investigations: factual findings, cooperating witnesses, outstanding enquiries.

4. Legal proceedings: applications filed or contemplated; coordination with foreign courts.

5. Law enforcement interface: requests received/made; disclosures; pending deadlines.

6. Risks and mitigants: dissipation risks, data loss risks, reputational issues.

7. Next steps and proposed timetable; matters requiring Attorney General input.

8. Appendices: schedules of documents disclosed; privilege log (if applicable).

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0005

BETWEEN:

IN THE MATTER OF EVEN SINCERITY LIMITED


AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF
THE LAWS OF THE VIRGIN ISLANDS.


THE ATTORNEY GENERAL

Applicant

-v-

EVEN SINCERITY LIMITED

Respondent

---

**ORDER ON APPLICATION FOR
JOINT PROVISIONAL LIQUIDATORS**

---



**O'Neal
Webster**

Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 l Fax: (284) 393 5805
www.onealwebster.com

**Case Number :BVIHCOM2026/0006**



**Submitted Date:13/01/2026 11:45**

**Filed Date:13/01/2026 11:45**

**Fees Paid:0.00**



**Case Number :BVIHCOM2026/0006**



**FILED**
**HIGH COURT**
TERRITORY OF
THE VIRGIN ISLANDS

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0006

**Submitted Date:12/01/2026 13:10**

**Filed Date:12/01/2026 13:10**

**Fees Paid:0.00**

BETWEEN:

IN THE MATTER OF FULAM INVESTMENT LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

**Applicant**

-v-

FULAM INVESTMENT LIMITED

**Respondent**

---

ORDER APPLICATION FOR JOINT PROVISIONAL LIQUIDATORS

---

BEFORE:     THE HONOURABLE JUSTICE ABBAS MITHANI

DATED:      THE 9th DAY OF JANUARY, 2026

ENTERED:    THE 12 DAY OF JANUARY, 2026

PENAL NOTICE

The effect of this Order is that the directors, former directors, office holders and former office holders of the Respondent, FULAM INVESTMENT LIMITED ("the Company") are replaced by the joint provisional liquidators and that the directors, former directors, office holders and former office holders are prohibited from taking any action in relation to the Company's affairs without prior consent of the joint provisional liquidators.

If you, the directors, former directors, office holders and former office holders of the Company fail to comply with the terms of this order, proceedings may be commenced against you for contempt of court and you may be liable to be imprisoned, fined or have your assets seized.

**This order must be complied with by any person affected by it upon whom it is served. Any other person who knows of this order and does anything which helps or permits the directors, former directors, office holders and/or former office holders of the Company to breach its terms may also be held to be in contempt of Court and may be imprisoned, fined or have their assets seized.**

**UPON THE ORDINARY APPLICATION** filed by the Applicant on 5 January 2026 seeking the appointment of James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110, Paul Pretlove and David Standish, both eligible overseas insolvency practitioner of Interpath Ltd, 10 Fleet Place, London EC4M 7RB, England as joint provisional liquidators of the Company pursuant to section 170 of the Insolvency Act 2003, ("**the Application**") coming on for hearing.

**AND UPON HEARING** Paul B. Dennis K.C. and with him Nadine Whyte Laing and Koya Ryan of O'Neal Webster for the Applicant.

**AND UPON** the Attorney General Dawn J. Smith being present.

**AND UPON** Mr. Paul Pretlove and Mr. James Drury, two of the proposed joint provisional liquidators being present.

**AND UPON READING** the Application, the originating application to appoint liquidators of the Company, the first affidavit of the Attorney General, the affidavit of Jeni-Lee Watson and the other documents on the Court file.

**AND UPON** the Application being heard ex parte.

**IT IS HEREBY ORDERED THAT:**

1.     James Drury, Paul Pretlove and David Standish be appointed jointly and severally as provisional liquidators (the "**Joint Provisional Liquidators**") of the Company until further order.

2.     The Joint Provisional Liquidators have the rights and powers of a liquidator to the extent necessary to maintain the value of the assets owned by the Company and to carry out the functions for which they are appointed.

3.  In addition to the powers outlined in 2 above, the Joint Provisional Liquidators shall have the following specific powers which may be exercised without further sanction or intervention of this Honourable Court:

   a.  to gain entry to the Company's premises and take possession of and preserve the books and records of the Company;

   b.  to identify any assets which may remain in the possession or control of the Company, and to take such steps as may be necessary to protect any such assets from removal or dissipation;

   c.  to seek the recognition (or its equivalent) of the appointment of the Joint Provisional Liquidators in the United States, United Kingdom, Singapore, Hong Kong, Taiwan Thailand and Cambodia or elsewhere for the purposes of securing, realising and remitting assets to the control of the Joint Provisional Liquidators and for the purpose of obtaining access to and control of the records of the Company;

   d.  to commence, continue, discontinue or defend, including by way of counterclaim or similar response, any action or other legal proceedings in the name and on behalf of the Company in so far as necessary to protect the assets and information of the Company including:

      (i)  issuing proceedings against the directors, former directors, office holders and former office holders of the Company, if so advised.

      (ii)  intervening (if so advised) in ongoing proceedings which involve the Company and/or its directors, former directors, office holders and/or its former office holders.

   e.  to vote the shares of the Company in order to prevent the dissipation of its assets.

   f.  to carry on the business of the Company so far as may be necessary for its beneficial provisional liquidation;

   g.  to take all necessary steps to obtain from any person documents or copy documents which belong to the Company or have been created or maintained on its behalf or which the Company has a right to obtain or inspect.

   h.  to appoint an agent including a solicitor, or accountant to do any business that the Joint Provisional Liquidators are unable to do themselves in discharge of their duties, or which can be more conveniently done by an agent;

i. to investigate the affairs of the Company so far as necessary to protect and, if necessary, retrieve the assets and records of the Company;

j. to retain, manage and operate the existing bank accounts of the Company including, without limitation, the power to change, remove and replace the signatories of these accounts and, where necessary, to open new bank accounts;

k. The Joint Provisional Liquidators may draw down payments on account of their remuneration, expenses and disbursements from time to time at a rate of 80% of their time costs and 100% of their expenses and disbursements, subject to these being subsequently approved by the court, and in the event that such sums are not approved, the unapproved sums be repaid to the Company within 7 days;

l. to apply to the Court for directions concerning any matter arising out of the exercise of the above powers; and

m. to do all other things as may be incidental to the exercise of the above functions and powers.

n. to consult and share information with the Applicant to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company.

o. to cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4. The Joint Provisional Liquidators are authorised and directed to implement the protocol for consultation and information sharing between them and the Applicant in the draft which is attached hereto (**"the Protocol"**).

5. Any disclosure of information by the Joint Provisional Liquidators to the Applicant made in good faith and in accordance with the Protocol shall be deemed authorised by the Court and shall not constitute a breach of duty, confidence, data protection obligations or contractual restrictions binding upon the Company.

6. The Joint Provisional Liquidators shall not be required to disclose material subject to legal professional privilege or litigation privilege.

7.    The Joint Provisional Liquidators and the Applicant have liberty to apply on short notice for directions, variation or termination of the Protocol.

8.    The costs of the provisional liquidation, including the proper fees and disbursements of the Joint Provisional Liquidators and the Applicant's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

9.    The powers set out in paragraph 3 above are to the exclusion of any power exercised or purported to be exercised by any existing director of the Company in so far as such power concerns the affairs of the Company and its assets within the jurisdiction of the Virgin Islands.

10.   Save as provided in paragraph 3 above the Joint Provisional Liquidators may not exercise any of the powers set out at Schedule 2 to the Insolvency Act, 2003 without sanction of the court.

11.   Pursuant to section 174 of the Insolvency Act, 2003 alternatively pursuant to the inherent jurisdiction of the Court, all actions, suits or proceedings of any nature whatsoever against the Company be and are hereby restrained until further order of the Court.

12.   During the period of their appointment, any act required or authorized to be done by the Joint Provisional Liquidators may be done by any one or more of them.

13.   This order was made at a hearing without notice to the respondent.  There will be a further hearing in respect of the order on or before *29ᵗʰ January 2026* with a time estimate of 30 minutes, for directions only (**the Return Date**).

14.   The Joint Provisional Liquidators are to file and serve a report within one clear day before the Return Date summarising steps taken, any immediate concerns and recommended next steps.

15.   The Company is at liberty to apply to vary or discharge the order upon giving 72 hours' notice to the Applicant and the Joint Provisional Liquidators.

16.   The Joint Provisional Liquidators are at liberty to apply to vary or discharge the order if the allegations set out above are not substantiated or for some other reason upon giving 72 hours' notice to the Applicant and the Company.

17.    The Applicant is not required to give an undertaking in damages.

18.    The costs of this Application be costs in the provisional liquidation.

19.    The Joint Provisional Liquidators are not required to pay or provide security.

BY THE COURT



REGISTRAR

**Protocol for Consultation and Information-Sharing Between the Liquidators and the Attorney General**

This Protocol is annexed to and forms part of the Order of the BVI Commercial Court (the **Court**) made on 9 January 2026 in Claim No. BVIHC (COM) 2026/0006 **("the Order")**. Capitalised terms bear the meanings given in the Order unless the context otherwise requires.

## *1. Purpose and status*

This Protocol sets out a consultative framework between the Liquidators and the Attorney General to facilitate effective cooperation in the public interest, including in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of Fulam Investment Limited **("the Company")** For the avoidance of doubt, this Protocol is made pursuant to and with the approval of the Court, and disclosures made in good faith in accordance with this Protocol are deemed authorised by the Court.

## *2. Guiding principles*

The Liquidators shall remain independent and act in the interests of the Company's creditors as a whole and the integrity of the winding up. The Attorney General's participation under this Protocol is consultative and does not fetter the Liquidators' statutory powers or duties, nor the Attorney General's independent functions. Both parties shall conduct themselves with candour, proportionality and respect for legal professional privilege, confidentiality, data protection and rule of law.

Nothing in this Protocol is intended to limit or restrict the ability of the Company's stakeholders to constitute a creditors' committee.

## *3. Definitions*

- Attorney General means the Attorney General of the Virgin Islands and includes designated officers acting on the Attorney General's behalf for the purposes of this Protocol.
- The Company means Fulam Investment Limited which is the subject of the Order.
- Confidential Information means non-public information concerning the Company, the liquidation, related investigations, counterparties and assets, including personal data and material subject to confidentiality obligations owed by the Company or the Liquidators.

- Privileged Material means material subject to legal professional privilege or litigation privilege, or any analogous protection recognised by the Court.

### 4. Appointment and representation

The Attorney General shall constitute a consultative committee and may nominate up to three designated representatives for liaison with the Liquidators, with at least one senior contact identified (the **AGs Committee**). The Attorney General may change representatives on notice to the Liquidators.

The AGs Committee shall serve alongside any creditors' committee (if one is formed), and the Liquidators shall have equal regard to the views expressed by both the AGs Committee and the creditors' committee (if formed).

### 5. Consultation framework

5.1 Meetings. The Liquidators shall convene regular consultation meetings (in person or virtual) with the Attorney General not less than once per quarter, and ad hoc meetings as reasonably required. The Liquidators shall chair meetings and circulate a brief agenda in advance. These meetings may be consolidated with meetings of the creditors' committee (if one is formed).

5.2 Attendance. The Liquidators may invite professional advisers and members of the liquidation team. The Attorney General may invite relevant law enforcement or regulatory personnel, provided confidentiality undertakings are observed.

5.3 Minutes. The Liquidators shall keep concise minutes recording attendees, topics discussed and any agreed actions, subject to privilege and sensitivity redactions where appropriate.

### 6. Reporting

6.1 Periodic reports. The Liquidators shall provide to the Attorney General a confidential report not less than once per quarter covering, to the extent appropriate and not prejudicial to the estate:

- status of asset identification, recovery actions and investigations;
- key applications to the Court and outcomes;
- known factual matters relevant to potential criminal offences or regulatory breaches; and
- anticipated steps in the next period.

6.2 Urgent matters. The Liquidators shall promptly notify the Attorney General of matters reasonably judged to be urgent, including (but not limited to) risk of dissipation, destruction of records, or flight of suspects.

6.3 Templates. The Liquidators may adopt reporting templates and may omit details where disclosure would prejudice recoveries, negotiations, privilege, or legal processes.

### 7. Information requests by the Attorney General

7.1 Scope. The Attorney General may request access to documents, data and information reasonably required in relation to the Company or related persons or entities.

7.2 Process. Requests shall be made in writing, identifying the categories sought, the purpose, and any timing sensitivities. The Liquidators shall acknowledge within 3 business days and respond within a reasonable time, taking into account volume, complexity and competing duties.

7.3 Reasonableness and sequencing. The Liquidators may propose reasonable narrowing, staging or alternative formats, including summaries or redactions, to protect privilege, confidentiality, commercial sensitivity, or the integrity of civil recovery efforts.

7.4 Court supervision. If disagreement arises which cannot be resolved promptly, either party may seek directions from the Court on short notice.

### 8. Authorised disclosures and gateways

8.1 Court authorisation. Subject to sections 9–12, the Liquidators are authorised by the Court to disclose Confidential Information to the Attorney General for the limited purposes of regulatory or criminal investigation and prosecution, restraint, confiscation, forfeiture, mutual legal assistance, and related protective measures, and to receive Confidential Information from the Attorney General for liquidation purposes.

8.2 Statutory gateways. To the extent any statutory or regulatory gateway is required for disclosure or use of information, the parties shall cooperate to identify and use such gateways, including by seeking further directions or orders of the Court as needed.

8.3 No breach. Disclosures made in good faith under this Protocol shall not constitute a breach of duty, confidence, data protection laws, or contractual restrictions binding on the Company, and the Liquidators shall have the protection of the Court accordingly.

### 9. Privilege and confidentiality

9.1 Privilege preserved. The Liquidators shall not be required to disclose Privileged Material. Any inadvertent disclosure shall not constitute a waiver of privilege, and the Attorney General shall promptly return or delete such material and refrain from review or use upon notification.

9.2 Common interest. Where appropriate, and subject to legal advice, the parties may agree that certain exchanges are made on a common interest or joint interest basis to preserve privilege.

9.3 Use restrictions. The Attorney General shall maintain Confidential Information in confidence and use it solely for lawful law enforcement, regulatory and public interest purposes. Dissemination shall be limited to personnel with a need to know who are bound by equivalent confidentiality obligations.

9.4 Protective measures. Upon reasonable request, the Attorney General shall implement protective measures for sensitive materials, including secure handling protocols, restricted circulation, and, where appropriate, applications to seal or redact in criminal or regulatory proceedings to avoid prejudice to the estate.

### 10. Data protection and personal data

The parties shall process personal data lawfully, fairly and securely, with appropriate technical and organisational measures. Where cross-border transfers are contemplated, the parties shall cooperate to ensure a lawful transfer mechanism and, where necessary, seek the Court's directions.

### 11. Preservation and holds

The Liquidators shall implement and maintain appropriate document preservation measures in respect of the Company's records. The Attorney General shall notify the Liquidators of any preservation requirements arising from criminal investigations or proceedings, including anticipated requests or production deadlines, to allow timely compliance.

### 12. Coordination to avoid prejudice and duplication

The parties shall coordinate to minimise prejudice to the estate, civil recoveries and criminal processes, including by sequencing steps, agreeing standstills where appropriate, and consulting on timing of public filings or applications likely to have cross-impact. The Liquidators' primary duty to protect and realise assets shall be respected.

### 13. Public statements and confidentiality vis-à-vis third parties

Public statements about the Company, the liquidation or related investigations shall be coordinated to the extent practicable. The Liquidators may make statements required by law or the Court or necessary to protect assets or correct the market. The Attorney General may make statements required in the exercise of public functions, having regard to the Liquidators' requests to withhold sensitive details.

### 14. Costs and resourcing

The reasonable costs incurred by the Liquidators in complying with this Protocol, including costs of retrieval, review, redaction, secure transmission and liaison, are costs of the liquidation. Where requests impose material incremental burdens, the parties shall confer on pragmatic staging or cost-efficient approaches and, failing agreement, may seek the Court's directions.

### 15. Non-fetter and independence

Nothing in this Protocol fetters or derogates from the Liquidators' statutory powers and duties, or from the Attorney General's independent decision-making. The consultative role does not confer any power of direction over the Liquidators.

### 16. Conflicts and recusals

If a conflict of interest arises affecting any representative, that person shall recuse from relevant consultations. The parties shall notify each other of any material conflicts that could affect the integrity of cooperation, and may seek the Court's directions where necessary.

### 17. International cooperation

Where the Attorney General is engaged in mutual legal assistance, or cooperation with foreign authorities, the parties shall consult on scope and timing to ensure that disclosures and steps taken are consistent

with this Protocol and do not unduly prejudice the liquidation or foreign proceedings. The Attorney General shall take reasonable steps, where feasible, to secure protective handling by foreign authorities of any Confidential Information provided.

### 18. Records and audit trail

The Liquidators shall maintain a record of disclosures made to the Attorney General under this Protocol sufficient to evidence compliance, subject to privilege. The Attorney General shall, upon reasonable request, confirm receipt and any onward lawful use or disclosure to other agencies.

### 19. Duration, variation and termination

This Protocol takes effect upon the making of the Order and continues until the earlier of dissolution of the Company or further order of the Court. It may be varied by written agreement between the Liquidators and the Attorney General approved by the Court, or otherwise by order of the Court. The Court may suspend or terminate this Protocol upon application by either party.

### 20. Notices

Formal notices under this Protocol shall be in writing and sent to the designated contacts of each party as notified from time to time. Operational communications may be conducted by secure electronic means.

### 21. Dispute resolution and directions

Any dispute arising under or in connection with this Protocol shall, in the first instance, be addressed through consultation. Failing prompt resolution, either party may apply to the Court for directions on short notice.

### 22. Safe harbour

No act or omission of the Liquidators done in good faith and with reasonable care in reliance on this Protocol, or any directions of the Court, shall give rise to personal liability. The Liquidators shall be entitled to the usual indemnities out of the assets of the Company.

**Schedule 1 – Illustrative categories of information for disclosure**

A. Corporate records: constitutional documents, registers, organisational charts, officer and registered agent details.

B. Financial records: bank statements, ledgers, invoices, loan agreements, asset registers, related party transactions.

C. Communications: selected emails and messaging data from corporate systems relevant to suspected criminality.

D. Counterparty materials: KYC files, contracts, correspondence with intermediaries and fiduciaries.

E. Investigation work product: non-privileged factual memoranda, forensic accounting outputs, chain-of-custody logs.

F. Court materials: statements of affairs, affidavits, pleadings and orders (including sealed materials as authorised).

G. Asset tracing: non-privileged tracing schedules, dashboards, and summaries of restraints or recovery actions.

H. Preservation: litigation hold notices and repositories metadata (to the extent disclosure assists law enforcement).

Disclosure of any category remains subject to sections 9–12 of the Protocol.

**Schedule 2 – Template quarterly consultation report (confidential)**

1. Executive summary and key developments.

2. Asset position: discoveries, realisations, restraints and pending recovery actions.

3. Investigations: factual findings, cooperating witnesses, outstanding enquiries.

4. Legal proceedings: applications filed or contemplated; coordination with foreign courts.

5. Law enforcement interface: requests received/made; disclosures; pending deadlines.

6. Risks and mitigants: dissipation risks, data loss risks, reputational issues.

7. Next steps and proposed timetable; matters requiring Attorney General input.

8. Appendices: schedules of documents disclosed; privilege log (if applicable).

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0006

BETWEEN:

IN THE MATTER OF FULAM INVESTMENT LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

Applicant

-v-

FULAM INVESTMENT LIMITED

Respondent

---

**ORDER ON APPLICATION FOR JOINT PROVISIONAL LIQUIDATORS**

---



Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 l Fax: (284) 393 5805
www.onealwebster.com

Case Number :BVIHCOM2026/0007



FILED
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS

Submitted Date:13/01/2026 11:53

Filed Date:13/01/2026 11:53

Fees Paid:0.00



**Case Number :BVIHCOM2026/0007**

**FILED**
**HIGH COURT**
TERRITORY OF
THE VIRGIN ISLANDS

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0007

**Submitted Date:12/01/2026 13:11**

**Filed Date:12/01/2026 13:11**

**Fees Paid:0.00**

BETWEEN:

IN THE MATTER OF GIANT VICTORY HOLDINGS LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

Applicant

-v-

GIANT VICTORY HOLDINGS LIMITED

Respondent

_____

ORDER APPLICATION FOR JOINT PROVISIONAL LIQUIDATORS

_____

BEFORE:     THE HONOURABLE JUSTICE ABBAS MITHANI

DATED:      THE 9th DAY OF JANUARY, 2026

ENTERED:    THE 12th DAY OF JANUARY, 2026

PENAL NOTICE

The effect of this Order is that the directors, former directors, office holders and former office holders of the Respondent, GIANT VICTORY HOLDINGS LIMITED ("the Company") are replaced by the joint provisional liquidators and that the directors, former directors, office holders and former office holders are prohibited from taking any action in relation to the Company's affairs without prior consent of the joint provisional liquidators.

If you, the directors, former directors, office holders and former office holders of the Company fail to comply with the terms of this order, proceedings may be commenced against you for contempt of court and you may be liable to be imprisoned, fined or have your assets seized.

**This order must be complied with by any person affected by it upon whom it is served. Any other person who knows of this order and does anything which helps or permits the directors, former directors, office holders and/or former office holders of the Company to breach its terms may also be held to be in contempt of Court and may be imprisoned, fined or have their assets seized.**

**UPON THE ORDINARY APPLICATION** filed by the Applicant on 5 January 2026 seeking the appointment of James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110, Paul Pretlove and David Standish, both eligible overseas insolvency practitioner of Interpath Ltd, 10 Fleet Place, London EC4M 7RB, England as joint provisional liquidators of the Company pursuant to section 170 of the Insolvency Act 2003, (**"the Application"**) coming on for hearing.

**AND UPON HEARING** Paul B. Dennis K.C. and with him Nadine Whyte Laing and Koya Ryan of O'Neal Webster for the Applicant.

**AND UPON** the Attorney General Dawn J. Smith being present.

**AND UPON** Mr. Paul Pretlove and Mr. James Drury, two of the proposed joint provisional liquidators being present.

**AND UPON READING** the Application, the originating application to appoint liquidators of the Company, the first affidavit of the Attorney General, the affidavit of Jeni-Lee Watson and the other documents on the Court file.

**AND UPON** the Application being heard ex parte.

**IT IS HEREBY ORDERED THAT:**

1.   James Drury, Paul Pretlove and David Standish be appointed jointly and severally as provisional liquidators (the **"Joint Provisional Liquidators"**) of the Company until further order.

2.   The Joint Provisional Liquidators have the rights and powers of a liquidator to the extent necessary to maintain the value of the assets owned by the Company and to carry out the functions for which they are appointed.

3.  In addition to the powers outlined in 2 above, the Joint Provisional Liquidators shall have the following specific powers which may be exercised without further sanction or intervention of this Honourable Court:

   a.  to gain entry to the Company's premises and take possession of and preserve the books and records of the Company;

   b.  to identify any assets which may remain in the possession or control of the Company, and to take such steps as may be necessary to protect any such assets from removal or dissipation;

   c.  to seek the recognition (or its equivalent) of the appointment of the Joint Provisional Liquidators in the United States, United Kingdom, Singapore, Hong Kong, Taiwan Thailand and Cambodia or elsewhere for the purposes of securing, realising and remitting assets to the control of the Joint Provisional Liquidators and for the purpose of obtaining access to and control of the records of the Company;

   d.  to commence, continue, discontinue or defend, including by way of counterclaim or similar response, any action or other legal proceedings in the name and on behalf of the Company in so far as necessary to protect the assets and information of the Company including:

      (i)  issuing proceedings against the directors, former directors, office holders and former office holders of the Company, if so advised.

      (ii)  intervening (if so advised) in ongoing proceedings which involve the Company and/or its directors, former directors, office holders and/or its former office holders.

   e.  to vote the shares of the Company in order to prevent the dissipation of its assets.

   f.  to carry on the business of the Company so far as may be necessary for its beneficial provisional liquidation;

   g.  to take all necessary steps to obtain from any person documents or copy documents which belong to the Company or have been created or maintained on its behalf or which the Company has a right to obtain or inspect.

   h.  to appoint an agent including a solicitor, or accountant to do any business that the Joint Provisional Liquidators are unable to do themselves in discharge of their duties, or which can be more conveniently done by an agent;

i. to investigate the affairs of the Company so far as necessary to protect and, if necessary, retrieve the assets and records of the Company;

j. to retain, manage and operate the existing bank accounts of the Company including, without limitation, the power to change, remove and replace the signatories of these accounts and, where necessary, to open new bank accounts;

k. The Joint Provisional Liquidators may draw down payments on account of their remuneration, expenses and disbursements from time to time at a rate of 80% of their time costs and 100% of their expenses and disbursements, subject to these being subsequently approved by the court, and in the event that such sums are not approved, the unapproved sums be repaid to the Company within 7 days;

l. to apply to the Court for directions concerning any matter arising out of the exercise of the above powers; and

m. to do all other things as may be incidental to the exercise of the above functions and powers.

n. to consult and share information with the Applicant to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company.

o. to cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4. The Joint Provisional Liquidators are authorised and directed to implement the protocol for consultation and information sharing between them and the Applicant in the draft which is attached hereto ("the Protocol").

5. Any disclosure of information by the Joint Provisional Liquidators to the Applicant made in good faith and in accordance with the Protocol shall be deemed authorised by the Court and shall not constitute a breach of duty, confidence, data protection obligations or contractual restrictions binding upon the Company.

6. The Joint Provisional Liquidators shall not be required to disclose material subject to legal professional privilege or litigation privilege.

7.   The Joint Provisional Liquidators and the Applicant have liberty to apply on short notice for directions, variation or termination of the Protocol.

8.   The costs of the provisional liquidation, including the proper fees and disbursements of the Joint Provisional Liquidators and the Applicant's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

9.   The powers set out in paragraph 3 above are to the exclusion of any power exercised or purported to be exercised by any existing director of the Company in so far as such power concerns the affairs of the Company and its assets within the jurisdiction of the Virgin Islands.

10.   Save as provided in paragraph 3 above the Joint Provisional Liquidators may not exercise any of the powers set out at Schedule 2 to the Insolvency Act, 2003 without sanction of the court.

11.   Pursuant to section 174 of the Insolvency Act, 2003 alternatively pursuant to the inherent jurisdiction of the Court, all actions, suits or proceedings of any nature whatsoever against the Company be and are hereby restrained until further order of the Court.

12.   During the period of their appointment, any act required or authorized to be done by the Joint Provisional Liquidators may be done by any one or more of them.

13.   This order was made at a hearing without notice to the respondent.  There will be a further hearing in respect of the order on or before *29th January 2026* with a time estimate of 30 minutes, for directions only (**the Return Date**).

14.   The Joint Provisional Liquidators are to file and serve a report within one clear day before the Return Date summarising steps taken, any immediate concerns and recommended next steps.

15.   The Company is at liberty to apply to vary or discharge the order upon giving 72 hours' notice to the Applicant and the Joint Provisional Liquidators.

16.   The Joint Provisional Liquidators are at liberty to apply to vary or discharge the order if the allegations set out above are not substantiated or for some other reason upon giving 72 hours' notice to the Applicant and the Company.

17.   The Applicant is not required to give an undertaking in damages.

18.   The costs of this Application be costs in the provisional liquidation.

19.   The Joint Provisional Liquidators are not required to pay or provide security.

BY THE COURT



_____

REGISTRAR

**Protocol for Consultation and Information-Sharing Between the Liquidators and the Attorney General**

This Protocol is annexed to and forms part of the Order of the BVI Commercial Court (the **Court**) made on 9 January 2026 in Claim No. BVIHC (COM) 2026/0007 (**"the Order"**). Capitalised terms bear the meanings given in the Order unless the context otherwise requires.

### 1. Purpose and status

This Protocol sets out a consultative framework between the Liquidators and the Attorney General to facilitate effective cooperation in the public interest, including in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of Giant Victory Holdings Limited (**"the Company"**) For the avoidance of doubt, this Protocol is made pursuant to and with the approval of the Court, and disclosures made in good faith in accordance with this Protocol are deemed authorised by the Court.

### 2. Guiding principles

The Liquidators shall remain independent and act in the interests of the Company's creditors as a whole and the integrity of the winding up. The Attorney General's participation under this Protocol is consultative and does not fetter the Liquidators' statutory powers or duties, nor the Attorney General's independent functions. Both parties shall conduct themselves with candour, proportionality and respect for legal professional privilege, confidentiality, data protection and rule of law.

Nothing in this Protocol is intended to limit or restrict the ability of the Company's stakeholders to constitute a creditors' committee.

### 3. Definitions

- Attorney General means the Attorney General of the Virgin Islands and includes designated officers acting on the Attorney General's behalf for the purposes of this Protocol.
- The Company means Giant Victory Holdings Limited which is the subject of the Order.
- Confidential Information means non-public information concerning the Company, the liquidation, related investigations, counterparties and assets, including personal data and material subject to confidentiality obligations owed by the Company or the Liquidators.

- Privileged Material means material subject to legal professional privilege or litigation privilege, or any analogous protection recognised by the Court.

### 4. Appointment and representation

The Attorney General shall constitute a consultative committee and may nominate up to three designated representatives for liaison with the Liquidators, with at least one senior contact identified (the **AGs Committee**). The Attorney General may change representatives on notice to the Liquidators.

The AGs Committee shall serve alongside any creditors' committee (if one is formed), and the Liquidators shall have equal regard to the views expressed by both the AGs Committee and the creditors' committee (if formed).

### 5. Consultation framework

5.1 Meetings. The Liquidators shall convene regular consultation meetings (in person or virtual) with the Attorney General not less than once per quarter, and ad hoc meetings as reasonably required. The Liquidators shall chair meetings and circulate a brief agenda in advance. These meetings may be consolidated with meetings of the creditors' committee (if one is formed).

5.2 Attendance. The Liquidators may invite professional advisers and members of the liquidation team. The Attorney General may invite relevant law enforcement or regulatory personnel, provided confidentiality undertakings are observed.

5.3 Minutes. The Liquidators shall keep concise minutes recording attendees, topics discussed and any agreed actions, subject to privilege and sensitivity redactions where appropriate.

### 6. Reporting

6.1 Periodic reports. The Liquidators shall provide to the Attorney General a confidential report not less than once per quarter covering, to the extent appropriate and not prejudicial to the estate:

- status of asset identification, recovery actions and investigations;
- key applications to the Court and outcomes;
- known factual matters relevant to potential criminal offences or regulatory breaches; and
- anticipated steps in the next period.

6.2 Urgent matters. The Liquidators shall promptly notify the Attorney General of matters reasonably judged to be urgent, including (but not limited to) risk of dissipation, destruction of records, or flight of suspects.

6.3 Templates. The Liquidators may adopt reporting templates and may omit details where disclosure would prejudice recoveries, negotiations, privilege, or legal processes.

### 7. Information requests by the Attorney General

7.1 Scope. The Attorney General may request access to documents, data and information reasonably required in relation to the Company or related persons or entities.

7.2 Process. Requests shall be made in writing, identifying the categories sought, the purpose, and any timing sensitivities. The Liquidators shall acknowledge within 3 business days and respond within a reasonable time, taking into account volume, complexity and competing duties.

7.3 Reasonableness and sequencing. The Liquidators may propose reasonable narrowing, staging or alternative formats, including summaries or redactions, to protect privilege, confidentiality, commercial sensitivity, or the integrity of civil recovery efforts.

7.4 Court supervision. If disagreement arises which cannot be resolved promptly, either party may seek directions from the Court on short notice.

### 8. Authorised disclosures and gateways

8.1 Court authorisation. Subject to sections 9–12, the Liquidators are authorised by the Court to disclose Confidential Information to the Attorney General for the limited purposes of regulatory or criminal investigation and prosecution, restraint, confiscation, forfeiture, mutual legal assistance, and related protective measures, and to receive Confidential Information from the Attorney General for liquidation purposes.

8.2 Statutory gateways. To the extent any statutory or regulatory gateway is required for disclosure or use of information, the parties shall cooperate to identify and use such gateways, including by seeking further directions or orders of the Court as needed.

8.3 No breach. Disclosures made in good faith under this Protocol shall not constitute a breach of duty, confidence, data protection laws, or contractual restrictions binding on the Company, and the Liquidators shall have the protection of the Court accordingly.

### 9. Privilege and confidentiality

9.1 Privilege preserved. The Liquidators shall not be required to disclose Privileged Material. Any inadvertent disclosure shall not constitute a waiver of privilege, and the Attorney General shall promptly return or delete such material and refrain from review or use upon notification.

9.2 Common interest. Where appropriate, and subject to legal advice, the parties may agree that certain exchanges are made on a common interest or joint interest basis to preserve privilege.

9.3 Use restrictions. The Attorney General shall maintain Confidential Information in confidence and use it solely for lawful law enforcement, regulatory and public interest purposes. Dissemination shall be limited to personnel with a need to know who are bound by equivalent confidentiality obligations.

9.4 Protective measures. Upon reasonable request, the Attorney General shall implement protective measures for sensitive materials, including secure handling protocols, restricted circulation, and, where appropriate, applications to seal or redact in criminal or regulatory proceedings to avoid prejudice to the estate.

### 10. Data protection and personal data

The parties shall process personal data lawfully, fairly and securely, with appropriate technical and organisational measures. Where cross-border transfers are contemplated, the parties shall cooperate to ensure a lawful transfer mechanism and, where necessary, seek the Court's directions.

### 11. Preservation and holds

The Liquidators shall implement and maintain appropriate document preservation measures in respect of the Company's records. The Attorney General shall notify the Liquidators of any preservation requirements arising from criminal investigations or proceedings, including anticipated requests or production deadlines, to allow timely compliance.

### 12. Coordination to avoid prejudice and duplication

The parties shall coordinate to minimise prejudice to the estate, civil recoveries and criminal processes, including by sequencing steps, agreeing standstills where appropriate, and consulting on timing of public filings or applications likely to have cross-impact. The Liquidators' primary duty to protect and realise assets shall be respected.

### 13. Public statements and confidentiality vis-à-vis third parties

Public statements about the Company, the liquidation or related investigations shall be coordinated to the extent practicable. The Liquidators may make statements required by law or the Court or necessary to protect assets or correct the market. The Attorney General may make statements required in the exercise of public functions, having regard to the Liquidators' requests to withhold sensitive details.

### 14. Costs and resourcing

The reasonable costs incurred by the Liquidators in complying with this Protocol, including costs of retrieval, review, redaction, secure transmission and liaison, are costs of the liquidation. Where requests impose material incremental burdens, the parties shall confer on pragmatic staging or cost-efficient approaches and, failing agreement, may seek the Court's directions.

### 15. Non-fetter and independence

Nothing in this Protocol fetters or derogates from the Liquidators' statutory powers and duties, or from the Attorney General's independent decision-making. The consultative role does not confer any power of direction over the Liquidators.

### 16. Conflicts and recusals

If a conflict of interest arises affecting any representative, that person shall recuse from relevant consultations. The parties shall notify each other of any material conflicts that could affect the integrity of cooperation, and may seek the Court's directions where necessary.

### 17. International cooperation

Where the Attorney General is engaged in mutual legal assistance, or cooperation with foreign authorities, the parties shall consult on scope and timing to ensure that disclosures and steps taken are consistent with this Protocol and do not unduly prejudice the liquidation or foreign proceedings. The Attorney

General shall take reasonable steps, where feasible, to secure protective handling by foreign authorities of any Confidential Information provided.

### 18. Records and audit trail

The Liquidators shall maintain a record of disclosures made to the Attorney General under this Protocol sufficient to evidence compliance, subject to privilege. The Attorney General shall, upon reasonable request, confirm receipt and any onward lawful use or disclosure to other agencies.

### 19. Duration, variation and termination

This Protocol takes effect upon the making of the Order and continues until the earlier of dissolution of the Company or further order of the Court. It may be varied by written agreement between the Liquidators and the Attorney General approved by the Court, or otherwise by order of the Court. The Court may suspend or terminate this Protocol upon application by either party.

### 20. Notices

Formal notices under this Protocol shall be in writing and sent to the designated contacts of each party as notified from time to time. Operational communications may be conducted by secure electronic means.

### 21. Dispute resolution and directions

Any dispute arising under or in connection with this Protocol shall, in the first instance, be addressed through consultation. Failing prompt resolution, either party may apply to the Court for directions on short notice.

### 22. Safe harbour

No act or omission of the Liquidators done in good faith and with reasonable care in reliance on this Protocol, or any directions of the Court, shall give rise to personal liability. The Liquidators shall be entitled to the usual indemnities out of the assets of the Company.

**Schedule 1 – Illustrative categories of information for disclosure**

    A.  Corporate records: constitutional documents, registers, organisational charts, officer and registered agent details.

    B.  Financial records: bank statements, ledgers, invoices, loan agreements, asset registers, related party transactions.

    C.  Communications: selected emails and messaging data from corporate systems relevant to suspected criminality.

    D.  Counterparty materials: KYC files, contracts, correspondence with intermediaries and fiduciaries.

    E.  Investigation work product: non-privileged factual memoranda, forensic accounting outputs, chain-of-custody logs.

    F.  Court materials: statements of affairs, affidavits, pleadings and orders (including sealed materials as authorised).

    G.  Asset tracing: non-privileged tracing schedules, dashboards, and summaries of restraints or recovery actions.

    H.  Preservation: litigation hold notices and repositories metadata (to the extent disclosure assists law enforcement).

Disclosure of any category remains subject to sections 9–12 of the Protocol.

**Schedule 2 – Template quarterly consultation report (confidential)**

1.  Executive summary and key developments.

2.  Asset position: discoveries, realisations, restraints and pending recovery actions.

3.  Investigations: factual findings, cooperating witnesses, outstanding enquiries.

4.  Legal proceedings: applications filed or contemplated; coordination with foreign courts.

5.  Law enforcement interface: requests received/made; disclosures; pending deadlines.

6.  Risks and mitigants: dissipation risks, data loss risks, reputational issues.

7.  Next steps and proposed timetable; matters requiring Attorney General input.

8.  Appendices: schedules of documents disclosed; privilege log (if applicable).

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0007

BETWEEN:

IN THE MATTER OF GIANT VICTORY HOLDINGS LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF
THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

Applicant

-v-

GIANT VICTORY HOLDINGS LIMITED

Respondent

---

**ORDER ON APPLICATION FOR
JOINT PROVISIONAL LIQUIDATORS**

---

O'Neal
Webster
Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 I Fax: (284) 393 5805
www.onealwebster.com



**Submitted Date:13/01/2026 12:00**

**Filed Date:13/01/2026 12:00**

**Fees Paid:0.00**



**Case Number :BVIHCOM2026/0008**

FILED
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS

Submitted Date:12/01/2026 13:12

Filed Date:12/01/2026 13:13

Fees Paid:0.00

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0008

BETWEEN:

IN THE MATTER OF GOLDEN ASCEND INTERNATIONAL LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

Applicant

-v-

GOLDEN ASCEND INTERNATIONAL LIMITED

Respondent

---

ORDER APPLICATION FOR JOINT PROVISIONAL LIQUIDATORS

---

BEFORE:    THE HONOURABLE JUSTICE ABBAS MITHANI

DATED:    THE 9th DAY OF JANUARY, 2026

ENTERED:    THE 12th DAY OF JANUARY, 2026

PENAL NOTICE

The effect of this Order is that the directors, former directors, office holders and former office holders of the Respondent, GOLDEN ASCEND INTERNATIONAL LIMITED ("the Company") are replaced by the joint provisional liquidators and that the directors, former directors, office holders and former office holders are prohibited from taking any action in relation to the Company's affairs without prior consent of the joint provisional liquidators.

**If you, the directors, former directors, office holders and former office holders of the Company fail to comply with the terms of this order, proceedings may be commenced against you for contempt of court and you may be liable to be imprisoned, fined or have your assets seized.**

**This order must be complied with by any person affected by it upon whom it is served. Any other person who knows of this order and does anything which helps or permits the directors, former directors, office holders and/or former office holders of the Company to breach its terms may also be held to be in contempt of Court and may be imprisoned, fined or have their assets seized.**

**UPON THE ORDINARY APPLICATION** filed by the Applicant on 5 January 2026 seeking the appointment of James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110, Paul Pretlove and David Standish, both eligible overseas insolvency practitioner of Interpath Ltd, 10 Fleet Place, London EC4M 7RB, England as joint provisional liquidators of the Company pursuant to section 170 of the Insolvency Act 2003, (**"the Application"**) coming on for hearing.

**AND UPON HEARING** Paul B. Dennis K.C. and with him Nadine Whyte Laing and Koya Ryan of O'Neal Webster for the Applicant.

**AND UPON** the Attorney General Dawn J. Smith being present.

**AND UPON** Mr. Paul Pretlove and Mr. James Drury, two of the proposed joint provisional liquidators being present.

**AND UPON READING** the Application, the originating application to appoint liquidators of the Company, the first affidavit of the Attorney General, the affidavit of Jeni-Lee Watson and the other documents on the Court file.

**AND UPON** the Application being heard ex parte.

**IT IS HEREBY ORDERED THAT:**

1. James Drury, Paul Pretlove and David Standish be appointed jointly and severally as provisional liquidators (the **"Joint Provisional Liquidators"**) of the Company until further order.

2. The Joint Provisional Liquidators have the rights and powers of a liquidator to the extent necessary to maintain the value of the assets owned by the Company and to carry out the functions for which they are appointed.

3. In addition to the powers outlined in 2 above, the Joint Provisional Liquidators shall have the following specific powers which may be exercised without further sanction or intervention of this Honourable Court:

   a. to gain entry to the Company's premises and take possession of and preserve the books and records of the Company;

   b. to identify any assets which may remain in the possession or control of the Company, and to take such steps as may be necessary to protect any such assets from removal or dissipation;

   c. to seek the recognition (or its equivalent) of the appointment of the Joint Provisional Liquidators in the United States, United Kingdom, Singapore, Hong Kong, Taiwan Thailand and Cambodia or elsewhere for the purposes of securing, realising and remitting assets to the control of the Joint Provisional Liquidators and for the purpose of obtaining access to and control of the records of the Company;

   d. to commence, continue, discontinue or defend, including by way of counterclaim or similar response, any action or other legal proceedings in the name and on behalf of the Company in so far as necessary to protect the assets and information of the Company including:

      (i) issuing proceedings against the directors, former directors, office holders and former office holders of the Company, if so advised.

      (ii) intervening (if so advised) in ongoing proceedings which involve the Company and/or its directors, former directors, office holders and/or its former office holders.

   e. to vote the shares of the Company in order to prevent the dissipation of its assets.

   f. to carry on the business of the Company so far as may be necessary for its beneficial provisional liquidation;

   g. to take all necessary steps to obtain from any person documents or copy documents which belong to the Company or have been created or maintained on its behalf or which the Company has a right to obtain or inspect.

h.  to appoint an agent including a solicitor, or accountant to do any business that the Joint Provisional Liquidators are unable to do themselves in discharge of their duties, or which can be more conveniently done by an agent;

i.  to investigate the affairs of the Company so far as necessary to protect and, if necessary, retrieve the assets and records of the Company;

j.  to retain, manage and operate the existing bank accounts of the Company including, without limitation, the power to change, remove and replace the signatories of these accounts and, where necessary, to open new bank accounts;

k.  The Joint Provisional Liquidators may draw down payments on account of their remuneration, expenses and disbursements from time to time at a rate of 80% of their time costs and 100% of their expenses and disbursements, subject to these being subsequently approved by the court, and in the event that such sums are not approved, the unapproved sums be repaid to the Company within 7 days;

l.  to apply to the Court for directions concerning any matter arising out of the exercise of the above powers; and

m.  to do all other things as may be incidental to the exercise of the above functions and powers.

n.  to consult and share information with the Applicant to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company.

o.  to cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4.  The Joint Provisional Liquidators are authorised and directed to implement the protocol for consultation and information sharing between them and the Applicant in the draft which is attached hereto ("the Protocol").

5.  Any disclosure of information by the Joint Provisional Liquidators to the Applicant made in good faith and in accordance with the Protocol shall be deemed authorised by the Court and shall not constitute a breach of duty, confidence, data protection obligations or contractual restrictions binding upon the Company.

6.  The Joint Provisional Liquidators shall not be required to disclose material subject to legal professional privilege or litigation privilege.

7.  The Joint Provisional Liquidators and the Applicant have liberty to apply on short notice for directions, variation or termination of the Protocol.

8.  The costs of the provisional liquidation, including the proper fees and disbursements of the Joint Provisional Liquidators and the Applicant's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

9.  The powers set out in paragraph 3 above are to the exclusion of any power exercised or purported to be exercised by any existing director of the Company in so far as such power concerns the affairs of the Company and its assets within the jurisdiction of the Virgin Islands.

10.  Save as provided in paragraph 3 above the Joint Provisional Liquidators may not exercise any of the powers set out at Schedule 2 to the Insolvency Act, 2003 without sanction of the court.

11.  Pursuant to section 174 of the Insolvency Act, 2003 alternatively pursuant to the inherent jurisdiction of the Court, all actions, suits or proceedings of any nature whatsoever against the Company be and are hereby restrained until further order of the Court.

12.  During the period of their appointment, any act required or authorized to be done by the Joint Provisional Liquidators may be done by any one or more of them.

13.  This order was made at a hearing without notice to the respondent.  There will be a further hearing in respect of the order on or before 29ᵗʰ January 2026 with a time estimate of 30 minutes, for directions only (**the Return Date**).

14.  The Joint Provisional Liquidators are to file and serve a report within one clear day before the Return Date summarising steps taken, any immediate concerns and recommended next steps.

15.  The Company is at liberty to apply to vary or discharge the order upon giving 72 hours' notice to the Applicant and the Joint Provisional Liquidators.

16. The Joint Provisional Liquidators are at liberty to apply to vary or discharge the order if the allegations set out above are not substantiated or for some other reason upon giving 72 hours' notice to the Applicant and the Company.

17. The Applicant is not required to give an undertaking in damages.

18. The costs of this Application be costs in the provisional liquidation.

19. The Joint Provisional Liquidators are not required to pay or provide security.

BY THE COURT



REGISTRAR

**Protocol for Consultation and Information-Sharing Between the Liquidators and the Attorney General**

This Protocol is annexed to and forms part of the Order of the BVI Commercial Court (the **Court**) made on 9 January 2026 in Claim No. BVIHC (COM) 2026/0008 (**"the Order"**). Capitalised terms bear the meanings given in the Order unless the context otherwise requires.

### 1. Purpose and status

This Protocol sets out a consultative framework between the Liquidators and the Attorney General to facilitate effective cooperation in the public interest, including in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of Golden Ascend International Limited (**"the Company"**) For the avoidance of doubt, this Protocol is made pursuant to and with the approval of the Court, and disclosures made in good faith in accordance with this Protocol are deemed authorised by the Court.

### 2. Guiding principles

The Liquidators shall remain independent and act in the interests of the Company's creditors as a whole and the integrity of the winding up. The Attorney General's participation under this Protocol is consultative and does not fetter the Liquidators' statutory powers or duties, nor the Attorney General's independent functions. Both parties shall conduct themselves with candour, proportionality and respect for legal professional privilege, confidentiality, data protection and rule of law.

Nothing in this Protocol is intended to limit or restrict the ability of the Company's stakeholders to constitute a creditors' committee.

### 3. Definitions

- Attorney General means the Attorney General of the Virgin Islands and includes designated officers acting on the Attorney General's behalf for the purposes of this Protocol.
- The Company means Golden Ascend International Limited which is the subject of the Order.
- Confidential Information means non-public information concerning the Company, the liquidation, related investigations, counterparties and assets, including personal data and material subject to confidentiality obligations owed by the Company or the Liquidators.

- Privileged Material means material subject to legal professional privilege or litigation privilege, or any analogous protection recognised by the Court.

### 4. Appointment and representation

The Attorney General shall constitute a consultative committee and may nominate up to three designated representatives for liaison with the Liquidators, with at least one senior contact identified (the **AGs Committee**). The Attorney General may change representatives on notice to the Liquidators.

The AGs Committee shall serve alongside any creditors' committee (if one is formed), and the Liquidators shall have equal regard to the views expressed by both the AGs Committee and the creditors' committee (if formed).

### 5. Consultation framework

5.1 Meetings. The Liquidators shall convene regular consultation meetings (in person or virtual) with the Attorney General not less than once per quarter, and ad hoc meetings as reasonably required. The Liquidators shall chair meetings and circulate a brief agenda in advance. These meetings may be consolidated with meetings of the creditors' committee (if one is formed).

5.2 Attendance. The Liquidators may invite professional advisers and members of the liquidation team. The Attorney General may invite relevant law enforcement or regulatory personnel, provided confidentiality undertakings are observed.

5.3 Minutes. The Liquidators shall keep concise minutes recording attendees, topics discussed and any agreed actions, subject to privilege and sensitivity redactions where appropriate.

### 6. Reporting

6.1 Periodic reports. The Liquidators shall provide to the Attorney General a confidential report not less than once per quarter covering, to the extent appropriate and not prejudicial to the estate:

- status of asset identification, recovery actions and investigations;
- key applications to the Court and outcomes;
- known factual matters relevant to potential criminal offences or regulatory breaches; and
- anticipated steps in the next period.

6.2 Urgent matters. The Liquidators shall promptly notify the Attorney General of matters reasonably judged to be urgent, including (but not limited to) risk of dissipation, destruction of records, or flight of suspects.

6.3 Templates. The Liquidators may adopt reporting templates and may omit details where disclosure would prejudice recoveries, negotiations, privilege, or legal processes.

### 7. Information requests by the Attorney General

7.1 Scope. The Attorney General may request access to documents, data and information reasonably required in relation to the Company or related persons or entities.

7.2 Process. Requests shall be made in writing, identifying the categories sought, the purpose, and any timing sensitivities. The Liquidators shall acknowledge within 3 business days and respond within a reasonable time, taking into account volume, complexity and competing duties.

7.3 Reasonableness and sequencing. The Liquidators may propose reasonable narrowing, staging or alternative formats, including summaries or redactions, to protect privilege, confidentiality, commercial sensitivity, or the integrity of civil recovery efforts.

7.4 Court supervision. If disagreement arises which cannot be resolved promptly, either party may seek directions from the Court on short notice.

### 8. Authorised disclosures and gateways

8.1 Court authorisation. Subject to sections 9–12, the Liquidators are authorised by the Court to disclose Confidential Information to the Attorney General for the limited purposes of regulatory or criminal investigation and prosecution, restraint, confiscation, forfeiture, mutual legal assistance, and related protective measures, and to receive Confidential Information from the Attorney General for liquidation purposes.

8.2 Statutory gateways. To the extent any statutory or regulatory gateway is required for disclosure or use of information, the parties shall cooperate to identify and use such gateways, including by seeking further directions or orders of the Court as needed.

8.3 No breach. Disclosures made in good faith under this Protocol shall not constitute a breach of duty, confidence, data protection laws, or contractual restrictions binding on the Company, and the Liquidators shall have the protection of the Court accordingly.

### 9. Privilege and confidentiality

9.1 Privilege preserved. The Liquidators shall not be required to disclose Privileged Material. Any inadvertent disclosure shall not constitute a waiver of privilege, and the Attorney General shall promptly return or delete such material and refrain from review or use upon notification.

9.2 Common interest. Where appropriate, and subject to legal advice, the parties may agree that certain exchanges are made on a common interest or joint interest basis to preserve privilege.

9.3 Use restrictions. The Attorney General shall maintain Confidential Information in confidence and use it solely for lawful law enforcement, regulatory and public interest purposes. Dissemination shall be limited to personnel with a need to know who are bound by equivalent confidentiality obligations.

9.4 Protective measures. Upon reasonable request, the Attorney General shall implement protective measures for sensitive materials, including secure handling protocols, restricted circulation, and, where appropriate, applications to seal or redact in criminal or regulatory proceedings to avoid prejudice to the estate.

### 10. Data protection and personal data

The parties shall process personal data lawfully, fairly and securely, with appropriate technical and organisational measures. Where cross-border transfers are contemplated, the parties shall cooperate to ensure a lawful transfer mechanism and, where necessary, seek the Court's directions.

### 11. Preservation and holds

The Liquidators shall implement and maintain appropriate document preservation measures in respect of the Company's records. The Attorney General shall notify the Liquidators of any preservation requirements arising from criminal investigations or proceedings, including anticipated requests or production deadlines, to allow timely compliance.

### 12. Coordination to avoid prejudice and duplication

The parties shall coordinate to minimise prejudice to the estate, civil recoveries and criminal processes, including by sequencing steps, agreeing standstills where appropriate, and consulting on timing of public filings or applications likely to have cross-impact. The Liquidators' primary duty to protect and realise assets shall be respected.

### 13. Public statements and confidentiality vis-à-vis third parties

Public statements about the Company, the liquidation or related investigations shall be coordinated to the extent practicable. The Liquidators may make statements required by law or the Court or necessary to protect assets or correct the market. The Attorney General may make statements required in the exercise of public functions, having regard to the Liquidators' requests to withhold sensitive details.

### 14. Costs and resourcing

The reasonable costs incurred by the Liquidators in complying with this Protocol, including costs of retrieval, review, redaction, secure transmission and liaison, are costs of the liquidation. Where requests impose material incremental burdens, the parties shall confer on pragmatic staging or cost-efficient approaches and, failing agreement, may seek the Court's directions.

### 15. Non-fetter and independence

Nothing in this Protocol fetters or derogates from the Liquidators' statutory powers and duties, or from the Attorney General's independent decision-making. The consultative role does not confer any power of direction over the Liquidators.

### 16. Conflicts and recusals

If a conflict of interest arises affecting any representative, that person shall recuse from relevant consultations. The parties shall notify each other of any material conflicts that could affect the integrity of cooperation, and may seek the Court's directions where necessary.

### 17. International cooperation

Where the Attorney General is engaged in mutual legal assistance, or cooperation with foreign authorities, the parties shall consult on scope and timing to ensure that disclosures and steps taken are consistent with this Protocol and do not unduly prejudice the liquidation or foreign proceedings. The Attorney

General shall take reasonable steps, where feasible, to secure protective handling by foreign authorities of any Confidential Information provided.

### 18. Records and audit trail

The Liquidators shall maintain a record of disclosures made to the Attorney General under this Protocol sufficient to evidence compliance, subject to privilege. The Attorney General shall, upon reasonable request, confirm receipt and any onward lawful use or disclosure to other agencies.

### 19. Duration, variation and termination

This Protocol takes effect upon the making of the Order and continues until the earlier of dissolution of the Company or further order of the Court. It may be varied by written agreement between the Liquidators and the Attorney General approved by the Court, or otherwise by order of the Court. The Court may suspend or terminate this Protocol upon application by either party.

### 20. Notices

Formal notices under this Protocol shall be in writing and sent to the designated contacts of each party as notified from time to time. Operational communications may be conducted by secure electronic means.

### 21. Dispute resolution and directions

Any dispute arising under or in connection with this Protocol shall, in the first instance, be addressed through consultation. Failing prompt resolution, either party may apply to the Court for directions on short notice.

### 22. Safe harbour

No act or omission of the Liquidators done in good faith and with reasonable care in reliance on this Protocol, or any directions of the Court, shall give rise to personal liability. The Liquidators shall be entitled to the usual indemnities out of the assets of the Company.

## Schedule 1 – Illustrative categories of information for disclosure

A. Corporate records: constitutional documents, registers, organisational charts, officer and registered agent details.

B. Financial records: bank statements, ledgers, invoices, loan agreements, asset registers, related party transactions.

C. Communications: selected emails and messaging data from corporate systems relevant to suspected criminality.

D. Counterparty materials: KYC files, contracts, correspondence with intermediaries and fiduciaries.

E. Investigation work product: non-privileged factual memoranda, forensic accounting outputs, chain-of-custody logs.

F. Court materials: statements of affairs, affidavits, pleadings and orders (including sealed materials as authorised).

G. Asset tracing: non-privileged tracing schedules, dashboards, and summaries of restraints or recovery actions.

H. Preservation: litigation hold notices and repositories metadata (to the extent disclosure assists law enforcement).

Disclosure of any category remains subject to sections 9–12 of the Protocol.

## Schedule 2 – Template quarterly consultation report (confidential)

1. Executive summary and key developments.
2. Asset position: discoveries, realisations, restraints and pending recovery actions.
3. Investigations: factual findings, cooperating witnesses, outstanding enquiries.
4. Legal proceedings: applications filed or contemplated; coordination with foreign courts.
5. Law enforcement interface: requests received/made; disclosures; pending deadlines.
6. Risks and mitigants: dissipation risks, data loss risks, reputational issues.
7. Next steps and proposed timetable; matters requiring Attorney General input.
8. Appendices: schedules of documents disclosed; privilege log (if applicable).

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0008

BETWEEN:

IN THE MATTER OF GOLDEN ASCEND INTERNATIONAL LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

Applicant

-v-

GOLDEN ASCEND INTERNATIONAL LIMITED

Respondent

---

**ORDER ON APPLICATION FOR
JOINT PROVISIONAL LIQUIDATORS**

---



Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 I Fax: (284) 393 5805
www.onealwebster.com

**Case Number :BVIHCOM2026/0009**



**Submitted Date:13/01/2026 12:08**

**Filed Date:13/01/2026 12:08**

**Fees Paid:0.00**



**Case Number :BVIHCOM2026/0009**

**FILED
HIGH COURT**
TERRITORY OF
THE VIRGIN ISLANDS

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0009

**Submitted Date:12/01/2026 13:14**

**Filed Date:12/01/2026 13:14**

**Fees Paid:0.00**

BETWEEN:

IN THE MATTER OF HARMONIC STATE LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

Applicant

-v-

HARMONIC STATE LIMITED

Respondent

---

ORDER APPLICATION FOR JOINT PROVISIONAL LIQUIDATORS

---

BEFORE:       THE HONOURABLE JUSTICE ABBAS MITHANI

DATED:        THE 9th DAY OF JANUARY, 2026

ENTERED:      THE 12th DAY OF JANUARY, 2026

PENAL NOTICE

The effect of this Order is that the directors, former directors, office holders and former office holders of the Respondent, HARMONIC STATE LIMITED ("the Company") are replaced by the joint provisional liquidators and that the directors, former directors, office holders and former office holders are prohibited from taking any action in relation to the Company's affairs without prior consent of the joint provisional liquidators.

If you, the directors, former directors, office holders and former office holders of the Company fail to comply with the terms of this order, proceedings may be commenced against you for contempt of court and you may be liable to be imprisoned, fined or have your assets seized.

**This order must be complied with by any person affected by it upon whom it is served. Any other person who knows of this order and does anything which helps or permits the directors, former directors, office holders and/or former office holders of the Company to breach its terms may also be held to be in contempt of Court and may be imprisoned, fined or have their assets seized.**

**UPON THE ORDINARY APPLICATION** filed by the Applicant on 5 January 2026 seeking the appointment of James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110, Paul Pretlove and David Standish, both eligible overseas insolvency practitioner of Interpath Ltd, 10 Fleet Place, London EC4M 7RB, England as joint provisional liquidators of the Company pursuant to section 170 of the Insolvency Act 2003, ("**the Application**") coming on for hearing.

**AND UPON HEARING** Paul B. Dennis K.C. and with him Nadine Whyte Laing and Koya Ryan of O'Neal Webster for the Applicant.

**AND UPON** the Attorney General Dawn J. Smith being present.

**AND UPON** Mr. Paul Pretlove and Mr. James Drury, two of the proposed joint provisional liquidators being present.

**AND UPON READING** the Application, the originating application to appoint liquidators of the Company, the first affidavit of the Attorney General, the affidavit of Jeni-Lee Watson and the other documents on the Court file.

**AND UPON** the Application being heard ex parte.

**IT IS HEREBY ORDERED THAT:**

1. James Drury, Paul Pretlove and David Standish be appointed jointly and severally as provisional liquidators (the "**Joint Provisional Liquidators**") of the Company until further order.

2. The Joint Provisional Liquidators have the rights and powers of a liquidator to the extent necessary to maintain the value of the assets owned by the Company and to carry out the functions for which they are appointed.

3. In addition to the powers outlined in 2 above, the Joint Provisional Liquidators shall have the following specific powers which may be exercised without further sanction or intervention of this Honourable Court:

   a. to gain entry to the Company's premises and take possession of and preserve the books and records of the Company;

   b. to identify any assets which may remain in the possession or control of the Company, and to take such steps as may be necessary to protect any such assets from removal or dissipation;

   c. to seek the recognition (or its equivalent) of the appointment of the Joint Provisional Liquidators in the United States, United Kingdom, Singapore, Hong Kong, Taiwan Thailand and Cambodia or elsewhere for the purposes of securing, realising and remitting assets to the control of the Joint Provisional Liquidators and for the purpose of obtaining access to and control of the records of the Company;

   d. to commence, continue, discontinue or defend, including by way of counterclaim or similar response, any action or other legal proceedings in the name and on behalf of the Company in so far as necessary to protect the assets and information of the Company including:

      (i) issuing proceedings against the directors, former directors, office holders and former office holders of the Company, if so advised.

      (ii) intervening (if so advised) in ongoing proceedings which involve the Company and/or its directors, former directors, office holders and/or its former office holders.

   e. to vote the shares of the Company in order to prevent the dissipation of its assets.

   f. to carry on the business of the Company so far as may be necessary for its beneficial provisional liquidation;

   g. to take all necessary steps to obtain from any person documents or copy documents which belong to the Company or have been created or maintained on its behalf or which the Company has a right to obtain or inspect.

   h. to appoint an agent including a solicitor, or accountant to do any business that the Joint Provisional Liquidators are unable to do themselves in discharge of their duties, or which can be more conveniently done by an agent;

i.    to investigate the affairs of the Company so far as necessary to protect and, if necessary, retrieve the assets and records of the Company;

j.    to retain, manage and operate the existing bank accounts of the Company including, without limitation, the power to change, remove and replace the signatories of these accounts and, where necessary, to open new bank accounts;

k.    The Joint Provisional Liquidators may draw down payments on account of their remuneration, expenses and disbursements from time to time at a rate of 80% of their time costs and 100% of their expenses and disbursements, subject to these being subsequently approved by the court, and in the event that such sums are not approved, the unapproved sums be repaid to the Company within 7 days;

l.    to apply to the Court for directions concerning any matter arising out of the exercise of the above powers; and

m.    to do all other things as may be incidental to the exercise of the above functions and powers.

n.    to consult and share information with the Applicant to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company.

o.    to cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4.    The Joint Provisional Liquidators are authorised and directed to implement the protocol for consultation and information sharing between them and the Applicant in the draft which is attached hereto ("the Protocol").

5.    Any disclosure of information by the Joint Provisional Liquidators to the Applicant made in good faith and in accordance with the Protocol shall be deemed authorised by the Court and shall not constitute a breach of duty, confidence, data protection obligations or contractual restrictions binding upon the Company.

6.    The Joint Provisional Liquidators shall not be required to disclose material subject to legal professional privilege or litigation privilege.

7. The Joint Provisional Liquidators and the Applicant have liberty to apply on short notice for directions, variation or termination of the Protocol.

8. The costs of the provisional liquidation, including the proper fees and disbursements of the Joint Provisional Liquidators and the Applicant's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

9. The powers set out in paragraph 3 above are to the exclusion of any power exercised or purported to be exercised by any existing director of the Company in so far as such power concerns the affairs of the Company and its assets within the jurisdiction of the Virgin Islands.

10. Save as provided in paragraph 3 above the Joint Provisional Liquidators may not exercise any of the powers set out at Schedule 2 to the Insolvency Act, 2003 without sanction of the court.

11. Pursuant to section 174 of the Insolvency Act, 2003 alternatively pursuant to the inherent jurisdiction of the Court, all actions, suits or proceedings of any nature whatsoever against the Company be and are hereby restrained until further order of the Court.

12. During the period of their appointment, any act required or authorized to be done by the Joint Provisional Liquidators may be done by any one or more of them.

13. This order was made at a hearing without notice to the respondent. There will be a further hearing in respect of the order on or before 29th January 2026 with a time estimate of 30 minutes, for directions only (**the Return Date**).

14. The Joint Provisional Liquidators are to file and serve a report within one clear day before the Return Date summarising steps taken, any immediate concerns and recommended next steps.

15. The Company is at liberty to apply to vary or discharge the order upon giving 72 hours' notice to the Applicant and the Joint Provisional Liquidators.

16. The Joint Provisional Liquidators are at liberty to apply to vary or discharge the order if the allegations set out above are not substantiated or for some other reason upon giving 72 hours' notice to the Applicant and the Company.

17.    The Applicant is not required to give an undertaking in damages.

18.    The costs of this Application be costs in the provisional liquidation.

19.    The Joint Provisional Liquidators are not required to pay or provide security.

BY THE COURT



REGISTRAR

**Protocol for Consultation and Information-Sharing Between the Liquidators and the Attorney General**

This Protocol is annexed to and forms part of the Order of the BVI Commercial Court (the **Court**) made on 9 January 2026 in Claim No. BVIHC (COM) 2026/0009 (**"the Order"**). Capitalised terms bear the meanings given in the Order unless the context otherwise requires.

## 1. Purpose and status

This Protocol sets out a consultative framework between the Liquidators and the Attorney General to facilitate effective cooperation in the public interest, including in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of Harmonic State Limited (**"the Company"**) For the avoidance of doubt, this Protocol is made pursuant to and with the approval of the Court, and disclosures made in good faith in accordance with this Protocol are deemed authorised by the Court.

## 2. Guiding principles

The Liquidators shall remain independent and act in the interests of the Company's creditors as a whole and the integrity of the winding up. The Attorney General's participation under this Protocol is consultative and does not fetter the Liquidators' statutory powers or duties, nor the Attorney General's independent functions. Both parties shall conduct themselves with candour, proportionality and respect for legal professional privilege, confidentiality, data protection and rule of law.

Nothing in this Protocol is intended to limit or restrict the ability of the Company's stakeholders to constitute a creditors' committee.

## 3. Definitions

- Attorney General means the Attorney General of the Virgin Islands and includes designated officers acting on the Attorney General's behalf for the purposes of this Protocol.
- The Company means Harmonic State Limited which is the subject of the Order.
- Confidential Information means non-public information concerning the Company, the liquidation, related investigations, counterparties and assets, including personal data and material subject to confidentiality obligations owed by the Company or the Liquidators.

- Privileged Material means material subject to legal professional privilege or litigation privilege, or any analogous protection recognised by the Court.

### 4. Appointment and representation

The Attorney General shall constitute a consultative committee and may nominate up to three designated representatives for liaison with the Liquidators, with at least one senior contact identified (the **AGs Committee**). The Attorney General may change representatives on notice to the Liquidators.

The AGs Committee shall serve alongside any creditors' committee (if one is formed), and the Liquidators shall have equal regard to the views expressed by both the AGs Committee and the creditors' committee (if formed).

### 5. Consultation framework

5.1 Meetings. The Liquidators shall convene regular consultation meetings (in person or virtual) with the Attorney General not less than once per quarter, and ad hoc meetings as reasonably required. The Liquidators shall chair meetings and circulate a brief agenda in advance. These meetings may be consolidated with meetings of the creditors' committee (if one is formed).

5.2 Attendance. The Liquidators may invite professional advisers and members of the liquidation team. The Attorney General may invite relevant law enforcement or regulatory personnel, provided confidentiality undertakings are observed.

5.3 Minutes. The Liquidators shall keep concise minutes recording attendees, topics discussed and any agreed actions, subject to privilege and sensitivity redactions where appropriate.

### 6. Reporting

6.1 Periodic reports. The Liquidators shall provide to the Attorney General a confidential report not less than once per quarter covering, to the extent appropriate and not prejudicial to the estate:

- status of asset identification, recovery actions and investigations;
- key applications to the Court and outcomes;
- known factual matters relevant to potential criminal offences or regulatory breaches; and
- anticipated steps in the next period.

6.2 Urgent matters. The Liquidators shall promptly notify the Attorney General of matters reasonably judged to be urgent, including (but not limited to) risk of dissipation, destruction of records, or flight of suspects.

6.3 Templates. The Liquidators may adopt reporting templates and may omit details where disclosure would prejudice recoveries, negotiations, privilege, or legal processes.

### 7. Information requests by the Attorney General

7.1 Scope. The Attorney General may request access to documents, data and information reasonably required in relation to the Company or related persons or entities.

7.2 Process. Requests shall be made in writing, identifying the categories sought, the purpose, and any timing sensitivities. The Liquidators shall acknowledge within 3 business days and respond within a reasonable time, taking into account volume, complexity and competing duties.

7.3 Reasonableness and sequencing. The Liquidators may propose reasonable narrowing, staging or alternative formats, including summaries or redactions, to protect privilege, confidentiality, commercial sensitivity, or the integrity of civil recovery efforts.

7.4 Court supervision. If disagreement arises which cannot be resolved promptly, either party may seek directions from the Court on short notice.

### 8. Authorised disclosures and gateways

8.1 Court authorisation. Subject to sections 9–12, the Liquidators are authorised by the Court to disclose Confidential Information to the Attorney General for the limited purposes of regulatory or criminal investigation and prosecution, restraint, confiscation, forfeiture, mutual legal assistance, and related protective measures, and to receive Confidential Information from the Attorney General for liquidation purposes.

8.2 Statutory gateways. To the extent any statutory or regulatory gateway is required for disclosure or use of information, the parties shall cooperate to identify and use such gateways, including by seeking further directions or orders of the Court as needed.

8.3 No breach. Disclosures made in good faith under this Protocol shall not constitute a breach of duty, confidence, data protection laws, or contractual restrictions binding on the Company, and the Liquidators shall have the protection of the Court accordingly.

### 9. Privilege and confidentiality

9.1 Privilege preserved. The Liquidators shall not be required to disclose Privileged Material. Any inadvertent disclosure shall not constitute a waiver of privilege, and the Attorney General shall promptly return or delete such material and refrain from review or use upon notification.

9.2 Common interest. Where appropriate, and subject to legal advice, the parties may agree that certain exchanges are made on a common interest or joint interest basis to preserve privilege.

9.3 Use restrictions. The Attorney General shall maintain Confidential Information in confidence and use it solely for lawful law enforcement, regulatory and public interest purposes. Dissemination shall be limited to personnel with a need to know who are bound by equivalent confidentiality obligations.

9.4 Protective measures. Upon reasonable request, the Attorney General shall implement protective measures for sensitive materials, including secure handling protocols, restricted circulation, and, where appropriate, applications to seal or redact in criminal or regulatory proceedings to avoid prejudice to the estate.

### 10. Data protection and personal data

The parties shall process personal data lawfully, fairly and securely, with appropriate technical and organisational measures. Where cross-border transfers are contemplated, the parties shall cooperate to ensure a lawful transfer mechanism and, where necessary, seek the Court's directions.

### 11. Preservation and holds

The Liquidators shall implement and maintain appropriate document preservation measures in respect of the Company's records. The Attorney General shall notify the Liquidators of any preservation requirements arising from criminal investigations or proceedings, including anticipated requests or production deadlines, to allow timely compliance.

### 12. Coordination to avoid prejudice and duplication

The parties shall coordinate to minimise prejudice to the estate, civil recoveries and criminal processes, including by sequencing steps, agreeing standstills where appropriate, and consulting on timing of public filings or applications likely to have cross-impact. The Liquidators' primary duty to protect and realise assets shall be respected.

### 13. Public statements and confidentiality vis-à-vis third parties

Public statements about the Company, the liquidation or related investigations shall be coordinated to the extent practicable. The Liquidators may make statements required by law or the Court or necessary to protect assets or correct the market. The Attorney General may make statements required in the exercise of public functions, having regard to the Liquidators' requests to withhold sensitive details.

### 14. Costs and resourcing

The reasonable costs incurred by the Liquidators in complying with this Protocol, including costs of retrieval, review, redaction, secure transmission and liaison, are costs of the liquidation. Where requests impose material incremental burdens, the parties shall confer on pragmatic staging or cost-efficient approaches and, failing agreement, may seek the Court's directions.

### 15. Non-fetter and independence

Nothing in this Protocol fetters or derogates from the Liquidators' statutory powers and duties, or from the Attorney General's independent decision-making. The consultative role does not confer any power of direction over the Liquidators.

### 16. Conflicts and recusals

If a conflict of interest arises affecting any representative, that person shall recuse from relevant consultations. The parties shall notify each other of any material conflicts that could affect the integrity of cooperation, and may seek the Court's directions where necessary.

### 17. International cooperation

Where the Attorney General is engaged in mutual legal assistance, or cooperation with foreign authorities, the parties shall consult on scope and timing to ensure that disclosures and steps taken are consistent with this Protocol and do not unduly prejudice the liquidation or foreign proceedings. The Attorney

General shall take reasonable steps, where feasible, to secure protective handling by foreign authorities of any Confidential Information provided.

### 18. Records and audit trail

The Liquidators shall maintain a record of disclosures made to the Attorney General under this Protocol sufficient to evidence compliance, subject to privilege. The Attorney General shall, upon reasonable request, confirm receipt and any onward lawful use or disclosure to other agencies.

### 19. Duration, variation and termination

This Protocol takes effect upon the making of the Order and continues until the earlier of dissolution of the Company or further order of the Court. It may be varied by written agreement between the Liquidators and the Attorney General approved by the Court, or otherwise by order of the Court. The Court may suspend or terminate this Protocol upon application by either party.

### 20. Notices

Formal notices under this Protocol shall be in writing and sent to the designated contacts of each party as notified from time to time. Operational communications may be conducted by secure electronic means.

### 21. Dispute resolution and directions

Any dispute arising under or in connection with this Protocol shall, in the first instance, be addressed through consultation. Failing prompt resolution, either party may apply to the Court for directions on short notice.

### 22. Safe harbour

No act or omission of the Liquidators done in good faith and with reasonable care in reliance on this Protocol, or any directions of the Court, shall give rise to personal liability. The Liquidators shall be entitled to the usual indemnities out of the assets of the Company.

---

**Schedule 1 – Illustrative categories of information for disclosure**

A. Corporate records: constitutional documents, registers, organisational charts, officer and registered agent details.

B. Financial records: bank statements, ledgers, invoices, loan agreements, asset registers, related party transactions.

C. Communications: selected emails and messaging data from corporate systems relevant to suspected criminality.

D. Counterparty materials: KYC files, contracts, correspondence with intermediaries and fiduciaries.

E. Investigation work product: non-privileged factual memoranda, forensic accounting outputs, chain-of-custody logs.

F. Court materials: statements of affairs, affidavits, pleadings and orders (including sealed materials as authorised).

G. Asset tracing: non-privileged tracing schedules, dashboards, and summaries of restraints or recovery actions.

H. Preservation: litigation hold notices and repositories metadata (to the extent disclosure assists law enforcement).

Disclosure of any category remains subject to sections 9–12 of the Protocol.

---

**Schedule 2 – Template quarterly consultation report (confidential)**

1. Executive summary and key developments.

2. Asset position: discoveries, realisations, restraints and pending recovery actions.

3. Investigations: factual findings, cooperating witnesses, outstanding enquiries.

4. Legal proceedings: applications filed or contemplated; coordination with foreign courts.

5. Law enforcement interface: requests received/made; disclosures; pending deadlines.

6. Risks and mitigants: dissipation risks, data loss risks, reputational issues.

7. Next steps and proposed timetable; matters requiring Attorney General input.

8. Appendices: schedules of documents disclosed; privilege log (if applicable).

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0009


BETWEEN:

IN THE MATTER OF HARMONIC STATE LIMITED


AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF
THE LAWS OF THE VIRGIN ISLANDS.


THE ATTORNEY GENERAL

                                             **Applicant**

-v-

HARMONIC STATE LIMITED

                                             **Respondent**

---

**ORDER ON APPLICATION FOR
JOINT PROVISIONAL LIQUIDATORS**

---



**O'Neal Webster**

Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 I Fax: (284) 393 5805
www.onealwebster.com

Case Number :BVIHCOM2026/0010



FILED
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS

Submitted Date:13/01/2026 12:14

Filed Date:13/01/2026 12:14

Fees Paid:0.00



**Case Number :BVIHCOM2026/0010**

FILED
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0010

**Submitted Date:12/01/2026 13:21**

**Filed Date:12/01/2026 13:21**

**Fees Paid:0.00**

BETWEEN:

IN THE MATTER OF JUMBO HIGH LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

Applicant

-v-

JUMBO HIGH LIMITED

Respondent

---

ORDER APPLICATION FOR JOINT PROVISIONAL LIQUIDATORS

---

BEFORE:       THE HONOURABLE JUSTICE ABBAS MITHANI

DATED:        THE 9TH    DAY OF JANUARY, 2026

ENTERED:     THE 12th DAY OF JANUARY,2026

PENAL NOTICE

The effect of this Order is that the directors, former directors, office holders and former office holders of the Respondent, JUMBO HIGH LIMITED ("the Company") are replaced by the joint provisional liquidators and that the directors, former directors, office holders and former office holders are prohibited from taking any action in relation to the Company's affairs without prior consent of the joint provisional liquidators.

If you, the directors, former directors, office holders and former office holders of the Company fail to comply with the terms of this order, proceedings may be commenced against you for contempt of court and you may be liable to be imprisoned, fined or have your assets seized.

**This order must be complied with by any person affected by it upon whom it is served. Any other person who knows of this order and does anything which helps or permits the directors, former directors, office holders and/or former office holders of the Company to breach its terms may also be held to be in contempt of Court and may be imprisoned, fined or have their assets seized.**

**UPON THE ORDINARY APPLICATION** filed by the Applicant on 5 January 2026 seeking the appointment of James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110, Paul Pretlove and David Standish, both eligible overseas insolvency practitioner of Interpath Ltd, 10 Fleet Place, London EC4M 7RB, England as joint provisional liquidators of the Company pursuant to section 170 of the Insolvency Act 2003, ("**the Application**") coming on for hearing.

**AND UPON HEARING** Paul B. Dennis K.C. and with him Nadine Whyte Laing and Koya Ryan of O'Neal Webster for the Applicant.

**AND UPON** the Attorney General Dawn J. Smith being present.

**AND UPON** Mr. Paul Pretlove and Mr. James Drury, two of the proposed joint provisional liquidators being present.

**AND UPON READING** the Application, the originating application to appoint liquidators of the Company, the first affidavit of the Attorney General, the affidavit of Jeni-Lee Watson and the other documents on the Court file.

**AND UPON** the Application being heard ex parte.

**IT IS HEREBY ORDERED THAT:**

1. James Drury, Paul Pretlove and David Standish be appointed jointly and severally as provisional liquidators (the "**Joint Provisional Liquidators**") of the Company until further order.

2. The Joint Provisional Liquidators have the rights and powers of a liquidator to the extent necessary to maintain the value of the assets owned by the Company and to carry out the functions for which they are appointed.

3.  In addition to the powers outlined in 2 above, the Joint Provisional Liquidators shall have the following specific powers which may be exercised without further sanction or intervention of this Honourable Court:

   a.  to gain entry to the Company's premises and take possession of and preserve the books and records of the Company;

   b.  to identify any assets which may remain in the possession or control of the Company, and to take such steps as may be necessary to protect any such assets from removal or dissipation;

   c.  to seek the recognition (or its equivalent) of the appointment of the Joint Provisional Liquidators in the United States, United Kingdom, Singapore, Hong Kong, Taiwan Thailand and Cambodia or elsewhere for the purposes of securing, realising and remitting assets to the control of the Joint Provisional Liquidators and for the purpose of obtaining access to and control of the records of the Company;

   d.  to commence, continue, discontinue or defend, including by way of counterclaim or similar response, any action or other legal proceedings in the name and on behalf of the Company in so far as necessary to protect the assets and information of the Company including:

      (i)  issuing proceedings against the directors, former directors, office holders and former office holders of the Company, if so advised.

      (ii)  intervening (if so advised) in ongoing proceedings which involve the Company and/or its directors, former directors, office holders and/or its former office holders.

   e.  to vote the shares of the Company in order to prevent the dissipation of its assets.

   f.  to carry on the business of the Company so far as may be necessary for its beneficial provisional liquidation;

   g.  to take all necessary steps to obtain from any person documents or copy documents which belong to the Company or have been created or maintained on its behalf or which the Company has a right to obtain or inspect.

   h.  to appoint an agent including a solicitor, or accountant to do any business that the Joint Provisional Liquidators are unable to do themselves in discharge of their duties, or which can be more conveniently done by an agent;

i.  to investigate the affairs of the Company so far as necessary to protect and, if necessary, retrieve the assets and records of the Company;

j.  to retain, manage and operate the existing bank accounts of the Company including, without limitation, the power to change, remove and replace the signatories of these accounts and, where necessary, to open new bank accounts;

k.  The Joint Provisional Liquidators may draw down payments on account of their remuneration, expenses and disbursements from time to time at a rate of 80% of their time costs and 100% of their expenses and disbursements, subject to these being subsequently approved by the court, and in the event that such sums are not approved, the unapproved sums be repaid to the Company within 7 days;

l.  to apply to the Court for directions concerning any matter arising out of the exercise of the above powers; and

m.  to do all other things as may be incidental to the exercise of the above functions and powers.

n.  to consult and share information with the Applicant to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company.

o.  to cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4.  The Joint Provisional Liquidators are authorised and directed to implement the protocol for consultation and information sharing between them and the Applicant in the draft which is attached hereto ("the Protocol").

5.  Any disclosure of information by the Joint Provisional Liquidators to the Applicant made in good faith and in accordance with the Protocol shall be deemed authorised by the Court and shall not constitute a breach of duty, confidence, data protection obligations or contractual restrictions binding upon the Company.

6.  The Joint Provisional Liquidators shall not be required to disclose material subject to legal professional privilege or litigation privilege.

7. The Joint Provisional Liquidators and the Applicant have liberty to apply on short notice for directions, variation or termination of the Protocol.

8. The costs of the provisional liquidation, including the proper fees and disbursements of the Joint Provisional Liquidators and the Applicant's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

9. The powers set out in paragraph 3 above are to the exclusion of any power exercised or purported to be exercised by any existing director of the Company in so far as such power concerns the affairs of the Company and its assets within the jurisdiction of the Virgin Islands.

10. Save as provided in paragraph 3 above the Joint Provisional Liquidators may not exercise any of the powers set out at Schedule 2 to the Insolvency Act, 2003 without sanction of the court.

11. Pursuant to section 174 of the Insolvency Act, 2003 alternatively pursuant to the inherent jurisdiction of the Court, all actions, suits or proceedings of any nature whatsoever against the Company be and are hereby restrained until further order of the Court.

12. During the period of their appointment, any act required or authorized to be done by the Joint Provisional Liquidators may be done by any one or more of them.

13. This order was made at a hearing without notice to the respondent. There will be a further hearing in respect of the order on or before 29ᵗʰ January 2026 with a time estimate of 30 minutes, for directions only (**the Return Date**).

14. The Joint Provisional Liquidators are to file and serve a report within one clear day before the Return Date summarising steps taken, any immediate concerns and recommended next steps.

15. The Company is at liberty to apply to vary or discharge the order upon giving 72 hours' notice to the Applicant and the Joint Provisional Liquidators.

16. The Joint Provisional Liquidators are at liberty to apply to vary or discharge the order if the allegations set out above are not substantiated or for some other reason upon giving 72 hours' notice to the Applicant and the Company.

17.    The Applicant is not required to give an undertaking in damages.

18.    The costs of this Application be costs in the provisional liquidation.

19.    The Joint Provisional Liquidators are not required to pay or provide security.

BY THE COURT

REGISTRAR

**Protocol for Consultation and Information-Sharing Between the Liquidators and the Attorney General**

This Protocol is annexed to and forms part of the Order of the BVI Commercial Court (the **Court**) made on 9 January 2026 in Claim No. BVIHC (COM) 2026/0010 (**"the Order"**). Capitalised terms bear the meanings given in the Order unless the context otherwise requires.

### 1. Purpose and status

This Protocol sets out a consultative framework between the Liquidators and the Attorney General to facilitate effective cooperation in the public interest, including in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of Jumbo High Limited (**"the Company"**) For the avoidance of doubt, this Protocol is made pursuant to and with the approval of the Court, and disclosures made in good faith in accordance with this Protocol are deemed authorised by the Court.

### 2. Guiding principles

The Liquidators shall remain independent and act in the interests of the Company's creditors as a whole and the integrity of the winding up. The Attorney General's participation under this Protocol is consultative and does not fetter the Liquidators' statutory powers or duties, nor the Attorney General's independent functions. Both parties shall conduct themselves with candour, proportionality and respect for legal professional privilege, confidentiality, data protection and rule of law.

Nothing in this Protocol is intended to limit or restrict the ability of the Company's stakeholders to constitute a creditors' committee.

### 3. Definitions

- Attorney General means the Attorney General of the Virgin Islands and includes designated officers acting on the Attorney General's behalf for the purposes of this Protocol.
- The Company means Jumbo High Limited which is the subject of the Order.
- Confidential Information means non-public information concerning the Company, the liquidation, related investigations, counterparties and assets, including personal data and material subject to confidentiality obligations owed by the Company or the Liquidators.

- Privileged Material means material subject to legal professional privilege or litigation privilege, or any analogous protection recognised by the Court.

### 4. Appointment and representation

The Attorney General shall constitute a consultative committee and may nominate up to three designated representatives for liaison with the Liquidators, with at least one senior contact identified (the **AGs Committee**). The Attorney General may change representatives on notice to the Liquidators.

The AGs Committee shall serve alongside any creditors' committee (if one is formed), and the Liquidators shall have equal regard to the views expressed by both the AGs Committee and the creditors' committee (if formed).

### 5. Consultation framework

5.1 Meetings. The Liquidators shall convene regular consultation meetings (in person or virtual) with the Attorney General not less than once per quarter, and ad hoc meetings as reasonably required. The Liquidators shall chair meetings and circulate a brief agenda in advance. These meetings may be consolidated with meetings of the creditors' committee (if one is formed).

5.2 Attendance. The Liquidators may invite professional advisers and members of the liquidation team. The Attorney General may invite relevant law enforcement or regulatory personnel, provided confidentiality undertakings are observed.

5.3 Minutes. The Liquidators shall keep concise minutes recording attendees, topics discussed and any agreed actions, subject to privilege and sensitivity redactions where appropriate.

### 6. Reporting

6.1 Periodic reports. The Liquidators shall provide to the Attorney General a confidential report not less than once per quarter covering, to the extent appropriate and not prejudicial to the estate:

- status of asset identification, recovery actions and investigations;
- key applications to the Court and outcomes;
- known factual matters relevant to potential criminal offences or regulatory breaches; and
- anticipated steps in the next period.

6.2 Urgent matters. The Liquidators shall promptly notify the Attorney General of matters reasonably judged to be urgent, including (but not limited to) risk of dissipation, destruction of records, or flight of suspects.

6.3 Templates. The Liquidators may adopt reporting templates and may omit details where disclosure would prejudice recoveries, negotiations, privilege, or legal processes.

### 7. Information requests by the Attorney General

7.1 Scope. The Attorney General may request access to documents, data and information reasonably required in relation to the Company or related persons or entities.

7.2 Process. Requests shall be made in writing, identifying the categories sought, the purpose, and any timing sensitivities. The Liquidators shall acknowledge within 3 business days and respond within a reasonable time, taking into account volume, complexity and competing duties.

7.3 Reasonableness and sequencing. The Liquidators may propose reasonable narrowing, staging or alternative formats, including summaries or redactions, to protect privilege, confidentiality, commercial sensitivity, or the integrity of civil recovery efforts.

7.4 Court supervision. If disagreement arises which cannot be resolved promptly, either party may seek directions from the Court on short notice.

### 8. Authorised disclosures and gateways

8.1 Court authorisation. Subject to sections 9–12, the Liquidators are authorised by the Court to disclose Confidential Information to the Attorney General for the limited purposes of regulatory or criminal investigation and prosecution, restraint, confiscation, forfeiture, mutual legal assistance, and related protective measures, and to receive Confidential Information from the Attorney General for liquidation purposes.

8.2 Statutory gateways. To the extent any statutory or regulatory gateway is required for disclosure or use of information, the parties shall cooperate to identify and use such gateways, including by seeking further directions or orders of the Court as needed.

8.3 No breach. Disclosures made in good faith under this Protocol shall not constitute a breach of duty, confidence, data protection laws, or contractual restrictions binding on the Company, and the Liquidators shall have the protection of the Court accordingly.

### 9. Privilege and confidentiality

9.1 Privilege preserved. The Liquidators shall not be required to disclose Privileged Material. Any inadvertent disclosure shall not constitute a waiver of privilege, and the Attorney General shall promptly return or delete such material and refrain from review or use upon notification.

9.2 Common interest. Where appropriate, and subject to legal advice, the parties may agree that certain exchanges are made on a common interest or joint interest basis to preserve privilege.

9.3 Use restrictions. The Attorney General shall maintain Confidential Information in confidence and use it solely for lawful law enforcement, regulatory and public interest purposes. Dissemination shall be limited to personnel with a need to know who are bound by equivalent confidentiality obligations.

9.4 Protective measures. Upon reasonable request, the Attorney General shall implement protective measures for sensitive materials, including secure handling protocols, restricted circulation, and, where appropriate, applications to seal or redact in criminal or regulatory proceedings to avoid prejudice to the estate.

### 10. Data protection and personal data

The parties shall process personal data lawfully, fairly and securely, with appropriate technical and organisational measures. Where cross-border transfers are contemplated, the parties shall cooperate to ensure a lawful transfer mechanism and, where necessary, seek the Court's directions.

### 11. Preservation and holds

The Liquidators shall implement and maintain appropriate document preservation measures in respect of the Company's records. The Attorney General shall notify the Liquidators of any preservation requirements arising from criminal investigations or proceedings, including anticipated requests or production deadlines, to allow timely compliance.

### 12. Coordination to avoid prejudice and duplication

The parties shall coordinate to minimise prejudice to the estate, civil recoveries and criminal processes, including by sequencing steps, agreeing standstills where appropriate, and consulting on timing of public filings or applications likely to have cross-impact. The Liquidators' primary duty to protect and realise assets shall be respected.

### 13. Public statements and confidentiality vis-à-vis third parties

Public statements about the Company, the liquidation or related investigations shall be coordinated to the extent practicable. The Liquidators may make statements required by law or the Court or necessary to protect assets or correct the market. The Attorney General may make statements required in the exercise of public functions, having regard to the Liquidators' requests to withhold sensitive details.

### 14. Costs and resourcing

The reasonable costs incurred by the Liquidators in complying with this Protocol, including costs of retrieval, review, redaction, secure transmission and liaison, are costs of the liquidation. Where requests impose material incremental burdens, the parties shall confer on pragmatic staging or cost-efficient approaches and, failing agreement, may seek the Court's directions.

### 15. Non-fetter and independence

Nothing in this Protocol fetters or derogates from the Liquidators' statutory powers and duties, or from the Attorney General's independent decision-making. The consultative role does not confer any power of direction over the Liquidators.

### 16. Conflicts and recusals

If a conflict of interest arises affecting any representative, that person shall recuse from relevant consultations. The parties shall notify each other of any material conflicts that could affect the integrity of cooperation, and may seek the Court's directions where necessary.

### 17. International cooperation

Where the Attorney General is engaged in mutual legal assistance, or cooperation with foreign authorities, the parties shall consult on scope and timing to ensure that disclosures and steps taken are consistent with this Protocol and do not unduly prejudice the liquidation or foreign proceedings. The Attorney

General shall take reasonable steps, where feasible, to secure protective handling by foreign authorities of any Confidential Information provided.

### 18. Records and audit trail

The Liquidators shall maintain a record of disclosures made to the Attorney General under this Protocol sufficient to evidence compliance, subject to privilege. The Attorney General shall, upon reasonable request, confirm receipt and any onward lawful use or disclosure to other agencies.

### 19. Duration, variation and termination

This Protocol takes effect upon the making of the Order and continues until the earlier of dissolution of the Company or further order of the Court. It may be varied by written agreement between the Liquidators and the Attorney General approved by the Court, or otherwise by order of the Court. The Court may suspend or terminate this Protocol upon application by either party.

### 20. Notices

Formal notices under this Protocol shall be in writing and sent to the designated contacts of each party as notified from time to time. Operational communications may be conducted by secure electronic means.

### 21. Dispute resolution and directions

Any dispute arising under or in connection with this Protocol shall, in the first instance, be addressed through consultation. Failing prompt resolution, either party may apply to the Court for directions on short notice.

### 22. Safe harbour

No act or omission of the Liquidators done in good faith and with reasonable care in reliance on this Protocol, or any directions of the Court, shall give rise to personal liability. The Liquidators shall be entitled to the usual indemnities out of the assets of the Company.

**Schedule 1 – Illustrative categories of information for disclosure**

A. Corporate records: constitutional documents, registers, organisational charts, officer and registered agent details.

B. Financial records: bank statements, ledgers, invoices, loan agreements, asset registers, related party transactions.

C. Communications: selected emails and messaging data from corporate systems relevant to suspected criminality.

D. Counterparty materials: KYC files, contracts, correspondence with intermediaries and fiduciaries.

E. Investigation work product: non-privileged factual memoranda, forensic accounting outputs, chain-of-custody logs.

F. Court materials: statements of affairs, affidavits, pleadings and orders (including sealed materials as authorised).

G. Asset tracing: non-privileged tracing schedules, dashboards, and summaries of restraints or recovery actions.

H. Preservation: litigation hold notices and repositories metadata (to the extent disclosure assists law enforcement).

Disclosure of any category remains subject to sections 9–12 of the Protocol.

**Schedule 2 – Template quarterly consultation report (confidential)**

1. Executive summary and key developments.

2. Asset position: discoveries, realisations, restraints and pending recovery actions.

3. Investigations: factual findings, cooperating witnesses, outstanding enquiries.

4. Legal proceedings: applications filed or contemplated; coordination with foreign courts.

5. Law enforcement interface: requests received/made; disclosures; pending deadlines.

6. Risks and mitigants: dissipation risks, data loss risks, reputational issues.

7. Next steps and proposed timetable; matters requiring Attorney General input.

8. Appendices: schedules of documents disclosed; privilege log (if applicable).

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0010

BETWEEN:

IN THE MATTER OF JUMBO HIGH LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF
THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

Applicant

-v-

JUMBO HIGH LIMITED

Respondent

---

**ORDER ON APPLICATION FOR
JOINT PROVISIONAL LIQUIDATORS**

---



Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 l Fax: (284) 393 5805
www.onealwebster.com

**Case Number :BVIHCOM2026/0011**



**FILED**
HIGH COURT
**TERRITORY OF
THE VIRGIN ISLANDS**

**Submitted Date:13/01/2026 12:25**

**Filed Date:13/01/2026 12:25**

**Fees Paid:0.00**



**Case Number :BVIHCOM2026/0011**



**FILED**
**HIGH COURT**
TERRITORY OF
THE VIRGIN ISLANDS

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0011

**Submitted Date:12/01/2026 13:23**

**Filed Date:12/01/2026 13:23**

**Fees Paid:0.00**

BETWEEN:

IN THE MATTER OF LATERAL BRIDGE GLOBAL LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

Applicant

-v-

LATERAL BRIDGE GLOBAL LIMITED

Respondent

---

ORDER APPLICATION FOR JOINT PROVISIONAL LIQUIDATORS

---

BEFORE:      THE HONOURABLE JUSTICE ABBAS MITHANI

DATED:       THE 9th DAY OF JANUARY, 2026

ENTERED:     THE 12th DAY OF JANUARY, 2026

PENAL NOTICE

The effect of this Order is that the directors, former directors, office holders and former office holders of the Respondent, LATERAL BRIDGE GLOBAL LIMITED ("the Company") are replaced by the joint provisional liquidators and that the directors, former directors, office holders and former office holders are prohibited from taking any action in relation to the Company's affairs without prior consent of the joint provisional liquidators.

If you, the directors, former directors, office holders and former office holders of the Company fail to comply with the terms of this order, proceedings may be commenced against you for contempt of court and you may be liable to be imprisoned, fined or have your assets seized.

**This order must be complied with by any person affected by it upon whom it is served. Any other person who knows of this order and does anything which helps or permits the directors, former directors, office holders and/or former office holders of the Company to breach its terms may also be held to be in contempt of Court and may be imprisoned, fined or have their assets seized.**

**UPON THE ORDINARY APPLICATION** filed by the Applicant on 5 January 2026 seeking the appointment of James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110, Paul Pretlove and David Standish, both eligible overseas insolvency practitioner of Interpath Ltd, 10 Fleet Place, London EC4M 7RB, England as joint provisional liquidators of the Company pursuant to section 170 of the Insolvency Act 2003, ("**the Application**") coming on for hearing.

**AND UPON HEARING** Paul B. Dennis K.C. and with him Nadine Whyte Laing and Koya Ryan of O'Neal Webster for the Applicant.

**AND UPON** the Attorney General Dawn J. Smith being present.

**AND UPON** Mr. Paul Pretlove and Mr. James Drury, two of the proposed joint provisional liquidators being present.

**AND UPON READING** the Application, the originating application to appoint liquidators of the Company, the first affidavit of the Attorney General, the affidavit of Jeni-Lee Watson and the other documents on the Court file.

**AND UPON** the Application being heard ex parte.

**IT IS HEREBY ORDERED THAT:**

1. James Drury, Paul Pretlove and David Standish be appointed jointly and severally as provisional liquidators (the "**Joint Provisional Liquidators**") of the Company until further order.

2. The Joint Provisional Liquidators have the rights and powers of a liquidator to the extent necessary to maintain the value of the assets owned by the Company and to carry out the functions for which they are appointed.

3.   In addition to the powers outlined in 2 above, the Joint Provisional Liquidators shall have the following specific powers which may be exercised without further sanction or intervention of this Honourable Court:

a.   to gain entry to the Company's premises and take possession of and preserve the books and records of the Company;

b.   to identify any assets which may remain in the possession or control of the Company, and to take such steps as may be necessary to protect any such assets from removal or dissipation;

c.   to seek the recognition (or its equivalent) of the appointment of the Joint Provisional Liquidators in the United States, United Kingdom, Singapore, Hong Kong, Taiwan Thailand and Cambodia or elsewhere for the purposes of securing, realising and remitting assets to the control of the Joint Provisional Liquidators and for the purpose of obtaining access to and control of the records of the Company;

d.   to commence, continue, discontinue or defend, including by way of counterclaim or similar response, any action or other legal proceedings in the name and on behalf of the Company in so far as necessary to protect the assets and information of the Company including:

   (i)   issuing proceedings against the directors, former directors, office holders and former office holders of the Company, if so advised.

   (ii)   intervening (if so advised) in ongoing proceedings which involve the Company and/or its directors, former directors, office holders and/or its former office holders.

e.   to vote the shares of the Company in order to prevent the dissipation of its assets.

f.   to carry on the business of the Company so far as may be necessary for its beneficial provisional liquidation;

g.   to take all necessary steps to obtain from any person documents or copy documents which belong to the Company or have been created or maintained on its behalf or which the Company has a right to obtain or inspect.

h.   to appoint an agent including a solicitor, or accountant to do any business that the Joint Provisional Liquidators are unable to do themselves in discharge of their duties, or which can be more conveniently done by an agent;

i. to investigate the affairs of the Company so far as necessary to protect and, if necessary, retrieve the assets and records of the Company;

j. to retain, manage and operate the existing bank accounts of the Company including, without limitation, the power to change, remove and replace the signatories of these accounts and, where necessary, to open new bank accounts;

k. The Joint Provisional Liquidators may draw down payments on account of their remuneration, expenses and disbursements from time to time at a rate of 80% of their time costs and 100% of their expenses and disbursements, subject to these being subsequently approved by the court, and in the event that such sums are not approved, the unapproved sums be repaid to the Company within 7 days;

l. to apply to the Court for directions concerning any matter arising out of the exercise of the above powers; and

m. to do all other things as may be incidental to the exercise of the above functions and powers.

n. to consult and share information with the Applicant to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company.

o. to cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4. The Joint Provisional Liquidators are authorised and directed to implement the protocol for consultation and information sharing between them and the Applicant in the draft which is attached hereto ("the Protocol").

5. Any disclosure of information by the Joint Provisional Liquidators to the Applicant made in good faith and in accordance with the Protocol shall be deemed authorised by the Court and shall not constitute a breach of duty, confidence, data protection obligations or contractual restrictions binding upon the Company.

6. The Joint Provisional Liquidators shall not be required to disclose material subject to legal professional privilege or litigation privilege.

7. The Joint Provisional Liquidators and the Applicant have liberty to apply on short notice for directions, variation or termination of the Protocol.

8. The costs of the provisional liquidation, including the proper fees and disbursements of the Joint Provisional Liquidators and the Applicant's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

9. The powers set out in paragraph 3 above are to the exclusion of any power exercised or purported to be exercised by any existing director of the Company in so far as such power concerns the affairs of the Company and its assets within the jurisdiction of the Virgin Islands.

10. Save as provided in paragraph 3 above the Joint Provisional Liquidators may not exercise any of the powers set out at Schedule 2 to the Insolvency Act, 2003 without sanction of the court.

11. Pursuant to section 174 of the Insolvency Act, 2003 alternatively pursuant to the inherent jurisdiction of the Court, all actions, suits or proceedings of any nature whatsoever against the Company be and are hereby restrained until further order of the Court.

12. During the period of their appointment, any act required or authorized to be done by the Joint Provisional Liquidators may be done by any one or more of them.

13. This order was made at a hearing without notice to the respondent. There will be a further hearing in respect of the order on or before *29th January 2026* with a time estimate of 30 minutes, for directions only (**the Return Date**).

14. The Joint Provisional Liquidators are to file and serve a report within one clear day before the Return Date summarising steps taken, any immediate concerns and recommended next steps.

15. The Company is at liberty to apply to vary or discharge the order upon giving 72 hours' notice to the Applicant and the Joint Provisional Liquidators.

16. The Joint Provisional Liquidators are at liberty to apply to vary or discharge the order if the allegations set out above are not substantiated or for some other reason upon giving 72 hours' notice to the Applicant and the Company.

17. The Applicant is not required to give an undertaking in damages.

18. The costs of this Application be costs in the provisional liquidation.

19. The Joint Provisional Liquidators are not required to pay or provide security.

BY THE COURT



REGISTRAR

**Protocol for Consultation and Information-Sharing Between the Liquidators and the Attorney General**

This Protocol is annexed to and forms part of the Order of the BVI Commercial Court (the **Court**) made on 9 January 2026 in Claim No. BVIHC (COM) 2026/0011 **("the Order")**. Capitalised terms bear the meanings given in the Order unless the context otherwise requires.

### 1. Purpose and status

This Protocol sets out a consultative framework between the Liquidators and the Attorney General to facilitate effective cooperation in the public interest, including in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of Lateral Bridge Global Limited **("the Company")** For the avoidance of doubt, this Protocol is made pursuant to and with the approval of the Court, and disclosures made in good faith in accordance with this Protocol are deemed authorised by the Court.

### 2. Guiding principles

The Liquidators shall remain independent and act in the interests of the Company's creditors as a whole and the integrity of the winding up. The Attorney General's participation under this Protocol is consultative and does not fetter the Liquidators' statutory powers or duties, nor the Attorney General's independent functions. Both parties shall conduct themselves with candour, proportionality and respect for legal professional privilege, confidentiality, data protection and rule of law.

Nothing in this Protocol is intended to limit or restrict the ability of the Company's stakeholders to constitute a creditors' committee.

### 3. Definitions

- Attorney General means the Attorney General of the Virgin Islands and includes designated officers acting on the Attorney General's behalf for the purposes of this Protocol.
- The Company means Lateral Bridge Global Limited which is the subject of the Order.
- Confidential Information means non-public information concerning the Company, the liquidation, related investigations, counterparties and assets, including personal data and material subject to confidentiality obligations owed by the Company or the Liquidators.

- Privileged Material means material subject to legal professional privilege or litigation privilege, or any analogous protection recognised by the Court.

### 4. Appointment and representation

The Attorney General shall constitute a consultative committee and may nominate up to three designated representatives for liaison with the Liquidators, with at least one senior contact identified (the **AGs Committee**). The Attorney General may change representatives on notice to the Liquidators.

The AGs Committee shall serve alongside any creditors' committee (if one is formed), and the Liquidators shall have equal regard to the views expressed by both the AGs Committee and the creditors' committee (if formed).

### 5. Consultation framework

5.1 Meetings. The Liquidators shall convene regular consultation meetings (in person or virtual) with the Attorney General not less than once per quarter, and ad hoc meetings as reasonably required. The Liquidators shall chair meetings and circulate a brief agenda in advance. These meetings may be consolidated with meetings of the creditors' committee (if one is formed).

5.2 Attendance. The Liquidators may invite professional advisers and members of the liquidation team. The Attorney General may invite relevant law enforcement or regulatory personnel, provided confidentiality undertakings are observed.

5.3 Minutes. The Liquidators shall keep concise minutes recording attendees, topics discussed and any agreed actions, subject to privilege and sensitivity redactions where appropriate.

### 6. Reporting

6.1 Periodic reports. The Liquidators shall provide to the Attorney General a confidential report not less than once per quarter covering, to the extent appropriate and not prejudicial to the estate:

- status of asset identification, recovery actions and investigations;
- key applications to the Court and outcomes;
- known factual matters relevant to potential criminal offences or regulatory breaches; and
- anticipated steps in the next period.

6.2 Urgent matters. The Liquidators shall promptly notify the Attorney General of matters reasonably judged to be urgent, including (but not limited to) risk of dissipation, destruction of records, or flight of suspects.

6.3 Templates. The Liquidators may adopt reporting templates and may omit details where disclosure would prejudice recoveries, negotiations, privilege, or legal processes.

### 7. Information requests by the Attorney General

7.1 Scope. The Attorney General may request access to documents, data and information reasonably required in relation to the Company or related persons or entities.

7.2 Process. Requests shall be made in writing, identifying the categories sought, the purpose, and any timing sensitivities. The Liquidators shall acknowledge within 3 business days and respond within a reasonable time, taking into account volume, complexity and competing duties.

7.3 Reasonableness and sequencing. The Liquidators may propose reasonable narrowing, staging or alternative formats, including summaries or redactions, to protect privilege, confidentiality, commercial sensitivity, or the integrity of civil recovery efforts.

7.4 Court supervision. If disagreement arises which cannot be resolved promptly, either party may seek directions from the Court on short notice.

### 8. Authorised disclosures and gateways

8.1 Court authorisation. Subject to sections 9–12, the Liquidators are authorised by the Court to disclose Confidential Information to the Attorney General for the limited purposes of regulatory or criminal investigation and prosecution, restraint, confiscation, forfeiture, mutual legal assistance, and related protective measures, and to receive Confidential Information from the Attorney General for liquidation purposes.

8.2 Statutory gateways. To the extent any statutory or regulatory gateway is required for disclosure or use of information, the parties shall cooperate to identify and use such gateways, including by seeking further directions or orders of the Court as needed.

8.3 No breach. Disclosures made in good faith under this Protocol shall not constitute a breach of duty, confidence, data protection laws, or contractual restrictions binding on the Company, and the Liquidators shall have the protection of the Court accordingly.

### 9. Privilege and confidentiality

9.1 Privilege preserved. The Liquidators shall not be required to disclose Privileged Material. Any inadvertent disclosure shall not constitute a waiver of privilege, and the Attorney General shall promptly return or delete such material and refrain from review or use upon notification.

9.2 Common interest. Where appropriate, and subject to legal advice, the parties may agree that certain exchanges are made on a common interest or joint interest basis to preserve privilege.

9.3 Use restrictions. The Attorney General shall maintain Confidential Information in confidence and use it solely for lawful law enforcement, regulatory and public interest purposes. Dissemination shall be limited to personnel with a need to know who are bound by equivalent confidentiality obligations.

9.4 Protective measures. Upon reasonable request, the Attorney General shall implement protective measures for sensitive materials, including secure handling protocols, restricted circulation, and, where appropriate, applications to seal or redact in criminal or regulatory proceedings to avoid prejudice to the estate.

### 10. Data protection and personal data

The parties shall process personal data lawfully, fairly and securely, with appropriate technical and organisational measures. Where cross-border transfers are contemplated, the parties shall cooperate to ensure a lawful transfer mechanism and, where necessary, seek the Court's directions.

### 11. Preservation and holds

The Liquidators shall implement and maintain appropriate document preservation measures in respect of the Company's records. The Attorney General shall notify the Liquidators of any preservation requirements arising from criminal investigations or proceedings, including anticipated requests or production deadlines, to allow timely compliance.

### 12. Coordination to avoid prejudice and duplication

The parties shall coordinate to minimise prejudice to the estate, civil recoveries and criminal processes, including by sequencing steps, agreeing standstills where appropriate, and consulting on timing of public filings or applications likely to have cross-impact. The Liquidators' primary duty to protect and realise assets shall be respected.

### 13. Public statements and confidentiality vis-à-vis third parties

Public statements about the Company, the liquidation or related investigations shall be coordinated to the extent practicable. The Liquidators may make statements required by law or the Court or necessary to protect assets or correct the market. The Attorney General may make statements required in the exercise of public functions, having regard to the Liquidators' requests to withhold sensitive details.

### 14. Costs and resourcing

The reasonable costs incurred by the Liquidators in complying with this Protocol, including costs of retrieval, review, redaction, secure transmission and liaison, are costs of the liquidation. Where requests impose material incremental burdens, the parties shall confer on pragmatic staging or cost-efficient approaches and, failing agreement, may seek the Court's directions.

### 15. Non-fetter and independence

Nothing in this Protocol fetters or derogates from the Liquidators' statutory powers and duties, or from the Attorney General's independent decision-making. The consultative role does not confer any power of direction over the Liquidators.

### 16. Conflicts and recusals

If a conflict of interest arises affecting any representative, that person shall recuse from relevant consultations. The parties shall notify each other of any material conflicts that could affect the integrity of cooperation, and may seek the Court's directions where necessary.

### 17. International cooperation

Where the Attorney General is engaged in mutual legal assistance, or cooperation with foreign authorities, the parties shall consult on scope and timing to ensure that disclosures and steps taken are consistent with this Protocol and do not unduly prejudice the liquidation or foreign proceedings. The Attorney

General shall take reasonable steps, where feasible, to secure protective handling by foreign authorities of any Confidential Information provided.

### 18. Records and audit trail

The Liquidators shall maintain a record of disclosures made to the Attorney General under this Protocol sufficient to evidence compliance, subject to privilege. The Attorney General shall, upon reasonable request, confirm receipt and any onward lawful use or disclosure to other agencies.

### 19. Duration, variation and termination

This Protocol takes effect upon the making of the Order and continues until the earlier of dissolution of the Company or further order of the Court. It may be varied by written agreement between the Liquidators and the Attorney General approved by the Court, or otherwise by order of the Court. The Court may suspend or terminate this Protocol upon application by either party.

### 20. Notices

Formal notices under this Protocol shall be in writing and sent to the designated contacts of each party as notified from time to time. Operational communications may be conducted by secure electronic means.

### 21. Dispute resolution and directions

Any dispute arising under or in connection with this Protocol shall, in the first instance, be addressed through consultation. Failing prompt resolution, either party may apply to the Court for directions on short notice.

### 22. Safe harbour

No act or omission of the Liquidators done in good faith and with reasonable care in reliance on this Protocol, or any directions of the Court, shall give rise to personal liability. The Liquidators shall be entitled to the usual indemnities out of the assets of the Company.

**Schedule 1 – Illustrative categories of information for disclosure**

A. Corporate records: constitutional documents, registers, organisational charts, officer and registered agent details.

B. Financial records: bank statements, ledgers, invoices, loan agreements, asset registers, related party transactions.

C. Communications: selected emails and messaging data from corporate systems relevant to suspected criminality.

D. Counterparty materials: KYC files, contracts, correspondence with intermediaries and fiduciaries.

E. Investigation work product: non-privileged factual memoranda, forensic accounting outputs, chain-of-custody logs.

F. Court materials: statements of affairs, affidavits, pleadings and orders (including sealed materials as authorised).

G. Asset tracing: non-privileged tracing schedules, dashboards, and summaries of restraints or recovery actions.

H. Preservation: litigation hold notices and repositories metadata (to the extent disclosure assists law enforcement).

Disclosure of any category remains subject to sections 9–12 of the Protocol.

**Schedule 2 – Template quarterly consultation report (confidential)**

1. Executive summary and key developments.

2. Asset position: discoveries, realisations, restraints and pending recovery actions.

3. Investigations: factual findings, cooperating witnesses, outstanding enquiries.

4. Legal proceedings: applications filed or contemplated; coordination with foreign courts.

5. Law enforcement interface: requests received/made; disclosures; pending deadlines.

6. Risks and mitigants: dissipation risks, data loss risks, reputational issues.

7. Next steps and proposed timetable; matters requiring Attorney General input.

8. Appendices: schedules of documents disclosed; privilege log (if applicable).

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0011

BETWEEN:

IN THE MATTER OF LATERAL BRIDGE GLOBAL LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF

THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

Applicant

-v-

LATERAL BRIDGE GLOBAL LIMITED

Respondent

---

### ORDER ON APPLICATION FOR JOINT PROVISIONAL LIQUIDATORS

---



O'Neal Webster

Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 I Fax: (284) 393 5805
www.onealwebster.com

**Case Number :BVIHCOM2026/0012**



**FILED**
HIGH COURT
**TERRITORY OF**
**THE VIRGIN ISLANDS**

**Submitted Date:13/01/2026 12:31**

**Filed Date:13/01/2026 12:34**

**Fees Paid:0.00**





**Case Number :BVIHCOM2026/0012**

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0012

**Submitted Date:12/01/2026 13:24**

**Filed Date:12/01/2026 13:24**

**Fees Paid:0.00**

BETWEEN:

IN THE MATTER OF LUMINOUS GLOW LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

Applicant

-v-

LUMINOUS GLOW LIMITED

Respondent

---

ORDER APPLICATION FOR JOINT PROVISIONAL LIQUIDATORS

---

BEFORE:  THE HONOURABLE JUSTICE ABBAS MITHANI

DATED:  THE 9th DAY OF JANUARY, 2026

ENTERED:  THE 12th DAY OF JANUARY, 2026

PENAL NOTICE

The effect of this Order is that the directors, former directors, office holders and former office holders of the Respondent, LUMINOUS GLOW LIMITED ("the Company") are replaced by the joint provisional liquidators and that the directors, former directors, office holders and former office holders are prohibited from taking any action in relation to the Company's affairs without prior consent of the joint provisional liquidators.

If you, the directors, former directors, office holders and former office holders of the Company fail to comply with the terms of this order, proceedings may be commenced against you for contempt of court and you may be liable to be imprisoned, fined or have your assets seized.

**This order must be complied with by any person affected by it upon whom it is served. Any other person who knows of this order and does anything which helps or permits the directors, former directors, office holders and/or former office holders of the Company to breach its terms may also be held to be in contempt of Court and may be imprisoned, fined or have their assets seized.**

**UPON THE ORDINARY APPLICATION** filed by the Applicant on 5 January 2026 seeking the appointment of James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110, Paul Pretlove and David Standish, both eligible overseas insolvency practitioner of Interpath Ltd, 10 Fleet Place, London EC4M 7RB, England as joint provisional liquidators of the Company pursuant to section 170 of the Insolvency Act 2003, ("**the Application**") coming on for hearing.

**AND UPON HEARING** Paul B. Dennis K.C. and with him Nadine Whyte Laing and Koya Ryan of O'Neal Webster for the Applicant.

**AND UPON** the Attorney General Dawn J. Smith being present.

**AND UPON** Mr. Paul Pretlove and Mr. James Drury, two of the proposed joint provisional liquidators being present.

**AND UPON READING** the Application, the originating application to appoint liquidators of the Company, the first affidavit of the Attorney General, the affidavit of Jeni-Lee Watson and the other documents on the Court file.

**AND UPON** the Application being heard ex parte.

**IT IS HEREBY ORDERED THAT:**

1.   James Drury, Paul Pretlove and David Standish be appointed jointly and severally as provisional liquidators (the **"Joint Provisional Liquidators"**) of the Company until further order.

2.   The Joint Provisional Liquidators have the rights and powers of a liquidator to the extent necessary to maintain the value of the assets owned by the Company and to carry out the functions for which they are appointed.

3.  In addition to the powers outlined in 2 above, the Joint Provisional Liquidators shall have the following specific powers which may be exercised without further sanction or intervention of this Honourable Court:

    a.  to gain entry to the Company's premises and take possession of and preserve the books and records of the Company;

    b.  to identify any assets which may remain in the possession or control of the Company, and to take such steps as may be necessary to protect any such assets from removal or dissipation;

    c.  to seek the recognition (or its equivalent) of the appointment of the Joint Provisional Liquidators in the United States, United Kingdom, Singapore, Hong Kong, Taiwan Thailand and Cambodia or elsewhere for the purposes of securing, realising and remitting assets to the control of the Joint Provisional Liquidators and for the purpose of obtaining access to and control of the records of the Company;

    d.  to commence, continue, discontinue or defend, including by way of counterclaim or similar response, any action or other legal proceedings in the name and on behalf of the Company in so far as necessary to protect the assets and information of the Company including:

        (i)  issuing proceedings against the directors, former directors, office holders and former office holders of the Company, if so advised.

        (ii)  intervening (if so advised) in ongoing proceedings which involve the Company and/or its directors, former directors, office holders and/or its former office holders.

    e.  to vote the shares of the Company in order to prevent the dissipation of its assets.

    f.  to carry on the business of the Company so far as may be necessary for its beneficial provisional liquidation;

    g.  to take all necessary steps to obtain from any person documents or copy documents which belong to the Company or have been created or maintained on its behalf or which the Company has a right to obtain or inspect.

    h.  to appoint an agent including a solicitor, or accountant to do any business that the Joint Provisional Liquidators are unable to do themselves in discharge of their duties, or which can be more conveniently done by an agent;

i.    to investigate the affairs of the Company so far as necessary to protect and, if necessary, retrieve the assets and records of the Company;

j.    to retain, manage and operate the existing bank accounts of the Company including, without limitation, the power to change, remove and replace the signatories of these accounts and, where necessary, to open new bank accounts;

k.    The Joint Provisional Liquidators may draw down payments on account of their remuneration, expenses and disbursements from time to time at a rate of 80% of their time costs and 100% of their expenses and disbursements, subject to these being subsequently approved by the court, and in the event that such sums are not approved, the unapproved sums be repaid to the Company within 7 days;

l.    to apply to the Court for directions concerning any matter arising out of the exercise of the above powers; and

m.    to do all other things as may be incidental to the exercise of the above functions and powers.

n.    to consult and share information with the Applicant to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company.

o.    to cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4.    The Joint Provisional Liquidators are authorised and directed to implement the protocol for consultation and information sharing between them and the Applicant in the draft which is attached hereto ("the Protocol").

5.    Any disclosure of information by the Joint Provisional Liquidators to the Applicant made in good faith and in accordance with the Protocol shall be deemed authorised by the Court and shall not constitute a breach of duty, confidence, data protection obligations or contractual restrictions binding upon the Company.

6.    The Joint Provisional Liquidators shall not be required to disclose material subject to legal professional privilege or litigation privilege.

7. The Joint Provisional Liquidators and the Applicant have liberty to apply on short notice for directions, variation or termination of the Protocol.

8. The costs of the provisional liquidation, including the proper fees and disbursements of the Joint Provisional Liquidators and the Applicant's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

9. The powers set out in paragraph 3 above are to the exclusion of any power exercised or purported to be exercised by any existing director of the Company in so far as such power concerns the affairs of the Company and its assets within the jurisdiction of the Virgin Islands.

10. Save as provided in paragraph 3 above the Joint Provisional Liquidators may not exercise any of the powers set out at Schedule 2 to the Insolvency Act, 2003 without sanction of the court.

11. Pursuant to section 174 of the Insolvency Act, 2003 alternatively pursuant to the inherent jurisdiction of the Court, all actions, suits or proceedings of any nature whatsoever against the Company be and are hereby restrained until further order of the Court.

12. During the period of their appointment, any act required or authorized to be done by the Joint Provisional Liquidators may be done by any one or more of them.

13. This order was made at a hearing without notice to the respondent.  There will be a further hearing in respect of the order on or before 29ᵗʰ January 2026 with a time estimate of 30 minutes, for directions only (**the Return Date**).

14. The Joint Provisional Liquidators are to file and serve a report within one clear day before the Return Date summarising steps taken, any immediate concerns and recommended next steps.

15. The Company is at liberty to apply to vary or discharge the order upon giving 72 hours' notice to the Applicant and the Joint Provisional Liquidators.

16. The Joint Provisional Liquidators are at liberty to apply to vary or discharge the order if the allegations set out above are not substantiated or for some other reason upon giving 72 hours' notice to the Applicant and the Company.

17. The Applicant is not required to give an undertaking in damages.

18. The costs of this Application be costs in the provisional liquidation.

19. The Joint Provisional Liquidators are not required to pay or provide security.

**BY THE COURT**



**REGISTRAR**

**Protocol for Consultation and Information-Sharing Between the Liquidators and the Attorney General**

This Protocol is annexed to and forms part of the Order of the BVI Commercial Court (the **Court**) made on 9 January 2026 in Claim No. BVIHC (COM) 2026/0012 (**"the Order"**). Capitalised terms bear the meanings given in the Order unless the context otherwise requires.

### 1. Purpose and status

This Protocol sets out a consultative framework between the Liquidators and the Attorney General to facilitate effective cooperation in the public interest, including in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of Luminous Glow Limited (**"the Company"**) For the avoidance of doubt, this Protocol is made pursuant to and with the approval of the Court, and disclosures made in good faith in accordance with this Protocol are deemed authorised by the Court.

### 2. Guiding principles

The Liquidators shall remain independent and act in the interests of the Company's creditors as a whole and the integrity of the winding up. The Attorney General's participation under this Protocol is consultative and does not fetter the Liquidators' statutory powers or duties, nor the Attorney General's independent functions. Both parties shall conduct themselves with candour, proportionality and respect for legal professional privilege, confidentiality, data protection and rule of law.

Nothing in this Protocol is intended to limit or restrict the ability of the Company's stakeholders to constitute a creditors' committee.

### 3. Definitions

- Attorney General means the Attorney General of the Virgin Islands and includes designated officers acting on the Attorney General's behalf for the purposes of this Protocol.
- The Company means Luminous Glow Limited which is the subject of the Order.
- Confidential Information means non-public information concerning the Company, the liquidation, related investigations, counterparties and assets, including personal data and material subject to confidentiality obligations owed by the Company or the Liquidators.

- Privileged Material means material subject to legal professional privilege or litigation privilege, or any analogous protection recognised by the Court.

## 4. Appointment and representation

The Attorney General shall constitute a consultative committee and may nominate up to three designated representatives for liaison with the Liquidators, with at least one senior contact identified (the **AGs Committee**). The Attorney General may change representatives on notice to the Liquidators.

The AGs Committee shall serve alongside any creditors' committee (if one is formed), and the Liquidators shall have equal regard to the views expressed by both the AGs Committee and the creditors' committee (if formed).

## 5. Consultation framework

5.1 Meetings. The Liquidators shall convene regular consultation meetings (in person or virtual) with the Attorney General not less than once per quarter, and ad hoc meetings as reasonably required. The Liquidators shall chair meetings and circulate a brief agenda in advance. These meetings may be consolidated with meetings of the creditors' committee (if one is formed).

5.2 Attendance. The Liquidators may invite professional advisers and members of the liquidation team. The Attorney General may invite relevant law enforcement or regulatory personnel, provided confidentiality undertakings are observed.

5.3 Minutes. The Liquidators shall keep concise minutes recording attendees, topics discussed and any agreed actions, subject to privilege and sensitivity redactions where appropriate.

## 6. Reporting

6.1 Periodic reports. The Liquidators shall provide to the Attorney General a confidential report not less than once per quarter covering, to the extent appropriate and not prejudicial to the estate:

- status of asset identification, recovery actions and investigations;
- key applications to the Court and outcomes;
- known factual matters relevant to potential criminal offences or regulatory breaches; and
- anticipated steps in the next period.

6.2 Urgent matters. The Liquidators shall promptly notify the Attorney General of matters reasonably judged to be urgent, including (but not limited to) risk of dissipation, destruction of records, or flight of suspects.

6.3 Templates. The Liquidators may adopt reporting templates and may omit details where disclosure would prejudice recoveries, negotiations, privilege, or legal processes.

### 7. Information requests by the Attorney General

7.1 Scope. The Attorney General may request access to documents, data and information reasonably required in relation to the Company or related persons or entities.

7.2 Process. Requests shall be made in writing, identifying the categories sought, the purpose, and any timing sensitivities. The Liquidators shall acknowledge within 3 business days and respond within a reasonable time, taking into account volume, complexity and competing duties.

7.3 Reasonableness and sequencing. The Liquidators may propose reasonable narrowing, staging or alternative formats, including summaries or redactions, to protect privilege, confidentiality, commercial sensitivity, or the integrity of civil recovery efforts.

7.4 Court supervision. If disagreement arises which cannot be resolved promptly, either party may seek directions from the Court on short notice.

### 8. Authorised disclosures and gateways

8.1 Court authorisation. Subject to sections 9–12, the Liquidators are authorised by the Court to disclose Confidential Information to the Attorney General for the limited purposes of regulatory or criminal investigation and prosecution, restraint, confiscation, forfeiture, mutual legal assistance, and related protective measures, and to receive Confidential Information from the Attorney General for liquidation purposes.

8.2 Statutory gateways. To the extent any statutory or regulatory gateway is required for disclosure or use of information, the parties shall cooperate to identify and use such gateways, including by seeking further directions or orders of the Court as needed.

8.3 No breach. Disclosures made in good faith under this Protocol shall not constitute a breach of duty, confidence, data protection laws, or contractual restrictions binding on the Company, and the Liquidators shall have the protection of the Court accordingly.

### 9. Privilege and confidentiality

9.1 Privilege preserved. The Liquidators shall not be required to disclose Privileged Material. Any inadvertent disclosure shall not constitute a waiver of privilege, and the Attorney General shall promptly return or delete such material and refrain from review or use upon notification.

9.2 Common interest. Where appropriate, and subject to legal advice, the parties may agree that certain exchanges are made on a common interest or joint interest basis to preserve privilege.

9.3 Use restrictions. The Attorney General shall maintain Confidential Information in confidence and use it solely for lawful law enforcement, regulatory and public interest purposes. Dissemination shall be limited to personnel with a need to know who are bound by equivalent confidentiality obligations.

9.4 Protective measures. Upon reasonable request, the Attorney General shall implement protective measures for sensitive materials, including secure handling protocols, restricted circulation, and, where appropriate, applications to seal or redact in criminal or regulatory proceedings to avoid prejudice to the estate.

### 10. Data protection and personal data

The parties shall process personal data lawfully, fairly and securely, with appropriate technical and organisational measures. Where cross-border transfers are contemplated, the parties shall cooperate to ensure a lawful transfer mechanism and, where necessary, seek the Court's directions.

### 11. Preservation and holds

The Liquidators shall implement and maintain appropriate document preservation measures in respect of the Company's records. The Attorney General shall notify the Liquidators of any preservation requirements arising from criminal investigations or proceedings, including anticipated requests or production deadlines, to allow timely compliance.

### 12. Coordination to avoid prejudice and duplication

The parties shall coordinate to minimise prejudice to the estate, civil recoveries and criminal processes, including by sequencing steps, agreeing standstills where appropriate, and consulting on timing of public filings or applications likely to have cross-impact. The Liquidators' primary duty to protect and realise assets shall be respected.

### 13. Public statements and confidentiality vis-à-vis third parties

Public statements about the Company, the liquidation or related investigations shall be coordinated to the extent practicable. The Liquidators may make statements required by law or the Court or necessary to protect assets or correct the market. The Attorney General may make statements required in the exercise of public functions, having regard to the Liquidators' requests to withhold sensitive details.

### 14. Costs and resourcing

The reasonable costs incurred by the Liquidators in complying with this Protocol, including costs of retrieval, review, redaction, secure transmission and liaison, are costs of the liquidation. Where requests impose material incremental burdens, the parties shall confer on pragmatic staging or cost-efficient approaches and, failing agreement, may seek the Court's directions.

### 15. Non-fetter and independence

Nothing in this Protocol fetters or derogates from the Liquidators' statutory powers and duties, or from the Attorney General's independent decision-making. The consultative role does not confer any power of direction over the Liquidators.

### 16. Conflicts and recusals

If a conflict of interest arises affecting any representative, that person shall recuse from relevant consultations. The parties shall notify each other of any material conflicts that could affect the integrity of cooperation, and may seek the Court's directions where necessary.

### 17. International cooperation

Where the Attorney General is engaged in mutual legal assistance, or cooperation with foreign authorities, the parties shall consult on scope and timing to ensure that disclosures and steps taken are consistent with this Protocol and do not unduly prejudice the liquidation or foreign proceedings. The Attorney

General shall take reasonable steps, where feasible, to secure protective handling by foreign authorities of any Confidential Information provided.

### 18. Records and audit trail

The Liquidators shall maintain a record of disclosures made to the Attorney General under this Protocol sufficient to evidence compliance, subject to privilege. The Attorney General shall, upon reasonable request, confirm receipt and any onward lawful use or disclosure to other agencies.

### 19. Duration, variation and termination

This Protocol takes effect upon the making of the Order and continues until the earlier of dissolution of the Company or further order of the Court. It may be varied by written agreement between the Liquidators and the Attorney General approved by the Court, or otherwise by order of the Court. The Court may suspend or terminate this Protocol upon application by either party.

### 20. Notices

Formal notices under this Protocol shall be in writing and sent to the designated contacts of each party as notified from time to time. Operational communications may be conducted by secure electronic means.

### 21. Dispute resolution and directions

Any dispute arising under or in connection with this Protocol shall, in the first instance, be addressed through consultation. Failing prompt resolution, either party may apply to the Court for directions on short notice.

### 22. Safe harbour

No act or omission of the Liquidators done in good faith and with reasonable care in reliance on this Protocol, or any directions of the Court, shall give rise to personal liability. The Liquidators shall be entitled to the usual indemnities out of the assets of the Company.

## Schedule 1 – Illustrative categories of information for disclosure

A. Corporate records: constitutional documents, registers, organisational charts, officer and registered agent details.

B. Financial records: bank statements, ledgers, invoices, loan agreements, asset registers, related party transactions.

C. Communications: selected emails and messaging data from corporate systems relevant to suspected criminality.

D. Counterparty materials: KYC files, contracts, correspondence with intermediaries and fiduciaries.

E. Investigation work product: non-privileged factual memoranda, forensic accounting outputs, chain-of-custody logs.

F. Court materials: statements of affairs, affidavits, pleadings and orders (including sealed materials as authorised).

G. Asset tracing: non-privileged tracing schedules, dashboards, and summaries of restraints or recovery actions.

H. Preservation: litigation hold notices and repositories metadata (to the extent disclosure assists law enforcement).

Disclosure of any category remains subject to sections 9–12 of the Protocol.

## Schedule 2 – Template quarterly consultation report (confidential)

1. Executive summary and key developments.

2. Asset position: discoveries, realisations, restraints and pending recovery actions.

3. Investigations: factual findings, cooperating witnesses, outstanding enquiries.

4. Legal proceedings: applications filed or contemplated; coordination with foreign courts.

5. Law enforcement interface: requests received/made; disclosures; pending deadlines.

6. Risks and mitigants: dissipation risks, data loss risks, reputational issues.

7. Next steps and proposed timetable; matters requiring Attorney General input.

8. Appendices: schedules of documents disclosed; privilege log (if applicable).

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0012

BETWEEN:

IN THE MATTER OF LUMINOUS GLOW LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF

THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

Applicant

-v-

LUMINOUS GLOW LIMITED

Respondent

---

### ORDER ON APPLICATION FOR
### JOINT PROVISIONAL LIQUIDATORS

---



O'Neal
Webster

Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 I Fax: (284) 393 5805
www.onealwebster.com

**Case Number :BVIHCOM2026/0013**



**FILED**
HIGH COURT
**TERRITORY OF**
**THE VIRGIN ISLANDS**

**Submitted Date:13/01/2026 12:36**

**Filed Date:13/01/2026 12:36**

**Fees Paid:0.00**



**Case Number :BVIHCOM2026/0013**

**FILED**
**HIGH COURT**
TERRITORY OF
THE VIRGIN ISLANDS

**Submitted Date:12/01/2026 13:25**

**Filed Date:12/01/2026 13:26**

**Fees Paid:0.00**

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0013

BETWEEN:

IN THE MATTER OF MIGHTY DIVINE LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

Applicant

-v-

MIGHTY DIVINE LIMITED

Respondent

---

ORDER APPLICATION FOR JOINT PROVISIONAL LIQUIDATORS

---

BEFORE:        THE HONOURABLE JUSTICE ABBAS MITHANI

DATED:         THE 9th DAY OF JANUARY, 2026

ENTERED:       THE 12th DAY OF JANUARY, 2026

PENAL NOTICE

The effect of this Order is that the directors, former directors, office holders and former office holders of the Respondent, MIGHTY DIVINE LIMITED ("the Company") are replaced by the joint provisional liquidators and that the directors, former directors, office holders and former office holders are prohibited from taking any action in relation to the Company's affairs without prior consent of the joint provisional liquidators.

If you, the directors, former directors, office holders and former office holders of the Company fail to comply with the terms of this order, proceedings may be commenced against you for contempt of court and you may be liable to be imprisoned, fined or have your assets seized.

**This order must be complied with by any person affected by it upon whom it is served. Any other person who knows of this order and does anything which helps or permits the directors, former directors, office holders and/or former office holders of the Company to breach its terms may also be held to be in contempt of Court and may be imprisoned, fined or have their assets seized.**

**UPON THE ORDINARY APPLICATION** filed by the Applicant on 5 January 2026 seeking the appointment of James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110, Paul Pretlove and David Standish, both eligible overseas insolvency practitioner of Interpath Ltd, 10 Fleet Place, London EC4M 7RB, England as joint provisional liquidators of the Company pursuant to section 170 of the Insolvency Act 2003, ("**the Application**") coming on for hearing.

**AND UPON HEARING** Paul B. Dennis K.C. and with him Nadine Whyte Laing and Koya Ryan of O'Neal Webster for the Applicant.

**AND UPON** the Attorney General Dawn J. Smith being present.

**AND UPON** Mr. Paul Pretlove and Mr. James Drury, two of the proposed joint provisional liquidators being present.

**AND UPON READING** the Application, the originating application to appoint liquidators of the Company, the first affidavit of the Attorney General, the affidavit of Jeni-Lee Watson and the other documents on the Court file.

**AND UPON** the Application being heard ex parte.

**IT IS HEREBY ORDERED THAT:**

1.    James Drury, Paul Pretlove and David Standish be appointed jointly and severally as provisional liquidators (the "**Joint Provisional Liquidators**") of the Company until further order.

2.    The Joint Provisional Liquidators have the rights and powers of a liquidator to the extent necessary to maintain the value of the assets owned by the Company and to carry out the functions for which they are appointed.

3. In addition to the powers outlined in 2 above, the Joint Provisional Liquidators shall have the following specific powers which may be exercised without further sanction or intervention of this Honourable Court:

   a. to gain entry to the Company's premises and take possession of and preserve the books and records of the Company;

   b. to identify any assets which may remain in the possession or control of the Company, and to take such steps as may be necessary to protect any such assets from removal or dissipation;

   c. to seek the recognition (or its equivalent) of the appointment of the Joint Provisional Liquidators in the United States, United Kingdom, Singapore, Hong Kong, Taiwan Thailand and Cambodia or elsewhere for the purposes of securing, realising and remitting assets to the control of the Joint Provisional Liquidators and for the purpose of obtaining access to and control of the records of the Company;

   d. to commence, continue, discontinue or defend, including by way of counterclaim or similar response, any action or other legal proceedings in the name and on behalf of the Company in so far as necessary to protect the assets and information of the Company including:

      (i) issuing proceedings against the directors, former directors, office holders and former office holders of the Company, if so advised.

      (ii) intervening (if so advised) in ongoing proceedings which involve the Company and/or its directors, former directors, office holders and/or its former office holders.

   e. to vote the shares of the Company in order to prevent the dissipation of its assets.

   f. to carry on the business of the Company so far as may be necessary for its beneficial provisional liquidation;

   g. to take all necessary steps to obtain from any person documents or copy documents which belong to the Company or have been created or maintained on its behalf or which the Company has a right to obtain or inspect.

   h. to appoint an agent including a solicitor, or accountant to do any business that the Joint Provisional Liquidators are unable to do themselves in discharge of their duties, or which can be more conveniently done by an agent;

i.  to investigate the affairs of the Company so far as necessary to protect and, if necessary, retrieve the assets and records of the Company;

j.  to retain, manage and operate the existing bank accounts of the Company including, without limitation, the power to change, remove and replace the signatories of these accounts and, where necessary, to open new bank accounts;

k.  The Joint Provisional Liquidators may draw down payments on account of their remuneration, expenses and disbursements from time to time at a rate of 80% of their time costs and 100% of their expenses and disbursements, subject to these being subsequently approved by the court, and in the event that such sums are not approved, the unapproved sums be repaid to the Company within 7 days;

l.  to apply to the Court for directions concerning any matter arising out of the exercise of the above powers; and

m.  to do all other things as may be incidental to the exercise of the above functions and powers.

n.  to consult and share information with the Applicant to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company.

o.  to cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4.  The Joint Provisional Liquidators are authorised and directed to implement the protocol for consultation and information sharing between them and the Applicant in the draft which is attached hereto ("the Protocol").

5.  Any disclosure of information by the Joint Provisional Liquidators to the Applicant made in good faith and in accordance with the Protocol shall be deemed authorised by the Court and shall not constitute a breach of duty, confidence, data protection obligations or contractual restrictions binding upon the Company.

6.  The Joint Provisional Liquidators shall not be required to disclose material subject to legal professional privilege or litigation privilege.

7. The Joint Provisional Liquidators and the Applicant have liberty to apply on short notice for directions, variation or termination of the Protocol.

8. The costs of the provisional liquidation, including the proper fees and disbursements of the Joint Provisional Liquidators and the Applicant's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

9. The powers set out in paragraph 3 above are to the exclusion of any power exercised or purported to be exercised by any existing director of the Company in so far as such power concerns the affairs of the Company and its assets within the jurisdiction of the Virgin Islands.

10. Save as provided in paragraph 3 above the Joint Provisional Liquidators may not exercise any of the powers set out at Schedule 2 to the Insolvency Act, 2003 without sanction of the court.

11. Pursuant to section 174 of the Insolvency Act, 2003 alternatively pursuant to the inherent jurisdiction of the Court, all actions, suits or proceedings of any nature whatsoever against the Company be and are hereby restrained until further order of the Court.

12. During the period of their appointment, any act required or authorized to be done by the Joint Provisional Liquidators may be done by any one or more of them.

13. This order was made at a hearing without notice to the respondent. There will be a further hearing in respect of the order on or before *29th January 2026* with a time estimate of 30 minutes, for directions only (**the Return Date**).

14. The Joint Provisional Liquidators are to file and serve a report within one clear day before the Return Date summarising steps taken, any immediate concerns and recommended next steps.

15. The Company is at liberty to apply to vary or discharge the order upon giving 72 hours' notice to the Applicant and the Joint Provisional Liquidators.

16. The Joint Provisional Liquidators are at liberty to apply to vary or discharge the order if the allegations set out above are not substantiated or for some other reason upon giving 72 hours' notice to the Applicant and the Company.

17.    The Applicant is not required to give an undertaking in damages.

18.    The costs of this Application be costs in the provisional liquidation.

19.    The Joint Provisional Liquidators are not required to pay or provide security.

BY THE COURT

_____

REGISTRAR

**Protocol for Consultation and Information-Sharing Between the Liquidators and the Attorney General**

This Protocol is annexed to and forms part of the Order of the BVI Commercial Court (the **Court**) made on 9 January 2026 in Claim No. BVIHC (COM) 2026/0013 **("the Order")**. Capitalised terms bear the meanings given in the Order unless the context otherwise requires.

### 1. Purpose and status

This Protocol sets out a consultative framework between the Liquidators and the Attorney General to facilitate effective cooperation in the public interest, including in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of Mighty Divine Limited **("the Company")** For the avoidance of doubt, this Protocol is made pursuant to and with the approval of the Court, and disclosures made in good faith in accordance with this Protocol are deemed authorised by the Court.

### 2. Guiding principles

The Liquidators shall remain independent and act in the interests of the Company's creditors as a whole and the integrity of the winding up. The Attorney General's participation under this Protocol is consultative and does not fetter the Liquidators' statutory powers or duties, nor the Attorney General's independent functions. Both parties shall conduct themselves with candour, proportionality and respect for legal professional privilege, confidentiality, data protection and rule of law.

Nothing in this Protocol is intended to limit or restrict the ability of the Company's stakeholders to constitute a creditors' committee.

### 3. Definitions

- Attorney General means the Attorney General of the Virgin Islands and includes designated officers acting on the Attorney General's behalf for the purposes of this Protocol.
- The Company means Mighty Divine Limited which is the subject of the Order.
- Confidential Information means non-public information concerning the Company, the liquidation, related investigations, counterparties and assets, including personal data and material subject to confidentiality obligations owed by the Company or the Liquidators.

- Privileged Material means material subject to legal professional privilege or litigation privilege, or any analogous protection recognised by the Court.

### 4. Appointment and representation

The Attorney General shall constitute a consultative committee and may nominate up to three designated representatives for liaison with the Liquidators, with at least one senior contact identified (the **AGs Committee**). The Attorney General may change representatives on notice to the Liquidators.

The AGs Committee shall serve alongside any creditors' committee (if one is formed), and the Liquidators shall have equal regard to the views expressed by both the AGs Committee and the creditors' committee (if formed).

### 5. Consultation framework

5.1 Meetings. The Liquidators shall convene regular consultation meetings (in person or virtual) with the Attorney General not less than once per quarter, and ad hoc meetings as reasonably required. The Liquidators shall chair meetings and circulate a brief agenda in advance. These meetings may be consolidated with meetings of the creditors' committee (if one is formed).

5.2 Attendance. The Liquidators may invite professional advisers and members of the liquidation team. The Attorney General may invite relevant law enforcement or regulatory personnel, provided confidentiality undertakings are observed.

5.3 Minutes. The Liquidators shall keep concise minutes recording attendees, topics discussed and any agreed actions, subject to privilege and sensitivity redactions where appropriate.

### 6. Reporting

6.1 Periodic reports. The Liquidators shall provide to the Attorney General a confidential report not less than once per quarter covering, to the extent appropriate and not prejudicial to the estate:

- status of asset identification, recovery actions and investigations;
- key applications to the Court and outcomes;
- known factual matters relevant to potential criminal offences or regulatory breaches; and
- anticipated steps in the next period.

6.2 Urgent matters. The Liquidators shall promptly notify the Attorney General of matters reasonably judged to be urgent, including (but not limited to) risk of dissipation, destruction of records, or flight of suspects.

6.3 Templates. The Liquidators may adopt reporting templates and may omit details where disclosure would prejudice recoveries, negotiations, privilege, or legal processes.

### 7. Information requests by the Attorney General

7.1 Scope. The Attorney General may request access to documents, data and information reasonably required in relation to the Company or related persons or entities.

7.2 Process. Requests shall be made in writing, identifying the categories sought, the purpose, and any timing sensitivities. The Liquidators shall acknowledge within 3 business days and respond within a reasonable time, taking into account volume, complexity and competing duties.

7.3 Reasonableness and sequencing. The Liquidators may propose reasonable narrowing, staging or alternative formats, including summaries or redactions, to protect privilege, confidentiality, commercial sensitivity, or the integrity of civil recovery efforts.

7.4 Court supervision. If disagreement arises which cannot be resolved promptly, either party may seek directions from the Court on short notice.

### 8. Authorised disclosures and gateways

8.1 Court authorisation. Subject to sections 9–12, the Liquidators are authorised by the Court to disclose Confidential Information to the Attorney General for the limited purposes of regulatory or criminal investigation and prosecution, restraint, confiscation, forfeiture, mutual legal assistance, and related protective measures, and to receive Confidential Information from the Attorney General for liquidation purposes.

8.2 Statutory gateways. To the extent any statutory or regulatory gateway is required for disclosure or use of information, the parties shall cooperate to identify and use such gateways, including by seeking further directions or orders of the Court as needed.

8.3 No breach. Disclosures made in good faith under this Protocol shall not constitute a breach of duty, confidence, data protection laws, or contractual restrictions binding on the Company, and the Liquidators shall have the protection of the Court accordingly.

### 9. Privilege and confidentiality

9.1 Privilege preserved. The Liquidators shall not be required to disclose Privileged Material. Any inadvertent disclosure shall not constitute a waiver of privilege, and the Attorney General shall promptly return or delete such material and refrain from review or use upon notification.

9.2 Common interest. Where appropriate, and subject to legal advice, the parties may agree that certain exchanges are made on a common interest or joint interest basis to preserve privilege.

9.3 Use restrictions. The Attorney General shall maintain Confidential Information in confidence and use it solely for lawful law enforcement, regulatory and public interest purposes. Dissemination shall be limited to personnel with a need to know who are bound by equivalent confidentiality obligations.

9.4 Protective measures. Upon reasonable request, the Attorney General shall implement protective measures for sensitive materials, including secure handling protocols, restricted circulation, and, where appropriate, applications to seal or redact in criminal or regulatory proceedings to avoid prejudice to the estate.

### 10. Data protection and personal data

The parties shall process personal data lawfully, fairly and securely, with appropriate technical and organisational measures. Where cross-border transfers are contemplated, the parties shall cooperate to ensure a lawful transfer mechanism and, where necessary, seek the Court's directions.

### 11. Preservation and holds

The Liquidators shall implement and maintain appropriate document preservation measures in respect of the Company's records. The Attorney General shall notify the Liquidators of any preservation requirements arising from criminal investigations or proceedings, including anticipated requests or production deadlines, to allow timely compliance.

### 12. Coordination to avoid prejudice and duplication

The parties shall coordinate to minimise prejudice to the estate, civil recoveries and criminal processes, including by sequencing steps, agreeing standstills where appropriate, and consulting on timing of public filings or applications likely to have cross-impact. The Liquidators' primary duty to protect and realise assets shall be respected.

### 13. Public statements and confidentiality vis-à-vis third parties

Public statements about the Company, the liquidation or related investigations shall be coordinated to the extent practicable. The Liquidators may make statements required by law or the Court or necessary to protect assets or correct the market. The Attorney General may make statements required in the exercise of public functions, having regard to the Liquidators' requests to withhold sensitive details.

### 14. Costs and resourcing

The reasonable costs incurred by the Liquidators in complying with this Protocol, including costs of retrieval, review, redaction, secure transmission and liaison, are costs of the liquidation. Where requests impose material incremental burdens, the parties shall confer on pragmatic staging or cost-efficient approaches and, failing agreement, may seek the Court's directions.

### 15. Non-fetter and independence

Nothing in this Protocol fetters or derogates from the Liquidators' statutory powers and duties, or from the Attorney General's independent decision-making. The consultative role does not confer any power of direction over the Liquidators.

### 16. Conflicts and recusals

If a conflict of interest arises affecting any representative, that person shall recuse from relevant consultations. The parties shall notify each other of any material conflicts that could affect the integrity of cooperation, and may seek the Court's directions where necessary.

### 17. International cooperation

Where the Attorney General is engaged in mutual legal assistance, or cooperation with foreign authorities, the parties shall consult on scope and timing to ensure that disclosures and steps taken are consistent with this Protocol and do not unduly prejudice the liquidation or foreign proceedings. The Attorney

General shall take reasonable steps, where feasible, to secure protective handling by foreign authorities of any Confidential Information provided.

### 18. Records and audit trail

The Liquidators shall maintain a record of disclosures made to the Attorney General under this Protocol sufficient to evidence compliance, subject to privilege. The Attorney General shall, upon reasonable request, confirm receipt and any onward lawful use or disclosure to other agencies.

### 19. Duration, variation and termination

This Protocol takes effect upon the making of the Order and continues until the earlier of dissolution of the Company or further order of the Court. It may be varied by written agreement between the Liquidators and the Attorney General approved by the Court, or otherwise by order of the Court. The Court may suspend or terminate this Protocol upon application by either party.

### 20. Notices

Formal notices under this Protocol shall be in writing and sent to the designated contacts of each party as notified from time to time. Operational communications may be conducted by secure electronic means.

### 21. Dispute resolution and directions

Any dispute arising under or in connection with this Protocol shall, in the first instance, be addressed through consultation. Failing prompt resolution, either party may apply to the Court for directions on short notice.

### 22. Safe harbour

No act or omission of the Liquidators done in good faith and with reasonable care in reliance on this Protocol, or any directions of the Court, shall give rise to personal liability. The Liquidators shall be entitled to the usual indemnities out of the assets of the Company.

**Schedule 1 – Illustrative categories of information for disclosure**

A. Corporate records: constitutional documents, registers, organisational charts, officer and registered agent details.

B. Financial records: bank statements, ledgers, invoices, loan agreements, asset registers, related party transactions.

C. Communications: selected emails and messaging data from corporate systems relevant to suspected criminality.

D. Counterparty materials: KYC files, contracts, correspondence with intermediaries and fiduciaries.

E. Investigation work product: non-privileged factual memoranda, forensic accounting outputs, chain-of-custody logs.

F. Court materials: statements of affairs, affidavits, pleadings and orders (including sealed materials as authorised).

G. Asset tracing: non-privileged tracing schedules, dashboards, and summaries of restraints or recovery actions.

H. Preservation: litigation hold notices and repositories metadata (to the extent disclosure assists law enforcement).

Disclosure of any category remains subject to sections 9–12 of the Protocol.

**Schedule 2 – Template quarterly consultation report (confidential)**

1. Executive summary and key developments.

2. Asset position: discoveries, realisations, restraints and pending recovery actions.

3. Investigations: factual findings, cooperating witnesses, outstanding enquiries.

4. Legal proceedings: applications filed or contemplated; coordination with foreign courts.

5. Law enforcement interface: requests received/made; disclosures; pending deadlines.

6. Risks and mitigants: dissipation risks, data loss risks, reputational issues.

7. Next steps and proposed timetable; matters requiring Attorney General input.

8. Appendices: schedules of documents disclosed; privilege log (if applicable).

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0013

BETWEEN:

IN THE MATTER OF MIGHTY DIVINE LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF

THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

Applicant

-v-

MIGHTY DIVINE LIMITED

Respondent

---

**ORDER ON APPLICATION FOR
JOINT PROVISIONAL LIQUIDATORS**

---



**O'Neal Webster**

Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 l Fax: (284) 393 5805
www.onealwebster.com



**FILED**
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS

**Submitted Date:13/01/2026 13:39**

**Filed Date:13/01/2026 13:42**

**Fees Paid:0.00**



**Case Number :BVIHCOM2026/0014**



**FILED**
**HIGH COURT**
TERRITORY OF
THE VIRGIN ISLANDS

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0014

**Submitted Date:12/01/2026 13:27**

**Filed Date:12/01/2026 13:27**

**Fees Paid:0.00**

BETWEEN:

IN THE MATTER OF NOBLE TITLE LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

Applicant

-v-

NOBLE TITLE LIMITED

Respondent

---

ORDER APPLICATION FOR JOINT PROVISIONAL LIQUIDATORS

---

BEFORE:    THE HONOURABLE JUSTICE ABBAS MITHANI

DATED:    THE 9th DAY OF JANUARY, 2026

ENTERED:    THE 12th DAY OF JANUARY, 2026

PENAL NOTICE

The effect of this Order is that the directors, former directors, office holders and former office holders of the Respondent, NOBLE TITLE LIMITED ("the Company") are replaced by the joint provisional liquidators and that the directors, former directors, office holders and former office holders are prohibited from taking any action in relation to the Company's affairs without prior consent of the joint provisional liquidators.

If you, the directors, former directors, office holders and former office holders of the Company fail to comply with the terms of this order, proceedings may be commenced against you for contempt of court and you may be liable to be imprisoned, fined or have your assets seized.

**This order must be complied with by any person affected by it upon whom it is served. Any other person who knows of this order and does anything which helps or permits the directors, former directors, office holders and/or former office holders of the Company to breach its terms may also be held to be in contempt of Court and may be imprisoned, fined or have their assets seized.**

**UPON THE ORDINARY APPLICATION** filed by the Applicant on 5 January 2026 seeking the appointment of James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110, Paul Pretlove and David Standish, both eligible overseas insolvency practitioner of Interpath Ltd, 10 Fleet Place, London EC4M 7RB, England as joint provisional liquidators of the Company pursuant to section 170 of the Insolvency Act 2003, (**"the Application"**) coming on for hearing.

**AND UPON HEARING** Paul B. Dennis K.C. and with him Nadine Whyte Laing and Koya Ryan of O'Neal Webster for the Applicant.

**AND UPON** the Attorney General Dawn J. Smith being present.

**AND UPON** Mr. Paul Pretlove and Mr. James Drury, two of the proposed joint provisional liquidators being present.

**AND UPON READING** the Application, the originating application to appoint liquidators of the Company, the first affidavit of the Attorney General, the affidavit of Jeni-Lee Watson and the other documents on the Court file.

**AND UPON** the Application being heard ex parte.

**IT IS HEREBY ORDERED THAT:**

1.  James Drury, Paul Pretlove and David Standish be appointed jointly and severally as provisional liquidators (the **"Joint Provisional Liquidators"**) of the Company until further order.

2.  The Joint Provisional Liquidators have the rights and powers of a liquidator to the extent necessary to maintain the value of the assets owned by the Company and to carry out the functions for which they are appointed.

3. In addition to the powers outlined in 2 above, the Joint Provisional Liquidators shall have the following specific powers which may be exercised without further sanction or intervention of this Honourable Court:

    a. to gain entry to the Company's premises and take possession of and preserve the books and records of the Company;

    b. to identify any assets which may remain in the possession or control of the Company, and to take such steps as may be necessary to protect any such assets from removal or dissipation;

    c. to seek the recognition (or its equivalent) of the appointment of the Joint Provisional Liquidators in the United States, United Kingdom, Singapore, Hong Kong, Taiwan Thailand and Cambodia or elsewhere for the purposes of securing, realising and remitting assets to the control of the Joint Provisional Liquidators and for the purpose of obtaining access to and control of the records of the Company;

    d. to commence, continue, discontinue or defend, including by way of counterclaim or similar response, any action or other legal proceedings in the name and on behalf of the Company in so far as necessary to protect the assets and information of the Company including:

        (i) issuing proceedings against the directors, former directors, office holders and former office holders of the Company, if so advised.

        (ii) intervening (if so advised) in ongoing proceedings which involve the Company and/or its directors, former directors, office holders and/or its former office holders.

    e. to vote the shares of the Company in order to prevent the dissipation of its assets.

    f. to carry on the business of the Company so far as may be necessary for its beneficial provisional liquidation;

    g. to take all necessary steps to obtain from any person documents or copy documents which belong to the Company or have been created or maintained on its behalf or which the Company has a right to obtain or inspect.

    h. to appoint an agent including a solicitor, or accountant to do any business that the Joint Provisional Liquidators are unable to do themselves in discharge of their duties, or which can be more conveniently done by an agent;

i. to investigate the affairs of the Company so far as necessary to protect and, if necessary, retrieve the assets and records of the Company;

j. to retain, manage and operate the existing bank accounts of the Company including, without limitation, the power to change, remove and replace the signatories of these accounts and, where necessary, to open new bank accounts;

k. The Joint Provisional Liquidators may draw down payments on account of their remuneration, expenses and disbursements from time to time at a rate of 80% of their time costs and 100% of their expenses and disbursements, subject to these being subsequently approved by the court, and in the event that such sums are not approved, the unapproved sums be repaid to the Company within 7 days;

l. to apply to the Court for directions concerning any matter arising out of the exercise of the above powers; and

m. to do all other things as may be incidental to the exercise of the above functions and powers.

n. to consult and share information with the Applicant to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company.

o. to cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4. The Joint Provisional Liquidators are authorised and directed to implement the protocol for consultation and information sharing between them and the Applicant in the draft which is attached hereto ("the Protocol").

5. Any disclosure of information by the Joint Provisional Liquidators to the Applicant made in good faith and in accordance with the Protocol shall be deemed authorised by the Court and shall not constitute a breach of duty, confidence, data protection obligations or contractual restrictions binding upon the Company.

6. The Joint Provisional Liquidators shall not be required to disclose material subject to legal professional privilege or litigation privilege.

7. The Joint Provisional Liquidators and the Applicant have liberty to apply on short notice for directions, variation or termination of the Protocol.

8. The costs of the provisional liquidation, including the proper fees and disbursements of the Joint Provisional Liquidators and the Applicant's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

9. The powers set out in paragraph 3 above are to the exclusion of any power exercised or purported to be exercised by any existing director of the Company in so far as such power concerns the affairs of the Company and its assets within the jurisdiction of the Virgin Islands.

10. Save as provided in paragraph 3 above the Joint Provisional Liquidators may not exercise any of the powers set out at Schedule 2 to the Insolvency Act, 2003 without sanction of the court.

11. Pursuant to section 174 of the Insolvency Act, 2003 alternatively pursuant to the inherent jurisdiction of the Court, all actions, suits or proceedings of any nature whatsoever against the Company be and are hereby restrained until further order of the Court.

12. During the period of their appointment, any act required or authorized to be done by the Joint Provisional Liquidators may be done by any one or more of them.

13. This order was made at a hearing without notice to the respondent.  There will be a further hearing in respect of the order on or before 29ᵗ January 2026 with a time estimate of 30 minutes, for directions only (the Return Date).

14. The Joint Provisional Liquidators are to file and serve a report within one clear day before the Return Date summarising steps taken, any immediate concerns and recommended next steps.

15. The Company is at liberty to apply to vary or discharge the order upon giving 72 hours' notice to the Applicant and the Joint Provisional Liquidators.

16. The Joint Provisional Liquidators are at liberty to apply to vary or discharge the order if the allegations set out above are not substantiated or for some other reason upon giving 72 hours' notice to the Applicant and the Company.

17.    The Applicant is not required to give an undertaking in damages.

18.    The costs of this Application be costs in the provisional liquidation.

19.    The Joint Provisional Liquidators are not required to pay or provide security.

BY THE COURT



_____

REGISTRAR

**Protocol for Consultation and Information-Sharing Between the Liquidators and the Attorney General**

This Protocol is annexed to and forms part of the Order of the BVI Commercial Court (the **Court**) made on 9 January 2026 in Claim No. BVIHC (COM) 2026/0014 **("the Order")**. Capitalised terms bear the meanings given in the Order unless the context otherwise requires.

### 1. Purpose and status

This Protocol sets out a consultative framework between the Liquidators and the Attorney General to facilitate effective cooperation in the public interest, including in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of Noble Title Limited **("the Company")** For the avoidance of doubt, this Protocol is made pursuant to and with the approval of the Court, and disclosures made in good faith in accordance with this Protocol are deemed authorised by the Court.

### 2. Guiding principles

The Liquidators shall remain independent and act in the interests of the Company's creditors as a whole and the integrity of the winding up. The Attorney General's participation under this Protocol is consultative and does not fetter the Liquidators' statutory powers or duties, nor the Attorney General's independent functions. Both parties shall conduct themselves with candour, proportionality and respect for legal professional privilege, confidentiality, data protection and rule of law.

Nothing in this Protocol is intended to limit or restrict the ability of the Company's stakeholders to constitute a creditors' committee.

### 3. Definitions

- Attorney General means the Attorney General of the Virgin Islands and includes designated officers acting on the Attorney General's behalf for the purposes of this Protocol.
- The Company means Noble Title Limited which is the subject of the Order.
- Confidential Information means non-public information concerning the Company, the liquidation, related investigations, counterparties and assets, including personal data and material subject to confidentiality obligations owed by the Company or the Liquidators.

- Privileged Material means material subject to legal professional privilege or litigation privilege, or any analogous protection recognised by the Court.

### 4. Appointment and representation

The Attorney General shall constitute a consultative committee and may nominate up to three designated representatives for liaison with the Liquidators, with at least one senior contact identified (the **AGs Committee**). The Attorney General may change representatives on notice to the Liquidators.

The AGs Committee shall serve alongside any creditors' committee (if one is formed), and the Liquidators shall have equal regard to the views expressed by both the AGs Committee and the creditors' committee (if formed).

### 5. Consultation framework

5.1 Meetings. The Liquidators shall convene regular consultation meetings (in person or virtual) with the Attorney General not less than once per quarter, and ad hoc meetings as reasonably required. The Liquidators shall chair meetings and circulate a brief agenda in advance. These meetings may be consolidated with meetings of the creditors' committee (if one is formed).

5.2 Attendance. The Liquidators may invite professional advisers and members of the liquidation team. The Attorney General may invite relevant law enforcement or regulatory personnel, provided confidentiality undertakings are observed.

5.3 Minutes. The Liquidators shall keep concise minutes recording attendees, topics discussed and any agreed actions, subject to privilege and sensitivity redactions where appropriate.

### 6. Reporting

6.1 Periodic reports. The Liquidators shall provide to the Attorney General a confidential report not less than once per quarter covering, to the extent appropriate and not prejudicial to the estate:

- status of asset identification, recovery actions and investigations;
- key applications to the Court and outcomes;
- known factual matters relevant to potential criminal offences or regulatory breaches; and
- anticipated steps in the next period.

6.2 Urgent matters. The Liquidators shall promptly notify the Attorney General of matters reasonably judged to be urgent, including (but not limited to) risk of dissipation, destruction of records, or flight of suspects.

6.3 Templates. The Liquidators may adopt reporting templates and may omit details where disclosure would prejudice recoveries, negotiations, privilege, or legal processes.

### 7. Information requests by the Attorney General

7.1 Scope. The Attorney General may request access to documents, data and information reasonably required in relation to the Company or related persons or entities.

7.2 Process. Requests shall be made in writing, identifying the categories sought, the purpose, and any timing sensitivities. The Liquidators shall acknowledge within 3 business days and respond within a reasonable time, taking into account volume, complexity and competing duties.

7.3 Reasonableness and sequencing. The Liquidators may propose reasonable narrowing, staging or alternative formats, including summaries or redactions, to protect privilege, confidentiality, commercial sensitivity, or the integrity of civil recovery efforts.

7.4 Court supervision. If disagreement arises which cannot be resolved promptly, either party may seek directions from the Court on short notice.

### 8. Authorised disclosures and gateways

8.1 Court authorisation. Subject to sections 9–12, the Liquidators are authorised by the Court to disclose Confidential Information to the Attorney General for the limited purposes of regulatory or criminal investigation and prosecution, restraint, confiscation, forfeiture, mutual legal assistance, and related protective measures, and to receive Confidential Information from the Attorney General for liquidation purposes.

8.2 Statutory gateways. To the extent any statutory or regulatory gateway is required for disclosure or use of information, the parties shall cooperate to identify and use such gateways, including by seeking further directions or orders of the Court as needed.

8.3 No breach. Disclosures made in good faith under this Protocol shall not constitute a breach of duty, confidence, data protection laws, or contractual restrictions binding on the Company, and the Liquidators shall have the protection of the Court accordingly.

### 9. Privilege and confidentiality

9.1 Privilege preserved. The Liquidators shall not be required to disclose Privileged Material. Any inadvertent disclosure shall not constitute a waiver of privilege, and the Attorney General shall promptly return or delete such material and refrain from review or use upon notification.

9.2 Common interest. Where appropriate, and subject to legal advice, the parties may agree that certain exchanges are made on a common interest or joint interest basis to preserve privilege.

9.3 Use restrictions. The Attorney General shall maintain Confidential Information in confidence and use it solely for lawful law enforcement, regulatory and public interest purposes. Dissemination shall be limited to personnel with a need to know who are bound by equivalent confidentiality obligations.

9.4 Protective measures. Upon reasonable request, the Attorney General shall implement protective measures for sensitive materials, including secure handling protocols, restricted circulation, and, where appropriate, applications to seal or redact in criminal or regulatory proceedings to avoid prejudice to the estate.

### 10. Data protection and personal data

The parties shall process personal data lawfully, fairly and securely, with appropriate technical and organisational measures. Where cross-border transfers are contemplated, the parties shall cooperate to ensure a lawful transfer mechanism and, where necessary, seek the Court's directions.

### 11. Preservation and holds

The Liquidators shall implement and maintain appropriate document preservation measures in respect of the Company's records. The Attorney General shall notify the Liquidators of any preservation requirements arising from criminal investigations or proceedings, including anticipated requests or production deadlines, to allow timely compliance.

### 12. Coordination to avoid prejudice and duplication

The parties shall coordinate to minimise prejudice to the estate, civil recoveries and criminal processes, including by sequencing steps, agreeing standstills where appropriate, and consulting on timing of public filings or applications likely to have cross-impact. The Liquidators' primary duty to protect and realise assets shall be respected.

### 13. Public statements and confidentiality vis-à-vis third parties

Public statements about the Company, the liquidation or related investigations shall be coordinated to the extent practicable. The Liquidators may make statements required by law or the Court or necessary to protect assets or correct the market. The Attorney General may make statements required in the exercise of public functions, having regard to the Liquidators' requests to withhold sensitive details.

### 14. Costs and resourcing

The reasonable costs incurred by the Liquidators in complying with this Protocol, including costs of retrieval, review, redaction, secure transmission and liaison, are costs of the liquidation. Where requests impose material incremental burdens, the parties shall confer on pragmatic staging or cost-efficient approaches and, failing agreement, may seek the Court's directions.

### 15. Non-fetter and independence

Nothing in this Protocol fetters or derogates from the Liquidators' statutory powers and duties, or from the Attorney General's independent decision-making. The consultative role does not confer any power of direction over the Liquidators.

### 16. Conflicts and recusals

If a conflict of interest arises affecting any representative, that person shall recuse from relevant consultations. The parties shall notify each other of any material conflicts that could affect the integrity of cooperation, and may seek the Court's directions where necessary.

### 17. International cooperation

Where the Attorney General is engaged in mutual legal assistance, or cooperation with foreign authorities, the parties shall consult on scope and timing to ensure that disclosures and steps taken are consistent with this Protocol and do not unduly prejudice the liquidation or foreign proceedings. The Attorney

General shall take reasonable steps, where feasible, to secure protective handling by foreign authorities of any Confidential Information provided.

### 18. Records and audit trail

The Liquidators shall maintain a record of disclosures made to the Attorney General under this Protocol sufficient to evidence compliance, subject to privilege. The Attorney General shall, upon reasonable request, confirm receipt and any onward lawful use or disclosure to other agencies.

### 19. Duration, variation and termination

This Protocol takes effect upon the making of the Order and continues until the earlier of dissolution of the Company or further order of the Court. It may be varied by written agreement between the Liquidators and the Attorney General approved by the Court, or otherwise by order of the Court. The Court may suspend or terminate this Protocol upon application by either party.

### 20. Notices

Formal notices under this Protocol shall be in writing and sent to the designated contacts of each party as notified from time to time. Operational communications may be conducted by secure electronic means.

### 21. Dispute resolution and directions

Any dispute arising under or in connection with this Protocol shall, in the first instance, be addressed through consultation. Failing prompt resolution, either party may apply to the Court for directions on short notice.

### 22. Safe harbour

No act or omission of the Liquidators done in good faith and with reasonable care in reliance on this Protocol, or any directions of the Court, shall give rise to personal liability. The Liquidators shall be entitled to the usual indemnities out of the assets of the Company.

**Schedule 1 – Illustrative categories of information for disclosure**

A. Corporate records: constitutional documents, registers, organisational charts, officer and registered agent details.

B. Financial records: bank statements, ledgers, invoices, loan agreements, asset registers, related party transactions.

C. Communications: selected emails and messaging data from corporate systems relevant to suspected criminality.

D. Counterparty materials: KYC files, contracts, correspondence with intermediaries and fiduciaries.

E. Investigation work product: non-privileged factual memoranda, forensic accounting outputs, chain-of-custody logs.

F. Court materials: statements of affairs, affidavits, pleadings and orders (including sealed materials as authorised).

G. Asset tracing: non-privileged tracing schedules, dashboards, and summaries of restraints or recovery actions.

H. Preservation: litigation hold notices and repositories metadata (to the extent disclosure assists law enforcement).

Disclosure of any category remains subject to sections 9–12 of the Protocol.

**Schedule 2 – Template quarterly consultation report (confidential)**

1. Executive summary and key developments.

2. Asset position: discoveries, realisations, restraints and pending recovery actions.

3. Investigations: factual findings, cooperating witnesses, outstanding enquiries.

4. Legal proceedings: applications filed or contemplated; coordination with foreign courts.

5. Law enforcement interface: requests received/made; disclosures; pending deadlines.

6. Risks and mitigants: dissipation risks, data loss risks, reputational issues.

7. Next steps and proposed timetable; matters requiring Attorney General input.

8. Appendices: schedules of documents disclosed; privilege log (if applicable).

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0014

BETWEEN:

IN THE MATTER OF NOBLE TITLE LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF

THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

Applicant

-v-

NOBLE TITLE LIMITED

Respondent

---

**ORDER ON APPLICATION FOR
JOINT PROVISIONAL LIQUIDATORS**

---



O'Neal
Webster

Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 l Fax: (284) 393 5805
www.onealwebster.com

**Case Number :BVIHCOM2026/0015**



**FILED**
HIGH COURT
**TERRITORY OF**
**THE VIRGIN ISLANDS**

**Submitted Date:13/01/2026 13:45**

**Filed Date:13/01/2026 13:45**

**Fees Paid:0.00**



**Case Number :BVIHCOM2026/0015**



IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0015

**Submitted Date:12/01/2026 13:28**

**Filed Date:12/01/2026 13:28**

**Fees Paid:0.00**

BETWEEN:

IN THE MATTER OF ORIENTAL CHARM HOLDINGS INVESTMENT LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

Applicant

-v-

ORIENTAL CHARM HOLDINGS INVESTMENT LIMITED

Respondent

---

ORDER APPLICATION FOR JOINT PROVISIONAL LIQUIDATORS

---

BEFORE:     THE HONOURABLE JUSTICE ABBAS MITHANI

DATED:      THE 9th DAY OF JANUARY, 2026

ENTERED:    THE 12th DAY OF JANUARY, 2026

## PENAL NOTICE

The effect of this Order is that the directors, former directors, office holders and former office holders of the Respondent, ORIENTAL CHARM HOLDINGS INVESTMENT LIMITED ("the Company") are replaced by the joint provisional liquidators and that the directors, former directors, office holders and former office holders are prohibited from taking any action in relation to the Company's affairs without prior consent of the joint provisional liquidators.

If you, the directors, former directors, office holders and former office holders of the Company fail to comply with the terms of this order, proceedings may be commenced against you for contempt of court and you may be liable to be imprisoned, fined or have your assets seized.

**This order must be complied with by any person affected by it upon whom it is served. Any other person who knows of this order and does anything which helps or permits the directors, former directors, office holders and/or former office holders of the Company to breach its terms may also be held to be in contempt of Court and may be imprisoned, fined or have their assets seized.**

**UPON THE ORDINARY APPLICATION** filed by the Applicant on 5 January 2026 seeking the appointment of James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110, Paul Pretlove and David Standish, both eligible overseas insolvency practitioner of Interpath Ltd, 10 Fleet Place, London EC4M 7RB, England as joint provisional liquidators of the Company pursuant to section 170 of the Insolvency Act 2003, (**"the Application"**) coming on for hearing.

**AND UPON HEARING** Paul B. Dennis K.C. and with him Nadine Whyte Laing and Koya Ryan of O'Neal Webster for the Applicant.

**AND UPON** the Attorney General Dawn J. Smith being present.

**AND UPON** Mr. Paul Pretlove and Mr. James Drury, two of the proposed joint provisional liquidators being present.

**AND UPON READING** the Application, the originating application to appoint liquidators of the Company, the first affidavit of the Attorney General, the affidavit of Jeni-Lee Watson and the other documents on the Court file.

**AND UPON** the Application being heard ex parte.

**IT IS HEREBY ORDERED THAT:**

1. James Drury, Paul Pretlove and David Standish be appointed jointly and severally as provisional liquidators (the **"Joint Provisional Liquidators"**) of the Company until further order.

2. The Joint Provisional Liquidators have the rights and powers of a liquidator to the extent necessary to maintain the value of the assets owned by the Company and to carry out the functions for which they are appointed.

3.  In addition to the powers outlined in 2 above, the Joint Provisional Liquidators shall have the following specific powers which may be exercised without further sanction or intervention of this Honourable Court:

a.  to gain entry to the Company's premises and take possession of and preserve the books and records of the Company;

b.  to identify any assets which may remain in the possession or control of the Company, and to take such steps as may be necessary to protect any such assets from removal or dissipation;

c.  to seek the recognition (or its equivalent) of the appointment of the Joint Provisional Liquidators in the United States, United Kingdom, Singapore, Hong Kong, Taiwan Thailand and Cambodia or elsewhere for the purposes of securing, realising and remitting assets to the control of the Joint Provisional Liquidators and for the purpose of obtaining access to and control of the records of the Company;

d.  to commence, continue, discontinue or defend, including by way of counterclaim or similar response, any action or other legal proceedings in the name and on behalf of the Company in so far as necessary to protect the assets and information of the Company including:

(i)  issuing proceedings against the directors, former directors, office holders and former office holders of the Company, if so advised.

(ii)  intervening (if so advised) in ongoing proceedings which involve the Company and/or its directors, former directors, office holders and/or its former office holders.

e.  to vote the shares of the Company in order to prevent the dissipation of its assets.

f.  to carry on the business of the Company so far as may be necessary for its beneficial provisional liquidation;

g.  to take all necessary steps to obtain from any person documents or copy documents which belong to the Company or have been created or maintained on its behalf or which the Company has a right to obtain or inspect.

h.  to appoint an agent including a solicitor, or accountant to do any business that the Joint Provisional Liquidators are unable to do themselves in discharge of their duties, or which can be more conveniently done by an agent;

i.  to investigate the affairs of the Company so far as necessary to protect and, if necessary, retrieve the assets and records of the Company;

j.  to retain, manage and operate the existing bank accounts of the Company including, without limitation, the power to change, remove and replace the signatories of these accounts and, where necessary, to open new bank accounts;

k.  The Joint Provisional Liquidators may draw down payments on account of their remuneration, expenses and disbursements from time to time at a rate of 80% of their time costs and 100% of their expenses and disbursements, subject to these being subsequently approved by the court, and in the event that such sums are not approved, the unapproved sums be repaid to the Company within 7 days;

l.  to apply to the Court for directions concerning any matter arising out of the exercise of the above powers; and

m.  to do all other things as may be incidental to the exercise of the above functions and powers.

n.  to consult and share information with the Applicant to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company.

o.  to cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4.  The Joint Provisional Liquidators are authorised and directed to implement the protocol for consultation and information sharing between them and the Applicant in the draft which is attached hereto ("the Protocol").

5.  Any disclosure of information by the Joint Provisional Liquidators to the Applicant made in good faith and in accordance with the Protocol shall be deemed authorised by the Court and shall not constitute a breach of duty, confidence, data protection obligations or contractual restrictions binding upon the Company.

6.  The Joint Provisional Liquidators shall not be required to disclose material subject to legal professional privilege or litigation privilege.

7.  The Joint Provisional Liquidators and the Applicant have liberty to apply on short notice for directions, variation or termination of the Protocol.

8.  The costs of the provisional liquidation, including the proper fees and disbursements of the Joint Provisional Liquidators and the Applicant's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

9.  The powers set out in paragraph 3 above are to the exclusion of any power exercised or purported to be exercised by any existing director of the Company in so far as such power concerns the affairs of the Company and its assets within the jurisdiction of the Virgin Islands.

10. Save as provided in paragraph 3 above the Joint Provisional Liquidators may not exercise any of the powers set out at Schedule 2 to the Insolvency Act, 2003 without sanction of the court.

11. Pursuant to section 174 of the Insolvency Act, 2003 alternatively pursuant to the inherent jurisdiction of the Court, all actions, suits or proceedings of any nature whatsoever against the Company be and are hereby restrained until further order of the Court.

12. During the period of their appointment, any act required or authorized to be done by the Joint Provisional Liquidators may be done by any one or more of them.

13. This order was made at a hearing without notice to the respondent.  There will be a further hearing in respect of the order on or before *29th January 2026* with a time estimate of 30 minutes, for directions only (**the Return Date**).

14. The Joint Provisional Liquidators are to file and serve a report within one clear day before the Return Date summarising steps taken, any immediate concerns and recommended next steps.

15. The Company is at liberty to apply to vary or discharge the order upon giving 72 hours' notice to the Applicant and the Joint Provisional Liquidators.

16. The Joint Provisional Liquidators are at liberty to apply to vary or discharge the order if the allegations set out above are not substantiated or for some other reason upon giving 72 hours' notice to the Applicant and the Company.

17.   The Applicant is not required to give an undertaking in damages.

18.   The costs of this Application be costs in the provisional liquidation.

19.   The Joint Provisional Liquidators are not required to pay or provide security.

BY THE COURT



REGISTRAR

**Protocol for Consultation and Information-Sharing Between the Liquidators and the Attorney General**

This Protocol is annexed to and forms part of the Order of the BVI Commercial Court (the **Court**) made on 9 January 2026 in Claim No. BVIHC (COM) 2026/0015 **("the Order")**. Capitalised terms bear the meanings given in the Order unless the context otherwise requires.

### 1. Purpose and status

This Protocol sets out a consultative framework between the Liquidators and the Attorney General to facilitate effective cooperation in the public interest, including in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of Oriental Charm Holdings Investment Limited ("the Company") For the avoidance of doubt, this Protocol is made pursuant to and with the approval of the Court, and disclosures made in good faith in accordance with this Protocol are deemed authorised by the Court.

### 2. Guiding principles

The Liquidators shall remain independent and act in the interests of the Company's creditors as a whole and the integrity of the winding up. The Attorney General's participation under this Protocol is consultative and does not fetter the Liquidators' statutory powers or duties, nor the Attorney General's independent functions. Both parties shall conduct themselves with candour, proportionality and respect for legal professional privilege, confidentiality, data protection and rule of law.

Nothing in this Protocol is intended to limit or restrict the ability of the Company's stakeholders to constitute a creditors' committee.

### 3. Definitions

- Attorney General means the Attorney General of the Virgin Islands and includes designated officers acting on the Attorney General's behalf for the purposes of this Protocol.
- The Company means Oriental Charm Holdings Investment Limited which is the subject of the Order.
- Confidential Information means non-public information concerning the Company, the liquidation, related investigations, counterparties and assets, including personal data and material subject to confidentiality obligations owed by the Company or the Liquidators.

- Privileged Material means material subject to legal professional privilege or litigation privilege, or any analogous protection recognised by the Court.

### 4. Appointment and representation

The Attorney General shall constitute a consultative committee and may nominate up to three designated representatives for liaison with the Liquidators, with at least one senior contact identified (the **AGs Committee**). The Attorney General may change representatives on notice to the Liquidators.

The AGs Committee shall serve alongside any creditors' committee (if one is formed), and the Liquidators shall have equal regard to the views expressed by both the AGs Committee and the creditors' committee (if formed).

### 5. Consultation framework

5.1 Meetings. The Liquidators shall convene regular consultation meetings (in person or virtual) with the Attorney General not less than once per quarter, and ad hoc meetings as reasonably required. The Liquidators shall chair meetings and circulate a brief agenda in advance. These meetings may be consolidated with meetings of the creditors' committee (if one is formed).

5.2 Attendance. The Liquidators may invite professional advisers and members of the liquidation team. The Attorney General may invite relevant law enforcement or regulatory personnel, provided confidentiality undertakings are observed.

5.3 Minutes. The Liquidators shall keep concise minutes recording attendees, topics discussed and any agreed actions, subject to privilege and sensitivity redactions where appropriate.

### 6. Reporting

6.1 Periodic reports. The Liquidators shall provide to the Attorney General a confidential report not less than once per quarter covering, to the extent appropriate and not prejudicial to the estate:

- status of asset identification, recovery actions and investigations;
- key applications to the Court and outcomes;
- known factual matters relevant to potential criminal offences or regulatory breaches; and
- anticipated steps in the next period.

6.2 Urgent matters. The Liquidators shall promptly notify the Attorney General of matters reasonably judged to be urgent, including (but not limited to) risk of dissipation, destruction of records, or flight of suspects.

6.3 Templates. The Liquidators may adopt reporting templates and may omit details where disclosure would prejudice recoveries, negotiations, privilege, or legal processes.

### 7. Information requests by the Attorney General

7.1 Scope. The Attorney General may request access to documents, data and information reasonably required in relation to the Company or related persons or entities.

7.2 Process. Requests shall be made in writing, identifying the categories sought, the purpose, and any timing sensitivities. The Liquidators shall acknowledge within 3 business days and respond within a reasonable time, taking into account volume, complexity and competing duties.

7.3 Reasonableness and sequencing. The Liquidators may propose reasonable narrowing, staging or alternative formats, including summaries or redactions, to protect privilege, confidentiality, commercial sensitivity, or the integrity of civil recovery efforts.

7.4 Court supervision. If disagreement arises which cannot be resolved promptly, either party may seek directions from the Court on short notice.

### 8. Authorised disclosures and gateways

8.1 Court authorisation. Subject to sections 9–12, the Liquidators are authorised by the Court to disclose Confidential Information to the Attorney General for the limited purposes of regulatory or criminal investigation and prosecution, restraint, confiscation, forfeiture, mutual legal assistance, and related protective measures, and to receive Confidential Information from the Attorney General for liquidation purposes.

8.2 Statutory gateways. To the extent any statutory or regulatory gateway is required for disclosure or use of information, the parties shall cooperate to identify and use such gateways, including by seeking further directions or orders of the Court as needed.

8.3 No breach. Disclosures made in good faith under this Protocol shall not constitute a breach of duty, confidence, data protection laws, or contractual restrictions binding on the Company, and the Liquidators shall have the protection of the Court accordingly.

### 9. Privilege and confidentiality

9.1 Privilege preserved. The Liquidators shall not be required to disclose Privileged Material. Any inadvertent disclosure shall not constitute a waiver of privilege, and the Attorney General shall promptly return or delete such material and refrain from review or use upon notification.

9.2 Common interest. Where appropriate, and subject to legal advice, the parties may agree that certain exchanges are made on a common interest or joint interest basis to preserve privilege.

9.3 Use restrictions. The Attorney General shall maintain Confidential Information in confidence and use it solely for lawful law enforcement, regulatory and public interest purposes. Dissemination shall be limited to personnel with a need to know who are bound by equivalent confidentiality obligations.

9.4 Protective measures. Upon reasonable request, the Attorney General shall implement protective measures for sensitive materials, including secure handling protocols, restricted circulation, and, where appropriate, applications to seal or redact in criminal or regulatory proceedings to avoid prejudice to the estate.

### 10. Data protection and personal data

The parties shall process personal data lawfully, fairly and securely, with appropriate technical and organisational measures. Where cross-border transfers are contemplated, the parties shall cooperate to ensure a lawful transfer mechanism and, where necessary, seek the Court's directions.

### 11. Preservation and holds

The Liquidators shall implement and maintain appropriate document preservation measures in respect of the Company's records. The Attorney General shall notify the Liquidators of any preservation requirements arising from criminal investigations or proceedings, including anticipated requests or production deadlines, to allow timely compliance.

### 12. Coordination to avoid prejudice and duplication

The parties shall coordinate to minimise prejudice to the estate, civil recoveries and criminal processes, including by sequencing steps, agreeing standstills where appropriate, and consulting on timing of public filings or applications likely to have cross-impact. The Liquidators' primary duty to protect and realise assets shall be respected.

### 13. Public statements and confidentiality vis-à-vis third parties

Public statements about the Company, the liquidation or related investigations shall be coordinated to the extent practicable. The Liquidators may make statements required by law or the Court or necessary to protect assets or correct the market. The Attorney General may make statements required in the exercise of public functions, having regard to the Liquidators' requests to withhold sensitive details.

### 14. Costs and resourcing

The reasonable costs incurred by the Liquidators in complying with this Protocol, including costs of retrieval, review, redaction, secure transmission and liaison, are costs of the liquidation. Where requests impose material incremental burdens, the parties shall confer on pragmatic staging or cost-efficient approaches and, failing agreement, may seek the Court's directions.

### 15. Non-fetter and independence

Nothing in this Protocol fetters or derogates from the Liquidators' statutory powers and duties, or from the Attorney General's independent decision-making. The consultative role does not confer any power of direction over the Liquidators.

### 16. Conflicts and recusals

If a conflict of interest arises affecting any representative, that person shall recuse from relevant consultations. The parties shall notify each other of any material conflicts that could affect the integrity of cooperation, and may seek the Court's directions where necessary.

### 17. International cooperation

Where the Attorney General is engaged in mutual legal assistance, or cooperation with foreign authorities, the parties shall consult on scope and timing to ensure that disclosures and steps taken are consistent with this Protocol and do not unduly prejudice the liquidation or foreign proceedings. The Attorney

General shall take reasonable steps, where feasible, to secure protective handling by foreign authorities of any Confidential Information provided.

### 18. Records and audit trail

The Liquidators shall maintain a record of disclosures made to the Attorney General under this Protocol sufficient to evidence compliance, subject to privilege. The Attorney General shall, upon reasonable request, confirm receipt and any onward lawful use or disclosure to other agencies.

### 19. Duration, variation and termination

This Protocol takes effect upon the making of the Order and continues until the earlier of dissolution of the Company or further order of the Court. It may be varied by written agreement between the Liquidators and the Attorney General approved by the Court, or otherwise by order of the Court. The Court may suspend or terminate this Protocol upon application by either party.

### 20. Notices

Formal notices under this Protocol shall be in writing and sent to the designated contacts of each party as notified from time to time. Operational communications may be conducted by secure electronic means.

### 21. Dispute resolution and directions

Any dispute arising under or in connection with this Protocol shall, in the first instance, be addressed through consultation. Failing prompt resolution, either party may apply to the Court for directions on short notice.

### 22. Safe harbour

No act or omission of the Liquidators done in good faith and with reasonable care in reliance on this Protocol, or any directions of the Court, shall give rise to personal liability. The Liquidators shall be entitled to the usual indemnities out of the assets of the Company.

**Schedule 1 – Illustrative categories of information for disclosure**

- A. Corporate records: constitutional documents, registers, organisational charts, officer and registered agent details.

- B. Financial records: bank statements, ledgers, invoices, loan agreements, asset registers, related party transactions.

- C. Communications: selected emails and messaging data from corporate systems relevant to suspected criminality.

- D. Counterparty materials: KYC files, contracts, correspondence with intermediaries and fiduciaries.

- E. Investigation work product: non-privileged factual memoranda, forensic accounting outputs, chain-of-custody logs.

- F. Court materials: statements of affairs, affidavits, pleadings and orders (including sealed materials as authorised).

- G. Asset tracing: non-privileged tracing schedules, dashboards, and summaries of restraints or recovery actions.

- H. Preservation: litigation hold notices and repositories metadata (to the extent disclosure assists law enforcement).

Disclosure of any category remains subject to sections 9–12 of the Protocol.

**Schedule 2 – Template quarterly consultation report (confidential)**

1. Executive summary and key developments.

2. Asset position: discoveries, realisations, restraints and pending recovery actions.

3. Investigations: factual findings, cooperating witnesses, outstanding enquiries.

4. Legal proceedings: applications filed or contemplated; coordination with foreign courts.

5. Law enforcement interface: requests received/made; disclosures; pending deadlines.

6. Risks and mitigants: dissipation risks, data loss risks, reputational issues.

7. Next steps and proposed timetable; matters requiring Attorney General input.

8. Appendices: schedules of documents disclosed; privilege log (if applicable).

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0015

BETWEEN:

IN THE MATTER OF ORIENTAL CHARM HOLDINGS

INVESTMENT LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF

THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

Applicant

-v-

ORIENTAL CHARM HOLDINGS INVESTMENT LIMITED

Respondent

---

**ORDER ON APPLICATION FOR
JOINT PROVISIONAL LIQUIDATORS**

---



**O'Neal
Webster**

Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 I Fax: (284) 393 5805
www.onealwebster.com

**Case Number :BVIHCOM2026/0016**



**Submitted Date:13/01/2026 10:11**

**Filed Date:13/01/2026 10:12**

**Fees Paid:0.00**



**Case Number :BVIHCOM2026/0016**



IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0016

**Submitted Date:12/01/2026 13:30**

**Filed Date:12/01/2026 13:30**

**Fees Paid:0.00**

BETWEEN:

IN THE MATTER OF PACIFIC CHARM HOLDINGS INVESTMENT LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

Applicant

-v-

PACIFIC CHARM HOLDINGS INVESTMENT LIMITED

Respondent

---

ORDER APPLICATION FOR JOINT PROVISIONAL LIQUIDATORS

---

BEFORE:      THE HONOURABLE JUSTICE ABBAS MITHANI

DATED:        THE 9th DAY OF JANUARY, 2026

ENTERED:    THE 12 DAY OF JANUARY, 2026

<u>PENAL NOTICE</u>

The effect of this Order is that the directors, former directors, office holders and former office holders of the Respondent, PACIFIC CHARM HOLDINGS INVESTMENT LIMITED ("the Company") are replaced by the joint provisional liquidators and that the directors, former directors, office holders and former office holders are prohibited from taking any action in relation to the Company's affairs without prior consent of the joint provisional liquidators.

If you, the directors, former directors, office holders and former office holders of the Company fail to comply with the terms of this order, proceedings may be commenced against you for contempt of court and you may be liable to be imprisoned, fined or have your assets seized.

**This order must be complied with by any person affected by it upon whom it is served. Any other person who knows of this order and does anything which helps or permits the directors, former directors, office holders and/or former office holders of the Company to breach its terms may also be held to be in contempt of Court and may be imprisoned, fined or have their assets seized.**

**UPON THE ORDINARY APPLICATION** filed by the Applicant on 5 January 2026 seeking the appointment of James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110, Paul Pretlove and David Standish, both eligible overseas insolvency practitioner of Interpath Ltd, 10 Fleet Place, London EC4M 7RB, England as joint provisional liquidators of the Company pursuant to section 170 of the Insolvency Act 2003, (**"the Application"**) coming on for hearing.

**AND UPON HEARING** Paul B. Dennis K.C. and with him Nadine Whyte Laing and Koya Ryan of O'Neal Webster for the Applicant.

**AND UPON** the Attorney General Dawn J. Smith being present.

**AND UPON** Mr. Paul Pretlove and Mr. James Drury, two of the proposed joint provisional liquidators being present.

**AND UPON READING** the Application, the originating application to appoint liquidators of the Company, the first affidavit of the Attorney General, the affidavit of Jeni-Lee Watson and the other documents on the Court file.

**AND UPON** the Application being heard ex parte.

**IT IS HEREBY ORDERED THAT:**

1. James Drury, Paul Pretlove and David Standish be appointed jointly and severally as provisional liquidators (the **"Joint Provisional Liquidators"**) of the Company until further order.

2. The Joint Provisional Liquidators have the rights and powers of a liquidator to the extent necessary to maintain the value of the assets owned by the Company and to carry out the functions for which they are appointed.

3.   In addition to the powers outlined in 2 above, the Joint Provisional Liquidators shall have the following specific powers which may be exercised without further sanction or intervention of this Honourable Court:

   a.   to gain entry to the Company's premises and take possession of and preserve the books and records of the Company;

   b.   to identify any assets which may remain in the possession or control of the Company, and to take such steps as may be necessary to protect any such assets from removal or dissipation;

   c.   to seek the recognition (or its equivalent) of the appointment of the Joint Provisional Liquidators in the United States, United Kingdom, Singapore, Hong Kong, Taiwan Thailand and Cambodia or elsewhere for the purposes of securing, realising and remitting assets to the control of the Joint Provisional Liquidators and for the purpose of obtaining access to and control of the records of the Company;

   d.   to commence, continue, discontinue or defend, including by way of counterclaim or similar response, any action or other legal proceedings in the name and on behalf of the Company in so far as necessary to protect the assets and information of the Company including:

      (i)   issuing proceedings against the directors, former directors, office holders and former office holders of the Company, if so advised.

      (ii)   intervening (if so advised) in ongoing proceedings which involve the Company and/or its directors, former directors, office holders and/or its former office holders.

   e.   to vote the shares of the Company in order to prevent the dissipation of its assets.

   f.   to carry on the business of the Company so far as may be necessary for its beneficial provisional liquidation;

   g.   to take all necessary steps to obtain from any person documents or copy documents which belong to the Company or have been created or maintained on its behalf or which the Company has a right to obtain or inspect.

   h.   to appoint an agent including a solicitor, or accountant to do any business that the Joint Provisional Liquidators are unable to do themselves in discharge of their duties, or which can be more conveniently done by an agent;

i.    to investigate the affairs of the Company so far as necessary to protect and, if necessary, retrieve the assets and records of the Company;

j.    to retain, manage and operate the existing bank accounts of the Company including, without limitation, the power to change, remove and replace the signatories of these accounts and, where necessary, to open new bank accounts;

k.    The Joint Provisional Liquidators may draw down payments on account of their remuneration, expenses and disbursements from time to time at a rate of 80% of their time costs and 100% of their expenses and disbursements, subject to these being subsequently approved by the court, and in the event that such sums are not approved, the unapproved sums be repaid to the Company within 7 days;

l.    to apply to the Court for directions concerning any matter arising out of the exercise of the above powers; and

m.    to do all other things as may be incidental to the exercise of the above functions and powers.

n.    to consult and share information with the Applicant to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company.

o.    to cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4.    The Joint Provisional Liquidators are authorised and directed to implement the protocol for consultation and information sharing between them and the Applicant in the draft which is attached hereto (**"the Protocol"**).

5.    Any disclosure of information by the Joint Provisional Liquidators to the Applicant made in good faith and in accordance with the Protocol shall be deemed authorised by the Court and shall not constitute a breach of duty, confidence, data protection obligations or contractual restrictions binding upon the Company.

6.    The Joint Provisional Liquidators shall not be required to disclose material subject to legal professional privilege or litigation privilege.

7. The Joint Provisional Liquidators and the Applicant have liberty to apply on short notice for directions, variation or termination of the Protocol.

8. The costs of the provisional liquidation, including the proper fees and disbursements of the Joint Provisional Liquidators and the Applicant's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

9. The powers set out in paragraph 3 above are to the exclusion of any power exercised or purported to be exercised by any existing director of the Company in so far as such power concerns the affairs of the Company and its assets within the jurisdiction of the Virgin Islands.

10. Save as provided in paragraph 3 above the Joint Provisional Liquidators may not exercise any of the powers set out at Schedule 2 to the Insolvency Act, 2003 without sanction of the court.

11. Pursuant to section 174 of the Insolvency Act, 2003 alternatively pursuant to the inherent jurisdiction of the Court, all actions, suits or proceedings of any nature whatsoever against the Company be and are hereby restrained until further order of the Court.

12. During the period of their appointment, any act required or authorized to be done by the Joint Provisional Liquidators may be done by any one or more of them.

13. This order was made at a hearing without notice to the respondent. There will be a further hearing in respect of the order on or before *29th January 286* with a time estimate of 30 minutes, for directions only (**the Return Date**).

14. The Joint Provisional Liquidators are to file and serve a report within one clear day before the Return Date summarising steps taken, any immediate concerns and recommended next steps.

15. The Company is at liberty to apply to vary or discharge the order upon giving 72 hours' notice to the Applicant and the Joint Provisional Liquidators.

16. The Joint Provisional Liquidators are at liberty to apply to vary or discharge the order if the allegations set out above are not substantiated or for some other reason upon giving 72 hours' notice to the Applicant and the Company.

17. The Applicant is not required to give an undertaking in damages.

18. The costs of this Application be costs in the provisional liquidation.

19. The Joint Provisional Liquidators are not required to pay or provide security.

**BY THE COURT**



REGISTRAR

**Protocol for Consultation and Information-Sharing Between the Liquidators and the Attorney General**

This Protocol is annexed to and forms part of the Order of the BVI Commercial Court (the **Court**) made on 9 January 2026 in Claim No. BVIHC (COM) 2026/0016 (**"the Order"**). Capitalised terms bear the meanings given in the Order unless the context otherwise requires.

### 1. Purpose and status

This Protocol sets out a consultative framework between the Liquidators and the Attorney General to facilitate effective cooperation in the public interest, including in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of Pacific Charm Holdings Investment Limited (**"the Company"**) For the avoidance of doubt, this Protocol is made pursuant to and with the approval of the Court, and disclosures made in good faith in accordance with this Protocol are deemed authorised by the Court.

### 2. Guiding principles

The Liquidators shall remain independent and act in the interests of the Company's creditors as a whole and the integrity of the winding up. The Attorney General's participation under this Protocol is consultative and does not fetter the Liquidators' statutory powers or duties, nor the Attorney General's independent functions. Both parties shall conduct themselves with candour, proportionality and respect for legal professional privilege, confidentiality, data protection and rule of law.

Nothing in this Protocol is intended to limit or restrict the ability of the Company's stakeholders to constitute a creditors' committee.

### 3. Definitions

- Attorney General means the Attorney General of the Virgin Islands and includes designated officers acting on the Attorney General's behalf for the purposes of this Protocol.
- The Company means Pacific Charm Holdings Investment Limited which is the subject of the Order.
- Confidential Information means non-public information concerning the Company, the liquidation, related investigations, counterparties and assets, including personal data and material subject to confidentiality obligations owed by the Company or the Liquidators.

- Privileged Material means material subject to legal professional privilege or litigation privilege, or any analogous protection recognised by the Court.

### 4. Appointment and representation

The Attorney General shall constitute a consultative committee and may nominate up to three designated representatives for liaison with the Liquidators, with at least one senior contact identified (the **AGs Committee**). The Attorney General may change representatives on notice to the Liquidators.

The AGs Committee shall serve alongside any creditors' committee (if one is formed), and the Liquidators shall have equal regard to the views expressed by both the AGs Committee and the creditors' committee (if formed).

### 5. Consultation framework

5.1 Meetings. The Liquidators shall convene regular consultation meetings (in person or virtual) with the Attorney General not less than once per quarter, and ad hoc meetings as reasonably required. The Liquidators shall chair meetings and circulate a brief agenda in advance. These meetings may be consolidated with meetings of the creditors' committee (if one is formed).

5.2 Attendance. The Liquidators may invite professional advisers and members of the liquidation team. The Attorney General may invite relevant law enforcement or regulatory personnel, provided confidentiality undertakings are observed.

5.3 Minutes. The Liquidators shall keep concise minutes recording attendees, topics discussed and any agreed actions, subject to privilege and sensitivity redactions where appropriate.

### 6. Reporting

6.1 Periodic reports. The Liquidators shall provide to the Attorney General a confidential report not less than once per quarter covering, to the extent appropriate and not prejudicial to the estate:

- status of asset identification, recovery actions and investigations;
- key applications to the Court and outcomes;
- known factual matters relevant to potential criminal offences or regulatory breaches; and
- anticipated steps in the next period.

6.2 Urgent matters. The Liquidators shall promptly notify the Attorney General of matters reasonably judged to be urgent, including (but not limited to) risk of dissipation, destruction of records, or flight of suspects.

6.3 Templates. The Liquidators may adopt reporting templates and may omit details where disclosure would prejudice recoveries, negotiations, privilege, or legal processes.

### 7. Information requests by the Attorney General

7.1 Scope. The Attorney General may request access to documents, data and information reasonably required in relation to the Company or related persons or entities.

7.2 Process. Requests shall be made in writing, identifying the categories sought, the purpose, and any timing sensitivities. The Liquidators shall acknowledge within 3 business days and respond within a reasonable time, taking into account volume, complexity and competing duties.

7.3 Reasonableness and sequencing. The Liquidators may propose reasonable narrowing, staging or alternative formats, including summaries or redactions, to protect privilege, confidentiality, commercial sensitivity, or the integrity of civil recovery efforts.

7.4 Court supervision. If disagreement arises which cannot be resolved promptly, either party may seek directions from the Court on short notice.

### 8. Authorised disclosures and gateways

8.1 Court authorisation. Subject to sections 9–12, the Liquidators are authorised by the Court to disclose Confidential Information to the Attorney General for the limited purposes of regulatory or criminal investigation and prosecution, restraint, confiscation, forfeiture, mutual legal assistance, and related protective measures, and to receive Confidential Information from the Attorney General for liquidation purposes.

8.2 Statutory gateways. To the extent any statutory or regulatory gateway is required for disclosure or use of information, the parties shall cooperate to identify and use such gateways, including by seeking further directions or orders of the Court as needed.

8.3 No breach. Disclosures made in good faith under this Protocol shall not constitute a breach of duty, confidence, data protection laws, or contractual restrictions binding on the Company, and the Liquidators shall have the protection of the Court accordingly.

### 9. Privilege and confidentiality

9.1 Privilege preserved. The Liquidators shall not be required to disclose Privileged Material. Any inadvertent disclosure shall not constitute a waiver of privilege, and the Attorney General shall promptly return or delete such material and refrain from review or use upon notification.

9.2 Common interest. Where appropriate, and subject to legal advice, the parties may agree that certain exchanges are made on a common interest or joint interest basis to preserve privilege.

9.3 Use restrictions. The Attorney General shall maintain Confidential Information in confidence and use it solely for lawful law enforcement, regulatory and public interest purposes. Dissemination shall be limited to personnel with a need to know who are bound by equivalent confidentiality obligations.

9.4 Protective measures. Upon reasonable request, the Attorney General shall implement protective measures for sensitive materials, including secure handling protocols, restricted circulation, and, where appropriate, applications to seal or redact in criminal or regulatory proceedings to avoid prejudice to the estate.

### 10. Data protection and personal data

The parties shall process personal data lawfully, fairly and securely, with appropriate technical and organisational measures. Where cross-border transfers are contemplated, the parties shall cooperate to ensure a lawful transfer mechanism and, where necessary, seek the Court's directions.

### 11. Preservation and holds

The Liquidators shall implement and maintain appropriate document preservation measures in respect of the Company's records. The Attorney General shall notify the Liquidators of any preservation requirements arising from criminal investigations or proceedings, including anticipated requests or production deadlines, to allow timely compliance.

### 12. Coordination to avoid prejudice and duplication

The parties shall coordinate to minimise prejudice to the estate, civil recoveries and criminal processes, including by sequencing steps, agreeing standstills where appropriate, and consulting on timing of public filings or applications likely to have cross-impact. The Liquidators' primary duty to protect and realise assets shall be respected.

### 13. Public statements and confidentiality vis-à-vis third parties

Public statements about the Company, the liquidation or related investigations shall be coordinated to the extent practicable. The Liquidators may make statements required by law or the Court or necessary to protect assets or correct the market. The Attorney General may make statements required in the exercise of public functions, having regard to the Liquidators' requests to withhold sensitive details.

### 14. Costs and resourcing

The reasonable costs incurred by the Liquidators in complying with this Protocol, including costs of retrieval, review, redaction, secure transmission and liaison, are costs of the liquidation. Where requests impose material incremental burdens, the parties shall confer on pragmatic staging or cost-efficient approaches and, failing agreement, may seek the Court's directions.

### 15. Non-fetter and independence

Nothing in this Protocol fetters or derogates from the Liquidators' statutory powers and duties, or from the Attorney General's independent decision-making. The consultative role does not confer any power of direction over the Liquidators.

### 16. Conflicts and recusals

If a conflict of interest arises affecting any representative, that person shall recuse from relevant consultations. The parties shall notify each other of any material conflicts that could affect the integrity of cooperation, and may seek the Court's directions where necessary.

### 17. International cooperation

Where the Attorney General is engaged in mutual legal assistance, or cooperation with foreign authorities, the parties shall consult on scope and timing to ensure that disclosures and steps taken are consistent with this Protocol and do not unduly prejudice the liquidation or foreign proceedings. The Attorney

General shall take reasonable steps, where feasible, to secure protective handling by foreign authorities of any Confidential Information provided.

### 18. Records and audit trail

The Liquidators shall maintain a record of disclosures made to the Attorney General under this Protocol sufficient to evidence compliance, subject to privilege. The Attorney General shall, upon reasonable request, confirm receipt and any onward lawful use or disclosure to other agencies.

### 19. Duration, variation and termination

This Protocol takes effect upon the making of the Order and continues until the earlier of dissolution of the Company or further order of the Court. It may be varied by written agreement between the Liquidators and the Attorney General approved by the Court, or otherwise by order of the Court. The Court may suspend or terminate this Protocol upon application by either party.

### 20. Notices

Formal notices under this Protocol shall be in writing and sent to the designated contacts of each party as notified from time to time. Operational communications may be conducted by secure electronic means.

### 21. Dispute resolution and directions

Any dispute arising under or in connection with this Protocol shall, in the first instance, be addressed through consultation. Failing prompt resolution, either party may apply to the Court for directions on short notice.

### 22. Safe harbour

No act or omission of the Liquidators done in good faith and with reasonable care in reliance on this Protocol, or any directions of the Court, shall give rise to personal liability. The Liquidators shall be entitled to the usual indemnities out of the assets of the Company.

**Schedule 1 – Illustrative categories of information for disclosure**

A. Corporate records: constitutional documents, registers, organisational charts, officer and registered agent details.

B. Financial records: bank statements, ledgers, invoices, loan agreements, asset registers, related party transactions.

C. Communications: selected emails and messaging data from corporate systems relevant to suspected criminality.

D. Counterparty materials: KYC files, contracts, correspondence with intermediaries and fiduciaries.

E. Investigation work product: non-privileged factual memoranda, forensic accounting outputs, chain-of-custody logs.

F. Court materials: statements of affairs, affidavits, pleadings and orders (including sealed materials as authorised).

G. Asset tracing: non-privileged tracing schedules, dashboards, and summaries of restraints or recovery actions.

H. Preservation: litigation hold notices and repositories metadata (to the extent disclosure assists law enforcement).

Disclosure of any category remains subject to sections 9–12 of the Protocol.

**Schedule 2 – Template quarterly consultation report (confidential)**

1. Executive summary and key developments.

2. Asset position: discoveries, realisations, restraints and pending recovery actions.

3. Investigations: factual findings, cooperating witnesses, outstanding enquiries.

4. Legal proceedings: applications filed or contemplated; coordination with foreign courts.

5. Law enforcement interface: requests received/made; disclosures; pending deadlines.

6. Risks and mitigants: dissipation risks, data loss risks, reputational issues.

7. Next steps and proposed timetable; matters requiring Attorney General input.

8. Appendices: schedules of documents disclosed; privilege log (if applicable).

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0016

BETWEEN:

IN THE MATTER OF PACIFIC CHARM HOLDINGS

INVESTMENT LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF

THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

Applicant

-v-

PACIFIC CHARM HOLDINGS INVESTMENT LIMITED

Respondent

---

**ORDER ON APPLICATION FOR
JOINT PROVISIONAL LIQUIDATORS**

---



O'Neal
Webster

Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 I Fax: (284) 393 5805
www.onealwebster.com

Case Number :BVIHCOM2026/0018



FILED
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS

Submitted Date:13/01/2026 09:49

Filed Date:13/01/2026 09:50

Fees Paid:0.00



**Case Number :BVIHCOM2026/0018**

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0018

**FILED**

**HIGH COURT**

TERRITORY OF
THE VIRGIN ISLANDS

**Submitted Date:12/01/2026 13:31**

**Filed Date:12/01/2026 13:31**

**Fees Paid:0.00**

BETWEEN:

IN THE MATTER OF PRAISE MARBLE LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

Applicant

-v-

PRAISE MARBLE LIMITED

Respondent

---

ORDER APPLICATION FOR JOINT PROVISIONAL LIQUIDATORS

---

BEFORE:    THE HONOURABLE JUSTICE ABBAS MITHANI

DATED:    THE 9th DAY OF JANUARY, 2026

ENTERED:    THE 12th DAY OF JANUARY, 2026

### PENAL NOTICE

The effect of this Order is that the directors, former directors, office holders and former office holders of the Respondent, PRAISE MARBLE LIMITED ("the Company") are replaced by the joint provisional liquidators and that the directors, former directors, office holders and former office holders are prohibited from taking any action in relation to the Company's affairs without prior consent of the joint provisional liquidators.

If you, the directors, former directors, office holders and former office holders of the Company fail to comply with the terms of this order, proceedings may be commenced against you for contempt of court and you may be liable to be imprisoned, fined or have your assets seized.

**This order must be complied with by any person affected by it upon whom it is served. Any other person who knows of this order and does anything which helps or permits the directors, former directors, office holders and/or former office holders of the Company to breach its terms may also be held to be in contempt of Court and may be imprisoned, fined or have their assets seized.**

**UPON THE ORDINARY APPLICATION** filed by the Applicant on 5 January 2026 seeking the appointment of James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110, Paul Pretlove and David Standish, both eligible overseas insolvency practitioner of Interpath Ltd, 10 Fleet Place, London EC4M 7RB, England as joint provisional liquidators of the Company pursuant to section 170 of the Insolvency Act 2003, (**"the Application"**) coming on for hearing.

**AND UPON HEARING** Paul B. Dennis K.C. and with him Nadine Whyte Laing and Koya Ryan of O'Neal Webster for the Applicant.

**AND UPON** the Attorney General Dawn J. Smith being present.

**AND UPON** Mr. Paul Pretlove and Mr. James Drury, two of the proposed joint provisional liquidators being present.

**AND UPON READING** the Application, the originating application to appoint liquidators of the Company, the first affidavit of the Attorney General, the affidavit of Jeni-Lee Watson and the other documents on the Court file.

**AND UPON** the Application being heard ex parte.

**IT IS HEREBY ORDERED THAT:**

1. James Drury, Paul Pretlove and David Standish be appointed jointly and severally as provisional liquidators (the **"Joint Provisional Liquidators"**) of the Company until further order.

2. The Joint Provisional Liquidators have the rights and powers of a liquidator to the extent necessary to maintain the value of the assets owned by the Company and to carry out the functions for which they are appointed.

3.  In addition to the powers outlined in 2 above, the Joint Provisional Liquidators shall have the following specific powers which may be exercised without further sanction or intervention of this Honourable Court:

   a.  to gain entry to the Company's premises and take possession of and preserve the books and records of the Company;

   b.  to identify any assets which may remain in the possession or control of the Company, and to take such steps as may be necessary to protect any such assets from removal or dissipation;

   c.  to seek the recognition (or its equivalent) of the appointment of the Joint Provisional Liquidators in the United States, United Kingdom, Singapore, Hong Kong, Taiwan Thailand and Cambodia or elsewhere for the purposes of securing, realising and remitting assets to the control of the Joint Provisional Liquidators and for the purpose of obtaining access to and control of the records of the Company;

   d.  to commence, continue, discontinue or defend, including by way of counterclaim or similar response, any action or other legal proceedings in the name and on behalf of the Company in so far as necessary to protect the assets and information of the Company including:

      (i)  issuing proceedings against the directors, former directors, office holders and former office holders of the Company, if so advised.

      (ii)  intervening (if so advised) in ongoing proceedings which involve the Company and/or its directors, former directors, office holders and/or its former office holders.

   e.  to vote the shares of the Company in order to prevent the dissipation of its assets.

   f.  to carry on the business of the Company so far as may be necessary for its beneficial provisional liquidation;

   g.  to take all necessary steps to obtain from any person documents or copy documents which belong to the Company or have been created or maintained on its behalf or which the Company has a right to obtain or inspect.

   h.  to appoint an agent including a solicitor, or accountant to do any business that the Joint Provisional Liquidators are unable to do themselves in discharge of their duties, or which can be more conveniently done by an agent;

i.    to investigate the affairs of the Company so far as necessary to protect and, if necessary, retrieve the assets and records of the Company;

j.    to retain, manage and operate the existing bank accounts of the Company including, without limitation, the power to change, remove and replace the signatories of these accounts and, where necessary, to open new bank accounts;

k.    The Joint Provisional Liquidators may draw down payments on account of their remuneration, expenses and disbursements from time to time at a rate of 80% of their time costs and 100% of their expenses and disbursements, subject to these being subsequently approved by the court, and in the event that such sums are not approved, the unapproved sums be repaid to the Company within 7 days;

l.    to apply to the Court for directions concerning any matter arising out of the exercise of the above powers; and

m.    to do all other things as may be incidental to the exercise of the above functions and powers.

n.    to consult and share information with the Applicant to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company.

o.    to cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4.    The Joint Provisional Liquidators are authorised and directed to implement the protocol for consultation and information sharing between them and the Applicant in the draft which is attached hereto (**"the Protocol"**).

5.    Any disclosure of information by the Joint Provisional Liquidators to the Applicant made in good faith and in accordance with the Protocol shall be deemed authorised by the Court and shall not constitute a breach of duty, confidence, data protection obligations or contractual restrictions binding upon the Company.

6.    The Joint Provisional Liquidators shall not be required to disclose material subject to legal professional privilege or litigation privilege.

7. The Joint Provisional Liquidators and the Applicant have liberty to apply on short notice for directions, variation or termination of the Protocol.

8. The costs of the provisional liquidation, including the proper fees and disbursements of the Joint Provisional Liquidators and the Applicant's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

9. The powers set out in paragraph 3 above are to the exclusion of any power exercised or purported to be exercised by any existing director of the Company in so far as such power concerns the affairs of the Company and its assets within the jurisdiction of the Virgin Islands.

10. Save as provided in paragraph 3 above the Joint Provisional Liquidators may not exercise any of the powers set out at Schedule 2 to the Insolvency Act, 2003 without sanction of the court.

11. Pursuant to section 174 of the Insolvency Act, 2003 alternatively pursuant to the inherent jurisdiction of the Court, all actions, suits or proceedings of any nature whatsoever against the Company be and are hereby restrained until further order of the Court.

12. During the period of their appointment, any act required or authorized to be done by the Joint Provisional Liquidators may be done by any one or more of them.

13. This order was made at a hearing without notice to the respondent. There will be a further hearing in respect of the order on or before *29th January 2026* with a time estimate of 30 minutes, for directions only (**the Return Date**).

14. The Joint Provisional Liquidators are to file and serve a report within one clear day before the Return Date summarising steps taken, any immediate concerns and recommended next steps.

15. The Company is at liberty to apply to vary or discharge the order upon giving 72 hours' notice to the Applicant and the Joint Provisional Liquidators.

16. The Joint Provisional Liquidators are at liberty to apply to vary or discharge the order if the allegations set out above are not substantiated or for some other reason upon giving 72 hours' notice to the Applicant and the Company.

17.    The Applicant is not required to give an undertaking in damages.

18.    The costs of this Application be costs in the provisional liquidation.

19.    The Joint Provisional Liquidators are not required to pay or provide security.

**BY THE COURT**



_____

**REGISTRAR**

**Protocol for Consultation and Information-Sharing Between the Liquidators and the Attorney General**

This Protocol is annexed to and forms part of the Order of the BVI Commercial Court (the **Court**) made on 9 January 2026 in Claim No. BVIHC (COM) 2026/0018 (**"the Order"**). Capitalised terms bear the meanings given in the Order unless the context otherwise requires.

### 1. Purpose and status

This Protocol sets out a consultative framework between the Liquidators and the Attorney General to facilitate effective cooperation in the public interest, including in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of Praise Marble Limited (**"the Company"**) For the avoidance of doubt, this Protocol is made pursuant to and with the approval of the Court, and disclosures made in good faith in accordance with this Protocol are deemed authorised by the Court.

### 2. Guiding principles

The Liquidators shall remain independent and act in the interests of the Company's creditors as a whole and the integrity of the winding up. The Attorney General's participation under this Protocol is consultative and does not fetter the Liquidators' statutory powers or duties, nor the Attorney General's independent functions. Both parties shall conduct themselves with candour, proportionality and respect for legal professional privilege, confidentiality, data protection and rule of law.

Nothing in this Protocol is intended to limit or restrict the ability of the Company's stakeholders to constitute a creditors' committee.

### 3. Definitions

- Attorney General means the Attorney General of the Virgin Islands and includes designated officers acting on the Attorney General's behalf for the purposes of this Protocol.
- The Company means Praise Marble Limited which is the subject of the Order.
- Confidential Information means non-public information concerning the Company, the liquidation, related investigations, counterparties and assets, including personal data and material subject to confidentiality obligations owed by the Company or the Liquidators.

- Privileged Material means material subject to legal professional privilege or litigation privilege, or any analogous protection recognised by the Court.

### 4. Appointment and representation

The Attorney General shall constitute a consultative committee and may nominate up to three designated representatives for liaison with the Liquidators, with at least one senior contact identified (the **AGs Committee**). The Attorney General may change representatives on notice to the Liquidators.

The AGs Committee shall serve alongside any creditors' committee (if one is formed), and the Liquidators shall have equal regard to the views expressed by both the AGs Committee and the creditors' committee (if formed).

### 5. Consultation framework

5.1 Meetings. The Liquidators shall convene regular consultation meetings (in person or virtual) with the Attorney General not less than once per quarter, and ad hoc meetings as reasonably required. The Liquidators shall chair meetings and circulate a brief agenda in advance. These meetings may be consolidated with meetings of the creditors' committee (if one is formed).

5.2 Attendance. The Liquidators may invite professional advisers and members of the liquidation team. The Attorney General may invite relevant law enforcement or regulatory personnel, provided confidentiality undertakings are observed.

5.3 Minutes. The Liquidators shall keep concise minutes recording attendees, topics discussed and any agreed actions, subject to privilege and sensitivity redactions where appropriate.

### 6. Reporting

6.1 Periodic reports. The Liquidators shall provide to the Attorney General a confidential report not less than once per quarter covering, to the extent appropriate and not prejudicial to the estate:

- status of asset identification, recovery actions and investigations;
- key applications to the Court and outcomes;
- known factual matters relevant to potential criminal offences or regulatory breaches; and
- anticipated steps in the next period.

6.2 Urgent matters. The Liquidators shall promptly notify the Attorney General of matters reasonably judged to be urgent, including (but not limited to) risk of dissipation, destruction of records, or flight of suspects.

6.3 Templates. The Liquidators may adopt reporting templates and may omit details where disclosure would prejudice recoveries, negotiations, privilege, or legal processes.

### 7. Information requests by the Attorney General

7.1 Scope. The Attorney General may request access to documents, data and information reasonably required in relation to the Company or related persons or entities.

7.2 Process. Requests shall be made in writing, identifying the categories sought, the purpose, and any timing sensitivities. The Liquidators shall acknowledge within 3 business days and respond within a reasonable time, taking into account volume, complexity and competing duties.

7.3 Reasonableness and sequencing. The Liquidators may propose reasonable narrowing, staging or alternative formats, including summaries or redactions, to protect privilege, confidentiality, commercial sensitivity, or the integrity of civil recovery efforts.

7.4 Court supervision. If disagreement arises which cannot be resolved promptly, either party may seek directions from the Court on short notice.

### 8. Authorised disclosures and gateways

8.1 Court authorisation. Subject to sections 9–12, the Liquidators are authorised by the Court to disclose Confidential Information to the Attorney General for the limited purposes of regulatory or criminal investigation and prosecution, restraint, confiscation, forfeiture, mutual legal assistance, and related protective measures, and to receive Confidential Information from the Attorney General for liquidation purposes.

8.2 Statutory gateways. To the extent any statutory or regulatory gateway is required for disclosure or use of information, the parties shall cooperate to identify and use such gateways, including by seeking further directions or orders of the Court as needed.

8.3 No breach. Disclosures made in good faith under this Protocol shall not constitute a breach of duty, confidence, data protection laws, or contractual restrictions binding on the Company, and the Liquidators shall have the protection of the Court accordingly.

### 9. Privilege and confidentiality

9.1 Privilege preserved. The Liquidators shall not be required to disclose Privileged Material. Any inadvertent disclosure shall not constitute a waiver of privilege, and the Attorney General shall promptly return or delete such material and refrain from review or use upon notification.

9.2 Common interest. Where appropriate, and subject to legal advice, the parties may agree that certain exchanges are made on a common interest or joint interest basis to preserve privilege.

9.3 Use restrictions. The Attorney General shall maintain Confidential Information in confidence and use it solely for lawful law enforcement, regulatory and public interest purposes. Dissemination shall be limited to personnel with a need to know who are bound by equivalent confidentiality obligations.

9.4 Protective measures. Upon reasonable request, the Attorney General shall implement protective measures for sensitive materials, including secure handling protocols, restricted circulation, and, where appropriate, applications to seal or redact in criminal or regulatory proceedings to avoid prejudice to the estate.

### 10. Data protection and personal data

The parties shall process personal data lawfully, fairly and securely, with appropriate technical and organisational measures. Where cross-border transfers are contemplated, the parties shall cooperate to ensure a lawful transfer mechanism and, where necessary, seek the Court's directions.

### 11. Preservation and holds

The Liquidators shall implement and maintain appropriate document preservation measures in respect of the Company's records. The Attorney General shall notify the Liquidators of any preservation requirements arising from criminal investigations or proceedings, including anticipated requests or production deadlines, to allow timely compliance.

### 12. Coordination to avoid prejudice and duplication

The parties shall coordinate to minimise prejudice to the estate, civil recoveries and criminal processes, including by sequencing steps, agreeing standstills where appropriate, and consulting on timing of public filings or applications likely to have cross-impact. The Liquidators' primary duty to protect and realise assets shall be respected.

### 13. Public statements and confidentiality vis-à-vis third parties

Public statements about the Company, the liquidation or related investigations shall be coordinated to the extent practicable. The Liquidators may make statements required by law or the Court or necessary to protect assets or correct the market. The Attorney General may make statements required in the exercise of public functions, having regard to the Liquidators' requests to withhold sensitive details.

### 14. Costs and resourcing

The reasonable costs incurred by the Liquidators in complying with this Protocol, including costs of retrieval, review, redaction, secure transmission and liaison, are costs of the liquidation. Where requests impose material incremental burdens, the parties shall confer on pragmatic staging or cost-efficient approaches and, failing agreement, may seek the Court's directions.

### 15. Non-fetter and independence

Nothing in this Protocol fetters or derogates from the Liquidators' statutory powers and duties, or from the Attorney General's independent decision-making. The consultative role does not confer any power of direction over the Liquidators.

### 16. Conflicts and recusals

If a conflict of interest arises affecting any representative, that person shall recuse from relevant consultations. The parties shall notify each other of any material conflicts that could affect the integrity of cooperation, and may seek the Court's directions where necessary.

### 17. International cooperation

Where the Attorney General is engaged in mutual legal assistance, or cooperation with foreign authorities, the parties shall consult on scope and timing to ensure that disclosures and steps taken are consistent with this Protocol and do not unduly prejudice the liquidation or foreign proceedings. The Attorney

General shall take reasonable steps, where feasible, to secure protective handling by foreign authorities of any Confidential Information provided.

### 18. Records and audit trail

The Liquidators shall maintain a record of disclosures made to the Attorney General under this Protocol sufficient to evidence compliance, subject to privilege. The Attorney General shall, upon reasonable request, confirm receipt and any onward lawful use or disclosure to other agencies.

### 19. Duration, variation and termination

This Protocol takes effect upon the making of the Order and continues until the earlier of dissolution of the Company or further order of the Court. It may be varied by written agreement between the Liquidators and the Attorney General approved by the Court, or otherwise by order of the Court. The Court may suspend or terminate this Protocol upon application by either party.

### 20. Notices

Formal notices under this Protocol shall be in writing and sent to the designated contacts of each party as notified from time to time. Operational communications may be conducted by secure electronic means.

### 21. Dispute resolution and directions

Any dispute arising under or in connection with this Protocol shall, in the first instance, be addressed through consultation. Failing prompt resolution, either party may apply to the Court for directions on short notice.

### 22. Safe harbour

No act or omission of the Liquidators done in good faith and with reasonable care in reliance on this Protocol, or any directions of the Court, shall give rise to personal liability. The Liquidators shall be entitled to the usual indemnities out of the assets of the Company.

---

**Schedule 1 – Illustrative categories of information for disclosure**

A. Corporate records: constitutional documents, registers, organisational charts, officer and registered agent details.

B. Financial records: bank statements, ledgers, invoices, loan agreements, asset registers, related party transactions.

C. Communications: selected emails and messaging data from corporate systems relevant to suspected criminality.

D. Counterparty materials: KYC files, contracts, correspondence with intermediaries and fiduciaries.

E. Investigation work product: non-privileged factual memoranda, forensic accounting outputs, chain-of-custody logs.

F. Court materials: statements of affairs, affidavits, pleadings and orders (including sealed materials as authorised).

G. Asset tracing: non-privileged tracing schedules, dashboards, and summaries of restraints or recovery actions.

H. Preservation: litigation hold notices and repositories metadata (to the extent disclosure assists law enforcement).

Disclosure of any category remains subject to sections 9–12 of the Protocol.

---

**Schedule 2 – Template quarterly consultation report (confidential)**

1. Executive summary and key developments.

2. Asset position: discoveries, realisations, restraints and pending recovery actions.

3. Investigations: factual findings, cooperating witnesses, outstanding enquiries.

4. Legal proceedings: applications filed or contemplated; coordination with foreign courts.

5. Law enforcement interface: requests received/made; disclosures; pending deadlines.

6. Risks and mitigants: dissipation risks, data loss risks, reputational issues.

7. Next steps and proposed timetable; matters requiring Attorney General input.

8. Appendices: schedules of documents disclosed; privilege log (if applicable).

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0018

BETWEEN:

IN THE MATTER OF PRAISE MARBLE LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF

THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

**Applicant**

-v-

PRAISE MARBLE LIMITED

**Respondent**

---

**ORDER ON APPLICATION FOR
JOINT PROVISIONAL LIQUIDATORS**

---



Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 l Fax: (284) 393 5805
www.onealwebster.com

**Case Number :BVIHCOM2026/0017**



**FILED**
HIGH COURT
**TERRITORY OF**
**THE VIRGIN ISLANDS**

**Submitted Date:13/01/2026 14:38**

**Filed Date:13/01/2026 14:38**

**Fees Paid:0.00**





**Case Number :BVIHCOM2026/0017**

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0017

**Submitted Date:12/01/2026 13:33**

**Filed Date:12/01/2026 13:33**

**Fees Paid:0.00**

BETWEEN:

IN THE MATTER OF PRINCE GLOBAL GROUP LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

Applicant

-v-

PRINCE GLOBAL GROUP LIMITED

Respondent

---

ORDER APPLICATION FOR JOINT PROVISIONAL LIQUIDATORS

---

BEFORE:     THE HONOURABLE JUSTICE ABBAS MITHANI

DATED:      THE 9th DAY OF JANUARY, 2026

ENTERED:    THE 12th DAY OF JANUARY, 2026

<u>PENAL NOTICE</u>

The effect of this Order is that the directors, former directors, office holders and former office holders of the Respondent, PRINCE GLOBAL GROUP LIMITED ("the Company") are replaced by the joint provisional liquidators and that the directors, former directors, office holders and former office holders are prohibited from taking any action in relation to the Company's affairs without prior consent of the joint provisional liquidators.

If you, the directors, former directors, office holders and former office holders of the Company fail to comply with the terms of this order, proceedings may be commenced against you for contempt of court and you may be liable to be imprisoned, fined or have your assets seized.

**This order must be complied with by any person affected by it upon whom it is served. Any other person who knows of this order and does anything which helps or permits the directors, former directors, office holders and/or former office holders of the Company to breach its terms may also be held to be in contempt of Court and may be imprisoned, fined or have their assets seized.**

**UPON THE ORDINARY APPLICATION** filed by the Applicant on 5 January 2026 seeking the appointment of James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110, Paul Pretlove and David Standish, both eligible overseas insolvency practitioner of Interpath Ltd, 10 Fleet Place, London EC4M 7RB, England as joint provisional liquidators of the Company pursuant to section 170 of the Insolvency Act 2003, (**"the Application"**) coming on for hearing.

**AND UPON HEARING** Paul B. Dennis K.C. and with him Nadine Whyte Laing and Koya Ryan of O'Neal Webster for the Applicant.

**AND UPON** the Attorney General Dawn J. Smith being present.

**AND UPON** Mr. Paul Pretlove and Mr. James Drury, two of the proposed joint provisional liquidators being present.

**AND UPON READING** the Application, the originating application to appoint liquidators of the Company, the first affidavit of the Attorney General, the affidavit of Jeni-Lee Watson and the other documents on the Court file.

**AND UPON** the Application being heard ex parte.

**IT IS HEREBY ORDERED THAT:**

1. James Drury, Paul Pretlove and David Standish be appointed jointly and severally as provisional liquidators (the **"Joint Provisional Liquidators"**) of the Company until further order.

2. The Joint Provisional Liquidators have the rights and powers of a liquidator to the extent necessary to maintain the value of the assets owned by the Company and to carry out the functions for which they are appointed.

3.  In addition to the powers outlined in 2 above, the Joint Provisional Liquidators shall have the following specific powers which may be exercised without further sanction or intervention of this Honourable Court:

    a.  to gain entry to the Company's premises and take possession of and preserve the books and records of the Company;

    b.  to identify any assets which may remain in the possession or control of the Company, and to take such steps as may be necessary to protect any such assets from removal or dissipation;

    c.  to seek the recognition (or its equivalent) of the appointment of the Joint Provisional Liquidators in the United States, United Kingdom, Singapore, Hong Kong, Taiwan Thailand and Cambodia or elsewhere for the purposes of securing, realising and remitting assets to the control of the Joint Provisional Liquidators and for the purpose of obtaining access to and control of the records of the Company;

    d.  to commence, continue, discontinue or defend, including by way of counterclaim or similar response, any action or other legal proceedings in the name and on behalf of the Company in so far as necessary to protect the assets and information of the Company including:

        (i)   issuing proceedings against the directors, former directors, office holders and former office holders of the Company, if so advised.

        (ii)  intervening (if so advised) in ongoing proceedings which involve the Company and/or its directors, former directors, office holders and/or its former office holders.

    e.  to vote the shares of the Company in order to prevent the dissipation of its assets.

    f.  to carry on the business of the Company so far as may be necessary for its beneficial provisional liquidation;

    g.  to take all necessary steps to obtain from any person documents or copy documents which belong to the Company or have been created or maintained on its behalf or which the Company has a right to obtain or inspect.

    h.  to appoint an agent including a solicitor, or accountant to do any business that the Joint Provisional Liquidators are unable to do themselves in discharge of their duties, or which can be more conveniently done by an agent;

i. to investigate the affairs of the Company so far as necessary to protect and, if necessary, retrieve the assets and records of the Company;

j. to retain, manage and operate the existing bank accounts of the Company including, without limitation, the power to change, remove and replace the signatories of these accounts and, where necessary, to open new bank accounts;

k. The Joint Provisional Liquidators may draw down payments on account of their remuneration, expenses and disbursements from time to time at a rate of 80% of their time costs and 100% of their expenses and disbursements, subject to these being subsequently approved by the court, and in the event that such sums are not approved, the unapproved sums be repaid to the Company within 7 days;

l. to apply to the Court for directions concerning any matter arising out of the exercise of the above powers; and

m. to do all other things as may be incidental to the exercise of the above functions and powers.

n. to consult and share information with the Applicant to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company.

o. to cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4. The Joint Provisional Liquidators are authorised and directed to implement the protocol for consultation and information sharing between them and the Applicant in the draft which is attached hereto ("the Protocol").

5. Any disclosure of information by the Joint Provisional Liquidators to the Applicant made in good faith and in accordance with the Protocol shall be deemed authorised by the Court and shall not constitute a breach of duty, confidence, data protection obligations or contractual restrictions binding upon the Company.

6. The Joint Provisional Liquidators shall not be required to disclose material subject to legal professional privilege or litigation privilege.

7.    The Joint Provisional Liquidators and the Applicant have liberty to apply on short notice for directions, variation or termination of the Protocol.

8.    The costs of the provisional liquidation, including the proper fees and disbursements of the Joint Provisional Liquidators and the Applicant's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

9.    The powers set out in paragraph 3 above are to the exclusion of any power exercised or purported to be exercised by any existing director of the Company in so far as such power concerns the affairs of the Company and its assets within the jurisdiction of the Virgin Islands.

10.    Save as provided in paragraph 3 above the Joint Provisional Liquidators may not exercise any of the powers set out at Schedule 2 to the Insolvency Act, 2003 without sanction of the court.

11.    Pursuant to section 174 of the Insolvency Act, 2003 alternatively pursuant to the inherent jurisdiction of the Court, all actions, suits or proceedings of any nature whatsoever against the Company be and are hereby restrained until further order of the Court.

12.    During the period of their appointment, any act required or authorized to be done by the Joint Provisional Liquidators may be done by any one or more of them.

13.    This order was made at a hearing without notice to the respondent.  There will be a further hearing in respect of the order on or before *29th January 2026* with a time estimate of 30 minutes, for directions only (**the Return Date**).

14.    The Joint Provisional Liquidators are to file and serve a report within one clear day before the Return Date summarising steps taken, any immediate concerns and recommended next steps.

15.    The Company is at liberty to apply to vary or discharge the order upon giving 72 hours' notice to the Applicant and the Joint Provisional Liquidators.

16.    The Joint Provisional Liquidators are at liberty to apply to vary or discharge the order if the allegations set out above are not substantiated or for some other reason upon giving 72 hours' notice to the Applicant and the Company.

17. The Applicant is not required to give an undertaking in damages.

18. The costs of this Application be costs in the provisional liquidation.

19. The Joint Provisional Liquidators are not required to pay or provide security.

BY THE COURT



REGISTRAR

**Protocol for Consultation and Information-Sharing Between the Liquidators and the Attorney General**

This Protocol is annexed to and forms part of the Order of the BVI Commercial Court (the **Court**) made on 9 January 2026 in Claim No. BVIHC (COM) 2026/0017 (**"the Order"**). Capitalised terms bear the meanings given in the Order unless the context otherwise requires.

### 1. Purpose and status

This Protocol sets out a consultative framework between the Liquidators and the Attorney General to facilitate effective cooperation in the public interest, including in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of Prince Global Group Limited (**"the Company"**) For the avoidance of doubt, this Protocol is made pursuant to and with the approval of the Court, and disclosures made in good faith in accordance with this Protocol are deemed authorised by the Court.

### 2. Guiding principles

The Liquidators shall remain independent and act in the interests of the Company's creditors as a whole and the integrity of the winding up. The Attorney General's participation under this Protocol is consultative and does not fetter the Liquidators' statutory powers or duties, nor the Attorney General's independent functions. Both parties shall conduct themselves with candour, proportionality and respect for legal professional privilege, confidentiality, data protection and rule of law.

Nothing in this Protocol is intended to limit or restrict the ability of the Company's stakeholders to constitute a creditors' committee.

### 3. Definitions

- Attorney General means the Attorney General of the Virgin Islands and includes designated officers acting on the Attorney General's behalf for the purposes of this Protocol.
- The Company means Prince Global Group Limited which is the subject of the Order.
- Confidential Information means non-public information concerning the Company, the liquidation, related investigations, counterparties and assets, including personal data and material subject to confidentiality obligations owed by the Company or the Liquidators.

- Privileged Material means material subject to legal professional privilege or litigation privilege, or any analogous protection recognised by the Court.

### 4. Appointment and representation

The Attorney General shall constitute a consultative committee and may nominate up to three designated representatives for liaison with the Liquidators, with at least one senior contact identified (the **AGs Committee**). The Attorney General may change representatives on notice to the Liquidators.

The AGs Committee shall serve alongside any creditors' committee (if one is formed), and the Liquidators shall have equal regard to the views expressed by both the AGs Committee and the creditors' committee (if formed).

### 5. Consultation framework

5.1 Meetings. The Liquidators shall convene regular consultation meetings (in person or virtual) with the Attorney General not less than once per quarter, and ad hoc meetings as reasonably required. The Liquidators shall chair meetings and circulate a brief agenda in advance. These meetings may be consolidated with meetings of the creditors' committee (if one is formed).

5.2 Attendance. The Liquidators may invite professional advisers and members of the liquidation team. The Attorney General may invite relevant law enforcement or regulatory personnel, provided confidentiality undertakings are observed.

5.3 Minutes. The Liquidators shall keep concise minutes recording attendees, topics discussed and any agreed actions, subject to privilege and sensitivity redactions where appropriate.

### 6. Reporting

6.1 Periodic reports. The Liquidators shall provide to the Attorney General a confidential report not less than once per quarter covering, to the extent appropriate and not prejudicial to the estate:

- status of asset identification, recovery actions and investigations;
- key applications to the Court and outcomes;
- known factual matters relevant to potential criminal offences or regulatory breaches; and
- anticipated steps in the next period.

6.2 Urgent matters. The Liquidators shall promptly notify the Attorney General of matters reasonably judged to be urgent, including (but not limited to) risk of dissipation, destruction of records, or flight of suspects.

6.3 Templates. The Liquidators may adopt reporting templates and may omit details where disclosure would prejudice recoveries, negotiations, privilege, or legal processes.

### 7. Information requests by the Attorney General

7.1 Scope. The Attorney General may request access to documents, data and information reasonably required in relation to the Company or related persons or entities.

7.2 Process. Requests shall be made in writing, identifying the categories sought, the purpose, and any timing sensitivities. The Liquidators shall acknowledge within 3 business days and respond within a reasonable time, taking into account volume, complexity and competing duties.

7.3 Reasonableness and sequencing. The Liquidators may propose reasonable narrowing, staging or alternative formats, including summaries or redactions, to protect privilege, confidentiality, commercial sensitivity, or the integrity of civil recovery efforts.

7.4 Court supervision. If disagreement arises which cannot be resolved promptly, either party may seek directions from the Court on short notice.

### 8. Authorised disclosures and gateways

8.1 Court authorisation. Subject to sections 9–12, the Liquidators are authorised by the Court to disclose Confidential Information to the Attorney General for the limited purposes of regulatory or criminal investigation and prosecution, restraint, confiscation, forfeiture, mutual legal assistance, and related protective measures, and to receive Confidential Information from the Attorney General for liquidation purposes.

8.2 Statutory gateways. To the extent any statutory or regulatory gateway is required for disclosure or use of information, the parties shall cooperate to identify and use such gateways, including by seeking further directions or orders of the Court as needed.

8.3 No breach. Disclosures made in good faith under this Protocol shall not constitute a breach of duty, confidence, data protection laws, or contractual restrictions binding on the Company, and the Liquidators shall have the protection of the Court accordingly.

### 9. Privilege and confidentiality

9.1 Privilege preserved. The Liquidators shall not be required to disclose Privileged Material. Any inadvertent disclosure shall not constitute a waiver of privilege, and the Attorney General shall promptly return or delete such material and refrain from review or use upon notification.

9.2 Common interest. Where appropriate, and subject to legal advice, the parties may agree that certain exchanges are made on a common interest or joint interest basis to preserve privilege.

9.3 Use restrictions. The Attorney General shall maintain Confidential Information in confidence and use it solely for lawful law enforcement, regulatory and public interest purposes. Dissemination shall be limited to personnel with a need to know who are bound by equivalent confidentiality obligations.

9.4 Protective measures. Upon reasonable request, the Attorney General shall implement protective measures for sensitive materials, including secure handling protocols, restricted circulation, and, where appropriate, applications to seal or redact in criminal or regulatory proceedings to avoid prejudice to the estate.

### 10. Data protection and personal data

The parties shall process personal data lawfully, fairly and securely, with appropriate technical and organisational measures. Where cross-border transfers are contemplated, the parties shall cooperate to ensure a lawful transfer mechanism and, where necessary, seek the Court's directions.

### 11. Preservation and holds

The Liquidators shall implement and maintain appropriate document preservation measures in respect of the Company's records. The Attorney General shall notify the Liquidators of any preservation requirements arising from criminal investigations or proceedings, including anticipated requests or production deadlines, to allow timely compliance.

### 12. Coordination to avoid prejudice and duplication

The parties shall coordinate to minimise prejudice to the estate, civil recoveries and criminal processes, including by sequencing steps, agreeing standstills where appropriate, and consulting on timing of public filings or applications likely to have cross-impact. The Liquidators' primary duty to protect and realise assets shall be respected.

### 13. Public statements and confidentiality vis-à-vis third parties

Public statements about the Company, the liquidation or related investigations shall be coordinated to the extent practicable. The Liquidators may make statements required by law or the Court or necessary to protect assets or correct the market. The Attorney General may make statements required in the exercise of public functions, having regard to the Liquidators' requests to withhold sensitive details.

### 14. Costs and resourcing

The reasonable costs incurred by the Liquidators in complying with this Protocol, including costs of retrieval, review, redaction, secure transmission and liaison, are costs of the liquidation. Where requests impose material incremental burdens, the parties shall confer on pragmatic staging or cost-efficient approaches and, failing agreement, may seek the Court's directions.

### 15. Non-fetter and independence

Nothing in this Protocol fetters or derogates from the Liquidators' statutory powers and duties, or from the Attorney General's independent decision-making. The consultative role does not confer any power of direction over the Liquidators.

### 16. Conflicts and recusals

If a conflict of interest arises affecting any representative, that person shall recuse from relevant consultations. The parties shall notify each other of any material conflicts that could affect the integrity of cooperation, and may seek the Court's directions where necessary.

### 17. International cooperation

Where the Attorney General is engaged in mutual legal assistance, or cooperation with foreign authorities, the parties shall consult on scope and timing to ensure that disclosures and steps taken are consistent with this Protocol and do not unduly prejudice the liquidation or foreign proceedings. The Attorney

General shall take reasonable steps, where feasible, to secure protective handling by foreign authorities of any Confidential Information provided.

### 18. Records and audit trail

The Liquidators shall maintain a record of disclosures made to the Attorney General under this Protocol sufficient to evidence compliance, subject to privilege. The Attorney General shall, upon reasonable request, confirm receipt and any onward lawful use or disclosure to other agencies.

### 19. Duration, variation and termination

This Protocol takes effect upon the making of the Order and continues until the earlier of dissolution of the Company or further order of the Court. It may be varied by written agreement between the Liquidators and the Attorney General approved by the Court, or otherwise by order of the Court. The Court may suspend or terminate this Protocol upon application by either party.

### 20. Notices

Formal notices under this Protocol shall be in writing and sent to the designated contacts of each party as notified from time to time. Operational communications may be conducted by secure electronic means.

### 21. Dispute resolution and directions

Any dispute arising under or in connection with this Protocol shall, in the first instance, be addressed through consultation. Failing prompt resolution, either party may apply to the Court for directions on short notice.

### 22. Safe harbour

No act or omission of the Liquidators done in good faith and with reasonable care in reliance on this Protocol, or any directions of the Court, shall give rise to personal liability. The Liquidators shall be entitled to the usual indemnities out of the assets of the Company.

**Schedule 1 – Illustrative categories of information for disclosure**

A. Corporate records: constitutional documents, registers, organisational charts, officer and registered agent details.

B. Financial records: bank statements, ledgers, invoices, loan agreements, asset registers, related party transactions.

C. Communications: selected emails and messaging data from corporate systems relevant to suspected criminality.

D. Counterparty materials: KYC files, contracts, correspondence with intermediaries and fiduciaries.

E. Investigation work product: non-privileged factual memoranda, forensic accounting outputs, chain-of-custody logs.

F. Court materials: statements of affairs, affidavits, pleadings and orders (including sealed materials as authorised).

G. Asset tracing: non-privileged tracing schedules, dashboards, and summaries of restraints or recovery actions.

H. Preservation: litigation hold notices and repositories metadata (to the extent disclosure assists law enforcement).

Disclosure of any category remains subject to sections 9–12 of the Protocol.

**Schedule 2 – Template quarterly consultation report (confidential)**

1. Executive summary and key developments.

2. Asset position: discoveries, realisations, restraints and pending recovery actions.

3. Investigations: factual findings, cooperating witnesses, outstanding enquiries.

4. Legal proceedings: applications filed or contemplated; coordination with foreign courts.

5. Law enforcement interface: requests received/made; disclosures; pending deadlines.

6. Risks and mitigants: dissipation risks, data loss risks, reputational issues.

7. Next steps and proposed timetable; matters requiring Attorney General input.

8. Appendices: schedules of documents disclosed; privilege log (if applicable).

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0017


BETWEEN:

IN THE MATTER OF PRINCE GLOBAL GROUP LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF

THE LAWS OF THE VIRGIN ISLANDS.


THE ATTORNEY GENERAL

Applicant

-v-

PRINCE GLOBAL GROUP LIMITED

Respondent

---

**ORDER ON APPLICATION FOR**
**JOINT PROVISIONAL LIQUIDATORS**

---

O'Neal Webster

Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 l Fax: (284) 393 5805
www.onealwebster.com

Case Number :BVIHCOM2026/0019



**FILED**
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS

Submitted Date:13/01/2026 16:00

Filed Date:14/01/2026 08:30

Fees Paid:0.00



**Case Number :BVIHCOM2026/0019**

**FILED**
**HIGH COURT**
TERRITORY OF
THE VIRGIN ISLANDS

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0019

**Submitted Date:12/01/2026 13:36**

**Filed Date:12/01/2026 13:36**

**Fees Paid:0.00**

BETWEEN:

IN THE MATTER OF PRINCE GLOBAL HOLDINGS LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

Applicant

-v-

PRINCE GLOBAL HOLDINGS LIMITED

Respondent

---

ORDER APPLICATION FOR JOINT PROVISIONAL LIQUIDATORS

---

BEFORE:    THE HONOURABLE JUSTICE ABBAS MITHANI

DATED:    THE 9th DAY OF JANUARY, 2026

ENTERED:    THE 12th DAY OF JANUARY, 2026

PENAL NOTICE

The effect of this Order is that the directors, former directors, office holders and former office holders of the Respondent, PRINCE GLOBAL HOLDINGS LIMITED ("the Company") are replaced by the joint provisional liquidators and that the directors, former directors, office holders and former office holders are prohibited from taking any action in relation to the Company's affairs without prior consent of the joint provisional liquidators.

If you, the directors, former directors, office holders and former office holders of the Company fail to comply with the terms of this order, proceedings may be commenced against you for contempt of court and you may be liable to be imprisoned, fined or have your assets seized.

**This order must be complied with by any person affected by it upon whom it is served. Any other person who knows of this order and does anything which helps or permits the directors, former directors, office holders and/or former office holders of the Company to breach its terms may also be held to be in contempt of Court and may be imprisoned, fined or have their assets seized.**

**UPON THE ORDINARY APPLICATION** filed by the Applicant on 5 January 2026 seeking the appointment of James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110, Paul Pretlove and David Standish, both eligible overseas insolvency practitioner of Interpath Ltd, 10 Fleet Place, London EC4M 7RB, England as joint provisional liquidators of the Company pursuant to section 170 of the Insolvency Act 2003, ("**the Application**") coming on for hearing.

**AND UPON HEARING** Paul B. Dennis K.C. and with him Nadine Whyte Laing and Koya Ryan of O'Neal Webster for the Applicant.

**AND UPON** the Attorney General Dawn J. Smith being present.

**AND UPON** Mr. Paul Pretlove and Mr. James Drury, two of the proposed joint provisional liquidators being present.

**AND UPON READING** the Application, the originating application to appoint liquidators of the Company, the first affidavit of the Attorney General, the affidavit of Jeni-Lee Watson and the other documents on the Court file.

**AND UPON** the Application being heard ex parte.

**IT IS HEREBY ORDERED THAT:**

1. James Drury, Paul Pretlove and David Standish be appointed jointly and severally as provisional liquidators (the "**Joint Provisional Liquidators**") of the Company until further order.

2. The Joint Provisional Liquidators have the rights and powers of a liquidator to the extent necessary to maintain the value of the assets owned by the Company and to carry out the functions for which they are appointed.

3. In addition to the powers outlined in 2 above, the Joint Provisional Liquidators shall have the following specific powers which may be exercised without further sanction or intervention of this Honourable Court:

a. to gain entry to the Company's premises and take possession of and preserve the books and records of the Company;

b. to identify any assets which may remain in the possession or control of the Company, and to take such steps as may be necessary to protect any such assets from removal or dissipation;

c. to seek the recognition (or its equivalent) of the appointment of the Joint Provisional Liquidators in the United States, United Kingdom, Singapore, Hong Kong, Taiwan Thailand and Cambodia or elsewhere for the purposes of securing, realising and remitting assets to the control of the Joint Provisional Liquidators and for the purpose of obtaining access to and control of the records of the Company;

d. to commence, continue, discontinue or defend, including by way of counterclaim or similar response, any action or other legal proceedings in the name and on behalf of the Company in so far as necessary to protect the assets and information of the Company including:

(i) issuing proceedings against the directors, former directors, office holders and former office holders of the Company, if so advised.

(ii) intervening (if so advised) in ongoing proceedings which involve the Company and/or its directors, former directors, office holders and/or its former office holders.

e. to vote the shares of the Company in order to prevent the dissipation of its assets.

f. to carry on the business of the Company so far as may be necessary for its beneficial provisional liquidation;

g. to take all necessary steps to obtain from any person documents or copy documents which belong to the Company or have been created or maintained on its behalf or which the Company has a right to obtain or inspect.

h. to appoint an agent including a solicitor, or accountant to do any business that the Joint Provisional Liquidators are unable to do themselves in discharge of their duties, or which can be more conveniently done by an agent;

i.    to investigate the affairs of the Company so far as necessary to protect and, if necessary, retrieve the assets and records of the Company;

j.    to retain, manage and operate the existing bank accounts of the Company including, without limitation, the power to change, remove and replace the signatories of these accounts and, where necessary, to open new bank accounts;

k.    The Joint Provisional Liquidators may draw down payments on account of their remuneration, expenses and disbursements from time to time at a rate of 80% of their time costs and 100% of their expenses and disbursements, subject to these being subsequently approved by the court, and in the event that such sums are not approved, the unapproved sums be repaid to the Company within 7 days;

l.    to apply to the Court for directions concerning any matter arising out of the exercise of the above powers; and

m.    to do all other things as may be incidental to the exercise of the above functions and powers.

n.    to consult and share information with the Applicant to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company.

o.    to cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4.    The Joint Provisional Liquidators are authorised and directed to implement the protocol for consultation and information sharing between them and the Applicant in the draft which is attached hereto (**"the Protocol"**).

5.    Any disclosure of information by the Joint Provisional Liquidators to the Applicant made in good faith and in accordance with the Protocol shall be deemed authorised by the Court and shall not constitute a breach of duty, confidence, data protection obligations or contractual restrictions binding upon the Company.

6.    The Joint Provisional Liquidators shall not be required to disclose material subject to legal professional privilege or litigation privilege.

7. The Joint Provisional Liquidators and the Applicant have liberty to apply on short notice for directions, variation or termination of the Protocol.

8. The costs of the provisional liquidation, including the proper fees and disbursements of the Joint Provisional Liquidators and the Applicant's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

9. The powers set out in paragraph 3 above are to the exclusion of any power exercised or purported to be exercised by any existing director of the Company in so far as such power concerns the affairs of the Company and its assets within the jurisdiction of the Virgin Islands.

10. Save as provided in paragraph 3 above the Joint Provisional Liquidators may not exercise any of the powers set out at Schedule 2 to the Insolvency Act, 2003 without sanction of the court.

11. Pursuant to section 174 of the Insolvency Act, 2003 alternatively pursuant to the inherent jurisdiction of the Court, all actions, suits or proceedings of any nature whatsoever against the Company be and are hereby restrained until further order of the Court.

12. During the period of their appointment, any act required or authorized to be done by the Joint Provisional Liquidators may be done by any one or more of them.

13. This order was made at a hearing without notice to the respondent. There will be a further hearing in respect of the order on or before *29th January 2026* with a time estimate of 30 minutes, for directions only (**the Return Date**).

14. The Joint Provisional Liquidators are to file and serve a report within one clear day before the Return Date summarising steps taken, any immediate concerns and recommended next steps.

15. The Company is at liberty to apply to vary or discharge the order upon giving 72 hours' notice to the Applicant and the Joint Provisional Liquidators.

16. The Joint Provisional Liquidators are at liberty to apply to vary or discharge the order if the allegations set out above are not substantiated or for some other reason upon giving 72 hours' notice to the Applicant and the Company.

17.    The Applicant is not required to give an undertaking in damages.

18.    The costs of this Application be costs in the provisional liquidation.

19.    The Joint Provisional Liquidators are not required to pay or provide security.

BY THE COURT

_____

REGISTRAR



**Protocol for Consultation and Information-Sharing Between the Liquidators and the Attorney General**

This Protocol is annexed to and forms part of the Order of the BVI Commercial Court (the **Court**) made on 9 January 2026 in Claim No. BVIHC (COM) 2026/0019 (**"the Order"**). Capitalised terms bear the meanings given in the Order unless the context otherwise requires.

### 1. Purpose and status

This Protocol sets out a consultative framework between the Liquidators and the Attorney General to facilitate effective cooperation in the public interest, including in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of Prince Global Holdings Limited (**"the Company"**) For the avoidance of doubt, this Protocol is made pursuant to and with the approval of the Court, and disclosures made in good faith in accordance with this Protocol are deemed authorised by the Court.

### 2. Guiding principles

The Liquidators shall remain independent and act in the interests of the Company's creditors as a whole and the integrity of the winding up. The Attorney General's participation under this Protocol is consultative and does not fetter the Liquidators' statutory powers or duties, nor the Attorney General's independent functions. Both parties shall conduct themselves with candour, proportionality and respect for legal professional privilege, confidentiality, data protection and rule of law.

Nothing in this Protocol is intended to limit or restrict the ability of the Company's stakeholders to constitute a creditors' committee.

### 3. Definitions

- Attorney General means the Attorney General of the Virgin Islands and includes designated officers acting on the Attorney General's behalf for the purposes of this Protocol.
- The Company means Prince Global Holdings Limited which is the subject of the Order.
- Confidential Information means non-public information concerning the Company, the liquidation, related investigations, counterparties and assets, including personal data and material subject to confidentiality obligations owed by the Company or the Liquidators.

- Privileged Material means material subject to legal professional privilege or litigation privilege, or any analogous protection recognised by the Court.

### 4. Appointment and representation

The Attorney General shall constitute a consultative committee and may nominate up to three designated representatives for liaison with the Liquidators, with at least one senior contact identified (the **AGs Committee**). The Attorney General may change representatives on notice to the Liquidators.

The AGs Committee shall serve alongside any creditors' committee (if one is formed), and the Liquidators shall have equal regard to the views expressed by both the AGs Committee and the creditors' committee (if formed).

### 5. Consultation framework

5.1 Meetings. The Liquidators shall convene regular consultation meetings (in person or virtual) with the Attorney General not less than once per quarter, and ad hoc meetings as reasonably required. The Liquidators shall chair meetings and circulate a brief agenda in advance. These meetings may be consolidated with meetings of the creditors' committee (if one is formed).

5.2 Attendance. The Liquidators may invite professional advisers and members of the liquidation team. The Attorney General may invite relevant law enforcement or regulatory personnel, provided confidentiality undertakings are observed.

5.3 Minutes. The Liquidators shall keep concise minutes recording attendees, topics discussed and any agreed actions, subject to privilege and sensitivity redactions where appropriate.

### 6. Reporting

6.1 Periodic reports. The Liquidators shall provide to the Attorney General a confidential report not less than once per quarter covering, to the extent appropriate and not prejudicial to the estate:

- status of asset identification, recovery actions and investigations;
- key applications to the Court and outcomes;
- known factual matters relevant to potential criminal offences or regulatory breaches; and
- anticipated steps in the next period.

6.2 Urgent matters. The Liquidators shall promptly notify the Attorney General of matters reasonably judged to be urgent, including (but not limited to) risk of dissipation, destruction of records, or flight of suspects.

6.3 Templates. The Liquidators may adopt reporting templates and may omit details where disclosure would prejudice recoveries, negotiations, privilege, or legal processes.

### 7. Information requests by the Attorney General

7.1 Scope. The Attorney General may request access to documents, data and information reasonably required in relation to the Company or related persons or entities.

7.2 Process. Requests shall be made in writing, identifying the categories sought, the purpose, and any timing sensitivities. The Liquidators shall acknowledge within 3 business days and respond within a reasonable time, taking into account volume, complexity and competing duties.

7.3 Reasonableness and sequencing. The Liquidators may propose reasonable narrowing, staging or alternative formats, including summaries or redactions, to protect privilege, confidentiality, commercial sensitivity, or the integrity of civil recovery efforts.

7.4 Court supervision. If disagreement arises which cannot be resolved promptly, either party may seek directions from the Court on short notice.

### 8. Authorised disclosures and gateways

8.1 Court authorisation. Subject to sections 9–12, the Liquidators are authorised by the Court to disclose Confidential Information to the Attorney General for the limited purposes of regulatory or criminal investigation and prosecution, restraint, confiscation, forfeiture, mutual legal assistance, and related protective measures, and to receive Confidential Information from the Attorney General for liquidation purposes.

8.2 Statutory gateways. To the extent any statutory or regulatory gateway is required for disclosure or use of information, the parties shall cooperate to identify and use such gateways, including by seeking further directions or orders of the Court as needed.

8.3 No breach. Disclosures made in good faith under this Protocol shall not constitute a breach of duty, confidence, data protection laws, or contractual restrictions binding on the Company, and the Liquidators shall have the protection of the Court accordingly.

### 9. Privilege and confidentiality

9.1 Privilege preserved. The Liquidators shall not be required to disclose Privileged Material. Any inadvertent disclosure shall not constitute a waiver of privilege, and the Attorney General shall promptly return or delete such material and refrain from review or use upon notification.

9.2 Common interest. Where appropriate, and subject to legal advice, the parties may agree that certain exchanges are made on a common interest or joint interest basis to preserve privilege.

9.3 Use restrictions. The Attorney General shall maintain Confidential Information in confidence and use it solely for lawful law enforcement, regulatory and public interest purposes. Dissemination shall be limited to personnel with a need to know who are bound by equivalent confidentiality obligations.

9.4 Protective measures. Upon reasonable request, the Attorney General shall implement protective measures for sensitive materials, including secure handling protocols, restricted circulation, and, where appropriate, applications to seal or redact in criminal or regulatory proceedings to avoid prejudice to the estate.

### 10. Data protection and personal data

The parties shall process personal data lawfully, fairly and securely, with appropriate technical and organisational measures. Where cross-border transfers are contemplated, the parties shall cooperate to ensure a lawful transfer mechanism and, where necessary, seek the Court's directions.

### 11. Preservation and holds

The Liquidators shall implement and maintain appropriate document preservation measures in respect of the Company's records. The Attorney General shall notify the Liquidators of any preservation requirements arising from criminal investigations or proceedings, including anticipated requests or production deadlines, to allow timely compliance.

### 12. Coordination to avoid prejudice and duplication

The parties shall coordinate to minimise prejudice to the estate, civil recoveries and criminal processes, including by sequencing steps, agreeing standstills where appropriate, and consulting on timing of public filings or applications likely to have cross-impact. The Liquidators' primary duty to protect and realise assets shall be respected.

### 13. Public statements and confidentiality vis-à-vis third parties

Public statements about the Company, the liquidation or related investigations shall be coordinated to the extent practicable. The Liquidators may make statements required by law or the Court or necessary to protect assets or correct the market. The Attorney General may make statements required in the exercise of public functions, having regard to the Liquidators' requests to withhold sensitive details.

### 14. Costs and resourcing

The reasonable costs incurred by the Liquidators in complying with this Protocol, including costs of retrieval, review, redaction, secure transmission and liaison, are costs of the liquidation. Where requests impose material incremental burdens, the parties shall confer on pragmatic staging or cost-efficient approaches and, failing agreement, may seek the Court's directions.

### 15. Non-fetter and independence

Nothing in this Protocol fetters or derogates from the Liquidators' statutory powers and duties, or from the Attorney General's independent decision-making. The consultative role does not confer any power of direction over the Liquidators.

### 16. Conflicts and recusals

If a conflict of interest arises affecting any representative, that person shall recuse from relevant consultations. The parties shall notify each other of any material conflicts that could affect the integrity of cooperation, and may seek the Court's directions where necessary.

### 17. International cooperation

Where the Attorney General is engaged in mutual legal assistance, or cooperation with foreign authorities, the parties shall consult on scope and timing to ensure that disclosures and steps taken are consistent

with this Protocol and do not unduly prejudice the liquidation or foreign proceedings. The Attorney General shall take reasonable steps, where feasible, to secure protective handling by foreign authorities of any Confidential Information provided.

### 18. Records and audit trail

The Liquidators shall maintain a record of disclosures made to the Attorney General under this Protocol sufficient to evidence compliance, subject to privilege. The Attorney General shall, upon reasonable request, confirm receipt and any onward lawful use or disclosure to other agencies.

### 19. Duration, variation and termination

This Protocol takes effect upon the making of the Order and continues until the earlier of dissolution of the Company or further order of the Court. It may be varied by written agreement between the Liquidators and the Attorney General approved by the Court, or otherwise by order of the Court. The Court may suspend or terminate this Protocol upon application by either party.

### 20. Notices

Formal notices under this Protocol shall be in writing and sent to the designated contacts of each party as notified from time to time. Operational communications may be conducted by secure electronic means.

### 21. Dispute resolution and directions

Any dispute arising under or in connection with this Protocol shall, in the first instance, be addressed through consultation. Failing prompt resolution, either party may apply to the Court for directions on short notice.

### 22. Safe harbour

No act or omission of the Liquidators done in good faith and with reasonable care in reliance on this Protocol, or any directions of the Court, shall give rise to personal liability. The Liquidators shall be entitled to the usual indemnities out of the assets of the Company.

---

**Schedule 1 – Illustrative categories of information for disclosure**

A. Corporate records: constitutional documents, registers, organisational charts, officer and registered agent details.

B. Financial records: bank statements, ledgers, invoices, loan agreements, asset registers, related party transactions.

C. Communications: selected emails and messaging data from corporate systems relevant to suspected criminality.

D. Counterparty materials: KYC files, contracts, correspondence with intermediaries and fiduciaries.

E. Investigation work product: non-privileged factual memoranda, forensic accounting outputs, chain-of-custody logs.

F. Court materials: statements of affairs, affidavits, pleadings and orders (including sealed materials as authorised).

G. Asset tracing: non-privileged tracing schedules, dashboards, and summaries of restraints or recovery actions.

H. Preservation: litigation hold notices and repositories metadata (to the extent disclosure assists law enforcement).

Disclosure of any category remains subject to sections 9–12 of the Protocol.

---

**Schedule 2 – Template quarterly consultation report (confidential)**

1. Executive summary and key developments.

2. Asset position: discoveries, realisations, restraints and pending recovery actions.

3. Investigations: factual findings, cooperating witnesses, outstanding enquiries.

4. Legal proceedings: applications filed or contemplated; coordination with foreign courts.

5. Law enforcement interface: requests received/made; disclosures; pending deadlines.

6. Risks and mitigants: dissipation risks, data loss risks, reputational issues.

7. Next steps and proposed timetable; matters requiring Attorney General input.

8. Appendices: schedules of documents disclosed; privilege log (if applicable).

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0019

BETWEEN:

IN THE MATTER OF PRINCE GLOBAL HOLDINGS LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF

THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

Applicant

-v-

PRINCE GLOBAL HOLDINGS LIMITED

Respondent

---

**ORDER ON APPLICATION FOR
JOINT PROVISIONAL LIQUIDATORS**

---



O'Neal
Webster

Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 l Fax: (284) 393 5805
www.onealwebster.com

Case Number :BVIHCOM2026/0020



FILED
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS

Submitted Date:13/01/2026 16:10

Filed Date:14/01/2026 08:30

Fees Paid:0.00



**Case Number :BVIHCOM2026/0020**

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0020

**FILED**
**HIGH COURT**
TERRITORY OF
THE VIRGIN ISLANDS

**Submitted Date:12/01/2026 13:19**

**Filed Date:12/01/2026 13:19**

**Fees Paid:0.00**

BETWEEN:

IN THE MATTER OF RESPECTFUL STEED LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

Applicant

-v-

RESPECTFUL STEED LIMITED

Respondent

---

ORDER APPLICATION FOR JOINT PROVISIONAL LIQUIDATORS

---

BEFORE:     THE HONOURABLE JUSTICE

DATED:      THE  9TH DAY OF JANUARY, 2026

ENTERED:    THE 12 DAY OF   JANUARY, 2026

PENAL NOTICE

The effect of this Order is that the directors, former directors, office holders and former office holders of the Respondent, RESPECTFUL STEED LIMITED ("the Company") are replaced by the joint provisional liquidators and that the directors, former directors, office holders and former office holders are prohibited from taking any action in relation to the Company's affairs without prior consent of the joint provisional liquidators.

If you, the directors, former directors, office holders and former office holders of the Company fail to comply with the terms of this order, proceedings may be commenced against you for contempt of court and you may be liable to be imprisoned, fined or have your assets seized.

**This order must be complied with by any person affected by it upon whom it is served. Any other person who knows of this order and does anything which helps or permits the directors, former directors, office holders and/or former office holders of the Company to breach its terms may also be held to be in contempt of Court and may be imprisoned, fined or have their assets seized.**

**UPON THE ORDINARY APPLICATION** filed by the Applicant on 5 January 2026 seeking the appointment of James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110, Paul Pretlove and David Standish, both eligible overseas insolvency practitioner of Interpath Ltd, 10 Fleet Place, London EC4M 7RB, England as joint provisional liquidators of the Company pursuant to section 170 of the Insolvency Act 2003, (**"the Application"**) coming on for hearing.

**AND UPON HEARING** Paul B. Dennis K.C. and with him Nadine Whyte Laing and Koya Ryan of O'Neal Webster for the Applicant.

**AND UPON** the Attorney General Dawn J. Smith being present.

**AND UPON** Mr. Paul Pretlove and Mr. James Drury, two of the proposed joint provisional liquidators being present.

**AND UPON READING** the Application, the originating application to appoint liquidators of the Company, the first affidavit of the Attorney General, the affidavit of Jeni-Lee Watson and the other documents on the Court file.

**AND UPON** the Application being heard ex parte.

**IT IS HEREBY ORDERED THAT:**

1. James Drury, Paul Pretlove and David Standish be appointed jointly and severally as provisional liquidators (the **"Joint Provisional Liquidators"**) of the Company until further order.

2. The Joint Provisional Liquidators have the rights and powers of a liquidator to the extent necessary to maintain the value of the assets owned by the Company and to carry out the functions for which they are appointed.

3.    In addition to the powers outlined in 2 above, the Joint Provisional Liquidators shall have the following specific powers which may be exercised without further sanction or intervention of this Honourable Court:

a.    to gain entry to the Company's premises and take possession of and preserve the books and records of the Company;

b.    to identify any assets which may remain in the possession or control of the Company, and to take such steps as may be necessary to protect any such assets from removal or dissipation;

c.    to seek the recognition (or its equivalent) of the appointment of the Joint Provisional Liquidators in the United States, United Kingdom, Singapore, Hong Kong, Taiwan Thailand and Cambodia or elsewhere for the purposes of securing, realising and remitting assets to the control of the Joint Provisional Liquidators and for the purpose of obtaining access to and control of the records of the Company;

d.    to commence, continue, discontinue or defend, including by way of counterclaim or similar response, any action or other legal proceedings in the name and on behalf of the Company in so far as necessary to protect the assets and information of the Company including:

(i)    issuing proceedings against the directors, former directors, office holders and former office holders of the Company, if so advised.

(ii)    intervening (if so advised) in ongoing proceedings which involve the Company and/or its directors, former directors, office holders and/or its former office holders.

e.    to vote the shares of the Company in order to prevent the dissipation of its assets.

f.    to carry on the business of the Company so far as may be necessary for its beneficial provisional liquidation;

g.    to take all necessary steps to obtain from any person documents or copy documents which belong to the Company or have been created or maintained on its behalf or which the Company has a right to obtain or inspect.

h.    to appoint an agent including a solicitor, or accountant to do any business that the Joint Provisional Liquidators are unable to do themselves in discharge of their duties, or which can be more conveniently done by an agent;

i.    to investigate the affairs of the Company so far as necessary to protect and, if necessary, retrieve the assets and records of the Company;

j.    to retain, manage and operate the existing bank accounts of the Company including, without limitation, the power to change, remove and replace the signatories of these accounts and, where necessary, to open new bank accounts;

k.    The Joint Provisional Liquidators may draw down payments on account of their remuneration, expenses and disbursements from time to time at a rate of 80% of their time costs and 100% of their expenses and disbursements, subject to these being subsequently approved by the court, and in the event that such sums are not approved, the unapproved sums be repaid to the Company within 7 days;

l.    to apply to the Court for directions concerning any matter arising out of the exercise of the above powers; and

m.    to do all other things as may be incidental to the exercise of the above functions and powers.

n.    to consult and share information with the Applicant to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company.

o.    to cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4.    The Joint Provisional Liquidators are authorised and directed to implement the protocol for consultation and information sharing between them and the Applicant in the draft which is attached hereto ("the Protocol").

5.    Any disclosure of information by the Joint Provisional Liquidators to the Applicant made in good faith and in accordance with the Protocol shall be deemed authorised by the Court and shall not constitute a breach of duty, confidence, data protection obligations or contractual restrictions binding upon the Company.

6.    The Joint Provisional Liquidators shall not be required to disclose material subject to legal professional privilege or litigation privilege.

7. The Joint Provisional Liquidators and the Applicant have liberty to apply on short notice for directions, variation or termination of the Protocol.

8. The costs of the provisional liquidation, including the proper fees and disbursements of the Joint Provisional Liquidators and the Applicant's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

9. The powers set out in paragraph 3 above are to the exclusion of any power exercised or purported to be exercised by any existing director of the Company in so far as such power concerns the affairs of the Company and its assets within the jurisdiction of the Virgin Islands.

10. Save as provided in paragraph 3 above the Joint Provisional Liquidators may not exercise any of the powers set out at Schedule 2 to the Insolvency Act, 2003 without sanction of the court.

11. Pursuant to section 174 of the Insolvency Act, 2003 alternatively pursuant to the inherent jurisdiction of the Court, all actions, suits or proceedings of any nature whatsoever against the Company be and are hereby restrained until further order of the Court.

12. During the period of their appointment, any act required or authorized to be done by the Joint Provisional Liquidators may be done by any one or more of them.

13. This order was made at a hearing without notice to the respondent. There will be a further hearing in respect of the order on or before *29th January 2026* with a time estimate of 30 minutes, for directions only (**the Return Date**).

14. The Joint Provisional Liquidators are to file and serve a report within one clear day before the Return Date summarising steps taken, any immediate concerns and recommended next steps.

15. The Company is at liberty to apply to vary or discharge the order upon giving 72 hours' notice to the Applicant and the Joint Provisional Liquidators.

16. The Joint Provisional Liquidators are at liberty to apply to vary or discharge the order if the allegations set out above are not substantiated or for some other reason upon giving 72 hours' notice to the Applicant and the Company.

17.    The Applicant is not required to give an undertaking in damages.

18.    The costs of this Application be costs in the provisional liquidation.

19.    The Joint Provisional Liquidators are not required to pay or provide security.

BY THE COURT



_____
REGISTRAR

**Protocol for Consultation and Information-Sharing Between the Liquidators and the Attorney General**

This Protocol is annexed to and forms part of the Order of the BVI Commercial Court (the **Court**) made on 9 January 2026 in Claim No. BVIHC (COM) 2026/0020 **("the Order")**. Capitalised terms bear the meanings given in the Order unless the context otherwise requires.

### 1. Purpose and status

This Protocol sets out a consultative framework between the Liquidators and the Attorney General to facilitate effective cooperation in the public interest, including in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of Respectful Steed Limited **("the Company")** For the avoidance of doubt, this Protocol is made pursuant to and with the approval of the Court, and disclosures made in good faith in accordance with this Protocol are deemed authorised by the Court.

### 2. Guiding principles

The Liquidators shall remain independent and act in the interests of the Company's creditors as a whole and the integrity of the winding up. The Attorney General's participation under this Protocol is consultative and does not fetter the Liquidators' statutory powers or duties, nor the Attorney General's independent functions. Both parties shall conduct themselves with candour, proportionality and respect for legal professional privilege, confidentiality, data protection and rule of law.

Nothing in this Protocol is intended to limit or restrict the ability of the Company's stakeholders to constitute a creditors' committee.

### 3. Definitions

- Attorney General means the Attorney General of the Virgin Islands and includes designated officers acting on the Attorney General's behalf for the purposes of this Protocol.
- The Company means Respectful Steed Limited which is the subject of the Order.
- Confidential Information means non-public information concerning the Company, the liquidation, related investigations, counterparties and assets, including personal data and material subject to confidentiality obligations owed by the Company or the Liquidators.

- Privileged Material means material subject to legal professional privilege or litigation privilege, or any analogous protection recognised by the Court.

### 4. Appointment and representation

The Attorney General shall constitute a consultative committee and may nominate up to three designated representatives for liaison with the Liquidators, with at least one senior contact identified (the **AGs Committee**). The Attorney General may change representatives on notice to the Liquidators.

The AGs Committee shall serve alongside any creditors' committee (if one is formed), and the Liquidators shall have equal regard to the views expressed by both the AGs Committee and the creditors' committee (if formed).

### 5. Consultation framework

5.1 Meetings. The Liquidators shall convene regular consultation meetings (in person or virtual) with the Attorney General not less than once per quarter, and ad hoc meetings as reasonably required. The Liquidators shall chair meetings and circulate a brief agenda in advance. These meetings may be consolidated with meetings of the creditors' committee (if one is formed).

5.2 Attendance. The Liquidators may invite professional advisers and members of the liquidation team. The Attorney General may invite relevant law enforcement or regulatory personnel, provided confidentiality undertakings are observed.

5.3 Minutes. The Liquidators shall keep concise minutes recording attendees, topics discussed and any agreed actions, subject to privilege and sensitivity redactions where appropriate.

### 6. Reporting

6.1 Periodic reports. The Liquidators shall provide to the Attorney General a confidential report not less than once per quarter covering, to the extent appropriate and not prejudicial to the estate:

- status of asset identification, recovery actions and investigations;
- key applications to the Court and outcomes;
- known factual matters relevant to potential criminal offences or regulatory breaches; and
- anticipated steps in the next period.

6.2 Urgent matters. The Liquidators shall promptly notify the Attorney General of matters reasonably judged to be urgent, including (but not limited to) risk of dissipation, destruction of records, or flight of suspects.

6.3 Templates. The Liquidators may adopt reporting templates and may omit details where disclosure would prejudice recoveries, negotiations, privilege, or legal processes.

### 7. Information requests by the Attorney General

7.1 Scope. The Attorney General may request access to documents, data and information reasonably required in relation to the Company or related persons or entities.

7.2 Process. Requests shall be made in writing, identifying the categories sought, the purpose, and any timing sensitivities. The Liquidators shall acknowledge within 3 business days and respond within a reasonable time, taking into account volume, complexity and competing duties.

7.3 Reasonableness and sequencing. The Liquidators may propose reasonable narrowing, staging or alternative formats, including summaries or redactions, to protect privilege, confidentiality, commercial sensitivity, or the integrity of civil recovery efforts.

7.4 Court supervision. If disagreement arises which cannot be resolved promptly, either party may seek directions from the Court on short notice.

### 8. Authorised disclosures and gateways

8.1 Court authorisation. Subject to sections 9–12, the Liquidators are authorised by the Court to disclose Confidential Information to the Attorney General for the limited purposes of regulatory or criminal investigation and prosecution, restraint, confiscation, forfeiture, mutual legal assistance, and related protective measures, and to receive Confidential Information from the Attorney General for liquidation purposes.

8.2 Statutory gateways. To the extent any statutory or regulatory gateway is required for disclosure or use of information, the parties shall cooperate to identify and use such gateways, including by seeking further directions or orders of the Court as needed.

8.3 No breach. Disclosures made in good faith under this Protocol shall not constitute a breach of duty, confidence, data protection laws, or contractual restrictions binding on the Company, and the Liquidators shall have the protection of the Court accordingly.

### 9. Privilege and confidentiality

9.1 Privilege preserved. The Liquidators shall not be required to disclose Privileged Material. Any inadvertent disclosure shall not constitute a waiver of privilege, and the Attorney General shall promptly return or delete such material and refrain from review or use upon notification.

9.2 Common interest. Where appropriate, and subject to legal advice, the parties may agree that certain exchanges are made on a common interest or joint interest basis to preserve privilege.

9.3 Use restrictions. The Attorney General shall maintain Confidential Information in confidence and use it solely for lawful law enforcement, regulatory and public interest purposes. Dissemination shall be limited to personnel with a need to know who are bound by equivalent confidentiality obligations.

9.4 Protective measures. Upon reasonable request, the Attorney General shall implement protective measures for sensitive materials, including secure handling protocols, restricted circulation, and, where appropriate, applications to seal or redact in criminal or regulatory proceedings to avoid prejudice to the estate.

### 10. Data protection and personal data

The parties shall process personal data lawfully, fairly and securely, with appropriate technical and organisational measures. Where cross-border transfers are contemplated, the parties shall cooperate to ensure a lawful transfer mechanism and, where necessary, seek the Court's directions.

### 11. Preservation and holds

The Liquidators shall implement and maintain appropriate document preservation measures in respect of the Company's records. The Attorney General shall notify the Liquidators of any preservation requirements arising from criminal investigations or proceedings, including anticipated requests or production deadlines, to allow timely compliance.

### 12. Coordination to avoid prejudice and duplication

The parties shall coordinate to minimise prejudice to the estate, civil recoveries and criminal processes, including by sequencing steps, agreeing standstills where appropriate, and consulting on timing of public filings or applications likely to have cross-impact. The Liquidators' primary duty to protect and realise assets shall be respected.

### 13. Public statements and confidentiality vis-à-vis third parties

Public statements about the Company, the liquidation or related investigations shall be coordinated to the extent practicable. The Liquidators may make statements required by law or the Court or necessary to protect assets or correct the market. The Attorney General may make statements required in the exercise of public functions, having regard to the Liquidators' requests to withhold sensitive details.

### 14. Costs and resourcing

The reasonable costs incurred by the Liquidators in complying with this Protocol, including costs of retrieval, review, redaction, secure transmission and liaison, are costs of the liquidation. Where requests impose material incremental burdens, the parties shall confer on pragmatic staging or cost-efficient approaches and, failing agreement, may seek the Court's directions.

### 15. Non-fetter and independence

Nothing in this Protocol fetters or derogates from the Liquidators' statutory powers and duties, or from the Attorney General's independent decision-making. The consultative role does not confer any power of direction over the Liquidators.

### 16. Conflicts and recusals

If a conflict of interest arises affecting any representative, that person shall recuse from relevant consultations. The parties shall notify each other of any material conflicts that could affect the integrity of cooperation, and may seek the Court's directions where necessary.

### 17. International cooperation

Where the Attorney General is engaged in mutual legal assistance, or cooperation with foreign authorities, the parties shall consult on scope and timing to ensure that disclosures and steps taken are consistent

with this Protocol and do not unduly prejudice the liquidation or foreign proceedings. The Attorney General shall take reasonable steps, where feasible, to secure protective handling by foreign authorities of any Confidential Information provided.

### 18. Records and audit trail

The Liquidators shall maintain a record of disclosures made to the Attorney General under this Protocol sufficient to evidence compliance, subject to privilege. The Attorney General shall, upon reasonable request, confirm receipt and any onward lawful use or disclosure to other agencies.

### 19. Duration, variation and termination

This Protocol takes effect upon the making of the Order and continues until the earlier of dissolution of the Company or further order of the Court. It may be varied by written agreement between the Liquidators and the Attorney General approved by the Court, or otherwise by order of the Court. The Court may suspend or terminate this Protocol upon application by either party.

### 20. Notices

Formal notices under this Protocol shall be in writing and sent to the designated contacts of each party as notified from time to time. Operational communications may be conducted by secure electronic means.

### 21. Dispute resolution and directions

Any dispute arising under or in connection with this Protocol shall, in the first instance, be addressed through consultation. Failing prompt resolution, either party may apply to the Court for directions on short notice.

### 22. Safe harbour

No act or omission of the Liquidators done in good faith and with reasonable care in reliance on this Protocol, or any directions of the Court, shall give rise to personal liability. The Liquidators shall be entitled to the usual indemnities out of the assets of the Company.

**Schedule 1 – Illustrative categories of information for disclosure**

A. Corporate records: constitutional documents, registers, organisational charts, officer and registered agent details.

B. Financial records: bank statements, ledgers, invoices, loan agreements, asset registers, related party transactions.

C. Communications: selected emails and messaging data from corporate systems relevant to suspected criminality.

D. Counterparty materials: KYC files, contracts, correspondence with intermediaries and fiduciaries.

E. Investigation work product: non-privileged factual memoranda, forensic accounting outputs, chain-of-custody logs.

F. Court materials: statements of affairs, affidavits, pleadings and orders (including sealed materials as authorised).

G. Asset tracing: non-privileged tracing schedules, dashboards, and summaries of restraints or recovery actions.

H. Preservation: litigation hold notices and repositories metadata (to the extent disclosure assists law enforcement).

Disclosure of any category remains subject to sections 9–12 of the Protocol.

**Schedule 2 – Template quarterly consultation report (confidential)**

1. Executive summary and key developments.

2. Asset position: discoveries, realisations, restraints and pending recovery actions.

3. Investigations: factual findings, cooperating witnesses, outstanding enquiries.

4. Legal proceedings: applications filed or contemplated; coordination with foreign courts.

5. Law enforcement interface: requests received/made; disclosures; pending deadlines.

6. Risks and mitigants: dissipation risks, data loss risks, reputational issues.

7. Next steps and proposed timetable; matters requiring Attorney General input.

8. Appendices: schedules of documents disclosed; privilege log (if applicable).

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0020

BETWEEN:

IN THE MATTER OF RESPECTFUL STEED LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

Applicant

-v-

RESPECTFUL STEED LIMITED

Respondent

---

**ORDER ON APPLICATION FOR**
**JOINT PROVISIONAL LIQUIDATORS**

---



O'Neal
Webster

Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 I Fax: (284) 393 5805
www.onealwebster.com



**Submitted Date:13/01/2026 16:14**

**Filed Date:14/01/2026 08:30**

**Fees Paid:0.00**



**Case Number :BVIHCOM2026/0021**



**FILED**

**HIGH COURT**

**TERRITORY OF THE VIRGIN ISLANDS**

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0021

**Submitted Date:12/01/2026 13:42**

**Filed Date:12/01/2026 13:42**

**Fees Paid:0.00**

BETWEEN:

IN THE MATTER OF RETAIN PROSPER LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

Applicant

-v-

RETAIN PROSPER LIMITED

Respondent

---

## ORDER APPLICATION FOR JOINT PROVISIONAL LIQUIDATORS

---

BEFORE:    THE HONOURABLE JUSTICE

DATED:    THE 9TH DAY OF JANUARY, 2026

ENTERED:    THE *12th* DAY OF  JANUARY, 2026

### PENAL NOTICE

The effect of this Order is that the directors, former directors, office holders and former office holders of the Respondent, RETAIN PROSPER LIMITED ("the Company") are replaced by the joint provisional liquidators and that the directors, former directors, office holders and former office holders are prohibited from taking any action in relation to the Company's affairs without prior consent of the joint provisional liquidators.

If you, the directors, former directors, office holders and former office holders of the Company fail to comply with the terms of this order, proceedings may be commenced against you for contempt of court and you may be liable to be imprisoned, fined or have your assets seized.

**This order must be complied with by any person affected by it upon whom it is served. Any other person who knows of this order and does anything which helps or permits the directors, former directors, office holders and/or former office holders of the Company to breach its terms may also be held to be in contempt of Court and may be imprisoned, fined or have their assets seized.**

**UPON THE ORDINARY APPLICATION** filed by the Applicant on 5 January 2026 seeking the appointment of James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110, Paul Pretlove and David Standish, both eligible overseas insolvency practitioner of Interpath Ltd, 10 Fleet Place, London EC4M 7RB, England as joint provisional liquidators of the Company pursuant to section 170 of the Insolvency Act 2003, ("**the Application**") coming on for hearing.

**AND UPON HEARING** Paul B. Dennis K.C. and with him Nadine Whyte Laing and Koya Ryan of O'Neal Webster for the Applicant.

**AND UPON** the Attorney General Dawn J. Smith being present.

**AND UPON** Mr. Paul Pretlove and Mr. James Drury, two of the proposed joint provisional liquidators being present.

**AND UPON READING** the Application, the originating application to appoint liquidators of the Company, the first affidavit of the Attorney General, the affidavit of Jeni-Lee Watson and the other documents on the Court file.

**AND UPON** the Application being heard ex parte.

**IT IS HEREBY ORDERED THAT:**

1. James Drury, Paul Pretlove and David Standish be appointed jointly and severally as provisional liquidators (the "**Joint Provisional Liquidators**") of the Company until further order.

2. The Joint Provisional Liquidators have the rights and powers of a liquidator to the extent necessary to maintain the value of the assets owned by the Company and to carry out the functions for which they are appointed.

3. In addition to the powers outlined in 2 above, the Joint Provisional Liquidators shall have the following specific powers which may be exercised without further sanction or intervention of this Honourable Court:

   a. to gain entry to the Company's premises and take possession of and preserve the books and records of the Company;

   b. to identify any assets which may remain in the possession or control of the Company, and to take such steps as may be necessary to protect any such assets from removal or dissipation;

   c. to seek the recognition (or its equivalent) of the appointment of the Joint Provisional Liquidators in the United States, United Kingdom, Singapore, Hong Kong, Taiwan Thailand and Cambodia or elsewhere for the purposes of securing, realising and remitting assets to the control of the Joint Provisional Liquidators and for the purpose of obtaining access to and control of the records of the Company;

   d. to commence, continue, discontinue or defend, including by way of counterclaim or similar response, any action or other legal proceedings in the name and on behalf of the Company in so far as necessary to protect the assets and information of the Company including:

      (i) issuing proceedings against the directors, former directors, office holders and former office holders of the Company, if so advised.

      (ii) intervening (if so advised) in ongoing proceedings which involve the Company and/or its directors, former directors, office holders and/or its former office holders.

   e. to vote the shares of the Company in order to prevent the dissipation of its assets.

   f. to carry on the business of the Company so far as may be necessary for its beneficial provisional liquidation;

   g. to take all necessary steps to obtain from any person documents or copy documents which belong to the Company or have been created or maintained on its behalf or which the Company has a right to obtain or inspect.

   h. to appoint an agent including a solicitor, or accountant to do any business that the Joint Provisional Liquidators are unable to do themselves in discharge of their duties, or which can be more conveniently done by an agent;

i. to investigate the affairs of the Company so far as necessary to protect and, if necessary, retrieve the assets and records of the Company;

j. to retain, manage and operate the existing bank accounts of the Company including, without limitation, the power to change, remove and replace the signatories of these accounts and, where necessary, to open new bank accounts;

k. The Joint Provisional Liquidators may draw down payments on account of their remuneration, expenses and disbursements from time to time at a rate of 80% of their time costs and 100% of their expenses and disbursements, subject to these being subsequently approved by the court, and in the event that such sums are not approved, the unapproved sums be repaid to the Company within 7 days;

l. to apply to the Court for directions concerning any matter arising out of the exercise of the above powers; and

m. to do all other things as may be incidental to the exercise of the above functions and powers.

n. to consult and share information with the Applicant to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company.

o. to cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4. The Joint Provisional Liquidators are authorised and directed to implement the protocol for consultation and information sharing between them and the Applicant in the draft which is attached hereto ("the Protocol").

5. Any disclosure of information by the Joint Provisional Liquidators to the Applicant made in good faith and in accordance with the Protocol shall be deemed authorised by the Court and shall not constitute a breach of duty, confidence, data protection obligations or contractual restrictions binding upon the Company.

6. The Joint Provisional Liquidators shall not be required to disclose material subject to legal professional privilege or litigation privilege.

7. The Joint Provisional Liquidators and the Applicant have liberty to apply on short notice for directions, variation or termination of the Protocol.

8. The costs of the provisional liquidation, including the proper fees and disbursements of the Joint Provisional Liquidators and the Applicant's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

9. The powers set out in paragraph 3 above are to the exclusion of any power exercised or purported to be exercised by any existing director of the Company in so far as such power concerns the affairs of the Company and its assets within the jurisdiction of the Virgin Islands.

10. Save as provided in paragraph 3 above the Joint Provisional Liquidators may not exercise any of the powers set out at Schedule 2 to the Insolvency Act, 2003 without sanction of the court.

11. Pursuant to section 174 of the Insolvency Act, 2003 alternatively pursuant to the inherent jurisdiction of the Court, all actions, suits or proceedings of any nature whatsoever against the Company be and are hereby restrained until further order of the Court.

12. During the period of their appointment, any act required or authorized to be done by the Joint Provisional Liquidators may be done by any one or more of them.

13. This order was made at a hearing without notice to the respondent. There will be a further hearing in respect of the order on or before *29ᵗʰ January 2026* with a time estimate of 30 minutes, for directions only (**the Return Date**).

14. The Joint Provisional Liquidators are to file and serve a report within one clear day before the Return Date summarising steps taken, any immediate concerns and recommended next steps.

15. The Company is at liberty to apply to vary or discharge the order upon giving 72 hours' notice to the Applicant and the Joint Provisional Liquidators.

16. The Joint Provisional Liquidators are at liberty to apply to vary or discharge the order if the allegations set out above are not substantiated or for some other reason upon giving 72 hours' notice to the Applicant and the Company.

17. The Applicant is not required to give an undertaking in damages.

18. The costs of this Application be costs in the provisional liquidation.

19. The Joint Provisional Liquidators are not required to pay or provide security.

BY THE COURT



REGISTRAR

**Protocol for Consultation and Information-Sharing Between the Liquidators and the Attorney General**

This Protocol is annexed to and forms part of the Order of the BVI Commercial Court (the **Court**) made on 9 January 2026 in Claim No. BVIHC (COM) 2026/0021 **("the Order")**. Capitalised terms bear the meanings given in the Order unless the context otherwise requires.

## 1. Purpose and status

This Protocol sets out a consultative framework between the Liquidators and the Attorney General to facilitate effective cooperation in the public interest, including in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of Retain Prosper Limited **("the Company")** For the avoidance of doubt, this Protocol is made pursuant to and with the approval of the Court, and disclosures made in good faith in accordance with this Protocol are deemed authorised by the Court.

## 2. Guiding principles

The Liquidators shall remain independent and act in the interests of the Company's creditors as a whole and the integrity of the winding up. The Attorney General's participation under this Protocol is consultative and does not fetter the Liquidators' statutory powers or duties, nor the Attorney General's independent functions. Both parties shall conduct themselves with candour, proportionality and respect for legal professional privilege, confidentiality, data protection and rule of law.

Nothing in this Protocol is intended to limit or restrict the ability of the Company's stakeholders to constitute a creditors' committee.

## 3. Definitions

- Attorney General means the Attorney General of the Virgin Islands and includes designated officers acting on the Attorney General's behalf for the purposes of this Protocol.
- The Company means Retain Prosper Limited which is the subject of the Order.
- Confidential Information means non-public information concerning the Company, the liquidation, related investigations, counterparties and assets, including personal data and material subject to confidentiality obligations owed by the Company or the Liquidators.

- Privileged Material means material subject to legal professional privilege or litigation privilege, or any analogous protection recognised by the Court.

### 4. Appointment and representation

The Attorney General shall constitute a consultative committee and may nominate up to three designated representatives for liaison with the Liquidators, with at least one senior contact identified (the **AGs Committee**). The Attorney General may change representatives on notice to the Liquidators.

The AGs Committee shall serve alongside any creditors' committee (if one is formed), and the Liquidators shall have equal regard to the views expressed by both the AGs Committee and the creditors' committee (if formed).

### 5. Consultation framework

5.1 Meetings. The Liquidators shall convene regular consultation meetings (in person or virtual) with the Attorney General not less than once per quarter, and ad hoc meetings as reasonably required. The Liquidators shall chair meetings and circulate a brief agenda in advance. These meetings may be consolidated with meetings of the creditors' committee (if one is formed).

5.2 Attendance. The Liquidators may invite professional advisers and members of the liquidation team. The Attorney General may invite relevant law enforcement or regulatory personnel, provided confidentiality undertakings are observed.

5.3 Minutes. The Liquidators shall keep concise minutes recording attendees, topics discussed and any agreed actions, subject to privilege and sensitivity redactions where appropriate.

### 6. Reporting

6.1 Periodic reports. The Liquidators shall provide to the Attorney General a confidential report not less than once per quarter covering, to the extent appropriate and not prejudicial to the estate:

- status of asset identification, recovery actions and investigations;
- key applications to the Court and outcomes;
- known factual matters relevant to potential criminal offences or regulatory breaches; and
- anticipated steps in the next period.

6.2 Urgent matters. The Liquidators shall promptly notify the Attorney General of matters reasonably judged to be urgent, including (but not limited to) risk of dissipation, destruction of records, or flight of suspects.

6.3 Templates. The Liquidators may adopt reporting templates and may omit details where disclosure would prejudice recoveries, negotiations, privilege, or legal processes.

### 7. Information requests by the Attorney General

7.1 Scope. The Attorney General may request access to documents, data and information reasonably required in relation to the Company or related persons or entities.

7.2 Process. Requests shall be made in writing, identifying the categories sought, the purpose, and any timing sensitivities. The Liquidators shall acknowledge within 3 business days and respond within a reasonable time, taking into account volume, complexity and competing duties.

7.3 Reasonableness and sequencing. The Liquidators may propose reasonable narrowing, staging or alternative formats, including summaries or redactions, to protect privilege, confidentiality, commercial sensitivity, or the integrity of civil recovery efforts.

7.4 Court supervision. If disagreement arises which cannot be resolved promptly, either party may seek directions from the Court on short notice.

### 8. Authorised disclosures and gateways

8.1 Court authorisation. Subject to sections 9–12, the Liquidators are authorised by the Court to disclose Confidential Information to the Attorney General for the limited purposes of regulatory or criminal investigation and prosecution, restraint, confiscation, forfeiture, mutual legal assistance, and related protective measures, and to receive Confidential Information from the Attorney General for liquidation purposes.

8.2 Statutory gateways. To the extent any statutory or regulatory gateway is required for disclosure or use of information, the parties shall cooperate to identify and use such gateways, including by seeking further directions or orders of the Court as needed.

8.3 No breach. Disclosures made in good faith under this Protocol shall not constitute a breach of duty, confidence, data protection laws, or contractual restrictions binding on the Company, and the Liquidators shall have the protection of the Court accordingly.

### 9. Privilege and confidentiality

9.1 Privilege preserved. The Liquidators shall not be required to disclose Privileged Material. Any inadvertent disclosure shall not constitute a waiver of privilege, and the Attorney General shall promptly return or delete such material and refrain from review or use upon notification.

9.2 Common interest. Where appropriate, and subject to legal advice, the parties may agree that certain exchanges are made on a common interest or joint interest basis to preserve privilege.

9.3 Use restrictions. The Attorney General shall maintain Confidential Information in confidence and use it solely for lawful law enforcement, regulatory and public interest purposes. Dissemination shall be limited to personnel with a need to know who are bound by equivalent confidentiality obligations.

9.4 Protective measures. Upon reasonable request, the Attorney General shall implement protective measures for sensitive materials, including secure handling protocols, restricted circulation, and, where appropriate, applications to seal or redact in criminal or regulatory proceedings to avoid prejudice to the estate.

### 10. Data protection and personal data

The parties shall process personal data lawfully, fairly and securely, with appropriate technical and organisational measures. Where cross-border transfers are contemplated, the parties shall cooperate to ensure a lawful transfer mechanism and, where necessary, seek the Court's directions.

### 11. Preservation and holds

The Liquidators shall implement and maintain appropriate document preservation measures in respect of the Company's records. The Attorney General shall notify the Liquidators of any preservation requirements arising from criminal investigations or proceedings, including anticipated requests or production deadlines, to allow timely compliance.

### 12. Coordination to avoid prejudice and duplication

The parties shall coordinate to minimise prejudice to the estate, civil recoveries and criminal processes, including by sequencing steps, agreeing standstills where appropriate, and consulting on timing of public filings or applications likely to have cross-impact. The Liquidators' primary duty to protect and realise assets shall be respected.

### 13. Public statements and confidentiality vis-à-vis third parties

Public statements about the Company, the liquidation or related investigations shall be coordinated to the extent practicable. The Liquidators may make statements required by law or the Court or necessary to protect assets or correct the market. The Attorney General may make statements required in the exercise of public functions, having regard to the Liquidators' requests to withhold sensitive details.

### 14. Costs and resourcing

The reasonable costs incurred by the Liquidators in complying with this Protocol, including costs of retrieval, review, redaction, secure transmission and liaison, are costs of the liquidation. Where requests impose material incremental burdens, the parties shall confer on pragmatic staging or cost-efficient approaches and, failing agreement, may seek the Court's directions.

### 15. Non-fetter and independence

Nothing in this Protocol fetters or derogates from the Liquidators' statutory powers and duties, or from the Attorney General's independent decision-making. The consultative role does not confer any power of direction over the Liquidators.

### 16. Conflicts and recusals

If a conflict of interest arises affecting any representative, that person shall recuse from relevant consultations. The parties shall notify each other of any material conflicts that could affect the integrity of cooperation, and may seek the Court's directions where necessary.

### 17. International cooperation

Where the Attorney General is engaged in mutual legal assistance, or cooperation with foreign authorities, the parties shall consult on scope and timing to ensure that disclosures and steps taken are consistent

with this Protocol and do not unduly prejudice the liquidation or foreign proceedings. The Attorney General shall take reasonable steps, where feasible, to secure protective handling by foreign authorities of any Confidential Information provided.

### 18. Records and audit trail

The Liquidators shall maintain a record of disclosures made to the Attorney General under this Protocol sufficient to evidence compliance, subject to privilege. The Attorney General shall, upon reasonable request, confirm receipt and any onward lawful use or disclosure to other agencies.

### 19. Duration, variation and termination

This Protocol takes effect upon the making of the Order and continues until the earlier of dissolution of the Company or further order of the Court. It may be varied by written agreement between the Liquidators and the Attorney General approved by the Court, or otherwise by order of the Court. The Court may suspend or terminate this Protocol upon application by either party.

### 20. Notices

Formal notices under this Protocol shall be in writing and sent to the designated contacts of each party as notified from time to time. Operational communications may be conducted by secure electronic means.

### 21. Dispute resolution and directions

Any dispute arising under or in connection with this Protocol shall, in the first instance, be addressed through consultation. Failing prompt resolution, either party may apply to the Court for directions on short notice.

### 22. Safe harbour

No act or omission of the Liquidators done in good faith and with reasonable care in reliance on this Protocol, or any directions of the Court, shall give rise to personal liability. The Liquidators shall be entitled to the usual indemnities out of the assets of the Company.

---

**Schedule 1 – Illustrative categories of information for disclosure**

- A. Corporate records: constitutional documents, registers, organisational charts, officer and registered agent details.

- B. Financial records: bank statements, ledgers, invoices, loan agreements, asset registers, related party transactions.

- C. Communications: selected emails and messaging data from corporate systems relevant to suspected criminality.

- D. Counterparty materials: KYC files, contracts, correspondence with intermediaries and fiduciaries.

- E. Investigation work product: non-privileged factual memoranda, forensic accounting outputs, chain-of-custody logs.

- F. Court materials: statements of affairs, affidavits, pleadings and orders (including sealed materials as authorised).

- G. Asset tracing: non-privileged tracing schedules, dashboards, and summaries of restraints or recovery actions.

- H. Preservation: litigation hold notices and repositories metadata (to the extent disclosure assists law enforcement).

Disclosure of any category remains subject to sections 9–12 of the Protocol.

---

**Schedule 2 – Template quarterly consultation report (confidential)**

1. Executive summary and key developments.

2. Asset position: discoveries, realisations, restraints and pending recovery actions.

3. Investigations: factual findings, cooperating witnesses, outstanding enquiries.

4. Legal proceedings: applications filed or contemplated; coordination with foreign courts.

5. Law enforcement interface: requests received/made; disclosures; pending deadlines.

6. Risks and mitigants: dissipation risks, data loss risks, reputational issues.

7. Next steps and proposed timetable; matters requiring Attorney General input.

8. Appendices: schedules of documents disclosed; privilege log (if applicable).

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0021

BETWEEN:

IN THE MATTER OF RETAIN PROSPER LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF

THE LAWS OF THE VIRGIN ISLANDS.

 THE ATTORNEY GENERAL

Applicant

-v-

RETAIN PROSPER LIMITED

Respondent

---

## ORDER ON APPLICATION FOR
## JOINT PROVISIONAL LIQUIDATORS

---



O'Neal
Webster
Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 l Fax: (284) 393 5805
www.onealwebster.com



**Submitted Date:13/01/2026 10:26**

**Filed Date:13/01/2026 10:30**

**Fees Paid:0.00**



**Case Number :BVIHCOM2026/0022**

**FILED**
**HIGH COURT**
TERRITORY OF
THE VIRGIN ISLANDS

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0022

**Submitted Date:12/01/2026 13:43**

**Filed Date:12/01/2026 13:43**

**Fees Paid:0.00**

BETWEEN:

IN THE MATTER OF ROBUST HARMONY LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

Applicant

-v-

ROBUST HARMONY LIMITED

Respondent

---

ORDER APPLICATION FOR JOINT PROVISIONAL LIQUIDATORS

---

BEFORE:    THE HONOURABLE JUSTICE

DATED:      THE 9TH DAY OF JANUARY, 2026

ENTERED:   THE 12 DAY OF JANUARY, 2026

## PENAL NOTICE

The effect of this Order is that the directors, former directors, office holders and former office holders of the Respondent, ROBUST HARMONY LIMITED ("the Company") are replaced by the joint provisional liquidators and that the directors, former directors, office holders and former office holders are prohibited from taking any action in relation to the Company's affairs without prior consent of the joint provisional liquidators.

If you, the directors, former directors, office holders and former office holders of the Company fail to comply with the terms of this order, proceedings may be commenced against you for contempt of court and you may be liable to be imprisoned, fined or have your assets seized.

**This order must be complied with by any person affected by it upon whom it is served. Any other person who knows of this order and does anything which helps or permits the directors, former directors, office holders and/or former office holders of the Company to breach its terms may also be held to be in contempt of Court and may be imprisoned, fined or have their assets seized.**

**UPON THE ORDINARY APPLICATION** filed by the Applicant on 5 January 2026 seeking the appointment of James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110, Paul Pretlove and David Standish, both eligible overseas insolvency practitioner of Interpath Ltd, 10 Fleet Place, London EC4M 7RB, England as joint provisional liquidators of the Company pursuant to section 170 of the Insolvency Act 2003, ("the Application") coming on for hearing.

**AND UPON HEARING** Paul B. Dennis K.C. and with him Nadine Whyte Laing and Koya Ryan of O'Neal Webster for the Applicant.

**AND UPON** the Attorney General Dawn J. Smith being present.

**AND UPON** Mr. Paul Pretlove and Mr. James Drury, two of the proposed joint provisional liquidators being present.

**AND UPON READING** the Application, the originating application to appoint liquidators of the Company, the first affidavit of the Attorney General, the affidavit of Jeni-Lee Watson and the other documents on the Court file.

**AND UPON** the Application being heard ex parte.

**IT IS HEREBY ORDERED THAT:**

1. James Drury, Paul Pretlove and David Standish be appointed jointly and severally as provisional liquidators (the **"Joint Provisional Liquidators"**) of the Company until further order.

2. The Joint Provisional Liquidators have the rights and powers of a liquidator to the extent necessary to maintain the value of the assets owned by the Company and to carry out the functions for which they are appointed.

3. In addition to the powers outlined in 2 above, the Joint Provisional Liquidators shall have the following specific powers which may be exercised without further sanction or intervention of this Honourable Court:

   a. to gain entry to the Company's premises and take possession of and preserve the books and records of the Company;

   b. to identify any assets which may remain in the possession or control of the Company, and to take such steps as may be necessary to protect any such assets from removal or dissipation;

   c. to seek the recognition (or its equivalent) of the appointment of the Joint Provisional Liquidators in the United States, United Kingdom, Singapore, Hong Kong, Taiwan Thailand and Cambodia or elsewhere for the purposes of securing, realising and remitting assets to the control of the Joint Provisional Liquidators and for the purpose of obtaining access to and control of the records of the Company;

   d. to commence, continue, discontinue or defend, including by way of counterclaim or similar response, any action or other legal proceedings in the name and on behalf of the Company in so far as necessary to protect the assets and information of the Company including:

      (i) issuing proceedings against the directors, former directors, office holders and former office holders of the Company, if so advised.

      (ii) intervening (if so advised) in ongoing proceedings which involve the Company and/or its directors, former directors, office holders and/or its former office holders.

   e. to vote the shares of the Company in order to prevent the dissipation of its assets.

   f. to carry on the business of the Company so far as may be necessary for its beneficial provisional liquidation;

   g. to take all necessary steps to obtain from any person documents or copy documents which belong to the Company or have been created or maintained on its behalf or which the Company has a right to obtain or inspect.

   h. to appoint an agent including a solicitor, or accountant to do any business that the Joint Provisional Liquidators are unable to do themselves in discharge of their duties, or which can be more conveniently done by an agent;

i.    to investigate the affairs of the Company so far as necessary to protect and, if necessary, retrieve the assets and records of the Company;

j.    to retain, manage and operate the existing bank accounts of the Company including, without limitation, the power to change, remove and replace the signatories of these accounts and, where necessary, to open new bank accounts;

k.    The Joint Provisional Liquidators may draw down payments on account of their remuneration, expenses and disbursements from time to time at a rate of 80% of their time costs and 100% of their expenses and disbursements, subject to these being subsequently approved by the court, and in the event that such sums are not approved, the unapproved sums be repaid to the Company within 7 days;

l.    to apply to the Court for directions concerning any matter arising out of the exercise of the above powers; and

m.    to do all other things as may be incidental to the exercise of the above functions and powers.

n.    to consult and share information with the Applicant to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company.

o.    to cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4.    The Joint Provisional Liquidators are authorised and directed to implement the protocol for consultation and information sharing between them and the Applicant in the draft which is attached hereto ("the Protocol").

5.    Any disclosure of information by the Joint Provisional Liquidators to the Applicant made in good faith and in accordance with the Protocol shall be deemed authorised by the Court and shall not constitute a breach of duty, confidence, data protection obligations or contractual restrictions binding upon the Company.

6.    The Joint Provisional Liquidators shall not be required to disclose material subject to legal professional privilege or litigation privilege.

7. The Joint Provisional Liquidators and the Applicant have liberty to apply on short notice for directions, variation or termination of the Protocol.

8. The costs of the provisional liquidation, including the proper fees and disbursements of the Joint Provisional Liquidators and the Applicant's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

9. The powers set out in paragraph 3 above are to the exclusion of any power exercised or purported to be exercised by any existing director of the Company in so far as such power concerns the affairs of the Company and its assets within the jurisdiction of the Virgin Islands.

10. Save as provided in paragraph 3 above the Joint Provisional Liquidators may not exercise any of the powers set out at Schedule 2 to the Insolvency Act, 2003 without sanction of the court.

11. Pursuant to section 174 of the Insolvency Act, 2003 alternatively pursuant to the inherent jurisdiction of the Court, all actions, suits or proceedings of any nature whatsoever against the Company be and are hereby restrained until further order of the Court.

12. During the period of their appointment, any act required or authorized to be done by the Joint Provisional Liquidators may be done by any one or more of them.

13. This order was made at a hearing without notice to the respondent. There will be a further hearing in respect of the order on or before 29 January 2026 with a time estimate of 30 minutes, for directions only (**the Return Date**).

14. The Joint Provisional Liquidators are to file and serve a report within one clear day before the Return Date summarising steps taken, any immediate concerns and recommended next steps.

15. The Company is at liberty to apply to vary or discharge the order upon giving 72 hours' notice to the Applicant and the Joint Provisional Liquidators.

16. The Joint Provisional Liquidators are at liberty to apply to vary or discharge the order if the allegations set out above are not substantiated or for some other reason upon giving 72 hours' notice to the Applicant and the Company.

17.   The Applicant is not required to give an undertaking in damages.

18.   The costs of this Application be costs in the provisional liquidation.

19.   The Joint Provisional Liquidators are not required to pay or provide security.

BY THE COURT

REGISTRAR

**Protocol for Consultation and Information-Sharing Between the Liquidators and the Attorney General**

This Protocol is annexed to and forms part of the Order of the BVI Commercial Court (the **Court**) made on 9 January 2026 in Claim No. BVIHC (COM) 2026/0022 **("the Order")**. Capitalised terms bear the meanings given in the Order unless the context otherwise requires.

## 1. Purpose and status

This Protocol sets out a consultative framework between the Liquidators and the Attorney General to facilitate effective cooperation in the public interest, including in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of Robust Harmony Limited **("the Company")** For the avoidance of doubt, this Protocol is made pursuant to and with the approval of the Court, and disclosures made in good faith in accordance with this Protocol are deemed authorised by the Court.

## 2. Guiding principles

The Liquidators shall remain independent and act in the interests of the Company's creditors as a whole and the integrity of the winding up. The Attorney General's participation under this Protocol is consultative and does not fetter the Liquidators' statutory powers or duties, nor the Attorney General's independent functions. Both parties shall conduct themselves with candour, proportionality and respect for legal professional privilege, confidentiality, data protection and rule of law.

Nothing in this Protocol is intended to limit or restrict the ability of the Company's stakeholders to constitute a creditors' committee.

## 3. Definitions

- Attorney General means the Attorney General of the Virgin Islands and includes designated officers acting on the Attorney General's behalf for the purposes of this Protocol.
- The Company means Robust Harmony Limited which is the subject of the Order.
- Confidential Information means non-public information concerning the Company, the liquidation, related investigations, counterparties and assets, including personal data and material subject to confidentiality obligations owed by the Company or the Liquidators.

- Privileged Material means material subject to legal professional privilege or litigation privilege, or any analogous protection recognised by the Court.

### 4. Appointment and representation

The Attorney General shall constitute a consultative committee and may nominate up to three designated representatives for liaison with the Liquidators, with at least one senior contact identified (the **AGs Committee**). The Attorney General may change representatives on notice to the Liquidators.

The AGs Committee shall serve alongside any creditors' committee (if one is formed), and the Liquidators shall have equal regard to the views expressed by both the AGs Committee and the creditors' committee (if formed).

### 5. Consultation framework

5.1 Meetings. The Liquidators shall convene regular consultation meetings (in person or virtual) with the Attorney General not less than once per quarter, and ad hoc meetings as reasonably required. The Liquidators shall chair meetings and circulate a brief agenda in advance. These meetings may be consolidated with meetings of the creditors' committee (if one is formed).

5.2 Attendance. The Liquidators may invite professional advisers and members of the liquidation team. The Attorney General may invite relevant law enforcement or regulatory personnel, provided confidentiality undertakings are observed.

5.3 Minutes. The Liquidators shall keep concise minutes recording attendees, topics discussed and any agreed actions, subject to privilege and sensitivity redactions where appropriate.

### 6. Reporting

6.1 Periodic reports. The Liquidators shall provide to the Attorney General a confidential report not less than once per quarter covering, to the extent appropriate and not prejudicial to the estate:

- status of asset identification, recovery actions and investigations;
- key applications to the Court and outcomes;
- known factual matters relevant to potential criminal offences or regulatory breaches; and
- anticipated steps in the next period.

6.2 Urgent matters. The Liquidators shall promptly notify the Attorney General of matters reasonably judged to be urgent, including (but not limited to) risk of dissipation, destruction of records, or flight of suspects.

6.3 Templates. The Liquidators may adopt reporting templates and may omit details where disclosure would prejudice recoveries, negotiations, privilege, or legal processes.

### 7. Information requests by the Attorney General

7.1 Scope. The Attorney General may request access to documents, data and information reasonably required in relation to the Company or related persons or entities.

7.2 Process. Requests shall be made in writing, identifying the categories sought, the purpose, and any timing sensitivities. The Liquidators shall acknowledge within 3 business days and respond within a reasonable time, taking into account volume, complexity and competing duties.

7.3 Reasonableness and sequencing. The Liquidators may propose reasonable narrowing, staging or alternative formats, including summaries or redactions, to protect privilege, confidentiality, commercial sensitivity, or the integrity of civil recovery efforts.

7.4 Court supervision. If disagreement arises which cannot be resolved promptly, either party may seek directions from the Court on short notice.

### 8. Authorised disclosures and gateways

8.1 Court authorisation. Subject to sections 9–12, the Liquidators are authorised by the Court to disclose Confidential Information to the Attorney General for the limited purposes of regulatory or criminal investigation and prosecution, restraint, confiscation, forfeiture, mutual legal assistance, and related protective measures, and to receive Confidential Information from the Attorney General for liquidation purposes.

8.2 Statutory gateways. To the extent any statutory or regulatory gateway is required for disclosure or use of information, the parties shall cooperate to identify and use such gateways, including by seeking further directions or orders of the Court as needed.

8.3 No breach. Disclosures made in good faith under this Protocol shall not constitute a breach of duty, confidence, data protection laws, or contractual restrictions binding on the Company, and the Liquidators shall have the protection of the Court accordingly.

### 9. Privilege and confidentiality

9.1 Privilege preserved. The Liquidators shall not be required to disclose Privileged Material. Any inadvertent disclosure shall not constitute a waiver of privilege, and the Attorney General shall promptly return or delete such material and refrain from review or use upon notification.

9.2 Common interest. Where appropriate, and subject to legal advice, the parties may agree that certain exchanges are made on a common interest or joint interest basis to preserve privilege.

9.3 Use restrictions. The Attorney General shall maintain Confidential Information in confidence and use it solely for lawful law enforcement, regulatory and public interest purposes. Dissemination shall be limited to personnel with a need to know who are bound by equivalent confidentiality obligations.

9.4 Protective measures. Upon reasonable request, the Attorney General shall implement protective measures for sensitive materials, including secure handling protocols, restricted circulation, and, where appropriate, applications to seal or redact in criminal or regulatory proceedings to avoid prejudice to the estate.

### 10. Data protection and personal data

The parties shall process personal data lawfully, fairly and securely, with appropriate technical and organisational measures. Where cross-border transfers are contemplated, the parties shall cooperate to ensure a lawful transfer mechanism and, where necessary, seek the Court's directions.

### 11. Preservation and holds

The Liquidators shall implement and maintain appropriate document preservation measures in respect of the Company's records. The Attorney General shall notify the Liquidators of any preservation requirements arising from criminal investigations or proceedings, including anticipated requests or production deadlines, to allow timely compliance.

### 12. Coordination to avoid prejudice and duplication

The parties shall coordinate to minimise prejudice to the estate, civil recoveries and criminal processes, including by sequencing steps, agreeing standstills where appropriate, and consulting on timing of public filings or applications likely to have cross-impact. The Liquidators' primary duty to protect and realise assets shall be respected.

### 13. Public statements and confidentiality vis-à-vis third parties

Public statements about the Company, the liquidation or related investigations shall be coordinated to the extent practicable. The Liquidators may make statements required by law or the Court or necessary to protect assets or correct the market. The Attorney General may make statements required in the exercise of public functions, having regard to the Liquidators' requests to withhold sensitive details.

### 14. Costs and resourcing

The reasonable costs incurred by the Liquidators in complying with this Protocol, including costs of retrieval, review, redaction, secure transmission and liaison, are costs of the liquidation. Where requests impose material incremental burdens, the parties shall confer on pragmatic staging or cost-efficient approaches and, failing agreement, may seek the Court's directions.

### 15. Non-fetter and independence

Nothing in this Protocol fetters or derogates from the Liquidators' statutory powers and duties, or from the Attorney General's independent decision-making. The consultative role does not confer any power of direction over the Liquidators.

### 16. Conflicts and recusals

If a conflict of interest arises affecting any representative, that person shall recuse from relevant consultations. The parties shall notify each other of any material conflicts that could affect the integrity of cooperation, and may seek the Court's directions where necessary.

### 17. International cooperation

Where the Attorney General is engaged in mutual legal assistance, or cooperation with foreign authorities, the parties shall consult on scope and timing to ensure that disclosures and steps taken are consistent with this Protocol and do not unduly prejudice the liquidation or foreign proceedings. The Attorney

General shall take reasonable steps, where feasible, to secure protective handling by foreign authorities of any Confidential Information provided.

### 18. Records and audit trail

The Liquidators shall maintain a record of disclosures made to the Attorney General under this Protocol sufficient to evidence compliance, subject to privilege. The Attorney General shall, upon reasonable request, confirm receipt and any onward lawful use or disclosure to other agencies.

### 19. Duration, variation and termination

This Protocol takes effect upon the making of the Order and continues until the earlier of dissolution of the Company or further order of the Court. It may be varied by written agreement between the Liquidators and the Attorney General approved by the Court, or otherwise by order of the Court. The Court may suspend or terminate this Protocol upon application by either party.

### 20. Notices

Formal notices under this Protocol shall be in writing and sent to the designated contacts of each party as notified from time to time. Operational communications may be conducted by secure electronic means.

### 21. Dispute resolution and directions

Any dispute arising under or in connection with this Protocol shall, in the first instance, be addressed through consultation. Failing prompt resolution, either party may apply to the Court for directions on short notice.

### 22. Safe harbour

No act or omission of the Liquidators done in good faith and with reasonable care in reliance on this Protocol, or any directions of the Court, shall give rise to personal liability. The Liquidators shall be entitled to the usual indemnities out of the assets of the Company.

**Schedule 1 – Illustrative categories of information for disclosure**

A. Corporate records: constitutional documents, registers, organisational charts, officer and registered agent details.

B. Financial records: bank statements, ledgers, invoices, loan agreements, asset registers, related party transactions.

C. Communications: selected emails and messaging data from corporate systems relevant to suspected criminality.

D. Counterparty materials: KYC files, contracts, correspondence with intermediaries and fiduciaries.

E. Investigation work product: non-privileged factual memoranda, forensic accounting outputs, chain-of-custody logs.

F. Court materials: statements of affairs, affidavits, pleadings and orders (including sealed materials as authorised).

G. Asset tracing: non-privileged tracing schedules, dashboards, and summaries of restraints or recovery actions.

H. Preservation: litigation hold notices and repositories metadata (to the extent disclosure assists law enforcement).

Disclosure of any category remains subject to sections 9–12 of the Protocol.

**Schedule 2 – Template quarterly consultation report (confidential)**

1. Executive summary and key developments.

2. Asset position: discoveries, realisations, restraints and pending recovery actions.

3. Investigations: factual findings, cooperating witnesses, outstanding enquiries.

4. Legal proceedings: applications filed or contemplated; coordination with foreign courts.

5. Law enforcement interface: requests received/made; disclosures; pending deadlines.

6. Risks and mitigants: dissipation risks, data loss risks, reputational issues.

7. Next steps and proposed timetable; matters requiring Attorney General input.

8. Appendices: schedules of documents disclosed; privilege log (if applicable).

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0022

BETWEEN:

IN THE MATTER OF ROBUST HARMONY LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF

THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

Applicant

-v-

ROBUST HARMONY LIMITED

Respondent

---

**ORDER ON APPLICATION FOR
JOINT PROVISIONAL LIQUIDATORS**

---



Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 l Fax: (284) 393 5805
www.onealwebster.com

**Case Number :BVIHCOM2026/0023**



**Submitted Date:13/01/2026 16:28**

**Filed Date:14/01/2026 08:30**

**Fees Paid:0.00**



**Case Number :BVIHCOM2026/0023**

FILED
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS

Submitted Date:12/01/2026 13:45

Filed Date:12/01/2026 13:45

Fees Paid:0.00

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0023

BETWEEN:

IN THE MATTER OF SIMPLY ADVANCED LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

Applicant

-v-

SIMPLY ADVANCED LIMITED

Respondent

---

## ORDER APPLICATION FOR JOINT PROVISIONAL LIQUIDATORS

---

BEFORE:      THE HONOURABLE JUSTICE ABBAS MITHANI

DATED:       THE 9TH DAY OF JANUARY, 2026

ENTERED:    THE 12th DAY OF  JANUARY, 2026

### PENAL NOTICE

The effect of this Order is that the directors, former directors, office holders and former office holders of the Respondent, SIMPLY ADVANCED LIMITED ("the Company") are replaced by the joint provisional liquidators and that the directors, former directors, office holders and former office holders are prohibited from taking any action in relation to the Company's affairs without prior consent of the joint provisional liquidators.

If you, the directors, former directors, office holders and former office holders of the Company fail to comply with the terms of this order, proceedings may be commenced against you for contempt of court and you may be liable to be imprisoned, fined or have your assets seized.

**This order must be complied with by any person affected by it upon whom it is served. Any other person who knows of this order and does anything which helps or permits the directors, former directors, office holders and/or former office holders of the Company to breach its terms may also be held to be in contempt of Court and may be imprisoned, fined or have their assets seized.**

**UPON THE ORDINARY APPLICATION** filed by the Applicant on 5 January 2026 seeking the appointment of James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110, Paul Pretlove and David Standish, both eligible overseas insolvency practitioner of Interpath Ltd, 10 Fleet Place, London EC4M 7RB, England as joint provisional liquidators of the Company pursuant to section 170 of the Insolvency Act 2003, ("**the Application**") coming on for hearing.

**AND UPON HEARING** Paul B. Dennis K.C. and with him Nadine Whyte Laing and Koya Ryan of O'Neal Webster for the Applicant.

**AND UPON** the Attorney General Dawn J. Smith being present.

**AND UPON** Mr. Paul Pretlove and Mr. James Drury, two of the proposed joint provisional liquidators being present.

**AND UPON READING** the Application, the originating application to appoint liquidators of the Company, the first affidavit of the Attorney General, the affidavit of Jeni-Lee Watson and the other documents on the Court file.

**AND UPON** the Application being heard ex parte.

**IT IS HEREBY ORDERED THAT:**

1.  James Drury, Paul Pretlove and David Standish be appointed jointly and severally as provisional liquidators (the **"Joint Provisional Liquidators"**) of the Company until further order.

2.  The Joint Provisional Liquidators have the rights and powers of a liquidator to the extent necessary to maintain the value of the assets owned by the Company and to carry out the functions for which they are appointed.

3.  In addition to the powers outlined in 2 above, the Joint Provisional Liquidators shall have the following specific powers which may be exercised without further sanction or intervention of this Honourable Court:

a.  to gain entry to the Company's premises and take possession of and preserve the books and records of the Company;

b.  to identify any assets which may remain in the possession or control of the Company, and to take such steps as may be necessary to protect any such assets from removal or dissipation;

c.  to seek the recognition (or its equivalent) of the appointment of the Joint Provisional Liquidators in the United States, United Kingdom, Singapore, Hong Kong, Taiwan Thailand and Cambodia or elsewhere for the purposes of securing, realising and remitting assets to the control of the Joint Provisional Liquidators and for the purpose of obtaining access to and control of the records of the Company;

d.  to commence, continue, discontinue or defend, including by way of counterclaim or similar response, any action or other legal proceedings in the name and on behalf of the Company in so far as necessary to protect the assets and information of the Company including:

(i)  issuing proceedings against the directors, former directors, office holders and former office holders of the Company, if so advised.

(ii)  intervening (if so advised) in ongoing proceedings which involve the Company and/or its directors, former directors, office holders and/or its former office holders.

e.  to vote the shares of the Company in order to prevent the dissipation of its assets.

f.  to carry on the business of the Company so far as may be necessary for its beneficial provisional liquidation;

g.  to take all necessary steps to obtain from any person documents or copy documents which belong to the Company or have been created or maintained on its behalf or which the Company has a right to obtain or inspect.

h.  to appoint an agent including a solicitor, or accountant to do any business that the Joint Provisional Liquidators are unable to do themselves in discharge of their duties, or which can be more conveniently done by an agent;

    i.      to investigate the affairs of the Company so far as necessary to protect and, if necessary, retrieve the assets and records of the Company;

    j.      to retain, manage and operate the existing bank accounts of the Company including, without limitation, the power to change, remove and replace the signatories of these accounts and, where necessary, to open new bank accounts;

    k.      The Joint Provisional Liquidators may draw down payments on account of their remuneration, expenses and disbursements from time to time at a rate of 80% of their time costs and 100% of their expenses and disbursements, subject to these being subsequently approved by the court, and in the event that such sums are not approved, the unapproved sums be repaid to the Company within 7 days;

    l.      to apply to the Court for directions concerning any matter arising out of the exercise of the above powers; and

    m.      to do all other things as may be incidental to the exercise of the above functions and powers.

    n.      to consult and share information with the Applicant to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company.

    o.      to cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4. The Joint Provisional Liquidators are authorised and directed to implement the protocol for consultation and information sharing between them and the Applicant in the draft which is attached hereto ("the Protocol").

5. Any disclosure of information by the Joint Provisional Liquidators to the Applicant made in good faith and in accordance with the Protocol shall be deemed authorised by the Court and shall not constitute a breach of duty, confidence, data protection obligations or contractual restrictions binding upon the Company.

6. The Joint Provisional Liquidators shall not be required to disclose material subject to legal professional privilege or litigation privilege.

7. The Joint Provisional Liquidators and the Applicant have liberty to apply on short notice for directions, variation or termination of the Protocol.

8. The costs of the provisional liquidation, including the proper fees and disbursements of the Joint Provisional Liquidators and the Applicant's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

9. The powers set out in paragraph 3 above are to the exclusion of any power exercised or purported to be exercised by any existing director of the Company in so far as such power concerns the affairs of the Company and its assets within the jurisdiction of the Virgin Islands.

10. Save as provided in paragraph 3 above the Joint Provisional Liquidators may not exercise any of the powers set out at Schedule 2 to the Insolvency Act, 2003 without sanction of the court.

11. Pursuant to section 174 of the Insolvency Act, 2003 alternatively pursuant to the inherent jurisdiction of the Court, all actions, suits or proceedings of any nature whatsoever against the Company be and are hereby restrained until further order of the Court.

12. During the period of their appointment, any act required or authorized to be done by the Joint Provisional Liquidators may be done by any one or more of them.

13. This order was made at a hearing without notice to the respondent. There will be a further hearing in respect of the order on or before *29 January 2026* with a time estimate of 30 minutes, for directions only (**the Return Date**).

14. The Joint Provisional Liquidators are to file and serve a report within one clear day before the Return Date summarising steps taken, any immediate concerns and recommended next steps.

15. The Company is at liberty to apply to vary or discharge the order upon giving 72 hours' notice to the Applicant and the Joint Provisional Liquidators.

16. The Joint Provisional Liquidators are at liberty to apply to vary or discharge the order if the allegations set out above are not substantiated or for some other reason upon giving 72 hours' notice to the Applicant and the Company.

17.   The Applicant is not required to give an undertaking in damages.

18.   The costs of this Application be costs in the provisional liquidation.

19.   The Joint Provisional Liquidators are not required to pay or provide security.

BY THE COURT



REGISTRAR

**Protocol for Consultation and Information-Sharing Between the Liquidators and the Attorney General**

This Protocol is annexed to and forms part of the Order of the BVI Commercial Court (the **Court**) made on 9 January 2026 in Claim No. BVIHC (COM) 2026/0023 **("the Order")**. Capitalised terms bear the meanings given in the Order unless the context otherwise requires.

## 1. Purpose and status

This Protocol sets out a consultative framework between the Liquidators and the Attorney General to facilitate effective cooperation in the public interest, including in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of Simply Advanced Limited **("the Company")** For the avoidance of doubt, this Protocol is made pursuant to and with the approval of the Court, and disclosures made in good faith in accordance with this Protocol are deemed authorised by the Court.

## 2. Guiding principles

The Liquidators shall remain independent and act in the interests of the Company's creditors as a whole and the integrity of the winding up. The Attorney General's participation under this Protocol is consultative and does not fetter the Liquidators' statutory powers or duties, nor the Attorney General's independent functions. Both parties shall conduct themselves with candour, proportionality and respect for legal professional privilege, confidentiality, data protection and rule of law.

Nothing in this Protocol is intended to limit or restrict the ability of the Company's stakeholders to constitute a creditors' committee.

## 3. Definitions

- Attorney General means the Attorney General of the Virgin Islands and includes designated officers acting on the Attorney General's behalf for the purposes of this Protocol.
- The Company means Simply Advanced Limited which is the subject of the Order.
- Confidential Information means non-public information concerning the Company, the liquidation, related investigations, counterparties and assets, including personal data and material subject to confidentiality obligations owed by the Company or the Liquidators.

- Privileged Material means material subject to legal professional privilege or litigation privilege, or any analogous protection recognised by the Court.

### 4. Appointment and representation

The Attorney General shall constitute a consultative committee and may nominate up to three designated representatives for liaison with the Liquidators, with at least one senior contact identified (the **AGs Committee**). The Attorney General may change representatives on notice to the Liquidators.

The AGs Committee shall serve alongside any creditors' committee (if one is formed), and the Liquidators shall have equal regard to the views expressed by both the AGs Committee and the creditors' committee (if formed).

### 5. Consultation framework

5.1 Meetings. The Liquidators shall convene regular consultation meetings (in person or virtual) with the Attorney General not less than once per quarter, and ad hoc meetings as reasonably required. The Liquidators shall chair meetings and circulate a brief agenda in advance. These meetings may be consolidated with meetings of the creditors' committee (if one is formed).

5.2 Attendance. The Liquidators may invite professional advisers and members of the liquidation team. The Attorney General may invite relevant law enforcement or regulatory personnel, provided confidentiality undertakings are observed.

5.3 Minutes. The Liquidators shall keep concise minutes recording attendees, topics discussed and any agreed actions, subject to privilege and sensitivity redactions where appropriate.

### 6. Reporting

6.1 Periodic reports. The Liquidators shall provide to the Attorney General a confidential report not less than once per quarter covering, to the extent appropriate and not prejudicial to the estate:

- status of asset identification, recovery actions and investigations;
- key applications to the Court and outcomes;
- known factual matters relevant to potential criminal offences or regulatory breaches; and
- anticipated steps in the next period.

6.2 Urgent matters. The Liquidators shall promptly notify the Attorney General of matters reasonably judged to be urgent, including (but not limited to) risk of dissipation, destruction of records, or flight of suspects.

6.3 Templates. The Liquidators may adopt reporting templates and may omit details where disclosure would prejudice recoveries, negotiations, privilege, or legal processes.

### 7. Information requests by the Attorney General

7.1 Scope. The Attorney General may request access to documents, data and information reasonably required in relation to the Company or related persons or entities.

7.2 Process. Requests shall be made in writing, identifying the categories sought, the purpose, and any timing sensitivities. The Liquidators shall acknowledge within 3 business days and respond within a reasonable time, taking into account volume, complexity and competing duties.

7.3 Reasonableness and sequencing. The Liquidators may propose reasonable narrowing, staging or alternative formats, including summaries or redactions, to protect privilege, confidentiality, commercial sensitivity, or the integrity of civil recovery efforts.

7.4 Court supervision. If disagreement arises which cannot be resolved promptly, either party may seek directions from the Court on short notice.

### 8. Authorised disclosures and gateways

8.1 Court authorisation. Subject to sections 9–12, the Liquidators are authorised by the Court to disclose Confidential Information to the Attorney General for the limited purposes of regulatory or criminal investigation and prosecution, restraint, confiscation, forfeiture, mutual legal assistance, and related protective measures, and to receive Confidential Information from the Attorney General for liquidation purposes.

8.2 Statutory gateways. To the extent any statutory or regulatory gateway is required for disclosure or use of information, the parties shall cooperate to identify and use such gateways, including by seeking further directions or orders of the Court as needed.

8.3 No breach. Disclosures made in good faith under this Protocol shall not constitute a breach of duty, confidence, data protection laws, or contractual restrictions binding on the Company, and the Liquidators shall have the protection of the Court accordingly.

### 9. Privilege and confidentiality

9.1 Privilege preserved. The Liquidators shall not be required to disclose Privileged Material. Any inadvertent disclosure shall not constitute a waiver of privilege, and the Attorney General shall promptly return or delete such material and refrain from review or use upon notification.

9.2 Common interest. Where appropriate, and subject to legal advice, the parties may agree that certain exchanges are made on a common interest or joint interest basis to preserve privilege.

9.3 Use restrictions. The Attorney General shall maintain Confidential Information in confidence and use it solely for lawful law enforcement, regulatory and public interest purposes. Dissemination shall be limited to personnel with a need to know who are bound by equivalent confidentiality obligations.

9.4 Protective measures. Upon reasonable request, the Attorney General shall implement protective measures for sensitive materials, including secure handling protocols, restricted circulation, and, where appropriate, applications to seal or redact in criminal or regulatory proceedings to avoid prejudice to the estate.

### 10. Data protection and personal data

The parties shall process personal data lawfully, fairly and securely, with appropriate technical and organisational measures. Where cross-border transfers are contemplated, the parties shall cooperate to ensure a lawful transfer mechanism and, where necessary, seek the Court's directions.

### 11. Preservation and holds

The Liquidators shall implement and maintain appropriate document preservation measures in respect of the Company's records. The Attorney General shall notify the Liquidators of any preservation requirements arising from criminal investigations or proceedings, including anticipated requests or production deadlines, to allow timely compliance.

### 12. Coordination to avoid prejudice and duplication

The parties shall coordinate to minimise prejudice to the estate, civil recoveries and criminal processes, including by sequencing steps, agreeing standstills where appropriate, and consulting on timing of public filings or applications likely to have cross-impact. The Liquidators' primary duty to protect and realise assets shall be respected.

### 13. Public statements and confidentiality vis-à-vis third parties

Public statements about the Company, the liquidation or related investigations shall be coordinated to the extent practicable. The Liquidators may make statements required by law or the Court or necessary to protect assets or correct the market. The Attorney General may make statements required in the exercise of public functions, having regard to the Liquidators' requests to withhold sensitive details.

### 14. Costs and resourcing

The reasonable costs incurred by the Liquidators in complying with this Protocol, including costs of retrieval, review, redaction, secure transmission and liaison, are costs of the liquidation. Where requests impose material incremental burdens, the parties shall confer on pragmatic staging or cost-efficient approaches and, failing agreement, may seek the Court's directions.

### 15. Non-fetter and independence

Nothing in this Protocol fetters or derogates from the Liquidators' statutory powers and duties, or from the Attorney General's independent decision-making. The consultative role does not confer any power of direction over the Liquidators.

### 16. Conflicts and recusals

If a conflict of interest arises affecting any representative, that person shall recuse from relevant consultations. The parties shall notify each other of any material conflicts that could affect the integrity of cooperation, and may seek the Court's directions where necessary.

### 17. International cooperation

Where the Attorney General is engaged in mutual legal assistance, or cooperation with foreign authorities, the parties shall consult on scope and timing to ensure that disclosures and steps taken are consistent with this Protocol and do not unduly prejudice the liquidation or foreign proceedings. The Attorney

General shall take reasonable steps, where feasible, to secure protective handling by foreign authorities of any Confidential Information provided.

### 18. Records and audit trail

The Liquidators shall maintain a record of disclosures made to the Attorney General under this Protocol sufficient to evidence compliance, subject to privilege. The Attorney General shall, upon reasonable request, confirm receipt and any onward lawful use or disclosure to other agencies.

### 19. Duration, variation and termination

This Protocol takes effect upon the making of the Order and continues until the earlier of dissolution of the Company or further order of the Court. It may be varied by written agreement between the Liquidators and the Attorney General approved by the Court, or otherwise by order of the Court. The Court may suspend or terminate this Protocol upon application by either party.

### 20. Notices

Formal notices under this Protocol shall be in writing and sent to the designated contacts of each party as notified from time to time. Operational communications may be conducted by secure electronic means.

### 21. Dispute resolution and directions

Any dispute arising under or in connection with this Protocol shall, in the first instance, be addressed through consultation. Failing prompt resolution, either party may apply to the Court for directions on short notice.

### 22. Safe harbour

No act or omission of the Liquidators done in good faith and with reasonable care in reliance on this Protocol, or any directions of the Court, shall give rise to personal liability. The Liquidators shall be entitled to the usual indemnities out of the assets of the Company.

**Schedule 1 – Illustrative categories of information for disclosure**

A. Corporate records: constitutional documents, registers, organisational charts, officer and registered agent details.

B. Financial records: bank statements, ledgers, invoices, loan agreements, asset registers, related party transactions.

C. Communications: selected emails and messaging data from corporate systems relevant to suspected criminality.

D. Counterparty materials: KYC files, contracts, correspondence with intermediaries and fiduciaries.

E. Investigation work product: non-privileged factual memoranda, forensic accounting outputs, chain-of-custody logs.

F. Court materials: statements of affairs, affidavits, pleadings and orders (including sealed materials as authorised).

G. Asset tracing: non-privileged tracing schedules, dashboards, and summaries of restraints or recovery actions.

H. Preservation: litigation hold notices and repositories metadata (to the extent disclosure assists law enforcement).

Disclosure of any category remains subject to sections 9–12 of the Protocol.

**Schedule 2 – Template quarterly consultation report (confidential)**

1. Executive summary and key developments.

2. Asset position: discoveries, realisations, restraints and pending recovery actions.

3. Investigations: factual findings, cooperating witnesses, outstanding enquiries.

4. Legal proceedings: applications filed or contemplated; coordination with foreign courts.

5. Law enforcement interface: requests received/made; disclosures; pending deadlines.

6. Risks and mitigants: dissipation risks, data loss risks, reputational issues.

7. Next steps and proposed timetable; matters requiring Attorney General input.

8. Appendices: schedules of documents disclosed; privilege log (if applicable).

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0023


BETWEEN:

IN THE MATTER OF SIMPLY ADVANCED LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF

THE LAWS OF THE VIRGIN ISLANDS.


 THE ATTORNEY GENERAL

Applicant

-v-

SIMPLY ADVANCED LIMITED

Respondent

---

**ORDER ON APPLICATION FOR
JOINT PROVISIONAL LIQUIDATORS**

---



O'Neal
Webster

Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 l Fax: (284) 393 5805
www.onealwebster.com



**Case Number :BVIHCOM2026/0024**

**Submitted Date:13/01/2026 16:33**

**Filed Date:14/01/2026 08:30**

**Fees Paid:0.00**



**Case Number :BVIHCOM2026/0024**



IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0024

**Submitted Date:12/01/2026 13:46**

**Filed Date:12/01/2026 13:46**

**Fees Paid:0.00**

BETWEEN:

IN THE MATTER OF SOUTHERN HERITAGE LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

Applicant

-v-

SOUTHERN HERITAGE LIMITED

Respondent

---

ORDER APPLICATION FOR JOINT PROVISIONAL LIQUIDATORS

---

| | |
|---|---|
| BEFORE: | THE HONOURABLE JUSTICE ABBAS MITHANI |
| DATED: | THE 9TH DAY OF JANUARY, 2026 |
| ENTERED: | THE 12th DAY OF JANUARY, 2026 |

<u>PENAL NOTICE</u>

The effect of this Order is that the directors, former directors, office holders and former office holders of the Respondent, SOUTHERN HERITAGE LIMITED ("the Company") are replaced by the joint provisional liquidators and that the directors, former directors, office holders and former office holders are prohibited from taking any action in relation to the Company's affairs without prior consent of the joint provisional liquidators.

If you, the directors, former directors, office holders and former office holders of the Company fail to comply with the terms of this order, proceedings may be commenced against you for contempt of court and you may be liable to be imprisoned, fined or have your assets seized.

**This order must be complied with by any person affected by it upon whom it is served. Any other person who knows of this order and does anything which helps or permits the directors, former directors, office holders and/or former office holders of the Company to breach its terms may also be held to be in contempt of Court and may be imprisoned, fined or have their assets seized.**

**UPON THE ORDINARY APPLICATION** filed by the Applicant on 5 January 2026 seeking the appointment of James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110, Paul Pretlove and David Standish, both eligible overseas insolvency practitioner of Interpath Ltd, 10 Fleet Place, London EC4M 7RB, England as joint provisional liquidators of the Company pursuant to section 170 of the Insolvency Act 2003, ("**the Application**") coming on for hearing.

**AND UPON HEARING** Paul B. Dennis K.C. and with him Nadine Whyte Laing and Koya Ryan of O'Neal Webster for the Applicant.

**AND UPON** the Attorney General Dawn J. Smith being present.

**AND UPON** Mr. Paul Pretlove and Mr. James Drury, two of the proposed joint provisional liquidators being present.

**AND UPON READING** the Application, the originating application to appoint liquidators of the Company, the first affidavit of the Attorney General, the affidavit of Jeni-Lee Watson and the other documents on the Court file.

**AND UPON** the Application being heard ex parte.

**IT IS HEREBY ORDERED THAT:**

1.   James Drury, Paul Pretlove and David Standish be appointed jointly and severally as provisional liquidators (the "**Joint Provisional Liquidators**") of the Company until further order.

2.   The Joint Provisional Liquidators have the rights and powers of a liquidator to the extent necessary to maintain the value of the assets owned by the Company and to carry out the functions for which they are appointed.

3.    In addition to the powers outlined in 2 above, the Joint Provisional Liquidators shall have the following specific powers which may be exercised without further sanction or intervention of this Honourable Court:

a.    to gain entry to the Company's premises and take possession of and preserve the books and records of the Company;

b.    to identify any assets which may remain in the possession or control of the Company, and to take such steps as may be necessary to protect any such assets from removal or dissipation;

c.    to seek the recognition (or its equivalent) of the appointment of the Joint Provisional Liquidators in the United States, United Kingdom, Singapore, Hong Kong, Taiwan Thailand and Cambodia or elsewhere for the purposes of securing, realising and remitting assets to the control of the Joint Provisional Liquidators and for the purpose of obtaining access to and control of the records of the Company;

d.    to commence, continue, discontinue or defend, including by way of counterclaim or similar response, any action or other legal proceedings in the name and on behalf of the Company in so far as necessary to protect the assets and information of the Company including:

(i)    issuing proceedings against the directors, former directors, office holders and former office holders of the Company, if so advised.

(ii)    intervening (if so advised) in ongoing proceedings which involve the Company and/or its directors, former directors, office holders and/or its former office holders.

e.    to vote the shares of the Company in order to prevent the dissipation of its assets.

f.    to carry on the business of the Company so far as may be necessary for its beneficial provisional liquidation;

g.    to take all necessary steps to obtain from any person documents or copy documents which belong to the Company or have been created or maintained on its behalf or which the Company has a right to obtain or inspect.

h.    to appoint an agent including a solicitor, or accountant to do any business that the Joint Provisional Liquidators are unable to do themselves in discharge of their duties, or which can be more conveniently done by an agent;

i.   to investigate the affairs of the Company so far as necessary to protect and, if necessary, retrieve the assets and records of the Company;

j.   to retain, manage and operate the existing bank accounts of the Company including, without limitation, the power to change, remove and replace the signatories of these accounts and, where necessary, to open new bank accounts;

k.   The Joint Provisional Liquidators may draw down payments on account of their remuneration, expenses and disbursements from time to time at a rate of 80% of their time costs and 100% of their expenses and disbursements, subject to these being subsequently approved by the court, and in the event that such sums are not approved, the unapproved sums be repaid to the Company within 7 days;

l.   to apply to the Court for directions concerning any matter arising out of the exercise of the above powers; and

m.   to do all other things as may be incidental to the exercise of the above functions and powers.

n.   to consult and share information with the Applicant to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company.

o.   to cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4.   The Joint Provisional Liquidators are authorised and directed to implement the protocol for consultation and information sharing between them and the Applicant in the draft which is attached hereto ("the Protocol").

5.   Any disclosure of information by the Joint Provisional Liquidators to the Applicant made in good faith and in accordance with the Protocol shall be deemed authorised by the Court and shall not constitute a breach of duty, confidence, data protection obligations or contractual restrictions binding upon the Company.

6.   The Joint Provisional Liquidators shall not be required to disclose material subject to legal professional privilege or litigation privilege.

7. The Joint Provisional Liquidators and the Applicant have liberty to apply on short notice for directions, variation or termination of the Protocol.

8. The costs of the provisional liquidation, including the proper fees and disbursements of the Joint Provisional Liquidators and the Applicant's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

9. The powers set out in paragraph 3 above are to the exclusion of any power exercised or purported to be exercised by any existing director of the Company in so far as such power concerns the affairs of the Company and its assets within the jurisdiction of the Virgin Islands.

10. Save as provided in paragraph 3 above the Joint Provisional Liquidators may not exercise any of the powers set out at Schedule 2 to the Insolvency Act, 2003 without sanction of the court.

11. Pursuant to section 174 of the Insolvency Act, 2003 alternatively pursuant to the inherent jurisdiction of the Court, all actions, suits or proceedings of any nature whatsoever against the Company be and are hereby restrained until further order of the Court.

12. During the period of their appointment, any act required or authorized to be done by the Joint Provisional Liquidators may be done by any one or more of them.

13. This order was made at a hearing without notice to the respondent. There will be a further hearing in respect of the order on or before 29th January 2026 with a time estimate of 30 minutes, for directions only (**the Return Date**).

14. The Joint Provisional Liquidators are to file and serve a report within one clear day before the Return Date summarising steps taken, any immediate concerns and recommended next steps.

15. The Company is at liberty to apply to vary or discharge the order upon giving 72 hours' notice to the Applicant and the Joint Provisional Liquidators.

16. The Joint Provisional Liquidators are at liberty to apply to vary or discharge the order if the allegations set out above are not substantiated or for some other reason upon giving 72 hours' notice to the Applicant and the Company.

17.    The Applicant is not required to give an undertaking in damages.

18.    The costs of this Application be costs in the provisional liquidation.

19.    The Joint Provisional Liquidators are not required to pay or provide security.

BY THE COURT

REGISTRAR

**Protocol for Consultation and Information-Sharing Between the Liquidators and the Attorney General**

This Protocol is annexed to and forms part of the Order of the BVI Commercial Court (the **Court**) made on 9 January 2026 in Claim No. BVIHC (COM) 2026/0024 (**"the Order"**). Capitalised terms bear the meanings given in the Order unless the context otherwise requires.

## 1. Purpose and status

This Protocol sets out a consultative framework between the Liquidators and the Attorney General to facilitate effective cooperation in the public interest, including in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of Southern Heritage Limited (**"the Company"**) For the avoidance of doubt, this Protocol is made pursuant to and with the approval of the Court, and disclosures made in good faith in accordance with this Protocol are deemed authorised by the Court.

## 2. Guiding principles

The Liquidators shall remain independent and act in the interests of the Company's creditors as a whole and the integrity of the winding up. The Attorney General's participation under this Protocol is consultative and does not fetter the Liquidators' statutory powers or duties, nor the Attorney General's independent functions. Both parties shall conduct themselves with candour, proportionality and respect for legal professional privilege, confidentiality, data protection and rule of law.

Nothing in this Protocol is intended to limit or restrict the ability of the Company's stakeholders to constitute a creditors' committee.

## 3. Definitions

- Attorney General means the Attorney General of the Virgin Islands and includes designated officers acting on the Attorney General's behalf for the purposes of this Protocol.
- The Company means Southern Heritage Limited which is the subject of the Order.
- Confidential Information means non-public information concerning the Company, the liquidation, related investigations, counterparties and assets, including personal data and material subject to confidentiality obligations owed by the Company or the Liquidators.

- Privileged Material means material subject to legal professional privilege or litigation privilege, or any analogous protection recognised by the Court.

### 4. Appointment and representation

The Attorney General shall constitute a consultative committee and may nominate up to three designated representatives for liaison with the Liquidators, with at least one senior contact identified (the **AGs Committee**). The Attorney General may change representatives on notice to the Liquidators.

The AGs Committee shall serve alongside any creditors' committee (if one is formed), and the Liquidators shall have equal regard to the views expressed by both the AGs Committee and the creditors' committee (if formed).

### 5. Consultation framework

5.1 Meetings. The Liquidators shall convene regular consultation meetings (in person or virtual) with the Attorney General not less than once per quarter, and ad hoc meetings as reasonably required. The Liquidators shall chair meetings and circulate a brief agenda in advance. These meetings may be consolidated with meetings of the creditors' committee (if one is formed).

5.2 Attendance. The Liquidators may invite professional advisers and members of the liquidation team. The Attorney General may invite relevant law enforcement or regulatory personnel, provided confidentiality undertakings are observed.

5.3 Minutes. The Liquidators shall keep concise minutes recording attendees, topics discussed and any agreed actions, subject to privilege and sensitivity redactions where appropriate.

### 6. Reporting

6.1 Periodic reports. The Liquidators shall provide to the Attorney General a confidential report not less than once per quarter covering, to the extent appropriate and not prejudicial to the estate:

- status of asset identification, recovery actions and investigations;
- key applications to the Court and outcomes;
- known factual matters relevant to potential criminal offences or regulatory breaches; and
- anticipated steps in the next period.

6.2 Urgent matters. The Liquidators shall promptly notify the Attorney General of matters reasonably judged to be urgent, including (but not limited to) risk of dissipation, destruction of records, or flight of suspects.

6.3 Templates. The Liquidators may adopt reporting templates and may omit details where disclosure would prejudice recoveries, negotiations, privilege, or legal processes.

### 7. Information requests by the Attorney General

7.1 Scope. The Attorney General may request access to documents, data and information reasonably required in relation to the Company or related persons or entities.

7.2 Process. Requests shall be made in writing, identifying the categories sought, the purpose, and any timing sensitivities. The Liquidators shall acknowledge within 3 business days and respond within a reasonable time, taking into account volume, complexity and competing duties.

7.3 Reasonableness and sequencing. The Liquidators may propose reasonable narrowing, staging or alternative formats, including summaries or redactions, to protect privilege, confidentiality, commercial sensitivity, or the integrity of civil recovery efforts.

7.4 Court supervision. If disagreement arises which cannot be resolved promptly, either party may seek directions from the Court on short notice.

### 8. Authorised disclosures and gateways

8.1 Court authorisation. Subject to sections 9–12, the Liquidators are authorised by the Court to disclose Confidential Information to the Attorney General for the limited purposes of regulatory or criminal investigation and prosecution, restraint, confiscation, forfeiture, mutual legal assistance, and related protective measures, and to receive Confidential Information from the Attorney General for liquidation purposes.

8.2 Statutory gateways. To the extent any statutory or regulatory gateway is required for disclosure or use of information, the parties shall cooperate to identify and use such gateways, including by seeking further directions or orders of the Court as needed.

8.3 No breach. Disclosures made in good faith under this Protocol shall not constitute a breach of duty, confidence, data protection laws, or contractual restrictions binding on the Company, and the Liquidators shall have the protection of the Court accordingly.

### 9. Privilege and confidentiality

9.1 Privilege preserved. The Liquidators shall not be required to disclose Privileged Material. Any inadvertent disclosure shall not constitute a waiver of privilege, and the Attorney General shall promptly return or delete such material and refrain from review or use upon notification.

9.2 Common interest. Where appropriate, and subject to legal advice, the parties may agree that certain exchanges are made on a common interest or joint interest basis to preserve privilege.

9.3 Use restrictions. The Attorney General shall maintain Confidential Information in confidence and use it solely for lawful law enforcement, regulatory and public interest purposes. Dissemination shall be limited to personnel with a need to know who are bound by equivalent confidentiality obligations.

9.4 Protective measures. Upon reasonable request, the Attorney General shall implement protective measures for sensitive materials, including secure handling protocols, restricted circulation, and, where appropriate, applications to seal or redact in criminal or regulatory proceedings to avoid prejudice to the estate.

### 10. Data protection and personal data

The parties shall process personal data lawfully, fairly and securely, with appropriate technical and organisational measures. Where cross-border transfers are contemplated, the parties shall cooperate to ensure a lawful transfer mechanism and, where necessary, seek the Court's directions.

### 11. Preservation and holds

The Liquidators shall implement and maintain appropriate document preservation measures in respect of the Company's records. The Attorney General shall notify the Liquidators of any preservation requirements arising from criminal investigations or proceedings, including anticipated requests or production deadlines, to allow timely compliance.

### 12. Coordination to avoid prejudice and duplication

The parties shall coordinate to minimise prejudice to the estate, civil recoveries and criminal processes, including by sequencing steps, agreeing standstills where appropriate, and consulting on timing of public filings or applications likely to have cross-impact. The Liquidators' primary duty to protect and realise assets shall be respected.

### 13. Public statements and confidentiality vis-à-vis third parties

Public statements about the Company, the liquidation or related investigations shall be coordinated to the extent practicable. The Liquidators may make statements required by law or the Court or necessary to protect assets or correct the market. The Attorney General may make statements required in the exercise of public functions, having regard to the Liquidators' requests to withhold sensitive details.

### 14. Costs and resourcing

The reasonable costs incurred by the Liquidators in complying with this Protocol, including costs of retrieval, review, redaction, secure transmission and liaison, are costs of the liquidation. Where requests impose material incremental burdens, the parties shall confer on pragmatic staging or cost-efficient approaches and, failing agreement, may seek the Court's directions.

### 15. Non-fetter and independence

Nothing in this Protocol fetters or derogates from the Liquidators' statutory powers and duties, or from the Attorney General's independent decision-making. The consultative role does not confer any power of direction over the Liquidators.

### 16. Conflicts and recusals

If a conflict of interest arises affecting any representative, that person shall recuse from relevant consultations. The parties shall notify each other of any material conflicts that could affect the integrity of cooperation, and may seek the Court's directions where necessary.

### 17. International cooperation

Where the Attorney General is engaged in mutual legal assistance, or cooperation with foreign authorities, the parties shall consult on scope and timing to ensure that disclosures and steps taken are consistent with this Protocol and do not unduly prejudice the liquidation or foreign proceedings. The Attorney

General shall take reasonable steps, where feasible, to secure protective handling by foreign authorities of any Confidential Information provided.

### 18. Records and audit trail

The Liquidators shall maintain a record of disclosures made to the Attorney General under this Protocol sufficient to evidence compliance, subject to privilege. The Attorney General shall, upon reasonable request, confirm receipt and any onward lawful use or disclosure to other agencies.

### 19. Duration, variation and termination

This Protocol takes effect upon the making of the Order and continues until the earlier of dissolution of the Company or further order of the Court. It may be varied by written agreement between the Liquidators and the Attorney General approved by the Court, or otherwise by order of the Court. The Court may suspend or terminate this Protocol upon application by either party.

### 20. Notices

Formal notices under this Protocol shall be in writing and sent to the designated contacts of each party as notified from time to time. Operational communications may be conducted by secure electronic means.

### 21. Dispute resolution and directions

Any dispute arising under or in connection with this Protocol shall, in the first instance, be addressed through consultation. Failing prompt resolution, either party may apply to the Court for directions on short notice.

### 22. Safe harbour

No act or omission of the Liquidators done in good faith and with reasonable care in reliance on this Protocol, or any directions of the Court, shall give rise to personal liability. The Liquidators shall be entitled to the usual indemnities out of the assets of the Company.

---

**Schedule 1 – Illustrative categories of information for disclosure**

A. Corporate records: constitutional documents, registers, organisational charts, officer and registered agent details.

B. Financial records: bank statements, ledgers, invoices, loan agreements, asset registers, related party transactions.

C. Communications: selected emails and messaging data from corporate systems relevant to suspected criminality.

D. Counterparty materials: KYC files, contracts, correspondence with intermediaries and fiduciaries.

E. Investigation work product: non-privileged factual memoranda, forensic accounting outputs, chain-of-custody logs.

F. Court materials: statements of affairs, affidavits, pleadings and orders (including sealed materials as authorised).

G. Asset tracing: non-privileged tracing schedules, dashboards, and summaries of restraints or recovery actions.

H. Preservation: litigation hold notices and repositories metadata (to the extent disclosure assists law enforcement).

Disclosure of any category remains subject to sections 9–12 of the Protocol.

---

**Schedule 2 – Template quarterly consultation report (confidential)**

1. Executive summary and key developments.

2. Asset position: discoveries, realisations, restraints and pending recovery actions.

3. Investigations: factual findings, cooperating witnesses, outstanding enquiries.

4. Legal proceedings: applications filed or contemplated; coordination with foreign courts.

5. Law enforcement interface: requests received/made; disclosures; pending deadlines.

6. Risks and mitigants: dissipation risks, data loss risks, reputational issues.

7. Next steps and proposed timetable; matters requiring Attorney General input.

8. Appendices: schedules of documents disclosed; privilege log (if applicable).

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0024

BETWEEN:

IN THE MATTER OF SOUTHERN HERITAGE LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

Applicant

-v-

SOUTHERN HERITAGE LIMITED

Respondent

---

**ORDER ON APPLICATION FOR
JOINT PROVISIONAL LIQUIDATORS**

---

O'Neal Webster

Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 | Fax: (284) 393 5805
www.onealwebster.com

**Case Number :BVIHCOM2026/0025**



**FILED**
HIGH COURT
**TERRITORY OF
THE VIRGIN ISLANDS**

**Submitted Date:13/01/2026 16:40**

**Filed Date:14/01/2026 08:30**

**Fees Paid:0.00**





**FILED**
**HIGH COURT**
TERRITORY OF
THE VIRGIN ISLANDS

**Case Number :BVIHCOM2026/0025**

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0025

**Submitted Date:12/01/2026 13:49**

**Filed Date:12/01/2026 13:49**

**Fees Paid:0.00**

BETWEEN:

IN THE MATTER OF STAR MERIT GLOBAL LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

Applicant

-v-

STAR MERIT GLOBAL LIMITED

Respondent

---

ORDER APPLICATION FOR JOINT PROVISIONAL LIQUIDATORS

---

BEFORE:       THE HONOURABLE JUSTICE ABBAS MITHANI

DATED:        THE 9TH DAY OF JANUARY, 2026

ENTERED:      THE 12th DAY OF  JANUARY, 2026

PENAL NOTICE

The effect of this Order is that the directors, former directors, office holders and former office holders of the Respondent, STAR MERIT GLOBAL LIMITED ("the Company") are replaced by the joint provisional liquidators and that the directors, former directors, office holders and former office holders are prohibited from taking any action in relation to the Company's affairs without prior consent of the joint provisional liquidators.

If you, the directors, former directors, office holders and former office holders of the Company fail to comply with the terms of this order, proceedings may be commenced against you for contempt of court and you may be liable to be imprisoned, fined or have your assets seized.

**This order must be complied with by any person affected by it upon whom it is served. Any other person who knows of this order and does anything which helps or permits the directors, former directors, office holders and/or former office holders of the Company to breach its terms may also be held to be in contempt of Court and may be imprisoned, fined or have their assets seized.**

**UPON THE ORDINARY APPLICATION** filed by the Applicant on 5 January 2026 seeking the appointment of James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110, Paul Pretlove and David Standish, both eligible overseas insolvency practitioner of Interpath Ltd, 10 Fleet Place, London EC4M 7RB, England as joint provisional liquidators of the Company pursuant to section 170 of the Insolvency Act 2003, ("**the Application**") coming on for hearing.

**AND UPON HEARING** Paul B. Dennis K.C. and with him Nadine Whyte Laing and Koya Ryan of O'Neal Webster for the Applicant.

**AND UPON** the Attorney General Dawn J. Smith being present.

**AND UPON** Mr. Paul Pretlove and Mr. James Drury, two of the proposed joint provisional liquidators being present.

**AND UPON READING** the Application, the originating application to appoint liquidators of the Company, the first affidavit of the Attorney General, the affidavit of Jeni-Lee Watson and the other documents on the Court file.

**AND UPON** the Application being heard ex parte.

**IT IS HEREBY ORDERED THAT:**

1. James Drury, Paul Pretlove and David Standish be appointed jointly and severally as provisional liquidators (the "**Joint Provisional Liquidators**") of the Company until further order.

2. The Joint Provisional Liquidators have the rights and powers of a liquidator to the extent necessary to maintain the value of the assets owned by the Company and to carry out the functions for which they are appointed.

3. In addition to the powers outlined in 2 above, the Joint Provisional Liquidators shall have the following specific powers which may be exercised without further sanction or intervention of this Honourable Court:

    a. to gain entry to the Company's premises and take possession of and preserve the books and records of the Company;

    b. to identify any assets which may remain in the possession or control of the Company, and to take such steps as may be necessary to protect any such assets from removal or dissipation;

    c. to seek the recognition (or its equivalent) of the appointment of the Joint Provisional Liquidators in the United States, United Kingdom, Singapore, Hong Kong, Taiwan Thailand and Cambodia or elsewhere for the purposes of securing, realising and remitting assets to the control of the Joint Provisional Liquidators and for the purpose of obtaining access to and control of the records of the Company;

    d. to commence, continue, discontinue or defend, including by way of counterclaim or similar response, any action or other legal proceedings in the name and on behalf of the Company in so far as necessary to protect the assets and information of the Company including:

        (i) issuing proceedings against the directors, former directors, office holders and former office holders of the Company, if so advised.

        (ii) intervening (if so advised) in ongoing proceedings which involve the Company and/or its directors, former directors, office holders and/or its former office holders.

    e. to vote the shares of the Company in order to prevent the dissipation of its assets.

    f. to carry on the business of the Company so far as may be necessary for its beneficial provisional liquidation;

    g. to take all necessary steps to obtain from any person documents or copy documents which belong to the Company or have been created or maintained on its behalf or which the Company has a right to obtain or inspect.

    h. to appoint an agent including a solicitor, or accountant to do any business that the Joint Provisional Liquidators are unable to do themselves in discharge of their duties, or which can be more conveniently done by an agent;

i.    to investigate the affairs of the Company so far as necessary to protect and, if necessary, retrieve the assets and records of the Company;

j.    to retain, manage and operate the existing bank accounts of the Company including, without limitation, the power to change, remove and replace the signatories of these accounts and, where necessary, to open new bank accounts;

k.    The Joint Provisional Liquidators may draw down payments on account of their remuneration, expenses and disbursements from time to time at a rate of 80% of their time costs and 100% of their expenses and disbursements, subject to these being subsequently approved by the court, and in the event that such sums are not approved, the unapproved sums be repaid to the Company within 7 days;

l.    to apply to the Court for directions concerning any matter arising out of the exercise of the above powers; and

m.    to do all other things as may be incidental to the exercise of the above functions and powers.

n.    to consult and share information with the Applicant to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company.

o.    to cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4.    The Joint Provisional Liquidators are authorised and directed to implement the protocol for consultation and information sharing between them and the Applicant in the draft which is attached hereto ("the Protocol").

5.    Any disclosure of information by the Joint Provisional Liquidators to the Applicant made in good faith and in accordance with the Protocol shall be deemed authorised by the Court and shall not constitute a breach of duty, confidence, data protection obligations or contractual restrictions binding upon the Company.

6.    The Joint Provisional Liquidators shall not be required to disclose material subject to legal professional privilege or litigation privilege.

7. The Joint Provisional Liquidators and the Applicant have liberty to apply on short notice for directions, variation or termination of the Protocol.

8. The costs of the provisional liquidation, including the proper fees and disbursements of the Joint Provisional Liquidators and the Applicant's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

9. The powers set out in paragraph 3 above are to the exclusion of any power exercised or purported to be exercised by any existing director of the Company in so far as such power concerns the affairs of the Company and its assets within the jurisdiction of the Virgin Islands.

10. Save as provided in paragraph 3 above the Joint Provisional Liquidators may not exercise any of the powers set out at Schedule 2 to the Insolvency Act, 2003 without sanction of the court.

11. Pursuant to section 174 of the Insolvency Act, 2003 alternatively pursuant to the inherent jurisdiction of the Court, all actions, suits or proceedings of any nature whatsoever against the Company be and are hereby restrained until further order of the Court.

12. During the period of their appointment, any act required or authorized to be done by the Joint Provisional Liquidators may be done by any one or more of them.

13. This order was made at a hearing without notice to the respondent. There will be a further hearing in respect of the order on or before *29ᵗ January 2026* with a time estimate of 30 minutes, for directions only (**the Return Date**).

14. The Joint Provisional Liquidators are to file and serve a report within one clear day before the Return Date summarising steps taken, any immediate concerns and recommended next steps.

15. The Company is at liberty to apply to vary or discharge the order upon giving 72 hours' notice to the Applicant and the Joint Provisional Liquidators.

16. The Joint Provisional Liquidators are at liberty to apply to vary or discharge the order if the allegations set out above are not substantiated or for some other reason upon giving 72 hours' notice to the Applicant and the Company.

17. The Applicant is not required to give an undertaking in damages.

18. The costs of this Application be costs in the provisional liquidation.

19. The Joint Provisional Liquidators are not required to pay or provide security.

BY THE COURT



REGISTRAR

**Protocol for Consultation and Information-Sharing Between the Liquidators and the Attorney General**

This Protocol is annexed to and forms part of the Order of the BVI Commercial Court (the **Court**) made on 9 January 2026 in Claim No. BVIHC (COM) 2026/0025 **("the Order").** Capitalised terms bear the meanings given in the Order unless the context otherwise requires.

### 1. Purpose and status

This Protocol sets out a consultative framework between the Liquidators and the Attorney General to facilitate effective cooperation in the public interest, including in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of Star Merit Global Limited **("the Company")** For the avoidance of doubt, this Protocol is made pursuant to and with the approval of the Court, and disclosures made in good faith in accordance with this Protocol are deemed authorised by the Court.

### 2. Guiding principles

The Liquidators shall remain independent and act in the interests of the Company's creditors as a whole and the integrity of the winding up. The Attorney General's participation under this Protocol is consultative and does not fetter the Liquidators' statutory powers or duties, nor the Attorney General's independent functions. Both parties shall conduct themselves with candour, proportionality and respect for legal professional privilege, confidentiality, data protection and rule of law.

Nothing in this Protocol is intended to limit or restrict the ability of the Company's stakeholders to constitute a creditors' committee.

### 3. Definitions

- Attorney General means the Attorney General of the Virgin Islands and includes designated officers acting on the Attorney General's behalf for the purposes of this Protocol.
- The Company means Star Merit Global Limited which is the subject of the Order.
- Confidential Information means non-public information concerning the Company, the liquidation, related investigations, counterparties and assets, including personal data and material subject to confidentiality obligations owed by the Company or the Liquidators.

- Privileged Material means material subject to legal professional privilege or litigation privilege, or any analogous protection recognised by the Court.

## 4. Appointment and representation

The Attorney General shall constitute a consultative committee and may nominate up to three designated representatives for liaison with the Liquidators, with at least one senior contact identified (the **AGs Committee**). The Attorney General may change representatives on notice to the Liquidators.

The AGs Committee shall serve alongside any creditors' committee (if one is formed), and the Liquidators shall have equal regard to the views expressed by both the AGs Committee and the creditors' committee (if formed).

## 5. Consultation framework

5.1 Meetings. The Liquidators shall convene regular consultation meetings (in person or virtual) with the Attorney General not less than once per quarter, and ad hoc meetings as reasonably required. The Liquidators shall chair meetings and circulate a brief agenda in advance. These meetings may be consolidated with meetings of the creditors' committee (if one is formed).

5.2 Attendance. The Liquidators may invite professional advisers and members of the liquidation team. The Attorney General may invite relevant law enforcement or regulatory personnel, provided confidentiality undertakings are observed.

5.3 Minutes. The Liquidators shall keep concise minutes recording attendees, topics discussed and any agreed actions, subject to privilege and sensitivity redactions where appropriate.

## 6. Reporting

6.1 Periodic reports. The Liquidators shall provide to the Attorney General a confidential report not less than once per quarter covering, to the extent appropriate and not prejudicial to the estate:

- status of asset identification, recovery actions and investigations;
- key applications to the Court and outcomes;
- known factual matters relevant to potential criminal offences or regulatory breaches; and
- anticipated steps in the next period.

6.2 Urgent matters. The Liquidators shall promptly notify the Attorney General of matters reasonably judged to be urgent, including (but not limited to) risk of dissipation, destruction of records, or flight of suspects.

6.3 Templates. The Liquidators may adopt reporting templates and may omit details where disclosure would prejudice recoveries, negotiations, privilege, or legal processes.

### 7. Information requests by the Attorney General

7.1 Scope. The Attorney General may request access to documents, data and information reasonably required in relation to the Company or related persons or entities.

7.2 Process. Requests shall be made in writing, identifying the categories sought, the purpose, and any timing sensitivities. The Liquidators shall acknowledge within 3 business days and respond within a reasonable time, taking into account volume, complexity and competing duties.

7.3 Reasonableness and sequencing. The Liquidators may propose reasonable narrowing, staging or alternative formats, including summaries or redactions, to protect privilege, confidentiality, commercial sensitivity, or the integrity of civil recovery efforts.

7.4 Court supervision. If disagreement arises which cannot be resolved promptly, either party may seek directions from the Court on short notice.

### 8. Authorised disclosures and gateways

8.1 Court authorisation. Subject to sections 9–12, the Liquidators are authorised by the Court to disclose Confidential Information to the Attorney General for the limited purposes of regulatory or criminal investigation and prosecution, restraint, confiscation, forfeiture, mutual legal assistance, and related protective measures, and to receive Confidential Information from the Attorney General for liquidation purposes.

8.2 Statutory gateways. To the extent any statutory or regulatory gateway is required for disclosure or use of information, the parties shall cooperate to identify and use such gateways, including by seeking further directions or orders of the Court as needed.

8.3 No breach. Disclosures made in good faith under this Protocol shall not constitute a breach of duty, confidence, data protection laws, or contractual restrictions binding on the Company, and the Liquidators shall have the protection of the Court accordingly.

### 9. Privilege and confidentiality

9.1 Privilege preserved. The Liquidators shall not be required to disclose Privileged Material. Any inadvertent disclosure shall not constitute a waiver of privilege, and the Attorney General shall promptly return or delete such material and refrain from review or use upon notification.

9.2 Common interest. Where appropriate, and subject to legal advice, the parties may agree that certain exchanges are made on a common interest or joint interest basis to preserve privilege.

9.3 Use restrictions. The Attorney General shall maintain Confidential Information in confidence and use it solely for lawful law enforcement, regulatory and public interest purposes. Dissemination shall be limited to personnel with a need to know who are bound by equivalent confidentiality obligations.

9.4 Protective measures. Upon reasonable request, the Attorney General shall implement protective measures for sensitive materials, including secure handling protocols, restricted circulation, and, where appropriate, applications to seal or redact in criminal or regulatory proceedings to avoid prejudice to the estate.

### 10. Data protection and personal data

The parties shall process personal data lawfully, fairly and securely, with appropriate technical and organisational measures. Where cross-border transfers are contemplated, the parties shall cooperate to ensure a lawful transfer mechanism and, where necessary, seek the Court's directions.

### 11. Preservation and holds

The Liquidators shall implement and maintain appropriate document preservation measures in respect of the Company's records. The Attorney General shall notify the Liquidators of any preservation requirements arising from criminal investigations or proceedings, including anticipated requests or production deadlines, to allow timely compliance.

### 12. Coordination to avoid prejudice and duplication

The parties shall coordinate to minimise prejudice to the estate, civil recoveries and criminal processes, including by sequencing steps, agreeing standstills where appropriate, and consulting on timing of public filings or applications likely to have cross-impact. The Liquidators' primary duty to protect and realise assets shall be respected.

### 13. Public statements and confidentiality vis-à-vis third parties

Public statements about the Company, the liquidation or related investigations shall be coordinated to the extent practicable. The Liquidators may make statements required by law or the Court or necessary to protect assets or correct the market. The Attorney General may make statements required in the exercise of public functions, having regard to the Liquidators' requests to withhold sensitive details.

### 14. Costs and resourcing

The reasonable costs incurred by the Liquidators in complying with this Protocol, including costs of retrieval, review, redaction, secure transmission and liaison, are costs of the liquidation. Where requests impose material incremental burdens, the parties shall confer on pragmatic staging or cost-efficient approaches and, failing agreement, may seek the Court's directions.

### 15. Non-fetter and independence

Nothing in this Protocol fetters or derogates from the Liquidators' statutory powers and duties, or from the Attorney General's independent decision-making. The consultative role does not confer any power of direction over the Liquidators.

### 16. Conflicts and recusals

If a conflict of interest arises affecting any representative, that person shall recuse from relevant consultations. The parties shall notify each other of any material conflicts that could affect the integrity of cooperation, and may seek the Court's directions where necessary.

### 17. International cooperation

Where the Attorney General is engaged in mutual legal assistance, or cooperation with foreign authorities, the parties shall consult on scope and timing to ensure that disclosures and steps taken are consistent with this Protocol and do not unduly prejudice the liquidation or foreign proceedings. The Attorney

General shall take reasonable steps, where feasible, to secure protective handling by foreign authorities of any Confidential Information provided.

### 18. Records and audit trail

The Liquidators shall maintain a record of disclosures made to the Attorney General under this Protocol sufficient to evidence compliance, subject to privilege. The Attorney General shall, upon reasonable request, confirm receipt and any onward lawful use or disclosure to other agencies.

### 19. Duration, variation and termination

This Protocol takes effect upon the making of the Order and continues until the earlier of dissolution of the Company or further order of the Court. It may be varied by written agreement between the Liquidators and the Attorney General approved by the Court, or otherwise by order of the Court. The Court may suspend or terminate this Protocol upon application by either party.

### 20. Notices

Formal notices under this Protocol shall be in writing and sent to the designated contacts of each party as notified from time to time. Operational communications may be conducted by secure electronic means.

### 21. Dispute resolution and directions

Any dispute arising under or in connection with this Protocol shall, in the first instance, be addressed through consultation. Failing prompt resolution, either party may apply to the Court for directions on short notice.

### 22. Safe harbour

No act or omission of the Liquidators done in good faith and with reasonable care in reliance on this Protocol, or any directions of the Court, shall give rise to personal liability. The Liquidators shall be entitled to the usual indemnities out of the assets of the Company.

## Schedule 1 – Illustrative categories of information for disclosure

A. Corporate records: constitutional documents, registers, organisational charts, officer and registered agent details.

B. Financial records: bank statements, ledgers, invoices, loan agreements, asset registers, related party transactions.

C. Communications: selected emails and messaging data from corporate systems relevant to suspected criminality.

D. Counterparty materials: KYC files, contracts, correspondence with intermediaries and fiduciaries.

E. Investigation work product: non-privileged factual memoranda, forensic accounting outputs, chain-of-custody logs.

F. Court materials: statements of affairs, affidavits, pleadings and orders (including sealed materials as authorised).

G. Asset tracing: non-privileged tracing schedules, dashboards, and summaries of restraints or recovery actions.

H. Preservation: litigation hold notices and repositories metadata (to the extent disclosure assists law enforcement).

Disclosure of any category remains subject to sections 9–12 of the Protocol.

## Schedule 2 – Template quarterly consultation report (confidential)

1. Executive summary and key developments.

2. Asset position: discoveries, realisations, restraints and pending recovery actions.

3. Investigations: factual findings, cooperating witnesses, outstanding enquiries.

4. Legal proceedings: applications filed or contemplated; coordination with foreign courts.

5. Law enforcement interface: requests received/made; disclosures; pending deadlines.

6. Risks and mitigants: dissipation risks, data loss risks, reputational issues.

7. Next steps and proposed timetable; matters requiring Attorney General input.

8. Appendices: schedules of documents disclosed; privilege log (if applicable).

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0025

BETWEEN:

IN THE MATTER OF STAR MERIT GLOBAL LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

Applicant

-v-

STAR MERIT GLOBAL LIMITED

Respondent

---

**ORDER ON APPLICATION FOR JOINT PROVISIONAL LIQUIDATORS**

---



O'Neal Webster

Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 l Fax: (284) 393 5805
www.onealwebster.com

**Case Number :BVIHCOM2026/0026**



**FILED**

HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS

**Submitted Date:13/01/2026 11:00**

**Filed Date:13/01/2026 11:00**

**Fees Paid:0.00**



**Case Number :BVIHCOM2026/0026**

**FILED**

**HIGH COURT**

TERRITORY OF
THE VIRGIN ISLANDS

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0026

**Submitted Date:12/01/2026 14:39**

**Filed Date:12/01/2026 14:39**

**Fees Paid:0.00**

BETWEEN:

### IN THE MATTER OF STARRY BLOOM LIMITED

### AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.

### THE ATTORNEY GENERAL

Applicant

-v-

### STARRY BLOOM LIMITED

Respondent

---

### ORDER APPLICATION FOR JOINT PROVISIONAL LIQUIDATORS

---

BEFORE:     THE HONOURABLE JUSTICE ABBAS MITHANI

DATED:      THE 9TH DAY OF JANUARY, 2026

ENTERED:    THE 12 DAY OF JANUARY, 2026

### PENAL NOTICE

The effect of this Order is that the directors, former directors, office holders and former office holders of the Respondent, STARRY BLOOM LIMITED ("the Company") are replaced by the joint provisional liquidators and that the directors, former directors, office holders and former office holders are prohibited from taking any action in relation to the Company's affairs without prior consent of the joint provisional liquidators.

If you, the directors, former directors, office holders and former office holders of the Company fail to comply with the terms of this order, proceedings may be commenced against you for contempt of court and you may be liable to be imprisoned, fined or have your assets seized.

**This order must be complied with by any person affected by it upon whom it is served. Any other person who knows of this order and does anything which helps or permits the directors, former directors, office holders and/or former office holders of the Company to breach its terms may also be held to be in contempt of Court and may be imprisoned, fined or have their assets seized.**

**UPON THE ORDINARY APPLICATION** filed by the Applicant on 5 January 2026 seeking the appointment of James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110, Paul Pretlove and David Standish, both eligible overseas insolvency practitioner of Interpath Ltd, 10 Fleet Place, London EC4M 7RB, England as joint provisional liquidators of the Company pursuant to section 170 of the Insolvency Act 2003, (**"the Application"**) coming on for hearing.

**AND UPON HEARING** Paul B. Dennis K.C. and with him Nadine Whyte Laing and Koya Ryan of O'Neal Webster for the Applicant.

**AND UPON** the Attorney General Dawn J. Smith being present.

**AND UPON** Mr. Paul Pretlove and Mr. James Drury, two of the proposed joint provisional liquidators being present.

**AND UPON READING** the Application, the originating application to appoint liquidators of the Company, the first affidavit of the Attorney General, the affidavit of Jeni-Lee Watson and the other documents on the Court file.

**AND UPON** the Application being heard ex parte.

**IT IS HEREBY ORDERED THAT:**

1. James Drury, Paul Pretlove and David Standish be appointed jointly and severally as provisional liquidators (the **"Joint Provisional Liquidators"**) of the Company until further order.

2. The Joint Provisional Liquidators have the rights and powers of a liquidator to the extent necessary to maintain the value of the assets owned by the Company and to carry out the functions for which they are appointed.

3. In addition to the powers outlined in 2 above, the Joint Provisional Liquidators shall have the following specific powers which may be exercised without further sanction or intervention of this Honourable Court:

a. to gain entry to the Company's premises and take possession of and preserve the books and records of the Company;

b. to identify any assets which may remain in the possession or control of the Company, and to take such steps as may be necessary to protect any such assets from removal or dissipation;

c. to seek the recognition (or its equivalent) of the appointment of the Joint Provisional Liquidators in the United States, United Kingdom, Singapore, Hong Kong, Taiwan Thailand and Cambodia or elsewhere for the purposes of securing, realising and remitting assets to the control of the Joint Provisional Liquidators and for the purpose of obtaining access to and control of the records of the Company;

d. to commence, continue, discontinue or defend, including by way of counterclaim or similar response, any action or other legal proceedings in the name and on behalf of the Company in so far as necessary to protect the assets and information of the Company including:

(i) issuing proceedings against the directors, former directors, office holders and former office holders of the Company, if so advised.

(ii) intervening (if so advised) in ongoing proceedings which involve the Company and/or its directors, former directors, office holders and/or its former office holders.

e. to vote the shares of the Company in order to prevent the dissipation of its assets.

f. to carry on the business of the Company so far as may be necessary for its beneficial provisional liquidation;

g. to take all necessary steps to obtain from any person documents or copy documents which belong to the Company or have been created or maintained on its behalf or which the Company has a right to obtain or inspect.

h. to appoint an agent including a solicitor, or accountant to do any business that the Joint Provisional Liquidators are unable to do themselves in discharge of their duties, or which can be more conveniently done by an agent;

    i.      to investigate the affairs of the Company so far as necessary to protect and, if necessary, retrieve the assets and records of the Company;

    j.      to retain, manage and operate the existing bank accounts of the Company including, without limitation, the power to change, remove and replace the signatories of these accounts and, where necessary, to open new bank accounts;

    k.      The Joint Provisional Liquidators may draw down payments on account of their remuneration, expenses and disbursements from time to time at a rate of 80% of their time costs and 100% of their expenses and disbursements, subject to these being subsequently approved by the court, and in the event that such sums are not approved, the unapproved sums be repaid to the Company within 7 days;

    l.      to apply to the Court for directions concerning any matter arising out of the exercise of the above powers; and

    m.      to do all other things as may be incidental to the exercise of the above functions and powers.

    n.      to consult and share information with the Applicant to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company.

    o.      to cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4. The Joint Provisional Liquidators are authorised and directed to implement the protocol for consultation and information sharing between them and the Applicant in the draft which is attached hereto (**"the Protocol"**).

5. Any disclosure of information by the Joint Provisional Liquidators to the Applicant made in good faith and in accordance with the Protocol shall be deemed authorised by the Court and shall not constitute a breach of duty, confidence, data protection obligations or contractual restrictions binding upon the Company.

6. The Joint Provisional Liquidators shall not be required to disclose material subject to legal professional privilege or litigation privilege.

7. The Joint Provisional Liquidators and the Applicant have liberty to apply on short notice for directions, variation or termination of the Protocol.

8. The costs of the provisional liquidation, including the proper fees and disbursements of the Joint Provisional Liquidators and the Applicant's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

9. The powers set out in paragraph 3 above are to the exclusion of any power exercised or purported to be exercised by any existing director of the Company in so far as such power concerns the affairs of the Company and its assets within the jurisdiction of the Virgin Islands.

10. Save as provided in paragraph 3 above the Joint Provisional Liquidators may not exercise any of the powers set out at Schedule 2 to the Insolvency Act, 2003 without sanction of the court.

11. Pursuant to section 174 of the Insolvency Act, 2003 alternatively pursuant to the inherent jurisdiction of the Court, all actions, suits or proceedings of any nature whatsoever against the Company be and are hereby restrained until further order of the Court.

12. During the period of their appointment, any act required or authorized to be done by the Joint Provisional Liquidators may be done by any one or more of them.

13. This order was made at a hearing without notice to the respondent. There will be a further hearing in respect of the order on or before 29th January 2024 with a time estimate of 30 minutes, for directions only (**the Return Date**).

14. The Joint Provisional Liquidators are to file and serve a report within one clear day before the Return Date summarising steps taken, any immediate concerns and recommended next steps.

15. The Company is at liberty to apply to vary or discharge the order upon giving 72 hours' notice to the Applicant and the Joint Provisional Liquidators.

16. The Joint Provisional Liquidators are at liberty to apply to vary or discharge the order if the allegations set out above are not substantiated or for some other reason upon giving 72 hours' notice to the Applicant and the Company.

17.    The Applicant is not required to give an undertaking in damages.

18.    The costs of this Application be costs in the provisional liquidation.

19.    The Joint Provisional Liquidators are not required to pay or provide security.

BY THE COURT

_____
REGISTRAR

**Protocol for Consultation and Information-Sharing Between the Liquidators and the Attorney General**

This Protocol is annexed to and forms part of the Order of the BVI Commercial Court (the **Court**) made on 9 January 2026 in Claim No. BVIHC (COM) 2026/0026 (**"the Order"**). Capitalised terms bear the meanings given in the Order unless the context otherwise requires.

### 1. Purpose and status

This Protocol sets out a consultative framework between the Liquidators and the Attorney General to facilitate effective cooperation in the public interest, including in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of Starry Bloom Limited (**"the Company"**) For the avoidance of doubt, this Protocol is made pursuant to and with the approval of the Court, and disclosures made in good faith in accordance with this Protocol are deemed authorised by the Court.

### 2. Guiding principles

The Liquidators shall remain independent and act in the interests of the Company's creditors as a whole and the integrity of the winding up. The Attorney General's participation under this Protocol is consultative and does not fetter the Liquidators' statutory powers or duties, nor the Attorney General's independent functions. Both parties shall conduct themselves with candour, proportionality and respect for legal professional privilege, confidentiality, data protection and rule of law.

Nothing in this Protocol is intended to limit or restrict the ability of the Company's stakeholders to constitute a creditors' committee.

### 3. Definitions

- Attorney General means the Attorney General of the Virgin Islands and includes designated officers acting on the Attorney General's behalf for the purposes of this Protocol.
- The Company means Starry Bloom Limited which is the subject of the Order.
- Confidential Information means non-public information concerning the Company, the liquidation, related investigations, counterparties and assets, including personal data and material subject to confidentiality obligations owed by the Company or the Liquidators.

- Privileged Material means material subject to legal professional privilege or litigation privilege, or any analogous protection recognised by the Court.

### 4. Appointment and representation

The Attorney General shall constitute a consultative committee and may nominate up to three designated representatives for liaison with the Liquidators, with at least one senior contact identified (the **AGs Committee**). The Attorney General may change representatives on notice to the Liquidators.

The AGs Committee shall serve alongside any creditors' committee (if one is formed), and the Liquidators shall have equal regard to the views expressed by both the AGs Committee and the creditors' committee (if formed).

### 5. Consultation framework

5.1 Meetings. The Liquidators shall convene regular consultation meetings (in person or virtual) with the Attorney General not less than once per quarter, and ad hoc meetings as reasonably required. The Liquidators shall chair meetings and circulate a brief agenda in advance. These meetings may be consolidated with meetings of the creditors' committee (if one is formed).

5.2 Attendance. The Liquidators may invite professional advisers and members of the liquidation team. The Attorney General may invite relevant law enforcement or regulatory personnel, provided confidentiality undertakings are observed.

5.3 Minutes. The Liquidators shall keep concise minutes recording attendees, topics discussed and any agreed actions, subject to privilege and sensitivity redactions where appropriate.

### 6. Reporting

6.1 Periodic reports. The Liquidators shall provide to the Attorney General a confidential report not less than once per quarter covering, to the extent appropriate and not prejudicial to the estate:

- status of asset identification, recovery actions and investigations;
- key applications to the Court and outcomes;
- known factual matters relevant to potential criminal offences or regulatory breaches; and
- anticipated steps in the next period.

6.2 Urgent matters. The Liquidators shall promptly notify the Attorney General of matters reasonably judged to be urgent, including (but not limited to) risk of dissipation, destruction of records, or flight of suspects.

6.3 Templates. The Liquidators may adopt reporting templates and may omit details where disclosure would prejudice recoveries, negotiations, privilege, or legal processes.

### 7. Information requests by the Attorney General

7.1 Scope. The Attorney General may request access to documents, data and information reasonably required in relation to the Company or related persons or entities.

7.2 Process. Requests shall be made in writing, identifying the categories sought, the purpose, and any timing sensitivities. The Liquidators shall acknowledge within 3 business days and respond within a reasonable time, taking into account volume, complexity and competing duties.

7.3 Reasonableness and sequencing. The Liquidators may propose reasonable narrowing, staging or alternative formats, including summaries or redactions, to protect privilege, confidentiality, commercial sensitivity, or the integrity of civil recovery efforts.

7.4 Court supervision. If disagreement arises which cannot be resolved promptly, either party may seek directions from the Court on short notice.

### 8. Authorised disclosures and gateways

8.1 Court authorisation. Subject to sections 9–12, the Liquidators are authorised by the Court to disclose Confidential Information to the Attorney General for the limited purposes of regulatory or criminal investigation and prosecution, restraint, confiscation, forfeiture, mutual legal assistance, and related protective measures, and to receive Confidential Information from the Attorney General for liquidation purposes.

8.2 Statutory gateways. To the extent any statutory or regulatory gateway is required for disclosure or use of information, the parties shall cooperate to identify and use such gateways, including by seeking further directions or orders of the Court as needed.

8.3 No breach. Disclosures made in good faith under this Protocol shall not constitute a breach of duty, confidence, data protection laws, or contractual restrictions binding on the Company, and the Liquidators shall have the protection of the Court accordingly.

### 9. Privilege and confidentiality

9.1 Privilege preserved. The Liquidators shall not be required to disclose Privileged Material. Any inadvertent disclosure shall not constitute a waiver of privilege, and the Attorney General shall promptly return or delete such material and refrain from review or use upon notification.

9.2 Common interest. Where appropriate, and subject to legal advice, the parties may agree that certain exchanges are made on a common interest or joint interest basis to preserve privilege.

9.3 Use restrictions. The Attorney General shall maintain Confidential Information in confidence and use it solely for lawful law enforcement, regulatory and public interest purposes. Dissemination shall be limited to personnel with a need to know who are bound by equivalent confidentiality obligations.

9.4 Protective measures. Upon reasonable request, the Attorney General shall implement protective measures for sensitive materials, including secure handling protocols, restricted circulation, and, where appropriate, applications to seal or redact in criminal or regulatory proceedings to avoid prejudice to the estate.

### 10. Data protection and personal data

The parties shall process personal data lawfully, fairly and securely, with appropriate technical and organisational measures. Where cross-border transfers are contemplated, the parties shall cooperate to ensure a lawful transfer mechanism and, where necessary, seek the Court's directions.

### 11. Preservation and holds

The Liquidators shall implement and maintain appropriate document preservation measures in respect of the Company's records. The Attorney General shall notify the Liquidators of any preservation requirements arising from criminal investigations or proceedings, including anticipated requests or production deadlines, to allow timely compliance.

### 12. Coordination to avoid prejudice and duplication

The parties shall coordinate to minimise prejudice to the estate, civil recoveries and criminal processes, including by sequencing steps, agreeing standstills where appropriate, and consulting on timing of public filings or applications likely to have cross-impact. The Liquidators' primary duty to protect and realise assets shall be respected.

### 13. Public statements and confidentiality vis-à-vis third parties

Public statements about the Company, the liquidation or related investigations shall be coordinated to the extent practicable. The Liquidators may make statements required by law or the Court or necessary to protect assets or correct the market. The Attorney General may make statements required in the exercise of public functions, having regard to the Liquidators' requests to withhold sensitive details.

### 14. Costs and resourcing

The reasonable costs incurred by the Liquidators in complying with this Protocol, including costs of retrieval, review, redaction, secure transmission and liaison, are costs of the liquidation. Where requests impose material incremental burdens, the parties shall confer on pragmatic staging or cost-efficient approaches and, failing agreement, may seek the Court's directions.

### 15. Non-fetter and independence

Nothing in this Protocol fetters or derogates from the Liquidators' statutory powers and duties, or from the Attorney General's independent decision-making. The consultative role does not confer any power of direction over the Liquidators.

### 16. Conflicts and recusals

If a conflict of interest arises affecting any representative, that person shall recuse from relevant consultations. The parties shall notify each other of any material conflicts that could affect the integrity of cooperation, and may seek the Court's directions where necessary.

### 17. International cooperation

Where the Attorney General is engaged in mutual legal assistance, or cooperation with foreign authorities, the parties shall consult on scope and timing to ensure that disclosures and steps taken are consistent

with this Protocol and do not unduly prejudice the liquidation or foreign proceedings. The Attorney General shall take reasonable steps, where feasible, to secure protective handling by foreign authorities of any Confidential Information provided.

### 18. Records and audit trail

The Liquidators shall maintain a record of disclosures made to the Attorney General under this Protocol sufficient to evidence compliance, subject to privilege. The Attorney General shall, upon reasonable request, confirm receipt and any onward lawful use or disclosure to other agencies.

### 19. Duration, variation and termination

This Protocol takes effect upon the making of the Order and continues until the earlier of dissolution of the Company or further order of the Court. It may be varied by written agreement between the Liquidators and the Attorney General approved by the Court, or otherwise by order of the Court. The Court may suspend or terminate this Protocol upon application by either party.

### 20. Notices

Formal notices under this Protocol shall be in writing and sent to the designated contacts of each party as notified from time to time. Operational communications may be conducted by secure electronic means.

### 21. Dispute resolution and directions

Any dispute arising under or in connection with this Protocol shall, in the first instance, be addressed through consultation. Failing prompt resolution, either party may apply to the Court for directions on short notice.

### 22. Safe harbour

No act or omission of the Liquidators done in good faith and with reasonable care in reliance on this Protocol, or any directions of the Court, shall give rise to personal liability. The Liquidators shall be entitled to the usual indemnities out of the assets of the Company.

---

**Schedule 1 – Illustrative categories of information for disclosure**

A. Corporate records: constitutional documents, registers, organisational charts, officer and registered agent details.

B. Financial records: bank statements, ledgers, invoices, loan agreements, asset registers, related party transactions.

C. Communications: selected emails and messaging data from corporate systems relevant to suspected criminality.

D. Counterparty materials: KYC files, contracts, correspondence with intermediaries and fiduciaries.

E. Investigation work product: non-privileged factual memoranda, forensic accounting outputs, chain-of-custody logs.

F. Court materials: statements of affairs, affidavits, pleadings and orders (including sealed materials as authorised).

G. Asset tracing: non-privileged tracing schedules, dashboards, and summaries of restraints or recovery actions.

H. Preservation: litigation hold notices and repositories metadata (to the extent disclosure assists law enforcement).

Disclosure of any category remains subject to sections 9–12 of the Protocol.

---

**Schedule 2 – Template quarterly consultation report (confidential)**

1. Executive summary and key developments.
2. Asset position: discoveries, realisations, restraints and pending recovery actions.
3. Investigations: factual findings, cooperating witnesses, outstanding enquiries.
4. Legal proceedings: applications filed or contemplated; coordination with foreign courts.
5. Law enforcement interface: requests received/made; disclosures; pending deadlines.
6. Risks and mitigants: dissipation risks, data loss risks, reputational issues.
7. Next steps and proposed timetable; matters requiring Attorney General input.
8. Appendices: schedules of documents disclosed; privilege log (if applicable).

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0026

BETWEEN:

IN THE MATTER OF STARRY BLOOM LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

Applicant

-v-

STARRY BLOOM LIMITED

Respondent

---

**ORDER ON APPLICATION FOR
JOINT PROVISIONAL LIQUIDATORS**

---



Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 I Fax: (284) 393 5805
www.onealwebster.com

**Case Number :BVIHCOM2026/0027**


**FILED**
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS

**Submitted Date:13/01/2026 16:43**

**Filed Date:14/01/2026 08:30**

**Fees Paid:0.00**



**Case Number :BVIHCOM2026/0027**

FILED
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0027

**Submitted Date:12/01/2026 14:37**

**Filed Date:12/01/2026 14:37**

**Fees Paid:0.00**

BETWEEN:

### IN THE MATTER OF SURE TYCOON LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

**Applicant**

-v-

SURE TYCOON LIMITED

**Respondent**

---

### ORDER APPLICATION FOR JOINT PROVISIONAL LIQUIDATORS

---

BEFORE:     THE HONOURABLE JUSTICE ABBAS MITHANI

DATED:       THE 9 DAY OF JANUARY, 2026

ENTERED:   THE 12 DAY OF JANUARY, 2026

### PENAL NOTICE

The effect of this Order is that the directors, former directors, office holders and former office holders of the Respondent, SURE TYCOON LIMITED ("the Company") are replaced by the joint provisional liquidators and that the directors, former directors, office holders and former office holders are prohibited from taking any action in relation to the Company's affairs without prior consent of the joint provisional liquidators.

If you, the directors, former directors, office holders and former office holders of the Company fail to comply with the terms of this order, proceedings may be commenced against you for contempt of court and you may be liable to be imprisoned, fined or have your assets seized.

**This order must be complied with by any person affected by it upon whom it is served. Any other person who knows of this order and does anything which helps or permits the directors, former directors, office holders and/or former office holders of the Company to breach its terms may also be held to be in contempt of Court and may be imprisoned, fined or have their assets seized.**

**UPON THE ORDINARY APPLICATION** filed by the Applicant on 5 January 2026 seeking the appointment of James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110, Paul Pretlove and David Standish, both eligible overseas insolvency practitioner of Interpath Ltd, 10 Fleet Place, London EC4M 7RB, England as joint provisional liquidators of the Company pursuant to section 170 of the Insolvency Act 2003, ("**the Application**") coming on for hearing.

**AND UPON HEARING** Paul B. Dennis K.C. and with him Nadine Whyte Laing and Koya Ryan of O'Neal Webster for the Applicant.

**AND UPON** the Attorney General Dawn J. Smith being present.

**AND UPON** Mr. Paul Pretlove and Mr. James Drury, two of the proposed joint provisional liquidators being present.

**AND UPON READING** the Application, the originating application to appoint liquidators of the Company, the first affidavit of the Attorney General, the affidavit of Jeni-Lee Watson and the other documents on the Court file.

**AND UPON** the Application being heard ex parte.

**IT IS HEREBY ORDERED THAT:**

1.  James Drury, Paul Pretlove and David Standish be appointed jointly and severally as provisional liquidators (the "**Joint Provisional Liquidators**") of the Company until further order.

2.  The Joint Provisional Liquidators have the rights and powers of a liquidator to the extent necessary to maintain the value of the assets owned by the Company and to carry out the functions for which they are appointed.

3.    In addition to the powers outlined in 2 above, the Joint Provisional Liquidators shall have the following specific powers which may be exercised without further sanction or intervention of this Honourable Court:

   a.    to gain entry to the Company's premises and take possession of and preserve the books and records of the Company;

   b.    to identify any assets which may remain in the possession or control of the Company, and to take such steps as may be necessary to protect any such assets from removal or dissipation;

   c.    to seek the recognition (or its equivalent) of the appointment of the Joint Provisional Liquidators in the United States, United Kingdom, Singapore, Hong Kong, Taiwan Thailand and Cambodia or elsewhere for the purposes of securing, realising and remitting assets to the control of the Joint Provisional Liquidators and for the purpose of obtaining access to and control of the records of the Company;

   d.    to commence, continue, discontinue or defend, including by way of counterclaim or similar response, any action or other legal proceedings in the name and on behalf of the Company in so far as necessary to protect the assets and information of the Company including:

      (i)    issuing proceedings against the directors, former directors, office holders and former office holders of the Company, if so advised.

      (ii)    intervening (if so advised) in ongoing proceedings which involve the Company and/or its directors, former directors, office holders and/or its former office holders.

   e.    to vote the shares of the Company in order to prevent the dissipation of its assets.

   f.    to carry on the business of the Company so far as may be necessary for its beneficial provisional liquidation;

   g.    to take all necessary steps to obtain from any person documents or copy documents which belong to the Company or have been created or maintained on its behalf or which the Company has a right to obtain or inspect.

   h.    to appoint an agent including a solicitor, or accountant to do any business that the Joint Provisional Liquidators are unable to do themselves in discharge of their duties, or which can be more conveniently done by an agent;

    i.     to investigate the affairs of the Company so far as necessary to protect and, if necessary, retrieve the assets and records of the Company;

    j.     to retain, manage and operate the existing bank accounts of the Company including, without limitation, the power to change, remove and replace the signatories of these accounts and, where necessary, to open new bank accounts;

    k.     The Joint Provisional Liquidators may draw down payments on account of their remuneration, expenses and disbursements from time to time at a rate of 80% of their time costs and 100% of their expenses and disbursements, subject to these being subsequently approved by the court, and in the event that such sums are not approved, the unapproved sums be repaid to the Company within 7 days;

    l.     to apply to the Court for directions concerning any matter arising out of the exercise of the above powers; and

    m.     to do all other things as may be incidental to the exercise of the above functions and powers.

    n.     to consult and share information with the Applicant to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company.

    o.     to cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4. The Joint Provisional Liquidators are authorised and directed to implement the protocol for consultation and information sharing between them and the Applicant in the draft which is attached hereto ("the Protocol").

5. Any disclosure of information by the Joint Provisional Liquidators to the Applicant made in good faith and in accordance with the Protocol shall be deemed authorised by the Court and shall not constitute a breach of duty, confidence, data protection obligations or contractual restrictions binding upon the Company.

6. The Joint Provisional Liquidators shall not be required to disclose material subject to legal professional privilege or litigation privilege.

7. The Joint Provisional Liquidators and the Applicant have liberty to apply on short notice for directions, variation or termination of the Protocol.

8. The costs of the provisional liquidation, including the proper fees and disbursements of the Joint Provisional Liquidators and the Applicant's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

9. The powers set out in paragraph 3 above are to the exclusion of any power exercised or purported to be exercised by any existing director of the Company in so far as such power concerns the affairs of the Company and its assets within the jurisdiction of the Virgin Islands.

10. Save as provided in paragraph 3 above the Joint Provisional Liquidators may not exercise any of the powers set out at Schedule 2 to the Insolvency Act, 2003 without sanction of the court.

11. Pursuant to section 174 of the Insolvency Act, 2003 alternatively pursuant to the inherent jurisdiction of the Court, all actions, suits or proceedings of any nature whatsoever against the Company be and are hereby restrained until further order of the Court.

12. During the period of their appointment, any act required or authorized to be done by the Joint Provisional Liquidators may be done by any one or more of them.

13. This order was made at a hearing without notice to the respondent. There will be a further hearing in respect of the order on or before *29th January 2026* with a time estimate of 30 minutes, for directions only (**the Return Date**).

14. The Joint Provisional Liquidators are to file and serve a report within one clear day before the Return Date summarising steps taken, any immediate concerns and recommended next steps.

15. The Company is at liberty to apply to vary or discharge the order upon giving 72 hours' notice to the Applicant and the Joint Provisional Liquidators.

16. The Joint Provisional Liquidators are at liberty to apply to vary or discharge the order if the allegations set out above are not substantiated or for some other reason upon giving 72 hours' notice to the Applicant and the Company.

17.   The Applicant is not required to give an undertaking in damages.

18.   The costs of this Application be costs in the provisional liquidation.

19.   The Joint Provisional Liquidators are not required to pay or provide security.

BY THE COURT



_____
REGISTRAR

**Protocol for Consultation and Information-Sharing Between the Liquidators and the Attorney General**

This Protocol is annexed to and forms part of the Order of the BVI Commercial Court (the **Court**) made on 9 January 2026 in Claim No. BVIHC (COM) 2026/0027 (**"the Order"**). Capitalised terms bear the meanings given in the Order unless the context otherwise requires.

## 1. Purpose and status

This Protocol sets out a consultative framework between the Liquidators and the Attorney General to facilitate effective cooperation in the public interest, including in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of Sure Tycoon Limited (**"the Company"**) For the avoidance of doubt, this Protocol is made pursuant to and with the approval of the Court, and disclosures made in good faith in accordance with this Protocol are deemed authorised by the Court.

## 2. Guiding principles

The Liquidators shall remain independent and act in the interests of the Company's creditors as a whole and the integrity of the winding up. The Attorney General's participation under this Protocol is consultative and does not fetter the Liquidators' statutory powers or duties, nor the Attorney General's independent functions. Both parties shall conduct themselves with candour, proportionality and respect for legal professional privilege, confidentiality, data protection and rule of law.

Nothing in this Protocol is intended to limit or restrict the ability of the Company's stakeholders to constitute a creditors' committee.

## 3. Definitions

- Attorney General means the Attorney General of the Virgin Islands and includes designated officers acting on the Attorney General's behalf for the purposes of this Protocol.
- The Company means Sure Tycoon Limited which is the subject of the Order.
- Confidential Information means non-public information concerning the Company, the liquidation, related investigations, counterparties and assets, including personal data and material subject to confidentiality obligations owed by the Company or the Liquidators.

- Privileged Material means material subject to legal professional privilege or litigation privilege, or any analogous protection recognised by the Court.

### 4. Appointment and representation

The Attorney General shall constitute a consultative committee and may nominate up to three designated representatives for liaison with the Liquidators, with at least one senior contact identified (the **AGs Committee**). The Attorney General may change representatives on notice to the Liquidators.

The AGs Committee shall serve alongside any creditors' committee (if one is formed), and the Liquidators shall have equal regard to the views expressed by both the AGs Committee and the creditors' committee (if formed).

### 5. Consultation framework

5.1 Meetings. The Liquidators shall convene regular consultation meetings (in person or virtual) with the Attorney General not less than once per quarter, and ad hoc meetings as reasonably required. The Liquidators shall chair meetings and circulate a brief agenda in advance. These meetings may be consolidated with meetings of the creditors' committee (if one is formed).

5.2 Attendance. The Liquidators may invite professional advisers and members of the liquidation team. The Attorney General may invite relevant law enforcement or regulatory personnel, provided confidentiality undertakings are observed.

5.3 Minutes. The Liquidators shall keep concise minutes recording attendees, topics discussed and any agreed actions, subject to privilege and sensitivity redactions where appropriate.

### 6. Reporting

6.1 Periodic reports. The Liquidators shall provide to the Attorney General a confidential report not less than once per quarter covering, to the extent appropriate and not prejudicial to the estate:

- status of asset identification, recovery actions and investigations;
- key applications to the Court and outcomes;
- known factual matters relevant to potential criminal offences or regulatory breaches; and
- anticipated steps in the next period.

6.2 Urgent matters. The Liquidators shall promptly notify the Attorney General of matters reasonably judged to be urgent, including (but not limited to) risk of dissipation, destruction of records, or flight of suspects.

6.3 Templates. The Liquidators may adopt reporting templates and may omit details where disclosure would prejudice recoveries, negotiations, privilege, or legal processes.

### 7. Information requests by the Attorney General

7.1 Scope. The Attorney General may request access to documents, data and information reasonably required in relation to the Company or related persons or entities.

7.2 Process. Requests shall be made in writing, identifying the categories sought, the purpose, and any timing sensitivities. The Liquidators shall acknowledge within 3 business days and respond within a reasonable time, taking into account volume, complexity and competing duties.

7.3 Reasonableness and sequencing. The Liquidators may propose reasonable narrowing, staging or alternative formats, including summaries or redactions, to protect privilege, confidentiality, commercial sensitivity, or the integrity of civil recovery efforts.

7.4 Court supervision. If disagreement arises which cannot be resolved promptly, either party may seek directions from the Court on short notice.

### 8. Authorised disclosures and gateways

8.1 Court authorisation. Subject to sections 9–12, the Liquidators are authorised by the Court to disclose Confidential Information to the Attorney General for the limited purposes of regulatory or criminal investigation and prosecution, restraint, confiscation, forfeiture, mutual legal assistance, and related protective measures, and to receive Confidential Information from the Attorney General for liquidation purposes.

8.2 Statutory gateways. To the extent any statutory or regulatory gateway is required for disclosure or use of information, the parties shall cooperate to identify and use such gateways, including by seeking further directions or orders of the Court as needed.

8.3 No breach. Disclosures made in good faith under this Protocol shall not constitute a breach of duty, confidence, data protection laws, or contractual restrictions binding on the Company, and the Liquidators shall have the protection of the Court accordingly.

### 9. Privilege and confidentiality

9.1 Privilege preserved. The Liquidators shall not be required to disclose Privileged Material. Any inadvertent disclosure shall not constitute a waiver of privilege, and the Attorney General shall promptly return or delete such material and refrain from review or use upon notification.

9.2 Common interest. Where appropriate, and subject to legal advice, the parties may agree that certain exchanges are made on a common interest or joint interest basis to preserve privilege.

9.3 Use restrictions. The Attorney General shall maintain Confidential Information in confidence and use it solely for lawful law enforcement, regulatory and public interest purposes. Dissemination shall be limited to personnel with a need to know who are bound by equivalent confidentiality obligations.

9.4 Protective measures. Upon reasonable request, the Attorney General shall implement protective measures for sensitive materials, including secure handling protocols, restricted circulation, and, where appropriate, applications to seal or redact in criminal or regulatory proceedings to avoid prejudice to the estate.

### 10. Data protection and personal data

The parties shall process personal data lawfully, fairly and securely, with appropriate technical and organisational measures. Where cross-border transfers are contemplated, the parties shall cooperate to ensure a lawful transfer mechanism and, where necessary, seek the Court's directions.

### 11. Preservation and holds

The Liquidators shall implement and maintain appropriate document preservation measures in respect of the Company's records. The Attorney General shall notify the Liquidators of any preservation requirements arising from criminal investigations or proceedings, including anticipated requests or production deadlines, to allow timely compliance.

### 12. Coordination to avoid prejudice and duplication

The parties shall coordinate to minimise prejudice to the estate, civil recoveries and criminal processes, including by sequencing steps, agreeing standstills where appropriate, and consulting on timing of public filings or applications likely to have cross-impact. The Liquidators' primary duty to protect and realise assets shall be respected.

### 13. Public statements and confidentiality vis-à-vis third parties

Public statements about the Company, the liquidation or related investigations shall be coordinated to the extent practicable. The Liquidators may make statements required by law or the Court or necessary to protect assets or correct the market. The Attorney General may make statements required in the exercise of public functions, having regard to the Liquidators' requests to withhold sensitive details.

### 14. Costs and resourcing

The reasonable costs incurred by the Liquidators in complying with this Protocol, including costs of retrieval, review, redaction, secure transmission and liaison, are costs of the liquidation. Where requests impose material incremental burdens, the parties shall confer on pragmatic staging or cost-efficient approaches and, failing agreement, may seek the Court's directions.

### 15. Non-fetter and independence

Nothing in this Protocol fetters or derogates from the Liquidators' statutory powers and duties, or from the Attorney General's independent decision-making. The consultative role does not confer any power of direction over the Liquidators.

### 16. Conflicts and recusals

If a conflict of interest arises affecting any representative, that person shall recuse from relevant consultations. The parties shall notify each other of any material conflicts that could affect the integrity of cooperation, and may seek the Court's directions where necessary.

### 17. International cooperation

Where the Attorney General is engaged in mutual legal assistance, or cooperation with foreign authorities, the parties shall consult on scope and timing to ensure that disclosures and steps taken are consistent

with this Protocol and do not unduly prejudice the liquidation or foreign proceedings. The Attorney General shall take reasonable steps, where feasible, to secure protective handling by foreign authorities of any Confidential Information provided.

### 18. Records and audit trail

The Liquidators shall maintain a record of disclosures made to the Attorney General under this Protocol sufficient to evidence compliance, subject to privilege. The Attorney General shall, upon reasonable request, confirm receipt and any onward lawful use or disclosure to other agencies.

### 19. Duration, variation and termination

This Protocol takes effect upon the making of the Order and continues until the earlier of dissolution of the Company or further order of the Court. It may be varied by written agreement between the Liquidators and the Attorney General approved by the Court, or otherwise by order of the Court. The Court may suspend or terminate this Protocol upon application by either party.

### 20. Notices

Formal notices under this Protocol shall be in writing and sent to the designated contacts of each party as notified from time to time. Operational communications may be conducted by secure electronic means.

### 21. Dispute resolution and directions

Any dispute arising under or in connection with this Protocol shall, in the first instance, be addressed through consultation. Failing prompt resolution, either party may apply to the Court for directions on short notice.

### 22. Safe harbour

No act or omission of the Liquidators done in good faith and with reasonable care in reliance on this Protocol, or any directions of the Court, shall give rise to personal liability. The Liquidators shall be entitled to the usual indemnities out of the assets of the Company.

## Schedule 1 – Illustrative categories of information for disclosure

A. Corporate records: constitutional documents, registers, organisational charts, officer and registered agent details.

B. Financial records: bank statements, ledgers, invoices, loan agreements, asset registers, related party transactions.

C. Communications: selected emails and messaging data from corporate systems relevant to suspected criminality.

D. Counterparty materials: KYC files, contracts, correspondence with intermediaries and fiduciaries.

E. Investigation work product: non-privileged factual memoranda, forensic accounting outputs, chain-of-custody logs.

F. Court materials: statements of affairs, affidavits, pleadings and orders (including sealed materials as authorised).

G. Asset tracing: non-privileged tracing schedules, dashboards, and summaries of restraints or recovery actions.

H. Preservation: litigation hold notices and repositories metadata (to the extent disclosure assists law enforcement).

Disclosure of any category remains subject to sections 9–12 of the Protocol.

## Schedule 2 – Template quarterly consultation report (confidential)

1. Executive summary and key developments.
2. Asset position: discoveries, realisations, restraints and pending recovery actions.
3. Investigations: factual findings, cooperating witnesses, outstanding enquiries.
4. Legal proceedings: applications filed or contemplated; coordination with foreign courts.
5. Law enforcement interface: requests received/made; disclosures; pending deadlines.
6. Risks and mitigants: dissipation risks, data loss risks, reputational issues.
7. Next steps and proposed timetable; matters requiring Attorney General input.
8. Appendices: schedules of documents disclosed; privilege log (if applicable).

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0027

BETWEEN:

IN THE MATTER OF SURE TYCOON LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF
THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

Applicant

-v-

SURE TYCOON LIMITED

Respondent

---

**ORDER ON APPLICATION FOR
JOINT PROVISIONAL LIQUIDATORS**

---



**O'Neal Webster**

Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 l Fax: (284) 393 5805
www.onealwebster.com



**Case Number :BVIHCOM2026/0028**

**Submitted Date:13/01/2026 16:49**

**Filed Date:14/01/2026 08:30**

**Fees Paid:0.00**



**Case Number :BVIHCOM2026/0028**

> **FILED**
> **HIGH COURT**
> TERRITORY OF
> THE VIRGIN ISLANDS

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0028

**Submitted Date:12/01/2026 14:33**

**Filed Date:12/01/2026 14:33**

**Fees Paid:0.00**

BETWEEN:

IN THE MATTER OF SWORD RIVER LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

Applicant

-v-

SWORD RIVER LIMITED

Respondent

---

**ORDER APPLICATION FOR JOINT PROVISIONAL LIQUIDATORS**

---

BEFORE:     THE HONOURABLE JUSTICE ABBAS MITHANI

DATED:      THE 9TH DAY OF JANUARY, 2026

ENTERED:    THE 12th DAY OF JANUARY, 2026

### PENAL NOTICE

The effect of this Order is that the directors, former directors, office holders and former office holders of the Respondent, SWORD RIVER LIMITED ("the Company") are replaced by the joint provisional liquidators and that the directors, former directors, office holders and former office holders are prohibited from taking any action in relation to the Company's affairs without prior consent of the joint provisional liquidators.

If you, the directors, former directors, office holders and former office holders of the Company fail to comply with the terms of this order, proceedings may be commenced against you for contempt of court and you may be liable to be imprisoned, fined or have your assets seized.

**This order must be complied with by any person affected by it upon whom it is served. Any other person who knows of this order and does anything which helps or permits the directors, former directors, office holders and/or former office holders of the Company to breach its terms may also be held to be in contempt of Court and may be imprisoned, fined or have their assets seized.**

**UPON THE ORDINARY APPLICATION** filed by the Applicant on 5 January 2026 seeking the appointment of James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110, Paul Pretlove and David Standish, both eligible overseas insolvency practitioner of Interpath Ltd, 10 Fleet Place, London EC4M 7RB, England as joint provisional liquidators of the Company pursuant to section 170 of the Insolvency Act 2003, (**"the Application"**) coming on for hearing.

**AND UPON HEARING** Paul B. Dennis K.C. and with him Nadine Whyte Laing and Koya Ryan of O'Neal Webster for the Applicant.

**AND UPON** the Attorney General Dawn J. Smith being present.

**AND UPON** Mr. Paul Pretlove and Mr. James Drury, two of the proposed joint provisional liquidators being present.

**AND UPON READING** the Application, the originating application to appoint liquidators of the Company, the first affidavit of the Attorney General, the affidavit of Jeni-Lee Watson and the other documents on the Court file.

**AND UPON** the Application being heard ex parte.

**IT IS HEREBY ORDERED THAT:**

1.    James Drury, Paul Pretlove and David Standish be appointed jointly and severally as provisional liquidators (the **"Joint Provisional Liquidators"**) of the Company until further order.

2.    The Joint Provisional Liquidators have the rights and powers of a liquidator to the extent necessary to maintain the value of the assets owned by the Company and to carry out the functions for which they are appointed.

3.   In addition to the powers outlined in 2 above, the Joint Provisional Liquidators shall have the following specific powers which may be exercised without further sanction or intervention of this Honourable Court:

    a.   to gain entry to the Company's premises and take possession of and preserve the books and records of the Company;

    b.   to identify any assets which may remain in the possession or control of the Company, and to take such steps as may be necessary to protect any such assets from removal or dissipation;

    c.   to seek the recognition (or its equivalent) of the appointment of the Joint Provisional Liquidators in the United States, United Kingdom, Singapore, Hong Kong, Taiwan Thailand and Cambodia or elsewhere for the purposes of securing, realising and remitting assets to the control of the Joint Provisional Liquidators and for the purpose of obtaining access to and control of the records of the Company;

    d.   to commence, continue, discontinue or defend, including by way of counterclaim or similar response, any action or other legal proceedings in the name and on behalf of the Company in so far as necessary to protect the assets and information of the Company including:

        (i)   issuing proceedings against the directors, former directors, office holders and former office holders of the Company, if so advised.

        (ii)   intervening (if so advised) in ongoing proceedings which involve the Company and/or its directors, former directors, office holders and/or its former office holders.

    e.   to vote the shares of the Company in order to prevent the dissipation of its assets.

    f.   to carry on the business of the Company so far as may be necessary for its beneficial provisional liquidation;

    g.   to take all necessary steps to obtain from any person documents or copy documents which belong to the Company or have been created or maintained on its behalf or which the Company has a right to obtain or inspect.

    h.   to appoint an agent including a solicitor, or accountant to do any business that the Joint Provisional Liquidators are unable to do themselves in discharge of their duties, or which can be more conveniently done by an agent;

i.   to investigate the affairs of the Company so far as necessary to protect and, if necessary, retrieve the assets and records of the Company;

j.   to retain, manage and operate the existing bank accounts of the Company including, without limitation, the power to change, remove and replace the signatories of these accounts and, where necessary, to open new bank accounts;

k.   The Joint Provisional Liquidators may draw down payments on account of their remuneration, expenses and disbursements from time to time at a rate of 80% of their time costs and 100% of their expenses and disbursements, subject to these being subsequently approved by the court, and in the event that such sums are not approved, the unapproved sums be repaid to the Company within 7 days;

l.   to apply to the Court for directions concerning any matter arising out of the exercise of the above powers; and

m.   to do all other things as may be incidental to the exercise of the above functions and powers.

n.   to consult and share information with the Applicant to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company.

o.   to cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4.   The Joint Provisional Liquidators are authorised and directed to implement the protocol for consultation and information sharing between them and the Applicant in the draft which is attached hereto ("the Protocol").

5.   Any disclosure of information by the Joint Provisional Liquidators to the Applicant made in good faith and in accordance with the Protocol shall be deemed authorised by the Court and shall not constitute a breach of duty, confidence, data protection obligations or contractual restrictions binding upon the Company.

6.   The Joint Provisional Liquidators shall not be required to disclose material subject to legal professional privilege or litigation privilege.

7. The Joint Provisional Liquidators and the Applicant have liberty to apply on short notice for directions, variation or termination of the Protocol.

8. The costs of the provisional liquidation, including the proper fees and disbursements of the Joint Provisional Liquidators and the Applicant's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

9. The powers set out in paragraph 3 above are to the exclusion of any power exercised or purported to be exercised by any existing director of the Company in so far as such power concerns the affairs of the Company and its assets within the jurisdiction of the Virgin Islands.

10. Save as provided in paragraph 3 above the Joint Provisional Liquidators may not exercise any of the powers set out at Schedule 2 to the Insolvency Act, 2003 without sanction of the court.

11. Pursuant to section 174 of the Insolvency Act, 2003 alternatively pursuant to the inherent jurisdiction of the Court, all actions, suits or proceedings of any nature whatsoever against the Company be and are hereby restrained until further order of the Court.

12. During the period of their appointment, any act required or authorized to be done by the Joint Provisional Liquidators may be done by any one or more of them.

13. This order was made at a hearing without notice to the respondent. There will be a further hearing in respect of the order on or before *29th January 2026* with a time estimate of 30 minutes, for directions only (**the Return Date**).

14. The Joint Provisional Liquidators are to file and serve a report within one clear day before the Return Date summarising steps taken, any immediate concerns and recommended next steps.

15. The Company is at liberty to apply to vary or discharge the order upon giving 72 hours' notice to the Applicant and the Joint Provisional Liquidators.

16. The Joint Provisional Liquidators are at liberty to apply to vary or discharge the order if the allegations set out above are not substantiated or for some other reason upon giving 72 hours' notice to the Applicant and the Company.

17.    The Applicant is not required to give an undertaking in damages.

18.    The costs of this Application be costs in the provisional liquidation.

19.    The Joint Provisional Liquidators are not required to pay or provide security.

**BY THE COURT**



———————————————————

**REGISTRAR**

**Protocol for Consultation and Information-Sharing Between the Liquidators and the Attorney General**

This Protocol is annexed to and forms part of the Order of the BVI Commercial Court (the **Court**) made on 9 January 2026 in Claim No. BVIHC (COM) 2026/0028 **("the Order")**. Capitalised terms bear the meanings given in the Order unless the context otherwise requires.

### 1. Purpose and status

This Protocol sets out a consultative framework between the Liquidators and the Attorney General to facilitate effective cooperation in the public interest, including in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of Sword River Limited **("the Company")** For the avoidance of doubt, this Protocol is made pursuant to and with the approval of the Court, and disclosures made in good faith in accordance with this Protocol are deemed authorised by the Court.

### 2. Guiding principles

The Liquidators shall remain independent and act in the interests of the Company's creditors as a whole and the integrity of the winding up. The Attorney General's participation under this Protocol is consultative and does not fetter the Liquidators' statutory powers or duties, nor the Attorney General's independent functions. Both parties shall conduct themselves with candour, proportionality and respect for legal professional privilege, confidentiality, data protection and rule of law.

Nothing in this Protocol is intended to limit or restrict the ability of the Company's stakeholders to constitute a creditors' committee.

### 3. Definitions

- Attorney General means the Attorney General of the Virgin Islands and includes designated officers acting on the Attorney General's behalf for the purposes of this Protocol.
- The Company means Sword River Limited which is the subject of the Order.
- Confidential Information means non-public information concerning the Company, the liquidation, related investigations, counterparties and assets, including personal data and material subject to confidentiality obligations owed by the Company or the Liquidators.

- Privileged Material means material subject to legal professional privilege or litigation privilege, or any analogous protection recognised by the Court.

### 4. Appointment and representation

The Attorney General shall constitute a consultative committee and may nominate up to three designated representatives for liaison with the Liquidators, with at least one senior contact identified (the **AGs Committee**). The Attorney General may change representatives on notice to the Liquidators.

The AGs Committee shall serve alongside any creditors' committee (if one is formed), and the Liquidators shall have equal regard to the views expressed by both the AGs Committee and the creditors' committee (if formed).

### 5. Consultation framework

5.1 Meetings. The Liquidators shall convene regular consultation meetings (in person or virtual) with the Attorney General not less than once per quarter, and ad hoc meetings as reasonably required. The Liquidators shall chair meetings and circulate a brief agenda in advance. These meetings may be consolidated with meetings of the creditors' committee (if one is formed).

5.2 Attendance. The Liquidators may invite professional advisers and members of the liquidation team. The Attorney General may invite relevant law enforcement or regulatory personnel, provided confidentiality undertakings are observed.

5.3 Minutes. The Liquidators shall keep concise minutes recording attendees, topics discussed and any agreed actions, subject to privilege and sensitivity redactions where appropriate.

### 6. Reporting

6.1 Periodic reports. The Liquidators shall provide to the Attorney General a confidential report not less than once per quarter covering, to the extent appropriate and not prejudicial to the estate:

- status of asset identification, recovery actions and investigations;
- key applications to the Court and outcomes;
- known factual matters relevant to potential criminal offences or regulatory breaches; and
- anticipated steps in the next period.

6.2 Urgent matters. The Liquidators shall promptly notify the Attorney General of matters reasonably judged to be urgent, including (but not limited to) risk of dissipation, destruction of records, or flight of suspects.

6.3 Templates. The Liquidators may adopt reporting templates and may omit details where disclosure would prejudice recoveries, negotiations, privilege, or legal processes.

### 7. Information requests by the Attorney General

7.1 Scope. The Attorney General may request access to documents, data and information reasonably required in relation to the Company or related persons or entities.

7.2 Process. Requests shall be made in writing, identifying the categories sought, the purpose, and any timing sensitivities. The Liquidators shall acknowledge within 3 business days and respond within a reasonable time, taking into account volume, complexity and competing duties.

7.3 Reasonableness and sequencing. The Liquidators may propose reasonable narrowing, staging or alternative formats, including summaries or redactions, to protect privilege, confidentiality, commercial sensitivity, or the integrity of civil recovery efforts.

7.4 Court supervision. If disagreement arises which cannot be resolved promptly, either party may seek directions from the Court on short notice.

### 8. Authorised disclosures and gateways

8.1 Court authorisation. Subject to sections 9–12, the Liquidators are authorised by the Court to disclose Confidential Information to the Attorney General for the limited purposes of regulatory or criminal investigation and prosecution, restraint, confiscation, forfeiture, mutual legal assistance, and related protective measures, and to receive Confidential Information from the Attorney General for liquidation purposes.

8.2 Statutory gateways. To the extent any statutory or regulatory gateway is required for disclosure or use of information, the parties shall cooperate to identify and use such gateways, including by seeking further directions or orders of the Court as needed.

8.3 No breach. Disclosures made in good faith under this Protocol shall not constitute a breach of duty, confidence, data protection laws, or contractual restrictions binding on the Company, and the Liquidators shall have the protection of the Court accordingly.

### 9. Privilege and confidentiality

9.1 Privilege preserved. The Liquidators shall not be required to disclose Privileged Material. Any inadvertent disclosure shall not constitute a waiver of privilege, and the Attorney General shall promptly return or delete such material and refrain from review or use upon notification.

9.2 Common interest. Where appropriate, and subject to legal advice, the parties may agree that certain exchanges are made on a common interest or joint interest basis to preserve privilege.

9.3 Use restrictions. The Attorney General shall maintain Confidential Information in confidence and use it solely for lawful law enforcement, regulatory and public interest purposes. Dissemination shall be limited to personnel with a need to know who are bound by equivalent confidentiality obligations.

9.4 Protective measures. Upon reasonable request, the Attorney General shall implement protective measures for sensitive materials, including secure handling protocols, restricted circulation, and, where appropriate, applications to seal or redact in criminal or regulatory proceedings to avoid prejudice to the estate.

### 10. Data protection and personal data

The parties shall process personal data lawfully, fairly and securely, with appropriate technical and organisational measures. Where cross-border transfers are contemplated, the parties shall cooperate to ensure a lawful transfer mechanism and, where necessary, seek the Court's directions.

### 11. Preservation and holds

The Liquidators shall implement and maintain appropriate document preservation measures in respect of the Company's records. The Attorney General shall notify the Liquidators of any preservation requirements arising from criminal investigations or proceedings, including anticipated requests or production deadlines, to allow timely compliance.

### 12. Coordination to avoid prejudice and duplication

The parties shall coordinate to minimise prejudice to the estate, civil recoveries and criminal processes, including by sequencing steps, agreeing standstills where appropriate, and consulting on timing of public filings or applications likely to have cross-impact. The Liquidators' primary duty to protect and realise assets shall be respected.

### 13. Public statements and confidentiality vis-à-vis third parties

Public statements about the Company, the liquidation or related investigations shall be coordinated to the extent practicable. The Liquidators may make statements required by law or the Court or necessary to protect assets or correct the market. The Attorney General may make statements required in the exercise of public functions, having regard to the Liquidators' requests to withhold sensitive details.

### 14. Costs and resourcing

The reasonable costs incurred by the Liquidators in complying with this Protocol, including costs of retrieval, review, redaction, secure transmission and liaison, are costs of the liquidation. Where requests impose material incremental burdens, the parties shall confer on pragmatic staging or cost-efficient approaches and, failing agreement, may seek the Court's directions.

### 15. Non-fetter and independence

Nothing in this Protocol fetters or derogates from the Liquidators' statutory powers and duties, or from the Attorney General's independent decision-making. The consultative role does not confer any power of direction over the Liquidators.

### 16. Conflicts and recusals

If a conflict of interest arises affecting any representative, that person shall recuse from relevant consultations. The parties shall notify each other of any material conflicts that could affect the integrity of cooperation, and may seek the Court's directions where necessary.

### 17. International cooperation

Where the Attorney General is engaged in mutual legal assistance, or cooperation with foreign authorities, the parties shall consult on scope and timing to ensure that disclosures and steps taken are consistent with this Protocol and do not unduly prejudice the liquidation or foreign proceedings. The Attorney

General shall take reasonable steps, where feasible, to secure protective handling by foreign authorities of any Confidential Information provided.

### 18. Records and audit trail

The Liquidators shall maintain a record of disclosures made to the Attorney General under this Protocol sufficient to evidence compliance, subject to privilege. The Attorney General shall, upon reasonable request, confirm receipt and any onward lawful use or disclosure to other agencies.

### 19. Duration, variation and termination

This Protocol takes effect upon the making of the Order and continues until the earlier of dissolution of the Company or further order of the Court. It may be varied by written agreement between the Liquidators and the Attorney General approved by the Court, or otherwise by order of the Court. The Court may suspend or terminate this Protocol upon application by either party.

### 20. Notices

Formal notices under this Protocol shall be in writing and sent to the designated contacts of each party as notified from time to time. Operational communications may be conducted by secure electronic means.

### 21. Dispute resolution and directions

Any dispute arising under or in connection with this Protocol shall, in the first instance, be addressed through consultation. Failing prompt resolution, either party may apply to the Court for directions on short notice.

### 22. Safe harbour

No act or omission of the Liquidators done in good faith and with reasonable care in reliance on this Protocol, or any directions of the Court, shall give rise to personal liability. The Liquidators shall be entitled to the usual indemnities out of the assets of the Company.

## Schedule 1 – Illustrative categories of information for disclosure

A. Corporate records: constitutional documents, registers, organisational charts, officer and registered agent details.

B. Financial records: bank statements, ledgers, invoices, loan agreements, asset registers, related party transactions.

C. Communications: selected emails and messaging data from corporate systems relevant to suspected criminality.

D. Counterparty materials: KYC files, contracts, correspondence with intermediaries and fiduciaries.

E. Investigation work product: non-privileged factual memoranda, forensic accounting outputs, chain-of-custody logs.

F. Court materials: statements of affairs, affidavits, pleadings and orders (including sealed materials as authorised).

G. Asset tracing: non-privileged tracing schedules, dashboards, and summaries of restraints or recovery actions.

H. Preservation: litigation hold notices and repositories metadata (to the extent disclosure assists law enforcement).

Disclosure of any category remains subject to sections 9–12 of the Protocol.

## Schedule 2 – Template quarterly consultation report (confidential)

1. Executive summary and key developments.

2. Asset position: discoveries, realisations, restraints and pending recovery actions.

3. Investigations: factual findings, cooperating witnesses, outstanding enquiries.

4. Legal proceedings: applications filed or contemplated; coordination with foreign courts.

5. Law enforcement interface: requests received/made; disclosures; pending deadlines.

6. Risks and mitigants: dissipation risks, data loss risks, reputational issues.

7. Next steps and proposed timetable; matters requiring Attorney General input.

8. Appendices: schedules of documents disclosed; privilege log (if applicable).

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0028

BETWEEN:

IN THE MATTER OF SWORD RIVER LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF

THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

Applicant

-v-

SWORD RIVER LIMITED

Respondent

---

**ORDER ON APPLICATION FOR
JOINT PROVISIONAL LIQUIDATORS**

---



Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 l Fax: (284) 393 5805
www.onealwebster.com



**Case Number :BVIHCOM2026/0029**

**FILED**
**HIGH COURT**
**TERRITORY OF**
**THE VIRGIN ISLANDS**

**Submitted Date:14/01/2026 09:16**

**Filed Date:14/01/2026 09:16**

**Fees Paid:0.00**



**Case Number :BVIHCOM2026/0029**



**FILED
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS**

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0029

**Submitted Date:12/01/2026 13:39**

**Filed Date:12/01/2026 13:39**

**Fees Paid:0.00**

BETWEEN:

IN THE MATTER OF TOWARDS SUNSHINE LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

Applicant

-v-

TOWARDS SUNSHINE LIMITED

Respondent

---

ORDER APPLICATION FOR JOINT PROVISIONAL LIQUIDATORS

---

BEFORE:     THE HONOURABLE JUSTICE ABBAS MITHANI

DATED:     THE 9th DAY OF JANUARY, 2026

ENTERED:     THE 12th DAY OF JANUARY, 2026

### PENAL NOTICE

The effect of this Order is that the directors, former directors, office holders and former office holders of the Respondent, TOWARDS SUNSHINE LIMITED ("the Company") are replaced by the joint provisional liquidators and that the directors, former directors, office holders and former office holders are prohibited from taking any action in relation to the Company's affairs without prior consent of the joint provisional liquidators.

If you, the directors, former directors, office holders and former office holders of the Company fail to comply with the terms of this order, proceedings may be commenced against you for contempt of court and you may be liable to be imprisoned, fined or have your assets seized.

**This order must be complied with by any person affected by it upon whom it is served. Any other person who knows of this order and does anything which helps or permits the directors, former directors, office holders and/or former office holders of the Company to breach its terms may also be held to be in contempt of Court and may be imprisoned, fined or have their assets seized.**

**UPON THE ORDINARY APPLICATION** filed by the Applicant on 5 January 2026 seeking the appointment of James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110, Paul Pretlove and David Standish, both eligible overseas insolvency practitioner of Interpath Ltd, 10 Fleet Place, London EC4M 7RB, England as joint provisional liquidators of the Company pursuant to section 170 of the Insolvency Act 2003, (**"the Application"**) coming on for hearing.

**AND UPON HEARING** Paul B. Dennis K.C. and with him Nadine Whyte Laing and Koya Ryan of O'Neal Webster for the Applicant.

**AND UPON** the Attorney General Dawn J. Smith being present.

**AND UPON** Mr. Paul Pretlove and Mr. James Drury, two of the proposed joint provisional liquidators being present.

**AND UPON READING** the Application, the originating application to appoint liquidators of the Company, the first affidavit of the Attorney General, the affidavit of Jeni-Lee Watson and the other documents on the Court file.

**AND UPON** the Application being heard ex parte.

**IT IS HEREBY ORDERED THAT:**

1.    James Drury, Paul Pretlove and David Standish be appointed jointly and severally as provisional liquidators (the **"Joint Provisional Liquidators"**) of the Company until further order.

2.    The Joint Provisional Liquidators have the rights and powers of a liquidator to the extent necessary to maintain the value of the assets owned by the Company and to carry out the functions for which they are appointed.

3.   In addition to the powers outlined in 2 above, the Joint Provisional Liquidators shall have the following specific powers which may be exercised without further sanction or intervention of this Honourable Court:

   a.   to gain entry to the Company's premises and take possession of and preserve the books and records of the Company;

   b.   to identify any assets which may remain in the possession or control of the Company, and to take such steps as may be necessary to protect any such assets from removal or dissipation;

   c.   to seek the recognition (or its equivalent) of the appointment of the Joint Provisional Liquidators in the United States, United Kingdom, Singapore, Hong Kong, Taiwan Thailand and Cambodia or elsewhere for the purposes of securing, realising and remitting assets to the control of the Joint Provisional Liquidators and for the purpose of obtaining access to and control of the records of the Company;

   d.   to commence, continue, discontinue or defend, including by way of counterclaim or similar response, any action or other legal proceedings in the name and on behalf of the Company in so far as necessary to protect the assets and information of the Company including:

      (i)   issuing proceedings against the directors, former directors, office holders and former office holders of the Company, if so advised.

      (ii)   intervening (if so advised) in ongoing proceedings which involve the Company and/or its directors, former directors, office holders and/or its former office holders.

   e.   to vote the shares of the Company in order to prevent the dissipation of its assets.

   f.   to carry on the business of the Company so far as may be necessary for its beneficial provisional liquidation;

   g.   to take all necessary steps to obtain from any person documents or copy documents which belong to the Company or have been created or maintained on its behalf or which the Company has a right to obtain or inspect.

   h.   to appoint an agent including a solicitor, or accountant to do any business that the Joint Provisional Liquidators are unable to do themselves in discharge of their duties, or which can be more conveniently done by an agent;

i.  to investigate the affairs of the Company so far as necessary to protect and, if necessary, retrieve the assets and records of the Company;

j.  to retain, manage and operate the existing bank accounts of the Company including, without limitation, the power to change, remove and replace the signatories of these accounts and, where necessary, to open new bank accounts;

k.  The Joint Provisional Liquidators may draw down payments on account of their remuneration, expenses and disbursements from time to time at a rate of 80% of their time costs and 100% of their expenses and disbursements, subject to these being subsequently approved by the court, and in the event that such sums are not approved, the unapproved sums be repaid to the Company within 7 days;

l.  to apply to the Court for directions concerning any matter arising out of the exercise of the above powers; and

m.  to do all other things as may be incidental to the exercise of the above functions and powers.

n.  to consult and share information with the Applicant to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company.

o.  to cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4.  The Joint Provisional Liquidators are authorised and directed to implement the protocol for consultation and information sharing between them and the Applicant in the draft which is attached hereto ("the Protocol").

5.  Any disclosure of information by the Joint Provisional Liquidators to the Applicant made in good faith and in accordance with the Protocol shall be deemed authorised by the Court and shall not constitute a breach of duty, confidence, data protection obligations or contractual restrictions binding upon the Company.

6.  The Joint Provisional Liquidators shall not be required to disclose material subject to legal professional privilege or litigation privilege.

7. The Joint Provisional Liquidators and the Applicant have liberty to apply on short notice for directions, variation or termination of the Protocol.

8. The costs of the provisional liquidation, including the proper fees and disbursements of the Joint Provisional Liquidators and the Applicant's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

9. The powers set out in paragraph 3 above are to the exclusion of any power exercised or purported to be exercised by any existing director of the Company in so far as such power concerns the affairs of the Company and its assets within the jurisdiction of the Virgin Islands.

10. Save as provided in paragraph 3 above the Joint Provisional Liquidators may not exercise any of the powers set out at Schedule 2 to the Insolvency Act, 2003 without sanction of the court.

11. Pursuant to section 174 of the Insolvency Act, 2003 alternatively pursuant to the inherent jurisdiction of the Court, all actions, suits or proceedings of any nature whatsoever against the Company be and are hereby restrained until further order of the Court.

12. During the period of their appointment, any act required or authorized to be done by the Joint Provisional Liquidators may be done by any one or more of them.

13. This order was made at a hearing without notice to the respondent. There will be a further hearing in respect of the order on or before *29th January 2026* with a time estimate of 30 minutes, for directions only (**the Return Date**).

14. The Joint Provisional Liquidators are to file and serve a report within one clear day before the Return Date summarising steps taken, any immediate concerns and recommended next steps.

15. The Company is at liberty to apply to vary or discharge the order upon giving 72 hours' notice to the Applicant and the Joint Provisional Liquidators.

16. The Joint Provisional Liquidators are at liberty to apply to vary or discharge the order if the allegations set out above are not substantiated or for some other reason upon giving 72 hours' notice to the Applicant and the Company.

17.    The Applicant is not required to give an undertaking in damages.

18.    The costs of this Application be costs in the provisional liquidation.

19.    The Joint Provisional Liquidators are not required to pay or provide security.

BY THE COURT



REGISTRAR

**Protocol for Consultation and Information-Sharing Between the Liquidators and the Attorney General**

This Protocol is annexed to and forms part of the Order of the BVI Commercial Court (the **Court**) made on 9 January 2026 in Claim No. BVIHC (COM) 2026/0029 (**"the Order"**). Capitalised terms bear the meanings given in the Order unless the context otherwise requires.

### 1. Purpose and status

This Protocol sets out a consultative framework between the Liquidators and the Attorney General to facilitate effective cooperation in the public interest, including in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of Towards Sunshine Limited (**"the Company"**) For the avoidance of doubt, this Protocol is made pursuant to and with the approval of the Court, and disclosures made in good faith in accordance with this Protocol are deemed authorised by the Court.

### 2. Guiding principles

The Liquidators shall remain independent and act in the interests of the Company's creditors as a whole and the integrity of the winding up. The Attorney General's participation under this Protocol is consultative and does not fetter the Liquidators' statutory powers or duties, nor the Attorney General's independent functions. Both parties shall conduct themselves with candour, proportionality and respect for legal professional privilege, confidentiality, data protection and rule of law.

Nothing in this Protocol is intended to limit or restrict the ability of the Company's stakeholders to constitute a creditors' committee.

### 3. Definitions

- **Attorney General** means the Attorney General of the Virgin Islands and includes designated officers acting on the Attorney General's behalf for the purposes of this Protocol.
- **The Company** means Towards Sunshine Limited which is the subject of the Order.
- **Confidential Information** means non-public information concerning the Company, the liquidation, related investigations, counterparties and assets, including personal data and material subject to confidentiality obligations owed by the Company or the Liquidators.

- Privileged Material means material subject to legal professional privilege or litigation privilege, or any analogous protection recognised by the Court.

### 4. Appointment and representation

The Attorney General shall constitute a consultative committee and may nominate up to three designated representatives for liaison with the Liquidators, with at least one senior contact identified (the **AGs Committee**). The Attorney General may change representatives on notice to the Liquidators.

The AGs Committee shall serve alongside any creditors' committee (if one is formed), and the Liquidators shall have equal regard to the views expressed by both the AGs Committee and the creditors' committee (if formed).

### 5. Consultation framework

5.1 Meetings. The Liquidators shall convene regular consultation meetings (in person or virtual) with the Attorney General not less than once per quarter, and ad hoc meetings as reasonably required. The Liquidators shall chair meetings and circulate a brief agenda in advance. These meetings may be consolidated with meetings of the creditors' committee (if one is formed).

5.2 Attendance. The Liquidators may invite professional advisers and members of the liquidation team. The Attorney General may invite relevant law enforcement or regulatory personnel, provided confidentiality undertakings are observed.

5.3 Minutes. The Liquidators shall keep concise minutes recording attendees, topics discussed and any agreed actions, subject to privilege and sensitivity redactions where appropriate.

### 6. Reporting

6.1 Periodic reports. The Liquidators shall provide to the Attorney General a confidential report not less than once per quarter covering, to the extent appropriate and not prejudicial to the estate:

- status of asset identification, recovery actions and investigations;
- key applications to the Court and outcomes;
- known factual matters relevant to potential criminal offences or regulatory breaches; and
- anticipated steps in the next period.

6.2 Urgent matters. The Liquidators shall promptly notify the Attorney General of matters reasonably judged to be urgent, including (but not limited to) risk of dissipation, destruction of records, or flight of suspects.

6.3 Templates. The Liquidators may adopt reporting templates and may omit details where disclosure would prejudice recoveries, negotiations, privilege, or legal processes.

### 7. Information requests by the Attorney General

7.1 Scope. The Attorney General may request access to documents, data and information reasonably required in relation to the Company or related persons or entities.

7.2 Process. Requests shall be made in writing, identifying the categories sought, the purpose, and any timing sensitivities. The Liquidators shall acknowledge within 3 business days and respond within a reasonable time, taking into account volume, complexity and competing duties.

7.3 Reasonableness and sequencing. The Liquidators may propose reasonable narrowing, staging or alternative formats, including summaries or redactions, to protect privilege, confidentiality, commercial sensitivity, or the integrity of civil recovery efforts.

7.4 Court supervision. If disagreement arises which cannot be resolved promptly, either party may seek directions from the Court on short notice.

### 8. Authorised disclosures and gateways

8.1 Court authorisation. Subject to sections 9–12, the Liquidators are authorised by the Court to disclose Confidential Information to the Attorney General for the limited purposes of regulatory or criminal investigation and prosecution, restraint, confiscation, forfeiture, mutual legal assistance, and related protective measures, and to receive Confidential Information from the Attorney General for liquidation purposes.

8.2 Statutory gateways. To the extent any statutory or regulatory gateway is required for disclosure or use of information, the parties shall cooperate to identify and use such gateways, including by seeking further directions or orders of the Court as needed.

8.3 No breach. Disclosures made in good faith under this Protocol shall not constitute a breach of duty, confidence, data protection laws, or contractual restrictions binding on the Company, and the Liquidators shall have the protection of the Court accordingly.

### 9. Privilege and confidentiality

9.1 Privilege preserved. The Liquidators shall not be required to disclose Privileged Material. Any inadvertent disclosure shall not constitute a waiver of privilege, and the Attorney General shall promptly return or delete such material and refrain from review or use upon notification.

9.2 Common interest. Where appropriate, and subject to legal advice, the parties may agree that certain exchanges are made on a common interest or joint interest basis to preserve privilege.

9.3 Use restrictions. The Attorney General shall maintain Confidential Information in confidence and use it solely for lawful law enforcement, regulatory and public interest purposes. Dissemination shall be limited to personnel with a need to know who are bound by equivalent confidentiality obligations.

9.4 Protective measures. Upon reasonable request, the Attorney General shall implement protective measures for sensitive materials, including secure handling protocols, restricted circulation, and, where appropriate, applications to seal or redact in criminal or regulatory proceedings to avoid prejudice to the estate.

### 10. Data protection and personal data

The parties shall process personal data lawfully, fairly and securely, with appropriate technical and organisational measures. Where cross-border transfers are contemplated, the parties shall cooperate to ensure a lawful transfer mechanism and, where necessary, seek the Court's directions.

### 11. Preservation and holds

The Liquidators shall implement and maintain appropriate document preservation measures in respect of the Company's records. The Attorney General shall notify the Liquidators of any preservation requirements arising from criminal investigations or proceedings, including anticipated requests or production deadlines, to allow timely compliance.

### 12. Coordination to avoid prejudice and duplication

The parties shall coordinate to minimise prejudice to the estate, civil recoveries and criminal processes, including by sequencing steps, agreeing standstills where appropriate, and consulting on timing of public filings or applications likely to have cross-impact. The Liquidators' primary duty to protect and realise assets shall be respected.

### 13. Public statements and confidentiality vis-à-vis third parties

Public statements about the Company, the liquidation or related investigations shall be coordinated to the extent practicable. The Liquidators may make statements required by law or the Court or necessary to protect assets or correct the market. The Attorney General may make statements required in the exercise of public functions, having regard to the Liquidators' requests to withhold sensitive details.

### 14. Costs and resourcing

The reasonable costs incurred by the Liquidators in complying with this Protocol, including costs of retrieval, review, redaction, secure transmission and liaison, are costs of the liquidation. Where requests impose material incremental burdens, the parties shall confer on pragmatic staging or cost-efficient approaches and, failing agreement, may seek the Court's directions.

### 15. Non-fetter and independence

Nothing in this Protocol fetters or derogates from the Liquidators' statutory powers and duties, or from the Attorney General's independent decision-making. The consultative role does not confer any power of direction over the Liquidators.

### 16. Conflicts and recusals

If a conflict of interest arises affecting any representative, that person shall recuse from relevant consultations. The parties shall notify each other of any material conflicts that could affect the integrity of cooperation, and may seek the Court's directions where necessary.

### 17. International cooperation

Where the Attorney General is engaged in mutual legal assistance, or cooperation with foreign authorities, the parties shall consult on scope and timing to ensure that disclosures and steps taken are consistent with this Protocol and do not unduly prejudice the liquidation or foreign proceedings. The Attorney

General shall take reasonable steps, where feasible, to secure protective handling by foreign authorities of any Confidential Information provided.

### 18. Records and audit trail

The Liquidators shall maintain a record of disclosures made to the Attorney General under this Protocol sufficient to evidence compliance, subject to privilege. The Attorney General shall, upon reasonable request, confirm receipt and any onward lawful use or disclosure to other agencies.

### 19. Duration, variation and termination

This Protocol takes effect upon the making of the Order and continues until the earlier of dissolution of the Company or further order of the Court. It may be varied by written agreement between the Liquidators and the Attorney General approved by the Court, or otherwise by order of the Court. The Court may suspend or terminate this Protocol upon application by either party.

### 20. Notices

Formal notices under this Protocol shall be in writing and sent to the designated contacts of each party as notified from time to time. Operational communications may be conducted by secure electronic means.

### 21. Dispute resolution and directions

Any dispute arising under or in connection with this Protocol shall, in the first instance, be addressed through consultation. Failing prompt resolution, either party may apply to the Court for directions on short notice.

### 22. Safe harbour

No act or omission of the Liquidators done in good faith and with reasonable care in reliance on this Protocol, or any directions of the Court, shall give rise to personal liability. The Liquidators shall be entitled to the usual indemnities out of the assets of the Company.

## Schedule 1 – Illustrative categories of information for disclosure

A. Corporate records: constitutional documents, registers, organisational charts, officer and registered agent details.

B. Financial records: bank statements, ledgers, invoices, loan agreements, asset registers, related party transactions.

C. Communications: selected emails and messaging data from corporate systems relevant to suspected criminality.

D. Counterparty materials: KYC files, contracts, correspondence with intermediaries and fiduciaries.

E. Investigation work product: non-privileged factual memoranda, forensic accounting outputs, chain-of-custody logs.

F. Court materials: statements of affairs, affidavits, pleadings and orders (including sealed materials as authorised).

G. Asset tracing: non-privileged tracing schedules, dashboards, and summaries of restraints or recovery actions.

H. Preservation: litigation hold notices and repositories metadata (to the extent disclosure assists law enforcement).

Disclosure of any category remains subject to sections 9–12 of the Protocol.

## Schedule 2 – Template quarterly consultation report (confidential)

1. Executive summary and key developments.

2. Asset position: discoveries, realisations, restraints and pending recovery actions.

3. Investigations: factual findings, cooperating witnesses, outstanding enquiries.

4. Legal proceedings: applications filed or contemplated; coordination with foreign courts.

5. Law enforcement interface: requests received/made; disclosures; pending deadlines.

6. Risks and mitigants: dissipation risks, data loss risks, reputational issues.

7. Next steps and proposed timetable; matters requiring Attorney General input.

8. Appendices: schedules of documents disclosed; privilege log (if applicable).

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0029


BETWEEN:

IN THE MATTER OF TOWARDS SUNSHINE LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF

THE LAWS OF THE VIRGIN ISLANDS.


 THE ATTORNEY GENERAL

Applicant

-v-

TOWARDS SUNSHINE LIMITED

Respondent


---

### ORDER ON APPLICATION FOR
### JOINT PROVISIONAL LIQUIDATORS

---



**O'Neal Webster**

Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 I Fax: (284) 393 5805
www.onealwebster.com

**Case Number :BVIHCOM2026/0030**

**FILED
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS**

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0030

**Submitted Date:12/01/2026 13:41**

**Filed Date:12/01/2026 13:41**

**Fees Paid:0.00**

BETWEEN:

IN THE MATTER OF UNITED RICHES GLOBAL LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

**Applicant**

-v-

UNITED RICHES GLOBAL LIMITED

**Respondent**

---

ORDER APPLICATION FOR JOINT PROVISIONAL LIQUIDATORS

---

BEFORE:    THE HONOURABLE JUSTICE ABBA MITHANI

DATED:    THE  9th DAY OF JANUARY, 2026

ENTERED:    THE 12 DAY OF JANUARY, 2026

## PENAL NOTICE

The effect of this Order is that the directors, former directors, office holders and former office holders of the Respondent, UNITED RICHES GLOBAL LIMITED ("the Company") are replaced by the joint provisional liquidators and that the directors, former directors, office holders and former office holders are prohibited from taking any action in relation to the Company's affairs without prior consent of the joint provisional liquidators.

If you, the directors, former directors, office holders and former office holders of the Company fail to comply with the terms of this order, proceedings may be commenced against you for contempt of court and you may be liable to be imprisoned, fined or have your assets seized.

**This order must be complied with by any person affected by it upon whom it is served. Any other person who knows of this order and does anything which helps or permits the directors, former directors, office holders and/or former office holders of the Company to breach its terms may also be held to be in contempt of Court and may be imprisoned, fined or have their assets seized.**

**UPON THE ORDINARY APPLICATION** filed by the Applicant on 5 January 2026 seeking the appointment of James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110, Paul Pretlove and David Standish, both eligible overseas insolvency practitioner of Interpath Ltd, 10 Fleet Place, London EC4M 7RB, England as joint provisional liquidators of the Company pursuant to section 170 of the Insolvency Act 2003, ("**the Application**") coming on for hearing.

**AND UPON HEARING** Paul B. Dennis K.C. and with him Nadine Whyte Laing and Koya Ryan of O'Neal Webster for the Applicant.

**AND UPON** the Attorney General Dawn J. Smith being present.

**AND UPON** Mr. Paul Pretlove and Mr. James Drury, two of the proposed joint provisional liquidators being present.

**AND UPON READING** the Application, the originating application to appoint liquidators of the Company, the first affidavit of the Attorney General, the affidavit of Jeni-Lee Watson and the other documents on the Court file.

**AND UPON** the Application being heard ex parte.

**IT IS HEREBY ORDERED THAT:**

1. James Drury, Paul Pretlove and David Standish be appointed jointly and severally as provisional liquidators (the **"Joint Provisional Liquidators"**) of the Company until further order.

2. The Joint Provisional Liquidators have the rights and powers of a liquidator to the extent necessary to maintain the value of the assets owned by the Company and to carry out the functions for which they are appointed.

3.  In addition to the powers outlined in 2 above, the Joint Provisional Liquidators shall have the following specific powers which may be exercised without further sanction or intervention of this Honourable Court:

   a.  to gain entry to the Company's premises and take possession of and preserve the books and records of the Company;

   b.  to identify any assets which may remain in the possession or control of the Company, and to take such steps as may be necessary to protect any such assets from removal or dissipation;

   c.  to seek the recognition (or its equivalent) of the appointment of the Joint Provisional Liquidators in the United States, United Kingdom, Singapore, Hong Kong, Taiwan Thailand and Cambodia or elsewhere for the purposes of securing, realising and remitting assets to the control of the Joint Provisional Liquidators and for the purpose of obtaining access to and control of the records of the Company;

   d.  to commence, continue, discontinue or defend, including by way of counterclaim or similar response, any action or other legal proceedings in the name and on behalf of the Company in so far as necessary to protect the assets and information of the Company including:

      (i)  issuing proceedings against the directors, former directors, office holders and former office holders of the Company, if so advised.

      (ii)  intervening (if so advised) in ongoing proceedings which involve the Company and/or its directors, former directors, office holders and/or its former office holders.

   e.  to vote the shares of the Company in order to prevent the dissipation of its assets.

   f.  to carry on the business of the Company so far as may be necessary for its beneficial provisional liquidation;

   g.  to take all necessary steps to obtain from any person documents or copy documents which belong to the Company or have been created or maintained on its behalf or which the Company has a right to obtain or inspect.

   h.  to appoint an agent including a solicitor, or accountant to do any business that the Joint Provisional Liquidators are unable to do themselves in discharge of their duties, or which can be more conveniently done by an agent;

i.     to investigate the affairs of the Company so far as necessary to protect and, if necessary, retrieve the assets and records of the Company;

j.     to retain, manage and operate the existing bank accounts of the Company including, without limitation, the power to change, remove and replace the signatories of these accounts and, where necessary, to open new bank accounts;

k.     The Joint Provisional Liquidators may draw down payments on account of their remuneration, expenses and disbursements from time to time at a rate of 80% of their time costs and 100% of their expenses and disbursements, subject to these being subsequently approved by the court, and in the event that such sums are not approved, the unapproved sums be repaid to the Company within 7 days;

l.     to apply to the Court for directions concerning any matter arising out of the exercise of the above powers; and

m.    to do all other things as may be incidental to the exercise of the above functions and powers.

n.     to consult and share information with the Applicant to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company.

o.     to cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4.   The Joint Provisional Liquidators are authorised and directed to implement the protocol for consultation and information sharing between them and the Applicant in the draft which is attached hereto (**"the Protocol"**).

5.   Any disclosure of information by the Joint Provisional Liquidators to the Applicant made in good faith and in accordance with the Protocol shall be deemed authorised by the Court and shall not constitute a breach of duty, confidence, data protection obligations or contractual restrictions binding upon the Company.

6.   The Joint Provisional Liquidators shall not be required to disclose material subject to legal professional privilege or litigation privilege.

7.  The Joint Provisional Liquidators and the Applicant have liberty to apply on short notice for directions, variation or termination of the Protocol.

8.  The costs of the provisional liquidation, including the proper fees and disbursements of the Joint Provisional Liquidators and the Applicant's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

9.  The powers set out in paragraph 3 above are to the exclusion of any power exercised or purported to be exercised by any existing director of the Company in so far as such power concerns the affairs of the Company and its assets within the jurisdiction of the Virgin Islands.

10. Save as provided in paragraph 3 above the Joint Provisional Liquidators may not exercise any of the powers set out at Schedule 2 to the Insolvency Act, 2003 without sanction of the court.

11. Pursuant to section 174 of the Insolvency Act, 2003 alternatively pursuant to the inherent jurisdiction of the Court, all actions, suits or proceedings of any nature whatsoever against the Company be and are hereby restrained until further order of the Court.

12. During the period of their appointment, any act required or authorized to be done by the Joint Provisional Liquidators may be done by any one or more of them.

13. This order was made at a hearing without notice to the respondent. There will be a further hearing in respect of the order on or before *29th January 2026* with a time estimate of 30 minutes, for directions only (**the Return Date**).

14. The Joint Provisional Liquidators are to file and serve a report within one clear day before the Return Date summarising steps taken, any immediate concerns and recommended next steps.

15. The Company is at liberty to apply to vary or discharge the order upon giving 72 hours' notice to the Applicant and the Joint Provisional Liquidators.

16. The Joint Provisional Liquidators are at liberty to apply to vary or discharge the order if the allegations set out above are not substantiated or for some other reason upon giving 72 hours' notice to the Applicant and the Company.

17.    The Applicant is not required to give an undertaking in damages.

18.    The costs of this Application be costs in the provisional liquidation.

19.    The Joint Provisional Liquidators are not required to pay or provide security.

**BY THE COURT**

_____

**REGISTRAR**

**Protocol for Consultation and Information-Sharing Between the Liquidators and the Attorney General**

This Protocol is annexed to and forms part of the Order of the BVI Commercial Court (the **Court**) made on 9 January 2026 in Claim No. BVIHC (COM) 2026/0030 **("the Order").** Capitalised terms bear the meanings given in the Order unless the context otherwise requires.

### 1. Purpose and status

This Protocol sets out a consultative framework between the Liquidators and the Attorney General to facilitate effective cooperation in the public interest, including in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of United Riches Global Limited **("the Company")** For the avoidance of doubt, this Protocol is made pursuant to and with the approval of the Court, and disclosures made in good faith in accordance with this Protocol are deemed authorised by the Court.

### 2. Guiding principles

The Liquidators shall remain independent and act in the interests of the Company's creditors as a whole and the integrity of the winding up. The Attorney General's participation under this Protocol is consultative and does not fetter the Liquidators' statutory powers or duties, nor the Attorney General's independent functions. Both parties shall conduct themselves with candour, proportionality and respect for legal professional privilege, confidentiality, data protection and rule of law.

Nothing in this Protocol is intended to limit or restrict the ability of the Company's stakeholders to constitute a creditors' committee.

### 3. Definitions

- Attorney General means the Attorney General of the Virgin Islands and includes designated officers acting on the Attorney General's behalf for the purposes of this Protocol.
- The Company means United Riches Global Limited which is the subject of the Order.
- Confidential Information means non-public information concerning the Company, the liquidation, related investigations, counterparties and assets, including personal data and material subject to confidentiality obligations owed by the Company or the Liquidators.

- Privileged Material means material subject to legal professional privilege or litigation privilege, or any analogous protection recognised by the Court.

### 4. Appointment and representation

The Attorney General shall constitute a consultative committee and may nominate up to three designated representatives for liaison with the Liquidators, with at least one senior contact identified (the **AGs Committee**). The Attorney General may change representatives on notice to the Liquidators.

The AGs Committee shall serve alongside any creditors' committee (if one is formed), and the Liquidators shall have equal regard to the views expressed by both the AGs Committee and the creditors' committee (if formed).

### 5. Consultation framework

5.1 Meetings. The Liquidators shall convene regular consultation meetings (in person or virtual) with the Attorney General not less than once per quarter, and ad hoc meetings as reasonably required. The Liquidators shall chair meetings and circulate a brief agenda in advance. These meetings may be consolidated with meetings of the creditors' committee (if one is formed).

5.2 Attendance. The Liquidators may invite professional advisers and members of the liquidation team. The Attorney General may invite relevant law enforcement or regulatory personnel, provided confidentiality undertakings are observed.

5.3 Minutes. The Liquidators shall keep concise minutes recording attendees, topics discussed and any agreed actions, subject to privilege and sensitivity redactions where appropriate.

### 6. Reporting

6.1 Periodic reports. The Liquidators shall provide to the Attorney General a confidential report not less than once per quarter covering, to the extent appropriate and not prejudicial to the estate:

- status of asset identification, recovery actions and investigations;
- key applications to the Court and outcomes;
- known factual matters relevant to potential criminal offences or regulatory breaches; and
- anticipated steps in the next period.

6.2 Urgent matters. The Liquidators shall promptly notify the Attorney General of matters reasonably judged to be urgent, including (but not limited to) risk of dissipation, destruction of records, or flight of suspects.

6.3 Templates. The Liquidators may adopt reporting templates and may omit details where disclosure would prejudice recoveries, negotiations, privilege, or legal processes.

### 7. Information requests by the Attorney General

7.1 Scope. The Attorney General may request access to documents, data and information reasonably required in relation to the Company or related persons or entities.

7.2 Process. Requests shall be made in writing, identifying the categories sought, the purpose, and any timing sensitivities. The Liquidators shall acknowledge within 3 business days and respond within a reasonable time, taking into account volume, complexity and competing duties.

7.3 Reasonableness and sequencing. The Liquidators may propose reasonable narrowing, staging or alternative formats, including summaries or redactions, to protect privilege, confidentiality, commercial sensitivity, or the integrity of civil recovery efforts.

7.4 Court supervision. If disagreement arises which cannot be resolved promptly, either party may seek directions from the Court on short notice.

### 8. Authorised disclosures and gateways

8.1 Court authorisation. Subject to sections 9–12, the Liquidators are authorised by the Court to disclose Confidential Information to the Attorney General for the limited purposes of regulatory or criminal investigation and prosecution, restraint, confiscation, forfeiture, mutual legal assistance, and related protective measures, and to receive Confidential Information from the Attorney General for liquidation purposes.

8.2 Statutory gateways. To the extent any statutory or regulatory gateway is required for disclosure or use of information, the parties shall cooperate to identify and use such gateways, including by seeking further directions or orders of the Court as needed.

8.3 No breach. Disclosures made in good faith under this Protocol shall not constitute a breach of duty, confidence, data protection laws, or contractual restrictions binding on the Company, and the Liquidators shall have the protection of the Court accordingly.

### 9. Privilege and confidentiality

9.1 Privilege preserved. The Liquidators shall not be required to disclose Privileged Material. Any inadvertent disclosure shall not constitute a waiver of privilege, and the Attorney General shall promptly return or delete such material and refrain from review or use upon notification.

9.2 Common interest. Where appropriate, and subject to legal advice, the parties may agree that certain exchanges are made on a common interest or joint interest basis to preserve privilege.

9.3 Use restrictions. The Attorney General shall maintain Confidential Information in confidence and use it solely for lawful law enforcement, regulatory and public interest purposes. Dissemination shall be limited to personnel with a need to know who are bound by equivalent confidentiality obligations.

9.4 Protective measures. Upon reasonable request, the Attorney General shall implement protective measures for sensitive materials, including secure handling protocols, restricted circulation, and, where appropriate, applications to seal or redact in criminal or regulatory proceedings to avoid prejudice to the estate.

### 10. Data protection and personal data

The parties shall process personal data lawfully, fairly and securely, with appropriate technical and organisational measures. Where cross-border transfers are contemplated, the parties shall cooperate to ensure a lawful transfer mechanism and, where necessary, seek the Court's directions.

### 11. Preservation and holds

The Liquidators shall implement and maintain appropriate document preservation measures in respect of the Company's records. The Attorney General shall notify the Liquidators of any preservation requirements arising from criminal investigations or proceedings, including anticipated requests or production deadlines, to allow timely compliance.

### 12. Coordination to avoid prejudice and duplication

The parties shall coordinate to minimise prejudice to the estate, civil recoveries and criminal processes, including by sequencing steps, agreeing standstills where appropriate, and consulting on timing of public filings or applications likely to have cross-impact. The Liquidators' primary duty to protect and realise assets shall be respected.

### 13. Public statements and confidentiality vis-à-vis third parties

Public statements about the Company, the liquidation or related investigations shall be coordinated to the extent practicable. The Liquidators may make statements required by law or the Court or necessary to protect assets or correct the market. The Attorney General may make statements required in the exercise of public functions, having regard to the Liquidators' requests to withhold sensitive details.

### 14. Costs and resourcing

The reasonable costs incurred by the Liquidators in complying with this Protocol, including costs of retrieval, review, redaction, secure transmission and liaison, are costs of the liquidation. Where requests impose material incremental burdens, the parties shall confer on pragmatic staging or cost-efficient approaches and, failing agreement, may seek the Court's directions.

### 15. Non-fetter and independence

Nothing in this Protocol fetters or derogates from the Liquidators' statutory powers and duties, or from the Attorney General's independent decision-making. The consultative role does not confer any power of direction over the Liquidators.

### 16. Conflicts and recusals

If a conflict of interest arises affecting any representative, that person shall recuse from relevant consultations. The parties shall notify each other of any material conflicts that could affect the integrity of cooperation, and may seek the Court's directions where necessary.

### 17. International cooperation

Where the Attorney General is engaged in mutual legal assistance, or cooperation with foreign authorities, the parties shall consult on scope and timing to ensure that disclosures and steps taken are consistent with this Protocol and do not unduly prejudice the liquidation or foreign proceedings. The Attorney

General shall take reasonable steps, where feasible, to secure protective handling by foreign authorities of any Confidential Information provided.

### 18. Records and audit trail

The Liquidators shall maintain a record of disclosures made to the Attorney General under this Protocol sufficient to evidence compliance, subject to privilege. The Attorney General shall, upon reasonable request, confirm receipt and any onward lawful use or disclosure to other agencies.

### 19. Duration, variation and termination

This Protocol takes effect upon the making of the Order and continues until the earlier of dissolution of the Company or further order of the Court. It may be varied by written agreement between the Liquidators and the Attorney General approved by the Court, or otherwise by order of the Court. The Court may suspend or terminate this Protocol upon application by either party.

### 20. Notices

Formal notices under this Protocol shall be in writing and sent to the designated contacts of each party as notified from time to time. Operational communications may be conducted by secure electronic means.

### 21. Dispute resolution and directions

Any dispute arising under or in connection with this Protocol shall, in the first instance, be addressed through consultation. Failing prompt resolution, either party may apply to the Court for directions on short notice.

### 22. Safe harbour

No act or omission of the Liquidators done in good faith and with reasonable care in reliance on this Protocol, or any directions of the Court, shall give rise to personal liability. The Liquidators shall be entitled to the usual indemnities out of the assets of the Company.

**Schedule 1 – Illustrative categories of information for disclosure**

A. Corporate records: constitutional documents, registers, organisational charts, officer and registered agent details.

B. Financial records: bank statements, ledgers, invoices, loan agreements, asset registers, related party transactions.

C. Communications: selected emails and messaging data from corporate systems relevant to suspected criminality.

D. Counterparty materials: KYC files, contracts, correspondence with intermediaries and fiduciaries.

E. Investigation work product: non-privileged factual memoranda, forensic accounting outputs, chain-of-custody logs.

F. Court materials: statements of affairs, affidavits, pleadings and orders (including sealed materials as authorised).

G. Asset tracing: non-privileged tracing schedules, dashboards, and summaries of restraints or recovery actions.

H. Preservation: litigation hold notices and repositories metadata (to the extent disclosure assists law enforcement).

Disclosure of any category remains subject to sections 9–12 of the Protocol.

**Schedule 2 – Template quarterly consultation report (confidential)**

1. Executive summary and key developments.

2. Asset position: discoveries, realisations, restraints and pending recovery actions.

3. Investigations: factual findings, cooperating witnesses, outstanding enquiries.

4. Legal proceedings: applications filed or contemplated; coordination with foreign courts.

5. Law enforcement interface: requests received/made; disclosures; pending deadlines.

6. Risks and mitigants: dissipation risks, data loss risks, reputational issues.

7. Next steps and proposed timetable; matters requiring Attorney General input.

8. Appendices: schedules of documents disclosed; privilege log (if applicable).

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0030

BETWEEN:

IN THE MATTER OF UNITED RICHES GLOBAL LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF

THE LAWS OF THE VIRGIN ISLANDS.

 THE ATTORNEY GENERAL

                                                                    **Applicant**

-v-

UNITED RICHES GLOBAL LIMITED

                                                                    **Respondent**

---

**ORDER ON APPLICATION FOR**
**JOINT PROVISIONAL LIQUIDATORS**

---



Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 l Fax: (284) 393 5805
www.onealwebster.com