Andrew G. Dietderich
Sharon Cohen Levin
Christopher J. Dunne
Jacob M. Croke
Alexa J. Kranzley
**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, NY 10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

*Counsel to the Authorized Foreign Representatives*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>PRINCE GLOBAL HOLDINGS LIMITED *et al.*,[1]<br><br>    Debtors in Foreign Proceedings. | Chapter 15<br><br>Case No. 26-(_____) (__)<br><br>(Joint Administration Requested) |

**DECLARATION OF ANDREW BARRINGTON CHISSICK IN SUPPORT OF (A) THE EMERGENCY MOTION FOR ENTRY OF ORDERS GRANTING (I) *EX PARTE* RELIEF AND (II) PROVISIONAL RELIEF, PURSUANT TO SECTION 1519 OF THE BANKRUPTCY CODE AND (B) THE VERIFIED PETITION UNDER CHAPTER 15 FOR RECOGNITION OF FOREIGN MAIN PROCEEDINGS AND RELATED RELIEF**

1.      I, Andrew Barrington Chissick, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge and belief.

**Introduction**

2.      I am a British Virgin Islands ("BVI") legal practitioner and partner of the law firm Walkers (Europe) ("Walkers"), one of the leading offshore law firms.  I am a member of the firm's Insolvency and Dispute Resolution Practice Group, advising on matters of BVI,

---

[1]    The Debtors in these Chapter 15 Cases are incorporated in the British Virgin Islands and maintain their registered address at Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands, VG1110.  A complete list of the Debtors and their company numbers is attached as Exhibit A.

Bermuda and Cayman Islands law.

3.      I initially trained at the London offices of Mayer Brown International LLP ("Mayer Brown") and was admitted as a solicitor of England and Wales in 2012, following which I practiced for several years as an associate on Mayer Brown's Commercial Dispute Resolution team.  In 2015, I relocated to the BVI to join the firm Carey Olsen LLP and was admitted as a BVI legal practitioner.

4.      In 2019, I joined Walkers' London office and was made partner in July 2022.

5.      Although I remain on the roll of solicitors of England and Wales, I am non-practicing and my legal practice exclusively involves advising on the laws of the BVI, Bermuda and the Cayman Islands, particularly in the context of insolvency and restructuring-related disputes.  I have acted in a number of significant insolvency and restructuring matters before the Eastern Caribbean Supreme Court in the BVI High Court of Justice (Commercial Division) (the "BVI Court"), including the liquidation of certain entities connected to Robert and Vincent Tchenguiz, the provisional liquidation of the OAS Group, the liquidation of the Limora group of companies and the liquidation of various Bernie Madoff feeder funds.

6.      In the course of my practice, I advise liquidators, provisional liquidators and foreign representatives in complex, multi-jurisdictional proceedings, including matters requiring coordination with courts in other jurisdictions.  I have acted in matters that involved coordination with courts in the United States, such as the Limora and OAS Group proceedings referenced above. *In re Limora Invs. Ltd.*, No. 19-11678 (Bankr. S.D.N.Y. May 23, 2019). *In re OAS S.A.,* 533 B.R. 83 (Bankr. S.D.N.Y. 2015).

7.      On January 5, 2026, the Attorney General of the BVI commenced proceedings by way of originating applications for the appointment of joint liquidators over each of the Debtors and, in parallel, ordinary applications for the interim appointment of joint provisional liquidators (together, the "BVI Proceedings").[2]  On January 9, pursuant to orders issued in the BVI Proceedings (the "BVI Orders"), the BVI Court duly appointed Paul Pretlove, David Standish and James Drury as the joint provisional liquidators of the Debtors and, in such capacity, the JPLs of the Debtors (collectively, the "JPLs").

8.      The JPLs engaged Walkers to advise on BVI law and to serve as legal counsel in connection with the BVI Proceedings.  I am the partner primarily responsible for the matter at Walkers.  In that capacity, I am familiar with the matters described in this declaration (the "Declaration").  I am also familiar with the *Declaration of Paul Pretlove in Support of (A) the Emergency Motion for Entry of Orders Granting (I) Ex Parte Relief and (II) Provisional Relief, Pursuant to Sectio 1519 of the Bankruptcy Code and (B) the Verified Petition Under Chapter 15 for Recognition of Foreign Main Proceedings and Related Relief* (the "Pretlove Declaration").

9.      I respectfully submit this Declaration in support of (a) the *Emergency Motion for Entry of Orders Granting (I) Ex Parte Relief and (II) Provisional Relief, Pursuant to Section 1519 of the Bankruptcy Code* (the "Provisional Relief Motion") filed contemporaneously therewith, and (b) the petitions filed under Chapter 15 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code") and the *Verified Petition Under Chapter 15 for Recognition of Foreign Main Proceedings and Related Relief* (the "Verified Petition" and, together with the foregoing petitions, the "Petitions") filed by the JPLs relating to the BVI Proceedings,

---

[2]   A complete list of the BVI Proceedings is attached as Exhibit B.

which were commenced pursuant to section 170 of the Insolvency Act, 2003 (the "BVI Insolvency Act"), a copy of which is attached hereto as Exhibit C.

10.     The BVI Proceedings were commenced by the Attorney General of the BVI and arise from a common factual background.  Each of the Debtors is incorporated under the laws of the BVI and subject to a substantively identical BVI Order.  Accordingly, the legal analysis set forth in this Declaration applies equally to each of the Debtors.

11.     Although I am not an attorney qualified to practice law in the United States, I am broadly familiar with the provisions of Chapter 15 of the Bankruptcy Code as a consequence of my BVI practice, my involvement with other cross-border insolvency proceedings and my engagement with U.S. insolvency lawyers.

12.     The Petitions seek (i) recognition of the BVI Proceedings as "foreign main proceedings" pursuant to sections 1502 and 1517(b)(1) of the Bankruptcy Code, (ii) recognition of the JPLs as the "foreign representatives" of the Debtors, (iii) all relief afforded to foreign main proceedings under section 1520 of the Bankruptcy Code, including the imposition of the automatic stay within the United States, (iv) recognition of, and grant of comity to, the BVI Orders, giving them full force and effect within the United States, (v) a waiver of the 14-day stay of effectiveness and (vi) related relief.

13.     The Provisional Relief Motion seeks (i) *ex parte* emergency relief pending entry of an order granting provisional relief and (ii) provisional relief pending recognition of the BVI Proceedings as foreign main proceedings and the Court's issuance of a continued injunction related thereto.

14.     Except as otherwise noted, the statements of fact set forth in this Declaration are based on my personal knowledge or on my review of relevant documents.  To the extent

this Declaration contains statements of law or legal opinion, such statements represent my considered opinion as a practitioner of BVI law.

15.    For the reasons set forth below, and as advised by the Debtors' U.S. counsel, it is my view that: (i) the BVI Proceedings constitute collective judicial proceedings commenced under the BVI Insolvency Act—a law relating to insolvency—in which the assets and affairs of the Debtors are subject to the control and supervision of the BVI Court, and accordingly satisfy the criteria for "foreign proceedings" within the meaning of section 101(23) of the Bankruptcy Code; (ii) the JPLs, as officers of the BVI Court authorized to administer the Debtors' affairs, satisfy the criteria for "foreign representatives" within the meaning of section 101(24) of the Bankruptcy Code; (iii) the BVI Orders should be given recognition, comity and full force and effect within the United States; and (iv) the circumstances of the BVI Proceedings support a waiver of the 14-day stay of effectiveness.

**Background**

16.    Each of the Debtors was incorporated under the laws of the BVI as a business company under the BVI Business Companies Act, 2004 (as revised) (the "BCA"). In each case, the Debtors are companies limited by shares, which are referred to as limited companies under the BCA. Under BVI law, a member of a limited company has no liability as a member for the liabilities of the company. I understand a BVI limited company to be broadly comparable to a corporation under United States law.

17.    As noted above, the BVI Proceedings arise from applications by the Attorney General of the BVI dated January 5, 2026, pursuant to sections 162(1)(b) and (c) of the BVI Insolvency Act, seeking the appointment of joint liquidators over each of the Debtors (the "Liquidation Applications"). In parallel, the BVI Attorney General filed applications within the

BVI Proceedings pursuant to section 170 of the BVI Insolvency Act for the appointment of joint provisional liquidators pending the determination of the Liquidation Applications (the "Provisional Liquidation Applications").  Section 170 of the BVI Insolvency Act empowers the BVI Court, upon the filing of an application to appoint a liquidator and pending the determination of such application, to appoint provisional liquidators on such terms and with such powers as the BVI Court considers appropriate, including where such appointment is necessary to maintain the value of assets owned or managed by a company or is otherwise required in the public interest.

18.    According to the written submissions filed by the BVI Attorney General in support of the Provisional Liquidation Applications, attached hereto with related schedules as Exhibit D (the "Skeleton Argument"), the Debtors are controlled by Chen Zhi and are alleged to be associated with a transnational criminal organization referred to as the "Prince Group," a Cambodian corporate conglomerate that also includes companies incorporated in the Cayman Islands, Singapore, Hong Kong and Taiwan.  Skeleton Argument ¶ 11.  The Prince Group has been identified by numerous international law enforcement authorities and agencies as a large-scale criminal enterprise operating across multiple jurisdictions and is alleged to be engaged in, among other things, cryptocurrency investment fraud, wire fraud, money laundering, human trafficking, forced labor and related financial crimes.  Skeleton Argument ¶¶ 14, 21, 23.  On October 14, 2025, the United States Department of Justice announced the filing of criminal charges against Chen Zhi, alleging conspiracy to commit wire fraud and conspiracy to commit money laundering, together with a related civil forfeiture action seeking forfeiture of approximately 127,271 Bitcoin alleged to represent proceeds traceable to criminal activities connected to the Prince Group.[3]

---

[3]    *Chairman of Prince Group Indicted for Operating Cambodian Forced-Labor Scam Compounds Engaged in Cryptocurrency Fraud Schemes*, U.S. Dep't of Just., U.S. Att'y's Off., E.D.N.Y. (October 14, 2025),

19.     In parallel, the United States Department of the Treasury's Office of Foreign Assets Control designated the Prince Group as a transnational criminal organization and imposed sanctions on Chen Zhi and numerous other individuals and entities alleged to be part of, or acting on behalf of, the Prince Group.  These designations resulted in the blocking of property and interests in property of the designated persons within the United States and restrictions on dealings by U.S. persons with such persons or entities.  Most of the Debtors were identified in these designations as entities associated with the Prince Group.[4]

20.     On October 14, 2025, the government of the United Kingdom ("U.K.") announced corresponding sanctions against individuals associated with the Prince Group, including measures affecting assets and properties located in the U.K. and held directly or indirectly by various corporate structures, including entities incorporated in the BVI.  Following the extension of U.K. sanctions to the BVI, the BVI Financial Services Commission issued sanctions guidance reminding regulated persons of their obligations under BVI law and the criminal consequences of non-compliance.[5]

21.     The Skeleton Argument further describes enforcement and investigative actions undertaken in other jurisdictions, including Singapore, Hong Kong, Taiwan and Thailand, where authorities announced seizures or freezing of assets alleged to be connected to the Prince Group, as well as arrests and investigations relating to fraud, money laundering and human-trafficking offenses.  Skeleton Argument ¶ 21.

---

https://www.justice.gov/opa/pr/chairman-prince-group-indicted-operating-cambodian-forced-labor-scam-compounds-engaged.

[4]     *Transnational Criminal Organizations Designations; Issuance of TCO-related General License*, U.S. Dep't of the Treasury, Off. of Foreign Assets Control (October 14, 2025), https://ofac.treasury.gov/recent-actions/20251014.

[5]     *UK and US Take Joint Action to Disrupt Major Online Fraud Network*, GOV.UK (October 14, 2025), https://www.gov.uk/government/news/uk-and-us-take-joint-action-to-disrupt-major-online-fraud-network.

22.    In light of these allegations and enforcement actions, the BVI Attorney General filed the Provisional Liquidation Applications on an urgent *ex parte* basis, seeking to (i) remove control from individuals alleged to have exercised control over, or to have used, the Debtors in connection with the activities attributed to the Prince Group, (ii) secure and preserve assets and records, (iii) facilitate independent investigation by court-appointed officers and (iv) enable coordinated cooperation with foreign regulatory, enforcement and judicial authorities. Skeleton Argument ¶¶ 47–49, 61–62.

23.    The BVI Orders, which were issued on January 9, 2026, granted the interim relief sought by the BVI Attorney General, thus appointing the JPLs as joint provisional liquidators pending the determination of the Liquidation Applications.  The BVI Orders were continued on an *inter partes* basis by way of orders dated January 29, 2026.  The BVI Orders confer upon the JPLs broad authority to (i) investigate the Debtors' affairs, (ii) preserve and realize assets and (iii) seek assistance and cooperation in foreign jurisdictions.  In addition, the BVI Orders provide, in material part, that the powers expressly granted to the JPLs are to the exclusion of any power exercised or purported to be exercised by any existing director of each Debtor.  They also contain penal notices (the "Penal Notices") providing that pursuant to the BVI Orders, the directors, former directors, officeholders and former officeholders of each of the Debtors are replaced with the JPLs and those directors, former directors, officeholders and former officeholders are expressly prohibited from taking any action in relation to the affairs of the Debtors without the prior consent of the JPLs.  BVI Orders ¶ 9; Penal Notices.  Copies of the BVI Orders for each of the Debtors are attached hereto as Exhibit E.

24.    The BVI Orders grant the JPLs the authority to take control of the affairs of the Debtors under the supervision of the BVI Court.  The JPLs are expressly empowered to, among

-8-

other things, (i) take possession of and preserve books and records, (ii) identify and secure assets, (iii) investigate the affairs of the Debtors, (iv) commence and pursue proceedings in the name and on behalf of the Debtors, (v) obtain documents and information from third parties, (vi) operate and control bank accounts and (vii) cooperate and share information with regulatory and law enforcement authorities in the BVI and in other jurisdictions.  BVI Orders ¶ 3.

25.     The BVI Orders also expressly authorize the JPLs, without further sanction or intervention of the BVI Court, to seek recognition or its equivalent in foreign jurisdictions.  In particular, paragraph 3(c) of the BVI Orders provides that the JPLs have the power "to seek the recognition (or its equivalent) of the appointment of the [JPLs] in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, Thailand and Cambodia or elsewhere for the purposes of securing, realizing and remitting assets to the control of the [JPLs] and for the purpose of obtaining access to and control of the records of the Company."  BVI Orders ¶ 3(c).  Accordingly, the JPLs are authorized under the BVI Orders to commence proceedings under Chapter 15 of the Bankruptcy Code seeking recognition of the appointment of the JPLs.

### Sources of BVI Law and its Insolvency Framework

26.     The BVI is a British Overseas Territory.  Executive authority is vested in the British Crown and is exercised in the BVI by the Governor of the BVI, who is appointed by the British Government.  The BVI is functionally independent from the United Kingdom, although the British Government remains responsible for defense and foreign affairs in the BVI.

27.     The BVI has its own law—which is based on the law of England and Wales and comprises both statute and common law—and its own legal system.  The BVI Court is a member state of the Eastern Caribbean Supreme Court, which is a regional court for several islands in the Eastern Caribbean.  Such Court comprises the High Court for commercial and civil matters

and the Court of Appeal, and final appeals lie with the Judicial Committee of the Privy Council in the United Kingdom.

28.     Legislation in the BVI is passed by the House of Assembly and requires the consent of the Governor as the representative of the British Crown.

29.     Legislation can also be imposed upon the BVI by the United Kingdom, through legislation of the British Parliament or by orders in Council.  British legislation does not, however, automatically extend to the BVI, unless specifically extended either by an Order in Council or through the scope and wording of the British legislation itself.

30.     The consequence of this is that, in relation to the matters addressed in this Declaration, BVI law is independent and distinct from English law.

31.     The BVI Insolvency Act establishes a comprehensive statutory framework governing corporate insolvency proceedings in the BVI, including liquidation, provisional liquidation, creditor arrangements, receivership and administrative receivership.  BVI insolvency law is closely aligned with and bears many similarities to the insolvency laws of England and Wales.

32.     Pursuant to section 162 of the BVI Insolvency Act, the BVI Court may, upon the application of a person specified in such section,[6] including the BVI Attorney General, appoint a liquidator of a company under section 159(1) if (i) the company is insolvent, (ii) the BVI Court is of the opinion that it is just and equitable that a liquidator should be appointed or (iii) the BVI Court is of the opinion that it is in the public interest for a liquidator to be appointed.  BVI Insolvency Act § 162(1)(a)–(c).

---

[6]   The persons specified under section 162(2) of the BVI Insolvency Act are:  the company; a creditor; a member; the supervisor of a creditors' arrangement in respect of the company; the Financial Services Commission; the International Tax Authority; and the BVI Attorney General.

33.     Pursuant to section 170 of the BVI Insolvency Act, where an application for the appointment of a liquidator has been filed but not yet determined or withdrawn, the BVI Court may appoint an eligible insolvency practitioner as a provisional liquidator of the company.  In material part, the BVI Court may appoint a provisional liquidator if it satisfied that such an appointment is (a) necessary for the purpose of maintaining the value of assets owned or managed by the company or (b) in the public interest.

34.     A provisional liquidator has the rights and powers of a liquidator to the extent necessary to maintain the value of the assets owned or managed by the company or to carry out the functions for which he was appointed.

35.     While the precise powers of a provisional liquidator are set by the BVI Court, in general terms, the primary role of a provisional liquidator is to maintain the value of company assets.  In practice, provisional liquidators are typically granted powers to (i) identify and preserve the assets of the company, (ii) ensure that the company's books and records are preserved and (iii) commence preliminary inquiries into the affairs of the company.  The BVI Court has broad discretion to grant the provisional liquidators powers tailored to the circumstances of the case, including, where appropriate, powers that extend beyond those typically associated with a preservative role.

36.     Provisional liquidators act as officers of the BVI Court and as agents of the company.  Pursuant to section 171 of the BVI Insolvency Act, a provisional liquidator has the rights and powers of a liquidator to the extent necessary to maintain the value of the assets owned or managed by the company or to carry out the functions for which he or she was appointed, subject to the terms of the order of appointment and any subsequent amendments as ordered by the BVI Court.  Upon the appointment of provisional liquidators, the material powers of directors and other

-11-

officeholders over the affairs of the company are typically suspended and vest in the provisional liquidators.

37.     Section 170(5) of the BVI Insolvency Act provides that the BVI Court may "appoint a provisional liquidator on such terms as it considers fit," while section 171(2) confers discretion on the BVI Court to limit the powers of provisional liquidators as it considers appropriate.  The powers and duties of a provisional liquidator are therefore conferred by the terms of the appointing order rather than arising automatically by operation of statute.

38.     The provisional liquidators' appointment has no fixed duration and terminates upon either (i) the BVI Court's determination on the application to appoint a liquidator or (ii) by other order of the BVI Court, either on its own motion or on the application of the provisional liquidator or a person specified under section 170(2) of the BVI Insolvency Act.[7]  BVI Insolvency Act § 173.

39.     If the BVI Court grants the extant application for the appointment of a liquidator, full liquidation proceedings commence, and the company enters liquidation under the BVI Insolvency Act.  Although it is ultimately subject to the order of the BVI Court, where provisional liquidators are in place prior to the granting of an application for the appointment of liquidators, those provisional liquidators usually assume the full liquidator appointments.

40.     Upon appointment a liquidator shall have the powers set out at Schedule 2 of the BVI Insolvency Act, which include, but are not limited to, (i) the power to realize assets of the company, (ii) settle claims, (iii) pay any class of creditors in full and (iv) commence, continue,

---

[7]   The persons specified under section 170(2) of the BVI Insolvency Act are:  the applicant for the appointment of a liquidator; the company; a creditor; a member; the Financial Services Commission; the International Tax Authority; the Virgin Islands Deposit Insurance Corporation; and the BVI Attorney General.

discontinue or defend any action or other legal proceedings in the name and on behalf of the company.

41.    Subject to the terms of any appointment order of the BVI Court, the foregoing Schedule 2 powers do not automatically vest with a provisional liquidator by operation of statute, but may be conferred by the BVI Court to the extent necessary to carry out the functions for which the provisional liquidator was appointed.  As set forth below, the BVI Court conferred broad powers on the JPLs in light of the particular circumstances of the Debtors.

**The Provisional Liquidation of the Debtors**

42.    Pursuant to the BVI Orders, the JPLs, jointly and severally, possess the rights and powers of a liquidator to the extent necessary to maintain the value of the Debtors' assets and to carry out the functions for which they were appointed.  BVI Orders ¶¶ 1–2; BVI Insolvency Act §§ 170–171.

43.    In addition to the powers conferred by the BVI Orders, the powers of a liquidator are set out in the BVI Insolvency Act, including in section 186 and Schedule 2.  In the case of provisional liquidators, such powers are exercisable to the extent necessary to maintain the value of the company's assets and to carry out the functions for which they were appointed, at all times subject to any terms of the appointment orders.  *See* BVI Insolvency Act §§ 171(1).

44.    Consistent with the terms of the BVI Orders, the directors and other officers of each of the Debtors remain in office but have ceased, in material part, to have any authority to exercise any powers, functions or duties in relation to the affairs of the Debtors, such powers having been conferred exclusively on the JPLs pursuant to the BVI Orders.  BVI Orders ¶ 9.

45.    The BVI Insolvency Act also confers specific investigatory and information-gathering powers on liquidators, which are available to the JPLs to the extent

-13-

consistent with their appointment and the purposes for which they were appointed. These powers are particularly relevant to the JPLs' mandate to investigate the Debtors' affairs and to identify, secure and preserve assets.

46.     Under section 225, the JPLs may require representatives of the Debtors to prepare a statement of affairs, including detail concerning the Debtors' assets and liabilities.

47.     Pursuant to section 274A, the BVI Court, upon application by the JPLs, may direct any person that "has in his or her possession or control any assets or documents to which the company appears to be entitled" to "pay, deliver, convey, surrender or transfer the assets or documents to the [JPLs]."

48.     Section 282 empowers the JPLs to investigate the causes of the Debtors' insolvency and the general business, investments and counterparties of the Debtors. Upon written notice, the JPLs may require specified persons—including any officer or former officer, member or former member, or any person who is or has been employed by the Debtors—to provide information concerning the Debtors' business, dealings, assets, liabilities or affairs, to attend upon the JPLs and to be examined on oath or affirmation. BVI Insolvency Act § 282(1)(a)–(c).

49.     The JPLs also owe fiduciary duties arising from their status as officers of the BVI Court and agents of the Debtors, including the duty to act in the interests of the Debtors and their creditors (as applicable) in the discharge of their functions.

50.     In light of the Debtors' circumstances and the risks identified in the BVI Proceedings, pursuant to section 171 of the BVI Insolvency Act, the BVI Court conferred broad investigatory and protective powers on the JPLs. Those powers are tailored to enable the preservation of assets, the securing of books and records and independent investigation of the

Debtors' affairs and do not, as a matter of BVI law, determine whether a winding-up order will ultimately be made. BVI Orders ¶¶ 13–16; BVI Insolvency Act §§ 171.

51.     Consistent with that purpose, the JPLs are expressly authorized, without further sanction or intervention of the BVI Court, to exercise the following powers:

a.   To gain entry to the Debtors' premises and take possession of, and preserve, the books and records of the Debtors;

b.   To identify any assets which may remain in the possession or control of the Debtors, and to take such steps as may be necessary to protect any such assets from removal or dissipation;

c.   To seek the recognition (or its equivalent) of the appointment of the JPLs in the United States, the United Kingdom, Singapore, Hong Kong, Taiwan, Thailand, Cambodia or elsewhere, for the purposes of securing, realizing and remitting assets to the control of the JPLs and for obtaining access to and control of the Debtors' records;

d.   To commence, continue, discontinue or defend, including by way of counterclaim or similar response, any action or other legal proceeding in the name and on behalf of the Debtors, insofar as necessary to protect the Debtors' assets and information, including proceedings against directors, former directors, officeholders and former officeholders;

e.   To vote the shares of the Debtors in order to prevent the dissipation of assets;

f.   To carry on the business of the Debtors so far as may be necessary for their beneficial provisional liquidation;

g.   To take all necessary steps to obtain from any person documents or copies of documents belonging to the Debtors or created or maintained on their behalf, or which the Debtors have a right to obtain or inspect;

h.   To appoint agents, including solicitors or accountants, to perform any business which the JPLs are unable to perform themselves or which can more conveniently be performed by an agent;

i.   To investigate the affairs of the Debtors insofar as necessary to protect and, if required, recover assets and records;

j.     To retain, manage, and operate existing bank accounts of the Debtors, including the power to change, remove or replace signatories, and where necessary, to open new bank accounts;

k.     To draw down payments on account of remuneration, expenses, and disbursements in accordance with the terms of the BVI Orders, subject to subsequent approval by the BVI Court;

l.     To apply to the BVI Court for directions concerning any matter arising out of the exercise of the foregoing powers;

m.     To do all other things incidental to the exercise of the foregoing functions and powers;

n.     To consult and share information with the BVI Attorney General to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Debtors; and

o.     To cooperate and communicate with law enforcement and regulatory authorities in the BVI and in other jurisdictions.

BVI Orders ℙ 3.

52.     Save as expressly conferred by the BVI Orders, the JPLs may not exercise any of the powers available to liquidators under Schedule 2 to the BVI Insolvency Act without the sanction of the BVI Court.  BVI Orders ¶ 10.  These Schedule 2 powers include, but are not limited to, the power to pay any class of creditors in full or to make a compromise or arrangement with creditors or persons claiming to be creditors, with such powers only typically arising in the context of a full liquidation.

53.     As noted above at paragraph 23, the BVI Orders further contain penal notices providing that the powers conferred on the JPLs are to the exclusion of any power exercised or purported to be exercised by any existing director or other officeholder of the Debtors insofar as such powers concern the affairs or assets of the Debtors.  BVI Orders ¶ 9.  The BVI Orders also approve a protocol governing consultation between the JPLs and the Attorney General of the BVI (the "Protocol"), subject to express protections for legal professional privilege and confidentiality,

and without derogation from the JPLs' independent duties to act in the interests of the Debtors. BVI Orders ¶ 4; Protocol §§ 1–2, 15.

54. Since the entry of the BVI Orders, lawyers purporting to represent certain of the Debtors have appeared in the BVI Proceedings (a) opposing the Liquidation Applications and (b) seeking to discharge the appointment of the JPLs. The hearing of the Liquidation Applications is scheduled for April 16 and 17 in the BVI, following which the BVI Court will determine whether to grant the Liquidation Applications. If the Liquidation Applications are dismissed, the BVI Attorney General will have the right to appeal that decision, and it is expected that she will seek a stay of any order determining the Liquidation Applications or discharging the appointment of the JPLs pending determination of that appeal. The practical effect would be that, should the Court grant that stay, the JPLs will remain in place pending determination of the appeal. In any event, the pendency of applications seeking such future relief does not affect the authority or powers conferred upon the JPLs as of the date of this Declaration as a matter of BVI law.

**Qualification of the BVI Proceedings as "Foreign Main Proceedings" and of the JPLs as "Foreign Representatives"**

55. I am advised by the Debtors' U.S. counsel that section 101(23) of the Bankruptcy Code defines a "foreign proceeding" as:

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

56. Although a matter of United States law, in my opinion, the BVI Proceedings fall squarely within this definition. They are judicial proceedings commenced and supervised by the BVI Court under the BVI Insolvency Act, a law relating to insolvency, and the assets and affairs of the Debtors are subject to the control and supervision of the BVI Court through the

appointment of the JPLs, including through the preservative and investigatory functions that are integral to the liquidation process under the BVI Insolvency Act.

57.    The BVI Insolvency Act contains its own cross-border insolvency framework in Part XIX, which provides for the recognition and assistance of foreign officeholders by the BVI Court.  Section 466 of the BVI Insolvency Act defines a "foreign proceeding" for those purposes in terms that are substantively identical to section 101(23) of the Bankruptcy Code: "a collective judicial or administrative proceeding in a relevant foreign country, including an interim proceeding, pursuant to a law relating to insolvency in which proceeding the property and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganisation, liquidation or bankruptcy."  In my opinion, that definition would encompass a provisional liquidation commenced in another common law jurisdiction.  The express inclusion of "interim proceedings" in both definitions confirms that court-supervised insolvency proceedings of a provisional character fall within the scope of cross-border recognition under both frameworks.

58.    The BVI Proceedings are collective in nature.  They were commenced in the public interest and are not directed toward the enforcement of the rights of any single creditor or stakeholder.  Rather, they are intended to (i) centralize control of the Debtors' affairs under court supervision, (ii) preserve the Debtors' assets, (iii) facilitate investigation of the Debtors' activities and transactions and (iv) enable coordinated administration and recovery.

59.    I am also advised by the Debtors' U.S. counsel that section 1517(b)(1) of the Bankruptcy Code provides that a foreign proceeding shall be recognized as a "foreign main proceeding" if it is pending in the country where the debtor has its center of main interests, and that section 1516(c) of the Bankruptcy Code provides that, in the absence of evidence to the contrary, the debtor's registered office is presumed to be the center of the debtor's main interests.

60.     Each of the Debtors is incorporated in the BVI, maintains its registered office in the BVI, as reflected in the records of the Registrar of Corporate Affairs, and is subject to the *in personam* jurisdiction of the BVI Court.  The JPLs are administering the Debtors' affairs under the supervision of the BVI Court pursuant to the BVI Orders.  Furthermore, as a matter of BVI law, the situs of the ownership of shares, debt obligations and other securities of a BVI company is deemed to be in the BVI pursuant to section 245 of the BCA.  BCA § 245 ("For the purposes of determining matters relating to title and jurisdiction . . . the situs of the ownership of shares, debt obligations or other securities of a company is in the [British] Virgin Islands.").  To my knowledge, no evidence has been presented in the BVI Proceedings or elsewhere to rebut the presumption that the BVI is the center of main interests with respect to any of the Debtors.

61.     Based on the characteristics of the BVI Proceedings as described above—in particular, that the Debtors are incorporated in the BVI, maintain their registered offices in the BVI, and are subject to the supervision of the BVI Court through the appointment of the JPLs—, and as advised by the Debtors' U.S. counsel, it is my opinion that the BVI Proceedings constitute "foreign main proceedings" within the meaning of section 1517(b)(1) of the Bankruptcy Code.

62.     Section 101(24) of the Bankruptcy Code defines a "foreign representative" as a person or body, including one appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or liquidation of a debtor's assets or affairs or to act as a representative of such foreign proceeding.

63.     The JPLs were appointed by the BVI Court pursuant to section 170 of the BVI Insolvency Act and the BVI Orders.  The JPLs are officers of the BVI Court and are authorized to administer and control the affairs of the Debtors, investigate their activities, protect and preserve assets and commence or defend proceedings in the name and on behalf of the Debtors,

subject to court supervision.  BVI Orders ¶ 3.  The BVI Orders expressly authorize the JPLs to seek recognition of their appointment and of the BVI Proceedings in foreign jurisdictions, expressly including the United States, and to act on behalf of the Debtors for those purposes.  BVI Orders ¶ 3(c).

64.     In light of their appointment and the authority conferred upon them by the BVI Court, it is my opinion that the JPLs qualify as "foreign representatives" within the meaning of section 101(24) of the Bankruptcy Code.

### The Need for Emergency and Provisional Relief in the United States

65.     As set forth above, the BVI Orders confer broad powers on the JPLs as joint provisional liquidators of the Debtors, and the BVI Insolvency Act independently vests the JPLs with the statutory authority to carry out their functions and duties.  *See supra* ¶¶ 42–55.

66.     However, while the BVI Court's orders are intended to apply to the Debtors' affairs and assets globally, their practical enforceability is limited by the foreign courts' willingness and ability to recognize, police, and enforce the relief granted under the BVI Orders.  In my opinion, the practical enforceability of each of these protections depends on recognition or equivalent relief in the jurisdictions where the Debtors' assets are located.

67.     As described above and in greater detail in the Pretlove Declaration, these jurisdictional limitations have already been exploited.  Parties associated with Chen Zhi have taken steps to challenge the JPLs' authority across multiple jurisdictions, including through U.S. litigation threats expressly contemplating proceedings against the JPLs.  *See* Pretlove Declaration ¶¶ 54–60.  In my opinion, emergency and provisional relief from this Court is necessary to give effect in the United States to the protections conferred by the BVI Orders, relief that the BVI Court

expressly contemplated when it authorized the JPLs to "seek the recognition (or its equivalent) of [their] appointment . . . in the United States."   BVI Orders ¶ 3(c).

68.      Without such relief, the JPLs are empowered under BVI law to protect the Debtors' assets from removal or dissipation (BVI Orders ¶ 3(b)) but have no direct means of enforcing those powers against persons who act with respect to U.S.-situs assets but are otherwise located outside of the BVI.  They are authorized to retain, manage, and operate the Debtors' bank accounts and change signatories (BVI Orders ¶ 3(j)), but I understand that U.S. financial institutions located outside of the BVI may not recognize that authority absent a U.S. court order.  And they are empowered to commence and defend proceedings on behalf of the Debtors, including against directors and former directors (BVI Orders ¶ 3(d)), but face the prospect of U.S. litigation from parties who dispute the very authority under which the JPLs act—without, as yet, any recognized standing before a U.S. court from which to respond.  I am advised by the Debtors' U.S. counsel that, absent a grant of emergency and provisional relief, the JPLs will have no legal recourse under U.S. law to protect the Debtors' assets until recognition is granted.

69.      The same limitations impede the JPLs' investigative mandate.  The BVI Orders empower the JPLs to investigate the Debtors' affairs so far as necessary to protect and retrieve their assets and records (BVI Orders ¶ 3(i)) and empower them to obtain documents belonging to the Debtors from any person (BVI Orders ¶ 3(g)).  The BVI Insolvency Act provides further authority to examine any officer, former officer, member, or employee of the Debtors concerning their business, dealings, assets, and liabilities (BVI Insolvency Act § 282).  However, none of these powers can directly compel a U.S. financial institution, counterparty, or other person located in the United States (and outside the jurisdiction of the BVI) to produce records or submit to examination.  Authorization of discovery on an emergency and provisional basis—including the

authority to issue subpoenas for the production of documents and testimony pursuant to section 1521(a)(4) of the Bankruptcy Code and Rule 2004 of the Federal Rules of Bankruptcy Procedure, as I am advised by the Debtors' U.S. counsel—is necessary for the JPLs to exercise their investigative mandate with respect to assets, records, and persons in this jurisdiction. Without it, the JPLs cannot readily identify or trace the Debtors' U.S. assets, and assets that remain beyond their reach are the most vulnerable to dissipation or diversion.

70. For the foregoing reasons, it is my opinion that the emergency and provisional relief sought by the JPLs is necessary to give practical effect to the BVI Court's orders in the United States and is consistent with the purpose for which the BVI Court authorized the JPLs to seek recognition in this jurisdiction.

**Waiver of the Stay of Effectiveness**

71. I am advised by the Debtors' U.S. counsel that the Bankruptcy Code and the Bankruptcy Rules impose, in certain circumstances, a 14-day stay of the effectiveness of orders, and that this stay may be waived by the Court for cause. I am further advised that courts in the Southern District of New York routinely grant such waivers in chapter 15 cases where the foreign proceeding was commenced on an urgent or emergency basis, where there is a risk of asset dissipation or actions inconsistent with the foreign court's orders, or where immediate effectiveness is necessary to give effect to the purposes of the foreign proceeding.

72. In my opinion, the present circumstances clearly warrant the waiver of any stay of effectiveness that could be imposed. The Provisional Liquidation Applications were commenced on an urgent, without-notice basis in the public interest, and the BVI Orders confer immediate authority on the JPLs to (i) secure and preserve assets, (ii) obtain documents and information and (iii) cooperate with regulatory and law enforcement authorities in multiple

-22-

jurisdictions.   BVI legal representatives purporting to act on behalf of certain Debtors have confirmed that they are opposing the Liquidation Applications and have filed applications with the BVI Court seeking the discharge of the BVI Orders.   Any delay in the effectiveness of recognition of the BVI Orders in the United States would risk undermining the objectives of the BVI Proceedings and may create a window during which opposing parties could take steps to abscond with assets of the Debtors in the United States or take other actions in the United States inconsistent with the BVI Orders.

73.     For these reasons, it is my opinion that waiver of any stay of effectiveness is appropriate and consistent with the purposes of Chapter 15 of the Bankruptcy Code.

IN WITNESS WHEREOF, I have executed this Declaration under penalty of perjury this 8th day of April, 2026.

Dated: April 8, 2026
 London, UK

_____
Andrew Barrington Chissick