# EXHIBIT 7

## Ex Parte and Originating Applications of the BVI Attorney General



**FILED
HIGH COURT**
TERRITORY OF
THE VIRGIN ISLANDS

**Case Number :BVIHCOM2026/0002**

The Insolvency Rules 2005

**ORIGINATING APPLICATION**

**(Company)**

Rule 14

**Submitted Date:02/01/2026 19:03**

**Filed Date:05/01/2026 08:30**

**Fees Paid:0.00**

| THE EASTERN CARIBBEAN SUPREME COURT IN THE HIGH COURT OF JUSTICE VIRGIN ISLANDS COMMERCIAL DIVISION | |
|---|---|
| Matter No.: | BVIHC(COM)      of 2026 |
| Applicant: | **THE ATTORNEY GENERAL** |
| Respondent: | **AUSPICIOUS TYCOON LIMITED** |

In the matter of:

| **AUSPICIOUS TYCOON LIMITED** |
|---|

| For Court Use Only |
|---|
| **To: AUSPICIOUS TYCOON LIMITED,** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands. <br><br> **This Application will be heard by the Commercial Court Judge at Road Town, Tortola British Virgin Islands** <br> **on the           day of                2026    at               o'clock.** <br><br> **If you do not attend at the time shown the Court may make an order in your absence** |

The Applicant, the Attorney General of the Virgin Islands ("**Attorney General**") of TTT Building, Wickhams Cay 1, Road Town, Tortola, Virgin Islands VG1110 applies to the Court for:

1. An order pursuant to sections 162(1) (b) and (c) of the Insolvency Act, Revised Edition 2020 ("**the Act**") that Paul Pretlove, James Drury and David Standish, be appointed as joint liquidators of Auspicious Tycoon Limited **("the Company")**, a company incorporated under the laws of the Virgin Islands ("BVI"). James Drury is a BVI licensed insolvency practitioner of Interpath (BVI) Limited, PO

1

438

Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110. Paul Pretlove and David Standish are United Kingdom ("UK") licensed insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB acting as overseas insolvency practitioners as defined in the Act.

2.    An order that the joint liquidators be given all powers set out in Schedule 2 of the Act, such powers to be exercisable without the sanction of the Court and such other powers as this Honourable Court deems fit.

3.    An order that the joint liquidators have the power to:

   a.    consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the liquidators and the Attorney General which is attached hereto **("the Protocol")**.

   b.    cooperate and communicate with law enforcement and regulatory authorities in the BVI and in other jurisdictions.

4.    An order that the costs of the liquidation, including the proper fees and disbursements of the joint liquidators and the Attorney General's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims

5.    An order that the costs of the application be costs in the liquidation.

6.    Such further order as the court deems appropriate.

The grounds upon which this order is sought are set out in the affidavit of Attorney General, Dawn J. Smith filed on 2 January 2026 and are summarised as follows:

**THE PARTIES**

1.    The Attorney General is the principal legal adviser to the Government of the Virgin Islands (**"the Government"**) pursuant to section 58 of the Virgin Islands Constitution Order, 2007, and has overall responsibility for all aspects of civil litigation on behalf of the Government.

2

439

2.    The Company was incorporated under the laws of the BVI on 3 July 2018. Its registered office is located at Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, BVI, VG1110. The Company is alleged to be a member of a transnational criminal organisation that is headed by Prince Holding Group Limited **("the Prince Group"),** which is a Cambodian corporate conglomerate that comprises several companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan. On 17 November 2025, Vistra filed its Intention to Resign as the Company's Registered Agent.

3.    The chairman of the Prince Group is Chen Zhi **("Chen").** He is also the sole director and sole shareholder of the Company.

**BACKGROUND**

4.    The background is comprehensively set out in the indictment and the verified complaint filed by the United States Department of Justice **("US DOJ")** on October 14, 2025 and in the announcement issued by the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** dated October 13, 2025. The background is summarised below.

**Action in the United States**

5.    On 14 October, 2025, the United States Department of Justice **("US DOJ"),** the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** and the United Kingdom Government announced coordinated actions targeting the Prince Group.

6.    The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York **("the NY District Court")** on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering **("the US Indictment").** Concurrently, the US DOJ filed a civil forfeiture complaint **("the US Complaint")** seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group. The criminal and civil proceedings will be referred to together as **"the US Proceedings."**

7.    In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and

3

criminal activities including cryptocurrency investment fraud, human trafficking, money laundering, wire fraud, bank fraud, forced labour and, illegal online gambling. It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers. The scammers disappeared after taking almost every dollar they could from their victims.

8.      To effectuate the schemes, it is alleged in the US Proceedings that Chen and his associates:

   a.      built and operated forced-labour scam compounds across Cambodia in which workers were made to execute the scams at high volumes. The scam compounds housed vast dormitories surrounded by high walls and barbed wire, and functioned as violent forced labour camps;

   b.      forced migrant workers who were – not always, but often – victims themselves of human trafficking to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

   c.      frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

   d.      used their political influence in multiple countries to protect their criminal enterprise; and

   e.      paid bribes to foreign public officials to avoid disruption by law enforcement.

9.      The indictment alleges that Chen maintained meticulous records of the compounds' operations, including ledgers of the tracking profits generated from the fraud schemes, documents detailing "phone farms" used in the schemes, and images depicting methods of beating and torture used against workers.

10.     The US DOJ alleges that the schemes carried out by the Prince Group resulted in billions of dollars in losses incurred by victims in the United States and around the world. The documents in the US Proceedings allege that proceeds from these criminal activities have been laundered through

4

441

various means, including cryptocurrency (using "spraying" and "funneling" techniques), online gambling operations, and cryptocurrency mining operations. Chen, his associates and companies within the Prince Group, "washed" and returned the fraudulent proceeds to the Prince Group. The "washing" was done by using the Prince Group's vast network of seemingly legitimate business enterprises to launder its criminal proceeds. One common method was to collect the fraudulent proceeds in the form of bitcoin or stablecoins and then off-ramp them into conventional currencies, for example, the US dollar. The launderers then used that cash to purchase clean bitcoin or other cryptocurrencies. Chen was directly involved in coordinating these laundering efforts.

11.    Chen and his associates subsequently used the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

12.    On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation.  The effect of the designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them.  The targets include Chen and the Company. The OFAC noted that:

    a.    Americans have lost at least $10 billion to Southeast Asia-based scam operations in 2024, a 66 percent increase over the prior year, with scams like those perpetrated by Prince Group being particularly significant.

    b.    The Prince Group remained a dominant player in Cambodia's scam economy and has controlled illicit financial flows of billions of dollars.

    c.    The actions taken by OFAC and Financial Crimes Enforcement Network (FinCEN) were in close coordination with the United Kingdom's Foreign, Commonwealth, and Development Office ("FCDO"), which took complementary actions against criminal networks responsible for targeting citizens of the United States and other allied nations through online scams and the laundering of stolen funds.

5

442

### Action in the UK

13.  On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group. In doing so it noted that Chen and his associates have incorporated companies in the BVI and own properties in London, including a £12 million mansion on Avenue Road in North London, a £100 million office building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and Nine Elms in South London.

14.  The Foreign Secretary Yvette Cooper stated that:

> "The masterminds behind these horrific scam centres are ruining the lives of vulnerable people and buying up London homes to store their money.
>
> Together with our US allies, we are taking decisive action to combat the growing transnational threat posed by this network – upholding human rights, protecting British nationals and keeping dirty money off our streets."

15.  The Fraud Minister Lord Hanson said:

> "These sanctions prove our determination to stop those who profit from this activity, hold offenders accountable, and keep dirty money out of the UK. Through our new, expanded Fraud Strategy and the upcoming Global Fraud Summit, we will go even further to disrupt corrupt networks and protect the public from shameless criminals."

16.  The effect of these sanctions is to prevent the transfer of these properties, freeze any business in which Chen and the Prince Group are involved and lock Chen and the Prince Group transnational criminal network out of the UK's financial system.

### Action in other jurisdictions

17.  News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen, the Prince Group, and its related entities and companies. These actions are set out in paragraphs 19 to 22 below. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the global response to combat transnational organised crime.

### Singapore

18.  On 31 October, 2025, Singapore police announced that they had seized over $150 million (approximately US$115 million) in assets linked to the Prince Group. The seized assets include six

6

443

properties, bank accounts, securities accounts, and cash which are said to represent the proceeds of money laundering and forgery offences committed by Chen and the Prince Group. According to the Monetary Authority of Singapore (MAS), financial institutions had previously filed suspicious transaction reports, and a number of suspicious accounts had been closed. The Singapore Police Force stated that investigations into Chen and his associates commenced in 2024 after it received intelligence from the Suspicious Transaction Reporting Office (STR).

### Hong Kong

19.   On 4 November, 2025, Hong Kong authorities announced that they had frozen assets worth HK$2.75 billion (approximately US$354 million), which, based on intelligence and information gathered from multiple sources, are suspected to represent proceeds of international cross-border telecommunications fraud and money laundering activities committed by the Prince Group. The frozen assets include cash, stocks, and funds held by individuals and corporate entities. At least 18 Hong Kong companies were blacklisted by the United States in connection with the Prince Group, including two listed companies - *"Khoon Group and Geotech Holdings"*.

### Taiwan

20.   On 4 November, 2025, Taiwanese prosecutors announced that they had detained 25 individuals and seized T$4.5 billion (approximately US$147 million) in assets tied to the Prince Group. The seized assets include 26 high-end cars, properties, and bank accounts tied to the network and to Chen in relation to money laundering and forced labour offences.

### Thailand

21.   On 3 December, 2025, the Thai authorities announced that they had seized assets worth more than 10,157 million baht (approximately US$318 million) and issued arrest warrants for 42 individuals linked to transnational online scam operations connected to Chen and Cambodian nationals Kok An and Yim Leak. As of 3 December, 2025, 29 individuals had been arrested. The seizures include shares in Bangchak Corporation Limited worth 6 billion baht (approximately US$188 million). Thailand's Anti-Money Laundering Office (AMLO) stated that investigators had found *"information on networks of online fraud, human trafficking, and money-laundering"* that were linked to Chen and his associates.

**The effect of the multi-jurisdictional actions**

7

444

22.    These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating transnational organised crime, human trafficking, forced labour, and large-scale financial fraud. The scale and coordination of these actions across at least six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network

23.    In total, as of 9 December, 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The role of BVI companies**

24.    The OFAC has determined that the BVI companies form part of a complex network of holding companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

25.    In the US Complaint, the US DOJ alleged that Chen and his associates also laundered fraudulent proceeds through several companies including companies in the BVI which are under their control. It alleged further that these companies do not serve any real purpose other than to launder funds. Two BVI Companies were named in the US Proceedings - Amber Hill Ventures Limited (**"Amber Hill"**) and Lateral Bridge Global Limited (**"LBG"**).

26.    Amber Hill and LBG are said to be controlled by two of Chen's associates, who are also defendants in the US Civil Proceedings. The US Complaint discloses that personnel from the Federal Bureau of Investigation ("FBI") have conducted extensive blockchain tracing to analyse the movements of the Prince Group's cryptocurrency. The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin which the US DOJ seeks to forfeit flowed through wallets which were controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

27.    It is also alleged that Amber Hill had a banking relationship with a financial institution in the United

8

445

States. It was recorded in the account opening documents with that financial institution that Amber Hill's business activities consisted of "*[p]roprietary trading and investing*," and its anticipated deposit and withdrawal activity would be approximately $2 million each. However, according to account statements, in February 2020, Amber Hill's account with that financial institution had approximately $22.5 million in deposits and $21.8 million in withdrawals. Amber Hill was struck from the register and dissolved on 10 November, 2023.

**THE APPLICATION**

28.    The Application is made by the Attorney General on the ground that (i) it is just and equitable that joint liquidators be appointed over the Company pursuant to section 162 (1) (b) of the Act and (ii) it is in the public interest that the joint liquidators are appointed pursuant to section 162 (1) (c) of the Act.

**Just and equitable ground**

29.    Section 162(1)(b) of the Insolvency Act, 2003 provides that the Court may appoint a liquidator of a company if "the Court is of the opinion that it is just and equitable that the company should be liquidated."

30.    The Attorney General is listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(b) of the Act.

31.    It is just and equitable that the Company should be placed into liquidation for the following reasons:

    a.    Chen is the sole shareholder and/or director of the Company. He is alleged to be the mastermind of the Prince Group. He has been criminally indicted in the United States and is subject to personal sanctions by both the United States and the United Kingdom.

    b.    The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities, to include forced labour, human trafficking, large-scale fraud, and money laundering on a massive international scale.

    c.    The BVI companies including the Company are alleged to have been established and operated to assist Chen and the Prince Group which has defrauded numerous

9

446

vulnerable victims of billions of US dollars.

d.    Despite the enforcement actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on the allegations is free to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

e.    The activities of some of the companies in the Prince Group have been the subject of civil and criminal enforcement actions in multiple jurisdictions, with authorities in six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

f.    The Company is alleged to be a shell company which was used solely as a vehicle for the fraudulent scheme.

g.    The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf, and identify potential claims against third parties.

h.    The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

i.    Independent liquidators are necessary to ensure proper coordination with regulatory and law enforcement authorities and liquidators, trustees, or receivers appointed in the BVI and other jurisdictions, given the multi-jurisdictional nature of the scheme and the actions taken by various authorities in several jurisdictions.

j.    Independent liquidators would enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed as part of a collective process.

k.    Given the fraudulent nature of the scheme, there are likely to be voidable transactions, preferences, and other claims that independent liquidators could pursue for the benefit of the victims and creditors.

32.    Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that its affairs are properly investigated and wound up under the supervision of this Honourable Court.

**Public Interest ground**

10

447

33. Section 162(1)(c) of the Act gives the Court the discretion to appoint a liquidator of a company if it is of the opinion that it is in the public interest for a liquidator to be appointed.

34. The Attorney General is also listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(c) of the Act.

35. The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

36. BVI companies including, the Company are alleged to have been used as vehicles in what has been described by international law enforcement authorities as one of the largest fraudulent investment schemes in recent history. The scheme has caused billions of dollars in losses to victims worldwide and involved egregious human rights abuses. They are alleged to have been used to launder and/or hold the proceeds of the horrific crimes committed by Chen and his associates, including human trafficking, forced labour, aggravated identity theft, international fraud designed to scam unsuspecting victims of their lifesavings and money laundering. These criminal and fraudulent activities are inherently objectionable and are contrary to clearly identifiable public interest.

37. The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the BVI as a financial centre and threatens confidence in BVI incorporated companies and the BVI's regulatory framework.

38. The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for fraudulent purposes.

39. The appointment of liquidators will:

   a. facilitate cooperation with enforcement authorities, regulators, and insolvency practitioners in the BVI and other jurisdictions, demonstrating the BVI's commitment to international cooperation in combating financial fraud;

   b. ensure that the Company's affairs are properly investigated and that appropriate steps

11

448

are taken to recover assets and maximise returns to defrauded investors;

c.      enable a proper investigation into how the Company was used in the fraudulent scheme, which may assist in preventing similar schemes in the future.

40.     Given that enforcement authorities in at least six countries have taken action and frozen or seized assets valued at over US$16 billion, it is in the public interest that BVI as the jurisdiction of incorporation of the Company, takes prompt and decisive action through the appointment of liquidators.

41.     The scale of this fraud and the international coordination of related actions make it imperative, from a public interest perspective, that the BVI positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

42.     In all the circumstances, it is not only just and equitable but also in the public interest that Joint liquidators be appointed over the Company to prevent it from being used to further Chen's and the Prince Group's criminal enterprise.

43.     If appointed, the joint liquidators would be able to take control of the Company, take the necessary steps in the BVI or overseas to secure and preserve its books and records and secure its assets for the benefit of the victims of the crimes perpetuated by the Prince Group. As officers of the court, they would also be able to independently investigate claims against the Company, marshal records, ensure that the Company complies with BVI laws and regulations and respond to any court process.

**Proposed liquidators**

44.     Mr. James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110, Mr. Paul Pretlove and Mr. David Standish, both of Interpath Ltd, 10 Fleet Place, London EC4M 7RB who to the best of the Applicant's knowledge and belief are eligible insolvency practitioners have all consented to be appointed as joint liquidators of the Company.

45.     In the circumstances, it is just and equitable and in the public's interest to grant the order which

12

449

the Attorney General seeks, for the appointment of joint liquidators over the Company.

A draft of the order sought is attached.

This application is supported by the affidavit of Attorney General Dawn J Smith.

The names and addresses of the persons on whom it is intended to serve the application are as follows:

**Auspicious Tycoon Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

The names and addresses of the persons required to be given notice of this application pursuant to the Act and the Rules (if any) are as follows:

**Auspicious Tycoon Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

This Application is filed by O'Neal Webster, Solicitors for the Applicant, whose address for service is 2nd Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands.  REF: 95353

Dated: January 2, 2026

_____
Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

13

450

THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/

**IN THE MATTER OF AUSPICIOUS TYCOON LIMITED**

**AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS**

BETWEEN:

**ATTORNEY GENERAL**

Applicant

**AND**

**AUSPICIOUS TYCOON LIMITED**

Respondent

---

**ORIGINATING APPLICATION**

---



**Legal Practitioners for the Applicant**
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 I Fax: (284) 393 5805
www.onealwebster.com

14

451

**FILED**
**HIGH COURT**
TERRITORY OF
THE VIRGIN ISLANDS

**Case Number :BVIHCOM2026/0002**

The Insolvency Rules 2005

**ORDINARY APPLICATION (EX-PARTE)**

**(Company)**

Rule 14

**Submitted Date:02/01/2026 19:09**

**Filed Date:05/01/2026 08:30**

**Fees Paid:0.00**

| | |
|---|---|
| **THE EASTERN CARIBBEAN SUPREME COURT**<br>**IN THE HIGH COURT OF JUSTICE**<br>**VIRGIN ISLANDS**<br>**COMMERCIAL DIVISION** | |
| Matter No.: | BVIHC(COM)    of 2026 |
| Applicant: | **THE ATTORNEY GENERAL** |
| Respondent: | **AUSPICIOUS TYCOON LIMITED** |

In the matter of:

**AUSPICIOUS TYCOON LIMITED**

<table>
<tr><td colspan="2" align="center">For Court Use Only</td></tr>
<tr><td colspan="2"><strong>To: AUSPICIOUS TYCOON LIMITED,</strong> of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands.</td></tr>
<tr><td colspan="2"><strong>This Application will be heard by the Commercial Court Judge at Road Town, Tortola</strong><br><strong>British Virgin Islands</strong><br>on the          day of                    2026    at              o'clock.</td></tr>
<tr><td colspan="2"><strong>If you do not attend at the time shown the Court may make an order in your absence</strong></td></tr>
</table>

We, O'Neal Webster, on behalf of the Applicant, **the Attorney General of the Virgin Islands ("the Attorney General"),** apply pursuant to section 170 of the Insolvency Act 2003 (the "Act") for the following orders that:

1.  James Drury,  a Virgin Islands ("BVI") licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola,  Virgin Islands, VG1110; and Paul Pretlove and David Standish both United Kingdom ("UK") licensed insolvency

7

1

practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB to be appointed as joint provisional liquidators of Auspicious Tycoon Limited **("the Company")** with immediate effect.

2. The powers afforded to the said joint provisional liquidators shall be as set out in Schedule 2 of the Act as varied by Schedule 3, and as further varied by this Order.

3. An order that the joint provisional liquidators have the power to:

   a. consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the joint provisional liquidators and the Attorney General which is attached hereto **("the Protocol")**.

   b. cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4. An order that the costs of the liquidation, including the proper fees and disbursements of the joint liquidators, the Attorney General's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

5. An order that the costs of the application be costs in the liquidation.

6. Such further order as the court deems appropriate.

A draft of the order sought is attached.

The grounds upon which this order is sought are set out in the affidavit of the Attorney General Dawn J. Smith filed on 30 December 2025, but in brief are as follows:

**Introduction**

1. There are good prima facie reasons as set out in the originating application for the eventual appointment of full liquidators on the grounds of public interest and on the grounds that it is just and equitable that they be appointed over the Company. A summary of these reasons is set out below.

2

8

**The Company and the Prince Group**

2.      The Company was incorporated under the laws of the Virgin Islands **("BVI")** on 3 July 2013. Its registered office is located at Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, BVI, VG1110. Chen Zhi **("Chen")** is the Company's sole director and sole shareholder.

3.      The Company is alleged to be a member of a transnational criminal organisation that is headed by the Prince Holding Group **("the Prince Group")** which is a Cambodian corporate conglomerate comprised of several  companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan. Chen is the mastermind of the Prince Group's transnational criminal organisation and its chairman.

**Action in the USA and other jurisdictions**

4.      On 14 October, 2025, the United States Department of Justice **("US DOJ")**, the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** and the United Kingdom Government announced coordinated  actions targeting the Prince Group.

5.      The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York **("the NY District Court")** on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering **("the US Indictment")**. Concurrently, the US DOJ filed a civil forfeiture complaint **("the US Complaint")** seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group.  The criminal and civil proceedings will be referred together as the **"the US Proceedings"**.

6.      On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation.  The effect of this designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them.  The targets include a number of BVI companies including the Company.

7.      On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group. In doing so it

3

9

noted that Chen and his associates have incorporated companies in the BVI and own properties in London including a £12 million mansion on Avenue Road in North London, a £100 million office building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and in Nine Elms in South London.

8.      News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen, the Prince Group, and its related entities and companies. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the coordinated global response to combat transnational organised crime.

9.      These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating transnational organised crime, human trafficking, forced labour, and large-scale financial fraud. The scale and coordination of these actions across six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network.

10.     In total, as of 9 December 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand) have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The allegation against Chen, his associates and companies within the Prince Group**

11.     In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and criminal activities including cryptocurrency investment fraud, human trafficking, money laundering, wire fraud, bank fraud, forced labour and, illegal online gambling. It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers. The scammers disappeared after taking almost every dollar they could from their victims.

4

10

12. The US DOJ also alleges that the fraudulent activities carried out by the Prince Group resulted in billions of dollars in losses incurred by victims in the United States and around the world. Chen and his associates are alleged to use the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

13. To effectuate their fraudulent schemes, it is alleged in the US Proceedings that Chen and his associates:

    a. forced migrant workers who were – not always, but often – victims themselves of human trafficking, to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

    b. frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

    c. used their political influence in multiple countries to protect their criminal enterprise; and

    d. paid bribes to foreign public officials to avoid disruption by law enforcement.

**The role of BVI Companies in the Prince Group**

14. The OFAC determined that the BVI companies form part of a complex network of companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

15. In the US complaint, the US DOJ alleged that Chen and his associates laundered the fraudulent proceeds of their crime through several companies in the BVI, Cayman, Cambodia and Hong Kong, which are under their control. It alleged further that these companies do not serve any real purpose other than to launder the proceeds of their criminal and fraudulent activities. Two BVI Companies are named in the US Complaint - Amber Hill Ventures Limited ("**Amber Hill**") and Lateral Bridge Global Limited **("LBG")**.

16. The US Complaint discloses that personnel from the Federal Bureau of Investigation ("FBI") have

5

11

conducted extensive blockchain tracing to analyse the movements of the Prince Group's cryptocurrency. The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin which the US DOJ seeks to forfeit flowed through wallets which were controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

**It is just and equitable that liquidators be appointed over the Company**

17.  The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities to include forced labour, human trafficking, large-scale fraud, and money laundering on a massive international scale.

18.  The activities of some of the companies in the Prince Group have been the subject of civil and criminal actions in multiple jurisdictions, with authorities in at least six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

19.  The BVI companies including the Company are alleged to have been established and operated to assist Chen and the Prince Group which has defrauded numerous vulnerable victims of billions of US dollars.

20.  Despite the actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on allegations is free to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

21.  The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf for the benefit of the victims of the fraud; and to identify potential claims against third parties.

22.  The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

23.  Independent liquidators are necessary to ensure proper coordination with regulatory and

6

**12**

enforcement authorities and liquidators, trustees, or receivers appointed in the Virgin Islands and other jurisdictions, given the multi-jurisdictional nature of the scheme and the actions. Independent liquidators would also enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed.

24. Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that its affairs are properly investigated and wound up under the supervision of this Honourable Court.

**It is in the public interest that liquidators be appointed over the Company**

25. The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

26. The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the Virgin Islands as a financial centre and threatens confidence in BVI companies and the BVI's regulatory framework.

27. The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for nefarious purposes and with its commitment to international cooperation and combating serious transnational crime.

28. Given that regulatory and law enforcement authorities in at least six countries have taken action and frozen or seized assets valued at over US$16 billion, it is in the public interest that the BVI as the jurisdiction of incorporation of the Company takes prompt and decisive action through the appointment of liquidators.

29. The scale of this fraud and the international coordination of actions make it imperative, from a public interest perspective, that the BVI positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

7

**The appointment of joint provisional liquidators**

30.   It is essential that joint provisional liquidators be appointed over the Company immediately (without notice to it and its principals) and before the originating application is heard and determined for the following reasons:

   a.   The Company continues to be under the control of Chen and his associates and as a result, they can use or continue to use it to further the criminal enterprise thereby continuing to inflict public harm.

   b.   Given the serious allegations set out in this application, the sanctions imposed by the United States and the UK Government, the US Indictment, and the US Complaint, it is appropriate and necessary that provisional liquidators be appointed immediately to:

   (i)   immediately take full control of the Company;

   (ii)   identify and preserve its assets that may represent proceeds of crime by preventing further movement, concealment, or dissipation of those assets;

   (iii)   take control of its books and records;

   (iv)   conduct thorough investigations into its past transactions; and

   (v)   review banking records, asset transfers, and corporate dealings to identify and locate the potential money laundering activities.

   c.   The information and evidence gathered by the liquidators may provide crucial support for law enforcement authorities, both in the BVI and internationally, to apply for freezing orders, forfeiture orders, and other remedies. In this case, given that the United States has already filed a civil complaint seeking forfeiture of 127,271 Bitcoin valued at approximately US$15 billion allegedly connected to the Prince Group's criminal activities, the work of the liquidators could materially assist in tracing assets and preserving evidence relevant to that and other actions.

   d.   The appointment of provisional liquidator over the Company and other BVI companies which are owned and controlled by Chen would align with the BVI's National AML/CFT Policy and its commitment to international cooperation in combating serious transnational crime.

   e.   The coordinated actions taken by the US DOJ and UK Government on 14 October, 2025 signal the seriousness with which these major jurisdictions view the alleged criminal activities of the Prince Group. The appointment of provisional liquidators by this

8

14

Honourable Court would demonstrate that the BVI is equally committed to ensuring that its corporate structures are not used as vehicles for serious criminality and would facilitate cooperation with international authorities in their ongoing investigations and asset recovery efforts.

**Urgency**

31. The public announcements of the US Civil Proceedings, OFAC sanctions, and UK sanctions on 14 October 2025 together with actions taken in other jurisdictions have no doubt put Chen and his associates, who are alleged to be sophisticated criminals, on notice of the scrutiny being applied to the Prince Group network and its corporate structures.

32. The Company is likely to have received proceeds of the criminal and fraudulent activities and to have documentation that may assist in recovering the proceeds of the crime. There is a real and substantial risk that absent the immediate appointment of provisional liquidators, assets held by or through the BVI companies, including the Company will be transferred, concealed, or dissipated and documents will be destroyed or concealed. This real and substantial risk will increase once the Company is served with the originating application,

33. The appointment of provisional liquidators will immediately remove control from Chen and place the Company under the supervision and control of officers of this Court, thereby protecting the integrity of any investigation and preserving assets for the benefit of the victims of Chen and the Prince Group's fraudulent and criminal activities.

34. The appointment of joint provisional liquidators is appropriate given the number of BVI companies involved, the complexity of the alleged corporate structure spanning multiple jurisdictions, the international nature of the investigations and actions, and the need for extensive expertise in tracing assets and investigating potential money laundering activities.

**The Proposed provisional liquidators**

35. The Attorney General proposes that James Drury, a BVI licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110; and Paul Pretlove and David Standish, both UK licensed

9

insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB be appointed as joint provisional liquidators of the Company.

**Conclusion**

36.    In all the circumstances, it is just and convenient and in the public's interest, that this Honourable Court grants the order which the Attorney General seeks in this application.

A draft of the order sought is attached.

This application is supported by the affidavit of Attorney General Dawn J. Smith.

The names and addresses of the persons on whom it is intended to serve the application are as follows:

This Application is filed by O'Neal Webster, Solicitors for the Applicant whose address for service is 2nd Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands. REF: NW/LG/101538.

Dated: January 2, 2026

_____
Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

10

16

THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/

**IN THE MATTER OF AUSPICIOUS TYCOON LIMITED**

**AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.**

BETWEEN:

**THE ATTORNEY GENERAL**

Applicant

**AND**

**AUSPICIOUS TYCOON LIMITED**

Respondent

---

**EX-PARTE ORDINARY APPLICATION**
**FOR JOINT PROVISIONAL LIQUIDATORS**

---



Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 I Fax: (284) 393 5805
www.onealwebster.com

11

17

**Case Number :BVIHCOM2026/0001**

The Insolvency Rules 2005

**ORIGINATING APPLICATION**

**(Company)**

Rule 14

**FILED HIGH COURT**
**TERRITORY OF THE VIRGIN ISLANDS**

**Submitted Date:02/01/2026 19:16**

**Filed Date:05/01/2026 08:30**

**Fees Paid:0.00**

| THE EASTERN CARIBBEAN SUPREME COURT<br>IN THE HIGH COURT OF JUSTICE<br>VIRGIN ISLANDS<br>COMMERCIAL DIVISION | |
|---|---|
| Matter No.: | BVIHC(COM)        of 2026 |
| Applicant: | **THE ATTORNEY GENERAL** |
| Respondent: | **BRIGHT TEAM GLOBAL LIMITED** |

In the matter of:

| **BRIGHT TEAM GLOBAL LIMITED** |
|---|

| For Court Use Only |
|---|
| **To:  BRIGHT TEAM GLOBAL LIMITED,** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands.<br><br>**This Application will be heard by the Commercial Court Judge at Road Town, Tortola British Virgin Islands**<br>**on the             day of                        2026       at              o'clock.**<br><br>**If you do not attend at the time shown the Court may make an order in your absence** |

The Applicant, the Attorney General of the Virgin Islands ("**Attorney General**") of TTT Building, Wickhams Cay 1, Road Town, Tortola, Virgin Islands VG1110 applies to the Court for:

1.    An order pursuant to sections 162(1) (b) and (c) of the Insolvency Act, Revised Edition 2020 ("**the Act**") that Paul Pretlove, James Drury and David Standish, be appointed as joint liquidators of Bright Team Global Limited **("the Company")**, a company incorporated under the laws of the Virgin Islands ("BVI"). James Drury is a BVI licensed insolvency practitioner of Interpath (BVI)

1

Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110. Paul Pretlove and David Standish are United Kingdom ("UK") licensed insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB acting as overseas insolvency practitioners as defined in the Act.

2.    An order that the joint liquidators be given all powers set out in Schedule 2 of the Act, such powers to be exercisable without the sanction of the Court and such other powers as this Honourable Court deems fit.

3.    An order that the joint liquidators have the power to:

   a.    consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the liquidators and the Attorney General which is attached hereto **("the Protocol")**.

   b.    cooperate and communicate with law enforcement and regulatory authorities in the BVI and in other jurisdictions.

4.    An order that the costs of the liquidation, including the proper fees and disbursements of the joint liquidators and the Attorney General's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims

5.    An order that the costs of the application be costs in the liquidation.

6.    Such further order as the court deems appropriate.

The grounds upon which this order is sought are set out in the affidavit of Attorney General, Dawn J. Smith filed 2nd January 2026 and are summarised as follows:

**THE PARTIES**

1.    The Attorney General is the principal legal adviser to the Government of the Virgin Islands ("**the Government**") pursuant to section 58 of the Virgin Islands Constitution Order, 2007, and has overall responsibility for all aspects of civil litigation on behalf of the Government.

2

2.     The Company was incorporated under the laws of the BVI on 3 July 2018.  Its registered office is located at Vistra Corporate Services Centre **("Vistra")**, Wickhams Cay II, Road Town, Tortola, BVI, VG1110.  The Company is alleged to be a member of a transnational criminal organisation that is headed by Prince Holding Group Limited **("the Prince Group"),** which is a Cambodian corporate conglomerate that comprises several companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan. On 17 November 2025, Vistra filed its Intention to Resign as the Company's Registered Agent.

3.     The chairman of the Prince Group is Chen Zhi **("Chen").**  His Financial Assistant and Wealth Manager Zhou Yun is the sole director and sole shareholder of the Company.

**BACKGROUND**

4.     The background is comprehensively set out in the indictment and the verified complaint filed by the United States Department of Justice **("US DOJ")** on October 14, 2025 and in the announcement issued by the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** dated October 13, 2025.  The background is summarised below.

**Action in the United States**

5.     On 14 October, 2025, the United States Department of Justice **("US DOJ"),** the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** and the United Kingdom Government announced coordinated actions targeting the Prince Group.

6.     The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York **("the NY District Court")** on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering **("the US Indictment").** Concurrently, the US DOJ filed a civil forfeiture complaint **("the US Complaint")** seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group.  The criminal and civil proceedings will be referred to together as "**the US Proceedings**."

7.     In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and

3

criminal activities including cryptocurrency investment fraud, human trafficking, money laundering, wire fraud, bank fraud, forced labour and, illegal online gambling. It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers. The scammers disappeared after taking almost every dollar they could from their victims.

8.  To effectuate the schemes, it is alleged in the US Proceedings that Chen and his associates:

    a.  built and operated forced-labour scam compounds across Cambodia in which workers were made to execute the scams at high volumes. The scam compounds housed vast dormitories surrounded by high walls and barbed wire, and functioned as violent forced labour camps;

    b.  forced migrant workers who were – not always, but often – victims themselves of human trafficking to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

    c.  frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

    d.  used their political influence in multiple countries to protect their criminal enterprise; and

    e.  paid bribes to foreign public officials to avoid disruption by law enforcement.

9.  The indictment alleges that Chen maintained meticulous records of the compounds' operations, including ledgers of the tracking profits generated from the fraud schemes, documents detailing "phone farms" used in the schemes, and images depicting methods of beating and torture used against workers.

10. The US DOJ alleges that the schemes carried out by the Prince Group resulted in billions of dollars in losses incurred by victims in the United States and around the world. The documents in the US Proceedings allege that proceeds from these criminal activities have been laundered through

4

various means, including cryptocurrency (using "spraying" and "funneling" techniques), online gambling operations, and cryptocurrency mining operations. Chen, his associates and companies within the Prince Group, "washed" and returned the fraudulent proceeds to the Prince Group. The "washing" was done by using the Prince Group's vast network of seemingly legitimate business enterprises to launder its criminal proceeds. One common method was to collect the fraudulent proceeds in the form of bitcoin or stablecoins and then off-ramp them into conventional currencies, for example, the US dollar. The launderers then used that cash to purchase clean bitcoin or other cryptocurrencies. Chen was directly involved in coordinating these laundering efforts.

11.    Chen and his associates subsequently used the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

12.    On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation.  The effect of the designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them.  The targets include Zhou Yun, Chen and the Company. The OFAC noted that:

   a.    Americans have lost at least $10 billion to Southeast Asia-based scam operations in 2024, a 66 percent increase over the prior year, with scams like those perpetrated by Prince Group being particularly significant.

   b.    The Prince Group remained a dominant player in Cambodia's scam economy and has controlled illicit financial flows of billions of dollars.

   c.    The actions taken by OFAC and Financial Crimes Enforcement Network (FinCEN) were in close coordination with the United Kingdom's Foreign, Commonwealth, and Development Office ("FCDO"), which took complementary actions against criminal networks responsible for targeting citizens of the United States and other allied nations through online scams and the laundering of stolen funds.

5

**Action in the UK**

13.    On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group.  In doing so it noted that Chen and his associates have incorporated companies in the BVI and own properties in London, including a £12 million mansion on Avenue Road in North London, a £100 million office building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and Nine Elms in South London.

14.    The Foreign Secretary Yvette Cooper stated that:

> "*The masterminds behind these horrific scam centres are ruining the lives of vulnerable people and buying up London homes to store their money.*
>
> *Together with our US allies, we are taking decisive action to combat the growing transnational threat posed by this network – upholding human rights, protecting British nationals and keeping dirty money off our streets.*"

15.    The Fraud Minister Lord Hanson said:

> "*These sanctions prove our determination to stop those who profit from this activity, hold offenders accountable, and keep dirty money out of the UK. Through our new, expanded Fraud Strategy and the upcoming Global Fraud Summit, we will go even further to disrupt corrupt networks and protect the public from shameless criminals.*"

16.    The effect of these sanctions is to prevent the transfer of these properties, freeze any business in which Chen and the Prince Group are involved and lock Chen and the Prince Group transnational criminal network out of the UK's financial system.

**Action in other jurisdictions**

17.    News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen,  the Prince Group, and its related entities and companies.  These actions are set out in paragraphs 19 to 22 below. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the global response to combat transnational organised crime.

*Singapore*

18.    On 31 October, 2025, Singapore police announced that they had seized over $150 million (approximately US$115 million) in assets linked to the Prince Group. The seized assets include six

6

properties, bank accounts, securities accounts, and cash which are said to represent the proceeds of money laundering and forgery offences committed by Chen and the Prince Group. According to the Monetary Authority of Singapore (MAS), financial institutions had previously filed suspicious transaction reports, and a number of suspicious accounts had been closed. The Singapore Police Force stated that investigations into Chen and his associates commenced in 2024 after it received intelligence from the Suspicious Transaction Reporting Office (STR).

### *Hong Kong*

19.     On 4 November, 2025, Hong Kong authorities announced that they had frozen assets worth HK$2.75 billion (approximately US$354 million), which, based on intelligence and information gathered from multiple sources, are suspected to represent proceeds of international cross-border telecommunications fraud and money laundering activities committed by the Prince Group. The frozen assets include cash, stocks, and funds held by individuals and corporate entities.  At least 18 Hong Kong companies were blacklisted by the United States in connection with the Prince Group, including two listed companies - *"Khoon Group and Geotech Holdings".*

### *Taiwan*

20.     On 4 November, 2025, Taiwanese prosecutors announced that they had detained 25 individuals and seized T$4.5 billion (approximately US$147 million) in assets tied to the Prince Group. The seized assets include 26 high-end cars, properties, and bank accounts tied to the network and to Chen in relation to money laundering and forced labour offences.

### *Thailand*

21.     On 3 December, 2025, the Thai authorities announced that they had seized assets worth more than 10,157 million baht (approximately US$318 million) and issued arrest warrants for 42 individuals linked to transnational online scam operations connected to Chen and Cambodian nationals Kok An and Yim Leak. As of 3 December, 2025, 29 individuals had been arrested. The seizures include shares in Bangchak Corporation Limited worth 6 billion baht (approximately US$188 million). Thailand's Anti-Money Laundering Office (AMLO) stated that investigators had found "*information on networks of online fraud, human trafficking, and money-laundering*" that were linked to Chen and his associates.

**The effect of the multi-jurisdictional actions**

22.    These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating transnational organised crime, human trafficking, forced labour, and large-scale financial fraud. The scale and coordination of these actions across at least six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network

23.    In total, as of 9 December, 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The role of BVI companies**

24.    The OFAC has determined that the BVI companies form part of a complex network of holding companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

25.    In the US Complaint, the US DOJ alleged that Chen and his associates also laundered fraudulent proceeds through several companies including companies in the BVI which are under their control.  It alleged further that these companies do not serve any real purpose other than to launder funds. Two BVI Companies were named in the US Proceedings - Amber Hill Ventures Limited **("Amber Hill")** and Lateral Bridge Global Limited **("LBG")**.

26.    Amber Hill and LBG are said to be controlled by two of Chen's associates, who are also defendants in the US Civil Proceedings. The US Complaint discloses that personnel from the Federal Bureau of Investigation ("FBI") have conducted extensive blockchain tracing to analyse the movements of the Prince Group's cryptocurrency.  The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin which the US DOJ seeks to forfeit flowed through wallets which were controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

8

27. It is also alleged that Amber Hill had a banking relationship with a financial institution in the United States. It was recorded in the account opening documents with that financial institution that Amber Hill's business activities consisted of "*[p]roprietary trading and investing*," and its anticipated deposit and withdrawal activity would be approximately $2 million each. However, according to account statements, in February 2020, Amber Hill's account with that financial institution had approximately $22.5 million in deposits and $21.8 million in withdrawals. Amber Hill was struck from the register and dissolved on 10 November, 2023.

**THE APPLICATION**

28. The Application is made by the Attorney General on the ground that (i) it is just and equitable that joint liquidators be appointed over the Company pursuant to section 162 (1) (b) of the Act and (ii) it is in the public interest that the joint liquidators are appointed pursuant to section 162 (1) (c) of the Act.

**Just and equitable ground**

29. Section 162(1)(b) of the Insolvency Act, 2003 provides that the Court may appoint a liquidator of a company if "the Court is of the opinion that it is just and equitable that the company should be liquidated."

30. The Attorney General is listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(b) of the Act.

31. It is just and equitable that the Company should be placed into liquidation for the following reasons:

    a. Available records reveal that Chen's Financial Assistant and Wealth Manager Zhou Yun is the sole director and sole shareholder of the Company. Chen is alleged to be the mastermind of the Prince Group. He has been criminally indicted in the United States and is subject to personal sanctions by both the United States and the United Kingdom.

    b. The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities, to include forced labour, human trafficking, large-scale fraud, and money laundering on a massive international scale.

9

c. The BVI companies including the Company are alleged to have been established and operated to assist Chen and the Prince Group which has defrauded numerous vulnerable victims of billions of US dollars.

d. Despite the enforcement actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on the allegations is free to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

e. The activities of some of the companies in the Prince Group have been the subject of civil and criminal enforcement actions in multiple jurisdictions, with authorities in six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

f. The Company is alleged to be a shell company which was used solely as a vehicle for the fraudulent scheme.

g. The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf, and identify potential claims against third parties.

h. The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

i. Independent liquidators are necessary to ensure proper coordination with regulatory and law enforcement authorities and liquidators, trustees, or receivers appointed in the BVI and other jurisdictions, given the multi-jurisdictional nature of the scheme and the actions taken by various authorities in several jurisdictions.

j. Independent liquidators would enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed as part of a collective process.

k. Given the fraudulent nature of the scheme, there are likely to be voidable transactions, preferences, and other claims that independent liquidators could pursue for the benefit of the victims and creditors.

32. Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that its affairs are properly investigated and wound up under the supervision of this Honourable Court.

10

**Public Interest ground**

33.    Section 162(1)(c) of the Act gives the Court the discretion to appoint a liquidator of a company if it is of the opinion that it is in the public interest for a liquidator to be appointed.

34.    The Attorney General is also listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(c) of the Act.

35.    The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

36.    BVI companies including, the Company are alleged to have been used as vehicles in what has been described by international law enforcement authorities as one of the largest fraudulent investment schemes in recent history.  The scheme has caused billions of dollars in losses to victims worldwide and involved egregious human rights abuses.  They are alleged to have been used to launder and/or hold the proceeds of the horrific crimes committed by Chen and his associates, including human trafficking, forced labour, aggravated identity theft, international fraud designed to scam unsuspecting victims of their lifesavings and money laundering.  These criminal and fraudulent activities are inherently objectionable and are contrary to clearly identifiable public interest.

37.    The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the BVI as a financial centre and threatens confidence in BVI incorporated companies and the BVI's regulatory framework.

38.    The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for fraudulent purposes.

39.    The appointment of liquidators will:
    a.    facilitate cooperation with enforcement authorities, regulators, and insolvency practitioners in the BVI and other jurisdictions, demonstrating the BVI's commitment to

11

international cooperation in combating financial fraud;

b.    ensure that the Company's affairs are properly investigated and that appropriate steps are taken to recover assets and maximise returns to defrauded investors;

c.    enable a proper investigation into how the Company was used in the fraudulent scheme, which may assist in preventing similar schemes in the future.

40.    Given that enforcement authorities in at least six countries have taken action and frozen or seized assets valued at over US$16 billion, it is in the public interest that BVI as the jurisdiction of incorporation of the Company, takes prompt and decisive action through the appointment of liquidators.

41.    The scale of this fraud and the international coordination of related actions make it imperative, from a public interest perspective, that the BVI positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

42.    In all the circumstances, it is not only just and equitable but also in the public interest that Joint liquidators be appointed over the Company to prevent it from being used to further Chen's and the Prince Group's criminal enterprise.

43.    If appointed, the joint liquidators would be able to take control of the Company, take the necessary steps in the BVI or overseas to secure and preserve its books and records and secure its assets for the benefit of the victims of the crimes perpetuated by the Prince Group. As officers of the court, they would also be able to independently investigate claims against the Company, marshal records, ensure that the Company complies with BVI laws and regulations and respond to any court process.

**Proposed liquidators**

44.    Mr. James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110, Mr. Paul Pretlove and Mr. David Standish, both of Interpath Ltd, 10 Fleet Place, London EC4M 7RB who to the best of the Applicant's knowledge and belief are eligible insolvency practitioners have all consented to be appointed as joint liquidators of the Company.

12

45.     In the circumstances, it is just and equitable and in the public's interest to grant the order which the Attorney General seeks, for the appointment of joint liquidators over the Company.

A draft of the order sought is attached.

This application is supported by the affidavit of Attorney General Dawn J Smith.

The names and addresses of the persons on whom it is intended to serve the application are as follows:

**Bright Team Global Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

The names and addresses of the persons required to be given notice of this application pursuant to the Act and the Rules (if any) are as follows:

**Bright Team Global Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

This Application is filed by O'Neal Webster, Solicitors for the Applicant, whose address for service is 2nd Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands.  REF: 101538

_____                    Dated: January 2, 2026
Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

13

THE EASTERN CARIBBEAN SUPREME

COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/

**IN THE MATTER OF BRIGHT TEAM GLOBAL LIMITED**

**AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS**

BETWEEN:

**THE ATTORNEY GENERAL**

Applicant

**AND**

**BRIGHT TEAM GLOBAL LIMITED**

Respondent

_____

**ORIGINATING APPLICATION**

_____

**O'Neal Webster**

Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 l Fax: (284) 393 5805
www.onealwebster.com

14

**Case Number :BVIHCOM2026/0001**

The Insolvency Rules 2005

**ORDINARY APPLICATION (EX-PARTE)**

**(Company)**

Rule 14

**Submitted Date:02/01/2026 19:20**

**Filed Date:05/01/2026 08:30**

**Fees Paid:0.00**

| | |
|---|---|
| **THE EASTERN CARIBBEAN SUPREME COURT IN THE HIGH COURT OF JUSTICE VIRGIN ISLANDS COMMERCIAL DIVISION** | |
| Matter No.: | BVIHC(COM)       of 2026 |
| Applicant: | **THE ATTORNEY GENERAL** |
| Respondent: | **BRIGHT TEAM GLOBAL LIMITED** |

In the matter of:

| |
|---|
| **BRIGHT TEAM GLOBAL LIMITED** |

| |
|---|
| For Court Use Only |
| **To:  BRIGHT TEAM GLOBAL LIMITED,** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands. |
| **This Application will be heard by the Commercial Court Judge at Road Town, Tortola British Virgin Islands** |
| **on the            day of                       2026      at              o'clock.** |
| **If you do not attend at the time shown the Court may make an order in your absence** |

We, O'Neal Webster, on behalf of the Applicant, **the Attorney General of the Virgin Islands ("the Attorney General")**, apply pursuant to section 170 of the Insolvency Act 2003 (the "Act") for the following orders that:

1. James Drury,  a Virgin Islands ("BVI") licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola,  Virgin Islands, VG1110; and Paul Pretlove and David Standish both United Kingdom ("UK") licensed insolvency

1

practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB to be appointed as joint provisional liquidators of Bright Team Global Limited **("the Company")** with immediate effect.

2.  The powers afforded to the said joint provisional liquidators shall be as set out in Schedule 2 of the Act as varied by Schedule 3, and as further varied by this Order.

3.  An order that the joint provisional liquidators have the power to:

    a.  consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the joint provisional liquidators and the Attorney General which is attached hereto **("the Protocol")**.

    b.  cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4.  An order that the costs of the liquidation, including the proper fees and disbursements of the joint liquidators, the Attorney General's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

5.  An order that the costs of the application be costs in the liquidation.

6.  Such further order as the court deems appropriate.

A draft of the order sought is attached.

The grounds upon which this order is sought are set out in the affidavit of the Attorney General Dawn J. Smith filed on 2 January, 2026, but in brief are as follows:

**Introduction**

1.  There are good prima facie reasons as set out in the originating application for the eventual appointment of full liquidators on the grounds of public interest and on the grounds that it is just and equitable that they be appointed over the Company.  A summary of these reasons is set out below.

2

**The Company and the Prince Group**

2.     The Company was incorporated under the laws of the Virgin Islands **("BVI")** on 3 July 2018. Its registered office is located at Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, BVI, VG1110. Chen Zhi's **("Chen")** Financial Assistant and Wealth Manager Zhou Yun is the sole director and sole shareholder of the Company.

3.     The Company is alleged to be a member of a transnational criminal organisation that is headed by the Prince Holding Group **("the Prince Group")** which is a Cambodian corporate conglomerate comprised of several  companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan. Chen is the mastermind of the Prince Group's transnational criminal organisation and its chairman.

**Action in the USA and other jurisdictions**

4.     On 14 October, 2025, the United States Department of Justice **("US DOJ"),** the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** and the United Kingdom Government announced coordinated  actions targeting the Prince Group.

5.     The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York **("the NY District Court")** on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering **("the US Indictment").** Concurrently, the US DOJ filed a civil forfeiture complaint **("the US Complaint")** seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group.  The criminal and civil proceedings will be referred together as the "**the US Proceedings**".

6.     On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation.  The effect of this designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them.  The targets include Zhou Yun, Chen and the Company.

7.     On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group. In doing so it

3

noted that Chen and his associates have incorporated companies in the BVI and own properties in London including a £12 million mansion on Avenue Road in North London, a £100 million office building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and in Nine Elms in South London.

8.      News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen, the Prince Group, and its related entities and companies. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the coordinated global response to combat transnational organised crime.

9.      These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating transnational organised crime, human trafficking, forced labour, and large-scale financial fraud. The scale and coordination of these actions across six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network.

10.     In total, as of 9 December 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand) have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The allegation against Chen, his associates and companies within the Prince Group**

11.     In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and criminal activities including cryptocurrency investment fraud, human trafficking, money laundering, wire fraud, bank fraud, forced labour and, illegal online gambling. It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers. The scammers disappeared after taking almost every dollar they could from their victims.

4

12.    The US DOJ also alleges that the fraudulent activities carried out by the Prince Group resulted in billions of dollars in losses incurred by victims in the United States and around the world. Chen and his associates are alleged to use the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

13.    To effectuate their fraudulent schemes, it is alleged in the US Proceedings that Chen and his associates:

   a.    forced migrant workers who were – not always, but often – victims themselves of human trafficking, to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

   b.    frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

   c.    used their political influence in multiple countries to protect their criminal enterprise; and

   d.    paid bribes to foreign public officials to avoid disruption by law enforcement.

**The role of BVI Companies in the Prince Group**

14.    The OFAC determined that the BVI companies form part of a complex network of companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

15.    In the US complaint, the US DOJ alleged that Chen and his associates laundered the fraudulent proceeds of their crime through several companies in the BVI, Cayman, Cambodia and Hong Kong, which are under their control. It alleged further that these companies do not serve any real purpose other than to launder the proceeds of their criminal and fraudulent activities. Two BVI Companies are named in the US Complaint - Amber Hill Ventures Limited ("**Amber Hill**") and Lateral Bridge Global Limited **("LBG")**.

16.    The US Complaint discloses that personnel from the Federal Bureau of Investigation ("FBI") have

5

conducted extensive blockchain tracing to analyse the movements of the Prince Group's cryptocurrency. The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin which the US DOJ seeks to forfeit flowed through wallets which were controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

**It is just and equitable that liquidators be appointed over the Company**

17.     The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities to include forced labour, human trafficking, large-scale fraud, and money laundering on a massive international scale.

18.     The activities of some of the companies in the Prince Group have been the subject of civil and criminal actions in multiple jurisdictions, with authorities in at least six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

19.     The BVI companies including the Company are alleged to have been established and operated to assist Chen and the Prince Group which has defrauded numerous vulnerable victims of billions of US dollars.

20.     Despite the  actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on allegations is free to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

21.     The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf for the benefit of the victims of the fraud; and to identify potential claims against third parties.

22.     The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

23.     Independent liquidators are necessary to ensure proper coordination with regulatory and

6

enforcement authorities and liquidators, trustees, or receivers appointed in the Virgin Islands and other jurisdictions, given the multi-jurisdictional nature of the scheme and the  actions. Independent liquidators would also enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed.

24.    Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that its affairs are properly investigated and wound up under the supervision of this Honourable Court.

**It is in the public interest that liquidators be appointed over the Company**

25.    The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

26.    The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the Virgin Islands as a financial centre and threatens confidence in BVI companies and the BVI's regulatory framework.

27.    The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for nefarious purposes and with its commitment to international cooperation and combating serious transnational crime.

28.    Given that regulatory and law enforcement authorities in at least six countries have taken action and frozen or seized assets valued at over US$16 billion, it is in the public interest that the BVI as the jurisdiction of incorporation of the Company takes prompt and decisive action through the appointment of liquidators.

29.    The scale of this fraud and the international coordination of actions make it imperative, from a public interest perspective, that the BVI  positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

7

**The appointment of joint provisional liquidators**

30.  It is essential that joint provisional liquidators be appointed over the Company immediately (without notice to it and its principals) and before the originating application is heard and determined for the following reasons:

a.  The Company continues to be under the control of Chen and his associates and as a result, they can  use or continue to use it to further the criminal enterprise thereby continuing to inflict public harm.

b.  Given the serious allegations set out in this application, the sanctions imposed by the United States and the UK Government,  the US Indictment, and the US Complaint, it is appropriate and necessary that provisional liquidators be appointed immediately to:

(i)  immediately take full control of the Company;

(ii)  identify and preserve its assets that may represent proceeds of crime by preventing further movement, concealment, or dissipation of those assets;

(iii)  take control of its books and records;

(iv)  conduct thorough investigations into its past transactions; and

(v)  review banking records, asset transfers, and corporate dealings to identify and locate the potential money laundering activities.

c.  The information and evidence gathered by the liquidators may provide crucial support for law enforcement authorities, both in the BVI and internationally, to apply for freezing orders, forfeiture orders, and other remedies. In this case, given that the United States has already filed a civil complaint seeking forfeiture of 127,271 Bitcoin valued at approximately US$15 billion allegedly connected to the Prince Group's criminal activities, the work of the liquidators could materially assist in tracing assets and preserving evidence relevant to that and other  actions.

d.  The appointment of provisional liquidator over the Company and other BVI companies which are owned and controlled by Chen would align with the BVI's National AML/CFT Policy and its commitment to international cooperation in combating serious transnational crime.

e.  The coordinated  actions taken by the US DOJ and UK Government on 14 October, 2025 signal the seriousness with which these major jurisdictions view the alleged criminal activities of the Prince Group. The appointment of provisional liquidators by this

8

Honourable Court would demonstrate that the BVI is equally committed to ensuring that its corporate structures are not used as vehicles for serious criminality and would facilitate cooperation with international authorities in their ongoing investigations and asset recovery efforts.

**Urgency**

31. The public announcements of the US Civil Proceedings, OFAC sanctions, and UK sanctions on 14 October 2025 together with actions taken in other jurisdictions have no doubt put Chen and his associates, who are alleged to be sophisticated criminals, on notice of the scrutiny being applied to the Prince Group network and its corporate structures.

32. The Company is likely to have received proceeds of the criminal and fraudulent activities and to have documentation that may assist in recovering the proceeds of the crime. There is a real and substantial risk that absent the immediate appointment of provisional liquidators, assets held by or through the BVI companies, including the Company will be transferred, concealed, or dissipated and documents will be destroyed or concealed. This real and substantial risk will increase once the Company is served with the originating application,

33. The appointment of provisional liquidators will immediately remove control from Chen and place the Company under the supervision and control of officers of this Court, thereby protecting the integrity of any investigation and preserving assets for the benefit of the victims of Chen and the Prince Group's fraudulent and criminal activities.

34. The appointment of joint provisional liquidators is appropriate given the number of BVI companies involved, the complexity of the alleged corporate structure spanning multiple jurisdictions, the international nature of the investigations and actions, and the need for extensive expertise in tracing assets and investigating potential money laundering activities.

**The Proposed provisional liquidators**

35. The Attorney General proposes that James Drury, a BVI licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110; and Paul Pretlove and David Standish, both UK licensed

9

insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB be appointed as joint provisional liquidators of the Company.

**Conclusion**

36.    In all the circumstances, it is just and convenient and in the public's interest, that this Honourable Court grants the order which the Attorney General seeks in this application.

A draft of the order sought is attached.

This application is supported by the affidavit of Attorney General Dawn J. Smith.

The names and addresses of the persons on whom it is intended to serve the application are as follows:

This Application is filed by O'Neal Webster, Solicitors for the Applicant whose address for service is 2nd Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands. REF: NW/LG/101538.

Dated: January 2, 2026

_____
Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

10

THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/

**IN THE MATTER OF BRIGHT TEAM GLOBAL LIMITED**

**AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS**.

BETWEEN:

**THE ATTORNEY GENERAL**

Applicant

**AND**

**BRIGHT TEAM GLOBAL LIMITED**

Respondent

_____

**EX-PARTE ORDINARY APPLICATION
FOR JOINT PROVISIONAL LIQUIDATORS**

_____



Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 l Fax: (284) 393 5805
www.onealwebster.com

11

**Case Number :BVIHCOM2026/0004**

FILED
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS

The Insolvency Rules 2005

**ORIGINATING APPLICATION**

**(Company)**

Rule 14

**Submitted Date:04/01/2026 11:00**

**Filed Date:05/01/2026 08:33**

**Fees Paid:0.00**

| **THE EASTERN CARIBBEAN SUPREME COURT IN THE HIGH COURT OF JUSTICE VIRGIN ISLANDS COMMERCIAL DIVISION** | |
|---|---|
| Matter No.: | BVIHC(COM)     of 2026 |
| Applicant: | **THE ATTORNEY GENERAL** |
| Respondent: | **DELIGHTFUL THRIVE LIMITED** |

In the matter of:

| **DELIGHTFUL THRIVE LIMITED** |
|---|

| For Court Use Only |
|---|
| **To:  DELIGHTFUL THRIVE LIMITED,** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands.<br><br>**This Application will be heard by the Commercial Court Judge at Road Town, Tortola British Virgin Islands**<br>**on the            day of            2026    at            o'clock.**<br><br>**If you do not attend at the time shown the Court may make an order in your absence** |

The Applicant, the Attorney General of the Virgin Islands ("**Attorney General**") of TTT Building, Wickhams Cay 1, Road Town, Tortola, Virgin Islands VG1110 applies to the Court for:

1.    An order pursuant to sections 162(1) (b) and (c) of the Insolvency Act, Revised Edition 2020 ("**the Act**") that Paul Pretlove, James Drury and David Standish, be appointed as joint liquidators of Delightful Thrive Limited **("the Company")**, a company incorporated under the laws of the Virgin Islands ("**BVI**"). James Drury is a BVI licensed insolvency practitioner of Interpath (BVI) Limited, PO

1

437

Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110. Paul Pretlove and David Standish are United Kingdom ("UK") licensed insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB acting as overseas insolvency practitioners as defined in the Act.

2. An order that the joint liquidators be given all powers set out in Schedule 2 of the Act, such powers to be exercisable without the sanction of the Court and such other powers as this Honourable Court deems fit.

3. An order that the joint liquidators have the power to:

   a. consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the liquidators and the Attorney General which is attached hereto **("the Protocol")**.

   b. cooperate and communicate with law enforcement and regulatory authorities in the BVI and in other jurisdictions.

4. An order that the costs of the liquidation, including the proper fees and disbursements of the joint liquidators and the Attorney General's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims

5. An order that the costs of the application be costs in the liquidation.

6. Such further order as the court deems appropriate.

The grounds upon which this order is sought are set out in the affidavit of Attorney General, Dawn J. Smith filed on January 2, 2026 and are summarised as follows:

**THE PARTIES**

1. The Attorney General is the principal legal adviser to the Government of the Virgin Islands ("**the Government**") pursuant to section 58 of the Virgin Islands Constitution Order, 2007, and has overall responsibility for all aspects of civil litigation on behalf of the Government.

2

438

2.  The Company was incorporated under the laws of the BVI on 11 September 2018. Its registered office is located at Vistra Corporate Services Centre **("Vistra")**, Wickhams Cay II, Road Town, Tortola, BVI, VG1110. The Company is alleged to be a member of a transnational criminal organisation that is headed by Prince Holding Group Limited **("the Prince Group"),** which is a Cambodian corporate conglomerate that comprises several companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan.

3.  The chairman of the Prince Group is Chen Zhi **("Chen").** Chen is the sole director and sole shareholder of the Company.

**BACKGROUND**

4.  The background is comprehensively set out in the indictment and the verified complaint filed by the United States Department of Justice **("US DOJ")** on October 14, 2025 and in the announcement issued by the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** dated October 13, 2025. The background is summarised below.

**Action in the United States**

5.  On 14 October, 2025, the United States Department of Justice **("US DOJ"),** the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** and the United Kingdom Government announced coordinated actions targeting the Prince Group.

6.  The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York **("the NY District Court")** on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering **("the US Indictment").** Concurrently, the US DOJ filed a civil forfeiture complaint **("the US Complaint")** seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group. The criminal and civil proceedings will be referred to together as **"the US Proceedings."**

7.  In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and

3

439

criminal activities including cryptocurrency investment fraud, human trafficking, money laundering, wire fraud, bank fraud, forced labour and, illegal online gambling. It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers. The scammers disappeared after taking almost every dollar they could from their victims.

8. To effectuate the schemes, it is alleged in the US Proceedings that Chen and his associates:

a. built and operated forced-labour scam compounds across Cambodia in which workers were made to execute the scams at high volumes. The scam compounds housed vast dormitories surrounded by high walls and barbed wire, and functioned as violent forced labour camps;

b. forced migrant workers who were – not always, but often – victims themselves of human trafficking to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

c. frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

d. used their political influence in multiple countries to protect their criminal enterprise; and

e. paid bribes to foreign public officials to avoid disruption by law enforcement.

9. The indictment alleges that Chen maintained meticulous records of the compounds' operations, including ledgers of the tracking profits generated from the fraud schemes, documents detailing "phone farms" used in the schemes, and images depicting methods of beating and torture used against workers.

10. The US DOJ alleges that the schemes carried out by the Prince Group resulted in billions of dollars in losses incurred by victims in the United States and around the world. The documents in the US Proceedings allege that proceeds from these criminal activities have been laundered through

4

440

various means, including cryptocurrency (using "spraying" and "funneling" techniques), online gambling operations, and cryptocurrency mining operations. Chen, his associates and companies within the Prince Group, "washed" and returned the fraudulent proceeds to the Prince Group. The "washing" was done by using the Prince Group's vast network of seemingly legitimate business enterprises to launder its criminal proceeds. One common method was to collect the fraudulent proceeds in the form of bitcoin or stablecoins and then off-ramp them into conventional currencies, for example, the US dollar. The launderers then used that cash to purchase clean bitcoin or other cryptocurrencies. Chen was directly involved in coordinating these laundering efforts.

11. Chen and his associates subsequently used the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

12. On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation.  The effect of the designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them.  The targets include Chen and the Company. The OFAC noted that:

    a.    Americans have lost at least $10 billion to Southeast Asia-based scam operations in 2024, a 66 percent increase over the prior year, with scams like those perpetrated by Prince Group being particularly significant.

    b.    The Prince Group remained a dominant player in Cambodia's scam economy and has controlled illicit financial flows of billions of dollars.

    c.    The actions taken by OFAC and Financial Crimes Enforcement Network (FinCEN) were in close coordination with the United Kingdom's Foreign, Commonwealth, and Development Office ("FCDO"), which took complementary actions against criminal networks responsible for targeting citizens of the United States and other allied nations through online scams and the laundering of stolen funds.

5

441

**Action in the UK**

13.     On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group.  In doing so it noted that Chen and his associates have incorporated companies in the BVI and own properties in London, including a £12 million mansion on Avenue Road in North London, a £100 million office building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and Nine Elms in South London.

14.     The Foreign Secretary Yvette Cooper stated that:

> *"The masterminds behind these horrific scam centres are ruining the lives of vulnerable people and buying up London homes to store their money.*
>
> *Together with our US allies, we are taking decisive action to combat the growing transnational threat posed by this network – upholding human rights, protecting British nationals and keeping dirty money off our streets."*

15.     The Fraud Minister Lord Hanson said:

> *"These sanctions prove our determination to stop those who profit from this activity, hold offenders accountable, and keep dirty money out of the UK. Through our new, expanded Fraud Strategy and the upcoming Global Fraud Summit, we will go even further to disrupt corrupt networks and protect the public from shameless criminals."*

16.     The effect of these sanctions is to prevent the transfer of these properties, freeze any business in which Chen and the Prince Group are involved and lock Chen and the Prince Group transnational criminal network out of the UK's financial system.

**Action in other jurisdictions**

17.     News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen,  the Prince Group, and its related entities and companies.  These actions are set out in paragraphs 19 to 22 below. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the global response to combat transnational organised crime.

*Singapore*

18.     On 31 October, 2025, Singapore police announced that they had seized over $150 million (approximately US$115 million) in assets linked to the Prince Group. The seized assets include six

6

442

properties, bank accounts, securities accounts, and cash which are said to represent the proceeds of money laundering and forgery offences committed by Chen and the Prince Group. According to the Monetary Authority of Singapore (MAS), financial institutions had previously filed suspicious transaction reports, and a number of suspicious accounts had been closed. The Singapore Police Force stated that investigations into Chen and his associates commenced in 2024 after it received intelligence from the Suspicious Transaction Reporting Office (STR).

### Hong Kong

19.    On 4 November, 2025, Hong Kong authorities announced that they had frozen assets worth HK$2.75 billion (approximately US$354 million), which, based on intelligence and information gathered from multiple sources, are suspected to represent proceeds of international cross-border telecommunications fraud and money laundering activities committed by the Prince Group. The frozen assets include cash, stocks, and funds held by individuals and corporate entities.  At least 18 Hong Kong companies were blacklisted by the United States in connection with the Prince Group, including two listed companies - "Khoon Group and Geotech Holdings".

### Taiwan

20.    On 4 November, 2025, Taiwanese prosecutors announced that they had detained 25 individuals and seized T$4.5 billion (approximately US$147 million) in assets tied to the Prince Group. The seized assets include 26 high-end cars, properties, and bank accounts tied to the network and to Chen in relation to money laundering and forced labour offences.

### Thailand

21.    On 3 December, 2025, the Thai authorities announced that they had seized assets worth more than 10,157 million baht (approximately US$318 million) and issued arrest warrants for 42 individuals linked to transnational online scam operations connected to Chen and Cambodian nationals Kok An and Yim Leak. As of 3 December, 2025, 29 individuals had been arrested. The seizures include shares in Bangchak Corporation Limited worth 6 billion baht (approximately US$188 million). Thailand's Anti-Money Laundering Office (AMLO) stated that investigators had found "*information on networks of online fraud, human trafficking, and money-laundering*" that were linked to Chen and his associates.

7

443

**The effect of the multi-jurisdictional actions**

22.     These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating transnational organised crime, human trafficking, forced labour, and large-scale financial fraud. The scale and coordination of these actions across at least six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network

23.     In total, as of 9 December, 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The role of BVI companies**

24.     The OFAC has determined that the BVI companies form part of a complex network of holding companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

25.     In the US Complaint, the US DOJ alleged that Chen and his associates also laundered fraudulent proceeds through several companies including companies in the BVI which are under their control. It alleged further that these companies do not serve any real purpose other than to launder funds. Two BVI Companies were named in the US Proceedings - Amber Hill Ventures Limited (**"Amber Hill"**) and Lateral Bridge Global Limited (**"LBG"**).

26.     Amber Hill and LBG are said to be controlled by two of Chen's associates, who are also defendants in the US Civil Proceedings. The US Complaint discloses that personnel from the Federal Bureau of Investigation ("FBI") have conducted extensive blockchain tracing to analyse the movements of the Prince Group's cryptocurrency. The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin which the US DOJ seeks to forfeit flowed through wallets which were controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

8

444

27. It is also alleged that Amber Hill had a banking relationship with a financial institution in the United States. It was recorded in the account opening documents with that financial institution that Amber Hill's business activities consisted of "*[p]roprietary trading and investing*," and its anticipated deposit and withdrawal activity would be approximately $2 million each. However, according to account statements, in February 2020, Amber Hill's account with that financial institution had approximately $22.5 million in deposits and $21.8 million in withdrawals. Amber Hill was struck from the register and dissolved on 10 November, 2023.

**THE APPLICATION**

28. The Application is made by the Attorney General on the ground that (i) it is just and equitable that joint liquidators be appointed over the Company pursuant to section 162 (1) (b) of the Act and (ii) it is in the public interest that the joint liquidators are appointed pursuant to section 162 (1) (c) of the Act.

**Just and equitable ground**

29. Section 162(1)(b) of the Insolvency Act, 2003 provides that the Court may appoint a liquidator of a company if "the Court is of the opinion that it is just and equitable that the company should be liquidated."

30. The Attorney General is listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(b) of the Act.

31. It is just and equitable that the Company should be placed into liquidation for the following reasons:

    a. Chen is the sole shareholder and/or director of the Company. He is alleged to be the mastermind of the Prince Group. He has been criminally indicted in the United States and is subject to personal sanctions by both the United States and the United Kingdom.

    b. The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities, to include forced labour, human trafficking, large-scale fraud, and money laundering on a massive international scale.

    c. The BVI companies including the Company are alleged to have been established and

9

445

operated to assist Chen and the Prince Group which has defrauded numerous vulnerable victims of billions of US dollars.

d.  Despite the enforcement actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on the allegations is free to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

e.  The activities of some of the companies in the Prince Group have been the subject of civil and criminal enforcement actions in multiple jurisdictions, with authorities in six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

f.  The Company is alleged to be a shell company which was used solely as a vehicle for the fraudulent scheme.

g.  The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf, and identify potential claims against third parties.

h.  The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

i.  Independent liquidators are necessary to ensure proper coordination with regulatory and law enforcement authorities and liquidators, trustees, or receivers appointed in the BVI and other jurisdictions, given the multi-jurisdictional nature of the scheme and the actions taken by various authorities in several jurisdictions.

j.  Independent liquidators would enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed as part of a collective process.

k.  Given the fraudulent nature of the scheme, there are likely to be voidable transactions, preferences, and other claims that independent liquidators could pursue for the benefit of the victims and creditors.

32.  Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that its affairs are properly investigated and wound up under the supervision of this Honourable Court.

10

446

**Public Interest ground**

33.     Section 162(1)(c) of the Act gives the Court the discretion to appoint a liquidator of a company if it is of the opinion that it is in the public interest for a liquidator to be appointed.

34.     The Attorney General is also listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(c) of the Act.

35.     The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

36.     BVI companies including, the Company are alleged to have been used as vehicles in what has been described by international law enforcement authorities as one of the largest fraudulent investment schemes in recent history.  The scheme has caused billions of dollars in losses to victims worldwide and involved egregious human rights abuses.  They are alleged to have been used to launder and/or hold the proceeds of the horrific crimes committed by Chen and his associates, including human trafficking, forced labour, aggravated identity theft, international fraud designed to scam unsuspecting victims of their lifesavings and money laundering.  These criminal and fraudulent activities are inherently objectionable and are contrary to clearly identifiable public interest.

37.     The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the BVI as a financial centre and threatens confidence in BVI incorporated companies and the BVI's regulatory framework.

38.     The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for fraudulent purposes.

39.     The appointment of liquidators will:
        a.     facilitate cooperation with enforcement authorities, regulators, and insolvency practitioners in the BVI and other jurisdictions, demonstrating the BVI's commitment to international cooperation in combating financial fraud;

11

447

b.    ensure that the Company's affairs are properly investigated and that appropriate steps are taken to recover assets and maximise returns to defrauded investors;

c.    enable a proper investigation into how the Company was used in the fraudulent scheme, which may assist in preventing similar schemes in the future.

40.    Given that enforcement authorities in at least six countries have taken action and frozen or seized assets valued at over US$16 billion, it is in the public interest that BVI as the jurisdiction of incorporation of the Company, takes prompt and decisive action through the appointment of liquidators.

41.    The scale of this fraud and the international coordination of related actions make it imperative, from a public interest perspective, that the BVI positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

42.    In all the circumstances, it is not only just and equitable but also in the public interest that Joint liquidators be appointed over the Company to prevent it from being used to further Chen's and the Prince Group's criminal enterprise.

43.    If appointed, the joint liquidators would be able to take control of the Company, take the necessary steps in the BVI or overseas to secure and preserve its books and records and secure its assets for the benefit of the victims of the crimes perpetuated by the Prince Group. As officers of the court, they would also be able to independently investigate claims against the Company, marshal records, ensure that the Company complies with BVI laws and regulations and respond to any court process.

**Proposed liquidators**

44.    Mr. James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110, Mr. Paul Pretlove and Mr. David Standish, both of Interpath Ltd, 10 Fleet Place, London EC4M 7RB who to the best of the Applicant's knowledge and belief are eligible insolvency practitioners have all consented to be appointed as joint liquidators of the Company.

12

448

45.     In the circumstances, it is just and equitable and in the public's interest to grant the order which the Attorney General seeks, for the appointment of joint liquidators over the Company.

A draft of the order sought is attached.

This application is supported by the affidavit of Attorney General Dawn J Smith.

The names and addresses of the persons on whom it is intended to serve the application are as follows:

**Delightful Thrive Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

The names and addresses of the persons required to be given notice of this application pursuant to the Act and the Rules (if any) are as follows:

**Delightful Thrive Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

This Application is filed by O'Neal Webster, Solicitors for the Applicant, whose address for service is 2nd Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands.  REF: 101538

Dated: January 2, 2026

_____
Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

13

449

THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/

**IN THE MATTER OF DELIGHTFUL THRIVE LIMITED**

**AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS**

BETWEEN:

**THE ATTORNEY GENERAL**

Applicant

**AND**

**DELIGHTFUL THRIVE LIMITED**

Respondent

---

**ORIGINATING APPLICATION**

---



**Legal Practitioners for the Applicant**
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 I Fax: (284) 393 5805
www.onealwebster.com

14

450

**Case Number :BVIHCOM2026/0004**

FILED
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS

The Insolvency Rules 2005

**ORDINARY APPLICATION (EX-PARTE)**

**(Company)**

Rule 14

**Submitted Date:04/01/2026 11:46**

**Filed Date:05/01/2026 08:33**

**Fees Paid:0.00**

| THE EASTERN CARIBBEAN SUPREME COURT IN THE HIGH COURT OF JUSTICE VIRGIN ISLANDS COMMERCIAL DIVISION | |
|---|---|
| Matter No.: | BVIHC(COM)      of 2026 |
| Applicant: | **THE ATTORNEY GENERAL** |
| Respondent: | **DELIGHTFUL THRIVE LIMITED** |

In the matter of:

| **DELIGHTFUL THRIVE LIMITED** |
|---|

| For Court Use Only |
|---|
| **To:  DELIGHTFUL THRIVE LIMITED,** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands. <br><br> **This Application will be heard by the Commercial Court Judge at Road Town, Tortola British Virgin Islands** <br> **on the            day of                    2026     at                o'clock.** <br><br> **If you do not attend at the time shown the Court may make an order in your absence** |

We, O'Neal Webster, on behalf of the Applicant, **the Attorney General of the Virgin Islands ("the Attorney General"),** apply pursuant to section 170 of the Insolvency Act 2003 (the "Act") for the following orders that:

1.  James Drury,  a Virgin Islands ("BVI") licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola,  Virgin Islands, VG1110; and Paul Pretlove and David Standish both United Kingdom ("UK") licensed insolvency

1

practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB to be appointed as joint provisional liquidators of Delightful Thrive Limited **("the Company")** with immediate effect.

2. The powers afforded to the said joint provisional liquidators shall be as set out in Schedule 2 of the Act as varied by Schedule 3, and as further varied by this Order.

3. An order that the joint provisional liquidators have the power to:

   a. consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the joint provisional liquidators and the Attorney General which is attached hereto **("the Protocol")**.

   b. cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4. An order that the costs of the liquidation, including the proper fees and disbursements of the joint liquidators, the Attorney General's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

5. An order that the costs of the application be costs in the liquidation.

6. Such further order as the court deems appropriate.

A draft of the order sought is attached.

The grounds upon which this order is sought are set out in the affidavit of the Attorney General Dawn J. Smith filed on 2ND January, 2026, but in brief are as follows:

**Introduction**

1. There are good prima facie reasons as set out in the originating application for the eventual appointment of full liquidators on the grounds of public interest and on the grounds that it is just and equitable that they be appointed over the Company. A summary of these reasons is set out below.

2

8

**The Company and the Prince Group**

2.  The Company was incorporated under the laws of the Virgin Islands **("BVI")** on 11 September 2018. Its registered office is located at Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, BVI, VG1110. The sole shareholder and director of the Company is Chen Zhi **("Chen")**.

3.  The Company is alleged to be a member of a transnational criminal organisation that is headed by the Prince Holding Group **("the Prince Group")** which is a Cambodian corporate conglomerate comprised of several companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan. Chen is the mastermind of the Prince Group's transnational criminal organisation and its chairman.

**Action in the USA and other jurisdictions**

4.  On 14 October, 2025, the United States Department of Justice **("US DOJ")**, the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** and the United Kingdom Government announced coordinated actions targeting the Prince Group.

5.  The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York **("the NY District Court")** on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering **("the US Indictment")**. Concurrently, the US DOJ filed a civil forfeiture complaint **("the US Complaint")** seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group. The criminal and civil proceedings will be referred together as the **"the US Proceedings"**.

6.  On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation. The effect of this designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them. The targets include Chen and the Company.

7.  On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group. In doing so it noted that Chen and his associates have incorporated companies in the BVI and own properties

3

9

in London including a £12 million mansion on Avenue Road in North London, a £100 million office building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and in Nine Elms in South London.

8.    News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen, the Prince Group, and its related entities and companies. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the coordinated global response to combat transnational organised crime.

9.    These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating transnational organised crime, human trafficking, forced labour, and large-scale financial fraud. The scale and coordination of these actions across six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network.

10.    In total, as of 9 December 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand) have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The allegation against Chen, his associates and companies within the Prince Group**

11.    In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and criminal activities including cryptocurrency investment fraud, human trafficking, money laundering, wire fraud, bank fraud, forced labour and, illegal online gambling. It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers. The scammers disappeared after taking almost every dollar they could from their victims.

12.    The US DOJ also alleges that the fraudulent activities carried out by the Prince Group resulted in

4

10

billions of dollars in losses incurred by victims in the United States and around the world. Chen and his associates are alleged to use the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

13.    To effectuate their fraudulent schemes, it is alleged in the US Proceedings that Chen and his associates:

a.    forced migrant workers who were – not always, but often – victims themselves of human trafficking, to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

b.    frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

c.    used their political influence in multiple countries to protect their criminal enterprise; and

d.    paid bribes to foreign public officials to avoid disruption by law enforcement.

**The role of BVI Companies in the Prince Group**

14.    The OFAC determined that the BVI companies form part of a complex network of companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

15.    In the US complaint, the US DOJ alleged that Chen and his associates laundered the fraudulent proceeds of their crime through several companies in the BVI, Cayman, Cambodia and Hong Kong, which are under their control. It alleged further that these companies do not serve any real purpose other than to launder the proceeds of their criminal and fraudulent activities. Two BVI Companies are named in the US Complaint - Amber Hill Ventures Limited ("**Amber Hill**") and Lateral Bridge Global Limited (**"LBG"**).

16.    The US Complaint discloses that personnel from the Federal Bureau of Investigation ("FBI") have conducted extensive blockchain tracing to analyse the movements of the Prince Group's

5

cryptocurrency. The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin which the US DOJ seeks to forfeit flowed through wallets which were controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

**It is just and equitable that liquidators be appointed over the Company**

17. The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities to include forced labour, human trafficking, large-scale fraud, and money laundering on a massive international scale.

18. The activities of some of the companies in the Prince Group have been the subject of civil and criminal actions in multiple jurisdictions, with authorities in at least six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

19. The BVI companies including the Company are alleged to have been established and operated to assist Chen and the Prince Group which has defrauded numerous vulnerable victims of billions of US dollars.

20. Despite the actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on allegations is free to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

21. The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf for the benefit of the victims of the fraud; and to identify potential claims against third parties.

22. The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

23. Independent liquidators are necessary to ensure proper coordination with regulatory and enforcement authorities and liquidators, trustees, or receivers appointed in the Virgin Islands and

6

12

other jurisdictions, given the multi-jurisdictional nature of the scheme and the  actions. Independent liquidators would also enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed.

24.    Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that its affairs are properly investigated and wound up under the supervision of this Honourable Court.

**It is in the public interest that liquidators be appointed over the Company**

25.    The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

26.    The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the Virgin Islands as a financial centre and threatens confidence in BVI companies and the BVI's regulatory framework.

27.    The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for nefarious purposes and with its commitment to international cooperation and combating serious transnational crime.

28.    Given that regulatory and law enforcement authorities in at least six countries have taken action and frozen or seized assets valued at over US$16 billion, it is in the public interest that the BVI as the jurisdiction of incorporation of the Company takes prompt and decisive action through the appointment of liquidators.

29.    The scale of this fraud and the international coordination of actions make it imperative, from a public interest perspective, that the BVI  positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

**The appointment of joint provisional liquidators**

30.    It is essential that joint provisional liquidators be appointed over the Company immediately

7

13

(without notice to it and its principals) and before the originating application is heard and determined for the following reasons:

a.    The Company continues to be under the control of Chen and his associates and as a result, they can use or continue to use it to further the criminal enterprise thereby continuing to inflict public harm.

b.    Given the serious allegations set out in this application, the sanctions imposed by the United States and the UK Government, the US Indictment, and the US Complaint, it is appropriate and necessary that provisional liquidators be appointed immediately to:

(i)    immediately take full control of the Company;

(ii)    identify and preserve its assets that may represent proceeds of crime by preventing further movement, concealment, or dissipation of those assets;

(iii)    take control of its books and records;

(iv)    conduct thorough investigations into its past transactions; and

(v)    review banking records, asset transfers, and corporate dealings to identify and locate the potential money laundering activities.

c.    The information and evidence gathered by the liquidators may provide crucial support for law enforcement authorities, both in the BVI and internationally, to apply for freezing orders, forfeiture orders, and other remedies. In this case, given that the United States has already filed a civil complaint seeking forfeiture of 127,271 Bitcoin valued at approximately US$15 billion allegedly connected to the Prince Group's criminal activities, the work of the liquidators could materially assist in tracing assets and preserving evidence relevant to that and other actions.

d.    The appointment of provisional liquidator over the Company and other BVI companies which are owned and controlled by Chen would align with the BVI's National AML/CFT Policy and its commitment to international cooperation in combating serious transnational crime.

e.    The coordinated actions taken by the US DOJ and UK Government on 14 October, 2025 signal the seriousness with which these major jurisdictions view the alleged criminal activities of the Prince Group. The appointment of provisional liquidators by this Honourable Court would demonstrate that the BVI is equally committed to ensuring that its corporate structures are not used as vehicles for serious criminality and would facilitate cooperation with international authorities in their ongoing investigations and

8

14

asset recovery efforts.

**Urgency**

31. The public announcements of the US Civil Proceedings, OFAC sanctions, and UK sanctions on 14 October 2025 together with actions taken in other jurisdictions have no doubt put Chen and his associates, who are alleged to be sophisticated criminals, on notice of the scrutiny being applied to the Prince Group network and its corporate structures.

32. The Company is likely to have received proceeds of the criminal and fraudulent activities and to have documentation that may assist in recovering the proceeds of the crime. There is a real and substantial risk that absent the immediate appointment of provisional liquidators, assets held by or through the BVI companies, including the Company will be transferred, concealed, or dissipated and documents will be destroyed or concealed. This real and substantial risk will increase once the Company is served with the originating application,

33. The appointment of provisional liquidators will immediately remove control from Chen and place the Company under the supervision and control of officers of this Court, thereby protecting the integrity of any investigation and preserving assets for the benefit of the victims of Chen and the Prince Group's fraudulent and criminal activities.

34. The appointment of joint provisional liquidators is appropriate given the number of BVI companies involved, the complexity of the alleged corporate structure spanning multiple jurisdictions, the international nature of the investigations and actions, and the need for extensive expertise in tracing assets and investigating potential money laundering activities.

**The Proposed provisional liquidators**

35. The Attorney General proposes that James Drury, a BVI licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110; and Paul Pretlove and David Standish, both UK licensed insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB be appointed as joint provisional liquidators of the Company.

9

**15**

**Conclusion**

36.     In all the circumstances, it is just and convenient and in the public's interest, that this Honourable Court grants the order which the Attorney General seeks in this application.

A draft of the order sought is attached.

This application is supported by the affidavit of Attorney General Dawn J. Smith.

The names and addresses of the persons on whom it is intended to serve the application are as follows:

This Application is filed by O'Neal Webster, Solicitors for the Applicant whose address for service is 2nd Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands. REF: NW/LG/101538.

Dated: January 2, 2026

_____

Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

10

16

THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/

**IN THE MATTER OF DELIGHTFUL THRIVE LIMITED**

**AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.**

BETWEEN:

**THE ATTORNEY GENERAL**

Applicant

**AND**

**DELIGHTFUL THRIVE LIMITED**

Respondent

---

**EX-PARTE ORDINARY APPLICATION
FOR JOINT PROVISIONAL LIQUIDATORS**

---



Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 I Fax: (284) 393 5805
www.onealwebster.com

11

17

**Case Number :BVIHCOM2026/0005**

FILED
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS

The Insolvency Rules 2005

**ORIGINATING APPLICATION**

**(Company)**

Rule 14

**Submitted Date:04/01/2026 11:13**

**Filed Date:05/01/2026 08:34**

**Fees Paid:0.00**

| | |
|---|---|
| **THE EASTERN CARIBBEAN SUPREME COURT**<br>**IN THE HIGH COURT OF JUSTICE**<br>**VIRGIN ISLANDS**<br>**COMMERCIAL DIVISION** | |
| Matter No.: | BVIHC(COM)      of 2026 |
| Applicant: | **THE ATTORNEY GENERAL** |
| Respondent: | **EVEN SINCERITY LIMITED** |

In the matter of:

| |
|---|
| **EVEN SINCERITY LIMITED** |

| For Court Use Only |
|---|
| **To:  EVEN SINCERITY LIMITED,** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands.<br><br>**This Application will be heard by the Commercial Court Judge at Road Town, Tortola British Virgin Islands**<br>on the            day of                    2026     at            o'clock.<br><br>**If you do not attend at the time shown the Court may make an order in your absence** |

The Applicant, the Attorney General of the Virgin Islands (**"Attorney General"**) of TTT Building, Wickhams Cay 1, Road Town, Tortola, Virgin Islands VG1110 applies to the Court for:

1.    An order pursuant to sections 162(1) (b) and (c) of the Insolvency Act, Revised Edition 2020 (**"the Act"**) that Paul Pretlove, James Drury and David Standish, be appointed as joint liquidators of Even Sincerity Limited (**"the Company"**), a company incorporated under the laws of the Virgin Islands (**"BVI"**). James Drury is a BVI licensed insolvency practitioner of Interpath (BVI) Limited, PO Box

1

436

4571, 4ᵗʰ Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110. Paul Pretlove and David Standish are United Kingdom ("UK") licensed insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB acting as overseas insolvency practitioners as defined in the Act.

2.    An order that the joint liquidators be given all powers set out in Schedule 2 of the Act, such powers to be exercisable without the sanction of the Court and such other powers as this Honourable Court deems fit.

3.    An order that the joint liquidators have the power to:

   a.    consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the liquidators and the Attorney General which is attached hereto **("the Protocol")**.

   b.    cooperate and communicate with law enforcement and regulatory authorities in the BVI and in other jurisdictions.

4.    An order that the costs of the liquidation, including the proper fees and disbursements of the joint liquidators and the **Attorney General**'s costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims

5.    An order that the costs of the application be costs in the liquidation.

6.    Such further order as the court deems appropriate.

The grounds upon which this order is sought are set out in the affidavit of Attorney General, Dawn J. Smith filed on 2 January 2026 and are summarised as follows:

**THE PARTIES**

1.    The Attorney General is the principal legal adviser to the Government of the Virgin Islands (**"the Government"**) pursuant to section 58 of the Virgin Islands Constitution Order, 2007, and has overall responsibility for all aspects of civil litigation on behalf of the Government.

2

437

2.   The Company was incorporated under the laws of the BVI on 13 February 2018. Its registered office is located at Vistra Corporate Services Centre **("Vistra")**, Wickhams Cay II, Road Town, Tortola, BVI, VG1110. The Company is alleged to be a member of a transnational criminal organisation that is headed by Prince Holding Group Limited **("the Prince Group")**, which is a Cambodian corporate conglomerate that comprises several companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan.

3.   The chairman of the Prince Group is Chen Zhi **("Chen")**. Chen is the sole director of the Company. Prince Group Holdings Limited is **the Company's** sole shareholder. Prince Global Group Limited holds 100% of the shareholding in Prince Group Holdings Limited. Chen holds 100% of the shareholding in Prince Global Group Limited.

**BACKGROUND**

4.   The background is comprehensively set out in the indictment and the verified complaint filed by the United States Department of Justice **("US DOJ")** on October 14, 2025 and in the announcement issued by the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** dated October 13, 2025. The background is summarised below.

**Action in the United States**

5.   On 14 October, 2025, the United States Department of Justice **("US DOJ")**, the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** and the United Kingdom Government announced coordinated actions targeting the Prince Group.

6.   The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York **("the NY District Court")** on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering **("the US Indictment")**. Concurrently, the US DOJ filed a civil forfeiture complaint **("the US Complaint")** seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group. The criminal and civil proceedings will be referred to together as **"the US Proceedings."**

3

438

7. In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and criminal activities including cryptocurrency investment fraud, human trafficking, money laundering, wire fraud, bank fraud, forced labour and, illegal online gambling. It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers. The scammers disappeared after taking almost every dollar they could from their victims.

8. To effectuate the schemes, it is alleged in the US Proceedings that Chen and his associates:

   a. built and operated forced-labour scam compounds across Cambodia in which workers were made to execute the scams at high volumes. The scam compounds housed vast dormitories surrounded by high walls and barbed wire, and functioned as violent forced labour camps;

   b. forced migrant workers who were – not always, but often – victims themselves of human trafficking to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

   c. frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

   d. used their political influence in multiple countries to protect their criminal enterprise; and

   e. paid bribes to foreign public officials to avoid disruption by law enforcement.

9. The indictment alleges that Chen maintained meticulous records of the compounds' operations, including ledgers of the tracking profits generated from the fraud schemes, documents detailing "phone farms" used in the schemes, and images depicting methods of beating and torture used against workers.

10. The US DOJ alleges that the schemes carried out by the Prince Group resulted in billions of dollars

4

439

in losses incurred by victims in the United States and around the world. The documents in the US Proceedings allege that proceeds from these criminal activities have been laundered through various means, including cryptocurrency (using "spraying" and "funneling" techniques), online gambling operations, and cryptocurrency mining operations. Chen, his associates and companies within the Prince Group, "washed" and returned the fraudulent proceeds to the Prince Group. The "washing" was done by using the Prince Group's vast network of seemingly legitimate business enterprises to launder its criminal proceeds. One common method was to collect the fraudulent proceeds in the form of bitcoin or stablecoins and then off-ramp them into conventional currencies, for example, the US dollar. The launderers then used that cash to purchase clean bitcoin or other cryptocurrencies. Chen was directly involved in coordinating these laundering efforts.

11.    Chen and his associates subsequently used the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

12.    On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation.  The effect of the designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them.  The targets include Chen and the Company. The OFAC noted that:

    a.    Americans have lost at least $10 billion to Southeast Asia-based scam operations in 2024, a 66 percent increase over the prior year, with scams like those perpetrated by Prince Group being particularly significant.

    b.    The Prince Group remained a dominant player in Cambodia's scam economy and has controlled illicit financial flows of billions of dollars.

    c.    The actions taken by OFAC and Financial Crimes Enforcement Network (FinCEN) were in close coordination with the United Kingdom's Foreign, Commonwealth, and Development Office ("FCDO"), which took complementary actions against criminal networks responsible for targeting citizens of the United States and other allied nations through online scams and the laundering of stolen funds.

5

440

**Action in the UK**

13.    On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group. In doing so it noted that Chen and his associates have incorporated companies in the BVI and own properties in London, including a £12 million mansion on Avenue Road in North London, a £100 million office building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and Nine Elms in South London.

14.    The Foreign Secretary Yvette Cooper stated that:

> *"The masterminds behind these horrific scam centres are ruining the lives of vulnerable people and buying up London homes to store their money.*
>
> *Together with our US allies, we are taking decisive action to combat the growing transnational threat posed by this network – upholding human rights, protecting British nationals and keeping dirty money off our streets."*

15.    The Fraud Minister Lord Hanson said:

> *"These sanctions prove our determination to stop those who profit from this activity, hold offenders accountable, and keep dirty money out of the UK. Through our new, expanded Fraud Strategy and the upcoming Global Fraud Summit, we will go even further to disrupt corrupt networks and protect the public from shameless criminals."*

16.    The effect of these sanctions is to prevent the transfer of these properties, freeze any business in which Chen and the Prince Group are involved and lock Chen and the Prince Group transnational criminal network out of the UK's financial system.

**Action in other jurisdictions**

17.    News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen, the Prince Group, and its related entities and companies. These actions are set out in paragraphs 19 to 22 below. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the global response to combat transnational organised crime.

*Singapore*

18.    On 31 October, 2025, Singapore police announced that they had seized over $150 million (approximately US$115 million) in assets linked to the Prince Group. The seized assets include six

6

441

properties, bank accounts, securities accounts, and cash which are said to represent the proceeds of money laundering and forgery offences committed by Chen and the Prince Group. According to the Monetary Authority of Singapore (MAS), financial institutions had previously filed suspicious transaction reports, and a number of suspicious accounts had been closed. The Singapore Police Force stated that investigations into Chen and his associates commenced in 2024 after it received intelligence from the Suspicious Transaction Reporting Office (STR).

### Hong Kong

19.     On 4 November, 2025, Hong Kong authorities announced that they had frozen assets worth HK$2.75 billion (approximately US$354 million), which, based on intelligence and information gathered from multiple sources, are suspected to represent proceeds of international cross-border telecommunications fraud and money laundering activities committed by the Prince Group. The frozen assets include cash, stocks, and funds held by individuals and corporate entities.  At least 18 Hong Kong companies were blacklisted by the United States in connection with the Prince Group, including two listed companies - *"Khoon Group and Geotech Holdings"*.

### Taiwan

20.     On 4 November, 2025, Taiwanese prosecutors announced that they had detained 25 individuals and seized T$4.5 billion (approximately US$147 million) in assets tied to the Prince Group. The seized assets include 26 high-end cars, properties, and bank accounts tied to the network and to Chen in relation to money laundering and forced labour offences.

### Thailand

21.     On 3 December, 2025, the Thai authorities announced that they had seized assets worth more than 10,157 million baht (approximately US$318 million) and issued arrest warrants for 42 individuals linked to transnational online scam operations connected to Chen and Cambodian nationals Kok An and Yim Leak. As of 3 December, 2025, 29 individuals had been arrested. The seizures include shares in Bangchak Corporation Limited worth 6 billion baht (approximately US$188 million). Thailand's Anti-Money Laundering Office (AMLO) stated that investigators had found *"information on networks of online fraud, human trafficking, and money-laundering"* that were linked to Chen and his associates.

**The effect of the multi-jurisdictional actions**

7

442

22.   These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating transnational organised crime, human trafficking, forced labour, and large-scale financial fraud. The scale and coordination of these actions across at least six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network

23.   In total, as of 9 December, 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The role of BVI companies**

24.   The OFAC has determined that the BVI companies form part of a complex network of holding companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

25.   In the US Complaint, the US DOJ alleged that Chen and his associates also laundered fraudulent proceeds through several companies including companies in the BVI which are under their control. It alleged further that these companies do not serve any real purpose other than to launder funds. Two BVI Companies were named in the US Proceedings - Amber Hill Ventures Limited **("Amber Hill")** and Lateral Bridge Global Limited **("LBG")**.

26.   Amber Hill and LBG are said to be controlled by two of Chen's associates, who are also defendants in the US Civil Proceedings. The US Complaint discloses that personnel from the Federal Bureau of Investigation ("FBI") have conducted extensive blockchain tracing to analyse the movements of the Prince Group's cryptocurrency. The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin which the US DOJ seeks to forfeit flowed through wallets which were controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

27.   It is also alleged that Amber Hill had a banking relationship with a financial institution in the United

8

443

States. It was recorded in the account opening documents with that financial institution that Amber Hill's business activities consisted of "*[p]roprietary trading and investing*," and its anticipated deposit and withdrawal activity would be approximately $2 million each. However, according to account statements, in February 2020, Amber Hill's account with that financial institution had approximately $22.5 million in deposits and $21.8 million in withdrawals. Amber Hill was struck from the register and dissolved on 10 November, 2023.

## THE APPLICATION

28.    The Application is made by the Attorney General on the ground that (i) it is just and equitable that joint liquidators be appointed over the Company pursuant to section 162 (1) (b) of the Act and (ii) it is in the public interest that the joint liquidators are appointed pursuant to section 162 (1) (c) of the Act.

### Just and equitable ground

29.    Section 162(1)(b) of the Insolvency Act, 2003 provides that the Court may appoint a liquidator of a company if "the Court is of the opinion that it is just and equitable that the company should be liquidated."

30.    The Attorney General is listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(b) of the Act.

31.    It is just and equitable that the Company should be placed into liquidation for the following reasons:

    a.    Chen is the sole director and beneficial owner of the Company. Chen is alleged to be the mastermind of the Prince Group. He has been criminally indicted in the United States and is subject to personal sanctions by both the United States and the United Kingdom.

    b.    The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities, to include forced labour, human trafficking, large-scale fraud, and money laundering on a massive international scale.

    c.    The BVI companies including the Company are alleged to have been established and

9

444

operated to assist Chen and the Prince Group which has defrauded numerous vulnerable victims of billions of US dollars.

d.    Despite the enforcement actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on the allegations is free to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

e.    The activities of some of the companies in the Prince Group have been the subject of civil and criminal enforcement actions in multiple jurisdictions, with authorities in six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

f.    The Company is alleged to be a shell company which was used solely as a vehicle for the fraudulent scheme.

g.    The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf, and identify potential claims against third parties.

h.    The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

i.    Independent liquidators are necessary to ensure proper coordination with regulatory and law enforcement authorities and liquidators, trustees, or receivers appointed in the BVI and other jurisdictions, given the multi-jurisdictional nature of the scheme and the actions taken by various authorities in several jurisdictions.

j.    Independent liquidators would enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed as part of a collective process.

k.    Given the fraudulent nature of the scheme, there are likely to be voidable transactions, preferences, and other claims that independent liquidators could pursue for the benefit of the victims and creditors.

32.    Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that its affairs are properly investigated and wound up under the supervision of this Honourable Court.

10

445

**Public Interest ground**

33.    Section 162(1)(c) of the Act gives the Court the discretion to appoint a liquidator of a company if it is of the opinion that it is in the public interest for a liquidator to be appointed.

34.    The Attorney General is also listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(c) of the Act.

35.    The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

36.    BVI companies including, the Company are alleged to have been used as vehicles in what has been described by international law enforcement authorities as one of the largest fraudulent investment schemes in recent history.  The scheme has caused billions of dollars in losses to victims worldwide and involved egregious human rights abuses.  They are alleged to have been used to launder and/or hold the proceeds of the horrific crimes committed by Chen and his associates, including human trafficking, forced labour, aggravated identity theft, international fraud designed to scam unsuspecting victims of their lifesavings and money laundering.  These criminal and fraudulent activities are inherently objectionable and are contrary to clearly identifiable public interest.

37.    The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the BVI as a financial centre and threatens confidence in BVI incorporated companies and the BVI's regulatory framework.

38.    **The appointment of liquidators aligns with the BVI's commitment to taking appropriate and** decisive action when BVI companies are used for fraudulent purposes.

39.    The appointment of liquidators will:
   a.    facilitate cooperation with enforcement authorities, regulators, and insolvency practitioners in the BVI and other jurisdictions, demonstrating the BVI's commitment to international cooperation in combating financial fraud;
   b.    ensure that the Company's **affairs are properly investigated and that appropriate steps**

11

446

are taken to recover assets and maximise returns to defrauded investors;

c. enable a proper investigation into how the Company was used in the fraudulent scheme, which may assist in preventing similar schemes in the future.

40. Given that enforcement authorities in at least six countries have taken action and frozen or seized assets valued at over US$16 billion, it is in the public interest that BVI as the jurisdiction of incorporation of the Company, takes prompt and decisive action through the appointment of liquidators.

41. The scale of this fraud and the international coordination of related actions make it imperative, from a public interest perspective, that the BVI positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

42. In all the circumstances, it is not only just and equitable but also in the public interest that Joint liquidators be appointed over the Company to prevent it from being used to **further Chen's and the Prince Group's** criminal enterprise.

43. If appointed, the joint liquidators would be able to take control of the Company, take the necessary steps in the BVI or overseas to secure and preserve its books and records and secure its assets for the benefit of the victims of the crimes perpetuated by the Prince Group. As officers of the court, they would also be able to independently investigate claims against the Company, marshal records, ensure that the Company complies with BVI laws and regulations and respond to any court process.

**Proposed liquidators**

44. Mr. James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110, Mr. Paul Pretlove and Mr. David Standish, both of Interpath Ltd, 10 Fleet Place, London EC4M 7RB who to the best of the **Applicant's knowledge and belief are eligible insolvency practitioners** have all consented to be appointed as joint liquidators of the Company.

45. In the circumstances, it is just and equitable **and in the public's interest** to grant the order which

12

447

the Attorney General seeks, for the appointment of joint liquidators over the Company.

A draft of the order sought is attached.

This application is supported by the affidavit of Attorney General Dawn J Smith.

The names and addresses of the persons on whom it is intended to serve the application are as follows:

**Even Sincerity Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

The names and addresses of the persons required to be given notice of this application pursuant to the Act and the Rules (if any) are as follows:

**Even Sincerity Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

**This Application is filed by O'Neal Webster, Solicitors for the Applicant**, whose address for service is 2nd

Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands.  REF:

101538

Dated: 2 January 2026

_____
Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

13

448

THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/

**IN THE MATTER OF EVEN SINCERITY LIMITED**

**AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS**

BETWEEN:

**THE ATTORNEY GENERAL**

Applicant

**AND**

**EVEN SINCERITY LIMITED**

Respondent

---

**ORIGINATING APPLICATION**

---



O'Neal Webster

Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 I Fax: (284) 393 5805
www.onealwebster.com

14

449

**Case Number :BVIHCOM2026/0005**

FILED
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS

The Insolvency Rules 2005

**ORDINARY APPLICATION (EX-PARTE)**

**(Company)**

Rule 14

**Submitted Date:04/01/2026 11:45**

**Filed Date:05/01/2026 08:34**

**Fees Paid:0.00**

| | |
|---|---|
| **THE EASTERN CARIBBEAN SUPREME COURT**<br>**IN THE HIGH COURT OF JUSTICE**<br>**VIRGIN ISLANDS**<br>**COMMERCIAL DIVISION** | |
| Matter No.: | BVIHC(COM)      of 2026 |
| Applicant: | **THE ATTORNEY GENERAL** |
| Respondent: | **EVEN SINCERITY LIMITED** |

In the matter of:

| |
|---|
| **EVEN SINCERITY LIMITED** |

| |
|---|
| For Court Use Only |
| **To: EVEN SINCERITY LIMITED,** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands.<br><br>**This Application will be heard by the Commercial Court Judge at Road Town, Tortola British Virgin Islands**<br>on the               day of                          2026      at                   o'clock.<br><br>**If you do not attend at the time shown the Court may make an order in your absence** |

We, O'Neal Webster, on behalf of the Applicant, the Attorney General of the Virgin Islands **("the Attorney General"),** apply pursuant to section 170 of the Insolvency Act 2003 (the "Act") for the following orders that:

1.  James Drury,  a **Virgin Islands ("BVI")** licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola,  Virgin Islands, VG1110; and Paul Pretlove and David Standish both **United Kingdom ("UK")** licensed insolvency

1

practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB to be appointed as joint provisional liquidators of Even Sincerity Limited **("the Company")** with immediate effect.

2. The powers afforded to the said joint provisional liquidators shall be as set out in Schedule 2 of the Act as varied by Schedule 3, and as further varied by this Order.

3. An order that the joint provisional liquidators have the power to:
   a. consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the joint provisional liquidators and the Attorney General which is attached hereto **("the Protocol")**.
   b. cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4. An order that the costs of the liquidation, including the proper fees and disbursements of the joint **liquidators, the Attorney General's costs of complying with the Protocol be paid out of assets of** the Company in priority to all other claims.

5. An order that the costs of the application be costs in the liquidation.

6. Such further order as the court deems appropriate.

A draft of the order sought is attached.

The grounds upon which this order is sought are set out in the affidavit of the Attorney General Dawn J. Smith filed on 2nd January, 2026 but in brief are as follows:

**Introduction**

1. There are good prima facie reasons as set out in the originating application for the eventual appointment of full liquidators on the grounds of public interest and on the grounds that it is just and equitable that they be appointed over the Company.  A summary of these reasons is set out below.

2

**The Company and the Prince Group**

2.      The Company was incorporated under the laws of the Virgin Islands **("BVI")** on 13 February 2018. Its registered office is located at Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, BVI, VG1110. Chen Zhi, **("Chen")** is the sole director of the Company. Prince Group Holdings Limited is the Company's sole shareholder. Prince Global Group Limited holds 100% of the shareholding in Prince Group Holdings Limited. Chen holds 100% of the shareholding in Prince Global Group Limited.

3.      The Company is alleged to be a member of a transnational criminal organisation that is headed by the Prince Holding Group **("the Prince Group")** which is a Cambodian corporate conglomerate comprised of several  companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan. Chen is the mastermind of the Prince Group's transnational criminal organisation and its chairman.

**Action in the USA and other jurisdictions**

4.      On 14 October, 2025, the United States Department of Justice **("US DOJ"),** the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** and the United Kingdom Government announced coordinated  actions targeting the Prince Group.

5.      The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York **("the NY District Court")** on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering **("the US Indictment").** Concurrently, the US DOJ filed a civil forfeiture complaint **("the US Complaint")** seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group.  The criminal and civil proceedings will be referred together as the **"the US Proceedings".**

6.      On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation.  The effect of this designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons

3

9

are, in effect, prohibited from dealing with them.  The targets include Chen and the Company.

7.    On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group. In doing so it noted that Chen and his associates have incorporated companies in the BVI and own properties in London including a £12 million mansion on Avenue Road in North London, a £100 million office building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and in Nine Elms in South London.

8.    News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen, the Prince Group, and its related entities and companies. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the coordinated global response to combat transnational organised crime.

9.    These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating transnational organised crime, human trafficking, forced labour, and large-scale financial fraud. The scale and coordination of these actions across six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network.

10.    In total, as of 9 December 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand) have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The allegation against Chen, his associates and companies within the Prince Group**

11.    In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and criminal activities including cryptocurrency investment fraud, human trafficking, money laundering, wire fraud, bank fraud, forced labour and, illegal online gambling.  It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by

4

10

scammers. The scammers disappeared after taking almost every dollar they could from their victims.

12.    The US DOJ also alleges that the fraudulent activities carried out by the Prince Group resulted in billions of dollars in losses incurred by victims in the United States and around the world. Chen and his associates are alleged to use the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

13.    To effectuate their fraudulent schemes, it is alleged in the US Proceedings that Chen and his associates:

   a.    forced migrant workers who were – not always, but often – victims themselves of human trafficking, to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

   b.    frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

   c.    used their political influence in multiple countries to protect their criminal enterprise; and

   d.    paid bribes to foreign public officials to avoid disruption by law enforcement.

**The role of BVI Companies in the Prince Group**

14.    The OFAC determined that the BVI companies form part of a complex network of companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

15.    In the US complaint, the US DOJ alleged that Chen and his associates laundered the fraudulent proceeds of their crime through several companies in the BVI, Cayman, Cambodia and Hong Kong, which are under their control. It alleged further that these companies do not serve any real purpose other than to launder the proceeds of their criminal and fraudulent activities. Two BVI Companies are named in the US Complaint - **Amber Hill Ventures Limited ("Amber Hill")** and

5

Lateral Bridge Global Limited (**"LBG"**).

16.   The US Complaint discloses that personnel from the Federal **Bureau of Investigation ("FBI") have** conducted extensive blockchain tracing to analyse the movements of the Prince Group's cryptocurrency. The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin which the US DOJ seeks to forfeit flowed through wallets which were controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

**It is just and equitable that liquidators be appointed over the Company**

17.   The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities to include forced labour, human trafficking, large-scale fraud, and money laundering on a massive international scale.

18.   The activities of some of the companies in the Prince Group have been the subject of civil and criminal actions in multiple jurisdictions, with authorities in at least six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

19.   The BVI companies including the Company are alleged to have been established and operated to assist Chen and the Prince Group which has defrauded numerous vulnerable victims of billions of US dollars.

20.   Despite the actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on allegations is free to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

21.   The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf for the benefit of the victims of the fraud; and to identify potential claims against third parties.

22.   The interests of the victims of the fraud need to be protected by independent liquidators to

6

12

maximise recoveries for their benefit.

23.    Independent liquidators are necessary to ensure proper coordination with regulatory and enforcement authorities and liquidators, trustees, or receivers appointed in the Virgin Islands and other jurisdictions, given the multi-jurisdictional nature of the scheme and the actions. Independent liquidators would also enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed.

24.    Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that its affairs are properly investigated and wound up under the supervision of this Honourable Court.

**It is in the public interest that liquidators be appointed over the Company**

25.    The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

26.    The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the Virgin Islands as a financial centre and threatens confidence in BVI companies and the BVI's regulatory framework.

27.    The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for nefarious purposes and with its commitment to international cooperation and combating serious transnational crime.

28.    Given that regulatory and law enforcement authorities in at least six countries have taken action and frozen or seized assets valued at over US$16 billion, it is in the public interest that the BVI as the jurisdiction of incorporation of the Company takes prompt and decisive action through the appointment of liquidators.

29.    The scale of this fraud and the international coordination of actions make it imperative, from a public interest perspective, that the BVI positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

7

13

**The appointment of joint provisional liquidators**

30. It is essential that joint provisional liquidators be appointed over the Company immediately (without notice to it and its principals) and before the originating application is heard and determined for the following reasons:

    a. The Company continues to be under the control of Chen and his associates and as a result, they can use or continue to use it to further the criminal enterprise thereby continuing to inflict public harm.

    b. Given the serious allegations set out in this application, the sanctions imposed by the United States and the UK Government, the US Indictment, and the US Complaint, it is appropriate and necessary that provisional liquidators be appointed immediately to:

        (i) immediately take full control of the Company;

        (ii) identify and preserve its assets that may represent proceeds of crime by preventing further movement, concealment, or dissipation of those assets;

        (iii) take control of its books and records;

        (iv) conduct thorough investigations into its past transactions; and

        (v) review banking records, asset transfers, and corporate dealings to identify and locate the potential money laundering activities.

    c. The information and evidence gathered by the liquidators may provide crucial support for law enforcement authorities, both in the BVI and internationally, to apply for freezing orders, forfeiture orders, and other remedies. In this case, given that the United States has already filed a civil complaint seeking forfeiture of 127,271 Bitcoin valued at approximately US$15 billion allegedly connected to the Prince Group's criminal activities, the work of the liquidators could materially assist in tracing assets and preserving evidence relevant to that and other actions.

    d. The appointment of provisional liquidator over the Company and other BVI companies which are owned and controlled by Chen would align with the BVI's National AML/CFT Policy and its commitment to international cooperation in combating serious transnational crime.

    e. The coordinated actions taken by the US DOJ and UK Government on 14 October, 2025 signal the seriousness with which these major jurisdictions view the alleged criminal activities of the Prince Group. The appointment of provisional liquidators by this

8

14

Honourable Court would demonstrate that the BVI is equally committed to ensuring that its corporate structures are not used as vehicles for serious criminality and would facilitate cooperation with international authorities in their ongoing investigations and asset recovery efforts.

**Urgency**

31.    The public announcements of the US Civil Proceedings, OFAC sanctions, and UK sanctions on 14 October 2025 together with actions taken in other jurisdictions have no doubt put Chen and his associates, who are alleged to be sophisticated criminals, on notice of the scrutiny being applied to the Prince Group network and its corporate structures.

32.    The Company is likely to have received proceeds of the criminal and fraudulent activities and to have documentation that may assist in recovering the proceeds of the crime. There is a real and substantial risk that absent the immediate appointment of provisional liquidators, assets held by or through the BVI companies, including the Company will be transferred, concealed, or dissipated and documents will be destroyed or concealed. This real and substantial risk will increase once the Company is served with the originating application,

33.    The appointment of provisional liquidators will immediately remove control from Chen and his associates and place the Company under the supervision and control of officers of this Court, thereby protecting the integrity of any investigation and preserving assets for the benefit of the victims of Chen and the Prince Group's fraudulent and criminal activities.

34.    The appointment of joint provisional liquidators is appropriate given the number of BVI companies involved, the complexity of the alleged corporate structure spanning multiple jurisdictions, the international nature of the investigations and actions, and the need for extensive expertise in tracing assets and investigating potential money laundering activities.

**The Proposed provisional liquidators**

35.    The Attorney General proposes that James Drury, a BVI licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110; and Paul Pretlove and David Standish, both UK licensed

9

15

insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB be appointed as joint provisional liquidators of the Company.

**Conclusion**

36.    In all the circumstances, it is just and convenient **and in the public's interest,** that this Honourable Court grants the order which the Attorney General seeks in this application.

A draft of the order sought is attached.

This application is supported by the affidavit of Attorney General Dawn J. Smith.

The names and addresses of the persons on whom it is intended to serve the application are as follows:

**This Application is filed by O'Neal Webster, Solicitors for the Applicant whose address for service is 2ⁿᵈ Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands. REF: NW/LG/101538.**

_____
Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

Dated: 2 January 2026

10

16

THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/

**IN THE MATTER OF EVEN SINCERITY LIMITED**

**AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.**

BETWEEN:

**THE ATTORNEY GENERAL**

Applicant

**AND**

**EVEN SINCERITY LIMITED**

Respondent

---

### EX-PARTE ORDINARY APPLICATION
### FOR JOINT PROVISIONAL LIQUIDATORS

---



O'Neal
Webster

Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 I Fax: (284) 393 5805
www.onealwebster.com

11

17

**Case Number :BVIHCOM2026/0006**

FILED
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS

The Insolvency Rules 2005

**ORIGINATING APPLICATION**

**(Company)**

Rule 14

**Submitted Date:04/01/2026 11:22**

**Filed Date:05/01/2026 08:36**

**Fees Paid:0.00**

| THE EASTERN CARIBBEAN SUPREME COURT IN THE HIGH COURT OF JUSTICE VIRGIN ISLANDS COMMERCIAL DIVISION | |
|---|---|
| Matter No.: | BVIHC(COM)    of 2026 |
| Applicant: | **THE ATTORNEY GENERAL** |
| Respondent: | **FULAM INVESTMENT LIMITED** |

In the matter of:

| **FULAM INVESTMENT LIMITED** |
|---|

| For Court Use Only |
|---|
| **To: FULAM INVESTMENT LIMITED,** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands. <br><br> **This Application will be heard by the Commercial Court Judge at Road Town, Tortola British Virgin Islands** <br> **on the**     **day of**     **2026**   **at**     **o'clock.** <br><br> **If you do not attend at the time shown the Court may make an order in your absence** |

The Applicant, the Attorney General of the Virgin Islands (**"Attorney General"**) of TTT Building, Wickhams Cay 1, Road Town, Tortola, Virgin Islands VG1110 applies to the Court for:

1.  An order pursuant to sections 162(1) (b) and (c) of the Insolvency Act, Revised Edition 2020 (**"the Act"**) that Paul Pretlove, James Drury and David Standish, be appointed as joint liquidators of Fulam Investment Limited (**"the Company"**), a company incorporated under the laws of the Virgin Islands (**"BVI"**). James Drury is a BVI licensed insolvency practitioner of Interpath (BVI) Limited, PO

1

**438**

Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110. Paul Pretlove and David Standish are United Kingdom ("UK") licensed insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB acting as overseas insolvency practitioners as defined in the Act.

2.   An order that the joint liquidators be given all powers set out in Schedule 2 of the Act, such powers to be exercisable without the sanction of the Court and such other powers as this Honourable Court deems fit.

3.   An order that the joint liquidators have the power to:

   a.   consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the liquidators and the Attorney General which is attached hereto **("the Protocol").**

   b.   cooperate and communicate with law enforcement and regulatory authorities in the BVI and in other jurisdictions.

4.   An order that the costs of the liquidation, including the proper fees and disbursements of the joint liquidators and the Attorney General's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims

5.   An order that the costs of the application be costs in the liquidation.

6.   Such further order as the court deems appropriate.

The grounds upon which this order is sought are set out in the affidavit of Attorney General, Dawn J. Smith filed on 2 January 2026 and are summarised as follows:

**THE PARTIES**

1.   The Attorney General is the principal legal adviser to the Government of the Virgin Islands (**"the Government"**) pursuant to section 58 of the Virgin Islands Constitution Order, 2007, and has overall responsibility for all aspects of civil litigation on behalf of the Government.

2

**439**

2.     The Company was incorporated under the laws of the BVI on 24 July 2009. Its registered office is located at Vistra Corporate Services Centre **("Vistra")**, Wickhams Cay II, Road Town, Tortola, BVI, VG1110.  The Company is alleged to be a member of a transnational criminal organisation that is headed by Prince Holding Group Limited **("the Prince Group")**, which is a Cambodian corporate conglomerate that comprises several companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan. On 17 November 2025 Vistra filed its Intention to Resign as the Company's registered agent.

3.     The chairman of the Prince Group is Chen Zhi **("Chen")**. Haoran Sheng is the Company's sole Director. Ample Luck Investment Limited is the Company's sole shareholder. Chen holds 100% of the shareholding in Ample Luck Investment Limited.

**BACKGROUND**

4.     The background is comprehensively set out in the indictment and the verified complaint filed by the United States Department of Justice **("US DOJ")** on October 14, 2025 and in the announcement issued by the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** dated October 13, 2025.  The background is summarised below.

**Action in the United States**

5.     On 14 October, 2025, the United States Department of Justice **("US DOJ")**, the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** and the United Kingdom Government announced coordinated actions targeting the Prince Group.

6.     The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York **("the NY District Court")** on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering **("the US Indictment")**. Concurrently, the US DOJ filed a civil forfeiture complaint **("the US Complaint")** seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group.  The criminal and civil proceedings will be referred to together as **"the US Proceedings."**

3

440

7. In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and criminal activities including cryptocurrency investment fraud, human trafficking, money laundering, wire fraud, bank fraud, forced labour and, illegal online gambling. It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers. The scammers disappeared after taking almost every dollar they could from their victims.

8. To effectuate the schemes, it is alleged in the US Proceedings that Chen and his associates:

   a. built and operated forced-labour scam compounds across Cambodia in which workers were made to execute the scams at high volumes. The scam compounds housed vast dormitories surrounded by high walls and barbed wire, and functioned as violent forced labour camps;

   b. forced migrant workers who were – not always, but often – victims themselves of human trafficking to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

   c. frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

   d. used their political influence in multiple countries to protect their criminal enterprise; and

   e. paid bribes to foreign public officials to avoid disruption by law enforcement.

9. The indictment alleges that Chen maintained meticulous records of the compounds' operations, including ledgers of the tracking profits generated from the fraud schemes, documents detailing "phone farms" used in the schemes, and images depicting methods of beating and torture used against workers.

10. The US DOJ alleges that the schemes carried out by the Prince Group resulted in billions of dollars

4

441

in losses incurred by victims in the United States and around the world. The documents in the US Proceedings allege that proceeds from these criminal activities have been laundered through various means, including cryptocurrency (using "spraying" and "funneling" techniques), online gambling operations, and cryptocurrency mining operations. Chen, his associates and companies within the Prince Group, "washed" and returned the fraudulent proceeds to the Prince Group. The "washing" was done by using the Prince Group's vast network of seemingly legitimate business enterprises to launder its criminal proceeds. One common method was to collect the fraudulent proceeds in the form of bitcoin or stablecoins and then off-ramp them into conventional currencies, for example, the US dollar. The launderers then used that cash to purchase clean bitcoin or other cryptocurrencies. Chen was directly involved in coordinating these laundering efforts.

11.    Chen and his associates subsequently used the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

12.    On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation.  The effect of the designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them.  The targets include Chen and the Company. The OFAC noted that:

   a.    Americans have lost at least $10 billion to Southeast Asia-based scam operations in 2024, a 66 percent increase over the prior year, with scams like those perpetrated by Prince Group being particularly significant.

   b.    The Prince Group remained a dominant player in Cambodia's scam economy and has controlled illicit financial flows of billions of dollars.

   c.    The actions taken by OFAC and Financial Crimes Enforcement Network (FinCEN) were in close coordination with the United Kingdom's Foreign, Commonwealth, and Development Office ("FCDO"), which took complementary actions against criminal networks responsible for targeting citizens of the United States and other allied nations through online scams and the laundering of stolen funds.

5

442

**Action in the UK**

13.   On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group.  In doing so it noted that Chen and his associates have incorporated companies in the BVI and own properties in London, including a £12 million mansion on Avenue Road in North London, a £100 million office building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and Nine Elms in South London.

14.   The Foreign Secretary Yvette Cooper stated that:

> *"The masterminds behind these horrific scam centres are ruining the lives of vulnerable people and buying up London homes to store their money.*
>
> *Together with our US allies, we are taking decisive action to combat the growing transnational threat posed by this network – upholding human rights, protecting British nationals and keeping dirty money off our streets."*

15.   The Fraud Minister Lord Hanson said:

> *"These sanctions prove our determination to stop those who profit from this activity, hold offenders accountable, and keep dirty money out of the UK. Through our new, expanded Fraud Strategy and the upcoming Global Fraud Summit, we will go even further to disrupt corrupt networks and protect the public from shameless criminals."*

16.   The effect of these sanctions is to prevent the transfer of these properties, freeze any business in which Chen and the Prince Group are involved and lock Chen and the Prince Group transnational criminal network out of the UK's financial system.

**Action in other jurisdictions**

17.   News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen,  the Prince Group, and its related entities and companies.  These actions are set out in paragraphs 19 to 22 below. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the global response to combat transnational organised crime.

***Singapore***

18.   On 31 October, 2025, Singapore police announced that they had seized over $150 million

6

443

(approximately US$115 million) in assets linked to the Prince Group. The seized assets include six properties, bank accounts, securities accounts, and cash which are said to represent the proceeds of money laundering and forgery offences committed by Chen and the Prince Group. According to the Monetary Authority of Singapore (MAS), financial institutions had previously filed suspicious transaction reports, and a number of suspicious accounts had been closed. The Singapore Police Force stated that investigations into Chen and his associates commenced in 2024 after it received intelligence from the Suspicious Transaction Reporting Office (STR).

### Hong Kong

19.    On 4 November, 2025, Hong Kong authorities announced that they had frozen assets worth HK$2.75 billion (approximately US$354 million), which, based on intelligence and information gathered from multiple sources, are suspected to represent proceeds of international cross-border telecommunications fraud and money laundering activities committed by the Prince Group. The frozen assets include cash, stocks, and funds held by individuals and corporate entities. At least 18 Hong Kong companies were blacklisted by the United States in connection with the Prince Group, including two listed companies - *"Khoon Group and Geotech Holdings"*.

### Taiwan

20.    On 4 November, 2025, Taiwanese prosecutors announced that they had detained 25 individuals and seized T$4.5 billion (approximately US$147 million) in assets tied to the Prince Group. The seized assets include 26 high-end cars, properties, and bank accounts tied to the network and to Chen in relation to money laundering and forced labour offences.

### Thailand

21.    On 3 December, 2025, the Thai authorities announced that they had seized assets worth more than 10,157 million baht (approximately US$318 million) and issued arrest warrants for 42 individuals linked to transnational online scam operations connected to Chen and Cambodian nationals Kok An and Yim Leak. As of 3 December, 2025, 29 individuals had been arrested. The seizures include shares in Bangchak Corporation Limited worth 6 billion baht (approximately US$188 million). Thailand's Anti-Money Laundering Office (AMLO) stated that investigators had found *"information on networks of online fraud, human trafficking, and money-laundering"* that were linked to Chen and his associates.

7

444

**The effect of the multi-jurisdictional actions**

22.    These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating transnational organised crime, human trafficking, forced labour, and large-scale financial fraud. The scale and coordination of these actions across at least six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network

23.    In total, as of 9 December, 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The role of BVI companies**

24.    The OFAC has determined that the BVI companies form part of a complex network of holding companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

25.    In the US Complaint, the US DOJ alleged that Chen and his associates also laundered fraudulent proceeds through several companies including companies in the BVI which are under their control. It alleged further that these companies do not serve any real purpose other than to launder funds. Two BVI Companies were named in the US Proceedings - Amber Hill Ventures Limited (**"Amber Hill"**) and Lateral Bridge Global Limited (**"LBG"**).

26.    Amber Hill and LBG are said to be controlled by two of Chen's associates, who are also defendants in the US Civil Proceedings. The US Complaint discloses that personnel from the Federal Bureau of Investigation ("FBI") have conducted extensive blockchain tracing to analyse the movements of the Prince Group's cryptocurrency. The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin which the US DOJ seeks to forfeit flowed through wallets which were controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

8

445

27.    It is also alleged that Amber Hill had a banking relationship with a financial institution in the United States. It was recorded in the account opening documents with that financial institution that Amber Hill's business activities consisted of "*[p]roprietary trading and investing*," and its anticipated deposit and withdrawal activity would be approximately $2 million each. However, according to account statements, in February 2020, Amber Hill's account with that financial institution had approximately $22.5 million in deposits and $21.8 million in withdrawals. Amber Hill was struck from the register and dissolved on 10 November, 2023.

## THE APPLICATION

28.    The Application is made by the Attorney General on the ground that (i) it is just and equitable that joint liquidators be appointed over the Company pursuant to section 162 (1) (b) of the Act and (ii) it is in the public interest that the joint liquidators are appointed pursuant to section 162 (1) (c) of the Act.

### Just and equitable ground

29.    Section 162(1)(b) of the Insolvency Act, 2003 provides that the Court may appoint a liquidator of a company if "the Court is of the opinion that it is just and equitable that the company should be liquidated."

30.    The Attorney General is listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(b) of the Act.

31.    It is just and equitable that the Company should be placed into liquidation for the following reasons:

   a.    Haoran Sheng is the Company's sole Director. Ample Luck Investment Limited is the Company's sole shareholder. Chen holds 100% of the shareholding in Ample Luck Investment Limited. Chen is alleged to be the mastermind of the Prince Group. He has been criminally indicted in the United States and is subject to personal sanctions by both the United States and the United Kingdom.

   b.    The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities, to include forced labour, human trafficking, large-scale fraud, and

9

446

money laundering on a massive international scale.

c.  The BVI companies including the Company are alleged to have been established and operated to assist Chen and the Prince Group which has defrauded numerous vulnerable victims of billions of US dollars.

d.  Despite the enforcement actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on the allegations is free to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

e.  The activities of some of the companies in the Prince Group have been the subject of civil and criminal enforcement actions in multiple jurisdictions, with authorities in six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

f.  The Company is alleged to be a shell company which was used solely as a vehicle for the fraudulent scheme.

g.  The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf, and identify potential claims against third parties.

h.  The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

i.  Independent liquidators are necessary to ensure proper coordination with regulatory and law enforcement authorities and liquidators, trustees, or receivers appointed in the BVI and other jurisdictions, given the multi-jurisdictional nature of the scheme and the actions taken by various authorities in several jurisdictions.

j.  Independent liquidators would enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed as part of a collective process.

k.  Given the fraudulent nature of the scheme, there are likely to be voidable transactions, preferences, and other claims that independent liquidators could pursue for the benefit of the victims and creditors.

32.  Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that

10

447

its affairs are properly investigated and wound up under the supervision of this Honourable Court.

**Public Interest ground**

33.    Section 162(1)(c) of the Act gives the Court the discretion to appoint a liquidator of a company if it is of the opinion that it is in the public interest for a liquidator to be appointed.

34.    The Attorney General is also listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(c) of the Act.

35.    The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

36.    BVI companies including, the Company are alleged to have been used as vehicles in what has been described by international law enforcement authorities as one of the largest fraudulent investment schemes in recent history.  The scheme has caused billions of dollars in losses to victims worldwide and involved egregious human rights abuses.  They are alleged to have been used to launder and/or hold the proceeds of the horrific crimes committed by Chen and his associates, including human trafficking, forced labour, aggravated identity theft, international fraud designed to scam unsuspecting victims of their lifesavings and money laundering.  These criminal and fraudulent activities are inherently objectionable and are contrary to clearly identifiable public interest.

37.    The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the BVI as a financial centre and threatens confidence in BVI incorporated companies and the BVI's regulatory framework.

38.    The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for fraudulent purposes.

39.    The appointment of liquidators will:

a.    facilitate cooperation with enforcement authorities, regulators, and insolvency practitioners in the BVI and other jurisdictions, demonstrating the BVI's commitment to

11

448

international cooperation in combating financial fraud;

b.  ensure that the Company's affairs are properly investigated and that appropriate steps are taken to recover assets and maximise returns to defrauded investors;

c.  enable a proper investigation into how the Company was used in the fraudulent scheme, which may assist in preventing similar schemes in the future.

40.  Given that enforcement authorities in at least six countries have taken action and frozen or seized assets valued at over US$16 billion, it is in the public interest that BVI as the jurisdiction of incorporation of the Company, takes prompt and decisive action through the appointment of liquidators.

41.  The scale of this fraud and the international coordination of related actions make it imperative, from a public interest perspective, that the BVI positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

42.  In all the circumstances, it is not only just and equitable but also in the public interest that Joint liquidators be appointed over the Company to prevent it from being used to further Chen's and the Prince Group's criminal enterprise.

43.  If appointed, the joint liquidators would be able to take control of the Company, take the necessary steps in the BVI or overseas to secure and preserve its books and records and secure its assets for the benefit of the victims of the crimes perpetuated by the Prince Group. As officers of the court, they would also be able to independently investigate claims against the Company, marshal records, ensure that the Company complies with BVI laws and regulations and respond to any court process.

**Proposed liquidators**

44.  Mr. James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110, Mr. Paul Pretlove and Mr. David Standish, both of Interpath Ltd, 10 Fleet Place, London EC4M 7RB who to the best of the Applicant's knowledge and belief are eligible insolvency practitioners have all consented to be appointed as joint liquidators of the Company.

12

449

45. In the circumstances, it is just and equitable and in the public's interest to grant the order which the Attorney General seeks, for the appointment of joint liquidators over the Company.

A draft of the order sought is attached.

This application is supported by the affidavit of Attorney General Dawn J Smith.

The names and addresses of the persons on whom it is intended to serve the application are as follows:

**Fulam Investment Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

The names and addresses of the persons required to be given notice of this application pursuant to the Act and the Rules (if any) are as follows:

**Fulam Investment Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

This Application is filed by O'Neal Webster, Solicitors for the Applicant, whose address for service is 2nd Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands. REF: 101538

Dated: January 2, 2026

Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

13

450

THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/

IN THE MATTER OF FULAM INVESTMENT LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS

BETWEEN:

**THE ATTORNEY GENERAL**

Applicant

**AND**

**FULAM INVESTMENT LIMITED**

Respondent

---

**ORIGINATING APPLICATION**

---


O'Neal
Webster

Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 I Fax: (284) 393 5805
www.onealwebster.com

14

451

FILED
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS

**Case Number :BVIHCOM2026/0006**

The Insolvency Rules 2005

**ORDINARY APPLICATION (EX-PARTE)**

**(Company)**

Rule 14

**Submitted Date:04/01/2026 11:44**

**Filed Date:05/01/2026 08:36**

**Fees Paid:0.00**

| THE EASTERN CARIBBEAN SUPREME COURT IN THE HIGH COURT OF JUSTICE VIRGIN ISLANDS COMMERCIAL DIVISION | |
|---|---|
| Matter No.: | BVIHC(COM)        of 2026 |
| Applicant: | **THE ATTORNEY GENERAL** |
| Respondent: | **FULAM INVESTMENT LIMITED** |

In the matter of:

| **FULAM INVESTMENT LIMITED** |
|---|

| For Court Use Only |
|---|
| **To: FULAM INVESTMENT LIMITED,** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands. |
| **This Application will be heard by the Commercial Court Judge at Road Town, Tortola British Virgin Islands** <br> **on the            day of                    2026    at                o'clock.** |
| **If you do not attend at the time shown the Court may make an order in your absence** |

We, O'Neal Webster, on behalf of the Applicant, **the Attorney General of the Virgin Islands ("the Attorney General")**, apply pursuant to section 170 of the Insolvency Act 2003 (the "Act") for the following orders that:

1.      James Drury,  a Virgin Islands ("BVI") licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola,  Virgin Islands, VG1110; and Paul Pretlove and David Standish both United Kingdom ("UK") licensed insolvency

1

**7**

practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB to be appointed as joint provisional liquidators of Fulham Investment Limited **("the Company")** with immediate effect.

2.  The powers afforded to the said joint provisional liquidators shall be as set out in Schedule 2 of the Act as varied by Schedule 3, and as further varied by this Order.

3.  An order that the joint provisional liquidators have the power to:

    a.  consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the joint provisional liquidators and the Attorney General which is attached hereto **("the Protocol")**.

    b.  cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4.  An order that the costs of the liquidation, including the proper fees and disbursements of the joint liquidators, the Attorney General's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

5.  An order that the costs of the application be costs in the liquidation.

6.  Such further order as the court deems appropriate.

A draft of the order sought is attached.

The grounds upon which this order is sought are set out in the affidavit of the Attorney General Dawn J. Smith filed on 2nd January, 2026, but in brief are as follows:

**Introduction**

1.  There are good prima facie reasons as set out in the originating application for the eventual appointment of full liquidators on the grounds of public interest and on the grounds that it is just and equitable that they be appointed over the Company. A summary of these reasons is set out below.

2

8

**The Company and the Prince Group**

2.  The Company was incorporated under the laws of the Virgin Islands (**"BVI"**) on 24 July 2009. Its registered office is located at Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, BVI, VG1110. Haoran Sheng is the sole director of the Company and Ample Luck Investment Limited is its sole shareholder. Chen is the sole shareholder of Ample Luck Investment Limited.

3.  The Company is alleged to be a member of a transnational criminal organisation that is headed by the Prince Holding Group (**"the Prince Group"**) which is a Cambodian corporate conglomerate comprised of several companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan. Chen is the mastermind of the Prince Group's transnational criminal organisation and its chairman.

**Action in the USA and other jurisdictions**

4.  On 14 October, 2025, the United States Department of Justice (**"US DOJ"**), the United States Department of the Treasury's Office of Foreign Assets Control (**"OFAC"**) and the United Kingdom Government announced coordinated actions targeting the Prince Group.

5.  The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York (**"the NY District Court"**) on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering (**"the US Indictment"**). Concurrently, the US DOJ filed a civil forfeiture complaint (**"the US Complaint"**) seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group. The criminal and civil proceedings will be referred together as the "**the US Proceedings**".

6.  On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation. The effect of this designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them. The targets include Chen and the Company.

3

9

7.      On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group. In doing so it noted that Chen and his associates have incorporated companies in the BVI and own properties in London including a £12 million mansion on Avenue Road in North London, a £100 million office building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and in Nine Elms in South London.

8.      News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen, the Prince Group, and its related entities and companies. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the coordinated global response to combat transnational organised crime.

9.      These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating transnational organised crime, human trafficking, forced labour, and large-scale financial fraud. The scale and coordination of these actions across six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network.

10.     In total, as of 9 December 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand) have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The allegation against Chen, his associates and companies within the Prince Group**

11.     In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and criminal activities including cryptocurrency investment fraud, human trafficking, money laundering, wire fraud, bank fraud, forced labour and, illegal online gambling. It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers. The scammers disappeared after taking almost every dollar they could from their

4

10

victims.

12.    The US DOJ also alleges that the fraudulent activities carried out by the Prince Group resulted in billions of dollars in losses incurred by victims in the United States and around the world. Chen and his associates are alleged to use the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

13.    To effectuate their fraudulent schemes, it is alleged in the US Proceedings that Chen and his associates:

    a.    forced migrant workers who were – not always, but often – victims themselves of human trafficking, to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

    b.    frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

    c.    used their political influence in multiple countries to protect their criminal enterprise; and

    d.    paid bribes to foreign public officials to avoid disruption by law enforcement.

**The role of BVI Companies in the Prince Group**

14.    The OFAC determined that the BVI companies form part of a complex network of companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

15.    In the US complaint, the US DOJ alleged that Chen and his associates laundered the fraudulent proceeds of their crime through several companies in the BVI, Cayman, Cambodia and Hong Kong, which are under their control. It alleged further that these companies do not serve any real purpose other than to launder the proceeds of their criminal and fraudulent activities. Two BVI Companies are named in the US Complaint - Amber Hill Ventures Limited ("**Amber Hill**") and Lateral Bridge Global Limited (**"LBG"**).

5

16.    The US Complaint discloses that personnel from the Federal Bureau of Investigation ("FBI") have conducted extensive blockchain tracing to analyse the movements of the Prince Group's cryptocurrency. The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin which the US DOJ seeks to forfeit flowed through wallets which were controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

**It is just and equitable that liquidators be appointed over the Company**

17.    The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities to include forced labour, human trafficking, large-scale fraud, and money laundering on a massive international scale.

18.    The activities of some of the companies in the Prince Group have been the subject of civil and criminal actions in multiple jurisdictions, with authorities in at least six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

19.    The BVI companies including the Company are alleged to have been established and operated to assist Chen and the Prince Group which has defrauded numerous vulnerable victims of billions of US dollars.

20.    Despite the actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on allegations is free to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

21.    The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf for the benefit of the victims of the fraud; and to identify potential claims against third parties.

22.    The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

6

12

23. Independent liquidators are necessary to ensure proper coordination with regulatory and enforcement authorities and liquidators, trustees, or receivers appointed in the Virgin Islands and other jurisdictions, given the multi-jurisdictional nature of the scheme and the actions. Independent liquidators would also enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed.

24. Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that its affairs are properly investigated and wound up under the supervision of this Honourable Court.

**It is in the public interest that liquidators be appointed over the Company**

25. The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

26. The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the Virgin Islands as a financial centre and threatens confidence in BVI companies and the BVI's regulatory framework.

27. The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for nefarious purposes and with its commitment to international cooperation and combating serious transnational crime.

28. Given that regulatory and law enforcement authorities in at least six countries have taken action and frozen or seized assets valued at over US$16 billion, it is in the public interest that the BVI as the jurisdiction of incorporation of the Company takes prompt and decisive action through the appointment of liquidators.

29. The scale of this fraud and the international coordination of actions make it imperative, from a public interest perspective, that the BVI positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

7

**The appointment of joint provisional liquidators**

30.  It is essential that joint provisional liquidators be appointed over the Company immediately (without notice to it and its principals) and before the originating application is heard and determined for the following reasons:

a.  The Company continues to be under the control of Chen and his associates and as a result, they can use or continue to use it to further the criminal enterprise thereby continuing to inflict public harm.

b.  Given the serious allegations set out in this application, the sanctions imposed by the United States and the UK Government, the US Indictment, and the US Complaint, it is appropriate and necessary that provisional liquidators be appointed immediately to:

    (i)  immediately take full control of the Company;

    (ii)  identify and preserve its assets that may represent proceeds of crime by preventing further movement, concealment, or dissipation of those assets;

    (iii)  take control of its books and records;

    (iv)  conduct thorough investigations into its past transactions; and

    (v)  review banking records, asset transfers, and corporate dealings to identify and locate the potential money laundering activities.

c.  The information and evidence gathered by the liquidators may provide crucial support for law enforcement authorities, both in the BVI and internationally, to apply for freezing orders, forfeiture orders, and other remedies. In this case, given that the United States has already filed a civil complaint seeking forfeiture of 127,271 Bitcoin valued at approximately US$15 billion allegedly connected to the Prince Group's criminal activities, the work of the liquidators could materially assist in tracing assets and preserving evidence relevant to that and other actions.

d.  The appointment of provisional liquidator over the Company and other BVI companies which are owned and controlled by Chen would align with the BVI's National AML/CFT Policy and its commitment to international cooperation in combating serious transnational crime.

e.  The coordinated actions taken by the US DOJ and UK Government on 14 October, 2025 signal the seriousness with which these major jurisdictions view the alleged criminal activities of the Prince Group. The appointment of provisional liquidators by this

8

14

Honourable Court would demonstrate that the BVI is equally committed to ensuring that its corporate structures are not used as vehicles for serious criminality and would facilitate cooperation with international authorities in their ongoing investigations and asset recovery efforts.

**Urgency**

31. The public announcements of the US Civil Proceedings, OFAC sanctions, and UK sanctions on 14 October 2025 together with actions taken in other jurisdictions have no doubt put Chen and his associates, who are alleged to be sophisticated criminals, on notice of the scrutiny being applied to the Prince Group network and its corporate structures.

32. The Company is likely to have received proceeds of the criminal and fraudulent activities and to have documentation that may assist in recovering the proceeds of the crime. There is a real and substantial risk that absent the immediate appointment of provisional liquidators, assets held by or through the BVI companies, including the Company will be transferred, concealed, or dissipated and documents will be destroyed or concealed. This real and substantial risk will increase once the Company is served with the originating application,

33. The appointment of provisional liquidators will immediately remove control from Chen and his associates and place the Company under the supervision and control of officers of this Court, thereby protecting the integrity of any investigation and preserving assets for the benefit of the victims of Chen and the Prince Group's fraudulent and criminal activities.

34. The appointment of joint provisional liquidators is appropriate given the number of BVI companies involved, the complexity of the alleged corporate structure spanning multiple jurisdictions, the international nature of the investigations and actions, and the need for extensive expertise in tracing assets and investigating potential money laundering activities.

**The Proposed provisional liquidators**

35. The Attorney General proposes that James Drury, a BVI licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110; and Paul Pretlove and David Standish, both UK licensed

9

15

insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB be appointed as joint provisional liquidators of the Company.

**Conclusion**

36.     In all the circumstances, it is just and convenient and in the public's interest, that this Honourable Court grants the order which the Attorney General seeks in this application.

A draft of the order sought is attached.

This application is supported by the affidavit of Attorney General Dawn J. Smith.

The names and addresses of the persons on whom it is intended to serve the application are as follows:

This Application is filed by O'Neal Webster, Solicitors for the Applicant whose address for service is 2nd Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands. REF: NW/LG/101538.

Dated: January 2, 2026

_____
Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

10

16

THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/


**IN THE MATTER OF FULAM INVESTMENT LIMITED**


**AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.**


BETWEEN:


**THE ATTORNEY GENERAL**

                                                                    Applicant

**AND**


**FULAM INVESTMENT LIMITED**

                                                                    Respondent


---

**EX-PARTE ORDINARY APPLICATION
FOR JOINT PROVISIONAL LIQUIDATORS**

---



Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 I Fax: (284) 393 5805
www.onealwebster.com

11

17

**Case Number :BVIHCOM2026/0007**

The Insolvency Rules 2005

**ORIGINATING APPLICATION**

**(Company)**

Rule 14

**Submitted Date:04/01/2026 11:35**

**Filed Date:05/01/2026 08:37**

**Fees Paid:0.00**

FILED
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS

| THE EASTERN CARIBBEAN SUPREME COURT IN THE HIGH COURT OF JUSTICE VIRGIN ISLANDS COMMERCIAL DIVISION | |
|---|---|
| Matter No.: | BVIHC(COM)        of 2026 |
| Applicant: | **ATTORNEY GENERAL** |
| Respondent: | **GIANT VICTORY HOLDINGS LIMITED** |

In the matter of:

| **GIANT VICTORY HOLDINGS LIMITED** |
|---|

| For Court Use Only |
|---|
| **To:  GIANT VICTORY HOLDINGS LIMITED,** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands. <br><br> **This Application will be heard by the Commercial Court Judge at Road Town, Tortola British Virgin Islands** <br> **on the              day of                     2026      at               o'clock.** <br><br> **If you do not attend at the time shown the Court may make an order in your absence** |

The Applicant, the Attorney General of the Virgin Islands ("**Attorney General**") of TTT Building, Wickhams Cay 1, Road Town, Tortola, Virgin Islands VG1110 applies to the Court for:

1.  An order pursuant to sections 162(1) (b) and (c) of the Insolvency Act, Revised Edition 2020 ("**the Act**") that Paul Pretlove, James Drury and David Standish, be appointed as joint liquidators of Giant Victory Holdings Limited **("the Company")**, a company incorporated under the laws of the Virgin Islands ("BVI"). James Drury is a BVI licensed insolvency practitioner of Interpath (BVI)

1

Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110. Paul Pretlove and David Standish are United Kingdom ("UK") licensed insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB acting as overseas insolvency practitioners as defined in the Act.

2.  An order that the joint liquidators be given all powers set out in Schedule 2 of the Act, such powers to be exercisable without the sanction of the Court and such other powers as this Honourable Court deems fit.

3.  An order that the joint liquidators have the power to:

    a.  consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the liquidators and the Attorney General which is attached hereto **("the Protocol")**.

    b.  cooperate and communicate with law enforcement and regulatory authorities in the BVI and in other jurisdictions.

4.  An order that the costs of the liquidation, including the proper fees and disbursements of the joint liquidators and the Attorney General's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims

5.  An order that the costs of the application be costs in the liquidation.

6.  Such further order as the court deems appropriate.

The grounds upon which this order is sought are set out in the affidavit of Attorney General, Dawn J. Smith filed on 2 January 2026 and are summarised as follows:

**THE PARTIES**

1.  The Attorney General is the principal legal adviser to the Government of the Virgin Islands ("**the Government**") pursuant to section 58 of the Virgin Islands Constitution Order, 2007, and has overall responsibility for all aspects of civil litigation on behalf of the Government.

2

2.      The Company was incorporated under the laws of the BVI on 1 December 2016.  Its registered office is located at Vistra Corporate Services Centre **("Vistra")**, Wickhams Cay II, Road Town, Tortola, BVI, VG1110.   The Company is alleged to be a member of a transnational criminal organisation that is headed by Prince Holding Group Limited **("the Prince Group"),** which is a Cambodian corporate conglomerate that comprises several companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan. On 17 November 2025 Vistra filed its Intention to Resign as the Company's registered agent.

3.      The chairman of the Prince Group is Chen Zhi **("Chen").** Chen is the Company's sole Director and Deluxe Heaven Limited is the Company's sole shareholder. Chen holds 100% of the shareholding in Deluxe Heaven Limited.

**BACKGROUND**

4.      The background is comprehensively set out in the indictment and the verified complaint filed by the United States Department of Justice **("US DOJ")** on October 14, 2025 and in the announcement issued by the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** dated October 13, 2025.  The background is summarised below.

**Action in the United States**

5.      On 14 October, 2025, the United States Department of Justice **("US DOJ"),** the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** and the United Kingdom Government announced coordinated actions targeting the Prince Group.

6.      The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York **("the NY District Court")** on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering **("the US Indictment").** Concurrently, the US DOJ filed a civil forfeiture complaint **("the US Complaint")** seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group.  The criminal and civil proceedings will be referred to together as "**the US Proceedings**."

3

7.      In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and criminal activities including cryptocurrency investment fraud, human trafficking, money laundering, wire fraud, bank fraud, forced labour and, illegal online gambling.  It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers.  The scammers disappeared after taking almost every dollar they could from their victims.

8.      To effectuate the schemes, it is alleged in the US Proceedings that Chen and his associates:

   a.      built and operated forced-labour scam compounds across Cambodia in which workers were made to execute the scams at high volumes. The scam compounds housed vast dormitories surrounded by high walls and barbed wire, and functioned as violent forced labour camps;

   b.      forced migrant workers who were – not always, but often – victims themselves of human trafficking to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

   c.      frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

   d.      used their political influence in multiple countries to protect their criminal enterprise; and

   e.      paid bribes to foreign public officials to avoid disruption by law enforcement.

9.      The indictment alleges that Chen maintained meticulous records of the compounds' operations, including ledgers of the tracking profits generated from the fraud schemes, documents detailing "phone farms" used in the schemes, and images depicting methods of beating and torture used against workers.

10.     The US DOJ alleges that the schemes carried out by the Prince Group resulted in billions of dollars in losses incurred by victims in the United States and around the world. The documents in the US

4

Proceedings allege that proceeds from these criminal activities have been laundered through various means, including cryptocurrency (using "spraying" and "funneling" techniques), online gambling operations, and cryptocurrency mining operations. Chen, his associates and companies within the Prince Group, "washed" and returned the fraudulent proceeds to the Prince Group. The "washing" was done by using the Prince Group's vast network of seemingly legitimate business enterprises to launder its criminal proceeds. One common method was to collect the fraudulent proceeds in the form of bitcoin or stablecoins and then off-ramp them into conventional currencies, for example, the US dollar. The launderers then used that cash to purchase clean bitcoin or other cryptocurrencies. Chen was directly involved in coordinating these laundering efforts.

11. Chen and his associates subsequently used the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

12. On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation.  The effect of the designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them.  The targets include Chen and the Company. The OFAC noted that:

   a. Americans have lost at least $10 billion to Southeast Asia-based scam operations in 2024, a 66 percent increase over the prior year, with scams like those perpetrated by Prince Group being particularly significant.

   b. The Prince Group remained a dominant player in Cambodia's scam economy and has controlled illicit financial flows of billions of dollars.

   c. The actions taken by OFAC and Financial Crimes Enforcement Network (FinCEN) were in close coordination with the United Kingdom's Foreign, Commonwealth, and Development Office ("FCDO"), which took complementary actions against criminal networks responsible for targeting citizens of the United States and other allied nations through online scams and the laundering of stolen funds.

**Action in the UK**

13. On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group.  In doing so it

5

noted that Chen and his associates have incorporated companies in the BVI and own properties in London, including a £12 million mansion on Avenue Road in North London, a £100 million office building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and Nine Elms in South London.

14.     The Foreign Secretary Yvette Cooper stated that:

> "*The masterminds behind these horrific scam centres are ruining the lives of vulnerable people and buying up London homes to store their money.*
>
> *Together with our US allies, we are taking decisive action to combat the growing transnational threat posed by this network – upholding human rights, protecting British nationals and keeping dirty money off our streets.*"

15.     The Fraud Minister Lord Hanson said:

> "*These sanctions prove our determination to stop those who profit from this activity, hold offenders accountable, and keep dirty money out of the UK. Through our new, expanded Fraud Strategy and the upcoming Global Fraud Summit, we will go even further to disrupt corrupt networks and protect the public from shameless criminals.*"

16.     The effect of these sanctions is to prevent the transfer of these properties, freeze any business in which Chen and the Prince Group are involved and lock Chen and the Prince Group transnational criminal network out of the UK's financial system.

**Action in other jurisdictions**

17.     News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen,  the Prince Group, and its related entities and companies.  These actions are set out in paragraphs 19 to 22 below. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the global response to combat transnational organised crime.

*Singapore*

18.     On 31 October, 2025, Singapore police announced that they had seized over $150 million (approximately US$115 million) in assets linked to the Prince Group. The seized assets include six properties, bank accounts, securities accounts, and cash which are said to represent the proceeds of money laundering and forgery offences committed by Chen and the Prince Group. According

6

to the Monetary Authority of Singapore (MAS), financial institutions had previously filed suspicious transaction reports, and a number of suspicious accounts had been closed. The Singapore Police Force stated that investigations into Chen and his associates commenced in 2024 after it received intelligence from the Suspicious Transaction Reporting Office (STR).

### Hong Kong

19.     On 4 November, 2025, Hong Kong authorities announced that they had frozen assets worth HK$2.75 billion (approximately US$354 million), which, based on intelligence and information gathered from multiple sources, are suspected to represent proceeds of international cross-border telecommunications fraud and money laundering activities committed by the Prince Group. The frozen assets include cash, stocks, and funds held by individuals and corporate entities.  At least 18 Hong Kong companies were blacklisted by the United States in connection with the Prince Group, including two listed companies - "*Khoon Group and Geotech Holdings*".

### Taiwan

20.     On 4 November, 2025, Taiwanese prosecutors announced that they had detained 25 individuals and seized T$4.5 billion (approximately US$147 million) in assets tied to the Prince Group. The seized assets include 26 high-end cars, properties, and bank accounts tied to the network and to Chen in relation to money laundering and forced labour offences.

### Thailand

21.     On 3 December, 2025, the Thai authorities announced that they had seized assets worth more than 10,157 million baht (approximately US$318 million) and issued arrest warrants for 42 individuals linked to transnational online scam operations connected to Chen and Cambodian nationals Kok An and Yim Leak. As of 3 December, 2025, 29 individuals had been arrested. The seizures include shares in Bangchak Corporation Limited worth 6 billion baht (approximately US$188 million). Thailand's Anti-Money Laundering Office (AMLO) stated that investigators had found "*information on networks of online fraud, human trafficking, and money-laundering*" that were linked to Chen and his associates.

**The effect of the multi-jurisdictional actions**

22.     These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating

7

transnational organised crime, human trafficking, forced labour, and large-scale financial fraud. The scale and coordination of these actions across at least six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network

23.    In total, as of 9 December, 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The role of BVI companies**

24.    The OFAC has determined that the BVI companies form part of a complex network of holding companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

25.    In the US Complaint, the US DOJ alleged that Chen and his associates also laundered fraudulent proceeds through several companies including companies in the BVI which are under their control.  It alleged further that these companies do not serve any real purpose other than to launder funds. Two BVI Companies were named in the US Proceedings - Amber Hill Ventures Limited **("Amber Hill")** and Lateral Bridge Global Limited **("LBG")**.

26.    Amber Hill and LBG are said to be controlled by two of Chen's associates, who are also defendants in the US Civil Proceedings. The US Complaint discloses that personnel from the Federal Bureau of Investigation ("FBI") have conducted extensive blockchain tracing to analyse the movements of the Prince Group's cryptocurrency.  The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin which the US DOJ seeks to forfeit flowed through wallets which were controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

27.    It is also alleged that Amber Hill had a banking relationship with a financial institution in the United States. It was recorded in the account opening documents with that financial institution that Amber Hill's business activities consisted of "*[p]roprietary trading and investing*," and its anticipated deposit and withdrawal activity would be approximately $2 million each. However,

8

according to account statements, in February 2020, Amber Hill's account with that financial institution had approximately $22.5 million in deposits and $21.8 million in withdrawals. Amber Hill was struck from the register and dissolved on 10 November, 2023.

**THE APPLICATION**

28. The Application is made by the Attorney General on the ground that (i) it is just and equitable that joint liquidators be appointed over the Company pursuant to section 162 (1) (b) of the Act and (ii) it is in the public interest that the joint liquidators are appointed pursuant to section 162 (1) (c) of the Act.

**Just and equitable ground**

29. Section 162(1)(b) of the Insolvency Act, 2003 provides that the Court may appoint a liquidator of a company if "the Court is of the opinion that it is just and equitable that the company should be liquidated."

30. The Attorney General is listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(b) of the Act.

31. It is just and equitable that the Company should be placed into liquidation for the following reasons:

    a. Chen is the sole director of the Company and Deluxe Heaven Limited is the Company's sole shareholder. Chen holds 100% of the shareholding in Deluxe Heaven Limited. Chen is alleged to be the mastermind of the Prince Group. He has been criminally indicted in the United States and is subject to personal sanctions by both the United States and the United Kingdom.

    b. The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities, to include forced labour, human trafficking, large-scale fraud, and money laundering on a massive international scale.

    c. The BVI companies including the Company are alleged to have been established and operated to assist Chen and the Prince Group which has defrauded numerous vulnerable victims of billions of US dollars.

9

d.      Despite the enforcement actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on the allegations is free to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

e.      The activities of some of the companies in the Prince Group have been the subject of civil and criminal enforcement actions in multiple jurisdictions, with authorities in six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

f.      The Company is alleged to be a shell company which was used solely as a vehicle for the fraudulent scheme.

g.      The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf, and identify potential claims against third parties.

h.      The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

i.      Independent liquidators are necessary to ensure proper coordination with regulatory and law enforcement authorities and liquidators, trustees, or receivers appointed in the BVI and other jurisdictions, given the multi-jurisdictional nature of the scheme and the actions taken by various authorities in several jurisdictions.

j.      Independent liquidators would enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed as part of a collective process.

k.      Given the fraudulent nature of the scheme, there are likely to be voidable transactions, preferences, and other claims that independent liquidators could pursue for the benefit of the victims and creditors.

32.     Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that its affairs are properly investigated and wound up under the supervision of this Honourable Court.

**Public Interest ground**

33.     Section 162(1)(c) of the Act gives the Court the discretion to appoint a liquidator of a company if

10

it is of the opinion that it is in the public interest for a liquidator to be appointed.

34.     The Attorney General is also listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(c) of the Act.

35.     The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

36.     BVI companies including, the Company are alleged to have been used as vehicles in what has been described by international law enforcement authorities as one of the largest fraudulent investment schemes in recent history.  The scheme has caused billions of dollars in losses to victims worldwide and involved egregious human rights abuses.  They are alleged to have been used to launder and/or hold the proceeds of the horrific crimes committed by Chen and his associates, including human trafficking, forced labour, aggravated identity theft, international fraud designed to scam unsuspecting victims of their lifesavings and money laundering.  These criminal and fraudulent activities are inherently objectionable and are contrary to clearly identifiable public interest.

37.     The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the BVI as a financial centre and threatens confidence in BVI incorporated companies and the BVI's regulatory framework.

38.     The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for fraudulent purposes.

39.     The appointment of liquidators will:
   a.     facilitate cooperation with enforcement authorities, regulators, and insolvency practitioners in the BVI and other jurisdictions, demonstrating the BVI's commitment to international cooperation in combating financial fraud;
   b.     ensure that the Company's affairs are properly investigated and that appropriate steps are taken to recover assets and maximise returns to defrauded investors;
   c.     enable a proper investigation into how the Company was used in the fraudulent scheme, which may assist in preventing similar schemes in the future.

11

40.    Given that enforcement authorities in at least six countries have taken action and frozen or seized assets valued at over US$16 billion, it is in the public interest that BVI as the jurisdiction of incorporation of the Company, takes prompt and decisive action through the appointment of liquidators.

41.    The scale of this fraud and the international coordination of related actions make it imperative, from a public interest perspective, that the BVI positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

42.    In all the circumstances, it is not only just and equitable but also in the public interest that Joint liquidators be appointed over the Company to prevent it from being used to further Chen's and the Prince Group's criminal enterprise.

43.    If appointed, the joint liquidators would be able to take control of the Company, take the necessary steps in the BVI or overseas to secure and preserve its books and records and secure its assets for the benefit of the victims of the crimes perpetuated by the Prince Group. As officers of the court, they would also be able to independently investigate claims against the Company, marshal records, ensure that the Company complies with BVI laws and regulations and respond to any court process.

**Proposed liquidators**

44.    Mr. James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110, Mr. Paul Pretlove and Mr. David Standish, both of Interpath Ltd, 10 Fleet Place, London EC4M 7RB who to the best of the Applicant's knowledge and belief are eligible insolvency practitioners have all consented to be appointed as joint liquidators of the Company.

45.    In the circumstances, it is just and equitable and in the public's interest to grant the order which the Attorney General seeks, for the appointment of joint liquidators over the Company.

A draft of the order sought is attached.

This application is supported by the affidavit of Attorney General Dawn J Smith.

12

The names and addresses of the persons on whom it is intended to serve the application are as follows:

**Giant Victory Holdings Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

The names and addresses of the persons required to be given notice of this application pursuant to the Act and the Rules (if any) are as follows:

**Giant Victory Holdings Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

This Application is filed by O'Neal Webster, Solicitors for the Applicant, whose address for service is 2nd Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands.  REF: 101538

_____                          Dated: January 2, 2026

Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

13

THE EASTERN CARIBBEAN SUPREME

COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/

**IN THE MATTER OF GIANT VICTORY HOLDINGS LIMITED**

**AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS**

BETWEEN:

**THE ATTORNEY GENERAL**

Applicant

 **AND**

**GIANT VICTORY HOLDINGS LIMITED**

Respondent

_____

**ORIGINATING APPLICATION**

_____



Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 l Fax: (284) 393 5805
www.onealwebster.com

14

**Case Number :BVIHCOM2026/0007**



**FILED
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS**

The Insolvency Rules 2005

**ORDINARY APPLICATION (EX-PARTE)**

**(Company)**

Rule 14

**Submitted Date:04/01/2026 11:42**

**Filed Date:05/01/2026 08:37**

**Fees Paid:0.00**

| | |
|---|---|
| **THE EASTERN CARIBBEAN SUPREME COURT IN THE HIGH COURT OF JUSTICE VIRGIN ISLANDS COMMERCIAL DIVISION** | |
| Matter No.: | BVIHC(COM)         of 2026 |
| Applicant: | **THE ATTORNEY GENERAL** |
| Respondent: | **GIANT VICTORY HOLDINGS LIMITED** |

In the matter of:

| |
|---|
| **GIANT VICTORY HOLDINGS LIMITED** |

| |
|---|
| For Court Use Only |
| **To:  GIANT VICTORY HOLDINGS LIMITED,** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands. |
| **This Application will be heard by the Commercial Court Judge at Road Town, Tortola** |
| **British Virgin Islands** |
| **on the               day of                        2026     at                 o'clock.** |
| **If you do not attend at the time shown the Court may make an order in your absence** |

We, O'Neal Webster, on behalf of the Applicant, **the Attorney General of the Virgin Islands ("the Attorney General")**, apply pursuant to section 170 of the Insolvency Act 2003 (the "Act") for the following orders that:

1.  James Drury,  a Virgin Islands ("BVI") licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola,  Virgin Islands, VG1110; and Paul Pretlove and David Standish both United Kingdom ("UK") licensed insolvency

1

practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB to be appointed as joint provisional liquidators of Giant Victory Holdings Limited **("the Company")** with immediate effect.

2. The powers afforded to the said joint provisional liquidators shall be as set out in Schedule 2 of the Act as varied by Schedule 3, and as further varied by this Order.

3. An order that the joint provisional liquidators have the power to:

   a. consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the joint provisional liquidators and the Attorney General which is attached hereto **("the Protocol")**.

   b. cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4. An order that the costs of the liquidation, including the proper fees and disbursements of the joint liquidators, the Attorney General's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

5. An order that the costs of the application be costs in the liquidation.

6. Such further order as the court deems appropriate.

A draft of the order sought is attached.

The grounds upon which this order is sought are set out in the affidavit of the Attorney General Dawn J. Smith filed on 30 December 2025, but in brief are as follows:

**Introduction**

1. There are good prima facie reasons as set out in the originating application for the eventual appointment of full liquidators on the grounds of public interest and on the grounds that it is just and equitable that they be appointed over the Company.  A summary of these reasons is set out below.

2

**The Company and the Prince Group**

2. The Company was incorporated under the laws of the Virgin Islands **("BVI")** on 1 December 2016. Its registered office is located at Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, BVI, VG1110. Chen Zhi **("Chen")** is the Company's sole Director and Deluxe Heaven Limited is the Company's sole shareholder. Chen holds 100% of the shareholding in Deluxe Heaven Limited.

3. The Company is alleged to be a member of a transnational criminal organisation that is headed by the Prince Holding Group **("the Prince Group")** which is a Cambodian corporate conglomerate comprised of several companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan. Chen is the mastermind of the Prince Group's transnational criminal organisation and its chairman.

**Action in the USA and other jurisdictions**

4. On 14 October, 2025, the United States Department of Justice **("US DOJ"),** the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** and the United Kingdom Government announced coordinated actions targeting the Prince Group.

5. The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York **("the NY District Court")** on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering **("the US Indictment").** Concurrently, the US DOJ filed a civil forfeiture complaint **("the US Complaint")** seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group. The criminal and civil proceedings will be referred together as the "**the US Proceedings**".

6. On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation. The effect of this designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them. The targets include Chen and the Company.

3

7. On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group. In doing so it noted that Chen and his associates have incorporated companies in the BVI and own properties in London including a £12 million mansion on Avenue Road in North London, a £100 million office building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and in Nine Elms in South London.

8. News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen, the Prince Group, and its related entities and companies. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the coordinated global response to combat transnational organised crime.

9. These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating transnational organised crime, human trafficking, forced labour, and large-scale financial fraud. The scale and coordination of these actions across six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network.

10. In total, as of 9 December 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand) have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The allegation against Chen, his associates and companies within the Prince Group**

11. In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and criminal activities including cryptocurrency investment fraud, human trafficking, money laundering, wire fraud, bank fraud, forced labour and, illegal online gambling. It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers. The scammers disappeared after taking almost every dollar they could from their victims.

4

12. The US DOJ also alleges that the fraudulent activities carried out by the Prince Group resulted in billions of dollars in losses incurred by victims in the United States and around the world. Chen and his associates are alleged to use the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

13. To effectuate their fraudulent schemes, it is alleged in the US Proceedings that Chen and his associates:

   a. forced migrant workers who were – not always, but often – victims themselves of human trafficking, to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

   b. frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

   c. used their political influence in multiple countries to protect their criminal enterprise; and

   d. paid bribes to foreign public officials to avoid disruption by law enforcement.

**The role of BVI Companies in the Prince Group**

14. The OFAC determined that the BVI companies form part of a complex network of companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

15. In the US complaint, the US DOJ alleged that Chen and his associates laundered the fraudulent proceeds of their crime through several companies in the BVI, Cayman, Cambodia and Hong Kong, which are under their control. It alleged further that these companies do not serve any real purpose other than to launder the proceeds of their criminal and fraudulent activities. Two BVI Companies are named in the US Complaint - Amber Hill Ventures Limited ("**Amber Hill**") and Lateral Bridge Global Limited **("LBG")**.

16. The US Complaint discloses that personnel from the Federal Bureau of Investigation ("FBI") have

5

conducted extensive blockchain tracing to analyse the movements of the Prince Group's cryptocurrency. The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin which the US DOJ seeks to forfeit flowed through wallets which were controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

**It is just and equitable that liquidators be appointed over the Company**

17.    The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities to include forced labour, human trafficking, large-scale fraud, and money laundering on a massive international scale.

18.    The activities of some of the companies in the Prince Group have been the subject of civil and criminal actions in multiple jurisdictions, with authorities in at least six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

19.    The BVI companies including the Company are alleged to have been established and operated to assist Chen and the Prince Group which has defrauded numerous vulnerable victims of billions of US dollars.

20.    Despite the actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on allegations is free to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

21.    The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf for the benefit of the victims of the fraud; and to identify potential claims against third parties.

22.    The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

23.    Independent liquidators are necessary to ensure proper coordination with regulatory and

6

enforcement authorities and liquidators, trustees, or receivers appointed in the Virgin Islands and other jurisdictions, given the multi-jurisdictional nature of the scheme and the actions. Independent liquidators would also enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed.

24. Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that its affairs are properly investigated and wound up under the supervision of this Honourable Court.

**It is in the public interest that liquidators be appointed over the Company**

25. The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

26. The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the Virgin Islands as a financial centre and threatens confidence in BVI companies and the BVI's regulatory framework.

27. The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for nefarious purposes and with its commitment to international cooperation and combating serious transnational crime.

28. Given that regulatory and law enforcement authorities in at least six countries have taken action and frozen or seized assets valued at over US$16 billion, it is in the public interest that the BVI as the jurisdiction of incorporation of the Company takes prompt and decisive action through the appointment of liquidators.

29. The scale of this fraud and the international coordination of actions make it imperative, from a public interest perspective, that the BVI positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

**The appointment of joint provisional liquidators**

7

30. It is essential that joint provisional liquidators be appointed over the Company immediately (without notice to it and its principals) and before the originating application is heard and determined for the following reasons:

    a. The Company continues to be under the control of Chen and his associates and as a result, they can use or continue to use it to further the criminal enterprise thereby continuing to inflict public harm.

    b. Given the serious allegations set out in this application, the sanctions imposed by the United States and the UK Government, the US Indictment, and the US Complaint, it is appropriate and necessary that provisional liquidators be appointed immediately to:

        (i) immediately take full control of the Company;

        (ii) identify and preserve its assets that may represent proceeds of crime by preventing further movement, concealment, or dissipation of those assets;

        (iii) take control of its books and records;

        (iv) conduct thorough investigations into its past transactions; and

        (v) review banking records, asset transfers, and corporate dealings to identify and locate the potential money laundering activities.

    c. The information and evidence gathered by the liquidators may provide crucial support for law enforcement authorities, both in the BVI and internationally, to apply for freezing orders, forfeiture orders, and other remedies. In this case, given that the United States has already filed a civil complaint seeking forfeiture of 127,271 Bitcoin valued at approximately US$15 billion allegedly connected to the Prince Group's criminal activities, the work of the liquidators could materially assist in tracing assets and preserving evidence relevant to that and other actions.

    d. The appointment of provisional liquidator over the Company and other BVI companies which are owned and controlled by Chen would align with the BVI's National AML/CFT Policy and its commitment to international cooperation in combating serious transnational crime.

    e. The coordinated actions taken by the US DOJ and UK Government on 14 October, 2025 signal the seriousness with which these major jurisdictions view the alleged criminal activities of the Prince Group. The appointment of provisional liquidators by this Honourable Court would demonstrate that the BVI is equally committed to ensuring that its corporate structures are not used as vehicles for serious criminality and would

8

facilitate cooperation with international authorities in their ongoing investigations and asset recovery efforts.

**Urgency**

31.    The public announcements of the US Civil Proceedings, OFAC sanctions, and UK sanctions on 14 October 2025 together with actions taken in other jurisdictions have no doubt put Chen and his associates, who are alleged to be sophisticated criminals, on notice of the scrutiny being applied to the Prince Group network and its corporate structures.

32.    The Company is likely to have received proceeds of the criminal and fraudulent activities and to have documentation that may assist in recovering the proceeds of the crime. There is a real and substantial risk that absent the immediate appointment of provisional liquidators, assets held by or through the BVI companies, including the Company will be transferred, concealed, or dissipated and documents will be destroyed or concealed. This real and substantial risk will increase once the Company is served with the originating application,

33.    The appointment of provisional liquidators will immediately remove control from Chen and place the Company under the supervision and control of officers of this Court, thereby protecting the integrity of any investigation and preserving assets for the benefit of the victims of Chen and the Prince Group's fraudulent and criminal activities.

34.    The appointment of joint provisional liquidators is appropriate given the number of BVI companies involved, the complexity of the alleged corporate structure spanning multiple jurisdictions, the international nature of the investigations and actions, and the need for extensive expertise in tracing assets and investigating potential money laundering activities.

**The Proposed provisional liquidators**

35.    The Attorney General proposes that James Drury,  a BVI licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110; and Paul Pretlove and David Standish, both UK licensed insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB be appointed as joint provisional liquidators of the Company.

9

**Conclusion**

36.    In all the circumstances, it is just and convenient and in the public's interest, that this Honourable Court grants the order which the Attorney General seeks in this application.

A draft of the order sought is attached.

This application is supported by the affidavit of Attorney General Dawn J. Smith.

The names and addresses of the persons on whom it is intended to serve the application are as follows:

This Application is filed by O'Neal Webster, Solicitors for the Applicant whose address for service is 2nd Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands. REF: NW/LG/101538.

_____                                    Dated: January 2, 2026
Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

10

THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/

**IN THE MATTER OF GIANT VICTORY HOLDINGS LIMITED**

**AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE**

**LAWS OF THE VIRGIN ISLANDS**.

BETWEEN:

**THE ATTORNEY GENERAL**

Applicant

**AND**

**GIANT VICTORY HOLDINGS LIMITED**

Respondent

_____

**EX-PARTE ORDINARY APPLICATION
FOR JOINT PROVISIONAL LIQUIDATORS**

_____



Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 l Fax: (284) 393 5805
www.onealwebster.com

11

**Case Number :BVIHCOM2026/0008**

The Insolvency Rules 2005

**ORIGINATING APPLICATION**

**(Company)**

Rule 14

**Submitted Date:04/01/2026 11:54**

**Filed Date:05/01/2026 08:38**

**Fees Paid:0.00**

**FILED**
**HIGH COURT**
**TERRITORY OF**
**THE VIRGIN ISLANDS**

| THE EASTERN CARIBBEAN SUPREME COURT IN THE HIGH COURT OF JUSTICE VIRGIN ISLANDS COMMERCIAL DIVISION | |
|---|---|
| Matter No.: | BVIHC(COM)      of 2026 |
| Applicant: | **THE ATTORNEY GENERAL** |
| Respondent: | **GOLDEN ASCEND INTERNATIONAL LIMITED** |

In the matter of:

| **GOLDEN ASCEND INTERNATIONAL LIMITED** |
|---|

| For Court Use Only |
|---|
| **To:  GOLDEN ASCEND INTERNATIONAL LIMITED,** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands. |
| **This Application will be heard by the Commercial Court Judge at Road Town, Tortola British Virgin Islands** |
| **on the            day of                       2026       at               o'clock.** |
| **If you do not attend at the time shown the Court may make an order in your absence** |

The Applicant, the Attorney General of the Virgin Islands ("**Attorney General**") of TTT Building, Wickhams Cay 1, Road Town, Tortola, Virgin Islands VG1110 applies to the Court for:

1.  An order pursuant to sections 162(1) (b) and (c) of the Insolvency Act, Revised Edition 2020 ("**the Act**") that Paul Pretlove, James Drury and David Standish, be appointed as joint liquidators of Golden Ascend International Limited **("the Company")**, a company incorporated under the laws of the Virgin Islands ("BVI"). James Drury is a BVI licensed insolvency practitioner of Interpath

1

(BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110. Paul Pretlove and David Standish are United Kingdom ("UK") licensed insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB acting as overseas insolvency practitioners as defined in the Act.

2.    An order that the joint liquidators be given all powers set out in Schedule 2 of the Act, such powers to be exercisable without the sanction of the Court and such other powers as this Honourable Court deems fit.

3.    An order that the joint liquidators have the power to:

   a.    consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the liquidators and the Attorney General which is attached hereto **("the Protocol")**.

   b.    cooperate and communicate with law enforcement and regulatory authorities in the BVI and in other jurisdictions.

4.    An order that the costs of the liquidation, including the proper fees and disbursements of the joint liquidators and the Attorney General's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims

5.    An order that the costs of the application be costs in the liquidation.

6.    Such further order as the court deems appropriate.

The grounds upon which this order is sought are set out in the affidavit of Attorney General, Dawn J. Smith filed on 2 January 2026 and are summarised as follows:

**THE PARTIES**

1.    The Attorney General is the principal legal adviser to the Government of the Virgin Islands ("**the Government**") pursuant to section 58 of the Virgin Islands Constitution Order, 2007, and has overall responsibility for all aspects of civil litigation on behalf of the Government.

2

2.  The Company was incorporated under the laws of the BVI on 18 April 2018.  Its registered office is located at Vistra Corporate Services Centre **("Vistra")**, Wickhams Cay II, Road Town, Tortola, BVI, VG1110.  The Company is alleged to be a member of a transnational criminal organisation that is headed by Prince Holding Group Limited **("the Prince Group"),** which is a Cambodian corporate conglomerate that comprises several companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan.

3.  The chairman of the Prince Group is Chen Zhi **("Chen").** Xia Zeng is the Company's sole Director and Chen is the Company's sole shareholder.

**BACKGROUND**

4.  The background is comprehensively set out in the indictment and the verified complaint filed by the United States Department of Justice **("US DOJ")** on October 14, 2025 and in the announcement issued by the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** dated October 13, 2025.  The background is summarised below.

**Action in the United States**

5.  On 14 October, 2025, the United States Department of Justice **("US DOJ"),** the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** and the United Kingdom Government announced coordinated actions targeting the Prince Group.

6.  The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York **("the NY District Court")** on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering **("the US Indictment").** Concurrently, the US DOJ filed a civil forfeiture complaint **("the US Complaint")** seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group.  The criminal and civil proceedings will be referred to together as "**the US Proceedings**."

7.  In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and criminal activities including cryptocurrency investment fraud, human trafficking, money

3

laundering, wire fraud, bank fraud, forced labour and, illegal online gambling.  It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers.  The scammers disappeared after taking almost every dollar they could from their victims.

8.    To effectuate the schemes, it is alleged in the US Proceedings that Chen and his associates:

a.    built and operated forced-labour scam compounds across Cambodia in which workers were made to execute the scams at high volumes. The scam compounds housed vast dormitories surrounded by high walls and barbed wire, and functioned as violent forced labour camps;

b.    forced migrant workers who were – not always, but often – victims themselves of human trafficking to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

c.    frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

d.    used their political influence in multiple countries to protect their criminal enterprise; and

e.    paid bribes to foreign public officials to avoid disruption by law enforcement.

9.    The indictment alleges that Chen maintained meticulous records of the compounds' operations, including ledgers of the tracking profits generated from the fraud schemes, documents detailing "phone farms" used in the schemes, and images depicting methods of beating and torture used against workers.

10.    The US DOJ alleges that the schemes carried out by the Prince Group resulted in billions of dollars in losses incurred by victims in the United States and around the world. The documents in the US Proceedings allege that proceeds from these criminal activities have been laundered through various means, including cryptocurrency (using "spraying" and "funneling" techniques), online

4

gambling operations, and cryptocurrency mining operations. Chen, his associates and companies within the Prince Group, "washed" and returned the fraudulent proceeds to the Prince Group. The "washing" was done by using the Prince Group's vast network of seemingly legitimate business enterprises to launder its criminal proceeds. One common method was to collect the fraudulent proceeds in the form of bitcoin or stablecoins and then off-ramp them into conventional currencies, for example, the US dollar. The launderers then used that cash to purchase clean bitcoin or other cryptocurrencies. Chen was directly involved in coordinating these laundering efforts.

11.    Chen and his associates subsequently used the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

12.    On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation.  The effect of the designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them.  The targets include Chen and the Company. The OFAC noted that:

    a.    Americans have lost at least $10 billion to Southeast Asia-based scam operations in 2024, a 66 percent increase over the prior year, with scams like those perpetrated by Prince Group being particularly significant.

    b.    The Prince Group remained a dominant player in Cambodia's scam economy and has controlled illicit financial flows of billions of dollars.

    c.    The actions taken by OFAC and Financial Crimes Enforcement Network (FinCEN) were in close coordination with the United Kingdom's Foreign, Commonwealth, and Development Office ("FCDO"), which took complementary actions against criminal networks responsible for targeting citizens of the United States and other allied nations through online scams and the laundering of stolen funds.

**Action in the UK**

13.    On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group.  In doing so it noted that Chen and his associates have incorporated companies in the BVI and own properties

5

in London, including a £12 million mansion on Avenue Road in North London, a £100 million office building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and Nine Elms in South London.

14.     The Foreign Secretary Yvette Cooper stated that:

> "*The masterminds behind these horrific scam centres are ruining the lives of vulnerable people and buying up London homes to store their money.*
>
> *Together with our US allies, we are taking decisive action to combat the growing transnational threat posed by this network – upholding human rights, protecting British nationals and keeping dirty money off our streets.*"

15.     The Fraud Minister Lord Hanson said:

> "*These sanctions prove our determination to stop those who profit from this activity, hold offenders accountable, and keep dirty money out of the UK. Through our new, expanded Fraud Strategy and the upcoming Global Fraud Summit, we will go even further to disrupt corrupt networks and protect the public from shameless criminals.*"

16.     The effect of these sanctions is to prevent the transfer of these properties, freeze any business in which Chen and the Prince Group are involved and lock Chen and the Prince Group transnational criminal network out of the UK's financial system.

**Action in other jurisdictions**

17.     News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen, the Prince Group, and its related entities and companies.  These actions are set out in paragraphs 19 to 22 below. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the global response to combat transnational organised crime.

*Singapore*

18.     On 31 October, 2025, Singapore police announced that they had seized over $150 million (approximately US$115 million) in assets linked to the Prince Group. The seized assets include six properties, bank accounts, securities accounts, and cash which are said to represent the proceeds of money laundering and forgery offences committed by Chen and the Prince Group. According to the Monetary Authority of Singapore (MAS), financial institutions had previously filed

6

suspicious transaction reports, and a number of suspicious accounts had been closed. The Singapore Police Force stated that investigations into Chen and his associates commenced in 2024 after it received intelligence from the Suspicious Transaction Reporting Office (STR).

### Hong Kong

19.     On 4 November, 2025, Hong Kong authorities announced that they had frozen assets worth HK$2.75 billion (approximately US$354 million), which, based on intelligence and information gathered from multiple sources, are suspected to represent proceeds of international cross-border telecommunications fraud and money laundering activities committed by the Prince Group. The frozen assets include cash, stocks, and funds held by individuals and corporate entities.  At least 18 Hong Kong companies were blacklisted by the United States in connection with the Prince Group, including two listed companies - "*Khoon Group and Geotech Holdings*".

### Taiwan

20.     On 4 November, 2025, Taiwanese prosecutors announced that they had detained 25 individuals and seized T$4.5 billion (approximately US$147 million) in assets tied to the Prince Group. The seized assets include 26 high-end cars, properties, and bank accounts tied to the network and to Chen in relation to money laundering and forced labour offences.

### Thailand

21.     On 3 December, 2025, the Thai authorities announced that they had seized assets worth more than 10,157 million baht (approximately US$318 million) and issued arrest warrants for 42 individuals linked to transnational online scam operations connected to Chen and Cambodian nationals Kok An and Yim Leak. As of 3 December, 2025, 29 individuals had been arrested. The seizures include shares in Bangchak Corporation Limited worth 6 billion baht (approximately US$188 million). Thailand's Anti-Money Laundering Office (AMLO) stated that investigators had found "*information on networks of online fraud, human trafficking, and money-laundering*" that were linked to Chen and his associates.

**The effect of the multi-jurisdictional actions**

22.     These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating transnational organised crime, human trafficking, forced labour, and large-scale financial fraud.

7

The scale and coordination of these actions across at least six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network

23. In total, as of 9 December, 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The role of BVI companies**

24. The OFAC has determined that the BVI companies form part of a complex network of holding companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

25. In the US Complaint, the US DOJ alleged that Chen and his associates also laundered fraudulent proceeds through several companies including companies in the BVI which are under their control.  It alleged further that these companies do not serve any real purpose other than to launder funds. Two BVI Companies were named in the US Proceedings - Amber Hill Ventures Limited **("Amber Hill")** and Lateral Bridge Global Limited **("LBG")**.

26. Amber Hill and LBG are said to be controlled by two of Chen's associates, who are also defendants in the US Civil Proceedings. The US Complaint discloses that personnel from the Federal Bureau of Investigation ("FBI") have conducted extensive blockchain tracing to analyse the movements of the Prince Group's cryptocurrency.  The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin which the US DOJ seeks to forfeit flowed through wallets which were controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

27. It is also alleged that Amber Hill had a banking relationship with a financial institution in the United States. It was recorded in the account opening documents with that financial institution that Amber Hill's business activities consisted of "*[p]roprietary trading and investing*," and its anticipated deposit and withdrawal activity would be approximately $2 million each. However, according to account statements, in February 2020, Amber Hill's account with that financial

8

institution had approximately $22.5 million in deposits and $21.8 million in withdrawals. Amber Hill was struck from the register and dissolved on 10 November, 2023.

**THE APPLICATION**

28.     The Application is made by the Attorney General on the ground that (i) it is just and equitable that joint liquidators be appointed over the Company pursuant to section 162 (1) (b) of the Act and (ii) it is in the public interest that the joint liquidators are appointed pursuant to section 162 (1) (c) of the Act.

**Just and equitable ground**

29.     Section 162(1)(b) of the Insolvency Act, 2003 provides that the Court may appoint a liquidator of a company if "the Court is of the opinion that it is just and equitable that the company should be liquidated."

30.     The Attorney General is listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(b) of the Act.

31.     It is just and equitable that the Company should be placed into liquidation for the following reasons:

   a.     Chen is the Company's sole shareholder and Xia Zeng is the Company's sole director. Chen is alleged to be the mastermind of the Prince Group.  He has been criminally indicted in the United States and is subject to personal sanctions by both the United States and the United Kingdom.

   b.     The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities, to include forced labour, human trafficking, large-scale fraud, and money laundering on a massive international scale.

   c.     The BVI companies including the Company are alleged to have been established and operated to assist Chen and the Prince Group which has defrauded numerous vulnerable victims of billions of US dollars.

   d.     Despite the enforcement actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on the allegations is free

9

to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

e. The activities of some of the companies in the Prince Group have been the subject of civil and criminal enforcement actions in multiple jurisdictions, with authorities in six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

f. The Company is alleged to be a shell company which was used solely as a vehicle for the fraudulent scheme.

g. The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf, and identify potential claims against third parties.

h. The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

i. Independent liquidators are necessary to ensure proper coordination with regulatory and law enforcement authorities and liquidators, trustees, or receivers appointed in the BVI and other jurisdictions, given the multi-jurisdictional nature of the scheme and the actions taken by various authorities in several jurisdictions.

j. Independent liquidators would enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed as part of a collective process.

k. Given the fraudulent nature of the scheme, there are likely to be voidable transactions, preferences, and other claims that independent liquidators could pursue for the benefit of the victims and creditors.

32. Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that its affairs are properly investigated and wound up under the supervision of this Honourable Court.

**Public Interest ground**

33. Section 162(1)(c) of the Act gives the Court the discretion to appoint a liquidator of a company if it is of the opinion that it is in the public interest for a liquidator to be appointed.

34.    The Attorney General is also listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(c) of the Act.

35.    The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

36.    BVI companies including, the Company are alleged to have been used as vehicles in what has been described by international law enforcement authorities as one of the largest fraudulent investment schemes in recent history.  The scheme has caused billions of dollars in losses to victims worldwide and involved egregious human rights abuses.  They are alleged to have been used to launder and/or hold the proceeds of the horrific crimes committed by Chen and his associates, including human trafficking, forced labour, aggravated identity theft, international fraud designed to scam unsuspecting victims of their lifesavings and money laundering.  These criminal and fraudulent activities are inherently objectionable and are contrary to clearly identifiable public interest.

37.    The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the BVI as a financial centre and threatens confidence in BVI incorporated companies and the BVI's regulatory framework.

38.    The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for fraudulent purposes.

39.    The appointment of liquidators will:
    a.    facilitate cooperation with enforcement authorities, regulators, and insolvency practitioners in the BVI and other jurisdictions, demonstrating the BVI's commitment to international cooperation in combating financial fraud;
    b.    ensure that the Company's affairs are properly investigated and that appropriate steps are taken to recover assets and maximise returns to defrauded investors;
    c.    enable a proper investigation into how the Company was used in the fraudulent scheme, which may assist in preventing similar schemes in the future.

40.    Given that enforcement authorities in at least six countries have taken action and frozen or seized

11

assets valued at over US$16 billion, it is in the public interest that BVI as the jurisdiction of incorporation of the Company, takes prompt and decisive action through the appointment of liquidators.

41.  The scale of this fraud and the international coordination of related actions make it imperative, from a public interest perspective, that the BVI positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

42.  In all the circumstances, it is not only just and equitable but also in the public interest that Joint liquidators be appointed over the Company to prevent it from being used to further Chen's and the Prince Group's criminal enterprise.

43.  If appointed, the joint liquidators would be able to take control of the Company, take the necessary steps in the BVI or overseas to secure and preserve its books and records and secure its assets for the benefit of the victims of the crimes perpetuated by the Prince Group. As officers of the court, they would also be able to independently investigate claims against the Company, marshal records, ensure that the Company complies with BVI laws and regulations and respond to any court process.

**Proposed liquidators**

44.  Mr. James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110, Mr. Paul Pretlove and Mr. David Standish, both of Interpath Ltd, 10 Fleet Place, London EC4M 7RB who to the best of the Applicant's knowledge and belief are eligible insolvency practitioners have all consented to be appointed as joint liquidators of the Company.

45.  In the circumstances, it is just and equitable and in the public's interest to grant the order which the Attorney General seeks, for the appointment of joint liquidators over the Company.

A draft of the order sought is attached.

This application is supported by the affidavit of Attorney General Dawn J Smith.

12

The names and addresses of the persons on whom it is intended to serve the application are as follows:

**Golden Ascend International Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

The names and addresses of the persons required to be given notice of this application pursuant to the Act and the Rules (if any) are as follows:

**Golden Ascend International Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

This Application is filed by O'Neal Webster, Solicitors for the Applicant, whose address for service is 2nd

Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands.  REF:

101538

_____        Dated: January 2, 2026
Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

13

THE EASTERN CARIBBEAN SUPREME

COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/

**IN THE MATTER OF GOLDEN ASCEND INTERNATIONAL LIMITED**

**AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS**

BETWEEN:

**THE  ATTORNEY GENERAL**

Applicant

**AND**

**GOLDEN ASCEND INTERNATIONAL LIMITED**

Respondent

_____

**ORIGINATING APPLICATION**

_____

O'Neal Webster

Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 l Fax: (284) 393 5805
www.onealwebster.com

14

**Case Number :BVIHCOM2026/0008**

The Insolvency Rules 2005

**ORDINARY APPLICATION (EX-PARTE)**

**(Company)**

Rule 14

**Submitted Date:04/01/2026 11:58**

**Filed Date:05/01/2026 08:38**

**Fees Paid:0.00**

**FILED**
**HIGH COURT**
**TERRITORY OF**
**THE VIRGIN ISLANDS**

| | |
|---|---|
| **THE EASTERN CARIBBEAN SUPREME COURT** **IN THE HIGH COURT OF JUSTICE** **VIRGIN ISLANDS** **COMMERCIAL DIVISION** | |
| Matter No.: | BVIHC(COM)    of 2026 |
| Applicant: | **THE ATTORNEY GENERAL** |
| Respondent: | **GOLDEN ASCEND INTERNATIONAL LIMITED** |

In the matter of:

| |
|---|
| **GOLDEN ASCEND INTERNATIONAL LIMITED** |

| |
|---|
| For Court Use Only |
| **To:  GOLDEN ASCEND INTERNATIONAL LIMITED,** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands. |
| **This Application will be heard by the Commercial Court Judge at Road Town, Tortola** **British Virgin Islands** **on the            day of                     2026    at            o'clock.** |
| **If you do not attend at the time shown the Court may make an order in your absence** |

We, O'Neal Webster, on behalf of the Applicant, **the Attorney General of the Virgin Islands ("the Attorney General")**, apply pursuant to section 170 of the Insolvency Act 2003 (the "Act") for the following orders that:

1. James Drury,  a Virgin Islands ("BVI") licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola,  Virgin Islands,

1

VG1110; and Paul Pretlove and David Standish both United Kingdom ("UK") licensed insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB to be appointed as joint provisional liquidators of Golden Ascend International Limited **("the Company")** with immediate effect.

2.    The powers afforded to the said joint provisional liquidators shall be as set out in Schedule 2 of the Act as varied by Schedule 3, and as further varied by this Order.

3.    An order that the joint provisional liquidators have the power to:

   a.    consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the joint provisional liquidators and the Attorney General which is attached hereto **("the Protocol")**.

   b.    cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4.    An order that the costs of the liquidation, including the proper fees and disbursements of the joint liquidators, the Attorney General's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

5.    An order that the costs of the application be costs in the liquidation.

6.    Such further order as the court deems appropriate.

A draft of the order sought is attached.

The grounds upon which this order is sought are set out in the affidavit of the Attorney General Dawn J. Smith filed on 2nd January, 2026, but in brief are as follows:

**Introduction**

1.    There are good prima facie reasons as set out in the originating application for the eventual appointment of full liquidators on the grounds of public interest and on the grounds that it is just

2

and equitable that they be appointed over the Company. A summary of these reasons is set out below.

**The Company and the Prince Group**

2.    The Company was incorporated under the laws of the Virgin Islands **("BVI")** on 18 April 2018. Its registered office is located at Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, BVI, VG1110. The sole shareholder of the Company is Chen Zhi, **("Chen").**

3.    The Company is alleged to be a member of a transnational criminal organisation that is headed by the Prince Holding Group **("the Prince Group")** which is a Cambodian corporate conglomerate comprised of several companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan. Chen is the mastermind of the Prince Group's transnational criminal organisation and its chairman.

**Action in the USA and other jurisdictions**

4.    On 14 October, 2025, the United States Department of Justice **("US DOJ"),** the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** and the United Kingdom Government announced coordinated actions targeting the Prince Group.

5.    The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York **("the NY District Court")** on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering **("the US Indictment").** Concurrently, the US DOJ filed a civil forfeiture complaint **("the US Complaint")** seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group. The criminal and civil proceedings will be referred together as the "**the US Proceedings**".

6.    On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation. The effect of this designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them. The targets include Chen and the Company.

3

7.      On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group. In doing so it noted that Chen and his associates have incorporated companies in the BVI and own properties in London including a £12 million mansion on Avenue Road in North London, a £100 million office building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and in Nine Elms in South London.

8.      News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen, the Prince Group, and its related entities and companies. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the coordinated global response to combat transnational organised crime.

9.      These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating transnational organised crime, human trafficking, forced labour, and large-scale financial fraud. The scale and coordination of these actions across six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network.

10.    In total, as of 9 December 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand) have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The allegation against Chen, his associates and companies within the Prince Group**

11.    In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and criminal activities including cryptocurrency investment fraud, human trafficking, money laundering, wire fraud, bank fraud, forced labour and, illegal online gambling. It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers. The scammers disappeared after taking almost every dollar they could from their

4

victims.

12.     The US DOJ also alleges that the fraudulent activities carried out by the Prince Group resulted in billions of dollars in losses incurred by victims in the United States and around the world. Chen and his associates are alleged to use the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

13.     To effectuate their fraudulent schemes, it is alleged in the US Proceedings that Chen and his associates:

   a.     forced migrant workers who were – not always, but often – victims themselves of human trafficking, to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

   b.     frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

   c.     used their political influence in multiple countries to protect their criminal enterprise; and

   d.     paid bribes to foreign public officials to avoid disruption by law enforcement.

**The role of BVI Companies in the Prince Group**

14.     The OFAC determined that the BVI companies form part of a complex network of companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

15.     In the US complaint, the US DOJ alleged that Chen and his associates laundered the fraudulent proceeds of their crime through several companies in the BVI, Cayman, Cambodia and Hong Kong, which are under their control. It alleged further that these companies do not serve any real purpose other than to launder the proceeds of their criminal and fraudulent activities. Two BVI Companies are named in the US Complaint - Amber Hill Ventures Limited ("**Amber Hill**") and Lateral Bridge Global Limited **("LBG")**.

5

16.     The US Complaint discloses that personnel from the Federal Bureau of Investigation ("FBI") have conducted extensive blockchain tracing to analyse the movements of the Prince Group's cryptocurrency.  The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin which the US DOJ seeks to forfeit flowed through wallets which were controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

**It is just and equitable that liquidators be appointed over the Company**

17.     The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities to include forced labour, human trafficking, large-scale fraud, and money laundering on a massive international scale.

18.     The activities of some of the companies in the Prince Group have been the subject of civil and criminal actions in multiple jurisdictions, with authorities in at least six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

19.     The BVI companies including the Company are alleged to have been established and operated to assist Chen and the Prince Group which has defrauded numerous vulnerable victims of billions of US dollars.

20.     Despite the  actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on allegations is free to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

21.     The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf for the benefit of the victims of the fraud; and to identify potential claims against third parties.

22.     The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

6

23.    Independent liquidators are necessary to ensure proper coordination with regulatory and enforcement authorities and liquidators, trustees, or receivers appointed in the Virgin Islands and other jurisdictions, given the multi-jurisdictional nature of the scheme and the   actions. Independent liquidators would also enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed.

24.    Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that its affairs are properly investigated and wound up under the supervision of this Honourable Court.

**It is in the public interest that liquidators be appointed over the Company**

25.    The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

26.    The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the Virgin Islands as a financial centre and threatens confidence in BVI companies and the BVI's regulatory framework.

27.    The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for nefarious purposes and with its commitment to international cooperation and combating serious transnational crime.

28.    Given that regulatory and law enforcement authorities in at least six countries have taken action and frozen or seized assets valued at over US$16 billion, it is in the public interest that the BVI as the jurisdiction of incorporation of the Company takes prompt and decisive action through the appointment of liquidators.

29.    The scale of this fraud and the international coordination of actions make it imperative, from a public interest perspective, that the BVI  positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

7

**The appointment of joint provisional liquidators**

30. It is essential that joint provisional liquidators be appointed over the Company immediately (without notice to it and its principals) and before the originating application is heard and determined for the following reasons:

   a. The Company continues to be under the control of Chen and his associates and as a result, they can use or continue to use it to further the criminal enterprise thereby continuing to inflict public harm.

   b. Given the serious allegations set out in this application, the sanctions imposed by the United States and the UK Government, the US Indictment, and the US Complaint, it is appropriate and necessary that provisional liquidators be appointed immediately to:

   (i) immediately take full control of the Company;

   (ii) identify and preserve its assets that may represent proceeds of crime by preventing further movement, concealment, or dissipation of those assets;

   (iii) take control of its books and records;

   (iv) conduct thorough investigations into its past transactions; and

   (v) review banking records, asset transfers, and corporate dealings to identify and locate the potential money laundering activities.

   c. The information and evidence gathered by the liquidators may provide crucial support for law enforcement authorities, both in the BVI and internationally, to apply for freezing orders, forfeiture orders, and other remedies. In this case, given that the United States has already filed a civil complaint seeking forfeiture of 127,271 Bitcoin valued at approximately US$15 billion allegedly connected to the Prince Group's criminal activities, the work of the liquidators could materially assist in tracing assets and preserving evidence relevant to that and other actions.

   d. The appointment of provisional liquidator over the Company and other BVI companies which are owned and controlled by Chen would align with the BVI's National AML/CFT Policy and its commitment to international cooperation in combating serious transnational crime.

   e. The coordinated actions taken by the US DOJ and UK Government on 14 October, 2025 signal the seriousness with which these major jurisdictions view the alleged criminal activities of the Prince Group. The appointment of provisional liquidators by this

8

Honourable Court would demonstrate that the BVI is equally committed to ensuring that its corporate structures are not used as vehicles for serious criminality and would facilitate cooperation with international authorities in their ongoing investigations and asset recovery efforts.

**Urgency**

31. The public announcements of the US Civil Proceedings, OFAC sanctions, and UK sanctions on 14 October 2025 together with actions taken in other jurisdictions have no doubt put Chen and his associates, who are alleged to be sophisticated criminals, on notice of the scrutiny being applied to the Prince Group network and its corporate structures.

32. The Company is likely to have received proceeds of the criminal and fraudulent activities and to have documentation that may assist in recovering the proceeds of the crime. There is a real and substantial risk that absent the immediate appointment of provisional liquidators, assets held by or through the BVI companies, including the Company will be transferred, concealed, or dissipated and documents will be destroyed or concealed. This real and substantial risk will increase once the Company is served with the originating application,

33. The appointment of provisional liquidators will immediately remove control from Chen and his associates and place the Company under the supervision and control of officers of this Court, thereby protecting the integrity of any investigation and preserving assets for the benefit of the victims of Chen and the Prince Group's fraudulent and criminal activities.

34. The appointment of joint provisional liquidators is appropriate given the number of BVI companies involved, the complexity of the alleged corporate structure spanning multiple jurisdictions, the international nature of the investigations and actions, and the need for extensive expertise in tracing assets and investigating potential money laundering activities.

**The Proposed provisional liquidators**

35. The Attorney General proposes that James Drury, a BVI licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110; and Paul Pretlove and David Standish, both UK licensed

9

insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB be appointed as joint provisional liquidators of the Company.

**Conclusion**

36.     In all the circumstances, it is just and convenient and in the public's interest, that this Honourable Court grants the order which the Attorney General seeks in this application.

A draft of the order sought is attached.

This application is supported by the affidavit of Attorney General Dawn J. Smith.

The names and addresses of the persons on whom it is intended to serve the application are as follows:

This Application is filed by O'Neal Webster, Solicitors for the Applicant whose address for service is 2nd Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands. REF: NW/LG/101538.

_____                              Dated: January 2, 2026

Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

10

THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/


**IN THE MATTER OF GOLDEN ASCEND INTERNATIONAL LIMITED**


**AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS**.


BETWEEN:


**THE ATTORNEY GENERAL**

Applicant

**AND**

**GOLDEN ASCEND INTERNATIONAL LIMITED**

Respondent


_____

**EX-PARTE ORDINARY APPLICATION
FOR JOINT PROVISIONAL LIQUIDATORS**
_____




Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 l Fax: (284) 393 5805
www.onealwebster.com

11

**Case Number :BVIHCOM2026/0009**

```
┌──────────────────────┐
│        FILED         │
│    HIGH COURT        │
│    TERRITORY OF      │
│  THE VIRGIN ISLANDS  │
└──────────────────────┘
```

The Insolvency Rules 2005

**ORIGINATING APPLICATION**

**(Company)**

Rule 14

**Submitted Date:04/01/2026 12:04**

**Filed Date:05/01/2026 08:39**

**Fees Paid:0.00**

| THE EASTERN CARIBBEAN SUPREME COURT IN THE HIGH COURT OF JUSTICE VIRGIN ISLANDS COMMERCIAL DIVISION | |
|---|---|
| Matter No.: | BVIHC(COM)    of 2026 |
| Applicant: | **THE ATTORNEY GENERAL** |
| Respondent: | **HARMONIC STATE LIMITED** |

In the matter of:

| **HARMONIC STATE LIMITED** |
|---|

| For Court Use Only |
|---|
| **To: HARMONIC STATE LIMITED,** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands.<br><br>**This Application will be heard by the Commercial Court Judge at Road Town, Tortola British Virgin Islands**<br>**on the            day of                    2026    at              o'clock.**<br><br>**If you do not attend at the time shown the Court may make an order in your absence** |

The Applicant, the Attorney General of the Virgin Islands (**"Attorney General"**) of TTT Building, Wickhams Cay 1, Road Town, Tortola, Virgin Islands VG1110 applies to the Court for:

1.    An order pursuant to sections 162(1) (b) and (c) of the Insolvency Act, Revised Edition 2020 (**"the Act"**) that Paul Pretlove, James Drury and David Standish, be appointed as joint liquidators of Harmonic State Limited (**"the Company"**), a company incorporated under the laws of the Virgin Islands (**"BVI"**). James Drury is a BVI licensed insolvency practitioner of Interpath (BVI) Limited, PO

1

437

Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110. Paul Pretlove and David Standish are United Kingdom ("UK") licensed insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB acting as overseas insolvency practitioners as defined in the Act.

2.    An order that the joint liquidators be given all powers set out in Schedule 2 of the Act, such powers to be exercisable without the sanction of the Court and such other powers as this Honourable Court deems fit.

3.    An order that the joint liquidators have the power to:

a.    consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the liquidators and the Attorney General which is attached hereto **("the Protocol")**.

b.    cooperate and communicate with law enforcement and regulatory authorities in the BVI and in other jurisdictions.

4.    An order that the costs of the liquidation, including the proper fees and disbursements of the joint liquidators and the Attorney General's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims

5.    An order that the costs of the application be costs in the liquidation.

6.    Such further order as the court deems appropriate.

The grounds upon which this order is sought are set out in the affidavit of Attorney General, Dawn J. Smith filed on 2 January 2026 and are summarised as follows:

**THE PARTIES**

1.    The Attorney General is the principal legal adviser to the Government of the Virgin Islands (**"the Government"**) pursuant to section 58 of the Virgin Islands Constitution Order, 2007, and has overall responsibility for all aspects of civil litigation on behalf of the Government.

2

**438**

2.    The Company was incorporated under the laws of the BVI on 21 January 2020. Its registered office is located at Vistra Corporate Services Centre **("Vistra")**, Wickhams Cay II, Road Town, Tortola, BVI, VG1110. The Company is alleged to be a member of a transnational criminal organisation that is headed by Prince Holding Group Limited **("the Prince Group"),** which is a Cambodian corporate conglomerate that comprises several companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan.

3.    The chairman of the Prince Group is Chen Zhi **("Chen").** The Directors of the Company are Chen, Zhou Yun and Wu An Ming. Chen is the Company's sole shareholder.

## BACKGROUND

4.    The background is comprehensively set out in the indictment and the verified complaint filed by the United States Department of Justice **("US DOJ")** on October 14, 2025 and in the announcement issued by the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** dated October 13, 2025. The background is summarised below.

## Action in the United States

5.    On 14 October, 2025, the United States Department of Justice **("US DOJ"),** the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** and the United Kingdom Government announced coordinated actions targeting the Prince Group.

6.    The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York **("the NY District Court")** on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering **("the US Indictment").** Concurrently, the US DOJ filed a civil forfeiture complaint **("the US Complaint")** seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group. The criminal and civil proceedings will be referred to together as **"the US Proceedings."**

7.    In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and criminal activities including cryptocurrency investment fraud, human trafficking, money

3

439

laundering, wire fraud, bank fraud, forced labour and, illegal online gambling. It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers. The scammers disappeared after taking almost every dollar they could from their victims.

8.    To effectuate the schemes, it is alleged in the US Proceedings that Chen and his associates:

    a.    built and operated forced-labour scam compounds across Cambodia in which workers were made to execute the scams at high volumes. The scam compounds housed vast dormitories surrounded by high walls and barbed wire, and functioned as violent forced labour camps;

    b.    forced migrant workers who were – not always, but often – victims themselves of human trafficking to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

    c.    frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

    d.    used their political influence in multiple countries to protect their criminal enterprise; and

    e.    paid bribes to foreign public officials to avoid disruption by law enforcement.

9.    The indictment alleges that Chen maintained meticulous records of the compounds' operations, including ledgers of the tracking profits generated from the fraud schemes, documents detailing "phone farms" used in the schemes, and images depicting methods of beating and torture used against workers.

10.    The US DOJ alleges that the schemes carried out by the Prince Group resulted in billions of dollars in losses incurred by victims in the United States and around the world. The documents in the US Proceedings allege that proceeds from these criminal activities have been laundered through various means, including cryptocurrency (using "spraying" and "funneling" techniques), online

4

440

gambling operations, and cryptocurrency mining operations. Chen, his associates and companies within the Prince Group, "washed" and returned the fraudulent proceeds to the Prince Group. The "washing" was done by using the Prince Group's vast network of seemingly legitimate business enterprises to launder its criminal proceeds. One common method was to collect the fraudulent proceeds in the form of bitcoin or stablecoins and then off-ramp them into conventional currencies, for example, the US dollar. The launderers then used that cash to purchase clean bitcoin or other cryptocurrencies. Chen was directly involved in coordinating these laundering efforts.

11.   Chen and his associates subsequently used the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

12.   On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation.  The effect of the designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them.  The targets include Chen and the Company. The OFAC noted that:

   a.   Americans have lost at least $10 billion to Southeast Asia-based scam operations in 2024, a 66 percent increase over the prior year, with scams like those perpetrated by Prince Group being particularly significant.

   b.   The Prince Group remained a dominant player in Cambodia's scam economy and has controlled illicit financial flows of billions of dollars.

   c.   The actions taken by OFAC and Financial Crimes Enforcement Network (FinCEN) were in close coordination with the United Kingdom's Foreign, Commonwealth, and Development Office ("FCDO"), which took complementary actions against criminal networks responsible for targeting citizens of the United States and other allied nations through online scams and the laundering of stolen funds.

**Action in the UK**

13.   On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group.  In doing so it noted that Chen and his associates have incorporated companies in the BVI and own properties

5

441

in London, including a £12 million mansion on Avenue Road in North London, a £100 million office building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and Nine Elms in South London.

14.     The Foreign Secretary Yvette Cooper stated that:

> "The masterminds behind these horrific scam centres are ruining the lives of vulnerable people and buying up London homes to store their money.
>
> Together with our US allies, we are taking decisive action to combat the growing transnational threat posed by this network – upholding human rights, protecting British nationals and keeping dirty money off our streets."

15.     The Fraud Minister Lord Hanson said:

> "These sanctions prove our determination to stop those who profit from this activity, hold offenders accountable, and keep dirty money out of the UK. Through our new, expanded Fraud Strategy and the upcoming Global Fraud Summit, we will go even further to disrupt corrupt networks and protect the public from shameless criminals."

16.     The effect of these sanctions is to prevent the transfer of these properties, freeze any business in which Chen and the Prince Group are involved and lock Chen and the Prince Group transnational criminal network out of the UK's financial system.

## Action in other jurisdictions

17.     News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen, the Prince Group, and its related entities and companies. These actions are set out in paragraphs 19 to 22 below. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the global response to combat transnational organised crime.

### Singapore

18.     On 31 October, 2025, Singapore police announced that they had seized over $150 million (approximately US$115 million) in assets linked to the Prince Group. The seized assets include six properties, bank accounts, securities accounts, and cash which are said to represent the proceeds of money laundering and forgery offences committed by Chen and the Prince Group. According to the Monetary Authority of Singapore (MAS), financial institutions had previously filed

6

442

suspicious transaction reports, and a number of suspicious accounts had been closed. The Singapore Police Force stated that investigations into Chen and his associates commenced in 2024 after it received intelligence from the Suspicious Transaction Reporting Office (STR).

### Hong Kong

19.    On 4 November, 2025, Hong Kong authorities announced that they had frozen assets worth HK$2.75 billion (approximately US$354 million), which, based on intelligence and information gathered from multiple sources, are suspected to represent proceeds of international cross-border telecommunications fraud and money laundering activities committed by the Prince Group. The frozen assets include cash, stocks, and funds held by individuals and corporate entities. At least 18 Hong Kong companies were blacklisted by the United States in connection with the Prince Group, including two listed companies - *"Khoon Group and Geotech Holdings"*.

### Taiwan

20.    On 4 November, 2025, Taiwanese prosecutors announced that they had detained 25 individuals and seized T$4.5 billion (approximately US$147 million) in assets tied to the Prince Group. The seized assets include 26 high-end cars, properties, and bank accounts tied to the network and to Chen in relation to money laundering and forced labour offences.

### Thailand

21.    On 3 December, 2025, the Thai authorities announced that they had seized assets worth more than 10,157 million baht (approximately US$318 million) and issued arrest warrants for 42 individuals linked to transnational online scam operations connected to Chen and Cambodian nationals Kok An and Yim Leak. As of 3 December, 2025, 29 individuals had been arrested. The seizures include shares in Bangchak Corporation Limited worth 6 billion baht (approximately US$188 million). Thailand's Anti-Money Laundering Office (AMLO) stated that investigators had found *"information on networks of online fraud, human trafficking, and money-laundering"* that were linked to Chen and his associates.

### The effect of the multi-jurisdictional actions

22.    These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating transnational organised crime, human trafficking, forced labour, and large-scale financial fraud.

7

The scale and coordination of these actions across at least six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network

23.    In total, as of 9 December, 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The role of BVI companies**

24.    The OFAC has determined that the BVI companies form part of a complex network of holding companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

25.    In the US Complaint, the US DOJ alleged that Chen and his associates also laundered fraudulent proceeds through several companies including companies in the BVI which are under their control. It alleged further that these companies do not serve any real purpose other than to launder funds. Two BVI Companies were named in the US Proceedings - Amber Hill Ventures Limited **("Amber Hill")** and Lateral Bridge Global Limited **("LBG")**.

26.    Amber Hill and LBG are said to be controlled by two of Chen's associates, who are also defendants in the US Civil Proceedings. The US Complaint discloses that personnel from the Federal Bureau of Investigation ("FBI") have conducted extensive blockchain tracing to analyse the movements of the Prince Group's cryptocurrency. The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin which the US DOJ seeks to forfeit flowed through wallets which were controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

27.    It is also alleged that Amber Hill had a banking relationship with a financial institution in the United States. It was recorded in the account opening documents with that financial institution that Amber Hill's business activities consisted of *"[p]roprietary trading and investing,"* and its anticipated deposit and withdrawal activity would be approximately $2 million each. However, according to account statements, in February 2020, Amber Hill's account with that financial

8

444

institution had approximately $22.5 million in deposits and $21.8 million in withdrawals. Amber Hill was struck from the register and dissolved on 10 November, 2023.

## THE APPLICATION

28.    The Application is made by the Attorney General on the ground that (i) it is just and equitable that joint liquidators be appointed over the Company pursuant to section 162 (1) (b) of the Act and (ii) it is in the public interest that the joint liquidators are appointed pursuant to section 162 (1) (c) of the Act.

### Just and equitable ground

29.    Section 162(1)(b) of the Insolvency Act, 2003 provides that the Court may appoint a liquidator of a company if "the Court is of the opinion that it is just and equitable that the company should be liquidated."

30.    The Attorney General is listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(b) of the Act.

31.    It is just and equitable that the Company should be placed into liquidation for the following reasons:

    a.    Available records reveal that The Directors of the Company are Chen, Zhou Yun and Wu An Ming. Chen is the Company's sole shareholder. Chen is alleged to be the mastermind of the Prince Group. He has been criminally indicted in the United States and is subject to personal sanctions by both the United States and the United Kingdom.

    b.    The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities, to include forced labour, human trafficking, large-scale fraud, and money laundering on a massive international scale.

    c.    The BVI companies including the Company are alleged to have been established and operated to assist Chen and the Prince Group which has defrauded numerous vulnerable victims of billions of US dollars.

    d.    Despite the enforcement actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on the allegations is free

9

445

to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

e. The activities of some of the companies in the Prince Group have been the subject of civil and criminal enforcement actions in multiple jurisdictions, with authorities in six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

f. The Company is alleged to be a shell company which was used solely as a vehicle for the fraudulent scheme.

g. The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf, and identify potential claims against third parties.

h. The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

i. Independent liquidators are necessary to ensure proper coordination with regulatory and law enforcement authorities and liquidators, trustees, or receivers appointed in the BVI and other jurisdictions, given the multi-jurisdictional nature of the scheme and the actions taken by various authorities in several jurisdictions.

j. Independent liquidators would enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed as part of a collective process.

k. Given the fraudulent nature of the scheme, there are likely to be voidable transactions, preferences, and other claims that independent liquidators could pursue for the benefit of the victims and creditors.

32. Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that its affairs are properly investigated and wound up under the supervision of this Honourable Court.

**Public Interest ground**

33. Section 162(1)(c) of the Act gives the Court the discretion to appoint a liquidator of a company if it is of the opinion that it is in the public interest for a liquidator to be appointed.

10

446

34. The Attorney General is also listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(c) of the Act.

35. The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

36. BVI companies including, the Company are alleged to have been used as vehicles in what has been described by international law enforcement authorities as one of the largest fraudulent investment schemes in recent history. The scheme has caused billions of dollars in losses to victims worldwide and involved egregious human rights abuses. They are alleged to have been used to launder and/or hold the proceeds of the horrific crimes committed by Chen and his associates, including human trafficking, forced labour, aggravated identity theft, international fraud designed to scam unsuspecting victims of their lifesavings and money laundering. These criminal and fraudulent activities are inherently objectionable and are contrary to clearly identifiable public interest.

37. The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the BVI as a financial centre and threatens confidence in BVI incorporated companies and the BVI's regulatory framework.

38. The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for fraudulent purposes.

39. The appointment of liquidators will:
   a. facilitate cooperation with enforcement authorities, regulators, and insolvency practitioners in the BVI and other jurisdictions, demonstrating the BVI's commitment to international cooperation in combating financial fraud;
   b. ensure that the Company's affairs are properly investigated and that appropriate steps are taken to recover assets and maximise returns to defrauded investors;
   c. enable a proper investigation into how the Company was used in the fraudulent scheme, which may assist in preventing similar schemes in the future.

40. Given that enforcement authorities in at least six countries have taken action and frozen or seized

11

447

assets valued at over US$16 billion, it is in the public interest that BVI as the jurisdiction of incorporation of the Company, takes prompt and decisive action through the appointment of liquidators.

41.    The scale of this fraud and the international coordination of related actions make it imperative, from a public interest perspective, that the BVI positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

42.    In all the circumstances, it is not only just and equitable but also in the public interest that Joint liquidators be appointed over the Company to prevent it from being used to further Chen's and the Prince Group's criminal enterprise.

43.    If appointed, the joint liquidators would be able to take control of the Company, take the necessary steps in the BVI or overseas to secure and preserve its books and records and secure its assets for the benefit of the victims of the crimes perpetuated by the Prince Group. As officers of the court, they would also be able to independently investigate claims against the Company, marshal records, ensure that the Company complies with BVI laws and regulations and respond to any court process.

**Proposed liquidators**

44.    Mr. James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110, Mr. Paul Pretlove and Mr. David Standish, both of Interpath Ltd, 10 Fleet Place, London EC4M 7RB who to the best of the Applicant's knowledge and belief are eligible insolvency practitioners have all consented to be appointed as joint liquidators of the Company.

45.    In the circumstances, it is just and equitable and in the public's interest to grant the order which the Attorney General seeks, for the appointment of joint liquidators over the Company.

A draft of the order sought is attached.

This application is supported by the affidavit of Attorney General Dawn J Smith.

12

448

The names and addresses of the persons on whom it is intended to serve the application are as follows:

**Harmonic State Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

The names and addresses of the persons required to be given notice of this application pursuant to the Act and the Rules (if any) are as follows:

**Harmonic State Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

This Application is filed by O'Neal Webster, Solicitors for the Applicant, whose address for service is 2nd Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands.  REF: 101538

Dated: January 2, 2026

_____
Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

13

449

THE EASTERN CARIBBEAN SUPREME

COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/


**IN THE MATTER OF HARMONIC STATE LIMITED**


**AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS**


BETWEEN:


**THE ATTORNEY GENERAL**

Applicant

**AND**

**HARMONIC STATE LIMITED**

Respondent

---

**ORIGINATING APPLICATION**

---



O'Neal
Webster

Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 I Fax: (284) 393 5805
www.onealwebster.com

14

450

**Case Number :BVIHCOM2026/0009**

The Insolvency Rules 2005

**ORDINARY APPLICATION (EX-PARTE)**

**(Company)**

Rule 14

**Submitted Date:04/01/2026 12:11**

**Filed Date:05/01/2026 08:39**

**Fees Paid:0.00**

FILED
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS

| THE EASTERN CARIBBEAN SUPREME COURT IN THE HIGH COURT OF JUSTICE VIRGIN ISLANDS COMMERCIAL DIVISION | |
|---|---|
| Matter No.: | BVIHC(COM)    of 2026 |
| Applicant: | THE ATTORNEY GENERAL |
| Respondent: | HARMONIC STATE LIMITED |

In the matter of:

| HARMONIC STATE LIMITED |
|---|

| For Court Use Only |
|---|
| **To: HARMONIC STATE LIMITED,** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands. <br><br> **This Application will be heard by the Commercial Court Judge at Road Town, Tortola** <br> **British Virgin Islands** <br> on the          day of                    2026    at              o'clock. <br><br> **If you do not attend at the time shown the Court may make an order in your absence** |

We, O'Neal Webster, on behalf of the Applicant, the Attorney General of the Virgin Islands **("the Attorney General")**, apply pursuant to section 170 of the Insolvency Act 2003 (the "Act") for the following orders that:

1.  James Drury, a Virgin Islands ("BVI") licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110; and Paul Pretlove and David Standish both United Kingdom ("UK") licensed insolvency

1

7

practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB to be appointed as joint provisional liquidators of Harmonic State Limited **("the Company")** with immediate effect.

2. The powers afforded to the said joint provisional liquidators shall be as set out in Schedule 2 of the Act as varied by Schedule 3, and as further varied by this Order.

3. An order that the joint provisional liquidators have the power to:

   a. consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the joint provisional liquidators and the Attorney General which is attached hereto **("the Protocol")**.

   b. cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4. An order that the costs of the liquidation, including the proper fees and disbursements of the joint liquidators, **the Attorney General's costs of complying with the Protocol be paid out of assets of** the Company in priority to all other claims.

5. An order that the costs of the application be costs in the liquidation.

6. Such further order as the court deems appropriate.

A draft of the order sought is attached.

The grounds upon which this order is sought are set out in the affidavit of the Attorney General Dawn J. Smith filed on 30 December 2025, but in brief are as follows:

**Introduction**

1. There are good prima facie reasons as set out in the originating application for the eventual appointment of full liquidators on the grounds of public interest and on the grounds that it is just and equitable that they be appointed over the Company. A summary of these reasons is set out below.

2

8

**The Company and the Prince Group**

2.  The Company was incorporated under the laws of the Virgin Islands **("BVI")** on 21 January 2020. Its registered office is located at Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, BVI, VG1110. The Directors of the Company are Chen Zhi **("Chen")**, Zhou Yun and Wu An Ming. Chen is the Company's sole shareholder.

3.  The Company is alleged to be a member of a transnational criminal organisation that is headed by the Prince Holding Group **("the Prince Group")** which is a Cambodian corporate conglomerate comprised of several companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan. Chen is the mastermind of the Prince Group's transnational criminal organisation and its chairman.

**Action in the USA and other jurisdictions**

4.  On 14 October, 2025, the United States Department of Justice **("US DOJ")**, the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** and the United Kingdom Government announced coordinated actions targeting the Prince Group.

5.  The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York **("the NY District Court")** on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering **("the US Indictment")**. Concurrently, the US DOJ filed a civil forfeiture complaint **("the US Complaint")** seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group. The criminal and civil proceedings will be referred together as the **"the US Proceedings"**.

6.  On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation. The effect of this designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them. The targets include Chen and the Company.

7.  On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group. In doing so it noted that Chen and his associates have incorporated companies in the BVI and own properties

3

9

in London including a £12 million mansion on Avenue Road in North London, a £100 million office building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and in Nine Elms in South London.

8.      News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen, the Prince Group, and its related entities and companies. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the coordinated global response to combat transnational organised crime.

9.      These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating transnational organised crime, human trafficking, forced labour, and large-scale financial fraud. The scale and coordination of these actions across six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network.

10.     In total, as of 9 December 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand) have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The allegation against Chen, his associates and companies within the Prince Group**

11.     In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and criminal activities including cryptocurrency investment fraud, human trafficking, money laundering, wire fraud, bank fraud, forced labour and, illegal online gambling. It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers. The scammers disappeared after taking almost every dollar they could from their victims.

12.     The US DOJ also alleges that the fraudulent activities carried out by the Prince Group resulted in

4

10

billions of dollars in losses incurred by victims in the United States and around the world. Chen and his associates are alleged to use the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

13. To effectuate their fraudulent schemes, it is alleged in the US Proceedings that Chen and his associates:

   a. forced migrant workers who were – not always, but often – victims themselves of human trafficking, to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

   b. frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

   c. used their political influence in multiple countries to protect their criminal enterprise; and

   d. paid bribes to foreign public officials to avoid disruption by law enforcement.

**The role of BVI Companies in the Prince Group**

14. The OFAC determined that the BVI companies form part of a complex network of companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

15. In the US complaint, the US DOJ alleged that Chen and his associates laundered the fraudulent proceeds of their crime through several companies in the BVI, Cayman, Cambodia and Hong Kong, which are under their control. It alleged further that these companies do not serve any real purpose other than to launder the proceeds of their criminal and fraudulent activities. Two BVI Companies are named in the US Complaint - Amber Hill Ventures Limited ("Amber Hill") and Lateral Bridge Global Limited ("LBG").

16. The US Complaint discloses that personnel from the Federal Bureau of Investigation ("FBI") have conducted extensive blockchain tracing to analyse the movements of the Prince Group's

5

11

cryptocurrency. The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin which the US DOJ seeks to forfeit flowed through wallets which were controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

**It is just and equitable that liquidators be appointed over the Company**

17. The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities to include forced labour, human trafficking, large-scale fraud, and money laundering on a massive international scale.

18. The activities of some of the companies in the Prince Group have been the subject of civil and criminal actions in multiple jurisdictions, with authorities in at least six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

19. The BVI companies including the Company are alleged to have been established and operated to assist Chen and the Prince Group which has defrauded numerous vulnerable victims of billions of US dollars.

20. Despite the actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on allegations is free to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

21. The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf for the benefit of the victims of the fraud; and to identify potential claims against third parties.

22. The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

23. Independent liquidators are necessary to ensure proper coordination with regulatory and enforcement authorities and liquidators, trustees, or receivers appointed in the Virgin Islands and

6

12

other jurisdictions, given the multi-jurisdictional nature of the scheme and the actions. Independent liquidators would also enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed.

24.    Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that its affairs are properly investigated and wound up under the supervision of this Honourable Court.

**It is in the public interest that liquidators be appointed over the Company**

25.    The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

26.    The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the Virgin Islands as a financial centre and threatens confidence in BVI companies and the BVI's regulatory framework.

27.    The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for nefarious purposes and with its commitment to international cooperation and combating serious transnational crime.

28.    Given that regulatory and law enforcement authorities in at least six countries have taken action and frozen or seized assets valued at over US$16 billion, it is in the public interest that the BVI as the jurisdiction of incorporation of the Company takes prompt and decisive action through the appointment of liquidators.

29.    The scale of this fraud and the international coordination of actions make it imperative, from a public interest perspective, that the BVI positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

**The appointment of joint provisional liquidators**

30.    It is essential that joint provisional liquidators be appointed over the Company immediately

7

13

(without notice to it and its principals) and before the originating application is heard and determined for the following reasons:

a. The Company continues to be under the control of Chen and his associates and as a result, they can use or continue to use it to further the criminal enterprise thereby continuing to inflict public harm.

b. Given the serious allegations set out in this application, the sanctions imposed by the United States and the UK Government, the US Indictment, and the US Complaint, it is appropriate and necessary that provisional liquidators be appointed immediately to:

   (i) immediately take full control of the Company;

   (ii) identify and preserve its assets that may represent proceeds of crime by preventing further movement, concealment, or dissipation of those assets;

   (iii) take control of its books and records;

   (iv) conduct thorough investigations into its past transactions; and

   (v) review banking records, asset transfers, and corporate dealings to identify and locate the potential money laundering activities.

c. The information and evidence gathered by the liquidators may provide crucial support for law enforcement authorities, both in the BVI and internationally, to apply for freezing orders, forfeiture orders, and other remedies. In this case, given that the United States has already filed a civil complaint seeking forfeiture of 127,271 Bitcoin valued at approximately US$15 billion allegedly connected to the Prince Group's criminal activities, the work of the liquidators could materially assist in tracing assets and preserving evidence relevant to that and other actions.

d. The appointment of provisional liquidator over the Company and other BVI companies which are owned and controlled by Chen would align with the BVI's National AML/CFT Policy and its commitment to international cooperation in combating serious transnational crime.

e. The coordinated actions taken by the US DOJ and UK Government on 14 October, 2025 signal the seriousness with which these major jurisdictions view the alleged criminal activities of the Prince Group. The appointment of provisional liquidators by this Honourable Court would demonstrate that the BVI is equally committed to ensuring that its corporate structures are not used as vehicles for serious criminality and would facilitate cooperation with international authorities in their ongoing investigations and

8

14

asset recovery efforts.

**Urgency**

31.  The public announcements of the US Civil Proceedings, OFAC sanctions, and UK sanctions on 14 October 2025 together with actions taken in other jurisdictions have no doubt put Chen and his associates, who are alleged to be sophisticated criminals, on notice of the scrutiny being applied to the Prince Group network and its corporate structures.

32.  The Company is likely to have received proceeds of the criminal and fraudulent activities and to have documentation that may assist in recovering the proceeds of the crime. There is a real and substantial risk that absent the immediate appointment of provisional liquidators, assets held by or through the BVI companies, including the Company will be transferred, concealed, or dissipated and documents will be destroyed or concealed. This real and substantial risk will increase once the Company is served with the originating application,

33.  The appointment of provisional liquidators will immediately remove control from Chen and place the Company under the supervision and control of officers of this Court, thereby protecting the integrity of any investigation and preserving assets for the benefit of the victims of Chen and the Prince Group's fraudulent and criminal activities.

34.  The appointment of joint provisional liquidators is appropriate given the number of BVI companies involved, the complexity of the alleged corporate structure spanning multiple jurisdictions, the international nature of the investigations and actions, and the need for extensive expertise in tracing assets and investigating potential money laundering activities.

**The Proposed provisional liquidators**

35.  The Attorney General proposes that James Drury,  a BVI licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110; and Paul Pretlove and David Standish, both UK licensed insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB be appointed as joint provisional liquidators of the Company.

9

15

**Conclusion**

36.    In all the circumstances, it is just and convenient **and in the public's interest,** that this Honourable Court grants the order which the Attorney General seeks in this application.

A draft of the order sought is attached.

This application is supported by the affidavit of Attorney General Dawn J. Smith.

The names and addresses of the persons on whom it is intended to serve the application are as follows:

This Application is filed by O'Neal Webster, Solicitors for the Applicant whose address for service is 2nd Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands. REF: NW/LG/101538.

Dated: January 2, 2026

Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

10

THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/


IN THE MATTER OF HARMONIC STATE LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE

LAWS OF THE VIRGIN ISLANDS.


BETWEEN:

**THE ATTORNEY GENERAL**

Applicant

**AND**

**HARMONIC STATE LIMITED**

Respondent

---

### EX-PARTE ORDINARY APPLICATION
### FOR JOINT PROVISIONAL LIQUIDATORS

---


O'Neal
Webster

Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 I Fax: (284) 393 5805
www.onealwebster.com

11

17

**Case Number :BVIHCOM2026/0012**

The Insolvency Rules 2005

**ORIGINATING APPLICATION**

**(Company)**

Rule 14

**Submitted Date:04/01/2026 17:11**

**Filed Date:05/01/2026 08:45**

**Fees Paid:0.00**

**FILED**
**HIGH COURT**
**TERRITORY OF**
**THE VIRGIN ISLANDS**

| THE EASTERN CARIBBEAN SUPREME COURT<br>IN THE HIGH COURT OF JUSTICE<br>VIRGIN ISLANDS<br>COMMERCIAL DIVISION | |
|---|---|
| Matter No.: | BVIHC(COM)        of 2026 |
| Applicant: | **THE ATTORNEY GENERAL** |
| Respondent: | **LUMINOUS GLOW LIMITED** |

In the matter of:

| **LUMINOUS GLOW LIMITED** |
|---|

| For Court Use Only |
|---|
| **To: LUMINOUS GLOW,** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands.<br><br>**This Application will be heard by the Commercial Court Judge at Road Town, Tortola**<br>**British Virgin Islands**<br>**on the           day of                     2026     at               o'clock.**<br><br>**If you do not attend at the time shown the Court may make an order in your absence** |

The Applicant, the Attorney General of the Virgin Islands ("**Attorney General**") of TTT Building, Wickhams Cay 1, Road Town, Tortola, Virgin Islands VG1110 applies to the Court for:

1.   An order pursuant to sections 162(1) (b) and (c) of the Insolvency Act, Revised Edition 2020 ("**the Act**") that Paul Pretlove, James Drury and David Standish, be appointed as joint liquidators of Luminous Glow Limited **("the Company")**, a company incorporated under the laws of the Virgin Islands ("BVI"). James Drury is a BVI licensed insolvency practitioner of Interpath (BVI) Limited, PO

1

Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110. Paul Pretlove and David Standish are United Kingdom ("UK") licensed insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB acting as overseas insolvency practitioners as defined in the Act.

2.   An order that the joint liquidators be given all powers set out in Schedule 2 of the Act, such powers to be exercisable without the sanction of the Court and such other powers as this Honourable Court deems fit.

3.   An order that the joint liquidators have the power to:

   a.   consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the liquidators and the Attorney General which is attached hereto **("the Protocol")**.

   b.   cooperate and communicate with law enforcement and regulatory authorities in the BVI and in other jurisdictions.

4.   An order that the costs of the liquidation, including the proper fees and disbursements of the joint liquidators and the Attorney General's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims

5.   An order that the costs of the application be costs in the liquidation.

6.   Such further order as the court deems appropriate.

The grounds upon which this order is sought are set out in the affidavit of Attorney General, Dawn J. Smith filed on 2 January 2026 and are summarised as follows:

**THE PARTIES**

1.   The Attorney General is the principal legal adviser to the Government of the Virgin Islands ("**the Government**") pursuant to section 58 of the Virgin Islands Constitution Order, 2007, and has overall responsibility for all aspects of civil litigation on behalf of the Government.

2

2.  The Company was incorporated under the laws of the BVI on 11 September 2018.  Its registered office is located at Vistra Corporate Services Centre **("Vistra")**, Wickhams Cay II, Road Town, Tortola, BVI, VG1110.  The Company is alleged to be a member of a transnational criminal organisation that is headed by Prince Holding Group Limited **("the Prince Group"),** which is a Cambodian corporate conglomerate that comprises several companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan. On 17 November 2025, Vistra filed its Intention to Resign as the Company's Registered Agent.

3.  The chairman of the Prince Group is Chen Zhi **("Chen").** Chen is the sole Director and sole Shareholder of the Company.

**BACKGROUND**

4.  The background is comprehensively set out in the indictment and the verified complaint filed by the United States Department of Justice **("US DOJ")** on October 14, 2025 and in the announcement issued by the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** dated October 13, 2025.  The background is summarised below.

**Action in the United States**

5.  On 14 October, 2025, the United States Department of Justice **("US DOJ"),** the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** and the United Kingdom Government announced coordinated actions targeting the Prince Group.

6.  The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York **("the NY District Court")** on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering **("the US Indictment").** Concurrently, the US DOJ filed a civil forfeiture complaint **("the US Complaint")** seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group.  The criminal and civil proceedings will be referred to together as "**the US Proceedings**."

7.  In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and criminal activities including cryptocurrency investment fraud, human trafficking, money

3

laundering, wire fraud, bank fraud, forced labour and, illegal online gambling.  It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers.  The scammers disappeared after taking almost every dollar they could from their victims.

8. To effectuate the schemes, it is alleged in the US Proceedings that Chen and his associates:

   a. built and operated forced-labour scam compounds across Cambodia in which workers were made to execute the scams at high volumes. The scam compounds housed vast dormitories surrounded by high walls and barbed wire, and functioned as violent forced labour camps;

   b. forced migrant workers who were – not always, but often – victims themselves of human trafficking to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

   c. frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

   d. used their political influence in multiple countries to protect their criminal enterprise; and

   e. paid bribes to foreign public officials to avoid disruption by law enforcement.

9. The indictment alleges that Chen maintained meticulous records of the compounds' operations, including ledgers of the tracking profits generated from the fraud schemes, documents detailing "phone farms" used in the schemes, and images depicting methods of beating and torture used against workers.

10. The US DOJ alleges that the schemes carried out by the Prince Group resulted in billions of dollars in losses incurred by victims in the United States and around the world. The documents in the US Proceedings allege that proceeds from these criminal activities have been laundered through various means, including cryptocurrency (using "spraying" and "funneling" techniques), online

4

gambling operations, and cryptocurrency mining operations. Chen, his associates and companies within the Prince Group, "washed" and returned the fraudulent proceeds to the Prince Group. The "washing" was done by using the Prince Group's vast network of seemingly legitimate business enterprises to launder its criminal proceeds. One common method was to collect the fraudulent proceeds in the form of bitcoin or stablecoins and then off-ramp them into conventional currencies, for example, the US dollar. The launderers then used that cash to purchase clean bitcoin or other cryptocurrencies. Chen was directly involved in coordinating these laundering efforts.

11. Chen and his associates subsequently used the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

12. On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation.  The effect of the designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them.  The targets include Chen and the Company. The OFAC noted that:

   a. Americans have lost at least $10 billion to Southeast Asia-based scam operations in 2024, a 66 percent increase over the prior year, with scams like those perpetrated by Prince Group being particularly significant.

   b. The Prince Group remained a dominant player in Cambodia's scam economy and has controlled illicit financial flows of billions of dollars.

   c. The actions taken by OFAC and Financial Crimes Enforcement Network (FinCEN) were in close coordination with the United Kingdom's Foreign, Commonwealth, and Development Office ("FCDO"), which took complementary actions against criminal networks responsible for targeting citizens of the United States and other allied nations through online scams and the laundering of stolen funds.

**Action in the UK**

13. On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group.  In doing so it

5

noted that Chen and his associates have incorporated companies in the BVI and own properties in London, including a £12 million mansion on Avenue Road in North London, a £100 million office building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and Nine Elms in South London.

14.     The Foreign Secretary Yvette Cooper stated that:

> "*The masterminds behind these horrific scam centres are ruining the lives of vulnerable people and buying up London homes to store their money.*
>
> *Together with our US allies, we are taking decisive action to combat the growing transnational threat posed by this network – upholding human rights, protecting British nationals and keeping dirty money off our streets.*"

15.     The Fraud Minister Lord Hanson said:

> "*These sanctions prove our determination to stop those who profit from this activity, hold offenders accountable, and keep dirty money out of the UK. Through our new, expanded Fraud Strategy and the upcoming Global Fraud Summit, we will go even further to disrupt corrupt networks and protect the public from shameless criminals.*"

16.     The effect of these sanctions is to prevent the transfer of these properties, freeze any business in which Chen and the Prince Group are involved and lock Chen and the Prince Group transnational criminal network out of the UK's financial system.

**Action in other jurisdictions**

17.     News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen,  the Prince Group, and its related entities and companies.  These actions are set out in paragraphs 19 to 22 below. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the global response to combat transnational organised crime.

*Singapore*

18.     On 31 October, 2025, Singapore police announced that they had seized over $150 million (approximately US$115 million) in assets linked to the Prince Group. The seized assets include six properties, bank accounts, securities accounts, and cash which are said to represent the proceeds of money laundering and forgery offences committed by Chen and the Prince Group. According

6

to the Monetary Authority of Singapore (MAS), financial institutions had previously filed suspicious transaction reports, and a number of suspicious accounts had been closed. The Singapore Police Force stated that investigations into Chen and his associates commenced in 2024 after it received intelligence from the Suspicious Transaction Reporting Office (STR).

*Hong Kong*

19.   On 4 November, 2025, Hong Kong authorities announced that they had frozen assets worth HK$2.75 billion (approximately US$354 million), which, based on intelligence and information gathered from multiple sources, are suspected to represent proceeds of international cross-border telecommunications fraud and money laundering activities committed by the Prince Group. The frozen assets include cash, stocks, and funds held by individuals and corporate entities.  At least 18 Hong Kong companies were blacklisted by the United States in connection with the Prince Group, including two listed companies - *"Khoon Group and Geotech Holdings".*

*Taiwan*

20.   On 4 November, 2025, Taiwanese prosecutors announced that they had detained 25 individuals and seized T$4.5 billion (approximately US$147 million) in assets tied to the Prince Group. The seized assets include 26 high-end cars, properties, and bank accounts tied to the network and to Chen in relation to money laundering and forced labour offences.

*Thailand*

21.   On 3 December, 2025, the Thai authorities announced that they had seized assets worth more than 10,157 million baht (approximately US$318 million) and issued arrest warrants for 42 individuals linked to transnational online scam operations connected to Chen and Cambodian nationals Kok An and Yim Leak. As of 3 December, 2025, 29 individuals had been arrested. The seizures include shares in Bangchak Corporation Limited worth 6 billion baht (approximately US$188 million). Thailand's Anti-Money Laundering Office (AMLO) stated that investigators had found "*information on networks of online fraud, human trafficking, and money-laundering*" that were linked to Chen and his associates.

**The effect of the multi-jurisdictional actions**

22.   These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating

7

transnational organised crime, human trafficking, forced labour, and large-scale financial fraud. The scale and coordination of these actions across at least six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network

23.    In total, as of 9 December, 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The role of BVI companies**

24.    The OFAC has determined that the BVI companies form part of a complex network of holding companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

25.    In the US Complaint, the US DOJ alleged that Chen and his associates also laundered fraudulent proceeds through several companies including companies in the BVI which are under their control.  It alleged further that these companies do not serve any real purpose other than to launder funds. Two BVI Companies were named in the US Proceedings - Amber Hill Ventures Limited **("Amber Hill")** and Lateral Bridge Global Limited **("LBG")**.

26.    Amber Hill and LBG are said to be controlled by two of Chen's associates, who are also defendants in the US Civil Proceedings. The US Complaint discloses that personnel from the Federal Bureau of Investigation ("FBI") have conducted extensive blockchain tracing to analyse the movements of the Prince Group's cryptocurrency.  The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin which the US DOJ seeks to forfeit flowed through wallets which were controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

27.    It is also alleged that Amber Hill had a banking relationship with a financial institution in the United States. It was recorded in the account opening documents with that financial institution that Amber Hill's business activities consisted of "*[p]roprietary trading and investing,*" and its anticipated deposit and withdrawal activity would be approximately $2 million each. However,

8

according to account statements, in February 2020, Amber Hill's account with that financial institution had approximately $22.5 million in deposits and $21.8 million in withdrawals. Amber Hill was struck from the register and dissolved on 10 November, 2023.

**THE APPLICATION**

28. The Application is made by the Attorney General on the ground that (i) it is just and equitable that joint liquidators be appointed over the Company pursuant to section 162 (1) (b) of the Act and (ii) it is in the public interest that the joint liquidators are appointed pursuant to section 162 (1) (c) of the Act.

**Just and equitable ground**

29. Section 162(1)(b) of the Insolvency Act, 2003 provides that the Court may appoint a liquidator of a company if "the Court is of the opinion that it is just and equitable that the company should be liquidated."

30. The Attorney General is listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(b) of the Act.

31. It is just and equitable that the Company should be placed into liquidation for the following reasons:

   a. Chen is the sole shareholder and/or director of the Company. He is alleged to be the mastermind of the Prince Group. He has been criminally indicted in the United States and is subject to personal sanctions by both the United States and the United Kingdom.

   b. The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities, to include forced labour, human trafficking, large-scale fraud, and money laundering on a massive international scale.

   c. The BVI companies including the Company are alleged to have been established and operated to assist Chen and the Prince Group which has defrauded numerous vulnerable victims of billions of US dollars.

   d. Despite the enforcement actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on the allegations is free

9

to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

e. The activities of some of the companies in the Prince Group have been the subject of civil and criminal enforcement actions in multiple jurisdictions, with authorities in six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

f. The Company is alleged to be a shell company which was used solely as a vehicle for the fraudulent scheme.

g. The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf, and identify potential claims against third parties.

h. The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

i. Independent liquidators are necessary to ensure proper coordination with regulatory and law enforcement authorities and liquidators, trustees, or receivers appointed in the BVI and other jurisdictions, given the multi-jurisdictional nature of the scheme and the actions taken by various authorities in several jurisdictions.

j. Independent liquidators would enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed as part of a collective process.

k. Given the fraudulent nature of the scheme, there are likely to be voidable transactions, preferences, and other claims that independent liquidators could pursue for the benefit of the victims and creditors.

32. Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that its affairs are properly investigated and wound up under the supervision of this Honourable Court.

**Public Interest ground**

33. Section 162(1)(c) of the Act gives the Court the discretion to appoint a liquidator of a company if it is of the opinion that it is in the public interest for a liquidator to be appointed.

10

34. The Attorney General is also listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(c) of the Act.

35. The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

36. BVI companies including, the Company are alleged to have been used as vehicles in what has been described by international law enforcement authorities as one of the largest fraudulent investment schemes in recent history. The scheme has caused billions of dollars in losses to victims worldwide and involved egregious human rights abuses. They are alleged to have been used to launder and/or hold the proceeds of the horrific crimes committed by Chen and his associates, including human trafficking, forced labour, aggravated identity theft, international fraud designed to scam unsuspecting victims of their lifesavings and money laundering. These criminal and fraudulent activities are inherently objectionable and are contrary to clearly identifiable public interest.

37. The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the BVI as a financial centre and threatens confidence in BVI incorporated companies and the BVI's regulatory framework.

38. The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for fraudulent purposes.

39. The appointment of liquidators will:
   a. facilitate cooperation with enforcement authorities, regulators, and insolvency practitioners in the BVI and other jurisdictions, demonstrating the BVI's commitment to international cooperation in combating financial fraud;
   b. ensure that the Company's affairs are properly investigated and that appropriate steps are taken to recover assets and maximise returns to defrauded investors;
   c. enable a proper investigation into how the Company was used in the fraudulent scheme, which may assist in preventing similar schemes in the future.

40. Given that enforcement authorities in at least six countries have taken action and frozen or seized

11

assets valued at over US$16 billion, it is in the public interest that BVI as the jurisdiction of incorporation of the Company, takes prompt and decisive action through the appointment of liquidators.

41.    The scale of this fraud and the international coordination of related actions make it imperative, from a public interest perspective, that the BVI positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

42.    In all the circumstances, it is not only just and equitable but also in the public interest that Joint liquidators be appointed over the Company to prevent it from being used to further Chen's and the Prince Group's criminal enterprise.

43.    If appointed, the joint liquidators would be able to take control of the Company, take the necessary steps in the BVI or overseas to secure and preserve its books and records and secure its assets for the benefit of the victims of the crimes perpetuated by the Prince Group. As officers of the court, they would also be able to independently investigate claims against the Company, marshal records, ensure that the Company complies with BVI laws and regulations and respond to any court process.

**Proposed liquidators**

44.    Mr. James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110, Mr. Paul Pretlove and Mr. David Standish, both of Interpath Ltd, 10 Fleet Place, London EC4M 7RB who to the best of the Applicant's knowledge and belief are eligible insolvency practitioners have all consented to be appointed as joint liquidators of the Company.

45.    In the circumstances, it is just and equitable and in the public's interest to grant the order which the Attorney General seeks, for the appointment of joint liquidators over the Company.

A draft of the order sought is attached.

This application is supported by the affidavit of Attorney General Dawn J Smith.

12

The names and addresses of the persons on whom it is intended to serve the application are as follows:

**Luminous Glow Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

The names and addresses of the persons required to be given notice of this application pursuant to the Act and the Rules (if any) are as follows:

**Luminous Glow Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

This Application is filed by O'Neal Webster, Solicitors for the Applicant, whose address for service is 2nd

Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands.  REF:

101538

_____          Dated: January 2, 2026

Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

THE EASTERN CARIBBEAN SUPREME

COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/


**IN THE MATTER OF LUMINOUS GLOW LIMITED**


**AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS**


BETWEEN:


**THE ATTORNEY GENERAL**

Applicant

**AND**

**LUMINOUS GLOW LIMITED**

Respondent


_____

**ORIGINATING APPLICATION**

_____




Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 l Fax: (284) 393 5805
www.onealwebster.com

14

**Case Number :BVIHCOM2026/0012**



**FILED
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS**

The Insolvency Rules 2005

**ORDINARY APPLICATION (EX-PARTE)**

**(Company)**

Rule 14

**Submitted Date:04/01/2026 17:24**

**Filed Date:05/01/2026 08:45**

**Fees Paid:0.00**

| | |
|---|---|
| **THE EASTERN CARIBBEAN SUPREME COURT**<br>**IN THE HIGH COURT OF JUSTICE**<br>**VIRGIN ISLANDS**<br>**COMMERCIAL DIVISION** | |
| Matter No.: | BVIHC(COM)        of 2026 |
| Applicant: | **THE ATTORNEY GENERAL** |
| Respondent: | **LUMINOUS GLOW LIMITED** |

In the matter of:

| |
|---|
| **LUMINOUS GLOW LIMITED** |

| For Court Use Only |
|---|
| **To:  LUMINOUS GLOW LIMITED,** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands.<br><br>**This Application will be heard by the Commercial Court Judge at Road Town, Tortola**<br><br>**British Virgin Islands**<br><br>**on the            day of                    2026      at              o'clock.**<br><br>**If you do not attend at the time shown the Court may make an order in your absence** |

We, O'Neal Webster, on behalf of the Applicant, **the Attorney General of the Virgin Islands ("the Attorney General")**, apply pursuant to section 170 of the Insolvency Act 2003 (the "Act") for the following orders that:

1.   James Drury,  a Virgin Islands ("BVI") licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola,  Virgin Islands, VG1110; and Paul Pretlove and David Standish both United Kingdom ("UK") licensed insolvency

1

practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB to be appointed as joint provisional liquidators of Luminous Glow Limited **("the Company")** with immediate effect.

2.   The powers afforded to the said joint provisional liquidators shall be as set out in Schedule 2 of the Act as varied by Schedule 3, and as further varied by this Order.

3.   An order that the joint provisional liquidators have the power to:

   a.   consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the joint provisional liquidators and the Attorney General which is attached hereto **("the Protocol")**.

   b.   cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4.   An order that the costs of the liquidation, including the proper fees and disbursements of the joint liquidators, the Attorney General's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

5.   An order that the costs of the application be costs in the liquidation.

6.   Such further order as the court deems appropriate.

A draft of the order sought is attached.

The grounds upon which this order is sought are set out in the affidavit of the Attorney General Dawn J. Smith filed on 30 December 2025, but in brief are as follows:

**Introduction**

1.   There are good prima facie reasons as set out in the originating application for the eventual appointment of full liquidators on the grounds of public interest and on the grounds that it is just and equitable that they be appointed over the Company.  A summary of these reasons is set out below.

2

**The Company and the Prince Group**

2.      The Company was incorporated under the laws of the Virgin Islands **("BVI")** on 11 September 2018. Its registered office is located at Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, BVI, VG1110.  Chen Zhi **("Chen")** is the sole Director and sole Shareholder of the Company.

3.      The Company is alleged to be a member of a transnational criminal organisation that is headed by the Prince Holding Group **("the Prince Group")** which is a Cambodian corporate conglomerate comprised of several  companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan. Chen is the mastermind of the Prince Group's transnational criminal organisation and its chairman.

 **Action in the USA and other jurisdictions**

4.      On 14 October, 2025, the United States Department of Justice **("US DOJ"),** the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** and the United Kingdom Government announced coordinated  actions targeting the Prince Group.

5.      The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York **("the NY District Court")** on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering **("the US Indictment").** Concurrently, the US DOJ filed a civil forfeiture complaint **("the US Complaint")** seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group.  The criminal and civil proceedings will be referred together as the "**the US Proceedings**".

6.      On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation.  The effect of this designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them.  The targets include Chen and the Company.

7.      On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group. In doing so it

3

noted that Chen and his associates have incorporated companies in the BVI and own properties in London including a £12 million mansion on Avenue Road in North London, a £100 million office building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and in Nine Elms in South London.

8.     News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen, the Prince Group, and its related entities and companies. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the coordinated global response to combat transnational organised crime.

9.     These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating transnational organised crime, human trafficking, forced labour, and large-scale financial fraud. The scale and coordination of these actions across six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network.

10.    In total, as of 9 December 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand) have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The allegation against Chen, his associates and companies within the Prince Group**

11.    In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and criminal activities including cryptocurrency investment fraud, human trafficking, money laundering, wire fraud, bank fraud, forced labour and, illegal online gambling. It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers. The scammers disappeared after taking almost every dollar they could from their victims.

4

12.     The US DOJ also alleges that the fraudulent activities carried out by the Prince Group resulted in billions of dollars in losses incurred by victims in the United States and around the world. Chen and his associates are alleged to use the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

13.     To effectuate their fraudulent schemes, it is alleged in the US Proceedings that Chen and his associates:

   a.     forced migrant workers who were – not always, but often – victims themselves of human trafficking, to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

   b.     frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

   c.     used their political influence in multiple countries to protect their criminal enterprise; and

   d.     paid bribes to foreign public officials to avoid disruption by law enforcement.

**The role of BVI Companies in the Prince Group**

14.     The OFAC determined that the BVI companies form part of a complex network of companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

15.     In the US complaint, the US DOJ alleged that Chen and his associates laundered the fraudulent proceeds of their crime through several companies in the BVI, Cayman, Cambodia and Hong Kong, which are under their control. It alleged further that these companies do not serve any real purpose other than to launder the proceeds of their criminal and fraudulent activities. Two BVI Companies are named in the US Complaint - Amber Hill Ventures Limited ("**Amber Hill**") and Lateral Bridge Global Limited **("LBG")**.

16.     The US Complaint discloses that personnel from the Federal Bureau of Investigation ("FBI") have

5

conducted extensive blockchain tracing to analyse the movements of the Prince Group's cryptocurrency.  The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin which the US DOJ seeks to forfeit flowed through wallets which were controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

**It is just and equitable that liquidators be appointed over the Company**

17.    The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities to include forced labour, human trafficking, large-scale fraud, and money laundering on a massive international scale.

18.    The activities of some of the companies in the Prince Group have been the subject of civil and criminal actions in multiple jurisdictions, with authorities in at least six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

19.    The BVI companies including the Company are alleged to have been established and operated to assist Chen and the Prince Group which has defrauded numerous vulnerable victims of billions of US dollars.

20.    Despite the  actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on allegations is free to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

21.    The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf for the benefit of the victims of the fraud; and to identify potential claims against third parties.

22.    The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

23.    Independent liquidators are necessary to ensure proper coordination with regulatory and

6

enforcement authorities and liquidators, trustees, or receivers appointed in the Virgin Islands and other jurisdictions, given the multi-jurisdictional nature of the scheme and the actions. Independent liquidators would also enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed.

24. Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that its affairs are properly investigated and wound up under the supervision of this Honourable Court.

**It is in the public interest that liquidators be appointed over the Company**

25. The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

26. The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the Virgin Islands as a financial centre and threatens confidence in BVI companies and the BVI's regulatory framework.

27. The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for nefarious purposes and with its commitment to international cooperation and combating serious transnational crime.

28. Given that regulatory and law enforcement authorities in at least six countries have taken action and frozen or seized assets valued at over US$16 billion, it is in the public interest that the BVI as the jurisdiction of incorporation of the Company takes prompt and decisive action through the appointment of liquidators.

29. The scale of this fraud and the international coordination of actions make it imperative, from a public interest perspective, that the BVI positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

7

**The appointment of joint provisional liquidators**

30.    It is essential that joint provisional liquidators be appointed over the Company immediately (without notice to it and its principals) and before the originating application is heard and determined for the following reasons:

a.    The Company continues to be under the control of Chen and his associates and as a result, they can  use or continue to use it to further the criminal enterprise thereby continuing to inflict public harm.

b.    Given the serious allegations set out in this application, the sanctions imposed by the United States and the UK Government,  the US Indictment, and the US Complaint, it is appropriate and necessary that provisional liquidators be appointed immediately to:

(i)      immediately take full control of the Company;

(ii)     identify and preserve its assets that may represent proceeds of crime by preventing further movement, concealment, or dissipation of those assets;

(iii)    take control of its books and records;

(iv)    conduct thorough investigations into its past transactions; and

(v)     review banking records, asset transfers, and corporate dealings to identify and locate the potential money laundering activities.

c.    The information and evidence gathered by the liquidators may provide crucial support for law enforcement authorities, both in the BVI and internationally, to apply for freezing orders, forfeiture orders, and other remedies. In this case, given that the United States has already filed a civil complaint seeking forfeiture of 127,271 Bitcoin valued at approximately US$15 billion allegedly connected to the Prince Group's criminal activities, the work of the liquidators could materially assist in tracing assets and preserving evidence relevant to that and other  actions.

d.    The appointment of provisional liquidator over the Company and other BVI companies which are owned and controlled by Chen would align with the BVI's National AML/CFT Policy and its commitment to international cooperation in combating serious transnational crime.

e.    The coordinated  actions taken by the US DOJ and UK Government on 14 October, 2025 signal the seriousness with which these major jurisdictions view the alleged criminal activities of the Prince Group. The appointment of provisional liquidators by this

8

Honourable Court would demonstrate that the BVI is equally committed to ensuring that its corporate structures are not used as vehicles for serious criminality and would facilitate cooperation with international authorities in their ongoing investigations and asset recovery efforts.

**Urgency**

31. The public announcements of the US Civil Proceedings, OFAC sanctions, and UK sanctions on 14 October 2025 together with actions taken in other jurisdictions have no doubt put Chen and his associates, who are alleged to be sophisticated criminals, on notice of the scrutiny being applied to the Prince Group network and its corporate structures.

32. The Company is likely to have received proceeds of the criminal and fraudulent activities and to have documentation that may assist in recovering the proceeds of the crime. There is a real and substantial risk that absent the immediate appointment of provisional liquidators, assets held by or through the BVI companies, including the Company will be transferred, concealed, or dissipated and documents will be destroyed or concealed. This real and substantial risk will increase once the Company is served with the originating application,

33. The appointment of provisional liquidators will immediately remove control from Chen and place the Company under the supervision and control of officers of this Court, thereby protecting the integrity of any investigation and preserving assets for the benefit of the victims of Chen and the Prince Group's fraudulent and criminal activities.

34. The appointment of joint provisional liquidators is appropriate given the number of BVI companies involved, the complexity of the alleged corporate structure spanning multiple jurisdictions, the international nature of the investigations and actions, and the need for extensive expertise in tracing assets and investigating potential money laundering activities.

**The Proposed provisional liquidators**

35. The Attorney General proposes that James Drury,  a BVI licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110; and Paul Pretlove and David Standish, both UK licensed

9

insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB be appointed as joint provisional liquidators of the Company.

**Conclusion**

36.      In all the circumstances, it is just and convenient and in the public's interest, that this Honourable Court grants the order which the Attorney General seeks in this application.

A draft of the order sought is attached.

This application is supported by the affidavit of Attorney General Dawn J. Smith.

The names and addresses of the persons on whom it is intended to serve the application are as follows:

This Application is filed by O'Neal Webster, Solicitors for the Applicant whose address for service is 2nd Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands. REF: NW/LG/101538.

_____                    Dated: January 2, 2026

Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

10

THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/

**IN THE MATTER OF LUMINOUS GLOW LIMITED**

**AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS**.

BETWEEN:

**THE ATTORNEY GENERAL**

Applicant

**AND**

**LUMINOUS GLOW LIMITED**

Respondent

_____

**EX-PARTE ORDINARY APPLICATION
FOR JOINT PROVISIONAL LIQUIDATORS**

_____



Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 l Fax: (284) 393 5805
www.onealwebster.com

11

**Case Number :BVIHCOM2026/0013**

The Insolvency Rules 2005

**ORIGINATING APPLICATION**

**(Company)**

Rule 14

**Submitted Date:04/01/2026 17:27**

**Filed Date:05/01/2026 08:46**

**Fees Paid:0.00**

**FILED HIGH COURT TERRITORY OF THE VIRGIN ISLANDS**

| THE EASTERN CARIBBEAN SUPREME COURT IN THE HIGH COURT OF JUSTICE VIRGIN ISLANDS COMMERCIAL DIVISION | |
|---|---|
| Matter No.: | BVIHC(COM)      of 2026 |
| Applicant: | **THE ATTORNEY GENERAL** |
| Respondent: | **MIGHTY DIVINE LIMITED** |

In the matter of:

| **MIGHTY DIVINE LIMITED** |
|---|

| For Court Use Only |
|---|
| **To: MIGHTY DIVINE LIMITED,** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands. <br><br> **This Application will be heard by the Commercial Court Judge at Road Town, Tortola British Virgin Islands** <br><br> **on the            day of                      2026      at              o'clock.** <br><br> **If you do not attend at the time shown the Court may make an order in your absence** |

The Applicant, the Attorney General of the Virgin Islands ("**Attorney General**") of TTT Building, Wickhams Cay 1, Road Town, Tortola, Virgin Islands VG1110 applies to the Court for:

1.  An order pursuant to sections 162(1) (b) and (c) of the Insolvency Act, Revised Edition 2020 ("**the Act**") that Paul Pretlove, James Drury and David Standish, be appointed as joint liquidators of Mighty Divine Limited **("the Company")**, a company incorporated under the laws of the Virgin Islands ("BVI"). James Drury is a BVI licensed insolvency practitioner of Interpath (BVI) Limited, PO

1

Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110. Paul Pretlove and David Standish are United Kingdom ("UK") licensed insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB acting as overseas insolvency practitioners as defined in the Act.

2.     An order that the joint liquidators be given all powers set out in Schedule 2 of the Act, such powers to be exercisable without the sanction of the Court and such other powers as this Honourable Court deems fit.

3.     An order that the joint liquidators have the power to:

   a.     consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the liquidators and the Attorney General which is attached hereto **("the Protocol")**.

   b.     cooperate and communicate with law enforcement and regulatory authorities in the BVI and in other jurisdictions.

4.     An order that the costs of the liquidation, including the proper fees and disbursements of the joint liquidators and the Attorney General's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims

5.     An order that the costs of the application be costs in the liquidation.

6.     Such further order as the court deems appropriate.

The grounds upon which this order is sought are set out in the affidavit of Attorney General, Dawn J. Smith filed on 2 January 2026 and are summarised as follows:

**THE PARTIES**

1.     The Attorney General is the principal legal adviser to the Government of the Virgin Islands ("**the Government**") pursuant to section 58 of the Virgin Islands Constitution Order, 2007, and has overall responsibility for all aspects of civil litigation on behalf of the Government.

2

2.    The Company was incorporated under the laws of the BVI on 20 November 2017.  Its registered office is located at Vistra Corporate Services Centre **("Vistra")**, Wickhams Cay II, Road Town, Tortola, BVI, VG1110.  The Company is alleged to be a member of a transnational criminal organisation that is headed by Prince Holding Group Limited **("the Prince Group"),** which is a Cambodian corporate conglomerate that comprises several companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan.

3.    The chairman of the Prince Group is Chen Zhi **("Chen").** Chen's Financial Assistant and Wealth Manager, Zhou Yun is the sole Director and sole Shareholder of the Company.

**BACKGROUND**

4.    The background is comprehensively set out in the indictment and the verified complaint filed by the United States Department of Justice **("US DOJ")** on October 14, 2025 and in the announcement issued by the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** dated October 13, 2025.  The background is summarised below.

**Action in the United States**

5.    On 14 October, 2025, the United States Department of Justice **("US DOJ"),** the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** and the United Kingdom Government announced coordinated actions targeting the Prince Group.

6.    The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York **("the NY District Court")** on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering **("the US Indictment").** Concurrently, the US DOJ filed a civil forfeiture complaint **("the US Complaint")** seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group.  The criminal and civil proceedings will be referred to together as "**the US Proceedings**."

7.    In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and

3

criminal activities including cryptocurrency investment fraud, human trafficking, money laundering, wire fraud, bank fraud, forced labour and, illegal online gambling. It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers. The scammers disappeared after taking almost every dollar they could from their victims.

8. To effectuate the schemes, it is alleged in the US Proceedings that Chen and his associates:

   a.   built and operated forced-labour scam compounds across Cambodia in which workers were made to execute the scams at high volumes. The scam compounds housed vast dormitories surrounded by high walls and barbed wire, and functioned as violent forced labour camps;

   b.   forced migrant workers who were – not always, but often – victims themselves of human trafficking to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

   c.   frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

   d.   used their political influence in multiple countries to protect their criminal enterprise; and

   e.   paid bribes to foreign public officials to avoid disruption by law enforcement.

9. The indictment alleges that Chen maintained meticulous records of the compounds' operations, including ledgers of the tracking profits generated from the fraud schemes, documents detailing "phone farms" used in the schemes, and images depicting methods of beating and torture used against workers.

10. The US DOJ alleges that the schemes carried out by the Prince Group resulted in billions of dollars in losses incurred by victims in the United States and around the world. The documents in the US Proceedings allege that proceeds from these criminal activities have been laundered through

4

various means, including cryptocurrency (using "spraying" and "funneling" techniques), online gambling operations, and cryptocurrency mining operations. Chen, his associates and companies within the Prince Group, "washed" and returned the fraudulent proceeds to the Prince Group. The "washing" was done by using the Prince Group's vast network of seemingly legitimate business enterprises to launder its criminal proceeds. One common method was to collect the fraudulent proceeds in the form of bitcoin or stablecoins and then off-ramp them into conventional currencies, for example, the US dollar. The launderers then used that cash to purchase clean bitcoin or other cryptocurrencies. Chen was directly involved in coordinating these laundering efforts.

11.     Chen and his associates subsequently used the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

12.     On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation.  The effect of the designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them. The targets include Zhou Yun, Chen and the Company. The OFAC noted that:

   a.   Americans have lost at least $10 billion to Southeast Asia-based scam operations in 2024, a 66 percent increase over the prior year, with scams like those perpetrated by Prince Group being particularly significant.

   b.   The Prince Group remained a dominant player in Cambodia's scam economy and has controlled illicit financial flows of billions of dollars.

   c.   The actions taken by OFAC and Financial Crimes Enforcement Network (FinCEN) were in close coordination with the United Kingdom's Foreign, Commonwealth, and Development Office ("FCDO"), which took complementary actions against criminal networks responsible for targeting citizens of the United States and other allied nations through online scams and the laundering of stolen funds.

**Action in the UK**

5

13. On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group. In doing so it noted that Chen and his associates have incorporated companies in the BVI and own properties in London, including a £12 million mansion on Avenue Road in North London, a £100 million office building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and Nine Elms in South London.

14. The Foreign Secretary Yvette Cooper stated that:

> "*The masterminds behind these horrific scam centres are ruining the lives of vulnerable people and buying up London homes to store their money.*
>
> *Together with our US allies, we are taking decisive action to combat the growing transnational threat posed by this network – upholding human rights, protecting British nationals and keeping dirty money off our streets.*"

15. The Fraud Minister Lord Hanson said:

> "*These sanctions prove our determination to stop those who profit from this activity, hold offenders accountable, and keep dirty money out of the UK. Through our new, expanded Fraud Strategy and the upcoming Global Fraud Summit, we will go even further to disrupt corrupt networks and protect the public from shameless criminals.*"

16. The effect of these sanctions is to prevent the transfer of these properties, freeze any business in which Chen and the Prince Group are involved and lock Chen and the Prince Group transnational criminal network out of the UK's financial system.

**Action in other jurisdictions**

17. News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen,  the Prince Group, and its related entities and companies.  These actions are set out in paragraphs 19 to 22 below. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the global response to combat transnational organised crime.

*Singapore*

18. On 31 October, 2025, Singapore police announced that they had seized over $150 million (approximately US$115 million) in assets linked to the Prince Group. The seized assets include six properties, bank accounts, securities accounts, and cash which are said to represent the proceeds

6

of money laundering and forgery offences committed by Chen and the Prince Group. According to the Monetary Authority of Singapore (MAS), financial institutions had previously filed suspicious transaction reports, and a number of suspicious accounts had been closed. The Singapore Police Force stated that investigations into Chen and his associates commenced in 2024 after it received intelligence from the Suspicious Transaction Reporting Office (STR).

### Hong Kong

19.    On 4 November, 2025, Hong Kong authorities announced that they had frozen assets worth HK$2.75 billion (approximately US$354 million), which, based on intelligence and information gathered from multiple sources, are suspected to represent proceeds of international cross-border telecommunications fraud and money laundering activities committed by the Prince Group. The frozen assets include cash, stocks, and funds held by individuals and corporate entities.  At least 18 Hong Kong companies were blacklisted by the United States in connection with the Prince Group, including two listed companies - "*Khoon Group and Geotech Holdings*".

### Taiwan

20.    On 4 November, 2025, Taiwanese prosecutors announced that they had detained 25 individuals and seized T$4.5 billion (approximately US$147 million) in assets tied to the Prince Group. The seized assets include 26 high-end cars, properties, and bank accounts tied to the network and to Chen in relation to money laundering and forced labour offences.

### Thailand

21.    On 3 December, 2025, the Thai authorities announced that they had seized assets worth more than 10,157 million baht (approximately US$318 million) and issued arrest warrants for 42 individuals linked to transnational online scam operations connected to Chen and Cambodian nationals Kok An and Yim Leak. As of 3 December, 2025, 29 individuals had been arrested. The seizures include shares in Bangchak Corporation Limited worth 6 billion baht (approximately US$188 million). Thailand's Anti-Money Laundering Office (AMLO) stated that investigators had found "*information on networks of online fraud, human trafficking, and money-laundering*" that were linked to Chen and his associates.

**The effect of the multi-jurisdictional actions**

22.    These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen

7

and the Prince Group and demonstrate the coordinated international commitment to combating transnational organised crime, human trafficking, forced labour, and large-scale financial fraud. The scale and coordination of these actions across at least six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network

23. In total, as of 9 December, 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The role of BVI companies**

24. The OFAC has determined that the BVI companies form part of a complex network of holding companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

25. In the US Complaint, the US DOJ alleged that Chen and his associates also laundered fraudulent proceeds through several companies including companies in the BVI which are under their control. It alleged further that these companies do not serve any real purpose other than to launder funds. Two BVI Companies were named in the US Proceedings - Amber Hill Ventures Limited **("Amber Hill")** and Lateral Bridge Global Limited **("LBG")**.

26. Amber Hill and LBG are said to be controlled by two of Chen's associates, who are also defendants in the US Civil Proceedings. The US Complaint discloses that personnel from the Federal Bureau of Investigation ("FBI") have conducted extensive blockchain tracing to analyse the movements of the Prince Group's cryptocurrency. The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin which the US DOJ seeks to forfeit flowed through wallets which were controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

27. It is also alleged that Amber Hill had a banking relationship with a financial institution in the United States. It was recorded in the account opening documents with that financial institution that Amber Hill's business activities consisted of "*[p]roprietary trading and investing,*" and its

8

anticipated deposit and withdrawal activity would be approximately $2 million each. However, according to account statements, in February 2020, Amber Hill's account with that financial institution had approximately $22.5 million in deposits and $21.8 million in withdrawals. Amber Hill was struck from the register and dissolved on 10 November, 2023.

## THE APPLICATION

28. The Application is made by the Attorney General on the ground that (i) it is just and equitable that joint liquidators be appointed over the Company pursuant to section 162 (1) (b) of the Act and (ii) it is in the public interest that the joint liquidators are appointed pursuant to section 162 (1) (c) of the Act.

## Just and equitable ground

29. Section 162(1)(b) of the Insolvency Act, 2003 provides that the Court may appoint a liquidator of a company if "the Court is of the opinion that it is just and equitable that the company should be liquidated."

30. The Attorney General is listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(b) of the Act.

31. It is just and equitable that the Company should be placed into liquidation for the following reasons:

   a. Chen's Financial Assistant and Wealth Manager, Zhou Yun is the sole Director and sole Shareholder of the Company. Chen is alleged to be the mastermind of the Prince Group. He has been criminally indicted in the United States and is subject to personal sanctions by both the United States and the United Kingdom.

   b. The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities, to include forced labour, human trafficking, large-scale fraud, and money laundering on a massive international scale.

   c. The BVI companies including the Company are alleged to have been established and operated to assist Chen and the Prince Group which has defrauded numerous vulnerable victims of billions of US dollars.

9

d.      Despite the enforcement actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on the allegations is free to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

e.      The activities of some of the companies in the Prince Group have been the subject of civil and criminal enforcement actions in multiple jurisdictions, with authorities in six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

f.      The Company is alleged to be a shell company which was used solely as a vehicle for the fraudulent scheme.

g.      The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf, and identify potential claims against third parties.

h.      The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

i.      Independent liquidators are necessary to ensure proper coordination with regulatory and law enforcement authorities and liquidators, trustees, or receivers appointed in the BVI and other jurisdictions, given the multi-jurisdictional nature of the scheme and the actions taken by various authorities in several jurisdictions.

j.      Independent liquidators would enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed as part of a collective process.

k.      Given the fraudulent nature of the scheme, there are likely to be voidable transactions, preferences, and other claims that independent liquidators could pursue for the benefit of the victims and creditors.

32.    Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that its affairs are properly investigated and wound up under the supervision of this Honourable Court.

**Public Interest ground**

33.    Section 162(1)(c) of the Act gives the Court the discretion to appoint a liquidator of a company if

10

it is of the opinion that it is in the public interest for a liquidator to be appointed.

34.     The Attorney General is also listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(c) of the Act.

35.     The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

36.     BVI companies including, the Company are alleged to have been used as vehicles in what has been described by international law enforcement authorities as one of the largest fraudulent investment schemes in recent history.  The scheme has caused billions of dollars in losses to victims worldwide and involved egregious human rights abuses.  They are alleged to have been used to launder and/or hold the proceeds of the horrific crimes committed by Chen and his associates, including human trafficking, forced labour, aggravated identity theft, international fraud designed to scam unsuspecting victims of their lifesavings and money laundering.  These criminal and fraudulent activities are inherently objectionable and are contrary to clearly identifiable public interest.

37.     The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the BVI as a financial centre and threatens confidence in BVI incorporated companies and the BVI's regulatory framework.

38.     The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for fraudulent purposes.

39.     The appointment of liquidators will:
    a.     facilitate cooperation with enforcement authorities, regulators, and insolvency practitioners in the BVI and other jurisdictions, demonstrating the BVI's commitment to international cooperation in combating financial fraud;
    b.     ensure that the Company's affairs are properly investigated and that appropriate steps are taken to recover assets and maximise returns to defrauded investors;
    c.     enable a proper investigation into how the Company was used in the fraudulent scheme, which may assist in preventing similar schemes in the future.

11

40.     Given that enforcement authorities in at least six countries have taken action and frozen or seized assets valued at over US$16 billion, it is in the public interest that BVI as the jurisdiction of incorporation of the Company, takes prompt and decisive action through the appointment of liquidators.

41.     The scale of this fraud and the international coordination of related actions make it imperative, from a public interest perspective, that the BVI positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

42.     In all the circumstances, it is not only just and equitable but also in the public interest that Joint liquidators be appointed over the Company to prevent it from being used to further Chen's and the Prince Group's criminal enterprise.

43.     If appointed, the joint liquidators would be able to take control of the Company, take the necessary steps in the BVI or overseas to secure and preserve its books and records and secure its assets for the benefit of the victims of the crimes perpetuated by the Prince Group. As officers of the court, they would also be able to independently investigate claims against the Company, marshal records, ensure that the Company complies with BVI laws and regulations and respond to any court process.

**Proposed liquidators**

44.     Mr. James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110, Mr. Paul Pretlove and Mr. David Standish, both of Interpath Ltd, 10 Fleet Place, London EC4M 7RB who to the best of the Applicant's knowledge and belief are eligible insolvency practitioners have all consented to be appointed as joint liquidators of the Company.

45.     In the circumstances, it is just and equitable and in the public's interest to grant the order which the Attorney General seeks, for the appointment of joint liquidators over the Company.

A draft of the order sought is attached.

12

This application is supported by the affidavit of Attorney General Dawn J Smith.

The names and addresses of the persons on whom it is intended to serve the application are as follows:

**Mighty Divine Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

The names and addresses of the persons required to be given notice of this application pursuant to the Act and the Rules (if any) are as follows:

**Mighty Divine Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

This Application is filed by O'Neal Webster, Solicitors for the Applicant, whose address for service is 2nd

Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands.  REF:

101538

_____              Dated: January 2, 2026

Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

13

THE EASTERN CARIBBEAN SUPREME

COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/


**IN THE MATTER OF MIGHTY DIVINE LIMITED**


**AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE**

**LAWS OF THE VIRGIN ISLANDS**


BETWEEN:


**THE ATTORNEY GENERAL**

Applicant

 **AND**

**MIGHTY DIVINE LIMITED**

Respondent


_____


**ORIGINATING APPLICATION**

_____




Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 l Fax: (284) 393 5805
www.onealwebster.com

14

**Case Number :BVIHCOM2026/0013**



**FILED
HIGH COURT**
TERRITORY OF
THE VIRGIN ISLANDS

The Insolvency Rules 2005

**ORDINARY APPLICATION (EX-PARTE)**

**(Company)**

Rule 14

**Submitted Date:04/01/2026 17:31**

**Filed Date:05/01/2026 08:46**

**Fees Paid:0.00**

| THE EASTERN CARIBBEAN SUPREME COURT IN THE HIGH COURT OF JUSTICE VIRGIN ISLANDS COMMERCIAL DIVISION | |
| --- | --- |
| Matter No.: | BVIHC(COM)      of 2026 |
| Applicant: | **THE ATTORNEY GENERAL** |
| Respondent: | **MIGHTY DIVINE LIMITED** |

In the matter of:

| **MIGHTY DIVINE LIMITED** |
| --- |

| For Court Use Only |
| --- |
| **To:  MIGHTY DIVINE LIMITED,** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands.  **This Application will be heard by the Commercial Court Judge at Road Town, Tortola**  **British Virgin Islands**  **on the            day of                    2026    at            o'clock.**  **If you do not attend at the time shown the Court may make an order in your absence** |

We, O'Neal Webster, on behalf of the Applicant, **the Attorney General of the Virgin Islands ("the Attorney General")**, apply pursuant to section 170 of the Insolvency Act 2003 (the "Act") for the following orders that:

1.   James Drury,  a Virgin Islands ("BVI") licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola,  Virgin Islands, VG1110; and Paul Pretlove and David Standish both United Kingdom ("UK") licensed insolvency

1

practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB to be appointed as joint provisional liquidators of Mighty Divine Limited **("the Company")** with immediate effect.

2.  The powers afforded to the said joint provisional liquidators shall be as set out in Schedule 2 of the Act as varied by Schedule 3, and as further varied by this Order.

3.  An order that the joint provisional liquidators have the power to:

    a.  consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the joint provisional liquidators and the Attorney General which is attached hereto **("the Protocol")**.

    b.  cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4.  An order that the costs of the liquidation, including the proper fees and disbursements of the joint liquidators, the Attorney General's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

5.  An order that the costs of the application be costs in the liquidation.

6.  Such further order as the court deems appropriate.

A draft of the order sought is attached.

The grounds upon which this order is sought are set out in the affidavit of the Attorney General Dawn J. Smith filed on 2nd January 2026, but in brief are as follows:

**Introduction**

1.  There are good prima facie reasons as set out in the originating application for the eventual appointment of full liquidators on the grounds of public interest and on the grounds that it is just and equitable that they be appointed over the Company.  A summary of these reasons is set out below.

2

**The Company and the Prince Group**

2.      The Company was incorporated under the laws of the Virgin Islands **("BVI")** on 20 November 2017. Its registered office is located at Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, BVI, VG1110.  Chen Zhi's **("Chen")** Financial Assistant and Wealth Manager, Zhou Yun is the sole Director and sole Shareholder of the Company.

3.      The Company is alleged to be a member of a transnational criminal organisation that is headed by the Prince Holding Group **("the Prince Group")** which is a Cambodian corporate conglomerate comprised of several  companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan. Chen is the mastermind of the Prince Group's transnational criminal organisation and its chairman.

 **Action in the USA and other jurisdictions**

4.      On 14 October, 2025, the United States Department of Justice **("US DOJ"),** the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** and the United Kingdom Government announced coordinated  actions targeting the Prince Group.

5.      The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York **("the NY District Court")** on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering **("the US Indictment").** Concurrently, the US DOJ filed a civil forfeiture complaint **("the US Complaint")** seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group.  The criminal and civil proceedings will be referred together as the "**the US Proceedings**".

6.      On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation.  The effect of this designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them.  The targets include Zhou Yun, Chen and the Company.

7.      On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group. In doing so it

3

noted that Chen and his associates have incorporated companies in the BVI and own properties in London including a £12 million mansion on Avenue Road in North London, a £100 million office building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and in Nine Elms in South London.

8.   News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen, the Prince Group, and its related entities and companies. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the coordinated global response to combat transnational organised crime.

9.   These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating transnational organised crime, human trafficking, forced labour, and large-scale financial fraud. The scale and coordination of these actions across six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network.

10.  In total, as of 9 December 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand) have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The allegation against Chen, his associates and companies within the Prince Group**

11.  In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and criminal activities including cryptocurrency investment fraud, human trafficking, money laundering, wire fraud, bank fraud, forced labour and, illegal online gambling.  It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers.  The scammers disappeared after taking almost every dollar they could from their victims.

4

12.     The US DOJ also alleges that the fraudulent activities carried out by the Prince Group resulted in billions of dollars in losses incurred by victims in the United States and around the world. Chen and his associates are alleged to use the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

13.     To effectuate their fraudulent schemes, it is alleged in the US Proceedings that Chen and his associates:

   a.     forced migrant workers who were – not always, but often – victims themselves of human trafficking, to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

   b.     frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

   c.     used their political influence in multiple countries to protect their criminal enterprise; and

   d.     paid bribes to foreign public officials to avoid disruption by law enforcement.

**The role of BVI Companies in the Prince Group**

14.     The OFAC determined that the BVI companies form part of a complex network of companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

15.     In the US complaint, the US DOJ alleged that Chen and his associates laundered the fraudulent proceeds of their crime through several companies in the BVI, Cayman, Cambodia and Hong Kong, which are under their control. It alleged further that these companies do not serve any real purpose other than to launder the proceeds of their criminal and fraudulent activities. Two BVI Companies are named in the US Complaint - Amber Hill Ventures Limited ("**Amber Hill**") and Lateral Bridge Global Limited **("LBG")**.

16.     The US Complaint discloses that personnel from the Federal Bureau of Investigation ("FBI") have

5

conducted extensive blockchain tracing to analyse the movements of the Prince Group's cryptocurrency. The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin which the US DOJ seeks to forfeit flowed through wallets which were controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

**It is just and equitable that liquidators be appointed over the Company**

17.    The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities to include forced labour, human trafficking, large-scale fraud, and money laundering on a massive international scale.

18.    The activities of some of the companies in the Prince Group have been the subject of civil and criminal actions in multiple jurisdictions, with authorities in at least six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

19.    The BVI companies including the Company are alleged to have been established and operated to assist Chen and the Prince Group which has defrauded numerous vulnerable victims of billions of US dollars.

20.    Despite the  actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on allegations is free to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

21.    The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf for the benefit of the victims of the fraud; and to identify potential claims against third parties.

22.    The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

23.    Independent liquidators are necessary to ensure proper coordination with regulatory and

6

enforcement authorities and liquidators, trustees, or receivers appointed in the Virgin Islands and other jurisdictions, given the multi-jurisdictional nature of the scheme and the actions. Independent liquidators would also enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed.

24.    Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that its affairs are properly investigated and wound up under the supervision of this Honourable Court.

**It is in the public interest that liquidators be appointed over the Company**

25.    The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

26.    The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the Virgin Islands as a financial centre and threatens confidence in BVI companies and the BVI's regulatory framework.

27.    The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for nefarious purposes and with its commitment to international cooperation and combating serious transnational crime.

28.    Given that regulatory and law enforcement authorities in at least six countries have taken action and frozen or seized assets valued at over US$16 billion, it is in the public interest that the BVI as the jurisdiction of incorporation of the Company takes prompt and decisive action through the appointment of liquidators.

29.    The scale of this fraud and the international coordination of actions make it imperative, from a public interest perspective, that the BVI  positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

7

**The appointment of joint provisional liquidators**

30.    It is essential that joint provisional liquidators be appointed over the Company immediately (without notice to it and its principals) and before the originating application is heard and determined for the following reasons:

a.    The Company continues to be under the control of Chen and his associates and as a result, they can  use or continue to use it to further the criminal enterprise thereby continuing to inflict public harm.

b.    Given the serious allegations set out in this application, the sanctions imposed by the United States and the UK Government,  the US Indictment, and the US Complaint, it is appropriate and necessary that provisional liquidators be appointed immediately to:

(i)    immediately take full control of the Company;

(ii)    identify and preserve its assets that may represent proceeds of crime by preventing further movement, concealment, or dissipation of those assets;

(iii)    take control of its books and records;

(iv)    conduct thorough investigations into its past transactions; and

(v)    review banking records, asset transfers, and corporate dealings to identify and locate the potential money laundering activities.

c.    The information and evidence gathered by the liquidators may provide crucial support for law enforcement authorities, both in the BVI and internationally, to apply for freezing orders, forfeiture orders, and other remedies. In this case, given that the United States has already filed a civil complaint seeking forfeiture of 127,271 Bitcoin valued at approximately US$15 billion allegedly connected to the Prince Group's criminal activities, the work of the liquidators could materially assist in tracing assets and preserving evidence relevant to that and other  actions.

d.    The appointment of provisional liquidator over the Company and other BVI companies which are owned and controlled by Chen would align with the BVI's National AML/CFT Policy and its commitment to international cooperation in combating serious transnational crime.

e.    The coordinated  actions taken by the US DOJ and UK Government on 14 October, 2025 signal the seriousness with which these major jurisdictions view the alleged criminal activities of the Prince Group. The appointment of provisional liquidators by this

8

Honourable Court would demonstrate that the BVI is equally committed to ensuring that its corporate structures are not used as vehicles for serious criminality and would facilitate cooperation with international authorities in their ongoing investigations and asset recovery efforts.

**Urgency**

31.    The public announcements of the US Civil Proceedings, OFAC sanctions, and UK sanctions on 14 October 2025 together with actions taken in other jurisdictions have no doubt put Chen and his associates, who are alleged to be sophisticated criminals, on notice of the scrutiny being applied to the Prince Group network and its corporate structures.

32.    The Company is likely to have received proceeds of the criminal and fraudulent activities and to have documentation that may assist in recovering the proceeds of the crime. There is a real and substantial risk that absent the immediate appointment of provisional liquidators, assets held by or through the BVI companies, including the Company will be transferred, concealed, or dissipated and documents will be destroyed or concealed. This real and substantial risk will increase once the Company is served with the originating application,

33.    The appointment of provisional liquidators will immediately remove control from Chen and place the Company under the supervision and control of officers of this Court, thereby protecting the integrity of any investigation and preserving assets for the benefit of the victims of Chen and the Prince Group's fraudulent and criminal activities.

34.    The appointment of joint provisional liquidators is appropriate given the number of BVI companies involved, the complexity of the alleged corporate structure spanning multiple jurisdictions, the international nature of the investigations and actions, and the need for extensive expertise in tracing assets and investigating potential money laundering activities.

**The Proposed provisional liquidators**

35.    The Attorney General proposes that James Drury,  a BVI licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110; and Paul Pretlove and David Standish, both UK licensed

9

insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB be appointed as joint provisional liquidators of the Company.

**Conclusion**

36.     In all the circumstances, it is just and convenient and in the public's interest, that this Honourable Court grants the order which the Attorney General seeks in this application.

A draft of the order sought is attached.

This application is supported by the affidavit of Attorney General Dawn J. Smith.

The names and addresses of the persons on whom it is intended to serve the application are as follows:

This Application is filed by O'Neal Webster, Solicitors for the Applicant whose address for service is 2nd Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands. REF: NW/LG/101538.

Dated: January 2, 2026

_____
Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

10

THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/

**IN THE MATTER OF MIGHTY DIVINE LIMITED**

**AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE**

**LAWS OF THE VIRGIN ISLANDS**.

BETWEEN:

**THE ATTORNEY GENERAL**

Applicant

**AND**

**MIGHTY DIVINE LIMITED**

Respondent

_____

**EX-PARTE ORDINARY APPLICATION**
**FOR JOINT PROVISIONAL LIQUIDATORS**

_____



Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 l Fax: (284) 393 5805
www.onealwebster.com

11

**Case Number :BVIHCOM2026/0014**

The Insolvency Rules 2005

**ORIGINATING APPLICATION**

**(Company)**

Rule 14

**FILED**
**HIGH COURT**
**TERRITORY OF THE VIRGIN ISLANDS**

**Submitted Date:04/01/2026 17:34**

**Filed Date:05/01/2026 08:46**

**Fees Paid:0.00**

| | |
|---|---|
| **THE EASTERN CARIBBEAN SUPREME COURT**<br>**IN THE HIGH COURT OF JUSTICE**<br>**VIRGIN ISLANDS**<br>**COMMERCIAL DIVISION** | |
| Matter No.: | BVIHC(COM)        of 2026 |
| Applicant: | **THE ATTORNEY GENERAL** |
| Respondent: | **NOBLE TITLE LIMITED** |

In the matter of:

| |
|---|
| **NOBLE TITLE LIMITED** |

| |
|---|
| For Court Use Only |
| **To: NOBLE TITLE LIMITED,** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands. |
| **This Application will be heard by the Commercial Court Judge at Road Town, Tortola**<br>**British Virgin Islands**<br>**on the          day of                    2026     at              o'clock.** |
| **If you do not attend at the time shown the Court may make an order in your absence** |

The Applicant, the Attorney General of the Virgin Islands ("**Attorney General**") of TTT Building, Wickhams Cay 1, Road Town, Tortola, Virgin Islands VG1110 applies to the Court for:

1.  An order pursuant to sections 162(1) (b) and (c) of the Insolvency Act, Revised Edition 2020 ("**the Act**") that Paul Pretlove, James Drury and David Standish, be appointed as joint liquidators of Noble Title Limited **("the Company")**, a company incorporated under the laws of the Virgin Islands ("BVI"). James Drury is a BVI licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110.

1

Paul Pretlove and David Standish are United Kingdom ("UK") licensed insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB acting as overseas insolvency practitioners as defined in the Act.

2. An order that the joint liquidators be given all powers set out in Schedule 2 of the Act, such powers to be exercisable without the sanction of the Court and such other powers as this Honourable Court deems fit.

3. An order that the joint liquidators have the power to:

   a. consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the liquidators and the Attorney General which is attached hereto **("the Protocol")**.

   b. cooperate and communicate with law enforcement and regulatory authorities in the BVI and in other jurisdictions.

4. An order that the costs of the liquidation, including the proper fees and disbursements of the joint liquidators and the Attorney General's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims

5. An order that the costs of the application be costs in the liquidation.

6. Such further order as the court deems appropriate.

The grounds upon which this order is sought are set out in the affidavit of Attorney General, Dawn J. Smith filed on 2 January 2026 and are summarised as follows:

**THE PARTIES**

1. The Attorney General is the principal legal adviser to the Government of the Virgin Islands ("**the Government**") pursuant to section 58 of the Virgin Islands Constitution Order, 2007, and has overall responsibility for all aspects of civil litigation on behalf of the Government.

2

2.      The Company was incorporated under the laws of the BVI on 12 October 2016.  Its registered office is located at Vistra Corporate Services Centre **("Vistra")**, Wickhams Cay II, Road Town, Tortola, BVI, VG1110.  The Company is alleged to be a member of a transnational criminal organisation that is headed by Prince Holding Group Limited **("the Prince Group"),** which is a Cambodian corporate conglomerate that comprises several companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan.

3.      The chairman of the Prince Group is Chen Zhi **("Chen").** Seng Haoran is the sole Director of the Company and Retain Prosper Limited is its sole Shareholder. Chen holds 100% of the shareholding in Retain Prosper Limited.

**BACKGROUND**

4.      The background is comprehensively set out in the indictment and the verified complaint filed by the United States Department of Justice **("US DOJ")** on October 14, 2025 and in the announcement issued by the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** dated October 13, 2025.  The background is summarised below.

**Action in the United States**

5.      On 14 October, 2025, the United States Department of Justice **("US DOJ"),** the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** and the United Kingdom Government announced coordinated actions targeting the Prince Group.

6.      The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York **("the NY District Court")** on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering **("the US Indictment").** Concurrently, the US DOJ filed a civil forfeiture complaint **("the US Complaint")** seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group.  The criminal and civil proceedings will be referred to together as "**the US Proceedings**."

7.      In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and

3

criminal activities including cryptocurrency investment fraud, human trafficking, money laundering, wire fraud, bank fraud, forced labour and, illegal online gambling. It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers. The scammers disappeared after taking almost every dollar they could from their victims.

8.   To effectuate the schemes, it is alleged in the US Proceedings that Chen and his associates:

a.   built and operated forced-labour scam compounds across Cambodia in which workers were made to execute the scams at high volumes. The scam compounds housed vast dormitories surrounded by high walls and barbed wire, and functioned as violent forced labour camps;

b.   forced migrant workers who were – not always, but often – victims themselves of human trafficking to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

c.   frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

d.   used their political influence in multiple countries to protect their criminal enterprise; and

e.   paid bribes to foreign public officials to avoid disruption by law enforcement.

9.   The indictment alleges that Chen maintained meticulous records of the compounds' operations, including ledgers of the tracking profits generated from the fraud schemes, documents detailing "phone farms" used in the schemes, and images depicting methods of beating and torture used against workers.

10.   The US DOJ alleges that the schemes carried out by the Prince Group resulted in billions of dollars in losses incurred by victims in the United States and around the world. The documents in the US Proceedings allege that proceeds from these criminal activities have been laundered through

4

various means, including cryptocurrency (using "spraying" and "funneling" techniques), online gambling operations, and cryptocurrency mining operations. Chen, his associates and companies within the Prince Group, "washed" and returned the fraudulent proceeds to the Prince Group. The "washing" was done by using the Prince Group's vast network of seemingly legitimate business enterprises to launder its criminal proceeds. One common method was to collect the fraudulent proceeds in the form of bitcoin or stablecoins and then off-ramp them into conventional currencies, for example, the US dollar. The launderers then used that cash to purchase clean bitcoin or other cryptocurrencies. Chen was directly involved in coordinating these laundering efforts.

11. Chen and his associates subsequently used the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

12. On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation.  The effect of the designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them.  The targets include Chen and the Company. The OFAC noted that:

   a. Americans have lost at least $10 billion to Southeast Asia-based scam operations in 2024, a 66 percent increase over the prior year, with scams like those perpetrated by Prince Group being particularly significant.

   b. The Prince Group remained a dominant player in Cambodia's scam economy and has controlled illicit financial flows of billions of dollars.

   c. The actions taken by OFAC and Financial Crimes Enforcement Network (FinCEN) were in close coordination with the United Kingdom's Foreign, Commonwealth, and Development Office ("FCDO"), which took complementary actions against criminal networks responsible for targeting citizens of the United States and other allied nations through online scams and the laundering of stolen funds.

**Action in the UK**

13. On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group.  In doing so it

5

noted that Chen and his associates have incorporated companies in the BVI and own properties in London, including a £12 million mansion on Avenue Road in North London, a £100 million office building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and Nine Elms in South London.

14.     The Foreign Secretary Yvette Cooper stated that:

> "*The masterminds behind these horrific scam centres are ruining the lives of vulnerable people and buying up London homes to store their money.*
>
> *Together with our US allies, we are taking decisive action to combat the growing transnational threat posed by this network – upholding human rights, protecting British nationals and keeping dirty money off our streets.*"

15.     The Fraud Minister Lord Hanson said:

> "*These sanctions prove our determination to stop those who profit from this activity, hold offenders accountable, and keep dirty money out of the UK. Through our new, expanded Fraud Strategy and the upcoming Global Fraud Summit, we will go even further to disrupt corrupt networks and protect the public from shameless criminals.*"

16.     The effect of these sanctions is to prevent the transfer of these properties, freeze any business in which Chen and the Prince Group are involved and lock Chen and the Prince Group transnational criminal network out of the UK's financial system.

**Action in other jurisdictions**

17.     News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen,  the Prince Group, and its related entities and companies.  These actions are set out in paragraphs 19 to 22 below. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the global response to combat transnational organised crime.

*Singapore*

18.     On 31 October, 2025, Singapore police announced that they had seized over $150 million (approximately US$115 million) in assets linked to the Prince Group. The seized assets include six properties, bank accounts, securities accounts, and cash which are said to represent the proceeds of money laundering and forgery offences committed by Chen and the Prince Group. According

6

to the Monetary Authority of Singapore (MAS), financial institutions had previously filed suspicious transaction reports, and a number of suspicious accounts had been closed. The Singapore Police Force stated that investigations into Chen and his associates commenced in 2024 after it received intelligence from the Suspicious Transaction Reporting Office (STR).

### Hong Kong

19.     On 4 November, 2025, Hong Kong authorities announced that they had frozen assets worth HK$2.75 billion (approximately US$354 million), which, based on intelligence and information gathered from multiple sources, are suspected to represent proceeds of international cross-border telecommunications fraud and money laundering activities committed by the Prince Group. The frozen assets include cash, stocks, and funds held by individuals and corporate entities.  At least 18 Hong Kong companies were blacklisted by the United States in connection with the Prince Group, including two listed companies - "*Khoon Group and Geotech Holdings*".

### Taiwan

20.     On 4 November, 2025, Taiwanese prosecutors announced that they had detained 25 individuals and seized T$4.5 billion (approximately US$147 million) in assets tied to the Prince Group. The seized assets include 26 high-end cars, properties, and bank accounts tied to the network and to Chen in relation to money laundering and forced labour offences.

### Thailand

21.     On 3 December, 2025, the Thai authorities announced that they had seized assets worth more than 10,157 million baht (approximately US$318 million) and issued arrest warrants for 42 individuals linked to transnational online scam operations connected to Chen and Cambodian nationals Kok An and Yim Leak. As of 3 December, 2025, 29 individuals had been arrested. The seizures include shares in Bangchak Corporation Limited worth 6 billion baht (approximately US$188 million). Thailand's Anti-Money Laundering Office (AMLO) stated that investigators had found "*information on networks of online fraud, human trafficking, and money-laundering*" that were linked to Chen and his associates.

**The effect of the multi-jurisdictional actions**

22.     These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating

7

transnational organised crime, human trafficking, forced labour, and large-scale financial fraud. The scale and coordination of these actions across at least six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network

23.    In total, as of 9 December, 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The role of BVI companies**

24.    The OFAC has determined that the BVI companies form part of a complex network of holding companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

25.    In the US Complaint, the US DOJ alleged that Chen and his associates also laundered fraudulent proceeds through several companies including companies in the BVI which are under their control.  It alleged further that these companies do not serve any real purpose other than to launder funds. Two BVI Companies were named in the US Proceedings - Amber Hill Ventures Limited **("Amber Hill")** and Lateral Bridge Global Limited **("LBG")**.

26.    Amber Hill and LBG are said to be controlled by two of Chen's associates, who are also defendants in the US Civil Proceedings. The US Complaint discloses that personnel from the Federal Bureau of Investigation ("FBI") have conducted extensive blockchain tracing to analyse the movements of the Prince Group's cryptocurrency.  The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin which the US DOJ seeks to forfeit flowed through wallets which were controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

27.    It is also alleged that Amber Hill had a banking relationship with a financial institution in the United States. It was recorded in the account opening documents with that financial institution that Amber Hill's business activities consisted of "*[p]roprietary trading and investing*," and its anticipated deposit and withdrawal activity would be approximately $2 million each. However,

8

according to account statements, in February 2020, Amber Hill's account with that financial institution had approximately $22.5 million in deposits and $21.8 million in withdrawals. Amber Hill was struck from the register and dissolved on 10 November, 2023.

**THE APPLICATION**

28.    The Application is made by the Attorney General on the ground that (i) it is just and equitable that joint liquidators be appointed over the Company pursuant to section 162 (1) (b) of the Act and (ii) it is in the public interest that the joint liquidators are appointed pursuant to section 162 (1) (c) of the Act.

**Just and equitable ground**

29.    Section 162(1)(b) of the Insolvency Act, 2003 provides that the Court may appoint a liquidator of a company if "the Court is of the opinion that it is just and equitable that the company should be liquidated."

30.    The Attorney General is listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(b) of the Act.

31.    It is just and equitable that the Company should be placed into liquidation for the following reasons:

   a.    Seng Haoran is the sole Director of the Company and Retain Prosper Limited is its sole Shareholder. Chen holds 100% of the shareholding in Retain Prosper Limited. Chen is alleged to be the mastermind of the Prince Group.  He has been criminally indicted in the United States and is subject to personal sanctions by both the United States and the United Kingdom.

   b.    The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities, to include forced labour, human trafficking, large-scale fraud, and money laundering on a massive international scale.

   c.    The BVI companies including the Company are alleged to have been established and operated to assist Chen and the Prince Group which has defrauded numerous vulnerable victims of billions of US dollars.

9

d.    Despite the enforcement actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on the allegations is free to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

e.    The activities of some of the companies in the Prince Group have been the subject of civil and criminal enforcement actions in multiple jurisdictions, with authorities in six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

f.    The Company is alleged to be a shell company which was used solely as a vehicle for the fraudulent scheme.

g.    The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf, and identify potential claims against third parties.

h.    The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

i.    Independent liquidators are necessary to ensure proper coordination with regulatory and law enforcement authorities and liquidators, trustees, or receivers appointed in the BVI and other jurisdictions, given the multi-jurisdictional nature of the scheme and the actions taken by various authorities in several jurisdictions.

j.    Independent liquidators would enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed as part of a collective process.

k.    Given the fraudulent nature of the scheme, there are likely to be voidable transactions, preferences, and other claims that independent liquidators could pursue for the benefit of the victims and creditors.

32.    Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that its affairs are properly investigated and wound up under the supervision of this Honourable Court.

**Public Interest ground**

33.    Section 162(1)(c) of the Act gives the Court the discretion to appoint a liquidator of a company if

10

it is of the opinion that it is in the public interest for a liquidator to be appointed.

34.     The Attorney General is also listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(c) of the Act.

35.     The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

36.     BVI companies including, the Company are alleged to have been used as vehicles in what has been described by international law enforcement authorities as one of the largest fraudulent investment schemes in recent history.  The scheme has caused billions of dollars in losses to victims worldwide and involved egregious human rights abuses.  They are alleged to have been used to launder and/or hold the proceeds of the horrific crimes committed by Chen and his associates, including human trafficking, forced labour, aggravated identity theft, international fraud designed to scam unsuspecting victims of their lifesavings and money laundering.  These criminal and fraudulent activities are inherently objectionable and are contrary to clearly identifiable public interest.

37.     The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the BVI as a financial centre and threatens confidence in BVI incorporated companies and the BVI's regulatory framework.

38.     The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for fraudulent purposes.

39.     The appointment of liquidators will:
    a.      facilitate cooperation with enforcement authorities, regulators, and insolvency practitioners in the BVI and other jurisdictions, demonstrating the BVI's commitment to international cooperation in combating financial fraud;
    b.      ensure that the Company's affairs are properly investigated and that appropriate steps are taken to recover assets and maximise returns to defrauded investors;
    c.      enable a proper investigation into how the Company was used in the fraudulent scheme,

11

which may assist in preventing similar schemes in the future.

40.   Given that enforcement authorities in at least six countries have taken action and frozen or seized assets valued at over US$16 billion, it is in the public interest that BVI as the jurisdiction of incorporation of the Company, takes prompt and decisive action through the appointment of liquidators.

41.   The scale of this fraud and the international coordination of related actions make it imperative, from a public interest perspective, that the BVI positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

42.   In all the circumstances, it is not only just and equitable but also in the public interest that Joint liquidators be appointed over the Company to prevent it from being used to further Chen's and the Prince Group's criminal enterprise.

43.   If appointed, the joint liquidators would be able to take control of the Company, take the necessary steps in the BVI or overseas to secure and preserve its books and records and secure its assets for the benefit of the victims of the crimes perpetuated by the Prince Group. As officers of the court, they would also be able to independently investigate claims against the Company, marshal records, ensure that the Company complies with BVI laws and regulations and respond to any court process.

**Proposed liquidators**

44.   Mr. James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110, Mr. Paul Pretlove and Mr. David Standish, both of Interpath Ltd, 10 Fleet Place, London EC4M 7RB who to the best of the Applicant's knowledge and belief are eligible insolvency practitioners have all consented to be appointed as joint liquidators of the Company.

45.   In the circumstances, it is just and equitable and in the public's interest to grant the order which the Attorney General seeks, for the appointment of joint liquidators over the Company.

A draft of the order sought is attached.

12

This application is supported by the affidavit of Attorney General Dawn J Smith.

The names and addresses of the persons on whom it is intended to serve the application are as follows:

**Noble Title Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

The names and addresses of the persons required to be given notice of this application pursuant to the Act and the Rules (if any) are as follows:

**Noble Title Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

This Application is filed by O'Neal Webster, Solicitors for the Applicant, whose address for service is 2nd

Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands.  REF:

101538

_____                           Dated: January 2, 2026

Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

13

THE EASTERN CARIBBEAN SUPREME

COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/

**IN THE MATTER OF NOBLE TITLE LIMITED**

**AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS**

BETWEEN:

**THE ATTORNEY GENERAL**

Applicant

**AND**

**NOBLE TITLE LIMITED**

Respondent

_____

**ORIGINATING APPLICATION**

_____

Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 l Fax: (284) 393 5805
www.onealwebster.com

14

Case Number :BVIHCOM2026/0014

FILED
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS

The Insolvency Rules 2005

**ORIGINATING APPLICATION**

**(Company)**

Rule 14

Submitted Date:04/01/2026 17:34

Filed Date:05/01/2026 08:46

Fees Paid:0.00

| **THE EASTERN CARIBBEAN SUPREME COURT**<br>**IN THE HIGH COURT OF JUSTICE**<br>**VIRGIN ISLANDS**<br>**COMMERCIAL DIVISION** | |
|---|---|
| Matter No.: | BVIHC(COM)    of 2026 |
| Applicant: | **THE ATTORNEY GENERAL** |
| Respondent: | **NOBLE TITLE LIMITED** |

In the matter of:

| **NOBLE TITLE LIMITED** |
|---|

| For Court Use Only |
|---|
| **To: NOBLE TITLE LIMITED,** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands.<br><br>**This Application will be heard by the Commercial Court Judge at Road Town, Tortola**<br>**British Virgin Islands**<br>on the          day of                    2026    at                o'clock.<br><br>**If you do not attend at the time shown the Court may make an order in your absence** |

The Applicant, the Attorney General of the Virgin Islands ("**Attorney General**") of TTT Building, Wickhams Cay 1, Road Town, Tortola, Virgin Islands VG1110 applies to the Court for:

1.    An order pursuant to sections 162(1) (b) and (c) of the Insolvency Act, Revised Edition 2020 ("**the Act**") that Paul Pretlove, James Drury and David Standish, be appointed as joint liquidators of Noble Title Limited **("the Company")**, a company incorporated under the laws of the Virgin Islands ("BVI"). James Drury is a BVI licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110.

1

439

Paul Pretlove and David Standish are United Kingdom ("UK") licensed insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB acting as overseas insolvency practitioners as defined in the Act.

2. An order that the joint liquidators be given all powers set out in Schedule 2 of the Act, such powers to be exercisable without the sanction of the Court and such other powers as this Honourable Court deems fit.

3. An order that the joint liquidators have the power to:

   a. consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the liquidators and the Attorney General which is attached hereto **("the Protocol")**.

   b. cooperate and communicate with law enforcement and regulatory authorities in the BVI and in other jurisdictions.

4. An order that the costs of the liquidation, including the proper fees and disbursements of the joint liquidators and the Attorney General's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims

5. An order that the costs of the application be costs in the liquidation.

6. Such further order as the court deems appropriate.

The grounds upon which this order is sought are set out in the affidavit of Attorney General, Dawn J. Smith filed on 2 January 2026 and are summarised as follows:

**THE PARTIES**

1. The Attorney General is the principal legal adviser to the Government of the Virgin Islands (**"the Government"**) pursuant to section 58 of the Virgin Islands Constitution Order, 2007, and has overall responsibility for all aspects of civil litigation on behalf of the Government.

2

440

2.      The Company was incorporated under the laws of the BVI on 12 October 2016. Its registered office is located at Vistra Corporate Services Centre (**"Vistra"**), Wickhams Cay II, Road Town, Tortola, BVI, VG1110. The Company is alleged to be a member of a transnational criminal organisation that is headed by Prince Holding Group Limited (**"the Prince Group"),** which is a Cambodian corporate conglomerate that comprises several companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan.

3.      The chairman of the Prince Group is Chen Zhi (**"Chen").** Seng Haoran is the sole Director of the Company and Retain Prosper Limited is its sole Shareholder. Chen holds 100% of the shareholding in Retain Prosper Limited.

**BACKGROUND**

4.      The background is comprehensively set out in the indictment and the verified complaint filed by the United States Department of Justice (**"US DOJ"**) on October 14, 2025 and in the announcement issued by the United States Department of the Treasury's Office of Foreign Assets Control (**"OFAC"**) dated October 13, 2025. The background is summarised below.

**Action in the United States**

5.      On 14 October, 2025, the United States Department of Justice (**"US DOJ"),** the United States Department of the Treasury's Office of Foreign Assets Control (**"OFAC"**) and the United Kingdom Government announced coordinated actions targeting the Prince Group.

6.      The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York (**"the NY District Court"**) on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering (**"the US Indictment").** Concurrently, the US DOJ filed a civil forfeiture complaint (**"the US Complaint"**) seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group. The criminal and civil proceedings will be referred to together as **"the US Proceedings."**

7.      In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and

3

441

criminal activities including cryptocurrency investment fraud, human trafficking, money laundering, wire fraud, bank fraud, forced labour and, illegal online gambling. It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers. The scammers disappeared after taking almost every dollar they could from their victims.

8.   To effectuate the schemes, it is alleged in the US Proceedings that Chen and his associates:

a.   built and operated forced-labour scam compounds across Cambodia in which workers were made to execute the scams at high volumes. The scam compounds housed vast dormitories surrounded by high walls and barbed wire, and functioned as violent forced labour camps;

b.   forced migrant workers who were – not always, but often – victims themselves of human trafficking to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

c.   frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

d.   used their political influence in multiple countries to protect their criminal enterprise; and

e.   paid bribes to foreign public officials to avoid disruption by law enforcement.

9.   The indictment alleges that Chen maintained meticulous records of the compounds' operations, including ledgers of the tracking profits generated from the fraud schemes, documents detailing "phone farms" used in the schemes, and images depicting methods of beating and torture used against workers.

10.   The US DOJ alleges that the schemes carried out by the Prince Group resulted in billions of dollars in losses incurred by victims in the United States and around the world. The documents in the US Proceedings allege that proceeds from these criminal activities have been laundered through

4

442

various means, including cryptocurrency (using "spraying" and "funneling" techniques), online gambling operations, and cryptocurrency mining operations. Chen, his associates and companies within the Prince Group, "washed" and returned the fraudulent proceeds to the Prince Group. The "washing" was done by using the Prince Group's vast network of seemingly legitimate business enterprises to launder its criminal proceeds. One common method was to collect the fraudulent proceeds in the form of bitcoin or stablecoins and then off-ramp them into conventional currencies, for example, the US dollar. The launderers then used that cash to purchase clean bitcoin or other cryptocurrencies. Chen was directly involved in coordinating these laundering efforts.

11. Chen and his associates subsequently used the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

12. On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation. The effect of the designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them. The targets include Chen and the Company. The OFAC noted that:

   a. Americans have lost at least $10 billion to Southeast Asia-based scam operations in 2024, a 66 percent increase over the prior year, with scams like those perpetrated by Prince Group being particularly significant.

   b. The Prince Group remained a dominant player in Cambodia's scam economy and has controlled illicit financial flows of billions of dollars.

   c. The actions taken by OFAC and Financial Crimes Enforcement Network (FinCEN) were in close coordination with the United Kingdom's Foreign, Commonwealth, and Development Office ("FCDO"), which took complementary actions against criminal networks responsible for targeting citizens of the United States and other allied nations through online scams and the laundering of stolen funds.

**Action in the UK**

13. On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group. In doing so it

5

443

noted that Chen and his associates have incorporated companies in the BVI and own properties in London, including a £12 million mansion on Avenue Road in North London, a £100 million office building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and Nine Elms in South London.

14.    The Foreign Secretary Yvette Cooper stated that:

> "The masterminds behind these horrific scam centres are ruining the lives of vulnerable people and buying up London homes to store their money.
>
> Together with our US allies, we are taking decisive action to combat the growing transnational threat posed by this network – upholding human rights, protecting British nationals and keeping dirty money off our streets."

15.    The Fraud Minister Lord Hanson said:

> "These sanctions prove our determination to stop those who profit from this activity, hold offenders accountable, and keep dirty money out of the UK. Through our new, expanded Fraud Strategy and the upcoming Global Fraud Summit, we will go even further to disrupt corrupt networks and protect the public from shameless criminals."

16.    The effect of these sanctions is to prevent the transfer of these properties, freeze any business in which Chen and the Prince Group are involved and lock Chen and the Prince Group transnational criminal network out of the UK's financial system.

**Action in other jurisdictions**

17.    News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen,  the Prince Group, and its related entities and companies.  These actions are set out in paragraphs 19 to 22 below. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the global response to combat transnational organised crime.

*Singapore*

18.    On 31 October, 2025, Singapore police announced that they had seized over $150 million (approximately US$115 million) in assets linked to the Prince Group. The seized assets include six properties, bank accounts, securities accounts, and cash which are said to represent the proceeds of money laundering and forgery offences committed by Chen and the Prince Group. According

6

444

to the Monetary Authority of Singapore (MAS), financial institutions had previously filed suspicious transaction reports, and a number of suspicious accounts had been closed. The Singapore Police Force stated that investigations into Chen and his associates commenced in 2024 after it received intelligence from the Suspicious Transaction Reporting Office (STR).

**Hong Kong**

19.     On 4 November, 2025, Hong Kong authorities announced that they had frozen assets worth HK$2.75 billion (approximately US$354 million), which, based on intelligence and information gathered from multiple sources, are suspected to represent proceeds of international cross-border telecommunications fraud and money laundering activities committed by the Prince Group. The frozen assets include cash, stocks, and funds held by individuals and corporate entities. At least 18 Hong Kong companies were blacklisted by the United States in connection with the Prince Group, including two listed companies - "*Khoon Group and Geotech Holdings*".

**Taiwan**

20.     On 4 November, 2025, Taiwanese prosecutors announced that they had detained 25 individuals and seized T$4.5 billion (approximately US$147 million) in assets tied to the Prince Group. The seized assets include 26 high-end cars, properties, and bank accounts tied to the network and to Chen in relation to money laundering and forced labour offences.

**Thailand**

21.     On 3 December, 2025, the Thai authorities announced that they had seized assets worth more than 10,157 million baht (approximately US$318 million) and issued arrest warrants for 42 individuals linked to transnational online scam operations connected to Chen and Cambodian nationals Kok An and Yim Leak. As of 3 December, 2025, 29 individuals had been arrested. The seizures include shares in Bangchak Corporation Limited worth 6 billion baht (approximately US$188 million). Thailand's Anti-Money Laundering Office (AMLO) stated that investigators had found "*information on networks of online fraud, human trafficking, and money-laundering*" that were linked to Chen and his associates.

**The effect of the multi-jurisdictional actions**

22.     These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating

7

445

transnational organised crime, human trafficking, forced labour, and large-scale financial fraud. The scale and coordination of these actions across at least six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network

23.    In total, as of 9 December, 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The role of BVI companies**

24.    The OFAC has determined that the BVI companies form part of a complex network of holding companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

25.    In the US Complaint, the US DOJ alleged that Chen and his associates also laundered fraudulent proceeds through several companies including companies in the BVI which are under their control. It alleged further that these companies do not serve any real purpose other than to launder funds. Two BVI Companies were named in the US Proceedings - Amber Hill Ventures Limited (**"Amber Hill"**) and Lateral Bridge Global Limited (**"LBG"**).

26.    Amber Hill and LBG are said to be controlled by two of Chen's associates, who are also defendants in the US Civil Proceedings. The US Complaint discloses that personnel from the Federal Bureau of Investigation ("FBI") have conducted extensive blockchain tracing to analyse the movements of the Prince Group's cryptocurrency. The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin which the US DOJ seeks to forfeit flowed through wallets which were controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

27.    It is also alleged that Amber Hill had a banking relationship with a financial institution in the United States. It was recorded in the account opening documents with that financial institution that Amber Hill's business activities consisted of "*[p]roprietary trading and investing,*" and its anticipated deposit and withdrawal activity would be approximately $2 million each. However,

8

446

according to account statements, in February 2020, Amber Hill's account with that financial institution had approximately $22.5 million in deposits and $21.8 million in withdrawals. Amber Hill was struck from the register and dissolved on 10 November, 2023.

## THE APPLICATION

28.    The Application is made by the Attorney General on the ground that (i) it is just and equitable that joint liquidators be appointed over the Company pursuant to section 162 (1) (b) of the Act and (ii) it is in the public interest that the joint liquidators are appointed pursuant to section 162 (1) (c) of the Act.

### Just and equitable ground

29.    Section 162(1)(b) of the Insolvency Act, 2003 provides that the Court may appoint a liquidator of a company if "the Court is of the opinion that it is just and equitable that the company should be liquidated."

30.    The Attorney General is listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(b) of the Act.

31.    It is just and equitable that the Company should be placed into liquidation for the following reasons:
   a.    Seng Haoran is the sole Director of the Company and Retain Prosper Limited is its sole Shareholder. Chen holds 100% of the shareholding in Retain Prosper Limited. Chen is alleged to be the mastermind of the Prince Group. He has been criminally indicted in the United States and is subject to personal sanctions by both the United States and the United Kingdom.
   b.    The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities, to include forced labour, human trafficking, large-scale fraud, and money laundering on a massive international scale.
   c.    The BVI companies including the Company are alleged to have been established and operated to assist Chen and the Prince Group which has defrauded numerous vulnerable victims of billions of US dollars.

9

447

d.   Despite the enforcement actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on the allegations is free to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

e.   The activities of some of the companies in the Prince Group have been the subject of civil and criminal enforcement actions in multiple jurisdictions, with authorities in six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

f.   The Company is alleged to be a shell company which was used solely as a vehicle for the fraudulent scheme.

g.   The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf, and identify potential claims against third parties.

h.   The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

i.   Independent liquidators are necessary to ensure proper coordination with regulatory and law enforcement authorities and liquidators, trustees, or receivers appointed in the BVI and other jurisdictions, given the multi-jurisdictional nature of the scheme and the actions taken by various authorities in several jurisdictions.

j.   Independent liquidators would enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed as part of a collective process.

k.   Given the fraudulent nature of the scheme, there are likely to be voidable transactions, preferences, and other claims that independent liquidators could pursue for the benefit of the victims and creditors.

32.   Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that its affairs are properly investigated and wound up under the supervision of this Honourable Court.

**Public Interest ground**

33.   Section 162(1)(c) of the Act gives the Court the discretion to appoint a liquidator of a company if

10

it is of the opinion that it is in the public interest for a liquidator to be appointed.

34. The Attorney General is also listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(c) of the Act.

35. The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

36. BVI companies including, the Company are alleged to have been used as vehicles in what has been described by international law enforcement authorities as one of the largest fraudulent investment schemes in recent history. The scheme has caused billions of dollars in losses to victims worldwide and involved egregious human rights abuses. They are alleged to have been used to launder and/or hold the proceeds of the horrific crimes committed by Chen and his associates, including human trafficking, forced labour, aggravated identity theft, international fraud designed to scam unsuspecting victims of their lifesavings and money laundering. These criminal and fraudulent activities are inherently objectionable and are contrary to clearly identifiable public interest.

37. The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the BVI as a financial centre and threatens confidence in BVI incorporated companies and the BVI's regulatory framework.

38. The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for fraudulent purposes.

39. The appointment of liquidators will:
   a. facilitate cooperation with enforcement authorities, regulators, and insolvency practitioners in the BVI and other jurisdictions, demonstrating the BVI's commitment to international cooperation in combating financial fraud;
   b. ensure that the Company's affairs are properly investigated and that appropriate steps are taken to recover assets and maximise returns to defrauded investors;
   c. enable a proper investigation into how the Company was used in the fraudulent scheme,

11

449

which may assist in preventing similar schemes in the future.

40. Given that enforcement authorities in at least six countries have taken action and frozen or seized assets valued at over US$16 billion, it is in the public interest that BVI as the jurisdiction of incorporation of the Company, takes prompt and decisive action through the appointment of liquidators.

41. The scale of this fraud and the international coordination of related actions make it imperative, from a public interest perspective, that the BVI positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

42. In all the circumstances, it is not only just and equitable but also in the public interest that Joint liquidators be appointed over the Company to prevent it from being used to further Chen's and the Prince Group's criminal enterprise.

43. If appointed, the joint liquidators would be able to take control of the Company, take the necessary steps in the BVI or overseas to secure and preserve its books and records and secure its assets for the benefit of the victims of the crimes perpetuated by the Prince Group. As officers of the court, they would also be able to independently investigate claims against the Company, marshal records, ensure that the Company complies with BVI laws and regulations and respond to any court process.

**Proposed liquidators**

44. Mr. James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110, Mr. Paul Pretlove and Mr. David Standish, both of Interpath Ltd, 10 Fleet Place, London EC4M 7RB who to the best of the Applicant's knowledge and belief are eligible insolvency practitioners have all consented to be appointed as joint liquidators of the Company.

45. In the circumstances, it is just and equitable and in the public's interest to grant the order which the Attorney General seeks, for the appointment of joint liquidators over the Company.

A draft of the order sought is attached.

12

450

This application is supported by the affidavit of Attorney General Dawn J Smith.

The names and addresses of the persons on whom it is intended to serve the application are as follows:

**Noble Title Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

The names and addresses of the persons required to be given notice of this application pursuant to the Act and the Rules (if any) are as follows:

**Noble Title Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

This Application is filed by O'Neal Webster, Solicitors for the Applicant, whose address for service is 2nd Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands.  REF: 101538

Dated: January 2, 2026

_____
Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

13

451

THE EASTERN CARIBBEAN SUPREME

COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/


**IN THE MATTER OF NOBLE TITLE LIMITED**


**AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS**


BETWEEN:


**THE ATTORNEY GENERAL**

Applicant

**AND**

**NOBLE TITLE LIMITED**

Respondent

---

**ORIGINATING APPLICATION**

---



Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 I Fax: (284) 393 5805
www.onealwebster.com


14

452

Case Number :BVIHCOM2026/0015



The Insolvency Rules 2005

**ORIGINATING APPLICATION**

**(Company)**

Rule 14

Submitted Date:04/01/2026 17:40

Filed Date:05/01/2026 08:47

Fees Paid:0.00

**THE EASTERN CARIBBEAN SUPREME COURT**
**IN THE HIGH COURT OF JUSTICE**
**VIRGIN ISLANDS**
**COMMERCIAL DIVISION**

| Matter No.: | BVIHC(COM)    of 2026 |
|---|---|
| Applicant: | **ATTORNEY GENERAL** |
| Respondent: | **ORIENTAL CHARM HOLDINGS INVESTMENT LIMITED** |

In the matter of:

**ORIENTAL CHARM HOLDINGS INVESTMENT LIMITED**

For Court Use Only

**To: ORIENTAL CHARM HOLDINGS INVESTMENT LIMITED,** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands.

**This Application will be heard by the Commercial Court Judge at Road Town, Tortola**

**British Virgin Islands**

**on the            day of                    2026    at            o'clock.**

**If you do not attend at the time shown the Court may make an order in your absence**

The Applicant, the Attorney General of the Virgin Islands ("**Attorney General**") of TTT Building, Wickhams Cay 1, Road Town, Tortola, Virgin Islands VG1110 applies to the Court for:

1.    An order pursuant to sections 162(1) (b) and (c) of the Insolvency Act, Revised Edition 2020 ("**the Act**") that Paul Pretlove, James Drury and David Standish, be appointed as joint liquidators of Oriental Charm Holdings Investment Limited **("the Company")**, a company incorporated under

1

the laws of the Virgin Islands ("BVI"). James Drury is a BVI licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110. Paul Pretlove and David Standish are United Kingdom ("UK") licensed insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB acting as overseas insolvency practitioners as defined in the Act.

2.     An order that the joint liquidators be given all powers set out in Schedule 2 of the Act, such powers to be exercisable without the sanction of the Court and such other powers as this Honourable Court deems fit.

3.     An order that the joint liquidators have the power to:

   a.    consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the liquidators and the Attorney General which is attached hereto **("the Protocol")**.

   b.    cooperate and communicate with law enforcement and regulatory authorities in the BVI and in other jurisdictions.

4.     An order that the costs of the liquidation, including the proper fees and disbursements of the joint liquidators and the Attorney General's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims

5.     An order that the costs of the application be costs in the liquidation.

6.     Such further order as the court deems appropriate.

The grounds upon which this order is sought are set out in the affidavit of Attorney General, Dawn J. Smith filed on 2 January 2026 and are summarised as follows:

**THE PARTIES**

1.     The Attorney General is the principal legal adviser to the Government of the Virgin Islands (**"the Government"**) pursuant to section 58 of the Virgin Islands Constitution Order, 2007, and has

2

438

overall responsibility for all aspects of civil litigation on behalf of the Government.

2.     The Company was incorporated under the laws of the BVI on 26 April 2018. Its registered office is located at Vistra Corporate Services Centre **("Vistra")**, Wickhams Cay II, Road Town, Tortola, BVI, VG1110. The Company is alleged to be a member of a transnational criminal organisation that is headed by Prince Holding Group Limited **("the Prince Group")**, which is a Cambodian corporate conglomerate that comprises several companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan.

3.     The chairman of the Prince Group is Chen Zhi **("Chen")**. Li Caiyun is the sole Director of the Company. Chen is the Company's sole Shareholder.

**BACKGROUND**

4.     The background is comprehensively set out in the indictment and the verified complaint filed by the United States Department of Justice **("US DOJ")** on October 14, 2025 and in the announcement issued by the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** dated October 13, 2025. The background is summarised below.

**Action in the United States**

5.     On 14 October, 2025, the United States Department of Justice **("US DOJ")**, the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** and the United Kingdom Government announced coordinated actions targeting the Prince Group.

6.     The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York **("the NY District Court")** on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering **("the US Indictment")**. Concurrently, the US DOJ filed a civil forfeiture complaint **("the US Complaint")** seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group. The criminal and civil proceedings will be referred to together as **"the US Proceedings."**

3

439

7.    In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and criminal activities including cryptocurrency investment fraud, human trafficking, money laundering, wire fraud, bank fraud, forced labour and, illegal online gambling.  It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers.  The scammers disappeared after taking almost every dollar they could from their victims.

8.    To effectuate the schemes, it is alleged in the US Proceedings that Chen and his associates:

a.    built and operated forced-labour scam compounds across Cambodia in which workers were made to execute the scams at high volumes. The scam compounds housed vast dormitories surrounded by high walls and barbed wire, and functioned as violent forced labour camps;

b.    forced migrant workers who were – not always, but often – victims themselves of human trafficking to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

c.    frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

d.    used their political influence in multiple countries to protect their criminal enterprise; and

e.    paid bribes to foreign public officials to avoid disruption by law enforcement.

9.    The indictment alleges that Chen maintained meticulous records of the compounds' operations, including ledgers of the tracking profits generated from the fraud schemes, documents detailing "phone farms" used in the schemes, and images depicting methods of beating and torture used against workers.

10.   The US DOJ alleges that the schemes carried out by the Prince Group resulted in billions of dollars in losses incurred by victims in the United States and around the world. The documents in the US

4

440

Proceedings allege that proceeds from these criminal activities have been laundered through various means, including cryptocurrency (using "spraying" and "funneling" techniques), online gambling operations, and cryptocurrency mining operations. Chen, his associates and companies within the Prince Group, "washed" and returned the fraudulent proceeds to the Prince Group. The "washing" was done by using the Prince Group's vast network of seemingly legitimate business enterprises to launder its criminal proceeds. One common method was to collect the fraudulent proceeds in the form of bitcoin or stablecoins and then off-ramp them into conventional currencies, for example, the US dollar. The launderers then used that cash to purchase clean bitcoin or other cryptocurrencies. Chen was directly involved in coordinating these laundering efforts.

11. Chen and his associates subsequently used the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

12. On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation.  The effect of the designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them.  The targets include Chen and the Company. The OFAC noted that:

   a. Americans have lost at least $10 billion to Southeast Asia-based scam operations in 2024, a 66 percent increase over the prior year, with scams like those perpetrated by Prince Group being particularly significant.

   b. The Prince Group remained a dominant player in Cambodia's scam economy and has controlled illicit financial flows of billions of dollars.

   c. The actions taken by OFAC and Financial Crimes Enforcement Network (FinCEN) were in close coordination with the United Kingdom's Foreign, Commonwealth, and Development Office ("FCDO"), which took complementary actions against criminal networks responsible for targeting citizens of the United States and other allied nations through online scams and the laundering of stolen funds.

5

441

**Action in the UK**

13.    On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group.  In doing so it noted that Chen and his associates have incorporated companies in the BVI and own properties in London, including a £12 million mansion on Avenue Road in North London, a £100 million office building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and Nine Elms in South London.

14.    The Foreign Secretary Yvette Cooper stated that:

> *"The masterminds behind these horrific scam centres are ruining the lives of vulnerable people and buying up London homes to store their money.*
>
> *Together with our US allies, we are taking decisive action to combat the growing transnational threat posed by this network – upholding human rights, protecting British nationals and keeping dirty money off our streets."*

15.    The Fraud Minister Lord Hanson said:

> *"These sanctions prove our determination to stop those who profit from this activity, hold offenders accountable, and keep dirty money out of the UK. Through our new, expanded Fraud Strategy and the upcoming Global Fraud Summit, we will go even further to disrupt corrupt networks and protect the public from shameless criminals."*

16.    The effect of these sanctions is to prevent the transfer of these properties, freeze any business in which Chen and the Prince Group are involved and lock Chen and the Prince Group transnational criminal network out of the UK's financial system.

**Action in other jurisdictions**

17.    News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen,  the Prince Group, and its related entities and companies.  These actions are set out in paragraphs 19 to 22 below. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the global response to combat transnational organised crime.

*Singapore*

18.    On 31 October, 2025, Singapore police announced that they had seized over $150 million (approximately US$115 million) in assets linked to the Prince Group. The seized assets include six

6

442

properties, bank accounts, securities accounts, and cash which are said to represent the proceeds of money laundering and forgery offences committed by Chen and the Prince Group. According to the Monetary Authority of Singapore (MAS), financial institutions had previously filed suspicious transaction reports, and a number of suspicious accounts had been closed. The Singapore Police Force stated that investigations into Chen and his associates commenced in 2024 after it received intelligence from the Suspicious Transaction Reporting Office (STR).

### Hong Kong

19.  On 4 November, 2025, Hong Kong authorities announced that they had frozen assets worth HK$2.75 billion (approximately US$354 million), which, based on intelligence and information gathered from multiple sources, are suspected to represent proceeds of international cross-border telecommunications fraud and money laundering activities committed by the Prince Group. The frozen assets include cash, stocks, and funds held by individuals and corporate entities.  At least 18 Hong Kong companies were blacklisted by the United States in connection with the Prince Group, including two listed companies - *"Khoon Group and Geotech Holdings"*.

### Taiwan

20.  On 4 November, 2025, Taiwanese prosecutors announced that they had detained 25 individuals and seized T$4.5 billion (approximately US$147 million) in assets tied to the Prince Group. The seized assets include 26 high-end cars, properties, and bank accounts tied to the network and to Chen in relation to money laundering and forced labour offences.

### Thailand

21.  On 3 December, 2025, the Thai authorities announced that they had seized assets worth more than 10,157 million baht (approximately US$318 million) and issued arrest warrants for 42 individuals linked to transnational online scam operations connected to Chen and Cambodian nationals Kok An and Yim Leak. As of 3 December, 2025, 29 individuals had been arrested. The seizures include shares in Bangchak Corporation Limited worth 6 billion baht (approximately US$188 million). Thailand's Anti-Money Laundering Office (AMLO) stated that investigators had found *"information on networks of online fraud, human trafficking, and money-laundering"* that were linked to Chen and his associates.

7

443

**The effect of the multi-jurisdictional actions**

22.    These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating transnational organised crime, human trafficking, forced labour, and large-scale financial fraud. The scale and coordination of these actions across at least six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network

23.    In total, as of 9 December, 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The role of BVI companies**

24.    The OFAC has determined that the BVI companies form part of a complex network of holding companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

25.    In the US Complaint, the US DOJ alleged that Chen and his associates also laundered fraudulent proceeds through several companies including companies in the BVI which are under their control. It alleged further that these companies do not serve any real purpose other than to launder funds. Two BVI Companies were named in the US Proceedings - Amber Hill Ventures Limited (**"Amber Hill"**) and Lateral Bridge Global Limited (**"LBG"**).

26.    Amber Hill and LBG are said to be controlled by two of Chen's associates, who are also defendants in the US Civil Proceedings. The US Complaint discloses that personnel from the Federal Bureau of Investigation ("FBI") have conducted extensive blockchain tracing to analyse the movements of the Prince Group's cryptocurrency. The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin which the US DOJ seeks to forfeit flowed through wallets which were controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

8

444

27.     It is also alleged that Amber Hill had a banking relationship with a financial institution in the United States. It was recorded in the account opening documents with that financial institution that Amber Hill's business activities consisted of "*[p]roprietary trading and investing*," and its anticipated deposit and withdrawal activity would be approximately $2 million each. However, according to account statements, in February 2020, Amber Hill's account with that financial institution had approximately $22.5 million in deposits and $21.8 million in withdrawals. Amber Hill was struck from the register and dissolved on 10 November, 2023.

**THE APPLICATION**

28.     The Application is made by the Attorney General on the ground that (i) it is just and equitable that joint liquidators be appointed over the Company pursuant to section 162 (1) (b) of the Act and (ii) it is in the public interest that the joint liquidators are appointed pursuant to section 162 (1) (c) of the Act.

**Just and equitable ground**

29.     Section 162(1)(b) of the Insolvency Act, 2003 provides that the Court may appoint a liquidator of a company if "the Court is of the opinion that it is just and equitable that the company should be liquidated."

30.     The Attorney General is listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(b) of the Act.

31.     It is just and equitable that the Company should be placed into liquidation for the following reasons:

    a.     Li Caiyun is the sole Director of the Company. Chen is the Company's sole Shareholder. Chen is alleged to be the mastermind of the Prince Group.  He has been criminally indicted in the United States and is subject to personal sanctions by both the United States and the United Kingdom.

    b.     The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities, to include forced labour, human trafficking, large-scale fraud, and money laundering on a massive international scale.

9

445

c. The BVI companies including the Company are alleged to have been established and operated to assist Chen and the Prince Group which has defrauded numerous vulnerable victims of billions of US dollars.

d. Despite the enforcement actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on the allegations is free to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

e. The activities of some of the companies in the Prince Group have been the subject of civil and criminal enforcement actions in multiple jurisdictions, with authorities in six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

f. The Company is alleged to be a shell company which was used solely as a vehicle for the fraudulent scheme.

g. The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf, and identify potential claims against third parties.

h. The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

i. Independent liquidators are necessary to ensure proper coordination with regulatory and law enforcement authorities and liquidators, trustees, or receivers appointed in the BVI and other jurisdictions, given the multi-jurisdictional nature of the scheme and the actions taken by various authorities in several jurisdictions.

j. Independent liquidators would enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed as part of a collective process.

k. Given the fraudulent nature of the scheme, there are likely to be voidable transactions, preferences, and other claims that independent liquidators could pursue for the benefit of the victims and creditors.

32. Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that its affairs are properly investigated and wound up under the supervision of this Honourable Court.

10

446

**Public Interest ground**

33.    Section 162(1)(c) of the Act gives the Court the discretion to appoint a liquidator of a company if it is of the opinion that it is in the public interest for a liquidator to be appointed.

34.    The Attorney General is also listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(c) of the Act.

35.    The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

36.    BVI companies including, the Company are alleged to have been used as vehicles in what has been described by international law enforcement authorities as one of the largest fraudulent investment schemes in recent history.  The scheme has caused billions of dollars in losses to victims worldwide and involved egregious human rights abuses.  They are alleged to have been used to launder and/or hold the proceeds of the horrific crimes committed by Chen and his associates, including human trafficking, forced labour, aggravated identity theft, international fraud designed to scam unsuspecting victims of their lifesavings and money laundering.  These criminal and fraudulent activities are inherently objectionable and are contrary to clearly identifiable public interest.

37.    The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the BVI as a financial centre and threatens confidence in BVI incorporated companies and the BVI's regulatory framework.

38.    The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for fraudulent purposes.

39.    The appointment of liquidators will:
    a.    facilitate cooperation with enforcement authorities, regulators, and insolvency practitioners in the BVI and other jurisdictions, demonstrating the BVI's commitment to

11

447

international cooperation in combating financial fraud;

b.    ensure that the Company's affairs are properly investigated and that appropriate steps are taken to recover assets and maximise returns to defrauded investors;

c.    enable a proper investigation into how the Company was used in the fraudulent scheme, which may assist in preventing similar schemes in the future.

40.    Given that enforcement authorities in at least six countries have taken action and frozen or seized assets valued at over US$16 billion, it is in the public interest that BVI as the jurisdiction of incorporation of the Company, takes prompt and decisive action through the appointment of liquidators.

41.    The scale of this fraud and the international coordination of related actions make it imperative, from a public interest perspective, that the BVI positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

42.    In all the circumstances, it is not only just and equitable but also in the public interest that Joint liquidators be appointed over the Company to prevent it from being used to further Chen's and the Prince Group's criminal enterprise.

43.    If appointed, the joint liquidators would be able to take control of the Company, take the necessary steps in the BVI or overseas to secure and preserve its books and records and secure its assets for the benefit of the victims of the crimes perpetuated by the Prince Group. As officers of the court, they would also be able to independently investigate claims against the Company, marshal records, ensure that the Company complies with BVI laws and regulations and respond to any court process.

**Proposed liquidators**

44.    Mr. James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110, Mr. Paul Pretlove and Mr. David Standish, both of Interpath Ltd, 10 Fleet Place, London EC4M 7RB who to the best of the Applicant's knowledge and belief are eligible insolvency practitioners have all consented to be appointed as joint liquidators of the Company.

12

45.    In the circumstances, it is just and equitable and in the public's interest to grant the order which the Attorney General seeks, for the appointment of joint liquidators over the Company.

A draft of the order sought is attached.

This application is supported by the affidavit of Attorney General Dawn J Smith.

The names and addresses of the persons on whom it is intended to serve the application are as follows:

**Oriental Charm Holdings Investment Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

The names and addresses of the persons required to be given notice of this application pursuant to the Act and the Rules (if any) are as follows:

**Oriental Charm Holdings Investment Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

This Application is filed by O'Neal Webster, Solicitors for the Applicant, whose address for service is 2nd

Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands. REF: 101538

Dated: January 2, 2026

_____
Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

13

449

THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/

**IN THE MATTER OF ORIENTAL CHARM HOLDINGS INVESTMENT LIMITED**

**AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS**

BETWEEN:

**THE ATTORNEY GENERAL**

Applicant

**AND**

**ORIENTAL CHARM HOLDINGS INVESTMENT LIMITED**

Respondent

---

**ORIGINATING APPLICATION**

---



O'Neal
Webster

Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 I Fax: (284) 393 5805
www.onealwebster.com

14

450

Case Number :BVIHCOM2026/0015

```
       FILED
   HIGH COURT
    TERRITORY OF
  THE VIRGIN ISLANDS
```

The Insolvency Rules 2005

**ORDINARY APPLICATION (EX-PARTE)**

**(Company)**

Rule 14

Submitted Date:04/01/2026 17:43

Filed Date:05/01/2026 08:47

Fees Paid:0.00

| | |
|---|---|
| **THE EASTERN CARIBBEAN SUPREME COURT IN THE HIGH COURT OF JUSTICE VIRGIN ISLANDS COMMERCIAL DIVISION** | |
| Matter No.: | BVIHC(COM)     of 2026 |
| Applicant: | **THE ATTORNEY GENERAL** |
| Respondent: | **ORIENTAL CHARM HOLDINGS INVESTMENT LIMITED** |

In the matter of:

**ORIENTAL CHARM HOLDINGS INVESTMENT LIMITED**

| For Court Use Only |
|---|
| **To: ORIENTAL CHARM HOLDINGS INVESTMENT LIMITED,** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands. |
| **This Application will be heard by the Commercial Court Judge at Road Town, Tortola British Virgin Islands** |
| on the           day of                    2026    at                    o'clock. |
| **If you do not attend at the time shown the Court may make an order in your absence** |

We, O'Neal Webster, on behalf of the Applicant, **the Attorney General of the Virgin Islands ("the Attorney General")**, apply pursuant to section 170 of the Insolvency Act 2003 (the "Act") for the following orders that:

1.  James Drury,  a Virgin Islands ("BVI") licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola,  Virgin Islands, VG1110; and Paul Pretlove and David Standish both United Kingdom ("UK") licensed insolvency

1

7

practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB to be appointed as joint provisional liquidators of Oriental Charm Holdings Investment Limited **("the Company")** with immediate effect.

2. The powers afforded to the said joint provisional liquidators shall be as set out in Schedule 2 of the Act as varied by Schedule 3, and as further varied by this Order.

3. An order that the joint provisional liquidators have the power to:

    a. consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the joint provisional liquidators and the Attorney General which is attached hereto **("the Protocol")**.

    b. cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4. An order that the costs of the liquidation, including the proper fees and disbursements of the joint liquidators, the Attorney General's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

5. An order that the costs of the application be costs in the liquidation.

6. Such further order as the court deems appropriate.

A draft of the order sought is attached.

The grounds upon which this order is sought are set out in the affidavit of the Attorney General Dawn J. Smith filed on 2 January 2026, but in brief are as follows:

**Introduction**

1. There are good prima facie reasons as set out in the originating application for the eventual appointment of full liquidators on the grounds of public interest and on the grounds that it is just and equitable that they be appointed over the Company. A summary of these reasons is set out

2

8

below.

**The Company and the Prince Group**

2. The Company was incorporated under the laws of the Virgin Islands **("BVI")** on 26 April 2018. Its registered office is located at Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, BVI, VG1110.  Li Caiyun is the sole Director of the Company. Chen Zhi **("Chen")** is the Company's sole Shareholder.

3. The Company is alleged to be a member of a transnational criminal organisation that is headed by the Prince Holding Group **("the Prince Group")** which is a Cambodian corporate conglomerate comprised of several  companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan. Chen is the mastermind of the Prince Group's transnational criminal organisation and its chairman.

**Action in the USA and other jurisdictions**

4. On 14 October, 2025, the United States Department of Justice **("US DOJ")**, the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** and the United Kingdom Government announced coordinated  actions targeting the Prince Group.

5. The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York **("the NY District Court")** on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering **("the US Indictment")**. Concurrently, the US DOJ filed a civil forfeiture complaint **("the US Complaint")** seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group.  The criminal and civil proceedings will be referred together as the **"the US Proceedings"**.

6. On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation.  The effect of this designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them.  The targets include Chen and the Company.

3

7. On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group. In doing so it noted that Chen and his associates have incorporated companies in the BVI and own properties in London including a £12 million mansion on Avenue Road in North London, a £100 million office building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and in Nine Elms in South London.

8. News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen, the Prince Group, and its related entities and companies. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the coordinated global response to combat transnational organised crime.

9. These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating transnational organised crime, human trafficking, forced labour, and large-scale financial fraud. The scale and coordination of these actions across six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network.

10. In total, as of 9 December 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand) have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The allegation against Chen, his associates and companies within the Prince Group**

11. In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and criminal activities including cryptocurrency investment fraud, human trafficking, money laundering, wire fraud, bank fraud, forced labour and, illegal online gambling. It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers. The scammers disappeared after taking almost every dollar they could from their

4

victims.

12.   The US DOJ also alleges that the fraudulent activities carried out by the Prince Group resulted in billions of dollars in losses incurred by victims in the United States and around the world. Chen and his associates are alleged to use the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

13.   To effectuate their fraudulent schemes, it is alleged in the US Proceedings that Chen and his associates:

    a.   forced migrant workers who were – not always, but often – victims themselves of human trafficking, to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

    b.   frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

    c.   used their political influence in multiple countries to protect their criminal enterprise; and

    d.   paid bribes to foreign public officials to avoid disruption by law enforcement.

**The role of BVI Companies in the Prince Group**

14.   The OFAC determined that the BVI companies form part of a complex network of companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

15.   In the US complaint, the US DOJ alleged that Chen and his associates laundered the fraudulent proceeds of their crime through several companies in the BVI, Cayman, Cambodia and Hong Kong, which are under their control. It alleged further that these companies do not serve any real purpose other than to launder the proceeds of their criminal and fraudulent activities. Two BVI Companies are named in the US Complaint - Amber Hill Ventures Limited ("**Amber Hill**") and Lateral Bridge Global Limited **("LBG").**

5

11

16. The US Complaint discloses that personnel from the Federal Bureau of Investigation ("FBI") have conducted extensive blockchain tracing to analyse the movements of the Prince Group's cryptocurrency. The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin which the US DOJ seeks to forfeit flowed through wallets which were controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

**It is just and equitable that liquidators be appointed over the Company**

17. The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities to include forced labour, human trafficking, large-scale fraud, and money laundering on a massive international scale.

18. The activities of some of the companies in the Prince Group have been the subject of civil and criminal actions in multiple jurisdictions, with authorities in at least six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

19. The BVI companies including the Company are alleged to have been established and operated to assist Chen and the Prince Group which has defrauded numerous vulnerable victims of billions of US dollars.

20. Despite the actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on allegations is free to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

21. The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf for the benefit of the victims of the fraud; and to identify potential claims against third parties.

22. The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

6

12

23. Independent liquidators are necessary to ensure proper coordination with regulatory and enforcement authorities and liquidators, trustees, or receivers appointed in the Virgin Islands and other jurisdictions, given the multi-jurisdictional nature of the scheme and the actions. Independent liquidators would also enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed.

24. Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that its affairs are properly investigated and wound up under the supervision of this Honourable Court.

**It is in the public interest that liquidators be appointed over the Company**

25. The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

26. The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the Virgin Islands as a financial centre and threatens confidence in BVI companies and the BVI's regulatory framework.

27. The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for nefarious purposes and with its commitment to international cooperation and combating serious transnational crime.

28. Given that regulatory and law enforcement authorities in at least six countries have taken action and frozen or seized assets valued at over US$16 billion, it is in the public interest that the BVI as the jurisdiction of incorporation of the Company takes prompt and decisive action through the appointment of liquidators.

29. The scale of this fraud and the international coordination of actions make it imperative, from a public interest perspective, that the BVI positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

7

13

**The appointment of joint provisional liquidators**

30.   It is essential that joint provisional liquidators be appointed over the Company immediately (without notice to it and its principals) and before the originating application is heard and determined for the following reasons:

a.   The Company continues to be under the control of Chen and his associates and as a result, they can use or continue to use it to further the criminal enterprise thereby continuing to inflict public harm.

b.   Given the serious allegations set out in this application, the sanctions imposed by the United States and the UK Government, the US Indictment, and the US Complaint, it is appropriate and necessary that provisional liquidators be appointed immediately to:

(i)   immediately take full control of the Company;

(ii)   identify and preserve its assets that may represent proceeds of crime by preventing further movement, concealment, or dissipation of those assets;

(iii)   take control of its books and records;

(iv)   conduct thorough investigations into its past transactions; and

(v)   review banking records, asset transfers, and corporate dealings to identify and locate the potential money laundering activities.

c.   The information and evidence gathered by the liquidators may provide crucial support for law enforcement authorities, both in the BVI and internationally, to apply for freezing orders, forfeiture orders, and other remedies. In this case, given that the United States has already filed a civil complaint seeking forfeiture of 127,271 Bitcoin valued at approximately US$15 billion allegedly connected to the Prince Group's criminal activities, the work of the liquidators could materially assist in tracing assets and preserving evidence relevant to that and other actions.

d.   The appointment of provisional liquidator over the Company and other BVI companies which are owned and controlled by Chen would align with the BVI's National AML/CFT Policy and its commitment to international cooperation in combating serious transnational crime.

e.   The coordinated actions taken by the US DOJ and UK Government on 14 October, 2025 signal the seriousness with which these major jurisdictions view the alleged criminal activities of the Prince Group. The appointment of provisional liquidators by this

8

Honourable Court would demonstrate that the BVI is equally committed to ensuring that its corporate structures are not used as vehicles for serious criminality and would facilitate cooperation with international authorities in their ongoing investigations and asset recovery efforts.

**Urgency**

31.    The public announcements of the US Civil Proceedings, OFAC sanctions, and UK sanctions on 14 October 2025 together with actions taken in other jurisdictions have no doubt put Chen and his associates, who are alleged to be sophisticated criminals, on notice of the scrutiny being applied to the Prince Group network and its corporate structures.

32.    The Company is likely to have received proceeds of the criminal and fraudulent activities and to have documentation that may assist in recovering the proceeds of the crime. There is a real and substantial risk that absent the immediate appointment of provisional liquidators, assets held by or through the BVI companies, including the Company will be transferred, concealed, or dissipated and documents will be destroyed or concealed. This real and substantial risk will increase once the Company is served with the originating application,

33.    The appointment of provisional liquidators will immediately remove control from Chen and place the Company under the supervision and control of officers of this Court, thereby protecting the integrity of any investigation and preserving assets for the benefit of the victims of Chen and the Prince Group's fraudulent and criminal activities.

34.    The appointment of joint provisional liquidators is appropriate given the number of BVI companies involved, the complexity of the alleged corporate structure spanning multiple jurisdictions, the international nature of the investigations and actions, and the need for extensive expertise in tracing assets and investigating potential money laundering activities.

**The Proposed provisional liquidators**

35.    The Attorney General proposes that James Drury, a BVI licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110; and Paul Pretlove and David Standish, both UK licensed

9

insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB be appointed as joint provisional liquidators of the Company.

**Conclusion**

36.    In all the circumstances, it is just and convenient and in the public's interest, that this Honourable Court grants the order which the Attorney General seeks in this application.

A draft of the order sought is attached.

This application is supported by the affidavit of Attorney General Dawn J. Smith.

The names and addresses of the persons on whom it is intended to serve the application are as follows:

This Application is filed by O'Neal Webster, Solicitors for the Applicant whose address for service is 2nd Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands. REF: NW/LG/101538.

Dated: January 2, 2026

_____
Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

10

THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/


IN THE MATTER OF ORIENTAL CHARM HOLDINGS INVESTMENT LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE

LAWS OF THE VIRGIN ISLANDS.


BETWEEN:


**THE ATTORNEY GENERAL**

Applicant

**AND**

**ORIENTAL CHARM HOLDINGS INVESTMENT LIMITED**

Respondent


---

**EX-PARTE ORDINARY APPLICATION
FOR JOINT PROVISIONAL LIQUIDATORS**

---



Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 I Fax: (284) 393 5805
www.onealwebster.com

11

17

**Case Number :BVIHCOM2026/0016**

FILED
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS

The Insolvency Rules 2005

**ORIGINATING APPLICATION**

**(Company)**

Rule 14

**Submitted Date:05/01/2026 10:12**

**Filed Date:05/01/2026 13:10**

**Fees Paid:0.00**

| | |
|---|---|
| **THE EASTERN CARIBBEAN SUPREME COURT**<br>**IN THE HIGH COURT OF JUSTICE**<br>**VIRGIN ISLANDS**<br>**COMMERCIAL DIVISION** | |
| Matter No.: | BVIHC(COM)      of 2026 |
| Applicant: | **THE ATTORNEY GENERAL** |
| Respondent: | **PACIFIC CHARM HOLDINGS INVESTMENT LIMITED** |

In the matter of:

**PACIFIC CHARM HOLDINGS INVESTMENT LIMITED**

| For Court Use Only |
|---|
| **To: PACIFIC CHARM HOLDINGS INVESTMENT LIMITED,** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands.<br><br>**This Application will be heard by the Commercial Court Judge at Road Town, Tortola**<br>**British Virgin Islands**<br>**on the              day of                    2026      at                o'clock.**<br><br>**If you do not attend at the time shown the Court may make an order in your absence** |

The Applicant, the Attorney General of the Virgin Islands (**"Attorney General"**) of TTT Building, Wickhams Cay 1, Road Town, Tortola, Virgin Islands VG1110 applies to the Court for:

1.    An order pursuant to sections 162(1) (b) and (c) of the Insolvency Act, Revised Edition 2020 (**"the Act"**) that Paul Pretlove, James Drury and David Standish, be appointed as joint liquidators of Pacific Charm Holdings Investment Limited (**"the Company"**), a company incorporated under the

1

435

laws of the Virgin Islands ("BVI"). James Drury is a BVI licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110. Paul Pretlove and David Standish are United Kingdom ("UK") licensed insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB acting as overseas insolvency practitioners as defined in the Act.

2.   An order that the joint liquidators be given all powers set out in Schedule 2 of the Act, such powers to be exercisable without the sanction of the Court and such other powers as this Honourable Court deems fit.

3.   An order that the joint liquidators have the power to:

   a.   consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the liquidators and the Attorney General which is attached hereto **("the Protocol")**.

   b.   cooperate and communicate with law enforcement and regulatory authorities in the BVI and in other jurisdictions.

4.   An order that the costs of the liquidation, including the proper fees and disbursements of the joint liquidators and the Attorney General's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims

5.   An order that the costs of the application be costs in the liquidation.

6.   Such further order as the court deems appropriate.

The grounds upon which this order is sought are set out in the affidavit of Attorney General, Dawn J. Smith filed on 2 January 2026 and are summarised as follows:

**THE PARTIES**

1.   The Attorney General is the principal legal adviser to the Government of the Virgin Islands ("**the Government**") pursuant to section 58 of the Virgin Islands Constitution Order, 2007, and has

2

436

overall responsibility for all aspects of civil litigation on behalf of the Government.

2. The Company was incorporated under the laws of the BVI on 26 April 2018. Its registered office is located at Vistra Corporate Services Centre **("Vistra")**, Wickhams Cay II, Road Town, Tortola, BVI, VG1110. The Company is alleged to be a member of a transnational criminal organisation that is headed by Prince Holding Group Limited **("the Prince Group")**, which is a Cambodian corporate conglomerate that comprises several companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan.

3. The chairman of the Prince Group is Chen Zhi **("Chen")**. Chen is the sole Director and sole Shareholder of the Company.

**BACKGROUND**

4. The background is comprehensively set out in the indictment and the verified complaint filed by the United States Department of Justice **("US DOJ")** on October 14, 2025 and in the announcement issued by the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** dated October 13, 2025. The background is summarised below.

**Action in the United States**

5. On 14 October, 2025, the United States Department of Justice **("US DOJ")**, the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** and the United Kingdom Government announced coordinated actions targeting the Prince Group.

6. The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York **("the NY District Court")** on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering **("the US Indictment")**. Concurrently, the US DOJ filed a civil forfeiture complaint **("the US Complaint")** seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group. The criminal and civil proceedings will be referred to together as **"the US Proceedings."**

3

437

7. In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and criminal activities including cryptocurrency investment fraud, human trafficking, money laundering, wire fraud, bank fraud, forced labour and, illegal online gambling. It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers. The scammers disappeared after taking almost every dollar they could from their victims.

8. To effectuate the schemes, it is alleged in the US Proceedings that Chen and his associates:

   a. built and operated forced-labour scam compounds across Cambodia in which workers were made to execute the scams at high volumes. The scam compounds housed vast dormitories surrounded by high walls and barbed wire, and functioned as violent forced labour camps;

   b. forced migrant workers who were – not always, but often – victims themselves of human trafficking to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

   c. frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

   d. used their political influence in multiple countries to protect their criminal enterprise; and

   e. paid bribes to foreign public officials to avoid disruption by law enforcement.

9. The indictment alleges that Chen maintained meticulous records of the compounds' operations, including ledgers of the tracking profits generated from the fraud schemes, documents detailing "phone farms" used in the schemes, and images depicting methods of beating and torture used against workers.

10. The US DOJ alleges that the schemes carried out by the Prince Group resulted in billions of dollars in losses incurred by victims in the United States and around the world. The documents in the US

4

438

Proceedings allege that proceeds from these criminal activities have been laundered through various means, including cryptocurrency (using "spraying" and "funneling" techniques), online gambling operations, and cryptocurrency mining operations. Chen, his associates and companies within the Prince Group, "washed" and returned the fraudulent proceeds to the Prince Group. The "washing" was done by using the Prince Group's vast network of seemingly legitimate business enterprises to launder its criminal proceeds. One common method was to collect the fraudulent proceeds in the form of bitcoin or stablecoins and then off-ramp them into conventional currencies, for example, the US dollar. The launderers then used that cash to purchase clean bitcoin or other cryptocurrencies. Chen was directly involved in coordinating these laundering efforts.

11. Chen and his associates subsequently used the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

12. On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation. The effect of the designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them. The targets include Chen and the Company. The OFAC noted that:

   a. Americans have lost at least $10 billion to Southeast Asia-based scam operations in 2024, a 66 percent increase over the prior year, with scams like those perpetrated by Prince Group being particularly significant.

   b. The Prince Group remained a dominant player in Cambodia's scam economy and has controlled illicit financial flows of billions of dollars.

   c. The actions taken by OFAC and Financial Crimes Enforcement Network (FinCEN) were in close coordination with the United Kingdom's Foreign, Commonwealth, and Development Office ("FCDO"), which took complementary actions against criminal networks responsible for targeting citizens of the United States and other allied nations through online scams and the laundering of stolen funds.

5

439

**Action in the UK**

13.    On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group. In doing so it noted that Chen and his associates have incorporated companies in the BVI and own properties in London, including a £12 million mansion on Avenue Road in North London, a £100 million office building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and Nine Elms in South London.

14.    The Foreign Secretary Yvette Cooper stated that:

> *"The masterminds behind these horrific scam centres are ruining the lives of vulnerable people and buying up London homes to store their money.*
>
> *Together with our US allies, we are taking decisive action to combat the growing transnational threat posed by this network – upholding human rights, protecting British nationals and keeping dirty money off our streets."*

15.    The Fraud Minister Lord Hanson said:

> *"These sanctions prove our determination to stop those who profit from this activity, hold offenders accountable, and keep dirty money out of the UK. Through our new, expanded Fraud Strategy and the upcoming Global Fraud Summit, we will go even further to disrupt corrupt networks and protect the public from shameless criminals."*

16.    The effect of these sanctions is to prevent the transfer of these properties, freeze any business in which Chen and the Prince Group are involved and lock Chen and the Prince Group transnational criminal network out of the UK's financial system.

**Action in other jurisdictions**

17.    News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen, the Prince Group, and its related entities and companies. These actions are set out in paragraphs 19 to 22 below. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the global response to combat transnational organised crime.

*Singapore*

18.    On 31 October, 2025, Singapore police announced that they had seized over $150 million (approximately US$115 million) in assets linked to the Prince Group. The seized assets include six

6

440

properties, bank accounts, securities accounts, and cash which are said to represent the proceeds of money laundering and forgery offences committed by Chen and the Prince Group. According to the Monetary Authority of Singapore (MAS), financial institutions had previously filed suspicious transaction reports, and a number of suspicious accounts had been closed. The Singapore Police Force stated that investigations into Chen and his associates commenced in 2024 after it received intelligence from the Suspicious Transaction Reporting Office (STR).

## Hong Kong

19.    On 4 November, 2025, Hong Kong authorities announced that they had frozen assets worth HK$2.75 billion (approximately US$354 million), which, based on intelligence and information gathered from multiple sources, are suspected to represent proceeds of international cross-border telecommunications fraud and money laundering activities committed by the Prince Group. The frozen assets include cash, stocks, and funds held by individuals and corporate entities. At least 18 Hong Kong companies were blacklisted by the United States in connection with the Prince Group, including two listed companies - *"Khoon Group and Geotech Holdings"*.

## Taiwan

20.    On 4 November, 2025, Taiwanese prosecutors announced that they had detained 25 individuals and seized T$4.5 billion (approximately US$147 million) in assets tied to the Prince Group. The seized assets include 26 high-end cars, properties, and bank accounts tied to the network and to Chen in relation to money laundering and forced labour offences.

## Thailand

21.    On 3 December, 2025, the Thai authorities announced that they had seized assets worth more than 10,157 million baht (approximately US$318 million) and issued arrest warrants for 42 individuals linked to transnational online scam operations connected to Chen and Cambodian nationals Kok An and Yim Leak. As of 3 December, 2025, 29 individuals had been arrested. The seizures include shares in Bangchak Corporation Limited worth 6 billion baht (approximately US$188 million). Thailand's Anti-Money Laundering Office (AMLO) stated that investigators had found *"information on networks of online fraud, human trafficking, and money-laundering"* that were linked to Chen and his associates.

7

**The effect of the multi-jurisdictional actions**

22. These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating transnational organised crime, human trafficking, forced labour, and large-scale financial fraud. The scale and coordination of these actions across at least six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network

23. In total, as of 9 December, 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The role of BVI companies**

24. The OFAC has determined that the BVI companies form part of a complex network of holding companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

25. In the US Complaint, the US DOJ alleged that Chen and his associates also laundered fraudulent proceeds through several companies including companies in the BVI which are under their control. It alleged further that these companies do not serve any real purpose other than to launder funds. Two BVI Companies were named in the US Proceedings - Amber Hill Ventures Limited **("Amber Hill")** and Lateral Bridge Global Limited **("LBG")**.

26. Amber Hill and LBG are said to be controlled by two of Chen's associates, who are also defendants in the US Civil Proceedings. The US Complaint discloses that personnel from the Federal Bureau of Investigation ("FBI") have conducted extensive blockchain tracing to analyse the movements of the Prince Group's cryptocurrency. The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin which the US DOJ seeks to forfeit flowed through wallets which were controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

8

442

27.    It is also alleged that Amber Hill had a banking relationship with a financial institution in the United States. It was recorded in the account opening documents with that financial institution that Amber Hill's business activities consisted of "*[p]roprietary trading and investing*," and its anticipated deposit and withdrawal activity would be approximately $2 million each. However, according to account statements, in February 2020, Amber Hill's account with that financial institution had approximately $22.5 million in deposits and $21.8 million in withdrawals. Amber Hill was struck from the register and dissolved on 10 November, 2023.

**THE APPLICATION**

28.    The Application is made by the Attorney General on the ground that (i) it is just and equitable that joint liquidators be appointed over the Company pursuant to section 162 (1) (b) of the Act and (ii) it is in the public interest that the joint liquidators are appointed pursuant to section 162 (1) (c) of the Act.

**Just and equitable ground**

29.    Section 162(1)(b) of the Insolvency Act, 2003 provides that the Court may appoint a liquidator of a company if "the Court is of the opinion that it is just and equitable that the company should be liquidated."

30.    The Attorney General is listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(b) of the Act.

31.    It is just and equitable that the Company should be placed into liquidation for the following reasons:

    a.    Chen is the sole shareholder and/or director of the Company. He is alleged to be the mastermind of the Prince Group. He has been criminally indicted in the United States and is subject to personal sanctions by both the United States and the United Kingdom.

    b.    The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities, to include forced labour, human trafficking, large-scale fraud, and money laundering on a massive international scale.

    c.    The BVI companies including the Company are alleged to have been established and

9

443

operated to assist Chen and the Prince Group which has defrauded numerous vulnerable victims of billions of US dollars.

d.   Despite the enforcement actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on the allegations is free to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

e.   The activities of some of the companies in the Prince Group have been the subject of civil and criminal enforcement actions in multiple jurisdictions, with authorities in six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

f.   The Company is alleged to be a shell company which was used solely as a vehicle for the fraudulent scheme.

g.   The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf, and identify potential claims against third parties.

h.   The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

i.   Independent liquidators are necessary to ensure proper coordination with regulatory and law enforcement authorities and liquidators, trustees, or receivers appointed in the BVI and other jurisdictions, given the multi-jurisdictional nature of the scheme and the actions taken by various authorities in several jurisdictions.

j.   Independent liquidators would enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed as part of a collective process.

k.   Given the fraudulent nature of the scheme, there are likely to be voidable transactions, preferences, and other claims that independent liquidators could pursue for the benefit of the victims and creditors.

32.   Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that its affairs are properly investigated and wound up under the supervision of this Honourable Court.

10

444

**Public Interest ground**

33. Section 162(1)(c) of the Act gives the Court the discretion to appoint a liquidator of a company if it is of the opinion that it is in the public interest for a liquidator to be appointed.

34. The Attorney General is also listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(c) of the Act.

35. The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

36. BVI companies including, the Company are alleged to have been used as vehicles in what has been described by international law enforcement authorities as one of the largest fraudulent investment schemes in recent history.  The scheme has caused billions of dollars in losses to victims worldwide and involved egregious human rights abuses.  They are alleged to have been used to launder and/or hold the proceeds of the horrific crimes committed by Chen and his associates, including human trafficking, forced labour, aggravated identity theft, international fraud designed to scam unsuspecting victims of their lifesavings and money laundering.  These criminal and fraudulent activities are inherently objectionable and are contrary to clearly identifiable public interest.

37. The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the BVI as a financial centre and threatens confidence in BVI incorporated companies and the BVI's regulatory framework.

38. The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for fraudulent purposes.

39. The appointment of liquidators will:
   a. facilitate cooperation with enforcement authorities, regulators, and insolvency practitioners in the BVI and other jurisdictions, demonstrating the BVI's commitment to international cooperation in combating financial fraud;

11

445

b.      ensure that the Company's **affairs are properly investigated and that appropriate steps** are taken to recover assets and maximise returns to defrauded investors;

c.      enable a proper investigation into how the Company was used in the fraudulent scheme, which may assist in preventing similar schemes in the future.

40.      Given that enforcement authorities in at least six countries have taken action and frozen or seized assets valued at over US$16 billion, it is in the public interest that BVI as the jurisdiction of incorporation of the Company, takes prompt and decisive action through the appointment of liquidators.

41.      The scale of this fraud and the international coordination of related actions make it imperative, from a public interest perspective, that the BVI positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

42.      In all the circumstances, it is not only just and equitable but also in the public interest that Joint liquidators be appointed over the Company to prevent it from being used to **further Chen's and the Prince Group's** criminal enterprise.

43.      If appointed, the joint liquidators would be able to take control of the Company, take the necessary steps in the BVI or overseas to secure and preserve its books and records and secure its assets for the benefit of the victims of the crimes perpetuated by the Prince Group. As officers of the court, they would also be able to independently investigate claims against the Company, marshal records, ensure that the Company complies with BVI laws and regulations and respond to any court process.

**Proposed liquidators**

44.      Mr. James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110, Mr. Paul Pretlove and Mr. David Standish, both of Interpath Ltd, 10 Fleet Place, London EC4M 7RB who to the best of the Applicant's knowledge and belief are **eligible insolvency practitioners** have all consented to be appointed as joint liquidators of the Company.

12

446

45.    In the circumstances, it is just and equitable **and in the public's interest** to grant the order which the Attorney General seeks, for the appointment of joint liquidators over the Company.

A draft of the order sought is attached.

This application is supported by the affidavit of Attorney General Dawn J Smith.

The names and addresses of the persons on whom it is intended to serve the application are as follows:

**Pacific Charm Holdings Investment Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

The names and addresses of the persons required to be given notice of this application pursuant to the Act and the Rules (if any) are as follows:

**Pacific Charm Holdings Investment Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

**This Application is filed by O'Neal Webster, Solicitors for the Applicant,** whose address for service is 2nd Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands. REF: **101538**

Dated: January 2, 2026

_____
Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

13

447

THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/

**IN THE MATTER OF PACIFIC CHARM HOLDINGS INVESTMENT LIMITED**

**AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS**

BETWEEN:

**THE ATTORNEY GENERAL**

Applicant

**AND**

**PACIFIC CHARM HOLDINGS INVESTMENT LIMITED**

Respondent

---

**ORIGINATING APPLICATION**

---



Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 I Fax: (284) 393 5805
www.onealwebster.com

14

448

**Case Number :BVIHCOM2026/0016**



**FILED
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS**

The Insolvency Rules 2005

**ORDINARY APPLICATION (EX-PARTE)**

**(Company)**

Rule 14

**Submitted Date:05/01/2026 10:10**

**Filed Date:05/01/2026 13:10**

**Fees Paid:0.00**

| THE EASTERN CARIBBEAN SUPREME COURT IN THE HIGH COURT OF JUSTICE VIRGIN ISLANDS COMMERCIAL DIVISION | |
|---|---|
| Matter No.: | BVIHC(COM)     of 2026 |
| Applicant: | **THE ATTORNEY GENERAL** |
| Respondent: | **PACIFIC CHARM HOLDINGS INVESTMENT LIMITED** |

In the matter of:

**PACIFIC CHARM HOLDINGS INVESTMENT LIMITED**

| For Court Use Only |
|---|
| **To: PACIFIC CHARM HOLDINGS INVESTMENT LIMITED,** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands. |
| **This Application will be heard by the Commercial Court Judge at Road Town, Tortola** |
| **British Virgin Islands** |
| on the          day of                    2026     at                o'clock. |
| **If you do not attend at the time shown the Court may make an order in your absence** |

We, O'Neal Webster, on behalf of the Applicant, the Attorney General of the Virgin Islands **("the Attorney General")**, apply pursuant to section 170 of the Insolvency Act 2003 (the "Act") for the following orders that:

1.  James Drury,  a **Virgin Islands ("BVI")** licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola,  Virgin Islands, VG1110; and Paul Pretlove and David Standish both **United Kingdom ("UK")** licensed insolvency

1

**7**

practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB to be appointed as joint provisional liquidators of Pacific Charm Holdings Investment Limited **("the Company")** with immediate effect.

2. The powers afforded to the said joint provisional liquidators shall be as set out in Schedule 2 of the Act as varied by Schedule 3, and as further varied by this Order.

3. An order that the joint provisional liquidators have the power to:

   a. consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the joint provisional liquidators and the Attorney General which is attached hereto **("the Protocol")**.

   b. cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4. An order that the costs of the liquidation, including the proper fees and disbursements of the joint **liquidators, the Attorney General's costs of** complying with the Protocol be paid out of assets of the Company in priority to all other claims.

5. An order that the costs of the application be costs in the liquidation.

6. Such further order as the court deems appropriate.

A draft of the order sought is attached.

The grounds upon which this order is sought are set out in the affidavit of the Attorney General Dawn J. Smith filed on 2 January 2026, but in brief are as follows:

**Introduction**

1. There are good prima facie reasons as set out in the originating application for the eventual appointment of full liquidators on the grounds of public interest and on the grounds that it is just and equitable that they be appointed over the Company. A summary of these reasons is set out

2

below.

**The Company and the Prince Group**

2.    The Company was incorporated under the laws of the Virgin Islands (**"BVI"**) on 26 April 2018. Its registered office is located at Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, BVI, VG1110. Zhi Chen (**"Chen"**) s the sole shareholder and director of the Company

3.    The Company is alleged to be a member of a transnational criminal organisation that is headed by the Prince Holding Group (**"the Prince Group"**) which is a Cambodian corporate conglomerate comprised of several companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan. Chen is the mastermind of **the Prince Group's** transnational criminal organisation and its chairman.

**Action in the USA and other jurisdictions**

4.    On 14 October, 2025, the United States Department of Justice (**"US DOJ"**), the United States Department of the Treasury's Office of Foreign Assets Control (**"OFAC"**) and the United Kingdom Government announced coordinated actions targeting the Prince Group.

5.    The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York (**"the NY District Court"**) on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering (**"the US Indictment"**). Concurrently, the US DOJ filed a civil forfeiture complaint (**"the US Complaint"**) seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group. The criminal and civil proceedings will be referred together as the **"the US Proceedings"**.

6.    On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation. The effect of this designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them. The targets include Chen and the Company.

3

9

7. On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group. In doing so it noted that Chen and his associates have incorporated companies in the BVI and own properties in London including a £12 million mansion on Avenue Road in North London, a £100 million office building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and in Nine Elms in South London.

8. News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen, the Prince Group, and its related entities and companies. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the coordinated global response to combat transnational organised crime.

9. These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating transnational organised crime, human trafficking, forced labour, and large-scale financial fraud. The scale and coordination of these actions across six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network.

10. In total, as of 9 December 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand) have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The allegation against Chen, his associates and companies within the Prince Group**

11. In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and criminal activities including cryptocurrency investment fraud, human trafficking, money laundering, wire fraud, bank fraud, forced labour and, illegal online gambling. It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers. The scammers disappeared after taking almost every dollar they could from their victims.

4

10

12.     The US DOJ also alleges that the fraudulent activities carried out by the Prince Group resulted in billions of dollars in losses incurred by victims in the United States and around the world. Chen and his associates are alleged to use the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

13.     To effectuate their fraudulent schemes, it is alleged in the US Proceedings that Chen and his associates:

   a.     forced migrant workers who were – not always, but often – victims themselves of human trafficking, to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

   b.     frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

   c.     used their political influence in multiple countries to protect their criminal enterprise; and

   d.     paid bribes to foreign public officials to avoid disruption by law enforcement.

**The role of BVI Companies in the Prince Group**

14.     The OFAC determined that the BVI companies form part of a complex network of companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

15.     In the US complaint, the US DOJ alleged that Chen and his associates laundered the fraudulent proceeds of their crime through several companies in the BVI, Cayman, Cambodia and Hong Kong, which are under their control. It alleged further that these companies do not serve any real purpose other than to launder the proceeds of their criminal and fraudulent activities. Two BVI Companies are named in the US Complaint - **Amber Hill Ventures Limited ("Amber Hill") and** Lateral Bridge Global Limited **("LBG")**.

16.     The US Complaint discloses that personnel from the Federal **Bureau of Investigation ("FBI") have**

5

11

conducted extensive blockchain tracing to analyse the movements of the Prince Group's cryptocurrency. The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin which the US DOJ seeks to forfeit flowed through wallets which were controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

**It is just and equitable that liquidators be appointed over the Company**

17. The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities to include forced labour, human trafficking, large-scale fraud, and money laundering on a massive international scale.

18. The activities of some of the companies in the Prince Group have been the subject of civil and criminal actions in multiple jurisdictions, with authorities in at least six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

19. The BVI companies including the Company are alleged to have been established and operated to assist Chen and the Prince Group which has defrauded numerous vulnerable victims of billions of US dollars.

20. Despite the actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on allegations is free to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

21. The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf for the benefit of the victims of the fraud; and to identify potential claims against third parties.

22. The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

23. Independent liquidators are necessary to ensure proper coordination with regulatory and

6

12

enforcement authorities and liquidators, trustees, or receivers appointed in the Virgin Islands and other jurisdictions, given the multi-jurisdictional nature of the scheme and the actions. Independent liquidators would also enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed.

24. Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that its affairs are properly investigated and wound up under the supervision of this Honourable Court.

**It is in the public interest that liquidators be appointed over the Company**

25. The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

26. The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the Virgin Islands as a financial centre and threatens confidence in BVI companies and the BVI's regulatory framework.

27. The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for nefarious purposes and with its commitment to international cooperation and combating serious transnational crime.

28. Given that regulatory and law enforcement authorities in at least six countries have taken action and frozen or seized assets valued at over US$16 billion, it is in the public interest that the BVI as the jurisdiction of incorporation of the Company takes prompt and decisive action through the appointment of liquidators.

29. The scale of this fraud and the international coordination of actions make it imperative, from a public interest perspective, that the BVI positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

**The appointment of joint provisional liquidators**

7

13

30.   It is essential that joint provisional liquidators be appointed over the Company immediately (without notice to it and its principals) and before the originating application is heard and determined for the following reasons:

   a.   The Company continues to be under the control of Chen and his associates and as a result, they can use or continue to use it to further the criminal enterprise thereby continuing to inflict public harm.

   b.   Given the serious allegations set out in this application, the sanctions imposed by the United States and the UK Government, the US Indictment, and the US Complaint, it is appropriate and necessary that provisional liquidators be appointed immediately to:

      (i)   immediately take full control of the Company;

      (ii)   identify and preserve its assets that may represent proceeds of crime by preventing further movement, concealment, or dissipation of those assets;

      (iii)   take control of its books and records;

      (iv)   conduct thorough investigations into its past transactions; and

      (v)   review banking records, asset transfers, and corporate dealings to identify and locate the potential money laundering activities.

   c.   The information and evidence gathered by the liquidators may provide crucial support for law enforcement authorities, both in the BVI and internationally, to apply for freezing orders, forfeiture orders, and other remedies. In this case, given that the United States has already filed a civil complaint seeking forfeiture of 127,271 Bitcoin valued at approximately US$15 billion allegedly connected to the Prince Group's criminal activities, the work of the liquidators could materially assist in tracing assets and preserving evidence relevant to that and other actions.

   d.   The appointment of provisional liquidator over the Company and other BVI companies which are owned and controlled by Chen would align with the BVI's National AML/CFT Policy and its commitment to international cooperation in combating serious transnational crime.

   e.   The coordinated actions taken by the US DOJ and UK Government on 14 October, 2025 signal the seriousness with which these major jurisdictions view the alleged criminal activities of the Prince Group. The appointment of provisional liquidators by this Honourable Court would demonstrate that the BVI is equally committed to ensuring that its corporate structures are not used as vehicles for serious criminality and would

8

14

facilitate cooperation with international authorities in their ongoing investigations and asset recovery efforts.

**Urgency**

31. The public announcements of the US Civil Proceedings, OFAC sanctions, and UK sanctions on 14 October 2025 together with actions taken in other jurisdictions have no doubt put Chen and his associates, who are alleged to be sophisticated criminals, on notice of the scrutiny being applied to the Prince Group network and its corporate structures.

32. The Company is likely to have received proceeds of the criminal and fraudulent activities and to have documentation that may assist in recovering the proceeds of the crime. There is a real and substantial risk that absent the immediate appointment of provisional liquidators, assets held by or through the BVI companies, including the Company will be transferred, concealed, or dissipated and documents will be destroyed or concealed. This real and substantial risk will increase once the Company is served with the originating application,

33. The appointment of provisional liquidators will immediately remove control from Chen and place the Company under the supervision and control of officers of this Court, thereby protecting the integrity of any investigation and preserving assets for the benefit of the victims of Chen and the Prince Group's fraudulent and criminal activities.

34. The appointment of joint provisional liquidators is appropriate given the number of BVI companies involved, the complexity of the alleged corporate structure spanning multiple jurisdictions, the international nature of the investigations and actions, and the need for extensive expertise in tracing assets and investigating potential money laundering activities.

**The Proposed provisional liquidators**

35. The Attorney General proposes that James Drury, a BVI licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110; and Paul Pretlove and David Standish, both UK licensed insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB be appointed as joint provisional liquidators of the Company.

9

15

**Conclusion**

36.     In all the circumstances, it is just and convenient **and in the public's interest,** that this Honourable Court grants the order which the Attorney General seeks in this application.

A draft of the order sought is attached.

This application is supported by the affidavit of Attorney General Dawn J. Smith.

The names and addresses of the persons on whom it is intended to serve the application are as follows:

**This Application is filed by O'Neal Webster, Solicitors for the Applicant whose address for service is** 2nd Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands. REF: NW/LG/101538.

Dated: January 2, 2026

_____
Nadine Whyte Laing
**O'Neal Webster**
Legal practitioners for the Applicant

10

16

THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/

IN THE MATTER OF PACIFIC CHARM HOLDINGS INVESTMENT LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.

BETWEEN:

**THE ATTORNEY GENERAL**

Applicant

**AND**

**PACIFIC CHARM HOLDINGS INVESTMENT LIMITED**

Respondent

---

**EX-PARTE ORDINARY APPLICATION**
**FOR JOINT PROVISIONAL LIQUIDATORS**

---



O'Neal Webster

Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 I Fax: (284) 393 5805
www.onealwebster.com

11

17

**Case Number :BVIHCOM2026/0018**

**FILED**
**HIGH COURT**
**TERRITORY OF**
**THE VIRGIN ISLANDS**

The Insolvency Rules 2005

**ORIGINATING APPLICATION**

**(Company)**

Rule 14

**Submitted Date:05/01/2026 10:16**

**Filed Date:05/01/2026 13:22**

**Fees Paid:0.00**

| THE EASTERN CARIBBEAN SUPREME COURT IN THE HIGH COURT OF JUSTICE VIRGIN ISLANDS COMMERCIAL DIVISION | |
|---|---|
| Matter No.: | BVIHC(COM)        of 2026 |
| Applicant: | **THE ATTORNEY GENERAL** |
| Respondent: | **PRAISE MARBLE LIMITED** |

In the matter of:

| PRAISE MARBLE LIMITED |
|---|

| For Court Use Only |
|---|
| **To: PRAISE MARBLE LIMITED,** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands. |
| **This Application will be heard by the Commercial Court Judge at Road Town, Tortola British Virgin Islands** |
| **on the            day of                    2026      at              o'clock.** |
| **If you do not attend at the time shown the Court may make an order in your absence** |

The Applicant, the Attorney General of the Virgin Islands ("**Attorney General**") of TTT Building, Wickhams Cay 1, Road Town, Tortola, Virgin Islands VG1110 applies to the Court for:

1.  An order pursuant to sections 162(1) (b) and (c) of the Insolvency Act, Revised Edition 2020 ("**the Act**") that Paul Pretlove, James Drury and David Standish, be appointed as joint liquidators of Praise Marble Limited **("the Company")**, a company incorporated under the laws of the Virgin Islands ("**BVI**"). James Drury is a BVI licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands,

1

VG1110. Paul Pretlove and David Standish are United Kingdom ("UK") licensed insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB acting as overseas insolvency practitioners as defined in the Act.

2. An order that the joint liquidators be given all powers set out in Schedule 2 of the Act, such powers to be exercisable without the sanction of the Court and such other powers as this Honourable Court deems fit.

3. An order that the joint liquidators have the power to:

   a. consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the liquidators and the Attorney General which is attached hereto **("the Protocol")**.

   b. cooperate and communicate with law enforcement and regulatory authorities in the BVI and in other jurisdictions.

4. An order that the costs of the liquidation, including the proper fees and disbursements of the joint liquidators and the Attorney General's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims

5. An order that the costs of the application be costs in the liquidation.

6. Such further order as the court deems appropriate.

The grounds upon which this order is sought are set out in the affidavit of Attorney General, Dawn J. Smith filed on 2 January 2026 and are summarised as follows:

**THE PARTIES**

1. The Attorney General is the principal legal adviser to the Government of the Virgin Islands ("**the Government**") pursuant to section 58 of the Virgin Islands Constitution Order, 2007, and has overall responsibility for all aspects of civil litigation on behalf of the Government.

2

2. The Company was incorporated under the laws of the BVI on 12 January 2016. Its registered office is located at Vistra Corporate Services Centre **("Vistra")**, Wickhams Cay II, Road Town, Tortola, BVI, VG1110. The Company is alleged to be a member of a transnational criminal organisation that is headed by Prince Holding Group Limited **("the Prince Group"),** which is a Cambodian corporate conglomerate that comprises several companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan.

3. The chairman of the Prince Group is Chen Zhi **("Chen").** Garrison Hui Sai Kwong is the sole Director of the Company. Geotech Holdings Ltd **("Geotech")** is the Company's sole Shareholder. According to Geotech's 2023 Annual Report, Chen is Geotech's Chairman and one of its authorized representatives.

**BACKGROUND**

4. The background is comprehensively set out in the indictment and the verified complaint filed by the United States Department of Justice **("US DOJ")** on October 14, 2025 and in the announcement issued by the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** dated October 13, 2025. The background is summarised below.

**Action in the United States**

5. On 14 October, 2025, the United States Department of Justice **("US DOJ"),** the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** and the United Kingdom Government announced coordinated actions targeting the Prince Group.

6. The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York **("the NY District Court")** on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering **("the US Indictment").** Concurrently, the US DOJ filed a civil forfeiture complaint **("the US Complaint")** seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group. The criminal and civil proceedings will be referred to together as "**the US Proceedings**."

3

7.    In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and criminal activities including cryptocurrency investment fraud, human trafficking, money laundering, wire fraud, bank fraud, forced labour and, illegal online gambling.  It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers.  The scammers disappeared after taking almost every dollar they could from their victims.

8.    To effectuate the schemes, it is alleged in the US Proceedings that Chen and his associates:

   a.    built and operated forced-labour scam compounds across Cambodia in which workers were made to execute the scams at high volumes. The scam compounds housed vast dormitories surrounded by high walls and barbed wire, and functioned as violent forced labour camps;

   b.    forced migrant workers who were – not always, but often – victims themselves of human trafficking to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

   c.    frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

   d.    used their political influence in multiple countries to protect their criminal enterprise; and

   e.    paid bribes to foreign public officials to avoid disruption by law enforcement.

9.    The indictment alleges that Chen maintained meticulous records of the compounds' operations, including ledgers of the tracking profits generated from the fraud schemes, documents detailing "phone farms" used in the schemes, and images depicting methods of beating and torture used against workers.

10.    The US DOJ alleges that the schemes carried out by the Prince Group resulted in billions of dollars in losses incurred by victims in the United States and around the world. The documents in the US

4

Proceedings allege that proceeds from these criminal activities have been laundered through various means, including cryptocurrency (using "spraying" and "funneling" techniques), online gambling operations, and cryptocurrency mining operations. Chen, his associates and companies within the Prince Group, "washed" and returned the fraudulent proceeds to the Prince Group. The "washing" was done by using the Prince Group's vast network of seemingly legitimate business enterprises to launder its criminal proceeds. One common method was to collect the fraudulent proceeds in the form of bitcoin or stablecoins and then off-ramp them into conventional currencies, for example, the US dollar. The launderers then used that cash to purchase clean bitcoin or other cryptocurrencies. Chen was directly involved in coordinating these laundering efforts.

11.    Chen and his associates subsequently used the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

12.    On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation.  The effect of the designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them.  The targets include Chen and the Company. The OFAC noted that:

   a.    Americans have lost at least $10 billion to Southeast Asia-based scam operations in 2024, a 66 percent increase over the prior year, with scams like those perpetrated by Prince Group being particularly significant.

   b.    The Prince Group remained a dominant player in Cambodia's scam economy and has controlled illicit financial flows of billions of dollars.

   c.    The actions taken by OFAC and Financial Crimes Enforcement Network (FinCEN) were in close coordination with the United Kingdom's Foreign, Commonwealth, and Development Office ("FCDO"), which took complementary actions against criminal networks responsible for targeting citizens of the United States and other allied nations through online scams and the laundering of stolen funds.

5

**Action in the UK**

13.    On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group.  In doing so it noted that Chen and his associates have incorporated companies in the BVI and own properties in London, including a £12 million mansion on Avenue Road in North London, a £100 million office building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and Nine Elms in South London.

14.    The Foreign Secretary Yvette Cooper stated that:

> "*The masterminds behind these horrific scam centres are ruining the lives of vulnerable people and buying up London homes to store their money.*
>
> *Together with our US allies, we are taking decisive action to combat the growing transnational threat posed by this network – upholding human rights, protecting British nationals and keeping dirty money off our streets.*"

15.    The Fraud Minister Lord Hanson said:

> "*These sanctions prove our determination to stop those who profit from this activity, hold offenders accountable, and keep dirty money out of the UK. Through our new, expanded Fraud Strategy and the upcoming Global Fraud Summit, we will go even further to disrupt corrupt networks and protect the public from shameless criminals.*"

16.    The effect of these sanctions is to prevent the transfer of these properties, freeze any business in which Chen and the Prince Group are involved and lock Chen and the Prince Group transnational criminal network out of the UK's financial system.

**Action in other jurisdictions**

17.    News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen,  the Prince Group, and its related entities and companies.  These actions are set out in paragraphs 19 to 22 below. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the global response to combat transnational organised crime.

*Singapore*

18.    On 31 October, 2025, Singapore police announced that they had seized over $150 million (approximately US$115 million) in assets linked to the Prince Group. The seized assets include six

6

properties, bank accounts, securities accounts, and cash which are said to represent the proceeds of money laundering and forgery offences committed by Chen and the Prince Group. According to the Monetary Authority of Singapore (MAS), financial institutions had previously filed suspicious transaction reports, and a number of suspicious accounts had been closed. The Singapore Police Force stated that investigations into Chen and his associates commenced in 2024 after it received intelligence from the Suspicious Transaction Reporting Office (STR).

### Hong Kong

19.    On 4 November, 2025, Hong Kong authorities announced that they had frozen assets worth HK$2.75 billion (approximately US$354 million), which, based on intelligence and information gathered from multiple sources, are suspected to represent proceeds of international cross-border telecommunications fraud and money laundering activities committed by the Prince Group. The frozen assets include cash, stocks, and funds held by individuals and corporate entities.  At least 18 Hong Kong companies were blacklisted by the United States in connection with the Prince Group, including two listed companies - *"Khoon Group and Geotech Holdings".*

### Taiwan

20.    On 4 November, 2025, Taiwanese prosecutors announced that they had detained 25 individuals and seized T$4.5 billion (approximately US$147 million) in assets tied to the Prince Group. The seized assets include 26 high-end cars, properties, and bank accounts tied to the network and to Chen in relation to money laundering and forced labour offences.

### Thailand

21.    On 3 December, 2025, the Thai authorities announced that they had seized assets worth more than 10,157 million baht (approximately US$318 million) and issued arrest warrants for 42 individuals linked to transnational online scam operations connected to Chen and Cambodian nationals Kok An and Yim Leak. As of 3 December, 2025, 29 individuals had been arrested. The seizures include shares in Bangchak Corporation Limited worth 6 billion baht (approximately US$188 million). Thailand's Anti-Money Laundering Office (AMLO) stated that investigators had found "*information on networks of online fraud, human trafficking, and money-laundering*" that were linked to Chen and his associates.

**The effect of the multi-jurisdictional actions**

7

22.    These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating transnational organised crime, human trafficking, forced labour, and large-scale financial fraud. The scale and coordination of these actions across at least six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network

23.    In total, as of 9 December, 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The role of BVI companies**

24.    The OFAC has determined that the BVI companies form part of a complex network of holding companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

25.    In the US Complaint, the US DOJ alleged that Chen and his associates also laundered fraudulent proceeds through several companies including companies in the BVI which are under their control. It alleged further that these companies do not serve any real purpose other than to launder funds. Two BVI Companies were named in the US Proceedings - Amber Hill Ventures Limited **("Amber Hill")** and Lateral Bridge Global Limited **("LBG")**.

26.    Amber Hill and LBG are said to be controlled by two of Chen's associates, who are also defendants in the US Civil Proceedings. The US Complaint discloses that personnel from the Federal Bureau of Investigation ("FBI") have conducted extensive blockchain tracing to analyse the movements of the Prince Group's cryptocurrency. The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin which the US DOJ seeks to forfeit flowed through wallets which were controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

27.    It is also alleged that Amber Hill had a banking relationship with a financial institution in the United

8

States. It was recorded in the account opening documents with that financial institution that Amber Hill's business activities consisted of "*[p]roprietary trading and investing*," and its anticipated deposit and withdrawal activity would be approximately $2 million each. However, according to account statements, in February 2020, Amber Hill's account with that financial institution had approximately $22.5 million in deposits and $21.8 million in withdrawals. Amber Hill was struck from the register and dissolved on 10 November, 2023.

**THE APPLICATION**

28.    The Application is made by the Attorney General on the ground that (i) it is just and equitable that joint liquidators be appointed over the Company pursuant to section 162 (1) (b) of the Act and (ii) it is in the public interest that the joint liquidators are appointed pursuant to section 162 (1) (c) of the Act.

**Just and equitable ground**

29.    Section 162(1)(b) of the Insolvency Act, 2003 provides that the Court may appoint a liquidator of a company if "the Court is of the opinion that it is just and equitable that the company should be liquidated."

30.    The Attorney General is listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(b) of the Act.

31.    It is just and equitable that the Company should be placed into liquidation for the following reasons:

    a.    Garrison Hui Sai Kwong is the sole Director of the Company. Geotech Holdings Ltd ("Geotech") is the Company's sole Shareholder. According to Geotech's 2023 Annual Report, Chen is Geotech's Chairman and one of its authorized representatives.  Chen is alleged to be the mastermind of the Prince Group.  He has been criminally indicted in the United States and is subject to personal sanctions by both the United States and the United Kingdom.

    b.    The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities, to include forced labour, human trafficking, large-scale fraud, and

9

money laundering on a massive international scale.

c.    The BVI companies including the Company are alleged to have been established and operated to assist Chen and the Prince Group which has defrauded numerous vulnerable victims of billions of US dollars.

d.    Despite the enforcement actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on the allegations is free to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

e.    The activities of some of the companies in the Prince Group have been the subject of civil and criminal enforcement actions in multiple jurisdictions, with authorities in six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

f.    The Company is alleged to be a shell company which was used solely as a vehicle for the fraudulent scheme.

g.    The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf, and identify potential claims against third parties.

h.    The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

i.    Independent liquidators are necessary to ensure proper coordination with regulatory and law enforcement authorities and liquidators, trustees, or receivers appointed in the BVI and other jurisdictions, given the multi-jurisdictional nature of the scheme and the actions taken by various authorities in several jurisdictions.

j.    Independent liquidators would enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed as part of a collective process.

k.    Given the fraudulent nature of the scheme, there are likely to be voidable transactions, preferences, and other claims that independent liquidators could pursue for the benefit of the victims and creditors.

32.    Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that

10

its affairs are properly investigated and wound up under the supervision of this Honourable Court.

**Public Interest ground**

33.    Section 162(1)(c) of the Act gives the Court the discretion to appoint a liquidator of a company if it is of the opinion that it is in the public interest for a liquidator to be appointed.

34.    The Attorney General is also listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(c) of the Act.

35.    The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

36.    BVI companies including, the Company are alleged to have been used as vehicles in what has been described by international law enforcement authorities as one of the largest fraudulent investment schemes in recent history.  The scheme has caused billions of dollars in losses to victims worldwide and involved egregious human rights abuses.  They are alleged to have been used to launder and/or hold the proceeds of the horrific crimes committed by Chen and his associates, including human trafficking, forced labour, aggravated identity theft, international fraud designed to scam unsuspecting victims of their lifesavings and money laundering.  These criminal and fraudulent activities are inherently objectionable and are contrary to clearly identifiable public interest.

37.    The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the BVI as a financial centre and threatens confidence in BVI incorporated companies and the BVI's regulatory framework.

38.    The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for fraudulent purposes.

39.    The appointment of liquidators will:
a.    facilitate cooperation with enforcement authorities, regulators, and insolvency

11

practitioners in the BVI and other jurisdictions, demonstrating the BVI's commitment to international cooperation in combating financial fraud;

b. ensure that the Company's affairs are properly investigated and that appropriate steps are taken to recover assets and maximise returns to defrauded investors;

c. enable a proper investigation into how the Company was used in the fraudulent scheme, which may assist in preventing similar schemes in the future.

40. Given that enforcement authorities in at least six countries have taken action and frozen or seized assets valued at over US$16 billion, it is in the public interest that BVI as the jurisdiction of incorporation of the Company, takes prompt and decisive action through the appointment of liquidators.

41. The scale of this fraud and the international coordination of related actions make it imperative, from a public interest perspective, that the BVI positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

42. In all the circumstances, it is not only just and equitable but also in the public interest that Joint liquidators be appointed over the Company to prevent it from being used to further Chen's and the Prince Group's criminal enterprise.

43. If appointed, the joint liquidators would be able to take control of the Company, take the necessary steps in the BVI or overseas to secure and preserve its books and records and secure its assets for the benefit of the victims of the crimes perpetuated by the Prince Group. As officers of the court, they would also be able to independently investigate claims against the Company, marshal records, ensure that the Company complies with BVI laws and regulations and respond to any court process.

**Proposed liquidators**

44. Mr. James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110, Mr. Paul Pretlove and Mr. David Standish, both of Interpath Ltd, 10 Fleet Place, London EC4M 7RB who to the best of the Applicant's knowledge and belief are eligible insolvency practitioners have all consented to be

12

appointed as joint liquidators of the Company.

45.　　In the circumstances, it is just and equitable and in the public's interest to grant the order which the Attorney General seeks, for the appointment of joint liquidators over the Company.

A draft of the order sought is attached.

This application is supported by the affidavit of Attorney General Dawn J Smith.

The names and addresses of the persons on whom it is intended to serve the application are as follows:

**Praise Marble Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

The names and addresses of the persons required to be given notice of this application pursuant to the Act and the Rules (if any) are as follows:

**Praise Marble Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

This Application is filed by O'Neal Webster, Solicitors for the Applicant, whose address for service is 2nd Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands. REF: 101538

_____                              Dated: January 2, 2026

Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

13

THE EASTERN CARIBBEAN SUPREME

COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/

**IN THE MATTER OF PRAISE MARBLE LIMITED**

**AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS**

BETWEEN:

**THE ATTORNEY GENERAL**

Applicant

**AND**

**PRAISE MARBLE LIMITED**

Respondent

_____

**ORIGINATING APPLICATION**

_____



Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 l Fax: (284) 393 5805
www.onealwebster.com

14

**Case Number :BVIHCOM2026/0018**

The Insolvency Rules 2005

**ORDINARY APPLICATION (EX-PARTE)**

**(Company)**

Rule 14

**FILED**
**HIGH COURT**
**TERRITORY OF**
**THE VIRGIN ISLANDS**

**Submitted Date:05/01/2026 10:14**

**Filed Date:05/01/2026 13:22**

**Fees Paid:0.00**

| | |
|---|---|
| **THE EASTERN CARIBBEAN SUPREME COURT**<br>**IN THE HIGH COURT OF JUSTICE**<br>**VIRGIN ISLANDS**<br>**COMMERCIAL DIVISION** | |
| Matter No.: | BVIHC(COM)       of 2026 |
| Applicant: | **THE ATTORNEY GENERAL** |
| Respondent: | **PRAISE MARBLE LIMITED** |

In the matter of:

| |
|---|
| **PRAISE MARBLE LIMITED** |

For Court Use Only

**To:  PRAISE MARBLE LIMITED,** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands.

**This Application will be heard by the Commercial Court Judge at Road Town, Tortola**

**British Virgin Islands**

**on the             day of                     2026      at               o'clock.**

**If you do not attend at the time shown the Court may make an order in your absence**

We, O'Neal Webster, on behalf of the Applicant, **the Attorney General of the Virgin Islands ("the Attorney General")**, apply pursuant to section 170 of the Insolvency Act 2003 (the "Act") for the following orders that:

1.   James Drury,  a Virgin Islands ("BVI") licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola,  Virgin Islands, VG1110; and Paul Pretlove and David Standish both United Kingdom ("UK") licensed insolvency

1

practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB to be appointed as joint provisional liquidators of Praise Marble Limited **("the Company")** with immediate effect.

2. The powers afforded to the said joint provisional liquidators shall be as set out in Schedule 2 of the Act as varied by Schedule 3, and as further varied by this Order.

3. An order that the joint provisional liquidators have the power to:

   a. consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the joint provisional liquidators and the Attorney General which is attached hereto **("the Protocol")**.

   b. cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4. An order that the costs of the liquidation, including the proper fees and disbursements of the joint liquidators, the Attorney General's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

5. An order that the costs of the application be costs in the liquidation.

6. Such further order as the court deems appropriate.

A draft of the order sought is attached.

The grounds upon which this order is sought are set out in the affidavit of the Attorney General Dawn J. Smith filed on 2 January, 2026, but in brief are as follows:

**Introduction**

1. There are good prima facie reasons as set out in the originating application for the eventual appointment of full liquidators on the grounds of public interest and on the grounds that it is just and equitable that they be appointed over the Company.  A summary of these reasons is set out below.

2

**The Company and the Prince Group**

2.      The Company was incorporated under the laws of the Virgin Islands **("BVI")** on 12 January 2016. Its registered office is located at Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, BVI, VG1110.  Garrison Hui Sai Kwong is the sole Director of the Company. Geotech Holdings Ltd **("Geotech")** is the Company's sole Shareholder. According to Geotech's 2023 Annual Report, Chen Zhi, **("Chen")** is Geotech's Chairman and one of its authorized representatives.

3.      The Company is alleged to be a member of a transnational criminal organisation that is headed by the Prince Holding Group **("the Prince Group")** which is a Cambodian corporate conglomerate comprised of several  companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan. Chen is the mastermind of the Prince Group's transnational criminal organisation and its chairman.

 **Action in the USA and other jurisdictions**

4.      On 14 October, 2025, the United States Department of Justice **("US DOJ"),** the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** and the United Kingdom Government announced coordinated  actions targeting the Prince Group.

5.      The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York **("the NY District Court")** on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering **("the US Indictment").** Concurrently, the US DOJ filed a civil forfeiture complaint **("the US Complaint")** seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group.  The criminal and civil proceedings will be referred together as the "**the US Proceedings**".

6.      On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation.  The effect of this designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them.  The targets include Chen and the Company.

3

7.      On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group. In doing so it noted that Chen and his associates have incorporated companies in the BVI and own properties in London including a £12 million mansion on Avenue Road in North London, a £100 million office building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and in Nine Elms in South London.

8.      News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen, the Prince Group, and its related entities and companies. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the coordinated global response to combat transnational organised crime.

9.      These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating transnational organised crime, human trafficking, forced labour, and large-scale financial fraud. The scale and coordination of these actions across six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network.

10.     In total, as of 9 December 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand) have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The allegation against Chen, his associates and companies within the Prince Group**

11.     In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and criminal activities including cryptocurrency investment fraud, human trafficking, money laundering, wire fraud, bank fraud, forced labour and, illegal online gambling. It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers. The scammers disappeared after taking almost every dollar they could from their victims.

4

12.    The US DOJ also alleges that the fraudulent activities carried out by the Prince Group resulted in billions of dollars in losses incurred by victims in the United States and around the world. Chen and his associates are alleged to use the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

13.    To effectuate their fraudulent schemes, it is alleged in the US Proceedings that Chen and his associates:

   a.    forced migrant workers who were – not always, but often – victims themselves of human trafficking, to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

   b.    frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

   c.    used their political influence in multiple countries to protect their criminal enterprise; and

   d.    paid bribes to foreign public officials to avoid disruption by law enforcement.

**The role of BVI Companies in the Prince Group**

14.    The OFAC determined that the BVI companies form part of a complex network of companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

15.    In the US complaint, the US DOJ alleged that Chen and his associates laundered the fraudulent proceeds of their crime through several companies in the BVI, Cayman, Cambodia and Hong Kong, which are under their control. It alleged further that these companies do not serve any real purpose other than to launder the proceeds of their criminal and fraudulent activities. Two BVI Companies are named in the US Complaint - Amber Hill Ventures Limited ("**Amber Hill**") and Lateral Bridge Global Limited **("LBG")**.

16.    The US Complaint discloses that personnel from the Federal Bureau of Investigation ("FBI") have

5

conducted extensive blockchain tracing to analyse the movements of the Prince Group's cryptocurrency. The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin which the US DOJ seeks to forfeit flowed through wallets which were controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

**It is just and equitable that liquidators be appointed over the Company**

17.    The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities to include forced labour, human trafficking, large-scale fraud, and money laundering on a massive international scale.

18.    The activities of some of the companies in the Prince Group have been the subject of civil and criminal actions in multiple jurisdictions, with authorities in at least six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

19.    The BVI companies including the Company are alleged to have been established and operated to assist Chen and the Prince Group which has defrauded numerous vulnerable victims of billions of US dollars.

20.    Despite the  actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on allegations is free to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

21.    The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf for the benefit of the victims of the fraud; and to identify potential claims against third parties.

22.    The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

23.    Independent liquidators are necessary to ensure proper coordination with regulatory and

6

enforcement authorities and liquidators, trustees, or receivers appointed in the Virgin Islands and other jurisdictions, given the multi-jurisdictional nature of the scheme and the actions. Independent liquidators would also enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed.

24. Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that its affairs are properly investigated and wound up under the supervision of this Honourable Court.

**It is in the public interest that liquidators be appointed over the Company**

25. The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

26. The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the Virgin Islands as a financial centre and threatens confidence in BVI companies and the BVI's regulatory framework.

27. The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for nefarious purposes and with its commitment to international cooperation and combating serious transnational crime.

28. Given that regulatory and law enforcement authorities in at least six countries have taken action and frozen or seized assets valued at over US$16 billion, it is in the public interest that the BVI as the jurisdiction of incorporation of the Company takes prompt and decisive action through the appointment of liquidators.

29. The scale of this fraud and the international coordination of actions make it imperative, from a public interest perspective, that the BVI positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

**The appointment of joint provisional liquidators**

7

30.   It is essential that joint provisional liquidators be appointed over the Company immediately (without notice to it and its principals) and before the originating application is heard and determined for the following reasons:

a.   The Company continues to be under the control of Chen and his associates and as a result, they can  use or continue to use it to further the criminal enterprise thereby continuing to inflict public harm.

b.   Given the serious allegations set out in this application, the sanctions imposed by the United States and the UK Government,  the US Indictment, and the US Complaint, it is appropriate and necessary that provisional liquidators be appointed immediately to:

   (i)   immediately take full control of the Company;

   (ii)   identify and preserve its assets that may represent proceeds of crime by preventing further movement, concealment, or dissipation of those assets;

   (iii)   take control of its books and records;

   (iv)   conduct thorough investigations into its past transactions; and

   (v)   review banking records, asset transfers, and corporate dealings to identify and locate the potential money laundering activities.

c.   The information and evidence gathered by the liquidators may provide crucial support for law enforcement authorities, both in the BVI and internationally, to apply for freezing orders, forfeiture orders, and other remedies. In this case, given that the United States has already filed a civil complaint seeking forfeiture of 127,271 Bitcoin valued at approximately US$15 billion allegedly connected to the Prince Group's criminal activities, the work of the liquidators could materially assist in tracing assets and preserving evidence relevant to that and other  actions.

d.   The appointment of provisional liquidator over the Company and other BVI companies which are owned and controlled by Chen would align with the BVI's National AML/CFT Policy and its commitment to international cooperation in combating serious transnational crime.

e.   The coordinated  actions taken by the US DOJ and UK Government on 14 October, 2025 signal the seriousness with which these major jurisdictions view the alleged criminal activities of the Prince Group. The appointment of provisional liquidators by this Honourable Court would demonstrate that the BVI is equally committed to ensuring that its corporate  structures  are  not  used  as  vehicles  for  serious  criminality  and  would

8

facilitate cooperation with international authorities in their ongoing investigations and asset recovery efforts.

**Urgency**

31. The public announcements of the US Civil Proceedings, OFAC sanctions, and UK sanctions on 14 October 2025 together with actions taken in other jurisdictions have no doubt put Chen and his associates, who are alleged to be sophisticated criminals, on notice of the scrutiny being applied to the Prince Group network and its corporate structures.

32. The Company is likely to have received proceeds of the criminal and fraudulent activities and to have documentation that may assist in recovering the proceeds of the crime. There is a real and substantial risk that absent the immediate appointment of provisional liquidators, assets held by or through the BVI companies, including the Company will be transferred, concealed, or dissipated and documents will be destroyed or concealed. This real and substantial risk will increase once the Company is served with the originating application,

33. The appointment of provisional liquidators will immediately remove control from Chen and place the Company under the supervision and control of officers of this Court, thereby protecting the integrity of any investigation and preserving assets for the benefit of the victims of Chen and the Prince Group's fraudulent and criminal activities.

34. The appointment of joint provisional liquidators is appropriate given the number of BVI companies involved, the complexity of the alleged corporate structure spanning multiple jurisdictions, the international nature of the investigations and actions, and the need for extensive expertise in tracing assets and investigating potential money laundering activities.

**The Proposed provisional liquidators**

35. The Attorney General proposes that James Drury,  a BVI licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110; and Paul Pretlove and David Standish, both UK licensed insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB be appointed as joint provisional liquidators of the Company.

9

**Conclusion**

36.      In all the circumstances, it is just and convenient and in the public's interest, that this Honourable Court grants the order which the Attorney General seeks in this application.

A draft of the order sought is attached.

This application is supported by the affidavit of Attorney General Dawn J. Smith.

The names and addresses of the persons on whom it is intended to serve the application are as follows:

This Application is filed by O'Neal Webster, Solicitors for the Applicant whose address for service is 2nd Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands. REF: NW/LG/101538.

_____              Dated: January 2, 2026

Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

10

THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/

**IN THE MATTER OF PRAISE MARBLE LIMITED**

**AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE**

**LAWS OF THE VIRGIN ISLANDS**.

BETWEEN:

**THE ATTORNEY GENERAL**

Applicant

**AND**

**PRAISE MARBLE LIMITED**

Respondent

_____

**EX-PARTE ORDINARY APPLICATION**
**FOR JOINT PROVISIONAL LIQUIDATORS**

_____



Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 l Fax: (284) 393 5805
www.onealwebster.com

11

**Case Number :BVIHCOM2026/0017**

**FILED
HIGH COURT**
TERRITORY OF
THE VIRGIN ISLANDS

The Insolvency Rules 2005

**ORIGINATING APPLICATION**

**(Company)**

Rule 14

**Submitted Date:05/01/2026 10:28**

**Filed Date:05/01/2026 13:11**

**Fees Paid:0.00**

| THE EASTERN CARIBBEAN SUPREME COURT IN THE HIGH COURT OF JUSTICE VIRGIN ISLANDS COMMERCIAL DIVISION | |
|---|---|
| Matter No.: | BVIHC(COM)     of 2026 |
| Applicant: | **THE ATTORNEY GENERAL** |
| Respondent: | **PRINCE GLOBAL GROUP LIMITED** |

In the matter of:

| **PRINCE GLOBAL GROUP LIMITED** |
|---|

| For Court Use Only |
|---|
| **To: PRINCE GLOBAL GROUP LIMITED,** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands.<br><br>**This Application will be heard by the Commercial Court Judge at Road Town, Tortola**<br><br>**British Virgin Islands**<br><br>on the           day of                    2026     at              o'clock.<br><br><br>**If you do not attend at the time shown the Court may make an order in your absence** |

The Applicant, the Attorney General of the Virgin Islands ("**Attorney General**") of TTT Building, Wickhams Cay 1, Road Town, Tortola, Virgin Islands VG1110 applies to the Court for:

1. An order pursuant to sections 162(1) (b) and (c) of the Insolvency Act, Revised Edition 2020 (**"the Act"**) that Paul Pretlove, James Drury and David Standish, be appointed as joint liquidators of Prince Global Group Limited (**"the Company"**), a company incorporated under the laws of the Virgin Islands ("BVI"). James Drury is a BVI licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin

1

434

Islands, VG1110. Paul Pretlove and David Standish are United Kingdom ("UK") licensed insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB acting as overseas insolvency practitioners as defined in the Act.

2.    An order that the joint liquidators be given all powers set out in Schedule 2 of the Act, such powers to be exercisable without the sanction of the Court and such other powers as this Honourable Court deems fit.

3.    An order that the joint liquidators have the power to:

a.    consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the liquidators and the Attorney General which is attached hereto **("the Protocol")**.

b.    cooperate and communicate with law enforcement and regulatory authorities in the BVI and in other jurisdictions.

4.    An order that the costs of the liquidation, including the proper fees and disbursements of the joint liquidators and the Attorney General's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims

5.    An order that the costs of the application be costs in the liquidation.

6.    Such further order as the court deems appropriate.

The grounds upon which this order is sought are set out in the affidavit of Attorney General, Dawn J. Smith filed on 2 January 2026 and are summarised as follows:

**THE PARTIES**

1.    The Attorney General is the principal legal adviser to the Government of the Virgin Islands (**"the Government"**) pursuant to section 58 of the Virgin Islands Constitution Order, 2007, and has overall responsibility for all aspects of civil litigation on behalf of the Government.

2

435

2.  The Company was incorporated under the laws of the BVI on 3 August 2018. Its registered office is located at Vistra Corporate Services Centre **("Vistra")**, Wickhams Cay II, Road Town, Tortola, BVI, VG1110. The Company is alleged to be a member of a transnational criminal organisation that is headed by Prince Holding Group Limited **("the Prince Group")**, which is a Cambodian corporate conglomerate that comprises several companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan. On 17 November 2025, Vistra filed its Intention to Resign as the Company's Registered Agent.

3.  The chairman of the Prince Group is Chen Zhi **("Chen")**. Chen is the sole Director and sole Shareholder of the Company.

## BACKGROUND

4.  The background is comprehensively set out in the indictment and the verified complaint filed by the United States Department of Justice **("US DOJ")** on October 14, 2025 and in the announcement issued by the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** dated October 13, 2025. The background is summarised below.

### Action in the United States

5.  On 14 October, 2025, the United States Department of Justice **("US DOJ")**, the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** and the United Kingdom Government announced coordinated actions targeting the Prince Group.

6.  The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York **("the NY District Court")** on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering **("the US Indictment")**. Concurrently, the US DOJ filed a civil forfeiture complaint **("the US Complaint")** seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group. The criminal and civil proceedings will be referred to together as **"the US Proceedings."**

7.  In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and criminal activities including cryptocurrency investment fraud, human trafficking, money

3

436

laundering, wire fraud, bank fraud, forced labour and, illegal online gambling. It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers. The scammers disappeared after taking almost every dollar they could from their victims.

8.   To effectuate the schemes, it is alleged in the US Proceedings that Chen and his associates:

   a.   built and operated forced-labour scam compounds across Cambodia in which workers were made to execute the scams at high volumes. The scam compounds housed vast dormitories surrounded by high walls and barbed wire, and functioned as violent forced labour camps;

   b.   forced migrant workers who were – not always, but often – victims themselves of human trafficking to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

   c.   frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

   d.   used their political influence in multiple countries to protect their criminal enterprise; and

   e.   paid bribes to foreign public officials to avoid disruption by law enforcement.

9.   The indictment alleges that Chen maintained meticulous records of the compounds' operations, including ledgers of the tracking profits generated from the fraud schemes, documents detailing "phone farms" used in the schemes, and images depicting methods of beating and torture used against workers.

10.   The US DOJ alleges that the schemes carried out by the Prince Group resulted in billions of dollars in losses incurred by victims in the United States and around the world. The documents in the US Proceedings allege that proceeds from these criminal activities have been laundered through various means, including cryptocurrency (using "spraying" and "funneling" techniques), online

4

437

gambling operations, and cryptocurrency mining operations. Chen, his associates and companies within the Prince Group, "washed" and returned the fraudulent proceeds to the Prince Group. The "washing" was done by using the Prince Group's vast network of seemingly legitimate business enterprises to launder its criminal proceeds. One common method was to collect the fraudulent proceeds in the form of bitcoin or stablecoins and then off-ramp them into conventional currencies, for example, the US dollar. The launderers then used that cash to purchase clean bitcoin or other cryptocurrencies. Chen was directly involved in coordinating these laundering efforts.

11.  Chen and his associates subsequently used the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

12.  On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation. The effect of the designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them. The targets include Chen and the Company. The OFAC noted that:

   a.  Americans have lost at least $10 billion to Southeast Asia-based scam operations in 2024, a 66 percent increase over the prior year, with scams like those perpetrated by Prince Group being particularly significant.

   b.  The Prince Group remained a dominant player in Cambodia's scam economy and has controlled illicit financial flows of billions of dollars.

   c.  The actions taken by OFAC and Financial Crimes Enforcement Network (FinCEN) were in close coordination with the United Kingdom's Foreign, Commonwealth, and Development Office ("FCDO"), which took complementary actions against criminal networks responsible for targeting citizens of the United States and other allied nations through online scams and the laundering of stolen funds.

**Action in the UK**

13.  On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group. In doing so it noted that Chen and his associates have incorporated companies in the BVI and own properties

5

438

in London, including a £12 million mansion on Avenue Road in North London, a £100 million office building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and Nine Elms in South London.

14. The Foreign Secretary Yvette Cooper stated that:

*"The masterminds behind these horrific scam centres are ruining the lives of vulnerable people and buying up London homes to store their money.*

*Together with our US allies, we are taking decisive action to combat the growing transnational threat posed by this network – upholding human rights, protecting British nationals and keeping dirty money off our streets."*

15. The Fraud Minister Lord Hanson said:

*"These sanctions prove our determination to stop those who profit from this activity, hold offenders accountable, and keep dirty money out of the UK. Through our new, expanded Fraud Strategy and the upcoming Global Fraud Summit, we will go even further to disrupt corrupt networks and protect the public from shameless criminals."*

16. The effect of these sanctions is to prevent the transfer of these properties, freeze any business in which Chen and the Prince Group are involved and lock Chen and the Prince Group transnational criminal network out of the UK's financial system.

**Action in other jurisdictions**

17. News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen, the Prince Group, and its related entities and companies. These actions are set out in paragraphs 19 to 22 below. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the global response to combat transnational organised crime.

*Singapore*

18. On 31 October, 2025, Singapore police announced that they had seized over $150 million (approximately US$115 million) in assets linked to the Prince Group. The seized assets include six properties, bank accounts, securities accounts, and cash which are said to represent the proceeds of money laundering and forgery offences committed by Chen and the Prince Group. According to the Monetary Authority of Singapore (MAS), financial institutions had previously filed

6

439

suspicious transaction reports, and a number of suspicious accounts had been closed. The Singapore Police Force stated that investigations into Chen and his associates commenced in 2024 after it received intelligence from the Suspicious Transaction Reporting Office (STR).

### Hong Kong

19.     On 4 November, 2025, Hong Kong authorities announced that they had frozen assets worth HK$2.75 billion (approximately US$354 million), which, based on intelligence and information gathered from multiple sources, are suspected to represent proceeds of international cross-border telecommunications fraud and money laundering activities committed by the Prince Group. The frozen assets include cash, stocks, and funds held by individuals and corporate entities. At least 18 Hong Kong companies were blacklisted by the United States in connection with the Prince Group, including two listed companies - "Khoon Group and Geotech Holdings".

### Taiwan

20.     On 4 November, 2025, Taiwanese prosecutors announced that they had detained 25 individuals and seized T$4.5 billion (approximately US$147 million) in assets tied to the Prince Group. The seized assets include 26 high-end cars, properties, and bank accounts tied to the network and to Chen in relation to money laundering and forced labour offences.

### Thailand

21.     On 3 December, 2025, the Thai authorities announced that they had seized assets worth more than 10,157 million baht (approximately US$318 million) and issued arrest warrants for 42 individuals linked to transnational online scam operations connected to Chen and Cambodian nationals Kok An and Yim Leak. As of 3 December, 2025, 29 individuals had been arrested. The seizures include shares in Bangchak Corporation Limited worth 6 billion baht (approximately US$188 million). Thailand's Anti-Money Laundering Office (AMLO) stated that investigators had found "information on networks of online fraud, human trafficking, and money-laundering" that were linked to Chen and his associates.

### The effect of the multi-jurisdictional actions

22.     These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating transnational organised crime, human trafficking, forced labour, and large-scale financial fraud.

7

440

The scale and coordination of these actions across at least six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network

23.  In total, as of 9 December, 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The role of BVI companies**

24.  The OFAC has determined that the BVI companies form part of a complex network of holding companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

25.  In the US Complaint, the US DOJ alleged that Chen and his associates also laundered fraudulent proceeds through several companies including companies in the BVI which are under their control.  It alleged further that these companies do not serve any real purpose other than to launder funds. Two BVI Companies were named in the US Proceedings - Amber Hill Ventures Limited **("Amber Hill")** and Lateral Bridge Global Limited **("LBG")**.

26.  Amber Hill and LBG are said to be controlled by two of Chen's associates, who are also defendants in the US Civil Proceedings. The US Complaint discloses that personnel from the Federal Bureau of Investigation ("FBI") have conducted extensive blockchain tracing to analyse the movements of the Prince Group's cryptocurrency.  The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin which the US DOJ seeks to forfeit flowed through wallets which were controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

27.  It is also alleged that Amber Hill had a banking relationship with a financial institution in the United States. It was recorded in the account opening documents with that financial institution that Amber Hill's business activities consisted of *"[p]roprietary trading and investing,"* and its anticipated deposit and withdrawal activity would be approximately $2 million each. However, according to account statements, in February 2020, Amber Hill's account with that financial

8

441

institution had approximately $22.5 million in deposits and $21.8 million in withdrawals. Amber Hill was struck from the register and dissolved on 10 November, 2023.

## THE APPLICATION

28.    The Application is made by the Attorney General on the ground that (i) it is just and equitable that joint liquidators be appointed over the Company pursuant to section 162 (1) (b) of the Act and (ii) it is in the public interest that the joint liquidators are appointed pursuant to section 162 (1) (c) of the Act.

### Just and equitable ground

29.    Section 162(1)(b) of the Insolvency Act, 2003 provides that the Court may appoint a liquidator of a company if "the Court is of the opinion that it is just and equitable that the company should be liquidated."

30.    The Attorney General is listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(b) of the Act.

31.    It is just and equitable that the Company should be placed into liquidation for the following reasons:

a.    Chen is the sole shareholder and/or director of the Company.  Chen is alleged to be the mastermind of the Prince Group.  He has been criminally indicted in the United States and is subject to personal sanctions by both the United States and the United Kingdom.

b.    The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities, to include forced labour, human trafficking, large-scale fraud, and money laundering on a massive international scale.

c.    The BVI companies including the Company are alleged to have been established and operated to assist Chen and the Prince Group which has defrauded numerous vulnerable victims of billions of US dollars.

d.    Despite the enforcement actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on the allegations is free to be used by them (i) to continue to facilitate their criminal and fraudulent activities

9

442

and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

e.  The activities of some of the companies in the Prince Group have been the subject of civil and criminal enforcement actions in multiple jurisdictions, with authorities in six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

f.  The Company is alleged to be a shell company which was used solely as a vehicle for the fraudulent scheme.

g.  The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf, and identify potential claims against third parties.

h.  The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

i.  Independent liquidators are necessary to ensure proper coordination with regulatory and law enforcement authorities and liquidators, trustees, or receivers appointed in the BVI and other jurisdictions, given the multi-jurisdictional nature of the scheme and the actions taken by various authorities in several jurisdictions.

j.  Independent liquidators would enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed as part of a collective process.

k.  Given the fraudulent nature of the scheme, there are likely to be voidable transactions, preferences, and other claims that independent liquidators could pursue for the benefit of the victims and creditors.

32.  Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that its affairs are properly investigated and wound up under the supervision of this Honourable Court.

**Public Interest ground**

33.  Section 162(1)(c) of the Act gives the Court the discretion to appoint a liquidator of a company if it is of the opinion that it is in the public interest for a liquidator to be appointed.

34.  The Attorney General is also listed as one of the persons who has standing to make an application

10

443

to appoint a liquidator over a company pursuant to section 162(1)(c) of the Act.

35.    The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

36.    BVI companies including, the Company are alleged to have been used as vehicles in what has been described by international law enforcement authorities as one of the largest fraudulent investment schemes in recent history. The scheme has caused billions of dollars in losses to victims worldwide and involved egregious human rights abuses. They are alleged to have been used to launder and/or hold the proceeds of the horrific crimes committed by Chen and his associates, including human trafficking, forced labour, aggravated identity theft, international fraud designed to scam unsuspecting victims of their lifesavings and money laundering. These criminal and fraudulent activities are inherently objectionable and are contrary to clearly identifiable public interest.

37.    The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the BVI as a financial centre and threatens confidence in BVI incorporated companies and the BVI's regulatory framework.

38.    The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for fraudulent purposes.

39.    The appointment of liquidators will:
    a.    facilitate cooperation with enforcement authorities, regulators, and insolvency practitioners in the BVI and other jurisdictions, demonstrating the BVI's commitment to international cooperation in combating financial fraud;
    b.    ensure that the Company's affairs are properly investigated and that appropriate steps are taken to recover assets and maximise returns to defrauded investors;
    c.    enable a proper investigation into how the Company was used in the fraudulent scheme, which may assist in preventing similar schemes in the future.

40.    Given that enforcement authorities in at least six countries have taken action and frozen or seized assets valued at over US$16 billion, it is in the public interest that BVI as the jurisdiction of

11

444

incorporation of the Company, takes prompt and decisive action through the appointment of liquidators.

41. The scale of this fraud and the international coordination of related actions make it imperative, from a public interest perspective, that the BVI positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

42. In all the circumstances, it is not only just and equitable but also in the public interest that Joint liquidators be appointed over the Company to prevent it from being used to further Chen's and the Prince Group's criminal enterprise.

43. If appointed, the joint liquidators would be able to take control of the Company, take the necessary steps in the BVI or overseas to secure and preserve its books and records and secure its assets for the benefit of the victims of the crimes perpetuated by the Prince Group. As officers of the court, they would also be able to independently investigate claims against the Company, marshal records, ensure that the Company complies with BVI laws and regulations and respond to any court process.

**Proposed liquidators**

44. Mr. James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110, Mr. Paul Pretlove and Mr. David Standish, both of Interpath Ltd, 10 Fleet Place, London EC4M 7RB who to the best of the Applicant's knowledge and belief are eligible insolvency practitioners have all consented to be appointed as joint liquidators of the Company.

45. In the circumstances, it is just and equitable and in the public's interest to grant the order which the Attorney General seeks, for the appointment of joint liquidators over the Company.

A draft of the order sought is attached.

This application is supported by the affidavit of Attorney General Dawn J Smith.

The names and addresses of the persons on whom it is intended to serve the application are as follows:

12

445

**Prince Global Group Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

The names and addresses of the persons required to be given notice of this application pursuant to the Act and the Rules (if any) are as follows:

**Prince Global Group Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

This Application is filed by O'Neal Webster, Solicitors for the Applicant, whose address for service is 2nd

Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands.  REF:

101538

Dated: January 2, 2026

Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

13

446

THE EASTERN CARIBBEAN SUPREME

COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/

**IN THE MATTER OF PRINCE GLOBAL GROUP LIMITED**

**AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE**

**LAWS OF THE VIRGIN ISLANDS**

BETWEEN:

**THE ATTORNEY GENERAL**

Applicant

**AND**

**PRINCE GLOBAL GROUP LIMITED**

Respondent

---

**ORIGINATING APPLICATION**

---



Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 I Fax: (284) 393 5805
www.onealwebster.com

14

447

**Case Number :BVIHCOM2026/0017**

FILED
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS

The Insolvency Rules 2005

**ORDINARY APPLICATION (EX-PARTE)**

**(Company)**

Rule 14

**Submitted Date:05/01/2026 10:27**

**Filed Date:05/01/2026 13:11**

**Fees Paid:0.00**

| THE EASTERN CARIBBEAN SUPREME COURT IN THE HIGH COURT OF JUSTICE VIRGIN ISLANDS COMMERCIAL DIVISION | |
|---|---|
| Matter No.: | BVIHC(COM)    of 2026 |
| Applicant: | **THE ATTORNEY GENERAL** |
| Respondent: | **PRINCE GLOBAL GROUP LIMITED** |

In the matter of:

| **PRINCE GLOBAL GROUP LIMITED** |
|---|

| For Court Use Only |
|---|
| **To:  PRINCE GLOBAL GROUP LIMITED,** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands.<br><br>**This Application will be heard by the Commercial Court Judge at Road Town, Tortola**<br>**British Virgin Islands**<br>on the            day of                    2026    at                o'clock.<br><br>**If you do not attend at the time shown the Court may make an order in your absence** |

We, O'Neal Webster, on behalf of the Applicant, **the Attorney General of the Virgin Islands ("the Attorney General"),** apply pursuant to section 170 of the Insolvency Act 2003 (the "Act") for the following orders that:

1.  James Drury,  a Virgin Islands ("BVI") licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola,  Virgin Islands, VG1110; and Paul Pretlove and David Standish both United Kingdom ("UK") licensed insolvency

1

7

practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB to be appointed as joint provisional liquidators of Prince Global Group Limited **("the Company")** with immediate effect.

2.   The powers afforded to the said joint provisional liquidators shall be as set out in Schedule 2 of the Act as varied by Schedule 3, and as further varied by this Order.

3.   An order that the joint provisional liquidators have the power to:

   a.   consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the joint provisional liquidators and the Attorney General which is attached hereto **("the Protocol")**.

   b.   cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4.   An order that the costs of the liquidation, including the proper fees and disbursements of the joint liquidators, the Attorney General's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

5.   An order that the costs of the application be costs in the liquidation.

6.   Such further order as the court deems appropriate.

A draft of the order sought is attached.

The grounds upon which this order is sought are set out in the affidavit of the Attorney General Dawn J. Smith filed on 2 January, 2026, but in brief are as follows:

**Introduction**

1.   There are good prima facie reasons as set out in the originating application for the eventual appointment of full liquidators on the grounds of public interest and on the grounds that it is just and equitable that they be appointed over the Company. A summary of these reasons is set out below.

2

8

**The Company and the Prince Group**

2.    The Company was incorporated under the laws of the Virgin Islands (**"BVI"**) on 3 August 2018. Its registered office is located at Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, BVI, VG1110. Chen Zhi, (**"Chen"**) is the Company's sole Director and sole Shareholder,

3.    The Company is alleged to be a member of a transnational criminal organisation that is headed by the Prince Holding Group (**"the Prince Group"**) which is a Cambodian corporate conglomerate comprised of several companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan. Chen is the mastermind of the Prince Group's transnational criminal organisation and its chairman.

**Action in the USA and other jurisdictions**

4.    On 14 October, 2025, the United States Department of Justice (**"US DOJ"**), the United States Department of the Treasury's Office of Foreign Assets Control (**"OFAC"**) and the United Kingdom Government announced coordinated actions targeting the Prince Group.

5.    The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York (**"the NY District Court"**) on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering (**"the US Indictment"**). Concurrently, the US DOJ filed a civil forfeiture complaint (**"the US Complaint"**) seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group. The criminal and civil proceedings will be referred together as the "**the US Proceedings**".

6.    On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation. The effect of this designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them. The targets include Chen and the Company.

7.    On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group. In doing so it noted that Chen and his associates have incorporated companies in the BVI and own properties

3

9

in London including a £12 million mansion on Avenue Road in North London, a £100 million office building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and in Nine Elms in South London.

8. News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen, the Prince Group, and its related entities and companies. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the coordinated global response to combat transnational organised crime.

9. These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating transnational organised crime, human trafficking, forced labour, and large-scale financial fraud. The scale and coordination of these actions across six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network.

10. In total, as of 9 December 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand) have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The allegation against Chen, his associates and companies within the Prince Group**

11. In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and criminal activities including cryptocurrency investment fraud, human trafficking, money laundering, wire fraud, bank fraud, forced labour and, illegal online gambling. It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers. The scammers disappeared after taking almost every dollar they could from their victims.

12. The US DOJ also alleges that the fraudulent activities carried out by the Prince Group resulted in

4

10

billions of dollars in losses incurred by victims in the United States and around the world. Chen and his associates are alleged to use the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

13.    To effectuate their fraudulent schemes, it is alleged in the US Proceedings that Chen and his associates:

a.    forced migrant workers who were – not always, but often – victims themselves of human trafficking, to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

b.    frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

c.    used their political influence in multiple countries to protect their criminal enterprise; and

d.    paid bribes to foreign public officials to avoid disruption by law enforcement.

**The role of BVI Companies in the Prince Group**

14.    The OFAC determined that the BVI companies form part of a complex network of companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

15.    In the US complaint, the US DOJ alleged that Chen and his associates laundered the fraudulent proceeds of their crime through several companies in the BVI, Cayman, Cambodia and Hong Kong, which are under their control. It alleged further that these companies do not serve any real purpose other than to launder the proceeds of their criminal and fraudulent activities. Two BVI Companies are named in the US Complaint - Amber Hill Ventures Limited (**"Amber Hill"**) and Lateral Bridge Global Limited (**"LBG"**).

16.    The US Complaint discloses that personnel from the Federal Bureau of Investigation ("FBI") have conducted extensive blockchain tracing to analyse the movements of the Prince Group's

5

cryptocurrency. The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin which the US DOJ seeks to forfeit flowed through wallets which were controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

**It is just and equitable that liquidators be appointed over the Company**

17.     The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities to include forced labour, human trafficking, large-scale fraud, and money laundering on a massive international scale.

18.     The activities of some of the companies in the Prince Group have been the subject of civil and criminal actions in multiple jurisdictions, with authorities in at least six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

19.     The BVI companies including the Company are alleged to have been established and operated to assist Chen and the Prince Group which has defrauded numerous vulnerable victims of billions of US dollars.

20.     Despite the  actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on allegations is free to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

21.     The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf for the benefit of the victims of the fraud; and to identify potential claims against third parties.

22.     The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

23.     Independent liquidators are necessary to ensure proper coordination with regulatory and enforcement authorities and liquidators, trustees, or receivers appointed in the Virgin Islands and

6

12

other jurisdictions, given the multi-jurisdictional nature of the scheme and the actions. Independent liquidators would also enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed.

24.     Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that its affairs are properly investigated and wound up under the supervision of this Honourable Court.

**It is in the public interest that liquidators be appointed over the Company**

25.     The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

26.     The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the Virgin Islands as a financial centre and threatens confidence in BVI companies and the BVI's regulatory framework.

27.     The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for nefarious purposes and with its commitment to international cooperation and combating serious transnational crime.

28.     Given that regulatory and law enforcement authorities in at least six countries have taken action and frozen or seized assets valued at over US$16 billion, it is in the public interest that the BVI as the jurisdiction of incorporation of the Company takes prompt and decisive action through the appointment of liquidators.

29.     The scale of this fraud and the international coordination of actions make it imperative, from a public interest perspective, that the BVI positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

**The appointment of joint provisional liquidators**

30.     It is essential that joint provisional liquidators be appointed over the Company immediately

7

13

(without notice to it and its principals) and before the originating application is heard and determined for the following reasons:

a.   The Company continues to be under the control of Chen and his associates and as a result, they can use or continue to use it to further the criminal enterprise thereby continuing to inflict public harm.

b.   Given the serious allegations set out in this application, the sanctions imposed by the United States and the UK Government, the US Indictment, and the US Complaint, it is appropriate and necessary that provisional liquidators be appointed immediately to:

(i)    immediately take full control of the Company;

(ii)   identify and preserve its assets that may represent proceeds of crime by preventing further movement, concealment, or dissipation of those assets;

(iii)  take control of its books and records;

(iv)   conduct thorough investigations into its past transactions; and

(v)    review banking records, asset transfers, and corporate dealings to identify and locate the potential money laundering activities.

c.   The information and evidence gathered by the liquidators may provide crucial support for law enforcement authorities, both in the BVI and internationally, to apply for freezing orders, forfeiture orders, and other remedies. In this case, given that the United States has already filed a civil complaint seeking forfeiture of 127,271 Bitcoin valued at approximately US$15 billion allegedly connected to the Prince Group's criminal activities, the work of the liquidators could materially assist in tracing assets and preserving evidence relevant to that and other actions.

d.   The appointment of provisional liquidator over the Company and other BVI companies which are owned and controlled by Chen would align with the BVI's National AML/CFT Policy and its commitment to international cooperation in combating serious transnational crime.

e.   The coordinated actions taken by the US DOJ and UK Government on 14 October, 2025 signal the seriousness with which these major jurisdictions view the alleged criminal activities of the Prince Group. The appointment of provisional liquidators by this Honourable Court would demonstrate that the BVI is equally committed to ensuring that its corporate structures are not used as vehicles for serious criminality and would facilitate cooperation with international authorities in their ongoing investigations and

8

14

asset recovery efforts.

**Urgency**

31.     The public announcements of the US Civil Proceedings, OFAC sanctions, and UK sanctions on 14 October 2025 together with actions taken in other jurisdictions have no doubt put Chen and his associates, who are alleged to be sophisticated criminals, on notice of the scrutiny being applied to the Prince Group network and its corporate structures.

32.     The Company is likely to have received proceeds of the criminal and fraudulent activities and to have documentation that may assist in recovering the proceeds of the crime. There is a real and substantial risk that absent the immediate appointment of provisional liquidators, assets held by or through the BVI companies, including the Company will be transferred, concealed, or dissipated and documents will be destroyed or concealed. This real and substantial risk will increase once the Company is served with the originating application,

33.     The appointment of provisional liquidators will immediately remove control from Chen and place the Company under the supervision and control of officers of this Court, thereby protecting the integrity of any investigation and preserving assets for the benefit of the victims of Chen and the Prince Group's fraudulent and criminal activities.

34.     The appointment of joint provisional liquidators is appropriate given the number of BVI companies involved, the complexity of the alleged corporate structure spanning multiple jurisdictions, the international nature of the investigations and actions, and the need for extensive expertise in tracing assets and investigating potential money laundering activities.

**The Proposed provisional liquidators**

35.     The Attorney General proposes that James Drury,  a BVI licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110; and Paul Pretlove and David Standish, both UK licensed insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB be appointed as joint provisional liquidators of the Company.

9

15

**Conclusion**

36.     In all the circumstances, it is just and convenient and in the public's interest, that this Honourable Court grants the order which the Attorney General seeks in this application.

A draft of the order sought is attached.

This application is supported by the affidavit of Attorney General Dawn J. Smith.

The names and addresses of the persons on whom it is intended to serve the application are as follows:

This Application is filed by O'Neal Webster, Solicitors for the Applicant whose address for service is 2nd Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands. REF: NW/LG/101538.

Dated: January 2, 2026

_____
Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

10

16

THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/

IN THE MATTER OF PRINCE GLOBAL GROUP LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.

BETWEEN:

**THE ATTORNEY GENERAL**

Applicant

**AND**

**PRINCE GLOBAL GROUP LIMITED**

Respondent

---

### EX-PARTE ORDINARY APPLICATION
### FOR JOINT PROVISIONAL LIQUIDATORS

---



O'Neal
Webster

Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 I Fax: (284) 393 5805
www.onealwebster.com

11

**17**

**Case Number :BVIHCOM2026/0019**

FILED
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS

The Insolvency Rules 2005

**ORIGINATING APPLICATION**

**(Company)**

Rule 14

**Submitted Date:05/01/2026 10:36**

**Filed Date:05/01/2026 13:22**

**Fees Paid:0.00**

| THE EASTERN CARIBBEAN SUPREME COURT IN THE HIGH COURT OF JUSTICE VIRGIN ISLANDS COMMERCIAL DIVISION | |
|---|---|
| Matter No.: | BVIHC(COM)    of 2026 |
| Applicant: | THE ATTORNEY GENERAL |
| Respondent: | PRINCE GLOBAL HOLDINGS LIMITED |

In the matter of:

| PRINCE GLOBAL HOLDINGS LIMITED |
|---|

| For Court Use Only |
|---|
| **To: PRINCE GLOBAL HOLDINGS LIMITED,** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands.<br><br>**This Application will be heard by the Commercial Court Judge at Road Town, Tortola**<br>**British Virgin Islands**<br>**on the            day of                    2026      at               o'clock.**<br><br>**If you do not attend at the time shown the Court may make an order in your absence** |

The Applicant, the Attorney General of the Virgin Islands (**"Attorney General"**) of TTT Building, Wickhams Cay 1, Road Town, Tortola, Virgin Islands VG1110 applies to the Court for:

1. An order pursuant to sections 162(1) (b) and (c) of the Insolvency Act, Revised Edition 2020 (**"the Act"**) that Paul Pretlove, James Drury and David Standish, be appointed as joint liquidators of Prince Global Holdings Limited (**"the Company"**), a company incorporated under the laws of the Virgin Islands ("BVI"). James Drury is a BVI licensed insolvency practitioner of Interpath (BVI)

1

437

Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110. Paul Pretlove and David Standish are United Kingdom ("UK") licensed insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB acting as overseas insolvency practitioners as defined in the Act.

2.  An order that the joint liquidators be given all powers set out in Schedule 2 of the Act, such powers to be exercisable without the sanction of the Court and such other powers as this Honourable Court deems fit.

3.  An order that the joint liquidators have the power to:

    a.  consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the liquidators and the Attorney General which is attached hereto **("the Protocol")**.

    b.  cooperate and communicate with law enforcement and regulatory authorities in the BVI and in other jurisdictions.

4.  An order that the costs of the liquidation, including the proper fees and disbursements of the joint liquidators and the **Attorney General's** costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims

5.  An order that the costs of the application be costs in the liquidation.

6.  Such further order as the court deems appropriate.

The grounds upon which this order is sought are set out in the affidavit of Attorney General, Dawn J. Smith filed on 2 January 2026 and are summarised as follows:

**THE PARTIES**

1.  The Attorney General is the principal legal adviser to the Government of the Virgin Islands **("the Government")** pursuant to section 58 of the Virgin Islands Constitution Order, 2007, and has overall responsibility for all aspects of civil litigation on behalf of the Government.

2

438

2.    The Company was incorporated under the laws of the BVI on 3 August 2018.  Its registered office is located at Vistra Corporate Services Centre **("Vistra")**, Wickhams Cay II, Road Town, Tortola, BVI, VG1110.  The Company is alleged to be a member of a transnational criminal organisation that is headed by Prince Holding Group Limited **("the Prince Group"),** which is a Cambodian corporate conglomerate that comprises several companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan. On 17 November 2025, Vistra filed its Intention to Resign as **the Company's Registered Agent.**

3.    The chairman of the Prince Group is Chen Zhi **("Chen").** Chen is the sole Director and sole Shareholder of the Company.

**BACKGROUND**

4.    The background is comprehensively set out in the indictment and the verified complaint filed by the United States Department of Justice **("US DOJ")** on October 14, 2025 and in the announcement issued by the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** dated October 13, 2025.  The background is summarised below.

**Action in the United States**

5.    On 14 October, 2025, the United States Department of Justice **("US DOJ"),** the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** and the United Kingdom Government announced coordinated actions targeting the Prince Group.

6.    The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York **("the NY District Court")** on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering **("the US Indictment").** Concurrently, the US DOJ filed a civil forfeiture complaint **("the US Complaint")** seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group.  The criminal and civil proceedings will be referred to together as **"the US Proceedings."**

3

439

7.  In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and criminal activities including cryptocurrency investment fraud, human trafficking, money laundering, wire fraud, bank fraud, forced labour and, illegal online gambling. It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers. The scammers disappeared after taking almost every dollar they could from their victims.

8.  To effectuate the schemes, it is alleged in the US Proceedings that Chen and his associates:

    a.  built and operated forced-labour scam compounds across Cambodia in which workers were made to execute the scams at high volumes. The scam compounds housed vast dormitories surrounded by high walls and barbed wire, and functioned as violent forced labour camps;

    b.  forced migrant workers who were – not always, but often – victims themselves of human trafficking to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

    c.  frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

    d.  used their political influence in multiple countries to protect their criminal enterprise; and

    e.  paid bribes to foreign public officials to avoid disruption by law enforcement.

9.  The indictment alleges that Chen maintained meticulous records of the compounds' operations, including ledgers of the tracking profits generated from the fraud schemes, documents detailing "phone farms" used in the schemes, and images depicting methods of beating and torture used against workers.

10. The US DOJ alleges that the schemes carried out by the Prince Group resulted in billions of dollars in losses incurred by victims in the United States and around the world. The documents in the US

4

440

Proceedings allege that proceeds from these criminal activities have been laundered through various means, including cryptocurrency (using "spraying" and "funneling" techniques), online gambling operations, and cryptocurrency mining operations. Chen, his associates and companies within the Prince Group, "washed" and returned the fraudulent proceeds to the Prince Group. The "washing" was done by using the Prince Group's vast network of seemingly legitimate business enterprises to launder its criminal proceeds. One common method was to collect the fraudulent proceeds in the form of bitcoin or stablecoins and then off-ramp them into conventional currencies, for example, the US dollar. The launderers then used that cash to purchase clean bitcoin or other cryptocurrencies. Chen was directly involved in coordinating these laundering efforts.

11.    Chen and his associates subsequently used the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

12.    On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation.  The effect of the designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them.  The targets include Chen and the Company. The OFAC noted that:

   a.    Americans have lost at least $10 billion to Southeast Asia-based scam operations in 2024, a 66 percent increase over the prior year, with scams like those perpetrated by Prince Group being particularly significant.

   b.    The Prince Group remained a dominant player in Cambodia's scam economy and has controlled illicit financial flows of billions of dollars.

   c.    The actions taken by OFAC and Financial Crimes Enforcement Network (FinCEN) were in close coordination with the United Kingdom's Foreign, Commonwealth, and Development Office ("FCDO"), which took complementary actions against criminal networks responsible for targeting citizens of the United States and other allied nations through online scams and the laundering of stolen funds.

5

441

**Action in the UK**

13.    On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group.  In doing so it noted that Chen and his associates have incorporated companies in the BVI and own properties in London, including a £12 million mansion on Avenue Road in North London, a £100 million office building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and Nine Elms in South London.

14.    The Foreign Secretary Yvette Cooper stated that:

> *"The masterminds behind these horrific scam centres are ruining the lives of vulnerable people and buying up London homes to store their money.*
>
> *Together with our US allies, we are taking decisive action to combat the growing transnational threat posed by this network – upholding human rights, protecting British nationals and keeping dirty money off our streets."*

15.    The Fraud Minister Lord Hanson said:

> *"These sanctions prove our determination to stop those who profit from this activity, hold offenders accountable, and keep dirty money out of the UK. Through our new, expanded Fraud Strategy and the upcoming Global Fraud Summit, we will go even further to disrupt corrupt networks and protect the public from shameless criminals."*

16.    The effect of these sanctions is to prevent the transfer of these properties, freeze any business in which Chen and the Prince Group are involved and lock Chen and the Prince Group transnational criminal network out of the UK's financial system.

**Action in other jurisdictions**

17.    News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen, the Prince Group, and its related entities and companies.  These actions are set out in paragraphs 19 to 22 below. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the global response to combat transnational organised crime.

*Singapore*

18.    On 31 October, 2025, Singapore police announced that they had seized over $150 million (approximately US$115 million) in assets linked to the Prince Group. The seized assets include six

6

442

properties, bank accounts, securities accounts, and cash which are said to represent the proceeds of money laundering and forgery offences committed by Chen and the Prince Group. According to the Monetary Authority of Singapore (MAS), financial institutions had previously filed suspicious transaction reports, and a number of suspicious accounts had been closed. The Singapore Police Force stated that investigations into Chen and his associates commenced in 2024 after it received intelligence from the Suspicious Transaction Reporting Office (STR).

### Hong Kong

19.    On 4 November, 2025, Hong Kong authorities announced that they had frozen assets worth HK$2.75 billion (approximately US$354 million), which, based on intelligence and information gathered from multiple sources, are suspected to represent proceeds of international cross-border telecommunications fraud and money laundering activities committed by the Prince Group. The frozen assets include cash, stocks, and funds held by individuals and corporate entities.  At least 18 Hong Kong companies were blacklisted by the United States in connection with the Prince Group, including two listed companies - *"Khoon Group and Geotech Holdings"*.

### Taiwan

20.    On 4 November, 2025, Taiwanese prosecutors announced that they had detained 25 individuals and seized T$4.5 billion (approximately US$147 million) in assets tied to the Prince Group. The seized assets include 26 high-end cars, properties, and bank accounts tied to the network and to Chen in relation to money laundering and forced labour offences.

### Thailand

21.    On 3 December, 2025, the Thai authorities announced that they had seized assets worth more than 10,157 million baht (approximately US$318 million) and issued arrest warrants for 42 individuals linked to transnational online scam operations connected to Chen and Cambodian nationals Kok An and Yim Leak. As of 3 December, 2025, 29 individuals had been arrested. The seizures include shares in Bangchak Corporation Limited worth 6 billion baht (approximately US$188 million). Thailand's Anti-Money Laundering Office (AMLO) stated that investigators had found *"information on networks of online fraud, human trafficking, and money-laundering"* that were linked to Chen and his associates.

### The effect of the multi-jurisdictional actions

7

443

22.    These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating transnational organised crime, human trafficking, forced labour, and large-scale financial fraud. The scale and coordination of these actions across at least six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network

23.    In total, as of 9 December, 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The role of BVI companies**

24.    The OFAC has determined that the BVI companies form part of a complex network of holding companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

25.    In the US Complaint, the US DOJ alleged that Chen and his associates also laundered fraudulent proceeds through several companies including companies in the BVI which are under their control. It alleged further that these companies do not serve any real purpose other than to launder funds. Two BVI Companies were named in the US Proceedings - Amber Hill Ventures Limited (**"Amber Hill"**) and Lateral Bridge Global Limited (**"LBG"**).

26.    Amber Hill and LBG are said to be controlled by two of Chen's associates, who are also defendants in the US Civil Proceedings. The US Complaint discloses that personnel from the Federal Bureau of Investigation ("FBI") have conducted extensive blockchain tracing to analyse the movements of the Prince Group's cryptocurrency. The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin which the US DOJ seeks to forfeit flowed through wallets which were controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

27.    It is also alleged that Amber Hill had a banking relationship with a financial institution in the United

8

444

States. It was recorded in the account opening documents with that financial institution that Amber Hill's business activities consisted of "*[p]roprietary trading and investing,*" and its anticipated deposit and withdrawal activity would be approximately $2 million each. However, according to account statements, in February 2020, Amber Hill's account with that financial institution had approximately $22.5 million in deposits and $21.8 million in withdrawals. Amber Hill was struck from the register and dissolved on 10 November, 2023.

## THE APPLICATION

28.    The Application is made by the Attorney General on the ground that (i) it is just and equitable that joint liquidators be appointed over the Company pursuant to section 162 (1) (b) of the Act and (ii) it is in the public interest that the joint liquidators are appointed pursuant to section 162 (1) (c) of the Act.

### Just and equitable ground

29.    Section 162(1)(b) of the Insolvency Act, 2003 provides that the Court may appoint a liquidator of a company if "the Court is of the opinion that it is just and equitable that the company should be liquidated."

30.    The Attorney General is listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(b) of the Act.

31.    It is just and equitable that the Company should be placed into liquidation for the following reasons:

    a.    Chen is the sole shareholder and/or director of the Company. Chen is alleged to be the mastermind of the Prince Group. He has been criminally indicted in the United States and is subject to personal sanctions by both the United States and the United Kingdom.

    b.    The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities, to include forced labour, human trafficking, large-scale fraud, and money laundering on a massive international scale.

    c.    The BVI companies including the Company are alleged to have been established and operated to assist Chen and the Prince Group which has defrauded numerous

9

445

vulnerable victims of billions of US dollars.

d.  Despite the enforcement actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on the allegations is free to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

e.  The activities of some of the companies in the Prince Group have been the subject of civil and criminal enforcement actions in multiple jurisdictions, with authorities in six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

f.  The Company is alleged to be a shell company which was used solely as a vehicle for the fraudulent scheme.

g.  The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf, and identify potential claims against third parties.

h.  The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

i.  Independent liquidators are necessary to ensure proper coordination with regulatory and law enforcement authorities and liquidators, trustees, or receivers appointed in the BVI and other jurisdictions, given the multi-jurisdictional nature of the scheme and the actions taken by various authorities in several jurisdictions.

j.  Independent liquidators would enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed as part of a collective process.

k.  Given the fraudulent nature of the scheme, there are likely to be voidable transactions, preferences, and other claims that independent liquidators could pursue for the benefit of the victims and creditors.

32.  Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that its affairs are properly investigated and wound up under the supervision of this Honourable Court.

10

446

**Public Interest ground**

33.   Section 162(1)(c) of the Act gives the Court the discretion to appoint a liquidator of a company if it is of the opinion that it is in the public interest for a liquidator to be appointed.

34.   The Attorney General is also listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(c) of the Act.

35.   The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

36.   BVI companies including, the Company are alleged to have been used as vehicles in what has been described by international law enforcement authorities as one of the largest fraudulent investment schemes in recent history.  The scheme has caused billions of dollars in losses to victims worldwide and involved egregious human rights abuses.  They are alleged to have been used to launder and/or hold the proceeds of the horrific crimes committed by Chen and his associates, including human trafficking, forced labour, aggravated identity theft, international fraud designed to scam unsuspecting victims of their lifesavings and money laundering.  These criminal and fraudulent activities are inherently objectionable and are contrary to clearly identifiable public interest.

37.   The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the BVI as a financial centre and threatens confidence in BVI incorporated companies and the BVI's regulatory framework.

38.   The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for fraudulent purposes.

39.   The appointment of liquidators will:
   a.   facilitate cooperation with enforcement authorities, regulators, and insolvency practitioners in the BVI and other jurisdictions, demonstrating the BVI's commitment to international cooperation in combating financial fraud;
   b.   ensure that the Company's affairs are properly investigated and that appropriate steps

11

447

are taken to recover assets and maximise returns to defrauded investors;

c.    enable a proper investigation into how the Company was used in the fraudulent scheme, which may assist in preventing similar schemes in the future.

40.    Given that enforcement authorities in at least six countries have taken action and frozen or seized assets valued at over US$16 billion, it is in the public interest that BVI as the jurisdiction of incorporation of the Company, takes prompt and decisive action through the appointment of liquidators.

41.    The scale of this fraud and the international coordination of related actions make it imperative, from a public interest perspective, that the BVI positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

42.    In all the circumstances, it is not only just and equitable but also in the public interest that Joint liquidators be appointed over the Company to prevent it from being used to **further Chen's and the Prince Group's** criminal enterprise.

43.    If appointed, the joint liquidators would be able to take control of the Company, take the necessary steps in the BVI or overseas to secure and preserve its books and records and secure its assets for the benefit of the victims of the crimes perpetuated by the Prince Group. As officers of the court, they would also be able to independently investigate claims against the Company, marshal records, ensure that the Company complies with BVI laws and regulations and respond to any court process.

**Proposed liquidators**

44.    Mr. James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110, Mr. Paul Pretlove and Mr. David Standish, both of Interpath Ltd, 10 Fleet Place, London EC4M 7RB who to the best of the **Applicant's knowledge and belief are eligible insolvency practitioners** have all consented to be appointed as joint liquidators of the Company.

45.    In the circumstances, it is just and equitable **and in the public's interest to grant the order which**

12

448

the Attorney General seeks, for the appointment of joint liquidators over the Company.

A draft of the order sought is attached.

This application is supported by the affidavit of Attorney General Dawn J Smith.

The names and addresses of the persons on whom it is intended to serve the application are as follows:

**Prince Global Holdings Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

The names and addresses of the persons required to be given notice of this application pursuant to the Act and the Rules (if any) are as follows:

**Prince Global Holdings Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

**This Application is filed by O'Neal Webster, Solicitors for the Applicant**, whose address for service is 2nd Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands.  REF: 101538

Dated: 2 January 2026

_____
Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

13

449

THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/

**IN THE MATTER OF PRINCE GLOBAL HOLDINGS LIMITED**

**AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS**

BETWEEN:

**THE ATTORNEY GENERAL**

Applicant

**AND**

**PRINCE GLOBAL HOLDINGS LIMITED**

Respondent

---

**ORIGINATING APPLICATION**

---



Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 I Fax: (284) 393 5805
www.onealwebster.com

14

450

**Case Number :BVIHCOM2026/0019**

FILED
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS

The Insolvency Rules 2005

**ORDINARY APPLICATION (EX-PARTE)**

**(Company)**

Rule 14

**Submitted Date:05/01/2026 10:34**

**Filed Date:05/01/2026 13:22**

**Fees Paid:0.00**

| | |
|---|---|
| **THE EASTERN CARIBBEAN SUPREME COURT IN THE HIGH COURT OF JUSTICE VIRGIN ISLANDS COMMERCIAL DIVISION** | |
| Matter No.: | BVIHC(COM)    of 2026 |
| Applicant: | **THE ATTORNEY GENERAL** |
| Respondent: | **PRINCE GLOBAL HOLDINGS LIMITED** |

In the matter of:

**PRINCE GLOBAL HOLDINGS LIMITED**

| For Court Use Only |
|---|
| **To:  PRINCE GLOBAL HOLDINGS LIMITED,** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands.

**This Application will be heard by the Commercial Court Judge at Road Town, Tortola**

**British Virgin Islands**

**on the            day of                    2026      at                o'clock.**

**If you do not attend at the time shown the Court may make an order in your absence** |

We, O'Neal Webster, on behalf of the Applicant, the Attorney General of the Virgin Islands **("the Attorney General")**, apply pursuant to section 170 of the Insolvency Act 2003 (the "Act") for the following orders that:

1.    James Drury,  a Virgin Islands ("BVI") licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola,  Virgin Islands, VG1110; and Paul Pretlove and David Standish both United Kingdom ("UK") licensed insolvency

1

7

practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB to be appointed as joint provisional liquidators of Prince Global Holdings Limited **("the Company")** with immediate effect.

2.    The powers afforded to the said joint provisional liquidators shall be as set out in Schedule 2 of the Act as varied by Schedule 3, and as further varied by this Order.

3.    An order that the joint provisional liquidators have the power to:

   a.    consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the joint provisional liquidators and the Attorney General which is attached hereto **("the Protocol")**.

   b.    cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4.    An order that the costs of the liquidation, including the proper fees and disbursements of the joint **liquidators, the Attorney General's costs of complying with the Protocol be paid out of assets of** the Company in priority to all other claims.

5.    An order that the costs of the application be costs in the liquidation.

6.    Such further order as the court deems appropriate.

A draft of the order sought is attached.

The grounds upon which this order is sought are set out in the affidavit of the Attorney General Dawn J. Smith filed on 2nd January, 2026, but in brief are as follows:

**Introduction**

1.    There are good prima facie reasons as set out in the originating application for the eventual appointment of full liquidators on the grounds of public interest and on the grounds that it is just and equitable that they be appointed over the Company.  A summary of these reasons is set out below.

2

8

**The Company and the Prince Group**

2.      The Company was incorporated under the laws of the Virgin Islands **("BVI")** on 3 March 2018. Its registered office is located at Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, BVI, VG1110. Chen Zhi, **("Chen")** is the Company's sole Director and sole Shareholder,

3.      The Company is alleged to be a member of a transnational criminal organisation that is headed by the Prince Holding Group **("the Prince Group")** which is a Cambodian corporate conglomerate comprised of several companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan. Chen is the mastermind of **the Prince Group's** transnational criminal organisation and its chairman.

**Action in the USA and other jurisdictions**

4.      On 14 October, 2025, the United States Department of Justice **("US DOJ")**, the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** and the United Kingdom Government announced coordinated actions targeting the Prince Group.

5.      The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York **("the NY District Court")** on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering **("the US Indictment")**. Concurrently, the US DOJ filed a civil forfeiture complaint **("the US Complaint")** seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group. The criminal and civil proceedings will be referred together as the **"the US Proceedings"**.

6.      On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation. The effect of this designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them. The targets include Chen and the Company.

7.      On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group. In doing so it noted that Chen and his associates have incorporated companies in the BVI and own properties

3

9

in London including a £12 million mansion on Avenue Road in North London, a £100 million office building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and in Nine Elms in South London.

8.    News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen, the Prince Group, and its related entities and companies. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the coordinated global response to combat transnational organised crime.

9.    These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating transnational organised crime, human trafficking, forced labour, and large-scale financial fraud. The scale and coordination of these actions across six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network.

10.    In total, as of 9 December 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand) have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The allegation against Chen, his associates and companies within the Prince Group**

11.    In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and criminal activities including cryptocurrency investment fraud, human trafficking, money laundering, wire fraud, bank fraud, forced labour and, illegal online gambling. It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers. The scammers disappeared after taking almost every dollar they could from their victims.

12.    The US DOJ also alleges that the fraudulent activities carried out by the Prince Group resulted in

4

10

billions of dollars in losses incurred by victims in the United States and around the world. Chen and his associates are alleged to use the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

13.   To effectuate their fraudulent schemes, it is alleged in the US Proceedings that Chen and his associates:

   a.   forced migrant workers who were – not always, but often – victims themselves of human trafficking, to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

   b.   frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

   c.   used their political influence in multiple countries to protect their criminal enterprise; and

   d.   paid bribes to foreign public officials to avoid disruption by law enforcement.

**The role of BVI Companies in the Prince Group**

14.   The OFAC determined that the BVI companies form part of a complex network of companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

15.   In the US complaint, the US DOJ alleged that Chen and his associates laundered the fraudulent proceeds of their crime through several companies in the BVI, Cayman, Cambodia and Hong Kong, which are under their control. It alleged further that these companies do not serve any real purpose other than to launder the proceeds of their criminal and fraudulent activities. Two BVI Companies are named in the US Complaint - Amber Hill Ventures Limited (**"Amber Hill"**) and Lateral Bridge Global Limited (**"LBG"**).

16.   The US Complaint discloses that personnel from the Federal **Bureau of Investigation ("FBI") have** conducted extensive blockchain tracing to analyse the movements of the Prince Group's

5

cryptocurrency. The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin which the US DOJ seeks to forfeit flowed through wallets which were controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

**It is just and equitable that liquidators be appointed over the Company**

17. The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities to include forced labour, human trafficking, large-scale fraud, and money laundering on a massive international scale.

18. The activities of some of the companies in the Prince Group have been the subject of civil and criminal actions in multiple jurisdictions, with authorities in at least six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

19. The BVI companies including the Company are alleged to have been established and operated to assist Chen and the Prince Group which has defrauded numerous vulnerable victims of billions of US dollars.

20. Despite the actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on allegations is free to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

21. The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf for the benefit of the victims of the fraud; and to identify potential claims against third parties.

22. The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

23. Independent liquidators are necessary to ensure proper coordination with regulatory and enforcement authorities and liquidators, trustees, or receivers appointed in the Virgin Islands and

6

12

other jurisdictions, given the multi-jurisdictional nature of the scheme and the actions. Independent liquidators would also enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed.

24.    Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that its affairs are properly investigated and wound up under the supervision of this Honourable Court.

**It is in the public interest that liquidators be appointed over the Company**

25.    The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

26.    The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the Virgin Islands as a financial centre and threatens confidence in BVI companies and the BVI's regulatory framework.

27.    The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for nefarious purposes and with its commitment to international cooperation and combating serious transnational crime.

28.    Given that regulatory and law enforcement authorities in at least six countries have taken action and frozen or seized assets valued at over US$16 billion, it is in the public interest that the BVI as the jurisdiction of incorporation of the Company takes prompt and decisive action through the appointment of liquidators.

29.    The scale of this fraud and the international coordination of actions make it imperative, from a public interest perspective, that the BVI positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

**The appointment of joint provisional liquidators**

30.    It is essential that joint provisional liquidators be appointed over the Company immediately

7

13

(without notice to it and its principals) and before the originating application is heard and determined for the following reasons:

a.  The Company continues to be under the control of Chen and his associates and as a result, they can  use or continue to use it to further the criminal enterprise thereby continuing to inflict public harm.

b.  Given the serious allegations set out in this application, the sanctions imposed by the United States and the UK Government,  the US Indictment, and the US Complaint, it is appropriate and necessary that provisional liquidators be appointed immediately to:

   (i)     immediately take full control of the Company;

   (ii)    identify and preserve its assets that may represent proceeds of crime by preventing further movement, concealment, or dissipation of those assets;

   (iii)   take control of its books and records;

   (iv)    conduct thorough investigations into its past transactions; and

   (v)     review banking records, asset transfers, and corporate dealings to identify and locate the potential money laundering activities.

c.  The information and evidence gathered by the liquidators may provide crucial support for law enforcement authorities, both in the BVI and internationally, to apply for freezing orders, forfeiture orders, and other remedies. In this case, given that the United States has already filed a civil complaint seeking forfeiture of 127,271 Bitcoin valued at approximately US$15 billion allegedly connected to the Prince Group's criminal activities, the work of the liquidators could materially assist in tracing assets and preserving evidence relevant to that and other  actions.

d.  The appointment of provisional liquidator over the Company and other BVI companies which are owned and controlled by Chen would align with the BVI's National AML/CFT Policy and its commitment to international cooperation in combating serious transnational crime.

e.  The coordinated  actions taken by the US DOJ and UK Government on 14 October, 2025 signal the seriousness with which these major jurisdictions view the alleged criminal activities of the Prince Group. The appointment of provisional liquidators by this Honourable Court would demonstrate that the BVI is equally committed to ensuring that its corporate structures are not used as vehicles for serious criminality and would facilitate cooperation with international authorities in their ongoing investigations and

8

14

asset recovery efforts.

**Urgency**

31. The public announcements of the US Civil Proceedings, OFAC sanctions, and UK sanctions on 14 October 2025 together with actions taken in other jurisdictions have no doubt put Chen and his associates, who are alleged to be sophisticated criminals, on notice of the scrutiny being applied to the Prince Group network and its corporate structures.

32. The Company is likely to have received proceeds of the criminal and fraudulent activities and to have documentation that may assist in recovering the proceeds of the crime. There is a real and substantial risk that absent the immediate appointment of provisional liquidators, assets held by or through the BVI companies, including the Company will be transferred, concealed, or dissipated and documents will be destroyed or concealed. This real and substantial risk will increase once the Company is served with the originating application,

33. The appointment of provisional liquidators will immediately remove control from Chen and place the Company under the supervision and control of officers of this Court, thereby protecting the integrity of any investigation and preserving assets for the benefit of the victims of Chen and the Prince Group's fraudulent and criminal activities.

34. The appointment of joint provisional liquidators is appropriate given the number of BVI companies involved, the complexity of the alleged corporate structure spanning multiple jurisdictions, the international nature of the investigations and actions, and the need for extensive expertise in tracing assets and investigating potential money laundering activities.

**The Proposed provisional liquidators**

35. The Attorney General proposes that James Drury, a BVI licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110; and Paul Pretlove and David Standish, both UK licensed insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB be appointed as joint provisional liquidators of the Company.

9

**Conclusion**

36.   In all the circumstances, it is just and convenient **and in the public's interest,** that this Honourable Court grants the order which the Attorney General seeks in this application.

A draft of the order sought is attached.

This application is supported by the affidavit of Attorney General Dawn J. Smith.

The names and addresses of the persons on whom it is intended to serve the application are as follows:

This Application is filed by O'Neal Webster, Solicitors for the Applicant whose address for service is 2nd Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands. REF: NW/LG/101538.

Dated: 2 January 2026

_____

Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

10

THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/


**IN THE MATTER OF PRINCE GLOBAL HOLDINGS LIMITED**


**AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.**


BETWEEN:


**THE ATTORNEY GENERAL**

                                                                          Applicant

**AND**


**PRINCE GLOBAL HOLDINGS LIMITED**

                                                                          Respondent

---

**EX-PARTE ORDINARY APPLICATION
FOR JOINT PROVISIONAL LIQUIDATORS**

---



Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 I Fax: (284) 393 5805
www.onealwebster.com

11

17

**Case Number :BVIHCOM2026/0020**

FILED
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS

The Insolvency Rules 2005

**ORIGINATING APPLICATION**

**(Company)**

Rule 14

**Submitted Date:05/01/2026 10:41**

**Filed Date:05/01/2026 13:23**

**Fees Paid:0.00**

| THE EASTERN CARIBBEAN SUPREME COURT IN THE HIGH COURT OF JUSTICE VIRGIN ISLANDS COMMERCIAL DIVISION | |
|---|---|
| Matter No.: | BVIHC(COM)    of 2026 |
| Applicant: | THE ATTORNEY GENERAL |
| Respondent: | RESPECTFUL STEED LIMITED |

In the matter of:

| RESPECTFUL STEED LIMITED |
|---|

| For Court Use Only |
|---|
| **To: RESPECTFUL STEED LIMITED,** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands. <br><br>**This Application will be heard by the Commercial Court Judge at Road Town, Tortola British Virgin Islands** <br>on the            day of                2026    at            o'clock. <br><br>**If you do not attend at the time shown the Court may make an order in your absence** |

The Applicant, the Attorney General of the Virgin Islands ("**Attorney General**") of TTT Building, Wickhams Cay 1, Road Town, Tortola, Virgin Islands VG1110 applies to the Court for:

1.    An order pursuant to sections 162(1) (b) and (c) of the Insolvency Act, Revised Edition 2020 ("**the Act**") that Paul Pretlove, James Drury and David Standish, be appointed as joint liquidators of Respectful Steed Limited **("the Company")**, a company incorporated under the laws of the Virgin

1

**436**

Islands ("BVI"). James Drury is a BVI licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110. Paul Pretlove and David Standish are United Kingdom ("UK") licensed insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB acting as overseas insolvency practitioners as defined in the Act.

2. An order that the joint liquidators be given all powers set out in Schedule 2 of the Act, such powers to be exercisable without the sanction of the Court and such other powers as this Honourable Court deems fit.

3. An order that the joint liquidators have the power to:
   a. consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the liquidators and the Attorney General which is attached hereto **("the Protocol")**.
   b. cooperate and communicate with law enforcement and regulatory authorities in the BVI and in other jurisdictions.

4. An order that the costs of the liquidation, including the proper fees and disbursements of the joint liquidators and the Attorney General's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims

5. An order that the costs of the application be costs in the liquidation.

6. Such further order as the court deems appropriate.

The grounds upon which this order is sought are set out in the affidavit of Attorney General, Dawn J. Smith filed on 2 January 2026 and are summarised as follows:

**THE PARTIES**

1. The Attorney General is the principal legal adviser to the Government of the Virgin Islands (**"the Government"**) pursuant to section 58 of the Virgin Islands Constitution Order, 2007, and has

2

437

overall responsibility for all aspects of civil litigation on behalf of the Government.

2.  The Company was incorporated under the laws of the BVI on 2 March 2018. Its registered office is located at Vistra Corporate Services Centre (**"Vistra"**), Wickhams Cay II, Road Town, Tortola, BVI, VG1110. The Company is alleged to be a member of a transnational criminal organisation that is headed by Prince Holding Group Limited (**"the Prince Group"**), which is a Cambodian corporate conglomerate that comprises several companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan.

3.  The chairman of the Prince Group is Chen Zhi (**"Chen"**). Chen is the Company's sole Director. The Company's sole Shareholder is Prince Group Holdings Limited, a Hong Kong company. Prince Global Group Limited holds 100% of the shareholding in Prince Group Holdings Limited. Chen is Prince Global Group Limited's sole shareholder.

## BACKGROUND

4.  The background is comprehensively set out in the indictment and the verified complaint filed by the United States Department of Justice (**"US DOJ"**) on October 14, 2025 and in the announcement issued by the United States Department of the Treasury's Office of Foreign Assets Control (**"OFAC"**) dated October 13, 2025. The background is summarised below.

### Action in the United States

5.  On 14 October, 2025, the United States Department of Justice (**"US DOJ"**), the United States Department of the Treasury's Office of Foreign Assets Control (**"OFAC"**) and the United Kingdom Government announced coordinated actions targeting the Prince Group.

6.  The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York (**"the NY District Court"**) on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering (**"the US Indictment"**). Concurrently, the US DOJ filed a civil forfeiture complaint (**"the US Complaint"**) seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group. The criminal and civil proceedings

3

438

will be referred to together as "**the US Proceedings.**"

7.    In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and criminal activities including cryptocurrency investment fraud, human trafficking, money laundering, wire fraud, bank fraud, forced labour and, illegal online gambling. It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers. The scammers disappeared after taking almost every dollar they could from their victims.

8.    To effectuate the schemes, it is alleged in the US Proceedings that Chen and his associates:

   a.    built and operated forced-labour scam compounds across Cambodia in which workers were made to execute the scams at high volumes. The scam compounds housed vast dormitories surrounded by high walls and barbed wire, and functioned as violent forced labour camps;

   b.    forced migrant workers who were – not always, but often – victims themselves of human trafficking to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

   c.    frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

   d.    used their political influence in multiple countries to protect their criminal enterprise; and

   e.    paid bribes to foreign public officials to avoid disruption by law enforcement.

9.    The indictment alleges that Chen maintained meticulous records of the compounds' operations, including ledgers of the tracking profits generated from the fraud schemes, documents detailing "phone farms" used in the schemes, and images depicting methods of beating and torture used against workers.

4

10. The US DOJ alleges that the schemes carried out by the Prince Group resulted in billions of dollars in losses incurred by victims in the United States and around the world. The documents in the US Proceedings allege that proceeds from these criminal activities have been laundered through various means, including cryptocurrency (using "spraying" and "funneling" techniques), online gambling operations, and cryptocurrency mining operations. Chen, his associates and companies within the Prince Group, "washed" and returned the fraudulent proceeds to the Prince Group. The "washing" was done by using the Prince Group's vast network of seemingly legitimate business enterprises to launder its criminal proceeds. One common method was to collect the fraudulent proceeds in the form of bitcoin or stablecoins and then off-ramp them into conventional currencies, for example, the US dollar. The launderers then used that cash to purchase clean bitcoin or other cryptocurrencies. Chen was directly involved in coordinating these laundering efforts.

11. Chen and his associates subsequently used the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

12. On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation. The effect of the designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them. The targets include Chen and the Company. The OFAC noted that:

   a. Americans have lost at least $10 billion to Southeast Asia-based scam operations in 2024, a 66 percent increase over the prior year, with scams like those perpetrated by Prince Group being particularly significant.

   b. The Prince Group remained a dominant player in Cambodia's scam economy and has controlled illicit financial flows of billions of dollars.

   c. The actions taken by OFAC and Financial Crimes Enforcement Network (FinCEN) were in close coordination with the United Kingdom's Foreign, Commonwealth, and Development Office ("FCDO"), which took complementary actions against criminal networks responsible for targeting citizens of the United States and other allied nations

5

440

through online scams and the laundering of stolen funds.

**Action in the UK**

13. On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group. In doing so it noted that Chen and his associates have incorporated companies in the BVI and own properties in London, including a £12 million mansion on Avenue Road in North London, a £100 million office building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and Nine Elms in South London.

14. The Foreign Secretary Yvette Cooper stated that:

   *"The masterminds behind these horrific scam centres are ruining the lives of vulnerable people and buying up London homes to store their money.*

   *Together with our US allies, we are taking decisive action to combat the growing transnational threat posed by this network – upholding human rights, protecting British nationals and keeping dirty money off our streets."*

15. The Fraud Minister Lord Hanson said:

   *"These sanctions prove our determination to stop those who profit from this activity, hold offenders accountable, and keep dirty money out of the UK. Through our new, expanded Fraud Strategy and the upcoming Global Fraud Summit, we will go even further to disrupt corrupt networks and protect the public from shameless criminals."*

16. The effect of these sanctions is to prevent the transfer of these properties, freeze any business in which Chen and the Prince Group are involved and lock Chen and the Prince Group transnational criminal network out of the UK's financial system.

**Action in other jurisdictions**

17. News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen, the Prince Group, and its related entities and companies. These actions are set out in paragraphs 19 to 22 below. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the global response to combat transnational organised crime.

6

441

### Singapore

18. On 31 October, 2025, Singapore police announced that they had seized over $150 million (approximately US$115 million) in assets linked to the Prince Group. The seized assets include six properties, bank accounts, securities accounts, and cash which are said to represent the proceeds of money laundering and forgery offences committed by Chen and the Prince Group. According to the Monetary Authority of Singapore (MAS), financial institutions had previously filed suspicious transaction reports, and a number of suspicious accounts had been closed. The Singapore Police Force stated that investigations into Chen and his associates commenced in 2024 after it received intelligence from the Suspicious Transaction Reporting Office (STR).

### Hong Kong

19. On 4 November, 2025, Hong Kong authorities announced that they had frozen assets worth HK$2.75 billion (approximately US$354 million), which, based on intelligence and information gathered from multiple sources, are suspected to represent proceeds of international cross-border telecommunications fraud and money laundering activities committed by the Prince Group. The frozen assets include cash, stocks, and funds held by individuals and corporate entities. At least 18 Hong Kong companies were blacklisted by the United States in connection with the Prince Group, including two listed companies - *"Khoon Group and Geotech Holdings"*.

### Taiwan

20. On 4 November, 2025, Taiwanese prosecutors announced that they had detained 25 individuals and seized T$4.5 billion (approximately US$147 million) in assets tied to the Prince Group. The seized assets include 26 high-end cars, properties, and bank accounts tied to the network and to Chen in relation to money laundering and forced labour offences.

### Thailand

21. On 3 December, 2025, the Thai authorities announced that they had seized assets worth more than 10,157 million baht (approximately US$318 million) and issued arrest warrants for 42 individuals linked to transnational online scam operations connected to Chen and Cambodian nationals Kok An and Yim Leak. As of 3 December, 2025, 29 individuals had been arrested. The seizures include shares in Bangchak Corporation Limited worth 6 billion baht (approximately US$188 million). Thailand's Anti-Money Laundering Office (AMLO) stated that investigators had

7

442

found *"information on networks of online fraud, human trafficking, and money-laundering"* that were linked to Chen and his associates.

**The effect of the multi-jurisdictional actions**

22. These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating transnational organised crime, human trafficking, forced labour, and large-scale financial fraud. The scale and coordination of these actions across at least six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network

23. In total, as of 9 December, 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The role of BVI companies**

24. The OFAC has determined that the BVI companies form part of a complex network of holding companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

25. In the US Complaint, the US DOJ alleged that Chen and his associates also laundered fraudulent proceeds through several companies including companies in the BVI which are under their control. It alleged further that these companies do not serve any real purpose other than to launder funds. Two BVI Companies were named in the US Proceedings - Amber Hill Ventures Limited **("Amber Hill")** and Lateral Bridge Global Limited **("LBG")**.

26. Amber Hill and LBG are said to be controlled by two of Chen's associates, who are also defendants in the US Civil Proceedings. The US Complaint discloses that personnel from the Federal Bureau of Investigation ("FBI") have conducted extensive blockchain tracing to analyse the movements of the Prince Group's cryptocurrency. The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin which the US DOJ seeks to forfeit flowed through wallets which were

8

443

controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

27. It is also alleged that Amber Hill had a banking relationship with a financial institution in the United States. It was recorded in the account opening documents with that financial institution that Amber Hill's business activities consisted of "*[p]roprietary trading and investing*," and its anticipated deposit and withdrawal activity would be approximately $2 million each. However, according to account statements, in February 2020, Amber Hill's account with that financial institution had approximately $22.5 million in deposits and $21.8 million in withdrawals. Amber Hill was struck from the register and dissolved on 10 November, 2023.

**THE APPLICATION**

28. The Application is made by the Attorney General on the ground that (i) it is just and equitable that joint liquidators be appointed over the Company pursuant to section 162 (1) (b) of the Act and (ii) it is in the public interest that the joint liquidators are appointed pursuant to section 162 (1) (c) of the Act.

**Just and equitable ground**

29. Section 162(1)(b) of the Insolvency Act, 2003 provides that the Court may appoint a liquidator of a company if "the Court is of the opinion that it is just and equitable that the company should be liquidated."

30. The Attorney General is listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(b) of the Act.

31. It is just and equitable that the Company should be placed into liquidation for the following reasons:

    a. Chen is the Company's sole Director. The Company's sole Shareholder is Prince Group Holdings Limited, a Hong Kong company. Prince Global Group Limited holds 100% of the shareholding in Prince Group Holdings Limited. Chen is Prince Global Group Limited's sole shareholder. Chen is alleged to be the mastermind of the Prince Group. He has been criminally indicted in the United States and is subject to personal sanctions

9

444

by both the United States and the United Kingdom.

b.  The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities, to include forced labour, human trafficking, large-scale fraud, and money laundering on a massive international scale.

c.  The BVI companies including the Company are alleged to have been established and operated to assist Chen and the Prince Group which has defrauded numerous vulnerable victims of billions of US dollars.

d.  Despite the enforcement actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on the allegations is free to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

e.  The activities of some of the companies in the Prince Group have been the subject of civil and criminal enforcement actions in multiple jurisdictions, with authorities in six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

f.  The Company is alleged to be a shell company which was used solely as a vehicle for the fraudulent scheme.

g.  The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf, and identify potential claims against third parties.

h.  The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

i.  Independent liquidators are necessary to ensure proper coordination with regulatory and law enforcement authorities and liquidators, trustees, or receivers appointed in the BVI and other jurisdictions, given the multi-jurisdictional nature of the scheme and the actions taken by various authorities in several jurisdictions.

j.  Independent liquidators would enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed as part of a collective process.

k.  Given the fraudulent nature of the scheme, there are likely to be voidable transactions, preferences, and other claims that independent liquidators could pursue for the benefit

10

445

of the victims and creditors.

32.    Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that its affairs are properly investigated and wound up under the supervision of this Honourable Court.

**Public Interest ground**

33.    Section 162(1)(c) of the Act gives the Court the discretion to appoint a liquidator of a company if it is of the opinion that it is in the public interest for a liquidator to be appointed.

34.    The Attorney General is also listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(c) of the Act.

35.    The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

36.    BVI companies including, the Company are alleged to have been used as vehicles in what has been described by international law enforcement authorities as one of the largest fraudulent investment schemes in recent history.  The scheme has caused billions of dollars in losses to victims worldwide and involved egregious human rights abuses.  They are alleged to have been used to launder and/or hold the proceeds of the horrific crimes committed by Chen and his associates, including human trafficking, forced labour, aggravated identity theft, international fraud designed to scam unsuspecting victims of their lifesavings and money laundering.  These criminal and fraudulent activities are inherently objectionable and are contrary to clearly identifiable public interest.

37.    The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the BVI as a financial centre and threatens confidence in BVI incorporated companies and the BVI's regulatory framework.

38.    The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for fraudulent purposes.

11

446

39. The appointment of liquidators will:

   a. facilitate cooperation with enforcement authorities, regulators, and insolvency practitioners in the BVI and other jurisdictions, demonstrating the BVI's commitment to international cooperation in combating financial fraud;

   b. ensure that the Company's affairs are properly investigated and that appropriate steps are taken to recover assets and maximise returns to defrauded investors;

   c. enable a proper investigation into how the Company was used in the fraudulent scheme, which may assist in preventing similar schemes in the future.

40. Given that enforcement authorities in at least six countries have taken action and frozen or seized assets valued at over US$16 billion, it is in the public interest that BVI as the jurisdiction of incorporation of the Company, takes prompt and decisive action through the appointment of liquidators.

41. The scale of this fraud and the international coordination of related actions make it imperative, from a public interest perspective, that the BVI positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

42. In all the circumstances, it is not only just and equitable but also in the public interest that Joint liquidators be appointed over the Company to prevent it from being used to further Chen's and the Prince Group's criminal enterprise.

43. If appointed, the joint liquidators would be able to take control of the Company, take the necessary steps in the BVI or overseas to secure and preserve its books and records and secure its assets for the benefit of the victims of the crimes perpetuated by the Prince Group. As officers of the court, they would also be able to independently investigate claims against the Company, marshal records, ensure that the Company complies with BVI laws and regulations and respond to any court process.

**Proposed liquidators**

44. Mr. James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110, Mr. Paul Pretlove and Mr. David

12

447

Standish, both of Interpath Ltd, 10 Fleet Place, London EC4M 7RB who to the best of the Applicant's knowledge and belief are eligible insolvency practitioners have all consented to be appointed as joint liquidators of the Company.

45.     In the circumstances, it is just and equitable and in the public's interest to grant the order which the Attorney General seeks, for the appointment of joint liquidators over the Company.

A draft of the order sought is attached.

This application is supported by the affidavit of Attorney General Dawn J Smith.

The names and addresses of the persons on whom it is intended to serve the application are as follows:

**Respectful Steed Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

The names and addresses of the persons required to be given notice of this application pursuant to the Act and the Rules (if any) are as follows:

**Respectful Steed Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

This Application is filed by O'Neal Webster, Solicitors for the Applicant, whose address for service is 2nd Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands. REF:101538

Dated: 2 January 2026

_____
Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

13

448

THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/


**IN THE MATTER OF RESPECTFUL STEED LIMITED**

**AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS**


BETWEEN:


**THE ATTORNEY GENERAL**

Applicant

**AND**


**RESPECTFUL STEED LIMITED**

Respondent

---

**ORIGINATING APPLICATION**

---



**O'Neal Webster**

Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 I Fax: (284) 393 5805
www.onealwebster.com

14

449

**FILED
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS**

**Case Number :BVIHCOM2026/0020**

The Insolvency Rules 2005

**ORDINARY APPLICATION (EX-PARTE)**

**(Company)**

Rule 14

**Submitted Date:05/01/2026 10:40**

**Filed Date:05/01/2026 13:23**

**Fees Paid:0.00**

| | |
|---|---|
| **THE EASTERN CARIBBEAN SUPREME COURT IN THE HIGH COURT OF JUSTICE VIRGIN ISLANDS COMMERCIAL DIVISION** | |
| Matter No.: | BVIHC(COM)    of 2026 |
| Applicant: | **THE ATTORNEY GENERAL** |
| Respondent: | **RESPECTFUL STEED LIMITED** |

In the matter of:

| |
|---|
| **RESPECTFUL STEED LIMITED** |

| For Court Use Only |
|---|
| **To: RESPECTFUL STEED LIMITED,** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands. |
| **This Application will be heard by the Commercial Court Judge at Road Town, Tortola British Virgin Islands** |
| **on the          day of                    2026    at              o'clock.** |
| **If you do not attend at the time shown the Court may make an order in your absence** |

We, O'Neal Webster, on behalf of the Applicant, **the Attorney General of the Virgin Islands ("the Attorney General")**, apply pursuant to section 170 of the Insolvency Act 2003 (the "Act") for the following orders that:

1.    James Drury,  a Virgin Islands ("BVI") licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola,  Virgin Islands, VG1110; and Paul Pretlove and David Standish both United Kingdom ("UK") licensed insolvency

1

7

practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB to be appointed as joint provisional liquidators of Respectful Steed Limited **("the Company")** with immediate effect.

2. The powers afforded to the said joint provisional liquidators shall be as set out in Schedule 2 of the Act as varied by Schedule 3, and as further varied by this Order.

3. An order that the joint provisional liquidators have the power to:
   a. consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the joint provisional liquidators and the Attorney General which is attached hereto **("the Protocol")**.
   b. cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4. An order that the costs of the liquidation, including the proper fees and disbursements of the joint liquidators, the Attorney General's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

5. An order that the costs of the application be costs in the liquidation.

6. Such further order as the court deems appropriate.

A draft of the order sought is attached.

The grounds upon which this order is sought are set out in the affidavit of the Attorney General Dawn J. Smith filed on 2 January 2026, but in brief are as follows:

**Introduction**

1. There are good prima facie reasons as set out in the originating application for the eventual appointment of full liquidators on the grounds of public interest and on the grounds that it is just and equitable that they be appointed over the Company.  A summary of these reasons is set out below.

2

8

**The Company and the Prince Group**

2.      The Company was incorporated under the laws of the Virgin Islands (**"BVI"**) on 2 March 2018. Its registered office is located at Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, BVI, VG1110. Chen Zhi, (**"Chen"**) is the Company's sole Director. The Company's sole Shareholder is Prince Group Holdings Limited, a Hong Kong company. Prince Global Group Limited holds 100% of the shareholding in Prince Group Holdings Limited. Chen is Prince Global Group Limited's sole shareholder

3.      The Company is alleged to be a member of a transnational criminal organisation that is headed by the Prince Holding Group (**"the Prince Group"**) which is a Cambodian corporate conglomerate comprised of several  companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan. Chen is the mastermind of the Prince Group's transnational criminal organisation and its chairman.

**Action in the USA and other jurisdictions**

4.      On 14 October, 2025, the United States Department of Justice (**"US DOJ"**), the United States Department of the Treasury's Office of Foreign Assets Control (**"OFAC"**) and the United Kingdom Government announced coordinated  actions targeting the Prince Group.

5.      The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York (**"the NY District Court"**) on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering (**"the US Indictment"**). Concurrently, the US DOJ filed a civil forfeiture complaint (**"the US Complaint"**) seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group.  The criminal and civil proceedings will be referred together as the "**the US Proceedings**".

6.      On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation.  The effect of this designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them.  The targets include Chen and the Company.

3

9

7. On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group. In doing so it noted that Chen and his associates have incorporated companies in the BVI and own properties in London including a £12 million mansion on Avenue Road in North London, a £100 million office building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and in Nine Elms in South London.

8. News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen, the Prince Group, and its related entities and companies. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the coordinated global response to combat transnational organised crime.

9. These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating transnational organised crime, human trafficking, forced labour, and large-scale financial fraud. The scale and coordination of these actions across six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network.

10. In total, as of 9 December 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand) have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The allegation against Chen, his associates and companies within the Prince Group**

11. In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and criminal activities including cryptocurrency investment fraud, human trafficking, money laundering, wire fraud, bank fraud, forced labour and, illegal online gambling. It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers. The scammers disappeared after taking almost every dollar they could from their

4

10

victims.

12.    The US DOJ also alleges that the fraudulent activities carried out by the Prince Group resulted in billions of dollars in losses incurred by victims in the United States and around the world. Chen and his associates are alleged to use the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

13.    To effectuate their fraudulent schemes, it is alleged in the US Proceedings that Chen and his associates:

   a.    forced migrant workers who were – not always, but often – victims themselves of human trafficking, to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

   b.    frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

   c.    used their political influence in multiple countries to protect their criminal enterprise; and

   d.    paid bribes to foreign public officials to avoid disruption by law enforcement.

**The role of BVI Companies in the Prince Group**

14.    The OFAC determined that the BVI companies form part of a complex network of companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

15.    In the US complaint, the US DOJ alleged that Chen and his associates laundered the fraudulent proceeds of their crime through several companies in the BVI, Cayman, Cambodia and Hong Kong, which are under their control. It alleged further that these companies do not serve any real purpose other than to launder the proceeds of their criminal and fraudulent activities. Two BVI Companies are named in the US Complaint - Amber Hill Ventures Limited (**"Amber Hill"**) and Lateral Bridge Global Limited (**"LBG"**).

5

11

16.  The US Complaint discloses that personnel from the Federal Bureau of Investigation ("FBI") have conducted extensive blockchain tracing to analyse the movements of the Prince Group's cryptocurrency. The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin which the US DOJ seeks to forfeit flowed through wallets which were controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

**It is just and equitable that liquidators be appointed over the Company**

17.  The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities to include forced labour, human trafficking, large-scale fraud, and money laundering on a massive international scale.

18.  The activities of some of the companies in the Prince Group have been the subject of civil and criminal actions in multiple jurisdictions, with authorities in at least six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

19.  The BVI companies including the Company are alleged to have been established and operated to assist Chen and the Prince Group which has defrauded numerous vulnerable victims of billions of US dollars.

20.  Despite the actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on allegations is free to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

21.  The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf for the benefit of the victims of the fraud; and to identify potential claims against third parties.

22.  The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

6

**12**

23. Independent liquidators are necessary to ensure proper coordination with regulatory and enforcement authorities and liquidators, trustees, or receivers appointed in the Virgin Islands and other jurisdictions, given the multi-jurisdictional nature of the scheme and the actions. Independent liquidators would also enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed.

24. Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that its affairs are properly investigated and wound up under the supervision of this Honourable Court.

**It is in the public interest that liquidators be appointed over the Company**

25. The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

26. The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the Virgin Islands as a financial centre and threatens confidence in BVI companies and the BVI's regulatory framework.

27. The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for nefarious purposes and with its commitment to international cooperation and combating serious transnational crime.

28. Given that regulatory and law enforcement authorities in at least six countries have taken action and frozen or seized assets valued at over US$16 billion, it is in the public interest that the BVI as the jurisdiction of incorporation of the Company takes prompt and decisive action through the appointment of liquidators.

29. The scale of this fraud and the international coordination of actions make it imperative, from a public interest perspective, that the BVI positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

7

13

**The appointment of joint provisional liquidators**

30. It is essential that joint provisional liquidators be appointed over the Company immediately (without notice to it and its principals) and before the originating application is heard and determined for the following reasons:

a. The Company continues to be under the control of Chen and his associates and as a result, they can use or continue to use it to further the criminal enterprise thereby continuing to inflict public harm.

b. Given the serious allegations set out in this application, the sanctions imposed by the United States and the UK Government, the US Indictment, and the US Complaint, it is appropriate and necessary that provisional liquidators be appointed immediately to:

(i) immediately take full control of the Company;

(ii) identify and preserve its assets that may represent proceeds of crime by preventing further movement, concealment, or dissipation of those assets;

(iii) take control of its books and records;

(iv) conduct thorough investigations into its past transactions; and

(v) review banking records, asset transfers, and corporate dealings to identify and locate the potential money laundering activities.

c. The information and evidence gathered by the liquidators may provide crucial support for law enforcement authorities, both in the BVI and internationally, to apply for freezing orders, forfeiture orders, and other remedies. In this case, given that the United States has already filed a civil complaint seeking forfeiture of 127,271 Bitcoin valued at approximately US$15 billion allegedly connected to the Prince Group's criminal activities, the work of the liquidators could materially assist in tracing assets and preserving evidence relevant to that and other actions.

d. The appointment of provisional liquidator over the Company and other BVI companies which are owned and controlled by Chen would align with the BVI's National AML/CFT Policy and its commitment to international cooperation in combating serious transnational crime.

e. The coordinated actions taken by the US DOJ and UK Government on 14 October, 2025 signal the seriousness with which these major jurisdictions view the alleged criminal activities of the Prince Group. The appointment of provisional liquidators by this

8

14

Honourable Court would demonstrate that the BVI is equally committed to ensuring that its corporate structures are not used as vehicles for serious criminality and would facilitate cooperation with international authorities in their ongoing investigations and asset recovery efforts.

**Urgency**

31. The public announcements of the US Civil Proceedings, OFAC sanctions, and UK sanctions on 14 October 2025 together with actions taken in other jurisdictions have no doubt put Chen and his associates, who are alleged to be sophisticated criminals, on notice of the scrutiny being applied to the Prince Group network and its corporate structures.

32. The Company is likely to have received proceeds of the criminal and fraudulent activities and to have documentation that may assist in recovering the proceeds of the crime. There is a real and substantial risk that absent the immediate appointment of provisional liquidators, assets held by or through the BVI companies, including the Company will be transferred, concealed, or dissipated and documents will be destroyed or concealed. This real and substantial risk will increase once the Company is served with the originating application,

33. The appointment of provisional liquidators will immediately remove control from Chen and place the Company under the supervision and control of officers of this Court, thereby protecting the integrity of any investigation and preserving assets for the benefit of the victims of Chen and the Prince Group's fraudulent and criminal activities.

34. The appointment of joint provisional liquidators is appropriate given the number of BVI companies involved, the complexity of the alleged corporate structure spanning multiple jurisdictions, the international nature of the investigations and actions, and the need for extensive expertise in tracing assets and investigating potential money laundering activities.

**The Proposed provisional liquidators**

35. The Attorney General proposes that James Drury,  a BVI licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110; and Paul Pretlove and David Standish, both UK licensed

9

15

insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB be appointed as joint provisional liquidators of the Company.

**Conclusion**

36. In all the circumstances, it is just and convenient and in the public's interest, that this Honourable Court grants the order which the Attorney General seeks in this application.

A draft of the order sought is attached.

This application is supported by the affidavit of Attorney General Dawn J. Smith.

The names and addresses of the persons on whom it is intended to serve the application are as follows:

This Application is filed by O'Neal Webster, Solicitors for the Applicant whose address for service is 2nd Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands. REF: NW/LG/101538.

Dated: 2 January 2026

_____
Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

10

16

THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/


**IN THE MATTER OF RESPECTFUL STEED LIMITED**


**AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.**

BETWEEN:

**THE ATTORNEY GENERAL**

Applicant

**AND**

**RESPECTFUL STEED LIMITED**

Respondent

---

### EX-PARTE ORDINARY APPLICATION
### FOR JOINT PROVISIONAL LIQUIDATORS

---



**Legal Practitioners for the Applicant**
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 I Fax: (284) 393 5805
www.onealwebster.com

11

17

**Case Number :BVIHCOM2026/0021**

The Insolvency Rules 2005

**ORIGINATING APPLICATION**

**(Company)**

Rule 14

**Submitted Date:05/01/2026 11:29**

**Filed Date:05/01/2026 13:24**

**Fees Paid:0.00**

**FILED
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS**

| THE EASTERN CARIBBEAN SUPREME COURT IN THE HIGH COURT OF JUSTICE VIRGIN ISLANDS COMMERCIAL DIVISION | |
|---|---|
| Matter No.: | BVIHC(COM)        of 2026 |
| Applicant: | **THE ATTORNEY GENERAL** |
| Respondent: | **RETAIN PROSPER LIMITED** |

In the matter of:

| **RETAIN PROSPER LIMITED** |
|---|

| For Court Use Only |
|---|
| **To: RETAIN PROSPER LIMITED** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands.<br><br>**This Application will be heard by the Commercial Court Judge at Road Town, Tortola**<br><br>**British Virgin Islands**<br><br>**on the              day of                    2026      at              o'clock.**<br><br>**If you do not attend at the time shown the Court may make an order in your absence** |

The Applicant, the Attorney General of the Virgin Islands ("**Attorney General**") of TTT Building, Wickhams Cay 1, Road Town, Tortola, Virgin Islands VG1110 applies to the Court for:

1.    An order pursuant to sections 162(1) (b) and (c) of the Insolvency Act, Revised Edition 2020 ("**the Act**") that Paul Pretlove, James Drury and David Standish, be appointed as joint liquidators of Retain Prosper Limited **("the Company")**, a company incorporated under the laws of the Virgin

1

Islands ("BVI"). James Drury is a BVI licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110. Paul Pretlove and David Standish are United Kingdom ("UK") licensed insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB acting as overseas insolvency practitioners as defined in the Act.

2.   An order that the joint liquidators be given all powers set out in Schedule 2 of the Act, such powers to be exercisable without the sanction of the Court and such other powers as this Honourable Court deems fit.

3.   An order that the joint liquidators have the power to:

   a.   consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the liquidators and the Attorney General which is attached hereto **("the Protocol")**.

   b.   cooperate and communicate with law enforcement and regulatory authorities in the BVI and in other jurisdictions.

4.   An order that the costs of the liquidation, including the proper fees and disbursements of the joint liquidators and the Attorney General's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims

5.   An order that the costs of the application be costs in the liquidation.

6.   Such further order as the court deems appropriate.


The grounds upon which this order is sought are set out in the affidavit of Attorney General, Dawn J. Smith filed on 2 January 2026 and are summarised as follows:


**THE PARTIES**

1.   The Attorney General is the principal legal adviser to the Government of the Virgin Islands ("**the Government**") pursuant to section 58 of the Virgin Islands Constitution Order, 2007, and has

2

overall responsibility for all aspects of civil litigation on behalf of the Government.

2. The Company was incorporated under the laws of the BVI on 26 September 2019. Its registered office is located at Vistra Corporate Services Centre **("Vistra")**, Wickhams Cay II, Road Town, Tortola, BVI, VG1110. The Company is alleged to be a member of a transnational criminal organisation that is headed by Prince Holding Group Limited **("the Prince Group"),** which is a Cambodian corporate conglomerate that comprises several companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan. On 17 November 2025, Vistra filed its Intention to Resign as the Company's Registered Agent.

3. The chairman of the Prince Group is Chen Zhi **("Chen").** Chen is the Company's sole Director. The Company's sole Shareholder is Prince Group Holdings Limited, a Hong Kong company. Prince Global Group Limited holds 100% of the shareholding in Prince Group Holdings Limited. Chen is Prince Global Group Limited's sole shareholder.

**BACKGROUND**

4. The background is comprehensively set out in the indictment and the verified complaint filed by the United States Department of Justice **("US DOJ")** on October 14, 2025 and in the announcement issued by the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** dated October 13, 2025. The background is summarised below.

**Action in the United States**

5. On 14 October, 2025, the United States Department of Justice **("US DOJ"),** the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** and the United Kingdom Government announced coordinated actions targeting the Prince Group.

6. The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York **("the NY District Court")** on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering **("the US Indictment").** Concurrently, the US DOJ filed a civil forfeiture complaint **("the US Complaint")** seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable

3

to criminal activity associated with Chen and the Prince Group.  The criminal and civil proceedings will be referred to together as "**the US Proceedings**."

7.      In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and criminal activities including cryptocurrency investment fraud, human trafficking, money laundering, wire fraud, bank fraud, forced labour and, illegal online gambling.  It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers.  The scammers disappeared after taking almost every dollar they could from their victims.

8.      To effectuate the schemes, it is alleged in the US Proceedings that Chen and his associates:

   a.      built and operated forced-labour scam compounds across Cambodia in which workers were made to execute the scams at high volumes. The scam compounds housed vast dormitories surrounded by high walls and barbed wire, and functioned as violent forced labour camps;

   b.      forced migrant workers who were – not always, but often – victims themselves of human trafficking to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

   c.      frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

   d.      used their political influence in multiple countries to protect their criminal enterprise; and

   e.      paid bribes to foreign public officials to avoid disruption by law enforcement.

9.      The indictment alleges that Chen maintained meticulous records of the compounds' operations, including ledgers of the tracking profits generated from the fraud schemes, documents detailing "phone farms" used in the schemes, and images depicting methods of beating and torture used against workers.

4

10. The US DOJ alleges that the schemes carried out by the Prince Group resulted in billions of dollars in losses incurred by victims in the United States and around the world. The documents in the US Proceedings allege that proceeds from these criminal activities have been laundered through various means, including cryptocurrency (using "spraying" and "funneling" techniques), online gambling operations, and cryptocurrency mining operations. Chen, his associates and companies within the Prince Group, "washed" and returned the fraudulent proceeds to the Prince Group. The "washing" was done by using the Prince Group's vast network of seemingly legitimate business enterprises to launder its criminal proceeds. One common method was to collect the fraudulent proceeds in the form of bitcoin or stablecoins and then off-ramp them into conventional currencies, for example, the US dollar. The launderers then used that cash to purchase clean bitcoin or other cryptocurrencies. Chen was directly involved in coordinating these laundering efforts.

11. Chen and his associates subsequently used the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

12. On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation.  The effect of the designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them.  The targets include Chen and the Company. The OFAC noted that:

   a. Americans have lost at least $10 billion to Southeast Asia-based scam operations in 2024, a 66 percent increase over the prior year, with scams like those perpetrated by Prince Group being particularly significant.

   b. The Prince Group remained a dominant player in Cambodia's scam economy and has controlled illicit financial flows of billions of dollars.

   c. The actions taken by OFAC and Financial Crimes Enforcement Network (FinCEN) were in close coordination with the United Kingdom's Foreign, Commonwealth, and Development Office ("FCDO"), which took complementary actions against criminal networks responsible for targeting citizens of the United States and other allied nations

5

through online scams and the laundering of stolen funds.

**Action in the UK**

13.    On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group.  In doing so it noted that Chen and his associates have incorporated companies in the BVI and own properties in London, including a £12 million mansion on Avenue Road in North London, a £100 million office building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and Nine Elms in South London.

14.    The Foreign Secretary Yvette Cooper stated that:

> "*The masterminds behind these horrific scam centres are ruining the lives of vulnerable people and buying up London homes to store their money.*
>
> *Together with our US allies, we are taking decisive action to combat the growing transnational threat posed by this network – upholding human rights, protecting British nationals and keeping dirty money off our streets.*"

15.    The Fraud Minister Lord Hanson said:

> "*These sanctions prove our determination to stop those who profit from this activity, hold offenders accountable, and keep dirty money out of the UK. Through our new, expanded Fraud Strategy and the upcoming Global Fraud Summit, we will go even further to disrupt corrupt networks and protect the public from shameless criminals.*"

16.    The effect of these sanctions is to prevent the transfer of these properties, freeze any business in which Chen and the Prince Group are involved and lock Chen and the Prince Group transnational criminal network out of the UK's financial system.

**Action in other jurisdictions**

17.    News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen,  the Prince Group, and its related entities and companies.  These actions are set out in paragraphs 19 to 22 below. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the global response to combat transnational organised crime.

6

*Singapore*

18.     On 31 October, 2025, Singapore police announced that they had seized over $150 million (approximately US$115 million) in assets linked to the Prince Group. The seized assets include six properties, bank accounts, securities accounts, and cash which are said to represent the proceeds of money laundering and forgery offences committed by Chen and the Prince Group. According to the Monetary Authority of Singapore (MAS), financial institutions had previously filed suspicious transaction reports, and a number of suspicious accounts had been closed. The Singapore Police Force stated that investigations into Chen and his associates commenced in 2024 after it received intelligence from the Suspicious Transaction Reporting Office (STR).

*Hong Kong*

19.      On 4 November, 2025, Hong Kong authorities announced that they had frozen assets worth HK$2.75 billion (approximately US$354 million), which, based on intelligence and information gathered from multiple sources, are suspected to represent proceeds of international cross-border telecommunications fraud and money laundering activities committed by the Prince Group. The frozen assets include cash, stocks, and funds held by individuals and corporate entities.  At least 18 Hong Kong companies were blacklisted by the United States in connection with the Prince Group, including two listed companies - "*Khoon Group and Geotech Holdings".*

*Taiwan*

20.     On 4 November, 2025, Taiwanese prosecutors announced that they had detained 25 individuals and seized T$4.5 billion (approximately US$147 million) in assets tied to the Prince Group. The seized assets include 26 high-end cars, properties, and bank accounts tied to the network and to Chen in relation to money laundering and forced labour offences.

*Thailand*

21.     On 3 December, 2025, the Thai authorities announced that they had seized assets worth more than 10,157 million baht (approximately US$318 million) and issued arrest warrants for 42 individuals linked to transnational online scam operations connected to Chen and Cambodian nationals Kok An and Yim Leak. As of 3 December, 2025, 29 individuals had been arrested. The seizures include shares in Bangchak Corporation Limited worth 6 billion baht (approximately US$188 million). Thailand's Anti-Money Laundering Office (AMLO) stated that investigators had

7

found "*information on networks of online fraud, human trafficking, and money-laundering*" that were linked to Chen and his associates.

**The effect of the multi-jurisdictional actions**

22.     These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating transnational organised crime, human trafficking, forced labour, and large-scale financial fraud. The scale and coordination of these actions across at least six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network

23.     In total, as of 9 December, 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The role of BVI companies**

24.     The OFAC has determined that the BVI companies form part of a complex network of holding companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

25.     In the US Complaint, the US DOJ alleged that Chen and his associates also laundered fraudulent proceeds through several companies including companies in the BVI which are under their control.  It alleged further that these companies do not serve any real purpose other than to launder funds. Two BVI Companies were named in the US Proceedings - Amber Hill Ventures Limited **("Amber Hill")** and Lateral Bridge Global Limited **("LBG")**.

26.     Amber Hill and LBG are said to be controlled by two of Chen's associates, who are also defendants in the US Civil Proceedings. The US Complaint discloses that personnel from the Federal Bureau of Investigation ("FBI") have conducted extensive blockchain tracing to analyse the movements of the Prince Group's cryptocurrency.  The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin which the US DOJ seeks to forfeit flowed through wallets which were

controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

27.     It is also alleged that Amber Hill had a banking relationship with a financial institution in the United States. It was recorded in the account opening documents with that financial institution that Amber Hill's business activities consisted of "*[p]roprietary trading and investing*," and its anticipated deposit and withdrawal activity would be approximately $2 million each. However, according to account statements, in February 2020, Amber Hill's account with that financial institution had approximately $22.5 million in deposits and $21.8 million in withdrawals. Amber Hill was struck from the register and dissolved on 10 November, 2023.

**THE APPLICATION**

28.     The Application is made by the Attorney General on the ground that (i) it is just and equitable that joint liquidators be appointed over the Company pursuant to section 162 (1) (b) of the Act and (ii) it is in the public interest that the joint liquidators are appointed pursuant to section 162 (1) (c) of the Act.

**Just and equitable ground**

29.     Section 162(1)(b) of the Insolvency Act, 2003 provides that the Court may appoint a liquidator of a company if "the Court is of the opinion that it is just and equitable that the company should be liquidated."

30.     The Attorney General is listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(b) of the Act.

31.     It is just and equitable that the Company should be placed into liquidation for the following reasons:

    a.     Chen is the Company's sole Director. The Company's sole Shareholder is Prince Group Holdings Limited, a Hong Kong company. Prince Global Group Limited holds 100% of the shareholding in Prince Group Holdings Limited. Chen is Prince Global Group Limited's sole shareholder. Chen is alleged to be the mastermind of the Prince Group. He has been criminally indicted in the United States and is subject to personal sanctions

9

by both the United States and the United Kingdom.

b.  The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities, to include forced labour, human trafficking, large-scale fraud, and money laundering on a massive international scale.

c.  The BVI companies including the Company are alleged to have been established and operated to assist Chen and the Prince Group which has defrauded numerous vulnerable victims of billions of US dollars.

d.  Despite the enforcement actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on the allegations is free to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

e.  The activities of some of the companies in the Prince Group have been the subject of civil and criminal enforcement actions in multiple jurisdictions, with authorities in six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

f.  The Company is alleged to be a shell company which was used solely as a vehicle for the fraudulent scheme.

g.  The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf, and identify potential claims against third parties.

h.  The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

i.  Independent liquidators are necessary to ensure proper coordination with regulatory and law enforcement authorities and liquidators, trustees, or receivers appointed in the BVI and other jurisdictions, given the multi-jurisdictional nature of the scheme and the actions taken by various authorities in several jurisdictions.

j.  Independent liquidators would enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed as part of a collective process.

k.  Given the fraudulent nature of the scheme, there are likely to be voidable transactions, preferences, and other claims that independent liquidators could pursue for the benefit

10

of the victims and creditors.

32.     Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that its affairs are properly investigated and wound up under the supervision of this Honourable Court.

**Public Interest ground**

33.     Section 162(1)(c) of the Act gives the Court the discretion to appoint a liquidator of a company if it is of the opinion that it is in the public interest for a liquidator to be appointed.

34.     The Attorney General is also listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(c) of the Act.

35.     The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

36.     BVI companies including, the Company are alleged to have been used as vehicles in what has been described by international law enforcement authorities as one of the largest fraudulent investment schemes in recent history.  The scheme has caused billions of dollars in losses to victims worldwide and involved egregious human rights abuses.  They are alleged to have been used to launder and/or hold the proceeds of the horrific crimes committed by Chen and his associates, including human trafficking, forced labour, aggravated identity theft, international fraud designed to scam unsuspecting victims of their lifesavings and money laundering.  These criminal and fraudulent activities are inherently objectionable and are contrary to clearly identifiable public interest.

37.     The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the BVI as a financial centre and threatens confidence in BVI incorporated companies and the BVI's regulatory framework.

38.     The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for fraudulent purposes.

11

39.    The appointment of liquidators will:

a.    facilitate cooperation with enforcement authorities, regulators, and insolvency practitioners in the BVI and other jurisdictions, demonstrating the BVI's commitment to international cooperation in combating financial fraud;

b.    ensure that the Company's affairs are properly investigated and that appropriate steps are taken to recover assets and maximise returns to defrauded investors;

c.    enable a proper investigation into how the Company was used in the fraudulent scheme, which may assist in preventing similar schemes in the future.

40.    Given that enforcement authorities in at least six countries have taken action and frozen or seized assets valued at over US$16 billion, it is in the public interest that BVI as the jurisdiction of incorporation of the Company, takes prompt and decisive action through the appointment of liquidators.

41.    The scale of this fraud and the international coordination of related actions make it imperative, from a public interest perspective, that the BVI positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

42.    In all the circumstances, it is not only just and equitable but also in the public interest that Joint liquidators be appointed over the Company to prevent it from being used to further Chen's and the Prince Group's criminal enterprise.

43.    If appointed, the joint liquidators would be able to take control of the Company, take the necessary steps in the BVI or overseas to secure and preserve its books and records and secure its assets for the benefit of the victims of the crimes perpetuated by the Prince Group. As officers of the court, they would also be able to independently investigate claims against the Company, marshal records, ensure that the Company complies with BVI laws and regulations and respond to any court process.

**Proposed liquidators**

44.    Mr. James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock

12

Road, Road Town, Tortola, British Virgin Islands, VG1110, Mr. Paul Pretlove and Mr. David Standish, both of Interpath Ltd, 10 Fleet Place, London EC4M 7RB who to the best of the Applicant's knowledge and belief are eligible insolvency practitioners have all consented to be appointed as joint liquidators of the Company.

45.    In the circumstances, it is just and equitable and in the public's interest to grant the order which the Attorney General seeks, for the appointment of joint liquidators over the Company.

A draft of the order sought is attached.

This application is supported by the affidavit of Attorney General Dawn J Smith.

The names and addresses of the persons on whom it is intended to serve the application are as follows:

**Retain Prosper Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

The names and addresses of the persons required to be given notice of this application pursuant to the Act and the Rules (if any) are as follows:

**Retain  Prosper Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

This Application is filed by O'Neal Webster, Solicitors for the Applicant, whose address for service is 2nd Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands. REF:101538

_____                          Dated: 2 January 2026
Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

13

THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/

**IN THE MATTER OF RETAIN PROSPER LIMITED**

**AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS**

BETWEEN:

**THE ATTORNEY GENERAL**

Applicant

**AND**

**RETAIN PROSPER LIMITED**

Respondent

_____

**ORIGINATING APPLICATION**

_____



Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 l Fax: (284) 393 5805
www.onealwebster.com

14

**Case Number :BVIHCOM2026/0021**

**FILED**
**HIGH COURT**
**TERRITORY OF**
**THE VIRGIN ISLANDS**

The Insolvency Rules 2005

**ORDINARY APPLICATION (EX-PARTE)**

**(Company)**

Rule 14

**Submitted Date:05/01/2026 11:27**

**Filed Date:05/01/2026 13:24**

**Fees Paid:0.00**

| THE EASTERN CARIBBEAN SUPREME COURT IN THE HIGH COURT OF JUSTICE VIRGIN ISLANDS COMMERCIAL DIVISION | |
|---|---|
| Matter No.: | BVIHC(COM)        of 2026 |
| Applicant: | **THE ATTORNEY GENERAL** |
| Respondent: | **RETAIN PROSPER LIMITED** |

In the matter of:

| **RETAIN PROSPER LIMITED** |
|---|

| For Court Use Only |
|---|
| **To:  RETAIN PROSPER LIMITED,** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands.<br><br>**This Application will be heard by the Commercial Court Judge at Road Town, Tortola**<br>**British Virgin Islands**<br>**on the            day of                      2026      at                o'clock.**<br><br>**If you do not attend at the time shown the Court may make an order in your absence** |

We, O'Neal Webster, on behalf of the Applicant, **the Attorney General of the Virgin Islands ("the Attorney General")**, apply pursuant to section 170 of the Insolvency Act 2003 (the "Act") for the following orders that:

1.    James Drury,  a Virgin Islands ("BVI") licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola,  Virgin Islands, VG1110; and Paul Pretlove and David Standish both United Kingdom ("UK") licensed insolvency

1

practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB to be appointed as joint provisional liquidators of Retain Prosper Limited **("the Company")** with immediate effect.

2.    The powers afforded to the said joint provisional liquidators shall be as set out in Schedule 2 of the Act as varied by Schedule 3, and as further varied by this Order.

3.    An order that the joint provisional liquidators have the power to:

   a.    consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the joint provisional liquidators and the Attorney General which is attached hereto **("the Protocol")**.

   b.    cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4.    An order that the costs of the liquidation, including the proper fees and disbursements of the joint liquidators, the Attorney General's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

5.    An order that the costs of the application be costs in the liquidation.

6.    Such further order as the court deems appropriate.

A draft of the order sought is attached.

The grounds upon which this order is sought are set out in the affidavit of the Attorney General Dawn J. Smith filed on 2 January 2026, but in brief are as follows:

**Introduction**

1.    There are good prima facie reasons as set out in the originating application for the eventual appointment of full liquidators on the grounds of public interest and on the grounds that it is just and equitable that they be appointed over the Company.  A summary of these reasons is set out below.

2

**The Company and the Prince Group**

2.      The Company was incorporated under the laws of the Virgin Islands **("BVI")** on 26 September 2019. Its registered office is located at Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, BVI, VG1110. Chen Zhi, **("Chen")** is the Company's sole Director. The Company's sole Shareholder is Prince Group Holdings Limited, a Hong Kong company. Prince Global Group Limited holds 100% of the shareholding in Prince Group Holdings Limited. Chen is Prince Global Group Limited's sole shareholder

3.      The Company is alleged to be a member of a transnational criminal organisation that is headed by the Prince Holding Group **("the Prince Group")** which is a Cambodian corporate conglomerate comprised of several  companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan. Chen is the mastermind of the Prince Group's transnational criminal organisation and its chairman.

 **Action in the USA and other jurisdictions**

4.      On 14 October, 2025, the United States Department of Justice **("US DOJ"),** the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** and the United Kingdom Government announced coordinated  actions targeting the Prince Group.

5.      The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York **("the NY District Court")** on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering **("the US Indictment").** Concurrently, the US DOJ filed a civil forfeiture complaint **("the US Complaint")** seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group.  The criminal and civil proceedings will be referred together as the "**the US Proceedings**".

6.      On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation.  The effect of this designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them.  The targets include Chen and the Company.

3

7. On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group. In doing so it noted that Chen and his associates have incorporated companies in the BVI and own properties in London including a £12 million mansion on Avenue Road in North London, a £100 million office building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and in Nine Elms in South London.

8. News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen, the Prince Group, and its related entities and companies. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the coordinated global response to combat transnational organised crime.

9. These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating transnational organised crime, human trafficking, forced labour, and large-scale financial fraud. The scale and coordination of these actions across six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network.

10. In total, as of 9 December 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand) have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The allegation against Chen, his associates and companies within the Prince Group**

11. In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and criminal activities including cryptocurrency investment fraud, human trafficking, money laundering, wire fraud, bank fraud, forced labour and, illegal online gambling. It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers. The scammers disappeared after taking almost every dollar they could from their

4

victims.

12.     The US DOJ also alleges that the fraudulent activities carried out by the Prince Group resulted in billions of dollars in losses incurred by victims in the United States and around the world. Chen and his associates are alleged to use the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

13.     To effectuate their fraudulent schemes, it is alleged in the US Proceedings that Chen and his associates:

   a.     forced migrant workers who were – not always, but often – victims themselves of human trafficking, to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

   b.     frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

   c.     used their political influence in multiple countries to protect their criminal enterprise; and

   d.     paid bribes to foreign public officials to avoid disruption by law enforcement.

**The role of BVI Companies in the Prince Group**

14.     The OFAC determined that the BVI companies form part of a complex network of companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

15.     In the US complaint, the US DOJ alleged that Chen and his associates laundered the fraudulent proceeds of their crime through several companies in the BVI, Cayman, Cambodia and Hong Kong, which are under their control. It alleged further that these companies do not serve any real purpose other than to launder the proceeds of their criminal and fraudulent activities. Two BVI Companies are named in the US Complaint - Amber Hill Ventures Limited ("**Amber Hill**") and Lateral Bridge Global Limited **("LBG")**.

5

16.     The US Complaint discloses that personnel from the Federal Bureau of Investigation ("FBI") have conducted extensive blockchain tracing to analyse the movements of the Prince Group's cryptocurrency.  The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin which the US DOJ seeks to forfeit flowed through wallets which were controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

**It is just and equitable that liquidators be appointed over the Company**

17.     The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities to include forced labour, human trafficking, large-scale fraud, and money laundering on a massive international scale.

18.     The activities of some of the companies in the Prince Group have been the subject of civil and criminal actions in multiple jurisdictions, with authorities in at least six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

19.     The BVI companies including the Company are alleged to have been established and operated to assist Chen and the Prince Group which has defrauded numerous vulnerable victims of billions of US dollars.

20.     Despite the  actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on allegations is free to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

21.     The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf for the benefit of the victims of the fraud; and to identify potential claims against third parties.

22.     The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

6

23.    Independent liquidators are necessary to ensure proper coordination with regulatory and enforcement authorities and liquidators, trustees, or receivers appointed in the Virgin Islands and other jurisdictions, given the multi-jurisdictional nature of the scheme and the   actions. Independent liquidators would also enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed.

24.    Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that its affairs are properly investigated and wound up under the supervision of this Honourable Court.

**It is in the public interest that liquidators be appointed over the Company**

25.    The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

26.    The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the Virgin Islands as a financial centre and threatens confidence in BVI companies and the BVI's regulatory framework.

27.    The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for nefarious purposes and with its commitment to international cooperation and combating serious transnational crime.

28.    Given that regulatory and law enforcement authorities in at least six countries have taken action and frozen or seized assets valued at over US$16 billion, it is in the public interest that the BVI as the jurisdiction of incorporation of the Company takes prompt and decisive action through the appointment of liquidators.

29.    The scale of this fraud and the international coordination of actions make it imperative, from a public interest perspective, that the BVI  positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

7

**The appointment of joint provisional liquidators**

30.    It is essential that joint provisional liquidators be appointed over the Company immediately (without notice to it and its principals) and before the originating application is heard and determined for the following reasons:

a.    The Company continues to be under the control of Chen and his associates and as a result, they can  use or continue to use it to further the criminal enterprise thereby continuing to inflict public harm.

b.    Given the serious allegations set out in this application, the sanctions imposed by the United States and the UK Government,  the US Indictment, and the US Complaint, it is appropriate and necessary that provisional liquidators be appointed immediately to:

(i)    immediately take full control of the Company;

(ii)    identify and preserve its assets that may represent proceeds of crime by preventing further movement, concealment, or dissipation of those assets;

(iii)    take control of its books and records;

(iv)    conduct thorough investigations into its past transactions; and

(v)    review banking records, asset transfers, and corporate dealings to identify and locate the potential money laundering activities.

c.    The information and evidence gathered by the liquidators may provide crucial support for law enforcement authorities, both in the BVI and internationally, to apply for freezing orders, forfeiture orders, and other remedies. In this case, given that the United States has already filed a civil complaint seeking forfeiture of 127,271 Bitcoin valued at approximately US$15 billion allegedly connected to the Prince Group's criminal activities, the work of the liquidators could materially assist in tracing assets and preserving evidence relevant to that and other  actions.

d.    The appointment of provisional liquidator over the Company and other BVI companies which are owned and controlled by Chen would align with the BVI's National AML/CFT Policy and its commitment to international cooperation in combating serious transnational crime.

e.    The coordinated  actions taken by the US DOJ and UK Government on 14 October, 2025 signal the seriousness with which these major jurisdictions view the alleged criminal activities of the Prince Group. The appointment of provisional liquidators by this

8

Honourable Court would demonstrate that the BVI is equally committed to ensuring that its corporate structures are not used as vehicles for serious criminality and would facilitate cooperation with international authorities in their ongoing investigations and asset recovery efforts.

**Urgency**

31.    The public announcements of the US Civil Proceedings, OFAC sanctions, and UK sanctions on 14 October 2025 together with actions taken in other jurisdictions have no doubt put Chen and his associates, who are alleged to be sophisticated criminals, on notice of the scrutiny being applied to the Prince Group network and its corporate structures.

32.    The Company is likely to have received proceeds of the criminal and fraudulent activities and to have documentation that may assist in recovering the proceeds of the crime. There is a real and substantial risk that absent the immediate appointment of provisional liquidators, assets held by or through the BVI companies, including the Company will be transferred, concealed, or dissipated and documents will be destroyed or concealed. This real and substantial risk will increase once the Company is served with the originating application,

33.    The appointment of provisional liquidators will immediately remove control from Chen and place the Company under the supervision and control of officers of this Court, thereby protecting the integrity of any investigation and preserving assets for the benefit of the victims of Chen and the Prince Group's fraudulent and criminal activities.

34.    The appointment of joint provisional liquidators is appropriate given the number of BVI companies involved, the complexity of the alleged corporate structure spanning multiple jurisdictions, the international nature of the investigations and actions, and the need for extensive expertise in tracing assets and investigating potential money laundering activities.

**The Proposed provisional liquidators**

35.    The Attorney General proposes that James Drury,  a BVI licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110; and Paul Pretlove and David Standish, both UK licensed

9

insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB be appointed as joint provisional liquidators of the Company.

**Conclusion**

36.    In all the circumstances, it is just and convenient and in the public's interest, that this Honourable Court grants the order which the Attorney General seeks in this application.

A draft of the order sought is attached.

This application is supported by the affidavit of Attorney General Dawn J. Smith.

The names and addresses of the persons on whom it is intended to serve the application are as follows:

This Application is filed by O'Neal Webster, Solicitors for the Applicant whose address for service is 2nd Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands. REF: NW/LG/101538.

Dated: 2 January 2026

_____
Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

10

THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/

**IN THE MATTER OF RETAIN PROSPER LIMITED**

**AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS**.

BETWEEN:

**THE ATTORNEY GENERAL**

Applicant

**AND**

**RETAIN PROSPER LIMITED**

Respondent

_____

**EX-PARTE ORDINARY APPLICATION
FOR JOINT PROVISIONAL LIQUIDATORS**

_____



Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 l Fax: (284) 393 5805
www.onealwebster.com

11

**Case Number :BVIHCOM2026/0023**

FILED
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS

The Insolvency Rules 2005

**ORIGINATING APPLICATION**

**(Company)**

Rule 14

**Submitted Date:05/01/2026 11:39**

**Filed Date:05/01/2026 13:33**

**Fees Paid:0.00**

| THE EASTERN CARIBBEAN SUPREME COURT IN THE HIGH COURT OF JUSTICE VIRGIN ISLANDS COMMERCIAL DIVISION | |
|---|---|
| Matter No.: | BVIHC(COM)     of 2026 |
| Applicant: | **THE ATTORNEY GENERAL** |
| Respondent: | **SIMPLY ADVANCED LIMITED** |

In the matter of:

| SIMPLY ADVANCED LIMITED |
|---|

| For Court Use Only |
|---|
| **To: SIMPLY ADVANCED LIMITED,** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands.<br><br>**This Application will be heard by the Commercial Court Judge at Road Town, Tortola**<br>**British Virgin Islands**<br>**on the            day of                  2026    at              o'clock.**<br><br>**If you do not attend at the time shown the Court may make an order in your absence** |

The Applicant, the Attorney General of the Virgin Islands ("**Attorney General**") of TTT Building, Wickhams Cay 1, Road Town, Tortola, Virgin Islands VG1110 applies to the Court for:

1.  An order pursuant to sections 162(1) (b) and (c) of the Insolvency Act, Revised Edition 2020 ("**the Act**") that Paul Pretlove, James Drury and David Standish, be appointed as joint liquidators of Simply Advanced Limited **("the Company")**, a company incorporated under the laws of the Virgin Islands ("BVI"). James Drury is a BVI licensed insolvency practitioner of Interpath (BVI) Limited, PO

1

435

Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110. Paul Pretlove and David Standish are United Kingdom ("UK") licensed insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB acting as overseas insolvency practitioners as defined in the Act.

2.    An order that the joint liquidators be given all powers set out in Schedule 2 of the Act, such powers to be exercisable without the sanction of the Court and such other powers as this Honourable Court deems fit.

3.    An order that the joint liquidators have the power to:

a.    consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the liquidators and the Attorney General which is attached hereto **("the Protocol")**.

b.    cooperate and communicate with law enforcement and regulatory authorities in the BVI and in other jurisdictions.

4.    An order that the costs of the liquidation, including the proper fees and disbursements of the joint liquidators and the Attorney General's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims

5.    An order that the costs of the application be costs in the liquidation.

6.    Such further order as the court deems appropriate.

The grounds upon which this order is sought are set out in the affidavit of Attorney General, Dawn J. Smith filed on 2 January 2026 and are summarised as follows:

**THE PARTIES**

1.    The Attorney General is the principal legal adviser to the Government of the Virgin Islands ("**the Government**") pursuant to section 58 of the Virgin Islands Constitution Order, 2007, and has overall responsibility for all aspects of civil litigation on behalf of the Government.

2

436

2.   The Company was incorporated under the laws of the BVI on 22 April 2020. Its registered office is located at Vistra Corporate Services Centre **("Vistra")**, Wickhams Cay II, Road Town, Tortola, BVI, VG1110. The Company is alleged to be a member of a transnational criminal organisation that is headed by Prince Holding Group Limited **("the Prince Group")**, which is a Cambodian corporate conglomerate that comprises several companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan.

3.   The chairman of the Prince Group is Chen Zhi **("Chen")**. Chen is the Company's sole Director and sole Shareholder.

**BACKGROUND**

4.   The background is comprehensively set out in the indictment and the verified complaint filed by the United States Department of Justice **("US DOJ")** on October 14, 2025 and in the announcement issued by the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** dated October 13, 2025. The background is summarised below.

**Action in the United States**

5.   On 14 October, 2025, the United States Department of Justice **("US DOJ")**, the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** and the United Kingdom Government announced coordinated actions targeting the Prince Group.

6.   The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York **("the NY District Court")** on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering **("the US Indictment")**. Concurrently, the US DOJ filed a civil forfeiture complaint **("the US Complaint")** seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group. The criminal and civil proceedings will be referred to together as **"the US Proceedings."**

7.   In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and

3

437

criminal activities including cryptocurrency investment fraud, human trafficking, money laundering, wire fraud, bank fraud, forced labour and, illegal online gambling. It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers. The scammers disappeared after taking almost every dollar they could from their victims.

8. To effectuate the schemes, it is alleged in the US Proceedings that Chen and his associates:

   a. built and operated forced-labour scam compounds across Cambodia in which workers were made to execute the scams at high volumes. The scam compounds housed vast dormitories surrounded by high walls and barbed wire, and functioned as violent forced labour camps;

   b. forced migrant workers who were – not always, but often – victims themselves of human trafficking to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

   c. frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

   d. used their political influence in multiple countries to protect their criminal enterprise; and

   e. paid bribes to foreign public officials to avoid disruption by law enforcement.

9. The indictment alleges that Chen maintained meticulous records of the compounds' operations, including ledgers of the tracking profits generated from the fraud schemes, documents detailing "phone farms" used in the schemes, and images depicting methods of beating and torture used against workers.

10. The US DOJ alleges that the schemes carried out by the Prince Group resulted in billions of dollars in losses incurred by victims in the United States and around the world. The documents in the US Proceedings allege that proceeds from these criminal activities have been laundered through

4

438

various means, including cryptocurrency (using "spraying" and "funneling" techniques), online gambling operations, and cryptocurrency mining operations. Chen, his associates and companies within the Prince Group, "washed" and returned the fraudulent proceeds to the Prince Group. The "washing" was done by using the Prince Group's vast network of seemingly legitimate business enterprises to launder its criminal proceeds. One common method was to collect the fraudulent proceeds in the form of bitcoin or stablecoins and then off-ramp them into conventional currencies, for example, the US dollar. The launderers then used that cash to purchase clean bitcoin or other cryptocurrencies. Chen was directly involved in coordinating these laundering efforts.

11. Chen and his associates subsequently used the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

12. On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation. The effect of the designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them. The targets include Chen and the Company. The OFAC noted that:

   a. Americans have lost at least $10 billion to Southeast Asia-based scam operations in 2024, a 66 percent increase over the prior year, with scams like those perpetrated by Prince Group being particularly significant.

   b. The Prince Group remained a dominant player in Cambodia's scam economy and has controlled illicit financial flows of billions of dollars.

   c. The actions taken by OFAC and Financial Crimes Enforcement Network (FinCEN) were in close coordination with the United Kingdom's Foreign, Commonwealth, and Development Office ("FCDO"), which took complementary actions against criminal networks responsible for targeting citizens of the United States and other allied nations through online scams and the laundering of stolen funds.

5

439

**Action in the UK**

13.  On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group. In doing so it noted that Chen and his associates have incorporated companies in the BVI and own properties in London, including a £12 million mansion on Avenue Road in North London, a £100 million office building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and Nine Elms in South London.

14.  The Foreign Secretary Yvette Cooper stated that:

*"The masterminds behind these horrific scam centres are ruining the lives of vulnerable people and buying up London homes to store their money.*

*Together with our US allies, we are taking decisive action to combat the growing transnational threat posed by this network – upholding human rights, protecting British nationals and keeping dirty money off our streets."*

15.  The Fraud Minister Lord Hanson said:

*"These sanctions prove our determination to stop those who profit from this activity, hold offenders accountable, and keep dirty money out of the UK. Through our new, expanded Fraud Strategy and the upcoming Global Fraud Summit, we will go even further to disrupt corrupt networks and protect the public from shameless criminals."*

16.  The effect of these sanctions is to prevent the transfer of these properties, freeze any business in which Chen and the Prince Group are involved and lock Chen and the Prince Group transnational criminal network out of the UK's financial system.

**Action in other jurisdictions**

17.  News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen, the Prince Group, and its related entities and companies. These actions are set out in paragraphs 19 to 22 below. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the global response to combat transnational organised crime.

*Singapore*

18.  On 31 October, 2025, Singapore police announced that they had seized over $150 million (approximately US$115 million) in assets linked to the Prince Group. The seized assets include six

6

440

properties, bank accounts, securities accounts, and cash which are said to represent the proceeds of money laundering and forgery offences committed by Chen and the Prince Group. According to the Monetary Authority of Singapore (MAS), financial institutions had previously filed suspicious transaction reports, and a number of suspicious accounts had been closed. The Singapore Police Force stated that investigations into Chen and his associates commenced in 2024 after it received intelligence from the Suspicious Transaction Reporting Office (STR).

**Hong Kong**

19.    On 4 November, 2025, Hong Kong authorities announced that they had frozen assets worth HK$2.75 billion (approximately US$354 million), which, based on intelligence and information gathered from multiple sources, are suspected to represent proceeds of international cross-border telecommunications fraud and money laundering activities committed by the Prince Group. The frozen assets include cash, stocks, and funds held by individuals and corporate entities. At least 18 Hong Kong companies were blacklisted by the United States in connection with the Prince Group, including two listed companies - *"Khoon Group and Geotech Holdings"*.

**Taiwan**

20.    On 4 November, 2025, Taiwanese prosecutors announced that they had detained 25 individuals and seized T$4.5 billion (approximately US$147 million) in assets tied to the Prince Group. The seized assets include 26 high-end cars, properties, and bank accounts tied to the network and to Chen in relation to money laundering and forced labour offences.

**Thailand**

21.    On 3 December, 2025, the Thai authorities announced that they had seized assets worth more than 10,157 million baht (approximately US$318 million) and issued arrest warrants for 42 individuals linked to transnational online scam operations connected to Chen and Cambodian nationals Kok An and Yim Leak. As of 3 December, 2025, 29 individuals had been arrested. The seizures include shares in Bangchak Corporation Limited worth 6 billion baht (approximately US$188 million). Thailand's Anti-Money Laundering Office (AMLO) stated that investigators had found *"information on networks of online fraud, human trafficking, and money-laundering"* that were linked to Chen and his associates.

7

441

**The effect of the multi-jurisdictional actions**

22.    These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating transnational organised crime, human trafficking, forced labour, and large-scale financial fraud. The scale and coordination of these actions across at least six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network

23.    In total, as of 9 December, 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The role of BVI companies**

24.    The OFAC has determined that the BVI companies form part of a complex network of holding companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

25.    In the US Complaint, the US DOJ alleged that Chen and his associates also laundered fraudulent proceeds through several companies including companies in the BVI which are under their control. It alleged further that these companies do not serve any real purpose other than to launder funds. Two BVI Companies were named in the US Proceedings - Amber Hill Ventures Limited ("Amber Hill") and Lateral Bridge Global Limited ("LBG").

26.    Amber Hill and LBG are said to be controlled by two of Chen's associates, who are also defendants in the US Civil Proceedings. The US Complaint discloses that personnel from the Federal Bureau of Investigation ("FBI") have conducted extensive blockchain tracing to analyse the movements of the Prince Group's cryptocurrency. The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin which the US DOJ seeks to forfeit flowed through wallets which were controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

8

442

27.    It is also alleged that Amber Hill had a banking relationship with a financial institution in the United States. It was recorded in the account opening documents with that financial institution that Amber Hill's business activities consisted of "[p]roprietary trading and investing," and its anticipated deposit and withdrawal activity would be approximately $2 million each. However, according to account statements, in February 2020, Amber Hill's account with that financial institution had approximately $22.5 million in deposits and $21.8 million in withdrawals. Amber Hill was struck from the register and dissolved on 10 November, 2023.

**THE APPLICATION**

28.    The Application is made by the Attorney General on the ground that (i) it is just and equitable that joint liquidators be appointed over the Company pursuant to section 162 (1) (b) of the Act and (ii) it is in the public interest that the joint liquidators are appointed pursuant to section 162 (1) (c) of the Act.

**Just and equitable ground**

29.    Section 162(1)(b) of the Insolvency Act, 2003 provides that the Court may appoint a liquidator of a company if "the Court is of the opinion that it is just and equitable that the company should be liquidated."

30.    The Attorney General is listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(b) of the Act.

31.    It is just and equitable that the Company should be placed into liquidation for the following reasons:

    a.    Chen is the Company's sole Director and sole Shareholder. Chen is alleged to be the mastermind of the Prince Group. He has been criminally indicted in the United States and is subject to personal sanctions by both the United States and the United Kingdom.

    b.    The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities, to include forced labour, human trafficking, large-scale fraud, and money laundering on a massive international scale.

    c.    The BVI companies including the Company are alleged to have been established and

9

443

operated to assist Chen and the Prince Group which has defrauded numerous vulnerable victims of billions of US dollars.

d.  Despite the enforcement actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on the allegations is free to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

e.  The activities of some of the companies in the Prince Group have been the subject of civil and criminal enforcement actions in multiple jurisdictions, with authorities in six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

f.  The Company is alleged to be a shell company which was used solely as a vehicle for the fraudulent scheme.

g.  The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf, and identify potential claims against third parties.

h.  The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

i.  Independent liquidators are necessary to ensure proper coordination with regulatory and law enforcement authorities and liquidators, trustees, or receivers appointed in the BVI and other jurisdictions, given the multi-jurisdictional nature of the scheme and the actions taken by various authorities in several jurisdictions.

j.  Independent liquidators would enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed as part of a collective process.

k.  Given the fraudulent nature of the scheme, there are likely to be voidable transactions, preferences, and other claims that independent liquidators could pursue for the benefit of the victims and creditors.

32.  Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that its affairs are properly investigated and wound up under the supervision of this Honourable Court.

**Public Interest ground**

10

444

33.    Section 162(1)(c) of the Act gives the Court the discretion to appoint a liquidator of a company if it is of the opinion that it is in the public interest for a liquidator to be appointed.

34.    The Attorney General is also listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(c) of the Act.

35.    The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

36.    BVI companies including, the Company are alleged to have been used as vehicles in what has been described by international law enforcement authorities as one of the largest fraudulent investment schemes in recent history. The scheme has caused billions of dollars in losses to victims worldwide and involved egregious human rights abuses. They are alleged to have been used to launder and/or hold the proceeds of the horrific crimes committed by Chen and his associates, including human trafficking, forced labour, aggravated identity theft, international fraud designed to scam unsuspecting victims of their lifesavings and money laundering. These criminal and fraudulent activities are inherently objectionable and are contrary to clearly identifiable public interest.

37.    The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the BVI as a financial centre and threatens confidence in BVI incorporated companies and the BVI's regulatory framework.

38.    The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for fraudulent purposes.

39.    The appointment of liquidators will:
   a.    facilitate cooperation with enforcement authorities, regulators, and insolvency practitioners in the BVI and other jurisdictions, demonstrating the BVI's commitment to international cooperation in combating financial fraud;
   b.    ensure that the Company's affairs are properly investigated and that appropriate steps are taken to recover assets and maximise returns to defrauded investors;

11

445

c.    enable a proper investigation into how the Company was used in the fraudulent scheme, which may assist in preventing similar schemes in the future.

40.    Given that enforcement authorities in at least six countries have taken action and frozen or seized assets valued at over US$16 billion, it is in the public interest that BVI as the jurisdiction of incorporation of the Company, takes prompt and decisive action through the appointment of liquidators.

41.    The scale of this fraud and the international coordination of related actions make it imperative, from a public interest perspective, that the BVI positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

42.    In all the circumstances, it is not only just and equitable but also in the public interest that Joint liquidators be appointed over the Company to prevent it from being used to further Chen's and the Prince Group's criminal enterprise.

43.    If appointed, the joint liquidators would be able to take control of the Company, take the necessary steps in the BVI or overseas to secure and preserve its books and records and secure its assets for the benefit of the victims of the crimes perpetuated by the Prince Group. As officers of the court, they would also be able to independently investigate claims against the Company, marshal records, ensure that the Company complies with BVI laws and regulations and respond to any court process.

**Proposed liquidators**

44.    Mr. James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110, Mr. Paul Pretlove and Mr. David Standish, both of Interpath Ltd, 10 Fleet Place, London EC4M 7RB who to the best of the Applicant's knowledge and belief are eligible insolvency practitioners have all consented to be appointed as joint liquidators of the Company.

45.    In the circumstances, it is just and equitable and in the public's interest to grant the order which the Attorney General seeks, for the appointment of joint liquidators over the Company.

12

446

A draft of the order sought is attached.

This application is supported by the affidavit of Attorney General Dawn J Smith.

The names and addresses of the persons on whom it is intended to serve the application are as follows:

**Simply Advanced Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

The names and addresses of the persons required to be given notice of this application pursuant to the Act and the Rules (if any) are as follows:

**Simply Advanced Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

This Application is filed by O'Neal Webster, Solicitors for the Applicant, whose address for service is 2nd Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands.  REF: 101538

Dated: 2 January 2026

_____
Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

13

447

THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/

**IN THE MATTER OF SIMPLY ADVANCED LIMITED**

**AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS**

BETWEEN:

**THE ATTORNEY GENERAL**

Applicant

**AND**

**SIMPLY ADVANCED LIMITED**

Respondent

---

**ORIGINATING APPLICATION**

---



**Legal Practitioners for the Applicant**
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 l Fax: (284) 393 5805
www.onealwebster.com

14

448

**Case Number :BVIHCOM2026/0023**

The Insolvency Rules 2005

**ORDINARY APPLICATION (EX-PARTE)**

**(Company)**

Rule 14

**FILED**
**HIGH COURT**
**TERRITORY OF**
**THE VIRGIN ISLANDS**

**Submitted Date:05/01/2026 11:38**

**Filed Date:05/01/2026 13:33**

**Fees Paid:0.00**

| | |
|---|---|
| **THE EASTERN CARIBBEAN SUPREME COURT IN THE HIGH COURT OF JUSTICE VIRGIN ISLANDS COMMERCIAL DIVISION** | |
| Matter No.: | BVIHC(COM)        of 2026 |
| Applicant: | **THE ATTORNEY GENERAL** |
| Respondent: | **SIMPLY ADVANCED LIMITED** |

In the matter of:

| |
|---|
| **SIMPLY ADVANCED LIMITED** |

| |
|---|
| For Court Use Only |
| **To:  SIMPLY ADVANCED LIMITED,** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands. |
| **This Application will be heard by the Commercial Court Judge at Road Town, Tortola** |
| **British Virgin Islands** |
| **on the            day of                    2026      at                o'clock.** |
| **If you do not attend at the time shown the Court may make an order in your absence** |

We, O'Neal Webster, on behalf of the Applicant, **the Attorney General of the Virgin Islands ("the Attorney General")**, apply pursuant to section 170 of the Insolvency Act 2003 (the "Act") for the following orders that:

1.    James Drury,  a Virgin Islands ("BVI") licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola,  Virgin Islands, VG1110; and Paul Pretlove and David Standish both United Kingdom ("UK") licensed insolvency

1

practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB to be appointed as joint provisional liquidators of Simply Advanced Limited **("the Company")** with immediate effect.

2.    The powers afforded to the said joint provisional liquidators shall be as set out in Schedule 2 of the Act as varied by Schedule 3, and as further varied by this Order.

3.    An order that the joint provisional liquidators have the power to:

   a.    consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the joint provisional liquidators and the Attorney General which is attached hereto **("the Protocol")**.

   b.    cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4.    An order that the costs of the liquidation, including the proper fees and disbursements of the joint liquidators, the Attorney General's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

5.    An order that the costs of the application be costs in the liquidation.

6.    Such further order as the court deems appropriate.

A draft of the order sought is attached.

The grounds upon which this order is sought are set out in the affidavit of the Attorney General Dawn J. Smith filed on 2 January 2026 but in brief are as follows:

**Introduction**

1.    There are good prima facie reasons as set out in the originating application for the eventual appointment of full liquidators on the grounds of public interest and on the grounds that it is just and equitable that they be appointed over the Company.  A summary of these reasons is set out below.

2

**The Company and the Prince Group**

2. The Company was incorporated under the laws of the Virgin Islands **("BVI")** on 22 April 2020. Its registered office is located at Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, BVI, VG1110. Chen Zhi, **("Chen")** is the Company's sole Director and sole Shareholder.

3. The Company is alleged to be a member of a transnational criminal organisation that is headed by the Prince Holding Group **("the Prince Group")** which is a Cambodian corporate conglomerate comprised of several companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan. Chen is the mastermind of the Prince Group's transnational criminal organisation and its chairman.

**Action in the USA and other jurisdictions**

4. On 14 October, 2025, the United States Department of Justice **("US DOJ"),** the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** and the United Kingdom Government announced coordinated actions targeting the Prince Group.

5. The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York **("the NY District Court")** on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering **("the US Indictment").** Concurrently, the US DOJ filed a civil forfeiture complaint **("the US Complaint")** seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group. The criminal and civil proceedings will be referred together as the "**the US Proceedings**".

6. On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation. The effect of this designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them. The targets include Chen and the Company.

7. On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group. In doing so it noted that Chen and his associates have incorporated companies in the BVI and own properties

3

in London including a £12 million mansion on Avenue Road in North London, a £100 million office building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and in Nine Elms in South London.

8.    News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen, the Prince Group, and its related entities and companies. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the coordinated global response to combat transnational organised crime.

9.    These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating transnational organised crime, human trafficking, forced labour, and large-scale financial fraud. The scale and coordination of these actions across six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network.

10.    In total, as of 9 December 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand) have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The allegation against Chen, his associates and companies within the Prince Group**

11.    In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and criminal activities including cryptocurrency investment fraud, human trafficking, money laundering, wire fraud, bank fraud, forced labour and, illegal online gambling.  It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers.  The scammers disappeared after taking almost every dollar they could from their victims.

12.    The US DOJ also alleges that the fraudulent activities carried out by the Prince Group resulted in

4

billions of dollars in losses incurred by victims in the United States and around the world. Chen and his associates are alleged to use the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

13. To effectuate their fraudulent schemes, it is alleged in the US Proceedings that Chen and his associates:

    a. forced migrant workers who were – not always, but often – victims themselves of human trafficking, to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

    b. frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

    c. used their political influence in multiple countries to protect their criminal enterprise; and

    d. paid bribes to foreign public officials to avoid disruption by law enforcement.

**The role of BVI Companies in the Prince Group**

14. The OFAC determined that the BVI companies form part of a complex network of companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

15. In the US complaint, the US DOJ alleged that Chen and his associates laundered the fraudulent proceeds of their crime through several companies in the BVI, Cayman, Cambodia and Hong Kong, which are under their control. It alleged further that these companies do not serve any real purpose other than to launder the proceeds of their criminal and fraudulent activities. Two BVI Companies are named in the US Complaint - Amber Hill Ventures Limited ("**Amber Hill**") and Lateral Bridge Global Limited **("LBG")**.

16. The US Complaint discloses that personnel from the Federal Bureau of Investigation ("FBI") have conducted extensive blockchain tracing to analyse the movements of the Prince Group's

5

cryptocurrency.  The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin which the US DOJ seeks to forfeit flowed through wallets which were controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

**It is just and equitable that liquidators be appointed over the Company**

17.    The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities to include forced labour, human trafficking, large-scale fraud, and money laundering on a massive international scale.

18.    The activities of some of the companies in the Prince Group have been the subject of civil and criminal actions in multiple jurisdictions, with authorities in at least six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

19.    The BVI companies including the Company are alleged to have been established and operated to assist Chen and the Prince Group which has defrauded numerous vulnerable victims of billions of US dollars.

20.    Despite the  actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on allegations is free to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

21.    The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf for the benefit of the victims of the fraud; and to identify potential claims against third parties.

22.    The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

23.    Independent liquidators are necessary to ensure proper coordination with regulatory and enforcement authorities and liquidators, trustees, or receivers appointed in the Virgin Islands and

6

other jurisdictions, given the multi-jurisdictional nature of the scheme and the  actions. Independent liquidators would also enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed.

24.    Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that its affairs are properly investigated and wound up under the supervision of this Honourable Court.

**It is in the public interest that liquidators be appointed over the Company**

25.    The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

26.    The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the Virgin Islands as a financial centre and threatens confidence in BVI companies and the BVI's regulatory framework.

27.    The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for nefarious purposes and with its commitment to international cooperation and combating serious transnational crime.

28.    Given that regulatory and law enforcement authorities in at least six countries have taken action and frozen or seized assets valued at over US$16 billion, it is in the public interest that the BVI as the jurisdiction of incorporation of the Company takes prompt and decisive action through the appointment of liquidators.

29.    The scale of this fraud and the international coordination of actions make it imperative, from a public interest perspective, that the BVI  positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

**The appointment of joint provisional liquidators**

30.    It is essential that joint provisional liquidators be appointed over the Company immediately

7

(without notice to it and its principals) and before the originating application is heard and determined for the following reasons:

a. The Company continues to be under the control of Chen and his associates and as a result, they can use or continue to use it to further the criminal enterprise thereby continuing to inflict public harm.

b. Given the serious allegations set out in this application, the sanctions imposed by the United States and the UK Government, the US Indictment, and the US Complaint, it is appropriate and necessary that provisional liquidators be appointed immediately to:

   (i) immediately take full control of the Company;

   (ii) identify and preserve its assets that may represent proceeds of crime by preventing further movement, concealment, or dissipation of those assets;

   (iii) take control of its books and records;

   (iv) conduct thorough investigations into its past transactions; and

   (v) review banking records, asset transfers, and corporate dealings to identify and locate the potential money laundering activities.

c. The information and evidence gathered by the liquidators may provide crucial support for law enforcement authorities, both in the BVI and internationally, to apply for freezing orders, forfeiture orders, and other remedies. In this case, given that the United States has already filed a civil complaint seeking forfeiture of 127,271 Bitcoin valued at approximately US$15 billion allegedly connected to the Prince Group's criminal activities, the work of the liquidators could materially assist in tracing assets and preserving evidence relevant to that and other actions.

d. The appointment of provisional liquidator over the Company and other BVI companies which are owned and controlled by Chen would align with the BVI's National AML/CFT Policy and its commitment to international cooperation in combating serious transnational crime.

e. The coordinated actions taken by the US DOJ and UK Government on 14 October, 2025 signal the seriousness with which these major jurisdictions view the alleged criminal activities of the Prince Group. The appointment of provisional liquidators by this Honourable Court would demonstrate that the BVI is equally committed to ensuring that its corporate structures are not used as vehicles for serious criminality and would facilitate cooperation with international authorities in their ongoing investigations and

8

asset recovery efforts.

**Urgency**

31. The public announcements of the US Civil Proceedings, OFAC sanctions, and UK sanctions on 14 October 2025 together with actions taken in other jurisdictions have no doubt put Chen and his associates, who are alleged to be sophisticated criminals, on notice of the scrutiny being applied to the Prince Group network and its corporate structures.

32. The Company is likely to have received proceeds of the criminal and fraudulent activities and to have documentation that may assist in recovering the proceeds of the crime. There is a real and substantial risk that absent the immediate appointment of provisional liquidators, assets held by or through the BVI companies, including the Company will be transferred, concealed, or dissipated and documents will be destroyed or concealed. This real and substantial risk will increase once the Company is served with the originating application,

33. The appointment of provisional liquidators will immediately remove control from Chen and place the Company under the supervision and control of officers of this Court, thereby protecting the integrity of any investigation and preserving assets for the benefit of the victims of Chen and the Prince Group's fraudulent and criminal activities.

34. The appointment of joint provisional liquidators is appropriate given the number of BVI companies involved, the complexity of the alleged corporate structure spanning multiple jurisdictions, the international nature of the investigations and actions, and the need for extensive expertise in tracing assets and investigating potential money laundering activities.

**The Proposed provisional liquidators**

35. The Attorney General proposes that James Drury,  a BVI licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110; and Paul Pretlove and David Standish, both UK licensed insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB be appointed as joint provisional liquidators of the Company.

9

**Conclusion**

36.     In all the circumstances, it is just and convenient and in the public's interest, that this Honourable Court grants the order which the Attorney General seeks in this application.

A draft of the order sought is attached.

This application is supported by the affidavit of Attorney General Dawn J. Smith.

The names and addresses of the persons on whom it is intended to serve the application are as follows:

This Application is filed by O'Neal Webster, Solicitors for the Applicant whose address for service is 2nd Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands. REF: NW/LG/101538.

_____                    Dated: 2 January 2026

Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

10

THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/

**IN THE MATTER OF SIMPLY ADVANCED LIMITED**

**AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS**.

BETWEEN:

**THE ATTORNEY GENERAL**

Applicant

**AND**

**SIMPLY ADVANCED LIMITED**

Respondent

_____

**EX-PARTE ORDINARY APPLICATION
FOR JOINT PROVISIONAL LIQUIDATORS**

_____



Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 l Fax: (284) 393 5805
www.onealwebster.com

11

**Case Number :BVIHCOM2026/0024**

FILED
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS

The Insolvency Rules 2005

**ORIGINATING APPLICATION**

**(Company)**

Rule 14

**Submitted Date:05/01/2026 11:56**

**Filed Date:05/01/2026 13:37**

**Fees Paid:0.00**

| | |
|---|---|
| **THE EASTERN CARIBBEAN SUPREME COURT**<br>**IN THE HIGH COURT OF JUSTICE**<br>**VIRGIN ISLANDS**<br>**COMMERCIAL DIVISION** | |
| Matter No.: | BVIHC(COM)      of 2026 |
| Applicant: | **THE ATTORNEY GENERAL** |
| Respondent: | **SOUTHERN HERITAGE LIMITED** |

In the matter of:

| |
|---|
| **SOUTHERN HERITAGE LIMITED** |

| For Court Use Only |
|---|
| **To: SOUTHERN HERITAGE LIMITED,** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands.<br><br>**This Application will be heard by the Commercial Court Judge at Road Town, Tortola**<br>**British Virgin Islands**<br>**on the          day of                    2026     at            o'clock.**<br><br>**If you do not attend at the time shown the Court may make an order in your absence** |

The Applicant, the Attorney General of the Virgin Islands (**"Attorney General"**) of TTT Building, Wickhams Cay 1, Road Town, Tortola, Virgin Islands VG1110 applies to the Court for:

1.     An order pursuant to sections 162(1) (b) and (c) of the Insolvency Act, Revised Edition 2020 (**"the Act"**) that Paul Pretlove, James Drury and David Standish, be appointed as joint liquidators of Southern Heritage Limited (**"the Company"**), a company incorporated under the laws of the Virgin Islands (**"BVI"**). James Drury is a BVI licensed insolvency practitioner of Interpath (BVI) Limited, PO

1

435

Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110. Paul Pretlove and David Standish are United Kingdom ("UK") licensed insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB acting as overseas insolvency practitioners as defined in the Act.

2.   An order that the joint liquidators be given all powers set out in Schedule 2 of the Act, such powers to be exercisable without the sanction of the Court and such other powers as this Honourable Court deems fit.

3.   An order that the joint liquidators have the power to:

   a.   consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the liquidators and the Attorney General which is attached hereto **("the Protocol")**.

   b.   cooperate and communicate with law enforcement and regulatory authorities in the BVI and in other jurisdictions.

4.   An order that the costs of the liquidation, including the proper fees and disbursements of the joint liquidators and the Attorney General's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims

5.   An order that the costs of the application be costs in the liquidation.

6.   Such further order as the court deems appropriate.

The grounds upon which this order is sought are set out in the affidavit of Attorney General, Dawn J. Smith filed on 2 January 2026 and are summarised as follows:

**THE PARTIES**

1.   The Attorney General is the principal legal adviser to the Government of the Virgin Islands ("**the Government**") pursuant to section 58 of the Virgin Islands Constitution Order, 2007, and has overall responsibility for all aspects of civil litigation on behalf of the Government.

2

436

2. The Company was incorporated under the laws of the BVI on 23 April 2020. Its registered office is located at Vistra Corporate Services Centre **("Vistra")**, Wickhams Cay II, Road Town, Tortola, BVI, VG1110. The Company is alleged to be a member of a transnational criminal organisation that is headed by Prince Holding Group Limited **("the Prince Group")**, which is a Cambodian corporate conglomerate that comprises several companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan.

3. The chairman of the Prince Group is Chen Zhi **("Chen")**. Chen is the **Company's** sole Director and sole Shareholder.

## BACKGROUND

4. The background is comprehensively set out in the indictment and the verified complaint filed by the United States Department of Justice **("US DOJ")** on October 14, 2025 and in the announcement issued by the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** dated October 13, 2025. The background is summarised below.

### Action in the United States

5. On 14 October, 2025, the United States Department of Justice **("US DOJ")**, the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** and the United Kingdom Government announced coordinated actions targeting the Prince Group.

6. The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York **("the NY District Court")** on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering **("the US Indictment")**. Concurrently, the US DOJ filed a civil forfeiture complaint **("the US Complaint")** seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group. The criminal and civil proceedings will be referred to together as **"the US Proceedings."**

7. In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and

3

criminal activities including cryptocurrency investment fraud, human trafficking, money laundering, wire fraud, bank fraud, forced labour and, illegal online gambling. It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers. The scammers disappeared after taking almost every dollar they could from their victims.

8.    To effectuate the schemes, it is alleged in the US Proceedings that Chen and his associates:

a.    built and operated forced-labour scam compounds across Cambodia in which workers were made to execute the scams at high volumes. The scam compounds housed vast dormitories surrounded by high walls and barbed wire, and functioned as violent forced labour camps;

b.    forced migrant workers who were – not always, but often – victims themselves of human trafficking to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

c.    frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

d.    used their political influence in multiple countries to protect their criminal enterprise; and

e.    paid bribes to foreign public officials to avoid disruption by law enforcement.

9.    The indictment alleges that Chen maintained meticulous records of the compounds' operations, including ledgers of the tracking profits generated from the fraud schemes, documents detailing "phone farms" used in the schemes, and images depicting methods of beating and torture used against workers.

10.    The US DOJ alleges that the schemes carried out by the Prince Group resulted in billions of dollars in losses incurred by victims in the United States and around the world. The documents in the US Proceedings allege that proceeds from these criminal activities have been laundered through

4

438

various means, including cryptocurrency (using "spraying" and "funneling" techniques), online gambling operations, and cryptocurrency mining operations. Chen, his associates and companies within the Prince Group, "washed" and returned the fraudulent proceeds to the Prince Group. The "washing" was done by using the Prince Group's vast network of seemingly legitimate business enterprises to launder its criminal proceeds. One common method was to collect the fraudulent proceeds in the form of bitcoin or stablecoins and then off-ramp them into conventional currencies, for example, the US dollar. The launderers then used that cash to purchase clean bitcoin or other cryptocurrencies. Chen was directly involved in coordinating these laundering efforts.

11.    Chen and his associates subsequently used the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

12.    On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation. The effect of the designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them. The targets include Chen and the Company. The OFAC noted that:

   a.    Americans have lost at least $10 billion to Southeast Asia-based scam operations in 2024, a 66 percent increase over the prior year, with scams like those perpetrated by Prince Group being particularly significant.

   b.    The Prince Group remained a dominant player in Cambodia's scam economy and has controlled illicit financial flows of billions of dollars.

   c.    The actions taken by OFAC and Financial Crimes Enforcement Network (FinCEN) were in close coordination with the United Kingdom's Foreign, Commonwealth, and Development Office ("FCDO"), which took complementary actions against criminal networks responsible for targeting citizens of the United States and other allied nations through online scams and the laundering of stolen funds.

5

**Action in the UK**

13.    On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group. In doing so it noted that Chen and his associates have incorporated companies in the BVI and own properties in London, including a £12 million mansion on Avenue Road in North London, a £100 million office building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and Nine Elms in South London.

14.    The Foreign Secretary Yvette Cooper stated that:

> "The masterminds behind these horrific scam centres are ruining the lives of vulnerable people and buying up London homes to store their money.
>
> Together with our US allies, we are taking decisive action to combat the growing transnational threat posed by this network – upholding human rights, protecting British nationals and keeping dirty money off our streets."

15.    The Fraud Minister Lord Hanson said:

> "These sanctions prove our determination to stop those who profit from this activity, hold offenders accountable, and keep dirty money out of the UK. Through our new, expanded Fraud Strategy and the upcoming Global Fraud Summit, we will go even further to disrupt corrupt networks and protect the public from shameless criminals."

16.    The effect of these sanctions is to prevent the transfer of these properties, freeze any business in which Chen and the Prince Group are involved and lock Chen and the Prince Group transnational criminal network out of the UK's financial system.

**Action in other jurisdictions**

17.    News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen, the Prince Group, and its related entities and companies. These actions are set out in paragraphs 19 to 22 below. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the global response to combat transnational organised crime.

*Singapore*

18.    On 31 October, 2025, Singapore police announced that they had seized over $150 million (approximately US$115 million) in assets linked to the Prince Group. The seized assets include six

6

440

properties, bank accounts, securities accounts, and cash which are said to represent the proceeds of money laundering and forgery offences committed by Chen and the Prince Group. According to the Monetary Authority of Singapore (MAS), financial institutions had previously filed suspicious transaction reports, and a number of suspicious accounts had been closed. The Singapore Police Force stated that investigations into Chen and his associates commenced in 2024 after it received intelligence from the Suspicious Transaction Reporting Office (STR).

### Hong Kong

19.   On 4 November, 2025, Hong Kong authorities announced that they had frozen assets worth HK$2.75 billion (approximately US$354 million), which, based on intelligence and information gathered from multiple sources, are suspected to represent proceeds of international cross-border telecommunications fraud and money laundering activities committed by the Prince Group. The frozen assets include cash, stocks, and funds held by individuals and corporate entities. At least 18 Hong Kong companies were blacklisted by the United States in connection with the Prince Group, including two listed companies - *"Khoon Group and Geotech Holdings"*.

### Taiwan

20.   On 4 November, 2025, Taiwanese prosecutors announced that they had detained 25 individuals and seized T$4.5 billion (approximately US$147 million) in assets tied to the Prince Group. The seized assets include 26 high-end cars, properties, and bank accounts tied to the network and to Chen in relation to money laundering and forced labour offences.

### Thailand

21.   On 3 December, 2025, the Thai authorities announced that they had seized assets worth more than 10,157 million baht (approximately US$318 million) and issued arrest warrants for 42 individuals linked to transnational online scam operations connected to Chen and Cambodian nationals Kok An and Yim Leak. As of 3 December, 2025, 29 individuals had been arrested. The seizures include shares in Bangchak Corporation Limited worth 6 billion baht (approximately US$188 million). Thailand's Anti-Money Laundering Office (AMLO) stated that investigators had found *"information on networks of online fraud, human trafficking, and money-laundering"* that were linked to Chen and his associates.

7

**The effect of the multi-jurisdictional actions**

22.    These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating transnational organised crime, human trafficking, forced labour, and large-scale financial fraud. The scale and coordination of these actions across at least six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network

23.    In total, as of 9 December, 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The role of BVI companies**

24.    The OFAC has determined that the BVI companies form part of a complex network of holding companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

25.    In the US Complaint, the US DOJ alleged that Chen and his associates also laundered fraudulent proceeds through several companies including companies in the BVI which are under their control. It alleged further that these companies do not serve any real purpose other than to launder funds. Two BVI Companies were named in the US Proceedings - Amber Hill Ventures Limited (**"Amber Hill"**) and Lateral Bridge Global Limited (**"LBG"**).

26.    Amber Hill and LBG are said to be controlled by two of Chen's associates, who are also defendants in the US Civil Proceedings. The US Complaint discloses that personnel from the Federal Bureau of Investigation ("FBI") have conducted extensive blockchain tracing to analyse the movements of the Prince Group's cryptocurrency. The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin which the US DOJ seeks to forfeit flowed through wallets which were controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

8

442

27. It is also alleged that Amber Hill had a banking relationship with a financial institution in the United States. It was recorded in the account opening documents with that financial institution that Amber Hill's business activities consisted of "[p]roprietary trading and investing," and its anticipated deposit and withdrawal activity would be approximately $2 million each. However, according to account statements, in February 2020, Amber Hill's account with that financial institution had approximately $22.5 million in deposits and $21.8 million in withdrawals. Amber Hill was struck from the register and dissolved on 10 November, 2023.

**THE APPLICATION**

28. The Application is made by the Attorney General on the ground that (i) it is just and equitable that joint liquidators be appointed over the Company pursuant to section 162 (1) (b) of the Act and (ii) it is in the public interest that the joint liquidators are appointed pursuant to section 162 (1) (c) of the Act.

**Just and equitable ground**

29. Section 162(1)(b) of the Insolvency Act, 2003 provides that the Court may appoint a liquidator of a company if "the Court is of the opinion that it is just and equitable that the company should be liquidated."

30. The Attorney General is listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(b) of the Act.

31. It is just and equitable that the Company should be placed into liquidation for the following reasons:

   a. **Chen is the Company's sole Director** and sole Shareholder. Chen is alleged to be the mastermind of the Prince Group. He has been criminally indicted in the United States and is subject to personal sanctions by both the United States and the United Kingdom.

   b. The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities, to include forced labour, human trafficking, large-scale fraud, and money laundering on a massive international scale.

   c. The BVI companies including the Company are alleged to have been established and

9

443

operated to assist Chen and the Prince Group which has defrauded numerous vulnerable victims of billions of US dollars.

d.    Despite the enforcement actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on the allegations is free to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

e.    The activities of some of the companies in the Prince Group have been the subject of civil and criminal enforcement actions in multiple jurisdictions, with authorities in six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

f.    The Company is alleged to be a shell company which was used solely as a vehicle for the fraudulent scheme.

g.    The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf, and identify potential claims against third parties.

h.    The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

i.    Independent liquidators are necessary to ensure proper coordination with regulatory and law enforcement authorities and liquidators, trustees, or receivers appointed in the BVI and other jurisdictions, given the multi-jurisdictional nature of the scheme and the actions taken by various authorities in several jurisdictions.

j.    Independent liquidators would enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed as part of a collective process.

k.    Given the fraudulent nature of the scheme, there are likely to be voidable transactions, preferences, and other claims that independent liquidators could pursue for the benefit of the victims and creditors.

32.    Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that its affairs are properly investigated and wound up under the supervision of this Honourable Court.

10

444

**Public Interest ground**

33.     Section 162(1)(c) of the Act gives the Court the discretion to appoint a liquidator of a company if it is of the opinion that it is in the public interest for a liquidator to be appointed.

34.     The Attorney General is also listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(c) of the Act.

35.     The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

36.     BVI companies including, the Company are alleged to have been used as vehicles in what has been described by international law enforcement authorities as one of the largest fraudulent investment schemes in recent history. The scheme has caused billions of dollars in losses to victims worldwide and involved egregious human rights abuses. They are alleged to have been used to launder and/or hold the proceeds of the horrific crimes committed by Chen and his associates, including human trafficking, forced labour, aggravated identity theft, international fraud designed to scam unsuspecting victims of their lifesavings and money laundering. These criminal and fraudulent activities are inherently objectionable and are contrary to clearly identifiable public interest.

37.     The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the BVI as a financial centre and threatens confidence in BVI incorporated companies and the BVI's regulatory framework.

38.     The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for fraudulent purposes.

39.     The appointment of liquidators will:

   a.     facilitate cooperation with enforcement authorities, regulators, and insolvency practitioners in the BVI and other jurisdictions, demonstrating the BVI's commitment to international cooperation in combating financial fraud;

11

445

b. ensure that the Company's affairs are properly investigated and that appropriate steps are taken to recover assets and maximise returns to defrauded investors;

c. enable a proper investigation into how the Company was used in the fraudulent scheme, which may assist in preventing similar schemes in the future.

40. Given that enforcement authorities in at least six countries have taken action and frozen or seized assets valued at over US$16 billion, it is in the public interest that BVI as the jurisdiction of incorporation of the Company, takes prompt and decisive action through the appointment of liquidators.

41. The scale of this fraud and the international coordination of related actions make it imperative, from a public interest perspective, that the BVI positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

42. In all the circumstances, it is not only just and equitable but also in the public interest that Joint liquidators be appointed over the Company to prevent it from being used to further Chen's and the Prince Group's criminal enterprise.

43. If appointed, the joint liquidators would be able to take control of the Company, take the necessary steps in the BVI or overseas to secure and preserve its books and records and secure its assets for the benefit of the victims of the crimes perpetuated by the Prince Group. As officers of the court, they would also be able to independently investigate claims against the Company, marshal records, ensure that the Company complies with BVI laws and regulations and respond to any court process.

**Proposed liquidators**

44. Mr. James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110, Mr. Paul Pretlove and Mr. David Standish, both of Interpath Ltd, 10 Fleet Place, London EC4M 7RB who to the best of the Applicant's knowledge and belief are eligible insolvency practitioners have all consented to be appointed as joint liquidators of the Company.

12

446

45.     In the circumstances, it is just and equitable **and in the public's interest** to grant the order which the Attorney General seeks, for the appointment of joint liquidators over the Company.

A draft of the order sought is attached.

This application is supported by the affidavit of Attorney General Dawn J Smith.

The names and addresses of the persons on whom it is intended to serve the application are as follows:

**Southern Heritage Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

The names and addresses of the persons required to be given notice of this application pursuant to the Act and the Rules (if any) are as follows:

**Southern Heritage Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

This Application is filed by O'Neal Webster, Solicitors for the Applicant, whose address for service is 2nd

Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands.
REF: 101538

Dated: 2 January 2026

_____
Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

13

447

THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/

**IN THE MATTER OF SOUTHERN HERITAGE LIMITED**

**AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS**

BETWEEN:

**THE ATTORNEY GENERAL**

Applicant

**AND**

**SOUTHERN HERITAGE LIMITED**

Respondent

---

**ORIGINATING APPLICATION**

---



Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 I Fax: (284) 393 5805
www.onealwebster.com

14

448

**Case Number :BVIHCOM2026/0024**

**FILED
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS**

The Insolvency Rules 2005

**ORDINARY APPLICATION (EX-PARTE)**

**(Company)**

Rule 14

**Submitted Date:05/01/2026 11:55**

**Filed Date:05/01/2026 13:37**

**Fees Paid:0.00**

| | |
|---|---|
| **THE EASTERN CARIBBEAN SUPREME COURT IN THE HIGH COURT OF JUSTICE VIRGIN ISLANDS COMMERCIAL DIVISION** | |
| Matter No.: | BVIHC(COM)        of 2026 |
| Applicant: | **THE ATTORNEY GENERAL** |
| Respondent: | **SOUTHERN HERITAGE LIMITED** |

In the matter of:

| |
|---|
| **SOUTHERN HERITAGE LIMITED** |

| |
|---|
| For Court Use Only |
| **To:  SOUTHERN HERITAGE LIMITED,** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands. |
| **This Application will be heard by the Commercial Court Judge at Road Town, Tortola British Virgin Islands** |
| **on the            day of                    2026      at               o'clock.** |
| **If you do not attend at the time shown the Court may make an order in your absence** |

We, O'Neal Webster, on behalf of the Applicant, **the Attorney General of the Virgin Islands ("the Attorney General")**, apply pursuant to section 170 of the Insolvency Act 2003 (the "Act") for the following orders that:

1.    James Drury,  a Virgin Islands ("BVI") licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola,  Virgin Islands, VG1110; and Paul Pretlove and David Standish both United Kingdom ("UK") licensed insolvency

1

practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB to be appointed as joint provisional liquidators of Southern Heritage Limited **("the Company")** with immediate effect.

2.    The powers afforded to the said joint provisional liquidators shall be as set out in Schedule 2 of the Act as varied by Schedule 3, and as further varied by this Order.

3.    An order that the joint provisional liquidators have the power to:

   a.    consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the joint provisional liquidators and the Attorney General which is attached hereto **("the Protocol")**.

   b.    cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4.    An order that the costs of the liquidation, including the proper fees and disbursements of the joint liquidators, the Attorney General's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

5.    An order that the costs of the application be costs in the liquidation.

6.    Such further order as the court deems appropriate.

A draft of the order sought is attached.

The grounds upon which this order is sought are set out in the affidavit of the Attorney General Dawn J. Smith filed on 2 January 2026, but in brief are as follows:

**Introduction**

1.    There are good prima facie reasons as set out in the originating application for the eventual appointment of full liquidators on the grounds of public interest and on the grounds that it is just and equitable that they be appointed over the Company.  A summary of these reasons is set out below.

2

**The Company and the Prince Group**

2.     The Company was incorporated under the laws of the Virgin Islands **("BVI")** on 20 April 2020. Its registered office is located at Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, BVI, VG1110. Chen Zhi, **("Chen")** is the Company's sole director and sole shareholder.

3.     The Company is alleged to be a member of a transnational criminal organisation that is headed by the Prince Holding Group **("the Prince Group")** which is a Cambodian corporate conglomerate comprised of several companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan. Chen is the mastermind of the Prince Group's transnational criminal organisation and its chairman.

**Action in the USA and other jurisdictions**

4.     On 14 October, 2025, the United States Department of Justice **("US DOJ"),** the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** and the United Kingdom Government announced coordinated actions targeting the Prince Group.

5.     The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York **("the NY District Court")** on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering **("the US Indictment").** Concurrently, the US DOJ filed a civil forfeiture complaint **("the US Complaint")** seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group. The criminal and civil proceedings will be referred together as the "**the US Proceedings**".

6.     On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation. The effect of this designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them. The targets include Chen and the Company.

7.     On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group. In doing so it noted that Chen and his associates have incorporated companies in the BVI and own properties

3

in London including a £12 million mansion on Avenue Road in North London, a £100 million office building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and in Nine Elms in South London.

8. News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen, the Prince Group, and its related entities and companies. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the coordinated global response to combat transnational organised crime.

9. These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating transnational organised crime, human trafficking, forced labour, and large-scale financial fraud. The scale and coordination of these actions across six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network.

10. In total, as of 9 December 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand) have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The allegation against Chen, his associates and companies within the Prince Group**

11. In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and criminal activities including cryptocurrency investment fraud, human trafficking, money laundering, wire fraud, bank fraud, forced labour and, illegal online gambling. It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers. The scammers disappeared after taking almost every dollar they could from their victims.

12. The US DOJ also alleges that the fraudulent activities carried out by the Prince Group resulted in

4

billions of dollars in losses incurred by victims in the United States and around the world. Chen and his associates are alleged to use the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

13.     To effectuate their fraudulent schemes, it is alleged in the US Proceedings that Chen and his associates:

   a.     forced migrant workers who were – not always, but often – victims themselves of human trafficking, to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

   b.     frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

   c.     used their political influence in multiple countries to protect their criminal enterprise; and

   d.     paid bribes to foreign public officials to avoid disruption by law enforcement.

**The role of BVI Companies in the Prince Group**

14.     The OFAC determined that the BVI companies form part of a complex network of companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

15.     In the US complaint, the US DOJ alleged that Chen and his associates laundered the fraudulent proceeds of their crime through several companies in the BVI, Cayman, Cambodia and Hong Kong, which are under their control. It alleged further that these companies do not serve any real purpose other than to launder the proceeds of their criminal and fraudulent activities. Two BVI Companies are named in the US Complaint - Amber Hill Ventures Limited ("**Amber Hill**") and Lateral Bridge Global Limited **("LBG")**.

16.     The US Complaint discloses that personnel from the Federal Bureau of Investigation ("FBI") have conducted extensive blockchain tracing to analyse the movements of the Prince Group's

5

cryptocurrency.  The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin which the US DOJ seeks to forfeit flowed through wallets which were controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

**It is just and equitable that liquidators be appointed over the Company**

17. The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities to include forced labour, human trafficking, large-scale fraud, and money laundering on a massive international scale.

18. The activities of some of the companies in the Prince Group have been the subject of civil and criminal actions in multiple jurisdictions, with authorities in at least six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

19. The BVI companies including the Company are alleged to have been established and operated to assist Chen and the Prince Group which has defrauded numerous vulnerable victims of billions of US dollars.

20. Despite the  actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on allegations is free to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

21. The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf for the benefit of the victims of the fraud; and to identify potential claims against third parties.

22. The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

23. Independent liquidators are necessary to ensure proper coordination with regulatory and enforcement authorities and liquidators, trustees, or receivers appointed in the Virgin Islands and

6

other jurisdictions, given the multi-jurisdictional nature of the scheme and the actions. Independent liquidators would also enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed.

24. Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that its affairs are properly investigated and wound up under the supervision of this Honourable Court.

**It is in the public interest that liquidators be appointed over the Company**

25. The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

26. The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the Virgin Islands as a financial centre and threatens confidence in BVI companies and the BVI's regulatory framework.

27. The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for nefarious purposes and with its commitment to international cooperation and combating serious transnational crime.

28. Given that regulatory and law enforcement authorities in at least six countries have taken action and frozen or seized assets valued at over US$16 billion, it is in the public interest that the BVI as the jurisdiction of incorporation of the Company takes prompt and decisive action through the appointment of liquidators.

29. The scale of this fraud and the international coordination of actions make it imperative, from a public interest perspective, that the BVI positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

**The appointment of joint provisional liquidators**

30. It is essential that joint provisional liquidators be appointed over the Company immediately

7

(without notice to it and its principals) and before the originating application is heard and determined for the following reasons:

a. The Company continues to be under the control of Chen and his associates and as a result, they can  use or continue to use it to further the criminal enterprise thereby continuing to inflict public harm.

b. Given the serious allegations set out in this application, the sanctions imposed by the United States and the UK Government,  the US Indictment, and the US Complaint, it is appropriate and necessary that provisional liquidators be appointed immediately to:

(i) immediately take full control of the Company;

(ii) identify and preserve its assets that may represent proceeds of crime by preventing further movement, concealment, or dissipation of those assets;

(iii) take control of its books and records;

(iv) conduct thorough investigations into its past transactions; and

(v) review banking records, asset transfers, and corporate dealings to identify and locate the potential money laundering activities.

c. The information and evidence gathered by the liquidators may provide crucial support for law enforcement authorities, both in the BVI and internationally, to apply for freezing orders, forfeiture orders, and other remedies. In this case, given that the United States has already filed a civil complaint seeking forfeiture of 127,271 Bitcoin valued at approximately US$15 billion allegedly connected to the Prince Group's criminal activities, the work of the liquidators could materially assist in tracing assets and preserving evidence relevant to that and other  actions.

d. The appointment of provisional liquidator over the Company and other BVI companies which are owned and controlled by Chen would align with the BVI's National AML/CFT Policy and its commitment to international cooperation in combating serious transnational crime.

e. The coordinated  actions taken by the US DOJ and UK Government on 14 October, 2025 signal the seriousness with which these major jurisdictions view the alleged criminal activities of the Prince Group. The appointment of provisional liquidators by this Honourable Court would demonstrate that the BVI is equally committed to ensuring that its corporate structures are not used as vehicles for serious criminality and would facilitate cooperation with international authorities in their ongoing investigations and

8

asset recovery efforts.

**Urgency**

31.     The public announcements of the US Civil Proceedings, OFAC sanctions, and UK sanctions on 14 October 2025 together with actions taken in other jurisdictions have no doubt put Chen and his associates, who are alleged to be sophisticated criminals, on notice of the scrutiny being applied to the Prince Group network and its corporate structures.

32.     The Company is likely to have received proceeds of the criminal and fraudulent activities and to have documentation that may assist in recovering the proceeds of the crime. There is a real and substantial risk that absent the immediate appointment of provisional liquidators, assets held by or through the BVI companies, including the Company will be transferred, concealed, or dissipated and documents will be destroyed or concealed. This real and substantial risk will increase once the Company is served with the originating application,

33.     The appointment of provisional liquidators will immediately remove control from Chen and place the Company under the supervision and control of officers of this Court, thereby protecting the integrity of any investigation and preserving assets for the benefit of the victims of Chen and the Prince Group's fraudulent and criminal activities.

34.     The appointment of joint provisional liquidators is appropriate given the number of BVI companies involved, the complexity of the alleged corporate structure spanning multiple jurisdictions, the international nature of the investigations and actions, and the need for extensive expertise in tracing assets and investigating potential money laundering activities.

**The Proposed provisional liquidators**

35.     The Attorney General proposes that James Drury,  a BVI licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110; and Paul Pretlove and David Standish, both UK licensed insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB be appointed as joint provisional liquidators of the Company.

9

**Conclusion**

36.     In all the circumstances, it is just and convenient and in the public's interest, that this Honourable Court grants the order which the Attorney General seeks in this application.

A draft of the order sought is attached.

This application is supported by the affidavit of Attorney General Dawn J. Smith.

The names and addresses of the persons on whom it is intended to serve the application are as follows:

This Application is filed by O'Neal Webster, Solicitors for the Applicant whose address for service is 2nd Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands. REF: NW/LG/101538.

_____                      Dated: 2 January 2026

Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

10

THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/


**IN THE MATTER OF SOUTHERN HERITAGE LIMITED**


**AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS**.


BETWEEN:


**THE ATTORNEY GENERAL**

Applicant

**AND**


**SOUTHERN HERITAGE LIMITED**

Respondent


_____

**EX-PARTE ORDINARY APPLICATION
FOR JOINT PROVISIONAL LIQUIDATORS**

_____




Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 l Fax: (284) 393 5805
www.onealwebster.com

11

**Case Number :BVIHCOM2026/0025**

The Insolvency Rules 2005

**ORIGINATING APPLICATION**

**(Company)**

Rule 14

**FILED HIGH COURT TERRITORY OF THE VIRGIN ISLANDS**

**Submitted Date:05/01/2026 12:01**

**Filed Date:05/01/2026 13:38**

**Fees Paid:0.00**

| | |
|---|---|
| **THE EASTERN CARIBBEAN SUPREME COURT IN THE HIGH COURT OF JUSTICE VIRGIN ISLANDS COMMERCIAL DIVISION** | |
| Matter No.: | BVIHC(COM)    of 2026 |
| Applicant: | **THE ATTORNEY GENERAL** |
| Respondent: | **STAR MERIT GLOBAL LIMITED** |

In the matter of:

**STAR MERIT GLOBAL LIMITED**

For Court Use Only

**To: STAR MERIT GLOBAL LIMITED,** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands.

**This Application will be heard by the Commercial Court Judge at Road Town, Tortola British Virgin Islands**

on the            day of                  2026    at              o'clock.

**If you do not attend at the time shown the Court may make an order in your absence**

The Applicant, the Attorney General of the Virgin Islands ("**Attorney General**") of TTT Building, Wickhams Cay 1, Road Town, Tortola, Virgin Islands VG1110 applies to the Court for:

1.    An order pursuant to sections 162(1) (b) and (c) of the Insolvency Act, Revised Edition 2020 ("**the Act**") that Paul Pretlove, James Drury and David Standish, be appointed as joint liquidators of Star Merit Global Limited ("**the Company**"), a company incorporated under the laws of the Virgin Islands ("BVI"). James Drury is a BVI licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands,

1

VG1110. Paul Pretlove and David Standish are United Kingdom ("UK") licensed insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB acting as overseas insolvency practitioners as defined in the Act.

2.    An order that the joint liquidators be given all powers set out in Schedule 2 of the Act, such powers to be exercisable without the sanction of the Court and such other powers as this Honourable Court deems fit.

3.    An order that the joint liquidators have the power to:

a.    consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the liquidators and the Attorney General which is attached hereto **("the Protocol")**.

b.    cooperate and communicate with law enforcement and regulatory authorities in the BVI and in other jurisdictions.

4.    An order that the costs of the liquidation, including the proper fees and disbursements of the joint liquidators and the Attorney General's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims

5.    An order that the costs of the application be costs in the liquidation.

6.    Such further order as the court deems appropriate.

The grounds upon which this order is sought are set out in the affidavit of Attorney General, Dawn J. Smith filed on 2 January 2026 and are summarised as follows:

**THE PARTIES**

1.    The Attorney General is the principal legal adviser to the Government of the Virgin Islands (**"the Government"**) pursuant to section 58 of the Virgin Islands Constitution Order, 2007, and has overall responsibility for all aspects of civil litigation on behalf of the Government.

2

2.  The Company was incorporated under the laws of the BVI on 3 July 2018. Its registered office is located at Vistra Corporate Services Centre **("Vistra")**, Wickhams Cay II, Road Town, Tortola, BVI, VG1110. The Company is alleged to be a member of a transnational criminal organisation that is headed by Prince Holding Group Limited **("the Prince Group"),** which is a Cambodian corporate conglomerate that comprises several companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan. On 17 November 2025, Vistra filed its Intention to Resign as the Company's Registered Agent.

3.  The chairman of the Prince Group is Chen Zhi **("Chen")**. Chen is the Company's sole Director and sole Shareholder.

**BACKGROUND**

4.  The background is comprehensively set out in the indictment and the verified complaint filed by the United States Department of Justice **("US DOJ")** on October 14, 2025 and in the announcement issued by the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** dated October 13, 2025. The background is summarised below.

**Action in the United States**

5.  On 14 October, 2025, the United States Department of Justice **("US DOJ")**, the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** and the United Kingdom Government announced coordinated actions targeting the Prince Group.

6.  The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York **("the NY District Court")** on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering **("the US Indictment").** Concurrently, the US DOJ filed a civil forfeiture complaint **("the US Complaint")** seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group. The criminal and civil proceedings will be referred to together as **"the US Proceedings."**

7.  In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and

3

criminal activities including cryptocurrency investment fraud, human trafficking, money laundering, wire fraud, bank fraud, forced labour and, illegal online gambling. It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers. The scammers disappeared after taking almost every dollar they could from their victims.

8.     To effectuate the schemes, it is alleged in the US Proceedings that Chen and his associates:

a.     built and operated forced-labour scam compounds across Cambodia in which workers were made to execute the scams at high volumes. The scam compounds housed vast dormitories surrounded by high walls and barbed wire, and functioned as violent forced labour camps;

b.     forced migrant workers who were – not always, but often – victims themselves of human trafficking to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

c.     frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

d.     used their political influence in multiple countries to protect their criminal enterprise; and

e.     paid bribes to foreign public officials to avoid disruption by law enforcement.

9.     The indictment alleges that Chen maintained meticulous records of the compounds' operations, including ledgers of the tracking profits generated from the fraud schemes, documents detailing "phone farms" used in the schemes, and images depicting methods of beating and torture used against workers.

10.    The US DOJ alleges that the schemes carried out by the Prince Group resulted in billions of dollars in losses incurred by victims in the United States and around the world. The documents in the US Proceedings allege that proceeds from these criminal activities have been laundered through

4

various means, including cryptocurrency (using "spraying" and "funneling" techniques), online gambling operations, and cryptocurrency mining operations. Chen, his associates and companies within the Prince Group, "washed" and returned the fraudulent proceeds to the Prince Group. The "washing" was done by using the Prince Group's vast network of seemingly legitimate business enterprises to launder its criminal proceeds. One common method was to collect the fraudulent proceeds in the form of bitcoin or stablecoins and then off-ramp them into conventional currencies, for example, the US dollar. The launderers then used that cash to purchase clean bitcoin or other cryptocurrencies. Chen was directly involved in coordinating these laundering efforts.

11.    Chen and his associates subsequently used the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

12.    On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation.  The effect of the designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them.  The targets include Chen and the Company. The OFAC noted that:

a.    Americans have lost at least $10 billion to Southeast Asia-based scam operations in 2024, a 66 percent increase over the prior year, with scams like those perpetrated by Prince Group being particularly significant.

b.    The Prince Group remained a dominant player in Cambodia's scam economy and has controlled illicit financial flows of billions of dollars.

c.    The actions taken by OFAC and Financial Crimes Enforcement Network (FinCEN) were in close coordination with the United Kingdom's Foreign, Commonwealth, and Development Office ("FCDO"), which took complementary actions against criminal networks responsible for targeting citizens of the United States and other allied nations through online scams and the laundering of stolen funds.

5

**Action in the UK**

13.    On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group. In doing so it noted that Chen and his associates have incorporated companies in the BVI and own properties in London, including a £12 million mansion on Avenue Road in North London, a £100 million office building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and Nine Elms in South London.

14.    The Foreign Secretary Yvette Cooper stated that:

> *"The masterminds behind these horrific scam centres are ruining the lives of vulnerable people and buying up London homes to store their money.*
>
> *Together with our US allies, we are taking decisive action to combat the growing transnational threat posed by this network – upholding human rights, protecting British nationals and keeping dirty money off our streets."*

15.    The Fraud Minister Lord Hanson said:

> *"These sanctions prove our determination to stop those who profit from this activity, hold offenders accountable, and keep dirty money out of the UK. Through our new, expanded Fraud Strategy and the upcoming Global Fraud Summit, we will go even further to disrupt corrupt networks and protect the public from shameless criminals."*

16.    The effect of these sanctions is to prevent the transfer of these properties, freeze any business in which Chen and the Prince Group are involved and lock Chen and the Prince Group transnational criminal network out of the UK's financial system.

**Action in other jurisdictions**

17.    News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen, the Prince Group, and its related entities and companies. These actions are set out in paragraphs 19 to 22 below. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the global response to combat transnational organised crime.

*Singapore*

18.    On 31 October, 2025, Singapore police announced that they had seized over $150 million (approximately US$115 million) in assets linked to the Prince Group. The seized assets include six

6

properties, bank accounts, securities accounts, and cash which are said to represent the proceeds of money laundering and forgery offences committed by Chen and the Prince Group. According to the Monetary Authority of Singapore (MAS), financial institutions had previously filed suspicious transaction reports, and a number of suspicious accounts had been closed. The Singapore Police Force stated that investigations into Chen and his associates commenced in 2024 after it received intelligence from the Suspicious Transaction Reporting Office (STR).

### Hong Kong

19.    On 4 November, 2025, Hong Kong authorities announced that they had frozen assets worth HK$2.75 billion (approximately US$354 million), which, based on intelligence and information gathered from multiple sources, are suspected to represent proceeds of international cross-border telecommunications fraud and money laundering activities committed by the Prince Group. The frozen assets include cash, stocks, and funds held by individuals and corporate entities. At least 18 Hong Kong companies were blacklisted by the United States in connection with the Prince Group, including two listed companies - "*Khoon Group and Geotech Holdings*".

### Taiwan

20.    On 4 November, 2025, Taiwanese prosecutors announced that they had detained 25 individuals and seized T$4.5 billion (approximately US$147 million) in assets tied to the Prince Group. The seized assets include 26 high-end cars, properties, and bank accounts tied to the network and to Chen in relation to money laundering and forced labour offences.

### Thailand

21.    On 3 December, 2025, the Thai authorities announced that they had seized assets worth more than 10,157 million baht (approximately US$318 million) and issued arrest warrants for 42 individuals linked to transnational online scam operations connected to Chen and Cambodian nationals Kok An and Yim Leak. As of 3 December, 2025, 29 individuals had been arrested. The seizures include shares in Bangchak Corporation Limited worth 6 billion baht (approximately US$188 million). Thailand's Anti-Money Laundering Office (AMLO) stated that investigators had found "*information on networks of online fraud, human trafficking, and money-laundering*" that were linked to Chen and his associates.

7

**The effect of the multi-jurisdictional actions**

22.  These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating transnational organised crime, human trafficking, forced labour, and large-scale financial fraud. The scale and coordination of these actions across at least six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network

23.  In total, as of 9 December, 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The role of BVI companies**

24.  The OFAC has determined that the BVI companies form part of a complex network of holding companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

25.  In the US Complaint, the US DOJ alleged that Chen and his associates also laundered fraudulent proceeds through several companies including companies in the BVI which are under their control. It alleged further that these companies do not serve any real purpose other than to launder funds. Two BVI Companies were named in the US Proceedings - Amber Hill Ventures Limited (**"Amber Hill"**) and Lateral Bridge Global Limited (**"LBG"**).

26.  Amber Hill and LBG are said to be controlled by two of Chen's associates, who are also defendants in the US Civil Proceedings. The US Complaint discloses that personnel from the Federal Bureau of Investigation ("FBI") have conducted extensive blockchain tracing to analyse the movements of the Prince Group's cryptocurrency. The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin which the US DOJ seeks to forfeit flowed through wallets which were controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

8

27. It is also alleged that Amber Hill had a banking relationship with a financial institution in the United States. It was recorded in the account opening documents with that financial institution that Amber Hill's business activities consisted of "[p]roprietary trading and investing," and its anticipated deposit and withdrawal activity would be approximately $2 million each. However, according to account statements, in February 2020, Amber Hill's account with that financial institution had approximately $22.5 million in deposits and $21.8 million in withdrawals. Amber Hill was struck from the register and dissolved on 10 November, 2023.

## THE APPLICATION

28. The Application is made by the Attorney General on the ground that (i) it is just and equitable that joint liquidators be appointed over the Company pursuant to section 162 (1) (b) of the Act and (ii) it is in the public interest that the joint liquidators are appointed pursuant to section 162 (1) (c) of the Act.

### Just and equitable ground

29. Section 162(1)(b) of the Insolvency Act, 2003 provides that the Court may appoint a liquidator of a company if "the Court is of the opinion that it is just and equitable that the company should be liquidated."

30. The Attorney General is listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(b) of the Act.

31. It is just and equitable that the Company should be placed into liquidation for the following reasons:

   a. Available records reveal that Chen is the Company's sole Director and sole Shareholder. Chen is alleged to be the mastermind of the Prince Group. He has been criminally indicted in the United States and is subject to personal sanctions by both the United States and the United Kingdom.

   b. The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities, to include forced labour, human trafficking, large-scale fraud, and money laundering on a massive international scale.

9

c. The BVI companies including the Company are alleged to have been established and operated to assist Chen and the Prince Group which has defrauded numerous vulnerable victims of billions of US dollars.

d. Despite the enforcement actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on the allegations is free to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

e. The activities of some of the companies in the Prince Group have been the subject of civil and criminal enforcement actions in multiple jurisdictions, with authorities in six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

f. The Company is alleged to be a shell company which was used solely as a vehicle for the fraudulent scheme.

g. The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf, and identify potential claims against third parties.

h. The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

i. Independent liquidators are necessary to ensure proper coordination with regulatory and law enforcement authorities and liquidators, trustees, or receivers appointed in the BVI and other jurisdictions, given the multi-jurisdictional nature of the scheme and the actions taken by various authorities in several jurisdictions.

j. Independent liquidators would enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed as part of a collective process.

k. Given the fraudulent nature of the scheme, there are likely to be voidable transactions, preferences, and other claims that independent liquidators could pursue for the benefit of the victims and creditors.

32. Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that its affairs are properly investigated and wound up under the supervision of this Honourable Court.

10

**Public Interest ground**

33.    Section 162(1)(c) of the Act gives the Court the discretion to appoint a liquidator of a company if it is of the opinion that it is in the public interest for a liquidator to be appointed.

34.    The Attorney General is also listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(c) of the Act.

35.    The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

36.    BVI companies including, the Company are alleged to have been used as vehicles in what has been described by international law enforcement authorities as one of the largest fraudulent investment schemes in recent history. The scheme has caused billions of dollars in losses to victims worldwide and involved egregious human rights abuses. They are alleged to have been used to launder and/or hold the proceeds of the horrific crimes committed by Chen and his associates, including human trafficking, forced labour, aggravated identity theft, international fraud designed to scam unsuspecting victims of their lifesavings and money laundering. These criminal and fraudulent activities are inherently objectionable and are contrary to clearly identifiable public interest.

37.    The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the BVI as a financial centre and threatens confidence in BVI incorporated companies and the BVI's regulatory framework.

38.    The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for fraudulent purposes.

39.    The appointment of liquidators will:
    a.    facilitate cooperation with enforcement authorities, regulators, and insolvency practitioners in the BVI and other jurisdictions, demonstrating the BVI's commitment to international cooperation in combating financial fraud;

11

b.    ensure that the Company's affairs are properly investigated and that appropriate steps are taken to recover assets and maximise returns to defrauded investors;

c.    enable a proper investigation into how the Company was used in the fraudulent scheme, which may assist in preventing similar schemes in the future.

40.    Given that enforcement authorities in at least six countries have taken action and frozen or seized assets valued at over US$16 billion, it is in the public interest that BVI as the jurisdiction of incorporation of the Company, takes prompt and decisive action through the appointment of liquidators.

41.    The scale of this fraud and the international coordination of related actions make it imperative, from a public interest perspective, that the BVI positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

42.    In all the circumstances, it is not only just and equitable but also in the public interest that Joint liquidators be appointed over the Company to prevent it from being used to further Chen's and the Prince Group's criminal enterprise.

43.    If appointed, the joint liquidators would be able to take control of the Company, take the necessary steps in the BVI or overseas to secure and preserve its books and records and secure its assets for the benefit of the victims of the crimes perpetuated by the Prince Group. As officers of the court, they would also be able to independently investigate claims against the Company, marshal records, ensure that the Company complies with BVI laws and regulations and respond to any court process.

**Proposed liquidators**

44.    Mr. James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110, Mr. Paul Pretlove and Mr. David Standish, both of Interpath Ltd, 10 Fleet Place, London EC4M 7RB who to the best of the Applicant's knowledge and belief are eligible insolvency practitioners have all consented to be appointed as joint liquidators of the Company.

12

45.    In the circumstances, it is just and equitable and in the public's interest to grant the order which the Attorney General seeks, for the appointment of joint liquidators over the Company.

A draft of the order sought is attached.

This application is supported by the affidavit of Attorney General Dawn J Smith.

The names and addresses of the persons on whom it is intended to serve the application are as follows:

**Star Merit Global Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

The names and addresses of the persons required to be given notice of this application pursuant to the Act and the Rules (if any) are as follows:

**Star Merit Global Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

This Application is filed by O'Neal Webster, Solicitors for the Applicant, whose address for service is 2nd

Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands.
REF: 101358

Dated: 2nd January 2026

_____
Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

13

THE EASTERN CARIBBEAN SUPREME

COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/


**IN THE MATTER OF STAR MERIT GLOBAL LIMITED**

**AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE
LAWS OF THE VIRGIN ISLANDS**


BETWEEN:


**THE ATTORNEY GENERAL**

                                                                    Applicant

**AND**


**STAR MERIT GLOBAL LIMITED**

                                                                  Respondent

-----------------------------------------

**ORIGINATING APPLICATION**

-----------------------------------------



**Legal Practitioners for the Applicant**
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 l Fax: (284) 393 5805
www.onealwebster.com

14

**Case Number :BVIHCOM2026/0025**

FILED
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS

The Insolvency Rules 2005

**ORDINARY APPLICATION (EX-PARTE)**

**(Company)**

Rule 14

**Submitted Date:05/01/2026 11:59**

**Filed Date:05/01/2026 13:38**

**Fees Paid:0.00**

| | |
|---|---|
| **THE EASTERN CARIBBEAN SUPREME COURT** **IN THE HIGH COURT OF JUSTICE** **VIRGIN ISLANDS** **COMMERCIAL DIVISION** | |
| Matter No.: | BVIHC(COM)        of 2026 |
| Applicant: | **THE ATTORNEY GENERAL** |
| Respondent: | **STAR MERIT GLOBAL LIMITED** |

In the matter of:

| |
|---|
| **STAR MERIT GLOBAL LIMITED** |

| For Court Use Only |
|---|
| **To: STAR MERIT GLOBAL LIMITED,** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands. <br><br> **This Application will be heard by the Commercial Court Judge at Road Town, Tortola** <br> **British Virgin Islands** <br> **on the            day of                    2026    at                o'clock.** <br><br> **If you do not attend at the time shown the Court may make an order in your absence** |

We, O'Neal Webster, on behalf of the Applicant, **the Attorney General of the Virgin Islands ("the Attorney General"),** apply pursuant to section 170 of the Insolvency Act 2003 (the "Act") for the following orders that:

1.    James Drury,  a Virgin Islands ("BVI") licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola,  Virgin Islands, VG1110; and Paul Pretlove and David Standish both United Kingdom ("UK") licensed insolvency

1

practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB to be appointed as joint provisional liquidators of Star Merit Global Limited **("the Company")** with immediate effect.

2.  The powers afforded to the said joint provisional liquidators shall be as set out in Schedule 2 of the Act as varied by Schedule 3, and as further varied by this Order.

3.  An order that the joint provisional liquidators have the power to:

    a.  consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the joint provisional liquidators and the Attorney General which is attached hereto **("the Protocol")**.

    b.  cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4.  An order that the costs of the liquidation, including the proper fees and disbursements of the joint liquidators, the Attorney General's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

5.  An order that the costs of the application be costs in the liquidation.

6.  Such further order as the court deems appropriate.

A draft of the order sought is attached.

The grounds upon which this order is sought are set out in the affidavit of the Attorney General Dawn J. Smith filed on 2 January, 2026, but in brief are as follows:

**Introduction**

1.  There are good prima facie reasons as set out in the originating application for the eventual appointment of full liquidators on the grounds of public interest and on the grounds that it is just and equitable that they be appointed over the Company. A summary of these reasons is set out below.

2

**The Company and the Prince Group**

2.   The Company was incorporated under the laws of the Virgin Islands (**"BVI"**) on 22 April 2020. Its registered office is located at Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, BVI, VG1110. Chen Zhi, (**"Chen"**) is the Company's sole Director and sole Shareholder.

3.   The Company is alleged to be a member of a transnational criminal organisation that is headed by the Prince Holding Group (**"the Prince Group"**) which is a Cambodian corporate conglomerate comprised of several companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan. Chen is the mastermind of the Prince Group's transnational criminal organisation and its chairman.

**Action in the USA and other jurisdictions**

4.   On 14 October, 2025, the United States Department of Justice (**"US DOJ"**), the United States Department of the Treasury's Office of Foreign Assets Control (**"OFAC"**) and the United Kingdom Government announced coordinated actions targeting the Prince Group.

5.   The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York (**"the NY District Court"**) on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering (**"the US Indictment"**). Concurrently, the US DOJ filed a civil forfeiture complaint (**"the US Complaint"**) seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group. The criminal and civil proceedings will be referred together as the **"the US Proceedings"**.

6.   On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation. The effect of this designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them. The targets include Chen and the Company.

7.   On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group. In doing so it noted that Chen and his associates have incorporated companies in the BVI and own properties

3

in London including a £12 million mansion on Avenue Road in North London, a £100 million office building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and in Nine Elms in South London.

8.    News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen, the Prince Group, and its related entities and companies. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the coordinated global response to combat transnational organised crime.

9.    These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating transnational organised crime, human trafficking, forced labour, and large-scale financial fraud. The scale and coordination of these actions across six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network.

10.   In total, as of 9 December 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand) have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The allegation against Chen, his associates and companies within the Prince Group**

11.   In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and criminal activities including cryptocurrency investment fraud, human trafficking, money laundering, wire fraud, bank fraud, forced labour and, illegal online gambling. It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers. The scammers disappeared after taking almost every dollar they could from their victims.

12.   The US DOJ also alleges that the fraudulent activities carried out by the Prince Group resulted in

4

billions of dollars in losses incurred by victims in the United States and around the world. Chen and his associates are alleged to use the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

13.   To effectuate their fraudulent schemes, it is alleged in the US Proceedings that Chen and his associates:

   a.   forced migrant workers who were – not always, but often – victims themselves of human trafficking, to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

   b.   frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

   c.   used their political influence in multiple countries to protect their criminal enterprise; and

   d.   paid bribes to foreign public officials to avoid disruption by law enforcement.

**The role of BVI Companies in the Prince Group**

14.   The OFAC determined that the BVI companies form part of a complex network of companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

15.   In the US complaint, the US DOJ alleged that Chen and his associates laundered the fraudulent proceeds of their crime through several companies in the BVI, Cayman, Cambodia and Hong Kong, which are under their control. It alleged further that these companies do not serve any real purpose other than to launder the proceeds of their criminal and fraudulent activities. Two BVI Companies are named in the US Complaint - Amber Hill Ventures Limited (**"Amber Hill"**) and Lateral Bridge Global Limited (**"LBG"**).

16.   The US Complaint discloses that personnel from the Federal Bureau of Investigation ("FBI") have conducted extensive blockchain tracing to analyse the movements of the Prince Group's

5

cryptocurrency. The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin which the US DOJ seeks to forfeit flowed through wallets which were controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

**It is just and equitable that liquidators be appointed over the Company**

17. The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities to include forced labour, human trafficking, large-scale fraud, and money laundering on a massive international scale.

18. The activities of some of the companies in the Prince Group have been the subject of civil and criminal actions in multiple jurisdictions, with authorities in at least six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

19. The BVI companies including the Company are alleged to have been established and operated to assist Chen and the Prince Group which has defrauded numerous vulnerable victims of billions of US dollars.

20. Despite the actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on allegations is free to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

21. The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf for the benefit of the victims of the fraud; and to identify potential claims against third parties.

22. The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

23. Independent liquidators are necessary to ensure proper coordination with regulatory and enforcement authorities and liquidators, trustees, or receivers appointed in the Virgin Islands and

6

other jurisdictions, given the multi-jurisdictional nature of the scheme and the actions. Independent liquidators would also enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed.

24.     Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that its affairs are properly investigated and wound up under the supervision of this Honourable Court.

**It is in the public interest that liquidators be appointed over the Company**

25.     The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

26.     The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the Virgin Islands as a financial centre and threatens confidence in BVI companies and the BVI's regulatory framework.

27.     The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for nefarious purposes and with its commitment to international cooperation and combating serious transnational crime.

28.     Given that regulatory and law enforcement authorities in at least six countries have taken action and frozen or seized assets valued at over US$16 billion, it is in the public interest that the BVI as the jurisdiction of incorporation of the Company takes prompt and decisive action through the appointment of liquidators.

29.     The scale of this fraud and the international coordination of actions make it imperative, from a public interest perspective, that the BVI positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

**The appointment of joint provisional liquidators**

30.     It is essential that joint provisional liquidators be appointed over the Company immediately

7

(without notice to it and its principals) and before the originating application is heard and determined for the following reasons:

a.  The Company continues to be under the control of Chen and his associates and as a result, they can use or continue to use it to further the criminal enterprise thereby continuing to inflict public harm.

b.  Given the serious allegations set out in this application, the sanctions imposed by the United States and the UK Government, the US Indictment, and the US Complaint, it is appropriate and necessary that provisional liquidators be appointed immediately to:

    (i)   immediately take full control of the Company;

    (ii)  identify and preserve its assets that may represent proceeds of crime by preventing further movement, concealment, or dissipation of those assets;

    (iii) take control of its books and records;

    (iv)  conduct thorough investigations into its past transactions; and

    (v)   review banking records, asset transfers, and corporate dealings to identify and locate the potential money laundering activities.

c.  The information and evidence gathered by the liquidators may provide crucial support for law enforcement authorities, both in the BVI and internationally, to apply for freezing orders, forfeiture orders, and other remedies. In this case, given that the United States has already filed a civil complaint seeking forfeiture of 127,271 Bitcoin valued at approximately US$15 billion allegedly connected to the Prince Group's criminal activities, the work of the liquidators could materially assist in tracing assets and preserving evidence relevant to that and other actions.

d.  The appointment of provisional liquidator over the Company and other BVI companies which are owned and controlled by Chen would align with the BVI's National AML/CFT Policy and its commitment to international cooperation in combating serious transnational crime.

e.  The coordinated actions taken by the US DOJ and UK Government on 14 October, 2025 signal the seriousness with which these major jurisdictions view the alleged criminal activities of the Prince Group. The appointment of provisional liquidators by this Honourable Court would demonstrate that the BVI is equally committed to ensuring that its corporate structures are not used as vehicles for serious criminality and would facilitate cooperation with international authorities in their ongoing investigations and

8

asset recovery efforts.

**Urgency**

31. The public announcements of the US Civil Proceedings, OFAC sanctions, and UK sanctions on 14 October 2025 together with actions taken in other jurisdictions have no doubt put Chen and his associates, who are alleged to be sophisticated criminals, on notice of the scrutiny being applied to the Prince Group network and its corporate structures.

32. The Company is likely to have received proceeds of the criminal and fraudulent activities and to have documentation that may assist in recovering the proceeds of the crime. There is a real and substantial risk that absent the immediate appointment of provisional liquidators, assets held by or through the BVI companies, including the Company will be transferred, concealed, or dissipated and documents will be destroyed or concealed. This real and substantial risk will increase once the Company is served with the originating application,

33. The appointment of provisional liquidators will immediately remove control from Chen and place the Company under the supervision and control of officers of this Court, thereby protecting the integrity of any investigation and preserving assets for the benefit of the victims of Chen and the Prince Group's fraudulent and criminal activities.

34. The appointment of joint provisional liquidators is appropriate given the number of BVI companies involved, the complexity of the alleged corporate structure spanning multiple jurisdictions, the international nature of the investigations and actions, and the need for extensive expertise in tracing assets and investigating potential money laundering activities.

**The Proposed provisional liquidators**

35. The Attorney General proposes that James Drury,  a BVI licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110; and Paul Pretlove and David Standish, both UK licensed insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB be appointed as joint provisional liquidators of the Company.

9

**Conclusion**

36.  In all the circumstances, it is just and convenient and in the public's interest, that this Honourable Court grants the order which the Attorney General seeks in this application.

A draft of the order sought is attached.

This application is supported by the affidavit of Attorney General Dawn J. Smith.

The names and addresses of the persons on whom it is intended to serve the application are as follows:

This Application is filed by O'Neal Webster, Solicitors for the Applicant whose address for service is 2nd Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands. REF: NW/LG/101538.

Dated: 2nd January 2026

_____
Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

10

THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/

**IN THE MATTER OF STAR MERIT GLOBAL LIMITED**

**AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.**

BETWEEN:

**THE ATTORNEY GENERAL**

Applicant

**AND**

**STAR MERIT GLOBAL LIMITED**

Respondent

---

**EX-PARTE ORDINARY APPLICATION
FOR JOINT PROVISIONAL LIQUIDATORS**

---



Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 I Fax: (284) 393 5805
www.onealwebster.com

11

**Case Number :BVIHCOM2026/0026**

```
┌────────────────────┐
│       FILED        │
│   HIGH COURT       │
│   TERRITORY OF     │
│ THE VIRGIN ISLANDS │
└────────────────────┘
```

The Insolvency Rules 2005

**ORIGINATING APPLICATION**

**(Company)**

Rule 14

**Submitted Date:05/01/2026 12:05**

**Filed Date:05/01/2026 13:38**

**Fees Paid:0.00**

| | |
|---|---|
| **THE EASTERN CARIBBEAN SUPREME COURT IN THE HIGH COURT OF JUSTICE VIRGIN ISLANDS COMMERCIAL DIVISION** | |
| Matter No.: | BVIHC(COM)    of 2026 |
| Applicant: | **THE ATTORNEY GENERAL** |
| Respondent: | **STARRY BLOOM LIMITED** |

In the matter of:

| |
|---|
| **STARRY BLOOM LIMITED** |

| |
|---|
| For Court Use Only |
| **To: STARRY BLOOM LIMITED** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands.<br><br>**This Application will be heard by the Commercial Court Judge at Road Town, Tortola British Virgin Islands**<br><br>on the          day of                    2026    at              o'clock.<br><br>**If you do not attend at the time shown the Court may make an order in your absence** |

The Applicant, the Attorney General of the Virgin Islands ("**Attorney General**") of TTT Building, Wickhams Cay 1, Road Town, Tortola, Virgin Islands VG1110 applies to the Court for:

1. An order pursuant to sections 162(1) (b) and (c) of the Insolvency Act, Revised Edition 2020 ("**the Act**") that Paul Pretlove, James Drury and David Standish, be appointed as joint liquidators of Starry Bloom Limited **("the Company")**, a company incorporated under the laws of the Virgin Islands ("BVI"). James Drury is a BVI licensed insolvency practitioner of Interpath (BVI) Limited, PO

1

435

Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110. Paul Pretlove and David Standish are United Kingdom ("UK") licensed insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB acting as overseas insolvency practitioners as defined in the Act.

2. An order that the joint liquidators be given all powers set out in Schedule 2 of the Act, such powers to be exercisable without the sanction of the Court and such other powers as this Honourable Court deems fit.

3. An order that the joint liquidators have the power to:

   a. consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the liquidators and the Attorney General which is attached hereto **("the Protocol")**.

   b. cooperate and communicate with law enforcement and regulatory authorities in the BVI and in other jurisdictions.

4. An order that the costs of the liquidation, including the proper fees and disbursements of the joint liquidators and the Attorney General's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims

5. An order that the costs of the application be costs in the liquidation.

6. Such further order as the court deems appropriate.

The grounds upon which this order is sought are set out in the affidavit of Attorney General, Dawn J. Smith filed on 2 January 2026 and are summarised as follows:

**THE PARTIES**

1. The Attorney General is the principal legal adviser to the Government of the Virgin Islands (**"the Government"**) pursuant to section 58 of the Virgin Islands Constitution Order, 2007, and has overall responsibility for all aspects of civil litigation on behalf of the Government.

2

436

2.    The Company was incorporated under the laws of the BVI on 22 April 2020. Its registered office is located at Vistra Corporate Services Centre **("Vistra")**, Wickhams Cay II, Road Town, Tortola, BVI, VG1110. The Company is alleged to be a member of a transnational criminal organisation that is headed by Prince Holding Group Limited **("the Prince Group"),** which is a Cambodian corporate conglomerate that comprises several companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan.

3.    The chairman of the Prince Group is Chen Zhi **("Chen").** Chen is the Company's sole Director and sole Shareholder.

**BACKGROUND**

4.    The background is comprehensively set out in the indictment and the verified complaint filed by the United States Department of Justice **("US DOJ")** on October 14, 2025 and in the announcement issued by the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** dated October 13, 2025. The background is summarised below.

**Action in the United States**

5.    On 14 October, 2025, the United States Department of Justice **("US DOJ")**, the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** and the United Kingdom Government announced coordinated actions targeting the Prince Group.

6.    The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York **("the NY District Court")** on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering **("the US Indictment").** Concurrently, the US DOJ filed a civil forfeiture complaint **("the US Complaint")** seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group. The criminal and civil proceedings will be referred to together as **"the US Proceedings."**

7.    In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and criminal activities including cryptocurrency investment fraud, human trafficking, money

3

437

laundering, wire fraud, bank fraud, forced labour and, illegal online gambling. It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers. The scammers disappeared after taking almost every dollar they could from their victims.

8. To effectuate the schemes, it is alleged in the US Proceedings that Chen and his associates:

   a. built and operated forced-labour scam compounds across Cambodia in which workers were made to execute the scams at high volumes. The scam compounds housed vast dormitories surrounded by high walls and barbed wire, and functioned as violent forced labour camps;

   b. forced migrant workers who were – not always, but often – victims themselves of human trafficking to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

   c. frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

   d. used their political influence in multiple countries to protect their criminal enterprise; and

   e. paid bribes to foreign public officials to avoid disruption by law enforcement.

9. The indictment alleges that Chen maintained meticulous records of the compounds' operations, including ledgers of the tracking profits generated from the fraud schemes, documents detailing "phone farms" used in the schemes, and images depicting methods of beating and torture used against workers.

10. The US DOJ alleges that the schemes carried out by the Prince Group resulted in billions of dollars in losses incurred by victims in the United States and around the world. The documents in the US Proceedings allege that proceeds from these criminal activities have been laundered through various means, including cryptocurrency (using "spraying" and "funneling" techniques), online

4

438

gambling operations, and cryptocurrency mining operations. Chen, his associates and companies within the Prince Group, "washed" and returned the fraudulent proceeds to the Prince Group. The "washing" was done by using the Prince Group's vast network of seemingly legitimate business enterprises to launder its criminal proceeds. One common method was to collect the fraudulent proceeds in the form of bitcoin or stablecoins and then off-ramp them into conventional currencies, for example, the US dollar. The launderers then used that cash to purchase clean bitcoin or other cryptocurrencies. Chen was directly involved in coordinating these laundering efforts.

11.     Chen and his associates subsequently used the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

12.     On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation.  The effect of the designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them.  The targets include Chen and the Company. The OFAC noted that:

   a.     Americans have lost at least $10 billion to Southeast Asia-based scam operations in 2024, a 66 percent increase over the prior year, with scams like those perpetrated by Prince Group being particularly significant.

   b.     The Prince Group remained a dominant player in Cambodia's scam economy and has controlled illicit financial flows of billions of dollars.

   c.     The actions taken by OFAC and Financial Crimes Enforcement Network (FinCEN) were in close coordination with the United Kingdom's Foreign, Commonwealth, and Development Office ("FCDO"), which took complementary actions against criminal networks responsible for targeting citizens of the United States and other allied nations through online scams and the laundering of stolen funds.

**Action in the UK**

13.     On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group.  In doing so it

5

439

noted that Chen and his associates have incorporated companies in the BVI and own properties in London, including a £12 million mansion on Avenue Road in North London, a £100 million office building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and Nine Elms in South London.

14.     The Foreign Secretary Yvette Cooper stated that:

> *"The masterminds behind these horrific scam centres are ruining the lives of vulnerable people and buying up London homes to store their money.*
>
> *Together with our US allies, we are taking decisive action to combat the growing transnational threat posed by this network – upholding human rights, protecting British nationals and keeping dirty money off our streets."*

15.     The Fraud Minister Lord Hanson said:

> *"These sanctions prove our determination to stop those who profit from this activity, hold offenders accountable, and keep dirty money out of the UK. Through our new, expanded Fraud Strategy and the upcoming Global Fraud Summit, we will go even further to disrupt corrupt networks and protect the public from shameless criminals."*

16.     The effect of these sanctions is to prevent the transfer of these properties, freeze any business in which Chen and the Prince Group are involved and lock Chen and the Prince Group transnational criminal network out of the UK's financial system.

**Action in other jurisdictions**

17.     News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen,  the Prince Group, and its related entities and companies.  These actions are set out in paragraphs 19 to 22 below. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the global response to combat transnational organised crime.

***Singapore***

18.     On 31 October, 2025, Singapore police announced that they had seized over $150 million (approximately US$115 million) in assets linked to the Prince Group. The seized assets include six properties, bank accounts, securities accounts, and cash which are said to represent the proceeds of money laundering and forgery offences committed by Chen and the Prince Group. According

6

to the Monetary Authority of Singapore (MAS), financial institutions had previously filed suspicious transaction reports, and a number of suspicious accounts had been closed. The Singapore Police Force stated that investigations into Chen and his associates commenced in 2024 after it received intelligence from the Suspicious Transaction Reporting Office (STR).

### Hong Kong

19.    On 4 November, 2025, Hong Kong authorities announced that they had frozen assets worth HK$2.75 billion (approximately US$354 million), which, based on intelligence and information gathered from multiple sources, are suspected to represent proceeds of international cross-border telecommunications fraud and money laundering activities committed by the Prince Group. The frozen assets include cash, stocks, and funds held by individuals and corporate entities. At least 18 Hong Kong companies were blacklisted by the United States in connection with the Prince Group, including two listed companies - "*Khoon Group and Geotech Holdings*".

### Taiwan

20.    On 4 November, 2025, Taiwanese prosecutors announced that they had detained 25 individuals and seized T$4.5 billion (approximately US$147 million) in assets tied to the Prince Group. The seized assets include 26 high-end cars, properties, and bank accounts tied to the network and to Chen in relation to money laundering and forced labour offences.

### Thailand

21.    On 3 December, 2025, the Thai authorities announced that they had seized assets worth more than 10,157 million baht (approximately US$318 million) and issued arrest warrants for 42 individuals linked to transnational online scam operations connected to Chen and Cambodian nationals Kok An and Yim Leak. As of 3 December, 2025, 29 individuals had been arrested. The seizures include shares in Bangchak Corporation Limited worth 6 billion baht (approximately US$188 million). Thailand's Anti-Money Laundering Office (AMLO) stated that investigators had found "*information on networks of online fraud, human trafficking, and money-laundering*" that were linked to Chen and his associates.

### The effect of the multi-jurisdictional actions

22.    These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating

7

441

transnational organised crime, human trafficking, forced labour, and large-scale financial fraud. The scale and coordination of these actions across at least six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network

23.    In total, as of 9 December, 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The role of BVI companies**

24.    The OFAC has determined that the BVI companies form part of a complex network of holding companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

25.    In the US Complaint, the US DOJ alleged that Chen and his associates also laundered fraudulent proceeds through several companies including companies in the BVI which are under their control. It alleged further that these companies do not serve any real purpose other than to launder funds. Two BVI Companies were named in the US Proceedings - Amber Hill Ventures Limited **("Amber Hill")** and Lateral Bridge Global Limited **("LBG")**.

26.    Amber Hill and LBG are said to be controlled by two of Chen's associates, who are also defendants in the US Civil Proceedings. The US Complaint discloses that personnel from the Federal Bureau of Investigation ("FBI") have conducted extensive blockchain tracing to analyse the movements of the Prince Group's cryptocurrency. The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin which the US DOJ seeks to forfeit flowed through wallets which were controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

27.    It is also alleged that Amber Hill had a banking relationship with a financial institution in the United States. It was recorded in the account opening documents with that financial institution that Amber Hill's business activities consisted of "*[p]roprietary trading and investing*," and its anticipated deposit and withdrawal activity would be approximately $2 million each. However,

8

442

according to account statements, in February 2020, Amber Hill's account with that financial institution had approximately $22.5 million in deposits and $21.8 million in withdrawals. Amber Hill was struck from the register and dissolved on 10 November, 2023.

**THE APPLICATION**

28. The Application is made by the Attorney General on the ground that (i) it is just and equitable that joint liquidators be appointed over the Company pursuant to section 162 (1) (b) of the Act and (ii) it is in the public interest that the joint liquidators are appointed pursuant to section 162 (1) (c) of the Act.

**Just and equitable ground**

29. Section 162(1)(b) of the Insolvency Act, 2003 provides that the Court may appoint a liquidator of a company if "the Court is of the opinion that it is just and equitable that the company should be liquidated."

30. The Attorney General is listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(b) of the Act.

31. It is just and equitable that the Company should be placed into liquidation for the following reasons:

    a. Available records reveal that Chen is the Company's sole Director and sole Shareholder. Chen is alleged to be the mastermind of the Prince Group. He has been criminally indicted in the United States and is subject to personal sanctions by both the United States and the United Kingdom.

    b. The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities, to include forced labour, human trafficking, large-scale fraud, and money laundering on a massive international scale.

    c. The BVI companies including the Company are alleged to have been established and operated to assist Chen and the Prince Group which has defrauded numerous vulnerable victims of billions of US dollars.

    d. Despite the enforcement actions taken in other jurisdictions, the Company continues

9

443

to be under the control of Chen and his associates and based on the allegations is free to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

e.    The activities of some of the companies in the Prince Group have been the subject of civil and criminal enforcement actions in multiple jurisdictions, with authorities in six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

f.    The Company is alleged to be a shell company which was used solely as a vehicle for the fraudulent scheme.

g.    The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf, and identify potential claims against third parties.

h.    The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

i.    Independent liquidators are necessary to ensure proper coordination with regulatory and law enforcement authorities and liquidators, trustees, or receivers appointed in the BVI and other jurisdictions, given the multi-jurisdictional nature of the scheme and the actions taken by various authorities in several jurisdictions.

j.    Independent liquidators would enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed as part of a collective process.

k.    Given the fraudulent nature of the scheme, there are likely to be voidable transactions, preferences, and other claims that independent liquidators could pursue for the benefit of the victims and creditors.

32.    Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that its affairs are properly investigated and wound up under the supervision of this Honourable Court.

**Public Interest ground**

33.    Section 162(1)(c) of the Act gives the Court the discretion to appoint a liquidator of a company if it is of the opinion that it is in the public interest for a liquidator to be appointed.

10

444

34.    The Attorney General is also listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(c) of the Act.

35.    The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

36.    BVI companies including, the Company are alleged to have been used as vehicles in what has been described by international law enforcement authorities as one of the largest fraudulent investment schemes in recent history.  The scheme has caused billions of dollars in losses to victims worldwide and involved egregious human rights abuses.  They are alleged to have been used to launder and/or hold the proceeds of the horrific crimes committed by Chen and his associates, including human trafficking, forced labour, aggravated identity theft, international fraud designed to scam unsuspecting victims of their lifesavings and money laundering.  These criminal and fraudulent activities are inherently objectionable and are contrary to clearly identifiable public interest.

37.    The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the BVI as a financial centre and threatens confidence in BVI incorporated companies and the BVI's regulatory framework.

38.    The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for fraudulent purposes.

39.    The appointment of liquidators will:
    a.    facilitate cooperation with enforcement authorities, regulators, and insolvency practitioners in the BVI and other jurisdictions, demonstrating the BVI's commitment to international cooperation in combating financial fraud;
    b.    ensure that the Company's affairs are properly investigated and that appropriate steps are taken to recover assets and maximise returns to defrauded investors;
    c.    enable a proper investigation into how the Company was used in the fraudulent scheme, which may assist in preventing similar schemes in the future.

11

445

40. Given that enforcement authorities in at least six countries have taken action and frozen or seized assets valued at over US$16 billion, it is in the public interest that BVI as the jurisdiction of incorporation of the Company, takes prompt and decisive action through the appointment of liquidators.

41. The scale of this fraud and the international coordination of related actions make it imperative, from a public interest perspective, that the BVI positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

42. In all the circumstances, it is not only just and equitable but also in the public interest that Joint liquidators be appointed over the Company to prevent it from being used to further Chen's and the Prince Group's criminal enterprise.

43. If appointed, the joint liquidators would be able to take control of the Company, take the necessary steps in the BVI or overseas to secure and preserve its books and records and secure its assets for the benefit of the victims of the crimes perpetuated by the Prince Group. As officers of the court, they would also be able to independently investigate claims against the Company, marshal records, ensure that the Company complies with BVI laws and regulations and respond to any court process.

**Proposed liquidators**

44. Mr. James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110, Mr. Paul Pretlove and Mr. David Standish, both of Interpath Ltd, 10 Fleet Place, London EC4M 7RB who to the best of the Applicant's knowledge and belief are eligible insolvency practitioners have all consented to be appointed as joint liquidators of the Company.

45. In the circumstances, it is just and equitable and in the public's interest to grant the order which the Attorney General seeks, for the appointment of joint liquidators over the Company.

A draft of the order sought is attached.

12

446

This application is supported by the affidavit of Attorney General Dawn J Smith.

The names and addresses of the persons on whom it is intended to serve the application are as follows:

**Starry Bloom Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

The names and addresses of the persons required to be given notice of this application pursuant to the Act and the Rules (if any) are as follows:

**Starry Bloom Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

This Application is filed by O'Neal Webster, Solicitors for the Applicant, whose address for service is 2nd

Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands.
REF: 101538

_____                          Dated: 2 January 2026
Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

13

447

THE EASTERN CARIBBEAN SUPREME

COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/

**IN THE MATTER OF STARRY BLOOM LIMITED**

**AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS**

BETWEEN:

**THE ATTORNEY GENERAL**

Applicant

**AND**

**STARRY BLOOM LIMITED**

Respondent

---

**ORIGINATING APPLICATION**

---



Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 I Fax: (284) 393 5805
www.onealwebster.com

14

448

**Case Number :BVIHCOM2026/0026**

FILED
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS

The Insolvency Rules 2005

**ORDINARY APPLICATION (EX-PARTE)**

**(Company)**

Rule 14

**Submitted Date:05/01/2026 12:04**

**Filed Date:05/01/2026 13:38**

**Fees Paid:0.00**

| THE EASTERN CARIBBEAN SUPREME COURT IN THE HIGH COURT OF JUSTICE VIRGIN ISLANDS COMMERCIAL DIVISION | |
|---|---|
| Matter No.: | BVIHC(COM)    of 2026 |
| Applicant: | **THE ATTORNEY GENERAL** |
| Respondent: | **STARRY BLOOM LIMITED** |

In the matter of:

| **STARRY BLOOM LIMITED** |
|---|

| For Court Use Only |
|---|
| **To:  STARRY BLOOM LIMITED,** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands.<br><br>**This Application will be heard by the Commercial Court Judge at Road Town, Tortola British Virgin Islands**<br>**on the           day of                    2026    at            o'clock.**<br><br>**If you do not attend at the time shown the Court may make an order in your absence** |

We, O'Neal Webster, on behalf of the Applicant, **the Attorney General of the Virgin Islands ("the Attorney General")**, apply pursuant to section 170 of the Insolvency Act 2003 (the "Act") for the following orders that:

1.   James Drury,  a Virgin Islands ("BVI") licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola,  Virgin Islands, VG1110; and Paul Pretlove and David Standish both United Kingdom ("UK") licensed insolvency

7

1

practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB to be appointed as joint provisional liquidators of Starry Bloom Limited **("the Company")** with immediate effect.

2.   The powers afforded to the said joint provisional liquidators shall be as set out in Schedule 2 of the Act as varied by Schedule 3, and as further varied by this Order.

3.   An order that the joint provisional liquidators have the power to:

   a.   consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the joint provisional liquidators and the Attorney General which is attached hereto **("the Protocol")**.

   b.   cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4.   An order that the costs of the liquidation, including the proper fees and disbursements of the joint liquidators, the Attorney General's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

5.   An order that the costs of the application be costs in the liquidation.

6.   Such further order as the court deems appropriate.

A draft of the order sought is attached.

The grounds upon which this order is sought are set out in the affidavit of the Attorney General Dawn J. Smith filed on 2 January 2026, but in brief are as follows:

**Introduction**

1.   There are good prima facie reasons as set out in the originating application for the eventual appointment of full liquidators on the grounds of public interest and on the grounds that it is just and equitable that they be appointed over the Company.  A summary of these reasons is set out below.

2

8

**The Company and the Prince Group**

2.      The Company was incorporated under the laws of the Virgin Islands (**"BVI"**) on 22 April 2020. Its registered office is located at Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, BVI, VG1110. Chen Zhi, (**"Chen"**) is the Company's sole Director and sole Shareholder.

3.      The Company is alleged to be a member of a transnational criminal organisation that is headed by the Prince Holding Group (**"the Prince Group"**) which is a Cambodian corporate conglomerate comprised of several companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan. Chen is the mastermind of the Prince Group's transnational criminal organisation and its chairman.

**Action in the USA and other jurisdictions**

4.      On 14 October, 2025, the United States Department of Justice (**"US DOJ"**), the United States Department of the Treasury's Office of Foreign Assets Control (**"OFAC"**) and the United Kingdom Government announced coordinated actions targeting the Prince Group.

5.      The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York (**"the NY District Court"**) on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering (**"the US Indictment"**). Concurrently, the US DOJ filed a civil forfeiture complaint (**"the US Complaint"**) seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group. The criminal and civil proceedings will be referred together as the **"the US Proceedings"**.

6.      On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation. The effect of this designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them. The targets include a number of BVI companies including the Company.

7.      On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group. In doing so it

3

noted that Chen and his associates have incorporated companies in the BVI and own properties in London including a £12 million mansion on Avenue Road in North London, a £100 million office building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and in Nine Elms in South London.

8.    News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen, the Prince Group, and its related entities and companies. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the coordinated global response to combat transnational organised crime.

9.    These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating transnational organised crime, human trafficking, forced labour, and large-scale financial fraud. The scale and coordination of these actions across six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network.

10.    In total, as of 9 December 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand) have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The allegation against Chen, his associates and companies within the Prince Group**

11.    In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and criminal activities including cryptocurrency investment fraud, human trafficking, money laundering, wire fraud, bank fraud, forced labour and, illegal online gambling. It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers. The scammers disappeared after taking almost every dollar they could from their victims.

4

10

12.  The US DOJ also alleges that the fraudulent activities carried out by the Prince Group resulted in billions of dollars in losses incurred by victims in the United States and around the world. Chen and his associates are alleged to use the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

13.  To effectuate their fraudulent schemes, it is alleged in the US Proceedings that Chen and his associates:

   a.  forced migrant workers who were – not always, but often – victims themselves of human trafficking, to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

   b.  frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

   c.  used their political influence in multiple countries to protect their criminal enterprise; and

   d.  paid bribes to foreign public officials to avoid disruption by law enforcement.

**The role of BVI Companies in the Prince Group**

14.  The OFAC determined that the BVI companies form part of a complex network of companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

15.  In the US complaint, the US DOJ alleged that Chen and his associates laundered the fraudulent proceeds of their crime through several companies in the BVI, Cayman, Cambodia and Hong Kong, which are under their control. It alleged further that these companies do not serve any real purpose other than to launder the proceeds of their criminal and fraudulent activities. Two BVI Companies are named in the US Complaint - Amber Hill Ventures Limited (**"Amber Hill"**) and Lateral Bridge Global Limited **("LBG")**.

16.  The US Complaint discloses that personnel from the Federal Bureau of Investigation ("FBI") have

5

conducted extensive blockchain tracing to analyse the movements of the Prince Group's cryptocurrency. The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin which the US DOJ seeks to forfeit flowed through wallets which were controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

**It is just and equitable that liquidators be appointed over the Company**

17. The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities to include forced labour, human trafficking, large-scale fraud, and money laundering on a massive international scale.

18. The activities of some of the companies in the Prince Group have been the subject of civil and criminal actions in multiple jurisdictions, with authorities in at least six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

19. The BVI companies including the Company are alleged to have been established and operated to assist Chen and the Prince Group which has defrauded numerous vulnerable victims of billions of US dollars.

20. Despite the actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on allegations is free to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

21. The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf for the benefit of the victims of the fraud; and to identify potential claims against third parties.

22. The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

23. Independent liquidators are necessary to ensure proper coordination with regulatory and

6

12

enforcement authorities and liquidators, trustees, or receivers appointed in the Virgin Islands and other jurisdictions, given the multi-jurisdictional nature of the scheme and the actions. Independent liquidators would also enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed.

24. Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that its affairs are properly investigated and wound up under the supervision of this Honourable Court.

**It is in the public interest that liquidators be appointed over the Company**

25. The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

26. The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the Virgin Islands as a financial centre and threatens confidence in BVI companies and the BVI's regulatory framework.

27. The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for nefarious purposes and with its commitment to international cooperation and combating serious transnational crime.

28. Given that regulatory and law enforcement authorities in at least six countries have taken action and frozen or seized assets valued at over US$16 billion, it is in the public interest that the BVI as the jurisdiction of incorporation of the Company takes prompt and decisive action through the appointment of liquidators.

29. The scale of this fraud and the international coordination of actions make it imperative, from a public interest perspective, that the BVI positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

**The appointment of joint provisional liquidators**

7

13

30. It is essential that joint provisional liquidators be appointed over the Company immediately (without notice to it and its principals) and before the originating application is heard and determined for the following reasons:

   a. The Company continues to be under the control of Chen and his associates and as a result, they can use or continue to use it to further the criminal enterprise thereby continuing to inflict public harm.

   b. Given the serious allegations set out in this application, the sanctions imposed by the United States and the UK Government, the US Indictment, and the US Complaint, it is appropriate and necessary that provisional liquidators be appointed immediately to:

      (i) immediately take full control of the Company;

      (ii) identify and preserve its assets that may represent proceeds of crime by preventing further movement, concealment, or dissipation of those assets;

      (iii) take control of its books and records;

      (iv) conduct thorough investigations into its past transactions; and

      (v) review banking records, asset transfers, and corporate dealings to identify and locate the potential money laundering activities.

   c. The information and evidence gathered by the liquidators may provide crucial support for law enforcement authorities, both in the BVI and internationally, to apply for freezing orders, forfeiture orders, and other remedies. In this case, given that the United States has already filed a civil complaint seeking forfeiture of 127,271 Bitcoin valued at approximately US$15 billion allegedly connected to the Prince Group's criminal activities, the work of the liquidators could materially assist in tracing assets and preserving evidence relevant to that and other actions.

   d. The appointment of provisional liquidator over the Company and other BVI companies which are owned and controlled by Chen would align with the BVI's National AML/CFT Policy and its commitment to international cooperation in combating serious transnational crime.

   e. The coordinated actions taken by the US DOJ and UK Government on 14 October, 2025 signal the seriousness with which these major jurisdictions view the alleged criminal activities of the Prince Group. The appointment of provisional liquidators by this Honourable Court would demonstrate that the BVI is equally committed to ensuring that its corporate structures are not used as vehicles for serious criminality and would

8

14

facilitate cooperation with international authorities in their ongoing investigations and asset recovery efforts.

**Urgency**

31. The public announcements of the US Civil Proceedings, OFAC sanctions, and UK sanctions on 14 October 2025 together with actions taken in other jurisdictions have no doubt put Chen and his associates, who are alleged to be sophisticated criminals, on notice of the scrutiny being applied to the Prince Group network and its corporate structures.

32. The Company is likely to have received proceeds of the criminal and fraudulent activities and to have documentation that may assist in recovering the proceeds of the crime. There is a real and substantial risk that absent the immediate appointment of provisional liquidators, assets held by or through the BVI companies, including the Company will be transferred, concealed, or dissipated and documents will be destroyed or concealed. This real and substantial risk will increase once the Company is served with the originating application,

33. The appointment of provisional liquidators will immediately remove control from Chen and place the Company under the supervision and control of officers of this Court, thereby protecting the integrity of any investigation and preserving assets for the benefit of the victims of Chen and the Prince Group's fraudulent and criminal activities.

34. The appointment of joint provisional liquidators is appropriate given the number of BVI companies involved, the complexity of the alleged corporate structure spanning multiple jurisdictions, the international nature of the investigations and actions, and the need for extensive expertise in tracing assets and investigating potential money laundering activities.

**The Proposed provisional liquidators**

35. The Attorney General proposes that James Drury, a BVI licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110; and Paul Pretlove and David Standish, both UK licensed insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB be appointed as joint provisional liquidators of the Company.

9

**15**

**Conclusion**

36.     In all the circumstances, it is just and convenient and in the public's interest, that this Honourable Court grants the order which the Attorney General seeks in this application.

A draft of the order sought is attached.

This application is supported by the affidavit of Attorney General Dawn J. Smith.

The names and addresses of the persons on whom it is intended to serve the application are as follows:

This Application is filed by O'Neal Webster, Solicitors for the Applicant whose address for service is 2nd Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands. REF: NW/LG/101538.

_____                                           Dated: 2 January 2026
Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

10

16

THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/

**IN THE MATTER OF STARRY BLOOM LIMITED**

**AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.**

BETWEEN:

**THE ATTORNEY GENERAL**

Applicant

**AND**

**STARRY BLOOM LIMITED**

Respondent

---

**EX-PARTE ORDINARY APPLICATION
FOR JOINT PROVISIONAL LIQUIDATORS**

---



Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 | Fax: (284) 393 5805
www.onealwebster.com

11

17

**Case Number :BVIHCOM2026/0027**

The Insolvency Rules 2005

**ORIGINATING APPLICATION**

**(Company)**

Rule 14

**Submitted Date:05/01/2026 12:09**

**Filed Date:05/01/2026 13:39**

**Fees Paid:0.00**

FILED
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS

**THE EASTERN CARIBBEAN SUPREME COURT**
**IN THE HIGH COURT OF JUSTICE**
**VIRGIN ISLANDS**
**COMMERCIAL DIVISION**

| Matter No.: | BVIHC(COM)       of 2026 |
|---|---|
| Applicant: | **THE ATTORNEY GENERAL** |
| Respondent: | **SURE TYCOON LIMITED** |

In the matter of:

| **SURE TYCOON LIMITED** |
|---|

| For Court Use Only |
|---|
| **To: SURE TYCOON LIMITED** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands.<br><br>**This Application will be heard by the Commercial Court Judge at Road Town, Tortola**<br>**British Virgin Islands**<br>**on the              day of                    2026       at                    o'clock.**<br><br>**If you do not attend at the time shown the Court may make an order in your absence** |

The Applicant, the Attorney General of the Virgin Islands ("**Attorney General**") of TTT Building, Wickhams Cay 1, Road Town, Tortola, Virgin Islands VG1110 applies to the Court for:

1.  An order pursuant to sections 162(1) (b) and (c) of the Insolvency Act, Revised Edition 2020 ("**the Act**") that Paul Pretlove, James Drury and David Standish, be appointed as joint liquidators of Sure Tycoon Limited **("the Company")**, a company incorporated under the laws of the Virgin Islands ("BVI"). James Drury is a BVI licensed insolvency practitioner of Interpath (BVI) Limited, PO Box

1

4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110. Paul Pretlove and David Standish are United Kingdom ("UK") licensed insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB acting as overseas insolvency practitioners as defined in the Act.

2.      An order that the joint liquidators be given all powers set out in Schedule 2 of the Act, such powers to be exercisable without the sanction of the Court and such other powers as this Honourable Court deems fit.

3.      An order that the joint liquidators have the power to:

a.      consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the liquidators and the Attorney General which is attached hereto **("the Protocol")**.

b.      cooperate and communicate with law enforcement and regulatory authorities in the BVI and in other jurisdictions.

4.      An order that the costs of the liquidation, including the proper fees and disbursements of the joint liquidators and the Attorney General's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims

5.      An order that the costs of the application be costs in the liquidation.

6.      Such further order as the court deems appropriate.

The grounds upon which this order is sought are set out in the affidavit of Attorney General, Dawn J. Smith filed on 2 January 2026 and are summarised as follows:

**THE PARTIES**

1.      The Attorney General is the principal legal adviser to the Government of the Virgin Islands ("**the Government**") pursuant to section 58 of the Virgin Islands Constitution Order, 2007, and has overall responsibility for all aspects of civil litigation on behalf of the Government.

2

2. The Company was incorporated under the laws of the BVI on 21 January 2020. Its registered office is located at Vistra Corporate Services Centre **("Vistra")**, Wickhams Cay II, Road Town, Tortola, BVI, VG1110. The Company is alleged to be a member of a transnational criminal organisation that is headed by Prince Holding Group Limited **("the Prince Group"),** which is a Cambodian corporate conglomerate that comprises several companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan.

3. The chairman of the Prince Group is Chen Zhi **("Chen").** Chen is the Company's sole Director and sole Shareholder.

**BACKGROUND**

4. The background is comprehensively set out in the indictment and the verified complaint filed by the United States Department of Justice **("US DOJ")** on October 14, 2025 and in the announcement issued by the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** dated October 13, 2025. The background is summarised below.

**Action in the United States**

5. On 14 October, 2025, the United States Department of Justice **("US DOJ"),** the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** and the United Kingdom Government announced coordinated actions targeting the Prince Group.

6. The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York **("the NY District Court")** on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering **("the US Indictment").** Concurrently, the US DOJ filed a civil forfeiture complaint **("the US Complaint")** seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group. The criminal and civil proceedings will be referred to together as "**the US Proceedings**."

7. In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and

3

criminal activities including cryptocurrency investment fraud, human trafficking, money laundering, wire fraud, bank fraud, forced labour and, illegal online gambling. It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers. The scammers disappeared after taking almost every dollar they could from their victims.

8. To effectuate the schemes, it is alleged in the US Proceedings that Chen and his associates:

   a. built and operated forced-labour scam compounds across Cambodia in which workers were made to execute the scams at high volumes. The scam compounds housed vast dormitories surrounded by high walls and barbed wire, and functioned as violent forced labour camps;

   b. forced migrant workers who were – not always, but often – victims themselves of human trafficking to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

   c. frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

   d. used their political influence in multiple countries to protect their criminal enterprise; and

   e. paid bribes to foreign public officials to avoid disruption by law enforcement.

9. The indictment alleges that Chen maintained meticulous records of the compounds' operations, including ledgers of the tracking profits generated from the fraud schemes, documents detailing "phone farms" used in the schemes, and images depicting methods of beating and torture used against workers.

10. The US DOJ alleges that the schemes carried out by the Prince Group resulted in billions of dollars in losses incurred by victims in the United States and around the world. The documents in the US Proceedings allege that proceeds from these criminal activities have been laundered through

4

various means, including cryptocurrency (using "spraying" and "funneling" techniques), online gambling operations, and cryptocurrency mining operations. Chen, his associates and companies within the Prince Group, "washed" and returned the fraudulent proceeds to the Prince Group. The "washing" was done by using the Prince Group's vast network of seemingly legitimate business enterprises to launder its criminal proceeds. One common method was to collect the fraudulent proceeds in the form of bitcoin or stablecoins and then off-ramp them into conventional currencies, for example, the US dollar. The launderers then used that cash to purchase clean bitcoin or other cryptocurrencies. Chen was directly involved in coordinating these laundering efforts.

11. Chen and his associates subsequently used the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

12. On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation.  The effect of the designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them.  The targets include Chen and  the Company. The OFAC noted that:

    a.   Americans have lost at least $10 billion to Southeast Asia-based scam operations in 2024, a 66 percent increase over the prior year, with scams like those perpetrated by Prince Group being particularly significant.

    b.   The Prince Group remained a dominant player in Cambodia's scam economy and has controlled illicit financial flows of billions of dollars.

    c.   The actions taken by OFAC and Financial Crimes Enforcement Network (FinCEN) were in close coordination with the United Kingdom's Foreign, Commonwealth, and Development Office ("FCDO"), which took complementary actions against criminal networks responsible for targeting citizens of the United States and other allied nations through online scams and the laundering of stolen funds.

5

**Action in the UK**

13.     On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group.  In doing so it noted that Chen and his associates have incorporated companies in the BVI and own properties in London, including a £12 million mansion on Avenue Road in North London, a £100 million office building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and Nine Elms in South London.

14.     The Foreign Secretary Yvette Cooper stated that:

> *"The masterminds behind these horrific scam centres are ruining the lives of vulnerable people and buying up London homes to store their money.*
>
> *Together with our US allies, we are taking decisive action to combat the growing transnational threat posed by this network – upholding human rights, protecting British nationals and keeping dirty money off our streets."*

15.     The Fraud Minister Lord Hanson said:

> *"These sanctions prove our determination to stop those who profit from this activity, hold offenders accountable, and keep dirty money out of the UK. Through our new, expanded Fraud Strategy and the upcoming Global Fraud Summit, we will go even further to disrupt corrupt networks and protect the public from shameless criminals."*

16.     The effect of these sanctions is to prevent the transfer of these properties, freeze any business in which Chen and the Prince Group are involved and lock Chen and the Prince Group transnational criminal network out of the UK's financial system.

**Action in other jurisdictions**

17.     News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen,  the Prince Group, and its related entities and companies.  These actions are set out in paragraphs 19 to 22 below. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the global response to combat transnational organised crime.

*Singapore*

18.     On 31 October, 2025, Singapore police announced that they had seized over $150 million

6

(approximately US$115 million) in assets linked to the Prince Group. The seized assets include six properties, bank accounts, securities accounts, and cash which are said to represent the proceeds of money laundering and forgery offences committed by Chen and the Prince Group. According to the Monetary Authority of Singapore (MAS), financial institutions had previously filed suspicious transaction reports, and a number of suspicious accounts had been closed. The Singapore Police Force stated that investigations into Chen and his associates commenced in 2024 after it received intelligence from the Suspicious Transaction Reporting Office (STR).

### Hong Kong

19.     On 4 November, 2025, Hong Kong authorities announced that they had frozen assets worth HK$2.75 billion (approximately US$354 million), which, based on intelligence and information gathered from multiple sources, are suspected to represent proceeds of international cross-border telecommunications fraud and money laundering activities committed by the Prince Group. The frozen assets include cash, stocks, and funds held by individuals and corporate entities.  At least 18 Hong Kong companies were blacklisted by the United States in connection with the Prince Group, including two listed companies - "*Khoon Group and Geotech Holdings".*

### Taiwan

20.     On 4 November, 2025, Taiwanese prosecutors announced that they had detained 25 individuals and seized T$4.5 billion (approximately US$147 million) in assets tied to the Prince Group. The seized assets include 26 high-end cars, properties, and bank accounts tied to the network and to Chen in relation to money laundering and forced labour offences.

### Thailand

21.     On 3 December, 2025, the Thai authorities announced that they had seized assets worth more than 10,157 million baht (approximately US$318 million) and issued arrest warrants for 42 individuals linked to transnational online scam operations connected to Chen and Cambodian nationals Kok An and Yim Leak. As of 3 December, 2025, 29 individuals had been arrested. The seizures include shares in Bangchak Corporation Limited worth 6 billion baht (approximately US$188 million). Thailand's Anti-Money Laundering Office (AMLO) stated that investigators had found "*information on networks of online fraud, human trafficking, and money-laundering*" that were linked to Chen and his associates.

**The effect of the multi-jurisdictional actions**

22.    These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating transnational organised crime, human trafficking, forced labour, and large-scale financial fraud. The scale and coordination of these actions across at least six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network

23.    In total, as of 9 December, 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The role of BVI companies**

24.    The OFAC has determined that the BVI companies form part of a complex network of holding companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

25.    In the US Complaint, the US DOJ alleged that Chen and his associates also laundered fraudulent proceeds through several companies including companies in the BVI which are under their control.  It alleged further that these companies do not serve any real purpose other than to launder funds. Two BVI Companies were named in the US Proceedings - Amber Hill Ventures Limited **("Amber Hill")** and Lateral Bridge Global Limited **("LBG")**.

26.    Amber Hill and LBG are said to be controlled by two of Chen's associates, who are also defendants in the US Civil Proceedings. The US Complaint discloses that personnel from the Federal Bureau of Investigation ("FBI") have conducted extensive blockchain tracing to analyse the movements of the Prince Group's cryptocurrency.  The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin which the US DOJ seeks to forfeit flowed through wallets which were controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

8

27.    It is also alleged that Amber Hill had a banking relationship with a financial institution in the United States. It was recorded in the account opening documents with that financial institution that Amber Hill's business activities consisted of "*[p]roprietary trading and investing*," and its anticipated deposit and withdrawal activity would be approximately $2 million each. However, according to account statements, in February 2020, Amber Hill's account with that financial institution had approximately $22.5 million in deposits and $21.8 million in withdrawals. Amber Hill was struck from the register and dissolved on 10 November, 2023.

**THE APPLICATION**

28.    The Application is made by the Attorney General on the ground that (i) it is just and equitable that joint liquidators be appointed over the Company pursuant to section 162 (1) (b) of the Act and (ii) it is in the public interest that the joint liquidators are appointed pursuant to section 162 (1) (c) of the Act.

**Just and equitable ground**

29.    Section 162(1)(b) of the Insolvency Act, 2003 provides that the Court may appoint a liquidator of a company if "the Court is of the opinion that it is just and equitable that the company should be liquidated."

30.    The Attorney General is listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(b) of the Act.

31.    It is just and equitable that the Company should be placed into liquidation for the following reasons:

    a.    Available records reveal that Chen is the Company's sole Director and sole Shareholder. Chen is alleged to be the mastermind of the Prince Group.  He has been criminally indicted in the United States and is subject to personal sanctions by both the United States and the United Kingdom.

    b.    The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities, to include forced labour, human trafficking, large-scale fraud, and money laundering on a massive international scale.

9

c.      The BVI companies including the Company are alleged to have been established and operated to assist Chen and the Prince Group which has defrauded numerous vulnerable victims of billions of US dollars.

d.      Despite the enforcement actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on the allegations is free to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

e.      The activities of some of the companies in the Prince Group have been the subject of civil and criminal enforcement actions in multiple jurisdictions, with authorities in six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

f.      The Company is alleged to be a shell company which was used solely as a vehicle for the fraudulent scheme.

g.      The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf, and identify potential claims against third parties.

h.      The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

i.      Independent liquidators are necessary to ensure proper coordination with regulatory and law enforcement authorities and liquidators, trustees, or receivers appointed in the BVI and other jurisdictions, given the multi-jurisdictional nature of the scheme and the actions taken by various authorities in several jurisdictions.

j.      Independent liquidators would enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed as part of a collective process.

k.      Given the fraudulent nature of the scheme, there are likely to be voidable transactions, preferences, and other claims that independent liquidators could pursue for the benefit of the victims and creditors.

32.     Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that its affairs are properly investigated and wound up under the supervision of this Honourable Court.

10

**Public Interest ground**

33.    Section 162(1)(c) of the Act gives the Court the discretion to appoint a liquidator of a company if it is of the opinion that it is in the public interest for a liquidator to be appointed.

34.    The Attorney General is also listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(c) of the Act.

35.    The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

36.    BVI companies including, the Company are alleged to have been used as vehicles in what has been described by international law enforcement authorities as one of the largest fraudulent investment schemes in recent history.  The scheme has caused billions of dollars in losses to victims worldwide and involved egregious human rights abuses.  They are alleged to have been used to launder and/or hold the proceeds of the horrific crimes committed by Chen and his associates, including human trafficking, forced labour, aggravated identity theft, international fraud designed to scam unsuspecting victims of their lifesavings and money laundering.  These criminal and fraudulent activities are inherently objectionable and are contrary to clearly identifiable public interest.

37.    The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the BVI as a financial centre and threatens confidence in BVI incorporated companies and the BVI's regulatory framework.

38.    The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for fraudulent purposes.

39.    The appointment of liquidators will:
    a.    facilitate cooperation with enforcement authorities, regulators, and insolvency practitioners in the BVI and other jurisdictions, demonstrating the BVI's commitment to international cooperation in combating financial fraud;

11

b.      ensure that the Company's affairs are properly investigated and that appropriate steps are taken to recover assets and maximise returns to defrauded investors;

c.      enable a proper investigation into how the Company was used in the fraudulent scheme, which may assist in preventing similar schemes in the future.

40.      Given that enforcement authorities in at least six countries have taken action and frozen or seized assets valued at over US$16 billion, it is in the public interest that BVI as the jurisdiction of incorporation of the Company, takes prompt and decisive action through the appointment of liquidators.

41.     The scale of this fraud and the international coordination of related actions make it imperative, from a public interest perspective, that the BVI positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

42.     In all the circumstances, it is not only just and equitable but also in the public interest that Joint liquidators be appointed over the Company to prevent it from being used to further Chen's and the Prince Group's criminal enterprise.

43.     If appointed, the joint liquidators would be able to take control of the Company, take the necessary steps in the BVI or overseas to secure and preserve its books and records and secure its assets for the benefit of the victims of the crimes perpetuated by the Prince Group. As officers of the court, they would also be able to independently investigate claims against the Company, marshal records, ensure that the Company complies with BVI laws and regulations and respond to any court process.

**Proposed liquidators**

44.     Mr. James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110, Mr. Paul Pretlove and Mr. David Standish, both of Interpath Ltd, 10 Fleet Place, London EC4M 7RB who to the best of the Applicant's knowledge and belief are eligible insolvency practitioners have all consented to be appointed as joint liquidators of the Company.

12

45.    In the circumstances, it is just and equitable and in the public's interest to grant the order which the Attorney General seeks, for the appointment of joint liquidators over the Company.

A draft of the order sought is attached.

This application is supported by the affidavit of Attorney General Dawn J Smith.

The names and addresses of the persons on whom it is intended to serve the application are as follows:

**Sure Tycoon Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

The names and addresses of the persons required to be given notice of this application pursuant to the Act and the Rules (if any) are as follows:

**Sure Tycoon Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

This Application is filed by O'Neal Webster, Solicitors for the Applicant, whose address for service is 2nd

Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands. REF:101538

_____          Dated: 2nd January, 2026
Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

13

THE EASTERN CARIBBEAN SUPREME

COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/

**IN THE MATTER OF SURE TYCOON LIMITED**

**AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS**

BETWEEN:

**THE ATTORNEY GENERAL**

Applicant

**AND**

**SURE TYCOON LIMITED**

Respondent

_____

**ORIGINATING APPLICATION**

_____



Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 l Fax: (284) 393 5805
www.onealwebster.com

14

**Case Number :BVIHCOM2026/0027**

The Insolvency Rules 2005

**ORDINARY APPLICATION (EX-PARTE)**

**(Company)**

Rule 14

**Submitted Date:05/01/2026 12:08**

**Filed Date:05/01/2026 13:39**

**Fees Paid:0.00**

FILED
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS

| | |
|---|---|
| **THE EASTERN CARIBBEAN SUPREME COURT**<br>**IN THE HIGH COURT OF JUSTICE**<br>**VIRGIN ISLANDS**<br>**COMMERCIAL DIVISION** | |
| Matter No.: | BVIHC(COM)      of 2026 |
| Applicant: | **THE ATTORNEY GENERAL** |
| Respondent: | **SURE TYCOON LIMITED** |

In the matter of:

| |
|---|
| **SURE TYCOON LIMITED** |

| |
|---|
| For Court Use Only |
| **To:  SURE TYCOON LIMITED,** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands. |
| **This Application will be heard by the Commercial Court Judge at Road Town, Tortola British Virgin Islands** |
| **on the            day of                      2026      at                 o'clock.** |
| **If you do not attend at the time shown the Court may make an order in your absence** |

We, O'Neal Webster, on behalf of the Applicant, **the Attorney General of the Virgin Islands ("the Attorney General")**, apply pursuant to section 170 of the Insolvency Act 2003 (the "Act") for the following orders that:

1.   James Drury,  a Virgin Islands ("BVI") licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola,  Virgin Islands, VG1110; and Paul Pretlove and David Standish both United Kingdom ("UK") licensed insolvency

1

practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB to be appointed as joint provisional liquidators of Sure Tycoon Limited **("the Company")** with immediate effect.

2.  The powers afforded to the said joint provisional liquidators shall be as set out in Schedule 2 of the Act as varied by Schedule 3, and as further varied by this Order.

3.  An order that the joint provisional liquidators have the power to:

    a.  consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the joint provisional liquidators and the Attorney General which is attached hereto **("the Protocol")**.

    b.  cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4.  An order that the costs of the liquidation, including the proper fees and disbursements of the joint liquidators, the Attorney General's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

5.  An order that the costs of the application be costs in the liquidation.

6.  Such further order as the court deems appropriate.

A draft of the order sought is attached.

The grounds upon which this order is sought are set out in the affidavit of the Attorney General Dawn J. Smith filed on 2 January 2026, but in brief are as follows:

**Introduction**

1.  There are good prima facie reasons as set out in the originating application for the eventual appointment of full liquidators on the grounds of public interest and on the grounds that it is just and equitable that they be appointed over the Company.  A summary of these reasons is set out below.

2

**The Company and the Prince Group**

2.     The Company was incorporated under the laws of the Virgin Islands **("BVI")** on 21 January , 2020. Its registered office is located at Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, BVI, VG1110. The sole shareholder and director of the Company is Chen Zhi, **("Chen").**

3.     The Company is alleged to be a member of a transnational criminal organisation that is headed by the Prince Holding Group **("the Prince Group")** which is a Cambodian corporate conglomerate comprised of several  companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan. Chen is the mastermind of the Prince Group's transnational criminal organisation and its chairman.

**Action in the USA and other jurisdictions**

4.     On 14 October, 2025, the United States Department of Justice **("US DOJ"),** the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** and the United Kingdom Government announced coordinated  actions targeting the Prince Group.

5.     The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York **("the NY District Court")** on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering **("the US Indictment").** Concurrently, the US DOJ filed a civil forfeiture complaint **("the US Complaint")** seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group.  The criminal and civil proceedings will be referred together as the "**the US Proceedings**".

6.     On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation.  The effect of this designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them.  The targets include Chen and the Company.

7.     On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group. In doing so it noted that Chen and his associates have incorporated companies in the BVI and own properties in London including a £12 million mansion on Avenue Road in North London, a £100 million office

3

building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and in Nine Elms in South London.

8. News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen, the Prince Group, and its related entities and companies. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the coordinated global response to combat transnational organised crime.

9. These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating transnational organised crime, human trafficking, forced labour, and large-scale financial fraud. The scale and coordination of these actions across six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network.

10. In total, as of 9 December 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand) have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The allegation against Chen, his associates and companies within the Prince Group**

11. In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and criminal activities including cryptocurrency investment fraud, human trafficking, money laundering, wire fraud, bank fraud, forced labour and, illegal online gambling. It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers. The scammers disappeared after taking almost every dollar they could from their victims.

12. The US DOJ also alleges that the fraudulent activities carried out by the Prince Group resulted in billions of dollars in losses incurred by victims in the United States and around the world. Chen

4

and his associates are alleged to use the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

13.  To effectuate their fraudulent schemes, it is alleged in the US Proceedings that Chen and his associates:

   a.  forced migrant workers who were – not always, but often – victims themselves of human trafficking, to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

   b.  frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

   c.  used their political influence in multiple countries to protect their criminal enterprise; and

   d.  paid bribes to foreign public officials to avoid disruption by law enforcement.

**The role of BVI Companies in the Prince Group**

14.  The OFAC determined that the BVI companies form part of a complex network of companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

15.  In the US complaint, the US DOJ alleged that Chen and his associates laundered the fraudulent proceeds of their crime through several companies in the BVI, Cayman, Cambodia and Hong Kong, which are under their control. It alleged further that these companies do not serve any real purpose other than to launder the proceeds of their criminal and fraudulent activities. Two BVI Companies are named in the US Complaint - Amber Hill Ventures Limited ("**Amber Hill**") and Lateral Bridge Global Limited **("LBG")**.

16.  The US Complaint discloses that personnel from the Federal Bureau of Investigation ("FBI") have conducted extensive blockchain tracing to analyse the movements of the Prince Group's cryptocurrency.  The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin

5

which the US DOJ seeks to forfeit flowed through wallets which were controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

**It is just and equitable that liquidators be appointed over the Company**

17.    The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities to include forced labour, human trafficking, large-scale fraud, and money laundering on a massive international scale.

18.    The activities of some of the companies in the Prince Group have been the subject of civil and criminal actions in multiple jurisdictions, with authorities in at least six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

19.    The BVI companies including the Company are alleged to have been established and operated to assist Chen and the Prince Group which has defrauded numerous vulnerable victims of billions of US dollars.

20.    Despite the  actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on allegations is free to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

21.    The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf for the benefit of the victims of the fraud; and to identify potential claims against third parties.

22.    The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

23.    Independent liquidators are necessary to ensure proper coordination with regulatory and enforcement authorities and liquidators, trustees, or receivers appointed in the Virgin Islands and other jurisdictions, given the multi-jurisdictional nature of the scheme and the  actions.

6

Independent liquidators would also enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed.

24.     Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that its affairs are properly investigated and wound up under the supervision of this Honourable Court.

**It is in the public interest that liquidators be appointed over the Company**

25.     The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

26.     The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the Virgin Islands as a financial centre and threatens confidence in BVI companies and the BVI's regulatory framework.

27.     The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for nefarious purposes and with its commitment to international cooperation and combating serious transnational crime.

28.     Given that regulatory and law enforcement authorities in at least six countries have taken action and frozen or seized assets valued at over US$16 billion, it is in the public interest that the BVI as the jurisdiction of incorporation of the Company takes prompt and decisive action through the appointment of liquidators.

29.     The scale of this fraud and the international coordination of actions make it imperative, from a public interest perspective, that the BVI  positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

**The appointment of joint provisional liquidators**

30.     It is essential that joint provisional liquidators be appointed over the Company immediately (without notice to it and its principals) and before the originating application is heard and

7

determined for the following reasons:

a.   The Company continues to be under the control of Chen and his associates and as a result, they can  use or continue to use it to further the criminal enterprise thereby continuing to inflict public harm.

b.   Given the serious allegations set out in this application, the sanctions imposed by the United States and the UK Government,  the US Indictment, and the US Complaint, it is appropriate and necessary that provisional liquidators be appointed immediately to:

   (i)      immediately take full control of the Company;

   (ii)     identify and preserve its assets that may represent proceeds of crime by preventing further movement, concealment, or dissipation of those assets;

   (iii)    take control of its books and records;

   (iv)    conduct thorough investigations into its past transactions; and

   (v)     review banking records, asset transfers, and corporate dealings to identify and locate the potential money laundering activities.

c.   The information and evidence gathered by the liquidators may provide crucial support for law enforcement authorities, both in the BVI and internationally, to apply for freezing orders, forfeiture orders, and other remedies. In this case, given that the United States has already filed a civil complaint seeking forfeiture of 127,271 Bitcoin valued at approximately US$15 billion allegedly connected to the Prince Group's criminal activities, the work of the liquidators could materially assist in tracing assets and preserving evidence relevant to that and other  actions.

d.   The appointment of provisional liquidator over the Company and other BVI companies which are owned and controlled by Chen would align with the BVI's National AML/CFT Policy and its commitment to international cooperation in combating serious transnational crime.

e.   The coordinated  actions taken by the US DOJ and UK Government on 14 October, 2025 signal the seriousness with which these major jurisdictions view the alleged criminal activities of the Prince Group. The appointment of provisional liquidators by this Honourable Court would demonstrate that the BVI is equally committed to ensuring that its corporate structures are not used as vehicles for serious criminality and would facilitate cooperation with international authorities in their ongoing investigations and asset recovery efforts.

8

**Urgency**

31. The public announcements of the US Civil Proceedings, OFAC sanctions, and UK sanctions on 14 October 2025 together with actions taken in other jurisdictions have no doubt put Chen and his associates, who are alleged to be sophisticated criminals, on notice of the scrutiny being applied to the Prince Group network and its corporate structures.

32. The Company is likely to have received proceeds of the criminal and fraudulent activities and to have documentation that may assist in recovering the proceeds of the crime. There is a real and substantial risk that absent the immediate appointment of provisional liquidators, assets held by or through the BVI companies, including the Company will be transferred, concealed, or dissipated and documents will be destroyed or concealed. This real and substantial risk will increase once the Company is served with the originating application,

33. The appointment of provisional liquidators will immediately remove control from Chen and place the Company under the supervision and control of officers of this Court, thereby protecting the integrity of any investigation and preserving assets for the benefit of the victims of Chen and the Prince Group's fraudulent and criminal activities.

34. The appointment of joint provisional liquidators is appropriate given the number of BVI companies involved, the complexity of the alleged corporate structure spanning multiple jurisdictions, the international nature of the investigations and actions, and the need for extensive expertise in tracing assets and investigating potential money laundering activities.

**The Proposed provisional liquidators**

35. The Attorney General proposes that James Drury,  a BVI licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110; and Paul Pretlove and David Standish, both UK licensed insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB be appointed as joint provisional liquidators of the Company.

**Conclusion**

9

36.     In all the circumstances, it is just and convenient and in the public's interest, that this Honourable Court grants the order which the Attorney General seeks in this application.

A draft of the order sought is attached.

This application is supported by the affidavit of Attorney General Dawn J. Smith.

The names and addresses of the persons on whom it is intended to serve the application are as follows:

This Application is filed by O'Neal Webster, Solicitors for the Applicant whose address for service is 2nd Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands. REF: NW/LG/101538.

_____                                    Dated: 2nd January 2026

Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

10

THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/

**IN THE MATTER OF SURE TYCOON LIMITED**

**AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS**.

BETWEEN:

**THE ATTORNEY GENERAL**

Applicant

**AND**

**SURE TYCOON LIMITED**

Respondent

_____

**EX-PARTE ORDINARY APPLICATION
FOR JOINT PROVISIONAL LIQUIDATORS**
_____



Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 l Fax: (284) 393 5805
www.onealwebster.com

11

**Case Number :BVIHCOM2026/0029**

The Insolvency Rules 2005

**ORIGINATING APPLICATION**

**(Company)**

Rule 14

**Submitted Date:05/01/2026 12:18**

**Filed Date:05/01/2026 13:40**

**Fees Paid:0.00**

**FILED
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS**

| | |
|---|---|
| **THE EASTERN CARIBBEAN SUPREME COURT** **IN THE HIGH COURT OF JUSTICE** **VIRGIN ISLANDS** **COMMERCIAL DIVISION** | |
| Matter No.: | BVIHC(COM)        of 2026 |
| Applicant: | **THE ATTORNEY GENERAL** |
| Respondent: | **TOWARDS SUNSHINE LIMITED** |

In the matter of:

| |
|---|
| **TOWARDS SUNSHINE LIMITED** |

| |
|---|
| For Court Use Only |
| **To: TOWARDS SUNSHINE LIMITED** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands. |
| **This Application will be heard by the Commercial Court Judge at Road Town, Tortola** **British Virgin Islands** **on the            day of                        2026      at                o'clock.** |
| **If you do not attend at the time shown the Court may make an order in your absence** |

The Applicant, the Attorney General of the Virgin Islands ("**Attorney General**") of TTT Building, Wickhams Cay 1, Road Town, Tortola, Virgin Islands VG1110 applies to the Court for:

1.  An order pursuant to sections 162(1) (b) and (c) of the Insolvency Act, Revised Edition 2020 ("**the Act**") that Paul Pretlove, James Drury and David Standish, be appointed as joint liquidators of Towards Sunshine Limited **("the Company")**, a company incorporated under the laws of the Virgin Islands ("BVI"). James Drury is a BVI licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands,

1

VG1110. Paul Pretlove and David Standish are United Kingdom ("UK") licensed insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB acting as overseas insolvency practitioners as defined in the Act.

2.  An order that the joint liquidators be given all powers set out in Schedule 2 of the Act, such powers to be exercisable without the sanction of the Court and such other powers as this Honourable Court deems fit.

3.  An order that the joint liquidators have the power to:

    a.  consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the liquidators and the AG which is attached hereto **("the Protocol")**.

    b.  cooperate and communicate with law enforcement and regulatory authorities in the BVI and in other jurisdictions.

4.  An order that the costs of the liquidation, including the proper fees and disbursements of the joint liquidators and the Attorney General's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims

5.  An order that the costs of the application be costs in the liquidation.

6.  Such further order as the court deems appropriate.


The grounds upon which this order is sought are set out in the affidavit of Attorney General, Dawn J. Smith filed on 2 January 2026 and are summarised as follows:


**THE PARTIES**

1.  The Attorney General is the principal legal adviser to the Government of the Virgin Islands ("**the Government**") pursuant to section 58 of the Virgin Islands Constitution Order, 2007, and has overall responsibility for all aspects of civil litigation on behalf of the Government.

2

2.    The Company was incorporated under the laws of the BVI on 8 February 2018. Its registered office is located at Vistra Corporate Services Centre **("Vistra")**, Wickhams Cay II, Road Town, Tortola, BVI, VG1110. The Company is alleged to be a member of a transnational criminal organisation that is headed by Prince Holding Group Limited **("the Prince Group"),** which is a Cambodian corporate conglomerate that comprises several companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan.

3.    The chairman of the Prince Group is Chen Zhi **("Chen").** Chen is the Company's sole Director. The Company's sole Shareholder is Prince Group Holdings Limited, a Hong Kong company. Prince Global Group Limited holds 100% of the shareholding in Prince Group Holdings Limited. Chen is Prince Global Group Limited's sole shareholder.

**BACKGROUND**

4.    The background is comprehensively set out in the indictment and the verified complaint filed by the United States Department of Justice **("US DOJ")** on October 14, 2025 and in the announcement issued by the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** dated October 13, 2025. The background is summarised below.

**Action in the United States**

5.    On 14 October, 2025, the United States Department of Justice **("US DOJ"),** the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** and the United Kingdom Government announced coordinated actions targeting the Prince Group.

6.    The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York **("the NY District Court")** on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering **("the US Indictment").** Concurrently, the US DOJ filed a civil forfeiture complaint **("the US Complaint")** seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group. The criminal and civil proceedings will be referred to together as "**the US Proceedings**."

3

7.    In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and criminal activities including cryptocurrency investment fraud, human trafficking, money laundering, wire fraud, bank fraud, forced labour and, illegal online gambling.  It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers.  The scammers disappeared after taking almost every dollar they could from their victims.

8.    To effectuate the schemes, it is alleged in the US Proceedings that Chen and his associates:

a.    built and operated forced-labour scam compounds across Cambodia in which workers were made to execute the scams at high volumes. The scam compounds housed vast dormitories surrounded by high walls and barbed wire, and functioned as violent forced labour camps;

b.    forced migrant workers who were – not always, but often – victims themselves of human trafficking to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

c.    frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

d.    used their political influence in multiple countries to protect their criminal enterprise; and

e.    paid bribes to foreign public officials to avoid disruption by law enforcement.

9.    The indictment alleges that Chen maintained meticulous records of the compounds' operations, including ledgers of the tracking profits generated from the fraud schemes, documents detailing "phone farms" used in the schemes, and images depicting methods of beating and torture used against workers.

10.    The US DOJ alleges that the schemes carried out by the Prince Group resulted in billions of dollars in losses incurred by victims in the United States and around the world. The documents in the US

4

Proceedings allege that proceeds from these criminal activities have been laundered through various means, including cryptocurrency (using "spraying" and "funneling" techniques), online gambling operations, and cryptocurrency mining operations. Chen, his associates and companies within the Prince Group, "washed" and returned the fraudulent proceeds to the Prince Group. The "washing" was done by using the Prince Group's vast network of seemingly legitimate business enterprises to launder its criminal proceeds. One common method was to collect the fraudulent proceeds in the form of bitcoin or stablecoins and then off-ramp them into conventional currencies, for example, the US dollar. The launderers then used that cash to purchase clean bitcoin or other cryptocurrencies. Chen was directly involved in coordinating these laundering efforts.

11.     Chen and his associates subsequently used the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

12.     On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation.  The effect of the designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them.  The targets include Chen and the Company. The OFAC noted that:

a.     Americans have lost at least $10 billion to Southeast Asia-based scam operations in 2024, a 66 percent increase over the prior year, with scams like those perpetrated by Prince Group being particularly significant.

b.     The Prince Group remained a dominant player in Cambodia's scam economy and has controlled illicit financial flows of billions of dollars.

c.     The actions taken by OFAC and Financial Crimes Enforcement Network (FinCEN) were in close coordination with the United Kingdom's Foreign, Commonwealth, and Development Office ("FCDO"), which took complementary actions against criminal networks responsible for targeting citizens of the United States and other allied nations through online scams and the laundering of stolen funds.

5

**Action in the UK**

13.    On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group.  In doing so it noted that Chen and his associates have incorporated companies in the BVI and own properties in London, including a £12 million mansion on Avenue Road in North London, a £100 million office building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and Nine Elms in South London.

14.    The Foreign Secretary Yvette Cooper stated that:

> "*The masterminds behind these horrific scam centres are ruining the lives of vulnerable people and buying up London homes to store their money.*
>
> *Together with our US allies, we are taking decisive action to combat the growing transnational threat posed by this network – upholding human rights, protecting British nationals and keeping dirty money off our streets.*"

15.    The Fraud Minister Lord Hanson said:

> "*These sanctions prove our determination to stop those who profit from this activity, hold offenders accountable, and keep dirty money out of the UK. Through our new, expanded Fraud Strategy and the upcoming Global Fraud Summit, we will go even further to disrupt corrupt networks and protect the public from shameless criminals.*"

16.    The effect of these sanctions is to prevent the transfer of these properties, freeze any business in which Chen and the Prince Group are involved and lock Chen and the Prince Group transnational criminal network out of the UK's financial system.

**Action in other jurisdictions**

17.    News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen,  the Prince Group, and its related entities and companies.  These actions are set out in paragraphs 19 to 22 below. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the global response to combat transnational organised crime.

*Singapore*

18.    On 31 October, 2025, Singapore police announced that they had seized over $150 million (approximately US$115 million) in assets linked to the Prince Group. The seized assets include six

6

properties, bank accounts, securities accounts, and cash which are said to represent the proceeds of money laundering and forgery offences committed by Chen and the Prince Group. According to the Monetary Authority of Singapore (MAS), financial institutions had previously filed suspicious transaction reports, and a number of suspicious accounts had been closed. The Singapore Police Force stated that investigations into Chen and his associates commenced in 2024 after it received intelligence from the Suspicious Transaction Reporting Office (STR).

### Hong Kong

19.      On 4 November, 2025, Hong Kong authorities announced that they had frozen assets worth HK$2.75 billion (approximately US$354 million), which, based on intelligence and information gathered from multiple sources, are suspected to represent proceeds of international cross-border telecommunications fraud and money laundering activities committed by the Prince Group. The frozen assets include cash, stocks, and funds held by individuals and corporate entities.  At least 18 Hong Kong companies were blacklisted by the United States in connection with the Prince Group, including two listed companies - *"Khoon Group and Geotech Holdings".*

### Taiwan

20.     On 4 November, 2025, Taiwanese prosecutors announced that they had detained 25 individuals and seized T$4.5 billion (approximately US$147 million) in assets tied to the Prince Group. The seized assets include 26 high-end cars, properties, and bank accounts tied to the network and to Chen in relation to money laundering and forced labour offences.

### Thailand

21.     On 3 December, 2025, the Thai authorities announced that they had seized assets worth more than 10,157 million baht (approximately US$318 million) and issued arrest warrants for 42 individuals linked to transnational online scam operations connected to Chen and Cambodian nationals Kok An and Yim Leak. As of 3 December, 2025, 29 individuals had been arrested. The seizures include shares in Bangchak Corporation Limited worth 6 billion baht (approximately US$188 million). Thailand's Anti-Money Laundering Office (AMLO) stated that investigators had found "*information on networks of online fraud, human trafficking, and money-laundering*" that were linked to Chen and his associates.

7

**The effect of the multi-jurisdictional actions**

22.    These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating transnational organised crime, human trafficking, forced labour, and large-scale financial fraud. The scale and coordination of these actions across at least six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network

23.    In total, as of 9 December, 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The role of BVI companies**

24.    The OFAC has determined that the BVI companies form part of a complex network of holding companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

25.    In the US Complaint, the US DOJ alleged that Chen and his associates also laundered fraudulent proceeds through several companies including companies in the BVI which are under their control.  It alleged further that these companies do not serve any real purpose other than to launder funds. Two BVI Companies were named in the US Proceedings - Amber Hill Ventures Limited **("Amber Hill")** and Lateral Bridge Global Limited **("LBG")**.

26.    Amber Hill and LBG are said to be controlled by two of Chen's associates, who are also defendants in the US Civil Proceedings. The US Complaint discloses that personnel from the Federal Bureau of Investigation ("FBI") have conducted extensive blockchain tracing to analyse the movements of the Prince Group's cryptocurrency.  The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin which the US DOJ seeks to forfeit flowed through wallets which were controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

8

27.    It is also alleged that Amber Hill had a banking relationship with a financial institution in the United States. It was recorded in the account opening documents with that financial institution that Amber Hill's business activities consisted of "*[p]roprietary trading and investing*," and its anticipated deposit and withdrawal activity would be approximately $2 million each. However, according to account statements, in February 2020, Amber Hill's account with that financial institution had approximately $22.5 million in deposits and $21.8 million in withdrawals. Amber Hill was struck from the register and dissolved on 10 November, 2023.

**THE APPLICATION**

28.    The Application is made by the Attorney General on the ground that (i) it is just and equitable that joint liquidators be appointed over the Company pursuant to section 162 (1) (b) of the Act and (ii) it is in the public interest that the joint liquidators are appointed pursuant to section 162 (1) (c) of the Act.

**Just and equitable ground**

29.    Section 162(1)(b) of the Insolvency Act, 2003 provides that the Court may appoint a liquidator of a company if "the Court is of the opinion that it is just and equitable that the company should be liquidated."

30.    The Attorney General is listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(b) of the Act.

31.    It is just and equitable that the Company should be placed into liquidation for the following reasons:

   a.    Available records reveal that Chen is the Company's sole Director. The Company's sole Shareholder is Prince Group Holdings Limited, a Hong Kong company. Prince Global Group Limited holds 100% of the shareholding in Prince Group Holdings Limited. Chen is Prince Global Group Limited's sole shareholder.Chen is alleged to be the mastermind of the Prince Group.  He has been criminally indicted in the United States and is subject to personal sanctions by both the United States and the United Kingdom.

   b.    The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific

9

criminal activities, to include forced labour, human trafficking, large-scale fraud, and money laundering on a massive international scale.

c.    The BVI companies including the Company are alleged to have been established and operated to assist Chen and the Prince Group which has defrauded numerous vulnerable victims of billions of US dollars.

d.    Despite the enforcement actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on the allegations is free to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

e.    The activities of some of the companies in the Prince Group have been the subject of civil and criminal enforcement actions in multiple jurisdictions, with authorities in six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

f.    The Company is alleged to be a shell company which was used solely as a vehicle for the fraudulent scheme.

g.    The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf, and identify potential claims against third parties.

h.    The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

i.    Independent liquidators are necessary to ensure proper coordination with regulatory and law enforcement authorities and liquidators, trustees, or receivers appointed in the BVI and other jurisdictions, given the multi-jurisdictional nature of the scheme and the actions taken by various authorities in several jurisdictions.

j.    Independent liquidators would enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed as part of a collective process.

k.    Given the fraudulent nature of the scheme, there are likely to be voidable transactions, preferences, and other claims that independent liquidators could pursue for the benefit of the victims and creditors.

32.    Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is

10

manifestly just and equitable that the Company should be placed into liquidation to ensure that its affairs are properly investigated and wound up under the supervision of this Honourable Court.

**Public Interest ground**

33. Section 162(1)(c) of the Act gives the Court the discretion to appoint a liquidator of a company if it is of the opinion that it is in the public interest for a liquidator to be appointed.

34. The Attorney General is also listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(c) of the Act.

35. The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

36. BVI companies including, the Company are alleged to have been used as vehicles in what has been described by international law enforcement authorities as one of the largest fraudulent investment schemes in recent history. The scheme has caused billions of dollars in losses to victims worldwide and involved egregious human rights abuses. They are alleged to have been used to launder and/or hold the proceeds of the horrific crimes committed by Chen and his associates, including human trafficking, forced labour, aggravated identity theft, international fraud designed to scam unsuspecting victims of their lifesavings and money laundering. These criminal and fraudulent activities are inherently objectionable and are contrary to clearly identifiable public interest.

37. The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the BVI as a financial centre and threatens confidence in BVI incorporated companies and the BVI's regulatory framework.

38. The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for fraudulent purposes.

39. The appointment of liquidators will:

11

a.      facilitate cooperation with enforcement authorities, regulators, and insolvency practitioners in the BVI and other jurisdictions, demonstrating the BVI's commitment to international cooperation in combating financial fraud;

b.      ensure that the Company's affairs are properly investigated and that appropriate steps are taken to recover assets and maximise returns to defrauded investors;

c.      enable a proper investigation into how the Company was used in the fraudulent scheme, which may assist in preventing similar schemes in the future.

40.      Given that enforcement authorities in at least six countries have taken action and frozen or seized assets valued at over US$16 billion, it is in the public interest that BVI as the jurisdiction of incorporation of the Company, takes prompt and decisive action through the appointment of liquidators.

41.      The scale of this fraud and the international coordination of related actions make it imperative, from a public interest perspective, that the BVI positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

42.      In all the circumstances, it is not only just and equitable but also in the public interest that Joint liquidators be appointed over the Company to prevent it from being used to further Chen's and the Prince Group's criminal enterprise.

43.      If appointed, the joint liquidators would be able to take control of the Company, take the necessary steps in the BVI or overseas to secure and preserve its books and records and secure its assets for the benefit of the victims of the crimes perpetuated by the Prince Group. As officers of the court, they would also be able to independently investigate claims against the Company, marshal records, ensure that the Company complies with BVI laws and regulations and respond to any court process.

**Proposed liquidators**

44.      Mr. James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110, Mr. Paul Pretlove and Mr. David Standish, both of Interpath Ltd, 10 Fleet Place, London EC4M 7RB who to the best of the

12

Applicant's knowledge and belief are eligible insolvency practitioners have all consented to be appointed as joint liquidators of the Company.

45.    In the circumstances, it is just and equitable and in the public's interest to grant the order which the Attorney General seeks, for the appointment of joint liquidators over the Company.

A draft of the order sought is attached.

This application is supported by the affidavit of Attorney General Dawn J Smith.

The names and addresses of the persons on whom it is intended to serve the application are as follows:

**Towards Sunshine Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

The names and addresses of the persons required to be given notice of this application pursuant to the Act and the Rules (if any) are as follows:

**Towards Sunshine Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

This Application is filed by O'Neal Webster, Solicitors for the Applicant, whose address for service is 2nd

Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands. REF: 101538

_____          Dated: 2nd January 2026

Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

13

THE EASTERN CARIBBEAN SUPREME

COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/

**IN THE MATTER OF TOWARDS SUNSHINE LIMITED**

**AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS**

BETWEEN:

**THE ATTORNEY GENERAL**

Applicant

**AND**

**TOWARDS SUNSHINE LIMITED**

Respondent

---

**ORIGINATING APPLICATION**

---

O'Neal Webster

Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 l Fax: (284) 393 5805
www.onealwebster.com

14

**Case Number :BVIHCOM2026/0029**

The Insolvency Rules 2005

**ORDINARY APPLICATION (EX-PARTE)**

**(Company)**

Rule 14

**Submitted Date:05/01/2026 12:16**

**Filed Date:05/01/2026 13:40**

**Fees Paid:0.00**

**FILED**
**HIGH COURT**
TERRITORY OF
THE VIRGIN ISLANDS

| | |
|---|---|
| **THE EASTERN CARIBBEAN SUPREME COURT**<br>**IN THE HIGH COURT OF JUSTICE**<br>**VIRGIN ISLANDS**<br>**COMMERCIAL DIVISION** | |
| Matter No.: | BVIHC(COM)      of 2026 |
| Applicant: | **THE ATTORNEY GENERAL** |
| Respondent: | **TOWARDS SUNSHINE LIMITED** |

In the matter of:

| **TOWARDS SUNSHINE LIMITED** |
|---|

| For Court Use Only |
|---|
| **To:  TOWARDS SUNSHINE LIMITED,** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands.<br><br>**This Application will be heard by the Commercial Court Judge at Road Town, Tortola**<br><br>**British Virgin Islands**<br><br>**on the            day of                      2026      at                  o'clock.**<br><br>**If you do not attend at the time shown the Court may make an order in your absence** |

We, O'Neal Webster, on behalf of the Applicant, **the Attorney General of the Virgin Islands ("the Attorney General")**, apply pursuant to section 170 of the Insolvency Act 2003 (the "Act") for the following orders that:

1.  James Drury,  a Virgin Islands ("BVI") licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola,  Virgin Islands, VG1110; and Paul Pretlove and David Standish both United Kingdom ("UK") licensed insolvency

1

practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB to be appointed as joint provisional liquidators of Towards Sunshine Limited **("the Company")** with immediate effect.

2.    The powers afforded to the said joint provisional liquidators shall be as set out in Schedule 2 of the Act as varied by Schedule 3, and as further varied by this Order.

3.    An order that the joint provisional liquidators have the power to:

   a.    consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the joint provisional liquidators and the Attorney General which is attached hereto **("the Protocol")**.

   b.    cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4.    An order that the costs of the liquidation, including the proper fees and disbursements of the joint liquidators, the Attorney General's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

5.    An order that the costs of the application be costs in the liquidation.

6.    Such further order as the court deems appropriate.

A draft of the order sought is attached.

The grounds upon which this order is sought are set out in the affidavit of the Attorney General Dawn J. Smith filed on 2 January 2025, but in brief are as follows:

**Introduction**

1.    There are good prima facie reasons as set out in the originating application for the eventual appointment of full liquidators on the grounds of public interest and on the grounds that it is just and equitable that they be appointed over the Company.  A summary of these reasons is set out below.

2

**The Company and the Prince Group**

2.     The Company was incorporated under the laws of the Virgin Islands **("BVI")** on 1 February 2018. Its registered office is located at Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, BVI, VG1110. Chen Zhi, **("Chen")** is the Company's sole Director. The Company's sole Shareholder is Prince Group Holdings Limited, a Hong Kong company. Prince Global Group Limited holds 100% of the shareholding in Prince Group Holdings Limited. Chen is Prince Global Group Limited's sole shareholder.

3.     The Company is alleged to be a member of a transnational criminal organisation that is headed by the Prince Holding Group **("the Prince Group")** which is a Cambodian corporate conglomerate comprised of several  companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan. Chen is the mastermind of the Prince Group's transnational criminal organisation and its chairman.

**Action in the USA and other jurisdictions**

4.     On 14 October, 2025, the United States Department of Justice **("US DOJ"),** the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** and the United Kingdom Government announced coordinated  actions targeting the Prince Group.

5.     The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York **("the NY District Court")** on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering **("the US Indictment").** Concurrently, the US DOJ filed a civil forfeiture complaint **("the US Complaint")** seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group.  The criminal and civil proceedings will be referred together as the "**the US Proceedings**".

6.     On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation.  The effect of this designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them.  The targets include Chen and the Company.

3

7.  On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group. In doing so it noted that Chen and his associates have incorporated companies in the BVI and own properties in London including a £12 million mansion on Avenue Road in North London, a £100 million office building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and in Nine Elms in South London.

8.  News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen, the Prince Group, and its related entities and companies. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the coordinated global response to combat transnational organised crime.

9.  These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating transnational organised crime, human trafficking, forced labour, and large-scale financial fraud. The scale and coordination of these actions across six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network.

10.  In total, as of 9 December 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand) have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The allegation against Chen, his associates and companies within the Prince Group**

11.  In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and criminal activities including cryptocurrency investment fraud, human trafficking, money laundering, wire fraud, bank fraud, forced labour and, illegal online gambling. It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers. The scammers disappeared after taking almost every dollar they could from their victims.

4

12.     The US DOJ also alleges that the fraudulent activities carried out by the Prince Group resulted in billions of dollars in losses incurred by victims in the United States and around the world. Chen and his associates are alleged to use the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

13.     To effectuate their fraudulent schemes, it is alleged in the US Proceedings that Chen and his associates:

   a.     forced migrant workers who were – not always, but often – victims themselves of human trafficking, to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

   b.     frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

   c.     used their political influence in multiple countries to protect their criminal enterprise; and

   d.     paid bribes to foreign public officials to avoid disruption by law enforcement.

**The role of BVI Companies in the Prince Group**

14.     The OFAC determined that the BVI companies form part of a complex network of companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

15.     In the US complaint, the US DOJ alleged that Chen and his associates laundered the fraudulent proceeds of their crime through several companies in the BVI, Cayman, Cambodia and Hong Kong, which are under their control. It alleged further that these companies do not serve any real purpose other than to launder the proceeds of their criminal and fraudulent activities. Two BVI Companies are named in the US Complaint - Amber Hill Ventures Limited ("**Amber Hill**") and Lateral Bridge Global Limited **("LBG")**.

16.     The US Complaint discloses that personnel from the Federal Bureau of Investigation ("FBI") have

5

conducted extensive blockchain tracing to analyse the movements of the Prince Group's cryptocurrency. The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin which the US DOJ seeks to forfeit flowed through wallets which were controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

**It is just and equitable that liquidators be appointed over the Company**

17. The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities to include forced labour, human trafficking, large-scale fraud, and money laundering on a massive international scale.

18. The activities of some of the companies in the Prince Group have been the subject of civil and criminal actions in multiple jurisdictions, with authorities in at least six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

19. The BVI companies including the Company are alleged to have been established and operated to assist Chen and the Prince Group which has defrauded numerous vulnerable victims of billions of US dollars.

20. Despite the actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on allegations is free to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

21. The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf for the benefit of the victims of the fraud; and to identify potential claims against third parties.

22. The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

23. Independent liquidators are necessary to ensure proper coordination with regulatory and

6

enforcement authorities and liquidators, trustees, or receivers appointed in the Virgin Islands and other jurisdictions, given the multi-jurisdictional nature of the scheme and the  actions. Independent liquidators would also enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed.

24.     Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that its affairs are properly investigated and wound up under the supervision of this Honourable Court.

**It is in the public interest that liquidators be appointed over the Company**

25.     The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

26.     The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the Virgin Islands as a financial centre and threatens confidence in BVI companies and the BVI's regulatory framework.

27.     The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for nefarious purposes and with its commitment to international cooperation and combating serious transnational crime.

28.     Given that regulatory and law enforcement authorities in at least six countries have taken action and frozen or seized assets valued at over US$16 billion, it is in the public interest that the BVI as the jurisdiction of incorporation of the Company takes prompt and decisive action through the appointment of liquidators.

29.     The scale of this fraud and the international coordination of actions make it imperative, from a public interest perspective, that the BVI  positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

7

**The appointment of joint provisional liquidators**

30.    It is essential that joint provisional liquidators be appointed over the Company immediately (without notice to it and its principals) and before the originating application is heard and determined for the following reasons:

a.    The Company continues to be under the control of Chen and his associates and as a result, they can  use or continue to use it to further the criminal enterprise thereby continuing to inflict public harm.

b.    Given the serious allegations set out in this application, the sanctions imposed by the United States and the UK Government,  the US Indictment, and the US Complaint, it is appropriate and necessary that provisional liquidators be appointed immediately to:

(i)    immediately take full control of the Company;

(ii)    identify and preserve its assets that may represent proceeds of crime by preventing further movement, concealment, or dissipation of those assets;

(iii)    take control of its books and records;

(iv)    conduct thorough investigations into its past transactions; and

(v)    review banking records, asset transfers, and corporate dealings to identify and locate the potential money laundering activities.

c.    The information and evidence gathered by the liquidators may provide crucial support for law enforcement authorities, both in the BVI and internationally, to apply for freezing orders, forfeiture orders, and other remedies. In this case, given that the United States has already filed a civil complaint seeking forfeiture of 127,271 Bitcoin valued at approximately US$15 billion allegedly connected to the Prince Group's criminal activities, the work of the liquidators could materially assist in tracing assets and preserving evidence relevant to that and other  actions.

d.    The appointment of provisional liquidator over the Company and other BVI companies which are owned and controlled by Chen would align with the BVI's National AML/CFT Policy and its commitment to international cooperation in combating serious transnational crime.

e.    The coordinated  actions taken by the US DOJ and UK Government on 14 October, 2025 signal the seriousness with which these major jurisdictions view the alleged criminal activities of the Prince Group. The appointment of provisional liquidators by this

8

Honourable Court would demonstrate that the BVI is equally committed to ensuring that its corporate structures are not used as vehicles for serious criminality and would facilitate cooperation with international authorities in their ongoing investigations and asset recovery efforts.

**Urgency**

31. The public announcements of the US Civil Proceedings, OFAC sanctions, and UK sanctions on 14 October 2025 together with actions taken in other jurisdictions have no doubt put Chen and his associates, who are alleged to be sophisticated criminals, on notice of the scrutiny being applied to the Prince Group network and its corporate structures.

32. The Company is likely to have received proceeds of the criminal and fraudulent activities and to have documentation that may assist in recovering the proceeds of the crime. There is a real and substantial risk that absent the immediate appointment of provisional liquidators, assets held by or through the BVI companies, including the Company will be transferred, concealed, or dissipated and documents will be destroyed or concealed. This real and substantial risk will increase once the Company is served with the originating application,

33. The appointment of provisional liquidators will immediately remove control from Chen and place the Company under the supervision and control of officers of this Court, thereby protecting the integrity of any investigation and preserving assets for the benefit of the victims of Chen and the Prince Group's fraudulent and criminal activities.

34. The appointment of joint provisional liquidators is appropriate given the number of BVI companies involved, the complexity of the alleged corporate structure spanning multiple jurisdictions, the international nature of the investigations and actions, and the need for extensive expertise in tracing assets and investigating potential money laundering activities.

**The Proposed provisional liquidators**

35. The Attorney General proposes that James Drury,  a BVI licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110; and Paul Pretlove and David Standish, both UK licensed

9

insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB be appointed as joint provisional liquidators of the Company.

**Conclusion**

36.     In all the circumstances, it is just and convenient and in the public's interest, that this Honourable Court grants the order which the Attorney General seeks in this application.

A draft of the order sought is attached.

This application is supported by the affidavit of Attorney General Dawn J. Smith.

The names and addresses of the persons on whom it is intended to serve the application are as follows:

This Application is filed by O'Neal Webster, Solicitors for the Applicant whose address for service is 2nd Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands. REF: NW/LG/101538.

_____                    Dated: 2nd January, 2026
Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

10

THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/

**IN THE MATTER OF TOWARD SUNSHINE LIMITED**

**AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE**

**LAWS OF THE VIRGIN ISLANDS**.

BETWEEN:

**THE ATTORNEY GENERAL**

Applicant

 **AND**

**TOWARD SUNSHINE LIMITED**

Respondent

———————————————————

**EX-PARTE ORDINARY APPLICATION**
**FOR JOINT PROVISIONAL LIQUIDATORS**
———————————————————



Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 l Fax: (284) 393 5805
www.onealwebster.com

**Case Number :BVIHCOM2026/0030**



**FILED**

**HIGH COURT**
TERRITORY OF
THE VIRGIN ISLANDS

The Insolvency Rules 2005

**ORIGINATING APPLICATION**

**(Company)**

Rule 14

**Submitted Date:05/01/2026 12:22**

**Filed Date:05/01/2026 13:40**

**Fees Paid:0.00**

| THE EASTERN CARIBBEAN SUPREME COURT<br>IN THE HIGH COURT OF JUSTICE<br>VIRGIN ISLANDS<br>COMMERCIAL DIVISION | |
|---|---|
| Matter No.: | BVIHC(COM)       of 2026 |
| Applicant: | **THE ATTORNEY GENERAL** |
| Respondent: | **UNITED RICHES GLOBAL LIMITED** |

In the matter of:

| **UNITED RICHES GLOBAL LIMITED** |
|---|

| For Court Use Only |
|---|
| **To: UNITED RICHES GLOBAL LIMITED** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands.<br><br>**This Application will be heard by the Commercial Court Judge at Road Town, Tortola**<br><br>**British Virgin Islands**<br><br>**on the            day of                          2026      at                o'clock.**<br><br>**If you do not attend at the time shown the Court may make an order in your absence** |

The Applicant, the Attorney General of the Virgin Islands ("**Attorney General**") of TTT Building, Wickhams Cay 1, Road Town, Tortola, Virgin Islands VG1110 applies to the Court for:

1.  An order pursuant to sections 162(1) (b) and (c) of the Insolvency Act, Revised Edition 2020 ("**the Act**") that Paul Pretlove, James Drury and David Standish, be appointed as joint liquidators of United Riches Global Limited **("the Company")**, a company incorporated under the laws of the Virgin Islands ("BVI"). James Drury is a BVI licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin

1

Islands, VG1110. Paul Pretlove and David Standish are United Kingdom ("UK") licensed insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB acting as overseas insolvency practitioners as defined in the Act.

2.    An order that the joint liquidators be given all powers set out in Schedule 2 of the Act, such powers to be exercisable without the sanction of the Court and such other powers as this Honourable Court deems fit.

3.    An order that the joint liquidators have the power to:

   a.    consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the liquidators and the AG which is attached hereto **("the Protocol")**.

   b.    cooperate and communicate with law enforcement and regulatory authorities in the BVI and in other jurisdictions.

4.    An order that the costs of the liquidation, including the proper fees and disbursements of the joint liquidators and the Attorney General's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims

5.    An order that the costs of the application be costs in the liquidation.

6.    Such further order as the court deems appropriate.


The grounds upon which this order is sought are set out in the affidavit of Attorney General, Dawn J. Smith filed on 2 January 2026 and are summarised as follows:


**THE PARTIES**

1.    The Attorney General is the principal legal adviser to the Government of the Virgin Islands ("**the Government**") pursuant to section 58 of the Virgin Islands Constitution Order, 2007, and has overall responsibility for all aspects of civil litigation on behalf of the Government.

2

2.  The Company was incorporated under the laws of the BVI on 3 July 2018.  Its registered office is located at Vistra Corporate Services Centre **("Vistra")**, Wickhams Cay II, Road Town, Tortola, BVI, VG1110.  The Company is alleged to be a member of a transnational criminal organisation that is headed by Prince Holding Group Limited **("the Prince Group"),** which is a Cambodian corporate conglomerate that comprises several companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan.  On 17 November 2025, Vistra filed its Intention to Resign as the Company's Registered Agent.

3.  The chairman of the Prince Group is Chen Zhi **("Chen").** Chen is the Company's sole Director and sole Shareholder.

**BACKGROUND**

4.  The background is comprehensively set out in the indictment and the verified complaint filed by the United States Department of Justice **("US DOJ")** on October 14, 2025 and in the announcement issued by the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** dated October 13, 2025.  The background is summarised below.

**Action in the United States**

5.  On 14 October, 2025, the United States Department of Justice **("US DOJ"),** the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** and the United Kingdom Government announced coordinated actions targeting the Prince Group.

6.  The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York **("the NY District Court")** on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering **("the US Indictment").** Concurrently, the US DOJ filed a civil forfeiture complaint **("the US Complaint")** seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group.  The criminal and civil proceedings will be referred to together as "**the US Proceedings**."

7.  In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and

3

criminal activities including cryptocurrency investment fraud, human trafficking, money laundering, wire fraud, bank fraud, forced labour and, illegal online gambling. It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers. The scammers disappeared after taking almost every dollar they could from their victims.

8.    To effectuate the schemes, it is alleged in the US Proceedings that Chen and his associates:

   a.    built and operated forced-labour scam compounds across Cambodia in which workers were made to execute the scams at high volumes. The scam compounds housed vast dormitories surrounded by high walls and barbed wire, and functioned as violent forced labour camps;

   b.    forced migrant workers who were – not always, but often – victims themselves of human trafficking to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

   c.    frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

   d.    used their political influence in multiple countries to protect their criminal enterprise; and

   e.    paid bribes to foreign public officials to avoid disruption by law enforcement.

9.    The indictment alleges that Chen maintained meticulous records of the compounds' operations, including ledgers of the tracking profits generated from the fraud schemes, documents detailing "phone farms" used in the schemes, and images depicting methods of beating and torture used against workers.

10.    The US DOJ alleges that the schemes carried out by the Prince Group resulted in billions of dollars in losses incurred by victims in the United States and around the world. The documents in the US Proceedings allege that proceeds from these criminal activities have been laundered through

4

various means, including cryptocurrency (using "spraying" and "funneling" techniques), online gambling operations, and cryptocurrency mining operations. Chen, his associates and companies within the Prince Group, "washed" and returned the fraudulent proceeds to the Prince Group. The "washing" was done by using the Prince Group's vast network of seemingly legitimate business enterprises to launder its criminal proceeds. One common method was to collect the fraudulent proceeds in the form of bitcoin or stablecoins and then off-ramp them into conventional currencies, for example, the US dollar. The launderers then used that cash to purchase clean bitcoin or other cryptocurrencies. Chen was directly involved in coordinating these laundering efforts.

11.    Chen and his associates subsequently used the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.


12.    On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation.  The effect of the designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them.  The targets include Chen and the Company. The OFAC noted that:

    a.    Americans have lost at least $10 billion to Southeast Asia-based scam operations in 2024, a 66 percent increase over the prior year, with scams like those perpetrated by Prince Group being particularly significant.

    b.    The Prince Group remained a dominant player in Cambodia's scam economy and has controlled illicit financial flows of billions of dollars.

    c.    The actions taken by OFAC and Financial Crimes Enforcement Network (FinCEN) were in close coordination with the United Kingdom's Foreign, Commonwealth, and Development Office ("FCDO"), which took complementary actions against criminal networks responsible for targeting citizens of the United States and other allied nations through online scams and the laundering of stolen funds.

5

**Action in the UK**

13.    On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group.  In doing so it noted that Chen and his associates have incorporated companies in the BVI and own properties in London, including a £12 million mansion on Avenue Road in North London, a £100 million office building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and Nine Elms in South London.

14.    The Foreign Secretary Yvette Cooper stated that:

> "*The masterminds behind these horrific scam centres are ruining the lives of vulnerable people and buying up London homes to store their money.*
>
> *Together with our US allies, we are taking decisive action to combat the growing transnational threat posed by this network – upholding human rights, protecting British nationals and keeping dirty money off our streets.*"

15.    The Fraud Minister Lord Hanson said:

> "*These sanctions prove our determination to stop those who profit from this activity, hold offenders accountable, and keep dirty money out of the UK. Through our new, expanded Fraud Strategy and the upcoming Global Fraud Summit, we will go even further to disrupt corrupt networks and protect the public from shameless criminals.*"

16.    The effect of these sanctions is to prevent the transfer of these properties, freeze any business in which Chen and the Prince Group are involved and lock Chen and the Prince Group transnational criminal network out of the UK's financial system.

**Action in other jurisdictions**

17.    News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen,  the Prince Group, and its related entities and companies.  These actions are set out in paragraphs 19 to 22 below. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the global response to combat transnational organised crime.

*Singapore*

18.    On 31 October, 2025, Singapore police announced that they had seized over $150 million (approximately US$115 million) in assets linked to the Prince Group. The seized assets include six

6

properties, bank accounts, securities accounts, and cash which are said to represent the proceeds of money laundering and forgery offences committed by Chen and the Prince Group. According to the Monetary Authority of Singapore (MAS), financial institutions had previously filed suspicious transaction reports, and a number of suspicious accounts had been closed. The Singapore Police Force stated that investigations into Chen and his associates commenced in 2024 after it received intelligence from the Suspicious Transaction Reporting Office (STR).

*Hong Kong*

19.   On 4 November, 2025, Hong Kong authorities announced that they had frozen assets worth HK$2.75 billion (approximately US$354 million), which, based on intelligence and information gathered from multiple sources, are suspected to represent proceeds of international cross-border telecommunications fraud and money laundering activities committed by the Prince Group. The frozen assets include cash, stocks, and funds held by individuals and corporate entities.  At least 18 Hong Kong companies were blacklisted by the United States in connection with the Prince Group, including two listed companies - *"Khoon Group and Geotech Holdings".*

*Taiwan*

20.   On 4 November, 2025, Taiwanese prosecutors announced that they had detained 25 individuals and seized T$4.5 billion (approximately US$147 million) in assets tied to the Prince Group. The seized assets include 26 high-end cars, properties, and bank accounts tied to the network and to Chen in relation to money laundering and forced labour offences.

*Thailand*

21.   On 3 December, 2025, the Thai authorities announced that they had seized assets worth more than 10,157 million baht (approximately US$318 million) and issued arrest warrants for 42 individuals linked to transnational online scam operations connected to Chen and Cambodian nationals Kok An and Yim Leak. As of 3 December, 2025, 29 individuals had been arrested. The seizures include shares in Bangchak Corporation Limited worth 6 billion baht (approximately US$188 million). Thailand's Anti-Money Laundering Office (AMLO) stated that investigators had found "*information on networks of online fraud, human trafficking, and money-laundering*" that were linked to Chen and his associates.

7

**The effect of the multi-jurisdictional actions**

22.    These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating transnational organised crime, human trafficking, forced labour, and large-scale financial fraud. The scale and coordination of these actions across at least six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network

23.    In total, as of 9 December, 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The role of BVI companies**

24.    The OFAC has determined that the BVI companies form part of a complex network of holding companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

25.    In the US Complaint, the US DOJ alleged that Chen and his associates also laundered fraudulent proceeds through several companies including companies in the BVI which are under their control.  It alleged further that these companies do not serve any real purpose other than to launder funds. Two BVI Companies were named in the US Proceedings - Amber Hill Ventures Limited **("Amber Hill")** and Lateral Bridge Global Limited **("LBG")**.

26.    Amber Hill and LBG are said to be controlled by two of Chen's associates, who are also defendants in the US Civil Proceedings. The US Complaint discloses that personnel from the Federal Bureau of Investigation ("FBI") have conducted extensive blockchain tracing to analyse the movements of the Prince Group's cryptocurrency.  The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin which the US DOJ seeks to forfeit flowed through wallets which were controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

27.    It is also alleged that Amber Hill had a banking relationship with a financial institution in the United

8

States. It was recorded in the account opening documents with that financial institution that Amber Hill's business activities consisted of "*[p]roprietary trading and investing*," and its anticipated deposit and withdrawal activity would be approximately $2 million each. However, according to account statements, in February 2020, Amber Hill's account with that financial institution had approximately $22.5 million in deposits and $21.8 million in withdrawals. Amber Hill was struck from the register and dissolved on 10 November, 2023.

**THE APPLICATION**

28.    The Application is made by the Attorney General on the ground that (i) it is just and equitable that joint liquidators be appointed over the Company pursuant to section 162 (1) (b) of the Act and (ii) it is in the public interest that the joint liquidators are appointed pursuant to section 162 (1) (c) of the Act.

**Just and equitable ground**

29.    Section 162(1)(b) of the Insolvency Act, 2003 provides that the Court may appoint a liquidator of a company if "the Court is of the opinion that it is just and equitable that the company should be liquidated."

30.    The Attorney General is listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(b) of the Act.

31.    It is just and equitable that the Company should be placed into liquidation for the following reasons:

a.    Available records reveal that Chen is the Company's sole Director and sole Shareholder. Chen is alleged to be the mastermind of the Prince Group. He has been criminally indicted in the United States and is subject to personal sanctions by both the United States and the United Kingdom.

b.    The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities, to include forced labour, human trafficking, large-scale fraud, and money laundering on a massive international scale.

c.    The BVI companies including the Company are alleged to have been established and

9

operated to assist Chen and the Prince Group which has defrauded numerous vulnerable victims of billions of US dollars.

d.  Despite the enforcement actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on the allegations is free to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

e.  The activities of some of the companies in the Prince Group have been the subject of civil and criminal enforcement actions in multiple jurisdictions, with authorities in six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

f.  The Company is alleged to be a shell company which was used solely as a vehicle for the fraudulent scheme.

g.  The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf, and identify potential claims against third parties.

h.  The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

i.  Independent liquidators are necessary to ensure proper coordination with regulatory and law enforcement authorities and liquidators, trustees, or receivers appointed in the BVI and other jurisdictions, given the multi-jurisdictional nature of the scheme and the actions taken by various authorities in several jurisdictions.

j.  Independent liquidators would enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed as part of a collective process.

k.  Given the fraudulent nature of the scheme, there are likely to be voidable transactions, preferences, and other claims that independent liquidators could pursue for the benefit of the victims and creditors.

32.  Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that its affairs are properly investigated and wound up under the supervision of this Honourable Court.

**Public Interest ground**

33.     Section 162(1)(c) of the Act gives the Court the discretion to appoint a liquidator of a company if it is of the opinion that it is in the public interest for a liquidator to be appointed.

34.     The Attorney General is also listed as one of the persons who has standing to make an application to appoint a liquidator over a company pursuant to section 162(1)(c) of the Act.

35.     The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

36.     BVI companies including, the Company are alleged to have been used as vehicles in what has been described by international law enforcement authorities as one of the largest fraudulent investment schemes in recent history.  The scheme has caused billions of dollars in losses to victims worldwide and involved egregious human rights abuses.  They are alleged to have been used to launder and/or hold the proceeds of the horrific crimes committed by Chen and his associates, including human trafficking, forced labour, aggravated identity theft, international fraud designed to scam unsuspecting victims of their lifesavings and money laundering.  These criminal and fraudulent activities are inherently objectionable and are contrary to clearly identifiable public interest.

37.     The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the BVI as a financial centre and threatens confidence in BVI incorporated companies and the BVI's regulatory framework.

38.     The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for fraudulent purposes.

39.     The appointment of liquidators will:
    a.      facilitate cooperation with enforcement authorities, regulators, and insolvency practitioners in the BVI and other jurisdictions, demonstrating the BVI's commitment to international cooperation in combating financial fraud;

11

b.      ensure that the Company's affairs are properly investigated and that appropriate steps are taken to recover assets and maximise returns to defrauded investors;

c.      enable a proper investigation into how the Company was used in the fraudulent scheme, which may assist in preventing similar schemes in the future.

40.      Given that enforcement authorities in at least six countries have taken action and frozen or seized assets valued at over US$16 billion, it is in the public interest that BVI as the jurisdiction of incorporation of the Company, takes prompt and decisive action through the appointment of liquidators.

41.      The scale of this fraud and the international coordination of related actions make it imperative, from a public interest perspective, that the BVI positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

42.      In all the circumstances, it is not only just and equitable but also in the public interest that Joint liquidators be appointed over the Company to prevent it from being used to further Chen's and the Prince Group's criminal enterprise.

43.      If appointed, the joint liquidators would be able to take control of the Company, take the necessary steps in the BVI or overseas to secure and preserve its books and records and secure its assets for the benefit of the victims of the crimes perpetuated by the Prince Group. As officers of the court, they would also be able to independently investigate claims against the Company, marshal records, ensure that the Company complies with BVI laws and regulations and respond to any court process.

**Proposed liquidators**

44.      Mr. James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110, Mr. Paul Pretlove and Mr. David Standish, both of Interpath Ltd, 10 Fleet Place, London EC4M 7RB who to the best of the Applicant's knowledge and belief are eligible insolvency practitioners have all consented to be appointed as joint liquidators of the Company.

12

45.     In the circumstances, it is just and equitable and in the public's interest to grant the order which the Attorney General seeks, for the appointment of joint liquidators over the Company.

A draft of the order sought is attached.

This application is supported by the affidavit of Attorney General Dawn J Smith.

The names and addresses of the persons on whom it is intended to serve the application are as follows:

**United Riches Global Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

The names and addresses of the persons required to be given notice of this application pursuant to the Act and the Rules (if any) are as follows:

**United Riches Global Limited**
Vistra Corporate Services Centre,
Wickhams Cay II,
Road Town, Tortola,
British Virgin Islands, VG1110

This Application is filed by O'Neal Webster, Solicitors for the Applicant, whose address for service is 2nd

Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands.
REF: 101538

_____                                    Dated: January 2, 2026
Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

13

THE EASTERN CARIBBEAN SUPREME

COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/

**IN THE MATTER OF UNITED RICHES GLOBAL LIMITED**

**AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS**

BETWEEN:

**THE ATTORNEY GENERAL**

Applicant

**AND**

**UNITED RICHES GLOBAL LIMITED**

Respondent

———————————————————

**ORIGINATING APPLICATION**

———————————————————



Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 l Fax: (284) 393 5805
www.onealwebster.com

14

**Case Number :BVIHCOM2026/0030**

The Insolvency Rules 2005

**ORDINARY APPLICATION (EX-PARTE)**

**(Company)**

Rule 14

**Submitted Date:05/01/2026 12:21**

**Filed Date:05/01/2026 13:40**

**Fees Paid:0.00**

| | |
|---|---|
| **THE EASTERN CARIBBEAN SUPREME COURT IN THE HIGH COURT OF JUSTICE VIRGIN ISLANDS COMMERCIAL DIVISION** | |
| Matter No.: | BVIHC(COM)        of 2026 |
| Applicant: | **THE ATTORNEY GENERAL** |
| Respondent: | **UNITED RICHES GLOBAL LIMITED** |

In the matter of:

| |
|---|
| **UNITED RICHES GLOBAL LIMITED** |

| |
|---|
| For Court Use Only |
| **To:  UNITED RICHES GLOBAL LIMITED,** of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands. |
| **This Application will be heard by the Commercial Court Judge at Road Town, Tortola British Virgin Islands** |
| **on the            day of                    2026     at              o'clock.** |
| **If you do not attend at the time shown the Court may make an order in your absence** |

We, O'Neal Webster, on behalf of the Applicant, **the Attorney General of the Virgin Islands ("the Attorney General")**, apply pursuant to section 170 of the Insolvency Act 2003 (the "Act") for the following orders that:

1.  James Drury,  a Virgin Islands ("BVI") licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola,  Virgin Islands, VG1110; and Paul Pretlove and David Standish both United Kingdom ("UK") licensed insolvency

1

practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB to be appointed as joint provisional liquidators of United Riches Global Limited **("the Company")** with immediate effect.

2.    The powers afforded to the said joint provisional liquidators shall be as set out in Schedule 2 of the Act as varied by Schedule 3, and as further varied by this Order.

3.    An order that the joint provisional liquidators have the power to:

   a.    consult and share information with the Attorney General to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company in accordance with the protocol for consultation and information-sharing between the joint provisional liquidators and the Attorney General which is attached hereto **("the Protocol")**.

   b.    cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4.    An order that the costs of the liquidation, including the proper fees and disbursements of the joint liquidators, the Attorney General's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

5.    An order that the costs of the application be costs in the liquidation.

6.    Such further order as the court deems appropriate.

A draft of the order sought is attached.

The grounds upon which this order is sought are set out in the affidavit of the Attorney General Dawn J. Smith filed on 2 January 2026, but in brief are as follows:

**Introduction**

1.    There are good prima facie reasons as set out in the originating application for the eventual appointment of full liquidators on the grounds of public interest and on the grounds that it is just and equitable that they be appointed over the Company.  A summary of these reasons is set out below.

2

**The Company and the Prince Group**

2.       The Company was incorporated under the laws of the Virgin Islands **("BVI")** on 3 July , 2018. Its registered office is located at Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, BVI, VG1110. The sole shareholder and director of the Company is Chen Zhi, **("Chen").**

3.       The Company is alleged to be a member of a transnational criminal organisation that is headed by the Prince Holding Group **("the Prince Group")** which is a Cambodian corporate conglomerate comprised of several  companies in the BVI, the Cayman Islands, Singapore, Hong Kong, and Taiwan. Chen is the mastermind of the Prince Group's transnational criminal organisation and its chairman.

**Action in the USA and other jurisdictions**

4.       On 14 October, 2025, the United States Department of Justice **("US DOJ"),** the United States Department of the Treasury's Office of Foreign Assets Control **("OFAC")** and the United Kingdom Government announced coordinated  actions targeting the Prince Group.

5.       The US DOJ announced that Chen had been indicted in the United States District Court for the Eastern District of New York **("the NY District Court")** on charges of conspiracy to commit wire fraud and conspiracy to commit money laundering **("the US Indictment").** Concurrently, the US DOJ filed a civil forfeiture complaint **("the US Complaint")** seeking forfeiture of approximately 127,271 Bitcoin (valued at approximately US$15 billion) allegedly representing proceeds traceable to criminal activity associated with Chen and the Prince Group.  The criminal and civil proceedings will be referred together as the "**the US Proceedings**".

6.       On 14 October 2025, the OFAC issued a press release in which it stated that it had imposed sweeping sanctions on 146 targets within the Prince Group. It designated the Prince Group as a transnational criminal organisation.  The effect of this designation is that all properties and interests in property of the targets that are in the United States are" blocked" and U.S. persons are, in effect, prohibited from dealing with them.  The targets include Chen and the Company.

7.       On 14 October 2025, the UK also imposed sanctions on Chen and the Prince Group. In doing so it noted that Chen and his associates have incorporated companies in the BVI and own properties in London including a £12 million mansion on Avenue Road in North London, a £100 million office

3

building on Fenchurch Street in the City of London, and seventeen flats on New Oxford Street and in Nine Elms in South London.

8.    News reports reveal that Singapore, Hong Kong, Taiwan and Thailand have also taken significant actions against Chen, the Prince Group, and its related entities and companies. These additional actions demonstrate the widespread international concern regarding the alleged criminal activities of the Prince Group and the coordinated global response to combat transnational organised crime.

9.    These actions by multiple jurisdictions underscore the seriousness of the allegations against Chen and the Prince Group and demonstrate the coordinated international commitment to combating transnational organised crime, human trafficking, forced labour, and large-scale financial fraud. The scale and coordination of these actions across six major jurisdictions reflects the gravity with which the international community views the alleged criminal activities of the Prince Group network.

10.    In total, as of 9 December 2025, authorities in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, and Thailand) have frozen or seized assets worth over US$16 billion in connection with Chen and the Prince Group.

**The allegation against Chen, his associates and companies within the Prince Group**

11.    In the US Proceedings, the Prince Group is alleged to have been engaged in several fraudulent and criminal activities including cryptocurrency investment fraud, human trafficking, money laundering, wire fraud, bank fraud, forced labour and, illegal online gambling.  It is further alleged that Chen and his associates used "pig butchering" to scam unsuspecting individuals around the world. The scam involves cultivating, sometimes over the course of months, elaborate relationships with vulnerable victims, gaining their trust and confidence, then inducing them to "invest" funds in fraudulent investment platforms that were ultimately controlled by scammers.  The scammers disappeared after taking almost every dollar they could from their victims.

12.    The US DOJ also alleges that the fraudulent activities carried out by the Prince Group resulted in billions of dollars in losses incurred by victims in the United States and around the world. Chen

4

and his associates are alleged to use the fraudulent proceeds to fund luxury travel and entertainment and to make extravagant purchases such as watches, yachts, private jets, vacation homes, high-end collectables and rare artwork, including a Picasso painting.

13.    To effectuate their fraudulent schemes, it is alleged in the US Proceedings that Chen and his associates:

 a. forced migrant workers who were – not always, but often – victims themselves of human trafficking, to work in scam compounds executing cryptocurrency investment fraud and other fraudulent schemes, often under the threat of violence;

 b. frequently used violence and coercion to achieve business outcomes and further their criminal schemes. The workers were subjected to physical abuse, isolation, restriction of movement, arbitrary fines and fees, threats of sexual exploitation, and the confiscation of personal documents and electronics;

 c. used their political influence in multiple countries to protect their criminal enterprise; and

 d. paid bribes to foreign public officials to avoid disruption by law enforcement.

**The role of BVI Companies in the Prince Group**

14.    The OFAC determined that the BVI companies form part of a complex network of companies which were used by Chen and the Prince Group to conceal, hold, transfer, and launder proceeds derived from their alleged criminal activities including forced labour, human trafficking, fraud, and other serious criminal conduct.

15.    In the US complaint, the US DOJ alleged that Chen and his associates laundered the fraudulent proceeds of their crime through several companies in the BVI, Cayman, Cambodia and Hong Kong, which are under their control. It alleged further that these companies do not serve any real purpose other than to launder the proceeds of their criminal and fraudulent activities. Two BVI Companies are named in the US Complaint - Amber Hill Ventures Limited ("**Amber Hill**") and Lateral Bridge Global Limited **("LBG")**.

16.    The US Complaint discloses that personnel from the Federal Bureau of Investigation ("FBI") have conducted extensive blockchain tracing to analyse the movements of the Prince Group's cryptocurrency.  The tracing revealed that approximately 92,983.43 Bitcoin of the 127,271 Bitcoin

5

which the US DOJ seeks to forfeit flowed through wallets which were controlled by Amber Hill, LBG and Future Technology Investment, an entity incorporated in the Cayman Islands.

**It is just and equitable that liquidators be appointed over the Company**

17.    The Company has been specifically designated by OFAC as being a part of the Prince Group transnational criminal organisation which is allegedly responsible for horrific criminal activities to include forced labour, human trafficking, large-scale fraud, and money laundering on a massive international scale.

18.    The activities of some of the companies in the Prince Group have been the subject of civil and criminal actions in multiple jurisdictions, with authorities in at least six countries having taken coordinated action to freeze and seize assets valued at over US$16 billion.

19.    The BVI companies including the Company are alleged to have been established and operated to assist Chen and the Prince Group which has defrauded numerous vulnerable victims of billions of US dollars.

20.    Despite the  actions taken in other jurisdictions, the Company continues to be under the control of Chen and his associates and based on allegations is free to be used by them (i) to continue to facilitate their criminal and fraudulent activities and (ii) to launder, hold, and conceal the proceeds of the crime and the fraud.

21.    The affairs of the Company require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, identify, secure, protect and trace assets held by or on its behalf for the benefit of the victims of the fraud; and to identify potential claims against third parties.

22.    The interests of the victims of the fraud need to be protected by independent liquidators to maximise recoveries for their benefit.

23.    Independent liquidators are necessary to ensure proper coordination with regulatory and enforcement authorities and liquidators, trustees, or receivers appointed in the Virgin Islands and other jurisdictions, given the multi-jurisdictional nature of the scheme and the  actions.

6

Independent liquidators would also enable the Company to participate in cross-border asset recovery efforts and ensure that any recovered assets are properly distributed.

24. Given the scale, complexity, international and horrific nature of the fraudulent scheme, it is manifestly just and equitable that the Company should be placed into liquidation to ensure that its affairs are properly investigated and wound up under the supervision of this Honourable Court.

**It is in the public interest that liquidators be appointed over the Company**

25. The BVI, as a leading international finance centre, has a fundamental public interest in protecting its reputation and preventing its corporate vehicles from being used for or to facilitate criminal conduct including, forced labour, human trafficking, large-scale fraud, and money laundering.

26. The use of BVI companies in such a large-scale international fraudulent scheme causes significant reputational harm to the Virgin Islands as a financial centre and threatens confidence in BVI companies and the BVI's regulatory framework.

27. The appointment of liquidators aligns with the BVI's commitment to taking appropriate and decisive action when BVI companies are used for nefarious purposes and with its commitment to international cooperation and combating serious transnational crime.

28. Given that regulatory and law enforcement authorities in at least six countries have taken action and frozen or seized assets valued at over US$16 billion, it is in the public interest that the BVI as the jurisdiction of incorporation of the Company takes prompt and decisive action through the appointment of liquidators.

29. The scale of this fraud and the international coordination of actions make it imperative, from a public interest perspective, that the BVI  positions itself to assist and participate in investigation and recovery efforts through the appointment of liquidators to properly wind up the Company.

**The appointment of joint provisional liquidators**

30. It is essential that joint provisional liquidators be appointed over the Company immediately (without notice to it and its principals) and before the originating application is heard and

7

determined for the following reasons:

a. The Company continues to be under the control of Chen and his associates and as a result, they can  use or continue to use it to further the criminal enterprise thereby continuing to inflict public harm.

b. Given the serious allegations set out in this application, the sanctions imposed by the United States and the UK Government,  the US Indictment, and the US Complaint, it is appropriate and necessary that provisional liquidators be appointed immediately to:

(i)      immediately take full control of the Company;

(ii)     identify and preserve its assets that may represent proceeds of crime by preventing further movement, concealment, or dissipation of those assets;

(iii)    take control of its books and records;

(iv)    conduct thorough investigations into its past transactions; and

(v)     review banking records, asset transfers, and corporate dealings to identify and locate the potential money laundering activities.

c. The information and evidence gathered by the liquidators may provide crucial support for law enforcement authorities, both in the BVI and internationally, to apply for freezing orders, forfeiture orders, and other remedies. In this case, given that the United States has already filed a civil complaint seeking forfeiture of 127,271 Bitcoin valued at approximately US$15 billion allegedly connected to the Prince Group's criminal activities, the work of the liquidators could materially assist in tracing assets and preserving evidence relevant to that and other  actions.

d. The appointment of provisional liquidator over the Company and other BVI companies which are owned and controlled by Chen would align with the BVI's National AML/CFT Policy and its commitment to international cooperation in combating serious transnational crime.

e. The coordinated  actions taken by the US DOJ and UK Government on 14 October, 2025 signal the seriousness with which these major jurisdictions view the alleged criminal activities of the Prince Group. The appointment of provisional liquidators by this Honourable Court would demonstrate that the BVI is equally committed to ensuring that its corporate structures are not used as vehicles for serious criminality and would facilitate cooperation with international authorities in their ongoing investigations and asset recovery efforts.

8

**Urgency**

31.    The public announcements of the US Civil Proceedings, OFAC sanctions, and UK sanctions on 14 October 2025 together with actions taken in other jurisdictions have no doubt put Chen and his associates, who are alleged to be sophisticated criminals, on notice of the scrutiny being applied to the Prince Group network and its corporate structures.

32.    The Company is likely to have received proceeds of the criminal and fraudulent activities and to have documentation that may assist in recovering the proceeds of the crime. There is a real and substantial risk that absent the immediate appointment of provisional liquidators, assets held by or through the BVI companies, including the Company will be transferred, concealed, or dissipated and documents will be destroyed or concealed. This real and substantial risk will increase once the Company is served with the originating application,

33.    The appointment of provisional liquidators will immediately remove control from Chen and place the Company under the supervision and control of officers of this Court, thereby protecting the integrity of any investigation and preserving assets for the benefit of the victims of Chen and the Prince Group's fraudulent and criminal activities.

34.    The appointment of joint provisional liquidators is appropriate given the number of BVI companies involved, the complexity of the alleged corporate structure spanning multiple jurisdictions, the international nature of the investigations and actions, and the need for extensive expertise in tracing assets and investigating potential money laundering activities.

**The Proposed provisional liquidators**

35.    The Attorney General proposes that James Drury, a BVI licensed insolvency practitioner of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110; and Paul Pretlove and David Standish, both UK licensed insolvency practitioners of Interpath Ltd, 10 Fleet Place, London EC4M 7RB be appointed as joint provisional liquidators of the Company.

9

**Conclusion**

36.    In all the circumstances, it is just and convenient and in the public's interest, that this Honourable Court grants the order which the Attorney General seeks in this application.

A draft of the order sought is attached.

This application is supported by the affidavit of Attorney General Dawn J. Smith.

The names and addresses of the persons on whom it is intended to serve the application are as follows:

This Application is filed by O'Neal Webster, Solicitors for the Applicant whose address for service is 2nd Floor, Commerce House, 181 Main Street, P.O. Box 961, Road Town, Tortola, British Virgin Islands. REF: NW/LG/101538.

_____        Dated: January 2, 2026
Nadine Whyte Laing
O'Neal Webster
Legal practitioners for the Applicant

10

THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO. BVIHC(COM) 2026/

**IN THE MATTER OF UNITED RICHES GLOBAL LIMITED**

**AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE**

**LAWS OF THE VIRGIN ISLANDS**.

BETWEEN:

**THE ATTORNEY GENERAL**

Applicant

 **AND**

**UNITED RICHES GLOBAL LIMITED**

Respondent

———————————————————

**EX-PARTE ORDINARY APPLICATION**
**FOR JOINT PROVISIONAL LIQUIDATORS**

———————————————————



Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 l Fax: (284) 393 5805
www.onealwebster.com

11