Matthew L. Schwartz
Peter M. Skinner
Gordon Z. Novod
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards
New York, New York 10001
Telephone: (212) 446-2300

Dan G. Boyle
**BOIES SCHILLER FLEXNER LLP**
2029 Century Park East
Los Angeles, California 90067
Telephone: (213) 995-5732

*Counsel to the Objecting Debtors*

Laura Femino (*pro hac vice to be filed*)
**BOIES SCHILLER FLEXNER LLP**
401 E Las Olas Boulevard
Fort Lauderdale, Florida 33301
Telephone: (954) 377-0716

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>PRINCE GLOBAL HOLDINGS LIMITED *et al.*,[1]<br><br>Debtors in Foreign Proceedings. | ECF No. 9<br><br>Hearing Date and Time: April 22, 2026 at 11:00 AM EDT<br><br>Objection Deadline: April 16, 2025 at 4:00 PM EDT<br><br><br>Chapter 15<br><br>Case No. 26-10769 (MG)<br><br>(Jointly Administered) |

**THE OBJECTING DEBTORS' OBJECTION TO**
**MOTION FOR PROVISIONAL RELIEF PURSUANT**
**TO SECTION 1519 OF THE BANKRUPTCY CODE**

---

[1]  The Debtors in these Chapter 15 Cases are incorporated in the British Virgin Islands and maintain their registered address at Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands, VG1110. A complete list of the Debtors and their company numbers may be found at ECF No. 2-1. Notwithstanding the case caption, the Objecting Debtors dispute that these entities are the subject of a "foreign proceeding" under Chapter 15.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................ii

PRELIMINARY STATEMENT ............................................................................................ 1

BACKGROUND ..................................................................................................................... 3

    A.    The EDNY's Flawed Criminal and Civil Forfeiture Actions ......................................... 3

    B.    The BVI AG Initiates *Ex Parte* Proceedings to Liquidate the Objecting Debtors on the Back of the Flawed EDNY Filings ........................................................................ 5

    C.    Pending Challenges to the Propriety of the BVI Proceedings ..................................... 7

ARGUMENT ........................................................................................................................... 9

    I.    The Requested Relief Exceeds the Scope and Authority of Chapter 15. ......................... 9

    II.    The Requested Relief Is Not "Urgently Needed to Protect the Assets of the Debtor or the Interests of Creditors" as Required by Bankruptcy Code Section 1519(a). .......... 12

    III.    The Requested Relief Does Not Protect the "Interests of Creditors and Other Interested Entities, Including the Debtor" as Required by Section 1522(a). ................... 14

    IV.    The Requested Relief Fails to Satisfy the Requirements for a Preliminary Injunction. .................................................................................................................. 15

        A.    The Petitioners Cannot Show a Likelihood of Success on the Merits ............... 16

        B.    There Is No Risk of Irreparable Harm ............................................................ 19

        C.    The Balance of Equities Weighs Against Relief ............................................... 21

        D.    The Public Interest Disfavors Relief ............................................................... 22

CONCLUSION ..................................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Am. Healthcare Admin. Servs. v. Aizen*,
285 A.3d 461 (Del. Chancery Court 2022) ................................................................. 23

*Citibank, N.A. v. Citytrust*,
756 F.2d 273 (2d Cir. 1985) ..................................................................................... 13

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
559 F.3d 110 (2d Cir. 2009) ..................................................................................... 19

*Ferguson v. Ruane Cuniff & Goldfarb Inc.*,
No. 17-CV-6685 (ALC), 2022 WL 420763 (S.D.N.Y. Feb. 3, 2022) ...................................... 23

*In re Andrade Gutierrez Engenharia S.A.*,
645 B.R. 175 (Bankr. S.D.N.Y. 2022) ......................................................................... 19

*In re Ascentra Holdings, Inc.*,
No. 21-11854 (DSJ) (Bankr. S.D.N.Y. Nov. 2, 2021) ...................................................... 14

*In re Ashapura Minechem Ltd.*,
480 B.R. 129 (S.D.N.Y. 2012) ................................................................................... 17

*In re Atlas Shipping A/S*,
404 B.R. 726 (Bankr. S.D.N.Y. 2009) ......................................................................... 14

*In re Beechwood Re*,
No. 19-11560 (MG), 2019 WL 3025283 (Bankr. S.D.N.Y. July 10, 2019) ...................... 15, 19

*In re British Am. Ins. Co. Ltd.*,
425 B.R. 884 (Bankr. S.D. Fla. 2010) ......................................................................... 19

*In re Corp. Res. Servs., Inc.*,
No. 15-12329 (MG), 2020 WL 1907538 (Bankr. S.D.N.Y. April 15, 2020) ........................... 20

*In re Creative Fin. Ltd.*,
543 B.R. 498 (Bankr. S.D.N.Y. 2016) ......................................................................... 12

*In re ENNIA Caribe Holding N.V.*,
594 B.R. 631 (Bankr. S.D.N.Y. 2018) ......................................................................... 17

*In re Fairfield Sentry Ltd. Litig.*,
458 B.R. 665 (S.D.N.Y. 2011) ................................................................................... 10

*In re Global Cord Blood Corp.*,
No. 22-11347 (DSJ), 2022 WL 17478530 (Bankr. S.D.N.Y. Dec. 5, 2022) ............... 17, 18, 19

*In re Gold & Honey, Ltd.*,
410 B.R. 357 (Bankr. E.D.N.Y. 2009) ......................................................................... 18

*In re Innua Canada Ltd.*,
No. 09-16362, 2009 WL 1025088 (Bankr. D.N.J. Mar. 25, 2009) ....................................... 14

*In re Iovate Health Scis. Int'l Inc.*,
    673 B.R. 516 (Bankr. S.D.N.Y. 2025) ................................................................................ 16

*In re JSC BTA Bank*,
    434 B.R. 334 (Bankr. S.D.N.Y. 2010) ........................................................................... 10, 11

*In re Lord*,
    325 B.R. 121 (Bankr. S.D.N.Y. 2005) .............................................................................. 12

*In re McCormick*,
    381 B.R. 594 (Bankr. S.D.N.Y. 2008) .............................................................................. 12

*In re Rede Energia S.A.*,
    515 B.R. 69 (Bankr. S.D.N.Y 2014) ................................................................................. 14

*In re Silicon Valley Bank (Cayman Islands Branch),*
    658 B.R. 75 (Bankr. S.D.N.Y. 2024) ................................................................................ 16

*In re Toft*,
    453 B.R. 186 (Bankr. S.D.N.Y. 2011) .............................................................................. 14

*In re Worldwide Educ. Servs., Inc.*,
    494 B.R. 494 (Bankr. C.D. Cal. 2013) ........................................................................ 13, 23

*Kos Pharms., Inc. v. Andrx Corp.*,
    369 F.3d 700 (3d Cir. 2004) ............................................................................................. 19

*Le Sportsac, Inc. v. Dockside Rsch.*, Inc.,
    478 F. Supp. 602 (S.D.N.Y. 1979) ................................................................................... 13

*Monowise Ltd. Corp. v. Ozy Media, Inc.*,
    No. 17-CV-8028 (JMF), 2018 WL 2089342 (S.D.N.Y. May 3, 2018) ................................. 23

*Queenie, Ltd. v. Nygard Int'l*,
    321 F.3d 282 (2d Cir.2003) .............................................................................................. 12

*Thomson v. Silverman*,
    No. 25-CV-2925 (MKV), 2025 WL 1078334 (S.D.N.Y. Apr. 10, 2025) ............................. 23

*Vitro v. ACP Master, Ltd. (In re Vitro)*,
    455 B.R. 571 (Bankr. N.D. Tex. 2011) ............................................................. 11, 12, 22, 23

**Statutes**

11 U.S.C. § 101 ................................................................................................................ 16, 24

11 U.S.C. § 1501 ..................................................................................................................... 19

11 U.S.C. § 1515 ..................................................................................................................... 16

11 U.S.C. § 1519 ....................................................................................................................... 9

11 U.S.C. § 1521 ................................................................................................................... 9, 11

11 U.S.C. § 1522 ................................................................................................................. 14, 15

**Other Authorities**

2005 U.S.C.C.A.N. 88 ............................................................................................................ 10

8 Richard Levin & Henry J. Sommer, *Collier on Bankruptcy* ¶ 1519.01 (16th ed. 2026) ........... 11

House Judiciary Committee, H.R. Rep. No. 109-31 (2005) ......................................... 10

Insolvency Act, 2003, § 162 (B.V.I) ........................................................................... 6, 17

Patricia B. Tomasco & Sara C. Clark, *Asymmetric Discovery in Chapter 15*, ABI Journal, Sept. 2019 ............................................................................................................ 13

UNCITRAL *Model Law on Cross-Border Insolvency with Guide to Enactment and Interpretation*, 42 (Jan. 2014) ............................................................................. 18

**Rules**

Fed. R. Civ. P. 12 ..................................................................................................................... 4

Prince Global Holdings Limited, Auspicious Tycoon Limited, Bright Team Global Limited, Delightful Thrive Limited, Even Sincerity Limited, Fulam Investment Limited, Giant Victory Holdings Limited, Golden Ascend International Limited, Harmonic State Limited, Luminous Glow Limited, Mighty Divine Limited, Noble Title Limited, Oriental Charm Holdings Investment Limited, Pacific Charm Holdings Investment Limited, Praise Marble Limited, Prince Global Group Limited, Respectful Steed Limited, Retain Prosper Limited, Simply Advanced Limited, Southern Heritage Limited, Star Merit Global Limited, Starry Bloom Limited, Sure Tycoon Limited, Towards Sunshine Limited, and United Riches Global Limited (collectively, the "**Objecting Debtors**"), by and through their undersigned counsel, hereby submit this objection (the "**Objection**") to the *Emergency Motion for Entry of Orders Granting (I) Ex Parte Relief and (II) Provisional Relief, Pursuant to Section 1519 of the Bankruptcy Code* [ECF No. 9 (the "**Motion**" or "**Mot.**")],[2] filed in the above-captioned chapter 15 cases (the "**Ch. 15 Cases**") by Paul Pretlove, David Standish and James Drury as putative foreign representatives (the "**Joint Provisional Liquidators**" or "**JPLs**") with respect to the ongoing provisional proceedings (the "**BVI Proceedings**") in the British Virgin Islands (the "**BVI**") of Prince Global Holdings Limited and its 29 affiliates (the "**Debtors**") and respectfully submit as follows:

## PRELIMINARY STATEMENT

The JPLs' emergency application for sweeping provisional relief should be denied for the simple reason that there is no emergency. The JPLs waited more than three months after their appointment in the BVI to seek emergency relief here. There are no U.S. assets to protect, no U.S. creditors to consider, and no U.S. litigation to stay—even if there were, the asset freezes imposed as a result of the various enforcement actions effectively eliminates any risk of value dissipation

---

[2]    Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

1

or diminution, as the JPLs concede. Mot. ¶ 60. And the JPLs' provisional appointment is being resolved at the very moment this brief is being filed—a two-day merits hearing began on April 16, 2026 in the BVI Court that will determine whether the JPLs' appointment will come to an end. This Court should let that process play out; there is nothing else to be done in the meantime.

Section 1519 relief exists to preserve the status quo. The only risk to the status quo in this case is the relief sought by the JPLs—namely, the power to seize and sell assets without further judicial oversight. Mot. ¶ 16(a). This is an extraordinary request, all the more so because it far exceeds the authority the BVI Court granted the JPLs. *See* BVI Appointment Orders at 4-8 ¶¶ 2, 3, 10. And the risk of wrongful asset dissipation at the hands of the JPLs looms especially large because they have admitted to using their provisional appointment power to "actively" seek (and, in at least one instance at least, actually obtain) licenses for asset sales they are not authorized to execute. Mot. ¶ 11. Selling assets and making distributions is not provisional relief. The JPLs did not get that power from the BVI court; they cannot now seek it here under the pretext of comity. *See* Mot. ¶¶ 31, 40, 44.

Nor can this Court, as the JPLs ask, "confirm[] their authority under BVI law." Mot. ¶ 4. Chapter 15 does not legitimize foreign law authority; it *recognizes* foreign law authority, to the extent (and only for so long as) it is in fact legitimate. The lawfulness of the JPLs' actions—the full extent of which have been kept secret, as the JPLs have been unwilling to share progress reports with the Objecting Debtors—and the propriety of their appointment in the first place are properly before the BVI Court. This Court should refrain from granting the relief sought in the Motion until those foreign law questions have been resolved.

In the meantime, the nature of the BVI appointments as investigatory proceedings, rather than insolvency proceedings, casts serious doubt on the appropriateness of chapter 15 relief,

2

emergency or otherwise. The JPLs are not reorganizing the Debtors; they are not liquidating the Debtors; they are not addressing any alleged insolvency at the Debtors; they are not adjusting any debtor-creditor relationships at the Debtors. Simply put, this is not a bankruptcy matter, and as such chapter 15 has no role to play.

## BACKGROUND

### A.    The EDNY's Flawed Criminal and Civil Forfeiture Actions

1.    On October 14, 2025, the United States Attorney's Office for the Eastern District of New York unsealed an Indictment charging Chen Zhi with one count of wire fraud conspiracy and one count of money laundering conspiracy. *See* Ex. 1 (the "**Indictment**").[3] On the same day the Indictment was unsealed, the EDNY also commenced a civil action in the Eastern District of New York (the "**Forfeiture Action**") seeking forfeiture of approximately 127,271 Bitcoin (the "**Defendant Cryptocurrency**"). *See* Ex. 2 (the "**Forfeiture Complaint**"). *Id.* at ¶¶ 5-12.

2.    As alleged in the Forfeiture Complaint, Mr. Chen is the founder and operator of the Prince Group, a Cambodian corporate conglomerate comprising dozens of business entities that operate in over thirty countries. *Id.* at ¶ 15. The Prince Group is "focused on real estate development, financial services and consumer services," *id*. ¶¶ 15-16, and also has substantial and lucrative hospitality and gaming businesses, both online and in casinos, *id*. ¶¶ 38, 40, 41-42. As of January 2024, the Prince Group's "total annual revenue from legitimate business operations" was estimated to be "several hundred million dollars" per year. *Id.* at ¶ 57.

3.    The Indictment contains a number of allegations that are demonstrably wrong and cause for healthy skepticism of the way the government conducted its investigation and brought its case. Most significantly, the Indictment contains a series of pictures that allegedly depict

---

[3]    All references to "Ex. _" refer to the accompanying Declaration of Peter M. Skinner, dated April 16, 2026.

3

Mr. Chen's criminal conduct that are provably not what the government says they are, as Mr. Chen has explained at length in filings in the EDNY. *See* Ex. 4 (Mr. Chen's Motion for a More Definite Statement), ECF No. 317 at 7-10.

4.    Like the Indictment, the Forfeiture Complaint is also flawed for many reasons. It says nothing about what happened to the Defendant Cryptocurrency between December 2020, by which time it had all been amassed by Mr. Chen and the Prince Group, and October 2025, when the Forfeiture Complaint was filed. *See* Ex. 3 (Mr. Chen's Motion to Dismiss the Forfeiture Complaint), ECF No. 316 at 5. It says nothing about how, when, or from whom the government obtained the Bitcoin, let alone what legal authority it had to do so. And it ignores the fact that in late December 2020, all of the Bitcoin was stolen from Mr. Chen and moved to wallets where it sat for nearly four years without any notable activity—no withdrawals, no transfers, and no exchanges for other cryptocurrencies—until it was moved into wallets controlled by the FBI.[4] *See id.;* Ex. 4, ECF No. 317 at 5-7.

5.    Mr. Chen has moved to dismiss the Forfeiture Complaint on multiple grounds. *See* Ex. 3. He has separately sought a more definite statement under Federal Rule of Civil Procedure 12(e), requesting that the government identify how, when, and under what authority it obtained custody of the Defendant Cryptocurrency. *See* Ex. 4. These motions remain pending as of the filing of this Objection.[5]

6.    Also on October 14, 2025, the United States and the United Kingdom imposed sanctions on Mr. Chen and entities affiliated with the Prince Group. In the United States, the

---

[4]    The Forfeiture Complaint does not identify any assets of the BVI-incorporated respondent companies within the territorial jurisdiction of the United States.

[5]    The Objecting Debtors' counsel, Boies Schiller Flexner ("BSF"), also represents Mr. Chen in the Forfeiture Action. Mr. Chen, who is currently detained in China, has not appeared in the criminal action.

Department of the Treasury's Office of Foreign Assets Control ("**OFAC**") designated 146 individuals and entities as sanctions targets, including Mr. Chen and 128 corporate entities alleged to be affiliated with or controlled by him or other Prince Group principals. *See* Ex. 5. Twenty-eight of the Debtor Companies—and all of the Objecting Debtors—are among the companies designated by OFAC. *See id.*; ECF No. 2-1. The OFAC designations were made on the basis of ownership or control relationships and alleged affiliations; they do not constitute findings that the designated companies engaged in wire fraud, money laundering or criminal conduct and they have no legal validity in the BVI.

7.      The United Kingdom imposed separate sanctions under its Global Human Rights Sanctions regime on Mr. Chen and entities affiliated with the Prince Group, only one of which is an Objecting Debtor. This regime applies a lower statutory standard of "reasonable grounds to suspect" involvement in serious human rights violations. Ex. 6. By operation of U.K. sanctions law, those sanctions extend to the British Virgin Islands as a British Overseas Territory. *See* ECF No. 4-4 (Skeleton Argument of the BVI AG) ¶ 19.

> **B.      The BVI AG Initiates *Ex Parte* Proceedings to Liquidate the Objecting Debtors on the Back of the Flawed EDNY Filings**

8.      On January 5, 2026, the Attorney General of the British Virgin Islands (the "**BVI AG**") commenced the BVI Proceedings in the BVI Commercial Court (the "**BVI Court**") by filing *ex parte* applications, Ex. 7 (the "**Ex Parte Applications**"), under Part VI of the BVI Insolvency Act, 2003 (ECF No. 4-3 (the "**BVI Insolvency Act**")), seeking the appointment of provisional liquidators over each of the Objecting Debtors and five other entities. The Ex Parte Applications were premised on the allegations contained in the Indictment and the Forfeiture Complaint, the imposition of foreign sanctions by U.S. and UK authorities, and news reports concerning actions

in Singapore, Hong Kong, Taiwan, and Thailand. *See, e.g.*, Ex. 7 at 440-45. The BVI AG has not claimed any independent or first-hand knowledge of the alleged conduct. *See id*.

9.      The BVI Insolvency Act allows for winding-up on three possible grounds: (a) "the company is insolvent;" (b) "the Court is of the opinion that it is just and equitable that a liquidator should be appointed;" or (c) "the Court is of the opinion that it is in the public interest for a liquidator to be appointed." BVI Insolvency Act at § 162(1)(a)-(c). There are no allegations here that the Debtors are insolvent or unable to pay their debts or that there are any non-inside creditors, much less a need to protect creditors with liquidators. Rather, the BVI AG sought relief only on the grounds that the appointment was purportedly "just and equitable" under subsection (b) and in the "public interest" under subsection (c). Ex. 7 at 35.

10.     On January 9, 2026, following an *ex parte* hearing and without making any adversarial findings, the BVI Court entered orders appointing the JPLs on a provisional basis to preserve the status quo pending a future full hearing. *See* ECF No. 3-3 (the "**BVI Appointment Orders**"). The BVI Appointment Orders were later extended, still on a provisional basis, in orders entered on February 5 and February 9, 2026. *See* ECF No. 3-4 (the BVI Extension Orders (collectively, with the BVI Appointment Orders, the "**BVI Orders**")).

11.     The BVI Orders grant the JPLs limited provisional powers aimed at preserving the status quo. *See, e.g.*, BVI Appointment Orders at 19 (authorizing the JPLs "to maintain the value of the assets owned by the Company," including to "take such steps as may be necessary to protect any such assets from removal or dissipation" and "to vote the shares of the Company in order to prevent the dissipation of its assets"). They do not contemplate a disposition or realization of assets, much less a liquidation of the company. To take any of those steps—which run counter to status quo preservation—the JPLs would have to seek further authorization from the BVI Court.

6

*See id.* at 7 (prohibiting sale of assets, distribution to stakeholders, and other realizations of value "without sanction of the [BVI] court").

12.     Other powers granted in the BVI Orders confirm that their provisional relief is primarily investigatory and has nothing to do with insolvency or reorganization. They require the JPLs to implement a detailed protocol to "facilitate effective cooperation" with the BVI AG "in the public interest, including in relation to potential and ongoing regulatory or criminal investigations and prosecution." *Id.* at 9. They also provide the BVI AG with access to the BVI Respondents' books and records for the express purpose of onward transmission to "law enforcement and regulatory authorities … in other jurisdictions." *Id.* at 25.

## C.     Pending Challenges to the Propriety of the BVI Proceedings

13.     In the three months that have passed since their appointment, the JPLs have kept the Objecting Debtors in the dark as to their activities and any actions they may have taken with respect to the Debtors' assets. The JPLs have issued two *ex parte* reports to the BVI Court, dated on or about January 27 and February 27, 2026, which were filed under seal and have not been made available to the Debtors. As the Objecting Debtors are in principle responsible for paying the costs of the JPLs and their counsel, the Objecting Debtors' counsel in the BVI, Campbells Law (BVI) ("**Campbells**"), asked the JPLs to clarify the costs they had incurred and requested advanced notice of any proposed dealings with the Objecting Debtors' assets. The JPLs refused.

14.     In March 2026, the Objecting Debtors' U.S. counsel, BSF, became concerned that the JPLs were seeking to sell some or all of Allied Cigar Group—a group of operating companies in which Mr. Chen has a majority interest. *See* ECF No. 3-5; Mot. ¶ 11. BSF then wrote to the JPLs to demand that they preserve records. ECF No. 3-5 (the "**BSF Hold Notice**"). This standard hold notice was written "to memorialize the rules and procedures governing the preservation of documents and other electronically stored media that may be relevant to the Forfeiture Action and

7

any other contemplated future actions that may arise in the event of an unlawful and potentially below-market sale of certain assets or interests of Mr. Chen." *Id.* at 1. Again, the JPLs did not respond. But BSF's concerns were well founded, as the JPLs now admit that they have taken multiple steps to sell assets—Mot. ¶ 11 ("The [JPLs] have been actively seeking licenses in relevant jurisdictions to provide authorization for transactions or dealings with blocked or frozen assets," and on March 18, 2026, the JPLs obtained a temporary license with respect to a group of companies known as "Allied Cigar")—despite the fact that the BVI Orders do not authorize the JPLs to sell, otherwise realize, distribute, or administer assets during the provisional relief period intended to preserve the status quo. *See* BVI Appointment Orders at 22 ¶ 10.

15. With the limited information made available to them, the Objecting Debtors have rigorously opposed continued appointment of the JPLs and the originating application for the final liquidation. On February 21, 2026, Campbells wrote to the BVI AG's legal counsel to express concerns that no evidence of wrongdoing was submitted with the *ex parte* applications, Ex. 11. Campbells' letter proposed a collaborative route forward where Mr. Cosimo Borrelli of Admiralty Partners Asia, as director to each of the Objecting Debtors, would provide any necessary information to the BVI AG and coordinate actions to preserve the value of the various companies and their assets. *See id.* at 2. The BVI AG did not entertain this alternative to the continued appointment of the JPLs.

16. On March 1, 2026, Campbells, on behalf of the twenty-five Objecting Debtors, filed Notices of Opposition to the liquidation applications, Ex. 8 (the "**Notices of Opposition**"), and applications to discharge the January 9 Appointment, Ex. 9.[6] The Notices of Opposition and

---

[6] On March 17, 2026 two other alleged Debtors—Amber Hill Ventures Limited and Lateral Bridge Global Limited—also filed Notices of Opposition. *See* ECF No. 3 (Pretlove Declaration) ¶ 58.

Applications to Discharge contend that the Ex Parte Applications disclose no proper basis for winding-up, are not grounded in insolvency or creditor protection, and constitute an abuse of process designed to leverage foreign criminal and regulatory proceedings. *See, e.g.*, Ex. 8 at 1-2. Those issues are now squarely before the BVI Court and will be addressed in the merits hearing scheduled for April 16-17, 2026. *See* ECF No. 3 (Pretlove Declaration) ¶ 3.

17.     Following those challenges, the JPLs on April 8, 2026, commenced these Ch. 15 Cases seeking recognition of the BVI Proceedings as foreign main proceedings, provisional relief under section 1519 of the Bankruptcy Code, and additional *ex parte* relief. [7]

## ARGUMENT

### I.     The Requested Relief Exceeds the Scope and Authority of Chapter 15.

18.     The JPLs seek sweeping emergency relief far outside the bounds of section 1519. That overreach is compounded by the fact that the JPLs sought their relief on an *ex parte* basis. On this point, the Motion misstates the law by purporting to quote from section 1519(b) of the Bankruptcy Code as follows: "As expressly contemplated by section 1519(b) of the Bankruptcy Code, which permits the Court to grant relief 'on an ex parte basis,' the urgent need to obtain the Emergency Order without prior notice is warranted . . . ." Mot. ¶ 59. Section 1519(b) does not say this. *See* 11 U.S.C. § 1519 (b) ("Unless extended under section 1521(a)(6), the relief granted under this section terminates when the petition for recognition is granted."). And the words quoted in the Motion do not appear in chapter 15 of the U.S. Bankruptcy Code. In any event, whether *ex parte* or otherwise, this Court should not grant relief that is extra-territorial, that grants greater relief than

---

[7]     The JPLs sought both provisional section 1519 relief pending a hearing on recognition, as well as *ex parte* 1519 relief pending a hearing on such section 1519 relief. Mot. ¶ 15. Although the *ex parte* relief has been largely mooted by the passage of time, for the avoidance of doubt, the Objecting Debtors also object to any relief being granted prior to the April 22, 2026 hearing—and indeed, any *ex parte* relief of any nature in these Ch. 15 Cases—on the same bases articulated herein.

9

the JPLs obtained from the BVI court, that authorizes asset realization during the provisional window for non-perishable assets, or that applies to non-Debtors.[8]

19.     The JPLs ask the Court to order that "[a]ll rights and remedies of any person or entity . . . whether judicial or extrajudicial, statutory or non-statutory, against or in respect of . . . the Authorized Foreign Representatives . . . are hereby stayed and suspended," subject to police-power carve-outs. *See* ECF No. 9-3 (Proposed Order (I) Scheduling the Recognition Hearing and Objection Deadline, (II) Specifying the Form and Manner of Service of Notice and (III) Granting Related Relief (the "**Proposed Order**" or "**Prop. Order**")) ¶ 12. This relief, which is not confined to the United States, is not permitted to the extent it is extraterritorial. *In re JSC BTA Bank*, 434 B.R. 334, 336-37 (Bankr. S.D.N.Y. 2010); *In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665, 680 (S.D.N.Y. 2011) ("These [chapter 15] proceedings are territorial and are not designed to have extraterritorial effect. . . the legislative history is clear that in a Chapter 15 case, 'the United States is acting *solely in an ancillary position*, so jurisdiction over property is limited to that stated in chapter 15.'") (quoting H.R. Rep. No. 109-31(I), at 96, 2005 U.S.C.C.A.N. 88, at 181). Indeed, this requested order would appear to prevent parties from even appearing at the April 16-17, 2026 BVI hearing on the propriety of the JPL's appointment and any future hearings in the BVI or other jurisdictions—matters that do not concern this court when sitting in a chapter 15 capacity. *See JSC BTA Bank*, 434 B.R. at 337 (rejecting a request for extraterritorial relief that would "convert a bankruptcy court in the United States into what amounts to a global clearing house for resolving

---

[8]   Multiple cited decisions in the JPLs' Motion are likewise misquoted or misidentified. For example, the quotation attributed to *In re Soundview Elite Ltd.*, 503 B.R. 571 (Bankr. S.D.N.Y. 2014) in Motion ¶ 33 does not appear in that decision, and the quotation attributed to *In re Team Sys. Int'l LLC*, 2023 WL 1428572 (Bankr. S.D.N.Y. Jan. 31, 2023) in Mot. ¶ 34 likewise does not exist. "*Calderon-Cardona v. Bank of N.Y. Mellon*, 821 F.3d 161," which is cited in footnote 2, is not a case—the cite is to a different decision in a different circuit. And the quotations attributed to *In re Three Arrows Capital, Ltd.*, 647 B.R. 440 (Bankr. S.D.N.Y. 2022), in Mot. ¶¶ 34 and 42 do not appear in the opinion.

the right to proceed in an appropriate foreign tribunal against a foreign business enterprise that may have only insignificant contacts with the United States"). The JPLs' request for extraterritorial relief from this Court is especially inappropriate because BVI law does not itself claim such global reach. Mot. at ¶ 30 (acknowledging the BVI court orders are enforceable only in the BVI); *Vitro v. ACP Master, Ltd. (In re Vitro)*, 455 B.R. 571, 582 (Bankr. N.D. Tex. 2011) ("Comity is not furthered by granting an injunction when such an injunction may not . . . be recognized under [the law of the foreign proceeding].").

20.     The JPL's extraordinary request for this Court to authorize asset realization as a provisional measure is similarly barred because it exceeds their BVI-law authority. *Compare* Order at 1 (asking this Court to issue a provisional relief order "entrusting full and sole authority over the ***administration and realization*** of the Debtors' assets"), *with* BVI Appointment Orders at ¶ 3(b) (authorizing the JPLs to "protect . . . assets from removal or dissipation") *and* Mot. ¶ 57 (describing their BVI mandate as that "to identify, secure, and preserve the Debtors' assets"). Chapter 15 does not permit this. *See JSC BTA Bank*, 434 B.R. at 337 ("[C]hapter 15 should not be the indirect means for obtaining global relief that could not otherwise have been achieved by order of the court having jurisdiction of the main foreign proceeding."). It is also barred because it bypasses section 1519(a)(2), which permits asset realization during the provisional window only as to "assets that, by their nature or because of other circumstances, are perishable, susceptible to devaluation or otherwise in jeopardy." 11 U.S.C. § 1519(a)(2). That is in contrast with section 1521(a)(5), which authorizes realization of U.S.-located assets generally once recognition is obtained. *See* 11 U.S.C. § 1521(a)(5); *see* 8 Richard Levin & Henry J. Sommer, *Collier on Bankruptcy* P 1519.01 (16th ed. 2026) ("[O]ne distinguishing limitation on pre-recognition relief is with respect to entrusting the assets of the debtor to the foreign representative . . . . [u]nder

section 1519, delivery of assets is limited to those that are perishable, susceptible to devaluation or otherwise in jeopardy. No such limitation appears in section 1521 on relief available upon recognition.").

21.    The requested relief is also barred insofar as it applies to non-Debtors. *See* Prop. Order at 1 (seeking relief "prohibiting any person . . . from commencing or continuing any act or legal proceeding . . . to seize, attach, garnish, confiscate, or transfer title to any assets of the Debtors *or any of their subsidiaries and affiliates*") (emphasis added). As an initial matter, this relief poses due process concerns, because the JPLs do not specify which non-debtor entities are to benefit from this protection. Put simply, the protections of the section 362 stay cannot be enforced against parties who do not know it is in place or what it is protecting. *In re Lord*, 325 B.R. 121, 130 (Bankr. S.D.N.Y. 2005) ("The issuance of an *in rem* order raises due process concerns, as the bankruptcy court's determination will implicate the rights of non-debtor third parties."). But even with notice, extension of the section 362 stay to non-debtors is extraordinary relief. *In re McCormick*, 381 B.R. 594, 601 (Bankr. S.D.N.Y. 2008) ("[M]ost, if not all courts consider the extension of the automatic stay under Code Section 362(a) to a nondebtor to be extraordinary relief.") (citing *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282 (2d Cir. 2003)). It should not be granted lightly in a chapter 15— especially where, as here, the protections granted by the BVI Court do not extend to non-debtors. *See* BVI Appointment Orders ¶ 11; *Vitro*, 455 B.R. at 581-582 ("Extending the automatic stay [to] non-debtors contravenes a basic and compelling principle of federal bankruptcy law. Like the rest of the Code, chapter 15 focuses on protecting the debtors, not the non-debtor subsidiaries.").

## II.    The Requested Relief Is Not "Urgently Needed to Protect the Assets of the Debtor or the Interests of Creditors" as Required by Bankruptcy Code Section 1519(a).

22.    Section 1519 authorizes urgent relief only to protect the status quo. *See, e.g.*, *In re Creative Fin. Ltd.*, 543 B.R. 498, 513 (Bankr. S.D.N.Y. 2016), *In re Worldwide Educ. Servs., Inc.*,

12

494 B.R. 494, 499 n.1 (Bankr. C.D. Cal. 2013) ("The purpose of provisional relief under Section 1519 is to provide remedial relief to preserve the status quo."). Here, there is no urgency.

23.     First, any notion of urgency is undermined by the JPLs' own delay. The JPLs were appointed three months ago, yet they waited until a week before the likely expiration of their authority to seek chapter 15 relief. This "undercuts the sense of urgency . . . and suggests that there is, in fact, no irreparable injury" that could justify relief. *See Citibank, N.A. v. Citytrust*, 756 F.2d 273, 277 (2d Cir. 1985) (quoting *Le Sportsac, Inc. v. Dockside Rsch.*, Inc., 478 F. Supp. 602, 609 (S.D.N.Y. 1979)).

24.     Second, there is no urgent need to protect U.S. assets, as the JPLs have not identified any. And if such assets did exist, then, as the JPLs concede, they are safeguarded under existing OFAC sanctions. *See* Mot. ¶ 60 ("[T]he substantial majority of the Debtors' assets are already blocked pursuant to OFAC sanctions and therefore [are] unavailable for any transaction absent OFAC authorization").

25.     Third, there is no urgent need to authorize expansive discovery in whatever limited time remains before a hearing on recognition, and any such emergency request is suspect. *See* Patricia B. Tomasco & Sara C. Clark, *Asymmetric Discovery in Chapter 15*, ABI Journal, Sept. 2019 ("Few foreign debtors use pre-recognition discovery . . . [and it] more often focuses on issues directly relevant to recognition rather than discovery of assets, misconduct or potential claims.").[9]

---

[9]   The JPLs claim this Court could grant these broad subpoena powers on an *ex parte* basis. Mot. ¶ 21 ("[C]ourts have regularly authorized discovery on an emergency basis in ex parte proceedings.") To support this sweeping proposition, however, they cite only to three cases that do not involve chapter 15, all of which were decided years or decades before chapter 15 was enacted. *Id.*

13

**III.     The Requested Relief Does Not Protect the "Interests of Creditors and Other Interested Entities, Including the Debtor" as Required by Section 1522(a).**

26.     Emergency relief under Bankruptcy Code section 1519 may be granted "only if the interests of creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. § 1522(a); *In re Rede Energia S.A.*, 515 B.R. 69, 90 (Bankr. S.D.N.Y 2014). That necessitates narrowly tailored relief. *In re Atlas Shipping A/S*, 404 B.R. 726, 739 (Bankr. S.D.N.Y. 2009) ("Standards that inform the analysis of § 1522 . . . emphasize the need to tailor relief . . . ."); *In re Toft*, 453 B.R. 186, 196 n.11 (Bankr. S.D.N.Y. 2011) ("[A] court should tailor relief balancing the interest of the foreign representative and those affected by the relief."). The relief sought here is wildly broad; as discussed, it exceeds what can be issued after recognition, much less before. *See supra* ¶¶ 18-21.

27.     The interests of parties-in-interest in this case are not protected because the requested relief risks *upending*, rather than *preserving*, the status quo. *See In re Innua Canada Ltd.*, No. 09-16362, 2009 WL 1025088, at *4 (Bankr. D.N.J. Mar. 25, 2009) (parties-in-interest benefit from maintenance of the status quo). Rather than seeking limited relief, the JPLs request full authority to administer and realize the Debtors' assets, including the power to effectuate asset sales. *See* Mot. ¶ 16(a). Asset sales are the very opposite of status quo preservation because they transfer control to third parties and create the very unwind risks that Bankruptcy Code section 1519 is meant to avoid. This departure from established practice is especially stark because courts granting provisional relief under section 1519—including in authorities cited by the JPLs themselves—typically impose a proviso barring the foreign representatives from selling, transferring or otherwise disposing of assets during the provisional period. *See, e.g.*, *In re Ascentra Holdings, Inc.*, No. 21-11854 (DSJ) [D.I. No. 17] (Bankr. S.D.N.Y. Nov. 2, 2021). The Proposed Order here contains no such limitation.

14

28. The risk of unmonitored asset disposition by the JPLs are underscored by the Motion, where the JPLs admit to "actively" pursuing asset sales. Mot. ¶ 11 ("The Authorized Foreign Representatives have been actively seeking licenses in relevant jurisdictions to provide authorization for transactions or dealings with blocked or frozen assets."). They even admit to a contemplated asset sale in connection with the asset that prompted the BSF Hold Notice. *Compare* Mot. ¶ 11 (JPLs have requested and successfully obtained a license "to facilitate certain activities necessary to stabilize operations," including with respect to the Debtors' equity in Allied Cigar), *with* BSF Hold Notice at 1 ("[W]e presume that you may be seeking a specific license from OFAC to permit the sale . . . however, we have not been privy to any communications between you and OFAC regarding any application for, or grant of, a license to dispose of Allied Cigar Fund, L.P."). This signals that the JPLs are already contemplating transactions involving regulated assets. Mot. ¶ 11. These admissions are especially alarming given that the BVI Court did not authorize the JPLs to sell or otherwise realize or distribute assets. The BVI Court only authorized the JPLs to preserve the status quo—a limitation on authority that the JPLs now hope to remedy with a hasty order from this Court.

29. Permitting asset realization under those circumstances would not protect creditors or other interested entities; it would only expose them to the type of instability and transaction uncertainty that section 1522 is meant to prevent.

**IV. The Requested Relief Fails to Satisfy the Requirements for a Preliminary Injunction.**

30. In deciding whether to grant provisional relief under section 1519(a) of the Bankruptcy Code, a court will apply the "standards, procedure, and limitations" applicable for the entry of a preliminary injunction. 11 U.S.C. § 1519(e); *see also In re Beechwood Re*, No. 19-11560 (MG), 2019 WL 3025283, at *2 (Bankr. S.D.N.Y. July 10, 2019). Section 1519 relief is thus

warranted where there is (1) a likelihood of success on the merits (*i.e.*, obtaining recognition of the foreign proceeding); (2) there is risk of "imminent irreparable harm" in the absence of relief; (3) the balance of the harms tips the movant's favor; and (4) the public interest weighs in favor of an injunction. *In re Silicon Valley Bank (Cayman Islands Branch),* 658 B.R. 75, 88 (Bankr. S.D.N.Y. 2024). None of these factors is met here.

### A.      The Petitioners Cannot Show a Likelihood of Success on the Merits.

31.      On a request for provisional relief under section 1519, "likelihood of success on the merits" means likelihood of success on "obtaining recognition of the foreign proceeding." *In re Iovate Health Scis. Int'l Inc.*, 673 B.R. 516, 528 (Bankr. S.D.N.Y. 2025). The JPLs cannot meet that standard here, where there is a possibility that the JPLs' appointment will be terminated as a matter of BVI law before this Court ever reaches a recognition hearing and, in any event, the BVI Proceedings do not qualify as "foreign proceedings" under the U.S. Bankruptcy Code.[10]

32.      To qualify for recognition, the BVI Proceedings must satisfy each element of the definition of a "foreign proceeding" set forth in the Bankruptcy Code. 11 U.S.C. § 1515(a). The Bankruptcy Code defines "foreign proceeding" as:

> a **collective** judicial or administrative proceeding in a foreign country, including an interim proceeding, **under a law relating to insolvency or adjustment of debt** in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, **for the purpose of reorganization or liquidation**.

11 U.S.C. § 101(23) (emphasis added). Courts have read this definition to mean that a "foreign proceeding" must meet seven elements: "(i) [the existence of] a proceeding; (ii) that is either judicial or administrative; (iii) that is collective in nature; (iv) that is in a foreign country; (v) that

---

[10]   The Objecting Debtors will brief this issue fully in connection with their objection to recognition and reserve all rights to supplement the arguments made here on an emergency timeline.

is authorized or conducted under a law related to insolvency or the adjustment of debts; (vi) in which the debtor's assets and affairs are subject to the control or supervision of a foreign court; and (vii) which proceeding is for the purpose of reorganization or liquidation." *In re Ashapura Minechem Ltd.*, 480 B.R. 129, 135-36 (S.D.N.Y. 2012); *see also In re ENNIA Caribe Holding N.V.*, 594 B.R. 631, 638 (Bankr. S.D.N.Y. 2018). Failure to satisfy any one of these statutory elements is fatal to recognition. *See Ashapura*, 480 B.R. at 136. The BVI Proceedings fail at least two of those elements because they are not "collective" and they are not "for the purpose of reorganization or liquidation." *Id.*

33.     A "collective proceeding is one that considers the rights and objectives of *all* creditors," and that is for the "general benefit of the creditors." *Id.* And "[o]ther characteristics of a collective proceeding include: … provisions for the distribution of assets according to statutory priorities, and a statutory mechanism for creditors to seek court review of the proceeding." *Id.* at 137; *see also In re Global Cord Blood Corp.*, No. 22-11347 (DSJ), 2022 WL 17478530, at \*7-8, \*10-12 (Bankr. S.D.N.Y. Dec. 5, 2022) (no foreign proceeding where "the JPLs have been granted powers for the purpose of preserving [debtor]'s assets and investigating and reporting on the company's affairs," and "no 'winding up' process has been commenced in the Cayman Proceeding, nor is any effort underway to 'liquidate' corporate assets or the corporation itself").

34.     Here, the provisional BVI proceedings do not involve the administration or adjudication of creditor claims, and they are not conducted for the benefit of creditors collectively. In her *ex parte* applications, the BVI AG applied for the appointment of liquidators under the BVI Insolvency Act on "public interest" and "just and equitable" grounds—notably bypassing insolvency grounds that are also present in the BVI statute. *Compare* BVI Insolvency Act § 162 (1)(a) ("the company is insolvent"), *with id.* § 162(1)(b) ("the Court is of the opinion that it is just

17

and equitable that a liquidator should be appointed") and § 162(1)(c) ("the Court is of the opinion that it is in the public interest for a liquidator to be appointed"). The absence of any creditor constituency or collective claims process places the provisional BVI Proceedings well outside the scope of chapter 15. *See, e.g.*, *Global Cord Blood*, 2022 WL 17478530, at *8-9 (refusing to recognize a "collective proceeding" where "the Cayman Proceeding at issue here does not, at least presently, seek to identify creditors, quantify and classify [the debtor's] debts, or determine a scheme of distribution to creditors on accounts of those debts … Nor has any 'winding up' process begun"); *In re Gold & Honey, Ltd.*, 410 B.R. 357, 370 (Bankr. E.D.N.Y. 2009) (finding Israeli receivership proceeding was not collective in nature because it was primarily designed to benefit a single secured creditor).

35.     The BVI Proceedings also fail to qualify for recognition because they were initiated for investigative purposes, not for reorganization or liquidation. The UNCITRAL Guide to Enactment of the Model Law (the "**UNCITRAL Guide**")[11] warns that proceedings are "ineligible for recognition" where "they are not for the stated purpose of reorganization or liquidation," including proceedings "designed to prevent dissipation and waste," "designed to prevent detriment to investors rather than to all creditors," or proceedings in which the foreign representative's powers are "more limited than the powers or duties typically associated with liquidation or organization, for example, the power to do no more than preserve assets." UNCITRAL Guide ¶ 77. That is the case here. The JPLs were appointed to aid the BVI AG in her investigative undertakings and to further her efforts to cooperate with foreign law enforcement and sanctions authorities. *See, e.g.*, BVI Appointment Orders at 25 ¶ 5.2; Ex. 10 (BVI AG's April 14 Skeleton) ¶ 9. This precludes

---

[11]   *See* UNCITRAL *Model Law on Cross-Border Insolvency with Guide to Enactment and Interpretation*, 42 (Jan. 2014) (available at https://digitallibrary.un.org/record/1487896/files/1997-model-law-insol-2013-guide-enactment-e.pdf.)

a finding that the BVI Proceeding is a "foreign proceeding" under the statute. *Global Cord Blood*, 2022 WL 17478530, at *1, *10-12 (denying recognition where provisional Cayman proceeding aimed at fraud investigation was "most akin to a corporate governance and fraud remediation effort" rather than an insolvency proceeding); *see also In re British Am. Ins. Co. Ltd.*, 425 B.R. 884, 906 (Bankr. S.D. Fla. 2010) (foreign proceeding did not qualify for recognition where the foreign court "had ordered neither a winding up nor a reorganization of [the debtor]"). Put simply, chapter 15 is not designed to recognize foreign investigatory or enforcement functions. *Global Cord Blood*, 2022 WL 17478530, at *9 ("Courts' consistent focus on the existence of creditor-related proceedings abroad reflects the overall purpose and focus of [c]hapter 15, and avoids expanding [c]hapter 15 to provide [b]ankruptcy [c]ourt assistance for any foreign proceeding aimed at counteracting corporate fraud and making victimized corporations or shareholders whole."). Its purposes are the "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities" and the "facilitation of the rescue of financially troubled businesses." 11 U.S.C. § 1501(a)(3), (5). The BVI Proceedings do neither.

**B.    There Is No Risk of Irreparable Harm.**

36.    A showing of irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *In re Andrade Gutierrez Engenharia S.A.*, 645 B.R. 175, 181 (Bankr. S.D.N.Y. 2022) (quoting *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009)). The JPLs do not meet their burden to demonstrate that, absent an injunction, the debtors or creditors "will suffer an injury that is neither remote nor speculative, but actual and imminent." *Id.*; *see also Beechwood*, 2019 WL 3025283, at *2 (denying section 1519 provisional relief because foreign representative's claimed harm was contingent on future adverse ruling); *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 727-28 (3d Cir. 2004) (irreparable harm must be such that "money alone cannot atone for it") (internal quotation omitted).

19

37.     The JPLs suggest that irreparable harm exists because there is a risk of asset dissipation. Mot. ¶¶ 33, 35. But the JPLs have identified no U.S.-located debtor assets. And if such assets did exist, the sanctions regimes already prohibit dissipation. *See* Mot. ¶ 60 ("[T]he substantial majority of the Debtors' assets are already blocked pursuant to OFAC sanctions and therefore [are] unavailable for any transaction absent OFAC authorization"). They also blame the "Prince Group's" purportedly "opaque corporate structure and historical concealment of asset flows" for their failure to identify U.S. assets. *See* Mot. ¶ 35. But there is no evidence that the Objecting Debtors' have confusing structures or a history of concealing asset transfers. Rather, the JPLs rely exclusively on Paul Pretlove's conclusory claim that the "Prince Group is alleged in the Forfeiture Complaint to have deliberately obfuscated its corporate structure and books and records." *Id.* (citing Pretlove Decl. ¶ 47). But none of the Objecting Debtors are referenced anywhere in the Forfeiture Complaint. And in any event, the JPLs cannot support an application for extraordinary preliminary relief on the grounds that they don't know what they don't know and upon a third party's allegations.

38.     The JPLs next worry that, without an injunction, they may face litigation in the U.S. challenging sales of the Debtors' assets that they pursue outside the bounds of their authority or at under-market prices. Mot. ¶ 38. First, that is not harm to the Debtors or their stakeholders; it is harm to the JPLs, which is not relevant to this Court's preliminary injunction analysis. *See* 11 U.S.C. § 1519(a). Even if it were the type of harm chapter 15 cared about, it would constitute only monetary harm and as such would not be irreparable. *See In re Corp. Res. Servs., Inc.*, No. 15-12329 (MG), 2020 WL 1907538, at *7 (Bankr. S.D.N.Y. April 15, 2020) ("An irreparable harm is one that cannot be remedied through a monetary award.") (citation omitted). More importantly, however, if the JPLs pursue unlawful or under-market sales, they should not be shielded from

20

litigation for that wrongdoing. Judicial oversight is a safeguard against improvident or unlawful action by JPLs operating under contested authority; it is not a "harm" on which injunctive relief is warranted.

### C.    The Balance of Equities Weighs Against Relief.

39.    The third preliminary injunction factor balances the harms. Here, those equities tip decidedly in favor of the Objecting Debtors.

40.    Without an injunction, the JPLs claim there will be "interference with the Authorized Foreign Representatives' authority" and "conflicting instructions to counterparties, and diminution of recoveries for a creditor body expected to consist largely of victims." Mot. ¶ 41. But challenges to the JPLs' authority are not harm to the debtors, their property, or their stakeholders. *See supra* ¶ 38. Likewise, there is no evidence of "conflicting instructions to counterparties" or a "diminution" of the Objecting Debtors' assets located in the U.S. or elsewhere. The JPLs cite to the Pretlove Declaration at ¶¶ 54-59 and 61 for these claims, but those paragraphs describe the Objecting Debtors' proper actions before the BVI Court to challenge the JPLs' appointment and "actions relating to the Debtors" (¶ 57) that have nothing to do with "counterparties" or assets. In short, the JPLs have provided no evidence they will be harmed if the extraordinary relief they seek is not granted.

41.    In contrast, the harms to Objecting Debtors and to the orderly resolution of the BVI Proceedings will be substantial if the JPLs' injunctive relief is granted.

42.    First, it is less a risk than a certainty that the JPLs will act on their plan to sell assets related to the Allied Cigar Group—the same activities that triggered the BSF Hold Notice. *See supra* ¶¶ 14, 28. After all, they are asking for this Court's blessing to administer and realize the Debtors' assets during the provisional relief window. Mot. ¶ 16(a). Those asset sales are *ultra vires* to the JPLs' BVI-law authority and may very well occur at under-market prices. If the JPLs are

21

soon stripped of their BVI-law authority, as the Objecting Debtors believe they will be, it could be difficult to unwind those transactions or claw back value siphoned to favored counterparties. *See Vitro*, 455 B.R. at 583 (denying § 1519 relief where the foreign proceedings were "in an early stage" and it was "unclear that they will be successful").

43.    Second, the relief would expose the Objecting Debtors and other parties-in-interest to burdensome discovery, including expansive subpoena powers untethered to any legitimate insolvency administration and far exceeding the authority available to the JPLs in the BVI. *See* Prop. Order at 1(d) (asking for authority "to issue subpoenas for the production of documents and testimony to any persons or entities that the [JPLs] reasonably determine may have information relevant to the Debtors, their affairs, or their assets").

44.    Third, the requested relief would interfere with the BVI process and other potential proceedings by constraining the Objecting Debtors' ability to challenge the JPLs' authority or the propriety of their actions in other jurisdictions. *See* Mot. ¶ 37 (characterizing BVI law firm's refusal to disclose sensitive information of its BVI-incorporated clients without a BVI court order as the type of interference a 1519 order should address); ¶ 41 (arguing that without the requested relief, the JPLs will have to continue addressing challenges to their appointment in BVI); ¶ 52 (suggesting that the BVI Debtors' retention of their own BVI counsel should be barred by the 1519 order). This harm cannot later be unwound; it handcuffs the Objecting Debtors' ability to defend themselves.

### D.    The Public Interest Disfavors Relief.

45.    Finally, with respect to the public interest factor, chapter 15 courts ask whether the requested relief comports with the policy and purposes of U.S. bankruptcy law. *See, e.g.*, *Vitro*, 455 B.R. at 581-582 (section 1519 injunction disserved public interest because it "contravene[d] a

22

basic and compelling principle of federal bankruptcy law"). Here, the requested relief is contrary to U.S. bankruptcy policy for multiple reasons.

46.     First, the JPLs' demands for relief, such as subpoena power, that they cannot obtain in the BVI court are contrary to principles of comity, a core chapter 15 tenet. *Id.* at 582 (denying 1519 relief that sought relief unavailable in the foreign proceeding on grounds that "chapter 15 cases courts strive to uphold comity" and "[c]omity [was] not furthered" by the requested relief).

47.     Second, the policy behind emergency relief also cuts against granting it where, as here, any so-called "emergency," if it exists at all, is one of the movant's own making. *See Worldwide Educ. Servs.*, 494 B.R. at 501 (denying 1519 relief to a BVI liquidator who delayed recognition before seeking an emergency stay "on the eve of trial"); *Thomson v. Silverman*, No. 25-CV-2925 (MKV), 2025 WL 1078334, at *2 (S.D.N.Y. Apr. 10, 2025) (delay in seeking emergency relief "smacks of gamesmanship and undermines [the] argument for irreparable harm"); *Monowise Ltd. Corp. v. Ozy Media, Inc.*, No. 17-CV-8028 (JMF), 2018 WL 2089342, at *1 (S.D.N.Y. May 3, 2018) (a court "must consider a plaintiff's delay in seeking relief") (collecting cases).

48.     Third, given the existing enforcement actions and sanctions regime preserving the Objecting Debtors' assets, the requested relief is contrary to bankruptcy policy because it is a waste of judicial resources. *See Am. Healthcare Admin. Servs. v. Aizen*, 285 A.3d 461, 498 (Del. Chancery Court 2022) (a request to "freeze already frozen funds" is waste of judicial resources); *Ferguson v. Ruane Cuniff & Goldfarb Inc.*, No. 17-CV-6685 (ALC), 2022 WL 420763, at *3 (S.D.N.Y. Feb. 3, 2022) ("[T]here is a significant public interest in conserving judicial and arbitration resources . . . .").

49.     Finally, as explained above, chapter 15 proceedings are intended to recognize

foreign proceedings that are instituted "for the purpose of reorganization or liquidation." 11 U.S.C. § 101(23). Here, that is not the case, because the BVI proceedings are investigative and have nothing to do with creditor claims. Consequently, the JPLs' requested relief is contrary to public policy because it does not comport with chapter 15's purpose.

* * *

50.     At bottom, this is quite a house of cards. In October 2025, the United States Attorney's Office for the Eastern District of New York filed fundamentally flawed criminal and civil charges against Mr. Chen. At the same time, the Treasury Department sanctioned Mr. Chen and scores of other individuals and entities, largely echoing the EDNY's problematic allegations. In January 2026, on the back of those U.S. government filings, the BVI AG obtained, *ex parte*, the JPLs' provisional appointment over thirty BVI entities, including the twenty-five Objecting Debtors. And finally, three months later, on the eve of a hearing in the BVI to consider whether their appointment should be made permanent, the JPLs have run to this Court seeking to leverage their provisional appointment into emergency relief to buttress their position back home in the BVI. Whether and when this house of cards will fall are beyond the scope of this motion. But one thing is for sure: the last card should be put back in the deck because this motion was brought too late and for no good reason.

24

## CONCLUSION

For the reasons set forth above, the Objecting Debtors request that the Court deny the

Motion.

Dated: April 16, 2026
        New York, New York

Respectfully Submitted,

**BOIES SCHILLER FLEXNER LLP**

*/s/ Peter M. Skinner*
Matthew L. Schwartz
Peter M. Skinner
Gordon Z. Novod
55 Hudson Yards
New York, New York 10001
Telephone: (212) 303-3646
mlschwartz@bsfllp.com
pskinner@bsfllp.com
gnovod@bsfllp.com

Dan G. Boyle
2029 Century Park East
Los Angeles, California 90067
Telephone: (213) 995-5732
dboyle@bsfllp.com

Laura Femino (*pro hac vice to be filed*)
401 E Las Olas Boulevard
Fort Lauderdale, Florida 33301
Telephone: (954) 377-0716
lfemino@bsfllp.com

*Counsel to the Objecting Debtors*