Andrew G. Dietderich
Sharon Cohen Levin
Christopher J. Dunne
Jacob M. Croke
Alexa J. Kranzley
**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, NY 10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

*Counsel to the Authorized Foreign Representatives*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| PRINCE GLOBAL HOLDINGS LIMITED *et al,.*[1] | Case No. 26-10769 (MG) |
| Debtors in Foreign Proceedings. | (Jointly Administered) |

**CORRECTED EMERGENCY MOTION FOR ENTRY OF ORDERS GRANTING**
**(I) *EX PARTE* RELIEF AND (II) PROVISIONAL RELIEF, PURSUANT**
**TO SECTION 1519 OF THE BANKRUPTCY CODE**

Paul Pretlove, David Standish and James Drury, in their capacities as the authorized

foreign representatives (collectively, the "Authorized Foreign Representatives") for Prince Global

Holdings Limited and its affiliated debtors (collectively, the "Debtors"), regarding the Debtors'

provisional liquidation proceedings (the "BVI Proceedings") in the Eastern Caribbean Supreme

Court in the BVI High Court of Justice (Commercial Division) (the "BVI Court") pursuant to

section 170 of the BVI Insolvency Act, 2003 (the "BVI Insolvency Act"), hereby submit this

motion (the "Motion") for entry of a temporary restraining order, substantially in the form attached

---

[1]   The Debtors in these Chapter 15 Cases are incorporated in the British Virgin Islands (the "BVI") and maintain their registered address at Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands, VG1110.  A complete list of the Debtors and their company numbers is attached as Exhibit A.

hereto as <u>Exhibit B</u>, and an order granting provisional relief, substantially in the form attached hereto as <u>Exhibit C</u>, pursuant to section 1519 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "<u>Bankruptcy Code</u>").   In support of the Motion, the Authorized Foreign Representatives rely upon (a) the *Declaration of Paul Pretlove in Support of (A) the Emergency Motion for Entry of Orders Granting (I) Ex Parte Relief and (II) Provisional Relief, Pursuant to Section 1519 of the Bankruptcy Code and (B) the Verified Petition Under Chapter 15 for Recognition of Foreign Main Proceedings and Related Relief* (the "<u>Pretlove Declaration</u>") and (b) the *Declaration of Andrew Chissick in Support of (A) the Emergency Motion for Entry of Orders Granting (I) Ex Parte Relief and (II) Provisional Relief, Pursuant to Section 1519 of the Bankruptcy Code and (B) the Verified Petition Under Chapter 15 for Recognition of Foreign Main Proceedings and Related Relief* (the "<u>Chissick Declaration</u>").   In further support of the relief requested herein, the Authorized Foreign Representatives represent as follows:

### Preliminary Statement

1.        The Debtors are entities incorporated in the British Virgin Islands ("<u>BVI</u>") that are alleged to be part of, affiliated with, or associated with the "Prince Group," which has been identified by the U.S. Department of Justice (the "<u>DOJ</u>"), the U.S. Department of the Treasury, and international law enforcement and regulatory authorities as a large-scale transnational criminal enterprise alleged to have engaged in, among other things, cryptocurrency investment fraud, wire fraud, money laundering, human trafficking, and forced labor. *See* Pretlove Declaration ¶¶ 11–18.

2.        On October 14, 2025, the DOJ unsealed a criminal indictment (the "<u>Indictment</u>") against Chen Zhi—the alleged chairman and controlling figure of the Prince Group—charging him with wire fraud conspiracy and money laundering conspiracy.  On the same date, the United States filed a verified civil forfeiture complaint (the "<u>Forfeiture Complaint</u>") in the U.S. District Court for the Eastern District of New York seeking forfeiture of approximately 127,271 Bitcoin

(equivalent to approximately $8.7 billion) alleged to represent proceeds and instrumentalities of the Prince Group's fraud and money laundering schemes (the "EDNY Forfeiture Action"). Concurrently, the Office of Foreign Assets Control ("OFAC") and the Office of Financial Sanctions Implementation of HM Treasury ("OFSI") imposed sweeping sanctions targeting Chen Zhi, the Prince Group, and 146 individuals and entities within and connected to it. Twenty-eight of the Debtors are among the sanctioned entities and the remaining two—Amber Hill Ventures Limited ("Amber Hill") and Lateral Bridge Global Limited ("Lateral Bridge")—are not designated but are identified in the Forfeiture Complaint as entities used to launder illicit proceeds. *See* Pretlove Declaration ¶¶ 20–30.

3. In response to these enforcement actions, the Attorney General of the BVI applied to the BVI Court for the appointment of the Authorized Foreign Representatives as joint provisional liquidators to assume control of the Debtors, investigate their affairs, and identify, secure, and preserve their assets. Following an *ex parte* hearing on January 9, 2026, the BVI Court granted orders (collectively, the "BVI Orders") appointing the Authorized Foreign Representatives as provisional liquidators of the Debtors. *See* Pretlove Declaration ¶¶ 40–41; Chissick Declaration ¶¶ 17, 22–23.

4. The need for the provisional relief requested herein is compelling. The Authorized Foreign Representatives mandate requires them to be in contact with U.S. governmental authorities, including the United States Attorney for the Eastern District of New York with respect to the EDNY Forfeiture Action, and OFAC with respect to the sanctions that currently restrict the activities of the Debtors and their subsidiaries. The question of sanctions relief is especially urgent, with applications currently pending as described in more detail below. The provisional relief will assist the Authorized Foreign Representatives in confirming their authority under BVI

law to represent the Debtors interests in the United States with these governmental authorities, and to seek supporting information from third-party U.S. persons.

5. In addition, proxies and persons associated with Chen Zhi have taken concrete steps to interfere with the Authorized Foreign Representatives' authority across multiple jurisdictions, including through U.S. litigation threats, applications in the BVI Court seeking discharge of the BVI Orders, purported director appointments, and engagement with counterparties without the Authorized Foreign Representatives' authorization. *See* Pretlove Declaration ¶¶ 54–59. Absent the relief requested herein, there is nothing to prevent these competing actors from commencing proceedings in U.S. courts, engaging with U.S. counterparties while disputing the Authorized Foreign Representatives' standing, or taking other actions in the United States inconsistent with the BVI Orders.

6. The Authorized Foreign Representatives therefore seek provisional relief under section 1519 of the Bankruptcy Code to preserve the *status quo*, protect the Debtors' U.S. assets, and enable targeted discovery to identify, secure, and preserve estate property during the gap period before recognition is decided. As set forth below, the requested relief satisfies all applicable standards, is routinely granted by this Court, and is designed to complement—not conflict with— the OFAC sanctions regime.

**Jurisdiction and Venue**

7. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* M-431 from the U.S. District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.). This case is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P). Venue is proper in this District pursuant to 28 U.S.C. § 1410. The statutory predicates for the relief requested herein are sections 105(a), 362,

1519 and 1521(a) of the Bankruptcy Code and rule 7065 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Background**

8.     On the date hereof (the "Petition Date"), the Authorized Foreign Representatives commenced these chapter 15 cases ("Chapter 15 Cases") by filing for each debtor entity the *Chapter 15 Petition for Recognition of a Foreign Proceeding* (collectively, the "Forms 401") and the *Verified Petition Under Chapter 15 for Recognition of a Foreign Main Proceeding and Related Relief* (the "Verified Petition" and, together with the Forms 401, the "Petitions"), seeking recognition of the BVI Proceedings as foreign main proceedings pursuant to section 1517 of the Bankruptcy Code and related relief.  Each of the Debtors was incorporated under the laws of the BVI as a business company pursuant to the BVI Business Companies Act, 2004, a form of limited liability company that is broadly comparable to a corporation under United States law.  *See* Pretlove Declaration ¶ 11.

9.     As alleged in the Indictment and the Forfeiture Complaint, the Debtors were not independent operating businesses.  They served as components of a layered corporate architecture through which the Prince Group held real property, investment interests, financial accounts, and other assets across multiple jurisdictions, including the United States, the United Kingdom, Hong Kong, Singapore, the Cayman Islands, Cambodia, and Spain.  It is alleged that the corporate structure was deliberately designed to obscure the ultimate beneficial ownership and control of assets, and to facilitate the movement and laundering of proceeds derived from criminal activity. Pretlove Declaration ¶¶ 16–18.

10.     Pursuant to the BVI Orders, the Authorized Foreign Representatives have acquired control of the Debtors under BVI Law.  The BVI Orders, which were continued on an *inter partes*

basis on January 29, 2026, confer broad authority on the Authorized Foreign Representatives to, among other things, (i) investigate the Debtors' affairs; (ii) preserve assets; (iii) take control of the Debtors' corporate governance and bank accounts; and (iv) seek recognition of the Authorized Foreign Representatives' appointment in foreign jurisdictions, including the United States. *See* Pretlove Declaration ¶¶ 42–45; *see also* Chissick Declaration ¶¶ 22–24.

11.     The OFAC sanctions have had immediate and severe operational consequences for the Debtors, including the freezing of bank accounts and the cessation of engagement by financial institutions and service providers across multiple jurisdictions.  The Authorized Foreign Representatives have been actively seeking licenses in relevant jurisdictions to provide authorization for transactions or dealings with blocked or frozen assets undertaken pursuant to the Authorized Foreign Representatives' court-appointed mandate are under applicable sanctions laws and regulations (*i.e.*, under U.S. or U.K. law, where they apply to the Authorized Foreign Representatives' mandate).  On February 20, 2026, the Authorized Foreign Representatives submitted a license application to OFAC requesting the issuance of a license on an expedited basis to authorize U.S. persons acting at the direction or with the consent of the Authorized Foreign Representatives to engage in certain activities with respect to the Debtors that require licensure by OFAC.  The Authorized Foreign Representatives remain in active contact with OFAC regarding this license application.  Meanwhile, in response to urgent developments at the Allied Cigar Group—a group of operating companies engaged in the global distribution of premium cigar products in which one of the Debtors holds a majority investment—OFAC issued at the Authorized Foreign Representatives request a temporary license (License No. TCO-2026-1464321-2) on March 18, 2026, to facilitate certain activities necessary to stabilize operations.

12.     Since their appointment, the Authorized Foreign Representatives have encountered active resistance from parties associated with Chen Zhi and the Prince Group who have taken steps to challenge the Authorized Foreign Representatives' authority and interfere with their mandate in multiple jurisdictions. These actions include: the purported appointment of Cosimo Borrelli as director of 25 of the Debtors pursuant to a purported power of attorney from Chen Zhi dated December 29, 2025—eight days before Chen Zhi's arrest; litigation threats from Boies Schiller Flexner LLP ("BSF") expressly contemplating U.S. litigation against the Authorized Foreign Representatives' exercise of their court-appointed authority; unsigned statements of affairs describing certain assets as "pledged for liabilities to shareholders"; and applications in the BVI Court seeking to discharge the BVI Orders. *See* Pretlove Declaration ¶¶ 54–59.

13.     At present, the Authorized Foreign Representatives have limited visibility into the full scope of assets held by the Debtors. The Prince Group is alleged to have deliberately obfuscated its corporate structure, books, and records. The Authorized Foreign Representatives' present understanding of the Debtors' assets is based principally on publicly available information, U.K. and Hong Kong land registry documents, the Debtors' corporate registers, documents obtained from the Debtors' former registered agent, and the Authorized Foreign Representatives' further preliminary investigation. Additional assets, entities, jurisdictions, and counterparties are expected to be identified as records are obtained and investigations progress. *See* Pretlove Declaration ¶ 47.

## **Relief Requested**

14.     By this Motion, and pursuant to sections 1519, 1521(a)(7) and 362 of the Bankruptcy Code, the Authorized Foreign Representatives request that this Court enter two orders: (i) a temporary restraining order, substantially in the form attached hereto as Exhibit B (the "Emergency Order"); and (ii) an order granting provisional relief, substantially in the form

attached hereto as Exhibit C (the "Provisional Relief Order," and together with the Emergency Order, the "Orders").

15. The Emergency Order, which the Authorized Foreign Representatives respectfully request be entered on an urgent *ex parte* basis, would temporarily enjoin and restrain—to the full extent of the automatic stay available under section 362 of the Bankruptcy Code—the commencement or continuation by all entities of any actions, proceedings or enforcement processes with respect to the Debtors and their property within the territorial jurisdiction of the United States, pending entry of the Provisional Relief Order. Further, the Emergency Order would authorize the Authorized Foreign Representatives, pursuant to sections 1519(a)(3) and 1521(a)(4) of the Bankruptcy Code and Bankruptcy Rule 2004, to issue subpoenas for the production of documents and testimony to any persons or entities that the Authorized Foreign Representatives reasonably determine may have information relevant to the Debtors, their affairs, or their assets.

16. The Provisional Relief Order, which the Authorized Foreign Representatives respectfully request be entered after expedited notice and a hearing, would grant provisional relief pending recognition of the BVI Proceedings as foreign main proceedings and the Court's issuance of a continued injunction related thereto. Specifically, the Provisional Relief Order would provide:

a. entrusting full and sole authority over the administration and realization of the Debtors' assets located in the United States to the Authorized Foreign Representatives, pursuant to section 1519(a)(2) of the Bankruptcy Code;

b. applying section 362 of the Bankruptcy Code with respect to the Debtors and the property of the Debtors that is within the territorial jurisdiction of the United States, pursuant to sections 1519(a)(1) and 1521(a)(7) of the Bankruptcy Code. For the avoidance of doubt and without limiting the generality of the foregoing, the Provisional Relief Order shall impose a stay within the territorial jurisdiction of the United States of:

i. the commencement or continuation—including the issuance or employment of process—of any judicial, administrative, or any other action or proceeding involving or against the Debtors or their assets or proceeds thereof, or to recover a claim or enforce any judicial, quasi-judicial,

regulatory, administrative, or other judgment, assessment, order, lien or arbitration award against the Debtors or their assets or proceeds thereof, or to exercise any control over the Debtors' assets located in the United States except as authorized by the Authorized Foreign Representatives in writing;

ii. the creation, perfection, seizure, attachment, enforcement, or execution of liens or judgments against the Debtors' property in the United States, or the transfer, encumbrance, or disposal of or interference with the Debtors' assets in the United States without the express consent of the Authorized Foreign Representatives;

iii. any act to collect, assess, or recover a claim against any of the Debtors that arose before the commencement of the Debtors' Chapter 15 Cases;

iv. the setoff of any debt owing to any the Debtors that arose before the commencement of the Debtors' Chapter 15 Cases against the Debtors;

v. the transfer, encumbrance, relinquishment or disposal of any property of the Debtors to any entity (as that term is defined in section 101(15) of the Bankruptcy Code) other than the Authorized Foreign Representatives; and

vi. any act to transfer, dilute, encumber, or otherwise impair or interfere with the Debtors' direct or indirect equity interests in any subsidiary or affiliate, or to exercise or purport to exercise any governance rights with respect to any such subsidiary or affiliate, without the express written consent of the Authorized Foreign Representatives.

c. prohibiting any person or non-governmental entity (as that term is defined in section 101(15) of the Bankruptcy Code), other than the Authorized Foreign Representatives, from commencing or continuing any act or legal proceeding to seize, attach, garnish, confiscate, or transfer title to any assets of the Debtors or any of their subsidiaries and affiliates;

d. authorizing the Authorized Foreign Representatives, pursuant to sections 1519(a)(3) and 1521(a)(4) of the Bankruptcy Code and Bankruptcy Rule 2004, to issue subpoenas for the production of documents and testimony to any persons or entities that the Authorized Foreign Representatives reasonably determine may have information relevant to the Debtors, their affairs, or their assets;

e. authorizing the Authorized Foreign Representatives to take possession and to seek turnover of any and all documents, records, filings or other information, however stored, that belongs to the Debtors and that is found within the territorial jurisdiction of the United States;

f. granting the Authorized Foreign Representatives the rights and protections to which they are entitled under chapter 15 of the Bankruptcy Code, including the protections limiting the jurisdiction of United States courts over the Authorized Foreign Representatives in accordance with section 1510 of the Bankruptcy Code;

-9-

g.  notwithstanding any provision in the Bankruptcy Rules to the contrary, ruling that (i) the Provisional Relief Order shall be effective immediately and enforceable upon entry, and the 14-day stay of effectiveness of the Provisional Relief Order is waived, (ii) the Authorized Foreign Representatives are not subject to any stay in the implementation, enforcement, or realization of the relief granted in the Provisional Relief Order, and (iii) the Authorized Foreign Representatives are authorized and empowered, and may, in their discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of the Provisional Relief Order; and

h.  granting related relief.

17.    For the avoidance of doubt, nothing in the Emergency Order or the Provisional Relief Order shall be construed to stay, enjoin, or otherwise limit (i) any action or proceeding by a governmental unit (as defined in section 101(27) of the Bankruptcy Code) to enforce its police or regulatory power, including the maintenance of the Debtors and other designated persons on the Specially Designated Nationals and Blocked Persons List (the "SDN List"), any administrative action by OFAC, and any other regulatory action by any agency of the United States government, (ii) the EDNY Forfeiture Action, or any action by the DOJ in connection therewith or related thereto, (iii) the criminal prosecution of Chen Zhi pursuant to the Indictment, or any related criminal investigation or proceeding with respect to Chen Zhi, the Prince Group, or affiliates of the Prince Group, or (iv) any other action or proceeding exempt from the automatic stay under section 362(b) of the Bankruptcy Code.  The governmental unit exception set forth in section 362(b)(4) of the Bankruptcy Code applies in full to the Orders.

**Basis for Relief**

**A.    Courts Routinely Grant Provisional Relief Under Section 1519**

18.    On the Petition Date, the Authorized Foreign Representatives filed the Petitions seeking recognition of the BVI Proceedings as foreign main proceedings under sections 1517 and 1520 of the Bankruptcy Code.  Although a "petition for recognition of a foreign proceeding shall be decided upon at the earliest possible time," 11 U.S.C. § 1517(c), there is necessarily a gap

-10-

between the time the petition for recognition was filed and when the Court makes a decision on recognition. Accordingly, the Authorized Foreign Representatives seek emergency provisional relief under sections 105(a) and 1519 of the Bankruptcy Code.

19.    The relief sought in this Motion is of a type frequently granted in Chapter 15 cases. Courts in this district and elsewhere routinely impose a provisional stay co-extensive with section 362 of the Bankruptcy Code and order similar relief to maintain the *status quo* pending a decision on recognition. *See, e.g.*, *In re Iovate Health Scis. Int'l Inc.*, No. 25-11958 (MG), 2025 Bankr. LEXIS 2284 (Bankr. S.D.N.Y. Sep. 12, 2025) (granting interim relief in the form of a stay to preserve status quo pending ruling on recognition motion); *In re Giftcraft Ltd.*, No. 25-11030 (MG), 2025 Bankr. LEXIS 1350 (Bankr. S.D.N.Y. Jun. 4, 2025) (finding that traditional injunctive standards were met and granting provisional relief in the form of a stay); *In re Andrade Gutierrez Engenharia S.A.*, 645 B.R. 175 (Bankr. S.D.N.Y. Nov. 3, 2022) (noting that provisional relief in the form of a stay was appropriate in the gap period between the chapter 15 filing and recognition hearing); *In re Oi S.A.*, No. 16-11791 (SHL) [D.I. No. 22] (Bankr. S.D.N.Y. Jun. 22, 2016) (finding that provisional relief was necessary to protect the debtor's US assets); *see also In re Muscletech Research and Dev. Inc.*, No. 06-10092 (JMP), Adv. No. 06-01147 (JMP) (Bankr. S.D.N.Y. Jan. 18, 2006) (entering an *ex parte* temporary restraining order enjoining the commencement or continuation of actions against foreign debtors and non-debtors pending a hearing to consider entry of a preliminary injunction).

20.    Courts have also routinely authorized discovery on a provisional basis in aid of asset-identification and preservation efforts. *See, e.g.*, *In re Three Arrows Capital, Ltd.*, No. 22-10920 (MG) (Bankr. S.D.N.Y. Jul. 12, 2022) (authorizing issuance of subpoenas on founders and any other persons the joint provisional liquidators "reasonably determine during the course of their

-11-

investigation may have information relevant to the Debtor, its affairs, or its assets"); *In re Ascentra Holdings, Inc.*, No. 21-11854 (DSJ) [D.I. No. 17] (Bankr. S.D.N.Y. Nov. 2, 2021) (entrusting the administration of the debtor's U.S. assets to the foreign representative and authorizing discovery on a provisional basis).

21.     Likewise, courts have regularly authorized discovery on an emergency basis in ex parte proceedings. "Rule 2004 motions are generally granted ex parte, as was the case here, without the advance notice required to be given in a contested matter." *In re Symington*, 209 B.R. 678 (Bankr. D. Md. 1997). *See also In re GHR Energy Corp.*, 35 B.R. 534, 535 n.2 (Bankr. D. Mass. 1983) ("a Rule 2004 motion may be made ex parte and even orally" and "oftentimes when an application appears proper on its face, it will be allowed"); *Matter of M4 Enters., Inc.*, 190 B.R. 471, 473 n.2 (Bankr. N.D. Ga. 1995) ("Courts customarily dispose of Rule 2004 motions on an ex parte basis.").

**B.     Sections 1519 and 1521 of the Bankruptcy Code Authorize Broad Provisional Relief**

22.     Section 1519 of the Bankruptcy Code permits the Court, "from the time of filing a petition for recognition until [it] rules on the petition[,]" to grant provisional relief where such relief is "urgently needed to protect the assets of the debtor[s] or the interests of the creditors." 11 U.S.C. § 1519(a); *see also Iovate*, 2025 Bankr. LEXIS 2284, at *23-24 ("Section 1519 of the Bankruptcy Code permits the Court to grant certain forms of provisional relief 'where relief is urgently needed to protect the assets of the debtor or the interests of the creditors.'"). The scope of available provisional relief includes:

a.  staying execution against the debtor's assets;

b.  "entrusting the administration or realization of all or part of the debtor's assets located in the United States to the foreign representative . . . in order to protect and preserve the value of assets that, by their nature or because of other circumstances, are perishable, susceptible to devaluation or otherwise in jeopardy," 11 U.S.C. § 1519(a)(2); and

-12-

    c.   "any relief referred to in paragraph (3), (4), or (7) of section 1521(a)," 11 U.S.C. 1519(a)(3).

23.        Section 1521(a), in turn, authorizes: (a) "suspending the right to transfer, encumber or otherwise dispose of any assets of the debtor," 11 U.S.C. § 1521(a)(3); (b) "providing for the examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities," 11 U.S.C. § 1521(a)(4); and (c) "granting any additional relief that may be available to a trustee," 11 U.S.C. § 1521(a)(7).  Application of the stay under section 362 has specifically been found to be among the types of relief available under section 1519.  *See In re Oak and Fort Corp.*, No. 1:25-bk-11282 (MG) [D.I. 21] (Bankr. S.D.N.Y. June 23, 2025) ("The Foreign Representative has demonstrated that commencement or continuation of any action or proceeding in the United States against the Debtors should be enjoined pursuant to sections 105(a), 1519, 1521 and 1522 of the Bankruptcy Code, which protections, in each case, shall be coextensive with the provisions of section 362 of the Bankruptcy Code.").

24.        "The purpose of provisional relief under Section 1519 is to provide remedial relief to preserve the status quo in the gap period between the filing of the petition and the time the court rules upon the petition for recognition." *In re Worldwide Educ. Servs., Inc.*, 494 B.R. 494, 499 n.1 (Bankr. C.D. Cal. 2013).  The Orders are intended to serve that purpose by preventing acts inconsistent with the BVI Orders, protecting assets located within the territorial jurisdiction of the United States, and enabling the Authorized Foreign Representatives to identify and preserve estate property before it can be dissipated, concealed, or placed beyond the reach of the BVI and Chapter 15 proceedings.

**C.    The Standards for a Preliminary Injunction Are Satisfied**

25.    The relief available under section 1519 is available if "the standards, procedures, and limitations applicable to an injunction" are met. 11 U.S.C. § 1519(e). In the Second Circuit, a party seeking a preliminary injunction must establish: (1) a likelihood of success on the merits; (2) irreparable harm if provisional relief is not granted; (3) that the balance of the harms tips in the movant's favor; and (4) that the public interest weighs in favor of an injunction. *See Iovate*, 2025 Bankr. LEXIS 2284, at *24; *Andrade Gutierrez*, 645 B.R. at 180-81; *Giftcraft*, 2025 Bankr. LEXIS 1350, at *17.

26.    In evaluating these factors, courts take a "flexible approach and no one factor is determinative." *In re Calpine Corp.*, 365 B.R. 401, 409 (S.D.N.Y. 2007). "A showing of irreparable harm is 'the single most important prerequisite for the issuance of a preliminary injunction.'" *Iovate*, 2025 Bankr. LEXIS 2284, at *25 (quoting *Faiveley Transp. Malmo AB* v. *Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009)). In cases seeking preservation of assets pending adjudication, courts apply this standard with particular emphasis on preventing assets from being dissipated, concealed, or placed beyond the Court's reach. *See In re Soundview Elite Ltd.*, 543 B.R. 78 (Bankr. S.D.N.Y. 2016).

27.    "Only the first two factors"—a reasonable probability of eventual success in the litigation and irreparable injury absent the requested relief— "are necessary" to prove individually. "'If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief.'" *In re Team Sys. Int'l, LLC*, No. 22-10066 (CTG), 2023 WL 1428572, at *10 (quoting *Reilly* v. *City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017)); *see also Winter* v. *Natural Res. Defense Council,* 555 U.S. 7, 20 (2008). At this provisional stage, the Authorized Foreign Representatives are not required to prove their claims in full but must demonstrate a reasonable

-14-

probability of success sufficient to justify preserving the status quo. *See In re BYJU's Alpha, Inc.*, 2024 WL 1455586, at *8 (Bankr. D. Del. Apr. 3, 2024). As set forth below, all four factors are satisfied.

1.      The Authorized Foreign Representatives Are Likely to Succeed on the Merits

28.      In a request for provisional relief under Chapter 15, the "likelihood of success on the merits" refers to the likelihood that the bankruptcy court will recognize the foreign proceeding. *Iovate*, 2025 Bankr. LEXIS 2284, at *24 (citing *Andrade Gutierrez*, 645 B.R. at 181). The Authorized Foreign Representatives are likely to prevail in their petition for recognition of the BVI Proceedings as foreign main proceedings under section 1517(b)(1) of the Bankruptcy Code, and to obtain the relief sought upon recognition.

29.      **Recognition as a Foreign Main Proceeding.** The BVI Proceedings satisfy each of the requirements for recognition under section 1517 of the Bankruptcy Code. *First*, the BVI Proceedings are collective judicial proceedings conducted under the supervision of the BVI Court pursuant to the BVI Insolvency Act—a law relating to insolvency—and therefore constitute "foreign proceedings" within the meaning of section 101(23) of the Bankruptcy Code. *See* Chissick Declaration ¶¶ 55–57. *Second*, section 1516(c) of the Bankruptcy Code establishes a presumption that the debtor's registered office is the debtor's center of main interests ("COMI"). Each of the Debtors was incorporated in the BVI, has continuously maintained its registered office in the BVI, and is being administered under BVI Court supervision. Accordingly, the BVI qualifies as the COMI for each Debtor, and the BVI Proceedings qualify as "foreign main proceedings" within the meaning of section 1502(4). *Third*, the Authorized Foreign Representatives have been appointed by the BVI Court and are duly authorized under BVI law to administer the Debtors' affairs, and therefore qualify as "foreign representatives" within the meaning of section 101(24). *See* Chissick Declaration ¶¶ 62–64. *Fourth*, these Chapter 15 Cases

were properly commenced by filing the Petitions in accordance with section 1515 of the Bankruptcy Code. Moreover, courts in this District routinely recognize insolvency proceedings in the BVI as foreign main proceedings under Chapter 15. *See, e.g.*, *In re Olinda Star Ltd.*, No. 20-10712 (MG) [D.I. 23] (Bankr. S.D.N.Y. Apr. 3, 2020); *In re Kingate Global Fund, Ltd.*, No. 19-12853 (SMB) [D.I. 28] (Bankr. S.D.N.Y. Oct. 17, 2019); *In re Fairfield Sentry Limited*, No. 10-13164 (BRL) [D.I. 47] (Bankr. S.D.N.Y. Jul. 22, 2010).

30.      **Relief Upon Recognition.** Upon recognition as a foreign main proceeding, section 1520(a)(1) of the Bankruptcy Code automatically applies the stay of section 362 to the Debtors and their property within the territorial jurisdiction of the United States—the same relief sought provisionally here. The Court may also order additional protective relief under section 1521(a), including authorizing the Authorized Foreign Representatives to serve discovery concerning "the debtor's assets, affairs, rights, obligations or liabilities" as "necessary to effectuate the purposes of [Chapter 15] and to protect the assets of the debtor or the interests of the creditors." 11 U.S.C. § 1521(a). Under BVI law, the Authorized Foreign Representatives have exclusive authority to manage and administer the Debtors' assets, and the discovery sought herein falls squarely within the Authorized Foreign Representatives' investigative powers under the BVI Orders. *See* Chissick Declaration ¶¶ 50–53. The BVI Orders are enforceable as a matter of contempt and coercive process only within the jurisdiction of the BVI. *See* Chissick Declaration ¶ 23.

31.      Without recognition in the United States, persons purporting to act on behalf of the Debtors—including those claiming authority under purported director appointment—may take action with respect to the Debtors' U.S. assets inconsistent with the BVI Orders. The principles of comity therefore support granting provisional relief to extend the protections of the BVI Orders to this jurisdiction, and will support the continuation of such relief on a final basis upon

-16-

recognition. *See In re Bear Stearns High-Grade Structured Credit*, 389 B.R. 325, 333 (S.D.N.Y. 2008) (relief under section 1521 is "discretionary and turns on subjective factors that embody principles of comity"); *In re BOS Solutions Ltd.*, Case No. 20-32465, [Dkt. No. 17] (Bankr. S.D. Tex. May 5, 2020) (granting provisional relief "supported by notions of comity [that] will allow the Receiver to craft a productive solution for the Debtors and their estates").

32.     Accordingly, there is a substantial likelihood that this Court will recognize the BVI Proceedings as foreign main proceedings and that the Authorized Foreign Representatives will be accorded the relief sought herein.

2.     The Authorized Foreign Representatives, the Debtors and the Debtors' Stakeholders Will Suffer Irreparable Harm If the Provisional Relief Is Not Granted

33.     The Orders are needed to avoid irreparable harm and enable the Authorized Foreign Representatives to protect the Debtors' assets. In asset-preservation cases, irreparable harm is established where there is a meaningful risk that assets will be dissipated or placed beyond the reach of the Court, such that any relief later awarded would be ineffective. *In re Soundview Elite Ltd.*, 543 B.R. 78, 117, 119–20 (Bankr. S.D.N.Y 2016) (finding irreparable harm where there was a risk that the estate's assets would be dissipated); *In re BYJU's Alpha, Inc.*, 2024 WL 1455586, at *1, *10 (Bankr. D. Del. Apr. 3, 2024) (finding irreparable harm where debtor had been "stonewalled when trying to locate" missing funds and counterparties "repeatedly demonstrated willful disregard for the Debtor's attempts to locate these missing funds").

34.     Courts have further made clear that irreparable harm exists not only where imminent transfers are shown, but also where the debtor's asset universe cannot be identified or traced due to opacity and obfuscation. *See In re Team Sys. Int'l, LLC*, 2023 WL 1428572, at *12 (injunction warranted where defendants' conduct gave "cause for concern" that it "may move or conceal assets").

35.     The Prince Group's opaque corporate structure and historical concealment of asset flows materially impede asset tracing efforts and create a substantial risk that assets will be further concealed or dissipated absent immediate judicial intervention.    The Authorized Foreign Representatives continue to have limited visibility into the full scope of the Debtors' assets due to the Prince Group's deliberate obfuscation of its corporate structure, books, and records.    *See* Pretlove Declaration ¶ 47.    Any sanctions, criminal, or forfeiture actions elsewhere do not substitute for relief from this Court where the Authorized Foreign Representatives still lack a reliable picture of the Debtors' asset universe due to the Prince Group's own conduct.    *See In re BYJU's Alpha, Inc.*, 2024 WL 1455586, at *10 (granting injunctive relief notwithstanding parallel proceedings because counterparties' refusal to cooperate with efforts to ascertain the location of assets itself warranted judicial intervention; "refusing to identify the location of the funds does nothing to . . . demonstrate that [the party] does not retain control over" them).

36.     Without provisional relief from this Court, there is no corresponding restriction preventing persons purporting to act on behalf of the Debtors from commencing adverse proceedings in U.S. courts, disposing of the Debtors' unblocked U.S. assets, or taking other actions inconsistent with the BVI Orders.    The risk is compounded because persons acting at Chen Zhi's direction are likely to have detailed knowledge of the Debtors' asset holdings, corporate structures, bank accounts, and counterparty relationships, enabling them to act quickly and with precision against assets the Authorized Foreign Representatives have not yet identified.    *See* Pretlove Declaration ¶¶ 72–75.

37.     As discussed above and further in the Pretlove Declaration, Campbells Legal (BVI) Limited ("Campbells"), a law firm purporting to represent 25 of the Debtors, has asserted that Cosimo Borrelli, a Hong Kong-based restructuring professional, purportedly has been appointed

as director of 25 of the Debtors, and that this appointment was made by unspecified individuals acting pursuant to a purported power of attorney from Chen Zhi dated December 29, 2025—eight days before Chen Zhi's arrest. Despite repeated requests, Campbells has not produced the purported powers of attorney or identified the individuals purportedly authorized to act thereunder. Pretlove Declaration ¶ 56. Campbells has asserted that it takes instructions from the Companies acting through Mr. Borrelli in his purported capacity as director. However, Campbells has refused to identify to the Authorized Foreign Representatives the individuals acting under the purported power of attorney from Chen Zhi who are said to have appointed Mr. Borrelli, and therefore the ultimate source of that authority. *See* Pretlove Declaration ¶ 74. The identity of those individuals remains undisclosed. In addition, Mr. Borrelli has stated in a sworn filing that he is receiving and relying on information from a U.S. law firm, Boies Schiller Flexner LLP ("BSF"). Pretlove Declaration ¶ 55. Campbells previously stated that neither it nor Mr. Borrelli had been paid as of March 10, 2026 and that any payment would not be made from the Debtors' assets without the consent of the Joint Provisional Liquidators, but has failed to provide any clear explanation as to how its fees or Mr. Borrelli's fees are being, or will be, funded. Indeed, the refusal by Campbells to produce the purported powers of attorney, identify the individuals authorized to act thereunder, or disclose the source of funding for its activities is itself indicative of the very interference risks the Orders are designed to address. *See In re BYJU's Alpha, Inc.*, 2024 WL 1455586, at *10 (finding that counterparties' "brazen insistence on concealing the location and control" of assets "strongly indicates" continued ownership and control, warranting injunctive relief). There is "little dispute regarding the notion that the premature piecing out of property involved in a foreign liquidation proceeding constitutes irreparable injury." *In re Rubin*, 160 B.R. 269, 283 (Bankr. S.D.N.Y. 1993) (quoting *In re Lines*, 81 B.R. 267, 270 (Bankr. S.D.N.Y. 1988)).

-19-

38.     The irreparable harm extends beyond asset dissipation.  BSF has sent a litigation hold notice to the Authorized Foreign Representatives expressly contemplating U.S. litigation "in the event of an unlawful and potentially below-market sale of certain assets or interests of Mr. Chen." *See* Pretlove Declaration ¶ 59, Ex. E.  Absent an automatic stay, actions challenging the Authorized Foreign Representatives' authority or seeking to restrain their exercise of their court-appointed mandate may be filed in any U.S. court, fragmenting these proceedings and diverting resources from the Authorized Foreign Representatives' investigative and asset-preservation efforts at a critical stage of the BVI Proceedings.  "In the cross-border insolvency context, courts have recognized that irreparable harm exists where local actions could hinder the orderly process of a foreign proceeding and the goal of the fair distribution of assets." *In re Iovate Health Scis. Int'l Inc.*, 2025 Bankr. LEXIS 2284, at *36; *see also In re Giftcraft Ltd.*, 2025 Bankr. LEXIS 1350, at *32-33 (actions against the debtors' assets would "diminish the value of the [moving debtors'] assets to the detriment of all stakeholders," constituting irreparable harm).

39.     Even in the absence of a specific finding of irreparable harm, courts in this circuit have recognized that injunctive relief may issue in the bankruptcy context where the action to be enjoined threatens the orderly administration of the estate or would impair the court's jurisdiction with respect to the case before it.  *See In re Soundview Elite Ltd.*, 543 B.R. 78, 120 (Bankr. S.D.N.Y. 2016) ("[C]ourts in the Second Circuit have determined that irreparable harm need not be shown as a requirement for issuance of a preliminary injunction in the bankruptcy context where the action to be enjoined is one that threatens the reorganization process or which would impair the court's jurisdiction with respect to the case before it."); *In re Calpine Corp.*, 365 B.R. 401, 409 (S.D.N.Y. 2007).

3.      The Balance of Harms Weighs Strongly in Favor of the Authorized Foreign
        Representatives

40.     The balance of harms weighs in favor of granting the Orders.  The Orders are preservative, not adjudicative.  It maintains the *status quo*, protects estate property, and ensures that assets are administered in a single court-supervised process rather than dissipated through piecemeal action.  *See In re Innua Canada Ltd.*, 2009 WL 1025088, at *4 (Bankr. D.N.J. Mar. 25, 2009) (maintaining the status quo pending recognition served to benefit creditors "by allowing for an orderly administration of the Foreign Debtors' financial affairs under the [foreign] [p]roceeding"); *see also Cunard S.S. Co. Ltd.* v. *Salen Reefer Svcs. A.B.*, 773 F.2d 452, 458 (2d Cir. 1985) ("The granting of comity to a foreign bankruptcy proceeding enables the assets of a debtor to be dispersed in an equitable, orderly, and systematic manner, rather than in a haphazard, erratic or piecemeal fashion.").

41.     By contrast, denial of the requested relief would expose the Debtors to precisely the harms described above: interference with the Authorized Foreign Representatives' authority, conflicting instructions to counterparties, and diminution of recoveries for a creditor body expected to consist largely of victims.  *See* Pretlove Declaration ¶¶ 54–63.  That certain parties "may be denied an advantage over" others "is not a valid reason to deny relief to the foreign representative." *In re Atlas Shipping A/S*, 404 B.R. 726, 742 (Bankr. S.D.N.Y. 2009).

42.     The proposed discovery recipients will not be significantly harmed by the discovery requests.  The relevant inquiry is whether the discovery sought is "(1) necessary in the interests of justice; and (2) not possible to obtain in any other manner." *In re Three Arrows Cap. Ltd.*, 647 B.R. 440, 451 (Bankr. S.D.N.Y. 2022).  The discovery sought here targets the Debtors' assets and falls squarely within the scope of section 1521(a)(4) and Bankruptcy Rule 2004.  Any inconvenience to the discovery recipients is significantly outweighed by the Authorized Foreign

Representatives' well-grounded need to preserve and protect the Debtors' assets during the interim period.

43.     The Orders will not bar any parties from participating in the BVI Proceedings or these Chapter 15 Cases, and any party that believes it has been harmed by the provisional relief may seek relief from the stay from this Court for cause. *See In re Giftcraft Ltd.*, 2025 WL 1583480, at *11.

4.     The Public Interest Favors Granting the Orders

44.     The Orders will advance the public interest by facilitating a cross-border insolvency proceeding that will benefit the estate and, ultimately, the victims of the Prince Group's expansive criminal activity. *See In re Picard, Tr. For Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85, 103 (2d Cir. 2019) ("Comity in bankruptcy proceedings is 'especially important' for two reasons. 'First, deference to foreign insolvency proceedings will, in many cases, facilitate equitable, orderly, and systematic distribution of the debtor's assets. . . . Second, Congress explicitly recognized the importance of the principles of international comity in transnational insolvency situations when it revised the bankruptcy laws.'") (citations omitted). These goals are consistent with the express objectives of Chapter 15, which include "fair and efficient administration of cross-border insolvencies" and "protection and maximization of the value of the debtor's assets." 11 U.S.C. § 1501(a).

45.     The Orders will also make the preservation of assets and eventual reparation to victims more likely by confirming the Authorized Foreign Representatives as the sole parties authorized to administer the Debtors' estates in the United States—providing certainty to the Debtors' creditors, potential claimants, and victims that the Debtors' assets will be preserved for orderly distribution under court supervision.

-22-

46.     Finally, the Orders complement, rather than conflict with, U.S. sanctions and law-enforcement objectives.  It preserves the role of OFAC, DOJ, and other U.S. government agencies, while confirming that the Authorized Foreign Representatives are the only parties authorized to act for the Debtors in the United States.  *See* Pretlove Declaration ¶¶ 66, 68.  Granting provisional relief will also support the broader law enforcement objectives of the United States by ensuring that assets alleged to represent proceeds of a transnational criminal enterprise are identified and preserved under court supervision rather than dissipated by the same actors alleged to have participated in the underlying criminal conduct.

5.     All Parties Are Sufficiently Protected Under Section 1522(a)

47.     Section 1522(a) of the Bankruptcy Code provides that the Court may grant relief under section 1519 "only if the interests of the creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. § 1522(a).  That requirement is met here.  Relief under section 1519 should be denied for a lack of sufficient protection only "if it is shown that the foreign proceeding is seriously and unjustifiably injuring United States creditors." *In re Andrade Gutierrez Engenharia S.A.*, 645 B.R. at 184 (quoting H.R. Rep. No. 109-31, pt. 1, at 116 (2005)).  A determination of "sufficient protection" under section 1522 "requires a balancing of the respective parties' interests." *In re ENNIA Caribe Holding N.V.*, 596 B.R. 316, 322 (Bankr. S.D.N.Y. 2019) (internal citations omitted).

48.     The BVI Proceedings arise from applications by the BVI Attorney General to place the Debtors into liquidation on public-interest grounds, with the intention of protecting victims and creditors—not to prejudice them.  The Orders preserve the Debtors' assets pending recognition and remains subject to the continuing jurisdiction of this Court.  The Provisional Relief Order specifically provides that any party that believes it has been harmed by the provisional relief

granted therein may file a motion with the Court seeking relief from such order.  The *status quo* relief requested will not impose any hardship on any party that is not outweighed by the benefits to the Debtors' estates and all parties in interest.  *See In re Iovate Health Scis. Int'l Inc.*, 2025 Bankr. LEXIS 2284, at \*38 ("As required under section 1522(a) of the Bankruptcy Code, all parties are 'sufficiently protected' such that this Court may grant the Provisional Relief.").

**D.     The Orders Are Consistent with, and Complementary to, the OFAC Sanctions Regime**

49.     The Authorized Foreign Representatives acknowledge that the OFAC sanctions constitute a valid exercise of the United States government's regulatory and police power, and nothing in the Orders are intended to limit, modify, or otherwise interfere with OFAC's authority or the enforcement of existing sanctions designations.  Section 362(b)(4) of the Bankruptcy Code exempts from the stay "the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power."  11 U.S.C. § 362(b)(4).  The Authorized Foreign Representatives do not seek to stay any regulatory or enforcement action by OFAC, the Department of the Treasury, the DOJ, or any other governmental unit.

50.     Rather, the Orders are designed to complement the sanctions regime by preventing private parties—including, most critically, associates and agents of Chen Zhi—from taking unauthorized actions with respect to the Debtors' assets within the territorial jurisdiction of the United States.  While the sanctions regime blocks property of the designated Debtors and prohibits U.S. persons from engaging in unauthorized transactions involving such property, the provisional relief addresses a distinct and complementary set of risks that sanctions alone do not fully mitigate.

51.     *First*, two of the Debtors, Amber Hill and Lateral Bridge, have not been subjected to OFAC sanctions designations.  Although the Forfeiture Complaint identifies these entities

within the Prince Group's corporate structure, their property is not currently blocked under OFAC's sanctions.  Accordingly, the sanctions regime does not currently protect the assets of Amber Hill and Lateral Bridge from dissipation by private parties, and the provisional relief would fill that gap.

52.       *Second*, OFAC's blocking mandate freezes property and prohibits transfers or dealings, but it does not resolve interference by competing actors with the Authorized Foreign Representatives' authority and efforts—a distinct and pressing risk in this case.  Blocking prohibits unauthorized transactions involving designated property, but it does not prevent persons from purporting to exercise governance authority over the Debtors' affairs.[2]  Indeed, in this case, persons associated with Chen Zhi have taken affirmative steps to assert precisely such competing control through purported director appointments, retention of counsel, and issuance of litigation threats. *See* Pretlove Declaration ¶¶ 54–59.  The entrustment of sole authority over the Debtors' U.S. assets to the Authorized Foreign Representatives would resolve this ambiguity by confirming, as a matter of U.S. law, that the Authorized Foreign Representatives are the only parties authorized to act with respect to the Debtors' assets in the United States.

53.       *Third*, provisional relief will provide critical clarity to U.S. financial institutions and other regulated counterparties that currently hold or interact with the Debtors' assets.  In the current environment, these institutions face the risk of receiving conflicting instructions—from the Authorized Foreign Representatives on the one hand and from persons purporting to act on behalf of the Debtors without authorization on the other.  Provisional relief would eliminate that

---

[2]    *See* Off. of Foreign Assets Control, *Frequently Asked Question No. 9* (explaining that blocked property is "frozen"—not seized—and that title remains with the blocked person); *Hausler* v. *JPMorgan Chase Bank, N.A.*, 770 F.3d 207, 211 (2d Cir. 2014) (noting that blocked assets are "subject to execution or attachment in the aid of execution in order to satisfy such judgment . . . for which such terrorist party has been adjudged liable") (citing Terrorism Risk Insurance Act § 201(a)).

uncertainty by confirming, as a matter of U.S. law, that the Authorized Foreign Representatives are the sole parties authorized to engage with U.S. financial institutions and other counterparties with respect to the Debtors' assets.

54.     For the avoidance of doubt, the Orders expressly provide that all relief granted pursuant to the Emergency Order and the Provisional Relief Order is subject to compliance in all respects with existing and future OFAC sanctions, licenses, and regulations, and that nothing in the Emergency Order or the Provisional Relief Order shall be construed to authorize any transaction or activity that would otherwise be prohibited by OFAC's regulations absent OFAC authorization.

### Discovery Authorization

55.     The Orders include authorization for the Authorized Foreign Representatives to issue subpoenas and conduct discovery pursuant to section 1521(a)(4) of the Bankruptcy Code and Bankruptcy Rule 2004.  As set forth above, section 1519(a)(3) expressly incorporates section 1521(a)(4), which "enables a Foreign Representative to take broad discovery concerning the property and affairs of a debtor." *In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 471 B.R. 342, 346 (Bankr. S.D.N.Y. 2012).  Courts routinely authorize such discovery where it is necessary to identify, trace, and preserve assets whose location or control has been obscured. *See In re Three Arrows Capital, Ltd.*, 2022 WL 17985969, at *9-11 (service of subpoena was proper where founders were likely the only parties with necessary information about the debtor's assets); *In re BYJU's Alpha, Inc.*, 2024 WL 1455586, at *6-7 (equitable relief appropriate where debtor could not obtain meaningful information about the whereabouts of missing funds).

56.     The Authorized Foreign Representatives seek authority to serve documentary and testimonial discovery on persons and entities in the United States that the Authorized Foreign Representatives reasonably determine may have information relevant to the Debtors, their affairs,

or their assets. The Authorized Foreign Representatives' immediate discovery efforts, directed toward asset identification and preservation, are expected to target three principal categories of persons and entities: (a) persons and entities who are or were associated with Chen Zhi, the Prince Group, or the alleged criminal enterprise, including former officers, directors, agents, attorneys-in-fact, and their affiliates; (b) business partners, counterparties, and co-venturers of such persons and entities; and (c) financial institutions, banks, broker-dealers, custodians, and their intermediaries that held or processed accounts, funds, or assets on behalf of the Debtors or entities within the Prince Group's corporate structure. The foregoing categories are illustrative and are not intended to limit the scope of the discovery authorization sought herein. The Authorized Foreign Representatives expect and reserve the right to seek discovery from additional persons and entities as their investigation progresses and additional information becomes available.

57.     The need for provisional discovery authority is particularly acute here. It is alleged that the Prince Group deliberately obfuscated its corporate structure, using BVI companies to maintain accounts at U.S. financial institutions opened on fraudulent pretenses and with materially understated transaction volumes. *See* Pretlove Declaration ¶¶ 16, 26, 47. Without authority to compel the production of records from U.S. financial institutions and other parties, the Authorized Foreign Representatives cannot discharge their court-appointed mandate to identify, secure, and preserve the Debtors' assets—and the assets that remain unidentified are the most vulnerable to dissipation or diversion.

## An Emergency Hearing Is Warranted

58.     As set forth above, the Authorized Foreign Representatives have satisfied the standard for injunctive relief under sections 105(a) and 1519(a) of the Bankruptcy Code. Meaningful relief can only be provided to the Debtors if the Motion is heard on an emergency basis at the Court's earliest convenience. Consequently, the Authorized Foreign Representatives

-27-

request that the Court enter an order setting the Motion for hearing no later than April 14, 2026, with objections to the Motion being permitted any time before or during the hearing.

**No Notice Is Required in Respect of the Emergency Relief Requested Herein**

59.     This Motion seeks, in part, emergency *ex parte* relief.  The urgent need to obtain the Emergency Order without prior notice is warranted because persons associated with Chen Zhi have already demonstrated a pattern of taking preemptive action to undermine the Authorized Foreign Representatives' authority, including through the purported appointment of competing directors, litigation threats expressly contemplating U.S. proceedings, and engagement with counterparties without the Authorized Foreign Representatives' authorization.  *See* Pretlove Declaration ¶¶ 54–59.  The Authorized Foreign Representatives further request that the Court schedule a prompt hearing on their request for the Provisional Relief Order.  The Authorized Foreign Representatives propose serving the Motion and the notice of the hearing in respect of their request for the Provisional Relief Order in accordance with the terms set forth by the Court in the Emergency Order.

**No Security Required**

60.     No security is required for the Orders.  Under the Bankruptcy Rules, security is not a prerequisite for the Debtors to obtain injunctive relief.  Fed. R. Bankr. P. 7065; *see also In re Iovate Health Scis. Int'l Inc.*, 2025 Bankr. LEXIS 2284, at *39 (exercising discretion not to require a bond).  In any event, security would be unwarranted under the circumstances, where the substantial majority of the Debtors' assets are already blocked pursuant to OFAC sanctions and therefore unavailable for any transaction absent OFAC authorization, the Debtors' affairs are under the supervision of the BVI Court, and the provisional relief would last only until the Court rules on the Petitions.

**No Prior Request**

61.    No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Authorized Foreign Representatives respectfully request that the Court enter the Emergency Order and the Provisional Relief Order, substantially in the forms attached hereto, granting the relief requested herein and such other and further relief as may be just and proper.


Dated: April 18, 2026
      New York, New York

Respectfully submitted,


*/s/ Andrew G. Dietderich*
Andrew G. Dietderich
Sharon Cohen Levin
Christopher J. Dunne
Jacob M. Croke
Alexa J. Kranzley
**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile:  (212) 558-3588
Email:   dietdericha@sullcrom.com
       levinsc@sullcrom.com
       dunnec@sullcrom.com
       crokej@sullcrom.com
       kranzleya@sullcrom.com


*Counsel to the Authorized Foreign Representatives*