**EXHIBIT C**

**Case Number :BVIHCOM2026/0008**

**FILED**
**HIGH COURT**
**TERRITORY OF**
**THE VIRGIN ISLANDS**

IN THE EASTERN CARIBBEAN SUPREME COURT
IN THE HIGH COURT OF JUSTICE
VIRGIN ISLANDS
COMMERCIAL DIVISION

**Submitted Date:01/03/2026 15:20**

**Filed Date:02/03/2026 08:30**

CLAIM Nos: BVIHC (COM) 2026/0001; BVIHC (COM) 2026/0002; BVIHC (COM) 2026/0004; BVIHC (COM) 2026/0005; BVIHC (COM) 2026/0006; BVIHC (COM) 2026/0007; BVIHC (COM) 2026/0008; BVIHC (COM) 2026/0009; BVIHC (COM) 2026/0012; BVIHC (COM) 2026/0013; BVIHC (COM) 2026/0014; BVIHC (COM) 2026/0015; BVIHC (COM) 2026/0016; BVIHC (COM) 2026/0017; BVIHC (COM) 2026/0018; BVIHC (COM) 2026/0019; BVIHC (COM) 2026/0020; BVIHC (COM) 2026/0021; BVIHC (COM) 2026/0023; BVIHC (COM) 2026/0024; BVIHC (COM) 2026/0025; BVIHC (COM) 2026/0026; BVIHC (COM) 2026/0027; BVIHC (COM) 2026/0029; BVIHC (COM) 2026/0030

**Fees Paid:274.20**

IN THE MATTER OF THE INSOLVENCY ACT, 2003

ATTORNEY GENERAL

<u>Applicant</u>

and

| | | |
|---|---|---|
| 1. | BVIHC (COM) 2026/0001 | BRIGHT TEAM GLOBAL LIMITED |
| 2. | BVIHC (COM) 2026/0002 | AUSPICIOUS TYCOON LIMITED |
| 3. | BVIHC (COM) 2026/0004 | DELIGHTFUL THRIVE LIMITED |
| 4. | BVIHC (COM) 2026/0005 | EVEN SINCERITY LIMITED |
| 5. | BVIHC (COM) 2026/0006 | FULAM INVESTMENT LIMITED |
| 6. | BVIHC (COM) 2026/0007 | GIANT VICTORY HOLDINGS LIMITED |
| 7. | BVIHC (COM) 2026/0008 | GOLDEN ASCEND INTERNATIONAL LIMITED |
| 8. | BVIHC (COM) 2026/0009 | HARMONIC STATE LIMITED |
| 9. | BVIHC (COM) 2026/0012 | LUMINOUS GLOW LIMITED |
| 10. | BVIHC (COM) 2026/0013 | MIGHTY DIVINE LIMITED |
| 11. | BVIHC (COM) 2026/0014 | NOBLE TITLE LIMITED |
| 12. | BVIHC (COM) 2026/0015 | ORIENTAL CHARM HOLDINGS INVESTMENT LIMITED |
| 13. | BVIHC (COM) 2026/0016 | PACIFIC CHARM HOLDINGS INVESTMENT |
| 14. | BVIHC (COM) 2026/0017 | PRINCE GLOBAL GROUP LIMITED |
| 15. | BVIHC (COM) 2026/0018 | PRAISE MARBLE LIMITED |
| 16. | BVIHC (COM) 2026/0019 | PRINCE GLOBAL HOLDINGS LIMITED |
| 17. | BVIHC (COM) 2026/0020 | RESPECTFUL STEED LIMITED |
| 18. | BVIHC (COM) 2026/0021 | RETAIN PROSPER LIMITED |
| 19. | BVIHC (COM) 2026/0023 | SIMPLY ADVANCED LIMITED |
| 20. | BVIHC (COM) 2026/0024 | SOUTHERN HERITAGE LIMITED |
| 21. | BVIHC (COM) 2026/0025 | STAR MERIT GLOBAL LIMITED |
| 22. | BVIHC (COM) 2026/0026 | STARRY BLOOM LIMITED |
| 23. | BVIHC (COM) 2026/0027 | SURE TYCOON LIMITED |
| 24. | BVIHC (COM) 2026/0029 | TOWARDS SUNSHINE LIMITED |
| 25. | BVIHC (COM) 2026/0030 | UNITED RICHES GLOBAL LIMITED |

<u>Respondents</u>

#3503725v1

**AFFIDAVIT OF COSIMO BORRELLI**

I, **COSIMO BORRELLI**, of Admiralty Asia Partners ("**Admiralty Asia**"), Suite 911, Level 9 One Pacific Place, Hong Kong, **MAKE OATH** and **SAY** as follows:

1.    I am the founder of Admiralty Asia, a firm with its headquarters in Hong Kong and focused on insolvency and restructuring, forensic and expert services internationally.  As I will further explain further below, I have been appointed director of the Respondent companies. As such, I am authorised to make, and do make, this affidavit in opposition to the Applicant's application to appoint liquidators dated 5 January 2026 brought against those companies, and to seek a discharge of the Court's order dated 9 January 2026 appointing provisional liquidators over the same companies.

2.    The facts and matters in this affidavit are either derived from my own personal knowledge and are true, or are based on stated sources and are true to the best of my information, knowledge and belief.

3.    There is now produced and shown to me and marked "**CB-1**" a paginated bundle of true copy documents to which I will refer in this affidavit. References to page numbers are references in CB-1, save where otherwise stated.

4.    I am submitting this affidavit in my position as director of each of the companies because I and the companies I represent intend to oppose the liquidation applications brought by the Applicant against them, and I respectfully invite this Honourable Court to discharge the provisional liquidators appointed pursuant to the order dated 9 January 2026. The liquidation applications are not warranted and are without basis – that is, the legal test for liquidation under the Insolvency Act, 2003 is not met. The grounds upon which the Applicant seeks liquidation do not, in my respectful view, satisfy the statutory requirements, and the circumstances of these companies do not justify the continuation of provisional liquidation or the making of a liquidation order.

5.    I have read the contents of the Application Notice filed herewith and confirm that the contents are true and correct.

#3503725v1

**My professional background**

6. I am a chartered accountant with more than 35 years of experience working on behalf of and advising lenders and financiers, shareholders, distressed companies, secured and unsecured creditors, investors, courts and other stakeholders on restructuring, insolvency and related corporate advisory arrangements and solutions in distressed environments across a range of industries including oil and gas, shipping, manufacturing and commodities.

7. Prior to founding Admiralty Asia, I was Managing Director and Head of Asia Pacific and Offshore Restructuring for Kroll, and before that the founder of Borrelli Walsh, both of which had offices internationally, including the BVI. Kroll acquired Borrelli Walsh Limited in 2020 and Borrelli Walsh was and Kroll remains a leading provider of insolvency and restructuring, corporate advisory, and forensic and expert services internationally, including throughout the Asia Pacific Caribbean regions. Much of my practice is based in Asia including the PRC and throughout the offshore business community, including the BVI.

8. Throughout the years, my mandates have typically involved substantial, complex, cross border and contentious restructurings and insolvencies involving both out of court appointments as receiver, independent financial advisor and director and, often, as an officer of and under the supervision of courts as provisional, official liquidator and court appointed receiver in various jurisdictions. I have been appointed by courts in various capacities since approximately 1999. I am also often appointed by stakeholders to act as an executive, non-executive or independent director of publicly listed or large privately-owned groups and as legal representative of companies in the PRC.

**The factual background**

9. The present proceedings concern the Attorney General's applications under sections 159 and 170 of the Insolvency Act 2003 ("**Act**") to appoint liquidators and provisional liquidators, respectively, over the following companies:

|  | Case no. | Respondent Company | Shareholder |
|---|---|---|---|
| 1. | BVIHC (COM) 2026/0001 | Bright Team Global Limited | Ms. Sandy Zhou ("**Ms. Zhou**") |
| 2. | BVIHC (COM) 2026/0002 | Auspicious Tycoon Limited | Mr. Chen Zhi ("**Mr. Chen**") |
| 3. | BVIHC (COM) 2026/0004 | Delightful Thrive Limited | Mr. Chen |
| 4. | BVIHC (COM) 2026/0005 | Even Sincerity Limited | Prince Group Holdings Limited |
| 5. | BVIHC (COM) 2026/0006 | Fulam Investment Limited | Ample Luck Investment Limited |

| 6. | BVIHC (COM) 2026/0007 | Giant Victory Holdings Limited | Deluxe Heaven Limited |
|---|---|---|---|
| 7. | BVIHC (COM) 2026/0008 | Golden Ascend International Limited | Mr. Chen |
| 8. | BVIHC (COM) 2026/0009 | Harmonic State Limited | Mr. Chen |
| 9. | BVIHC (COM) 2026/0012 | Luminous Glow Limited | Mr. Chen |
| 10. | BVIHC (COM) 2026/0013 | Mighty Divine Limited | Ms. Zhou |
| 11. | BVIHC (COM) 2026/0014 | Noble Title Limited | Retain Prosper Limited |
| 12. | BVIHC (COM) 2026/0015 | Oriental Charm Holdings Investment Limited | Ms. Li Caiyun |
| 13. | BVIHC (COM) 2026/0016 | Pacific Charm Holdings Investment | Mr. Chen |
| 14. | BVIHC (COM) 2026/0017 | Prince Global Group Limited | Mr. Chen |
| 15. | BVIHC (COM) 2026/0018 | Praise Marble Limited | Geotech Holdings Ltd. |
| 16. | BVIHC (COM) 2026/0019 | Prince Global Holdings Limited | Mr. Chen |
| 17. | BVIHC (COM) 2026/0020 | Respectful Steed Limited | Prince Group Holdings Limited |
| 18. | BVIHC (COM) 2026/0021 | Retain Prosper Limited | Mr. Chen |
| 19. | BVIHC (COM) 2026/0023 | Simply Advanced Limited | Mr. Chen |
| 20. | BVIHC (COM) 2026/0024 | Southern Heritage Limited | Mr. Chen |
| 21. | BVIHC (COM) 2026/0025 | Star Merit Global Limited | Mr. Chen |
| 22. | BVIHC (COM) 2026/0026 | Starry Bloom Limited | Ms. Zhang Fan |
| 23. | BVIHC (COM) 2026/0027 | Sure Tycoon Limited | Mr. Chen |
| 24. | BVIHC (COM) 2026/0029 | Towards Sunshine Limited | Prince Group Holdings Limited |
| 25. | BVIHC (COM) 2026/0030 | United Riches Global Limited | Mr. Chen |

10. The Court appointed provisional liquidators on an *ex parte* without notice basis over each of the above companies on 9 January 2026.

#3503725v1

11. The Attorney General has also brought related proceedings against five additional entities incorporated in the BVI - Amber Hill Ventures Limited, Lateral Bridge Global Limited, Robust Harmony Limited, Jumbo High Limited and Sword River Limited. I have not been engaged, instructed or appointed in any capacity by any or in respect of any of these five entities and do not make any representations on their behalf or in relation to them.   For convenience, I refer to the 25 companies listed above as the "**Respondents**".

**My appointments in relation to the Respondents**

*Appointment as a director*

12. On or around 6 January 2026 Mr Chen was taken from Cambodia by the Chinese authorities and is being held in custody in China and as far as I am aware is not able to communicate with the outside world[1]. Mr Chen gave a full power of attorney to certain individuals prior to his being taken into custody in China. Those individuals have not been subject to any allegations or charges in connection with any of the matters alleged against Mr Chen and are professional people within the Prince organization. However, The Chinese authorities have made threats against any party associated with Mr Chen.[2] In another case in Myanmar (unrelated to Prince group) they executed a group of individuals accused of involvement in scam centres[3]. For those reasons the attorneys-in-fact wish to remain anonymous and I have committed to respect those wishes. I am instructed that their identities may be shared with Justice Mithani so that the Court may satisfy itself in that regard but I am not authorized to provide their details to any other party associated with this case.

13. On 13 February 2026 Mr Chen's attorneys-in-fact appointed me as "Special Manager" authorising me to deal with any urgent issues arising on a day-to-day basis with respect to the Respondents as a stop-gap measure while my director appointments were being prepared. That appointment has since been terminated because it was superseded by my appointment as director. In the event I did not exercise any powers under that mandate.

14. Pursuant to director and shareholder resolutions passed in writing and dated between 23 February 2026 and 27 February 2026 the boards of directors of the Respondents have been reconstituted, such that I am now the sole director[4] of those companies.  Copies of the relevant resolutions are exhibited at pages 7-176. In cases where Mr Chen is the shareholder of the relevant company I have been appointed by Mr Chen's attorneys-in-fact given that Mr Chen has been extradited to China. I have seen and verified all of the relevant documentation and am satisfied that those appointing me had power to do so.

---

[1] A press release from the Ministry of Interior of the Royal Government of Cambodia is exhibited at page 1.

[2] An announcement from the Ministry of Public Security of the People's Republic of China is exhibited at page 2.

[3] An article from AP News dated 2 February 2026 is exhibited at pages 3 to 6.

[4] Save in certain circumstances where the ability to remove the pre-existing directors is reserved to the provisional liquidators in which cases I am an additional director alongside Mr Chen.

#3503725v1

**Appointment of provisional liquidators**

15.    I have considered the evidence upon which the provisional liquidators were appointed, and which was before the Court. The Attorney General applied to appoint provisional liquidators on the basis of public allegations made against *inter alia* Mr Chen in relation to so-called fraudulent activities, and based on sanctions currently in place with respect to Mr Chen and his associates. The appointment of the provisional liquidators was sought on the basis of an assumption that the Respondents may have been used to launder the proceeds of these fraudulent activities, although there appears to be no evidence before the Court of any involvement whatsoever by the Respondents in any activities which were either illegal or in any way objectionable, only innuendo drawn from the public allegations against Mr Chen. I have not been able to identify any evidence thus far linking the business of the Respondents to any wrongdoing or other objectionable activity and having read the evidence before the Court I am unable to find any there.

16.    I am also aware that the ultimate beneficial owners of the Respondents have been sanctioned by the US or UK or both, meaning that the assets of the companies themselves are frozen. I am not aware of any case where provisional liquidators have been appointed to prevent the dissipation of assets of a company whose assets are already frozen by international economic sanctions. Indeed, such a step would appear to be otiose. The information available to me (and which is before the Court) indicates that the appointment of provisional liquidators was neither necessary nor appropriate in light of the actual circumstances of the Respondents, and that the drastic step of appointing provisional liquidators ex parte, without affording the companies an opportunity to be heard, was disproportionate.

17.    I have now been appointed to the Respondents and I am prepared to ensure that their affairs are independently and transparently managed. In those circumstances, there is no justification for the continued appointment of provisional liquidators, and I respectfully request that the order appointing them be discharged with appropriate safeguards put in place (which I will address below).

18.    There are twenty-five distinct companies, and each has its own separate legal personality, corporate history, business activities, shareholding and assets. It would seem to me to be contrary to legal principles and precedent to make a winding up order on a blanket or omnibus basis without proper consideration of whether, in respect of each company, the test for liquidation is in fact met. If the Petitioner has particularized allegations and supporting evidence against any of these companies then that evidence should have been presented and the companies given an opportunity to respond.

**Dubious Sources of Allegations**

19. Without waiving privilege, I understand from Boies Schiller Flexner LLP (the US attorneys of Mr. Chen) ("**BSF**") as follows:

19.1. Between 5 February and 12 February 2024, Radio Free Asia ("**RFA**"), a US state-funded news outlet that was overseen by the US Agency for Global Media with oversight from the US Department of State, published a three-part feature containing allegations against the Prince Group and its beneficial owners ("**RFA Articles**"). The RFA Articles broadly alleged ties between the Prince Group and the Cambodian government, as well as purported illegal business practices, including allegations of money laundering and human trafficking.  A copy of an article confirming that RFA received funding from the US government as well as the three articles produced by RFA in respect of the Prince Group is exhibited at pages 177 to 227.

19.2. BSF understands that the UK government primarily relied on the RFA Articles and other media sources in connection with the UK sanctions case.

19.3. An article published in The Times on 12 November 2025 (the "**Times Articles**") written by the same journalist who authored the RFA Articles explicitly identified Teo Kang-Yeow, also known as Cliff Teo, as a source for the reporting. In the Times Article, Cliff Teo is described as "*[a] former business associate-turned-whistleblower*" who "*has spoken for the first time*" about his allegations against the Prince Group.  A copy of the Times Article is exhibited at pages 228 to 244.

19.4. The statements attributed to Cliff Teo in the Times Article bear a strong similarity to quotes from an unnamed source in the RFA Articles, particularly with respect to allegations of money flows through offshore accounts.  This similarity suggests that Cliff Teo was also the unnamed source in the RFA Articles.

19.5. Cliff Teo is a former Prince Group associate who is accused of having stolen approximately USD 30 million from Prince Group-affiliated entities. In early-to-mid-2023, four companies overseen by Prince Group – Greenbay Properties Co., Ltd., Drew Properties Co., Ltd., Huntsman Investments Co., Ltd., and Binary Properties Co., Ltd. – filed both criminal and civil complaints against Cliff Teo in the Taiwanese courts.

19.6. The criminal complaint alleges, among other things, that Cliff Teo was engaged to provide secretarial and administrative services for Prince Group's affiliates.  Cliff Teo later worked as the personal assistant and liaison to banks for Mr Chen, though he was never an authorised signatory. The complaint details that Cliff Teo made a series of unauthorised transactions while serving in this role, including taking loans using company property as

collateral and the transfer of funds to accounts under his control.  The complainant companies requested that the prosecutor's office initiate criminal proceedings against the certain named defendants, including Cliff Teo, for breach of trust and business embezzlement, seize the defendants' assets in Taiwan to preserve the companies' rights and prevent asset dissipation, and investigate related bank accounts and transactions. Before the criminal proceedings could be completed, Cliff Teo fled Taiwan.

19.7.  The civil proceedings focused on the same matters regarding Cliff Teo's unauthorised transfers and misappropriation of company funds.  The Taipei District Court heard oral arguments and concluded the proceedings on 19 July 2024.  On 2 August 2024, the court issued a judgment finding Cliff Teo jointly liable for damages and ordering him to compensate the plaintiff companies for approximately USD 18,698,969 (NT $570,318,554). A copy of the Taiwanese judgment and an English translation of the same is exhibited at pages 245 to 248.

19.8.  Cliff Teo did not and has not satisfied the judgment owed to the Prince Group entities and is currently wanted by Taiwanese authorities.

20.  It therefore appears that there are open questions as to question the reliability of the allegations against the beneficial owners of the the Respondents.  The sanctions designations appear to have originated, at least in part, from media reports the primary source for which was an individual who is himself a fugitive from Taiwanese authorities, the subject of adverse court findings for breach of trust and embezzlement in relation to Prince Group-related entities and may have motives to spread negative information about the Prince Group and its ultimate beneficial owner, Mr. Chen. I say all of this simply to state that there appear to be substantial open issues which will need to be resolved, including by Courts elsewhere, and not pre-judged.

21.  My mandate as independent director shares substantially the same objective as the primary stated objective of the provisional liquidators, namely to maintain the status quo and to preserve the assets of the companies in question pending the resolution of any underlying issues and with commensurate reporting. I believe that my appointment as independent director represents a more appropriate and proportionate way of proceeding in the face of these allegations.

**Undertakings**

22.  On 21 February 2026, Campbells wrote to the Attorney General's legal practitioners, O'Neal Webster, expressing concerns about the appointment of provisional liquidators. That letter is exhibited at page 249 to 251, and proposed a "collaborative route forward" whereby I, as director appointed over the Independent Companies, would agree undertakings in relation to the provision of information to the Attorney General and to coordinate action to preserve the value of the various companies and their assets.

#3503725v1

23.    I confirm that I will cooperate fully with the Court and the Attorney General including by providing the Court and/or the Attorney General with any information and assistance as may reasonably be required by the Attorney General in the circumstances. I recognise that the Attorney General has a legitimate interest in ensuring that the affairs of the Respondents are properly managed and that any concerns regarding potential misconduct are appropriately addressed. Similarly, I recognise that the Court has a keen interest in understanding the nature of these companies' activities, particularly in light of the allegations that have been made.

24.    I have set out below a list of specific proposed undertakings which I am prepared to give to this Honourable Court. These proposed undertakings are modelled on the information sharing provisions contained in the Protocols for Consultation and Information-Sharing annexed to orders appointing provisional liquidators in these proceedings, and are intended to provide the Court and the Attorney General with appropriate assurances whilst avoiding the expense and disruption of a full provisional liquidation.

25.    I propose to provide the following undertakings to this Honourable Court in my capacity as director of the Respondents:

> ***Undertakings as to Information Disclosure***
>
> *(a) I undertake to provide the Attorney General, upon reasonable written request and subject to paragraphs (g) to (k) below, with access to corporate records of the Respondents, including constitutional documents, registers of members and directors, organisational charts, and officer and registered agent details.*
>
> *(b) I undertake to provide the Attorney General, upon reasonable written request and subject to paragraphs (g) to (k) below, with access to financial records of the Respondents, including bank statements, ledgers, invoices, loan agreements, asset registers, and records of related party transactions.*
>
> *(c) I undertake to provide the Attorney General, upon reasonable written request and subject to paragraphs (g) to (k) below, with access to selected communications, including emails and messaging data from corporate systems, to the extent relevant to any investigation.*
>
> *(d) I undertake to provide the Attorney General, upon reasonable written request and subject to paragraphs (g) to (k) below, with access to counterparty materials, including KYC files, contracts, and correspondence with intermediaries and fiduciaries.*

*(e) I undertake to provide the Attorney General, upon reasonable written request and subject to paragraphs (g) to (k) below, with access to non-privileged investigation work product, including factual memoranda, forensic accounting outputs, and chain-of-custody logs prepared by me or under my direction.*

*(f) I undertake to provide the Attorney General, upon reasonable written request and subject to paragraphs (g) to (k) below, with non-privileged asset tracing materials, including tracing schedules, summaries, and information regarding restraints or recovery actions in respect of the Respondents.*

***Safeguards and Limitations on Disclosure***

*(g) Notwithstanding the foregoing, I shall not be required to disclose any material which is subject to legal professional privilege or litigation privilege. Any inadvertent disclosure of privileged material shall not constitute a waiver of privilege, and the Attorney General shall promptly return or delete such material upon notification.*

*(h) The Attorney General shall maintain any confidential information disclosed pursuant to these undertakings in confidence and shall use it solely for lawful law enforcement, regulatory, and public interest purposes.*

*(i) Where information is requested which, in my reasonable view, is unduly burdensome, oppressive, or disproportionate, or which may prejudice the integrity of any civil recovery efforts, I may propose reasonable narrowing, staging, or alternative formats, including summaries or redactions, to protect confidentiality, commercial sensitivity, or the interests of the Respondents.*

*(j) If any disagreement arises in relation to any request for information which cannot be resolved promptly by consultation, either party may seek directions from the Court on short notice.*

*(k) Any disclosure made by me in good faith pursuant to these undertakings shall not constitute a breach of duty, confidence, data protection obligations, or contractual restrictions binding upon any of the Respondents.*

***Undertakings as to Cooperation***

*(l) I undertake to cooperate fully with the Court and the Attorney General in the exercise of my director powers, and to provide such information and assistance as may reasonably be required by the Attorney General in the circumstances.*

*(m) I undertake to cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions, to the extent consistent with my duties as Director and subject to the preservation of privilege.*

*(n) I undertake to maintain a record of disclosures made to the Attorney General pursuant to these undertakings sufficient to evidence compliance, subject to privilege.*

**Undertakings as to Reporting**

*(o) I undertake to provide the Attorney General with quarterly consultation reports in respect of the Respondents, containing an executive summary and key developments, information regarding the asset position of the companies (including discoveries, realisations, restraints, and pending recovery actions), an update on any investigations being conducted (including factual findings and outstanding enquiries), a summary of any legal proceedings filed or contemplated, and an identification of risks and mitigants, together with proposed next steps and timetable.*

*(p) I undertake to notify the Attorney General promptly of any material developments in respect of the affairs of the Respondents which may be relevant to any ongoing investigation or regulatory enquiry.*

**Undertakings as to Preservation of Assets**

*(q) I undertake not to cause or permit the dissipation, disposal, or encumbrance of any assets of the Respondents otherwise than in the ordinary course of business, save with the prior consent of the Court or the Attorney General.*

*(r) I undertake to take all reasonable steps to preserve the books, records, and data of the Respondents.*

**General Provisions**

*(s) I shall have liberty to apply to this Honourable Court on short notice for directions, variation, or termination of any of the foregoing undertakings.*

*(t) The Attorney General shall have liberty to apply to this Honourable Court on short notice for directions in respect of the operation of these undertakings, or for such further or other undertakings as the Court may deem appropriate.*

26.    In my opinion, these proposed undertakings provide the Court and the Attorney General with substantial and meaningful protections, and that they are more proportionate and appropriate to the circumstances of this case than the continuation of provisional liquidation. The costs and

disruption associated with provisional liquidation are considerable, and in my opinion, the interests of all parties would be better served by permitting me to continue to manage the affairs of the Respondents as Director, subject to the undertakings set out above, pending the determination of the liquidation applications on their merits.

27. The Respondent's legal practitioners, Campbells, wrote to the provisional liquidators on 24 February 2026 requesting *inter alia* a breakdown of the costs and expenses incurred to date in connection with the appointment of the provisional liquidators and that the provisional liquidators provide advanced notice of any proposed dealings with the Respondent's assets.  To date, the Respondents have yet to receive a response.  A copy of the letter to the provisional liquidators is at pages 252 to 255.

**Summary of Correspondence**

28. Relevant correspondence between the Applicant's legal practitioners, O'Neal Webster ("**ONW**") and Campbells is exhibited at pages 249 to 251 and pages 256 to 269. That correspondence is summarised below.

29. On 17 February 2026, Campbells sent an email to ONW seeking an adjournment and a continuation of the existing preliminary liquidation orders for a period of two months on the terms of the orders as currently drafted. ONW responded indicating that they were seeking instructions from the Attorney General in relation to the proposed adjournment (see pages 256 to 257).

30. As aforementioned, on 21 February 2026, Campbells issued a letter to ONW setting out the Respondents' position in respect of the provisional liquidation application as well as proposing a collaborative route forward.

31. On 24 February 2026, Campbells issued a further letter to ONW expanding upon the concerns raised in its letter of 21 February 2026 in respect of the appointment of provisional liquidators over the Respondents as well as the application to appoint liquidators over the Respondents (see pages 258 to 261).

32. On 25 February 2026, Campbells sent an email to ONW seeking a response to the correspondence sent by Campbells to date.  On even date, ONW indicated that their expectation was that the forthcoming hearing on 2 March 2026 to be a directions hearing (see pages 262 to 264). Reliance was placed on this representation in preparing for the hearing accordingly.

33. On 26 February 2026, Campbells sent an email to ONW attaching a draft order seeking the adjournment of the upcoming liquidation hearings as well as setting out proposed directions as to the filing of evidence in respect of the discharge of the provisional liquidators (see pages 266 to 267).  Thereafter, Campbells sent a further email to ONW seeking confirmation of the Applicant's

#3503725v1

position in respect of the draft order but to no avail as ONW indicated it was still seeking instructions (see pages 265 to 266). As ONW had indicated on multiple occasions that they were seeking instructions from the Attorney General in relation to the proposed adjournment, the understanding was that the question of adjournment was under active consideration by the Applicant.

34.     It was not until 27 February 2026 that ONW confirmed that the hearing would not be a directions hearing and the adjournment was not agreed (see pages 269). Campbells responded on the same day expressing surprise at this last minute change of position, noting that Campbells had relied on the Applicant's previous assertions that directions could be agreed (see page 268).

35.     On the same day, ONW issued a letter in response to Campbells' letter of 21 February 2026 which *inter alia* rejects the proposed collaborative route forward set out therein (see pages 272 to 273).

**Conclusion**

36.     For the reasons set out above, I will invite the Court to discharge the appointment of provisional liquidators over the Respondents, and to dismiss the extant liquidation application against them.

37.     This affidavit has been sworn in accordance with the law and procedure of the Special Administrative Region of Hong Kong.


**SWORN by the above-named**                    )
**COSIMO BORRELLI**                             )
**this        day of March 2026**               )
**at**                                          )        _____
                                                )

**BEFORE ME:**


_____

**SOLICITOR / COMMISSIONER TO ADMINISTER OATHS / NOTARY PUBLIC**

**Name:**

**Address:**

#3503725v1

**IN THE EASTERN CARIBBEAN SUPREME COURT**
**IN THE HIGH COURT OF JUSTICE**
**VIRGIN ISLANDS COMMERCIAL DIVISION**

**CLAIM Nos: BVIHC (COM) 2026/0001; BVIHC (COM) 2026/0002; BVIHC (COM) 2026/0004; BVIHC (COM) 2026/0005; BVIHC (COM) 2026/0006; BVIHC (COM) 2026/0007; BVIHC (COM) 2026/0008; BVIHC (COM) 2026/0009; BVIHC (COM) 2026/0012; BVIHC (COM) 2026/0013; BVIHC (COM) 2026/0014; BVIHC (COM) 2026/0015; BVIHC (COM) 2026/0016; BVIHC (COM) 2026/0017; BVIHC (COM) 2026/0018; BVIHC (COM) 2026/0019; BVIHC (COM) 2026/0020; BVIHC (COM) 2026/0021; BVIHC (COM) 2026/0023; BVIHC (COM) 2026/0024; BVIHC (COM) 2026/0025; BVIHC (COM) 2026/0026; BVIHC (COM) 2026/0027; BVIHC (COM) 2026/0029; BVIHC (COM) 2026/0030**

B E T W E E N:

**ATTORNEY GENERAL**

**Applicant**

-and-

| | |
|---|---|
| BVIHC (COM) 2026/0001 | **BRIGHT TEAM GLOBAL LIMITED** |
| BVIHC (COM) 2026/0002 | **AUSPICIOUS TYCOON LIMITED** |
| BVIHC (COM) 2026/0004 | **DELIGHTFUL THRIVE LIMITED** |
| BVIHC (COM) 2026/0005 | **EVEN SINCERITY LIMITED** |
| BVIHC (COM) 2026/0006 | **FULAM INVESTMENT LIMITED** |
| BVIHC (COM) 2026/0007 | **GIANT VICTORY HOLDINGS LIMITED** |
| BVIHC (COM) 2026/0008 | **GOLDEN ASCEND INTERNATIONAL LIMITED** |
| BVIHC (COM) 2026/0009 | **HARMONIC STATE LIMITED** |
| BVIHC (COM) 2026/0012 | **LUMINOUS GLOW LIMITED** |
| BVIHC (COM) 2026/0013 | **MIGHTY DIVINE LIMITED** |
| BVIHC (COM) 2026/0014 | **NOBLE TITLE LIMITED** |
| BVIHC (COM) 2026/0015 | **ORIENTAL CHARM HOLDINGS INVESTMENT LIMITED** |
| BVIHC (COM) 2026/0016 | **PACIFIC CHARM HOLDINGS INVESTMENT** |
| BVIHC (COM) 2026/0017 | **PRINCE GLOBAL GROUP LIMITED** |
| BVIHC (COM) 2026/0018 | **PRAISE MARBLE LIMITED** |
| BVIHC (COM) 2026/0019 | **PRINCE GLOBAL HOLDINGS LIMITED** |
| BVIHC (COM) 2026/0020 | **RESPECTFUL STEED LIMITED** |
| BVIHC (COM) 2026/0021 | **RETAIN PROSPER LIMITED** |
| BVIHC (COM) 2026/0023 | **SIMPLY ADVANCED LIMITED** |
| BVIHC (COM) 2026/0024 | **SOUTHERN HERITAGE LIMITED** |
| BVIHC (COM) 2026/0025 | **STAR MERIT GLOBAL LIMITED** |
| BVIHC (COM) 2026/0026 | **STARRY BLOOM LIMITED** |
| BVIHC (COM) 2026/0027 | **SURE TYCOON LIMITED** |
| BVIHC (COM) 2026/0029 | **TOWARDS SUNSHINE LIMITED** |
| BVIHC (COM) 2026/0030 | **UNITED RICHES GLOBAL LIMITED** |

**Respondents**

_____

**AFFIDAVIT OF COSIMO BORRELLI**
_____

#3503725v1

Campbells
Floor 4, Banco Popular Building
Road Town
Tortola VG1110
British Virgin Islands
Tel: (284) 494 2423
Ref: SDA/MCH/KCH/20785-45687
**Legal Practitioners for the Respondents**

#3503725v1