# EXHIBIT 16

## Transcript of the January 9, 2026 BVI Ex Parte Hearing

IN THE EASTERN CARIBBEAN SUPREME COURT
IN THE HIGH COURT OF JUSTICE
BRITISH VIRGIN ISLANDS
COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0027, CLAIM NO BVIHC (COM) 2026/0001, CLAIM NO BVIHC (COM) 2026/0002, CLAIM NO BVIHC (COM) 2026/0003, CLAIM NO BVIHC (COM) 2026/0004, CLAIM NO BVIHC (COM) 2026/0005, CLAIM NO BVIHC (COM) 2026/0006, CLAIM NO BVIHC (COM) 2026/0007, CLAIM NO BVIHC (COM) 2026/0008, CLAIM NO BVIHC (COM) 2026/0009, CLAIM NO BVIHC (COM) 2026/0010, CLAIM NO BVIHC (COM) 2026/0011, CLAIM NO BVIHC (COM) 2026/0012, CLAIM NO BVIHC (COM) 2026/0013, CLAIM NO BVIHC (COM) 2026/0014, CLAIM NO BVIHC (COM) 2026/0015, CLAIM NO BVIHC (COM) 2026/0016, CLAIM NO BVIHC (COM) 2026/0017, CLAIM NO BVIHC (COM) 2026/0018, CLAIM NO BVIHC (COM) 2026/0019, CLAIM NO BVIHC (COM) 2026/0020, CLAIM NO BVIHC (COM) 2026/0021, CLAIM NO BVIHC (COM) 2026/0022, CLAIM NO BVIHC (COM) 2026/0023, CLAIM NO BVIHC (COM) 2026/0024, CLAIM NO BVIHC (COM) 2026/0025, CLAIM NO BVIHC (COM) 2026/0026, CLAIM NO BVIHC (COM) 2026/0028, CLAIM NO BVIHC (COM) 2026/0029, CLAIM NO BVIHC (COM) 2026/0030

BETWEEN:

IN THE MATTER OF SURE TYCOON LIMITED AND TWENTY-NINE OTHER COMPANIES )
AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS )
THE ATTORNEY GENERAL )
Applicant )

-v- )

SURE TYCOON LIMITED and TWENTY-NINE OTHER COMPANIES )
Respondents )

TRANSCRIPT OF CHAMBERS PROCEEDINGS

Friday, 9th January, 2026
9:05 a.m. to 10:31 a.m.

BEFORE: HON. MR. Justice ABBAS MITHANI, K.C., Judge

Court Reporting Unit
Government of the Virgin Islands
Road Town, Tortola
British Virgin Islands

APPEARANCES: O'NEAL WEBSTER
Chambers
Road Town, Tortola
British Virgin Islands
BY: MR. PAUL DENNIS, K.C.,
MS. NADINE WHYTE, and
MS. KOYA RYAN
For the Applicant
Ex Parte

* * *

P-R-O-C-E-E-D-I-N-G-S

* * *

(Court convenes at 9:05 a.m.)

THE CLERK: Good morning, Counsel.

BVIHCM 01 to 30 of 2026 - In the Matter of the Attorney General versus Sure Tycoon Limited and Others.

Can we have the appearances, please, for the records.

MR. DENNIS: May it please you, My Lord, Paul Dennis, and I appear for the Applicant together with Ms. Nadine Whyte and Ms. Koya Ryan.

THE COURT: Yes.

MS. FAHIE: Yes. Good morning, My Lord.

Diane Fahie appearing for the Registrar --

Sorry. Can't you hear me?

THE COURT: I can hear you, Ms. Fahie.

MS. FAHIE: Okay, great.

So Diane -- yes, Fahie, F-o-y. It's F-a-h-i-e, but it's pronounced F-o-y.

That's fine.

Ms. Nellien Bute was supposed to join us. I just sent her log in details, but I don't see her in. But she's also supposed to be appearing.

THE COURT: I can see her.

THE CLERK: Yes, she's here.

MR. DENNIS: I believe, My Lord, that Mr. Paul Pretlov, one of the Joint Provisional Liquidators which the Applicant is seeking to have appointed this morning should be present. I'm not quite seeing.

THE CLERK: He is here as well, My Lord.

MR. DENNIS: He's there.

Very well, My Lord.

THE COURT: Yes. Okay.

MR. DENNIS: Shall I proceed, My Lord?

THE COURT: Please do, Mr. Dennis, please do.

I have read the papers.

MR. DENNIS: Yes.

THE COURT: I haven't read all the bundles, but I read your excellent summary.

Thank you very -- sorry, excellent skeleton argument. Thank you very much for that.

I'm also fairly familiar with this area of the law.

MR. DENNIS: Very well.

THE COURT: The equivalent jurisdiction in England and Wales is section 124A of the Insolvency Act 1986, and I've written about it, so I'm reasonably familiar. So, please, proceed, Mr. Dennis.

MR. DENNIS: Yes. That is most heartening, My Lord.

My Lord, perhaps one should begin with a helicopter view of the circumstances which have dictated the application which is before Your Lordship.

THE COURT: Yes.

MR. DENNIS: And Your Lordship will note from the papers that this is an application by the Attorney General in relation to 30 BVI entities. The application is pursuant to section 170 of the Insolvency Act --

THE COURT: Yes.

MR. DENNIS: -- to appoint joint provisional liquidators over the various Respondent Companies.

THE COURT: Yes.

MR. DENNIS: As a matter of convenience, My Lord, because the case in respect of each of these entities is practically identical to the cases of the others --

THE COURT: Yes.

MR. DENNIS: -- we have put before you, My Lord, what we consider merely a representative bundle which contains the Originating Application for appointment of receiver, the Application for the provisional appointment, the Affidavit of the Attorney General, and the exhibits. But Your Lordship will have noted that what is contained in this particular bundle is equally applicable to all the other remaining 29 Companies --

THE COURT: Yes.

MR. DENNIS: -- the names of which are set out in Schedule 1 to our skeleton.

THE COURT: Yes.

MR. DENNIS: To the extent, My Lord, that there may be any variation in relation to any specific Companies, those differences are set out in Schedule 2 of our skeleton, but as an overall view the cases are practically identical.

THE COURT: Thank you.

MR. DENNIS: My Lord, the Originating Application and the Applications for Interlocutory Appointment of Joint Provisional Receiver, I'm sorry, Liquidators, were filed on the 5th as Your Lordship will note from the bundle.

Your Lordship will see as an overview that this concerns a group of Companies commonly referred to as the Prince Group of Companies which have been the subject of various regulatory and other proceedings emanating from multiple jurisdictions, closest to home, in the United States, where there has been a criminal proceeding launched against the person who is alleged to be the head of what is described as an international conglomerate of companies which are involved in various aspects of criminality, including money laundering, various kinds of fraud, including cryptocurrency fraud, horrific undertakings such as forced labour camps, forced scamming which transcends many borders and jurisdictions.

To the extent, My Lord, that implicated in this in some way or the other are the 30 Companies which are the subject of the various applications before you, having regard to information which has come to the attention of the Attorney General --

THE COURT: Yes.

MR. DENNIS: -- whose very credible sources, including, My Lord, from statements published by the U.S. Department of Justice and also, My Lord, from releases put out by the UK authorities, particularly the Foreign and Commonwealth Office, the Attorney General in her capacity as the legal representative of the Crown in the BVI, and also with authority and a mandate to, in a sense, My Lord, be the guardian of the reputation of the Territory, and to ensure that appropriate steps are taken to jealously guard its reputation, found it appropriate, having regard to those matters which have come to her attention and which have been detailed in her affidavit which Your Lordship will have seen at Tab 3 of the Hearing Bundle --

THE COURT: Yes.

MR. DENNIS: She took this very appropriate step, My Lord, of making this application before Your Lordship --

THE COURT: Yes.

MR. DENNIS: -- by way of an Originating Application for the appointment of liquidators over the entities which are affected, and as a corollary of that, in the interim, for the appointment of joint provisional liquidators.

We have detailed in the affidavit of the Attorney General and which Your Lordship has had an opportunity to --

THE COURT: I have.

MR. DENNIS: -- peruse, and which we've also summarised in our skeleton, My Lord, the various steps which have been taken by the various international authorities, as well as newspaper articles which indicate, again from credible sources, steps which have been taken in other jurisdictions apart from the United States and the United Kingdom.

Given Your Lordship's indication that Your Lordship has perused the papers, I do not propose to take you through either the, through the affidavit in great detail, but I would like to indicate the highlights, if that is, if Your Lordship considers that a sensible approach.

THE COURT: Absolutely. And just before you take me, in England and Wales it's the Secretary of State who brings these petitions.

MR. DENNIS: That is correct, My Lord.

THE COURT: And what's the authority for the Attorney General bringing it as opposed to, for example, some other official bringing

it? This is actually in the statute? I haven't looked at the BVI.

MR. DENNIS: Yes.

My Lord, the Attorney General has been conferred with similar powers to those which reside in the Secretary of State in the UK. And, My Lord, we have indicated the basis of that in our skeleton, if I could just take Your Lordship --

THE COURT: Yes, please, if you would.

MR. DENNIS: -- to the section of our skeleton --

THE COURT: Yes.

MR. DENNIS: -- which deals with these matters.

Beginning at Paragraph 42 --

THE COURT: Yes.

MR. DENNIS: -- we indicate that pursuant, My Lord, to the Insolvency Act, the Applicant has standing to apply for the appointment of provisional liquidators as she is a person listed in section 170(2).

THE COURT: Yes.

MR. DENNIS: 170, subsection (2), paragraphs (a) and (h) of the Act.

THE COURT: Sorry. Just bear with me. Section? Section 162 --

MR. DENNIS: 170, subsection (2).

THE COURT: Oh, 170(2). Okay, 170(2). And so that's the --

MR. DENNIS: And then --

THE COURT: Yes.

MR. DENNIS: And then, My Lord, conjointly I would ask Your Lordship to look at section 162 --

THE COURT: Yes.

MR. DENNIS: -- of the Act --

THE COURT: Yes.

MR. DENNIS: -- which speaks to the persons who may make such an application.

THE COURT: Yes.

MR. DENNIS: "The Court may, on application by a person specified in subsection (2), appoint a liquidator of a company..."

The Attorney General, My Lord, is one of the specified persons who may make such an application pursuant to that section.

THE COURT: Okay.

Mr. Dennis, looking at subsection (2) of 170, what it says --

(Pause.)

Oh, I see. Okay.

Where do we find the Public Interest provisions? It's in section 162, is it?

MR. DENNIS: That would be so, My Lord. If we go to 162, 162 subsection (1), My Lord --

THE COURT: Yes.

MR. DENNIS: -- speaks to the fact that:

"The Court may, on application by a person specified," which includes the Attorney General, "to appoint a liquidator."

And then it sets out the bases:

"The company is insolvent;

The Court is of the opinion that it is just and equitable that a liquidator should be appointed; or"

And, "the Court is of the opinion that it is in the public interest for a liquidator to be appointed."

So all of those provisions taken together, My Lord, underpins the Attorney General's

authority --

THE COURT: Absolutely.

MR. DENNIS: -- to apply.

THE COURT: It's a bit of an anomaly that anyone can present a petition on public interest grounds under section 124(a) of the Insolvency Act. It's only the Secretary of State who can, but it seems to me in that section that in addition to the Attorney General, any creditor or even a member can ask the Court to invoke its public interest jurisdiction.

Do you agree with me, Mr. Dennis?

MR. DENNIS: Well, that's certainly how it seems to read, My Lord, which I would agree with Your Lordship is something of an anomaly because ordinarily one would expect that appointments on public interest grounds would be, you know, the prerogative of the best placed person to do so, which would indeed be the Attorney General.

THE COURT: Absolutely.

MR. DENNIS: Be that as it may, My Lord, here we are. The Attorney General, whether or not potentially others may do so, has --

THE COURT: Thank you.

That was what I was seeking clarification on.

MR. DENNIS: Yes, My Lord.

THE COURT: And I think that must be right. In fact there are quite a few English authorities which say that where a creditor seeks, or indeed a member seeks to bring public interest proceedings the Court will not allow it to go ahead even though there is jurisdiction to do so. It should be prosecuted through the appropriate Government department or the appropriate Government official. So I'm entirely satisfied that the Attorney General has power to bring this application, and he's seeking, rather, she is seeking the appointment of independent insolvency practitioners rather than the official receiver.

MR. DENNIS: That is correct, My Lord. That is correct.

To the extent, My Lord, having regard rather to the very extensive powers which liquidators as officers of the Court --

THE COURT: Yes.

MR. DENNIS: -- do have, including the power to take appropriate steps to take control of and protect the assets of the entities involved, and quite importantly in this case the powers of investigation of the affairs of the Companies to, in

this particular case, get to the bottom of the extent to which the entities concerned may in fact be involved in the criminal enterprise which is the subject of proceedings in the U.S. and the subject of enforcement proceedings against the Prince Group of which they are involved, then, of course, My Lord, it would be very important for the Attorney General to be able to procure --

THE COURT: Yes, I understand.

MR. DENNIS: -- the orders which she is seeking.

THE COURT: Yes.

MR. DENNIS: My Lord, may I just turn, My Lord, to, just to highlight the various actions which have been taken in sister jurisdictions, some of which formed the basis of the Attorney General's knowledge of what has been going on with these Companies --

THE COURT: Yes.

MR. DENNIS: -- and which in turn has informed her applications.

THE COURT: Yes.

MR. DENNIS: We deal with that, My Lord, in the preliminary paragraphs of our

skeleton, particularly, My Lord, Paragraphs 14 et sequente, and we speak first to actions which have been taken in the U.S. by the Department of Justice which announced the indictment of the head of the Prince Group, Chen Zhi who we refer to as Chen for purposes of our skeleton and charges of conspiracy to commit wire fraud, conspiracy to commit money-laundering and other offences.

Currently, My Lord, the Department of Justice also has filed a civil complaint seeking forfeiture of approximately 127,271 Bitcoin valued at some US$15 billion --

THE COURT: Yes.

MR. DENNIS: -- which allegedly, My Lord, represents the proceeds traceable to criminal activity with Chen and the Prince Group.

Interestingly enough, My Lord, those very Bitcoins, according to the U.S. authorities were ultimately trades to wallets held or controlled by two of the entities which are the subject of today's application, particularly, My Lord, Amber Hill Ventures Limited and Lateral Bridge Global Limited.

The United States' office, the United States' authorities, My Lord, in their release has also indicated sweeping sanctions against 146 targets within

the Prince Group which have been designated as part of this international criminal conglomerate, the effect of which is that all properties and interests in properties of these targets in the United States are blocked and U.S. persons, in effect, are prohibited from dealing with them.

The targets, My Lord, include all of the Companies which are the subject of the application before Your Lordship --

THE COURT: Yes.

MR. DENNIS: -- with the exception of Amber Hill and Lateral Bridge Global Limited. Even though they are not targeted in the same way as the other 28 entities, the very important link which has been made to them --

THE COURT: Yes.

MR. DENNIS: -- in the context of the concerns and the allegations raised in these proceedings, is the fact, as I've just indicated, that the cryptocurrency, which is the subject of forfeiture proceedings in the United States, have been directly linked to wallets controlled by these two entities, Amber Hill and Lateral Bridge Global Limited.

In addition to the action taken in the United States, My Lord, and just to pause here to

indicate, Your Lordship will have noted from the affidavit of the Attorney General we have exhibited in its entirety the U.S. indictment which speaks to the criminal activity which we've summarised in our skeleton. The verified complaint which is civil proceedings for the forfeiture of the Bitcoin is also set out in its entirety. And those can be found, My Lord, at pages 42 and 67, respectively, of the Hearing Bundle.

I could take Your Lordship to those a little later, if Your Lordship wishes to see those directly from that source.

THE COURT: No. I am perfectly content with what you indicated and the summary that you've given. I don't need to be taken.

MR. DENNIS: Very well, My Lord. I'm happy to be guided by Your Lordship.

THE COURT: I'm very grateful. I wasn't just flattering you when I said that your skeleton was really succinct and very helpful.

MR. DENNIS: I am obliged, My Lordship.

Perhaps then, My Lord, I could just briefly turn to the action taken in the U.K. just by

way of summary.

THE COURT: Yes.

MR. DENNIS: We address this, My Lord, at Paragraph 17 of our skeleton which indicate that on October 14 the United Kingdom Government and in particular, My Lord, the Commonwealth and Foreign, Foreign and Commonwealth Office also imposed sanctions on Chen --

THE COURT: Yes.

MR. DENNIS: -- and the Group --

THE COURT: Yes.

MR. DENNIS: -- and in so doing, noted that he and his associates have incorporated companies in the BVI that own multi-million dollar properties in London. And, again, My Lord, that is made good with reference to the exhibits which are annexed to the Attorney General's affidavit.

THE COURT: Yes.

MR. DENNIS: It is important to bear in mind, My Lord, that as regards those sanctions, the BVI typically implements all international sanctions that the U.K. extends to its various Territories through its Orders in Council and,

in fact, My Lord, following the sanction imposed on Chen and the Prince Group, the Financial Services Commission in the BVI issued a Sanction Circular of its own which, among other things, indicated that Chen and this Group had been added to the consolidated list of sanctioned entities and persons, including a reminder as to what actions business individuals should take in relation to these sanctions, and emphasise that failure to comply with them or attempting to circumvent them in any way constitutes a criminal offence.

And, of course, My Lord, this is in the context of the responsibility and obligations which the BVI has undertaken internationally as comprehensively outlined in the Attorney General's affidavit to ensure that BVI companies are not exploited for the purpose of nefarious and or criminal activities.

In addition to the actions taken in the U.S. and the United Kingdom, My Lord, Your Lordship will also have seen our summary of actions taken in various other jurisdictions, including Singapore, Hong Kong, Taiwan, and Thailand, all of which have taken significant steps. And Your Lordship will have noted that the steps taken in, particularly in the U.K. and the U.S. occurred roughly around the same time and so constituted a coordinated effort to hold the

perpetrators of these various aspects of criminality to account.

My Lord, we detail the allegations both against the Chen Group, the Prince Group, Chen himself, and the various members of that Group, but most specifically, My Lord, we detail the allegations against the BVI Companies themselves.

THE COURT: Yes.

MR. DENNIS: My Lord, I remain mindful of the fact of Your Lordship's indication as to Your Lordship having fully familiarised yourself with the papers, but Your Lordship will forgive me if to the extent that this is obviously going to be a case of significant public interest, and this being an ex parte application on the basis of which we are seeking the interlocutory relief, I think, My Lord, perhaps it is appropriate and perhaps advisable for me to just summarise these on the record as the transcript of these proceedings may ultimately be required to be disseminated beyond the BVI.

THE COURT: Yes. I'll come on to the transcript in a minute.

MR. DENNIS: Yes.

THE COURT: By all means for the record summarise what you wish to. The

skeleton argument which is also something which I would expect a third party to obtain --

MR. DENNIS: Yes, My Lord.

THE COURT: -- will also provide a very, very good background, but I do understand why you want to summarise everything for the record.

MR. DENNIS: Yes, My Lord.

I'll attempt to be very brief in so doing.

So in relation to the allegations of the Companies, My Lord, against the Companies, we deal with that at Paragraphs 28 onwards.

THE COURT: Yes.

MR. DENNIS: And overall the allegation is that they are part of this complex network of companies used by Chen and his associates in the Prince Group to conceal, hold, transfer and launder proceeds derived from their alleged criminal activities, including forced labour, human trafficking, fraud and other serious criminal conduct.

In the U.S. complaint in particular, My Lord, the Department of Justice alleges that Chen and his associates also laundered fraudulent proceeds through several companies, including companies

established in the BVI which are under their control. These companies, it is said, My Lord, do not serve any real purpose other than to facilitate this money-laundering enterprise.

I already spoke, My Lord, to the investigations --

THE COURT: Yes.

MR. DENNIS: -- particularly undertaken by the Federal Bureau of Investigations which have traced the relevant Bitcoins to wallets owned or controlled by both Amber Hill and LGB, and another entity, Future Technology Investment incorporated in the Cayman Islands.

That, My Lord, in a nutshell, is an overview of the evidence if one went into it in more detail as outlined in the criminal complaint in the U.S., the indictment Your Lordship will see detailed there, the horrific nature of the activity, including the establishment by this group of forced labour camps to facilitate scamming which also involve human trafficking, torture, and other mechanisms to facilitate this activity.

It is against this background, My Lord, that the Attorney General brings the applications before Your Lordship for the appointment of receivers,

I'm sorry, liquidators over the entities and for the appointment of joint provisional liquidators pending the hearing of the Originating Application.

If I could just turn briefly, My Lord, to what justifies the Companies being wound up on the just and equitable ground, we deal with that at Paragraph 43 et sequente, My Lord.

THE COURT: I have got those paragraphs, and unless you particularly feel that you wish to record for the purpose of any transcript --

MR. DENNIS: Yes, My Lord.

THE COURT: -- I am entirely content that they show a horrendous situation, if correct.

MR. DENNIS: Very well, My Lord.

THE COURT: And I would consider it appropriate, certainly at this stage, to grant an order for the appointment of provisional liquidators.

I obviously can't comment on the allegations because they haven't been tested as yet, and I don't know whether they are going to be.

MR. DENNIS: Indeed, My Lord.

THE COURT: But on the material that's presented by the Attorney General the case for the appointment of provisional liquidators is overwhelming, subject of course to any disclosure matters that you would like to bring to my attention.

MR. DENNIS: Very well, My Lord.

THE COURT: I've considered the disclosures that you have included in your draft, in the skeleton argument, and so far as I am concerned those do not militate against the Court granting an order for the appointment of provisional liquidators, but if there are other matters that you feel you need to disclose, I'm perfectly content.

I know that in relation to one company there is an application for restoration.

MR. DENNIS: That is so. That is correct, My Lord.

THE COURT: And so far as I am concerned, I am prepared to grant the restoration.

MR. DENNIS: Very well, My Lord. Your Lordship -- yes.

THE COURT: Yes. Go on. Sorry, Mr. --

MR. DENNIS: Your Lordship

having indicated that, My Lord, that would render it unnecessary for me to take Your Lordship further through the various matters set out in our skeleton. Your Lordship is obviously fully seised of those circumstances.

THE COURT: I am.

MR. DENNIS: Just for the sake of completeness, My Lord, since I hadn't earlier adverted to it, there was a more recent affidavit which was filed I believe yesterday --

THE COURT: Yes.

MR. DENNIS: -- which should be before Your Lordship which speaks to news reports from credible sources, particularly Reuters which indicate additional steps which were taken by the Cambodian authorities making an order for the liquidation of the bank of the Prince Group.

THE COURT: Yes.

MR. DENNIS: And in addition to that, My Lord, there are reports also indicating that Chen Zhi has in fact been arrested and extradited from Cambodia to China in respect of criminal activities which are part and parcel of what informs the application before Your Lordship.

I just thought I would mention that as a

matter of completeness.

THE COURT: Thank you very much.

Okay. So far as disclosure, well, that's a part of the full and frank, and I'm perfectly content. Of course that reinforces the need for the appointment of provisional liquidators?

Unless you have any other full and frank disclosures, let me just move on to the law.

I don't need to be addressed on the law. I know the law fairly well, I hope, all the cases that you've cited like Highfield Commodities, et cetera.

MR. DENNIS: Very well, My Lord.

THE COURT: Just I would never be doing my job, Mr. Dennis, if I didn't refer you to a more recent authority.

An undertaking is not required, cross undertaking in damages, from the Attorney General, and the most recent authority on that subject is the Supreme Court authority, Financial Services Authority versus Sinaloa Gold plc, and that's [2013] UKSC 11.

MR. DENNIS: I am most obliged for that, My Lord.

THE COURT: It's a Supreme

Court authority so it's quite important. So I don't require a cross undertaking in damages.

I'm assuming that all the relevant formalities for the appointment, Mr. Drury and Mr. Pretlov's consent in writing --

MR. DENNIS: Yes, My Lord.

THE COURT: -- have been complied with.

MR. DENNIS: Yes, My Lord.

THE COURT: Also, when you've restored the one company I will, I'm content to make orders for the appointment of joint liquidators, provisional liquidators.

Just a couple of other things. The first is, I don't know whether you've got a -- you have got a return date for the hearing of the Liquidation Application.

MR. DENNIS: Well, My Lord, we did leave that blank, My Lord, since of course that would be subject to the convenience of the Court.

THE COURT: Yes. The reason I'm saying it is, can you just make sure that this matter is before me.

MR. DENNIS: Very well, My Lord.

THE COURT: The hearing of the application. The reason is because, although we have a new judge who is inundated with work, as I am, and I'm doing this on my leave, when I'm on leave in Dubai, I'm eight hours ahead of you, and I think because I am fairly familiar with the law, it would be helpful to have this before me.

The second point I wanted to make was that in relation to this matter as well as in relation to the previous matter that you dealt with involving the liquidation of a bank, I request two things.

Please, can there be a press release naming Counsel, the Applicant, the judges, and the judge dealing with it, so that they don't trouble me with requests for transcripts. I always feel very diffident about providing transcripts or instructing my clerk to provide transcripts to third parties.

So far as any application for a transcript is concerned, I would much prefer it to be made to you, Mr. Dennis, or the Attorney General, or the Registrar of Companies, or the Financial Services Commission.

I would, if you have that in your press release and what's happened, it may actually provide a lot more information that I would feel comfortable in

providing to third parties, particularly reporters, because believe it or not, Mr. Dennis, even though you may not think that winding up or liquidating banks is not important to those outside the BVI, I can tell you that it is, and everything is picked up, and I get inundated and my clerk gets inundated with requests as well, so if I can just ask you to do that.

Second, so far as the transcript is concerned, I don't need to see the transcript, but it would be helpful if we had a copy. So I know that Mrs. Stoutt is on the line. Once those transcripts are prepared, I'm sure that she will send me a copy.

Other than that, is there anything else that you would like to say, Mr. Dennis?

MR. DENNIS: Just one thing, My Lord. I just want -- I should just like to correct one matter which Your Lordship raised early in my submissions and to which I responded, and that has to do with the authority to appoint liquidators in the public interest. And, in fact, My Lord, under the Act it would be the Attorney General, the FSC, and the International Tax Authority which have standing to appoint liquidators in the public interest, on the public interest ground.

THE COURT: Okay.

MR. DENNIS: So it's not as open-ended, My Lord.

THE COURT: Where do you get that, Mr. Dennis?

MR. DENNIS: It would be section 162(4), My Lord.

THE COURT: Only by the Commission --

MR. DENNIS: That was just brought to my attention by Ms. Whyte --

THE COURT: Thank you.

MR. DENNIS: -- as a matter that I needed to raise.

THE COURT: So or the Attorney General. I'm sorry. I missed the Attorney General.

Well, that puts paid to the point I made, and it's good that members of the public and creditors are not entitled to make the application because --

MR. DENNIS: Indeed, My Lord.

THE COURT: I'm not sure how they could be pursuing a proper public interest.

MR. DENNIS: That would indeed be very strange, My Lord.

THE COURT: That would be very, very strange, but stranger things are known to have happened, Mr. Dennis.

MR. DENNIS: Yes, My Lord.

THE COURT: Unless there's anything else, unless the Registrar wishes to say anything, she's obviously here or the representative from the Commission or anyone else, I make those orders. And the sooner I have drafts the sooner I can approve them, Mr. Dennis.

MR. DENNIS: My Lord, we will ensure that Your Lordship has the draft orders for approval promptly.

THE COURT: Thank you.

MR. DENNIS: And we're most obliged for Your Lordship to have accommodated us --

THE COURT: Not at all.

MR. DENNIS: -- at what was fairly short notice.

THE COURT: I'm very grateful. It's better that these public interest matters, which are as important as this one is, they're dealt with quickly. So I'm very grateful to you, and thank you very much for your excellent submissions.

And once again, please, don't forget the

press release. The last thing we want is to be inundated with people writing for transcripts. I always feel very uncomfortable. I don't know who has copyright in the transcripts.

MR. DENNIS: I am not sure, myself, My Lord.

THE COURT: I don't know whether it's the Courts or whether it's -- in England it's the shorthand -- sorry. It's the transcribers, because it's privatised. And so supplying copies is always a problem. The judge always feels hesitant because he doesn't know whether he might be breaching the transcriber's copyright. It doesn't apply here unfortunately because the court reporters do this. But I just thought I'd mention that.

MR. DENNIS: Very well, My Lord.

THE COURT: So thank you all very much.

Happy new year to all of you.

So far as --

MS. FAHIE: Sorry, My Lord.

Just for the record, and I know that Nadine hasn't made her application. Just so it's on record, we have absolutely no objections to the

restoration of Amber Hill, and in fact we fully support the entire application, only to say that of course the order will show that the restoration preceded the appointment of the provisional liquidators.

THE COURT: Absolutely. That goes without saying. That's normally referred to as a double-barreled order, so you restore the Company first, and then you put it into liquidation. But the liquidation order has not been made yet, so in fact the restoration has to come before, and then the order appointing liquidators.

I hope I've got that right.

MS. FAHIE: Yes.

Grateful, My Lord.

THE COURT: Thank you very much. All the best to all of you. Have a good day. Good night to all of you from Dubai.

MR. DENNIS: We're most obliged, My Lord, for your indulgence.

(Matter adjourns at 10:51 a.m.)

* * *

REPORTER'S CERTIFICATE

I, PETULA V. STOUTT, a Certified Court Reporter, do hereby certify:

That on the 9th day of January, 2026 the foregoing proceedings were taken down by me in machine shorthand, consisting of 36 pages herein; that the foregoing is a true and correct transcript of the proceedings had.

That I am not an attorney, relative, or employee of any party hereto, or otherwise interested in the events of this cause;

IN WITNESS WHEREOF, I have hereunto affixed my signature at Road Town, Tortola, British Virgin Islands, this 19th day of January, 2026.

PETULA V. STOUTT
Certified Court Reporter