# EXHIBIT 17

## Transcript of May 13, 2026 Deposition of Paul Pretlove

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - x

In Re:

PRINCE GLOBAL HOLDING LIMITED, et al.,

         Debtors in Foreign Proceedings.

--------------------------------------------x


        Videotaped Deposition of PAUL
PRETLOVE, taken pursuant to notice, was
held at the law offices of Boies
Schiller Flexner LLP, 55 Hudson Yards,
New York, New York, commencing May 13,
2026 at 10:05 a.m., on the above date,
before Leslie Fagin, a Court Reporter
and Notary Public in the State of New
York.


               - - -


MAGNA LEGAL SERVICES - (866) 624-6221
        www.MagnaLS.com



APPEARANCES:


BOIES SCHILLER FLEXNER, LLP
Attorneys for Alleged Objecting Debtors
   55 Hudson Yards
   New York, New York
BY:  PETER M. SKINNER, ESQUIRE
   SOPHIE ROYTBLAT, ESQUIRE
   LAURA FEMINO, ESQUIRE
   MATTHEW SCHWARTZ, ESQUIRE(VIA ZOOM)

KOBRE & KIM LLP
Attorneys for Amber Hill Ventures Limited and
Lateral Bridge Global Limited
   800 Third Avenue
   New York, New York 10022
BY:  JEREMY BRESSMAN, ESQUIRE
   MARTINE B. FORNERET, ESQUIRE
   JOHANNA MINTZ, ANALYST
   JOSH BARRY, ESQUIRE(VIA ZOOM)

SULLIVAN & CROMWELL LLP
Attorneys for the Proposed Foreign
Representatives
   125 Broad Street
   New York, New York 10004
BY:  CHRISTOPHER DUNNE, ESQUIRE
   SAMANTHA ROSENTHAL, ESQUIRE

ALSO PRESENT:

   Daniel Irvine, Videographer
   Dan Griffin, Campbells
   Riz Mokal (Via Zoom)



MAGNA
LEGAL SERVICES

Page 3

(Pretlove Exhibit 1, List of Objecting Debtors, marked for identification.)

(Pretlove Exhibit 2, Petition, marked for identification.)

(Pretlove Exhibit 3, Declaration, marked for identification.)

THE VIDEOGRAPHER:  Good afternoon. We are now on the record.

This begins videotape No. 1 in the deposition of Paul Pretlove in the matter of Prince Global Holdings Limited, et al.

Today is May 13, 2026 and the time is 10:05.

This deposition is being take at 55 Hudson Yards, New York, New York at the request of Boies Schiller Flexner LLP.

The videographer is Daniel Irvine of Magna Legal Services, and the court reporter is Leslie Fagin of Magna Legal Services.

Will counsel and all parties



Page 4

present state their appearance and who they represent.

MR. SKINNER:  Peter Skinner from Boies Schiller Flexner on behalf of 25 of the objecting debtors.

And I am joined by Sophie Roytblat and Laura Femino my firm.  And Dan, I'll let you introduce yourself.

MR. GRIFFIN:  My name is Dan Griffin, I'm here from Campbells, British Virgin Islands, for the Boies parties.

MR. DUNNE:  Christopher Dunn and Samantha Rosenthal for the JPLs, from Sullivan Cromwell.

MR. BRESSMAN:  Jeremy Bressman, Martine Foreneret and our analyst Johanna Mintz, on behalf of objecting debtors Amber Hill Ventures Limited and Lateral Bridge Global, from Kobre & Kim.

MR. DUNNE:  And Peter, why I don't just note on the record -- and Jeremy --


MAGNA
LEGAL SERVICES

Page 5

that we obviously -- the parties have a dispute as to who is authorized to represent the -- what you are calling the objecting debtors here.  We are not going to take that up at this deposition, of course.  So just thought I would note that.

MR. SKINNER:  Fine.  All objections are preserved.

P A U L   P R E T L O V E, called as a witness, having been duly sworn by a Notary Public, was examined and testified as follows:

EXAMINATION BY

MR. SKINNER:

Q.   So good morning, Mr. Pretlove.

A.   Good morning.

Q.   One or two things, just kind of housekeeping to get us going.  We have marked a document in front of you as Exhibit 1.

Do you see that?

A.   Yes.

Q.   And that lists 25 different entities that we have filed objections to the



Page 6

Chapter 15 recognition proceeding -- by "we" I mean Boies Schiller Flexner.

As your counsel noted, there is some dispute as to who has the authority to speak on behalf of those and nobody is waiving any rights on those. But that's who we are appearing on behalf of.

I guess for purposes of this deposition, as we talked about before we got started, we are going to refer to these as the Boies objecting debtors for our firm, and there are two other objecting debtors that are represented by a firm called Kobre & Kim. Their counsel are also in the room. We will call them the Kobre objecting debtors.

Does that make sense?

A.   Yes.

Q.   And just so you know -- have you been deposed before?

A.   Yes.

Q.   Okay. So you have gone through this, but just as a reminder. You got to give us audible responses or else the court reporter can't get those down.


MAGNA
LEGAL SERVICES

          Do you understand?

     A.   Yes.

     Q.   And if you can't hear anything or anything doesn't make sense, just ask me to rephrase.  I'm happy to repeat a question, okay?

     A.   Okay.

     Q.   So we've got the Boies objecting debtors and the Kobre objecting debtors.

          And then am I right that you, as a joint provisional liquidator, basically oversee 30 companies; is that right?

     A.   Yes.  Correct.

     Q.   And can we call those companies then just "the debtors"?

     A.   Yes.

     Q.   Okay.  So we will try to keep this straight.  But when we are talking about the debtors, that will be all 30.  And if we are talking about a subset, I will try to make that clear.

          But if I forget or if you are unclear exactly who we are talking about, just let me know and we will try to clean



Page 8

that up.

        A.    Will do.

        Q.    So maybe let's start out and see if we can address some what I think will be noncontroversial points, but you let me know.

              Now, you were appointed professionally as a provisional liquidator by a court in the British Virgin Islands in early January, correct?

        A.    That's correct.

        Q.    And at some future date -- and we will talk about this some more later, but at some future date, the companies may be placed into full liquidation and your status may change from being a provisional liquidator to being a liquidator; is that right?

        A.    Correct.

        Q.    And since you were appointed as the joint provisional liquidator, have you done some work to try to identify assets that are owned by all of the debtors, all 30 of them?

        A.    Yes.  Since my appointment on the 9th of January, I've been trying to identify and investigate the existence of assets for


MAGNA
LEGAL SERVICES

Page 9

the entire 30 companies I'm appointed as joint provisional liquidator in respect of.

Q.   And in the course of that investigation, I'm right that you have not identified any assets that are located in the United States?

A.   In terms of assets in the United States, there is obviously the Sullivan & Cromwell retainer.  There are potential claims that I'm still, at this early stage in the liquidation, investigating and may well be in a position to bring at some stage in the future.

And the only other connection that I'm currently aware of, other than U.S. dollar denominated bank accounts and other investments, is an investment in the name of Oriental Charm Holdings Investment Limited, and an entity called ClinChoice.

And my understanding is that ClinChoice has a U.S. based headquarters. And it's not clear to me from the information that I've recovered so far precisely which entity is -- the Oriental Charm is invested



MAGNA
LEGAL SERVICES

directly into, whether it's invested into the U.S. entity or not.  I have sought to make inquiries about that U.S. connection, but they're still at the preliminary stage.

Q.    Just to make sure I understand all of that.  The S&C retainer, that's a $25,000 -- S&C is short for Sullivan & Cromwell; is that right?

A.    Yes.

Q.    That's your law firm representing you here today, correct?

A.    Yes.

Q.    That's the firm that's representing you in the Chapter 15 petition, right?

A.    Yes.

Q.    But they are not representing you in the proceedings that are going on in the BVI?

A.    No.  In the BVI, I have BVI regulated lawyers that are representing me and the Walkers law firm.

Q.    So going back to the U.S. assets.

We have the $25,000 retainer that's being held in an account that Sullivan &



Page 11

Cromwell owns, correct?

A.   Correct.

Q.   Then you said there is some potential claims, but those aren't actually existing claims right now, right?

MR. DUNNE:  Objection to form.

MR. SKINNER:  I will withdraw that. Fair objection.

Q.   You haven't filed any claims on behalf of any of the debtors in the United States, have you?

A.   That's correct.

Q.   So you're investigating what claims they might have, but none have actually been initiated yet?

A.   That's correct.

Q.   Tell me -- so you say there might be some holdings by Oriental Charm in the United States, but you are not sure; is that right?

A.   Yes.  So from information I've collected so far within the liquidation, it indicates that Oriental Charm holds an investment in ClinChoice, and I've been



MAGNA
LEGAL SERVICES

Page 12

trying to learn more about that investment

and more about ClinChoice as an entity, and

that's how I established that there is this

U.S. headquarters, I understand, for

ClinChoice.

But at this point in time, I don't

know precisely what that investment is, the

value of that investment, the extent of it,

precisely which entity Oriental Charm

invested in.  That's part of my ongoing

investigation.

Q.   Can you spell ClinChoice for us?

A.   Yes.   C-L-I-N-C-H-O-I-C-E.

Q.   When did you first learn about

ClinChoice?

A.   I can't recall the precise date.

Q.   What is ClinChoice?

A.   It's some kind of investment

vehicle, but I don't have very many details

or a very clear understanding about what this

investment is, other than that the value of

it -- you know, the original investment was

tens of millions of dollars.

Q.   Is this a legal entity?



Page 13

A.    There are a number of legal entities that are ClinChoice.  But I believe there is a U.S. based entity, I couldn't recall precisely the name of that entity.

Q.    So ClinChoice may have an interest in some U.S. based entity; is that right?

MR. DUNNE:  Objection to form.

THE WITNESS:  Should I --

MR. DUNNE:  Yes.  Go ahead and answer.  Unless I instruct you, go ahead and answer.

A.    So I don't think that ClinChoice holds an investment.  I think that ClinChoice is an entity that is operational, there is an investment vehicle through which Oriental Charm invested, along with a number of other investors, whoever they are.

And my understanding is that that investment by Oriental Charm was for tens of millions of dollars.

Q.    I think I'm now understanding, but just to make sure.

You believe Oriental Charm may have given some money to ClinChoice for ClinChoice



Page 14

to invest; is that right?

A.   I think that Oriental Charm is likely to have bought either a participation or share holding in ClinChoice.

Q.   By giving them some money?

A.   Yes.

Q.   And then you think what ClinChoice does for a business is it invests in investments?

A.   That's broadly my understanding.  I don't have a detailed understanding of what ClinChoice does.

Q.   Do you know what kind of investments it holds?

A.   No, not at this stage.

Q.   Where is it located in the United States?

A.   I can't recall off the top of my head precisely which state it's in, but I remember when looking at it and investigating, there was a U.S. presence, U.S. office.

Q.   But you don't remember where that office is?



MAGNA
LEGAL SERVICES

Page 15

A.    Not off the top of my head.

Q.    You don't know if it's actually incorporated in the U.S. or just has a U.S. office someplace?

A.    Not at this stage.  I think it's still preliminary investigative stage and I'm still trying to learn more about that investment and through which vehicles and whether.

Q.    Do you know when the investment was made?

A.    I can't recall which year that investment was made.

Q.    And how did you learn about it?

A.    Each of the BVI entities has or had formal registered agents in BVI.  The majority of the 30 companies I've been appointed over, those registered agent services, registered office services, were provided by a company called Vistra, which is a global company formation business and they operate in BVI.

So following my appointment, I wrote to Vistra and asked them for all of the



26-10769-mg   Doc 49-17   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 17 -
Transcript of May 13   2026 Deposition of P. Pretlove   Pg 17 of 300

Page 16

records that they hold in respect of all of
the 30 companies, and they produced to me,
from memory, approximately 8,000 documents.

We -- meaning the joint provisional
liquidators and our team, have spent some
time sifting through those documents and
looking at the contents.  And within that, my
recollection is there is an email that refers
to an investment that had been made or a
series of emails, that reflect an investment
that had been made by Oriental Charm into
ClinChoice.

Q.   So it sounds like this is still in
the investigatory stages, if you will.  You
don't really have any specific details about
this particular U.S. interest, I guess --
withdrawn.

Is it fair to call this, I guess, a
potential U.S. asset as opposed to an actual
U.S. asset since it's still under
investigation?

MR. DUNNE:  Objection to form.

You can answer, Paul.

A.   I don't have the email in front of



me.  I can't recall precisely which entities are referred to in that email.  I'm not sure whether I could say whether it is actual or potential.

We have tried to seek more information from ClinChoice, but I don't have that.  I don't believe they've replied to our inquiries.  I would like to make more inquiries, particularly via this Chapter 15 recognition, to see if I can establish whether that is an asset or not.

Q.    Let me ask you this:  We have sent some requests to you via your attorneys for documents and one of the requests we made was for documents sufficient to identify the debtors' U.S. assets.

Are you familiar with that document request?

A.    Yes.

Q.    And we got a response to those requests on Monday from your lawyers.  And in response to that, your lawyers said, Subject to and without waiving any objections, the authorized foreign representative state that



the debtors' U.S. assets of which they are currently aware, consists of the retainer held by Sullivan & Cromwell LLP, as set forth in paragraphs 16 and 17 of the verified petition.  The authorized foreign representatives state that they may have an interest in other property located in the United States, including in Bitcoin that is the subject of the civil forfeiture action, captioned -- and then it lists out the whole caption for the Eastern District of New York case -- in claims against the participants in the fraudulent scheme alleged in the forfeiture action in the indictment.

          Do you agree with that statement?

     A.   Yes.

     Q.   Then it also says, The authorized foreign representatives are not currently aware of and at this time are not relying on any other assets located in the United States.

          Do you agree with that?

     A.   Yes.

     Q.   What do you mean that they may have



Page 19

an interest in the Bitcoin?

A.   At this early stage of the liquidations, I'm still investigating whether a claim could be asserted by any of the 30 companies to the Bitcoin that's been seized in the forfeiture proceedings in the U.S.

Q.   Has your investigation thus far revealed any evidence that they do have a coin -- the Bitcoin that are subject to the forfeiture proceedings?

MR. DUNNE:   Objection to form.

A.   Those investigations are still ongoing and haven't concluded.  So I can't say they're categorically -- that there is or isn't a claim to them.  It's still an ongoing matter under investigation.

Q.   In the course of your investigation, have you identified any U.S. bank accounts holding funds owned by the debtors, other than the retainer account at Sullivan & Cromwell?

A.   No.  Actually, I haven't identified any U.S. based bank accounts for any of the 30.



MAGNA
LEGAL SERVICES

Page 20

Q.    Have you identified any other financial institution holding funds or investments owned by the debtors?

A.    None, other than the connection of already mentioned regarding ClinChoice.

Q.    Have you identified any real estate in the U.S., real property in the U.S. owned by the debtors?

A.    No, not so far.

Q.    At the hearing that we had in April with respect to the provisional relief -- well, first let me ask you.

You were at that hearing, right?

A.    Yes.

Q.    And you heard your lawyers talk to the judge; is that right?

A.    Yes.

Q.    And in connection with that proceeding, there are a couple of statements that were made by your lawyers and I just want to see if you agree with them or not, and if you don't remember them, we can give you a transcript.

A.    Okay.



Page 21

Q.    With respect to a question by the judge as to assets that have been identified to date, there was a list that was given.

The first item was a controlling interest in Allied Cigar, which is one of the largest cigar companies in the world with over 300 million in EBITA in 2024.

Do you recall that?

A.    Yes.

Q.    And do you agree that that is an asset owned by one of the debtors?

A.    Yes.  It's owned by number 19 on this list in Exhibit 1, which is Simply Advanced Limited.

Q.    That is not a U.S. asset, correct?

A.    I wouldn't categorize that as a U.S. asset.  That's a predominantly a Spanish-operated business.  It's owned by Simply Advanced.

Q.    And there are minority owners too, correct?

A.    Yes, correct.

Q.    Your lawyers also said you've identified significant commercial real estate


MAGNA
LEGAL SERVICES

Page 22

holdings in the U.K., Hong Kong, and maybe other countries, correct?

A.    Yes, that's correct.

Q.    But the other countries does not include the United States, correct?

A.    That's correct.

Q.    So the JPL located over 300 million in cash in banks, but the largest accounts in Hong Kong.

But again, none of that cash held in banks in the United States, correct?

A.    That's right.  So far, the bank accounts that have been identified are based in Hong Kong and predominantly held in U.S. dollar denominated accounts, with the exception of a bank account held by a subsidiary of Simply Advanced, which is called Asia Uni, which holds euros.

Q.    And that euro account is where in Hong Kong?

A.    Yes.

Q.    Are you aware of any loans made by the debtors to any U.S. entities?

A.    No, as yet, I haven't identified


MAGNA
LEGAL SERVICES

Page 23

any loans to U.S. entities.

Q.   Any accounts receivable owed to the debtors from U.S. entities?

A.   Not directly to the debtors themselves, but there is an amount to -- from a U.S. entity to a subsidiary of Simply Advanced.

Q.   What is that?

A.   That's to do with the Tabacalera U.S.A. entity, owes approximately 500,000 euros for administrative or management services that were provided prior to October 2025.

Q.   Sorry.  What is the -- it got transcribed as "tab clara," I'm not sure if that's right or not.

A.   Tabacalera, T-A-B-A-C-A-L-E-R-A. Tabacalera U.S. is how I would refer to it.

There is a whole group of entities connected with the U.S. operations of Tabacalera.  Tabacalera in Spain is the subsidiary, ultimately, of Simply Advanced Limited.  But there are no U.S. operating entities or businesses within that part of



Page 24

the structure.

The Tabacalera U.S. is separate, but there is some interrelation between the two companies where Tabacalera in Spain was providing administrative and similar services to Tabacalera in the U.S.

And as I said, approximately 500,000 euros is owed by Tabacalera U.S. to the Spanish operating subsidiary.

Q.    Who owns Tabacalera U.S.?

A.    I cannot recall the precise entity or ownership structure, but I think there is limited partnership called Gemstone that owns the U.S. operations.

Q.    The debtors don't own the U.S. operations, though, right?

A.    That's right.  Well, to the best of my knowledge.  I haven't yet established a link.

Q.    So if I'm understanding correctly, a subsidiary of Simply Advanced that is located abroad is owed 500,000 euros by a U.S. entity?

A.    Yes.



Page 25

Q.    Other than what we've talked about -- I'm trying to wrap this up -- are you aware of any other assets that are actually located in the United States?

A.    At this stage of the liquidations and my investigations which are continuing, I'm not aware of any other U.S. assets or connections at this stage.

Q.    Are any of the debtors' subsidiaries organized in the United States?

A.    I haven't yet discovered any subsidiaries in the U.S. -- other than -- sorry, there is one addition I wanted to add, which is my recollection from the forfeiture complaint and the confiscation proceedings in the U.S. made reference to a banking relationship that Amber Hill and/or Lateral Bridge held with a U.S. banking authority -- sorry, U.S. banking institution, that was closed in 2023, is my recollection.

I haven't as yet identified precisely which bank that is.  I have a suspicion as to which bank that is.  But as part of the Chapter 15 proceedings, I would



MAGNA
LEGAL SERVICES

like to obtain discovery of those various banking relationships and banking transactions.

Q.    Those two entities that you just mentioned, those are the ones that we are calling the Kobre objecting debtors today, correct?

A.    Yes, correct.

Q.    So with respect to the Boies objecting debtors, other than what we've spoken of thus far, have you identified any other U.S. located assets?

A.    No, not in relation to the 25.

Q.    Just to make sure we are speaking the same language.

When I say "a company's insolvent," would you agree that that means they are unable to pay their debts?

MR. DUNNE:  Objection to form to the extent it calls for a legal conclusion.

A.    It depends.  I think that the -- if we constrain the -- my response to my understanding which is the BVI Insolvency



Act, it's -- one of the tests for insolvency is whether its liabilities exceed its assets. But it's not the only basis on which a company can be placed into a liquidation process.

A company doesn't have to be insolvent to be placed into a liquidation process under the BVI Insolvency Act.  It can be placed into insolvency on, for example, just on equitable grounds and in this case, in the public interest.

Q.    Just focusing on insolvency, meaning putting aside the fact there might be other grounds to put someone into an insolvency proceeding in the British Virgin Islands -- just focusing on the definition, insolvency means liabilities exceed assets.

Do any of the debtors' liabilities exceed their assets?

MR. DUNNE:  Objection to form.

A.    My investigations are still ongoing in relation to the asset and liability position.  One standard thing that I'm required to do as a liquidator is request


MAGNA
LEGAL SERVICES

that directors or people connected to a liquidated company produce a statement of affairs.  So an official signed statement that listed out all of the assets and all of the liabilities of the companies.

And as it stands at this point in time, I haven't received those signed statements for any of the companies.

Q.  So as we sit here today, you are not aware of any of the debtors having -- being in a position where their liabilities exceed their assets?

A.  I would say that I'm not in a position to confirm the insolvency because I don't have complete information.  I don't even have the most basic listings of what the assets and liabilities are.

My investigations are continuing to try to establish what that position is, but I'm unable to confirm.

Q.  So you may have additional information in the future, but as we sit here today, you don't have any information sufficient to establish that any of the


MAGNA
LEGAL SERVICES

Page 29

debtors have liabilities exceeding their
assets, right?

A.   Yeah, I think that's fair.

Q.   And when the BVI proceedings were
initiated, there weren't any allegations that
any of the debtors were in a position of
having their liabilities exceed their assets,
correct?

MR. DUNNE:  Objection.

A.   I think that's correct.  Because
the application was made on two grounds,
which, one, to do with pure insolvency.  They
were on a just and equitable basis and/or
winding up in the public interest.

So the question of insolvency
didn't arise.

Q.   And since the proceedings were
initiated in the beginning of January, there
haven't been any allegations of insolvency,
meaning liabilities exceeding assets, raised
in that proceeding, correct?

A.   I'm struggling with the question.
I think what's happened so far is, as I said,
the application was made on just an equitable



and/or public interest ground to wind up the companies, and that application is being opposed. But there is no question of solvency or insolvency that's arisen.

So when you say is there an allegation, I'm not aware of any allegations. But none of that is before the court to my knowledge anyway.

Q. But as you say, there is no question, solvency or insolvency, that has arisen in the BVI since the proceedings were begun in January?

MR. DUNNE: Objection to form.

A. Yeah, I think that's right.

Q. Now, with respect to creditors, were there any creditors of the -- we will take this in two pieces. Let me withdraw that question.

Let me say, with respect to all 30 debtors, when the proceedings were initiated in the beginning of January 2026 in the BVI, were there any creditors that you are aware of any of these entities at that time?

A. Yes, there are a number of


**MAGNA**
LEGAL SERVICES

creditors that have come forward expressing claims against some of the entities, depending on their asset position and depending on their -- which company we are referring to.

So for example, Noble Title, which is number 11 on the list on Exhibit 1, directly owns a property in Fenchurch Street in London, and there are several utilities providers and similar people that have expressed claims against that entity directly.

Q.    Well, is there a process in the BVI to determine who the creditors are?

A.    Typically a liquidator will call for claims from creditors as part of a declaration of distribution.  So when a liquidator is sitting on sufficient funds to make a dividend distribution, they will make a declaration and call for people to formally submit their claims before a claims deadline.

Q.    But in this case, that hasn't happened yet, correct?

A.    That's correct.  Because at this



Page 32

stage, we are in provisional liquidation, where the real focus of my efforts at this point are to identify, maintain, and realize assets, as far as possible, to maximize the value of the estates with a view to ultimately distributing to creditors in the future, should we get to that stage.

Q.   And at this stage, there is no creditor distribution process underway, correct?

A.   That's correct.  There is no asset realizations that have been made within any of the 30.  So there are no funds held with which to make or declare a distribution.

Q.   There is no proposed liquidation or restructuring plan in the BVI; is that right?

A.   That's not typically how BVI liquidation works.  There isn't a restructuring plan or similar.  It is possible to propose schemes or plans as a part of a distribution mechanism.

Q.   But that hasn't happened yet, right?

A.   No.  Given that we are still in



Page 33

this provisional liquidation stage, we've not moved to anything like the distribution stage yet, purely because we are just not in a -- we haven't made any asset realizations and we are not in a position to declare a distribution.

Q. So am I correct, then, that any potential benefit to creditors wouldn't occur until after your investigation is completed?

MR. DUNNE: Objection to form.

A. I would say that the potential or actual benefit to creditors of each of these companies has been fulfilled from the point -- I was appointed on the 9th of January, right the way through to them actually financially realizing on that, whenever that may be in the future.

Q. And we just don't know because that hasn't happened yet?

A. Yeah.

Q. Am I right that in your view, potential creditors of the Boies objecting debtors in the future might include victims of the fraud schemes that are alleged in the


MAGNA
LEGAL SERVICES

Page 34

indictments that were filed against Mr. Chen
Zhi?

A.   Quite possibly.  I haven't made a
determination on that.  That will be done as
part of a claims adjudication process, when I
declare a distribution, call for claims,
receive claims, investigate those claims, and
then make an adjudication and determination
as to what each are owed.

But at this stage I am aware of a
number of creditors, like the example that I
gave for Noble Title Limited, which are
direct utilities providers and other
creditors related to the property that Noble
Title owns.

I've also had two claimants who say
that they are victims of frauds as a result
of the -- what's been referred to as the
Prince Group transnational criminal
organization, asserting claims against the 30
entities that I've been appointed over.

I have received those claims, I
have recorded them.  I haven't done any more
in terms of adjudicating them because I am


MAGNA
LEGAL SERVICES

Page 35

not in a position to do that.

And based on my experiences as an insolvency practitioner across 26 years and 13 years spent in the BVI, the expectation from the BVI court is that you will not enter into that kind of claim adjudication process until you are in position to make a distribution, which, as I have already explained, I am not in a position to make a distribution because I have not made any asset recoveries.

Q.   You say you received two claims from people who say they were victimized by the Prince Group criminal scheme, as you call it.

A.   Yes.

Q.   And when did you receive those claims?

A.   Within the past few weeks via email.

Q.   I was going to say, how did you get them.

A.   So two individuals sent two separate emails asserting that they are



Page 36

claimants.

Q.    Do you remember who they were from?

A.    No, not off the top of my head.

Q.    But at this point, you are not in a position to -- I believe you said you are not in a position to adjudicate them; is that right?

A.    That's right.

Q.    You would agree with me that at this point, there is no criminal judgment against Mr. Chen Zhi?

A.    I'm not sufficiently aware of all of the actions that have been taken by various prosecuting authorities all over the world.

And my understanding in the U.S., for example, is that Chen Zhi has been indicted and there has been a response to that indictment, but the criminal proceedings are ongoing.

I understand that in Cambodia, steps were taken to arrest and detain Chen Zhi, and that he was extradited on some procedure from China to be held, and they



continue to be held in China.

I believe there is other criminal forfeiture steps, restraint and similar confiscation proceedings in various other jurisdictions globally, but I couldn't say at what stage each of those are and whether they have been concluded or not.

I am aware, for example, that jewelry, cars, et cetera, has been seized. I'm not sure, for example, whether those proceedings have come to an end or what's happened to those funds.

So there are a lot of different actions going on globally and I'm not sure precisely where each are at.

Q.   Let's just focus on the United States.

A.   Okay.

Q.   There is a criminal indictment that you referenced against Mr. Chen Zhi, that was brought in the United States District Court for the Eastern District of New York, correct?

A.   That's my understanding.



Page 38

Q.   Are you aware of any other criminal proceedings against Mr. Chen Zhi in the United States, other than the Eastern District of New York case?

A.   I am not aware.

Q.   You said it's your understanding that there was a response to the indictment; is that right?

A.   Yes.  I believe that Boies Schiller, yourselves, representing Chen Zhi, have filed a response or a position to that.

Q.   Okay.  Are you aware of any victims that have been identified as a result of the criminal case against Chen Zhi in the United States?

MR. DUNNE:  Objection to form.

A.   Other than the two claimants that have come to me directly, I haven't had any contact with any other victims directly.

But there are -- for want of a better phrase, charitable organizations that represent the interests of victims.  And from discussions that have been held with them and from information available on the websites,



Page 39

et cetera, there are many, many victims and
tens and thousands of claimants and victims
of what's been described as this
transnational criminal organization, and the
amounts that people claim to be owed either
as victims of fraud or scams, and then as a
result of human rights abuses and tort
claims, run into large numbers, tens of
billions of dollars.

MR. SKINNER:  Let's mark this as 4,
and then we will have another that is
marked as 5.

(Pretlove Exhibit 4, Verified
Petitioner, marked for identification.)

MR. SKINNER:  This is the verified
petition, we're marking this as 4.

(Pretlove Exhibit 5, Responses and
Objections to Request for Production,
marked for identification.)

MR. SKINNER:  This is 5.  These are
the document responses.

Q.   So we are piling documents up in
front of you and the stack will get higher,
but we will try to keep them straight.



Can I ask you to turn to what we marked as Exhibit 5.

A.    Yes.

Q.    These are the responses and objections to our request for the production of documents that I referenced earlier that we received from your lawyers on Monday.

Let me just ask you to turn to page 17.  And you see the request, it says, documents sufficient to identify the debtors creditors?

A.    Yes.

Q.    In response to that, there is some objections raised.  And then you is see where it says, Subject to?

A.    Yes.

Q.    It says, Subject to and without waiving the objections, the joint provisional liquidators have not yesterday identified their creditors.

Do you agree with that statement?

MR. DUNNE:  Objection to form.

A.    I do, on the basis that, as I've explained, having not recovered sufficient



Page 41

assets to make a distribution, I haven't

declared a distribution, and as part of that,

invited creditors to submit their claims.

And I, therefore, haven't adjudicated on

them.

So there can be any number of

claimants in these liquidations, but until I

deem them to be a creditor as a result of

that process, I wouldn't consider them to

officially be an adjudicated creditor.

Q.   Then do you see -- just continue

on, I don't want to read it all out loud

because it will take too much time.  But it

then continues on.

It says, that the JPLs expect that

such creditors will fall into the following

categories and are located in the United

States, is broad, and then it lists out three

different bullets with categories.

Can you just review that quickly

and let me know if you agree with that

statement.

A.   Yes.  Yes, I agree.

Q.   So perhaps just maybe to put it



26-10769-mg   Doc 49-17   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 17 -
Transcript of May 13    2026 Deposition of P. Pretlove    Pg 43 of 300

Page 42

into lay terms.  There may be creditors in the future, but as of yet, you have not identified actual creditors because you haven't gone through that process.  Is that fair to say?

        MR. DUNNE:  Objection to form.

        A.  I haven't called for claims and I haven't adjudicated on them.  But there are a number of entities and individuals that have asserted claims against some of the 30 companies.

        So what I do is record them as claimants and will treat them as potential creditors, until their claims are adjudicated.

        Q.  Then after their claims are adjudicated, if you determine they -- that's when they could potentially be a creditor; is that right?

        MR. DUNNE:  Objection.

        A.  That's when they would be entitled to -- that's when they would be a confirmed creditor and would be entitled to a distribution.



MAGNA
LEGAL SERVICES

Page 43

Q.   So with that understanding what creditor means, you haven't identified any creditors yet?

A.   Most haven't been through the adjudication process.  There are creditors that have asserted claims, and based on the information that they've given to me, I can see that they are -- they have given good proof of their claims and I would consider them to be creditors.

For example, the utilities providers for the Noble Title example that I gave.  I have no reason to believe that that debt isn't due, and it matches with the records that I've seen for Noble Title that were held with the property management agent for its property on Fenchurch Street.

Q.   Are you charged in the BVI yet with actually adjudicating creditor claims?

A.   Adjudicating on claims will be done as part of the full liquidation process, unless there is a need for that to be done sooner for some reason.  And that's something I would likely, at this point in time, seek



Page 44

instructions from the BVI court in relation to.

Q. But at this point, as we sit here today, you don't actually have that authority to adjudicate claims, correct?

A. It's not something that is particularly typical of a provisional liquidation. But it's something that is possible, if I go and seek direction from the BVI court.

Q. Sure. But that hasn't happened yet, right?

A. Right. I haven't been to the BVI court and sought permission to adjudicate on claims. And that's predominantly because I haven't made any asset realizations yet, and there is nothing to consider in terms of what creditors would be entitled to.

Q. And you are not currently -- you are currently right now not charged with realizing assets in the BVI, correct?

A. Right now, I need to identify, maintain, preserve assets. But I do have an ability to realize assets, if there is an



Page 45

urgent need to -- say, for example, it's a perishing asset for some reason and there is a need to preserve value by converting that into cash.  Or, say, for example, cash a bank held of other accounts, I would be permitted to realize that cash and deposit it into an account that's under my control or change the mandate or whatever that would be.

So it really depends on the asset. But if there is a significant investment or shares held in an entity that needed to be realized for some reason, I would expect to go to the BVI court and seek directions from the BVI court to do that.

Q.   So you could do it if you got approval from the BVI court to do it.  But you otherwise don't have the authority right now to do it on your own?

A.    The distinction I was trying to make is that if there is a perishing asset or funds in a bank account or something like that, I do have the authority and am entitled to realize that and bring that under my control and deposit that into a bank account



Page 46

that I have been -- that would being denominated in name of the company in liquidation, for example.

The distinction, then, would be if there was a significant investment or shareholding or similar in relation to a live trading business, I would expect that I would need to go to the BVI court to get permission to realize that during this provisional liquidation status that we have at the moment. Because that would be -- I would need to demonstrate to the court that there was an urgent need to do that, to preserve value within the liquidation status.

Q. It's your understanding that you do have some authority to realize assets without approval from the BVI court right now?

A. That's - yeah, I think that's a fair statement.

Q. And that is, if it's a perishable asset and you would be able to then bring that under your control and deposit it into a bank account, but you might then have to go to the BVI to get approval to distribute


MAGNA
LEGAL SERVICES

Page 47

funds out of that account; is that right?

A.   Yes, that's correct.

Q.   Has that happened yet?

A.   No.   There has been no asset realizations yet within the estates.

MR. DUNNE:   We've been going about an hour, whenever you have a convenient moment.

MR. SKINNER:   Yeah, I think we -- let me make sure I don't have anymore questions on this particular topic and then we can take a quick break.

MR. DUNNE:   Great.

MR. SKINNER:   This is probably a good time to take a break.   Why don't we go off the record.   Try to make it a quick one.

MR. DUNNE:   Try to make it a quick one, yeah.

MR. SKINNER:   Ten minutes.

THE VIDEOGRAPHER:   The time is 11:01 a.m.   Going off the record.

(Recess.)

THE VIDEOGRAPHER:   The time is


MAGNA
LEGAL SERVICES

Page 48

11:15 a.m. and we are back on the record.

BY MR. SKINNER:

Q.  Mr. Pretlove, let me ask you, are you familiar with Section 8 of the BVI Insolvency Act?

A.  I am familiar with the BVI Insolvency Act.  I don't know it by heart, but if you can show me a copy, I can take it a look at it.

Q.  Maybe we will do that in a bit, because I don't have a copy right in front of me.  But if you are not familiar with it off the top of your head, that's fine.

The documents that we've marked as -- let me make sure I have the right ones -- 2, 3 and 4.  2 is the petition for recognition that was filed in the U.S. Bankruptcy Court; 3 is your declaration; and then 4 is the verified petition under Chapter 15.

You are familiar with all these documents, correct?

A.  Yes, correct.



Page 49

Q.   Did you review these documents in preparation for your deposition testimony today?

MR. DUNNE:  Objection to form.

I will instruct him not to answer that.

MR. SKINNER:  On what grounds?

MR. DUNNE:  On the grounds that our selection of documents to go through with the witness is privileged.

MR. SKINNER:  Okay.  That's all you had to say is privileged.

Q.   When is the last time you read the petition for recognition in a foreign proceeding, Mr. Pretlove?

MR. DUNNE:  Just exclude from your answer, Paul, anything -- any reading you may have done in connection with preparation.

Q.   I'm just asking for a date.

When is the last date you read this.  I'm not asking why.  I'm just asking the date.

A.   The Exhibit 2, I would say the date



Page 50

that I signed it.

Q.   So if you turn to page 3 of this,
that's your signature on it, correct?

A.   Yes.

Q.   And it's dated April 8 of 2026?

A.   Yes.

Q.   And you haven't read it since then?

A.   No.

Q.   Was it true and accurate at the
time you signed it?

A.   Yes, it was.

Q.   So let's look at what we marked as
No. 3, which is your declaration.

When is the last time you reviewed
this?

A.   I would say around the time of the
hearing for the provisional relief.

Q.   And that was on April 22, if I'm
not mistaken?

A.   Sounds about right, yeah.

Q.   So you signed this -- if we turn to
the last page, you signed it on April 8; is
that right?

A.   Yes.



Q.   And was it true and accurate as of the date you signed it?

A.   Yes, it was.

Q.   And then was it still true and accurate as of the last time you reviewed it, which was around the time of the provisional relief hearing?

A.   Yes.

Q.   Now, looking at what we have marked as No. 4, which is the verified petition.

If you turn to -- let me just first ask you, when is the last time that you can recall reviewing this document?

A.   It would have been around the time that it was -- at the time that it was filed.

Q.   If you turn to, it's page 20 of the document.

A.   Yes.

Q.   Do you see it says, Verification of Petition?

A.   Yes.

Q.   And that's your signature on it, correct?

A.   Yes, that's correct.



Page 52

Q.   And that was signed on April 8; is that right?

A.   Yes.

Q.   So the petition was signed by your lawyers at Sullivan & Cromwell and then you verified it; is that correct?

A.   Yes, that's correct.

Q.   But you reviewed it and it was true and accurate as of the day you signed it?

A.   Yes.

Q.   And you think that the last time that you looked at it was probably around that date; is that right?

A.   Yes.

Q.   So let's look at the one that we have marked as Exhibit 2, which is the Chapter 15 Petition for Recognition of a Foreign Proceeding.

A.   Okay.

Q.   So this is the actual just kind of the first filing in the bankruptcy court, correct?

A.   I believe so, yes.

Q.   And what you are asking -- tell me



Page 53

if you agree with this, if this is your understanding -- what you are asking the bankruptcy court to do is to recognize a foreign proceeding and the foreign proceeding is the liquidation before the Eastern Caribbean Supreme Court in the High Court of the BVI; is that right?

A.    Correct.

Q.    And you attach, then, to this an order of application for the joint provisional liquidators that was entered in the BVI court, correct?

A.    Yes, correct.

Q.    So this order was entered by -- just remind me what's the name of the judge down there?

A.    I believe it was Justice Mithani.

Q.    Justice Mithani.

When is the first time you learned about this order for joint provisional liquidators?

A.    I attended the hearing.  So I witnessed Justice Mithani making the order.

Q.    And if you turn to page 6 -- well,



MAGNA
LEGAL SERVICES

Page 54

it's marked 6 of 31 at the top, do you see that?

A.   Yes.

Q.   There are a lot of different numbers on this.

It says on the application filed by the applicant on 5 January 2026.

Is that the preceding you were just referring to?

A.   Yes, the application was made on the 5th and it came for hearing on the 9th.

Q.   So you -- so the written document was submitted on the 5th, and you then appeared in front of Justice Mithani on the 9th?

A.   Yes.

Q.   Have you had any appearances in connection with this proceeding in front of Justice Mithani before that?

A.   No, this was the first appearance.

Q.   Now, the applicant was the Attorney General of the British Virgin Islands, correct?

A.   Correct.



Page 55

Q.   And that's Dawn J. Smith?

A.   Correct.

Q.   Had you known Ms. Smith before this?

A.   She is someone that I'm familiar with from my 13 years that I spent in the BVI, yes.

Q.   When is the first time you met her?

A.   I can't recall.

Q.   In the last 10 years, 20 years? Give me your best estimate.

A.   I arrived in BVI in February 2012. I would guess I met her at some point around there.

Q.   So on the 9th, you were in front of the judge with Attorney General Smith; is that right?

MR. DUNNE:  Objection to form.

A.   As it's recorded on this page 6, James Drury and I attended and were present at the hearing.  So we attended to observe the hearing and the outcome.

Q.   And Mr. Drury is one of the other joint provisional liquidators, correct?



Page 56

A.    Yes, correct.

Q.    And other than yourself, Mr. Drury, and Attorney General Smith, who else was present?

A.    So as the nominated and proposed liquidators, we attended on our own, James Drury and I, and we weren't represented.

The Attorney General, who made the application, was represented by her legal team at O'Neal Webster.  So other than that, that's the only appearances and representations at the hearing.

Q.    Was it a public hearing?

A.    No.  It was an ex parte hearing in the BVI court.  So it wasn't an open hearing, as far as I am aware.

Q.    Where did it take place?  In a courtroom or chambers or someplace else?

A.    Yeah.  It was in a courtroom, but there was an ability to dial in.  So I dialled in from London.  I don't know precisely which chamber it was in.

Q.    Was there anybody in person in front of the judge?


MAGNA
LEGAL SERVICES

Page 57

A.   I can't recall.

Q.   So you -- was Mr. Drury also dialed in?

A.   Honestly, I can't recall if he dialed in or if he was there.  But James Drury is based in the BVI.  I'm based in London.  It would be normal for him to attend the court, if possible.  I just can't quite remember whether it was all done virtually or not.

Q.   Was there -- to the best of your recollection, was there anybody else present other than yourself, Mr. Drury, the Attorney General, and the Attorney General's legal representatives, and obviously Justice Mithani?

A.   No, I think that was all.

Q.   How long did the proceeding last?

A.   I can't remember exactly how long it lasted.

Q.   Was it all day?  An hour?

A.   I can't remember.

Q.   Was Mr. Chissick there?

A.   No.



Page 58

Q. Was anybody from Walkers there?

A. No.

Q. Now, the application that was filed on paper, was drafted by the Attorney General; is that right?

A. That's correct, yeah.

Q. Did you review it prior to its submission to the court?

A. I recall that O'Neal Webster shared with me a draft order for any comment, as well as the protocol, as part of asking me to consent to the appointment.

Q. Did you have any comments?

A. I can't recall. I don't know anything -- so I think it was prepared by the Attorney General and her lawyers and there was not too much I can add to that really.

MR. DUNNE: I'm going to put one marker down, Peter, on this line of questioning, which is I think we alluded to this as being a sealed proceeding. So we have to be careful about revealing any information that may have been discussed during the sealed proceeding.



Page 59

In addition, I'm not sure what your questions will be, but to the extent they implicate any applicable privileges, I'm going to have to instruct him not to answer.

So we will just have to proceed slowly.

MR. SKINNER:  That's fine.

Q.   So there was the originating application.  It also says that -- it says -- let me just direct your attention to the middle of the page.

It says, Upon reading the application, the originating application will appoint liquidators of the company, the first affidavit of the Attorney General, the affidavit of Jeni-Lee Watson and other documents on the court filing.

Do you see that?

A.   Yes.

Q.   So do you know what the difference is, or if there is one, between the application and then the originating application or is that the same document?



Page 60

A.    I don't know what the difference
is.

Q.    But if I'm understanding you right,
you reviewed an application before it was
submitted, you had a chance to put some
comments in, if you had them, and you just
don't remember if you had any or not?

MR. DUNNE:  Objection.  I think
that mischaracterizes his testimony.

Q.    You can answer.

A.    I was given a copy of the proposed
order.  So this document that --

Q.    That we are looking at right now?

A.    As well as the protocol.  But I
don't recall having any particular comments
on that.

Q.    If you had any comments, would you
have sent them back in writing or would you
call them up?

MR. DUNNE:  Objection.

A.    I can't recall.

Q.    I'm just asking what your ordinary
practice is.

MR. DUNNE:  Objection.



Page 61

A.    Predominantly, when receiving documents, it's going to be by email.  So I recall I received an email with the documents.  But I don't recall speaking to anybody about it.

Q.    So you remember getting an email with the documents, but you don't recall if you sent an email back or if you spoke to someone.  Is that fair?

A.    Yeah, that's a fair summary.

Q.    The first affidavit of the Attorney General, did you review that before it was submitted?

A.    I don't think so.  I don't recall. That was her document she prepared with her lawyers.

Q.    Did you review it as part of the proceeding in front of the judge on the 9th?

A.    I can't recall if I was emailed a bundle for the hearing.  I may have been.

Q.    It may have been part of the email that was sent to you, you just don't remember?

A.    Yeah.



MAGNA
LEGAL SERVICES

26-10769-mg   Doc 49-17   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 17 -
Transcript of May 13   2026 Deposition of P. Pretlove   Pg 63 of 300

Page 62

Q. It also references an affidavit of Jeni-Lee Watson. Jeni is spelled, J-E-N-I dash L-E-E.

Do you know who Jeni-Lee Watson is?

A. I believe she is an employee of O'Neal Webster.

Q. Did you review that affidavit?

A. No, I don't recall reviewing that.

Q. Then it says, other documents on the court file.

Do you know what other documents were on the court file that were part of this application?

A. No. Typically, the BVI court has an e-filing system, and I don't and would never have access to that, that's for lawyers.

Q. Do you know if the Eastern District of New York indictment was part of the papers that were put in front of the judge in this initial application to appoint the JPLs?

A. I can't recall.

Q. What about the forfeiture complaint from the Eastern District of New York?



Page 63

A.   I don't think I can reliably recall what documents were put before the court and were considered.

Q.   Let me ask you to take a look at what we marked as Exhibit 4, which is the petition, the verified petition, and draw your attention to paragraph 6.

Now, it says, On January 5, 2026 in response to these actions -- and it's referring to the paragraphs above when it says these actions; is that right?

A.   Yes, that's right.

Q.   It says in paragraph 3, it describes how the indictment against Mr. Chen was unsealed on January 14 of 2025, correct?

A.   Yes.

Q.   It talks about how that same day, the Eastern District of New York filed a civil forfeiture complaint with regard to the roughly 127,000 Bitcoin; is that right?

A.   Yes.

Q.   Then paragraph 4, it talks about sanctions that were imposed by the United States Treasury Department, as well as the



Page 64

United Kingdom; is that right?

A.   Yes.

Q.   And then it says, In response to these actions -- and that's what it's referring to, the actions in the Eastern District of New York and the sanctions, correct?

A.   Yeah.  That's my understanding, yes.

Q.   And then it says, The Attorney General of the BVI applied on public interest grounds to liquidate the debtors and appoint provisional liquidators while the application for liquidation remained pending.

Do you agree with that?  Is that an accurate statement?

A.   Yes, I do.

Q.   So this was done -- the application was made in response to the proceedings in the United States, but you don't remember if those -- the indictment, the forfeiture complaint, the sanctions list was actually put in front of the judge as part of the application; is that right?



Page 65

A.    It's a matter of record in the BVI court what was put before it and what was and wasn't considered.  I don't know that I can reliably state precisely what was and wasn't.

I have retained to memory exactly what documents were put before the court, what it considered, what it didn't consider.  That is really a matter for the Attorney General, I would say.

Q.    Do you recall if the judge asked any questions during the application proceeding?

A.    I don't recall.

Q.    Did he sign the orders appointing you and Mr. Drury and Mr. Standish as provisional liquidators at that appearance?

A.    I think it was done subsequently, that's how it normally works.

Q.    When did you first learn that the orders had been signed?

A.    I think the same day that they were signed.

Q.    And what day were they actually signed, do you know?



Page 66

A.   I don't know.  Looking back at Exhibit 2, I'm on page 5, it says that the order is dated the 9th, and that's the date of the hearing.  So that's the date the order was made, and entered on the 12th.  So some point between the hearing on the 9th and the 12th, it would have been signed and finalized.

Q.   Was there a separate order signed for each of the 30 companies that were listed in the Chapter 15 petition?

A.   I believe so.

Q.   Was there separate evidence submitted for each company?

A.   Yes, that's my understanding.

Q.   And what was the evidence that was submitted for each company?

MR. DUNNE:  Objection.

Paul, I don't know if you know the answer or if you believe you are allowed to answer that question.

A.   I don't know the answer and --

Q.   Then we can stop it there.

MR. DUNNE:  Yes, we can.


MAGNA
LEGAL SERVICES

Page 67

Q.   All right.  So the order that was signed also attaches a protocol, correct?

A.   Yes.

Q.   And this is also the protocol that you were referencing that you were provided in advance by the legal representatives for the Attorney General for your comment?

A.   Yes, that's my recollection, yeah.

Q.   And the protocol provides that -- well, let me ask just you.

What's your basic understanding of what the protocol is?  What's its purpose?

A.   Basically, a court-ordered protocol for information sharing between me and my fellow liquidators and the Attorney General.

Q.   So this is a document that's going to govern information that goes from the Attorney General to you and back from you to the Attorney General; is that right?

A.   Yes, that's my recollection.

Q.   And it says in paragraph 1 that, the purpose and status of the protocol was to set out a consultative framework between the liquidators and the Attorney General to



Page 68

facilitate effective cooperation in the

public interest in relation to potential and

ongoing regulatory or criminal investigations

and prosecutions connected to the affairs of

Prince Global Holdings Limited Company,

correct?

        A.    Sorry, where is that?

        Q.    Paragraph 1, it's on page 11 of

what we marked as Exhibit 2.

        A.    Okay.  Sorry, I wasn't following

that.  But, yeah, that -- you just read out

that paragraph as I understand it.

        Q.    Is this an accurate description of

what the purpose of the protocol was?

        A.    Yeah, I think so.

        Q.    And is this because you were going

to be doing some investigation, that you

needed to be able to share information that

you gathered in your investigation back with

the Attorney General?

        A.    I think I would say that it was

appreciated that during the course of my

appointment as liquidator, I'm going to

recover information and I'm going to learn



Page 69

things about the companies and their assets and their affairs and conduct, and that it would be anticipated that it would be necessary to share some of that with the Attorney General. And this was really that -- the protocol or guidelines for how that would be done.

Q. The protocol provides that the Attorney General should appoint -- shall appoint representatives to liaise with the liquidators.

Has that happened?

A. Yes. Insofar that it's from people within the Attorney General's chambers. So she has employees within her team and she's appointed various people to communicate and liaise with us as liquidators.

Q. And just to -- if you can turn the page to paragraph 4 is what I'm talking about.

A. Right.

Q. So who was on the consultative committee?

A. I'm not sure that a formal


MAGNA
LEGAL SERVICES

Page 70

consultative committee has actually been

formed.

　　　　She has employees within her

chambers that she has asked that we

communicate with, but I don't think as yet a

formal committee has been constituted.

　　Q.　Who are the employees that you have

been asked to communicate with?

　　A.　I can't recall the precise names,

but there has been a handful of people on her

team that we've been asked to communicate

with.

　　Q.　So since January 12 of 2026, have

you personally been in communications with

representatives of the BVI Attorney General's

office or has it been done through your

counsel?

　　A.　It's predominantly been done

through counsel.

　　Q.　And that's Walkers; is that right?

　　A.　Yes.

　　Q.　And are they talking to the

Attorney General's office or are they talking

to the Attorney General's lawyers at O'Neal



Page 71

Webster?

A.    Predominantly O'Neal Webster, but some of these representatives are from time to time copied on emails, I recall.

Q.    Are you copied on those emails too?

A.    No.  It's normally lawyer to lawyer communications.

Q.    Do you know how often they communicate?

A.    I couldn't describe the cadence, but it's from -- from time to time, and depending on what is happening.  It's become clarity -- I think between BVI -- I think there has been communication and coordination between the lawyers.

Q.    When it talks about, turning back to the purpose, paragraph 1, when it talks about ongoing regulatory or criminal investigations and prosecutions, what's your understanding of what those regulatory and criminal investigations and prosecutions are?

A.    I don't have any understanding or insight to what they are at all.

Q.    So you don't know if this is



referring to stuff that is happening in the BVI or someplace else?

A.   No, I don't know.  And it's not something that I have been involved in.

Q.   Do you know if there are any ongoing investigations in the BVI?

A.   I don't know.  I -- I -- yeah, I don't know if there are.  It's not something I would expect to be privy to particularly.

Q.   You were appointed as a provisional liquidator under this order, correct?

A.   Correct.

Q.   And a provisional liquidator's authority is temporary, correct?

A.   Yes, in the intervening period, until the full liquidation application is heard.

Q.   Do you know when the full liquidation application will be heard?

A.   That's probably a better place for BVI's legal representative to explain the precise position.  But I would summarize it as that application came after the hearing on the 16th or the 17th of April, and the matter



Page 73

was adjourned and the BVI judge continued the provisional liquidation and his decision is awaited.

Q.   Now, Mr. Chissick said in his declaration, that the primary role of a provisional liquidator is to maintain the value of the assets.

Do you agree with that statement?

A.   Yeah.  I would say that's the primary role, depending on the circumstances. There might be other things I need to do, and there's quite a general order as part of the appointment that says I can do any such thing as it necessary for the purpose of the appointment.

Q.   Where does the order say that?

A.   So in Exhibit 2, at page 8, it's paragraph 3, subsection M.

It says, The liquidators can do other things as may be incidental to the exercise of the above functions and powers, is the more precise language.

Q.   And what does "incidental" mean?

A.   I'm sure there is a legal answer to



MAGNA
LEGAL SERVICES

Page 74

how that particular word should be applied,
but I would think that's quite a broad
definition of things as when they arise.

Q.   Have you ever received any
instructions from the BVI court authorizing
you to depart from the mandate that's
included in this order?

A.   No, I wouldn't say that I have.

Q.   Have you received any
authorizations from the BVI court that are in
addition to what's listed in this document?

A.   I don't think so, other than the
continuation of my appointment as provisional
liquidator.

Q.   Have you taken any actions pursuant
to paragraph M that you just showed us
before?

A.   I would say I have taken a number
of actions across each of the 30
appointments, across several months into my
appointment.  There could well be things that
I have done that are -- that fit within that
description, but I wouldn't be able to list
them out.



MAGNA
LEGAL SERVICES

Page 75

Q.   So as we sit here today, you can't identify any but you might have?

MR. DUNNE:  Objection.

A.   I think what I would say is that it's a broad order and power, and I'm constantly exercising my powers every single day in relation to many issues arising across all 30 entities.  And I wouldn't be able to list those out right now.

So that's the best summary I could give to that question.

Q.   So what is -- you said that you view paragraph M as a broad power.

What falls within the scope of this broad power?  Can you give me some examples?

MR. DUNNE:  Objection.

A.   I don't think I can.  It's broad. I couldn't list out the steps I've taken that would fall within that and I don't think I can sensibly come up with any examples.

Q.   Do you think that paragraph M authorizes you to sell assets of the debtors?

A.   I think it could, if it means that I am meeting my primary duties and



Page 76

responsibilities as liquidators.

Q.    So you think that a thing incidental to the exercise of the functions and powers otherwise in this order is selling assets?

A.    It could be, yeah.  It's not -- it's going to depend on the asset, the circumstances, and what it is that needs to be done.

Q.    Have you sold any asset pursuant to paragraph M?

A.    No.

Q.    And you've served as a JPL in other instances, right?

A.    Yes.

Q.    Have you had similar authorities in other cases that you have been involved in?

A.    Yeah.  I would say the majority of the terms of this order are fairly standard from what you would expect for a provisional liquidator or liquidator.

Q.    Can you think of any other instance in another case where you were serving as a provisional liquidator where you sold an



asset pursuant to the authority allowing you to -- pursuant to the authority described in paragraph M?

A.   I would have to refresh my memory precisely which cases and which assets, and there are legal issues, like whether I'm free to disclose the details of that.  But, yeah, I would say that there have been other times where I have done that.

Q.   But not in this case; is that correct?

A.   That's correct.

Q.   Now, if the BVI court denies liquidation, that ends your role as the provisional liquidator; is that correct?

MR. DUNNE:  Objection.

A.   It depends what the court orders on the day.  It could, but it also might not.

Q.   Well, Mr. Chissick says -- and tell me if you agree with this or not -- the provisional liquidators' appointment has no fixed duration and terminates upon either, one, the BVI court's determination on the application to appoint a liquidator; or, two,



Page 78

by other order of the BVI court, either on
its own motion or on the application of the
provisional liquidator or a person specified
under Section 170(2) of the BVI Insolvency
Act.

          Do you agree with that?

     A.   Yeah, that sounds right to me.

     Q.   So when I say that -- and the BVI
court's determination on the application to
appoint a liquidator, one of those
determinations could be to deny liquidation,
correct?

     A.   So the application to appoint will
ultimately be judged on by the BVI court and
that may result in the termination of the
provisional liquidation.  But it equally
might not; the judge might order some other
thing.

     Q.   But if the judge denies the
liquidation, that ends your appointment as a
provisional liquidator, correct?

          MR. DUNNE:  Objection.

     A.   If that's what the order says.  If
the order says that the application is denied



Page 79

or dismissed and I am removed as provisional liquidator, then, like Andrew Chissick describes, as you just read it to me, that would bring about an end to the liquidation.

But I guess the substance I was trying to explain is that the judge might order something different; he might order the continuation of the provisional liquidation or something like that, subject to appeal.

Q.   So at the hearing in front of the bankruptcy judge in the middle of April, another lawyer in this case representing you said, The JPLs were not appointed on the application of any particular creditor, a stockholder, or any private party.  The JPLs were appointed on the application of the Attorney General of the British Virgin Islands, in the public interest for the benefit of victims.  Although this is very much a civil litigation, we are respectful of how it started and the important role of government actors.

Do you remember that?

A.   Yes, I do.



MAGNA
LEGAL SERVICES

Page 80

Q.    Do you agree with it?

A.    Yes.

Q.    Do you agree that your appointment on the application by the Attorney General is relevant to the recognition proceedings in the U.S. court?

MR. DUNNE:  Objection to form. Calls for a legal conclusion.

A.    I think it's subject to legal analysis and legal advice, but that would be my understanding.

Q.    Going back to your appointment by the Attorney General.  The application was made by the Attorney General herself, correct?

A.    Sorry, the application to appoint me as liquidator?

Q.    Correct.

A.    Yes, yes.

Q.    You had some communications with her office before that, as we talked about a little bit earlier, right?

A.    In that when she was making the application for appointment, she has to


MAGNA
LEGAL SERVICES

Page 81

nominate an appointee, a liquidator.  And

that's the same as in any case in the BVI;

you have to state who it is you are

nominating.  And part of the application

includes a consent to act.

So yes, she asked me to consent to

act, and I gave that consent.  And because I

am classed as an overseas practitioner under

the Insolvency Act, I needed to make an

application to the Financial Services

Commission in the BVI to give them notice of

my intended appointment and to give them a

copy of my consent to act as liquidator.

So I did do that and I did receive

that permission from the Financial Services

Commission in advance of the hearing.

Q.   So when did this whole process

start?

A.   I can't remember the precise date

that I gave consent.  It has to be within six

weeks of the hearing.  And the Financial

Services Commission typically likes at least

seven days' notice.  As far as I can recall,

it was within that notice period.



Page 82

Q.   With respect to the request for your consent, how did it come about?

MR. DUNNE:  Objection to form.

I'm going to direct you not to answer to the extent that that would reveal common interest privileged material, litigation privileged material, or otherwise violating a sealed court order.

A.   Okay.  I'm trying to think through. I think my recollection is that the -- is that O'Neal Webster asked me for the consent to act on behalf of the Attorney General. That's probably the best answer I can give.

Q.   That's fine.  I -- kind of -- the question was, did you reach out to them or did they reach out to you?

And it sounds like they reached out to you first.

A.   In relation to the consent to act, yes, I think -- I can't remember if we prepared it or whether O'Neal Webster prepared it.  It's a fairly standard form. And I was asked would I give that consent,



Page 83

and duly did as I described and went on to give the notification to the Financial Services Commission.

Q.  Let me ask this way:  Was there a process where other firms and your own firm were completing to be appointed as JPLs and you put in pitch materials and the like?

Was there anything like that?

A.  Not what I would consider to be pitch materials, no.

Q.  Did they ask for any information from you with respect to your qualifications to serve as a joint provisional liquidator?

A.  I can't recall, I think that O'Neal Webster and the Attorney General would be familiar with my experience in BVI across 13 years, I have been a licensed practitioner there, the appointments I have taken, some high-profile appointments, and some significant foreign investigation and asset recovery cases that resulted in global litigation and asset recovery efforts.

So I think my view is that they would be quite familiar with my experience


MAGNA
LEGAL SERVICES

Page 84

and appropriateness for a role like this.

Q.   You don't, as we sit here today, remember providing any information to them in response to a request that they might have made?

A.   I don't know to what extent the preparation of those documents for the application for my appointment would be legally privileged and whether that would belong to the Attorney General.  So I'm struggling, I guess, to navigate around what I can and can't cover in relation to that.  I don't want to do anything like impinging on that privilege.

Q.   Okay.  That's fair.  If there is a privilege, we will ask your lawyers to assert it on a log.  Because I think those are covered by document requests we made, but we will follow-up.

MR. DUNNE:  We'll take care of it offline.

MR. SKINNER:  Yeah.  We will take care of that afterwards.

Q.   Do you know who was involved in the



Page 85

decision to request your consent to the appointment?  Who on the Attorney General's side of the equation was involved?

A.    I wasn't privy to that decisionmaking or discussion.  My guess is the Attorney General decided that I would be an appropriate appointee.

Q.    Do you have some sort of engagement agreement with the Attorney General's office?

A.    No, I don't.

Q.    You are incurring fees and costs as part of this role as the joint provisional liquidator for these 30 debtors, correct?

A.    Correct.

Q.    And how are those being paid?

A.    Currently, there has been no drawing against outstanding fees and expenses.  In the order for my appointment, it entitles me to draw 80 percent of my fees and 100 percent of my expenses.  Legal fees and expenses being included in that hundred percent from asset realization within the liquidation estate.

So given that there have been none,



Page 86

no asset realizations, there has been no payment in respect to outstanding fees and expenses.

Q.   Let make sure I understand all that.

Basically, the order provides that you are going to give a 20 percent discount and get 80 percent of your fees; is that right?

A.   So this is a preapproval from the BVI court, as is relatively standard for liquidation appointments, that as and when there is money available within the estate, you can draw down 80 percent of your fees and 100 percent of your expenses on the basis you will come back at some subsequent point to have your fees approved by the BVI court.

So I would make an application in my name, as liquidator, setting out in various detail the fees and expenses that have been incurred and then the court would approve them and I would be entitled to draw the remaining 20 percent or some different amount on some other basis depending on what



Page 87

the judge orders.

Q.   I see.

So if there is an asset liquidation and some money comes in, at that point in time, you are entitled to take 80 percent of your fees out of the money that was realized, correct?

A.   Yes, that's the bulk of it, yes.

Q.   And then there is a process where you apply for approval of those fees and you might get more, you might get less, and that gets worked out with the BVI court?

A.   Yes, that's fair.  The 80 percent is the practice to give, like a 20 percent headroom, but it's not absolute.  It could be if the judge decides you are only entitled to 75 percent of your fees, you would have to refund the 5.  But that's generally the level that the court is prepared to preapprove, is the best phrase.

Q.   When it comes to your fees, are you tracking this on an hourly basis?

A.   I'm -- we are tracking it at hourly rates and we do that in six-minute blocks.



Page 88

Q.   What's your hourly rate?

A.   My hourly rate on this case is 1410 pounds per hour, I believe.

Q.   What about Mr. Drury?

A.   I can't recall the precise amount in dollars, but it's around about $1,000.

Q.   Dollars, not pounds?

A.   Yeah.

Q.   And what about Mr. Standish?

A.   He is the same as myself, 1410 pounds.

Q.   Sterling?

A.   Yes.

Q.   And are there other folks at Interpath that were working on this matter?

A.   Yes.

Q.   And are you billing for their time as well?

A.   Yes.

Q.   So do you know from the time of your appointment until now, do you have any rough sense of the total dollar value of the fees that have been run up?

MR. DUNNE:  Objection.



We may need to take a pause here because I don't know if that's the subject of sealed submissions and whether he can disclose it.  So we can either take a break or do that after a break.

MR. SKINNER:  Why don't we just put a pin in it and come back to it after a break.

MR. DUNNE:  Yeah, after a break.

Q.   Now you are also entitled to get your expenses, correct?

A.   Yes.

Q.   What expenses have you incurred to date?  Not dollar value, just categorize what types of expenses.

A.   There is the retainer payment to Sullivan & Cromwell.  There was the -- there is a notification filing fee with the Financial Services Commission that we had to pay.  There are various travel and similar expenses that we've paid.

Q.   What about legal fees?

A.   I don't think there is any legal



Page 90

fees that we've paid, other than the retainer for Sullivan & Cromwell.

Q.   But you are going to owe Sullivan & Cromwell some money at some point, correct?

A.   I think I would describe it that the liquidation estates are, as a result of this order that was made by the BVI court, are obliged to pay 80 percent of the fees and 100 percent of the expenses of the liquidator and that would encompass the fees of Sullivan & Cromwell, Walkers, et cetera.

Q.   So the legal fees of your advisors are included in that 80 percent at the time of realization?

A.   I think it's based on what the BVI Insolvency Act deems remuneration to be, and it deems fees to be the fees of the liquidator himself, and the expenses to be the expenses of the liquidator, and that includes the fees and the expenses of the liquidation estates.

So yeah, legal fees, whatever fees that we incur in performing our duties in accordance with the order.



Q. So -- okay. That all makes sense. And we can come back after a break with questions about what those fees are.

But have you been getting bills from Sullivan & Cromwell?

A. Yes, monthly.

Q. Monthly bills?

A. Yeah.

Q. Okay. What about same for Walkers?

A. I can't recall if they're actual bills or fee notes, setting out the amounts that have been incurred.

Q. Have you retained any other law firms other than Sullivan & Cromwell and Walkers?

A. Yes.

Q. Which other law firms?

MR. DUNNE: I'm going to instruct him not to answer at this time.

MR. SKINNER: On what basis?

MR. DUNNE: On the basis that I think that there is a possibility that you and your client may try to take action as a result of your learning who



the firms are based on your speculation as to what they might do.

MR. SKINNER:  The question is, is this on the basis of privilege or something else?

MR. DUNNE:  It is on the basis that I just articulated.

MR. SKINNER:  Sorry, the transcript do not go through.  Can you repeat that?

MR. DUNNE:  Yes, and this is to further the discussion we had, which was that these liquidators were appointed over these companies on the grounds that they were a crime scene, they needed to be administered in the public interest.

And as you know we've asserted there is an interference in that liquidation by you and your colleagues and others associated with your clients or purporting to act on behalf of your clients.  I regard this questioning as designed to circumvent the BVI court's orders and to try to interfere with the liquidation process around the world.



MAGNA
LEGAL SERVICES

Page 93

So I will let him answer whether he has retained other law firms, but not identify them at this time.

MR. SKINNER:  Just to be clear, this is not a question of privilege. This is based upon BVI court orders.

MR. DUNNE:  I will put a marker down that there may be litigation privilege attached to that, but we are not going to answer the question now.

We can take this up before Judge Glenn, if you want.

MR. SKINNER:  We will.  I'm just trying to understand right now if this is kind of a relevance objection or is this based on something else.

It sounds like it's based on something else.

MR. DUNNE:  It's also a relevance objection.

MR. SKINNER:  Are you instructing him not to answer on the grounds of relevance?

MR. DUNNE:  I'm instructing him not



Page 94

to answer on the grounds I just set
forth, not solely relevance.

MR. SKINNER:  So the grounds would
be BVI court orders and litigation
privilege.  Is that right?

MR. DUNNE:  BVI court orders,
relevance to this proceeding, litigation
privilege, and there are probably other
bases as well.  But you are not getting
an answer to this question.

MR. SKINNER:  You can take the
temperature down.  I just want to make
sure I understand the bases for the
objection.  I think we have them now.

Obviously, if there is a privilege
being asserted, you will identify the
privilege.  If there are court orders
that are at issue, you will identify the
court orders.  And relevance is what it
is.  We will take that as it comes.

But we will revisit this later.  No
reason to get into this further now.

BY MR. SKINNER:

Q.    How many other law firms have you



Page 95

retained other than Sullivan & Cromwell and

Walkers?

        A.    I can't recall precisely how many.

There is different law firms in different

jurisdictions.

        Q.    And what jurisdictions?

              MR. DUNNE:    Instruction not to

        answer.

              MR. SKINNER:    The same objections?

              MR. DUNNE:    Same objections.

        Q.    So going back to the $25,000

retainer.   In the verified petition, you say

that venue is proper in the Southern District

of New York because each of the debtors has a

rateable interest in an advanced payment

retainer of $25,000 held by Sullivan &

Cromwell in a client trust account in New

York, New York.

              That would be paragraph 16, if you

have that in front of you.

        A.    Yeah.

        Q.    And first of all, let me ask you,

do you agree with that?   Is that accurate?

        A.    Yes, I do.


MAGNA
LEGAL SERVICES

Page 96

Q.   You also then say that the presence of -- this is paragraph 17, The presence of property within the United States renders each of the debtors eligible to file the Chapter 15 proceedings under Section 109(a) of the code; is that right?

A.   Yes.

Q.   And you agree with that?

A.   That's my understanding, yes.

Q.   Is there any other property other than the $25,000 retainer held by Sullivan & Cromwell, that you are referring to in paragraphs 16 and 17?

A.   So do you mean the existence of other U.S. assets?

Q.   I'm just asking what you are referring to in those paragraphs.

Anything other than the retainer?

A.   My understanding is that's in relation to the payment and holding of the retainer.

Q.   Let me just ask a different question, then.

And paragraph 17 talks about the



Page 97

presence of property in the United States. Are you aware of any other property in the United States that you are referring to in that paragraph, other than the $25,000 retainer referred to in paragraph 16?

MR. DUNNE: Objection. Asked and answered earlier.

A. I think I set out earlier that the connections to the U.S. that I am aware of and claims and investigations that I have undertaken and the indication of assets. So I think that's all encompassed within that.

Q. But you didn't -- I know you are investigating U.S. assets, but you haven't identified any U.S. asset yet, other than the $25,000 retainer, correct?

MR. DUNNE: Objection. Asked and answered.

Q. You can answer.

A. I think --

Q. Let me withdraw it. Maybe we can make this clearer.

Can you turn back to the document responses, I think we marked it as No. 5.


MAGNA
LEGAL SERVICES

Page 98

A.    Yes.

Q.    So again, we are looking at page 16, which is the response with respect to request No. 10, which asks for documents sufficient to identify the debtors' U.S. assets.

And this response, which wasn't signed by you, it was provided by your lawyers, but this response says, Subject to and without waiving any objections, the authorized foreign representatives state that the debtors' U.S. assets of which they are currently aware consists of the retainer held by Sullivan & Cromwell, as set forth in paragraphs 16 and 17 of the verified petition.

Do you agree that's an accurate statement?

A.    Yes.

Q.    And then with respect to the documents that we asked related to that, it says, towards the bottom, the authorized foreign representatives will provide a copy of the invoice from Sullivan & Cromwell to



Page 99

the joint provisional liquidators.

Do you see that?

A.    Yes.

Q.    You did provide the invoice,
correct?

A.    I gather they were in a list of
documents in a separate binder.  I'm not sure
how or when that was produced.

MR. SKINNER:  Let's mark this as
No. 6.

(Pretlove Exhibit 6, Sullivan &
Cromwell Invoice, marked for
identification.)

Q.    Is this the invoice that was
referenced in the documents responses?

A.    Yes.

Q.    Just to be clear, we are looking at
Exhibit 6 now, correct?

A.    Yes.

Q.    This was sent by Sullivan &
Cromwell to you, correct?

A.    I think it was sent to me as one of
the joint provisional liquidators.

Q.    But as far as the recipient of the



26-10769-mg   Doc 49-17   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 17 -
Transcript of May 13    2026 Deposition of P. Pretlove    Pg 101 of 300

Page 100

invoice, it says Paul Pretlove, right?

A.   Yes.

Q.   And the invoice is dated March 31 of 2026, right?

A.   Yes.

Q.   Do you recall how you received the invoice?

A.   I recall it was by email.

Q.   Who was the email from?

A.   I can't remember which member of the Sullivan & Cromwell team that sent it.

Q.   Did you pay the invoice?

A.   Yes.

Q.   When did you pay the invoice?

A.   I can't remember the precise date, but it was shortly after receiving the invoice.

Q.   And it says, with respect to the payment, that the preferred method of payment is a wire transfer or ACH or alternatively, you could issue a check.

Do you see that?

A.   Yes.

Q.   Did you make the payment by one of



these three methods?

A. Yes.

Q. How did you do it?

A. To the best of my knowledge and understanding, it was a wire transfer from Interpath.

Q. Okay. So from an Interpath bank account?

A. Yes.

Q. And where did the money come from?

A. From Interpath directly.

Q. And who's -- where did Interpath get the money?

A. It's from Interpath's own funds.

Q. Did any of the money come from any of the Boies objecting debtors?

A. No. Interpath paid it as an expense of the liquidation.

Q. Did any of the money come from any of the debtors at all?

A. No.

Q. So when you say "Interpath paid it," this was money that was owned by Interpath before it was turned over to



Page 102

Sullivan & Cromwell?

    A.    Yes.

    Q.    Is this a loan?  How would you categorize this payment?

    A.    As an expense of the liquidations.

    Q.    But you didn't get the money from the debtors themselves, right?

    A.    We would be repaid from the asset realizations within the estate.  As mentioned earlier, there has been no realizations within the liquidation estate.  So no funds from which to reimburse that payment.

    Q.    So Interpath paid the money out of its own pocket and is including it as an expense of the liquidations and at a future time, if there is a realization, it will seek to reimburse itself from that realization?

    A.    Yes, rightfully from the recoveries in the various 30 liquidation estates.

    Q.    When you say that it's a rateable interest in an advance payment retainer, what do you mean by that?

    A.    Broadly, that it's split between the 30.



MAGNA
LEGAL SERVICES

Page 103

Q.   I'm sorry.  It's split between the 30.  What do you mean by that?

A.   That the 30 entities owe those funds as expenses equally between them.

Q.   I'm just trying to understand how this will work in the future then.

If you realize an asset from -- pick a company on the list -- Prince Holding Group Limited, and money comes in, that money is just coming from one of the debtors, right?

A.   I think that's correct, yes.

Q.   So at that point, you would take 1/30th of $25,000 out of that realization?

A.   Subject to approval from the BVI court, I would say we've got this general right to draw to present 80 percent of fees and 100 percent of expenses.  But there is going to be a number of complications as to how to divide the liabilities between the estates that I expect to go to the BVI court with an application form to set out what fees and expenses have been incurred and how I intend to draw them from the various estates.


MAGNA
LEGAL SERVICES

Page 104

So that's -- what you describe is how I think it is, subject to any further direction from the BVI court.

Q.   So if I'm understanding you right. In the future, you might ask for this to be an expense that could be drawn from one debtor rather than splitting it amongst all 30, right?

MR. DUNNE:  Objection.

A.   It's not an application I have made yet.  So I need to seek advice, particularly from Walkers in the BVI, as to how I should administer realizations within the estate and how I should discharge ongoing expenses and liabilities of the estate.

Q.   This is a retainer that was paid to Sullivan & Cromwell, correct?

A.   Yes.

Q.   And is there an agreement with Sullivan & Cromwell that memorializes the retainer obligation?

A.   There is the invoice and then simply a payment on that invoice.  So I'm not aware of any other documents.



26-10769-mg   Doc 49-17   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 17 -
Transcript of May 13   2026 Deposition of P. Pretlove   Pg 106 of 300

Page 105

Q.   Do you have an engagement agreement with Sullivan & Cromwell, separate and apart from this invoice?

A.   Yes.

Q.   And does that engagement agreement describe the retainer?

A.   I can't recall whether a specific fee is mentioned in the retainer.

Q.   Who is the engagement with Sullivan & Cromwell -- well, withdrawn.

Who is the client?  Is it you as the JPL, is it the debtors, is it someone else?

A.   In respect of who?

Q.   Of your attorney-client relationship with Sullivan & Cromwell.

A.   I've described it as the companies acting through myself as the provisional liquidator.

Q.   Who's actually on the engagement agreement?

A.   I can't remember exactly how it's styled.  But that's typically how I set these arrangements up is I'm the authorized person



MAGNA
LEGAL SERVICES

Page 106

in respect of the company or companies and

I'm engaging as liquidator and representative

of those companies.

    Q.    So your understanding is that the

retention was by you on behalf of the 30

debtors?

    A.    As liquidator of the 30, yeah.

    Q.    As the provisional liquidator?

    A.    Yes, yeah.

    Q.    Now, in the Chapter 15 proceedings,

you've also been described as an authorized

foreign representative, correct?

    A.    Yes, that's my understanding.

    Q.    What are you an authorized foreign

representative of?  The debtors or the BVI

proceeding or something else?

        MR. DUNNE:  Objection.

    A.    I would say the debtors.

    Q.    So with respect to the engagement

with Sullivan & Cromwell, you don't recall,

as we sit here today, what it says on the

engagement letter with respect to who the

client is of the -- who Sullivan & Cromwell's

client is?



Page 107

A. No, I can't recall.

Q. If you can look at the first page of the petition, verified petition, you are aware that Sullivan & Cromwell says they represent the authorized foreign representatives, right?

A. You are referring to the first page of Exhibit 2?

Q. Sorry. Let's look at Exhibit 3 -- no, 4.

Do you see up at the top there, it lists Sullivan & Cromwell and some of their lawyers, and then it says, counsel to the authorized foreign representatives?

A. Yes.

MR. DUNNE: Which exhibit are we on? Sorry.

MR. SKINNER: 4.

Q. So the authorized foreign representatives includes you and Mr. Drury and Mr. Standish, correct?

A. Yes, correct.

Q. And but as we -- withdrawn. I've already asked this question two times, I will



Page 108

move on.

          MR. SKINNER:  This may be a good
time to take a quick break.  Let's try
to again, make it a quick one --

          MR. DUNNE:  Do you think we're
going to do lunch or?

          MR. SKINNER:  I guess we should
probably take a break for lunch.

          Let me see if we've got lunch.
Assuming we have it, then let's do a
quick lunch.

          THE VIDEOGRAPHER:  The time is
12:35.  Going off the record.

          (Recess.)



Page 109

A F T E R N O O N    S E S S I O N

(Time noted:  1:32 p.m.)

P A U L    P R E T L O V E, resumed and testified as follows:

THE VIDEOGRAPHER:  The time is 1:32 p.m.  Back on the record.

MR. DUNNE:  Do you want us to address the matter we were discussing before the break?

MR. SKINNER:  Sure.

MR. DUNNE:  With respect to questions about fees and expenses of the estates, those are subject to reporting requirements be under BVI law in connection with the insolvency and we believe providing information outside of that context, could violate BVI law.

That said, we are happy to take that up offline with you, with BVI counsel, if that's of interest to you.

And to the extent that you want to talk further about the information you wanted on retention of law firms, we



Page 110

further believe providing that law firm would violate privilege and work product here, given the nature of the work obviously being considered by those firms.

MR. SKINNER: Okay.

EXAMINATION BY (Cont'd.)

MR. SKINNER:

Q. Can we go back to the Sullivan & Cromwell retainer I marked. I have a couple questions about that.

Looking at the retainer, it says it's for advance payment of retainer.

Do you know what that means --

withdrawn.

What does that mean to you?

A. As I think is standard in my experience when engaging a law firm and they request a retainer, that's paid upfront. So that's what I think that means and you pay that.

Q. I guess was it an advance payment of Sullivan & Cromwell's fees? Was it a retainer to be held in the event that fees


MAGNA
LEGAL SERVICES

are not being paid in the future?

There is a lot of different varieties of retainers.  Do you know what the terms were with respect to this specific retainer?

A.   No, I don't think there is any other terms I'm aware of.

Q.   Do you know what account Sullivan & Cromwell's holding the retainer in?

A.   I don't.

Q.   Is the $25,000 still sitting in a Sullivan & Cromwell account or has it been used to pay fees that Sullivan & Cromwell has incurred already?

A.   My understanding is that Sullivan & Cromwell still is holding that sum.

Q.   And that's your understanding based on what?

A.   Based on the fact that I haven't been notified that anything has been drawn from that retainer.

Q.   Have the JPLs caused the debtors to take on any loans?

A.   No.


MAGNA
LEGAL SERVICES

Page 112

Q.    And this retainer is not a loan?

A.    No, it's not how I would describe it.

Q.    And again, how would you describe it?

A.    Payment of a retainer to Sullivan & Cromwell.

Q.    Using money that came from Interpath?

MR. DUNNE:  Objection.  Asked and answered.

A.    Not so much that came from Interpath, it was just Interpath stepping in to meet a necessary expense of the liquidation.

Q.    And the money was paid out of an Interpath account, correct?

A.    Yes.

Q.    And the money was not obtained from a debtor, correct?

A.    Correct.

Q.    You don't know if it's sitting in one account or in 25 or 30 different client accounts at Sullivan & Cromwell, do you?



Page 113

A. My understanding is that it's just held in one account, right ably on behalf of the 30.

Q. With respect to documents related to the retainer, all we received is the retainer document itself from Sullivan & Cromwell.

Is the only agreement that memorializes the terms of the agreement is the engagement letter with Sullivan & Cromwell; is that right?

MR. DUNNE: Objection, mischaracterizes testimony.

MR. SKINNER: That's why I'm asking.

Q. Is that right?

A. There is an engagement letter. I can't recall if it refers specifically to a retainer or not.

Q. Can you just identify for me any contracts that you are aware of that relate to the retainer agreement with Sullivan & Cromwell?

A. I'm not aware of any additional



Page 114

terms or agreement.

Q. Do you have any contracts with any of the debtors related to monies that are being advanced for your expenses?

A. Monies being advanced from Interpath?

Q. Correct.

A. So -- sorry, what is the question?

Q. Interpath paid $25,000 to Sullivan & Cromwell, correct?

A. Yes.

Q. Are there any agreements with the debtors related to Interpath's payment of $25,000 to Sullivan & Cromwell?

A. No. The court has ordered that Interpath would be entitled to be paid 80 percent of fees and 100 percent of expenses, and this would be included as one of the expenses of the liquidation.

Q. If it's ultimately approved by the BVI court, right?

A. The order says that we can draw 100 percent of expenses. That is as ordered on the 9th of January. So if and when there



26-10769-mg   Doc 49-17   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 17 -
Transcript of May 13   2026 Deposition of P. Pretlove   Pg 116 of 300

Page 115

were funds available to draw against within the liquidation estates, we can do that.  But ultimately, subject to final approval by the BVI court, whenever that is.

Q.   So you could draw it down, if you realize assets.  But you would still have to go to the BVI court after that and get approval for those expenses, correct?

A.   Yes.  Before the conclusion of the liquidation, yes.

Q.   So you would effectively have a claim I guess; is that right?

MR. DUNNE:  Objection.  Object to the extent it calls for a legal conclusion.

MR. SKINNER:  I will just withdraw the question.

Q.   It falls under the process that you've already described for us a few times, where you are authorized under the BVI court order to pay down a portion of your fees and all of your expenses.  But after that, you have to go and get approval from a court for those fees and expenses, right?


MAGNA
LEGAL SERVICES

Page 116

A.   Yes.

Q.   And if the court rules that an expense or a fee for whatever reason should not have been paid, you have to pay it back, right?

A.   Yes, I think that's consistent.

Q.   The BVI court order also allows the Attorney General to pay her expenses, correct?

A.   I don't think that's ordered.  I think that there is mention in the order of fees and expenses of the Attorney General.

Q.   I thought there was, but tell you what, why don't we put that aside so we are not wasting time while I try to find it and we can go back to that.

A.   Okay.

Q.   Let me ask you, are you aware of the Attorney General submitting any bills to you for their costs in connection with whatever they're doing under the BVI court orders?

A.   No.

Q.   Now, with respect to the BVI



proceedings as they presently sit in their provisional form, they are not for the purpose of reorganization, right?

MR. DUNNE: Objection.

A. I don't really understand the question.

Q. Let's go to the verified petition, paragraph 22.

A. Okay.

Q. And it says that the BVI proceedings were commenced in the public interest, correct?

A. Yes.

Q. And you agree with that, right? That's why they were commenced in the public interest?

A. Yes.

Q. And they are intended to -- and then it lists four things here: Centralized control of the debtors' affairs under court supervision, preserve the debtors' assets, facilitate investigation of the debtors' activities and transactions, and enable coordinated administration and recovery.



Page 118

Do you see that?

A.   Yes.

Q.   Was there any other purpose for the BVI proceedings other than those four that are listed out there?

MR. DUNNE:  Objection.  Calls for a legal conclusion.

A.   I think that's a summary given by Andrew Chissick dealing with why the proceedings aren't relevant to any one single creditor.  I'm not sure that encapsulates the entirety of the purpose of the proceedings.

Q.   This is the verified petition that you signed, right?

A.   Yeah.

Q.   So this is your statement, right?

MR. DUNNE:  Objection.

A.   Yes.

Q.   Have you declared under penalty of perjury that you've read the foregoing and that you are informed and believe that the allegations contained therein are true and accurate to the best of your knowledge, information, and belief.  Right?


MAGNA
LEGAL SERVICES

Page 119

A.   Yes.

Q.   And then you rely on Mr. Chissick's declaration for this point, correct?

A.   Yes.

Q.   So it may be a better question for him, but I'm just asking your understanding.

Are you aware of any other purpose for the BVI proceedings, other than what is listed here?

MR. DUNNE:  Objection to form.

A.   I'm just trying to sensibly answer the question.  I think that is quite specifically in the context of whether or why these proceedings are in relation to any one single creditor.  But your question is what the entirety of the purpose of the liquidation, and I think they're two different things.

Q.   Well, are there any reorganization proceedings going on right now in BVI?

MR. DUNNE:  Objection.

A.   What is the definition of reorganization?

Q.   In the Chapter 15 petition, you



MAGNA
LEGAL SERVICES

stated that the BVI proceeding is the only foreign proceeding to which the debtors are subject, correct?

A.   Is this in Exhibit 2?

Q.   Yes.  Exhibit 2 at page 20, paragraph 4.

MR. DUNNE:  We are using the page numbers in the ECF --

MR. SKINNER:  Yes, yes.

Q.   Sorry.  There are page numbers at the top there, Mr. Pretlove.  So should be page 20 of 31.

A.   Yes.  That's right.

Q.   And this was as of April 8 of 2026, correct?

A.   Correct.

Q.   And I am just -- is that still the case, is the BVI proceeding the only foreign proceeding to which the debtors are subject, to the best of your knowledge, as we sit here today?

A.   Yes.

Q.   Have you commenced any other recognition proceedings in any other court on



Page 121

behalf of the -- well, just -- have you

commenced any other recognition proceedings

in any other court?

A. No.

Q. I would like to ask you a couple of

questions about your declaration, which I

think we marked as either 4 or 5.

MR. DUNNE: It's 5.

MR. SKINNER: Thank you.

A. Got it.

Q. So if you could turn to page 23 of

27, paragraphs 67, 68, and 69 outline risks

that you had described.

A. I had the wrong document. Which

page is it?

Q. It's page 23.

MR. DUNNE: I have to apologize. I

think 5 is actually the responses and

objections.

MR. SKINNER: Okay.

Q. It's 3.

A. Okay.

Q. You say there was investigative

risk to the debtors if the provisional relief



was not granted, correct?

        A.    Yes.

        Q.    Prior to initiating the application
of provision of relief, had you tried to get
any records, communications, contracts,
account information, or transactional
documents located in the United States that
were held by U.S. counterparties?

        A.    I can't recall the timing
whether -- what efforts have been made and
when.

        Q.    Well, you say the JPLs cannot
obtain these documents.  I'm just asking what
efforts have you made to try to get these
documents and other things before you filed
the application for provisional relief?

            MR. DUNNE:  Objection.

            You can answer.

        A.    I can't recite specifically what
efforts have been made and when.

        Q.    It says there is also sanctions
risk.  That's in paragraph 68, correct?

        A.    Yes.

        Q.    Now, the JPLs were able to obtain



certain licenses from OFAC, correct?

A. Yes.

Q. Some of those licenses related to Allied Cigar, right?

A. Yes. I think it's almost entirely related to Allied Cigar.

Q. Then there was another license that was obtained a little later that was broader; is that right?

A. General license, yeah, rather than a specific license.

Q. So I guess prior to filing for the provisional relief in early April, what difficulties did you have in obtaining sanctions relief?

A. I think that's quite difficult for me to categorize and recite reliably. It's been an ongoing iterative thing.

Sullivan & Cromwell, acting on my behalf, had a number of interactions with OFAC, seeking to help me stabilize the underlying cigar business and it has been difficult and certainly hasn't been straightforward.



Page 124

Q.   You say, Recognition of the BVI proceedings will reinforce the framework on which that relief depends by confirming the JPL's authority in the United States and providing assurance to OFAC, financial institutions, and other counterparties.

What do you mean by that?

A.   I mean that the licenses that they have been granted are to us as provisional liquidators personally, in our names.  So if that were to change, I think that it's likely that -- and I think it's inherent in the license, that it does expire.  I think the provisional nature of recognition is unhelpful, and it would be more helpful for them to be permanent, so that OFAC can grant broader and greater licenses to us as the provisional liquidators in order to do what we need to do to stabilize that business.

Q.   But the provisional versus permanent nature, that's a BVI issue, right?

A.   What I was referring to there was the provisional versus permanent recognition.  Our appointment as provisional liquidators



MAGNA
LEGAL SERVICES

Page 125

versus full liquidators, is a BVI matter, yes.

Q.    Let me ask you this:  Have you gotten any other sanctions licenses since the provisional relief order was entered?

A.    I think it was obtained the day before.  I would have to check.

Q.    Are you aware of any, as we sit here today -- withdrawn.  You just answered that question.  We can go look at the licenses in a minute.

To the best of your knowledge, has having the provisional relief order made it any easier for you to interact with sanctions authorities in the United States?

MR. DUNNE:  Objection to form.

A.    It's difficult to assess.  The engagement is ongoing between Sullivan & Cromwell and OFAC.  I think that -- what I've tried to explain is that the permanent relief will be helpful and a greater framework from which OFAC can then give us the broadest licenses that we need in order to properly save this underlying cigar business.



26-10769-mg    Doc 49-17    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 17 -
Transcript of May 13    2026 Deposition of P. Pretlove    Pg 127 of 300

Page 126

Q.   And how much broader could the licenses be than what you have right now?

A.   There are some definitions and terminology in the license that I think could be clarified and could go further than it does.  And I think there are blocks of funds that it would be helpful to the underlying business to be able to release in order to freely and properly conduct its business.

And then there is ongoing developing sanctions framework and regimes, including Cuba.  So I think there is more that's needed and by getting the full recognition, I believe that it will enable me to get what I need to get from OFAC to save this underlying business and maximize the asset value within that business.

Q.   And by "the underlying business," you are referring to the cigar business?

A.   Yes, sorry.

Q.   And what is that belief based on?

Why do you think it's going to be better after permanent recognition than it was back in February or March, when you first



Page 127

started interacting with OFAC or when

Sullivan & Cromwell did on your behalf?

A.   I just believe that it's a better

framework and basis for OFAC to operate from

and can give them the confidence to grant us

wider reaching licenses that will enable us

to do everything that we possibly can and

need to do to salvage the underlying

business.

          Before I came in as provisional

liquidator, the underlying business had filed

in December 2025, I believe, a pre-insolvency

filing in Spain.  And had it not been for our

appointment, I'm certain that the cigar

business in Spain would have failed.  It

would have gone into full insolvency.  It

would have collapsed and its asset value

would have been little more than its cash

back.

Q.   Why are you certain of that?

A.   The company, in making the filing,

had a third-party insolvency firm appointed

as this pre-insolvency co-officer, and from

my correspondence and dealings with them, my



Page 128

understanding is that their view is that part of their job was to value and analyze the value of the business. And if it would have continued into that Spanish insolvency truancy process, then the value would have been hundreds of millions of dollars, the amounts that were held in cash back.

Q. How did your appointment change that?

A. So by obtaining the OFAC specific and general licenses that I did, that's enabled the releasing of funds, payments have been able to be made in order to recommence operations somewhere closer to what they were prior to the sanctions in October 2025.

Q. How long do those licenses last for?

A. I can't remember -- I think it's around about five years.

Q. Have you taken any steps to try to sell the objecting debtors' interest in that the Allied Cigar Corporation?

A. No.

Q. There weren't any bids solicited or



Page 129

received?

A.   There has not been any bids solicited.  There have been approaches from a number of interested parties who have expressed an interest in the business, in various ways, whether to provide finance or ultimately to purchase what's ultimately Simply Advanced's shareholding in this structure.  I've had various discussions with people about that, and some of that is the subject of nondisclosure agreements.

But my job and my focus in this respect has been to try to stabilize operations, prevent it from going into that full Spanish insolvency process, which I have done.  I have prevented that.  And I have enabled a level of resumption of manufacturing and distribution that has seen the business start to stabilize, start to return to levels prior to October 2025.

So going forward, if I get the full recognition, I think that's only going to help me get greater relief to do more things with that business and get it fully



MAGNA
LEGAL SERVICES

Page 130

stabilized and fully back to its previous health.

Q.   Why do you need recognition in the United States to do that?

A.   I think that that will give comfort and the appropriate framework to OFAC in order to develop this license, we've already had four iterations of the license, and we need that general license to be broader and we need more relief from OFAC so that we can stabilize and maximize the value of that business and the underlying asset.  And I believe the Chapter 15 would give me that platform to do that.

Q.   Do you have the authority to sell the objecting debtors' interest in that asset now, under the existing OFAC licenses?

A.   I don't think that selling that interest in that business falls within my current powers.  I would need to go to the BVI court to get a power to -- and permission to sell that business.

Q.   If you had that authority, is it permitted under the OFAC license that you


MAGNA
LEGAL SERVICES

Page 131

have?

          MR. DUNNE:  Objection to the extent
     it calls for a legal conclusion.

     A.    To be honest, I'm not sure.  I
don't think it does, but I'm not sure.

     Q.    Broadly speaking, in your role as a
JPL, what's your objective with respect to
the cigar business?

     A.    My key objective is to stabilize it
and make that business as valuable as I
possibly can.

          Prior to October, when the
sanctions were made, it was operating at pay
level.  And ever since then, they haven't
been able to distribute product in the way
they had.  They haven't been able to
manufacture product in the way they had.
They have been running down stock levels, and
my current understanding is that there is a
small amount of stock that remains.

          So my objective is to get the
business operating as close to normality pre-
October as possible, make it as profitable as
it was, make it as operational as it was,



Page 132

have it manufacturing cigars in the way that it was previously.

Q.    Have the minority shareholders in the cigar business offered to buyout the objecting debtors' interest?

MR. DUNNE:  Objection.

A.    I mentioned before, we've had a number of approaches from various parties that have expressed interest in the operations of the business.  And in our role, and as per that, there have been nondisclosure agreements that have been entered into which make it difficult for me to say precisely what the situation is there.

I think it's fair to say that I have had discussions with the minority shareholder about my appointment, but.  I'm probably limited in what more I can say about that.

Q.    Obviously, if this runs afoul of a nondisclosure agreement, let me know.

But when is the last time you had communications with the minority shareholders in the Allied Cigar business?



Page 133

A.   With them or their representatives, I would say within the last week.  So I have legal representatives in BVI, U.S., elsewhere.

Q.   Your declaration, at the beginning in paragraph 3, says that the facts set forth are based upon your personal knowledge, your review of relevant documents, and information supplied by others.

I'm just going to clarify.  Is there anything in this declaration that was based on your personal knowledge or is this kind of everything based on information that's been provided to you by others?

Let me withdraw that and make it a little fairer.  We will take it section by section.

The first section on page 3, professional background and experience.  I'm assuming this includes some of your own personal knowledge.  Is that fair to say?

A.   Yes.

Q.   The next section that talks about the debtors and the Prince Group, is any of



Page 134

that based on your personal knowledge or is all of this on information that you received from others?

MR. DUNNE:  Objection.

A.    I'm not sure of the legal distinction as to what is personal and what's been obtained by others.

The way I'm thinking about it is, as you described, the things about me and my background and my experience is obviously my personal knowledge.  And the things that are set out in that section are things that prior to my appointment on the 9th of January, or in the lead up to my appointment, I've learned from my involvement in this case.

So in that regard, there are things I've learned in relation to my appointment, these are things I've collected from -- obviously, information I've collected from documents and investigations and things I have done as a liquidator, if that makes sense.

Q.    With respect to the next section, it describes the criminal investigation and



sanctions.

Is this all based upon what you've reviewed in the indictment, the forfeiture complaint, and the other public documents put out by the U.S. government?

And I should also add the U.K. government, since it talks about U.K. sanctions too.

A.   Yes.  I think that's generally a fair summary of where I gleaned this information from.

Q.   This is also information that's been provided to the court in BVI, right?

A.   So as the initial application for my appointment, there was an ex parte, there was a return date where my appointment was confirmed, and then there was the full liquidation application hearing on the 16th and 17th of April, it was adjourned, and a number of documents and things have been submitted to the court in the meantime.

And I do recall that the judge at the hearing on the 16th and 17th, was referring to these documents and the



MAGNA
LEGAL SERVICES

26-10769-mg    Doc 49-17    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 17 -
Transcript of May 13    2026 Deposition of P. Pretlove    Pg 137 of 300

Page 136

forfeiture process and steps that have been taken.

So, yeah, I do believe that these in particular are in the possession of the court.

Q.    Are you aware that Mr. Chen Zhi has put filings into the court in the Eastern District of New York, pointing out what he believes to be some errors with respect to photographs that were included in the indictment and claims the government made about those photographs?

A.    Yes.  I think I've seen a letter from Boies Schiller, yourselves, which I think was addressed to the U.S. court, that describes what you just mentioned.

Q.    And the explanation was that some of these pictures, when they're put into a reverse image search on the internet, show that the photographs originated in places different from where the government says they came from.

Is that fair to say?

A.    Yes, that's my understanding.



Q.    And were you aware of those allegations by Mr. Chen Zhi when you submitted your declaration?

A.    I can't remember when I became aware.

Q.    You filed a declaration on April 8, right?

A.    Yes.

Q.    And you don't recall if you knew before or after you filed a declaration about the filings that Chen Zhi had made in the Eastern District with respect to the photos?

A.    I've definitely seen those letters from Boies Schiller.  I can't recall precisely when I saw them or when I read them.

Q.    Is it fair to say it's not included in this declaration, right?

A.    No, I don't think I do cover that in here.

Q.    You don't know whether you knew it at the time you filed this or not, right?

A.    I have to check my records.

Q.    Have you taken any steps to update



Page 138

the BVI court with respect to the issues with photographs in the indictment?

A.    No, I don't think I have.

Q.    You haven't filed any supplemental declarations in the court in New York, updating that court with respect to the issues with those photographs, right?

A.    No.

Q.    Do you have any plans to do that?

A.    It's something that I can consider with Sullivan & Cromwell as my lawyers, as to what my obligation to do that would be.  But as far as I'm concerned, I've been appointed as liquidator in the BVI court and my role is to identify, preserve, investigate, concerning the assets of the companies, and that's what I was primarily focused on.

The criminal action against Chen Zhi isn't a primary responsibility of mine or something that I'm particularly charged with addressing.

Q.    But you have communication obligations with the BVI Attorney General, right?



A.   Yes, under the order of my appointment and the protocol.

Q.   And have you had any communications with the BVI Attorney General about the problems with the photographs in the U.S. indictment?

MR. DUNNE:  I will instruct you not to answer that.

MR. SKINNER:  Can I ask for basis.

MR. DUNNE:  Yeah.  Privilege and -- common interest privilege and litigation privilege.

Q.   Prior to your appointment as provisional liquidator, have you had any communications with United States law enforcement agencies?

A.   No.

Q.   Since your appointment as provisional liquidator, have you had any communications with the United States law enforcement agencies?

A.   No.

Q.   Have you had -- I know you had communications with OFAC, correct?



Page 140

Well, I should say, Sullivan & Cromwell on your behalf had communications with OFAC, correct?

A. Yes, that's correct.

Q. Are you aware of any communications with any other U.S. government entity on your behalf other than OFAC?

A. Yes.

Q. Okay. And what are those?

A. I believe the conversations have been held with the Department of Justice. I can't think what other government agencies.

Q. When were conversations had with the Department of Justice?

A. I don't know precise dates, but I think it's been from time to time.

Q. And it's been since your appointment as provisional liquidator in the beginning of January?

A. Yes.

Q. Did you have any trouble, you or your representatives collectively, have any trouble communicating with the Department of Justice prior to the entry of the provisional



Page 141

relief order in this case?

            MR. DUNNE:   Objection to form.

      A.   The discussions have been directly
between Sullivan & Cromwell and those
departments.  I wasn't involved in those
discussions.  I wasn't there.  And I couldn't
say specifically what was discussed and the
efficacy of those conversations either before
or after recognition.

      Q.   So your lawyers have been talking
to the Department of Justice, but you don't
know any of the details?

      A.   Yes, I think that's right.

      Q.   Do you know when they spoke to the
Department of Justice?

      A.   I don't know precisely when those
discussions were had, but I think it's been
from time to time.

      Q.   Do you know what specific offices
within the Department of Justice they've been
talking to?

      A.   I don't.

      Q.   What about the FBI?  Do you know if
your representatives have had any



Page 142

conversations with the FBI?

A.    I can't recall.

Q.    So other than the U.S. Department of Justice and the BVI Attorney General, have you or your representatives been in contact with any other government agencies anywhere?

A.    Yes.

Q.    Which ones?

A.    I think they might be listed in my declaration.

Q.    Okay.  Maybe paragraph 48.

A.    Thank you.

Q.    Well, you tell me if this is what you were thinking of.

A.    That is precisely, yes.  So each of those there.

Q.    Are you aware of any other government agencies that you have -- and I say "you," you or your representatives -- been in contact with, other than what's included in paragraph 48?

A.    Strictly speaking, I would say the FCDO in the U.K., to the extent that's not OFSI.


MAGNA
LEGAL SERVICES

Q.    And that's a British agency that deals with sanctions in Great Britain?

A.    Sorry.  Yeah.  So the OFSI covers the U.K. and the FCDO, essentially the foreign office in the U.K. covers Cayman and BVI, amongst other foreign U.K. territories.

So discussions about sanctions, licenses with OFSI in the U.K. have also extended to Cayman and BVI.  And so that's where it's traversed into being the FCDO rather than OFSI.

Q.    Got it.

Anyone else, other than what we've just mentioned?

A.    No.  I think that's the extent of it, paragraph 48, those I mentioned.

Q.    In the petition, at the beginning, it says -- we can go back to it, if we need to, I will read it to you for now.

Following years of reporting by various news outlets and human rights agencies on forced labor and scam compounds in Cambodia with alleged ties to the Prince Group, authorities in multiple jurisdictions



26-10769-mg Doc 49-17 Filed 05/21/26 Entered 05/21/26 15:29:05 Exhibit 17 -
Transcript of May 13 2026 Deposition of P. Pretlove Pg 145 of 300

Page 144

have launched formal criminal investigations
into the Prince Group and its controlling
stakeholder.

What reporting were you referring
to there?

A. Which document?

Q. That's No. 3, I think. And this
would be paragraph 2.

A. Exhibit 4. Paragraph 2.

Q. Four, sorry about that.

A. Yeah. I think that reporting was
by various news outlets. I don't know
specifically which ones.

Q. Are you familiar with reporting
that was done by Radio Free Asia and a
reporter named Jack Davies?

A. I don't recall that.

Q. You don't recall if that's included
within the scope of the report you are
referring to there?

A. I don't.

Q. Would you agree with me that the
indictment in the Eastern District of New
York doesn't reference any of the Boies



MAGNA
LEGAL SERVICES

Page 145

objecting debtors by name?

A.    I'm not sure.  I don't think so, but I think there is reference in there to BVI holding companies, for example, from memory.

Q.    And is it your understanding that BVI holding companies, as referenced in the indictment, would include some of the Boies objecting debtors?

A.    I think so, yes, because accompanying the complication of that indictment, there was commentary from the U.S. and U.K. government and they talk about, for example, the Fenchurch Street property in London that Noble Title owns, as an example.

Q.    But that was in the sanctions information, correct?

A.    Yes.

Q.    I'm just focusing on the criminal allegations right now.

Are you aware of any criminal allegations that specifically reference any of the Boies objecting debtors?

A.    I can't recall and I'm not sure.



MAGNA
LEGAL SERVICES

These are criminal proceedings that I am obviously aware of and I have seen certain documents in relation to them, but I couldn't say specifically which entities are mentioned and cross-reference them to the 25 Boies Schiller objecting parties.

Q.   Would you agree with me that as of this date, no U.S. court has found any of the Boies objecting debtors guilty of any crimes?

A.   That's my understanding from the U.S. perspective, yes.

Q.   And from a U.S. court perspective, none of them have been found liable in a civil court for any civil misconduct, correct?

A.   I'm not aware of any.

Q.   And Chen Zhi hasn't been found guilty of any crimes right?

A.   In the U.S.?

Q.   In the U.S.

A.   My understanding is that the criminal proceedings are still ongoing.

Q.   In the verified petition --

MR. SKINNER:  I'm sorry, I'm doing



Page 147

a very poor job of keeping the exhibit
numbers straight.

We marked this as 2?

MR. BRESSMAN: 4.

MR. SKINNER: We marked this as 4?
Seriously. The verified petition. Oh,
that's the one we marked late.

Q. So Exhibit 4, paragraph 11. You
say, The authorized foreign representatives
and S&C have investigated the organizational
structure of the Prince Group and its
subsidiaries, directors, and assets.
Correct?

A. Correct.

Q. What investigation did you and S&C
conduct?

A. We have sought information from the
companies' directors, people associated with
them, the registered office, and we've
conducted public information searches about
entities within the structure.

We have spoken to people connected
or formerly connected with subsidiaries and
collected information from them. And as



Page 148

we've done since January, we pieced together
what we believe the organizational structure
to be.  But it's not complete.  Our
investigations are still ongoing.

We don't have the complete picture
of what this organizational structure was
like and what all of the assets were.

Q.   Other than what you just described
to be done, any other investigation?

A.   We've done investigation into
specific assets and trading businesses.  I
think broadly that summarizes the
investigations we have done so far.

But it's continuing.  There is more
to do.  And I think the Chapter 15
application is a big part of that.

Q.   How?

A.   I think it will give us the ability
to seek information from people or in
relation to people that haven't been
cooperative to date.

Q.   Any other way?

A.   I think it will give us an ability
to seek information from financial



MAGNA
LEGAL SERVICES

Page 149

institutions in the U.S. that will help us identify the financial affairs of the companies and any potential assets or claims that might exist from the U.S.

Q.    Anything else?

A.    I can't immediately think of anything else to list as part of that.  Our investigations are pretty broad, all over the world and continuing.

Q.    As a result of these investigations, are you cataloguing assets that you find?

A.    Yes.

Q.    Are these kind of listed in a document someplace?

A.    We -- as part of the liquidators' records, we keep a register of the assets that we've identified and leads to discovering further information about each of the liquidator companies.

Q.    Have you acquired any new assets on behalf of any of the debtors?

A.    Not the debtors, no.

Q.    Have you acquired assets on behalf


MAGNA
LEGAL SERVICES

Page 150

of anyone else?

A.   No.

MR. SKINNER:  Why don't we take a
quick break.  I think we are basically
at the end of my questioning and then
Kobre Kim can ask their questions.

But let me just talk to my
colleagues and I'm sure I missed some
things.  So I'll have a couple and then
I can hand over the baton.

THE VIDEOGRAPHER:  The time is
2:32 p.m.  Going off the record.

(Recess.)

(Pretlove Exhibit 7, Insolvency
Act, marked for identification.)

THE VIDEOGRAPHER:  The time is 2:48
p.m.  Back on the record.

BY MR. SKINNER:

Q.   So Mr. Pretlove, let me draw your
attention to a document we've marked as
Exhibit 7, and ask you to turn to pages -- it
looks like the pages are up in the -- it
doesn't look like it has page numbers.

MR. DUNNE:  Are the pages up at the



MAGNA

LEGAL SERVICES

Page 151

top?

MR. SKINNER: Okay. We have the ECF pages.

Q. Can you go to page 32 of 284.

A. Yes.

Q. Do you see there in paragraph 8, there is a definition of the word "insolvent" under the Act?

A. Yes.

Q. The question is, do any of the Boies objecting debtors fit within that definition of insolvent?

MR. DUNNE: Objection to form, calls for a legal conclusion.

A. Simple question, complicated answer. But I think that it's fair to say that to the extent any of these entities are -- have assets that could meet liabilities, and where they've been sanctioned, I would suggest they could fall within the category in 8(c) -- 8(1)(c)(2), that the company's unable to pay its debts as and when they fall due.

Q. Okay. And that's as a result of



Page 152

sanctions?

A.    Yeah, quite possibly.  It depends on each company in terms of what its asset position is and what its liability position is.  And unfortunately, none of the 25 or the 30, actually, have completed a statutory requirement to submit to me a statement of affairs, a statement of assets and liabilities.

Q.    So I guess -- you just actually don't know, then, based on your current information whether they fit in that category or not but they could?

A.    They could and based on what I've seen so far and the fact of the sanctions and the inability of these entities to move funds in U.S. denominated accounts or in the U.S. or from the U.K. means that they're pretty hamstrung and they would not be able to meet their debts as in when they fall due.

Q.    Are you aware of any specific examples of any of the debtors not being able to meet their debts as and when they fall due?



Page 153

A.    In the case of Noble Title, which is -- on Exhibit 1, number 11, it is unable to meet its debts as when they fall due. There is a debt due to Regent Gas, for example, who my understanding is yesterday they obtained access to the property and cut off the gas supply and caused damage to the building, whilst removing all of the gas fittings for the entirety of the building.

It's a substantial commercial property and what's been done there is -- well it's being looked by the lawyers, but I think there has been damaged caused to the building.

Q.    Are you aware of any other examples?

A.    None as clear as that.  I think that's the clearest example of a company not being able to pay its debt when they fall due.

Q.    And with Noble Title, it's not that they don't have money to pay its debt, it's that the money has been frozen so they can't make the transfer.  Is that fair?



Page 154

A.    That's right.  So that falls within the definition in my view, 8(1)(c)(ii).

MR. SKINNER:  I'm waiting to see if I have another question on this before we move on to a different topic.

Thank you.

Q.    Could you direct those bills to be paid by the debtors?

A.    No, because of sanctions.

Q.    Mr. Pretlove, in your declaration, in paragraph 3 -- not paragraph 3.

In paragraph 9 and then footnote 3, you identify instances where you've served as a liquidator and foreign representative; is that correct?

A.    Yes, that's correct.

Q.    Other than what you've listed here, are there other instances where you have served as a liquidator and foreign representative in a Chapter 15 proceeding in the United States?

A.    My belief and recollection is that that is the extent.  I did have some searches conducted to make sure that was as


MAGNA
LEGAL SERVICES

Page 155

comprehensive as possible, and I believe that is the full extent.

Q. Okay. And a few more questions.

We talked earlier about creditors in the BVI proceedings. I just want to clarify a few points on that.

At this point, you are not authorized to share information with any creditors, correct?

MR. DUNNE: Objection to form.

A. That's not how I would summarize it.

Q. How would you summarize it?

A. I have no obligation to provide information or report to creditors. But depending on the circumstances, I would be able to share certain details or aspects of the liquidation with creditors, if the need arose and if that information wasn't subject to confidentiality restrictions or the court's seal, because these proceedings are sealed in the BVI.

So there are things, for example, if a creditor contacts me and asks me for



Page 156

details of my appointment, I would be able to
provide them details of how, when I've been
appointed, et cetera.  So I am free to share
certain things with creditors.

    Q.    But that hasn't happened, has it?

    A.    There have been creditors that made
contact and information has been shared with
them or their legal advisors, yeah.  Not in
every single one of the 30, but in some of
them.

    Q.    Are creditors at this time allowed
to form a creditors committee?

    A.    I think it's something that could
be mandated by the court.  But right now, I
don't think there is a mechanism or ability
for a creditors committee to be formed in a
provisional liquidation.

    Q.    And in the provisional status that
we are in right now, you can't allow
creditors to cast a vote in any kind of
creditor gathering, correct?

        MR. DUNNE:  Objection to form.

    A.    I would say it depends, really.  It
depends what is arising and what I want to



consult creditors with and seek their views on.  I think it's possible, depends on the circumstances.

Q.  Would you have to go back into BVI court to get the authority to do that?

A.  Depending on what it is, possibly. But I might be able to seek views from creditors about issues arising.  I think I would need court permission to do that.

Q.  But you cannot make a distribution to creditors at this time, correct?

A.  That's correct for a number of reasons, yeah.

Q.  And I believe we may have covered this before, but just to be clear.

At this time, nobody has been recognized as a creditor yet, correct?

A.  I would say that no one has been adjudicated as a creditor, yeah.

Q.  You can't adjudicate a creditor yet because we are not in the liquidation proceeding yet, correct?

A.  I would say it's more that we haven't made asset realizations and we are



Page 158

not in a position to declare or make a
distribution to creditors.

I think that there is a possibility
to go back to the BVI court, seek direction
on certain issues.  I think that given the
example I gave earlier with Noble Title, if I
was able to get sufficient relief from OFAC
and OFSI, I might be able to use funds within
bank accounts to pay liabilities of Noble
Title, in relation to the buildings -- of the
gas people, for example, that I mentioned.
But at this point in time, no, I'm not able
to do that.

Q.    So those are things that could
happen, but they haven't happened yet and you
would have to go back to the court in order
to do that?

A.    And in that last example I gave, I
wouldn't need to go back to the court.

Q.    So I guess I asked a compound
question.

None of these things have happened
yet, correct?

A.    That's right, yeah.



Page 159

MR. SKINNER:  Okay.  I think we will cede the mic over to our colleagues from Kobre Kim.

I just want to make a record that from our perspective, we are going to keep the deposition open, pending resolution of some issues with respect to documents that we've requested.

There may come a time in the future, Mr. Pretlove, when we have some additional questions for you, since we are keeping the deposition open.  But for now, I'm going to hand the microphone over to my colleague.

MR. DUNNE:  And we've agreed to reserve rights on that.

EXAMINATION BY
MR. BRESSMAN:

Q.  Good afternoon, Mr. Pretlove.

A.  Good afternoon.

Q.  My name is Jeremy Bressman, I'm from Kobre Kim.  I represent the objecting debtors, Amber Hill Ventures Limited, and Lateral Bridge?



MAGNA
LEGAL SERVICES

I know you've had a bunch of questions already from Mr. Skinner.  I will do my best not to repeat questions.  I'm going to go over some of the same topics.  Bear with me a bit, there may be some repetition, but only because I need to get back to things we covered earlier in the deposition.  Is that okay?

A.   Yes, fine.

Q.   So you testified earlier that you've been appointed as one of the three joint provisional liquidators for 30 entities in the BVI; is that right?

A.   Yes.

Q.   And one of those entities is called Amber Hill Ventures Limited; is that right?

A.   Yes.

Q.   And if I refer to that as "Amber Hill" you will understand what I'm referring to?

A.   Absolutely.

Q.   Another entity is called Lateral Bridge Global Limited; is that right?

A.   Yes.



Page 161

Q.   And if I refer to that as "Lateral Bridge," you will understand what I'm referring to, right?

A.   Yes.

Q.   The proceedings in the BVI, it's not one consolidated proceeding for all 30 entities; is that right?

A.   That's my understanding.

Q.   You're understanding is that it's 30 separate proceedings, one for each of the 30 entities?

A.   Yes.

Q.   And you've been appointed a joint provisional liquidator in each of those proceedings?

A.   Yes.

Q.   And I take it from your testimony earlier, that this is not your first time serving as a liquidator or provisional liquidator in a BVI liquidation proceeding; is that right?

A.   That's correct, yeah.

Q.   Is it fair to say that you have some understanding through this work of the


MAGNA
LEGAL SERVICES

Page 162

BVI Insolvency Act?

A.    Yes.

Q.    You agree that Amber Hill and Lateral Bridge are not part of the so-called Prince Group; is that right?

MR. DUNNE:  Objection.

A.    I wouldn't say that I agree.

Q.    Do you think they are part of the Prince Group?

A.    My understanding is that the indictment that was made against Chen Zhi references Amber Hill and Lateral Bridge, and the management and/or directors of those entities, and describes them as co-conspirators in what is described as the Prince Group transnational criminal organization.

Q.    And you say that's in the criminal indictment against Chen Zhi?

A.    In the forfeiture complaint that accompanies the indictment.

Q.    Are those in the same proceeding, to your knowledge?

A.    I don't know.



Page 163

Q.   Can you turn to what was previously marked as Pretlove 3, which is your declaration.

Do you have that in front of you?

A.   Yes.

Q.   Do you mind turning to page 4, paragraph 12.

A.   Yes.

Q.   And I'm going to read, follow along with me.

The U.S. Department of Treasury has identified 20 of the debtors as part of the so-called Prince Group.

Do you see that?

A.   Yes.

Q.   And just to go back for a second.

This is a declaration that you wrote -- that you signed under penalty of perjury; is that right?

A.   Yes.

Q.   That was on April 8, 2026?

A.   Yes.

Q.   And do you still believe everything in here is true and correct?



Page 164

A.   Yes.

Q.   So let me turn back to paragraph 12, if you will.

The U.S. Department of Treasury identified 20 of the debtors as part of the so-called Prince Group, the remaining two debtors -- do you see that on the next sentence?

A.   Yes.

Q.   And then it says, Amber Hill Venture Limited, (Amber Hill), and Lateral Bridge Global Limited, (Lateral Bridge), are not the subject of the sanctions designations.

Do you see that that language?

A.   Yes.

Q.   So would you agree with me that in paragraph 12, you distinguish Amber Hill and Lateral Bridge from the other 28 debtors, which you called part of the so-called Prince Group?

MR. DUNNE:  Objection.

A.   In terms of sanctions designations, yes.



Q.   You agree that Amber Hill and Lateral Bridge are not sanctioned entities?

A.   That's my understanding, yes.

Q.   They are not sanctioned in the United States?

A.   That's my understanding.

Q.   And they're not sanctioned in the United Kingdom?

A.   Not to my knowledge.

Q.   Are you aware of them being sanctioned anywhere in the world?

A.   No.

Q.   I want to turn back to the topic of the property that we were discussing before, that you were discussing with Mr. Skinner.

A.   Okay.

Q.   You had identified, and tell me if I got your testimony wrong because this was a little bit earlier.  But I just want to -- let me state what I had down.

You said that there was the assets of the debtors were the Sullivan & Cromwell retainer, potential claims that you were investigating, and then you had identified an



Page 166

investment of some entity called Oriental

Charm and another entity called ClinChoice.

A.    Yes.

Q.    And that is what you had

categorized as the property of the debtors in

the United States?

A.    I think that's right, yes.

Q.    Anything else, to your knowledge?

A.    Nothing more than I said earlier.

MR. BRESSMAN:    Can we get out tab

26.

I will pass a copy through your

counsel.    This is -- we are going to

identify for the record as Pretlove 8,

here are two copies for you.

(Pretlove Exhibit 8, Responses and

Objections to Interrogatories, marked

for identification.)

Q.    Take a moment to read it and let me

know when you are ready.

A.    Yes.

Q.    Do you recognize this document?

A.    Yes.

Q.    What is it?



Page 167

A.    It's responses to objections to what we are calling Amber Hill and Lateral Bridge, in the first set of interrogatories to me and the other joint provisional liquidators.

Q.    Do you know what interrogatories are in litigation practice?

A.    Broadly, yeah.  I struggle to define it, but, yeah.

Q.    I'll just -- broadly speaking, a question that we've posed to you.

A.    Yeah.

Q.    This is signed -- if you look at last page, is signed by Mr. Dunne, your counsel.  Is that right?

A.    Yes.

Q.    You've had a chance to review them now.  Do you -- having read them, can you verify they're accurate?

A.    Yes.

Q.    I'm going to turn to Interrogatory No. 1, it sort of starts on the bottom of page 5.

This is the responses, but you can



Page 168

turn to the top of page 6, that's where the response starts.

It says -- the request was, identify all property, whether tangible or intangible, that you contend is located in the United States and in which you contend that Amber Hill has an ownership or other beneficial interest.

Do you see that?

A.    Yes.

Q.    And I will represent to you that we asked the same question for Lateral Bridge, which is Interrogatory No. 2, and that I will also represent to you, just so we don't have to repeat this, that the response for both was the same except for the words Amber Hill or Lateral Bridge.

A.    Yes.

Q.    So it says here, Subject to and without waiving any objections -- you see where I am at about five lines down?

A.    Yeah.

Q.    The authorized foreign representatives states that Amber Hill has a



Page 169

rateable interest in the advance payment

retainer of $25,000 held by Sullivan &

Cromwell.

        And then go to the next line.  The

authorized foreign representatives states

that the debtors may have an interest in

other property located in the United States,

including Bitcoin that is the subject of the

civil forfeiture action captioned United

States versus approximately 127,231 Bitcoin,

et cetera.

        Do you see that?

    A.   Yes.

    Q.   And claims against the participants

in the fraudulent scheme alleged in the

forfeiture action and the indictment of the

United States versus Chen Zhi.

        Do you see that?

    A.   Yes.

    Q.   Other than what you previously

testified about and what you see here, are

you aware of any other property belonging to

either Amber Hill or Lateral Bridge in the

United States?



Page 170

A.   No, I'm not.

Q.   We talked about -- you talked about the retainer for -- in some length with Mr. Skinner, I had just a few follow-up questions on that.

So you said that the money came from Interpath's account.  Was that your operating account?

A.   Yeah, I think that's a fair summary.

Q.   It was money that belonged to Interpath before it was paid --

A.   Yes --

Q.   -- into the client trust account, correct?

A.   Yes.

MR. DUNNE:   Just let him finish the question.

Q.   And that was paid on April 7, 2026?

A.   Sorry.  What was the question again?

Q.   The retainer payment was made on April 7, 2026; is that right?

A.   I can't recall off the top of my



MAGNA
LEGAL SERVICES

Page 171

head.

Q.   Do you mind turning to page 7 and looking into the response to Interrogatory No. 4.

A.   Yeah.

Q.   Do you see there it says, The authorized foreign representatives state that the advanced payment retainer was paid to Sullivan & Cromwell, LLP on April 7, 2026?

A.   Yes.

Q.   Does that refresh your recollection as to when it was paid?

A.   Yeah.  I've got no reason to doubt that that's when it was received.  It was obviously transmitted from the U.K. to the U.S.  So when it was sent, when it was received, it was around about them.

Q.   So whether April 6 or April 7 --

A.   Yeah.

Q.   Let's just say on April 6 the money belonged to Interpath and then it was transferred to the client trust account, and your contention now is that it belongs to the debtors?



Page 172

A.   Yes.

Q.   And you said before in response to a question from Mr. Skinner, that it was something like an advance on expenses.

Is that how you had characterized it?

MR. DUNNE:  Objection.

Q.   I don't mean to put words in your mouth.  Why don't he redescribe for me how you would characterize that payment.

A.   I would describe it as a retainer payment to Sullivan & Cromwell.

Q.   I understand that part.

But this was a payment that Interpath, the entity for which you are employed, was making on behalf of the debtors; is that right?

A.   I would say it's a necessary expense of the liquidations that needed to be paid.  There's no funds within the liquidation estates.  So Interpath has had to step in and make that retainer payment.

Q.   You have not as of yet realized any assets from any of the 30 debtors, right?



MAGNA
LEGAL SERVICES

Page 173

A.   That's correct.

Q.   So you don't have access to any assets from which -- of the debtors from which you can make that payment?

A.   That's right, yeah.

Q.   But Interpath -- did Interpath gift the money to the debtors?

A.   I wouldn't describe it as a gift.

Q.   Would you describe it as a loan?

A.   I wouldn't describe it as a loan either.

Q.   Would you say that Interpath is entitled to reimbursement of that amount --

A.   Yes.

Q.   -- in the event that assets are realized?

A.   Yes.

Q.   Is there any documentation between Interpath and any of the debtors regarding that payment?

MR. DUNNE:   Objection.

A.   This is a payment that was necessary to be met within the liquidation estate; and, therefore, as the liquidator, I



Page 174

sought that Interpath makes that payment.

So the correspondence is between me, as the provisional liquidator, and Interpath, as a firm.

Q.    Did you do that in your capacity as working for Interpath or in your capacity as managing the debtors?

A.    In my capacity as joint provisional liquidator.

Q.    You stated before that the -- to your knowledge, the retainer payment is still sitting in the client trust account at Sullivan & Cromwell; is that right?

A.    Yes, that's my belief.

Q.    And is it your understanding that if that retainer is not drawn upon by Sullivan & Cromwell, that it would be returned because Sullivan & Cromwell hasn't done enough work to earn that amount?

MR. DUNNE:    Objection.

A.    It depends.

Q.    What does it depend on?

A.    So if I make an asset -- or asset recoveries within the liquidation estates and



Page 175

I draw my expenses at 100 percent, as the BVI court has ordered, and then Interpath would have been repaid.

Q.   I don't think that answered my question.

My question is, if for some reason Sullivan & Cromwell did not draw against that amount and it needed to be returned because it's sitting in a client trust account, then at that point it would be returned to Interpath?

A.   I think given the answer that I just gave, it really depends.  If I've drawn from the assets of the companies, my expenses, including repayment of that amount that was advanced, then that retainer is not going to get returned to Interpath because it's already been reimbursed.

Q.   Understood.

And what happens, hypothetically, if you had not drawn your expenses from any of the other entities?

A.   I'm just struggling with the hypothetical nature of it.  I don't know.  It



Page 176

depends on what the circumstances are at the time.

Q.   Maybe I can ask it in another way and see if it helps you at all.

I'm trying to understand the money sitting in the client trust account, if for some reason it needed to be returned, right? -- because Sullivan & Cromwell hadn't done enough work to draw against it, and you hadn't -- Interpath had not been reimbursed, would the money be reimbursed to Interpath?

Is that your understanding?

A.   I'm not sure.  I would have to -- it depends where we get to and what is being faced and why.  There are so many hypotheticals that I think it's quite hard for me to categorically say this thing will happen, this thing will happen, subject to so many different caveats, I'm struggling to frame a helpful reply.

Q.   Would it be returned to any of the debtors, in one of your hypotheticals, you said there are a bunch of different situations out there.



26-10769-mg   Doc 49-17   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 17 -
Transcript of May 13    2026 Deposition of P. Pretlove    Pg 178 of 300

Page 177

I'm wondering under one of those situations, would it be returned to some of the debtors or one of the debtors?

A.   I don't really know.

Q.   So you don't have a good sense of where the money would go in that --

A.   No more than if an expense of the liquidations that needed to be met, much like the cost of the flight to get here. Interpath paid that, and it's an expense of the liquidation.

Q.   I see.

So you're treating it like if you -- you said you took a flight here or you stayed at a hotel, presumably, something like that.  Those are all costs that are being borne right now by Interpath.

This is similar also to you?

A.   That's how I would view it, and I think that's how my expectation is that the BVI court would view it.

I can't say I'm getting on a flight, that's chargeable to the estate, we will pay you, British Airways, at some point



in the future.  It has to be met -- it's an expense of the liquidation that has to be met, and Interpath has and does as a firm, when we are in these situations, step in and meet these expenses because they have to be paid.

Q.   So if you look back at page 6.  We read before right there in the middle, The debtors may have an interest in other property located in the United States, including Bitcoin that is the subject of the civil forfeiture action.

Do you see that?

A.   Yes.

Q.   That wasn't a type of property that you had mentioned earlier; is that right?

A.   I would --

MR. DUNNE:  Objection.  I thought he might have.  But go ahead, you can ask whatever you want.

A.   I would say that falls within my description of potential claims.

Q.   Can you describe for me what your understanding is of the interest of Amber



Hill and/or Lateral Bridge in the Bitcoin
that is the subject of the civil forfeiture
action?

A.   I can't at this stage of the
liquidation.  It's something that is still
being reviewed, investigated, and something
I'm still seeking advice on.  So at this
point in time I can't categorize precisely
what that claim is, but I think it's a
potential claim in the U.S.

Q.   You've been a joint provisional
liquidator of Amber Hill and of Lateral
Bridge for approximately four months; is that
right?

A.   Yes.

Q.   So based on your current
investigation and understanding, on what
basis could you bring a claim to seek some of
that Bitcoin -- some or all of the Bitcoin
that is the subject of the civil forfeiture
action?

A.   I'm not in a position at this stage
of the liquidation to specify exactly what
that claim is and what it looks like.  It's



Page 180

still something I'm investigating.  It's still something I'm seeking more information in relation to.

I mentioned earlier on today that one of the intentions of the Chapter 15 recognition is for me to go and get discovery from a U.S. financial institution that was closed in 2023, that will hold information pertinent to the movement of this Bitcoin and two financial transactions that were entered into Amber Hill and Lateral Bridge.

So once I have that information, that will be key to determining what those claims look like.

Q.   I got it.  So let me maybe summarize that for you.

As of now, you don't know if you have a claim against it, but you are hoping the discovery will help decide if that is property of those entities?

A.   I would describe it as the Chapter 15 would enable me to obtain more information that's going to complement my investigations that have been ongoing so far and help me



Page 181

firm up whether I have a claim and what that claim looks like.

Q.    Right.  I asked you before based on your investigation right now, what that claim would be, and you told me you don't know.

A.    I wouldn't say my answer is I don't know.  I think that it's just something that is ongoing.  I'm still investigating, still receiving information, still aiming to collect more information.

And much as the case here with these two entities, Amber Hill and Lateral Bridge, is the case with the other 27 companies, where no statement of assets and liabilities, no statement of affairs has been produced to me by the directors or management of those companies.  So I am significantly in the dark as to all the asset and liability position of what each of these companies is.

Q.    Is it your position that as a joint provisional liquidator of Amber Hill and Lateral Bridge who has received provisional relief in the U.S. through the Chapter 15 proceeding, that you have the ability to


MAGNA
LEGAL SERVICES

Page 182

already file claims, if necessary, against

any entities -- any persons, or entities over

any property?

          MR. DUNNE:  Objection.

     A.   I think it depends on what the

claim is, what the claim looks like, what

advice I receive from my lawyers.  It's

difficult to say.

     Q.   Okay.  Any reason why given the

provisional relief that you've obtained in

the United States, that you haven't --

meaning as a joint provisional liquidator on

behalf of Amber Hill and Lateral Bridge, have

not filed a claim already in the civil

forfeiture action, at least prospectively to

ensure that you don't lose out on the ability

to bring a claim?

          MR. DUNNE:  Objection.

          You can answer to the extent you

     can without revealing privileged

     information.

     A.   I would just say that I'm just

simply not in a position to assert claims

like that.  Like I've already describe, I'm


MAGNA
LEGAL SERVICES

Page 183

still investigating, still aiming to uncover
more information and have a better
understanding of the financial affairs of
each of Amber Hill and Lateral Bridge.

Q.   The last category, if you turn back
to the interrogatories, claims against
participants in the fraudulent scheme.

Do you see that?  That's at the
bottom of the response on page 6, bottom of
response 1.  About four lines up from the
bottom of that response.

Do you see that?

A.   Yes.

Q.   What is that referring to?

A.   The payment of the retainer to
Sullivan & Cromwell.

Q.   Sorry, I'm referring to -- do you
see where it says, Claims against the
participants in the fraudulent scheme alleged
in the forfeiture actions in the
indictment --

A.   I think I'm looking at the wrong
document.

MR. SKINNER:  It's on page 7, not



Page 184

page 6.  Top of page 7.

MR. DUNNE:  It's on both actually.
It's the same interrogatory.

MR. SKINNER:  You are talking about
the response in the middle?

Q.  Do you see that?

I want to make sure you are on the
right document obviously.

Do you see page 6 at the bottom?

A.  Yes.

Q.  And are you looking at the
responses and objections?

A.  Yes.

Q.  Do you see there at the bottom of
response 1, Claims against the participants
in the fraudulent scheme?

A.  Sorry, yes.

Q.  Now that we are in the same spot,
what does that refer to?

A.  I would say that that is the
subject of legal and/or litigation privilege
for me as liquidator in forming potential
claims against the parties.  So I don't think
I'm in a position to share any more



26-10769-mg  Doc 49-17  Filed 05/21/26  Entered 05/21/26 15:29:05  Exhibit 17 -
Transcript of May 13  2026 Deposition of P. Pretlove  Pg 186 of 300

Page 185

information about that.

Q.   I don't want you to disclose anything that is subject to privilege, to be clear.

But just so I understand, you are saying that what the claims are and who the claims against might be, that would all fall under legal privilege, that you can't disclose?

A.   I think so, yeah.  That's how I see it.

Q.   Do you have any understanding of what that might be, separate from communications you may have had with your lawyers?

A.   Is it possible to reiterate the question?

Q.   I'm just want to understand if your sole basis of knowledge of what these claims are is based on communications you had with your lawyers or based on information you received separate from communication with your lawyers?

A.   I think it's all enshrined within



Page 186

conversations with my lawyers.

Q.    You haven't filed any claims against anybody yet, right?

A.    No.

Q.    You testified before about this investment of Oriental Charm in ClinChoice?

A.    Uh-huh.

Q.    Oriental Charm, to your knowledge, is a different entity than Amber Hill or Lateral Bridge, right?

A.    To the best of my knowledge, yes.

Q.    Is that an asset, to your knowledge, that Amber Hill or Lateral Bridge had an interest in?

A.    At this point in time, I don't know.  I haven't established any interest of those entities in that investment.

Q.    So as of now, no?

A.    That's right.

Q.    And then earlier you testified about an entity called Simply Advanced.

A.    Yes.

Q.    And some assets that it might have.

A.    Yes.



MAGNA
LEGAL SERVICES

Page 187

Q.   So same questions.

Assets of Simply Advanced are not the assets of Amber Hill or Lateral Bridge; is that right?

A.   Again, yes, to the best of my knowledge and based on what I have seen so far, I have seen no connection between Amber Hill and Lateral Bridge and the subsidiaries of Simply Advanced.

Q.   You testified earlier that you believe that there was a bank account belonging to either Amber Hill or Lateral Bridge that was located in the United States; is that right?

A.   Yes.

Q.   And I believe earlier you said, I -- you had a suspicion as to where that bank account was.

Do you remember that?

A.   Yes.

Q.   Where do you think that's located?

A.   I believe that the account is located in the U.S.

Q.   At which financial institution?



MAGNA
LEGAL SERVICES

Page 188

A.    My guess and suspicion is that it's with Signature Bank and their Cigna platform.

Q.    And is that, to your knowledge, in New York?

A.    I don't know.

Q.    To your knowledge, are there any assets sitting in that account as of today?

A.    I don't know.  That's something I'm aiming to discover as part of the Chapter 15 process.

Q.    I think you testified earlier that it's your understanding that an account was closed around 2023; is that right?

A.    My understanding is that the bank that's referred to ceased operating in 2023 and may be in some kind of process in the U.S.

Q.    So again, you are not aware of any assets actually sitting at that bank that belong to either Amber Hill or Lateral Bridge?

A.    I haven't got any information about that at all.  I'm not even certain about the bank.  So I'm aiming to fill in that gap and



Page 189

information from the Chapter 15 proceedings.

Q.   You received some documents from Vistra in the BVI; is that right?

A.   Yes.

Q.   You testified earlier that was about 8,000 documents?

A.   Approximately, yes.

Q.   To your knowledge, is it your assumption that these documents that you received are accurate?

A.   Yes, from what I have seen so far.

Q.   So if the documents stated that an entity didn't have any assets, it's probably correct that that entity doesn't have any assets, right?

MR. DUNNE:  Objection.

A.   I think I would have to look at whatever the document or information suggests and then form a view on it, rather than more broadly to just say that I accept on face value what Vistra says is correct.

Vistra, as the registered agent may have -- may contain within its records, information about assets.  But just because



Page 190

it doesn't contain information about assets,
doesn't mean that it doesn't have them, and
Vistra may not know or have information about
the entirety of the assets of each of the 30
companies, if that makes sense.

MR. BRESSMAN:  I'm going to mark
this as Pretlove 9 for identification.

(Pretlove Exhibit 9, BVI Annual
Return Document, marked for
identification.)

Q.   Let me know when you've had a
chance to review it, pretty short document.

A.   Yes.

Q.   Do you recognize the document?

A.   I know what it is.  I don't
specifically recognize the document.

Q.   Is this one of the documents that
you received from Vistra in the BVI?

A.   I would have to check if I did but
I believe that I have got annual returns for
the companies that submitted them.

Q.   Do you see at the bottom here, this
document identifier right in the bottom right
corner.  It says Prince-BSF-



Page 191

A.   Yes.

Q.   And there are a bunch of numbers.

I'm going to represent to you that that's an identifier that your counsel put on the document when they produced it to Boies Schiller.

A.   Right.

Q.   So this is the document that we received from your counsel as belonging to -- well, in your possession, I would say.

A.   Okay.

Q.   Do you see at the top here it says, Lateral Bridge Global Limited?

A.   Yes.

Q.   Is it your understanding that's the same Lateral Bridge that we've been talking about?

A.   Yes.

Q.   And then go three lines down.  It says, financial end date, January 20, 2025.

Do you see that?

A.   Yes.

Q.   Is it your understanding that this document is essentially as of the middle of



Page 192

January 2025?

A.    Yes.

Q.    And then if you look down, you will see in the assets column -- rows and the liability rows?

A.    Uh-huh.

Q.    Do you see how everything is zero there?

A.    Yes.

Q.    Is it your understanding that according to Vistra, Lateral Bridge's assets were zero as of the middle of January 2025?

A.    No.

Q.    What is your understanding?

A.    My understanding is that this is a statutory annual return that is submitted by each BVI entity through its registered agent, and that's typically prepared by the client of record or the management of that company.

Q.    You don't know this to be inaccurate, though; is that right?

A.    I would agree with that on the basis that I don't have a statement of assets and liabilities from the directors or



Page 193

management of Lateral Bridge to indicate what the actual asset and liability position is. That's in breach of the BVI insolvency legislation.

Q.   I'm not asking about what you got or you didn't got or what you think -- I'm just asking, sitting here right now, you don't know this to be inaccurate; is that right?

A.   I think that's the same question and I would give the same answer; that, you know, the only reason I don't know the asset and liability position of the company is because the management and directors haven't complied with their statutory requirements under the BVI Insolvency Act.

Q.   Okay.  I think I understand.

So if you received that information from the directors, you would be satisfied that this was accurate?

MR. DUNNE:  Objection.

A.   It would mean that they've met their statutory requirement.  I would then file that with the Financial Services



Page 194

Commission, that would become a public document.

And that is something -- that is something that the directors and management need to do. They would have complied with that requirement, and it may or may not be accurate. I think my role would be to investigate and interrogate that as to whether that is accurate.

Q. So if you received that, you still wouldn't know whether this was accurate?

A. No, on the basis that I would need to conduct more investigations and fulfill my role as liquidator to make sure that I'm identifying and preserving and protecting, recovering any assets of each of the companies that I'm appointed over, which may include pursuing claims on behalf of the companies.

Q. Let me ask it one more time and then we will move on from this.

Taking into account what you say is stuff that you have not received yet -- which I will take no position on -- taking that



Page 195

into account, you don't know sitting here today that, for example, the cash and cash equivalent line should be something other than zero or that the loan and receivables line should be something other than zero?

A.   I think that's right on the basis that I need to complete my investigations.  I need to gather more information.

And this Chapter 15 application that I have made, I'm hoping is going to give me the information I'm missing to establish once and for all whether that is the position.

Q.   Let's turn to Pretlove 3, which is your declaration.  You can put this one aside.

A.   Thank you.

Q.   Can you turn to page 15.

A.   Okay.

Q.   Let me know when you are there.

A.   Yes.

Q.   So paragraph 40 says, right in the middle there, In parallel, the BVI Attorney General sought the appointment of the JPLs as



Page 196

provisional liquidators of the debtors pursuant to Section 170 of the BVI Insolvency Act -- skip ahead a few words -- stating in the written submissions filed in support of the applications of these matters require urgent investigation by independent professionals to determine the full extent of the fraudulent activities, et cetera.

Do you see that?

A.   Yes.

Q.   Then you cite to Mr. Chissick's declaration.

A.   Yes.

Q.   So I assume that your description there, that comes from Mr. Chissick, you are just relying on him?

A.   Yeah.  I believe that's a quote from Andrew to the declaration.

Q.   Then let's turn to paragraph 42.

A.   Yeah.

Q.   It says, Pursuant to the BVI orders, the JPLs have acquired formal legal control of the debtors.

A.   Uh-huh.



Q.    That's the BVI court orders that appoint you and your colleagues as joint provisional liquidator; is that right?

A.    Yes.

Q.    And there I assume you are referring to all 30 of the orders, 30 separate orders?

A.    Yes.

Q.    The powers of the debtors' prior directors and other officerholders with respect to the affairs and assets of the debtors, have in material part, been displaced and now vest exclusively in the JPLs.

      Do you see that?

A.    Yes.

Q.    When you say "in material part" what did you mean by that?

A.    That the powers of the prior directors and office holders are not zero, so they have some residual power.

Q.    So the BVI court orders give you and your colleagues certain powers that are delineated in the orders?



A.   Yes.

Q.   And those are vested in you as the JPLs?

A.   Yes.

Q.   Do you agree that those powers are -- the former directors' powers are only displaced to the extent that they vest in the JPLs?

A.   Yes, I think that's fair.

Q.   Then can we turn to paragraph 43.

A.   Yes.

Q.   I will read it for you there.

The appointment of the JPLs was sought on the basis that it was necessary to, amongst other things, divest Chen Zhi and his associates of control of the debtors and prevent them from continuing to use the debtors to further their criminal enterprise, thereby continuing to inflict public harm; (ii), identify and preserve the debtors' assets; (iii), conduct thorough investigations into past transactions; and (iv), review banking records, asset transfers, and corporate dealings to identify



26-10769-mg   Doc 49-17   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 17 -
Transcript of May 13   2026 Deposition of P. Pretlove   Pg 200 of 300

Page 199

and locate the potential money laundering
activities.  Is that right?

      A.   Yes.

      Q.   Is that your understanding as to
why the BVI Attorney General sought the
appointment of provisional liquidators over
the 30 entities?

            MR. DUNNE:  Objection.

      A.   Yes.

      Q.   Any other reasons that you didn't
mention here as to why the BVI AG, to your
knowledge, sought the appointment of
provisional liquidators?

      A.   I think this paragraph is intended
to be a summary of some of the reasons.  I
think the reasons, rationale, et cetera, are
contained within the application that the
Attorney General made.

            So her ordinary application, her
evidence in support.  I think we saw earlier
that I believe it was Jeni-Lee Watson
provided further evidence in support.  So the
entirety of the reasons, I suspect are
contained within the application.


MAGNA
LEGAL SERVICES

Page 200

So that paragraph is a summary.  I think it would be difficult to suggest that that paragraph encompasses everything that is contained in that application, but I'm comfortable with that summary of the reasons.

Q.   Fair enough.

Is there any other -- let me restate that question.

To your knowledge, is there any other major reason or primary reason that you can think of why the BVI Attorney General sought the employment of the provisional liquidators over these 30 entities?

MR. DUNNE:  Objection.

A.   I don't know the full reasons or any other reasons.  I would guess that's a matter for the Attorney General, but -- yeah, I'm not sure.

Q.   To your knowledge, was a provisional liquidation or a final liquidation sought or commenced against Amber Hill to address the solvency of Amber Hill?

A.   What do you mean by "address the solvency"?



Q.   Was it -- to your knowledge, was it commenced because the BVI Attorney General believed that Amber Hill was insolvent?

A.   I don't know what she believed about the solvency or otherwise or what information she had about the solvency of the companies.

Her application, as I understand it, was based and framed in the public interest and just and equitable framework of the insolvency legislation.

Q.   To your knowledge, was it instituted to accomplish some sort of financial restructuring of Amber Hill?

MR. DUNNE:  Objection.

A.   I think it really depends on the entity and its assets and --

Q.   I'm just asking about Amber Hill.

A.   So what's the question again?

Q.   To your knowledge, was -- did the BVI Attorney General institute or commence a proceeding against Amber Hill to restructure that entity?

MR. DUNNE:  Objection.


MAGNA
LEGAL SERVICES

Page 202

A.  I don't know specifically in relation to Amber Hill what her thinking was as to why she has included this entity in the application for all 30.

Q.  Same question with Lateral Bridge. I assume same answer?

MR. DUNNE:  Objection.

A.  Yes, same answer.

Q.  As you sit here today, do you know whether Amber Hill is solvent?

A.  I don't have sufficient information to determine whether it is solvent or insolvent.  My investigations are still ongoing and I'm hoping to establish that within the liquidation process, insofar as it will have an outcome as to whether I can make a distribution to creditors or not and whether it's solvent or insolvent, it doesn't really change -- doesn't really change that from my perspective.

Q.  Same question with Lateral Bridge. I assume same answer?

A.  Same answer.

Q.  I think you testified earlier that



solvency was not an issue that was in front of the BVI court on these applications, to your understanding; is that right?

MR. DUNNE:  Objection.

A.   I don't think I can sensibly convey what it is the judge considered and what he decided at the time of making the appointment.

I know that the application was made on the grounds of the public interest and/or on just and equitable grounds.  And to establish either of those, there is no need to prove insolvency.  But to the extent he considered the solvency or insolvency of the companies in coming that that decision, I'm not certain.

Q.   Over the past four months, having served as one of the joint provisional liquidators of Amber Hill and Lateral Bridge, have you come to form any view of these entities, like what they were, what they did, what the purpose was?

A.   I think in the absolute absence of information from the directors of the



Page 204

company, I haven't been able to form any view.  Other than from the records that I recovered from Vistra, I did establish and I think it's been raised with Kobre Kim by my legal team at Walkers, that Amber Hill, in particular, was created as an entity by an individual connected to Chen Zhi.

Q.   Have you had an opportunity to review the civil forfeiture complaint that was filed in the U.S. with regard to approximately 121,000 Bitcoin?

A.   I have seen the document.  I have read the parts that talk about Amber Hill and Lateral Bridge and the movement of Bitcoin, et cetera.

Q.   So you know that those two entities are referenced --

A.   Yes.

Q.   -- in the forfeiture issue?

A.   Yes.

Q.   And have you come to form a view as to whether or not that allegation is correct based on your investigation?

A.   Those criminal and criminal related



Page 205

proceedings are something aside from my liquidation appointment.  My role is to identify, preserve, and potentially realize assets of each of the companies.

As I said, I don't have any information about the asset or liability position.  I'm still investigating in relation to each of the companies, particularly in relation to Amber Hill and Lateral Bridge, I think it's key for me to get discovery from the U.S. bank so that I can work out whether it does have any assets, whether it does have any bank accounts, whether it does have any funds within them, and whether there is any claims that I can bring on behalf of those companies to seek the recovery of Bitcoin or other assets, wherever they may be.

Q.    So you don't view part of your remit as analyzing the underlying facts regarding what happened with Chen Zhi or the entities themselves, in relation to the allegations made in the United States?

MR. DUNNE:  Objection to form.



Page 206

A.   Not from a criminal perspective, but from a civil perspective, in relation to investigating and understanding the financial affairs of these two companies, yes, I would say that is part of my role.  Not analyzing, proving, establishing any criminal case in relation to or connected to those companies.

Q.   You attended the April 22 hearing in the Southern District of New York on your motion for provisional relief; is that right?

A.   Yes, I did.

Q.   You were in the courtroom and heard your counsel refer to the debtors in general, including Amber Hill and Lateral Bridge, as, quote, bad guys.

Do you remember that?

A.   I don't know which companies he specifically cited or precisely what he said.

Q.   Do you remember him saying that?

A.   I mean, I would like to look at a transcript or something.

Q.   Would that help you?

A.   Yes.

(Pretlove Exhibit 10, Transcript of



Page 207

Proceedings, marked for identification.)

Q.   You can review the whole thing, if you like.  If not, I will just point you to a particular line.  You tell me what you would prefer.

A.   If you can point me to a line, that would be helpful.

Q.   Great.  Turn to page 20.

A.   Yes.

Q.   And start at line 9.

Do you see that?

A.   Yes.

Q.   So we don't know how we will coordinate -- I will represent you can look back, this is your counsel speaking at the time.

We don't know how we will coordinate with the asset seizures, but we what do know is we don't think -- we think that the seizure of an asset in reliable custody of a government around the world and the taking of an asset into the custody of the JPLs away from the bad guys are both steps forward.



Page 208

Do you see that?

A. Yes.

Q. Do you agree here that he is referencing I think the debtors in general, no particular entity?

MR. DUNNE: Objection to form.

So -- long colloquy from Mr. Deitrich on the prior several pages.

MR. BRESSMAN: Mr. Pretlove is welcome to read it, if he would like.

A. Okay. I think I would say it's not clear to me which entities he was and was not referring to.

I think the context is that he is talking about FTX and the Madoff cases, where the persons behind those have been convicted and drawing comparisons or -- yeah, drawing comparisons to those situations, when he is talking about where we might be in the future.

And I don't see that it's clear whether or not it's all 30, some of them, whether it's talking about Amber Hill and


MAGNA
LEGAL SERVICES

Page 209

Lateral Bridge or not, and I don't know that

it could be that specific when he is talking

about a hypothetical and what may or might

not happen in the future.

Q.   Do you agree that he is talking

about either some or all of subset --

undefined subset of the 30 entities when

making this reference?

MR. DUNNE:  Objection.

A.   I think that's right.  He is going

to be referring to -- he is drawing the

comparison between the Prince Group and cases

like Madoff and FTX and where we may get to

in the future.

Q.   Do you agree with the assessment

that the debtors are bad guys?

MR. DUNNE:  Objection.

A.   I don't think that's part of my

role or something that I need to form a view

on.  My role is to investigate, identify,

secure, recover assets for the benefit of

creditors.  Whether people are good or bad

guys, is not part of my role or

responsibility and I don't have a view on



Page 210

that.

MR. BRESSMAN:  We are going to mark for identification Pretlove 11.

(Pretlove Exhibit 11, Excerpted BVI Court Orders, marked for identification.)

Q.   Mr. Pretlove, let me know when you've had a chance to review.

A.   Yes.

Q.   I will represent to you that this is -- this is from your exhibits to your declaration, and these are the BVI court orders, just excerpted, not 450 pages, just for Amber Hill and Lateral Bridge, okay?

A.   Yes.

Q.   Do you recognize these orders?

A.   Yes.

Q.   Are these the BVI court orders for those two entities?

A.   As far as I am aware, yes.

Q.   Can you turn to page 4 of 450.

A.   Yes.

Q.   Is it fair to say that the powers you hold as a provisional liquidator are



Page 211

delineated in paragraphs 2 and 3 of this order?

A.    No, I don't think that's correct.

Q.    Where else in this order do you see powers that you've been given as a provisional liquidator of Amber Hill for purposes of this order?

A.    It depends on the definition of power and the legal interpretation of it. But if you look at page 7 and paragraph number 7, I would describe that as the power -- the powers of the liquidator to apply on short notice the directions or variation or termination of the protocol, for example.

So in my view, the entirety of the order sets out my powers.

Q.    Maybe I can restate the question and see if I can sharpen my question a little bit.

A.    Okay.

Q.    Do paragraphs 2 and 3 delineate the powers that you have with respect to the companies, whereby you have replaced the former directors of the those companies?


MAGNA
LEGAL SERVICES

Page 212

MR. DUNNE:  Objection.

A.   I don't think that's the case either.  I think that the entirety of the order and all contents of the order will dictate how this liquidation is to continue, and the powers that I have as joint provisional liquidator.

And I think -- in addition I want to say that this is driving at an issue, as I understand it, that is due to be heard in the BVI court tomorrow.

Q.   I wasn't asking you about that issue in particular, your view on it.  I was just wondering where you saw your powers with respect to the companies deriving from within this order?

MR. DUNNE:  Objection, asked and answered.

A.   I'm trying to reiterate my answer. I think it's the case that the entirety of this order from beginning to end sets out the powers that I have as a liquidator.

Q.   Can you identify for me where in this order you have been given the power to



Page 213

identify creditors of Amber Hill?

A.   I think that that it is likely to be a legal -- a legal interpretation of the entirety of this order.  I don't think that it's as simple as me pointing to a particular line in here.

This is in reference to the Insolvency Act in its entirety, and within that, there are some powers, responsibilities, obligations, and things that I have as a liquidator.  And so I can't point to a line that says, I have the power to go and identify liquidators, I don't think.

It's more comprehensive than that.  It's the order in accordance with the BVI Insolvency Act.

Q.   You said before that you had some familiarity with the Insolvency Act; is that right?

A.   Yes.

Q.   Can you turn to it's page 7, paragraph 10.

Do you see that?



Page 214

A.    Yes.

Q.    You say, It's provided in paragraph 3 above, the joint provisional liquidators may not exercise any of the powers set out in Schedule 2 of the Insolvency Act without permission of the court.

A.    Yes.

Q.    Do you know what Schedule 2 of the Insolvency Act is?

A.    Yes.

Q.    What is it?

A.    Let me turn to it, Exhibit 7.

Q.    It's on page 259.

A.    Okay.  Thank you.

Schedule 2 to the Insolvency Act sets out the powers of a liquidator.

Q.    So under the order that we were just looking at -- I guess we can just have both of them open at the same time.  So we can jump back and forth.

But under paragraph 10 of the order, these are not powers that you currently have in the BVI; is that right?

MR. DUNNE:  Objection.



Page 215

A.    I don't think that's my interpretation.

Q.    What was your interpretation?

A.    That per 10, in the order of my appointment in Exhibit 11, it says, same as provided in paragraph 3 above the joint provisional liquidators may not exercise any of the powers set out in Schedule 2 of the Insolvency Act 2003 without sanction of the court.

Q.    Let me see if I can understand.

If it's delineated in Section 3 of this order, that's a power you have. Otherwise, a power that is identified in Schedule 2 here is not something you have, unless you have other sanction of the court; is that right?

A.    I think it becomes a point of construction of BVI law, that my BVI legal representatives will guide me on, as to what and what are not my powers in relation to very specific issue.

I don't think I can talk generally about how and whether and when I can apply



Page 216

Schedule 2 powers.  I think this very much goes to an issue that is live before the BVI court and is due for a hearing tomorrow.

Q.   Your understanding is that the hearing tomorrow is going to discuss whether or not you are going to be entitled to Schedule 2 powers in the BVI?

A.   I think it's going to go to the point of the interpretation of paragraph 3.

Q.   What part of it, according to your understanding?  I know you are not a lawyer.

A.   I wouldn't like to paraphrase what the application says.  The application that has been made to the BVI court sets out exactly what it is that we are seeking guidance from -- when I say "we" -- we as the provisional liquidators, what my lawyers are seeking as direction and guidance from the BVI court.

Q.   So if I'm hearing you correctly -- tell me if I'm wrong -- it's possible -- you think it's possible that when it says the joint provisional liquidators may not exercise any of its powers set out in



Page 217

Schedule 2 in the Insolvency Act, that it

meant something other than that?

A.    I don't understand the question.

Q.    Let me ask it slightly differently.

Do you agree with me that the

language of the order here says, the same as

provided in paragraph 3, unless it's

identified in paragraph 3, you don't

currently have any powers set out in

Schedule 2?

MR. DUNNE:  Objection to form,

asked and answered, calls for a legal

conclusion.

A.    I don't think I'm particularly well

placed to opine on that issue.  As I've said,

the BVI court has a hearing scheduled for

tomorrow that is a live issue on the extent

and interpretation of paragraph 3.

And I don't want to be unhelpful,

you know, Kobre Kim are a BVI law firm, I'm

sure have their own interpretation of that --

those paragraphs.  I don't think I can add

anything to that.

Q.    Is it your understanding that you


MAGNA
LEGAL SERVICES

Page 218

currently have the power to admit or deny

creditors of Amber Hill or Lateral Bridge?

A.   I would say that for me to admit or

deny creditors, that's part of an

adjudication process that could not and would

not happen until I declare a dividend

distribution to creditors.

I haven't made any recoveries in

the estate.  I'm not in a position to make

that declaration, so we don't even get there.

If I had made realizations, I was

able to make a declaration, and I would go to

the BVI court to seek direction about making

a distribution within the provisional

liquidation process.

Q.   Why would you need -- in that

circumstance, why would you need to go to the

BVI court?

A.   Because the -- I have to dig out

the section.  If you are going to make a

distribution in full to any class of

creditor, you need to make an application to

the BVI court.

Q.   If you identified property -- call





Page 219

it real property or some other property --
would you be able to sell it under your
current powers in the BVI?

A.   I think I answered this question
earlier and it depends on the asset or the
property.

Q.   I think you talked before about a
perishable asset?

A.   Yeah, perishable or -- I think I
gave the example of a bank account, funds
held in a bank account.  There would be
nothing to stop me and I would be permitted
to realize that and bring it under my power
of control.

Q.   You think currently you have the
power to realize the funds in a bank account?

A.   Yes.

Q.   And let's say it was a
nonperishable asset, however you interpret
that, and you identify it, would you be able
to go and sell that asset?

A.   It really depends on the type of
asset.  But using a specific example, I
talked about the cigar business earlier.  If



Page 220

I were to sell the shareholding in that cigar business, I would fully expect to go to the BVI court and get sanctions for a sale of that asset.

Q.   My question, again, is why would you need to go to the BVI court?

A.   Because it's not -- I think it's such a significant asset and process that's involved in selling something like that, the BVI court would expect me to apprise it of the circumstances of what it is I'm proposing to do and give the court an opportunity to give direction on how I should proceed in those circumstances.

And they want to understand things like marketing efforts, for example, and valuation of that asset to be satisfied, that this is an -- you know, appropriate thing for me to be doing.

Q.   If and when you become a full liquidator of these entities, your expectation is that if you are going to sell an asset like that, you go to the BVI court to get permission?



Page 221

A.   I would normally, something as significant as that.

Q.   Let's hypothetically take a type of asset that you identify as less significant.

Let's call it a piece of property located in the BVI, real property, just a track of land.  And you find out it belongs to one of the debtors -- let's call that debtor Amber Hill.

Are you following my hypothetical?

A.   Yes.

Q.   Right now as a provisional liquidator, would you be able to go and sell it?

MR. DUNNE:  Objection.

A.   It depends on the circumstances and if there was a risk to that property and steps needed to be taken swiftly, then I think it falls within, like I described earlier, this kind of catchall power, whether I have the power to do whatever is necessary to essentially uphold the purpose of my appointment, which is to identify, secure, and maintain assets of the liquidation



Page 222

status.

Q.    Can you point to me in the BVI court order where you have the authority to do whatever is necessary to realize assets?

MR. DUNNE:  Objection to form.

A.    I think I was paraphrasing what I think the section says, but I did point that out earlier today.

Q.    Is that Section 2?

A.    Section 2 and I think Section 3.

Q.    And are you familiar with Section 171 of the BVI Insolvency Act, page 111?

A.    Yes.

Q.    Do you see there -- I'm going to read the language.

Subject to subsection (2), a provisional liquidator -- like yourself -- has the rights and powers of a liquidator to the extent necessary to maintain the value of the assets.

A.    Yes.

Q.    Are you familiar with the concept or have you heard the phrase "hold the ring" in the BVI?



Page 223

A.    In relation to receiverships, yeah.

Q.    What about for provisional liquidations?

A.    No.

Q.    You never heard that phrase?

A.    Not in relation to provisional liquidation.

Q.    So your view would be that you would be permitted, without going to the BVI court, to sell assets if it would be necessary to maintain the value of the assets?

A.    Generally, yeah.  That's what the insolvency says the rights and powers are, and there is similar language in the order of appointment.

MR. BRESSMAN:  We've been going about an hour.  I don't know if you want a break.  I think I probably have maybe 20 minutes or so, but I would like a five-minute break so I can organize myself and go to the restroom.

THE VIDEOGRAPHER:  The time is 4:19 p.m.  Going off the record.



Page 224

(Recess.)

THE VIDEOGRAPHER:  The time is 4:36 p.m.  Back on the record.

BY MR. BRESSMAN:

Q.  Mr. Pretlove, when we took a little break before, we were talking about some of the language in the BVI court order.  And I think there was some maybe disagreement about what it meant or whether that's being up for some sort of hearing tomorrow in the BVI.

I want to put that to the side for a second.

A.  Okay.

Q.  Irrespective of what the order says, practically speaking, have you provided any notice to any possible creditors yet in the BVI with respect to any of the debtors?

MR. DUNNE:  Objection, asked and answered.

A.  I have not.  I understand that the Attorney General has advertised the -- at least the existence of the application and the appointment globally.

Q.  And again, just practically



speaking, do you have any process in place yet that you've implemented for identifying creditors for any of the debtors?

MR. DUNNE:  Objection, asked and answered.

A.   Not to actively go out and seek, but I do record those that indicate that they have a claim or potential claim.

Q.   That's only if they come to you?

A.   Yes.

Q.   Nothing that you've done proactively?

A.   Yes.

Q.   Do you have any process in place yet to classify groups of creditors for any of the debtors?

MR. DUNNE:  Objection.

A.   No.  On the basis that that would form part of the adjudication process, which I'm not into at this point in time.  Because there has been no asset realizations from which to declare a distribution.

Q.   Is your understanding that you do have the power to adjudicate creditor claims,



Page 226

you just practically can't because you haven't realized the assets?

MR. DUNNE: Objection.

A. It depends on the circumstances. I gave an example earlier of a creditor that would be able to be paid, were it not for sanctions. If I had sufficient sanction licenses to do that, I could make the payment without any court approval or court intervention or direction.

So I could adjudicate that claim, verify that claim, and agree that that liability is due and meet it to the extent I can of the assets that I have available.

Q. Your understanding is that you could do that, even without figuring out if there are any other creditors of that entity that might have a claim to --

MR. DUNNE: Objection, asked and answered.

A. It just really depends on the circumstances.

Q. Have you begun any winding-up process with respect to either Amber Hill or



MAGNA
LEGAL SERVICES

Page 227

Lateral Bridge?

        A.    What do you mean by "winding-up
process"?

        Q.    Have you begun any process with
respect to either Amber Hill or Lateral
Bridge, to determine what it owes to various
people or entities, put those into
categories, and then pay that out so then you
could liquidate the company?

            MR. DUNNE:   Objection, asked and
        answered.

        A.    I would say that's a reiteration of
the questions I have just answered and I'm
relying on what I have already said.

        Q.    To the extent that you -- there are
creditors that come to you, in your authority
as a joint provisional liquidator of Amber
Hill or Lateral Bridge, and they say they are
owed money from those entities, do you have
to establish priority of their claim versus
other claims before you make any payments?

        A.    Yeah.  I would have to consider
what I think is referred to as the statutory
waterfall of claims within an insolvency


MAGNA
LEGAL SERVICES

Page 228

estate and that's set out in the Insolvency Act.

Q.    So can you explain to me how you would be able to -- in the example you identified earlier about -- I think it was Noble Title or whatever the name of the entity was --

A.    Yeah.

Q.    -- where you said you could make payments to that entity, even without court order.

Can you explain to me how you would be able to do that, having not established priority with various creditors?

MR. DUNNE:  Objection.

A.    In the example that I gave, I specifically mentioned the creditor called Regent Gas, who, as of yesterday, went in and removed the gas meters and plumbings and cut off supply of gas to the entirety of the building.

If I was free to make a payment to Regent Gas to prevent them from taking the steps that they did, that were damaging to


MAGNA
LEGAL SERVICES

Page 229

the asset and detrimental to the value of the asset and would effect my primary responsibility to maintain the value of the assets of the companies, then I feel I would be free to make that payment from funds available in the ordinary course of the business of that company, as provisional liquidator.

Q.   What if, hypothetically, Regent Gas says, we are owed money, we are not going to cut off anything, but we want the money owed for the services we provided in the past.

Is it your understanding that you would be able to make that payment, without going to the BVI court and without considering other claims against the entity?

MR. DUNNE:  Objection.

A.   It's just going to depend on the circumstances, I think.  And that's an example I tried to give to explain how I could make a payment like that.

It's difficult, I think -- to embark on a full claim adjudication process, I'm going to need to recover sufficient



26-10769-mg   Doc 49-17   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 17 -
Transcript of May 13   2026 Deposition of P. Pretlove   Pg 231 of 300

Page 230

assets in order to declare a distribution and then commence a claims bar process, and I would expect to engage with the BVI court on that before doing it.

Q.   Can we turn back to your declaration, that is Pretlove 3.

A.   Yes.

Q.   If you can turn to page 14.

A.   Yes.

Q.   Paragraph 39.  Let me know when you are there.

A.   Yes.

Q.   So you referred to the declaration of Mr. Chissick, is that right, in the first sentence?

A.   Yes.

Q.   And then you would describe a BVI liquidation as a court supervised collective process in which according to the liquidators and provisional liquidators, serve as officers of the BVI courts.

Is that accurate to your understanding?

A.   Yes.



Page 231

Q.    And then if a company is placed into liquidation, the liquidation process will involve adjudication of creditor claims, realization of assets, and distribution of proceeds in accordance with statutory priority at the conclusion of which that company is dissolved and ceases to exist, citing to some paragraphs from Mr. Chissick.

Do you see that?

A.    Yes.

Q.    And just going to the beginning of that sentence, if a company is placed into liquidation.

Did you mean provisional liquidation there or final liquidation?

A.    I think that in that paragraph, I'm talking about the BVI insolvency framework and relevant sections of BVI Insolvency Act, and talking quite generally about when a company has been placed into liquidation, what that liquidation process looks like and how it is collective.

I wasn't distinguishing between provisional liquidation or full liquidation,


MAGNA
LEGAL SERVICES

Page 232

and I wasn't seeking to overlay that to each
of the 30 entities in that paragraph.

Q.   So if I understand -- I don't want
to put words in your mouth, I just want to
understand what you meant when you wrote here
in the declaration, If a company is placed
into liquidation -- you could insert the word
provisional there, and this sentence would be
right, you can insert final, the sentence
would generally be right?

A.   Yeah.

MR. DUNNE:   Objection.   Form.

A.   I think that's -- that can be the
case.   It just depends on the appointment and
the circumstances of the appointment.

Q.   I see.

So your understanding, based on all
your experience as a liquidator of BVI
entities, if a company is placed into
provisional liquidation, it could be the case
that the provisional liquidation would
involve the adjudication of creditor claims,
realization of assets, and distribution of
proceeds and it just depends?


MAGNA
LEGAL SERVICES

Page 233

MR. DUNNE: Objection, asked and answered.

A. It does depend, and it's not always the case. For example, the company could cease to exist, you could be in a provisional liquidation and restore the company back out of provisional liquidation.

I have done that before.

You can go into a full liquidation, and terminate that liquidation process and restore it back to the management.

So it really -- the intention of that paragraph was to set out the general framework of the BVI insolvency process in accordance with the Insolvency Act.

And -- yeah, in terms of a specific case, it's really going to depend.

Q. You had mentioned before that two claims or claimants had come forward so far to you in the past few weeks; is that right?

A. Yes.

Q. Those claimants, were they making claims against all 30 debtor entities or were they making claims against specific entities?



Page 234

A.   I can't recall whether it was against specific entities.  I think it was quite general against the 30.

Q.   If you went back, how did they reach out to you, by email?

A.   Yes.

Q.   So if you went back and you looked at your emails, you would be able to see whether they said Amber Hill, you know, owes me this money, or Lateral Bridge owes me this money, or Noble Title?

A.   I guess I could review the email, yeah.

Q.   I just want to understand.  You don't recall right now, but that information is available to you if you went and looked at it?

A.   Yes.

Q.   So if we asked your counsel, for example, took it up with them, and said, can you take a look and give us an answer, that they should be able to do that?

MR. DUNNE:  Objection.

A.   I think it would be a matter for


MAGNA
LEGAL SERVICES

Page 235

the U.S. legal team and the BVI legal team as to what I am permitted to do.

Q.   I understand.

     But you have the information somewhere?

A.   Yes.

Q.   Is it possible that they didn't even mention any of the debtors at all?

A.   I'm not sure, either it did or didn't.  I would have to look at the email.

Q.   Did they mention Chen Zhi?  Like, we were harmed by Chen Zhi, we are seeking compensation.

A.   I don't really recall.

Q.   Can you turn back to Exhibit 11.

A.   Yes.

Q.   And I would like you to turn to page 9.

A.   Okay.

Q.   This is the protocol that you were discussing earlier with Mr. Skinner; is that right?

A.   Yes.

Q.   Have you ever been previously



26-10769-mg   Doc 49-17   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 17 -
Transcript of May 13   2026 Deposition of P. Pretlove   Pg 237 of 300

Page 236

appointed a liquidator in the BVI or elsewhere, where there was an information-sharing protocol that was made as part of the BVI order appointing you as the liquidator?

A.   Yes.

Q.   What other instances?

A.   I would have to go back, I think, to my declaration which lists out a number of my appointments.

Q.   You are welcome to do that, if that would help you.

A.   To get the proper case names.

There was a case called or a collection of cases that are referred to as the Linda Star Limited, generally referred to as Constellation, where there was an information and management sharing protocol within a joint provisional liquidation.

Q.   That was made as part of the original court order?

A.   Yes.

Q.   Who was the information-sharing protocol between?



A.    The company and myself as the provisional liquidator because in that case, the company made the application for my appointment.

Q.    If you were a provisional liquidator of the company, why did you need an information-sharing protocol with the company?

A.    In that case, the provisional liquidation was what I would refer to as -- for want of a better phrase -- a rescue appointment, where the company had run into -- or the companies had run into liquidity problems and needed breathing space from creditors and an opportunity for creditors and bond holders to enter into negotiations to obtain further liquidity whilst the underlying businesses and dual ships continued to operate.

Q.    Any past instances where you were appointed as a provisional liquidator and there was an information-sharing protocol with a government entity?

A.    No, because this is the first time



Page 238

that a company has been wound up in this way
in the BVI.

Q.   This is a first instance example,
this -- these 30 entities, first time ever
the BVI Attorney General has used these
provisions to windup entities?

A.   To the best of my knowledge, yes,
yeah.

Q.   So this document, as you understand
it, requires you to provide information on a
regular basis to the Attorney General.

I'm asking you, what -- I'm not
asking what you provided, I'm just asking in
general, it requires you to do it?

A.   I think it's a requirement to make
quarterly reports.

Q.   And based on that, you have to
report on things that you've learned in your
position as a provisional liquidator and
maybe, ultimately, a liquidator, correct?

A.   Yes.

Q.   Anything in here require you to
make -- to provide information on a regular
basis to creditors of the entities?



Page 239

A.    Not in the protocol.

Q.    So would it be fair to say that a key constituency that you are providing information to is the Attorney General, but not creditors?

MR. DUNNE:  Objection.

A.    I think it's fair to say that I'm required under the order to report to the Attorney General, but I'm not required to report to creditors and I think that's the distinction.

Q.    I want to turn briefly to what may be my last topic.

You were speaking with Mr. Skinner earlier, or there were some questions back and forth as to when you found out about being appointed as a provisional liquidator and all that.

I think you had said -- correct me if I'm wrong, recollecting what your testimony was -- that when you had received a consent to act as a provisional liquidator, that came -- you had heard that from either O'Neal Webster or from the Attorney General,



MAGNA
LEGAL SERVICES

Page 240

they were the ones that reached out to you
about that?

A.    Yes.

Q.    Does that accurately reflect your
testimony?

A.    Broadly, yeah.  I think that's a
reasonable summary.

Q.    Okay.  And I think Mr. Skinner
asked you before if you had put in -- I don't
know if he used the phrase pitch materials or
something like that, and you had said you had
not done that.

A.    Yeah.

Q.    Do you -- is it your understanding
that it was a competitive process between you
and other firms as to who would be the
provisional liquidators here?

MR. DUNNE:  Objection, lack of
foundation.

A.    I don't know what process the
Attorney General went through and whether she
considered others or not.  I wasn't aware of
other firms being considered for nomination
for the appointment.  But that doesn't



necessarily mean there weren't others and that's not atypical for any appointment.

Q. You didn't hear that from the Attorney General?

A. No.

Q. When you previously have been appointed as a provisional liquidator in the BVI, have you typically been in competition with other firms for that office?

A. It depends. I don't think there is a great comparison to the circumstances in this case. As I mentioned, it's the first time that the Attorney General has made an application like this.

And the only other thing that's comparable at any level, and you took me to some of the comments from Andy Dietrich earlier in the court hearing, it was in the Madoff case, and I have been appointed as one of the joint liquidators of Kingate Global and Kingate Euro.

That was an appointment as a result of a large scale notorious fraud from Bernard Madoff, where it wasn't myself, but it was my



Page 242

predecessors who were appointed as
provisional liquidators for a period of
several months, and then subsequently,
appointed as full liquidators at a full
hearing.

        And my understanding from that
case, is that there was no competitive pitch
for that case.  The approach was made by
Harneys law firm, on behalf of the management
of the companies.

        Q.    To your knowledge in this case,
there was no RFP sort of process, where the
Attorney General said we are looking for
people to come in and put in their best bids
for this one?

        A.    I'm not aware of that.

        Q.    And when you were approached by --
was it O'Neal Webster who approached you or
the Attorney General about the consent to
act?

        A.    I can't remember whether it was the
Attorney General who sent the email or O'Neal
Webster.

        Q.    It was one of the two?



Page 243

A.   Yeah.

Q.   That was the first time you were in touch with them about this potential engagement?

A.   I think as I indicated earlier, the exchanges that I had with the Attorney General and/or her lawyers are likely to be the subject of some kind of legal privilege that belongs to her and/or potentially Interpath, I would guess.

Q.   To be clear, I don't want you to reveal the subject of -- what you discussed or anything like that.  Whether they're privileged or not, that's for the lawyers to figure out.

I'm just wondering if that was the first time that you had heard from them about it or were there prior communications?

A.   There were communications prior to asking me to sign a consent to act.  But how far back that goes and the content of those, that's going to be covered by privilege and perhaps an issue for another day with the BVI or U.S. legal team.



Q.   Do you recall when -- again, I'm not asking for the specifics of the communications, like what was discussed, just when was the first of those communications approximately?

A.   I don't know.  It was at some point following the publication of the indictment of Chen Zhi, but I don't know precisely what date.

Q.   So the indictment was sometime in October of 2025.  You were appointed in January, early January of 2026?

A.   Yeah.

Q.   Sometime in there?

A.   Yeah.

Q.   Do you recall if it was closer to December or closer to October?

A.   I don't know.

Q.   And do you recall whether it was the Attorney General or O'Neal Webster who first had a communication to you or you had a communication to them?

Again, I'm not asking for the substance of the communication, just who



Page 245

reached out to who.

A.   I just think that this touches on legal privilege issues, and I think --

Q.   I'm not asking for the substance. I'm just asking who reached out to who, if you recall?

A.   I think it gets into difficult privilege issues.

Q.   So you recall but you are just not answering?

MR. DUNNE:   The witness has indicated I think what he can answer here.

Q.   I just want to understand if he --

MR. DUNNE:   Okay.  You can ask that question.  You can answer that question.

Q.   I'm asking do you recall but you are not answering or do you not recall?

A.   I have a rough recollection.  But I think that identifying the approach gets into difficult privilege, legal privilege issues that don't necessarily belong to me.

Q.   I have one last question on this and then I think we are good.



MAGNA
LEGAL SERVICES

Page 246

Do you recall if that first approach was made in person or was it made in some sort of message like, an email or text message or something like that?

A.    I can't recall specifically what it was.

Q.    One more question.  I know I promised that was my last question.

Do you recall if there were -- between October of 2025 and January of -- early January of 2026 -- I'm not asking you name dates -- do you recall if there were email or other electronic communications between you and either the Attorney General's office in the BVI or O'Neal Webster?

A.    I'm sorry, say the question again.

Q.    Again, I'm not asking for substance.  I'm not asking you for dates.

I'm just asking between October of 2025, do you recall if between October of 2025 and early January 2026, there were email communications or other electronic communications -- text messages or the like -- between Interpath, anyone at Interpath and



Page 247

the BVI Attorney General's office or O'Neal
Webster acting on behalf of the Attorney
General?

A.    There was, yeah.

Q.    Great.

MR. BRESSMAN:  Give me one second.
That's all the questions I have.  I pass
the witness to Chris.

MR. DUNNE:  No questions at this
time.

MR. BRESSMAN:  I will make the same
reservation Mr. Skinner made about
keeping this open, you know, that will
be between the lawyers to decide.

MR. DUNNE:  Yeah.  We will follow
up.

MR. SKINNER:  I have like three
follow-up questions based on what we
just had.

Just because I was listening with
half an ear, we didn't cover paragraph 8
of the order.  Correct.

MS. FORNERET:  You are right.

FURTHER EXAMINATION



MAGNA
LEGAL SERVICES

Page 248

BY MR. SKINNER:

Q.    Can I direct your attention to Exhibit 2 which is the Chapter 15 petition and the order attached to the petition.

A.    Yes.

Q.    And the paragraph 8 of the order, do you recall earlier in the day I was asking you if the Attorney General had the ability to seek her costs in connection with this proceeding to be paid out of the assets of the debtors?

A.    Yes.

Q.    And I believe you said you just weren't sure if that was the case or not.

Directing your attention to paragraph 8, does that refresh your recollection as to whether the Attorney General has that authority?

A.    I thought the protocol dealt with the costs that would be due to be paid to the Attorney General.  And it is helpful to see paragraph 8 to refresh the position and the order of the court.

Q.    Am I correct that under the order,



Page 249

the Attorney General, who would be the
applicant referred to in paragraph 8, has the
ability to be paid her costs in complying
with the protocol from the assets of the
company, which would be a reference to the
debtor?

A.    That's my understanding, yeah.

Q.    And to date, the Attorney General
has not sought to obtain any of her costs
under that paragraph; is that correct?

A.    From me, no, she did not.

Q.    Do you know if she sought them from
the court?

A.    I don't know what she sought from
the court, necessarily.

MR. SKINNER:  I have no further
questions.

Same reservation as before.  We can
go off the record.

THE VIDEOGRAPHER:  The time is
5:10.  We are going off the record.

(Time Noted:  5:10 p.m.)



Page 250

PAUL PRETLOVE

EXAMINATION BY MR. SKINNER                          5

EXAMINATION BY MR. BRESSMAN                     159

FURTHER EXAMINATION BY MR. SKINNER              247

* * * * *

EXHIBITS

Exhibit 1 - List of Objecting Debtors,                    3

Exhibit 2 - Petition                                     3

Exhibit 3 - Declaration                                  3

Exhibit 4 - Verified Petitioner



Page 251

EXHIBITS (Cont'd)

Exhibit 10 - Transcript of Proceedings 206

Exhibit 11 - Excerpted BVI Court Orders 210

* * * * *



Page 252

Stipulations

Page  Line      Page  Line      Page  Line

None

- - -

Questions Marked

Page  Line      Page  Line      Page  Line

None

To Be Filled In

Page  Line      Page  Line      Page  Line

None

- - -



Page 253

I HEREBY CERTIFY that the witness, PAUL PRETLOVE, was

duly sworn by me and that the deposition is a true record of the

testimony given by the witness.

_____*Leslie Fagin*_____

Leslie Fagin,

Registered Professional Reporter

Dated: May 13, 2026

(The foregoing certification of this transcript does

not apply to any reproduction of the same by any means, unless

under the direct control and/or supervision of the certifying

reporter.)


MAGNA
LEGAL SERVICES

Page 254

PAUL PRETLOVE                DATE:

Subscribed and sworn

to before me this                                                              9

day of                         , 2026.

My commission expires:

Notary Public                                                                 12



Page 255


MAGNA
LEGAL SERVICES

# Magna
## Key Contacts

**Schedule a Deposition:**
Scheduling@MagnaLS.com | 866-624-6221

**Order a Transcript:**
CustomerService@MagnaLS.com | 866-624-6221

**General Billing Inquiries:**
ARTeam@MagnaLS.com | 866-624-6221

**Scheduling Operations Manager:**
Patricia Gondor (E: PGondor@MagnaLS.com | C: 215-221-9566)

**Customer Care:**
Cari Hartley (E: CHartley@MagnaLS.com | C: 843-814-0841)

**Director of Production Services:**
Ron Hickman (E:RHickman@MagnaLS.com | C: 215-982-0810)

**National Director of Discovery Support Services:**
Carmella Mazza (E: CMazza@MagnaLS.com | C: 856-495-1920)

**Billing Manager:**
Maria Capetola (E: MCapetola@MagnaLS.com | C: 215-292-9603)

**Director of Sales Operations:**
Kristina Moukina (E: KMoukina@MagnaLS.com | C: 215-796-5028)



MAGNA
LEGAL SERVICES

26-10769-mg  Doc 49-17  Filed 05/21/26  Entered 05/21/26 15:29:05  Exhibit 17 - Transcript of May 13  2026 Deposition of P. Pretlove  Pg 258 of 300

Page 1

**A**

**ability**
44:25 56:21 148:19
148:24 156:16
181:25 182:17
248:9 249:4

**able**
46:22 68:19 74:24
75:9 122:25 126:9
128:14 131:16,17
152:20,23 153:20
155:18 156:2 157:8
158:8,9,13 204:2
218:13 219:3,21
221:14 226:7 228:5
228:14 229:15
234:9,23

**ably**
113:3

**abroad**
24:23

**absence**
203:24

**absolute**
87:16 203:24

**Absolutely**
160:22

**abuses**
39:8

**accept**
189:21

**access**
62:17 153:7 173:3

**accompanies**
162:22

**accompanying**
145:12

**accomplish**
201:14

**account**
10:25 19:21 22:17,20
45:8,22,25 46:24
47:2 95:18 101:9
111:9,13 112:18,24
113:3 122:7 170:8,9

170:15 171:23
174:13 175:10
176:7 187:12,19,23
188:8,13 194:23
195:2 219:11,12,17

**accounts**
9:17 19:20,24 22:9
22:14,16 23:3 45:6
112:25 152:18
158:10 205:14

**accurate**
50:10 51:2,6 52:10
64:17 68:14 95:24
98:18 118:24
167:20 189:11
193:21 194:8,10,12
230:23

**accurately**
240:5

**ACH**
100:21

**acquired**
149:22,25 196:23

**act**
27:2,9 48:7,9 78:6
81:6,8,10,14 82:14
82:21 90:17 92:21
150:16 151:9 162:2
193:17 196:4 213:9
213:18,20 214:6,10
214:16 215:10
217:2 222:13 228:3
231:19 233:16
239:23 242:21
243:21 250:13

**acting**
105:19 123:20 247:3

**action**
18:10,15 91:25
138:19 169:10,17
178:13 179:4,22
182:16

**actions**
36:14 37:15 63:10,12
64:5,6 74:16,20
183:21

**actively**
225:7

**activities**
117:24 196:9 199:3

**actors**
79:23

**actual**
16:20 17:4 33:13
42:4 52:21 91:11
193:3

**add**
25:14 58:18 135:7
217:23

**addition**
25:14 59:2 74:12
212:9

**additional**
28:22 113:25 159:12

**address**
8:5 109:10 200:23,24

**addressed**
136:16

**addressing**
138:22

**adjourned**
73:2 135:20

**adjudicate**
36:7 44:6,15 157:21
225:25 226:12

**adjudicated**
41:5,11 42:9,16,18
157:20

**adjudicating**
34:25 43:20,21

**adjudication**
34:6,9 35:7 43:6
218:6 225:20
229:24 231:4
232:23

**administer**
104:14

**administered**
92:16

**administration**
117:25

**administrative**

23:12 24:6

**admit**
218:2,4

**advance**
67:7 81:17 102:22
110:14,23 169:2
172:5

**advanced**
21:15,20 22:18 23:8
23:23 24:22 95:16
114:5,6 171:9
175:17 186:22
187:3,10

**Advanced's**
129:9

**advertised**
224:22

**advice**
80:11 104:12 179:8
182:8

**advisors**
90:13 156:9

**affairs**
28:4 68:5 69:3
117:21 149:3 152:9
181:16 183:4
197:12 206:5

**affidavit**
59:17,18 61:12 62:2
62:8

**afoul**
132:21

**afternoon**
3:10 159:20,21

**AG**
199:12

**agencies**
139:17,22 140:13
142:7,19 143:23

**agency**
143:2

**agent**
15:19 43:17 189:23
192:18

**agents**
15:17



MAGNA
LEGAL SERVICES

26-10769-mg    Doc 49-17    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 17 -
Transcript of May 13    2026 Deposition of P. Pretlove    Pg 259 of 300

Page  2

**agree**
18:16,23 20:22 21:11
26:18 36:10 40:22
41:22,24 53:2 64:16
73:9 77:21 78:7
80:2,4 95:24 96:9
98:18 117:15
144:23 146:8 162:4
162:8 164:18 165:2
192:23 198:6 208:4
209:6,16 217:6
226:13
**agreed**
159:16
**agreement**
85:10 104:20 105:2,6
105:22 113:9,10,23
114:2 132:22
**agreements**
114:13 129:12
132:13
**ahead**
13:10,11 178:20
196:4
**aiming**
181:10 183:2 188:10
188:25
**Airways**
177:25
**al**
1:6 3:15
**allegation**
30:7 204:23
**allegations**
29:6,20 30:7 118:23
137:3 145:21,23
205:24
**alleged**
2:5 18:14 33:25
143:24 169:16
183:20
**Allied**
21:6 123:5,7 128:23
132:25
**allow**
156:20

**allowed**
66:21 156:12
**allowing**
77:2
**allows**
116:8
**alluded**
58:21
**alternatively**
100:21
**Amber**
2:10 4:20 25:18
159:24 160:17,19
162:4,13 164:11,12
164:19 165:2 167:3
168:8,17,25 169:24
178:25 179:13
180:12 181:13,22
182:14 183:5
186:10,14 187:4,8
187:13 188:21
200:22,23 201:4,15
201:19,23 202:3,11
203:20 204:6,14
205:10 206:15
208:25 210:15
211:7 213:2 218:3
221:10 226:25
227:6,18 234:10
**amount**
23:6 86:25 88:6
131:21 173:14
174:20 175:9,16
**amounts**
39:6 91:12 128:8
**analysis**
80:11
**analyst**
2:13 4:18
**analyze**
128:3
**analyzing**
205:21 206:6
**Andrew**
79:3 118:10 196:19
**Andy**

241:18
**and/or**
25:18 29:14 30:2
162:14 179:2
184:22 203:12
243:8,10 253:8
**annual**
190:9,21 192:17
250:13
**answer**
13:11,12 16:24 49:6
49:18 59:6 60:11
66:21,22,23 73:25
82:6,15 91:20 93:2
93:11,23 94:2,11
95:9 97:20 119:12
122:19 139:9
151:17 175:13
181:7 182:20
193:12 202:7,9,23
202:24 212:20
234:22 245:13,17
**answered**
97:8,19 112:12
125:10 175:5
212:19 217:13
219:5 224:20 225:6
226:21 227:12,14
233:3
**answering**
245:11,19
**anticipated**
69:4
**anybody**
56:24 57:13 58:2
61:6 186:4
**anymore**
47:11
**anyway**
30:9
**apart**
105:3
**apologize**
121:18
**appeal**
79:10

**appearance**
4:2 54:21 65:17
**appearances**
2:2 54:18 56:12
**appeared**
54:15
**appearing**
6:8
**applicable**
59:4
**applicant**
54:8,22 249:3
**application**
29:12,25 30:3 53:11
54:7,11 56:10 58:4
59:11,15,15,24,25
60:5 62:14,22 64:14
64:19,25 65:12
72:17,20,24 77:25
78:3,10,14,25 79:15
79:17 80:5,14,17,25
81:5,11 84:9 86:19
103:23 104:11
122:4,17 135:15,19
148:17 195:10
199:18,20,25 200:5
201:9 202:5 203:10
216:14,14 218:23
224:23 237:4
241:15
**applications**
196:6 203:3
**applied**
64:12 74:2
**apply**
87:11 211:13 215:25
253:8
**appoint**
59:16 62:22 64:13
69:10,11 77:25
78:11,14 80:17
197:3
**appointed**
8:7,19 9:2 15:19
33:15 34:22 69:17
72:11 79:14,17 83:7



26-10769-mg    Doc 49-17    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 17 - Transcript of May 13    2026 Deposition of P. Pretlove    Pg 260 of 300

Page 3

92:13 127:23 138:14 156:4 160:12 161:14 194:18 236:2 237:22 239:18 241:8,20 242:2,5 244:12

**appointee**
81:2 85:8

**appointing**
65:15 236:5

**appointment**
8:23 15:24 58:13 68:24 73:14,16 74:14,22 77:22 78:21 80:4,13,25 81:13 84:9 85:3,19 88:22 124:25 127:15 128:9 132:18 134:14,15 134:18 135:16,17 139:3,14,19 140:19 156:2 195:25 198:14 199:7,13 203:9 205:3 215:6 221:24 223:17 224:24 232:15,16 237:5,13 240:25 241:3,23

**appointments**
74:21 83:19,20 86:13 236:11

**appreciated**
68:23

**apprise**
220:11

**approach**
242:9 245:21 246:3

**approached**
242:18,19

**approaches**
129:4 132:9

**appropriate**
85:8 130:7 220:19

**appropriateness**
84:2

**approval**
45:17 46:18,25 87:11 103:16 115:4,9,24 226:10

**approve**
86:23

**approved**
86:18 114:21

**approximately**
16:4 23:11 24:8 169:11 179:14 189:8 204:12 244:6

**April**
20:11 50:6,19,23 52:2 72:25 79:12 120:15 123:14 135:20 137:7 163:22 170:20,24 171:10,19,19,21 206:9

**arisen**
30:5,12

**arising**
75:8 156:25 157:9

**arose**
155:20

**arrangements**
105:25

**arrest**
36:23

**arrived**
55:13

**articulated**
92:8

**Asia**
22:19 144:16

**aside**
27:14 116:15 195:17 205:2

**asked**
15:25 65:11 70:5,9 70:12 81:7 82:13,25 97:7,18 98:22 107:25 112:11 158:21 168:13 181:4 212:18

217:13 224:19 225:5 226:20 227:11 233:2 234:20 240:10

**asking**
49:21,23,23 52:25 53:3 58:12 60:23 96:17 113:16 119:7 122:14 193:6,8 201:19 212:13 238:13,14,14 243:21 244:3,24 245:5,6,18 246:12 246:18,19,20 248:8

**asks**
98:5 155:25

**aspects**
155:18

**assert**
84:17 182:24

**asserted**
19:5 42:11 43:7 92:17 94:17

**asserting**
34:21 35:25

**assess**
125:18

**assessment**
209:16

**asset**
16:20,21 17:12 21:12 21:16,18 27:23 31:4 32:12 33:5 35:12 44:17 45:3,10,21 46:22 47:5 76:8,11 77:2 83:21,23 85:23 86:2 87:4 97:16 102:9 103:8 126:18 127:18 130:13,17 152:4 157:25 174:24,24 181:19 186:13 193:3,13 198:24 205:7 207:19,21,23 219:6 219:9,20,22,24 220:5,9,18,24 221:5

225:22 229:2,3

**assets**
8:21,25 9:6,8 10:23 17:17 18:2,21 21:3 25:4,8 26:13 27:3 27:18,20 28:5,13,18 29:3,8,21 32:5 41:2 44:22,24,25 46:17 69:2 73:8 75:23 76:6 77:6 96:16 97:12,15 98:7,13 115:7 117:22 138:17 147:13 148:8,12 149:4,12 149:18,22,25 151:19 152:9 165:22 172:25 173:4,16 175:15 181:15 186:24 187:3,4 188:8,20 189:14,16,25 190:2 190:5 192:5,12,24 194:17 197:12 198:22 201:18 205:5,13,18 209:22 221:25 222:5,21 223:11,13 226:3,15 229:5 230:2 231:5 232:24 248:11 249:5

**associated**
92:20 147:19

**associates**
198:17

**assume**
196:15 197:6 202:7 202:23

**assuming**
108:11 133:21

**assumption**
189:10

**assurance**
124:6

**attach**
53:10

**attached**



MAGNA
LEGAL SERVICES

26-10769-mg   Doc 49-17   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 17 -
Transcript of May 13   2026 Deposition of P. Pretlove   Pg 261 of 300

Page  4

93:10 248:5
**attaches**
67:3
**attend**
57:8
**attended**
53:23 55:21,22 56:7
206:9
**attention**
59:12 63:8 150:21
248:3,16
**Attorney**
54:22 55:17 56:4,9
57:14,15 58:5,17
59:17 61:12 64:11
65:9 67:8,16,19,20
67:25 68:21 69:6,10
69:15 70:16,24,25
79:18 80:5,14,15
82:14 83:16 84:11
85:3,7,10 116:9,13
116:20 138:24
139:5 142:5 195:24
199:6,19 200:12,18
201:3,22 224:22
238:6,12 239:5,10
239:25 240:22
241:5,14 242:14,20
242:23 243:7
244:21 246:15
247:2,3 248:9,18,22
249:2,9
**attorneys**
2:5,10,15 17:14
**attorney-client**
105:16
**atypical**
241:3
**audible**
6:24
**authorities**
36:15 76:17 125:16
143:25
**authority**
6:5 25:19 44:5 45:18
45:23 46:17 72:15

77:2,3 124:5 130:16
130:24 157:6 222:4
227:17 248:19
**authorizations**
74:11
**authorized**
5:3 17:25 18:6,18
98:12,23 105:25
106:12,15 107:6,15
107:20 115:21
147:10 155:9
168:24 169:6 171:8
**authorizes**
75:23
**authorizing**
74:6
**available**
38:25 86:14 115:2
226:15 229:7
234:17
**Avenue**
2:11
**awaited**
73:4
**aware**
9:16 18:3,20 22:23
25:4,8 28:11 30:7
30:23 34:11 36:13
37:9 38:2,6,13
56:17 97:3,10 98:14
104:25 107:5 111:8
113:22,25 116:19
119:8 125:9 136:7
137:2,6 140:6
142:18 145:22
146:3,17 152:22
153:16 165:11
169:23 188:19
210:21 240:23
242:17
**a.m**
1:12 47:23 48:2

---
**B**
---

**B**
2:12

**back**
10:23 48:2 60:19
61:9 66:2 67:19
68:20 71:17 80:13
86:17 89:9 91:3
95:12 97:24 109:8
110:10 116:5,17
126:25 127:20
128:8 130:2 143:19
150:18 157:5 158:5
158:17,20 160:8
163:17 164:3
165:14 178:8 183:6
207:16 214:21
224:4 230:6 233:7
233:12 234:5,8
235:16 236:9
239:16 243:22
**background**
133:20 134:11
**bad**
206:16 207:24
209:17,23
**bank**
9:17 19:20,24 22:13
22:17 25:23,24 45:5
45:22,25 46:24
101:8 158:10
187:12,18 188:3,15
188:20,25 205:12
205:14 219:11,12
219:17
**banking**
25:17,19,20 26:3,3
198:24
**bankruptcy**
1:2 48:20 52:22 53:4
79:12
**banks**
22:9,12
**bar**
230:3
**BARRY**
2:13
**based**
9:22 13:4,7 19:24

22:14 35:3 43:7
57:7,7 90:16 92:2
93:7,17,18 111:18
111:20 126:22
133:8,13,14 134:2
135:3 152:12,15
179:17 181:4
185:21,22 187:7
201:10 204:24
232:18 238:18
247:19
**bases**
94:10,14
**basic**
28:17 67:12
**basically**
7:12 67:14 86:7
150:5
**basis**
27:4 29:14 40:24
86:16,25 87:23
91:21,22 92:5,7
127:5 139:10
179:19 185:20
192:24 194:13
195:7 198:15
225:19 238:12,25
**baton**
150:11
**Bear**
160:6
**beginning**
29:19 30:22 133:6
140:20 143:18
212:22 231:12
**begins**
3:12
**begun**
30:13 226:24 227:5
**behalf**
4:5,19 6:6,8 11:11
82:14 92:21 106:6
113:3 121:2 123:21
127:3 140:3,8
149:23,25 172:17
182:14 194:19


MAGNA
LEGAL SERVICES

26-10769-mg   Doc 49-17   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 17 -
Transcript of May 13   2026 Deposition of P. Pretlove   Pg 262 of 300

Page 5

205:17 242:10 247:3

**belief**
118:25 126:22 154:23 174:15

**believe**
13:3,24 17:8 36:6 37:3 38:10 43:14 52:24 53:18 62:6 66:13,21 88:4 109:18 110:2 118:22 126:15 127:4,13 130:14 136:4 140:11 148:3 155:2 157:15 163:24 187:12,17 187:23 190:21 196:18 199:22 248:14

**believed**
201:4,5

**believes**
136:10

**belong**
84:11 188:21 245:23

**belonged**
170:12 171:22

**belonging**
169:23 187:13 191:10

**belongs**
171:24 221:8 243:10

**beneficial**
168:9

**benefit**
33:9,13 79:20 209:22

**Bernard**
241:24

**best**
24:18 55:12 57:12 75:11 82:15 87:21 101:5 118:24 120:21 125:13 160:4 186:12 187:6 238:8 242:15

**better**

38:22 72:21 119:6 126:24 127:4 183:3 237:12

**bids**
128:25 129:3 242:15

**big**
148:17

**billing**
88:18

**billions**
39:10

**bills**
91:5,8,12 116:20 154:8

**binder**
99:8

**bit**
48:12 80:23 160:6 165:20 211:20

**Bitcoin**
18:9 19:2,6,10 63:21 169:9,11 178:12 179:2,20,20 180:10 204:12,15 205:18

**blocks**
87:25 126:7

**Boies**
1:10 2:4 3:20 4:5,12 6:3,12 7:9 26:10 33:23 38:10 101:17 136:15 137:15 144:25 145:9,24 146:6,10 151:12 191:6

**bond**
237:17

**borne**
177:18

**bottom**
98:23 167:23 183:10 183:10,12 184:10 184:15 190:23,24

**bought**
14:4

**breach**
193:4

**break**
47:13,16 89:6,7,10 89:11 91:3 108:4,9 109:11 150:5 223:20,22 224:7

**breathing**
237:15

**Bressman**
2:12 4:17,17 147:5 159:19,22 166:11 190:7 208:11 210:3 223:18 224:5 247:7 247:12 250:3

**Bridge**
2:10 4:21 25:19 159:25 160:24 161:3 162:5,13 164:13,13,20 165:3 167:4 168:13,18 169:24 179:2,14 180:12 181:14,23 182:14 183:5 186:11,14 187:4,9 187:14 188:22 191:14,17 193:2 202:6,22 203:20 204:15 205:11 206:15 209:2 210:15 218:3 227:2 227:7,19 234:11

**Bridge's**
192:12

**briefly**
239:13

**bring**
9:13 45:24 46:22 79:5 179:19 182:18 205:17 219:14

**Britain**
143:3

**British**
4:12 8:9 27:16 54:23 79:18 143:2 177:25

**broad**
2:16 41:19 74:3 75:6 75:14,16,18 149:9

**broader**
123:9 124:18 126:2 130:10

**broadest**
125:23

**broadly**
14:11 102:24 131:7 148:13 167:9,11 189:21 240:7

**brought**
37:22

**building**
153:9,10,15 228:22

**buildings**
158:11

**bulk**
87:9

**bullets**
41:20

**bunch**
160:2 176:24 191:3

**bundle**
61:21

**business**
14:9 15:22 21:19 46:8 123:23 124:20 125:25 126:9,10,17 126:18,19,20 127:10,12,16 128:4 129:6,20,25 130:13 130:20,23 131:9,11 131:23 132:5,11,25 219:25 220:3 229:8

**businesses**
23:25 148:12 237:19

**buyout**
132:5

**BVI**
10:19,20,20 15:16,17 15:23 26:25 27:9 29:5 30:12,22 31:14 32:17,18 35:5,6 43:19 44:2,11,14,22 45:14,15,17 46:9,18 46:25 48:6,8 53:8 53:13 55:8,13 56:16



MAGNA
LEGAL SERVICES

26-10769-mg   Doc 49-17   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 17 -
Transcript of May 13   2026 Deposition of P. Pretlove   Pg 263 of 300

Page 6

57:7 62:15 64:12
65:2 70:16 71:14
72:3,7 73:2 74:6,11
77:14,24 78:2,5,9
78:15 81:3,12 83:17
86:12,18 87:13 90:8
90:16 92:23 93:7
94:5,7 103:16,22
104:4,13 106:16
109:16,19,21
114:22 115:5,8,21
116:8,22,25 117:11
118:5 119:9,21
120:2,19 124:2,22
125:2 130:22 133:4
135:14 138:2,15,24
139:5 142:5 143:7
143:10 145:5,8
155:6,23 157:5
158:5 160:14 161:6
161:21 162:2 175:2
177:22 189:4 190:9
190:19 192:18
193:4,17 195:24
196:3,22 197:2,23
199:6,12 200:12
201:3,22 203:3
210:5,13,19 212:12
213:17 214:24
215:20,20 216:3,8
216:15,20 217:17
217:21 218:14,19
218:24 219:4 220:4
220:7,11,24 221:7
222:3,13,25 223:10
224:8,11,18 229:16
230:4,18,22 231:18
231:19 232:19
233:15 235:2 236:2
236:5 238:3,6 241:9
243:24 246:16
247:2 250:13 251:4

**BVI's**
72:22

---
**C**
---

**cadence**
71:11
**call**
6:16 7:15 16:19
31:16,21 34:7 35:15
60:20 218:25 221:6
221:9
**called**
5:11 6:14 9:20 15:21
22:19 24:14 42:8
160:16,23 164:21
166:2,3 186:22
228:18 236:15
**calling**
5:4 26:7 167:3
**calls**
26:21 80:9 115:15
118:7 131:4 151:15
217:13
**Cambodia**
36:22 143:24
**Campbells**
2:21 4:11
**capacity**
174:6,7,9
**caption**
18:12
**captioned**
18:11 169:10
**care**
84:21,24
**careful**
58:23
**Caribbean**
53:7
**cars**
37:10
**case**
18:13 27:11 31:23
38:5,15 76:24 77:11
79:13 81:3 88:3
120:19 134:16
141:2 153:2 181:12
181:14 206:7 212:3
212:21 232:15,21
233:5,18 236:14,15

237:3,10 241:13,20
242:8,9,12 248:15
**cases**
76:18 77:6 83:22
208:17 209:13
236:16
**cash**
22:9,11 45:5,5,7
127:19 128:8 195:3
195:3
**cast**
156:21
**cataloguing**
149:12
**catchall**
221:21
**categorically**
19:15 176:18
**categories**
41:18,20 227:9
**categorize**
21:17 89:16 102:5
123:18 179:9
**categorized**
166:6
**category**
151:21 152:13 183:6
**caused**
111:23 153:8,14
**caveats**
176:20
**Cayman**
143:6,10
**cease**
233:6
**ceased**
188:16
**ceases**
231:8
**cede**
159:3
**Centralized**
117:20
**certain**
123:2 127:15,21
146:3 155:18 156:5

158:6 188:24
197:24 203:17
**certainly**
123:24
**certification**
253:8
**CERTIFY**
253:2
**certifying**
253:8
**cetera**
37:10 39:2 90:12
156:4 169:12 196:9
199:17 204:16
**chamber**
56:23
**chambers**
56:19 69:15 70:5
**chance**
60:6 167:18 190:13
210:9
**change**
8:16 45:8 124:12
128:9 202:20,20
**Chapter**
6:2 10:15 17:10
25:25 48:21 52:18
66:12 96:6 106:11
119:25 130:14
148:16 154:21
180:6,22 181:24
188:10 189:2
195:10 248:4
**characterize**
172:11
**characterized**
172:6
**chargeable**
177:24
**charged**
43:19 44:21 138:21
**charitable**
38:22
**Charm**
9:19,25 11:19,24
12:10 13:17,20,24



26-10769-mg    Doc 49-17    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 17 -
Transcript of May 13    2026 Deposition of P. Pretlove    Pg 264 of 300

Page 7

14:3 16:12 166:3
186:7,9
**check**
100:22 125:8 137:24
190:20
**Chen**
34:2 36:12,18,23
37:21 38:3,11,15
63:15 136:7 137:3
137:12 138:19
146:18 162:12,20
169:18 198:16
204:8 205:22
235:12,13 244:9
**China**
36:25 37:2
**Chissick**
57:24 73:5 77:20
79:3 118:10 196:16
230:15 231:9
**Chissick's**
119:3 196:12
**Chris**
247:9
**Christopher**
2:17 4:14
**cigar**
21:6,7 123:5,7,23
125:25 126:20
127:15 128:23
131:9 132:5,25
219:25 220:2
**cigars**
132:2
**Cigna**
188:3
**circumstance**
218:18
**circumstances**
73:11 76:9 155:17
157:4 176:2 220:12
220:15 221:17
226:5,23 229:20
232:16 241:12
**circumvent**
92:23

**cite**
196:12
**cited**
206:19
**citing**
231:9
**civil**
18:10 63:20 79:21
146:15,15 169:10
178:13 179:3,21
182:15 204:10
206:3
**claim**
19:5,16 35:7 39:6
115:13 179:10,11
179:19,25 180:19
181:2,3,5 182:7,7
182:15,18 225:9,9
226:12,13,19
227:21 229:24
**claimants**
34:17 36:2 38:18
39:3 41:8 42:14
233:20,23
**claims**
9:11 11:5,6,10,14
18:13 31:3,12,17,22
31:22 34:6,7,8,8,21
34:23 35:13,19 39:9
41:4 42:8,11,15,17
43:7,10,20,21 44:6
44:16 97:11 136:12
149:4 165:24
169:15 178:23
180:15 182:2,24
183:7,19 184:16,24
185:7,8,20 186:3
194:19 205:16
225:25 227:22,25
229:17 230:3 231:4
232:23 233:20,24
233:25
**clara**
23:16
**clarified**
126:6

**clarify**
133:11 155:7
**clarity**
71:14
**class**
218:22
**classed**
81:9
**classify**
225:16
**clean**
7:25
**clear**
7:22 9:23 12:21 93:5
99:18 153:18
157:16 185:5
208:14,23 243:12
**clearer**
97:23
**clearest**
153:19
**client**
91:24 95:18 105:12
106:24,25 112:24
170:15 171:23
174:13 175:10
176:7 192:19
**clients**
92:20,22
**ClinChoice**
9:20,22 11:25 12:3,6
12:13,16,18 13:3,6
13:13,14,25,25 14:5
14:8,13 16:13 17:7
20:6 166:3 186:7
**close**
131:23
**closed**
25:21 180:9 188:14
**closer**
128:15 244:17,18
**code**
96:7
**coin**
19:10
**collapsed**

127:18
**colleague**
159:15
**colleagues**
92:19 150:9 159:3
197:3,24
**collect**
181:11
**collected**
11:23 134:19,20
147:25
**collection**
236:16
**collective**
230:19 231:23
**collectively**
140:23
**colloquy**
208:8
**column**
192:5
**come**
31:2 37:12 38:19
75:21 82:3 86:17
89:9 91:3 101:11,16
101:20 159:10
203:21 204:22
225:10 227:17
233:20 242:15
**comes**
87:5,22 94:21 103:10
196:16
**comfort**
130:6
**comfortable**
200:6
**coming**
103:11 203:16
**commence**
201:22 230:3
**commenced**
117:12,16 120:24
121:3 200:22 201:3
**commencing**
1:11
**comment**



26-10769-mg   Doc 49-17   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 17 - Transcript of May 13   2026 Deposition of P. Pretlove   Pg 265 of 300

Page  8

58:11 67:8
**commentary**
145:13
**comments**
58:14 60:7,16,18
241:18
**commercial**
21:25 153:11
**commission**
81:12,17,23 83:4
89:21 194:2 254:10
**committee**
69:24 70:2,7 156:13
156:17
**common**
82:7 139:12
**communicate**
69:17 70:6,9,12
71:10
**communicating**
140:24
**communication**
71:15 138:23 185:23
244:22,23,25
**communications**
70:15 71:8 80:21
122:6 132:24 139:4
139:16,21,25 140:3
140:6 185:15,21
243:19,20 244:4,5
246:14,23,24
**companies**
7:13,15 8:14 9:2
15:18 16:3 19:6
21:7 24:5 28:6,9
30:3 33:14 42:12
66:11 69:2 92:14
105:18 106:2,4
138:17 145:5,8
147:19 149:4,21
175:15 181:15,18
181:20 190:6,22
194:18,20 201:8
203:16 205:5,9,17
206:5,8,18 211:24
211:25 212:16

229:5 237:14
242:11
**company**
15:21,22 27:5,7 28:3
31:5 46:3 59:16
66:15,18 68:6 103:9
106:2 127:22 152:4
153:19 192:20
193:14 204:2
227:10 229:8 231:2
231:8,13,21 232:7
232:20 233:5,7
237:2,4,7,9,13
238:2 249:6
**company's**
26:17 151:22
**comparable**
241:17
**comparison**
209:13 241:12
**comparisons**
208:19,20
**compensation**
235:14
**competition**
241:9
**competitive**
240:16 242:8
**complaint**
25:16 62:24 63:20
64:23 135:5 162:21
204:10
**complement**
180:24
**complete**
28:16 148:4,6 195:8
**completed**
33:10 152:7
**completing**
83:7
**complicated**
151:16
**complication**
145:12
**complications**
103:20

**complied**
193:16 194:6
**complying**
249:4
**compound**
158:21
**compounds**
143:23
**comprehensive**
155:2 213:16
**concept**
222:23
**concerned**
138:14
**concerning**
138:17
**concluded**
19:14 37:8
**conclusion**
26:22 80:9 115:10,16
118:8 131:4 151:15
217:14 231:7
**conduct**
69:3 126:10 147:17
194:14 198:22
**conducted**
147:21 154:25
**confidence**
127:6
**confidentiality**
155:21
**confirm**
28:15,21
**confirmed**
42:23 135:18
**confirming**
124:4
**confiscation**
25:16 37:5
**connected**
23:21 28:2 68:5
147:23,24 204:8
206:8
**connection**
9:15 10:4 20:5,19
49:19 54:19 109:17

116:21 187:8
248:10
**connections**
25:9 97:10
**consent**
58:13 81:6,7,8,14,21
82:3,13,21,25 85:2
239:23 242:20
243:21
**consider**
41:10 43:10 44:18
65:8 83:10 138:11
227:23
**considered**
63:4 65:4,8 110:5
203:7,15 240:23,24
**considering**
229:17
**consistent**
116:7
**consists**
18:3 98:14
**consolidated**
161:7
**constantly**
75:7
**Constellation**
236:18
**constituency**
239:4
**constituted**
70:7
**constrain**
26:24
**construction**
215:20
**consult**
157:2
**consultative**
67:24 69:23 70:2
**contact**
38:20 142:6,21 156:8
**contacts**
155:25
**contain**
189:24 190:2



26-10769-mg   Doc 49-17   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 17 -
Transcript of May 13   2026 Deposition of P. Pretlove   Pg 266 of 300

Page 9

**contained**
118:23 199:18,25
200:5
**contend**
168:6,7
**content**
243:22
**contention**
171:24
**contents**
16:8 212:5
**context**
109:19 119:14
208:16
**continuation**
74:14 79:9
**continue**
37:2 41:12 212:6
**continued**
73:2 128:5 237:20
**continues**
41:15
**continuing**
25:7 28:19 148:15
149:10 198:18,20
**contracts**
113:22 114:3 122:6
**control**
45:8,25 46:23 117:21
196:24 198:17
219:15 253:8
**controlling**
21:5 144:3
**Cont'd**
110:8 251:2
**convenient**
47:8
**conversations**
140:11,14 141:9
142:2 186:2
**converting**
45:4
**convey**
203:6
**convicted**
208:18

**cooperation**
68:2
**cooperative**
148:22
**coordinate**
207:15,19
**coordinated**
117:25
**coordination**
71:15
**copied**
71:5,6
**copies**
166:16
**copy**
48:10,13 60:12 81:14
98:24 166:13
**corner**
190:25
**corporate**
198:25
**Corporation**
128:23
**correct**
7:14 8:10,11,18
10:12 11:2,3,13,17
21:16,22,23 22:3,4
22:6,7,12 26:8,9
29:9,11,22 31:24,25
32:11,12 33:8 37:24
44:6,22 47:3 48:24
48:25 50:4 51:24,25
52:7,8,23 53:9,13
53:14 54:24,25 55:3
55:25 56:2 58:7
63:16 64:8 67:3
68:7 72:12,13,15
77:12,13,16 78:13
78:22 80:16,19
85:14,15 87:8 89:13
90:5 97:17 99:6,19
99:22 103:13
104:18 106:13
107:22,23 112:18
112:21,22 114:8,11
115:9 116:10

117:13 119:4 120:4
120:16,17 122:2,23
123:2 139:25 140:4
140:5 145:18
146:16 147:14,15
154:16,17 155:10
156:22 157:12,13
157:18,23 158:24
161:23 163:25
170:16 173:2
189:15,22 204:23
211:4 238:21
239:20 247:23
248:25 249:11
**correctly**
24:21 216:21
**correspondence**
127:25 174:3
**cost**
177:10
**costs**
85:12 116:21 177:17
248:10,21 249:4,10
**counsel**
3:25 6:4,15 70:18,20
107:14 109:22
166:14 167:16
191:5,10 206:14
207:16 234:20
**counterparties**
122:9 124:7
**countries**
22:3,5
**couple**
20:20 110:11 121:6
150:10
**course**
5:7 9:4 19:18 68:23
229:7
**court**
1:2,12 3:22 6:24 8:9
30:8 35:6 37:22
44:2,11,15 45:14,15
45:17 46:9,13,18
48:20 52:22 53:4,7
53:7,13 56:16 57:9

58:9 59:19 62:11,13
62:15 63:3 65:3,7
74:6,11 77:14,18
78:2,15 80:7 82:10
86:12,18,22 87:13
87:20 90:8 93:7
94:5,7,18,20 103:17
103:22 104:4
114:16,22 115:5,8
115:21,24 116:3,8
116:22 117:21
120:25 121:4
130:22 135:14,22
136:6,8,16 138:2,6
138:7,15 146:9,13
146:15 156:15
157:6,10 158:5,17
158:20 175:3
177:22 197:2,23
203:3 210:6,13,19
212:12 214:7
215:11,17 216:4,15
216:20 217:17
218:14,19,24 220:4
220:7,11,13,24
222:4 223:11 224:8
226:10,10 228:11
229:16 230:4,19
236:22 241:19
248:24 249:14,16
251:4
**courtroom**
56:19,20 206:13
**courts**
230:22
**court's**
77:24 78:10 92:23
155:22
**court-ordered**
67:14
**cover**
84:13 137:20 247:22
**covered**
84:19 157:15 160:8
243:23
**covers**



26-10769-mg   Doc 49-17   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 17 -
Transcript of May 13   2026 Deposition of P. Pretlove   Pg 267 of 300

Page  10

143:4,6
**co-conspirators**
162:16
**co-officer**
127:24
**created**
204:7
**creditor**
32:10 41:9,11 42:19
42:24 43:3,20 79:15
118:12 119:16
155:25 156:22
157:18,20,21
218:23 225:25
226:6 228:18 231:4
232:23
**creditors**
30:16,17,23 31:2,15
31:17 32:7 33:9,13
33:23 34:12,15
40:12,21 41:4,17
42:2,4,15 43:4,6,11
44:19 155:5,10,16
155:19 156:5,7,12
156:13,17,21 157:2
157:9,12 158:3
202:18 209:23
213:2 218:3,5,8
224:17 225:4,16
226:18 227:17
228:15 237:16,16
238:25 239:6,11
**crime**
92:15
**crimes**
146:10,19
**criminal**
34:20 35:15 36:11,20
37:3,20 38:2,15
39:5 68:4 71:19,22
134:25 138:19
144:2 145:20,22
146:2,23 162:17,19
198:19 204:25,25
206:2,7
**Cromwell**

2:15 4:16 9:10 10:8
11:2 18:4 19:22
52:6 89:19 90:3,5
90:12 91:6,15 95:2
95:18 96:13 98:15
98:25 99:13,22
100:12 102:2
104:18,21 105:3,11
105:17 106:21
107:5,13 110:11
111:13,14,17 112:8
112:25 113:8,12,24
114:11,15 123:20
125:20 127:3
138:12 140:3 141:5
165:23 169:4
171:10 172:13
174:14,18,19 175:8
176:9 183:17
250:13
**Cromwell's**
106:24 110:24
111:10
**cross-reference**
146:6
**Cuba**
126:13
**current**
130:21 131:20
152:12 179:17
219:4
**currently**
9:16 18:3,19 44:20
44:21 85:17 98:14
214:24 217:10
218:2 219:16
**custody**
207:22,23
**cut**
153:7 228:20 229:12
**C-L-I-N-C-H-O-I-...**
12:14

_____

**D**
_____

**damage**
153:8

**damaged**
153:14
**damaging**
228:25
**Dan**
2:21 4:8,10
**Daniel**
2:20 3:21
**dark**
181:19
**dash**
62:4
**date**
1:12 8:12,14 12:17
21:4 49:21,22,24,25
51:3 52:14 66:4,5
81:20 89:16 100:16
135:17 146:9
148:22 191:21
244:10 249:9 254:6
**dated**
50:6 66:4 100:4
253:4
**dates**
140:16 246:13,19
**Davies**
144:17
**Dawn**
55:2
**day**
52:10 57:22 63:18
65:22,24 75:8 77:19
125:7 243:24 248:8
254:8
**days**
81:24
**deadline**
31:22
**dealing**
118:10
**dealings**
127:25 198:25
**deals**
143:3
**dealt**
248:20

**debt**
43:15 153:5,20,23
**debtor**
104:8 112:21 221:10
233:24 249:7
**debtors**
1:7 2:5 3:3 4:6,20 5:5
6:12,13,16 7:10,10
7:16,20 8:22 11:11
17:17 18:2 19:21
20:4,9 21:12 22:24
23:4,5 24:16 25:10
26:7,11 27:19 28:11
29:2,7 30:21 33:24
40:11 64:13 75:23
85:14 95:15 96:5
98:6,13 101:17,21
102:8 103:11
105:13 106:7,16,19
111:23 114:4,14
117:21,22,23 120:3
120:20 121:25
128:22 130:17
132:6 133:25 145:2
145:10,24 146:10
149:23,24 151:12
152:23 154:9
159:24 163:13
164:6,8,20 165:23
166:6 169:7 171:25
172:18,25 173:4,8
173:20 174:8
176:23 177:4,4
178:10 196:2,24
197:10,13 198:17
198:19,21 206:14
208:5 209:17 221:9
224:18 225:4,17
235:9 248:12
250:13
**debts**
26:19 151:23 152:21
152:24 153:4
**December**
127:13 244:18
**decide**



26-10769-mg    Doc 49-17    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 17 -
Transcript of May 13    2026 Deposition of P. Pretlove    Pg 268 of 300

Page 11

180:20 247:15
**decided**
85:7 203:8
**decides**
87:17
**decision**
73:3 85:2 203:16
**decisionmaking**
85:6
**declaration**
3:7 31:18,21 48:20
50:14 73:6 119:4
121:7 133:6,12
137:4,7,11,19
142:11 154:11
163:4,18 195:16
196:13,19 210:13
218:11,13 230:7,14
232:7 236:10
250:13
**declarations**
138:6
**declare**
32:15 33:6 34:7
158:2 218:7 225:23
230:2
**declared**
41:3 118:20
**deem**
41:9
**deems**
90:17,18
**define**
167:10
**definitely**
137:14
**definition**
27:17 74:4 119:23
151:8,13 154:3
211:9
**definitions**
126:4
**Deitrich**
208:9
**delineate**
211:22

**delineated**
197:25 211:2 215:13
**demonstrate**
46:13
**denied**
78:25
**denies**
77:14 78:20
**denominated**
9:17 22:16 46:3
152:18
**deny**
78:12 218:2,5
**depart**
74:7
**Department**
63:25 140:12,15,24
141:12,16,21 142:4
163:12 164:5
**departments**
141:6
**depend**
76:8 174:23 229:19
233:4,18
**depending**
31:4,5 71:13 73:11
86:25 155:17 157:7
**depends**
26:23 45:10 77:18
124:4 152:3 156:24
156:25 157:3
174:22 175:14
176:2,15 182:6
201:17 211:9 219:6
219:23 221:17
226:5,22 232:15,25
241:11
**deposed**
6:20
**deposit**
45:7,25 46:23
**deposition**
1:9 3:13,18 5:7 6:10
49:3 159:7,13 160:9
253:2
**deriving**

212:16
**describe**
71:11 90:6 104:2
105:7 112:3,5
172:12 173:9,10,11
178:24 180:22
182:25 211:12
230:18
**described**
39:4 77:3 83:2
105:18 106:12
115:20 121:14
134:10 148:9
162:16 221:20
**describes**
63:15 79:4 134:25
136:17 162:15
**description**
68:14 74:24 178:23
196:15
**designations**
164:15,24
**designed**
92:23
**detail**
86:21
**detailed**
14:12
**details**
12:20 16:16 77:8
141:13 155:18
156:2,3
**detain**
36:23
**determination**
34:5,9 77:24 78:10
**determinations**
78:12
**determine**
31:15 42:18 196:8
202:13 227:7
**determining**
180:14
**detrimental**
229:2
**develop**

130:8
**developing**
126:12
**dial**
56:21
**dialed**
57:3,6
**dialled**
56:22
**dictate**
212:6
**Dietrich**
241:18
**difference**
59:22 60:2
**different**
5:24 37:14 41:20
54:5 79:8 86:24
95:5,5 96:23 111:3
112:24 119:19
136:22 154:6
176:20,24 186:10
**differently**
217:5
**difficult**
123:17,24 125:18
132:14 182:9 200:3
229:23 245:8,22
**difficulties**
123:15
**dig**
218:20
**direct**
34:14 59:12 82:5
154:8 248:3 253:8
**Directing**
248:16
**direction**
44:10 104:4 158:5
216:19 218:14
220:14 226:11
**directions**
45:14 211:14
**directly**
10:2 23:5 31:9,13
38:19,20 101:12



26-10769-mg    Doc 49-17    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 17 -
Transcript of May 13    2026 Deposition of P. Pretlove    Pg 269 of 300

Page 12

141:4

**directors**
28:2 147:13,19
162:14 181:17
192:25 193:15,20
194:5 197:11,21
198:7 203:25
211:25

**disagreement**
224:9

**discharge**
104:15

**disclose**
77:8 89:5 185:3,10

**discount**
86:8

**discover**
188:10

**discovered**
25:12

**discovering**
149:20

**discovery**
26:2 180:7,20 205:12

**discuss**
216:6

**discussed**
58:25 141:8 243:13
244:4

**discussing**
109:10 165:15,16
235:22

**discussion**
85:6 92:12

**discussions**
38:24 129:10 132:17
141:4,7,18 143:8

**dismissed**
79:2

**displaced**
197:14 198:8

**dispute**
5:3 6:5

**dissolved**
231:8

**distinction**

45:20 46:5 134:7
239:12

**distinguish**
164:19

**distinguishing**
231:24

**distribute**
46:25 131:16

**distributing**
32:7

**distribution**
31:18,20 32:10,15,22
33:3,7 34:7 35:9,11
41:2,3 42:25 129:19
157:11 158:3
202:18 218:8,15,22
225:23 230:2 231:5
232:24

**District**
1:3 18:12 37:22,23
38:5 62:19,25 63:19
64:7 95:14 136:9
137:13 144:24
206:10

**divest**
198:16

**divide**
103:21

**dividend**
31:20 218:7

**document**
5:21 17:18 39:22
51:14,18 54:13
59:25 60:13 61:16
67:17 74:12 84:19
97:24 113:7 121:15
144:7 149:16
150:21 166:23
183:24 184:9
189:19 190:10,13
190:15,17,24 191:6
191:9,25 194:3
204:13 238:10
250:13

**documentation**
173:19

**documents**
16:4,7 17:15,16
39:23 40:7,11 48:16
48:24 49:2,10 59:19
61:3,5,8 62:10,12
63:3 65:7 84:8 98:5
98:22 99:8,16
104:25 113:5 122:8
122:14,16 133:9
134:21 135:5,21,25
146:4 159:9 189:3,7
189:10,13 190:18

**doing**
68:18 116:22 146:25
220:20 230:5

**dollar**
9:17 22:16 88:23
89:16

**dollars**
12:24 13:21 39:10
88:7,8 128:7

**doubt**
171:14

**draft**
58:11

**drafted**
58:5

**draw**
63:7 85:20 86:15,23
103:18,25 114:23
115:2,6 150:20
175:2,8 176:10

**drawing**
85:18 208:19,19
209:12

**drawn**
104:7 111:21 174:17
175:14,22

**driving**
212:10

**Drury**
55:21,24 56:3,8 57:3
57:7,14 65:16 88:5
107:21

**dual**
237:19

**due**
43:15 151:24 152:21
152:25 153:4,5,21
212:11 216:4
226:14 248:21

**duly**
5:12 83:2 253:2

**Dunn**
4:14

**Dunne**
2:17 4:14,24 11:7
13:8,10 16:23 19:12
26:20 27:21 29:10
30:14 33:11 38:17
40:23 42:7,21 47:7
47:14,19 49:5,9,17
55:19 58:19 60:9,21
60:25 66:19,25 75:4
75:17 77:17 78:23
80:8 82:4 84:21
88:25 89:11 91:19
91:22 92:7,11 93:8
93:20,25 94:7 95:8
95:11 97:7,18
104:10 106:18
107:17 108:6 109:9
109:13 112:11
113:13 115:14
117:5 118:7,18
119:11,22 120:8
121:9,18 122:18
125:17 131:3 132:7
134:5 139:8,11
141:3 150:25
151:14 155:11
156:23 159:16
162:7 164:23
167:15 170:18
172:8 173:22
174:21 178:19
182:5,19 184:3
189:17 193:22
199:9 200:15
201:16,25 202:8
203:5 205:25 208:7
209:10,18 212:2,18



26-10769-mg    Doc 49-17    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 17 - Transcript of May 13    2026 Deposition of P. Pretlove    Pg 270 of 300

Page  13

214:25 217:12
221:16 222:6
224:19 225:5,18
226:4,20 227:11
228:16 229:18
232:13 233:2
234:24 239:7
240:19 245:12,16
247:10,16
**duration**
 77:23
**duties**
 75:25 90:24

**E**

**E**
 5:11,11 109:2,2,4,4
**ear**
 247:22
**earlier**
 40:7 80:23 97:8,9
 102:11 155:5 158:7
 160:8,11 161:19
 165:20 166:10
 178:17 180:5
 186:21 187:11,17
 188:12 189:6
 199:21 202:25
 219:6,25 221:21
 222:9 226:6 228:6
 235:22 239:16
 241:19 243:6 248:8
**early**
 8:10 9:11 19:3
 123:14 244:13
 246:12,22
**earn**
 174:20
**easier**
 125:15
**Eastern**
 18:12 37:23 38:4
 53:6 62:19,25 63:19
 64:6 136:8 137:13
 144:24
**EBITA**

 21:8
**ECF**
 120:9 151:4
**effect**
 229:3
**effective**
 68:2
**effectively**
 115:12
**efficacy**
 141:9
**efforts**
 32:3 83:23 122:11,15
 122:21 220:17
**either**
 14:4 39:6 77:23 78:2
 89:6 121:8 141:9
 169:24 173:12
 187:13 188:21
 203:13 209:7 212:4
 226:25 227:6
 235:10 239:24
 246:15
**electronic**
 246:14,23
**eligible**
 96:5
**email**
 16:9,25 17:3 35:21
 61:3,4,7,9,22 100:9
 100:10 234:6,13
 235:11 242:23
 246:4,14,22
**emailed**
 61:20
**emails**
 16:11 35:25 71:5,6
 234:9
**embark**
 229:24
**employed**
 172:17
**employee**
 62:6
**employees**
 69:16 70:4,8

**employment**
 200:13
**enable**
 117:24 126:15 127:7
 180:23
**enabled**
 128:13 129:18
**encapsulates**
 118:12
**encompass**
 90:11
**encompassed**
 97:13
**encompasses**
 200:4
**ends**
 77:15 78:21
**enforcement**
 139:17,22
**engage**
 230:4
**engagement**
 85:9 105:2,6,10,21
 106:20,23 113:11
 113:18 125:19
 243:5
**engaging**
 106:3 110:19
**enshrined**
 185:25
**ensure**
 182:17
**enter**
 35:6 237:17
**entered**
 53:12,15 66:6 125:6
 132:14 180:11
**enterprise**
 198:19
**entire**
 9:2
**entirely**
 123:6
**entirety**
 118:13 119:17
 153:10 190:5

 199:24 211:16
 212:4,21 213:5,9
 228:21
**entities**
 5:25 13:3 15:16 17:2
 22:24 23:2,4,20,25
 26:5 30:24 31:3
 34:22 42:10 75:9
 103:4 146:5 147:22
 151:18 152:17
 160:13,16 161:8,12
 162:15 165:3
 175:23 180:21
 181:13 182:3,3
 186:18 199:8
 200:14 203:22
 204:17 205:23
 208:14 209:8
 210:20 220:22
 227:8,20 232:3,20
 233:24,25 234:3
 238:5,7,25
**entitled**
 42:22,24 44:19 45:23
 86:23 87:6,17 89:12
 114:17 173:14
 216:7
**entitles**
 85:20
**entity**
 9:20,25 10:3 12:3,10
 12:25 13:4,5,7,15
 23:7,11 24:12,24
 31:12 45:12 140:7
 160:23 166:2,3
 172:16 186:10,22
 189:14,15 192:18
 201:18,24 202:4
 204:7 208:6 226:18
 228:8,11 229:17
 237:24
**entry**
 140:25
**equally**
 78:17 103:5
**equation**



26-10769-mg    Doc 49-17    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 17 -
Transcript of May 13    2026 Deposition of P. Pretlove    Pg 271 of 300

Page 14

85:4
**equitable**
27:11 29:14,25
201:11 203:12
**equivalent**
195:4
**errors**
136:10
**ESQUIRE**
2:6,7,7,12,12,17,18
**ESQUIRE(VIA**
2:8,13
**essentially**
143:5 191:25 221:23
**establish**
17:11 28:20,25
195:12 202:15
203:13 204:4
227:21
**established**
12:4 24:19 186:17
228:14
**establishing**
206:7
**estate**
20:7 21:25 85:24
86:14 102:10,12
104:14,16 173:25
177:24 218:10
228:2
**estates**
32:6 47:6 90:7,22
102:20 103:22,25
109:15 115:3
172:22 174:25
**estimate**
55:12
**et**
1:6 3:15 37:10 39:2
90:12 156:4 169:12
196:9 199:17
204:16
**euro**
22:20 241:22
**euros**
22:19 23:12 24:9,23

**event**
110:25 173:16
**evidence**
19:9 66:14,17 199:21
199:23
**ex**
56:15 135:16
**exactly**
7:24 57:20 65:6
105:23 179:24
216:16
**EXAMINATION**
5:15 110:8 159:18
247:25 250:3,3,3
**examined**
5:13
**example**
27:10 31:7 34:12
36:18 37:9,11 43:12
43:13 45:2,5 46:4
145:5,15,16 153:6
153:19 155:24
158:7,12,19 195:3
211:15 219:11,24
220:17 226:6 228:5
228:17 229:21
233:5 234:21 238:4
**examples**
75:16,21 152:23
153:17
**exceed**
27:3,18,20 28:13
29:8
**exceeding**
29:2,21
**exception**
22:17
**excerpted**
210:5,14 251:4
**exchanges**
243:7
**exclude**
49:17
**exclusively**
197:14
**exercise**

73:22 76:4 214:5
215:8 216:25
**exercising**
75:7
**exhibit**
3:2,5,7 5:21 21:14
31:8 39:14,18 40:3
49:25 52:17 63:6
66:3 68:10 73:18
99:12,19 107:9,10
107:17 120:5,6
144:10 147:2,9
150:15,22 153:3
166:17 190:9
206:25 210:5
214:13 215:6
235:16 248:4
250:13,13,13,13,13
250:13,13,13
251:4,4
**exhibits**
210:12 250:10 251:2
**exist**
149:5 231:8 233:6
**existence**
8:25 96:15 224:23
**existing**
11:6 130:18
**expect**
41:16 45:13 46:8
72:10 76:21 103:22
220:3,11 230:4
**expectation**
35:5 177:21 220:23
**expense**
101:19 102:6,16
104:7 112:15 116:4
172:20 177:8,11
178:3
**expenses**
85:19,21,22 86:4,16
86:21 89:13,15,17
89:23 90:10,19,20
90:21 103:5,19,24
104:15 109:14
114:5,18,20,24

115:9,23,25 116:9
116:13 172:5 175:2
175:16,22 178:6
**experience**
83:17,25 110:19
133:20 134:11
232:19
**experiences**
35:3
**expire**
124:14
**expires**
254:10
**explain**
72:22 79:7 125:21
228:4,13 229:21
**explained**
35:10 40:25
**explanation**
136:18
**expressed**
31:12 129:6 132:10
**expressing**
31:2
**extended**
143:10
**extent**
12:9 26:21 59:3 82:6
84:7 109:23 115:15
131:3 142:24
143:16 151:18
154:24 155:3
182:20 196:8 198:8
203:14 217:18
222:20 226:14
227:16
**extradited**
36:24
**e-filing**
62:16

———————————
F
———————————
**F**
109:2
**face**
189:21



26-10769-mg   Doc 49-17   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 17 -
Transcript of May 13   2026 Deposition of P. Pretlove   Pg 272 of 300

Page 15

faced
176:16
facilitate
68:2 117:23
fact
27:14 111:20 152:16
facts
133:7 205:21
Fagin
1:12 3:23 253:4
failed
127:16
fair
11:9 16:19 29:4 42:6
46:20 61:10,11
84:16 87:14 132:16
133:22 135:11
136:24 137:18
151:17 153:25
161:24 170:10
198:10 200:7
210:24 239:3,8
fairer
133:17
fairly
76:20 82:24
fall
41:17 75:20 151:21
151:23 152:21,24
153:4,20 185:8
falls
75:15 115:19 130:20
154:2 178:22
221:20
familiar
17:18 48:6,8,14,23
55:6 83:17,25
144:15 222:12,23
familiarity
213:20
far
9:24 11:23 19:8
20:10 22:13 26:12
29:24 32:5 56:17
81:24 99:25 138:14
148:14 152:16

180:25 187:8
189:12 210:21
233:20 243:22
FBI
141:24 142:2
FCDO
142:24 143:5,11
February
55:13 126:25
fee
89:20 91:12 105:9
116:4
feel
229:5
fees
85:12,18,20,21 86:3
86:9,15,18,21 87:7
87:11,18,22 88:24
89:24 90:2,9,11,13
90:18,18,21,23,23
91:4 103:18,23
109:14 110:24,25
111:14 114:18
115:22,25 116:13
fellow
67:16
Femino
2:7 4:8
Fenchurch
31:9 43:18 145:15
figure
243:16
figuring
226:17
file
62:11,13 96:5 182:2
193:25
filed
5:25 11:10 34:2
38:12 48:19 51:16
54:7 58:4 63:19
122:16 127:12
137:7,11,23 138:5
182:15 186:3 196:5
204:11
filing

52:22 59:19 89:20
123:13 127:14,22
filings
136:8 137:12
fill
188:25
Filled
252:11
final
115:4 200:21 231:16
232:10
finalized
66:9
finance
129:7
financial
20:3 81:11,16,22
83:3 89:21 124:6
148:25 149:3 180:8
180:11 183:4
187:25 191:21
193:25 201:15
206:4
financially
33:17
find
116:16 149:13 221:8
fine
5:9 48:15 59:9 82:16
160:10
finish
170:18
firm
4:8 6:12,14 10:11,14
10:22 83:6 110:2,19
127:23 174:5 178:4
181:2 217:21
242:10
firms
83:6 91:15,18 92:2
93:3 94:25 95:5
109:25 110:6
240:17,24 241:10
first
12:15 20:13 21:5
51:12 52:22 53:20

54:21 55:9 59:16
61:12 65:20 82:20
95:23 107:3,8
126:25 133:19
161:19 167:4
230:15 237:25
238:4,5 241:13
243:3,18 244:5,22
246:2
fit
74:23 151:12 152:13
fittings
153:10
five
128:20 168:22
five-minute
223:22
fixed
77:23
Flexner
1:11 2:4 3:20 4:5 6:3
flight
177:10,15,24
focus
32:3 37:17 129:13
focused
138:18
focusing
27:13,17 145:20
folks
88:15
follow
163:10 247:16
following
15:24 41:17 68:11
143:21 221:11
244:8
follows
5:14 109:5
follow-up
84:20 170:5 247:19
footnote
154:13
forced
143:23
foregoing


MAGNA
LEGAL SERVICES

26-10769-mg    Doc 49-17    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 17 -
Transcript of May 13    2026 Deposition of P. Pretlove    Pg 273 of 300

Page 16

118:21 253:8
**foreign**
 1:7 2:15 17:25 18:6
  18:19 49:15 52:19
  53:5,5 83:21 98:12
  98:24 106:13,15
  107:6,15,20 120:3
  120:19 143:6,7
  147:10 154:15,20
  168:24 169:6 171:8
**Foreneret**
 4:18
**forfeiture**
 18:10,15 19:7,11
  25:15 37:4 62:24
  63:20 64:22 135:4
  136:2 162:21
  169:10,17 178:13
  179:3,21 182:16
  183:21 204:10,20
**forget**
 7:23
**form**
 11:7 13:8 16:23
  19:12 26:20 27:21
  30:14 33:11 38:17
  40:23 42:7 49:5
  55:19 80:8 82:4,24
  103:23 117:3
  119:11 125:17
  141:3 151:14
  155:11 156:13,23
  189:20 203:21
  204:2,22 205:25
  208:7 209:20
  217:12 222:6
  225:20 232:13
**formal**
 15:17 69:25 70:7
  144:2 196:23
**formally**
 31:21
**formation**
 15:22
**formed**
 70:3 156:17

**former**
 198:7 211:25
**formerly**
 147:24
**forming**
 184:23
**FORNERET**
 2:12 247:24
**forth**
 18:4 94:3 98:15
  133:7 214:21
  239:17
**forward**
 31:2 129:22 207:25
  233:20
**found**
 146:9,14,18 239:17
**foundation**
 240:20
**four**
 117:20 118:5 130:9
  144:11 179:14
  183:11 203:18
**frame**
 176:21
**framed**
 201:10
**framework**
 67:24 124:3 125:22
  126:12 127:5 130:7
  201:11 231:18
  233:15
**fraud**
 33:25 39:7 241:24
**frauds**
 34:18
**fraudulent**
 18:14 169:16 183:8
  183:20 184:17
  196:9
**free**
 77:7 144:16 156:4
  228:23 229:6
**freely**
 126:10
**front**

5:21 16:25 39:24
  48:13 54:15,19
  55:16 56:25 61:19
  62:21 64:24 79:11
  95:21 163:5 203:2
**frozen**
 153:24
**FTX**
 208:17 209:14
**fulfill**
 194:14
**fulfilled**
 33:14
**full**
 8:15 43:22 72:17,19
  125:2 126:14
  127:17 129:16,22
  135:18 155:3 196:8
  200:16 218:22
  220:21 229:24
  231:25 233:10
  242:5,5
**fully**
 129:25 130:2 220:3
**functions**
 73:22 76:4
**funds**
 19:20 20:3 31:19
  32:14 37:13 45:22
  47:2 101:15 102:12
  103:5 115:2 126:7
  128:13 152:17
  158:9 172:21
  205:15 219:11,17
  229:6
**further**
 92:12 94:23 104:3
  109:24 110:2 126:6
  149:20 198:19
  199:23 237:18
  247:25 249:17
  250:3
**future**
 8:12,14 9:14 28:23
  32:8 33:18,24 42:3
  102:16 103:7 104:6

111:2 159:11 178:2
  208:22 209:5,15

———————————————
G
———————————————
**gap**
 188:25
**gas**
 153:5,8,9 158:12
  228:19,20,21,24
  229:10
**gather**
 99:7 195:9
**gathered**
 68:20
**gathering**
 156:22
**Gemstone**
 24:14
**general**
 54:23 55:17 56:4,9
  57:15 58:6,17 59:17
  61:13 64:12 65:10
  67:8,16,19,20,25
  68:21 69:6,10 73:13
  79:18 80:5,14,15
  82:14 83:16 84:11
  85:7 103:17 116:9
  116:13,20 123:11
  128:12 130:10
  138:24 139:5 142:5
  195:25 199:6,19
  200:12,18 201:3,22
  206:14 208:5
  224:22 233:14
  234:4 238:6,12,15
  239:5,10,25 240:22
  241:5,14 242:14,20
  242:23 243:8
  244:21 247:4 248:9
  248:19,22 249:2,9
**generally**
 87:19 135:10 215:24
  223:14 231:20
  232:11 236:17
**General's**
 57:15 69:15 70:16,24



26-10769-mg    Doc 49-17    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 17 -
Transcript of May 13    2026 Deposition of P. Pretlove    Pg 274 of 300

Page  17

70:25 85:3,10
246:15 247:2

**getting**
61:7 91:5 94:10
126:14 177:23

**gift**
173:7,9

**give**
6:24 20:23 55:12
75:12,16 81:12,13
82:15,25 83:3 86:8
87:15 125:23 127:6
130:6,14 148:19,24
193:12 195:11
197:23 220:13,14
229:21 234:22
247:7

**given**
13:25 21:4 32:25
43:8,9 60:12 85:25
110:4 118:9 158:6
175:13 182:10
211:6 212:25 253:2

**giving**
14:6

**gleaned**
135:11

**Glenn**
93:13

**global**
1:6 2:10 3:14 4:21
15:22 68:6 83:22
160:24 164:13
191:14 241:21

**globally**
37:6,15 224:24

**go**
13:10,11 44:10 45:14
46:9,24 47:17 49:10
92:10 103:22
110:10 115:8,24
116:17 117:8
125:11 126:6
130:21 143:19
151:5 157:5 158:5
158:17,20 160:5

163:17 169:5 177:7
178:20 180:7
191:20 213:14
216:9 218:13,18
219:22 220:3,7,24
221:14 223:23
225:7 233:10 236:9
249:20

**goes**
67:18 216:3 243:22

**going**
5:6,20 6:11 10:18,23
35:22 37:15 47:7,23
58:19 59:5 61:3
67:17 68:17,24,25
76:8 80:13 82:5
86:8 90:4 91:19
93:11 95:12 103:20
108:7,14 119:21
126:23 129:15,22
129:23 133:11
150:13 159:6,14
160:5 163:10
166:14 167:22
175:18 180:24
190:7 191:4 195:11
209:11 210:3 216:6
216:7,9 218:21
220:23 222:15
223:10,18,25
229:11,16,19,25
231:12 233:18
243:23 249:22

**good**
3:10 5:17,18 43:9
47:16 108:3 159:20
159:21 177:6
209:23 245:25

**gotten**
125:5

**govern**
67:18

**government**
79:23 135:6,8 136:12
136:22 140:7,13
142:7,19 145:14

207:22 237:24

**grant**
124:17 127:6

**granted**
122:2 124:10

**great**
47:14 143:3 207:9
241:12 247:6

**greater**
124:18 125:22
129:24

**Griffin**
2:21 4:10,11

**ground**
30:2

**grounds**
27:11,15 29:12 49:8
49:9 64:13 92:14
93:23 94:2,4 203:11
203:12

**group**
23:20 34:20 35:15
103:10 133:25
143:25 144:3
147:12 162:6,10,17
163:14 164:7,22
209:13

**groups**
225:16

**guess**
6:9 16:17,19 55:14
79:6 84:12 85:6
108:8 110:23
115:13 123:13
152:11 158:21
188:2 200:17
214:19 234:13
243:11

**guidance**
216:17,19

**guide**
215:21

**guidelines**
69:7

**guilty**
146:10,19

**guys**
206:16 207:24
209:17,24

---

**H**

**half**
247:22

**hamstrung**
152:20

**hand**
150:11 159:14

**handful**
70:11

**happen**
158:16 176:19,19
209:5 218:7

**happened**
29:24 31:24 32:23
33:20 37:13 44:12
47:4 69:13 156:6
158:16,23 205:22

**happening**
71:13 72:2

**happens**
175:21

**happy**
7:6 109:20

**hard**
176:17

**harm**
198:20

**harmed**
235:13

**Harneys**
242:10

**head**
14:20 15:2 36:4
48:15 171:2

**headquarters**
9:22 12:5

**headroom**
87:16

**health**
130:3

**hear**
7:4 241:4


MAGNA
LEGAL SERVICES

26-10769-mg    Doc 49-17    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 17 -
Transcript of May 13    2026 Deposition of P. Pretlove    Pg 275 of 300

Page 18

**heard**
20:16 72:18,20
206:13 212:11
222:24 223:6
239:24 243:18
**hearing**
20:11,14 50:18 51:8
53:23 54:12 55:22
55:23 56:13,14,15
56:16 61:21 66:5,7
72:24 79:11 81:17
81:22 135:19,24
206:9 216:4,6,21
217:17 224:11
241:19 242:6
**heart**
48:9
**held**
1:10 10:25 18:4
22:11,15,17 25:19
32:14 36:25 37:2
38:24 43:17 45:6,12
95:17 96:12 98:14
110:25 113:3 122:9
128:8 140:12 169:3
219:12
**help**
123:22 129:24 149:2
180:20,25 206:23
236:13
**helpful**
124:16 125:22 126:8
176:21 207:8
248:22
**helps**
176:5
**High**
53:7
**higher**
39:24
**high-profile**
83:20
**Hill**
2:10 4:20 25:18
159:24 160:17,20
162:4,13 164:11,12

164:19 165:2 167:3
168:8,17,25 169:24
179:2,13 180:12
181:13,22 182:14
183:5 186:10,14
187:4,9,13 188:21
200:23,23 201:4,15
201:19,23 202:3,11
203:20 204:6,14
205:10 206:15
208:25 210:15
211:7 213:2 218:3
221:10 226:25
227:6,19 234:10
**hold**
16:2 180:9 210:25
222:24
**holders**
197:21 237:17
**holding**
1:6 14:5 19:20 20:3
96:21 103:9 111:10
111:17 145:5,8
**holdings**
3:14 9:19 11:19 22:2
68:6
**holds**
11:24 13:14 14:15
22:19
**honest**
131:5
**Honestly**
57:5
**Hong**
22:2,10,15,21
**hoping**
180:19 195:11
202:15
**hotel**
177:16
**hour**
47:8 57:22 88:4
223:19
**hourly**
87:23,24 88:2,3
**housekeeping**

5:20
**Hudson**
1:11 2:5 3:19
**human**
39:8 143:22
**hundred**
85:22
**hundreds**
128:7
**hypothetical**
175:25 209:4 221:11
**hypothetically**
175:21 221:4 229:10
**hypotheticals**
176:17,23

___

**I**

___

**identification**
3:4,6,8 39:15,20
99:14 150:16
166:19 190:8,11
207:2 210:4,7
**identified**
9:6 19:19,23 20:2,7
21:3,25 22:14,25
25:22 26:12 38:14
40:20 42:4 43:3
97:16 149:19
163:13 164:6
165:18,25 215:15
217:9 218:25 228:6
**identifier**
190:24 191:5
**identify**
8:21,24 17:16 32:4
40:11 44:23 75:3
93:4 94:17,19 98:6
113:21 138:16
149:3 154:14
166:15 168:5
198:21,25 205:4
209:21 212:24
213:2,14 219:21
221:5,24
**identifying**
194:16 225:3 245:21

**ii**
198:21
**iii**
198:22
**image**
136:20
**immediately**
149:7
**impinging**
84:14
**implemented**
225:3
**implicate**
59:4
**important**
79:22
**imposed**
63:24
**inability**
152:17
**inaccurate**
192:22 193:9
**incidental**
73:21,24 76:4
**include**
22:6 33:24 145:9
194:19
**included**
74:8 85:22 90:14
114:19 136:11
137:18 142:22
144:19 202:4
**includes**
81:6 90:21 107:21
133:21
**including**
18:9 102:15 126:13
169:9 175:16
178:12 206:15
**incorporated**
15:4
**incur**
90:24
**incurred**
86:22 89:15 91:13
103:24 111:15



26-10769-mg   Doc 49-17   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 17 -
Transcript of May 13   2026 Deposition of P. Pretlove   Pg 276 of 300

Page 19

**incurring**
85:12
**independent**
196:7
**indicate**
193:2 225:8
**indicated**
243:6 245:13
**indicates**
11:24
**indication**
97:12
**indicted**
36:19
**indictment**
18:15 36:20 37:20
38:8 62:20 63:15
64:22 135:4 136:12
138:3 139:7 144:24
145:9,13 162:12,20
162:22 169:17
183:22 244:8,11
**indictments**
34:2
**individual**
204:8
**individuals**
35:24 42:10
**inflict**
198:20
**information**
9:23 11:22 17:7
28:16,23,24 38:25
43:8 58:24 67:15,18
68:19,25 83:12 84:4
109:18,24 118:25
122:7 133:9,14
134:3,20 135:12,13
145:18 147:18,21
147:25 148:20,25
149:20 152:13
155:9,16,20 156:8
180:3,9,13,23
181:10,11 182:22
183:3 185:2,22
188:23 189:2,19,25

190:2,4 193:19
195:9,12 201:7
202:12 203:25
205:7 234:16 235:5
236:19 238:11,24
239:5
**information-sharing**
236:4,24 237:8,23
**informed**
118:22
**inherent**
124:13
**initial**
62:22 135:15
**initiated**
11:16 29:6,19 30:21
**initiating**
122:4
**inquiries**
10:4 17:9,10
**insert**
232:8,10
**insight**
71:24
**insofar**
69:14 202:16
**insolvency**
26:25 27:2,9,10,13
27:16,18 28:15
29:13,16,20 30:5,11
35:4 48:7,9 78:5
81:10 90:17 109:17
127:17,23 128:5
129:16 150:15
162:2 193:4,17
196:3 201:12
203:14,15 213:9,18
213:20 214:6,10,16
215:10 217:2
222:13 223:15
227:25 228:2
231:18,19 233:15
233:16 250:13
**insolvent**
26:17 27:8 151:8,13
201:4 202:14,19

**instance**
76:23 238:4
**instances**
76:15 154:14,19
236:8 237:21
**institute**
201:22
**instituted**
201:14
**institution**
20:3 25:20 180:8
187:25
**institutions**
124:7 149:2
**instruct**
13:11 49:6 59:6
91:19 139:8
**instructing**
93:22,25
**Instruction**
95:8
**instructions**
44:2 74:6
**intangible**
168:6
**intend**
103:25
**intended**
81:13 117:19 199:15
**intention**
233:13
**intentions**
180:6
**interact**
125:15
**interacting**
127:2
**interactions**
123:21
**interest**
13:6 16:17 18:8 19:2
21:6 27:12 29:15
30:2 64:12 68:3
79:19 82:7 92:16
95:16 102:22
109:22 117:13,17

128:22 129:6
130:17,20 132:6,10
139:12 168:9 169:2
169:7 178:10,25
186:15,17 201:11
203:11
**interested**
129:5
**interests**
38:23
**interfere**
92:24
**interference**
92:18
**internet**
136:20
**Interpath**
88:16 101:7,8,12,13
101:18,23,25
102:14 112:10,14
112:14,18 114:7,10
114:17 170:13
171:22 172:16,22
173:7,7,13,20 174:2
174:5,7 175:3,12,18
176:11,12 177:11
177:18 178:4
243:11 246:25,25
**Interpath's**
101:15 114:14 170:8
**interpret**
219:20
**interpretation**
211:10 213:4 215:3,4
216:10 217:19,22
**interrelation**
24:4
**interrogate**
194:9
**interrogatories**
166:18 167:4,7 183:7
250:13
**interrogatory**
167:22 168:14 171:4
184:4
**intervening**


MAGNA
LEGAL SERVICES

26-10769-mg    Doc 49-17    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 17 - Transcript of May 13    2026 Deposition of P. Pretlove    Pg 277 of 300

Page 20

72:16
**intervention**
 226:11
**introduce**
 4:9
**invest**
 14:2
**invested**
 9:25 10:2 12:11
  13:17
**investigate**
 8:25 34:8 138:16
  194:9 209:21
**investigated**
 147:11 179:7
**investigating**
 9:12 11:14 14:22
  19:4 97:15 165:25
  180:2 181:9 183:2
  205:8 206:4
**investigation**
 9:5 12:12 16:22 19:8
  19:17,19 33:10
  68:18,20 83:21
  117:23 134:25
  147:16 148:10,11
  179:18 181:5 196:7
  204:24
**investigations**
 19:13 25:7 27:22
  28:19 68:4 71:20,22
  72:7 97:11 134:21
  144:2 148:5,14
  149:9,12 180:24
  194:14 195:8
  198:23 202:14
**investigative**
 15:7 121:24
**investigatory**
 16:15
**investment**
 9:18,19 11:25 12:2,8
  12:9,19,22,23 13:14
  13:16,20 15:9,11,14
  16:10,11 45:11 46:6
  166:2 186:7,18

**investments**
 9:18 14:10,15 20:4
**investors**
 13:18
**invests**
 14:9
**invited**
 41:4
**invoice**
 98:25 99:5,13,15
  100:2,4,8,13,15,18
  104:23,24 105:4
  250:13
**involve**
 231:4 232:23
**involved**
 72:5 76:18 84:25
  85:4 141:6 220:10
**involvement**
 134:16
**Irrespective**
 224:15
**Irvine**
 2:20 3:21
**Islands**
 4:12 8:9 27:17 54:23
  79:19
**issue**
 94:19 100:22 124:22
  203:2 204:20
  212:10,14 215:23
  216:3 217:16,18
  243:24
**issues**
 75:8 77:7 138:2,8
  157:9 158:6 159:8
  245:4,9,22
**item**
 21:5
**iterations**
 130:9
**iterative**
 123:19
**iv**
 198:24

**J**

**J**
 55:2
**Jack**
 144:17
**James**
 55:21 56:7 57:6
**January**
 8:10,24 29:19 30:13
  30:22 33:16 54:8
  63:9,16 70:14
  114:25 134:14
  140:20 148:2
  191:21 192:2,13
  244:13,13 246:11
  246:12,22
**Jeni**
 62:3
**Jeni-Lee**
 59:18 62:3,5 199:22
**Jeremy**
 2:12 4:17,25 159:22
**jewelry**
 37:10
**job**
 128:3 129:13 147:2
**Johanna**
 2:13 4:19
**joined**
 4:7
**joint**
 7:12 8:20 9:3 16:5
  40:19 53:11,21
  55:25 83:14 85:13
  99:2,24 160:13
  161:14 167:5 174:9
  179:12 181:21
  182:13 197:3
  203:19 212:7 214:4
  215:7 216:24
  227:18 236:20
  241:21
**JOSH**
 2:13
**JPL**

22:8 76:14 105:13
  131:8
**JPLs**
 4:15 41:16 62:22
  79:14,16 83:7
  111:23 122:13,25
  195:25 196:23
  197:15 198:4,9,14
  207:24
**JPL's**
 124:5
**judge**
 20:17 21:3 53:16
  55:17 56:25 61:19
  62:21 64:24 65:11
  73:2 78:18,20 79:7
  79:12 87:2,17 93:12
  135:23 203:7
**judged**
 78:15
**judgment**
 36:11
**jump**
 214:21
**jurisdictions**
 37:6 95:6,7 143:25
**Justice**
 53:18,19,24 54:15,20
  57:16 140:12,15,25
  141:12,16,21 142:5
**J-E-N-I**
 62:3

**K**

**keep**
 7:18 39:25 149:18
  159:7
**keeping**
 147:2 159:13 247:14
**key**
 131:10 180:14
  205:11 239:4
**Kim**
 2:9 4:21 6:14 150:7
  159:4,23 204:5
  217:21


MAGNA
LEGAL SERVICES

26-10769-mg    Doc 49-17    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 17 -
Transcript of May 13    2026 Deposition of P. Pretlove    Pg 278 of 300

Page 21

**kind**
5:19 12:19 14:14
35:7 52:21 82:16
93:16 133:14
149:15 156:21
188:17 221:21
243:9
**Kingate**
241:21,22
**Kingdom**
64:2 165:9
**knew**
137:10,22
**know**
6:19 7:25 8:6 12:8,23
14:14 15:3,11 33:19
41:22 48:9 56:22
58:15 59:22 60:2
62:5,12,19 65:4,25
66:2,20,20,23 71:9
71:25 72:4,6,8,9,19
84:7,25 88:21 89:3
92:17 97:14 110:15
111:4,9 112:23
132:22 137:22
139:24 140:16
141:13,15,17,20,24
144:13 152:12
160:2 162:25
166:21 167:7
175:25 177:5
180:18 181:6,8
186:17 188:6,9
190:4,12,16 192:21
193:9,13,13 194:12
195:2,21 200:16
201:5 202:2,10
203:10 204:17
206:18 207:14,18
207:20 209:2 210:8
214:9 216:12
217:21 220:19
223:19 230:11
234:10 240:11,21
244:7,9,19 246:8
247:14 249:13,15

**knowledge**
24:19 30:9 101:5
118:24 120:21
125:13 133:8,13,22
134:2,12 162:24
165:10 166:9
174:12 185:20
186:9,12,14 187:7
188:4,7 189:9
199:13 200:10,20
201:2,13,21 238:8
242:12
**known**
55:4
**Kobre**
2:9 4:21 6:14,16 7:10
26:7 150:7 159:4,23
204:5 217:21
**Kong**
22:2,10,15,21

─────── **L** ───────

**L**
5:11,11 109:4,4
**labor**
143:23
**lack**
240:19
**land**
221:8
**language**
26:16 73:23 164:16
217:7 222:16
223:16 224:8
**large**
39:9 241:24
**largest**
21:7 22:9
**lasted**
57:21
**late**
147:8
**Lateral**
2:10 4:21 25:18
159:25 160:23
161:2 162:5,13

164:12,13,20 165:3
167:3 168:13,18
169:24 179:2,13
180:12 181:13,23
182:14 183:5
186:11,14 187:4,9
187:13 188:21
191:14,17 192:12
193:2 202:6,22
203:20 204:15
205:11 206:15
209:2 210:15 218:3
227:2,6,19 234:11
**launched**
144:2
**laundering**
199:2
**Laura**
2:7 4:8
**law**
1:10 10:11,22 91:14
91:18 93:3 94:25
95:5 109:16,19,25
110:2,19 139:16,21
215:20 217:21
242:10
**lawyer**
71:7,7 79:13 216:12
**lawyers**
10:21 17:22,23 20:16
20:21 21:24 40:8
52:6 58:17 61:17
62:18 70:25 71:16
84:17 98:10 107:14
138:12 141:11
153:13 182:8
185:16,22,24 186:2
216:18 243:8,15
247:15
**lay**
42:2
**lead**
134:15
**leads**
149:19
**learn**

12:2,15 15:8,15
65:20 68:25
**learned**
53:20 134:16,18
238:19
**learning**
91:25
**legal**
1:16 3:22,23 12:25
13:2 26:21 56:10
57:15 67:7 72:22
73:25 77:7 80:9,10
80:11 85:21 89:24
89:25 90:13,23
115:15 118:8 131:4
133:4 134:6 151:15
156:9 184:22 185:9
196:23 204:6
211:10 213:4,4
215:20 217:13
235:2,2 243:9,25
245:4,22
**legally**
84:10
**legislation**
193:5 201:12
**length**
170:4
**Leslie**
1:12 3:23 253:4
**letter**
106:23 113:11,18
136:14
**letters**
137:14
**let's**
8:4 37:17 39:11
50:13 52:16 99:10
107:10 108:4,11
117:8 171:21
195:15 196:20
219:19 221:4,6,9
**level**
87:19 129:18 131:15
241:17
**levels**



26-10769-mg    Doc 49-17    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 17 -
Transcript of May 13    2026 Deposition of P. Pretlove    Pg 279 of 300

Page  22

129:21 131:19
**liabilities**
27:3,18,19 28:6,12
28:18 29:2,8,21
103:21 104:16
151:19 152:10
158:10 181:16
192:25
**liability**
27:23 152:5 181:19
192:6 193:3,14
205:7 226:14
**liable**
146:14
**liaise**
69:11,18
**license**
123:8,11,12 124:14
126:5 130:8,9,10,25
**licensed**
83:18
**licenses**
123:2,4 124:9,18
125:5,12,24 126:3
127:7 128:12,17
130:18 143:9 226:9
**likes**
81:23
**limited**
1:6 2:10,10 3:15 4:20
9:19 21:15 23:24
24:14 34:13 68:6
103:10 132:19
159:24 160:17,24
164:12,13 191:14
236:17
**Linda**
236:17
**line**
58:20 169:5 195:4,6
207:5,7,11 213:7,13
252:6,6,6,6,6,6,11
252:11,11
**lines**
168:22 183:11
191:20

**link**
24:20
**liquidate**
64:13 227:10
**liquidated**
28:3
**liquidation**
8:15 9:12 11:23 27:5
27:8 32:2,16,19
33:2 43:22 44:9
46:4,11,15 53:6
64:15 72:17,20 73:3
77:15 78:12,17,21
79:5,9 85:24 86:13
87:4 90:7,22 92:19
92:25 101:19
102:12,20 112:16
114:20 115:3,11
119:18 135:19
155:19 156:18
157:22 161:21
172:22 173:24
174:25 177:12
178:3 179:6,24
200:21,22 202:16
205:3 212:6 218:16
221:25 223:8
230:19 231:3,3,14
231:16,16,21,22,25
231:25 232:8,21,22
233:7,8,10,11
236:20 237:11
**liquidations**
19:4 25:6 41:8 102:6
102:16 172:20
177:9 223:4
**liquidator**
7:12 8:8,16,17,20 9:3
27:25 31:16,19
68:24 72:12 73:7
74:15 76:22,22,25
77:16,25 78:4,11,22
79:3 80:18 81:2,14
83:14 85:14 86:20
90:10,19,20 105:20
106:3,8,9 127:12

134:22 138:15
139:15,20 140:19
149:21 154:15,20
161:15,20,21
173:25 174:4,10
179:13 181:22
182:13 184:23
194:15 197:4
210:25 211:7,13
212:8,23 213:12
214:17 220:22
221:14 222:18,19
227:18 229:9
232:19 236:2,6
237:3,7,22 238:20
238:21 239:18,23
241:8
**liquidators**
16:6 40:20 53:12,22
55:25 56:7 59:16
64:14 65:17 67:16
67:25 69:12,18
73:20 76:2 77:22
92:13 99:2,24
124:11,19,25 125:2
149:17 160:13
167:6 196:2 199:7
199:14 200:14
203:20 213:14
214:4 215:8 216:18
216:24 230:20,21
240:18 241:21
242:3,5
**liquidator's**
72:14
**liquidity**
237:14,18
**list**
3:2 21:4,14 31:8
64:23 74:24 75:10
75:19 99:7 103:9
149:8 250:13
**listed**
28:5 66:11 74:12
118:6 119:10
142:10 149:15

154:18
**listening**
247:21
**listings**
28:17
**lists**
5:24 18:11 41:19
107:13 117:20
236:10
**litigation**
79:21 82:8 83:23
93:9 94:5,8 139:12
167:8 184:22
**little**
80:23 123:9 127:19
133:17 165:20
211:19 224:6
**live**
46:7 216:3 217:18
**LLP**
1:11 2:4,9,15 3:20
18:4 171:10
**loan**
102:4 112:2 173:10
173:11 195:5
**loans**
22:23 23:2 111:24
**locate**
199:2
**located**
9:6 14:17 18:8,21
22:8 24:23 25:5
26:13 41:18 122:8
168:6 169:8 178:11
187:14,22,24 221:7
**log**
84:18
**London**
31:10 56:22 57:8
145:16
**long**
57:19,20 128:17
208:8
**look**
48:11 50:13 52:16
63:5 107:3,10



26-10769-mg    Doc 49-17    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 17 -
Transcript of May 13    2026 Deposition of P. Pretlove    Pg 280 of 300

Page 23

125:11 150:24 167:14 178:8 180:15 189:18 192:4 206:21 207:15 211:11 234:22 235:11

**looked**
52:13 153:13 234:8 234:17

**looking**
14:21 16:8 51:10 60:14 66:2 98:3 99:18 110:13 171:4 183:23 184:12 214:19 242:14

**looks**
150:23 179:25 181:3 182:7 231:22

**lose**
182:17

**lot**
37:14 54:5 111:3

**loud**
41:13

**lunch**
108:7,9,10,12

**L-E-E**
62:4

**M**

**M**
2:6 73:19 74:17 75:14,22 76:12 77:4

**Madoff**
208:17 209:14 241:20,25

**Magna**
1:16 3:22,23

**maintain**
32:4 44:24 73:7 221:25 222:20 223:12 229:4

**major**
200:11

**majority**
15:18 76:19

**making**
53:24 80:24 127:22 172:17 203:8 209:9 218:14 233:23,25

**management**
23:12 43:17 162:14 181:17 192:20 193:2,15 194:5 233:12 236:19 242:10

**managing**
174:8

**mandate**
45:9 74:7

**mandated**
156:15

**manufacture**
131:18

**manufacturing**
129:19 132:2

**March**
100:4 126:25

**mark**
39:11 99:10 190:7 210:3

**marked**
3:3,6,8 5:20 39:13,15 39:20 40:3 48:16 50:13 51:10 52:17 54:2 63:6 68:10 97:25 99:13 110:11 121:8 147:4,6,8 150:16,21 163:3 166:18 190:10 207:2 210:6 252:6

**marker**
58:20 93:8

**marketing**
220:17

**marking**
39:17

**Martine**
2:12 4:18

**matches**
43:15

**material**

82:8,9 197:13,18

**materials**
83:8,11 240:11

**matter**
3:14 19:17 65:2,9 72:25 88:16 109:10 125:2 200:18 234:25

**matters**
196:6

**MATTHEW**
2:8

**maximize**
32:5 126:17 130:12

**mean**
6:3 18:25 73:24 96:15 102:23 103:3 110:17 124:8,9 172:9 190:3 193:23 197:19 200:24 206:21 227:3 231:15 241:2

**meaning**
16:5 27:14 29:21 182:13

**means**
26:18 27:18 43:3 75:24 110:15,21 152:19 253:8

**meant**
217:3 224:10 232:6

**mechanism**
32:22 156:16

**meet**
112:15 151:19 152:20,24 153:4 178:6 226:14

**meeting**
75:25

**member**
100:11

**memorializes**
104:21 113:10

**memory**
16:4 65:6 77:5 145:6

**mention**

116:12 199:12 235:9 235:12

**mentioned**
20:6 26:6 102:10 105:9 132:8 136:17 143:15,17 146:5 158:12 178:17 180:5 228:18 233:19 241:13

**message**
246:4,5

**messages**
246:24

**met**
55:9,14 173:24 177:9 178:2,4 193:23

**meters**
228:20

**method**
100:20

**methods**
101:2

**mic**
159:3

**microphone**
159:15

**middle**
59:13 79:12 178:9 184:6 191:25 192:13 195:24

**million**
21:8 22:8

**millions**
12:24 13:21 128:7

**mind**
163:7 171:3

**mine**
138:20

**minority**
21:21 132:4,17,24

**Mintz**
2:13 4:19

**minute**
125:12

**minutes**
47:21 223:21



MAGNA
LEGAL SERVICES

26-10769-mg    Doc 49-17    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 17 -
Transcript of May 13    2026 Deposition of P. Pretlove    Pg 281 of 300

Page  24

**mischaracterizes**
60:10 113:14
**misconduct**
146:15
**missed**
150:9
**missing**
195:12
**mistaken**
50:20
**Mithani**
53:18,19,24 54:15,20
57:17
**Mokal**
2:21
**moment**
46:12 47:9 166:20
**Monday**
17:22 40:8
**money**
13:25 14:6 86:14
87:5,7 90:5 101:11
101:14,16,20,24
102:7,14 103:10,10
112:9,17,20 153:23
153:24 170:7,12
171:21 173:8 176:6
176:12 177:7 199:2
227:20 229:11,12
234:11,12
**monies**
114:4,6
**monthly**
91:7,8
**months**
74:21 179:14 203:18
242:4
**morning**
5:17,18
**motion**
78:3 206:11
**mouth**
172:10 232:5
**move**
108:2 152:17 154:6
194:22

**moved**
33:3
**movement**
180:10 204:15
**multiple**
143:25

— **N** —

**N**
109:2,2,2
**name**
4:10 9:18 13:5 46:3
53:16 86:20 145:2
159:22 228:7
246:13
**named**
144:17
**names**
70:10 124:11 236:14
**nature**
110:4 124:15,22
175:25
**navigate**
84:12
**necessarily**
241:2 245:23 249:16
**necessary**
69:5 73:15 112:15
172:19 173:24
182:2 198:15
221:22 222:5,20
223:12
**need**
43:23 44:23 45:2,4
46:9,13,14 73:12
89:2 104:12 124:20
125:24 126:16
127:9 130:4,10,11
130:21 143:19
155:19 157:10
158:20 160:7 194:6
194:13 195:8,9
203:13 209:20
218:17,18,23 220:7
229:25 237:7
**needed**

45:12 68:19 81:10
92:15 126:14
172:20 175:9 176:8
177:9 221:19
237:15
**needs**
76:9
**negotiations**
237:17
**never**
62:17 223:6
**new**
1:3,11,11,13 2:6,6,11
2:11,17,17 3:19,19
18:12 37:23 38:5
62:20,25 63:19 64:7
95:15,18,19 136:9
138:6 144:24
149:22 188:5
206:10
**news**
143:22 144:13
**Noble**
31:7 34:13,15 43:13
43:16 145:16 153:2
153:22 158:7,10
228:7 234:12
**nominate**
81:2
**nominated**
56:6
**nominating**
81:5
**nomination**
240:24
**noncontroversial**
8:6
**nondisclosure**
129:12 132:13,22
**nonperishable**
219:20
**normal**
57:8
**normality**
131:23
**normally**

65:19 71:7 221:2
**Notary**
1:13 5:12 254:11
**note**
4:25 5:8
**noted**
6:4 109:3 249:23
**notes**
91:12
**notice**
1:10 81:12,24,25
211:14 224:17
**notification**
83:3 89:20
**notified**
111:21
**notorious**
241:24
**number**
13:2,17 21:13 30:25
31:8 34:12 41:7
42:10 74:19 103:20
123:21 129:5 132:9
135:21 153:3
157:13 211:12
236:10
**numbers**
39:9 54:6 120:9,11
147:3 150:24 191:3

— **O** —

**O**
5:11 109:2,2,2,4
**Object**
115:14
**objecting**
2:5 3:3 4:6,19 5:5
6:12,13,16 7:9,10
26:7,11 33:23
101:17 128:22
130:17 132:6 145:2
145:10,24 146:7,10
151:12 159:23
250:13
**objection**
11:7,9 13:8 16:23



26-10769-mg    Doc 49-17    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 17 -
Transcript of May 13    2026 Deposition of P. Pretlove    Pg 282 of 300

Page 25

19:12 26:20 27:21
29:10 30:14 33:11
38:17 40:23 42:7,21
49:5 55:19 60:9,21
60:25 66:19 75:4,17
77:17 78:23 80:8
82:4 88:25 93:16,21
94:15 97:7,18
104:10 106:18
112:11 113:13
115:14 117:5 118:7
118:18 119:11,22
122:18 125:17
131:3 132:7 134:5
141:3 151:14
155:11 156:23
162:7 164:23 172:8
173:22 174:21
178:19 182:5,19
189:17 193:22
199:9 200:15
201:16,25 202:8
203:5 205:25 208:7
209:10,18 212:2,18
214:25 217:12
221:16 222:6
224:19 225:5,18
226:4,20 227:11
228:16 229:18
232:13 233:2
234:24 239:7
240:19
**objections**
5:9,25 17:24 39:19
40:6,15,19 95:10,11
98:11 121:20
166:18 167:2
168:21 184:13
250:13,13
**objective**
131:8,10,22
**obligation**
104:22 138:13
155:15
**obligations**
138:24 213:11

**obliged**
90:9
**observe**
55:22
**obtain**
26:2 122:14,25
180:23 237:18
249:10
**obtained**
112:20 123:9 125:7
134:8 153:7 182:11
**obtaining**
123:15 128:11
**obviously**
5:2 9:9 57:16 94:16
110:5 132:21
134:11,20 146:3
171:16 184:9
**occur**
33:9
**October**
23:13 128:16 129:21
131:13,24 244:12
244:18 246:11,20
246:21
**OFAC**
123:2,22 124:6,17
125:20,23 126:16
127:2,5 128:11
130:7,11,18,25
139:25 140:4,8
158:8
**offered**
132:5
**office**
14:23,25 15:5,20
70:17,24 80:22
85:10 143:6 147:20
197:21 241:10
246:16 247:2
**officerholders**
197:11
**officers**
230:22
**offices**
1:10 141:20

**official**
28:4
**officially**
41:11
**offline**
84:22 109:21
**OFSI**
142:25 143:4,9,12
158:9
**Oh**
147:7
**okay**
6:22 7:7,8,18 20:25
37:19 38:13 49:12
52:20 68:11 82:11
84:16 91:2,10 101:8
110:7 116:18
117:10 121:21,23
140:10 142:12
151:3,25 155:4
159:2 160:9 165:17
182:10 191:12
193:18 195:20
208:13 210:15
211:21 214:15
224:14 235:20
240:9 245:16
**once**
180:13 195:13
**ones**
26:6 48:17 142:9
144:14 240:2
**ongoing**
12:11 19:14,16 27:22
36:21 68:4 71:19
72:7 104:15 123:19
125:19 126:11
146:23 148:5
180:25 181:9
202:15
**open**
56:16 159:7,13
214:20 247:14
**operate**
15:23 127:5 237:20
**operating**

23:24 24:10 131:14
131:23 170:9
188:16
**operational**
13:15 131:25
**operations**
23:21 24:15,17
128:15 129:15
132:11
**opine**
217:16
**opportunity**
204:9 220:13 237:16
**opposed**
16:20 30:4
**order**
53:11,15,21,24 58:11
60:13 66:4,5,10
67:2 72:12 73:13,17
74:8 75:6 76:5,20
78:2,18,24,25 79:8
79:8 82:10 85:19
86:7 90:8,25 114:23
115:22 116:8,12
124:19 125:6,14,24
126:9 128:14 130:8
139:2 141:2 158:17
211:3,5,8,17 212:5
212:5,17,22,25
213:5,17 214:18,23
215:5,14 217:7
222:4 223:16 224:8
224:15 228:12
230:2 236:5,22
239:9 247:23 248:5
248:7,24,25
**ordered**
114:16,24 116:11
175:3
**orders**
65:15,21 77:18 87:2
92:24 93:7 94:5,7
94:18,20 116:23
196:23 197:2,7,8,23
197:25 210:6,14,17
210:19 251:4


MAGNA
LEGAL SERVICES

26-10769-mg   Doc 49-17   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 17 -
Transcript of May 13   2026 Deposition of P. Pretlove   Pg 283 of 300

Page 26

**ordinary**
60:23 199:20 229:7
**organization**
34:21 39:5 162:18
**organizational**
147:11 148:3,7
**organizations**
38:22
**organize**
223:22
**organized**
25:11
**Oriental**
9:19,25 11:19,24
12:10 13:16,20,24
14:3 16:12 166:2
186:7,9
**original**
12:23 236:22
**originated**
136:21
**originating**
59:10,15,24
**outcome**
55:23 202:17
**outlets**
143:22 144:13
**outline**
121:13
**outside**
109:18
**outstanding**
85:18 86:3
**overlay**
232:2
**overseas**
81:9
**oversee**
7:13
**owe**
90:4 103:4
**owed**
23:3 24:9,23 34:10
39:6 227:20 229:11
229:12
**owes**

23:11 227:7 234:10
234:11
**owned**
8:22 19:20 20:4,8
21:12,13,19 101:24
**owners**
21:21
**ownership**
24:13 168:8
**owns**
11:2 24:11,14 31:9
34:16 145:16
**O'Neal**
56:11 58:10 62:7
70:25 71:3 82:13,23
83:15 239:25
242:19,23 244:21
246:16 247:2

──────────────
**P**
──────────────
**P**
5:11,11 109:4,4
**page**
40:9 50:3,23 51:17
53:25 55:20 59:13
66:3 68:9 69:20
73:18 98:3 107:3,8
120:6,8,11,13
121:12,16,17
133:19 150:24
151:5 163:7 167:15
167:24 168:2 171:3
178:8 183:10,25
184:2,2,10 195:19
207:9 210:22
211:11 213:23
214:14 222:13
230:9 235:19 252:6
252:6,6,6,6,6,11,11
252:11
**pages**
150:22,23,25 151:4
208:10 210:14
**paid**
85:16 89:23 90:2
101:18,23 102:14

104:17 110:20
111:2 112:17
114:10,17 116:5
154:9 170:13,20
171:9,13 172:21
177:11 178:7 226:7
248:11,21 249:4
**paper**
58:5
**papers**
62:20
**paragraph**
63:8,14,23 67:22
68:9,13 69:20 71:18
73:19 74:17 75:14
75:22 76:12 77:4
95:20 96:3,25 97:5
97:6 117:9 120:7
122:23 133:7
142:12,22 143:17
144:9,10 147:9
151:7 154:12,12,13
163:8 164:3,19
195:23 196:20
198:11 199:15
200:2,4 211:11
213:24 214:3,22
215:7 216:10 217:8
217:9,19 230:11
231:17 232:3
233:14 247:22
248:7,17,23 249:3
249:11
**paragraphs**
18:5 63:11 96:14,18
98:16 121:13 211:2
211:22 217:23
231:9
**parallel**
195:24
**paraphrase**
216:13
**paraphrasing**
222:7
**part**
12:11 23:25 25:25

31:17 32:22 34:6
41:3 43:22 58:12
61:18,22 62:13,20
64:24 73:13 81:5
85:13 128:2 148:17
149:8,17 162:5,9
163:13 164:6,21
172:14 188:10
197:13,18 205:20
206:6 209:19,24
216:11 218:5
225:20 236:5,21
**parte**
56:15 135:16
**participants**
18:13 169:15 183:8
183:20 184:16
**participation**
14:4
**particular**
16:17 47:12 60:16
74:2 79:15 136:5
204:7 207:5 208:6
212:14 213:6
**particularly**
17:10 44:8 72:10
104:12 138:21
205:10 217:15
**parties**
3:25 4:13 5:2 129:5
132:9 146:7 184:24
**partnership**
24:14
**parts**
204:14
**party**
79:16
**pass**
166:13 247:8
**Paul**
1:9 3:13 16:24 49:18
66:20 100:2 250:3
253:2 254:6
**pause**
89:2
**pay**



26-10769-mg    Doc 49-17    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 17 -
Transcript of May 13    2026 Deposition of P. Pretlove    Pg 284 of 300

Page  27

26:19 89:22 90:9
100:13,15 110:21
111:14 115:22
116:5,9 131:14
151:23 153:20,23
158:10 177:25
227:9
**payment**
86:3 89:18 95:16
96:21 100:20,20,25
102:5,13,22 104:24
110:14,23 112:7
114:14 169:2
170:23 171:9
172:11,13,15,23
173:5,21,23 174:2
174:12 183:16
226:9 228:23 229:6
229:15,22
**payments**
128:13 227:22
228:11
**penalty**
118:20 163:19
**pending**
64:15 159:7
**people**
28:2 31:11,21 35:14
39:6 69:14,17 70:11
129:11 147:19,23
148:20,21 158:12
209:23 227:8
242:15
**percent**
85:20,21,23 86:8,9
86:15,16,24 87:6,14
87:15,18 90:9,10,14
103:18,19 114:18
114:18,24 175:2
**performing**
90:24
**period**
72:16 81:25 242:3
**perishable**
46:21 219:9,10
**perishing**

45:3,21
**perjury**
118:21 163:20
**permanent**
124:17,22,24 125:21
126:24
**permission**
44:15 46:9 81:16
130:22 157:10
214:7 220:25
**permitted**
45:6 130:25 219:13
223:10 235:3
**person**
56:24 78:4 105:25
246:3
**personal**
133:8,13,22 134:2,7
134:12
**personally**
70:15 124:11
**persons**
182:3 208:18
**perspective**
146:12,13 159:6
202:21 206:2,3
**pertinent**
180:10
**Peter**
2:6 4:4,24 58:20
**petition**
3:5 10:15 18:6 39:17
48:18,21 49:15
51:11,21 52:5,18
63:7,7 66:12 95:13
98:17 107:4,4 117:8
118:14 119:25
143:18 146:24
147:7 248:4,5
250:13
**Petitioner**
39:15 250:13
**photographs**
136:11,13,21 138:3,8
139:6
**photos**

137:13
**phrase**
38:22 87:21 222:24
223:6 237:12
240:11
**pick**
103:9
**picture**
148:6
**pictures**
136:19
**piece**
221:6
**pieced**
148:2
**pieces**
30:18
**piling**
39:23
**pin**
89:9
**pitch**
83:8,11 240:11 242:8
**place**
56:18 72:21 225:2,15
**placed**
8:14 27:5,8,10
217:16 231:2,13,21
232:7,20
**places**
136:21
**plan**
32:17,20
**plans**
32:21 138:10
**platform**
130:15 188:3
**plumbings**
228:20
**pocket**
102:15
**point**
12:7 28:7 32:4 33:15
36:5,11 43:25 44:4
55:14 66:7 86:17
87:5 90:5 103:14

119:4 155:8 158:13
175:11 177:25
179:9 186:16 207:4
207:7 213:13
215:19 216:10
222:3,8 225:21
244:7
**pointing**
136:9 213:6
**points**
8:6 155:7
**poor**
147:2
**portion**
115:22
**posed**
167:12
**position**
9:13 27:24 28:12,15
28:20 29:7 31:4
33:6 35:2,8,10 36:6
36:7 38:12 72:23
152:5,5 158:2
179:23 181:20,21
182:24 184:25
193:3,14 194:25
195:14 205:8
218:10 238:20
248:23
**possession**
136:5 191:11
**possibility**
91:23 158:4
**possible**
32:5,21 44:10 57:9
131:24 155:2 157:3
185:17 216:22,23
224:17 235:8
**possibly**
34:4 127:8 131:12
152:3 157:7
**potential**
9:10 11:5 16:20 17:5
33:9,12,23 42:14
68:3 149:4 165:24
178:23 179:11


MAGNA
LEGAL SERVICES

26-10769-mg    Doc 49-17    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 17 -
Transcript of May 13    2026 Deposition of P. Pretlove    Pg 285 of 300

Page  28

184:23 199:2 225:9
243:4
**potentially**
42:19 205:4 243:10
**pounds**
88:4,8,12
**power**
75:6,14,16 130:22
197:22 211:10,12
212:25 213:13
215:14,15 218:2
219:14,17 221:21
221:22 225:25
**powers**
73:22 75:7 76:5
130:21 197:10,20
197:24 198:6,7
210:24 211:6,13,17
211:23 212:7,15,23
213:10 214:5,17,23
215:9,22 216:2,8,25
217:10 219:4
222:19 223:15
**practically**
224:16,25 226:2
**practice**
60:24 87:15 167:8
**practitioner**
35:4 81:9 83:18
**pre**
131:23
**preapproval**
86:11
**preapprove**
87:20
**preceding**
54:9
**precise**
12:17 24:12 70:10
72:23 73:23 81:20
88:6 100:16 140:16
**precisely**
9:24 12:8,10 13:5
14:20 17:2 25:23
37:16 56:23 65:5
77:6 95:4 132:15

137:16 141:17
142:16 179:9
206:19 244:9
**predecessors**
242:2
**predominantly**
21:18 22:15 44:16
61:2 70:19 71:3
**prefer**
207:6
**preferred**
100:20
**preliminary**
10:5 15:7
**preparation**
49:3,20 84:8
**prepared**
58:16 61:16 82:23,24
87:20 192:19
**presence**
14:22 96:2,3 97:2
**present**
2:19 4:2 55:21 56:5
57:13 103:18
**presently**
117:2
**preserve**
44:24 45:4 46:14
117:22 138:16
198:21 205:4
**preserved**
5:10
**preserving**
194:16
**presumably**
177:16
**Pretlove**
1:10 3:2,5,7,13 5:17
39:14,18 48:5 49:16
99:12 100:2 120:12
150:15,20 154:11
159:11,20 163:3
166:15,17 190:8,9
195:15 206:25
208:11 210:4,5,8
224:6 230:7 250:3

253:2 254:6
**pretty**
149:9 152:19 190:13
**prevent**
129:15 198:18
228:24
**prevented**
129:17
**previous**
130:2
**previously**
132:3 163:2 169:21
235:25 241:7
**pre-insolvency**
127:13,24
**primarily**
138:18
**primary**
73:6,11 75:25 138:20
200:11 229:3
**Prince**
1:6 3:14 34:20 35:15
68:6 103:9 133:25
143:24 144:3
147:12 162:6,10,17
163:14 164:7,21
209:13
**Prince-BSF**
190:25
**prior**
23:13 58:8 122:4
123:13 128:16
129:21 131:13
134:13 139:14
140:25 197:10,20
208:9 243:19,20
**priority**
227:21 228:15 231:7
**private**
79:16
**privilege**
84:15,17 92:5 93:6
93:10 94:6,9,16,18
110:3 139:11,12,13
184:22 185:4,9
243:9,23 245:4,9,22

245:22
**privileged**
49:11,13 82:7,8
84:10 182:21
243:15
**privileges**
59:5
**privy**
72:10 85:5
**proactively**
225:13
**probably**
47:15 52:13 72:21
82:15 94:9 108:9
132:19 189:14
223:20
**problems**
139:6 237:15
**procedure**
36:25
**proceed**
59:7 220:14
**proceeding**
6:2 20:20 27:16
29:22 49:16 52:19
53:5,5 54:19 57:19
58:22,25 61:19
65:13 94:8 106:17
120:2,3,19,20
154:21 157:23
161:7,21 162:23
181:25 201:23
248:11
**proceedings**
1:7 10:18 19:7,11
25:16,25 29:5,18
30:12,21 36:20 37:5
37:12 38:3 64:20
80:6 96:6 106:11
117:2,12 118:5,11
118:13 119:9,15,21
120:25 121:3 124:3
146:2,23 155:6,22
161:6,11,16 189:2
205:2 207:2 251:4
**proceeds**


MAGNA
LEGAL SERVICES

26-10769-mg    Doc 49-17    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 17 -
Transcript of May 13    2026 Deposition of P. Pretlove    Pg 286 of 300

Page  29

231:6 232:25
**process**
 27:6,9 31:14 32:10
  34:6 35:7 41:10
  42:5 43:6,22 81:18
  83:6 87:10 92:25
  115:19 128:6
  129:16 136:2
  188:11,17 202:16
  218:6,16 220:9
  225:2,15,20 226:25
  227:4,5 229:24
  230:3,20 231:3,22
  233:11,15 240:16
  240:21 242:13
**produce**
 28:3
**produced**
 16:3 99:9 181:17
  191:6
**product**
 110:3 131:16,18
**production**
 39:19 40:6 250:13
**professional**
 133:20 253:4
**professionally**
 8:8
**professionals**
 196:8
**profitable**
 131:24
**promised**
 246:9
**proof**
 43:10
**proper**
 95:14 236:14
**properly**
 125:24 126:10
**property**
 18:8 20:8 31:9 34:15
  43:17,18 96:4,11
  97:2,3 145:15 153:7
  153:12 165:15
  166:6 168:5 169:8

169:23 178:11,16
 180:21 182:4
 218:25 219:2,2,7
 221:6,7,18
**propose**
 32:21
**proposed**
 2:15 32:16 56:6
  60:12
**proposing**
 220:12
**prosecuting**
 36:15
**prosecutions**
 68:5 71:20,22
**prospectively**
 182:16
**protecting**
 194:16
**protocol**
 58:12 60:15 67:3,5
  67:10,13,14,23
  68:15 69:7,9 139:3
  211:15 235:21
  236:4,19,25 237:8
  237:23 239:2
  248:20 249:5
**prove**
 203:14
**provide**
 98:24 99:5 129:7
  155:15 156:3
  238:11,24
**provided**
 15:21 23:13 67:6
  98:9 133:15 135:14
  199:23 214:3 215:7
  217:8 224:16
  229:13 238:14
**providers**
 31:11 34:14 43:13
**provides**
 67:10 69:9 86:7
**providing**
 24:6 84:4 109:18
  110:2 124:6 239:4

**proving**
 206:7
**provision**
 122:5
**provisional**
 7:12 8:8,16,20 9:3
  16:5 20:12 32:2
  33:2 40:19 44:8
  46:10 50:18 51:7
  53:12,21 55:25
  64:14 65:17 72:11
  72:14 73:3,7 74:14
  76:21,25 77:16,22
  78:4,17,22 79:2,9
  83:14 85:13 99:2,24
  105:19 106:9 117:3
  121:25 122:17
  123:14 124:10,15
  124:19,21,24,25
  125:6,14 127:11
  139:15,20 140:19
  140:25 156:18,19
  160:13 161:15,20
  167:5 174:4,9
  179:12 181:22,23
  182:11,13 196:2
  197:4 199:7,14
  200:13,21 203:19
  206:11 210:25
  211:7 212:8 214:4
  215:8 216:18,24
  218:15 221:13
  222:18 223:3,7
  227:18 229:8
  230:21 231:15,25
  232:9,21,22 233:6,8
  236:20 237:3,6,10
  237:22 238:20
  239:18,23 240:18
  241:8 242:3
**provisions**
 238:7
**public**
 1:13 5:13 27:12
  29:15 30:2 56:14
  64:12 68:3 79:19

92:16 117:12,16
  135:5 147:21 194:2
  198:20 201:10
  203:11 254:11
**publication**
 244:8
**purchase**
 129:8
**pure**
 29:13
**purely**
 33:4
**purporting**
 92:21
**purpose**
 67:13,23 68:15 71:18
  73:15 117:4 118:4
  118:13 119:8,17
  203:23 221:23
**purposes**
 6:9 211:8
**pursuant**
 1:10 74:16 76:11
  77:2,3 196:3,22
**pursuing**
 194:19
**put**
 27:15 41:25 58:19
  60:6 62:21 63:3
  64:24 65:3,7 83:8
  89:8 93:8 116:15
  135:5 136:8,19
  172:9 191:5 195:16
  224:12 227:8 232:5
  240:10 242:15
**putting**
 27:14
**p.m**
 109:3,8 150:13,18
  223:25 224:4
  249:23

---

**Q**

**qualifications**
 83:13
**quarterly**



26-10769-mg    Doc 49-17    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 17 -
Transcript of May 13    2026 Deposition of P. Pretlove    Pg 287 of 300

Page  30

238:17
**question**
7:6 21:2 29:16,23
30:4,11,19 66:22
75:12 82:17 92:4
93:6,11 94:11 96:24
107:25 114:9
115:18 117:7 119:6
119:13,16 125:11
151:11,16 154:5
158:22 167:12
168:13 170:19,21
172:4 175:6,7
185:18 193:11
200:9 201:20 202:6
202:22 211:18,19
217:4 219:5 220:6
245:17,17,24 246:8
246:9,17
**questioning**
58:21 92:22 150:6
**questions**
47:12 59:3 65:12
91:4 109:14 110:12
121:7 150:7 155:4
159:12 160:3,4
170:6 187:2 227:14
239:16 247:8,10,19
249:18 252:6
**quick**
47:13,18,19 108:4,5
108:12 150:5
**quickly**
41:21
**quite**
34:4 57:9 73:13 74:3
83:25 119:13
123:17 152:3
176:17 231:20
234:4
**quote**
196:18 206:16

———————
**R**
———————
**R**
5:11 109:2,4

**Radio**
144:16
**raised**
29:21 40:15 204:5
**rate**
88:2,3
**rateable**
95:16 102:21 169:2
**rates**
87:25
**rationale**
199:17
**reach**
82:17,18 234:6
**reached**
82:19 240:2 245:2,6
**reaching**
127:7
**read**
41:13 49:14,22 50:8
68:12 79:4 118:21
137:16 143:20
163:10 166:20
167:19 178:9
198:13 204:14
208:12 222:16
**reading**
49:18 59:14
**ready**
166:21
**real**
20:7,8 21:25 32:3
219:2 221:7
**realization**
85:23 90:15 102:17
102:18 103:15
231:5 232:24
**realizations**
32:13 33:5 44:17
47:6 86:2 102:10,11
104:14 157:25
218:12 225:22
**realize**
32:4 44:25 45:7,24
46:10,17 103:8
115:7 205:4 219:14

219:17 222:5
**realized**
45:13 87:7 172:24
173:17 226:3
**realizing**
33:17 44:22
**really**
16:16 45:10 58:18
65:9 69:6 117:6
156:24 175:14
177:5 201:17
202:20,20 219:23
226:22 233:13,18
235:15
**reason**
43:14,24 45:3,13
94:23 116:4 171:14
175:7 176:8 182:10
193:13 200:11,11
**reasonable**
240:8
**reasons**
157:14 199:11,16,17
199:24 200:6,16,17
**recall**
12:17 13:5 14:19
15:13 17:2 21:9
24:12 51:14 55:10
57:2,5 58:10,15
60:16,22 61:4,5,8
61:15,20 62:9,23
63:2 65:11,14 70:10
71:5 81:24 83:15
88:6 91:11 95:4
100:7,9 105:8
106:21 107:2
113:19 122:10
135:23 137:10,15
142:3 144:18,19
145:25 170:25
234:2,16 235:15
244:2,17,20 245:7
245:10,18,19 246:2
246:6,10,13,21
248:8
**receivable**

23:3
**receivables**
195:5
**receive**
34:8 35:18 81:15
182:8
**received**
28:8 34:23 35:13
40:8 61:4 74:5,10
100:7 113:6 129:2
134:3 171:15,18
181:23 185:23
189:3,11 190:19
191:10 193:19
194:11,24 239:22
**receiverships**
223:2
**receiving**
61:2 100:17 181:10
**Recess**
47:24 108:15 150:14
224:2
**recipient**
99:25
**recite**
122:20 123:18
**recognition**
6:2 17:11 48:19
49:15 52:18 80:6
120:25 121:3 124:2
124:15,24 126:15
126:24 129:23
130:4 141:10 180:7
**recognize**
53:4 166:23 190:15
190:17 210:17
**recognized**
157:18
**recollecting**
239:21
**recollection**
16:9 25:15,21 57:13
67:9,21 82:12
154:23 171:12
245:20 248:18
**recommence**



26-10769-mg   Doc 49-17   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 17 -
Transcript of May 13   2026 Deposition of P. Pretlove   Pg 288 of 300

Page 31

128:14
**record**
3:11 4:25 42:13
47:17,23 48:3 65:2
108:14 109:8
150:13,18 159:5
166:15 192:20
223:25 224:4 225:8
249:20,22 253:2
**recorded**
34:24 55:20
**records**
16:2 43:16 122:6
137:24 149:18
189:24 198:24
204:3
**recover**
68:25 209:22 229:25
**recovered**
9:24 40:25 204:4
**recoveries**
35:12 102:19 174:25
218:9
**recovering**
194:17
**recovery**
83:22,23 117:25
205:18
**redescribe**
172:10
**refer**
6:11 23:19 160:19
161:2 184:20
206:14 237:11
**reference**
25:17 144:25 145:4
145:23 209:9 213:8
249:6
**referenced**
37:21 40:7 99:16
145:8 204:18
**references**
62:2 162:13
**referencing**
67:6 208:5
**referred**

17:3 34:19 97:6
188:16 227:24
230:14 236:16,17
249:3
**referring**
31:6 54:10 63:11
64:6 72:2 96:13,18
97:4 107:8 124:23
126:20 135:25
144:5,21 160:20
161:4 183:15,18
197:7 208:15
209:12
**refers**
16:9 113:19
**reflect**
16:11 240:5
**refresh**
77:5 171:12 248:17
248:23
**refund**
87:19
**regard**
63:20 92:22 134:17
204:11
**regarding**
20:6 173:20 205:22
**Regent**
153:5 228:19,24
229:10
**regimes**
126:12
**register**
149:18
**registered**
15:17,19,20 147:20
189:23 192:18
253:4
**regular**
238:12,24
**regulated**
10:21
**regulatory**
68:4 71:19,21
**reimburse**
102:13,18

**reimbursed**
175:19 176:11,12
**reimbursement**
173:14
**reinforce**
124:3
**reiterate**
185:17 212:20
**reiteration**
227:13
**relate**
113:22
**related**
34:15 98:22 113:5
114:4,14 123:4,7
204:25
**relation**
26:14 27:23 44:2
46:7 68:3 75:8
82:21 84:13 96:21
119:15 134:18
146:4 148:21
158:11 180:4 202:3
205:9,10,23 206:3,8
215:22 223:2,7
**relationship**
25:18 105:17
**relationships**
26:3
**relatively**
86:12
**release**
126:9
**releasing**
128:13
**relevance**
93:16,20,24 94:3,8
94:20
**relevant**
80:6 118:11 133:9
231:19
**reliable**
207:21
**reliably**
63:2 65:5 123:18
**relief**

20:12 50:18 51:8
121:25 122:5,17
123:14,16 124:4
125:6,14,21 129:24
130:11 141:2 158:8
181:24 182:11
206:11
**rely**
119:3
**relying**
18:20 196:17 227:15
**remained**
64:15
**remaining**
86:24 164:7
**remains**
131:21
**remember**
14:21,24 20:23 36:3
57:10,20,23 60:8
61:7,24 64:21 79:24
81:20 82:22 84:4
100:11,16 105:23
128:19 137:5
187:20 206:17,20
242:22
**remind**
53:16
**reminder**
6:23
**remit**
205:21
**removed**
79:2 228:20
**removing**
153:9
**remuneration**
90:17
**renders**
96:4
**reorganization**
117:4 119:20,24
**repaid**
102:9 175:4
**repayment**
175:16


MAGNA
LEGAL SERVICES

26-10769-mg   Doc 49-17   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 17 -
Transcript of May 13   2026 Deposition of P. Pretlove   Pg 289 of 300

Page 32

**repeat**
7:6 92:10 160:4
168:16
**repetition**
160:7
**rephrase**
7:6
**replaced**
211:24
**replied**
17:8
**reply**
176:21
**report**
144:20 155:16
238:19 239:9,11
**reporter**
1:12 3:23 6:25
144:17 253:4,8
**reporting**
109:15 143:21 144:5
144:12,15
**reports**
238:17
**represent**
4:3 5:4 38:23 107:6
159:23 168:12,15
191:4 207:15
210:11
**representations**
56:13
**representative**
17:25 72:22 106:3,13
106:16 154:15,21
**representatives**
2:16 18:7,19 57:16
67:7 69:11 70:16
71:4 98:12,24 107:7
107:15,21 133:2,4
140:23 141:25
142:6,20 147:10
168:25 169:6 171:8
215:21
**represented**
6:14 56:8,10
**representing**

10:11,14,17,21 38:11
79:13
**reproduction**
253:8
**request**
3:20 17:19 27:25
39:19 40:6,10 82:2
84:5 85:2 98:5
110:20 168:4
250:13
**requested**
159:9
**requests**
17:14,15,22 84:19
**require**
196:6 238:23
**required**
27:25 239:9,10
**requirement**
152:8 193:24 194:7
238:16
**requirements**
109:16 193:16
**requires**
238:11,15
**rescue**
237:12
**reservation**
247:13 249:19
**reserve**
159:17
**residual**
197:22
**resolution**
159:8
**respect**
9:3 16:2 20:12 21:2
26:10 30:16,20 82:2
83:13 86:3 98:4,21
100:19 105:15
106:2,20,23 109:13
111:5 113:5 116:25
129:14 131:8
134:24 136:10
137:13 138:2,7
159:8 197:12

211:23 212:16
224:18 226:25
227:6
**respectful**
79:21
**response**
17:21,23 26:24 36:19
38:8,12 40:14 63:10
64:4,20 84:5 98:4,8
98:10 168:3,16
171:4 172:3 183:10
183:11,12 184:6,16
**responses**
6:24 39:18,22 40:5
97:25 99:16 121:19
166:17 167:2,25
184:13 250:13,13
**responsibilities**
76:2 213:11
**responsibility**
138:20 209:25 229:4
**restate**
200:9 211:18
**restore**
233:7,12
**restraint**
37:4
**restrictions**
155:21
**restroom**
223:23
**restructure**
201:23
**restructuring**
32:17,20 201:15
**result**
34:18 38:14 39:8
41:9 78:16 90:7
91:25 149:11
151:25 241:23
**resulted**
83:22
**resumed**
109:4
**resumption**
129:18

**retained**
65:6 91:14 93:3 95:2
**retainer**
9:10 10:7,24 18:3
19:21 89:18 90:2
95:13,17 96:12,19
96:22 97:6,17 98:14
102:22 104:17,22
105:7,9 110:11,13
110:14,20,25 111:6
111:10,22 112:2,7
113:6,7,20,23
165:24 169:3 170:4
170:23 171:9
172:12,23 174:12
174:17 175:17
183:16
**retainers**
111:4
**retention**
106:6 109:25
**return**
129:21 135:17
190:10 192:17
250:13
**returned**
174:19 175:9,11,18
176:8,22 177:3
**returns**
190:21
**reveal**
82:7 243:13
**revealed**
19:9
**revealing**
58:23 182:21
**reverse**
136:20
**review**
41:21 49:2 58:8
61:13,18 62:8 133:9
167:18 190:13
198:24 204:10
207:3 210:9 234:13
**reviewed**
50:15 51:6 52:9 60:5


MAGNA
LEGAL SERVICES

26-10769-mg    Doc 49-17    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 17 -
Transcript of May 13    2026 Deposition of P. Pretlove    Pg 290 of 300

Page  33

135:4 179:7
**reviewing**
 51:14 62:9
**revisit**
 94:22
**RFP**
 242:13
**right**
 7:11,13 8:17 9:5 10:9
   10:15 11:6,6,21
   13:7 14:2 20:14,17
   22:13 23:17 24:17
   24:18 29:3 30:15
   32:17,24 33:16,22
   36:8,9 38:9 42:20
   44:13,14,21,23
   45:18 46:18 47:2
   48:13,17 50:21,24
   52:3,14 53:8 55:18
   58:6 60:4,14 63:12
   63:13,21 64:2,25
   67:2,20 69:22 70:21
   75:10 76:15 78:8
   80:23 86:10 93:15
   94:6 96:7 100:2,5
   102:8 103:12,18
   104:5,9 107:7 113:3
   113:12,17 114:22
   115:13,25 116:6
   117:4,15 118:15,17
   118:25 119:21
   120:14 123:5,10
   124:22 126:3
   135:14 137:8,19,23
   138:8,25 141:14
   145:21 146:19
   154:2 156:15,20
   158:25 160:14,17
   160:24 161:4,8,22
   162:6 163:20 166:8
   167:16 170:24
   172:18,25 173:6
   174:14 176:8
   177:18 178:9,17
   179:15 181:4,5
   184:9 186:4,11,20

187:5,15 188:14
   189:4,16 190:24,24
   191:8 192:22 193:8
   193:10 195:7,23
   197:4 199:3 203:4
   206:11 209:11
   213:21 214:24
   215:18 221:13
   230:15 232:10,11
   233:21 234:16
   235:23 247:24
**rightfully**
 102:19
**rights**
 6:7 39:8 143:22
   159:17 222:19
   223:15
**ring**
 222:24
**risk**
 121:25 122:23
   221:18
**risks**
 121:13
**Riz**
 2:21
**role**
 73:6,11 77:15 79:22
   84:2 85:13 131:7
   132:11 138:15
   194:8,15 205:3
   206:6 209:20,21,24
**room**
 6:15
**Rosenthal**
 2:18 4:15
**rough**
 88:23 245:20
**roughly**
 63:21
**rows**
 192:5,6
**Roytblat**
 2:7 4:7
**rules**
 116:3

**run**
 39:9 88:24 237:13,14
**running**
 131:19
**runs**
 132:21

—————————
S
—————————
**S**
 109:2,2,2
**sale**
 220:4
**salvage**
 127:9
**Samantha**
 2:18 4:15
**sanction**
 215:10,17 226:8
**sanctioned**
 151:20 165:3,5,8,12
**sanctions**
 63:24 64:7,23 122:22
   123:16 125:5,15
   126:12 128:16
   131:14 135:2,9
   143:3,8 145:17
   152:2,16 154:10
   164:14,24 220:4
   226:8
**satisfied**
 193:20 220:18
**save**
 125:25 126:16
**saw**
 137:16 199:21
   212:15
**saying**
 185:7 206:20
**says**
 18:18 40:10,16,18
   41:16 51:20 54:7
   59:11,11,14 62:10
   63:9,12,14 64:4,11
   66:3 67:22 73:14,20
   77:20 78:24,25
   98:10,23 100:2,19

106:22 107:5,14
   110:13 114:23
   117:11 122:22
   133:7 136:22
   143:19 164:11
   168:4,20 171:7
   183:19 189:22
   190:25 191:13,21
   195:23 196:22
   213:13 215:6
   216:14,23 217:7
   222:8 223:15
   224:16 229:11
**scale**
 241:24
**scam**
 143:23
**scams**
 39:7
**scene**
 92:15
**Schedule**
 214:6,9,16 215:9,16
   216:2,8 217:2,11
**scheduled**
 217:17
**scheme**
 18:14 35:15 169:16
   183:8,20 184:17
**schemes**
 32:21 33:25
**Schiller**
 1:11 2:4 3:20 4:5 6:3
   38:11 136:15
   137:15 146:7 191:7
**SCHWARTZ**
 2:8
**scope**
 75:15 144:20
**seal**
 155:22
**sealed**
 58:22,25 82:10 89:4
   155:23
**search**
 136:20



26-10769-mg   Doc 49-17   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 17 -
Transcript of May 13   2026 Deposition of P. Pretlove   Pg 291 of 300

Page 34

**searches**
147:21 154:24
**second**
163:17 224:13 247:7
**section**
48:6 78:5 96:6
133:17,18,19,24
134:13,24 196:3
215:13 218:21
222:8,10,11,11,12
**sections**
231:19
**secure**
209:22 221:24
**see**
5:22 8:4 17:11 20:22
40:10,15 41:12 43:9
51:20 54:2 59:20
87:3 99:3 100:23
107:12 108:10
118:2 151:7 154:4
163:15 164:8,16
168:10,21 169:13
169:19,22 171:7
176:5 177:13
178:14 183:9,13,19
184:7,10,15 185:11
190:23 191:13,22
192:5,8 196:10
197:16 207:12
208:2,23 211:5,19
213:25 215:12
222:15 231:10
232:17 234:9
248:22
**seek**
17:6 43:25 44:10
45:14 102:17
104:12 148:20,25
157:2,8 158:5
179:19 205:17
218:14 225:7
248:10
**seeking**
123:22 179:8 180:3
216:16,19 232:2

235:13
**seen**
43:16 129:19 136:14
137:14 146:3
152:16 187:7,8
189:12 204:13
**seized**
19:6 37:10
**seizure**
207:21
**seizures**
207:19
**selection**
49:10
**sell**
75:23 128:22 130:16
130:23 219:3,22
220:2,23 221:14
223:11
**selling**
76:5 130:19 220:10
**sense**
6:17 7:5 88:23 91:2
134:23 177:6 190:6
**sensibly**
75:21 119:12 203:6
**sent**
17:13 35:24 60:19
61:9,23 99:21,23
100:12 171:17
242:23
**sentence**
164:9 230:16 231:13
232:9,10
**separate**
24:3 35:25 66:10,14
99:8 105:3 161:11
185:14,23 197:8
**series**
16:11
**Seriously**
147:7
**serve**
83:14 230:21
**served**
76:14 154:14,20

203:19
**services**
1:16 3:22,24 15:20
15:20 23:13 24:6
81:11,16,23 83:4
89:21 193:25
229:13
**serving**
76:24 161:20
**set**
18:4 67:24 94:2 97:9
98:15 103:23
105:24 133:7
134:13 167:4 214:5
215:9 216:25
217:10 228:2
233:14
**sets**
211:17 212:22
214:17 216:15
**setting**
86:20 91:12
**seven**
81:24
**share**
14:5 68:19 69:5
155:9,18 156:4
184:25
**shared**
58:10 156:8
**shareholder**
132:18
**shareholders**
132:4,24
**shareholding**
46:7 129:9 220:2
**shares**
45:12
**sharing**
67:15 236:19
**sharpen**
211:19
**ships**
237:19
**short**
10:8 190:13 211:14

**shortly**
100:17
**show**
48:10 136:20
**showed**
74:17
**side**
85:4 224:12
**sifting**
16:7
**sign**
65:15 243:21
**signature**
50:4 51:23 188:3
**signed**
28:4,8 50:2,11,22,23
51:3 52:2,5,10
65:21,23,25 66:8,10
67:3 98:9 118:15
163:19 167:14,15
**significant**
21:25 45:11 46:6
83:21 220:9 221:3,5
**significantly**
181:18
**similar**
24:6 31:11 32:20
37:4 46:7 76:17
89:22 177:19
223:16
**simple**
151:16 213:6
**simply**
21:14,20 22:18 23:7
23:23 24:22 104:24
129:9 182:24
186:22 187:3,10
**single**
75:7 118:11 119:16
156:10
**sit**
28:10,23 44:4 75:2
84:3 106:22 117:2
120:21 125:9
202:10
**sitting**



26-10769-mg    Doc 49-17    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 17 -
Transcript of May 13    2026 Deposition of P. Pretlove    Pg 292 of 300

Page  35

31:19 111:12
112:23 174:13
175:10 176:7 188:8
188:20 193:8 195:2
**situation**
132:15
**situations**
176:25 177:3 178:5
208:20
**six**
81:21
**six-minute**
87:25
**Skinner**
2:6 4:4,4 5:9,16 11:8
39:11,16,21 47:10
47:15,21 48:4 49:8
49:12 59:9 84:23
89:8 91:21 92:4,9
93:5,14,22 94:4,12
94:24 95:10 99:10
107:19 108:3,8
109:12 110:7,9
113:15 115:17
120:10 121:10,21
139:10 146:25
147:6 150:4,19
151:3 154:4 159:2
160:3 165:16 170:5
172:4 183:25 184:5
235:22 239:15
240:9 247:13,18
248:2 249:17 250:3
250:3
**skip**
196:4
**slightly**
217:5
**slowly**
59:8
**small**
131:21
**Smith**
55:2,4,17 56:4
**sold**
76:11,25

**sole**
185:20
**solely**
94:3
**solicited**
128:25 129:4
**solvency**
30:5,11 200:23,25
201:6,7 203:2,15
**solvent**
202:11,13,19
**someplace**
15:5 56:19 72:3
149:16
**sooner**
43:24
**Sophie**
2:7 4:7
**sorry**
23:15 25:14,20 68:8
68:11 80:17 92:9
103:2 107:10,18
114:9 120:11
126:21 143:4
144:11 146:25
170:21 183:18
184:18 246:17
**sort**
85:9 167:23 201:14
224:11 242:13
246:4
**sought**
10:3 44:15 147:18
174:2 195:25
198:15 199:6,13
200:13,22 249:10
249:13,15
**sounds**
16:14 50:21 78:8
82:19 93:18
**Southern**
1:3 95:14 206:10
**so-called**
162:5 163:14 164:7
164:21
**space**

237:15
**Spain**
23:22 24:5 127:14,16
**Spanish**
24:10 128:5 129:16
**Spanish-operated**
21:19
**speak**
6:6
**speaking**
26:15 61:5 131:7
142:23 167:11
207:16 224:16
225:2 239:15
**specific**
16:16 105:8 111:5
123:12 128:11
141:20 148:12
152:22 209:3
215:23 219:24
233:17,25 234:3
**specifically**
113:19 119:14
122:20 141:8
144:14 145:23
146:5 190:17 202:2
206:19 228:18
246:6
**specifics**
244:3
**specified**
78:4
**specify**
179:24
**speculation**
92:2
**spell**
12:13
**spelled**
62:3
**spent**
16:6 35:5 55:7
**split**
102:24 103:2
**splitting**
104:8

**spoke**
61:9 141:15
**spoken**
26:12 147:23
**spot**
184:19
**stabilize**
123:22 124:20
129:14,20 130:12
131:10
**stabilized**
130:2
**stack**
39:24
**stage**
9:11,13 10:5 14:16
15:6,7 19:3 25:6,9
32:2,8,9 33:2,3
34:11 37:7 179:5,23
**stages**
16:15
**stakeholder**
144:4
**standard**
27:24 76:20 82:24
86:12 110:18
**Standish**
65:16 88:10 107:22
**stands**
28:7
**Star**
236:17
**start**
8:4 81:19 129:20,20
207:11
**started**
6:11 79:22 127:2
**starts**
167:23 168:3
**state**
1:13 4:2 14:20 17:25
18:7 65:5 81:4
98:12 165:21 171:8
**stated**
120:2 174:11 189:13
**statement**



26-10769-mg    Doc 49-17    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 17 -
Transcript of May 13    2026 Deposition of P. Pretlove    Pg 293 of 300

Page  36

18:16 28:3,4 40:22
41:23 46:20 64:17
73:9 98:19 118:17
152:8,9 181:15,16
192:24
**statements**
20:20 28:9
**states**
1:2 9:7,9 11:12,20
14:18 18:9,22 22:6
22:12 25:5,11 37:18
37:22 38:4,16 41:19
63:25 64:21 96:4
97:2,4 122:8 124:5
125:16 130:5
139:16,21 154:22
165:6 166:7 168:7
168:25 169:6,8,11
169:18,25 178:11
182:12 187:14
205:24
**stating**
196:4
**status**
8:15 46:11,15 67:23
156:19 222:2
**statutory**
152:7 192:17 193:16
193:24 227:24
231:6
**stayed**
177:16
**step**
172:23 178:5
**stepping**
112:14
**steps**
36:23 37:4 75:19
128:21 136:2
137:25 207:25
221:19 228:25
**Sterling**
88:13
**Stipulations**
252:6
**stock**

131:19,21
**stockholder**
79:16
**stop**
66:24 219:13
**straight**
7:19 39:25 147:3
**straightforward**
123:25
**Street**
2:16 31:9 43:18
145:15
**Strictly**
142:23
**structure**
24:2,13 129:10
147:12,22 148:3,7
**struggle**
167:9
**struggling**
29:23 84:12 175:24
176:20
**stuff**
72:2 194:24
**styled**
105:24
**subject**
17:23 18:10 19:10
40:16,18 79:10
80:10 89:4 98:10
103:16 104:3
109:15 115:4 120:4
120:20 129:12
155:20 164:14
168:20 169:9
176:19 178:12
179:3,21 184:22
185:4 222:17 243:9
243:13
**submission**
58:9
**submissions**
89:4 196:5
**submit**
31:22 41:4 152:8
**submitted**

54:14 60:6 61:14
66:15,18 135:22
137:4 190:22
192:17
**submitting**
116:20
**Subscribed**
254:8
**subsection**
73:19 222:17
**subsequent**
86:17
**subsequently**
65:18 242:4
**subset**
7:21 209:7,8
**subsidiaries**
25:11,13 147:13,24
187:9
**subsidiary**
22:18 23:7,23 24:10
24:22
**substance**
79:6 244:25 245:5
246:19
**substantial**
153:11
**sufficient**
17:16 28:25 31:19
40:11,25 98:6 158:8
202:12 226:8
229:25
**sufficiently**
36:13
**suggest**
151:21 200:3
**suggests**
189:19
**Sullivan**
2:15 4:16 9:9 10:8,25
18:4 19:22 52:6
89:19 90:3,4,11
91:6,15 95:2,17
96:12 98:15,25
99:12,21 100:12
102:2 104:18,21

105:3,10,17 106:21
106:24 107:5,13
110:10,24 111:9,13
111:14,16 112:7,25
113:7,11,23 114:10
114:15 123:20
125:19 127:3
138:12 140:2 141:5
165:23 169:3
171:10 172:13
174:14,18,19 175:8
176:9 183:17
250:13
**sum**
111:17
**summarize**
72:23 155:12,14
180:17
**summarizes**
148:13
**summary**
61:11 75:11 118:9
135:11 170:11
199:16 200:2,6
240:8
**supervised**
230:19
**supervision**
117:22 253:8
**supplemental**
138:5
**supplied**
133:10
**supply**
153:8 228:21
**support**
196:5 199:21,23
**Supreme**
53:7
**sure**
10:6 11:20 13:23
17:3 23:16 26:15
37:11,15 44:12
47:11 48:17 59:2
69:25 73:25 86:5
94:14 99:8 109:12


MAGNA
LEGAL SERVICES

26-10769-mg   Doc 49-17   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 17 -
Transcript of May 13   2026 Deposition of P. Pretlove   Pg 294 of 300

Page 37

118:12 131:5,6
134:6 145:3,25
150:9 154:25
176:14 184:8
194:15 200:19
217:22 235:10
248:15
**suspect**
199:24
**suspicion**
25:24 187:18 188:2
**swiftly**
221:19
**sworn**
5:12 253:2 254:8
**system**
62:16
**S&C**
10:7,8 147:11,16

**T**

**T**
5:11 109:2,4
**tab**
23:16 166:11
**Tabacalera**
23:10,18,19,22,22
24:3,5,7,9,11
**take**
3:18 5:6 30:18 41:14
47:13,16 48:10
56:18 63:5 84:21,23
87:6 89:2,6 91:24
93:12 94:12,21
103:14 108:4,9
109:20 111:24
133:17 150:4
161:18 166:20
194:25 221:4
234:22
**taken**
1:10 36:14,23 74:16
74:19 75:19 83:19
128:21 136:3
137:25 221:19
**talk**

8:13 20:16 109:24
145:14 150:8
204:14 215:24
**talked**
6:10 25:2 80:22
155:5 170:3,3 219:8
219:25
**talking**
7:19,21,24 69:20
70:23,24 141:11,22
184:5 191:17
208:17,21,25 209:3
209:6 224:7 231:18
231:20
**talks**
63:18,23 71:17,18
96:25 133:24 135:8
**tangible**
168:5
**team**
16:6 56:11 69:16
70:12 100:12 204:6
235:2,2 243:25
**tell**
11:18 52:25 77:20
116:14 142:14
165:18 207:5
216:22
**temperature**
94:13
**temporary**
72:15
**Ten**
47:21
**tens**
12:24 13:20 39:3,9
**terminate**
233:11
**terminates**
77:23
**termination**
78:16 211:15
**terminology**
126:5
**terms**
9:8 34:25 42:2 44:18

76:20 111:5,8
113:10 114:2 152:4
164:24 233:17
**territories**
143:7
**testified**
5:13 109:5 160:11
169:22 186:6,21
187:11 188:12
189:6 202:25
**testimony**
49:3 60:10 113:14
161:18 165:19
239:22 240:6 253:2
**tests**
27:2
**text**
246:4,24
**Thank**
121:10 142:13 154:7
195:18 214:15
**thing**
27:24 73:14 76:3
78:19 123:19
176:18,19 207:3
220:19 241:16
**things**
5:19 69:2 73:12,21
74:4,22 117:20
119:19 122:16
129:24 134:10,12
134:13,17,19,21
135:21 150:10
155:24 156:5
158:15,23 160:8
198:16 213:11
220:16 238:19
**think**
8:5 13:13,14,22 14:3
14:8 15:6 24:13
26:23 29:4,11,24
30:15 46:19 47:10
52:12 57:18 58:16
58:21 60:9 61:15
63:2 65:18,22 68:16
68:22 70:6 71:14,14

74:3,13 75:5,18,20
75:22,24 76:3,23
80:10 82:11,12,22
83:15,24 84:18
89:25 90:6,16 91:23
94:15 97:9,13,21,25
99:23 103:13 104:3
108:6 110:18,21
111:7 116:7,11,12
118:9 119:13,18
121:8,19 123:6,17
124:12,13,14 125:7
125:20 126:5,7,13
126:23 128:19
129:23 130:6,19
131:6 132:16
135:10 136:14,16
137:20 138:4
140:13,17 141:14
141:18 142:10
143:16 144:8,12
145:3,4,11 148:13
148:16,19,24 149:7
150:5 151:17
153:14,18 156:14
156:16 157:3,9
158:4,6 159:2 162:9
166:8 170:10 175:5
175:13 176:17
177:21 179:10
181:8 182:6 183:23
184:24 185:11,25
187:22 188:12
189:18 193:7,11,18
194:8 195:7 198:10
199:15,17,21 200:3
200:12 201:17
202:25 203:6,24
204:5 205:11
207:20,20 208:5,13
208:16 209:11,19
211:4 212:3,4,9,21
213:3,5,15 215:2,19
215:24 216:2,9,23
217:15,23 219:5,8
219:10,16 220:8



26-10769-mg   Doc 49-17   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 17 -
Transcript of May 13   2026 Deposition of P. Pretlove   Pg 295 of 300

Page  38

221:20 222:7,8,11
223:20 224:9
227:24 228:6
229:20,23 231:17
232:14 234:3,25
236:9 238:16 239:8
239:11,20 240:7,9
241:11 243:6 245:3
245:4,8,13,21,25
**thinking**
134:9 142:15 202:3
**Third**
2:11
**third-party**
127:23
**thorough**
198:22
**thought**
5:7 116:14 178:19
248:20
**thousands**
39:3
**three**
41:19 101:2 160:12
191:20 247:18
**ties**
143:24
**time**
3:16 12:7 16:7 18:20
28:8 30:24 41:14
43:25 47:16,22,25
49:14 50:11,15,17
51:6,7,13,15,16
52:12 53:20 55:9
71:4,5,12,12 87:6
88:18,21 90:14
91:20 93:4 102:17
108:4,13 109:3,7
116:16 132:23
137:23 140:17,17
141:19,19 150:12
150:17 156:12
157:12,17 158:13
159:10 161:19
176:3 179:9 186:16
194:21 203:8

207:17 214:20
223:24 224:3
225:21 237:25
238:5 241:14 243:3
243:18 247:11
249:21,23
**times**
77:9 107:25 115:20
**timing**
122:10
**Title**
31:7 34:13,16 43:13
43:16 145:16 153:2
153:22 158:7,11
228:7 234:12
**today**
3:16 10:12 26:7
28:10,24 44:5 49:4
75:2 84:3 106:22
120:22 125:10
180:5 188:8 195:3
202:10 222:9
**told**
181:6
**tomorrow**
212:12 216:4,6
217:18 224:11
**top**
14:19 15:2 36:4
48:15 54:2 107:12
120:12 151:2 168:2
170:25 184:2
191:13
**topic**
47:12 154:6 165:14
239:14
**topics**
160:5
**tort**
39:8
**total**
88:23
**touch**
243:4
**touches**
245:3

**track**
221:8
**tracking**
87:23,24
**trading**
46:8 148:12
**transactional**
122:7
**transactions**
26:4 117:24 180:11
198:23
**transcribed**
23:16
**transcript**
20:24 92:9 206:22,25
251:4 253:8
**transfer**
100:21 101:6 153:25
**transferred**
171:23
**transfers**
198:25
**transmitted**
171:16
**transnational**
34:20 39:5 162:17
**travel**
89:22
**traversed**
143:11
**Treasury**
63:25 163:12 164:5
**treat**
42:14
**treating**
177:14
**tried**
17:6 122:5 125:21
229:21
**trouble**
140:22,24
**truancy**
128:6
**true**
50:10 51:2,5 52:9
118:23 163:25

253:2
**trust**
95:18 170:15 171:23
174:13 175:10
176:7
**try**
7:18,21,25 8:21
28:20 39:25 47:17
47:19 91:24 92:24
108:4 116:16
122:15 128:21
129:14
**trying**
8:24 12:2 15:8 25:3
45:20 79:7 82:11
93:15 103:6 119:12
176:6 212:20
**turn**
40:2,9 50:3,22 51:12
51:17 53:25 69:19
97:24 121:12
150:22 163:2 164:3
165:14 167:22
168:2 183:6 195:15
195:19 196:20
198:11 207:9
210:22 213:23
214:13 230:6,9
235:16,18 239:13
**turned**
101:25
**turning**
71:17 163:7 171:3
**two**
5:19 6:13 24:5 26:5
29:12 30:18 34:17
35:13,24,24 38:18
77:25 107:25
119:18 164:7
166:16 180:11
181:13 204:17
206:5 210:20
233:19 242:25
**type**
178:16 219:23 221:4
**types**



26-10769-mg    Doc 49-17    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 17 - Transcript of May 13    2026 Deposition of P. Pretlove    Pg 296 of 300

Page  39

89:17
**typical**
44:8
**typically**
31:16 32:18 62:15
81:23 105:24
192:19 241:9
**T-A-B-A-C-A-L-E...**
23:18

---

**U**

**U**
5:11 109:4
**Uh-huh**
186:8 192:7 196:25
**ultimately**
23:23 32:7 78:15
114:21 115:4 129:8
129:8 238:21
**unable**
26:19 28:21 151:23
153:3
**unclear**
7:24
**uncover**
183:2
**undefined**
209:8
**underlying**
123:23 125:25 126:8
126:17,19 127:9,12
130:13 205:21
237:19
**understand**
7:2 10:6 12:5 36:22
68:13 86:5 93:15
94:14 103:6 117:6
160:20 161:3
172:14 176:6 185:6
185:19 193:18
201:9 212:11
215:12 217:4
220:16 224:21
232:4,6 234:15
235:4 238:10
245:15

**understanding**
9:21 12:21 13:19,22
14:11,12 24:21
26:25 36:17 37:25
38:7 43:2 46:16
53:3 60:4 64:9
66:16 67:12 71:21
71:23 80:12 96:10
96:20 101:6 104:5
106:5,14 111:16,18
113:2 119:7 128:2
131:20 136:25
145:7 146:11,22
153:6 161:9,10,25
162:11 165:4,7
174:16 176:13
178:25 179:18
183:4 185:13
188:13,15 191:16
191:24 192:11,15
192:16 199:5 203:4
206:4 216:5,12
217:25 225:24
226:16 229:14
230:24 232:18
240:15 242:7 249:8
**Understood**
175:20
**undertaken**
97:12
**underway**
32:10
**unfortunately**
152:6
**unhelpful**
124:16 217:20
**Uni**
22:19
**United**
1:2 9:7,8 11:11,20
14:17 18:9,21 22:6
22:12 25:5,11 37:17
37:22 38:4,15 41:18
63:24 64:2,21 96:4
97:2,4 122:8 124:5
125:16 130:5

139:16,21 154:22
165:6,9 166:7 168:7
169:8,10,18,25
178:11 182:12
187:14 205:24
**unsealed**
63:16
**update**
137:25
**updating**
138:7
**upfront**
110:20
**uphold**
221:23
**urgent**
45:2 46:14 196:7
**use**
158:9 198:18
**utilities**
31:10 34:14 43:12
**U.K**
22:2 135:7,8 142:24
143:5,6,7,9 145:14
152:19 171:16
**U.S**
9:16,22 10:3,4,23
12:5 13:4,7 14:22
14:23 15:4,4 16:17
16:20,21 17:17 18:2
19:7,19,24 20:8,8
21:16,18 22:15,24
23:2,4,7,19,21,24
24:3,7,9,11,15,16
24:24 25:8,13,17,19
25:20 26:13 36:17
48:19 80:7 96:16
97:10,15,16 98:6,13
122:9 133:4 135:6
136:16 139:6 140:7
142:4 145:14 146:9
146:12,13,20,21
149:2,5 152:18,18
163:12 164:5
171:17 179:11
180:8 181:24

187:24 188:18
204:11 205:12
235:2 243:25
**U.S.A**
23:11

---

**V**

**V**
5:11 109:4
**valuable**
131:11
**valuation**
220:18
**value**
12:9,22 32:6 45:4
46:15 73:8 88:23
89:16 126:18
127:18 128:3,4,6
130:12 189:22
222:20 223:12
229:2,4
**variation**
211:14
**varieties**
111:4
**various**
26:2 36:15 37:5
69:17 86:21 89:22
102:20 103:25
129:7,10 132:9
143:22 144:13
227:7 228:15
**vehicle**
12:20 13:16
**vehicles**
15:9
**Venture**
164:12
**Ventures**
2:10 4:20 159:24
160:17
**venue**
95:14
**Verification**
51:20
**verified**



26-10769-mg    Doc 49-17    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 17 - Transcript of May 13    2026 Deposition of P. Pretlove    Pg 297 of 300

Page  40

18:5 39:14,16 48:21
51:11 52:7 63:7
95:13 98:16 107:4
117:8 118:14
146:24 147:7
250:13
**verify**
167:20 226:13
**versus**
124:21,24 125:2
169:11,18 227:21
**vest**
197:14 198:8
**vested**
198:3
**victimized**
35:14
**victims**
33:24 34:18 38:13,20
38:23 39:2,3,7
79:20
**videographer**
2:20 3:10,21 47:22
47:25 108:13 109:7
150:12,17 223:24
224:3 249:21
**videotape**
3:12
**Videotaped**
1:9
**view**
32:6 33:22 75:14
83:24 128:2 154:3
177:20,22 189:20
203:21 204:3,22
205:20 209:20,25
211:16 212:14
223:9
**views**
157:2,8
**violate**
109:19 110:3
**violating**
82:9
**Virgin**
4:12 8:9 27:16 54:23

79:18
**virtually**
57:10
**Vistra**
15:21,25 189:4,22,23
190:4,19 192:12
204:4
**vote**
156:21

---
**W**
---

**waiting**
154:4
**waiving**
6:7 17:24 40:19
98:11 168:21
**Walkers**
10:22 58:2 70:21
90:12 91:10,16 95:3
104:13 204:6
**want**
20:22 38:21 41:13
84:14 93:13 94:13
109:9,23 155:6
156:25 159:5
165:14,20 178:21
184:8 185:3,19
212:9 217:20
220:16 223:19
224:12 229:12
232:4,5 234:15
237:12 239:13
243:12 245:15
**wanted**
25:14 109:25
**wasn't**
56:16 65:4,5 68:11
85:5 98:8 141:6,7
155:20 178:16
212:13 231:24
232:2 240:23
241:25
**wasting**
116:16
**waterfall**
227:25

**Watson**
59:18 62:3,5 199:22
**way**
33:16 83:5 131:16,18
132:2 134:9 148:23
176:4 238:2
**ways**
129:7
**websites**
38:25
**Webster**
56:11 58:10 62:7
71:2,3 82:13,23
83:16 239:25
242:19,24 244:21
246:16 247:3
**week**
133:3
**weeks**
35:20 81:22 233:21
**welcome**
208:12 236:12
**went**
83:2 228:19 234:5,8
234:17 240:22
**weren't**
29:6 56:8 128:25
241:2 248:15
**We'll**
84:21
**we're**
39:17 108:6
**we've**
7:9 25:2 26:11 33:2
47:7 48:16 70:12
89:23 90:2 92:17
103:17 108:10
130:8 132:8 143:14
147:20 148:2,11
149:19 150:21
159:9,16 167:12
191:17 223:18
**whilst**
153:9 237:18
**wider**
127:7

**wind**
30:2
**winding**
29:15
**winding-up**
226:24 227:3
**windup**
238:7
**wire**
100:21 101:6
**withdraw**
11:8 30:18 97:22
115:17 133:16
**withdrawn**
16:18 105:11 107:24
110:16 125:10
**witness**
5:12 13:9 49:11
245:12 247:9 253:2
253:2
**witnessed**
53:24
**wondering**
177:2 212:15 243:17
**word**
74:2 151:8 232:8
**words**
168:17 172:9 196:4
232:5
**work**
8:21 103:7 110:3,4
161:25 174:20
176:10 205:13
**worked**
87:13
**working**
88:16 174:7
**works**
32:19 65:19
**world**
21:7 36:16 92:25
149:10 165:12
207:22
**wouldn't**
21:17 33:9 41:10
74:9,24 75:9 158:20


MAGNA
LEGAL SERVICES

26-10769-mg   Doc 49-17   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 17 - Transcript of May 13   2026 Deposition of P. Pretlove   Pg 298 of 300

Page  41

162:8 173:9,11
181:7 194:12
216:13
**wound**
238:2
**wrap**
25:3
**writing**
60:19
**written**
54:13 196:5
**wrong**
121:15 165:19
183:23 216:22
239:21
**wrote**
15:25 163:19 232:6
**www.MagnaLS.com**
1:16

---
X
---

**x**
1:4,7

---
Y
---

**Yards**
1:11 2:5 3:19
**yeah**
29:4 30:15 33:21
46:19 47:10,20
50:21 56:20 58:7
61:11,25 64:9 67:9
68:12,16 72:8 73:10
76:7,19 77:8 78:8
84:23 88:9 89:11
90:23 91:9 95:22
106:8,10 118:16
123:11 136:4
139:11 143:4
144:12 152:3 156:9
157:14,20 158:25
161:23 167:9,10,13
168:23 170:10
171:6,14,20 173:6
185:11 196:18,21
200:18 208:19

219:10 223:2,14
227:23 228:9
232:12 233:17
234:14 238:9 240:7
240:14 243:2
244:14,16 247:5,16
249:8
**year**
15:13
**years**
35:4,5 55:7,11,11
83:18 128:20
143:21
**yesterday**
40:20 153:6 228:19
**York**
1:3,11,11,13 2:6,6,11
2:11,17,17 3:19,19
18:12 37:23 38:5
62:20,25 63:19 64:7
95:15,19,19 136:9
138:6 144:25 188:5
206:10

---
Z
---

**zero**
192:8,13 195:5,6
197:21
**Zhi**
34:3 36:12,18,24
37:21 38:3,11,15
136:7 137:3,12
138:20 146:18
162:12,20 169:18
198:16 204:8
205:22 235:12,13
244:9
**Zoom**
2:8,13,21

---
$
---

**$1,000**
88:7
**$25,000**
10:7,24 95:12,17
96:12 97:5,17

103:15 111:12
114:10,15 169:3

---
1
---

**1**
3:2,12 5:21 21:14
31:8 67:22 68:9
71:18 153:3 167:23
183:11 184:16
250:13
**1/30th**
103:15
**1:32**
109:3,7
**10**
55:11 98:5 206:25
213:24 214:22
215:5 251:4 252:6
253:8
**10:05**
1:12 3:17
**100**
85:21 86:16 90:10
103:19 114:18,23
175:2
**10004**
2:17
**10022**
2:11
**109(a)**
96:6
**11**
31:8 68:9 147:9
153:3 210:4,5 215:6
235:16 250:10
251:4
**11:01**
47:23
**11:15**
48:2
**111**
222:13
**12**
70:14 163:8 164:4,19
252:11 254:11
**12th**

66:6,8
**12:35**
108:14
**121,000**
204:12
**125**
2:16
**127,000**
63:21
**127,231**
169:11
**13**
1:11 3:16 35:5 55:7
83:17 252:11 253:4
**14**
63:16 230:9 250:13
**1410**
88:3,11
**15**
6:2 10:15 17:10
25:25 48:22 52:18
66:12 96:6 106:11
119:25 130:14
148:16 154:21
180:6,23 181:24
188:10 189:2
195:10,19 248:4
250:13
**150**
250:13
**159**
250:3
**16**
18:5 95:20 96:14
97:6 98:4,16 250:13
**16th**
72:25 135:19,24
**166**
250:13
**17**
18:5 40:10 96:3,14
96:25 98:16 250:13
**17th**
72:25 135:20,24
**170**
196:3



26-10769-mg    Doc 49-17    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 17 -
Transcript of May 13    2026 Deposition of P. Pretlove    Pg 299 of 300

Page  42

**170(2)**
 78:5
**171**
 222:13
**18**
 250:13
**19**
 21:13 250:13
**190**
 250:13

**2**

**2**
 3:5 48:18,18 49:25
   52:17 66:3 68:10
   73:18 107:9 120:5,6
   144:9,10 147:4
   168:14 211:2,22
   214:6,9,16 215:9,16
   216:2,8 217:2,11
   222:10,11,17 248:4
   250:13
**2:32**
 150:13
**2:48**
 150:17
**20**
 51:17 55:11 86:8,24
   87:15 120:6,13
   163:13 164:6
   191:21 207:9
   223:21 250:13
**2003**
 215:10
**2012**
 55:13
**2023**
 25:21 180:9 188:14
   188:16
**2024**
 21:8
**2025**
 23:14 63:16 127:13
   128:16 129:21
   191:21 192:2,13
   244:12 246:11,21

 246:22
**2026**
 1:12 3:16 30:22 50:6
   54:8 63:9 70:14
   100:5 120:15
   163:22 170:20,24
   171:10 244:13
   246:12,22 253:4
   254:8
**206**
 251:4
**21**
 250:13
**210**
 251:4
**22**
 50:19 117:9 206:9
   250:13
**23**
 121:12,17 250:13
**24**
 250:13
**247**
 250:3
**25**
 4:5 5:24 26:14
   112:24 146:6 152:6
**259**
 214:14
**26**
 35:4 166:12
**27**
 121:13 181:14
**28**
 164:20
**284**
 151:5

**3**

**3**
 3:7 48:18,20 50:3,14
   63:14 73:19 107:10
   121:22 133:7,19
   144:8 154:12,12,13
   163:3 195:15 211:2
   211:22 214:4 215:7

 215:13 216:10
 217:8,9,19 222:11
 230:7 250:13,13,13
 250:13 251:2 253:2
**30**
 7:13,20 8:22 9:2
   15:18 16:3 19:5,25
   30:20 32:14 34:21
   42:11 66:11 74:20
   75:9 85:14 102:20
   102:25 103:3,4
   104:9 106:6,8
   112:24 113:4 152:7
   156:10 160:13
   161:7,11,12 172:25
   190:5 197:7,7 199:8
   200:14 202:5
   208:24 209:8 232:3
   233:24 234:4 238:5
**300**
 21:8 22:8
**31**
 54:2 100:4 120:13
**32**
 151:5
**39**
 230:11 250:13,13

**4**

**4**
 39:11,14,17 48:18,21
   51:11 63:6,23 69:20
   107:11,19 120:7
   121:8 144:10 147:5
   147:6,9 163:7 171:5
   210:22 250:3,13
**4:19**
 223:25
**4:36**
 224:4
**40**
 195:23
**42**
 196:20
**43**
 198:11

**450**
 210:14,22
**48**
 142:12,22 143:17

**5**

**5**
 39:13,18,21 40:3
   54:8 63:9 66:3
   87:19 97:25 121:8,9
   121:19 167:24
   250:3,3,13 251:4
   253:4
**5th**
 54:12,14
**5:10**
 249:22,23
**500,000**
 23:11 24:9,23
**55**
 1:11 2:5 3:18

**6**

**6**
 53:25 54:2 55:20
   63:8 99:11,12,19
   168:2 171:19,21
   178:8 183:10 184:2
   184:10 250:3,13
   251:4 253:4
**624-6221**
 1:16
**67**
 121:13
**68**
 121:13 122:23
**69**
 121:13

**7**

**7**
 150:15,22 170:20,24
   171:3,10,19 183:25
   184:2 211:11,12
   213:23 214:13
   250:3,13 252:6



26-10769-mg    Doc 49-17    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 17 -
Transcript of May 13    2026 Deposition of P. Pretlove    Pg 300 of 300

Page  43

**75**
 87:18

**8**

**8**
 48:6 50:6,23 52:2
   73:18 120:15 137:7
   151:7 163:22
   166:15,17 247:22
   248:7,17,23 249:3
   250:13 251:7 252:6
**8(c)**
 151:22
**8(1)(c)(ii)**
 154:3
**8(1)(c)(2)**
 151:22
**8,000**
 16:4 189:7
**80**
 85:20 86:9,15 87:6
   87:14 90:9,14
   103:18 114:17
**800**
 2:11
**866**
 1:16

**9**

**9**
 154:13 190:8,9
   207:11 235:19
   250:8,13 252:6
   253:8 254:8
**9th**
 8:24 33:15 54:12,16
   55:16 61:19 66:4,7
   114:25 134:14
**99**
 250:13

