# EXHIBIT 34

# Transcript of May 14, 2026 Deposition of Andrew Barrington Chissick

Page 1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - x

In Re:

PRINCE GLOBAL HOLDING LIMITED, et al.,

        Debtors in Foreign Proceedings.

---------------------------------------------x


        Videotaped Deposition of ANDREW BARRINGTON CHISSICK, taken pursuant to notice, was held at the law offices of Boies Schiller Flexner LLP, 55 Hudson Yards, New York, New York, commencing May 14, 2026 at 9:43 a.m., on the above date, before Leslie Fagin, a Court Reporter and Notary Public in the State of New York.


                - - -


        MAGNA LEGAL SERVICES - (866) 624-6221
                www.MagnaLS.com



APPEARANCES:


BOIES SCHILLER FLEXNER, LLP
Attorneys for Alleged Objecting Debtors
          55 Hudson Yards
          New York, New York
BY:       LAURA FEMINO, ESQUIRE
          PETER SKINNER, ESQUIRE
          SOPHIE ROYTBLAT, ESQUIRE


KOBRE & KIM LLP
Attorneys for Amber Hill Ventures Limited and
Lateral Bridge Global Limited
          800 Third Avenue
          New York, New York 10022
BY:       JEREMY BRESSMAN, ESQUIRE
          MARTINE B. FORNERET, ESQUIRE
          NANCY LI, ANALYST
          JOSH BARRY, ESQUIRE(VIA ZOOM)

SULLIVAN & CROMWELL LLP
Attorneys for the Proposed Foreign
Representatives
          125 Broad Street
          New York, New York 10004
BY:       JACOB CROKE, ESQUIRE
          SASKIA DE VRIES, ESQUIRE

ALSO PRESENT:

          Robert Hunkle, Videographer
          Dan Griffin, Campbells
          Riz Mokal (Via Zoom)



THE VIDEOGRAPHER:  Good morning. We are now on the record.

Today's date is May 14, 2026 and the time is 9:43 a.m.  This is the video deposition of Andrew Barrington Chissick, in the matter of Prince Global Holdings Limited, et al.

Will each of the attorneys introduce themselves for the record and we will begin.  Thank you.

MS. FEMINO:  Laura Femino with Boies Schiller for the objecting debtors.  And I have with me Dan Griffin from Campbells, Sophia Roytblat also from Boies Schiller, and Pete Skinner from Boies Schiller.

MR. CROKE:  Jacob Croke and Saskia De Vries, Sullivan Cromwell, here for the joint provisional liquidators and the witness.

MS. FORNERET:  Martine Forneret from Kobre & Kim on behalf of objecting debtors, Amber Hill Ventures and Lateral Bridge Global Limited, joined by Jerry



Page 4

Bressman and Nancy Li.

(Off the record.)

THE VIDEOGRAPHER:  We are back on
the record.  The time is 9:50.

A N D R E W   B A R R I N G T O N
C H I S S I C K, called as a witness, having
been duly sworn by a Notary Public, was
examined and testified as follows:
EXAMINATION BY
MS. FEMINO:

Q.   Hi.

A.   Good morning.

Q.   Would you please state your name
for the record.

A.   Andrew Barrington Chissick.

Q.   I'm Laura Femino, here with Boies
Schiller.  Just a few preliminaries before we
start.

Have you been deposed before?

A.   No.

Q.   The court reporter is transcribing
everything here, so if you will please let me
finish my questions before you answer so she



26-10769-mg   Doc 49-34   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 34 -
Transcript of May 14   2026 Deposition of Andrew Barrington Chissick   Pg 6 of 293

Page 5

can get everything down, and I will do the same with your answers.

Please provide only verbal responses so the court reporter can record them.  If you don't hear part of a question, will you tell me, please?

A.   Thank you.

Q.   If you don't understand a question, will you tell me?

A.   I will thank you.

Q.   So if you don't say otherwise, I will assume you've heard and understood the question.  If you need to take a break, you can tell me.  With one exception, that we will not break between a question and your answer.

A.   Understood.

Q.   You are required to answer all my questions while you are under oath, even if your counsel objects, unless your counsel expressly directs you not to answer.

If you later remember something you want to add to clarify or correct an earlier answer, just let me know, please.



26-10769-mg   Doc 49-34   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 34 -
Transcript of May 14   2026 Deposition of Andrew Barrington Chissick   Pg 7 of 293

Page 6

Do you understand that you are under oath and you have sworn to tell the truth?

A.   I do.

Q.   And is there anything that would prevent you from testifying truthfully and accurately to these questions?

A.   No, there is not.

Q.   Did you prepare for today's deposition?

A.   Yes.

Q.   What did you do to prepare?

A.   I reread my two declarations made in these proceedings.

Q.   When did you do that?

A.   In the last few days.

Q.   Did you speak with anyone to prepare for this deposition?

A.   Yes.

Q.   Who did you speak with?

A.   Obviously in preparation for this, understanding how a declaration might work, I've spoken to Sullivan Cromwell so they can explain the matters you just explained to me



Page 7

now.  Other than that, the preparation was solely my own.

Q.   Have you spoken recently with Paul Pretlove?

A.   In relation to the depositions.

Q.   Have you spoken to him in the last day?

A.   No, I haven't spoken to him since Monday.

Q.   So you've not discussed his deposition with him?

A.   No, I have not spoken to Mr. Pretlove about his deposition.

Q.   There were a number of filings made this week in the BVI proceedings, yes?

A.   That's correct.

Q.   Have you read all of those?

A.   I've read them briefly.  Obviously, I've been in New York so I haven't reviewed them as closely as I would have done, if I had been still in the U.K.

Q.   You are an attorney admitted in the BVI?

A.   Correct.  I'm a BVI legal



Page 8

representative.

Q.   Is that different than being an admitted attorney?

A.   No, I don't think there is a distinction.  But I just want to make sure that the terminology is correct.

Q.   You are a partner at Walkers?

A.   Correct.

Q.   You are a member of the Walkers insolvency and dispute resolution practice group?

A.   That's correct.

Q.   Are you admitted in other jurisdictions?

A.   I was admitted originally in England and Wales.  My admittance date was 2012.  I am no longer practicing English law.

Q.   Any other?

A.   I am also a registered foreign associate in relation to Bermuda law.

Q.   Any others?

A.   I'm in the process of getting accreditation in relation to Cayman Islands law, following a recent change to the



legislation there which requires me to do so.

Q.    Do you have a focus on insolvency disputes?

A.    Yes.

Q.    You've worked on insolvency matters before?

A.    Correct.

Q.    And cross border insolvencies specifically?

A.    Correct.

Q.    Including cross border matters that involve the U.S.?

A.    That's correct.

Q.    Were those other cross border matters Chapter 15 related?

A.    That is correct.

Q.    How many Chapter 15 matters have you worked on?

A.    From memory and directly, it is at least two.

Q.    Was Sullivan & Cromwell involved in those cases?

A.    No, not to my recollection.

Q.    And what about Interpath?



Page 10

A.    Yes, in relation to one of them.

Q.    You were aligned, opposing?

A.    It is Interpath's prior name, they were the joint liquidators of a BVI company which subsequently put a Dubai company into provisional liquidation and they were seeking recognition in the U.S. in relation to those proceedings.

Q.    And you were supporting or opposing recognition?

A.    We were supporting in relation to that.

MR. CROKE:   Just for the court reporter, just give her an extra second.

Q.    Do you consider yourself an expert in BVI insolvency law?

A.    Yes.  I consider myself especially an expert in relation to.

Q.    Have you previously given expert testimony as an expert in BVI insolvency law?

A.    I have done.

Q.    How many times?

A.    At least twice.

Q.    In Chapter 15?


MAGNA
LEGAL SERVICES

Page 11

A.    No.

Q.    In what type of proceedings?

A.    In proceedings in the U.K.

Q.    Have you ever had your testimony excluded for any reason?

A.    No.

Q.    We will go first to your declaration -- sorry, Sophie, I switched it on you.

Your first declaration.  So this is the Chissick declaration, the first declaration, Exhibit 1.

(Chissick Exhibit 1, Declaration of Andrew Chissick, marked for identification.)

Q.    Is this the declaration that you filed in these Chapter 15 cases?

A.    Yes, it is.

Q.    Turn to paragraph 8, please.

Here it says, The JPLs engaged Walkers to advise on BVI law and to serve as legal counsel in connection with the BVI proceedings.  Is that correct?

A.    That is correct.



26-10769-mg    Doc 49-34    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 34 -
Transcript of May 14    2026 Deposition of Andrew Barrington Chissick    Pg 13 of 293

Page 12

Q.    So who are Walkers' clients in this matter?

A.    Walkers' clients are the joint provisional liquidators; that being Paul Pretlove, David Standish, and James Drury, in their capacity as JPLs or joint provisional liquidators of the various 30 entities that have been placed into provisional liquidation.

Q.    So are your clients -- do you consider you have three clients or is it, like, the group of them is your client?

A.    They are -- they are entitled to instruct us as a unit and individually.

Q.    Do you consider Interpath to be a client?

A.    No, Interpath is not the client.

Q.    Do you have any other clients in connection with this matter?

A.    No.

Q.    So if I understand correctly, you do not consider the debtor companies to be your clients?

A.    There has been no engagement terms



Page 13

in relation to the debtor companies.

Q.    So you do not consider them to be your client?

A.    The JPLs, in terms of their appointment, will, at certain times, have powers vesting in them over the companies, which may then require them to take steps, which would then require us, in their capacity as their legal representatives, to take various steps.

So in the capacity of being the JPLs' lawyers, there may be steps taken in the name of the companies.  But we are still remain the JPLs' lawyers.

Q.    Do the JPLs have the power to cause the company to do something?

A.    Yes.

Q.    What's an example of something they could cause the company to do?

A.    That's going to be dependent upon the terms of the appointment order.  It might be helpful just to refresh my memory, if you have got a copy of one.

Q.    I do.  I wonder if I can withdraw



Page 14

that question and ask generally about how liquidators work in the BVI.

A.   Okay.

Q.   Provisional liquidators can sometimes cause a company to act; is that right?

A.   Provisional liquidators are appointed over the company and they are -- the rights and powers that would typically sit with directors, would be conferred on to the provisional liquidators.

So to the extent that the directors could previously cause the company to take various steps, where those powers have been suspended, they would then vest in the provisional liquidators to do that.

Q.   Could a liquidator, not provisional, a regular liquidator cause the company to commence a lawsuit?

A.   Yes.

Q.   When they do that, are they acting as the liquidators or acting through the company?

A.   Okay.   So there is distinction



Page 15

between legal proceedings.  They can do both. So provisional liquidators and liquidators can cause the company to bring claims in their own name, contractual claims, common law claims, et cetera.

There are separate statutory duties or statutory powers that vest with officeholders, in which claims can be brought in their own names.

Q.   When a liquidator is performing an investigatory function, is it doing that as the liquidator or is it causing the company to do that?

A.   I suppose it depends in the way in which they're conducting that investigation.

So the Insolvency Act vests liquidators with -- provisional liquidators, with certain investigatory powers.  So if they were exercising powers in regard to those, I would say that's in their own capacity.

However, should the company itself have certain rights to ask for documents, take various steps, then, obviously, the



26-10769-mg    Doc 49-34    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 34 -
Transcript of May 14    2026 Deposition of Andrew Barrington Chissick    Pg 17 of 293

Page 16

liquidators can do so in the name of the companies.

Q.    What is an example of an action that a liquidator takes as a liquidator, as opposed to through the company?

A.    For instance, requesting a party provides a statement of affairs, for instance.

Q.    So a liquidator, acting as a liquidator, is sometimes going through the company, but sometimes just acting in their own name as a liquidator.  Is that fair?

A.    That's correct.  The Insolvency Act provides expressly that a liquidator acts as agent of the company, and at the same time, a liquidator is an officer of the court.

So it's not unusual for them to have multiple hats, if I can put it to you that way, in terms of exercising powers.

Q.    If they're inspecting the companies' books and records, what hat are they wearing?

A.    I suppose it depends upon the context in relation to that.


MAGNA
LEGAL SERVICES

Page 17

Q.    There is a context where the company could be inspecting its own books and records?

A.    Absolutely.

MS. FEMINO:  I would like to go to the application filed by Walkers in the BVI court on May 4, 2026.

(Chissick Exhibit 2, Walkers Application, marked for identification.)

Q.    Do you recognize this document?

A.    I do.

Q.    And what is it?

A.    It's the ordinary application filed in the existing insolvency proceedings in the BVI court, under which the provisional liquidators have been appointed.

It's dated 4 May 2026.  And it's an application which the JPLs filed, seeking the direction of the BVI court in relation to certain issues relating to the appointment order.

Specifically, it deals with the power of the debtor companies to -- the directors of the debtor companies to take



Page 18

steps in the name of those companies, in relation to the Chapter 15 proceedings.

Q.    You just referenced the directors of the debtor companies.  So those directors still exist as directors?

A.    The appointment of provisional liquidators does not change who is named on the register of directors.  It does change their powers.

So the fact that their label does not change -- their formal title -- does not in itself mean that the powers that otherwise sat with them prior to the appointment of the officeholders, remains in place.

Q.    Understood.

But they are still directors, even if with limited powers?

A.    They are still on the register as directors and they would still be directors of the company.

Q.    And this application was filed by Walkers, correct?

A.    That is correct.

Q.    And I see here on the second page,



the applicant box references the JPLs,

correct?

A.    That is correct.

Q.    So did the JPLs file this as the

JPLs on behalf of the companies or did they

cause the companies to file this application?

A.    This is an application made by the

JPLs, and it actually sets out in the

application, I believe, the basis upon which

it's made.

So if you look at the -- the bit

below the first box, talks about provisional

liquidators, it's applying pursuant to

paragraph 3(l) of the appointment orders,

Section 171 of the Insolvency Act, and 1865

of the Insolvency Act.

So that was relying on the specific

powers vested with the JPLs to seek the

directions of the court in relation to the

orders, and there are also statutory powers

which allow the JPLs to ask the court for

assistance.

Q.    Is that how you know that it was

made by the JPLs and not by the companies as



Page 20

directed by the JPLs?

A.   That's not the reason why I know.
I'm know that I'm instructed by the JPLs.  We
are making this application in the JPLs' name
and on their behalf in relation to powers
that they have under the appointment orders
and where there are disputes between the
parties as to that.

MS. FEMINO:  I'd like to go next to
the May 7 application in BVI filed by
the companies.

(Chissick Exhibit 3, Amended
Campbells Application, marked for
identification.)

MR. CROKE:  When you say "the
companies," you mean the 25?

MS. FEMINO:  Yes.  Thank you.

Q.   Do you recognize this document?

A.   I do.

Q.   What is it?

A.   It is the ordinary application --
sorry -- ordinary amended application notice,
which looks to have been filed by Campbells
in the existing insolvency proceedings, in



Page 21

which they are amending their initial

application dated 1 May, to include

additional relief which seeks the variation

of the appointment orders, essentially saying

that if the JPLs' construction of the

appointment order and its meaning is

supported by the court, that they,

nevertheless, seek a change to the

appointment order.

Meaning that the directors of the

relevant 24 companies have the ability to

procure the companies' involvement in the

Chapter 15 proceedings in the U.S.

Q.    And what party or parties filed
this application?

A.    The applicant's name is the company
Bright Team Global Limited.

Q.    As I understand it, there are a
total of 25 essentially identical
applications, one for each of the objecting
debtors.  Is that fair?

A.    I haven't seen them, but I
understand that's probably the case.

Q.    So the -- this application was



Page 22

filed by the company, Bright Team Global Limited.  It was not filed by a director of Bright Team Global Limited?

A.   I suppose it's two things.  No. 1, this is how Campbells have obviously decided to articulate their application.  So how they chose to name it, is up to them.

Secondly, under the terms of the appointment order, there was express powers for companies to make applications in relation to the terms of the order.

So my expectation is that that may have been a reason why they did it in this particular way.  But in terms of who is actually procuring the bringing of this application, obviously I don't have insight into who Campbells is taking instruction from.  But it would follow it would be those with powers -- or it would be the directors of the company.

Q.   You don't contest the ability of the companies to file this application, correct?

A.   The appointment order says very



Page 23

clearly that the companies can seek variation

in relation to the appointment orders.  So

from that perspective, I don't see there

being -- it's not something that I ever

thought about or have concern with.

Q.    You said it's not something you

ever thought about.  I believe there is a --

MS. FEMINO:  Let's go to your

second declaration.

(Chissick Exhibit 4, Supplemental

Declaration of Andrew Chissick, marked

for identification.)

Q.    Paragraph 13, please.

First, do you recognize this --

A.    Yes.

Q.    -- this declaration?

This is the second declaration you

filed in the Chapter 15 proceedings, yes?

A.    It's my supplemental declaration,

yes.

Q.    If you will turn, please, to

paragraph 13.

The residuary powers include the

power to contest the originating application



MAGNA

LEGAL SERVICES

Page 24

and to seek discharge of variation of the BVI
orders.

Is this application we were just
looking at in BVI, an example of seeking
variation of the BVI orders?

A.    It is in its amended form.  When I
say it's not something I thought about, I
meant actually in the context of not seeing
the 7 of May -- it's not a point I've been
focusing on in the context of the upcoming
hearing.

Q.    Fair enough.

But you do concede that the
companies retain the ability to file an
application like that in the BVI?

A.    The appointment order makes it
clear that such powers sit with the
companies.

Q.    Do you contest the ability of
Campbells to represent the companies in that
application?

A.    I don't think I -- the position is
complicated.  As you would have noted from
our application notice, there are outstanding



Page 25

questions as to the circumstances around Mr. Borelli's (phonetic) purported appointment. There have been number of inquires made by the JPLs in relation to that, which have not been answered satisfactorily, in my view.

Accordingly, there is a veil of uncertainty as to the basis upon which Campbells are appointed. It would be impossible for me to come to any kind of firm conclusion, absent further information being provided.

So I can't say -- I can't say I have no issue in relation to it. It's simply I have to reserve my position in that particular element.

Q. If Mr. Borelli's appointment were known to be valid, would you then contest the ability of the companies to retain a law firm?

A. No.

Q. I would like to return to talking about Walkers' engagement in this matter.

When was Walkers engaged by the



Page 26

JPLs?

    A.   Following their appointment.

    Q.   Ballpark, how much time?

    A.   Shortly following their appointment.

    Q.   Is your engagement governed by -- what is your engagement governed by in documents?

    A.   I'm not sure if I would be in a position to talk about precise terms of our engagement.  My working assumption is that such matters would orderly be privileged.  So I need to be -- I want to be careful in terms of information in which I provide to make sure that I'm not waiving any privilege in relation to these points.

    Q.   Are you referencing a U.S. privilege or BVI law?

    A.   I'm a BVI lawyer.  So I will be talking about BVI law only.

    Q.   So under BVI law whether or not you have an engagement letter, could be a privilege question?

    A.   I simply haven't thought about it.



Page 27

I don't know the parameters under which privilege would arise.  There is a terms of engagement which have been signed, which is obviously ordinary practice.

Q.   Have you ever seen a U.S. engagement letter?  A U.S. firm?

A.   I can't recall.

Q.   I was just curious if it's similar when you talk about terms of engagement in the BVI.

When you said there is a terms of engagement, you mean something written as between Walkers and the JPLs?

A.   Correct.

Q.   When was that executed, roughly?

A.   It would have been after their appointment.  So a day or so after they were appointed.

Q.   Have you modified it since then?

A.   Again, I think that's moving into the privilege side of things.  So I am not in a position to respond to that.

Q.   What are the payment terms of Walkers' engagement?



Page 28

A.   I would put that in the privilege limits.

Q.   Have you been paid anything under that engagement?

A.   No.

Q.   So you haven't accrued WIP, work in progress?

A.   We've been working on the matter since 9 January.  Obviously, we've been conducting work, so we have accrued fees in relation to it.  Ultimately, payment of any fees would be subject to approval of the BVI court in the ordinary way.

Q.   And roughly, how much is that accrued work in progress?

A.   I don't have the figures available to me.

Q.   Do you have a retainer?

A.   No.

Q.   Is there a concept of a retainer in BVI law?

A.   There is a concept of retainer in BVI law.  There is no retainer in relation to this engagement with the JPLs.



Page 29

Q.   Does Walkers often take engagements with no retainer?

A.   It depends on the circumstances. It's a case-by-case basis.

Q.   What's the reason for not taking a retainer here?

A.   It's just a commercial decision.

Q.   Under BVI law, when a law firm takes a retainer, is it considered property of the law firm?

A.   I don't know.  I could speculate, it's probably not helpful for purposes of this.

Q.   No need, thank you.

Can you describe the scope of Walkers' engagement on this case?

A.   We are BVI counsel to the joint provisional liquidators.

Q.   Does that scope include what you are doing here as a declarant?

A.   Yeah.

Q.   Do you distinguish between your capacity as counsel to the JPLs and your capacity as a law declarant in this Chapter



Page 30

15?

A.    My role here, obviously, I act for the JPLs.  But my fundamental role, as a BVI practitioner, is as an officer of the court.

So where there are issues of BVI law, which will help the BVI court or the U.S. court, I find it incumbent upon me if I have a view in relation to these legal elements, to express my honestly-held view, which is what I've done in both my declarations.

Q.    Are you an officer of the court because you are a BVI lawyer or because you are counsel to the JPLs?

A.    As a BVI lawyer, I'm an officer of the court.

Q.    So all BVI lawyers are officers of the court?

A.    Assuming they are still on the roll.  Again, I don't know the actual decision of it, I know I'm an officer of the court.

Q.    Under BVI law, do you have a duty to advocate for your client?



A.   We have a duty, a fiduciary duty to act in the best interest of our client, but the number one priority, duty is to the court.  So if there was a conflict between my duty to the court and my duty to the client, my duty to the court overrides that, absolutely.

Q.   When we get to an ambiguous point of law, qualified lawyers on both sides arguing different things, how can both of them be representing the truth to the court, while advocating for their clients and reaching different positions?

A.   All I can do as a BVI lawyer is put my honestly-held view forward.  And that is what I've done in the declaration in relation to all the matters that were referred to in my evidence.

Q.   What about when you are submitting briefs to the BVI court?

A.   I don't understand.

Q.   When you submit a skeleton -- when you submit an argument in writing to the BVI court, are you arguing your objective view or



Page 32

are you advocating for your client?

A.   When you are doing a piece of advocacy in relation to a legal argument, obviously, you would be arguing for your client.  But fundamentally, you have a duty not to mislead the court.

So in those circumstances, obviously, I need to be -- make sure that -- the argument I'm putting forward to the court has to be something which is -- cannot be misleading.

Q.   Understood.  That's similar to what we have in the U.S.

The kinds of cases that we work on, the past cases you've worked on, these are cases with complicated issues, where you have legal briefs submitted, reaching very different conclusions.  I understand that to happen because lawyers are advocating for their clients within the bounds of candor to the court.

Is that consistent with your understanding of advocacy?

A.   Can you clarify that question



MAGNA
LEGAL SERVICES

Page 33

slightly?

Q.    I'm trying to understand the difference between a declaration and a legal brief arguing something for your clients.

Do you see a difference between those two?

A.    They are different documents.  The declaration is my evidence, that is my honestly-held view and I believe it is correct.

Q.    Is that different from a legal argument you make for a client, for example, in the BVI?

A.    I don't understand the question.  I think we are talking about hypotheticals.  My evidence is absolutely what I believe to be correct.

Q.    Your declaration discusses points of BVI law which are currently being litigated in the BVI; is that right?

A.    They are being litigated following the filing of my declaration.

Q.    Sorry.  You filed a declaration in the BVI?



A.    Sorry.  I filed declarations in the Chapter 15 proceedings, following which -- where we set out the position as BVI law, as I understand it to be and believe it to be. That, obviously, there subsequently was a dispute with that between your clients and the Kobre & Kim clients, which has led to subsequently three applications being issued in the BVI court in the insolvency proceedings.  One from your client, subsequently amended, one from the Kobre & Kim clients, and one from the JPLs.

Q.    And one of the issues being litigated there is the question of residuary powers, correct?

A.    The issue of residuary powers is the question.  Because in the Chapter 15 proceedings before Judge Glenn a few weeks ago, given the dispute as between the parties as to the standing issue, it needed to be -- or needs to be resolved by the BVI court.

Q.    Sure.  That's fine.

I'm just wanting to understand the question of what residuary powers remain to



Page 35

directors under BVI law.  That is being

litigated in BVI court, I think right now

while we are here, yes?

        A.    The BVI court is giving directions

as to the meaning of the appointment order,

specifically, in relation to the power of the

directors to procure the debtor companies to

intervene in the Chapter 15 proceedings.

        Q.    Yes.  That question is being --

maybe the problem is the word litigated.

              It's being -- it's in dispute

between the parties in BVI court presently?

        A.    It's been brought for determination

by the BVI judge.

        Q.    And Walkers has submitted a brief

on those issues in that -- I'm sorry, what do

you call it?

        A.    Submissions or a skeleton.  Yes,

all the parties have filed written

submissions in those proceedings for the

hearing which is going on, as you say, right

now.

        Q.    And in that written submission,

does it contain your objective neutral view



of the issue or does it contain advocacy for your client?

A.   Okay.  I was not involved in relation to the drafting of those submissions.  So in terms of -- I have read those submissions and I agree with every single thing in there in terms of it being the correct position as a matter of law.

Q.   Generally, when Walkers files a written submission in BVI court on a legal point of dispute, is it stating its objective and neutral view or is it advocating for its clients?

A.   Where any lawyer is putting legal submission forward, they will, number one, be doing so in accordance with their duty to the court, which is to have candor and make sure that they are accurately reflecting the position of law.

At the same time, obviously be advocating for what we believe to be the most appropriate outcome.

Q.   Are you doing those two things in your declarations in the Chapter 15?



A.    My declaration absolutely reflects my understanding and belief as a matter of BVI law in relation to the meaning and operation of the appointment orders.

Q.    So you don't feel that you are advocating for your client through the declaration?

A.    I am stating to assist the U.S. court, my understanding and belief in relation to matters of BVI law.

Q.    So is there a difference between how you approach the drafting of this declaration and how you would approach the drafting of a written submission in BVI?

A.    I'm not sure if I follow the question.  What are you trying to ask?

Q.    Is there a difference between advocacy in a written submission subject to candor duties and a declaration purporting to be neutral?

A.    In relation to stating in very broad terms the positions as a matter of law, and then obviously, that's a declaration.

Submissions will inevitably involve



Page 38

some elements of advocacy or highlighting various issues for the court's attention. But it's different, I think, in terms of the formats of the documents.

But fundamentally, to the extent it's being argued that the declarations go beyond giving my clear view understanding of the BVI law, absolutely, this is my absolute view and understanding of the effective BVI law.

Q. So even if there were a point of BVI law adverse to your clients and the person advocating could reasonably argue the other way, you would state your neutral opinion in this declaration.

You are not advocating -- sorry, let me clean that question up. Let me withdraw that.

I think I can move on.

What is your understanding of your duties to the Chapter 15 court as a declarant?

A. I assume I have to be absolute honest and have candor in the same way. It's



Page 39

not something -- I'm obviously not a U.S. lawyer. I've been working on the basis that in terms of my duties as a witness to the U.S. court, I would have exactly the same duties I would do to the BVI court.

Q. If we identify an error in your declaration, do you consider that you have a duty to correct that?

A. Yes. If there was an error which was -- I identified or it was identified to me, I feel I would need to correct that.

Q. You mentioned earlier that Walkers has outstanding fees that have not yet been paid on this case.

If the JPLs prevail in the hearing today in the BVI, does that change your likelihood of getting paid?

A. It's not something I thought about, but I don't think that is likely to be a material factor.

Q. If the JPLs are discharged, does that change your likelihood of getting paid?

A. As a matter of -- let's be clear. The application today has got nothing to do



Page 40

with the potential discharge of the JPLs.  If
you are asking if the JPLs get discharged,
does that have impact on our recoverability
of costs?  As a matter of BVI law, no.

Q.   What happens to your claim if --
your claim for payment, if the JPLs are
discharged?

A.   The JPLs are entitled to recover
their fees from company estates.

Q.   So Walkers would have a claim
against the companies that have been restored
as regular companies?

A.   I mean, the term, obviously, is
probably slightly wrong.  But fundamentally,
the JPLs, as per the terms of their
appointment, are entitled to draw down their
fees from the companies.  That is subject at
all times to court supervision.

Whether or not the JPLs are in situ
as of the date of that drawdown, they still
have a right to drawdown against those
companies' assets.

Q.   Do you know of any assets in the
BVI?



26-10769-mg   Doc 49-34   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 34 -
Transcript of May 14   2026 Deposition of Andrew Barrington Chissick   Pg 42 of 293

Page 41

MR. CROKE:  Objection to form.

MS. FEMINO:  Sorry.  It was meant to say, do you know of any assets in the BVI?  Maybe it got lost.

MR. CROKE:  Same objection.

A.   Yeah.

Q.   What are those assets?

A.   Their shares in other BVI companies.

Q.   Is there any prospect for recovering from tangible BVI assets?

MR. CROKE:  Objection.

Do you mean from assets of these companies?

Q.   My question is, how is Walkers going to recover on its claim?

I understand you will have the claim anyway.  If the JPLs are discharged, you have the claim, understood.  But how will be recover on that, after the JPLs are discharged?

A.   I'm not sure if I fully understand the question.  I don't really want to speculate on what steps would happen in those



MAGNA
LEGAL SERVICES

Page 42

circumstances.  Fundamentally, there would be a liability -- subject to the court's approval in relation to fees, there would be a liability of the company that would need to be met.  The process by which that liability might be enforced to be recovered, that's a question for another day.

Q.    And you don't think it would be easier to recover your fees if the JPLs remained authorized, if they became full liquidators, for example?

A.    I don't know if there is a distinction between in terms of ease of recovery between a JPL or a full liquidator.

I think fundamentally, I would like to work on the basis that where liabilities are generated, that they will be able to draw down in relation to.

Q.    So you don't think Walkers has any pecuniary interest in the outcome of any of these pending disputes?

A.    We are working for the JPLs, and, obviously, in terms of being able to meet our fees, we need to get the approval of the BVI


MAGNA
LEGAL SERVICES

Page 43

court in relation to that.  We are in a
commercial relationship with the JPLs.

But beyond that, to the extent that
pecuniary relationship implies something
further, I don't follow.

Q.   As part of Walkers' engagement on
this matter, have you had communications with
the BVI AG?

A.   The appointment order provides or
sets out protocol in relation to
communications with the Attorney General.
And I need to be very mindful of the fact
that that carries with it various
confidentiality restrictions and also issues
of privilege might arise.

So I can confirm that there have
been communications with the AG since our
appointment.  I would be very weary about
going into the details of those
communications.

Q.   Were there any communications
before your appointment?

A.   No.  Well, from Walkers' side, no.

Q.   Does Walkers have -- has Walkers



Page 44

had communications with the BVI AG about

their accrued fees and costs on this case?

    A.    No.

    Q.    What parties know the total amount

of accrued fees and costs on this case?

    A.    I don't know.

    Q.    Do the JPLs know?

    A.    I don't know.

    Q.    You are not sending bills to the

JPLs?

    A.    We are sending invoices, but I

don't know where we are up to in relation to

it and I don't know what the JPLs have

incurred or any other advisors have incurred.

    Q.    Sorry.  I was asking who knows

about how much Walkers has incurred to date.

        Is it just the JPLs that know that?

    A.    I assume so, yeah.

    Q.    The BVI AG wouldn't know that?

    A.    No.

    Q.    As part of Walkers' engagement on

this matter, have you had communications with

U.S. authorities?

    A.    No.



Page 45

Q.    What about authorities in the U.K.?

A.    So I haven't personally.  My regulatory partners, given the very significant sanctions which have been imposed against the companies, there have been communications with the FCDO in the U.K.

Q.    Any other governments -- sorry.

Has Walkers had communications with any other governments in the scope of this engagement?

A.    We have talked to the Cayman and the BVI regulator in relation to sanction issues.  Just for the avoidance of doubt, that is distinct from the Attorney General's office.  Again, though, that's not me personally being involved in that, that's a regulatory work stream.

Q.    I'm going to bring another exhibit.

MS. FEMINO:  I'm sorry to take you backwards a bit, my poorly organized outline.  Just to go back to the point about your neutrality as a declarant.

(Chissick Exhibit 5, Excerpt from BVI Civil Procedure Rules, marked for



Page 46

identification.)

Q.    Will you take your time, please, to look over this exhibit.

What I have is an excerpt from the BVI Civil Procedure Rules.  Are you generally familiar with BVI Civil Procedure?

A.    I am, yes.

Q.    And am I right that these are the rules applicable to experts in the BVI?

A.    So these rules set out the requirements in relation to the giving of formal expert evidence in relation to BVI proceedings.

Q.    Is there any requirement for the expert to be neutral or disinterested?

A.    I would need to refresh my memory in relation to the CPR.

Q.    Take your time for a moment.

A.    Okay.  I refreshed my memory.  Thank you.

Q.    Is there any requirement for a neutrality or disinterest for an expert?

A.    Well, so I can say that part 32.3 refers to the duty of the expert witness to


MAGNA
LEGAL SERVICES

Page 47

help the court impartially on matters

relevant to his or her expertise.

Q.   In 32.4, if you would read that first item there.

A.   Do you want me to read it out?

Q.   Sure.  Thank you.

A.   Expert evidence presented to the court must be and should be seen to be the independent product of the expert, uninfluenced as to the form or content by the demands of the litigation.

Q.   If you would read the second one, please, also.

A.   An expert witness must provide independent assistance to the court by way of objective unbiased opinion in relation to matters within the witness' expertise.

Q.   What's your understanding of the word unbiased?

A.   I'm not sure how to describe that. Not having bias, setting out a fair, accurate view.

Q.   Is it possible under these rules for a party's own lawyer in the case to also


MAGNA
LEGAL SERVICES

Page 48

be an expert declarant?

        A.    I think there is probably a
distinction between the parameters around an
expert witness formally -- the way it works
in the BVI proceedings is that in terms of
introducing expert evidence, the court needs
to give clear instructions in relation to it
and directions, for instance, for the
appointment of joint experts.

            And there is a lot of paper work
and requirements that go around in relation
to that.  And typically speaking, experts may
be on issues of foreign law, but also they
will be on substantive factual issues or
commercial issues.

            In circumstances where there are a
very clear, very limited area in order to
assist the court on a very narrow point, in
those circumstances, it's absolutely
appropriate, I think, for foreign lawyers to
provide some assistance to the court, outside
of it being a formal expert process.

        Q.    I'll just take a minute to read
back your answer.


MAGNA
LEGAL SERVICES

26-10769-mg   Doc 49-34   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 34 -
Transcript of May 14   2026 Deposition of Andrew Barrington Chissick   Pg 50 of 293

Page 49

When you say "foreign lawyers," you mean a foreign co-counsel -- sorry -- a foreign lawyer representing a party in the proceeding?

A.   Yes.   Can I give an example which might assist?

Q.   Please, yes.

A.   So say, for instance, we were looking to serve documents in a foreign country and in order to serve those documents, you have to do it in compliance with local law, and we needed to get an alternative service order.

In those circumstances, given the fact that it's a narrow point to assist the court, it would plainly not be appropriate or required to get a formal expert in relation to these things.   You can get a very simple explanation that, as a matter of, let's say, French law, this is what you need to do to effect service.   And the court in the BVI would feel comfortable in relation to that.

Q.   That makes sense.   That sounds like a small procedural matter in your example.



Page 50

A.   I'm not sure if I agree that service is a small procedural matter.  It's an issue of substantive law.

Q.   Fair enough.

Would it be appropriate -- if the question of how to effectuate service was contested in that matter, would it still be appropriate to use your own lawyer as the declarant?

A.   It would have to depend on the context, I think.

Q.   If the BVI rules applied in Chapter 15 court, would you be allowed to serve as the declarant?

A.   I can't speculate as to what would be available as a matter of U.S. law.  I have no concerns whatsoever that in terms of the way that I've articulated my evidence and the approach that we have done is inappropriate in any way.

Q.   I'm not asking if it's appropriate.

I'm asking if these rules applied, BVI rules, which I believe you are familiar with, would you be allowed to act as an



Page 51

expert declarant on these issues of, for

example, residuary powers?

A.   Can you clarify the question?  I

think what you are saying is, if in very

materially different processes under which

formal -- formal directions had been granted

for the filing of expert evidence in relation

to various issues, would I be able to give

that declaration?

I think it would be extremely

unusual.  I don't think I would feel

comfortable doing it.  But that, in my mind,

does not at all negate the accuracy or the

correctness of my evidence in relation to the

Chapter 15 proceedings.

Q.   I will just take a moment to read

your response.

Thank you.

MR. CROKE:  I don't know if this is

a good spot, but we've been going a

little over an hour.

MS. FEMINO:  Sure.

THE VIDEOGRAPHER:  We are going off

the record.  The time is 10:52.



Page 52

(Recess.)

THE VIDEOGRAPHER:  We are back on the record.  The time is 11:14.

BY MS. FEMINO:

Q.   Just a few cleanup items before we move on.

You said earlier that you had not spoken with Mr. Pretlove since his deposition yesterday.  Has anyone else spoken with you about his deposition?

A.   I had a quick chat with Sullivan & Cromwell, but I don't know anything in detail.

MR. CROKE:  And I will instruct you not to get into the substance of our discussion.

Q.   Were any of his answers to questions conveyed to you?

A.   I don't think so, no.

Q.   When we discussed your experience, we talked about prior cases where you had been an expert declarant.  I think you said there were two; is that right?

A.   Yeah.  Actually, I was thinking



about that.  I have advised on BVI law on lots of things.  As being a formal expert, it's at least one or two, but actually thinking about it, it may not have been purely on insolvency.  It may have also been on restoration issues.

I have never been in court, been deposed, it's been as an expert witness.  I don't know if they went to trials or it was determined on papers or something like that.

Q.    Thank you.

Can you tell me the names of those proceedings?

A.    I can't recall, so no.

Q.    You said they were not U.S. matters?

A.    No.

Q.    Were they all BVI law, or -- I know you are qualified in other places.

A.    Yes, BVI law.

Q.    Have you served as an expert declarant for non-BVI law?

A.    Not as the named expert.  I have assisted with expert reports or expert



Page 54

advice.

Q.    What is Walkers' relationship to Sullivan & Cromwell in this matter?

A.    We both act for the JPLs.

Q.    To the best of your knowledge, does Sullivan & Cromwell have other clients in this matter?

A.    Not that I am aware of.

Q.    So your understanding is that Sullivan & Cromwell, just like Walkers, represents the JPLs not the companies?

A.    I haven't seen any papers or recall seeing any papers in relation to.  It but my understanding is that we are both acting for Paul Pretlove, David Standish, and James Drury, in their capacity as joint liquidators for the 30 companies.

Q.    Do you know whether Sullivan & Cromwell has an engagement letter with the JPLs?

A.    I believe so.

Q.    Have you seen that letter?

A.    I can't recall.

Q.    Do you have a common interest



Page 55

agreement between the two law firms for
privilege?

A.    When you say "common interest
agreement," do you mean a formal?  No.

Q.    Which firm was retained first in
this matter?

A.    I don't know.

Q.    Who made the decision to retain
Sullivan & Cromwell?

A.    I don't know.  My assumption is the
JPLs, as the client, choose their legal
practitioners.

Q.    So your understanding is the JPLs
independently chose these two law firms, as
opposed to choosing a law firm and that law
firm choosing another firm?

A.    Correct.

Q.    Have you seen any bills from
Sullivan & Cromwell for this matter?

A.    No, not that I can recall.

Q.    Does Sullivan & Cromwell review
Walkers' bills?

A.    Not that I am aware of.

Q.    Sorry.  This is also a cleanup from



before.  But Walkers' bills, those have not been sent to the objecting debtors for review?

A.    Do you mean the companies?

Q.    The companies?

A.    No.

Q.    And under BVI law, the companies have no right to know what work is being charged to them?

A.    I would say that's the correct assessment.  As I mentioned previously, all fees to be drawn down by the provisional liquidators or liquidators, are subject to court's approval.

Q.    Is it like the U.S., where other parties get to participate in that approval or just the court?

A.    I don't know what the U.S. proceeding is like.

Q.    Sure.  I will rephrase.

You said they're subject to court approval.  Is that like an ex parte thing or would it be public on a docket?

A.    There's quite a lot of elements to



Page 57

that, so I am going to try to answer it because there are two questions there.

So in terms of court approval, it's an application you make to the court. The extent to which creditors or stakeholders are made aware of or have input in relation to those particular proceedings, will be fact specific.

The court system in the BVI is not as open as I understand the U.S. court proceeding is, in that for someone who is not a party to the proceedings to have access to the application, they would need special dispensation from the court.

Q. Would the debtor companies be parties to the proceeding?

A. In the context of whether or not they would have input or oversight in relation to the fee application, that's going to be a matter for the court to determine as and when a fee application is issued.

Q. I would like to go through your declarations, so we will go back to Exhibit 1.



Page 58

We looked at this before.  It's your April 8 declaration submitted in the Chapter 15 cases.

Who drafted this document?

A.   I drafted it.

Q.   Did Sullivan & Cromwell comment on it?

A.   I don't want to get into privileged communications or anything like that.  But what I would say is I was assisted in relation to understanding the structure of this and I was assisted also by my team in terms of preparing it.  But this is my work and I stand behind it 100 percent.

Q.   When you say "my team," do you mean Walkers?

A.   Yes.  My -- members of the Walkers team.

Q.   When you say, I was assisted as to the structure, you mean by Sullivan & Cromwell?

A.   I never drafted a U.S. declaration before.  So the formatting and those sorts of things, obviously, I need to defer to U.S.



26-10769-mg    Doc 49-34    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 34 -
Transcript of May 14    2026 Deposition of Andrew Barrington Chissick    Pg 60 of 293

Page 59

law specialists to understand how it should

look in terms of the court expectations.

Q.    Certainly.

You mentioned earlier you had

reviewed this declaration in the last few

days, yes?

A.    That's correct.

Q.    When you reviewed it, did you see

anything in it that would warrant revision?

A.    Nothing substantive.  Maybe one or

two words, I think, oh, I could have

rephrased that in a clearer way.

Q.    Can you take me to those?

A.    There was one part actually

referred to in one of the -- I think it's

Kobre & Kim submissions, where I talked about

material powers of the directors.  And

looking back, I thought that's probably

potentially confusing.  I think substantive

powers would have been a better terminology

to be clearer.

Other than that, there is nothing

that I have seen which I think needs to be --

which I would identify as obviously wrong.



MAGNA
LEGAL SERVICES

Page 60

Q.   If we go to paragraph 36, I think that's --

A.   That's right.  The last line of paragraph 36.  I say, the material powers of directors.  I can understand that that might not be clear.  So substantive powers might be a better way of describing it.

Although, I don't think there is that much difference between material and substantive.

Q.   What do you mean by the term "substantive powers"?

A.   What I mean is -- well, I think substantive powers in itself is self-explanatory.  But to maybe go further, in terms of the ability to manage the company's affairs.

Q.   I think you said there might be a second item?

A.   No, that was over egging it.

Q.   That's -- egging.

A.   It's an English phrase.  That's going to be fun on the transcript.

Q.   That's a new one for me.



26-10769-mg Doc 49-34 Filed 05/21/26 Entered 05/21/26 15:29:05 Exhibit 34 - Transcript of May 14 2026 Deposition of Andrew Barrington Chissick Pg 62 of 293

Page 61

And then your second declaration which you've also looked at already, Exhibit 4.

Same question. Who drafted this declaration?

A. I drafted this.

Q. And same process as with the first declaration?

A. Yeah, it's exactly the same process.

Q. And in your recent review of this declaration, was there anything in it that you saw that you would like to revise?

A. Nothing, no.

Q. Do you know if AI was used in the process of creating these declarations?

A. No, it was not.

Q. You can say definitively that whatever S&C did with these when they were at S&C, did not involve AI?

A. I don't know what S&C did in termers of preparation of any of their documents. But in terms of my work, I have never used AI. I don't use it now.



Page 62

Q.   Presumably, you did send a draft of this document to S&C for them to format it and whatever else?

A.   As I mentioned before -- to be mindful in terms of privilege issues, but in the ordinary case in terms of finalizing a document, which then needs to be filed with a foreign court, I would have ensured that it was consistent with whatever the U.S. court's expectations were.

Q.   Is it possible that while this document was in S&C's hand, that AI was used?

A.   I don't know.

Q.   Do you know if any confidential information related to the debtors has been exposed to AI?

A.   I have no idea.

Q.   You are not qualified to practice U.S. law, correct?

A.   Correct.

Q.   There are some statements of U.S. law in your declarations.  If we could flip back to the first one, please, Exhibit 1, and go to paragraph 15, please.



I just will read aloud.

For the reasons set forth below and as advised by the debtors' U.S. counsel, it is my view that the BVI proceedings constitute collective judicial proceedings commenced under the BVI Insolvency Act, a law relating to insolvency, in which the assets and affairs of the debtors are subject to the control and supervision of the BVI court, and, accordingly, satisfy the criteria for foreign proceedings within the meaning of 101(23) of the Bankruptcy Code.

Do you understand this to be a statement of U.S. law?

A.   So I expressly say, number one, I was advised by debtors' U.S. counsel, which I make clear in paragraph 11 that I'm not an attorney qualified to practice law in the United States.

That paragraph 15 also says very clearly, for the reasons set out below -- or set forth below.  And I think in the subsequent sections, you will see precisely how I reach those conclusions and how -- you



Page 64

know, the basis upon which that summary is set forth in paragraph 15.

Q.   Absolutely.  I just am looking maybe for a simpler point that we may agree on which is whether or not the BVI proceedings are, quote, foreign proceedings under 101(23) of the U.S. Bankruptcy Code, do you agree that that is a U.S. law question?

A.   I agree that whether a specific provision of the U.S. Bankruptcy Code is complied with, will be a question of U.S. law.

Q.   You say here, as advised by the debtors' U.S. counsel.

Who are you talking about?

A.   That's a reference to the Sullivan & Cromwell.

Q.   Earlier you stated that Sullivan & Cromwell represents the JPLs.

A.   Well, let's have to look at the definition to make sure I understand precisely the basis on which that definition is being used here.

Q.   I'm sorry.  Are you looking for the



Page 65

definition of debtors?

A.    Yes.   I think it's quite clear I'm referring to Sullivan & Cromwell in the context of it.   It certainly wasn't Boies Schiller or Kobrre & Kim that would advise me.

Q.    Would you like to correct the declaration to clarify that you meant the JPLs' U.S. counsel?

A.    To the extent that it is unclear what my reference is and that could cause confusion to the U.S. court, and it would be deemed as a matter of U.S. process or expectation for me to correct it, I would have no objection to clarifying the reference, actually, to Sullivan & Cromwell.

Hopefully, in the broader context of things, that is actually deemed to be accurate and there is no confusion caused.

Q.    Here in this paragraph 15, where you say, as advised by the debtors -- by let's say Sullivan & Cromwell, yes? -- as advised by Sullivan & Cromwell, how did they advise you -- sorry.



26-10769-mg   Doc 49-34   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 34 -
Transcript of May 14   2026 Deposition of Andrew Barrington Chissick   Pg 67 of 293

Page 66

I don't mean the content.  I mean how did they convey their advice to you regarding 101(23)?

A.   I think that's almost certainly encroaching upon privilege.  So I don't want to go into too much detail.  But in the same way that as any joint counsel, you have discussions and ask questions.

Q.   Did they send, for example, a written memo 101(23)?

A.   I can't recall.  And also, I just don't think it's appropriate for us to go into the exchanges between the JPLs' counsel.

Q.   I would like you to answer the question, unless your attorney is instructing you not to and the question is.

Did Sullivan & Cromwell send you any written work product to explain the meaning of 101(23) under U.S. law?

MR. CROKE:  I am going to -- you asked him a lot of questions about this, but to the extent you are asking for any substance, I will object to that.

MS. FEMINO:  That question was only



Page 67

about whether there was written work product, as opposed to you did it all over the phone.

MR. CROKE:  But you are asking about is there a memo about a specific issue, which I think is protected.

If the question is did you engage in oral or written communications, fine. But to the extent you are asking about the format and substance of any specific communication, I don't think that's appropriate.

Q.    Is it fair to say your understanding of Section 101(23) comes from Sullivan & Cromwell, not from your own expertise?

A.    As I mentioned in the declaration, I'm not a U.S. lawyer.  So where there are issues of U.S. law, I would inevitably defer to U.S. counsel in relation to those issues.

Q.    If we can go to paragraph 23, please.

And I will read this out loud.

The BVI orders which were issued on



Page 68

January 9, 2026, granted the interim relief

sought by the BVI Attorney General.  Thus,

appointing the JPLs as joint provisional

liquidators, pending the determination of the

liquidation applications.  The BVI orders

were continued on an inter parte basis by way

of order dated January 29, 2026.

The BVI orders confer upon the JPLs

broad authority to:  One, investigate the

debtors' affairs.

If we can keep this document handy,

but I will also go to another exhibit which

is the BVI appointment order.

(Chissick Exhibit 6, JPL

Appointment Order, marked for

identification.)

Q.   Do you recognize this Exhibit 6 as

the order -- as one of the 30 orders

appointing JPLs over the debtors?

A.   I do.

Q.   What I would like to do is if you

could point me to where is it in this order

that the BVI order confer upon the JPLs broad

authority to:  One, investigate the debtors'



affairs, if you can just point me to where that is in the order.

A.   Well, I think, actually, they're quite considerable and if we're going to talk through, we are going to talk about those powers.  Because obviously paragraph 2 grants the JPLs broad powers -- the rights and powers of a liquidator, to the extent necessary to maintain the value of the assets owned by the company and which is obviously one of the debtors, and to carry out the functions which they are appointed.

And then paragraph 3 is a long list of powers which, actually, I think in my mind, collectively engage with each of the 1, 2, and 3 points that I make in paragraph 23.

So in terms of saying there is a specific investigative power, I don't think that's the accurate way to look at it.  Because ultimately, for example, there is powers under 3(a), 3(b), 3(g), for instance, which in itself covers both investigation and maintaining value of assets.

Q.   That's fine.  If your answer is a



Page 70

melange of items in paragraph 3, that's okay, if that's the answer for where that power is in the order.

So with that in mind, where in the order do you see broad authority to investigate the debtors' affairs?

A.   Well, I would say in terms of the powers are granted to JPLs under paragraph 2, which is to the extent necessary to maintain assets of the company, which is inherent that it has investigation powers, plus the express investigation powers under paragraph 3, plus the ability -- they actually have powers under Schedule 2 of the Insolvency Act that can also be exercised with the sanction of the court.

Just to be clear, for the purpose of the transcript.  The powers under paragraph 3 can be exercised by the JPLs without seeking the further approval or sanction of the court.  But that is not the limit of their powers.

In addition to that, there are other powers set out as a matter of statute



which would ordinarily vest with full liquidators.  Those powers are also available to the JPLs.  But in wanting to exercise them, they would be expected to seek the sanction of the BVI court.

Q.   That's per paragraph 10 of the order, yes?

A.   Let me just remind myself.

Q.   Please.

A.   So paragraph 10 says -- and same as in paragraph 3, the JPLs may not exercise any of the powers set out in Schedule 2 without sanction of the court.

Q.   So if I understand this correctly, paragraph 10 refers to powers that require further sanction, while paragraph 3 refers to powers that do not require further sanction?

A.   Paragraph 3 sets out a number of powers which the court has, in essence, preapproved, if I can use that term.

Paragraph 10 refers to the fact that there are certain powers which are listed at Schedule 10, which are typically available to liquidators upon a full



Page 72

appointment.  Those powers are available to the JPLs and vest with them, but they need to seek the sanction of the court in order to exercise them.

Maybe I can add also, as a matter of BVI law, you can seek retrospective sanction.  So say, for instance, there may well be steps which the JPLs feel are incumbent to take which otherwise may require sanction of the court, but it's not possible to get it in time.  In order to protect the estate, the JPLs may well take steps and then get retrospective permission from the court or approval for that.

Q.   So when I said paragraph 10 refers to powers that require further sanction, you find that an incorrect formulation of the powers referenced in paragraph 10?

A.   No.  I explained that there are certain powers listed out in Schedule 2 of the BVI Insolvency Act.  They vest with the JPLs.  But in order for them to exercise them, they require the sanction of the court.

And I've added, that in relation to



26-10769-mg   Doc 49-34   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 34 -
Transcript of May 14   2026 Deposition of Andrew Barrington Chissick   Pg 74 of 293

Page 73

that exercise, although the ordinary course would be to get sanctions before exercising them, there may well be circumstances where it's appropriate in order to protect the estate, to otherwise take some urgent action where the JPLs will take those steps and then subsequently seek retrospective sanction.

Q.   Here in paragraph 2, this phrase, "the rights and powers of a liquidator," is that the same Schedule 2 powers you are talking about?

A.   The rights and powers are broader purely in Schedule 2.

Q.   What else do they include?

A.   It's very broad.  If we have a copy of the Insolvency Act at hand, I should be able to point you to the various other elements which come down to it.

But fundamentally, the -- Schedule 2 should not be read as a limiting shopping list in terms of the powers of the liquidator.

Q.   Help me understand the relationship between paragraph 2 and paragraph 10, because


MAGNA
LEGAL SERVICES

Page 74

2 seems to say they have these rights and
powers, but 10 seems to say they can't
exercise them.

A.   I don't agree with your description
of paragraph 10.  Paragraph 10 says,
essentially, you need the sanction of the
court in relation to these limited powers.

So as I mentioned before, the JPLs
have those powers, they can exercise them.
It's the basis upon which they need to, in
certain circumstances, seek sanction of the
court or whether additional sanction of the
court is required.

Q.   What's confusing me is 2 seems to
simply give these powers.  But 10 says they
may not exercise of the powers in Schedule 2
without sanction of the court.

A.   I think there is a distinction
between having the power there, so the
ability to do these things.  Maybe you might
be saying -- if we use an example like a
director, where they may be acting ultra
vires, what I read paragraph 2 is saying,
these are the powers that vest in the JPLs,



Page 75

basically, the powers of a liquidator

qualified by to the extent necessary to

maintain the value of assets or to carry out

the functions of which they are appointed.

And then paragraph 10 just talks

about the extent to which you need the

sanction of the court in relation to some of

those powers.

Q.   I'm wondering for ease of this

discussion, if there is a word we could agree

on for things that are authorized to do right

now without further permission versus powers

they have but can't exercise.

A.   I think I take issue with the way

it's described.  I would say they have such

powers, i.e., in terms of the authority

cloaked on them, they have the powers of a

liquidator.  Right?

But what I read paragraph 10 to

mean is in terms of their ability -- the

expectation of the court's involvement in it

has -- leads into paragraph 10.

Q.   Is paragraph 10 an expectation of

the court that they will seek sanction or a



MAGNA
LEGAL SERVICES

Page 76

requirement that they must seek sanction?

A.    I would say it's a requirement.

Q.    So your interpretation is they have all the powers subject to the limitations of 2.  Some can be exercised now, some require further sanction before they can be --

A.    I disagree with that.  They can be exercised now, but the court will need to provide sanction for it.  That may be before the exercise of the power, it may be after.

The court needs to approve it.  But there is not a requirement for it to be sanctioned before.  To the extent it is argued that they can't do something unless the court says yes, that is wrong in that the court can subsequently approve those steps, but they have the authority to do it.

Q.    Flipping back to paragraph 23.

A.    Back on my declaration?

Q.    Yes, thank you, which is Exhibit 1.

We will be going back and forth, so if you have a way to keep them both handy.

All right.  You've taken me through Romanette (i), here which is investigate the



Page 77

debtors' affairs.

Where in the order -- where do the orders, quote, confer upon the JPLs broad authority to preserve and realize assets?

A.   It's the same point that I raised in relation to the investigative debtors' affairs.  You need to read paragraph 2 and paragraph 3, and then, obviously, the powers under paragraph 10 which refer back to Schedule 2.

Q.   So the power to -- what does the word realize mean to you?

A.   Okay.  So there may well be circumstances where -- you know, the asset needs to change form, for instance.  So there can be -- such as a perishable asset, for instance, you might need to take steps to sell it, or perhaps it might be, you know, some bonds or something like that.

It's probably not helpful for me to speculate in the context of these particular -- this particular proceedings.  But I'm saying in terms of the powers that vest in JPLs, obviously, the main focus will be on


MAGNA
LEGAL SERVICES

Page 78

maintaining the value of assets.  But

maintaining the value in itself may well

require realization, if the failure to

realize, itself would diminish the value.

Q.   So here in paragraph 2, the power

to realize -- is the power to realize set out

in Schedule 2?

A.   I would need to remind me self.

Q.   We have it.  I said we'll have 3,

but we can do --

A.   I don't think within -- I don't

think it's contentious that liquidators are

able to deal with assets to realize value.

Q.   So it's included -- so for in

paragraph 2 of the order, the power to

realize or sell assets is included in the

rights and powers of a liquidator?

A.   I would need to check the --

potentially.  I'm happy to go on that basis.

Q.   Yeah.  We will need it eventually,

we might as well get out the BVI Insolvency

Act as well.

(Chissick Exhibit 7, BVI Insolvency

Act, marked for identification.)



Q.    It might help because we have a command function.

A.    Are you looking at Section 185?

Q.    186.  But you tell me.

A.    Section 185 talks about the general duty of a liquidator.  And it says specifically, the principal duties are to take possession of, protect, and realize the assets of the company.

Q.    I see 185 says, general duties of at liquidator, and 186 says, general powers.

A.    If you look at Section 186, the liquidator of the company has the powers necessary to carry out the functions and duties.  So it leads into that.

Q.    So you would identify the power to realize assets similar here in 185 and 186?

A.    Yeah.  I mean, I -- my general view is it's inherent in the role of an officeholder to have that ability.

Q.    Sorry.  It's inherent in the role -- are you saying it's in the Act or it's in the ether of being --

A.    Well, it's plainly in the Act



MAGNA
LEGAL SERVICES

Page 80

because it talks about it in 185.  And if you look at Schedule 2, it's the power to sell assets, for instance.

But fundamentally, looking at the duties of a liquidator and then the powers that arise under that, there is obviously broad powers as both a matter of statute and in terms of what their role will entail.

Q.  Okay.  Going back to the order in our case -- and we are trying to find where in this order is the power to preserve and realize assets.  And you've directed me, I believe, to paragraph 2, rights and powers of a liquidator.

And then you've shown me that the Act gives a liquidator the power to sell assets.

MR. CROKE:  Objection, mischaracterizes testimony.

Q.  Let's start back -- I will withdraw the question and rephrase.

We were working on identifying the source of the authority to the, quote, broad authority to preserve and realize assets.



Am I right that you took me to paragraph 2 to begin this exercise?

A.   I referred back to my question -- my answer to your question about the investigative debtors' affairs which is by going through each of the provisions in the appointment order, the same applies in relation to the preservation and realization of assets.

I don't think it's a question that there was broad authority or that the points I raise in this paragraph 23 are in any way inaccurate.

Q.   I would like to understand.  This says, The BVI orders confer upon the JPLs broad authority to preserve and realize assets.

I'm now looking at the order to see where that authority is -- which paragraph confers that power.

A.   We talked in terms of the powers being granted under paragraph 2, and then the additional powers you refer to in paragraph 3, which can be exercised without sanction.



Page 82

And then the other powers, again, referring to under Schedule 2, which can be exercised, but will at some point require the sanction of the court.

Taken collectively, that gives the power or the broad authority to preserve and realize assets.

Just to add to that, actually, because it's very clear under paragraph 2, as well, it talks about the maintaining of value.  That, in my, mind is akin to preserving.

Q.   Sure.  Let's just say I don't disagree with you about preserve and my issue is with realize.

Here in paragraph 2, I believe you have shown me how the rights and powers of a liquidator in the Act includes the power to realize.  Is that fair?

A.   Can you restate that.

Q.   I believe you have shown me that the rights and powers of a liquidator in the BVI Insolvency Act includes the power to realize assets.



Page 83

A.   I have referred to specific provisions which do allow the realization of assets.

Q.   So that's a yes.

Now, this phrase here in paragraph 2, quote, to the extent necessary to maintain the value of the assets owned by the company and to carry out the functions for which they are appointed.

Do you agree with me that as a matter of syntax, that is a limiting phrase, that limits what comes before it?

A.   I agree the fact that it says that -- this lines says, to the extent necessary, is in itself a qualification.  If we then go into what the implications of that might be, I suspect I might have a different opinion in relation to some points.

Q.   I only want to agree that it is a qualification.

A.   Okay.

Q.   And there is a difference between having rights and powers, period, and having rights and powers to the extent necessary to


MAGNA
LEGAL SERVICES

Page 84

do particular things?

A.   I think I agree with that.

Q.   So to the extent you are locating the power to realize assets in this paragraph 2, as it incorporates the Act, that would be limited by this qualification?

A.   Can you rephrase that?

Q.   I'm trying to locate in the orders the source of the power to realize assets.

You have asserted it exists in multiple paragraphs.  To the extent it exists in paragraph 2, which incorporates the BVI Act -- I will start over, that was a long sentence.

To the extent the power to realize assets is located in paragraph 2, which incorporates the BVI Insolvency Act, it is limited by this qualifier?

A.   Say it one more time, I'm sorry.

Q.   I'm trying to locate in the BVI order the source of this, quote, broad power to realize assets.

A.   Okay.  I understand what you are trying to get to.  So number one, obviously



Page 85

reference to broad authority.  So there is innate power fixed on the JPLs to do certain things, and we discussed some can be done without the further sanction of the court, some might require the sanction of the court. But that in itself means they have authority to do it, they just would need, in certain circumstances, the approval of the court.

And then I think there is a broader point, which -- in terms of saying, well, realization, how can you maintain the value of an asset, if you are realizing it?

The keep point is there must be many circumstances where in order to maintain the value of something, you have to change its form.  Say I had a punnet of strawberries -- a bucket of apples, whatever -- and it was going to go off tomorrow, it would be incumbent I think in those circumstances to sell them.  Because otherwise, you've got a wasting asset.

Q.    I'm not asking you to justify when could you ever sell an asset to preserve value.  I might ask that later, but --



Page 86

A.    The key point here is -- I want to be absolutely clear about paragraph 23.  We are talking about authority.  So the fact is, the authority is vesting with the JPLs to do these things.

Q.    Right.  So I believe you told me that authority, specifically as to realizing assets, right -- that authority, I believe, you said it's located in multiple paragraphs.

A.    I refer to the specific paragraphs in the order which grants them those powers or refers to those powers.

Q.    Okay.  I would like to go paragraph by paragraph and see where this authorization is.

Now, to the extent you are locating it in paragraph 2 -- I understand you are locating it in multiple paragraphs, but to the extent it's in 2, and I understand also that 2 incorporates the BVI Act, but to the extent it is in 2, it is limited by this qualifying language, "to the extent necessary"?

A.    There is some qualifying language



26-10769-mg   Doc 49-34   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 34 -
Transcript of May 14   2026 Deposition of Andrew Barrington Chissick   Pg 88 of 293

Page 87

in there.  But I'm not sure if I quite follow the point you are making in terms of that.

They have the rights and powers of a liquidator, and -- yeah, in accordance with those parameters, which is to maintain the value of the assets.

Q.   So to the extent you were locating the authority to realize assets in paragraph 2, it is limited by this phrase, "to the extent necessary"?

A.   The way that paragraph 2 works, and the way it's articulated, is that there is limiting qualifying wording in relation to that.

Q.   Is there anything in paragraph 3 that authorizes the realization of assets?

A.   So in terms of the preservation and realization in 3(b) -- I mean 3(d), 3(e), 3(f).

Q.   Okay.  Sorry, please.

A.   I'll see if there's anymore.

3(i), 3(j), 3(m).

Q.   And to be clear, identifying places where realization of assets is authorized.


MAGNA
LEGAL SERVICES

Page 88

A.    I mentioned in that particular part, preservation and realizing assets.

Q.    I'm only interested in realization at this time.

A.    Okay.  In relation to that, I think in terms of the steps in terms of identifying, I think 3(d), in relation to the proceedings.

Q.    Sorry --

A.    Sorry, let me rephrase it.

Q.    Why don't you take a minute and have a look and then we will walk through it. I'm not rushing you.

A.    Okay.

Q.    Whenever you are ready.

A.    If we are only talking about realization of assets, from what I can tell, there is no specific reference to that in those particular -- in that particular wording.  But that does not negate the fact that they have broad authority to do it.

Q.    Sure.  I think you have shown me where in 2 you believe it sits.

Do you still think it also sits in



Page 89

3?

A.   I suppose -- there may well be ways in which in terms of construing the wording, that it could fall within that.  But I think for the current purposes, I'm happy to accept there is no express wording which refers specifically to the sale or conversion of assets.

Q.   I'm not sure I'm ready to move on in that case.  We may have to go subparagraph by subparagraph.

Is there anything in 3(a) that would authorize the JPLs to sell assets?

A.   Not specifically.

Q.   But generally?

A.   No.

Q.   Subparagraph (b)?

MR. CROKE:  Just to be clear, to sell assets or realize assets?

Q.   I have been using these terms synonymously.  Do you think of them as different concepts?

A.   I think there is probably -- my view, in terms of realization would typically



Page 90

be a conversion or change of the particular
assets.  Typically, that would be converting
something illiquid to liquid.  But I don't
want to be limited by that because there may
well be circumstances where it takes a
different form.

Q.   We should use realized because
that's the word in your declaration.

So just to confirm, anything in
(a), does that authorize realization of
assets?

A.   No.

Q.   And in (b)?

A.   Yes, potentially.  So take such
steps as may be necessary to protect any such
assets from removal or dissipation.

Sorry, again, it's difficult to
speak in hypothetical terms, but there may
well be a circumstance where a form of asset
is very easy to transfer and the JPLs can
take steps to put that into something else
where it's less -- where the asset is
maintained.

Q.   Okay.  So to the extent this power



Page 91

to realize assets lives here in 3(b), do you
see this limiting phrase, which may remain in
the possession or control of the company?

A.    I see it says, which may remain in
the possession or control of the company.

Q.    So steps which may be necessary to
protect any such assets.  What is such assets
referring to?

A.    Wait a minute.  So identify --
let's go through the wording.

To identify any assets which may
remain in the possession or control of the
company.  So that's saying any assets of the
company.  So company assets.

Q.    Which may remain in possession or
control of the company.

A.    Well, that means assets which are
owned by or controlled by the company.

Q.    Do you assert that possession or
control amounts to -- is synonymous with
ownership?

A.    I mean, you can own something
without having control.  I think possession
is very close to ownership.  And control,



Page 92

obviously, is slightly different.

But I think the reference to 3(b) is plainly referring to assets which are owned by the company.  It's company assets. I think it would be very difficult to argue anything to the contrary in relation to that.

And then it goes on to say, to take such steps as may be necessary to protect any such assets from removal, from the company, or dissipation -- again, from the company.

Q.   I see this language in paragraph 2 refers to assets owned by the company.

If 3(b) meant to say owned by the company, why does it use this incredibly cumbersome language?

A.   I think they are probably splitting hairs here a little bit.  In terms of the drafting of the order, I don't think there is actually any really serious dispute as to there being a difference between company assets or however it's described in paragraph 2 and how it's described in paragraph 3(b).

Q.   Well, I'm disputing it.

So you would feel comfortable, you



Page 93

know, restating 3(b) to the Chapter 15 court
and just saying that means company assets?

A.   I would have no objection to doing
so.

Q.   So 3(b) may be a source of the
power to realize assets?

A.   I think it is.

Q.   And where it says, as may be
necessary to protect any such assets from
removal or dissipation, is it fair to
characterize that as a qualifier?  They don't
have unfettered right to realize assets, they
have the right to do it as may be necessary
to protect any such assets?

A.   That's what the particular
provision of 3(b) says.

Q.   Okay.  So to the extent to realize
asset is sourced from 3(b), this limitation
comes with it?

A.   Well, just to be clear, I'm not
saying it's purely sourced from 3(b).

Q.   I know, to the extent.

A.   But in relation to the exercise of
such broad authority to realize assets, if it



Page 94

fell within the criteria of 3(b), then it would need to be necessary to protect any such assets from removal or dissipation.

Q.   Let's keep going for any other sources of this authority to realize.

Is there anything in 3(c)?

A.   I don't think so, no.

Q.   And 3(d)?

A.   I think in principle, in terms of converting a potential claim into a real claim, could arguably be realization.  I think for current purposes, I'm happy just to say that that's not what I was contemplating in terms of realization.

Q.   Okay.  Great.

And 3(e)?

A.   No.

Q.   3(f)?

A.   Yes.

Q.   All right.  Do we see this phrase in 3(f), "so far as may be necessary for its beneficial provisional liquidation"?

A.   I do.

Q.   Is it fair to say that to the



Page 95

extent the power to realize assets is sourced

in 3(f), it is qualified by this limiting

phrase?

    A.   I agree with that.

    Q.   Okay.  Anything in 3(g) that could

be a source of the power to realize assets?

    A.   Again, we could encroach upon more

imaginative ways.  Or we can say, for

instance -- again, it's difficult going to

hypotheticals.  But say, for instance, there

needed to be a sale of an asset which then

led to someone providing documentation, it

potentially could fall into that.

        But I think, again, in terms of my

contemplation about the -- in my supposition

in terms of declaration, I don't think it

would be an overstretch.

    Q.   Okay.  And what about (h)?

    A.   In terms of the specific power for

realization, I don't think so.

    Q.   (i)?

    A.   No.

    Q.   (j)?

    A.   Again, theoretically.  Say, for


MAGNA
LEGAL SERVICES

Page 96

instance, there's a bank account, maybe the
form of the assets within that bank account
are, you know, maybe highly volatile
securities, it might be incumbent upon them
to mitigate that risk.

Q.    Does this also feel like a stretch?

A.    No.

Q.    So you could -- through the
authority to retain, manage, and operate
existing bank accounts, you see authority to
realize asset in those bank accounts?

A.    In terms of realizing being a
change of the form, I think that's perfectly
possible.

Q.    Is it fair to say the only assets
you could realize under 3(j) powers, are
assets in bank accounts?

A.    That's probably likely, yes.

Q.    And (k)?

A.    I don't think that's applicable.

Q.    (l)?

A.    (l) is only a slightly different
way of looking at it in terms of that in
itself is a catchall, which instead, you



Page 97

could then seek the court's approval or directions in relation to a potential realization.

Q.   So 3(l) authorizes the JPLs to apply to the court for directions regarding realization of an asset?

A.   Well, in exercise of their powers, which would include realization.

Q.   The thing it authorizes is the application to court?

A.   Yes.

Q.   Okay.  (m)?

A.   That's a catchall word in which I think could maybe potentially capture realization, if it was indeed incidental.

Q.   What does it mean to you, "incidental"?

A.   It's not something I thought about deeply.  I suspect it's probably more on the less substantive side.  Maybe more in the ordinary course of business -- or otherwise tangential to it.

Q.   (n)?

A.   No.



Page 98

Q.    (o)?

A.    No.

Q.    We might as well keep going.

No. 4?

A.    What, in terms of realization?

Q.    Yes.  I guess I should say to save us time, any other paragraphs besides 2 and 3, where some source of the power to realize?

A.    It would probably be easier if I have a quick check for each one.

Q.    Please.

A.    Paragraph 10.  And then broadly speaking, which is probably more I think with 3(l), the powers under paragraph 16, in terms of the power to -- it's a variable discharge.

Q.    Is that the last one?  Did you go to the back?

A.    That's the last one.  I haven't reviewed the protocol, but I'm assuming --

Q.    We can skip the protocol.

I assume you are not sourcing the power to realize assets from the protocol?

A.    No.

Q.    So --


MAGNA
LEGAL SERVICES

Page 99

A.   Wait.  The authority -- let's be clear in terms of what I've said.  The broad authority in relation to investigating, preserving, and realizing, and then obviously seeking the assistance and cooperation in foreign jurisdictions.

Q.   Sorry.  Are you now saying that 3(c) is a source of the authority to realize assets?  Because you just mentioned something about seeking cooperation for --

A.   I was referring to paragraph 23. You were going through --

Q.   Yes, thank you.

A.   Sorry for any confusion.

Q.   No, no.  Okay.

So you correctly corrected me when I said power, because your word is authority.

What is the difference?

A.   What I deem to be authority is that there is the -- how can I describe it, actually -- the JPLs are clothed with the legal right to take these various steps.

Q.   So steps that require further sanction from the court, would you still say



MAGNA
LEGAL SERVICES

Page 100

they have the authority?

A.   I would.

Q.   I just want to -- these last paragraphs that you mentioned, I've been making a list here.

You mentioned 10 as another source in part of authority to realize assets. Explain that to me.

10 reads to me like a limitation, like a prohibition, but I'm not a BVI lawyer. So explain to me how 10 grants some kind of authority.

A.   Well, in paragraph 10, in itself, recognizes that such powers vest with the JPLs.  And states that such powers can be exercised -- actually, it says without sanctions.

Sorry, there are -- sanction of the court is required in terms of that exercise.

Q.   So I will just read paragraph 10.

Same as provided in paragraph 3 above, the JPLs may not exercise any of the powers set out in Schedule 2 to the Insolvency Act 2003, without sanction of the



court.

A.   That is different to saying the JPLs do not have the powers set out in Schedule 2, without sanction of the court.

Q.   So by saying they may not exercise those powers, what it's really saying is they have them?

A.   Correct.

Q.   So we have identified -- I've kept a list here of the places you've identified as sources of the broad authority to realize assets.

We have paragraph 2, and we have agreed that to the extent the power is sourced in paragraph 2, it is qualified by this language, "to the extent necessary to maintain."  Yes?

A.   I have said that paragraph 2 grants powers, and it includes that qualifying wording, "to the extent necessary."

Q.   It includes the wording, but the powers are not limited by those conditions?

A.   I agree the powers are limited by that.  I want to be absolutely clear about



Page 102

what I'm agreeing to or not.  So that's why
I'm stating out my understanding of it.

I want to be absolutely clear, if
you say a statement which I lose track of, I
don't want to be construed as agreeing with
it.  So for the assistance of the transcript,
I will be setting out my understanding.

Q.   I understand.

But when I say, the powers are
limited by these conditions, and you say,
well, the words are in the statute.  Then I
become confused as to whether we are actually
aligned.

So we can go back and see what we
aligned on for each of these points, but I
don't think we are actually in disagreement.

So why don't you -- why don't state
it for me.  To the extent the realization
authority is here in paragraph 2, is it
limited in any way?

A.   Yes.  The exercise of those powers
are limited because they can be exercised to
the extent necessary to maintain the value of
the assets.



Page 103

Q.   And to the extent the powers -- the
authority to realize is sourced from
paragraph 3(b), is there a limitation in that
paragraph?

A.   Paragraph 3(b) does include a
qualification or limitation, in that it
states, such steps as may be necessary to
protect any such assets from removal or
dissipation.

Q.   And to the extent the authority to
realize assets is located in 3(j)?

A.   You missed 3(f).

Q.   Thank you.  3(f).  Thank you.

Is it also limited in some way?

A.   It states, yes, that insofar as it
may be necessary for its beneficial,
provisional liquidation.

Q.   Okay.  To the extent the authority
is located in 3(j), I believe you agreed --
you stated earlier that that would be limited
to assets in bank accounts --

A.   Can I confirm one thing, actually?

Q.   Yeah.

A.   Because I was thinking about what



Page 104

you said.  Bear in mind, this is powers to be
exercised without the sanction of the court.

So to be absolutely clear, the
powers are there.  When we are going through
paragraph 3, these are powers which the JPLs
can do without further consultation with the
court.  That doesn't exclude their ability to
exercise the other powers with the sanction
of the court.

Q.  I understand.

What I want to do is catalogue --
because -- I want to catalogue all the
sources of this authority and then look at
any limitations on each of those sources,
okay?

So to the extent the authority to
realize assets is located in 3(j), I believe
you said earlier it's generally or probably
or in most part, going to be limited to
assets in bank accounts?

A.  I mean, given that that particular
provision talks about bank accounts, yes.

Q.  To the extent the authority to
realize assets is sourced from 3(m), is it



Page 105

limited in any way?

A.   Well, it states, as may be incidental to the exercise of the above functions.

Q.   And the last one is paragraph 10, and your position is that all the limitations set forth in previous paragraphs are overridden by paragraph 10?

MR. CROKE:  Objection, mischaracterizes testimony.

Q.   Let me go back here.

The question I asked on paragraph 10 before was, By saying they may not exercise those powers, what paragraph 10 is really saying is they have them?

And you said, Correct.

Is it your position that paragraph 10 overrides the limitations in the preceding five locations of this authority?

A.   I don't understand the question, I'm sorry.

Q.   Returning to paragraph 23.  The BVI orders confer upon the JPLs broad authority to...  preserve and realize assets.



Page 106

When you say broad authority, you mean -- when you say broad authority, you include authority that requires further sanction?

A.   That's correct.   The BVI orders provide powers that may be exercised with the sanction of the court.

Q.   Does anything in this paragraph 23 tell the U.S. court that further sanction would be required for realization of assets?

A.   I would need to check for the rest of the declaration.   I seem to recall I might have referred to elements where we would typically need further approval.

This paragraph very plainly is a high-level summary of the broad effect of the BVI orders.

Q.   Do you see how it could be confusing when you say, the JPLs have broad authority to realize assets, it's not really clear that they don't actually get to do that yet?

A.   I --

MR. CROKE:   Objection to form.



Page 107

Q.    Sorry.    Could you answer the question?

A.    Can you rephrase it?  I didn't understand it, sorry.

Q.    When you say, the BVI orders confer upon the JPLs broad authority to... realize assets, and you don't clarify that they would require further court orders to do it, can you see how that's confusing to a U.S. judge?

MR. CROKE:  Objection, mischaracterizes testimony.

Q.    You may answer.

A.    I disagree with that completely.

It appears that you have taken one particular phrase out of context, when subsequently, from paragraph 26 through to 41, you have quite considerable detail as to the effect of the original appointment, when we talk about these types of issues.

Fundamentally, it is correct that there is broad authority for the JPLs to preserve and realize assets, and we have gone through those provisions.  I'm absolutely satisfied that my declaration is not



Page 108

misleading.

Q.   Is there anything in this declaration that conveys realizing assets would require further permissions?  And please take your time.

MR. CROKE:  Objection, mischaracterizes his testimony.

MS. FEMINO:  Why don't I withdraw the question and rephrase it to avoid an issue.

Q.   Is there anything in this declaration that reveals realizing assets might require further sanction from the BVI court?

MR. CROKE:  Objection, mischaracterizes testimony.

A.   In paragraph 35, I say, The BVI court has more discretion to grant provisional liquidators powers tailored to the circumstances of the case, indicating where appropriate powers that extend beyond those to be associated with a preservative role.

Q.   Sorry.  That is disclosing to the



U.S. court that realizing assets might require --

A.   I'm explaining the context of the PL appointment.  I come back to the point, I simply don't accept the reference to preserving and realizing assets is misleading.

We've gone through the powers under the appointment order, and I think the declaration itself gives an absolutely accurate description of the provisional liquidators' role and purpose and powers.

Q.   So aside from this sentence in 35, is there anything in the declaration that discloses to the U.S. court that the JPLs might require sanction before they could realize assets?

MR. CROKE:   Objection, mischaracterizes testimony again.

A.   That's not the evidence I have given.  In terms of -- we talked about them having broad authority.  We've gone through the powers which vested them, including powers which would allow them to realize



Page 110

assets without further sanction of the court.

There is also powers that might fall outside those narrow categories in which you would seek the sanction of the court. But it is incorrect to say, as we've gone through it, that the only way in which you can realize assets is with the sanction of the court.

Q.   Now I think you are mischaracterizing my prior testimony.

Let's go to the next.   Okay.

We are still in paragraph 23 of your declaration.   About halfway through the paragraph, I'm going to read aloud.

In addition, the BVI orders provide, in material part, that the powers expressly granted to the JPLs are to the exclusion of any power exercised or purported to be exercised by an existing director of each debtor.

Can you point me to where in the order it provides that?

A.   I think that's a reference to paragraph 9.



Page 111

Q.   Would you read paragraph 9 of the order aloud?

A.   The powers set out in paragraph 3 above are to the exclusion of any power exercised or purported to be exercised by any existing director of the company, insofar as such powers concerns the affairs of the company and its assets within the jurisdiction of the Virgin Islands.

Q.   I don't see this limiting phrase, "insofar as...."  I don't see that conveyed in paragraph 23.

Is there a difference between the exclusion here in paragraph 9 and the exclusion as you've summarized it in paragraph 23?

A.   Where do I refer to the exclusion -- oh, I see -- the way I've described it.

I said in material part because I summarized, as I understand, the operation of that particular provision.

Q.   So "in material part" is your reference to the limitation insofar as such power?


MAGNA
LEGAL SERVICES

Page 112

A.   Given the fact that paragraph 23 is a high-level summary of the effect of the order, I am summarizing to the best of my ability, and to make it clear, my understanding of the effect of the order and the key components to it.

Q.   In paragraph 24 of your declaration, the second sentence, I will read aloud, with some ellipsis.

The JPLs are expressly empowered to, among other things...  (iv), commence and pursue proceedings in the name and on behalf of the debtors.

Now, where in the order does that sit?

A.   Can you repeat that?  Sorry.

Q.   Yeah.  Where in the BVI order is that -- is the express empowerment as described here?

A.   The express empowerment is articulating express terms that is powers, and I refer to paragraph 3 at the end of that paragraph.

Q.   Can you direct me to it in



Page 113

paragraph 3 because it's a very long

paragraph with a lot of subparts.

A.    You mean each of the component

parts?

Q.    Just (iv), commence and pursue

proceedings in the name and on behalf --

A.    Okay.  That's 3(d).

Q.    Okay.  I am going to read 3(d)

aloud.

To commence, continue, discontinue,

or defend, including by way of counterclaim

or similar response, any action or a legal

proceeding in the name and on behalf of the

company, insofar as necessary to protect the

assets and information of the company.

And then there is a bit more detail

on what that means.

I don't see this "insofar as"

phrase conveyed in your paragraph 24.

Do you see a difference in the

power as set forth in the order and the power

as summarized in your paragraph?

A.    I've summarized the broad powers.

I didn't think it necessary or appropriate to



Page 114

set out every single qualification or limitation. I don't think it's important in terms of articulating the types of powers that vest with the provisional liquidators.

Q. Is there anything else where in the declaration disclosing to the U.S. court that the powers you have summarized have imported other limitations?

A. I can't recall.

Q. Would you like to have another read -- why don't have you another read of the declaration and we will see if we can find other -- and I will let you answer the question properly.

A. So you want me to check in relation to 24(iv), commence and pursue proceedings?

Q. Yes, please.

A. Thanks for that.

I see it sets out in full the powers of paragraph 3, which include their qualification and all the other qualifications. So paragraph 51.

I also note in passing that in paragraph 43, I say that, in broad terms,



MAGNA
LEGAL SERVICES

Page 115

that JPLs carry the functions for which they
are appointed at all times subject to the
terms of the appointment orders.

Q.   I'm sorry.  Could you say that
again?

I will look at the transcript.

Your second reference was to 53
or --

A.   43.

Q.   43.  Thank you.

MR. CROKE:  We've been going for
about an hour.

MS. FEMINO:  Sure.  We can break
here.

THE VIDEOGRAPHER:  We are going off
the record.  The time is 12:43.

(Recess.)



Page 116

A F T E R N O O N   S E S S I O N

(Time noted:   1:19 p.m.)

A N D R E W   B A R R I N G T O N
C H I S S I C K, resumed and testified as
follows:

THE VIDEOGRAPHER:  We are back on
the record.  The time is 1:19.

EXAMINATION BY (Cont'd.)

MS. FEMINO:

Q.   Hi, again.

I want to go back to the BVI order,
which is Exhibit 6.  So I confess, I have
some trouble reconciling the different
paragraphs in this order and one that I find
confusing is this penal notice up at the top.

What is a penal notice?

A.   So a penal notice is a set of
wording which is required to form part of an
order granted by the BVI court, which, if
it's there and someone breaches the terms of
that order or facilitates the breach of that
order, it means that they can be liable for
contempt of court.



Page 117

Q.    You said it's required to form part of an order?

A.    Say the order did not have a penal notice and someone, nevertheless, breached it, the ability to then find them in contempt, for instance, is not there under the relevant CPR rules of the BVI.

Fundamentally, for matters of this kind, they will always involve a penal notice. Say, for instance, it was -- the extension of witness statement time period, they are not going to give a penal notice in relation to this. But where this actually relates to ceding control from one party to another and the protection of dissipation of assets and those sorts of things, is very much standard and expected for there to be a penal notice there.

Q.    Thank you.

Then just while we are kind of navigating through this order. Is there some word or what do we call, I guess, the numbered paragraphs or the lettered paragraphs?



Page 118

A.   I have to admit, I don't know if there is a specific term.  I would just refer to them as paragraph 1, 2, 3.

Q.   So the penal notice says -- I will read from the first sentence with some ellipsis.

The effect of this order is that the directors... are replaced by the JPLs.

And I know you've already said that it's not controversial under a BVI law that the directors are still directors of the debtors in our case, yes?

A.   I said that the appointment of provisional liquidators or liquidators for that matter, under BVI law, does not change the title of the directors.  They are still named as directors of the company.  It's just that their powers and their ability to exercise such powers are changed.

Q.   So how can this penal notice be correct when it says the directors are replaced by the JPLs?

A.   This is a threshold point.  The JPLs themselves are not responsible for


MAGNA
LEGAL SERVICES

Page 119

settling the terms of the penal notice.
Certainly, we are not involved in terms of
those parameters.

I'm not sure how I can -- if you
maybe reframe that question in terms of that
because I don't know how I can respond to it.

Q.   Yes.  So I'm having trouble
reconciling what you've explained to me about
the directors still being named as directors,
albeit with limited powers, with this
sentence that says the directors are replaced
by the JPLs, is this incorrect, this
statement?

A.   I don't know precisely the
intention behind the drafting of the penal
notice.

What I would say is if I was
advising any client in relation to dealing
with a penal notice, I would act with
absolute caution because the effect being
is -- the intention of being there is if you
breach the terms of this order, you can be
liable for contempt.  And obviously this
extends to those people facilitating those



Page 120

potential breaches.

Q.    But it is not your position that the directors are replaced by the JPLs?

A.    I -- in terms of the directors no longer being directors and the JPLs becoming directors, that is not the case, and I explained that previously.

My understanding of what this penal notice is either stating or trying to state, is that the powers of the directors are being replaced -- or so, the ability of the directors to manage the company, more equivalent, is being replaced by the JPLs.

Q.    Understood.

Yeah.  Because paragraph 9 of the order refers to any existing director of the company.

So even that paragraph there seems to me, inconsistent with the penal notice.

Do you agree?

A.    I don't know if I agree it's inconsistent.  The fact that -- the penal notice -- the fact you are a former director -- say you take some steps, which



MAGNA
LEGAL SERVICES

Page 121

would otherwise would be a breach of the order, that would still be a breach.

I think paragraph 9 refers to those who currently are directors.  So I think it's a slight -- a different approach in relation to it, dealing with different things.

Q.   Is there any difference between decrees set forth here in the numbered paragraph and decrees set forth here in the penal notice?

A.   I note that in one of the submissions that were filed in the application today, one of the parties -- I can't remember who, I'm afraid -- I think they sought to refer to the fact that penal notices don't form part of the order.

It's not something that I know or am aware of any BVI authority in relation to, and I haven't read the cases in which they referred to, to see whether it fits here.

I think fundamentally, if the order says to do something or not do something, I would advise my client always to act very, very cautiously in relation to those things.



And if there was any doubt as to what the effect would be, to seek clarification from the court.

I think the orders themselves allow all the parties in these instances to seek variation, direction, comfort from the court.

Q.    You mentioned something was filed in a skeleton in BVI this week?

A.    It might have been the Kobre Kim one.  I can't remember.  It was either the Campbells or Kobre & Kim.  I think you can work it out between yourselves.

Q.    Sure.

And it argued something to the effect of the penal notice is not part of the operative --

A.    I don't want to overstate it because I can't recall precisely.  I remember, having flicked through the submissions, there was some kind of reference to the penal notice.

And from memory -- I don't have it in front of me -- how it's affect within the order.  But as I've said, I haven't -- can't



26-10769-mg   Doc 49-34   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 34 -
Transcript of May 14   2026 Deposition of Andrew Barrington Chissick   Pg 124 of 293

Page 123

recall precisely what was said.  Whether it cited to authority, I haven't read that authority.  I am not aware of any BVI authority on this particular point.

And I go back to the central point which is, if the order says something and threatens contempt of court, my advice to any client would always be to act very, very carefully here.  And especially in circumstances where there is express powers to seek comfort from the court, that would probably be my first course of action, if there was any doubt.

Q.   I might just ask you to -- if possible -- I want your answers to be complete, but if you can limit them to my questions, it will get us all through this faster for the rest of the afternoon.

That notion that a penal notice is not part of the operative body of an order, had you ever heard this idea before under BVI law?

A.   It's not something I've ever come across.



Page 124

Q.    You said you are not aware of any BVI authority either way on the question of the penal notice being part or not?

A.    I am not aware of any BVI authority dealing with penal notices in terms of -- when you say either direction, I don't think the question has ever been -- to my knowledge, anyway -- ever been dealt with under the BVI court.

Q.    What about under Cayman law, to the extent you know Cayman law?

A.    I don't know any other jurisdictions to get to the end of thing, save that -- I did check which jurisdictions the authority cited in whatever submissions they were, which jurisdiction they were from. But I haven't read any cases in relation to this particular point.

Q.    Okay.  Sorry to do this.

This is under English law also, this is true?

A.    Yeah.  I don't know any authorities in relation to it.

Q.    Do you have a view as a matter of



Page 125

BVI law on whether the penal notice is part

of the operative section of the -- let me

rephrase it.

Do you have a view as to whether,

under BVI law, a penal notice forms the

operative part of an order?

A.   I would work on the basis that you

need to comply with it.

Q.   So to the extent -- if a penal

notice is somehow facially inconsistent with

specific terms in the enumerated paragraphs,

do you have a view on which should trump?

A.   I think it would be dangerous to

pick and choose what should trump.  I think

if there was a risk of breaching an order, I

would advise a client to seek clarification

from the court, if the implications of

getting it wrong was contempt.

Q.   Let's take a look at your

declaration on the printed penal notices,

paragraph 23, our favorite paragraph here.

I will read from the end of

paragraph 23.

They -- the BVI orders -- also



Page 126

contain penal notices providing that pursuant to the BVI orders, the directors, former directors, officeholders, and former officeholders of each of the debtors are replaced with the JPLs, and those directors, former directors, officeholders, and former officeholders are expressly prohibited from taking any action in relation to the affairs of the debtors, without the prior consent of the JPLs.

And you've cited here to the orders at paragraph 9 and the penal notices.

Does paragraph 9 provide support for that sentence I just read?

A.   I think you are misconstruing the reference.  So the preceding sentence says, In addition, the BVI orders provide, in material part, the powers especially granted to the JPLs are to the exclusion of any power exercised or purported to be exercised by any existing director of each debtor.

That is the paragraph 9 point.  I think what I've done is I've put the two references together.


MAGNA
LEGAL SERVICES

Page 127

Q.    Understood.

Then paragraph 53 of your declaration, if you could just read the first sentence in the citation from that paragraph 53.

A.    As noted above at paragraph 23, the BVI orders further contain penal notices providing that the powers conferred on the JPLs are to the exclusion of any power exercised or purported to be exercised by any existing director or other officeholder of the debtors, insofar as such powers concern the affairs or assets of the debtors.

Q.    And there is a citation that follows the BVI orders, paragraph 9, yes?

A.    Yes.  I think that might be a typo, actually.  Because reading it now, it looks like the reference to penal notice should actually just be the provisions of paragraph 9.  I think that wording tracks.

Q.    Are you changing the citation or are you changing the sentence in this?

A.    If we look at -- if we read paragraph 53, it refers to penal notices, but



MAGNA
LEGAL SERVICES

Page 128

actually quotes paragraph 9.  So that's a typo on my part.  That was an error.  So I apologize for that.

Q.   Not a problem.  So you would just -- instead of saying penal notices in the sentence itself, you would refer to the --

A.   Yeah.  I would probably just say further -- I would take out penal notices and probably say, the BVI orders further provide, or something of that nature.

Q.   Sure.

Then if we flip to that paragraph 9 in the order, I will read this paragraph 9.

The powers set out in paragraph 3 above are to the exclusion of any power exercised or purported to be exercised by any existing director of the company, insofar as such power concerns the affairs of the company and its assets within the jurisdiction of the Virgin Islands.

That limitation there at the end, "insofar as," that is not reflected in your paragraph 3, correct?

A.   It does say insofar as.



MAGNA

LEGAL SERVICES

Page 129

Q.   Oh, gosh.  Sorry.  It's the -- my mistake.

So affairs or assets of the debtors, but then here I see in paragraph 9, it's assets within the jurisdiction of the Virgin Islands.  That's the language I don't see.

A.   Yes.  I don't refer to the reference to the Virgin Islands.

Q.   Is there a difference between assets generally and assets within the jurisdiction of the Virgin Islands?

A.   I think on a natural reading, yes. I -- for the JPLs' powers, I don't think in practical terms they will be.

Q.   To the best of your understanding, are most of the assets of the debtors located within the jurisdiction of the Virgin Islands or without the jurisdiction?

A.   The Attorney General's argument for the appointment of the provisional liquidation appointment was predicated on the understanding that the vast majority of company assets were located outside of the



Page 130

jurisdiction.

In terms of the information that we have been able to discover and that has been disclosed to us by the relevant parties, that, again, consistent with the majority of the assets being outside the Virgin Islands.

Q.   So when we talk about the practical effect of this limitation, given that most of the assets are without the jurisdiction of the Virgin Islands, is there not likely to be some practical effect from this limitation?

A.   I don't agree with that, no.

Q.   Why is that?

A.   In terms of the JPLs' powers, I do not consider there to be a geographical limitation in relation to assets, wherever they're located.  The purpose and the authority that vests in them relates to company assets generally.

Insofar as the directors themselves, one may make some arguments as to the effect of paragraph 9.  I am not aware of any arguments they've made in relation to that point, save that, I didn't know there


MAGNA
LEGAL SERVICES

Page 131

was a reference in one of the submissions, which I've seen in the last couple of days. But I can't remember precisely what was said in relation to that or what the point of that argument was.

Q.   So if I understand what you just said, the JPLs have powers with no geographical limitation -- sorry.

The JPLs' powers with respect to assets have no geographical limitation?

A.   I agree with that, yes.

Q.   Okay.  9 seems to be saying that the exclusionary effect of those powers does have some kind of territorial limitation.

Does it not say that?

A.   There is some wording in there which refers to assets within the jurisdiction of the Virgin Islands and in the context of the directors powers.  Precisely the intent and the effect of that one order, as far as I am aware, has not yet been tested by the BVI court in these particular proceedings, nor has it been ventilated in correspondence between the parties.


MAGNA
LEGAL SERVICES

Page 132

Q.    Is there a reason you excluded that language from your declaration?

A.    No, I don't think so.

Q.    We can move on to paragraph 63.

I'm going to read the last sentence of paragraph 63 in your declaration.

The BVI orders expressly authorized the JPLs to seek recognition of their appointment and of the BVI proceedings in foreign jurisdictions, expressly including the United States, and to act on behalf of the debtors for those purposes.

Then there is a citation, BVI orders, paragraph 3(c).  If we can go to that 3(c) paragraph in the order.

And Andrew, if you can read out 3(c) for me.

A.    To seek the recognition or its equivalent of the appointment of the joint provisional liquidators in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, Thailand, and Cambodia, or elsewhere, the purposes of securing, realizing, and remitting assets to the control of the joint


MAGNA
LEGAL SERVICES

26-10769-mg Doc 49-34 Filed 05/21/26 Entered 05/21/26 15:29:05 Exhibit 34 - Transcript of May 14 2026 Deposition of Andrew Barrington Chissick Pg 134 of 293

Page 133

provisional liquidators, and for the purpose of obtaining access to and control of the records of the company.

Q. In your view, are the JPLs authorized to seek recognition for other purposes than those stated here?

A. Yes, they are. Subject to the sanction of the court.

Q. So if they seek it for these purposes, they don't need further sanction. But if they sought it for other purposes, they would need sanction?

A. I think that's correct. Let me just reframe. I will articulate my understanding of it.

So the express powers under 3(c), as previously discussed, grant the JPLs take certain steps without further sanction of the court. There was broad authority, broad powers, to seek recognition of liquidators. If there were other reasons by which the JPLs may want to seek recognition, for instance, or take other steps, they have the authority to do so, but they would need to get the



Page 134

sanction of the BVI court, whether before

taking those steps or subsequently to -- just

get retrospective approval in relation to

them.

Q.    Did the JPLs seek further sanction

of the BVI court before they commenced the

Chapter 15 proceedings?

A.    No.  We proceeded on the basis that

such power was available under paragraph

3(c).  Based upon my review of the

submissions, it's not been raised by anyone

that the JPLs have been acting outside of

such powers.

Q.    Is it your position that the JPLs

filed a Chapter 15, quote, for the purposes

of securing, realizing, and remitting assets

to the control of the JPLs and for the

purpose of obtaining access to and control to

records of the company?

A.    That is my position, yes.

Q.    Is the realization of assets

included in these stated purposes?

MR. CROKE:  Objection to form.

MS. FEMINO:  I will withdraw the


MAGNA
LEGAL SERVICES

Page 135

question.

Q.   So in your paragraph 63 in your declaration, you did not include this limiting language, for the purposes of...

Is that correct?

A.   That's correct in relation to that paragraph 63.  But I know I specifically referred -- we know No. 1, I referred to the full powers of 3(c), I think it's at paragraph 51, and I seem to recall that I did also refer to the purposes of them seeking recognition in the declaration in general.

That's my recollection anyway.  But it certainly is referred to in paragraph 51.

Q.   Then paragraph 67 of your declaration, at the end of that paragraph, you also reference the BVI court expressly contemplated relief when it authorized the JPLs to, quote, seek recognition or its equivalent of their appointment in the U.S.

The limiting language on purposes is also omitted from 67, yes?

A.   Paragraph 67 states I think in quite precise terms the fact that there is



Page 136

the ability, expressly contemplated by the BVI court, to seek recognition.

I didn't see the need to set out for the five lines of qualifying language in relation to that.  I referred expressly back to paragraph 3(c), said that if the court was minded to, they can refer back specifically to that provision.

Q.  I'm sorry.  If we go back to 63 again.

The BVI orders expressly authorized the JPLs to seek recognition...

To seek recognition.

Is it your view -- we talked earlier about how liquidators, generally, can sometimes act as liquidators on behalf of the company, and they sometimes cause the company to act.

Does that sound --

A.  Yes.  We discussed the ability of the JPLs to do stuff in their own capacity and in the name and on behalf of the company.

Q.  As I understood, when they do things in their own capacity, is it not



Page 137

always on behalf of the company?

Like the -- is there a distinction between the liquidator acting as a liquidator of the company on the company's behalf versus the liquidator causing the company to do something as the company?

A.    We talked about this previously. Yes.  Because, one, the JPLs or the liquidators are exercising their statutory or court-appointed rights in their own capacity, obviously, in their capacity as a liquidator, but still in their own names.

The second option would be where they're causing the company to do something because they are obviously agents of the company as well.

So an example which I have used before, if the company is suing someone under contract, it's not the JPL, there is no contract with the JPLs.  It's the company would be the claimant or plaintiff in those particular proceedings.

Q.    Which of these two things do you see contemplated here in this language?



MAGNA
LEGAL SERVICES

Page 138

A.   Well, so --

MR. CROKE:  Objection to form.

Which language?  Just so we are talking about the same thing.

Q.   The last sentence of paragraph 63 --

(Technical difficulty.)

(Off the record at 1:53)

THE VIDEOGRAPHER:  We are back on the record.  The time is 1:56.

BY MS. FEMINO:

Q.   We might have to do that again.

So I was saying which of the two hats does this -- we talked about there being two ways JPLs can act as the JPLs on behalf of the company, or they can act -- they can cause the company to act.  And I asked which of those two things is authorized here in the sentence.

A.   Yes.  Okay.  In the BVI and other common law jurisdictions, which I've dealt with or generally aware of, it would typically be the JPLs in their own capacity doing that.


MAGNA
LEGAL SERVICES

This particular provision of paragraph 3(c) refers to a number of other jurisdictions, and will say they have real a catchall in terms of or elsewhere.

So in terms of my reference in paragraph 63 in terms of adding on behalf of the debtors, that was -- I want to make clear that save recognition had to be done through the companies in those jurisdictions, and it wasn't that the JPLs will be precluded from that.

Q.   Got it.

So if you are in a jurisdiction where recognition is sought by the debtors, you would still be authorized under this?

A.   Yes.

Q.   And if you are in a jurisdiction where recognition is sought by the liquidators or provisional liquidators, that is also authorized by this?

A.   Correct.

Q.   Okay.  How -- which of those two routes is done in Singapore?

A.   I -- it would be the JPLs in, my



Page 140

experience.

Q. And that's -- is that a Singapore
law matter?

A. Singapore is based on English
common law and there is a high level of
interaction between the Singapore and the BVI
court. And I worked on Singapore
recognition, so I am aware of it. I'm not a
Singapore lawyer, but for the benefit of my
own experience, I know that it's through a
JPL application.

Q. Do you know how it's done in Hong
Kong?

A. Hong Kong, again, is based on
English common law. So it would be the same.

Q. Do you know how it is in the U.K.?

A. U.K. is the same.

Q. Do you know how it's done in the
U.S.?

A. Well, my understanding is from the
U.S., it's the JPLs bring in the application.
But that's obviously for the benefit of these
particular proceedings.

Q. Is it fair to say that's with the



Page 141

benefit of your U.S. counsel as well?

A.   I mean, I've obviously previously worked on other Chapter 15s.  I think just my working assumption and understanding was it was JPL led.

Q.   You've not seen anything in this case to make you think otherwise?

A.   We have only done one recognition, which is the U.S.

Q.   You have not seen anything in these Chapter 15 cases to make you think recognition is sought by the debtors?

A.   In these Chapter 15 cases, this particular application is being brought by the JPLs.

Q.   And that is a question of U.S. law, correct?

A.   What is?  Sorry.

Q.   Whether the application for recognition is sought by the liquidators or by the companies?

A.   Again, I'm not a U.S. lawyer, but my expectation is where you are seeking status in a foreign jurisdiction, the law of



Page 142

that foreign jurisdiction is going to be the one which determines the proper route and the powers that vest in you.

Q.   I think we might be done with this painful review, sorry, of your declaration, and we might be moving on to the second declaration, which will be faster.

So that's Exhibit 4 --

A.   4.

Q.   Thank you.  And paragraph 12.

If you could just read the first sentence of this paragraph 12, please?

A.   From the issuance of the BVI orders on January 9, 2026 through the date of this supplemental declaration, as a matter of BVI law, the BVI orders for the appointments of JPLs operate to divest the debtors' directors powers (and in particular the power of management) by conferring those powers hitherto to exercisable by the directors onto the JPLs.

Q.   Am I right that there is no citation here in your declaration?

A.   That's correct.



MAGNA
LEGAL SERVICES

26-10769-mg   Doc 49-34   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 34 -
Transcript of May 14   2026 Deposition of Andrew Barrington Chissick   Pg 144 of 293

Page 143

Q.   Can you show me where in the BVI orders, what paragraph of the BVI orders --

A.   It's not found in the BVI orders. It's trite law as a matter of BVI law.

Q.   It's what law?

A.   Trite.  T-R-I-T-E.  It's well established.

Q.   Is it all the debtors' directors powers that are divested?

A.   If you read the rest of the paragraph, I say, This means that control of the debtors was conferred onto the JPLs and that no other person or entity, including for the avoidance of doubt any directors of debtors has authority to represent or speak for the debtors in any tribunal both within and outside of the British Virgin Islands, including in the United States of America, save in respect of certain limited actions (which are not applicable to these United States proceedings.)

And then I define that as the residuary powers and then there is a further paragraph where I discuss the residuary



Page 144

powers.

Q.    So is it correct that all of the debtors' directors powers are divested?

A.    I don't say that in the -- in there.  I make it clear in that second part of the paragraph that certain powers are reserved.

And I say, the appointment of JPLs operate to divest the directors' powers.  It does not say all of the directors' powers.

Q.    Sure.

Is it correct to say that the orders divested most of the debtors' directors' powers, rather than all?

A.    As I explain in the supplemental declaration, there are certain limited residuary powers that continue to be deferred on the directors.  So it follows that, yes, most, but not all powers are divested away from the directors.

Q.    Let's talk about these residuary powers.

What is a working definition we can use -- explain to me, a non-BVI lawyer, what


MAGNA
LEGAL SERVICES

Page 145

residuary power means.

        A.    Okay.   There are powers that notwithstanding the appointment of a provisional liquidator or a liquidator, continue to sit with the directors, insofar as it relates to their ability to direct or control the company.

              Actually, let me rephrase that.  To direct or take steps on behalf of the company.

        Q.    How do you know what is a residuary power and what is not?

        A.    You would look at authority. Essentially, it is steps that, logically speaking, would need to be conducted by the directors in the context of the liquidators and JPLs appointment.  And the authority that we have seen refers to contesting the originating application, seeking the discharge or variation of provisional liquidation orders, and should there be a determination of the winding up petition and going to full liquidation, the directors again will have an inherent and longstanding


MAGNA
LEGAL SERVICES

Page 146

power to appeal that decision.

Q.   Sorry.  I'm just reading -- you're like me, wordy lawyers, both of us.

You said here in your answer, it's things that logically speaking would need to be conducted by the directors in the context of the liquidator's appointment.

What do you mean by logically need to?

A.   Well, in circumstances where it could not be for the JPLs to do it.

Q.   Why would it not be for the JPLs to do it?

A.   I mean, it's difficult to think of a specific example in relation to it.

Q.   What about --

A.   Actually I've given specific examples.  Contesting the winding up petition, appealing the winding up petition.  And in the context of the provisional liquidation order, seeking a variation or a discharge of that variation order.

And I should say that final limb is very broad because it gives a mechanism by


MAGNA
LEGAL SERVICES

Page 147

which a director can, in the parameters of the BVI court proceedings seek declarations or seek relief. That is the outlet by which the directors can seek to exercise their powers, not anything else.

Q. So these examples you gave -- you had three, right?

A. Yeah.

Q. Contesting originating applications, seeking to discharge a variation of the liquidation orders and --

A. And the appeal.

Q. -- the appeal.

All three of these are opposing something the JPLs are doing? Put a finer point on it.

What do these things have in common that makes them residuary?

A. Well, in relation to contesting the originating application and the appeal, obviously, the JPLs are not applicants in those proceedings.

Q. Not applicants?

A. Not applicants -- claimants. Not



Page 148

petitioning creditors, for instance,

petitioners.

So the JPLs do not -- are not the ones who bring a winding up petition. That's a third party. The company itself would be the party to contest that winding up petition. In most circumstances, it is not for the JPLs to contest or otherwise be engaged in their own appointment. It follows it must be for the directors to take those steps.

The other example in relation to various discharge of the order, that can be in relation to the applicant, petitioning creditor, or it can be, as we have this today, in relation to steps taken in relation to the JPLs.

But as I've mentioned, the proper forum for those steps to be taken is within the parameters and under the supervision of the BVI court.

Q. Is the idea that a JPL is not going to seek its own discharge, is that why it has to be left to the company?



Page 149

A.    I don't agree with that logical reasoning.  For example, the appointment order itself has express wording which allow the JPLs to seek their own discharge.  So that's not the logic behind it.

I think fundamentally, in circumstances where the company is facing a winding up petition, it would be incumbent upon the directors to have that control in terms contesting those proceedings.  But that is very, very limited, as I made clear in terms of just citing those three examples.

Q.    Even though the JPLs can seek their own discharge, it's still also a residuary power?

A.    The fact that the JPL can seek their own discharge, it does not exclude the directors of seeking the discharge with a variation of the order, and there is express wording to that effect also in the appointment order.

Q.    You mentioned authority establishing what are residuary powers and what are not.



MAGNA
LEGAL SERVICES

Page 150

What authority do you have in mind?

A.    I can't remember the precise cases, but they've been cited in our submissions. From memory, I think the same authorities have been cited in all the parties' submissions.

Q.    You mean the submissions this week in BVI?

A.    Correct.  Sorry, if I wasn't clear.

Q.    No, not at all.

MS. FEMINO:  Let's get the skeleton for the JPLs filed two days ago.

(Chissick Exhibit 8, Walkers Skeleton, marked for identification.)

Q.    So this is the skeleton submitted by Walkers on behalf of the JPLs for the hearing that's happening today; is that right?

A.    That's correct.  It has been drafted by Michael Gibbon KC, John Colclough, and my partner, Oliver Clifton, from my BVI office.

Q.    Do you want to -- would you please have a look for the authority you were



Page 151

thinking of.

A.   My reference was to a number of
authorities.

Q.   We use authorities as plural.

A.   So the ones I've been aware of
Union Accident Insurance.

Q.   Can you direct me to where it's
cited?

A.   Yes, paragraph 23.

Q.   If you will just give me a minute
this time.

Here in the first sentence of this
paragraph 23, it states, The starting point
when considering the residuary powers of
directors during a provisional liquidation is
the English High Court case of Re: Union
Accident Insurance 1972, 1 WLR 640.

So you agree this case is -- when
you say the starting point, so it's a
meaningful authority?

A.   It is the -- as I understand it to
be, it is the main or one of the main
authorities in relation to this particular
point.



26-10769-mg   Doc 49-34   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 34 -
Transcript of May 14   2026 Deposition of Andrew Barrington Chissick   Pg 153 of 293

Page 152

Q.   But it's not a BVI law case?

A.   Sorry, as I explain in my -- I think I explained in my main declaration, BVI law is based on an English law, although separate from it.  So in practical terms, English case law is not directly binding upon BVI law.  And where there are statutory differences, then obviously, it may well be that the authorities will diverge.

When it deals with issues of principle or the relevant statute provisions are so similar that it makes sense for English law to be followed, then English authorities will be highly influential on the approach that the BVI courts will adopt.

Q.   So this question of residuary powers, is one of those questions where English law would be highly influential on the answer under BVI law?

A.   It remains to be seen because obviously these matters before Justice Wallbank today, on the basis, from recollection, all of the parties have cited or referred to this particular authority and


MAGNA
LEGAL SERVICES

Page 153

probably others within here as well.

          And my educated guess is that it would have an influence on the BVI court's decision.  But fundamentally, it is a matter for the BVI court to decide how it wishes to proceed.  And it's not for me -- I'm not going to say whether the court will prefer or not prefer an English authority.

     Q.    Sure.  But in your capacity as a BVI law -- BVI insolvency law expert, you certainly find it persuasive?

     A.    Where there are English authorities, which go to a point where essentially the same process would apply in the BVI, then they will be highly influential.  And typically speaking, that can be a very strong guide as to how the BVI court will proceed.

     Q.    And is this such a case where it's essentially the same process would apply in BVI?

     A.    You need to explain.

     Q.    I will read back your answer just now.  I said -- I asked if you found this



Page 154

case persuasive in your capacity as a BVI
insolvency law expert.

And you responded, Where there are
English authorities which go to a point where
essentially the same process would apply in
BVI, then they would be highly influential.

And I'm asking you to apply that
general rule to this specific residuary
conversation.

A.    Okay.  I'm aware that in England
you have provisional liquidators and that
typically speaking, in terms of doing my
insolvency work, English law concepts are
highly influential in relation to the outcome
as a matter of BVI law.

Accordingly, in relation to this
authority and other English authority that
has been referred to in our submissions, I
suspect it will be material to the court's
decision.

Q.    As a matter of BVI law, do you
think that instead of predicting what the BVI
court will find material, as a BVI law
expert, on this particular issue of residuary


MAGNA
LEGAL SERVICES

Page 155

powers, are the processes similar enough in the jurisdictions that Union Insurance should be persuasive?

A.   In terms of my understanding of how the law operates in relation to provisional liquidations, and the terms of the appointment order, my understanding, honestly held belief, is that residuary powers that sit with the directors are limited to contesting the winding up petition, appealing the winding up petition, if it's granted, or seeking a variation of the discharge of the appointment order.

Q.   That's really not my question.

Are the liquidation processes in England and in the BVI similar enough that English law authority should be persuasive on this point of residuary powers?

A.   I would anticipate, yes, English authority will be persuasive.

Q.   Now, this Union Insurance case. This dealt with provisional liquidators or full liquidators?

A.   I would need to remind myself by



MAGNA
LEGAL SERVICES

Page 156

reading it.

Q.    Please.

A.    Paragraph 23 states, The U.K. Department of Trade and Industry presented a winding up petition and obtained an order appointing provisional liquidators.

So my working assumption is unless something has gone wrong in the submissions, there is provisional liquidation.

Q.    I know you were preparing for this deposition, understandable if you weren't in the weeds on the submission.  But have you read Union Accident?

A.    I have read it.  Actually, let me be clear.  I got a reported judgment in relation to it.  Sometimes it's unclear when you get English judgments whether it's the full report or whether it's like a summary.

It seemed quite short to me, but I have read the judgment in relation to it.  I don't know if it's the one exactly -- the law report cited is the one here.  I haven't gone through to check the citation.

Q.    No expectation that you would have.



Page 157

I see that Walkers' skeleton here quotes from the case.  Could you read that block quote.

A.   It is, of course, well settled that on a winding up, the board of directors of a company becomes functus officio and its powers are assumed by the liquidator.  My attention was drawn to In Re Mawcon Limited, 1969 1 WLR 78, where Pennycuick J stated, in effect, that the appointment of a provisional liquidator had the same result.  No doubt that is so, but it is common ground that notwithstanding the appointment of the provisional liquidator, the board has some residuary powers.  For example, it can unquestionably instruct listers and counsel to oppose the competition, and if a winding up order is made, to appeal that order.  End quote.

MS. FEMINO:  I think we are up to Exhibit 10 now -- 9.

(Chissick Exhibit 9, Union Accident Insurance Judgment, marked for identification.)



Page 158

Q.   I represent to you that this is the -- do you call them opinions as we do? Opinion?

A.   Judgment.

Q.   This is a judgment from the Union Accident case cited.  Any reason to -- do you see any reason to disagree with that assertion?

A.   If I'm going to be difficult, I think the citation actually looks different.

Q.   Okay.

A.   So if you look at the top.

Q.   You are going to have to explain this to me because --

A.   I don't understand it either.

Basically you can see 1105 there, it says CHD.  I don't know whether it's precisely the same reference.

I'm very happy to presume on the basis this is the Union Accident one.  I should say when I said I read a judgment -- it isn't this one.  I read a shortened version in relation to it.  So I haven't read this particular version of this judgment



Page 159

before.

Q.    It does have your block quote in it.  So we can be fairly confident we are in the right place more or less.

And I will direct you to that quote in context here at the very end, the second-to-last paragraph?

MR. CROKE:  The last page?

MS. FEMINO:  It's the last page. It's numbered 1113.

Q.    And the second-to-last paragraph, about halfway through that paragraph is the sentence, It is of course well settled...

I will give you all a minute to find that.

MR. CROKE:  Okay.

Q.    So that is the language we just read from your skeleton, Walkers' skeleton, paragraph 23.  And that block quote in your skeleton ended with, to appeal against that order.

If you could, Andrew, read let's say the first few sentences of the paragraph that follows.


MAGNA
LEGAL SERVICES

Page 160

A.   Do you want me to read out?

Q.   Yes, please.

A.   The issue is to the extent of those residuary powers and in particular whether they extend the launching of the present motion.  I think that it may sometimes be helpful to test the matter by considering the other side of the coin.  Namely, to inquire whether the power which the board is said to have lost is one which can be said to have been assumed by the liquidator.  If the answer is that it cannot, that may be a good reason for saying that the board still retains it.

Clearly, for example, as I have already indicated, the power to instruct solicitors and counsel on the hearing of the winding up petition is not a power which anyone can suggest has passed to the provisional liquidator, and therefore, the board retains it.

Q.   Great.  Thank you.

A.   Shall I continue?

Q.   I'm good there.



This sounds like the explanation you gave me earlier for residuary powers.  Is it -- is your view of residuary powers consistent with this test as stated here?

A.   I would need to think.  I mean -- I was happy with my way of framing residuary powers.  I think there is some nuance in relation to this particular wording.  Because I recall one of the parties has cited this in correspondence.

So this particular paragraph is not something which is new to me.  It might have been Kobre Kim may have raised it in correspondence.

I think fundamentally, if it's the case that the position -- the argument is that anything the liquidators do, there is cart blanche for the directors of the companies to intervene and try to contest that.  That plainly cannot be correct.

And I include intervening in the Chapter 15 proceedings as something which is excluded from that.

My understanding -- sorry, I will



Page 162

continue.

The key point is, as set out in my declaration and also in our submissions, is that the power by which you may -- a party may want to address steps being taken by the provisional liquidators, is in the context of the BVI proceedings, and there is express power to do that.  To go beyond that is not permitted, in my mind.

Q.   Okay.  I do want to try to keep your answers somewhat constrained to my questions.  I want your answers to be complete.

But the question is just this general one of whether you agree with this test as articulated by Union Accident.

MR. CROKE:  Objection.  Asked and answered.

You are asking him to say whether he agrees with a paragraph that he just explained had a lot of nuance and gave you a very detailed answer to what he believed.

Q.   We are going to have to go back and



Page 163

find the articulation that the test has

stated.

This is from the transcript

earlier, your articulation.  Things that

logically speaking would need to be conducted

by the directors in the context of the

liquidators' appointment.

All right.  Sorry to do this to

you.  Could you read the rest of the

paragraph?  So you left off with, if that is

true.

A.    Okay.  If that is true, in regard

to the petition itself, it is, in my

judgment, equally true of interlocutory

proceedings, which are such that it would the

not be appropriate for the provisional

liquidator to give instructions on behalf of

the company.

A motion to discharge the

provisional liquidator on the ground that he

ought never to have been appointed, clearly

falls within that category.  And in those

circumstances, I, therefore, dismiss the

motion with costs and make no other order in



Page 164

regard to costs.

Q.   All right.  So this case -- am I right that this case stands for the proposition that residuary powers can include interlocutory proceedings?

A.   Well.  Yes, it refers to interlocutory proceedings.  They -- I would be nervous about saying that there is a total answer in relation to the particular position we are in.  Because obviously, the fact pattern here is rather different.

From my recollection in terms of this particular case, it was dealing with the discharge of an appointment for a provisional liquidation appointment.  That application failed and then the provisional liquidators at that stage were saying that the directors did not have the authority to take those steps in the name of the companies.  And, therefore, in reality, the lawyers who had acted on those instructions, had done something without authority and were liable for costs.

I think that's a very different



Page 165

fact pattern to what we are facing here.

Q.   Sure.  I only asked if the case stood for the proposition that residuary powers can include the right to participate in interlocutory proceeding.

A.   It refers to the fact that, yes, interlocutory proceedings are, in principle, a category within which such authority might vest.

Although I note, does not refer to intervening and recognition proceedings or anything like that.

Q.   My question has nothing to do with our case or recognition proceedings.

It was a question about what this case stands for, and if it includes interlocutory proceedings.  When I do ask questions applying these principles to our case, I do want to hear everything you have to say about that.

Going now to your -- back to your -- where were we on this.  Your declaration No. 2.  We were in paragraph 13, and I will just read the first sentence of


MAGNA
LEGAL SERVICES

Page 166

paragraph 13.

The residuary powers include the powers to contest the originating applications filed in the BVI proceedings, seek the discharge or the variation of the BVI orders, and should the originating applications be granted and joint liquidators be appointed over the debtors, pursue the appeal of that decision (in each case before the BVI court or the Eastern Caribbean Court of Appeals.)

Now you use the word include when you listed these items.  Do I correctly understand that that means there might be more examples?

A.    I don't know if I -- thinking back to when I wrote it, I don't think I was expressly contemplating whether there might be more.  I can't exclude the risk that there are other ones that fit within that criteria.

But as I go on to say in the rest of that paragraph, I'm very clear that such powers do not extend to challenging the Chapter 15 motion.



Page 167

Q.   Now that we've read Union Insurance together, would you include interlocutory appeals in this list?

A.   Well, I say seek the discharge or variation of the BVI orders.  That is an interlocutory application.  And Union -- what's it called -- Union Accident, that is about the discharge of a provisional liquidation.  So I would say it's covered that already.

Q.   And the last sentence of this paragraph 13, what is your authority for that assertion?

A.   I have not found a single example of it happening and my understanding of how BVI law functions.

Q.   Is the power to object to recognitions sought by the JPLs, a power which can be reasonably understood to have been conferred upon the JPLs?

A.   I don't agree with the premise of the question.

Q.   The premise of the question is, I'm applying the Union Accident test.  You don't



Page 168

have to agree with it, but I'm applying the test as set forth in Union Accident to our case.

And my question is, is the power to object to recognition sought by the JPLs, a power which can reasonably be understood to have been conferred upon the JPLs?

A.   Okay.  There were various elements to your question, which I think is quite important to unpack.

So in the current circumstances, what is happening is that the directors of the company, purportedly in the name of the companies, are intervening in the Chapter 15 proceedings.

The position is that that is not available as a matter of BVI law under the terms of the appointment orders.  If the proposition is, can the companies object to steps taken by the JPLs?  The answer is, yes, you can do so within the parameters of the BVI proceedings.  That is the proper forum for doing it and they have the power to do so.  But to take steps in the name of the



Page 169

company outside of that, is not available to

them.

So I want to be absolutely clear

that it's not that the liquidators have free

rein.  The ability for them to exercise any

powers or for the respective companies to try

to challenge those decisions is in the

context of the BVI proceedings.

And in fact, there is a hearing

going on right now which goes on to these

various points.

Q.   I just want to apply this logical

test that we talked about earlier.  There are

some things that logically have to sit with

the directors because they can't have been

conferred upon the JPLs.

Let me make sure I read you back

exactly, I took a screenshot.

There are some things that

logically speaking would need to be conducted

by the directors -- in circumstances where it

could not be for the JPLs to do it.

Do you contend that logically it is

for the JPLs to object to recognition sought



Page 170

by the JPLs?

A.   I disagree with the premise of the question.  Because what we are talking about is objecting in the Chapter 15 proceedings.  The forum for objecting to steps being taken by the JPLs is within the BVI proceedings under which they have the capacity.

If you go through the order, it might be helpful, okay?  So paragraph 3(a).  If we follow the logic, the actually --

Q.   I would -- if you continue, I will ask to strike the rest of the question as nonresponsive.  My question was quite limited.

A.   I think I responded to your question.  But I have further examples which I think demonstrate the facts that as a matter of logic, it cannot function the way it's being proposed.

Q.   So residuary powers are determined by the terms of the order or are they sort of is it a logical thing what has to be residuary?

A.   Well, as I mentioned, the effect of



Page 171

the order is to vest power with the JPLs and there are certain residuary powers which obviously must fall to the directors.  My position is that intervening in the Chapter 15 proceedings is not one.

Q.   The power to seek discharge of the JPLs is a residuary power, yes?

A.   Yes.

Q.   Is that spelled out in the order?

A.   Yes.

Q.   Are there any residuary powers not spelled out in the order?

A.   Yes.

Q.   Are there any other -- withdrawn.

MR. CROKE:  Not to cut you off, but whenever is good.

MS. FEMINO:  Just give me a second. We might be done on this topic.

Yes, we may break.

THE VIDEOGRAPHER:  Going off the record.  The time is 2:46.

(Recess.)

THE VIDEOGRAPHER:  We are back on the record.  The time is 3:09.


MAGNA
LEGAL SERVICES

Page 172

BY MS. FEMINO:

Q.   Okay.  Andrew, if we can go to your declaration on paragraph 15.

A.   The first or second?

Q.   The first one, please.

We looked at this paragraph before. It asserts that for the reasons set forth below and as advised by your U.S. co-counsel, it is your view that the BVI proceedings constitute foreign proceedings within the meaning of 101(23) and the -- and that the JPLs are foreign reps within the meaning of 101(24).

And I've printed the excerpts from the U.S. Bankruptcy Code of those two code sections.  And since I'm the U.S. lawyer, I will represent to you that these are accurate and I won't ask you to confirm as much.

(Chissick Exhibit 10, Excerpts from the U.S. Bankruptcy Code, marked for identification.)

Q.   All right.  So I will read this -- let's see.  What do I want to start with.

I think I will start with 24, which



Page 173

is the term, foreign representative.

The term "foreign representative" means a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtors' assets or affairs, or to act as a representative of such foreign proceeding.

I assume you are familiar with this from your work on the declaration?

A.   Yes.  I read both of these provisions previously.

Q.   Great.  I was always taught that the definition in (24) kind of gives you two options to be a foreign rep.  You can either be authorized to administer the reorganization or the liquidation, or you can be authorized to act as a representative.

Does that seem a reasonable summary of the syntax of this definition?

A.   It's difficult for me to comment on whether or not it's accurate as a matter of U.S. law.  For common purposes, I'm happy to



Page 174

accept that's a reasonable approach.

Q.   Do you -- is your view that the JPLs satisfy one or the other or both of those definitions?

A.   I think it's probably helpful if I can go to the relevant section of my declaration.

Q.   Yes.

A.   Can you remind me which paragraph.

Q.   I had just read from paragraph 15.

A.   There is a more substantive --

Q.   Yes.  On foreign reps -- 62 is where it starts.

A.   Okay.  So I can see paragraph 63, it might be helpful to read it out.

Q.   Sure.

A.   So, the JPLs were appointed by the BVI court pursuant to Section 170 of the BVI Insolvency Act and the BVI orders.  The JPLs are officers of the BVI court and are authorized to administer and control the affairs of the debtors, investigate their activities, protect and preserve assets, and commence all defense proceedings in the name


MAGNA
LEGAL SERVICES

Page 175

and on behalf the debtors, subject to the

course of provision.

The BVI orders expressly authorize

the JPLs to seek recognition of their

appointment and of the BVI proceedings in

foreign jurisdictions, expressly including

the United States, and to act on behalf of

the debtors for those purposes.

Then I go on to say, In light of

their appointment and the authority conferred

upon them by the BVI courts, it is my opinion

that JPLs qualify as foreign representatives

within the meaning of section 101 paragraph

24 of the Bankruptcy Code.

Q.   So I've read that paragraph and I

understand the statements you've made.

I was wanting some clarity on sort

of where the rubber meets the road here; how

those facts or those assertions kind of fit

this two-pronged definition.

A.   Yeah.  I understand.  I expressly

refer to their powers, so to the extent there

is -- in the way that you've articulated it,

it may be an and/or approach in relation to


MAGNA
LEGAL SERVICES

foreign representatives.  I've obviously addressed in my part the first limb, as it were, in terms of them being authorized to administer the assets and affairs.

Q.   So here if we're going to that door 1, which is authorized...

A.   Let me be absolutely clear.  So in terms of my wording -- I've addressed that point.  I want to be clear, it doesn't necessarily mean that if I thought about it further, that that would exclude representative of such foreign proceeding.

Q.   Understood.  We will do door 2 next.

So if we are going under this as door 1, there are a few elements we have to satisfy.

Authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtors' assets or affairs.

Do you contend that it is -- they're administering -- the JPLs are authorized to administer a reorganization or



Page 177

liquidation?  Like, one or both?

    A.   Well, we are in a provisional
liquidation.  So in terms of -- there is
obviously a liquidation element to it.

        We talked about the authority of
the JPLs already, and we've gone through the
powers.  It may well be that the steps they
need to take in terms of carrying out the
duties would include a reorganization.

        But I think the main focus probably
would be the fact that is, that provisional
liquidation focus on the liquidation side of
things.

    Q.  You are an insolvency lawyer, yes?

    A.  Correct.

    Q.  In my experience, in insolvency
when we say the words "reorganization" or
"liquidation," we are talking about some kind
of debt restructuring or some kind of winding
up.

        Is that consistent with your
understanding of these terms as an insolvency
lawyer?

    A.  Can you repeat that, sorry.



Page 178

Q.   So in U.S. law, when we talk about these kind of two things in insolvency.  One is, we are keeping the company alive, we are restructuring the debt, keeping it moving.

Liquidation is the opposite of that.  It's liquidating, converting nonliquid assets to liquid ones, shutting the company down.

And there is sort of a dichotomy in insolvency work that you are going to do one or the other.  Are you familiar with this kind of dichotomy as an insolvency lawyer?

A.   I am aware of other firms in other jurisdictions maybe having a distinct insolvency team and a restructuring team.

From a BVI perspective, actually, they're often entwined.  For instance, a scheme of arrangement would be -- on your definition, I'm sure, a restructuring step, that would be something that my team would do.  A provisional liquidation can, in certain circumstances be a restructuring action as well.

So I think in terms of those clear



Page 179

lines -- certainly in terms of how I would look at it, I don't think there is such a clear demarcation.

Q.    So what do you understand the word "reorganization" to mean here in this definition?

A.    I mean, it would be organizing the company's assets, in such a way obviously to deal with whatever circumstances it's facing.

Q.    What do you understand of the word "liquidation"?

A.    Well, a liquidation proceeding is vesting control of a company to an officeholder, who then maintains and secures those assets for the benefit of creditors.

Q.    Do you view the word "authorize" here the same way you did earlier, which is it includes powers they have, but cannot yet exercise without a sanction of the court?

A.    I don't think I've thought about it in terms of that particular parameters.

Can you rephrase -- well, can you repeat the question so I understand precisely what you are asking.


MAGNA
LEGAL SERVICES

Page 180

Q.   Yeah, earlier when we looked at this word --

A.   Yeah we -- sorry.

Q.   That's okay.

When we looked at this word "authorized" in your declaration, you explained that when you say authorized, you mean things that they can do now, and you also mean powers they have but cannot exercise absent further sanction from the court, ex ante or ex post.

A.   Right.  So in broad terms, I agree that's what I said in terms of authority.

In terms of authorized here, my reading -- I haven't thought about it precisely in that particular context.  But I would say, you know, empowered in a foreign proceeding.  And that would, I think, just working the logic through, include powers that can be exercised without the sanction of the court and include powers that are granted to the JPLs, but may be exercised with a sanction of the court.

Q.   It's your position that the JPLs


MAGNA
LEGAL SERVICES

Page 181

have been authorized to administer the

liquidation of the debtors' assets or

affairs?

        A.    Yes.

        Q.    Is it also your position that the

JPLs have been authorized to act as a

representative of the foreign proceeding?

        A.    I'm not sure if I understand as a

matter of U.S. law what that means.  It's not

something from just looking at my

declaration, that I've addressed expressly.

            It may well have been explained to

me previously, but at this stage, I can't

recall.  If I had -- if you were able to

explain what that might include, I'm happy to

give my opinion in relation to that.

        Q.    Let's go through the definition of

foreign proceeding.

            The term "foreign proceeding" means

a collective judicial or administrative

proceeding in a foreign country, including

interim proceeding, under a law relating to

insolvency or adjustment of debt, in which

proceeding the assets and affairs of the



Page 182

debtor are subject to control or supervision

by a foreign court for the purpose of

reorganization or liquidation.

We can go to the paragraphs in your

declaration where you walk through these

elements, which is 55. I don't know that we

have to read them out loud, but if you want

to just refresh on paragraphs 56 to 58.

A. Thank you.

Q. What I didn't see in these

paragraphs is your explanation of the final

element of this definition, for the purpose

of reorganization or liquidation.

It's possible I missed it.

Do you at some point explain in

here why the BVI proceedings are, quote, for

the purpose of reorganization or liquidation?

A. I can't recall whether I expressly

referred to it in rest of the declaration,

but these proceedings are brought in the

Insolvency Act, in the context of a winding

up petition. And the provisional

liquidations derive out of the overarching

proceedings.



26-10769-mg   Doc 49-34   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 34 -
Transcript of May 14   2026 Deposition of Andrew Barrington Chissick   Pg 184 of 293

Page 183

So by way of example, the proceedings today taking place in the BVI, are within the liquidation proceedings.  And the powers that are being operated by the provisional liquidators are, again, within the overarching liquidation proceedings.

I have no doubt in my mind that this is a liquidation and we are in the provisional liquidation stage of that liquidation.

Q.   What makes it for the purpose of liquidation?

A.   The application is for the appointment of liquidators, and the provisional liquidators is a step taken within those proceedings.

Q.   So because they're called liquidators, is that where this is coming from?

A.   Liquidation proceedings.

Q.   But surely just the name doesn't make it a liquidation?

A.   No.  But the steps being taken and what their powers are and the overarching


MAGNA
LEGAL SERVICES

Page 184

proceedings themselves.

Q.    Which powers?

A.    These are liquidation proceedings.
So the overarching proceedings, the claim
numbers, are all in relation to liquidation
proceedings.  Within that, the provisional
liquidators have been appointed and they are
exercising their powers within their upper
parameters.

Their appointment is dependent upon
those liquidation proceedings.  Accordingly,
this is all within the context of liquidation
proceedings.

Q.    What makes is a liquidation
proceeding, besides the fact that we keep
calling it a liquidation proceeding?

A.    The AG has sought the appointment
of liquidators pursuant to Section 162(1)(c),
for the appointment of liquidators.

That was the originating process to
commence these proceedings.  That's the
overarching framework under which we are
working these liquidation proceedings.  All
the steps being taken within that are within



Page 185

those liquidation proceedings.

Q.   So because it is under a section of the Act, and -- a particular section of the Insolvency Act and because we call them liquidation proceedings, therefore, they are for the purpose of liquidation?

A.   I --

Q.   I'm looking for something substantive, right?

So I have an understanding of substantively what it means to liquidate a company.  I don't see any of those things in the powers currently exercisable by the JPLs.

So what makes it for the purpose of liquidation?  Where are we -- substantively, where is that shown?

A.   So we are talking about a collective judicial proceeding for the purpose of liquidation.  I cut out the middle part there, right?

So the proceeding, the claim number -- let's use the first claim number here.

Q.   Sorry.  What is a claim number?



Page 186

A.   Sorry.  At the top of this, I'm looking at Exhibit 3, there's something called a case number here.  And you have BVI HCOM, that's BVI Commercial Court, 2026, that's the year, No. 1, so that was the first case that the BVI court heard that year.  Right.

Each of the 30 winding up petitions, the appointments for the full liquidators have their own case number.  That is the case number for the winding up petition.

This application, in relation to the steps taken by the JPLs, is within those proceedings.  The actual application for the appointment of the provisional liquidators was within that proceeding.  It's not a standalone thing.

So every single thing that we are dealing with in these proceedings is under that umbrella of the liquidation proceedings.

(Chissick Exhibit 11, BVI Court Transcript, marked for identification.)

Q.   Exhibit 11 is a transcript from the



Page 187

BVI court from a hearing held on April 16, 2026.

Were you at this hearing?

A.   I observed it, yes.

Q.   But Walkers didn't participate?

A.   Walkers did participate.  So we appeared on behalf of the JPLs, although in terms of making submissions to the application, that wasn't our role.

Q.   That's because it was the BVI AG -- you should explain it to me.

A.   Yes.  The BVI AG is the applicant in the application, and is the one seeking the appointment of the JPLs.

The judge will sometimes, if they're minded to, ask the JPLs questions during the course of the proceedings.  So therefore, it's important that we were there and made ourselves available to the court.

Q.   Understood.

So if we could go to page 112.  And I will read here from the court -- the BVI court speaking.

Liquidation, as this court normally



Page 188

understands it, means that a court-appointed officeholder takes complete control over the company with the brief that the officeholder has to get in the assets of the company and then pay off its liabilities and then see how much is left and then conduct a pari passu distribution of the assets to either its contributories, if it's a solvent company, or the assets to the creditors, if it's an insolvent company. Whereupon the company is then usually dissolved and finally put to bed, as it were. That's what normally happens.

This is much better articulation of liquidation than I could have managed here on the spot. That is my understanding of liquidation.

Is that happening in these BVI proceedings?

A. If the order is granted, I think as anticipated by Justice Wallbank --

Q. Which order?

A. Sorry. The winding up petition is granted, then it would be placed into full



**MAGNA**
LEGAL SERVICES

26-10769-mg    Doc 49-34    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 34 -
Transcript of May 14    2026 Deposition of Andrew Barrington Chissick    Pg 190 of 293

Page 189

liquidation.

The JPLs' current mandate, as we discussed previously, is primarily to maintain the value of the assets. In most circumstances, as he talks about in terms of paying off liabilities, et cetera, it's obviously premature in terms of where it would be and it's not something which is going to be central to what the JPLs are doing.

But as I mentioned before, the fact that it's not central to what the JPLs is doing, does not preclude them from having those powers. And also the fact that they expressly have the powers of a liquidator subject to, I think we talked about qualifications or exceptions or something before.

Q.  Let's put aside the powers for a second. Because I think we probably exhausted the powers they have and don't have.

But really, just for the purposes of reorganization or liquidation, are the BVI



Page 190

proceedings for the purpose of liquidation in
this meaning of that word?

     A.   Okay.  So as I mentioned a few
minutes ago, the liquidation proceedings, the
overarching proceedings under which we are
all functioning, yes, it's a liquidation
application.  And within that, the
provisional liquidators, as interim
appointees, which I understand is expressly
referenced in both the U.S. code and the BVI
equivalent, are operating in that particular
purpose.

          So if we are talking about are we
in liquidation proceedings?  Yes, we are.

     Q.   But we are not talking about that.
We are talking for the purpose of
liquidation.

          Now, it's not certain that we will
end up in this scenario, as the judge has
described it.  Right?  It's not certain we
will end up there?

     A.   The judge has reserved judgment in
relation to this.  So we don't know whether
he will grant a full winding up petition or



Page 191

whether he will discharge it.

Q.   How can it be that the proceedings are for the purpose of liquidation, if we don't even know if we will end up there?

A.   I'm not sure if I follow the question.  Can you restate that.

Q.   The provisional proceedings that are happening now may result in discharge or they may result in the full-blown liquidation described here.  We don't know yet which one we will get.

So how can we say the proceedings are for the purpose of one outcome that may or may not come to pass?

A.   I'm sorry, I'm still unclear on what you are asking.

Q.   Has anyone stated anywhere that the purpose of these proceedings is this kind of liquidation?

A.   The purpose of the proceedings -- is bear in mind I don't say what proceedings -- it's the liquidation of the company.

Q.   Sorry, I will say that's nonresponsive.



Page 192

Has anyone, any party to the BVI proceedings stated anywhere that the purpose of the provisional liquidations in this type of liquidation, as described by the judge?

A.    In terms of "this type," you mean in terms of realizing value --

Q.    Distributing money, yeah.

A.    That would be the end goal, if the liquidation application is granted.

Q.    So I will ask, has anyone anywhere on -- anywhere in the BVI proceedings, stated that the purpose of the proceedings is this type of liquidation?

A.    We need to go back to the AG's evidence and written submissions.  The purpose of their proceeding is to place the company into liquidation.  Their evidence is in relation to putting the company into liquidation.  These proceedings are liquidation proceedings.

Q.    So you think the AG's written submissions in evidence may contain a statement that the purpose is full-blown liquidation, distributing claims,



Page 193

distributing money?

A.   Their originating application is for the appointment of liquidators.  That is how the proceedings were commenced.  That is the proceedings under which we are operating.

Q.   I do understand that, but I will keep asking the question.

A.   It's not clear to me what else it could be.  They are seeking the appointment of liquidators --

Q.   I'm not asking you what's in the BVI AG's head or with a hidden purpose.

I am telling you, when I use the word "liquidation," I mean it in the same way your court is describing it here.  That's what I mean when I say liquidation.

Is there anything -- has anyone stated in the BVI proceedings that the purpose of these provisional liquidations is this type of liquidation?

A.   We would need to go back and check the AG's submissions and evidence.  From recollection, there are references to realizing assets for creditors.



Page 194

Fundamentally, the powers that will be granted to the liquidators will be subject to the order of the court.  There is a draft order attached to the originating application which sets out what those powers would be.

From recollection, that includes the powers under Schedule 2, which provides in express terms to sell assets, et cetera.

So in terms of the relief which is being sought from the BVI court in the originating application, it very much fits the standard form powers of a liquidator.

Q.   Let's continue reading from this transcript.

Following from where I left off now on page 113.  Still the court speaking.  The court has just described liquidation.

In this case, you are trying to use this liquidation to basically block the assets of the companies and prevent people dealing with them, i.e., putting them in more or less the same kind of refrigerator as in the U.K. and what OFAC has done --

A.   Sorry to interrupt.  I thought you


MAGNA
LEGAL SERVICES

Page 195

said -- in this case, are you trying.  You said you are trying.

Q.   I'm sorry, are you trying.

A.   He is asking a question.

Q.   Same kind of refrigerator as in the U.K. and what OFAC has done.

And then it's Sir Eadie, who is--

MR. CROKE:  He is the Attorney General's counsel.

MS. FEMINO:  The attorney General's counsel.  Thank you.

Q.   Responds:  My Lord, that isn't the sole purpose of this liquidation.

And he goes on to describe what some of -- what some other purposes are.

And I will jump to his next -- at the bottom of page 113.

My submission will be that the benefits are multiple.  There are, of course, sanctions in place and the companies place reliance upon that.  But we say that isn't a complete version of what needs to happen and the public interest has different facets that could be properly and seriously served by the



Page 196

process of liquidation, which will include

investigative elements, finding out what's

been going on in the company, pulling that

information together, and reporting to the

court about it, and then going through

whatever orderly process is required or under

this court's discretion and management.  But

with a view, ultimately, to the end game that

My Lord has described, but the end game, even

if it were to happen, is an end game in which

all relevant interests, including those of

the beneficial owners of the company, will be

protected....

        But all of that would happen as

part of an orderly process and under the

direction and supervision of the court.  None

of that is achieved by the mere act of

freezing.

        So do you understand this end game

as described here to be the purpose of the

appointment of these liquidators?

    A.    Well, if we just go through the

transcript, right.  So Sir Eadie says, line

8:



MAGNA
LEGAL SERVICES

Page 197

Lord, that isn't the sole purpose of this liquidation.

So essentially, just straight there, we are talking about this being for the purpose of a liquidation.  So in terms of your question, I think that -- is that just not a total answer?

Q.   I believe we --

A.   And I think he references liquidation multiple times.  So in terms of what the framing of it, it's very clearly in the context of a liquidation.

Now, it may well be that within the liquidation, there will be different steps which would be involved.  But that, in my mind, still counts as a liquidation.  It's very clear in this exchanges between Sir James Eadie KC and the court, and this is done and clearly framed as a purpose of a liquidation.

Q.   Have there been any allegations in any of the BVI filings that any of the debtors are insolvent?

A.   Just to ensure I understand your



Page 198

question.  You are saying have there been any

allegations in the pleadings or the filings

that they're insolvent?

Q.    Yes.

A.    The AG who was made filings in

relation to these proceedings, obviously

doesn't have any insight into the financial

status of the companies.

In terms of what the JPLs have been

able to establish, you asked if we identified

creditors.  Yes, in terms of the limited

information being provided by your clients,

there is reference to liabilities being

secured by floating charges, of which no

information has been provided.

There is also the fact that there

are sanctions in positions which, just as a

matter of common sense, if there were trading

activity, those sanctions obligations would

almost certainly interrupt the normal flow of

business.  Meaning that in terms of being

able to meet the business going forward,

there would be real problems which would then

trigger the definition of insolvency under



Page 199

the BVI Insolvency Act.

Q.    But they could become insolvent?

A.    No.   That premise is wrong.   The idea that the companies are not insolvent now, we are -- well, the JPLs conducting investigations in relation to that.

There are certain companies where we know there are trade creditors and because of the sanction impositions, there were difficulties in terms of meeting those debts. So on that basis, that's insolvent.

Q.    Okay.

A.    Subsequent -- let me finish, please.

Subsequently, a number of unsigned statement of affairs have been provided to the JPLs from your clients, with very limited information.   On the basis of that, it refers to all assets being secured by floating charges.   No information provided as to the basis upon which the floating charges are granted, or the debt facilities in which they relate.

So at this time, it may well be



Page 200

that the JPLs will need to find out precisely what those obligations are and whether those companies are insolvent or not.

Q.   So have there been any allegations in filings, submissions in the BVI court, that any of the debtors are insolvent?  Just asking about the record in the BVI.

A.   I can't recall what the Campbells/BSF parties or the Kobre & Kim parties have filed in relation to the solvency.

As in relation to the Attorney General, from memory, I don't believe they have made a reference to it, nor would I expect them to, because how could they possibly know the financial status of the companies.

Q.   It's not normal to allege insolvency when you file an application for a provisional liquidators?

A.   The basis upon which provisional liquidators is appointed is not the same grounds on which you seek the appointment of a liquidator.



Page 201

If it's helpful, we can go to the relevant provisions of the basis upon which provisional liquidators are appointed and go through it.  I think it's Section 170.

Q.    That's okay.  I've been through it, but thank you.

A.    Okay.

Q.    Is it your contention that any of the debtors are insolvent?

A.    Yeah.

Q.    Which ones?

A.    Well, Noble Title -- if I take the information provided to us in relation to the unsworn statement of affairs, there was obviously some real question marks as to the insolvency of a large number of the entities.

There is the very real possibility that if it transpires that the allegations against Mr. Chen Zhi are actually true, that there will be significant claims from victims that might fall against the companies.

Obviously, in terms of the JPLs' investigations in relation to these points, we're very much early days in relation to



Page 202

that.  But we cannot exclude the possibility
there will be very, very significant claims
against the entities in relation to these
matters.

Q.   I have one more question, then I
think then I can concede the floor to Kobre &
Kim.  And this just takes us back to the
appointment order.

MR. CROKE:  Is that 3?

MR. GRIFFIN:  6.

MS. FEMINO:  You have answered this
question for me, accidently.  So I think
subject to maybe having another one that
arises from listening to you, I believe
I'm finished.

THE VIDEOGRAPHER:  We are going off
the record.  The time is 3:49.

(Recess.)

THE VIDEOGRAPHER:  We are back on
the record.  The time is 4:02.

EXAMINATION

BY MS. FORNERET:

Q.   Good afternoon, Mr. Chissick.  My
name is Martine Forneret.  I'm from the law



26-10769-mg   Doc 49-34   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 34 -
Transcript of May 14   2026 Deposition of Andrew Barrington Chissick   Pg 204 of 293

Page 203

firm Kobre & Kim.  I'm representing two of

the objecting debtors, Amber Hill Venture

Limited and Lateral Bridge Global Limited.

So I will try to kind of keep

things as efficient as I can.  I know we

covered a lot of territory today.  I may go

back over a few things, but I will try not to

retread too much of the same ground.

I would just like to start, I

think, at the beginning of the day.  This

morning you said that you were engaged by the

JPLs, correct?

A.   That's correct.

Q.   And roughly, when were you engaged?

A.   Following their appointment.

Q.   I think you said like shortly after

their appointment?

A.   Yeah.  Maybe a day or so after

their appointment.  I can't recall precisely.

Q.   And when were you first approached

by the JPLs about a potential engagement?

A.   Obviously, I need to be mindful in

terms of privilege issues.  We would have

been approached a few weeks before our



Page 204

appointment for purposes of clearing

conflicts.

Q.   Okay.  A few weeks before.  Okay --

so -- okay.

And you also stated at the

beginning of the day that you are a BVI

lawyer.  You are not a U.S. lawyer, correct?

A.   That's correct.

Q.   And you are presenting the opinions

in your declaration and your testimony today

in the context of being a BVI lawyer,

correct?

A.   Yes.  My evidence go to issues of

BVI law with the intention of assisting the

U.S. court.

Q.   And the proceedings that are before

the BVI court presently, those are

proceedings that were brought under Section

162 of the Insolvency Act, correct?

A.   So just to be clear in terms of the

scope of your questions, if you are talking

about the applications brought by the

Attorney General for the appointment of

liquidators in respect of your two clients,



Page 205

yes, they're brought pursuant to Section 162 of the Insolvency Act.

Q.   And I will also generally note that the applications that were brought by the BVI AG as against or as pertaining to Amber Hill and Lateral, were substantially similar to the applications that were brought across the board for all 30 of the debtors.

Is that fair to say --

A.   I haven't --

Q.   Is that fair to say that they're kind of brought for the same -- I will clarify that.

They were all brought under the same provisions, which is 162 of the BVI Insolvency Act.

A.   Correct.  Just to clarify my understanding.  So the Attorney General brought 30 applications all at the same time, and although I think there were -- you know, her evidence and submissions addressed a variety of companies, and I suspect there was some divergence in relation to that, fundamentally, I think they are being dealt



MAGNA
LEGAL SERVICES

Page 206

with in a practical purpose together.

Q.   And there are technically 30 separate actions before the BVI court?

A.   Yes.  So there are 30 separate claims.  As a matter of BVI law, originating applications can't be -- well, originating applications and insolvency proceedings can't be merged together.  So they will always be distinct proceedings.  But as a matter of case management, they are being dealt with together.

Q.   But they are not consolidated -- you wouldn't refer to it as a single consolidated proceeding in the BVI court?

A.   In terms of formal consolidation into a single set of proceedings, that is not available as a matter of BVI law.  Although in material part, these proceedings are being dealt with collectively.

Q.   And when you say in material part they are being dealt with collectively, what do you mean by that?

Is that from the perspective of the JPLs, the court?  I just want to understand



Page 207

what you mean.

A.    I think in terms of the various parties are engaging with matters, seem to be dealing with all of them at the same time.

So by way of example, today's hearing before Justice Wallbank is involving all of the various entities.  There is only the AG, the JPLs lawyers, and then obviously the Kobre & Kim and the Campbells parties there.

Q.    Understood.

The are collective parties are dealing with these proceedings, even notwithstanding that they are technically all individual proceedings before the BVI court?

A.    Yes.

Q.    The BVI proceedings were specifically brought under or -- the AG's applications were specifically brought under Section 162(b) and 162(c) of the BVI Insolvency Act, correct?

A.    I think it's 162(1)(b) and (c). But broadly speaking, yes.

Q.    And to make sure we are talking



MAGNA
LEGAL SERVICES

Page 208

about the same thing, those provisions refer
to instances where the court may appoint a
liquidator.  And under subsection (b), where
the court is of the opinion that it is just
and equitable that a liquidator should be
appointed; or under subsection (c), that the
court is of the opinion that it is in the
public interest for a liquidator to be
appointed.

          Is that correct?

     A.   So section 162 sets out the basis
or the grounds upon which the BVI court can
appoint a liquidator under the Insolvency
Act.  (b) is, as you say, in relation to just
and equitable grounds, and (c) is relation to
public policy grounds.

     Q.   So fair to say that if I refer to
those two grounds as just and equitable
grounds or the public policy grounds, you
will understand that's -- I'm referring to
those two sections under 162(1)(b) and (c)?

     A.   Yes, I will understand that.

     Q.   To the best of your knowledge, as a
BVI practitioner, have provisions 162(1)(b)



and (c) ever been used before by the BVI AG to seek the appointment of a liquidator?

A.   I've never been involved in a matter which involves public policy grounds. So if there have been previous actions taken, they're not ones that I am familiar with.

Q.   But you've been a law practitioner in BVI for I think 10 years -- over 10 years, according to your declaration, right?

A.   Correct.

Q.   So you are generally familiar with the kinds of matters that come up within BVI insolvency law, broadly speaking.  In the day-to-day course of your profession you have a general idea of what kinds of cases are going on?

A.   Yes, that's correct.

Q.   So just based on your general awareness, do you know of any instances -- not necessarily that you have been involved in personally, but just do you know of any instances in which 162(1)(b) or (c) have ever been invoked as the basis for the appointment of liquidators?



Page 210

A.   In terms of using 161(b), yes, absolutely.  In fact, in relation to winding up petitions, the usual approach in the jurisdiction, even in circumstances where the insolvency ground is being relied upon, is also to include the just and equitable limb, as well.

So I would be surprised actually for there to be a wind up petition which wouldn't include the just and equitable limb. The public policy limb is not something I have come across in my practice over the last 10 years.

Q.   And public policy, you mean, I think the text of the Act says public interest, but that's what you mean --

A.   Apologies.  That was me misstating. Public interest, thank you.

Q.   And when you refer to being familiar with instances where subsection (b) on the just and equitable grounds have been used before, were those instances when the AG was the one seeking the appointment of liquidators?



Page 211

A.    I've never been involved in a matter where the AG has been an applicant. All of the matters in which I have been involved in, which have included the just and equitable ground have been private parties, if I can put it that way.

Q.    And I think you said before that -- you know, not necessarily, again, that you have been involved in personally, but generally, you are familiar with instances in which the subsection (b) is used sometimes in connection with subsection (a), right?  That instance that is something you are familiar with?

A.    Yes.

Q.    In any of those that you are thinking of in making that statement, did any of those involve the BVI AG making application?

A.    No.

Q.    And we've discussed several times throughout the day that currently the JPLs are provisional liquidators, correct?

That's baked in the name joint



Page 212

provisional liquidators.

A.   That's correct.  They're provisional liquidators.

Q.   Okay.  And -- so once they are fully -- if and when -- or if they are appointed as full liquidators, then the proceedings will become a full liquidation.

Is that kind of a fair way to think about the sequence of events?

A.   The companies will be placed into liquidation at that stage.

Q.   So until the time that the JPLs convert from provisional liquidators to full liquidators, the companies are not yet in a liquidation.  Is that what you mean?

A.   They are currently in provisional liquidation.  So if we're saying are they in a liquidation?  Yes, they are in provisional liquidation.

Should the winding up petitions be granted, they will be placed into full liquidation.

Q.   Okay.  So currently, the proceedings as they stand now are what you



Page 213

refer to as provisional liquidation proceedings?

A.    We are in liquidation proceedings, i.e., they were commenced by way of originating application for the appointment of liquidators.  And the steps that we are taking are within that particular framework. Provisional liquidators have been appointed within those proceedings.

Q.    Right.  I think you just said before that because the provisional liquidators have been appointed, we are in a provisional liquidation.

Understanding we are in the framework of a broader liquidation, but as it stands right now, they're in a provisional liquidation?

A.    The companies are in provisional liquidation.

Q.    So I would like to turn to paragraph 15 of your declaration.

MR. CROKE:  The first declaration?

MS. FORNERET:  Yes.  The first declaration.  I'm sorry, this is exhibit



Page 214

-- I think it was 1.  Exhibit 1.

Q.   Actually, let's -- just start actually at paragraph 14, just before that, where you say, Except as otherwise noted, the statements of facts set forth in this declaration are based on my personal knowledge or my review of relevant documents.

That statement was accurate when you wrote it and is still accurate today.  Is that fair?

A.   Yes.

Q.   Then you say, To the extent this declaration contains statements of law or legal opinions, such statements represent my considered opinion as a practitioner of BVI law.

And again, that statement was accurate when you wrote it and is accurate still today?

A.   Yes.

Q.   So to the extent that your declaration contains a statement of law or legal opinion, it's from your perspective as a BVI lawyer?



Page 215

A.    Yes.    Although as we discussed previously today, there are elements to it where I address issues of U.S. law.    But I make that very clear that's through the lens of being -- with the assistance of U.S. counsel.

Q.    Okay.    So you are not a U.S. lawyer, as we've said.    And to the extent you are rendering an opinion that is based on information, that's been provided to you by your U.S. counsel?

MR. CROKE:    Objection to form.

Q.    Let me rephrase.

To the extent that your declaration contains statements of law or legal opinions as they pertain to U.S. law, that is based on not on your own expertise and background as a BVI lawyer, correct?

A.    I'm not sure if I follow the question.    Are you able to rephrase it?

Q.    Sure.    Let's just look at actually the text of paragraph 15.    We can be more concrete.

So in paragraph 15, you said, For



Page 216

the reasons set forth below and as advised by
the debtors' U.S. counsel -- we said before
that's referring to S&C, correct?

A.    That's correct.

Q.    It is your view that -- and then
you have a numbered -- a paragraph with
numbered statements 1 through 4, right?

A.    That's correct.

Q.    So is it fair to say that -- let's
take them one by one.

The first statement, the BVI
proceedings constitute collective judicial
proceedings.

That's a conclusion of law that
will ultimately have to be determined by the
U.S. court, correct?

A.    That is correct.

Q.    As a BVI practitioner, not a U.S.
lawyer, what is the basis for your view that
the BVI proceedings constitute collective
judicial proceedings?

A.    We talked about it previously
today, where we've gone through the relevant
criteria, and I go into detail in my



Page 217

declaration as to why I reached each of those

conclusions.

        Q.    Okay.  So -- but it's your position

as set forth in this declaration, that the

BVI proceedings constitute collective

judicial proceedings, notwithstanding that

you are not a U.S. lawyer?

        A.    I can articulate whether or not

proceedings are collective or judicial in

nature.

        Q.    Can you just explain what you mean

by that?

        A.    I know what a collective proceeding

or a judicial proceeding is.  So I feel

comfortable in terms of, obviously subject to

me being a BVI lawyer, but in terms of this

particular issue being able to express my

view.

        Q.    And your view here is that the BVI

proceedings satisfy the criteria for foreign

proceedings, within the meaning of Section

101(23), that's one of the conclusions

here --

        A.    Well, in terms of the paragraphs,



Page 218

to be very clear.  I say, for the reasons set forth below and as advised by the debtors' U.S. counsel -- which we agreed previously today is Sullivan & Cromwell.

So the lens by which I make these statements, as also expanded upon elsewhere in the declaration, is with the assistance and advice of S&C.

Q.    So in your declaration, you refer to both liquidators and provisional liquidators, correct?  You use kind of those two terms distinctly?

A.    I don't understand the question, sorry.

Q.    Just throughout your declaration, you refer to -- at certain times to provisional liquidators and at other times to liquidators without the provisional attached to it.

A.    I use the words provisional liquidators and liquidators.  I refer -- when I'm talking about my clients, it's on the context of them being provisional liquidators.



Page 219

Q.   Okay.  And so is it fair to say that when you are using the term "provisional liquidator" versus "liquidator" in your declaration, those have two different meanings to you?

You are using them -- provisional liquidator to refer to, again, the liquidators within that provisional context versus liquidators that have been fully appointed by the court?

A.   I think that's fair to say. Although, I think if we are looking at specific provisions, I want to make sure it's being articulated correctly.

But as a matter of principle, yes, when I refer to liquidators, I mean liquidators; and provisional liquidators, I mean provisional liquidators.

Q.   Is it fair to say that throughout your declaration, you refer to the primary purpose of a provisional liquidator as being one to maintain the value of company assets?

A.   I think we would have to go through the specific parts of the declaration to come



to that conclusion.

I do agree that it's an important element to the provisional liquidators' position to preserve assets.

Q.   And I can direct you, just by way of example, to paragraph 34 of your declaration.

And in paragraph 34, you say, A provisional liquidator has the rights and powers of a liquidator to the extent necessary to maintain the value of the assets owned or managed by the company or to carry out the functions for which he was appointed.

A.   Yes.

Q.   So accurate to say, based on this statement here, that a provisional liquidator -- one of their primary functions is to maintain the value of the assets owned or managed by the company they are overseeing?

A.   I'm not sure that I would agree that particular paragraph says the primary function.  I think the paragraph 34 refers the rights and powers of the provisional



26-10769-mg    Doc 49-34    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 34 -
Transcript of May 14    2026 Deposition of Andrew Barrington Chissick    Pg 222 of 293

Page 221

liquidator, how it is related to the powers of a full liquidator, to the extent necessary to maintain the value of the assets owned or managed by the company.

However, I agree that in terms of the duties of a provisional liquidator, it will include preserving assets.

Q.   Okay.  And in paragraph 35, you do say, in general terms, the primary role of a provisional liquidator is to maintain the value of company assets.

A.   Yes.  I say where the precise powers of a provisional liquidator are set by the BVI court, in general terms, the primary role of a provisional liquidator is to maintain the value of company assets.

Q.   And so you would agree with me that the precise powers of a provisional liquidator are set by the BVI court?

A.   That's correct.

Q.   And you would also agree with me that the powers and duties of a provisional liquidator are conferred by the terms of the appointing order, rather than arising



Page 222

automatically by operation of statute?

A.    That's correct.

MS. FORNERET:  And let's introduce
as Exhibit 12, the BVI orders that
specifically pertain to Amber Hill Ventures
Limited and Lateral Bridge Global Limited.

(Chissick Exhibit 12, BVI Orders,
marked for identification.)

Q.    You can take a look through, but
generally speaking, the orders that apply to
Amber Hill and Lateral Bridge are virtually
identical to the orders that apply to all the
other debtors at issue.  The names, of
course, are different on each though.

A.    I'm happy to accept that.

Q.    So we've spent a lot of time on the
powers conferred in these orders.  So I just
wanted to point you specifically to the ones
that pertain to Amber Hill and Lateral, but
they contain the same points that we have
discussed throughout the day with respect to
the other exhibit that was used earlier.

So is it fair to say that the
powers that are listed in the January 9 order



Page 223

for the debtors, at paragraph 3, which has
enumerated subsections (a) through (o), those
are expressly authorized powers that the JPLs
have, without further sanction or
intervention of the BVI court needed?

A.   Yeah.  They are specific powers
which they're able to exercise, as you say,
without the need for further sanction of the
BVI court.

Q.   And is it fair to call those
express or explicit powers, just to kind of
understand that they are specifically set out
in this order?

A.   I'm happy to use that terminology.

Q.   In your declaration at paragraph
51, I think you also list out these same set
of powers.

A.   That's correct.

Q.   And here, you say that the JPLs are
expressly authorized to exercise these
powers.

A.   I do.

Q.   And within the list that's in the
order and also repeated in your declaration,



Page 224

specifically -- and I'm talking about exactly what is written in these orders -- the power to pay creditor claims in full is not listed as one of these express powers, correct?

        A.   That's correct.

        Q.   The power to enter into settlements, to resolve debts, liabilities, or creditors claims is also not listed as one of these express powers.

        A.   That's correct.  But can I add one further thing?

        Q.   I would just like you to answer the question that I asked.

        A.   I think it's important in terms of the context.

                So in terms of the Schedule 2 powers, in a full liquidation appointment, the usual approach in the BVI is actually that certain powers, even for a full liquidation, to be subject to court sanction. And that would include -- if I'm able to look at Schedule 2, the first four elements of Schedule 2 --

        Q.   Within the Insolvency Act?



MAGNA
LEGAL SERVICES

Page 225

A.   Yes, Schedule 2 of the Insolvency Act.

So the usual approach for BVI winding up petitions is for power -- the powers, 1, 2, 3, and 4 of Schedule 2, in a court-appointed liquidation, be subject to the sanction of the court, which include power to pay creditors in full, power to make a compromise or arrangement.

So to the extent that the fact that certain powers need the sanction of the court in a provisional liquidation, does not necessarily follow that it's different from the position as it would be in a full liquidation.

Q.   Okay.  And that's not what I asked.

I just want to clarify that within the text of the court's order, the JPLs are currently not authorized expressly to pay any class of creditors in full, correct?  It's not --

A.   It's not one of the powers that is listed, which you can do without sanction. But as I mentioned, the typical approach in


MAGNA
LEGAL SERVICES

Page 226

BVI liquidations is that for specific power
to require the sanction of the court in any
event.

Q.    And regardless of whether it
requires the sanction of the court in a full
liquidation, currently as it stands, the JPLs
do not have that power?

A.    No, that's not correct.  We do have
the power.  It can be exercised --

Q.    Let me rephrase.

They do not have that power as an
express power in the sense that's enumerated
in the order.

A.    If we are using our agreed
terminology of express power, correct.  That
power is not included as something that can
be exercised without court sanction.

Q.    You said earlier or we discussed
earlier that one of the primary roles of a
provisional liquidator is to maintain the
value of company assets, correct?

A.    That's correct.

Q.    Paying creditors in full would not
be necessary to maintain company's assets?



Page 227

A.   I'm going to take objection to that because there may well be circumstances -- it might be helpful to look at the wording of Schedule 2.

Q.   I'm not talking about the Schedule 2 powers.

A.   Well, that's --

Q.   Let me ask my question, please.

So you've said that the role of a provisional liquidator is to maintain the value of company assets.  And the powers bestowed to the provision liquidators are those that are necessary to maintain the value of company assets; is that correct?

A.   Sorry.  In terms of your articulation of the primary purpose of powers, I agree that a primary purpose as stated in my declaration, is maintaining the power of assets.

If we look in terms of -- what you said is in terms of paying creditors in full, that could not --

Q.   Let me just stop you because I'm not asking that.  I will direct you to look



at Schedule 2, if we are going to talk about that.

A.   I feel like I need to address this because --

Q.   I would really like you to answer the question that is before you.

A.   The question you asked me was power to pay creditors in full is not going to be necessary to maintain the assets.

I disagree with the premise of that question, and I would like to explain why I disagree.

Q.   Okay.  So you can answer -- if it's a yes-or-no question, I would like you to answer yes or no.  Okay.

So let's just take a step back.  If we look at paragraph 2 of the order. Paragraph 2 says that joint provisional liquidators have the rights and powers of a liquidator to the extent necessary to maintain the value of assets owned by the company.  Right?

And I think we discussed at length, and you agreed earlier in your testimony,



Page 229

that those powers of a full liquidator -- I
added full for the ease of understanding the
difference provisional and full liquidator --
that those powers are limited to the extent
that they are necessary to maintain the value
of the assets owned by the company.

That's the words on the page here.

MR. CROKE:  Objection to form.

MS. FORNERET:  I will withdraw.

Q.    Let me ask -- put it this way --
let me put it this way.

Okay the power to -- withdrawn.

Convening a creditors committee is
something that is not necessary to maintain
the value of assets owned by a company
overseen by the JPLs, right?

A.    I don't agree with that.

Q.    You think that convening a
creditors committee is something that is
necessary to maintain the assets of the
company?

A.    There may be various permutations
in which having a collective group of
creditors consulting with the JPLs as to the


MAGNA
LEGAL SERVICES

Page 230

affairs of the company or the status of its

assets, may well help ensure and maintain the

value of those assets.

Obviously, it's difficult to

speculate or come up with hypotheticals.  But

I think it would be dangerous to assume that

in itself would be a blanket restriction.

Q.   And for example, convening a

creditors committee, that is one of the

enumerated Schedule 2 powers.

The power to call meetings of

creditors.  Is that fair?

A.   There is a distinction under BVI

law between a creditors committee and calling

a meeting of creditors.  But for the purposes

of this question and for the lens of

maintaining assets, in either case, I think

there may well be circumstances where taking

such actions would be necessary for

maintaining the value of assets.

Q.   And it's accurate to say that the

JPLs have not yet sought court sanction for

the approval of any Schedule 2 powers that

are not expressly granted to them?


MAGNA
LEGAL SERVICES

Page 231

A.    The JPLs have not caught sanction in relation to any points so far.

Q.    Including the use of Schedule 2 powers?

A.    Yes, correct.

Q.    So I would like to turn to paragraph 58 of your declaration.

And in paragraph 58, you say that, the BVI proceedings are collective in nature. They were commenced in the public interest and are not directed toward the enforcement of the rights of any single creditor or stakeholder, rather, they are intended to centralize control of the debtors' affairs under court supervision, preserve the debtors' assets, facilitate investigation of the debtors' activities and transactions, and enable coordinated administration and recovery.

Can you just clarify, in the middle of this paragraph, when you say "rather," what did you mean by "rather" in this sentence?

A.    In relation to it, where the


MAGNA
LEGAL SERVICES

Page 232

proceedings are not collective in nature,

essentially, they're for an interest of one

or a small group of interested parties, maybe

to the exclusion of a broader class of

creditors or other stakeholders.

An example of that may well be the

example, appointment of receivers -- I don't

think you have that concept in the U.S. --

appointment of receiver in relation to a

secured debt, that would be in most

circumstances, not a collective procedure.

Whereas, in this one -- so I'm

using the word rather, I'm saying this is --

where things have not been collective, this

is plainly a collective procedure, and these

are some of the purposes or outcomes of this

process.

Q.   And so the basis for your view that

the proceedings are collective in nature, are

the points that follow, 1, 2, 3, 4 in this

paragraph?

A.   That's correct, yeah.

Q.   Are there any other places in your

declaration that you specifically say why the



Page 233

proceedings are collective in nature?

A.   I can't recall.  I would have to read through again.  I suspect not, given this is the section where I go through the various criteria which I referred back to, I think, in paragraph 23.

Q.   So fair to say that the points enumerated here are the basis for your conclusion with respect to the proceeding being collective?

A.   I think that's correct, yes.

Q.   And can you tell me what do you mean by, to facilitate investigation of the debtors' activities and transactions, point 3 there.  What is the investigation that's referred to in that point?

A.   Okay.  So when the JPLs are appointed, obviously they have control over the assets and books and records of the company.  Their role -- in terms of securing assets, it means they need to investigate what the company was doing, so they're able to ensure that all assets are properly secured and maintained.



Page 234

As part of that, they also have statutory powers which enable them to compel officeholders or other people connected to the company to provide information and also to provide books and records.

Q.   In point 4, you say, to enable coordinated administration and recovery.

When you say "coordinated" in that point, coordinated with who?  What is that referring to?

A.   I would say in terms of it being a well-managed process to the extent that there are other proceedings going on around the world, it's obviously much more efficient for that to be done in the context of insolvency proceedings than it would be in some kind of external process.

Q.   And so when you say there are other proceedings going on around the world, are you referring to coordination, for example, with U.S. law enforcement agencies?

A.   I didn't say there were proceedings going on around the world.  I was contemplating the possibility of there being



Page 235

other proceedings around the world.

Q.    So this -- in point 4 here, you are referring to a future possibility that you may -- that there may be coordination across different proceedings?

A.    Bear in mind we are talking about the broader liquidation proceedings under which the provisional liquidators are operating, and these are proceedings brought by the Attorney General with the purpose of full liquidators being appointed.

And obviously, given the international nature of this mandate, I think it's absolutely reasonable to assume that at some point, there may well be parallel insolvency proceedings for the benefit of any creditors that should come forward, which would then allow there to be a coordinated process across different jurisdictions.

Q.    And one of the powers that the JPLs expressly have is to cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and other jurisdictions; is that correct?


MAGNA
LEGAL SERVICES

Page 236

A.   It's one of the powers listed under paragraph 3.

Q.   And the JPLs also have the power to consult and share information with the applicant, being the BVI AG, to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the company?

A.   Yes, that's one of the powers under paragraph 3.

Q.   And you mentioned, I think earlier when we were speaking broadly about all of the debtors, that the -- I will try to get your testimony accurately here.

I believe you said that there could be -- let me pause for one second.

I believe you said that currently, the JPLs had identified certain potential debt obligations or creditors.

I just want to be clear that with respect to Amber Hill and Lateral Global, currently, the JPLs have not identified any specific creditors of those two entities, to



Page 237

your knowledge?

A.   The position with Amber Hill and Lateral Bridge is that notwithstanding the fact that the JPLs wrote to the sole directors and sole shareholders of those entities and their clients of records many months ago, no response has been received at all in relation to their affairs.

And then following that, when we wrote to Kobre & Kim on 1 May, we stated in those questions and asking further queries; no response received whatsoever.

So you are absolutely correct.  In terms of the JPLs' ability to identify what those companies were doing prior to their appointment, they had been hampered and it's been very difficult for the JPLs to establish their assets and affairs and their solvency position.

Q.   I would just like you to answer the question that I had asked.

My question is currently with respect to Amber Hill and Lateral Bridge, yes or no, have you identified any creditors



Page 238

specifically to those entities?

A. No information as been provided in relation to those companies.

Q. I'm not asking what information. I'm just saying, yes or no, have you identified creditors?

A. No creditors have been identified.

Q. I think you also earlier testified that certain entities involved in these liquidation proceedings were the subject of sanctions.

And I want to clarify, Amber Hill and Lateral Bridge, neither of those entities are currently subject to OFAC sanctions, correct?

A. I don't know for certain, but I'm happy to take your word for it in relation to that.

MS. FORNERET: Just give me a minute. I think we may be...

Okay. Then I think with that, I'm finished with my questions. I think Laura had just stepped out.

MR. SKINNER: We will take a quick



26-10769-mg   Doc 49-34   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 34 -
Transcript of May 14   2026 Deposition of Andrew Barrington Chissick   Pg 240 of 293

Page 239

break.

THE VIDEOGRAPHER:  We are going off the record.  The time is 4:50.

(Off the record.)

THE VIDEOGRAPHER:  Back on the record.  The time is 4:49.

MR. SKINNER:  This is Peter Skinner from Boies Schiller.  We are finished with our questions for today.

As with the deposition that we had yesterday, we are keeping the record open, pending the resolution of any discovery disputes.

But we have nothing further for the witness today.

Mr. Chissick, thank you for your time.

THE VIDEOGRAPHER:  This concludes the deposition of Andrew Barrington Chissick.  The time is 4:50.

(Time Noted:  4:50 p.m.)



Page 240

ANDREW BARRINGTON CHISSICK                                         4

EXAMINATION BY MS. FEMINO                          4        5

EXAMINATION BY MS. FORNERET                   202      6

* * * * *                                        8

EXHIBITS                                      10

Exhibit 1 - Declaration of Andrew Chissick                11      12

Exhibit 2 - Walkers Application                           17      13

Exhibit 3 - Amended Campbells Application                 20      14

Exhibit 4 - Supplemental Declaration



Page 241

Stipulations

Page   Line      Page   Line      Page   Line

None

- - -

Questions Marked

Page   Line      Page   Line      Page   Line

None

To Be Filled In

Page   Line      Page   Line      Page   Line

None

- - -



Page 242

I HEREBY CERTIFY that the witness, ANDREW BARRINGTON
CHISSICK, was duly sworn by me and that the deposition is a true
record of the testimony given by the witness.

*Leslie Fagin*
_____

Leslie Fagin,

Registered Professional Reporter

Dated: May 14, 2026

(The foregoing certification of this transcript does
not apply to any reproduction of the same by any means - unless
under the direct control and/or supervision of the certifying
reporter.)



Page 243

ANDREW BARRINGTON CHISSICK    DATE:

Subscribed and sworn

to before me this                                                                    9

day of _____ 2026.

My commission expires:

Notary Public                                                                        12



26-10769-mg    Doc 49-34    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 34 -
Transcript of May 14    2026 Deposition of Andrew Barrington Chissick    Pg 245 of 293

Page 244



26-10769-mg    Doc 49-34    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 34 -
Transcript of May 14    2026 Deposition of Andrew Barrington Chissick    Pg 246 of 293

Page 1

**A**

**ability**
21:12 22:22 24:15,20
25:20 60:17 70:14
74:21 75:21 79:21
104:8 112:5 117:6
118:19 120:12
136:2,21 145:7
169:6 237:15
**able**
42:18,24 51:9 73:18
78:14 130:4 181:15
198:11,23 215:21
217:18 223:8
224:22 233:23
**about**
7:14 9:25 14:2 19:13
23:6,8 24:8 25:24
26:11,21,25 27:10
31:20 33:16 39:19
43:19 44:2,17 45:2
45:23 52:11,22 53:2
53:5 59:17 64:16
66:22 67:2,6,6,10
69:6 73:12 75:7
79:6 80:2 81:5
82:11,15 86:3,4
88:17 95:16,19
97:19 99:11 101:25
103:25 104:23
107:20 109:22
110:14 115:13
119:9 124:11 130:8
136:16 137:8 138:5
138:15 144:22
146:17 159:13
164:9 165:16,21
167:9 169:14 170:4
176:11 177:6,19
178:2 179:21
180:16 185:18
189:6,17 190:14,16
196:6 197:5 200:8
203:22 204:23
208:2 212:10

216:23 218:23
224:2 227:6 228:2
235:7 236:14
**above**
1:12 100:23 105:4
111:5 127:7 128:16
**absent**
25:12 180:11
**absolute**
38:9,24 119:21
**absolutely**
17:5 31:8 33:17 37:2
38:9 48:20 64:4
86:3 101:25 102:4
104:4 107:24
109:11 169:4 176:8
210:3 235:15
237:14
**accept**
89:6 109:6 174:2
222:16
**access**
57:13 133:3 134:19
**Accident**
151:7,18 156:14
157:23 158:7,21
162:17 167:8,25
168:3 240:11
**accidently**
202:13
**accordance**
36:17 87:5
**according**
209:10
**accordingly**
25:8 63:11 154:17
184:12
**account**
96:2,3
**accounts**
96:11,12,18 103:22
104:21,23
**accreditation**
8:24
**accrued**
28:7,11,16 44:3,6

**accuracy**
51:14
**accurate**
47:22 65:20 69:20
109:12 172:18
173:24 214:9,10,19
214:19 220:16
230:22
**accurately**
6:8 36:19 236:16
**achieved**
196:18
**across**
123:25 205:8 210:13
235:5,20
**act**
14:6 15:17 16:14
19:16,17 30:3 31:3
50:25 54:5 63:7
70:15 72:22 73:17
78:23,25 79:23,25
80:17 82:19,24 84:6
84:14,18 86:21
100:25 119:20
121:24 123:9
132:12 136:17,19
138:16,17,18 173:9
173:20 174:20
175:8 181:7 182:22
185:4,5 196:18
199:2 204:20 205:3
205:17 207:22
208:15 210:16
224:25 225:3
240:11
**acted**
164:22
**acting**
14:22,23 16:10,12
54:15 74:23 134:13
137:4
**action**
16:4 73:6 113:13
123:13 126:9
178:24
**actions**

143:20 206:4 209:6
230:20
**activities**
174:24 231:18
233:15
**activity**
198:20
**acts**
16:15
**actual**
30:21 186:16
**actually**
19:9 22:16 24:9
52:25 53:4 59:15
65:17,19 69:4,15
70:14 82:9 92:20
99:22 100:17
102:13,17 103:23
106:22 117:14
127:18,20 128:2
145:9 146:18
156:15 158:11
170:11 178:17
201:20 210:9 214:3
214:4 215:22
224:19
**add**
5:24 72:6 82:9
224:11
**added**
72:25 229:3
**adding**
139:7
**addition**
70:24 110:16 126:18
**additional**
21:4 74:13 81:24
**address**
162:6 215:4 228:4
**addressed**
176:3,9 181:12
205:22
**adjustment**
181:24
**administer**
173:7,18 174:22



26-10769-mg    Doc 49-34    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 34 -
Transcript of May 14    2026 Deposition of Andrew Barrington Chissick    Pg 247 of 293

Page  2

176:5,20,25 181:2

**administering**
176:24

**administration**
231:19 234:8

**administrative**
181:21

**admit**
118:2

**admittance**
8:17

**admitted**
7:23 8:4,14,16

**adopt**
152:16

**adverse**
38:13

**advice**
54:2 66:3 123:8
218:9

**advise**
11:22 65:6,25 121:24
125:17

**advised**
53:2 63:4,17 64:14
65:22,24 172:9
216:2 218:3

**advising**
119:19

**advisors**
44:15

**advocacy**
32:4,24 36:2 37:19
38:2

**advocate**
30:25

**advocating**
31:13 32:2,20 36:13
36:22 37:7 38:14,17

**affairs**
16:8 60:18 63:9
68:11 69:2 70:7
77:2,8 81:6 111:8
126:9 127:14
128:19 129:4 173:9
174:23 176:5,22

181:4,25 199:17
201:15 230:2
231:15 236:9 237:9
237:19

**affect**
122:24

**afraid**
121:15

**after**
27:17,18 41:21 76:11
203:17,19

**afternoon**
123:19 202:24

**AG**
43:9,18 44:2,20
184:18 187:11,13
198:6 205:6 207:9
209:2 210:23 211:3
211:19 236:6

**again**
27:21 30:21 45:16
82:2 90:18 92:11
95:8,10,15,25
109:20 115:6
116:12 130:6
136:11 138:13
140:15 141:23
145:25 183:6 211:9
214:18 219:8 233:4

**against**
40:12,22 45:6 159:21
201:20,22 202:4
205:6

**agencies**
234:22

**agent**
16:16

**agents**
137:16

**ago**
34:20 150:13 190:5
237:8

**agree**
36:7 50:2 64:5,9,10
74:5 75:11 83:11,14
83:20 84:3 95:5

101:24 120:21,22
130:13 131:12
149:2 151:19
162:16 167:22
168:2 180:13 220:3
220:22 221:6,18,22
227:18 229:18

**agreed**
101:15 103:20 218:4
226:15 228:25

**agreeing**
102:2,6

**agreement**
55:2,5

**agrees**
162:21

**AG's**
192:15,22 193:13,23
207:19

**AI**
61:16,21,25 62:13,17

**akin**
82:12

**al**
1:6 3:8

**albeit**
119:11

**aligned**
10:3 102:14,16

**alive**
178:4

**all**
5:19 7:18 30:18
31:15,18 35:20
40:19 51:14 53:19
56:12 67:3 76:5,24
94:21 104:13 105:7
114:22 115:3 122:6
123:18 143:9 144:3
144:11,15,20
147:15 150:6,11
152:24 159:15
163:9 164:3 172:23
174:25 184:6,13,24
190:7 196:12,15
199:20 205:9,15,20

207:5,8,15 211:4
222:13 233:24
236:14 237:9

**allegations**
197:22 198:3 200:5
201:19

**allege**
200:19

**Alleged**
2:5

**allow**
19:22 83:3 109:25
122:5 149:4 235:19

**allowed**
50:14,25

**almost**
66:5 198:21

**aloud**
63:2 110:15 111:3
112:10 113:10

**already**
61:3 118:10 160:17
167:11 177:7

**also**
2:19 3:15 8:20 19:21
43:15 47:14,25
48:14 53:6 55:25
58:13 61:3 63:21
66:12 68:13 70:16
71:3 72:6 86:20
88:25 96:7 103:15
110:3 114:24
124:21 125:25
135:12,18,23
139:21 149:15,21
162:4 180:10 181:6
189:15 198:17
204:6 205:4 210:7
218:7 221:22
223:17,25 224:9
234:2,5 236:4 238:9

**alternative**
49:14

**although**
60:9 73:2 152:5
165:11 187:8



MAGNA
LEGAL SERVICES

26-10769-mg    Doc 49-34    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 34 -
Transcript of May 14    2026 Deposition of Andrew Barrington Chissick    Pg 248 of 293

Page  3

205:21 206:18
215:2 219:13
**always**
 117:10 121:24 123:9
   137:2 173:15 206:9
**am**
 8:18,20 27:22 37:9
   46:8,9 54:9 55:24
   57:2 64:4 66:21
   81:2 112:4 113:9
   121:19 123:4 124:5
   130:23 131:22
   140:9 142:23 164:3
   178:14 193:14
   209:7
**Amber**
 2:10 3:24 203:3
   205:6 222:6,12,20
   236:23 237:3,24
   238:13
**ambiguous**
 31:9
**amended**
 20:13,23 24:7 34:12
   240:11
**amending**
 21:2
**America**
 143:19
**among**
 112:12
**amount**
 44:5
**amounts**
 91:21
**an**
 5:24 7:23 8:3 10:15
   10:16,19,21 13:19
   15:11 16:4,4,17
   17:18 19:8 24:5,15
   26:23 30:5,13,16,22
   31:9,24 39:7,10
   46:5,23 47:15 48:2
   48:4 49:6,13 50:4
   50:25 51:22 52:23
   53:9,22 54:20 56:23

57:5 60:23 63:18
68:7 72:18 74:22
75:24 79:20 85:13
85:24 95:12,18 97:7
108:10 109:11
110:20 115:13
116:20 117:3
123:21 125:7,16
128:3 137:18
145:25 152:5 153:4
153:9 156:6 164:15
167:6 173:5 175:25
177:15,23 178:13
179:14 185:11
188:10 196:11,16
200:20 211:3
215:10 220:3
226:12 232:3,7
**ANALYST**
 2:13
**Andrew**
 1:9 3:6 4:17 11:15
   23:12 132:17
   159:23 172:3
   239:20 240:3,11
   242:2 243:6
**and/or**
 175:25 242:8
**another**
 42:8 45:19 55:17
   68:13 100:7 114:11
   114:12 117:16
   202:14
**answer**
 4:25 5:17,19,22,25
   48:25 57:2 66:15
   69:25 70:3 81:5
   107:2,13 114:14
   146:5 152:20
   153:24 160:13
   162:23 164:10
   168:21 197:8
   224:13 228:6,14,16
   237:21
**answered**
 25:6 162:19 202:12

**answers**
 5:3 52:18 123:16
   162:12,13
**ante**
 180:12
**anticipate**
 155:20
**anticipated**
 188:22
**anymore**
 87:22
**anyone**
 6:18 52:10 134:12
   160:20 191:18
   192:2,11 193:18
**anything**
 6:6 28:4 52:13 58:10
   59:10 61:13 87:16
   89:13 90:10 92:7
   94:7 95:6 106:9
   108:3,12 109:15
   114:6 141:7,11
   147:6 161:18
   165:13 193:18
**anyway**
 41:19 124:9 135:14
**anywhere**
 191:18 192:3,11,12
**Apologies**
 210:18
**apologize**
 128:4
**appeal**
 146:2 147:13,14,21
   157:19 159:21
   166:10
**appealing**
 146:20 155:11
**appeals**
 166:12 167:4
**APPEARANCES**
 2:2
**appeared**
 187:8
**appears**
 107:15

**apples**
 85:18
**applicable**
 46:10 96:21 143:21
**applicant**
 19:2 148:15 187:13
   211:3 236:6
**applicants**
 147:22,24,25
**applicant's**
 21:17
**application**
 17:7,10,14,19 18:22
   19:7,8,10 20:5,11
   20:14,22,23 21:3,16
   21:25 22:7,17,23
   23:25 24:4,16,22,25
   39:25 57:5,14,20,22
   97:11 121:14
   140:12,22 141:15
   141:20 145:20
   147:21 164:16
   167:7 183:14
   186:14,16 187:10
   187:14 190:8
   192:10 193:3 194:5
   194:12 200:20
   211:20 213:6
   240:11,11
**applications**
 21:21 22:11 34:9
   68:6 147:11 166:5,8
   204:23 205:5,8,20
   206:7,8 207:20
**applied**
 50:13,23
**applies**
 81:8
**apply**
 97:6 153:15,21 154:6
   154:8 169:13
   222:11,13 242:8
**applying**
 19:14 165:19 167:25
   168:2
**appoint**



26-10769-mg    Doc 49-34    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 34 -
Transcript of May 14    2026 Deposition of Andrew Barrington Chissick    Pg 249 of 293

Page  4

208:3,14
**appointed**
 14:9 17:17 25:10
  27:19 69:13 75:5
  83:10 115:3 163:22
  166:9 173:5 174:18
  184:8 200:23 201:4
  208:7,10 212:7
  213:9,13 219:11
  220:14 233:19
  235:12
**appointees**
 190:10
**appointing**
 68:4,20 156:7 221:25
**appointment**
 13:6,22 17:21 18:7
  18:14 19:15 20:7
  21:5,7,10 22:10,25
  23:3 24:17 25:4,18
  26:3,6 27:18 35:6
  37:5 40:17 43:10,19
  43:23 48:10 68:14
  68:16 72:2 81:8
  107:19 109:5,10
  115:4 118:14
  129:22,23 132:10
  132:20 135:21
  144:9 145:4,18
  146:8 148:10 149:3
  149:22 155:8,14
  157:11,14 163:8
  164:15,16 168:19
  175:6,11 183:15
  184:11,18,20
  186:17 187:15
  193:4,10 196:22
  200:24 202:9
  203:16,18,20 204:2
  204:24 209:3,24
  210:24 213:6
  224:18 232:8,10
  237:17 240:11
**appointments**
 142:17 186:10
**approach**

37:13,14 50:20 121:6
  152:16 174:2
  175:25 210:4
  224:19 225:4,25
**approached**
 203:21,25
**appropriate**
 36:23 48:21 49:17
  50:6,9,22 66:13
  67:13 73:5 108:22
  113:25 163:17
**approval**
 28:13 42:4,25 56:15
  56:17,23 57:4 70:21
  72:15 85:9 97:2
  106:15 134:4
  230:24
**approve**
 76:12,17
**April**
 58:3 187:2
**area**
 48:18
**arguably**
 94:12
**argue**
 38:14 92:6
**argued**
 38:7 76:15 122:15
**arguing**
 31:11,25 32:5 33:5
**argument**
 31:24 32:4,10 33:13
  129:21 131:6
  161:17
**arguments**
 130:22,24
**arise**
 27:3 43:16 80:7
**arises**
 202:15
**arising**
 221:25
**around**
 25:2 48:4,12 234:14
  234:20,24 235:2

**arrangement**
 178:19 225:10
**articulate**
 22:7 133:15 217:9
**articulated**
 50:19 87:13 162:17
  175:24 219:15
**articulating**
 112:22 114:4
**articulation**
 163:2,5 188:15
  227:17
**aside**
 109:14 189:20
**ask**
 14:2 15:24 19:22
  37:17 66:9 85:25
  123:15 165:18
  170:13 172:19
  187:17 192:11
  227:9 229:11
**asked**
 66:22 105:13 138:18
  153:25 162:18
  165:3 198:11
  224:14 225:17
  228:8 237:22
**asking**
 40:3 44:16 50:22,23
  66:23 67:5,10 85:23
  154:8 162:20
  179:25 191:17
  193:8,12 195:5
  200:8 227:25
  237:12 238:5
**assert**
 91:20
**asserted**
 84:11
**assertion**
 158:9 167:14
**assertions**
 175:20
**asserts**
 172:8
**assessment**

56:12
**asset**
 77:15,17 85:13,22,24
  90:20,23 93:19
  95:12 96:12 97:7
**assist**
 37:9 48:19 49:7,16
**assistance**
 19:23 47:16 48:22
  99:6 102:7 215:6
  218:8
**assisted**
 53:25 58:11,13,20
**assisting**
 204:15
**associate**
 8:21
**associated**
 108:23
**assume**
 5:13 38:24 44:19
  98:22 173:11 230:7
  235:15
**assumed**
 157:8 160:12
**assuming**
 30:20 98:20
**assumption**
 26:12 55:11 141:5
  156:8
**at**
 1:10,12 8:8 9:20
  10:24 13:6 16:16
  19:12 24:5 36:21
  40:18 51:14 53:4
  58:2 61:3,20 64:21
  69:20 71:24 73:17
  79:4,12,13 80:3,5
  81:19 82:4 88:5
  96:24 104:14
  112:23 115:3,7
  116:17 125:20
  126:13 127:7,24
  128:22 135:10,17
  138:9 145:14
  150:11 158:13



MAGNA
LEGAL SERVICES

26-10769-mg    Doc 49-34    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 34 -
Transcript of May 14    2026 Deposition of Andrew Barrington Chissick    Pg 250 of 293

Page 5

159:7 164:18 172:7
179:3 180:2,6
181:11,14 182:16
186:2,3 187:4
195:17 199:25
203:11 204:6
205:20 207:5
212:12 214:4
215:22 218:17,18
219:13 222:14
223:2,16 224:23
227:4 228:2,18,24
235:15 237:8

**attached**
194:5 218:19

**attention**
38:3 157:9

**attorney**
7:23 8:4 43:12 45:15
63:19 66:16 68:3
129:21 195:9,11
200:13 204:24
205:19 235:11

**attorneys**
2:5,10,15 3:9

**authorities**
44:24 45:2 124:23
150:5 151:4,5,24
152:10,15 153:14
154:5 235:24

**authority**
68:10,25 70:6 75:17
76:18 77:5 80:24,25
81:12,17,20 82:7
85:2,7 86:4,5,8,9
87:9 88:22 93:25
94:6 96:10,11 99:2
99:4,9,18,20 100:2
100:8,13 101:12
102:20 103:3,11,19
104:14,17,24
105:20,24 106:2,3,4
106:21 107:7,22
109:23 121:19
123:3,4,5 124:3,5
124:16 130:19

133:20,24 143:16
145:14,18 149:23
150:2,25 151:21
152:25 153:9
154:18,18 155:18
155:21 164:19,23
165:9 167:13
175:11 177:6
180:14

**authorization**
86:15

**authorize**
89:14 90:11 175:4
179:17

**authorized**
42:11 75:12 87:25
132:8 133:6 135:19
136:12 138:19
139:16,21 173:6,18
173:20 174:22
176:4,7,19,25 180:7
180:8,15 181:2,7
223:4,21 225:20

**authorizes**
87:17 97:5,10

**automatically**
222:2

**available**
28:17 50:17 71:3,25
72:2 134:10 168:18
169:2 187:20
206:18

**Avenue**
2:11

**avoid**
108:10

**avoidance**
45:14 143:15

**aware**
54:9 55:24 57:7
121:19 123:4 124:2
124:5 130:23
131:22 138:23
140:9 151:6 154:11
178:14

**awareness**

209:20

**away**
144:20

**a.m**
1:12 3:5

---
**B**
---

**b**
2:12 4:7 89:18 90:14
116:4 208:4,15
210:21 211:12

**back**
4:4 45:22 48:25 52:3
57:24 59:19 62:24
76:19,20,22 77:10
80:10,21 81:4 98:18
102:15 105:12
109:5 116:8,13
123:6 136:6,8,10
138:10 153:24
162:25 165:22
166:17 169:18
171:24 192:15
193:22 202:8,20
203:8 228:17 233:6
239:6

**background**
215:18

**backwards**
45:21

**baked**
211:25

**Ballpark**
26:4

**bank**
96:2,3,11,12,18
103:22 104:21,23

**Bankruptcy**
1:2 63:13 64:8,11
172:16,21 175:15
240:11

**Barrington**
1:10 3:6 4:17 239:20
240:3 242:2 243:6

**BARRY**
2:13

**based**
134:11 140:5,15
152:5 209:19 214:7
215:10,17 220:16

**basically**
75:2 158:17 194:20

**basis**
19:10 25:9 29:5 39:3
42:17 64:2,23 68:7
74:11 78:20 125:8
134:9 152:23
158:21 173:5
199:12,19,22
200:22 201:3
208:12 209:24
216:20 232:19
233:9

**bear**
104:2 191:22 235:7

**became**
42:11

**because**
30:14,14 32:20 34:18
57:3 69:7,21 73:25
79:2 80:2 82:10
85:21 90:5,8 99:10
99:18 102:23
103:25 104:13
111:20 113:2 119:7
119:21 120:16
122:19 127:18
137:9,16 146:25
152:21 158:15
161:9 164:11
169:16 170:4
183:18 185:3,5
187:11 189:21
199:9 200:16
213:12 227:3,24
228:5

**become**
102:13 199:3 212:8

**becomes**
157:7

**becoming**
120:6



MAGNA
LEGAL SERVICES

26-10769-mg    Doc 49-34    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 34 -
Transcript of May 14    2026 Deposition of Andrew Barrington Chissick    Pg 251 of 293

Page  6

**bed**
188:13
**been**
4:9,21 7:20,22 12:9
12:25 14:15 17:17
20:24 22:14 24:10
25:4,6 27:4,17 28:4
28:9,10 35:14 39:3
39:14 40:12 43:18
45:5,6 51:7,21
52:23 53:5,6,8,8,9
56:3 59:21 62:16
89:21 100:5 115:12
122:10 124:8,9
130:4,4 131:22,24
134:12,13 150:4,6
150:20 151:6
154:19 160:12
161:14 163:22
167:21 168:8
169:16 181:2,7,13
184:8 196:4 197:22
198:2,10,16 199:17
200:5 201:6 203:25
209:2,4,6,8,21,24
210:22 211:2,3,4,6
211:10 213:9,13
215:11 219:10
232:15 237:8,17,18
238:3,8
**before**
1:12 4:19,21,25 9:7
34:19 43:23 52:6
56:2 58:2,24 62:5
73:3 74:9 76:7,10
76:14 83:13 105:14
109:17 123:22
134:2,7 137:19
152:22 159:2
166:10 172:7
189:12,19 203:25
204:4,17 206:4
207:7,16 209:2
210:23 211:8
213:12 214:4 216:3
228:7 243:8

**begin**
3:11 81:3
**beginning**
203:11 204:7
**behalf**
3:23 19:6 20:6
112:13 113:7,14
132:12 136:17,23
137:2,5 138:16
139:7 145:10
150:17 163:18
175:2,8 187:8
**behind**
58:15 119:16 149:6
**being**
8:3 12:5 13:12 23:5
25:12 33:20,22 34:9
34:14 35:2,10,12
36:8 38:7 42:24
45:17 48:23 53:3
56:9 64:24 79:24
81:23 92:21 96:13
119:10,21,22 120:6
120:11,14 124:4
130:7 138:15
141:15 162:6 170:6
170:20 176:4 183:5
183:24 184:25
194:11 197:5
198:13,14,22
199:20 204:12
205:25 206:11,19
206:22 210:6,20
215:6 217:17,18
218:24 219:15,22
233:11 234:12,25
235:12 236:6
**belief**
37:3,10 155:9
**believe**
19:10 23:8 33:10,17
34:5 36:22 50:24
54:22 80:14 82:17
82:22 86:7,9 88:24
103:20 104:18
197:9 200:14

202:15 236:17,19
**believed**
162:24
**below**
19:13 63:3,22,23
172:9 216:2 218:3
**beneficial**
94:23 103:17 196:13
**benefit**
140:10,23 141:2
179:16 235:17
**benefits**
195:20
**Bermuda**
8:21
**besides**
98:8 184:16
**best**
31:3 54:6 112:4
129:17 208:24
**bestowed**
227:13
**better**
59:21 60:8 188:15
**between**
5:16 15:2 20:8 27:14
29:23 31:5 33:4,6
34:7,20 35:13 37:12
37:18 42:14,15 48:4
55:2 60:10 66:14
73:25 74:20 83:23
92:21 111:14 121:8
122:13 129:11
131:25 137:4 140:7
197:18 230:15
**beyond**
38:8 43:4 108:22
162:9
**bias**
47:22
**bills**
44:10 55:19,23 56:2
**binding**
152:7
**bit**
19:12 45:21 92:18

113:17
**blanche**
161:19
**blanket**
230:8
**block**
157:4 159:3,20
194:20
**board**
157:6,15 160:10,14
160:22 205:9
**body**
123:21 173:4,5
**Boies**
1:11 2:4 3:13,16,17
4:18 65:5 239:9
**bonds**
77:20
**books**
16:22 17:3 233:20
234:6
**border**
9:9,12,15
**Borelli's**
25:3,18
**both**
15:2 30:11 31:10,11
54:5,15 69:23 76:23
80:8 143:17 146:4
173:13 174:4 177:2
190:11 218:11
**bottom**
195:18
**bounds**
32:21
**box**
19:2,13
**breach**
116:23 119:23 121:2
121:3
**breached**
117:5
**breaches**
116:22 120:2
**breaching**
125:16



MAGNA
LEGAL SERVICES

26-10769-mg    Doc 49-34    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 34 -
Transcript of May 14    2026 Deposition of Andrew Barrington Chissick    Pg 252 of 293

Page  7

**break**
 5:14,16 115:14
   171:20 239:2
**Bressman**
 2:12 4:2
**Bridge**
 2:10 3:25 203:4
   222:7,12 237:4,24
   238:14
**brief**
 33:5 35:16 188:4
**briefly**
 7:19
**briefs**
 31:21 32:18
**Bright**
 21:18 22:2,4
**bring**
 15:4 45:19 140:22
   148:5
**bringing**
 22:16
**British**
 143:18
**broad**
 2:16 37:23 68:10,24
   69:8 70:6 73:16
   77:4 80:8,24 81:12
   81:17 82:7 84:22
   85:2 88:22 93:25
   99:3 101:12 105:24
   106:2,3,17,20 107:7
   107:22 109:23
   113:24 114:25
   133:20,20 146:25
   180:13
**broader**
 65:18 73:13 85:10
   213:16 232:5 235:8
**broadly**
 98:13 207:24 209:14
   236:14
**brought**
 15:9 35:14 141:15
   182:21 204:19,23
   205:2,5,8,13,15,20

 207:19,20 235:10
**bucket**
 85:18
**business**
 97:22 198:22,23

_____ C _____

**c**
 4:8,8 116:5,5 207:23
   208:7,16,22 209:2
   209:23
**call**
 35:18 117:23 158:3
   185:5 223:11
   230:12
**called**
 4:8 167:8 183:18
   186:4
**calling**
 184:17 230:15
**Cambodia**
 132:23
**Campbells**
 2:21 3:15 20:14,24
   22:6,18 24:21 25:10
   122:12 207:10
   240:11
**Campbells/BSF**
 200:10
**candor**
 32:21 36:18 37:20
   38:25
**cannot**
 32:11 160:13 161:21
   170:19 179:19
   180:10 202:2
**can't**
 25:14,14 27:8 50:16
   53:15 54:24 66:12
   74:3 75:14 76:15
   114:10 121:15
   122:11,19,25 131:4
   150:3 166:20
   169:16 181:14
   182:19 200:9
   203:20 206:7,8

 233:3
**capacity**
 12:7 13:10,12 15:22
   29:24,25 54:17
   136:22,25 137:11
   137:12 138:24
   153:10 154:2 170:8
**capture**
 97:15
**careful**
 26:14
**carefully**
 123:10
**Caribbean**
 166:11
**carries**
 43:14
**carry**
 69:12 75:4 79:15
   83:9 115:2 220:13
**carrying**
 177:9
**cart**
 161:19
**case**
 21:24 29:17 39:15
   44:3,6 47:25 62:7
   80:11 89:11 108:21
   118:13 120:7 141:8
   151:17,19 152:2,7
   153:20 154:2
   155:22 157:3 158:7
   161:17 164:3,4,14
   165:3,15,17,20
   166:10 168:4 186:4
   186:7,11,12 194:19
   195:2 206:11
   230:18
**cases**
 9:23 11:18 32:15,16
   32:17 52:22 58:4
   121:20 124:18
   141:12,14 150:3
   209:16
**case-by-case**
 29:5

**catalogue**
 104:12,13
**catchall**
 96:25 97:14 139:5
**categories**
 110:4
**category**
 163:23 165:9
**caught**
 231:2
**cause**
 13:16,20 14:6,14,19
   15:4 19:7 65:12
   136:18 138:18
**caused**
 65:20
**causing**
 15:13 137:6,15
**caution**
 119:21
**cautiously**
 121:25
**Cayman**
 8:24 45:12 124:11,12
**ceding**
 117:15
**central**
 123:6 189:10,13
**centralize**
 231:15
**certain**
 13:6 15:19,24 17:21
   71:23 72:21 74:12
   85:3,8 133:19
   143:20 144:7,17
   171:3 178:23
   190:19,21 199:8
   218:17 224:20
   225:12 236:20
   238:10,17
**certainly**
 59:4 65:5 66:5 119:3
   135:15 153:12
   179:2 198:21
**certification**
 242:8



26-10769-mg   Doc 49-34   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 34 -
Transcript of May 14   2026 Deposition of Andrew Barrington Chissick   Pg 253 of 293

Page  8

**CERTIFY**
242:2
**certifying**
242:8
**cetera**
15:6 189:7 194:9
**challenge**
169:8
**challenging**
166:24
**change**
8:25 18:8,9,12 21:9
39:17,23 77:16
85:16 90:2 96:14
118:16
**changed**
118:20
**changing**
127:22,23
**Chapter**
9:16,18 10:25 11:18
18:3 21:14 23:19
29:25 34:3,18 35:9
36:25 38:22 50:13
51:16 58:4 93:2
134:8,16 141:4,12
141:14 161:23
166:25 168:15
170:5 171:5
**characterize**
93:12
**charged**
56:10
**charges**
198:15 199:21,22
**chat**
52:12
**CHD**
158:18
**check**
78:19 98:11 106:12
114:16 124:15
156:24 193:22
**Chen**
201:20
**Chissick**

1:10 3:7 4:17 11:12
11:14,15 17:9 20:13
23:11,12 45:24
68:15 78:24 150:14
157:23 172:20
186:23 202:24
222:8 239:17,21
240:3,11 242:2
243:6
**choose**
55:12 125:15
**choosing**
55:16,17
**chose**
22:8 55:15
**circumstance**
90:20
**circumstances**
25:2 29:4 32:8 42:2
48:17,20 49:15 73:4
74:12 77:15 85:9,15
85:20 90:6 108:21
123:11 146:11
148:8 149:8 163:24
168:12 169:22
178:23 179:10
189:6 210:5 227:3
230:19 232:12
**citation**
127:5,15,22 132:14
142:24 156:24
158:11
**cited**
123:3 124:16 126:12
150:4,6 151:9
152:24 156:23
158:7 161:10
**citing**
149:13
**Civil**
45:25 46:6,7 240:11
**claim**
40:6,7,11 41:17,19
41:20 94:11,12
184:5 185:22,23,25
**claimant**

137:22
**claimants**
147:25
**claims**
15:4,5,6,9 192:25
201:21 202:3 206:6
224:4,9
**clarification**
122:3 125:17
**clarify**
5:24 32:25 51:4 65:9
107:8 205:14,18
225:18 231:21
238:13
**clarifying**
65:16
**clarity**
175:18
**class**
225:21 232:5
**clean**
38:18
**cleanup**
52:6 55:25
**clear**
24:18 38:8 39:24
48:8,18 60:7 63:18
65:3 70:18 82:10
86:3 87:24 89:19
93:21 99:3 101:25
102:4 104:4 106:22
112:5 139:8 144:6
149:12 150:10
156:16 166:23
169:4 176:8,10
178:25 179:4 193:9
197:18 204:21
215:5 218:2 236:22
**clearer**
59:13,22
**clearing**
204:2
**clearly**
23:2 63:22 160:16
163:22 197:12,20
**client**

12:13,17,18 13:4
30:25 31:3,6 32:2,6
33:13 34:11 36:3
37:7 55:12 119:19
121:24 123:9
125:17
**clients**
12:2,4,11,12,19,24
31:13 32:21 33:5
34:7,8,13 36:14
38:13 54:7 198:13
199:18 204:25
218:23 237:7
**Clifton**
150:22
**cloaked**
75:18
**close**
91:25
**closely**
7:21
**clothed**
99:22
**code**
63:13 64:8,11 172:16
172:16,21 175:15
190:11 240:11
**coin**
160:9
**Colclough**
150:21
**collective**
63:6 181:21 185:19
207:13 216:13,21
217:6,10,14 229:24
231:10 232:2,12,15
232:16,20 233:2,11
**collectively**
69:16 82:6 206:20,22
**come**
25:11 73:19 109:5
123:24 191:15
209:13 210:13
219:25 230:6
235:18
**comes**



26-10769-mg    Doc 49-34    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 34 -
Transcript of May 14    2026 Deposition of Andrew Barrington Chissick    Pg 254 of 293

Page  9

67:15 83:13 93:20
**comfort**
122:7 123:12
**comfortable**
49:23 51:13 92:25
217:16
**coming**
183:19
**command**
79:3
**commence**
14:20 112:12 113:6
113:11 114:17
174:25 184:22
**commenced**
63:7 134:7 193:5
213:5 231:11
**commencing**
1:11
**comment**
58:7 173:23
**commercial**
29:8 43:3 48:16
186:5
**commission**
243:10
**committee**
229:14,20 230:10,15
**common**
15:5 54:25 55:4
138:22 140:6,16
147:18 157:13
173:25 198:19
**communicate**
235:23
**communication**
67:12
**communications**
43:8,12,18,21,22
44:2,23 45:7,9
58:10 67:9
**companies**
12:23 13:2,7,14 16:3
16:22 17:24,25 18:2
18:5 19:6,7,25
20:12,17 21:12,13

22:11,23 23:2 24:15
24:19,21 25:20 35:8
40:12,13,18,23
41:10,15 45:6 54:12
54:18 56:5,6,8
57:16 139:10
141:22 161:20
164:20 168:15,20
169:7 194:21
195:21 198:9 199:5
199:8 200:4,18
201:22 205:23
212:11,15 213:19
237:16 238:4
**company's**
60:18 137:5 179:9
226:25
**compel**
234:3
**competition**
157:18
**complete**
123:17 162:14 188:3
195:23
**completely**
107:14
**compliance**
49:12
**complicated**
24:24 32:17
**complied**
64:12
**comply**
125:9
**component**
113:4
**components**
112:7
**compromise**
225:10
**concede**
24:14 202:7
**concept**
28:21,23 232:9
**concepts**
89:23 154:14

**concern**
23:6 127:13
**concerns**
50:18 111:8 128:19
**concludes**
239:19
**conclusion**
25:12 216:15 220:2
233:10
**conclusions**
32:19 63:25 217:3,23
**concrete**
215:24
**conditions**
101:23 102:11
**conduct**
188:7
**conducted**
145:16 146:7 163:6
169:21
**conducting**
15:16 28:11 199:6
**confer**
68:9,24 77:4 81:16
105:24 107:6
**conferred**
14:11 127:9 143:13
167:21 168:8
169:17 175:11
221:24 222:18
**conferring**
142:20
**confers**
81:21
**confess**
116:14
**confident**
159:4
**confidential**
62:15
**confidentiality**
43:15
**confirm**
43:17 90:10 103:23
172:19
**conflict**

31:5
**conflicts**
204:3
**confused**
102:13
**confusing**
59:20 74:15 106:20
107:10 116:17
**confusion**
65:13,20 99:15
**connected**
234:4 236:9
**connection**
11:23 12:20 211:13
**consent**
126:10
**consider**
10:16,18 12:12,16,23
13:3 39:8 130:16
**considerable**
69:5 107:18
**considered**
29:10 214:16
**considering**
151:15 160:8
**consistent**
32:23 62:10 130:6
161:5 177:22
**consolidated**
206:13,15
**consolidation**
206:16
**constitute**
63:6 172:11 216:13
216:21 217:6
**constrained**
162:12
**construction**
21:6
**construed**
102:6
**construing**
89:4
**consult**
236:5
**consultation**


MAGNA
LEGAL SERVICES

26-10769-mg    Doc 49-34    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 34 -
Transcript of May 14    2026 Deposition of Andrew Barrington Chissick    Pg 255 of 293

Page  10

104:7
**consulting**
229:25
**contain**
35:25 36:2 126:2
127:8 192:23
222:21
**contains**
214:14,23 215:16
**contemplated**
135:19 136:2 137:25
**contemplating**
94:14 166:19 234:25
**contemplation**
95:16
**contempt**
116:25 117:7 119:24
123:8 125:19
**contend**
169:24 176:23
**content**
47:11 66:2
**contention**
201:9
**contentious**
78:13
**contest**
22:22 23:25 24:20
25:19 148:7,9
161:20 166:4
**contested**
50:8
**contesting**
145:19 146:19
147:10,20 149:11
155:11
**context**
16:25 17:2 24:9,11
50:12 57:18 65:5,18
77:22 107:16 109:4
131:20 145:17
146:7,21 159:7
162:7 163:7 169:9
180:17 182:22
184:13 197:13
204:12 218:24

219:9 224:16
234:16
**continue**
113:11 144:18 145:6
160:24 162:2
170:12 194:14
**continued**
68:7
**contract**
137:20,21
**contractual**
15:5
**contrary**
92:7
**contributories**
188:9
**control**
63:10 91:4,6,13,17
91:21,24,25 117:15
132:25 133:3
134:18,19 143:12
145:8 149:10
174:22 179:14
182:2 188:3 231:15
233:19 242:8
**controlled**
91:19
**controversial**
118:11
**Cont'd**
116:10
**convening**
229:14,19 230:9
**conversation**
154:10
**conversion**
89:8 90:2
**convert**
212:14
**converting**
90:3 94:11 178:7
**convey**
66:3
**conveyed**
52:19 111:12 113:20
**conveys**

108:4
**cooperate**
235:22
**cooperation**
99:6,11 236:7
**coordinated**
231:19 234:8,9,10
235:19
**coordination**
234:21 235:5
**copy**
13:24 73:16
**correct**
5:24 7:17,25 8:7,9,13
9:8,11,14,17 11:24
11:25 16:14 18:23
18:24 19:3,4 22:24
27:15 33:11,18
34:16 36:9 39:9,12
55:18 56:11 59:8
62:20,21 65:8,15
101:9 105:17 106:6
107:21 118:22
128:24 133:14
135:6,7 139:22
141:18 142:25
144:3,13 150:10,20
161:21 177:16
203:13,14 204:8,9
204:13,20 205:18
207:22 208:11
209:11,18 211:24
212:3 215:19 216:4
216:5,9,17,18
218:12 221:21
222:3 223:19 224:5
224:6,11 225:21
226:9,16,22,23
227:15 231:6
232:23 233:12
235:25 237:14
238:16
**corrected**
99:17
**correctly**
12:22 71:15 99:17

166:14 219:15
**correctness**
51:15
**correspondence**
131:25 161:11,15
**costs**
40:5 44:3,6 163:25
164:2,24
**could**
13:20 14:14,18 17:3
26:23 29:12 38:14
59:12 62:23 65:12
68:23 75:11 85:24
89:5 94:12 95:6,8
95:14 96:9,17 97:2
97:15 106:19 107:2
109:17 115:5 127:4
142:12 146:12
157:3 159:23
163:10 169:23
187:22 188:16
193:10 195:25
199:3 200:16
227:23 236:17
**counsel**
5:21,21 11:23 29:18
29:24 30:15 63:4,17
64:15 65:10 66:8,14
67:21 141:2 157:17
160:18 195:10,12
215:7,12 216:3
218:4
**counterclaim**
113:12
**country**
49:11 181:22
**counts**
197:17
**couple**
131:3
**course**
73:2 97:22 123:13
157:5 159:14 175:3
187:18 195:20
209:15 222:15
**courts**



26-10769-mg   Doc 49-34   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 34 -
Transcript of May 14   2026 Deposition of Andrew Barrington Chissick   Pg 256 of 293

Page  11

152:16 175:12
**court's**
 38:3 42:3 56:15
  62:10 75:22 97:2
  153:4 154:20 196:8
  225:19
**court-appointed**
 137:11 188:2 225:7
**covered**
 167:10 203:7
**covers**
 69:23
**co-counsel**
 49:3 172:9
**CPR**
 46:18 117:8
**creating**
 61:17
**creditor**
 148:16 224:4 231:13
**creditors**
 57:6 148:2 179:16
  188:10 193:25
  198:12 199:9 224:9
  225:9,21 226:24
  227:22 228:9
  229:14,20,25
  230:10,13,15,16
  232:6 235:18
  236:21,25 237:25
  238:7,8
**criminal**
 236:8
**criteria**
 63:11 94:2 166:21
  216:25 217:21
  233:6
**Croke**
 2:17 3:18,18 10:14
  20:16 41:2,6,13
  51:20 52:15 66:21
  67:5 80:19 89:19
  105:10 106:25
  107:11 108:7,16
  109:19 115:12
  134:24 138:3 159:9

159:17 162:18
 171:16 195:9
 202:10 213:23
 215:13 229:9
**Cromwell**
 2:15 3:19 6:24 9:22
  52:13 54:4,7,11,20
  55:10,20,22 58:7,22
  64:18,20 65:4,17,23
  65:24 66:18 67:16
  218:5
**cross**
 9:9,12,15
**cumbersome**
 92:16
**curious**
 27:9
**current**
 89:6 94:13 168:12
  189:3
**currently**
 33:20 121:5 185:14
  211:23 212:17,24
  225:20 226:7
  236:19,24 237:23
  238:15
**cut**
 171:16 185:20

———————————
**D**
———————————
**D**
 4:7 116:4
**Dan**
 2:21 3:14
**dangerous**
 125:14 230:7
**date**
 1:12 3:4 8:17 40:21
  44:17 142:15 243:6
**dated**
 17:18 21:3 68:8
  242:4
**David**
 12:6 54:16
**day**
 7:8 27:18 42:8

203:11,19 204:7
 211:23 222:22
 243:8
**days**
 6:17 59:7 131:3
  150:13 201:25
**day-to-day**
 209:15
**De**
 2:18 3:19
**deal**
 78:14 179:10
**dealing**
 119:19 121:7 124:6
  164:14 186:21
  194:22 207:5,14
**deals**
 17:23 152:11
**dealt**
 124:9 138:22 155:23
  205:25 206:11,20
  206:22
**debt**
 177:20 178:5 181:24
  199:23 232:11
  236:21
**debtor**
 12:23 13:2 17:24,25
  18:5 35:8 57:16
  110:21 126:22
  182:2
**debtors**
 1:7 2:5 3:14,24 21:22
  56:3 62:16 63:4,9
  63:17 64:15 65:2,22
  68:11,20,25 69:12
  70:7 77:2,7 81:6
  112:14 118:13
  126:5,10 127:13,14
  129:5,18 132:13
  139:8,15 141:13
  142:18 143:9,13,16
  143:17 144:4,14
  166:9 173:8 174:23
  175:2,9 176:21
  181:3 197:24 200:7

201:10 203:3 205:9
 216:3 218:3 222:14
 223:2 231:15,17,18
 233:15 236:15
**debts**
 199:11 224:8
**decide**
 153:6
**decided**
 22:6
**decision**
 29:8 30:22 55:9
  146:2 153:5 154:21
  166:10
**decisions**
 169:8
**declarant**
 29:21,25 38:23 45:23
  48:2 50:10,15 51:2
  52:23 53:23
**declaration**
 6:23 11:9,11,12,13
  11:14,17 23:10,12
  23:17,18,20 31:17
  33:4,9,19,23,24
  37:2,8,14,20,24
  38:16 39:8 51:10
  58:3,23 59:6 61:2,6
  61:9,13 65:9 67:18
  76:20 90:9 95:17
  106:13 107:25
  108:4,13 109:11,15
  110:14 112:9 114:7
  114:13 125:21
  127:4 132:3,7 135:4
  135:13,17 142:6,8
  142:16,24 144:17
  152:4 162:4 165:24
  172:4 173:12 174:8
  180:7 181:12 182:6
  182:20 204:11
  209:10 213:22,23
  213:25 214:7,14,23
  215:15 217:2,5
  218:8,10,16 219:5
  219:21,25 220:8



26-10769-mg    Doc 49-34    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 34 - Transcript of May 14    2026 Deposition of Andrew Barrington Chissick    Pg 257 of 293

Page 12

223:16,25 227:19
231:8 232:25
240:11,11
**declarations**
6:14 30:12 34:2
36:25 38:7 57:24
61:17 62:23 147:3
**decrees**
121:9,10
**deem**
99:20
**deemed**
65:14,19
**deeply**
97:20
**defend**
113:12
**defense**
174:25
**defer**
58:25 67:20
**deferred**
144:18
**define**
143:23
**definition**
64:22,23 65:2 144:24
173:16,22 175:21
178:20 179:7
181:18 182:13
198:25
**definitions**
174:5
**definitively**
61:19
**demands**
47:12
**demarcation**
179:4
**demonstrate**
170:18
**Department**
156:5
**depend**
50:11
**dependent**

13:21 184:11
**depends**
15:15 16:24 29:4
**deposed**
4:21 53:9
**deposition**
1:9 3:6 6:11,19 7:12
7:14 52:9,11 156:12
239:11,20 242:2
**depositions**
7:6
**derive**
182:24
**describe**
29:16 47:21 99:21
195:15
**described**
75:16 92:22,23
111:19 112:20
190:21 191:11
192:5 194:18
196:10,21
**describing**
60:8 193:16
**description**
74:5 109:12
**detail**
52:14 66:7 107:18
113:17 216:25
**detailed**
162:23
**details**
43:20
**determination**
35:14 68:5 145:23
**determine**
57:21
**determined**
53:11 170:21 216:16
**determines**
142:3
**dichotomy**
178:10,13
**did**
6:10,13,16,18,21
19:5,6 22:14 58:7

59:9 61:20,21,22
62:2 65:24 66:3,10
66:18 67:3,8 98:17
117:4 124:15 134:6
135:4,11 164:19
179:18 187:7
211:18 231:23
**didn't**
107:4 113:25 130:25
136:4 182:11 187:6
234:23
**difference**
33:4,6 37:12,18
60:10 83:23 92:21
99:19 111:14
113:21 121:8
129:11 229:4
**differences**
152:9
**different**
8:3 31:11,14 32:19
33:8,12 38:4 51:6
83:18 89:23 90:7
92:2 96:23 101:3
116:15 121:6,7
158:11 164:12,25
195:24 197:15
219:5 222:15
225:14 235:6,20
**difficult**
90:18 92:6 95:10
146:15 158:10
173:23 230:5
237:18
**difficulties**
199:11
**difficulty**
138:8
**diminish**
78:5
**direct**
112:25 145:7,10
151:8 159:6 220:6
227:25 242:8
**directed**
20:2 80:13 231:12

**direction**
17:20 122:7 124:7
196:17
**directions**
19:20 35:5 48:9 51:7
97:3,6
**directly**
9:20 152:7
**director**
22:3 74:23 110:20
111:7 120:17,25
126:22 127:12
128:18 147:2
**directors**
14:11,13 17:25 18:4
18:5,6,9,17,20,20
21:11 22:20 35:2,8
59:18 60:6 118:9,12
118:12,17,18,22
119:10,10,12 120:4
120:5,6,7,11,13
121:5 126:3,4,6,7
130:21 131:20
142:18,21 143:9,15
144:4,10,11,15,19
144:21 145:6,17,24
146:7 147:5 148:11
149:10,19 151:16
155:10 157:6
161:19 163:7
164:18 168:13
169:16,22 171:4
237:6
**directs**
5:22
**disagree**
76:8 82:15 107:14
158:8 170:3 228:11
228:13
**disagreement**
102:17
**discharge**
24:2 40:2 98:16
145:21 146:23
147:11 148:14,24
149:5,15,18,19


MAGNA
LEGAL SERVICES

26-10769-mg    Doc 49-34    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 34 -
Transcript of May 14    2026 Deposition of Andrew Barrington Chissick    Pg 258 of 293

Page 13

155:13 163:20
164:15 166:6 167:5
167:9 171:7 191:2,9
**discharged**
39:22 40:3,8 41:19
41:22
**disclosed**
130:5
**discloses**
109:16
**disclosing**
108:25 114:7
**discontinue**
113:11
**discover**
130:4
**discovery**
239:14
**discretion**
108:19 196:8
**discuss**
143:25
**discussed**
7:11 52:21 85:4
133:18 136:21
189:4 211:22 215:2
222:22 226:19
228:24
**discusses**
33:19
**discussion**
52:17 75:11
**discussions**
66:9
**disinterest**
46:23
**disinterested**
46:16
**dismiss**
163:24
**dispensation**
57:15
**dispute**
8:11 34:7,20 35:12
36:12 92:20
**disputes**

9:4 20:8 42:22
239:14
**disputing**
92:24
**dissipation**
90:17 92:11 93:11
94:4 103:10 117:16
**dissolved**
188:12
**distinct**
45:15 178:15 206:10
**distinction**
8:6 14:25 42:14 48:4
74:19 137:3 230:14
**distinctly**
218:13
**distinguish**
29:23
**distributing**
192:8,25 193:2
**distribution**
188:8
**DISTRICT**
1:3
**diverge**
152:10
**divergence**
205:24
**divest**
142:18 144:10
**divested**
143:10 144:4,14,20
**docket**
56:24
**document**
17:11 20:19 58:5
62:3,8,13 68:12
**documentation**
95:13
**documents**
15:24 26:9 33:8 38:5
49:10,12 61:24
214:8
**does**
18:8,9,11,12 29:2,20
35:25 36:2 39:17,22

40:4 43:25 51:14
54:6 55:22 77:12
88:21 90:11 92:15
96:7 97:17 103:6
106:9 112:15
118:16 126:14
128:25 131:14,16
136:20 138:15
144:11 149:18
159:3 165:11
173:21 189:14
225:13 242:8
**doesn't**
104:8 176:10 183:22
198:8
**doing**
15:12 29:21 32:3
36:17,24 51:13 93:4
138:25 147:16
154:13 168:24
189:11,14 233:23
237:16
**done**
7:21 10:22 30:11
31:17 50:20 85:4
126:24 139:9,24
140:13,19 141:9
142:5 164:22
171:19 194:24
195:7 197:20
234:16
**door**
176:6,14,17
**doubt**
45:14 122:2 123:14
143:15 157:12
183:8
**down**
5:2 40:17 42:19
56:13 73:19 178:9
**draft**
62:2 194:4
**drafted**
58:5,6,23 61:5,7
150:21
**drafting**

36:5 37:13,15 92:19
119:16
**draw**
40:17 42:18
**drawdown**
40:21,22
**drawn**
56:13 157:9
**Drury**
12:6 54:17
**Dubai**
10:6
**duly**
4:9 242:2
**during**
151:16 187:18
**duties**
15:7 37:20 38:22
39:4,6 79:8,11,16
80:6 177:10 221:7
221:23
**duty**
30:24 31:2,2,4,6,6,7
32:6 36:17 39:9
46:25 79:7

---

**E**

**E**
4:7 116:2,2,4
**each**
3:9 21:21 69:16 81:7
98:11 102:16
104:15 110:21
113:4 126:5,22
166:10 186:9 217:2
222:15
**Eadie**
195:8 196:24 197:19
**earlier**
5:24 39:13 52:8 59:5
64:19 103:21
104:19 136:16
161:3 163:5 169:14
179:18 180:2
222:23 226:19,20
228:25 236:13



26-10769-mg    Doc 49-34    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 34 -
Transcript of May 14    2026 Deposition of Andrew Barrington Chissick    Pg 259 of 293

Page 14

238:9

**early**
201:25

**ease**
42:14 75:10 229:3

**easier**
42:10 98:10

**Eastern**
166:11

**easy**
90:21

**educated**
153:3

**effect**
49:22 106:17 107:19
112:3,6 118:8
119:21 122:3,16
130:9,12,23 131:14
131:21 149:21
157:11 170:25

**effective**
38:10 236:7

**effectuate**
50:7

**efficient**
203:6 234:15

**egging**
60:21,22

**either**
120:10 122:11 124:3
124:7 158:16
173:17 188:8
230:18

**element**
25:17 177:5 182:13
220:4

**elements**
30:10 38:2 56:25
73:19 106:14 168:9
176:17 182:7 196:3
215:3 224:23

**ellipsis**
112:10 118:7

**else**
52:10 62:4 73:15
90:22 114:6 147:6

193:9

**elsewhere**
132:23 139:5 218:7

**empowered**
112:11 180:18

**empowerment**
112:19,21

**enable**
231:19 234:3,7

**encroach**
95:8

**encroaching**
66:6

**end**
112:23 124:14
125:23 128:22
135:17 157:19
159:7 190:20,22
191:5 192:9 196:9
196:10,11,20

**ended**
159:21

**enforced**
42:7

**enforcement**
231:12 234:22
235:23

**engage**
67:8 69:16

**engaged**
11:21 25:25 148:10
203:12,15

**engagement**
12:25 25:24 26:7,8
26:12,23 27:4,7,10
27:13,25 28:5,25
29:17 43:7 44:22
45:11 54:20 203:22

**engagements**
29:2

**engaging**
207:4

**England**
8:17 154:11 155:17

**English**
8:18 60:23 124:21

140:5,16 151:17
152:5,7,14,14,19
153:9,13 154:5,14
154:18 155:18,20
156:18

**enough**
24:13 50:5 155:2,17

**ensure**
197:25 230:3 233:24

**ensured**
62:9

**entail**
80:9

**enter**
224:7

**entities**
12:8 201:17 202:4
207:8 236:25 237:7
238:2,10,14

**entitled**
12:14 40:9,17

**entity**
143:14

**entwined**
178:18

**enumerated**
125:12 223:3 226:13
230:11 233:9

**equally**
163:15

**equitable**
208:6,16,19 210:7,11
210:22 211:6

**equivalent**
120:14 132:20
135:21 190:12

**error**
39:7,10 128:3

**especially**
10:18 123:10 126:19

**ESQUIRE**
2:6,7,7,12,12,17,18

**ESQUIRE(VIA**
2:13

**essence**
71:20

**essentially**
21:5,20 74:7 145:15
153:15,21 154:6
197:4 232:3

**establish**
198:11 237:18

**established**
143:8

**establishing**
149:24

**estate**
72:13 73:6

**estates**
40:10

**et**
1:6 3:8 15:6 189:7
194:9

**ether**
79:24

**even**
5:20 18:17 38:12
120:19 149:14
191:5 196:10
207:14 210:5
224:20

**event**
226:4

**events**
212:10

**eventually**
78:21

**ever**
11:5 23:5,8 27:6
85:24 123:22,24
124:8,9 209:2,23

**every**
36:7 114:2 186:20

**everything**
4:24 5:2 165:20

**evidence**
31:19 33:9,17 46:13
47:8 48:7 50:19
51:8,15 109:21
192:16,18,23
193:23 204:14
205:22



26-10769-mg   Doc 49-34   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 34 -
Transcript of May 14   2026 Deposition of Andrew Barrington Chissick   Pg 260 of 293

Page  15

ex
 56:23 180:12,12
exactly
 39:5 61:10 156:22
  169:19 224:2
EXAMINATION
 4:11 116:10 202:22
  240:3,3
examined
 4:10
example
 13:19 16:4 24:5
  33:13 42:12 49:6,25
  51:3 66:10 69:21
  74:22 137:18
  146:16 148:13
  149:3 157:16
  160:16 167:15
  183:2 207:6 220:7
  230:9 232:7,8
  234:21
examples
 146:19 147:7 149:13
  166:16 170:17
Except
 214:5
exception
 5:15
exceptions
 189:18
excerpt
 45:24 46:5 240:11
excerpts
 172:15,20 240:11
exchanges
 66:14 197:18
exclude
 104:8 149:18 166:20
  176:12 202:2
excluded
 11:6 132:2 161:24
exclusion
 110:19 111:5,15,16
  111:18 126:20
  127:10 128:16
  232:5

exclusionary
 131:14
executed
 27:16
exercisable
 142:21 185:14
exercise
 71:4,12 72:5,23 73:2
  74:4,10,17 75:14
  76:11 81:3 93:24
  97:8 100:20,23
  101:6 102:22 104:9
  105:4,15 118:20
  147:5 169:6 179:20
  180:11 223:8,21
exercised
 70:16,20 76:6,9
  81:25 82:3 100:17
  102:23 104:3 106:7
  110:19,20 111:6,6
  126:21,21 127:11
  127:11 128:17,17
  180:21,23 226:10
  226:18
exercising
 15:20 16:20 73:3
  137:10 184:9
exhausted
 189:22
exhibit
 11:13,14 17:9 20:13
  23:11 45:19,24 46:4
  57:25 61:4 62:24
  68:13,15,18 76:21
  78:24 116:14 142:9
  150:14 157:22,23
  172:20 186:3,23,25
  213:25 214:2 222:5
  222:8,23 240:11,11
  240:11,11,11,11,11
  240:11,11,11,11,11
EXHIBITS
 240:9
exist
 18:6
existing

17:15 20:25 96:11
  110:20 111:7
  120:17 126:22
  127:12 128:18
exists
 84:11,12
expanded
 218:7
expect
 200:16
expectation
 22:13 65:15 75:22,24
  141:24 156:25
expectations
 59:3 62:11
expected
 71:5 117:18
experience
 52:21 140:2,11
  177:17
expert
 10:16,19,20,21 46:13
  46:16,23,25 47:8,10
  47:15 48:2,5,7,23
  49:18 51:2,8 52:23
  53:3,9,22,24,25,25
  153:11 154:3,25
expertise
 47:3,18 67:17 215:18
experts
 46:10 48:10,13
expires
 243:10
explain
 6:25 66:19 100:9,12
  144:16,25 152:3
  153:23 158:14
  181:16 182:16
  187:12 217:12
  228:12
explained
 6:25 72:20 119:9
  120:8 152:4 162:22
  180:8 181:13
explaining
 109:4

explanation
 49:20 161:2 182:12
explicit
 223:12
exposed
 62:17
express
 22:10 30:10 70:12
  89:7 112:19,21,22
  123:11 133:17
  149:4,20 162:8
  194:9 217:18
  223:12 224:5,10
  226:13,16
expressly
 5:22 16:15 63:16
  110:18 112:11
  126:8 132:8,11
  135:18 136:2,6,12
  166:19 175:4,7,22
  181:12 182:19
  189:16 190:10
  223:4,21 225:20
  230:25 235:22
extend
 108:22 160:6 166:24
extends
 119:25
extension
 117:12
extent
 14:13 38:6 43:4 57:6
  65:11 66:23 67:10
  69:9 70:10 75:3,7
  76:14 83:7,15,25
  84:4,12,16 86:17,20
  86:22,23 87:8,11
  90:25 93:18,23 95:2
  101:15,17,21
  102:19,24 103:2,11
  103:19 104:17,24
  124:12 125:10
  160:4 175:23
  214:13,22 215:9,15
  220:11 221:3
  225:11 228:21



26-10769-mg    Doc 49-34    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 34 -
Transcript of May 14    2026 Deposition of Andrew Barrington Chissick    Pg 261 of 293

Page 16

229:5 234:13
**external**
234:18
**extra**
10:15
**extremely**
51:11

**F**

**F**
116:2
**facets**
195:24
**facially**
125:11
**facilitate**
231:17 233:14 236:6
**facilitates**
116:23
**facilitating**
119:25
**facilities**
199:23
**facing**
149:8 165:2 179:10
**fact**
18:11 43:13 49:16
57:8 71:22 83:14
86:4 88:21 112:2
120:23,24 121:16
135:25 149:17
164:11 165:2,7
169:10 177:12
184:16 189:12,15
198:17 210:3
225:11 237:5
**factor**
39:21
**facts**
170:18 175:20 214:6
**factual**
48:15
**Fagin**
1:12 242:4
**failed**
164:17

**failure**
78:4
**fair**
16:13 21:22 24:13
47:22 50:5 67:14
82:20 93:11 94:25
96:16 140:25
205:10,12 208:18
212:9 214:11
216:10 219:2,12,20
222:24 223:11
230:13 233:8
**fairly**
159:4
**fall**
89:5 95:14 110:4
171:4 201:22
**falls**
163:23
**familiar**
46:7 50:24 173:11
178:12 209:7,12
210:21 211:11,14
**far**
94:22 131:22 231:3
**faster**
123:19 142:8
**favorite**
125:22
**FCDO**
45:7
**fee**
57:20,22
**feel**
37:6 39:12 49:23
51:12 72:9 92:25
96:7 217:15 228:4
**fees**
28:11,13 39:14 40:10
40:18 42:4,10,25
44:3,6 56:13
**fell**
94:2
**Femino**
2:6 3:12,12 4:12,18
17:6 20:10,18 23:9

41:3 45:20 51:23
52:5 66:25 108:9
115:14 116:11
134:25 138:12
150:12 157:21
159:10 171:18
172:2 195:11
202:12 240:3
**few**
4:19 6:17 34:19 52:6
59:6 159:24 176:17
190:4 203:8,25
204:4
**fiduciary**
31:2
**figures**
28:17
**file**
19:5,7 22:23 24:15
200:20
**filed**
11:18 17:7,14,19
18:22 20:11,24
21:15 22:2,3 23:19
33:24 34:2 35:20
62:8 121:13 122:8
134:16 150:13
166:5 200:11
**files**
36:10
**filing**
33:23 51:8
**filings**
7:15 197:23 198:3,6
200:6
**Filled**
241:11
**final**
146:24 182:12
**finalizing**
62:7
**finally**
188:12
**financial**
198:8 200:17
**find**

30:8 72:18 80:11
114:13 116:16
117:6 153:12
154:24 159:16
163:2 200:2
**finding**
196:3
**fine**
34:23 67:9 69:25
**finer**
147:16
**finish**
4:25 199:14
**finished**
202:16 238:23 239:9
**firm**
25:11,21 27:7 29:9
29:11 55:6,16,17,17
203:2
**firms**
55:2,15 178:14
**first**
11:8,11,12 19:13
23:15 47:5 55:6
61:8 62:24 118:6
123:13 127:4
142:12 151:13
159:24 165:25
172:5,6 176:3
185:23 186:6
203:21 213:23,24
216:12 224:23
**fit**
166:21 175:20
**fits**
121:21 194:12
**five**
105:20 136:5
**fixed**
85:3
**Flexner**
1:11 2:4
**flicked**
122:20
**flip**
62:23 128:13


MAGNA
LEGAL SERVICES

26-10769-mg   Doc 49-34   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 34 -
Transcript of May 14   2026 Deposition of Andrew Barrington Chissick   Pg 262 of 293

Page 17

**Flipping**
76:19
**floating**
198:15 199:20,22
**floor**
202:7
**flow**
198:21
**focus**
9:3 77:25 177:11,13
**focusing**
24:11
**follow**
22:19 37:16 43:6
87:2 170:11 191:6
215:20 225:14
232:21
**followed**
152:14
**following**
8:25 26:3,5 33:22
34:3 194:16 203:16
237:10
**follows**
4:10 116:6 127:16
144:19 148:10
159:25
**foregoing**
242:8
**foreign**
1:7 2:15 8:20 48:14
48:21 49:2,3,4,10
62:9 63:12 64:7
99:7 132:11 141:25
142:2 172:11,13
173:2,3,6,10,17
174:13 175:7,13
176:2,13,19 180:18
181:8,19,20,22
182:3 217:21
**form**
24:7 41:2 47:11
77:16 85:17 90:7,20
96:3,14 106:25
116:20 117:2
121:17 134:24

138:3 194:13
215:13 229:9
**formal**
18:12 46:13 48:23
49:18 51:7,7 53:3
55:5 206:16
**formally**
48:5
**format**
62:3 67:11
**formats**
38:5
**formatting**
58:24
**former**
120:24 126:3,4,7,7
**forms**
125:6
**formulation**
72:18
**Forneret**
2:12 3:22,22 202:23
202:25 213:24
222:4 229:10
238:20 240:3
**forth**
63:3,23 64:3 76:22
105:8 113:22 121:9
121:10 168:3 172:8
214:6 216:2 217:5
218:3
**forum**
148:20 168:23 170:6
**forward**
31:16 32:10 36:16
198:23 235:18
**found**
143:4 153:25 167:15
**four**
224:23
**framed**
197:20
**framework**
184:23 213:8,16
**framing**
161:7 197:12

**free**
169:5
**freezing**
196:19
**French**
49:21
**front**
122:24
**full**
42:11,15 71:2,25
114:20 135:10
145:24 155:24
156:19 186:10
188:25 190:25
212:7,8,14,22 221:3
224:4,18,20 225:9
225:15,21 226:6,24
227:22 228:9 229:2
229:3,4 235:12
**fully**
41:23 212:6 219:10
**full-blown**
191:10 192:24
**fun**
60:24
**function**
15:12 79:3 170:19
220:24
**functioning**
190:7
**functions**
69:13 75:5 79:15
83:9 105:5 115:2
167:17 220:14,18
**functus**
157:7
**fundamental**
30:4
**fundamentally**
32:6 38:6 40:15 42:2
42:16 73:20 80:5
107:21 117:9
121:22 149:7 153:5
161:16 194:2
205:25
**further**

25:12 43:6 60:16
70:21 71:17,18
72:17 75:13 76:7
85:5 99:24 104:7
106:4,10,15 107:9
108:5,14 110:2
127:8 128:9,10
133:11,19 134:6
143:24 170:17
176:12 180:11
223:5,9 224:12
237:12 239:15
**future**
235:4

_____

**G**

**G**
4:7 116:4
**game**
196:9,10,11,20
**gave**
147:7 161:3 162:22
**general**
43:12 68:3 79:6,11
79:12,19 135:13
154:9 162:16
200:14 204:24
205:19 209:16,19
221:10,15 235:11
**generally**
14:2 36:10 46:6
89:16 104:19
129:12 130:20
136:16 138:23
205:4 209:12
211:11 222:11
**General's**
45:15 129:21 195:10
195:11
**generated**
42:18
**geographical**
130:16 131:9,11
**get**
5:2 31:9 40:3 42:25
49:13,18,19 52:16



26-10769-mg    Doc 49-34    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 34 - Transcript of May 14    2026 Deposition of Andrew Barrington Chissick    Pg 263 of 293

Page 18

56:17 58:9 72:12,14
73:3 78:22 84:25
106:22 123:18
124:14 133:25
134:4 150:12
156:18 188:5
191:12 236:15
**getting**
8:23 39:18,23 125:19
**Gibbon**
150:21
**give**
10:15 48:8 49:6 51:9
74:16 117:13
151:11 159:15
163:18 171:18
181:17 238:20
**given**
10:20 34:20 45:4
49:15 104:22
109:22 112:2 130:9
146:18 233:4
235:13 242:2
**gives**
80:17 82:6 109:11
146:25 173:16
**giving**
35:5 38:8 46:12
**Glenn**
34:19
**Global**
1:6 2:10 3:7,25 21:18
22:2,4 203:4 222:7
236:23
**go**
11:8 17:6 20:10 23:9
38:7 45:22 48:12
57:23,24 60:2,16
62:25 66:7,13 67:22
68:13 78:20 83:16
85:19 86:14 89:11
91:11 98:17 102:15
105:12 110:12
116:13 123:6
132:15 136:10
153:14 154:5 162:9

162:25 166:22
170:9 172:3 174:7
175:10 181:18
182:5 187:22
192:15 193:22
196:23 201:2,4
203:7 204:14
216:25 219:24
233:5
**goal**
192:9
**goes**
92:8 169:11 195:15
**going**
13:21 16:11 35:22
41:17 43:20 45:19
51:21,24 57:2,20
60:24 66:21 69:5,6
76:22 80:10 81:7
85:19 94:5 95:10
98:4 99:13 104:5,20
110:15 113:9
115:12,16 117:13
132:6 142:2 145:24
148:23 153:8
158:10,14 162:25
165:22 169:11
171:21 176:6,16
178:11 189:10
196:4,6 198:23
202:17 209:17
227:2 228:2,9
234:14,20,24 239:3
**gone**
107:23 109:9,23
110:6 156:9,23
177:7 216:24
**good**
3:2 4:14 51:21
160:13,25 171:17
202:24
**gosh**
129:2
**got**
13:24 39:25 41:5
85:21 139:13

156:16
**governed**
26:7,8
**governments**
45:8,10
**grant**
108:19 133:18
190:25
**granted**
51:7 68:2 70:9 81:23
110:18 116:21
126:19 155:12
166:8 180:22
188:21,25 192:10
194:3 199:23
212:22 230:25
**grants**
69:7 86:12 100:12
101:19
**Great**
94:16 160:23 173:15
**Griffin**
2:21 3:14 202:11
**ground**
157:13 163:21 203:9
210:6 211:6
**grounds**
200:24 208:13,16,17
208:19,20,20 209:5
210:22
**group**
8:12 12:13 229:24
232:4
**guess**
98:7 117:23 153:3
**guide**
153:18

---

**H**

**h**
4:8 95:19 116:5
**had**
7:22 11:5 43:8 44:2
44:23 45:9 51:7
52:8,12,22 59:5
85:17 123:22 139:9

147:8 157:12
162:22 164:21,22
174:11 181:15
236:20 237:17,22
238:24 239:11
**hairs**
92:18
**halfway**
110:14 159:13
**hampered**
237:17
**hand**
62:13 73:17
**handy**
68:12 76:23
**happen**
32:20 41:25 195:23
196:11,15
**happening**
150:18 167:16
168:13 188:19
191:9
**happens**
40:6 188:14
**happy**
78:20 89:6 94:13
158:20 161:7
173:25 181:16
222:16 223:15
238:18
**has**
12:25 32:11 34:8
35:16 39:14,25
42:20 43:25 44:17
45:9 52:10 54:20
62:16 70:12 71:20
75:23 79:14 108:19
124:8 130:4 131:22
131:24 143:16
148:24 149:4
150:20 154:19
156:9 157:15
160:20 161:10
163:2 165:14
170:23 184:18
188:5 190:20,23



26-10769-mg   Doc 49-34   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 34 - Transcript of May 14   2026 Deposition of Andrew Barrington Chissick   Pg 264 of 293

Page 19

191:18 192:2,11
193:18 194:18,24
195:7,24 196:10
198:16 211:3
220:10 223:2 237:8

**hat**
16:22

**hats**
16:19 138:15

**haven't**
7:9,20 21:23 26:25
28:7 45:3 54:13
98:19 121:20
122:25 123:3
124:18 156:23
158:24 180:16
205:11

**having**
4:8 47:22 74:20
83:24,24 91:24
109:23 119:8
122:20 178:15
189:14 202:14
229:24

**HCOM**
186:5

**he**
162:21,21,23 163:21
189:6 190:25 191:2
195:5,9,15 197:10
220:14

**head**
193:13

**hear**
5:6 165:20

**heard**
5:13 123:22 186:7

**hearing**
24:12 35:22 39:16
150:18 160:18
169:10 187:2,4
207:7

**held**
1:10 155:9 187:2

**help**
30:7 47:2 73:24 79:2

230:3

**helpful**
13:23 29:13 77:21
160:8 170:10 174:6
174:16 201:2 227:4

**her**
10:15 47:3 205:22

**here**
3:19 4:18,24 11:21
18:25 29:7,21 30:3
35:4 64:14,24 65:21
73:9 76:25 78:6
79:18 82:17 83:6
86:2 91:2 92:18
100:6 101:11
102:20 105:12
111:15 112:20
115:15 121:9,10,21
123:10 125:22
126:12 129:5 133:7
137:25 138:19
142:24 146:5
151:13 153:2
156:23 157:2 159:7
161:5 164:12 165:2
175:19 176:6 179:6
179:18 180:15
182:17 185:24
186:4 187:23
188:16 191:11
193:16 196:21
217:20,24 220:17
223:20 229:8 233:9
235:3 236:16

**HEREBY**
242:2

**Hi**
4:13 116:12

**hidden**
193:13

**high**
140:6 151:17

**highlighting**
38:2

**highly**
96:4 152:15,19

153:16 154:7,15

**high-level**
106:17 112:3

**Hill**
2:10 3:24 203:3
205:6 222:6,12,20
236:23 237:3,24
238:13

**him**
7:7,9,12 66:22
162:20

**his**
7:11,14 47:3 52:9,11
52:18 108:8 195:17

**hitherto**
142:21

**HOLDING**
1:6

**Holdings**
3:8

**honest**
38:25

**honestly**
155:8

**honestly-held**
30:10 31:16 33:10

**Hong**
132:22 140:13,15

**Hopefully**
65:18

**hour**
51:22 115:13

**how**
6:23 9:18 10:23 14:2
19:24 22:6,7 26:4
28:15 31:11 37:13
37:14 41:16,20
44:17 47:21 50:7
59:2 63:25,25 65:24
66:3 82:18 85:12
92:23 99:21 100:12
106:19 107:10
118:21 119:5,7
122:24 136:16
139:23 140:13,17
140:19 145:12

153:6,18 155:5
167:16 175:19
179:2 188:6 191:3
191:13 193:5
200:16 221:2

**however**
15:23 92:22 221:6

**Hudson**
1:11 2:5

**Hunkle**
2:20

**hypothetical**
90:19

**hypotheticals**
33:16 95:11 230:6

---

**I**

**idea**
62:18 123:22 148:23
199:5 209:16

**identical**
21:20 222:13

**identification**
11:16 17:10 20:15
23:13 46:2 68:17
78:25 150:15
157:25 172:22
186:24 222:9

**identified**
39:11,11 101:10,11
198:11 236:20,24
237:25 238:7,8

**identify**
39:7 59:25 79:17
91:10,12 237:15

**identifying**
80:23 87:24 88:8

**illiquid**
90:4

**imaginative**
95:9

**impact**
40:4

**impartially**
47:2

**implications**



26-10769-mg    Doc 49-34    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 34 -
Transcript of May 14    2026 Deposition of Andrew Barrington Chissick    Pg 265 of 293

Page 20

83:17 125:18
**implies**
 43:5
**important**
 114:3 168:11 187:19
    220:3 224:15
**imported**
 114:8
**imposed**
 45:5
**impositions**
 199:10
**impossible**
 25:11
**inaccurate**
 81:14
**inappropriate**
 50:20
**incidental**
 97:16,18 105:4
**include**
 21:3 23:24 29:20
    73:15 97:9 103:6
    106:4 114:21 135:4
    161:22 164:5 165:5
    166:3,13 167:3
    177:10 180:20,22
    181:16 196:2 210:7
    210:11 221:8
    224:22 225:8
**included**
 78:15,17 134:23
    211:5 226:17
**includes**
 82:19,24 101:20,22
    165:17 179:19
    194:7
**including**
 9:12 109:24 113:12
    132:11 143:14,19
    173:4 175:7 181:22
    196:12 231:4
**inconsistent**
 120:20,23 125:11
**incorporates**
 84:6,13,18 86:21

**incorrect**
 72:18 110:6 119:13
**incredibly**
 92:15
**incumbent**
 30:8 72:10 85:20
    96:5 149:9
**incurred**
 44:15,15,17
**indeed**
 97:16
**independent**
 47:10,16
**independently**
 55:15
**indicated**
 160:17
**indicating**
 108:21
**individual**
 207:16
**individually**
 12:15
**Industry**
 156:5
**inevitably**
 37:25 67:20
**influence**
 153:4
**influential**
 152:15,19 153:17
    154:7,15
**information**
 25:12 26:15 62:16
    113:16 130:3 196:5
    198:13,16 199:19
    199:21 201:14
    215:11 234:5 236:5
    238:3,5
**inherent**
 70:11 79:20,22
    145:25
**initial**
 21:2
**innate**
 85:3

**input**
 57:7,19
**inquire**
 160:9
**inquires**
 25:5
**insight**
 22:17 198:8
**insofar**
 103:16 111:7,12,24
    113:15,19 127:13
    128:18,23,25
    130:21 145:6
**insolvencies**
 9:9
**insolvency**
 8:11 9:3,6 10:17,21
    15:17 16:14 17:15
    19:16,17 20:25
    34:10 53:6 63:7,8
    70:15 72:22 73:17
    78:22,24 82:24
    84:18 100:25
    153:11 154:3,14
    174:20 177:15,17
    177:23 178:3,11,13
    178:16 181:24
    182:22 185:5
    198:25 199:2
    200:20 201:17
    204:20 205:3,17
    206:8 207:22
    208:14 209:14
    210:6 224:25 225:2
    234:16 235:17
    240:11
**insolvent**
 188:11 197:24 198:4
    199:3,5,12 200:4,7
    201:10
**inspecting**
 16:21 17:3
**instance**
 16:7,9 48:9 49:9
    69:22 72:8 77:16,18
    80:4 95:10,11 96:2

117:7,11 133:23
    148:2 178:18
    211:14
**instances**
 122:6 208:3 209:20
    209:23 210:21,23
    211:11
**instead**
 96:25 128:6 154:23
**instruct**
 12:15 52:15 157:17
    160:17
**instructed**
 20:4
**instructing**
 66:16
**instruction**
 22:18
**instructions**
 48:8 163:18 164:22
**Insurance**
 151:7,18 155:3,22
    157:24 167:2
    240:11
**intended**
 231:14
**intent**
 131:21
**intention**
 119:16,22 204:15
**inter**
 68:7
**interaction**
 140:7
**interest**
 31:3 42:21 54:25
    55:4 195:24 208:9
    210:17,19 231:11
    232:3
**interested**
 88:4 232:4
**interests**
 196:12
**interim**
 68:2 173:5 181:23
    190:9


MAGNA
LEGAL SERVICES

26-10769-mg   Doc 49-34   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 34 -
Transcript of May 14   2026 Deposition of Andrew Barrington Chissick   Pg 266 of 293

Page 21

**interlocutory**
163:15 164:6,8 165:6
    165:8,18 167:3,7
**international**
235:14
**Interpath**
9:25 12:16,18
**Interpath's**
10:4
**interpretation**
76:4
**interrupt**
194:25 198:21
**intervene**
35:9 161:20
**intervening**
161:22 165:12
    168:15 171:5
**intervention**
223:6
**into**
10:6 12:9 22:18
    27:21 43:20 52:16
    58:9 66:7,14 75:23
    79:16 83:17 90:22
    94:11 95:14 188:25
    192:18,19 198:8
    206:17 212:11,22
    216:25 224:7
**introduce**
3:10 222:4
**introducing**
48:7
**investigate**
68:10,25 70:7 76:25
    174:23 233:22
**investigating**
99:4
**investigation**
15:16 69:23 70:12,13
    231:17 233:14,16
**investigations**
199:7 201:24 236:8
**investigative**
69:19 77:7 81:6
    196:3

**investigatory**
15:12,19
**invoices**
44:12
**invoked**
209:24
**involve**
9:13 37:25 61:21
    117:10 211:19
**involved**
9:22 36:4 45:17
    119:3 197:16 209:4
    209:21 211:2,5,10
    238:10
**involvement**
21:13 75:22
**involves**
209:5
**involving**
207:7
**Islands**
8:24 111:10 128:21
    129:7,10,13,19
    130:7,11 131:19
    143:18 235:24
**isn't**
158:23 195:13,22
    197:2
**issuance**
142:14
**issue**
25:15 34:17,21 36:2
    50:4 67:7 75:15
    82:15 108:11
    154:25 160:4
    217:18 222:14
**issued**
34:9 57:22 67:25
**issues**
17:21 30:6 32:17
    34:14 35:17 38:3
    43:15 45:14 48:14
    48:15,16 51:2,9
    53:7 62:6 67:20,21
    107:20 152:11
    203:24 204:14

215:4
**item**
47:5 60:20
**items**
52:6 70:2 166:14
**its**
17:3 21:7 24:7 36:12
    36:13 41:17 85:17
    94:22 103:17 111:9
    128:20 132:19
    135:20 148:24
    157:7 188:6,8 230:2
**itself**
15:23 18:13 60:15
    69:23 78:3,5 83:16
    85:7 96:25 100:14
    109:11 128:7 148:6
    149:4 163:14 230:8
**iv**
112:12 113:6
**I'd**
20:10
**I'll**
48:24 87:22
**I've**
6:24 7:19,20 24:10
    30:11 31:17 39:3
    50:19 72:25 99:3
    100:5 101:10
    111:19 113:24
    122:25 123:24
    126:24,24 131:3
    138:22 141:3
    146:18 148:19
    151:6 172:15
    175:16 176:2,9
    179:21 181:12
    201:6 209:4 211:2
**i.e**
75:17 194:22 213:5

_____ **J** _____

**j**
95:24 157:10
**Jacob**
2:17 3:18

**James**
12:6 54:16 197:19
**January**
28:10 68:2,8 142:15
    222:25
**JEREMY**
2:12
**Jerry**
3:25
**John**
150:21
**joined**
3:25
**joint**
3:20 10:5 12:4,7
    29:18 48:10 54:17
    66:8 68:4 132:20,25
    166:8 211:25
    228:19
**JOSH**
2:13
**JPL**
42:15 68:15 137:20
    140:12 141:6
    148:23 149:17
    240:11
**judge**
34:19 35:15 107:10
    187:16 190:20,23
    192:5
**judgment**
156:16,21 157:24
    158:5,6,22,25
    163:15 190:23
    240:11
**judgments**
156:18
**judicial**
63:6 181:21 185:19
    216:13,22 217:7,10
    217:15
**jump**
195:17
**jurisdiction**
111:10 124:17
    128:21 129:6,13,19



26-10769-mg　Doc 49-34　Filed 05/21/26　Entered 05/21/26 15:29:05　Exhibit 34 - Transcript of May 14　2026 Deposition of Andrew Barrington Chissick　Pg 267 of 293

Page 22

129:20 130:2,10
131:19 139:14,18
141:25 142:2 210:5

**jurisdictions**
8:15 99:7 124:14,15
132:11 138:22
139:4,10 155:3
175:7 178:15
235:20,25

**Justice**
152:22 188:22 207:7

**justify**
85:23

---

**K**

**k**
4:8 96:20 116:5

**KC**
150:21 197:19

**keep**
68:12 76:23 85:14
94:5 98:4 162:11
184:16 193:8 203:5

**keeping**
178:4,5 239:12

**kept**
101:10

**key**
86:2 112:7 162:3

**Kim**
2:9 3:23 34:8,13
59:17 65:6 122:10
122:12 161:14
200:10 202:8 203:2
207:10 237:11

**kind**
25:11 100:12 117:10
117:21 122:21
131:15 173:16
175:20 177:19,20
178:3,13 191:19
194:23 195:6 203:5
205:13 212:9
218:12 223:12
234:17

**kinds**

32:15 209:13,16

**Kingdom**
132:22

**know**
5:25 19:24 20:3,4
27:2 29:12 30:21,22
40:24 41:4 42:13
44:5,7,8,9,13,14,18
44:20 51:20 52:13
53:10,19 54:19 55:8
55:11 56:9,19 61:16
61:22 62:14,15 64:2
77:15,19 93:2,23
96:4 118:2,10 119:7
119:15 120:22
121:18 124:12,13
124:23 130:25
135:8,9 140:11,13
140:17,19 145:12
156:11,22 158:18
166:17 180:18
182:7 190:24 191:5
191:11 199:9
200:17 203:6
205:21 209:20,22
211:9 217:14
238:17

**knowledge**
54:6 124:9 208:24
214:8 237:2

**known**
25:19

**knows**
44:16

**Kobre**
2:9 3:23 34:8,12
59:17 122:10,12
161:14 200:10
202:7 203:2 207:10
237:11

**Kobrre**
65:6

**Kong**
132:22 140:14,15

---

**L**

**l**
96:22,23

**label**
18:11

**language**
86:23,25 92:12,16
101:17 129:7 132:3
135:5,22 136:5
137:25 138:4
159:18

**large**
201:17

**last**
6:17 7:7 59:6 60:4
98:17,19 100:4
105:6 131:3 132:6
138:6 159:9,10
167:12 210:13

**later**
5:23 85:25

**Lateral**
2:10 3:24 203:4
205:7 222:7,12,20
236:23 237:4,24
238:14

**launching**
160:6

**Laura**
2:6 3:12 4:18 238:24

**lawsuit**
14:20

**lawyer**
26:20 30:14,16 31:15
36:15 39:3 47:25
49:4 50:9 67:19
100:11 140:10
141:23 144:25
172:17 177:15,24
178:13 204:8,8,12
214:25 215:9,19
216:20 217:8,17

**lawyers**
13:13,15 30:18 31:10
32:20 48:21 49:2
146:4 164:21 207:9

**leads**

75:23 79:16

**least**
9:21 10:24 53:4

**led**
34:8 95:13 141:6

**left**
148:25 163:11 188:7
194:16

**legal**
1:16 7:25 11:23
13:10 15:2 30:9
32:4,18 33:4,12
36:11,15 55:12
99:23 113:13
214:15,24 215:16

**legislation**
9:2

**length**
228:24

**lens**
215:5 218:6 230:17

**Leslie**
1:12 242:4

**less**
90:23 97:21 159:5
194:23

**let**
4:24 5:25 38:18,18
71:9 88:11 105:12
114:14 125:3
133:14 145:9
156:15 169:18
176:8 199:14
215:14 226:11
227:9,24 229:11,12
236:18

**letter**
26:23 27:7 54:20,23

**lettered**
117:24

**let's**
23:9 39:24 49:20
64:21 65:23 80:21
82:14 91:11 94:5
99:2 110:12 125:20
144:22 150:12


MAGNA
LEGAL SERVICES

26-10769-mg    Doc 49-34    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 34 -
Transcript of May 14    2026 Deposition of Andrew Barrington Chissick    Pg 268 of 293

Page  23

159:23 172:24
181:18 185:23
189:20 194:14
214:3 215:22
216:10 222:4
228:17
**level**
140:6
**Li**
2:13 4:2
**liabilities**
42:17 188:6 189:7
198:14 224:8
**liability**
42:3,5,6
**liable**
116:24 119:24
164:23
**light**
175:10
**like**
12:13 17:6 20:10
24:16 25:23 42:16
49:24 53:11 54:11
56:16,20,23 57:23
58:10 61:14 65:8
66:15 68:22 74:22
77:20 81:15 86:14
96:7 100:10,11
114:11 127:19
137:3 146:4 156:19
161:2 165:13 177:2
203:10,17 213:21
224:13 228:4,6,12
228:15 231:7
237:21
**likelihood**
39:18,23
**likely**
39:20 96:19 130:11
**limb**
146:24 176:3 210:7
210:11,12
**limit**
70:23 123:17
**limitation**

93:19 100:10 103:4,7
111:24 114:3
128:22 130:9,12,17
131:9,11,15
**limitations**
76:5 104:15 105:7,19
114:9
**limited**
1:6 2:10,10 3:8,25
18:18 21:18 22:3,4
48:18 74:8 84:7,19
86:22 87:10 90:5
101:23,24 102:11
102:21,23 103:15
103:21 104:20
105:2 119:11
143:20 144:17
149:12 155:10
157:9 170:15
198:12 199:18
203:4,4 222:7,7
229:5
**limiting**
73:21 83:12 87:14
91:3 95:3 111:11
135:5,22
**limits**
28:3 83:13
**line**
60:4 196:24 241:6,6
241:6,6,6,6,11,11
241:11
**lines**
83:15 136:5 179:2
**liquid**
90:4 178:8
**liquidate**
185:12
**liquidating**
178:7
**liquidations**
155:7 182:24 192:4
193:20 226:2
**liquidator**
14:18,19 15:11,13
16:5,5,10,11,13,15

16:17 42:15 69:9
73:10,23 75:2,19
78:18 79:7,12,14
80:6,15,17 82:19,23
87:5 137:4,4,6,12
145:5,5 157:8,12,15
160:12,21 163:18
163:21 189:16
194:13 200:25
208:4,6,9,14 209:3
219:4,4,8,22 220:10
220:11,18 221:2,3,7
221:11,14,16,20,24
226:21 227:11
228:21 229:2,4
**liquidators**
3:20 10:5 12:5,8 14:3
14:5,8,12,17,23
15:3,3,18,18 16:2
17:17 18:8 19:14
29:19 42:12 54:17
56:14,14 68:5 71:3
71:25 78:13 108:20
109:13 114:5
118:15,15 132:21
133:2,21 136:16,17
137:10 139:20,20
141:21 145:17
154:12 155:23,24
156:7 161:18 162:7
163:8 164:17 166:8
169:5 183:6,15,16
183:19 184:8,19,20
186:11,17 190:9
193:4,11 194:3
196:22 200:21,23
201:4 204:25
209:25 210:25
211:24 212:2,4,7,14
212:15 213:7,9,13
218:11,12,18,19,22
218:22,25 219:9,10
219:17,18,18,19
220:4 227:13
228:20 235:9,12
**liquidator's**

146:8
**list**
69:14 73:22 100:6
101:11 167:4
223:17,24
**listed**
71:24 72:21 166:14
222:25 224:4,9
225:24 236:2
**listening**
202:15
**listers**
157:17
**litigated**
33:21,22 34:15 35:3
35:11
**litigation**
47:12
**little**
51:22 92:18
**lives**
91:2
**LLP**
1:11 2:4,9,15
**local**
49:13
**locate**
84:9,21
**located**
84:17 86:10 103:12
103:20 104:18
129:18,25 130:18
**locating**
84:4 86:17,19 87:8
**locations**
105:20
**logic**
149:6 170:11,19
180:20
**logical**
149:2 169:13 170:23
**logically**
145:15 146:6,9 163:6
169:15,21,24
**long**
69:14 84:14 113:2



26-10769-mg   Doc 49-34   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 34 -
Transcript of May 14   2026 Deposition of Andrew Barrington Chissick   Pg 269 of 293

Page 24

**longer**
8:18 120:6
**longstanding**
145:25
**look**
19:12 46:4 59:3
64:21 69:20 79:13
80:3 88:13 104:14
115:7 125:20
127:24 145:14
150:25 158:13
179:3 215:22
222:10 224:22
227:4,21,25 228:18
**looked**
58:2 61:3 172:7
180:2,6
**looking**
24:5 49:10 59:19
64:4,25 79:4 80:5
81:19 96:24 181:11
185:9 186:3 219:13
**looks**
20:24 127:18 158:11
**Lord**
195:13 196:10 197:2
**lose**
102:5
**lost**
41:5 160:11
**lot**
48:11 56:25 66:22
113:3 162:22 203:7
222:17
**lots**
53:3
**loud**
67:24 182:8

———————————
**M**

**m**
97:13
**made**
6:14 7:15 19:8,11,25
25:5 55:9 57:7
130:24 149:12

157:19 175:17
187:20 198:6
200:15
**MAGNA**
1:16
**main**
77:25 151:23,23
152:4 177:11
**maintain**
69:10 70:10 75:4
83:7 85:12,15 87:6
101:18 102:24
189:5 219:23
220:12,19 221:4,11
221:17 226:21,25
227:11,14 228:10
228:22 229:6,15,21
230:3
**maintained**
90:24 233:25
**maintaining**
69:24 78:2,3 82:11
227:19 230:18,21
**maintains**
179:15
**majority**
129:24 130:6
**make**
8:6 22:11 26:15 32:9
33:13 36:18 57:5
63:18 64:22 69:17
112:5 130:22 139:8
141:8,12 144:6
163:25 169:18
183:23 207:25
215:5 218:6 219:14
225:9
**makes**
24:17 49:24 147:19
152:13 183:12
184:15 185:15
**making**
20:5 87:3 100:6
187:9 211:18,19
**manage**
60:17 96:10 120:13

**managed**
188:16 220:13,20
221:5
**management**
142:20 196:8 206:11
**mandate**
189:3 235:14
**many**
9:18 10:23 85:15
237:7
**marked**
11:15 17:10 20:14
23:12 45:25 68:16
78:25 150:15
157:24 172:21
186:24 222:9 241:6
**marks**
201:16
**Martine**
2:12 3:22 202:25
**material**
39:21 59:18 60:5,10
110:17 111:20,23
126:19 154:20,24
206:19,21
**materially**
51:6
**matter**
3:7 12:3,20 25:24
28:9 36:9 37:3,23
39:24 40:5 43:8
44:23 49:20,25 50:3
50:8,17 54:4,8 55:7
55:20 57:21 65:14
70:25 72:6 80:8
83:12 118:16
124:25 140:4
142:16 143:5 153:5
154:16,22 160:8
168:18 170:19
173:24 181:10
198:19 206:6,10,18
209:5 211:3 219:16
**matters**
6:25 9:6,12,16,18
26:13 31:18 37:11

47:2,18 53:17 117:9
152:22 202:5 207:4
209:13 211:4
**Mawcon**
157:9
**may**
1:12 3:4 13:8,13 17:8
17:18 20:11 21:3
22:13 24:10 48:13
53:5,6 64:5 71:12
72:8,10,13 73:4
74:17,23 76:10,11
77:14 78:3 89:3,11
90:5,16,19 91:3,5,7
91:12,16 92:9 93:6
93:9,14 94:22
100:23 101:6 103:8
103:17 105:3,14
106:7 107:13
130:22 133:23
152:9 160:7,13
161:14 162:5,6
171:20 175:25
177:8 180:23
181:13 191:9,10,14
191:15 192:23
197:14 199:25
203:7 208:3 227:3
229:23 230:3,19
232:7 235:5,5,16
237:11 238:21
242:4
**maybe**
35:11 41:5 59:11
60:16 64:5 72:6
74:21 96:2,4 97:15
97:21 119:6 178:15
202:14 203:19
232:4
**me**
3:14 4:24 5:7,10,15
5:25 6:25 9:2 25:11
28:18 30:8 38:18,18
39:12 45:16 47:6
53:13 59:14 60:25
65:7,15 68:23 69:2



26-10769-mg    Doc 49-34    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 34 -
Transcript of May 14    2026 Deposition of Andrew Barrington Chissick    Pg 270 of 293

Page 25

71:9 73:24 74:15
76:24 77:21 78:9
79:5 80:13,16 81:2
82:18,22 83:11 86:7
88:11,23 99:17
100:9,10,12 102:19
105:12 110:22
112:25 114:16
119:9 120:20
122:24 125:3
132:18 133:14
143:2 144:25 145:9
146:4 151:8,11
153:7 156:15,20
158:15 160:2 161:3
161:13 169:18
171:18 173:23
174:10 176:8
181:14 187:12
193:9 199:14
202:13 210:18
215:14 217:17
221:18,22 226:11
227:9,24 228:8
229:11,12 233:13
236:18 238:20
242:2 243:8

**mean**
18:13 20:17 27:13
40:14 41:14 49:3
55:5 56:5 58:16,21
60:12,14 66:2,2
75:21 77:13 79:19
87:19 91:23 97:17
104:22 106:3 113:4
141:3 146:9,15
150:8 161:6 176:11
179:6,8 180:9,10
192:6 193:15,17
206:23 207:2
210:15,17 212:16
217:12 219:17,19
231:23 233:14

**meaning**
21:7,11 35:6 37:4
63:12 66:20 172:12

172:13 175:14
190:3 198:22
217:22

**meaningful**
151:21

**meanings**
219:6

**means**
85:7 91:18 93:3
113:18 116:24
143:12 145:2
166:15 173:4
181:10,20 185:12
188:2 233:22 242:8

**meant**
24:9 41:3 65:9 92:14

**mechanism**
146:25

**meet**
42:24 198:23

**meeting**
199:11 230:16

**meetings**
230:12

**meets**
175:19

**melange**
70:2

**member**
8:10

**members**
58:18

**memo**
66:11 67:6

**memory**
9:20 13:23 46:17,20
122:23 150:5
200:14

**mentioned**
39:13 56:12 59:5
62:5 67:18 74:9
88:2 99:10 100:5,7
122:8 148:19
149:23 170:25
189:12 190:4
225:25 236:13

**mere**
196:18

**merged**
206:9

**met**
42:6

**Michael**
150:21

**middle**
185:20 231:21

**might**
6:23 13:22 42:7
43:16 49:7 60:6,7
60:19 74:21 77:18
77:19 78:22 79:2
83:17,18 85:6,25
96:5 98:4 106:13
108:14 109:2,17
110:3 122:10
123:15 127:17
138:13 142:5,7
161:13 165:9
166:15,19 170:10
171:19 174:16
181:16 201:22
227:4

**mind**
51:13 69:16 70:5
82:12 104:2 150:2
162:10 183:8
191:22 197:17
235:7

**minded**
136:8 187:17

**mindful**
43:13 62:6 203:23

**minute**
48:24 88:12 91:10
151:11 159:15
238:21

**minutes**
190:5

**mischaracterizes**
80:20 105:11 107:12
108:8,17 109:20

**mischaracterizing**

110:11

**misconstruing**
126:16

**mislead**
32:7

**misleading**
32:12 108:2 109:8

**missed**
103:13 182:15

**misstating**
210:18

**mistake**
129:3

**mitigate**
96:6

**modified**
27:20

**Mokal**
2:21

**moment**
46:19 51:17

**Monday**
7:10

**money**
192:8 193:2

**months**
237:8

**more**
84:20 95:8 97:20,21
98:14 108:19
113:17 120:13
159:5 166:16,20
174:12 194:22
202:6 215:23
234:15

**morning**
3:2 4:14 203:12

**most**
36:22 104:20 129:18
130:9 144:14,20
148:8 189:5 232:11

**motion**
160:7 163:20,25
166:25

**move**
38:20 52:7 89:10



26-10769-mg    Doc 49-34    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 34 -
Transcript of May 14    2026 Deposition of Andrew Barrington Chissick    Pg 271 of 293

Page 26

132:5
**moving**
27:21 142:7 178:5
**Mr**
3:18 7:14 10:14
20:16 25:3,18 41:2
41:6,13 51:20 52:9
52:15 66:21 67:5
80:19 89:19 105:10
106:25 107:11
108:7,16 109:19
115:12 134:24
138:3 159:9,17
162:18 171:16
195:9 201:20
202:10,11,24
213:23 215:13
229:9 238:25 239:8
239:17
**MS**
3:12,22 4:12 17:6
20:10,18 23:9 41:3
45:20 51:23 52:5
66:25 108:9 115:14
116:11 134:25
138:12 150:12
157:21 159:10
171:18 172:2
195:11 202:12,23
213:24 222:4
229:10 238:20
240:3,3
**much**
26:4 28:15 44:17
60:10 66:7 117:18
172:19 188:7,15
194:12 201:25
203:9 234:15
**multiple**
16:19 84:12 86:10,19
195:20 197:11
**must**
47:9,15 76:2 85:14
148:11 171:4
**myself**
10:18 71:9 155:25

_____ **N** _____

**n**
4:7,7,7 97:24 116:2,2
116:2,4,4,4
**name**
4:15 10:4 13:14 15:5
16:2,13 18:2 20:5
21:17 22:8 112:13
113:7,14 136:23
164:20 168:14,25
174:25 183:22
202:25 211:25
**named**
18:8 53:24 118:18
119:10
**Namely**
160:9
**names**
15:10 53:13 137:13
222:14
**Nancy**
2:13 4:2
**narrow**
48:19 49:16 110:4
**natural**
129:14
**nature**
128:11 217:11
231:10 232:2,20
233:2 235:14
**navigating**
117:22
**necessarily**
176:11 209:21 211:9
225:14
**necessary**
69:10 70:10 75:3
79:15 83:7,15,25
86:24 87:11 90:16
91:7 92:9 93:10,14
94:3,22 101:17,21
102:24 103:8,17
113:15,25 220:12
221:3 226:25
227:14 228:10,21

229:6,15,21 230:20
**need**
5:14 26:14 29:15
32:9 39:12 42:5,25
43:13 46:17 49:21
57:14 58:25 72:3
74:7,11 75:7 76:9
77:8,18 78:9,19,21
85:8 94:3 106:12,15
125:9 133:11,13,25
136:4 145:16 146:6
146:9 153:23
155:25 161:6 163:6
169:21 177:9
192:15 193:22
200:2 203:23 223:9
225:12 228:4
233:22
**needed**
34:21 49:13 95:12
223:6
**needs**
34:22 48:7 59:24
62:8 76:12 77:16
195:23
**negate**
51:14 88:21
**neither**
238:14
**nervous**
164:9
**neutral**
35:25 36:13 37:21
38:15 46:16
**neutrality**
45:23 46:23
**never**
53:8 58:23 61:25
163:22 209:4 211:2
**nevertheless**
21:9 117:5
**new**
1:3,11,11,13 2:6,6,11
2:11,17,17 7:20
60:25 161:13
**next**

20:10 110:12 176:15
195:17
**no**
4:22 6:9 7:9,13 8:5
8:18 9:24 11:2,7
12:18,21,25 22:5
25:15,22 28:6,20,24
29:3,15 40:5 43:24
43:24 44:4,21,25
50:18 52:20 53:15
53:18 55:5,21 56:7
56:9 60:21 61:15,18
62:18 65:16,20
72:20 88:19 89:7,17
90:13 93:4 94:8,18
95:23 96:8 97:25
98:3,5,24 99:16,16
120:5 130:13 131:8
131:11 132:4 134:9
135:9 137:20
142:23 143:14
150:11 156:25
157:12 163:25
165:24 183:8,24
186:6 198:15 199:4
199:21 211:21
226:9 228:16 237:8
237:13,25 238:3,6,8
**Noble**
201:13
**None**
196:17 241:6,6,11
**nonliquid**
178:7
**nonresponsive**
170:14 191:25
**non-BVI**
53:23 144:25
**nor**
131:24 200:15
**normal**
198:21 200:19
**normally**
187:25 188:13
**Notary**
1:13 4:9 243:11


MAGNA
LEGAL SERVICES

26-10769-mg   Doc 49-34   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 34 -
Transcript of May 14   2026 Deposition of Andrew Barrington Chissick   Pg 272 of 293

Page  27

**note**
114:24 121:12
165:11 205:4
**noted**
24:24 116:3 127:7
214:5 239:22
**nothing**
39:25 59:11,23 61:15
165:14 239:15
**notice**
1:10 20:23 24:25
116:17,18,19 117:5
117:11,13,19 118:5
118:21 119:2,17,20
120:10,20,24
121:11 122:16,22
123:20 124:4 125:2
125:6,11 127:19
**notices**
121:17 124:6 125:21
126:2,13 127:8,25
128:6,9
**notion**
123:20
**notwithstanding**
145:4 157:14 207:15
217:7 237:4
**now**
3:3 7:2 35:3,23 61:25
75:13 76:6,9 81:19
83:6 86:17 99:8
110:10 112:15
127:18 153:25
155:22 157:22
165:22 166:13
167:2 169:11 180:9
190:19 191:9
194:16 197:14
199:6 212:25
213:17
**nuance**
161:8 162:22
**number**
7:15 25:4 31:4 36:16
63:16 71:19 84:25
139:3 151:3 185:23

185:23,25 186:4,11
186:12 199:16
201:17
**numbered**
117:24 121:9 159:11
216:7,8
**numbers**
184:6

---

**O**

**o**
4:7 98:2 116:2,2,2,4
223:3
**oath**
5:20 6:3
**object**
66:24 167:18 168:6
168:20 169:25
**objecting**
2:5 3:13,23 21:21
56:3 170:5,6 203:3
**objection**
41:2,6,13 65:16
80:19 93:4 105:10
106:25 107:11
108:7,16 109:19
134:24 138:3
162:18 215:13
227:2 229:9
**objective**
31:25 35:25 36:12
47:17
**objects**
5:21
**obligations**
198:20 200:3 236:21
**observed**
187:5
**obtained**
156:6
**obtaining**
133:3 134:19
**obviously**
6:22 7:19 15:25 22:6
22:17 27:5 28:10
30:3 32:5,9 34:6

36:21 37:24 39:2
40:14 42:24 58:25
59:25 69:7,11 77:9
77:25 80:7 84:25
92:2 99:5 119:24
137:12,16 140:23
141:3 147:22 152:9
152:22 164:11
171:4 176:2 177:5
179:9 189:8 198:7
201:16,23 203:23
207:9 217:16 230:5
233:19 234:15
235:13
**OFAC**
194:24 195:7 238:15
**off**
4:3 51:24 85:19
115:16 138:9
163:11 171:16,21
188:6 189:7 194:16
202:17 239:3,5
**office**
45:16 150:23
**officeholder**
79:21 127:12 179:15
188:3,4
**officeholders**
15:9 18:15 126:4,5,7
126:8 234:4
**officer**
16:17 30:5,13,16,22
**officers**
30:18 174:21
**offices**
1:10
**officio**
157:7
**often**
29:2 178:18
**oh**
59:12 111:19 129:2
**okay**
14:4,25 36:4 46:20
70:2 77:14 80:10
83:22 84:24 86:14

87:21 88:6,15 90:25
93:18 94:16 95:6,19
97:13 99:16 103:19
104:16 110:12
113:8,9 124:20
131:13 138:21
139:23 145:3
154:11 158:12
159:17 162:11
163:13 168:9
170:10 172:3
174:15 180:5 190:4
199:13 201:6,8
204:4,4,5 212:5,24
215:8 217:4 219:2
221:9 225:17
228:14,16 229:13
233:18 238:22
**Oliver**
150:22
**omitted**
135:23
**once**
212:5
**one**
5:15 10:2 13:24
21:21 31:4 34:11,12
34:13,14 36:16
47:13 53:4 59:11,15
59:16 60:25 62:24
63:16 68:10,19,25
69:12 84:20,25
98:11,17,19 103:23
105:6 107:15
116:16 117:15
121:12,14 122:11
130:22 131:2,21
137:9 141:9 142:3
151:23 152:18
156:22,23 158:21
158:23 160:11
161:10 162:16
171:6 172:6 174:4
177:2 178:3,11
187:14 191:11,14
202:6,14 210:24



26-10769-mg   Doc 49-34   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 34 -
Transcript of May 14   2026 Deposition of Andrew Barrington Chissick   Pg 273 of 293

Page  28

216:11,11 217:23
219:23 220:18
224:5,9,11 225:23
226:20 230:10
232:3,13 235:21
236:2,11,18
**ones**
148:5 151:6 166:21
178:8 201:12 209:7
222:19
**ongoing**
236:8
**only**
5:4 26:21 66:25
83:20 88:4,17 96:16
96:23 110:7 141:9
165:3 207:8
**onto**
142:21 143:13
**open**
57:11 239:13
**operate**
96:10 142:18 144:10
**operated**
183:5
**operates**
155:6
**operating**
190:12 193:6 235:10
**operation**
37:5 111:21 222:2
**operative**
122:17 123:21 125:3
125:7
**opinion**
38:16 47:17 83:18
158:4 175:12
181:17 208:5,8
214:16,24 215:10
**opinions**
158:3 204:10 214:15
215:16
**oppose**
157:18
**opposed**
16:6 55:16 67:3

**opposing**
10:3,10 147:15
**opposite**
178:6
**option**
137:14
**options**
173:17
**oral**
67:9
**order**
13:22 17:22 21:7,10
22:10,12,25 24:17
35:6 43:10 48:18
49:11,14 68:8,14,16
68:19,23,24 69:3
70:4,6 71:8 72:4,12
72:23 73:5 77:3
78:16 80:10,12 81:8
81:19 84:22 85:15
86:12 92:19 109:10
110:23 111:3 112:4
112:6,15,18 113:22
116:13,16,21,23,24
117:3,4,22 118:8
119:23 120:17
121:3,17,22 122:25
123:7,21 125:7,16
128:14 131:21
132:16 146:22,23
148:14 149:4,20,22
155:8,14 156:6
157:19,19 159:22
163:25 170:9,22
171:2,10,13 188:21
188:23 194:4,5
202:9 221:25
222:25 223:14,25
225:19 226:14
228:18 240:11
**orderly**
26:13 196:7,16
**orders**
19:15,21 20:7 21:5
23:3 24:3,6 37:5
67:25 68:6,9,19

77:4 81:16 84:9
105:24 106:6,18
107:6,9 110:16
115:4 122:5 125:25
126:3,12,18 127:8
127:16 128:10
132:8,15 136:12
142:14,17 143:3,3,4
144:14 145:22
147:12 166:7 167:6
168:19 174:20
175:4 222:5,8,11,13
222:18 224:3
240:11
**ordinarily**
71:2
**ordinary**
17:14 20:22,23 27:5
28:14 62:7 73:2
97:22
**organized**
45:21
**organizing**
179:8
**original**
107:19
**originally**
8:16
**originating**
23:25 145:20 147:10
147:21 166:4,7
184:21 193:3 194:5
194:12 206:6,7
213:6
**other**
7:2 8:14,19 9:15
12:19 38:15 41:9
44:15 45:8,10 53:20
54:7 56:16 59:23
70:25 73:18 82:2
94:5 98:8 104:9
112:12 114:9,14,22
124:13 127:12
133:6,12,22,24
138:21 139:3 141:4
143:14 148:13

154:18 160:9
163:25 166:21
171:15 174:4
178:12,14,14
195:16 218:18
222:14,23 232:6,24
234:4,14,19 235:2
235:25
**others**
8:22 153:2
**otherwise**
5:12 18:13 72:10
73:6 85:21 97:22
121:2 141:8 148:9
214:5
**ought**
163:22
**our**
24:25 26:11 31:3
40:4 42:24 43:18
52:16 80:11 118:13
125:22 150:4
154:19 162:4
165:15,19 168:3
187:10 203:25
226:15 239:10
**ourselves**
187:20
**out**
19:9 34:4 43:11
46:11 47:6,22 63:22
67:24 69:12 70:25
71:13,19 72:21 75:4
78:7,22 79:15 83:9
100:24 101:4 102:3
102:8 107:16 111:4
114:2,20 122:13
128:9,15 132:17
136:4 160:2 162:3
171:10,13 174:16
177:9 182:8,24
185:20 194:6 196:3
200:2 208:12
220:14 223:13,17
238:24
**outcome**



26-10769-mg    Doc 49-34    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 34 -
Transcript of May 14    2026 Deposition of Andrew Barrington Chissick    Pg 274 of 293

Page 29

36:23 42:21 154:15
191:14
**outcomes**
232:17
**outlet**
147:4
**outline**
45:22
**outside**
48:22 110:4 129:25
130:7 134:13
143:18 169:2
**outstanding**
24:25 39:14
**over**
13:7 14:9 46:4 51:22
60:21 67:4 68:20
84:14 166:9 188:3
203:8 209:9 210:13
233:19
**overarching**
182:24 183:7,25
184:5,23 190:6
**overridden**
105:9
**overrides**
31:7 105:19
**overseeing**
220:21
**overseen**
229:17
**oversight**
57:19
**overstate**
122:18
**overstretch**
95:18
**own**
7:3 15:5,10,21 16:13
17:3 47:25 50:9
67:16 91:23 136:22
136:25 137:11,13
138:24 140:11
148:10,24 149:5,15
149:18 186:11
215:18

**owned**
69:11 83:8 91:19
92:5,13,14 220:13
220:19 221:4
228:22 229:7,16
**owners**
196:13
**ownership**
91:22,25

**P**

**page**
18:25 159:9,10
187:22 194:17
195:18 229:8 241:6
241:6,6,6,6,6,11,11
241:11
**paid**
28:4 39:15,18,23
**painful**
142:6
**paper**
48:11
**papers**
53:11 54:13,14
**paragraphs**
84:12 86:10,11,19
98:8 100:5 105:8
116:16 117:24,25
125:12 182:5,9,12
217:25
**parallel**
235:16
**parameters**
27:2 48:4 87:6 119:4
147:2 148:21
168:22 179:22
184:10
**pari**
188:7
**part**
5:6 43:7 44:22 46:24
59:15 88:3 100:8
104:20 110:17
111:20,23 116:20
117:2 121:17

122:16 123:21
124:4 125:2,7
126:19 128:3 144:6
176:3 185:21
196:16 206:19,21
234:2
**parte**
56:23 68:7
**participate**
56:17 165:5 187:6,7
**particular**
22:15 25:17 57:8
77:22,23 84:2 88:2
88:20,20 90:2 93:16
104:22 107:16
111:22 123:5
124:19 131:23
137:23 139:2
140:24 141:15
142:19 151:24
152:25 154:25
158:25 160:5 161:9
161:12 164:10,14
179:22 180:17
185:4 190:12 213:8
217:18 220:23
**parties**
20:9 21:15 34:20
35:13,20 44:5 56:17
57:17 121:14 122:6
130:5 131:25 150:6
152:24 161:10
200:10,11 207:4,10
207:13 211:6 232:4
**partner**
8:8 150:22
**partners**
45:4
**parts**
113:5 219:25
**party**
16:7 21:15 49:4
57:13 117:15 148:6
148:7 162:5 192:2
**party's**
47:25

**pass**
191:15
**passed**
160:20
**passing**
114:24
**passu**
188:7
**past**
32:16
**pattern**
164:12 165:2
**Paul**
7:4 12:5 54:16
**pause**
236:18
**pay**
188:6 224:4 225:9,20
228:9
**paying**
189:7 226:24 227:22
**payment**
27:24 28:12 40:7
**pecuniary**
42:21 43:5
**penal**
116:17,18,19 117:4
117:10,13,19 118:5
118:21 119:2,16,20
120:9,20,23 121:11
121:16 122:16,22
123:20 124:4,6
125:2,6,10,21 126:2
126:13 127:8,19,25
128:6,9
**pending**
42:22 68:5 239:13
**Pennycuick**
157:10
**people**
119:25 194:21 234:4
**per**
40:16 71:7
**percent**
58:15
**perfectly**



26-10769-mg   Doc 49-34   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 34 -
Transcript of May 14   2026 Deposition of Andrew Barrington Chissick   Pg 275 of 293

Page   30

96:14
**performing**
15:11
**perhaps**
77:19
**period**
83:24 117:12
**perishable**
77:17
**permission**
72:14 75:13
**permissions**
108:5
**permitted**
162:10
**permutations**
229:23
**person**
38:14 143:14 173:4,4
**personal**
214:7
**personally**
45:3,17 209:22
211:10
**perspective**
23:4 178:17 206:24
214:24
**persuasive**
153:12 154:2 155:4
155:18,21
**pertain**
215:17 222:6,20
**pertaining**
205:6
**Pete**
3:16
**Peter**
2:7 239:8
**petition**
145:23 146:20,20
148:5,8 149:9
155:11,12 156:6
160:19 163:14
182:23 186:13
188:24 190:25
210:10

**petitioners**
148:3
**petitioning**
148:2,15
**petitions**
186:10 210:4 212:21
225:5
**phone**
67:4
**phonetic**
25:3
**phrase**
60:23 73:9 83:6,12
87:10 91:3 94:21
95:4 107:16 111:11
113:20
**pick**
125:15
**piece**
32:3
**PL**
109:5
**place**
18:15 159:5 183:3
192:17 195:21,21
**placed**
12:9 188:25 212:11
212:22
**places**
53:20 87:24 101:11
232:24
**plainly**
49:17 79:25 92:4
106:16 161:21
232:16
**plaintiff**
137:22
**pleadings**
198:3
**please**
4:15,24 5:4,7,25
11:20 23:14,22 46:3
47:14 49:8 62:24,25
67:23 71:10 87:21
98:12 108:6 114:18
142:13 150:24

156:3 160:3 172:6
199:15 227:9
**plural**
151:5
**plus**
70:12,13
**point**
24:10 31:9 36:12
38:12 45:22 48:19
49:16 64:5 68:23
69:2 73:18 77:6
82:4 85:11,14 86:2
87:3 109:5 110:22
118:24 123:5,6
124:19 126:23
130:25 131:5
147:17 151:14,20
151:25 153:14
154:5 155:19 162:3
176:10 182:16
222:19 233:15,17
234:7,10 235:3,16
**points**
26:17 33:19 69:17
81:12 83:19 102:16
169:12 201:24
222:21 231:3
232:21 233:8
**policy**
208:17,20 209:5
210:12,15
**poorly**
45:21
**position**
24:23 25:16 26:11
27:23 34:4 36:9,20
105:7,18 120:3
134:15,21 161:17
164:10 168:17
171:5 180:25 181:6
217:4 220:5 225:15
237:3,20
**positions**
31:14 37:23 198:18
**possession**
79:9 91:4,6,13,16,20

91:24
**possibility**
201:18 202:2 234:25
235:4
**possible**
47:24 62:12 72:11
96:15 123:16
182:15
**possibly**
200:17
**post**
180:12
**potential**
40:2 94:11 97:3
120:2 203:22 236:8
236:20
**potentially**
59:20 78:20 90:15
95:14 97:15
**power**
13:16 17:24 23:25
35:7 69:19 70:3
74:20 76:11 77:12
78:6,7,16 79:17
80:3,12,17 81:21
82:7,19,24 84:5,10
84:16,22 85:3 90:25
93:7 95:2,7,20 98:9
98:16,23 99:18
101:15 110:19
111:5,25 113:22,22
126:20 127:10
128:16,19 134:10
142:19 145:2,13
146:2 149:16
160:10,17,19 162:5
162:9 167:18,19
168:5,7,24 171:2,7
171:8 224:3,7 225:5
225:9,9 226:2,8,10
226:12,13,16,17
227:20 228:8
229:13 230:12
236:4
**practical**
129:16 130:8,12



26-10769-mg    Doc 49-34    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 34 -
Transcript of May 14    2026 Deposition of Andrew Barrington Chissick    Pg 276 of 293

Page 31

152:6 206:2
**practice**
8:11 27:5 62:19
  63:19 210:13
**practicing**
8:18
**practitioner**
30:5 208:25 209:8
  214:16 216:19
**practitioners**
55:13
**preapproved**
71:21
**preceding**
105:19 126:17
**precise**
26:11 135:25 150:3
  221:13,19
**precisely**
63:24 64:23 119:15
  122:19 123:2 131:4
  131:20 158:19
  179:24 180:17
  200:2 203:20
**preclude**
189:14
**precluded**
139:11
**predicated**
129:23
**predicting**
154:23
**prefer**
153:8,9
**preliminaries**
4:19
**premature**
189:8
**premise**
167:22,24 170:3
  199:4 228:11
**preparation**
6:22 7:2 61:23
**prepare**
6:10,13,19
**preparing**

58:14 156:11
**present**
2:19 160:6
**presented**
47:8 156:5
**presenting**
204:10
**presently**
35:13 204:18
**preservation**
81:9 87:18 88:3
**preservative**
108:23
**preserve**
77:5 80:12,25 81:17
  82:7,15 85:24
  105:25 107:23
  174:24 220:5
  231:16
**preserving**
82:13 99:5 109:7
  221:8
**Presumably**
62:2
**presume**
158:20
**Pretlove**
7:5,14 12:6 52:9
  54:16
**prevail**
39:16
**prevent**
6:7 194:21
**previous**
105:8 209:6
**previously**
10:20 14:14 56:12
  120:8 133:18 137:8
  141:3 173:14
  181:14 189:4 215:3
  216:23 218:4
**primarily**
189:4
**primary**
219:21 220:18,23
  221:10,15 226:20

227:17,18
**Prince**
1:6 3:7
**principal**
79:8
**principle**
94:10 152:12 165:8
  219:16
**principles**
165:19
**printed**
125:21 172:15
**prior**
10:4 18:14 52:22
  110:11 126:10
  237:16
**priority**
31:4
**private**
211:6
**privilege**
26:16,19,24 27:3,22
  28:2 43:16 55:3
  62:6 66:6 203:24
**privileged**
26:13 58:9
**probably**
21:24 29:13 40:15
  48:3 59:19 77:21
  89:24 92:17 96:19
  97:20 98:10,14
  104:19 123:13
  128:8,10 153:2
  174:6 177:11
  189:21
**problem**
35:11 128:5
**problems**
198:24
**procedural**
49:25 50:3
**procedure**
45:25 46:6,7 232:12
  232:16 240:11
**proceed**
153:7,19

**proceeded**
134:9
**proceeding**
49:5 56:20 57:12,17
  113:14 165:6 173:6
  173:10 176:13,19
  179:13 180:19
  181:8,19,20,22,23
  181:25 184:16,17
  185:19,22 186:18
  192:17 206:15
  217:14,15 233:10
**process**
8:23 42:6 48:23 61:8
  61:11,17 65:14
  153:15,21 154:6
  184:21 196:2,7,16
  232:18 234:13,18
  235:20
**processes**
51:6 155:2,16
**procure**
21:13 35:8
**procuring**
22:16
**product**
47:10 66:19 67:3
**profession**
209:15
**Professional**
242:4
**progress**
28:8,16
**prohibited**
126:8
**prohibition**
100:11
**proper**
142:3 148:19 168:23
**properly**
114:15 195:25
  233:24
**property**
29:10
**proposed**
2:15 170:20



26-10769-mg   Doc 49-34   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 34 -
Transcript of May 14   2026 Deposition of Andrew Barrington Chissick   Pg 277 of 293

Page 32

**proposition**
164:5 165:4 168:20
**prosecutions**
236:9
**prospect**
41:11
**protect**
72:12 73:5 79:9
90:16 91:8 92:9
93:10,15 94:3 103:9
113:15 174:24
**protected**
67:7 196:14
**protection**
117:16
**protocol**
43:11 98:20,21,23
**provide**
5:4 26:15 47:15
48:22 76:10 106:7
110:17 126:14,18
128:10 234:5,6
**provided**
25:13 100:22 198:13
198:16 199:17,21
201:14 215:11
238:3
**provides**
16:8,15 43:10 110:23
194:8
**providing**
95:13 126:2 127:9
**provision**
64:11 93:17 104:23
111:22 136:9 139:2
175:3 227:13
**provisions**
81:7 83:3 107:24
127:20 152:12
173:14 201:3
205:16 208:2,25
219:14
**public**
1:13 4:9 56:24
195:24 208:9,17,20
209:5 210:12,15,16

210:19 231:11
243:11
**pulling**
196:4
**punnet**
85:17
**purely**
53:6 73:14 93:22
**purported**
25:3 110:19 111:6
126:21 127:11
128:17
**purportedly**
168:14
**purporting**
37:20
**purpose**
70:18 109:13 130:18
133:2 134:19 182:3
182:13,18 183:12
185:7,15,20 190:2
190:13,17 191:4,14
191:19,21 192:3,13
192:17,24 193:13
193:20 195:14
196:21 197:2,6,20
206:2 219:22
227:17,18 235:11
**purposes**
29:13 89:6 94:13
132:13,24 133:7,11
133:12 134:16,23
135:5,12,22 173:25
175:9 189:24
195:16 204:2
230:16 232:17
**pursuant**
1:10 19:14 126:2
174:19 184:19
205:2
**pursue**
112:13 113:6 114:17
166:9
**put**
10:6 16:19 28:2
31:15 90:22 126:24

147:16 188:12
189:20 211:7
229:11,12
**putting**
32:10 36:15 192:19
194:22
**p.m**
116:3 239:22

_____

**Q**
_____

**qualification**
83:16,21 84:7 103:7
114:2,22
**qualifications**
114:23 189:18
**qualified**
31:10 53:20 62:19
63:19 75:3 95:3
101:16
**qualifier**
84:19 93:12
**qualify**
175:13
**qualifying**
86:23,25 87:14
101:20 136:5
**queries**
237:12
**question**
5:6,9,14,16 14:2
26:24 32:25 33:15
34:15,18,25 35:10
37:17 38:18 41:16
41:24 42:8 50:7
51:4 61:5 64:9,12
66:16,17,25 67:8
80:22 81:4,5,11
105:13,21 107:3
108:10 114:15
119:6 124:3,8 135:2
141:17 152:17
155:15 162:15
165:14,16 167:23
167:24 168:5,10
170:4,13,14,17
179:24 191:7 193:8

195:5 197:7 198:2
201:16 202:6,13
215:21 218:14
224:14 227:9 228:7
228:8,12,15 230:17
237:22,23
**questions**
4:25 5:20 6:8 25:2
52:19 57:3 66:9,22
123:18 152:18
162:13 165:19
187:17 204:22
237:12 238:23
239:10 241:6
**quick**
52:12 98:11 238:25
**quite**
56:25 65:3 69:5 87:2
107:18 135:25
156:20 168:10
170:14
**quote**
64:7 77:4 80:24 83:7
84:22 134:16
135:20 157:4,20
159:3,6,20 182:17
**quotes**
128:2 157:3

_____

**R**
_____

**R**
4:7,7,7 116:2,4,4,4
**raise**
81:13
**raised**
77:6 134:12 161:14
**rather**
144:15 164:12
221:25 231:14,22
231:23 232:14
**Re**
1:5 151:17 157:9
**reach**
63:25
**reached**
217:2


MAGNA
LEGAL SERVICES

26-10769-mg   Doc 49-34   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 34 - Transcript of May 14   2026 Deposition of Andrew Barrington Chissick   Pg 278 of 293

Page 33

**reaching**
31:14 32:18
**read**
7:18,19 36:6 47:4,6
47:13 48:24 51:17
63:2 67:24 73:21
74:24 75:20 77:8
100:21 110:15
111:2 112:9 113:9
114:11,12 118:6
121:20 123:3
124:18 125:23
126:15 127:4,24
128:14 132:6,17
142:12 143:11
153:24 156:14,15
156:21 157:3
158:22,23,24
159:19,23 160:2
163:10 165:25
167:2 169:18
172:23 173:13
174:11,16 175:16
182:8 187:23 233:4
**reading**
127:18 129:14 146:3
156:2 180:16
194:14
**reads**
100:10
**ready**
88:16 89:10
**real**
94:11 139:4 198:24
201:16,18
**reality**
164:21
**realization**
78:4 81:9 83:3 85:12
87:17,19,25 88:4,18
89:25 90:11 94:12
94:15 95:21 97:4,7
97:9,16 98:6 102:19
106:11 134:22
**realize**
77:5,13 78:5,7,7,14

78:17 79:9,18 80:13
80:25 81:17 82:8,16
82:20,25 84:5,10,16
84:23 87:9 89:20
91:2 93:7,13,18,25
94:6 95:2,7 96:12
96:17 98:9,23 99:9
100:8 101:12 103:3
103:12 104:18,25
105:25 106:21
107:7,23 109:18,25
110:8
**realized**
90:8
**realizing**
85:13 86:8 88:3
96:13 99:5 108:4,13
109:2,7 132:24
134:17 192:7
193:25
**really**
41:24 92:20 101:7
105:16 106:21
155:15 189:24
228:6
**reason**
11:6 20:3 22:14 29:6
132:2 158:7,8
160:14
**reasonable**
173:21 174:2 235:15
**reasonably**
38:14 167:20 168:7
**reasoning**
149:3
**reasons**
63:3,22 133:22 172:8
216:2 218:2
**recall**
27:8 53:15 54:13,24
55:21 66:12 106:13
114:10 122:19
123:2 135:11
161:10 181:15
182:19 200:9
203:20 233:3

**received**
237:8,13
**receiver**
232:10
**receivers**
232:8
**recent**
8:25 61:12
**recently**
7:4
**Recess**
52:2 115:18 171:23
202:19
**recognition**
10:8,11 132:9,19
133:6,21,23 135:13
135:20 136:3,13,14
139:9,15,19 140:9
141:9,13,21 165:12
165:15 168:6
169:25 175:5
**recognitions**
167:19
**recognize**
17:11 20:19 23:15
68:18
**recognizes**
100:15
**recollection**
9:24 135:14 152:24
164:13 193:24
194:7
**reconciling**
116:15 119:9
**record**
3:3,10 4:3,5,16 5:5
51:25 52:4 115:17
116:9 138:9,11
171:22,25 200:8
202:18,21 239:4,5,7
239:12 242:2
**records**
16:22 17:4 133:4
134:20 233:20
234:6 237:7
**recover**

40:9 41:17,21 42:10
**recoverability**
40:4
**recovered**
42:7
**recovering**
41:12
**recovery**
42:15 231:20 234:8
**refer**
77:10 81:24 86:11
111:18 112:23
118:3 121:16 128:7
129:9 135:12 136:8
165:11 175:23
206:14 208:2,18
210:20 213:2
218:10,17,22 219:8
219:17,21
**reference**
64:17 65:12,17 85:2
88:19 92:3 109:6
110:24 111:24
115:8 122:21
126:17 127:19
129:10 131:2
135:18 139:6 151:3
158:19 198:14
200:15
**referenced**
18:4 72:19 190:11
**references**
19:2 126:25 193:24
197:10
**referencing**
26:18
**referred**
31:18 59:16 81:4
83:2 106:14 121:21
135:9,9,15 136:6
152:25 154:19
182:20 233:6,17
**referring**
65:4 82:2 91:9 92:4
99:12 208:21 216:4
234:11,21 235:4



26-10769-mg    Doc 49-34    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 34 -
Transcript of May 14    2026 Deposition of Andrew Barrington Chissick    Pg 279 of 293

Page  34

**refers**
46:25 71:16,17,22
  72:16 86:13 89:7
  92:13 120:17 121:4
  127:25 131:18
  139:3 145:19 164:7
  165:7 199:19
  220:24
**reflected**
128:23
**reflecting**
36:19
**reflects**
37:2
**reframe**
119:6 133:15
**refresh**
13:23 46:17 182:9
**refreshed**
46:20
**refrigerator**
194:23 195:6
**regard**
15:20 163:13 164:2
**regarding**
66:4 97:6
**regardless**
226:5
**register**
18:9,19
**registered**
8:20 242:4
**regular**
14:19 40:13
**regulator**
45:13
**regulatory**
45:4,18 235:24
**rein**
169:6
**relate**
199:24
**related**
9:16 62:16 221:2
**relates**
117:15 130:19 145:7

**relating**
17:21 63:8 181:23
**relationship**
43:3,5 54:3 73:24
**relevant**
21:12 47:3 117:8
  130:5 152:12 174:7
  196:12 201:3 214:8
  216:24
**reliance**
195:22
**relied**
210:6
**relief**
21:4 68:2 135:19
  147:4 194:10
**relying**
19:18
**remain**
13:15 34:25 91:3,5
  91:13,16
**remained**
42:11
**remains**
18:15 152:21
**remember**
5:23 121:15 122:11
  122:20 131:4 150:3
**remind**
71:9 78:9 155:25
  174:10
**remitting**
132:25 134:17
**removal**
90:17 92:10 93:11
  94:4 103:9
**rendering**
215:10
**reorganization**
173:7,19 176:20,25
  177:10,18 179:6
  182:4,14,18 189:25
**rep**
173:17
**repeat**
112:17 177:25

179:24
**repeated**
223:25
**rephrase**
56:21 80:22 84:8
  88:11 107:4 108:10
  125:4 145:9 179:23
  215:14,21 226:11
**rephrased**
59:13
**replaced**
118:9,23 119:12
  120:4,12,14 126:6
**report**
156:19,23
**reported**
156:16
**reporter**
1:13 4:23 5:5 10:15
  242:4,8
**reporting**
196:5
**reports**
53:25
**represent**
24:21 143:16 158:2
  172:18 214:15
**representative**
8:2 173:2,3,9,20
  176:13 181:8
**representatives**
2:16 13:10 175:13
  176:2
**representing**
31:12 49:4 203:2
**represents**
54:12 64:20
**reproduction**
242:8
**reps**
172:13 174:13
**requesting**
16:7
**require**
13:8,9 71:16,18
  72:10,17,24 76:6

78:4 82:4 85:6
99:24 107:9 108:5
108:14 109:3,17
226:3
**required**
5:19 49:18 74:14
  100:20 106:11
  116:20 117:2 196:7
**requirement**
46:15,22 76:2,3,13
**requirements**
46:12 48:12
**requires**
9:2 106:4 226:6
**reread**
6:14
**reserve**
25:16
**reserved**
144:8 190:23
**residuary**
23:24 34:15,17,25
  51:3 143:24,25
  144:18,22 145:2,12
  147:19 149:15,24
  151:15 152:17
  154:9,25 155:9,19
  157:16 160:5 161:3
  161:4,7 164:5 165:4
  166:3 170:21,24
  171:3,8,12
**resolution**
8:11 239:13
**resolve**
224:8
**resolved**
34:22
**respect**
131:10 143:20
  204:25 222:22
  233:10 236:23
  237:24
**respective**
169:7
**respond**
27:23 119:7



26-10769-mg    Doc 49-34    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 34 -
Transcript of May 14    2026 Deposition of Andrew Barrington Chissick    Pg 280 of 293

Page 35

**responded**
154:4 170:16
**Responds**
195:13
**response**
51:18 113:13 237:8
237:13
**responses**
5:5
**responsible**
118:25
**rest**
106:12 123:19
143:11 163:10
166:22 170:13
182:20
**restate**
82:21 191:7
**restating**
93:2
**restoration**
53:7
**restored**
40:12
**restriction**
230:8
**restrictions**
43:15
**restructuring**
177:20 178:5,16,20
178:23
**result**
157:12 191:9,10
**resumed**
116:5
**retain**
24:15 25:20 55:9
96:10
**retained**
55:6
**retainer**
28:19,21,23,24 29:3
29:7,10
**retains**
160:15,22
**retread**

203:9
**retrospective**
72:7,14 73:8 134:4
**return**
25:23
**Returning**
105:23
**reveals**
108:13
**review**
55:22 56:4 61:12
134:11 142:6 214:8
**reviewed**
7:20 59:6,9 98:20
**revise**
61:14
**revision**
59:10
**right**
14:7 33:21 35:3,22
40:22 46:9 52:24
56:9 60:4 75:12,19
76:24 81:2 86:7,9
93:13,14 94:21
99:23 142:23 147:8
150:19 159:5 163:9
164:3,4 165:5
169:11 172:23
180:13 185:10,21
186:8 190:21
196:24 209:10
211:13 213:11,17
216:8 228:23
229:17
**rights**
14:10 15:24 69:8
73:10,13 74:2 78:18
80:14 82:18,23
83:24,25 87:4
137:11 220:10,25
228:20 231:13
**risk**
96:6 125:16 166:20
**Riz**
2:21
**road**

175:19
**Robert**
2:20
**role**
30:3,4 79:20,22 80:9
108:24 109:13
187:10 221:10,16
227:10 233:21
**roles**
226:20
**roll**
30:21
**Romanette**
76:25
**roughly**
27:16 28:15 203:15
**route**
142:3
**routes**
139:24
**Roytblat**
2:7 3:15
**rubber**
175:19
**rule**
154:9
**rules**
45:25 46:6,10,11
47:24 50:13,23,24
117:8 240:11
**rushing**
88:14

---
**S**
---
**S**
4:8,8 116:2,2,2,5,5
**said**
23:7 27:12 52:8,23
53:16 56:22 60:19
72:16 78:10 86:10
99:3,18 101:19
104:2,19 105:17
111:20 117:2
118:10,14 122:25
123:2 124:2 131:4,8
136:7 146:5 153:25

158:22 160:10,11
180:14 195:2,3
203:12,17 211:8
213:11 215:9,25
216:3 226:19
227:10,22 236:17
236:19
**sale**
89:8 95:12
**same**
5:3 16:16 36:21
38:25 39:5 41:6
61:5,8,10 66:7
71:11 73:11 77:6
81:8 100:22 138:5
140:16,18 150:5
153:15,21 154:6
157:12 158:19
179:18 193:15
194:23 195:6
200:23 203:9
205:13,16,20 207:5
208:2 222:21
223:17 242:8
**sanction**
45:13 70:16,22 71:6
71:14,17,18 72:4,8
72:11,17,24 73:8
74:7,12,13,18 75:8
75:25 76:2,7,10
81:25 82:4 85:5,6
99:25 100:19,25
101:5 104:3,9 106:5
106:8,10 108:14
109:17 110:2,5,8
133:9,11,13,19
134:2,6 179:20
180:11,21,24
199:10 223:5,9
224:21 225:8,12,24
226:3,6,18 230:23
231:2
**sanctioned**
76:14
**sanctions**
45:5 73:3 100:18



26-10769-mg   Doc 49-34   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 34 -
Transcript of May 14   2026 Deposition of Andrew Barrington Chissick   Pg 281 of 293

Page 36

195:21 198:18,20
238:12,15
**Saskia**
2:18 3:18
**sat**
18:14
**satisfactorily**
25:7
**satisfied**
107:25
**satisfy**
63:11 174:4 176:18
217:21
**save**
98:7 124:15 130:25
139:9 143:20
**saw**
61:14
**saying**
21:5 51:5 69:18
74:22,24 77:24
79:23 85:11 91:14
93:3,22 99:8 101:3
101:6,7 105:14,16
128:6 131:13
138:14 160:14
164:9,18 198:2
212:18 232:14
238:6
**says**
11:21 22:25 63:21
71:11 74:6,16 76:16
79:7,11,12 81:16
83:14,15 91:5 93:9
93:17 100:17 118:5
118:22 119:12
121:23 123:7
126:17 158:18
196:24 210:16
220:23 228:19
**scenario**
190:20
**Schedule**
70:15 71:13,24 72:21
73:11,14,20 74:17
77:11 78:8 80:3

82:3 100:24 101:5
194:8 224:17,23,24
225:2,6 227:5,6
228:2 230:11,24
231:4
**scheme**
178:19
**Schiller**
1:11 2:4 3:13,16,17
4:19 65:6 239:9
**scope**
29:16,20 45:10
204:22
**screenshot**
169:19
**second**
10:15 18:25 23:10,18
47:13 60:20 61:2
112:9 115:8 137:14
142:7 144:6 171:18
172:5 189:21
236:18
**Secondly**
22:9
**second-to-last**
159:8,12
**section**
19:16 67:15 79:4,6
79:13 125:3 174:7
174:19 175:14
184:19 185:3,4
201:5 204:19 205:2
207:21 208:12
217:22 233:5
**sections**
63:24 172:17 208:22
**secured**
198:15 199:20
232:11 233:25
**secures**
179:15
**securing**
132:24 134:17
233:21
**securities**
96:5

**see**
18:25 23:4 33:6 59:9
63:24 70:6 79:11
81:19 86:15 87:22
91:3,5 92:12 94:21
96:11 102:15
106:19 107:10
111:11,12,19
113:19,21 114:13
114:20 121:21
129:5,8 136:4
137:25 157:2 158:8
158:17 172:24
174:15 182:11
185:13 188:6
**seeing**
24:9 54:14
**seek**
19:19 21:9 23:2 24:2
71:5 72:4,7 73:8
74:12 75:25 76:2
97:2 110:5 122:3,6
123:12 125:17
132:9,19 133:6,10
133:21,23 134:6
135:20 136:3,13,14
147:3,4,5 148:24
149:5,14,17 166:6
167:5 171:7 175:5
200:24 209:3
**seeking**
10:7 17:19 24:5
70:21 99:6,11
135:12 141:24
145:20 146:22
147:11 149:19
155:13 187:14
193:10 210:24
**seeks**
21:4
**seem**
106:13 135:11
173:21 207:4
**seemed**
156:20
**seems**

74:2,3,15 120:19
131:13
**seen**
21:23 27:6 47:9
54:13,23 55:19
59:24 131:3 141:7
141:11 145:19
152:21
**self**
78:9
**self-explanatory**
60:16
**sell**
77:19 78:17 80:3,17
85:21,24 89:14,20
194:9
**send**
62:2 66:10,18
**sending**
44:10,12
**sense**
49:24 152:13 198:19
226:13
**sent**
56:3
**sentence**
84:15 109:14 112:9
118:6 119:12
126:15,17 127:5,23
128:7 132:6 138:6
138:20 142:13
151:13 159:14
165:25 167:12
231:24
**sentences**
159:24
**separate**
15:7 152:6 206:4,5
**sequence**
212:10
**serious**
92:20
**seriously**
195:25
**serve**
11:22 49:10,11 50:14



26-10769-mg    Doc 49-34    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 34 - Transcript of May 14    2026 Deposition of Andrew Barrington Chissick    Pg 282 of 293

Page 37

served
 53:22 195:25
service
 49:14,22 50:3,7
SERVICES
 1:16
set
 34:4 46:11 63:3,22
   63:23 64:3 70:25
   71:13 78:7 100:24
   101:4 105:8 111:4
   113:22 114:2
   116:19 121:9,10
   128:15 136:4 162:3
   168:3 172:8 206:17
   214:6 216:2 217:5
   218:2 221:14,20
   223:13,17
sets
 19:9 43:11 71:19
   114:20 194:6
   208:12
setting
 47:22 102:8
settled
 157:5 159:14
settlements
 224:8
settling
 119:2
several
 211:22
Shall
 160:24
share
 236:5
shareholders
 237:6
shares
 41:9
she
 4:25
shopping
 73:21
short
 156:20

shortened
 158:23
shortly
 26:5 203:17
should
 15:23 47:9 59:2
   73:17,21 90:8 98:7
   125:13,15 127:19
   145:22 146:24
   155:3,18 158:22
   166:7 187:12 208:6
   212:21 235:18
show
 143:2
shown
 80:16 82:18,22 88:23
   185:17
shutting
 178:8
side
 27:22 43:24 97:21
   160:9 177:13
sides
 31:10
signed
 27:4
significant
 45:5 201:21 202:3
similar
 27:9 32:13 79:18
   113:13 152:13
   155:2,17 205:7
simple
 49:19
simpler
 64:5
simply
 25:15 26:25 74:16
   109:6
since
 7:9 27:20 28:10
   43:18 52:9 172:17
Singapore
 132:22 139:24 140:3
   140:5,7,8,10
single

36:8 114:2 167:15
   186:20 206:14,17
   231:13
Sir
 195:8 196:24 197:18
sit
 14:11 24:18 112:16
   145:6 155:10
   169:15
sits
 88:24,25
situ
 40:20
skeleton
 31:23 35:19 122:9
   150:12,15,16 157:2
   159:19,19,21
   240:11
Skinner
 2:7 3:16 238:25
   239:8,8
skip
 98:21
slight
 121:6
slightly
 33:2 40:15 92:2
   96:23
small
 49:25 50:3 232:4
sole
 195:14 197:2 237:5,6
solely
 7:3
solicitors
 160:18
solvency
 200:12 237:19
solvent
 188:9
some
 38:2 48:22 62:22
   73:6 75:8 76:6,6
   77:20 82:4 83:19
   85:4,6 86:25 98:9
   100:12 103:15

112:10 116:15
   117:22 118:6
   120:25 122:21
   130:12,22 131:15
   131:17 157:15
   161:8 169:15,20
   175:18 177:19,20
   182:16 195:16,16
   201:16 205:24
   232:17 234:17
   235:16
somehow
 125:11
someone
 57:12 95:13 116:22
   117:5 137:19
something
 5:23 13:17,19 23:5,7
   24:8 27:13 32:11
   33:5 39:2,19 43:5
   53:11 76:15 77:20
   85:16 90:4,22 91:23
   97:19 99:10 121:18
   121:23,23 122:8,15
   123:7,24 128:11
   137:7,15 147:16
   156:9 161:13,23
   164:23 178:21
   181:11 185:9 186:3
   189:9,18 210:12
   211:14 226:17
   229:15,20
sometimes
 14:6 16:11,12 136:17
   136:18 156:17
   160:7 187:16
   211:12
somewhat
 162:12
Sophia
 3:15
Sophie
 2:7 11:9
sorry
 11:9 20:23 33:24
   34:2 35:17 38:17


MAGNA
LEGAL SERVICES

41:3 44:16 45:8,20
49:3 55:25 64:25
65:25 79:22 84:20
87:21 88:10,11
90:18 99:8,15
100:19 105:22
107:2,5 108:25
112:17 115:5
124:20 129:2 131:9
136:10 141:19
142:6 146:3 150:10
152:3 161:25 163:9
177:25 180:4
185:25 186:2
188:24 191:16,24
194:25 195:4
213:25 218:15
227:16

**sort**
170:22 175:18
178:10

**sorts**
58:24 117:17

**sought**
68:3 121:16 133:12
139:15,19 141:13
141:21 167:19
168:6 169:25
184:18 194:11
230:23

**sound**
136:20

**sounds**
49:24 161:2

**source**
80:24 84:10,22 93:6
95:7 98:9 99:9
100:7

**sourced**
93:19,22 95:2 101:16
103:3 104:25

**sources**
94:6 101:12 104:14
104:15

**sourcing**
98:22

**SOUTHERN**
1:3

**speak**
6:18,21 90:19 143:16

**speaking**
48:13 98:14 145:16
146:6 153:17
154:13 163:6
169:21 187:24
194:17 207:24
209:14 222:11
236:14

**special**
57:14

**specialists**
59:2

**specific**
19:18 57:9 64:10
67:6,11 69:19 83:2
86:11 88:19 95:20
118:3 125:12
146:16,18 154:9
219:14,25 223:7
226:2 236:25

**specifically**
9:10 17:23 35:7 79:8
86:8 89:8,15 135:8
136:8 207:19,20
222:6,19 223:13
224:2 232:25 238:2

**speculate**
29:12 41:25 50:16
77:22 230:6

**spelled**
171:10,13

**spent**
222:17

**splitting**
92:17

**spoken**
6:24 7:4,7,9,13 52:9
52:10

**spot**
51:21 188:17

**stage**
164:18 181:14

183:10 212:12

**stakeholder**
231:14

**stakeholders**
57:6 232:6

**stand**
58:15 212:25

**standalone**
186:19

**standard**
117:18 194:13

**standing**
34:21

**Standish**
12:6 54:16

**stands**
164:4 165:17 213:17
226:7

**start**
4:20 80:21 84:14
172:24,25 203:10
214:3

**starting**
151:14,20

**starts**
174:14

**state**
1:13 4:15 38:15
102:18 120:10

**stated**
64:19 103:21 133:7
134:23 157:10
161:5 163:3 191:18
192:3,12 193:19
204:6 227:19
237:11

**statement**
16:8 63:15 102:5
117:12 119:14
192:24 199:17
201:15 211:18
214:9,18,23 216:12
220:17

**statements**
62:22 175:17 214:6
214:14,15 215:16

216:8 218:7

**states**
1:2 63:20 100:16
103:8,16 105:3
132:12,21 135:24
143:19,22 151:14
156:4 175:8

**stating**
36:12 37:9,22 102:3
120:10

**status**
141:25 198:9 200:17
230:2

**statute**
70:25 80:8 102:12
152:12 222:2

**statutory**
15:7,8 19:21 137:10
152:8 234:3

**step**
178:20 183:16
228:17

**stepped**
238:24

**steps**
13:8,11,13 14:15
15:25 18:2 41:25
72:9,13 73:7 76:17
77:18 88:7 90:16,22
91:7 92:9 99:23,24
103:8 120:25
133:19,24 134:3
145:10,15 148:12
148:17,20 162:6
164:20 168:21,25
170:6 177:8 183:24
184:25 186:15
197:15 213:7

**still**
7:22 13:14 18:6,17
18:19,20 30:20
40:21 50:8 88:25
99:25 110:13
118:12,17 119:10
121:3 137:13
139:16 149:15



26-10769-mg    Doc 49-34    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 34 -
Transcript of May 14    2026 Deposition of Andrew Barrington Chissick    Pg 284 of 293

Page  39

160:14 191:16
194:17 197:17
214:10,20
**Stipulations**
241:6
**stood**
165:4
**stop**
227:24
**straight**
197:4
**strawberries**
85:17
**stream**
45:18
**Street**
2:16
**stretch**
96:7
**strike**
170:13
**strong**
153:18
**structure**
58:12,21
**stuff**
136:22
**subject**
28:13 37:19 40:18
42:3 56:14,22 63:9
76:5 115:3 133:8
175:2 182:2 189:17
194:3 202:14
217:16 224:21
225:7 238:11,15
**submission**
35:24 36:11,16 37:15
37:19 156:13
195:19
**submissions**
35:19,21 36:6,7
37:25 59:17 121:13
122:21 124:16
131:2 134:12 150:4
150:7,8 154:19
156:9 162:4 187:9

192:16,23 193:23
200:6 205:22
**submit**
31:23,24
**submitted**
32:18 35:16 58:3
150:16
**submitting**
31:20
**subparagraph**
89:11,12,18
**subparts**
113:3
**Subscribed**
243:8
**subsection**
208:4,7 210:21
211:12,13
**subsections**
223:3
**subsequent**
63:24 199:14
**subsequently**
10:6 34:6,9,12 73:8
76:17 107:17 134:3
199:16
**substance**
52:16 66:24 67:11
**substantially**
205:7
**substantive**
48:15 50:4 59:11,20
60:7,11,13,15 97:21
174:12 185:10
**substantively**
185:12,16
**such**
24:18 26:13 75:16
77:17 90:15,16 91:8
91:8 92:9,10 93:10
93:15,25 94:4
100:15,16 103:8,9
111:8,24 118:20
127:13 128:19
134:10,14 153:20
163:16 165:9

166:23 173:10
176:13 179:3,9
214:15 230:20
**suggest**
160:20
**suing**
137:19
**Sullivan**
2:15 3:19 6:24 9:22
52:12 54:4,7,11,19
55:10,20,22 58:7,21
64:17,19 65:4,17,23
65:24 66:18 67:16
218:5
**summarized**
111:16,21 113:23,24
114:8
**summarizing**
112:4
**summary**
64:2 106:17 112:3
156:19 173:21
**supervision**
40:19 63:10 148:21
182:2 196:17
231:16 242:8
**supplemental**
23:11,20 142:16
144:16 240:11
**support**
126:14
**supported**
21:8
**supporting**
10:10,12
**suppose**
15:15 16:24 22:5
89:3
**supposition**
95:16
**sure**
8:6 26:10,16 32:9
34:23 36:18 37:16
41:23 47:7,21 50:2
51:23 56:21 64:22
82:14 87:2 88:23

89:10 115:14 119:5
122:14 128:12
144:12 153:10
165:3 169:18
174:17 178:20
181:9 191:6 207:25
215:20,22 219:14
220:22
**surely**
183:22
**surprised**
210:9
**suspect**
83:18 97:20 154:20
205:23 233:4
**suspended**
14:16
**switched**
11:9
**sworn**
4:9 6:3 242:2 243:8
**synonymous**
91:21
**synonymously**
89:22
**syntax**
83:12 173:22
**system**
57:10
**S&C**
61:20,21,22 62:3
216:4 218:9
**S&C's**
62:13

———————————
**T**
———————————
**T**
4:7 116:2,4
**tailored**
108:20
**Taiwan**
132:22
**take**
5:14 13:8,11 14:14
15:25 17:25 29:2
45:20 46:3,19 48:24



51:17 59:14 72:10
72:13 73:6,7 75:15
77:18 79:9 88:12
90:15,22 92:8 99:23
108:6 120:25
125:20 128:9
133:18,24 145:10
148:11 164:19
168:25 177:9
201:13 216:11
222:10 227:2
228:17 238:18,25
**taken**
 1:10 13:13 76:24
82:6 107:15 148:17
148:20 162:6
168:21 170:6
183:16,24 184:25
186:15 209:6
**takes**
 16:5 29:10 90:6
188:3 202:8
**taking**
 22:18 29:6 126:9
134:3 183:3 213:8
230:19
**talk**
 26:11 27:10 69:5,6
107:20 130:8
144:22 178:2 228:2
**talked**
 45:12 52:22 59:17
81:22 109:22
136:15 137:8
138:15 169:14
177:6 189:17
216:23
**talking**
 25:23 26:21 33:16
64:16 73:12 86:4
88:17 138:5 170:4
177:19 185:18
190:14,16,17 197:5
204:22 207:25
218:23 224:2 227:6
235:7

**talks**
 19:13 75:6 79:6 80:2
82:11 104:23 189:6
**tangential**
 97:23
**tangible**
 41:12
**taught**
 173:15
**team**
 21:18 22:2,4 58:13
58:16,19 178:16,16
178:21
**Technical**
 138:8
**technically**
 206:3 207:15
**tell**
 5:7,10,15 6:3 53:13
79:5 88:18 106:10
233:13
**telling**
 193:14
**term**
 40:14 60:12 71:21
118:3 173:2,3
181:20 219:3
**termers**
 61:23
**terminology**
 8:7 59:21 223:15
226:16
**territorial**
 131:15
**territory**
 203:7
**test**
 160:8 161:5 162:17
163:2 167:25 168:3
169:14
**tested**
 131:22
**testified**
 4:10 116:5 238:9
**testifying**
 6:7

**testimony**
 10:21 11:5 80:20
105:11 107:12
108:8,17 109:20
110:11 204:11
228:25 236:16
242:2
**text**
 210:16 215:23
225:19
**Thailand**
 132:23
**than**
 7:2 8:3 59:23 133:7
144:15 188:16
221:25 234:17
**thank**
 3:11 5:8,11 20:18
29:15 46:21 47:7
51:19 53:12 76:21
99:14 103:14,14
115:11 117:20
142:11 160:23
182:10 195:12
201:7 210:19
239:17
**Thanks**
 114:19
**their**
 12:7 13:5,9,10 15:5
15:10,21 16:12
18:10,11,12 20:6
21:2 22:7 26:3,5
27:17 31:13 32:21
36:17 40:10,16,17
41:9 44:3 54:17
55:12 61:23 66:3
70:23 75:21 80:9
97:8 104:8 114:21
118:19,19 132:9
135:21 136:22,25
137:10,11,12,13
138:24 145:7 147:5
148:10 149:5,14,18
174:23 175:5,11,23
183:25 184:9,9,11

186:11 192:17,18
193:3 203:16,18,20
220:18 233:21
237:7,9,16,19,19
**them**
 5:6 7:19,21 10:2
12:13 13:3,7,8
16:18 18:14 21:23
22:8 31:12 56:10
62:3 71:5 72:3,5,23
72:24 73:4 74:4,10
75:18 76:23 85:21
86:12 89:22 96:5
101:8 105:16
109:22,24,25 117:6
118:4 123:17
130:19 134:5
135:12 147:19
158:3 169:3,6
175:12 176:4 182:8
185:5 189:14
194:22,22 200:16
207:5 216:11
218:24 219:7
230:25 234:3
**themselves**
 3:10 118:25 122:5
130:22 184:2
**then**
 13:8,9 14:16 15:25
25:19 27:20 37:24
61:2 62:8 69:14
72:13 73:7 75:6
77:9 80:6,16 81:23
82:2 83:16 85:10
88:13 92:8 94:2
95:12 97:2 98:13
99:5 102:12 104:14
113:17 117:6,21
127:3 128:13 129:5
132:14 135:16
143:23,24 152:9,14
153:16 154:7
164:17 175:10
179:15 188:6,6,7,12
188:25 195:8 196:6



26-10769-mg    Doc 49-34    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 34 -
Transcript of May 14    2026 Deposition of Andrew Barrington Chissick    Pg 286 of 293

Page 41

198:24 202:6,7
207:9 212:7 214:13
216:6 235:19
237:10 238:22
**theoretically**
95:25
**therefore**
160:21 163:24
164:21 185:6
187:19
**there's**
56:25 87:22 96:2
186:3
**these**
6:8,15 11:18 26:17
30:9 32:16 41:14
42:22 46:9,11 47:24
49:19 50:23 51:2
55:15 61:17,20 74:2
74:8,16,21,25 77:22
86:6 89:21 99:23
100:4 102:11,16
104:6 107:20 122:6
131:23 133:10
134:23 137:24
140:23 141:11,14
143:21 144:22
147:7,15,18 152:22
165:19 166:14
169:11 172:18
173:13 177:23
178:3 182:6,11,21
184:4,22,24 186:21
188:19 191:19
192:20 193:20
196:22 198:7
201:24 202:4
206:19 207:14
218:6 222:18
223:17,21 224:3,5
224:10 232:16
235:10 238:10
**they're**
15:16 16:21 56:22
69:4 130:18 137:15
176:24 178:18

183:18 187:17
198:4 205:2,12
209:7 212:3 213:17
223:8 232:3 233:23
**they've**
130:24 150:4
**thing**
36:8 56:23 97:10
103:23 124:14
138:5 170:23
186:19,20 208:2
224:12
**things**
22:5 27:22 31:11
36:24 49:19 53:3
58:25 65:19 74:21
75:12 84:2 85:4
86:6 112:12 117:17
121:7,25 136:25
137:24 138:19
146:6 147:18 163:5
169:15,20 177:14
178:3 180:9 185:13
203:6,8 232:15
**thinking**
52:25 53:5 103:25
151:2 166:17
211:18
**third**
2:11 148:6
**though**
45:16 149:14 222:15
**thought**
23:6,8 24:8 26:25
39:19 59:19 97:19
176:11 179:21
180:16 194:25
**threatens**
123:8
**three**
12:12 34:9 147:8,15
149:13
**threshold**
118:24
**through**
14:23 16:6,11 37:7

57:23 69:6 76:24
81:7 88:13 91:11
96:9 99:13 104:5
107:17,24 109:9,23
110:7,14 117:22
122:20 123:18
139:9 140:11
142:15 156:24
159:13 170:9 177:7
180:20 181:18
182:6 196:6,23
201:5,6 215:5 216:8
216:24 219:24
222:10 223:3 233:4
233:5
**throughout**
211:23 218:16
219:20 222:22
**Thus**
68:3
**time**
3:5 4:5 16:16 26:4
36:21 46:3,19 51:25
52:4 72:12 84:20
88:5 98:8 108:6
115:17 116:3,9
117:12 138:11
151:12 171:22,25
199:25 202:18,21
205:20 207:5
212:13 222:17
239:4,7,18,21,22
**times**
10:23 13:6 40:19
115:3 197:11
211:22 218:17,18
**title**
18:12 118:17 201:13
**today**
39:17,25 121:14
148:17 150:18
152:23 183:3 203:7
204:11 214:10,20
215:3 216:24 218:5
239:10,16
**today's**

3:4 6:10 207:6
**together**
126:25 167:3 196:5
206:2,9,12
**told**
86:7
**tomorrow**
85:19
**too**
66:7 203:9
**took**
81:2 169:19
**top**
116:17 158:13 186:2
**topic**
171:19
**total**
21:20 44:5 164:9
197:8
**toward**
231:12
**track**
102:5
**tracks**
127:21
**trade**
156:5 199:9
**trading**
198:19
**transactions**
231:18 233:15
**transcribing**
4:23
**transcript**
60:24 70:19 102:7
115:7 163:4 186:24
186:25 194:15
196:24 240:11
242:8
**transfer**
90:21
**transpires**
201:19
**trials**
53:10
**tribunal**



26-10769-mg   Doc 49-34   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 34 -
Transcript of May 14   2026 Deposition of Andrew Barrington Chissick   Pg 287 of 293

Page  42

143:17

**trigger**
198:25

**trite**
143:5,7

**trouble**
116:15 119:8

**true**
124:22 163:12,13,15
201:20 242:2

**trump**
125:13,15

**truth**
6:4 31:12

**truthfully**
6:7

**try**
57:2 161:20 162:11
169:7 203:5,8
236:15

**trying**
33:3 37:17 80:11
84:9,21,25 120:10
194:19 195:2,3,4

**turn**
11:20 23:22 213:21
231:7

**twice**
10:24

**two**
6:14 9:21 22:5 33:7
36:24 52:24 53:4
55:2,15 57:3 59:12
126:24 137:24
138:14,16,19
139:23 150:13
172:16 173:16
178:3 203:2 204:25
208:19,22 218:13
219:5 236:25

**two-pronged**
175:21

**type**
11:3 192:4,6,14
193:21

**types**

107:20 114:4

**typical**
225:25

**typically**
14:10 48:13 71:24
89:25 90:3 106:15
138:24 153:17
154:13

**typo**
127:17 128:3

**T-R-I-T-E**
143:7

---

**U**

**ultimately**
28:12 69:21 196:9
216:16

**ultra**
74:23

**umbrella**
186:22

**unbiased**
47:17,20

**uncertainty**
25:9

**unclear**
65:11 156:17 191:16

**under**
5:20 6:3 17:16 20:7
22:9 26:22 27:2
28:4 29:9 30:24
35:2 47:24 51:6
56:8 63:7 64:8
66:20 69:22 70:9,13
70:15,19 77:10 80:7
81:23 82:3,10 96:17
98:15 109:9 117:7
118:11,16 123:22
124:10,11,21 125:6
133:17 134:10
137:19 139:16
148:21 152:20
168:18 170:8
176:16 181:23
184:23 185:3
186:21 190:6 193:6

194:8 196:7,16
198:25 204:19
205:15 207:19,20
208:4,7,14,22
230:14 231:16
235:8 236:2,11
242:8

**understand**
5:9 6:2 12:22 21:19
21:24 31:22 32:19
33:3,15 34:5,24
41:18,23 57:11 59:2
60:6 63:14 64:22
71:15 73:24 81:15
84:24 86:18,20
102:9 104:11
105:21 107:5
111:21 131:7
151:22 158:16
166:15 175:17,22
179:5,11,24 181:9
190:10 193:7
196:20 197:25
206:25 208:21,23
218:14 223:13

**understandable**
156:12

**understanding**
6:23 32:24 37:3,10
38:8,10,21 47:19
54:10,15 55:14
58:12 67:15 102:3,8
112:6 120:9 129:17
129:24 133:16
140:21 141:5 155:5
155:8 161:25
167:16 177:23
185:11 188:17
205:19 213:15
229:3

**understands**
188:2

**understood**
5:13,18 18:16 32:13
41:20 120:15 127:2
136:24 167:20

168:7 176:14
187:21 207:12

**unfettered**
93:13

**uninfluenced**
47:11

**Union**
151:7,17 155:3,22
156:14 157:23
158:6,21 162:17
167:2,7,8,25 168:3
240:11

**unit**
12:15

**United**
1:2 63:20 132:12,21
132:22 143:19,21
175:8

**unless**
5:21 66:16 76:15
156:8 242:8

**unpack**
168:11

**unquestionably**
157:17

**unsigned**
199:16

**unsworn**
201:15

**until**
212:13

**unusual**
16:18 51:12

**up**
22:8 38:18 44:13
116:17 145:23
146:19,20 148:5,7
149:9 155:11,12
156:6 157:6,19,21
160:19 177:21
182:23 186:9,12
188:24 190:20,22
190:25 191:5
209:13 210:4,10
212:21 225:5 230:6

**upcoming**



26-10769-mg    Doc 49-34    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 34 -
Transcript of May 14    2026 Deposition of Andrew Barrington Chissick    Pg 288 of 293

Page 43

24:11

**upon**
13:21 16:24 19:10
25:9 30:8 64:2 66:6
68:9,24 71:25 74:11
77:4 81:16 95:8
96:5 105:24 107:7
134:11 149:10
152:7 167:21 168:8
169:17 175:12
184:11 195:22
199:22 200:22
201:3 208:13 210:6
218:7

**upper**
184:9

**urgent**
73:6

**us**
12:15 13:9 66:13
98:8 123:18 130:5
146:4 201:14 202:8

**use**
50:9 61:25 71:21
74:22 90:8 92:15
144:25 151:5
166:13 185:23
193:14 194:19
218:12,21 223:15
231:4

**used**
61:16,25 62:13 64:24
137:18 209:2
210:23 211:12
222:23

**using**
89:21 210:2 219:3,7
226:15 232:14

**usual**
210:4 224:19 225:4

**usually**
188:12

**U.K**
7:22 11:4 45:2,7
140:17,18 156:4
194:24 195:7

**U.S**
9:13 10:8 21:14
26:18 27:6,7 30:8
32:14 37:9 39:2,5
44:24 50:17 53:16
56:16,19 57:11
58:23,25 62:10,20
62:22 63:4,15,17
64:8,9,11,12,15
65:10,13,14 66:20
67:19,20,21 106:10
107:10 109:2,16
114:7 135:21
140:20,22 141:2,10
141:17,23 172:9,16
172:17,21 173:25
178:2 181:10
190:11 204:8,16
215:4,6,8,12,17
216:3,17,19 217:8
218:4 232:9 234:22
240:11

---
**V**
---

**valid**
25:19

**value**
69:10,24 75:4 78:2,3
78:5,14 82:12 83:8
85:12,16,25 87:7
102:24 189:5 192:7
219:23 220:12,19
221:4,12,17 226:22
227:12,15 228:22
229:6,16 230:4,21

**variable**
98:16

**variation**
21:4 23:2 24:2,6
122:7 145:21
146:22,23 147:12
149:20 155:13
166:6 167:6

**variety**
205:23

**various**

12:8 13:11 14:15
15:25 38:3 43:14
51:9 73:18 99:23
148:14 168:9
169:12 207:3,8
229:23 233:6

**vast**
129:24

**veil**
25:8

**ventilated**
131:24

**Venture**
203:3

**Ventures**
2:10 3:24 222:6

**verbal**
5:4

**version**
158:24,25 195:23

**versus**
75:13 137:5 219:4,10

**very**
22:25 32:18 37:22
43:13,19 45:4 48:18
48:18,19 49:19 51:5
63:21 73:16 82:10
90:21 91:25 92:6
106:16 113:2
117:17 121:24,25
123:9,9 146:25
149:12,12 153:18
158:20 159:7
162:23 164:25
166:23 194:12
197:12,18 199:18
201:18,25 202:3,3
215:5 218:2 237:18

**vest**
14:16 15:8 71:2 72:3
72:22 74:25 77:24
100:15 114:5 142:4
165:10 171:2

**vested**
19:19 109:24

**vesting**

13:7 86:5 179:14

**vests**
15:17 130:19

**Via**
2:21

**victims**
201:21

**video**
3:5

**Videographer**
2:20 3:2 4:4 51:24
52:3 115:16 116:8
138:10 171:21,24
202:17,20 239:3,6
239:19

**Videotaped**
1:9

**view**
25:7 30:9,10 31:16
31:25 33:10 35:25
36:13 38:8,10 47:23
63:5 79:19 89:25
124:25 125:5,13
133:5 136:15 161:4
172:10 174:3
179:17 196:9 216:6
216:20 217:19,20
232:19

**vires**
74:24

**Virgin**
111:10 128:21 129:7
129:10,13,19 130:7
130:11 131:19
143:18 235:24

**virtually**
222:12

**volatile**
96:4

**Vries**
2:18 3:19

---
**W**
---

**W**
4:7 116:4

**Wait**



26-10769-mg    Doc 49-34    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 34 -
Transcript of May 14    2026 Deposition of Andrew Barrington Chissick    Pg 289 of 293

Page 44

91:10 99:2
**waiving**
26:16
**Wales**
8:17
**walk**
88:13 182:6
**Walkers**
8:8,10 11:22 12:2,4
17:7,9 18:23 25:24
25:25 27:14,25 29:2
29:17 35:16 36:10
39:13 40:11 41:16
42:20 43:7,24,25,25
44:17,22 45:9 54:3
54:11 55:23 56:2
58:17,18 150:14,17
157:2 159:19 187:6
187:7 240:11,11
**Wallbank**
152:23 188:22 207:7
**want**
5:24 8:6 26:14 41:24
47:6 58:9 66:6
83:20 86:2 90:5
100:4 101:25 102:4
102:6 104:12,13
114:16 116:13
122:18 123:16
133:23 139:8
150:24 160:2 162:6
162:11,13 165:20
169:4,13 172:24
176:10 182:8
206:25 219:14
225:18 236:22
238:13
**wanted**
222:19
**wanting**
34:24 71:4 175:18
**warrant**
59:10
**was**
1:10 4:9 7:2 8:16,17
9:22 18:22 19:18,24

21:25 22:3,10 25:25
27:9,16 31:5 34:6
36:4 39:10,11,11
41:3 44:16 50:7
52:25 53:10 55:6
58:11,13,20 59:15
60:21 61:13,16,18
62:10,13,13 63:17
66:25 67:2 81:12
84:14 85:18 94:14
97:16 99:12 103:25
105:14 115:8
117:11 119:18
122:2,8,11,21 123:2
123:14 125:16,19
128:3 129:23 131:2
131:4,6 133:20
134:10 136:7
138:14 139:8 141:5
141:6 143:13 151:3
157:9 161:7 164:14
165:16 166:18
170:14 173:15
175:18 184:21
186:6,18 187:11
198:6 201:15
205:23 210:18,24
214:2,9,18 220:14
222:23 228:8
233:23 234:24
242:2
**wasn't**
65:5 139:11 150:10
187:10
**wasting**
85:22
**way**
15:15 16:20 22:15
28:14 38:15,25
47:16 48:5 50:19,21
59:13 60:8 66:8
68:7 69:20 75:15
76:23 81:13 87:12
87:13 96:24 102:21
103:15 105:2 110:7
111:19 113:12

124:3 161:7 170:19
175:24 179:9,18
183:2 193:15 207:6
211:7 212:9 213:5
220:6 229:11,12
**ways**
89:3 95:9 138:16
**wearing**
16:23
**weary**
43:19
**weeds**
156:13
**week**
7:16 122:9 150:8
**weeks**
34:19 203:25 204:4
**well**
43:24 46:24 60:14
64:21 69:4 70:8
72:9,13 73:4 77:14
78:3,22,23 79:25
82:11 85:11 89:3
90:6,20 91:18 92:24
93:21 97:8 98:4
100:14 102:12
105:3 137:17 138:2
140:21 141:2 143:7
146:11 147:20
152:9 153:2 157:5
159:14 164:7 167:5
170:25 177:3,8
178:24 179:13,23
181:13 196:23
197:14 199:6,25
201:13 206:7 210:8
217:25 227:3,8
230:3,19 232:7
235:16
**well-managed**
234:13
**went**
53:10
**were**
7:15 9:15 10:3,5,7,10
10:12 15:20 24:4

25:18 27:18 31:18
38:12 43:22 49:9
52:18,24 53:16,19
61:20 62:11 67:25
68:7 80:23 87:8
99:13 121:13
124:17,17 129:25
133:22 150:25
156:11 164:18,23
165:23,24 168:9
174:18 176:4
181:15 187:4,19
188:13 193:5
196:11 198:19
199:10 203:12,15
203:21 204:19
205:5,7,8,15,21
207:18,20 210:23
213:5 231:11
234:23 236:14
237:16 238:11
**weren't**
156:12
**we'll**
78:10
**we're**
69:5 176:6 201:25
212:18
**we've**
28:9,10 51:21 109:9
109:23 110:6
115:12 167:2 177:7
211:22 215:9
216:24 222:17
**whatever**
61:20 62:4,10 85:18
124:16 179:10
196:7
**whatsoever**
50:18 237:13
**what's**
13:19 29:6 47:19
74:15 167:8 193:12
196:3
**when**
6:16 14:22 15:11



26-10769-mg    Doc 49-34    Filed 05/21/26    Entered 05/21/26 15:29:05    Exhibit 34 - Transcript of May 14    2026 Deposition of Andrew Barrington Chissick    Pg 290 of 293

Page  45

20:16 24:7 25:25
27:10,12,16 29:9
31:9,20,23,23 32:3
36:10 49:2 52:21
55:4 57:22 58:16,20
59:9 61:20 72:16
85:23 99:17 102:10
104:5 106:2,3,20
107:6,16,19 118:22
124:7 130:8 135:19
136:24 151:15,19
152:11 156:17
158:22 165:18
166:13,18 177:18
178:2 180:2,6,8
193:14,17 200:20
203:15,21 206:21
210:20,23 212:6
214:9,19 218:22
219:3,17 231:22
233:18 234:9,19
236:14 237:10

**whenever**
88:16 171:17

**where**
14:15 17:2 20:8 30:6
32:17 34:4 36:15
42:17 44:13 48:17
52:22 56:16 59:17
65:21 67:19 68:23
69:2 70:3,5 73:4,7
74:23 77:3,3,15
80:11 81:20 85:15
86:15 87:25 88:24
90:6,20,23,23 93:9
98:9 106:14 108:22
110:22 111:18
112:15,18 114:6
117:14 123:11
137:14 139:15,19
141:24 143:2,25
146:11 149:8 151:8
152:8,18 153:13,14
153:20 154:4,5
157:10 165:23
169:22 174:14

175:19 182:6
183:19 185:16,17
189:8 194:16 199:8
208:3,4 210:5,21
211:3 214:5 215:4
216:24 221:13
230:19 231:25
232:15 233:5

**Whereas**
232:13

**Whereupon**
188:11

**wherever**
130:17

**whether**
26:22 40:20 54:19
57:18 64:6,10 67:2
74:13 102:13
121:21 123:2 125:2
125:5 134:2 141:20
153:8 156:18,19
158:18 160:5,10
162:16,20 166:19
173:24 182:19
190:24 191:2 200:3
217:9 226:5

**while**
5:20 31:13 35:4
62:12 71:17 117:21

**who**
6:21 12:2 18:8 22:15
22:18 44:16 55:9
57:12 58:5 61:5
64:16 121:5,15
148:5 164:21
179:15 195:8 198:6
234:10

**why**
20:3 22:14 88:12
92:15 102:2,18,18
108:9 114:12
130:14 146:13
148:24 182:17
217:2 228:12
232:25

**wind**

210:10

**winding**
145:23 146:19,20
148:5,7 149:9
155:11,12 156:6
157:6,18 160:19
177:20 182:22
186:9,12 188:24
190:25 210:3
212:21 225:5

**WIP**
28:7

**wishes**
153:6

**withdraw**
13:25 38:19 80:21
108:9 134:25
229:10

**withdrawn**
171:15 229:13

**within**
32:21 47:18 63:12
78:12 89:5 94:2
96:3 111:9 122:24
128:20 129:6,12,19
131:18 143:17
148:20 153:2
163:23 165:9
166:21 168:22
170:7 172:11,13
175:14 183:4,6,17
184:7,9,13,25,25
186:15,18 190:8
197:14 209:13
213:8,10 217:22
219:9 223:24
224:25 225:18

**without**
70:21 71:13 74:18
75:13 81:25 85:5
91:24 100:17,25
101:5 104:3,7 110:2
126:10 129:20
130:10 133:19
164:23 179:20
180:21 218:19

223:5,9 225:24
226:18

**witness**
3:21 4:8 39:4 46:25
47:15,18 48:5 53:9
117:12 239:16
242:2,2

**WLR**
151:18 157:10

**wonder**
13:25

**wondering**
75:10

**won't**
172:19

**word**
35:11 47:20 75:11
77:13 90:9 97:14
99:18 117:23
166:13 179:5,11,17
180:3,6 190:3
193:15 232:14
238:18

**wording**
87:14 88:21 89:4,7
91:11 101:21,22
116:20 127:21
131:17 149:4,21
161:9 176:9 227:4

**words**
59:12 102:12 177:18
218:21 229:8

**wordy**
146:4

**work**
6:23 14:3 28:7,11,16
32:15 42:17 45:18
48:11 56:9 58:14
61:24 66:19 67:2
122:13 125:8
154:14 173:12
178:11

**worked**
9:6,19 32:16 140:8
141:4

**working**



26-10769-mg   Doc 49-34   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 34 -
Transcript of May 14   2026 Deposition of Andrew Barrington Chissick   Pg 291 of 293

Page 46

26:12 28:9 39:3
42:23 80:23 141:5
144:24 156:8
180:20 184:24
**works**
48:5 87:12
**world**
234:15,20,24 235:2
**wouldn't**
44:20 206:14 210:11
**writing**
31:24
**written**
27:13 35:20,24 36:11
37:15,19 66:11,19
67:2,9 192:16,22
224:3
**wrong**
40:15 59:25 76:16
125:19 156:9 199:4
**wrote**
166:18 214:10,19
237:5,11
**www.MagnaLS.com**
1:16

---
### X
**x**
1:4,7

---
### Y
**Yards**
1:11 2:5
**yeah**
29:22 41:7 44:19
52:25 61:10 78:21
79:19 87:5 103:24
112:18 120:16
124:23 128:8 147:9
175:22 180:2,4
192:8 201:11
203:19 223:7
232:23
**year**
186:6,7
**years**

209:9,9 210:14
**yesterday**
52:10 239:12
**yes-or-no**
228:15
**yet**
39:14 106:23 131:22
179:19 191:11
212:15 230:23
**York**
1:3,11,11,13 2:6,6,11
2:11,17,17 7:20
**yourself**
10:16
**yourselves**
122:13
**you're**
146:3
**you've**
5:13 7:11 9:6 32:16
61:3 76:24 80:13,16
85:21 101:11
111:16 118:10
119:9 126:12 141:7
175:17,24 209:8
227:10

---
### Z
**Zhi**
201:20
**Zoom**
2:13,21

---
### 1
**1**
11:13,14 21:3 22:5
57:25 62:24 69:16
76:21 118:4 135:9
151:18 157:10
176:7,17 186:6
214:2,2 216:8 225:6
232:21 237:11
240:11
**1:19**
116:3,9
**1:53**

138:9
**1:56**
138:11
**10**
71:7,11,16,22,24
72:16,19 73:25 74:3
74:6,6,16 75:6,20
75:23,24 77:10
98:13 100:7,10,12
100:14,21 105:6,9
105:14,15,19
157:22 172:20
209:9,9 210:14
240:9,11 241:6
242:8
**10:52**
51:25
**100**
58:15
**10004**
2:17
**10022**
2:11
**101**
175:14
**101(23)**
63:13 64:8 66:4,11
66:20 67:15 172:12
217:23
**101(24)**
172:14
**11**
63:18 186:23,25
240:11,11
**11:14**
52:4
**1105**
158:17
**1113**
159:11
**112**
187:22
**113**
194:17 195:18
**12**
142:11,13 222:5,8

240:11,11 241:11
243:11
**12:43**
115:17
**125**
2:16
**13**
23:14,23 165:24
166:2 167:13
240:11 241:11
**14**
1:12 3:4 214:4
240:11 242:4
**15**
9:16,18 10:25 11:18
18:3 21:14 23:19
30:2 34:3,18 35:9
36:25 38:22 50:14
51:16 58:4 62:25
63:21 64:3 65:21
93:2 134:8,16
141:12,14 161:23
166:25 168:15
170:5 171:6 172:4
174:11 213:22
215:23,25 240:11
**15s**
141:4
**150**
240:11
**157**
240:11
**16**
98:15 187:2 240:11
**161(b)**
210:2
**162**
204:20 205:2,16
208:12
**162(b)**
207:21
**162(c)**
207:21
**162(1)(b)**
207:23 208:22,25
209:23



**162(1)(c)**
184:19
**17**
240:11,11
**170**
174:19 201:5
**171**
19:16
**172**
240:11
**18**
240:11
**185**
79:4,6,11,18 80:2
**186**
79:5,12,13,18 240:11
**1865**
19:16
**19**
240:11
**1969**
157:10
**1972**
151:18

---
**2**

**2**
17:9 69:7,17 70:9,15
71:13 72:21 73:9,11
73:14,21,25 74:2,15
74:17,24 76:6 77:8
77:11 78:6,8,16
80:3,14 81:3,23
82:3,10,17 83:7
84:6,13,17 86:18,20
86:21,22 87:10,12
88:24 92:12,23 98:8
100:24 101:5,14,16
101:19 102:20
118:4 165:24
176:14 194:8
224:17,23,24 225:2
225:6,6 227:5,7
228:2,18,19 230:11
230:24 231:4
232:21 240:11

**2:46**
171:22
**20**
240:11,11
**2003**
100:25
**2012**
8:18
**202**
240:3
**2026**
1:12 3:4 17:8,18 68:2
68:8 142:15 186:5
187:3 242:4 243:8
**21**
240:11
**22**
240:11
**222**
240:11
**23**
67:22 69:17 76:19
81:13 86:3 99:12
105:23 106:9
110:13 111:13,17
112:2 125:22,24
127:7 151:10,14
156:4 159:20 233:7
240:11,11
**24**
21:12 112:8 113:20
172:25 173:16
175:15
**24(iv)**
114:17
**25**
20:17 21:20
**26**
107:17
**29**
68:8

---
**3**

**3**
20:13 69:14,17 70:2
70:13,20 71:12,17

71:19 77:9 78:10
81:25 87:16 89:2
98:9 100:22 104:6
111:4 112:23 113:2
114:21 118:4
128:15,24 186:3
202:10 223:2 225:6
232:21 233:15
236:3,12 240:11
242:2
**3(a)**
69:22 89:13 170:10
**3(b)**
69:22 87:19 91:2
92:3,14,23 93:2,6
93:17,19,22 94:2
103:4,6
**3(c)**
94:7 99:9 132:15,16
132:18 133:17
134:11 135:10
136:7 139:3
**3(d)**
87:19 88:8 94:9
113:8,9
**3(e)**
87:19 94:17
**3(f)**
87:20 94:19,22 95:3
103:13,14
**3(g)**
69:22 95:6
**3(i)**
87:23
**3(j)**
87:23 96:17 103:12
103:20 104:18
**3(l)**
19:15 97:5 98:15
**3(m)**
87:23 104:25
**3:09**
171:25
**3:49**
202:18
**30**

12:8 54:18 68:19
186:9 205:9,20
206:3,5
**32.3**
46:24
**32.4**
47:4
**34**
220:7,9,24
**35**
108:18 109:14 221:9
**36**
60:2,5

---
**4**

**4**
17:8,18 23:11 61:4
98:5 142:9,10 216:8
225:6 232:21 234:7
235:3 240:3,3,11
**4:02**
202:21
**4:49**
239:7
**4:50**
239:4,21,22
**41**
107:18
**43**
114:25 115:10,11
**45**
240:11

---
**5**

**5**
45:24 240:3,11 242:4
**51**
114:23 135:11,15
223:17
**53**
115:8 127:3,6,25
**55**
1:11 2:5 182:7
**56**
182:9
**58**



26-10769-mg   Doc 49-34   Filed 05/21/26   Entered 05/21/26 15:29:05   Exhibit 34 -
Transcript of May 14   2026 Deposition of Andrew Barrington Chissick   Pg 293 of 293

Page 48

182:9 231:8,9

**6**

**6**
68:15,18 116:14
202:11 240:3,11
242:4
**62**
174:13
**624-6221**
1:16
**63**
132:5,7 135:3,8
136:10 138:7 139:7
174:15
**640**
151:18
**67**
135:16,23,24
**68**
240:11

**7**

**7**
20:11 24:10 78:24
240:11 241:6
**78**
157:10 240:11

**8**

**8**
11:20 58:3 150:14
196:25 240:7,11
241:6
**800**
2:11
**866**
1:16

**9**

**9**
28:10 68:2 110:25
111:2,15 120:16
121:4 126:13,14,23
127:16,21 128:2,13
128:14 129:5

130:23 131:13
142:15 157:22,23
222:25 240:11
241:6 242:8 243:8
**9:43**
1:12 3:5
**9:50**
4:5



MAGNA
LEGAL SERVICES