# EXHIBIT 37

## May 12, 2026 Skeleton Argument of the JPLs

**FILED**
**HIGH COURT**
TERRITORY OF
THE VIRGIN ISLANDS

**Case Number :BVIHCOM2026/0027**

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

Claim Nos: BVIHC (COM) 2026/0001 to 2026/0030

**Submitted Date:12/05/2026 12:33**

**Filed Date:12/05/2026 12:33**

**Fees Paid:45.73**

IN THE MATTER OF SURE TYCOON LIMITED AND TWENTY-NINE OTHER
COMPANIES

AND IN THE MATTER OF THE INSOLVENCY ACT 2003

B E T W E E N:

(1) MR. JAMES DRURY

(2) MR. PAUL PRETLOVE

(3) MR. DAVID STANDISH

(in their capacities as joint provisional liquidators of Sure Tycoon Limited and
29 other companies)

<u>Applicants</u>

-and-

THE ATTORNEY GENERAL

<u>Respondent</u>

-and-

SURE TYCOON LIMITED AND 29 OTHER COMPANIES

<u>Respondents</u>

---

### SKELETON ARGUMENT ON BEHALF OF THE JPLS
*For hearing on 14 May 2026*

---

References to the agreed hearing bundle in the form [**HB/Volume/Tab/page**]. The JPLs'
authorities are in a separate bundle and are referred to in the form [**AB/Tab/page**].

1

27042731.1.P5123.L16832

**(A) INTRODUCTION AND OVERVIEW**

1. This skeleton argument is prepared on behalf of the joint provisional liquidators of 30 companies (the **"JPLs**" and the **"Companies**"). The JPLs were appointed over the Companies by orders made on 9 January 2026 on the application of the BVI Attorney General which were later continued on 29 January 2026 without opposition (the **"Appointment Orders**").

2. By paragraph 3(c) of the Appointment Orders, the JPLs were given the power (without further sanction of the Court) to seek their recognition in, among other places, the United States of America (the **"US**"). The JPLs have duly applied for recognition in the US.

3. There are three applications before the Court, which will be referred to in further detail below. The substance of the live matters before the Court is found in the immediately following paragraphs.

4. The directors of 27 of the Companies do not want the JPLs to be recognised in the US. The directors contend that they can (or should be able to) oppose the JPLs' recognition application in the name of the companies over which the JPLs have been appointed. What the directors envisage is a contested recognition hearing in the US between, on the one hand, the JPLs and, on the other hand, the Companies themselves (controlled, for these purposes, by the directors). This would be an unusual state of affairs.

5. The directors of the 27 Companies say there are two routes to this result:

   5.1. First, they contend that there is a legal principle that directors of a company in provisional liquidation retain a residual power to cause the company to oppose foreign recognition proceedings. This is incorrect, both as a matter of the proper interpretation of the Appointment Orders, and as a matter of general law. The directors of a company in provisional liquidation retain a residual power to cause the company to challenge the liquidation proceedings in the BVI (because otherwise there would be nobody to challenge the liquidation proceedings) but the residual power extends no further than that.  The relief sought by the JPLs is essentially declaratory

of what they consider already to be the effect of the Appointment Orders in this regard.

5.2.    Second, if the directors are wrong about the first point (as it is considered they plainly are), the directors of 25 of the Companies go on to invite the Court to vary the Appointment Orders so as to give them the power to cause their respective companies to oppose foreign recognition proceedings. The JPLs respectfully submit that this would plainly be unworkable as it would involve the Court: (i) granting powers to the JPLs to seek recognition abroad; but at the same time (ii) granting the directors powers to cause the Companies to challenge (not in the BVI, but in a foreign jurisdiction) the same recognition proceedings which the JPLs have expressly been given the power to pursue.

6.    The JPLs did, by their application, raise a further point concerning the purported appointment of Cosimo Borrelli ("**Mr Borrelli**") as a director of certain of the Companies. Mr Borrelli was purportedly appointed pursuant to a power of attorney that has not been disclosed and by attorneys who have not been identified. The JPLs confirm for the record that they continue to regard this position as highly unsatisfactory.  However, in light of the other issues that need to be resolved at this hearing, the parties have agreed that the issue should be resolved on another occasion. This skeleton argument therefore does not deal with the Mr Borrelli issue.

7.    If time allows, the Court is respectfully requested to read the following, which it is estimated will take the Court no more than an hour:

7.1.    The Appointment Order in respect Noble Title Limited at **[HB/Volume 1/Tab 12]**. As the Appointment Orders are in materially identical terms, the Court need only read one.

7.2.    The three applications at **[HB/Volume 1/Tabs 1, 5 and 7]**.

7.3.    Paragraphs 1-37 and 50-97 of the first affidavit of James Kenneth Drury ("**Mr Drury**"), one of the JPLs **[HB/Volume 1/Tab 4/pages 31-38 and 42-51]**.

3

7.4. The first affidavit of Jeremy Bressman, an attorney and partner at Kobre & Kim LLP **[HB/ Volume 1/Tab 9]**.

### (B) BACKGROUND

8. The Companies are, or are alleged to be, connected to Chen Zhi ("**Mr Chen**"), a Chinese businessman. Mr Chen is currently incarcerated in China. The US authorities (and other states) allege that Mr Chen has engaged in very significant criminality.

9. On 5 January 2026, the Attorney General of the BVI applied for: (i) the appointment of liquidators over the Companies ([**HB/Volume 1/Tab 10**]); and (ii) the appointment of provisional liquidators pending the determination of the substantive liquidation application (**[HB/Volume 1/Tab 11]**).

10. On 9 January 2026, Justice Mithani granted the application for the appointment of provisional liquidators and appointed the JPLs. Justice Mithani said that "*on the material that's presented by the Attorney General the case for the appointment of provisional liquidators is overwhelming*": [**HB/Volume 2/Tab 19/page 719**].

11. The 30 Companies can be divided into three groups. (1) 25 companies that are represented by Campbells in the BVI (called the "**BS/Campbells Companies**" in Mr Drury's affidavit); (ii) two companies that are represented by Kobre & Kim (called the "**KK Companies**" in Mr Drury's affidavit); and (iii) three companies that do not appear to be represented. When this skeleton argument refers to the companies being represented, it means that the relevant legal practitioners appear to take instructions from the directors exercising their residual power to cause the relevant company to challenge the liquidation applications. There is a dispute as to the extent of this residual power, which is discussed further below.

12. The orders appointing the JPLs are in substantially identical terms (**[HB/Volume 1/Tab 12]**):

12.1. Penal notice: "*The effect of this Order is that the directors, former directors, office holders and former office holders of the Respondent, [name of relevant company] are replaced by the joint provisional liquidators and that the directors, former directors, office holders and former office holders are*

4

*prohibited from taking any action in relation to the Company's affairs without prior consent of the joint provisional liquidators*": [**HB/Volume 1/Tab 12/page 113**].

12.2.    Paragraph 1: the JPLs are appointed jointly and severally as provisional liquidators: [**HB/Volume 1/Tab 12/page 114**].

12.3.    Paragraph 2: the JPLs are given the powers to "*maintain the value of the assets owned by the Company and carry out the functions for which they were appointed*": [**HB/Volume 1/Tab 12/page 114**].

12.4.    Paragraph 3: in addition to the paragraph 2 powers, the JPLs are given further additional powers without the need to seek the sanction of the Court. Importantly, by paragraph 3(c) the JPLs are given the power to "*seek the recognition (or its equivalent) of the appointment of Joint Provisional Liquidators in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, Thailand and Cambodia or elsewhere…*". Further, by paragraph 3(d) the JPLs are given the power to "*commence, continue, discontinue or defend…any action or other legal proceedings in the name of and on behalf of the Company…*". By paragraph 3(l), the JPLs are given the power to "*apply to the Court for directions concerning any matters arising out of the exercise of the above powers*": [**HB/Volume 1/Tab 12/pages 115-116**].

12.5.    Paragraph 7: the JPLs have liberty to apply on short notice for directions, variation or termination of the Protocol (which governs the JPLs' relations with the Attorney General): [**HB/Volume 1/Tab 12/page 117**].

13.    In the BVI, the BS/Campbells Companies and the KK Companies have opposed the application for the appointment of liquidators (and in the case of the BS/Campbells Companies have applied to discharge the JPLs).

14.    On 16 and 17 April 2026, the substantive application for the appointment of liquidators was heard by Justice Wallbank KC. The JPLs were neutral on the issue – the matter being a dispute between the Attorney General and the Companies (acting by their directors exercising the residual power to oppose the liquidation applications). Judgment has been reserved.

5

15. The JPLs have, in accordance with the terms of the orders appointing them, taken steps to investigate the Companies and preserve their assets. That included identifying a bank account in Hong Kong in the name of Prince Global Holdings Limited with a balance of US$198m: [**HB/Volume 1/Tab 12/page 38**] and [**HB/Volume 2/Tab 19/pages 930-931**]. Prince Global Holdings Limited is one of the BS/Campbells Companies but the BS/Campbells Companies did not inform the JPLs of the bank account.

16. On 8 April 2026, the JPLs filed a Chapter 15 petition in the US Bankruptcy Court seeking recognition of their appointment: [**HB/Volume 1/Tab 4/page 43/para 52**] and [**HB/Volume 2/Tab 19/pages 384-407**]. This was a power expressly given to them by paragraph 3(c) of the Appointment Orders.

17. On 16 April 2026:

    17.1. A US law firm called Boies Schiller Flexner ("**BS**") filed an objection in the US Bankruptcy Court, purportedly on behalf of the BS/Campbells Companies, seeking to object to Chapter 15 relief: [**HB/Volume 1/Tab 4/page 43/para 57(a)**] and [**HB/Volume 2/Tab 19/pages 1203-1232**].

    17.2. The US office of Kobre and Kim also filed an objection in the US Bankruptcy Court, purportedly on behalf of the KK Companies, seeking to object to Chapter 15 relief: [**HB/Volume 1/Tab 4/page 43/para 57(b)**] and [**HB/Volume 2/Tab 19/page 1233-1238**].

18. The JPLs found themselves in the extraordinary position that they were facing objections to their applications for recognition of their own appointment apparently from the very companies over which they were appointed. It appears that the directors of the BS/Campbells Companies and the KK Companies believe they have a residual power to appoint attorneys in the US on behalf of those companies and to cause those companies themselves to oppose the recognition of the orders appointing the JPLs.

19. The JPLs have made it clear in the Chapter 15 proceedings that they do not oppose Mr Chen (or his attorney) or the directors appearing and objecting to the petition to the extent permissible under US law. What the JPLs oppose is the

27042731.1.P5123.L16832

opposition purporting to come from the BS/Campbells Companies and the KK Companies themselves.

20. Certain provisional relief was granted by Judge Glenn on 22 April 2026. Judge Glenn said during the hearing that the question of authority was a matter of BVI law and ought to be addressed in the first instance by the BVI Court. The substantive hearing of the Chapter 15 petition will take place on 9 June 2026.

21. It is that question of authority that the Court is asked to resolve today. The question comes before the Court by way of: (i) an application purportedly by the BS/Campbells Companies dated 1 May 2026;[1] (ii) an application purportedly by the KK Companies' application dated 1 May 2026; and (iii) an application by the JPLs dated 4 May 2026. The three applications can be found at [**HB/Volume 1/Tabs 1, 5 and 7**].

### (C) THE LAW

22. For the assistance of the Court, the JPLs set out their understanding of the legal position.

23. The starting point when considering the residual powers of directors during a provisional liquidation is the English High Court case of <u>Re Union Accident Insurance</u> [1972] 1 WLR 640. The UK Department of Trade and Industry presented a winding up petition and obtained an order appointing provisional liquidators. The directors caused the company (through solicitors) to apply to discharge the appointment order. The application was unsuccessful. The Department sought its costs against the company's solicitors on the basis that the directors had no authority to instruct the solicitors. Plowman J refused to make any order against the solicitors. He said the following at 642:

> "It is of course well settled that on a winding up the board of directors of a company becomes functus officio and its powers are assumed by the liquidator. My attention was drawn to In re Mawcon Ltd. [1969] 1 W.L.R. 78, where Pennycuick J. stated in effect that the appointment of a provisional liquidator had the same result. No doubt that is so, but it is

---

[1] This skeleton argument says "*purportedly*" because whether the companies can make the applications themselves depends on the extent of the residual power. However, as regards declaring the effect of the order, the substantive issue is before the Court on the JPLs' application. And as regards any application for variation, the JPLs accept that the making of such an application would fall within the directors' residual powers to challenge the appointment of the provisional liquidator (including as to its terms).

27042731.1.P5123.L16832

common ground that notwithstanding the appointment of the provisional liquidator, the board has some residuary powers, for example it can unquestionably instruct solicitors and counsel to oppose the current petition and, if a winding-up order is made, to appeal against that order."

24. The residual power therefore allows directors to: (i) challenge the appointment of the provisional liquidator in the name of the company; (ii) oppose the winding up petition or application in the name of the company and (iii) appeal the order in the name of the company. As explained by Richard Snowden QC (as he then was) in Closegate Hotel Development (Durham) Ltd v Mclean [2013] EWHC 3237 (Ch), [2014] Bus. L.R. 405 at [7]: "*the board of directors of a company retains a residuary power to instruct lawyers to challenge the appointment of the provisional liquidator, to oppose the petition and, if a winding up order is made, to appeal against the making of that order*"[2]. The residual power goes no further than that.

25. The position is exactly the same in various common law jurisdictions:

   25.1. In Australia: see Campbell v Michael Mount PB (1996) 14 ACLC 218 at 232[3] and Object Design Inc v Object Design Australia Pty Ltd (1997) 24 ACSR 678 at 680[4].

   25.2. In Hong Kong: see Summit Prestige Enterprises Ltd v Peak [2024] HKCFI 999 at [9]-[12][5].

   25.3. In Malaysia: see Sri Hartamas Development Sdn Bhd v MBF Finance Bhd [1991] LRC (Comm) 595 at 597[6].

26. The textbooks also speak with one voice on the issue: (i) Lightman & Moss on The Law of Administrators and Receivers of Companies (6th edition) at [2-055][7]; (ii) McPherson & Keay's Law of Company Liquidation (5th edition) at [6-020][8]; (iii)

---

[2] **[AB/Tab 2/page 7]**
[3] **[AB/Tab 3/page 37 and a slightly clearer (unofficial) version of the judgment at page 64]**
[4] **[AB/Tab 4/page 72]**
[5] **[AB/Tab 5/page 81-83]**
[6] **AB/Tab 6/ page 123]**
[7] **[AB/Tab 10/page 206-207]**
[8] **[AB/Tab 11/page 211]**

8

27042731.1.P5123.L16832

Palmer's Company Law at 15.399.2[9]; and (iv) Bowstead & Reynolds on Agency (23rd edition) at [10-018][10].

27.   The JPLs have only been able to identify one case in which directors sought to argue that the residual power was wider than the orthodox view. The argument was in analogous circumstances roundly rejected by the Court of Appeal of Singapore in Hin Leong Trading (Pte) Ltd (in liquidation) v Rajah & Tann Singapore LLP [2022] SGCA 28 at [58]-[59] and [62]-[64][11] (emphasis added):

> "[58] The Lims argue that Re Union does not limit the residual powers merely to actions challenging the validity of the appointment of an insolvency officer holder such as a judicial manager or liquidator. Rather, they submit that Re Union applies to "all proceedings which are such that it would not be appropriate for the liquidator to give instructions on behalf of the company". Obviously, they say, it would not be appropriate for the IJMs or the JMs, or indeed the liquidators of the Companies, to commence proceedings in their names to restrain R&T from acting.
>
> [59] We are not persuaded by this argument and reject it. The Lims' interpretation of Re Union as standing for such a broad proposition of law is untethered to authority; it is nothing more than a thinly veiled assertion that directors possess residual powers to effectively second-guess the decisions of judicial managers in the management of the company. This appears to be an argument from necessity: in that if directors do not have that power, no one can make a different decision and the judicial managers or liquidators would not do so since they made the decision in the first place. But necessity is not the touchstone. Re Union provides no such authority. Moreover, as R&T rightly points out, this would effectively outflank and upend the purpose of the legislative scheme for judicial management and liquidation, which is to vest authority over the company's affairs in the judicial managers and liquidators to the exclusion of the directors. To describe the boundaries of a residual power in such an amorphous way would unduly impinge upon the powers, and interfere with the ability, of the appointed insolvency professionals to carry out their duties. This cannot be the correct position in law.
>
> …
>
> [62] We summarise. As the cases establish, upon a court order placing a company under judicial management or in liquidation, with insolvency representatives being appointed concomitantly over the company, the company's directors retain residual powers in the limited situation where the company seeks to appeal against or otherwise challenge the very order appointing the judicial managers or liquidators, and must therefore act through its directors. This residual power is necessarily of a narrow scope, to be invoked only in very specific situations.

---

[9] **[AB/Tab 12/page 214]**
[10] **[AB/Tab 13/page 229-230]**
[11] **[AB/Tab 11/page 157-157 and page 160]**

[63] The present case does not come within the strictures of this exception. In contradistinction to, say, a challenge against the appointment of insolvency office holders, the Injunction Applications do not challenge the juridical basis of the IJMs', JMs' and liquidators' powers.

[64] Therefore, we agree with the Judge's conclusion that the Lims did not retain any residual power as directors to procure the commencement of the Injunction Applications in the Companies' names. They had no authority to do so. And they did not have sanction to do so. The Injunction Applications were correctly struck out."

### (D) SUBMISSIONS

(D.1) The residual power issue

28.    It is not entirely clear to the JPLs whether the directors' case is advanced on the basis of there being a legal principle that they can cause the Companies to oppose the US recognition proceedings; or whether they contend this arises from the construction of the Appointment Orders; or both.

29.    However, whatever way they put their case, there is no basis at all for the directors' contention. Starting with legal principle:

29.1.    The authorities are clear that the residual power is necessarily of a narrow scope. It is limited to: (i) challenging the appointment of the provisional liquidator in the name of the company; (ii) opposing the winding up petition or application in the name of the company and (iii) appealing the order in the name of the company.

29.2.    The residual power is (to paraphrase Heerey J in Object Design[12]) to achieve justice. A provisional liquidator is usually appointed at an *ex parte* hearing. The effect of the order is that "*the board of directors of a company becomes functus officio and its powers are assumed by the liquidator*": Union Accident Insurance. If the directors did not retain the power to challenge the appointment or the application for the appointment of liquidators, there would be nobody with standing to do so.

---

[12] "*…that long-established residual provision, the need for which is obvious as a matter of justice.*"**[AB/Tab 4/page [72]]**

10

29.3. There is no need for the residual power to extend any further and no support for that proposition in any of the authorities.

29.4. Further, a broadly defined residual power would allow the directors to "*effectively second-guess the decisions of [provisional liquidators] in the management of the company*" and "*unduly impinge upon the powers, and interfere with the ability, of the appointed insolvency professionals to carry out their duties*": <u>Hin Leong Trading</u> at [59][13]. This would be entirely contrary to the purpose of provisional liquidation and would cause chaos (or something like chaos) in every case.

29.5. If the directors were entitled to cause the company to oppose foreign recognition proceedings, where would the directors' residual power end? What principled reason would there be for preventing the directors causing the company to oppose the provisional liquidators' use of any other power given to them by the Court? What principled reason would there be for preventing the directors from causing the company to commence or defend litigation that the directors contend is being improperly managed by the provisional liquidators?

29.6. The correct approach as a matter of legal principle is that the "*residual power is necessarily of a narrow scope, to be invoked only in very specific situations*": <u>Hin Leong Trading</u> at [62][14]. That is clear from all the authorities.

30. As to the express terms of the Appointment Orders:

30.1. The words of the orders are to be objectively construed in their context and with regard to the object of the orders: <u>Pan Petroleum AJE v Yinka Folawiyo Petroleum</u> [2017] EWCA Civ 1525 at [41]-[42][15].

30.2. The penal notice makes clear that "*the directors, former directors, office holders and former office holders…are replaced by the joint provisional*

---

[13] **[AB/Tab 7/page 157]**
[14] **[AB/Tab 7/page 160]**
[15] **[AB/Tab 8/page 176]**

*liquidators and that the directors, former directors, office holders and former office holders are prohibited from taking any action in relation to the Company's affairs without prior consent of the joint provisional liquidators*": [**HB/Volume 1/Tab 12/page 113**].

30.3. Paragraph 3(c) makes clear that the JPLs have the power (without the need to seek the sanction of the Court) to "*seek the recognition (or its equivalent) of the appointment of Joint Provisional Liquidators in the United States, United Kingdom, Singapore, Hong Kong, Taiwan, Thailand and Cambodia or elsewhere…*": [**HB/Volume 1/Tab 12/page 115**].

30.4. In short, the order: (i) strips the directors of any relevant power and prohibits them "*from taking any action in relation to the Company's affairs without prior consent of the joint provisional liquidators*"; and (ii) expressly empowers the JPLs to seek recognition in the US.

30.5. On that basis, how can the Appointment Orders possibly be read as granting the directors, or recognising the existence of, a residual power to challenge the JPLs when exercising one of the powers they have expressly been given?

31. For these reasons, the Court is invited to declare that the directors of the Companies do not retain a residual power to cause the Companies themselves to oppose the JPLs' attempts to seek recognition of their appointment in another jurisdiction. If the directors wish to participate in the Chapter 15 proceedings, they can do so (to the extent permissible under US law). They just cannot do so in the name of the Companies.

(D.2) The variation issue

32. If they are wrong (as the JPLs respectfully submit they plainly are) about the scope of the residual power, the directors of the BS/Campbells Companies apply for a variation of the Appointment Orders to add the following words in paragraph 9:

> "*The powers of the directors of the Company to participate in foreign recognition proceedings commenced by the Joint Provisional Liquidators are not hereby excluded*".

12

27042731.1.P5123.L16832

33. The JPLs understand that, although the wording is not entirely clear, the purpose of this variation is to give the directors the power to <u>cause the Companies</u> to participate in (and presumably oppose) foreign recognition proceedings brought by the JPLs pursuant to their express power to do so.

34. The terms of the Appointment Orders are primarily a matter for the Attorney General (as applicant) and the Companies (as respondents). The JPLs, as provisional liquidators, are officers of the Court and will act in accordance with the terms of the order(s) appointing them: <u>Kensington v Montrow</u> BVIHCV2007/0041[16] per Justice Hariprashad-Charles and <u>Palmer's Company Law</u> at 15.289[17].

35. As officers of the Court, the JPLs consider it appropriate that they explain to the Court what they consider to be the consequences of the variation that is sought:

   35.1. The starting point is that the question of whether the JPLs should seek recognition of their appointment in the US (or any other jurisdiction) is a matter for the BVI Court.

   35.2. However, there is no application by the directors to vary paragraph 3(c) of the Appointment Orders. In other words, it is common ground that it is appropriate for the BVI Court to give the JPLs the express power (without the need to seek the sanction of the Court) to seek recognition in the US.

   35.3. Although the directors do not contend that the BVI Court (as the court appointing the JPLs and the court that exercises supervisory jurisdiction over the JPLs) should place any restriction on the JPLs seeking recognition overseas, they contend that the BVI Court should also give the directors the express power to be able to cause the Companies to oppose the recognition proceedings in the foreign court. This is illogical. It would involve the Court: (i) granting powers to the JPLs to seek recognition abroad; but at the same time (ii) granting the directors powers to cause the Companies to challenge (not in the BVI, but in a foreign jurisdiction)

---

[16] **[AB/Tab 9]**

[17] **[AB/Tab 12/page 216]**

13

the same recognition proceedings which the JPLs have expressly been given the power by the BVI Court to pursue.

35.4.   It would also be a recipe for chaos. The Court is invited to consider the practicalities facing the judge in the Chapter 15 proceedings. The judge would have to deal with: (i) submissions from the JPLs inviting the US Bankruptcy Court to recognise their appointment over the Companies; but also (ii) submissions from the Companies themselves inviting the US Bankruptcy Court to decline to recognise that the JPLs have been appointed over them. The BVI Court would, having already decided it is appropriate for the JPLs to be given powers to seek recognition, be exporting the same dispute to the US court.  That is in circumstances where the US court has already (correctly) identified that the standing question is *prima facie* one for the BVI Court: [**HB/Volume 1/Tab 4/page 46/para 68**] and [**HB/Volume 2/Tab 19/pages 1328, 1331 and 1377**].

35.5.   It is also not clear what the purpose is of the application to vary. The JPLs have made it clear that they do not oppose Mr Chen (or his attorney) or a director or indeed any other interested party (to the extent permissible under US law) appearing and objecting to the Chapter 15 proceedings. If the directors or shareholders wish to oppose the Chapter 15 proceedings, and the US court considers it appropriate to hear from them, they can do so.

35.6.   To repeat, the JPLs are officers of the Court. They have been given the power to apply for recognition if they consider it appropriate to do so. They considered it appropriate to apply for recognition in the US and made that application. The JPLs are concerned to ensure that the US recognition application (and any other application they may wish to make – for example in Hong Kong to preserve the US$198m held in the bank account of Prince Global Holdings Limited) is not interfered with by the directors of the same companies over which they are appointed and whose assets they are trying to preserve.

27042731.1.P5123.L16832

**(E) CONCLUSION**

36.    For the reasons set out above, the Court is invited to make an order on the terms of paragraph 1 of  the draft order at [**HB/Volume 1/Tab 2/page 13**], alternatively on such other terms as the Court considers appropriate to declare the true effect of the Appointment Orders (in particular as to the effect of paragraph 3(c)).

**MICHAEL GIBBON KC**
**Maitland Chambers**

**JON COLCLOUGH**
**South Square**

**OLIVER CLIFTON**
**Walkers BVI**

12 May 2026

27042731.1.P5123.L16832