# EXHIBIT 38

# May 4, 2026 Affidavit of James Kenneth Drury

Case Number :BVIHCOM2026/0027



**FILED**

**HIGH COURT**

**TERRITORY OF
THE VIRGIN ISLANDS**

1. Applicants
2. James Kenneth Drury
3. First Affidavit
4. Exhibit "JKD-1"
5. May 2026
6. May 2026

Submitted Date:04/05/2026 14:11

Filed Date:04/05/2026 14:11

Fees Paid:274.20

IN THE EASTERN CARIBBEAN SUPREME COURT
IN THE HIGH COURT OF JUSTICE
BRITISH VIRGIN ISLANDS
COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0001, CLAIM NO BVIHC (COM) 2026/0002, CLAIM NO BVIHC (COM) 2026/0003, CLAIM NO BVIHC (COM) 2026/0004, CLAIM NO BVIHC (COM) 2026/0005, CLAIM NO BVIHC (COM) 2026/0006, CLAIM NO BVIHC (COM) 2026/0007, CLAIM NO BVIHC (COM) 2026/0008, CLAIM NO BVIHC (COM) 2026/0009, CLAIM NO BVIHC (COM) 2026/0010, CLAIM NO BVIHC (COM) 2026/0011, CLAIM NO BVIHC (COM) 2026/0012, CLAIM NO BVIHC (COM) 2026/0013, CLAIM NO BVIHC (COM) 2026/0014, CLAIM NO BVIHC (COM) 2026/0015, CLAIM NO BVIHC (COM) 2026/0016, CLAIM NO BVIHC (COM) 2026/0017, CLAIM NO BVIHC (COM) 2026/0018, CLAIM NO BVIHC (COM) 2026/0019, CLAIM NO BVIHC (COM) 2026/0020, CLAIM NO BVIHC (COM) 2026/0021, CLAIM NO BVIHC (COM) 2026/0022, CLAIM NO BVIHC (COM) 2026/0023, CLAIM NO BVIHC (COM) 2026/0024, CLAIM NO BVIHC (COM) 2026/0025, CLAIM NO BVIHC (COM) 2026/0026, CLAIM NO BVIHC (COM) 2026/0027, CLAIM NO BVIHC (COM) 2026/0028, CLAIM NO BVIHC (COM) 2026/0029, CLAIM NO BVIHC (COM) 2026/0030

BETWEEN:

IN THE MATTER OF SURE TYCOON LIMITED AND TWENTY-NINE OTHER COMPANIES AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS

(1) MR. JAMES DRURY
(2) MR. PAUL PRETLOVE
(3) MR. DAVID STANDISH
(in their capacities as Joint Provisional Liquidators)

**Applicants**

THE ATTORNEY GENERAL

**Respondent**

and

1. AMBER HILL VENTURES LIMITED

26989640.1.P5123.L16832

1

2. AUSPICIOUS TYCOON LIMITED

3. BRIGHT TEAM GLOBAL LIMITED

4. DELIGHTFUL THRIVE LIMITED

5. EVEN SINCERITY LIMITED

6. FULAM INVESTMENT LIMITED

7. GIANT VICTORY HOLDINGS LIMITED

8. GOLDEN ASCEND INTERNATIONAL LIMITED

9. HARMONIC STATE LIMITED

10. JUMBO HIGH LIMITED

11. LATERAL BRIDGE GLOBAL LIMITED

12. LUMINOUS GLOW LIMITED

13. MIGHTY DIVINE LIMITED

14. NOBLE TITLE LIMITED

15. ORIENTALCHARM HOLDINGS INVESTMENT LIMITED

16. PACIFIC CHARM HOLDINGS INVESTMENT LIMITED

17. PRAISE MARBLE LIMITED

18. PRINCE GLOBAL GROUP LIMITED

19. PRINCE GLOBAL HOLDINGS LIMITED

20. RESPECTFUL STEED LIMITED

21. RETAIN PROSPER LIMITED

22. ROBUST HARMONY LIMITED

23. SIMPLY ADVANCED LIMITED

24. SOUTHERN HERITAGE LIMITED

25. STAR MERIT GLOBAL LIMITED

26. STARRY BLOOM LIMITED

27. SURE TYCOON LIMITED

28. SWORD RIVER LIMITED

29. TOWARDS SUNSHINE LIMITED

30. UNITED RICHES GLOBAL LIMITED SURE TYCOON LIMITED

**Respondents**

---

## FIRST AFFIDAVIT OF JAMES KENNETH DRURY
*(JPLs' Directions Application re Standing)*

---

2

26989640.1.P5123.L16832

I, James Kenneth Drury, of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, VG1110, Virgin Islands ("**Interpath**") do **MAKE OATH** and say as follows:

## INTRODUCTION

1.    I am a Managing Director of Interpath and I am one of the joint provisional liquidators of the Companies listed in Schedule 1 to this affidavit (each a "**Company**" and together the "**Companies**"). I was appointed as a joint provisional liquidator of the Companies together with David Standish and Paul Pretlove (both also Managing Directors of Interpath Ltd, 10 Fleet Place, London EC4M 7RB), by the Orders of the Honourable Justice Mithani (Ag.) dated 9 January 2026 (the "**Appointment Orders**") and by the continuation orders of Mithani J dated 29 January 2026 (together, the "**Joint Provisional Liquidators**" or "**JPLs**"). I am duly authorised by my fellow Joint Provisional Liquidators to make this Affidavit on behalf of us all in our capacity as Joint Provisional Liquidators of the Companies.

2.    Unless otherwise stated, all the facts and matters deposed to herein are within my own knowledge and I believe them to be true. Where such facts and matters are outside my personal knowledge, they are derived from the documents or sources identified herein below and are true to the best of my information and belief.

3.    The Appointment Orders have been made under 30 separate claim numbers (BVIHC(COM) 2026/0001- 2026/0030), each comprising distinct proceedings. The various claims are being heard together given interrelated facts, and accordingly, in order to assist the Honourable Court I have prepared a single affidavit, which will be filed and used in evidence in all 30 sets of proceedings.

4.    Produced to me at the time of swearing this Affidavit and marked Exhibit **[JKD-1]** is a bundle of documents referred to in this Affidavit. Unless otherwise stated or the context otherwise requires, page references in this Affidavit are to the page numbers of Exhibit **[JKD-1]**.

5.    Nothing in this Affidavit is intended to or constitutes a waiver of legal privilege which is expressly reserved.

3

26989640.1.P5123.L16832

6. I make this Affidavit in my capacity as provisional liquidator of the Companies in support of the Joint Provisional Liquidators' applications (the "**JPLs' Directions Application re Standing**") pursuant to paragraph 3. l. of the Appointment Orders, Section 171 and 186(5) of the Insolvency Act 2003 and/or the inherent jurisdiction of this Honourable Court for relief as set out in the JPLs' Directions Application re Standing.

7. The JPLs have been prompted to make the JPLs' Directions Application re Standing in response to attempts by the 25 BS/Campbells Companies and the Two KK Companies (as defined in Schedule 1 to this affidavit) to participate in and contest actions taken by the JPLs in the U.S. Court (as defined below) to obtain Chapter 15 relief (including as a platform for obtaining information to enable us to discharge our functions), and the failure of the 25 BS/Campbells Companies, despite requests, to provide evidence verifying the authority of Mr Cosimo Borrelli ("**Mr Borrelli**") to act on behalf of those companies. As set out in more detail below, the effect of the Appointment Orders insofar as it relates to residual powers of the directors of the Companies is a material issue in the JPLs' ability to exercise their powers and duties.

## THE ORIGINATING APPLICATIONS AND THE PROVISIONAL LIQUIDATIONS

8. On 5 January 2026, the BVI Attorney General (the "**AG**") applied to this Honourable Court for the appointment of Mr Standish, Mr Pretlove and me as joint liquidators over the Companies owned by or connected to Mr Chen Zhi on public interest and just and equitable grounds (the "**Originating Applications**"). The Originating Applications were heard by the Honourable Justice Wallbank KC (Ag.) on 16 and 17 April. At the close of the hearing, the Honourable Judge reserved judgment and directed the AG and the Companies to lodge further written submissions.

9. In broad terms, the bases for the Originating Applications is that the ultimate controller of the Prince Group, Mr Chen Zhi, is alleged to have been engaged in, and to have utilised various companies, in connection with fraudulent and criminal schemes, including cryptocurrency investment fraud, human trafficking, money laundering, wire fraud, bank fraud, and forced labour, in numerous jurisdictions. The AG's stated position is, amongst other things, that there is reason to be concerned that the Companies have been involved in or mixed up in criminal conduct, such as money laundering the proceeds of criminal activities, and a purpose of the intended liquidation processes is to ensure an orderly

4

process of dealing with the interests of stakeholders in the Companies under the supervision of this Honourable Court, which may include victims of the criminal activities allegedly perpetrated by Mr Chen Zhi.

10. According to the numerous press articles, on or around 7 January 2026 Mr Chen Zhi was extradited to the PRC from Cambodia in relation to allegations of "*of masterminding a vast cryptocurrency scam in which trafficked workers were lured to forced labour camps to defraud victims globally*" and had been incarcerated in China in relation to the same (an example article is at [1]-[5]).

11. On the same day as issuing the Originating Applications, the AG also issued urgent *ex parte* applications seeking the appointment of the JPLs as joint provisional liquidators over the Companies, pending the determination of the Originating Applications.

12. In her written submissions for the hearing of the applications for the appointments of the JPLs, the AG cited various reasons in support of the immediate appointment of the JPLs "*to take immediate control of the Companies*", including:

(a) "*There is a real and substantial risk that, absent the immediate appointment of provisional liquidators, assets held by or through the Companies, will be transferred, concealed, or dissipated, and documents will be destroyed or concealed.*"

(b) "*The appointment of provisional liquidators will immediately remove control from Chen and his associates and place the Companies under the supervision and control of officers of this Court, thereby protecting the integrity of any investigation and preserving assets for the benefit of the victims of Chen and the Prince Group's fraudulent and criminal activities.*"

13. The AG further submitted that it was essential that the JPLs be appointed immediately to:

"*(i) take full control of the Companies;*

*(ii) identify and preserve its assets that may represent proceeds of crime by preventing further movement, concealment, or dissipation of those assets;*

*(iii) maintain the value of the Companies' assets;*

*(iv) take control of its books and records;*

5

26989640.1.P5123.L16832

*(v) conduct thorough investigations into its past transactions; and*

*(vi) review banking records, asset transfers, and corporate dealings to identify and locate the potential money laundering activities."*

14. At the 9 January 2026 *ex parte* hearing, Justice Mithani (Ag.) found that "*on the material that's presented by the Attorney General the case for the appointment of provisional liquidators is overwhelming*". **[30]** Accordingly, the learned Judge granted the applications for the appointment of the JPLs in the terms proposed by the AG.

15. The return date for the Appointment Orders was listed for 29 January 2026. At that hearing, Campbells appeared on behalf of the 25 BS/Campbells Companies (those companies listed and defined in Schedule 1) and consented to the continuation of the Appointment Orders without modification. At the time of swearing this affidavit, neither the 25 BS/Campbells Companies nor the Two KK Companies (also as listed and defined in Schedule 1) have applied for any variation to the Appointment Orders.

16. Whilst Campbells only act for the 25 BS/Campbells Companies, Campbells previously held itself out as acting for Jumbo High Limited in addition to the 25 BS/Campbells Companies. As part of that it appeared at the hearing of 29 January 2026, asserting that it acted on behalf of Jumbo High Limited and provided an unsigned Statement of Affairs for Jumbo High Limited on 11 February 2026. Notwithstanding these steps being taken, Campbells now adopts the position that its purported actions on behalf of Jumbo High Limited were as a result of the company being included in a list of the list of companies they acted for pursuant to an "*administrative error*". The JPLs have queried this position (**[229]-[230]**, **[243]-[244]**).

17. The 25 BS/Campbells Companies and the Two KK Companies are contesting the Originating Applications, and the 25 BS/Campbells Companies have also applied for the discharge of the JPLs.

## THE APPOINTMENT ORDERS

18. The Appointment Orders are substantively identical across each of the Companies.

19. In each case, the Appointment Orders provide that the JPLs are appointed jointly and severally as provisional liquidators of the Company (paragraph 1), and that the JPLs have

6

the rights and powers of a liquidator to the extent necessary to maintain the value of the assets owned by the Company and to carry out the functions for which they are appointed (paragraph 2).

20.     In addition, each Appointment Order contains a penal notice which states, in material part, that the effect of the order "*is that the directors, former directors, office holders and former office holders of the* [Company] *are replaced by the* [JPLs] *and that the directors, former directors, office holders and former office holders are prohibited from taking any action in relation to the Company's affairs without prior consent of the* [JPLs]". The penal notice further warns that if "*the directors, former directors, office holders and former office holders of the Company fail to comply with the terms of this order, proceedings may be commenced against you for contempt of court and you may be liable to be imprisoned, fined or have your assets seized*".

21.     Paragraph 3 of the Appointment Orders list a number of specific powers which the JPLs may exercise without further sanction or intervention of this Honourable Court. Those include the power:

   (a)   "*to take possession of and preserve the books and records of the Company*" (paragraph 3. a.);

   (b)   "*to take such steps as may be necessary to protect the assets of the Company from removal or dissipation*" (paragraph 3. a.);

   (c)   "*to seek recognition (or its equivalent) of the Joint Provisional Liquidators' appointment in the United States, the United Kingdom, Singapore, Hong Kong, Taiwan, Thailand and Cambodia or elsewhere for the purposes of securing, realising and remitting assets to the control of the Joint Provisional Liquidators and for the purpose of obtaining access to and control of the records of the Company*" (paragraph 3. c.); and

   (d)   "*to take all necessary steps to obtain from any person documents or copy documents which belong to the Company or have been created or maintained on its behalf or which the Company has a right to obtain or inspect*" (paragraph 3. g.).

   ("**Discovery/Disclosure Powers**")

7

26989640.1.P5123.L16832

22.   Accordingly, this Honourable Court expressly contemplated that the JPLs would be empowered to obtain documents, books and records relating to the Companies for the purposes of protecting the assets of the Companies, and that for the purposes of doing so they were empowered to seek recognition in the United States ("**U.S.**"), the United Kingdom, Singapore, Hong Kong, Taiwan, Thailand and Cambodia or elsewhere without the need for further sanction of the this Honourable Court.

23.   In addition, paragraph 3. I. provides the JPLs have the power "*to apply to the Court for directions concerning any matter arising out of the exercise*" of the JPLs' powers.

24.   Paragraph 15 of the Appointment Orders provides that each Company "*is at liberty to apply to vary or discharge the order upon giving 72 hours' notice to the* [AG] *and the* [JPLs]".

## STEPS TAKEN BY THE JPLS TO INVESTIGATE THE AFFAIRS OF THE COMPANIES

25.   Following our appointment on 9 January 2026, the JPLs began taking immediate steps to investigate the assets of the Companies in order that they could be preserved, and to secure their books and records.

26.   The JPLs sent letters to each of the Companies' directors and clients of record. A total of 36 letters were sent. I exhibit a sample copy of one of the letters to a director and one to a client of record at **[41]-[74]** and **[75]-[94]**. Those letters informed those persons of the Appointment Orders, directed their attention to the penal notice contained therein, and sought the immediate delivery up of all books, records, electronic data and other information relating to the Companies, together with particulars of the Companies' assets, bank accounts, contracts and counterparties.

27.   The JPLs received no response to any of those letters. Rather, there has been correspondence with Campbells in relation to the 25 BS/Campbells Companies' and their affairs. However, the JPLs do not consider the information that has been provided to be adequate.

28.   In particular, on 11 February 2026 the JPLs received unsigned statements of affairs in respect of each of the 25 BS/Campbells Companies and Jumbo High Limited (the "**February SOAs**"), and a spreadsheet purportedly detailing the 25 BS/Campbells

26989640.1.P5123.L16832

Companies' bank accounts (the "**Bank Account Spreadsheet**") **[95]-[201]**. The February SOAs stated in relation to the vast majority of the 25 BS/Campbells Companies that company assets were "*pledged*" and that "*all liabilities of the comany [sic] are to shareholders; there are no external creditors*", with no external creditors and no specified quantum of secured debt.

29.   In response, by letter dated 13 February 2026, Walkers responded seeking, amongst other things: (a) the provision of signed copies of the February SOAs; (b) confirmation of who provided the information in the February SOAs; (c) details of the debts purported to be owed to the majority of the Companies' shareholders in circumstances in which the February SOAs contained no detail whatsoever; (d) details of the purported security granted in favour of the shareholders (including documentation), again in circumstances in which the February SOAs contained no detail **[202]-[206]**.

30.   On 24 February 2026, Campbells responded notifying Walkers that Mr Borrelli had been purportedly appointed as a director of "*the majority the Instructing Companies*"[1] and would be appointed as a director of "*the remaining companies within the next 24 hours*", with relevant appointment resolutions to be provided to the JPLs "*as soon as they have been collated*". The letter also asserted that "*Mr Borrelli is currently working on the joint liquidators' requests for information*" and that would "*provide answers to your queries and finalised statements of affairs as soon as possible*" **[207]**.

31.   On 6 March 2026, Walkers notified Campbells that the JPLs had become aware that assets of Starry Bloom Limited, being 5,007,027 Series C Preferred Shares held in Aqara International Limited ("**Aqara**"), had purportedly been compulsory redeemed in February 2026 (the "**Aqara Redemption**"). Walkers thereby made a series of urgent information requests about the Aqara Redemption **[220]-[221]**. Campbells provided a limited response on 11 March 2026 which acknowledged that they (and therefore their client) were aware of Starry Bloom's interest in Aqara.  The letter did not explain why that interest (whether the shares in Aqara and/or the Aqara Redemption proceeds) had not been disclosed to the JPLs in the February SOA or otherwise **[227]- [228]**.

32.   No further update was provided by Campbells in respect of any of these matters until their letter of 10 March 2026 in which they confirmed that "*we anticipate that Mr Borrelli will be*

---

[1] No indication was given by Campbells which companies these were.

*in a position to finalise and sign the Statements of Affairs during the course of next week"* **[225]**.

33.     Walkers responded on 19 March 2026, reiterating their requests of 13 February 2026 for signed Statements of Affairs and responses to their requests for information **[231]**-**[232]**.

34.     On 23 March 2026, Walkers wrote to Campbells to inform them that the JPLs had become aware of the existence of an account held by Prince Global Holdings Limited with Bank J. Safra Sarasin Ltd in Hong Kong (the **"Safra Account"**) which held an extremely substantial credit balance (of US$198m). No reference to that substantial asset had been made in the February SOAs or in the accompanying Bank Account Spreadsheet. The JPLs sought (a) an urgent explanation of the omissions; (b) confirmation no similar issues arise for any other 25 BS/Campbells Companies; (c) details of the identity of the persons who provided the information contained in the February SOAs; (d) an explanation of what steps Mr Borrelli would take to ensure information as to the assets and affairs of the 25 BS/Campbells Companies accurate; and (e) provision of signed statements of affairs and answers to the information requests in Walkers' 13 February 2026 letter **[241]**-**[242]**. No response to this letter has been received by Walkers.

35.     On 8 April 2026, Campbells provided what its covering email described as new unsigned "draft Statements of Affairs" (the **"April SOAs"**) **[262]**-**[362]**. These documents were unsworn, unaccompanied by any supporting documentation, provided no creditor information, and purported to give the asset and liability position as at 31 December 2025 (rather than the date of the commencement of the provisional liquidations). Somewhat oddly, the covering email requested that the JPLs provide comments on the April SOAs before they could be finalised.

36.     Despite the previous correspondence regarding the Safra Account balance (of just under $200m) the April SOA relating to Prince Global Holdings Limited contained no reference to that asset.  Equally, the April SOA relating to Starry Bloom Limited contained no reference the shares or redemption proceeds relating to the Aqara Redemption.

37.     Walkers sent a letter to Campbells on 9 April 2026 which, amongst other things, (a) requested an explanation of these material discrepancies; (b) made requests for information in relation to what the JPLs considered to be further material deficiencies in the April SOAs; and (c) noted that Campbells' request that the JPLs provide comments on

10

the April SOAs before they could be finalised undermined the purpose for which they are to be produced [363]-[366]. The letter reiterated the requirement for officers of a company to provide complete, accurate, verified and signed statements of affairs on which the JPLs themselves can rely. No explanation for these discrepancies or response to these further information requests have been received by the JPLs.

## MR BORRELLI'S INVOLVEMENT AND THE POAs

38. As the foregoing explains, the provisional liquidations have taken an unusual course in that the persons/entities who were on record as directors and officers of the companies have not engaged with the JPLs and, instead, a third party (Mr Borrelli) has asserted that he has been appointed as a director, and yet the information provided has been far from satisfactory. As I discuss below, in parallel, steps have been taken which seek to oppose or restrain the actions of the JPLs, and requests have been made for information from the JPLs. As JPLs we need to verify the basis and legitimacy of Mr Borrelli's appointment and his right to act on behalf of the Companies, given that we are engaging with him via his instructed solicitors, Campbells, regularly.

39. As noted above, on 24 February 2026 the JPLs received two letters from Campbells stating that Mr Borrelli had been appointed over 26 of the Companies (being the 25 BS/Campbells Companies and Jumbo High Limited) [207]-[211].

40. Consequently, the JPLs wrote to Campbells on 25 February 2026 [212]-[213] seeking:

(a) Confirmation as to which of the Companies Mr Borrelli has or will be appointed director;

(b) In each case, details as to how, when, and by whom Mr Borrelli has been appointed (or will be appointed) as a director of a Company, together with relevant documentation;

(c) Copies of the contractual terms and other relevant documents relating to Mr Borelli's appointments;

(d) An explanation in relation to each company detailing from whom Campbells has been taking instructions on behalf of each company to date, and in each case on what basis that individual was authorised to provide instructions; and

11

26989640.1.P5123.L16832

(e)   Confirmation as the sources from which a) Mr Borrelli's remuneration; and b) Campbells' fees and expenses, are being paid, and in both cases confirmation as to whether they are being funded from assets owned or held by any of the Companies.

41.   On 2 March 2026 Campbells filed an unsworn affirmation of Mr Borrelli [367]-[381] which stated that he had been appointed as director over 25 of the Companies (Jumbo High Limited no longer forming part of the group of companies over which he claims to have been appointed) – the 25 BS/Campbells Companies. In that affirmation Mr Borrelli stated that:

(a)   On or around 6 January 2026 Mr Chen Zhi was taken from Cambodia by the Chinese authorities and shortly prior to that, he gave "*a full power of attorney to certain individuals*" who are referred to as his attorneys-in-fact;

(b)   On 13 February 2026, the attorneys-in-fact appointed Mr Borrelli as "*Special Manager*" over unspecified entities, authorising him to "*deal with any urgent issues arising on a day-to-day basis*" with respect to the 25 BS/Campbells Companies; and

(c)   Pursuant to director and shareholder resolutions passed between 23 February and 27 February 2026, he was appointed as sole director of all of the 25 BS/Campbells Companies (save for certain companies he did not list where he is "*an additional director alongside Mr Chen*").

42.   In the light of the receipt of Mr Borrelli's unsworn affirmation and in the absence to any response to the JPLS' 25 February 2026 letter, the JPLs followed up on 5 March 2026 [217]-[219] requesting, (a) production of the documents said to evidence Mr Borrelli's appointment as a director of the 25 BS/Campbells Companies; and (b) disclosure of the identities of the individuals purporting to act under the power of attorney granted by Mr Chen Zhi on 29 December 2025 (only eight days before his arrest) (the "**Purported Attorneys**").

43.   Campbells responded to Walkers on 10 March 2026 [222]-[226] giving no further information beyond that contained in Mr Borrelli's affirmation. The letter refused to provide the identity of the Purported Attorneys on the basis that "*there is a genuine concern for*

*the safety of those individuals and their rights must be respected"*. The letter indicated that the Purported Attorneys may be amenable to a confidentiality club arrangement *"whereby sensitive information is shared only with counsel and the Court"*. Campbells also confirmed that *"we anticipate that Mr Borrelli will be in a position to finalise and sign the Statements of Affairs during the course of next week"*. As at the date of this Affidavit, some six weeks later, no signed Statements of Affairs have been provided.

44.    Walkers responded on 19 March 2026 **[233]**-**[235]** setting out the reasons why it was necessary to confirm the identity of the Purported Attorneys in order to confirm the validity of Mr Borrelli's appointment and for the JPLs to seek information on the steps taken by the Companies between Mr Chen Zhi's arrest and Mr Borrelli's appointment. Walkers' letter proposed that steps be taken to manage any perceived risk to the Purported Attorneys.

45.    Walkers also raised in that letter an issue with the resolutions exhibited to Mr Borrelli's affidavit in relation to his purported appointment to Even Sincerity Limited, specifically that the member resolutions were stated to be signed by Mr Chen Zhi's attorney on behalf of Mr Chen Zhi in his personal capacity as sole member of the company. However, Mr Chen Zhi is not a member of this company, and its sole member is Prince Group Holdings Limited. Walkers requested clarification of the position.

46.    Campbells responded on 25 March 2026 **[249]**-**[251]**, stating:

(a)    In respect of the identity of the Purported Attorneys that, contrary to the previous suggestion of a confidentiality club, the Purported Attorneys now refused to provide their identity and noting that their position is *"reinforced by the fact that it has become apparent that the JPLs are communicating with foreign governments in secret"*, which I understand to be the JPLs' cooperation with the Office of Foreign Assets Control (**"OFAC"**) of the U.S. in compliance with the terms of the Appointment Orders; and

(b)    In respect of Even Sincerity Limited, that the stated capacity in the resolution was incorrect and that the error would be corrected and the resolution re-executed and ratified prior to the hearing of the Originating Applications. As at the date of this Affidavit (and therefore also as at the date of the hearing at which Mr Borrelli

13

26989640.1.P5123.L16832

purported to act for Even Sincerity Limited) no corrected resolution has been provided to the JPLs.

47.  Walkers wrote to Campbells on 27 March 2026 **[252]-[254]** reiterating their requests for documents said to evidence Mr Borrelli's purported appointment as a director of the 25 BS/Campbells Companies; and disclosure of the identities of Purported Attorneys.

48.  As at the date of this Affidavit, despite repeated requests, the JPLs have not even been provided with redacted copies of the powers of attorney. This puts the JPLs in a very difficult position as it is unclear as to why even that documentation has been withheld.

49.  Around the same time, on 25 March 2026, the JPLs were served with a litigation hold notice from the U.S. law firm Boies Schiller Flexner LLP ("**BSF**") **[382]-[383]**, which acts for Mr Chen Zhi in the U.S. Forfeiture Proceedings (as defined below) and which, as set out in more detail below, has held itself out as acting on behalf of the 25 BS/Campbells Companies in the Chapter 15 Petition proceedings (as defined below). That letter, which was copied to Campbells, expressly contemplated the commencement of litigation against the JPLs "in *the event of an unlawful and potentially below-market sale of certain assets or interests of Mr. Chen*".

## PROCEEDINGS IN THE US

50.  Against this background, and having regard to (i) the absence of meaningful co-operation from the directors of the Companies; (ii) the obstruction encountered from Campbells, BSF and others purporting to act in the name of the Companies; (iii) the substantial US nexus of the Prince Group's alleged criminal conduct (including the pending DOJ criminal indictment of Mr Chen Zhi, the civil forfeiture proceedings in the Eastern District of New York concerning approximately 127,271 Bitcoin, and the alleged laundering of more than US$18 million of victim funds through a Brooklyn-based money laundering network) (the "**U.S. Forfeiture Proceedings**"); and (iv) the need to obtain records, communications and transactional documentation held by U.S. financial institutions and other U.S. counterparties in order to trace and preserve the Companies' assets, the JPLs concluded that recognition of the BVI proceedings under Chapter 15 of the U.S. Bankruptcy Code was required to enable them properly to discharge the duties imposed by the Appointment Orders.

26989640.1.P5123.L16832

51. If granted, recognition in the U.S. would result in the JPLs having powers to obtain information and documentation concerning the Companies and their assets in the U.S.,

52. Accordingly, on 8 April 2026, the JPLs with the assistance of their U.S. counsel, Sullivan & Cromwell, filed a "Verified Petition under Chapter 15 for Recognition of Foreign Main Proceedings and Related Relief" (the "**Chapter 15 Petition**" or the "**U.S. Proceedings**") (**[384]**-**[413]**) in the United States Bankruptcy Court, Southern District of New York (the "**U.S. Court**"), which, in material part, sought orders granting recognition of the JPLs' appointment and the BVI proceedings in which they were appointed in the United States. The Chapter 15 Petition has been listed to be heard on 9 June 2026.

53. On the same day, the JPLs also filed an "Emergency Motion for Entry of Orders Granting (I) Ex Parte Relief and (II) Provisional Relief, Pursuant to Section 1519 of the Bankruptcy Code" (the "**Provisional Relief Motion**") in the U.S. Proceedings (**[414]**-**[462]**). The Provisional Relief Motion sought the granting of provisional relief pending the determination of the Chapter 15 Petition whereby, in material part, a stay on actions in relation to the Companies in the United States would be implemented, and the JPLs would be granted certain discovery powers, including the right to issue subpoenas for the production of documents and testimony.

54. In support of those applications, Mr Pretlove provided a written declaration (**[463]**-**[489]**). In addition, Andrew Chissick of the law firm Walkers (the JPLs' BVI legal practitioners) also provided a written declaration addressing certain matters of BVI law (**[490]**-**[513]**).

55. The hearing of the Provisional Relief Motion was listed to be heard on 22 April 2026 on an *ex parte* basis.

56. U.S Court filings are publicly available on the U.S. Court docket and accordingly the Chapter 15 Petition and other related documents were readily available to third parties.

57. Eight days later, at the same time (15:50 EST on 16 April 2026):

    (a)    BSF filed an Objection to the Provisional Relief Motion purportedly on behalf of the 25 BS/Campbells Companies (**[514]**-**[543]**) (the "**BSF Objection**"); and

15

(b)     The U.S. office of Kobre & Kim ("**KK**") filed an Objection to the Provisional Relief Motion purportedly on behalf of the Two KK Companies (**[544]**-**[549]**) (the "**KK Objection**").

(together, the "**Objections**" and the "**Chapter 15 Objection Companies**").

58.    The Objections sought to prevent the granting of the Provisional Relief Motion and therefore prevent: (a) a stay on actions in relation to the Companies in the United States, and (b) the JPLs being granted certain discovery powers, including the right to issue subpoenas for the production of documents and testimony, pending the determination of the Chapter 15 Petition.

59.    Having received the Objections, and noting that they had been purportedly filed in the name of the Chapter 15 Objection Companies, the JPLs filed a "*Reply in Support of Corrected Emergency Motion for Entry of Orders granting (I) Ex Parte Relief and (II) Provisional Relief, Pursuant to Section 1519 of the Bankruptcy Case*" (the "**Provisional Relief Motion Reply**") (a copy of which is exhibited at **[550]**-**[577]**) and a Supplemental Declaration of Andrew Chissick ("**Chissick Supplemental Declaration**") (a copy of which is exhibited at **[578]**-**[583]**).

60.    In material part, the Provisional Relief Motion Reply and the Chissick Supplemental Declaration set out that:

(a)     The question of who is authorised to speak for the Chapter 15 Objection Companies in the U.S. Proceedings is a threshold issue of corporate authority, governed by BVI law (see Provisional Relief Motion Reply, paragraphs 3-4 (**[554]**);

(b)     The JPLs' position is that, as a matter of BVI law, the BVI Orders operate to divest the Debtors' directors of their powers (and in particular the power of management) and to confer those powers on the JPLs, such that no other person (including any director) has authority to represent or speak for the Chapter 15 Objection Companies in any tribunal within or outside the BVI, including the U.S. Court (see Provisional Relief Motion Reply, paragraph 5 (**[554]**-**[555]**) and Chissick Supplemental Declaration, paragraph 12 (**[581]**);

(c)     The JPLs accept that the directors retain certain limited residuary powers, namely to contest the Originating Applications in the BVI proceedings, to seek the

16

discharge or variation of the BVI Orders, and (if joint liquidators are appointed) to pursue an appeal before the BVI Court or the Eastern Caribbean Supreme Court, Court of Appeal (the "**Residuary Powers**") (see Chissick Supplemental Declaration, paragraph 13 (**[581]**)); and

(d)    The JPLs maintain that those Residuary Powers do not extend to challenging the JPLs' Chapter 15 Petition or Provisional Relief Motion in the United States in the name of the Chapter 15 Objection Companies, and accordingly that counsel purporting to act for the "Objecting Debtors" lacked corporate authority to file pleadings on the Chapter 15 Objection Companies' behalf, such that the Objections should be dismissed on that threshold ground alone (see Provisional Relief Motion Reply, paragraph 5 (**[554]**-**[555]**) and Chissick Supplemental Declaration, paragraph 12 (**[581]**).

61.    On 20 April 2026, the BVI office of KK wrote a letter to Walkers at 11:56pm (BVI time) two days before the hearing of the Provisional Relief Motion (**[584]**-**[585]**). That letter stated that KK's clients disputed the JPLs' position and requested that the JPLs would (a) no longer advance their argument concerning KK's clients' lack of standing; or (b) grant permission for the Two KK Companies to oppose the Chapter 15 Petition on the instruction of their directors. KK further stated that if they did not receive such confirmation by 10am the following day (i.e. within 10 hours), they would issue an urgent application to this Honourable Court for "*a declaration that the Standing Argument is wrong as a matter of BVI law and/or for orders to vary the terms of the BVI Orders accordingly*".

62.    On 21 April 2026, Walkers responded rejecting the Two KK Companies' position and explaining why the JPLs consider that the position adopted by the 25 BS/Campbells Companies and the Two KK Companies is incorrect (**[586]**-**[588]**).

63.    On 21 April 2026 at 14:52 EST, Sullivan & Cromwell wrote an email to BSF and KK noting that the JPLs considered that "[t]*he residual authority to challenge the appointment of the JPLs in the BVI is not equivalent to the ability to represent the companies in proceedings outside of the BVI*", however the JPLs were "*ready to address the merits*" and if BSF and KK appeared "*on behalf of a party-in-interest, whether Mr. Chen or a former director or officer in their individual capacity, and disclose for whom they are acting to the Court and the other parties-in-interest*", the JPLs would waive any objection over timing (**[589]**).

64. Later that day, Sullivan & Cromwell, BSF and KK exchanged a further series of open emails, the outcome of which was that it was agreed that the JPLs would not object to the U.S. Court hearing the Chapter 15 Objection Companies Objections to the Provisional Relief Motion on the merits, and that the question of the standing of the directors of the Chapter 15 Objection Companies to instruct those companies to appear at and oppose those proceedings would be deferred to the hearing of the Chapter 15 Petition.

65. For the avoidance of doubt, and as was made clear, the JPLs do not object to the Chapter 15 Petition being objected to or contested by a relevant stakeholder insofar as permitted as a matter of U.S. law, but consider that any steps purportedly made in the name of the Chapter 15 Objecting Companies to oppose the relief sought (including opposing steps that may be taken by the JPLs to obtain documents and information in order to fulfil our functions) is invalid, as such powers over the Chapter 15 Objecting Companies no longer sit with the directors.

**THE U.S. COURT'S POSITION**

66. On 22 April 2026, the Provisional Relief Motion was heard before the Honourable Chief Judge Martin Glenn of the U.S. Court's ("**Judge Glenn**"). Judge Glenn granted the Provisional Relief Motion (Judge Glenn's "Memorandum Opinion" dated 23 April 2026 is exhibited at **[590]-[625]**; and his Order dated 30 April 2026 is exhibited at **[626]-[631]**).

67. At the hearing of the Provisional Relief Motion, BSF and KK made clear that the directors of the Chapter 15 Objection Companies would wish to oppose actions by the JPLs in seeking information from third parties.

68. Judge Glenn stated that the dispute as to standing should be determined by this Honourable Court in the first instance, and in particular:

(a) "*I will listen to counsel about it but it seems to be an issue of BVI law that ought to be addressed in the first instance by the BVI Court*" (p.8 of the transcript of the 22 April 2026 hearing (the "**Transcript**"); **[639]**);

(b) "*I do think this raises issues in the BVI law and that Court, in the first instance, ought to decide what we hear today on provisional remedies. I don't see the*

18

26989640.1.P5123.L16832

*problem in giving -- in passing -- not deciding that issue in the first instance but rather decide the provisional relief on the merits*" (p.11 of the Transcript; **[642]**);

(c)   in his view "*it should be the BVI Court in the first instance that decides the issue of the standing of the various objectors*" (pp.57 of the Transcript; [688]).

69.   In response to a query from Judge Glenn as to whether the issue of standing is already before the BVI Court, KK stated that the matter is likely to be put before the BVI Court "*by application within the next few days*" (pp. 43-44 of the Transcript; **[674]-[675]**).

## CORRESPONDENCE FOLLOWING HEARING IN U.S. PROCEEDINGS

70.   On 27 April 2026, Walkers wrote to Campbells and KK referring to Judge Glenn's comments and indicated that the JPLs intended to issue an application in relation to these matters, and that any such application would be on notice to the other parties, and they would have the opportunity to makes submissions if they so wished **[692]-[693]**.

71.   On the following day, the 28 April 2026, Walkers wrote to the Registrar of this Honourable Court ("**Registrar**") stating, in material part, that there was a dispute in U.S. Proceedings as to standing of the Chapter 15 Objection Companies in those proceedings, and that the JPLs would shortly take steps in relation to such matters **[694]-[696]**.

72.   On 28 April 2026, KK wrote to Walkers, O'Neal Webster (the BVI legal representatives of the AG) and Campbells stating that they accepted that it was appropriate for the standing issue to be resolved, but that they did not agree to the JPLs seeking the directions of this Honourable Court (or any related issue as to the construction of the Appointment Orders). That letter made some proposals for the determination of the dispute as to standing. **[697]-[699]**.

73.   KK also proposed that the application be placed before Justice Mithani, or if he is unavailable, Justice Green. No explanation was provided as to why the application should not be placed before Honourable Justice Wallbank (Ag.).

74.   Later on 28 April 2026, Campbells wrote to the Registrar stating that any application to determine the question of the parties' corporate authority should be heard by a Commercial Court judge other than Mr Justice Wallbank KC (Ag.) **[700]-[701]**.

19

75. Shortly thereafter, KK also wrote to the Registrar stating that they had written to the other parties with a proposal for a way to address the corporate standing issue, and adopting the position set out in Campbells' letter that any application should be heard by a Commercial Court judge other than Mr Justice Wallbank KC (Ag.) **[702]-[703]**.

76. On 29 April 2026, Walkers wrote to the Registrar confirming the JPLs' intention to issue an application for directions; noting that neither the Campbells nor the KK letters to the Registrar provided a reason for that application to be allocated to a judge other than Mr Justice Wallbank KC (Ag.); and it was for this Honourable Court to allocate it appropriately. **[704]-[706]**.

77. Separately, Walkers responded to KK's letter to the parties dated 29 April 2026 confirming that the JPLs intended to proceed with their intended Application. **[707]-[708]**.

78. On 29 April 2026, O'Neal Webster separately wrote to the Registrar and the parties. In the letter to the Registrar O'Neal Webster indicated that the AG did not intend to add to the extensive correspondence before this Honourable Court, but was ready to assist the Court in any way necessary. In the letter to the parties, O'Neal Webster declined the proposals put forward by KK and Campbells **[709]-[710]**.

79. On 1 May 2026, the JPLs were given notice of (but not served with) an application made by one of the 25 BS/Campbells Companies (Bright Team Global Limited) in the BVI Court in respect of this standing issue. We also discovered that an application in the BVI Court had been filed on the Court litigation e-portal by the Two KK Companies, also addressing this standing issue.

## THE STANDING ISSUE

80. As JPLs our function is to protect the assets of the Companies and we have been seeking to gather information and take steps in order to achieve that purpose. Unfortunately, as is explained above, we have been met with resistance in doing so from the 25 BS/Campbells Companies / the Two KK Companies, purporting to act in the name of those companies, under the direction of Mr Borrelli.

81. On 25 March 2026 we received a letter from Campbells (**[245]-[247]**) stating *"the liquidation orders are provisional only. They are not final orders… The JPLs should not be conducting themselves as though the orders are final and the Companies' stakeholders*

20

*have been deprived of all rights and standing*" and thus took the position that our powers as JPLs were in some way limited because they viewed the Appointing Orders as provisional. The letter concluded by saying "*Any claim by the JPLs for reimbursement of their fees from the assets of the Companies (as to which the Companies' rights are fully reserved) - which, we note, they have declined to disclose notwithstanding the clear and specific request set out at paragraph 1 of our letter of 24 February 2026 - will be subject to scrutiny*" which appeared to be designed to add a chilling effect and threaten us with a challenge to our remuneration in respect of any action we took. Walkers wrote back on our behalf on 1 April 2026 saying "*Your letter makes reference to what you characterise as the "Provisional Nature" of the provisional liquidation orders (as distinct from the provisional liquidation itself)…This betrays confusion. The Court has made orders appointing joint provisional liquidators over each company…Our clients have functions that they are required to discharge pursuant to those orders. The suggestion that our clients' functions and duties are somehow curtailed because there is a subsisting challenge to the petitions and the appointment orders is simply not understood. Indeed, your emphasis upon the (so called) "Provisional Nature" of the provisional liquidation appointment orders (i.e. because the provisional liquidation orders are challenged) seems to contemplate different graduations of provisional liquidation. That is incoherent.*" **[256]**

82.   As JPLs we take the view that we have been granted the powers as set out in the Appointment Orders and that, accordingly, the directors of the Companies no longer have those powers. If it is the case that the 25 BS/Campbells Companies/ the Two KK Companies can challenge the exercise of the powers given by the Appointment Orders in the name of the Companies, then we are constrained in our ability to act. Accordingly, we seek the direction of the Court on this point, in order to bring clarity to the situation.

## WHY THE STANDING ISSUE AFFECTS THE JPLS' ABILITY TO CARRY OUT THEIR DUTIES

83.   It is the JPLs' position that the Appointment Orders operate to divest the Companies' directors of their powers over the Companies (and in particular the power of management) and to confer those powers on the JPLs. The effect of this is that no other person (including any director) has authority to represent or speak for the Companies (save for the Residuary Powers that remain with the directors) in any tribunal within or outside the BVI, including the U.S. Court. It appeared that counsel for the 25 BS/Campbells Companies

21

agreed with that proposition at the hearing of the Originating Application on 16 April 2026 when he said "*So the effect of Mr. Justice Mithani's order is to disentitle the directors in effect to do anything which interferes with the Provisional Liquidators' enjoyment of the powers that are conferred upon them.*" (page 183 of the transcript, **[893]**). However, the 25 BS/Campbells Companies have taken a different view in the US Proceedings, as set out above.

84.   I understand that, as a matter of BVI law, the Residuary Powers comprise the ability to contest the Originating Applications in the BVI proceedings, to seek the discharge or variation of the BVI Orders, and (if joint liquidators are appointed) to pursue an appeal.

85.   In our view as JPLs, if such additional powers resided with the directors of the Companies that would (1) be contrary to the purpose for which the JPLs have been appointed; (2) be inconsistent with the terms of the Appointment Orders; and (3) constitute an unworkable fetter on the exercise of the JPLs' powers, including the Disclosure/Discovery Powers.

86.   As noted above, the JPLs are not seeking to restrict the ability of bona fide stakeholders to contest the U.S. Proceedings. However, they do object to such steps being taken improperly in the name of the Companies, where such no such authority arises.

87.   If such powers did reside with the directors, the practical implications would be that for every step that the JPLs wished to take in exercise of their powers under the Appointment Orders, they would face the prospect of being challenged by the very Companies over which they have been appointed.

88.   By way of example, paragraph 3.a. of the Appointment Orders grants the JPLs the power (without further sanction of the Court) to gain entry to the companies' premises and to take possession of and preserve the books and records of the Companies. If the Residuary Powers vested with the directors were to operate in the way the Chapter 15 Objection Companies contend, the board of each of the Companies would be able to assert in the name of that Company that the JPLs may not enter the Company's premises. Equally they would be able in the name of that Company to oppose the JPLs taking possession of and preserve its books and records.

89.   Similarly, in relation to the power to seek recognition under paragraph 3.c. of the Appointment Orders, the Chapter 15 Objection Companies' interpretation of the

22

Appointment Orders would mean that the board of each of the Companies would be empowered to do the opposite of that which this Honourable Court has already decided the JPLs should be entitled to do.

90. This issue goes beyond the narrow parameters of the U.S. Proceedings as it has implications for the JPLs' further conduct of the provisional liquidations, including the seeking of recognition in other jurisdictions, which is needed in order to gather information and preserve assets in other jurisdictions.

91. The JPLs are in the process of issuing applications for recognition in Hong Kong and England and Wales.

92. In relation to Hong Kong, the JPLs have identified numerous bank accounts in the names of the Companies holding an aggregate amount of c. US$250m (including the $198million in the Safra Account). The JPLs have been informed by the banking providers that in order to facilitate control of those funds, they must obtain recognition. In addition, the JPLs do not know whether further funds are located in Hong Kong and consider that we need to be able to take steps in that jurisdiction.

93. In relation to the UK, one of the Companies, Noble Title Limited owns a valuable property in Fenchurch Street in London. The JPLs have been taking steps to try and secure and protect this property, along with the other assets of Noble Title Limited in England, and we propose seeking recognition in order to assist us with necessary steps in that jurisdiction. We have the same concerns as we do with Hong Kong, if the 25 BS/Campbells Companies and the Two KK Companies can challenge us obtaining recognition and relief in England, which this Honourable Court has already empowered us to do.

94. In addition to the above, it may be necessary for the JPLs to seek recognition in other jurisdictions.

95. If the residuary powers of the directors included the ability to direct the Companies to contest any proceedings for recognition and relief in other jurisdictions, that would have a significant impact on the JPLs' ability to freely carry out our duties, where doing so may disproportionately utilise our time, efforts and the Companies' assets. The challenges that we have faced to date have already added significantly to the costs and expenditure incurred in performing our role as JPLs.

23

96. Further, the JPLs are concerned as to the motives behind any attempt to stymie any recognition process. By way of example, as part of the JPLs' investigations, their Singapore legal representatives, Oon Bazul, wrote to Khoon Group Limited ("**Khoon Group**"), a Cayman incorporated HK listed company, which one of the Companies, Southern Heritage Limited, is a majority shareholder. On 4 March 2026, Campbells sent a response to Oon Bazul on behalf of Khoon Group. **[214–216]** It is currently unclear why Khoon Group has opted to instructed Campbells who are also acting for the 25 BS/Campbells Companies, and how those separate parties' interests are aligned. Nevertheless, it is notable that in that response, Khoon Group expressly reserved its right to oppose any application for recognition of the JPLs in foreign jurisdictions. No explanation is provided for that position, and the JPLs are concerned that this demonstrates that the respondent parties (or those allied with them) would seek to frustrate recognition steps for the primary purpose of frustrating the JPLs' activities, rather than for any bona fide reasons.

97. In addition, the JPLs fear that the prospect of the Companies' directors being deemed to have powers to act generally in the name of the Companies would cause considerable confusion and uncertainty with foreign courts and third parties. For example, if we tell third parties that they are required to comply with our requests for information or to be let into a property, but the relevant Company's directors are able to tell the third parties – in the name of the Company – not to comply with us, then third parties will be in a difficult and confusing position.

## MR COSIMO BORRELLI

98. The JPLs consider that in determining questions as to corporate authority, there is an important further issue in relation to the 25 BS/Campbells Companies on which we seek the direction of this Honourable Court.

99. As set out at paragraph 41 above, it is Mr Borrelli's position that he is the validly appointed director of all of the 25 BS/Campbells Companies and he is authorised to give instructions on their behalf. However, beyond Mr Borrelli's (unsworn) affidavit and assertions in correspondence, no documentation has been adduced into evidence or provided to this Honourable Court or the JPLs to ascertain the validity of Mr Borrelli's purported appointment.

100.   Further, despite the JPLs requesting such documents in their letters of 25 February, 5 March and 19 March 2026, the 25 BS/Campbells Companies have refused to provide verifying documentation.

101.   Given this Honourable Court is being invited to determine questions of corporate authority, and given that some residual powers do of course remain with the directors of the Companies, such as the power to challenge the Originating Application in the BVI Court, the JPLs consider that it is incumbent on the 25 BS/Campbells Companies to provide evidence pertaining to Mr Borrelli's purported appointments.

102.   Should the 25 BS/Campbells Companies fail to do so to this Honourable Court's satisfaction, it is the JPLs' position that the Court cannot certify that Mr Borrelli has requisite authority over the 25 BS/Campbells Companies.

103.   Given the question of Mr Borrelli's authority derives exclusively from the validity or otherwise of the purported powers of attorney, the JPLs consider that any determination by this Honourable Court of the matters addressed in the paragraphs under the heading "Dispute as to standing" above, should also include relief to facilitate the resolution of any questions as to the validity of the purported appointment of Mr Borrelli as director of the 25 BS/Campbells Companies.

**URGENCY**

104.   The JPLs' Directions Application re Standing is accompanied by a certificate of urgency.

105.   Given that the Chapter 15 Petition has been listed to be heard by the U.S. Court on 9 June 2026, and noting that Judge Glenn had indicated that he considered issues of corporate authority to be matters for this Honourable Court to determine in the first instance, it is respectfully requested that the hearing of the JPLs' Directions Application re Standing be listed so as to allow this Honourable Court sufficient opportunity to provide its decision on these matters before that hearing.

106.   To that end, there is a consensus between the parties that it would be desirable that the JPLs' Directions Application re Standing be determined on or before 22 May 2026. However, the JPLs defer to the Court as to issues of listing.

25

26989640.1.P5123.L16832

107. As stated at paragraph 79 above, on 1 May 2026, the 25 BS/Campbells Companies and the Two KK Companies have each issued substantively similar application notices, seeking this Honourable Court's determination as to questions of standing. The JPLs shall seek the listing of this application alongside those two applications.

**SWORN BY JAMES KENNETH DRURY**  )
At  )
  )
on the  4th  day of  May  2026  )
  )

Before me:

~~Commissioner of Oaths~~  Notary Public

JAMES KENNETH DRURY

Shana S. Simmonds-Lewis
Notary Public
British Virgin Islands





26

26989640.1.P5123.L16832

## Schedule 1
## (the "Companies")

| No. | Entity Name | Purported BVI Legal representatives | Purported US Legal representatives |
|---|---|---|---|
| 1. | Amber Hill Ventures Limited | Kobre & Kim | Kobre & Kim |
| 2. | Lateral Bridge Global Limited | Kobre & Kim | Kobre & Kim |
| 1. and 2. together, the "**Two KK Companies**" | | | |
| 3. | Auspicious Tycoon Limited | Campbells | Boies Schiller Flexner |
| 4. | Bright Team Global Limited | Campbells | Boies Schiller Flexner |
| 5. | Delightful Thrive Limited | Campbells | Boies Schiller Flexner |
| 6. | Even Sincerity Limited | Campbells | Boies Schiller Flexner |
| 7. | Fulam Investment Limited | Campbells | Boies Schiller Flexner |
| 8. | Giant Victory Holdings Limited | Campbells | Boies Schiller Flexner |
| 9. | Golden Ascend International Limited | Campbells | Boies Schiller Flexner |
| 10. | Harmonic State Limited | Campbells | Boies Schiller Flexner |
| 11. | Luminous Glow Limited | Campbells | Boies Schiller Flexner |
| 12. | Mighty Divine Limited | Campbells | Boies Schiller Flexner |
| 13. | Noble Title Limited | Campbells | Boies Schiller Flexner |
| 14. | Oriental Charm Holdings Investment Limited | Campbells | Boies Schiller Flexner |
| 15. | Pacific Charm Holdings Investment Limited | Campbells | Boies Schiller Flexner |
| 16. | Praise Marble Limited | Campbells | Boies Schiller Flexner |

27

26989640.1.P5123.L16832

| 17. | Prince Global Group Limited | Campbells | Boies Schiller Flexner |
|---|---|---|---|
| 18. | Prince Global Holdings Limited | Campbells | Boies Schiller Flexner |
| 19. | Respectful Steed Limited | Campbells | Boies Schiller Flexner |
| 20. | Retain Prosper Limited | Campbells | Boies Schiller Flexner |
| 21. | Simply Advanced Limited | Campbells | Boies Schiller Flexner |
| 22. | Southern Heritage Limited | Campbells | Boies Schiller Flexner |
| 23. | Star Merit Global Limited | Campbells | Boies Schiller Flexner |
| 24. | Starry Bloom Limited | Campbells | Boies Schiller Flexner |
| 25. | Sure Tycoon Limited | Campbells | Boies Schiller Flexner |
| 26. | Towards Sunshine Limited | Campbells | Boies Schiller Flexner |
| 27. | United Riches Global Limited | Campbells | Boies Schiller Flexner |
| 3 to 27 together, the "**25 BS/Campbells Companies**" | | | |
| 28. | Jumbo High Limited | None currently identified | None currently identified |
| 29. | Robust Harmony Limited | None currently identified | None currently identified |
| 30. | Sword River Limited | None currently identified | None currently identified |

28

26989640.1.P5123.L16832

IN THE EASTERN CARIBBEAN SUPREME COURT
IN THE HIGH COURT OF JUSTICE
BRITISH VIRGIN ISLANDS
COMMERCIAL DIVISION
CLAIM NO. BVIHC (COM) 2026/0019

BETWEEN:

IN THE MATTER OF PRINCE GLOBAL HOLDINGS
LIMITED (In [Provisional] Liquidation)

AND IN THE MATTER OF THE INSOLVENCY ACT,
2003 OF THE LAWS OF THE VIRGIN ISLANDS

(1) MR. JAMES DRURY

(2) MR. PAUL PRETLOVE

(3) MR. DAVID STANDISH

(in their capacities as Joint Provisional

Liquidators)

Applicants

THE ATTORNEY GENERAL

Respondent

and

1. AMBER HILL VENTURES LIMITED
2. AUSPICIOUS TYCOON LIMITED
3. BRIGHT TEAM GLOBAL LIMITED
4. DELIGHTFUL THRIVE LIMITED
5. EVEN SINCERITY LIMITED
6. FULAM INVESTMENT LIMITED
7. GIANT VICTORY HOLDINGS LIMITED
8. GOLDEN ASCEND INTERNATIONAL
   LIMITED
9. HARMONIC STATE LIMITED
10. JUMBO HIGH LIMITED
11. LATERAL BRIDGE GLOBAL LIMITED
12. LUMINOUS GLOW LIMITED
13. MIGHTY DIVINE LIMITED
14. NOBLE TITLE LIMITED
15. ORIENTALCHARM HOLDINGS
    INVESTMENT LIMITED
16. PACIFIC CHARM HOLDINGS INVESTMENT
    LIMITED
17. PRAISE MARBLE LIMITED

29

18. **PRINCE GLOBAL GROUP LIMITED**
19. **PRINCE GLOBAL HOLDINGS LIMITED**
20. **RESPECTFUL STEED LIMITED**
21. **RETAIN PROSPER LIMITED**
22. **ROBUST HARMONY LIMITED**
23. **SIMPLY ADVANCED LIMITED**
24. **SOUTHERN HERITAGE LIMITED**
25. **STAR MERIT GLOBAL LIMITED**
26. **STARRY BLOOM LIMITED**
27. **SURE TYCOON LIMITED**
28. **SWORD RIVER LIMITED**
29. **TOWARDS SUNSHINE LIMITED**
30. **UNITED RICHES GLOBAL LIMITED**

**Respondents**

---

## FIRST AFFIDAVIT OF JAMES KENNETH DRURY

*(JPLs' Directions Application re Standing)*

---

**Walkers**
171 Main Street
PO Box 92
Road Town
Tortola
British Virgin Islands

Tel: +1 (284) 494 2204

Fax: 284 494 6683

**Ref: IT/AJ/L16832**

**Legal practitioners for the Applicant**

30

26989640.1.P5123.L16832