Matthew L. Schwartz
Peter M. Skinner
Gordon Z. Novod
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards
New York, New York 10001
Telephone: (212) 446-2300

Laura Femino (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
401 E Las Olas Boulevard
Fort Lauderdale, Florida 33301
Telephone: (954) 377-0716

Dan G. Boyle
**BOIES SCHILLER FLEXNER LLP**
2029 Century Park East
Los Angeles, California 90067
Telephone: (213) 995-5732

*Counsel to Cosimo Borrelli in his
capacity as the sole director of each
of the Borrelli Debtors*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>PRINCE GLOBAL HOLDINGS LIMITED *et al.*,[1]<br><br>Debtors in Foreign Proceedings. | Re ECF Nos. 1, 2<br><br>Hearing Date and Time: June 9, 2026 at 10:00 AM ET<br><br>Objection Deadline: May 21, 2026 at 4:00 PM ET<br><br>Chapter 15<br>Case No. 26-10769 (MG)<br>(Jointly Administered) |

**COSIMO BORRELLI'S CORRECTED OBJECTION TO
VERIFIED PETITION UNDER CHAPTER 15 FOR RECOGNITION
OF FOREIGN MAIN PROCEEDINGS AND RELATED RELIEF**

---

[1]   The Debtors in these Chapter 15 Cases are incorporated in the British Virgin Islands and maintain their registered address at Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands, VG1110. A complete list of the Debtors and their company numbers may be found at ECF No. 2-1. Notwithstanding the case caption, Cosimo Borrelli, in his capacity as the sole director of each of the Borrelli Debtors, disputes that each of these entities is the subject of a "foreign proceeding" within the meaning of 11 U.S.C. § 101(23).

i

**<u>TABLE OF CONTENTS</u>**

**TABLE OF AUTHORITIES**..................................................................................................**iii**

**PRELIMINARY STATEMENT** .......................................................................................... **1**

**FACTUAL BACKGROUND** .............................................................................................. **6**

    A.    Criminal and Civil Forfeiture Actions Are Filed in EDNY, and Related Sanctions
        Are Imposed........................................................................................................... 6

    B.    The BVI AG Relies on the Flawed EDNY Filings to Secure Ex Parte Orders in
        the BVI for Limited JPL Appointments................................................................. 8

    C.    Mr. Borrelli is Appointed Director of the Borrelli Debtors .......................................11

    D.    The JPLs Make Ex Parte Submissions and Stonewall the Director .......................... 12

    E.    The Borrelli Debtors Oppose the JPLs in the BVI ................................................... 14

    F.    The JPL's Seek Greater Powers in Chapter 15 ........................................................ 15

    G.    Hong Kong Court Restrains Substantially All of the Debtors' Assets....................... 19

    H.    The BVI Court Rules that the Director may Direct the Companies to Oppose the
        JPLs in the BVI but not in these Ch. 15 Cases ........................................................ 19

**OBJECTION** .................................................................................................................... **19**

    I.    Mr. Borrelli Has Standing to Object in his Capacity as a Director............................ 19

    II.    The JPLs Have Failed to Establish Debtor Eligibility Under § 109(a) ..................... 21

    III.    The JPLs fail to meet their debtor-by-debtor evidentiary burden.............................. 23

    IV.    The BVI Proceedings are not "foreign proceedings" ................................................ 24

    V.    The Court should Deny Recognition on Public Policy Grounds.............................. 28

    VI.    Even if the Court Grants Recognition, it should Deny all Discretionary Relief ....... 30

    A.    Realization of Debtor Property Violates the Purpose and Scope of the BVI
        Orders and Risks Irreversible Damage to the Debtors .............................................. 31

    B.    The JPLs Have Been Wasteful with Debtor Assets .................................................. 32

    C.    The Court should not grant the Other Requested Relief............................................ 34

**CONCLUSION** ................................................................................................................ **35**

## TABLE OF AUTHORITIES

**Cases**

*Collins v. Oilsands Quest, Inc.*,
484 B.R. 593 (S.D.N.Y. 2012) ................................................................................. 29

*In re Amatex Corp.*,
755 F.2d 1034 (3d Cir. 1985) ................................................................................. 20

*In re ARD Fin., S.A.*,
No. --- B.R. ----, 2026 WL 817458 (Bankr. S.D.N.Y. Mar. 25, 2026) (Glenn, J.) .............. 28, 29

*In re Ascentra Holdings, Inc.*,
657 B.R. 339 (Bankr. S.D.N.Y. 2023) ...................................................................... 20

*In re Ashapura Minechem Ltd.*,
480 B.R. 129 (S.D.N.Y. 2012) ................................................................................. 24

*In re Atlas Shipping A/S*
404 B.R. 726 (Bankr. S.D.N.Y. 2009) ...................................................................... 34

*In re Barnet*,
737 F.3d 238 (2d Cir. 2013) ................................................................................... 21

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*,
389 B.R. 325 (S.D.N.Y. 2008) ................................................................................. 23

*In re British Am. Ins. Co. Ltd.*,
425 B.R. 884 (Bankr. S.D. Fla. 2010) ...................................................................... 26

*In re D.L.I.C., Inc.*,
120 B.R. 348 (Bankr. S.D.N.Y. 1990) ...................................................................... 22

*In re ENNIA Caribe Holding N.V.*,
594 B.R. 631 (Bankr. S.D.N.Y. 2018) ...................................................................... 24

*In re Fairfield Sentry Ltd.*,
2011 WL 4357421 (S.D.N.Y. Sept. 16, 2011), ......................................................... 29

*In re Fleming Int'l Reinsurance Ltd.*,
No. 25-12353 (JPM) (Bankr. S.D.N.Y. Oct. 26, 2025) ............................................... 26

*In re Glob. Ocean Carriers Ltd.*,
251 B.R. 31 (Bankr. D. Del. 2000) .......................................................................... 23

*In re Gold & Honey, Ltd.*,
410 B.R. 357 (Bankr. E.D.N.Y. 2009) ...................................................................... 29

*In re Head*,
223 B.R. 648 (Bankr. W.D.N.Y. 1998) ..................................................................... 21

*In re Int'l Banking Corp. B.S.C.*,
439 B.R. 614 (Bankr. S.D.N.Y. 2010) ...................................................................... 34

*In re InterCement Brasil S.A.*,
668 B.R. 802 (Bankr. S.D.N.Y. 2025) ...................................................................... 24

*In re Metcalfe & Mansfield Alt. Invs.*,
    421 B.R. 685 (Bankr. S.D.N.Y. 2010)..................................................................................29

*In re Northeast Ins. Co. Ltd.*,
    No. 25-12275 (MEW) (Bankr. S.D.N.Y. Oct. 15, 2025) ...................................................26

*In re Ocean Rig UDW Inc.*,
    570 B.R. 687 (Bankr. S.D.N.Y. 2017)..............................................................................26

*In re Olinda Star Ltd.*,
    614 B.R. 28 (Bankr. S.D.N.Y. 2020)................................................................................26

*In re Serviços de Petróleo Constellation S.A.*,
    600 B.R. 237 (Bankr. S.D.N.Y. 2019).................................................................21, 23, 24

*In re Silicon Valley Bank (Cayman Islands Branch)*,
    658 B.R. 75 (Bankr. S.D.N.Y. 2024)................................................................................21

*In re Siu-Fung Ceramics Holdings Ltd.*,
    2026 WL 382424 (Bankr. S.D. Tex. Feb. 10, 2026) ........................................................23

*In re Suntech Power Holdings Co.*,
    520 B.R. 399 (Bankr. S.D.N.Y. 2014)..............................................................................26

*In re Toft*,
    453 B.R. 186 (Bankr. S.D.N.Y. 2011)..............................................................................34

*In re Zhejiang Topoint Photovoltaic Co., Ltd.*,
    2015 WL 2260647 (Bankr. D.N.J. May 12, 2015)............................................................20

*See In re King*,
    392 B.R. 62 (Bankr. S.D.N.Y. 2008)................................................................................22

*Webb Mtn, LLC v. Exec. Realty P'ship, L.P. (In re Webb Mtn, LLC)*,
    414 B.R. 308 (Bankr. E.D. Tenn. 2009)...........................................................................35

**Statutes**

11 U.S.C. § 101 .......................................................................................................24, 26, 27

11 U.S.C. § 109 ................................................................................................................5, 21

11 U.S.C. § 1501 ...................................................................................................................34

11 U.S.C. § 1502 ...................................................................................................................23

11 U.S.C. § 1506 .........................................................................................................5, 29, 30

11 U.S.C. § 1507 .............................................................................................................30, 32

11 U.S.C. § 1515 ...................................................................................................................24

11 U.S.C. § 1517 .............................................................................................................23, 28

11 U.S.C. § 1520 ............................................................................................................passim

11 U.S.C. § 1521 .......................................................................................................29, 30, 34

11 U.S.C. § 1522 .............................................................................................................20, 34

**Other Authorities**

House Judiciary Committee, H.R. Rep. No. 109-31 (2005) ................................................... 23, 27

Insolvency Act of 2003, § 162 (B.V.I.*)* ............................................................................... 8, 19, 26

UNCITRAL *Model Law on Cross-Border Insolvency with Guide to Enactment and
Interpretation*, 42 (Jan. 2014) ........................................................................................ 24, 25

Cosimo Borrelli (the "**Director**"), in his capacity as the sole director of twenty-five of the Debtors,[2] by and through his undersigned counsel, hereby submits this objection (the "**Objection**") to the (1) *Chapter 15 Petition for Recognition of Foreign Proceeding* [ECF No. 1] and (2) *Verified Petition under Chapter 15 for Recognition of Foreign Main Proceedings and Related Relief* [ECF No. 2] (the "**Verified Petition**" or "**VP**")[3] filed in the above-captioned chapter 15 cases (the "**Ch. 15 Cases**") by Paul Pretlove, David Standish, and James Drury as the putative foreign representatives (the "**Joint Provisional Liquidators**" or "**JPLs**") of the ongoing provisional proceedings (the "**BVI Proceedings**") pending in the High Court of Justice, Commercial Division, of the British Virgin Islands (the "**BVI Court**") with respect to each of Prince Global Holdings Limited and 29 of its affiliates (together, the "**Debtors**").

In support, the Director relies upon the *Second Declaration of Peter M. Skinner in Support of Cosimo Borrelli's Objection to Verified Petition under Chapter 15 for Recognition of Foreign Main Proceedings and Related Relief* (the "**Second Skinner Decl.**"), the *Declaration of Riz Mokal* (the "**Mokal Decl.**"), and the *Affidavit of Cosimo Borrelli* (the "**Borrelli Decl.**"), included as Exhibits 1 and 2 to the Second Skinner Decl., and respectfully represents as follows:

## PRELIMINARY STATEMENT

In a few short months, the JPLs have taken unchallenged, *ex parte* allegations, turned them into "ring-holding investigations" in the BVI, and are now trying to leverage those unproven

---

[2]    Mr. Borrelli is the sole director of each of Prince Global Holdings Limited, Auspicious Tycoon Limited, Bright Team Global Limited, Delightful Thrive Limited, Even Sincerity Limited, Fulam Investment Limited, Giant Victory Holdings Limited, Golden Ascend International Limited, Harmonic State Limited, Luminous Glow Limited, Mighty Divine Limited, Noble Title Limited, Oriental Charm Holdings Investment Limited, Pacific Charm Holdings Investment Limited, Praise Marble Limited, Prince Global Group Limited, Respectful Steed Limited, Retain Prosper Limited, Simply Advanced Limited, Southern Heritage Limited, Star Merit Global Limited, Starry Bloom Limited, Sure Tycoon Limited, Towards Sunshine Limited, and United Riches Global Limited (together, the "**Borrelli Debtors**").

[3]    Capitalized terms used but not defined herein have the meanings ascribed to them in the Verified Petition.

1

allegations to obtain unfettered powers to seize and sell assets here in the United States. If the

Court grants those powers, the JPLs will use this Court's imprimatur to get to the rest of the world.

1519 Hr'g Tr. at 50:9–11 (MR. DIETRICH: "We intend to use the assistance of this Court to the

full extent we can to pursue assets outside of the United States.").

Justice Wallbank of the British Virgin Islands High Court of Justice aptly summarized the

danger of letting these unusual "public interest" liquidations, based on untested allegations with

zero underlying evidence, continue unchecked:

> It's obviously all very well to say that there has been an indictment put forward . . . and other steps taken by OFAC and the U.K., for example. . . . Do you, however, bring to this [c]ourt any of the evidence which informed those results?
> . . . .
> Do these [c]ompanies that are now being put up against the wall to be finished off, does the evidence stack up for finishing off those Companies? And just because somebody said in an overseas [c]ourt that there's a man called Chen out there who has been successfully indicted, then is that enough to finish these Companies off? Can't I see some of the underlying evidence, please?

Apr. 16 BVI Hr'g Tr. at 35:2–12; 38:9–16.

> I mean, it is so very easy for one little special agent in the FBI, or whatever his name might be, to write something up and embellish it, because he wants to succeed on a case or for whatever reason and then he verifies a complaint and even on the pain of perjury. And then everybody says, well, you know he is a special agent in the FBI, isn't he?
> . . . .
> And then you get the snowball effect and before you know it, the entire nations and jurisdictions operate on the fanciful fictitious mind of one little man in some field office in some semi-populated state and with no kind of check and balance of whether what he says is actually true.

Apr. 17 BVI Hr'g Tr. at 56:7–23.

Justice Wallbank's concerns are particularly well-placed because many of those underlying

allegations have already been proven false. For example, the indictment of that "man called Chen"

includes an image of a "phone farm"—"automated call centers used to facilitate cryptocurrency

investment fraud and other cybercrimes"—that Chen allegedly "maintained":

2



EDNY Indictment (defined below) ¶ 33; *see also* EDNY Forfeiture Complaint (defined below)

¶ 25. But that image actually comes from a March 2023 Chinese-language news article discussing

the use of cell phones to artificially inflate viewership of e-commerce live-streams:



EDNY Forfeiture Action, ECF No. 317 at 8.

The EDNY Forfeiture Complaint and Indictment also cite photographs in support of the

allegation that Chen used violence as part of his scheme. EDNY Forfeiture Complaint ¶ 31.

3



EDNY Indictment ¶ 40 ("CHEN possessed images illustrating Prince Group's violent methods, including those below").

But this photograph comes from an April 2020 article entitled "A man got his testicles stuck between plastic chairs during the lockdown. The situation got out of his control and he had to call an ambulance," which recounts the stories of several men injured from sitting naked on chairs with slats, and begins "Be careful, men! Never sit naked on a plastic chair!":



4

EDNY Forfeiture Action ECF No. 317 at 9. This is not what Chapter 15 is, or should be. Unproven—and provably, comically false—allegations should not be turned into a Court-approved mandate for a global campaign. The Court should decline recognition.

As a threshold matter, neither the Debtors nor the BVI Proceedings are eligible for U.S. bankruptcy relief. The JPLs cannot satisfy section 109(a) of the Bankruptcy Code because the Debtors have no U.S. property, as the JPLs have now admitted. They fail their evidentiary burden by presenting the Debtors as a corporate group, without establishing each element of recognition on an individual, debtor-by-debtor basis. And the BVI Proceedings are not eligible for recognition because, as the BVI Attorney General continues to emphasize, they have nothing to do with insolvency or winding up.

In addition to these obvious defects, recognition should be denied on public policy grounds under section 1506. By leveraging relief in one jurisdiction to amplify their powers in another, the JPLs have amassed powers they could not have obtained in one jurisdiction alone. The BVI does not nationalize private companies on the basis of unsubstantiated allegations. The United States does not force companies into chapter 11 when their alleged affiliates are indicted. Neither jurisdiction permits a state to unilaterally shut down a company that is not insolvent, or to liquidate a company in search of evidence justifying that liquidation.

As the BVI Court put it: "[W]here does it stop? I mean, is the whole edifice [teetering] on kinds of cheap journalism and cheap field office simplistic illustrative examples? I mean, it's not good enough in a court of law." Apr. 17 BVI Hr'g Tr. at 60:4–8. Justice Wallbank is exactly right. It's not good enough, and it should stop here: this Court should deny recognition while the BVI Court considers whether these provisional appointments were ever warranted to begin with.

5

If the Court does recognize the BVI Proceedings despite these plain failings, it should limit relief to that set forth in section 1520 of the Bankruptcy Code—chiefly, a territorial imposition of sections 362 and 363. The JPLs should not be permitted to administer, sell, or otherwise dissipate U.S. assets, nor to execute transactions outside the ordinary course without specific authorization. They should, in other words, be held to the limits that they themselves imposed in the BVI Court, and which were summarized by Justice Wallbank:

> THE BVI COURT: [W]e have to think what is it that the JPLs are really trying to do in New York. All they are doing is they are trying to get these BVI proceedings recognised so that their appointment as JPLs is also recognised so that they can take steps in New York to investigate the assets and dealings of the Company, and so that they can get in those assets and secure them. *That is all that they want to do.*

May 14 BVI Hr'g Tr. at 192:18–193:1 (emphasis added). If the Court recognizes the BVI Proceedings, that is all they should be permitted to do without obtaining further relief in the BVI.

## FACTUAL BACKGROUND

**A.**    **Criminal and Civil Forfeiture Actions Are Filed in EDNY, and Related Sanctions Are Imposed**

1.    On October 14, 2025, the United States Attorney's Office for the Eastern District of New York unsealed an indictment charging Chen Zhi with one count of wire fraud conspiracy and one count of money laundering conspiracy. *See Indictment* ¶¶ 54–57, *United States v. Chen Zhi*, No. 25-cr-312, ECF No. 1 (E.D.N.Y. Oct. 8, 2025) [Second Skinner Decl. Ex. 3] (the "**EDNY Indictment**"). On the same day, the EDNY commenced a civil action in the Eastern District of New York (the "**EDNY Forfeiture Action**" and, together with the EDNY criminal proceedings commenced by the Indictment, the "**EDNY Proceedings**") seeking forfeiture of approximately 127,271 Bitcoin (the "**Cryptocurrency**").[4] *See Verified Complaint In Rem* ¶¶ 5–12, *United States*

---

[4]    BSF also represents Mr. Chen in the EDNY Forfeiture Action. Mr. Chen, who is currently detained in China, has not appeared in the criminal action.

*v. Approximately 127,271 Bitcoin ("BTC") Previously Stored at the Virtual Currency Addresses Listed in Attachment A*, No. 25-cv-5745, ECF No. 1 (E.D.N.Y. Oct. 14, 2025) [Second Skinner Decl. Ex. 4] (the "**EDNY Forfeiture Complaint**"). The EDNY Forfeiture Complaint alleges that Mr. Chen is the founder and operator of the Prince Group, a Cambodian corporate conglomerate comprising dozens of business entities that operate in over thirty countries. *Id.* ¶¶ 15–16.

2.      The EDNY Indictment contains a number of allegations that are demonstrably wrong and cause for healthy skepticism of the way the government conducted its investigation and brought its case. *See Memorandum of Law In Support of Claimant Chen Zhi's Motion for a More Definite Statement*, Case No. 25-cv-5745, ECF No. 317 [Second Skinner Decl. Ex. 5] at 7–10. The EDNY Forfeiture Complaint is similarly flawed and, among other things, fails to account for when or how the government obtained the Cryptocurrency. *See Memorandum of Law in Support of Claimant Chen Zhi's Motion to Dismiss*, Case No. 25-cv-5745, ECF No. 316 [Second Skinner Decl. Ex. 6] at 5; *Memorandum of Law in Support of Claimant Chen Zhi's Motion for a More Definite Statement*, Case No. 25-cv-5745, ECF No. 317 [Second Skinner Decl. Ex. 5] at 5–7. The BVI Court has been troubled by these shortcomings. *See infra* ¶ 16; *Transcript of April 17, 2026 Open Court Proceedings* [Second Skinner Decl. Ex. 7] (the "**Apr. 17 BVI Hr'g Tr.**") at 6:9–13 (THE [BVI] COURT: "I am very concerned, very concerned to note that apparently once again . . . US attorneys seem to think they need to embellish the record.").

3.      Also on October 14, 2025, the United States and the United Kingdom imposed sanctions on Mr. Chen and certain Prince Group affiliates. In the United States, the Department of the Treasury's Office of Foreign Assets Control ("**OFAC**") designated 146 sanctions targets, including Mr. Chen and 128 corporate entities as sanctions targets alleged to be affiliated with or controlled by him or other Prince Group principals. *See Off. of Foreign Assets Control, Specially*

7

*Designated Nationals List Update, Transnational Criminal Organizations Designations; Issuance of TCO-Related General License* [Second Skinner Decl. Ex. 8]. Twenty-eight of the Debtors—and all of the Borrelli Debtors—are among the companies designated by OFAC. *See id.*; VP Ex. A (List of Debtors) [ECF No. 2-1]. The United Kingdom imposed separate sanctions under its Global Human Rights Sanctions regime on Mr. Chen and certain entities affiliated with the Prince Group, only one of which is a Borrelli Debtor—Prince Global Group Limited. *See Off. of Fin. Sanctions Implementation, HM Treasury, Financial Sanctions Notice, Global Human Rights* [Second Skinner Decl. Ex. 9]. The U.K. sanctions regime applies a lower statutory standard of "reasonable grounds to suspect" involvement in serious human rights violations. *See id.*

### B.    The BVI AG Relies on the Flawed EDNY Filings to Secure Ex Parte Orders in the BVI for Limited JPL Appointments

4.    On January 5, 2026, the Attorney General of the British Virgin Islands (the "**BVI AG**") filed in the BVI Court *ex parte* originating applications as well as ordinary applications under Part VI of the British Virgin Islands Insolvency Act of 2003 seeking the appointment of provisional liquidators over each of the Debtors on public interest grounds and on just and equitable grounds. *See Jan. 2, 2026 Ordinary Application (Ex-Parte) (Company)* [Second Skinner Decl. Ex. 10] (the "**BVI Ord. App.**"); *Jan. 2, 2026 Originating Application (Company) Per Rule 14* [Second Skinner Decl. Ex. 11] (the "**BVI Orig. App.**" and, together with the BVI Ord. App., the "**BVI Ex Parte App.**").[5] Because the BVI AG did not seek appointment on insolvency grounds, there were no allegations of insolvency and in fact no inquiry into financial distress whatsoever. *See generally* BVI Ex Parte App.; Mokal Decl. ¶ 38.1. Nor has the BVI AG or any other party since contended in the BVI Proceedings that any of the Debtors is insolvent.

---

[5]    The BVI AG filed one BVI Ord. App. and one BVI Orig. App. for each of the 25 Debtors. The filings were identical in substance. As such, only one copy of each is exhibited to the Second Skinner Decl.

5.      The BVI AG sought appointment of the provisional liquidators to: (1) facilitate cross-border cooperation with enforcement authorities, regulators, and insolvency practitioners; (2) ensure a proper investigation and recovery of the Borrelli Debtors' assets; and (3) properly investigate how the Borrelli Debtors were used in the fraudulent scheme. BVI Orig. App. ¶ 39. In the BVI AG's view, "[t]he information and evidence gathered by the [JPLs] may provide crucial support for law enforcement authorities, both in the BVI and internationally," and "could materially assist in tracing assets and preserving evidence relevant to that and other actions." BVI Ord. App. ¶ 30(c). Those purposes have not changed since the JPLs were appointed. *See April 14, 2026 Skeleton Argument of the Applicant* [Second Skinner Decl. Ex. 12] (the "**Apr. 14, 2026 BVI AG Skel.**") ¶ 12.3; *May 15, 2026 Closing Summary of Applicant's Submission* [Second Skinner Decl. Ex. 13] (the "**BVI AG Closing Submissions**") ¶ 37.

6.      The BVI Ex Parte App. were premised on allegations set forth in the EDNY Indictment and the EDNY Forfeiture Complaint, the imposition of foreign sanctions by U.S. and U.K. authorities, and news reports concerning actions in Singapore, Hong Kong, Taiwan, and Thailand. *See, e.g.*, BVI Orig. App. ¶¶ 4–23, 31. Many of those allegations were premised on secondhand reports and statements—hearsay that the BVI AG has not supported with evidence.[6]

7.      On January 9, 2026 the BVI Court held an *ex parte* hearing to consider the BVI Ex Parte App. *See generally Transcript of January 9, 2026 Chambers Proceedings* [Second Skinner

---

[6]    *See, e.g.*, BVI Orig. App. ¶¶ 7–21; BVI Ord. App. ¶¶ 6, 8, 11–13, 15–16; *see also Transcript of April 16, 2026 Open Court Proceedings* [Second Skinner Decl. Ex. 14] (the "**Apr. 16 BVI Hr'g Tr.**") at 10:13–16 (COUNSEL TO BVI AG: "[J]ust make it absolutely clear, for purposes of this hearing we are not seeking to, and we would not be in a position, to prove the allegations."); Apr. 17 BVI Hr'g Tr. at 47:24–48:5; BVI AG Closing Submissions ¶¶ 19–20 (arguing that evidence is not needed to appoint JPLs over companies that "may" have been involved in wrongdoing); *April 13, 2026 Skeleton Argument on Behalf of the Campbells Respondents* [Second Skinner Decl. Ex. 15] ¶¶ 11, 12.2, 15.3.3, 15.4, 27, 28.3 (debunking specific claims set forth in the Ex Parte Applications); BVI AG Closing Submissions ¶ 16 (BVI AG acknowledging errors in the initial affidavits supporting the BVI Ex Parte App.); Apr. 17 BVI Hr'g Tr. at 59:23–60:1 (THE [BVI] COURT: "[Y]es, I am very attuned to the fact, particularly now you've point out there is embellishment, at least, or a kind of fictitious illustration going on here on the fact of things.").

Decl. Ex. 16] (the "**Jan. 9 Ex Parte Hr'g Tr.**"). The BVI AG and the JPLs were present. *See id.* at 3:4–4:16 (noting appearances of counsel for the BVI AG and of Paul Pretlove); *Transcript of May 13, 2026 Videotaped Deposition of Paul Pretlove* [Second Skinner Decl. Ex. 17] (the "**Pretlove Dep. Tr.**") at 55:16–57:18. The BVI Court then issued thirty separate orders appointing the JPLs on a provisional basis to preserve the status quo pending a future full hearing. *See Order on Application for Joint Provisional Liquidators* [Second Skinner Decl. Ex. 18] (the "**BVI Appt. Orders**"). The BVI Appt. Orders were later extended, still on a provisional basis, in extension orders dated January 29, 2026. *See Order for the Continuation of the Order Appointing Joint Provisional Liquidators* [Second Skinner Decl. Ex. 19] (the "**BVI Extension Orders**" and, collectively, with the BVI Appt. Orders, the "**BVI Orders**").[7]

8.    The JPLs were provisionally appointed for the purpose of identifying and preserving assets in order to maintain the status quo. Pretlove Dep. Tr. at 221:23–222:2 (MR. PRETLOVE: "[T]he purpose of my appointment . . . is to identify, secure, and maintain assets of the liquidation status."); *see, e.g.*, BVI Appt. Orders at ¶ 2 (granting the JPLs the rights and powers of a liquidator "to the extent necessary to maintain the value of the assets owned by the Company"); ¶ 3(b) (authorizing the JPLs to "take such steps as may be necessary to protect . . . assets from removal or dissipation"). This is consistent with the role of provisional liquidators, as opposed to full liquidators. *See* Mokal Decl. ¶ 40.2 ("The powers conferred on the provisional liquidators by section 171(1) [of the BVI Insolvency Act] are limited to what is necessary to maintain the value of the assets owned or managed by the company or to carry out the functions for which the provisional liquidators were appointed.").

---

[7]    The BVI Court entered one BVI Appt. Order and one BVI Extension Order for each of the 25 Borrelli Debtors. The filings were identical other than the name of the company. As such, only one copy of each is exhibited to the Second Skinner Decl.

9.      Other powers granted in the BVI Orders confirm that their provisional relief is investigatory in nature and has nothing to do with insolvency or reorganization. *See, e.g.*, BVI Appt. Orders ¶ 3(a) (power to take possession of and preserve books and records); ¶ 3(i) (power to investigate, so far as necessary to protect and, if necessary, retrieve the assets and records of the Debtors); ¶ 3(n) (power to share information with the BVI AG); *see also* Mokal Decl. ¶ 64 (explaining that the powers set forth in the BVI Appt. Orders "confirm that the JPLs' appointment is interim, provisional, and conservatory" as "expressions of what the BVI Court has sanctioned: the investigation, securing, and preservation of the Debtors' assets pending the determination of the pending liquidation applications."). They also reveal the *investigatory* nature of the appointment by requiring the JPLs to implement a detailed protocol to "facilitate effective cooperation" with the BVI AG "in relation to potential and ongoing regulatory or criminal investigations and prosecution" and contemplate transmitting information to "law enforcement and regulatory authorities . . . in other jurisdictions." BVI Appt. Orders ¶¶ 3(n)–(o).

### C.      Mr. Borrelli is Appointed Director of the Borrelli Debtors

10.     Between February 23, 2026 and February 27, 2026, Mr. Borrelli was appointed as the sole director of the Borrelli Debtors. *See Affidavit of Cosimo Borrelli* [Second Skinner Decl. Ex. 20] (the "**BVI Borrelli Aff.**") ¶ 14. For the debtors controlled by Mr. Chen, who was in detained in China at the time, the appointments were made by attorneys-in-fact whom Mr. Chen had granted full powers of attorney prior to his detention. *Id.* ¶¶ 12–14. In his capacity as Director, Mr. Borrelli has opposed the liquidation applications brought by the BVI AG. *Id.* ¶ 4. Mr. Borrelli's opposition to the BVI liquidation applications falls within the residual powers the BVI Court recognized as remaining with directors notwithstanding the BVI Orders. *Transcript of May 14,*

11

*2026 Open Court Proceedings* [Second Skinner Decl. Ex. 21] (the "**May 14 BVI Hr'g Tr.**") at 209:17–210:8.

### D.    The JPLs Make Ex Parte Submissions and Stonewall the Director

11.    Since their appointment, the JPLs have engaged in repeated *ex parte* contacts with the BVI Court. They have filed a report under seal that was not made available to the Borrelli Debtors despite multiple requests in both the BVI and the United States. *May 15, 2026 Letter from Walkers on behalf of the JPLs to the Registrar of the BVI Court* [Second Skinner Decl. Ex. 22] at 1 ¶ 2. Their counsel has also provided *ex parte* summaries to the BVI Court of these chapter 15 proceedings. *See Apr. 28, 2026 Letter from Walkers on behalf of the JPLs to the Registrar of the BVI Court* [Second Skinner Decl. Ex. 23] at ¶¶ 3–5 (disclosing that the JPLs had filed a sealed interim report with the BVI Court providing a "high-level summary" of matters arising from the April 22, 2026 hearing on the JPLs' requested 1519 relief). Campbells, in its capacity as counsel to the Borrelli Debtors, has been unable to review or verify the contents of these communications. *See Apr. 28, 2026 Letter from Campbells on behalf of the Borrelli Debtors to the Registrar of the BVI Court* [Second Skinner Decl. Ex. 24].

12.    The JPLs have similarly refused to provide notice or opportunity to object as to any proposed dealings with the Debtors' assets—notwithstanding that they are not yet generally authorized to sell assets as a matter of BVI law. For example, on March 11, 2026, Campbells wrote to Walkers to express concern that the JPLs were in advanced negotiations to sell an interest in Allied Cigar Fund L.P., but that no information had been provided to Mr. Borrelli concerning the proposed transaction. *Mar. 11, 2026 Letter from Campbells on behalf of Director to Walkers* [Second Skinner Decl. Ex. 25]. Walkers declined to engage. *See Mar. 17, 2026 Letter from Walkers on behalf of the JPLs to Campbells* [Second Skinner Decl. Ex. 26].

13.      The BVI AG, her counsel, and the JPLs have rejected attempts at compromise and cost-saving measures proposed by the Borrelli Debtors. On February 21, 2026, Campbells wrote to the BVI AG's legal counsel to propose a collaborative route forward in which the Director would provide any necessary information to the BVI AG and coordinate actions to preserve the value of the various companies and their assets. *See Feb. 21, 2026 Letter from Campbells on behalf of the Borrelli Debtors to O'Neal Webster* [Second Skinner Decl. Ex. 27] at 2; *see also Mar. 1, 2026 Notice of Opposition* [Second Skinner Decl. Ex. 28] (the "**Borrelli Debtors' Notices of Opposition**") ¶ 8. Mr. Borrelli explained that his mandate as independent director shared substantially the same objective as that of the JPLs: maintaining the status quo and preserving the assets of the companies pending resolution of the underlying issues. BVI Borrelli Aff. ¶ 21. The BVI AG rejected Mr. Borrelli's proposal. *See Feb. 27, 2026 Letter from O'Neal Webster on behalf of the BVI AG to Campbells* [Second Skinner Decl. Ex. 29].

14.      The JPLs have also refused to disclose information about the fees they and their counsel have accrued. *See Feb. 24, 2026 Letter from Campbells on behalf of the Borrelli Debtors to Interpath* [Second Skinner Decl. Ex. 30] (requesting the total professional fees charged); *Mar. 19, 2026 Letter from Walkers on behalf of the JPLs to Campbells* [Second Skinner Decl. Ex. 31] (declining to provide such information); *Transcript of May 14, 2026 Videotaped Deposition of Andrew Barrington Chissick* [Second Skinner Decl. Ex. 34] (the "**Chissick Dep. Tr.**") at 56:2–7 (acknowledging the Debtors have not seen Walkers' bills). Under the BVI Appt. Orders, the Borrelli Debtors are in principle responsible for paying the costs of the JPLs and their counsel (subject to BVI Court approval). *See* BVI Appt. Orders ¶ 8; Pretlove Dep. Tr. at 90:4–25. The JPLs' U.S. counsel has followed suit, asserting that the fees of both the JPLs and their U.S. counsel are privileged. *See Responses and Objections to Objecting Debtors' First Set of Requests for*

13

*Production* [Second Skinner Decl. Ex. 32] at 28–29, Request Nos. 23–24; Pretlove Dep. Tr. at 88:21–89:5; 109:9–110:7. That position leaves the Borrelli Debtors—and this Court—without visibility into the fees incurred by fiduciaries who claim authority to charge those expenses to Debtor assets.

### E.    The Borrelli Debtors Oppose the JPLs in the BVI

15.    On March 1, 2026, Campbells, on behalf of each of the 25 Borrelli Debtors, filed in the BVI Court Notices of Opposition to the liquidation applications, *see* Borrelli Debtors' Notices of Opposition, along with applications to discharge the January 9 Appointment, *Mar. 1, 2026 Ordinary Application (Company) Per Rule 14* [Second Skinner Decl. Ex. 33] (the "**Borrelli Debtors' Discharge Applications**").[8] The Notices of Opposition and Applications to Discharge contend that the Ex Parte Applications disclose no proper basis for winding-up, are not grounded in insolvency or creditor protection, and constitute an abuse of process designed to leverage foreign criminal and regulatory proceedings. *See, e.g.*, *id.* ¶¶ 1–2.

16.    At a hearing held on April 16 and 17, 2026 on the Borrelli Debtors' Notices of Opposition and the Borrelli Debtors' Discharge Applications, the BVI Court echoed many of the concerns raised in the Borrelli Debtors' submissions—beginning with the questionable premises and nonexistent evidence filed in support of the BVI Ex Parte Applications. Apr. 16 BVI Hr'g Tr. at 35:2–12; 38:9–16. The Court went on to express skepticism that the BVI AG's view of the Debtors as the "worst of the worst" could somehow overcome these evidentiary failings to justify the extraordinary relief sought:

> What we have here is just sort of a press release and so almost journalistic quality statements that this is what happened, but we are not shown any of the underlying

---

[8]    The Borrelli Debtors filed one Notice of Opposition and one Discharge Application for each of the 25 Borrelli Debtors. Because the filings were identical in substance, only one copy of each is exhibited to the Second Skinner Decl.

material . . . . [W]e are a court of law. We have to be careful because we are dealing with fundamental rights. . . . You basically can't make bricks without straw. Well, I am not seeing any straw here.

*See* Apr. 17 BVI Hr'g Tr. at 57:17–20; 58:20–22; 58:25–2.

17.     The BVI AG argued in response that the Court should not be troubled by the dearth of evidence because the companies were not being "killed off"; no actual liquidation activities were taking place or were bound to take place. *See, e.g.*, Apr. 16 BVI Hr'g Tr. at 109:18–110:7; 111:5–112:10; Apr. 17 BVI Hr'g Tr. at 213:17–23. The provisional appointment, counsel stressed, was investigatory in nature; the JPLs were charged only with status quo preservation; and the companies could easily be restored to their pre-JPL appointment status if investigations came up empty. *See, e.g.*, *id.* The BVI Court's decision remains pending. *See* Apr. 17 BVI Hr'g Tr. at 218:11–20; 229:25–230:6.

### F.     The JPL's Seek Greater Powers in Chapter 15

18.     The JPLs next retained Sullivan & Cromwell, LLP ("**S&C**") as U.S. counsel to the JPLs in order to seek chapter 15 relief. *See* VP ¶ 10; Pretlove Dep. Tr. at 10:6–16 (confirming that S&C represents the JPLs in the Ch. 15 Cases); Chissick Dep. Tr. at 54:10–22 (same). On March 31, 2026, the JPLs sent a wire transfer of $25,000 of Interpath's money to a client trust fund account at S&C. *March 31, 2026 Invoice for Advance Payment Retainer from Sullivan & Cromwell LLP to Paul Pretlove* [Second Skinner Decl. Ex. 35] (the "**S&C Invoice**"); Pretlove Dep. Tr. at 10:23–11:3. The JPLs contend that, although the $25,000 came from Interpath and was sent to the JPLs' client trust account with a law firm that does not represent the Debtors, that transfer created an undocumented U.S. property interest for 30 different Debtor companies. VP ¶¶ 16–17. On that basis for debtor eligibility, the JPLs on April 8, 2026 commenced these Ch. 15 Cases seeking recognition of the BVI Proceedings as foreign main proceedings.

15

19.     After commencement of the chapter 15 proceedings, there was a marked shift in how the JPLs described the BVI Proceedings. For the first time in the Verified Petition and supporting Chissick Declaration, the JPLs characterize the BVI Proceedings as insolvency proceedings commenced "for the purposes of liquidation," notwithstanding that BVI AG declined to move on those grounds. *Compare* Verified Petition ¶¶ 10, 20, 22, 32 (suggesting purpose of BVI Proceedings were for insolvency and liquidation), *with* BVI Orig. App. ¶ 39 *and* BVI Ord. App. ¶ 30(c) (identifying purpose of appointment to the exclusion of insolvency or liquidation).

20.     Along with their Verified Petition, the JPLs filed an *Emergency Motion for Entry of Orders Granting (I) Ex Parte Relief and (II) Provisional Relief, Pursuant to Section 1519 of the Bankruptcy Code* [ECF No. 7][9] (as re-filed at ECF 27, the "**1519 Motion**" or "**1519 Mot.**"). The Motion sought sweeping emergency relief, seemingly on an *ex parte* basis, based on alleged authority set forth in the BVI Orders. 1519 Mot. ¶¶ 14–17; Chissick Decl. ¶¶ 23–25. That relief included an ask for unmonitored authority to realize (i.e., sell) the Debtors' assets, on the grounds that the JPLs had already been granted "broad authority . . . to . . . realize assets" by the BVI Court. Chissick Decl. ¶ 23; *see also* 1519 Mot. ¶ 16. Those foreign law grounds were set forth in a foreign law expert declaration, submitted by Mr. Chissick of Walkers law firm in the BVI, the JPLs' BVI counsel in the BVI Proceedings.

21.     As Mr. Mokal explains, the JPLs have not, in fact, been granted "broad authority . . . to sell assets." Mokal Decl. ¶ 60 (explaining that the BVI Appt. Orders "d[o] not authorise the kind of open-ended, plenary realisation . . . which is the paradigm power of a (full) liquidator following a winding-up order."). They do not permit disposition or realization of assets,

---

[9]    The JPLs twice withdrew their pending section 1519 motion in favor of corrected versions. *See* [ECF Nos. 8, 9, 26, 27]. Citations to the Motion are to the corrected version.

16

much less a liquidation of the company, without explicit authorization of the BVI courts. BVI Appt. Orders at ¶ 10 (prohibiting sale of assets, distribution to stakeholders, and other realizations of value "without sanction of the [BVI] court"); *see also* Pretlove Dep. Tr. at 130:16–23; 219:19–220:5 (MR. PRETLOVE: "If I were to sell the shareholding in [the Allied Cigar Group] business, I would fully expect to go to the BVI court and get sanctions for a sale of that asset."). Mr. Chissick later clarified that what he meant by the word "authorized" was that the JPLs *could* exercise sale powers *if* they went back to the BVI Court and obtained a further order saying as much. Chissick Dep. Tr. at 106:2–6 (Q: "[W]hen you say broad authority, you include authority that requires further sanction?" MR. CHISSICK: "That's correct.").

22.     Mr. Chissick pointed, as one basis for this "broad authority . . . to realize assets," to paragraph 10 of the BVI Appt. Orders, which states in its entirety: "Save as provided in paragraph 3 above the [JPLs] may not exercise any of the powers set out at Schedule 2 to the Insolvency Act, 2003 without sanction of the Court." BVI Appt. Orders ¶ 10; Chissick Dep. Tr. 98:13–16. Pressed with how this prohibition could be conveyed to this Court as a source of broad authority, Mr. Chissick had the following explanation:

> Q: You mentioned 10 as another source in part of authority to realize assets. Explain that to me. [Paragraph] 10 reads to me like a limitation, like a prohibition, but I'm not a BVI lawyer. So explain to me how [paragraph] 10 grants some kind of authority.
>
> A: Well, in paragraph 10, in itself, recognizes that such powers vest with the JPLs.
>
> . . . .
>
> Q. So by saying they may not exercise those powers, what it's really saying is they have them?
>
> A. Correct.

Chissick Dep. Tr. at 100:7–101:9.

17

23.     On April 16, 2026, the Borrelli Debtors filed their *Objection to Motion for Provisional Relief Pursuant to* Section *1519 of the Bankruptcy Code* [ECF No. 17] (the "**1519 Objection**" or "**1519 Obj.**") challenging, among other things, the JPLs' request for asset-sale authority. 1519 Obj. ¶¶ 18–21. The JPLs promptly withdrew their request for asset-sale powers. *See Reply in Support of Corrected Emergency Motion for Entry of Orders Granting (i) Ex Parte Relief and (ii) Provisional Relief, Pursuant to Section 1519 of the Bankruptcy Code* [ECF No. 30] (the "**1519 Reply**") ¶ 8; *id.* Ex. B (Redline of Revised Provisional Relief Order Against Original Provisional Relief Order) at 5 (striking "and realization" from paragraph 11 of the proposed order).

24.     On April 22, 2026, the Court held a hearing on the Motion and 1519 Objection. At the outset, the Court noted that the question of the Director's ability to direct the Borrelli Debtors in these proceedings—raised by the JPLs in the 1519 Reply—was a question of BVI law best decided by the BVI Court, and the issue was accordingly deferred. *Id.* at 8:4–5; 8:20–21.

25.     In the introductory remarks that followed, the JPLs conveyed that they were considering a chapter 11 filing for the Debtors—an action that far exceeds the "ring-holding" mandate imposed by the BVI Appt. Orders and intended by the BVI AG and risks imposing significant costs. *See April 22, 2026 Hybrid Status Conference* [ECF No. 43] (the "**1519 Hr'g Tr.**") at 18:22–19:1 (MR. DIETDERICH: "[I]t may be possible that the right answer here is a Chapter 11 case . . . ."). Needless-to-say, the JPLs have not sought that authority from the BVI Court.

26.     On April 23 and April 30, 2026, respectively, this Court issued its *Memorandum Opinion Granting Provisional Relief* [ECF No. 38] (the "**1519 Opinion**") and its *Order Granting Provisional Relief* [ECF No. 44] (the "**1519 Order**") imposing, among other things, the section 362 stay with respect to each of the Debtors and their respective U.S.-located property. *Id.* at 4 ¶ 12.

18

G.    **Hong Kong Court Restrains Substantially All of the Debtors' Assets**

27.    On May 4, 2026, the Hong Kong High Court granted a restraint order freezing approximately HK$8.94 billion in assets alleged to be linked to Prince Group founder Mr. Chen and three associates, following an application by the Department of Justice (DOJ) under the Organised and Serious Crimes Ordinance against those four individuals and 38 companies (including 15 of the Debtors). *See generally Restraint Order Prohibiting Disposal of Assets in Hong Kong and Elsewhere* [Second Skinner Decl. Ex. 36] (the "HK Restraining Order"). The case, HCMP661/2026, is currently active, with a follow-up hearing scheduled for August 3, 2026, to review the status of the frozen assets and the ongoing investigation. It appears the vast majority of the Borrelli Debtors' assets, including the Allied Cigar companies, are now subject to the Hong Kong courts and are covered by the restraining order. *See id.*

H.    **The BVI Court Rules that the Director may Direct the Companies to Oppose the JPLs in the BVI but not in these Ch. 15 Cases**

28.    On May 14, 2026, the BVI Court heard arguments on whether the BVI Orders barred the Borrelli Debtors from objecting to the Ch. 15 Cases. The BVI Court concluded that the BVI Orders limited the Borrelli Debtors to certain "residual powers" that did not include challenging the Ch. 15 Cases. May 14 BVI Hr'g Tr. 210:9–21.

## OBJECTION

I.    **Mr. Borrelli Has Standing to Object in his Capacity as a Director**

29.    Bankruptcy Rule 1012(a) provides that a "debtor or a party in interest may contest a Chapter 15 petition for recognition of a foreign proceeding." A party in interest in a U.S. bankruptcy proceeding generally is one whose rights, duties, or equitable interests may be directly affected by the bankruptcy proceeding or the relief sought in it. *See Truck Ins. Exch. v. Kaiser Gypsum Co.*, 602 U.S. 268, 277–78 (2024); *In re Ascentra Holdings, Inc.*, 657 B.R. 339, 353

(Bankr. S.D.N.Y. 2023). In chapter 15, where section 1522 mandates protection of "other interested entities," 11 U.S.C. § 1522(a), the standard may encompass those indirectly affected—especially if those parties have interests "not otherwise being protected by the entities that maintain the direct right" to participate. *In re Zhejiang Topoint Photovoltaic Co., Ltd.*, 2015 WL 2260647, at *3–6 (Bankr. D.N.J. May 12, 2015) (creditor of creditor had standing to object in chapter 15 where "its interests [were] not already being adequately represented" by other parties). The standing requirement is construed generously, "on a case by case basis" recognizing this Court's "'broad latitude to mold relief to meet [the] specific circumstances' of 'the persons potentially affected by [requested] relief.'" *Id.* (quoting *In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d Cir. 1985)).

30. Mr. Borrelli easily meets that generous standard. As director of each of the Borrelli Debtors, he has authority to run the companies, but that authority is subject to the BVI Orders. The relief sought here by the JPLs in these ch. 15 cases will further impair Mr. Borrelli's authority to do his job. It is in that capacity that Mr. Borrelli objects here.

31. The BVI ruling acknowledged this distinction when it recognized that the Debtors' remaining directors may appear here if they have "some other kind of interest," "but they can't do it on behalf of and in the name of the [Debtors]." May 14 BVI Hr'g Tr. at 208:16–18. In reaching that ruling, the BVI Court relied on the JPLs' counsel's representations that the JPLs did not oppose objections in the United States brought by the Director in his capacity as a director. *Id*. at 207:10–15 ("[A]s [counsel to the JPLs] has pointed out, the JPLs have got no problem with the directors as individuals or some other kind of interest . . . going after the U.S. [c]ourt and explaining why the recognition should not be granted."); *see also May 12, 2026 Skeleton Argument on Behalf of the JPLs* [Second Skinner Decl. Ex. 37] ¶ 19 ("The JPLs . . . do not oppose . . . the directors appearing and objecting to the petition to the extent permissible under US law. What the JPLs

20

oppose is the opposition purporting to come from the [Borrelli Debtors] themselves."). The Court should consider Mr. Borrelli's objections on the merits, and in all events, this Court must independently determine whether the JPLs have established the requirements for recognition. *See In re Serviços de Petróleo Constellation S.A.,* 600 B.R. 237, 246 (Bankr. S.D.N.Y. 2019) (explaining that the court is "require[d] . . . to analyze whether a proceeding should be . . . recognized at all, regardless of whether objections have been raised.").

## II.    The JPLs Have Failed to Establish Debtor Eligibility Under § 109(a)

32.    Section 109(a) provides that, "[n]otwithstanding any other provision of this section, only a person that resides or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor under this title." 11 U.S.C. § 109(a). Section 109(a) applies in chapter 15 and imposes a mandatory precondition to recognition. *See In re Barnet*, 737 F.3d 238, 247 (2d Cir. 2013); s*ee also In re Silicon Valley Bank (Cayman Islands Branch)*, 658 B.R. 75, 87 (Bankr. S.D.N.Y. 2024) (describing § 109(a) eligibility as a "gating issue" to chapter 15 relief).

33.    The JPLs fail their 109(a) burden. They contend that each of the Debtors satisfied the section 109(a) eligibility requirement through a "ratable interest in an advance payment retainer of $25,000" (the "**S&C Retainer**"). VP ¶ 16. But as Mr. Pretlove admitted, not a single dollar of the S&C Retainer came from any of the Debtors; the entire amount was funded by Interpath, the JPLs' firm, and is now held by S&C, in its capacity as counsel *to the JPLs*. Pretlove Dep. Tr. at 99:15–102:3 (testifying that S&C's invoice was paid by wire transfer from an Interpath bank account, with Interpath's own funds, and not with any property of the Debtors). As Mr. Pretlove admitted, the $25,000 was neither a loan nor gift to the Debtors, but rather payment by Interpath of a liquidation expense. *Id.* at 101:16–102:20; 111:23–112:22; 172:9–173:18. That gives Interpath a tentative claim *against the Debtors*; but it does not create property *of the Debtors*. *See In re Head*, 223 B.R. 648, 652 (Bankr. W.D.N.Y. 1998) (rejecting asserted U.S. property interest that was "too

tenuous, too inchoate, and too contrived" and was not a claim of actual ownership). The JPLs also have failed to show how each Debtor came to hold a "ratable interest" in some portion of those funds, given that they are held in a single lump sum and there are no documents memorializing division thereof. Pretlove Dep. Tr. at 112:23–113:4 (funds held in a single account); 173:19–174:10 (identifying no documentation that governed the debtors' interests in that account).

34.     Moreover, regardless of whose property went into that account, it belongs to S&C now.[10] That's because S&C is holding an "advance payment retainer" rather than a security retainer. VP ¶ 16; *see also* S&C Invoice. While a security retainer remains client property until counsel earns the fees, an advance-payment retainer belongs to counsel upon transfer, unless the parties expressly agree that such funds will be held in trust or escrow. *See In re King*, 392 B.R. 62, 70–71 (Bankr. S.D.N.Y. 2008); *In re D.L.I.C., Inc.*, 120 B.R. 348, 350–51 (Bankr. S.D.N.Y. 1990). Mr. Pretlove testified that there is no such agreement. Pretlove Dep. Tr. 91:5–9; 104:20–105:9; 113:18–114:16.

35.     What is more, the JPLs could not have funded the S&C Retainer with Debtor property even if they wanted to. Mr. Pretlove testified that the JPLs have not yet accessed Debtor cash from which to pay themselves. Pretlove Dep. Tr. 172:12–173:18. Sanctions and OFAC prevented the JPLs from moving debtor property into the U.S. should they come to possess some. Pretlove Dep. Tr. 152:15–21 (testifying that, because of sanctions and the inability of the entities to move funds in U.S.-denominated accounts, in the United States, or from the United Kingdom, the entities were "pretty hamstrung"); 31 C.F.R. § 590.201.

---

[10] Funds in an S&C client trust account could also not belong to the Debtors, because they are not S&C's clients. *In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399, 411–12 (Bankr. S.D.N.Y. 2014) (determining § 109(a) eligibility by applying New York ownership and agency principles to decide whether funds titled in another entity's name were actually debtor property). S&C represents the JPLs as foreign representatives; it does not represent any of the Debtors. *See* Verified Petition at 1 (identifying S&C as "Counsel to the Authorized Foreign Representatives").

36.    Finally, this defect cannot be cured, because eligibility under § 109(a) is measured as of the petition date. *In re Siu-Fung Ceramics Holdings Ltd.*, 2026 WL 382424, at *23 (Bankr. S.D. Tex. Feb. 10, 2026) ("[W]ith respect to using an undrawn retainer to satisfy section 109(a), the foreign representative must deposit that retainer with counsel into a [U.S.] bank account *before the petition for recognition is filed*.") (emphasis added); *see also In re Glob. Ocean Carriers Ltd.*, 251 *B.R. 31, 37 (Bankr. D. Del. 2000*) ("Debtors must have property in the United States at the time they actually file their bankruptcy petition."). Accordingly, this proceeding must be dismissed, and if the JPLs ever assert some new basis for U.S. property of the Debtors, they will need to file new chapter 15 petitions.

## III.    The JPLs fail to meet their debtor-by-debtor evidentiary burden

37.    The JPLs bear the burden of establishing each element of sections 109(a), 1502, and 1517 for each of the thirty Debtors. *See* 11 U.S.C. § 1517; H.R. Rep. No. 109-31, pt. 1, at 112 (2005) ("The ultimate burden as to each element [of 1517] is on the foreign representative"); *In re Serviços de Petróleo Constellation S.A.*, 600 B.R. 237, 279 (Bankr. S.D.N.Y. 2019) (citing same).

38.    The Verified Petition does not do that. Instead, it relies on generalized allegations about the "Prince Group" and the "Debtors" collectively, repeatedly refers to a single "Debtors' COMI," and offers no entity-specific evidence about any particular Debtor's creditors, creditor expectations, financial distress, or foreign proceeding.[11] And discovery confirmed that the JPLs could not satisfy this burden: when asked about two claimants who had allegedly come forward,

---

[11]    Nor does the section 1516(c) COMI presumption cure that failure. *See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 335 (S.D.N.Y. 2008) ("[S]ection 1516(c) creates no more than a rebuttable evidentiary presumption, which may be rebutted notwithstanding a lack of party opposition. . . . [It] at no time relieves a petitioner of its burden of proof/risk of non-persuasion."); *see* Fed. R. Evid. 301 (providing that a presumption shifts the burden of producing evidence to rebut the presumption, but does not shift the burden of persuasion).

Mr. Pretlove could not identify which Debtor the claims were asserted against, recalling only that the claims were "quite general against the 30." Pretlove Dep. Tr. 233:19–234:4. This is insufficient to establish grounds for recognition of a "foreign main proceeding." *See In re Serviços de Petróleo Constellation S.A.*, 600 B.R. 237, 279 (Bankr. S.D.N.Y. 2019) (no 'group COMI'); *In re InterCement Brasil S.A.*, 668 B.R. 802, 821–27 (Bankr. S.D.N.Y. 2025) (same).

## IV.    The BVI Proceedings are not "foreign proceedings"

39.    To qualify for recognition, the BVI Proceedings must be a "foreign proceeding." 11 U.S.C. § 1515(a). The Bankruptcy Code defines "foreign proceeding" as:

> a **collective** judicial or administrative proceeding in a foreign country, including an interim proceeding, **under a law relating to insolvency or adjustment of debt** in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, **for the purpose of reorganization or liquidation**.

11 U.S.C. § 101(23) (emphasis added).

40.    Courts have read this definition to mean that a "foreign proceeding" must meet seven elements: "(i) [the existence of] a proceeding; (ii) that is either judicial or administrative; (iii) that is collective in nature; (iv) that is in a foreign country; (v) that is authorized or conducted under a law related to insolvency or the adjustment of debts; (vi) in which the debtor's assets and affairs are subject to the control or supervision of a foreign court; and (vii) which proceeding is for the purpose of reorganization or liquidation." *Cf. In re Ashapura Minechem Ltd.*, 480 B.R. 129, 135–36 (S.D.N.Y. 2012); *see also In re ENNIA Caribe Holding N.V.*, 594 B.R. 631, 638 (Bankr. S.D.N.Y. 2018). The BVI Proceedings fail at least three of these threshold requirements: they are not "for the purpose of reorganization or liquidation;" they are not being conducted "under a law relating to insolvency or adjustment of debt;" and they are not "collective." *Id.*

41.    First, recognition must be denied because the BVI Proceedings are not "for the purpose of reorganization or liquidation" as required by Section 101(23). The UNCITRAL Guide

24

to Enactment of the Model Law[12] warns that proceedings are ineligible where they are not for that stated purpose, including proceedings designed only to prevent dissipation or waste, or where the foreign representative's powers are limited to preserving assets. UNCITRAL Guide ¶ 77. *Global Cord* denied recognition on that basis; the Cayman JPLs had no powers of reorganization or winding-up, but only powers to preserve assets and investigate suspected misconduct. *In re Global Cord Blood Corp.*, 2022 WL 17478530, at *10–13 (Bankr. S.D.N.Y. Dec. 5, 2022).

42.     So too here. The JPLs were appointed to aid the BVI AG's investigative undertakings and to further her efforts to cooperate with foreign law enforcement and sanctions authorities—not to reorganize the Debtors or liquidate assets for creditors. *See* BVI Orig. App. ¶¶ 31, 39; BVI Ord. App. ¶ 30(b)–(c); Apr. 14, 2026 BVI AG Skel. ¶ 12.3.

43.     Mr. Pretlove testified that, at this provisional stage, any creditor distribution would only occur "in the future, should we get to that stage." Pretlove Dep. Tr. 31:23–32:8. The BVI Court understood the proponents' own position the same way: although the BVI AG argued that appointing a liquidator did not "basically kill the company" because liquidation could be terminated, the Court observed that "what they want to use the liquidation for, having appointed the liquidator, is to investigate," and questioned whether that amounted to "using liquidation orders for . . . an investigative tool." Apr. 17 BVI Hr'g Tr. 172:10–173:10.

44.     The BVI AG's Closing Submissions confirm that purpose has not changed: appointment of liquidators does not necessarily entail winding up; the present focus is investigation and asset protection; and later distribution should not be assumed. BVI AG Closing Submissions ¶¶ 6.1–6.4, 17. These concessions mirror the defects identified in *Global Cord*: a proceeding that

---

[12] *See* UNCITRAL *Model Law on Cross-Border Insolvency with Guide to Enactment and Interpretation*, 42 (Jan. 2014) (available at https://digitallibrary.un.org/record/1487896/files/1997-model-law-insol-2013-guide-enactment-e.pdf).

may someday evolve into a liquidation is not, today, "for the purpose of reorganization or liquidation." *See Global Cord Blood*, 2022 WL 17478530, at *1, *10–12 (denying recognition where provisional Cayman proceeding aimed at fraud investigation was "most akin to a corporate governance and fraud remediation effort" rather than an insolvency proceeding); *see also In re British Am. Ins. Co. Ltd.*, 425 B.R. 884, 906 (Bankr. S.D. Fla. 2010) (foreign proceeding did not qualify for recognition where the foreign court "had ordered neither a winding up nor a reorganization of [the debtor]").

45.    Finally, the JPLs' limited powers confirm the same point. The operative provisions of the BVI Orders authorize preservation and investigation, not realization or distribution; the JPLs cannot sell assets, distribute value, or otherwise carry out the ordinary incidents of liquidation without further BVI Court sanction. *See* BVI Appt. Orders ¶ 10; Pretlove Dep. Tr. at 130:16–23; 219:19–220:5. A provisional proceeding designed to preserve assets while allegations are investigated is not transformed into a chapter 15-eligible liquidation merely because a later liquidation might someday occur.[13]

46.    Second, the BVI Proceedings also fail because they are not being conducted "under a law relating to insolvency or adjustment of debt." 11 U.S.C. § 101(23). The point is not the title of the BVI statute or the label "liquidator," but the authority invoked and the function the proceedings presently serve. Here, the BVI AG did not seek appointment on insolvency grounds, evident from the absence of reliance on BVI Insolvency Act § 8 which is mandatory when seeking the appointment of liquidators on insolvent grounds. *See* BVI Insolvency Act § 8. She proceeded

---

[13] The provisional liquidations cited by the JPLs are inapposite: each involved either a comprehensive debt restructuring or a winding-up proceeding driven by financial distress. *See In re Olinda Star Ltd.*, 614 B.R. 28, 34 (Bankr. S.D.N.Y. 2020); *In re Ocean Rig UDW Inc.*, 570 B.R. 687, 689–90 (Bankr. S.D.N.Y. 2017); *In re Suntech Power Holdings Co.*, 520 B.R. 399, 406 (Bankr. S.D.N.Y. 2014); *In re Fleming Int'l Reinsurance Ltd.*, No. 25-12353 (JPM) [ECF No. 2 at 3] (Bankr. S.D.N.Y. Oct. 26, 2025); *In re Northeast Ins. Co. Ltd.*, No. 25-12275 (MEW) [ECF No. 2 at 2] (Bankr. S.D.N.Y. Oct. 15, 2025).

only on public-interest and just-and-equitable grounds, and the record contains no allegation, finding, or inquiry that any Debtor is insolvent or in financial distress. *See* BVI Insolvency Act § 162(1)(a)–(c); Apr. 14, 2026 BVI AG Skel. at ¶ 10.3; Pretlove Dep. Tr. 28:22–30:15.

47.     That distinction matters because chapter 15 is directed to foreign insolvency and debt-adjustment proceedings—not public-interest investigations. The legislative history adding the words "or adjustment of debt" states clearly that two types of debtors are captured here: those that are "technically insolvent," and those who are "in severe financial distress." H.R. Rep. No. 109-31, pt. 1, at 118 (2005). The Debtors are neither. The BVI AG's counsel confirmed that the *prima facie* insolvency standard applicable to an ordinary insolvency liquidation is "completely different" from the public-interest inquiry. Apr. 17 BVI Hr'g Tr. 210:8–20.

48.     Were there any doubt, the BVI AG's own Closing Submissions confirm that no insolvency or debt-adjustment process is underway. They state that appointment of liquidators does not necessarily entail winding up, that any later distribution process should not be assumed, and that the current focus is investigation and asset protection. BVI AG Closing Submissions ¶¶ 6.1–6.4, 17. A proceeding that does not presently identify creditors, adjust debts, adjudicate claims, or distribute estate value is not being conducted under a law relating to insolvency or adjustment of debt within the meaning of section 101(23).

49.     Third, the BVI Proceedings do not satisfy the requirement that a qualifying foreign proceeding must be "collective." 11 U.S.C. § 101(23). That requirement asks whether the proceeding is directed to the creditor body as a whole, not merely whether a fiduciary has been appointed to investigate, preserve, or control assets. *See In re Ashapura Minechem Ltd.*, 480 B.R. at 136, 140 (a collective proceeding considers "the rights and obligations of all creditors" and is instituted for the "general benefit of the creditors"); *Global Cord Blood*, 2022 WL 17478530, at

27

*7–9 (denying recognition where the proceeding did not involve a process to identify creditors, classify debts, or distribute assets).

50.     For the reasons already discussed, the BVI Proceedings are directed to investigation, preservation, and public-interest oversight—not the adjustment of creditor claims or distribution of estate value. No claim-submission process, claim-adjudication process, distribution process, or restructuring process is underway. Pretlove Dep. Tr. 31:14–33:7 (testifying that no creditor distribution process is underway, no asset realizations have been made, no distribution mechanism has been proposed, and the JPLs have not moved to "anything like the distribution stage"). At most, the JPLs posit that a collective liquidation process might *someday* emerge. But *Global Cord* rejected recognition on materially similar facts: a proceeding that may later become collective is not presently a collective proceeding within the meaning of § 101(23). 2022 WL 17478530, at *7–9.

51.     In sum, recognition should be denied because the BVI Proceedings are not for the purpose of reorganization or liquidation, are not being conducted under a law relating to insolvency or adjustment of debt, and are not collective—each of which is an independent basis for denial.

**V.       The Court should Deny Recognition on Public Policy Grounds**

52.     Section 1506 of the Bankruptcy Code provides that "[n]othing in [chapter 15] prevents the court from refusing to take an action governed by [chapter 15] if the action would be manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506. This includes recognition itself under section 1517, relief under section 1520 otherwise granted automatically at recognition, and any discretionary relief under section 1521 and section 1507. *See id.* (referencing "an action" under chapter 15); *see also* 11 U.S.C. § 1517 (subjecting otherwise mandatory recognition to § 1506); *In re ARD Fin., S.A.*, No. --- B.R. ----, 2026 WL 817458, at *17 (Bankr. S.D.N.Y. Mar. 25, 2026) (Glenn, J.) ("[A]ny relief that is appropriate under sections 1507, 1517,

28

1520, or 1521" must be denied if it "run[s] afoul of section 1506."); *see also In re Gold & Honey, Ltd.*, 410 B.R. 357, 371 (Bankr. E.D.N.Y. 2009) ("A petition for recognition should be denied if recognition would be manifestly contrary to the public policy of the United States.").

53.    Section 1506 is implicated by procedural unfairness in a foreign proceeding. *See, e.g., In re Fairfield Sentry Ltd.*, 2011 WL 4357421, at *8 (S.D.N.Y. Sept. 16, 2011), *aff'd*, 714 F.3d 127 (2d Cir. 2013); *In re Metcalfe & Mansfield Alt. Invs.*, 421 B.R. 685, 697 (Bankr. S.D.N.Y. 2010) ("The key determination required . . . is whether the procedures used in [the foreign proceeding] meet our fundamental standards of fairness."). *See also Collins v. Oilsands Quest, Inc.*, 484 B.R. 593, 597 (S.D.N.Y. 2012) (interpreting section 1506 to require that a foreign judgment be accorded comity only if "its proceedings are 'fair and impartial'" (citation omitted)).

54.    The JPLs' appointment was the result of an *ex parte* hearing before the BVI Court of which neither the Director nor the Borrelli Debtors received notice. *See generally* Jan. 9 Ex Parte Hr'g Tr. The JPLs have since admitted to regularly engaging in *ex parte* communications with the BVI Court, government agencies, and private stakeholders. *See* 1519 Hr'g Tr. at 25:4–16. This includes submitting multiple sealed reports to the BVI Court that the Director has been unable to review, even on an attorneys'-eyes-only basis. In this way, the BVI Proceedings, as they operate on these particular facts, "lack[] certain common elements of American practice." *In re ARD Fin., S.A.*, 2026 WL 817458, at *17. As such, recognition of the BVI Proceedings, as well as any automatic or discretionary relief under sections 1520 and 1521, would be contrary to the public policy of the United States within the meaning of section 1506.

55.    The Director does not contend that BVI laws are procedurally unfair as a general matter. Rather, the JPLs have operated in a way that violates U.S. policy considerations safeguarding legal due process and the right to be heard. As such, recognition of the BVI

Proceedings, as well as any automatic or discretionary relief under sections 1520 and 1521, would be manifestly contrary to the public policy of the United States within the meaning of section 1506.

**VI.     Even if the Court Grants Recognition, it should Deny all Discretionary Relief**

56.     Subject to section 1506, the limited relief set forth in section 1520 is granted automatically at recognition. 11 U.S.C. §§ 1520 & 1506. That limited relief would, in sum, impose the automatic stay (subject to territorial limitations) and authorize the JPLs to conduct business in the U.S. on an ordinary course basis. § 1520(a)(1)–(3).

57.     The JPLs, however, request powers that go far beyond this automatic relief. Specifically, they ask this Court to grant the following discretionary relief under 1521(a):[14]

- entrust each of the JPLs with the administration or realization of all of the Debtors' property within the territorial jurisdiction of the United States pursuant to § 1521(a)(5);

- grant comity and full force and effect to all orders entered by the BVI Court prior to entry of the Recognition Order;

- authorize and empower the JPLs to take all actions necessary to implement the relief granted in the Proposed Recognition Order; and

- waive the 14-day stay of the Proposed Recognition Order once it is entered.

VP Ex. B (Proposed Recognition Order) [ECF No. 2-2] ¶¶ 18, 19, 23, 25. To obtain this relief, the JPLs must satisfy three requirements: (i) the relief must be "necessary to effectuate the purpose of [chapter 15]"; (ii) the relief must be "necessary . . . to protect the assets of the debtor or the interests of the creditors"; and (iii) "the interests of the creditors and other interested entities, including the debtor," must be "sufficiently protected." 11 U.S.C. §§ 1521(a), 1522. The discretionary relief sought here fails these three requirements.

---

[14]   To the extent the JPLs seek this relief under section 1507 of the Bankruptcy Code, they are barred under section 1507(b) for the same reasons. *Compare* Verified Petition ¶¶ 42, 47–49, *with id.* Ex. B ¶ 18; *see generally* 11 U.S.C. § 1507(b) (setting forth five mandatory considerations threshold to relief under section 1507).

**A.      Realization of Debtor Property Violates the Purpose and Scope of the BVI Orders and Risks Irreversible Damage to the Debtors**

58.      The JPLs should not be authorized to "realize" or sell assets because such relief would be contrary to the purpose and scope of their BVI law appointment. As summarized by Dr. Mokal: "[T]he BVI Court has sanctioned . . . the investigation, securing, and preservation of the Debtors' assets pending the determination of the pending liquidation applications. . . . [F]or the JPLs to seek or to represent that they have authority to seek any broader relief would be inconsistent with BVI law." Mokal Decl. ¶ 64.

59.      The power to sell assets here in the U.S. allows the JPLs to turn these provisional BVI Proceedings into irreversible proceedings—contrary to the BVI Court's views and the basis for the BVI law relief it has granted. It is especially problematic because the BVI Court has also been made to understand, in requests to extend the JPLs' provisional appointment, that nothing in the chapter 15 proceeding or in the BVI relief will render the provisional liquidation irreversible:

> THE BVI COURT: "[Y]esterday we had some submissions from, I think it may be Mr. Dennis [counsel to the BVI AG], and they were powerful submissions I have to say, whereby he says, and Sir James [counsel to the BVI AG] as well, I think, in which they said, ah, no, an order appointing a liquidator doesn't basically kill the company because it can be revived, and the liquidation can be brought to an end and it can be resumed. . . . [T]he response was basically, no, that is a wrong analogy because the company isn't actually dead and because it can be, liquidation can be terminated, and what they want to use the liquidation for, having appointed the liquidator, is investigate.

*See* April 17 BVI Hr'g Tr. at 172:14–173:3; *see also* April 16 BVI Hr'g Tr. at 8:13–17 (THE BVI COURT: "We all know that a provisional liquidation is reversible."). It would also run contrary to the JPLs' characterizations of these chapter 15 cases made to the BVI Court that authorized them. *See First Affidavit of James Kenneth Drury* [Second Skinner Decl. Ex. 38] (the "**May 4 Drury BVI Decl.**") ¶ 7 (characterizing chapter 15 "as a platform for obtaining information to enable [the JPLs] to discharge [their] functions[.]"); *id.* ¶ 50 (the chapter 15 proceedings are needed "to obtain

31

records, communications and transactional documentation held by U.S. financial institutions and other U.S. counterparties in order to trace and preserve the [Borrelli Debtors'] assets[.]"). Where the requested relief runs counter to the BVI Court's views, discretionary relief is contrary to the stated purposes of chapter 15 and thus cannot be granted under 1521(a). *See* 11 U.S.C. § 1501 (chapter 15 is "to provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of . . . cooperation between—(A) courts of the United States . . . and (B) the courts . . . of foreign countries involved in cross-border insolvency cases . . . .").

60.     As such, the Director respectfully submits that this Court refrain from issuing any blanket authorizations for asset sales pending a decision from the BVI Court on whether the JPLs are obtaining those powers as full liquidators as a matter of BVI law. At a minimum, the Director submits that, to ensure adequate protection of the interests of the Debtors and their stakeholders (including the Director), any asset sales should be made subject to the limitations of section 363 of the Bankruptcy Code, as required by section 1520(a)(2).

**B.      The JPLs Have Been Wasteful with Debtor Assets**

61.     The Debtors' assets are already subject to sanctions and freezing orders in various jurisdictions. The JPLs' actions in the U.S. and other foreign jurisdictions have only served either to duplicate those existing actions, at enormous expense to the Debtors,[15] or to work at cross-purposes with them. At the 1519 hearing, the JPLs told this Court that their appointment mandate "includes a mandate to cooperate with law enforcement," and that "the [JPLs] believe that . . . is in their financial interest, in the financial interest of the [D]ebtors." *See* 1519 Hr'g Tr. at 18:1–5.

---

[15]   The Director notes that the Borrelli Debtors fully intend to contest any applications for fees in the BVI. In his capacity as Director, he reserves all rights related thereto.

It is not clear whether they are fulfilling that mandate or whether they are, instead, working at cross-purposes with law enforcement to serve their own interests.

62. The recent Hong Kong freezing order proves one example. The 165 bank and securities accounts frozen presumably overlap with the bank accounts the JPLs were hoping to seize for their own use. *See generally* HK Restraining Order; *see also* 1519 Hr'g Tr. at 50:9–11 ("We intend to use the assistance of this Court to the full extent we can to pursue assets outside of the United States[.]"); *id.* at 16:5–9 ("The [JPLs] have located over \$300 million of cash in banks. . . . The largest accounts are in Hong Kong."). It renders Hong Kong another jurisdiction— along with the United States and the U.K.—in which the JPLs represent an unnecessary, costly interest competing with governmental authorities for a share of the Debtors' cash.

63. Rather than working with law enforcement to *preserve assets*, per their mandate, the JPLs have admitted that they have taken multiple steps to sell assets, *see* 1519 Mot. ¶ 11 ("The [JPLs] have been actively seeking licenses in relevant jurisdictions to provide authorization for transactions or dealings with blocked or frozen assets," and on March 18, 2026, the JPLs obtained a temporary license with respect to the Allied Cigar companies)—despite the fact that the BVI Orders do not authorize the JPLs to sell, otherwise realize, distribute, or administer assets at this time. *Compare* BVI Appt. Orders at 5 ¶ 10, *with* 1519 Hr'g Tr. at 47:7–48:5 (THE COURT: "What does the [OFAC] license permit you to do?" MR. DIETDERICH: "The license allows us to do everything that we could think of that we needed to do in very broad language.").

64. Discovery in these proceedings has revealed further plans to expand their mandate globally. On May 4, 2026, the JPLs told the BVI Court that they were already "in the process of issuing applications for recognition in Hong Kong and in England & Wales." *See* May 4 Drury BVI Decl. ¶ 91. No notice has been given to the Director, the Borrelli Debtors, or this Court of

33

such additional proceedings. At Mr. Pretlove's deposition, S&C instructed their witness not to answer questions about what other law firms the JPLs have engaged in those foreign proceedings or even how much money, in the aggregate, they have spent in expanding their reach to other jurisdictions. Nor would S&C give this information on an attorneys' eye only basis, asserting that "this questioning [is] designed to circumvent the BVI court's orders and to try to interfere with the liquidation process around the world." Pretlove Dep. Tr. at 92:17–25.

65.    Because the JPLs seek discretionary relief that would facilitate further dissipation of company value, that relief should be denied under section 1522(a), 1521(a), and 1501. *See* 11 U.S.C. § 1501(a)(4) (a stated purpose of chapter 15's enumerated objective of "protection and maximization of the value of the debtor's assets[.]").

### C.    The Court should not grant the Other Requested Relief

66.    The JPLs ask this Court to enforce unspecified BVI Court orders without submitting those orders to this Court or briefing whether comity should be extended to each. VP Ex. B (Proposed Recognition Order) [ECF No. 2-2] ¶ 19. This includes requested full force and effect for orders entered after the objection deadline for recognition. *Id*. Such relief is not "narrowly tailored" so as to "balance[e] the interests of the foreign representative" with the interests of "those affected by the relief," and as such fails to pass muster under 1522(a). *In re Toft*, 453 B.R. 186, 196 n.11 (Bankr. S.D.N.Y. 2011); *see In re Atlas Shipping A/S*, 404 B.R. 726, 739 (Bankr. S.D.N.Y. 2009) (Glenn, J.) (same); *see also In re Int'l Banking Corp. B.S.C.*, 439 B.R. 614, 626 (Bankr. S.D.N.Y. 2010) (same).

67.    The Court should also exercise caution in granting the JPLs broad relief under the guise of incidental powers, as in the request to authorize the JPLs "to take all actions necessary to implement the relief granted in [the Proposed Recognition Order]." Proposed Recognition Order,

VP Ex. B ¶ 23. The JPLs have already demonstrated a propensity for overreading broad authority into incidental powers and should not be trusted to self-police the limits of incidental authority. *Compare* Pretlove Dep. Tr. 73:5–23 (claiming incidental powers granted to the JPLs in paragraph 3(m) of the BVI Orders), *with* Mokal Decl. ¶ 63.3 ("[A]ct is not '*incidental*' if it contradicts, circumvents, or goes beyond the functions and powers to which it claims to be subsidiary. . . . [P]aragraph 3(m) . . . cannot be used to sidestep restrictions or requirements that the [BVI Appt. Orders] . . . impose[] elsewhere.").

68.     Finally, the requested waiver of the 14-day stay of effectiveness waives a key procedural protection enshrined in the Bankruptcy Rules. VP Ex. B (Proposed Recognition Order) [ECF No. 2-2]; *See Webb Mtn, LLC v. Exec. Realty P'ship, L.P. (In re Webb Mtn, LLC)*, 414 B.R. 308, 341 (Bankr. E.D. Tenn. 2009) (Rule 7062 stays offer litigants a means of ensuring "meaningful time" to file post-ruling motions, such as a motion for a stay of the entered order pending a further dispute). Waiving it is neither necessary nor warranted, especially given that the BVI Proceedings may soon be drawing to a close because the scant evidentiary record cannot support conversion of the JPLs' provisional appointment into full-blown liquidation:

> THE BVI COURT: "[W]hat would be very unusual would be to say, ah, we haven't got [evidence]; we've just got all this second-hand material, press releases, you know, . . . no primary materials, no examples of what actually happened . . . and so all we've got is lots of second-hand material. . . . And it might be all right on an ex parte application for the appointment of provisional liquidators, but, you know, normally when you come for provisional liquidators you expect something better."

Apr. 17 BVI Hr'g Tr. at 161:11–23.

## **CONCLUSION**

For the foregoing reasons, Mr. Borrelli respectfully requests that this Court deny the JPLs' Verified Petition and decline to recognize the BVI Proceedings or, alternatively, deny the discretionary relief requested by the JPLs.

Dated: May 29, 2026
New York, New York

Respectfully Submitted,

**BOIES SCHILLER FLEXNER LLP**

*/s/ Peter M. Skinner*
Matthew L. Schwartz
Peter M. Skinner
Gordon Z. Novod
55 Hudson Yards
New York, New York 10001
Telephone: (212) 303-3646
mlschwartz@bsfllp.com
pskinner@bsfllp.com
gnovod@bsfllp.com

Dan G. Boyle
2029 Century Park East
Los Angeles, California 90067
Telephone: (213) 995-5732
dboyle@bsfllp.com

Laura Femino (admitted *pro hac vice*)
401 E Las Olas Boulevard
Fort Lauderdale, Florida 33301
Telephone: (954) 377-0716
lfemino@bsfllp.com

*Counsel to Cosimo Borrelli in his
capacity as the sole director of each
of the Borrelli Debtors*

36