## EXHIBIT 2

**Transcript of the Remote Deposition of Riz Mokal**

Page 1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Chapter 15

Case No. 26-10769 (MG)

-------------------------------------x

In re:

PRINCE GLOBAL HOLDINGS LIMITED et al.,

Debtors in Foreign Proceedings.

-------------------------------------x

June 3, 2026

9:00 a.m.

Remote video-teleconference deposition via Zoom of RIZ MOKAL, taken by Counsel for Authorized Foreign Representatives, before Jineen Pavesi, a Registered Professional Reporter, Registered Merit Reporter, Certified Realtime Reporter and Notary Public of the State of New York.

Page 2

A P P E A R A N C E S:

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
        Attorneys for Authorized Foreign
        Representatives
BY:   JACOB M. CROKE, ESQ.
        crokej@sullcrom.com
        SASKIA DE VRIES, ESQ.
        devriess@sullcrom.com
        SAM MORAN, ESQ.
        morans@sullcrom.com

WALKERS (Europe)
The Scalpel, 11th Floor
52 Lime Street
London, EC3M 7AF
        BVI Legal Representatives of the
        Authorized Foreign Representatives
BY:   THOMAS HARBORD, ESQ.
        - and -
WALKERS (Hong Kong)
15/F, Alexandra House
18 Chater Road
Central Hong Kong
BY:   ROBERT GREGORY, ESQ.

BOIES SCHILLER FLEXNER
2029 Century Park East, Suite 1520
Los Angeles, California 90067
        Attorneys for Objector
BY:   DAN BOYLE, ESQ.
        dboyle@bsfllp.com

ALSO PRESENT:
JEFFREY MENTON, The Video Technician

Page 3

S  T  I  P  U  L  A  T  I  O  N  S

IT IS HEREBY STIPULATED AND AGREED by and between the Attorneys for the respective parties hereto that filing and sealing be and the same are hereby waived.

IT IS FURTHER STIPULATED AND AGREED that all objections except as to the form of the question, shall be reserved to the time of the trial.

IT IS FURTHER STIPULATED AND AGREED that the within examination may be signed and sworn to before any notary public with the same force and effect as though signed and sworn to before this Court.

Page 4

THE COURT REPORTER: Mr. Boyle, are you ordering a copy?

MR. BOYLE: Yes, I will order a copy.

THE COURT REPORTER: Do you want a rough transcript at the end of the day?

MR. BOYLE: Yes, that will be good, I will take a rough.

THE COURT REPORTER: Okay, thank you.

(Pause.)

THE COURT REPORTER: Mr. Croke, I just want to confirm that you're ordering daily copy on the final transcript and a rough tonight?

MR. CROKE: Yes, that would be great.

THE COURT REPORTER: Do you need a realtime link?

MR. CROKE: No, I don't think we need it.

(Pause.)

THE VIDEO TECHNICIAN: Good

morning, we're going on the record at approximately 9:03 a.m. on June the 3rd of 2026.

Please note that this deposition is being conducted virtually, quality of the recording depends on the quality of the camera and Internet connections of participants.

What is seen from witness and heard on screen is what will be recorded.

Audio and video recording will continue to take place unless all parties agree to go off the record.

This is Video Media Disk 1 of the video recorded deposition of Riz Mokal taken by counsel for the petitioner in the matter of In re Prince Global Holdings Limited, et al., this case is filed in the United States Bankruptcy Court, Southern District of New York, Case No. 26-10769.

This deposition is being conducted remotely using virtual technology.

My name is Jeff Menton, I am

Page 6

the certified legal videographer; the court reporter is Jineen Pavesi; we're both from Veritext New York.

All counsel consent to this remote video arrangement and waive any objections to this manner of reporting.

If there are any objections to the court reporter swearing in the witness remotely and this remote video arrangement, please state them now.

(No response.)

THE VIDEO TECHNICIAN: Not hearing any objections, counsel will now state their appearances and affiliations for the record beginning with the noticing attorney and then the court reporter will swear the witness in.

MR. CROKE:  Good morning, Jacob Croke from Sullivan & Cromwell, along with my colleague Saskia De Vries and Sam Moran, here on behalf of the authorized foreign representatives in this proceeding.

MR. BOYLE:  Good morning, Dan

Page 7

Boyle, Boies, Schiller Flexner on behalf of the objectors.

Joining me is the witness, Dr. Riz Mokal.

R I Z   M O K A L, having first been duly sworn by a Notary Public of the State of New York, was examined and testified as follows:

EXAMINATION BY

MR. CROKE:

Q.      Good morning, Dr. Mokal.

A.      Good morning.

Q.      As I just mentioned, my name is Jake Croke, I am from Sullivan & Cromwell and I represent the authorized foreign representatives in this proceeding.

Just one note for ease of reference; they're called the authorized foreign representatives in these U.S. proceedings, but I will refer to them as the JPL, joint provisional liquidators, just as you do in your declaration, is that okay?

A.      Yes.

Page 8

MOKAL

Q.      Can you just please state and spell your full name for the record.

A.      My first name is Riz, R-I-Z, and surname is Mokal, M-O-K-A-L.

Q.      I think you know this, but just to go over some ground rules so we're all on the same page, we have a court reporter who is going to record everything that's said so just please make sure to speak clearly and answer verbally rather than nodding or using gestures.

If you don't understand a question, always happy to clarify, please let me know, I am happy to rephrase or clarify for you, otherwise I will assume you understand the question.

We'll probably take breaks around every hour or so, but if you need a break before then, just let me know or let your attorney know, we can do so; I would just ask that we not take a break while a question is still pending.

Is that okay?

A.      That's all right, thank you.

Page 9

MOKAL

Q.   Your counsel may also object to questions at times, but even if they object to the questions, you must still answer the question unless your counsel instructs you not to, okay?

A.   Yes.

Q.   Is there any reason today that you're not able to provide accurate, truthful and complete testimony?

A.   No.

Q.   Just very briefly, I just would like to ask about some of your professional experience.

You were called to the bar of England and Wales in 1997, is that correct?

A.   That's correct.

Q.   And you took up full-time practice in the bar in 2016, is that correct?

A.   That's correct.

Q.   Just generally your practice covers cross-border insolvency, restructuring and related issues?

Page 10

MOKAL

A.         That's correct.

Q.         When did you join your firm South Square?

A.         It is a chambers which I joined in 2005, having started my pupillus there in 2004.

Q.         Again at a high level, what is your current practice and role at South Square?

A.         I, like all of the members of South Square, am a self-employed barrister and my practice is as you summarized a few minutes ago.

Q.         Have you ever been retained as an expert?

A.         I have.

Q.         Have you even been retained as an expert on BVI law?

A.         I have not.

Q.         In any matter where you were retained as an expert, did you ever have a report or declaration or other testimony that was ever excluded or criticized by a court?

Page 11

MOKAL

A.      No.

MR. BOYLE:   Objection, compound.

Q.      Could you please describe how you came to be retained in connection with this matter.

A.      I was approached in the usual way through my clerks and asked if I would be willing and able to opine on the issues which arose.

Q.      When was that?

A.      That would have been late April or early May perhaps.

Q.      Without describing the substance, who participated in your initial discussion regarding your retention?

A.      As I recall, it was BVI counsel for the companies and the director as well as U.S. counsel.

Q.      Would that be lawyers from the firm Campbells and Boies, Schiller?

A.      Correct.

Q.      Who exactly has retained you in

Page 12

                    MOKAL

connection with this matter?

    A.      BSF.

    Q.      Boies, Schiller?

    A.      Correct.

    Q.      Are you engaged by Boies,
Schiller on behalf of another party?

    A.      Yes.

    Q.      Who is that other party?

    A.      That is the director of the
companies.

    Q.      Is that Cosmo Borelli?

    A.      It is.

    Q.      Were you ever engaged by any
other person or entity in connection with
these proceedings?

    A.      Not to my knowledge.

    Q.      So in connection with your
initial engagement, from the beginning,
the person who you were engaged on behalf
of was Cosmo Borelli in his capacity as
director?

    A.      I would have to check that, I
can't recall.

    Q.      Do you recall whether you were

Page 13

MOKAL

ever engaged by the Borelli debtors or any actual debtor entity as opposed to being engaged by Mr. Borelli individually?

A.      I don't recall initially distinguishing between those two in my own mind.

Q.      So the answer is you don't recall as to whether you were ever engaged by any entities?

A.      That's correct.

Q.      Have you received any instructions regarding your testimony in this case?

A.      I have.

Q.      From whom?

A.      From BSF, Boies, Schiller.

Q.      From anyone else?

A.      No.

Q.      I think you mentioned this, but when you were selected as an expert, you signed an engagement letter, is that correct?

A.      That's correct.

Q.      At a high level, what is the

MOKAL

scope of your retention in this matter?

A.      It is to advise in relation to
these proceedings insofar as within my
area of competence, with a view to being
of assistance to the U.S. court.

Q.      Boies, Schiller is representing
you as counsel in connection with this, is
that correct?

MR. BOYLE:  Object, form.

A.      I don't understand them to be
representing me as counsel, I'm just an
expert witness that they have instructed
on behalf of their client.

Q.      Is any other law firm
representing you as counsel in connection
with this matter?

A.      No.

Q.      Prior to your retention in
connection with this matter, had you ever
communicated with Cosmo Borelli?

A.      No.

Q.      Prior to your retention in
connection with this matter, had you ever
communicated with Chen Zhi?

Page 15

MOKAL

A.      No.

Q.      Prior to your retention in this matter, had you ever communicated with Minyi, M-I-N-Y-I, Tang, T-A-N-G?

A.      No.

Q.      Prior to your retention in this matter, had you ever communicated with Fan, F-A-N, Yang, Y-A-N-G?

A.      No.

Q.      Prior to your retention in this matter, had you ever communicated with Jacqueline Lee of the Lee Law Firm?

A.      No.

Q.      Prior to your retention in this matter, had you ever communicated with anyone else from the Lee Law Firm in Hong Kong?

A.      To the best of my recollection, no.

Q.      Prior to your retention in this matter, had you ever communicated with any other employees or persons affiliated with the debtors in this proceeding?

A.      No.

Page 16

MOKAL

Q.      Prior to your retention in this matter, had you ever worked on any matters with Boies, Schiller?

A.      I would have to look at my records, I'm sorry, I can't recall off the top of my head.

Q.      But there is nothing that comes to mind that you have?

A.      No, no.

Q.      Under your engagement here, how much total have you billed in connection with this matter to date?

A.      I haven't looked at the figures and I simply wouldn't know, I would have to check and consult with my clerk.

Q.      What is your hourly rate?

A.      It's in the region of 850 pounds an hour.

Q.      Have you had any assistance or colleagues who have also billed time in connection with this engagement?

A.      I can only speak on behalf of my own work and I have worked alone in this matter, on my own behalf.

Page 17

MOKAL

Q.       So there is no one else who works with you or for you who has also been engaged on this matter?

A.       Nobody works for me, no, other than my clerks.

Q.       Have any of your clerks been engaged in connection with this matter?

A.       They deal with the administrative side of things, but they are of course not competent to do anything in relation to the substance of my work.

Q.       Have you been paid anything sitting here today in connection with this matter?

A.       No.

Q.       Can you tell me at a general level what you did to prepare for today's deposition.

A.       Yes.

I looked at the primary documents in the BVI proceedings in this matter, I looked at the key documents in the Chapter 15 proceedings in this matter, I looked in particular at Mr. Chissick's

Page 18

                    MOKAL

declarations, I reread my own declaration,
I looked at some of the key case law, I
look at the Mithani order and Wallbank
order.

     Q.      The materials that you looked
at to prepare for today's deposition, were
those all materials, the same universal
materials that you had looked at in
preparing your declaration?

     A.      Mostly, but not exclusively.
            I've continued to research the
points which are relevant to my evidence.

     Q.      Can you explain what additional
materials you've looked at since you put
in your declaration that you had not
reviewed at the time of your declaration.

     A.      I've looked in particular at
case law which bears on the points that
I'm considering here.

     Q.      Is there anything else other
than that?

     A.      I can't recall, I don't think
so, but I wouldn't be able to guarantee
that I haven't looked at some additional

Page 19

MOKAL

paper in one or other of the proceedings in this matter, for example.

Q.      Is it fair to say that, sitting here today, other than looking at potentially additional case law, you don't recall any additional documents in connection with these proceedings that you've reviewed, that you had not reviewed at the time you prepared your declaration?

A.      Yes, I think that's right.

Q.      Did you meet with the attorneys at Boies, Schiller to prepare for this deposition?

A.      I had some consultations with them, yes.

Q.      Was that in person or by Zoom?

A.      It was both.

Q.      How many times did you meet with them?

A.      I have met with them twice.

Q.      And that's twice in the time after submitting your declaration?

A.      That's correct.

MR. BOYLE:  Objection, vague.

Page 20

MOKAL

Q.      When were those meetings?

A.      They were over the last couple of days.

Q.      You said one of them was in person or both of them were in person?

A.      One of them was in person; the other was hybrid.

Q.      And the in-person one, was that in London or in the U.S. or somewhere else?

A.      In London.

Q.      About how long were each of those meetings?

A.      One perhaps two hours, the other perhaps one hour.

I have records, but I haven't looked at those records to refresh my memory.

Q.      Who was present at those meetings?

A.      Counsel from Boies, Schiller.

Q.      You don't remember who it was from Boies, Schiller?

A.      Mr. Boyle was on one of those

Page 21

MOKAL

meetings and Ms. Femino was on both of those meetings.

Q.      So Ms. Femino was at the meeting in London?

A.      Correct.

Q.      Was anyone else from Boies, Schiller at the meeting in London?

A.      No.

Q.      Have you talked to any attorneys besides the attorneys at Boies, Schiller about your testimony in these proceedings?

A.      I have discussed certain matters with the BVI counsel.

Q.      Were those discussions before or after you submitted your declaration?

A.      Both.

Q.      Did anyone from -- when you say the BVI counsel, is that a reference to Campbells?

A.      Yes.

Q.      Is there anyone other than Boies, Schiller or Campbells that are attorneys that you've discussed your

Page 22

MOKAL

testimony in this case with?

A.      I have also discussed the issues arising with Mr. Gledhill Casey, who is also counsel for the relevant parties.

Q.      That was discussion before or after you submitted your declaration?

A.      Before.

Q.      Other than Boies, Schiller, have you had discussions with any attorneys regarding these matters since you filed your declaration?

A.      No.

Q.      Again, turning more generally to your experience here, have you ever advised provisional liquidators?

A.      I have.

Q.      In the cases where you have been retained to offer expert testimony, have you ever taken any position that is contrary to any of the positions that you set forth in your declaration in this matter?

A.      No.

Page 23

MOKAL

Q.      Other than in connection with
this matter, have you ever advised a
client on BVI law?

A.      Yes.

Q.      Again, without getting into the
substance of it, is that something that
you do regularly or is it more of a
one-off every so often?

A.      Depending on your definition of
regularly, I have advised on several BVI
law matters over the course of my
full-time practice.

Q.      But I think, as you mentioned
earlier, you've never offered expert
testimony on BVI law, is that correct?

A.      Yes.

Q.      You've never appeared before
any BVI court as counsel of record,
correct?

A.      That's correct.

Q.      You never appeared before any
BVI court as a sworn expert witness, is
that correct?

A.      That's correct.

Page 24

MOKAL

Q.      And has any U.S. court ever accepted expert evidence from you regarding BVI insolvency law?

A.      No.

Q.      You're not admitted to practice law in the United States, correct?

A.      That's correct.

Q.      And you've no formal training in U.S. bankruptcy law, correct?

A.      That's correct.

MR. BOYLE:  Objection.

Q.      And in connection with this matter, you were not retained to offer an opinion on U.S. law, correct?

A.      That's correct.

Q.      And in fact you are not offering an opinion on any U.S. law matters, is that correct?

A.      I am not offering any opinion on any U.S. laws here.

Q.      You note in your declaration that the scope of your testimony in this matter is that you were specifically asked to address certain issues related to BVI

Page 25

MOKAL

law and certain issues in Andrew Chissick's declarations, is that correct?

MR. BOYLE:   Objection.

A.        Correct.

Q.        And you were not asked to address every BVI law issue that the parties have raised in this case, is that correct?

MR. BOYLE:   Objection.

A.        I'm not confident I have anything like full understanding of all of the issues in the BVI proceedings.

I have just been instructed to address particular matters and you see my declaration on those matters.

Q.        Again, similar question; you were not asked to address every issue that was raised in the Chissick declaration, is that correct?

A.        That's correct.

Q.        And as I think you note in your declaration, the fact that you don't address certain issues, it doesn't mean that you're agreeing or disagreeing with

Page 26

MOKAL

the positions taken in the Chissick
declarations, is that correct?

Q.      A.      That's correct.

Q.      It just means that you're not
offering an opinion one way or the other
on those issues, right?

A.      Correct.

Q.      The counsel at Boies, Schiller
is who instructed you as to which issues
they want you to address in this matter,
is that correct?

A.      That's correct.

Q.      You also note in your
declaration that in offering your
opinions, you are as necessary assuming
that the allegations in Mr. Borelli's
objection are accurate, is that correct?

A.      Yes, formally I do that, yes.

Q.      And you have not investigated
yourself or sought to verify any of the
factual allegations in Mr. Borelli's
objection, correct?

A.      Correct.

Q.      Without revealing the substance

Page 27

MOKAL

of any privileged communications, did anyone provide proposed language that was incorporated into your declaration?

A.      No.

Q.      Were there any edits that were proposed to you that changed the substance of any opinion that you included in your declaration?

A.      No.

Q.      When you were retained, were you provided with materials to assist you in your work?

A.      Yes.

Q.      Who provided those materials?

A.      They were provided variously by counsel at Campbells and at Boies, Schiller.

Q.      Were all the materials that you were provided included in that Exhibit 1 to your declaration?

A.      No.

Q.      Did you identify the documents to be included as Exhibit 1 to your declaration?

Page 28

MOKAL

A.        Yes.

Q.        How did you identify those documents to include?

A.        I included all of the documents to which I referred in my declaration.

Q.        So there were documents that you reviewed but that you did not reference in your declaration, is that correct?

A.        Yes.

Q.        Do you recall what those documents were?

A.        They were additional documents filed in the BVI proceedings and/or in the U.S. proceedings.

Q.        Were any of those documents relevant to the opinions that you've offered in your declaration?

MR. BOYLE:  Objection.

A.        They may be informing my broader understanding of the matter.

Q.        I am going to show you now what I think we will mark as Exhibit 1, this is your declaration that you filed here,

Page 29

MOKAL

we'll put this up on the screen.

(Mokal Exhibit 1, Declaration of Riz Mokal, was marked for identification, as of this date.)

Q.     Do you happen to have a copy of this with you as well just for your own reference?

A.     I do, yes.

Would you like me to put it up?

Q.     No, that's fine; I just want to make sure, I don't want to make you unnecessarily have to scroll through everything here if you have a copy.

Do you recognize this document?

A.     It looks like the first half page of my declaration.

Q.     Did you review this declaration in preparation for today's testimony?

A.     I did.

Q.     Sitting here today, is there anything in your declaration that you would like to correct?

A.     Yes, there are a couple of infelicities of expression, I've spotted

Page 30

MOKAL

at least one typo.

Q.          Can you identify those.

A.          I'd have to go through the declaration in detail, but the typo concerns Court of Appeal of Finland and Wales decision called Midland, which I mistyped as having been decided in 2016, when in fact it was decided in 2026.

And there are a couple of places where I would express better the understanding I have of paragraph 3(c) of the 9th January order of Justice Mithani in the BVI court, there are a couple of places there, I don't remember the exact paragraph numbers, but I would express myself more clearly there.

Q.          Substantively how would you express yourself more clearly, what is the difference from what you said in your declaration and how you would phrase it now?

A.          I have said in my declaration that paragraph 3(c) confers the power on the JPL to seek recognition of the

Page 31

MOKAL

provisional liquidation proceedings, but that they can only do so for the purposes specified in the final clause of paragraph 3(c), I've said that at some points in my declaration, but I've not always been clear as to the separation between the power that paragraph confers and the limiting purpose for which that power is conferred.

Q.        Maybe we'll go down to paragraph 62 of your declaration, I just want to make sure we're talking about the same thing.

A.        Okay.

Q.        When you look at paragraph 62 and 62.1 and then the subparagraphs there, is this one of the places that you mention where you would sitting here now rephrase this a little bit differently?

A.        Let me just quickly refresh my mind on these subparagraphs if you don't mind.

Q.        Sure.

(Witness perusing document.)

Page 32

MOKAL

A.    I think that the first sentence, looking at 62.1, I think the first sentence of 62.1 is my understanding of the statement of the power being conferred for the particular purpose.

So it's authorizing --  it's granting the power to seek recognition, and then there is a limiting purpose, insofar as recognition is for purposes specified, securing, realizing and remitting assets to the control of the JPL and for the purpose of obtaining access to the control of the records of the company, I think that is the correct view of the power and its limitations.

Q.    What about this is something that you would change and phrase differently now?

A.    No, I would stand by this.

As I mentioned to you before we came to this paragraph, there are some places where I state this better and some places where I state it in a way that I would now seek to improve upon.

Page 33

MOKAL

62.1, the first sentence in particular, seems to me an accurate statement.

Q.    If you want to just take a second to scroll through paragraph 61 and the part right after that, I just want to make sure I understand what places you're referring to where you say that you might phrase it a little differently.

A.    You want me to look at 61 and 62, is that right?

Q.    Yes, those are the paragraphs that jump out where this is discussed in detail.

But I am really trying to just understand an example of what you mean when you say you would phrase something differently, just so I understand.

A.    Sure.

(Witness perusing document.)

A.    61 is simply setting out and summarizing the power that is conferred and setting out (c) and (m), sub(c) and (m) of paragraph 3 of the Mithani order.

Page 34

MOKAL

62.1 I've mentioned; the first sentence I think is an accurate characterization, it sets out the power that 3(c) grants and then sets out the limiting purpose.

The second sentence simply refers to the draft order placed that parties are seeking to agree for presentation to Justice Wallbank.

And then 62.1.1, I think that's accurate; 62.1.2, is accurate; 62.1.3 is accurate; 62.1.4 is accurate; 62.2 is also accurate.

Q.      What I am trying to understand, you mentioned that in reviewing this you did not want to correct anything, but you did note that there were a couple of places where you might have phrased something regarding paragraph 3(c) a little differently.

I am just trying to understand what you mean by that; is there anything in the report in particular that you recall that you would have phrased

Page 35

MOKAL

differently about that?

A.      Yes.

You asked me to look at 61 and 62 and I've done so and I can't see anything I would like to clarify at this point in 61 or 62.

Q.      There are only a few other places in the report where you talk about paragraph 3(c), I think if you go back to, for example, paragraph 60, is that one of the places where you would have phrased some of the language differently?

A.      Let me take a look.

(Witness perusing document.)

A.      Yes, I would want to clarify some of the language I use in paragraph 60.

Q.      How would you want to clarify that?

A.      It may be helpful if I read the sentences and you can see what I'm thinking about.

The first sentence of 60 I stand by, it sets out simply the Schedule

Page 36

MOKAL

2, paragraph 6, power, that's Schedule 2 in the Insolvency Act of 2003.

The second sentence simply notes that the word "realizing" is mentioned in the Mithani order and in the draft Willbank order.

The next sentence, "However, the 'realizing' authorized by para 3(c), does not amount to a" --

THE COURT REPORTER:  I could not hear you.

A.      My apologies, let me read the sentence and then I will tell you what I would put differently.

Here is the sentence; "However, the 'realizing' authorized by para 3(c) does not amount to a plenary realization power."

I would not say that paragraph 3(c) authorizes any realizing; the realizing is part of the limiting purpose for which recognition may be sought pursuant to paragraph 3(c).

The power that paragraph 3(c)

Page 37

MOKAL

grants is the power to seek recognition of the proceedings and the realizing is part of the limiting purpose for which such recognition may be sought.

So this paragraph, I would say, "However, the 'realizing,'" something like envisaged by paragraph 3(c), or the realizing being the purpose, the limiting purpose, for which recognition may be sought does not amount to a plenary realization power, something like that.

But I hope you see the point I'm seeking to make, which is the power 3(c) grants is the power to seek recognition, but that power in turn is then limited by the final clause of 3(c) and "realizing" is part of the definition of the limits for the proper use of that.

Q.      Thank you.

So other than the typo that you already mentioned and the point that you made here about perhaps wanting to sort of rephrase some of the references to paragraph 3(c), do you stand by everything

Page 38

MOKAL

else that's written in your declaration?

A.      Yes.

Q.      Have you performed any additional analysis on any of the matters drafted in -- addressed in your declaration since you executed it?

A.      Yes.

Q.      What is that additional analysis?

A.      The additional analysis includes questions which are more at the outskirts of the matters that I address here.

Q.      Can you give me an example, please.

A.      For example, I have confirmed that under BVI common-law following English common-law, there is a common-law power in both the company and the director of the company to oppose recognition of a foreign insolvency proceeding.

Q.      So that is an opinion that you did not have in your declaration but that is an opinion that you've come to

Page 39

MOKAL

subsequent to that based on your further analysis?

A.    That's correct.

Q.    Are there any other opinions that you did not set forth in your declaration but that you now have as opinions based on further analysis?

MR. BOYLE:  Objection, form.

A.    I've been looking at the nature of the proceedings and the sorts of proceedings that in the common-law of the BVI would constitute insolvency proceedings.

Q.    Anything else?

A.    No, those are the two primary; I have been reading widely and there may be other points, but not anything which brings immediately to mind.

Q.    Did anyone ask or instruct you to perform those additional analyses?

A.    No.

Q.    And you just did so of your own accord?

A.    In preparation for this

Page 40

MOKAL

deposition and any cross-examination.

Q.        Are you planning to do any additional analyses related to any of the matters discussed in the declaration?

A.        I assume I will be doing more preparation for any cross-examination afterwards and I will go where my research leads me.

Q.        With respect to the two additional analyses that you just mentioned, are you intending to offer those as your opinions at any point in this proceeding?

A.        I have no instructions to do that.

Q.        Are there any other issues that you have been asked to review in this proceeding beyond what's in this declaration?

MR. BOYLE:  I will instruct the witness not to discuss the substance of any attorney communications.

Q.        With that qualifier, are there any other topics that you have been asked

MOKAL

to address beyond the topics that are already set forth in your declaration?

A.      Yes.

Q.      And can you tell me what those topics are.

A.      The residual powers of the directors and of the companies to challenge the acts proposed to be taken by provisional liquidators is an issue which I don't believe I addressed in any significant substance in the declaration, but is one I have looked at.

Q.      Are you intending to offer any opinions or testimony about that topic in connection with this proceeding?

A.      I have no instructions to do so.

Q.      Sitting here right now, do you intend to address that topic during the hearing next Tuesday in front of Judge Glen?

MR. BOYLE:  Objection.

A.      I assume questions will be put to me and I will do my very best to assist

Page 42

MOKAL
the court.

Q.      Is there any reason that you did not address that topic in the declaration that you filed?

A.      Yes.

Q.      What was that reason?

A.      I was instructed not to.

Q.      You were affirmatively instructed not to, is that correct?

A.      I was no longer instructed to.

Q.      Sorry, could you repeat that?

A.      I was no longer instructed to address that matter.

Q.      So you had previously been instructed to address that but then were instructed not to address that at some point prior to filing your declaration?

A.      It fell away.

Q.      Are there any topics not covered in your declaration that you are intending or envisioning addressing during the hearing in front of Judge Glenn on Tuesday?

A.      My understanding is that

26-10769-mg   Doc 77-2   Filed 06/05/26   Entered 06/05/26 16:53:44   Exhibit 2 -
Transcript of the Remote Deposition of Riz Mokal   Pg 44 of 991

Page 43

MOKAL

questions will be put to me and that it is my duty to do my very best to answer those questions with a view to assisting the court, so I will do my best to answer the questions with a view to assisting the court.

Q.      Understood, and understood of course there may be questions that you may be asked that you're not envisioning right now.

What I am asking right now more specifically, are there any topics that you are intending to address during Tuesday's hearing that are not addressed in your declaration?

MR. BOYLE:  Objection.

A.      I am not sure I can assist you any further than to repeat what I have already said twice.

Sorry, I am not seeking to be difficult, I have my instructions to address certain issues, you'll find them in my declaration.

As I understand my duty, it is

**Page 44**

MOKAL

to do my very best in the witness box to answer the questions put to me and to do so with a view to assisting the U.S. court, I will do my very best to comply with those duties.

Q.        Understood.

All I am trying to get at is, setting aside the fact you may be asked questions on topics that you were not intending to affirmatively raise on Tuesday, what I am asking is, in preparing for what testimony you may affirmatively offer on Tuesday, sitting here right now, are there any topics that you are intending to address affirmatively at Tuesday's hearing that are not addressed in your declaration?

MR. BOYLE:  Objection.

A.        Can you define affirmatively.

Q.        You understand generally the process for introduction of your testimony at the hearing, is that fair?

A.        Yes, that's fair.

Q.        Your counsel will be

Page 45

MOKAL

introducing you and asking you some questions and then seeking to submit your declaration?

A.      Yes.

MR. BOYLE:  Objection.

Q.      Do you in the course of that initial offering of your opinions intend to seek to offer any opinions on issues that go beyond what is already set forth in your declaration?

A.      I have no intention to do that as we sit here.

Q.      I think you already said, but you are planning to testify on Tuesday at the hearing, is that correct?

A.      If I'm called to do so, yes.

Q.      Are you planning to be there in person?

MR. BOYLE:  Objection.

A.      I am.

Q.      Sorry, could you repeat that?

A.      I am planning --

MR. BOYLE:  Same objection.

Q.      Sorry --

Page 46

MOKAL

MR. BOYLE:  You have to take one second so I can register objections, I apologize, but it helps the court reporter.

THE WITNESS: My apologies.

A.     Mr. Croke, yes, I am intending to be present in person.

Q.     Sitting here right now, are you currently planning to do any additional analyses related to any matters in this proceeding beyond what is in this declaration and the two points that you already discussed that you've looked at after?

A.     There is no specific topic that I have in mind where I want to do additional analyses in addition to the issues in my declaration and issues that I have already been looking at.

Q.     If you go up to paragraph 3 of your declaration, do you see in the second sentence you note, "I am also asked to consider certain matters raised in the declaration dated 8 April 2026 and

Page 47

MOKAL

supplemental declaration dated 20 April 2026 of Andrew Barrington Chissick," and you go on and say, "I am not instructed to address everything in ABC 1 or ABC 2."

Do you see that?

A. Yes, I do.

Q. Did you review the entirety of each of those two declarations?

A. Yes, I did.

Q. And that's notwithstanding that in your declaration you were only addressing certain of the issues that were raised in there?

A. That is correct.

Q. Are you aware that Boies, Schiller took a deposition of Mr. Chissick in this proceeding on May 14, 2026?

A. Yes, I am.

Q. And you're aware that there is a 200-page plus transcript of Mr. Chissick's deposition?

A. I was not aware of that, but it does not come as a surprise to me.

Q. Did you review the transcript

Page 48

MOKAL

of Mr. Chissick's deposition?

A.      I did not.

Q.      Were you offered the chance to
review that transcript?

A.      Not to my recollection.

Q.      Do you have an understanding of
the topics that were covered during
Mr. Chissick's declaration?

A.      Yes, I do.

Q.      Sorry, during Mr. Chissick's
testimony.

A.      I do.

Q.      What is that understanding?

A.      I'm sorry, I am not sure I
understand your question.

Q.      You said you have an
understanding of what topics were covered
during Mr. Chissick's deposition.

I am just asking what is your
understanding of what was covered during
Mr. Chissick's deposition?

A.      I understand a wide range of
issues covering virtually the full range
of the issues he addressed in his two

Page 49

MOKAL

declarations were addressed at the very least.

Q.     And so that would include the topics that you address in your declaration, is that correct?

A.     That's correct.

MR. BOYLE:  Objection.

Q.     But you did not review the transcript to see what Mr. Chissick was asked about those topics or what he said about those topics?

A.     I did not review the transcript for that.

Q.     Did you not think that the transcript would be relevant to the opinions you offered in your declaration?

A.     It may have been.

Q.     Is there a reason that you did not ask to review the transcript?

MR. BOYLE:  Objection.

A.     I formed the view as I had sufficient knowledge of Mr. Chissick's deposition and did not require the assistance of the transcript to take a

Page 50

MOKAL

view.

Q.      Just to understand, you prepared a declaration in this matter in which you discussed and set forth your opinions on certain issues in Mr. Chissick's declarations, but you did not believe that it was necessary to see what Mr. Chissick said when he was asked about those issues during his deposition?

A.      As I said, Mr. Croke, I took the view that I had sufficient knowledge of what Mr. Chissick said during his deposition which would not be materially improved by looking at the transcript.

Q.      When you say that you had sufficient knowledge of what Mr. Chissick said during his deposition, what is the source of that knowledge?

A.      The source is that I was on the on-line link for the deposition.

Q.      So you participated --  sorry -- you observed the deposition of Mr. Chissick, is that correct?

A.      That's correct.

Page 51

MOKAL

Q.      Did you announce your attendance at that deposition?

A.      I logged in in the usual way and my name showed in the way that my name is showing now on my screen, although I did not turn on my camera.

Q.      Was there anything that was said during that deposition that changed or affected your analysis of any of the issues in your declaration?

A.      To the best of my recollection, it did not change anything in my analysis.

It certainly affected my analysis in a variety of ways, in particular by giving me a better understanding of what Mr. Chissick sought to say in his declarations.

Q.      Do you note anywhere in your declaration that you observed the deposition of Mr. Chissick?

A.      No.

Q.      Is there any reason why you do not note that in your declaration?

A.      I did not think that was

Page 52

MOKAL

necessary.

Q.      So you included with your declaration a list of exhibits and you also included cites to transcripts of other proceedings in this matter with quotes and cites there, but you did not think it was relevant or necessary to indicate that you had observed the deposition of Mr. Chissick?

A.      I did not think it was necessary, relevant.

Of course in the broader context of coming to an understanding of what Mr. Chissick intends to say in his declarations, I think that what he said in his deposition was relevant, but I was instructed to address the issues arising from his declarations and so I did not think it was necessary to refer to his deposition.

Q.      Looking a little further up at paragraph 2 of your declaration, you indicate in here that you've reviewed certain transcripts and orders from the

Page 53

MOKAL

BVI proceedings before Justices Mithani and Wallbank, and then throughout your declaration you also reference various opinions from cases in the BVI and United Kingdom.

Did you in fact review each of the documents that you reference in your declaration?

A.      I did.

Q.      On page 1, if you look at the footnote 2 here, you note that you had reviewed a draft order, and that was the draft as of 20th May 2026 that was still being discussed by the parties.

That was just an in-process version that you had reviewed, is that correct?

A.      That's correct.

Q.      Have you seen a subsequent version of that order since you signed your declaration?

A.      No.

Q.      You also note in footnote 1 that you reviewed a transcript of the May

Page 54

MOKAL

14th hearing before Justice Wallbank in the BVI, is that correct?

A.        That's correct.

Q.        And that transcript is something that you relied on in offering your opinions in this declaration?

A.        That's correct.

Q.        I think you quote from that transcript, that May 14th hearing, many times, is that correct?

A.        Well, I certainly quote from that; I would have to remind myself of whether it was many or whether it was once or twice.

MR. CROKE:  I am going to mark another exhibit here, this is the transcript from that hearing, I will put this up on the screen and make sure to get it over to the court reporter during the break.

(Mokal Exhibit 2, Transcript of a May 14th hearing, was marked for identification, as of this date.)

Q.        If you look at this hearing, do

Page 55

MOKAL

you see this on the screen?

A.      I do.

Q.      If you look at the top, this is 221 pages.

Do you looking at this here recognize this document?

A.      Not just looking at the first page, no.

Q.      If you scroll a little further down.

Do you recognize this document?

A.      Yes.

Q.      What is it?

A.      I believe this is the 14th May transcript of the hearing before Justice Wallbank.

Q.      Is this the transcript of the May 14th hearing that you reviewed?

A.      It looks the same, but I would have to look at it more carefully to make sure that this wasn't, for example, an approved version and I was looking at a nonapproved version.

Q.      One thing I am trying to make

Page 56

MOKAL

sure I understand, if we can go back just for a second to your declaration and if you go to paragraph 21 on page 7, what I am trying to understand here, you see in paragraph 21, in the second sentence here, you say "At the 14th May 2026 hearing before him, Wallbank J stated that 'while slightly different', 'the overall scheme' provided in the English and BVI statutes to govern provisional liquidation 'is very similar and the court can look at it (that is, at the English statutory scheme) for instruction'."

            Do you see that?

    A.      I do.

    Q.      And then there is a footnote 7 and if you look down at the bottom it says in the footnote "Wallbank judgment 28/9-13."

            Do you see that?

    A.      I do.

    Q.      If you go back to the transcript that we were just looking at, Exhibit 2 here, what I'm just trying to

Page 57

MOKAL

understand is the reference here in your declaration to 28/9-13, if you go to page 28 in the transcript of the May 14th hearing, I don't see that language at that location.

Do you see that there?

A.      I agree with you that the page that you're showing me doesn't show that language.

Q.      Do you know when you were in your declaration citing to, for example, page 28, whether you were looking at a different document than the transcript that we're looking at right now?

A.      You have me at a loss.

I set out what I was looking at or what I at least took to be looking at and the page that you're referring me to does not have that language.

Q.      Again, not trying to hide the ball on this at all, if you go to page 195 of the transcript here, if you look at the top paragraph, here you see there is what appears to be basically the exact language

Page 58

MOKAL

that you cite in your declaration, the
same reference to slightly different, the
overall scheme, et cetera, the language is
all there and quoted correctly in terms of
the words being there.

The thing I am trying to
understand is that in the transcript it's
on page 195, whereas the document you cite
it refers to 28/9-13.

Do you know why that might be?

A.       Yes, I do, I can resolve that
mystery.

I was looking at the initial
draft, the transcript of the judgment
itself.

The form in which I was
provided that transcript was a
self-standing document and that is what I
was referring to.

So what you have is a composite
of the entire day's proceeding, I do have
that, but I also have in addition the
excerpt which deals exclusively with
Mr. Wallbank's judgment and when I

26-10769-mg   Doc 77-2   Filed 06/05/26   Entered 06/05/26 16:53:44   Exhibit 2 -
Transcript of the Remote Deposition of Riz Mokal    Pg 60 of 991

Page 59

MOKAL

referred to the Wallbank judgment, the
page numbers are referring to the pages of
that document.

Q.        For the places where you're
referring to the Wallbank judgment in your
declaration, and you mentioned you were
referring to a version of the document
that was just the judgment, do you know
whether the version that you reviewed was
a rough transcript or the final
transcript?

A.        I believe I characterized my
understanding in the footnote that we
reviewed a few minutes ago.

I understand that it was an
unreviewed transcript which the judge has
not approved.

Beyond that I am not sure I can
assist.

Q.        I want to distinguish between
two things.

Recognizing that that
transcript may not have been reviewed and
approved by a court, I guess what I am

Page 60

MOKAL

getting at is, oftentimes when someone is recording testimony there's a rough draft, rough transcript, that is later followed by a final transcript that is corrected and different.

I am trying to understand whether you have an understanding of whether the version you reviewed was a rough transcript or the final transcript.

A.      I would have to look at the document again to remind myself.

Q.      If you will go to paragraph 8 of your declaration.

Do you see where it says, "The cases and materials referred to in this document are attached as Exhibit 1"?

A.      I do.

Q.      Did you compile the materials for Exhibit 1?

A.      I did compile those materials, yes.

Q.      When you compiled that, did you include within Exhibit 1 the version of the transcript that you were reviewing and

MOKAL

citing in your declaration?

A.        I think I should say that I was instructed that the materials which were common to the parties as arising from the BVI and/or U.S. proceedings need not be included in Exhibit 1.

So the cases and materials language in my paragraph 8 is too general, it should be more particular to refer to that limitation.

Q.        Just to unpack that and make sure I understand, are you saying that your instruction in compiling the materials that you included in Exhibit 1 was to include --  was not to include materials that were records from the court proceedings that your understanding was that all parties would have?

A.        Yes, that is my understanding, and also overlapping with this is the distinction that I would drew between the authorities on which I rely, which are legal material that I need in order to form a view as to the legal principles

Page 62

MOKAL

which I then apply, and the materials in this case.

So if we were compiling court documents, there would be an authorities bundle and there would be a hearing bundle, and Exhibit 1 in my mind, I was working with authorities bundle model, so it would be legally authoritative sources of law that I would review in order to form a view on the material which was going in the hearing bundle.

I accept that this is not clear on the face of paragraph 8.

Q.      What I am really trying to just get at is, in preparing your declaration, you reviewed and relied on and quote from a particular version of a transcript of Justice Wallbank's judgment, but you did not provide the particular document that you reviewed in Exhibit 1.

A.      That's correct.

Q.      Sitting here right now, do you know whether the version that you reviewed was in fact the final version of that

Page 63

MOKAL

transcript?

A.        I do not know.

Q.        Did you include in Exhibit 1 the version of the draft 20 May 2026 Wallbank order that you reference in your declaration?

A.        I did not for the same reason as before.

Q.        And that reason is because your understanding is that all parties would have that same document and know exactly what document you were referencing?

MR. BOYLE:   Objection.

A.        It was that, but more specifically I was instructed that it was unnecessary to include those documents in Exhibit 1.

Q.        Why would it be unnecessary to include the version of the document that you reviewed and relied on in Exhibit 1?

A.        As I've mentioned, it was, as I understand it, on the basis that this would be available to the parties.

Q.        Are you aware that Boies,

Page 64

MOKAL

Schiller in connection with materials they filed with the court included as an exhibit to one of their declarations a full version of the transcript of the May 14th hearing?

A.    I believe I've seen that, I have not reviewed that exhibit.

Q.    Do you know whether the version that was filed with the court is identical to the version that you reviewed in connection with preparing your declaration?

A.    I do not know.

Q.    Return to paragraph 52 of your declaration, if you look at the second sentence, do you see where it says, "He accepted that Section 171 of the Insolvency Act creates 'a very limited remit' calibrated to maintaining asset value and carrying out the functions for which the JPLs were appointed"?

A.    Yes, I see that.

Q.    Do you see that it then has reference to footnote 44 and in footnote

Page 65

MOKAL

44 it says "Wallbank Judgment 15/16-25"?

A.      I do.

Q.      I want to show you the next exhibit, we will mark this as Exhibit 3.

(Mokal Exhibit 3, Excerpt of transcript 5/14 hearing, was marked for identification, as of this date.)

Q.      I believe this may be the document that you mentioned that you reviewed, I am not sure, but I believe in the sense this is a version of the transcript that appears to be only the judgment.

Do you recognize this?

A.      It looks familiar, I can only see the first page, but I will take it from you.

Q.      If you go down to page 15, you see if you look on page 15 of the judgment, from lines 16 through 25, you see it starts, what it's basically saying is this is very much a limited remit to provisional liquidators and it continues on from there, do you see that?

Page 66

MOKAL

A.        I do.

Q.        In your declaration, when you cited to the Wallbank judgment on the point we just looked at, there was a reference to 15/16-25.

A.        Yes.

Q.        Is your understanding that that 15/16-25 is a reference to page 15, lines 16 through 25 of this document?

A.        It is, yes.

Q.        And the language that you quoted in paragraph 52, where you quote "a very limited remit," that language doesn't appear anywhere in this paragraph, is that correct?

A.        Yes, that is correct.

Q.        Do you know whether that's because you were looking at a different version of the document or whether it was a typo or something else?

A.        I can't choose between those possibilities, it could be any of those things.

Q.        Again, not trying to hide the

Page 67

MOKAL

ball on this, I'll represent to you that in the version of the transcript that your counsel filed with the court as the full transcript, and in this document here which we understand to be the rough transcript of the judgment, in neither one of those do we see the quote that you cite in your declaration, the quote "a very limited remit," so we're just trying to understand if that is because you were looking at a different version of the transcript that might have had that phrase in there, or if it was just a typo in preparing your declaration, or if there was something else.

Do you have any understanding as to what that might be?

A.        I am afraid I do not, as I sit here, I do not have an understanding.

Of course I have access to those documents and I can look at the documents if necessary.

Q.        Yeah, I mean, I would just request, make the request to your counsel

Page 68

MOKAL

that if there is any other version of this transcript or any other documents that you reviewed and relied on, we would ask that those be provided so that we're both having the same understanding as to what documents you reviewed and relied on in preparing your declaration.

MR. BOYLE:  The request is noted.

We have been going over an hour --

MR. CROKE:  I was just going to say that.

Why don't we take a short break.

THE VIDEO TECHNICIAN: This will be the end of Video Media Disk No. 1.

The time is 10:16 a.m. and we're going off the video record.

(Recess taken.)

THE VIDEO TECHNICIAN: Back on the video record, this is Video Media Disk No. 2, the time is 10:27 a.m.

Please proceed.

Page 69

MOKAL

BY MR. CROKE:

Q.        Dr. Mokal, I would like to turn back to your declaration, which is Exhibit 1, if you want to put that back up.

If you go up to paragraph 6, here in paragraph 6 you say, "Whether the facts alleged in the objection can be proved to be correct is a matter for the court.  Where and to the extent necessary for the purposes of this declaration, however, I assume that relevant such facts will be proved."

Do you see that?

A.        I do.

Q.        And you did not independently verify any of the facts alleged in the objection, correct?

A.        Correct.

Q.        You're aware --

MR. BOYLE:  You just have to wait a second.

Q.        You're aware Mr. Borelli is currently claiming to appear in this proceeding in his capacity as a director

Page 70

MOKAL

for 25 of the debtors, correct?

A.      Correct.

Q.      And you did not independently investigate whether Mr. Borelli was validly appointed as a director of any of the debtors, correct?

A.      Correct.

Q.      And you haven't reviewed the governing corporate documents of any of the debtors to determine the requirements to appoint a director, correct?

A.      Correct.

Q.      Have you reviewed any powers of attorney by which any purported attorneys in fact for Mr. Chen Zhi purport to have appointed Mr. Borelli as a director?

A.      No.

Q.      More broadly, have you reviewed any document that purports to grant any attorneys in fact for Mr. Chen Zhi the authority to take any action?

A.      No.

Q.      You're not offering any opinion that Mr. Borelli's appointment as a

Page 71

MOKAL

director is valid, correct?

A.    Correct.

Q.    And you're not offering any opinion that any persons who purportedly appointed Mr. Borelli in fact had the authority to do so, correct?

A.    Correct.

Q.    In your declaration, where you refer to Mr. Borelli as a director, you're simply assuming that to be the case based on the allegations in the objection, correct?

A.    Correct.

Q.    Do you know who is paying Mr. Borelli's fees in connection with this matter?

A.    No.

Q.    Have you reviewed any documents identifying the source of any funds used to pay Mr. Borelli?

MR. BOYLE:  Objection.

A.    No.

Q.    Do you know whether any of the funds used to pay Mr. Borelli's fees in

Page 72

MOKAL

connection with these matters are derived from assets of the debtors?

MR. BOYLE:   Objection, asked and answered.

A.      No.

Q.      Do you know who is directing Mr. Borelli's actions in connection with these proceedings?

MR. BOYLE:   Objection.

A.      No.

Q.      Do you know whether Chen Zhi is involved directly or indirectly in directing Mr. Borelli's actions in these proceedings?

A.      No.

Q.      Is that a no, that you don't know, or a no, that he is not?

A.      I don't know.

Q.      Do you know whether anyone from the Lee Law Firm in Hong Kong is involved directly or indirectly in directing Mr. Borelli's actions in these proceedings?

MR. BOYLE:   Objection.

Page 73

MOKAL

A.      No.

Q.      That's no, that you don't know?

A.      Correct.

Q.      Do you know whether any person sanctioned by any government entity is involved directly or indirectly in directing Mr. Borelli's actions in these proceedings?

MR. BOYLE:  Objection.

A.      I do not know.

Q.      Have you asked anyone any of these questions?

A.      No.

Q.      I want to turn back to paragraph 26 of your declaration.

Here in your declaration, just at a very high level for a second, in your declaration you set out what you describe as principles relevant to the interpretation of the Mithani order and Wallbank draft order, is that correct?

A.      Correct.

Q.      In paragraph 26 you explain that "The construction of a court order is

Page 74

MOKAL

a unitary process in which it is asked what the language of the order would convey in light of the objective circumstances in which the order was made, any reasons given by the court when making the order are admissible as an aid to making an interpretation," do you see that?

A.    I do.

Q.    Can you explain a little bit further what you mean by that.

A.    Yes.

Each of the principles I set out are principles in the sense that they weigh the interpretive exercise in one or other direction, in favor of or against a particular interpretation, without any being conclusive.

In abstract, of course, on the facts, the court will make determination based on its assessment of the balance of all of the relevant principles in play.

And the first principle here is the principle that you look at the

Page 75

MOKAL

language purposely and you do that in
light of the objective circumstances in
which the language was used, and in
particular you look at it in light of the
judge's reasons for making that order.

Q.      Just to try to see if I'm
understanding it, is the underlying point
that you're getting at there that when you
are interpreting the language of an order,
it is relevant to look at the surrounding
reasons that the court provided in
connection with the discussion leading up
to the order as an interpretive tool?

A.      That's correct.

Q.      Go back to the May 14th hearing
transcript, I think it was Exhibit 3 that
we looked at.

If you go to page 201 of this,
starting in the middle, in the course of
delivering the judgment here do you see
where Justice Wallbank is walking through
the different powers of the JPLs and says
"And the third one is to seek the
recognition or its equivalent of their

Page 76

MOKAL

appointment in the U.S., U.K., Singapore, Hong Kong, Taiwan, Thailand, Cambodia, or anywhere else, for the purposes of securing, realizing and remitting assets to the control and for the purpose of obtaining access to and control of the records of the company."

Do you see that?

A.      I see that.

Q.      And then Justice Wallbank goes on to say, "So they are again given express power to seek recognition.  It's obvious why.  They need to get recognized elsewhere so they can exercise the powers they have been given."

Do you see that?

A.      I do see that.

Q.      And then if you go on to the next page, after continuing to list different powers of the JPLs at the top here, the paragraph, the next paragraph Justice Wallbank continues, "So they can do an enormous amount of things.  Those are big powers which they have been given.

Page 77

MOKAL

It has obviously been said that paragraph 9 cuts these powers down only to the affairs of the company in the BVI and the assets in the BVI.  While frankly that is a most unattractive proposition and it could only possibly be seen as coming from somebody who doesn't really deal with BVI companies on a regular basis, I can understand that it might be said that a company in England might have such narrowness attached to it with the powers, et cetera, but BVI companies are almost invariably used for holding assets which do things abroad and which operate abroad. We do not have widget factories here in the BVI, they are all somewhere else" --

A.        Apologize for interrupting, could your colleague go up the page.

Q.        Sure.

To continue the quote, "We do not have widget factories here in the BVI, they are all somewhere else.  So saying that the JPLs' powers are only limited to the affairs of the company within the

Page 78

MOKAL

jurisdiction of the BVI is to constrain the powers of the JPLs to the top of a pin.  It makes no sense.  It is an insanitary interpretation of this court's order."

Do you see that?

A.      I see that.

Q.      So here Justice Wallbank is laying out what seems to be a pretty clear view about the broad scope of the powers of the JPLs, do you agree with that?

MR. BOYLE:  Objection.

A.      I'm not sure what Justice Wallbank is doing in these paragraphs that you've read out.

Q.      Do you agree this suggests that Justice Wallbank is laying out a broad view of the JPLs' powers?

A.      Well, as I understand it, he is seeking to explain paragraph 9 of the Mithani order and my difficulty in making sense of the passages that we have just -- that you have read and we have gone through together is that these passages

MOKAL

don't have any relevant material relation to paragraph 9 of Justice Mithani's order.

Q.      Why is that?

A.      I'm having difficulty in making sense of what his Lordship may have had in mind.

Q.      Very specifically, where he is addressing the fact that to suggest that the JPLs' powers are only limited to the affairs of the company within the jurisdiction of the BVI is to constrain the powers of the JPLs to the top of a pin, it makes no sense, do you agree that that is an indication that Justice Wallbank is suggesting that the JPLs' powers are not in fact constrained to the jurisdiction of the BVI?

A.      Let me apply the principle that you drew to my attention, the first principle that I've set out for construitive orders.

The principle is that you look at the language purposefully in interpreting the order; the purpose is not

Page 80

MOKAL

a substitute to the language, it is an aid to understanding what the language is intended to provide.

And my difficulty here is that these statements by his Lordship do not bear material relation, in fact they are not what paragraph 9 is about.

So I cannot make sense of these paragraphs and, with great respect, with these passages in mind, that I provided that footnote at the beginning of my declaration, it is passages such as these that his Lordship might wish to reconsider were he able to look at the transcript with a view to approving the judgment.

So I cannot make sense of those paragraphs which are intended to explain the purpose of paragraph 9 of the Mithani order, but which in fact have no material relation to the language of paragraph 9 of the Mithani order.

Q.    I want to continue to look at this.

Again, starting from the middle

Page 81

MOKAL

of page 203, where Justice Wallbank says, "And we have to come back to the whole point, and this is really what it all comes down to.  The whole point of the JPL's order is to take powers away from the directors of these companies.  That is the whole point.  It is not an incidental accident of the power.  It is not some interesting ancillary effect of some pleasant complicated order which transfers the management of the company from one sensible person to another, no, this is asymmetric warfare, to be blunt about it, it is to rip these companies away from those directors and give them into the hands of JPLs so those directors cannot harm those companies anymore and we make no bones about it and we make no apology for it either, that's the lens through which this has to be looked."

Do you see that?

A.     I do.

Q.     And do you agree that here, again, Justice Wallbank is making clear

Page 82

MOKAL

his view of the breadth of the JPL orders

and the purpose of those orders?

A.        Well, I notice a couple of

things here.

He is talking about taking

powers away from the directors of these

companies.

I would note, because this

would be relevant to my analysis of this

language, that he's not saying each and

every power, he's saying to take powers

away from the directors of these

companies, I would take that to be with

respect quite correct and I would say

uncontroversial.

He is saying that is the whole

point; I'm not sure that his Lordship upon

consideration would wish to stand by this

sentence read literally, because, in my

view, respectfully, taking certain powers

away from the directors of the company was

not the whole point of the order.

The next sentence, "It is not

an incidental accident of the power,"

Page 83

MOKAL

making space for the infelicity of an extempory judgment and reading this in its strongest form, I take his Lordship to be intending to say that that is a core reason why the order -- Justice Mithani made the order that he did on the 9th of January, I think that is with respect uncontroversial and uncontroversially right.

"It is not some interesting ancillary effect of some pleasant complicated order which transfers the management of the company from one sensible person to another"; I take that sentence as it is written and, subject to observations on the previous sentences, I think that is correct.

"His Lordship says this is assymetric warfare, to be blunt about it, it is to rip these companies away from those directors and give them to the hands of the JPLs so those directors cannot harm those companies anymore"; again, in my respectful view, given that the AG in her

Page 84

MOKAL

submissions was not primarily alleging that the reason she was seeking the provisional liquidation orders, and indeed the liquidation orders, was that the companies were being harmed and had to be ripped away from the directors.

This is a sentence which in my respectful view his Lordship might wish to reconsider were he to review the transcript.

And then his lordship says, "We make no bones about it, we make no apology for it either, that's the lens through which this has to be looked at," I respectfully read that sentence and it is what it is.

Q.      Continuing on, if you go to the top of the next page, 204, he continues that "You have to read Section 171 together with 175, you have to see where it says the JPL has the powers of a liquidator, you have to look at what the powers of the liquidator are, which are to be found in 175, with its little cut-out

**Page 85**

MOKAL

for the remaining residuary powers of the

directors.  Well, that's precisely it,

isn't it, you have to read the two

together, and the lens is that what you've

got is you've got powers being given to

the JPLs by this court order.  They can't

necessarily use those powers because

something else might need to happen, but

they've got those powers and they have

those powers to the exclusion of the

directors.  The directors retain the

residuary powers to challenge the very

juridical basis for the appointment order

itself and no more."

    Do you see that?

A.    I see that.

Q.    And so, again, this is where

Justice Wallbank is laying out what seems

to be a pretty broad view of the power

given to the JPLs for the appointment

order and a relatively narrow view of the

remaining residuary powers of the

directors, is that fair?

A.    It's not quite right, Mr.

Page 86

MOKAL

Croke, if I may say so.

I would repeat what I said before, that this is his Lordship's judgment, this was on the terms of the orders.

We have to look at which provisions within the order his Lordship may have in mind and we in particular have to look at the statutory provisions that he refers to, Sections 171 together with 175.

And, again, what he says here is an aid to understanding how his Lordship interprets those sections, of course it is not a substitute to looking at what the sections themselves say.

So in order to make sense of what his Lordship has in mind here, I would want to look at the terms of sections 171 and 175.

Q.     Are you familiar with Sections 171 and 175 of the BVI Insolvency Act?

A.     I am.

Q.     We'll come to that in a minute.

Page 87

MOKAL

Where Justice Wallbank is saying that "There are powers being given to the JPLs by this court order, they can't necessarily use those powers because something else might need to happen, but they've got the powers," do you understand what that's a reference to?

A.    It could be any of a number of things.

Most broadly it seems to be referring to certain contingencies which would have to materialize in order for the JPLs to be able to use certain of the powers that they have been conferred.

Q.    What are the powers of a liquidator on the BVI Insolvency Act?

A.    The powers of the liquidator are the powers that are conferred on the liquidator by the act, and in particular, the powers set out in Schedule 2 to the act.

They would exercise those powers subject to the directions given by the court.

26-10769-mg    Doc 77-2    Filed 06/05/26    Entered 06/05/26 16:53:44    Exhibit 2 -
Transcript of the Remote Deposition of Riz Mokal    Pg 89 of 991

Page 88

MOKAL

Q.        Do the powers of a liquidator include the power to sell assets?

A.        The powers of a full liquidator include the powers to sell assets.

Q.        And is that a power that is not given to a provisional liquidator?

A.        It is not a yes or no answer.

The powers of the JPLs, there is no set template for the powers that JPLs must be given or must necessarily have.

You have to look at the court order pursuant to which they were appointed and by which they are empowered and you would have to look at what powers the order confers upon them and that is exactly the exercise that I've sought to undertake in the declaration.

Q.        Where he is referring to the fact that there are powers that are given to the JPLs, that something else might need to happen for them to use those powers, is your understanding that that's a reference to the mechanism by which

26-10769-mg    Doc 77-2    Filed 06/05/26    Entered 06/05/26 16:53:44    Exhibit 2 -
Transcript of the Remote Deposition of Riz Mokal    Pg 90 of 991

Page 89

MOKAL

powers are granted to the JPLs and then the JPLs need to seek sanction of the court in order to exercise those powers?

A.        That's one type of contingency which may have to materialize in relation to the propriety of the exercise of such powers.

Q.        In that situation, where there is a power of a liquidator that is granted to the JPLs, but the JPLs need to seek sanction from the court in order to exercise that power, do you agree that that power is a power that has been given to the JPLs to the exclusion of the directors?

A.        It's difficult to say in the abstract, so perhaps you can make this more specific.

Q.        We'll look at one of the appointment orders.

MR. CROKE:  This will be Exhibit 4.

(Mokal Exhibit 4, appointment order, was marked for identification, as

Page 90

MOKAL

of this date.)

Q.        I am not trying to quiz you on which one you reviewed, there's 30 I will represent that are substantively identical, but you have reviewed certain of the appointment orders in this matter, is that correct?

A.        That's correct.

Q.        If you scroll down, you will see that paragraph 2 says, "The joint provisional liquidators have the rights and powers of a liquidator to the extent necessary to maintain the value of the assets owned by the company and to carry out the functions for which they are appointed."

          Do you see that?

A.        I do.

Q.        And then in paragraph 3 it says, "In addition to the powers outlined in 2 above, the joint provisional liquidators shall have the following specific powers which may be exercised without further sanction or intervention

Page 91

MOKAL

of this honorable court."

Do you see that?

A.      I see that.

Q.      It continues on in 3(a), (b), through there, through (o), I believe, and those are the specific powers that are given to the JPLs in addition to the general powers in Section 2, and that do not need sanction of the court to exercise, is that correct?

A.      That's correct.

Q.      And then if you look further down, it is paragraph 10, scroll down -- sorry, start with paragraph 9, it says, "The powers set out in paragraph 3 above are to the exclusion of any power exercised or purported to be exercised by any existing director of the company insofar as such power concerns the affairs of the company and its assets within the jurisdiction of the Virgin Islands."

Do you see that?

A.      I see that.

Q.      So is it your understanding

Page 92

MOKAL

that taking together paragraph 3 and paragraph 9, that means that to the extent that there is a power given to the joint provisional liquidators in paragraph 3, and to the extent that power concerns the affairs of the company and its assets within the jurisdiction of the Virgin Islands, that power is given to the JPLs and is excluded from the powers of the directors of the company?

A.        Insofar as it goes, that's just the outcome of putting those two paragraphs together.

But I would want to read those two paragraphs in the context of the order as a whole for the reason I set out, the second interpretive principle, and I would want to look at whether in particular they were limitations as to the extent and the purposes for which the powers may properly be used.

Q.        I guess I am asking a more specific question.

I am saying, to the extent that

Page 93

MOKAL

there is a power that is given to the joint provisional liquidators in paragraph 3, and to the extent that that power concerns the affairs of the company and its assets within the jurisdiction of the Virgin Islands, do you agree that paragraph 9 makes clear that that power given to the JPLs is to the exclusion of that power as to any of the directors of the company?

        A.      Subject to the proviso I mentioned before, and understanding what you said in its strongest form, that is to say, properly construed in the context, and reading those two paragraphs together, subject to those provisos, yes, I agree with you.

        Q.      And then in paragraph 10 it says, "Save as provided in paragraph 3 above, the joint provisional liquidators may not exercise any of the powers set out in Schedule 2 to the Insolvency Act 2003 without sanction of the court."

                Do you see that?

Page 94

MOKAL

A.      I see that.

Q.      Is your understanding that that is what is being referenced in Justice Wallbank's transcript where he refers to powers that are given to the directors, but that they may not be able to exercise without further steps?

A.      This certainly falls within the interpretation that I made and explained to you of those comments.

Q.      Again, a broader conceptual point to make sure we're saying the same thing.

You agree that there are powers that are given to the JPLs, but that the JPLs need to seek court sanction in order to exercise, is that correct?

A.      I would put it this way; it's correct subject to knowing that it's improper for the JPLs to exercise those powers without getting the court's sanction certainly in general, subject to exceptions.

Q.      Is your understanding of what

Page 95

MOKAL

paragraph 10 provides here that the joint provisional liquidators have the powers that are set out in Schedule 2 to the Insolvency Act 2003, but that they may not exercise those powers without sanction of the court?

A.        That is correct, subject to the same provisos before, which is that if they seek to exercise those powers, they act improperly in general, yes, that is correct.

Q.        Can you just explain what you mean by that, if they seek to exercise those powers, they act improperly in general.

A.        The general principle is as follows; in order to properly exercise those powers they need to get the authorization, the sanction of the BVI court.

There are exceptions to this principle, but that is the general principle, and so it would be wrong legally for them as a general matter to

Page 96

MOKAL

seek to exercise those powers without getting sanction of the court.

Perhaps I can explain it in the following terms; take the example of an agent and the agent has authority, ostensible authority, to bind the principal, that is, affect the principal's legal rights and obligations as against a third party.

So the agent has that power to change the legal status of the principal, but as between the principal and the agent, the agent is required to seek further consent of the principal and so even though it is the case that the agent can bind the principal as against a third-party, as against the principal the agent would be acting wrongly, unlawfully, if the agent acts without the principal's consent in circumstances where that consent were required.

Case law suggests that that's a fairly close analogy of the sorts of things we're discussing in paragraph 10.

Page 97

MOKAL

Q.      I want to try to break it down a little bit to be really precise on this.

There's the concept of who has the power and then there is the concept of how can that power be exercised, is that fair?

A.      That's fair.

Q.      And so what we talked about, for example, in paragraph 3, there are powers in paragraph 3 where those powers are given to the JPLs and where the JPLs have the authority to exercise those powers, is that correct?

A.      That's correct.

Q.      And paragraph 10, if I am understanding it correctly, is saying that the powers that are set out at Schedule 2 to the Insolvency Act are given to the JPLs, but the JPLs need to have sanction of the court in order to exercise those powers, is that correct?

A.      Yes, they act improperly if they exercise --

MR. BOYLE:  Objection.

Page 98

MOKAL

THE WITNESS:  Sorry.

Q.     You can finish.

A.     They --  if they seek to exercise those powers without sanction of the court, they act improperly, yes.

Subject to that clarification, I would accept what you said.

Q.     Is it your understanding that sanction of the court must always be sought in advance of exercising any of the Schedule 2 powers?

A.     That's the distinction between the general position and exceptions that I averted to a minute ago.

The general position is that if and to the extent done, it is practicable for the JPLs to obtain sanction ex ante, seek, and if the court is so mind to obtain sanction ex ante, it would be improper for them not to do so and to exercise those powers without seeking sanction.

The exception is that in some circumstances, given the nature of the

Page 99

MOKAL

assets, given other contingencies, that it would simply not be practicable for them to seek sanction ex ante, in which case there is an exceptional power that the court retains to consider any application for retroactive sanction of an exercise which has already occurred.

The reality once again is the one that I mentioned, that it is open to the principal, ex ante, to ratify what the agent has done even though, when it was done, it was wrong as against the principal.

Q.        Thank you, that's helpful.

Just to sort of talk through one example of that.

As an example of a situation where there may be a specific reason why a JPL may need to take actions that are not expressly authorized and then seek sanction after, just to use a hypothetical, if the JPL for a company discovered that the company has a shipment of bananas that are going to spoil in

Page 100

MOKAL

three days and if the JPL knows that if they were to try to go through the process of seeking court approval to sell those bananas, by the time that is completed the bananas would have spoiled, so the JPL makes the decision to sell the bananas and then seek sanction from the court after that is completed, is that an example of a situation like the ones you mentioned where you might take an action that is not specifically, you know, this one is Schedule 2, things where you do not have the ability to do it with sanction of the court and then after the fact seek sanction of the court?

A.        Yes, that's the perishable sanctions example.

Q.        I think you made this point, but just to make sure I have it clear.

To the extent that there is a Schedule 2 power --  withdrawn.

Go back to paragraph 62.1 of your declaration.

(Witness complying.)

Page 101

MOKAL

Q.      Do you see that?

A.      I do.

Q.      In the second sentence here you say, "The Wallbank draft order at para 2(c) reproduces this language and confirms that the directors cannot interfere with the JPLs' exercise of this power."

Do you see that?

A.      I do.

Q.      For context, I will restate that and read the rest of the paragraph.

You say "Paragraph 3(c) authorizes recognition 'for the purposes of securing, realizing and remitting assets to the control of the JPLs and for the purpose of obtaining access to and control of the records of the company'. The Wallbank draft order at para 2(c) reproduces this language and confirms that the directors cannot interfere with the JPLs' exercise of this power."

Do you see that?

A.      I do see that.

Q.      I think we already looked at

Page 102

MOKAL

that paragraph toward the beginning of today and you indicated that you agreed with the framing that you had in that paragraph and there wasn't anything you would change there, is that right?

A.        That's correct.

Q.        If we look at the May 14th hearing transcript, starting line 13, Justice Wallbank says, "The directors retain the residuary powers to challenge the very juridical basis for the appointment order itself and no more. Now, what they can do is those directors can apply to this court and they might say, no, no, no, no, the recognition power is too broad for such and such a reason. This court must vary its order.  This court must say that recognition should not be granted in such and such a case or whatever.  But what they can't do is to say we're going to oppose this in the U.S..  We don't, because they don't have the power to do it.  They've got the power to come here and persuade this court to

Page 103

MOKAL

vary its order, but that is it.  They don't have a residuary power to go and obstruct, obstruct, obstruct, obstruct."

Do you see that?

A.       I see that.

Q.       And your understanding, is your understanding of that that Justice Wallbank is making the point that the power to seek recognition as set out in paragraph 3(c) is given to the JPLs and that the directors' residuary power is limited to challenging the basis for the appointment order and seeking to vary the order in the U.S., but that they are not permitted to oppose the recognition in the U.S.?

MR. BOYLE:  Objection.

A.       That's not quite right, because here his Lordship is speaking in shorthand when he talks about the directors in much the same way that we talked about at the very beginning in terms of my understanding of my initial instructions.

His Lordship here is not

**Page 104**

MOKAL

distinguishing between what paragraph 3(c)
is doing.

And of course there are two
ways in which the directors might oppose
the recognition of the JPLs in the U.S.,
they may do that by acting through the
companies, by causing the companies to act
to oppose, or they may do that in their
own capacity as directors.

My understanding of paragraph
3(c) is about the directors causing the
companies to oppose and that paragraph
doesn't say anything about the directors
themselves seeking to oppose and I believe
that his Lordship makes that point
elsewhere in his judgment and I would read
these passages in that light.

Q.      When you say that there are two
ways that a director can oppose this,
there's causing the companies to appear
and then appearing in their own individual
capacity, are you making a statement of
your understanding of BVI law?

A.      I am.

Page 105

MOKAL

Q.        And your understanding is that BVI law provides that there are two ways that a director could do this and that's either causing the company to do it or appearing in their individual capacity?

A.        Correct.

Q.        What is the source of your understanding that that's what BVI law provides for?

A.        The source of my understanding is that in this respect, as in other relevant respects, BVI would follow English law, and the English Court of Appeal in a judgment given last year, and only reported a few weeks ago, judgment called Vesnan, provides as much.

It is common-law power to oppose the recognition in England, and of course if you're talking about England, of a foreign insolvency proceeding.

And by application to BVI, it would be the directors' power in the BVI to oppose the recognition of a foreign insolvency proceeding in their own

Page 106

MOKAL

capacity as well as or instead of by causing the company to oppose it.

That's my understanding.

Q.    Just to be clear, are you offering in this proceeding an opinion that, under BVI law, that directors have that separate authority to oppose recognition?

MR. BOYLE:  Objection.

A.    I'm not sure what you mean when you say offering an opinion.

Could you please say a bit more about that.

Q.    Sure.

You have your declaration that sets out the opinions you're offering here.

I am asking you, are you setting out in your declaration that specific opinion, that there are two ways in which a director could act to oppose recognition, one, causing the companies to do so, and, two, acting in their own individual capacity, is that an opinion

Page 107

MOKAL

that you're offering in this matter?

MR. BOYLE:  Objection.

Did you say in his declaration?

MR. CROKE:  Yes.

Q.      Is that an opinion that you offer in your declaration?

A.      No, it's not a matter that I address in my declaration, but it is a matter which you asked me a question about in relation to what Mr. Justice Wallbank may have in mind in the passages you put to me and I'm seeking to do my best to assist you in answering the question.

Q.      Is there a reason you did not address that issue in your declaration?

A.      The primary reason is that I was not instructed to address that question in my declaration.

Q.      Do you know whether U.S. law provides that directors of companies have that same authority to act in the way you've just described that you say is permitted under BVI law?

A.      Mr. Croke, I have no opinion

Page 108

MOKAL

about U.S. law.

Q.        You understand in his objection, Mr. Borelli argues that recognition in these Chapter 15 proceedings will impair his ability to run the companies, correct?

A.        Yes.

Q.        Do you agree that the ability to run a company is a corporate power?

MR. BOYLE:  Objection.

A.        Could you say a bit more about the way in which you're using corporate power, it is not a term of art with which I'm familiar.

Q.        Sure.

What I am trying to get at is, are you offering an opinion under BVI law that Mr. Borelli's ability to run the companies would be impaired by recognition of these proceedings?

A.        Let me just think about your question, I don't want to say something which may be unhelpful.

MR. BOYLE:  Can you clarify,

Page 109

MOKAL

same question as before, are you asking about his declaration or his testimony today?

MR. CROKE:  We can do it in two parts.

Q.       Is there anything in your declaration that is offering the opinion that recognition of these Chapter 15 proceedings will impair Mr. Borelli's ability to run the companies?

A.       No, I do not address that question in the declaration.

Q.       Is it your opinion that, as a matter of BVI law, recognition of these Chapter 15 proceedings will impair Mr. Borelli's ability to run the companies?

A.       I'm not sure, that's a legal question rather than a practical question, a question of fact.

But in any case, I have not considered that precise question.

Q.       You mentioned that your view is that directors can object to recognition

Page 110

MOKAL

on these two bases and that the order here precluded the directors objecting on behalf of the companies.

I just want to be clear; is it your view that the order here, the impairment or limitation being placed on that authority, is only the limitation on acting on behalf of the company?

A.      Which particular provision are you talking about in the order?

Q.      The more general point where we're discussing the hearing in which the court said essentially, I think the exact quote was, "The directors retain the residuary powers to challenge the very juridical basis for the appointment order itself and no more, and what they can't do," going on, "is to say we're going to oppose this in the U.S."

When the court is making that point, is it your opinion that that limitation applies only to the directors when they're acting in their capacity on behalf of the company essentially?

Page 111

MOKAL

A.      I'd have to read these passages in the full context of the judgment.

But if and insofar as these passages are intended to explain the provisions in the Mithani order as to the JPLs' power to seek recognition in the U.S., and the impairment of the directors' power to interfere in that respect, I would read that as limited to the directors causing the companies to oppose and saying nothing about the directors in their own right opposing.

Q.      In the objection, when Mr. Borelli asserts that Chapter 15 recognition would impair his ability to run the companies, do you have an understanding of whether under BVI law that impairment is an impairment of the company or an impairment of Mr. Borelli?

A.      Mr. Croke, I'd have to look at this properly in light of case law, I haven't researched this point.

I believe this is another aspect of the question that you put to me

Page 112

MOKAL

a few minutes ago and I said that I would need to look this up, I haven't looked at this.

Q.      Maybe an easier way to do this is step back to the broader principle.

If a director's ability to run a company is impaired, is that a harm that is falling on the director individually or is that a harm that is falling on the company?

A.      I can envisage circumstances where it would be one, the other, or both.

Q.      If we turn back to paragraph 52, I think we looked at this language earlier, do you see this, the paragraph starts "The conservatory character of the JPLs' role and of the purpose for which the BVI court has conferred powers on them is confirmed by Wallbank J himself.  He accepted that Section 171 of the Insolvency Act creates 'a very limited remit' calibrated to maintaining asset value and carrying out the functions for which the JPLs were appointed."

Page 113

MOKAL

Do you see that?

A.       I see that.

Q.       I'm not asking you about the exact language of the very limited remit versus the other language we looked at, but I do want to go back to the transcript here, if we can pull that up.

(Pause.)

MR. CROKE:  It is on 182, I think.

Q.       I think, as we discussed earlier, this is the passage that I think that piece of your declaration is referencing in the judgment, is that correct?

A.       That's correct, yes.

Q.       If you just look at what this paragraph says, again, just starting with paragraph 8, it says, you know, so what it's basically saying is this is very much a limited remit to provisional liquidators and the remit is essentially --

THE COURT REPORTER:  Slow down, please.

MOKAL

Q.          What it's basically saying is that "This is very much a limited remit to provisional liquidators and the remit is essentially limited to the powers that the court vests in the provisional liquidator by the appointment order and that it is only on a very narrow basis that those powers are for the maintenance of the value of the assets owned or managed by the company and to carry out the functions for which he was appointed, in other words, as designated by the court order," do you see that?

A.          I do.

Q.          The next sentence, he continues on, "So he is saying it's very much more limited and the corollary of that is, and it's important for his analysis, is the directors retain all of the powers.  So in his view the directors retain more powers than just appealing a JPL appointment order or challenging it or varying it, but they can carry on doing a lot of things in the name of the company."

Page 115

MOKAL

Do you see that?

A.      I do.

Q.      And then that paragraph continues on, and it ends at the top of the next page, after describing it further, it says, "That's his case."

Do you see that?

A.      I do.

Q.      When you look at it in context, this portion of the opinion, this is not Justice Wallbank laying out his conclusions, this is Justice Wallbank describing and summarizing the arguments that are being made by Mr. Gledhill, is that correct?

A.      He's doing both and he does this repeatedly in this judgment and this is one of the hazards of reading an extant prejudgment.

In the two paragraphs that you've put to me, I understand him to be making his way through subsequent or successive submissions made by Mr. Gledhill and he is commenting on those

Page 116

MOKAL

submissions as he goes along, accepting some, qualifying others, and coming to reject yet others.

He does that with all submissions as he goes through them and he's doing it here as well.

And I recall that he says at some point, maybe at the end of this page or top of the next page, he says "very persuasive point," but I think he's talking about a composite of the various submissions that Mr. Gledhill has made, and then he goes on to reject some, but doesn't others.

And reading the judgment as a whole, he never resides from the passages that I cite, namely he never resides from the fact that the provisional liquidators remit is essentially limited and it is a conservatory one.

Q.        I just want to make sure I'm clearly and fairly describing it.

Where the court refers to Mr. Gledhill's argument and says that he

Page 117

MOKAL

is saying that this is very much a limited
remit and it is essentially limited to the
powers vested in the provisional
liquidator, and he goes on to explain that
the powers do not go --  the directors
retain more powers than just appealing or
challenging it, they can carry on doing a
lot of things, and then he later goes on
to reject that proposition, are you saying
that it is a fair characterization of
Justice Wallbank's opinion to say that he
adopted and is agreeing with the statement
that it is very much a limited remit?

MR. BOYLE:  Objection, asked
and answered.

A.      Mr. Croke, page 183 that you
have in front of you, if you look at the
bottom, he says "that is a very powerful
and persuasive argument which Mr. Gledhill
advanced."

If you look at the previous two
or three paragraphs, he is in fact
summarizing separate and distinct
arguments that Mr. Gledhill advanced, and

Page 118

MOKAL

that's clear if you look at Mr. Gledhill's argument, if you look at the submissions, the transcript of the hearing itself, this is a composite statement and it's not -- when he says that is a very powerful and persuasive argument, I'm seeking to make sense of which bits of the three paragraphs, the three preceding paragraphs, he is approving when he says it is not very powerful but persuasive, and which bits he is rejecting.

Because he clearly rejects some and he clearly holds with others.

And the paragraph that we have read together, to which I refer in my declaration, namely the essential defining character of the provisional liquidation, nothing in the judgment, as I read it, has Justice Wallbank residing from or even casting doubt on that essential conservatory character.

Q.     What I am trying to understand -- I see where you're saying he says this is a very powerful and

Page 119

MOKAL

persuasive argument which Mr. Gledhill advanced and he continues on to explain how Mr. Gibbon described this as a seductive primrose path which he said was wrong and then Justice Wallbank walks through pages of his analysis and discussion of the things that he characterizes as being inconsistent with the sort of framework that Mr. Gledhill advanced -- what I am trying to understand is, when you look at this in context, are you taking the position that it is a fair characterization of Justice Wallbank's opinion to say that on page 182, when he refers to this being very much a limited remit to provisional liquidators, that that is fairly characterized as what his opinion is?

A.      Yes, I am saying that he is analyzing several different arguments made by Mr. Gledhill, which are successive arguments, where subsequent arguments build on previous ones, and Justice Wallbank, as he does repeatedly through

Page 120

MOKAL

the rest of the judgment in relation to other counsel, he assesses them, he agrees with some, he doesn't agree with others, and in one respect, in particular the respect that concerns paragraph 9 of the Mithani order, which we've discussed, he takes issue with what he understands, and I emphasize that, what he understands to be Mr. Gledhill's submission.

I've told you that I find it difficult to reconcile, to understand as expressed in his judgment with what Mr. Gledhill appears to have submitted and certainly with paragraph 9 of the Mithani order.

So there are several things going on in these paragraphs and the passage that I rely on, which is the passage that we read together, which sets out essentially limited remit of the powers vested in the provisional liquidators by the appointment order, and the narrow purpose, he says, the narrow purposes for which those powers may

Page 121

MOKAL

properly be exercised, I think that is the right reading of these passages.

You have to read them in context, you have to see what he's doing in relation to the other submissions, you have to read them against the transcript of the hearing and submissions which were in fact made and the submissions which you find and he would have read in the documents.

Reading those things together, I think that is the correct reading of this passage.

Q.      Turn to paragraph 34 of your declaration.

If you look in the second sentence, you say, after you explain, you describe the heading, --  I will just read it.

"Section 170 to 174 of the Insolvency Act 2003, which govern provisional liquidation, appear under the heading 'Interim Relief' in Part VI (liquidation).  That heading is an aid to

Page 122

MOKAL

the construction of the provisions that
follow it."

Do you see that?

A.      I do.

Q.      Again, just at a high level,
the point that you're making here is when
you're looking at the provisions of the
Insolvency Act, the heading itself is an
aid to understanding what the purpose of
those provisions are, is that fair?

A.      Yes, yes, it is not
determinative, but it is an aid, yes.

MR. CROKE:  I want to mark now
what I think is Exhibit 5.

(Mokal Exhibit 5, Insolvency
Act, was marked for identification, as of
this date.)

MR. CROKE:  It is the
Insolvency Act.

Q.      Recognizing that this is 283
pages, looking at the first page, do you
recognize this document?

A.      It looks like the slightly old
version of the Insolvency Act.

Page 123

MOKAL

Q.        When you say slightly old, is it because it's been amended since this one?

A.        I believe there was relevant set of amendments in 2022.

So I don't know whether this incorporates that; if you go to the next page, it would frequently show whether there was such -- whether this is a consolidated act which incorporates those amendments or not.

Q.        If you go down to page 9, do you see where it says at the top Part VI?

A.        I do.

Q.        I believe this is still the current version, but we will double-check that and make sure that it is just so there is no confusion.

This is what you were referring to before when you say for interim relief, Sections 170 through 174, they are under a heading that says "Interim Relief," right?

A.        Yes.

Q.        And the point that you were

Page 124

MOKAL

making, I think we just discussed, is when you're looking at Sections 170 through 174, as you're interpreting it you understand it is underneath the heading interim relief and that is an aid to construction?

A.      Yes, it is an aid to construction.

Q.      And that subheading of interim relief is itself within a broader heading that is Part VI, where the heading is liquidation, correct?

A.      That's correct.

Q.      This Part VI itself is part of an act that is called the Insolvency Act, is that correct?

A.      That's correct.

Q.      And so you would agree that BVI joint provisional liquidation proceeding that involves interim relief is a proceeding under a law related to insolvency, is that correct?

MR. BOYLE:  Objection.

A.      That's not correct.

Page 125

MOKAL

Q.      Can you explain why.

A.      Because solvent companies are also wound up subject to the Insolvency Act.

Q.      And is that also being wound up under Part V that refers to liquidation?

A.      Yes.

Q.      And so do you agree that a case proceeding under this Part V is a case that is proceeding for the purpose of liquidation?

A.      Part V --  do you mean Part VI?

Q.      Yes.

A.      Part VI covers several different things, so we would have to look at specific provisions to see whether something was proceeding for the purpose of liquidation.

An obvious reason for doing that is provisional liquidation itself, because, as we know, it is not the case that provisional liquidation necessarily ends in liquidation.

So quite obviously, the fact

Page 126

MOKAL

the court has made a provisional liquidation order does not necessarily in law mean that the only possible outcome can be that the court will eventually make the liquidation order.

That's an obvious reason for rejecting the proposition that you put to me for consideration, that everything in Part VI, liquidation, has to do with liquidation.

Q.    Section 170 can be invoked only after an application to appoint a liquidator has been filed, correct?

A.    Correct.

Q.    So provisional liquidation under 170, it exists only as interim relief within a pending liquidation proceeding, is that correct?

MR. BOYLE:  Objection.

A.    So liquidation proceeding is not a term of art, I think, I would have to look at that, but since you used that term.

And the reason why I hesitate

MOKAL

is because there is a liquidation proceeding which commences if and when the court makes a liquidation order and appoints a liquidator.

And then there is a proceeding which only begins at that point and that's the liquidation proceeding properly so-called.

At this point, as I said, as a matter of law it is not the case that the court will necessarily go on to appoint a liquidator, so a liquidation proceeding which commences upon the appointment of a liquidator has not commenced.

So not quite obvious in an important sense, there is no liquidation proceeding at the moment.

Q.    But I think I am asking a little bit of a different question, I am not asking about sort of what happens at the end.

I think we just discussed that this Section 170, the appointment of a provisional liquidator, it's invoked only

Page 128

MOKAL

after an application to appoint a
liquidator has been filed, correct?

A.          Correct.

Q.          And so in that circumstance,
the provisional liquidation under Section
170, it exists only as interim relief
within a pending liquidation proceeding?

A.          It's an interim relief on a
pending liquidation application, it is an
application to open a liquidation
proceeding.

So on that basis, no, that's
not correct.

Q.          If you go to paragraph 35 of
your declaration, you say in here,
"Section 170(1) makes this explicit at the
level of the triggering condition; a
provisional liquidator may only be
appointed 'where an application for the
appointment of a liquidator of a company
has been filed but not yet determined or
withdrawn'.  The provisional liquidation
regime is therefore structurally parasitic
on and subordinate to the substantive

Page 129

MOKAL

liquidation application.  It has no independent existence and automatically terminates on the determination of that application, Section 173 (2)."

Do you see that?

A.    I see that.

Q.    So a provisional liquidation, it is not a freestanding proceeding on its own, correct?

A.    That's correct.

Q.    And it is subordinate to a substantive liquidation application, correct?

A.    I emphasize the word application and, yes, that is correct.

Q.    And that is a pending application, correct?

A.    Pending in the sense that it's not yet determined or withdrawn, yes.

Q.    That's necessarily the case, correct, because if it's determined or withdrawn, then you wouldn't have a provisional liquidator in either context, right?

Page 130

MOKAL

A.        Well, if it's withdrawn you wouldn't have liquidation at all.

Q.        Yes.

A.        So if it's determined and the court determines the application by refusing to make a liquidation order, there is no liquidation, in both those senses, and of course in the sense that the court does make a full liquidation order, those are the possible outcomes.

And I stand by what you have just read out to me, that provisional liquidation is parasitic upon the substantive liquidation application.

Q.        The point I want to make sure I am understanding correctly is that it is the case that necessarily any provisional liquidation involves a situation where there is a pending liquidation application, correct?

A.        Correct.

Q.        The provisional appointments of the JPLs in this matter are not separate cases from the underlying full liquidation

MOKAL

proceedings, correct?

A.      I believe I've already answered the final thought of your question, Mr. Croke.

You're putting to me as a premise of your question that there are liquidation proceedings on foot and for the reasons I've sought to explain, I do not think that there are any liquidation proceedings on foot.

There are liquidation applications which may or may not result in the commencement of liquidation proceedings.

Q.      So in your view, in a situation where there has been an application for a liquidation, there have been provisional liquidators appointed, but the court has not yet reached a decision on the application for a full liquidation.

How would you describe that action or proceeding, how would you characterize that?

A.      I would characterize those as

Page 132

MOKAL

provisional liquidation proceedings read
in the way that I've sought to explain in
my declaration.

Q.        And you're saying that you
would characterize that as provisional
liquidation proceedings as a part of an
ongoing liquidation application?

A.        Yes, I would say it's a form of
interim relief upon the making of an
application for liquidation and such
relief may only last while the application
is pending.

Q.        And you would describe those as
provisional liquidation proceedings?

A.        Yes, I'm happy to describe them
in those terms.

MR. CROKE:  This is a good
place for a break, I think we have been
going for about an hour.

Why don't we take a break for
about ten minutes, if that works.

MR. BOYLE:  Sure.

And for the reporter, would you
mind just setting up a break room with me

Page 133

MOKAL

and Riz just so I can check in.

THE VIDEO TECHNICIAN: Yes, give me a second, I'll go off the record.

This will be end of Video Media Disk No. 2, the time is 11:44 a.m. and we're going off the video record.

(Recess taken.)

THE VIDEO TECHNICIAN: Back on the video record, this is Video Media Disk No. 3, the time is 11:58 a.m., please proceed.

BY MR. CROKE:

Q.      I want to turn back to your declaration, Dr. Mokal, if you go to paragraph 39.

Paragraph 39 starts "The following two powers in Schedule 2 are potentially relevant to the JPLs," and in 39.2 it says, "The second is the 'power to sell or otherwise dispose of property of the company'," and 39.2.1, it goes on to say, "The exercise of such power would characteristically (though not necessarily, such as when perishable

Page 134

MOKAL

assets must be disposed of in order to conserve the value of the company's estate) exceed the conservatory nature and role of provisional liquidation.  This confirms that the provisional liquidation is, by design, a holding measure."

Do you see that?

A.      I see that.

Q.      Just to make sure I'm understanding, is it your opinion that with the exception of the type of situation we discussed earlier, like the perishable asset or the bananas that are going to go bad in a couple of days, other than those circumstances, the ability to sell or otherwise dispose of property of a company is not a power that is granted to the JPLs without further sanction of the court?

A.      That's roughly correct, yes.

Q.      Are you aware of any evidence of the JPLs selling any assets of the debtors?

A.      I do not have evidence other

Page 135

MOKAL

than that which I have seen in the opposition.

Q.      What is that evidence?

A.      I understand that the opposition alleges they have made inquiries about the Allied Cigar business, but I have no independent information about that.

Q.      Just to be clear, is it your opinion that making inquiries about an asset in that fashion exceeds the powers that are given to the JPLs?

A.      No, that's not my opinion.

Q.      And your opinion, is it your opinion that it is just the actual sale or otherwise disposal of property of the company that would, without sanction of the court, exceed the powers of the JPLs?

A.      That's also not my opinion.

Q.      Okay, could you explain your opinion further.

A.      Yes, of course.

        So go back to the agent who has the power to bind the principal to the

Page 136

MOKAL

third party, but internally as between the agent and the principal, the principal has said to the agent you must seek my permission before you bind me in this particular manner.

In those circumstances, for the agent to say to third parties I have the power and I can do that, in circumstances where the third party might be led into thinking that the agent has the power simpliciter and that the agent would not be acting inconsistently with the internal requirement of proper exercise of the power, I believe that would be in excess of officers of the court dealing with the court where they are subject to duties of transparency pursuant to the ex parte James principle.

Q.    Under the appointment orders, do you believe that the JPLs are authorized to sell shares that a debtor entity owns, shares of another company?

A.    You would have to specify the hypothetical a lot more.

Page 137

MOKAL

Q.      Sure.

If one of the debtor entities owns shares in another company, do you believe that the JPL appointment orders authorize the JPLs to sell those shares?

A.      There are circumstances where the answer would be yes and circumstances where the answer would be no.

The circumstances where the answer would be yes would be where, for example, the shares in their present form are liable to being converted improperly.

But if the JPLs were to sell those shares, they would be able to hold -- conserve their value, in those sort of circumstances, as I've sought to explain, I believe that would be appropriate for the JPLs to say that they have those powers, that power to sell.

Q.      I want to show you another exhibit, which I think is Exhibit 6, tab 8 in the materials we sent over.

(Mokal Exhibit 6, letter from Campbells dated 20th May 2026, was marked

Page 138

MOKAL

for identification, as of this date.)

Q.        First off, do you recognize this document?

A.        No.

Q.        You can obviously of course, if you want to take a look at it, you're more than welcome to do so, I just had a couple of narrow questions for you on this.

This is a letter from Campbells dated 20th May 2026 and in the re line it says "Khoon," K-H-O-O-N, "Group Limited."

I'll represent to you this is a letter that Campbells, Mr. Borelli's BVI counsel, sent to the JPLs with respect to certain assets of one of the JPL entities, Southern Heritage.

If you go down to paragraph 4, I'll represent to you that the JPL entity Southern Heritage owns certain shares of Khoon Group and here in this letter, after discussing the fact that the sanctions that were imposed on Southern Heritage have caused harm to Khoon Group, Campbells says, "In those circumstances it is

Page 139

MOKAL

remarkable that the JPLs have not taken the obvious and most constructive step available to them, namely, exploring the appropriately licensed divestment of a portion of Southern Heritage's 55 percent shareholding in the company so as to enable the company to return to normal commercial life."

Q.    Do you see that?

A.    I see that.

Q.    In a situation in which one of the debtor entities is holding the shares here, do you believe that the sale of a portion of those shares is the kind of act that could be executed by the JPLs under the appointment orders?

MR. BOYLE:  Objection, incomplete hypothetical.

A.    Mr. Croke, on the basis that you've put to me, my answer would be it would be improper for the JPLs to bring about such a sale.

Q.    Why would that be improper?

A.    Because, as I said, the general

Page 140

MOKAL

position is that they cannot sell assets, and given the way you have specified -- given how you've put this matter to me, I would apply the general principle and the answer is the one I give you.

Q.        Turn to paragraph 64 of your declaration.

In paragraph 64, you say, "In my view, for the JPLs to seek or to represent that they have authority to seek any broader relief would be inconsistent with BVI law."

Do you see that?

A.        I see that.

Q.        Have you read the JPL's petition for recognition in this matter?

A.        I have read that petition, yes.

Q.        What is your understanding of the relief JPLs have sought?

A.        I would have to refresh my mind and focus on the particular forms of relief, because as I recall, there are multiple types, multiple items, of relief that are being sought, so I would have to

Page 141

MOKAL

focus on particular forms in order to be able to assist you on this.

Q.      Let's put up the proposed order.

MR. CROKE:  We will mark this as Exhibit 7.

(Mokal Exhibit 7, draft order to the U.S. court by the JPLs, was marked for identification, as of this date.)

Q.      Do you recognize this document?

A.      Yes, I do.

Q.      What is this?

A.      This is the draft order which has been put to the U.S. court by the JPLs, as I recall.

Q.      If you scroll down a little bit further, I want to talk through the points in here and I want to make sure I understand what your view is on the relief that's being sought.

Does this refresh your recollection as to what relief the debtors are seeking?

A.      I'm sorry, you will have to

Page 142

MOKAL

direct me to particular provision.

Q.      Sure.

If you go to where it says "it is hereby ordered," if you scroll where it says, "It is hereby ordered that," and it goes on and there are individual paragraphs that are the provisions of the relief that is being sought, do you see that here?

A.      I see that.

Q.      I want to sort of tick through these.

Starting with No. 14, the relief that's sought here is that "The BVI proceedings are granted recognition as 'foreign proceeding' as such term is defined in Section 101(23) of the Bankruptcy Code and pursuant to Section 1517-A of the Bankruptcy Code."

Do you see that?

A.      I see that.

Q.      Is it your opinion that the relief being sought there is inconsistent with BVI law?

Page 143

MOKAL

A.       I have no view on that question for the obvious reason that this is a U.S. -- this is a court order which would be governed by U.S. law, if there are principles for the interpretation of the order along the lines that there are principles of interpretation of BVI court order, those principles would be essential in reading and understanding these provisions.

There are references to U.S. legal provisions there, the meaning of these provisions would turn on the meaning of those U.S. provisions on which I have no competence and do not take any view and do not offer any opinions.

For all of those reasons, I'm sure there would be others as well, I simply don't have a view on this.

Q.       This may actually be even a simpler process.

Can you identify anything in the relief that is being sought by the JPLs here that in your view is

Page 144

MOKAL

inconsistent with BVI law?

Q.        A.        I have no view on that matter.

Q.        There is nothing in the JPLs' proposed order for recognition and proposed relief that you believe exceeds the scope of what is permissible under BVI law?

MR. BOYLE:  Are we referring to the part that's up here on the page or additional provisions?

Q.        The part that's here on the page through the end, if you want to go through it, if there is anything in there that you believe exceeds the scope of what is permitted by BVI law, that's what I am trying to understand.

A.        For the reasons I've explained, I have no view one way or the other on this.

It would be proffering an opinion which is heavily determined by aspects of U.S. law on which I have no competence.

Q.        I want to go back to the

Page 145

MOKAL

Insolvency Act, Exhibit 5.

(Pause.)

Q.      I have a new document here for you.

A.      Okay.

Q.      Do you recognize this document?

A.      This looks like --

MR. CROKE:  I will withdraw the question.

I will mark this as Exhibit 8.

(Mokal Exhibit 8, insolvency rules, was marked for identification, as of this date.)

Q.      Do you recognize this document?

A.      This looks like the first page of a copy of the insolvency rules.

Q.      What are the insolvency rules?

A.      This is subordinate legislation which is intended to aid in the application and operation of insolvency proceedings and other proceedings and other matters pursuant to the Insolvency Act, and there may be other things in there as well.

MOKAL

Q.      If you go to page 52, do you see where it says under applications, there is a subheading that says "types of application"?

A.      Yes, I see that.

Q.      If you look at 13, it says in 13-1, it says, "An application to the court, which is not an application made in insolvency proceedings already before the court, shall be made as an originating application."

Do you see that?

A.      I see that.

Q.      In 2 it says, "An application to the court made in insolvency proceedings already before the court shall be made by way of an ordinary application."

Do you see that?

A.      I see that.

Q.      Do you have an understanding of whether the application for appointment of liquidators falls under subpart 1 of this provision?

Page 147

MOKAL

A.        I don't think so, because an application for the appointment of provisional liquidators is not an originating application.

Q.        Sorry, I want to make sure.

An appointment, the appointment of liquidators, not specifically provisional liquidators, but application for the appointment of liquidators, is it your understanding that falls under subpart 1?

A.        I believe that is the case, yes.

Q.        And then is it your understanding that an application for the appointment of provisional liquidators falls under subpart 2?

A.        Yes, I think that's right.

Q.        And so the application for the appointment of provisional liquidators is referred to as an ordinary application?

A.        That's correct.

Q.        And that is, as described in this subpart, an application to the court

Page 148

MOKAL

made in insolvency proceedings already before the court?

A.      I see the words there, yes, I would want to know if there was a definition of insolvency proceedings and what the ambit of that definition was.

But of course the words are as you read them out to me.

Q.      I don't have any further questions for you, Dr. Mokal, subject to anything else that counsel has, but thank you very much for your time.

A.      Thank you.

MR. BOYLE:  We appreciate that.

For the court reporter, is there any clarification?

THE COURT REPORTER:  I have some spellings, but do you want to go off the record first?

THE VIDEO TECHNICIAN: Ready to conclude the deposition?

MR. BOYLE:  Yes.

MR. CROKE:  Yes.

THE VIDEO TECHNICIAN: This

**Page 149**

MOKAL

concludes today's testimony given by Riz Mokal, the total number of media disks was three and will be retained by Veritext New York.

The time is 12:19 p.m. and we're going off the video record.

(Time noted: 12:19 p.m.)

**Page 150**

C E R T I F I C A T I O N

I, Jineen Pavesi, a Registered Professional Reporter, Registered Merit Reporter, Certified Realtime Reporter and a Notary Public, do hereby certify that the foregoing witness, RIZ MOKAL, was duly sworn on the date indicated, and that the foregoing is a true and accurate transcription of my stenographic notes.

I further certify that I am not employed by nor related to any party to this action.

*Jineen Pavesi, RPR, RMR*

JINEEN PAVESI, RPR, RMR, CRR

Page 151

**E X H I B I T S**

Mokal

| EXHIBIT | DESCRIPTION | PAGE |
|---------|-------------|------|
| Exhibit 1 | Declaration of Riz Mokal | 29 |
| Exhibit 2 | transcript from May 14th hearing | 54 |
| Exhibit 3 | Excerpt of transcript 5/14 hearing | 65 |
| Exhibit 4 | appointment order | 89 |
| Exhibit 5 | Insolvency Act | 122 |
| Exhibit 6 | letter from Campbells dated 20th May 2026 | 137 |
| Exhibit 7 | draft order to the U.S. court by the JPLs | 141 |
| Exhibit 8 | insolvency rules | 145 |

**Page 152**

In re: PRINCE GLOBAL HOLDINGS LIMITED et al.

6/3/2026 - RIZ MOKAL

E R R A T A   S H E E T

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

_____   _____

RIZ MOKAL                              Date

**Page 153**

In re: PRINCE GLOBAL HOLDINGS LIMITED et al.

6/3/2026 - RIZ MOKAL

ACKNOWLEDGEMENT OF DEPONENT

I, RIZ MOKAL, do hereby declare that I have read the foregoing transcript, I have made any corrections, additions, or changes I deemed necessary as noted on the Errata to be appended hereto, and that the same is a true, correct and complete transcript of the testimony given by me.


_____   _____

RIZ MOKAL                          Date

*If notary is required


SUBSCRIBED AND SWORN TO BEFORE ME THIS

_____ DAY OF _____, 20___.




_____

NOTARY PUBLIC

**[& - 3]**                                                                 Page 1

| & | | | |
|---|---|---|---|
| **&**   2:2 6:20 7:15 | **145**  151:22 | **195**  57:22 58:9 | **2029**  2:17 |

| **1** | **14th**  54:2,10,23 | **1997**  9:16 | **203**  81:2 |
|---|---|---|---|
| **1**  5:15 27:20,24 28:24 29:3 47:5 53:11,24 60:17,20,24 61:7,15 62:7 62:21 63:4,18 63:21 68:18 69:5 128:17 146:24 147:12 151:7 | 55:15,19 56:7 57:4 64:6 75:16 102:8 151:10 | | **204**  84:19 |
| | **15**  1:4 2:13 17:24 65:19,20 66:9 108:5 109:9,16 111:15 | **2** | **20th**  53:14 137:25 138:11 151:18 |
| | | **2**  36:2,2 47:5 52:23 53:12 54:22 56:25 68:24 87:21 90:11,22 91:9 93:23 95:4 97:18 98:12 100:13,22 101:6,19 129:5 133:6,18 146:15 147:18 151:9 | **21**  56:4,6 |
| **10**  91:14 93:19 95:2 96:25 97:16 | **15/16-25**  65:2 66:6,9 | | **221**  55:5 |
| | **1517**  142:20 | | **23**  142:18 |
| **10004**  2:3 | **1520**  2:17 | | **25**  65:21 66:10 70:2 |
| **101**  142:18 | **16**  65:21 66:10 | | **26**  73:16,24 |
| **10:16**  68:19 | **170**  121:21 123:22 124:3 126:12,17 127:24 128:7 128:17 | | **26-10769**  1:5 5:21 |
| **10:27**  68:24 | | **20**  47:2 63:5 153:17 | **28**  57:4,13 |
| **11:44**  133:6 | | **200**  47:21 | **28/9-13**  56:20 57:3 58:10 |
| **11:58**  133:11 | **171**  64:18 84:20 86:11,21 86:23 112:21 | **2003**  36:3 93:23 95:5 121:22 | **283**  122:21 |
| **11th**  2:9 | | | **29**  151:7 |
| **122**  151:15 | **173**  129:5 | **2004**  10:7 | **3** |
| **125**  2:3 | **174**  121:21 123:22 124:4 | **2005**  10:6 | **3**  1:12 30:12,24 31:5 33:25 34:5,20 35:10 36:9,17,21,24 36:25 37:8,15 37:17,25 46:21 65:5,6 75:17 90:20 91:5,16 92:2,5 93:4,20 97:10,11 101:13 103:11 104:2,12 133:11 151:11 |
| **12:19**  149:6,8 | | **201**  75:19 | |
| **13**  102:9 146:7 | **175**  84:21,25 86:12,21,23 | **2016**  9:20 30:8 | |
| **13-1**  146:8 | | **2022**  123:6 | |
| **137**  151:16 | **18**  2:14 | **2026**  1:12 5:4 30:9 46:25 47:3,18 53:14 56:7 63:5 137:25 138:11 151:18 | |
| **14**  47:18 142:14 | **182**  113:10 119:15 | | |
| **141**  151:19 | **183**  117:17 | | |

**[30 - actions]**

**30** 90:4
**34** 121:15
**35** 128:15
**39** 133:16,17
**39.2** 133:20
**39.2.1** 133:22
**3rd** 5:3

**4**

**4** 89:23,24
  138:18 151:14
**44** 64:25 65:2

**5**

**5** 122:15,16
  145:2 151:15
**5/14** 65:7
  151:12
**5108** 150:20
**52** 2:10 64:15
  66:13 112:15
  146:2
**54** 151:9
**55** 139:6

**6**

**6** 36:2 69:6,7
  137:22,24
  151:16
**6/3/2026** 152:2
  153:2
**60** 35:11,18,24
**61** 33:6,11,22
  35:4,7

**62** 31:12,16
  33:12 35:5,7
**62.1** 31:17 32:3
  32:4 33:2 34:2
  100:23
**62.1.1** 34:11
**62.1.2** 34:12
**62.1.3** 34:12
**62.1.4** 34:13
**62.2** 34:13
**64** 140:7,9
**65** 151:11

**7**

**7** 56:4,17 141:7
  141:8 151:19
**7af** 2:10

**8**

**8** 46:25 60:13
  61:9 62:14
  113:20 137:22
  145:11,12
  151:22
**850** 16:18
**89** 151:14

**9**

**9** 77:3 78:21
  79:3 80:8,19
  80:21 91:15
  92:3 93:8
  120:6,15
  123:13

**90067** 2:17
**9:00** 1:13
**9:03** 5:3
**9th** 30:13 83:7

**a**

**a.m.** 1:13 5:3
  68:19,24 133:6
  133:11
**abc** 47:5,5
**ability** 100:14
  108:6,9,19
  109:11,17
  111:16 112:7
  134:16
**able** 9:9 11:10
  18:24 80:15
  87:14 94:7
  137:15 141:3
**above** 90:22
  91:16 93:21
**abroad** 77:15
  77:15
**abstract** 74:20
  89:18
**accept** 62:13
  98:8
**accepted** 24:3
  64:18 112:21
**accepting**
  116:2
**access** 32:13
  67:21 76:7
  101:17

**accident** 81:9
  82:25
**accord** 39:24
**accurate** 9:9
  26:18 33:3
  34:3,12,12,13
  34:13,14
  150:12
**acknowledge...**
  153:3
**act** 36:3 64:19
  86:23 87:17,20
  87:22 93:23
  95:5,11,15
  97:19,23 98:6
  104:8 106:22
  107:22 112:22
  121:22 122:9
  122:17,20,25
  123:11 124:16
  124:16 125:5
  139:15 145:2
  145:24 151:15
**acting** 96:19
  104:7 106:24
  110:9,24
  136:13
**action** 70:22
  100:11 131:23
  150:16
**actions** 72:8,14
  72:23 73:8
  99:20

**acts** 41:9 96:20
**actual** 13:3
  135:16
**actually** 143:21
**addition** 46:18
  58:23 90:21
  91:8
**additional**
  18:14,25 19:6
  19:7 28:14
  38:5,9,11
  39:21 40:4,11
  46:10,18
  144:11
**additions** 153:6
**address** 24:25
  25:7,15,18,24
  26:11 38:13
  41:2,20 42:4
  42:14,16,17
  43:14,23 44:16
  47:5 49:5
  52:18 107:9,16
  107:18 109:12
**addressed** 38:6
  41:11 43:15
  44:17 48:25
  49:2
**addressing**
  42:22 47:13
  79:9
**administrative**
  17:10

**admissible** 74:7
**admitted** 24:6
**adopted** 117:13
**advance** 98:11
**advanced**
  117:21,25
  119:3,11
**advise** 14:3
**advised** 22:17
  23:3,11
**affairs** 77:4,25
  79:11 91:20
  92:7 93:5
**affect** 96:8
**affected** 51:10
  51:14
**affiliated** 15:23
**affiliations**
  6:15
**affirmatively**
  42:9 44:11,13
  44:16,20
**afraid** 67:19
**ag** 83:25
**agent** 96:6,6,11
  96:14,14,16,19
  96:20 99:12
  135:24 136:3,4
  136:8,11,12
**ago** 10:14
  59:15 98:15
  105:16 112:2
**agree** 5:14 34:9
  57:8 78:12,17

79:14 81:24
  89:13 93:7,17
  94:15 108:9
  120:4 124:19
  125:9
**agreed** 3:4,8,12
  102:3
**agreeing** 25:25
  117:13
**agrees** 120:3
**aid** 74:7 80:2
  86:14 121:25
  122:10,13
  124:6,8 145:20
**al** 1:8 5:19
  152:1 153:1
**alexandra** 2:13
**allegations**
  26:17,22 71:12
**alleged** 69:8,17
**alleges** 135:6
**alleging** 84:2
**allied** 135:7
**ambit** 148:7
**amended** 123:3
**amendments**
  123:6,12
**amount** 36:10
  36:18 37:11
  76:24
**analogy** 96:24
**analyses** 39:21
  40:4,11 46:11
  46:18

**analysis** 38:5
  38:10,11 39:3
  39:8 51:10,13
  51:15 82:10
  114:19 119:7
**analyzing**
  119:21
**ancillary** 81:10
  83:12
**andrew** 25:2
  47:3
**angeles** 2:17
**announce** 51:2
**answer** 8:11
  9:5 13:8 43:3,5
  44:3 88:8
  137:8,9,11
  139:21 140:6
**answered** 72:5
  117:16 131:3
**answering**
  107:14
**ante** 98:18,20
  99:4,11
**anymore** 81:18
  83:24
**apologies** 36:13
  46:6
**apologize** 46:4
  77:18
**apology** 81:19
  84:13
**appeal** 30:6
  105:15

**[appealing - assume]** Page 4

**appealing**
114:22 117:7
**appear** 66:15
69:24 104:21
121:23
**appearances**
6:15
**appeared** 23:18
23:22
**appearing**
104:22 105:6
**appears** 57:25
65:13 120:14
**appended**
153:8
**application**
99:6 105:22
126:13 128:2
128:10,11,20
129:2,5,13,16
129:18 130:6
130:15,21
131:17,21
132:8,11,12
145:21 146:5,8
146:9,12,15,19
146:23 147:3,5
147:9,16,20,22
147:25
**applications**
131:13 146:3
**applies** 110:23
**apply** 62:2
79:19 102:15

140:5
**appoint** 70:12
126:13 127:12
128:2
**appointed**
64:22 70:6,17
71:6 88:15
90:17 112:25
114:12 128:20
131:19
**appointment**
70:25 76:2
85:14,21 89:21
89:24 90:7
102:13 103:14
110:17 114:7
114:22 120:23
127:14,24
128:21 136:20
137:5 139:17
146:23 147:3,7
147:7,10,17,21
151:14
**appointments**
130:23
**appoints** 127:5
**appreciate**
148:15
**approached**
11:8
**appropriate**
137:18
**appropriately**
139:5

**approval** 100:4
**approved**
55:23 59:18,25
**approving**
80:16 118:10
**approximately**
5:3
**april** 11:13
46:25 47:2
**area** 14:5
**argues** 108:4
**argument**
116:25 117:20
118:3,7 119:2
**arguments**
115:14 117:25
119:21,23,23
**arising** 22:4
52:18 61:5
**arose** 11:11
**arrangement**
6:6,11
**art** 108:14
126:22
**aside** 44:9
**asked** 11:9
24:24 25:6,18
35:4 40:18,25
43:10 44:9
46:23 49:11
50:9 72:4
73:12 74:2
107:10 117:15

**asking** 43:12
44:12 45:2
48:20 92:23
106:19 109:2
113:4 127:19
127:21
**aspect** 111:25
**aspects** 144:23
**asserts** 111:15
**assesses** 120:3
**assessment**
74:22
**asset** 64:20
112:23 134:14
135:12
**assets** 32:12
72:3 76:5 77:5
77:14 88:3,5
90:15 91:21
92:7 93:6 99:2
101:16 114:10
134:2,23
138:16 140:2
**assist** 27:12
41:25 43:18
59:20 107:14
141:3
**assistance** 14:6
16:20 49:25
**assisting** 43:4,6
44:4
**assume** 8:16
40:6 41:24
69:12

**[assuming - bones]** <span style="float:right">Page 5</span>

**assuming** 26:16
  71:11
**assymetric**
  83:20
**asymmetric**
  81:14
**attached** 60:17
  77:12
**attendance**
  51:3
**attention** 79:20
**attorney** 6:17
  8:21 40:23
  70:15
**attorneys** 2:4
  2:18 3:5 19:12
  21:11,11,25
  22:12 70:15,21
**audio** 5:12
**authoritative**
  62:9
**authorities**
  61:23 62:5,8
**authority** 70:22
  71:7 96:6,7
  97:13 106:8
  107:22 110:8
  140:11
**authorization**
  95:20
**authorize**
  137:6
**authorized**
  1:17 2:4,11

6:22 7:16,19
  36:9,17 99:21
  136:22
**authorizes**
  36:21 101:14
**authorizing**
  32:7
**automatically**
  129:3
**available** 63:24
  139:4
**averted** 98:15
**aware** 47:16,20
  47:23 63:25
  69:20,23
  134:22

**b**

**b** 91:5 151:2
**back** 35:10
  56:2,23 68:22
  69:4,5 73:15
  75:16 81:3
  100:23 112:6
  112:14 113:7
  133:9,14
  135:24 144:25
**bad** 134:15
**balance** 74:22
**ball** 57:22 67:2
**bananas** 99:25
  100:5,6,7
  134:14

**bankruptcy** 1:2
  5:20 24:10
  142:19,20
**bar** 9:15,20
**barrington**
  47:3
**barrister** 10:12
**based** 39:2,8
  71:11 74:22
**bases** 110:2
**basically** 57:25
  65:22 113:21
  114:2
**basis** 63:23
  77:9 85:14
  102:12 103:13
  110:17 114:8
  128:13 139:20
**bear** 80:7
**bears** 18:19
**beginning** 6:16
  12:19 80:12
  102:2 103:23
**begins** 127:7
**behalf** 6:22 7:2
  12:7,20 14:14
  16:23,25 110:4
  110:9,25
**believe** 41:11
  50:8 55:15
  59:13 64:7
  65:9,11 91:6
  104:15 111:24
  123:5,16 131:3

136:15,21
  137:5,18
  139:14 144:6
  144:15 147:13
**best** 15:19
  41:25 43:3,5
  44:2,5 51:12
  107:13
**better** 30:11
  32:23 51:16
**beyond** 40:19
  41:2 45:10
  46:12 59:19
**big** 76:25
**billed** 16:12,21
**bind** 96:7,17
  135:25 136:5
**bit** 31:20 74:11
  97:3 106:13
  108:12 127:20
  141:17
**bits** 118:8,12
**blunt** 81:14
  83:20
**boies** 2:16 7:2
  11:23 12:4,6
  13:17 14:7
  16:4 19:13
  20:22,24 21:7
  21:11,24 22:10
  26:9 27:17
  47:16 63:25
**bones** 81:19
  84:13

**[border - cases]**                                                                          Page 6

**border**  9:24
**borelli**  12:12,21
  13:2,4 14:21
  69:23 70:5,17
  71:6,10,21
  108:4 111:15
  111:20
**borelli's**  26:17
  26:22 70:25
  71:16,25 72:8
  72:14,23 73:8
  108:19 109:10
  109:17 138:14
**bottom**  56:18
  117:19
**box**  44:2
**boyle**  2:18 4:2
  4:4,9 6:25 7:2
  11:3 14:10
  19:25 20:25
  24:12 25:4,10
  28:20 39:9
  40:21 41:23
  43:17 44:19
  45:6,20,24
  46:2 49:8,21
  63:14 68:9
  69:21 71:22
  72:4,10,25
  73:10 78:13
  97:25 103:18
  106:10 107:3
  108:11,25
  117:15 124:24

126:20 132:23
  139:18 144:9
  148:15,23
**breadth**  82:2
**break**  8:20,22
  54:21 68:16
  97:2 132:19,21
  132:25
**breaks**  8:18
**briefly**  9:12
**bring**  139:22
**brings**  39:19
**broad**  2:3
  78:11,18 85:20
  102:17
**broader**  28:22
  52:13 94:12
  112:6 124:11
  140:12
**broadly**  70:19
  87:11
**bsf**  12:3 13:17
**bsfllp.com**  2:19
**build**  119:24
**bundle**  62:6,7,8
  62:12
**business**  135:7
**bvi**  2:11 10:19
  11:19 17:22
  21:15,20 23:4
  23:11,16,19,23
  24:4,25 25:7
  25:13 28:15
  30:14 38:18

39:13 53:2,5
  54:3 56:10
  61:6 77:4,5,8
  77:13,17,22
  78:2 79:12,18
  86:23 87:17
  95:20 104:24
  105:3,9,13,22
  105:23 106:7
  107:24 108:18
  109:15 111:18
  112:19 124:19
  138:14 140:13
  142:15,25
  143:8 144:2,7
  144:16

**c**

**c**  2:1 30:12,24
  31:5 33:24,24
  34:5,20 35:10
  36:9,17,21,24
  36:25 37:8,15
  37:17,25 101:6
  101:13,19
  103:11 104:2
  104:12 150:2,2
**calibrated**
  64:20 112:23
**california**  2:17
**called**  7:19 9:15
  30:7 45:17
  105:17 124:16
  127:9

**cambodia**  76:3
**camera**  5:8
  51:7
**campbells**
  11:23 21:21,24
  27:17 137:25
  138:10,14,24
  151:17
**capacity**  12:21
  69:25 104:10
  104:23 105:6
  106:2,25
  110:24
**carefully**  55:21
**carry**  90:15
  114:11,24
  117:8
**carrying**  64:21
  112:24
**case**  1:5 5:19
  5:21 13:14
  18:3,19 19:6
  22:2 25:8 62:3
  71:11 96:16,23
  99:4 102:20
  109:22 111:22
  115:7 125:9,10
  125:22 127:11
  129:21 130:18
  147:13
**cases**  22:19
  53:5 60:16
  61:8 130:25

**[casey - commenting]** Page 7

casey 22:4
casting 118:21
caused 138:24
causing 104:8
  104:12,21
  105:5 106:3,23
  111:11
central 2:14
century 2:17
certain 21:14
  24:25 25:2,24
  43:23 46:24
  47:13 50:6
  52:25 82:21
  87:12,14 90:6
  138:16,20
certainly 51:14
  54:12 94:9,23
  120:15
certified 1:20
  6:2 150:8
certify 150:9,14
cetera 58:4
  77:13
challenge 41:9
  85:13 102:11
  110:16
challenging
  103:13 114:23
  117:8
chambers 10:5
chance 48:4
change 32:18
  51:13 96:12

102:6 152:4,7
  152:10,13,16
  152:19
changed 27:7
  51:9
changes 153:7
chapter 1:4
  17:24 108:5
  109:9,16
  111:15
character
  112:17 118:18
  118:22
characteristic...
  133:24
characterizati...
  34:4 117:11
  119:14
characterize
  131:24,25
  132:6
characterized
  59:13 119:18
characterizes
  119:9
chater 2:14
check 12:23
  16:16 123:17
  133:2
chen 14:25
  70:16,21 72:12
chissick 25:19
  26:2 47:3,17
  49:10 50:9,13

50:17,24 51:17
  51:21 52:10,15
chissick's 17:25
  25:3 47:22
  48:2,9,11,19,22
  49:23 50:7
choose 66:22
cigar 135:7
circumstance
  128:5
circumstances
  74:5 75:3
  96:21 98:25
  112:12 134:16
  136:7,9 137:7
  137:8,10,17
  138:25
cite 58:2,9 67:8
  116:18
cited 66:4
cites 52:5,7
citing 57:12
  61:2
claiming 69:24
clarification
  98:7 148:17
clarify 8:14,16
  35:6,16,19
  108:25
clause 31:4
  37:17
clear 31:7
  62:13 78:10
  81:25 93:8

100:20 106:5
  110:5 118:2
  135:10
clearly 8:11
  30:17,19
  116:23 118:13
  118:14
clerk 16:16
clerks 11:9
  17:6,7
client 14:14
  23:4
close 96:24
code 142:19,20
colleague 6:21
  77:19
colleagues
  16:21
come 38:25
  47:24 81:3
  86:25 102:25
comes 16:8
  81:5
coming 52:14
  77:7 116:3
commenced
  127:15
commencem...
  131:14
commences
  127:3,14
commenting
  115:25

**[comments - construction]** Page 8

comments
94:11
commercial
139:9
common   38:18
38:19,19 39:12
61:5 105:18
communicated
14:21,25 15:4
15:8,12,16,22
communicati...
27:2 40:23
companies
11:20 12:11
41:8 77:9,13
81:7,15,18
82:8,14 83:21
83:24 84:6
104:8,8,13,21
106:23 107:21
108:7,20
109:11,18
110:4 111:11
111:17 125:3
company   32:14
38:20,21 76:8
77:4,11,25
79:11 81:12
82:22 83:14
90:15 91:19,21
92:7,11 93:5
93:11 99:23,24
101:18 105:5
106:3 108:10

110:9,25
111:20 112:8
112:11 114:11
114:25 128:21
133:22 134:18
135:18 136:23
137:4 139:7,8
company's
134:3
competence
14:5 143:16
144:24
competent
17:11
compile   60:19
60:21
compiled   60:23
compiling
61:14 62:4
complete   9:10
153:9
completed
100:5,9
complicated
81:11 83:13
comply   44:5
complying
100:25
composite
58:21 116:12
118:5
compound   11:4
concept   97:4,5

conceptual
94:12
concerns   30:6
91:20 92:6
93:5 120:6
conclude
148:22
concludes
149:2
conclusions
115:13
conclusive
74:19
condition
128:18
conducted   5:6
5:23
conferred
31:10 32:6
33:23 87:15,19
112:19
confers   30:24
31:8 88:17
confident   25:11
confirm   4:15
confirmed
38:17 112:20
confirms   101:6
101:20 134:6
confusion
123:19
connection
11:6 12:2,15
12:18 14:8,16

14:20,24 16:12
16:22 17:8,14
19:8 23:2
24:13 41:16
64:2,12 71:16
72:2,8 75:13
connections   5:9
consent   6:5
96:15,21,22
conservatory
112:17 116:21
118:22 134:4
conserve   134:3
137:16
consider   46:24
99:6
consideration
82:19 126:9
considered
109:23
considering
18:20
consolidated
123:11
constitute
39:13
constrain   78:2
79:12
constrained
79:17
construction
73:25 122:2
124:7,9

**[constructive - court]**                                          Page 9

**constructive**
  139:3
**construed**
  93:15
**construitive**
  79:22
**consult**  16:16
**consultations**
  19:15
**context**  52:14
  92:16 93:15
  101:11 111:3
  115:10 119:12
  121:5 129:24
**contingencies**
  87:12 99:2
**contingency**
  89:5
**continue**  5:13
  77:21 80:23
**continued**
  18:12
**continues**
  65:24 76:23
  84:19 91:5
  114:16 115:5
  119:3
**continuing**
  76:20 84:18
**contrary**  22:22
**control**  32:12
  32:14 76:6,7
  101:16,18

**converted**
  137:13
**convey**  74:4
**copy**  4:3,5,16
  29:6,14 145:17
**core**  83:5
**corollary**
  114:18
**corporate**
  70:10 108:10
  108:13
**correct**  9:17,18
  9:21,22 10:2
  11:24 12:5
  13:11,23,24
  14:9 19:24
  21:6 23:16,20
  23:21,24,25
  24:7,8,10,11,15
  24:16,19 25:3
  25:5,9,20,21
  26:3,4,8,12,13
  26:18,23,24
  28:10 29:23
  32:15 34:17
  39:4 42:10
  45:16 47:15
  49:6,7 50:24
  50:25 53:18,19
  54:3,4,8,11
  62:22 66:16,17
  69:9,18,19
  70:2,3,7,8,12
  70:13 71:2,3,7

  71:8,13,14
  73:4,22,23
  75:15 82:15
  83:18 90:8,9
  91:11,12 94:18
  94:20 95:8,12
  97:14,15,22
  102:7 105:7
  108:7 113:16
  113:17 115:16
  121:13 124:13
  124:14,17,18
  124:23,25
  126:14,15,19
  128:3,4,14
  129:10,11,14
  129:16,18,22
  130:21,22
  131:2 134:21
  147:23 153:9
**corrected**  60:5
**corrections**
  153:6
**correctly**  58:5
  97:17 130:17
**cosmo**  12:12,21
  14:21
**counsel**  1:17
  5:17 6:5,14 9:2
  9:5 11:19,21
  14:8,12,16
  20:22 21:15,20
  22:5 23:19
  26:9 27:17

  44:25 67:4,25
  120:3 138:15
  148:12
**couple**  20:3
  29:24 30:10,14
  34:18 82:4
  134:15 138:8
**course**  17:11
  23:12 43:9
  45:7 52:13
  67:21 74:20
  75:20 86:16
  104:4 105:20
  130:9 135:23
  138:6 148:8
**court**  1:2 3:16
  4:2,6,11,14,20
  5:20 6:3,9,17
  8:8 10:25 14:6
  23:19,23 24:2
  30:6,14 36:11
  42:2 43:5,7
  44:5 46:4
  54:20 56:12
  59:25 61:17
  62:4 64:3,10
  67:4 69:10
  73:25 74:6,21
  75:12 85:7
  87:4,25 88:13
  89:4,12 91:2
  91:10 93:24
  94:17 95:7,21
  96:3 97:21

**[court - define]** Page 10

98:6,10,19
99:6 100:4,8
100:15,16
102:15,18,19
102:25 105:14
110:14,21
112:19 113:24
114:6,13
116:24 126:2,5
127:4,12 130:6
130:10 131:19
134:20 135:19
136:16,17
141:9,15 143:4
143:8 146:9,11
146:16,17
147:25 148:3
148:16,18
151:20
**court's**  78:5
94:22
**covered**  42:21
48:8,18,21
**covering**  48:24
**covers**  9:24
125:15
**creates**  64:19
112:22
**criticized**  10:24
**croke**  2:5 4:14
4:18,22 6:19
6:20 7:11,15
46:7 50:11
54:16 68:13

69:2 86:2
89:22 107:5,25
109:5 111:21
113:10 117:17
122:14,19
131:5 132:18
133:13 139:20
141:6 145:9
148:24
**crokej**  2:5
**cromwell**  2:2
6:20 7:15
**cross**  9:24 40:2
40:7
**crr**  150:21
**current**  10:9
123:17
**currently**  46:10
69:24
**cut**  84:25
**cuts**  77:3

**d**

**daily**  4:16
**dan**  2:18 6:25
**date**  16:13 29:5
54:24 65:8
90:2 122:18
138:2 141:10
145:14 150:11
152:24 153:13
**dated**  46:25
47:2 137:25
138:11 151:17

**day**  4:8 153:17
**day's**  58:22
**days**  20:4 100:2
134:15
**dboyle**  2:19
**de**  2:6 6:21
**deal**  17:9 77:8
**dealing**  136:16
**deals**  58:24
**debtor**  13:3
136:22 137:3
139:13
**debtors**  1:9
13:2 15:24
70:2,7,11 72:3
134:24 141:23
**decided**  30:8,9
**decision**  30:7
100:7 131:20
**declaration**
7:23 10:23
18:2,10,16,17
19:10,23 21:17
22:8,13,23
24:22 25:16,19
25:23 26:15
27:4,9,21,25
28:6,9,19,25
29:3,17,18,22
30:5,21,23
31:6,12 38:2,7
38:24 39:7
40:5,20 41:3
41:12 42:5,18

42:21 43:16,24
44:18 45:4,11
46:13,19,22,25
47:2,12 48:9
49:6,17 50:4
51:11,20,24
52:4,23 53:4,9
53:22 54:7
56:3 57:3,12
58:2 59:7
60:14 61:2
62:16 63:7
64:13,16 66:3
67:9,15 68:8
69:4,11 71:9
73:16,17,19
80:13 88:19
100:24 106:16
106:20 107:4,7
107:9,16,19
109:3,8,13
113:14 118:17
121:16 128:16
132:4 133:15
140:8 151:7
**declarations**
18:2 25:3 26:3
47:9 49:2 50:7
51:18 52:16,19
64:4
**declare**  153:4
**deemed**  153:7
**define**  44:20

**[defined - distinguishing]**                                    Page 11

**defined** 142:18
**defining** 118:17
**definition**
  23:10 37:18
  148:6,7
**delivering**
  75:21
**depending**
  23:10
**depends** 5:7
**deponent** 153:3
**deposition** 1:16
  5:6,16,22
  17:19 18:7
  19:14 40:2
  47:17,22 48:2
  48:19,22 49:24
  50:10,14,18,21
  50:23 51:3,9
  51:21 52:10,17
  52:21 148:22
**derived** 72:2
**describe** 11:5
  73:19 121:19
  131:22 132:14
  132:16
**described**
  107:23 119:4
  147:24
**describing**
  11:15 115:6,14
  116:23
**description**
  151:5

**design** 134:7
**designated**
  114:13
**detail** 30:5
  33:15
**determination**
  74:21 129:4
**determinative**
  122:13
**determine**
  70:11
**determined**
  128:22 129:20
  129:22 130:5
  144:22
**determines**
  130:6
**devriess** 2:6
**difference**
  30:20
**different** 56:9
  57:14 58:3
  60:6 66:19
  67:12 75:23
  76:21 119:21
  125:16 127:20
**differently**
  31:20 32:19
  33:10,19 34:21
  35:2,13 36:15
**difficult** 43:22
  89:17 120:12
**difficulty** 78:22
  79:5 80:5

**direct** 142:2
**directing** 72:7
  72:14,22 73:8
**direction** 74:17
**directions**
  87:24
**directly** 72:13
  72:22 73:7
**director** 11:20
  12:10,22 38:20
  69:25 70:6,12
  70:17 71:2,10
  91:19 104:20
  105:4 106:22
  112:9
**director's**
  112:7
**directors** 41:8
  81:7,16,17
  82:7,13,22
  83:22,23 84:7
  85:3,12,12,24
  89:16 92:11
  93:10 94:6
  101:7,21
  102:10,14
  103:12,21
  104:5,10,12,14
  105:23 106:7
  107:21 109:25
  110:3,15,23
  111:8,11,12
  114:20,21
  117:6

**disagreeing**
  25:25
**discovered**
  99:24
**discuss** 40:22
**discussed** 21:14
  21:25 22:3
  33:14 40:5
  46:14 50:5
  53:15 113:12
  120:7 124:2
  127:23 134:13
**discussing**
  96:25 110:13
  138:22
**discussion**
  11:17 22:7
  75:13 119:8
**discussions**
  21:16 22:11
**disk** 5:15 68:18
  68:23 133:6,10
**disks** 149:3
**disposal** 135:17
**dispose** 133:21
  134:17
**disposed** 134:2
**distinct** 117:24
**distinction**
  61:22 98:13
**distinguish**
  59:21
**distinguishing**
  13:6 104:2

**[district - exactly]** Page 12

| | | | |
|---|---|---|---|
| **district** 1:3 5:21 | **draft** 34:8 36:7 53:13,14 58:15 60:3 63:5 73:22 101:5,19 141:8,14 151:19 | **employed** 10:12 150:14 | **envisaged** 37:8 |
| **divestment** 139:5 | | **employees** 15:23 | **envisioning** 42:22 43:10 |
| **document** 29:15 31:25 33:21 35:15 55:7,12 57:14 58:9,19 59:4,8 60:12,17 62:20 63:12,13,20 65:10 66:10,20 67:5 70:20 122:23 138:4 141:11 145:4,7 145:15 | | **empowered** 88:15 | **equivalent** 75:25 |
| | **drafted** 38:6 | **enable** 139:8 | **errata** 153:8 |
| | **drew** 61:22 79:20 | **ends** 115:5 125:24 | **esq** 2:5,6,7,12 2:15,18 |
| | **duly** 7:7 150:10 | **engaged** 12:6 12:14,20 13:2 13:4,9 17:4,8 | **essential** 118:17,21 143:9 |
| | **duties** 44:6 136:17 | | |
| | **duty** 43:3,25 | **engagement** 12:19 13:22 16:11,22 | **essentially** 110:14,25 113:23 114:5 116:20 117:3 120:21 |
| | **e** | | |
| **documents** 17:22,23 19:7 27:23 28:4,5,7 28:13,14,17 53:8 62:5 63:17 67:22,23 68:3,7 70:10 71:19 121:11 | **e** 2:1,1 150:2 151:2 152:3,3 152:3 | **england** 9:16 77:11 105:19 105:20 | **estate** 134:4 |
| | **earlier** 23:15 112:16 113:13 134:13 | **english** 38:19 56:10,13 105:14,14 | **et** 1:8 5:19 58:4 77:13 152:1 153:1 |
| | **early** 11:14 | **enormous** 76:24 | **europe** 2:9 |
| | **ease** 7:18 | | **eventually** 126:5 |
| **doing** 40:6 78:15 104:3 114:24 115:17 116:7 117:8 121:5 125:20 | **easier** 112:5 | **entire** 58:22 | **evidence** 18:13 24:3 134:22,25 135:4 |
| | **east** 2:17 | **entirety** 47:8 | |
| | **ec3m** 2:10 | **entities** 13:10 137:3 138:16 139:13 | **ex** 98:18,20 99:4,11 136:18 |
| | **edits** 27:6 | | |
| | **effect** 3:15 81:10 83:12 | | **exact** 30:15 57:25 110:14 113:5 |
| **double** 123:17 | **either** 81:20 84:14 105:5 129:24 | **entity** 12:15 13:3 73:6 136:23 138:19 | |
| **doubt** 118:21 | | | **exactly** 11:25 63:12 88:18 |
| **dr** 7:5,12 69:3 133:15 148:11 | **emphasize** 120:9 129:15 | **envisage** 112:12 | |

**[examination - falling]**                                   Page 13

**examination** 3:13 7:10 40:2 40:7
**examined** 7:9
**example** 19:3 33:17 35:11 38:15,17 55:22 57:12 96:5 97:10 99:17,18 100:9,18 137:12
**exceed** 134:4 135:19
**exceeds** 135:12 144:6,15
**except** 3:9
**exception** 98:24 134:12
**exceptional** 99:5
**exceptions** 94:24 95:22 98:14
**excerpt** 58:24 65:6 151:11
**excess** 136:15
**excluded** 10:24 92:10
**exclusion** 85:11 89:15 91:17 93:9
**exclusively** 18:11 58:24

**executed** 38:7 139:16
**exercise** 74:16 76:15 87:23 88:18 89:4,7 89:13 91:11 93:22 94:7,18 94:21 95:6,10 95:14,18 96:2 97:13,21,24 98:5,22 99:7 101:8,22 133:23 136:14
**exercised** 90:24 91:18,18 97:6 121:2
**exercising** 98:11
**exhibit** 27:20 27:24 28:24 29:3 54:17,22 56:25 60:17,20 60:24 61:7,15 62:7,21 63:4 63:18,21 64:4 64:8 65:5,5,6 69:4 75:17 89:23,24 122:15,16 137:22,22,24 141:7,8 145:2 145:11,12 151:5,7,9,11,14 151:15,16,19

151:22
**exhibits** 52:4
**existence** 129:3
**existing** 91:19
**exists** 126:17 128:7
**experience** 9:14 22:16
**expert** 10:16,19 10:22 13:21 14:13 22:20 23:15,23 24:3
**explain** 18:14 73:24 74:11 78:21 80:18 95:13 96:4 111:5 117:5 119:3 121:18 125:2 131:9 132:3 135:21 137:17
**explained** 94:10 144:18
**explicit** 128:17
**exploring** 139:4
**express** 30:11 30:16,19 76:13
**expressed** 120:13
**expression** 29:25
**expressly** 99:21

**extant** 115:19
**extempory** 83:3
**extent** 69:10 90:13 92:3,6 92:20,25 93:4 98:17 100:21

**f**

**f** 2:13 15:9 150:2
**face** 62:14
**fact** 24:17 25:23 30:9 44:9 53:7 62:25 70:16,21 71:6 79:9,17 80:7,20 88:21 100:15 109:21 116:19 117:23 121:9 125:25 138:22
**factories** 77:16 77:22
**facts** 69:8,12,17 74:21
**factual** 26:22
**fair** 19:4 44:23 44:24 85:24 97:7,8 117:11 119:13 122:11
**fairly** 96:24 116:23 119:18
**falling** 112:9,10

**[falls - given]**                                                              Page 14

| | | | |
|---|---|---|---|
| **falls** 94:9 146:24 147:11 147:18 | 65:17 74:24 79:20 122:22 138:3 145:16 148:20 | 132:9 137:12 | 91:13 94:8 96:15 115:7 134:19 135:22 141:18 148:10 150:14 |
| **familiar** 65:16 86:22 108:15 | **flexner** 2:16 7:2 | **formal** 24:9 | |
| **fan** 15:9 | **floor** 2:9 | **formally** 26:19 | |
| **fashion** 135:12 | **focus** 140:22 141:2 | **formed** 49:22 | **g** |
| **favor** 74:17 | **follow** 105:13 122:3 | **forms** 140:22 141:2 | **g** 15:5,9 |
| **fees** 71:16,25 | **followed** 60:4 | **forth** 22:23 39:6 41:3 45:10 50:5 | **general** 17:17 61:9 91:9 94:23 95:11,16 95:17,23,25 98:14,16 110:12 139:25 140:5 |
| **fell** 42:19 | **following** 38:18 90:23 96:5 133:18 | **found** 84:25 | |
| **femino** 21:2,4 | **follows** 7:9 95:18 | **framework** 119:10 | |
| **figures** 16:14 | **foot** 131:8,11 | **framing** 102:4 | |
| **filed** 5:19 22:13 28:15,25 42:5 64:3,10 67:4 126:14 128:3 128:22 | **footnote** 53:12 53:24 56:17,19 59:14 64:25,25 80:12 | **frankly** 77:5 | **generally** 9:23 22:15 44:21 |
| | | **freestanding** 129:9 | **gestures** 8:12 |
| **filing** 3:6 42:18 | **force** 3:15 | **frequently** 123:9 | **getting** 23:6 60:2 75:9 94:22 96:3 |
| **final** 4:16 31:4 37:17 59:11 60:5,10 62:25 131:4 | **foregoing** 150:10,12 153:5 | **front** 41:21 42:23 117:18 | **gibbon** 119:4 |
| | | **full** 8:3 9:19 23:13 25:12 48:24 64:5 67:4 88:4 111:3 130:10 130:25 131:21 | **give** 38:15 81:16 83:22 133:3 140:6 |
| **find** 43:23 120:11 121:10 | **foreign** 1:9,17 2:4,11 6:23 7:16,20 38:22 105:21,24 142:17 | | **given** 74:6 76:12,16,25 83:25 85:6,21 87:3,24 88:7 88:11,21 89:14 91:8 92:4,9 93:2,9 94:6,16 97:12,19 98:25 99:2 103:11 |
| **fine** 29:11 | | | |
| **finish** 98:3 | | **functions** 64:21 90:16 112:24 114:11 | |
| **finland** 30:6 | | | |
| **firm** 10:3 11:23 14:15 15:13,17 72:21 | | **funds** 71:20,25 | |
| **first** 7:7 8:4 29:16 32:2,4 33:2 34:2 35:24 55:8 | **form** 3:9 14:10 39:9 58:17 61:25 62:11 83:4 93:14 | **further** 3:8,12 39:2,8 43:19 52:22 55:10 74:12 90:25 | |

105:15 135:13 140:3,4 149:2 153:10
**giving** 51:16
**gledhill** 22:4 115:15,25 116:13 117:20 117:25 119:2 119:10,22 120:14
**gledhill's** 116:25 118:2 120:10
**glen** 41:22
**glenn** 42:23
**global** 1:8 5:18 152:1 153:1
**go** 5:14 8:7 30:4 31:11 35:10 40:8 45:10 46:21 47:4 56:2,4,23 57:3,22 60:13 65:19 69:6 75:16,19 76:19 77:19 84:18 100:3,23 103:3 113:7 117:6 123:8,13 127:12 128:15 133:4,15 134:15 135:24 138:18 142:4 144:13,25

146:2 148:19
**goes** 76:11 92:12 116:2,6 116:14 117:5,9 133:22 142:7
**going** 5:2 8:9 28:23 54:16 62:12 68:11,13 68:20 99:25 102:22 110:19 110:19 120:18 132:20 133:7 134:15 149:7
**good** 4:10,25 6:19,25 7:12 7:13 132:18
**govern** 56:11 121:22
**governed** 143:5
**governing** 70:10
**government** 73:6
**grant** 70:20
**granted** 89:2 89:10 102:20 134:18 142:16
**granting** 32:8
**grants** 34:5 37:2,15
**great** 4:19 80:10
**gregory** 2:15

**ground** 8:7
**group** 138:12 138:21,24
**guarantee** 18:24
**guess** 59:25 92:23

**h**

**h** 138:12 151:2 152:3
**half** 29:16
**hands** 81:17 83:22
**happen** 29:6 85:9 87:6 88:23
**happens** 127:21
**happy** 8:14,15 132:16
**harbord** 2:12
**harm** 81:18 83:23 112:8,10 138:24
**harmed** 84:6
**hazards** 115:19
**head** 16:7
**heading** 121:19 121:24,25 122:9 123:23 124:5,11,12
**hear** 36:12

**heard** 5:11
**hearing** 6:14 41:21 42:23 43:15 44:17,23 45:16 54:2,10 54:18,23,25 55:16,19 56:7 57:5 62:6,12 64:6 65:7 75:16 102:9 110:13 118:4 121:8 151:10 151:13
**heavily** 144:22
**helpful** 35:21 99:15
**helps** 46:4
**hereto** 3:6 153:8
**heritage** 138:17 138:20,23
**heritage's** 139:6
**hesitate** 126:25
**hide** 57:21 66:25
**high** 10:8 13:25 73:18 122:6
**hold** 137:15
**holding** 77:14 134:7 139:13
**holdings** 1:8 5:18 152:1 153:1

**[holds - instructed]**                                              Page 16

**holds** 118:14
**hong** 2:13,14
  15:17 72:21
  76:3
**honorable** 91:2
**hope** 37:13
**hour** 8:19
  16:19 20:16
  68:12 132:20
**hourly** 16:17
**hours** 20:15
**house** 2:13
**hybrid** 20:8
**hypothetical**
  99:23 136:25
  139:19

**i**

**identical** 64:10
  90:6
**identification**
  29:5 54:24
  65:8 89:25
  122:17 138:2
  141:10 145:13
**identify** 27:23
  28:3 30:3
  143:23
**identifying**
  71:20
**immediately**
  39:19
**impair** 108:6
  109:10,16

111:16
**impaired**
  108:20 112:8
**impairment**
  110:7 111:8,19
  111:19,20
**important**
  114:19 127:17
**imposed**
  138:23
**improper** 94:21
  98:21 139:22
  139:24
**improperly**
  95:11,15 97:23
  98:6 137:13
**improve** 32:25
**improved**
  50:15
**incidental** 81:8
  82:25
**include** 28:4
  49:4 60:24
  61:16,16 63:4
  63:17,20 88:3
  88:5
**included** 27:8
  27:20,24 28:5
  52:3,5 61:7,15
  64:3
**includes** 38:12
**incomplete**
  139:19

**inconsistent**
  119:9 140:12
  142:24 144:2
**inconsistently**
  136:13
**incorporated**
  27:4
**incorporates**
  123:8,11
**independent**
  129:3 135:8
**independently**
  69:16 70:4
**indicate** 52:9
  52:24
**indicated** 102:3
  150:11
**indication**
  79:15
**indirectly**
  72:13,22 73:7
**individual**
  104:22 105:6
  106:25 142:7
**individually**
  13:4 112:9
**infelicities**
  29:25
**infelicity** 83:2
**information**
  135:8
**informing**
  28:21

**initial** 11:17
  12:19 45:8
  58:14 103:24
**initially** 13:5
**inquiries** 135:7
  135:11
**insanitary** 78:5
**insofar** 14:4
  32:10 91:20
  92:12 111:4
**insolvency** 9:24
  24:4 36:3
  38:22 39:13
  64:19 86:23
  87:17 93:23
  95:5 97:19
  105:21,25
  112:22 121:22
  122:9,16,20,25
  124:16,23
  125:4 145:2,12
  145:17,18,21
  145:23 146:10
  146:16 148:2,6
  151:15,22
**instruct** 39:20
  40:21
**instructed**
  14:13 25:14
  26:10 42:8,10
  42:11,13,16,17
  47:4 52:18
  61:4 63:16
  107:18

**[instruction - jpls]** Page 17

**instruction** 56:14 61:14
**instructions** 13:13 40:15 41:17 43:22 103:24
**instructs** 9:6
**intend** 41:20 45:8
**intended** 80:4 80:18 111:5 145:20
**intending** 40:12 41:14 42:22 43:14 44:11,16 46:7 83:5
**intends** 52:15
**intention** 45:12
**interesting** 81:10 83:11
**interfere** 101:7 101:21 111:9
**interim** 121:24 123:21,23 124:6,10,21 126:17 128:7,9 132:10
**internal** 136:13
**internally** 136:2
**internet** 5:8
**interpretation** 73:21 74:8,18

78:5 94:10 143:6,8
**interpreting** 75:10 79:25 124:4
**interpretive** 74:16 75:14 92:18
**interprets** 86:15
**interrupting** 77:18
**intervention** 90:25
**introducing** 45:2
**introduction** 44:22
**invariably** 77:14
**investigate** 70:5
**investigated** 26:20
**invoked** 126:12 127:25
**involved** 72:13 72:21 73:7
**involves** 124:21 130:19
**islands** 91:22 92:9 93:7
**issue** 25:7,18 41:10 107:16

120:8
**issues** 9:25 11:10 22:4 24:25 25:2,13 25:24 26:7,10 40:17 43:23 45:9 46:19,19 47:13 48:24,25 50:6,10 51:11 52:18
**items** 140:24

**j**

**j** 56:8 112:20
**jacob** 2:5 6:19
**jacqueline** 15:13
**jake** 7:15
**james** 136:19
**january** 30:13 83:8
**jeff** 5:25
**jeffrey** 2:22
**jineen** 1:18 6:3 150:6,21
**join** 10:3
**joined** 10:5
**joining** 7:4
**joint** 7:22 90:11,22 92:4 93:3,21 95:2 124:20
**jpl** 7:22 30:25 32:12 82:2

84:22 99:20,23 100:2,6 114:22 137:5 138:16 138:19
**jpl's** 81:6 140:16
**jpls** 64:22 75:23 76:21 77:24 78:3,12 78:19 79:10,13 79:16 81:17 83:23 85:7,21 87:4,14 88:9 88:11,22 89:2 89:3,11,11,15 91:8 92:9 93:9 94:16,17,21 97:12,12,20,20 98:18 101:8,16 101:22 103:11 104:6 111:7 112:18,25 130:24 133:19 134:19,23 135:13,19 136:21 137:6 137:14,19 138:15 139:2 139:16,22 140:10,20 141:9,16 143:25 144:4 151:21

**[judge - limitation]**                                    Page 18

**judge** 41:21 42:23 59:17
**judge's** 75:6
**judgment** 56:19 58:15,25 59:2,6,9 62:19 65:2,14,21 66:4 67:7 75:21 80:16 83:3 86:5 104:17 105:15 105:16 111:3 113:15 115:18 116:16 118:19 120:2,13
**jump** 33:14
**june** 1:12 5:3
**juridical** 85:14 102:12 110:17
**jurisdiction** 78:2 79:12,18 91:22 92:8 93:6
**justice** 30:13 34:10 54:2 55:16 62:19 75:22 76:11,23 78:9,14,18 79:3,15 81:2 81:25 83:6 85:19 87:2 94:4 102:10 103:8 107:11 115:12,13

117:12 118:20 119:6,14,24
**justices** 53:2

**k**

**k** 7:6 8:5 138:12
**key** 17:23 18:3
**khoon** 138:12 138:21,24
**kind** 139:15
**kingdom** 53:6
**know** 8:6,15,20 8:21 16:15 57:11 58:11 59:9 62:24 63:3,12 64:9 64:14 66:18 71:15,24 72:7 72:12,18,19,20 73:3,5,11 100:12 107:20 113:20 123:7 125:22 148:5
**knowing** 94:20
**knowledge** 12:17 49:23 50:12,17,19
**knows** 100:2
**kong** 2:13,14 15:18 72:21 76:3

**l**

**l** 3:2 7:6 8:5
**language** 27:3 35:13,17 57:5 57:10,20,25 58:4 61:9 66:12,14 74:3 75:2,4,10 79:24 80:2,3 80:21 82:11 101:6,20 112:15 113:5,6
**late** 11:13
**law** 10:19 14:15 15:13,17 18:3,19 19:6 23:4,12,16 24:4,7,10,15,18 25:2,7 38:18 38:19,19 39:12 62:10 72:21 96:23 104:24 105:3,9,14,18 106:7 107:20 107:24 108:2 108:18 109:15 111:18,22 124:22 126:4 127:11 140:13 142:25 143:5 144:2,8,16,23
**laws** 24:21

**lawyers** 11:22
**laying** 78:10,18 85:19 115:12
**leading** 75:13
**leads** 40:9
**led** 136:10
**lee** 15:13,13,17 72:21
**legal** 2:11 6:2 61:24,25 96:9 96:12 109:19 143:13
**legally** 62:9 95:25
**legislation** 145:19
**lens** 81:20 84:14 85:5
**letter** 13:22 137:24 138:10 138:14,21 151:16
**level** 10:8 13:25 17:18 73:18 122:6 128:18
**liable** 137:13
**licensed** 139:5
**life** 139:9
**light** 74:4 75:3 75:5 104:18 111:22
**lime** 2:10
**limitation** 61:11 110:7,8

110:23
**limitations** 32:16 92:20
**limited** 1:8 5:19 37:17 64:19 65:23 66:14 67:10 77:24 79:10 103:13 111:10 112:22 113:5,22 114:3 114:5,18 116:20 117:2,3 117:14 119:16 120:21 138:12 152:1 153:1
**limiting** 31:9 32:9 34:6 36:22 37:4,9
**limits** 37:19
**line** 50:21 102:9 138:11 152:4,7,10,13 152:16,19
**lines** 65:21 66:9 143:7
**link** 4:21 50:21
**liquidation** 31:2 56:11 84:4,5 118:18 121:23,25 124:13,20 125:7,12,19,21 125:23,24 126:3,6,10,11

126:16,18,21
127:2,4,8,13,17
128:6,8,10,11
128:23 129:2,8
129:13 130:3,7
130:8,10,14,15
130:19,20,25
131:8,10,12,14
131:18,21
132:2,7,8,11,15
134:5,6
**liquidator** 84:23,24 87:17 87:18,20 88:2 88:4,7 89:10 90:13 114:6 117:5 126:14 127:5,13,15,25 128:3,19,21 129:24
**liquidators** 7:22 22:17 41:10 65:24 90:12,23 92:5 93:3,21 95:3 113:22 114:4 116:19 119:17 120:23 131:19 146:24 147:4,8 147:9,10,17,21
**list** 52:4 76:20
**literally** 82:20
**little** 31:20 33:10 34:21

52:22 55:10
74:11 84:25
97:3 127:20
141:17
**llp** 2:2
**location** 57:6
**logged** 51:4
**london** 2:10 20:10,12 21:5 21:8
**long** 20:13
**longer** 42:11,13
**look** 16:5 18:4 31:16 33:11 35:4,14 53:11 54:25 55:4,21 56:12,18 57:23 60:11 64:16 65:20 67:22 74:25 75:5,11 79:23 80:15,23 84:23 86:7,10 86:20 88:13,16 89:20 91:13 92:19 102:8 111:21 112:3 113:18 115:10 117:18,22 118:2,3 119:12 121:17 125:16 126:23 138:7 146:7
**looked** 16:14 17:21,23,25

18:3,6,9,15,18
18:25 20:18
41:13 46:14
66:5 75:18
81:21 84:15
101:25 112:3
112:15 113:6
**looking** 19:5 32:3 39:10 46:20 50:15 52:22 55:6,8 55:23 56:24 57:13,15,17,18 58:14 66:19 67:12 86:16 122:8,22 124:3
**looks** 29:16 55:20 65:16 122:24 145:8 145:16
**lordship** 79:6 80:6,14 82:18 83:4,19 84:9 84:12 86:8,15 86:19 103:20 103:25 104:16
**lordship's** 86:4
**los** 2:17
**loss** 57:16
**lot** 114:24 117:9 136:25

**[m - middle]** Page 20

| m | | | |
|---|---|---|---|
| **m**  2:5 7:6 8:5 15:5 33:24,25 | 100:7 104:16 127:4 128:17 | 27:12,15,19 60:16,19,21 | **meaning** 143:13,14 |
| **made**  37:23 74:5 83:7 94:10 100:19 115:15,24 116:13 119:21 121:9 126:2 135:6 146:9,11 146:16,18 148:2 153:6 | **making**  74:6,8 75:6 78:22 79:5 81:25 83:2 103:9 104:23 110:21 115:23 122:7 124:2 132:10 135:11 | 61:4,8,15,17 62:2 64:2 137:23 **matter**  5:18 10:21 11:7 12:2 14:2,17 14:20,24 15:4 15:8,12,16,22 16:3,13,25 17:4,8,15,23,24 | **means**  26:5 92:3 **measure**  134:7 **mechanism** 88:25 **media**  5:15 68:18,23 133:5 133:10 149:3 |
| **maintain**  90:14 **maintaining** 64:20 112:23 | **managed** 114:10 | 19:3 22:24 23:3 24:14,24 | **meet**  19:12,19 **meeting**  21:5,8 |
| **maintenance** 114:9 | **management** 81:12 83:14 | 26:11 28:22 42:14 50:4 52:6 69:9 | **meetings**  20:2 20:14,21 21:2 21:3 |
| **make**  8:10 29:12,12 31:13 33:8 37:14 54:19 55:21,25 61:12 67:25 | **manner**  6:7 136:6 **mark**  28:24 54:16 65:5 122:14 141:6 145:11 | 71:17 90:7 95:25 107:2,8 107:10 109:15 127:11 130:24 140:4,17 144:3 **matters**  16:3 | **members**  10:11 **memory**  20:19 **mention**  31:18 **mentioned**  7:14 13:20 23:14 |
| 74:21 80:9,17 81:18,19 84:13 84:13 86:18 89:18 94:13 100:20 116:22 118:7 123:18 126:5 130:7,10 130:16 134:10 141:19 147:6 | **marked**  29:4 54:23 65:7 89:25 122:17 137:25 141:9 145:13 **material**  61:24 62:11 79:2 80:7,20 | 21:15 22:12 23:12 24:19 25:15,16 38:5 38:13 40:5 46:11,24 72:2 145:23 **mean**  25:24 33:17 34:23 | 32:21 34:2,16 36:6 37:22 40:12 59:7 63:22 65:10 93:13 99:10 100:10 109:24 **menton**  2:22 5:25 |
| **makes**  78:4 79:14 93:8 | **materialize** 87:13 89:6 **materially** 50:14 **materials**  18:6 18:8,9,15 | 67:24 74:12 95:14 106:11 125:13 126:4 | **merit**  1:20 150:7 **met**  19:21 **mg**  1:5 **middle**  75:20 80:25 |

**[midland - never]**

| | | | |
|---|---|---|---|
| **midland**  30:7 | 34:1 35:1 36:1 | 120:1 121:1 | **name**  5:25 7:14 |
| **mind**  13:7 16:9 | 37:1 38:1 39:1 | 122:1,16 123:1 | 8:3,4 51:5,5 |
| 31:22,23 39:19 | 40:1 41:1 42:1 | 124:1 125:1 | 114:25 |
| 46:17 62:7 | 43:1 44:1 45:1 | 126:1 127:1 | **narrow**  85:22 |
| 79:7 80:11 | 46:1 47:1 48:1 | 128:1 129:1 | 114:8 120:24 |
| 86:9,19 98:19 | 49:1 50:1 51:1 | 130:1 131:1 | 120:24 138:9 |
| 107:12 132:25 | 52:1 53:1 54:1 | 132:1 133:1,15 | **narrowness** |
| 140:21 | 54:22 55:1 | 134:1 135:1 | 77:12 |
| **minute**  86:25 | 56:1 57:1 58:1 | 136:1 137:1,24 | **nature**  39:10 |
| 98:15 | 59:1 60:1 61:1 | 138:1 139:1 | 98:25 134:4 |
| **minutes**  10:14 | 62:1 63:1 64:1 | 140:1 141:1,8 | **necessarily** |
| 59:15 112:2 | 65:1,6 66:1 | 142:1 143:1 | 85:8 87:5 |
| 132:22 | 67:1 68:1 69:1 | 144:1 145:1,12 | 88:11 125:23 |
| **minyi**  15:5 | 69:3 70:1 71:1 | 146:1 147:1 | 126:3 127:12 |
| **mistyped**  30:8 | 72:1 73:1 74:1 | 148:1,11 149:1 | 129:21 130:18 |
| **mithani**  18:4 | 75:1 76:1 77:1 | 149:3 150:10 | 133:25 |
| 30:13 33:25 | 78:1 79:1 80:1 | 151:4,8 152:2 | **necessary** |
| 36:6 53:2 | 81:1 82:1 83:1 | 152:24 153:2,4 | 26:16 50:8 |
| 73:21 78:22 | 84:1 85:1 86:1 | 153:13 | 52:2,8,12,20 |
| 80:19,22 83:6 | 87:1 88:1 89:1 | **moment**  127:18 | 67:23 69:10 |
| 111:6 120:7,15 | 89:24 90:1 | **moran**  2:7 6:22 | 90:14 153:7 |
| **mithani's**  79:3 | 91:1 92:1 93:1 | **morans**  2:7 | **need**  4:21,23 |
| **model**  62:8 | 94:1 95:1 96:1 | **morning**  5:2 | 8:19 61:6,24 |
| **mokal**  1:16 | 97:1 98:1 99:1 | 6:19,25 7:12 | 76:14 85:9 |
| 5:16 7:5,12 8:1 | 100:1 101:1 | 7:13 | 87:6 88:23 |
| 8:5 9:1 10:1 | 102:1 103:1 | **multiple** | 89:3,11 91:10 |
| 11:1 12:1 13:1 | 104:1 105:1 | 140:24,24 | 94:17 95:19 |
| 14:1 15:1 16:1 | 106:1 107:1 | **mystery**  58:13 | 97:20 99:20 |
| 17:1 18:1 19:1 | 108:1 109:1 | **n** | 112:3 |
| 20:1 21:1 22:1 | 110:1 111:1 | **n**  2:1 3:2 15:5,5 | **neither**  67:7 |
| 23:1 24:1 25:1 | 112:1 113:1 | 15:9,9 138:12 | **never**  23:15,18 |
| 26:1 27:1 28:1 | 114:1 115:1 | 150:2 | 23:22 116:17 |
| 29:1,3,4 30:1 | 116:1 117:1 | | 116:18 |
| 31:1 32:1 33:1 | 118:1 119:1 | | |

**[new - oppose]**                                                          Page 22

**new** 1:3,22 2:3 2:3 5:21 6:4 7:8 145:4 149:4
**nodding** 8:12
**nonapproved** 55:24
**normal** 139:8
**notary** 1:21 3:14 7:7 150:9 153:14,21
**note** 5:5 7:18 24:22 25:22 26:14 34:18 46:23 51:19,24 53:12,24 82:9
**noted** 68:10 149:8 153:7
**notes** 36:5 150:13
**notice** 82:4
**noticing** 6:16
**notwithstandi...** 47:11
**number** 87:9 149:3
**numbers** 30:16 59:3

**o**

**o** 3:2 7:6 8:5 91:6 138:12,12 150:2

**object** 9:2,4 14:10 109:25
**objecting** 110:3
**objection** 11:3 19:25 24:12 25:4,10 26:18 26:23 28:20 39:9 41:23 43:17 44:19 45:6,20,24 49:8,21 63:14 69:8,18 71:12 71:22 72:4,10 72:25 73:10 78:13 97:25 103:18 106:10 107:3 108:4,11 111:14 117:15 124:24 126:20 139:18
**objections** 3:9 6:7,8,14 46:3
**objective** 74:4 75:3
**objector** 2:18
**objectors** 7:3
**obligations** 96:9
**observations** 83:17
**observed** 50:23 51:20 52:9
**obstruct** 103:4 103:4,4,4

**obtain** 98:18,20
**obtaining** 32:13 76:7 101:17
**obvious** 76:14 125:20 126:7 127:16 139:3 143:3
**obviously** 77:2 125:25 138:6
**occurred** 99:8
**offer** 22:20 24:14 40:12 41:14 44:14 45:9 107:7 143:17
**offered** 23:15 28:19 48:4 49:17
**offering** 24:18 24:20 26:6,15 45:8 54:6 70:24 71:4 106:6,12,17 107:2 108:18 109:8
**officers** 136:16
**oftentimes** 60:2
**okay** 4:11 7:24 8:24 9:6 31:15 135:21 145:6
**old** 122:24 123:2

**once** 54:14 99:9
**ones** 100:10 119:24
**ongoing** 132:8
**open** 99:10 128:11
**operate** 77:15
**operation** 145:21
**opine** 11:10
**opinion** 24:15 24:18,20 26:6 27:8 38:23,25 70:24 71:5 106:6,12,21,25 107:6,25 108:18 109:8 109:14 110:22 115:11 117:12 119:15,19 134:11 135:11 135:14,15,16 135:20,22 142:23 144:22
**opinions** 26:16 28:18 39:5,8 40:13 41:15 45:8,9 49:17 50:6 53:5 54:7 106:17 143:17
**oppose** 38:21 102:22 103:16 104:5,9,13,15 104:20 105:19

**[oppose - paragraphs]**

105:24 106:3,8 106:22 110:20 111:11

**opposed** 13:3

**opposing** 111:13

**opposition** 135:3,6

**order** 4:4 18:4 18:5 30:13 33:25 34:8 36:6,7 53:13 53:21 61:24 62:10 63:6 73:21,22,25 74:3,5,7 75:6 75:10,14 78:6 78:22 79:3,25 80:20,22 81:6 81:11 82:23 83:6,7,13 85:7 85:14,22 86:8 86:18 87:4,13 88:14,17 89:4 89:12,25 92:16 94:17 95:18 97:21 101:5,19 102:13,18 103:2,14,15 110:2,6,11,17 111:6 114:7,13 114:23 120:7 120:16,23 126:3,6 127:4

130:7,11 134:2 141:2,5,8,14 143:4,7,9 144:5 151:14 151:19

**ordered** 142:5 142:6

**ordering** 4:3,16

**orders** 52:25 79:22 82:2,3 84:4,5 86:6 89:21 90:7 136:20 137:5 139:17

**ordinary** 146:18 147:22

**originating** 146:11 147:5

**ostensible** 96:7

**outcome** 92:13 126:4

**outcomes** 130:11

**outlined** 90:21

**outskirts** 38:13

**overall** 56:9 58:4

**overlapping** 61:21

**own** 13:6 16:24 16:25 18:2 29:7 39:23 104:10,22 105:25 106:24

111:13 129:10

**owned** 90:15 114:10

**owns** 136:23 137:4 138:20

**p**

**p** 2:1,1 3:2

**p.m.** 149:6,8

**page** 8:8 29:17 47:21 53:11 55:9 56:4 57:3 57:8,13,19,22 58:9 59:3 65:17,19,20 66:9 75:19 76:20 77:19 81:2 84:19 115:6 116:9,10 117:17 119:15 122:22 123:9 123:13 144:10 144:13 145:16 146:2 151:5 152:4,7,10,13 152:16,19

**pages** 55:5 59:3 119:7 122:22

**paid** 17:13

**paper** 19:2

**para** 36:9,17 101:5,19

**paragraph** 30:12,16,24

31:4,8,12,16 32:22 33:6,25 34:20 35:10,11 35:17 36:2,20 36:24,25 37:6 37:8,25 46:21 52:23 56:4,6 57:24 60:13 61:9 62:14 64:15 66:13,15 69:6,7 73:16 73:24 76:22,22 77:2 78:21 79:3 80:8,19 80:21 90:11,20 91:14,15,16 92:2,3,5 93:3,8 93:19,20 95:2 96:25 97:10,11 97:16 100:23 101:12,13 102:2,5 103:11 104:2,11,13 112:14,16 113:19,20 115:4 118:15 120:6,15 121:15 128:15 133:16,17 138:18 140:7,9

**paragraphs** 33:13 78:15 80:10,18 92:14 92:16 93:16

**[paragraphs - position]**                                    Page 24

115:21 117:23 118:9,10 120:18 142:8

**parasitic** 128:24 130:14

**park** 2:17

**part** 33:7 36:22 37:3,18 121:24 123:14 124:12 124:15,15 125:7,10,13,13 125:15 126:10 132:7 144:10 144:12

**parte** 136:18

**participants** 5:9

**participated** 11:16 50:22

**particular** 17:25 18:18 25:15 32:6 33:3 34:24 51:16 61:10 62:18,20 74:18 75:5 86:9 87:20 92:19 110:10 120:5 136:6 140:22 141:2 142:2

**parties** 3:6 5:13 22:6 25:8 34:9 53:15 61:5,19 63:11,24 136:8

**parts** 109:6

**party** 12:7,9 96:10,18 136:2 136:10 150:15

**passage** 113:13 120:19,20 121:14

**passages** 78:23 78:25 80:11,13 104:18 107:12 111:2,5 116:17 121:3

**path** 119:5

**pause** 4:13,24 113:9 145:3

**pavesi** 1:18 6:3 150:6,21

**pay** 71:21,25

**paying** 71:15

**pending** 8:23 126:18 128:8 128:10 129:17 129:19 130:20 132:13

**percent** 139:6

**perform** 39:21

**performed** 38:4

**perishable** 100:17 133:25 134:14

**permissible** 144:7

**permission** 136:5

**permitted** 103:16 107:24 144:16

**person** 12:15 12:20 19:17 20:6,6,7,9 45:19 46:8 73:5 81:13 83:15

**persons** 15:23 71:5

**persuade** 102:25

**persuasive** 116:11 117:20 118:7,11 119:2

**perusing** 31:25 33:21 35:15

**petition** 140:17 140:18

**petitioner** 5:17

**phrase** 30:21 32:18 33:10,18 67:13

**phrased** 34:19 34:25 35:12

**piece** 113:14

**pin** 78:4 79:14

**place** 5:13 132:19

**placed** 34:8 110:7

**places** 30:11,15 31:18 32:23,24

33:8 34:19 35:9,12 59:5

**planning** 40:3 45:15,18,23 46:10

**play** 74:23

**pleasant** 81:11 83:12

**please** 5:5 6:11 8:2,10,14 11:5 38:16 68:25 106:13 113:25 133:11

**plenary** 36:18 37:11

**plus** 47:21

**point** 35:7 37:13,22 40:13 42:18 66:5 75:8 81:4,5,8 82:18,23 94:13 100:19 103:9 104:16 110:12 110:22 111:23 116:9,11 122:7 123:25 127:7 127:10 130:16

**points** 18:13,19 31:5 39:18 46:13 141:18

**portion** 115:11 139:6,15

**position** 22:21 98:14,16

**[position - probably]**

119:13 140:2
**positions**  22:22
  26:2
**possibilities**
  66:23
**possible**  126:4
  130:11
**possibly**  77:7
**potentially**
  19:6 133:19
**pounds**  16:19
**power**  30:24
  31:8,9 32:5,8
  32:16 33:23
  34:4 36:2,19
  36:25 37:2,12
  37:14,15,16
  38:20 76:13
  81:9 82:12,25
  85:20 88:3,6
  89:10,13,14,14
  91:17,20 92:4
  92:6,9 93:2,4,8
  93:10 96:11
  97:5,6 99:5
  100:22 101:8
  101:22 102:16
  102:24,24
  103:3,10,12
  105:18,23
  108:10,14
  111:7,9 133:20
  133:23 134:18
  135:25 136:9

136:11,15
  137:20
**powerful**
  117:19 118:6
  118:11,25
**powers**  41:7
  70:14 75:23
  76:15,21,25
  77:3,12,24
  78:3,11,19
  79:10,13,17
  81:6 82:7,12
  82:21 84:22,24
  85:2,6,8,10,11
  85:13,23 87:3
  87:5,7,15,16,18
  87:19,21,24
  88:2,4,5,9,10
  88:16,21,24
  89:2,4,8 90:13
  90:21,24 91:7
  91:9,16 92:10
  92:21 93:22
  94:6,15,22
  95:3,6,10,15,19
  96:2 97:11,11
  97:14,18,22
  98:5,12,22
  102:11 110:16
  112:19 114:5,9
  114:20,21
  117:4,6,7
  120:22,25
  133:18 135:12

135:19 137:20
**practicable**
  98:17 99:3
**practical**
  109:20
**practice**  9:20
  9:23 10:9,13
  23:13 24:6
**preceding**
  118:9
**precise**  97:3
  109:23
**precisely**  85:3
**precluded**
  110:3
**prejudgment**
  115:20
**premise**  131:7
**preparation**
  29:19 39:25
  40:7
**prepare**  17:18
  18:7 19:13
**prepared**  19:10
  50:4
**preparing**
  18:10 44:12
  62:16 64:12
  67:15 68:8
**present**  2:21
  20:20 46:8
  137:12
**presentation**
  34:10

**pretty**  78:10
  85:20
**previous**  83:17
  117:22 119:24
**previously**
  42:15
**primarily**  84:2
**primary**  17:21
  39:16 107:17
**primrose**  119:5
**prince**  1:8 5:18
  152:1 153:1
**principal**  96:8
  96:12,13,15,17
  96:18 99:11,14
  135:25 136:3,3
**principal's**
  96:8,20
**principle**  74:24
  74:25 79:19,21
  79:23 92:18
  95:17,23,24
  112:6 136:19
  140:5
**principles**
  61:25 73:20
  74:14,15,23
  143:6,8,9
**prior**  14:19,23
  15:3,7,11,15,21
  16:2 42:18
**privileged**  27:2
**probably**  8:18

**[proceed - put]**                                                          Page 26

| | | | |
|---|---|---|---|
| **proceed** 68:25 133:12 | **process** 44:22 53:16 74:2 100:3 143:22 | **provides** 95:2 105:3,10,17 107:21 | **provisos** 93:17 95:9 |
| **proceeding** 6:24 7:17 15:24 38:22 40:14,19 41:16 46:12 47:18 58:22 69:25 105:21,25 106:6 124:20 124:22 125:10 125:11,18 126:19,21 127:3,6,8,13,18 128:8,12 129:9 131:23 142:17 | **professional** 1:19 9:14 150:7 | **provision** 110:10 142:2 146:25 | **public** 1:21 3:14 7:8 150:9 153:21 |
| | **proffering** 144:21 | **provisional** 7:22 22:17 31:2 41:10 56:11 65:24 84:4 88:7 90:12,22 92:5 93:3,21 95:3 113:22 114:4,6 116:19 117:4 118:18 119:17 120:22 121:23 124:20 125:21 125:23 126:2 126:16 127:25 128:6,19,23 129:8,24 130:13,18,23 131:18 132:2,6 132:15 134:5,6 147:4,9,17,21 | **pull** 113:8 |
| | **proper** 37:19 136:14 | | **pupillus** 10:6 |
| | **properly** 92:21 93:15 95:18 111:22 121:2 127:8 | | **purport** 70:16 |
| | | | **purported** 70:15 91:18 |
| | **property** 133:21 134:17 135:17 | | **purportedly** 71:5 |
| | | | **purports** 70:20 |
| | **proposed** 27:3 27:7 41:9 141:4 144:5,6 | | **purpose** 31:9 32:6,9,13 34:6 36:22 37:4,9 37:10 76:6 79:25 80:19 82:3 101:17 112:18 120:24 122:10 125:11 125:18 |
| **proceedings** 1:9 7:21 12:16 14:4 17:22,24 19:2,8 21:13 25:13 28:15,16 31:2 37:3 39:11,12,14 52:6 53:2 61:6 61:18 72:9,15 72:24 73:9 108:6,21 109:10,16 131:2,8,11,15 132:2,7,15 142:16 145:22 145:22 146:10 146:17 148:2,6 | **proposition** 77:6 117:10 126:8 | | |
| | **propriety** 89:7 | | **purposefully** 79:24 |
| | **proved** 69:9,13 | | |
| | **provide** 9:9 27:3 62:20 80:4 | | **purposely** 75:2 |
| | | **provisions** 86:8 86:10 111:6 122:2,8,11 125:17 142:8 143:11,13,14 143:15 144:11 | **purposes** 31:3 32:10 69:11 76:4 92:21 101:14 120:25 |
| | **provided** 27:12 27:15,16,20 56:10 58:18 68:5 75:12 80:11 93:20 | | **pursuant** 36:24 88:14 136:18 142:19 145:23 |
| | | **proviso** 93:12 | **put** 18:15 29:2 29:10 36:15 |

**[put - recognizing]**

41:24 43:2
44:3 54:18
69:5 94:19
107:12 111:25
115:22 126:8
139:21 140:4
141:4,15
**putting**  92:13
131:6

### q

**qualifier**  40:24
**qualifying**
116:3
**quality**  5:7,8
**question**  3:10
8:14,17,23 9:5
25:17 48:16
92:24 107:10
107:14,19
108:23 109:2
109:13,20,20
109:21,23
111:25 127:20
131:4,7 143:2
145:10
**questions**  9:3,4
38:12 41:24
43:2,4,6,9 44:3
44:10 45:3
73:13 138:9
148:11
**quickly**  31:21

**quite**  82:15
85:25 103:19
125:25 127:16
**quiz**  90:3
**quote**  54:9,12
62:17 66:13
67:8,9 77:21
110:15
**quoted**  58:5
66:13
**quotes**  52:7

### r

**r**  2:1 7:6 8:4
150:2 152:3,3
**raise**  44:11
**raised**  25:8,19
46:24 47:14
**range**  48:23,24
**rate**  16:17
**rather**  8:11
109:20
**ratify**  99:11
**reached**  131:20
**read**  35:21
36:13 78:16,24
82:20 84:16,20
85:4 92:15
101:12 104:17
111:2,10
118:16,19
120:20 121:4,7
121:10,19
130:13 132:2

140:16,18
148:9 153:5
**reading**  39:17
83:3 93:16
115:19 116:16
121:3,12,13
143:10
**ready**  148:21
**reality**  99:9
**realization**
36:18 37:12
**realizing**  32:11
36:5,9,17,21,22
37:3,7,9,18
76:5 101:15
**really**  33:16
62:15 77:8
81:4 97:3
**realtime**  1:21
4:21 150:8
**reason**  9:8 42:3
42:7 49:19
51:23 63:8,10
83:6 84:3
92:17 99:19
102:17 107:15
107:17 125:20
126:7,25 143:3
152:6,9,12,15
152:18,21
**reasons**  74:6
75:6,12 131:9
143:18 144:18

**recall**  11:19
12:24,25 13:5
13:9 16:6
18:23 19:7
28:12 34:25
116:8 140:23
141:16
**received**  13:12
**recess**  68:21
133:8
**recognition**
30:25 32:8,10
36:23 37:2,5
37:10,16 38:21
75:25 76:13
101:14 102:16
102:19 103:10
103:16 104:6
105:19,24
106:9,23 108:5
108:20 109:9
109:15,25
111:7,16
140:17 142:16
144:5
**recognize**
29:15 55:7,12
65:15 122:23
138:3 141:11
145:7,15
**recognized**
76:14
**recognizing**
59:23 122:21

**[recollection - reporter]**                                                       Page 28

| | | | |
|---|---|---|---|
| **recollection** 15:19 48:6 51:12 141:23 | **referred** 28:6 59:2 60:16 147:22 | **related** 9:25 24:25 40:4 46:11 124:22 150:15 | **remaining** 85:2 85:23 |
| **reconcile** 120:12 | **referring** 33:9 57:19 58:20 | **relation** 14:3 17:12 79:2 | **remarkable** 139:2 |
| **reconsider** 80:14 84:10 | 59:3,6,8 87:12 88:20 123:20 144:9 | 80:7,21 89:6 107:11 120:2 121:6 | **remember** 20:23 30:15 |
| **record** 5:2,14 6:16 8:3,9 23:19 68:20,23 133:4,7,10 148:20 149:7 | **refers** 34:8 58:10 86:11 94:5 116:24 119:16 125:7 | **relatively** 85:22 **relevant** 18:13 22:5 28:18 49:16 52:8,12 52:17 69:12 73:20 74:23 | **remind** 54:13 60:12 **remit** 64:20 65:23 66:14 67:10 112:23 113:5,22,23 114:3,4 116:20 |
| **recorded** 5:11 5:16 | **refresh** 20:18 31:21 140:21 141:22 | 75:11 79:2 82:10 105:13 123:5 133:19 | 117:3,14 119:17 120:21 |
| **recording** 5:7 5:12 60:3 | **refusing** 130:7 **regarding** 11:17 13:13 | **relied** 54:6 62:17 63:21 68:4,7 | **remitting** 32:12 76:5 101:15 |
| **records** 16:6 20:17,18 32:14 61:17 76:8 101:18 | 22:12 24:4 34:20 | **relief** 121:24 123:21,23 124:6,11,21 | **remote** 1:15 6:6 6:10 |
| **refer** 7:21 52:20 61:10 71:10 118:16 | **regime** 128:24 **region** 16:18 **register** 46:3 | 126:18 128:7,9 132:10,12 140:12,20,23 140:24 141:20 | **remotely** 5:23 6:10 **repeat** 42:12 43:19 45:22 86:3 |
| **reference** 7:19 21:20 28:9 29:8 53:4,8 57:2 58:3 63:6 64:25 66:6,9 87:8 88:25 | **registered** 1:19 1:20 150:6,7 **regular** 77:9 **regularly** 23:8 23:11 | 141:23 142:9 142:15,24 143:24 144:6 **rely** 61:23 120:19 | **repeatedly** 115:18 119:25 **rephrase** 8:15 31:19 37:24 **report** 10:23 34:24 35:9 |
| **referenced** 94:4 **references** 37:24 143:12 | **reject** 116:4,14 117:10 **rejecting** 118:12 126:8 | | **reported** 105:16 |
| **referencing** 63:13 113:15 | **rejects** 118:13 | | **reporter** 1:19 1:20,21 4:2,6 |

4:11,14,20 6:3
6:9,17 8:8
36:11 46:5
54:20 113:24
132:24 148:16
148:18 150:7,8
150:8
**reporting** 6:7
**represent** 7:16
67:2 90:5
138:13,19
140:11
**representatives**
1:18 2:4,11,11
6:23 7:17,20
**representing**
14:7,12,16
**reproduces**
101:6,20
**request** 67:25
67:25 68:9
**require** 49:24
**required** 96:14
96:22 153:14
**requirement**
136:14
**requirements**
70:11
**reread** 18:2
**research** 18:12
40:8
**researched**
111:23

**reserved** 3:10
**resides** 116:17
116:18
**residing** 118:20
**residual** 41:7
**residuary** 85:2
85:13,23
102:11 103:3
103:12 110:16
**resolve** 58:12
**respect** 40:10
80:10 82:15
83:8 105:12
111:9 120:5,6
138:15
**respectful**
83:25 84:9
**respectfully**
82:21 84:16
**respective** 3:6
**respects** 105:13
**response** 6:12
**rest** 101:12
120:2
**restate** 101:11
**restructuring**
9:25
**result** 131:13
**retain** 85:12
102:11 110:15
114:20,21
117:7
**retained** 10:15
10:18,22 11:6

11:25 22:20
24:14 27:11
149:4
**retains** 99:6
**retention** 11:18
14:2,19,23
15:3,7,11,15,21
16:2
**retroactive**
99:7
**return** 64:15
139:8
**revealing** 26:25
**review** 29:18
40:18 47:8,25
48:5 49:9,13
49:20 53:7
62:10 84:10
**reviewed** 18:17
19:9,9 28:8
52:24 53:13,17
53:25 55:19
59:10,15,24
60:9 62:17,21
62:24 63:21
64:8,11 65:11
68:4,7 70:9,14
70:19 71:19
90:4,6
**reviewing**
34:16 60:25
**right** 8:25
19:11 26:7
33:7,12 41:19

43:10,12 44:14
46:9 57:15
62:23 83:10
85:25 102:6
103:19 111:13
121:3 123:23
129:25 147:19
**rights** 90:12
96:9
**rip** 81:15 83:21
**ripped** 84:7
**riz** 1:16 5:16
7:5 8:4 29:4
133:2 149:2
150:10 151:7
152:2,24 153:2
153:4,13
**rmr** 150:21
**road** 2:14
**robert** 2:15
**role** 10:9
112:18 134:5
**room** 132:25
**rough** 4:7,10
4:17 59:11
60:3,4,10 67:6
**roughly** 134:21
**rpr** 150:21
**rules** 8:7
145:13,17,18
151:22
**run** 108:6,10
108:19 109:11
109:17 111:17

**[run - seek]**                                                                Page 30

112:7

**s**

**s**   2:1 3:2,2
   151:2 152:3
**sale**   135:16
   139:14,23
**sam**   2:7 6:21
**sanction**   89:3
   89:12 90:25
   91:10 93:24
   94:17,23 95:6
   95:20 96:3
   97:20 98:5,10
   98:18,20,23
   99:4,7,22
   100:8,14,16
   134:19 135:18
**sanctioned**
   73:6
**sanctions**
   100:18 138:22
**saskia**   2:6 6:21
**save**   93:20
**saying**   61:13
   65:22 77:23
   82:11,12,17
   87:3 92:25
   94:13 97:17
   111:12 113:21
   114:2,17 117:2
   117:10 118:24
   119:20 132:5

**says**   56:18
   60:15 64:17
   65:2 75:23
   81:2 83:19
   84:12,22 86:13
   90:11,21 91:15
   93:20 102:10
   113:19,20
   115:7 116:8,10
   116:25 117:19
   118:6,10,25
   120:24 123:14
   123:23 133:20
   138:12,25
   142:4,6 146:3
   146:4,7,8,15
**scalpel**   2:9
**schedule**   35:25
   36:2 87:21
   93:23 95:4
   97:18 98:12
   100:13,22
   133:18
**scheme**   56:9,13
   58:4
**schiller**   2:16
   7:2 11:23 12:4
   12:7 13:17
   14:7 16:4
   19:13 20:22,24
   21:8,12,24
   22:10 26:9
   27:18 47:17
   64:2

**scope**   14:2
   24:23 78:11
   144:7,15
**screen**   5:11
   29:2 51:6
   54:19 55:2
**scroll**   29:13
   33:6 55:10
   90:10 91:14
   141:17 142:5
**sealing**   3:7
**second**   33:6
   34:7 36:4 46:3
   46:22 56:3,6
   64:16 69:22
   73:18 92:18
   101:4 121:17
   133:4,20
**section**   64:18
   84:20 91:9
   112:21 121:21
   126:12 127:24
   128:6,17 129:5
   142:18,19
**sections**   86:11
   86:15,17,21,22
   123:22 124:3
**securing**   32:11
   76:5 101:15
**seductive**   119:5
**see**   25:15 35:5
   35:22 37:13
   46:22 47:6
   49:10 50:8

55:2 56:5,15
56:21 57:5,7
57:24 60:15
64:17,23,24
65:17,20,22,25
67:8 69:14
74:8 75:7,21
76:9,10,17,18
78:7,8 81:22
84:21 85:16,17
90:11,18 91:3
91:4,23,24
93:25 94:2
101:2,9,23,24
103:5,6 112:16
113:2,3 114:14
115:2,8 118:24
121:5 122:4
123:14 125:17
129:6,7 134:8
134:9 139:10
139:11 140:14
140:15 142:9
142:11,21,22
146:3,6,13,14
146:20,21
148:4
**seek**   30:25 32:8
32:25 37:2,15
45:9 75:24
76:13 89:3,11
94:17 95:10,14
96:2,14 98:4
98:19 99:4,21

100:8,15
103:10 111:7
136:4 140:10
140:11
**seeking** 34:9
37:14 43:21
45:3 78:21
84:3 98:22
100:4 103:14
104:15 107:13
118:7 141:24
**seems** 33:3
78:10 85:19
87:11
**seen** 5:10 53:20
64:7 77:7
135:2
**selected** 13:21
**self** 10:12 58:19
**sell** 88:3,5
100:4,7 133:21
134:17 136:22
137:6,14,20
140:2
**selling** 134:23
**sense** 65:12
74:15 78:4,23
79:6,14 80:9
80:17 86:18
118:8 127:17
129:19 130:9
**senses** 130:9
**sensible** 81:13
83:15

**sent** 137:23
138:15
**sentence** 32:3,4
33:2 34:3,7
35:24 36:4,8
36:14,16 46:23
56:6 64:17
82:20,24 83:16
84:8,16 101:4
114:16 121:18
**sentences** 35:22
83:17
**separate** 106:8
117:24 130:24
**separation** 31:7
**set** 22:23 39:6
41:3 45:10
50:5 57:17
73:19 74:14
79:21 87:21
88:10 91:16
92:17 93:22
95:4 97:18
103:10 123:6
**sets** 34:4,5
35:25 106:17
120:20
**setting** 33:22
33:24 44:9
106:20 132:25
**several** 23:11
119:21 120:17
125:15

**shareholding**
139:7
**shares** 136:22
136:23 137:4,6
137:12,15
138:20 139:13
139:15
**shipment** 99:24
**short** 68:15
**shorthand**
103:20
**show** 28:23
57:9 65:4
123:9 137:21
**showed** 51:5
**showing** 51:6
57:9
**side** 17:10
**signature**
150:20
**signed** 3:13,15
13:22 53:21
**significant**
41:12
**similar** 25:17
56:12
**simpler** 143:22
**simpliciter**
136:12
**simply** 16:15
33:22 34:7
35:25 36:4
71:11 99:3
143:20

**singapore** 76:2
**sit** 45:13 67:19
**sitting** 17:14
19:4 29:21
31:19 41:19
44:14 46:9
62:23
**situation** 89:9
99:18 100:10
130:19 131:16
134:13 139:12
**slightly** 56:9
58:3 122:24
123:2
**slow** 113:24
**solvent** 125:3
**somebody** 77:8
**sorry** 16:6
42:12 43:21
45:22,25 48:11
48:15 50:22
91:15 98:2
141:25 147:6
**sort** 37:23
99:16 119:10
127:21 137:16
142:12
**sorts** 39:11
96:24
**sought** 26:21
36:23 37:5,11
51:17 88:18
98:11 131:9
132:3 137:17

**[sought - sullivan]** Page 32

| | | | |
|---|---|---|---|
| 140:20,25 141:21 142:9 142:15,24 143:24 | spotted 29:25 | steps 94:8 | subpart 146:24 147:12,18,25 |
| source 50:19,20 71:20 105:8,11 | square 10:4,10 10:12 | stipulated 3:4,8 3:12 | subscribed 153:16 |
| sources 62:9 | stand 32:20 35:25 37:25 82:19 130:12 | street 2:3,10 | subsequent 39:2 53:20 115:23 119:23 |
| south 10:4,9,12 | standing 58:19 | strongest 83:4 93:14 | substance 11:16 17:12 23:7 26:25 27:7 40:22 41:12 |
| southern 1:3 5:20 138:17,20 138:23 139:6 | start 91:15 | structurally 128:24 | |
| space 83:2 | started 10:6 | sub 33:24 | substantive 128:25 129:13 130:15 |
| speak 8:10 16:23 | starting 75:20 80:25 102:9 113:19 142:14 | subheading 124:10 146:4 | |
| speaking 103:20 | starts 65:22 112:17 133:17 | subject 83:16 87:24 93:12,17 94:20,23 95:8 98:7 125:4 136:17 148:11 | substantively 30:18 90:5 |
| specific 46:16 89:19 90:24 91:7 92:24 99:19 106:21 125:17 | state 1:22 6:11 6:15 7:8 8:2 32:23,24 | | substitute 80:2 86:16 |
| | stated 56:8 | submission 120:10 | successive 115:24 119:22 |
| | statement 32:5 33:4 104:23 117:13 118:5 | submissions 84:2 115:24 116:2,6,13 118:3 121:6,8 121:9 | sufficient 49:23 50:12,17 |
| specifically 24:24 43:13 63:16 79:8 100:12 147:8 | | | suggest 79:9 |
| | statements 80:6 | submit 45:3 | suggesting 79:16 |
| specified 31:4 32:11 140:3 | states 1:2 5:20 24:7 | submitted 21:17 22:8 120:14 | suggests 78:17 96:23 |
| specify 136:24 | status 96:12 | submitting 19:23 | suite 2:17 |
| spell 8:3 | statutes 56:10 | | sullcrom.com 2:5,6,7 |
| spellings 148:19 | statutory 56:13 86:10 | subordinate 128:25 129:12 145:19 | |
| spoil 99:25 | stenographic 150:13 | | sullivan 2:2 6:20 7:15 |
| spoiled 100:6 | step 112:6 139:3 | subparagraphs 31:17,22 | |

**[summarized - thinking]**

**summarized** 10:13

**summarizing** 33:23 115:14 117:24

**supplemental** 47:2

**sure** 8:10 29:12 31:13,24 33:8 33:20 43:18 48:15 54:19 55:22 56:2 59:19 61:13 65:11 77:20 78:14 82:18 94:13 100:20 106:11,15 108:16 109:19 116:22 123:18 130:16 132:23 134:10 137:2 141:19 142:3 143:19 147:6

**surname** 8:5

**surprise** 47:24

**surrounding** 75:11

**swear** 6:18

**swearing** 6:9

**sworn** 3:14,16 7:7 23:23 150:11 153:16

**t**

**t** 3:2,2 15:5 150:2,2 151:2 152:3,3

**tab** 137:22

**taiwan** 76:3

**take** 4:10 5:13 8:18,22 33:5 35:14 46:2 49:25 65:17 68:15 70:22 81:6 82:12,14 83:4,15 96:5 99:20 100:11 132:21 138:7 143:16

**taken** 1:16 5:17 22:21 26:2 41:9 68:21 133:8 139:2

**takes** 120:8

**talk** 35:9 99:16 141:18

**talked** 21:10 97:9 103:22

**talking** 31:13 82:6 105:20 110:11 116:12

**talks** 103:21

**tang** 15:5

**technician** 2:22 4:25 6:13 68:17,22 133:3

133:9 148:21 148:25

**technology** 5:24

**teleconference** 1:15

**tell** 17:17 36:14 41:5

**template** 88:10

**ten** 132:22

**term** 108:14 126:22,24 142:17

**terminates** 129:4

**terms** 58:5 86:5 86:20 96:5 103:23 132:17

**testified** 7:9

**testify** 45:15

**testimony** 9:10 10:23 13:13 21:12 22:2,20 23:16 24:23 29:19 41:15 44:13,22 48:12 60:3 109:3 149:2 153:10

**thailand** 76:3

**thank** 4:12 8:25 37:20 99:15 148:12,14

**thing** 31:14 55:25 58:7

94:14

**things** 17:10 59:22 66:24 76:24 77:15 82:5 87:10 96:25 100:13 114:24 117:9 119:8 120:17 121:12 125:16 145:24

**think** 4:22 8:6 13:20 18:23 19:11 23:14 25:22 28:24 32:2,3,15 34:3 34:11 35:10 45:14 49:15 51:25 52:8,11 52:16,20 54:9 61:3 75:17 83:8,18 100:19 101:25 108:22 110:14 112:15 113:11,12,13 116:11 121:2 121:13 122:15 124:2 126:22 127:19,23 131:10 132:19 137:22 147:2 147:19

**thinking** 35:23 136:11

**[third - u.s.]**    Page 34

**third** 75:24 96:10,18 136:2 136:8,10

**thomas** 2:12

**thought** 131:4

**three** 100:2 117:23 118:8,9 149:4

**tick** 142:12

**time** 3:11 9:19 16:21 18:17 19:10,22 23:13 68:19,24 100:5 133:6,11 148:13 149:6,8

**times** 9:3 19:19 54:11

**today** 9:8 17:14 19:5 29:21 102:3 109:4

**today's** 17:18 18:7 29:19 149:2

**together** 78:25 84:21 85:5 86:11 92:2,14 93:16 118:16 120:20 121:12

**told** 120:11

**tonight** 4:17

**took** 9:19 47:17 50:11 57:18

**tool** 75:14

**top** 16:7 55:4 57:24 76:21 78:3 79:13 84:19 115:5 116:10 123:14

**topic** 41:15,20 42:4 46:16

**topics** 40:25 41:2,6 42:20 43:13 44:10,15 48:8,18 49:5 49:11,12

**total** 16:12 149:3

**toward** 102:2

**training** 24:9

**transcript** 4:7 4:17 47:21,25 48:5 49:10,13 49:16,20,25 50:15 53:25 54:5,10,18,22 55:16,18 56:24 57:4,14,23 58:8,15,18 59:11,12,17,24 60:4,5,10,10,25 62:18 63:2 64:5 65:7,13 67:3,5,7,13 68:3 75:17 80:15 84:11 94:5 102:9 113:7 118:4

121:7 151:9,12 153:5,10

**transcription** 150:13

**transcripts** 52:5,25

**transfers** 81:11 83:13

**transparency** 136:18

**trial** 3:11

**triggering** 128:18

**true** 150:12 153:9

**truthful** 9:10

**try** 75:7 97:2 100:3

**trying** 33:16 34:15,22 44:8 55:25 56:5,25 57:21 58:7 60:7 62:15 66:25 67:10 90:3 108:17 118:23 119:11 144:17

**tuesday** 41:21 42:24 44:12,14 45:15

**tuesday's** 43:15 44:17

**turn** 37:16 51:7 69:3 73:15

112:14 121:15 133:14 140:7 143:14

**turning** 22:15

**twice** 19:21,22 43:20 54:15

**two** 13:6 20:15 39:16 40:10 46:13 47:9 48:25 59:22 85:4 92:13,16 93:16 104:4,19 105:3 106:21 106:24 109:5 110:2 115:21 117:22 133:18

**type** 89:5 134:12

**types** 140:24 146:4

**typo** 30:2,5 37:21 66:21 67:14

**u**

**u** 3:2

**u.k.** 76:2

**u.s.** 7:20 11:21 14:6 20:10 24:2,10,15,18 24:21 28:16 44:4 61:6 76:2 103:15,17 104:6 107:20

108:2 110:20
111:8 141:9,15
143:3,5,12,15
144:23 151:20
**u.s..** 102:23
**unattractive**
77:6
**uncontrovers...**
82:16 83:9
**uncontrovers...**
83:9
**under** 16:11
38:18 106:7
107:24 108:18
111:18 121:23
123:22 124:22
125:7,10
126:17 128:6
136:20 139:16
144:7 146:3,24
147:11,18
**underlying**
75:8 130:25
**underneath**
124:5
**understand**
8:13,17 14:11
33:8,17,19
34:15,22 43:25
44:21 48:16,23
50:3 56:2,5
57:2 58:8
59:16 60:7
61:13 63:23

67:6,11 77:10
78:20 87:7
108:3 115:22
118:24 119:11
120:12 124:5
135:5 141:20
144:17
**understanding**
25:12 28:22
30:12 32:4
42:25 48:7,14
48:18,21 51:17
52:14 59:14
60:8 61:18,20
63:11 66:8
67:17,20 68:6
75:8 80:3
86:14 88:24
91:25 93:13
94:3,25 97:17
98:9 103:7,8
103:24 104:11
104:24 105:2,9
105:11 106:4
111:18 122:10
130:17 134:11
140:19 143:10
146:22 147:11
147:16
**understands**
120:8,9
**understood**
43:8,8 44:7

**undertake**
88:19
**unhelpful**
108:24
**unitary** 74:2
**united** 1:2 5:20
24:7 53:5
**universal** 18:8
**unlawfully**
96:19
**unnecessarily**
29:13
**unnecessary**
63:17,19
**unpack** 61:12
**unreviewed**
59:17
**use** 35:17 37:19
85:8 87:5,14
88:23 99:22
**used** 71:20,25
75:4 77:14
92:22 126:23
**using** 5:23 8:12
108:13
**usual** 11:8 51:4

**v**

**v** 125:7,10,13
**vague** 19:25
**valid** 71:2
**validly** 70:6
**value** 64:21
90:14 112:24

114:10 134:3
137:16
**variety** 51:15
**various** 53:4
116:12
**variously** 27:16
**vary** 102:18
103:2,14
**varying** 114:23
**verbally** 8:11
**verify** 26:21
69:17
**veritext** 6:4
149:4
**version** 53:17
53:21 55:23,24
59:8,10 60:9
60:24 62:18,24
62:25 63:5,20
64:5,9,11
65:12 66:20
67:3,12 68:2
122:25 123:17
**versus** 113:6
**vesnan** 105:17
**vested** 117:4
120:22
**vests** 114:6
**vi** 121:24
123:14 124:12
124:15 125:13
125:15 126:10
**video** 1:15 2:22
4:25 5:12,15

**[video - york]**                                                                Page 36

5:16 6:6,10,13
68:17,18,20,22
68:23,23 133:3
133:5,7,9,10,10
148:21,25
149:7
**videographer**
6:2
**view** 14:5 32:15
43:4,6 44:4
49:22 50:2,12
61:25 62:11
78:11,19 80:16
82:2,21 83:25
84:9 85:20,22
109:24 110:6
114:21 131:16
140:10 141:20
143:2,16,20,25
144:3,19
**virgin** 91:22
92:8 93:7
**virtual** 5:23
**virtually** 5:6
48:24
**vries** 2:6 6:21

**w**

**wait** 69:22
**waive** 6:6
**waived** 3:7
**wales** 9:16 30:7
**walkers** 2:9,13

**walking** 75:22
**walks** 119:6
**wallbank** 18:4
34:10 53:3
54:2 55:17
56:8,19 59:2,6
63:6 65:2 66:4
73:22 75:22
76:11,23 78:9
78:15,18 79:16
81:2,25 85:19
87:2 101:5,19
102:10 103:9
107:11 112:20
115:12,13
118:20 119:6
119:25
**wallbank's**
58:25 62:19
94:5 117:12
119:14
**want** 4:7,15
26:11 29:11,12
31:13 33:5,7
33:11 34:17
35:16,19 46:17
59:21 65:4
69:5 73:15
80:23 86:20
92:15,19 97:2
108:23 110:5
113:7 116:22
122:14 130:16
133:14 137:21

138:7 141:18
141:19 142:12
144:13,25
147:6 148:5,19
**wanting** 37:23
**warfare** 81:14
83:20
**way** 11:9 26:6
32:24 51:4,5
94:19 103:22
107:22 108:13
112:5 115:23
132:3 140:3
144:19 146:18
**ways** 51:15
104:5,20 105:3
106:21
**we've** 120:7
**weeks** 105:16
**weigh** 74:16
**welcome** 138:8
**wide** 48:23
**widely** 39:17
**widget** 77:16
77:22
**willbank** 36:7
**willing** 11:10
**wish** 80:14
82:19 84:9
**withdraw**
145:9
**withdrawn**
100:22 128:23
129:20,23

130:2
**witness** 5:10
6:9,18 7:4
14:13 23:23
31:25 33:21
35:15 40:22
44:2 46:6 98:2
100:25 150:10
**word** 36:5
129:15
**words** 58:6
114:13 148:4,8
**work** 16:24
17:12 27:13
**worked** 16:3,24
**working** 62:8
**works** 17:3,5
132:22
**wound** 125:4,6
**written** 38:2
83:16
**wrong** 95:24
99:13 119:6
**wrongly** 96:19

**x**

**x** 1:6,10 151:2

**y**

**y** 15:5,9
**yang** 15:9
**yeah** 67:24
**year** 105:15
**york** 1:3,22 2:3
2:3 5:21 6:4

**[york - zoom]**                                                                 Page 37

| 7:8 149:5 |
|---|
| **z** |
| **z**   7:6 8:4<br>**zhi**   14:25 70:16<br>  70:21 72:12<br>**zoom**   1:16<br>  19:17 |

Federal Rules of Civil Procedure

Rule 30

(e)  Review By the Witness; Changes.

(1)  Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A)  to review the transcript or recording; and

(B)  if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2)  Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS


COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the

foregoing transcript is a true, correct and complete

transcript of the colloquies, questions and answers

as submitted by the court reporter. Veritext Legal

Solutions further represents that the attached

exhibits, if any, are true, correct and complete

documents as submitted by the court reporter and/or

attorneys in relation to this deposition and that

the documents were processed in accordance with

our litigation support and production standards.


Veritext Legal Solutions is committed to maintaining

the confidentiality of client and witness information,

in accordance with the regulations promulgated under

the Health Insurance Portability and Accountability

Act (HIPAA), as amended with respect to protected

health information and the Gramm-Leach-Bliley Act, as

amended, with respect to Personally Identifiable

Information (PII). Physical transcripts and exhibits

are managed under strict facility and personnel access

controls. Electronic files of documents are stored

in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.

# EXHIBIT 1

## Declaration of Riz Mokal

EXHIBIT

1

I, **DR. RIZ MOKAL**, of South Square, 3-4 South Square, Gray's Inn, London, England, affirm as follows:

## I.    INTRODUCTION

1    I submit this Declaration in support of the *Director's Objection to Verified Petition under Chapter 15 for Recognition of Foreign Main Proceedings and Related Relief* (the '**Objection**') to be filed in the chapter 15 cases (the '**Ch. 15 Cases**') commenced by Paul Pretlove, David Standish, and James Drury as the putative foreign representatives (the '**Joint Provisional Liquidators**' or '**JPLs**') of the ongoing provisional proceedings (the '**BVI Proceedings**') pending in the High Court of Justice, Commercial Division, of the British Virgin Islands (the '**BVI Court**') with respect to each of Prince Global Holdings Limited and 29 of its affiliates (together, the '**Debtors**').

2    By orders dated 9 January 2026 (to which I will refer collectively as '**the Mithani Order**') made by the Honourable Justice Mithani of the High Court of the British Virgin Islands ('**BVI**'), the JPLs were appointed to each of the Debtors. After a contested hearing on 14 May 2026, the Honourable Justice Wallbank of the BVI High Court gave a judgment and is expected to make an order ('**the Wallbank Judgment**'[1] and '**the Wallbank Draft Order**'[2]) clarifying certain consequences of the making of the Mithani Order.

3    I have been instructed to explain the principles of BVI law governing the nature and ambit of BVI provisional liquidation, the construction of the Mithani and Wallbank Draft Orders, and the role of the JPLs. I am also asked to consider certain matters raised in the

---

[1] In referring to the Wallbank Judgment, I refer to the transcript, provided to me by the BVI legal counsel to the Borelli Debtors, of the extempore judgment delivered by Wallbank J on 14 May 2026. The transcript has not, to my knowledge, been approved by Wallbank J. In my respectful view, the Wallbank Judgment falls to be read with that in mind: as an oral judgment delivered without the opportunity for reflection and revision that a reserved judgment affords, and one which Wallbank J may, upon reviewing the transcript, wish to clarify or amplify in certain respects.

[2] As the Wallbank Order has not yet been entered at the time of this writing, I refer in this Declaration to the draft order that the parties were seeking to agree as of 20 May 2026. I reserve the right to reconsider the points that I make below, relying on the wording of the draft order, in light of the order as eventually agreed by the parties and entered by the BVI Court.

- 1 -

Declaration dated 8 April 2026 and Supplemental Declaration dated 20 April 2026 of Andrew Barrington Chissick ('**ABC-1**' and '**ABC-2**', respectively). I am not instructed to address everything in ABC-1 or ABC-2, and the fact that I do not address a point in one or other of these documents does not imply that I agree with it.

4    For the reasons set out below, it is my opinion that the Mithani Order and the Wallbank Draft Order, read together, confirm that the JPLs' appointment is interim, provisional, and conservatory in nature. The JPLs' mandate, as the BVI Court has itself defined it, is to investigate, secure, and preserve the Debtors' assets pending determination of the pending liquidation applications. Any relief sought in this Court that exceeds the conservatory purpose goes beyond what the BVI Court has authorised, what BVI law permits the JPLs to do absent further sanction of the BVI Court, and what the JPLs themselves have represented to the BVI Court as to their US mandate.

5    The remaining structure of this Declaration is as follows:

5.1    **Section II** provides a biography.

5.2    **Section III** comments on the sources of BVI law and its insolvency framework insofar as relevant to this Declaration. It also explains the role of English law.

5.3    **Section IV** sets out the approach that in my opinion should be taken to interpreting the Mithani and Wallbank Draft Orders. For this purpose, I identify relevant principles for the construction of BVI court orders and of legislation.

5.4    **Section V** construes the statutory provisions governing provisional liquidation insofar as relevant to this Declaration.

5.5    **Section VI** addresses the penal notice placed on the Mithani Order, explains why it cannot be used as an aid to the construction of the Order's operative terms, and identifies three respects in which it does not accurately reflect either those terms or the correct legal position.

5.6 **Section VII** draws on discussion in the previous sections to interpret the Mithani and Wallbank Draft Orders.

5.7 **Section VIII** is a brief conclusion.

6 Whether the facts alleged in the Objection can be proved to be correct is a matter for the Court. Where and to the extent necessary for the purposes of this Declaration, however, I assume that relevant such facts will be proved. Except where the context shows otherwise, I also adopt the terms defined in the Objection. I do not express any view on any issue of US law.

7 Apart from being instructed to prepare this Declaration, I do not have any past or present relationship with any of the parties to this matter. My compensation is not contingent upon the outcome of this matter or upon my reaching particular conclusions or opinions.

8 The cases and materials referred to in this document are attached as **Exhibit 1**.

## II.   BIOGRAPHY

9 I hold a BSc in Mathematics, Statistics, and Economics from Government College, the University of the Punjab (1993), an LLB Hons from University College London (1996), a BCL Hons from the University of Oxford (1998), and a PhD in corporate insolvency law from University College London (2002). I was called to the Bar of England and Wales at Gray's Inn in 1997, became an academic member of South Square in 2005, and took up full-time practice at the Bar of England and Wales in 2016. My practice covers all aspects of domestic English and cross-border insolvency, restructuring, bank resolution, company, commercial, and trust law.

10 My CV is attached as **Exhibit 2**. As that CV shows, I served as Senior Counsel to the World Bank and Head of the Bank's Global Initiative on Insolvency and Creditor/Debtor Regimes from 2009 to 2013. That entailed working with the governments of some 20 World Bank member states to undertake policy analyses of existing laws and practices, develop new legislation, and train judges, lawyers, insolvency practitioners, central bankers, and other stakeholders. As leader of the World Bank's delegation to the United

Nations Commission on International Trade Law ('**UNCITRAL**') from 2009 to 2013 and as independent expert member of the UK delegation from 2013 to 2017, I was part of the group that negotiated and authored the new UNCITRAL model laws on the enforcement of insolvency-related judgments and on the cross-border insolvency of enterprise groups, as well as the revised guide to the enactment and interpretation of the Model Law on Cross-Border Insolvency and the treatment in the Legislative Guide on Insolvency Law of directors' duties in the period approaching insolvency.

11  Since taking up full-time practice in 2016, I have been instructed in relation to some of the most significant insolvency and restructuring proceedings in England and abroad, including those of *Bell Group* (Curaçao), *British Steel* (England), *Drelle* (England), *Greensill Capital* (England), *gategroup* (England), *Hanjin* (South Korea), *ipagoo* (England), *Lehman Brothers* (England, New York), *NMC Healthcare* (Abu Dhabi), *Ocean Rig* (Cayman Islands), *OW Bunker* (Denmark), *Petrofac* (England), *Primeo* (Cayman Islands), *Seadrill* (Texas), *Selecta* (the Netherlands), *Unister* (Germany), *Yukos* (Switzerland), *Thames Water* (England), and *The Z Trusts* (Jersey).

12  I am also frequently instructed as an expert witness on English and Commonwealth law, and my expert evidence has been accepted by several courts, including the US Bankruptcy Court of the Southern District of New York (*Silicon Valley Bank (Cayman Islands Branch)*, February 2024; *SAS AB*, July 2024), the High Court of England and Wales (*Hong Kong Airlines*, 2022), the Royal Court of Jersey (*Booth*, 2022), the High Court of Malaysia (*AirAsiaX*, 2021), and the Supreme Court of New York (*Renren*, 2020, on Cayman Islands law).

13  I am the author or co-author of four books, a contributor to three others, and the author or co-author of over 30 scholarly articles in leading law journals on commercial law, financial sector regulation, insolvency and restructuring law, property and trusts, and legal theory. My scholarship has influenced legislation in several jurisdictions and has been cited with approval by courts around the world, including the House of Lords (*Spectrum*, 2005); the Australian High Court (*Ansett*, 2008); the Courts of Appeal of England and Wales (*Sonatacus*, 2007), New Zealand (*Strategic Finance*, 2013), Ontario (*Nortel*, 2015), and Victoria (*Ansett*, 2006); and the High Court of England and Wales (*Virgin Active*, 2021; *Houst*, 2022; *Great Annual Savings Company*, 2023); see also the

judgments of the Grand Court of the Cayman Islands in *Adenium Energy Capital* (2022), the Court of Appeal of England and Wales in *Adler* (2024), and the Newfoundland and Labrador Court of Appeal in *John Doe v Roman Catholic Episcopal Corporation of St John's* (2024).

14   I am one of six UK-based Fellows of the American College of Bankruptcy, and an invited member of each of the International Insolvency Institute (on whose Board I currently serve), the World Bank's Task Force on Insolvency, the Bowen Island Group, the International Exchange of Experience on Insolvency Law, and several expert groups on aspects of insolvency law convened by the UNCITRAL Secretariat. In 2020, I was named amongst the 500 leading global restructuring and insolvency lawyers by the US legal guide Lawdragon.

15   By reason of my background and experience, and given the nature of BVI law insofar as it bears on the questions I have been asked to consider (which I explain in the next section of this Declaration), I believe that I am competent to provide an expert opinion on BVI law as it relates to those questions.

### III.   SOURCES OF BVI LAW AND ITS INSOLVENCY FRAMEWORK

16   Subject to an important qualification, I do not take issue with the description of the sources of BVI law and of its insolvency framework provided in ABC-1, §§ 26-41.

17   The qualification I would make is to the statement at ABC-1, § 30. Addressing the BVI statutory provisions governing corporate liquidation and provisional liquidation, ABC-1, § 30 states that "*in relation to the matters addressed in* [ABC-1], *BVI law is independent and distinct from English law.*" I do not understand the point sought to be made here. If and to the extent that the point is simply that the English Insolvency Act 1986, which governs liquidation and provisional liquidation, does not apply in the BVI, which has its own "*independent and distinct*" counterpart provisions in the Insolvency Act 2003, then that point is prefigured at ABC-1, § 29 (second sentence) and is one with which I agree. In order to preclude confusion, however, I should make four observations.

18 First, subject to any inconsistent BVI legislation, the English common law is also the law of the BVI. The Court of Appeal of the Eastern Caribbean Supreme Court explained the position as follows in its 2020 *Niyazov* judgment:[3]

> "***It is now well established that in the absence of any local legislation or case law to direct its approach, the Virgin Islands courts will look to the common law of England which was extended to the Virgin Islands by the Common Law (Declaration of Application) Act, 1705*** which provides:**
>> 'That the Common Law of England, as far as it stands unaltered by any writ[t]en Laws of these Islands, or some of them, confirmed by Your Majesty .. is in force in each of these your Majesty's Leeward Charibee Islands, and is the certain Rule whereby the Rights and Properties of your Majesty's good Subjects inhabiting these Islands, are and ought to be determined; and all Customs or pretended Customs or Usages, contradictory thereunto, are illegal, null, and void.'
>
> ***By virtue of the Common Law (Declaration of Application) Act, 1705 the Virgin Islands adopted the English common law, subject to any modifications thereof, enacted either locally or by extension of English enactments.***"

19 Relevantly, the English common law principles bearing on the interpretation of a court order apply equally in the BVI. This is clear from the fact that, for example, Wallbank J quoted and applied[4] key principles reiterated by the Court of Appeal of England and Wales in its 2017 *Pan Petroleum* case, which itself sought to follow the UK Supreme Court's 2015 *Ablyazov* judgment and the Privy Council's 2012 *Sans Souci* judgment.[5] I explain and rely on both of the latter judgments below.

20 Second, the corporate liquidation legislation in the BVI is based on its English counterpart. As ABC-1 states at § 31, "*BVI insolvency law is closely aligned with and bears many similarities to the insolvency laws of England and Wales.*" Accordingly, the case law of the English courts interpreting English insolvency legislation is an important aid to the interpretation of its BVI counterpart. For example, the Privy Council in its

---

[3] *Niyazov v Maples and Caler* VG [2020] ECSC J1012-1, [31]-[32] (Ellis JA) (emphasis added, footnote excluded).

[4] Wallbank Judgment, 17/12 to 19/3 and 23/23 to 24/1.

[5] *Pan Petroleum AJE Limited v Yinka Folawiyo Petroleum Co Ltd* [2017] EWCA Civ 1525, [41] and [42] (Flaux LJ), citing *JSC BTA Bank v Ablyazov (No 10)* [2015] 1 WLR 4754 (SC) and *Sans Souci Limited v VRL Services Limited* [2012] UKPC 6.

important 2024 *Sian Participation* judgment said this about the effect of a creditor's petition to wind up a company:[6]

> "*The BVI inherited its insolvency jurisdiction from the United Kingdom. ...*
> *...Nothing in the differences between the two statutory structures points to any difference in underlying policy, and **the English authorities about the essential nature and effect of the winding up petition are in the Board's view in principle fully applicable to the equivalent process in the BVI**.*"

21    Third, the BVI Court's statutory power to appoint provisional liquidators, now conferred by section 170 of the Insolvency Act 2003, is the successor to an equivalent power that existed under sections 119 and 126 of the Companies Act, Cap. 243, which itself descended from the English Companies Acts. At the 14 May 2026 hearing before him, Wallbank J stated that while "*slightly different*", "*the overall scheme*" provided in the English and BVI statutes to govern provisional liquidation "*is very similar and the Court can look at it* [that is, at the English statutory scheme] *for instruction.*"[7] For that reason, BVI courts have from the outset applied English authority in exercising their statutory jurisdiction to appoint and control provisional liquidators. In the BVI High Court's 1992 *Amar* judgment, for example, Bishop J set out and applied sections 119 and 126 of Cap. 243 as the basis for appointing a provisional liquidator, and expressly relied on the two-factor test formulated by Plowman J in *Re Union Accident Insurance Co Ltd*,[8] a case itself decided under the equivalent English statutory provision, as the framework governing the exercise of the court's discretion.[9] That reliance on English authority continues under the Insolvency Act 2003. In *Re Constellation Overseas Ltd*, decided in 2019, for example, the BVI High Court surveyed the English, Cayman Islands, and Bermudian case law at length in order to determine the width of the discretion conferred by section 170, and concluded that "*jurisdiction with a similar wide discretion exists under s 170 of the IA*".[10] *Union Accident Insurance* was also cited by all the parties in their skeleton arguments for

---

[6] *Sian Participation Corpn v Halimeda International Ltd* [2025] AC 1321 (PC), [27], [30] (Lords Briggs and Hamblen) (emphasis added).

[7] Wallbank Judgment, 28/9-13.

[8] *Re Union Accident Insurance Co Ltd* [1972] 1 All ER 1105 (Ch) (Plowman J).

[9] *Re Amar Investment Holdings Corporation* VG 1992 HC 1, pp. 4 and 14-15.

[10] *In re Constellation Overseas Ltd* Claim No. BVIHC (COM) 2018/0206, [89] (Adderley J).

the 14 May 2026 hearing before Wallbank J and discussed by him.[11] This consistent pattern of English statutory lineage, English authority applied at each stage, and English principles informing the scope of the court's discretion, underlines the organic and continuing influence of English law on BVI provisional liquidation.

22    Fourth and consistent with the previous three points, the skeleton argument lodged with the BVI High Court by the BVI Attorney General in support of her applications to wind up the Debtors and for the appointment of provisional liquidators ('**AG's Skeleton**')[12] cites English case law for all key legal propositions. In particular, the English High Court's *Highfield* judgment[13] is cited for the principles governing the court's approach to provisional liquidation[14] and to not requiring a state authority (the Secretary of State in England and the Attorney General in the BVI) to provide an undertaking in damages as the price of obtaining the appointment of provisional liquidators.[15] Similarly, the two authorities cited in the AG's Skeleton for the principles relevant to winding up on public interest grounds are both English.[16] Further, in citing *KMG International*,[17] a decision of the Court of Appeal of the Eastern Caribbean Supreme Court, the AG's Skeleton correctly notes[18] that the Court of Appeal itself relied on and followed the English High Court's *Nyckeln Finance* decision.[19] In all, four of the seven authorities cited in the AG's Skeleton are English. Similarly, as the transcript of the hearing on 9 January 2026 shows, Mithani

---

[11] Wallbank Judgment, 28/13

[12] Provided to this Court as Exhibit D to ABC-1.

[13] *Re Highfield Commodities Ltd* [1984] 3 All ER 884 (Ch) (Megarry, VC).

[14] AG's Skeleton, § 34 and footnote 3 (though with a typographical error as to the starting page in the law report, which is misstated to be 886).

[15] AG's Skeleton, § 34 and footnote 7 (though the latter provides an empty reference; the relevant proposition is stated at *Re Highfield Commodities Ltd* [1984] 3 All ER 884 (Ch), 890e-891b (Megarry, VC)).

[16] AG's Skeleton, § 51, citing *In re PAG Management Service Ltd* [2015] BCC 720 and *Secretary of State v Celtic Consultancy & Enterprises Ltd* [2020] EWCA Civ 1017.

[17] *KMG International NV v DP Holding SA* [2018] ECSC J0503-3.

[18] AG's Skeleton, § 36.

[19] *Re a company (No 003102 of 1991) ex parte Nyckeln Finance Co Ltd* [1991] BCLC 539 (Ch).

- 8 -

J, who made the Mithani Orders, remarked that he was "*fairly familiar with this area of law*" on the basis that he had "*written about*" the "*equivalent jurisdiction in England*".[20]

23  It is for these reasons that I pause over ABC-1, § 30. The four points I make in response (above) also provide context for the fact that where appropriate in this Declaration, I rely on English authority, which is authority on which the BVI courts themselves would and do rely as equally applicable in the BVI.

## IV.  APPROACH TO INTERPRETATION OF THE MITHANI AND WALLBANK DRAFT ORDERS

24  In this section, I set out the principles relevant to the interpretation of the Mithani Order and the Wallbank Draft Order.

### A.  PRINCIPLES GOVERNING INTERPRETATION OF COURT ORDERS

25  Insofar as relevant, the principles governing the interpretation of the Mithani Order and the Wallbank Draft Order are as follows.

26  First, the construction of a court order is a unitary process in which it is asked what the language of the order would convey in light of the objective circumstances in which the order was made. Any reasons given by the court when making the order are admissible as an aide to interpretation. The point was explained by the Privy Council in its 2012 *Sans Souci* judgment as follows:[21]

> "*implicit in the Proprietor's argument is the suggestion that the process of construing the order is to be carried out in two discrete stages, the first of which is concerned only with the meaning of the words, and the second with the resolution of any 'ambiguities' which may emerge from the first. The Court's reasons, so it is said, are relevant only at the second stage, and then only if an 'ambiguity' has been found. The Board is unable to accept these propositions, because **the construction of a judicial order, like that of any other legal instrument, is a single coherent process. It depends on what the language of the order would convey, in the circumstances in which the**

---

[20] Transcript of Proceedings (9 January 2026), 5/3 to 5/9. Mithani J is a distinguished English former academic and also holds judicial office in England.

[21] *Sans Souci Limited v VRL Services Limited* [2012] UKPC 6, [13]-[14] (Lord Sumption) (emphasis added).

> *__Court made it, so far as these circumstances were before the Court and patent to the__
> __parties__. The reasons for making the order which are given by the Court in its judgment
> are an overt and authoritative statement of the circumstances which it regarded as
> relevant. They are therefore always admissible to construe the order. In particular,
> the interpretation of an order may be critically affected by knowing what the Court
> considered to be the issue which its order was supposed to resolve.*
> *__It is generally unhelpful to look for an 'ambiguity', if by that is meant an expression__
> __capable of more than one meaning simply as a matter of language__. True linguistic
> ambiguities are comparatively rare. __The real issue is whether the meaning of the__
> __language is open to question__. There are many reasons why it may be open to question,
> which are not limited to cases of ambiguity.*"

27    Second, where the court made the order in exercise of a statutory power, the order should not readily be construed so as to suggest that the court exceeded its power:[22]

> "*The terms of the order may of course in some cases be such that it must be concluded that the Court did exceed the proper limits of its functions. But __it should not readily be assumed to have done so, especially when its reasons show that it has not__.*"

This principle reflects the presumption of regularity, which applies to judicial acts as much as to other official acts. A court is presumed to have acted within its powers unless the contrary is established. Applied to the construction of orders, this means that where a provision in an order is ambiguous as between an interpretation that would have been within the court's jurisdiction and one that would have exceeded it, the former is to be preferred. Accordingly, where an order is made pursuant to a defined statutory power, the court is taken to have intended to exercise that power and no more. The order should therefore not readily be construed so as to fall outwith the boundaries of the power.

28    Third, where breach of an order has penal or other drastic consequences for those addressed by it, the order is to be construed restrictively. The paradigmatic example is of a freezing order, whose core purpose is to stop improper dissipation of assets. The freezing order has been judicially characterised as a "__nuclear weapon__" since it may, on pain of committal for contempt of court, severely restrict the ability of the person who, but for the order, has the legal authority to use such assets, from doing so. The UK Supreme Court has explained the interpretive principle thus:[23]

---

[22] *Sans Souci Limited v VRL Services Limited* [2012] UKPC 6, [17] (Lord Sumption) (emphasis added).

[23] *JSC BTA Bank v Ablyazov (No 10)* [2015] 1 WLR 4754 (SC), [19] (Lord Clarke) (emphasis added).

- 10 -

"***orders of this kind are to be restrictively construed*** in accordance with Beatson LJ's strict construction principle, which he described in this way...:

'The third principle follows from the "*fundamental requirement of an injunction directed to an individual that it shall be certain*"…**It is that, because of the penal consequences of breaching a freezing order and the need of the defendant to know where he, she or it stands, such orders should be clear and unequivocal, and should be strictly construed**… In *Anglo Eastern Trust Ltd v Kermanshahgi* [2002] EWHC 1702 (Ch) Neuberger J stated: "*A freezing order, which has been referred to as a nuclear weapon, should . . . be construed strictly*" because **the court is "*concerned with an order which has a potentially draconian effect on the commercial and economic freedom of an individual against whom no substantive judgment has yet been granted*"**.'"

28.1    This restrictive approach to construction is not limited to freezing orders, and has been applied in relation to other types of order whose breach has drastic consequences. For example, the English Court of Appeal recently applied such approach to the construction of an "*unless order*", whose breach typically results in procedural consequences for the breaching party, such as the striking out of their pleading.[24]

28.2    The restrictive approach to interpretation also applies to an order appointing provisional liquidators. This is for two reasons. First, such orders often include (as does the Mithani Order) a penal notice whose effect is that a breach would put the breaching party at serious risk of being committed for contempt of court. Second, an order appointing a provisional liquidator is "***the nuclear weapon of the Companies Court***, *since it causes almost always an impossibility for the company to recover*".[25]

28.3    ABC-1 omits to draw attention to this principle of restrictive construction. In my view, this defect, together with ABC-1's misuse of the penal notice on the Mithani Order, which I explain below, impairs ABC-1's analysis of that Order.

---

[24] *Midland Premier Properties Limited v Doal* [2016] EWCA Civ 117, [45] (Newey LJ): "*Just as the terms of an order granting an injunction are to be 'restrictively construed'…so, given the consequences of failure to comply, must an unless order be*".

[25] *Re a company (No 007070 of 1996)* [1997] 2 BCLC 139 (ChD), 142b (Harman J) (emphasis added).

- 11 -

29    Fourth, where a court is required to construe a previous court order and considers that the existing language of the order does not achieve what the applicant wants or what the court thinks desirable, the proper course is to vary the order, not to give it a meaning it does not bear. This preserves the integrity of the construction exercise and keeps it separate from the court's remedial discretion. The UK Supreme Court has explained the point thus, in the context of construing a freezing order but by remarks that hold equally of any order bearing a penal notice:[26]

> "*the context in which the scope of the freezing order falls for decision is one in which a court might be tempted to stretch legal analysis to capture what are seen as the merits or lack of merits of the case before it, but it is important not to succumb to that temptation…**The question is simply what the freezing order means**. **If it is desirable that a broader meaning should be given to it than is appropriate applying ordinary principles, the solution is not to give it a meaning which it does not have but to vary the order***…appropriately for the future."*

B.    PRINCIPLES GOVERNING INTERPRETATION OF STATUTORY PROVISIONS

30    The Mithani Order was made pursuant to section 170 of the Insolvency Act, and the Wallbank Draft Order elucidates certain consequences following from the Mithani Order. The extent and nature of the BVI Court's power pursuant to section 170 is therefore relevant to the interpretation of both Orders, as the second principle for the interpretation of court orders I have set out above provides. Accordingly, I set out three principles governing statutory construction that in my opinion are relevant on the facts.

31    First, as the Privy Council has explained in its 2024 BVI decision in *Al-Thani*:[27]

> " 'The basic task of the court is **to ascertain and give effect to the true meaning of what Parliament has said in the enactment to be construed.**' *This is not a licence simply to interpret literally the particular provision and neglect the purpose which the legislature intended to achieve when it enacted the statute*."

---

[26] *JSC BTA Bank v Ablyazov (No 10)* [2015] 1 WLR 4754 (SC), [17] (Lord Clarke) (emphasis added).

[27] *Al-Thani v Al Thani* [2024] UKPC 35, [23] (Lord Hodge), quoting from *R (Quintavalle) v Secretary of State for Health* [2003] 2 AC 687 (HL), [8] (Lord Bingham).

- 12 -

32    Second and relatedly, each provision must be read in its statutory context:[28]

> "***Words and passages in a statute derive their meaning from their context. A phrase
> or passage must be read in the context of the section as a whole and in the wider
> context of a relevant group of sections***. *Other provisions in a statute and the statute
> as a whole may provide the relevant context. They are the words which Parliament
> had chosen to enact as an expression of the purpose of the legislation and are
> therefore the primary source by which meaning is ascertained.*"

33    Third, the heading of a part of a statute is an aid to the construction of the provisions
located in that part. The heading may identify the mischief sought to be addressed by the
provisions in that part and may serve to narrow the ambit of application of such
provisions:

33.1    The point was established by the 1898 decision of the House of Lords in *Inglis*.
The House was concerned with the interpretation of section 3 of the Factors Act
1889, which provided in unqualified terms that "*A pledge of the documents of
title to goods shall be deemed to be a pledge of the goods*". Section 3 appeared
under the statutory heading "*Dispositions by Mercantile Agents*". Their
Lordships unanimously held that section 3 only applied to mercantile agents. For
example, Lord Herschell stated:[29]

> "*These headings are not, in my opinion, mere marginal notes, but the sections
> in the group to which they belong must be read in connection with them and
> interpreted by the light of them. It appears to me that the Legislature has
> clearly indicated the intention that the provisions of s. 3 should not be treated
> as an enactment relating to all pledges of documents of title, but only to those
> effected by mercantile agents.*"

33.2    More broadly and as a general principle applicable across all statutes, headings
within the body of a statute assist in understanding the mischief addressed by the
relevant part of that statute. As the UK Supreme Court stated in its 2018 *Project*

---

[28] *Al-Thani v Al Thani* [2024] UKPC 35, [25] (Lord Hodge) (emphasis added), quoting from his own
judgment in *R (O) v Secretary of State for the Home Department* [2023] AC 255 (SC), [29].

[29] *Inglis v Robertson* [1898] AC 616 (HL), 630 (Lord Herschell); see to similar effect 623-4 (Earl of
Halsbury, LC) and 628 (Lord Watson).

*Blue* decision, "***The heading is relevant to assist an understanding as to the mischief which the provision addresses***".[30]

### V.    STATUTORY PROVISIONS GOVERNING PROVISIONAL LIQUIDATION

34    Sections 170 to 174 of the Insolvency Act 2003, which govern provisional liquidation, appear under the heading "***Interim Relief***" in Part VI (Liquidation). That heading is an aid to the construction of the provisions that follow it. As the Supreme Court's *Project Blue* judgment shows, the heading is an aid to identification of the purpose of this cluster of provisions, viz, as governing a proceeding whose objective is to 'hold the ring' by identifying and conserving the debtor company's assets. The provisional liquidation proceeding is "***provisional***" in the critical sense that the powers conferred on a provisional liquidator are not plenary, terminal, or permanent, but instead interim in both nature and duration. The same point is underlined by the House of Lords in *Inglis*: the heading "*Interim Relief*" casts light on and delimits the intended application of the provisions that follow, which together govern provisional liquidation.

35    Section 170(1) makes this explicit at the level of the triggering condition: a provisional liquidator may only be appointed "*[w]here an application for the appointment of a liquidator of a company has been filed but not yet determined or withdrawn*". The provisional liquidation regime is therefore structurally parasitic on and subordinate to the substantive liquidation application. It has no independent existence and automatically terminates on the determination of that application: section 173(2).

36    Section 170(4) defines the grounds on which the appointment may be made. Where the company does not consent (section 170(4)(a)), the court may appoint a provisional liquidator on one of two grounds: that the appointment "*is necessary for the purpose of maintaining the value of assets owned or managed by the company*" (section 170(4)(b)(i)); or that it "*is in the public interest*" (section 170(4)(b)(ii)).

---

[30] *Project Blue Ltd v Revenue and Customs Commissioners* [2018] 3 All ER 943 (SC), [42] (Lord Hodge).

37    Section 171(1) confers on a provisional liquidator [**1**] the rights and powers of a liquidator "***to the extent necessary*** [**2**] *to maintain the value of the assets owned or managed by the company **or** [**3**] to carry out the functions for which he or she was appointed.*" Section 171(2) states that [**4**] "*The Court may limit the powers of a provisional liquidator in such manner and at such times as it considers fit.*" The numerical separators [**1**] to [**4**] that I have added in this excerpt suggest the following approach to identifying a provisional liquidator's powers:

37.1    By virtue of the text following [**1**] above, the first step is to identify the rights and powers of a liquidator. Insofar as potentially relevant to the present case, a liquidator's rights include taking custody and control of the company's assets (section 175(1)(a)), and their powers include "*the powers necessary to carry out the functions and duties of a liquidator under this Act*" including (without limitation) the powers in Schedule 2 to the Act (section 186(1) and (2)). The court may condition the exercise of any such power to the liquidator seeking its sanction (that is, authorisation) (section 171(2)).

37.2    The second step is to identify the limits to a provisional liquidator's power. There are three such limits:

37.2.1    The first two limits entail asking which of the above-stated powers (amongst others) it is <u>necessary</u> for the provisional liquidator to exercise in order <u>either</u> to maintain the value of the assets under the company's ownership or control (see text after [**2**]), <u>or</u> to carry out any of the functions for which the provisional liquidator is appointed ([**3**]).

37.2.2    The third limit arises from any restrictions laid down by the court ([**4**]).

38    In relation to the public interest ground (relevant to the JPLs) in particular:

38.1 The Insolvency Act 2003 defines "*insolvent*" to include both the standard cash-flow[31] and balance sheet tests of insolvency,[32] as well as the states in which the corporate debtor fails to meet a statutory demand or where execution of a BVI judgment or order is returned unsatisfied.[33] A liquidation application, a necessary prerequisite to the appointment of a provisional liquidator, may be based on one or more of these forms of insolvency, or on the basis that it is "*just and equitable*" for a liquidator to be appointed.[34] The public interest ground is distinct from both the insolvency-based and the "*just and equitable*" grounds.[35]

38.2 Insofar as relevant, "*public interest*" takes its meaning pursuant to common law principles. In particular (given the allegations in the present case), that a company <u>may be</u> being used as a vehicle for fraud is a relevant consideration as to whether it should be placed in provisional liquidation pending the court's determination whether a (full) liquidation order should be made. In the English High Court's 1984 *Highfield* judgment, Vice-Chancellor Sir Robert Megarry explained that it may be "*highly desirable to put a provisional liquidator in control*" of "*a well-run and prosperous company thriving on the frauds which it practises on the public…so that no more money will be taken from the public*".[36]

38.3 The public interest ground for the appointment of a provisional liquidator (section 170(4)(b)(ii)) does not alter the conservatory character of the appointment. As noted, this ground also appears under the heading "*Interim Relief*" and within the same structural framework: the appointment remains interim, its powers are calibrated by section 171(1) to what is necessary to maintain asset value or carry out the functions for which the provisional liquidator was appointed, and it terminates automatically on the determination

---

[31] See section 8(1)(c)(ii): "*A company is insolvent if—the company is unable to pay its debts as they fall due.*"

[32] See section 8(1)(c)(i): "*A company is insolvent if—the value of the company's liabilities exceeds its assets*".

[33] See section 8(1)(a) and (b).

[34] See section 162(1)(a) and (b).

[35] See section 162(1)(c).

[36] *Re Highfield Commodities Ltd* [1984] 3 All ER 884 (Ch), 893d-e (Megarry, VC).

of the liquidation application under section 173(2). The public interest ground changes the class of cases in which the appointment may be made. It does not expand the nature or scope of the powers conferred once the appointment is made.

38.4    That the public interest ground does not alter the fundamental interim and conservatory character of provisional liquidation is confirmed by English authority on counterpart provisions in England on which the BVI's public interest jurisdiction is modelled. In *Financial Conduct Authority v Allied Wallet Ltd*, a 2019 public interest case concerning an enterprise whose controller was the subject of allegations of criminality in the United States, and therefore directly analogous to the present case, Snowden J (now Lord Snowden of the UK Supreme Court) explained as follows:[37]

> "***the appointment of a provisional liquidator to a trading company is a most serious step for a court to take and is likely in many cases to have a terminal effect on the company's trading life***, *so it is not an order to be made lightly, and making such an order requires the most anxious consideration to be given by the court. ...*
>
> *...there is a need for **the traditional functions of a provisional liquidator** to be performed, **namely to hold the ring or preserve the status quo before the court can make a final decision either to appoint a full liquidator**...*
>
> *The traditional functions of a provisional liquidator are summarised in* Lightman & Moss on The Law of Administrators and Receivers of Companies*...in the following terms:*
>> *"*The provisional liquidator has traditionally had the role of securing the company's property, pending the outcome of the petition, of maintaining the status quo and of preventing any creditor gaining priority. His powers may accordingly be limited by the order appointing him, and he is discharged if the petition does not result in a winding-up order. His position in the past has been similar to that of a receiver of property in dispute appointed pending determination of the dispute, and he has had to display independence and neutrality in areas of potential conflict between the company and its creditors and between the creditors themselves. Thus, he was not able, without the authority of the court (which was most

---

[37] *Financial Conduct Authority v Allied Wallet Ltd* [2020] BCC 147 (Ch), [5]-[6] and [8]-[9] (emphasis added) (Snowden J).

unlikely to be forthcoming) to take proceedings to set aside a debenture, although this might be desirable from the point of view of the unsecured creditors, or to bring an end to the proceedings for winding up."

39 The following two powers in Schedule 2 are potentially relevant to the JPLs:

39.1 The first is the "*Power to commence, continue, discontinue or defend any action or other legal proceedings in the name and on behalf of the company*" (para 4).

39.2 The second is the "*Power to sell or otherwise dispose of property of the company*" (para 6):

39.2.1 The exercise of such power would characteristically (though not necessarily, such as when perishable assets must be disposed of in order to conserve the value of the company's estate) exceed the conservatory nature and role of provisional liquidation. This confirms that the provisional liquidation is, by design, a holding measure. As the English High Court explained in its 2005 *Ashborder* decision:[38]

> "*Provisional liquidators are, as the name implies, appointed provisionally, pending the hearing of the winding up petition. Their appointment…is usually to preserve assets pending the hearing of the winding up petition. They are not liquidators following a winding up order, seeking to realise the assets of the company for the best value they can reasonably obtain*."

39.2.2 In *Ashborder*, the order appointing the provisional liquidators conferred "*wide ranging powers*", including "***a power to sell or otherwise dispose of the property of the Companies**, power to bring or defend any action or legal proceedings in the name and on behalf of the Companies, and power to make any arrangement or compromise on behalf of the Companies*".[39] Etherton J nonetheless held that it was "*questionable*" whether the purposes of the appointment embraced realising litigation assets whose value lay

---

[38] *Ashborder BV v Green Gas Power Limited* [2005] EWHC 1031 (Ch), [86] (Etherton J).

[39] *Ashborder BV v Green Gas Power Limited* [2005] EWHC 1031 (Ch), [40] (Etherton J).

"*primarily, if not exclusively*" in easing the petitioners' prospects of success,[40] and granted an injunction restraining compromise of the claim.[41]

40    Three consequences flow from this analysis for the construction of the Mithani and Wallbank Draft Orders:

40.1    Since section 170 confers only interim, conservatory powers, the *Sans Souci* principle — that an order made pursuant to a statutory power should not readily be construed so as to suggest that the court exceeded that power — favours the operative provisions of the order being construed so as to fall within, not beyond, the conservatory scope of section 170. Where the language of the order is capable of more than one construction, the conservatory scope of section 170 operates as the principle of selection between them: the construction that falls within the court's statutory power is to be preferred over one that would exceed it.

40.2    The powers conferred on the provisional liquidators by section 171(1) are limited to what is necessary to maintain the value of the assets owned or managed by the company or to carry out the functions for which the provisional liquidators were appointed. Obligations imposed on third parties by the order must accordingly be construed by reference to those purposes: an obligation on a third party is consistent with section 171(1) only if it is necessary to serve one or both of those purposes.

40.3    The temporary and ancillary character of the appointment, confirmed by the "*Interim Relief*" heading, the triggering condition in section 170(1), the grounds in section 170(4)(b), and the automatic termination provision in section 173(2), constitutes the lens through which the operative provisions of the Orders must be read.

---

[40] *Ashborder BV v Green Gas Power Limited* [2005] EWHC 1031 (Ch), [88] (Etherton J).

[41] *Ashborder BV v Green Gas Power Limited* [2005] EWHC 1031 (Ch), [119] (Etherton J).

- 19 -

## VI.    THE PENAL NOTICE ON THE MITHANI ORDER

41    A "***PENAL NOTICE***" has been placed on top of the Mithani Order. Insofar as relevant to this Declaration, it states:

> "***The effect of this Order is that*** *the directors,* ***former directors****, office holders and* ***former office holders*** *of the Respondent…('the Company')* ***are replaced*** *by the joint provisional liquidators and that* ***the directors, former directors, office holders and former office holders are prohibited from taking*** ***any action*** *in relation to the* ***Company's affairs*** *without prior consent of the joint provisional liquidators.*
>
> *If you, the directors, former directors, office holders and former office holders of the Company fail to comply with the terms of this order, proceedings may be commenced against you for contempt of court and you may be liable to be imprisoned, fined or have your assets seized. ...*"

42    ABC-1 at §§ 23 and 53 appears to suggest that the penal notice is an aid to the construction of para 9 of the Mithani Order and/or that it accurately states the operative effect of the Order (emphasis added):

> "[23] ***The BVI Orders…also contain penal notices providing that pursuant to the BVI Orders, the directors, former directors, officeholders and former officeholders of each of the Debtors are replaced with the JPLs and those directors, former directors, officeholders and former officeholders are expressly prohibited from taking any action in relation to the affairs of the Debtors without the prior consent of the JPLs****. BVI Orders ¶ 9; Penal Notices. ...*
>
> [53] *...* ***the BVI Orders further contain penal notices providing that the powers conferred on the JPLs are to the exclusion of any power exercised or purported to be exercised by any existing director or other officeholder of the Debtors insofar as such powers concern the affairs or assets of the Debtors****. BVI Orders ¶ 9.*"

43    This invocation of a penal notice to interpret the operative terms of the order is wrong as a matter of BVI law.

44    A penal notice on an order is placed there at the request of the party who may seek to enforce the order. However, the penal notice is not itself a part of the order. It cannot be used as an aid to the order's interpretation:

- 20 -

44.1    The English Court of Appeal stated this principle in its 1985 judgment in *Re "C"*: "***The penal notice is not part of the order, and cannot be used to construe it***."[42]

44.2    In its 2024 *Spencer McGuiness* judgment, the English High Court reiterated that "*a penal notice is not part of the order*". The court explained that the penal notice exists solely as the procedural mechanism by which a party who wishes to enforce an order by committal may do so. It is accordingly not the court's function to insert a penal notice and instead is always the enforcing party's burden to do so:[43]

> "*in my judgment, **it is not actually a matter for the judge at all as to whether a penal notice is attached, because**, as I understand the matter, **a penal notice is not part of the order**. **The penal order** [sic: should read "*notice*"] **is necessary because a party obtaining the order wishes to be able to enforce that order by committal, but you cannot enforce a court order by committal without a penal notice being attached**. And that is why, if you look in the Chancery Guide at paragraph 16.30 to 16.33, you will see the explanation given that it is always the party that wants the penal notice added that has the burden of saying so or doing it if that party is drafting the order or supplying it to the court, if the court is drafting the order. **I have never understood that it was part of the judge's function actually to insert a penal notice**, certainly, against the wishes of the parties.*"

45    Accordingly, ABC-1, § 23, is wrong to cite from the penal notice as if it were part of the Mithani Order, and especially wrong to mix and match citations to the penal notice and to operative paragraphs in that Order.

46    That a penal notice is not part of the court order on which it is placed also explains why the penal notice placed on the Mithani Order does not properly track either the law or the effect of that Order's operative terms. Focusing on the terms of the penal notice placed on the Mithani Order, as excerpted above, I would highlight three points.

---

[42] *Re "C" (a Minor)* 1985 WL 1167749 (CA), p. 12 (Mustill LJ) (emphasis added).

[43] *Spencer McGuiness v Mawer* [2024] EWHC 3694 (Ch), [51] (HH Paul Matthews) (emphasis added).

First, it is not the case that, upon appointment, the JPLs have "*replaced*" current directors or office holders in the sense of having assumed the positions within the corporate structure that were previously occupied by such directors and office holders. Instead, as I explain in this Declaration, the JPLs are creatures of statute and derive their powers from statute and court order. Neither statute nor the Mithani Order cause them to "*replace*" a director or office holder, though certain of the powers previously exercisable by the directors and officers are now exercisable only by the JPLs.

Second, it is not clear in what sense it is envisaged that the JPLs "*replace*" the former directors and office holders of the Debtor. Former directors and office holders characteristically do not retain either office or powers in relation to the Debtor, with the result that there is nothing for the JPLs to replace. Former directors and office holders do remain obligated to the company in certain respects (for example, they may remain under the duty of confidence in relation to certain information and the duty to avoid taking advantage of certain opportunities). However, it is neither possible nor desirable for the JPLs to "*replace*" them as bearers of such persisting duties.

Third, directors and office holders are not precluded from taking "*any*" action in relation to the Debtor's affairs without the JPLs' consent. Rather, they are precluded from taking such actions only to the extent that they would involve the exercise of powers now vested in the JPLs, or would be inconsistent with the exercise by the JPLs of the conservatory powers conferred on them.

Accordingly, ABC-1 at §§ 23 and 53 is wrong to rely on the penal notice in the terms that it does.

## VII.  INTERPRETATION OF THE MITHANI ORDER READ WITH THE WALLBANK DRAFT ORDER

In this section, I apply the principles explained above to interpret the Mithani Order, read in the light of the Wallbank Draft Order.

A.    PROPER PURPOSES FOR THE EXERCISE OF THE JPLs' POWERS

52    The conservatory character of the JPLs' role and of the purpose for which the BVI Court has conferred powers on them is confirmed by Wallbank J himself. He accepted that section 171 of the Insolvency Act creates "*a very limited remit*" calibrated to maintaining asset value and carrying out the functions for which the JPLs were appointed.[44] In relation to the US Chapter 15 proceedings in particular, Wallbank J described the JPLs' purpose in the following terms (emphasis added):[45]

> "*All they are doing is they are trying to get these BVI proceedings recognised so that their appointment as JPLs is also recognised so that they can take steps in New York to investigate the assets and dealings of the Company, and so that they can get in those assets and secure them. **That is all that they want to do**.*"

53    The BVI Court has itself defined the US purpose of the JPLs' appointment: "*securing, realising and remitting assets to the control of the Joint Provisional Liquidators and for the purpose of obtaining access to and control of the records of the Company*" (Mithani Order, para 3(c)).

54    The BVI Court has further confirmed, through para 2(c) of the Wallbank Draft Order, that this purpose may involve "*securing, realising and remitting assets to the control of the Provisional Liquidators*". Those words, however, define both the nature and the limit of the permitted activity: realisation and remission are authorised only insofar as they serve the stated purpose of bringing assets under JPL control.

B.    THE JPLs' POWERS

55    Insofar as relevant, the Mithani Order confers two sets of powers on the JPLs, pursuant to paras 2 and 3 of the Mithani Order, respectively.

---

[44] Wallbank Judgment, 15/16–25.

[45] Wallbank Judgment, 26/3–8.

- 23 -

*i.* *Para 2 Powers*

56 Para 2 mirrors section 171(1): the JPLs are conferred with "*the rights and powers of a liquidator to the extent necessary to maintain the value of the assets owned by the Company and to carry out the function for which they are appointed*". This is a general grant of power calibrated by a necessity test.

57 Para 2 is qualified by para 10 as follows (emphasis added):

"*Save as provided in paragraph 3* [of the Mithani Order,] *the Joint Provisional Liquidators may not exercise any of the powers set out in Schedule 2 to the Insolvency Act, 2003 without sanction of the court*."

58 Para 10 confirms that the general grant in para 2 does not authorise the JPLs to exercise Schedule 2 powers without court sanction: the necessity test in para 2 is a necessary but not sufficient condition for the exercise of those powers.

59 Ostensibly the most relevant Schedule 2 power is para 4, the "*Power to commence, continue, discontinue or defend any action or other legal proceedings in the name and on behalf of the company*". This power has no relevance to the commencement of proceedings in the name not of the company but instead of the JPLs themselves.

60 It is also important to consider the Schedule 2, paragraph 6 "*Power to sell or otherwise dispose of property of the company*". As I have noted, para 3(c) of the Mithani Order, as reproduced in para 2(c) of the Wallbank Draft Order, expressly refers to "*realising*" assets. However, the "*realising*" authorised by para 3(c) does not amount to a plenary realisation power. Instead, para 3(c) authorises realisation for a single defined purpose: bringing assets "*to the control of the Joint Provisional Liquidators*". That is a conservatory act, viz, converting assets into a form amenable to JPL custody and control. It does not authorise the kind of open-ended, plenary realisation contemplated by Schedule 2 para 6, which is the paradigm power of a (full) liquidator following a winding-up order, viz, "*seeking to realise the assets of the company for the best value they can reasonably obtain*" (*Ashborder*, above).

*ii.* *Para 3 Powers*

61    The effect of para 3 is that the JPLs are conferred with certain powers which they may exercise without further sanction of the BVI Court. Insofar as relevant to this Declaration, para 3 provides:

> "***In addition to the powers outlined in 2 above***, *the Joint Provisional Liquidators shall have the following specific powers **which may be exercised without further sanction or intervention of this Honourable Court***: ...
>
> *c.*    **to seek the recognition (or its equivalent) of the appointment of the Joint Provisional Liquidators in the United States**, *United Kingdom, Singapore, Hong Kong, Taiwan, Thailand and Cambodia or elsewhere **for the purposes of securing, realising and remitting assets to the control of the Joint Provisional Liquidators and for the purpose of obtaining access to and control of the records of the Company;*** ...
>
> *m.*    *to do all other things **as may be incidental to the exercise of the above functions and powers**.*"

62    Several key points about para 3(c) should be noted:

62.1    Para 3(c) authorises recognition "*for the purposes of securing, realising and remitting assets to the control of the JPLs and for the purpose of obtaining access to and control of the records of the Company*". The Wallbank Draft Order, at para 2(c), reproduces this language and confirms that the directors cannot interfere with the JPLs' exercise of this power. Four features of this provision show that the realisation and/or remission it authorises are also conservatory in nature:

62.1.1    **Purpose clause**. The three verbs securing, realising, and remitting are all governed by a single purpose clause: "*to the control of the JPLs*". Realisation is permitted only insofar as it serves the purpose of bringing assets under JPL control. It does not authorise realisation for distribution to creditors, terminal disposal, or any other purpose beyond achieving custody.

62.1.2    **Structural context**. Para 3(c) appears in an order made pursuant to s.170 of the Insolvency Act, which is confined to '*Interim Relief*'. The

- 25 -

second interpretive principle (*Sans Souci*) requires that the order be construed so as not to exceed the court's statutory power. Construing "*realising*" in para 3(c) as a plenary disposal power would exceed the conservatory scope of s.170 and s.171(1). The reference to "*remitting*" falls to be read in the same way. The conservatory construction is therefore to be preferred.

62.1.3 **Para 2(c) of the Wallbank Draft Order**. This paragraph confirms the conservatory frame. The JPLs' powers to seek recognition in (relevantly) the US "*or elsewhere*" are "***for the purposes of securing, realising and remitting assets to the control of the Provisional Liquidators*** *and for the purpose of obtaining access to and control of the records of each of the Companies*" (emphasis added). The purpose for which the JPLs may seek recognition outside the BVI is to bring assets into JPL custody, and "*realisat[ion]*" in this context is conservatory, that is, it amounts not to terminal disposal but to converting assets into a form that enables them to be "*secur[ed]*" and "*remit[ed] to the control of the*" JPLs.

62.1.4 **Restrictive construction**: The provision appears in an order bearing a penal notice, and whose objective is to deploy "*the nuclear weapon of the Companies Court*", viz, provisional liquidation. For each of those reasons and for them considered together, the provision falls to be construed restrictively.

62.2 For these reasons, "*realising*" in para 3(c) of the Mithani Order means converting assets into a form capable of being placed under JPL control; it does not mean selling or liquidating assets for distribution or final disposal. As noted, "*remitting*" similarly falls to be read consistently with the conservatory nature of the JPLs' role.

63 As for paragraph 3(m) of the Mithani Order, it authorises the JPLs to take any step that is genuinely subordinate to and consistent with the exercise of a power specifically conferred by paragraphs 3(a) to 3(l). An act that is merely beneficial or convenient, that

has an independent purpose of its own, or that is inconsistent with the functions and powers granted, including any act that would require separate court sanction under the Order, lies outside the paragraph. Where there is doubt, the appropriate course is to seek the Court's directions rather than to rely on the sweep-up clause:

63.1    In the 2004 English High Court decision in *The Designer Room Ltd*,[46] Rimer J held that a payment by administrators under the equivalent statutory power, viz, to make payments "*necessary or incidental to the performance of* [their] *functions*", was not authorised merely because it was beneficial, convenient, or the most cost-efficient available option. The word "*incidental*" requires the act to be genuinely subsidiary to and consequentially connected with the performance of a specific function or power. A payment whose sole purpose was distributional, that is, which did not serve the carrying out of the administration itself, fell outside the power, however meritorious it might be from a creditor's perspective.

63.2    The UK Supreme Court in its 2013 *Nortel* judgment sharpened this analysis from the other direction. Considering whether para 13 of Schedule 1 to the Insolvency Act 1986 (which uses materially identical language to the Mithani Order clause) could authorise an administrator to treat an unprovable debt as provable, Lord Neuberger PSC stated:[47]

> "*It can scarcely be said to be 'incidental' or 'necessary' to a person's statutorily prescribed functions to do something inconsistent with those functions.*"

63.3    Accordingly, an act is not "*incidental*" if it contradicts, circumvents, or goes beyond the functions and powers to which it claims to be subsidiary. This principle applies with equal force to a court-ordered power such as paragraph 3(m): it cannot be used to sidestep restrictions or requirements that the Mithani Order itself imposes elsewhere, for example, requirements for court sanction that apply to other categories of act.

---

[46] *In re The Designer Room Ltd* [2005] 1 WLR 1581 (Ch), particularly [22]-[23] and [25] (Rimer J).

[47] *In re Nortel GmbH* [2014] AC 209 (SC), [119] (Lord Neuberger).

63.4    Drawing together *Designer Room* and *Nortel*, and bearing in mind that this provision also falls to be construed restrictively, the test for whether a proposed act falls within paragraph 3(m) is a two-limb inquiry:

    63.4.1    Does the act serve or enable the exercise of one of the specifically enumerated powers in paragraphs 3(a) to 3(l)? The act must be subordinate and consequentially connected to an identified power, not merely useful or advantageous in the broader context of the provisional liquidation.

    63.4.2    Is the act consistent with those enumerated functions and powers? An act that, however beneficial, is inconsistent with the JPLs' court-ordered functions, or that would require separate court sanction under the terms of the Order, is outside paragraph 3(m) even if it might loosely be described as connected to them.

## VIII. CONCLUSION

64    For the reasons I have explained above, the Mithani Order and the Wallbank Draft Order, read together with the BVI statutory framework, confirm that the JPLs' appointment is interim, provisional, and conservatory. Both orders are authoritative expressions of what the BVI Court has sanctioned: the investigation, securing, and preservation of the Debtors' assets pending the determination of the pending liquidation applications. In my view, for the JPLs to seek or to represent that they have authority to seek any broader relief would be inconsistent with BVI law.

I certify under penalty of perjury pursuant to 28 U.S.C. § 1746 under the laws of the United States that the foregoing is true and correct.

Executed on this the twenty-first day of May, 2026, in London, England.

**Dr Riz Mokal**

South Square
Gray's Inn
London
England, United Kingdom

rizmokal@southsquare.com
020 7696 9900

1

IN THE EASTERN CARIBBEAN SUPREME COURT
IN THE HIGH COURT OF JUSTICE
BRITISH VIRGIN ISLANDS
COMMERCIAL DIVISION


CLAIM NO. BVIHC (COM) 2026/0027, CLAIM NO. BVIHC (COM)
2026/0001, CLAIM NO. BVIHC (COM) 2026/0002,
CLAIM NO. BVIHC (COM) 2026/0003, CLAIM NO. BVIHC (COM)
2026/0004, CLAIM NO. BVIHC (COM) 2026/0005,
CLAIM NO. BVIHC (COM) 2026/0006, CLAIM NO. BVIHC (COM)
2026/0007, CLAIM NO. BVIHC (COM) 2026/0008,
CLAIM NO. BVIHC (COM) 2026/0009, CLAIM NO. BVIHC (COM)
2026/0010, CLAIM NO. BVIHC (COM) 2026/0011,
CLAIM NO. BVIHC (COM) 2026/0012, CLAIM NO. BVIHC (COM)
2026/0013, CLAIM NO. BVIHC (COM) 2026/0014,
CLAIM NO. BVIHC (COM) 2026/0015, CLAIM NO. BVIHC (COM)
2026/0016, CLAIM NO. BVIHC (COM) 2026/0017,
CLAIM NO. BVIHC (COM) 2026/0018, CLAIM NO. BVIHC (COM)
2026/0019, CLAIM NO. BVIHC (COM) 2026/0020,
CLAIM NO. BVIHC (COM) 2026/0021, CLAIM NO. BVIHC (COM)
2026/0022, CLAIM NO. BVIHC (COM) 2026/0023,
CLAIM NO. BVIHC (COM) 2026/0024, CLAIM NO. BVIHC (COM)
2026/0025, CLAIM NO. BVIHC (COM) 2026/0026,
CLAIM NO. BVIHC (COM) 2026/0028, CLAIM NO. BVIHC (COM)
2026/0029, CLAIM NO. BVIHC (COM) 2026/0030

BETWEEN:

IN THE MATTER OF SURE TYCOON LIMITED AND TWENTY-NINE
OTHER COMPANIES

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE

LAWS OF THE VIRGIN ISLANDS

THE ATTORNEY GENERAL                                    )
                                                       )
                                        Applicant      )
V                                                      )
                                                       )
1) AMBER HILL VENTURES LIMITED                         )
2) AUSPICIOUS TYCOON LIMITED                           )
3) BRIGHT TEAM GLOBAL LIMITED                          )
4) DELIGHTFUL THRIVE LIMITED                           )
5) EVEN SINCERITY LIMITED                              )
6) FULAM INVESTMENT LIMITED                            )
7) GIANT VICTORY HOLDINGS LIMITED                      )
8) GOLDEN ASCEND INTERNATIONAL LIMITED                 )

 COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

EXHIBIT
2

2

 9) HARMONIC STATE LIMITED                                      )
10) JUMBO HIGH LIMITED                                          )
11) LATERAL BRIDGE GLOBAL LIMITED                              )
12) LUMINOUS GLOW LIMITED                                       )
13) MIGHTY DIVINE LIMITED                                       )
14) NOBLE TITLE LIMITED                                         )
15) ORIENTAL CHARM HOLDINGS INVESTMENT LIMITED                 )
16) PACIFIC CHARM HOLDINGS INVESTMENT LIMITED                  )
17) PRAISE MARBLE LIMITED                                       )
18) PRINCE GLOBAL GROUP LIMITED                                )
19) PRINCE GLOBAL HOLDINGS LIMITED                             )
20) RESPECTFUL STEED LIMITED                                   )
21) RETAIN PROSPER LIMITED                                     )
22) ROBUST HARMONY LIMITED                                     )
23) SIMPLY ADVANCED LIMITED                                    )
24) SOUTHERN HERITAGE LIMITED                                  )
25) STAR MERIT GLOBAL LIMITED                                  )
26) STARRY BLOOM LIMITED                                       )
27) SURE TYCOON LIMITED                                        )
28) SWORD RIVER LIMITED                                        )
29) TOWARDS SUNSHINE LIMITED                                   )
30) UNITED RICHES GLOBAL LIMITED SURE TYCOON LIMITED )
                                                               )
                                    Respondents  )
_____)


TRANSCRIPT OF OPEN COURT PROCEEDINGS



Thursday, 14th May, 2026
(10:00 a.m. to 4:59 p.m.)




BEFORE:  HON. MR. JUSTICE GERHARD WALLBANK, K.C., Judge



Court Reporting Unit
Government of the Virgin Islands
Road Town, Tortola
British Virgin Islands

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

3

```
APPEARANCES:          O'NEAL WEBSTER
                      Chambers
                      Road Town, Tortola
                      British Virgin Islands
                      BY: MR. PAUL DENNIS K.C.,
                      MRS. NADINE WHYTE LAING and
                      MS. KOYA RYAN
                      For the Applicant

                      KOBRE & KIM
                      Chambers
                      Road Town, Tortola
                      British Virgin Islands
                      BY: MR. PETER TYERS-SMITH
                      and MR. TIMOTHY DE SWARDT
                      For the KOBRE & KIM Respondents

                      CAMPBELLS
                      Chambers
                      Road Town, Tortola
                      British Virgin Islands
                      BY: MR. ANDREAS GLEDHILL, K.C.,
                      and MR. TOBY BROWN,
                      For the Campbell Respondents

                      WALKERS
                      Chambers
                      Road Town, Tortola
                      British Virgin Islands
                      BY: MR. MICHAEL GIBBON, K.C.
                      MR. OLIVER CLIFTON and
                      MS. ALANNA-J JOSEPH
                      For the JPLs
                           * * *
```

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

4

P-R-O-C-E-E-D-I-N-G-S

* * *

(Court convenes at 10:00 a.m.)

THE CLERK:                BVIHCOM 001 to 0030 of 2026 - The Attorney General v. Bright Team Global Limited et al.

THE COURT:                Yes, good morning, learned Counsel, ladies and gentlemen.  Can we have the appearances for the record please.

MR. GLEDHILL:                Hello.  My Lord, yes.  So I'm Andreas Gledhill, Kings Counsel and I appear with my learned friend Mr. Brown on behalf of the Campbells companies.

Your Lordship has Mr. Michael Gibbon King's Counsel and with him Mr. Colclough and Mr. Clifton appearing on behalf of the Joint Provisional Liquidators.

MR. GIBBON:                May I interrupt just briefly.  I'm sorry, Mr. Gledhill.  Unfortunately Mr. Colclough is detained in another matter which has overrun and he sends his apologies to the Court.

THE COURT:                Okay.  Thank you very much, Mr. Gibbon.

MR. GLEDHILL:                For the Kobre Respondents My Lord has Mr. Peter Tyers-Smith, who will

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

5

be speaking.  With him Mr. deSwardt, Mr. Watson and Mr.
Lowe.

And then last but most certainly not least for The Attorney General of the British Virgin Islands, Your Lordship has Mr. Paul Dennis King's Counsel, with him Ms. Laing and MS. Ryan.

THE COURT:                Yes.

Okay, first things first.  Am I supposed to have a skeleton from the Kobre and Kim Companies?

MR. TYERS-SMITH:         My Lord, with a hung head hearing that, the answer is that, yes, you are.  And it was filed yesterday morning early.

THE COURT:               Okay.  Within which matter was it filed please?

MR. TYERS-SMITH:         My Lord, in the Amber Hill and Lateral Bridge matter.  So that is 003 and 0011.

THE COURT:               Okay.  Let me have a quick look at that.

(Pause.)

Okay.  All right, I'll find it once my assistant catches up.  Thank you, Mr. Tyers-Smith.

So, hang on, where are we?  Skeleton -- hang on, no.  What I'm seeing in, sorry to be boring, I'm looking in number three, okay, 2026, number three.

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

6

And the last filings in number three was a Supplemental Authorities Bundle filed by somebody called Kandy James. And then Kandy James also filed a Supplemental Hearing Bundle, that's on the, both of them on the 14th, which is today. And then Kayla Creque filed a skeleton on behalf of the AG today, 8:30 apparently or at 5:00 o'clock yesterday.

And then we have an Authorities Bundle from the AG again filed technically today by Kayla Creque and an Authorities Bundle by Kandy James yesterday. And then there is something filed yesterday at 9:05 a.m. called the AHV and LBG skeleton on CH15 Standing. And that's filed by Kandy James.

So, Mr. Tyers-Smith, is that your skeleton?

MR. TYERS-SMITH:         My Lord, yes, it is. Thank you for taking the tour to get to it, but yes, that's right.

THE COURT:                 Okay, very good. I'll download that.

Okay, so we need to probably define what we're dealing with today. I see that there was some discussion in the skeletons about dealing with the Cosimo Borrelli issue of his position. And I saw on one hand I think an insistence that it should be dealt

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

7

with and on the other hand something from the, I think it's the JPLs, saying that there's agreement that it shouldn't be dealt with.

So are we dealing with Cosimo Borrelli today?

MR. GLEDHILL:           My Lord, if I can perhaps start with the answer to that question. Mr. Gibbon will correct me if I'm wrong.

So I think the position on the skeletons was that we were proposing that Your Lordship should deal with what we refer to as our Strike Out Application.  The Joint Provisional Liquidators were proposing that you shouldn't deal with anything to do with irregularity of Mr. Borrelli's point.

We've given that matter some further thought.  We think Your Lordship already has a lot on your plate given the time available to you today dealing with the one issue that everybody agrees has to be dealt with which is the issue about Residuary Powers.  So I'm not going to invite Your Lordship to hear submissions in relation to our Strike Out Application.

So I think's common ground then on behalf of everybody that the one issue that does need to be dealt with is what I'm going to call the residual

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

8

powers issue.  Because that is an important point to have determined before the hearing in the United States on the 9th of June when there is going to be a very pressing question as to whether or not the various companies before you can appear in their own right and in their own name to oppose.

So the short answer to your question is there was a difference on the skeleton; there isn't one anymore.  And as far as we are concerned, the only issue that we're inviting Your Lordship to determine today is the question of whether or not as the Order of Mr. Justice Mithani currently stands, those instructing me are entitled to appear in the US proceedings.

Your Lordship knows that if we're wrong about that, we are then going to say as a backup that we have an application to vary Mr. Justice Mithani's Order, but we are certainly not asking you to deal with that today either.  We haven't filed any evidence in relation to that.  The issue only arises if we lose today.  So that may be an issue for another day.  But for today it's simply the question of Residuary Powers.

THE COURT:             Yes, very well.

Are we all agreed then that's what we're dealing with, that one issue?

MR. GIBBON:             Agreed.

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

9

THE COURT:                    Mr. Dennis?

MR. DENNIS:                   Yes, My Lord.

THE COURT:                    Very good, excellent.  All right, okay.

So basically what's in front of the Court then, we're still probably on what you could call loosely housekeeping in what we're dealing with.  I think what we have before the Court are three applications.  One is an ordinary application filed by the JPLs on the 4th of May and for various declarations I think mainly.

Then we have a Campbells Company Application, so-called Amended Ordinary Application dated the 7th of May.  And then we've got the two K & K Companies' application dated the 1st of May, 2026.  So they all address and they all go to the question of residual powers, don't they?

MR. GLEDHILL:                 My Lord, yes, that's right.  And just so Your Lordship appreciates, so our original application was issued on the same date as the Kobre application.  So the first two applications issued were the ones by us and Kobre.  The reason that you've got the 7th of May as the date is because that's the date on which we amended to say if we are wrong about residuary powers, we are also

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

10

looking for an order in the alternative that the Order

be varied.  In point of time ours and Kobre's came

first.

                THE COURT:                Okay, one

moment.  I'm just looking to the Court Reporter who's

asking a question.

                (Brief pause.)

                All right.  Okay, one moment, we just

need to overcome a logistical difficulty.

                (Pause.)

                While we're overcoming this logistical

issue, just for clarification purposes, on the Zoom

obviously we can see Blackstone Chambers meeting room.

I take it that, just for the record, that under that

moniker we have Mr. Andreas Gledhill KC and Mr. Toby

Brown, is that right?

                MR. GLEDHILL:             My Lord, that's

right.

                THE COURT:                So you're both

in the same Blackstone Chambers meeting room?

                MR. GLEDHILL:             We are.

                THE COURT:                Very good.

Thank you.

                Right, we're ready to go ahead then.

                So the last issue then is who is going

        COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

11

first.

MR. GLEDHILL:            My Lord, I don't want to be too dog in a manger about this, but I am going to propose that I do.  Ours was first in point of time.  And we, the cross-application issue by the Joint Provisional Liquidators effectively asked for exactly the same point to be determined a few days later.  And it will be a slightly curious position if I lost my right of reply because my learned friends have issued an application days later seeking exactly the same thing.  So I was proposing to go first.  Obviously Mr. Gibbon may have other views.

MR. GIBBON:            Only to say this, My Lord, we are entirely in the Court's hands.  I don't think, if I may so expressing a personal view, that it's going to matter which order Counsel speak in for Your Lordship to reach a view.  So entirely in the Court's hands.  I'm content for Mr. Gledhill to go first.

THE COURT:            Mr. Dennis.

MR. DENNIS:            I have no contrary view to that position, My Lord.

THE COURT:            Mr. Tyers-Smith?

MR. TYERS-SMITH:        My Lord, no,

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

12

only to say then that if that works, I would propose to follow Mr. Gledhill to make any additional points arising on my application before handing over to Mr. Gibbon.

THE COURT:                    Yes, very well then, we will let Mr. Gledhill go first so he has the benefit of his reply so he doesn't complain that he doesn't have a reply.  So we'll let Mr. Gledhill go first.

MR. GLEDHILL:                 My Lord, I'm very grateful for that.  I'm also very grateful for my learned friends as well for being able to deal with that matter in that consensual way.

So I've already referred to the issue which is live before Your Lordship today as the residual powers issue.  And that question for practical purposes is whether my client in the case of the 25 Campbells Companies, Mr. Borrelli, includes those companies to oppose the Joint Provisional Liquidators' application for Chapter 15 recognition in the United States.

And as a very point first, it is important to say at the outset that potentially quite a lot turns on that.  Because it not only determines who is entitled to appear at the final hearing in the

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

13

United States at the Chapter 15 Application on the 9th of June, it may also be relevant to whether by entering an appearance at the hearing in New York on the 22nd of April, which we did, which scheduling and interim measures were discussed, the Campbells Companies have already fallen into contempt of court, unless they really go on to say that that is in some sense an unrealistic hypothetical scenario.

Can I start by asking Your Lordship to look in Bundle 2 --

THE COURT:                 Yes.

MR. GLEDHILL:              -- Tab 19.  And it's Bundle page 1231 please.

THE COURT:                 Yes.

MR. GLEDHILL:              My Lord has that -- you'll have in front of you a copy of the transcript of the New York proceedings on the 22nd of June.  You can see that from about a third of the way down the page.  And in the middle of the page you can see that the foreign representatives, so that's the Joint Provisional Liquidators, were represented by Mr. Dietderich of Sullivan & Cromwell.

And if you turn on within this until you get to Bundle page 1330 --

THE COURT:                 Yes.

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

14

MR. GLEDHILL:            -- and looking at line 11, you're in the middle of Mr. Sullivan's [sic] opening address to His Honour Judge Glenn.

And he says at line 11:

"The first is we want to be very clear that although the internal governance question is one of BVI law, it is a threshold question that needs to be resolved."

Then if My Lord goes over the page to Bundle page 1331 --

THE COURT:               Yes.

MR. GLEDHILL:            -- picking it up at line seven, the Judge says:

"Is that", in other words this preliminary question, "is that teed up in the BVI Court?"

And Mr. Dietderich says this:

"Well, it's not teed up yet in the BVI Court.  We do think, and this is related, that it's not merely a violation of BVI law.  We think this violates the bold text penal notice.  So, in our view, it's contempt of" this "BVI High Court.  We don't know what we will be doing in response to that..."

So the suggestion is already being made in the US Chapter 15 proceedings that we are in

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

15

contempt of court, of this court by virtue of the appearance which we've issued.  So as I've indicated, this is an issue of some significance to those who are instructing me.

Now as Your Lordship knows, we are perfectly, we say we are perfectly entitled to do what we have done to date in the United States.  We say we are perfectly entitled to continue to do it on the true construction of Mr. Justice Mithani's Order of the 9th of January.  And I'm going to come on to the terms of that Order in a moment.

But before I do, may I start by setting the scene by showing you three provisions in the Insolvency Act that are relevant for this purpose.

THE COURT:                Yes.

MR. GLEDHILL:                My Lord has our Authorities Bundle.  And turn within that to Tab 2.

THE COURT:                Yes.

MR. GLEDHILL:                Within that we have a little run of material provisions from the Act.  And if you go on to bundle page 6, the first of three provisions to look at is section 171 entitled, 'Rights and Powers of Provisional Liquidator'.

171(1):

"Subject to subsection 2, a provisional

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

16

liquidator has the rights and powers of a liquidator to

the extent necessary to maintain the value of the

assets owned or managed by the company or to carry out

the functions for which he or she was appointed."

Sub (2):

"The Court may limit the powers of a

provisional liquidator in such manner and at such times

as it considers fit."

So in broad terms the provisional

liquidator has the powers of a liquidator which are set

out, of course, in Schedule 2.  And I'll come on to

Schedule 2 with Your Lordship in a moment.  But that's

subject to two qualifications.

The first is the one that you see in

subsection (1), the final line, final couple of lines.

So those Schedule 2 powers are only exercisable for the

interim conservatory function which a provisional

liquidator has, that's the force of the words, to the

extent necessary to maintain the value of the assets

and so forth.

And then the second qualification is what

you see in subsection (2), so the Court can, if it

thinks fit, cut back the section (2) powers upon

appointment.

For the second relevant provision, if My

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

17

Lord turns on to bundle page 7 --

          THE COURT:                Yes.

          MR. GLEDHILL:           -- you should

have there section 175 entitled "Effective

Liquidation".

          "175(1):  Subject to subsection 2 with

effect from the commencement of the liquidation of a

company..."

          And just pausing there, we don't have it

in this Bundle, but it's in fact in the Kobre Bundle,

commencement of liquidations defined in section 160 to

mean the time at which the liquidator is appointed.

          So "with effect from the commencement of

the liquidation of the company", (b), "the directors

and other officers of the company remain in office but

they cease to have any powers, functions or duties

other than those required or permitted under this part

or authorised by the liquidator".

          And this is an interesting provision

because it's, in fact, different to the provisions of

the English Statute which we quoted in our skeleton.

The English Statute in very broad terms says that

directors only have such powers post-liquidation as the

liquidator or general meeting permits.  Under the BVI

legislation, they retain their powers "to the extent

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

18

required or permitted" under Part 6.  But of more immediate relevance for Your Lordship's purposes is the point that what you see here, of course, is that it's only upon the appointment of liquidators that the directors lose any powers at all pursuant to statute.

So when provisional liquidators are appointed, if the directors lose any of their preexisting powers at all, they do so only because of the terms of the Order appointing the provisional liquidators, it's not pursuant to anything in this statute.  It's not a matter of statute, it's not a matter of case law, it's purely a question of construing the relevant order.

And then the third relevant provision for Your Lordship's purposes you see if you turn on to bundle page 9.  And you see there at paragraph, section 472, "authorisation of insolvency officer to act in a foreign country".

472:  "The Court may on the application of an insolvency officer, authorise him or her to act in a foreign country on behalf of the Virgin Islands insolvency proceeding as permitted by the applicable foreign law."

So this provision has nothing to do with director powers.  Effectively what it means is that

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

19

before an officeholder can go off and seek recognition
overseas, he or she has to come and get an order from
the BVI Court first.

Now, I'll come back to the statute again
in a moment with Your Lordship if I may.  So if you can
keep that in whatever way is convenient so that you can
readily refer back to it.

THE COURT:                Yes.

MR. GLEDHILL:             But at this
point I'm going to take you to the Mithani Order as I'm
going to call it, without intending any discourtesy to
the learned Judge I hope, which is in the Hearing
Bundle at Volume 1 at Tab 12.  Within that it starts at
bundle page 113.

THE COURT:                Yes.

MR. GLEDHILL:             Now, this is
the Order which appointed the Joint Provisional
Liquidators on the 9th of January.  And it's the Order
which defined their powers.  And we made the point in
our skeleton argument that there are in effect two, if
I can put it this way, buckets of powers conferred by
this Order.  And in our submission to Your Lordship it
is extremely important to distinguish clearly between
them.

The first of those two buckets Your

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

20

Lordship sees if you go to bundle page 114 and start by looking at paragraph 2.

Paragraph 2 at the foot of the page:

"The Joint Provisional liquidators have the rights and powers of a liquidator to the extent necessary to maintain the value of the assets owned by the company and to carry out the functions for which they are appointed."

So this in very broad summary tracks section 171 which I showed Your Lordship a moment ago. It confers the powers of a liquidator on the JPLs but only for the interim conservatory purpose pending the hearing of the Winding Up Application.  And as I said a moment ago, those powers are contained in Schedule 2 of the Act.  So if we can get that back out again now, that's our Authorities Bundle at Tab 2.  And this time please we're looking at bundle page 10.  So our authorities, Tab 2, page 10.

THE COURT:                Yes.

MR. GLEDHILL:                And if My lord has that, you see a third of the way down Schedule 2, "pursuant to section 186, powers of a liquidator".  And for your purposes, the key provision is paragraph 4, "power to commence, continue, discontinue or defend any action or other legal proceedings in the name and on

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

21

behalf of the company".

So subject to the qualification that Your Lordship has seen in paragraph 2 of the Order, Joint Provisional Liquidators have the power both to commence and discontinue proceedings in the company's name pursuant to Schedule 2, paragraph 4.  But My Lord now looks back at Mr. Justice Mithani's Order, so we're back in Hearing Bundle 1, Tab 12, and this time please moving on to bundle page 117 --

THE COURT:                Yes.

MR. GLEDHILL:             -- you see paragraph 10:

"Save as provided in paragraph 3 above", I'm going to come on to that next, "save as provided in paragraph 3 above the Joint Provisional Liquidators may not exercise any of the powers set out at Schedule 2 to the Insolvency Act, 2003 without" the "sanction of the court."

So subject to what I'm about to say, JPLs can only exercise their power over proceedings in the company's name by first getting an order for sanction. And until they get that order for sanction, the directors retain their preexisting power over proceedings.  And that's the consequence of section 175(2)(b) which I showed Your Lordship a moment ago.

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

22

But there is a refinement of that position and that brings me on to the second of the two buckets of powers which this Order vests in the JPLs.  And My Lord sees that if you turn back to bundle page 115.

THE COURT:                Yes.

MR. GLEDHILL:                And on that we're now looking, of course, at paragraph 3.  So it starts, paragraph 3 at the top of the page:

"In addition to the powers outlined in 2 above, the JPLs shall have the following specific powers which may be exercised without further sanction or intervention of this Honourable Court."

So in contrast to the powers I just showed you at paragraph 2, these powers are expressly exercisable without full control; without sanction. And for Your Lordship's purposes, the two relevant provisions are the ones that you see at (c) and (d).

So starting off with (c), there's the power:

"To seek the recognition (or its equivalent) to the appointment of the JPLs in the United States..."

Just pausing there, notice that the United States is specifically the Court's contemplation.

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

23

"...United Kingdom, Singapore, Hong Kong, Taiwan, Thailand and Cambodia or elsewhere for the purposes of securing, realising and remitting assets to the control of the JPLs and for the purpose of obtaining access to and control of the records of the Company."

So just pausing there, that's nothing to do with the question of whether proceedings can or cannot be brought by them or by anybody else in the name of the company.  What this provision does is to allow the JPLs themselves, the individual officeholders to go off overseas and make an application in their own names to have themselves recognised.

That separate question of who can then bring proceedings or not in the name of the company is the one that's dealt with in the next following sub-paragraph, sub-paragraph (d).

"D", the power "to commence, continue discontinue or defend, including by way of counterclaim or similar response, any action or other legal proceedings in the name and on behalf of the Company in so far as necessary to protect the assets and information of the Company..."

So this paragraph, paragraph (d), overlaps with the power to bring or discontinue

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

24

proceedings which Your Lordship saw a moment ago in

Schedule 2, paragraph 4.  But there is an obvious and

important difference.  First of all this power, unlike

the Schedule 2 power, is exercisable without sanction.

That's the first three lines of paragraph 3.

But, secondly, it's exercisable only in a

limited sub-category of cases being those where

litigation in the company's name is necessary, looking

at the last line of that passage that I read, to

protect the assets and information of the company.

I'll come back to that.  But say for the

moment that we are in a situation, hypothetically,

where litigation is necessary for the purpose

stipulated in paragraph 3, 3(c), the next question is

what powers do the companies' directors still have in

that regard.  And the answer to that question for your

purposes you derived from bundle page 117 again.  We

looked on that page a moment ago at paragraph 10, we're

now looking at paragraph 9:

"The powers set out in paragraph 3

above", so that's what I've just read, "are to the

exclusion of any power exercised or purported to be

exercised by any existing director of the Company in so

far as such power concerns the affairs of the Company

and its assets within the jurisdiction of the Virgin

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

25

Islands."

So the directors are prohibited, where this provision is engaged, from exercising their own powers to bring proceedings if you're in a case that falls within paragraph 3(d) of this Order if the liquidators' power without sanction under paragraph 3(d) is exercisable.  But even in a case where 3(d) applies, the prohibition which Your Lordship sees in paragraph 9 only extends to where the 3(d) power concerns the affairs of the company and its assets within the jurisdiction of the Virgin Islands.  So even in a case otherwise within 3(d), the directors still retain their power to cause the company to litigate in matters that do not concern the affairs of the company and its assets within the jurisdiction of the Virgin Islands.

So that, in our submission, is how we say the Order of Mr. Justice Mithani works.  But before I draw out the implications of the explanation I've just given, I just wanted to make one more preliminary point if I may.  If you keep Mr. Justice Mithani's Order to hand but now go to the skeleton arguments.  I don't know what form you have those in, but I am going to ask My Lord to have a look at the skeleton argument from my learned friend Mr. Gibbon on behalf of the Joint

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

26

Provisional Liquidators.

THE COURT:                    Yes.

MR. GLEDHILL:                 And within that if you please turn on to the second page.  And we're looking please at paragraph 4.

And my learned friend says this:

"The directors of" the "27...Companies do not want the JPLs to be recognised in the US."  They "contend that they can (or should be able to) oppose the JPLs' recognition... in the name of the companies over which the JPLs have been appointed.  What the directors envisage is a contested recognition hearing in the US between, on the one hand the JPLs and, on the other hand, the Companies themselves...  This would be an unusual state of affairs."

So the suggestion by my learned friend is that if we are right in what we say the legal analysis is, it leads to the absurd position where the debtor companies would be opposing the JPLs' application for Chapter 15 recognition.  And that's, in fact, a point which is made at a number of separate junctures in this skeleton.

To pick up on another instance of it, if you go on until you get to skeleton page 6 and look at paragraph 18.

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

27

THE COURT:                    Yes.

MR. GLEDHILL:                 Then my learned friend is talking about what happened at the hearing before Judge Glenn in April and he says:

"The JPLs found themselves in the extraordinary position that they were facing objections to their applications for recognition of their own appointment apparently from the very companies over which they were appointed."

But, My Lord, as you've seen from our skeleton argument, we say that the suggestion that there is anything unusual about a debtor company resisting a Chapter 15 application in the United States for recognition is quite mistaken.  And the reason for that, Your Lordship gets if you go now to our Authorities Bundle again please.  And this time within that go to Tab 4.

THE COURT:                    Yes.

MR. GLEDHILL:                 My Lord has here an extract as you can see from the front page, bundle page 18 of the Federal Rules of Bankruptcy Procedure.  It's a very short point.  It emerges from page 19 over the page.

Rule 1012 at the bottom of the page, 'Responsive Pleading in Cross-Border Cases':

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

28

"(A)  Who may contest the petition.  The debtor or any party in interest may contest a petition for recognition of a foreign proceeding."

So far from it being, to quote my learned friend, extraordinary that the companies should resist the Chapter 15 application, there are, in fact, specifically identified in the Federal Bankruptcy Rules of the party primarily entitled to do precisely that. And against that background, if My Lord now goes back to Mr. Justice Mithani's Order.  So we're now back in the Main Hearing Bundle at Volume 1, Tab 12 and looking at bundle page 115.  Apologies for making you jump around.

THE COURT:                Yes.

MR. GLEDHILL:                Focusing again on that (d), that paragraph 3(d), the core question for Your Lordship today becomes whether the exercise of the procedural right of the debtor companies conferred by the US Bankruptcy Rules to oppose an application for Chapter 15 recognition was, in the wording of this paragraph and the last two lines, requiring to be exercised, 'to protect the assets and information of the company'.

Because if it was necessary to oppose the Joint Provisional Liquidators' application in the

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

29

United States, "to protect the assets and information of the company", it would follow from that that opposition could only be mounted by the Joint Provisional Liquidators.  Because 3(d), as Your Lordship has seen, confers exclusive standing on them to litigate or discontinue in the company's name.

Contrary wise, if opposing the liquidators' application is not necessary for the purpose of "protecting the assets and information of the company", it's our proposition to Your Lordship that that power had stayed with Mr. Borrelli.

Now, that factual question, is it or is it not necessary to protect the assets and information is, of course, a factual question.  And the first thing to say to Your Lordship about it is that there is no suggestion in the Joint Provisional Liquidators' evidence of this hearing, which is Mr. Drury's witness statement, that the Joint Provisional Liquidators have concluded that it is or indeed have ever even addressed their minds to that issue.  And that is, of course, we say entirely unsurprising because they are themselves the Applicants in the United States proceedings.  They could not possibly take the position before the United States Court that their Recognition Application should be granted, while maintaining in this court that

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

30

resistance to that application in the name of the
companies is nevertheless "necessary to protect the
assets and information of the companies".

And if that is so, then in our respectful
submission to Your Lordship, that is the first of two
reasons why Mr. Borrelli is perfectly entitled to do as
he has.  His powers are not excluded by paragraph 9 of
Mr. Justice Mithani's Order which I showed you.  That
was at bundle page 117.  Because opposing the Chapter
15 Recognition Application squarely in line with what
the US Federal Bankruptcy Rules contemplate is simply
not within the scope of paragraph 3(d) of this Order.
And if that's right, Mr. Borrelli retains the power to
control who directs the company to litigate or not.

But there is a second point which is
this.  That quite independently of that, by doing what
he is doing Mr. Borrelli is not interfering either with
the administration of the affairs or assets of the
company within the Virgin Islands in any event.  Just
to remind you of the relevant language in that regard,
it was back at bundle page 117.

It was paragraph 9 which reads again:

"The powers set out in para 3 above are
to the exclusion of any power exercised or purported to
be exercised by any existing director."

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

31

Then importantly this:

"Insofar as such power concerns the affairs of the company and its assets within the jurisdiction the Virgin Islands."

What Mr. Borrelli is doing is not interfering with anything within the jurisdiction of the Virgin Islands.  It is not interfering with the affairs of the company or its assets for precisely the reason that the whole focus of the United States application is to gain recognition for the Joint Provisional Liquidators within the jurisdiction of the United States Courts so that they can safeguard assets and information enjoyed by the companies within that jurisdiction and not within the BVI.

So, My Lord, that is in very simple form how we put the argument on construction and why we say for two separate reasons it is simply incorrect to suggest, as the Joint Provisional Liquidators have done, that Mr. Justice Mithani's Order in some way prevents Mr. Borrelli from causing the companies to appear in the US Bankruptcy Court.

I am going to come on in a moment to the submissions I have to make in relation to the case law. But before I did that, can I deal with one point which arises out of the skeletons both for the Joint

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

32

Provisional Liquidators and for the Attorney General.

THE COURT: Yes.

MR. GLEDHILL: And going back in the Order of Mr. Justice Mithani, there's one provision that which is important which I haven't yet shown you which you see on the first page which is bundle page 113.

THE COURT: Yes.

MR. GLEDHILL: And, of course, you see it's endorsed with a penal notice. And the first paragraph says this:

"The effect of this order is that the directors, former directors, officeholders and former officeholders of the respondent local title are replaced by the Joint Provisional Liquidators and that the directors, former directors, officeholders and former officeholders are prohibited from taking any action in relation to the company's affairs without prior consent of the Joint Provisional Liquidators."

Now, both my learned friends Mr. Gibbon and Mr. Dennis seek to rely on that paragraph in their respective skeleton arguments as fortifying the submission that Mr. Borrelli cannot cause the companies to do what he has done presumably on the basis that that is an infringement of that paragraph.

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

33

Just start by noting in point of fact that that paragraph does, in fact, purport to direct anybody to do anything.  On its face it's simply a statement of fact about the effect of the provisions which follow in the Order.

I have other things to say about that though and the first of all is this.  That the penal notice is not, in fact, part of the Order nor is it relevant to interpret it.  And there are a couple of cases that it's helpful to show Your Lordship in that respect.  Back in our Authorities Bundle, the first point you find at Tab 10 --

THE COURT:                Yes.

MR. GLEDHILL:             -- it's a decision of His Honour Judge Paul Matthews sitting as a Deputy Judge of the High Court.  My Lord doesn't need to know anything about the facts.  If you just turn on to the last page, bundle page 92.

THE COURT:                Yes.

MR. GLEDHILL:                I can show you what's being discussed just by reading out the first couple of lines at paragraph 50.  The second point was about the penal notice:

"It appears from e-mails that were passing between the Defendant's Counsel and the Court

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

34

on the 26th July after the order of Judge which had

been made, and it was the Judge himself, that it was

the Judge who had decided to attach the penal notice

that he would himself even though it hadn't been sought

in the application by the Claimant."

                And then that feeds into the discussion

which you see at paragraph 51 where the Judge says

this:

                "I only add this:  That, in my judgment,

it is not actually a matter for the judge at all as to

whether a penal notice is attached, because, as I

understand the matter, a penal notice is not part of

the order.  The penal order is necessary", I think that

should be penal notice, "the penal notice is necessary

because a party obtaining the order wishes to be able

to enforce that order by committal, but you cannot

enforce a court order by committal without a penal

notice being attached.  And that is why, if you look in

the Chancery Guide at" para "16.30 to 16.33, you will

see the explanation given that it is always the party

that wants the penal notice added that has the burden

of saying so or doing it if that party is drafting the

order or supplying it to the court, if the court is

drafting the order.  I have never understood that it

was part of the judge's function actually to insert a

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

35

penal notice, certainly, against the wishes of the parties.  That concludes my judgment."

So the scope of the penal notice is neither here nor there.  And if Your Lordship wanted more authority for that, you find that in a case which you find at the preceding tab in our Authorities Bundle at Tab 9 at bundle page 73.

THE COURT:  Yes.

MR. GLEDHILL:  This was a case about child care proceedings.  And on the facts the grandfather in this case had custody of the child, but the child had been taken out of the jurisdiction by his father.  So the grandfather brought proceedings against the father or the mother to compel the child's return.  You can see it's before a strongly constituted Court of Appeal comprising Lord Aker and Lord Mustill as they subsequently became, plus Lord Justice Nourse.

And if My Lord turns on to bundle page 75, you can see towards the bottom of the page, about two-thirds of the way down, you can see the order which the grandfather initially got.  Do you see the sentence starting, "at the conclusion of the hearing"?

THE COURT:  Yes.

MR. GLEDHILL:  "At the conclusion of the hearing, Judge Gill made an order

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

36

which was reduced to writing in the following terms:

1. The First Defendant" -- so importantly that's the mother, "the First Defendant", the mother, "be committed to prison for contempt of Court suspended for twenty-one days..."

And then:

"2. The child (...) be returned to the jurisdiction of this Court within ten days of the date of this order."

And paragraph 2 is important because it's not clear on its face whether that order, whether that mandatory order was addressed to the mother, to the father who had taken the child away to, as it happens, Italy or to both of them. And one of the points relied upon by the grandfather, there was a further set of committal proceedings after there was no return during the currency of the suspended sentence of imprisonment. You see in that paragraph one. And the grandfather then applied to commit the mother to prison for breach of paragraph 2 of this order. And one of the points that he relied on in those committal proceedings was that that paragraph 2 that I've just read out to you failed to be construed by reference to the penal notice which had been expressly directed to the mother. And you see that if you just glance up the page, it's in

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

37

fact the first two lines.

So this was the relevant penal notice.
Take notice -- sorry, in fact, you have to go back one
page to page 74 at the foot of the page:

"The order was endorsed with a penal
notice in the following terms to the mother."

And back over at paragraph 75:

"Take notice that unless you obey the
directions contained in this order you will be guilty
of contempt of Court and will be liable to be committed
to prison."

So the submission on behalf of the
Applicant grandfather was paragraph 2 at the bottom of
page 75 may have been unclear who it was directed at.
But when you read it together with the penal notice, it
was quite clear that paragraph 2 was directed at the
mother.  That point is treated by Lord Mustill whose
judgment we are in at bundle page 79.  And My Lord can
see about a third of the way down there's a passage
that's entirely consistent with the discussion of His
Honour Judge Matthews that I've just read out to Your
Lordship.

"Turning to the second part of the order,
we find a requirement that 'The child be returned to
the jurisdiction of this Court within ten days...of

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

38

this order'.  This formula is open to objection on two grounds.

1.  It is not clear whether the order was directed to both defendants, or to one alone, and if so to which defendant."  These are the important words. "The penal notice is not part of the order, and cannot be used to construe it."

So we suggest to Your Lordship that that is about as clear as you could wish in terms of authority.  The terms of the penal notice to Mr. Justice Mithani's Order are irrelevant to the question which Your Lordship have to decide.

If we go back now to the penal notice and have a look at that.  So we're back in the Hearing Bundle, Volume 1, Tab 12 at page 113.  I've already made the point.  If you look at that opening paragraph, "the effect of this Order", all it's even purporting to do is to summarise the terms of what follow.  And in our submission to Your Lordship, the terms of that first paragraph go far beyond the terms of the Order they purport to summarise.  They are, in fact, completely inconsistent with the limited displacement of the directors' powers in paragraph 10 which we showed Your Lordship earlier on.

And I make this further point, that this

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

39

purported summary of the effect of the Order is
inconsistent even with the Joint Provisional
Liquidators and the Attorney General's own analysis of
how this order works.  Because both of them accept that
at the very least, Mr. Borrelli did have the power to
cause the Campbells Companies to oppose winding up and
to seek removal of the Joint Provisional Liquidators
most recently at the hearing before Your Lordship which
I appeared on on the 16th and 17th of April.

But on its face, even that is contrary to
the first paragraph of this penal notice.  There's no
carve out for that.  So, My Lord, in our respectful
submission we've seen the authorities.  The penal
notice is irrelevant to the question of construction
you have to decide.  And on any view it is a complete
mischaracterisation of the operative [inaudible] of the
order which follow on from it.

My Lord, that's all I was going to say
about construction.  I'm now turning to what we say you
get out of the authorities.  And it's important to
stress that this is an alternative submission.  We only
get to this question if contrary to the submissions
that I've been making up to this point Your Lordship
reaches the conclusion that the Mithani Order does
create a prima facie bar to Mr. Borrelli causing the

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

40

Campbells Companies to appear in the United States.

And the first thing to say is that as we point out in our skeleton argument, it is common ground between the parties that even if Mr. Justice Mithani otherwise creates a blanket prohibition, there is a residual class of powers which directors are usually regarded as having specifically to oppose winding up to seek to displace provisional liquidators. We say other things as well. And so by this stage of the argument, the question for Your Lordship is simply how wide does that accepted class go. It's common ground that there is a class, the question is simply as to how wide it goes.

Now, for Your Lordship's purposes, we suggest that the starting point is to go back into our Authorities Bundle and to look at a case which you find at our Tab 8, bundle page 70.

THE COURT:                Yes.

MR. GLEDHILL:                It's a case of Mr. Justice Plowman dating from 1971 called Union Accident Insurance. And it is, I think, common ground that this is the leading authority in relation to the question of what the powers of provisional liquidators are -- just forgive me, what the powers of directors are after the appointment of provisional liquidators.

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

41

My learned friend Mr. Gibbon has helpfully set out the

facts in detail in his skeleton argument so I'm not

going to trouble Your Lordship with that.  It's

sufficiently summarised there.  And I'll take you

straight to the material passage which you find on the

last page of the Report at bundle page 72.

THE COURT:                Yes.

MR. GLEDHILL:                And if you have

that, by letter 'B', do you see a sentence starting,

"no doubt that is so"?

THE COURT:                Yes.

MR. GLEDHILL:                Can I invite

you to read that, just to save my reading voice, to

read from that sentence, "no doubt that is so", down to

the end of the judgment please.

THE COURT:                Yes.

(Thereupon, the Court peruses paragraph.)

Yes.

MR. GLEDHILL:                So the

skeletons before Your Lordship, there are two suggested

approaches.  We take a wider approach.  We say that the

question in any given case is whether the provisional

liquidator could appropriately give instructions on

behalf of the company.  So that's referencing the words

Mr. Justice Plowman uses between letters D and E of the

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

42

extract that you've just read to yourself.

Mr. Gibbon and Mr. Dennis take a narrower approach and they say in effect that the class-accepted cases confine to resisting the petition and applying to discharge the appointment of the Provisional Liquidators.

Now, as Your Lordship will see from Mr. Gibbon's skeleton argument, the JPLs rely on a body of Commonwealth authority which say, which they say supports their narrower approach.  We say in response to that the cases decided under different category of schemes are not of any assistance to Your Lordship. But we also say more fundamentally that those cases prove nothing.  Because the facts before you have no parallel in them or indeed in any previous case that we are aware of.

The problem with which Your Lordship is specifically concerned here is where proceedings in the United States for recognition are in being in circumstances where the Rules quite specifically contemplate the situation which the officeholder will be the applicant and the debtor company will be the respondent.  None of the cases relied on by my learned friends concerns a situation remotely like that.  None of them says that where a provisional liquidator makes

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

43

a Chapter 15 application, the company is not, without the consent of the provisional liquidator himself, entitled to the exercise, to exercise the right to appear to oppose which the US Federal Bankruptcy Rules expressly confer on it.

In the language of Mr. Justice Plowman, which I showed Your Lordship a moment ago, we say it cannot possibly be "appropriate for the provisional liquidator to give instructions on behalf of the company" to oppose his own application. And none of the cases upon which my learned friends rely says anything different to that.

But we do have a further submission going forward from that and developing that point. Just assume against me for the moment that my learned friend is correct and that the position is confined to this, that the only circumstances in which the directors of the company can cause the company to resist proceedings is in the case of the petition to wind up or an appeal from the petition, or in seeking to supplant or replace or remove the provisional liquidators from office. Even if that is the case, I say that we still get through.

Postulate this hypothetical case. I'm a director of a company, provisional liquidators are

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

44

appointed and I cause the company to apply to discharge that appointment maybe, as here, for allegations for serious failings in the obligation of full and frank disclosure.  My learned friends are constrained to accept that I am perfectly within my rights to do that.

Now take the analysis a stage further. Assume that the original order appointing the provisional liquidators didn't give them a power to sell assets.  So with my application to discharge outstanding, the Provisional Liquidators go back to court seeking a variation of the original order to allow them to sell things.  Can I oppose that?  Can I cause the companies to oppose that?  Of course I can. Be nonsense if the residual powers principle allowed me to challenge the original order but didn't permit me in the meantime to object to an attempt to augment the scope of that order.

And if I'm right about that, we say can't make any possible difference that the application, as here, is an application made to a foreign court to which it heard at the hearing on the 16th and the 17th of April we maintain that the Joint Provisional Liquidators should never have been appointed in the first place.  We say that they only were so because of egregious breaches of the disclosure duty at the

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

45

hearing before Mr. Justice Mithani on the 9th of January, for example, claiming that there was a risk of dissipation warranting a without notice hearing when there was plainly no such risk given to the subsistence of sanctions.

As Your Lordship will see from the skeleton, the Joint Provisional Liquidators, in fact, applied for Chapter 15 recognition full well knowing that that challenge to the validity of their appointment was in being that those points were going to be run. And they issued their application for Chapter 15 recognition about a week before the hearing on the 16th and 17th of April well knowing that those issues would be ventilated at that hearing. Why they chose to do that at that time and against that background has never been explained but it's certainly a point which those instructing me are going to be making vigorously at the hearing for recognition in the United States.

Be that as it may, the Joint Provisional Liquidators' position today amounts to say that if we continue to do that in the United States, we fall foul of the Order. Because while we are entitled to seek to set the Order aside in the BVI, until it actually is set aside we're not entitled to try to stop the Joint

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

46

Provisional Liquidators from gaining further powers for themselves in reliance on that impugned order.  We say that cannot possibly be right.  And we also say that the fact that there is no previous case that we can point to, which my learned friends are able to point to which consider that situation, does not constrain you to reach the conclusion that the Joint Provisional Liquidators can proceed in that, I submit, thoroughly oppressive way.

My Lord, that takes me to the last point that I was going to make, mindful of the time.  It's a short point.  It's one I've trailed in my skeleton and it's this.  Your Lordship has just seen that the Order of Mr. Justice Mithani is endorsed with a penal notice. Pointed out at the start of my submissions that the suggestion has already been made in the United States proceedings that we face the possibility of committal proceedings further having the temerity to enter an appearance in the United States.  In those circumstances, Your Lordship will no doubt have well in mind the principle that orders featuring penal notices have to be clear and unequivocal and thought to be strictly construed.

And if I can show Your Lordship what Mr. Gibbon and I both cited as the controlling authority on

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

47

this point, it's in our Authorities Bundle at Tab 11.

THE COURT:                Yes.

MR. GLEDHILL:                And it's a
decision of the Court of Appeal in a case called Pan
Petroleum.  See, it dates from 2017.  And the judgment
I am about to show you is a passage in the judgment of
Lord Justice Flaux as he was at that point.  You don't
need to know anything about the facts of this.  You can
just turn on until you get to bundle page 107.

THE COURT:                Yes.

MR. GLEDHILL:                You have a
heading towards the bottom of the page, "the applicable
legal principles".  Can I just ask you to read that
paragraph 41 with its three sub-paragraphs continuing
over the page.  Can I ask you to read that to yourself.

THE COURT:                Yes.

(Thereupon, the Court peruses
paragraphs.)

Okay.

MR. GLEDHILL:                My Lord, for
all the reasons I've given, we say that we are clearly
right on the question about the extent of
Mr. Borrelli's residual powers.  But even if Your
Lordship is in doubt about it and considers that the
matter is one of difficulty and ambiguity, we do say

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

48

that the clear principle is that we should not be exposed to the risk of having committed a contempt of court on the basis of ambiguous provisions.  And that any ambiguity consequently falls to be resolved in our favour.

My Lord, unless I can assist you further those were the submissions I was proposing to make.

THE COURT:                    Yes, thank you, Mr. Gledhill.

So, Mr. Tyers-Smith, please.

MR. TYERS-SMITH:       My Lord, yes.

You may have seen or at least you will have heard in opening that the applications as between my client Amber Hill and Lateral Bridge are materially similar, if not identical, to those that are made on behalf of the Campbells Companies.  I don't need to take you to it, but it's in Volume 1 at page 72, and effectively seeks the same declaratory relief in the resolution of this issue.

So it's for that reason as it was at the final hearing of the liquidation applications that I will gratefully adopt the submissions made by Mr. Gledhill on behalf of his director clients, and I will say that those submissions apply equally to the incumbent directors of both Amber Hill and Lateral

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

49

Bridge.

There are two points then that I come to by way of amplification or augmentation.  And the first relates to the matter of displacement which I accept that Mr. Gledhill has already touched upon.  But I do just want to show you the full suite of the relevant provisions of the Act just so it's made clear that there is no statutory displacement of powers in the British Virgin Islands under the 2003 Act.  And there will be a point of distinction that I will draw from that in respect of one of the cases that my learned friend Mr. Gibbon relies upon, which is the objective case and the Australian authority that he relies upon for the proposition that any residual powers can only be exercised in the interest of justice.  But as an Australian case, as My Lord would appreciate, is based on the Australian Statute, which again is materially different to the 2003 Act.  So I'll make that point first.

And the second point that I will then come on to is really just to develop the hypothetical point that Mr. Gledhill made a few moments ago about the absurdity of the proposition that this power to object to Chapter 15 can only be vested in the very people that have exclusive power to make and pursue

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

50

that Chapter 15 proceeding in the first place.

So, My Lord, if I can deal with the first point of augmentation on the law first.  Can I ask you please to turn up our Bundle of Authorities.  And it's under Tab 13.

THE COURT:                    Yes, one moment.

MR. TYERS-SMITH:        And it's page 168.

THE COURT:                    One moment.

Okay.

MR. TYERS-SMITH:        So, My Lord, the starting point, as did Mr. Gledhill, was section 175.  So you can see that this provision deals with the effect of the liquidation.  You'd already been taken to section 175(1)(b).  But before looking at (b), again just to seize upon the fact that the provisions under this section take effect from the commencement of liquidation of the company.  And then you see at (b) that there is a statutory displacement of powers as set out there.  And that then engages the question, well what is the commencement of the liquidation.  And I know that My Lord will know the answer to this question, but if I can ask you please to turn back in our Authorities Bundle and find page 161 again under

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

51

Tab 13.

THE COURT:                    Yes.  Yes.

MR. TYERS-SMITH:         And it's
section 160 headed "Duration of Liquidation".  Does My
Lord see that?

THE COURT:                Yes.

MR. TYERS-SMITH:           Yes.  So the
liquidation of the company commences at the time at
which a liquidator is appointed as provided in section
159 and continues until termination.

So, My Lord, this shows you that the
displacement of the fact of section 175(1)(b) only
occurs in the context of the appointment of a
liquidator under section 159.

And finally then just to complete this,
if My Lord can just look at section 159 and you'll see
section 159(1)(a).  Obviously that talks about an
application made to appoint a liquidator of a company
on an application under section 162 which, of course,
was the application made by the learned Attorney
General at the hearing over the 16th and 17th of April.

So what My Lord can take from that very
clearly is that there is no statutory displacement of
my clients Amber Hill and Lateral Bridge's incumbent
directors' powers as a matter of statute.  And I said

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

52

that I would just alight upon a point of comparison in respect of one of the authorities relied upon by my learned friend Mr. Gibbon.  And perhaps I can ask you please to take up his Bundle of Authorities.  And it is page 72 --

THE COURT:                    One moment.

MR. TYERS-SMITH:              -- under Tab 4.

THE COURT:                    Okay.

MR. TYERS-SMITH:              My Lord should have the case of Object Design v. Object Design Australia.

THE COURT:                    Yes.

MR. TYERS-SMITH:              Now this is cited by Mr. Gibbon at paragraph 29.2 of his skeleton argument for the proposition that the residual power rule, so the question of whether displacement gives way to residual powers is really focused on what is required in the interest of justice with which I don't really materially disagree.  But I do want to show you the differences in the Australian legislation on which this case was based.  And if My Lord can please have a look at page 72.  And it's about a third of the page, third of the way down the page where reference is made to, Counsel for the Applicant relied upon section 47(1)(a)(2) of the Australian Corporations Law.

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

53

Does My Lord see that?

THE COURT:                Yes.

MR. TYERS-SMITH:                And if My Lord please, can you just read to yourself what appears to be sub-section 2 starting, "(1), provisional liquidator of a company".

THE COURT:                Yes.

(Thereupon, the Court peruses paragraph.)

Okay.

MR. TYERS-SMITH:                So, My Lord, unlike other jurisdictions where the statute does have an automatic displacement of powers, that is not so in the BVI.  Because as you've seen, section 170 and 171, which are the two provisions that deal with the appointment of provisional liquidators, do not have any such effect.  And they don't incorporate any like provisions to the ones that you see in the Australian Corporations Law.

So, My Lord, really what that establishes is that, the question of whether my clients' incumbent directors powers to cause other companies to appear in the Chapter 15 proceedings has been displaced is purely one of interpretation of your Brother Judge, Mr. Justice Mithani's Order appointing the provisional liquidators.

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

54

So, My Lord, that's all I need to say about that, because at this stage I adopt Mr. Gledhill's submissions on why it is that it is not to be said that the power to oppose a Chapter 15 proceedings have been assumed to the Joint Provisional Liquidators to the exclusion of the incumbent directors of Lateral Hill and Amber -- sorry, Amber Hill and Lateral Bridge.

Now, the final point that I just want to alight upon is why in practice that is so important. And this isn't a hypothetical even though it derives from the way that Mr. Gledhill explained why it would be an absurd outcome. For my clients, I say it's more fundamental. What I intend to do is show or give an illustration as to how this can cause real injustice to Amber Hill and Lateral Bridge. What I'd like to do is just start with a respectful reminder of the principles that govern the role of provisional liquidators. And I won't take long because I know very well that My Lord will be familiar with these principles.

But can I start with the authority which is found under Tab 1 of our Bundle of Authorities, and it's a case called Carapark.

THE COURT:                Yes.

MR. TYERS-SMITH:          So My Lord,

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

55

this is a decision of Justice Street, as he then was, of the Supreme Court of New South Wales.  And this concerned -- you don't need to be too concerned -- the facts -- in summary, the question was whether a provisional liquidator have the power and was, therefore, required to make a payment out of a sum of around 10,000 pounds that he had secured to the Deputy Commissioner of Taxation.  And the powers of the provisional liquidator in this case are set out or recorded on page 383.  So it's page 2 of our Authorities Bundle.  And again it's around two-thirds of the way down this passage starting with the paragraph, "the section under which the provisional liquidator".

Does My Lord see that?

THE COURT:                No, I don't.  I mean, I'm in Carapark, am I?

MR. TYERS-SMITH:          Yes, I'm sorry, yes, you are.

THE COURT:                Yes.  I'm in Carapark in your Authorities Bundle.  And the internal Law Report page number is what, sorry?

MR. TYERS-SMITH:          338.

THE COURT:                Ah, yes, the second page, 338.

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

56

MR. TYERS-SMITH:          Yes, I'm sorry.

THE COURT:               Okay.  And,
yes, all right.

MR. TYERS-SMITH:          Tracking --

THE COURT:               Tracking what?

MR. TYERS-SMITH:          I am sorry, I
beg your pardon.  Tracking down to the start of the
paragraph where it says, "the section under which the
provisional liquidators are appointed".  Does My Lord
see that?

THE COURT:               There are no
numbers or anything and this is a nice old fashioned
page.  So let me find it.

Oh, yes, that's right.  About a quarter
up from the bottom.  I see --

MR. TYERS-SMITH:          Yes.

THE COURT:               Yes.

MR. TYERS-SMITH:          Indeed.  So My
Lord can see there that the power of the provisional
liquidator in this case derived from section 231 of the
Companies Act.  And you can see on its face it's quite
broad.

And so the Court may appoint an official
liquidator provisionally at any time after the
presentation of a winding up petition and before the

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

57

making of a winding up order.  And the provisional

liquidator shall have and may exercise all the

functions and powers of a liquidator subject to such

limitations and restrictions as may be prescribed by

the Rules or by the Court.

So it's a broad provision on its face,

but it's not dissimilar to section 171, sub (1) or

indeed sub (2) which on its face appears to be a broad

provision but actually when considered in the context

of the role of a provisional liquidator is narrow.  And

the way that that plays out in this case is, if I can

ask My Lord to turn over now please to the page, it's

page 5 of our Authorities Bundle and it's page 341 of

the Law Report.

THE COURT:                Yes.  Okay.

Yes.

MR. TYERS-SMITH:        And can I

invite My Lord please just to read the paragraph.  It's

actually the third paragraph starting, "I am of the

view".

THE COURT:                Yes.

MR. TYERS-SMITH:        If My Lord can

read that paragraph down to -- you can see the numbers

on the left-hand side, at 25 ending "inconsistent with

the nature of his office as a provisional liquidator".

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

58

THE COURT:                     Okay, let me read that.

(Thereupon, the Court peruses paragraph.)

Yes.

MR. TYERS-SMITH:          So, My Lord, what My Lord can take from this provision is that actually whatever is said in an apparently broad provision conferring broad powers one has to look at that in the light of the restricted and conservatory function of provisional liquidators.  And My Lord will have seen in particular the provision of this or part of this paragraph was that it says:

"The primary duty is to preserve an existing status quo with the least possible harm to all concerned so as to enable the Court to decide a proper and final hearing whether or not the company should be wound up."

So, My Lord, that is a statement of principle which has been applied in the British Virgin Islands.  And if My Lord can now turn over, and this is the final authority on this topic, Carapark has been applied in the BVI in the case of Kensington v. Montrow which is at page 7 of our Authorities Bundle under Tab 2.

THE COURT:                Yes.

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

59

MR. TYERS-SMITH:        And, My Lord Kensington v. Montrow is another case that is cited by my learned friend Mr. Gibbon for the proposition that provisional liquidators are officers of the court and they will comply with the Court's orders as to their role and their function.  And that is set out at paragraph 34 of their skeleton argument.

But the case or authorities I'm citing to is the same case but it's the sequel.  And this judgment is a judgment of Hariprashad-Charles, Indra Hariprashad-Charles and it is a judgment on an application to discharge Mr. Tacon as a provisional liquidator for cause.  And what I'd like to do is just start with why it was because he was removed for cause. Why it was he was removed for cause is set out in paragraph 117 at page 22 of our, of the Authorities Bundle references.

THE COURT:        Okay.  So I have to go to page -- sorry, where do you want me to go?

MR. TYERS-SMITH:        It's paragraph 117 of the judgment, and it's page 22 of the Authorities Bundle.

THE COURT:        Yes.

MR. TYERS-SMITH:        Starting

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

60

"Mr. Tacon's lack of independence".

THE COURT:                Yes.

MR. TYERS-SMITH:          So one can see in this case Mr. Tacon considered that he was appointed not just to preserve assets, but to gather documents and information in order to build a case.

Now, that's why he was removed.  But that is against what was said in respect of the Carapark case at paragraphs 88 and 89.  So if I can just ask you to track back to those paragraphs.  You can see the paragraph starting "provisional liquidators"?

THE COURT:                Yes.

MR. TYERS-SMITH:          Yes.  So in particular one can see from paragraph 88 that it is vital that a provisional liquidator does not align himself with the interest of the party pursuant to whose application he was appointed.  The primary role of a provisional liquidator is to preserve the status quo.  It's not part of the function to pursue directors of the company.

And then as you see from paragraph 89, the point about doing the least possible harm to all concerned is something else which is pervasive in the limited role of a provisional liquidator.

So, My Lord, with those points in mind I

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

61

just want to now take you to three examples which show

why having access to the Chapter 15 recognition

proceeding is vital as a matter of balance and justice.

And, My Lord, if I can ask you now please to look at

the transcript of the Chapter 15 proceedings and the

hearing that took place in the Southern District of New

York.  It's in Volume 2 and it's at page 1335.

THE COURT:                    Yes.  Okay,

1335.  Yes.  Okay.

MR. TYERS-SMITH:          So, My Lord, if

you can just pan down, this is paragraph 15 of the

transcript.  So this is Mr. Dietderich who acts on

behalf of the provisional liquidators.  And if you

start at line six, you can see that My Lord is quoted

to Judge Glenn in this way.

And I should be absolutely clear that in

fairness to Mr. Dietderich what he said is, well, this

is the way that you summarised the Attorney General's

application on the 16th and 17th of April.  He said

that you summarised the Attorney General's application

as being the worst.

And you might recall saying this:

That "we have come across some pretty

un-prepossessing and unattractive conduct before this

Court, obviously, but it has never got as colorful as

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

62

this and as abysmal and infernal as this."

Now, as far as it goes, that is an accurate recitation of what My Lord said on the first day of trial to an extent. But can I ask you now please to have a look at page 1563.

THE COURT:                1563.  One moment.

MR. TYERS-SMITH:       So this is the transcript, My Lord, if you've got it.

THE COURT:                Yes.

MR. TYERS-SMITH:       The transcript of the first day of the final hearing.  And if My Lord scans down to line 15, you can see that this is where My Lord interposed an observation whilst Sir James Eadie Kings Counsel was making his opening submission.

And you can see that, My Lord, your observation in its totality was:

"...I suppose part of your case is as well, is that although this is a first, as it were, for the BVI, this is, if I understand you correctly, this scheme that's being presented before the court, is it looks like the worse of the worst...conduct that has certainly come before this Court."

And then you see the quotation starts, "we have come across some pretty unprepossessing and

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

63

unattractive conduct...".

So when one compares that to how it was put before Judge Glenn, you can see that the full context wasn't given and that tends to leave it hanging as to whether or not that was not only an observation that My Lord was making at trial, but whether that was somehow an instinctive view of the merits of the case.

Now, because I've just shown you the approach to the role of provisional liquidators in this Territory being conventionally that they are independent neutral officeholders who are supposed to approach matters with an open hand without doing or with doing the least violence to all parties concerned, what Mr. Dietderich might have done is then said well it's also fair to say, Judge Glenn, that whilst the learned Judge, Mr. Justice Wallbank KC in the Virgin Islands made this observation, it is also fair to say that by the end of the trial he did have some countervailing concerns.

For example, if My Lord can just please reach for the Supplemental Hearing Bundle that we filed.  It's 400 pages, but it's only because it contains day two of the transcript.  You've only got day one as part of this application so I just want to show you one or two extracts from day two.  And it's

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

64

Tab 3 of the Supplemental.

THE COURT:                    Yes.

(Brief pause.)

Carry on.

MR. TYERS-SMITH:       So looking at page 243 in particular nine, line nine, does My Lord have that?

THE COURT:                    Well, hang on. Let me get there first.

MR. TYERS-SMITH:       Sorry.  I'm so sorry.

THE COURT:                    Yes, 243.  One moment, 243.

(Brief pause.)

Yes.

MR. TYERS-SMITH:       So, My Lord, this followed some submissions on an alternative case for the provenance of certain photographs and materials that were set out in the indictment.  And My Lord can see that the observation My Lord made was, of course:

"I'm very concerned, very concerned to note that apparently once again, and I say once again, it is not the first time that I have seen this U.S. attorney seem to think that they need to embellish the record."

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

65

THE COURT:                 Yes.

MR. TYERS-SMITH:           And, My Lord, that is the first, if I may say, of a cascade of further observations that My Lord made.  And I don't want to take you to all of them, but I want to show you one that starts please at page 295.

THE COURT:                 Yes.

MR. TYERS-SMITH:           And starting at line 12.  My Lord, this might jog My Lord's memory but this was a boat analogy of what might have been a drug smuggling boat sitting in the Gulf told to stop but doesn't stop.  Question arises, well, are you a drug running boat or shall we just blow it up is effectively what My Lord says at line 17 and 18.  And you say, "well, that might be all right in that circumstance, but", line 20 is the material one, "but we are a court of law.  We have to be careful because we are dealing with fundamental rights.  It's not a question of kind of covering for the bad guys and getting them off the hooks, et cetera, and making it difficult for the good guys to get justice".

And then My Lord goes on to make a rampallian observation, if I may put it that way, that you basically can't make bricks without straw.  And as you see over the page at 296, "well, I'm not seeing any

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

66

straw here; that's the problem".

Now may I say at once, I don't suggest that it was incumbent upon Mr. Dietderich to take Judge Glenn through all of that, but he might have said, and just to show you how the learned Judge was looking at this, by the end of the trial he made these observations. But because we are provisional liquidators, we're staying out of that; we're not getting involved. But as I've shown you, what was said at the Chapter 15 hearing or what was quoted was that isolated part of the transcript from day one. That's the first point.

Now the second point or second example that I want to give you please is if we can go back to page 1340 of Volume 2.

THE COURT:                 1300?

MR. TYERS-SMITH:           340, My Lord.

THE COURT:                 Okay.

(Brief pause.)

Okay, yes.

MR. TYERS-SMITH:           And starting at line four, you can see that Mr. Dietderich was talking about the approach to making distributions. And he drew upon the now infamous case of FTX as an analogy and he was discussing the centralized distribution of

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

26-10769-mg    Doc 77-2    Filed 06/05/26    Entered 06/05/26 16:53:44    Exhibit 2 -
Transcript of the Remote Deposition of Riz Mokal    Pg 291 of 991

67

the scheme and how that was overseen by courts of

multiple jurisdictions.

He then goes on at line nine to say:

"So, we don't know how we will coordinate

with...asset seizures but what we do know is we don't

think" -- or "we think that the seizure of an asset in

reliable custody of a government around the world

and...taking of an asset into the custody of the JPLs

away from the bad guys are both steps forward.  And

what we do with it after" that "we will have to work"

it "out."

So My Lord can see that Mr. Dietderich is

talking about the role of the provisional liquidators

and what they're proposing to do probably much further

down the line if they get appointed.  But materially

you can see that Counsel for the JPLs has characterised

presumably all of the debtors, including my clients, as

the bad guys.  So that's the second illustration.

Now the third and final one is, sticking

with this transcript and working down to line 23:

"The debtors and their assets are subject

to comprehensive sanctions imposed by the Office

of...Asset Control in the United States..."

Over the page to page 21, line two:

"These OFAC sanctions are very broad,

68

they restrict all US persons", and so on.  And the
remainder of these submissions focus on sanctions.

Now if, My Lord, casts his mind back to
the submissions that I made at the final hearing, the
two points of contextual difference that I alighted
upon in my opening was that Amber Hill and Lateral
Bridge are not sanctioned contrary to the pleaded case
of the Attorney General.  And it is now accepted and
has to be accepted that we are not so sanctioned.  And
if anything, any further proof is required of that,
that was a concession made by the Attorney General at
trial and it was accepted that we weren't sanctioned.

So it was propounded before Judge Glenn
that again we were sanctioned as part of the Prince
Group in circumstances where we are not and it is clear
that we are not.

So, My Lord, where am I going with these
points.  Well, where I'm going is this.  Now these are
not jury points.  Taken together in my respectful
submission unfortunately regrettably shows the degree
to which the provisional liquidators appear to have
been taken by the same unproven allegations that are
relied upon by the Attorney General.  And as I showed
you by reference to the case of Kensington and
Carapark, the approach at this stage is one of even

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

69

handedness and neutrality.  And that is not, as you can see from the transcript of the hearing before Judge Glenn in my respectful submission quite how it was put.

Now the upshot of that for the purposes of the issue that you have to decide today is that this is a practicals example of why the point that was made by my learned friend Mr. Gledhill about having access to Court, and he drew upon the decision of Mr. Justice Plowman in the Union case, how having access to the Court is a question of fairness.  Because if the JPLs are right on their analysis, there is no one or the companies rather, so Amber Hill and Lateral Bridge, are not entitled to appear in front of Judge Glenn and they are not entitled to say, well, you are only being told part of what happened at trial.  And in my respectful submission that is a fundamentally misconceived approach to the question of first of all the companies' right to access the Court and, secondly, to make submissions that are consistent with their position in this jurisdiction that the Order should never have been made.

So, My Lord, those are the only two points that I wanted to make in addition to the points that I've now adopted by Mr. Gledhill.  And unless My Lord has any questions, I'll hand over who I think -- I

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

70

think Mr. Gibbon is next.

THE COURT:                    Yes.  And we're just coming up to 11:30 here in the Territory of the Virgin Islands, which is mid-morning break time for 15 minutes.  So we'll take a quick recess.  Thank you very much.

(Break taken at 11:29 a.m. to 11:45 a.m.)

THE COURT:                    So, yes, learned Counsel.  I think we are now with Mr. Gibbon.

MR. GIBBON:                    Yes, My Lord. May I begin by saying what I didn't have a chance earlier that all three of the Joint Provisional Liquidators are in attendance remotely today and clearly they will be able to aid the Court as appropriate.

I'd like to start, in the light of the submissions made by my learned friends, by way of context by taking you to Paragraph 50 of Mr. Drury's statement.

THE COURT:                    Okay.  One moment.

MR. GIBBON:                    Hearing Bundle 1 at page 42, and by way of explanation, I do wish to show you what my clients are seeking to do in pursuit of their obligations under the order that was granted

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

71

in January to an adjournment.

THE COURT:                     So, page 42.

MR. GIBBON:                    Page 42, and Paragraph 50 says this:

"Against this background, and having regard to (i) the absence of meaningful cooperation from the directors of the Companies; (ii) the obstruction encountered from Campbells, BSF and others purporting to the act in the name of the Companies; (iii) the substantial US nexus of the Prince Group's alleged criminal conduct (including the pending DOJ criminal indictment of Mr. Chen, the civil forfeiture proceedings, and the alleged laundering of more than US$18 million of victim funds through a Brooklyn-based money laundering network) and (iv) the need to obtain records, communications and transactional documentation held by U.S. financial institutions and other U.S. counterparties in order to trace and preserve the Companies' assets, the JPLs concluded that recognition of the BVI proceedings under Chapter 15 was required to enable them properly to discharge the duties imposed by the Appointment Orders."

And he goes on in 51, this is where I would stop:

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

72

"If granted, recognition in the U.S. would result in the JPLs having powers to obtain information and documentation concerning the Companies and their assets in the U.S."

So that's what my clients are seeking to do in pursuit of their obligations, and I stress that.  And I would respectfully submit, My Lord, that that is entirely as the Court will expect its officers to do and I am going to come back to the detail of the order in due course, but also respectfully submit that it's entirely in line with the manifest intentions of the judge in making the order in the terms he did.

I also, in the context of that, just want to pick up one brief observation.  It's found in the Kensington case which my friend referred to in his authorities bundles, Mr. Tyers-Smith.  That's within Divider 2, I believe, of, no I think I may be -- let me doublecheck because I may have the wrong with reference here.

THE COURT:              Kensington and Montrow International?

MR. GIBBON:             Yes.  There are two Kensington decisions, which unfortunately pose a little bit of complication, one is in my bundle and one

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

73

is in my friend's bundle.  Yes, it is this bundle.  It is at page 15.  No, I apologize, it is in the other bundle.  I'll come to it straightaway, so I'll take you, My Lord, to my bundle.

THE COURT:                One moment.

MR. GIBBON:               It is exactly the same paragraph, but unfortunately it causes a difficulty.

THE COURT:                Let me pull up your Authorities Bundle.  Okay.

MR. GIBBON:               It's at Divider 9 of that.

THE COURT:                Yes.  Okay. Paragraph?

MR. GIBBON:               And within that, Paragraph 68, I believe, if I have got my reference correct this time.

THE COURT:                Let me have a look.

MR. GIBBON:               No, I apologize.  I will make the point later, if I can, by reference to the correct reference, but I've missed it. The short point is --

THE COURT:                Hang on.  Let us bottom this out, okay, because this is important.

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

74

The starting points are important, so let's bottom this out right now.  Let's take the time to square this up so we don't come back to it.  The point is what?

MR. GIBBON:                The point I was going to make and I don't believe it's controversial is that a liquidator needs to know where the assets are to preserve them, and for that purpose, it's all I wanted to go to.  There was a reference in Kensington and for whatever reason, and it's entirely my responsibility, my note of that paragraph reference isn't correct.

THE COURT:                Okay.  So basically your point is that the liquidators, the provisional liquidators need to know where the assets are?

MR. GIBBON:                Yes.  I have found it now.  It is within 68 in my friend's copy, so page 15.

THE COURT:                Okay.  One moment.  Let me go back to his bundle, page 15.

MR. GIBBON:                And it's the third line.

THE COURT:                Of Paragraph 68?

MR. GIBBON:                Yes.

..."for him to function effectively in

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

75

order to preserve these assets as the Provisional Liquidators, he needs to know the whereabouts of those assets."

THE COURT:                    Yes.

MR. GIBBON:                    So that's by way of preliminary remarks, if I may put it that way, My Lord, and I was going to go straight into the question of what the rights and duties of a Provisional Liquidator are and how they are identified.  You have already been shown by my friend Mr. Gledhill Section 171(1), I'd simply ask you to turn that up.  It's within the Campbells authorities at page 6 within Divider 2.

THE COURT:                    Yes, 171?

MR. GIBBON:                    171, My Lord, indeed.  So:

"Subjection to subsection (2), a provisional liquidator has the rights and powers," et cetera, et cetera, "to carry out the functions for which he or she was appointed."

So what that identifies is the primacy of the order.  It also identifies the functions of whatever is needed, i.e., if you need it, you have it for the purposes of the order.  And also I identify this point, the natural meaning in relation

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

76

to the provisional liquidator is that the provisional liquidator alone has those rights and powers.  So it's the provisional liquidator has them, no one else does.

Now I'll come back in due course to the general order in relation to the effect of appointing a PL, but I'll deal with construing a court order first.

THE COURT:                    Hang on.  Let me get the point.  Two points so far you have got.  You say Section 171(1) basically predicates the primacy of the order and you get there presumably because it talks about to the extent necessary to maintain the value of the assets owned or managed by the company or to carry out the functions for which he was appointed, so basically you have to look at what the order says in order to ascertain those things, yes?  So that's the primacy of the order.

Your second point was that the Provisional Liquidator alone has those rights and powers.  If he has them, nobody else does.  That's your second point and I think you had a third point.

MR. GIBBON:                    I'm afraid that was my third point and if I allied the second, I'll repeat it.  It's if you need powers, you have them.

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

77

That's the effect of using the word necessary.  To
fulfill the functions you have been given, you need
those powers, you have them.

THE COURT:                Yes.  Okay.

MR. GIBBON:                So that's all I
wanted to say about Section 171(1), other than the
points already made by Mr. Gledhill.  The JPLs are
under the control of the Court as in subsection (2).

I was next going to move to the Pan case
and I've got a copy of that in the JPLs' bundle,
Authorities Bundle, which I will just pull up on my
iPad.

THE COURT:                So hang on.
JPLs' bundle?

MR. GIBBON:                Yes.   And Pan
is found in that at Divider 8, page 165.

THE COURT:                Pan Petroleum,
yes.

MR. GIBBON:                Yes.  And in
light of my friend's explanations, I'm going to go
straight to page 176 which is where the relevant
paragraphs are found.  And as Mr. Gledhill says, he and
I are agreed that these are the relevant materials.
Rather than read them again, simply to summarize what
you see there.  It's not about whether the order should

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

78

have been made.  It's about what the order means.

Now, I pause briefly over that because there was a degree to which it seemed to me that Kobre & Kim submissions to Your Lordship earlier were beginning to stray into questions about whether the order should have been made, and speaking on the part of my clients today, that is an area into which I do not propose to stray or to make any submissions.  So the focus in line with Pan is on what the order means.  And I accept the point being made by Mr. Gledhill that where there are penal consequences for breach, one should be careful about the existence of the penal order, but I only accept it as far as it goes, and I'll come back to what I'm saying on that shortly.

"Words are to be given their natural and ordinary meaning and to be construed in their context, including historical context and with regard to the object of the order."

And also, and this is important, this is the Sans Souci point:

"The reasons given by the Court for making the Order are admissible and interpretation may be critically affected by what the Court considered to be the issue which its order was supposed to

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

26-10769-mg   Doc 77-2   Filed 06/05/26   Entered 06/05/26 16:53:44   Exhibit 2 -
Transcript of the Remote Deposition of Riz Mokal    Pg 303 of 991

79

resolve."

Now before turning to the words used, we know that this was an ex parte application brought because of an alleged egregious international criminality on a large scale and you have been reminded by my learned friend for the Kobre & Kim Parties of some of the observations you made if it were to be the case that those allegations were made out.

So when the order was made, Mr. Chen and persons associated with him were considered to be the directors of each of the companies.  There is no reason to think that the Court expected a Mr. Borrelli, or any other party, to appear as a director subsequently.  The question of the Court's intention while making the order is not, therefore, to be assessed against Mr. Borrelli.  It applies to anybody as a director, but the individuals primarily in mind, the acting individual indeed was Mr. Chen and those who were associated with him.  And in this context the fact that he was disqualified by reference to the regulation that my learned friend Mr. Gledhill referred to, would not, I respectfully submit, lead to the assumption that those in charge at the time of the order were unconnected to it or

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

80

on the allegations, without blemish.  But we can go
further on the material available to the Court, it
was the very purpose of the application on which the
order was made to take the Companies out of the
hands of the directors who were considered to be Mr.
Chen and his associates.  Within Hearing Bundle 1,
if I can ask you to turn to that, can I ask you to
turn to page 109.

So this, this is the application put to
the Court.  This is the context by which one is to
understand what was done because the nature of these
hearings done at great [unclear] as Your Lordship is
fully aware, can be that the judgment itself is an
encapsulation of what is accepted obviously own the
basis that it's no more than a preliminary finding,
but on the basis of the allegations put, that is why
the order should be made.  And you'll see under the
heading which is just caught at the end of the
previous page, the appointment of JPLs:

"It is essential that Joint Provisional
Liquidators be appointed over the Company
immediately (without notice to it and its
principals) and before the originating application
is heard and determined for the following reasons:"
and I'll highlight in particular (a):

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

81

"The Company continues to be under the control of Chen and his associates and as a result they can use or continue to use it to further the criminal enterprise thereby continuing to inflict public harm."

And: "(b)(i) immediately take full control of the Company.

(b)(iii) take control of its books and records."

And I can add to that by taking you within the same bundle to page 33, and no doubt this is something on which Counsel for the Attorney General, Mr. Dennis, can you assist you further, if needed, but Paragraph 12 cites the submissions that were made in writing to Justice Mithani.  The Attorney General cited various reasons in support of the immediate appointment of the JPLs.

And you see:

"There is a real substantial risk that, absent the immediate appointment of provisional liquidators, assets held by or through the Companies will be transferred, concealed or dissipated, and documents will be destroyed or concealed."

And then more importantly, potentially:

"The appointment of PLs will immediately

82

remove the control for Chen and his association and

place the Companies under the supervision and

control of officers of this Court, thereby

protecting the integrity of any investigation and

preserving assets for the benefit of the victims of

Chen and Prince Group's fraudulent and criminal

activities."

So, as I have indicated, Mr. Justice

Mithani understand that given the busy nature of the

list and no doubt he was going straight on to

something else, didn't write a detailed reserved

judgment, but one does see what he concluded based

on the material.  And that can found, I believe in

Bundle 2 for the hearing and I believe the correct

reference is 719.

THE COURT:                One moment.

MR. GIBBON:                But on the

material that's presented by the Attorney General, the

case for the appointment of Provisional Liquidators is

overwhelming, subject, of course, to any disclosure

matters that you would like to bring to my attention.

So, in effect, he is saying, well, that's

my judgment, based on what you said to me or what

you submitted to me, subject to any full and frank

disclosure that you want to draw to my attention.

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

83

So we have seen there, in summary, the precise basis on which Provisional Liquidators was sought to be appointed, how those were amplified in submissions to the Court and how the Court responded.  And right at the heart of that was removing the Companies from the control of directors, that being the consequence of appointing Provisional Liquidators.

Now it's here I return to the question of penal notice.

THE COURT:                Before you do that, let me understand what you are saying, Mr. Gibbon.  What I think you are saying is that, you have taken me a case, let me see what case it was, that was the Pan Petroleum case --

MR. GIBBON:                My Lord, yes.

THE COURT:                -- which said that the sole question for the Court is what the order means, and, that's at (i) and (iii) in the general principles:

"Words of the order are to be given their natural and ordinary meaning in order to be construed in their context, including their historical context and with regards to the object of the order".

In other words, you can't construe the words of the order in a vacuum, you know, collaging

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

84

various provisions together and pausing them as if
that's the only thing that that the Court has in front
of it so you can get to a result which happen to be the
complete opposite of what the Court had originally
intended.  And what I think you are saying is that it
was certainly not the intention of the Court that Mr.
Chen should be allowed to exercise residuary duties as
a director in a way which could scuffer the JPLs'
attempts to safeguard the assets of the Company or to
obtain information about the assets of the Companies.

MR. GIBBON:                My Lord, yes,
and structuring that way, one can see what they
expected the consequences, what the Court expected the
consequence of the order to be was that it would
prevent the directors, whoever they might be, from
continuing to be in control.

So to recap, if I may, that's also in the
context of the point I made about Section 171,
namely, if you give powers to provisional
liquidators, it's given to them and not to anybody
else.

THE COURT:                Now I think you
made your point in your skeleton that it will make no
sense if, on the one hand one set of people, the JPLs,
could purport to speak on behalf of the Company to take

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

85

legal steps, but, on the other hand, the Company should

fight against itself to prevent those steps from being

taken?

MR. GIBBON:            My Lord,

indeed.  And perhaps this is slightly out of my

sequence, but if I could ask you to look at it, I

believe this is in the Second Hearing Bundle, first at

page 1097, I hope you will see there a draft order

headed "Order Granting Recognition of Foreign Main

Proceedings and Related Relief."

THE COURT:            One moment,

1097.  That's right.  This is a United States order.

MR. GIBBON:            My Lord, yes,

and I should stress it's a draft order because it's a

part of the JPLs' application in New York --

THE COURT:            Okay.

MR. GIBBON:            -- dated the

8th of April, as you'll see at the top of the page, but

this is to put in context what my learned friend's

clients are seeking to do.  They are seeking to oppose

this order and this is the order recognising the

proceedings which the Court has on foot in this

country, pursuant to the order in January.

"Upon consideration of the Verified

Petition of the Authorized Foreign Representatives for

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

86

the debtors requesting entry of an order (this "Order") (i) recognizing the BVI Proceedings as "foreign main proceedings", and (ii) recognizing each of the Authorized Foreign Representatives," et cetera, "and granting certain relief".

And then going forward to page 1100, eleven hundred, you can see there the following recitals, the active part of the order, the operative part of the order is under the heading, "it is hereby ordered".

THE COURT:                Yes.

MR. GIBBON:                And that's what been sought.  So one has got to be absolutely clear what the Defendants are submitting to you.  They are saying that albeit, and I'll come to this in due course, are challenges in the BVI, have to be on the basis of appealing the order or winning on the Liquidation Application.  We are entitled to go to the United States to instruct the Companies, cause the Companies to oppose the JPLs' application for the recognition of this very order.

THE COURT:                Yes.

MR. GIBBON:                So I have taken that slightly out of the sequence, but I think it is important just really to be absolutely clear what is

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

87

being said by the Companies in that context.

Now I touch on the penal notice.  For reasons I'm going to come to shortly, we say as a matter of general law, it is the overwhelmingly clear position that the appointment of provisional liquidators does indeed remove powers from directors other than the residual powers, but before I get there, just touching on penal notice.

What you will have seen, first of all, is that the penal notice does no more than confirm that general proposition that the directors no longer have powers, which is in line with the very purpose for which the order was granted in January, as I have shown Your Lordship.  I accept entirely that it is a thing that is in the nature of something endorsed.  In fact, nowadays it tends to be included in the drafting, rather than being stamped on subsequently by somebody, but it does stand in a slightly different situation to the words of the order itself.  But I do question the reliance, the heavy reliance on Re C in the light of the subsequent Pan authority which says that all orders need to be construed in context.

And to be clear about what my submission is there, I simply say about the penal order, it

88

simply confirms what you have already got as the

clear meaning of the order, the clear effect of the

order, both as a matter of its terms, and as I'll

come to, as a matter of the general law.

So for today's purposes, all I need to say

to Your Lordship is it's entirely consistent with

the established general law of the effect of the

appointment of a PL, and beyond that, questions of

contempt, et cetera, which have been dangled before

Your Lordship by my friends are of no particular

relevance or assistance to the Court.  It's the case

that we are relying on the words of the order which

are in no way undermined by the words of the penal

notice.

Now, this is where I move on to the

general law about the effect of the appointment of a

PL.  There was extensive material that we put for

Your Lordship's assistance in our skeleton.  It's

not because we want to take you through the detail

of every single set of legal provisions in every

jurisdiction we have referred to, but it's to show

that the general principle that the appointment of a

PL is entirely standard when we say that it removes

powers from the directors other than residual

powers.  That BVI position is consistent with the

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

89

English and Welsh law, Australian law, Malaysian law, et cetera.

And the distinction between a liquidation and a provisional liquidation in this regard is, in fact, of very little significant because of the width of powers that provisional liquidators will always need to hold the ring and protect assets. And that's why the law in relation to residuary and residual powers is just as much in relation to Provisional Liquidators as it is in relation to Provisional Liquidators.

So, for example, is that my friend Mr. Gledhill drew your attention to, the case that crops up all the time is Union Accident and it's found in various places in bundles, but one has got to be absolutely clear, that was a provisional liquidation case and it was not, and is not the case in England that there is any expressed provision in the legislation saying what happens to directors' powers.

Now I regret to say I haven't got Section 135 of the Insolvency Act [1986] from England and Wales, from UK generally in the bundle, but I have turned it up here, and the relevant provision, I'll read them out, subparagraph (4):

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

90

"The provisional liquidator shall carry out such functions as the court may confer on him."

And (5):  "Where the liquidator is provisionally appointed by the court, his powers may be limited by the order appointing him."

It doesn't say anything else, but it is consistently understood, I'd respectfully say at bar and the bench that that deprives the directors of powers other than residual powers, subject always to the possibility that there might be a specific carve out relevant to a particular order.  So I've also since  Mr. Gledhill's submission about what the position was under Companies Act 1948 and all I can say now and I can't place huge reliance on it because I haven't got it before in a form I can send to you easily.  Sections 237 and 238 of the Companies Act 1948 which were the relevant provisions when Union Accident was decided again simply say that a company can have a liquidator appointed provisionally over it.  It doesn't go on to deal with the consequences of that.

So respectfully say that it's not the case that the position is at large simply because there's no statutory provision in the BVI which says in terms that the appointment of a provisional

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

91

liquidator makes directors functus officio in most
of their capacities.

Also, I should draw your attention to one passage in a textbook that was cited by my friend Mr. Gledhill in his skeleton argument.  It's found at tab 13 of the Campbells' Authorities Bundle and I believe it's 187.

THE COURT:                This is page?

MR. GIBBON:               Page 187 in the Campbells' Authorities Bundle.

THE COURT:                One moment.  Yes.

MR. GIBBON:               So my friend had cited passage that said that the powers of the directors come to the end with the appointment of a permanent liquidator, but the passage before that is of relevance to Your Lordship.  Page 187 is the last paragraph at the bottom of the page:

"As far as compulsory liquidation is concerned, there is no provision in the Act which deals with the powers of directors in such a winding-up. However in Re Oriental Bank Corp, Ex p. Guillemin, Mr. Justice Chitty applied the rule covering voluntary liquidation to the appointment of a provisional liquidator, and it seems that it has been universally

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

92

accepted that in winding-up by the court the powers of

the directors come to an end with the appointment of a

permanent liquidator."

So it's that prior passage I wanted to

draw your attention to, but I respectfully say that

has been the universal view as a matter of English

authority.

Now, I do want to show you briefly the

Union Accident case, and I happened to mark it up in

my bundles, so if you don't mind looking at the JPLs

Authorities Bundle, tab 1.

THE COURT:                    Yes.

MR. GIBBON:                    And my learned

friend, Mr. Gledhill invited you to save his voice to

read to yourself, a passage on page 642 within the

decision.

THE COURT:                    Yes.

MR. GIBBON:                    And you'll see

the second sentence of the paragraph beginning at C,

says this:

"I think that it may sometimes be helpful

to test the matter by considering the other side of

the coin, namely, to inquire whether the power which

is the board is said to have lost is one which can

be said to have been assumed by the liquidator."

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

93

Now what I want to stress to Your Lordship is that that is not a universal test.  It's clearly pertinent as regards the right of appeal, but the reason why it is not the universal test is straightforward to demonstrate.

Now if a power is expressly given to a provisional liquidator, the order plainly will not give the provisional liquidator power to oppose his own exercise of the power, but it would be an absurdity if that were to be regarded as having the consequence that the directors were able to oppose all such steps because they had the residual power to do things the PL hadn't been given the power to do.  And we say that that is precisely the absurd situation that my learned friend Mr. Gledhill presses on you.

THE COURT:          Let me understand this.  Can you explain this to me again.  I have read that passage where the, Plowman J., as he then was, has said that it may sometimes, i.e., not all the time, but sometimes be helpful to test the matter by considering the other side of the coin:

..."namely, to inquire whether the power which the board is said to have lost is one which can be said to be assumed by the liquidator.  If the answer

94

is that it cannot, that may be a good reason for saying that the board still retains it."

Okay.  And then he goes on:

"Clearly, for example as I have already indicated, the power to instruct solicitors and counsel on the hearing of the winding-up petition is not a power which anyone could suggest has passed to the provisional liquidator and therefore the board retains it."

Okay.  I have read that part now.  Now you're saying clearing this is not a universal test.  In fact, Plowman makes it clear that it is not a universal test.

MR. GIBBON:               It is not that Plowman makes it clear, but I am giving you an example, My Lord, which makes it clear.

THE COURT:                Even Plowman says that it is not a universal test.

MR. GIBBON:               It didn't.

THE COURT:                But you have given an example that makes it clear, and the example you've given so far, I've got the first half of it, which is that if a power is expressly given to the liquidators, the order will not give the liquidators the power to oppose his own power?

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

95

MR. GIBBON:                Indeed.

THE COURT:                And then you were going on to explain that rather kind of obscure concept to make it more simple for people like me who need to get his head around it.  So can you explain this to me, please?

MR. GIBBON:                Let's give an example.  Let's say there is a power to enter the company's property to acquire the records.  Now, plainly, the order is not going to say we give the provisional liquidator a power to oppose himself.  That's a nonsense, isn't it in?  But the argument being put by the Companies appears to amount to this, well, because the Provisional Liquidators can't have that power to oppose and they need to be policed, it must mean the Company is able to do that.  There is no difference, in principle, I respectfully say, between that and saying that when the JPLs go to New York, as they are entitled to do without the further Court permission to enforce the order by getting recognition, we are entitled to turn up and police that.  We are entitled to turn up because the Provisional Liquidator can't have been given power to oppose, that would be a nonsense, therefore, it's a power that must be still residing in us and we need to exercise it, Mr.

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

96

Tyer-Smith puts it this way, because there's all sorts
of things that we are concerned about that might be
said, but respectfully that's wrong.  The order cannot
be working in that way and it is unworkable, because
effectively it means every specific power that is given
to the Provisional Liquidators can be opposed in a
disruptive way, not just in this way case, but in any
other case, that in the normal and sensible way says
JPLs, here are your powers.

Now, we respectfully say the true
principle is much more limited than has been put by
my learned friends in their submissions to date.
First, by reference, this is to some very old case
law, but it was referred to by my learned friend Mr.
Gledhill in his skeleton argument.  There is the
Diamond Fuel case, and the list of these is one part
of the true rational for what's called a residual
power.  Within the Campbell's Authorities Bundle at
pages 25 to 26, one sees the submissions that were
made to the Court and more than, the Court the
colloquy with Lord Justice James that led to the
decision that it was the  residual power existed in
the directors and so Mr. Pearson, Queen's Counsel,
for the Company said at the bottom of 25:

"The order is made against the company,

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

97

and the company must have a right of appeal from it.
No doubt the liquidator is the only person to act if
the winding-up order was valid, but that is the
point in dispute.  Everybody has a right to appeal
from the order made against him and a company cannot
be in any different position."

        And you will see a couple of interventions
by Lord Justice James.  In particular:

        "The second arm of the powers of the
director is suspended."

        And Counsel responded:

        "I submit for this purpose they are not;
the company must have a right to be heard to say
that the winding-up order is wrong.  The functions
of the directors can only be suspended sub modo," so
in a qualified way, "provided the order can be
maintained."

        So we say that -- go back to the
nineteenth century, but that's part of the
underlying rational because you see that what Lord
Justice James said immediately after this:

        "As the present appeal has been presented
in conformity with the usual practice, we will hear
it on the merits."

        And as Mr. Gledhill has pointed out, since

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

98

then that usual practice has continued.  There is a rational for it there which you see expressed which we say has good sense, but it also ties in very closely with the right of appeal, and relatedly, what I was going to show you was a case called Hin Leong.  It's a Malaysian case, but it has observations which we respectfully say are of real assistance to Your Lordship.  That's in the JPLs' Authorities Bundle at Divider 7 and I believe it's page 156.  So if Your Lordship has that, there is a subheading, in italic, Our Views, and you can see it is talking about residuary powers the line of Re Union Line cases, and it's the context of a specific provision in Singaporean legislation, Malaysian legislation.

"In substance," in 56, "In substance, an application challenging the making of a judicial management order would challenge the very juridical basis on which such management powers of the directors have been removed, ie, upon the appointment of an interim judicial manager, judicial manager, provisional liquidator and/or liquidator. As such, it would appear attractive to hold that it would remain open for directors to challenge the very basis upon which their powers have been

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

99

divested..."

And we say respectfully say that's of great assistance to Your Lordship as a way of analyzing the nature of the residual powers as they are referred to in and across the full gamut of the authorities that we have identified, regardless of specific provisions found in particular countries legislation.  That's an operative principle, we say, which encapsulates, very successfully, why the residual jurisdiction is there.  And that what points to in the direction, we say entirely properly, is that you can't go around other jurisdictions purporting to represent the Company as far as the BVI court is concern.  And I'll stress this, we are addressing this for BVI purposes.  What the American court does in due course with the order, is, of course, a matter for the American court, but for BVI purposes, you can say, well, the directors have been divested of their powers.  What they are allowed to do is to challenge the making of the provisional liquidation order.  They can appear at the hearing of the Liquidation Application.  They can challenge the making of any order on that application and indeed they can challenge, by way of appeal, the making of the liquidation order and the

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

100

matters ancillary to those matters.  So in the case

of Union Accident, there was the appointment by the

official receiver as PL of a special manager, so

it's part of the functions of the PL.

THE COURT:                 So let me just

get you on this one, what you are basically saying is

that there is a broad, certainly in the Commonwealth

jurisdictions, a body of jurisprudence and I think we

all know this really, that there is a broad body of

jurisprudence which says that going back to the end of

the nineteenth century that upon the making of a

liquidation order and by extension, a provisional

liquidation order, and we have seen the authorities on

that extension, what that means is that the appointment

of the officeholder, the liquidator, or the provisional

liquidator, that displaces the directors from acting on

behalf of the company.  However, that would obviously

create the anomalous situation that there would be

nobody to challenge the making of a liquidation order

or a provisional liquidator order at all, and so in

order to enable the interest of justice to be done and

to allow effectively a challenge to happen, then the

law is interpreted to be that the directors, although

their powers to do things on behalf of the Company have

been divested from them, they retain a residuary power

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

101

which is limited to basically opposing or appealing the making of the liquidation order or the provisional liquidation order, yes?

MR. GIBBON:                My Lord, yes.

THE COURT:                And what that means, and what you are saying now, what that means is that the directors of course in the present case, whoever the director or directors might be, whether it's Mr. Chen or Mr. Borrelli, those directors can challenge the making of the provisional liquidation order but it cannot oppose an application by these provisional liquidators in the U.S. for recognition of the BVI proceedings and their appointment in the U.S.

And what I think you are saying, and this is the nub of my question, if you are with me so far on how I phrased your submissions which I think I have got it correctly, the nub of is that what the directors should be doing and can only do, in the present context, is if they don't like anything in the provisional liquidation order, for example, the fact that these provisional liquidators can go off to a foreign jurisdiction and seek recognition without this Court's sanction, they could and should be applying to this Court, either to discharge the provisional liquidation order or pending its complete discharge, at

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

102

least vary it or stay a certain part of it so that this Court can change the terms of the order.

What they can't do is to go to the U.S. and just oppose everything that the JPLs are trying to do in the U.S. because they are not bound to do that.  So I think what you are saying is that they need to come to this Court, if any, and oppose the making of, or oppose the provisional liquidation order that this Court made, either on a full basis or have it varied, pending a full opposition so that, that would fall entirely within their rights to challenge or appeal the making of this order which is inherently something before this Court.  I think that's what you are saying.

MR. GIBBON:            It is.  Just to add by way of clarification, I am sure Your Lordship had in mind, the critical thing is appear in the U.S. court in the name of the very companies in respect of which their powers have been put to one side by the order.

THE COURT:            Yes.

Now, I think Mr. Gledhill took me, you're probably going to come to this so I don't want to take you out of your stride, but he pointed out some federal rules provision which basically said that the Company

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

103

should be allowed to appear on something.  Now I can't remember what the something was, and, in fact, when that something is, in fact, a recognition application.

MR. GIBBON:    My Lord, it's not expressly put in those terms, but the simple point is this, based of my instructions, all that provision does is identify that a debtor can oppose an application.  It does not say who that debtor is to be identified as and the question on that front, and it's a matter for American lawyers, but it would appear to be if they look to the BVI, it's the BVI can give them the answer on that.  And the logic of why the BVI can give them the answer to that is the very point that Your Lordship has just summarized a couple of minutes ago.  In the BVI, the order has been made and the order has certain consequences.  If they don't like the consequences that flow from the BVI order, they have the right to appeal it or challenge it in some other way, but that is the nature of the order from the BVI perspective.  What the American subsequently do with, I am not in a position, for obvious reasons I don't have expert evidence to say, but those are my instructions, as to the position.

THE COURT:    Okay.  Now that American provision I was taken to, obviously it has got

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

104

a lot of words in it and, but you just summarized it to the, I think by saying that the U.S. provision only says that a debtor can oppose an application.  If we can go back to that document and see what kind of applications it has in mind there because what I am focusing on right now is that what the JPLs want to do in the U.S. is apply to have these BVI proceedings recognised in the U.S. and have their offices recognised in the U.S.  That is the JPLs' application in the U.S., is it not?

MR. GIBBON:            It is.

THE COURT:            It's not for something more fancy.  It is just for recognition, or at least that's part of it.  And then the question is, is that the sort of application that that provision in the U.S. has in mind?

MR. GIBBON:            There are different elements to it clearly, but if I could ask you to turn within my friend, Mr. Gledhill's bundle, to page 18, which is Divider 4.

THE COURT:            When you say his bundle, this is his --

MR. GIBBON:            So the Campbells' Authorities Bundle.

THE COURT:            Campbells'

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

105

Authorities Bundle, page 18, okay.

MR. GIBBON:                And All I can say because I am not a qualified American lawyer and I don't have expert evidence is this is the federal rules of bankruptcy procedure and he showed you, in particular rule 1012 on page 19 to say that:

"The debtor or any party in interest may contest a petition for recognition of a foreign proceeding."

But beyond that, I don't think Mr. Gledhill or myself would properly be in a position to say precisely what the full ambit of the Rules are. The instructions I have is simply that who is the debtor is a separate question to be identified.

THE COURT:                Yes.

MR. GIBBON:                And there may, as I say, we have already put in our skeleton argument, we have no objection, should the American court, so be minded, to the directors making these points in their personal capacity and it hasn't been suggested to us they can't to do that.

What we object to, we object to that for the reasons that we have given about the proper interpretation of BVI order is that as a matter of BVI law, we consider that is not permitted, and if the

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

106

directors are unhappy with that, their remedy lies

under the residual powers that we have just discussed.

So to that extent, in my example earlier, I hope I

began to convey this, the fact that this is overseas is

a bit of a red herring, with respect, because the same

question arises in relation to a power of entry to a

building or power to collect the documents.

THE COURT:                Well, the power

comes from who?  The power comes where?  I mean, in

relation to a BVI liquidation or a provisional

liquidation, the power comes either from BVI statute or

a BVI order and the foreign law can't give power where

we don't give it.

MR. GIBBON:                Well, as I say,

I am trying to keep it as brief as possible, but just

to imagine the domestic example if the order is in

place, the Court does not want to see the directors of

the Company popping up at every stage where the

Provisional Liquidators try to exercise the powers they

have been given to say, well, we challenge that because

who else is going to challenge it if we don't.  So that

is the essence of the argument in relation to the U.S.,

which is why I say it's a slight red herring to see

this through the prism of do we need to consider a U.S.

bankruptcy law.  Exactly the same logic would apply to

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

107

the steps being taken in this jurisdiction as well.

THE COURT:                    Okay.

MR. GIBBON:                    So, My Lord, you have our points, the final area I wanted to cover and cover really very briefly is putting the interpretation of the order in the case law together and both my learned friends have very attractively put elegant and elaborate submissions about looking through various provisions of the law about what is or is not to be understood at different points.  We respectfully say that the position is much more straightforward.  If you look at the order and I'd ask you to turn within Hearing Bundle 1 to page 113.  You have seen the penal notice which we say simply summarizes the effect in general law and the clear intention of what was sought to be done.

"The JPLs have been given rights and powers to the extent necessary to maintain the value of the assets owned by the Company and to carry out the functions for which they were appointed."

And in (3), in addition they have got powers without further sanction or intervention to take certain steps, and we are focusing today on (c):

"To the seek the recognition (or its

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

108

equivalent) of the appointment of the JPLs,

specifically anticipated that," that would be the

United States "for the purposes of securing,

realising and remitting assets to the control of the

JPLs and for the purposes of obtaining access to and

the control of the records of the company."

Well, that's the application which I

showed Your Lordship earlier.  Those are the steps

that my clients are trying to take and the order is

to be understood in the way that we have suggested.

It's to be looked at in the common sense way, what

is the order seeking to achieve?  And we say the

position is not just clear, it is manifestly clear

and to suggest that somehow that's intended to leave

a residual right, whether as a matter of

interpretation or as a matter of the general law on

residual rights to appear in a foreign court, in the

name of the Company to challenge what the Court has

said they should do, we respectfully say is simply

not correct.

THE COURT:                 So hang on.  So

what you are saying, I think, Mr. Gibbon, is that the

order is manifestly clear that Paragraph 3 of the order

expressly in writing gives the JPLs specific powers

that they may exercise without further sanction of this

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

109

Court, including to seek recognition of their

appointment in various spaces, including the U.S., "for

the purpose of securing, realising or remitting assets

to the control of the JPLs and for the purposes of

obtaining access to and the control of the records of

the company."

So that's a power expressly given to the

JPLs in this order, right?

MR. GIBBON:                My Lord, yes.

THE COURT:                And then you

are saying that it simply can't be correct that this

would leave a residual right in the directors to come

in to oppose such an application overseas, correct?

MR. GIBBON:                Correct.  And

they are remediless because the answers I have already

submitted to Your Lordship is that they can come under

the residual powers to challenge the order in this

jurisdiction which is the correct place to challenge

it, as indeed has been recognised by Judge Glenn in the

United States.  So we submit that in saying in the

first instance, it's a matter for the BVI, you haven't

reached a final conclusion, but we respectfully say

that is the correct conclusion as a matter of BVI law.

These are matters that the BVI Court has dealt with in

its order.

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

110

THE COURT:                Let's walk his path, shall we, and see where he goes wrong with that. or is that the wrong approach?  You are saying there should be common sense approach, you look at what the terms of the order says, it just can't mean, particularly when you marry it up with the authorities, this simply can't mean that these directors, or director still have anything more than the classical residual power of challenging in this jurisdiction, that's all they've got and that's clearly what this order means.

And Mr. Gledhill's imaginative way through that is not the way to look at it from a common sense point of view.  I think that's basically the gist of what you are saying?

MR. GIBBON:                I respectfully do say that to do the walking back through it would be to get bogged down in the very point, which very seductively my friend has put you, which lead you to astray, or seek to, it's matter of submissions obviously, which seek to lead the Court down a primrose path of dalliance to a result, which plainly wasn't, we respectfully say, either the intention of the Attorney General when seeking the order as you've seen, nor could it be the intention of the judge when agreeing

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

111

with the prima facie case, prima facie reasons for appointing PLs in the way that Mr. Justice Mithani did.

My Lord, I am very conscious I have taken up a lot of Your Lordship's time and indeed Mr. Dennis' right to reply also.

THE COURT:                    Well, we clearly -- subject to any kind of your own commitments, which I know you might have in the evening in London and in the past they have included test matches at Lord's and theater performances, et cetera and evenings thereby ruined if you have to be here virtually, we are going to carry on after lunch and so we will make the time to deal with this.  I am sorry.  Okay.  So however much time we need to deal with it within reasons, we are going to commit to it and we will carry on after lunch.  We haven't finished with Mr. Gibbon yet, I don't think, so basically his last point is that we have to look at what the intention was of the judge when making the order.  And Mr. Gibbon, I think, is suggesting that the extremely nuanced points of Mr. Gledhill, the primrose path point, was certainly not in the intention of Justice Mithani when he made his order.  That's what you are saying.

MR. GIBBON:                    Yes.  And the one thing I should make clear, when I say intention,

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

112

the objectively to be construed intention from the wording of the order, seen against the background of the general law and the submissions made to the judge, the reasons to judge came to the conclusion he did.

THE COURT:                    Yes.  Let me just try this; what Mr. Gledhill was doing was he first, and I am not going down this path, okay, I am going to step off it actually.  I am just giving you a spoiler alert that I am going to be stepping off this path and I wanted to explore whether the stepping off of the path is a valid way of going about it.

What Mr. Gledhill is doing is he first of all asked me to bear in mind that there is a distinction between a liquidation order and a provisional order and that distinction is the fact that the, it is upon the making of a liquidation order that directors powers are divested from the directors.

In the case of a provisional liquidation order on the other hand, what he is saying there has not yet been a final liquidation order, so, in principle, the directors' powers have not been divested.  They are divested to the extent of the order that is made and there is, of course, the general principle recognised in the authorities on

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

113

different statutory bases, admittedly, that, to a large extent, provisional liquidations are to be treated for the purposes of residual powers like liquidation orders, but nonetheless, there is as yet no final liquidation order so in principle directors' powers have not been divested by the making of a provisional liquidation order.

So he then says what you have got to do is you have got to look at the terms of order and in this case, the terms of the order and indeed the BVI statute allows JPLs to act on behalf of the Company with a view to preserve, identifying and preserving assets and obviously obtain information about them, but other than that, other than that, the directors' powers remain in place. And because these directors' powers remain in place, ergo, he says, that means being allowed to act on behalf of the Company in, and instruct them basically to their company, to oppose recognition proceedings in the U.S. I think that's what he is saying or something to that effect. He'll correct me if I'm wrong about this in due course.

But my stepping off of this path is this: He's going somewhere where the order doesn't go. The order doesn't actually talk about who has the

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

114

right to oppose, who if anybody has the right to oppose an application for recognition elsewhere.

Now he would say, I think, that on, in his view, this means that the directors retain a power to oppose in the name of the Company.  You, I think, would say, is that actually the order does envisage what happens and it just gives one power and that one power is for the officeholders to seek the recognition.  So the difference is that you are saying that the Court order is already expressed in specific as to who can do this.  Mr. Gledhill is saying that actually there is a silence as to who can oppose and so the directors should be assumed to retain the power.  Is that the contrast that I have to be worried about here, the difference between the parties?

MR. GIBBON:            In a sense, yes, My Lord, if I can respectfully say that because Mr. Gledhill invites you to look down the opposite end of the telescope to the one that we respectfully say has been used by all the judges in the cases we referred to.  And the starting point, if it was simply put in the McPherson quote I showed to you is that the view was reached by Mr. Justice Chitty, that the effect of the appointment of provisional liquidator was just

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

115

as much to remove the powers of a director as the

making of a voluntary liquidation was.  And that's

important because at the very first step on my friend's

path to this analogy as cited, summarized by Your

Lordship, he says, well, anything that's not given to

the liquidators can't have been divested.

Now, we respectfully say this is per the

terms of the order, but the starting point is if you

are putting a company in provisional liquidation,

the reason it is a very powerful thing to do, when

you look through these powers, what they are allowed

to do under the Act, under the specific provision,

that's effectively everything that the Company does

and that's why the authorities speak with one voice

about the need for residual powers, if you like,

it's not summarized and it doesn't need to be

summarized in the penal notice, but there are

certain things left over which could only be done by

the Company personally; appealing the order,

challenging the order and anything directly to do

with those matters.  And as it was put by counsel in

the late nineteenth century case I showed you, you

can see the logic to that because the Company should

be entitled to appeal, every person who is allowed

to appeal.

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

116

But as you say, that first step on the path seems to be saying, well, you should construe narrowly, anything that isn't expressly taken, should be regarded as left for the directors, and then he says, by way of next step, then that must include the power to oppose.  But that's to send the order on its head, with great respect.  The order is precisely intended in the standard way and Your Lordship will, like me have seen many, many of these orders in the past, in the standard way to remove powers from directors.  What they are left with will only be certain, narrow things that will either be appealed or conceivably specific areas that the Court chose to leave with the directors.

So it's a very long way of saying a yes, I agree with respect with Your Lordship's contrast of our respective permissions, but then following into why I say in the light of general authorities, general experience at the bar and the bench, I respectfully submit that the submissions proposed to you by the Joint Provisional Liquidators are the correct ones.

THE COURT:                Okay.  We will rise now for lunch for an hour and, so we will see you again at 2:00 o'clock, BVI time.

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

117

Thank you very much, learned Counsel.

(Thereupon, this matter breaks for the
luncheon adjournment at 1:02 p.m.)

* * *

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

118

AFTERNOON SESSION

* * *

(Court reconvenes at 2:02 p.m.)

THE COURT:                    Yes.  So good
afternoon, learned Counsel, ladies and gentlemen.

Ms. Hodge, if you'd like to call the
matter again, please.

THE CLERK:                    BVIHCOM 001 to
0030 of 2026 - The Attorney General versus Bright Team
Global Limited, et al.

THE COURT:                    Yes.  So good
afternoon, learned Counsel.

By way of appearances I think I have
Mr. Andreas Gledhill, K.C., together with Mr. Toby
Brown on the Campbells Companies.

We have Mr. Peter Tyers Smith,
Mr. Merrick Watson, Mr. Timothy de Swardt for the Kobre
& Kim Companies.

We have Mr. Michael Gibbon, K.C.,
together with Mr. Jon Colclough and Mr. Oliver Clifton
for the JPLs.

And then we have Mr. Paul Dennis, K.C.,
together with Ms. Nadine Whyte Laing and Ms. Koya Ryan
for the Attorney General, I think.

Is that right?

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

119

MR. GIBBON: My Lord, I'm afraid to say that Mr. Colclough has been unable to attend this morning so his name will have to be stricken from the record, as they say in New York.

THE COURT: Okay. All right. Very good. Fine.

Okay. Now, you're still on your feet, Mr. Gibbon, and just so that we don't forget one of the stations that Mr. Gledhill alighted at, can we, please, have a look at Clause 9 of the JPL order. Let me take you to it.

Where are we? It would be Bundle 1.

Yes. It's on page, pdf page 122, page 117.

MR. GIBBON: My Lord, I have it.

THE COURT: Yes. Okay.

Now, I remember Mr. Gledhill taking me to it. It may be that I wasn't paying sufficient attention, but certainly the way he spoke the provisions of this clause or paragraph, he was referring to the affairs of the company and its assets within the jurisdiction of the Virgin Islands.

And the full paragraph, of course, reads:

"The powers set out in Paragraph 3 above

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

120

are to the exclusion of any power exercised or

purported to be exercised by any existing director of

the Company in so far as such power concerns the

affairs of the Company and its assets within the

jurisdiction of the Virgin Islands."

Now, first of all, the way he said it was

that it could be construed as this, what this paragraph

concerns, are the affairs of the Company within the

jurisdiction of the Virgin Islands as well as its

assets within the Virgin Islands.  And one of the

things that he could be suggesting, although I'm not

sure he did, is that, well, actually, what's happening

in the U.S. here does not concern the affairs of the

Company within the jurisdiction of the Virgin Islands,

but rather the affairs of the Company within the U.S.

Consequently, the directors' powers have not been

divested in respect of them.  They can continue to do

whatever they want in the U.S.

Maybe I'm wrong in reading too much into

it, but I'm possibly thinking that's what Mr. Gledhill

meant.

MR. GIBBON:            So, My Lord, a

few points in relation to that.

I think it can certainly be suggested

there is an infelicity to 9, in that it raises the

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

121

question that Your Lordship has asked.

Certainly, Mr. Gledhill, when making submissions before Your Lordship in April, I made a note of it here, what he said was, I won't take you to transcript, it's page 183, the way he said it was that:

"So the effect of Mr. Justice Mithani's order is to disentitle the directors in effect to do anything which interferes with the Liquidators' enjoyment of the powers that are conferred upon them."

So I certainly hadn't taken it prior to today that he was placing any reliance on 9 as suggesting, ah, well, the order only applies to matters in the BVI.

And, with respect, it would be an illogical reading, again in the context of the submissions I made earlier, about construing the order in its context.  And the context is that it was an order that was sought expressly against the background that the Attorney General was trying to remove the powers of the directors.

So to suggest that this somehow means that in relation to anything outside the BVI the directors can cause the Company to challenge what was done, we say the words here don't bear the weight that's necessary for that submission to succeed.

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

122

The starting point is, I won't use the Latin, but there's also the general proposition that the special -- well, the special is what you concentrate on rather than the general.

THE COURT:                    Okay.  Right.  Yes.

MR. GIBBON:                   I told you earlier in my start, but I'm not going to attempt it because I haven't got it at my fingertips.

THE COURT:                    Okay.  Yes.

MR. GIBBON:                   But in circumstances where it is very clear that without further permission they can undertake various steps, then we respectfully say that in accordance with section 171, if you give the powers to the provisional liquidator, then that's sufficient.

Now there may be a degree of simply wanting by reference to a provision of an earlier draft just to put something beyond doubt in Paragraph 9, but we respectfully say that the focus should be on what the Court has said the Joint Provisional Liquidators are entitled to do, and indeed should do, if they consider it appropriate for guarding the Company's assets and gathering information in relation to it.

And I don't want to repeat submissions

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

123

I've made this morning, but an interpretation which says that on an issue which is quintessentially an issue for the BVI Court somehow somebody can turn up in the name of the company, because he's allowed the claims by the BVI Court, to argue a point which really is a BVI point to argue, we say cannot make any sense.

THE COURT:                    Okay.

Thank you, Mr. Gibbon.  Anything else from you?

MR. GIBBON:                    I've reflected over the short adjournment.  Your Lordship has heard from me.  I don't propose to amplify any further, and I'd simply pass over to Mr. Dennis, subject to Your Lordship.

THE COURT:                    Okay.  Thank you very much, indeed.

So, Mr. Dennis.

(Pause.)

Hello, Mr. Dennis.  Are you speaking?

MR. DENNIS:                    My Lord, I was just making sure I was not muted.

THE COURT:                    You are not muted.

MR. DENNIS:                    Very well, My Lord.

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

124

My Lord, the applications before you raise issues squarely joined between the Joint Provisional Liquidators on the one hand and the Respondent Companies on the other.  And so technically the Attorney General, whom I represent, is not really a party to these applications.

However, My Lord, as we indicated in those skeleton submissions which were filed on behalf of the Attorney General, we believe that we should, to the extent that we are able, provide whatever assistance we can to Your Lordship with a view to giving you, Your Lordship, the benefit of anything which we may be able to provide by way of assistance in resolving the issue which is now squarely before you, having been placed before you by the Liquidators, the Joint Provisional Liquidators and the Companies.

Having provided those written submissions, My Lord, I do not propose to repeat submissions which we've already made in those written submissions.  Indeed, My Lord, nor do I propose to cover ground which has already been covered by my learned friend, Mr. Gibbon, K.C., for the Joint Provisional Liquidators, save to say, My Lord, that we are in complete agreement with the submissions which he has made on the issue which Your Lordship has before

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

125

you to determine.

I will confine myself, My Lord, in the circumstances to additional points beyond those which Your Lordship has already heard, which I believe are worth making to the extent that not having had the benefit of the Companies' submissions prior to providing our written submissions to Your Lordship, we would not have had the benefit of addressing those, and to the extent that they have hitherto not been addressed in the oral submissions which Your Lordship has already heard.

The first of these points which I would like to make has to do, My Lord, with submissions made by my learned friend, Mr. Gledhill, for the Campbells Companies, and I believe that these submissions were also adopted by Mr. Tyler (Sic) Smith.  And that, My Lord, has to do with a construction argument which was made by Mr. Gledhill.  And he took Your Lordship in particular to section 175(1) of the Insolvency Act dealing with the effect of liquidation, and section 171 which deals with the rights and powers of a provisional liquidator with reference to section 175.  And Your Lordship may turn that section up at page 7 of the Campbells Authorities Bundle.

THE COURT:                    Yes, I'm there.

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

126

MR. DENNIS:                He points to section 175 and, in particular, section 175(1)(b), which speaks to the fact that the directors and other officers of the Company remain in office but cease to have any powers, functions or duties other than those required or permitted under this part or authorised by the liquidator.

He then took Your Lordship to section 171 which says:

"Subject to subsection (2), a provisional liquidator has the rights and powers of a liquidator to the extent necessary to maintain the value of the assets owned or managed by the company or to carry out the functions for which he or she was appointed."

And his argument was, that because there is no similar provision to 175(b) in section 171 which deals with the rights and powers of provisional liquidator, the curtailment of the directors' powers as they appear in 175(b) do not apply to provisional liquidators.  That is his argument.  And so, the directors are free, as it were, to exercise their powers because those powers cannot be said to have been curtailed, having regard to the interplay between those two sets of provisions which I took Your Lordship to.

I believe my learned friend, Mr. Gibbon,

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

127

described these submissions as seductive.  I would rather describe them, My Lord, as specious.  They are clever.  It's an argument which is clever, but it's an argument which is false.

It is false, My Lord, because when section 171 properly construed speaks about provisional liquidators having the rights and powers of a liquidator, to the extent necessary to maintain the value of the assets, et cetera, it must be speaking about the powers of a liquidator as understood with reference to what the Act stipulates are the liquidators' powers.  And when one has regard to section 175, the fact that 175 subsection (1)(b) make it clear that once a liquidator is in place the directors cease to have any powers, functions or duties other than those required or permitted under the Act or authorised by the liquidator, then it must stand to reason that when section 171 speaks about powers of the liquidator, it's the powers of the liquidator which exists in circumstances where the directors are divested of all power save for those residuary matters which they can properly exercise powers in relation to.

This point, My Lord, is buttressed by subsection (2) of section 171 which says that the Court may limit the powers of a provisional liquidator in

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

such manner and at such times as it considers fit.

So, firstly, we have section 171 speaking about provisional liquidators having the powers of a liquidator, which has to be understood as they are expressed in 175(1), including 175(1)(b), and then that has to be viewed in the context of subsection (2) of 171, namely, what, if any, limits have the Court placed on the powers of the provisional liquidator which it has appointed.  And so in order to determine that, My Lord, one now has to look at the terms of the order appointing the provisional liquidators and what the Court says in that order about their power and authority.

That then takes us squarely, My Lord, to Paragraph 9 of the order which Your Lordship may turn up at page 117 of that same Campbells Authorities Bundle.  And that Paragraph 9 says:

"The powers set out in paragraph 3 above are to the exclusion of any power exercised or purported to be exercised by any existing director of the Company insofar as such power concerns the affairs of the Company and its assets within the jurisdiction of the Virgin Islands."

So that Paragraph 9 is underscoring the fact that the powers conferred upon the liquidator are

129

to the exclusion of any power exercised or purported to

be exercised by any director insofar as such powers

concerns the affairs of the Company and its assets

within the Virgin Islands.

Now, my learned friend, Mr. Gledhill,

suggested what I can only characterise, My Lord, as a

most abhorrent interpretation of section 9.

I'm sorry, of Paragraph 9.

Paragraph does not, as he suggests, mean

that the directors of the company can exercise powers

which would involve they being able to procure the

Company's opposition to the recognition of the

provisional liquidators.

He submits before Your Lordship, and this

is how I interpreted his submissions, that because what

is happening in the U.S. proceedings concerns assets

and affairs of the Company outside the Virgin Islands,

that gives the directors the residuary power to

interfere to oppose those proceedings because these

relate to assets and affairs of the Company outside the

jurisdiction.  But that is simply not what section 9

means.

When section 9 uses the language

describing assets of the Company, "affairs and assets

of the Company within the jurisdiction of the Virgin

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

130

Islands", that language, My Lord, is simply out of a recognition of the fact that orders of the BVI Court do not, without more, have extra territorial reach, and so its orders can obviously have, and only have, effect within the jurisdiction of the Virgin Islands.  That is all that that language in section, in Paragraph 9 of the order means.  And that is precisely why, My Lord, when liquidators or provisional liquidators are appointed in the BVI, in order for them to be able to exercise their full powers, and in order for them to benefit from the provision at section 175(1)(b), which ousts the powers of the directors of the Company, they have to seek the recognition of the relevant foreign jurisdiction, and then armed with the recognition of the foreign jurisdiction they can then fully exercise their powers, and they can then fully avail themselves of the provision which says that the powers of the directors are ousted once they have been appointed in the BVI, and insofar as the foreign jurisdiction is concerned, once they have been recognised in that foreign jurisdiction.

That, My Lord, we submit, is how Paragraph 9 of the order are properly to be understood, and it cannot, as my learned friend, Mr. Gledhill, submits, it cannot possibly mean that because the

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

131

proceedings in the U.S. relates to the affairs of the Company in that jurisdiction, and because it also is dealing with assets outside the jurisdiction, then in those circumstances the provision which ousted directors' powers cannot apply.

That is simply, we submit, My Lord, not a sustainable argument.

Taking the matter of residuary powers further, My Lord, it was further submitted on behalf of the, both sets of Companies, and there is no dispute about this, really, that residuary powers in the directors have been recognised by the Courts and exercised by directors to cause the companies formally within the control of directors to do a number of things, which include to defend substantive winding up proceedings, to vary or discharge any order appointing joint provisional liquidators, to apply for interim relief and to file an appeal against final winding up orders.

We join our issue with that proposition as a matter of law.

They submit further that in all the scenarios there is no expectation or likelihood that the JPLs would cause the Company to take legal actions in question and relying on the Re Union case they

132

submit doing so would be adverse to their own interests and authority, and it will be inappropriate for them to give instructions on behalf of the Companies on such matters.

However, My Lord, it is important to bear in mind that that is not the scenario which is before Your Lordship. What Your Lordship has before you, arising out of the U.S. proceedings, is not a situation involving the defence of the substantive winding up proceedings or varying or discharging any order appointing the JPLs, or applying for interim relief in the sense contemplated here of filing any appeal against any filing of order.

This is a different case. This is simply a case in which what is before the U.S. Court doesn't fall in any of those categories. It is simply an application by the BVI appointed joint provisional liquidators for recognition in that jurisdiction. And the Companies have not been able to point to a single authority which would support the proposition that in the circumstances of this case where what is before the foreign Court is simply an application for recognition, allowing them thereby to be able to take steps to protect the assets which is a part of its mandate, that in a situation such as this, the directors have the

133

residual power to challenge or oppose that recognition.

As a matter of fact, My Lord, if that were the case, it would make absolute nonsense of the very specific powers which have been conferred upon the joint provisional liquidators.  Because if the directors had the power and authority to, and were to be allowed to oppose the recognition proceedings in the way contended for by the Respondent Companies, that would undermine the very order which this Court has made for the Joint Provisional Liquidators to apply for recognition to allow them to do precisely what the joint provisional liquidation order and the powers conferred upon the officeholders contemplate, which is to identify, protect and preserve the assets pending the substantive hearing of the application for liquidators.

Recognition abroad of the Joint Provisional Liquidators, we say, My Lord, is an absolutely necessary corollary of the appointment of the Joint Provisional Liquidators in this jurisdiction. And so to challenge it in a foreign Court or to purport to challenge it in the foreign Court is tantamount to an attack upon, or a challenge to, the very appointment of these officeholders, the very appointment itself.

That, My Lord, is untenable because any

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

134

challenge to the appointment of the Provisional

Liquidators, whatever guise it takes, is

quintessentially a matter, not for some foreign Court,

but is quintessentially a matter for the BVI Court and,

in particular, My Lord, either by way of an appeal of

the BVI order, which has hitherto not happened in this

case, because indeed, the continuation of the

provisional liquidation was never opposed by any of the

Companies, or in the absence of such appeal by some

other approach to the BVI Court that made the order in

the first place for some kind of variation of the

order.  That has hitherto not been done.  And because

this is quintessentially a matter for the BVI Court,

that is precisely why, My Lord, the learned judge in

the recognition proceedings in the U.S., astutely

recognised and proceeded on the basis that the question

of whether or not the directors could properly oppose

the recognition proceedings was, again,

quintessentially a matter not for him but for the BVI

Court, and that is why he said I'm not going to get

into this; go back to the BVI and have the BVI Court

determine that.

          And so, My Lord, it cannot in those

circumstances be sustained that the directors are now

in a position where they can take the steps which they

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

135

are purporting to take in the foreign proceedings in the U.S.

Further, My Lord, such an outcome would be wholly inconsistent with the appointment of the Joint Provisional Liquidators in the BVI and with the powers conferred on the Joint Provisional Liquidators, and for the Court to do what the Companies are submitting the Court should do, which is to allow them to continue to mount this opposition, would be tantamount to the proverbial cow, as my grandmother would describe it, who stands there and allows you to milk it, and then you having procured a pail of milk from that cow, that cow then kicks the pail of milk over.

I'm not suggesting that this Court is a cow, My Lord, but I'm sure Your Lordship gets the analogy.

That is what the Companies are, in essence, asking this Court to do.  That, My Lord, we say is entirely untenable.

Your Lordship raised an issue in relation to certain submissions made by my learned friend, Mr. Gledhill, where he adverted to certain federal rules, and I believe it was being suggested that those rules themselves contemplated allowing the Companies to

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

136

oppose those proceedings.

My learned friend, Mr. Gibbon, did take Your Lordship to extracts from the relevant rules of Court in the U.S. Court, but those rules did not speak to this issue.  And so we do not know the full ambit of what that contemplates, but the very fact that the judge in New York has said that this is a matter for the BVI Court to determine can only be interpreted and taken as meaning that whatever the rules are that would ordinarily be applicable in New York, whether or not at the end of the day the Company is allowed to oppose those recognition proceedings, will need to be determined on the basis of BVI law after a determination by the BVI Court.

So, it is no surprise at all that the New York judge has sent the whole shebang on that issue back to the BVI.

So, My Lord, however clever the argument of the Companies were this morning, whatever calisthenics of construction was sought to be applied in order to arrive at the result which they seek, we say, My Lord, that the provisions of the Insolvency Act, properly construed, the provisions of Justice Mithani's order, properly construed, neither of those provisions in the Act nor the order bear the

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

26-10769-mg   Doc 77-2   Filed 06/05/26   Entered 06/05/26 16:53:44   Exhibit 2 -
Transcript of the Remote Deposition of Riz Mokal    Pg 361 of 991

137

interpretation which they are contending for.  And there is nothing in the point, or in the points which have been advanced to Your Lordship to suggest that somehow residual powers continue to be enjoyed by the directors which would allow them, in effect, to obstruct and frustrate the clear purpose and intendment of the appointment of the Provisional Liquidators and of the specific powers conferred upon them to seek recognition in relevant foreign jurisdictions.

Those in a nutshell, My Lord, are the points which I wish to commend for Your Lordship's consideration, and unless Your Lordship has any specific questions for me, I'd be content to leave matters there, My Lord.

THE COURT:                Yes.  Thank you, Mr. Dennis.

Now I suppose we need to take the reverse order and go back to Mr. Tyers Smith, I think, before we go back to Blackstone Chambers Meeting Room.

MR. TYERS SMITH:        My Lord, I'm very happy to take it that way.

All I will say is, obviously as you heard from my opening submissions, I sought not to repeat those opening submissions that dealt with the forensic analysis on construction and residual powers that

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

138

Mr. Gledhill had made.  So insofar as he makes his
reply to deal with those issues as they've been
addressed by both my learned friend, Mr. Gibbon, and,
Mr. Dennis, I will preemptively say that I will adopt
those as well for the sake of both brevity and
efficiency.

My Lord, there are, therefore, two points
that I wanted to address in reply.  The first, again,
is context, and context was deployed by Mr. Gibbon in
two ways.  First, he used it to explain to My Lord why
Chapter 15 had been pursued in the way that it have by
the Provisional Liquidators.  And the second part of
context, I think the way he put it was that it was
irrelevant to the issue of construction based on the
Sans Souci case.

In particular, I think he submitted to
you that the real question is what was the issue that
was before your brother judge, Mr. Justice Mithani.
And that is the guiding principle to determine what the
order means.

So I want to just deal with those points,
and then, secondly, I will just spend a bit of time on
displacement.

So, My Lord, first of all on context,
Mr. Gibbon showed you Paragraph 50 of Mr. Drury's

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

139

affidavit, and that is in bundle, the Hearing Bundle, Volume 1 at page 42.  And can I ask My Lord to please turn that up.

THE COURT:                Yes.

MR. TYERS SMITH:          Thank you.

THE COURT:                Yes.

MR. TYERS SMITH:          So, My Lord, Mr. Gibbon said that Paragraph 50, as you can see, it's got sort of various enumerated components to why the JPLs proceeded in the U.S.  You can see from the first one, little Roman (i), that it's said that there's been an absence of meaningful cooperation from the directors of the Companies.

So from that I take it that we are included in that criticism.

My Lord, can I just ask you to flick back, please, in this statement and find Paragraph 26.

THE COURT:                Yes.

MR. TYERS SMITH:          So, My Lord, insofar as Amber Hill and Lateral Bridge is concerned, we've actually received very little correspondence.  So you can see that Mr. Drury speaks of the letters, 36 letters that were sent out back in February.  And I think he's exhibited an example of one of those letters, which I don't need to take to you, but it is

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

140

in fairly standard form, you know, enclosing the order
and setting out what their responsibilities are.

But there don't appear to be anything
else in Mr. Drury's affidavit that really focuses upon
Amber Hill or their incumbent directors as to why they
haven't cooperated.  So I would simply invite a degree
of caution when accepting that there has been
meaningful absence of cooperation on the part of my
clients.

And the way that that then unpacks is if
one transitions back to Paragraph 50 of Mr. Drury's
affidavit, it goes on to Roman numeral (ii).

Does My Lord see that, "the obstruction
encountered from Campbells"?

THE COURT:                Yes.

MR. TYERS SMITH:          And so on.

So (ii), (iii) and -- well, (ii) and
(iii).  (iii) is rather long.

My Lord, those matters simply don't
concern us.  I would accept that Roman numeral (iv) it
is said, I think by the Provisional Liquidators, that
they want to seek discovery from, using their Chapter
15 powers, from a financial institution that My Lord
might recall was referred to in the complaint, the
Civil Asset Forfeiture Complaint, where there was some

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

141

mention of a bank account held by, I think it was Amber
Hill.

So we accept that is something that they
want to do, but the rest of the points made in
Paragraph 50 simply don't apply to us as a point of
context, as Mr. Gibbon put it.

My Lord, moving then on to context as it
relates to the proper interpretation of the order, can
I ask you to have a look at the Sans Souci case which
is in our bundle of authorities.  It is under Tab 5 at
page 41.

THE COURT:              Yes.

MR. TYERS SMITH:      My Lord, so
this is the judgment of Lord Sumption particularly at
Paragraph 13.  I think you were taken to this
paragraph, so I don't want to repeat it, but this just
enunciates the approach to the proper interpretation of
an order, and is to be treated like any other legal
instrument.  And I think you were shown the part of
this extract that says:

"The reasons for making the order which
are given by the Court in its judgment are an overt and
authoritative statement of the circumstances which it
regarded as relevant," and therefore they're
admissible.

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

142

But then in the final sentence it says this:

"In particular, the interpretation of an order may be critically affected by knowing what the Court considered to be the issue which its order was supposed to resolve."

And that then led to my learned friend's submissions that really what this order was concerned with was director divestment.

Now, My Lord, that then takes us to a point which has been pervasive, and I feel somewhat sheepish and hesitant in repeating it again, that we are not, or I should say, my clients are not part of the Prince Group and they are not owned and controlled by Mr. Chen.  And to make that good so that it's pellucid, can I ask My Lord, please, to turn up Hearing Bundle, Volume 2 and have a look at page 1498.

(Pause.)

My Lord, have that?

THE COURT:                Yes.

MR. TYERS SMITH:       So this is transcript from Day 1, 16th, and rounding up opening submissions from Sir James Eadie.  And if one looks at page 1498, and takes it from line 23 -- actually if one looks at line 12, one can see there that Sir James is

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

143

making clear that the Campbells Companies are said to

have been accepted as beneficially owned by Chen.

And then moving down to line 23:

"The K&K people are slightly different,

which is no doubt why they have been split off and are

separately represented, but they say, well, we are not

designated, we are not sanctioned, what's it got to do

with us, we are not part of the Prince Group, they

say."

And the answer to that is, "well, you may

not be part of the Prince Group..."

And I accept that that's somewhat hedged,

but again in the light of the fact that there is not a

jot of evidence that we are part of the Prince Group

and certainly we have not been sanctioned by the Prince

Group as part of being part of the Prince Group, that

is, we would say, plainly the case.

They then go on to say, well, yes, but

you were directly involved in the activities, and then

that brings into play what was set out in the Civil

Asset Forfeiture Complaint, to which we are not party

either.

But then the interesting point, My Lord,

is this at line 8 on page 1499.  Sir James then went on

and said:

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

144

"And moreover, as we have seen from the Attorney's Second Affidavit, there is evidence ... that appears directly to link you with the actual person."

My Lord might recall that this was the Zhou connection that was explored at trial.  But critically, if it is Mr. Gibbon's case that, well, it's important to understand the issue that was before Mr. Justice Mithani, it can't possibly have been right that learned Attorney General's Second Affidavit form part of that analysis.  And the reason for that is because it was signed on the 8th of April, many months after the hearing on, the 1st of January.

So there is nothing that can be said that when the Attorney General moved Mr. Justice Mithani for the ex parte order that it was to be obtained to deal with the issue of my directors of the, sorry, the directors of my clients being associated with Mr. Chen or being sanctioned.  The sole basis on which the application was ultimately moved was that we had been referenced in the Civil Asset Forfeiture Complaint, not as Mr. Gibbon said, as a reason to divest directors' powers.

THE COURT:                Are you saying that somehow or other your clients might have actually got a claim to a different treatment from this Court

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

145

than the Campbells Companies?

MR. TYERS SMITH:        Well, I mean, it is a real point of divergence because, My Lord, if I can respectfully remind you that, so much emphasis is placed on two matters.  First is the sanctions regime. And if you can remember from the 68 or 69 pages of the Attorney General's pleadings, almost all of them were dedicated to those two issues, and none of them concern us, and that requires a process of distillation to understand, well, what it is the issues are against us at all.  And the only issues that emerged at trial were what was said in the Civil Asset Forfeiture Complaint, and, secondly, that it had been belatedly discovered that there was some link to another company called Maple Bliss which was not sanctioned and is also not controlled, owned or controlled by Mr. Chen.

So that's really where it comes out, and if we need to have a look at how the case was put before Mr. Justice Mithani, then we can do that, but it would require just having a quick look at the transcript.

THE COURT:             No.  I mean, are you trying to tell me that Justice Mithani basically intended to apply a different regime or a different type of order to your Companies than he did

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

146

to the Campbells Companies?  Are you trying to tell me that?

MR. TYERS SMITH:          No, no.  Not at all, My Lord.  What I'm saying is --

THE COURT:                I mean, whether he's lumped them all together, rightly or wrongly, I mean, isn't there authority that I was taken to earlier today to say that when you interpret an order we're not looking at whether an order should have been made or not, but we're looking at interpretation, mainly the context, historical context in which it was made.

What I'm saying is that one order seems to have been applied to both the K&K Companies and the Campbells Companies.

MR. TYERS SMITH:        My Lord, no, because what the San Souci case says is that the interpretation of the order is critically affected by knowing what the Court considered to be the issue.  And I can show you, just to round off the point, if one was to just briefly look at what was said to Mr. Justice Mithani on the day.  It's in Volume 2 of the Hearing Bundle at page 711.

THE COURT:                Yes.  711, okay.

MR. TYERS SMITH:        Yes.

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

147

THE COURT:                Okay.

MR. TYERS SMITH:          So these were submissions made at the ex parte hearing starting at line 7.

"The targets, My Lord, include all of the Companies which are the subject of the application before Your Lordship..."

The references are made to target.  It's the target of sanctions in the international effort.  But then it goes on to say:

"...with the exception of Amber Hill and Lateral Bridge Limited.  Even though they are not targeted in the same way as the others..., the very important link to them ... in the context of the concerns and the allegations raised in these proceedings, as I've just indicated, that the cryptocurrency, which is the subject of forfeiture proceedings..."

So it's not -- it wasn't put on the basis of, well, this company is part of the Prince Group and then the common ownership.  It's because of what was said in the Civil Asset Forfeiture Proceedings.  That's the point that I want to make and take out from what the issue was before Mr. Justice Mithani.

THE COURT:                Are you saying

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

148

-- I need to get what you're trying to say here.  Are you saying that whatever the case might be in respect of the Campbells Companies, then in respect of Amber Hill and Lateral Bridge, then you have this, you don't have this intention to divest directors of their powers in the same way as it might be for the Campbells Companies?

MR. TYERS SMITH:         No, no, no. That would be taking it too far.  I'm just simply saying, the premise on which it was said that provisional liquidators should be appointed was by reference to the evidence that was put before the judge on the day, which was they're relying upon the pleading, the pleaded case in the U.S., forfeiture proceedings.

I don't make the point of distinction because the point of context was put on the basis that this was all engineered towards directing divestment from those connected with the Prince Group, and we just say that is not, that can't possibly be true of Amber Hill and Lateral Bridge.

THE COURT:         Where does that take you next then?  I mean, in the vernacular, that phrase is, so what.  Where does it take your argument?

Because the argument is, Mr. Gledhill was

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

149

saying, Mr. Gledhill was saying, no, no, no, no, no, no, no; you've got all these directors who have got powers, and residual powers, and the residual powers are quite broad because when you construe the order, then certainly in relation to things that were done overseas in relation to the Companies' affairs, they retain the powers for that.  They retain the powers because there hasn't been a full-blown liquidation yet, and this is only provisional liquidation.  And so there's all sorts of ways in which they retain their powers.  And the context is basically you have to ignore all that, you just have to look at the wording of the order.  And so he gets to the end of the road, as Mr. Gibbon put it, this sort of primrose walk, I think, of getting to this idea that the directors retain very broad residual powers.  Mr. Gibbon says that's nonsense when you look at the context.  The whole point is being to strip these directors of their powers in order to (a) find the assets and preserve them on these Companies in circumstances where the Companies to which this order applies seemed to have had strong links to, and indeed many of them being run by Mr. Chen who apparently is this real awful man who has done all sorts of dreadful things in many jurisdictions.

150

MR. TYERS SMITH:          Yes.

My Lord, I don't disagree with that save to say that the point of distinction is that our Companies are not connected to Mr. Chen in the same way.  I mean, if that doesn't take the matter further forward, then I'll move on, but it is, we would say, relevant to the question of whether the issue was solely to divest or whether it was something else, and for us it was down to the reference in the complaint.

THE COURT:               Okay.

MR. TYERS SMITH:      My Lord, I'll just spend then a few moments on displacement.  I realise it's getting somewhat late.

My Lord, it was said to you that the judge made practice, or the judge made rule which is to the effect that all director powers become automatically displaced upon the commencement of a joint, of a provisional liquidation applies in the BVI, and I simply say that can't be correct.  And the reason for that is the BVI is different, and the legislature have considered it appropriate to enact a specific provision that deals with the circumstances in which directors' powers are suspended.

Now I think what Mr. Dennis said is, well, section 175(1)(b) is to be regarded as appoint

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

provisional liquidations, and I simply say that is wholly incorrect.  It can't possibly be right for the reasons I alluded to in my opening submissions, that one has to track that through to the commencement of the liquidation.  And the short point there, My Lord, is, well, there may never be a full liquidation, because as My Lord knows, the question of whether liquidators should be appointed on a final basis is now before the Court.

And that's not an offensive interpretation of the position in the BVI because I would say it is consistent with the limited purpose, the conservatory function of provisional liquidators, and I took you to the case of Carapark earlier, and particularly the part of the case where it says the provisional liquidators ought to do the least, not the most harm.

So I say that that is inconsistent with Mr. Gibbon's submission which he said, well, the powers are there if and when you need them.

My Lord, the final point that I want to make concerns the meaning of Paragraph 9 of the order.

Can I just ask My Lord to take up the Authorities Bundle and look at section 171(2) again, please.

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

152

THE COURT:                Yes.

MR. TYERS SMITH:          That's under Tab 13.

THE COURT:                Yes.

MR. TYERS SMITH:          So, My Lord, it's a provision you've now become very familiar with, of course.  Section 171(1) deals with the necessary restriction on the exercise of those powers, and I don't want to trouble you again with that.  But section 171(2):

"The Court may limit the powers of the provisional liquidator in such manner and in such time as it considers fit."

Now the way that that works in respect to Paragraph 9, I would submit, is not that it is, simply be treated as an infelicitous provision that's made its way into the order.  If a general rule that this application of director powers applies, then Paragraph 9 modifies it.  And that, of course, is problematic because it begs the question of why is Paragraph 9 then there at all.  I would say that the answer to that, My Lord, is because the qualification in Paragraph 9 of the order is because it is a statutory restriction that has been imposed through 171(2) by the Court.  And it makes it clear that the difference between the powers

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

153

that remain with the directors, and the powers that do

not, are those confined to Paragraph 3 of the

appointment order, and My Lord has seen that those

concerned powers that are to be dealt with

territorially within the BVI insofar as they relate to

the assets and affairs of these Companies.

And, My Lord, just to make good on that

final point, it's that it is part of the application in

Chapter 15, supported by an expert declaration of Mr.

Chissick at Paragraph 68, which is at page 1199.  I

don't ask you to turn it up, but Paragraph 68

specifically talks about the reason that they are in

the United States is because they want to have their

powers recognised insofar as they relate to the assets

and affairs of the Companies in the United States.

My Lord, and for those reasons Paragraph

9 is a territorial restriction on the fetter placed on

the directors' powers.

My Lord, just in passing, I think you've

heard a lot that all of this is designed somehow to

interfere with the exercise of the JPL's proper powers,

but it is accepted in Mr. Drury's evidence,

specifically that he does not oppose, or he does not

say that no one can object to their appointment in the

United States.  And, My Lord, in those circumstances,

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

154

what does it matter?  Because no one is saying anything other than, for the purposes of this application, someone has to be able to appear in the name of the Company to say this relief should not be granted and the Court needs to have the full picture.

My Lord, those are my submissions in reply.  I'll hand over to Mr. Gledhill, unless you have any questions.

THE COURT:                    Yes.  Thank you very much, Mr. Tyers Smith.

So, Mr. Gledhill.

MR. GLEDHILL:                 My Lord, I'm not going to be too long in reply.  It's just that Your Lordship has had lunch, and I take the view that nobody should be subjected to a strenuous exercise of callisthenics on a full stomach.  So I'm going to be relatively succinct in the comments that I make in reply.

If I can start by inviting Your Lordship to take out Mr. Justice Mithani's order again, that, of course, is in Bundle 1, Tab 12.  And if you turn on to page 117, you have Paragraph 9.

THE COURT:                    Yes.

MR. GLEDHILL:                 There is a striking feature of my learned friend, Mr. Gibbon's

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

155

submissions that he didn't address Paragraph 9 at all until Your Lordship raised it with him shortly before the lunch break.

For reasons Your Lordship has already heard, this is, we say, the critical provision, and the reason this is the critical provision, is that this is the provision which the judge quite expressly addresses the question of what residual powers the directors do and do not have after the joint provisional liquidators have been appointed.

The submission is made by my learned friend, Mr. Gibbon, well, the broad contemplation of the judge, the broad intention of the judge on the 9th of January was to sweep away Mr. Chen because he was a wrongdoer and sweep him away from any form of control over the Company.

That's not what the order says.  What the order says is it affects a limited dispossession of the directors' powers in accordance with the provisions of Paragraph 9.

I've made the point to Your Lordship that there are two buckets of liquidator powers, those provided for in Paragraph 2.  Those require sanction. Those provided for in Paragraph 3.  Those don't require sanction.  And it is only and specifically the

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

156

provisions of Paragraph 3 when those powers are exercisable that the powers of the directors abate.

And, as Your Lordship has also seen, Mr. Tyers Smith just addressed Your Lordship on this point already in the course of his reply submissions. It also contains territorial limitation, that that dispossession of directors' powers does not apply to the extent that the liquidators are acting, the Joint Provisional Liquidators are exercising a section 3 power which concerns the affairs of the Company and its assets, other than where it is -- forgive me. It does not apply unless the Joint Provisional Liquidators are exercising a power which concerns the affairs of the Company and its assets within the jurisdiction of the Virgin Islands. And the short point is Mr. Tyers Smith has just made by reference to Mr. Chissick's witness statement is that an application for recognition overseas in the United States, par excellence, is an example of a power that is not being exercised for the purposes of the jurisdiction of the British Virgin Islands. It's being exercised quite specifically in relation to the assets and the affairs of the Company in the United States.

So that really is the starting point and, we respectfully suggest, the ending point for Your

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

157

Lordship's analysis.  It turns upon Paragraph 9.  And when you go back to Paragraph 3 which sets the parameters of the powers which the JPLs have without sanction, and the corresponding dispossession of the directors' powers, again, looking at bundle page 115, you see (c) and (d).  (c) is not about directors' powers at all.  (c) is an order pursuant to section 472 of the Act.  It's an order that the Joint Provisional Liquidators are enabled to go forth to the United States and seek recognition.  That's not something the directors could do.  They're not the officeholders.  There's nothing that the directors can do to interfere with the exercise of that power.  The Liquidators have that power, but what that section, section, subsection (c) does not tell Your Lordship is, what the extent to which the directors of the Company can continue to use the name of the Company for the purposes of pursuing proceedings.  The answer to that question is found and found only in subsection (3)(d).

I've made the submission to Your Lordship, if you ask yourself the question does opposing the Chapter 15 application in the United States within the meaning of 3 sub (d), "is it necessary to protect the assets and information of the Company", and I've made the submission to Your Lordship

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

158

that it cannot possibly be, and no submissions to the contrary was advanced by my learned friends, Mr. Gibbon, or by Mr. Dennis.

And if that's correct, the simple point is that the Liquidators do not have the power under (3) sub (d) to litigate against themselves in the United States funds, unsurprisingly, and the corollary of that, and the plain language of section 9, Paragraph 9 of this order, is that the directors do.

Now, my learned friend, Mr. Gibbon's answer to that point as it emerged in the course of submissions and particularly in the discussion with Your Lordship just before lunch, was that a further unwritten or not expressed on the face of this order narrowing of the powers of the directors was implicit in the very fact of the making of a provisional liquidation order, and there were two principal submissions that my learned friend advanced in support of that. The first was to make the point that some of the English authorities, and this is mirrored in some of the Commonwealth cases as well, have referred to the board being functus upon the appointment of a provisional liquidator. And the second point was to say that the interpretation for which we contend cannot possibly have been intended by Mr. Justice Mithani,

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

159

given that he thought that Mr. Chen was an egregious wrongdoer.

Now taking those points in turn, and starting with the first, we don't, in fact, accept that in England the position is as clearcut as my learned friend suggested that upon the appointment of a provisional liquidator the board is functus.  And the simple reason for that is the reason that we gave in our skeleton argument, and this point is true both of the BVI and of England, that there is no such thing as a standard form provisional liquidation order.  The powers that the provisional liquidator has are the powers which he asks for and he gets when he makes the appointment.  Those powers may or may not entail a corresponding diminution in the powers available to the directors.  It entirely depends upon the functions with which the provisional liquidator is clothe.

So even as a matter of English law, I do not accept the proposition that the appointment of a provisional liquidator in England entails the consequence that the powers of the board are from by virtue of that fact alone dispossessed.

So far as the BVI is concerned, I've made the submission to Your Lordship that the position in this jurisdiction is, in any event, different, because

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

160

the 2003 Act contains in section 175, subsection (1)(b), which Your Lordship has gone to now on a number of occasions, it contains the provision that the English Insolvency Code doesn't.  It tells the Court, firstly, that the directors remain in office even after liquidation.  It tells the Court, secondly, that although they remain in office they lose their powers save to a reserved exception which Your Lordship has seen a number of times.  We don't need to go back to it.  But there's no corresponding provision to that in the English Insolvency Act.

And I made the point, Your Lordship, that the corollary of that inevitably is that that loss of powers does not take effect upon the appointment of provisional liquidators.  And my learned friend, Mr. Dennis, in the course of his submissions during the earlier part of this afternoon attempted to suggest to Your Lordship that it must do, as a matter of implication, because the Court is enabled effectively to give the Joint Provisional Liquidators the Schedule 2 powers if it chooses to go down that route.  But that, with great respect to my learned friend, that is an impossible submission because that is, in effect, flatly contradicting the express provision of the Act. The Act says in terms that the diversity occurs and

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

161

only occurs on the appointment of a liquidator.

And, secondly, that submission fails to take account of the fact that even under the terms of section 171 there is no such thing as a standard form order.  Subsection (2) provides that the Court may or may not grant the provisional liquidator the full slate of Schedule 2 powers.

So the position that Your Lordship is left with is that there is, as a clear matter of BVI law, no anchor for the proposition that the board is functus upon appointment of provisional liquidators. And the fundamental point, in any event, is that it would turn on the terms of the order appointing them. And as Your Lordship has seen, whatever else Mr. Justice Mithani was or wasn't asked to do, he was asked to make an order which drew a bright-line distinction between the powers which the directors lost and the powers which they didn't lose, and the simple fact of this application is that both the Joint Provisional Liquidators and the Attorney General are now wishing that the line had been drawn in a different place.  But as you've seen from the authorities in relation to the construction of Court orders the principles in relation to construction are broadly the same.  They are to be construed as any other legal document, and there is no

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

162

basis for going behind clear and express provisions of

paragraph 9, read with paragraph 3, and saying that

although paragraph 9 brings about only a limited

removal of the powers of the directors, somehow the

order in some unexplained way must have brought about a

far more radical wholesale removal of directors'

powers.  Because to make the obvious point, if it had

done, paragraph 9 would simply have been redundant.

There's no need to say that the powers of directors a,

b and c have been removed, if in fact by some other

process that hasn't yet been properly explained, powers

A through Z would have been removed in any event.

So as a matter of construction, it's

simply unsustainable.

And to the extent my learned friend

Mr. Gibbon's subsidiary point was well, this must have

been what Mr. Justice Mithani contemplated when he made

the order on the 9th of January, I start by making the

point Your Lordship has no reasoned judgment or

effectively a few lines of transcript.  I intend no

criticism and certainly no disrespect to Mr. Justice

Mithani when I say this.  It's a busy list, it was an

urgent matter, or said to be an urgent matter.  But

Your Lordship has no reasoned judgment in relation to

the making of the order.  There was no point at which

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

163

Mr. Justice Mithani was taken paragraph by paragraph
through the provisions of the order, saying are you
content to make this, or are you content to make this
order.  He was effectively presented with it as a block
and made the order without any amendment.

And so the suggestion that -- the
question before Your Lordship is, is not did
Mr. Justice Mithani think Mr. Chen was a bad man or
not.  Nobody is in much doubt about the answer to that
question.  The question before Your Lordship is, did
Mr. Justice Mithani have in contemplation a specific
issue in relation to the removal powers, and more
specifically than that, did he have it in contemplation
that the directors should not be able to exercise the
right which the US Bankruptcy rules expressly confer
upon the Company, of causing the Company to go and
resist the recognition application which he
contemplated.  And when the question is framed in those
terms the answer is, there is nothing.  Your Lordship
has absolutely no means of what Mr. Justice Mithani
thought about that, because in all likelihood the
reality is that the point never occurred to him or
anybody else in the context of that application back on
the 9th of January.

So with respect, we suggest to Your
COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

164

Lordship that it is simply impossible to say that there is any proper construction or basis for resisting the submissions which we've advanced to Your Lordship, and they all point, and point only in one direction.

And I did just want to make one other point, if I may.  Just if Your Lordship still has that paragraph 3 at Bundle page 115 open.

THE COURT:                Yes.

MR. GLEDHILL:                The suggestion was made by Mr. Gibbon, and this echoes a point which is in fact made by Mr. Drury in his witness statement. The suggestion is made by Mr. Gibbon that if we are right about this, when you look at paragraph 3(a) you see that the Liquidators, the Joint Provisional Liquidators have the power to gain entry to the Company's premises and take possession of and preserve the books and records of the Company.

And the suggestion was made by Mr. Gibbon well, is the submission against me by Mr. Gledhill, that the Companies can be caused by the directors to oppose any attempt by the Joint Provisional Liquidators to exercise that power.  That's not the submission that I make.  The point that I am making is not that the Liquidators don't have the power in subsection 3(a) or (b), or in fact in any other place.  The question is

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

165

whether the power in section 3(2) is exercisable in circumstances where we are seeking to exercise it by opposing recognition in the United States.  And as I've indicated, the narrow confine for that power is the one that you see in the third and fourth lines which is that under paragraph 3, the Liquidators only have the power to litigate in the Company's name insofar as necessary to protect the assets and information of the Company.

So my point is not the Company's name can be used by the directors willy-nilly to oppose anything that the Joint Provisional Liquidators want to do under paragraph 3.  It is more simply that they do not have the subsection 3(d) power.

My Lord, those were the submissions that I was going to make.  I was just going to close, if I may, by repeating the point with which I opened.

A suggestion is made by Mr. Drury in his witness statement that well, the Joint Provisional Liquidators would be perfectly content for all of these points to be run by the shareholders or by the directors.  That is neither here nor there.  The Liquidators either have the powers they have as a matter of BVI law, or they don't.  But the more fundamental point to reiterate where I began, is that

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

166

the suggestion has already been made in the United

States proceedings, that those instructing me are

culpable of contempt of court for having done what they

have done.  And whatever else may be unclear to Your

Lordship, I suggest that it is manifestly clear that

there is a seriously difficult legal issue here and the

suggestion that we should effectively be penalized,

because on Mr. Gibbon's account we could have applied

in the BVI to stop them.  Having not done that, we were

in contempt of court by applying to oppose in the

United States, it's one that Your Lordship should, with

the very greatest of respect, strive very hard to

avoid.

Unless I can assist Your Lordship

further.

THE COURT:                Yes.  Thank you

very much, learned counsel.

Is there anything new in what either

Mr. Tyers-Smith has said, or Mr. Gledhill has said

which the other parties think they need to respond to?

Bearing in mind that there are three sets of Applicants

before the court today and we can't all of them start

them off on the same basis that has been given to Mr.

Gledhill, namely, of going first, waiting for the other

side and then having a reply.  We've had to take it in

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

167

a particular way for efficiency reasons.

So if there is anything new, this is an opportunity to say something.

MR. GIBBON: Simply to confirm, My Lord, there is nothing further I want to add.

THE COURT: Thank you, Mr. Gibbon.

Mr. Dennis, anything from you?

MR. DENNIS: Nor do I have anything to add, My Lord. Thank you.

THE COURT: Very good.

What we will do now, we will rise for the mid-afternoon break for 15 minutes. So we will come back at 25 to, which is more like ten minutes and a bit more, and then I will deliver the Court's ruling.

So we will see you shortly. Thank you very much.

(Break taken at 3:23 p.m. to 3:55 p.m.)

THE COURT: Good afternoon ladies and gentlemen, once more.

So, this is the Court's ruling in relation to three applications which have been placed before the Court.

The matter today is important. There is

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

168

some urgency attached to it, in that there is to be a hearing on the 9th of June in the United States and essentially, there are ongoing proceedings in the United States whereby Provisional Liquidators appointed by this Court are seeking recognition of these BVI legal proceedings in a court in the United States, in the context of, what I believe are called Chapter 15 Bankruptcy Proceedings.  And a question there has arisen whether or not the incumbent directors of various companies, which are subject to this Court's provisional liquidation orders, are allowed to oppose the application for recognition.  And this raises some very important questions, obviously, and they are questions we have to deal with quickly because we are today the 14th of June, which is only half of June left, sorry, 14th of May, we've only got half of May left and then only about a week or so of June, so we need to get on with giving judgment in this court, and I am going to do that today, even though it may not be very tidy.

So, the applications that I've had to deal with come from three quarters, although they cover substantially the same ground.

The first application in time was filed by what we know in these proceedings as Campbells

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

169

Companies. Now Campbells is of course a law firm here, and Campbells represent these companies and there are some, I think it is 25 companies, I believe, and we will have a look at their application first. That's the first application that was in time, and so we deal with that one first. And those Applicants which the lead company is Bright Team Global Limited and 24 other companies, they applied for the following orders and directions, and I summarize, I don't set them out in full:

"1. Where the powers of the directors have been displaced by the appointment of joint provisional liquidators with respect to the affairs of the companies, the directors' residual powers are not solely limited to opposing the making of a liquidation order. The directors retain the power to cause a company to appear in foreign recognition proceedings to challenge any application by the joint provisional liquidators for recognition and associated relief from the foreign court."

There is another declaration which they seek which we don't need to get into now, I don't think.

And the grounds for their application were as follows:

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

170

There was a provisional liquidation order made in respect of Bright Team Global Limited and those 24 related entities known as the Campbells Companies or Campbells Respondents, and what had happened was that on the 5th of January 2026, the Attorney General of the BVI commenced proceedings pursuant to sections 162(1)(b) and (c) of the Insolvency Act 2003 as amended, for the appointment of Joint Liquidators over each of the Campbells Respondents.  And at the same time, in parallel, the Attorney General filed applications in these proceedings pursuant to section 170 of the Insolvency Act, for the appointment of Joint Provisional Liquidators pending the determination of the Liquidation Applications.

And then by orders dated the 9th of January 2026, continued on the 29th of January 2026, this Court appointed Joint Provisional Liquidators to each of the Campbells Companies.

And a question has arisen in the US Chapter 15 recognition proceedings commenced by the Joint Provisional Liquidators in the United States Bankruptcy Court for the Southern District of New York, as to the scope of the residuary powers of the directors of the Campbells Companies, following the BVI orders appointing the Joint Provisional Liquidators.  I

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

171

might just refer to them as the JPLs for short going forward.

And the question is raised in the declaration that has been made by a BVI lawyer as an expert, Mr. Andrew Barrington Chissick, filed on the 8th of April 2026 in support of the recognition proceedings.  Now Mr. Chissick is a BVI legal practitioner of, I would add, many years standing, and he is a partner of Walkers (Europe), who serves as the partner primarily responsible for the matter at Walkers and who acts as legal counsel to the JPLs in connection with these proceedings.

Now, at the hearing of the JPLs' motion for interim relief in those US proceedings on the 22nd of April 2026, presiding Judge Glenn commented that the extent of the residuary powers is a matter of BVI law.  And the Campbells Parties say that this question is suitable for determination by the BVI Court as a discrete single issue, since its resolution will clarify the procedural and substantive rights of the directors and the JPLs.  And the issue they frame is as follows:

"Where the powers of the directors have been displaced by the appointment of joint provisional liquidators with respect to the affairs of the

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

172

companies, are the directors' residual powers limited

to opposing the making of a liquidation order or do

they extend further including the power to cause a

company to appear in foreign recognition proceedings to

challenge any application by the JPLs for recognition

and associated relief from the foreign court."

Now, the Campbells Companies submit that

section 170 of the Insolvency Act empowers the Court to

appoint provisional liquidators on such terms and with

such powers as the Court considers appropriate,

including where such appointment is necessary to

maintain the value of assets owned or managed by the

company, or is otherwise required in the public

interest.

They point out that section 171 of the

Act provides that the provisional liquidator has the

rights and powers of a liquidator to the extent

necessary to maintain the value of the assets owned or

managed by the company, or to carry out the functions

for which he or she was appointed, subject to the terms

of the order of appointment, and any subsequent

amendments as ordered by this Court.

Pursuant to the BVI orders, the JPLs,

jointly and severally, possess the rights and powers of

a liquidator to the extent necessary to maintain the

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

173

value of the Campbells Respondents assets, and to carry
out the functions for which they are appointed.

They say that the BVI orders confer upon
the JPLs authority to, amongst other things,
investigate the Campbells Companies' affairs, preserve
assets, and seek assistance and co-operation in foreign
jurisdictions.  Additionally, they provide, in material
part, that the powers expressly granted to the JPLs are
to the exclusion of any power exercised or purported to
be exercised by any existing director of each of the
Campbells Companies.

They say that consistent with the terms
of the BVI Orders, the directors and other officers of
each of the Campbells Companies remain in office but
have ceased, in material part, to have any authority to
exercise any powers, functions or duties in relation to
the affairs of the Campbells Companies, such powers
having been conferred on the JPLs pursuant to the BVI
Orders, save for the Residuary Powers.

They go on to say that the JPLs advance a
narrow construction of the Residuary Powers, contending
that following the terms of the BVI Orders which
expressly confer the powers of the directors
exclusively upon the JPLs, the only Residuary Powers
retained by the directors are the power to challenge

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

174

the liquidation and/or the appointment of the provisional liquidators themselves.  On this construction, the directors have no standing or authority to take any other action in respect of the Campbells Companies, including, but not limited to opposing foreign recognition proceedings, absent the prior consent of the JPLs or an order of this Court.

And the Campbells Companies contend that the BVI Orders do not support the JPLs' construction of the Residuary Powers and that, as a matter of law, the directors retain Residuary Powers that extend beyond the mere right to challenge the JPLs' appointment and/or the making of a liquidation order in the BVI, and encompass other forms of legal challenge to the acts of the JPLs such as opposing foreign recognition proceedings on behalf of the Campbells Respondents.

Now, there is a couple of other things which the Campbells Companies applied for which again I don't think are before the Court today.  They may come before the Court, but they are not, they weren't encompassed in the submissions I heard, so I won't deal with them.

The second application before the Court is one brought by two other companies called Amber Hill and Lateral Bridge, which are also the subject of the

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

175

provisional liquidation order.  That application was brought by the law firm, the legal practitioners Kobre & Kim, so we will call them the K&K Companies, and that application made on the 1st of May 2026.  And in essence, they are seeking a declaration that the Order dated the 9th of January appointing the JPLs over the K&K Companies, does not prevent those companies' directors from exercising residuary powers extending to appear in foreign recognition proceedings to challenge any application by the JPLs for recognition of these proceedings and associated relief from the foreign court.

In other words, exactly the same issue. And, in fact, the grounds put forward by the K&K Companies are materially the same and in fact almost identical, in many respects completely identical to the Campbells grounds, so I won't repeat them here.

Then the third application before the Court is an application dated the 4th of May 2026 by the JPLs.  And there the JPLs, Mr. Paul Pretlove and Mr. David Standish, they applied as Joint Provisional Liquidators of all those various companies, seeking directions and orders from the Court pursuant to various provisions of the Insolvency Act as well as paragraph 3(L), I think it is, of the Appointment

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

176

Orders, for various things to be clarified.  And they are basically as follows:

1.  The directors of each of the Companies do have authority in the name of the Companies to oppose or interfere with the exercise by the JPLs of the powers granted to them pursuant to paragraph 3 of the Appointment Orders, including:

(a)  The JPLs' powers under paragraph 3a of the Appointment Orders to take possession of and preserve the books and records of each Company;

(b) the JPLs' powers under paragraph 3b of the Appointment Orders to take such steps as may be necessary to protect the assets of the Company from removal or dissipation;

(c) the JPLs' powers under paragraph 3c of the Appointment Orders to seek recognition (or its equivalent) of the Applicants' Appointment in the United States, the United Kingdom, Singapore, Hong Kong, Taiwan, Thailand and Cambodia or elsewhere for the purposes of securing, realising and remitting assets to the control of the JPLs and for the purpose of obtaining access to and control of the records of each Company;

(d) the JPLs' powers under paragraph 3g of the Appointing Orders to take all necessary steps to

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

177

obtain from any person documents or copy documents

which belong to the Companies or have been created or

maintained on their behalf or which the Company has a

right to obtain or inspect; and

(e) the JPLs' powers under 3i of the

Appointment Orders to investigate the affairs of the

Company so far as necessary to protect and, if

necessary, retrieve the assets and records of the

Company."

And then a number of other provisions,

including that Mr. Cosimo Borrelli does or does not

have the ability to exercise the powers of a director

on behalf of the various Campbells Companies, and

various other orders, consequential orders such as

costs.  Nobody has addressed me on costs and we won't

deal with that today, but doubtless we will get into

that in due course.

I heard submissions from very eminent and

learned counsel, persuasive submissions, excellent

submissions from three sets of KCs and Mr. Tyers-Smith,

also excellent, so I've had the opportunity to consider

those submissions, including what they have written in

their skeleton arguments.

Now, Mr. Gledhill, KC, he stressed a

number of things and I want to just highlight these in

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

178

the highest possible form.

There are three basic matters that I have to be wary of.

The first is that ultimately, the meaning of the, or the extent of the Residuary Powers of the directors, they are a matter of construction of the Appointment Order only.  That's his main point.

His second point is that the various case law authorities which have been brought to my attention in relation to English and other common law jurisdictions, they all touch and concern different statutory regimes.

Thirdly, he was at pains to anticipate some kind of contempt proceeding and he urged that for contempt orders to proceed, then penal provisions need to be clear, unambiguous, and various submissions of that nature.

Let me just say, we are not going to get into contempt today.  It is certainly not before the Court today.  Whether contempt is something that needs to be looked at later is something that can be looked at later.  Of course, pegs need to be placed on the map, as it were, in terms of contempt, but they are not really issues for today at all.

Now, Mr. Gledhill took me to the JPL

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

179

Order and he argued very persuasively, that in essence, what the effect of that order all up is, seen in the round, is that in terms of the affairs of the Company and its assets, both of which are outside the jurisdiction of the BVI, then the JPLs do not have power.  Therefore, he says, the directors retain power.  And in essence, what he is saying there is that the directors' powers were never curtailed in relation to their ability to appear in US proceedings on behalf of the Company.  So, if it is that the JPLs are seeking recognition of these BVI proceedings and of their appointment as office holders in the United States, what that means is that the directors continue to be entitled to act on behalf of the Company to oppose those recognition proceedings.

That is what he says in the round and he draws heavily upon paragraph 9 of the Appointment Order to make good that argument.  And just for the record, paragraph 9 was in the following terms:

"The powers set out in paragraph 3 above are to the exclusion of any power exercised or purported to be exercised by any existing director of the Company, insofar as such power concerns the affairs of the Company and its assets within the jurisdiction of the Virgin Islands."

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

180

So he considers that to be a pivotal provision of the Appointing Order.

Now, as we will see, that's not really the be all and the end all, however.  And Mr. Gledhill also points out that there is a distinction between, under BVI statute there is a distinction between a liquidation order and a provisional liquidation order.  And he says that in relation to a liquidation order, such a liquidation order divests directors of their rights as directors and vests them in a liquidator with the directors then only retaining residual powers as recognised by the Act.

So the effect of liquidation is spoken to in section 175(1) of our Insolvency Act.  Now by liquidation, we mean when a company is placed into liquidation.  And by that, what we have is it says that:

"Subject to subsection (2), with effect from the commencement of the liquidation of a company," which is we all know the date of appointment of a liquidator --

"(a) the liquidator has custody and control of the assets of a company;

(b) the directors and other officers of the company remain in office but they cease to have any

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

181

powers, functions or duties other than those required

or permitted under this Part or authorised by the

liquidator."

            And there are a few more provisions in

175, but that is the key one.

            So basically, what it is, is that the

directors remain in office, the directors and officers

remain in office, but they cease to have powers,

functions and duties, except those required or

permitted under this Part, or authorised by the

liquidator.

            Now, leaving aside the 'authorised by the

liquidator', which is of course an exception, statutory

exception, it is, I think, common ground that one of

the other powers that they have is to challenge, that

is, to apply to set aside or vary or appeal from, a

liquidation order.  So it's very clear that they have

those, liquidation order, that is what happens and the

directors' powers and functions and duties are divested

at that point.

            Now, he says that is different from when

a company is placed in provisional liquidation.

Because in section 171, it provides there that:

            "Subject to subsection (2), a provisional

liquidator has the rights and powers of a liquidator to

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

182

the extent necessary to maintain the value of the

assets owned or managed by the company or to carry out

the functions for which he or she was appointed."

In subsection (2):

"The Court may limit the powers of a

provisional liquidator in such manner and at such times

as it considers fit."

So what it's basically saying is that

this is very much a limited remit to provisional

liquidators, and the remit is essentially limited to

the powers that the Court vests in the provisional

liquidator by the appointment order, and then it is

only on a very narrow basis that those powers are for

the maintenance of the value of the assets owned or

managed by the company, and to carry out the functions

for which he was appointed, in other words, as

designated by the court order.

So he is saying it's very much more

limited.  And the corollary of that is, and it's

important for his analysis, is that the directors

retain all other powers.  So on his view, the directors

retain more powers than just appealing a JPL

appointment order, or challenging it, or varying it,

but they can carry on doing a lot of things in the name

of the company.  And they can do that, and what they

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

183

don't need to tread on or trespass on is the very narrow remit of the JPLs.  They remain in office and they remain functioning as directors and officers. That's his case.

And he says in fact, section 9 of the court's Appointment Order here, basically underlines that and it restricts, in fact, the functions of the JPLs to dealing with the affairs of the Company and the assets of the Company in the BVI.  So the affairs of the Company in the BVI and the assets of the Company in the BVI.  That's what he says.  He says otherwise it wouldn't make any sense, because you wouldn't need it otherwise, it would be redundant.  If it's just stipulating a position as a matter of law, then you wouldn't need paragraph 9.  So it is doing something more than just stipulating a position.  And it's stripping down, constraining the powers of a liquidator further.

So that is a very powerful and persuasive argument which Mr. Gledhill advanced.

Now, Mr. Gibbon described this as a seductive, I may be misusing his words, a seductive primrose path which he said was wrong.  And Mr. Dennis described it as specious and I was taken to various reasons why that was the case.  So let us have a quick

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

184

look at those.

Mr. Gibbon pointed out that you don't just look at what the order has to say.  He took me to a case called Pan Petroleum and Yinka, where provisions or principles for the construction of orders are summarised.  And two of those main principles are as follows.  It says:

"The sole question for the Court is what the Order means, so that issues as to whether it should have been granted and if so in what terms, are not relevant to construction."

Nobody disagrees with that here.  In relation to the K&K Companies, they were suggesting that actually, the rather strong basis upon which the JPL Order was made in respect of the Campbells Companies doesn't apply to them.  And I challenged him twice, I think, to take me to the logical conclusion of what he wanted say about that.  He didn't actually want to say anything apart from that his clients are in a slightly different position.  He didn't take me further.  He wouldn't go so far as to say that the order shouldn't have been made or in fact that a different regime was carved out in the JPL order, from the Campbells Companies.  He accepts that a single regime applies to both the Campbells Companies and the

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

185

K&K Companies.  And we are not worried here about whether or not the order should have been made at all. It was made and we just have to worry about what it means.

So that's the first principle.  The sole question for the Court is what the order means.

And the second principle, in that case it was actually stated as the third but for present purposes it remains our second principle.  It says:

"The words of the Order are to be given their natural and ordinary meaning and are to be construed in their context," now that's important, "in their context, including their historical context and with regard to the object of the Order."

So we can't just look at the terms of the order and walk up a primrose path into some golden sunset of meaning which is convenient to one party, because that's what they want it to mean.  We have to look at the context, including the historical context and with regard to the object of the order.

And so Mr. Gibbon said what's the context of the order.  And the order was this.  When the order was made, there was an assumption that Mr. Chen was a director of the Campbells Companies.  Not Mr. Borrelli. Now Mr. Borrelli we all know in this jurisdiction, he's

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

186

an insolvency practitioner of very long standing and high repute, and he is a go-to man for lots of things related to insolvency, but like this one, not exactly in insolvency, so we shouldn't be surprised to see Mr. Borrelli in this position that he has as a director under some kind of power of attorney, which there are question marks about, okay, okay, we don't have go there now.  But then it's not Mr. Borrelli, not the good, clean Mr. Borrelli.  What we were dealing with was when Mr. Justice Mithani made the JPL Order, there was Mr. Chen as the director of these Campbells Companies.  And what we have there was that Mr. Chen is supposed to be, or this is the allegation anyway, and Mr. Gledhill slipped in that nobody was really arguing that Mr. Chen is a terrible person, or evil man, or something of that nature.  He let that slip but I don't take that as a formal concession at all.  But basically, what the allegation is, is that Mr. Chen is the point man, the leader, the driver behind an appalling network of scam operators, operating ten or so scam compounds of forced labour in Cambodia, in which they indulge in the nefarious activities known as pig slaughtering, which is basically leading innocent people on on scam phone calls and other nasty tricks to empty their wallets of money on pretexts, romantic

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

187

pretext, business pretext, any pretext along well plotted and carefully enacted conversation chains across the world.  And of course, this is all rather a gray industry in Cambodia doubtless because there is no actual offence being committed in Cambodia, because whatever offences are being committed are abroad.  But anyway, apparently this man Chen has been incarcerated in the PRC as a result of his activities, which also included forced labour and incarceration basically, the deprivement of liberty in compounds and forcing people to operate scams; and torture, apparently.  And there are very many, very lurid allegations out there against Mr. Chen.  And apparently scams that he has been running, they have been mixed in with quasi-legitimate enterprises, or certainly in the Far East legitimate like casinos and gambling, but other and more legitimate activities like banking activities, and other activities.  But of course Mr. Chen has apparently got a whole string of companies, including BVI companies, around the world, through which vast sums of money have been laundered, which is again of course also terrible and wrong, bad.  But he's been mixing this money up with legitimately made money, all part of a laundering, and he has also been spraying this money in such a way to paint it in a different

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

188

light, which is apparently a different activity in laundering.

So this is all at the forefront of very nefarious activities of which he has been alleged. And what is more, Mr. Chen has found himself the object of sanctions proposed by OFAC in the US, and I think it's called OFSI in the UK, whereby basically it prevents other people dealing with the assets linked to Mr. Chen. So the Campbells Companies, for example, are apparently caught in the sanctions although Amber Hill and the other K&K Company apparently are not sanctioned because they apparently are not owned by or controlled by Mr. Chen, although their activities had, at least in one respect in one of these companies, been linked to them in terms of cryptocurrency activities.

So what we have here is a lot of allegations made against Mr. Chen of the strongest, most egregious kind of really the worst of the worst conduct you could ever expect to see on the international commercial stage. And it's also very rare for such conduct to see this level of sanctions being applied.

I have to say here, of course, that sanctions are a political measure imposed by the Executive. And the Executive executes and it does so,

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

189

and it does so within parameters.  But those parameters are, generally speaking, not judicial parameters. Those are political steps which are taken.  The court of laws remit is slightly different.  A court has to act judiciously.  That is, on the basis of evidence and the balance of probabilities, and the rules of evidence.  So just because somebody is thought to be a terrible person and allegations abound against him, and just because he is sanctioned doesn't of course mean that the court is sufficiently satisfied that it can use its own powers against that individual.

Nonetheless, what has happened here with the terrible background of Mr. Chen placed before the Court, then the JPL Order was made appointing the JPLs. So the context was, was an assumption that Mr. Chen was a director or indeed the sole director of at least the Campbells Companies.  Not the good, clean Mr. Borrelli but Mr. Chen.  That was the context.  So we then have to look at what was going through the mind of the Court, what was the Court's intention objectively seen when it made the JPL Order.  And Mr. Gibbon submitted that the very purpose of the JPL Order of the Court was to take those companies out of the control of the directors of those Companies.  That is, away from Mr. Chen and his associates.  And his point is the

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

190

order cannot be construed in a vacuum.  Now that's very important because Mr. Gledhill, and to again adopt Mr. Gibbon's description of a primrose path, Mr. Gledhill walks a primrose path through that order, actually from the back of the order to the front, when you think about it, as Mr. Gibbon also said looking at it from the wrong end of the telescope.  But he walks this primrose path ignoring the context of Mr. Chen being this apparently dreadful fraudster, criminal mastermind, pig slaughtering, scam operating individual who is sanctioned.  He wants to leave all that out of the equation and the context and just look at the terms of the order.

Well, I know which is the more protracted line to take, and that is Mr. Gibbon's line.  You can't construe an order in a vacuum.  And his case Pan Petroleum is the authority for that.  No authority has been laid in front of me to show that that's wrong.

Then Mr. Gibbon also pointed out that, and again this is so trite but he has an authority to back him up on this, the Kensington and Montrow case, is that a liquidator, presumably a JPL as well, for him to function effectively in order to preserve the assets, he needs to know the whereabouts of those assets.

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

191

We live in a world where sometimes basic things need to be stated.  We don't only now live in an upside down world.  It has been with us for a very long time.  In fact, we need only turn into the opening act, Scene 1 of Macbeth in Shakespeare where the three witches say "fair is foul and foul is fair, hover through the fog and filthy air."

Now that applies to daily life of the BVI Commercial Court.  Everything is upside down.  Well, yes, they need to know the whereabouts of the assets.  They need to have the Companies taken out of the control of the directors who are suspected of doing wrongdoing, and they need to find out where the assets are.  So they need various powers.

So Mr. Gibbon therefore goes to the provisions of section 171(1) of the Insolvency Act, and he says there that it is made plain as day, not fog, not filthy air, plain as day that:

"The provisional liquidator has the rights and powers of a liquidator to the extent necessary to maintain the value of the assets owned or managed by the company or to carry out the functions for which he or she has been appointed."

He says you can get from that, that the Appointing Order for JPLs, is prime, that order has

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

192

primacy.  It's important.

The other thing which you get from it is the effect and necessity.  And he says that if the provisional liquidators need powers, they have them. And he makes a further point which comes out of 171(1), that the provisional liquidator alone has those powers and rights.  If he has them, nobody else does.  That's a strong thing to say.  It's true.  It's obvious. Because otherwise it's a bare recipe for confusion.

Then he goes on to say that in 171(2) it says:

"The Court may limit the powers of the provisional liquidator in such manner and at such time as it considers fit."

In other words, the powers of the provisional liquidator are under the control of the Court.  Now that's also very important.

And then what we have to do is we have to think what is it that the JPLs are really trying to do in New York.  All they are doing is they are trying to get these BVI proceedings recognised so that their appointment as JPLs is also recognised so that they can take steps in New York to investigate the assets and dealings of the Company, and so that they can get in those assets and secure them.  That is all that they

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

193

want to do. And they do that in the context where, as the Attorney General has made before Justice Mithani, there was a need to take immediate control of the Companies including that there is a real and substantial risk that, absent the immediate appointment of provisional liquidators, assets held by or through the Companies will be transferred, concealed or dissipated, and documents will be destroyed or concealed. And the appointment of provisional liquidators will immediately remove control from Mr. Chen and his associates, and place the Companies under the supervision and control of officers of this Court, thereby protecting the integrity of any investigation and preserving assets for the benefit of the victims of Mr. Chen and the Prince Group's fraudulent and criminal activities.

That's the point of the JPL Order. And as Justice Mithani thought on the material presented by the Attorney General, the case for the appointment of provisional liquidators is overwhelming, subject of course to any disclosure matters that the AG might like to bring to the Court's attention.

Now I have to say, of course, that whether or not at the end of the day when you look at all the evidence the case for the appointment of a

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

194

liquidator is overwhelming, that's another matter.  But
certainly from the case of the appointment of
provisional liquidators, that appears to the Court,
Justice Mithani, to be overwhelming.

Now, what this means is right at the
heart of the Court's consideration when it made the JPL
Order, was removing control of those Companies from
their directors.  The Court expected the directors,
whoever they might be, to be prevented from continuing
to be in control of the subject Companies.  And as
Mr. Gibbon says, that if you give power to the JPLs it
was to be given to them and not to anybody else.

So what we had is the Defendant saying
that they are entitled to go to the US to instruct the
Companies, the directors are saying this, to instruct
the Companies to oppose the recognition of this Order.
And they say they are allowed to do that on
Mr. Gledhill's interpretation, which Mr. Tyers-Smith
has adopted as well.  And Mr. Gibbon strongly disagrees
with that.  And he says that not only do you have to
look at the context of the Order, and we will get on to
some of the powers in a minute of the Order referred
to, but he also looked at the general treatment of
similar provisions in England and other Commonwealth
jurisdictions.

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

195

Now, of course Mr. Gledhill is right that those statutory regimes are slightly different and their provisions are slightly different.  But the overall scheme, it has to be said, is very similar and the Court can look at it for instruction.  So for example, the first case we can look at is a decision in 1972, a case called re Union Insurance in the English Chancery Division by Plowman J, as he then was, where the English Court accepted, or said this:

"The respondent's submission was that the appointment of a provisional liquidator automatically put an end to the authority of the company's directors to instruct solicitors and counsel to represent it and that the solicitors purporting to act on its behalf were therefore liable to pay the respondents' costs personally.  It is of course well settled that on a winding up the board of directors of a company becomes functus officio and its powers are assumed by the liquidator.  My attention was drawn to In re Mawcon [1969] where Pennycuick J stated in effect that the appointment of a provisional liquidator had the same result.  No doubt that is so, but it is common ground that notwithstanding the appointment of a provisional liquidator, the board has some residuary powers, for example it can unquestionably instruct solicitors and

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

196

counsel to oppose the current petition and, if a winding-up order is made, to appeal against it.

The issue is to the extent of those residuary powers and, in particular whether they extend to the launching of the present motion.  I think that it may sometimes be helpful to test the matter by considering the other side of the coin, namely, to inquire whether the power which the board is said to have lost is one which can be said to have been assumed by the liquidator.  If the answer is that it cannot, that may be a good reason for saying that the board still retains it.  Clearly, for example, as I have already indicated, the power to instruct solicitors and counsel on the hearing of the winding-up petition is not a power which anybody could suggest has passed to the provisional liquidator and therefore the board retains it."

Now pausing there, first of all, what we have from that passage is that the appointment of the provisional liquidator has the same result as the appointment of a liquidator, i.e., that the appointment automatically puts an end to the authority of the company's directors to instruct solicitors and counsel to represent it.  So basically, it automatically ends the authority of the company's directors to do acts on

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

197

behalf of the company.  That's the first thing.  That's the general principle.

The second thing is that the board, the directors, retain residuary powers and the example that they come up with is to oppose a winding up application or to appeal a winding up order made.  They leave open, or the board there left it open that there could be other things which the residuary powers could include. And then they postulated a test which they said 'sometimes' might be helpful.  Not all the time, but sometimes.  And they give this example that if a power has, well the example they gave is if, for example, the power to instruct solicitors on the hearing of the winding up petition has been retained by the directors, that means that it hasn't passed the provisional liquidator.  Fine, that's one example.

Mr. Gibbon says this particular test is not a universal test and he said that if the power has expressly been given to a liquidator, the order will not give the liquidator power to oppose his own power. So for example, if the order gives the power to provisional liquidators to enter a building belonging to the company, it will be nonsensical to say that the power gives the liquidator the power to oppose himself. By extension, it will make no sense to say the

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

198

directors have retained the power to oppose the provisional liquidator's exercise of that power to enter the property.  And he went on to say that if that was what was meant, it will mean that any power can be opposed in a disruptive way.

And that's got to be right when you think about it.  And what we seem to have on the authorities is a problem and a solution.  The problem is that a liquidation order and a provisional liquidation order, takes the powers away from a director, from the board, to act on behalf of the company.  And that's a very wide-ranging power which has been removed from the board.  But in order to enable the justice of an appointment order or a winding up order to be adjudicated by the Court, you necessarily need two sides.  And the best people to argue against it are obviously the directors.  So it would basically prevent justice from taking place if nobody could step up to oppose such an application, and that would simply be a ridiculous result.  So pragmatically, and for the reasons of both procedural and substantive justice, it is necessary conceptually that somebody should retain the power on behalf of the company to oppose the application.  And the logical solution that has been found is to say that the directors have it.

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

199

Now, I've spent a paragraph or so talking through that.  But what it comes down to is this, and there is an authority for this and this is one of the Commonwealth authorities which Mr. Gibbon was referring to.  I think it's the case of Diamond Fuel, that might not be Commonwealth, it might be English, the Diamond Fuel case.  And also the case of Hin Leong, I think it is, from Malaysia, and in particular the phrase used there at paragraph 56, read as follows:

"In substance, an application challenging the making of a judicial management order," for that read 'JPL Order', "would challenge the 'very juridical basis' on which such management powers of the directors have been removed, i.e., upon the appointment of an interim judicial manager, judicial manager, provisional liquidator and/or liquidator."

So basically, the residual power enables the directors on behalf of the company to challenge the very juridical basis upon which the JPL Order was made.  It doesn't allow the directors to challenge the exercise of all and sundry powers that the order has granted.  The residuary power is there to challenge the very juridical basis upon which the order was made in the first place.

Now, when you look then at the order of

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

200

the Court, I said we will come to the Order of the

Court.  Basically, what we had -- let's go to that

Order, shall we.  The operative provisions are to be

found in paragraph 2 and paragraph 3 of the order.

Paragraph 2 is short.  So paragraph 2 says:

"The Joint Provisional Liquidators have

the rights and powers of a liquidator to the extent

necessary to maintain the value of the assets owned by

the Company and to carry out the functions for which

they are appointed."

Okay, so this tracks the wording in the

Act, but it also sets out not only what the powers are,

the rights and powers are, but it also sets out an

interpretative hermeneutic, in other words, how do you

read this order.  And you read this order that the JPLs

are to have these powers so that they can maintain the

value of the assets in the Company and to carry out the

functions which the Order has given them.

Those are specific powers.  Then we have

additional powers, because it says so.  In addition to

the powers outlined in 2, in 3 you have more powers.

And those powers are a very standard list of things

which include to gain entry to the Company's premises.

Those premises don't necessarily have to be in the BVI,

they could be anywhere.  To take possession and

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

201

preserve the books and records of the company.  Again, they could be anywhere.  They've got the power to do that.  They could exercise that power.  They might not, for example, be able to knock on a warehouse in New York and say we are the directors or we are the JPLs, we have to come in and that pile of books and records in the corner are ours and we are taking it.  They can't do that necessarily under New York law.  They've got the power to do it under our law, our Act, they might not be able to do that under New York law.  But we come down to what happens then.

The next power is to identify assets. And then the third one is to seek the recognition or its equivalent, of their appointment in the US, UK, Singapore, Hong Kong, Taiwan, Thailand, Cambodia or anywhere else, for the purposes of securing, realizing and remitting assets to the control and for the purpose of obtaining access to and control of the records of the Company.

So they are again given an express power to seek recognition.  It's obvious why.  They need to get recognised elsewhere so that they can exercise the powers they have been given.

And then more powers in (d), to commence, continue, etc, legal proceedings in the name and on

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

202

behalf of the companies.  And to vote shares in the companies.  To carry on the business of the companies.  To take all steps to obtain documents from people; to appoint agents; investigate the affairs.  A whole long list, retain and operate bank accounts.  They could draw down payments.  They could apply to this Court for directions.  That's (l), by the way, so I will come back to (l).  So that's the one they are coming to this Court under.  And do any other things, all other things as may be incidental to the exercise of legal functions and powers.  And they can co-operate with law enforcement and regulatory authorities here and in other jurisdictions.

So they can do an enormous amount of things.  Those are big powers which they have been given.  It has obviously been said that paragraph 9 cuts these powers down only to the affairs of the Company in the BVI and the assets in the BVI.  Well frankly, that is a most unattractive proposition and it could only possibly be seen as coming from somebody who doesn't really deal with BVI companies on a regular basis.  I can understand that it might be said that a company in England might have such narrowness attached to it with the powers, etc.  But BVI companies are almost invariably used for holding assets which do

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

203

things abroad and which operate abroad.  We do not have widget factories here in the BVI.  They are all somewhere else.

So saying that the JPLs' powers are only limited to the affairs of the Company within the jurisdiction of the BVI is to constrain the powers of the JPLs to the top of a pin.  It makes no sense.  It is an insanitary interpretation of this Court's order.

And we have to come back to the whole point and this is really what it all comes down to. The whole point of the JPLs Order is to take powers away from the directors of these Companies.  That is the whole point.  It is not an incidental accident of the power.  It is not some interesting ancillary effect of some pleasant complicated order which transfers the management of the company from one sensible person to another.  No.  This is asymmetric warfare, to be blunt about it.  It's to rip these Companies away from those directors and give them into the hands of JPLs so those directors cannot harm those companies any more.  And we make no bones about it and we make no apology for it either.

That's the lens through which this has to be looked.  And the lens which was applied by Mr. Paul Dennis most ably when he said what you have to do is

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

204

you have to read section 171 together with 175.  You have to see where it says that the JPL has the powers of a liquidator, you have to look at what the powers of the liquidator are, which are to be found in 175, with its little cut out for the remaining residuary powers of the directors.  Well that's precisely it, isn't it?  You have to read the two together.  And the lens is that what you've got is you've got powers being given to the JPLs by this court's order.  They can't necessarily use those powers because something else might need to happen, but they've got those powers.  And they have those powers to the exclusion of the directors.  The directors retain the residuary powers to challenge the very juridical basis for the Appointment Order itself, and no more.

Now, what they can do is that those directors can apply to this court and they might say no, no, no, no, the recognition power is too broad for such and such a reason.  This Court must vary its order.  This Court must say that recognition should not be granted in such and such a case, or whatever, but what they can't do is to say we are going to oppose this in the US.  We don't, because they don't have the power to do it.  They've got the power to come here and persuade this Court to vary its order, but that is it.

205

They don't have a residuary power to go and obstruct, obstruct, obstruct, obstruct.  I read out, how many powers did I read out?  It went down from letter A to O, I think it was, did I say that, yes?  I am sure I did, from letter A to O, I don't know how many letters that is, I can't count.  It's an enormous amount of letters.

If their interpretation is right, then what their interpretation would have is, on most or all of them, then it would still have the directors being allowed to come and object to the use of those powers, not just in New York, but in Cambodia, Taiwan, Thailand, UK, anywhere else and obstruct, obstruct, obstruct, obstruct, and litigate until, Mr. Dennis used the milking analogy, until the cows come home and all the litigation funds dry out.  That's what unending directors' powers to obstruct will entail.

Now the directors will love, Mr. Chen will love to be able to do that, of course, because he doesn't want this to come to its natural conclusion.  But that's not how things work.  These Companies have been ripped out of those directors' control purposely.

Now, so what then of this point which is taken are, the US bankruptcy provisions themselves allow a debtor company to appear on an order for

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

206

recognition.  Well yes, it does.  I've been taken to a provision, a US provision which says something to that effect.  I am trying to look it up, I am trying to scroll down to it.  It says:

"Rule 1012.  Responsive Pleading in Cross-Border cases.

(a) Who may contest petition."  And that is both in capital letters, capitalized capital letters, in a very clear way.  It says:

"The debtor or any party in interest may contest a petition for recognition of a foreign proceeding."

Not just a debtor, but any party in interest.

Now, what this Rule 1012 cannot do, it cannot give the directors more power than this Court gives them or allows them to have.  Can't do that.  The only entity which gives directors powers, two things, either it's BVI statute or it's this Court once we are in the insolvency context, forgetting the memo and arts of the company for the present purposes, which is like statute.  So it's just statute or it's this Court. It's not the New York Court.  It's not some federal set of rules.  All they can do is say who would be allowed to appear in front of their Court under their system.

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

207

So who is a debtor?  Well we have no US law on who comes in under their Rubric of a debtor, nor do we have evidence of New York law or US law on who is a person of interest.  Mr. Gibbon made that point, we don't have US law on that point.  We have no evidence.  So it doesn't help us.  But just on the face of it, then even if the company by its directors can't appear in the US Court to oppose it, that apparently is not the end of it on the face of Rule 1012, because any party in interest can do that.  And as Mr. Gibbon has pointed out, the JPLs have got no problem with the directors as individuals or some other kind of interest, or maybe shareholders, going after the US Court and explaining why the recognition should not be granted.  But what he does have a problem with, and I am with him on it, is that the Company can't on the one hand speak through the JPLs and on the other hand, janus-faced, speak against it through directors.  That would make a nonsense of the proceedings and would be a recipe for complete chaos, which is, of course, what Mr. Chen would want.  But we are not going to allow complete chaos to take hold.

So the Rule 1012 is neither here nor there.  It is not a source of power.  The source of power is BVI statute and the BVI Court's Orders.

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

208

Now coming back to this notorious paragraph 9, I don't read paragraph 9 as only limiting the JPLs to the affairs of the company in the BVI and the assets within the BVI.  The way I read that is that of course JPL can only do things with the powers it has, where it is allowed to do so; and the only place where it is allowed to do so is the BVI.  It still got those powers.  By having those powers, it has them to the exclusion of the directors.  It would need to get recognition from foreign courts to be able to use those powers.  That is the distinction.

So where does this take us?  It means, put simply, that the directors do not have the power to go in and oppose the recognition proceedings in the US if it is that they are doing so on behalf of the company.  If they have some other kind of interest and they can come within Rule 1012, fine, but they can't do it on behalf of and in the name of the Company.

I think that answers the question, doesn't it learned Counsel?

MR. GIBBON:            My Lord, I am very much obliged and I am sure, speaking for my learned friends, in likewise saying that they are too.

I should stress, Your Lordship raised one point that costs might be for another day.  On the

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

209

papers as far as I am aware, nobody was seeking costs

anything other than in the provisional liquidation, I

would be corrected if I am wrong about that.  So that's

one consequential that you might ordinarily be

expecting to hear, but I don't anticipate there would

be any arguments about that.

THE COURT:                    Okay.  Maybe

what I need to do is frame my conclusion in terms of

the actual question which was put.  You can all work it

out, you are going to be liaising with each other on

this and you are not going to come to any agreement,

because lawyers don't agree on important things.  So

maybe I ought to just look at the issue which has been

defined in, I think it was paragraph 7 of the Campbells

Notice of Application and the grounds.  And the issue

was framed as follows:

"Where the powers of the directors have

been displaced by the appointment of joint provisional

liquidators with respect to the affairs of the

companies, are the directors' residual powers limited

to opposing the making of a liquidation order or do

they extend further including the power to cause a

company to appear in foreign recognition proceedings to

challenge any application by the JPLs for recognition

and associated relief from the foreign court."

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

210

That's the question.  The way I would answer that is first of all, no, the directors' residual powers are not limited to opposing the making of the liquidation order because they also extend to the opposing of making a provisional liquidation order and to seeking its variation; and they also extend to appealing decisions in respect of those applications.

So that is how I answer that first power.

And then the second part:

"... or do they extend further including the power to cause a company to appear."

I would say they extend further to the extent that I've just indicated, but not including the power to cause a company to appear in foreign recognition proceedings to challenge any application by the JPLs for recognition and associated relief from the foreign court.

That's how I would answer that one.  So that power to cause the company to appear to challenge recognition proceedings, etc, no, the powers do not extend to that.

I don't think I have to answer any of the other formulations in the other Notice of Application, but if I am wrong on that, can counsel please point it out so I can answer the question now for finality's

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

211

sake.

MR. GIBBON:                To make the position clear in relation to our application which you read out at an early stage of your judgment, My Lord, if I ask you to turn to page 13, it's simplest to look at it there in the Hearing Bundle.

THE COURT:                Okay.

MR. GIBBON:                As you recall, we had set out a number of paragraphs including 3c.  It was really for the avoidance of doubt, but I should make the point clear, I have focused my submissions on 3c.  I didn't address you specifically on the other points.  While I respectfully submit that the other points would follow based on what Your Lordship has said, I should in fairness and propriety say that that's not something any of the parties specifically addressed their comments on.  And indeed, Mr. Gledhill in his skeleton argument, as I understand it, said those points aren't contested.  Well that's not the same as whether it would be helpful to have reference to those made because it might well be helpful for reasons you will recognise.  But I suspect his point is well, I haven't got a final view yet as to whether or not I've got anything to say about them until I know what the JPLs want to say about them.  And he will tell

212

me if I paraphrased that incorrectly, but just fairly to put the positions of the parties before you straight away.

THE COURT:                    Very good.  I need to deal therefore specifically with the orders and directions sought by the JPLs in their application.

So in terms of, and I am looking at the, for clarity sake, I am looking at the draft order for directions which is to be found starting at page 12 of Hearing Bundle 1, and then going on to page 13 where we have paragraph 1.  So the orders sought at paragraph 1, orders and directions sought at paragraph 1, namely, that:

"The directors of each of the Companies do not have authority in the name of such Company to oppose or interfere with the exercise by the JPLs of the powers granted to them pursuant to paragraph 3 of the Appointment Orders," including various this and that.

That order is granted.  That order and direction is granted in those terms.

In relation to paragraph 2 which was that, draft paragraph 2 was that:

"Mr. Cosimo Borrelli does/does not have the ability to exercise the powers of a director on

213

behalf of the 25 BS/Campbells Companies," yes.

MR. GIBBON:                    That's the one I haven't moved, My Lord, and the parties are agreed, as Mr. Gledhill mentioned, that that wasn't being moved in any respect today.

THE COURT:                    Isn't it covered by the powers of the director?

MR. GIBBON:                    Well there is an element of it, quite.  It gets into different issues, I will say that straight away, because there's factual questions about the circumstances which Mr. Borrelli was appointed.  It's sufficient for the purposes of the 9th of June that you make the directions in 1, and I think being practical, I am sure if I started making further submissions targeted at Mr. Borrelli, Mr. Gledhill in particular would find himself in a position of having to make responses to that and we will be here longer.

THE COURT:                    Paragraph 2, the application reflected by paragraph 2 of the draft order, that will remain on the file.

MR. GIBBON:                    Yes.  We will find a formulation, but in essence, yes.

THE COURT:                    Yes, that remains on the file.  That is basically adjourned sine

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

214

die with liberty to restore.

MR. GIBBON:                    Very grateful.

THE COURT:                    So the order that you are getting on your application, Mr. Gibbon, is the one formulated in paragraph 1.  Then does anybody oppose the third one, which is the JPLs costs of the JPLs Application re Standing be costs in the provisional liquidation of the Companies?

MR. GLEDHILL:              In light of Your Lordship's decision we can't make any submissions to the contrary.

MR. TYERS-SMITH:        My Lord, the same is the true of Amber Hill and Lateral Bridge.

THE COURT:                    I don't understand, you are saying you are making those submissions?

MR. TYERS-SMITH:        Yes, My Lord, sorry, the same position as applies to Amber Hill and Lateral Bridge.

THE COURT:                    Mr. Gledhill, you had a rather nuanced submission in relation to costs there.  At this time of the afternoon, you mentioned earlier that I did have lunch.  I also spent some of my lunch preparing this rather impromptu judgment.  Consequently, my brain at least has been

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

215

filled with other things, so I didn't get what you are saying.

MR. GLEDHILL:              I am so sorry if I wasn't clear.

In the light of the decision which Your Lordship has kindly rendered, we can't resist the proposal made in paragraph 3 of the Joint Provisional Liquidators draft minute of order.

THE COURT:              So that means, Mr. Gibbon, you have 3 in your draft order.

MR. GIBBON:              I am obliged, My Lord.

Just one last question, it may be that the answer to this is clear.

Kobre & Kim had their own separate application which is more or less in the same terms and that will formally have to be resolved by way of court order.  I suspect the answer is whatever is said can simply be the reflection of what you've said should happen in relation to the declaration sought by Mr. Gledhill's clients.

THE COURT:              Let's have a look, because they sought a slightly different declaration.

MR. GIBBON:              Very slightly

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

216

different formulation, yes.  It's page 81.

THE COURT:                    They sought a declaration that:

"The order dated 9th of January 2026 appointing," these JPLs over the K&K Respondents, "do not prevent those directors from exercising residuary powers extending to appear in foreign recognition proceedings to challenge ..."

Essentially drafted rather cleverly. It's on the assumption that they do have residuary powers and they can't stop them using them.  So basically, not residuary powers to do that.  So I think that declaration, I think the way they phrase it is that the Court declines to make the declarations sought by the K&K Companies' application.

MR. TYERS-SMITH:       My Lord, we are happy with that.

THE COURT:                    I think that's all we need to do.  The K&K Application is refused, or something along those lines.

MR. TYERS-SMITH:       Yes.

THE COURT:                    Okay.

MR. GLEDHILL:          My Lord, before we rise, may I just raise one point with Your Lordship, and before doing that, just echoing Mr. Gibbon's

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

217

comment in relation to the speedy dispatch with which Your Lordship has dealt with the matter.

When we were last before you on the 15th and 16th, sorry, the 16th and the 17th of April, that was before the initial Recognition Application was heard in the United States which then set the deadline of the 9th of June for the final hearing of that.  I am obviously very conscious of the work pressures on Your Lordship, but I did just want, if I may before we rise, to inquire whether it's your anticipation whether it's likely that you will be able to have a judgment on the substantive application that you heard four weeks ago, before the 9th of June.

THE COURT:                I'm supposed to be receiving your written submissions tomorrow, aren't I?

MR. GLEDHILL:            Final closing submissions are coming to Your Lordship tomorrow, that is correct.

THE COURT:                Right.  It depends how simple it will all appear to me when I read your final submissions.  Frankly, one of the reasons I ask for those closing written submissions is because it seems to me there is a bit of a difference.  I think I have alluded to it already, I deliberately alluded to

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

218

it earlier. There is a difference between what the Executive does in terms of sanctioning people and the grounds upon which they sanction people, which could be rather gung ho sometimes, and for good reason gung ho. And what a Court is supposed to do when it puts companies into liquidation. There is a difference between acting judicially and acting executively. And one of the difficulties that I have is that, you know, I have to weigh up whether the so-called evidence in front of me is strong enough to move the Court, whether there is any evidence at all in a strict sense and if there is, if it's strong enough to move the Court to wind the Companies up. That's the main problem that I have and I need to get my head around that.

MR. GLEDHILL: My lord, that's very helpful. We entirely understand the fact that the decision which Your Lordship has to take is a difficult one, having heard some important submissions in relation to some important policy questions during that hearing. So we are grateful to Your Lordship for that indication.

THE COURT: Very good. Anything else, learned counsel?

MR. TYERS-SMITH: My lord, no.

THE COURT: Thank you very

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

219

much.  We will take the adjournment now.  Have a pleasant evening.

(Hearing ended at 4:59 p.m.)

* * *

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

220

REPORTERS' CERTIFICATE

WE, STACY GLASGOW, JAILANN WILLIAMS, PETULA v. STOUTT and MONIQUE M. GRAHAM, Certified Court Reporters, do hereby certify:

That on the 14th day of May 2026, the foregoing proceedings were taken down by us in machine shorthand, consisting of 220 pages herein; that the foregoing is a true and correct transcript of the proceedings had.

That we are not attorneys, relatives or employees of any party hereto, or otherwise interested in the events of this cause;

IN WITNESS WHEREOF, we have hereunto affixed our signatures at Road Town, Tortola, British Virgin Islands, this 15th day of May, 2026.

_____        _____
STACY GLASGOW                        JAILANN WILLIAMS
Certified Court Reporter             Certified Court Reporter


_____        _____
PETULA V. STOUTT                     MONIQUE M. GRAHAM
Certified Court Reporter             Certified Court Reporter


COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

1

ORAL DECISION

THE COURT:                Good afternoon ladies and gentlemen, once more.

So, this is the Court's ruling in relation to three applications which have been placed before the Court.

The matter today is important.  There is some urgency attached to it, in that there is to be a hearing on the 9th of June in the United States and essentially, there are ongoing proceedings in the United States whereby Provisional Liquidators appointed by this Court are seeking recognition of these BVI legal proceedings in a court in the United States, in the context of what I believe are called Chapter 15 Bankruptcy Proceedings.  And a question there has arisen whether or not the incumbent directors of various companies, which are subject to this Court's provisional liquidation orders, are allowed to oppose the application for recognition.  And this raises some very important questions, obviously, and they are questions we have to deal with quickly because we are today the 14th of June, which is only half of June left, sorry, 14th of May, we've only got half of May left and then only about a week or so of June, so we

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

EXHIBIT

3

2

need to get on with giving judgment in this court, and I am going to do that today, even though it may not be very tidy.

So, the applications that I've had to deal with come from three quarters, although they cover substantially the same ground.

The first application in time was filed by what we know in these proceedings as Campbells Companies.  Now Campbells is of course a law firm here, and Campbells represent these companies and there are some, I think it is 25 companies, I believe, and we will have a look at their application first.  That's the first application that was in time, and so we deal with that one first.  And those Applicants which the lead company is Bright Team Global Limited and 24 other companies, they applied for the following orders and directions, and I summarize, I don't set them out in full:

"1.  Where the powers of the directors have been displaced by the appointment of joint provisional liquidators with respect to the affairs of the companies, the directors' residual powers are not solely limited to opposing the making of a liquidation order.  The directors retain the power to cause a company to appear in foreign recognition proceedings to

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

3

challenge any application by the joint provisional

liquidators for recognition and associated relief from

the foreign court."

There is another declaration which they

seek which we don't need to get into now, I don't

think.

And the grounds for their application

were as follows:

There was a provisional liquidation order

made in respect of Bright Team Global Limited and those

24 related entities known as the Campbells Companies or

Campbells Respondents, and what had happened was that

on the 5th of January 2026, the Attorney General of the

BVI commenced proceedings pursuant to sections

162(1)(b) and (c) of the Insolvency Act 2003 as

amended, for the appointment of Joint Liquidators over

each of the Campbells Respondents.  And at the same

time, in parallel, the Attorney General filed

applications in these proceedings pursuant to section

170 of the Insolvency Act, for the appointment of Joint

Provisional Liquidators pending the determination of

the Liquidation Applications.

And then by orders dated the 9th of

January 2026, continued on the 29th of January 2026,

this Court appointed Joint Provisional Liquidators to

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

4

each of the Campbells Companies.

And a question has arisen in the US Chapter 15 recognition proceedings commenced by the Joint Provisional Liquidators in the United States Bankruptcy Court for the Southern District of New York, as to the scope of the residuary powers of the directors of the Campbells Companies, following the BVI orders appointing the Joint Provisional Liquidators.  I might just refer to them as the JPLs for short going forward.

And the question is raised in the declaration that has been made by a BVI lawyer as an expert, Mr. Andrew Barrington Chissick, filed on the 8th of April 2026 in support of the recognition proceedings.  Now Mr. Chissick is a BVI legal practitioner of, I would add, many years standing, and he is a partner of Walkers (Europe), who serves as the partner primarily responsible for the matter at Walkers and who acts as legal counsel to the JPLs in connection with these proceedings.

Now, at the hearing of the JPLs' motion for interim relief in those US proceedings on the 22nd of April 2026, presiding Judge Glenn commented that the extent of the residuary powers is a matter of BVI law. And the Campbells Parties say that this question is

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

5

suitable for determination by the BVI Court as a
discrete single issue, since its resolution will
clarify the procedural and substantive rights of the
directors and the JPLs.  And the issue they frame is as
follows:

"Where the powers of the directors have
been displaced by the appointment of joint provisional
liquidators with respect to the affairs of the
companies, are the directors' residual powers limited
to opposing the making of a liquidation order or do
they extend further including the power to cause a
company to appear in foreign recognition proceedings to
challenge any application by the JPLs for recognition
and associated relief from the foreign court."

Now, the Campbells Companies submit that
section 170 of the Insolvency Act empowers the Court to
appoint provisional liquidators on such terms and with
such powers as the Court considers appropriate,
including where such appointment is necessary to
maintain the value of assets owned or managed by the
company, or is otherwise required in the public
interest.

They point out that section 171 of the
Act provides that the provisional liquidator has the
rights and powers of a liquidator to the extent

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

6

necessary to maintain the value of the assets owned or managed by the company, or to carry out the functions for which he or she was appointed, subject to the terms of the order of appointment, and any subsequent amendments as ordered by this Court.

Pursuant to the BVI orders, the JPLs, jointly and severally, possess the rights and powers of a liquidator to the extent necessary to maintain the value of the Campbells Respondents assets, and to carry out the functions for which they are appointed.

They say that the BVI orders confer upon the JPLs authority to, amongst other things, investigate the Campbells Companies' affairs, preserve assets, and seek assistance and co-operation in foreign jurisdictions. Additionally, they provide, in material part, that the powers expressly granted to the JPLs are to the exclusion of any power exercised or purported to be exercised by any existing director of each of the Campbells Companies.

They say that consistent with the terms of the BVI Orders, the directors and other officers of each of the Campbells Companies remain in office but have ceased, in material part, to have any authority to exercise any powers, functions or duties in relation to the affairs of the Campbells Companies, such powers

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

7

having been conferred on the JPLs pursuant to the BVI Orders, save for the Residuary Powers.

They go on to say that the JPLs advance a narrow construction of the Residuary Powers, contending that following the terms of the BVI Orders which expressly confer the powers of the directors exclusively upon the JPLs, the only Residuary Powers retained by the directors are the power to challenge the liquidation and/or the appointment of the provisional liquidators themselves.  On this construction, the directors have no standing or authority to take any other action in respect of the Campbells Companies, including, but not limited to opposing foreign recognition proceedings, absent the prior consent of the JPLs or an order of this Court.

And the Campbells Companies contend that the BVI Orders do not support the JPLs' construction of the Residuary Powers and that, as a matter of law, the directors retain Residuary Powers that extend beyond the mere right to challenge the JPLs' appointment and/or the making of a liquidation order in the BVI, and encompass other forms of legal challenge to the acts of the JPLs such as opposing foreign recognition proceedings on behalf of the Campbells Respondents.

Now, there is a couple of other things

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

8

which the Campbells Companies applied for which again I don't think are before the Court today.  They may come before the Court, but they are not, they weren't encompassed in the submissions I heard, so I won't deal with them.

The second application before the Court is one brought by two other companies called Amber Hill and Lateral Bridge, which are also the subject of the provisional liquidation order.  That application was brought by the law firm, the legal practitioners Kobre & Kim, so we will call them the K&K Companies, and that application made on the 1st of May 2026.  And in essence, they are seeking a declaration that the Order dated the 9th of January appointing the JPLs over the K&K Companies, does not prevent those companies' directors from exercising residuary powers extending to appear in foreign recognition proceedings to challenge any application by the JPLs for recognition of these proceedings and associated relief from the foreign court.

In other words, exactly the same issue. And, in fact, the grounds put forward by the K&K Companies are materially the same and in fact almost identical, in many respects completely identical to the Campbells grounds, so I won't repeat them here.

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

9

Then the third application before the Court is an application dated the 4th of May 2026 by the JPLs.  And there the JPLs, Mr. Paul Pretlove and Mr. David Standish, they applied as Joint Provisional Liquidators of all those various companies, seeking directions and orders from the Court pursuant to various provisions of the Insolvency Act as well as paragraph 3(L), I think it is, of the Appointment Orders, for various things to be clarified.  And they are basically as follows:

1.  The directors of each of the Companies do have authority in the name of the Companies to oppose or interfere with the exercise by the JPLs of the powers granted to them pursuant to paragraph 3 of the Appointment Orders, including:

(a)  The JPLs' powers under paragraph 3a of the Appointment Orders to take possession of and preserve the books and records of each Company;

(b) the JPLs' powers under paragraph 3b of the Appointment Orders to take such steps as may be necessary to protect the assets of the Company from removal or dissipation;

(c) the JPLs' powers under paragraph 3c of the Appointment Orders to seek recognition (or its equivalent) of the Applicants' Appointment in the

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

10

United States, the United Kingdom, Singapore, Hong Kong, Taiwan, Thailand and Cambodia or elsewhere for the purposes of securing, realising and remitting assets to the control of the JPLs and for the purpose of obtaining access to and control of the records of each Company;

(d) the JPLs' powers under paragraph 3g of the Appointing Orders to take all necessary steps to obtain from any person documents or copy documents which belong to the Companies or have been created or maintained on their behalf or which the Company has a right to obtain or inspect; and

(e) the JPLs' powers under 3i of the Appointment Orders to investigate the affairs of the Company so far as necessary to protect and, if necessary, retrieve the assets and records of the Company."

And then a number of other provisions, including that Mr. Cosimo Borrelli does or does not have the ability to exercise the powers of a director on behalf of the various Campbells Companies, and various other orders, consequential orders such as costs. Nobody has addressed me on costs and we won't deal with that today, but doubtless we will get into that in due course.

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

11

I heard submissions from very eminent and learned counsel, persuasive submissions, excellent submissions from three sets of KCs and Mr. Tyers-Smith, also excellent, so I've had the opportunity to consider those submissions, including what they have written in their skeleton arguments.

Now, Mr. Gledhill, KC, he stressed a number of things and I want to just highlight these in the highest possible form.

There are three basic matters that I have to be wary of.

The first is that ultimately, the meaning of the, or the extent of the Residuary Powers of the directors, they are a matter of construction of the Appointment Order only.  That's his main point.

His second point is that the various case law authorities which have been brought to my attention in relation to English and other common law jurisdictions, they all touch and concern different statutory regimes.

Thirdly, he was at pains to anticipate some kind of contempt proceeding and he urged that for contempt orders to proceed, then penal provisions need to be clear, unambiguous, and various submissions of that nature.

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

12

Let me just say, we are not going to get into contempt today.  It is certainly not before the Court today.  Whether contempt is something that needs to be looked at later is something that can be looked at later.  Of course, pegs need to be placed on the map, as it were, in terms of contempt, but they are not really issues for today at all.

Now, Mr. Gledhill took me to the JPL Order and he argued very persuasively, that in essence, what the effect of that order all up is, seen in the round, is that in terms of the affairs of the Company and its assets, both of which are outside the jurisdiction of the BVI, then the JPLs do not have power.  Therefore, he says, the directors retain power.  And in essence, what he is saying there is that the directors' powers were never curtailed in relation to their ability to appear in US proceedings on behalf of the Company.  So, if it is that the JPLs are seeking recognition of these BVI proceedings and of their appointment as office holders in the United States, what that means is that the directors continue to be entitled to act on behalf of the Company to oppose those recognition proceedings.

That is what he says in the round and he draws heavily upon paragraph 9 of the Appointment Order

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

13

to make good that argument.  And just for the record,
paragraph 9 was in the following terms:

"The powers set out in paragraph 3 above
are to the exclusion of any power exercised or
purported to be exercised by any existing director of
the Company, insofar as such power concerns the affairs
of the Company and its assets within the jurisdiction
of the Virgin Islands."

So he considers that to be a pivotal
provision of the Appointing Order.

Now, as we will see, that's not really
the be all and the end all, however.  And Mr. Gledhill
also points out that there is a distinction between,
under BVI statute there is a distinction between a
liquidation order and a provisional liquidation order.
And he says that in relation to a liquidation order,
such a liquidation order divests directors of their
rights as directors and vests them in a liquidator with
the directors then only retaining residual powers as
recognised by the Act.

So the effect of liquidation is spoken to
in section 175(1) of our Insolvency Act.  Now by
liquidation, we mean when a company is placed into
liquidation.  And by that, what we have is it says
that:

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

14

"Subject to subsection (2), with effect
from the commencement of the liquidation of a company,"
which is we all know the date of appointment of a
liquidator --

"(a) the liquidator has custody and
control of the assets of a company;

(b) the directors and other officers of
the company remain in office but they cease to have any
powers, functions or duties other than those required
or permitted under this Part or authorised by the
liquidator."

And there are a few more provisions in
175, but that is the key one.

So basically, what it is, is that the
directors remain in office, the directors and officers
remain in office, but they cease to have powers,
functions and duties, except those required or
permitted under this Part, or authorised by the
liquidator.

Now, leaving aside the 'authorised by the
liquidator', which is of course an exception, statutory
exception, it is, I think, common ground that one of
the other powers that they have is to challenge, that
is, to apply to set aside or vary or appeal from, a
liquidation order.  So it's very clear that they have

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

15

those, liquidation order, that is what happens and the directors' powers and functions and duties are divested at that point.

Now, he says that is different from when a company is placed in provisional liquidation. Because in section 171, it provides there that:

"Subject to subsection (2), a provisional liquidator has the rights and powers of a liquidator to the extent necessary to maintain the value of the assets owned or managed by the company or to carry out the functions for which he or she was appointed."

In subsection (2):

"The Court may limit the powers of a provisional liquidator in such manner and at such times as it considers fit."

So what it's basically saying is that this is very much a limited remit to provisional liquidators, and the remit is essentially limited to the powers that the Court vests in the provisional liquidator by the appointment order, and then it is only on a very narrow basis that those powers are for the maintenance of the value of the assets owned or managed by the company, and to carry out the functions for which he was appointed, in other words, as designated by the court order.

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

16

So he is saying it's very much more limited.  And the corollary of that is, and it's important for his analysis, is that the directors retain all other powers.  So on his view, the directors retain more powers than just appealing a JPL appointment order, or challenging it, or varying it, but they can carry on doing a lot of things in the name of the company.  And they can do that, and what they don't need to tread on or trespass on is the very narrow remit of the JPLs.  They remain in office and they remain functioning as directors and officers. That's his case.

And he says in fact, section 9 of the court's Appointment Order here, basically underlines that and it restricts, in fact, the functions of the JPLs to dealing with the affairs of the Company and the assets of the Company in the BVI.  So the affairs of the Company in the BVI and the assets of the Company in the BVI.  That's what he says.  He says otherwise it wouldn't make any sense, because you wouldn't need it otherwise, it would be redundant.  If it's just stipulating a position as a matter of law, then you wouldn't need paragraph 9.  So it is doing something more than just stipulating a position.  And it's stripping down, constraining the powers of a liquidator

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

17

further.

So that is a very powerful and persuasive argument which Mr. Gledhill advanced.

Now, Mr. Gibbon described this as a seductive, I may be misusing his words, a seductive primrose path which he said was wrong.  And Mr. Dennis described it as specious and I was taken to various reasons why that was the case.  So let us have a quick look at those.

Mr. Gibbon pointed out that you don't just look at what the order has to say.  He took me to a case called Pan Petroleum and Yinka, where provisions or principles for the construction of orders are summarised.  And two of those main principles are as follows.  It says:

"The sole question for the Court is what the Order means, so that issues as to whether it should have been granted and if so in what terms, are not relevant to construction."

Nobody disagrees with that here.  In relation to the K&K Companies, they were suggesting that actually, the rather strong basis upon which the JPL Order was made in respect of the Campbells Companies doesn't apply to them.  And I challenged him twice, I think, to take me to the logical conclusion of

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

18

what he wanted say about that.  He didn't actually want to say anything apart from that his clients are in a slightly different position.  He didn't take me further.  He wouldn't go so far as to say that the order shouldn't have been made or in fact that a different regime was carved out in the JPL order, from the Campbells Companies.  He accepts that a single regime applies to both the Campbells Companies and the K&K Companies.  And we are not worried here about whether or not the order should have been made at all. It was made and we just have to worry about what it means.

So that's the first principle.  The sole question for the Court is what the order means.

And the second principle, in that case it was actually stated as the third but for present purposes it remains our second principle.  It says:

"The words of the Order are to be given their natural and ordinary meaning and are to be construed in their context," now that's important, "in their context, including their historical context and with regard to the object of the Order."

So we can't just look at the terms of the order and walk up a primrose path into some golden sunset of meaning which is convenient to one party,

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

19

because that's what they want it to mean.  We have to look at the context, including the historical context and with regard to the object of the order.

And so Mr. Gibbon said what's the context of the order.  And the order was this.  When the order was made, there was an assumption that Mr. Chen was a director of the Campbells Companies.  Not Mr. Borrelli.  Now Mr. Borrelli we all know in this jurisdiction, he's an insolvency practitioner of very long standing and high repute, and he is a go-to man for lots of things related to insolvency, but like this one, not exactly in insolvency, so we shouldn't be surprised to see Mr. Borrelli in this position that he has as a director under some kind of power of attorney, which there are question marks about, okay, okay, we don't have go there now.  But then it's not Mr. Borrelli, not the good, clean Mr. Borrelli.  What we were dealing with was when Mr. Justice Mithani made the JPL Order, there was Mr. Chen as the director of these Campbells Companies.  And what we have there was that Mr. Chen is supposed to be, or this is the allegation anyway, and Mr. Gledhill slipped in that nobody was really arguing that Mr. Chen is a terrible person, or evil man, or something of that nature.  He let that slip but I don't take that as a formal concession at all.  But

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

20

basically, what the allegation is, is that Mr. Chen is the point man, the leader, the driver behind an appalling network of scam operators, operating ten or so scam compounds of forced labour in Cambodia, in which they indulge in the nefarious activities known as pig slaughtering, which is basically leading innocent people on on scam phone calls and other nasty tricks to empty their wallets of money on pretexts, romantic pretext, business pretext, any pretext along well plotted and carefully enacted conversation chains across the world.  And of course, this is all rather a gray industry in Cambodia doubtless because there is no actual offence being committed in Cambodia, because whatever offences are being committed are abroad.  But anyway, apparently this man Chen has been incarcerated in the PRC as a result of his activities, which also included forced labour and incarceration basically, the deprivement of liberty in compounds and forcing people to operate scams; and torture, apparently.  And there are very many, very lurid allegations out there against Mr. Chen.  And apparently scams that he has been running, they have been mixed in with quasi-legitimate enterprises, or certainly in the Far East legitimate like casinos and gambling, but other and more legitimate activities like banking activities, and

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

21

other activities.  But of course Mr. Chen has apparently got a whole string of companies, including BVI companies, around the world, through which vast sums of money have been laundered, which is again of course also terrible and wrong, bad.  But he's been mixing this money up with legitimately made money, all part of a laundering, and he has also been spraying this money in such a way to paint it in a different light, which is apparently a different activity in laundering.

So this is all at the forefront of very nefarious activities of which he has been alleged.  And what is more, Mr. Chen has found himself the object of sanctions proposed by OFAC in the US, and I think it's called OFSI in the UK, whereby basically it prevents other people dealing with the assets linked to Mr. Chen.  So the Campbells Companies, for example, are apparently caught in the sanctions although Amber Hill and the other K&K Company apparently are not sanctioned because they apparently are not owned by or controlled by Mr. Chen, although their activities had, at least in one respect in one of these companies, been linked to them in terms of cryptocurrency activities.

So what we have here is a lot of allegations made against Mr. Chen of the strongest,

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

22

most egregious kind of really the worst of the worst conduct you could ever expect to see on the international commercial stage.  And it's also very rare for such conduct to see this level of sanctions being applied.

I have to say here, of course, that sanctions are a political measure imposed by the Executive.  And the Executive executes and it does so, and it does so within parameters.  But those parameters are, generally speaking, not judicial parameters.  Those are political steps which are taken.  The court of laws remit is slightly different.  A court has to act judiciously.  That is, on the basis of evidence and the balance of probabilities, and the rules of evidence.  So just because somebody is thought to be a terrible person and allegations abound against him, and just because he is sanctioned doesn't of course mean that the court is sufficiently satisfied that it can use its own powers against that individual.

Nonetheless, what has happened here with the terrible background of Mr. Chen placed before the Court, then the JPL Order was made appointing the JPLs.  So the context was, was an assumption that Mr. Chen was a director or indeed the sole director of at least the Campbells Companies.  Not the good, clean Mr. Borrelli

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

23

but Mr. Chen.  That was the context.  So we then have to look at what was going through the mind of the Court, what was the Court's intention objectively seen when it made the JPL Order.  And Mr. Gibbon submitted that the very purpose of the JPL Order of the Court was to take those companies out of the control of the directors of those Companies.  That is, away from Mr. Chen and his associates.  And his point is the order cannot be construed in a vacuum.  Now that's very important because Mr. Gledhill, and to again adopt Mr. Gibbon's description of a primrose path, Mr. Gledhill walks a primrose path through that order, actually from the back of the order to the front, when you think about it, as Mr. Gibbon also said looking at it from the wrong end of the telescope.  But he walks this primrose path ignoring the context of Mr. Chen being this apparently dreadful fraudster, criminal mastermind, pig slaughtering, scam operating individual who is sanctioned.  He wants to leave all that out of the equation and the context and just look at the terms of the order.

Well, I know which is the more protracted line to take, and that is Mr. Gibbon's line.  You can't construe an order in a vacuum.  And his case Pan Petroleum is the authority for that.  No authority has

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

24

been laid in front of me to show that that's wrong.

Then Mr. Gibbon also pointed out that, and again this is so trite but he has an authority to back him up on this, the Kensington and Montrow case, is that a liquidator, presumably a JPL as well, for him to function effectively in order to preserve the assets, he needs to know the whereabouts of those assets.

We live in a world where sometimes basic things need to be stated. We don't only now live in an upside down world. It has been with us for a very long time. In fact, we need only turn into the opening act, Scene 1 of Macbeth in Shakespeare where the three witches say "fair is foul and foul is fair, hover through the fog and filthy air."

Now that applies to daily life of the BVI Commercial Court. Everything is upside down. Well, yes, they need to know the whereabouts of the assets. They need to have the Companies taken out of the control of the directors who are suspected of doing wrongdoing, and they need to find out where the assets are. So they need various powers.

So Mr. Gibbon therefore goes to the provisions of section 171(1) of the Insolvency Act, and he says there that it is made plain as day, not fog,

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

25

not filthy air, plain as day that:

"The provisional liquidator has the
rights and powers of a liquidator to the extent
necessary to maintain the value of the assets owned or
managed by the company or to carry out the functions
for which he or she has been appointed."

He says you can get from that, that the
Appointing Order for JPLs, is prime, that order has
primacy.  It's important.

The other thing which you get from it is
the effect and necessity.  And he says that if the
provisional liquidators need powers, they have them.
And he makes a further point which comes out of 171(1),
that the provisional liquidator alone has those powers
and rights.  If he has them, nobody else does.  That's
a strong thing to say.  It's true.  It's obvious.
Because otherwise it's a bare recipe for confusion.

Then he goes on to say that in 171(2) it
says:

"The Court may limit the powers of the
provisional liquidator in such manner and at such time
as it considers fit."

In other words, the powers of the
provisional liquidator are under the control of the
Court.  Now that's also very important.

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

26

And then what we have to do is we have to think what is it that the JPLs are really trying to do in New York.  All they are doing is they are trying to get these BVI proceedings recognised so that their appointment as JPLs is also recognised so that they can take steps in New York to investigate the assets and dealings of the Company, and so that they can get in those assets and secure them.  That is all that they want to do.  And they do that in the context where, as the Attorney General has made before Justice Mithani, there was a need to take immediate control of the Companies including that there is a real and substantial risk that, absent the immediate appointment of provisional liquidators, assets held by or through the Companies will be transferred, concealed or dissipated, and documents will be destroyed or concealed.  And the appointment of provisional liquidators will immediately remove control from Mr. Chen and his associates, and place the Companies under the supervision and control of officers of this Court, thereby protecting the integrity of any investigation and preserving assets for the benefit of the victims of Mr. Chen and the Prince Group's fraudulent and criminal activities.

That's the point of the JPL Order.  And

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

27

as Justice Mithani thought on the material presented by the Attorney General, the case for the appointment of provisional liquidators is overwhelming, subject of course to any disclosure matters that the AG might like to bring to the Court's attention.

Now I have to say, of course, that whether or not at the end of the day when you look at all the evidence the case for the appointment of a liquidator is overwhelming, that's another matter.  But certainly from the case of the appointment of provisional liquidators, that appears to the Court, Justice Mithani, to be overwhelming.

Now, what this means is right at the heart of the Court's consideration when it made the JPL Order, was removing control of those Companies from their directors.  The Court expected the directors, whoever they might be, to be prevented from continuing to be in control of the subject Companies.  And as Mr. Gibbon says, that if you give power to the JPLs it was to be given to them and not to anybody else.

So what we had is the Defendant saying that they are entitled to go to the US to instruct the Companies, the directors are saying this, to instruct the Companies to oppose the recognition of this Order. And they say they are allowed to do that on

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

28

Mr. Gledhill's interpretation, which Mr. Tyers-Smith has adopted as well.  And Mr. Gibbon strongly disagrees with that.  And he says that not only do you have to look at the context of the Order, and we will get on to some of the powers in a minute of the Order referred to, but he also looked at the general treatment of similar provisions in England and other Commonwealth jurisdictions.

Now, of course Mr. Gledhill is right that those statutory regimes are slightly different and their provisions are slightly different.  But the overall scheme, it has to be said, is very similar and the Court can look at it for instruction.  So for example, the first case we can look at is a decision in 1972, a case called re Union Insurance in the English Chancery Division by Plowman J, as he then was, where the English Court accepted, or said this:

"The respondent's submission was that the appointment of a provisional liquidator automatically put an end to the authority of the company's directors to instruct solicitors and counsel to represent it and that the solicitors purporting to act on its behalf were therefore liable to pay the respondents' costs personally.  It is of course well settled that on a winding up the board of directors of a company becomes

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

29

functus officio and its powers are assumed by the liquidator.  My attention was drawn to In re Mawcon [1969] where Pennycuick J stated in effect that the appointment of a provisional liquidator had the same result.  No doubt that is so, but it is common ground that notwithstanding the appointment of a provisional liquidator, the board has some residuary powers, for example it can unquestionably instruct solicitors and counsel to oppose the current petition and, if a winding-up order is made, to appeal against it.

The issue is to the extent of those residuary powers and, in particular whether they extend to the launching of the present motion.  I think that it may sometimes be helpful to test the matter by considering the other side of the coin, namely, to inquire whether the power which the board is said to have lost is one which can be said to have been assumed by the liquidator.  If the answer is that it cannot, that may be a good reason for saying that the board still retains it.  Clearly, for example, as I have already indicated, the power to instruct solicitors and counsel on the hearing of the winding-up petition is not a power which anybody could suggest has passed to the provisional liquidator and therefore the board retains it."

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

30

Now pausing there, first of all, what we have from that passage is that the appointment of the provisional liquidator has the same result as the appointment of a liquidator, i.e., that the appointment automatically puts an end to the authority of the company's directors to instruct solicitors and counsel to represent it.  So basically, it automatically ends the authority of the company's directors to do acts on behalf of the company.  That's the first thing.  That's the general principle.

The second thing is that the board, the directors, retain residuary powers and the example that they come up with is to oppose a winding up application or to appeal a winding up order made.  They leave open, or the board there left it open that there could be other things which the residuary powers could include.  And then they postulated a test which they said 'sometimes' might be helpful.  Not all the time, but sometimes.  And they give this example that if a power has, well the example they gave is if, for example, the power to instruct solicitors on the hearing of the winding up petition has been retained by the directors, that means that it hasn't passed the provisional liquidator.  Fine, that's one example.

Mr. Gibbon says this particular test is

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

31

not a universal test and he said that if the power has expressly been given to a liquidator, the order will not give the liquidator power to oppose his own power. So for example, if the order gives the power to provisional liquidators to enter a building belonging to the company, it will be nonsensical to say that the power gives the liquidator the power to oppose himself. By extension, it will make no sense to say the directors have retained the power to oppose the provisional liquidator's exercise of that power to enter the property.  And he went on to say that if that was what was meant, it will mean that any power can be opposed in a disruptive way.

And that's got to be right when you think about it.  And what we seem to have on the authorities is a problem and a solution.  The problem is that a liquidation order and a provisional liquidation order, takes the powers away from a director, from the board, to act on behalf of the company.  And that's a very wide-ranging power which has been removed from the board.  But in order to enable the justice of an appointment order or a winding up order to be adjudicated by the Court, you necessarily need two sides.  And the best people to argue against it are obviously the directors.  So it would basically prevent

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

32

justice from taking place if nobody could step up to

oppose such an application, and that would simply be a

ridiculous result.  So pragmatically, and for the

reasons of both procedural and substantive justice, it

is necessary conceptually that somebody should retain

the power on behalf of the company to oppose the

application.  And the logical solution that has been

found is to say that the directors have it.

Now, I've spent a paragraph or so talking

through that.  But what it comes down to is this, and

there is an authority for this and this is one of the

Commonwealth authorities which Mr. Gibbon was referring

to.  I think it's the case of Diamond Fuel, that might

not be Commonwealth, it might be English, the Diamond

Fuel case.  And also the case of Hin Leong, I think it

is, from Malaysia, and in particular the phrase used

there at paragraph 56, read as follows:

"In substance, an application challenging

the making of a judicial management order," for that

read 'JPL Order', "would challenge the 'very juridical

basis' on which such management powers of the directors

have been removed, i.e., upon the appointment of an

interim judicial manager, judicial manager, provisional

liquidator and/or liquidator."

So basically, the residual power enables

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

33

the directors on behalf of the company to challenge the very juridical basis upon which the JPL Order was made. It doesn't allow the directors to challenge the exercise of all and sundry powers that the order has granted.  The residuary power is there to challenge the very juridical basis upon which the order was made in the first place.

Now, when you look then at the order of the Court, I said we will come to the Order of the Court.  Basically, what we had -- let's go to that Order, shall we.  The operative provisions are to be found in paragraph 2 and paragraph 3 of the order. Paragraph 2 is short.  So paragraph 2 says:

"The Joint Provisional Liquidators have the rights and powers of a liquidator to the extent necessary to maintain the value of the assets owned by the Company and to carry out the functions for which they are appointed."

Okay, so this tracks the wording in the Act, but it also sets out not only what the powers are, the rights and powers are, but it also sets out an interpretative hermeneutic, in other words, how do you read this order.  And you read this order that the JPLs are to have these powers so that they can maintain the value of the assets in the Company and to carry out the

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

34

functions which the Order has given them.

Those are specific powers.  Then we have additional powers, because it says so.  In addition to the powers outlined in 2, in 3 you have more powers. And those powers are a very standard list of things which include to gain entry to the Company's premises. Those premises don't necessarily have to be in the BVI, they could be anywhere.  To take possession and preserve the books and records of the company.  Again, they could be anywhere.  They've got the power to do that.  They could exercise that power.  They might not, for example, be able to knock on a warehouse in New York and say we are the directors or we are the JPLs, we have to come in and that pile of books and records in the corner are ours and we are taking it.  They can't do that necessarily under New York law.  They've got the power to do it under our law, our Act, they might not be able to do that under New York law.  But we come down to what happens then.

The next power is to identify assets. And then the third one is to seek the recognition or its equivalent, of their appointment in the US, UK, Singapore, Hong Kong, Taiwan, Thailand, Cambodia or anywhere else, for the purposes of securing, realizing and remitting assets to the control and for the purpose

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

35

of obtaining access to and control of the records of the Company.

So they are again given an express power to seek recognition.  It's obvious why.  They need to get recognised elsewhere so that they can exercise the powers they have been given.

And then more powers in (d), to commence, continue, etc, legal proceedings in the name and on behalf of the companies.  And to vote shares in the companies.  To carry on the business of the companies.  To take all steps to obtain documents from people; to appoint agents; investigate the affairs.  A whole long list, retain and operate bank accounts.  They could draw down payments.  They could apply to this Court for directions.  That's (l), by the way, so I will come back to (l).  So that's the one they are coming to this Court under.  And do any other things, all other things as may be incidental to the exercise of legal functions and powers.  And they can co-operate with law enforcement and regulatory authorities here and in other jurisdictions.

So they can do an enormous amount of things.  Those are big powers which they have been given.  It has obviously been said that paragraph 9 cuts these powers down only to the affairs of the

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

36

Company in the BVI and the assets in the BVI.  Well frankly, that is a most unattractive proposition and it could only possibly be seen as coming from somebody who doesn't really deal with BVI companies on a regular basis.  I can understand that it might be said that a company in England might have such narrowness attached to it with the powers, etc.  But BVI companies are almost invariably used for holding assets which do things abroad and which operate abroad.  We do not have widget factories here in the BVI.  They are all somewhere else.

So saying that the JPLs' powers are only limited to the affairs of the Company within the jurisdiction of the BVI is to constrain the powers of the JPLs to the top of a pin.  It makes no sense.  It is an insanitary interpretation of this Court's order.

And we have to come back to the whole point and this is really what it all comes down to. The whole point of the JPLs Order is to take powers away from the directors of these Companies.  That is the whole point.  It is not an incidental accident of the power.  It is not some interesting ancillary effect of some pleasant complicated order which transfers the management of the company from one sensible person to another.  No.  This is asymmetric warfare, to be blunt

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

37

about it.  It's to rip these Companies away from those directors and give them into the hands of JPLs so those directors cannot harm those companies any more.  And we make no bones about it and we make no apology for it either.

That's the lens through which this has to be looked.  And the lens which was applied by Mr. Paul Dennis most ably when he said what you have to do is you have to read section 171 together with 175.  You have to see where it says that the JPL has the powers of a liquidator, you have to look at what the powers of the liquidator are, which are to be found in 175, with its little cut out for the remaining residuary powers of the directors.  Well that's precisely it, isn't it?  You have to read the two together.  And the lens is that what you've got is you've got powers being given to the JPLs by this court's order.  They can't necessarily use those powers because something else might need to happen, but they've got those powers.  And they have those powers to the exclusion of the directors.  The directors retain the residuary powers to challenge the very juridical basis for the Appointment Order itself, and no more.

Now, what they can do is that those directors can apply to this court and they might say

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

38

no, no, no, no, the recognition power is too broad for such and such a reason.  This Court must vary its order.  This Court must say that recognition should not be granted in such and such a case, or whatever, but what they can't do is to say we are going to oppose this in the US.  We don't, because they don't have the power to do it.  They've got the power to come here and persuade this Court to vary its order, but that is it.  They don't have a residuary power to go and obstruct, obstruct, obstruct, obstruct.  I read out, how many powers did I read out?  It went down from letter A to O, I think it was, did I say that, yes?  I am sure I did, from letter A to O, I don't know how many letters that is, I can't count.  It's an enormous amount of letters.

If their interpretation is right, then what their interpretation would have is, on most or all of them, then it would still have the directors being allowed to come and object to the use of those powers, not just in New York, but in Cambodia, Taiwan, Thailand, UK, anywhere else and obstruct, obstruct, obstruct, obstruct, and litigate until, Mr. Dennis used the milking analogy, until the cows come home and all the litigation funds dry out.  That's what unending directors' powers to obstruct will entail.

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

39

Now the directors will love, Mr. Chen will love to be able to do that, of course, because he doesn't want this to come to its natural conclusion. But that's not how things work.  These Companies have been ripped out of those directors' control purposely.

Now, so what then of this point which is taken are, the US bankruptcy provisions themselves allow a debtor company to appear on an order for recognition.  Well yes, it does.  I've been taken to a provision, a US provision which says something to that effect.  I am trying to look it up, I am trying to scroll down to it.  It says:

"Rule 1012.  Responsive Pleading in Cross-Border cases.

(a) Who may contest petition."  And that is both in capital letters, capitalized capital letters, in a very clear way.  It says:

"The debtor or any party in interest may contest a petition for recognition of a foreign proceeding."

Not just a debtor, but any party in interest.

Now, what this Rule 1012 cannot do, it cannot give the directors more power than this Court gives them or allows them to have.  Can't do that.  The

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

40

only entity which gives directors powers, two things, either it's BVI statute or it's this Court once we are in the insolvency context, forgetting the memo and arts of the company for the present purposes, which is like statute.  So it's just statute or it's this Court. It's not the New York Court.  It's not some federal set of rules.  All they can do is say who would be allowed to appear in front of their Court under their system.

So who is a debtor?  Well we have no US law on who comes in under their Rubric of a debtor, nor do we have evidence of New York law or US law on who is a person of interest.  Mr. Gibbon made that point, we don't have US law on that point.  We have no evidence. So it doesn't help us.  But just on the face of it, then even if the company by its directors can't appear in the US Court to oppose it, that apparently is not the end of it on the face of Rule 1012, because any party in interest can do that.  And as Mr. Gibbon has pointed out, the JPLs have got no problem with the directors as individuals or some other kind of interest, or maybe shareholders, going after the US Court and explaining why the recognition should not be granted.  But what he does have a problem with, and I am with him on it, is that the Company can't on the one hand speak through the JPLs and on the other hand,

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

41

janus-faced, speak against it through directors.  That would make a nonsense of the proceedings and would be a recipe for complete chaos, which is, of course, what Mr. Chen would want.  But we are not going to allow complete chaos to take hold.

So the Rule 1012 is neither here nor there.  It is not a source of power.  The source of power is BVI statute and the BVI Court's Orders.

Now coming back to this notorious paragraph 9, I don't read paragraph 9 as only limiting the JPLs to the affairs of the company in the BVI and the assets within the BVI.  The way I read that is that of course JPL can only do things with the powers it has, where it is allowed to do so; and the only place where it is allowed to do so is the BVI.  It still got those powers.  By having those powers, it has them to the exclusion of the directors.  It would need to get recognition from foreign courts to be able to use those powers.  That is the distinction.

So where does this take us?  It means, put simply, that the directors do not have the power to go in and oppose the recognition proceedings in the US if it is that they are doing so on behalf of the company.  If they have some other kind of interest and they can come within Rule 1012, fine, but they can't do

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

42

it on behalf of and in the name of the Company.

I think that answers the question, doesn't it learned Counsel?

MR. GIBBON:                My Lord, I am very much obliged and I am sure, speaking for my learned friends, in likewise saying that they are too.

I should stress, Your Lordship raised one point that costs might be for another day.  On the papers as far as I am aware, nobody was seeking costs anything other than in the provisional liquidation, I would be corrected if I am wrong about that.  So that's one consequential that you might ordinarily be expecting to hear, but I don't anticipate there would be any arguments about that.

THE COURT:                Okay.  Maybe what I need to do is frame my conclusion in terms of the actual question which was put.  You can all work it out, you are going to be liaising with each other on this and you are not going to come to any agreement, because lawyers don't agree on important things.  So maybe I ought to just look at the issue which has been defined in, I think it was paragraph 7 of the Campbells Notice of Application and the grounds.  And the issue was framed as follows:

"Where the powers of the directors have

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

43

been displaced by the appointment of joint provisional liquidators with respect to the affairs of the companies, are the directors' residual powers limited to opposing the making of a liquidation order or do they extend further including the power to cause a company to appear in foreign recognition proceedings to challenge any application by the JPLs for recognition and associated relief from the foreign court."

That's the question.  The way I would answer that is first of all, no, the directors' residual powers are not limited to opposing the making of the liquidation order because they also extend to the opposing of making a provisional liquidation order and to seeking its variation; and they also extend to appealing decisions in respect of those applications.

So that is how I answer that first power.

And then the second part:

"... or do they extend further including the power to cause a company to appear."

I would say they extend further to the extent that I've just indicated, but not including the power to cause a company to appear in foreign recognition proceedings to challenge any application by the JPLs for recognition and associated relief from the foreign court.

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

44

That's how I would answer that one.  So that power to cause the company to appear to challenge recognition proceedings, etc, no, the powers do not extend to that.

I don't think I have to answer any of the other formulations in the other Notice of Application, but if I am wrong on that, can counsel please point it out so I can answer the question now for finality's sake.

MR. GIBBON:                To make the position clear in relation to our application which you read out at an early stage of your judgment, My Lord, if I ask you to turn to page 13, it's simplest to look at it there in the Hearing Bundle.

THE COURT:                Okay.

MR. GIBBON:                As you recall, we had set out a number of paragraphs including 3c.  It was really for the avoidance of doubt, but I should make the point clear, I have focused my submissions on 3c.  I didn't address you specifically on the other points.  While I respectfully submit that the other points would follow based on what Your Lordship has said, I should in fairness and propriety say that that's not something any of the parties specifically addressed their comments on.  And indeed, Mr. Gledhill

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

45

in his skeleton argument, as I understand it, said those points aren't contested.  Well that's not the same as whether it would be helpful to have reference to those made because it might well be helpful for reasons you will recognise.  But I suspect his point is well, I haven't got a final view yet as to whether or not I've got anything to say about them until I know what the JPLs want to say about them.  And he will tell me if I paraphrased that incorrectly, but just fairly to put the positions of the parties before you straight away.

THE COURT:                Very good.  I need to deal therefore specifically with the orders and directions sought by the JPLs in their application.

So in terms of, and I am looking at the, for clarity sake, I am looking at the draft order for directions which is to be found starting at page 12 of Hearing Bundle 1, and then going on to page 13 where we have paragraph 1.  So the orders sought at paragraph 1, orders and directions sought at paragraph 1, namely, that:

"The directors of each of the Companies do not have authority in the name of such Company to oppose or interfere with the exercise by the JPLs of the powers granted to them pursuant to paragraph 3 of

46

the Appointment Orders," including various this and
that.

That order is granted.  That order and
direction is granted in those terms.

In relation to paragraph 2 which was
that, draft paragraph 2 was that:

"Mr. Cosimo Borrelli does/does not have
the ability to exercise the powers of a director on
behalf of the 25 BS/Campbells Companies," yes.

MR. GIBBON:                  That's the one
I haven't moved, My Lord, and the parties are agreed,
as Mr. Gledhill mentioned, that that wasn't being moved
in any respect today.

THE COURT:                  Isn't it
covered by the powers of the director?

MR. GIBBON:                  Well there is
an element of it, quite.  It gets into different
issues, I will say that straight away, because there's
factual questions about the circumstances which
Mr. Borrelli was appointed.  It's sufficient for the
purposes of the 9th of June that you make the
directions in 1, and I think being practical, I am sure
if I started making further submissions targeted at
Mr. Borrelli, Mr. Gledhill in particular would find
himself in a position of having to make responses to

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

47

that and we will be here longer.

THE COURT:              Paragraph 2,
the application reflected by paragraph 2 of the draft
order, that will remain on the file.

MR. GIBBON:              Yes.  We will
find a formulation, but in essence, yes.

THE COURT:              Yes, that
remains on the file.  That is basically adjourned sine
die with liberty to restore.

MR. GIBBON:              Very grateful.

THE COURT:              So the order
that you are getting on your application, Mr. Gibbon,
is the one formulated in paragraph 1.  Then does
anybody oppose the third one, which is the JPLs costs
of the JPLs Application re Standing be costs in the
provisional liquidation of the Companies?

MR. GLEDHILL:              In light of
Your Lordship's decision we can't make any submissions
to the contrary.

MR. TYERS-SMITH:          My Lord, the
same is the true of Amber Hill and Lateral Bridge.

THE COURT:              I don't
understand, you are saying you are making those
submissions?

MR. TYERS-SMITH:          Yes, My Lord,

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

48

sorry, the same position as applies to Amber Hill and Lateral Bridge.

THE COURT:                Mr. Gledhill, you had a rather nuanced submission in relation to costs there.  At this time of the afternoon, you mentioned earlier that I did have lunch.  I also spent some of my lunch preparing this rather impromptu judgment.  Consequently, my brain at least has been filled with other things, so I didn't get what you are saying.

MR. GLEDHILL:                I am so sorry if I wasn't clear.

In the light of the decision which Your Lordship has kindly rendered, we can't resist the proposal made in paragraph 3 of the Joint Provisional Liquidators draft minute of order.

THE COURT:                So that means, Mr. Gibbon, you have 3 in your draft order.

MR. GIBBON:                I am obliged, My Lord.

Just one last question, it may be that the answer to this is clear.

Kobre & Kim had their own separate application which is more or less in the same terms and that will formally have to be resolved by way of court

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

49

order.  I suspect the answer is whatever is said can simply be the reflection of what you've said should happen in relation to the declaration sought by Mr. Gledhill's clients.

THE COURT:            Let's have a look, because they sought a slightly different declaration.

MR. GIBBON:            Very slightly different formulation, yes.  It's page 81.

THE COURT:            They sought a declaration that:

"The order dated 9th of January 2026 appointing," these JPLs over the K&K Respondents, "do not prevent those directors from exercising residuary powers extending to appear in foreign recognition proceedings to challenge ..."

Essentially drafted rather cleverly. It's on the assumption that they do have residuary powers and they can't stop them using them.  So basically, not residuary powers to do that.  So I think that declaration, I think the way they phrase it is that the Court declines to make the declarations sought by the K&K Companies' application.

MR. TYERS-SMITH:       My Lord, we are happy with that.

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

50

THE COURT:                I think that's all we need to do.  The K&K Application is refused, or something along those lines.

MR. TYERS-SMITH:          Yes.

THE COURT:                Okay.

MR. GLEDHILL:             My Lord, before we rise, may I just raise one point with Your Lordship, and before doing that, just echoing Mr. Gibbon's comment in relation to the speedy dispatch with which Your Lordship has dealt with the matter.

When we were last before you on the 15th and 16th, sorry, the 16th and the 17th of April, that was before the initial Recognition Application was heard in the United States which then set the deadline of the 9th of June for the final hearing of that.  I am obviously very conscious of the work pressures on Your Lordship, but I did just want, if I may before we rise, to inquire whether it's your anticipation whether it's likely that you will be able to have a judgment on the substantive application that you heard four weeks ago, before the 9th of June.

THE COURT:                I'm supposed to be receiving your written submissions tomorrow, aren't I?

MR. GLEDHILL:             Final closing

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

51

submissions are coming to Your Lordship tomorrow, that is correct.

THE COURT:                    Right.  It depends how simple it will all appear to me when I read your final submissions.  Frankly, one of the reasons I ask for those closing written submissions is because it seems to me there is a bit of a difference.  I think I have alluded to it already, I deliberately alluded to it earlier.  There is a difference between what the Executive does in terms of sanctioning people and the grounds upon which they sanction people, which could be rather gung ho sometimes, and for good reason gung ho. And what a Court is supposed to do when it puts companies into liquidation.  There is a difference between acting judicially and acting executively.  And one of the difficulties that I have is that, you know, I have to weigh up whether the so-called evidence in front of me is strong enough to move the Court, whether there is any evidence at all in a strict sense and if there is, if it's strong enough to move the Court to wind the Companies up.  That's the main problem that I have and I need to get my head around that.

MR. GLEDHILL:                    My Lord, that's very helpful.  We entirely understand the fact that the decision which Your Lordship has to take is a difficult

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

52

one, having heard some important submissions in relation to some important policy questions during that hearing.  So we are grateful to Your Lordship for that indication.

THE COURT:                    Very good. Anything else, learned counsel?

MR. TYERS-SMITH:          My Lord, no.

THE COURT:                    Thank you very much.  We will take the adjournment now.  Have a pleasant evening.

(Hearing ended at 4:59 p.m.)

                              * * *

COMPUTER-AIDED TRANSCRIPT BY THE COURT REPORTING UNIT

**Case Number :BVIHCOM2026/0019**



**Submitted Date:13/01/2026 16:00**

**Filed Date:14/01/2026 08:30**

**Fees Paid:0.00**



**EXHIBIT**

4

**Case Number :BVIHCOM2026/0019**



IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0019

**Submitted Date:12/01/2026 13:36**

**Filed Date:12/01/2026 13:36**

**Fees Paid:0.00**

BETWEEN:

IN THE MATTER OF PRINCE GLOBAL HOLDINGS LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF THE LAWS OF THE VIRGIN ISLANDS.


THE ATTORNEY GENERAL

Applicant

-v-


PRINCE GLOBAL HOLDINGS LIMITED

Respondent

---

ORDER APPLICATION FOR JOINT PROVISIONAL LIQUIDATORS

---

BEFORE:    THE HONOURABLE JUSTICE ABBAS MITHANI

DATED:    THE 9th DAY OF JANUARY, 2026

ENTERED:    THE 12th DAY OF JANUARY, 2026

<u>PENAL NOTICE</u>

The effect of this Order is that the directors, former directors, office holders and former office holders of the Respondent, PRINCE GLOBAL HOLDINGS LIMITED ("the Company") are replaced by the joint provisional liquidators and that the directors, former directors, office holders and former office holders are prohibited from taking any action in relation to the Company's affairs without prior consent of the joint provisional liquidators.

If you, the directors, former directors, office holders and former office holders of the Company fail to comply with the terms of this order, proceedings may be commenced against you for contempt of court and you may be liable to be imprisoned, fined or have your assets seized.

**This order must be complied with by any person affected by it upon whom it is served. Any other person who knows of this order and does anything which helps or permits the directors, former directors, office holders and/or former office holders of the Company to breach its terms may also be held to be in contempt of Court and may be imprisoned, fined or have their assets seized.**

**UPON THE ORDINARY APPLICATION** filed by the Applicant on 5 January 2026 seeking the appointment of James Drury of Interpath (BVI) Limited, PO Box 4571, 4th Floor, LM Business Centre, Fish Lock Road, Road Town, Tortola, Virgin Islands, VG1110, Paul Pretlove and David Standish, both eligible overseas insolvency practitioner of Interpath Ltd, 10 Fleet Place, London EC4M 7RB, England as joint provisional liquidators of the Company pursuant to section 170 of the Insolvency Act 2003, ("**the Application**") coming on for hearing.

**AND UPON HEARING** Paul B. Dennis K.C. and with him Nadine Whyte Laing and Koya Ryan of O'Neal Webster for the Applicant.

**AND UPON** the Attorney General Dawn J. Smith being present.

**AND UPON** Mr. Paul Pretlove and Mr. James Drury, two of the proposed joint provisional liquidators being present.

**AND UPON READING** the Application, the originating application to appoint liquidators of the Company, the first affidavit of the Attorney General, the affidavit of Jeni-Lee Watson and the other documents on the Court file.

**AND UPON** the Application being heard ex parte.

**IT IS HEREBY ORDERED THAT:**

1.    James Drury, Paul Pretlove and David Standish be appointed jointly and severally as provisional liquidators (the **"Joint Provisional Liquidators"**) of the Company until further order.

2.    The Joint Provisional Liquidators have the rights and powers of a liquidator to the extent necessary to maintain the value of the assets owned by the Company and to carry out the functions for which they are appointed.

3. In addition to the powers outlined in 2 above, the Joint Provisional Liquidators shall have the following specific powers which may be exercised without further sanction or intervention of this Honourable Court:

    a. to gain entry to the Company's premises and take possession of and preserve the books and records of the Company;

    b. to identify any assets which may remain in the possession or control of the Company, and to take such steps as may be necessary to protect any such assets from removal or dissipation;

    c. to seek the recognition (or its equivalent) of the appointment of the Joint Provisional Liquidators in the United States, United Kingdom, Singapore, Hong Kong, Taiwan Thailand and Cambodia or elsewhere for the purposes of securing, realising and remitting assets to the control of the Joint Provisional Liquidators and for the purpose of obtaining access to and control of the records of the Company;

    d. to commence, continue, discontinue or defend, including by way of counterclaim or similar response, any action or other legal proceedings in the name and on behalf of the Company in so far as necessary to protect the assets and information of the Company including:

        (i) issuing proceedings against the directors, former directors, office holders and former office holders of the Company, if so advised.

        (ii) intervening (if so advised) in ongoing proceedings which involve the Company and/or its directors, former directors, office holders and/or its former office holders.

    e. to vote the shares of the Company in order to prevent the dissipation of its assets.

    f. to carry on the business of the Company so far as may be necessary for its beneficial provisional liquidation;

    g. to take all necessary steps to obtain from any person documents or copy documents which belong to the Company or have been created or maintained on its behalf or which the Company has a right to obtain or inspect.

    h. to appoint an agent including a solicitor, or accountant to do any business that the Joint Provisional Liquidators are unable to do themselves in discharge of their duties, or which can be more conveniently done by an agent;

i.    to investigate the affairs of the Company so far as necessary to protect and, if necessary, retrieve the assets and records of the Company;

j.    to retain, manage and operate the existing bank accounts of the Company including, without limitation, the power to change, remove and replace the signatories of these accounts and, where necessary, to open new bank accounts;

k.    The Joint Provisional Liquidators may draw down payments on account of their remuneration, expenses and disbursements from time to time at a rate of 80% of their time costs and 100% of their expenses and disbursements, subject to these being subsequently approved by the court, and in the event that such sums are not approved, the unapproved sums be repaid to the Company within 7 days;

l.    to apply to the Court for directions concerning any matter arising out of the exercise of the above powers; and

m.    to do all other things as may be incidental to the exercise of the above functions and powers.

n.    to consult and share information with the Applicant to facilitate effective cooperation in relation to potential and ongoing criminal investigations and prosecutions connected to the affairs of the Company.

o.    to cooperate and communicate with law enforcement and regulatory authorities in the Virgin Islands and in other jurisdictions.

4.    The Joint Provisional Liquidators are authorised and directed to implement the protocol for consultation and information sharing between them and the Applicant in the draft which is attached hereto ("the Protocol").

5.    Any disclosure of information by the Joint Provisional Liquidators to the Applicant made in good faith and in accordance with the Protocol shall be deemed authorised by the Court and shall not constitute a breach of duty, confidence, data protection obligations or contractual restrictions binding upon the Company.

6.    The Joint Provisional Liquidators shall not be required to disclose material subject to legal professional privilege or litigation privilege.

7.    The Joint Provisional Liquidators and the Applicant have liberty to apply on short notice for directions, variation or termination of the Protocol.

8.    The costs of the provisional liquidation, including the proper fees and disbursements of the Joint Provisional Liquidators and the Applicant's costs of complying with the Protocol be paid out of assets of the Company in priority to all other claims.

9.    The powers set out in paragraph 3 above are to the exclusion of any power exercised or purported to be exercised by any existing director of the Company in so far as such power concerns the affairs of the Company and its assets within the jurisdiction of the Virgin Islands.

10.    Save as provided in paragraph 3 above the Joint Provisional Liquidators may not exercise any of the powers set out at Schedule 2 to the Insolvency Act, 2003 without sanction of the court.

11.    Pursuant to section 174 of the Insolvency Act, 2003 alternatively pursuant to the inherent jurisdiction of the Court, all actions, suits or proceedings of any nature whatsoever against the Company be and are hereby restrained until further order of the Court.

12.    During the period of their appointment, any act required or authorized to be done by the Joint Provisional Liquidators may be done by any one or more of them.

13.    This order was made at a hearing without notice to the respondent.  There will be a further hearing in respect of the order on or before 29ᵗʰ January 2026 with a time estimate of 30 minutes, for directions only (the Return Date).

14.    The Joint Provisional Liquidators are to file and serve a report within one clear day before the Return Date summarising steps taken, any immediate concerns and recommended next steps.

15.    The Company is at liberty to apply to vary or discharge the order upon giving 72 hours' notice to the Applicant and the Joint Provisional Liquidators.

16.    The Joint Provisional Liquidators are at liberty to apply to vary or discharge the order if the allegations set out above are not substantiated or for some other reason upon giving 72 hours' notice to the Applicant and the Company.

17.   The Applicant is not required to give an undertaking in damages.

18.   The costs of this Application be costs in the provisional liquidation.

19.   The Joint Provisional Liquidators are not required to pay or provide security.

BY THE COURT



_____

REGISTRAR

**Protocol for Consultation and Information-Sharing Between the Liquidators and the Attorney General**

This Protocol is annexed to and forms part of the Order of the BVI Commercial Court (the **Court**) made on 9 January 2026 in Claim No. BVIHC (COM) 2026/0019 **("the Order")**. Capitalised terms bear the meanings given in the Order unless the context otherwise requires.

### 1. Purpose and status

This Protocol sets out a consultative framework between the Liquidators and the Attorney General to facilitate effective cooperation in the public interest, including in relation to potential and ongoing regulatory or criminal investigations and prosecutions connected to the affairs of Prince Global Holdings Limited **("the Company")** For the avoidance of doubt, this Protocol is made pursuant to and with the approval of the Court, and disclosures made in good faith in accordance with this Protocol are deemed authorised by the Court.

### 2. Guiding principles

The Liquidators shall remain independent and act in the interests of the Company's creditors as a whole and the integrity of the winding up. The Attorney General's participation under this Protocol is consultative and does not fetter the Liquidators' statutory powers or duties, nor the Attorney General's independent functions. Both parties shall conduct themselves with candour, proportionality and respect for legal professional privilege, confidentiality, data protection and rule of law.

Nothing in this Protocol is intended to limit or restrict the ability of the Company's stakeholders to constitute a creditors' committee.

### 3. Definitions

- Attorney General means the Attorney General of the Virgin Islands and includes designated officers acting on the Attorney General's behalf for the purposes of this Protocol.
- The Company means Prince Global Holdings Limited which is the subject of the Order.
- Confidential Information means non-public information concerning the Company, the liquidation, related investigations, counterparties and assets, including personal data and material subject to confidentiality obligations owed by the Company or the Liquidators.

- Privileged Material means material subject to legal professional privilege or litigation privilege, or any analogous protection recognised by the Court.

### 4. Appointment and representation

The Attorney General shall constitute a consultative committee and may nominate up to three designated representatives for liaison with the Liquidators, with at least one senior contact identified (the **AGs Committee**). The Attorney General may change representatives on notice to the Liquidators.

The AGs Committee shall serve alongside any creditors' committee (if one is formed), and the Liquidators shall have equal regard to the views expressed by both the AGs Committee and the creditors' committee (if formed).

### 5. Consultation framework

5.1 Meetings. The Liquidators shall convene regular consultation meetings (in person or virtual) with the Attorney General not less than once per quarter, and ad hoc meetings as reasonably required. The Liquidators shall chair meetings and circulate a brief agenda in advance. These meetings may be consolidated with meetings of the creditors' committee (if one is formed).

5.2 Attendance. The Liquidators may invite professional advisers and members of the liquidation team. The Attorney General may invite relevant law enforcement or regulatory personnel, provided confidentiality undertakings are observed.

5.3 Minutes. The Liquidators shall keep concise minutes recording attendees, topics discussed and any agreed actions, subject to privilege and sensitivity redactions where appropriate.

### 6. Reporting

6.1 Periodic reports. The Liquidators shall provide to the Attorney General a confidential report not less than once per quarter covering, to the extent appropriate and not prejudicial to the estate:

- status of asset identification, recovery actions and investigations;
- key applications to the Court and outcomes;
- known factual matters relevant to potential criminal offences or regulatory breaches; and
- anticipated steps in the next period.

6.2 Urgent matters. The Liquidators shall promptly notify the Attorney General of matters reasonably judged to be urgent, including (but not limited to) risk of dissipation, destruction of records, or flight of suspects.

6.3 Templates. The Liquidators may adopt reporting templates and may omit details where disclosure would prejudice recoveries, negotiations, privilege, or legal processes.

### 7. Information requests by the Attorney General

7.1 Scope. The Attorney General may request access to documents, data and information reasonably required in relation to the Company or related persons or entities.

7.2 Process. Requests shall be made in writing, identifying the categories sought, the purpose, and any timing sensitivities. The Liquidators shall acknowledge within 3 business days and respond within a reasonable time, taking into account volume, complexity and competing duties.

7.3 Reasonableness and sequencing. The Liquidators may propose reasonable narrowing, staging or alternative formats, including summaries or redactions, to protect privilege, confidentiality, commercial sensitivity, or the integrity of civil recovery efforts.

7.4 Court supervision. If disagreement arises which cannot be resolved promptly, either party may seek directions from the Court on short notice.

### 8. Authorised disclosures and gateways

8.1 Court authorisation. Subject to sections 9–12, the Liquidators are authorised by the Court to disclose Confidential Information to the Attorney General for the limited purposes of regulatory or criminal investigation and prosecution, restraint, confiscation, forfeiture, mutual legal assistance, and related protective measures, and to receive Confidential Information from the Attorney General for liquidation purposes.

8.2 Statutory gateways. To the extent any statutory or regulatory gateway is required for disclosure or use of information, the parties shall cooperate to identify and use such gateways, including by seeking further directions or orders of the Court as needed.

8.3 No breach. Disclosures made in good faith under this Protocol shall not constitute a breach of duty, confidence, data protection laws, or contractual restrictions binding on the Company, and the Liquidators shall have the protection of the Court accordingly.

### 9. Privilege and confidentiality

9.1 Privilege preserved. The Liquidators shall not be required to disclose Privileged Material. Any inadvertent disclosure shall not constitute a waiver of privilege, and the Attorney General shall promptly return or delete such material and refrain from review or use upon notification.

9.2 Common interest. Where appropriate, and subject to legal advice, the parties may agree that certain exchanges are made on a common interest or joint interest basis to preserve privilege.

9.3 Use restrictions. The Attorney General shall maintain Confidential Information in confidence and use it solely for lawful law enforcement, regulatory and public interest purposes. Dissemination shall be limited to personnel with a need to know who are bound by equivalent confidentiality obligations.

9.4 Protective measures. Upon reasonable request, the Attorney General shall implement protective measures for sensitive materials, including secure handling protocols, restricted circulation, and, where appropriate, applications to seal or redact in criminal or regulatory proceedings to avoid prejudice to the estate.

### 10. Data protection and personal data

The parties shall process personal data lawfully, fairly and securely, with appropriate technical and organisational measures. Where cross-border transfers are contemplated, the parties shall cooperate to ensure a lawful transfer mechanism and, where necessary, seek the Court's directions.

### 11. Preservation and holds

The Liquidators shall implement and maintain appropriate document preservation measures in respect of the Company's records. The Attorney General shall notify the Liquidators of any preservation requirements arising from criminal investigations or proceedings, including anticipated requests or production deadlines, to allow timely compliance.

### 12. Coordination to avoid prejudice and duplication

The parties shall coordinate to minimise prejudice to the estate, civil recoveries and criminal processes, including by sequencing steps, agreeing standstills where appropriate, and consulting on timing of public filings or applications likely to have cross-impact. The Liquidators' primary duty to protect and realise assets shall be respected.

### 13. Public statements and confidentiality vis-à-vis third parties

Public statements about the Company, the liquidation or related investigations shall be coordinated to the extent practicable. The Liquidators may make statements required by law or the Court or necessary to protect assets or correct the market. The Attorney General may make statements required in the exercise of public functions, having regard to the Liquidators' requests to withhold sensitive details.

### 14. Costs and resourcing

The reasonable costs incurred by the Liquidators in complying with this Protocol, including costs of retrieval, review, redaction, secure transmission and liaison, are costs of the liquidation. Where requests impose material incremental burdens, the parties shall confer on pragmatic staging or cost-efficient approaches and, failing agreement, may seek the Court's directions.

### 15. Non-fetter and independence

Nothing in this Protocol fetters or derogates from the Liquidators' statutory powers and duties, or from the Attorney General's independent decision-making. The consultative role does not confer any power of direction over the Liquidators.

### 16. Conflicts and recusals

If a conflict of interest arises affecting any representative, that person shall recuse from relevant consultations. The parties shall notify each other of any material conflicts that could affect the integrity of cooperation, and may seek the Court's directions where necessary.

### 17. International cooperation

Where the Attorney General is engaged in mutual legal assistance, or cooperation with foreign authorities, the parties shall consult on scope and timing to ensure that disclosures and steps taken are consistent

with this Protocol and do not unduly prejudice the liquidation or foreign proceedings. The Attorney General shall take reasonable steps, where feasible, to secure protective handling by foreign authorities of any Confidential Information provided.

### 18. Records and audit trail

The Liquidators shall maintain a record of disclosures made to the Attorney General under this Protocol sufficient to evidence compliance, subject to privilege. The Attorney General shall, upon reasonable request, confirm receipt and any onward lawful use or disclosure to other agencies.

### 19. Duration, variation and termination

This Protocol takes effect upon the making of the Order and continues until the earlier of dissolution of the Company or further order of the Court. It may be varied by written agreement between the Liquidators and the Attorney General approved by the Court, or otherwise by order of the Court. The Court may suspend or terminate this Protocol upon application by either party.

### 20. Notices

Formal notices under this Protocol shall be in writing and sent to the designated contacts of each party as notified from time to time. Operational communications may be conducted by secure electronic means.

### 21. Dispute resolution and directions

Any dispute arising under or in connection with this Protocol shall, in the first instance, be addressed through consultation. Failing prompt resolution, either party may apply to the Court for directions on short notice.

### 22. Safe harbour

No act or omission of the Liquidators done in good faith and with reasonable care in reliance on this Protocol, or any directions of the Court, shall give rise to personal liability. The Liquidators shall be entitled to the usual indemnities out of the assets of the Company.

---

**Schedule 1 – Illustrative categories of information for disclosure**

    A. Corporate records: constitutional documents, registers, organisational charts, officer and registered agent details.

    B. Financial records: bank statements, ledgers, invoices, loan agreements, asset registers, related party transactions.

    C. Communications: selected emails and messaging data from corporate systems relevant to suspected criminality.

    D. Counterparty materials: KYC files, contracts, correspondence with intermediaries and fiduciaries.

    E. Investigation work product: non-privileged factual memoranda, forensic accounting outputs, chain-of-custody logs.

    F. Court materials: statements of affairs, affidavits, pleadings and orders (including sealed materials as authorised).

    G. Asset tracing: non-privileged tracing schedules, dashboards, and summaries of restraints or recovery actions.

    H. Preservation: litigation hold notices and repositories metadata (to the extent disclosure assists law enforcement).

Disclosure of any category remains subject to sections 9–12 of the Protocol.

---

**Schedule 2 – Template quarterly consultation report (confidential)**

1. Executive summary and key developments.

2. Asset position: discoveries, realisations, restraints and pending recovery actions.

3. Investigations: factual findings, cooperating witnesses, outstanding enquiries.

4. Legal proceedings: applications filed or contemplated; coordination with foreign courts.

5. Law enforcement interface: requests received/made; disclosures; pending deadlines.

6. Risks and mitigants: dissipation risks, data loss risks, reputational issues.

7. Next steps and proposed timetable; matters requiring Attorney General input.

8. Appendices: schedules of documents disclosed; privilege log (if applicable).

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

BRITISH VIRGIN ISLANDS

COMMERCIAL DIVISION

CLAIM NO BVIHC (COM) 2026/0019

BETWEEN:

IN THE MATTER OF PRINCE GLOBAL HOLDINGS LIMITED

AND IN THE MATTER OF THE INSOLVENCY ACT, 2003 OF

THE LAWS OF THE VIRGIN ISLANDS.

THE ATTORNEY GENERAL

                                                                          Applicant

-v-

PRINCE GLOBAL HOLDINGS LIMITED

                                                                          Respondent

---

**ORDER ON APPLICATION FOR
JOINT PROVISIONAL LIQUIDATORS**

---



O'Neal
Webster

Legal Practitioners for the Applicant
2nd Floor Commerce House
181 Main Street
P.O. Box 961, Road Town, Tortola
British Virgin Islands VG 1110
Tel: (284) 393 5800 I Fax: (284) 393 5805
www.onealwebster.com



**VIRGIN ISLANDS**

# INSOLVENCY ACT

**Revised Edition**
showing the law as at 1 January 2020

This is a revised edition of the law, prepared by the Law Revision Commissioner
under the authority of the Law Revision Act 2014.

This edition contains a consolidation of the following laws—

Page

**INSOLVENCY ACT**                                                                                                       3

 Act 5 of 2003   ..   in force 16 August 2004 (S.I. 47/2004)
 Amended by Acts:  11 of 2004   ..   Paragraphs 2*(a)*, 2*(b)* and 4
             – in force 8 December 2006
             Remainder - 1 January 2006 (S.I. 57/2004)
        16 of 2004   ..   in force 1 January 2005
        19 of 2006   ..   in force 15 January 2007
         1 of 2008   ..   in force 1 February 2010 (S.I. 63/2009)
        14 of 2019   ..   in force 24 December 2019

**SEE STATUTORY INSTRUMENTS BOOKLET**

**EXHIBIT**

5



**VIRGIN ISLANDS**

# INSOLVENCY ACT

### Revised Edition
showing the law as at 1 January 2020

This is a revised edition of the law, prepared by the Law Revision Commissioner under the authority of the Law Revision Act 2014.

This edition contains a consolidation of the following laws—

|  | Page |
|---|---|
| **INSOLVENCY ACT** | 3 |

Act 5 of 2003 .. in force 16 August 2004 (S.I. 47/2004)
   Amended by Acts: 11 of 2004 .. Paragraphs 2*(a)*, 2*(b)* and 4
            – in force 8 December 2006
            Remainder - 1 January 2006 (S.I. 57/2004)
      16 of 2004 .. in force 1 January 2005
      19 of 2006 .. in force 15 January 2007
       1 of 2008 .. in force 1 February 2010 (S.I. 63/2009)
      14 of 2019 .. in force 24 December 2019

**SEE STATUTORY INSTRUMENTS BOOKLET**

Published in 2021
On the authority and on behalf of the Government of The Virgin Islands
by
The Regional Law Revision Centre Inc.

For information contact—

Attorney General's Chambers
Government of the Virgin Islands
P.O. Box 242
Road Town
Tortola, VG1110
British Virgin Islands

Tel: (284) 468 - 2960
Email: agc@gov.vg


Printed on the authority and on behalf of the Government of The Virgin Islands
by
The Regional Law Revision Centre Inc.
P.O. Box 1626, 5 Mar Building,
The Valley, AI-2640, Anguilla
Authorised Printers for this Revised Edition

# INSOLVENCY ACT

## ARRANGEMENT OF SECTIONS

### PART I

### PRELIMINARY PROVISIONS

SECTION
1.    Short title
2.    Interpretation
3.    Meaning of "company"
4.    Meaning of "subsidiary" and "holding company"
5.    Meaning of "connected person" and "related company"
6.    Meaning of "director"
7.    Meaning of "unlicensed financial services business"
8.    Meaning of "insolvent"
9.    Meaning of "creditor", "secured creditor" etc.
10.    Meaning of "liability"
11.    Admissible claims
12.    Non-admissible claims
13.    Meaning of "public document"

### PART II

### CREDITORS' ARRANGEMENTS

#### Division 1

#### *Interpretation*

14.    Interpretation for and scope of this Part
15.    Arrangements
16.    Remuneration of supervisor and interim supervisor
17.    Fixing of remuneration by Court
18.    Commission's rights in respect of a regulated person

#### Division 2

#### *Company Creditors' Arrangement*

19.    Interpretation and scope of Division

#### *Proposal and Interim Supervisor*

20.    Proposal for an arrangement by board
21.    Appointment of interim supervisor by board

4    *Insolvency Act*    LAW OF VIRGIN ISLANDS

Revision Date: 1 Jan 2020

22.    Appointment of interim supervisor, company in administration or liquidation
23.    Administrator or liquidator acting as interim supervisor
24.    Notification of appointment of interim supervisor
25.    Functions of interim supervisor and power to obtain information
26.    Amendment of proposal before creditors' meeting

### *Meeting of Creditors*

27.    Calling creditors' meeting
28.    Interim supervisor may require certain persons to attend creditors' meeting
29.    Attendance of  members and directors at creditors' meeting
30.    Business to be conducted at creditors' meeting
31.    Amendment or withdrawal of proposal at creditors' meeting
32.    Report on outcome of creditors' meeting
33.    Notification of appointment of supervisor
34.    Effect of approval of proposal

### *Implementation of Arrangement*

35.    Supervisor to be given possession of assets included in arrangement
36.    Supervisor's duty to keep accounting records
37.    Supervisor  to prepare and send out regular accounts and reports
38.    Completion or premature termination of arrangement

### *Modification of Arrangement*

39.    Supervisor may propose modification of arrangement
40.    Modification of arrangement

### *Applications to Court*

41.    Appointment of interim supervisor or supervisor by Court
42.    Application where arrangement approved or modified
43.    Application on grounds of unfair prejudice
44.    Application to Court by former supervisor or interim supervisor

### *Offences*

45.    False representations etc.

## Division 3

### *Individual Creditors' Arrangement*

46.    Interpretation for and scope of this Division

*Proposal*

47.    Proposal
48.    Notification of appointment of interim supervisor
49.    Functions of interim supervisor and power to obtain information
50.    Amendment of proposal after appointment of interim supervisor

*Moratorium*

51.    Application for moratorium order
52.    Court may grant stay
53.    Moratorium order
54.    Duty of interim supervisor to report certain matters to the Court
55.    Effect of moratorium order

*Consideration of Proposal*

56.    Interim supervisor's report on debtor's proposal
57.    Extension of moratorium
58.    Calling creditors' meeting
59.    Decisions of creditors' meetings
60.    Amendment or withdrawal of proposal at creditors' meeting
61.    Report of decisions to Court
62.    Effect of approval

*Implementation of Arrangement*

63.    Supervisor to be given possession of assets included in arrangement
64.    Supervisor's duty to keep accounting records
65.    Supervisor to prepare and send out regular accounts and reports
66.    Completion or premature termination of arrangement

*Modification of Arrangement*

67.    Supervisor may propose modification of arrangement.
68.    Modification of arrangement

*Applications to Court*

69.    Appointment of interim supervisor or supervisor
70.    Application in respect of moratorium
71.    Application where arrangement approved or modified
72.    Application on grounds of unfair prejudice

6        *Insolvency Act*        **LAW OF VIRGIN ISLANDS**

Revision Date: 1 Jan 2020

*Miscellaneous*

73.    Register of arrangements

*Offences*

74.    False representations etc.

PART III

ADMINISTRATION

*Preliminary*

75.    Interpretation for and scope of this Part

*Administration Orders*

76.    Meaning of administration order
77.    Court may make an administration order
78.    Application in respect of insurance companies
79.    Powers of Court on hearing of application for administration order
80.    Application where company in liquidation
81.    Effect of administration order
82.    Notification and advertisement of administration order

*Moratorium*

83.    Moratorium period
84.    Effect of moratorium
85.    Preservation of charged and other assets
86.    Disposal of perishable assets during moratorium period

*Administrators*

87.    General duties of administrator
88.    Duty to prepare report
89.    Duty to report to Commission
90.    General powers of administrator
91.    Power to deal with assets subject to floating charge
92.    Application to Court to deal with other charged assets
93.    Administrator as agent of company
94.    Removal and resignation of administrator
95.    Appointment of replacement administrator
96.    Remuneration of administrator
97.    Administrator to have charge over assets of company
98.    Release of administrator
99.    Statement of affairs

26-10769-mg   Doc 77-2   Filed 06/05/26   Entered 06/05/26 16:53:44   Exhibit 2 -
Transcript of the Remote Deposition of Riz Mokal    Pg 522 of 991

LAW OF
VIRGIN ISLANDS                    *Insolvency Act*                              7
Revision Date: 1 Jan 2020

*Administrator's Proposals*

100.   Administrator's proposals and creditors meeting
101.   Attendance at meeting of directors and others
102.   Consideration of proposals by creditors
103.   Amendment of proposals at creditors' meeting
104.   Modification of proposals


*Miscellaneous*

105.   Commission's rights where company a regulated person
106.   Administrator's duty to keep accounting records
107.   Administrator to prepare and send out regular accounts and reports
108.   Notification
109.   Meetings of creditors
110.   Discharge or variation of administration order
111.   Appointment of liquidator or dissolution of company on discharge of administration order
112.   Filing copy of discharge order with Registrar


*Protection of Interests of Creditors and Members*

113.   Application in respect of moratorium period
114.   Application on grounds of unfair prejudice


PART IV

RECEIVERSHIP

*Preliminary*

115.   Interpretation for and scope of this Part


*General*

116.   Persons not to be appointed or act as receiver
117.   Appointment of joint receivers
118.   Notice of appointment
119.   Notification of receivership
120.   Vacation of office
121.   Assistance to be provided by receiver vacating office
122.   Resignation of receiver
123.   Removal of receiver
124.   Co-operation with receiver
125.   Duty to report to Commission
126.   Agency
127.   Powers of receiver, other than administrative receiver
128.   General duties of receivers

8 *Insolvency Act*

129. Powers of sale and proceeds of sale
130. Liabilities of receivers
131. Payment of debts out of assets subject to a floating charge
132. Court directions
133. Further provisions with respect to an order under section 132
134. Remuneration of receivers
135. Accounting records
136. Receivership accounts to be filed with Registrar
137. Enforcement of duty to make returns
138. Completion of receivership

### Receivers Appointed out of Court

139. Appointment of receiver out of court
140. Execution of documents
141. Invalid appointment

### Administrative Receivers

142. Meaning of "administrative receiver"
143. Appointment of administrative receiver by Court
144. Powers of administrative receiver
145. Power to dispose of charged assets
146. Statement of affairs
147. Report by administrative receiver
148. Application for permission not to call meeting of creditors

### PART V

### PROVISIONS APPLICABLE TO THE LIQUIDATION OF COMPANIES AND TO THE BANKRUPTCY OF INDIVIDUALS

149. Interpretation
150. Insolvency set-off
151. Validity of agreement to subordinate debt
152. Quantification of claims in liquidation and bankruptcy
153. Interest on claims
154. Claim in currency other than dollars
155. Statutory demand
156. Application to set aside statutory demand
157. Hearing to set aside statutory demand

26-10769-mg    Doc 77-2    Filed 06/05/26    Entered 06/05/26 16:53:44    Exhibit 2 -
Transcript of the Remote Deposition of Riz Mokal    Pg 524 of 991

LAW OF
VIRGIN ISLANDS                          *Insolvency Act*                                    9
Revision Date: 1 Jan 2020

PART VI

LIQUIDATION

*Preliminary*

158.    Application of this Part to Official Receiver
159.    Appointment of liquidator
160.    Duration of liquidation
161.    Appointment of liquidator by members
162.    Appointment of liquidator by court
163.    Appointment of liquidator of a foreign company
164.    Withdrawal of application
165.    Advertisement of application
166.    Substitution of applicant
167.    Court's power on hearing of an application
168.    Period within which application shall be determined
169.    Expenses of an arrangement

*Interim Relief*

170.    Appointment of provisional liquidator
171.    Rights and powers of provisional liquidator
172.    Remuneration of provisional liquidator
173.    Termination of appointment of provisional liquidator
174.    Power to stay or restrain proceedings etc.

*Effect of Liquidation*

175.    Effect of liquidation
176.    Restriction on execution or attachment
177.    Duties of officer in execution of process

*Notice of Appointment and First Meetings of Creditors*

178.    Notice of appointment of liquidator
179.    Liquidator to call first meeting of creditors
180.    Application to Court by members
181.    Application of sections 178 and 179
182.    Restrictions on powers of liquidator appointed by members
183.    Court appointed liquidator may dispense with creditors' meeting

*Liquidators*

184.    Status of liquidator
185.    General duties of liquidator
186.    General powers of liquidator
187.    Removal of liquidator

| 10 | *Insolvency Act* | **LAW OF<br>VIRGIN ISLANDS** |
|---|---|---|
| | | Revision Date: 1 Jan 2020 |

188. Resignation of liquidator
189. Appointment of replacement liquidator
190. Remuneration of liquidator
191. Notification of liquidation
192. Vesting of assets in liquidator

### *Members*

193. Settlement of list of members
194. Rectification of register of members
195. Liability of members limited
196. Liability of past members
197. Dividends payable to member
198. Liability where limited company becomes unlimited company
199. Liability where unlimited company becomes limited company
200. Liability of personal representative
201. Effect of member or past member becoming bankrupt
202. Status of personal representative or trustee in bankruptcy
203. Insurance and other contracts not affected
204. Power of liquidator to enforce liability of member or past member
205. Summary remedy against members and past members
206. Order under section 205 to be conclusive evidence
207. Distribution of assets of company

### *Claims*

208. Claims having priority over floating charges
209. Claims by unsecured creditors
210. Variation, withdrawal and expunging of claims
211. Claims by secured creditors
212. Redemption of security interest by liquidator
213. Realisation of security interest by secured creditor
214. Surrender for non-disclosure
215. Interest after commencement of liquidation
216. Power to exclude creditors not claiming in time

### *Disclaimer*

217. Liquidator may disclaim onerous property
218. When disclaimer takes effect
219. Notice to liquidator to elect whether to disclaim
220. Effect of disclaimer
221. Vesting orders and orders for delivery
222. Vesting orders in respect of leases
223. Land subject to rentcharge
224. Disclaimer presumed valid

*Investigation of Assets and Affairs of Company*

225.   Statement of affairs
226.   Preliminary report
227.   Duty of Official Receiver concerning report under section 226

*Miscellaneous Provisions*

228.   Liquidator to call meetings of creditors
229.   Recession of contracts by the Court
230.   Inspection of books by creditors
231.   Enforcement of liquidator's duties

*Termination of Liquidation*

232.   Termination of liquidation
233.   Order terminating liquidation
234.   Completion of liquidation
235.   Release of liquidator
236.   Dissolution

PART VII

LIQUIDATION OF INSURANCE COMPANIES

237.   Interpretation for and scope of this Part
238.   Liquidation of insurance companies
239.   Appointment of  liquidator by members
240.   Application for appointment of liquidator by Court
241.   Reduction of contracts as alternative to winding up
242.   Continuation of long term business by liquidator appointed by Court
243.   Protection of segregated funds and assets

PART VIII

VOIDABLE TRANSACTIONS

244.   Interpretation for this Part
245.   Unfair preferences
246.   Undervalue transactions
247.   Voidable floating charges
248.   Extortionate credit transactions
249.   Orders in respect of voidable transactions
250.   Limitations on orders under section 249
251.   Recoveries
252.   Remedies not exclusive

12                           *Insolvency Act*                **LAW OF**
**VIRGIN ISLANDS**

Revision Date: 1 Jan 2020

## PART IX

### MALPRACTICE

253.  Interpretation for this Part
254.  Summary remedy against delinquent officers and others
255.  Fraudulent trading
256.  Insolvent trading
257.  Recoveries under sections 255 and 256
258.  Ancillary orders

## PART X

### DISQUALIFICATION ORDERS AND UNDERTAKINGS

259.  Interpretation for this Part
260.  Disqualification orders and undertakings
261.  Application for disqualification order
262.  Hearing of application for disqualification order
263.  Matters for determining unfitness of directors
264.  Disqualification undertaking
265.  General provisions concerning disqualification orders and undertakings
266.  Variation of disqualification order or undertaking
267.  Offence provisions
268.  Liability for engaging in prohibited activity
269.  Official Receiver to appear on certain applications
270.  Register of disqualification orders
271.  Duties of office holders

## PART XI

### GENERAL PROVISIONS WITH REGARD TO COMPANIES
### THAT ARE INSOLVENT OR IN LIQUIDATION

#### Division 1

#### *General*

272.   Interpretation
273.   Application to Court concerning office holder
274.   Company's books
274A.  Order to deliver assets and documents

#### Division 2

#### *Statement of Affairs*

275.  Interpretation for this Division
276.  Notice to be given by office holder
277.  Statement of Affairs

278.    Affidavit of concurrence
279.    Release from duty to submit statement of affairs
280.    Application for order of limited disclosure

## Division 3

### *Investigation of Insolvent Company's Affairs*

#### *Office Holder's Powers*

281.    Interpretation for this Division
282.    Power to obtain information
283.    Examination by office holder

#### *Examination Before Court*

284.    Application for examination before Court
285.    Order for examination
286.    Conduct of examination
287.    Incriminating answers and admissibility of record
288.    Offence

## Division 4

### *Offence Provisions*

289.    Fraudulent conduct

### PART XII

### BANKRUPTCY

#### *Preliminary*

290.    Interpretation
291.    Application of this Part to Official Receiver

#### *Bankruptcy Order*

292.    Meaning and duration of bankruptcy order
293.    Conditions for making of bankruptcy order
294.    Persons who may apply for a bankruptcy order
295.    Application by debtor
296.    Creditor's application
297.    Substitution of applicant
298.    Application by secured creditor
299.    Secured creditor failing to disclose security interest
300.    Hearing of creditor's application

14         *Insolvency Act*      **LAW OF
VIRGIN ISLANDS**

Revision Date: 1 Jan 2020

301. Application where individual creditors' arrangements in place
302. Consolidation of applications
303. Withdrawal of application
304. Court's powers on hearing of application for bankruptcy order
305. Appointment of bankruptcy trustee
306. Period within which application shall be determined

### *Interim Relief*

307. Protection of assets after application for bankruptcy
308. Effect of order under section 307
309. Remuneration of person appointed under section 307
310. Examination

### *Effect of Bankruptcy*

311. Effect of bankruptcy order
312. Power to stay or restrain proceedings

### *Bankrupt's Estate*

313. Definition of bankrupt's estate
314. Acquisition by trustee of control of bankrupt's estate
315. Goods subject to pledge etc.
316. Duties of bankrupt in relation to his or her assets and affairs
317. Delivery up by other persons
318. After-acquired assets
319. Vesting in trustee of certain items of excess value
320. Money provided *in lieu* of sale
321. Time limit for notice under sections 318 or 319
322. Income payments orders

### *Bankruptcy Trustee*

323. Bankruptcy trustee officer of Court
324. General duties of trustee
325. Powers of trustee
326. Notice of appointment
327. Appointment of trustee in place of Official Receiver
328. Removal of trustee
329. Resignation of trustee
330. Appointment of replacement trustee
331. Remuneration of trustee
332. General control of trustee by the Court

*Administration by Trustee*

333.    Meetings of creditors


*Claims and Distribution of Estate*

334.    Distribution of bankrupt's estate
335.    Debts to spouse
336.    Claims by unsecured creditors
337.    Variation, withdrawal and expunging of claims
338.    Claims by secured creditors
339.    Redemption of security interest by trustee
340.    Realisation of security interest by secured creditor
341.    Surrender for non-disclosure
342.    Interest after commencement of bankruptcy
343.    Distribution by means of dividend
344.    Claims by unsatisfied creditors
345.    Distribution of assets in specie
346.    Final distribution
347.    No action for dividend
348.    Right of bankrupt to surplus
349.    Final meeting


*Prior Transactions*

350.    Contracts to which bankrupt is a party
351.    Enforcements procedures
352.    Distress, etc.
353.    Unenforceability of liens on books, etc.


*General Powers of Court*

354.    General control of Court
355.    Power of arrest
356.    Seizure of bankrupt's assets
357.    Re-direction of bankrupt's letters, etc.


*Disclaimer*

358.    Trustee may disclaim onerous property
359.    When disclaimer takes effect
360.    Notice to trustee to elect whether to disclaim
361.    Effect of disclaimer
362.    Vesting orders and orders for delivery
363.    Vesting orders in respect of leases
364.    Land subject to rentcharge
365.    Disclaimer presumed valid

16 *Insolvency Act* LAW OF
VIRGIN ISLANDS
Revision Date: 1 Jan 2020

### *Investigation of Bankrupt's Affairs*

366.  Statement of assets and liabilities
367.  Preliminary report
368.  Duty of Official Receiver concerning report under section 367
369.  Application for examination of bankrupt and others
370.  Order for examination
371.  Conduct of examination
372.  Examinee shall answer questions put to him or her
373.  Examinee failing to appear for his or her examination
374.  Court's enforcement powers

### *Discharge and Annulment of Bankruptcy*

375.  Bankrupt ineligible for automatic discharge
376.  Automatic discharge
377.  Application by bankrupt concerning order for suspension of discharge
378.  Application for discharge by Court order
379.  Court order on application for discharge
380.  Effect of discharge
381.  Discharged bankrupt to give assistance
382.  Annulment of bankruptcy order
383.  Release of trustee
384.  Liability of trustee

### *Second or Subsequent Bankruptcy*

385.  Stay of distribution in case of second bankruptcy
386.  Adjustment between earlier and later bankruptcy estates

### PART XIII

### BANKRUPTCY OFFENCES

387.  Definitions
388.  Defence of innocent intention
389.  Non-disclosure
390.  Concealment of assets
391.  Concealment of books and papers; falsification
392.  False statements
393.  Fraudulent disposal of assets
394.  Absconding
395.  Fraudulent dealing with asset obtained on credit
396.  Obtaining credit: engaging in business
397.  Failure to keep proper accounts of business
398.  Gambling
399.  Supplementary provisions

PART XIV

VOIDABLE TRANSACTIONS

400. Interpretation for this Part
401. Unfair preferences
402. Undervalue transactions
403. Voidable general assignment of book debts
404. Extortionate credit transactions
405. Orders in respect of voidable transactions
406. Limitations on orders under section 405
407. Recoveries
408. Remedies not exclusive


PART XV

BANKRUPTCY RESTRICTIONS ORDERS AND UNDERTAKINGS

409. Interpretation for this Part
410. Bankruptcy restrictions orders and undertakings
411. Application for and hearing of application for bankruptcy restrictions order
412. Duration of bankruptcy restrictions order
413. Interim bankruptcy restrictions order
414. Bankruptcy restrictions undertaking
415. Variation of disqualification order or undertaking
416. Offence provisions
417. Official Receiver to appear on certain applications
418. Register of disqualification orders
419. Annulment of bankruptcy order


PART XVI

GENERAL PROVISIONS WITH REGARD TO
INSOLVENCY PROCEEDINGS UNDER THIS ACT

**Division 1**

*The Creditors' Committee*

420. Interpretation for and scope of this Division
421. Establishment of creditors' committee
422. Functions and powers of creditors' committee
423. Composition of creditors' committee
424. Resignation and termination of committee member
425. Vacancies and appointment of new members
426. Proceedings of creditors' committee
427. Expenses of members
428. Members dealing with company
429. Formal defects

## Division 2

### *Remuneration*

430.   Remuneration of administrator, liquidator or bankruptcy trustee
431.   Application by creditors for  reduction of remuneration
432.   General principles to be applied in fixing remuneration
433.   Time for fixing remuneration and interim payments

## PART XVII

## NETTING AND MARKET CONTRACTS

434.   Interpretation for sections 434 and 435
435.   Enforcement of netting agreements etc.

## PART XVIII

## CROSS-BORDER INSOLVENCY

### *General Provisions*

436.   Purpose and scope of this Part
437.   Interpretation for this Part
438.   International obligations of the Virgin Islands
439.   Public policy exception
440.   Additional assistance
441.   Application under this Part
442.   Authorisation of insolvency officer to act in a foreign country

### *Access of Foreign Representatives and Creditors*
### *to Courts in The Virgin Islands*

443.   Right of direct access
444.   Limited jurisdiction
445.   Commencement of and participation in a Virgin Islands insolvency
       proceeding by foreign representative
446.   Access of foreign creditors to a Virgin Islands proceeding
447.   Notification to foreign creditors of a Virgin Islands insolvency proceeding

### *Recognition of Foreign Proceeding and Relief*

448.   Application for recognition of  foreign proceeding
449.   Presumptions concerning recognition
450.   Recognition of foreign proceedings
451.   Subsequent information
452.   Interim relief
453.   Effects of recognition of foreign main proceeding
454.   Relief that may be granted upon recognition of foreign proceeding

26-10769-mg    Doc 77-2    Filed 06/05/26    Entered 06/05/26 16:53:44    Exhibit 2 -
Transcript of the Remote Deposition of Riz Mokal    Pg 534 of 991

LAW OF
VIRGIN ISLANDS                              *Insolvency Act*                              19
Revision Date: 1 Jan 2020

455.    Protection of creditors and other interested persons
456.    Actions to avoid acts detrimental to creditors
457.    Intervention by foreign representative in proceedings in the Virgin Islands

*Cooperation with Foreign Courts and
Foreign Representatives*

458.    Cooperation and direct communication between court of the Virgin Islands
and foreign courts or foreign representatives
459.    Cooperation and direct communication between the insolvency
administrator and foreign courts or foreign representatives
460.    Forms of cooperation

*Concurrent Proceedings*

461.    Commencement of a Virgin Islands insolvency proceeding after
recognition of foreign main proceeding
462.    Coordination of a Virgin Islands insolvency proceeding and foreign
proceeding
463.    Coordination of more than one foreign proceeding
464.    Presumption of insolvency based on recognition of foreign main
proceeding
465.    Rule of payment in concurrent proceedings


PART XIX

ORDERS IN AID OF FOREIGN PROCEEDINGS

466.    Interpretation for this Part
467.    Order in aid of foreign proceeding
468.    Matters to be considered by Court in determining application under section
467
469.    Limitation on effect of application under this Part
470.    Additional assistance
471.    Application under this Part
472.    Authorisation of insolvency officer to act in foreign country


PART XX

INSOLVENCY PRACTITIONERS

*Licensing*

473.    Interpretation for this Part
474.    Prohibition on acting as insolvency practitioner without a licence
475.    Application for licence
476.    Issue of licence

20                                           *Insolvency Act*

477.    Persons disqualified from holding a licence


### *Control of Licensees and Enforcement*

478.    Production of accounts and records
479.    Suspension and revocation of licence
480.    Right to make representations
480A.   Directives


### *Obligations of Licensees*

481.    Filing of returns and other documents


### *Eligible Insolvency Practitioners*

482.    Eligible insolvency practitioner
483.    Appointment of overseas insolvency practitioner
484.    Commission's powers with regard to appointment of overseas insolvency
        practitioner
485.    Overseas practitioner sole appointee
486.    Regulations
487.    Code of Practice
487A.   Insolvency Surplus Account


## PART XXI

### OFFICIAL RECEIVER

488.    Official Receiver
489.    Deputy Official Receiver and staff
490.    Official Receiver as officer of the Court
491.    Functions of Official Receiver
492.    Right of audience


## PART XXII

### MISCELLANEOUS PROVISIONS

493.    Appointment of two or more office holders
494.    Use of prescribed forms
495.    Notices
496.    Time
497.    Resolutions
498.    Rules
499.    Insolvent partnerships
500.    Insolvent estates
501.    Offences, general provisions

LAW OF
VIRGIN ISLANDS                    *Insolvency Act*                                    21
Revision Date: 1 Jan 2020

502.    Rules may provide for offences and penalties

503.    Provisions of other enactments not to apply

503A.    Disapplication and modification of the Financial Services Commission Act

504.    *(Omitted)*

505.    Act binding on Crown

SCHEDULE 1:    Powers of Administration and Administrative Receiver

SCHEDULE 2:    Powers of Liquidator

SCHEDULE 3:    Liquidation of Foreign Company

SCHEDULE 4:    Powers of Bankruptcy Trustee

SCHEDULE 5:    Offences Under this Act

SCHEDULE 6:    Disapplication and Modification of Financial Services
Commission Act

# INSOLVENCY ACT

*(Acts 5 of 2003, 11 of 2004, 16 of 2004, 19 of 2006 and 1 of 2008)*

AN ACT TO REFORM THE LAW RELATING TO THE INSOLVENCY OF COMPANIES AND FOREIGN COMPANIES, LIMITED PARTNERSHIPS, PARTNERSHIPS AND INDIVIDUALS AND TO PROVIDE, IN PARTICULAR, FOR A MECHANISM FOR INSOLVENT PERSONS TO ENTER INTO ARRANGEMENTS WITH THEIR CREDITORS, AN ADMINISTRATION PROCEDURE FOR COMPANIES, THE RECEIVERSHIP OF COMPANIES AND FOREIGN COMPANIES, THE LIQUIDATION OF COMPANIES, FOREIGN COMPANIES, LIMITED PARTNERSHIPS AND PARTNERSHIPS, THE MAKING OF BANKRUPTCY ORDERS AGAINST INDIVIDUALS, THE LICENSING AND REGULATION OF INSOLVENCY PRACTITIONERS, THE PENALISATION AND REDRESS OF WRONGDOING ASSOCIATED WITH INSOLVENT PERSONS, THE DISQUALIFICATION OF DIRECTORS, THE AVOIDANCE OF CERTAIN TRANSACTIONS, CROSS BORDER INSOLVENCY ISSUES AND OTHER MATTERS CONNECTED THEREWITH.

## Commencement

*[16 August 2004]*

### PART I

### PRELIMINARY PROVISIONS

## Short title

**1.** This Act may be cited as the Insolvency Act.

## Interpretation

**2.** (1) In this Act, unless the context otherwise requires—

"administration order" has the meaning specified in section 76;

"administrative receiver" has the meaning specified in section 142;

"administrator", in relation to a company, means an administrator appointed under section 79;

"arrangement" means a company creditors' arrangement under Part II, Division 2 or an individual creditors' arrangement under Part II, Division 3, as the case may be;

"articles" means—

   *(a)* the articles of association of a company; or

   *(b)* where the context permits, in the case of a foreign company the articles of association, by-laws or such other document having the same effect by whatever name called;

"asset" includes money, goods, things in action, land and every description of property wherever situated and obligations and every description of

*Insolvency Act*

interest, whether present or future or vested or contingent, arising out of, or incidental to, property;

"bankrupt" means an individual against whom a bankruptcy order is made under Part XII;

"bankruptcy trustee" means the person appointed by the Court to be the trustee of the assets of a bankrupt;

"bankrupt's estate" has the meaning specified in section 313;

"board", in relation to a body corporate, means—

    *(a)* the board of directors, committee of management, council or other governing authority of the body corporate; or

    *(b)* if the body corporate has only one director, that director;

"business day" means any day other than a Saturday, Sunday or public holiday in the Virgin Islands;

"charge" includes a mortgage, a fixed charge and a floating charge, whether crystallised or not;

"chargee" means the holder of a charge and includes a person in whose favour a charge is to be given or executed under an agreement, whether on demand or otherwise;

"chattel leasing agreement" means an agreement for the bailment of goods which is capable of subsisting for more than 3 months;

"Civil Procedure Rules" means the Eastern Caribbean Supreme Court Civil Procedure Rules 2000;

"Commission" means the Financial Services Commission established under the Financial Services Commission Act; *(Amended by Act 12 of 2001)*

"Companies Act" means the Companies Act, 1885;

"company" has the meaning specified in section 3;

"connected person"—

    *(a)* in relation to a company or a foreign company has the meaning specified in section 5(1); and

    *(b)* in relation to an individual has the meaning specified in section 5(3);

"Court" means the High Court;

"court rate" means the rate of interest specified in section 7 of the Judgments Act;

"creditor" and "secured creditor" have the meanings specified in section 9;

"creditors' committee" means a committee appointed under section 421;

"director" has the meaning specified in section 6;

"disqualification order" has the meaning specified in section 260(1);

"disqualification undertaking" has the meaning specified in section 260(2);

"document" means a document in any form and includes—

*(a)* any writing or printing on any material;

*(b)* any record of information or data, however compiled, and whether stored in paper, electronic, magnetic or any non-paper based form and any storage medium or device, including discs and tapes;

*(c)* books and drawings; and

*(d)* a photograph, film, tape,  negative, facsimile or other medium in which one or more visual images are embodied so as to be capable (with or without the aid of equipment) of being reproduced, and without limiting the generality of the foregoing, includes any court application, order and other legal process and any notice;

"dollar" or "$" means the lawful currency for the time being of the United States of America;

"eligible insolvency practitioner" means an insolvency practitioner who is eligible to act in relation to a company, foreign company or individual in accordance with section 482;

"floating charge" means a charge created by a company or a foreign company which is, or as created was, a floating charge;

"foreign company" means a body corporate that is incorporated, registered or formed outside the Virgin Islands but excludes a company within the meaning of section 3;

"insolvency practitioner" means a person acting in a capacity specified in section 474(1);

"insolvent"—

*(a)* in relation to a company or a foreign company, has the meaning specified in section 8(1); and

*(b)* in relation to an individual, has the meaning specified in section 8(2);

"Insurance Act" means the Insurance Act; *(Amended by Act 1 of 2008)*

"insurance company" means a company or a foreign company that holds, a licence under the Insurance Act or that at any time has held a licence under the repealed Insurance Act 1994; *(Amended by Acts 11 of 2004 and 1 of 2008)*

"interim supervisor" means the person appointed as the interim supervisor under a proposal for an arrangement;

"International Business Companies Act" means the International Business Companies Act, 1984;

"liability" has the meaning specified in section 10;

"licensed insolvency practitioner" means a person holding a licence to act as an insolvency practitioner issued under section 476;

"liquidator", in relation to a company or a foreign company, means a liquidator appointed under section 159;

"member", in relation to a company, includes—

    *(a)* a member of a company limited by guarantee; and

    *(b)* a person to whom shares in a company have been transferred or transmitted by law, even though that person is not a member of the company within the meaning of the Companies Act;

"memorandum" means—

    *(a)* the memorandum of association of a company; or

    *(b)* where the context permits, in the case of a foreign company its memorandum of association or other constituting document, by whatever name called;

"officer", in relation to a body corporate, includes a director and secretary of that body corporate but does not include an administrator, liquidator, receiver, supervisor or interim supervisor;

"Official Receiver" means the Official Receiver appointed by the Commission under section 488;

"preferential claim" means a claim of a type prescribed by the Rules as a preferential claim;

"preferential creditor" means a creditor having a preferential claim;

"prescribed" means prescribed by the Rules or the Regulations made under section 486 and "prescribed form" means a form specified in the Rules or those Regulations; *(Amended by Act 11 of 2004)*

"prescribed priority" means—

    *(a)* in a liquidation, the priority for the payment of the costs and expenses of a liquidation prescribed in the Rules; and

    *(b)* in a bankruptcy, the priority for the payment of the costs and expenses of a bankruptcy prescribed in the Rules;

"public document" has the meaning specified in section 13;

"receiver" means the receiver of the whole or any part of the assets of a company or a foreign company and includes—

    *(a)* a manager and a receiver and manager;

    *(b)* a receiver of income; and

    *(c)* an administrative receiver;

"receiver appointed out of court" means a receiver appointed in the exercise of a power conferred by a debenture or other instrument;

"Registrar" means the Registrar of Corporate Affairs appointed under section 229 of the BVI Business Companies Act; *(Substituted by Act 16 of 2004)*

"regulated person" means a person that holds a prescribed financial services licence;

"related company" means a company that is related to another company in accordance with section 5(2);

"remuneration" includes properly incurred expenses and disbursements;

26-10769-mg    Doc 77-2    Filed 06/05/26    Entered 06/05/26 16:53:44    Exhibit 2 -
Transcript of the Remote Deposition of Riz Mokal    Pg 542 of 991

LAW OF
VIRGIN ISLANDS                              *Insolvency Act*                                27
Revision Date: 1 Jan 2020

"retention of title agreement" means any agreement for the sale of goods under which the seller reserves title in the goods until payment, but excludes an agreement that constitutes a charge on the goods;

"Rules" means the Insolvency Rules made under section 498 and, where appropriate, the Rules made under sections 499 and 500; *(Amended by Act 11 of 2004)*

"security interest" includes a charge and a lien;

"statement of affairs" means a statement of the affairs of a company or a foreign company complying with section 277 and "verified statement of affairs" means a statement of affairs that has been verified by affidavit;

"statement of assets and liabilities" means a statement of the assets and liabilities of an individual complying with section 366 and "verified statement of assets and liabilities" means a statement of assets and liabilities that has been verified by affidavit;

"statutory demand" means a demand made under section 155;

"subsidiary" and "holding company" have the meanings specified in section 4;

"supervisor" means the person appointed to act as the supervisor of an arrangement under Part II;

"unlicensed financial services business" has the meaning specified in section 7; and

"Virgin Islands court" means any court having jurisdiction in the Virgin Islands.

(2) References in this Act or in the Rules to the "venue" for any proceeding, attendance before the Court or for a meeting are to the time, date and place for the proceeding, attendance or meeting.

## Meaning of "company"

3.  Unless this Act expressly provides otherwise, "company" means—

    *(a)* a company incorporated under the Companies Act;

    *(b)* an international business company incorporated or continued under the International Business Companies Act; or *(Amended by Act 16 of 2004)*

    *(c)* a company within the meaning specified in section 3(1) of the BVI Business Companies Act. *(Amended by Act 16 of 2004)*

## Meaning of "subsidiary" and "holding company"

4.  (1) A company is a "subsidiary" of another company, its "holding company", if that other company—

    *(a)* holds a majority of the voting rights in it;

    *(b)* is a member of it and has the right to appoint or remove a majority of its board;

    *(c)* is a member of it and controls alone, pursuant to an agreement with other members, a majority of the voting rights in it, or if it is

a subsidiary of a company which is itself a subsidiary of that other company.

(2) For the purposes of subsection (1), "company" includes a foreign company and any other body corporate.

## Meaning of "connected person" and "related company"

**5.** (1) In relation to a company, "connected person" means any one or more of the following—

(a) a promoter of the company;

(b) a director or member of the company or of a related company;

(c) a beneficiary under a trust of which the company is or has been a trustee;

(d) a related company;

(e) another company one of whose directors is also a director of the company;

(f) a nominee, relative, spouse or relative of a spouse of a person referred to in paragraphs (a) to (c);

(g) a person in partnership with a person referred to in paragraphs (a) to (c); and

(h) a trustee of a trust having as a beneficiary a person who is, apart from this paragraph, a connected person.

(2) A company is related to another company if—

(a) it is a subsidiary or holding company of that other company;

(b) the same person has control of both companies; and

(c) the company and that other company are both subsidiaries of the same holding company.

(3) In relation to an individual, "connected person" means any one or more of the following—

(a) a relative, spouse or relative of a spouse of the individual;

(b) a person in partnership with the individual;

(c) a relative or spouse of a person in partnership with the individual;

(d) a company in respect of which he or she is a connected person under subsection (1);

(e) a trustee of a trust having as a beneficiary a person who is, apart from this paragraph, a connected person.

(4) For the purposes of this section, "company" includes a foreign company and any other body corporate.

## Meaning of "director"

**6.** (1) Subject to subsection (3), "director", in relation to a body corporate, includes—

(a) a person occupying or acting in the position of director by whatever name called;

(b) a person in accordance with whose directions or instructions a director or the board of a body corporate may be required or is accustomed to act; and

(c) a person who exercises, or is entitled to exercise, or who controls, or is entitled to control, the exercise of powers which, apart from the memorandum or articles, would fall to be exercised by the board.

(2) Notwithstanding subsection (1)—

(a) a person is not to be regarded as a director of a body corporate by reason only that a director or the board act on advice given by him or her in a professional capacity; and

(b) a person acting as an insolvency practitioner in relation to a company or a foreign company is not to be regarded as a director of the company or foreign company by virtue of his or her acting in that capacity.

(3) In Parts IX and X, "director" has the meaning specified in this section with the deletion of subsection (1)*(c)*.

## Meaning of "unlicensed financial services business"

**7.** A person carries on unlicensed financial services business if he or she carries on an activity for which a prescribed financial services licence is required without having such a licence authorising him or her to carry on the activity.

## Meaning of "insolvent"

**8.** (1) A company or a foreign company is insolvent if—

(a) it fails to comply with the requirements of a statutory demand that has not been set aside under section 157;

(b) execution or other process issued on a judgment, decree or order of a Virgin Islands court in favour of a creditor of the company is returned wholly or partly unsatisfied; or

(c) either—

(i) the value of the company's liabilities exceeds its assets; or

(ii) the company is unable to pay its debts as they fall due.

(2) An individual is insolvent if—

(a) he or she fails to comply with the requirements of a statutory demand that has not been set aside under section 157; or

(b) execution or other process issued on a judgment, decree or order of a Virgin Islands court in favour of a creditor of the individual is returned wholly or partly unsatisfied.

## Meaning of "creditor", "secured creditor" etc.

**9.** (1) A person is a creditor of another person (the debtor) if he or she has a claim against the debtor, whether by assignment or otherwise, that is, or would be, an admissible claim in—

> *(a)* the liquidation of the debtor, in the case of a debtor that is a company or a foreign company; or

> *(b)* the bankruptcy of the debtor, in the case of a debtor who is an individual.

(2) A creditor is a secured creditor of a debtor if he or she has an enforceable security interest over an asset of the debtor in respect of his or her claim.

(3) An unsecured creditor is a creditor who is not a secured creditor.

## Meaning of "liability"

**10.** (1) For the purposes of this Act, "liability" means a liability to pay money or money's worth including a liability under an enactment, a liability in contract, tort or bailment, a liability for a breach of trust and a liability arising out of an obligation to make restitution, and "liability" includes a debt.

(2) A liability may be present or future, certain or contingent, fixed or liquidated, sounding only in damages or capable of being ascertained by fixed rules or as a matter of opinion.

(3) For the purposes of this Act, an illegal or unenforceable liability is deemed not to be a liability.

## Admissible claims

**11.** (1) For the purposes of this section, "relevant time" means the time of the commencement of the liquidation of a company or a foreign company or the commencement of the bankruptcy of an individual, as the case may be.

(2) Subject to section 12, the following liabilities are admissible as claims in the liquidation of a company or foreign company or in the bankruptcy of an individual—

> *(a)* liabilities of the company, foreign company or individual at the relevant time;

> *(b)* liabilities of the company, foreign company or individual arising after the relevant time by virtue of any obligation incurred before the relevant time; and

> *(c)* any interest that may be claimed in accordance with this Act or the Rules.

(3) For the purposes of determining whether a liability in tort is an admissible claim in the liquidation of a company or foreign company or in the bankruptcy of an individual, the company, foreign company or individual is deemed to become subject to that liability by reason of an obligation incurred at the time the cause of action accrued.

### Non-admissible claims

**12.** The following liabilities are not admissible claims in the liquidation of a company or a foreign company or the bankruptcy of an individual—

(a) an obligation arising under a confiscation order made under—

 (i)  the Drug Trafficking Offences Act; or

 (ii)  the Proceeds of Criminal Conduct Act;

(b) a liability that, under any enactment or rule of law, is of a type that is not claimable, whether on grounds of public policy or otherwise; and

(c) such other liabilities or claims as may be prescribed.
*(Amended by Act 11 of 2004)*

### Meaning of "public document"

**13.** (1) Subject to subsection (3), a "public document", in relation to a person, means a document of, or purporting to be issued, published or signed by or on behalf of that person that—

(a) in the case of a company or foreign company, is required or permitted to be filed with the Registrar under—

 (i)  this Act or the Rules;

 (ii)  the Companies Act;

 (iii)  the International Business Companies Act; or

 (iv)  the BVI Business Companies Act; *(Inserted by Act 16 of 2004)*

(b) is issued, published or signed under, or for the purposes of, this Act or the Rules or any other enactment; or

(c) is issued or signed in the course of, or for the purposes of, a particular transaction or dealing.

(2) Without limiting subsection (1), "public document" includes a business letter, statement of account, invoice, receipt, order for goods, order for services or an official notice of, or purporting to be issued, published or signed by, or on behalf of, that person.

(3) A document is not a public document if it is applied, or intended or required to be applied, to goods or to any container, package or wrapping within which goods are, or are intended to be, supplied for a purpose connected with the supply of those goods.

PART II

CREDITORS' ARRANGEMENTS

### Division 1

### *Interpretation*

## Interpretation for and scope of this Part

**14.** (1) In this Part—

"arrangement" has the meaning specified in section 15;

"debtor" means a company or individual proposing an arrangement;

"nominated insolvency practitioner" means the insolvency practitioner nominated as the interim supervisor under a proposal—

*(a)* by the board of a company;

*(b)* by the administrator or liquidator of a company, where the company is in administration or liquidation; or

*(c)* by an individual debtor; and

"proposal" means a proposal for an arrangement.

(2) Where the context allows, a reference in this Part—

*(a)* to a proposal includes the proposal as amended; and

*(b)* to the rejection of a proposal includes the deemed rejection of a proposal.

## Arrangements

**15.** (1) An arrangement is a compromise between a debtor and its or his or her creditors, the implementation of which is supervised by a supervisor acting as a trustee or otherwise.

(2) Without limiting subsection (1), an arrangement may—

*(a)* cancel all or any part of, or vary, a liability of the debtor;

*(b)* vary the rights of the debtor's creditors or the terms of a debt; and

*(c)* include any other provision that may be prescribed.

(3) Varying a liability or the terms of a debt under subsection (2)*(a)* or *(b)* may include—

*(a)* varying, adding or cancelling rights to interest; and

*(b)* varying the dates upon which a liability, or part of a liability, becomes due for payment.

(4) An arrangement shall not, except with the written agreement of the secured creditor or the preferential creditor concerned—

*(a)* affect the right of a secured creditor of the debtor to enforce his or her security interest or vary the liability secured by the security interest; or

(b) result in a preferential creditor receiving less than he or she would receive in a liquidation or bankruptcy of the debtor had it commenced at the time of approval of the arrangement.

(5) An arrangement does not effect a release of any surety or co-debtor of the debtor unless the terms of the arrangement expressly provide otherwise.

## Remuneration of supervisor and interim supervisor

**16.** A supervisor and an interim supervisor is entitled to be paid remuneration for his or her services consisting of—

(a) any disbursements made by the interim supervisor prior to the approval of the arrangement, and any remuneration for his or her services as such agreed between himself or herself and—

(i) in the case of a company, the board or, where it is in liquidation, the administrator or liquidator; or

(ii) in the case of an individual, the debtor; and

(b) any fees, costs, charges or expenses which—

(i) are sanctioned by the terms of the arrangement; or

(ii) would be payable, or correspond to those which would be payable, in an administration or liquidation (in the case of a company) or in a bankruptcy (in the case of an individual).

## Fixing of remuneration by Court

**17.** (1) Notwithstanding the terms of the arrangement, on the application of a person referred to in subsection (4), the Court may review and fix the amount paid or to be paid by way of remuneration to a supervisor or an interim supervisor.

(2) Subject to subsection (3), the Court's power under subsection (1)—

(a) extends to fixing the remuneration for any period before the making of the order or the application for it;

(b) is exercisable notwithstanding that the supervisor or interim supervisor has died or ceased to act before the making of the application or the order; and

(c) extends to requiring the supervisor or interim supervisor or his or her personal representative to account for the excess or such part of it as may be specified in the order to the extent that an amount paid to or retained by the supervisor or interim supervisor as remuneration exceeds that fixed by the Court for the period concerned. *(Amended by Act 11 of 2004)*

(3) The power conferred by subsection (2)*(c)* may not be exercised with respect to a period before the date of the application for an order under this section unless the Court is satisfied that there are special circumstances that justify it.

(4) Application to the Court for an order under subsection (1) may be made by any of the following persons—

> *(a)* the supervisor or interim supervisor; or
>
> *(b)* the company or—
>
> > (i) if the company is in liquidation, its liquidator; or
> >
> > (ii) if the company is in administration, its administrator.
> > *(Amended by Act 11 of 2004)*

(5) In fixing the remuneration of a supervisor or interim supervisor under this section, the Court shall apply the general principles specified in section 432.

## Commission's rights in respect of a regulated person

**18.** Where a proposal is made, or an arrangement approved, in respect of a regulated person—

> *(a)* every notice or other document required to be sent to a creditor of the debtor under this Part shall also be sent to the Commission; and
>
> *(b)* unless the applicant is the Commission, notice shall be given to the Commission of any application to the Court under this Part.

## Division 2

### *Company Creditors' Arrangement*

## Interpretation and scope of Division

**19.** (1) In this Division, "proposal period" means the period from the appointment of the interim supervisor to the approval or rejection by the creditors of the proposed arrangement.

(2) A foreign company may not propose or enter into an arrangement under this Division.

### *Proposal and Interim Supervisor*

## Proposal for an arrangement by board

**20.** (1) The board of a company, other than a company that is in liquidation or in administration, may propose an arrangement and nominate an interim supervisor to act in relation to the proposed arrangement if—

> *(a)* it believes on reasonable grounds that the company is insolvent or is likely to become insolvent; and
>
> *(b)* it has passed a resolution—
>
> > (i) stating its belief that the company is insolvent or is likely to become insolvent;
> >
> > (ii) approving a written proposal containing the information prescribed; and
> >
> > (iii) nominating an eligible insolvency practitioner to be appointed as interim supervisor.

(2) A director who votes in favour of a resolution under subsection (1) without having reasonable grounds for believing that the company is insolvent or is likely to become insolvent commits an offence.

### Appointment of interim supervisor by board

**21.** (1) Where the board of a company has passed a resolution under section 20(1)*(b)*, it shall provide the nominated insolvency practitioner with—

> *(a)* a copy of the resolution passed;

> *(b)* a copy of the proposal approved by the board;

> *(c)* a statement of affairs made up to a date no earlier than 2 weeks prior to the date of the resolution; and

> *(d)* a notice of intention to appoint the nominated insolvency practitioner as interim supervisor.

(2) The nominated insolvency practitioner may accept appointment as interim supervisor by delivering a copy of the notice referred to in subsection (1)*(d)*, endorsed in accordance with the Rules, to the board within 5 business days of the date when the resolution was passed under section 20(1)*(b)*.

(3) Subject to subsection (4), the appointment of an interim supervisor takes effect from the time when he or she delivers the endorsed notice to the board.

(4) A resolution passed under section 20(1)*(b)* lapses and is of no effect if the insolvency practitioner nominated in the resolution is not appointed in accordance with this section within 5 business days of the date when the resolution was passed.

### Appointment of interim supervisor, company in administration or liquidation

**22.** (1) Where a company is in administration or liquidation, the administrator or liquidator may make a proposal and appoint another eligible insolvency practitioner as the interim supervisor.

(2) Where the administrator or liquidator intends to appoint another eligible insolvency practitioner as interim supervisor, he or she shall provide him or her with—

> *(a)* a notice of intention to appoint him or her as interim supervisor; and

> *(b)* a written proposal containing the information prescribed.

(3) The nominated insolvency practitioner may accept appointment as interim supervisor by delivering the notice referred to in subsection (2)*(a)*, endorsed in accordance with the Rules, to the administrator or liquidator.

(4) The appointment of an interim supervisor under this section takes effect from the time when the endorsed notice of intention to appoint is received by the administrator or liquidator.

### Administrator or liquidator acting as interim supervisor

**23.** (1) An administrator or liquidator who intends to make a proposal may, instead of appointing another eligible insolvency practitioner as interim supervisor, act as the interim supervisor himself or herself.

(2) Where the administrator or liquidator intends to act as the interim supervisor himself or herself he or she shall—

(a) prepare a written proposal containing the information prescribed; and

(b) sign a notice of intention to act as interim supervisor.

(3) The appointment of the administrator or liquidator as interim supervisor under this section takes effect on the date of the notice of intention to act as interim supervisor.

### Notification of appointment of interim supervisor

**24.** (1) The interim supervisor shall, within 2 business days of his or her appointment—

(a) file a notice of appointment as interim supervisor with the Registrar; and

(b) if the company is a regulated person, file a copy of the notice of his or her appointment with the Commission.

(2) An interim supervisor who contravenes subsection (1) commits an offence.

### Functions of interim supervisor and power to obtain information

**25.** (1) The functions of an interim supervisor are—

(a) to prepare a report on the proposal for the creditors;

(b) to carry out any duties assigned to him or her by this Act or the Rules;

(c) in the case of an interim supervisor appointed by the board or by the administrator or liquidator of a company, to undertake such functions and duties as he or she may agree to undertake with the board or with the administrator or liquidator; and

(d) in the case of an interim supervisor appointed by the board of a company, to monitor the affairs of the company, including the conduct of its business, during the proposal period.

(2) Where an interim supervisor is appointed by the board or by the administrator or liquidator of a company, every officer of the company or the administrator or liquidator of the company, as the case may be, shall—

(a) provide to the interim supervisor such documents, information and explanations as he or she may reasonably require for the purposes of enabling him or her to exercise his or her functions; and

*(b)* give the interim supervisor such assistance as he or she may reasonably require.

(3) On the application of the interim supervisor, the Court may make an order requiring an officer of the company to comply with subsection (2).

(4) An officer of a company who fails to comply with an order of the Court made under subsection (3) commits an offence.

## Amendment of proposal before creditors' meeting

**26.** (1) The board of a company or, in the case of a company that is in administration or liquidation, its administrator or liquidator, may amend or withdraw a proposal in accordance with the Rules—

*(a)* before the appointment of an interim supervisor;

*(b)* after the appointment of an interim supervisor but before notice of a creditors' meeting has been given under section 27; or

*(c)* after notice of a creditor's meeting has been given under section 27 but before the date fixed for the meeting.

(2) The Board of a company may not amend or withdraw a proposal unless it has passed a resolution to do so.

(3) A proposal cannot be amended or withdrawn otherwise than in accordance with this section or section 31.
*(Amended by Act 11 of 2004)*

*Meeting of Creditors*

## Calling creditors' meeting

**27.** (1) The interim supervisor shall—

*(a)* prepare a written report on the proposal complying with the Rules;

*(b)* call a meeting of creditors for a date no later than 28 days after the commencement of the proposal period for the purposes of considering whether to approve the proposal;

*(c)* send to each creditor, together with the notice of the meeting, a copy of the proposal, his or her report on the proposal and a copy of the company's statement of affairs;

*(d)* cause the creditors' meeting to be advertised;

*(e)* send a copy of the notice of the creditors' meeting, together with copies of the documents sent to creditors, to every member of the company; and

*(f)* send to every director of the company a copy of the notice of the meeting, together with copies of the documents sent to creditors.

(2) Where a proposal is amended under section 26(1)*(b)*, this section and section 28 applies to the amended proposal as if it were the original proposal.

(3) An interim supervisor who contravenes subsection (1) commits an offence.

### Interim supervisor may require certain persons to attend creditors' meeting

**28.** (1) If the interim supervisor considers that it is reasonable to require the presence at a creditors' meeting called under section 27 of a person specified in subsection (4), the interim supervisor may, by notice, require the person to attend the meeting.

(2) In determining whether it is reasonable to require a person to attend the creditors' meeting, the matters that the interim supervisor shall have regard to include—

*(a)* the likely benefits of the person's attendance;

*(b)* the travel and associated expenses that will be incurred by him or her in attending the meeting, unless the interim supervisor is prepared to pay those expenses;

*(c)* the distance that he or she would be required to travel to attend the meeting; and

*(d)* the time that it would take him or her to travel to and from and attend the meeting.

(3) A notice under subsection (1) requiring a person to attend a creditors' meeting shall be sent to that person at least 14 days prior to the date of the meeting and shall be accompanied by copies of the documents required to be sent to creditors under section 27(1)*(c)*.

(4) Subsection (1) applies to an officer of the company and to any person who, at any time during the 2 years prior to the date of the notice, was an officer of the company.

(5) A person commits an offence if—

*(a)* he or she receives a notice to attend a creditors' meeting under subsection (1); and

*(b)* without reasonable excuse, he or she fails to attend the meeting.

### Attendance of  members and directors at creditors' meeting

**29.** (1) Subject to subsection (2), each member and director of a company is entitled to attend the creditors' meeting and, with the permission of the chairman, to address the meeting, but not to vote in that capacity at the meeting.

(2) The chairman of the creditors' meeting may, if he or she thinks fit, exclude any present or former director or other officer from attendance at the meeting, either completely or for any part of it.

(3) Subsection (2) applies whether or not the present or former director or other officer—

*(a)* is also a member; or

*(b)* has been sent a notice requiring him or her to attend the meeting.

## Business to be conducted at creditors' meeting

**30.** (1) At the meeting called under section 27, the creditors may resolve—

> *(a)* to approve the proposal, with or without amendment, and appoint the interim supervisor, or another eligible insolvency practitioner, to be the supervisor of the arrangement;

> *(b)* to adjourn the meeting to a date no later than 3 months after the commencement of the proposal period; or

> *(c)* to reject the proposal.

(2) A resolution to approve a proposal is invalid and of no effect if—

> *(a)* the proposal does not comply with section 15(4);

> *(b)* the proposal has been amended without the consent of the board or, in the case of a company in administration or liquidation, its administrator or liquidator; or

> *(c)* the proposal has been amended otherwise than in accordance with section 26 or section 31.

(3) The proposal is deemed to be rejected, and the creditors' meeting concluded, if—

> *(a)* the creditors fail to pass one of the resolutions specified in subsection (1); or

> *(b)* the creditors' meeting is not held on the date for which it was called or to which it was adjourned.

(4) On the rejection of a proposal the proposal period ends and the appointment of the interim supervisor is terminated.

(5) References in this section to a meeting include, where the meeting is adjourned, the adjourned meeting.

## Amendment or withdrawal of proposal at creditors' meeting

**31.** (1) Where, at a meeting called under section 27, the creditors wish to approve an amended proposal that has not been amended in accordance with section 26, the meeting shall be adjourned for sufficient time to enable the chairman of the meeting to give all creditors of the company not present or represented at the meeting at least 2 business days' notice—

> *(a)* of the venue of the adjourned meeting; and

> *(b)* of the amended proposal to be considered at the adjourned meeting.

(2) Where a meeting is adjourned under subsection (1), section 30 applies to the adjourned meeting—

(3) Subsection (1) does not apply if—

> *(a)* every creditor who was given notice of the meeting under section 27 is present or represented at the meeting; or

> *(b)* the chairman certifies in writing that an amendment is to correct minor errors or is otherwise not material.

*Insolvency Act*

(4) The board of a company or, in the case of a company that is in administration or liquidation, its administrator or liquidator, may withdraw a proposal at a creditors' meeting called under section 27 in accordance with the Rules. *(Inserted by Act 11 of 2004)*

## Report on outcome of creditors' meeting

**32.** (1) The chairman of a creditors' meeting called under section 27 shall, within 4 business days of the conclusion of the meeting, prepare a report complying with subsection (2).

(2) A report prepared under subsection (1) shall—

*(a)* state whether the proposal was approved or rejected or withdrawn and, if approved, with what modifications, if any; *(Amended by Act 11 of 2004)*

*(b)* set out the resolutions put to the meeting, and the decision on each one;

*(c)* list the creditors, with their respective values, who were present or represented at the meeting; and *(Amended by Act 11 of 2004)*

*(d)* *(Repealed by Act 11 of 2004)*

*(e)* include such further information, if any, that the chairman considers should be made known to creditors.

(3) The chairman shall—

*(a)* send a copy of his or her report to every creditor and every member of the company; and

*(b)* file a copy of his or her report with the Registrar.

(4) For the purposes of subsection (1), a creditors' meeting is concluded if—

*(a)* the creditors resolve either to approve or reject the proposal; or

*(b)* the proposal is withdrawn in accordance with section 31(4) or is deemed to be rejected. *(Amended by Act 11 of 2004)*

(5) A person who contravenes subsection (1) or subsection (3) commits an offence.

## Notification of appointment of supervisor

**33.** (1) The supervisor shall, within 2 business days of his or her appointment—

*(a)* file a notice of appointment as supervisor with the Registrar; and

*(b)* if the company is a regulated person, file a copy of the notice of his or her appointment with the Commission.

(2) A supervisor who contravenes subsection (1) commits an offence.

## Effect of approval of proposal

**34.** (1) Where a proposal is approved at a creditors' meeting, the arrangement is binding on the company and on each member and each creditor of the company as if he or she was a party to the arrangement.

(2) For the purposes of subsection (1), a person is a creditor of the company—

> *(a)* where the company is in administration or liquidation at the time that the proposal is approved, if he or she was a creditor at the commencement of the administration or liquidation, as the case may be; or

> *(b)* in any other case, if he or she has a claim against the company that would be an admissible claim in the liquidation of the company commencing at the time of the approval of the arrangement. *(Substituted by Act 11 of 2004)*

*Implementation of Arrangement*

## Supervisor to be given possession of assets included in arrangement

**35.** (1) After the approval of an arrangement the board or, where appropriate the administrator or liquidator, shall forthwith take all necessary steps to put the supervisor into possession of the assets included in the arrangement.

(2) The supervisor shall, on taking possession of the assets included in the arrangement—

> *(a)* where, at the time of approval, the company is in administration or liquidation—

>> (i) promptly discharge any sums due to the administrator or liquidator under the Act or the Rules; or

>> (ii) provide the administrator or liquidator with a written undertaking to discharge any such sums out of the assets as soon as practicable; and

> *(b)* where, at the time of approval, the company is in liquidation, promptly discharge any sums due to the preferential creditors.

(3) The supervisor shall, out of the assets included in the arrangement—

> *(a)* discharge all guarantees properly given, or obligations properly entered into, by the administrator or liquidator for the benefit of the company or in the course of his or her duties;

> *(b)* pay the administrator's or the liquidator's outstanding remuneration; and

> *(c)* if as part of the arrangement, the administration order is to be discharged and the administrator released or the liquidation terminated by order of the Court under section 233, pay the costs of such discharge, release or termination. *(Amended by Act 11 of 2004)*

*Insolvency Act*

(4) The following have equally ranking charges on the assets included in the arrangement, subject to the deduction of the proper costs and expenses of realisation—

> *(a)* notwithstanding his or her release or discharge, the administrator or liquidator of a company in respect of any monies payable under subsections (2) and (3); and

> *(b)* each preferential creditor in respect of any monies payable to him or her under subsection (2).

(5) In this section, "liquidator" and "administrator" includes, where appropriate, a former liquidator or administrator.

### Supervisor's duty to keep accounting records

**36.** (1) Where an arrangement permits or requires the supervisor—

> *(a)* to carry on the business of the company or trade on its behalf and in its name;

> *(b)* to realise assets of the company; or

> *(c)* otherwise to administer or dispose of any of its funds, he or she shall keep accounting records that correctly record and explain the receipts, expenditure and other transactions relating to his or her acts and dealings in and in connection with the arrangement.

(2) The supervisor shall retain the accounting records kept under subsection (1) for a period of not less than 6 years after the termination of the arrangement.

(3) A supervisor who contravenes this section commits an offence.

### Supervisor to prepare and send out regular accounts and reports

**37.** (1) The supervisor shall prepare accounts of his or her receipts and payments, if any, and reports concerning the progress and efficacy of the arrangement covering the periods specified in subsection (2).

(2) The accounts and reports prepared under subsection (1) shall cover—

> *(a)* the period of 12 months following the supervisor's appointment;

> *(b)* each subsequent period of 12 months; and

> *(c)* where the supervisor ceases to act as supervisor—

>> (i) the period from the end of the period covered by the last accounts required to be prepared under this section, or if he or she acted as supervisor for less than 12 months from the date of his or her appointment, to the date of his or her ceasing to act; and

>> (ii) the period from the date of his or her appointment to the date of his or her ceasing to act, unless prepared in accordance with subsection (2)*(c)*(i).

(3) The supervisor shall, within 60 days of the last day of the period covered by the accounts—

(a)  file a copy of the accounts and his or her report with the Registrar; and

(b)  send a copy of the accounts and his or her report to—

   (i)  the company;

   (ii)  each creditor of the company who is bound by the arrangement; and *(Amended by Act 11 of 2004)*

   (iii)  each member of the company.

(4) The Court, on the application of the supervisor, may dispense with the sending of the accounts and report prepared under subsection (1) to the members of the company.

(5) A supervisor who contravenes this section commits an offence.

## Completion or premature termination of arrangement

**38.** (1) Where an arrangement is completed or terminated prematurely, the supervisor shall, within 28 days of its completion or termination—

(a)  file a notice of completion or termination with the Registrar; and

(b)  send a notice of completion or termination to the company and to each creditor of the company who is bound by the arrangement and each member of the company.
*(Amended by Act 11 of 2004)*

(2) Where an arrangement is completed or terminated prematurely, the report prepared under section 37(2)*(c)* shall explain any material difference between the implementation of the arrangement and the proposal approved by the creditors. *(Amended by Act 11 of 2004)*

(3) A supervisor who contravenes this section commits an offence.

*Modification of Arrangement*

## Supervisor may propose modification of arrangement

**39.** (1) In this section and in section 40—

(a)  "creditor", in relation to an arrangement, means a creditor bound by that arrangement; and

(b)  "proposal" means a proposal to modify an arrangement.

(2) If the supervisor of an arrangement considers it appropriate, he or she may propose a modification of the arrangement at a meeting of creditors called for such a purpose.

(3) The supervisor shall call a meeting of creditors under subsection (2) by sending to each creditor—

(a)  a notice of the meeting; and

(b)  a written report on the proposed modification complying with the Rules.

(4) The supervisor shall send a copy of the notice of the meeting and his or her report on the proposed modification to each member and director of the company.

## Modification of arrangement

**40.** (1) Unless the Rules otherwise provide, sections 28, 29, 30 and 32 and the relevant Rules apply, with suitable modifications, to a meeting called under section 39.

(2) Where a proposal to modify an arrangement is approved—

*(a)* the modified arrangement is binding on the company and on each member and each creditor of the company as if he or she had agreed to the modification; and

*(b)* the provisions of this Division applicable to an arrangement apply to the modified arrangement.

(3) An arrangement may not be modified otherwise than in accordance with section 39 and this section.

*Applications to Court*

## Appointment of interim supervisor or supervisor by Court

**41.** (1) The Court may, on an application made by a person and in the circumstances specified in subsection (2), order that an eligible insolvency practitioner, is appointed as supervisor or interim supervisor either in substitution for the existing supervisor or interim supervisor or to fill a vacancy.

(2) An application under subsection (1) may be made—

*(a)* where the supervisor or interim supervisor has failed to comply with a duty imposed upon him or her under this Division or has died, by the board of the company, or where it is in administration or liquidation by the administrator or liquidator;

*(b)* where it is impracticable or inappropriate for the existing supervisor or interim supervisor to continue to act, by the board of the company, or where it is in administration or liquidation by the administrator or liquidator, or by the supervisor or interim supervisor; or

*(c)* where the licence of the insolvency practitioner appointed as supervisor or interim supervisor is suspended or revoked, by the Official Receiver. *(Inserted by Act 11 of 2004)*

(3) An order under subsection (1) may increase the number of persons acting as supervisor or interim supervisor or replace one or more of those persons.

## Application where arrangement approved or modified

**42.** (1) Where an arrangement is approved or modified, the Court may—

*(a)* on an application made by a person specified in subsection (2)—

(i)   give directions to the supervisor in relation to any matter arising;

(ii)  confirm, reverse or modify any act or decision of the supervisor; or

(iii) make such other order as it considers fit; or

(b) on an application made by the supervisor or, if appropriate the administrator or liquidator—

(i)   discharge the administration order or terminate the liquidation under section 233; and *(Amended by Act 11 of 2004)*

(ii)  give such directions regarding the administration or liquidation as it considers appropriate.

(2) Application under subsection (1)*(a)* may be made by the supervisor, by any administrator or liquidator, by a creditor, director or member of the company, by a surety of a liability of the company, by a co-debtor of the company, by a person affected by the arrangement or, where the company is a regulated person, by the Commission.

(3) The Court shall not make an order under subsection (1)*(b)*—

(a) until a period of 28 days after the chairman's report is filed under section 32(3); or

(b) at any time when an application under section 43, or an appeal in respect of such an application, is outstanding or during the period within which such an appeal may be brought. *(Amended by Act 11 of 2004)*

## Application on grounds of unfair prejudice

**43.** (1) An application may be made by a person specified in subsection (2) for an order under subsection (3) on one or both of the following grounds—

(a) that an arrangement approved or modified by the creditors unfairly prejudices the interests of a member, creditor, surety or co-debtor of the company; or

(b) that there has been a material irregularity at or in relation to the meeting at which the arrangement was approved or modified.

(2) An application for an order under subsection (3) may be made by—

(a) a member, creditor, surety or co-debtor of the company;

(b) the supervisor or the person who, immediately prior to the approval of the arrangement, acted as interim supervisor;

(c) where the company is in administration, the administrator;

(d) where the company is in liquidation, the liquidator; or

(e) where the company is a regulated person, the Commission.

(3) Where it is satisfied as to either of the grounds specified in subsection (1), the Court—

(a) may revoke or suspend—

*Insolvency Act*

(i) any decision approving or modifying the arrangement; or

(ii) any decision taken at a meeting at or in relation to which there was a material irregularity; and

(b) may give a direction to any person—

(i) for the calling of a further meeting to consider any amended proposal for an arrangement that the board or the supervisor may make;

(ii) for the calling of a further meeting to consider any amended proposal for a modification of the arrangement that the supervisor may make; or

(iii) where there has been a material irregularity, for the calling of a further creditors' meeting to reconsider the proposal for the arrangement or for the modification of an arrangement.

(4) Where at any time after giving a direction under subsection (3)(*b*)(i) or (ii), the Court is satisfied that the board, or the supervisor, does not intend to submit an amended proposal, the Court shall revoke the direction and revoke or suspend any decision approving the arrangement or the modification of an arrangement.

(5) Where the Court, on an application under this section, gives a direction under subsection (3)(*b*) or revokes or suspends a decision under subsection (3)(*a*) or (4), the Court may give such supplemental directions as it considers fit and, in particular, directions with respect to things done under the arrangement since it, or any modification, took effect.

(6) Except as provided in this section, a decision taken at a meeting called under section 27 or 39 is not invalidated by any irregularity at or in relation to the meeting.

(7) Without limiting subsection (1)(*a*), the interests of a member, creditor, surety or co-debtor of the company are capable of being unfairly prejudiced on the grounds that the remuneration paid or to be paid to the supervisor is excessive.

(8) Subject to subsection (9), no application under this section shall be made after the arrangement has been completed or has prematurely terminated. *(Inserted by Act 11 of 2004)*

(9) A creditor who did not participate in the approval of an arrangement may make an application under this section after the completion of an arrangement if, when the arrangement was completed, he or she was unaware of the arrangement. *(Inserted by Act 11 of 2004)*

(10) An application under subsection (9) shall be made within 4 weeks of the creditor first becoming aware of the arrangement. *(Inserted by Act 11 of 2004)*

(11) For the purposes of this section, a creditor does not participate in the approval of an arrangement if, for whatever reason—

(a) he or she was not given notice of the meeting of creditors called to consider the proposal; and

26-10769-mg    Doc 77-2    Filed 06/05/26    Entered 06/05/26 16:53:44    Exhibit 2 -
Transcript of the Remote Deposition of Riz Mokal    Pg 562 of 991

LAW OF
VIRGIN ISLANDS                          *Insolvency Act*                          47
Revision Date: 1 Jan 2020

*(b)* he or she did not attend the meeting at which the arrangement was approved, whether in person or by proxy.
*(Inserted by Act 11 of 2004)*

## Application to Court by former supervisor or interim supervisor

**44.** Where an application may be made to the Court by a supervisor or an interim supervisor under sections 41 , 42 or 43, an application may, with the leave of the Court, be made by the person who was the supervisor or interim supervisor immediately before—

*(a)* the termination of his or her appointment;

*(b)* the termination of the arrangement; or

*(c)* the termination of the proposal period, as the case may be.
*(Amended by Act 11 of 2004)*

*Offences*

## False representations etc.

**45.** An officer of a company who makes any false representation or who fraudulently does, or omits to do, anything for the purpose of obtaining the approval of the creditors of the company to an arrangement commits an offence.

## Division 3

### *Individual Creditors' Arrangement*

## Interpretation for and scope of this Division

**46.** (1) In this Division—

"debtor" means an individual who intends to make or who has made a proposal under this Division; and

"interested person" means—

*(a)* in relation to a security interest, the person entitled to the security interest or any receiver appointed under the security interest;

*(b)* in relation to an asset not belonging to a debtor which is used or occupied by or in the possession of the debtor, the owner or lessor of the asset;

*(c)* in relation to proceedings, execution or legal process, including distress, a person who is entitled to commence or continue the proceedings, execution or legal process or levy the distress; and

*(d)* in relation to a guarantee of a liability of the debtor, the person entitled to enforce the guarantee;

"proposal period" means the period from the appointment of the interim supervisor to the approval or rejection by the creditors of the proposed arrangement.

(2) An undischarged bankrupt may not make a proposal under this Division.

(3) Where the context allows, a reference in this Division to the extension of a moratorium period includes a further extension of the moratorium period.

*Proposal*

**Proposal**

**47.** (1) A debtor who intends to make a proposal under this Division shall—

(a) nominate an eligible insolvency practitioner to act as interim supervisor for the purposes of the proposal; and *(Amended by Act 11 of 2004)*

(b) provide the nominated insolvency practitioner with—

(i) a copy of the proposal;

(ii) a statement of assets and liabilities made up to a date no earlier than 4 weeks prior to the date upon which it is provided to the nominated insolvency practitioner; and

(iii) a notice of intention to appoint the nominated insolvency practitioner as interim supervisor.

(2) The nominated insolvency practitioner may accept appointment as interim supervisor, by delivering to the debtor a copy of the notice referred to in subsection (1)*(b),* endorsed in accordance with the Rules.

(3) Subject to subsection (4), the appointment of an interim supervisor takes effect from the time when he or she delivers the endorsed notice to the debtor.

(4) The appointment of an interim supervisor is not effective unless he or she accepts appointment under subsection (2) within 5 business days of the date of receiving the notice of intention to appoint him or her as interim supervisor from the debtor.

**Notification of appointment of interim supervisor**

**48.** (1) The interim supervisor shall, within 2 business days of his or her appointment file a copy of the notice of his or her appointment with the Official Receiver and, if the debtor is a regulated person, with the Commission. *(Substituted by Act 11 of 2004)*

(2) An interim supervisor who contravenes subsection (1) commits an offence.

**Functions of interim supervisor and power to obtain information**

**49.** (1) The functions of an interim supervisor are—

(a) to prepare a report on the proposal for the Court;

(b) to carry out any duties assigned to him or her by this Act or the Rules or by the Court;

*(c)* to undertake such functions and duties as he or she may agree with the debtor; and

*(d)* to monitor the affairs of the debtor, including the conduct of any business carried on by the debtor, during the proposal period.

(2) For the purposes of enabling the interim supervisor to exercise his or her functions, a debtor shall—

*(a)* provide to the interim supervisor such documents, information and explanations as he or she may reasonably require; and

*(b)* give the interim supervisor such assistance as he or she may reasonably require.

(3) On the application of the interim supervisor, the Court may make an order requiring a debtor to comply with subsection (2).

(4) A debtor who fails to comply with an order of the Court made under subsection (3) commits an offence.

## Amendment of proposal after appointment of interim supervisor

**50.** (1) A debtor may amend or withdraw a proposal in accordance with the Rules—

*(a)* before the appointment of an interim supervisor;

*(b)* after the appointment of an interim supervisor but before notice of a creditors' meeting has been given under section 58; or

*(c)* after notice of a creditors' meeting has been given under section 58 but before the date fixed for the meeting.

(2) A proposal cannot be amended or withdrawn otherwise than in accordance with this section or section 60.

*(Amended by Act 11 of 2004)*

*Moratorium*

## Application for moratorium order

**51.** (1) A debtor who intends to make a proposal may apply to the Court for a moratorium order under this section if—

*(a)* he or she is entitled to apply to the Court for a bankruptcy order under section 295;

*(b)* an eligible insolvency practitioner has accepted appointment as interim supervisor under the proposal in accordance with section 47;

*(c)* no previous application for a moratorium has been made by the debtor during the 12 months immediately preceding the date of the application; and

*(d)* he or she is not a regulated person.

*Insolvency Act*

(2) An application under subsection (1) shall be supported by an affidavit setting out the matters prescribed and exhibiting—

> (a) a copy of the proposal provided to the interim supervisor under section 47(1)*(b)*;

> (b) a copy of the endorsed notice of appointment of the interim supervisor; and

> (c) a statement of assets and liabilities.

(3) The debtor shall give 2 business days notice of the hearing of an application under this section to—

> (a) the interim supervisor; and

> (b) any creditor who, to his or her knowledge, has applied to the Court for a bankruptcy order against him or her.

## Court may grant stay

**52.** (1) At any time when an application under section 51 for a moratorium order is pending, the Court may, on the application of the debtor or the interim supervisor, stay any action, execution or other legal process against the debtor or his or her assets.

(2) Any Virgin Islands court, or any tribunal in the Virgin Islands, in which proceedings are pending against a debtor may, on proof that an application under section 51 has been made by the debtor, either stay those proceedings or allow them to continue on such terms as it considers just.

## Moratorium order

**53.** (1) The Court may make a moratorium order on an application under section 51 if it considers that it would be appropriate to do so for the purpose of facilitating the consideration of the debtor's proposal.

(2) Unless extended by the Court under this section, a moratorium order ceases to have effect at the end of the 14th day after the date upon which it is made.

(3) If the Court makes a moratorium order under subsection (1), it shall at the same time fix a venue for consideration of the interim supervisor's report under section 56, no later than the date of expiry of the moratorium order under subsection (2).

(4) In a case where the interim supervisor has failed to submit his or her report as required by section 56, the Court may, on the application of the debtor, direct that the moratorium order shall continue or, if it has ceased to have effect, be renewed for such further period as the Court may order.

(5) The Court may, on the application of the interim supervisor, extend the period for which the moratorium order has effect so as to enable the interim supervisor to have more time to prepare and submit his or her report under section 56.

(6) The Court may, at any time, discharge the moratorium order if it is satisfied, whether by reason of a report made to it by the interim supervisor under section 54 or otherwise—

(a) that the debtor has failed to comply with his or her obligations under section 49(2);

(b) that it would not be appropriate for a meeting of creditors to be called to consider the debtor's proposal; or

(c) that, for any other reason, it is appropriate for the moratorium order to be discharged.

(7) An order discharging the moratorium order may be made by the Court on the application of the debtor or the interim supervisor or on its own motion.

### Duty of interim supervisor to report certain matters to the Court

**54.** The interim supervisor shall report to the Court forthwith if, at any time during the period when a moratorium order is in force—

(a) he or she forms the view that the proposed arrangement no longer has a reasonable prospect of being approved or implemented; or

(b) the debtor fails to comply with his or her obligations under section 49(2).

### Effect of moratorium order

**55.** (1) In the period during which a moratorium order is in force in respect of a debtor—

(a) no application for a bankruptcy order against the debtor may be presented or proceeded with;

(b) no bankruptcy order may be made against the debtor;

(c) no steps may be taken to enforce any security interest over the debtor's assets, except with the leave of the Court;

(d) no steps may be taken to repossess assets that are being used or occupied by or are in the possession of the debtor, including—

(i) goods supplied under a hire purchase, conditional sale or chattel leasing agreement; and

(ii) goods supplied subject to a retention of title agreement, except with the leave of the Court; and

(e) no proceedings, execution or other legal process may be commenced or continued or distress levied against the debtor or his or her assets, except with the leave of the Court.

(2) On an application for leave under subsection (1)*(c)* to *(e)*, the Court may grant leave subject to such terms and conditions as it considers fit.

(3) Subsection (1) does not prevent or require the leave of the Court to be obtained for—

(a) the enforcement of a security interest on assets belonging to a debtor if, before the commencement of the moratorium period, an interested person lawfully—

(i) entered into possession or assumed control of the assets; or

*Insolvency Act*

  (ii) entered into a binding agreement to sell the assets, for the purpose of enforcing the security interest on those assets;

 *(b)* the repossession of assets being used or occupied by or in the possession of a debtor if, before the commencement of the moratorium period, an interested person lawfully entered into possession, or assumed control of those assets; or *(Amended by Act 11 of 2004)*

 *(c)* the exercise by a creditor of any set-off that he or she would have been entitled to exercise under section 150 if the debtor was in bankruptcy, the bankruptcy having commenced on the date that the moratorium order was made.

*Consideration of Proposal*

## Interim supervisor's report on debtor's proposal

**56.** (1) An interim supervisor shall, before the end of the relevant time limit specified in subsection (3), file with the Court a report including the matters prescribed in the Rules.

(2) An interim supervisor shall file with the report—

 *(a)* where the debtor made an application for a moratorium order under section 51 and the proposal has since been amended, a copy of the amended proposal; or

 *(b)* where the debtor has not made an application for a moratorium order, copies of the documents referred to in section 51(2)*(a)* to *(c)*.

(3) The relevant time limits for the purposes of subsection (1) are—

 *(a)* where a moratorium order has been made, no less than 2 business days prior to the date of the hearing fixed under section 53(3);

 *(b)* in any other case, within 14 days after the date of the appointment of the interim supervisor.

(4) The Court may, on the application of the interim supervisor, extend the period within which the interim supervisor shall submit his or her report under subsection (1) by such further period as it considers appropriate.

## Extension of moratorium

**57.** (1) This section applies where a moratorium order is in force at the time when the interim supervisor files his or her report with the Court.

(2) If, on receiving the interim supervisor's report, the Court is satisfied that a meeting of creditors should be called to consider the debtor's proposal, the Court shall extend the period for which the moratorium order is in force for such further period as it may specify for the purpose of enabling the debtor's proposal to be considered by his or her creditors in accordance with this Division and for the result of the creditors' meeting to be reported to the Court.

## Calling creditors' meeting

**58.** (1) Unless the Court otherwise orders, where the interim supervisor has reported to the Court that a meeting of creditors should be called, he or she shall—

> *(a)* call a meeting of creditors at the venue proposed in his or her report; and
>
> *(b)* send to each creditor, together with the notice of the meeting, a copy of the debtor's proposal, his or her report on the proposal and a copy of the debtor's statement of assets and liabilities.

(2) An interim supervisor who contravenes subsection (1) commits an offence.

## Decisions of creditors' meetings

**59.** (1) At the meeting called under section 58, the creditors may resolve—

> *(a)* to approve the proposal, with or without amendment, and appoint the interim supervisor, or another eligible insolvency practitioner, to be the supervisor of the arrangement;
>
> *(b)* to adjourn the meeting to a date no later than 28 days after the date for which the meeting was originally called; or
>
> *(c)* to reject the proposal.

(2) A resolution to approve a proposal is invalid and of no effect if—

> *(a)* the proposal does not comply with section 15(4);
>
> *(b)* the proposal has been amended without the consent of the debtor; or
>
> *(c)* the proposal has been amended otherwise than in accordance with section 50 or section 60.

(3) The proposal is deemed to be rejected, and the creditors' meeting concluded, if—

> *(a)* the creditors fail to pass one of the resolutions specified in subsection (1); or
>
> *(b)* the creditors' meeting is not held on the date for which it was called or to which it was adjourned.

(4) Where a meeting of creditors is adjourned, the chairman shall forthwith file a notice of the adjournment with the Court and the Court may, on the application of the debtor or the interim supervisor, extend the period for which the moratorium order is in force for such further period as it may specify for the purpose of enabling the adjourned meeting to be held and for the result to be reported to the Court.

(5) References in this section and section 60 to a meeting include, where the meeting is adjourned, an adjourned meeting.

54 *Insolvency Act*

### Amendment or withdrawal of proposal at creditors' meeting

**60.** (1) Where, at a meeting held under section 59, the creditors wish to approve an amended proposal that has not been amended in accordance with section 50, the meeting shall be adjourned for sufficient time to enable the chairman of the meeting to give all creditors not present or represented at the meeting at least 2 business days notice—

   *(a)* of the venue of the adjourned meeting; and

   *(b)* of the amended proposal to be considered at the adjourned meeting.

   (2) Where a meeting is adjourned under subsection (1), section 59 applies to the adjourned meeting.

   (3) Subsection (1) does not apply—

   *(a)* if every creditor who was given notice of the meeting under section 58 is present or represented at the meeting; or *(Amended by Act 11 of 2004)*

   *(b)* if the chairman certifies in writing that an amendment is to correct minor errors or is otherwise not material.

   (4) The debtor may withdraw a proposal at a creditors' meeting called under section 58 in accordance with the Rules. *(Inserted by Act 11 of 2004)*

### Report of decisions to Court

**61.** (1) The chairman of a creditors' meeting called under section 58 shall, within 4 business days of the date of the conclusion of the meeting—

   *(a)* file with the Court a report of the meeting complying with subsection (2);

   *(b)* file a notice of the arrangement with the Official Receiver; and

   *(c)* if the debtor is a regulated person, file notice of the arrangement with the Commission.

   (2) A report filed under subsection (1)*(a)* shall—

   (a) state whether the proposal was approved or rejected or withdrawn and, if approved, with what modifications, if any; *(Amended by Act 11 of 2004)*

   *(b)* set out the resolutions put to the meeting, and the decision on each one;

   *(c)* list the creditors, with their respective values, who were present or represented at the meeting; and

   *(d)* include such further information, if any, that the chairman considers should be made known to the Court.

   (3) If a report filed under subsection (1)*(a)* states that the meeting has rejected the proposal or that it was withdrawn by the debtor under section 60(4), any moratorium order in force is discharged with effect from the end of the fourth business day after the conclusion of the meeting unless the Court otherwise orders. *(Amended by Act 11 of 2004)*

(4) The chairman of the meeting shall, as soon as practicable after filing his or her report with the Court, send a notice stating the result of the meeting to all creditors of the debtor.

(5) A person who contravenes subsection (1) or subsection (4) commits an offence.

## Effect of approval

**62.** (1) Where the meeting of creditors called under section 58 approves the proposed arrangement, the arrangement—

*(a)* takes effect as if made by the debtor at the meeting; and

*(b)* is binding on the debtor and each creditor of the debtor as if he or she were a party to the arrangement.

(2) For the purposes of subsection (1), a person is a creditor of the debtor if he or she has a claim against the debtor that would be an admissible claim in the bankruptcy of the debtor commencing at the time of the approval of the arrangement.

(3) If—

*(a)* when the arrangement ceases to have effect any amount payable under the arrangement to a person bound by the arrangement has not been paid; and

*(b)* the arrangement did not come to an end prematurely, the debtor shall, at that time, become liable to pay to that person the amount payable under the arrangement.

(4) For the purposes of subsection (3), an arrangement comes to an end prematurely if, when it ceases to have effect, it has not been fully implemented in respect of all persons bound by the arrangement.

(5) Subject to section 72, any moratorium order in force in relation to the debtor immediately before the end of the period of 28 days beginning with the day on which the report with respect to the creditors' meeting was filed with the Court under section 61 ceases to have effect at the end of that period.

(6) Where proceedings on an application for a bankruptcy order have been stayed by a moratorium order which ceases to have effect under subsection (5), that application is deemed, unless the Court otherwise orders, to have been dismissed. *(Amended by Act 11 of 2004)*

*Implementation of Arrangement*

## Supervisor to be given possession of assets included in arrangement

**63.** After the approval of an arrangement the debtor shall forthwith take all necessary steps to put the supervisor into possession of the assets included in the arrangement.

## Supervisor's duty to keep accounting records

**64.** (1) Where an arrangement permits or requires the supervisor—

*(a)* to carry on the debtor's business or trade on his or her behalf or in his or her name;

*(b)* to realise assets of the debtor; or

*(c)* otherwise to administer or dispose of any of the debtor's funds,

he or she shall keep accounting records that correctly record and explain the receipts, expenditure and other transactions relating to his or her acts and dealings in and in connection with the arrangement.

(2) The supervisor shall retain the accounting records kept under subsection (1) for a period of not less than 6 years after the termination of the arrangement.

(3) A supervisor who contravenes this section commits an offence.

## Supervisor to prepare and send out regular accounts and reports

**65.** (1) The supervisor shall prepare accounts of his or her receipts and payments, if any, and reports concerning the progress and efficacy of the arrangement covering the periods specified in subsection (2).

(2) The accounts and reports prepared under subsection (1) shall cover—

*(a)* the period of 12 months following the supervisor's appointment;

*(b)* each subsequent period of 12 months; and

*(c)* where the supervisor ceases to act as supervisor—

(i) the period from the end of the period covered by the last accounts required to be prepared under this section, or if he or she acted as supervisor for less than 12 months from the date of his or her appointment, to the date of his or her ceasing to act; and

(ii) the period from the date of his or her appointment to the date of his or her ceasing to act, unless prepared in accordance with subparagraph (i).

(3) The supervisor shall, within 60 days of the last day of the period covered by the accounts—

*(a)* file a copy of the accounts and his or her report with the Court; and

*(b)* send a copy of the accounts and his or her report to—

(i) the Official Receiver; *(Amended by Act 11 of 2004)*

(ii) the debtor; and

(iii) each creditor of the debtor who is bound by the arrangement. *(Amended by Act 11 of 2004)*

(4) A supervisor who contravenes this section commits an offence.

## Completion or premature termination of arrangement

**66.** (1) Where an arrangement is completed or terminated prematurely, the supervisor shall, within 28 days of its completion or termination, file a notice of

completion or termination with the Court and send a copy of the notice to the debtor and to each creditor of the debtor who is bound by the arrangement. *(Amended by Act 11 of 2004)*

(2) Where an arrangement is completed or terminated, the report prepared under section 65(2)*(c)* shall explain any difference between the implementation of the agreement and the proposal approved by the creditors. *(Amended by Act 11 of 2004)*

(3) A supervisor who contravenes this section commits an offence.

*Modification of Arrangement*

## Supervisor may propose modification of arrangement

**67.** (1) In this section and in section 68—

*(a)* "creditor", in relation to an arrangement, means a creditor bound by that arrangement; and

*(b)* "proposal" means a proposal to modify an arrangement.

(2) If the supervisor of an arrangement considers it appropriate, he or she may propose a modification of the arrangement at a meeting of creditors called for such a purpose.

(3) The supervisor shall call a meeting of creditors under subsection (2) by sending to each creditor—

*(a)* a notice of the meeting; and

*(b)* a written report on the proposed modification complying with the Rules.

*(Amended by Act 11 of 2004)*

(4) The supervisor shall send a copy of the notice of the meeting and his or her report on the proposed modification to the debtor.

## Modification of arrangement

**68.** (1) Subject to the exceptions specified in the Rules, sections 59 and 61 and the relevant Rules apply, with suitable modifications, to a meeting called under section 67.

(2) Where a proposal to modify an arrangement is approved—

*(a)* the modified arrangement is binding on the debtor and on each creditor of the debtor as if he or she had agreed to the modification; and

*(b)* the provisions of this Division applicable to an arrangement apply to the modified arrangement.

(3) An arrangement may not be modified otherwise than in accordance with section 67 and this section.

*Applications to Court*

### Appointment of interim supervisor or supervisor

**69**. (1) The Court may, on an application made by a person and in the circumstances specified in subsection (2), order that an eligible insolvency practitioner, is appointed as supervisor or interim supervisor either in substitution for the existing supervisor or interim supervisor or to fill a vacancy. *(Amended by Act 11 of 2004)*

(2) An application under subsection (1) may be made—

(a) where the interim supervisor has failed to submit the report required by section 56, on the application of the debtor;

(b) where the supervisor or interim supervisor has failed to comply with a duty imposed upon him or her under this Division or has died, by the debtor;

(c) where it is impracticable or inappropriate for the existing supervisor or interim supervisor to continue to act, by the debtor or by the supervisor or interim supervisor; or

(d) where the licence of the supervisor or interim supervisor is suspended or revoked, by the Official Receiver. *(Substituted by Act 11 of 2004)*

(3) An order under subsection (1) may increase the number of persons acting as supervisor or interim supervisor or replace one or more of those persons.

### Application in respect of moratorium

**70.** (1) Where a moratorium order is or has been in force in respect of a debtor, the Court may, on an application made by the debtor, by the supervisor or interim supervisor, by a creditor, by a person affected by the moratorium or, where the individual is a regulated person, by the Commission—

(a) give directions to the supervisor or interim supervisor in relation to any matter arising in connection with the moratorium;

(b) confirm, reverse or modify any act or decision of the supervisor or interim supervisor;

(c) terminate the moratorium order and make such consequential provisions as it considers fit; or

(d) make such other order, whether in relation to the supervisor or interim supervisor, the debtor or otherwise as it considers fit.

(2) Without limiting subsection (1)*(d)*, an order under that subsection—

(a) may require the debtor to refrain from doing or continuing an act complained of by the applicant, or to do an act that the applicant has complained he or she has omitted to do;

(b) may require the calling of a meeting of creditors for the purpose of considering such matters as the Court may direct; and

    *(c)* may make such provision as the Court considers necessary to protect the interests of one or more creditors in the period during which the moratorium order is in force.

    (3) An application under subsection (1) may be made during the period in which the moratorium order is in force or after the moratorium order has been discharged.

    (4) In making an order under this section, the Court shall have regard to the need to safeguard the interests of persons who have dealt with the debtor in good faith and for value.

## Application where arrangement approved or modified

    **71.** (1) Where an arrangement is approved or modified, the Court may, on an application made by a person specified in subsection (2)—

    *(a)* give directions to the supervisor in relation to any matter arising in connection with the arrangement;

    *(b)* confirm, reverse or modify any act or decision of the supervisor; or

    *(c)* make such other order as it considers fit.

    (2) Application under subsection (1) may be made by the supervisor, by the debtor, by a creditor of the debtor, by a surety of a liability of the debtor, by a co-debtor of the debtor, by a person affected by the arrangement or, where the individual is a regulated person, by the Commission.

## Application on grounds of unfair prejudice

    **72.** (1) An application may be made by a person specified in subsection (2) for an order under subsection (3) on one or both of the following grounds—

    *(a)* that an arrangement approved or modified by the creditors at a meeting called under section 58 unfairly prejudices the interests of a creditor, surety or co-debtor; or

    *(b)* that there has been a material irregularity at or in relation to the meeting at which the arrangement was approved or modified.

    (2) An application for an order under subsection (1) may be made by—

    *(a)* the debtor;

    *(b)* the supervisor or the person who, immediately prior to the approval of the arrangement, acted as interim supervisor;

    *(c)* a creditor, surety or co-debtor of the debtor; or

    *(d)* where the individual is a regulated person, the Commission. *(Amended by Act 11 of 2004)*

    (3) Where it is satisfied as to either of the grounds specified in subsection (1), the Court may—

    *(a)* revoke or suspend—

      (i) any decision approving or modifying the arrangement; or

(ii) any decision taken at a meeting at or in relation to which there was a material irregularity;

(b) give a direction to any person—

(i) for the calling of a further meeting to consider any amended proposal for an arrangement that the supervisor or the debtor may make;

(ii) for the calling of a further meeting to consider any amended proposal for a modification of the arrangement that the supervisor may make;

(iii) where there has been a material irregularity, for the calling of a further creditors' meeting to reconsider the proposal for the arrangement or for the modification of an arrangement.

(4) Where at any time after giving a direction under subsection (3)*(b)*(i), the Court is satisfied that the debtor does not intend to submit an amended proposal, the Court shall revoke the direction and revoke or suspend any decision approving the arrangement or the modification of the arrangement.

(5) Where the Court, on an application under this section gives a direction under subsection (3)*(b)* or revokes or suspends a decision under subsection (4), the Court may—

(a) direct that any moratorium order in place be continued or, if it has ceased to have effect, be renewed for such further period as the Court may order; and

(b) give such supplemental directions as it considers fit and, in particular, directions with respect to things done under the arrangement since it took effect.

(6) Except as provided in this section, a decision taken at a meeting called under section 58 or section 67 is not invalidated by any irregularity at or in relation to the meeting. *(Amended by Act 11 of 2004)*

(7) Without limiting subsection (1)*(a)*, the interests of a member, creditor, surety or co-debtor of the debtor are capable of being unfairly prejudiced on the grounds that the remuneration paid or to be paid to the supervisor is excessive. *(Amended by Act 11 of 2004)*

(8) Subject to subsection (9), no application under this section shall be made after the arrangement has been completed or has prematurely terminated. *(Inserted by Act 11 of 2004)*

(9) A creditor who did not participate in the approval of an arrangement may make an application under this section after the completion of an arrangement if, when the arrangement was completed, he or she was unaware of the arrangement. *(Inserted by Act 11 of 2004)*

(10) An application under subsection (9) shall be made within 4 weeks of the creditor first becoming aware of the arrangement. *(Inserted by Act 11 of 2004)*

(11) For the purposes of this section, a creditor does not participate in the approval of an arrangement if, for whatever reason—

(a) he or she was not given notice of the meeting of creditors called to consider the proposal; and

*(b)* he or she did not attend the meeting at which the arrangement was approved, whether in person or by proxy.

*(Inserted by Act 11 of 2004)*

## *Miscellaneous*

### Register of arrangements

**73.** (1) The Official Receiver shall maintain a register of arrangements made under this Division and shall record in the register all matters that are required to be reported to him or her under this Division or under the corresponding Division in the Rules.

(2) A member of the public is entitled to inspect the register maintained under subsection (1) on payment of the prescribed fee.

## *Offences*

### False representations etc.

**74.** (1) A debtor who makes any false representation or who fraudulently does, or omits to do, anything for the purpose of obtaining the approval of his or her creditors to an arrangement commits an offence.

(2) Subsection (1) applies whether or not the proposal is approved.

## PART III

## ADMINISTRATION

## *Preliminary*

### Interpretation for and scope of this Part

**75.** (1) In this Part—

"interested person" means—

*(a)* in relation to a security interest, the person entitled to the security interest or any receiver appointed under the security interest;

*(b)* in relation to an asset not belonging to a company which is used or occupied by or in the possession of the company, the owner or lessor of the asset;

*(c)* in relation to proceedings, execution or legal process, including distress, a person who is entitled to commence or continue the proceedings, execution or legal process or levy the distress; and

*(d)* in relation to a guarantee of a liability of the company, the person entitled to enforce the guarantee;

"moratorium period" is the period specified in section 83(1).

(2) An administration order may not be made in respect of a foreign company.

*Administration Orders*

## Meaning of administration order

**76.** (1) An administration order is an order directing that, during the period for which the order is in force, the business, assets and affairs of a company shall be managed by an administrator appointed by the Court with a view to achieving one or more of the following purposes—

> *(a)* the rehabilitation of the company or of one or more companies in a group of companies of which the company is a member;

> *(b)* the survival of all or any part of the company's undertaking as a going concern;

> *(c)* a better return for the company's creditors than would result from an immediate liquidation;

> *(d)* the approval of a creditors' arrangement under Part II;

> *(e)* to facilitate an application, or the provision of cooperation, under Part XVIII or Part XIX.

(2) Where an administration order is made in respect of a company, that company is referred to in this Act as "in administration" until the discharge of the order.

(3) For the purposes of subsection (1)*(a)* a "group of companies" comprises a holding company and its subsidiaries.

(4) In subsection (3), "company" means any body corporate.

## Court may make an administration order

**77.** (1) Subject to subsections (3) and (4), section 78(2) and section 79(2), the Court may, on application by a person specified in subsection (2), make an administration order in respect of a company if—

> *(a)* it is satisfied that the company is or is likely to become insolvent; and

> *(b)* it considers that there is a reasonable prospect that the making of the order will achieve one or more of the purposes specified in section 76(1).

(2) Application for an administration order may be made by one or more of the following—

> *(a)* the company, or the board of the company; *(Amended by Act 11 of 2004)*

> *(b)* a creditor;

> *(c)* the supervisor of an arrangement in respect of the company; and

> *(d)* the Commission, where the company—

26-10769-mg    Doc 77-2    Filed 06/05/26    Entered 06/05/26 16:53:44    Exhibit 2 -
Transcript of the Remote Deposition of Riz Mokal    Pg 578 of 991

LAW OF
VIRGIN ISLANDS                            *Insolvency Act*                            63
Revision Date: 1 Jan 2020

(i)  is or has been a regulated person; or

(ii)  is carrying on, or has carried on, unlicensed financial services business.

(3) An application for an administration order shall be served not less than 7 business days prior to the date fixed for the hearing—

(a)  on any person who has appointed or is or may be entitled to appoint an administrative receiver for the company;

(b)  if an administrative receiver has been appointed, on him or her;

(c)  if the application is made by any person other than the company, on the company;

(d)  if an application has been made for the appointment of a liquidator of the company, on the applicant and on any provisional liquidator of the company;

(e)  *(Repealed by Act 11 of 2004)*

(f)  *(Repealed by Act 11 of 2004)*

(g)  on the Commission if—

(i)  the company is or has been a regulated person; and

(ii)  the applicant is not the Commission; and *(Amended by Act 11 of 2004)*

(h)  on any other person prescribed by the Rules. *(Inserted by Act 11 of 2004)*

(4) Without limiting section 496(2)*(b)*, an administration order shall not be made unless service of the application has been effected on the persons specified in subsection (3)*(a)* to *(g)*. *(Amended by Act 11 of 2004)*

(4A) The Court shall not abridge the time period specified in subsection (3) in respect of a person specified in subsection (3)*(a)* without that person's consent. *(Inserted by Act 11 of 2004)*

(5) An application for an administration order may not be withdrawn except with the leave of the Court.

## Application in respect of insurance companies

**78.** (1) Where an application for an administration order is made by the Commission in respect of an insurance company, for the purposes of section 77(1)*(a)*, the insurance company is deemed to be insolvent if the total value of its assets does not exceed the total amount of its liabilities by at least the minimum margin of solvency required under the Insurance Act. *(Amended by Act 1 of 2008).*

(2) An application for an administration order may not be made in respect of an insurance company unless the Commission has consented in writing.

## Powers of Court on hearing of application for administration order

**79.** (1) Subject to subsection (2), on the hearing of an application for an administration order, the Court may—

>    *(a)* make an administration order in respect of the company;

>    *(b)* dismiss the application;

>    *(c)* adjourn the hearing conditionally or unconditionally;

>    *(d)* make any interim order or other order that it considers fit; or

>    *(e)* treat the application as an application for the appointment of a liquidator and make any order that it could make under section 167.

(2) Subject to section 80, an application for an administration order shall be dismissed if—

>    *(a)* the company is in liquidation;

>    *(b)* the Court is satisfied that a qualifying administrative receiver has been appointed for the company who, in accordance with section 142(2) is entitled to act, unless the Court is also satisfied—

>>    (i) that the person by whom or on whose behalf the administrative receiver was appointed consents to the making of an order; or

>>    (ii) that any security interest under which the administrative receiver was appointed would, if an administration order was made, be liable to be set aside as a voidable transaction under Part VIII; or

>    *(c)* in the case of an insurance company, the Commission has not consented in writing to the application being made.

(3) For the purposes of subsection (2), an administrative receiver is a qualifying administrative receiver if—

>    *(a)* he or she is a licensed insolvency practitioner, whether or not he or she has been appointed to act jointly with an overseas insolvency practitioner, within the meaning of section 473; and

>    *(b)* notice of his or her appointment has been filed with the Registrar under section 118(1) no later than the day before the date of the hearing of the application. *(Substituted by Act 11 of 2004)*

(4) Where the Court makes an administration order it shall, at the same time, appoint an eligible insolvency practitioner to be the administrator of the company.

(5) If the Court makes an order under subsection (1)*(c)*, it shall give directions as to the persons to whom, and how, notice is to be given.

## Application where company in liquidation

**80.** (1) The liquidator of a company may apply to the Court for an administration order.

(2) If the Court makes an administration order on the application of the liquidator of a company—

(a) the Court—

(i) shall discharge the order appointing the liquidator;

(ii) shall make provision for such matters as may be prescribed;

(iii) may make such consequential provision as it considers appropriate; and

(iv) shall specify which of the powers of an administrator are to be exercisable by the administrator; and

(b) this Part has effect with such modifications as the Court may specify.

## Effect of administration order

**81.** Where the Court makes an administration order—

(a) any application for the appointment of a liquidator shall be dismissed; and

(b) any administrative receiver of the company is deemed to have vacated office.

## Notification and advertisement of administration order

**82.** (1) Where an administration order is made, the administrator shall—

(a) forthwith, after the making of the order, give notice of his or her appointment to—

(i) any person who has appointed, or who is or may be entitled to appoint, an administrative receiver of the company;

(ii) any administrative receiver who has been appointed;

(iii) if an application for the appointment of a liquidator is pending, to the applicant and to any provisional liquidator that may have been appointed; and

(iv) such other person as may be prescribed by the Rules; *(Inserted by Act 11 of 2004)*

(b) within 5 days of the making of the order—

(i) advertise the order and his or her appointment as administrator; and

(ii) file a notice of his or her appointment together with a sealed copy of the order with the Registrar and, if the company in administration is or has been a regulated person, with the Commission; and

(c) within 28 days of the order, send a notice in the prescribed form to the company and to every creditor of the company.

(2) An administrator who, without reasonable excuse, fails to comply with subsection (1) commits an offence.

66 *Insolvency Act*

*Moratorium*

## Moratorium period

**83.** (1) Subject to subsection (2), a moratorium period in respect of a company commences on the filing of an application for an administration order and terminates on—

(a) the dismissal of the application for an administration order; or

(b) if an administration order is made, upon the discharge of that order.

(2) If an application for an administration order is filed at a time when an administrative receiver of the company is in office and the person by or on whose behalf the administrative receiver was appointed has not consented to the making of an order, the moratorium period does not commence unless and until—

(a) that person so consents in writing;

(b) the administrative receiver vacates or is deemed to vacate office; or

(c) an administration order is made.

## Effect of moratorium

**84.** (1) Subject to subsections (3), (4) and (5), during the moratorium period—

(a) no order may be made and, notwithstanding paragraph *(f)*, no resolution may be passed for the appointment of a liquidator or a provisional liquidator;

(b) no steps may be taken to enforce any security interest over the company's assets, except with the leave of the Court or, if the company is in administration, with the consent of the administrator;

(c) except with the leave of the Court or, if the company is in administration, with the consent of the administrator, no steps may be taken to repossess assets that are being used or occupied by or are in the possession of the company, including—

(i) goods supplied under a hire purchase, conditional sale or chattel leasing agreement; and

(ii) goods supplied subject to a retention of title agreement;

(d) no proceedings, execution or other legal process may be commenced or continued or distress levied against the company or its assets except with the leave of the Court or, if the company is in administration, with the consent of the administrator;

(e) no share may be transferred and no alteration may be made in the status of the members of the company, whether by an amendment of the memorandum or articles or in any shareholders' or

members' agreement or otherwise, except with the leave of the Court; and

*(f)* no resolution of the members may be passed except with the leave of the Court or, if the company is in administration, with the consent of the administrator.

(2) On an application for leave under subsection (1) *(b)* to *(f)*, the Court may grant leave subject to such terms and conditions as it considers fit.

(3) During the period beginning with the commencement of the moratorium period and ending with the making of an administration order, subsection (1) does not prevent the appointment of an administrative receiver of the company, or require the leave of the Court for the appointment of an administrative receiver or limit or affect the carrying out by an administrative receiver of his or her functions.

(4) Subsection (1) does not prevent, or require the leave of the Court to be obtained for—

*(a)* the enforcement of a charge on assets belonging to a company if, before the commencement of the moratorium period, an interested person lawfully—

(i) entered into possession or assumed control of the assets; or

(ii) entered into a binding agreement to sell the assets, for the purpose of enforcing the charge on those assets;

*(b)* the repossession of assets being used or occupied by or in the possession of a company if, before the commencement of the moratorium period, an interested person lawfully entered into possession, or assumed control of those assets; *(Amended by Act 11 of 2004)*

*(c)* the exercise by a creditor of any set-off that he or she would have been entitled to exercise under section 150 if the company was in liquidation, the liquidation having commenced at the time that the moratorium period commenced; or *(Amended by Act 11 of 2004)*

*(d)* the filing of an application for the appointment of a liquidator under Part VI. *(Inserted by Act 11 of 2004)*

(5) Notwithstanding subsection (1)*(a)*, the Court may make an order during the moratorium period—

*(a)* appointing a liquidator on the grounds specified in section 162(1)*(c)*; or

*(b)* appointing a provisional liquidator on an application for the appointment of a liquidator on the grounds specified in section 162(1)*(c)*.

(6) On making an order under subsection (5), the Court shall either—

*(a)* discharge the administration order and make such consequential provision as it considers fit; or

*(b)* order that the appointment of the administrator shall continue to have effect.

(7) If the Court makes an order under subsection (6)*(b)*, it may also—

    *(a)* specify which of the powers of an administrator are to be exercisable by the administrator;

    *(b)* order that this Part has effect with such modifications as the Court may specify; and

    *(c)* make such consequential provision as it considers fit.

### Preservation of charged and other assets

**85**. (1) During the period beginning with the commencement of the moratorium period in respect of a company and ending with the making of an administration order against it or the dismissal of the application, the company may not, without the written consent of the interested person concerned, or the leave of the Court granted under section 86, dispose of or otherwise deal with—

    *(a)* any assets subject to a charge, other than a floating charge;

    *(b)* any assets subject to a floating charge, otherwise than in the ordinary course of business; or

    *(c)* any assets in the company's use, occupation or possession of which another person is the owner or lessor, including—

        (i) goods supplied under a hire purchase, conditional sale or chattel leasing agreement; and

        (ii) subject to subsection (1A), goods supplied subject to a retention of title agreement.

*(Amended by Act 11 of 2004)*

(1A) Subsection (1)*(c)*(ii) does not prevent a company disposing of or dealing with goods supplied subject to a retention of title agreement in the ordinary course of business.

*(Inserted by Act 11 of 2004)*

(2) A company that contravenes subsection (1) commits an offence.

### Disposal of perishable assets during moratorium period

**86.** (1) This section applies during the period beginning with the commencement of the moratorium period and ending with—

    *(a)* the making of an administration order; or

    *(b)* the dismissal of the application for an administration order.

(2) Where any assets referred to in section 85(1) are perishable assets, the Court may, on the application of the company, make an order permitting the company to dispose of those assets.

(3) Where the Court makes an order under subsection (2) permitting a company to dispose of assets that are subject to a floating charge, the holder of the security interest has the same priority in respect of any assets of the company directly or indirectly representing the assets disposed of as he or she would have had in respect of the assets subject to the security interest.

(4) It shall be a condition of an order made under subsection (2) permitting a company to dispose of assets referred to in section 85(1) that are not subject to a floating charge, that—

    *(a)* the net proceeds of the disposal; and

    *(b)* if those proceeds are less than such amount as the Court may determine, or as may be agreed, to be the fair market value of the assets disposed of, the sum required to make good the deficiency, shall be applied towards discharging the sums payable to the interested person concerned.

(5) Where a condition under subsection (4) relates to two or more security interests, the net proceeds of the disposal and any sum required to be paid under subsection (4)*(b)* shall be applied towards discharging the sums secured by those security interests in the order of their priorities.

(6) Where the Court makes an order under subsection (2) it may make such consequential orders as it considers fit, including—

    *(a)* giving directions as to the conduct of the disposal;

    *(b)* making provision for the protection of the proceeds of the disposal.

(7) Where an order is made under subsection (2), the company shall, within 14 days of the date of the order, file with the Registrar a notice in the prescribed form together with a sealed copy of the order.

(8) A company commits an offence if it—

    *(a)* contravenes subsection (7), without reasonable excuse; or

    *(b)* fails to comply with a condition imposed under this section.

*Administrators*

### General duties of administrator

**87.** (1) An administrator shall, on his or her appointment, take into his or her custody or under his or her control the assets to which the company in administration is or appears to be entitled.

(2) The administrator shall manage the business, assets and affairs of the company—

    *(a)* in furtherance of the purposes set out in the administration order;

    *(b)* after the approval of proposals under section 102, in accordance with those proposals; and

    *(c)* in accordance with any directions that may be given by the Court.

(3) In performing his or her functions and undertaking his or her duties under this Act, an administrator acts as an officer of the Court. *(Substituted by Act 11 of 2004)*

(4) Whilst a company is in administration, the directors and other officers of the company remain in office and their powers, functions and duties continue except to the extent that—

(a)  they are inconsistent with the powers, functions and duties of the administrator; or

(b)  the administrator otherwise directs in writing.
*(Inserted by Act 11 of 2004)*

(5) Notwithstanding subsection (4), a director may exercise a power inconsistent with the powers, functions and duties of the administrator if the administrator authorises the exercise of that power in writing. *(Inserted by Act 11 of 2004)*

(6) Any power conferred on the company in administration whether by an enactment, its memorandum or articles or otherwise, which could be exercised so as to interfere with the exercise by the administrator of his or her powers, shall not be exercised without the written consent of the administrator. *(Inserted by Act 11 of 2004)*

## Duty to prepare report

**88.** (1) The administrator of a company shall, within 60 days of the commencement of the administration, prepare a report as to whether, in his or her opinion, further enquiries are desirable with respect to—

(a)  any matter relating to the promotion, formation or insolvency of the company or the conduct of the business or affairs of the company; and

(b)  possible claims under sections 254 to 256.

(2) The administrator shall send a copy of the report prepared under subsection (1)—

(a)  to each creditor of the company; and

(b)  if in his or her report he or she states that further enquiries are desirable with respect to a matter referred to in subsection (1), to the Official Receiver.

## Duty to report to Commission

**89.** (1) Subject to subsection (2), if it appears to the administrator of a company that the company is carrying on or has carried on unlicensed financial services business, he or she shall as soon as reasonably practicable report the matter to the Commission.

(2) Subsection (1) does not apply where the administration order was made on the application of the Commission.

(3) Where the administrator makes a report to the Commission under subsection (1) he or she shall, for the purposes of section 105, treat the company as if it was a regulated person.

## General powers of administrator

**90.** (1) The administrator of a company may—

(a)  remove any director of the company;

(b)  appoint a person to be director of the company, whether to fill a vacancy or not;

(c)  call a meeting of the members or the creditors of the company;

(d)  require a receiver, other than a qualifying administrative receiver, to vacate office;

(e)  do anything necessary for the management of the business, assets and affairs of the company;

(f)  apply to the Court for directions in respect of the administration of the company;

(g)  use the company's seal; and

(h)  do all acts on behalf of the company and execute any deed, receipt or other document in the name of the company.

(2) Without limiting subsection (1), the administrator has the powers specified in Schedule 1.

(3) The following persons are not concerned to inquire whether the administrator is acting within his or her powers—

(a)  a person dealing with the administrator in good faith and for value; and

(b)  a person who acquires any interest in assets of the company in administration from a person referred to in paragraph *(a)* in good faith and for value.

(4) The acts of an administrator of a company are valid notwithstanding any defect in his or her nomination, appointment or qualifications.

(5) Where a receiver is required to vacate office under subsection (1)*(d)* the Court, on the application of the administrator or the receiver, may make such directions as it considers appropriate, including directions as to—

(a)  the terms upon which assets are to be passed to the administrator;

(b)  the payment of the debts of preferential creditors; and

(c)  the payment of the remuneration of the receiver.
*(Amended by Act 11 of 2004)*

### Power to deal with assets subject to floating charge

**91.** (1) The administrator of a company may dispose of any assets of the company that are subject only to a floating charge, whether or not the charge has crystallised.

(2) Where assets are disposed of or otherwise dealt with under subsection (1), the holder of the security interest has the same priority in respect of any assets of the company directly or indirectly representing the assets disposed of as he or she would have had in respect of the assets subject to the security interest.

### Application to Court to deal with other charged assets

**92.** (1) The Court may, on the application of the administrator, make an order authorising the administrator to dispose of—

*Insolvency Act*

(a) assets of the company that are subject to a security interest that is not a floating charge; and

(b) assets that are being used or occupied by or in the possession of the company but of which some other person is the owner or lessor, including—

 (i) goods supplied under a hire purchase, conditional sale or chattel leasing agreement; and

 (ii) goods supplied subject to a retention of title agreement, if it considers that the disposal of the assets, with or without other assets, would be likely to promote one or more of the purposes specified in the administration order.

(2) The administrator shall give 5 business days notice of an application under subsection (1) to—

(a) the holder of the charge over; or

(b) the owner or lessor of, the assets in respect of which the application is made.

(3) It shall be a condition of an order under subsection (1) that—

(a) the net proceeds of the disposal; and

(b) if those proceeds are less than such amount as the Court may determine, or as may be agreed, to be the fair market value of the assets disposed of, the sum required to make good the deficiency, shall be applied towards discharging the sums payable to the interested person concerned.

(4) Where a condition under subsection (3) relates to 2 or more security interests, the net proceeds of the disposal and any sum required to be paid under subsection (3)*(b)* shall be applied towards discharging the sums secured by those security interests in the order of their priorities.

(5) Where an order is made under subsection (1), the administrator shall—

(a) forthwith serve a sealed copy of the order on the holder of the charge or the owner or lessor of the goods, as the case may be; and

(b) within 14 days of the date of the order, file a notice in the prescribed form with the Registrar.

(6) An administrator commits an offence if he or she—

(a) contravenes subsection (5), without reasonable excuse; or

(b) fails to comply with a condition imposed under this section.

## Administrator as agent of company

**93.** When performing a function or exercising a power as administrator of a company in administration, the administrator acts as the company's agent.

26-10769-mg    Doc 77-2    Filed 06/05/26    Entered 06/05/26 16:53:44    Exhibit 2 -
Transcript of the Remote Deposition of Riz Mokal    Pg 588 of 991

LAW OF
VIRGIN ISLANDS                      *Insolvency Act*                              73
Revision Date: 1 Jan 2020

### Removal and resignation of administrator

**94**. (1) The Court may, on the application of the creditors' committee, a creditor or the Official Receiver or on its own motion, remove an administrator from office. *(Amended by Act 11 of 2004)*

(2) An administrator—

*(a)* may resign in such circumstances as may be prescribed or with the leave of the Court; and

*(b)* shall resign if he or she ceases to be an eligible insolvency practitioner.

(3) Unless, in accordance with this section, he or she has previously resigned or been removed from office, an administrator ceases to hold office with effect from the date that an administration order is discharged. *(Amended by Act 11 of 2004)*

### Appointment of replacement administrator

**95.** (1) Where the administrator of a company dies or is removed or resigns under section 94 and no administrator is appointed in his or her place, the Court, on the application of a person specified in subsection (2) or on its own motion—

*(a)* if there is at least one administrator remaining in place, may appoint an eligible insolvency practitioner as administrator in his or her place; or

*(b)* if the administrator who has died or is removed or resigned was the sole administrator of the company, shall appoint an eligible insolvency practitioner in his or her place.
*(Substituted by Act 11 of 2004)*

(2) An application under subsection (1) may be made—

*(a)* by any continuing administrator;

*(b)* by the creditor's committee, if any; *(Amended by Act 11 of 2004)*

*(c)* where there is no administrator or no creditor's committee, by the company in administration, the board of the company or a creditor of the company; or *(Amended by Act 11 of 2004)*

*(d)* by the Official Receiver. *(Inserted by Act 11 of 2004)*

(3) The provisions of this Act and the Rules applicable to giving notice of and advertising an administration order apply to an order of the Court filling a vacancy under subsection (1).

### Remuneration of administrator

**96.** (1) The administrator of a company is entitled to receive remuneration for his or her services as administrator.

(2) The remuneration payable to an administrator shall be fixed applying the principles set out in section 432.

*Insolvency Act*

## Administrator to have charge over assets of company

**97.** (1) The administrator and, where he or she has vacated office, the former administrator, has the following charges on the assets of the company in his or her possession or control or, in the case of a former administrator, that were in his or her possession or control immediately before vacating office—

> *(a)* a first ranking charge for any sums payable in respect of debts or liabilities incurred during the administration of the company, under contracts entered into by him or her or a predecessor of his or hers in the carrying out of the functions of administrator; and

> *(b)* a second ranking charge for his or her remuneration.
> *(Amended by Act 11 of 2004)*

(2) Subject to subsection (3), the charges specified in subsection (1)—

> *(a)* rank in priority to any floating charge to which the assets of the company may be subject; and

> *(b)* continue to subsist after the termination of the administration.

(3) Where a debenture or other instrument creates a fixed charge and a floating charge over the assets of a company, subsection (2)*(a)* does not apply to any assets of the company that are subject to the fixed charge.

(3A) For the purposes of subsection (1)*(a)*—

> *(a)* any action taken or omitted to be taken within the period of 14 days after an administrator's appointment shall not be taken to amount or contribute to the adoption of a contract; and

> *(b)* an administrator is deemed to have adopted a contract of employment if notice of the termination of the contract is not given within 14 days after the date of his or her appointment.
> *(Inserted by Act 11 of 2004)*

(4) A liability arising out of a contract of employment adopted by an administrator, or his or her predecessor, is a debt or liability for the purposes of subsection (1)*(a)* if—

> *(a)* it is a liability to pay a sum by way of wages or salary or a contribution to an occupational pension scheme; and

> *(b)* it is in respect of services rendered wholly or partly after the adoption of the contract, but not otherwise.
> *(Amended by Act 11 of 2004)*

(5) For the purposes of subsection (4)—

> *(a)* wages or salary payable in respect of a period of holiday or absence from work through sickness or other good cause are deemed to be wages or salary in respect of services rendered in that period;

> *(b)* a sum payable *in lieu* of holiday is deemed to be wages or salary in respect of services rendered in the period by reference to which the holiday entitlement arose; and

26-10769-mg   Doc 77-2   Filed 06/05/26   Entered 06/05/26 16:53:44   Exhibit 2 -
Transcript of the Remote Deposition of Riz Mokal    Pg 590 of 991

LAW OF
VIRGIN ISLANDS                    *Insolvency Act*                              75
Revision Date: 1 Jan 2020

*(c)* that part of the liability representing payment in respect of services rendered before the adoption of the contract of employment shall be disregarded.

### Release of administrator

**98.** (1) A person who ceases to be the administrator of a company, may apply to the Court for his or her release and the Court may grant the release unconditionally or upon such conditions as it considers proper, or it may withhold it.

(2) If the Court withholds the release, it may make a compensation order against the former administrator under section 254.

(3) Subject to subsection (5), where a former administrator is released under this section, he or she is discharged from all liability in respect of any act or default of his or hers in relation to the administration of the company.

(4) An order for the release of a former administrator may be revoked by the Court if the release was obtained by fraud or the suppression or concealment of any material fact.

(5) Subsection (3) does not prevent the Court from making an order under section 254 against an administrator who has been released under this section.

(6) An administrator who obtains his or her release under this section shall file a notice in the prescribed form with the Registrar.

### Statement of affairs

**99.** (1) In this section, "relevant person" has the meaning set out in section 275.

(2) The administrator of a company may require one or more relevant persons to prepare and submit to him or her a statement of affairs.

(3) Subject to section 280, the administrator shall file with the Court each statement of affairs and each affidavit of concurrence that he or she receives.

*Administrator's Proposals*

### Administrator's proposals and creditors' meeting

**100.** (1) Subject to subsection (3), the administrator shall—

*(a)* prepare a report setting out his or her proposals for the achievement of one or more of the purposes in the administration order;

*(b)* call a meeting of creditors for a date no later than 60 days after the date of the administration order for the purpose of considering whether to approve his or her proposals;

*(c)* send a copy of his or her report, to each creditor together with the notice of the meeting;

*(d)* send a copy of the notice calling the meeting and his or her report to each member of the company or advertise the meeting and report in accordance with the Rules; *(Amended by Act 11 of 2004)*

*(e)* file a copy of the notice calling the meeting together with his or her report with the Registrar; and

*(f)* cause the creditors' meeting to be advertised.

(2) The report prepared by the administrator under subsection (1)*(a)* shall contain the matters prescribed by the Rules.

(3) The administrator is not required to call a meeting of creditors under subsection (1)*(b)* where—

*(a)* he or she is of the opinion that the company has sufficient assets to enable each creditor of the company to be paid in full; and

*(b)* the report prepared under subsection (1)*(a)* contains a statement that—

(i) the administrator is of the opinion that the company has sufficient assets to enable each creditor of the company to be paid in full; and

(ii) the administrator does not intend to call a meeting of creditors under this section.

(4) Notwithstanding subsection (3), if requested to do so by creditors whose debts amount to at least 10% in value of the total debts of the company, the administrator shall call a meeting of creditors to be held no later than 30 days after the date upon which he or she receives the request.

(5) A request for a meeting under subsection (4) must be delivered to the administrator in the manner and within the period prescribed.

(6) An administrator who contravenes subsection (1) commits an offence.

## Attendance at meeting of directors and others

101. (1) If the administrator considers that it is reasonable to require the presence at a creditors' meeting called under section 100 of a person specified in subsection (4), the administrator may, by notice, require the person to attend. *(Amended by Act 11 of 2004)*

(2) In determining whether it is reasonable to require a person to attend the creditors' meeting, the matters that the administrator shall have regard to include—

*(a)* the likely benefits of the person's attendance;

*(b)* the travel and associated expenses that will be incurred by him or her in attending the meeting, unless the administrator is prepared to pay those expenses;

*(c)* the distance that he or she would be required to travel to attend the meeting; and

*(d)* the time that it would take him or her to travel to and from and attend the meeting.

(3) A notice under subsection (1) requiring a person to attend a creditors' meeting shall be sent to that person at least 14 days prior to the date of the meeting and shall be accompanied by a copy of his or her report on his or her proposals.

(4) Subsection (1) applies to any officer of the company and any person who, at any time during the 2 years prior to the date of the notice, was an officer of the company.

(5) A person commits an offence if—

(a) he or she receives a notice to attend a creditors' meeting under subsection (1); and

(b) without reasonable excuse, he or she fails to attend the meeting.

## Consideration of proposals by creditors

102. (1) At the creditors' meeting called under section 100, the creditors may resolve to—

(a) approve the administrator's proposals, with or without amendment;

(b) reject the proposals; or

(c) adjourn the meeting.

(2) A resolution to approve the administrator's proposals is invalid and of no effect if—

(a) the proposals have been amended without the consent in writing of the administrator; or

(b) the proposal has been amended otherwise than in accordance with section 103.

(3) The administrator shall, within 14 days of the conclusion of a meeting called under section 100—

(a) report the result of the meeting to the Court and file a copy of that report with the Registrar; and

(b) send a notice setting out the result of the meeting to every creditor.

(4) The report and notice required under subsection (3) shall have annexed to it details of—

(a) the proposals considered at the meeting and of any amendments to those proposals that were considered; and

(b) such proposals and amendments as were approved.

(5) If the creditors resolve not to approve the administrator's proposals or fail to pass one of the resolutions specified in subsection (1), the Court may, by order—

(a) discharge the administration order and make such consequential provisions as it considers fit;

(b) adjourn the hearing, conditionally or unconditionally; or

*Insolvency Act*

*(c)* make an interim order or any other order that it considers fit.

(6) An administrator who contravenes subsection (3) commits an offence.

## Amendment of proposals at creditors' meeting

**103.** (1) Where, at a meeting called under section 100, the creditors wish to approve an amended proposal, the meeting shall be adjourned for sufficient time to enable the administrator to give all creditors not present or represented at the meeting at least 2 business days notice—

*(a)* of the venue of the adjourned meeting; and

*(b)* of the amended proposal to be considered at the adjourned meeting.

(2) Where a meeting is adjourned under subsection (1), section 102 applies to the adjourned meeting.

(3) Subsection (1) does not apply if—

*(a)* every creditor who was given notice of the meeting under section 100 is present or represented at the meeting; or

*(b)* the chairman of the meeting certifies in writing that an amendment is to correct minor errors or is otherwise not material.

## Modification of proposals

**104.** (1) Where proposals have been approved under section 102 and the administrator subsequently considers that they should be substantially modified, he or she shall—

*(a)* prepare a report setting out his or her proposed modifications;

*(b)* call a meeting of creditors for the purpose of considering the report;

*(c)* send a copy of his or her report to each creditor together with the notice of the meeting;

*(d)* send a copy of the notice convening the meeting together with his or her report to each member of the company or advertise the meeting and report in accordance with the Rules; *(Amended by Act 11 of 2004)*

*(e)* file a copy of the notice calling the meeting together with his or her report with the Registrar; and

*(f)* cause the creditors' meeting to be advertised.

(2) At the creditors' meeting referred to in subsection (1), the creditors may resolve to—

*(a)* approve the administrator's proposed modifications to the proposals, with or without amendment;

*(b)* reject the proposed modifications; or

*(c)* adjourn the meeting.

(3) Section 102(2) applies to the creditors' approval of the administrator's proposed modifications to the proposal under this section and if the creditors wish to amend the administrator's proposed modifications, section 103 applies.

(4) The administrator shall, within 14 days of the date of the meeting held under subsection (1)—

> *(a)* report the result of the meeting to the Court and file a copy of the report with the Registrar; and

> *(b)* send a notice setting out the result of the meeting to every creditor.

(5) The report and notice required under subsection (4) shall have annexed to it details of—

> *(a)* the modifications to the proposal considered at the meeting and of any amendments to those modified proposals that were considered; and

> *(b)* such proposals and amendments as were approved.

(6) An administrator who contravenes subsection (4) commits an offence.

*Miscellaneous*

### Commission's rights where company a regulated person

**105.** Where a company in administration is or has been a regulated person—

> *(a)* every notice or other document required to be sent to a creditor of the company under this Part shall also be sent to the Commission; and

> *(b)* notice shall be given to the Commission of any application to the Court under this Part in respect of the company.

### Administrator's duty to keep accounting records

**106.** (1) An administrator shall keep accounting records that correctly record and explain the receipts, expenditure and other transactions of the company in administration.

(2) The administrator shall retain the accounting records kept under subsection (1) for a period of not less than 6 years after the termination of the administration.

(3) An administrator who contravenes this section commits an offence.

### Administrator to prepare and send out regular accounts and reports

**107.** (1) An administrator shall prepare—

> *(a)* accounts of the receipts and payments of the company in administration; and

> *(b)* a report on the progress of the administration, covering the periods specified in subsection (2).

(2) The accounts and report prepared under subsection (1) shall cover—

    *(a)* the period of 6 months following his or her appointment;

    *(b)* each subsequent period of 6 months; and

    *(c)* where he or she ceases to act as administrator—

        (i) the period from the end of the period covered by the last accounts required to be prepared under this section, or if he or she acted as administrator for less than 6 months from the date of his or her appointment, to the date of his or her ceasing to act; and

        (ii) the period from the date of his or her appointment to the date of his ceasing to act, unless prepared in accordance with subparagraph (i).

(3) An administrator shall, within 60 days of the last day of the period covered by the accounts and report—

    *(a)* file a copy of the accounts and report with the Court and with the Registrar;

    *(b)* send a copy of the accounts and report to each member of the creditors' committee, if any; and

    *(c)* if the company is or has been a regulated person file a copy of the accounts and report with the Commission. *(Amended by Act 11 of 2004)*

(4) An administrator who contravenes this section commits an offence.

## Notification

**108.** (1) Where a company is in administration, every document of a type specified in subsection (2) shall—

    *(a)* state that the company is in administration; and

    *(b)* specify the name of the administrator.

(2) Subsection (1) applies to—

    *(a)* every public document issued by or on behalf of the company; and

    *(b)* every public document issued by or on behalf of the administrator of the company on which the name of the company appears.

(2A) A failure to comply with subsection (1) does not affect the validity of the document. *(Inserted by Act 11 of 2004)*

(3) If subsection (1) is contravened the company, and each officer or administrator of the company who causes, permits or acquiesces in the contravention, commits an offence.

## Meetings of creditors

**109.** (1) The administrator shall call a meeting of creditors if—

    *(a)* a meeting is requisitioned by the creditors of the company in accordance with subsection (2); or

*(b)* he or she is directed to do so by the Court.

(2) A creditors' meeting may be requisitioned in accordance with the Rules by 10% in value of the creditors of the company.

### Discharge or variation of administration order

**110.** (1) The administrator of a company may, at any time, apply to the Court for the administration order to be discharged or to be varied to add to or change the purposes specified in the administration order.

(2) An administrator shall make an application under subsection (1) if—

*(a)* he or she considers that the purposes specified in the order have been achieved or are incapable of achievement; or

*(b)* he or she is required to do so by a meeting of creditors.

(3) On the hearing of an application under subsection (1), the Court may discharge or vary the administration order and make such consequential provision as it considers fit, or adjourn the hearing conditionally or unconditionally, or make an interim order or any other order it considers fit, including an order under section 111.

### Appointment of liquidator or dissolution of company on discharge of administration order

**111.** (1) Where the Court makes an order for the discharge of an administration order made in respect of a company and the Court is satisfied that the company is insolvent—

*(a)* the Court may make an order for the appointment of an eligible insolvency practitioner to be the liquidator of the company; or

*(b)* if it is satisfied that no useful purpose would be served by the appointment of a liquidator, the Court may dissolve the company.

(2) The Court may appoint the administrator of a company to be the liquidator under subsection (1)*(a)*.

(3) An order under subsection (1)*(a)* takes effect as an order made under section 162 on the application of the company.

(4) Where an order is made for the appointment of a liquidator under this section, Part VI applies to the liquidation of the company.

### Filing copy of discharge order with Registrar

**112.** (1) Where an administration order is discharged or varied, the administrator or where the order is discharged the person who, immediately before the discharge, was the administrator of the company shall, within 14 days of the date of the order effecting the variation or discharge, file a copy of the order with the Registrar.

(2) A person who contravenes subsection (1) commits an offence.

*Protection of Interests of Creditors and Members*

## Application in respect of moratorium period

**113.** (1) During the period beginning with the commencement of the moratorium period and ending with the making of an administration order, the Court may, on an application made by a creditor or member of the company, by a person affected by section 84 or, where the company is or has been a regulated person, by the Commission—

   *(a)* give directions in relation to any matter arising in connection with that section; or

   *(b)* make such other order as it considers fit.

(2) Without limiting subsection (1), an order under that subsection may—

   *(a)* regulate the management by the directors of the company's affairs, business and assets during the remainder of the moratorium period;

   *(b)* require the directors to refrain from doing or continuing an act complained of by the applicant, or to do an act that the applicant has complained they have omitted to do;

   *(c)* require the calling of a meeting of creditors or members for the purpose of considering such matters as the Court may direct; and

   *(d)* make such provision as the Court considers necessary to protect the interests of one or more creditors of the company during the moratorium period.

(3) In making an order under this section, the Court shall have regard to the need to safeguard the interests of persons who have dealt with the company in good faith and for value.

## Application on grounds of unfair prejudice

**114.** (1) At any time when an administration order is in force, an application may be made by a creditor or member of a company or, where the company is or has been a regulated person by the Commission for an order under subsection (2) on one or both of the following grounds—

   *(a)* that the company's affairs, business and assets are being, or have been, managed by the administrator in a manner which unfairly prejudices the interests of the member or creditor; or

   *(b)* that any actual or proposed act or omission of the administrator is or would be so prejudicial.

(2) Subject to subsections (3) and (4), where it is satisfied as to either of the grounds specified in subsection (1), the Court may make such order as it considers fit for giving relief in respect of the matters complained of, or adjourn the hearing conditionally or unconditionally, or make an interim or any other order that it considers fit.

(3) An order under subsection (2) shall not prejudice or prevent—

*(a)* the implementation of proposals approved by the creditors under section 102; or

*(b)* where the application for the order was made more than 28 days after the approval of any proposals or revised proposals under section 102 or 104, the implementation of those proposals or revised proposals.

(4) Without limiting subsection (2), an order under that subsection may—

*(a)* regulate the management by the administrator of the company's affairs, business and assets;

*(b)* require the administrator to refrain from doing or continuing an act complained of by the applicant, or to do an act that the applicant has complained he or she has omitted to do;

*(c)* require the calling of a meeting of creditors or members for the purpose of considering such matters as the Court may direct; and

*(d)* discharge the administration order and make such consequential provision as the Court considers fit.

(5) Section 91 is not to be taken as prejudicing an application to the Court under this section.

PART IV

RECEIVERSHIP

*Preliminary*

**Interpretation for and scope of this Part**

**115.** (1) In this Part, unless the context otherwise requires, "company" means the company in respect of whose assets a receiver is or may be appointed.

(2) This Part applies to a receiver appointed—

*(a)* by the Court;

*(b)* under a debenture or other instrument; or

*(c)* under or in accordance with any other enactment.

(3) Unless this Act expressly states otherwise, where, in respect of a receiver appointed by the Court (other than as an administrative receiver), there is a conflict between this Act and the provisions of any other enactment or rule of law or the Civil Procedure Rules, the provisions of the enactment or rule of law or the Civil Procedure Rules, as the case may be, shall prevail.

(4) Where an administrative receiver is appointed in respect of a company, that company is referred to in this Act as "in administrative receivership".

*General*

### Persons not to be appointed or act as receiver

**116.** (1) Subject to subsection (2), the following persons are not eligible to be appointed as receiver in respect of a company and shall not accept appointment or act as such a receiver—

    *(a)* a mortgagee of any assets of the company;

    *(b)* a person who is, or within the previous 2 years has been—

        (i) an officer or employee of a mortgagee of any assets of the company; or

        (ii) a shareholder in or member of the company or a related company;

    *(c)* a person who, pursuant to section 477 is disqualified from holding a licence;

    *(d)* a person who, in an insolvency proceeding, would not be eligible to act as an insolvency practitioner in respect of the company pursuant to section 482(2);

    *(e)* a body corporate;

    *(ea)* the Official Receiver; and *(Inserted by Act 11 of 2004)*

    *(f)* such other persons as may be prescribed.

(2) The Court may appoint—

    *(a)* the Official Receiver; or

    *(b)* such other person specified in subsection (1), as a receiver, other than an administrative receiver. *(Amended by Act 11 of 2004)*

(3) A person who accepts or purports to accept appointment or acts or purports to act as a receiver contrary to subsection (1) commits an offence.

### Appointment of joint receivers

**117.** (1) A power conferred by a debenture or other instrument to appoint a receiver includes the power to appoint—

    *(a)* 2 or more joint receivers;

    *(b)* an additional receiver to act jointly with the receiver in office; and

    *(c)* a receiver to succeed a receiver who has vacated office, unless the debenture or other instrument expressly provides otherwise.

(2) Joint receivers may act jointly or severally unless the instrument under which, or the Court order by which, they are appointed expressly provides otherwise.

(3) Unless the context otherwise requires, in this Act and the Rules, "receiver" and "administrative receiver" includes 2 or more persons appointed as joint receivers or joint administrative receivers, as the case may be.

## Notice of appointment

**118.** (1) A receiver shall forthwith upon being appointed—

    *(a)* send a notice of his or her appointment to the company; and

    *(b)* file a notice of his or her appointment—

       (i) with the Registrar; and

      (ii) if the company is or has been a regulated person, with the Commission.

(2) In addition to complying with subsection (1), an administrative receiver shall—

    *(a)* subject to subsection (3), within 5 business days after being appointed, cause a notice of his or her appointment to be advertised; and

    *(b)* within 28 days after being appointed, send a notice of his or her appointment to all creditors of the company in receivership.

(3) Subsection (2)*(a)* does not apply to a receiver appointed—

    *(a)* to act jointly with an existing administrative receiver; or

    *(b)* to act in place of an administrative receiver who has died or ceased to act.

(4) A receiver who contravenes subsection (1) and an administrative receiver who contravenes subsection (2) commits an offence.

## Notification of receivership

**119.** (1) Where a company is in receivership, every document to which subsection (2) applies shall contain a statement that a receiver has been appointed.

(2) Subsection (1) applies to—

    *(a)* where the company is in administrative receivership, every public document issued by or on behalf of the company; *(Amended by Act 11 of 2004)*

    *(b)* where the company is in administrative receivership, every public document issued by or on behalf of the receiver or any liquidator of the company on which the name of the company appears; and *(Amended by Act 11 of 2004)*

    *(c)* where a receiver is appointed in relation to a specific asset or specific assets, every public document issued by or on behalf of the company, or the receiver, that relates to that asset or those assets. *(Inserted by Act 11 of 2004)*

(3) A failure to comply with subsection (1) does not affect the validity of the document.

(4) A person who contravenes subsection (1), or who causes, permits or acquiesces in a contravention of subsection (1), commits an offence.

*Insolvency Act*                          **LAW OF
VIRGIN ISLANDS**
                                                                        Revision Date: 1 Jan 2020

## Vacation of office

**120.** (1) The office of receiver becomes vacant if the person holding the office—

    *(a)* dies;

    *(b)* resigns;

    *(c)* vacates his or her office in accordance with subsection (2); or

    *(d)* is removed from office in accordance with section 123.

(2) A receiver appointed out of court shall vacate his or her office forthwith if he or she ceases to be eligible to act as a receiver in accordance with section 116(1).

(3) Where a receiver resigns, vacates office in accordance with subsection (2) or is removed from office under section 123, he or she shall, as soon as practicable, give notice to—

    *(a)* the person who appointed him or her and any joint receiver;

    *(b)* the company; or—

      (i) if the company is in liquidation, its liquidator; and

      (ii) if the company is in administration, its administrator; and

    *(c)* the members of the creditors' committee, if any.
*(Amended by Act 11 of 2004)*

(4) A receiver appointed by the Court shall as soon as practicable notify the Court if he or she ceases to be eligible to act as a receiver in accordance with section 116(1).

(5) Where a receiver resigns, vacates office in accordance with subsection (2) or is removed from office under section 123, he or she shall, within 7 days of ceasing to hold office, give notice in the prescribed form to the Registrar and, where the company in respect of which he or she was appointed is, or has been, a regulated person, to the Commission. *(Substituted by Act 11 of 2004)*

(6) Where a receiver vacates office, unless the Court otherwise orders—

    *(a)* his or her remuneration; and

    *(b)* any indemnity to which he or she is entitled out of the assets of the company, shall be charged on and paid out of any assets of the company that are in his or her custody or under his or her control at that time in priority to any security interest held by the person by or on whose behalf he or she was appointed.

(7) A person who contravenes subsections (2), (3), (4) or (5) commits an offence.

## Assistance to be provided by receiver vacating office

**121.** (1) A person vacating the office of receiver shall provide such information and give such assistance in the conduct of the receivership as is reasonably required by any remaining joint receiver or his or her successor.

(2) If a person vacating the office of receiver fails to provide information or give assistance as required under subsection (1) the Court may, on the application of the remaining joint receiver or successor, order the person vacating office to provide such information and give such assistance as is reasonably required within such time as is specified in the order.

(3) A person who fails to comply with an order made under subsection (2) commits an offence.

## Resignation of receiver

**122.** (1) The resignation of an administrative receiver appointed out of court is not effective unless he or she has given not less than 7 days notice of his or her intention to resign to—

(a) the person who appointed him or her;

(b) the company in receivership, or if it is in liquidation, its liquidator; and

(c) the members of the creditors' committee, if any.

(2) Unless the Court otherwise orders, the resignation of a receiver appointed by the Court is not effective unless he or she has given at least 7 days notice of his or her intention to resign to the Court and to such other persons as may be specified by the Court.

(3) A notice given under subsection (1) shall state the date upon which the receiver intends his or her resignation to take effect.

## Removal of receiver

**123.** (1) A receiver appointed out of court, other than an administrative receiver, may be removed—

(a) in accordance with the charge or other instrument under which he or she was appointed; or

(b) by order of the Court.

(2) A receiver appointed by the Court and an administrative receiver may be removed by order of the Court, but not otherwise.

(3) Application to the Court for the removal of a receiver under subsection (1) or subsection (2) may be made by —

(a) the company; or—

(i) if the company is in liquidation, its liquidator; and

(ii) in the case of a receiver who is not an administrative receiver, if the company is in administration, its administrator;

(b) the board of the company;

(c) the person by or on whose behalf the receiver was appointed;

(d) a creditor of the company;

(da) where the company is or has been a regulated person, by the Commission; or *(Inserted by Act 11 of 2004)*

(e) any other person who the Court is satisfied has a legitimate interest in the removal of the receiver.

(4) An application to the Court for the removal of a receiver under this section shall specify the grounds upon which the removal of the receiver is being sought and shall be served on the receiver at least 5 business days prior to the date fixed for the hearing of the application.

## Co-operation with receiver

124. (1) Where a receiver is appointed, the company and every officer of the company shall—

(a) make available to the receiver all books, documents and information relating to the assets in respect of which the receiver has been appointed in its or his or her possession or under its or his or her control;

(b) if required to do so by the receiver, verify by statutory declaration that the books, documents and information are complete and correct; and

(c) give the receiver such assistance as he or she may reasonably require.

(2) On the application of the receiver, the Court may make an order requiring the company or an officer of the company to comply with subsection (1).

(3) A person who fails to comply with an order of the Court made under subsection (2) commits an offence.

## Duty to report to Commission

125. If it appears to a receiver that the company in respect of which he or she was appointed is carrying on or has carried on unlicensed financial services business, he or she shall as soon as reasonably practicable report the matter to the Commission.

## Agency

126. (1) A receiver appointed out of court, other than an administrative receiver, is deemed to be the agent of the company unless the charge or instrument under which he or she was appointed expressly provides otherwise.

(2) Subject to subsection (3), an administrative receiver is deemed to be the agent of the company in receivership.

(3) If a liquidator is appointed in respect of a company in receivership, the agency of any receiver, including an administrative receiver, terminates with immediate effect.

## Powers of receiver, other than administrative receiver

127. (1) A receiver has the powers expressly or impliedly conferred on him or her—

(a) in the case of a receiver appointed out of court, by the charge or other instrument by which he or she was appointed; or

(b) in the case of a receiver appointed by the Court, by the Court order under which he or she was appointed.

(2) Unless the charge or other instrument under which, or Court order by which, he or she was appointed expressly provides otherwise, a receiver may—

(a) demand and recover, by action or otherwise, income of the assets in respect of which he or she was appointed;

(b) issue receipts for income recovered;

(c) manage, insure, repair and maintain the assets in respect of which he or she was appointed; and

(d) exercise, on behalf of the company, a right to inspect books or documents that relate to the assets in respect of which he or she was appointed in the possession or under the control of a person other than the company.

(3) This section does not apply to an administrative receiver.

## General duties of receivers

**128.** (1) The primary duty of a receiver is to exercise his or her powers—

(a) in good faith and for a proper purpose; and

(b) in a manner he or she believes, on reasonable grounds, to be in the best interests of the person in whose interests he or she was appointed.

(2) To the extent consistent with subsection (1), a receiver shall exercise his or her powers with reasonable regard to the interests of—

(a) creditors of the company;

(b) sureties who may be called upon to fulfil obligations of the company;

(c) persons claiming, through the company, an interest in assets in respect of which he or she was appointed; and

(d) the company.

(3) Where a receiver appointed out of court acts or refrains from acting in accordance with any directions given by the person in whose interests he or she was appointed, the receiver is not in breach of the duty specified in subsection (1)*(b)*, but is nevertheless liable for any breach of the duties specified in subsection (1)*(a)* and subsection (2).

## Powers of sale and proceeds of sale

**129.** (1) A receiver who exercises a power of sale of assets in respect of which he or she was appointed owes a duty to—

(a) creditors of the company;

(b) sureties who may be called upon to fulfil obligations of the company;

*(c)* persons claiming, through the company, an interest in assets in respect of which he or she was appointed; and

*(d)* the company, to obtain the best price reasonably obtainable at the time of sale.

(2) A receiver shall keep money relating to the assets in respect of which he or she was appointed separate from other money received in the course of, but not relating to, those assets and from other money held by him or her or under his or her control.

(3) Notwithstanding any other enactment or rule of law to the contrary or anything contained in the debenture or other instrument by which a receiver was appointed—

*(a)* it is not a defence in proceedings against a receiver for a breach of the duty imposed by subsection (1) that the receiver was acting as the agent of the company or under a power of attorney from the company; and

*(b)* a receiver is not entitled to compensation or an indemnity from the assets in respect of which he or she was appointed or the company in respect of any liability incurred by the receiver arising from a breach of the duty imposed by subsection (1).

## Liabilities of receivers

**130.** (1) Subject to subsections (2) and (3), a receiver is personally liable—

*(a)* on any contract entered into by him or her in the performance of his or her functions; and

*(b)* for the payment of wages or salary, including amounts due for holidays and absence due to sickness or other good cause, sums payable *in lieu* of holiday and contributions to an occupational pension scheme that, during the period of the receivership, accrue under a contract of employment adopted by him or her in the performance of those functions. *(Amended by Act 11 of 2004)*

(2) A receiver appointed out of court is not personally liable on a contract referred to in subsection (1)*(a)* to the extent that the contract excludes or limits his or her liability.

(3) Where a receiver is appointed by the Court, other than as an administrative receiver, unless the Court orders otherwise, all contracts of employment are terminated with immediate effect and subsection (1)*(b)* does not apply.

(4) For the purposes of subsection (1)*(b)*—

*(a)* any action taken or omitted to be taken within the period of 14 days after a receiver's appointment shall not be taken to amount or contribute to the adoption of a contract; and

*(b)* a receiver is deemed to have adopted a contract of employment if notice of the termination of the contract is not given within 14 days after the date of his or her appointment.

*(Substituted by Act 11 of 2004)*

(5) A receiver is entitled to an indemnity in respect of his or her liability under subsection (1) out of the assets in respect of which he or she was appointed.

(6) Nothing in this section—

    *(a)* imposes any liability on a receiver for wages or salary, including amounts due for holidays or absence due to sickness, or contributions to an occupational pension scheme, in respect of services rendered prior to the commencement of the receivership;

    *(b)* limits any right to indemnity that the receiver would have apart from this section;

    *(c)* limits the liability of a receiver on a contract entered into without authority; or

    *(d)* confers on a receiver a right to an indemnity in respect of his or her liability on a contract entered into without authority.

### Payment of debts out of assets subject to a floating charge

**131.** (1) This section applies where a receiver is appointed on behalf of the holder of a floating charge.

(2) If the company is not in liquidation, its preferential creditors shall be paid out of the assets coming into the hands of the receiver in priority to any claims for principal or interest in respect of—

    *(a)* the debenture or other instrument under which the receiver is appointed; and

    *(b)* any other debenture or other instrument of the company secured by a floating charge.

(3) Payments made under this section shall be recouped, as far as possible, out of the assets of the company available for payment of unsecured creditors.

### Court directions

**132.** (1) On the application of a person referred to in subsection (2), the Court may, in relation to any matter arising in connection with the performance of the functions of a receiver, make one or more of the following orders—

    *(a)* an order giving such directions as it considers appropriate;

    *(b)* an order declaring the rights of persons before it; and

    *(c)* such other order as it considers just.

(2) Application to the Court for an order under subsection (1) may be made by any of the following persons—

    *(a)* the receiver;

    *(b)* the person by whom or on whose behalf the receiver was appointed;

    *(c)* a person in whose interest the receiver is acting; and

*(d)* where the company in receivership is or has been a regulated person, the Commission.

## Further provisions with respect to an order under section 132

133. The power of the Court to make an order under section 132—

*(a)* is in addition to any other powers that may be exercised by the Court whether under this Act or any other enactment or in its inherent jurisdiction;

*(b)* may be exercised notwithstanding that the receiver may have died or ceased to act as receiver before the making of the application or the order; and

*(c)* notwithstanding anything in the Civil Procedure Rules to the contrary, includes the power to vary or amend an order that the Court has already made.

## Remuneration of receivers

134. (1) Subject to subsection (3), a receiver appointed under a debenture or other instrument is entitled to be paid remuneration for his or her services—

*(a)* in accordance with the terms of that debenture or other instrument; or

*(b)* as agreed with the person on whose behalf he or she was appointed.

(2) A receiver appointed by the Court or in accordance with any other enactment is entitled to be paid such remuneration as the Court may order or the other enactment may provide for. *(Amended by Act 11 of 2004)*

(3) On the application of a person referred to in subsection (6), the Court may review and fix the amount paid or to be paid by way of remuneration to a receiver in accordance with subsection (1).

(4) Subject to subsection (5), the Court's power under subsection (3) —

*(a)* extends to fixing the remuneration for any period before the making of the order or the application for it;

*(b)* is exercisable notwithstanding that the receiver has died or ceased to act before the making of the application or the order; and

*(c)* extends to requiring him or her or his or her personal representative to account for the excess or such part of it as may be specified in the order to the extent that an amount paid to or retained by a receiver as remuneration exceeds that fixed by the Court for the period concerned.

(5) The power conferred by subsection (4)*(c)* may not be exercised with respect to a period before the date of the application for an order under this section unless the Court is satisfied that there are special circumstances that justify it.

(6) An application to the Court for an order under subsection (3) may be made by any of the following persons—

(a)  the receiver;

(b)  the company; or—

  (i)  if the company is in liquidation, its liquidator; and

  (ii)  if the company is in administration, its administrator;

(c)  a person claiming through the company an interest in the assets in respect of which the receiver was appointed; and

(d)  if the company in receivership is or has been a regulated person, the Commission.

(7) In fixing the remuneration of a receiver under this section, the Court shall apply the general principles specified in section 432.

## Accounting records

**135.** (1) A receiver shall keep accounting records that correctly record and explain the receipts, expenditure and other transactions relating to the assets in respect of which he or she has been appointed.

(2) The accounting records kept under subsection (1) shall be retained for a period of not less than 6 years after the receivership ends.

## Receivership accounts to be filed with Registrar

**136.** (1) A receiver shall prepare accounts of his or her receipts and payments covering the periods specified in subsection (2).

(2) Accounts prepared under subsection (1) shall cover the following periods—

(a)  the period of 12 months following the receiver's appointment;

(b)  each subsequent period of 6 months;

(c)  where the receiver ceases to act as receiver—

  (i)  the period from the end of the period covered by the last accounts required to be filed under this section, or if he or she acted as receiver for less than 12 months from the date of his or her appointment, to the date of his or her ceasing to act; and

  (ii)  the period from the date of his or her appointment to the date of his or her ceasing to act, unless filed in accordance with subparagraph (i).

(3) The accounts prepared under subsection (1) shall—

(a)  comprise an abstract showing all receipts and payments during the period covered by the accounts; and

(b)  within 30 days of the last day of the period covered by the accounts—

  (i)  be filed with the Registrar; and

  (ii)  if the company in receivership is or has been a regulated person, with the Commission.

(4) A receiver appointed by the Court shall, in addition to complying with subsection (3), file at Court accounts in such form, covering such periods and within such time as the Court may order.

(5) In respect of a receiver appointed by the Court—

(a) the obligations imposed by this section are additional—

(i) to any obligations or requirements concerning receivership accounts contained in the Civil Procedure Rules; and *(Amended by Act 11 of 2004)*

(ii) to any order made with respect to receivership accounts by the Court; and

(b) the Court may set aside the application of subsections (1), (2) and (3) to such extent and on such terms and conditions as it considers fit.

(6) The Registrar may, on the application of a receiver, extend the period for the filing of accounts under this section for a period of, or where he or she grants more than one extension, for an aggregate period not exceeding 3 months.

(7) A receiver who contravenes this section commits an offence.

(8) Nothing in this section affects or limits the duty of a receiver to prepare and render proper accounts imposed otherwise than by this section.

**Enforcement of duty to make returns**

**137.** (1) If a receiver—

(a) having made default in filing, delivering or making any return, account or other document, or in giving any notice, which a receiver is required to file, deliver, make or give under this Act or any other enactment fails to make good the default within 14 days after the service on him or her of a notice requiring him or her to do so; or

(b) being a receiver appointed out of court, has, after being required at any time by the liquidator of the company to do so, failed to render proper accounts of his or her receipts and payments and to vouch them and pay over to the liquidator the amount properly payable to him or her, the Court may, on an application being made to it, order the receiver to make good the default within such time as may be specified in the order or, in respect of a default referred to in subsection (1)(*a*), may relieve the receiver of the obligation, in whole or in part.

(2) An application to the Court may be made—

(a) in respect of a default referred to in subsection (1)*(a)*, by the Registrar, a member or creditor of the company, its board or, if appropriate, its liquidator or administrator or the Commission; and

(b) in respect of a default referred to in subsection (1)*(b)*, by the liquidator of the company.

(3) The Court may order that the receiver pay the costs of and incidental to an application under subsection (1).

(4) This section does not affect the operation of this Act or any other enactment that may impose penalties on receivers in respect of a default of the type referred to in subsection (1).

(5) A receiver who fails to comply with an order made under this section commits an offence.

## Completion of receivership

**138.** On the completion of his or her receivership, a receiver shall forthwith—

    *(a)* give notice to—

        (i) the company, or if it is in administration or liquidation, the administrator or liquidator;

        (ii) in the case of an administrative receiver, the creditors' committee, if any; and

        (iii) if the company is or has been a regulated person, to the Commission; and

    *(b)* file a notice of completion with the Registrar and, if the company is or has been a regulated person, with the Commission.

*Receivers Appointed out of Court*

## Appointment of receiver out of court

**139.** (1) The appointment of a receiver out of court shall be made in writing.

(2) Subject to subsection (3), the appointment of a receiver out of court takes effect from the time upon which the receiver receives the written notice of appointment.

(3) The appointment of a receiver out of court is not effective unless the receiver accepts it before the end of the next business day following the day on which he or she receives the written appointment.

(4) Where 2 or more joint receivers are appointed out of court—

    *(a)* the joint appointment takes effect from the time that all joint receivers receive the written appointment; and

    *(b)* the joint appointment is not effective unless each receiver accepts the appointment in accordance with subsection (3).

(5) Where a receiver is appointed out of court, whether as a sole or joint receiver, he or she shall, if he or she accepts the appointment, within 7 days confirm his or her acceptance in writing to the person who appointed him or her.

(6) Subsection (5) does not apply where an appointment is accepted in writing.

(7) For the purposes of this section—

(a) a person receives a written appointment if the appointment is received on his or her behalf; and

(b) an acceptance or confirmation of acceptance of an appointment as a receiver under this section may be given by any person authorised for that purpose by the appointee.

(8) A written acceptance or confirmation of acceptance of an appointment of a receiver out of court shall state—

(a) the time and date of receipt of the notice of appointment; and

(b) the time and date of the acceptance.

## Execution of documents

**140.** Where a receiver appointed out of court, other than an administrative receiver, is authorised to execute documents in the name of or on behalf of a company, whether under a power of attorney or otherwise, that authority continues in respect of documents necessary or incidental to the receiver's powers notwithstanding that the company may go into liquidation.

## Invalid appointment

**141.** (1) Where the appointment of a person as a receiver appointed out of court is invalid the Court may, if it is satisfied that the receiver acted honestly and reasonably, order the person by whom or on whose behalf the receiver was appointed to indemnify the receiver against any liability which arises solely by reason of the invalidity of the appointment.

(2) The Court may exercise its powers under subsection (1) subject to such terms and conditions as it considers fit.

*Administrative Receivers*

## Meaning of "administrative receiver"

**142.** (1) In this Act, "administrative receiver" means a receiver of the whole, or substantially the whole, of the business, undertaking and assets of a company—

(a) appointed out of court by or on behalf of the holder of a debenture or other instrument of the company secured by a floating charge, whether or not that debenture or other instrument is also secured by one or more other security interests; or

(b) appointed by the Court as an administrative receiver under section 143.

(2) Where 2 or more persons have the right, under different instruments, to appoint an administrative receiver—

(a) each may appoint an administrative receiver, but only one administrative receiver may act in relation to the company at any time; and

(b) the administrative receiver appointed on behalf of the person whose security interest ranks highest in priority, is entitled to act as administrative receiver.

## Appointment of administrative receiver by Court

**143.** (1) Where the Court appoints a receiver who would, had he or she been appointed out of Court, be an administrative receiver, the Court may, in the order under which the receiver is appointed, specify that the receiver is an administrative receiver.

(2) Where the Court appoints a receiver as an administrative receiver under subsection (1), unless and to the extent that the Court otherwise orders or that this Act provides to the contrary, the provisions of this Act that apply to administrative receivers apply to that receiver.

(3) The Court shall not appoint a receiver as an administrative receiver if there is an administrative receiver acting in relation to the company.

## Powers of administrative receiver

**144.** (1) Notwithstanding any provision in the memorandum or articles, an administrative receiver may, unless the debenture or other instrument by which he or she was appointed provides otherwise—

(a) execute all documents necessary or incidental to the exercise of his or her powers in the name of and on behalf of the company in receivership; and

(b) use the company's seal.

(2) Unless and to the extent that the debenture or other instrument by which an administrative receiver is appointed provides otherwise, the powers conferred on an administrative receiver of a company by the debenture or other instrument by which he or she was appointed include the powers specified in Schedule 1.

(3) References in Schedule 1 to the assets of the company are to that part of the assets of the company in respect of which the receiver is appointed.

(4) A person dealing with the administrative receiver of a company in good faith and for value is not concerned to enquire whether he or she is acting within his or her powers.

## Power to dispose of charged assets

**145.** (1) In this section, "relevant assets", in relation to the administrative receiver, means the assets of which he or she is or, but for the appointment of some other person as the receiver of part of the company's assets, would be the receiver.

(2) Where on an application by an administrative receiver, the Court is satisfied that the disposal, with or without other assets, of any relevant assets which are subject to a security interest would be likely to promote a more advantageous realisation of the company's assets than would otherwise be effected, the Court may by order authorise the administrative receiver to dispose of the assets as if they were not subject to the other security interest.

*Insolvency Act*

(3) Subsection (2) does not apply in the case of any security interest held by the person by or on whose behalf the administrative receiver was appointed, or of any security interest to which a security interest so held has priority.

(4) It shall be a condition of an order made under subsection (2) that—

*(a)* the net proceeds of the disposal; and

*(b)* where those proceeds are less than such amount as may be determined by the Court to be the net amount which would be realised on the sale of the assets in the open market by a willing vendor (the open market value), such sums as may be required to make good the deficiency, shall be applied towards the sums secured by the security interest.

(5) Where a condition imposed pursuant to subsection (4) relates to 2 or more security interests, that condition shall require the net proceeds of the disposal and, where paragraph *(b)* of that subsection applies, the sums mentioned in that paragraph to be applied towards discharging the sums secured by those security interests in the order of their priorities.

(6) Where, following the disposal of assets under this section, subsection (4)*(b)* applies, the administrative receiver, or any person to whom sums are to be paid under that subsection, may apply to the Court for a review of the Court's determination as to the open market value of the assets.

(7) On an application made under subsection (6), the Court may make a fresh determination as to the open market value of the assets disposed of and subsections (4) and (5) shall apply with the new open market value substituted for the original open market value.

(8) An application under subsection (6) shall be made—

*(a)* in the case of the administrative receiver, within 14 days of the date of the disposal of the assets; or

*(b)* in the case of a person other than the administrative receiver, within 14 days of the date that he or she is notified by the administrative receiver of the sale.

(9) The administrative receiver shall file a copy of an order made under subsection (2) or subsection (7) with the Registrar within 14 days of the date of the order.

(10) An administrative receiver who contravenes subsection (9) commits an offence.

## Statement of affairs

**146.** (1) In this section, "relevant person" has the meaning set out in section 275.

(2) An administrative receiver shall, as soon as practicable after his or her appointment, by notice, require one or more relevant persons to prepare and submit to him or her a statement of affairs of the company in administrative receivership.

## Report by administrative receiver

**147.** (1) An administrative receiver shall, within 3 months of his or her appointment, prepare and file with the Registrar and, where appointed by the Court, with the Court, a report as to—

(a) the events leading up to his or her appointment;

(b) the disposal or proposed disposal by him or her of any assets of the company and the carrying on by him or her of any business of the company;

(c) the amounts of principal and interest payable to the person by whom or on whose behalf he or she was appointed and the amounts payable to preferential creditors;

(d) the amount, if any, likely to be available for the payment of other creditors; and

(e) the persons who have submitted statements of affairs under section 146, and containing such other information as may be prescribed.
*(Amended by Act 11 of 2004)*

(2) A report prepared under subsection (1) shall include summaries of the statements of affairs submitted to him or her together with his or her comments thereon.

(3) The administrative receiver shall, within 14 days of filing the report prepared under subsection (1) with the Registrar—

(a) send a copy of the report to—

(i) the company in receivership or, if it is in liquidation, its liquidator; and

(ii) *(Repealed by Act 11 of 2004)*

(iii) where the company is or has been a regulated person, to the Commission;

(b) either send a copy of the report to each creditor of the company or publish a notice in the prescribed form stating the address of an office to which creditors of the company may write for a copy of the report and at which the report can be inspected during normal office hours; and *(Amended by Act 11 of 2004)*

(c) call a meeting of unsecured creditors.

(4) Where he or she is satisfied that the disclosure of information in a report prepared under this section would seriously prejudice the carrying out by him or her of his or her functions, the administrative receiver may omit such information from his or her report. *(Amended by Act 11 of 2004)*

(5) Where a liquidator is appointed after the administrative receiver has sent a copy of his or her report to the company under subsection (3)*(a)*, he or she shall within 7 days of the date of appointment of the liquidator send a copy of his or her report to the liquidator.

(6) This section does not apply to a receiver appointed—

*(a)* to act jointly with an existing administrative receiver; or

*(b)* to act in place of an administrative receiver who has died or ceased to act, where subsections (1), (3) and (5) have been complied with by the existing administrative receiver or by his or her predecessor.

(7) An administrative receiver who fails to comply with this section commits an offence.

### Application for permission not to call meeting of creditors

**148.** (1) An administrative receiver may apply to the Court for an order permitting him or her not to call a meeting of creditors under section 147(3)*(c)* and, subject to subsection (2), the Court may make such an order subject to such terms as it considers appropriate.

(2) The Court shall not make an order under subsection (1) unless—

*(a)* the administrative receiver has stated in his or her report prepared under 147(1) his or her intention of applying for the order;

*(b)* the report has been sent to the persons referred to in section 147(3)*(a)* not less than 14 days prior to the date of the hearing of the application; and

*(c)* where he or she publishes a notice under section 147(3)*(b)*, he or she stated his or her intention to apply for the order in that notice. *(Inserted by Act 11 of 2004)*

PART V

PROVISIONS APPLICABLE TO THE LIQUIDATION OF COMPANIES
AND TO THE BANKRUPTCY OF INDIVIDUALS

### Interpretation

**149.** (1) For the purposes of this Part—

*(a)* "debtor" means a company in liquidation or an individual in bankruptcy;

*(b)* "insolvency proceeding" means in the case of a company, its liquidation and in the case of an individual, his or her bankruptcy; and

*(c)* "relevant time" means, in the case of a company, the commencement of its liquidation and, in the case of an individual, the commencement of his or her bankruptcy.
*(Amended by Act 11 of 2004)*

(2) In this Part, "company" includes a foreign company. *(Inserted by Act 11 of 2004)*

## Insolvency set-off

**150.** (1) Subject to section 435 where, before the relevant time, there have been mutual credits, mutual debts or other mutual dealings between a debtor and a creditor claiming or intending to claim in the insolvency proceeding—

> *(a)* an account shall be taken of what is due from each party to the other in respect of those mutual credits, mutual debts or other mutual dealings, as at the relevant time;
>
> *(b)* the sum due from one party shall be set-off against the sums due from the other party; and
>
> *(c)* only the balance of the account, if any, may be claimed in the insolvency proceeding or is payable to the debtor, as the case may be.

*(Amended by Act 11 of 2004)*

(2) A creditor is not entitled to claim the benefit of a set-off under this section if he or she had actual notice that the debtor was insolvent—

> *(a)* at the time he or she gave credit to the debtor or received credit from the debtor; or
>
> *(b)* at the time he or she acquired any claim against the debtor or any part of or interest in such a claim.

(3) For the purposes of subsection (2), "insolvent" has the meaning specified in section 8 with the deletion of subsection (1)*(c)*(i) of that section.

(4) Where, before the relevant time, a creditor waives or agrees that he or she will not claim the benefit of a set-off under this section, that waiver or agreement takes effect notwithstanding subsection (1), except to the extent that a creditor who was not a party to the agreement, or has not agreed otherwise, is prejudiced.

## Validity of agreements to subordinate debt

**151.** Where, before the relevant time, a creditor acknowledges or agrees that, in the event of a shortfall of assets, he or she will accept a lower priority in respect of a debt than that which he or she would otherwise have under this Act, that acknowledgement or agreement takes effect notwithstanding the provisions of this Act, except to the extent that a creditor of the debtor who was not a party to the agreement is prejudiced.

## Quantification of claims in liquidation and bankruptcy

**152.** (1) This section applies to the quantification of a claim in the liquidation of a company or the bankruptcy of an individual.

(2) The amount of a claim shall be quantified as at the relevant time.

(3) Where a claim is subject to a contingency or, for any other reason, the amount of the claim is not certain, the liquidator, or the bankruptcy trustee, shall—

> *(a)* agree an estimate of the value of the claim as at the relevant time; or

*(b)* apply to the Court to determine the amount of the claim.

(4) On an application by the liquidator or the bankruptcy trustee under subsection (3)*(b)*, the Court may—

*(a)* determine the amount of the claim itself; or

*(b)* determine a method to be used by the liquidator or the trustee for calculating the amount of the claim.

(5) In the case of rent and other payments of a periodic nature, a claim may include any amounts due and unpaid at the relevant time and where, at the relevant time, a payment was accruing due, the claim may include so much as would have fallen due at that time if the liability had been accruing from day to day.

(6) A claim based on a liability that, at the relevant time, was not payable by the company until after the relevant time shall be discounted in accordance with the Rules.

(7) Interest may be included in a claim as provided by section 153.

**Interest on claims**

**153.** (1) Subject to sections 215 and 342, a claim in the liquidation of a company or the bankruptcy of an individual shall not include an amount for interest in respect of a period after the relevant time.

(2) If it was agreed between the debtor and a creditor that the debt on which the creditor's claim is based would bear interest, the claim may include interest, at the agreed rate, up to the relevant time.

(3) A claim made by a creditor other than one referred to in subsection (2) may include interest up to the relevant time if—

*(a)* the debt on which the claim is based is due by virtue of a written instrument and was payable at a certain time before the relevant time; or

*(b)* if, before the relevant time, the creditor made written demand on the debtor and the demand stipulated that interest would be payable on the debt from the date of the demand until payment of the debt.

(4) The amount of interest that may be included in a claim under this section is—

*(a)* in the case of a debt referred to in subsection (3)*(a)*, interest at the court rate for the period from the date that the debt was payable to the relevant time; and

*(b)* in the case of a debt referred to in subsection (3)*(b)*, interest at the court rate for the period from the date of the written demand to the relevant time.

**Claim in currency other than dollars**

**154.** (1) The amount of a claim based on a liability incurred or payable in a currency other than dollars shall be converted into dollars at the rate of exchange prevailing at the relevant time.

(2) For the purposes of subsection (1), the rate of exchange should be ascertained in such manner as may be prescribed.

## Statutory demand

**155.** (1) A creditor may make demand on a person for payment of a debt owed by that person to him or her.

(2) A demand under subsection (1) shall—

*(a)* be in respect of a debt that is due and payable at the time of the demand and that is not less than the prescribed minimum;

*(b)* be in writing and shall specify the nature of the debt and its amount;

*(c)* be dated and shall be signed by the creditor or by a person authorised to make demand on the creditor's behalf;

*(d)* require the person to pay the debt or to secure or compound for the debt to the reasonable satisfaction of the creditor within 21 days of the date of service of the demand on him or her or such longer period as may be prescribed; *(Amended by Act 11 of 2004)*

*(e)* state that if the demand is not complied with, application may be made to the Court for the appointment of a liquidator or a bankruptcy trustee, as the case may be; *(Amended by Act 11 of 2004)*

*(f)* set out the rights of the person to make application to set the demand aside under section 156; and

*(g)* comply with and be served in accordance with the Rules.

(3) If the creditor making demand under subsection (1) is a secured creditor in respect of the debt, the full amount of the debt shall be specified in the demand, but—

*(a)* the demand shall specify the nature of the security interest, and the value which the creditor places on it at the date of the demand; and

*(b)* the amount claimed—

(i) shall be the full amount of the debt less the amount specified as the value of the security interest; and

(ii) shall equal or exceed the prescribed minimum.

## Application to set aside statutory demand

**156.** (1) Where a person has been served with a statutory demand he or she may apply to the Court to set it aside.

(2) An application under subsection (1) shall be made within 14 days of the date of service of the demand on him or her. *(Amended by Act 11 of 2004)*

(3) The Court may not extend the time for making or serving an application to set aside a statutory demand.

*Insolvency Act*

(4) Subject to an order of the Court under section 157, the time for compliance with the demand ceases to run as from the date upon which an application under subsection (1) is filed with the Court.

(5) A person applying to set aside a statutory demand under this section shall give 7 days notice of the hearing to the creditor or, where a person is named in the demand as the person with whom communications in respect of the demand should be made, to that person.

## Hearing to set aside statutory demand

**157.** (1) The Court shall set aside a statutory demand if it is satisfied that—

   *(a)* there is a substantial dispute as to whether—

   (i) the debt; or

   (ii) a part of the debt sufficient to reduce the undisputed debt to less than the prescribed minimum, is owing or due;

   *(b)* the person on whom the statutory demand was served has a reasonable prospect of establishing a set-off, counterclaim or cross claim in an amount equal to or greater than the amount specified in the demand less the prescribed minimum; or

   *(c)* the creditor holds a security interest in respect of the debt claimed and the value of the security interest is equal to or greater than the amount specified in the demand less the prescribed minimum.

(2) The Court may set aside a statutory demand if it is satisfied that substantial injustice would otherwise be caused—

   *(a)* because of a defect in the demand, including a failure to comply with section 155(3); or

   *(b)* for some other reason.

(3) Where the Court is satisfied that the security interest of a secured creditor has been under-valued in the statutory demand, the Court may require the creditor to amend the demand accordingly, but without prejudice to his or her right to make application for the appointment of a liquidator or for a bankruptcy order, as the case may be. *(Amended by Act 11 of 2004)*

(4) If, on hearing an application to set aside a statutory demand, the Court is satisfied that there are no grounds for setting aside the statutory demand, it may extend the time for compliance with the statutory demand.

(5) If the Court dismisses an application to set aside a statutory demand, it shall make an order authorising the creditor to make application for the appointment of a liquidator or for a bankruptcy order, as the case may be. *(Amended by Act 11 of 2004)*

(6) Having considered the evidence before it on a hearing under this section, the Court may either summarily determine the application or adjourn it giving such directions as it considers fit.

PART VI

LIQUIDATION

*Preliminary*

### Application of this Part to Official Receiver

**158.** Where the Official Receiver is appointed as the liquidator or provisional liquidator of a company, the provisions of this Act that apply to a liquidator apply to the Official Receiver, as liquidator, unless otherwise provided.

### Appointment of liquidator

**159.** (1) The Court may appoint the Official Receiver or an eligible insolvency practitioner as liquidator—

    *(a)* of a company, on an application under section 162; or

    *(b)* of a foreign company, on an application under section 163.

(2) Subject to subsection (5) and section 161, the members of a company may, by a qualifying resolution, appoint an eligible insolvency practitioner as liquidator of the company. *(Amended by Act 11 of 2004)*

(3) For the purposes of subsection (2), a resolution is a "qualifying resolution" if it is passed at a properly constituted meeting of the company by a majority of 75%, or if a higher majority is required by the memorandum or articles, by that higher majority, of the votes of those members who are present at the meeting and entitled to vote on the resolution.

(4) The members of a foreign company may not appoint a liquidator under this Part and any resolution of the members of a foreign company that purports to appoint a liquidator under this Part is void and of no effect.

(5) The members of a company that is a regulated person may not appoint a liquidator under subsection (2) unless at least 5 business days written notice of the resolution, or such shorter period of notice as the Commission may agree to accept in writing, has been given to the Commission. *(Inserted by Act 11 of 2004)*

(6) A resolution passed in contravention of subsection (5) is void and of no effect. *(Inserted by Act 11 of 2004)*

### Duration of liquidation

**160.** The liquidation of a company commences at the time at which a liquidator is appointed as provided in section 159 and continues until it is terminated in accordance with section 232 and, throughout this period, the company is referred to in this Act as "in liquidation".

### Appointment of liquidator by members

**161.** (1) The members of a company may not appoint a liquidator of the company if—

    *(a)* an application to the Court to appoint a liquidator has been filed and served but not yet determined; *(Amended by Act 11 of 2004)*

    *(b)* a liquidator has been appointed by the Court; or

*Insolvency Act*                      LAW OF
VIRGIN ISLANDS
Revision Date: 1 Jan 2020

*(c)* the person to be appointed liquidator has not consented in writing to his or her  appointment, and a resolution to appoint a liquidator in the circumstances referred to in paragraphs *(a)*, *(b)* or *(c)* is void and of no effect.

(2) Where the members resolve to appoint a liquidator under section 159(2), the company shall, as soon as practicable, give the liquidator notice of his or her appointment.

(3) The members of a company may not appoint the Official Receiver as liquidator of the company, and any resolution of the members that purports to do so is void and of no effect.

(3A) The acts of a liquidator appointed in breach of section 161(1)*(a)* carried out in good faith are valid provided that he or she is not aware of the breach. *(Inserted by Act 11 of 2004)*

(4) A company that contravenes subsection (2) commits an offence.

## Appointment of liquidator by Court

**162.** (1) The Court may, on application by a person specified in subsection (2), appoint a liquidator of a company under section 159(1) if—

*(a)* the company is insolvent;

*(b)* the Court is of the opinion that it is just and equitable that a liquidator should be appointed; or

*(c)* the Court is of the opinion that it is in the public interest for a liquidator to be appointed.

(2) Subject to subsections (3), (4) and (5), an application under subsection (1) may be made by one or more of the following—

*(a)* the company;

*(b)* a creditor;

*(c)* a member;

*(d)* the supervisor of a creditors' arrangement in respect of the company;

*(e)* the Commission;

*(ea)* the International Tax Authority; and *(Inserted by Act 14 of 2019)*

*(f)* the Attorney General.

(3) An application under subsection (1)*(a)* by a member may only be made with the leave of the Court, which shall not be granted unless the Court is satisfied that there is a *prima facie* case that the company is insolvent.

(4) An application to appoint a liquidator under subsection (1)*(c)* may only be made by the Commission, the International Tax Authority or the Attorney General. *(Amended by Act 14 of 2019)*

(5) The Commission may only make an application to appoint a liquidator under subsection (1)*(c)* if the company concerned is, or at any time has been, a regulated person or the company is carrying on, or at any time has carried on, unlicensed financial services business. *(Amended by Act 19 of 2006)*

(5a) The International Tax Authority shall only make an application to appoint a liquidator under subsection (1)*(c)* if the company has been the subject of a determination by the International Tax Authority pursuant to section 10 of the Economic Substance (Companies and Limited Partnerships) Act to the effect that it has been carrying on a relevant activity in breach of the economic substance requirements or has been found to be in breach of the Mutual Legal Assistance (Tax Matters) Act; *(Inserted by Act 14 of 2019)*

(6) Where a creditors arrangement has terminated, the person who, immediately before the termination of the arrangement, was the supervisor is treated as the supervisor for the purposes of this section. *(Amended by Act 11 of 2004)*

(7) An applicant may, in his or her application under this section, propose an eligible insolvency practitioner as liquidator of the company.

(8) Where an order is made under section 159(1) at a time when an arrangement is in force in respect of the company, the Court may appoint the supervisor of the arrangement as liquidator of the company.

## Appointment of liquidator of a foreign company

163. (1) The Court may, on application by a person specified in section 162(2), appoint a liquidator of a foreign company under section 159(1) if the Court is satisfied that the company has a connection with the Virgin Islands and—

> *(a)* the company is insolvent;
>
> *(b)* the Court is of the opinion that it is just and equitable that a liquidator should be appointed;
>
> *(c)* the Court is of the opinion that it is in the public interest for a liquidator to be appointed;
>
> *(d)* the company is dissolved or has otherwise ceased to exist under or by virtue of the laws of the country in which it was last registered;
>
> *(e)* the company has ceased to carry on business; or
>
> *(f)* the company is carrying on business only for the purpose of winding up its affairs.

(2) For the purposes of subsection (1), a foreign company has a connection with the Virgin Islands only if—

> *(a)* it has or appears to have assets in the Virgin Islands;
>
> *(b)* it is carrying on, or has carried on, business in the Virgin Islands; or
>
> *(c)* there is a reasonable prospect that the appointment of a liquidator of the company under this Part will benefit the creditors of the company.

(3) An application for the appointment of a liquidator of a foreign company may be made—

> *(a)* notwithstanding that the company has been dissolved or has otherwise ceased to exist under or by virtue of the laws of any other country; and

(b) whether or not the company is or has been registered under Part IX of the Companies Act, 1885 or Part XI of the BVI Business Companies Act. *(Amended by Act 16 of 2004)*

(3A) An application to appoint a liquidator under subsection (1)*(c)* may only be made by the Commission, the International Tax Authority or the Attorney General. *(Inserted by Act 11 of 2004 and amended by Act 14 of 2019)*

(3B) The Commission may only make an application to appoint a liquidator under subsection (1)*(c)* if the foreign company concerned is, or at any time has been, a regulated person or the company is carrying on, or at any time has carried on, unlicensed financial services business. *(Inserted by Act 11 of 2004 and amended by Act 19 of 2006)*

(3C) The International Tax Authority shall only make an application to appoint a liquidator under subsection (1)*(c)* if the foreign company has been the subject of a determination by the International Tax Authority pursuant to section 10 of the Economic Substance (Companies and Limited Partnerships) Act to the effect that it has been carrying on a relevant activity in breach of the economic substance requirements. *(Inserted by Act 14 of 2019)*

(4) Subject to the modifications and exceptions set out in Schedule 3, the provisions of this Part apply to an application to appoint a liquidator of a foreign company and to the liquidation of a foreign company.

## Withdrawal of application

164. An application for the appointment of a liquidator may not be withdrawn except with the leave of the Court.

## Advertisement of application

165. (1) Unless the Court otherwise orders, an application for the appointment of a liquidator shall be advertised—

(a) if the company is the applicant, not less than 7 days before the date set for the application to be heard; or

(b) if the company is not the applicant, not less than 7 days after service of the application on the company and not less than 7 days before the date set for the application to be heard.

(2) If the application is not advertised in accordance with this section and the Rules, the Court may dismiss it.

## Substitution of applicant

166. (1) In the circumstances specified in subsection (2), the Court may, by order, substitute as applicant in an application for the appointment of a liquidator, a creditor or member who is entitled to make such an application.

(2) The Court may make a substitution order under subsection (1) where the original applicant is a member or creditor of the company and the Court considers it appropriate to do so—

(a) because the applicant applies to withdraw the application or consents to it being dismissed;

    *(b)* because the Court considers that the application is not being diligently proceeded with;

    *(c)* where the applicant is not entitled to make the application; or

    *(d)* for any other reason.

## Court's power on hearing of an application

**167.** (1) On the hearing of an application for the appointment of a liquidator, the Court may—

    *(a)* appoint a liquidator under section 159(1);

    *(b)* dismiss the application, even if a ground on which the Court could appoint a liquidator has been proved;

    *(c)* adjourn the hearing conditionally or unconditionally; or

    *(d)* make any interim order or other order that it considers fit.

(2) The Court shall not refuse to appoint a liquidator of a company merely because—

    *(a)* the assets of the company are subject to a security interest in respect of an amount equal to or greater than the value or amount of the assets;

    *(b)* the company has no assets; or

    *(c)* where the applicant is a member, if the order were made, no assets of the company would be available for distribution among the members.

(3) Where an application to appoint a liquidator is made by a member under section 162(1)*(b)*, if the Court is of the opinion that—

    *(a)* the applicant is entitled to relief either by the appointment of a liquidator or by some other means; and

    *(b)* in the absence of any other remedy it would be just and equitable to appoint a liquidator, it shall appoint a liquidator unless it is also of the opinion that some other remedy is available to the applicant and that he or she is acting unreasonably in seeking to have a liquidator appointed instead of pursuing that other remedy.

(4) An application for the appointment of a liquidator shall be dismissed if the company is in liquidation, a liquidator having been appointed by the members under section 159(2). *(Inserted by Act 11 of 2004)*

## Period within which application shall be determined

**168.** (1) Subject to subsection (2), an application for the appointment of a liquidator shall be determined within 6 months after it is filed.

(2) The Court may, upon such conditions as it considers fit, extend the period referred to in subsection (1) for one or more periods not exceeding 3 months each if—

    *(a)* it is satisfied that special circumstances justify the extension; and

*Insolvency Act*

*(b)* the order extending the period is made before the expiry of that period or, if a previous order has been made under this subsection, that period as extended.

(3) If an application is not determined within the period referred to in subsection (1) or within that period as extended, it is deemed to have been dismissed.

(4) Section 496(1)*(a)* shall not apply to the time periods specified in this section. *(Inserted by Act 11 of 2004)*

## Expenses of an arrangement

**169.** Where a liquidator of a company is appointed and, at the date that the application was filed, an arrangement was being supervised by a supervisor, the remuneration of the supervisor is a first charge on the assets of the company.

*Interim Relief*

## Appointment of provisional liquidator

**170.** (1) Where an application for the appointment of a liquidator of a company has been filed but not yet determined or withdrawn, the Court may, on application by a person specified in subsection (2), appoint the Official Receiver or an eligible insolvency practitioner as provisional liquidator of the company on the grounds specified in subsection (4).

(2) Subject to subsection (3), an application under subsection (1) may be made by one or more of the following—

*(a)* the applicant for the appointment of a liquidator;

*(b)* the company;

*(c)* a creditor;

*(d)* a member;

*(e)* the Commission;

(ea) the International Tax Authority; and *(Inserted by Act 14 of 2019)*

*(f)* any person who, under any other enactment, is entitled to apply for the appointment of a liquidator of the company.

(3) An application under subsection (1) by a member may only be made with the leave of the Court.

(4) The Court may appoint a provisional liquidator under subsection (1) if—

*(a)* the company, in respect of which the application to appoint a liquidator has been made, consents; or

*(b)* the Court is satisfied that the appointment of a provisional liquidator—

(i) is necessary for the purpose of maintaining the value of assets owned or managed by the company; or

(ii)  is in the public interest.

(5) The Court may appoint a provisional liquidator on such terms as it considers fit and may, as a condition precedent to the appointment, require the applicant to deposit at Court, or otherwise secure to the satisfaction of the Court, such sum as the Court considers reasonable to cover the remuneration of the provisional liquidator. *(Amended by Act 11 of 2004)*

### Rights and powers of provisional liquidator

**171.** (1) Subject to subsection (2), a provisional liquidator has the rights and powers of a liquidator to the extent necessary to maintain the value of the assets owned or managed by the company or to carry out the functions for which he or she was appointed.

(2) The Court may limit the powers of a provisional liquidator in such manner and at such times as it considers fit.

### Remuneration of provisional liquidator

**172.** (1) The provisional liquidator of a company is entitled to be paid such remuneration as the Court may order applying the general principles specified in section 432.

(2) Subject to subsections (4) and (5), the remuneration of the provisional liquidator is payable out of the assets of the company.

(3) Where a liquidator is appointed, the remuneration of the provisional liquidator shall be paid in accordance with the prescribed priority.

(4) If a liquidator is not appointed, the Court may order the applicant for the appointment of the provisional liquidator to pay or contribute to the remuneration and expenses of the provisional liquidator if it is satisfied that the applicant—

    *(a)* misled the Court when making the application; or

    *(b)* acted unreasonably in applying for the appointment of the provisional liquidator.

(5) If the assets of the company are not sufficient to pay the remuneration of the provisional liquidator, the Court may order the shortfall, or part of the shortfall, to be paid by the applicant for the appointment of the provisional liquidator.

(6) Unless the Court otherwise orders, where subsection (4)*(a)* applies, the provisional liquidator may retain out of the company's assets such sums or assets as are, or may be, required for meeting his or her remuneration.

### Termination of appointment of provisional liquidator

**173**. (1) The Court may, on the application of the provisional liquidator or of any person specified in section 170(2) or on its own motion, terminate the appointment of a provisional liquidator.

(2) If the Court has not previously terminated the appointment of a provisional liquidator under subsection (1), it terminates on the determination by the Court of the application to appoint a liquidator.

112                              *Insolvency Act*                          **LAW OF
                                                                          VIRGIN ISLANDS**
                                                                          Revision Date: 1 Jan 2020

(3) On the termination of the appointment of a provisional liquidator, the Court may give such directions or make such order with respect to the accounts of his or her administration, or to any other matters, as it considers appropriate.

**Power to stay or restrain proceedings etc.**

**174.** Where an application for the appointment of a liquidator of a company has been filed but not yet determined or withdrawn, a person specified in section 170(2) may—

> *(a)* where any action or proceeding is pending against the company in the Court, the Court of Appeal or the Privy Council, apply to the Court, the Court of Appeal or the Privy Council, as the case may be, for a stay of the action or proceeding; and

> *(b)* where any action or proceeding is pending against the company in any other Virgin Islands court or tribunal in the Virgin Islands, apply to the Court for a stay of the action or proceeding.

*Effect of Liquidation*

**Effect of liquidation**

**175.** (1) Subject to subsection (2), with effect from the commencement of the liquidation of a company—

> *(a)* the liquidator has custody and control of the assets of the company;

> *(b)* the directors and other officers of the company remain in office, but they cease to have any powers, functions or duties other than those required or permitted under this Part or authorised by the liquidator; *(Amended by Act 11 of 2004)*

> *(c)* unless the Court otherwise orders, no person may—

>> (i) commence or proceed with any action or proceeding against the company or in relation to its assets; or

>> (ii) exercise or enforce, or continue to exercise or enforce any right or remedy over or against assets of the company;

> *(d)* unless the Court otherwise orders, no share in the company may be transferred;

> *(e)* no alteration may be made in the status of or to the rights or liabilities of a member, whether by an amendment of the memorandum or articles or otherwise;

> *(f)* no member may exercise any power under the memorandum or articles, or otherwise, except for the purposes of this Act; and

> *(g)* no amendment may be made to the memorandum or articles of the company.

(2) Subsection (1) does not affect the right of a secured creditor to take possession of and realise or otherwise deal with assets of the company over which that creditor has a security interest.

(3) Anything or matter done or purported to be done in contravention of subsection (1) is void and of no effect.

## Restriction on execution or attachment

**176.** (1) Subject to subsections (2) and (3), a creditor is not entitled to retain the benefit of any execution process, distress or attachment over or against the assets of a company in liquidation unless the execution, process or attachment is completed before the first occurring of the commencement of the liquidation and—

(a) where the liquidator was appointed by the members under section 159(2), the date upon which the creditor had notice of the calling of the meeting at which the resolution was proposed; or

(b) where the liquidator was appointed by Court, the date upon which the application to appoint the liquidator was filed.

(2) A person who, in good faith and for value, purchases assets of a company from an officer charged with an execution process acquires a good title as against the liquidator of the company.

(3) The Court may set aside the rights conferred on a liquidator under subsection (1) to the extent and subject to such terms as it considers fit.

(4) For the purposes of this section—

(a) an execution or distraint against personal property is completed by seizure and sale;

(b) an attachment of a debt is completed by the receipt of the debt; and

(c) an execution against land is completed by sale, and in the case of an equitable interest, by the appointment of a receiver.

## Duties of officer in execution process

**177.** (1) Subject to subsection (6), where—

(a) assets of a company are taken in an execution process; and

(b) before completion of the execution process the officer charged with the execution process receives notice that a liquidator or a provisional liquidator of a company has been appointed, he or she, on being required by the liquidator or provisional liquidator to do so, deliver or transfer the assets and any money received in satisfaction or partial satisfaction of the execution or paid to avoid a sale of the assets, to the liquidator.

(2) The costs of the execution process are a first charge on any asset delivered or transferred to the liquidator under subsection (1) and the liquidator may sell all or some of the assets to satisfy that charge.

(3) Subject to subsections (4) and (6), if in an execution process in respect of a judgement for a sum exceeding $500, assets of a company are sold or money is paid to avoid a sale, the officer charged with the execution process shall retain the proceeds of sale or the money paid for a period of 14 days.

(4) If—

114 *Insolvency Act*

> *(a)* within the period of 14 days referred to in subsection (3), the officer has notice that—
>
> > (i) an application for the appointment of a liquidator of the company has been filed; or
> >
> > (ii) a meeting of the members of the company has been called at which a resolution to appoint a liquidator is to be proposed; and
>
> *(b)* a liquidator is appointed in respect of the company, the officer shall deduct the costs of execution from the amount that he or she has retained under subsection (3) and pay the balance to the liquidator.

(5) A liquidator to whom money has been paid under subsection (4) is entitled to retain it as against the execution creditor.

(6) The Court may set aside the rights conferred on a liquidator under this section to the extent and subject to such terms as it considers fit.

*Notice of Appointment and First Meetings of Creditors*

## Notice of appointment of liquidator

**178.** (1) The liquidator of a company shall, within 14 days of the date of his or her appointment—

> *(a)* advertise his or her appointment in accordance with the Rules; *(Substituted by Act 11 of 2004)*
>
> *(b)* file notice of his or her appointment with the Registrar;
>
> *(c)* serve notice of his or her appointment on the company in respect of which he or she was appointed; and
>
> *(d)* if he or she has been appointed in respect of a company that is or has been a regulated person, serve notice of his or her appointment on the Commission.

(2) A liquidator who contravenes subsection (1) commits an offence.

## Liquidator to call first meeting of creditors

**179.** (1) Subject to section 183, the liquidator of a company shall call a meeting of the creditors of the company (the first creditors' meeting) to be held within 21 days of the date of his or her appointment—

> *(a)* by sending a notice of the meeting to every creditor not less than 7 days before the date upon which the meeting is to be held; and
>
> *(b)* by advertising the meeting.
> *(Amended by Act 11 of 2004)*

(2) During the period before the date of the first creditors' meeting, the liquidator shall, at the request of a creditor, furnish that creditor with—

> *(a)* a list of the creditors of the company known to the liquidator; and

*(b)* such other information concerning the affairs of the company as the creditor may reasonably require and that the liquidator is reasonably able to provide.

(3) The liquidator shall attend the first creditors meeting and, if appointed by the members, shall report to the meeting on any exercise by him or her of his or her powers since his or her appointment.

(4) At the first creditors' meeting, the creditors may—

*(a)* in the case of a liquidator appointed by the members, appoint another liquidator in his or her place; or

*(b)* in the case of a liquidator appointed by the Court, resolve to make application to the Court for the appointment of another liquidator in his or her place; and

*(c)* in either case, appoint a creditors' committee.

(5) A liquidator who contravenes subsections (1), (2) or (3) commits an offence.

## Application to Court by members

**180.** Where at a meeting held under section 179 the creditors appoint a liquidator in the place of the liquidator appointed by the members, a director, member or creditor of the company may apply to the Court for an order that—

*(a)* the person appointed by the members is appointed liquidator; or

*(b)* some other insolvency practitioner is appointed as liquidator, in either case, instead of or jointly with the liquidator appointed by the creditors.

## Application of sections 178 and 179

**181.** (1) Subject to subsection (2), sections 178 and 179 do not apply to a liquidator appointed to act—

*(a)* with an existing liquidator; or

*(b)* in place of a liquidator who has died or otherwise ceased to act.

(2) Where the first liquidator of a company dies or ceases to act before sections 178 and 179 have been fully complied with, those sections apply to his or her successor and any continuing liquidator until the sections have been fully complied with.

## Restrictions on powers of liquidator appointed by members

**182.** Notwithstanding section 186, in the case of a liquidator appointed by the members of a company, during the period before the holding of the first creditors' meeting called under section 179, the powers of the liquidator are limited to—

*(a)* taking into his or her custody and control all the assets to which the company is or appears to be entitled;

*(b)* disposing of perishable goods and other assets the value of which is likely to diminish if they are not immediately disposed of;

> *(c)* doing all such things as may be necessary to protect the company's assets; and
>
> *(d)* exercising such other of the powers conferred on a liquidator by section 186 as the Court may, on his or her application, sanction.

### Court appointed liquidator may dispense with creditors' meeting

**183.** A liquidator appointed by the Court is not required to call a meeting of creditors under section 179 if—

> *(a)* he or she considers that, having regard to the assets and liabilities of the company, the likely result of the liquidation of the company and any other relevant matters that it is not necessary for a meeting to be held;
>
> *(b)* he or she gives notice to the creditors stating—
>
>> (i) that he or she does not consider it necessary for a meeting to be held;
>>
>> (ii) the reasons for his or her view; and
>>
>> (iii) that a meeting will not be called unless 10% in value of the creditors give written notice to the liquidator within 10 days of receiving the notice, that they require a meeting to be called; and
>
> *(c)* no notice requiring a meeting to be held is received by him or her.

*Liquidators*

### Status of liquidator

**184.** (1) In performing his or her functions and undertaking his or her duties under this Act, a liquidator, whether appointed by resolution of the members or by the Court, acts as an officer of the Court.

(2) A liquidator is the agent of the company in liquidation.

### General duties of liquidator

**185.** (1) The principal duties of a liquidator of a company are—

> *(a)* to take possession of, protect and realise the assets of the company;
>
> *(b)* to distribute the assets or the proceeds of realisation of the assets in accordance with this Act; and
>
> *(c)* if there are surplus assets remaining, to distribute them, or the proceeds of realisation of the surplus assets, in accordance with this Act.

(2) The liquidator shall, subject to this Act and the Rules, use his or her own discretion in undertaking his or her duties.

(2A) If it appears to the liquidator that the company has carried on unlicensed financial services business, he or she shall as soon as reasonably practicable report the matter to the Commission. *(Inserted by Act 11 of 2004)*

(2B) Where the liquidator makes a report to the Commission under subsection (2A) he or she shall—

(a) send to the Commission a copy of every notice or other document that he or she is required under this Part to send to a creditor or the Court; and

(b) notify the Commission of any application made to the Court in or in connection with the liquidation.
*(Inserted by Act 11 of 2004)*

(3) A liquidator also has the other duties imposed by this Act and the Rules and such duties as may be imposed by the Court.

## General powers of liquidator

**186.** (1) A liquidator of a company has the powers necessary to carry out the functions and duties of a liquidator under this Act and the powers conferred on him or her by this Act.

(2) Without limiting subsection (1), a liquidator has the powers specified in Schedule 2.

(3) The Court may provide that certain powers may only be exercised with the sanction of the Court—

(a) where the liquidator is appointed by the Court, on his or her appointment or subsequently; or

(b) where the liquidator is appointed by the members, at any time.

(4) Where a liquidator disposes of any assets of the company to a person connected with the company, he or she shall notify the creditors' committee, if any, of such disposition.

(5) The liquidator of a company, whether or not appointed by the Court, may at any time apply to the Court for directions in relation to a particular matter arising in the liquidation.

(6) The acts of a liquidator of a company are valid notwithstanding any defect in his or her nomination, appointment or qualifications. *(Inserted by Act 11 of 2004)*

## Removal of liquidator

**187.** (1) The Court may, on application by a person specified in subsection (2) or on its own motion, remove the liquidator of a company from office if—

(a) the liquidator—

(i) is not eligible to act as an insolvency practitioner in relation to the company;

(ii) breaches any duty or obligation imposed on him or her by or owed by him or her under this Act, the Rules or the Regulations made under section 486 or, in his or her capacity

as liquidator, under any other enactment or law in the Virgin Islands; or *(Amended by Act 11 of 2004)*

    (iii) fails to comply with any direction or order of the Court made in relation to the liquidation of the company; or

   *(b)* the Court is satisfied that—

    (i) the liquidator's conduct of the liquidation is below the standard that may be expected of a reasonably competent liquidator;

    (ii) the liquidator has an interest that conflicts with his or her role as liquidator; or

    (iii) that for some other reason he or she should be removed as liquidator.

   (2) An application to the Court to remove the liquidator of a company may be made by—

   *(a)* the creditors' committee;

   *(b)* a creditor or member of the company; or

   *(c)* the Official Receiver.

   (3) Where the Court removes a liquidator from office under this section—

   *(a)* if, following his or her removal, there is at least one liquidator remaining in office, the Court may appoint an eligible insolvency practitioner as liquidator in his or her place; or

   *(b)* if the liquidator removed was the sole liquidator of the company, the Court shall appoint the Official Receiver or an eligible insolvency practitioner as liquidator in his or her place.
*(Amended by Act 11 of 2004)*

   (4) On the hearing of an application under this section, the Court may make any interim or other order it considers fit.

## Resignation of liquidator

**188.** (1) A liquidator of a company—

   *(a)* shall resign if he or she is no longer eligible to act as an insolvency practitioner in relation to the company; but

   *(b)* otherwise may only resign in accordance with this section.

   (2) Where a liquidator resigns under subsection (1)*(a)*, he or she shall send a notice of his or her resignation to the creditors of the company to the Registrar and to the Official Receiver and, if he or she was appointed by the Court, to the Court and his or her resignation takes effect from the date that the notice is received by the Official Receiver. *(Amended by Act 11 of 2004)*

   (3) A liquidator may resign in accordance with subsection (5)—

   *(a)* if he or she intends to cease to be in practice as an insolvency practitioner;

(b) if there is some conflict of interest or change of personal circumstances that precludes or makes impracticable the further discharge by him or her of his or her duties; or

(c) on the grounds of ill health.

(4) Notwithstanding subsection (3), where joint liquidators are appointed in respect of a company, one or more of the joint liquidators may resign in accordance with subsection (5) if—

(a) all the joint liquidators are of the opinion that it is no longer necessary or expedient for the resigning liquidator or liquidators to continue in office; and

(b) at least one of them will remain in office.

(5) Where the liquidator of a company intends to resign on one of the grounds referred to in subsection (3) or under subsection (4), he or she shall call a meeting of creditors for the purpose of accepting his or her resignation as liquidator.

(6) If the creditors resolve to accept the resignation of a liquidator, they may appoint an eligible insolvency practitioner as liquidator in his or her place. *(Amended by Act 11 of 2004)*

(6A) If the creditors refuse or fail to accept the resignation of the liquidator, he or she may apply to the Court for leave to resign in accordance with the Rules. *(Inserted by Act 11 of 2004)*

(7) This section does not apply to the Official Receiver when acting as the liquidator of a company.

## Appointment of replacement liquidator

189. (1) Where the liquidator of a company dies or resigns under section 188 and no liquidator is appointed in his or her place, the Court, on the application of a person specified in subsection (2) or on its own motion—

(a) if there is at least one liquidator remaining in place, may appoint an eligible insolvency practitioner as liquidator in his or her place; or

(b) if the liquidator who has died or resigned was the sole liquidator of the company, shall appoint the Official Receiver or an eligible insolvency practitioner in his or her place.
*(Substituted by Act 11 of 2004)*

(2) An application under subsection (1) may be made—

(a) by any continuing liquidator;

(b) by the creditors' committee, if any; or

(c) by the Official Receiver.

(3) Where the Official Receiver is the liquidator of a company, an eligible insolvency practitioner may be appointed in his or her place—

(a) on the application of the Official Receiver, by the Court; or

(b) with the consent of the Official Receiver, by resolution of the creditors at a meeting called by the Official Receiver for that purpose.

*(Inserted by Act 11 of 2004)*

(4) An application may be made under subsection (3) notwithstanding that the Court has refused to make an appointment on a previous application by the Official Receiver. *(Inserted by Act 11 of 2004)*

## Remuneration of liquidator

**190.** The remuneration payable to the liquidator of a company shall be fixed applying the principles set out in section 432.

## Notification of liquidation

**191.** (1) Where a company is in liquidation, every document of a type specified in subsection (2) shall—

(a) state that the company is in liquidation; and

(b) specify the name of the liquidator.

(2) Subsection (1) applies to—

(a) every public document issued by or on behalf of the company;

(b) every public document issued by or on behalf of the liquidator of the company or a receiver of the assets of that company on which, in either case, the name of the company appears.

(3) If subsection (1) is contravened the company, and each officer, receiver or liquidator of the company who causes, permits or acquiesces in the contravention, commits an offence.

## Vesting of assets in liquidator

**192.** (1) On the application of the liquidator of a company, the Court may order that all or any part of the assets of the company, or held by trustees on its behalf, shall vest in the liquidator from the date of the order.

(2)  On the making of an order under subsection (1), the assets covered by the order vest in the liquidator by his or her official name.

(3) The liquidator of a company may, after giving such indemnity, if any, as the Court may direct, bring or defend in his or her official name any action or other legal proceeding which relates to the vested assets or which it is necessary to bring or defend for the purposes of liquidating the company and recovering its assets.

*Members*

## Settlement of list of members

**193.** (1) Subject to subsection (7), the liquidator of a company shall, as soon as practicable after his or her appointment, settle a list of the members of the company containing the information and in the form prescribed. *(Amended by Act 11 of 2004)*

(2) Forthwith after settling the list of members, the liquidator shall give notice to every person included in the list that he or she has done so in accordance with the Rules.

(3) If a person objects to any entry in, or exclusion from, the list of members as settled by the liquidator which is not accepted by the liquidator, he or she  may apply to the Court for an order removing the entry to which he or she objects or, as the case may be, modifying the entry.

(4) An application under subsection (3) shall be made within 21 days of the service on the applicant of the liquidator's notice declining to accept the objection.

(5) The liquidator of a company is not personally liable for the costs incurred by a person in an application under subsection (3) unless the Court makes an order to that effect.

(6) The liquidator may from time to time vary or add to the list of members as previously settled by him or her and any variation or addition is subject, as regards any person affected, to the provisions of the Act and the Rules applicable to the settling of the list.

(7) The liquidator is not required to settle a list of members under this section if it appears to him or her that it will not be necessary to require any member to contribute to the assets of the company or to adjust the rights of members. *(Inserted by Act 11 of 2004)*

## Rectification of register of members

**194.** (1) If it appears to the liquidator of a company that the register of members of the company should be rectified, he or she may apply to the Court for an order under this section.

(2) On an application under subsection (1), the Court may rectify the register of members of the company.

## Liability of members limited

**195.** (1) Unless the memorandum of a company provides that the liability of a member is unlimited, the liability of a member to contribute to the assets of a company in liquidation for the payment of its liabilities, for the expenses of the liquidation and for the adjustment of the rights of the members between themselves is limited to—

> *(a)* any amount unpaid on a share held by the member, including any liability for calls; and

> *(b)* any liability expressly provided for in the memorandum or articles, including such contribution as the member of a company limited by guarantee, or by shares and guarantee, may have undertaken to make in the event of the company being wound up.

(2) Subsection (1) does not affect—

> *(a)* any liability of the member to pay or repay monies to the company imposed by a provision of this Act or the BVI Business Companies Act; or *(Amended by Act 16 of 2004)*

(b) any liability of a member to the company under a contract, including a contract for the issue of shares, or for any tort, breach of fiduciary duty or other actionable wrong committed by the member.

## Liability of past members

**196.** (1) For the purposes of this section, a "past member" of a company is a person who ceased to be a member of the company at any time during the period of one year before the commencement of the liquidation of the company.

(2) Unless the Court is satisfied that the members of a company are able to discharge the liabilities set out in 195(1), a past member of a company in liquidation is liable to contribute to the assets of the company for the purposes specified in that subsection to the same extent as a member.

(3) Notwithstanding subsection (2), a past member is not liable to contribute to the assets of the company in respect of any liability of the company contracted after he or she ceased to be a member.

## Dividends payable to member

**197.** A member, and a past member, of a company may not claim in the liquidation of the company for a sum due to him or her in his or her character as a member, whether by way of dividend, profits, redemption proceeds or otherwise, but such sum is to be taken into account for the purposes of the final adjustment of the rights of members and, if appropriate, past members between themselves.

## Liability where limited company becomes unlimited company

**198.** (1) This section applies where an unlimited company in liquidation was at some former time registered as a limited company.

(2) A person who ceased to be a member of a company before the company became registered as an unlimited company, and has not since become a member of the company, is liable to contribute to the assets of the company only to the extent that he or she would have been liable had the company remained registered as a limited company.

## Liability where unlimited company becomes limited company

**199.** (1) This section applies where a limited company in liquidation was at some former time registered as an unlimited company.

(2) Notwithstanding section 196, if a company referred to in subsection (1) goes into liquidation within the period of one year from the date on which it was registered as a limited company, a person who was a member of the company at the date of its registration as a limited company is liable, without limit, to contribute to the assets of the company in respect of liabilities contracted before that time.

### Liability of personal representative

**200.** The personal representatives of a member or past member who has died are liable to contribute out of his or her estate to the assets of the company under sections 195, 196, 198 and 199 to the same extent as the member.

### Effect of member or past member becoming bankrupt

**201.** The liquidator of a company is entitled to submit a claim in the bankruptcy or liquidation of any member or past member of the company in respect of any contribution that the member or past member is required to make under sections 195, 196, 198 and 199.

### Status of personal representatives or bankruptcy trustee

**202.** The personal representatives and the bankruptcy trustee of a member or past member of a company in liquidation are entitled to make any application to Court, or take any such other action, as could be made or taken by the member or past member. *(Amended by Act 11 of 2004)*

### Insurance and other contracts not affected

**203.** Nothing in this Act invalidates any provision contained in a policy of insurance or other contract whereby the liability of individual members on the policy or contract is restricted or whereby the funds of the company are alone made liable in respect of the policy or contract.

### Power of liquidator to enforce liability of member or past member

**204.** (1) The liquidator of a company may—

> *(a)* if a member is liable to calls, make calls on that member; and

> *(b)* if a member or past member is liable to the company, as a member, require him or her, by notice in writing, to discharge that liability.

(2) A call made under subsection (1)*(a)* shall be in writing and shall specify the amount of, or balance due in respect of, the call.

(3) The liability of a member under subsection (1) includes a liability of the estate of the person he or she represents.

(4) In the case of an unlimited company, a member may set-off against a liability under subsection (1)*(b)* any money due to him or her  or to the estate which he or she represents, from the company on any independent dealing or contract with the company, but not any money due to him or her as a member of the company in respect of any dividend or profit.

(5) The liquidator may enforce the liability of a member under subsection (1) only if that member is on the list of members settled by him or her under section 193.

### Summary remedy against members and past members

**205.** (1) The liquidator may apply to the Court for an order under this section if—

*Insolvency Act*

(a) a member of a company fails to comply with a call made under section 204(1)*(a)*; or

(b) a member or past member fails to satisfy a liability when required to do so under 204(1)*(b)*.

(2) On an application under subsection (1), the Court may order a member or past member to pay to the company any money due from him or her, or due from the estate of the person who he or she represents in accordance with section 204(1).

(3) In the case of any company, whether limited or unlimited, when all the creditors are paid in full, together with interest at the official rate, any money due on any account whatever to a member from the company may be allowed to him or her by way of set-off against any subsequent call.

## Order under section 205 to be conclusive evidence

**206.** An order made against a member under section 205 is, subject to any right of appeal, conclusive evidence that the money, if any, ordered to be paid is due.

## Distribution of assets of company

**207.** (1) Unless and to the extent that this Act or any other enactment provides otherwise, the assets of a company in liquidation shall be applied—

(a) in paying, in priority to all other claims, the costs and expenses properly incurred in the liquidation in accordance with the prescribed priority;

(b) after payment of the costs and expenses of the liquidation, in paying the preferential claims admitted by the liquidator in accordance with the provisions for the payment of preferential claims prescribed;

(c) after payment of the preferential claims, in paying all other claims admitted by the liquidator; and

(d) after paying all admitted claims, in paying any interest payable under section 215.

(2) Subject to section 151, the claims referred to in subsection (1)*(c)* rank equally between themselves if the assets of the company are insufficient to meet the claims in full, they shall be paid rateably.

(3) Any surplus assets remaining after payment of the costs, expenses and claims referred to in subsection (1) shall be distributed to the members in accordance with their rights and interests in the company.

(4) For the purposes of this Act, assets held by a company in liquidation on trust for another person are not assets of the company.

*Claims*

## Claims having priority over floating charges

**208.** So far as the assets of a company in liquidation available for payment of the claims of unsecured creditors are insufficient to pay—

*(a)* the costs and expenses of the liquidation in accordance with the prescribed priority, and

*(b)* the preferential creditors, those costs, expenses and claims have priority over the claims of chargees in respect of assets that are subject to a floating charge created by the company and shall be paid accordingly out of those assets.

## Claims by unsecured creditors

**209.** (1) An unsecured creditor may make a claim against a company in liquidation by submitting to the liquidator a written claim, signed by him or her or on his or her behalf.

(2) The liquidator may require an unsecured creditor who intends to submit, or who has submitted, a claim under subsection (1)—

*(a)* to verify his or her claim by affidavit;

*(b)* to provide further particulars of his or her claim; or

*(c)* to provide him or her with documentary or other evidence to substantiate the claim.

(3) Subject to subsection (6A), as soon as reasonably practicable after receiving a claim under subsection (1) from a creditor who has complied with any requirements that the liquidator may have imposed under subsection (2), the liquidator shall either admit or reject the claim in whole or in part. *(Inserted by Act 11 of 2004)*

(4) If the liquidator rejects the claim, whether in whole or in part, he or she shall as soon as practicable provide the creditor with a notice of rejection in which the reasons for the rejection of the claim shall be specified.

(5) Unless the Court otherwise orders, a creditor shall bear the costs of making a claim under this section, including the costs of complying with any requirements imposed by the liquidator under subsection (2).

(6) The liquidator shall not admit a claim against the company unless it has been made in accordance with this section.

(6A) The liquidator is not required to admit or reject claims under subsection (3) at any time when it appears to him or her that the company has insufficient assets to enable a distribution to be made to unsecured creditors. *(Inserted by Act 11 of 2004)*

(7) A person who makes or authorises the making of a claim under this section knowing that—

*(a)* the claim is false or misleading in a material matter; or

*(b)* a material fact or matter has been omitted from the claim, commits an offence.

## Variation, withdrawal and expunging of claims

**210.** (1) A claim made under section 209 may—

*(a)* be amended or withdrawn by the creditor at any time before the liquidator has admitted it; and

*Insolvency Act*                    **LAW OF VIRGIN ISLANDS**
Revision Date: 1 Jan 2020

*(b)* be amended or withdrawn by agreement between the creditor and the liquidator at any time after the liquidator has admitted it.

(2) The Court, on the application of the liquidator or, where the liquidator declines to make application under this subsection, a creditor, may expunge or amend an admitted claim if it is satisfied that the claim should not have been admitted or should be reduced.

## Claims by secured creditors

**211.** (1) A secured creditor may—

*(a)* value the assets subject to the security interest and claim in the liquidation of a company as an unsecured creditor for the balance of his or her debt; or

*(b)* surrender his or her security interest to the liquidator for the general benefit of creditors and claim in the liquidation as an unsecured creditor for the whole of his or her debt, but he or she is not obliged to do either.

(2) A secured creditor may, at any time apply to the liquidator to amend the value that he or she placed on the security interest in his or her claim.

(3) If, on receiving an application under subsection (2), the liquidator is satisfied that—

*(a)* the value placed on the security interest was an estimate made in good faith on a mistaken basis; or

*(b)* the value of the security interest has subsequently changed, he or she may permit the secured creditor to amend the value that he or she places on the security interest.

(4) If the liquidator of a company is dissatisfied with the value placed on a security interest by a secured creditor, whether under subsection (1)*(a)* or on an amendment under subsection (3), he or she may require the assets comprised in the security interest to be offered for sale.

(5) A sale under subsection (4) is to be on such terms and conditions as are agreed by the secured creditor and the liquidator or, in default, as the Court determines.

(6) If assets are offered for sale by public auction, both the secured creditor and the liquidator are entitled to bid for and purchase them.

## Redemption of security interest by liquidator

**212.** (1) Where a secured creditor has claimed in the liquidation of a company under section 211(1)*(a)*, the liquidator may at any time give notice to the creditor that he or she proposes at the expiration of 28 days from the date of the notice to redeem the security interest at the value placed on it by the creditor.

(2) A secured creditor who receives a notice under subsection (1) may, within 21 days of the date of the notice, apply to the liquidator to revise the value that he or she places on the security interest in accordance with section 211(2).

(3) At the expiration of 28 days from the date of the notice under subsection (1), the liquidator may redeem the security interest at the value placed on it by the creditor unless—

> *(a)* the secured creditor has applied to the liquidator to amend the value that he or she places on the security interest and that application has not been determined; or

> *(b)* the secured creditor has appealed to the Court against the refusal of the liquidator to permit him or her to amend the value that he or she places on his or her security interest, and that appeal has not been determined.

(4) Where, subsequent to a notice to redeem issued under subsection (1), the value placed by the secured creditor on his or her security interest is amended, whether with the consent of the liquidator or on appeal to the Court, the liquidator may only redeem the security interest at the new value.

(5) A secured creditor may, by serving a notice to elect on the liquidator, require him or her to elect whether or not to exercise his or her power to redeem under this section.

(6) Where a notice to elect is served on a liquidator under subsection (5), he or she is not entitled to redeem the security interest unless he or she does so within 6 months of the date of service of the notice on him or her or within such extended period as the Court may allow.

## Realisation of security interest by secured creditor

**213.** (1) Where a secured creditor realises his or her security interest and there is a surplus remaining from the net amount realised after satisfaction of the debt secured, he or she shall account to the liquidator for the surplus, after making any proper payments to the holder of any other security interest over the assets subject to that charge.

(2) Where a secured creditor realises his or her security interest and the net amount realised is not sufficient to satisfy the liability secured—

> *(a)* if the creditor has previously valued his or her security interest and claimed in the liquidation for the balance under section 211(1)*(a)*, the net amount realised is substituted for the value previously placed by the creditor on the security interest; or

> *(b)* in any other case, the creditor may claim in the liquidation as an unsecured creditor for the balance of the secured liability.

(3) For the purposes of this section, the secured liability includes contractual interest payable to the secured creditor on the liability up to the time of its satisfaction.

## Surrender for non-disclosure

**214.** (1) Subject to subsection (2), if a secured creditor omits to disclose his or her security interest when submitting a claim in the liquidation of a company, he or she shall surrender his or her security interest for the general benefit of the creditors.

128                              *Insolvency Act*                        **LAW OF
VIRGIN ISLANDS**

Revision Date: 1 Jan 2020

(2) The Court may, on application by a secured creditor who is required to surrender his or her security interest under subsection (1), if it is satisfied that the omission was inadvertent or the result of an honest mistake by order direct—

    *(a)* that he or she is not required to surrender his or her security interest; and

    *(b)* that he or she values his or her security interest and amends his or her claim accordingly.

## Interest after commencement of liquidation

**215.** (1) Interest is payable on any claim in the liquidation of a company in respect of the period after the commencement of the liquidation in accordance with this section.

(2) Any surplus remaining after the payment of all claims in the liquidation of a company shall, before being applied for any other purpose, be applied in paying interest on those claims in respect of the periods during which they have been unpaid since the commencement of the liquidation.

(3) Subject to section 151, all interest payable under this section ranks equally, whether or not the claims on which it is payable rank equally and if the assets of the company are insufficient to meet the claims in full, they shall be paid rateably.

(4) The rate of interest payable under this section is the greater of—

    *(a)* the court rate; and

    *(b)* the rate that would be applicable to the claim if a liquidator of the company had not been appointed.

*Distributions*

## Power to exclude creditors not claiming in time

**216.** (1) Where the liquidator of a company has sufficient funds to make a distribution, he or she shall, subject to the retention of such sums as may be necessary for his or her remuneration and the other costs and expenses of the liquidation, by written notice sent to the creditors of the company, fix a date on or before which creditors shall submit their claims to him or her. *(Amended by Act 11 of 2004)*

(2) Where the liquidator sends a notice to creditors under subsection (1), a creditor who does not submit a claim on or before the date specified in the notice is excluded from the benefit of any distribution on or after that date that is made before he or she submits his or her claim. *(Amended by Act 11 of 2004)*

(3) Where the liquidator makes more than one distribution, subsections (1) and (2) apply to each distribution. *(Inserted by Act 11 0f 2004)*

*Disclaimer*

## Liquidator may disclaim onerous property

**217.** (1) For the purposes of this section, "onerous property" means—

*(a)* an unprofitable contract; or

*(b)* assets of the company which are unsaleable or not readily saleable, or which may give rise to a liability to pay money or perform an onerous act.

(2) Subject to section 219, the liquidator of a company may, by filing a notice of disclaimer with the Court, disclaim any onerous property of the company even though he or she has taken possession of it, tried to sell or assign it or otherwise exercised rights of ownership in relation to it.

(3) A liquidator who disclaims onerous property shall, within 14 days of the date on which the disclaimer notice is filed, give notice to every person whose rights are, to the knowledge of the liquidator, affected by the disclaimer.

(4) A liquidator who contravenes subsection (3) commits an offence.

## When disclaimer takes effect

**218.** (1) Subject to subsection (2), a disclaimer takes effect on the date when the notice of disclaimer is filed at Court.

(2) The disclaimer of property of a leasehold nature does not take effect unless a copy of the disclaimer notice has been given, so far as the liquidator is aware of their addresses, to every person claiming under the company as underlessee or mortgagee and either—

*(a)* no application for a vesting order is made under section 221 with respect to that property before the end of a period of 14 days beginning with the day on which the last notice under this subsection was given; or

*(b)* where such an application is made, the Court directs that the disclaimer shall take effect.

(3) Where the Court gives a direction under subsection (2)*(b)*, it may also, instead of or in addition to any order it makes under section 221, make such orders with respect to fixtures, tenant's improvements and other matters arising out of the lease as it considers fit.

## Notice to liquidator to elect whether to disclaim

**219.** (1) A person interested in property or whose rights would be effected by the disclaimer of property may, by serving a notice to elect on the liquidator, require him or her to elect whether or not to disclaim the property.

(2) Where a notice to elect is served on a liquidator, he or she is not entitled to disclaim the property under section 217 unless he or she does so within 28 days of the date of service of the notice on him or her or within such extended period as the Court may allow.

## Effect of disclaimer

**220.** (1) A disclaimer of onerous property under section 217—

*(a)* operates so as to determine, with effect from the date of the disclaimer, the rights, interests and liabilities of the company in or in respect of the property disclaimed; but

*Insolvency Act*

(b) except so far as is necessary to release the company from liability, does not affect the rights or liabilities of any other person.

(2) A person suffering loss or damage as a result of a disclaimer of onerous property under section 217 may claim in the liquidation of the company as a creditor for the amount of the loss or damage.

## Vesting orders and orders for delivery

**221.** (1) Subject to section 222, if a liquidator disclaims onerous property under section 217, the Court may make an order under subsection (2) on the application of—

(a) a person who claims an interest in the disclaimed property; or

(b) a person who is under a liability in respect of the disclaimed property, that has not been discharged by the disclaimer.

(2) On an application under subsection (1), the Court may, on such terms as it considers fit, order that the disclaimed property be vested in or delivered to—

(a) a person entitled to the property;

(b) a person under a liability in respect of the property that has not been discharged by the disclaimer; or

(c) a trustee for a person referred to in paragraph *(a)* or *(b)*.

(3) The Court shall not make an order in respect of a person specified in subsection (2)*(b)*, or in respect of a trustee of such a person, unless it appears to the Court that it would be fair to do so for the purpose of compensating the person subject to the liability in respect of the disclaimer.

(4) The effect of any order under this section shall be taken into account in assessing the extent of the loss or damage suffered by a person for the purposes of section 220(2).

(5) Subject to subsection (6), where a vesting order is made under this section vesting property in a person, the property vests immediately without any conveyance, transfer or assignment.

(6) Where another Virgin Islands enactment—

(a) requires the transfer of property vested by an order under this section to be registered, and

(b) that enactment enables the order to be registered, on the making of a vesting order, the property vests in equity but does not vest at law until the registration requirements of the enactment have been complied with.

## Vesting orders in respect of leases

**222.** (1) Where the Court makes an order under section 221 vesting property of a leasehold nature in a person claiming under the company in liquidation as an underlessee or a mortgagee, the vesting order shall be made on terms that make that person subject—

*(a)* to the same liabilities and obligations as the company was subject to under the lease at the commencement of the liquidation; or

*(b)* to the same liabilities and obligations as that person would have been subject to if the lease had been assigned to him or her at the commencement of the liquidation.

(2) Where the property vested by an order under section 221 relates to only part of the property comprised in a lease, subsection (1) applies as if the lease comprised the property subject to the vesting order.

(3) Where no underlessee or mortgagee is willing to accept a vesting order made subject to subsection (1), the Court, by order—

*(a)* may vest the property in any person who is liable, whether personally or in a representative capacity and whether alone or jointly with the company, to perform the lessee's covenants in the lease; and

*(b)* where a vesting order is made under paragraph *(a)*, may vest the property free from all estates, encumbrances and interests created by the company.

(4) Where an underlessee or a mortgagee declines to accept a vesting order made subject to subsection (1), he or she is excluded from all interest in the property.

## Land subject to rentcharge

**223.** Where land subject to a rentcharge is disclaimed and that land vests by operation of law in any person, including the Crown, that person and his successors in title are not subject to any personal liability in respect of any sums becoming due under the rentcharge except sums becoming due after he or she, or some person claiming title under or through him or her, has taken possession or control of the land or has entered into occupation of it.

## Disclaimer presumed valid

**224.** Unless it is proved that a liquidator has breached his or her duty to give notice under section 217(3) or that he or she has otherwise breached his or her duties under this Act or the Rules with regard to disclaimer, a disclaimer of property by the liquidator is presumed to be valid and effective.

*Investigation of Assets and Affairs of Company*

## Statement of affairs

**225.** (1) In this section, "relevant person" has the meaning specified in section 275.

(2) The liquidator or provisional liquidator of a company may require one or more relevant persons to prepare a statement of affairs of the company in accordance with Part XI, Division 2.

(3) Subject to section 280, the liquidator or provisional liquidator shall file with the Court each statement of affairs and each affidavit of concurrence that he or she receives.

*Insolvency Act*

(4) Subsection (3) does not apply to a liquidator appointed by the members of a company. *(Inserted by Act 11 of 2004)*

## Preliminary report

**226.** (1) The liquidator of a company shall, within 60 days of the commencement of the liquidation, prepare a preliminary report covering, to the best of his or her knowledge and belief, the following matters—

*(a)* in the case of a company with share capital, the amount of capital issued, subscribed and paid up;

*(b)* the assets and liabilities of the company;

*(c)* if the company has failed, the causes of the failure; and

*(d)* whether, in his or her opinion, further enquiries are desirable with respect to—

(i) any matter relating to the promotion, formation or insolvency of the company or the conduct of the business or affairs of the company; and

(ii) possible claims under Part IX.

(2) The liquidator shall send a copy of the report prepared under subsection (1)—

*(a)* to each creditor of the company; and

*(b)* if in his or her report he or she states that further enquiries are desirable with respect to a matter referred to in subsection (1)*(d)*, to the Official Receiver.

(3) Subsection (2)*(b)* does not apply to the Official Receiver when he or she is acting as the liquidator of a company.

(4) The Court may, on the application of the liquidator, extend the period specified in subsection (1) on such terms and conditions as it considers fit.

## Duty of Official Receiver concerning report under section 226

**227.** Where the Official Receiver receives a report under section 226, he or she shall carry out such investigation, if any, as he or she considers appropriate.

*Miscellaneous Provisions*

## Liquidator to call meetings of creditors

**228.** (1) The liquidator shall call a meeting of the creditors of a company in liquidation if—

*(a)* a meeting is requisitioned by the creditors of the company in accordance with subsection (2); or

*(b)* he or she is directed to do so by the Court.

(2) A creditors' meeting may be requisitioned in accordance with the Rules by 10% in value of the creditors of the company.

### Recession of contracts by the Court

**229.** (1) On the application of a person who is, as against the liquidator of a company, entitled to the benefit or subject to the burden of a contract made with the company, the Court may make an order rescinding the contract on such terms as to payment by or to either party of damages for the non-performance of the contract, or otherwise as the Court considers just.

(2) Any damages payable to a person under an order made under subsection (1) may be claimed by him or her as a debt in the liquidation of the company.

### Inspection of books by creditors

**230.** (1) At any time after the appointment of a liquidator of a company, the Court may, on such terms as it considers appropriate, make an order for the inspection of specified books, records and documents of the company that are in its possession.

(2) Application for an order under subsection (1) may be made by a creditor or member of the company.

### Enforcement of liquidator's duties

**231.** (1) In this section, "specified person" means—

 *(a)* the Official Receiver;

 *(b)* a creditor of a company in liquidation; or

 *(c)* a member of a company in liquidation.

(2) If a liquidator fails to file any notice, return, account or other document, a specified person may serve a notice on the liquidator requiring him or her to remedy the default.

(3) If a liquidator fails to remedy the default specified in a notice served under subsection (1) within 14 days of service of the notice on him or her, any specified person may apply to the Court for an order that the liquidator remedy the default within such time as the Court may specify.

(4) The Court may order that the costs of and incidental to an application under this section are payable by the liquidator personally.

(5) A liquidator who fails to comply with an order made under subsection (3) commits an offence.

(6) This section does not prejudice any other provision of this Act or any other enactment.

*Termination of Liquidation*

### Termination of liquidation

**232.** The liquidation of a company terminates on the first occurring of—

 *(a)* the making by the Court of an order terminating the liquidation under section 233, or such later date as may be specified in the order;

*Insolvency Act*

(b) the filing by the liquidator of a certificate of compliance with the provisions of section 234(2), as modified by the Court under section 234(4), if appropriate; or

(c) the making by the Court of an order under section 234(4) exempting the liquidator from compliance with 234(2), or such later date as may be specified in the order.

## Order terminating liquidation

**233.** (1) The Court may, at any time after the appointment of the liquidator of a company, make an order terminating the liquidation if it is satisfied that it is just and equitable to do so.

(2) An application under this section may be made by the liquidator, a creditor, a director or a member of the company or the Official Receiver.

(3) Before making an order under subsection (1), the Court may require the liquidator to file a report with respect to any matters relevant to the application.

(4) An order under subsection (1) may be made subject to such terms and conditions as the Court considers appropriate and, on making the order or at any time thereafter, the Court may give such supplemental directions or make such other order as it considers fit in connection with the termination of the liquidation.

(5) Where the Court makes an order under subsection (1), the company ceases to be in liquidation and the liquidator ceases to hold office with effect from the date of the order or such later date as may be specified in the order.

(6) Where the Court makes an order under subsection (1), the person who applied for the order shall, within 10 days of the date of the order, file a sealed copy of the order with the Registrar.

(7) A person who contravenes subsection (6) commits an offence.

## Completion of liquidation

**234.** (1) In this section "Register" means, as appropriate—

(a) the register of international business companies maintained by the Registrar under the International Business Companies Act;

(b) the register of companies maintained by the Registrar under the Companies Act; or

(c) the Register of Companies maintained by the Registrar under the BVI Business Companies Act. *(Inserted by Act 16 of 2004)*

(2) As soon as practicable after completing his or her duties in relation to the liquidation of a company, the liquidator shall—

(a) prepare and send to every creditor of the company whose claim has been admitted and to every member of the company—

(i) his or her final report, complying with subsection (3), and a statement of realisations and distributions in respect of the liquidation; and *(Amended by Act 11 of 2004)*

   (ii) a summary of the grounds upon which a creditor or member may object to the striking of the company from the Register; and

  *(b)* file with the Registrar a copy of the final report and the statement of realisations and distributions sent to the creditors and members of the company. *(Amended by Act 11 of 2004)*

 (3) The final report of a liquidator shall contain a statement—

  *(a)* that all known assets of the company have been disclaimed, realised or distributed without realisation;

  *(b)* that all proceeds of realisation have been distributed; and

  *(c)* that there is no reason why, in his or her opinion, the company should not be struck from the Register, and dissolved.

 (4) On the application of the liquidator, the Court may on such terms and conditions as it considers just—

  *(a)* exempt the liquidator from compliance with subsection (2)*(a)*; or

  *(b)* modify the application of the provisions of subsection (2) to the liquidator.

## Release of liquidator

 **235.** (1) A person who ceases to be the liquidator, or provisional liquidator, of a company may apply to the Court for his or her release and the Court may grant the release unconditionally or upon such conditions as it considers fit, or it may withhold it.

 (2) If the Court withholds the release, it may make a compensation order against the former liquidator under section 254.

 (3) Subject to subsection (5), where a former liquidator is released under this section, he or she is discharged from all liability in respect of any act or default of his or her in relation to the administration of the company.

 (4) An order for the release of a former liquidator may be revoked by the Court if the release was obtained by fraud or the suppression or concealment of any material fact.

 (5) Subsection (3) does not prevent the Court from making an order under section 254 against a liquidator who has been released under this section.

 (6) Where the Official Receiver ceases to be liquidator and another liquidator is appointed in his or her place, the Official Receiver obtains his or her release—

  *(a)* from the appointment of the new liquidator; or

  *(b)* such later date as the Court may determine.

 (7) A liquidator who obtains his or her release under this section shall file a notice in the prescribed form with the Registrar.

## Dissolution

**236.** The Rules shall provide for the dissolution of a company on the termination and completion of the liquidation of the company.


PART VII

LIQUIDATION OF INSURANCE COMPANIES

## Interpretation for and scope of this Part

**237.** (1) In this Part—

"property and casualty business" and "life and health business" have the meanings specified in section 2(1) of the Insurance Act;

"property and casualty insurance company" means an insurance company that is or was authorised by its licence to carry on property and casualty business only; *(Amended by Act 11 of 2004)*

"life and health insurance company" means an insurance company that is or was authorised by its licence to carry on life and health business, whether or not it is or was also authorised to carry on property and casualty business. *(Amended by Act 11 of 2004)*

*(Amended by Act 16 of 2015)*

(2) Subject to subsection (3), this Part applies, with such modifications as are necessary, to a company or a foreign company that has at no time held a licence as an insurer issued under the Insurance Act or the repealed Insurance Act, 1994 but which, immediately before the appointment of a liquidator, was required to hold a licence as an insurer issued under the Insurance Act or the repealed Insurance Act, 1994. *(Amended by Act 1 of 2008)*

(3) Section 239 does not apply to a company specified in subsection (2).*(Inserted by Act 11 of 2004)*

## Liquidation of insurance companies

**238.** (1) The provisions of this Act relating to the liquidation of companies and foreign companies are modified in respect of insurance companies to the extent specified in this Part. *(Amended by Act 11 of 2004)*

(2) The liquidator of an insurance company has a duty to obtain and consider such actuarial advice as is appropriate to enable him or her to properly conduct the liquidation of the company. *(Inserted by Act 11 of 2004)*

(3) The Cabinet may, on the advice of the Commission, make Regulations with respect to the liquidation of insurance companies. *(Inserted by Act 11 of 2004)*

(4) Subject to subsection (5), the Regulations made under subsection (3) may—

> *(a)* modify or exclude the provisions of this Act and the Rules relating to the liquidation of companies in respect of insurance companies; and

*(b)* make different provision for different persons, circumstances or cases.

*(Inserted by Act 11 of 2004)*

(5) Regulations made under subsection (3) shall not modify or exclude the provisions of this Part. *(Inserted by Act 11 of 2004)*

## Appointment of liquidator by members

**239.** (1) The members of a life and health insurance company may not appoint a liquidator under Part VI.

*(Amended by Act 16 of 2015)*

(2) The members of a property and casualty insurance company, that is not a foreign company, may only appoint a liquidator under Part VI if the Commission has given its prior written consent to the appointment.

*(Amended by Act 16 of 2015)*

(3) Any resolution of the members—

*(a)* of a life and health insurance company to appoint a liquidator under Part VI in contravention of subsection (1); or

*(b)* of a property and casualty insurance company to appoint a liquidator under Part VI in contravention of subsection (2), is void and of no effect.

*(Amended by Act 16 of 2015)*

(4) Where the members of a property and casualty insurance company appoint a liquidator in accordance with this section, without limiting section 178(1)*(a)*, the Commission may by notice in writing direct the liquidator to advertise his appointment in such manner as is specified in the notice. *(Amended by Act 11 of 2004)*

*(Amended by Act 16 of 2015)*

(5) A liquidator who fails to advertise his or her appointment in accordance with a direction of the Commission issued under subsection (4) commits an offence.

## Application for appointment of liquidator by Court

**240.** (1) For the purposes of sections 162(1)*(c)* and 163(1)*(c)*, the public interest includes the interests of the policyholders of an insurance company.

(2) For the purposes of this Act, an insurance company is deemed to be insolvent if it is not in compliance with section 12(2) of the Insurance Act. *(Substituted by Act 1 of 2008)*

(3) On an application for the appointment of a liquidator under this section or under sections 162 or 163, evidence that an insurance company has at any time prior to the date of the application been insolvent is, unless the contrary is proved, evidence that the company continues to be insolvent. *(Amended by Act 11 of 2004)*

(4) This section is in addition to, and not in substitution for, sections 162 and 163. *(Amended by Act 11 of 2004)*

## Reduction of contracts as alternative to winding up

**241.** Where on an application for the appointment of a liquidator, the Court is satisfied that an insurance company is insolvent, it may reduce the amount of the insurance company's contracts on such conditions as it considers just, instead of appointing a liquidator.

## Continuation of life and health business by liquidator appointed by Court

*(Amended by Act 16 of 2015)*

**242.** (1) The liquidator of a life and health insurance company shall, unless the Court otherwise orders, carry on the life and health business of the company with a view to it being transferred as a going concern to another insurance company, whether in existence or to be incorporated for the purpose. *(Amended by Act 11 of 2004)*

*(Amended by Act 16 of 2015)*

(2) In carrying on the insurance company's life and health business under subsection (1), the liquidator may agree to the variation of any contracts of insurance at the commencement of the liquidation, but he or she shall not effect any new contracts of insurance.

*(Amended by Act 16 of 2015)*

(3) On the application of the liquidator of a life and health insurance company, the Court may by order reduce the amounts of the contracts made by the company in the course of carrying on its life and health business.

*(Amended by Act 16 of 2015)*

(4) An order under subsection (3) may be made subject to such conditions as the Court considers appropriate.

(5) Without limiting section 186 or Schedule 2, the liquidator of a life and health insurance company may appoint an actuary to investigate and report to him or her on the life and health business of the company and, if appropriate, to conduct actuarial valuations of the business.

*(Amended by Act 16 of 2015)*

## Protection of segregated funds and assets

**243.** (1) In the liquidation of a life and health insurance company, the assets of the segregated funds of the company shall first be applied to meet the company's life and health insurance liabilities attributable to such funds.

*(Amended by Act 16 of 2015)*

(2) If the value of the assets referred to in subsection (1) exceeds the amount of the life and health insurance liabilities of the company attributable to the segregated funds, the excess is an asset of the company available for distribution in accordance with this Act.

*(Amended by Act 16 of 2015)*

(3) Where the Court makes an order under section 254(3) in respect of a life and health insurance company requiring a person to repay, restore or account for money or other assets, to pay compensation to the company or to pay interest to the company, the Court shall, insofar as the delinquency relates to assets

belonging to the company's segregated funds, order that the money, assets or contribution is to be treated for the purposes of subsection (1) as assets of those funds.

*(Amended by Act 16 of 2015)*

# PART VIII

## VOIDABLE TRANSACTIONS

### Interpretation for this Part

**244.** (1) In this Part—

"insolvent liquidation" means a liquidation of a company where the assets of the company are insufficient to pay its liabilities and the expenses of the liquidation;

"insolvency transaction" has the meaning specified in subsection (2);

"officer holder" means—

    *(a)* in the case of a company in administration, its administrator; and

    *(b)* in the case of a company in liquidation, its  liquidator;
          *(Inserted by Act 11 of 2004)*

"onset of insolvency" means—

    *(a)* the date on which the application for the administration order was filed, where a company is in administration or is in liquidation and the liquidator was appointed by the Court immediately following the discharge of an administration order; *(Amended by Act 11 of 2004)*

    *(b)* the date on which the application for the appointment of the liquidator was filed, where a company is in liquidation and the liquidator was appointed by the Court in circumstances other than those set out in paragraph *(a)*; or

    *(c)* the date of the appointment of the liquidator, where a company is in liquidation and the liquidator was appointed by the members;

"voidable transaction" means—

    *(a)* an unfair preference;

    *(b)* an undervalue transaction;

    *(c)* a floating charge that is voidable under section 247; and

    *(d)* an extortionate credit transaction.

"vulnerability period" means—

    *(a)* for the purposes of sections 245, 246 and 247—

        (i) in the case of a transaction entered into with, or a preference given to, a connected person, the period commencing 2 years prior to the onset of insolvency and ending on the

appointment of the administrator or, if the company is in liquidation, the liquidator; and

(ii) in the case of a transaction entered into with, or a preference given to, any other person, the period commencing six months prior to the onset of insolvency and ending on the appointment of the administrator or, if the company is in liquidation, the liquidator; and

(b) for the purposes of section 248, the period commencing 5 years prior to the onset of insolvency and ending on the appointment of the administrator or, if the company is in liquidation, the liquidator;

(2) A transaction is an insolvency transaction if—

(a) it is entered into at a time when the company is insolvent; or

(b) it causes the company to become insolvent.

(3) For the purposes of subsection (2), "insolvent" has the meaning specified in section 8(1) with the deletion of paragraph (c)(i).

(4) This Part applies in respect of—

(a) a company that is in administration; and

(b) a company and a foreign company that is in liquidation and, where appropriate, "company" includes a foreign company.

## Unfair preferences

**245.** (1) Subject to subsection (2), a transaction entered into by a company is an unfair preference given by the company to a creditor if the transaction—

(a) is an insolvency transaction;

(b) is entered into within the vulnerability period; and

(c) has the effect of putting the creditor into a position which, in the event of the company going into insolvent liquidation, will be better than the position he or she would have been in if the transaction had not been entered into.

(2) A transaction is not an unfair preference if the transaction took place in the ordinary course of business.

(3) A transaction may be an unfair preference notwithstanding that it is entered into pursuant to the order of a court or tribunal in or outside the Virgin Islands.

(4) Where a transaction entered into by a company within the vulnerability period has the effect specified in subsection (1)(c) in respect of a creditor who is a connected person, unless the contrary is proved, it is presumed that the transaction was an insolvency transaction and that it did not take place in the ordinary course of business.

## Undervalue transactions

**246.** (1) Subject to subsection (2), a company enters into an undervalue transaction with a person if—

LAW OF
VIRGIN ISLANDS                    *Insolvency Act*                              141

Revision Date: 1 Jan 2020

(a) the company makes a gift to that person or otherwise enters into a transaction with that person on terms that provide for the company to receive no consideration; or

(b) the company enters into a transaction with that person for a consideration the value of which, in money or money's worth, is significantly less than  the value, in money or money's worth, of the consideration provided by the company; and

(c) in either case, the transaction concerned—

 (i)  is an insolvency transaction; and

 (ii)  is entered into within the vulnerability period.

(2) A company does not enter into an undervalue transaction with a person if—

(a) the company enters into the transaction in good faith and for the purposes of its business; and

(b) at the time when it enters into the transaction, there were reasonable grounds for believing that the transaction would benefit the company.

(3) A transaction may be an undervalue transaction notwithstanding that it is entered into pursuant to the order of a court or tribunal in or outside the Virgin Islands.

(4) Where a company enters into a transaction with a connected person within the vulnerability period and the transaction falls within subsection (1)*(a)* or subsection (1)*(b)*, unless the contrary is proved, it is presumed that—

(a) the transaction was an insolvency transaction; and

(b) subsection (2) did not apply to the transaction.

**Voidable floating charges**

 **247.** (1) Subject to subsection (2), a floating charge created by a company is voidable if—

(a) it is created within the vulnerability period; and

(b) it is an insolvency transaction.

(2) A floating charge is not voidable to the extent that it secures—

(a) money advanced or paid to the company, or at its direction, at the same time as, or after, the creation of the charge;

(b) the amount of any liability of the company discharged or reduced at the same time as, or after, the creation of the charge;

(c) the value of assets sold or supplied, or services supplied, to the company at the same time as, or after, the creation of the charge; and

(d) the interest, if any, payable on the amount referred to in paragraphs *(a)* to *(c)* pursuant to any agreement under which the money was advanced or paid, the liability was discharged or

reduced, the assets were sold or supplied or the services were supplied.

(3) For the purposes of this section, where a company creates a floating charge in favour of a connected person within the vulnerability period, unless the contrary is proved, it is presumed that the charge was an insolvency transaction.

(4) For the purposes of subsection (2)*(c)*, the value of assets or services sold or supplied is the amount in money which, at the time they were sold or supplied, could reasonably have been expected to be obtained for the sale or supply of the goods or services in the ordinary course of business and on the same terms, apart from the consideration, as those on which the assets or services were sold or supplied to the company.

## Extortionate credit transactions

**248.** A transaction entered into by a company within the vulnerability period for, or involving the provision of, credit to the company is an extortionate credit transaction if, having regard to the risk accepted by the person providing the credit—

    *(a)* the terms of the transaction are or were such as to require grossly exorbitant payments to be made (whether unconditionally or in certain contingencies) in respect of the provision of credit; or

    *(b)* the transaction otherwise grossly contravenes ordinary principles of fair trading.
                  *(Amended by Act 11 of 2004)*

## Orders in respect of voidable transactions

**249.** (1) Subject to section 250, where it is satisfied that a transaction entered into by a company is a voidable transaction the Court, on the application of the office holder—

    *(a)* may make an order setting aside the transaction in whole or in part;

    *(b)* in respect of an unfair preference or an undervalue transaction, may make such order as it considers fit for restoring the position to what it would have been if the company had not entered into that transaction; and

    *(c)* in respect of an extortionate credit transaction, may by order provide for any one or more of the following—

       (i) the variation of the terms of the transaction or the terms on which any security interest for the purposes of the transaction is held;

       (ii) the payment by any person who is or was a party to the transaction to the office holder of any sums paid by the company to that person by virtue of the transaction;

       (iii) the surrender by any person to the office holder of any asset held by him or her as security for the purposes of the transaction; and

26-10769-mg    Doc 77-2    Filed 06/05/26    Entered 06/05/26 16:53:44    Exhibit 2 -
Transcript of the Remote Deposition of Riz Mokal    Pg 658 of 991

LAW OF
VIRGIN ISLANDS                                    *Insolvency Act*                                    143
Revision Date: 1 Jan 2020

(iv)  the taking of accounts between any persons.
*(Amended by Act 11 of 2004)*

(2) Without prejudice to the generality of subsection (1)*(b)*, an order under that paragraph may—

(a)  require any assets transferred as part of the transaction to be vested in the company;

(b)  require any assets to be vested in the company if it represents in any person's hands the application either of the proceeds of sale of assets transferred or of money transferred, in either case as part of the transaction;

(c)  release or discharge, in whole or in part, any security interest given by the company or the liability of the company under any contract;

(d)  require any person to pay, in respect of benefits received by him or her from the company, such sums to the office holder as the Court may direct; *(Amended by Act 11 of 2004)*

(e)  provide for any surety or guarantor whose obligations to any person were released or discharged, in whole or in part, under the transaction, to be under such new or revived obligations to that person as the Court considers appropriate;

(f)  provide for security to be provided for the discharge of any obligation imposed by or arising under the order, for such an obligation to be charged on any assets and for the security interest or charge to have the same priority as a security interest or charge released or discharged, in whole or in part, under the transaction;

(g)  provide for a person effected by an order made under subsection (1) to submit a claim in the liquidation of the company in such amount as the Court considers fit; and *(Amended by Act 11 of 2004)*

(h)  require the company to make a payment or transfer assets to any person affected by an order made under subsection (1).

(3) Subject to section 250, in respect of an unfair preference or an undervalue transaction, an order under subsection (1) may affect the assets of, or impose any obligation on, any person whether or not he or she is the person with whom the company in question entered into the transaction.

## Limitations on orders under section 249

**250.** (1) This section applies to an order made under section 249(1) in respect of an unfair preference or an undervalue transaction.

(2) An order to which subsection (1) applies shall not—

(a)  prejudice any interest in assets that was acquired in good faith and for value from a person other than the company, or prejudice any interest deriving from such an interest; or

(b)  require a person who received a benefit from the transaction in good faith and for value to pay a sum to the office holder, except

144                                *Insolvency Act*                    **LAW OF
                                                                      VIRGIN ISLANDS**
                                                                      Revision Date: 1 Jan 2020

where that person was a party to the transaction or, in respect of an unfair preference, the preference was given to that person when he or she was a creditor of the company. *(Amended by Act 11 of 2004)*

(3) For the purposes of subsection (2), where a person would, apart from the requirement for good faith, fall within the circumstances specified in paragraph *(a)* or *(b)*, it is presumed, unless the contrary is proved, that he or she acquired the interest or received the benefit in good faith.

(4) Subsection (3) does not apply to a person—

    *(a)* who, at the time of the transaction, had notice of—

        (i) the fact that the transaction was an unfair preference or an undervalue transaction, as the case may be; or

        (ii) the relevant proceedings as defined in subsection (5); or

    *(b)* who was, at the time of the transaction, a connected person.

(5) For the purposes of subsection (4), a person has notice of the relevant proceedings if—

    *(a)* in the case of a company in administration, he or she had notice of the filing of the application on which the administration order was made;

    *(b)* in the case of a company where a liquidator was appointed immediately following the discharge of an administration order, he or she had notice of the filing of the application on which the administration order was made or the filing of the application on which the order appointing a liquidator was made; or

    *(c)* in the case of a company where a liquidator was appointed in circumstances other than those set out in paragraph *(b)*, he or she had notice of the filing of the application on which the order appointing a liquidator was made.

## Recoveries

**251.** Any money paid to, assets recovered or other benefit received by the liquidator as a result of an order made under section 249 are deemed to be assets of the company available to pay unsecured creditors of the company.

## Remedies not exclusive

**252.** The provisions of this Part apply without prejudice to the availability of any other remedy, even in relation to a transaction that the company had no power to enter into.

PART IX

MALPRACTICE

## Interpretation for this Part

**253.**  In this Part—

(a) a company or a foreign company goes into insolvent liquidation if a liquidator is appointed at a time when its assets are insufficient to pay its liabilities and the expenses of the liquidation; and

(b) a relevant company is a company or a foreign company that has gone into insolvent liquidation.

## Summary remedy against delinquent officers and others

**254.**  (1) On the application of the liquidator of a relevant company, the Court may make an order under subsection (3) where it is satisfied that a person specified in subsection (2)—

(a) has misapplied or retained, or become accountable for any money or other assets of the company; or

(b) has been guilty of any misfeasance or breach of any fiduciary or other duty in relation to the company.

(2) An order under subsection (3) may be made against a person—

(a) who is or has been an officer of the company;

(b) who has acted as liquidator of the company;

(c) who, in the case of a relevant company that is not a foreign company, has acted as administrator, administrative receiver, supervisor or interim supervisor of the company; or

(d) who, not being a person falling within paragraphs *(a)* or *(b)*, is or has been concerned in the promotion, formation, management, liquidation or dissolution of the company.

(3) Where subsection (1) applies, the Court may make one or more of the following orders against the person—

(a) that he or she repays, restores or accounts for the money or other assets, or any part of it;

(b) that he or she pays to the company as compensation for the misfeasance or breach of duty such sum as the Court considers just; and

(c) that he or she pays interest to the company at such rate as the Court considers just.

(4) The Court shall not make an order under subsection (3) unless it has given the person the opportunity—

(a) to give evidence, call witnesses and bring other evidence in relation to the application; and

*(b)* to be represented, at his own expense, by a legal practitioner who may put to him or her, or to other witnesses, such questions as the Court may allow for the purpose of explaining or qualifying any answers or evidence given.

(5) Application may not be made for an order under this section against a liquidator or an administrator who has been released, except with the leave of the Court.

(6) Nothing in this section prevents any person from instituting any other proceedings in relation to matters in respect of which an application may be made under this section.

## Fraudulent trading

**255.** (1) On the application of the liquidator of a relevant company, the Court may make an order under subsection (2) where it is satisfied that, at any time before the commencement of the liquidation of the company, any of its business has been carried on—

*(a)* with intent to defraud creditors of the company or creditors of any other person; or

*(b)* for any fraudulent purpose.

(2) Where subsection (1) applies, the Court may declare that any person who was knowingly a party to the carrying on of the business in such manner is liable to make such contribution, if any, to the company's assets as the Court considers proper. *(Amended by Act 11 of 2004)*

## Insolvent trading

**256.** (1) On the application of the liquidator of a relevant company, the Court may make an order under subsection (2) against a person who is or has been a director of the company if it is satisfied that—

*(a)* at any time before the commencement of the liquidation of the company, that person knew or ought to have concluded that there was no reasonable prospect that the company would avoid going into insolvent liquidation; and

*(b)* he or she was a director of the company at that time.

(2) Subject to subsection (3), where subsection (1) applies, the Court may order that the person concerned makes such contribution, if any, to the company's assets as the Court considers proper.

(3) The Court shall not make an order against a person under subsection (2) if it is satisfied that after he or she first knew, or ought to have concluded, that there was no reasonable prospect that the company would avoid going into insolvent liquidation, he or she took every step reasonably open to him or her to minimise the loss to the company's creditors.

(4) For the purposes of subsections (1) and (3), the facts which a director of a company ought to know or ascertain, the conclusions which he or she ought to reach and the steps reasonably open to him or her which he or she ought to take are those which would be known or ascertained, or reached or taken, by a reasonably diligent person having both—

    *(a)* the general knowledge, skill and experience that may reasonably be expected of a person carrying out the same functions as are carried out by that director in relation to the company; and

    *(b)* the general knowledge, skill and experience that that director has.

(5) The reference in subsection (4) to the functions carried out in relation to a company by a director of the company includes any function which he or she does not carry out but which has been entrusted to him or her. *(Amended by Act 11 of 2004)*

(6) Nothing in this section affects section 255.

## Recoveries under sections 255 and 256

**257.** Any money paid to, assets recovered or other benefit received by the liquidator as a result of an order made under section 255 or section 256 are deemed to be assets of the company available to pay unsecured creditors of the company.

## Ancillary orders

**258.** (1) Where the Court makes an order under section 255 or section 256, it may give such directions or make such further order as it considers proper for giving effect to the order. *(Amended by Act 11 of 2004)*

(2) Without limiting subsection (1), the Court may—

    *(a)* provide for the liability of any person under the order to be a charge on any debt or obligation due from the company to him or her, or on any mortgage or charge or any interest in a mortgage or charge on assets of the company held by or vested in him or her, or any person on his or her behalf, or any person claiming as assignee from or through the person liable or any person acting on his or her behalf; and

    *(b)* from time to time make such further order as may be necessary for enforcing any charge imposed under this subsection.

(3) For the purposes of subsection (2), "assignee"—

    *(a)* includes a person to whom or in whose favour, by the directions of the person made liable, the debt, obligation, mortgage or charge was created, issued or transferred or the interest created; but

    *(b)* does not include an assignee for valuable consideration, not including consideration by way of marriage, given in good faith and without notice of any of the matters on the ground of which the declaration is made.

(4) Where the Court makes a declaration under either section 255 or 256 in relation to a person who is a creditor of the company, it may direct that the whole or any part of any debt owed by the company to that person and any interest on the debt shall rank in priority after all other debts owed by the company and after any interest on those debts.

148 *Insolvency Act*

(5) Sections 255 and 256 have effect notwithstanding that the person concerned may be criminally liable in respect of matters on the ground of which the declaration under the section is to be made.

PART X

DISQUALIFICATION ORDERS AND UNDERTAKINGS

## Interpretation for this Part

**259.** (1) In this Part "voluntary liquidator" means—

*(a)* a liquidator appointed by the directors or members of an international business company; or

*(b)* a voluntary liquidator within the meaning specified in section 2 of the BVI Business Companies Act.
*(Substituted by Act 16 of 2004)*

(2) For the purposes of this Part, a company becomes insolvent if—

*(a)* an administration order is made in respect of the company;

*(b)* an administrative receiver of the company is appointed;

*(c)* a liquidator of the company is appointed at a time when its assets are insufficient to pay its liabilities and the expenses of the liquidation; or

*(d)* a liquidator is appointed by the Court on the ground specified in section 162(1)*(c)*.

## Disqualification orders and undertakings

**260.** (1) A disqualification order is an order that a person shall not, for the period specified in the order, engage in a prohibited activity without the leave of the Court.

(2) A disqualification undertaking is an undertaking in writing given by a person to the Official Receiver that he or she will not, for the period specified in the undertaking, engage in a prohibited activity without the leave of the Court.

(3) For the purpose of this Part, a person engages in a prohibited activity if—

*(a)* he or she is a director of a company;

*(b)* he or she acts as the voluntary liquidator of a company;

*(c)* he or she acts as the receiver of the assets of a company;

*(d)* he or she acts as an insolvency practitioner; or

*(e)* in any way, whether directly or indirectly, he or she is concerned with or takes part in the promotion, formation or management of a company; or

*(f)* he or she undertakes any activity prescribed as a prohibited activity. *(Amended by Act 11 of 2004)*

(4) A person is a "disqualified person" for the period in which—

*(a)* a disqualification order has effect against him or her; or

*(b)* a disqualification undertaking is in place in respect of him or her.

(5) The period specified in a disqualification order, or disqualification undertaking, made against or in respect of a person, runs concurrently with the period specified in any other disqualification order or disqualification undertaking made against or in respect of that person.

## Application for disqualification order

**261.** (1) Subject to subsection (2), the Official Receiver may apply to the Court for a disqualification order against a person under section 262.

(2) An application for a disqualification order may not be made more than 6 years after the date on which the company concerned became insolvent.

## Hearing of application for disqualification order

**262.** (1) On an application under section 261, the Court may, make a disqualification order against a person—

*(a)* who has been convicted on indictment—

(i) of an offence in connection with the promotion, formation, management or dissolution of a company that is or becomes insolvent; or

(ii) of an offence under this Act that relates to a company that at any time becomes insolvent, whether the person was convicted before or after the company became insolvent;

*(b)* who has had an order under section 255 or section 256 made against him or her; or *(Amended by Act 11 of 2004)*

*(c)* who is or has been a director, voluntary liquidator or receiver of a company that is or becomes insolvent, whether while he or she was a director, voluntary liquidator or receiver or subsequently; and—

(i) has been guilty of fraud in relation to the company or of any misfeasance or breach of duty as a director, voluntary liquidator or receiver of the company;

(ii) where the Court is of the opinion that the person's conduct as director, voluntary liquidator or receiver, either taken alone or taken together with his or her conduct as a director, voluntary liquidator or receiver of any other company or companies, makes him or her unfit to be concerned in the promotion, formation or management of companies or in their liquidation or dissolution.

*(d) (Repealed by Act 11 of 2004)*

(2) For the purposes of subsection (1)*(c)*, "receiver" means a receiver other than an administrative receiver.

(3) The reference in subsection (1)*(c)*(ii) to a person's conduct as a director, voluntary liquidator or receiver of a company includes that person's conduct in relation to any matter connected with or arising out of the insolvency of that company.

(4) The Court shall, on making a disqualification order, specify the period for which the order has effect.

(5) The period referred to in subsection (4) shall commence on a date no earlier than the date of the order and no later than 28 days after the date of the order and shall not exceed 10 years.

(6) A person against whom an application for a disqualification order is made may appear and give evidence or call witnesses on the hearing of the application.

**Matters for determining unfitness of directors**

**263.** Without limiting section 262(1)*(c)*(ii), in determining whether a person's conduct as a director, voluntary liquidator or receiver of a company makes him or her unfit to be concerned in the promotion, formation or management of companies or in their liquidation or dissolution, the Court shall, as respects his or her conduct as a director, voluntary liquidator or receiver of that company, have regard in particular to—

*(a)* any misfeasance or breach of any fiduciary or other duty by him or her in relation to the company;

*(b)* any misapplication or retention by him or her of, or any conduct by the director giving rise to an obligation to account for, any money or other assets of the company;

*(c)* the extent of his responsibility for the company entering into any transaction liable to be set aside under Part VIII;

*(d)* in the case of a director—

(i) where the company or the board has persistently failed to comply with the BVI Business Companies Act, as the case may be, the extent of his or her responsibility for such failure; *(Amended by Act 16 of 2004)*

(ii) the extent of his or her responsibility for the causes of the company becoming insolvent; and

(iii) the extent of his or her responsibility for any failure by the company to supply any goods or services which have been paid for (in whole or in part);

*(e)* his or her failure to comply with any obligation imposed on him or her under this Act; and

*(f)* in the case of a voluntary liquidator, any failure to comply with section 209 or 210 of the BVI Business Companies Act. *(Amended by Act 16 of 2004)*

### Disqualification undertaking

**264.** (1) A person against whom a disqualification order could be made under section 262 may offer the Official Receiver a disqualification undertaking, whether or not the Official Receiver has made an application against him or her under that section.

(2) The Official Receiver may accept an offer made to him or her under subsection (1) if he or she considers that—

(a) there is a reasonable prospect that, on the hearing of an application under section 262, the Court would make a disqualification order against the person offering the undertaking; and

(b) it is expedient and in the public interest to accept the offer.

(3) A disqualification undertaking shall specify a period, commencing on the date of the undertaking, for which the undertaking has effect.

(4) The period referred to in subsection (3) shall not exceed 10 years.

### General provisions concerning disqualification orders and undertakings

**265.** (1) A disqualification order may be made, or a disqualification undertaking accepted, on grounds which are or include matters other than criminal convictions, notwithstanding that the person concerned may be criminally liable in respect of those matters.

(2) Where the Court makes a disqualification order, or the Official Receiver accepts a disqualification undertaking, the Official Receiver shall, within 14 days of the date of the order or of his or her acceptance of the undertaking, file a notice in the prescribed form with the Registrar.

### Variation of disqualification order or undertaking

**266.** (1) The Court may, on the application of a disqualified person, vary a disqualification order or a disqualification undertaking.

(2) Without limiting subsection (1), an order under that subsection may—

(a) reduce the period for which the disqualification order, or undertaking, is in force; or

(b) in the case of a disqualification undertaking, provide for it to cease to be in force.

(3) An application for an order under subsection (1) shall be served on the Official Receiver no less than 14 days prior to the date of the hearing and the Official Receiver shall appear or be represented and is entitled to call or give evidence at the hearing.

(4) Where the Court varies a disqualification order or undertaking, the Official Receiver shall, within 14 days of the date of the order, file a notice in the prescribed form with the Registrar.

152          *Insolvency Act*          **LAW OF VIRGIN ISLANDS**

Revision Date: 1 Jan 2020

## Offence provisions

**267.** A disqualified person who engages in a prohibited activity commits an offence.

## Liability for engaging in prohibited activity

**268.** (1) A disqualified person incurs personal liability for the debts of a company in accordance with subsection (2) if, without the leave of the Court—

    *(a)* he or she is involved in the management of a company; or

    *(b)* as a person involved in the management of a company, he or she acts on the instructions of a person he or she knows to be a disqualified person or an undischarged bankrupt.

(2) Subject to subsection (3), the liability of a person to whom subsection (1) applies is—

    *(a)* to a liquidator of the company for every outstanding liability; and

    *(b)* to a creditor of the company for a liability to that creditor, incurred by the company at a time when subsection (1) applies to him or her.

(3) A creditor may not take action against a person under subsection (2)*(b)* if the company is in liquidation.

(4) For the purposes of subsection (1), a person is involved in the management of a company if—

    *(a)* he or she is a director of the company; or

    *(b)* he or she is concerned, whether directly or indirectly, or takes part, in the management of the company.

(5) For the purposes of this section, a person who, as a person involved in the management of a company, has at any time acted on instructions given without the leave of the court by a person whom he or she knew at that time to be a disqualified person or to be an undischarged bankrupt is presumed, unless the contrary is shown, to have been willing at any time thereafter to act on any instructions given by that person.

## Official Receiver to appear on certain applications

**269.** The Official Receiver shall appear and call the attention of the Court to any matters which seem to him or her to be relevant, and may himself or herself give evidence or call witnesses on the hearing of—

    *(a)* an application by the Official Receiver for a disqualification order;

    *(b)* an application made by any person for leave under this Part.

## Register of disqualification orders

**270.** (1) The Registrar shall register in a Register of Disqualification Orders and Undertakings to be maintained by him or her for the purpose of—

(a) each disqualification order or undertaking in respect of which notice is filed under section 265; and

(b) each variation of a disqualification order or undertaking in respect of which notice is filed under section 266.

(2) When a disqualification order or undertaking ceases to be in force, the Registrar shall delete the entry from the Register.

(3) The Register of Disqualification Orders and Undertakings shall be open to inspection on payment of such fee as may be prescribed.

(4) No person shall be construed as having knowledge that another person is a disqualified person by virtue of an entry in the Register of Disqualification Orders.

## Duties of office holders

**271.** (1) If it appears to the liquidator, administrator or administrative receiver of a company that the conduct of a director or former director of the company, either taken alone or taken together with his or her conduct as a director of any other company or companies, makes him or her unfit to be concerned in the management of companies, he or she shall, as soon as practicable, prepare a written report in the prescribed form and send it to the Official Receiver. *(Amended by Act 11 of 2004)*

(2) The Official Receiver may by notice in writing require a liquidator, administrator or administrative receiver who has sent him or her a report under subsection (1) to—

(a) provide him or her with such information or explanations, or

(b) to produce such books, records or other documents; as he or she may reasonably require for considering or preparing an application for an order under section 262.

(3) If a liquidator, administrator or administrative receiver fails to comply with a notice issued under subsection (2), the Court may, on the application of the Official Receiver, make an order directing compliance within the period specified in the order.

(4) The Court may order that the costs of and incidental to an application under subsection (3) shall be borne by the person against whom the order is made.

(4A) A liquidator, administrator or administrative receiver who prepares a report under subsection (1) shall not disclose the report to the creditors' committee, if any, or to any person other than the Official Receiver. *(Inserted by Act 11 of 2004)*

(4B) Subsection (4A) does not prevent a liquidator, administrator or administrative receiver disclosing the report to any person properly employed or appointed by him or her, or acting for him or her, in the liquidation, administration or administrative receivership. *(Inserted by Act 11 of 2004)*

(4C) A report provided to the Official Receiver under subsection (1) shall, in the absence of fraud or malice, be absolutely privileged for the purposes of the law of defamation. *(Inserted by Act 11 of 2004)*

154 *Insolvency Act* **LAW OF VIRGIN ISLANDS**
Revision Date: 1 Jan 2020

(4D) Subsection (4C) shall not apply to the extent that the liquidator, administrator or administrative receiver, or a person to whom the report is disclosed under subsection (4B), discloses the report to another person in breach of subsection (4A). *(Inserted by Act 11 of 2004)*

(5) A person who fails to comply with an order made under subsection (3) commits an offence.

PART XI

GENERAL PROVISIONS WITH REGARD TO COMPANIES
THAT ARE INSOLVENT OR IN LIQUIDATION

## Division 1

### *General*

## Interpretation

**272.** (1) Subject to subsection (2), in this Part "office holder", in respect of a company, means its administrator, its liquidator, its provisional liquidator or its administrative receiver.

(2) In Division 3, "office holder" has the meaning specified in section 281. *(Amended by Act 11 of 2004)*

## Application to Court concerning office holder

**273.** A person aggrieved by an act, omission or decision of an office holder may apply to the Court and the Court may confirm, reverse or modify the act, omission or decision of the office holder.

## Company's books

**274.** Where a company is in administration or liquidation, all documents of the company and of the administrator or liquidator are, as between the members of the company, *prima facie* evidence of the truth of all matters purporting to be recorded in them.

## Order to deliver assets and documents

**274A.** (1) Where any person has in his or her possession or control any assets or documents to which the company appears to be entitled, the Court may, on the application of the office holder, require that person forthwith, or within such period as the Court may direct, to pay, deliver, convey, surrender or transfer the assets or documents to the office holder.

(2) Subsection (3) has effect where the office holder—

(a) seizes or disposes of any asset which is not an asset of the company; and

(b) at the time of seizure or disposal believes, and has reasonable grounds for believing, that he or she is entitled, whether in

pursuance of an order of the Court or otherwise, to seize or dispose of that asset.

(3) In the circumstances specified in subsection (2), the office holder—

(a) is not liable to any person in respect of any loss or damage resulting from the seizure or disposal except in so far as that loss or damage is caused by the office holder's own negligence; and

(b) has a lien on the asset, or the proceeds of its sale, for such expenses as were incurred in connection with the seizure or disposal.

*(Inserted by Act 11 of 2004)*

### Division 2

### *Statement of Affairs*

### Interpretation for this Division

**275.** (1) In this Division—

"office holder" *(Repealed by Act 11 of 2004)*

"relevant period" means the period of 2 years prior to—

(a) in the case of a company in administration, the date of the administration order;

(b) in the case of a company in liquidation, the date of the appointment of the liquidator;

(c) where a provisional liquidator has been appointed, the date of his or her appointment; and

(d) where an administrative receiver has been appointed, the date of his or her appointment;

"relevant person" means—

(a) a person who is or who, within the relevant period, has been an officer of the company;

(b) a person who is or who, within the relevant period, has been in the employment of the company and who, in the office holder's opinion is capable of providing the information required;

(c) a person who is or who, within the relevant period, has been an officer of or in the employment of a company which is an officer of the company; or

(d) a person who, within the relevant period, has promoted the formation of the company.

(2) For the purposes of the definition of "relevant person", "employment" includes employment under a contract for services.

156 *Insolvency Act*

## Notice to be given by office holder

**276.** (1) Where, pursuant to a provision in this Act, an office holder requires a relevant person to prepare a statement of affairs and submit it to him or her, he or she shall send a notice to that person in the prescribed form.

(2) A notice sent under subsection (1) shall specify a date by which the statement of affairs is to be delivered to him or her, which shall be no earlier than 24 days after the date upon which the notice is sent to the relevant person.

## Statement of Affairs

**277.** (1) A statement of affairs shall be in the prescribed form and contain the particulars prescribed.

(2) Without limiting subsection (1), the following particulars shall be set out in a statement of affairs—

*(a)* the assets and liabilities of the company;

*(b)* the names and addresses of the creditors of the company;

*(c)* the security interests held by creditors of the company and the dates upon which the security interests were created; and

*(d)* such further information as may be prescribed.

(3) Subject to section 278, a relevant person required by an office holder to prepare and submit a statement of affairs shall verify the statement of affairs by affidavit and submit the statement of affairs to the office holder, together with the verifying affidavit, on or before the date specified in the notice sent to him or her under section 276(1).

(4) A relevant person who, without reasonable excuse, contravenes subsection (3) commits an offence.

## Affidavit of concurrence

**278.** (1) A relevant person required by an office holder to prepare and submit a statement of affairs may, instead, submit an affidavit of concurrence complying with the Rules.

(2) A relevant person who submits an affidavit of concurrence to an office holder on or before the date specified in the notice sent to him or her does not commit an offence under section 277(4).

## Release from duty to submit statement of affairs

**279.** (1) An office holder or the Court may, in accordance with the Rules—

*(a)* release a person from an obligation imposed on him or her to prepare and submit a statement of affairs; or

*(b)* extend the period of time for the submission of the statement of affairs.

(2) An order of the Court under this section may be made subject to such terms and conditions as the Court considers fit.

26-10769-mg    Doc 77-2    Filed 06/05/26    Entered 06/05/26 16:53:44    Exhibit 2 -
Transcript of the Remote Deposition of Riz Mokal    Pg 672 of 991

**LAW OF
VIRGIN ISLANDS**    *Insolvency Act*    157
Revision Date: 1 Jan 2020

## Application for order of limited disclosure

**280.** (1) Where an office holder considers that it would prejudice the conduct of the insolvency proceeding for the whole or part of a statement of affairs submitted to him or her to be disclosed, he or she may apply to the Court for an order of limited disclosure in respect of the statement of affairs, or any specified part of it.

(2) The Court may, on an application under subsection (1), order that the statement of affairs or, as the case may be, the specified part of it—

    *(a)* in the case of an administrative receivership, is not to be open to inspection otherwise than with leave of the Court; or

    *(b)* in any other case, is not filed in Court, or that it is filed separately and that it is not to be open to inspection otherwise than with leave of the Court.

(3) An order of the Court under subsection (2) may include directions as to the delivery of documents to the Registrar and the disclosure of relevant information to other persons.

## Division 3

### *Investigation of Insolvent Company's Affairs*

#### *Office Holder's Powers*

## Interpretation for this Division

**281.** In this Division—

"relevant period" has the meaning specified in section 275;

"office holder", in respect of a company, means its administrator, its liquidator or its provisional liquidator and, in respect of a company in administration or liquidation or in respect of which a provisional liquidator has been appointed, includes the Official Receiver; *(Amended by Act 11 of 2004)*

## Power to obtain information

**282.** (1) An office holder may, by notice in writing, require a person specified in subsection (2)—

    *(a)* to provide him or her with such information concerning the company, including the promotion, formation, business, dealings, accounts, assets, liabilities or affairs as he or she reasonably requires;

    *(b)* to attend on him or her at such reasonable time and at such place as may be specified in the notice; or

    *(c)* to be examined on oath or affirmation by him or her, or by his or her legal practitioner, on any matter referred to in paragraph *(a)*.
        *(Amended by Act 11 of 2004)*

(2) A notice under subsection (1) may be sent to—

    *(a)* an officer or former officer of the company;

*(b)* a member or former member of the company;

*(c)* a person who was involved in the promotion or formation of the company;

*(d)* a person who is, or within the relevant period has been, employed by the company, including a person employed under a contract for services;

*(e)* a person who is, or at any time has been, a receiver, accountant or auditor of the company;

*(f)* a person who is or who, at any time has been, an officer of or in the employment of a company which is an officer of the company; or

*(g)* if the office holder is the Official Receiver or a liquidator or provisional liquidator to any person who has acted as administrator, liquidator or provisional liquidator of the company.
*(Amended by Act 11 of 2004)*

(3) A person who receives a notice under subsection (1) and who, without reasonable excuse, fails to comply with the notice, commits an offence.

## Examination by office holder

**283.** (1) This section applies to the examination of a person under section 282(1)*(c)* by an office holder.

(2) The office holder, or the legal practitioner conducting the examination on his or her behalf, may administer an oath to, or take the affirmation of, a person to be examined.

(3) A person required to be examined is entitled to be represented by a legal practitioner.

(4) The office holder shall ensure that the examination is recorded in writing or by means of a tape recorder or other similar device.

*Examination Before Court*

## Application for examination before Court

**284.** (1) Where a company is in liquidation, an application may be made to the Court, *ex parte*, by the liquidator or by the Official Receiver, for an order that a person specified in subsection (2) appear before the Court for examination concerning the company, or a connected company, including the promotion, formation, business, dealings, accounts, assets, liabilities or affairs of the company or connected company.

(2) An application under subsection (1) may be made in respect of—

*(a)* a person specified in section 282(2); or

*(b)* any other person who the applicant considers is capable of giving information concerning the company or a connected company; or
*(Amended by Act 11 of 2004)*

*(c)* any other person who the applicant knows or suspects has in his or her possession or control any asset of the company or is indebted to the company. *(Inserted by Act 11 of 2004)*

(3) An application under subsection (1) shall state whether the applicant seeks a public or a private examination.

## Order for examination

**285.** (1) In this section, "examinee" means the person to be examined before the Court.

(2) On hearing an application made under subsection 284, the Court may order the examinee to appear before the Court to be examined.

(3) An order under subsection (1)—

*(a)* shall direct the examinee to appear before the Court to be examined at a venue specified in the order;

*(b)* shall state whether the examination is to be a public or a private examination;

*(c)* may require the person concerned to produce at the examination any books, records or other documents in his or her possession or control that relate to the company, or a connected company, including the promotion, formation, business, dealings, accounts, assets, liabilities or affairs of the company or connected company;

*(d)* may provide for an alternative method of service of the order on the examinee;

*(e)* shall state the action that may be taken against a person if he or she does not appear before the Court as required by the order; and

*(f)* where the examination is to be a public examination, may require the examination to be advertised, specifying the method of such advertisement.

(4) Where the Court makes an order under subsection (2), the applicant shall, forthwith serve a sealed copy of the order on the examinee and, where the liquidator is not the Official Receiver

*(a)* if the applicant is the liquidator of the company, send a sealed copy of the order to the Official Receiver; or *(Amended by Act 11 of 2004)*

*(b)* if the applicant is the Official Receiver, send a sealed copy of the order to the liquidator of the company. *(Amended by Act 11 of 2004)*

(5) Where an order under subsection (2) is for the public examination of an examinee, the applicant shall give not less than 14 days notice of the examination to each creditor and member of the company.

(6) The Court may as part of an order made under this section, or at any subsequent time, make one or more of the following directions—

*(a)* a direction specifying the matters upon which the examinee may be examined; and

*(b)* a direction specifying the procedures to be followed at the examination.

## Conduct of examination

**286.** (1) This section applies to an examination held pursuant to an order made under section 285.

(2) An examinee shall be examined on oath and he or she shall answer such questions as the Court may put, or allow to be put to him or her.

(3) Subject to subsection (2), an examination is conducted by the applicant, or by his or her legal practitioner, and the person examined is entitled to be represented by a legal practitioner who may put such questions to the examinee as the Court may allow for the purpose of explaining or qualifying answers given by him or her.

(4) The examinee may also be examined—

*(a)* if the applicant is the Official Receiver, by the liquidator; or

*(b)* if the applicant is the liquidator of the company, by the Official Receiver.

(5) At a public examination questions may, with the leave of the Court, be put to the examinee by any creditor or member of the company present at the examination or by the legal practitioner representing such creditor or member.

(6) An examination shall be recorded in writing and the examinee shall sign the record.

(7) Subject to section 287, the written record of an examination is admissible in evidence in any proceedings under this Act other than proceedings for a disqualification order under Part X. *(Amended by Act 11 of 2004)*

## Incriminating answers and admissibility of record

**287.** (1) An examinee is not excused from answering a question put to him or her by an office holder under section 282 or at an examination held pursuant to an order made under section 285 on the ground that the answer may incriminate him or her or tend to incriminate him or her.

(2) The record of an examination held under section 282 or pursuant to an order made under section 285 is not admissible as evidence in any criminal proceedings against the examinee except where he or she is charged with the offence of perjury.

## Offence

**288.** (1) A person who, without reasonable excuse, fails to attend an examination ordered to be held under section 285, commits an offence.

(2) Where a person without reasonable excuse fails at any time to attend an examination ordered to be held under section 285, or there are reasonable grounds for believing that a person has absconded, or is about to abscond, with a view to avoiding or delaying his or her examination, the Court may cause a warrant to be issued to a police officer or a prescribed officer of the Court—

*(a)* for the arrest of that person; and

*(b)* for the seizure of any books, papers, records, money or goods in that person's possession.

*(Amended by Act 11 of 2004)*

(3) In such a case the Court may authorise the person arrested under the warrant to be kept in custody, and anything seized under such a warrant to be held, in accordance with the Rules, until such time as the court may order.

## Division 4

### *Offence Provisions*

## Fraudulent conduct

**289.** (1) Where a liquidator of a company is appointed under section 159, a person who is or has been an officer of the company is deemed to have committed an offence if, at any time whilst an officer or during the period of 12 months preceding the commencement of the liquidation, he or she has—

*(a)* made or caused to be made any gift or transfer of, or charge on, or has caused, permitted or acquiesced in the levying of any execution against the company's assets; or

*(b)* has concealed or removed any of the company's assets since, or within, 60 days of the date of any unsatisfied judgment or order for the payment of money obtained against the company.

*(Amended by Act 11 of 2004)*

(2) A person is not guilty of an offence under this section—

*(a)* by reason of conduct constituting an offence under subsection (1)*(a)* which occurred more than 5 years before the commencement of the liquidation; or

*(b)* if he or she proves that, at the time of the conduct constituting the offence, he or she had no intent to defraud the company's creditors.

PART XII

BANKRUPTCY

*Preliminary*

## Interpretation

**290.** In this Part—

"bankrupt" means the individual against whom a bankruptcy order is made;

"bankruptcy offence" means an offence under Part XIII;

"debtor" means the individual to whom an application for a bankruptcy order relates;

"prescribed minimum" means the minimum amount of the debt for which a statutory demand may be issued under section 155; and

*Insolvency Act*

"trustee" means the bankruptcy trustee of a bankrupt.

## Application of this Part to Official Receiver

**291.**  Where the Official Receiver is appointed as the trustee of a bankrupt, the provisions of this Act that apply to a trustee apply to the Official Receiver, as trustee, unless otherwise provided.

*Bankruptcy Order*

## Meaning and duration of bankruptcy order

**292.**  (1) A bankruptcy order is an order of the Court vesting the assets of an individual in a bankruptcy trustee appointed by the Court for the purposes of division amongst his or her creditors in accordance with this Part.

(2) The bankruptcy of an individual commences at the time at which the bankruptcy order is made and continues until it is terminated by the discharge of the bankrupt under section 376 or 379.

(3) Throughout the period referred to in subsection (2), the individual is referred to in this Act as "in bankruptcy".

## Conditions for making of bankruptcy order

**293.**  (1) The Court shall not make a bankruptcy order against a debtor under this Part unless it is satisfied—

   *(a)*  that on the date that the application was filed, the debtor—

   (i)  was ordinarily resident in the Virgin Islands;

   (ii)  was personally present in the Virgin Islands;

   (iii)  was carrying on business in the Virgin Islands, either personally or by means of an agent or manager;

   (iv)  was a member of a partnership carrying on business in the Virgin Islands by means of a partner or partners or of an agent or manager; or

   (v)  had a place of residence or a place of business in the Virgin Islands;
*(Amended by Act 11 of 2004)*

   *(b)*  that the debtor has or appears to have assets in the Virgin Islands; or

   *(c)*  that there is a reasonable prospect that the making of a bankruptcy order will benefit the creditors of the debtor.

(2) For the purposes of subsection (1)*(a)*(iii) and (iv), a debtor or a partnership is deemed to be carrying on business in the Virgin Islands if liabilities incurred in the course of a business formerly carried on in the Virgin Islands remain unpaid.

## Persons who may apply for a bankruptcy order

**294.** Application to the Court for a bankruptcy order in respect of a debtor may be made—

> *(a)* by the debtor himself or herself under section 295;
>
> *(b)* by a creditor of the debtor, or by one or more of his or her creditors jointly, under section 296; or *(Amended by Act 11 of 2004)*
>
> *(c)* by the supervisor of an arrangement or by a creditor of the debtor under section 301. *(Amended by Act 11 of 2004)*

## Application by debtor

**295.** (1) The Court may make a bankruptcy order against a debtor on the application of the debtor himself or herself if it is satisfied—

> *(a)* that the debtor is unable to pay his or her debts as they fall due;
>
> *(b)* that the unsecured liabilities of the debtor exceed the prescribed minimum; and
>
> *(c)* that, if a bankruptcy order is made, the value of the debtor's assets available for distribution to his or her unsecured creditors will exceed the prescribed minimum.

(2) An application for a bankruptcy order filed by a debtor under subsection (1) shall be accompanied by a verified statement of his or her assets and liabilities. *(Amended by Act 11 of 2004)*

## Creditor's application

**296.** (1) A creditor's application for a bankruptcy order shall be made in respect of a liability or liabilities where, at the time of the application—

> *(a)* the amount of the liability, or the aggregate amount of the liabilities, exceeds the prescribed minimum; and
>
> *(b)* the liability, or each of the liabilities, is for a liquidated sum payable to the applicant creditor immediately.

(2) An application under subsection (1) may not be made in respect of a liability incurred outside the Virgin Islands unless the liability is payable by the debtor to the creditor by virtue of a judgment or award enforceable by execution in the Virgin Islands.

## Substitution of applicant

**297.** (1) In the circumstances specified in subsection (2), the Court may, by order, substitute as applicant in a creditor's application for a bankruptcy order, a creditor—

> *(a)* who has given notice of his or her intention to appear at the hearing of the application in accordance with the Rules;
>
> *(b)* who would otherwise have been entitled to make such an application on the date that the original application was made; and

*(c)* who consents to being substituted as the applicant.

(2) The Court may make a substitution order under subsection (1) if it considers it appropriate to do so—

*(a)* because the applicant applies to withdraw the application or consents to it being dismissed;

*(b)* because the Court considers that the application is not being diligently proceeded with;

*(c)* where the applicant is not entitled to make the application; or

*(d)* for any other reason.

## Application by secured creditor

**298.** (1) Where the applicant for a bankruptcy order is a secured creditor, he or she shall in his or her application state the full amount of the liability of the debtor to him or her and—

*(a)* state that he or she is willing, in the event of a bankruptcy order being made, to give up his or her security interest for the benefit of the other creditors of the bankrupt; or

*(b)* give an estimate of the value of his security interest and make the application in respect of the full amount of the liability of the debtor to him or her less the estimated value of his or her security interest.

(2) In a case falling within subsection (1)*(b)*, the secured creditor is treated as an unsecured creditor in respect of the unsecured liability of the debtor to him or her

## Secured creditor failing to disclose security interest

**299.** (1) Subject to subsection (2), a secured creditor who fails to disclose his or her security interest in an application for a bankruptcy order against a debtor is, in the event that a bankruptcy order is made on the application, deemed to have given up his or her security interest for the benefit of the other creditors of the bankrupt.

(2) If on the application of a secured creditor the Court is satisfied that the failure of the creditor to disclose his or her security interest was inadvertent or due to an honest mistake, it may disapply subsection (1) subject to such terms and conditions as it considers appropriate.

(3) Where subsection (1) applies, the secured creditor concerned—

*(a)* is not entitled to enforce his security interest against the estate of the bankrupt or to retain any proceeds from the realisation of the security interest; and

*(b)* shall execute such document of release as is required by the trustee or account and pay over to the trustee all proceeds from any realisation of his security interest.

(4) Where a secured creditor fails to execute a document of release as required by subsection (2)*(b)*, the trustee may apply to the Court for an order that the trustee may execute the document on his or her behalf and, where the Court

makes such an order, the execution of the document by the trustee takes effect as if executed by the secured creditor.

(5) A secured creditor who fails to account or pay to the trustee the proceeds from any realisation of his or her security interest in accordance with subsection (3)*(b)* commits an offence.

## Hearing of creditor's application

**300.** (1) Subject to subsection (2), the Court may make a bankruptcy order on an application made under section 296 if it is satisfied that the debtor is insolvent within the meaning of section 8(2) and—

    *(a)* where the debtor has failed to comply with the requirements of a statutory demand, the demand was made by the creditor making the application; or

    *(b)* where execution or other process has been returned unsatisfied, the debt is payable to the creditor making the application.

(2) The Court shall not make a bankruptcy order under subsection (1) unless it is satisfied that—

    *(a)* the debt, or one of the debts, in respect of which the application is made is a debt which, having been payable at the date of the application, has neither been paid nor secured nor compounded for; and

    *(b)* where the debtor does not appear at the hearing, he or she has been served with the application.

(3) The Court may dismiss an application made under section 296 if—

    *(a)* it is not satisfied with the proof of the liability or liabilities in respect of which the application is made;

    *(b)* it is not satisfied with the proof of the service of the application on the debtor;

    *(c)* it is satisfied that the debtor is able to discharge all his or her liabilities;

    *(d)* it is satisfied that the debtor has made an offer to secure or compound for a liability in respect of which the application is made, the acceptance of which would have required the dismissal of the application and that offer has been unreasonably refused by the creditor making the application; or

    *(e)* it is satisfied that for some other sufficient reason, a bankruptcy order ought not to be made.

(4) Nothing in section 296 or in this section limits the power of the Court, in accordance with the rules, to authorise a creditor's application to be amended by the omission of any creditor or liability.

(5) Where an application is amended under subsection (4), the Court may order that the application is proceeded with as if anything done for the purposes of this section or section 296 had been done only by or in relation to the remaining creditors or debts.

*Insolvency Act*                      LAW OF VIRGIN ISLANDS

### Application where individual creditors' arrangement in place

**301.** (1) Where an individual creditors' arrangement has been approved under Part II and has not been completed or otherwise come to an end, the Court may make a bankruptcy order against a debtor on the application of the supervisor or a creditor bound by the arrangement if it is satisfied—

> (a) that the debtor has failed to comply with his or her obligations under the arrangement; or
>
> (b) that information which was false or misleading in any material particular or which contained material omissions—
>
>> (i) was contained in any statement of assets and liabilities or other document supplied by the debtor under Part II to any person; or
>>
>> (ii) was otherwise made available by the debtor to his or her creditors at or in connection with a meeting summoned under that Part, or
>
> (c) that the debtor has failed to do all such things as may for the purposes of the arrangement have been reasonably required of him or her by the supervisor of the arrangement. *(Amended by Act 11 of 2004)*

(2) Where a bankruptcy order is made on an application under subsection (1), any remuneration of the supervisor is a first charge on the bankrupt's estate.

### Consolidation of applications

**302.** Where 2 or more applications for bankruptcy orders are presented against the same debtor, the Court may consolidate the proceedings or any of them on such terms as it considers fit.

### Withdrawal of application

**303**. An application for a bankruptcy order may not be withdrawn except with the leave of the Court.

### Court's powers on hearing of application for bankruptcy order

**304.** On the hearing of an application for a bankruptcy order under section 295, section 296 or section 301, the Court may—

> (a) make a bankruptcy order;
>
> (b) if it appears appropriate to do so on the grounds that there has been a contravention of the Rules or for any other reason, dismiss the application or stay proceedings on the application on such terms and conditions as it considers fit;
>
> (c) adjourn the hearing conditionally or unconditionally; or
>
> (d) make any interim order or other order that it considers fit.

26-10769-mg    Doc 77-2    Filed 06/05/26    Entered 06/05/26 16:53:44    Exhibit 2 -
Transcript of the Remote Deposition of Riz Mokal    Pg 682 of 991

LAW OF
VIRGIN ISLANDS                            *Insolvency Act*                            167
Revision Date: 1 Jan 2020

## Appointment of bankruptcy trustee

**305.** Where the Court makes a bankruptcy order it shall appoint either the Official Receiver or an eligible insolvency practitioner to be the bankruptcy trustee of the bankrupt. *(Amended by Act 11 of 2004)*

## Period within which application shall be determined

**306.** (1) Subject to subsection (2), an application for a bankruptcy order shall be determined within 3 months after it is filed.

(2) The Court may, upon such conditions as it considers fit, extend the period referred to in subsection (1) for a period of, or where it grants more than one extension for an aggregate period not exceeding, 3 months if—

> *(a)* it is satisfied that special circumstances justify the extension; and

> *(b)* the order extending the period is made before the expiry of that period or, if a previous order has been made under this subsection, that period as extended.

(3) If an application is not determined within the period referred to in subsection (1) or within that period as extended, it is deemed to have been dismissed.

*Interim Relief*

## Protection of assets after application for bankruptcy order

**307.** (1) Where an application for a bankruptcy order has been filed in respect of a debtor but not yet determined or withdrawn, the Court may, if it considers it necessary for the protection of the debtor's assets—

> *(a)* make an order directing the Official Receiver or an eligible insolvency practitioner to take control of—

>> (i) the debtor's assets, or any part of them; and

>> (ii) such books or other documents of the debtor as may be specified in the order; and

> *(b)* make any other order in relation to the debtor's assets.

(2) An application for an order under subsection (1) may be made by—

> *(a)* the applicant for the bankruptcy order;

> *(b)* the debtor himself or herself; or

> *(c)* any creditor of the debtor.

(3) An order under subsection (1) may be made on such terms as it considers fit and may, as a condition precedent, require the applicant to deposit at Court such sum as the Court considers reasonable to cover the remuneration of the Official Receiver or the insolvency practitioner appointed.

(4) An order under subsection (1) remains in effect until the earlier of—

> *(a)* the discharge of the order by the Court of its own motion or on the application of—

(i) the Official Receiver or eligible insolvency practitioner appointed under subsection (1)*(a)*; or

(ii) any person specified in subsection (2); or

   *(b)* the determination or withdrawal of the application for a bankruptcy order, whereupon the appointment of the Official Receiver or insolvency practitioner is terminated.

(5) On the order ceasing to have effect, the Court may give such directions or make such order with respect to the accounts of the administration of the appointee, or to any other matter, as it considers appropriate.

## Effect of order under section 307

**308.** Whilst an order under section 307(1) is in effect, unless the leave of the Court has been obtained—

   *(a)* no steps may be taken to enforce any security interest over the debtor's assets;

   *(b)* no steps may be taken to repossess assets that are being used or occupied by or are in the possession of the debtor; including—

      (i) goods supplied under a hire purchase, conditional sale or chattel leasing agreement; and

      (ii) goods supplied subject to a retention of title agreement; and

   *(c)* no proceedings, execution or other legal process may be commenced or continued or distress levied against the debtor or his assets.

## Remuneration of person appointed under section 307

**309.** (1) The Official Receiver or the insolvency practitioner directed to take control of a debtor's assets under section 307(1) is entitled to be paid such remuneration as the Court may order applying the general principles specified in section 432. *(Amended by Act 11 of 2004)*

(2) Subject to subsections (3) and (4), the remuneration ordered to be paid under subsection (1) is payable—

   *(a)* where a bankruptcy order is not made, out of the assets of the debtor;

   *(b)* where a bankruptcy order is made, out of the bankrupt's estate in accordance with the prescribed priority.

(3) If a bankruptcy order is not made, the Court may order the applicant for the order under section 307 to pay or contribute to the remuneration of the Official Receiver or insolvency practitioner directed to take control of the assets under section 307(1) if it is satisfied that the applicant—

   *(a)* misled the Court when making the application; or

   *(b)* acted unreasonably in making the application.

(4) If the assets of the debtor are not sufficient to pay the remuneration ordered to be paid by the Court under subsection (1), the Court may order the

shortfall, or part of the shortfall, to be paid by the applicant for the order under section 307. *(Amended by Act 11 of 2004)*

(5) Unless the Court otherwise orders, where subsection (2)*(a)* applies, the Official Receiver, or the insolvency practitioner appointed under section 307, may retain out of the debtor's assets such sums or assets as are, or may be, required for meeting his remuneration.

## Examination

**310.** The Official Receiver or the insolvency practitioner directed to take control of a debtor's assets under section 307(1) may apply for an order to examine the debtor under section 369, and sections 369 to 373 apply as if—

(a) references to the Official Receiver or the trustee were to the person directed to take control of the debtor's assets; and

(b) references to the bankrupt and to his or her estate were to the debtor and his or her assets.

*Effect of Bankruptcy*

## Effect of bankruptcy order

**311.** On the making of a bankruptcy order, the assets comprised in the bankrupt's estate—

(a) vest in his or her trustee without any conveyance, assignment or transfer; and

(b) become divisible among his or her creditors in accordance with this Act.

## Power to stay or restrain proceedings

**312.** (1) An order under subsection (2) or (3) may be made—

(a) after an application for a bankruptcy order has been filed against an individual but not yet determined; or

(b) whilst an individual is an undischarged bankrupt.

(2) At any time during either period specified in subsection (1)—

(a) the Court may stay any action, proceeding, execution, distress or other legal process against the person or the assets of the individual concerned; and

(b) any court in which proceedings are pending against any individual may either stay the proceedings or allow them to continue on such terms as it thinks fit.

(3) After the making of a bankruptcy order no person who is a creditor of the bankrupt in respect of a debt that may be claimed in the bankruptcy shall—

(a) have any remedy against the assets or person of the bankrupt in respect of that debt; or

(b) before the discharge of the bankrupt, commence any action or other legal proceedings against the bankrupt except with the leave of the court and in such terms as the court may impose.

(4) This section—

(a) does not affect the right of a secured creditor to enforce his or her security; and

(b) is subject to section 351 (enforcement procedures) and section 352 (limited right to distress).

*Bankrupt's Estate*

## Definition of bankrupt's estate

313. (1) Subject to subsection (2), the bankrupt's estate comprises—

(a) all assets belonging to or vested in the bankrupt at the date of the bankruptcy order;

(b) assets claimed by the trustee under section 318 or 319; and

(c) the capacity to exercise and to take proceedings for exercising all such powers in or over or in respect of assets as might have been exercised by the bankrupt for his or her own benefit at the date of the bankruptcy order.

(2) Subsection (1) does not apply to—

(a) assets held by the bankrupt on trust for any other person;

(b) such tools, books, vehicles and other items of equipment as are necessary to the bankrupt for use personally by him or her in his or her employment or business;

(c) such clothing, bedding, furniture, household equipment and provisions as are necessary for satisfying the basic domestic needs of the bankrupt and his or her family; and

(d) any asset of the bankrupt which is excluded from his or her estate under any other enactment.

(3) The assets comprised in a bankrupt's estate are divisible amongst his or her creditors in accordance with this Part.

(4) Assets comprised in a bankrupt's estate are subject to the rights of any person other than the bankrupt in relation to those assets, whether as a secured creditor of the bankrupt or otherwise, but disregarding—

(a) any rights given up under section 298(1)*(a)*; and

(b) any rights which have been otherwise given up in accordance with the rules.

(5) Unless the context otherwise requires, a reference in this Part to the assets of the bankrupt means the assets comprised in the bankrupt's estate.

### Acquisition by trustee of control of bankrupt's estate

**314.** (1) A trustee shall forthwith after the making of a bankruptcy order take possession of—

    *(a)* all documents which relate to the bankrupt's estate or affairs and which belong to him or her or are under his or her control, including documents which would be privileged from disclosure in any proceedings; and

    *(b)* all assets of the bankrupt that are capable of manual delivery.

(2) A trustee is, in relation to and for the purposes of acquiring or retaining possession of the assets of the bankrupt, in the same position as a receiver of the assets appointed by the Court, and the Court may, on his or her application, enforce the acquisition or retention accordingly.

(3) Where any part of the bankrupt's estate consists of stock, shares or shares in a ship or any other assets transferable in the books of a company, office or person, the trustee may exercise the right to transfer the assets to the same extent as the bankrupt might have exercised it if he or she had not become bankrupt.

(4) Where any part of the estate consists of things in action, they are deemed to have been assigned to the trustee.

(5) Notice of the deemed assignment of things in action under subsection (4) need not be given except in so far as it is necessary, in a case where the deemed assignment is from the bankrupt himself or herself, for protecting the priority of the trustee. *(Amended by Act 11 of 2004)*

### Goods subject to pledge etc.

**315.** (1) Where any goods of a bankrupt are held by any person by way of pledge, pawn or other security, the trustee of the bankrupt may, after giving notice of his or her intention to do so, inspect the goods.

(2) Where a person receives a notice under subsection (1), he or she is not entitled to realise his or her security unless he or she has given the trustee a reasonable opportunity to inspect the goods and, if the goods are comprised in the estate of the bankrupt, to exercise the bankrupt's right of redemption.

### Duties of bankrupt in relation to his assets and affairs

**316.** (1) Where a bankruptcy order has been made, the bankrupt shall—

    *(a)* make discovery of and deliver to his or her trustee all the assets comprised in his estate that are in his or her possession or control; and

    *(b)* deliver to his or her trustee all documents in his or her possession or control which relate to his or her assets or affairs, including any documents which, in any proceedings, would be privileged from disclosure.

(2) Where the bankrupt is unable to deliver any assets comprised in his or her estate to his trustee, the bankrupt shall do everything reasonably required by his or her trustee to protect those assets.

172                *Insolvency Act*            **LAW OF
VIRGIN ISLANDS**

Revision Date: 1 Jan 2020

(3) The bankrupt shall—

(a) give his or her trustee such information concerning his or her assets and affairs;

(b) attend on him or her at such times; and

(c) do all such other things, as his or her trustee may reasonably require for the purposes of carrying out his or her functions under this Act.

(4) If at any time after the time of the bankruptcy order any assets are acquired by, or devolve on, the bankrupt or there is an increase in the bankrupt's income, he or she shall, within the prescribed time period, give the trustee notice of the assets or of the increased income.

(5) Subsection (3) applies to a bankrupt after his or her discharge.

(6) If the bankrupt without reasonable excuse fails to comply with any obligation imposed by this section, he or she commits an offence.

## Delivery up by other persons

**317.** (1) Any person who holds assets to the account of, or for, the bankrupt shall pay or deliver to the trustee the assets in his or her possession or under his or her control unless he or she is, by law, entitled to retain the assets against the bankrupt or the trustee.

(2) Any person who, without reasonable excuse, fails to comply with any obligation imposed by this section, commits an offence.

## After-acquired assets

**318.** (1) Subject to sections 313(2) and 321, the trustee may by notice in writing served on the bankrupt claim for the bankrupt's estate any assets which have been acquired by, or have devolved upon, the bankrupt after the date of the bankruptcy order but prior to the date of his discharge.

(2) Subject to subsection (3), on the service of a notice under subsection (1) on the bankrupt, the assets to which the notice relates vest in the trustee as part of the bankrupt's estate and the trustee's title to those assets relates back to the time at which the assets were acquired by, or devolved upon, the bankrupt. *(Amended by Act 11 of 2004)*

(3) Where, whether before or after service of a notice under this section—

(a) a person acquires assets in good faith, for value and without notice of the bankruptcy, or

(b) a banker enters into a transaction in good faith and without such notice, the trustee is not in respect of those assets or that transaction entitled by virtue of this section to any remedy against that person or banker, or any person whose title to any assets derives from that person or banker.

(4) For the purposes of this section, a reference to "assets" does not include any asset which, as part of the bankrupt's income, may be the subject of an income payments order under section 322.

26-10769-mg   Doc 77-2   Filed 06/05/26   Entered 06/05/26 16:53:44   Exhibit 2 -
Transcript of the Remote Deposition of Riz Mokal    Pg 688 of 991

LAW OF
VIRGIN ISLANDS                          *Insolvency Act*                                  173
Revision Date: 1 Jan 2020

## Vesting in trustee of certain items of excess value

**319.** (1) Subject to section 321, where—

(a) assets are excluded from the bankrupt's estate by virtue of section 313(2)*(b)* or *(c)*, and

(b) it appears to the trustee that the realisable value of those assets or any of them exceeds the cost of a reasonable replacement,

the trustee may, by notice in writing served on the bankrupt, claim the asset or assets for the bankrupt's estate.

(2) On the service on the bankrupt of a notice under subsection (1), the assets to which the notice relates vest in the trustee as part of the bankrupt's estate; and, except against a purchaser in good faith, for value and without notice of the bankruptcy, the trustee's title to those assets has relation back to the date of the bankruptcy order.

(3) The trustee shall apply funds comprised in the estate to the purchase by or on behalf of the bankrupt of a reasonable replacement for any assets vested in him or her under this section and the duty imposed by this subsection has priority over the obligation of the trustee to distribute the estate.

(4) For the purposes of this section, an asset is a reasonable replacement for another asset if it is reasonably adequate for meeting the needs met by the other asset.

## Money provided *in lieu* of sale

**320.** (1) A third party may offer the trustee a sum of money to enable the bankrupt to be left in possession of assets which would otherwise vest in the trustee under section 319.

(2) The trustee may accept an offer made under subsection (1) if he or she is satisfied that it is a reasonable offer and that the estate will benefit to the extent of the value of the assets in question less the cost of a reasonable replacement.

*(Substituted by Act 11 of 2004)*

## Time limit for notice under sections 318 or 319

**321.** (1) Except with the leave of the Court, a notice may not be served—

(a) under section 318, after the end of the period of 42 days beginning with the day on which it first came to the knowledge of the trustee that the assets in question had been acquired by, or had devolved upon, the bankrupt;

(b) under section 319, after the end of the period of 42 days beginning with the day on which the assets in question first came to the knowledge of the trustee.

*(Amended by Act 11 of 2004)*

(2) For the purposes of this section—

(a) anything which comes to the knowledge of the trustee is deemed in relation to any successor of his or her as trustee to have come to the knowledge of the successor at the same time; and

*Insolvency Act*

*(b)* anything which comes to the knowledge of a person before he or she is the trustee, otherwise than under paragraph *(a)*, is deemed to come to his or her knowledge on his or her appointment taking effect. *(Amended by Act 11 of 2004)*

## Income payments orders

**322.** (1) The Court may, on the application of the trustee, make an income payments order claiming for the bankrupt's estate so much of the income of the bankrupt during the period for which the order is in force as may be specified in the order.

(2) The Court shall not make an income payments order the effect of which would be to reduce the income of the bankrupt below what appears to the Court to be necessary for meeting the reasonable domestic needs of the bankrupt and his family.

(3) An income payments order shall, in respect of any payments of income to which it is to apply, either—

*(a)* require the bankrupt to pay the trustee an amount equal to so much of that payment as is claimed by the order; or

*(b)* require the person making the payment to pay so much of it as is so claimed to the trustee, instead of to the bankrupt.

(4) *(Repealed by Act 11 of 2004)*

(5) Sums received by the trustee under an income payments order form part of the bankrupt's estate.

(6) Subject to section 379(1)*(c)*(i), an income payments order shall not be made after the discharge of the bankrupt, and if made before, shall not have effect after his or her discharge.

(7) Subject to subsection (8), for the purposes of this section, the income of the bankrupt comprises every payment in the nature of income which is from time to time made to him or her or to which he or she from time to time becomes entitled, including any payment in respect of the carrying on of any business or in respect of any office or employment and any payment under a pension scheme.

(8) The Rules may provide that pension payments paid to the bankrupt up to a maximum amount specified in the Rules are exempt from subsection (7). *(Inserted by Act 11 of 2004)*

*Bankruptcy Trustee*

## Bankruptcy trustee officer of Court

**323.** In performing his or her functions and undertaking his or her duties under this Act, a bankruptcy trustee acts as an officer of the Court.

## General duties of trustee

**324.** (1) The principal duties of a trustee are—

*(a)* to take possession of, protect and realise the bankrupt's estate; and

*(b)* to distribute the bankrupt's estate in accordance with this Act.

(2) Where the trustee is not the Official Receiver, he or she has a duty—

*(a)* to provide the Official Receiver with such information,

*(b)* to produce to the Official Receiver, and permit inspection by the Official Receiver of, such documents, and

*(c)* to give the Official Receiver such other assistance, as the Official Receiver may reasonably require for the purpose of enabling him or her to carry out his functions in relation to the bankruptcy.

(3) A trustee shall, subject to this Act and the Rules, use his or her own discretion in undertaking his duties.

(3A) If it appears to the trustee that the bankrupt is carrying on or has carried on unlicensed financial services business—

*(a)* he or she shall, as soon as reasonably practicable, report the matter to the Commission; and

*(b)* for the purposes of subsection (3B), he or she shall treat the bankrupt as a regulated person.
*(Inserted by Act 11 of 2004)*

(3B) Where the bankrupt is or has been a regulated person, the trustee shall—

*(a)* send to the Commission a copy of every notice or other document that he or she is required to file with the Court or to send to a creditor of the bankrupt; and

*(b)* unless the applicant is the Commission, give the Commission notice of any application made to the Court with respect to the bankruptcy, whether the application is made by him or her or by some other person.
*(Inserted by Act 11 of 2004)*

(4) A trustee also has the other duties imposed by this Act and the Rules and such duties as may be imposed by the Court.

## Powers of trustee

**325.** (1) A trustee may—

*(a)* with the permission of the creditors' committee or court, exercise any of the powers specified in Part 1 of Schedule 4; and Schedule 4

*(b)* without that permission, exercise any of the general powers specified in Part 2 of Schedule 4.

(2) With the permission of the creditors' committee or the court, the trustee may appoint the bankrupt—

*(a)* to superintend the management of his or her estate or any part of it;

*(b)* to carry on his or her business, if any, for the benefit of his or her creditors; or

*(c)* in any other respect to assist in administering the estate in such manner and on such terms as the trustee may direct.

(3) A permission given for the purposes of subsection (1)*(a)* or (2) shall not be a general permission but shall relate to a particular proposed exercise of the power in question and a person dealing with the trustee in good faith and for value is not to be concerned to enquire whether any permission required in either case has been given.

(4) Subject to subsection (5), where the trustee has done anything without the permission required by subsection (1)*(a)* or (2), the Court or the creditors' committee may, for the purpose of enabling him or her to meet his or her expenses out of the bankrupt's estate, ratify what the trustee has done.

(5) The creditors' committee shall not ratify the trustee's actions under subsection (4) unless it is satisfied that the trustee acted in a case of urgency and sought the committee's ratification without undue delay.

(6) Part 3 of Schedule 4 has effect with respect to the things which the trustee is able to do for the purposes of, or in connection with, the exercise of any of his or her powers under this Part.

(7) Where the trustee, not being the Official Receiver, in exercise of the powers conferred on him or her  by any provision in this Part—

*(a)* disposes of any asset comprised in the bankrupt's estate to an associate of the bankrupt, or

*(b)* employs a solicitor, he or she shall give notice to any creditors' committee of that exercise of his or her powers.

(8) Nothing in this Act is to be construed as restricting the capacity of the trustee to exercise any of his or her powers outside the Virgin Islands.

(9) The acts of the trustee of a bankrupt are valid notwithstanding any defect in his or her nomination, appointment or qualifications. *(Inserted by Act 11 of 2004)*

## Notice of appointment

**326.** (1) A trustee shall, within 14 days of the date of his or her appointment—

*(a)* advertise his or her appointment in accordance with the Rules; *(Substituted by Act 11 of 2004)*

*(b)* serve notice of his or her appointment on the bankrupt;

*(c)* if he or she has been appointed in respect of an individual who is a regulated person, serve notice of his or her appointment on the Commission;

*(d)* send a notice of his or her appointment to every creditor of the bankrupt; and

*(e)* unless the Official Receiver is the trustee, file notice of his or her appointment with the Official Receiver.

(2) An advertisement under subsection (1)*(a)* and a notice under subsection (1)*(d)* shall set out the powers of the creditors under this Part to require him or her to call a meeting of creditors.

(3) A trustee who contravenes subsection (1) or (2) commits an offence.

### Appointment of trustee in place of Official Receiver

**327.** (1) When the Official Receiver is the trustee of a bankrupt's estate the Court may, on his or her application, appoint an eligible insolvency practitioner to act as trustee in his or her place.

(2) An application may be made under subsection (1) notwithstanding that the Court has refused to make an appointment on a previous application by the Official Receiver.

### Removal of trustee

**328.** (1) The Court may, on application by a person specified in subsection (2) or on its own motion, remove a trustee from office if—

    *(a)* the trustee—

        (i) is not eligible to act as an insolvency practitioner in relation to the bankrupt;

        (ii) breaches any duty or obligation imposed on him or her by or owed by him or her under this Act, the Rules or the Regulations made under section 486 or, in his or her capacity as trustee, under any other enactment or law in the Virgin Islands; or *(Amended by Act 11 of 2004)*

        (iii) fails to comply with any direction or order of the Court made in relation to the bankruptcy; or

    *(b)* the Court is satisfied that—

        (i) the trustee's conduct of the bankruptcy is below the standard that may be expected of a reasonably competent trustee;

        (ii) the trustee has an interest that conflicts with his or her role as trustee; or

        (iii) that for some other reason he or she should be removed as trustee.

(2) An application to the Court to remove a trustee from office may be made by—

    *(a)* the creditors' committee, if any;

    *(b)* a creditor of the bankrupt; or

    *(c)* the Official Receiver.

(3) Where the Court removes a trustee from office under this section—

    *(a)* if, following his or her removal, there is at least one trustee remaining in office, the Court may appoint an eligible insolvency practitioner as trustee in his or her place; or *(Amended by Act 11 of 2004)*

*(b)* if the trustee removed was the sole trustee of the bankrupt, the Court shall appoint the Official Receiver or an eligible insolvency practitioner as trustee in his or her place. *(Amended by Act 11 of 2004)*

(4) On the hearing of an application under this section, the Court may make any interim or other order it considers fit.

## Resignation of trustee

**329.** (1) A trustee—

*(a)* shall resign if he or she  is no longer eligible to act as an insolvency practitioner in relation to the bankrupt; but

*(b)* otherwise may only resign in accordance with this section.

(2) Where a trustee resigns under subsection (1)*(a)*, he or she shall send a notice of his or her resignation, to the creditors of the bankrupt and to the Official Receiver, who shall file a copy of the notice with the Court, and his or her resignation takes effect from the date that the notice is filed by the Official Receiver with the Court. *(Amended by Act 11 of 2004)*

(3) A trustee may resign in accordance with subsection (5)—

*(a)* if he or she intends to cease to be in practice as an insolvency practitioner;

*(b)* if there is some conflict of interest or change of personal circumstances that precludes or makes impracticable the further discharge by him or her of his or her duties; or

*(c)* on the grounds of ill health.

(4) Notwithstanding subsection (3), where joint trustees are appointed, one or more of the joint trustees may resign in accordance with subsection (5) if—

*(a)* all the joint trustees are of the opinion that it is no longer necessary or expedient for the resigning trustee or trustees to continue in office; and

*(b)* at least one of them will remain in office.
*(Amended by Act 11 of 2004)*

(5) Where a trustee intends to resign on one of the grounds referred to in subsection (3) or under subsection (4), he or she shall call a meeting of creditors for the purpose of accepting his or her resignation as trustee.

(6) If, at the meeting called under subsection (5), the creditors resolve to accept the resignation of the trustee, he or she shall send a notice of his or her resignation to the creditors of the bankrupt and to the Official Receiver, who shall file a copy of the notice with the Court, and his or her resignation takes effect from the date that the notice is filed by the Official Receiver with the Court. *(Amended by Act 11 of 2004)*

(6A) If the creditors refuse or fail to accept the resignation of the trustee, he or she may apply to the Court for leave to resign in accordance with the Rules. *(Inserted by Act 11 of 2004)*

(7) This section does not apply to the Official Receiver when acting as the trustee of a bankrupt.

## Appointment of replacement trustee

**330.** (1) Where a trustee dies or resigns under section 329, the Court, on the application of a person specified in subsection (2) or on its own motion—

(a) if there is at least one trustee remaining in place, may appoint an eligible insolvency practitioner as trustee in his or her place; or

(b) if the trustee who has died or resigned was the sole trustee of the bankrupt, shall appoint the Official Receiver or an eligible insolvency practitioner in his or her place. *(Substituted by Act 11 of 2004)*

(2) An application under subsection (1) may be made—

(a) by any continuing trustee;

(b) by the creditors' committee, if any; or

(c) by the Official Receiver.

(3) Where there is a vacancy in the office of trustee, for whatever reason, the Official Receiver is trustee until the vacancy is filled.

## Remuneration of trustee

**331.** The remuneration payable to a trustee shall be fixed applying the principles specified in section 432. *(Amended by Act 11 of 2004)*

## General control of trustee by the Court

**332.** (1) A person aggrieved by an act, omission or decision of a trustee may apply to the Court and the Court may confirm, reverse or modify the act, omission or decision of the trustee.

(2) A trustee may apply to the Court for directions in relation to any particular matter arising under the bankruptcy.

*Administration by Trustee*

## Meetings of creditors

**333.** (1) A trustee may at any time call a meeting of the creditors of the bankrupt—

(a) by sending a notice of the meeting by post to every creditor not less than 7 days before the date upon which the meeting is to be held; and

(b) by advertising the meeting.

(2) Notwithstanding subsection (1), the trustee shall call a meeting of creditors if—

(a) a meeting is requisitioned by the creditors of the bankrupt in accordance with subsection (3); or

*Insolvency Act*

*(b)* he or she is directed to do so by the Court.

(3) A creditors' meeting may be requisitioned in accordance with the Rules by 25% in value of the creditors of the bankrupt.

(4) The trustee may, if he or she considers it appropriate, by written notice, require the bankrupt to attend a creditors' meeting called under this section. *(Inserted by Act 11 of 2004)*

(5) The bankrupt commits an offence if—

*(a)* he or she receives a notice to attend a creditors' meeting under subsection (4); and

*(b)* without reasonable excuse, he or she fails to attend the meeting.
*(Inserted by Act 11 of 2004)*


*Claims and Distribution of Estate*

## Distribution of bankrupt's estate

**334.** (1) The bankrupt's estate shall be applied—

*(a)* in paying, in priority to all other claims, the costs and expenses properly incurred in the bankruptcy in accordance with the prescribed priority;

*(b)* after payment of the costs and expenses of the bankruptcy, in paying the preferential claims admitted by the trustee in accordance with the provisions for the payment of preferential claims prescribed;

*(c)* after payment of the preferential claims, in paying all other claims admitted by the trustee; and

*(d)* after paying all admitted claims, in paying any interest payable under section 342.

(2) Subject to section 151, the claims referred to in subsection (1)*(c)* rank equally and, if the bankrupt's estate is insufficient to meet them all in full, they shall be paid rateably. *(Amended by Act 11 of 2004)*


## Debts to spouse

**335.** Any claims in respect of credit provided by a person who was the bankrupt's spouse at the time of the bankruptcy order, whether or not he or she was the bankrupt's spouse at the time the credit was provided—

*(a)* rank in priority after the debts and interest specified in section 334(1); and

*(b)* are payable with interest at the rate specified in section 334(1)*(d)* in respect of the period during which they have been outstanding since the date of the bankruptcy order,

and the interest payable under paragraph *(b)* has the same priority as the debts on which it is payable.

## Claims by unsecured creditors

**336.** (1) An unsecured creditor may make a claim in the bankruptcy of an individual by submitting to the trustee a written claim, signed by him or her or on his or her behalf.

(2) The trustee may require an unsecured creditor who intends to submit, or who has submitted, a claim under subsection (1)—

> *(a)* to verify his or her claim by affidavit;

> *(b)* to provide further particulars of his or her claim; or

> *(c)* to provide him or her with documentary or other evidence to substantiate the claim.

(3) Subject to subsection (7), as soon as reasonably practicable after receiving a claim under subsection (1) from a creditor who has complied with any requirements that the trustee may have imposed under subsection (2), the trustee shall either admit or reject the claim in whole or in part. *(Amended by Act 11 of 2004)*

(4) If the trustee rejects the claim, whether in whole or in part, he or she shall as soon as practicable provide the creditor with a notice of rejection in which the reasons for the rejection of the claim shall be specified.

(5) Unless the Court otherwise orders, a creditor shall bear the costs of making a claim under this section, including the costs of complying with any requirements imposed by the trustee under subsection (2).

(6) The trustee shall not admit a claim in the bankruptcy unless it has been made in accordance with this section.

(6A) The trustee is not required to admit or reject claims under subsection (3) at any time when it appears to him or her that there are insufficient assets in the bankrupt's estate to enable a distribution to be made to unsecured creditors. *(Inserted by Act 11 of 2004)*

(7) A person who makes or authorises the making of a claim under this section knowing that—

> *(a)* the claim is false or misleading in a material matter; or

> *(b)* a material fact or matter has been omitted from the claim,

commits an offence.

## Variation, withdrawal and expunging of claims

**337.** (1) A claim made under section 336 may—

> *(a)* be amended or withdrawn by the creditor at any time before the trustee has admitted it; and

> *(b)* be amended or withdrawn by agreement between the creditor and the trustee at any time after the trustee has admitted it.

(2) The Court, on the application of the trustee or, where the trustee declines to make application under this subsection, a creditor, may expunge or amend an admitted claim if it is satisfied that the claim should not have been admitted or should be reduced.

*Insolvency Act*

## Claims by secured creditors

**338.** (1) A secured creditor may—

*(a)* value the assets subject to the security interest and claim in the bankruptcy as an unsecured creditor for the balance of his or her debt; or

*(b)* surrender his or her security interest to the trustee for the general benefit of creditors and claim in the bankruptcy as an unsecured creditor for the whole of his or her debt,

but he or she is not obliged to do either.

(2) A secured creditor may, at any time apply to the trustee to amend the value that he or she placed on the security interest in his or her claim.

(3) If, on receiving an application under subsection (2), the trustee is satisfied that—

*(a)* the value placed on the security interest was an estimate made in good faith on a mistaken basis; or

*(b)* the value of the security interest has subsequently changed,

he or she may permit the secured creditor to amend the value that he or she places on the security interest.

(4) If the trustee is dissatisfied with the value placed on a security interest by a secured creditor, whether under subsection (1)*(a)* or on an amendment under subsection (3), he or she may require the assets comprised in the security interest to be offered for sale.

(5) A sale under subsection (4) is to be on such terms and conditions as are agreed by the secured creditor and the trustee or, in default, as the Court determines.

(6) If assets are offered for sale by public auction, both the secured creditor and the trustee are entitled to bid for and purchase them.

## Redemption of security interest by trustee

**339.** (1) Where a secured creditor has claimed in a bankruptcy under section 338(1)*(a)*, the trustee may at any time give notice to the creditor that he or she proposes at the expiration of 28 days from the date of the notice to redeem the security interest at the value placed on it by the creditor.

(2) A secured creditor who receives a notice under subsection (1) may, within 21 days of the date of the notice, apply to the trustee to revise the value that he or she places on the security interest in accordance with section 338(2).

(3) At the expiration of 28 days from the date of the notice under subsection (1), the trustee may redeem the security interest at the value placed on it by the creditor unless—

*(a)* the secured creditor has applied to the trustee to amend the value that he or she places on the security interest and that application has not been determined; or

*(b)* the secured creditor has appealed to the Court against the refusal of the trustee to permit him or her to amend the value that he or

she places on his or her security interest, and that appeal has not been determined.

(4) Where, subsequent to a notice to redeem issued under subsection (1), the value placed by the secured creditor on his or her security interest is amended, whether with the consent of the trustee or on appeal to the Court, the trustee may only redeem the security interest at the new value.

(5) A secured creditor may, by serving a notice to elect on the trustee, require him or her to elect whether or not to exercise his or her power to redeem under this section.

(6) Where a notice to elect is served on a trustee under subsection (5), he or she is not entitled to redeem the security interest unless he or she does so within six months of the date of service of the notice on him or her or within such extended period as the Court may allow.

## Realisation of security interest by secured creditor

**340.** (1) Where a secured creditor realises his or her security interest and there is a surplus remaining from the net amount realised after satisfaction of the debt secured, he or she shall account to the trustee for the surplus, after making any proper payments to the holder of any other security interest over the assets subject to that charge.

(2) Where a secured creditor realises his or her security interest and the net amount realised is not sufficient to satisfy the debt secured—

(a) if the creditor has previously valued his or her security interest and claimed in the bankruptcy for the balance under section 338(1)*(a)*, the net amount realised is substituted for the value previously placed by the creditor on the security interest; or *(Amended by Act 11 of 2004)*

(b) in any other case, the creditor may claim in the bankruptcy as an unsecured creditor for the balance of his or her debt.

(3) For the purposes of this section, the secured debt includes contractual interest payable to the secured creditor on the debt up to the time of its satisfaction. *(Amended by Act 11 of 2004)*

## Surrender for non-disclosure

**341.** (1) Subject to subsection (2), if a secured creditor omits to disclose his or her security interest when submitting a claim in a bankruptcy, he or she shall surrender his or her security interest for the general benefit of the creditors.

(2) The Court may, on application by a secured creditor who is required to surrender his or her security interest under subsection (1), if it is satisfied that the omission was inadvertent or the result of an honest mistake by order direct—

(a) that he or she is not required to surrender his or her security interest; and

(b) that he or she values his or her security interest and amends his or her claim accordingly.

*Insolvency Act*                    **LAW OF
VIRGIN ISLANDS**

## Interest after commencement of bankruptcy

**342.** (1) Interest is payable on any claim in a bankruptcy in respect of the period after the commencement of the bankruptcy in accordance with this section.

(2) Any surplus remaining after the payment of all claims in the bankruptcy shall, before being applied for any other purpose, be applied in paying interest on those claims in respect of the periods during which they have been unpaid since the commencement of the bankruptcy.

(3) Subject to section 151, all interest payable under this section ranks equally, whether or not the claims on which it is payable rank equally. *(Substituted by Act 11 of 2004)*

(4) The rate of interest payable under this section is the greater of—

*(a)* the court rate; and

*(b)* the rate that would be applicable to the claim if a bankruptcy order had not been made.

## Distribution by means of dividend

**343.** (1) Whenever the trustee has sufficient funds in hand for the purpose, he or she shall, subject to the retention of such sums as may be necessary for his or her remuneration and the other costs and expenses of the bankruptcy, distribute dividends among the creditors whose claims he or she has admitted. *(Amended by Act 11 of 2004)*

(2) Before distributing a dividend under subsection (1), the trustee shall send each creditor a notice—

*(a)* stating that he or she intends to distribute a dividend; and

*(b)* fixing a date on or before which creditors shall submit their claims to him or her.
*(Substituted by Act 11 of 2004)*

(3) *(Repealed by Act 11 of 2004)*

(4) *(Repealed by Act 11 of 2004)*

(5) In determining the funds available for distribution to creditors by way of a dividend, the trustee shall make provision—

*(a)* for any admissible debts which appear to him or her to be due to persons who, by reason of the distance of their place of residence, may not have had sufficient time to submit their claims;

*(b)* for any admissible debts which are the subject of claims which have not yet been determined; and

*(c)* for disputed claims.
*(Amended by Act 11 of 2004)*

### Claims by unsatisfied creditors

**344.** (1) A creditor who has not submitted his or her claim by the date fixed in the notice issued under section 343(2) is not entitled to disturb, by reason that he or she has not participated in it, the distribution of that dividend, but—

> (a) when that claim has been admitted, he or she is entitled to be paid out of any money for the time being available for the payment of any further dividend, any dividend or dividends which he or she has failed to receive; and

> (b) any dividend or dividends payable under paragraph *(a)* shall be paid before that money is applied to the payment of any such further dividend.
> *(Amended by Act 11 of 2004)*

(2) Subject to section 346, where the trustee makes more than one distribution, section 343 and subsection (1) of this section apply to each distribution. *(Inserted by Act 11 of 2004)*

### Distribution of assets in specie

**345.** (1) Without prejudice to the provisions in this Act concerning disclaimer, the trustee may, with the permission of the creditors' committee or the Court, divide in their existing form amongst the bankrupt's creditors, according to their estimated value, any assets which from their peculiar nature or other special circumstances cannot be readily or advantageously sold.

(2) A permission given for the purposes of subsection (1) shall not be a general permission but shall relate to a particular proposed exercise of the power in question and a person dealing with the trustee in good faith and for value is not to be concerned to enquire whether any permission required by subsection (1) has been given.

(3) Subject to subsection (4), where the trustee has done anything without the permission required by subsection (1), the Court or the creditors' committee may, for the purpose of enabling him or her to meet his or her expenses out of the bankrupt's estate, ratify what the trustee has done.

(4) The committee may only ratify the trustee's actions under subsection (3) if it is satisfied that the trustee acted in a case of urgency and that he or she has sought its ratification without undue delay.

### Final distribution

**346.** (1) When the trustee has realised all the bankrupt's estate or so much of it as can, in the trustee's opinion, be realised without needlessly protracting the bankruptcy, he or she shall give notice in the prescribed manner either—

> (a) of his or her intention to distribute a final dividend; or *(Amended by Act 11 of 2004)*

> (b) that no dividend, or further dividend, will be distributed. *(Substituted by Act 11 of 2004)*

(2) A notice given under subsection (1) shall require claims against the bankrupt's estate to be established by a date specified in the notice (referred to in this section as "the final date").

186                          *Insolvency Act*                LAW OF
                                                            VIRGIN ISLANDS
                                                   Revision Date: 1 Jan 2020

(3) The Court may, on the application of any person, postpone the final date.

(4) After the final date, the trustee shall—

  (a) defray any outstanding expenses of the bankruptcy out of the bankrupt's estate; and

  (b) if he or she intends to distribute a final dividend, distribute that dividend without regard to the claim of any person in respect of a claim not already admitted in the bankruptcy. *(Substituted by Act 11 of 2004)*

## No action for dividend

347. No action lies against the trustee for a dividend, but if the trustee refuses to pay a dividend the Court may, if it thinks fit, order him or her to pay it and also to pay out of his or her own money—

  (a) interest on the dividend at the Court rate from the time it was withheld; and

  (b) the costs of the application.

## Right of bankrupt to surplus

348. (1) Subject to subsection (2), the bankrupt is entitled to any surplus remaining after payment in full of the costs, expenses and claims referred to in section 334(1).

(2) The Court may make an order directing the trustee not to distribute the surplus or any part of it to the bankrupt if, on the application of the Attorney General, it is satisfied that—

  (a) proceedings under any enactment dealing with the confiscation of the proceeds of crime are pending; and

  (b) the assets of the bankrupt may become subject to a confiscation order or to be required to meet some other order made in those proceedings.

(3) The Court may, on the application of the Attorney General or the bankrupt vary or revoke an order made under subsection (2).

## Final meeting

349. (1) Where it appears to the trustee that the administration of the bankrupt's estate in accordance with this Act is for practical purposes complete and the trustee is not the Official Receiver, he or she shall call a final general meeting of the bankrupt's creditors to receive the trustee's report of his or her administration of the bankrupt's estate.

(2) The trustee may, if he or she thinks fit, call the final general meeting at the same time as giving notice under section 346 but, if called for an earlier date, the meeting shall be adjourned (and, if necessary, further adjourned) until a date on which the trustee is able to report to the meeting that the administration of the bankrupt's estate is for practical purposes complete.

(3) In the administration of the estate it is the trustee's duty to retain sufficient sums from the estate to cover the expenses of summoning and holding the meeting required by this section.

*Prior Transactions*

## Contracts to which bankrupt is a party

**350.** (1) Where a contract has been made with a person who subsequently becomes bankrupt, the Court may, on the application of any other party to the contract, make an order discharging obligations under the contract on such terms as to payment by the applicant or the bankrupt of damages for non-performance or otherwise as appear to the Court to be equitable.

(2) Any damages payable by the bankrupt by virtue of an order of the Court under this section are provable as a bankruptcy debt.

(3) Where an undischarged bankrupt is a contractor in respect of any contract jointly with any person, that person may sue or be sued in respect of the contract without the joinder of the bankrupt.

## Enforcements procedures

**351.** (1) Subject to section 312 and to this section, where the creditor of a bankrupt has, before the commencement of that bankruptcy—

    *(a)* issued execution against the goods or land of the bankrupt; or

    *(b)* attached a debt due to the bankrupt from another person, the creditor is not entitled, as against the bankruptcy trustee, to retain the benefit of the execution or attachment, or any sums paid to avoid it, unless the execution or attachment was completed, or the sums were paid, before the commencement of the bankruptcy.

(2) Where any goods of a person have been taken in execution, then, if before the completion of the execution notice is given to the officer charged with the execution that a bankruptcy order has been made against that person—

    *(a)* that officer shall on request deliver the goods and any money seized or recovered in part satisfaction of the execution to the trustee; but

    *(b)* the costs of the execution are a first charge on the goods or money so delivered and the trustee may sell the goods or a sufficient part of them for the purpose of satisfying the charge.
        *(Amended by Act 11 of 2004)*

(3) Subject to subsection (6) below, where—

    *(a)* under an execution in respect of a judgment for a sum exceeding such sum as may be prescribed for the purposes of this subsection, the goods of any person are sold or money is paid in order to avoid a sale; and

    *(b)* before the end of the period of 14 days beginning with the day of the sale or payment the officer charged with the execution is

given notice that a bankruptcy application has been filed in relation to that person; and

*(c)* a bankruptcy order is or has been made on that application, the balance of the proceeds of sale or money paid, after deducting the costs of execution, shall (in priority to the claim of the execution creditor) be comprised in the bankrupt's estate.

(4) Accordingly, in the case of an execution in respect of a judgment for a sum exceeding the sum prescribed for the purposes of subsection (3), the officer charged with the execution shall—

*(a)* not dispose of the balance mentioned in subsection (3) at any time within the period of 14 days so mentioned or while there is pending an application for a bankruptcy order of which he or she has been given notice under that subsection; and *(Amended by Act 11 of 2004)*

*(b)* pay that balance, where by virtue of that subsection it is comprised in the bankrupt's estate, to the trustee.

(5) For the purposes of this section—

*(a)* an execution against goods is completed by seizure and sale;

*(b)* an execution against land is completed by seizure or by the appointment of a receiver;

*(c)* an attachment of a debt is completed by the receipt of the debt.

(6) The rights conferred by subsections (1) to (3) on the trustee may, to such extent and on such terms as it thinks fit, be set aside by the court in favour of the creditor who has issued the execution or attached the debt.

(7) Nothing in this section entitles the trustee to claim goods from a person who has acquired them in good faith under a sale by an officer charged with an execution.

(8) Neither subsection (2) nor subsection (3) applies in relation to any execution against assets which have been acquired by or have devolved upon the bankrupt since the commencement of the bankruptcy unless, at the time the execution is issued or before it is completed—

*(a)* the assets have been or are claimed for the bankrupt's estate under section 318 (after-acquired assets); and

*(b)* a copy of the notice given under that section has been or is served on the officer charged with the execution.

**Distress, etc.**

**352.** (1) The right of any landlord or other person to whom rent is payable to distrain upon the goods and effects of an undischarged bankrupt for rent due to him or her from the bankrupt is available (subject to subsection (5) below) against goods and effects comprised in the bankrupt's estate, but only for 6 months' rent accrued due before the commencement of the bankruptcy.

(2) Where a landlord or other person to whom rent is payable has distrained for rent upon the goods and effects of an individual to whom a

bankruptcy application relates and a bankruptcy order is subsequently made on that application, any amount recovered by way of that distress which—

(a) is in excess of the amount which by virtue of subsection (1) would have been recoverable after the commencement of the bankruptcy, or

(b) is in respect of rent for a period or part of a period after the distress was levied, shall be held for the bankrupt as part of his or her estate.

(3) Where any person (whether or not a landlord or person entitled to rent) has distrained upon the goods or effects of an individual against whom a bankruptcy order is made before the end of the period of 3 months beginning with the distraint, so much of those goods or effects, or the proceeds of their sale, as is not held for the bankrupt under subsection (2) shall be charged for the benefit of the bankrupt's estate with the preferential debts of the bankrupt to the extent that the bankrupt's estate is for the time being insufficient for meeting those debts. *(Amended by Act 11 of 2004)*

(4) Where by virtue of any charge under subsection (3) any person surrenders any goods or effects to the trustee of a bankrupt's estate or makes a payment to such a trustee, that person ranks, in respect of the amount of the proceeds of the sale of those goods or effects by the trustee or, as the case may be, the amount of payment, as a preferential creditor of the bankrupt, except as against so much of the bankrupt's estate as is available for the payment of preferential creditors by virtue of the surrender of payment.

(5) A landlord or other person to whom rent is payable is not at any time after the discharge of a bankrupt entitled to distrain upon any goods or effects comprised in the bankrupt's estate.

(6) Nothing in this Part affects any right to distrain otherwise than for rent, and any such right is at any time exercisable without restriction against assets comprised in a bankrupt's estate, even if that right is expressed by any enactment to be exercisable in like manner as a right to distrain for rent.

(7) Any right to distrain against assets comprised in a bankrupt's estate is exercisable notwithstanding that the assets have vested in the trustee.

(8) The provisions of this section are without prejudice to a landlord's right in a bankruptcy to claim for any bankruptcy debt in respect of rent. *(Amended by Act 11 of 2004)*

## Unenforceability of liens on books, etc.

**353.** (1) A lien or other right to retain possession of any of the books, papers or other records of a bankrupt is unenforceable to the extent that such enforcement would deny possession of any books, papers or other records to the Official Receiver or the trustee of the bankrupt's estate. *(Amended by Act 11 of 2004)*

(2) Subsection (1) does not apply to a lien on documents which give a title to assets and are held as such.

190 *Insolvency Act*

*General Powers of Court*

## General control of Court

**354.** (1) Every bankruptcy is under the general control of the Court and, subject to anything to the contrary in this Act, the Court has full power to decide all questions of priorities and all other questions, whether of law or fact, arising in any bankruptcy.

(2) Without limiting this Part, an undischarged bankrupt or a discharged bankrupt whose estate is still being administered shall do all such things as he or she may be directed to do by the Court for the purposes of his or her bankruptcy or, as the case may be, the administration of that estate.

(3) The Official Receiver or the trustee of a bankrupt's estate may at any time apply to the court for a direction under subsection (2).

(4) A person who without reasonable excuse fails to comply with any obligation imposed on him or her by subsection (2) commits an offence.

## Power of arrest

**355.** (1) In the cases specified in subsection (2) the Court may cause a warrant to be issued to a police officer or a prescribed officer of the Court—

    *(a)* for the arrest of a debtor to whom an application for a bankruptcy order relates or of an undischarged bankrupt, or of a discharged bankrupt whose estate is still being administered; and *(Amended by Act 11 of 2004)*

    *(b)* for the seizure of any documents, money or goods in possession of a person arrested under the warrant, and may authorise a person arrested under such a warrant to be kept in custody, and anything seized under such a warrant to be held, in accordance with the Rules, until such time as the court may order. *(Amended by Act 11 of 2004)*

(2) The powers conferred by subsection (1) are exercisable in relation to a debtor or undischarged or discharged bankrupt if, at any time after the filing of the application for a bankruptcy order or the making of the bankruptcy order against him or her, it appears to the Court—

    *(a)* that there are reasonable grounds for believing that he or she has absconded, or is about to abscond, with a view to avoiding or delaying the payment of any of his or her debts or his or her appearance to an application for a bankruptcy order or to avoiding, delaying or disrupting any proceedings in bankruptcy against him or her or any examination of his or her affairs;

    *(b)* that he or she is about to remove his or her goods with a view to preventing or delaying possession being taken of them by the trustee;

    *(c)* that there are reasonable grounds for believing that he or she has concealed or destroyed, or is about to conceal or destroy, any of his or her assets or any documents which might be of use to his or

her creditors in the course of his or her bankruptcy or in connection with the administration of his or her estate;

*(d)* that he or she has, without the leave of his or her trustee, removed any assets in his or her possession which exceed in value such sum as may be prescribed for the purpose of this paragraph; or

*(e)* that he or she has failed, without reasonable excuse, to attend any examination ordered by the Court.

*(Amended by Act 11 of 2004)*

## Seizure of bankrupt's assets

**356.** (1) At any time after a bankruptcy order has been made, the Court may, on the application of the Official Receiver or the trustee of the bankrupt's estate, issue a warrant authorising the person to whom it is directed to seize any assets comprised in the bankrupt's estate which is, or any documents or records relating to the bankrupt's estate or affairs which are, in the possession or under the control of the bankrupt or any other person who is required to deliver the assets, books, papers or records to the Official Receiver or trustee. *(Amended by Act 11 of 2004)*

(2) Any person executing a warrant under this section may, for the purpose of seizing any assets comprised in the bankrupt's estate or any documents relating to the bankrupt's estate or affairs, break open any premises where the bankrupt or anything that may be seized under the warrant is or is believed to be and any receptacle of the bankrupt which contains or is believed to contain anything that may be so seized.

(3) If, after a bankruptcy order has been made, the Court is satisfied that any assets comprised in the bankrupt's estate or any documents relating to the bankrupt's estate or affairs are concealed in any premises not belonging to him or her, it may issue a warrant authorising any police officer or prescribed officer of the Court to search those premises for the assets or documents.

(4) A warrant under subsection (3) shall not be executed except in the prescribed manner and in accordance with its terms.

## Re-direction of bankrupt's letters, etc.

**357.** (1) Where a bankruptcy order has been made, the Court may from time to time, on the application of the trustee of the bankrupt's estate, order the Post Office to re-direct and send or deliver to the trustee or otherwise any mail which would otherwise be sent or delivered to the bankrupt at such place or places as may be specified by the order.

(2) An order under this section has effect for such period, not exceeding 3 months, as may be specified in the order.

*Insolvency Act*

*Disclaimer*

## Trustee may disclaim onerous property

**358.** (1) For the purposes of this section, "onerous property" means—

  *(a)* an unprofitable contract; or

  *(b)* an asset comprised in the bankrupt's estate which is unsaleable or not readily saleable, or which may give rise to a liability to pay money or perform an onerous act.

(2) Subject to sections 360 and 361(2), a trustee may, by filing a notice of disclaimer with the Court, disclaim any onerous property comprised in the bankrupt's estate even though he or she has taken possession of it, tried to sell or assign it or otherwise exercised rights of ownership in relation to it.

(3) A trustee who disclaims onerous property shall, within 14 days of the date on which the disclaimer notice is filed, give notice to every person whose rights are, to his or her knowledge, affected by the disclaimer.

(4) A trustee who contravenes subsection (3) commits an offence.

## When disclaimer takes effect

**359.** (1) Subject to subsections (2) and (4), a disclaimer takes effect on the date when the notice of disclaimer is filed at Court.

(2) The disclaimer of property of a leasehold nature does not take effect unless a copy of the disclaimer notice has been given, so far as the trustee is aware of their addresses, to every person claiming under the bankrupt as underlessee or mortgagee and either—

  *(a)* no application for a vesting order is made under section 362 with respect to that property before the end of a period of 14 days beginning with the day on which the last notice under this subsection was given; or

  *(b)* where such an application is made, the Court directs that the disclaimer is to take effect.

(3) Where the Court gives a direction under subsection (2)*(b)*, it may also, instead of or in addition to any order it makes under section 362, make such orders with respect to fixtures, tenant's improvements and other matters arising out of the lease as it considers fit.

(4) Without prejudice to subsections (1) to (3), the disclaimer of any property in a dwelling house does not take effect unless a copy of the disclaimer notice has been given, so far as the trustee is aware of their addresses, to every person in occupation of or claiming a right to occupy the dwelling house and either—

  *(a)* no application under section 362 is made with respect to the property before the end of a period of 14 days beginning with the day on which the last notice under this subsection was given; or

  *(b)* where such an application is made, the Court directs that the disclaimer is to take effect.

## Notice to trustee to elect whether to disclaim

**360.** (1) A person interested in property or whose rights would be effected by the disclaimer of property may, by serving a notice to elect on the trustee, require him or her to elect whether or not to disclaim the property.

(2) Where a notice to elect is served on a trustee, he or she is not entitled to disclaim the property under section 358 unless he or she does so within 28 days of the date of service of the notice on him or her or within such extended period as the Court may allow.

(3) The trustee is deemed to have adopted any contract which by virtue of this section he or she is not entitled to disclaim.

## Effect of disclaimer

**361.** (1) Subject to subsection (2), a disclaimer of onerous property under section 358—

> *(a)* operates so as to determine, with effect from the date of the disclaimer, the rights, interests and liabilities of the bankrupt and his or her estate in or in respect of the property disclaimed; and

> *(b)* discharges the trustee from all personal liability in respect of that property as from the date of his or her appointment, but, except so far as is necessary to release the bankrupt, the bankrupt's estate and the trustee from liability, does not affect the rights or liabilities of any other person.

(2) A notice of disclaimer shall not be given under section 358 in respect of any property that has been claimed for the estate under section 318 (after-acquired property) or 319 (personal property of bankrupt exceeding reasonable replacement value), except with the leave of the court.

(3) A person suffering loss or damage as a result of a disclaimer of onerous property under section 358 may claim in the bankruptcy of the bankrupt as a creditor for the amount of the loss or damage.

## Vesting orders and orders for delivery

**362.** (1) Subject to section 363, if a trustee disclaims onerous property under section 358, the Court may make an order under subsection (2) on the application of—

> *(a)* a person who claims an interest in the disclaimed property;

> *(b)* a person who is under a liability in respect of the disclaimed property, that has not been discharged by the disclaimer; or

> *(c)* where the disclaimed property is property in a dwelling house, any person who at the time when the bankruptcy order was made was in occupation of or entitled to occupy the dwelling house.

(2) On an application under subsection (1), the Court may, on such terms as it considers fit, order that the disclaimed property be vested in or delivered to—

> *(a)* a person entitled to the property;

194 *Insolvency Act*

*(b)* a person under a liability in respect of the property that has not been discharged by the disclaimer;

*(c)* a trustee for a person referred to in paragraph *(a)* or *(b)*; or

*(d)* where the disclaimed property is property in a dwelling house, any person who at the time when the bankruptcy order was made was in occupation of or entitled to occupy the dwelling house.

(3) The Court shall not make an order in respect of a person specified in subsection (2)*(b)*, or in respect of a trustee of such a person, unless it appears to the Court that it would be fair to do so for the purpose of compensating the person subject to the liability in respect of the disclaimer.

(4) The effect of any order under this section shall be taken into account in assessing the extent of the loss or damage suffered by a person for the purposes of section 361(3).

(5) Subject to subsection (6), where a vesting order is made under this section vesting property in a person, the property vests immediately without any conveyance, transfer or assignment. *(Amended by Act 11 of 2004)*

(6) Where another Virgin Islands enactment—

*(a)* requires the transfer of property vested by an order under this section to be registered; and

*(b)* that enactment enables the order to be registered, on the making of a vesting order, the property vests in equity but does not vest at law until the registration requirements of the enactment have been complied with.

## Vesting orders in respect of leases

**363.** (1) Where the Court makes an order under section 362 vesting property of a leasehold nature in a person, the vesting order shall be made on terms that make that person subject—

*(a)* to the same liabilities and obligations as the bankrupt was subject to under the lease on the date that the bankruptcy order was made; or

*(b)* to the same liabilities and obligations as that person would have been subject to if the lease had been assigned to him or her on that date.

(2) Where the property vested by an order under section 362 relates to only part of the property comprised in a lease, subsection (1) applies as if the lease comprised the property subject to the vesting order.

(3) Where no person is willing to accept a vesting order made subject to subsection (1), the Court, by order—

*(a)* may vest the property in any person who is liable, whether personally or in a representative capacity and whether alone or jointly with the bankrupt, to perform the lessee's covenants in the lease; and

26-10769-mg   Doc 77-2   Filed 06/05/26   Entered 06/05/26 16:53:44   Exhibit 2 -
Transcript of the Remote Deposition of Riz Mokal   Pg 710 of 991

LAW OF
VIRGIN ISLANDS                      *Insolvency Act*                                      195
Revision Date: 1 Jan 2020

(b) where a vesting order is made under paragraph *(a)*, may vest the property free from all estates, encumbrances and interests created by the bankrupt.

(4) Where a person declines to accept a vesting order made subject to subsection (1), he or she  is excluded from all interest in the property.

## Land subject to rentcharge

**364.** Where land subject to a rentcharge is disclaimed and that land vests by operation of law in any person, including the Crown, that person and his or her successors in title are not subject to any personal liability in respect of any sums becoming due under the rentcharge except sums becoming due after he or she, or some person claiming title under or through him or her, has taken possession or control of the land or has entered into occupation of it.

## Disclaimer presumed valid

**365.** Unless it is proved that a trustee has breached his or her duty to give notice under section 358(3) or that he or she has otherwise breached his or her duties under this Act or the Rules with regard to disclaimer, a disclaimer of property by the trustee is presumed to be valid and effective.

*Investigation of Bankrupt's Affairs*

## Statement of assets and liabilities

**366.** (1) Where a bankruptcy order has been made against an individual otherwise than on his or her own application, the bankrupt shall submit a verified statement of his or her assets and liabilities to his or her trustee within 21 days of the date of the bankruptcy order. *(Amended by Act 11 of 2004)*

(2) A statement of assets and liabilities shall contain—

(a) such particulars of the bankrupt's creditors and of his or her debts and other liabilities and of his or her assets as may be prescribed; and

(b) such other information as may be prescribed.

(3) A trustee or the Court may, in accordance with the Rules—

(a) release the bankrupt from his or her duty under subsection (1); or

(b) extend the period of time specified in that subsection.
*(Amended by Act 11 of 2004)*

(3A) Where the trustee considers that it would prejudice the conduct of the bankruptcy for the whole or part of a statement of assets and liabilities submitted to him or her to be disclosed, he or she may apply to the Court for an order of limited disclosure in respect of the statement, or any specified part of it. *(Inserted by Act 11 of 2004)*

(3B) The Court may, on an application under subsection (3A), order that the statement of assets and liabilities or, as the case may be, the specified part of it, is not filed in Court, or that it is filed separately and that it is not to be open to inspection otherwise than with the leave of the Court. *(Inserted by Act 11 of 2004)*

*Insolvency Act*

(4) A bankrupt who—

*(a)* fails to submit a statement of his or her assets and liabilities in accordance with subsection (1); or

*(b)* submits a statement of his or her assets and liabilities that does not comply with the prescribed requirements, commits an offence.

## Preliminary report

**367.** (1) The trustee of a bankrupt shall, within 60 days of the date of the bankruptcy order, prepare a preliminary report stating whether, in his or her opinion, further enquiry is desirable with respect to—

*(a)* whether the bankrupt has committed a bankruptcy offence;

*(b)* whether there are any claims under Part XIV;

*(c)* any matter relating to the conduct by the bankrupt of his or her business or affairs.

(2) The trustee shall send a copy of the report prepared under subsection (1) to the Official Receiver.

(3) Subsection (2) does not apply to the Official Receiver when he or she is acting as trustee.

(4) The Court may, on the application of the trustee, extend the period specified in subsection (1) on such terms and conditions as it considers fit.

## Duty of Official Receiver concerning report under section 367

**368.** Where the Official Receiver receives a report under section 367, he or she shall carry out such investigation, if any, as he or she considers appropriate. *(Amended by Act 11 of 2004)*

## Application for examination of bankrupt and others

**369.** (1) Where a bankruptcy order is made, an application may be made to the Court, *ex parte*, by the trustee or by the Official Receiver at any time before the discharge of the bankrupt for an order that a person specified in subsection (2) appears before the Court to be examined concerning the affairs, dealings and assets of the bankrupt.

(2) An application under subsection (1) may be made in respect of one or more of the following—

*(a)* the bankrupt;

*(b)* the bankrupt's spouse or former spouse;

*(c)* any person known or believed to be indebted to the bankrupt or to have in his or her possession any asset comprised in the bankrupt's estate; and

*(d)* any person appearing to the Court to be able to give information concerning the bankrupt or the bankrupt's dealings, affairs, assets or liabilities.

(3) The examination of a bankrupt may be held in public or in private but the examination of any other person shall be held in private.

(4) Unless the Court otherwise orders, the trustee shall make an application under subsection (1) in respect of the bankrupt if notice requiring him or her to do so is given to him or her , in accordance with the Rules, by not less than 50%, in value, of the creditors of the bankrupt.

## Order for examination

**370.** (1) In this section, "examinee" means the person to be examined before the Court.

(2) On hearing an application made under subsection 369, the Court may order the examinee to appear before the Court to be examined.

(3) An order under subsection (2)—

    *(a)* shall direct the examinee to appear before the Court to be examined at a venue specified in the order;

    *(b)* where the examinee is the bankrupt, shall state whether the examination is to be a public or a private examination;

    *(c)* may require the person concerned to produce at the examination any books, records or other documents in his or her possession or control that relate to the bankrupt or his or her dealings, affairs, liabilities or assets;

    *(d)* may provide for an alternative method of service of the order on the examinee;

    *(e)* shall state the action that may be taken against a person if he or she does not appear before the Court as required by the order; and

    *(f)* where the examination is to be a public examination, may require the examination to be advertised, specifying the method of such advertisement.

(4) Where the Court makes an order under subsection (2), the applicant shall, forthwith serve a sealed copy of the order on the examinee and, where the trustee is not the Official Receiver—

    *(a)* if the applicant is the trustee, send a sealed copy of the order to the Official Receiver; or

    *(b)* if the applicant is the Official Receiver, send a sealed copy of the order to the trustee.

*(Amended by Act 11 of 2004)*

(5) Where an order under subsection (2) is for the public examination of the bankrupt, the applicant shall give not less than 14 days notice of the examination to each creditor of the bankrupt.

(6) The Court may as part of an order made under this section, or at any subsequent time, make one or more of the following directions—

    *(a)* a direction specifying the matters upon which the examinee may be examined;

*(b)* a direction specifying the procedures to be followed at the examination; and

*(c)* in the case of an examinee referred to in section 369(2)*(b)*, *(c)* or *(d)* a direction that the examinee—

   (i) file with the Court an affidavit containing such matters as are specified by the Court, or

   (ii) produce at his or her examination any documents in his or her possession or under his or her control relating to the bankrupt's dealings, affairs, assets or liabilities.

## Conduct of examination

**371.** (1) This section applies to an examination held pursuant to an order made under section 370.

(2) An examinee shall be examined on oath, either orally or by interrogatories, and he or she shall answer such questions as the Court may put, or allow to be put to him or her.

(3) Subject to subsections (4) and (5), an examination is conducted by the applicant, or by his or her legal practitioner, and the person examined is entitled to be represented by a legal practitioner who may put such questions to the examinee as the Court may allow for the purpose of explaining or qualifying answers given by him or her.

(4) The examinee may also be examined—

   *(a)* if the applicant is the Official Receiver, by the trustee; or

   *(b)* if the applicant is the trustee, by the Official Receiver.

(5) At a public examination of the bankrupt, questions may, with the leave of the Court, be put to the examinee by any creditor present at the examination or by the legal practitioner representing such a creditor.

(6) An examination shall be recorded in writing and the  examinee  shall sign the record.

(7) Subject to section 372, the written record of an examination is admissible in evidence in any proceedings under this Act.

## Examinee shall answer questions put to him or her

**372.** (1) An examinee is not excused from answering a question put to him or her at an examination held pursuant to an order made under section 370 on the ground that the answer may incriminate him or her or tend to incriminate him or her.

(2) Notwithstanding subsection (1), the record of an examination held pursuant to an order made under section 370 is not admissible as evidence in any criminal proceedings against the examinee except where he or she is charged with the offence of perjury.

### Examinee failing to appear for his or her examination

**373.** (1) Where a person without reasonable excuse fails to attend an examination ordered to be held under section 370, or there are reasonable grounds for believing that the examinee has absconded, or is about to abscond, with a view to avoiding or delaying his or her examination, the Court may issue a warrant to a police officer or a prescribed officer of the Court—

>    *(a)* for the arrest of that person; and

>    *(b)* for the seizure of any books, papers, records, money or goods in that person's possession.

(2) The Court may authorise a person arrested under a warrant issued under subsection (1) to be kept in custody, and anything seized under such a warrant to be held, in accordance with the Rules, until that person is brought before the Court under the warrant or until such other time as the Court may order.

(3) A person who fails to attend an examination ordered to be held under section 370 commits an offence.

### Court's enforcement powers

**374.** (1) If it appears to the Court, on consideration of any evidence obtained under section 371, 373 or this section, that any person has in his or her possession any assets comprised in the bankrupt's estate, the Court may, on the application of the trustee, order that person to deliver the assets or any of them to the trustee at such time, in such manner and on such terms as the Court considers fit.

(2) If it appears to the Court, on consideration of any evidence obtained under section 371, 373 or this section, that any person is indebted to the bankrupt, the Court may, on the application of the trustee, order that person to pay the trustee, at such time and in such manner as the Court may direct, the whole or part of the amount due, whether in full discharge of the debt or otherwise as the Court thinks fit. *(Amended by Act 11 of 2004)*

(3) The Court may order that any person who, if within the jurisdiction of the Court, would be liable to be examined pursuant to an order made under section 370 shall be examined in the Virgin Islands or any place outside the Virgin Islands.

*Discharge and Annulment of Bankruptcy*

### Bankrupt ineligible for automatic discharge

**375.** (1) For the purposes of section 376, a bankrupt is ineligible for automatic discharge if—

>    *(a)* he or she has been an undischarged bankrupt at any time in the 10 years prior to the date of the bankruptcy order; or

>    *(b)* he or she has been convicted of a bankruptcy offence.

(2) Where a previous bankruptcy order made against a person has been annulled under section 382, the period during which that person was an

undischarged bankrupt by virtue of that bankruptcy order shall be ignored for the purposes of subsection (1)*(a)*.

## Automatic discharge

**376.** (1) Subject to subsection (2), a bankrupt is discharged from bankruptcy at the end of the period of 3 years commencing on the date of the bankruptcy order unless—

(a) he or she is ineligible for automatic discharge by virtue of section 375; or

(b) he or she has previously been discharged under section 379(1)*(b)* or *(c)*.

(2) On the application of a person specified in subsection (3), the Court may, on the grounds specified in subsection (4)—

(a) extend the period referred to in subsection (1);

(b) order that the period will cease to run until the fulfilment of such conditions as it may specify; or

(c) order that the bankrupt is not entitled to automatic discharge.

(3) An application under subsection (2) may be made on the application of the Official Receiver or the trustee of the bankrupt.

(4) The Court may—

(a) make an order under subsection (2)*(a)* or *(b)* if it is satisfied that the bankrupt has failed or is failing to comply with any of his or her obligations under this Act or the Rules; or

(b) make an order under subsection (2)*(c)* on any of the grounds upon which it could refuse to discharge the bankrupt under section 379.

(5) An application under subsection (2)—

(a) shall be made before the bankrupt has been discharged under subsection (1); and

(b) when made, operates to suspend the period referred to in subsection (1) until after the determination of the application by the Court.

(6) The Court may not, by an order made under section 496(1), permit an application to be made under subsection (2) after the discharge of a bankrupt under subsection (1).

## Application by bankrupt concerning order for suspension of discharge

**377.** (1) Where the Court has made an order under section 376(2)*(b)* that the period for automatic discharge will cease to run, the bankrupt may apply to the Court for the order to be varied or discharged.

(2) On an application made under subsection (1), the Court may vary or discharge its order.

## Application for discharge by Court order

**378.** (1) A bankrupt may apply to the Court for his or her discharge—

    *(a)* where he or she is ineligible for automatic discharge or where the Court has made an order under section 376(2)*(c)* that he or she  is not entitled to automatic discharge, at any time after 3 years from the date of the bankruptcy order; or

    *(b)* in any other case, at any time after 6 months from the date of the bankruptcy order.

(2) An application under subsection (1) shall be served on—

    *(a)* the Official Receiver; and

    *(b)* his or her trustee, if not the Official Receiver, not less than 42 days before the date fixed for the hearing.

## Court order on application for discharge

**379.** (1) Subject to subsection (3), on an application under section 378, the Court may—

    *(a)* refuse the application;

    *(b)* make an order discharging the bankrupt absolutely; or

    *(c)* make an order discharging the bankrupt subject to such conditions as it considers fit, including conditions with respect to—

        (i) any income which may subsequently become due to him or her; or

        (ii) any assets that may devolve on him or her or be acquired by him or her after his or her discharge.
                        *(Amended by Act 11 of 2004)*

(2) An order under subsection (1)*(c)* may be made with immediate effect or may be made effective after such period or until the fulfilment of such conditions as may be specified in the order.

(3) Where an application is made under section 378 more than 8 years after the date of the bankruptcy order, the Court shall not refuse the application unless it is satisfied that there are exceptional reasons for not granting the bankrupt his or her discharge. *(Amended by Act 11 of 2004)*

(4) Subject to subsection (3), the Court may refuse to grant a bankrupt his or her discharge if—

    *(a)* the bankrupt has failed or is failing to comply with his or her obligations under this Act or the Rules;

    *(b)* the bankrupt has, after the date of the bankruptcy order, engaged in a prohibited activity within the meaning of section 260(3);

    *(c)* the bankrupt has been convicted of a bankruptcy offence;

    *(d)* the bankrupt has failed, whether intentionally or not, to disclose to his or her trustee particulars of—

        (i) any of his or her assets;

(ii) any liability existing at the date of the bankruptcy order; or

(iii) any income or expected income;

(e) where the bankrupt has been engaged in any business for any of the period of 3 years prior to the date of the bankruptcy order, or she has—

(i) failed to keep such books and accounts as would sufficiently disclose his or her business transactions and financial position whilst engaged in his or her business; or

(ii) having kept the books and accounts referred to in subparagraph (i), he or she has failed to preserve them;

(f) the bankrupt continued to trade after knowing, or having reason to believe himself or herself to be unable to pay his or her debts as they fell due;

(g) the bankrupt contracted any liability that is claimable in his or her bankruptcy without having at the time of contracting it any reasonable expectation that he or she would be able to discharge it;

(h) that the bankrupt, either before or after the bankruptcy order, has committed any fraud or breach of trust;

(i) that the bankrupt has entered into a voidable transaction within the meaning of section 400; or

(j) for any other reason it considers it appropriate to do so.
*(Amended by Act 11 of 2004)*

**Effect of discharge**

**380.** (1) Subject to this section, where a bankrupt is discharged, the discharge releases him or her from all debts claimable in the bankruptcy, but has no effect—

(a) on the functions, so far as they remain to be carried out, of the trustee; or

(b) on the operation, for the purposes of the carrying out of those functions, of the provisions of this Act.

(2) The discharge of a bankrupt does not affect the right—

(a) of any creditor of the bankrupt to claim in the bankruptcy for any debt from which the bankrupt is released; or *(Amended by Act 11 of 2004)*

(b) of any secured creditor of the bankrupt to enforce his or her security interest for the payment of a debt from which the bankrupt is released.

(3) The discharge of a bankrupt does not release the bankrupt from—

(a) a liability incurred by means of a fraud or fraudulent breach of trust to which the bankrupt was a party or a liability of which he or she has obtained forbearance by fraud;

*(b)* a liability under a recognizance; or

*(c)* a liability in respect of a fine imposed for an offence.

(4) Except to such extent and subject to such conditions as the Court may otherwise order, the discharge of a bankrupt does not release the bankrupt from—

*(a)* a liability under a maintenance agreement or maintenance order or arrears payable under such an agreement or order;

*(b)* a liability to pay damages for negligence, nuisance or breach of a statutory, contractual or other duty, being damages in respect of personal injuries to any person; or

*(c)* such other liabilities, not being liabilities that may be claimed in the bankruptcy, as may be prescribed.

(5) The discharge of a bankrupt does not release any person other than the bankrupt from any liability, whether as partner or co-trustee of the bankrupt or otherwise, from which the bankrupt is released by the discharge, or from any liability as surety for the bankrupt or as a person in the nature of such a surety.

(6) In subsection (4), "personal injuries" includes death and any disease or other impairment of a person's physical or mental condition.

## Discharged bankrupt to give assistance

**381.** (1) A discharged bankrupt shall, even though discharged, give such assistance as his or her trustee reasonably requires in the realisation and distribution of such of his or her assets as are vested in his or her trustee.

(2) A discharged bankrupt who contravenes subsection (1) commits an offence.

## Annulment of bankruptcy order

**382.** (1) The Court may annul a bankruptcy order if at any time it appears to the court—

*(a)* that, on any grounds existing at the time the order was made, the order ought not to have been made; or

*(b)* that, to the extent required by this Act and the Rules, the claims made in the bankruptcy and the expenses of the bankruptcy have all, since the making of the order, been either paid or secured for to the satisfaction of the Court.

(2) The Court may annul a bankruptcy order whether or not the bankrupt has been discharged.

(3) Where the court annuls a bankruptcy order—

*(a)* any sale or other disposition of assets, payment made or other thing done, under any provision in this Part, by or under the authority of the trustee or by the Court is valid; but

*(b)* if any of the bankrupt's estate is then vested, under any such provision, in such a trustee, it shall vest in such person as the

Court may appoint or, in default of any such appointment, revert to the bankrupt on such terms, if any, as the court may direct.

(4) The Court may, in an order made under subsection (2), include such supplemental provisions as may be authorised by the Rules.

(5) The trustee shall vacate office if the bankruptcy order is annulled.

## Release of trustee

**383.** (1) Where the Official Receiver ceases to be the trustee of a bankrupt's estate and another person is appointed trustee in his or her place, the Official Receiver obtains his or her release—

*(a)* from the appointment of the new trustee; or

*(b)* such later date as the Court may determine.

(2) If the Official Receiver, while he or she is the trustee, gives notice to the Court that the administration of the bankrupt's estate in accordance with this Part is for practical purposes complete, he or she  obtains his or her release with effect from such time as the Court may determine.

(3) A person other than the Official Receiver who ceases to be trustee may apply to the Court for his or her release and the Court may grant the release unconditionally or subject to such conditions as it considers fit, or withhold it.

(4) If the Court withholds the release it may make an order against the former trustee under section 384.

(5) Where a bankruptcy order is annulled, the trustee at the time of the annulment has his or her release with effect from such time as the Court may determine.

(6) Subject to subsection (7), where a former trustee is released under this section, he or she is discharged from all liability in respect of any act or default of his or hers in relation to the administration of the estate and otherwise in relation to his or her conduct as trustee.

(7) Subsection (6) does not prevent the Court from making an order under section 384 against a trustee who has been released under this section.

(8) A trustee, other than the Official Receiver, who obtains his or her release under this section shall file a notice in the prescribed form with the Official Receiver.

## Liability of trustee

**384.** (1) Where on an application under this section the Court is satisfied—

*(a)* that the trustee of a bankrupt's estate has misapplied or retained, or become accountable for, any money or other assets comprised in the bankrupt's estate; or

*(b)* that a bankrupt's estate has suffered any loss in consequence of any misfeasance or breach of fiduciary or other duty by a trustee of the estate in the carrying out of his or her functions, the Court may order the trustee, for the benefit of the estate, to repay, restore or account for money or other assets, together with interest at such rate as the Court considers just, or, as the case may

require, to pay such sum by way of compensation in respect of the misfeasance or breach of fiduciary or other duty as the Court considers just.

(2) Subject to subsection (3), an application under this section may be made by the Official Receiver, a creditor of the bankrupt or, whether or not there is, or is likely to be, a surplus for the purposes of section 348, the bankrupt himself or herself.

(3) The leave of the Court is required for the making of an application under this section if it is to be made by the bankrupt or if it is to be made after the trustee has had his or her release under section 383.

(4) Where—

(a) the trustee seizes or disposes of any asset which is not comprised in the bankrupt's estate; and

(b) at the time of the seizure or disposal the trustee believes, and has reasonable grounds for believing, that he or she is entitled, whether pursuant to an order of the court or otherwise, to seize or dispose of that asset, the trustee is not liable to any person, whether under this section or otherwise, in respect of any loss or damage resulting from the seizure or disposal except in so far as that loss or damage is caused by negligence of the trustee and the trustee has a lien on the asset, or the proceeds of its sale, for such of the expenses of the bankruptcy as were incurred in connection with the seizure or disposal.

(5) Subsection (1) does not prevent any person from instituting any other proceedings in relation to matters in respect of which an application can be made under that subsection.

*Second or Subsequent Bankruptcy*

### Stay of distribution in case of second bankruptcy

**385.** (1) This section and section 386 apply where a bankruptcy order is made against an undischarged bankrupt and in both sections—

"earlier bankruptcy" means the bankruptcy, or the most recent bankruptcy, from which the bankrupt has not been discharged at the time when the later bankruptcy commences;

"later bankruptcy" means the bankruptcy arising from the bankruptcy order made against an undischarged bankrupt; and

"existing trustee" means the trustee, if any, of the bankrupt's estate for the purposes of the earlier bankruptcy.

(2) Where the existing trustee has been given notice of the application for the later bankruptcy, any distribution or other disposition by him or her of any asset to which subsection (3) applies made after the giving of the notice is void except to the extent that it was made with the consent of the Court or is or was subsequently ratified by the Court.

(3) Subsection (2) applies to—

*Insolvency Act*

*(a)* any asset which is vested in the existing trustee under section 318;

*(b)* any money paid to the existing trustee pursuant to an income payments order under section 322; and

*(c)* any asset or money which is, or in the hands of the existing trustee represents, the proceeds of sale or application of an asset or money falling within paragraphs *(a)* or *(b)*.

## Adjustment between earlier and later bankruptcy estates

**386.** (1) With effect from the commencement of the later bankruptcy any asset to which section 385(3) applies which, immediately before the commencement of that bankruptcy, is comprised in the bankrupt's estate for the purposes of the earlier bankruptcy is to be treated as comprised in the bankrupt's estate for the purposes of the later bankruptcy.

(2) Any sum which in pursuance of an income payments order made under section 322 is payable after the commencement of the later bankruptcy to the existing trustee shall form part of the bankrupt's estate for the purposes of the later bankruptcy and the court may give such consequential directions for the modification of the order as it considers fit.

(3) Anything comprised in a bankrupt's estate by virtue of subsections (1) or (2) is so comprised subject to a first charge in favour of the existing trustee for his or her remuneration or any bankruptcy expenses incurred by him or her in relation thereto.

(4) Except as provided in this section and in section 385, any asset which is, or by virtue of section 319 is capable of being, comprised in the bankrupt's estate for the purposes of the earlier bankruptcy, or of any bankruptcy prior to it, is not comprised in his or her estate for the purposes of the later bankruptcy.

(5) The creditors of the bankrupt in the earlier bankruptcy and the creditors of the bankrupt in any bankruptcy prior to the earlier bankruptcy, are not to be creditors of his or hers in the later bankruptcy in respect of the same liabilities but the existing trustee may claim in the later bankruptcy for—

*(a)* the unsatisfied balance of the liabilities, including any liability under this subsection, claimable against the bankrupt's estate in the earlier bankruptcy;

*(b)* any interest payable on that balance; and

*(c)* any unpaid expenses of the earlier bankruptcy.

(6) Any amount claimable under subsection (5) ranks in priority after all the other claims admitted in the later bankruptcy and after interest on those claims and, accordingly, shall not be paid unless those claims and that interest have first been paid in full.

PART XIII

BANKRUPTCY OFFENCES

## Definitions

**387.** In this Part—

(a) references to assets comprised in the bankrupt's estate or to assets possession of which is required to be delivered up to the trustee include any assets specified in section 313;

(b) "initial period" means the period between the filing of the application for the bankruptcy order and the commencement of the bankruptcy; and

(c) a reference to a number of months or years before the application is to that period ending with the filing of the application for the bankruptcy order.

## Defence of innocent intention

**388.** (1) Subject to subsection (2), the bankrupt does not commit a bankruptcy offence if he or she proves that, at the time of the conduct constituting the offence, he or she had no intent to defraud or to conceal the state of his or her affairs.

(2) Subsection (1) does not apply to sections 390(1)*(e)*, 392*(b)*, 392*(c)*, 392*(d)*, 392*(e)*, 396(1), 397 and 398.

## Non-disclosure

**389.** (1) The bankrupt commits an offence if—

(a) he or she does not to the best of his or her knowledge and belief disclose all the assets comprised in his or her estate to the trustee; or

(b) he or she does not inform the trustee of any disposal of any assets which, but for the disposal, would be so comprised, stating how, when, to whom and for what consideration the asset was disposed of.

(2) Subsection (1)*(b)* does not apply to any disposal in the ordinary course of a business carried on by the bankrupt or to any payment of the ordinary expenses of the bankrupt or his or her family.

## Concealment of assets

**390.** The bankrupt commits an offence if—

(a) he or she does not deliver up possession to the trustee, or as the trustee may direct, those assets comprised in his or her estate as are in his or her possession or under his or her control of which he or she is required by law so to deliver up;

(b) he or she conceals any debt due to or from him or her or conceals any asset, the value of which is not less than the prescribed

amount and possession of which he or she is required to deliver up to the trustee;

(c) in the 12 months before the application, or in the initial period, he or she did anything which would have been an offence under paragraph *(b)* if the bankruptcy order had been made immediately before he or she did it;

(d) or she removes, or in the initial period removed, any asset the value of which was not less than the prescribed amount and possession of which he or she is or would have been required to deliver up to the trustee; or

(e) he or she without reasonable excuse fails, on being required to do so by the Official Receiver or the Court—

   (i) to account for the loss of any substantial part of his or her assets incurred in the 12 months before the application or in the initial period; or

   (ii) to give a satisfactory explanation of the manner in which such a loss was incurred.

## Concealment of books and papers; falsification

391.  The bankrupt commits an offence if—

(a) he or she does not deliver up possession to the trustee, or as the trustee may direct, of all documents in his or her possession or control which relate to his or her estate or his or her affairs;

(b) he or she prevents, or in the initial period prevented, the production of any documents relating to his or her estate or affairs;

(c) he or she conceals, destroys, mutilates or falsifies, or causes or permits the concealment, destruction, mutilation or falsification of, any documents relating to his or her estate or affairs;

(d) he or she makes, or causes or permits the making of, any false entries in any documents relating to his or her estate or affairs;

(e) he or she disposes of, or alters or makes any omission in or causes or permits the disposal, altering or making of any omission in, any document relating to his or her estate or affairs; or

(f) in the 12 months before the application, or in the initial period, he or she did anything which would have been an offence under paragraph *(c)*, *(d)* or *(e)* if the bankruptcy order had been made before he or she did it.

## False statements

392.  The bankrupt commits an offence if—

(a) he or she makes any false statement or any material omission in any statement made under this Act relating to his or her affairs;

(b) knowing or believing that a false claim has been made by any person under the bankruptcy, he or she fails to inform the trustee as soon as practicable;

(c) he or she attempts to account for any part of his or her assets by fictitious losses or expenses;

(d) at any meeting of his or her creditors in the 12 months before the application or, whether or not at such a meeting, at any time in the initial period, he or she did anything which would have been an offence under paragraph (c) if the bankruptcy order had been made before he or she did it; or

(e) he or she is, or at any time has been, guilty of any false representation or other fraud for the purposes of obtaining the consent of his or her creditors, or any of them, to an agreement with reference to his or her affairs or to his or her bankruptcy.

### Fraudulent disposal of assets

**393.** (1) The bankrupt commits an offence if—

(a) he or she makes or causes to be made, or has during the period of 5 years prior to the date of the bankruptcy order made or caused to be made, any gift or transfer of, or any charge on, his or her assets; or

(b) he or she conceals or removes, or has at any time before the commencement of the bankruptcy, concealed or removed, any of his or her assets after, or within 60 days before, the date on which a judgement or order for the payment of money has been obtained against him or her, being a judgement or order which was not satisfied before the commencement of the bankruptcy.

(2) The reference in subsection (1) to making a transfer of or a charge on any asset includes causing or conniving at the levying of any execution against that asset.

### Absconding

**394.** The bankrupt commits an offence if—

(a) he or she leaves, or attempts or makes preparations to leave the Virgin Islands with any assets the value of which is not less than the prescribed amount and possession of which he or she is required to deliver up to the Official Receiver or the trustee; or

(b) in the 6 months before the application, or in the initial period, he or she did anything which would have been an offence under paragraph (a) if the bankruptcy order had been made immediately before he or she did it.

### Fraudulent dealing with asset obtained on credit

**395.** (1) The bankrupt commits an offence if, in the 12 months before the application, or in the initial period, he or she disposed of any asset which he or

she had obtained on credit and, at the time he or she disposed of it, had not paid for.

(2) A person commits an offence if, in the 12 months before the application, or in the initial period, he or she acquired or received an asset from the bankrupt knowing or believing—

    *(a)* that the bankrupt owed money in respect of the asset; and

    *(b)* that the bankrupt did not intend, or was unlikely to be able, to pay the money so owed.

(3) A person does not commit an offence under subsection (1) or (2) if the disposal, acquisition or receipt of the asset was in the ordinary course of a business carried on by the bankrupt at the time of the disposal, acquisition or receipt.

(4) In determining for the purposes of this section whether any asset is disposed of, acquired or received in the ordinary course of a business carried on by the bankrupt, regard may be had, in particular, to the price paid for the asset.

(5) In this section, references to disposing of an asset include pawning or pledging it and references to acquiring or receiving an asset shall be read accordingly.

## Obtaining credit: engaging in business

**396.** (1) The bankrupt commits an offence if—

    *(a)* either alone or jointly with any other person, he or she obtains credit to the extent of the prescribed amount or more without informing the person from whom he or she obtains credit that he or she is an undischarged bankrupt; *(Amended by Act 11 of 2004)*

    *(b)* he or she engages, whether directly or indirectly, in any business under a name other than that in which he or she was made bankrupt without disclosing to all persons with whom he or she enters into any business transaction the name under which he or she was made bankrupt.

(2) The reference to the bankrupt obtaining credit includes the following cases—

    *(a)* where goods are billed to him or her under a hire-purchase agreement, or agreed to be sold to him or her under a conditional sale agreement; and

    *(b)* where he or she is paid in advance, whether in money or otherwise, for the supply of goods and services.

## Failure to keep proper accounts of business

**397.** (1) Where the bankrupt has been engaged in any business for any of the period of 2 years before the application, he or she commits an offence if he or she—

    *(a)* has not kept proper accounting records throughout that period and throughout any part of the initial period in which he or she was so engaged; or

(b) has not preserved all the accounting records which he or she has kept.

(2) The bankrupt does not commit an offence under subsection (1)—

(a) if his or her unsecured liabilities at the commencement of the bankruptcy did not exceed the prescribed amount; or

(b) if he or she proves that in the circumstances in which he or she carried on business the omission was honest and excusable.

(3) For the purpose of this section, a person is deemed not to have kept proper accounting records if he or she has not kept such records as are necessary to show or explain his or her transactions and financial position in his or her business, including—

(a) records containing entries from day to day, in sufficient detail, of all cash paid and received;

(b) where the business involves dealing in goods, statements of annual stock-takings; and

(c) except in the case of goods sold by way of retail trade to the actual customer, records of all goods sold and purchased showing the buyers and sellers in sufficient detail to enable the goods and the buyers and sellers to be identified.

## Gambling

**398.** (1) The bankrupt commits an offence if he or she has—

(a) in the 2 years before the application, materially contributed to, or increased the extent of, his or her insolvency by gambling or by rash and hazardous speculations; or

(b) in the initial period, lost any of his or her assets by gambling or by rash and hazardous speculations.

(2) In determining for the purposes of this section whether any speculations were rash and hazardous, the financial position of the bankrupt at the time when he or she entered into them shall be taken into consideration.

## Supplementary provisions

**399.** (1) Proceedings for a bankruptcy offence may not be instituted after the annulment of the bankruptcy.

(2) Without limiting the liability of a bankrupt in respect of a subsequent bankruptcy, the bankrupt does not commit an offence under this Part in respect of anything done after his or her discharge but nothing in this Act prevents the institution of proceedings against a discharged bankrupt for an offence committed before his or her discharge.

(3) It is not a defence in proceedings for an offence under this Part that anything relied on, in whole or in part, as constituting that offence was done outside the Virgin Islands.

212 *Insolvency Act*  LAW OF
VIRGIN ISLANDS
Revision Date: 1 Jan 2020

PART XIV

VOIDABLE TRANSACTIONS

## Interpretation for this Part

**400.** (1) In this Part—

"debtor" means the individual against whom a bankruptcy order is made;

"insolvent bankruptcy" means a bankruptcy where the assets comprised in the bankrupt's estate are insufficient to pay his or her liabilities and the expenses of the bankruptcy;

"insolvency transaction" has the meaning specified in subsection (2);

"onset of insolvency" means the date on which the application for a bankruptcy order was filed;

"voidable transaction" means—

*(a)* an unfair preference;

*(b)* an undervalue transaction;

*(c)* a voidable general assignment of book debts; or

*(d)* an extortionate credit transaction;

"vulnerability period" means—

*(a)* for the purposes of sections 401, 402 and 403—

(i) in the case of a transaction entered into with, or a preference given to, a connected person, the period commencing 2 years prior to the onset of insolvency and ending on the date of the bankruptcy order; and

(ii) in the case of a transaction entered into with, or a preference given to, any other person, the period commencing 6 months prior to the onset of insolvency and ending on the date of the bankruptcy order; and

*(b)* for the purposes of section 404, the period commencing 5 years prior to the onset of insolvency and ending on the date of the bankruptcy order;

(2) A transaction is an insolvency transaction if—

*(a)* it is entered into at a time when the debtor is insolvent; or

*(b)* it causes the debtor to become insolvent.

(3) For the purposes of subsection (2), an individual is insolvent if he or she is unable to pay his or her debts as they fall due for payment. *(Amended by Act 11 of 2004)*

(4) This Part applies in respect of an individual only if a bankruptcy order is made against him or her.

## Unfair preferences

**401.** (1) Subject to subsection (2), a transaction entered into by an individual is an unfair preference given by the individual to a creditor if the transaction—

(a) is an insolvency transaction;

(b) is entered into within the vulnerability period; and

(c) has the effect of putting the creditor into a position which, in the event of the individual becoming a bankrupt, will be better than the position he or she would have been in if the transaction had not been entered into.

(2) A transaction is not an unfair preference if the transaction took place in the ordinary course of business.

(3) A transaction may be an unfair preference notwithstanding that it is entered into pursuant to the order of a Court or tribunal in or outside the Virgin Islands.

(4) Where a transaction entered into by an individual within the vulnerability period has the effect specified in subsection (1)*(c)* in respect of a creditor who is a connected person, unless the contrary is proved, it is presumed that the transaction was an insolvency transaction and that it did not take place in the ordinary course of business.

## Undervalue transactions

**402.** (1) Subject to subsection (2), an individual enters into an undervalue transaction with a person if—

(a) he or she makes a gift to that person or otherwise enters into a transaction with that person on terms that provide for him or her to receive no consideration; or

(b) he or she enters into a transaction with that person for a consideration the value of which, in money or money's worth, is significantly less than  the value, in money or money's worth, of the consideration provided by him or her; and

(c) in either case, the transaction concerned—

 (i)  is an insolvency transaction; and

 (ii)  is entered into within the vulnerability period.

(2) An individual does not enter into an undervalue transaction with a person if—

(a) the individual enters into the transaction in good faith and for the purposes of his or her business; and

(b) at the time when he or she enters into the transaction, there were reasonable grounds for believing that the transaction would benefit him or her.

(3) A transaction may be an undervalue transaction notwithstanding that it is entered into pursuant to the order of a court or tribunal in or outside the Virgin Islands.

214 *Insolvency Act*

(4) Where an individual enters into a transaction with a connected person within the vulnerability period and the transaction falls within subsection (1)*(a)* or subsection (1)*(b)*, unless the contrary is proved, it is presumed that—

    *(a)* the transaction was an insolvency transaction; and

    *(b)* subsection (2) did not apply to the transaction.

### Voidable general assignment of book debts

**403.** (1) This section applies where an individual engaged in any business makes a general assignment to another of his or her existing or future book debts, or any class of them, and a bankruptcy order is subsequently made against him or her.

(2) The assignment is voidable as regards book debts which were not paid before the filing of the application for the bankruptcy order, unless the assignment has been registered under the Bills of Sale Act.

(3) For the purposes of subsections (1) and (2)—

    *(a)* "assignment" includes an assignment by way of security or charge on book debts; and

    *(b)* "general assignment" does not include—

        (i) an assignment of book debts due at the date of the assignment from specified debtors or of debts becoming due under specified contracts; or

        (ii) an assignment of book debts included either in a transfer of a business made in good faith and for value or in an assignment of assets for the benefit of creditors generally.

(4) For the purposes of registration under the Bills of Sale Act, an assignment of book debts is to be treated as if it were a bill of sale given otherwise by way of security for the payment of a sum of money; and the provisions of that Act with respect to the registration of bills of sale apply accordingly with such necessary modifications as may be made by rules under that Act.

### Extortionate credit transactions

**404.** A transaction entered into by an individual within the vulnerability period for, or involving the provision of, credit to him or her is an extortionate credit transaction if, having regard to the risk accepted by the person providing the credit—

    *(a)* the terms of the transaction are or were such as to require grossly exorbitant payments to be made (whether unconditionally or in certain contingencies) in respect of the provision of credit; or

    *(b)* the transaction otherwise grossly contravenes ordinary principles of fair trading.

## Orders in respect of voidable transactions

**405.** (1) Subject to section 406, where it is satisfied that a transaction entered into by an individual is a voidable transaction the Court, on the application of the bankruptcy trustee of the individual—

*(a)* may make an order setting aside the transaction in whole or in part;

*(b)* in respect of an unfair preference or an undervalue transaction, may make such order as it considers fit for restoring the position to what it would have been if the bankrupt had not entered into that transaction; and

*(c)* in respect of an extortionate credit transaction, may by order provide for any one or more of the following—

(i) the variation of the terms of the transaction or the terms on which any security interest for the purposes of the transaction is held;

(ii) the payment by any person who is or was a party to the transaction to the trustee of any sums paid by the bankrupt to that person by virtue of the transaction;

(iii) the surrender by any person to the trustee of any asset held by him or her as security for the purposes of the transaction; and

(iv) the taking of accounts between any persons.

(2) Without prejudice to the generality of subsection (1)*(b)*, an order under that paragraph may—

*(a)* require any asset transferred as part of the transaction to be vested in the trustee;

*(b)* require any asset to be vested in the trustee if it represents in any person's hands the application either of the proceeds of sale of an asset transferred or of money transferred, in either case as part of the transaction;

*(c)* release or discharge, in whole or in part, any security interest given by the bankrupt or the liability of the bankrupt under any contract;

*(d)* require any person to pay, in respect of benefits received by him or her from the bankrupt, such sums to the trustee as the Court may direct;

*(e)* provide for any surety or guarantor whose obligations to any person were released or discharged, in whole or in part, under the transaction, to be under such new or revived obligations to that person as the Court considers appropriate;

*(f)* provide for security to be provided for the discharge of any obligation imposed by or arising under the order, for such an obligation to be charged on any asset and for the security interest or charge to have the same priority as a security interest or charge released or discharged, in whole or in part, under the transaction;

216      *Insolvency Act*      **LAW OF VIRGIN ISLANDS**
Revision Date: 1 Jan 2020

*(g)* provide for a person affected by an order made under subsection (1) to claim in the bankruptcy of the bankrupt in such amount as the Court considers fit; and *(Amended by Act 11 of 2004)*

*(h)* require the bankrupt or trustee to make a payment or transfer an asset to any person affected by an order made under subsection (1). *(Amended by Act 11 of 2004)*

(3) Subject to section 406, in respect of an unfair preference or an undervalue transaction, an order under subsection (1) may affect the assets of, or impose any obligation on, any person whether or not he or she is the person with whom the bankrupt entered into the transaction. *(Amended by Act 11 of 2004)*

## Limitations on orders under section 405

**406.** (1) This section applies to an order made under section 405(1) in respect of an unfair preference or an undervalue transaction.

(2) An order to which subsection (1) applies shall not—

*(a)* prejudice any interest in an asset that was acquired in good faith and for value from a person other than the bankrupt, or prejudice any interest deriving from such an interest; or

*(b)* require a person who received a benefit from the transaction in good faith and for value to pay a sum to the trustee, except where that person was a party to the transaction or, in respect of an unfair preference, the preference was given to that person when he or she was a creditor of the bankrupt.

(3) For the purposes of subsection (2), where a person would, apart from the requirement for good faith, fall within the circumstances specified in paragraph *(a)* or *(b)*, it is presumed, unless the contrary is proved, that he or she acquired the interest or received the benefit in good faith.

(4) Subsection (3) does not apply to a person—

*(a)* who, at the time of the transaction, had notice of—

(i) the fact that the transaction was an unfair preference or an undervalue transaction, as the case may be; or

(ii) the relevant proceedings as defined in subsection (5); or

*(b)* who was, at the time of the transaction, a connected person.

(5) For the purposes of subsection (4), a person has notice of the relevant proceedings if he or she had notice of the application on which the bankruptcy order was made. *(Amended by Act 11 of 2004)*

## Recoveries

**407.** Any money paid to, asset recovered or other benefit received by the trustee as a result of an order made under section 405 is deemed to be an asset comprised in the bankrupt's estate that is available to pay his or her unsecured creditors.

26-10769-mg    Doc 77-2    Filed 06/05/26    Entered 06/05/26 16:53:44    Exhibit 2 -
Transcript of the Remote Deposition of Riz Mokal    Pg 732 of 991

LAW OF
VIRGIN ISLANDS                          *Insolvency Act*                          217
Revision Date: 1 Jan 2020

## Remedies not exclusive

**408.** The provisions of this Part apply without prejudice to the availability of any other remedy.

PART XV

BANKRUPTCY RESTRICTIONS ORDERS AND UNDERTAKINGS

## Interpretation for this Part

**409.** In this Part—

"restricted person" means a person—

   *(a)* against whom a bankruptcy restrictions order or an interim order has effect; or

   *(b)* in respect of whom a bankruptcy restrictions undertaking is in place;

"voluntary liquidator" means—

   *(a)* a liquidator appointed by the directors or members of an international business company under Part XII of the BVI Business Companies Act; or

   *(b)* a voluntary liquidator within the meaning specified in section 2 of the BVI Business Companies Act.
   *(Substituted by Act 16 of 2004)*

## Bankruptcy restrictions orders and undertakings

**410.** (1) A bankruptcy restrictions order is an order that an individual shall not, for the period specified in the order, engage in a prohibited activity without the leave of the Court.

(2) A bankruptcy restrictions undertaking is an undertaking in writing given by an individual to the Official Receiver that he or she will not, for the period specified in the undertaking, engage in a prohibited activity without the leave of the Court.

(3) For the purpose of this Part, an individual engages in a prohibited activity if—

   *(a)* he or she is a director of a company;

   *(b)* he or she acts as the voluntary liquidator of a company;

   *(c)* he or she acts as the receiver of the assets of a company;

   *(d)* he or she acts as an insolvency practitioner;

   *(e)* in any way, whether directly or indirectly, he or she is concerned with or takes part in the promotion, formation or management of a company; or

   *(f)* he or she undertakes any activity prescribed as a prohibited activity.

218 *Insolvency Act*

## Application for and hearing of application for bankruptcy restrictions order

**411.** (1) The Official Receiver may apply to the Court for a bankruptcy restrictions order against a bankrupt.

(2) On an application under subsection (1), the Court may, make a bankruptcy restrictions order against a bankrupt where it considers it appropriate having regard to the conduct of the bankrupt, whether before or after the making of the bankruptcy order against him or her.

(3) Without limiting subsection (3), the Court shall in particular take into account—

(a) any behaviour of the bankrupt that constitutes a bankruptcy offence, whether or not the bankrupt has been convicted of the offence; and

(b) whether the bankrupt was an undischarged bankrupt at some time during the 6 years prior to the making of the bankruptcy order in respect of which the application is made.

## Duration of bankruptcy restrictions order

**412.** (1) The Court shall, on making a bankruptcy restrictions order, specify the period for which the order has effect.

(2) The period referred to in subsection (1) shall commence on a date no earlier than the date of the order and no later than 28 days after the date of the order and shall not exceed 10 years.

## Interim bankruptcy restrictions order

**413.** (1) In this section, "interim order" means an interim bankruptcy restrictions order.

(2) The Official Receiver may apply to the Court for an interim order at any time between—

(a) the filing by him or her of an application for a bankruptcy restrictions order; and

(b) the determination of that application.

(3) The Court may, on an application made under subsection (1), make an interim order against a bankrupt if it considers—

(a) that there are *prima facie* grounds to suggest that the application for the bankruptcy restrictions order will be successful; and

(b) it is in the public interest to make an interim order.

(4) An interim order shall—

(a) take effect on the date that it is made; and

(b) have the same effect as a bankruptcy restrictions order.

(5) An interim order shall cease to have effect—

*(a)* on the determination of the application for the bankruptcy restrictions order;

*(b)* on the acceptance of a bankruptcy restrictions undertaking made by a bankrupt; or

*(c)* on the discharge of the interim order by the Court on the application of the Official Receiver or the bankrupt.

## Bankruptcy restrictions undertaking

**414.** (1) A bankrupt may offer the Official Receiver a bankruptcy restrictions undertaking, whether or not the Official Receiver has made an application against him or her for a bankruptcy restrictions order.

(2) The Official Receiver may accept an offer made to him or her under subsection (1) if he or she considers that—

*(a)* there is a reasonable prospect that, on the hearing of an application under section 411, the Court would make a bankruptcy restrictions order against the bankrupt offering the undertaking; and

*(b)* it is expedient and in the public interest to accept the offer.

(3) A bankruptcy restrictions undertaking shall specify a period, commencing on the date of the undertaking, for which the undertaking has effect.

(4) The period referred to in subsection (3) shall not exceed 10 years.

## Variation of disqualification order or undertaking

**415.** (1) The Court may, on the application of the Official Receiver or a restricted person, vary a bankruptcy restrictions order or a bankruptcy restrictions undertaking.

(2) Without limiting subsection (1), an order under that subsection may—

*(a)* reduce the period for which the order, or undertaking, is in force; or

*(b)* provide for the order or undertaking to cease to be in force.

(3) An application made by a restricted person for an order under subsection (1) shall be served on the Official Receiver no less than 14 days prior to the date of the hearing and the Official Receiver shall appear or be represented and is entitled to call or give evidence at the hearing.

## Offence provisions

**416.** A restricted person who engages in a prohibited activity commits an offence.

## Official Receiver to appear on certain applications

**417.** The Official Receiver shall appear and call the attention of the Court to any matters which seem to him or her to be relevant, and may himself or herself give evidence or call witnesses on the hearing of—

220 *Insolvency Act*

*(a)* an application by the Official Receiver for a bankruptcy restrictions order; or

*(b)* any other application made under this Part.

## Register of disqualification orders

**418.** (1) The Official Receiver shall register in a Register of Bankruptcy Restrictions Orders and Undertakings to be maintained by him or her for the purpose—

*(a)* each bankruptcy restrictions order and interim bankruptcy restrictions order made or bankruptcy restrictions undertaking accepted under this Part; and

*(b)* each variation of a bankruptcy restrictions order, an interim bankruptcy restrictions order or bankruptcy restrictions undertaking under this Part.

(2) When a bankruptcy restrictions order or undertaking ceases to be in force, the Official Receiver shall delete the entry from the Register.

(3) The Register of Bankruptcy Restrictions Orders and Undertakings shall be open to inspection on payment of such fee as may be prescribed.

(4) No person shall be construed as having knowledge that another person is a restricted person by virtue of an entry in the Register of Bankruptcy Restrictions Orders and Undertakings.

## Annulment of bankruptcy order

**419.** (1) Where a bankruptcy order is annulled under section 382(1)*(a)*—

*(a)* any bankruptcy restrictions order, interim order or undertaking which is in force in respect of the bankrupt shall be annulled;

*(b)* no new bankruptcy restrictions order or interim order may be made in respect of the bankrupt; and

*(c)* no new bankruptcy restrictions undertaking by the bankrupt may be accepted.

(2) Where a bankruptcy order is annulled under section 382(1)*(b)*—

*(a)* the annulment shall not affect any bankruptcy restrictions order, interim order or undertaking which is in force in respect of the bankrupt;

*(b)* the Court may make a bankruptcy restrictions order or an interim order in respect of the bankrupt on an application instituted before the annulment;

*(c)* the Official Receiver may accept a bankruptcy restrictions undertaking offered by the bankrupt before the annulment; and

*(d)* an application for a bankruptcy restrictions order may not be instituted after the annulment.

*Insolvency Act* 221

## PART XVI

### GENERAL PROVISIONS WITH REGARD TO INSOLVENCY PROCEEDINGS UNDER THIS ACT

### Division 1

### *The Creditors' Committee*

### Interpretation for and scope of this Division

**420.** (1) In this Division, "office holder" means—

*(a)* in respect of a company, its administrator, its liquidator or its administrative receiver and in respect of a foreign company, its liquidator; and *(Amended by Act 11 of 2004)*

*(b)* in respect of an individual, his or her bankruptcy trustee, and a reference to an office holder is to the office holder appointed in the insolvency proceeding in respect of which the creditors' committee is appointed.

(2) This Division applies to the establishment and operation of a creditors' committee under this Act where—

*(a)* a company is in administration or in liquidation or a foreign company is in liquidation*; (Amended by Act 11 of 2004)*

*(b)* an administrative receiver has been appointed in respect of a company; or

*(c)* a bankruptcy order has been made against an individual.

(3) In this Division, where the context requires, "company" includes a foreign company. *(Amended by Act 11 of 2004)*

### Establishment of creditors' committee

**421.** (1) The creditors of a company in liquidation, administration or administrative receivership or of a bankrupt may, by resolution passed at a meeting, establish a creditors' committee—

*(a)* in the case of a company in administration, at any time after the approval of the administrator's proposals;

*(b)* in the case of a company in administrative receivership, at any time after the appointment of the administrative receiver;

*(c)* in the case of a company in liquidation, at any time after the appointment of the liquidator; and

*(d)* in the case of an individual, at any time after the bankruptcy order.

(2) A resolution to establish a creditors' committee shall also appoint the first members of the committee, each of whom shall be eligible to serve on the committee in accordance with section 423.

(3) A resolution to establish a creditors' committee in the administration, administrative receivership or liquidation of a company may only be passed—

*Insolvency Act*

(a)  at a meeting called under section 100, 147 or 179; or

(b)  at a meeting requisitioned for the purpose by at least 10% in value of the creditors of the company.

(4)  A resolution to establish a creditors' committee in the bankruptcy of an individual may be passed at a meeting of the creditors called under section 333.

(5)  Where an office holder is satisfied that a creditors' committee has been validly established he or she shall, within 5 business days of the passing of the resolution, file a notice to that effect—

(a)  in the case of an administrator, a liquidator appointed by the Court or a bankruptcy trustee, with the Court; or

(b)  in the case of an administrative receiver or a liquidator not appointed by the Court, with the Registrar.

(6)  The notice required to be filed under subsection (5) shall specify the names and addresses of the persons appointed to the creditors' committee.

(7)  The creditors' committee cannot act until the relevant notice is filed by the office holder under subsection (5).

(8)  The appointment of a member of a creditors' committee may be in the form of the appointment of a designated representative of the member.

## Functions and powers of creditors' committee

**422.** (1) The functions of a creditors' committee are—

(a)  to consult with the office holder about matters relating to the insolvency proceeding;

(b)  to receive and consider reports of the insolvency holder;

(c)  to assist the office holder in discharging his or her functions; and

(d)  to discharge any other functions assigned to it under this Act or the Rules.

(2)  A creditors' committee may—

(a)  call a meeting of creditors;

(b)  on giving the office holder reasonable notice, require him or her to provide the committee with such reports and information concerning the insolvency proceeding as the committee reasonably requires; and *(Amended by Act 11 of 2004)*

(c)  on giving the office holder not less than 5 business days notice, require him or her to attend before the committee at any reasonable time to provide it with such information and explanations concerning the  insolvency   proceeding   as   it reasonably requires.

(3)  Where the creditors' committee requires the attendance of the office holder at a meeting under subsection (2)*(c)*—

(a)  the notice shall be signed in writing by a majority of the members of the committee; and

*(b)* the meeting shall be fixed for a business day and shall be held at such time and place as the committee may agree with the office holder.

(4) The designated representative of a committee member may sign a notice under subsection (3)*(a)* on the member's behalf.

(5) Unless expressly permitted to do so by the Act or the Rules, a creditors' committee cannot give directions to the office holder.

## Composition of creditors' committee

**423.** (1) Subject to subsection (2), a person is eligible to be a member, or the designated representative of a member, of a creditors' committee if he or she is an individual who has consented in writing to serve on the committee, and—

*(a)* in the case of a member—

(i) he or she is a creditor of the company or the bankrupt, as the case may be; or

(ii) he or she holds a general power of attorney granted by such a creditor; or

*(b)* in the case of a designated representative, he or she is authorised in writing by a person eligible to be a member to be his or her representative on the committee.

(2) A person is not eligible to be a member of the creditors' committee if his or her claim has been rejected for the purposes of his or her entitlement to vote or, in the case of a liquidation or bankruptcy, for distribution purposes, or if he or she is the legal practitioner or representative of such a creditor. *(Amended by Act 11 of 2004)*

(3) A creditors committee shall consist of not less than 3 or more than 5 individuals who are eligible to be members of the committee. *(Amended by Act 11 of 2004)*

## Resignation and termination of committee member

**424.** (1) A member of a creditors' committee may resign by giving notice in writing to the office holder.

(2) The membership of a committee member is terminated if—

*(a)* he or she becomes bankrupt or compounds or arranges with his or her creditors;

*(b)* he or she is absent from 3 consecutive meetings of the committee without the leave of the other members;

*(ba)* he or she ceases to be, or is found never to have been, a creditor; or *(Inserted by Act 11 of 2004)*

*(c)* in the case of the designated representative of a member, his or her designation as a designated representative is terminated by the member he or she represents.

*Insolvency Act* **LAW OF VIRGIN ISLANDS**
Revision Date: 1 Jan 2020

(3) A member of the committee may be removed by a resolution of creditors of which he or she has been given at least 5 business days notice, stating the object of that meeting.

(4) If a member of the creditors' committee becomes bankrupt, his or her bankruptcy trustee replaces him or her as a member of the committee. *(Inserted by Act 11 of 2004)*

## Vacancies and appointment of new members

**425.** (1) Where there is a vacancy in the membership of the committee, the continuing members of the committee, if not less than 2 in number, may continue to act.

(2) The continuing members of the committee, or where their number has fallen below 2, the office holder, may appoint a person eligible under section 423 as a member of the committee to fill a vacancy.

(3) Where there is any change in the membership of the committee, the office holder shall, within 5 business days, file a notice specifying the members of the committee following the change—

    *(a)* in the case of an administrator, a liquidator appointed by the Court or a bankruptcy trustee, with the Court; or

    *(b)* in the case of an administrative receiver or a liquidator appointed by the company, with the Registrar.

(4) The notice required to be filed under subsection (3) shall specify the names and addresses of the members of the creditors' committee.

## Proceedings of creditors' committee

**426.** The Rules shall provide for the proceedings of a creditors' committee.

## Expenses of members

**427.** (1) Subject to subsection (2), the reasonable travelling expenses of members directly incurred in attending a meeting of the creditors' committee shall be paid by the office holder out of the assets of the company, or the bankrupt's estate, as an expense of the insolvency proceeding.

(2) Where the office holder is of the opinion that a meeting of the creditors' committee called by a member was unreasonably called he or she may refuse to pay expenses under subsection (1).

(3) Where the office holder refuses to pay reasonable travelling expenses under subsection (2), the creditors may resolve that they should be paid and upon the creditors passing such a resolution, they shall be paid by the office holder out of the assets of the company, or the bankrupt's estate, as an expense of the insolvency proceeding.

## Members dealing with company

**428.** (1) In the case of the administration or administrative receivership of a company, membership of the creditors' committee does not prevent a person from dealing with the company while the office holder is acting, provided that

any transactions in the course of such dealings are entered into in good faith and for value. *(Amended by Act 11 of 2004)*

(2) The Court may, on the application of any person interested, set aside a transaction which appears to it to be contrary to the requirements of this section, and may give such consequential directions as it considers fit for compensating the company for any loss which it may have incurred in consequence of the transaction.

(3) The Rules may specify procedures for dealing with potential or actual conflicts of interest of committee members. *(Inserted by Act 11 of 2004)*

### Formal defects

**429.** The acts of a creditors' committee are valid notwithstanding any defect in the appointment, election or qualifications of any member of the committee or in the formalities of its establishment.

## Division 2

### *Remuneration*

### Remuneration of administrator, liquidator or bankruptcy trustee

**430.** (1) The remuneration of an administrator, liquidator or bankruptcy trustee is fixed—

   *(a)* by the creditors' committee, if any; or

   *(b)* by the Court on an application made under subsection (2).

(2) An administrator, liquidator or bankruptcy trustee may apply to the Court to fix his or her remuneration, or to fix an interim payment under section 433, if—

   *(a)* no creditors' committee is appointed;

   *(b)* the creditors' committee fails, for whatever reason, to fix his or her remuneration, or an interim payment; or

   *(c)* he or she considers that the remuneration, or an interim payment, fixed by the creditors' committee—

      (i)  is insufficient;

      (ii)  is not in an appropriate currency; or

      (iii)  is on unacceptable terms.

(3) Not less than 14 days notice of an application under subsection (2) shall be given—

   *(a)* in the case of an administrator, to the company in administration;

   *(b)* in the case of a bankruptcy trustee, to the bankrupt; and

   *(c)* in any other case—

      (i)  to each member of the creditors' committee; or

(ii) if there is no creditors' committee, to such creditors as the Court may direct.

(4) The members of the creditors' committee or, if there is no creditors' committee, the creditors given notice of the hearing may appear and be heard at the hearing of an application made under subsection (2).

(5) On the hearing of an application under subsection (2), the Court shall fix the remuneration of the administrator, liquidator or bankruptcy trustee at such amount as it considers appropriate.

(6) In this section, "liquidator" does not include a provisional liquidator.

## Application by creditors for reduction of remuneration

**431.** (1) Where the creditors' committee has fixed the remuneration of an administrator, liquidator or bankruptcy trustee, a creditor may, with the concurrence of at least 25% in value of the creditors, including himself or herself, apply to the Court for an order reducing the remuneration fixed on the grounds that it is excessive.

(2) On an application made under subsection (1), the Court may—

(a) if it considers that the applicant has not shown sufficient cause for a reduction, dismiss the application; or

(b) set a venue for the application to be heard.

(3) An application shall not be dismissed under subsection (2)(a) unless the Court has given the applicant the opportunity to attend the Court for an *ex parte* hearing, of which he or she has been given at least 7 days notice.

(4) An applicant for an order under subsection (1) shall give the administrator, liquidator or bankruptcy trustee not less than 14 days notice of the date, time and place set by the Court under subsection (2).

(5) If it considers that the remuneration of the administrator, liquidator or bankruptcy trustee fixed by the creditors' committee is excessive, the Court shall fix the remuneration to such amount as it considers appropriate.

## General principles to be applied in fixing remuneration

**432.** (1) This section applies—

(a) to the fixing of the remuneration of an administrator, liquidator or bankruptcy trustee by a creditors committee under section 430;

(b) to the fixing of the remuneration of an administrator, liquidator or bankruptcy trustee by the Court under section 430(5);

(c) to the fixing of the remuneration of a provisional liquidator by the Court under section 172 and of a person appointed by the Court under section 307; *(Amended by Act 11 of 2004)*

(d) to the fixing of the remuneration of a receiver by the Court under section 134(2) or section 134(3);

(e) to the fixing of the remuneration of a supervisor or interim supervisor by the Court under section 17; and *(Amended by Act 11 of 2004)*

*(f)*  to the fixing of the remuneration of an administrator, liquidator or bankruptcy trustee by the Court under section 431. *(Amended by Act 11 of 2004)*

(2) In this section and section 28—

"fixing remuneration" includes fixing the currency of payment;

"insolvency proceeding" means the insolvency proceeding in respect of which an insolvency practitioner is appointed; and

"insolvency practitioner" means administrator, liquidator, bankruptcy trustee, receiver, supervisor or interim supervisor, as the case may be.

(3) Subject to subsection (4), the remuneration of an insolvency practitioner shall be fixed by reference to the time properly given by him or her and his or her staff in carrying out his or her duties in the insolvency proceeding.

(4) Where the insolvency practitioner so requests and the creditors' committee or the Court considers that the circumstances justify it, the remuneration of an insolvency practitioner may be fixed in whole or in part as a percentage of the value of the assets realised and the value of the assets distributed, or as a percentage of either.

(5) When fixing the remuneration of an insolvency practitioner in the circumstances specified in subsection (1) or sanctioning an interim payment under section 433(3), the creditors' committee or the Court—

*(a)*  shall take into account—

(i)  the need for the remuneration to be fair and reasonable;

(ii)  the time properly spent by the insolvency practitioner and his or her staff in carrying out his or her duties;

(iii)  the complexity of the insolvency proceeding and whether the insolvency practitioner has been required to take any responsibility of an exceptional kind or degree;

(iv)  the effectiveness with which the insolvency practitioner is carrying out, or has carried out, his or her duties;

(v)  the value and nature of the assets with which the insolvency practitioner has had to deal;

(vi)  the hourly rates charged by other insolvency practitioners, both within and outside the Virgin Islands, in undertaking similar work; and

(vii)  whether any expenses which he or she incurred were properly incurred; and

*(b)*  may take into account—

(i)  the commercial and personal risks accepted by the insolvency practitioner; *(Amended by Act 11 of 2004)*

(ii)  the time spent by the insolvency practitioner and his or her staff outside the Virgin Islands and the amount of travelling required; and

*Insolvency Act*

(iii) the standards and practice used for assessing remuneration in jurisdictions other than the Virgin Islands.

## Time for fixing remuneration and interim payments

**433.** (1) The remuneration of an office holder shall be fixed by the creditors' committee or the Court after the conclusion of the insolvency proceeding.

(2) In fixing the remuneration of an office holder, the creditors' committee or the Court shall take account of any interim payment made under subsection (3).

(3) Notwithstanding subsection (1), a creditors' committee or the Court may at any time set an interim payment to be made to the insolvency practitioner on account of his or her remuneration.

(4) An interim payment may be made under subsection (3) subject to such conditions as the creditors' committee or the Court considers appropriate. *(Amended by Act 11 of 2004)*

PART XVII

NETTING AND FINANCIAL CONTRACTS

## Interpretation for sections 434 and 435

**434.** (1) In this section and section 435—

"financial contract" means a contract of a type specified in the Rules as a financial contract;

"master netting agreement" has the meaning specified in subsection (4);

"multibranch netting agreement" *(Repealed by Act 11 of 2004)*

"netting" means the termination of financial contracts, the determination of the termination values of those contracts and the set off of the termination values so determined so as to arrive at a net amount due, if any, by one party to the other where each such determination and set off is effected in accordance with the terms of a netting agreement between those parties;

"netting agreement" has the meaning specified in subsection (2);

"party" means a person constituting one of the parties to an agreement.

(2) A netting agreement is an agreement between 2 parties only, in relation to present or future financial contracts between them the provisions of which include the termination of those contracts for the time being in existence, the determination of the termination values of those contracts and the set off of the termination values so determined so as to arrive at a net amount due.

(3) A netting agreement may provide for—

(a) a guarantee to be given to one party on behalf of the other party solely to secure the obligation of either party in respect of the financial contracts concerned; and

26-10769-mg    Doc 77-2    Filed 06/05/26    Entered 06/05/26 16:53:44    Exhibit 2 -
Transcript of the Remote Deposition of Riz Mokal    Pg 744 of 991

LAW OF
VIRGIN ISLANDS                    *Insolvency Act*                    229
Revision Date: 1 Jan 2020

(b) the set off against the net amount due under subsection (2) and that amount only of—

   (i) any money provided solely to secure the obligation of either party in respect of the financial contracts concerned;

   (ii) the proceeds of the enforcement and realisation of any collateral in the form of—

      (I) security interests or other assets provided; or

      (II) money, security interests or other assets provided solely to secure the obligation of the guarantor under paragraph *(a)*, solely to secure the obligation of either party in respect of the financial contracts concerned.

(4) A master netting agreement is an agreement between two parties only, in relation to netting agreements between them—

(a) the provisions of which include the set off of the net amounts due under two or more netting agreements between them; and

(b) which may provide for a guarantee to be given to one party on behalf of the other party solely to secure the obligation of either party in respect of the netting agreements concerned; and

(c) which may provide for the set off against the net amount due under paragraph *(a)* and that amount only of—

   (i) any money provided solely to secure the obligation of either party in respect of the netting agreements concerned;

   (ii) the proceeds of the enforcement and realisation of any collateral in the form of—

      (I) security interests or other assets provided; or

      (II) money, security interests or other assets provided solely to secure the obligation of the guarantor under paragraph *(b)*, solely to secure the obligation of either party in respect of the netting agreements concerned.

### Enforcement of netting agreements etc.

**435.** (1) Notwithstanding anything contained in this Act or the Rules or in any rule of law relating to insolvency—

(a) the provisions relating to netting, the set off of money provided by way of security, the enforcement of a guarantee and the enforcement of a collateral arrangement and the set off of proceeds thereof, as contained within a netting agreement or a guarantee provided for in such an agreement shall be legally enforceable against a party to the agreement and, where applicable, against a guarantor or other person providing security; and

(b) the provisions relating to set off of the net amounts due under netting agreements, the set off of money provided by way of security, the enforcement of a guarantee and the enforcement of a collateral arrangement and the set off of the proceeds thereof, as

230        *Insolvency Act*        **LAW OF VIRGIN ISLANDS**

Revision Date: 1 Jan 2020

contained within a master netting agreement or a guarantee provided for in such an agreement shall be legally enforceable against a party to the agreement and, where applicable, against a guarantor or other person providing security.

(2) Nothing in subsection (1)—

(a) prevents the application of this Act, any other enactment or rule of law which would prevent the legal enforceability of netting, set off, or enforcement in any particular case, on the grounds of fraud or misrepresentation or on any similar ground; or

(b) permits the enforceability of netting, set off, or enforcement if any provision of an agreement between the two parties concerned would make netting, set off, enforcement and realisation void whether because of fraud or misrepresentation or any similar ground.

PART XVIII

CROSS-BORDER INSOLVENCY

*General Provisions*

**Purpose and scope of this Part**

**436.** (1) The purpose of this Part is to provide effective mechanisms for dealing with cases of cross-border insolvency so as to promote the objectives of—

(a) cooperation between—

(i) the Court and insolvency administrators of the Virgin Islands; and

(ii) the courts and other competent authorities of foreign countries involved in cases of cross-border insolvency;

(b) greater legal certainty for trade and investment;

(c) fair and efficient administration of cross-border insolvencies that protects the interests of all creditors and other interested persons, including the debtor;

(d) protection and maximisation of the value of the debtor's assets; and

(e) facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment.

(2) This Part applies where—

(a) assistance is sought in the Virgin Islands by a foreign Court or a foreign representative in connection with a foreign proceeding;

(b) assistance is sought in a foreign country in connection with a Virgin Islands insolvency proceeding;

(c) a foreign proceeding and a Virgin Islands insolvency proceeding in respect of the same debtor are taking place concurrently; or

(d) creditors or other interested persons in a designated foreign country have an interest in requesting the commencement of, or participating in, a Virgin Islands insolvency proceeding.

(3) This Part does not apply to a regulated person who holds, or at any time has held, a prescribed financial services licence of a type designated by the Governor for the purposes of this section by notice published in the *Gazette*.

## Interpretation for this Part

**437.** (1) In this Part—

"designated foreign country" means a country or territory designated by the Governor for the purposes of this Part by notice published in the *Gazette*;

"establishment" means any place of operations where the debtor carries out a non-transitory economic activity with human means and goods or services;

"foreign ancillary proceeding" means a foreign proceeding, other than a foreign main proceeding, taking place in a country where the debtor has an establishment within the meaning of subparagraph *(f)* of this article;

"foreign court" means a judicial or other authority competent to control or supervise a foreign proceeding;

"foreign main proceeding" means a foreign proceeding taking place in the country where the debtor has the centre of his or her main interests;

"foreign proceeding" means a collective judicial or administrative proceeding in a designated foreign country, including an interim proceeding, pursuant to a law relating to insolvency in which proceeding the property and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganisation,  liquidation or bankruptcy;

"foreign representative" means a person or body, including one appointed on an interim basis, authorised in a foreign proceeding to administer the reorganisation or the liquidation of the debtor's property or affairs or to act as a representative of the foreign proceeding;

"insolvency officer" means the Official Receiver, a liquidator, provisional liquidator, bankruptcy trustee, administrator, receiver, supervisor or interim supervisor;

"Virgin Islands insolvency proceeding" means a collective judicial or administrative proceeding, including an interim proceeding, pursuant to this Act, or to any other enactment in the Virgin Islands; relating—

(a) to the bankruptcy, liquidation, administration or receivership of a debtor; or

(b) to the reorganisation of a debtor's affairs, where, in all cases, the property of the debtor is or will be realised for the benefit of secured or unsecured creditors.

(2) In the interpretation of this Part, the Court shall have regard to its international origin and to the need to promote an application of this Part that is consistent with the application of similar laws adopted by foreign jurisdictions.

## International obligations of the Virgin Islands

**438.** To the extent that this Part conflicts with an obligation of the Virgin Islands arising out of any treaty or other form of agreement to which the Virgin Islands is a party with one or more other countries, the requirements of the treaty or agreement prevail.

## Public policy exception

**439.** Nothing in this Part prevents the Court from refusing to take an action governed by this Part if the action would be contrary to the public policy of the Virgin Islands.

## Additional assistance

**440.** Subject to section 443, nothing in this Part limits the power of the Court or an insolvency officer to provide additional assistance to a foreign representative where permitted under any other Part of this Act or under any other enactment or rule of law of the Virgin Islands.

## Application under this Part

**441.** An application under this Part shall be made to the Court in accordance with the Rules.

## Authorisation of insolvency officer to act in a foreign country

**442.** The Court may, on the application of an insolvency officer, authorise him or her to act in a foreign country on behalf of a Virgin Islands insolvency proceeding as permitted by the applicable foreign law.

*Access of Foreign Representatives and Creditors
to Courts in the Virgin Islands*

## Right of direct access

**443.** (1) A foreign representative is entitled to apply to the Court under section 448 for recognition of the foreign proceeding in respect of which he or she is appointed.

(2) Subject to section 453, a foreign representative may not be granted comity or cooperation by the Court unless the foreign proceeding in respect of which he or she is appointed has been granted recognition by the Court.

(3) Upon recognition being granted to the foreign proceeding in respect of which a foreign representative is appointed, he or she may apply directly to the Court for comity or cooperation or for any other relief under this Part.

## Limited jurisdiction

**444.** The sole fact that a foreign representative makes an application under section 448 does not subject the foreign representative to the jurisdiction of the Court for any other purpose.

## Commencement of and participation in a Virgin Islands insolvency proceeding by foreign representative

**445.** A foreign representative, upon the recognition of the foreign proceeding in respect of which he or she is appointed, may—

> *(a)* apply to commence a Virgin Islands insolvency proceeding if the conditions for commencing such a proceeding are otherwise met; and
>
> *(b)* participate in a Virgin Islands insolvency proceeding regarding the debtor.

## Access of foreign creditors to a Virgin Islands proceeding

**446.** (1) Subject to subsection (2), foreign creditors have the same rights regarding the commencement of, and participation in, a Virgin Islands insolvency proceeding as creditors in the Virgin Islands.

(2) Subsection (1) does not affect the priority of claims in a Virgin Islands insolvency proceeding or the exclusion of foreign penal, revenue and social security claims from such a proceeding.

## Notification to foreign creditors of a Virgin Islands insolvency proceeding

**447.** (1) Whenever under a Virgin Islands insolvency proceeding notification is to be given to creditors in the Virgin Islands, such notification shall also be given to the known creditors that do not have addresses in the Virgin Islands.

(2) Where the address of any creditor is not known, the Court may order that appropriate steps be taken with a view to notifying that creditor.

(3) Notification to creditors under subsection (1) shall be made to the foreign creditors individually, unless the Court considers that, under the circumstances, some other form of notification would be more appropriate. No letters rogatory or other, similar formality is required.

(4) When notification of the commencement of a Virgin Islands insolvency proceeding is to be given to foreign creditors, the notification shall—

> *(a)* indicate the time period for submitting claims and specify the place for their submission;
>
> *(b)* indicate whether secured creditors need to submit their secured claims; and
>
> *(c)* contain any other information required to be included in such a notification to creditors pursuant to the law of the Virgin Islands and any order of the Court.

234 *Insolvency Act*

(5) The Rules and any order of the Court as to notice or the submission of a claim time shall provide such additional time to creditors with foreign addresses as is reasonable under the circumstances.

*Recognition of Foreign Proceeding and Relief*

## Application for recognition of foreign proceeding

**448.** (1) A foreign representative may apply to the Court for recognition of the foreign proceeding in which the foreign representative has been appointed.

(2) An application for recognition shall be accompanied by—

(a) a certified copy of the decision commencing the foreign proceeding and appointing the foreign representative; or

(b) a certificate from the foreign court affirming the existence of the foreign proceeding and of the appointment of the foreign representative; or

(c) in the absence of evidence referred to in paragraphs *(a)* and *(b)*, any other evidence acceptable to the Court of the existence of the foreign proceeding and of the appointment of the foreign representative.

(3) An application for recognition shall also be accompanied by a statement identifying all foreign proceedings in respect of the debtor that are known to the foreign representative.

(4) If the documents referred to in subsection (2)*(a)* and *(b)* are not in English, they shall be accompanied by a certified translation of the documents into English.

(5) The Court may require a certified translation of any other documents supplied in support of the application for recognition into English.

## Presumptions concerning recognition

**449.** (1) If the decision or certificate referred to in section 448(2) indicates that the proceeding is a foreign proceeding as defined in section 437(1)and that the person or body is a foreign representative as defined in section 437(1), the Court is entitled to so presume.

(2) The Court is entitled to presume that documents submitted in support of the application for recognition are authentic, whether or not they have been legalised.

(3) In the absence of proof to the contrary, the debtor's registered office, or habitual residence in the case of an individual, is presumed to be the centre of the debtor's main interests.

## Recognition of foreign proceedings

**450.** (1) Subject to section 439, a foreign proceeding shall be recognised if—

(a) the proceeding is a foreign proceeding within the meaning of section 437(1);

(b) the person or body applying for recognition is a foreign representative within the meaning of section 437(1);

(c) the application meets the requirements of section 448(2); and

(d) the application has been made in accordance with this Part and the Rules.

(2) The foreign proceeding shall be recognised—

(a) as a foreign main proceeding if it is taking place in the country where the debtor has the centre of his or her main interests; or

(b) as a foreign ancillary proceeding if the debtor has an establishment in the foreign country.

(3) An application for recognition of a foreign proceeding shall be decided upon at the earliest possible time.

(4) The provisions of this Part do not prevent the modification or termination of recognition if it is shown that the grounds for granting it were fully or partially lacking or have ceased to exist.

## Subsequent information

**451.** After the filing of an application for recognition of a foreign proceeding, the foreign representative shall inform the Court promptly of—

(a) any substantial change in the status of the recognised foreign proceeding or the status of the foreign representative's appointment; and

(b) any other foreign proceeding regarding the same debtor that becomes known to the foreign representative.

## Interim relief

**452.** (1) Where an application for recognition of a foreign proceeding has been filed but not yet determined or withdrawn, the Court may, on the application of the foreign representative concerned, if it is satisfied that relief is urgently needed to protect the assets of the debtor or the interests of the creditors, grant such relief of a provisional nature as it considers appropriate, including—

(a) staying execution against the debtor's assets;

(b) entrusting the administration or realisation of all or part of the debtor's assets located in the Virgin Islands to the foreign representative or to another person designated by the Court, in order to protect and preserve the value of assets that, by their nature or because of other circumstances, are perishable, susceptible to devaluation or otherwise in jeopardy;

(c) any relief mentioned in section 454(1)*(c)*, *(d)* and *(f)*.

(2) The foreign representative in whose favour an order is made under subsection (1) shall notify the debtor of the order as soon as practicable or within such time as the Court may order.

(3) Unless extended under section 454(1)*(f)*, the relief granted under this article terminates when the Court determines the application for recognition.

*Insolvency Act*                        LAW OF
                                                                    VIRGIN ISLANDS
                                                                    Revision Date: 1 Jan 2020

(4) The Court may refuse to grant relief under this section if such relief would interfere with the administration of a foreign main proceeding.

## Effects of recognition of foreign main proceeding

**453.** (1) Upon recognition of a foreign proceeding that is a foreign main proceeding—

(a) commencement or continuation of individual actions or individual proceedings concerning the property of the debtor within the Virgin Islands, rights, obligations or liabilities is stayed;

(b) execution against the debtor's property within the Virgin Islands is stayed; and

(c) the right to transfer, encumber or otherwise dispose of any property of the debtor within the Virgin Islands is suspended.

(2) Notwithstanding subsection (1), the Court may, on the application of any creditor or interested person, order that the stay or suspension does not apply in respect of any particular action or proceeding or in respect of any particular property, rights, obligation or liability.

(3) An order under subsection (2) may be made subject to such terms as it considers fit.

(4) Subsection (1)*(a)* does not affect the right to commence individual actions or proceedings to the extent necessary to preserve a claim against the debtor.

(5) Subsection (1) does not affect the right to request the commencement of a Virgin Islands insolvency proceeding or the right to file claims in such a proceeding.

## Relief that may be granted upon recognition of foreign proceeding

**454.** (1) Upon recognition of a foreign proceeding, whether main or ancillary, where necessary to protect the assets of the debtor or the interests of the creditors, the Court may, at the request of the foreign representative, grant any appropriate relief, including—

(a) staying the commencement or continuation of individual actions or individual proceedings concerning the debtor's property, rights, obligations or liabilities, to the extent they have not been stayed under section 453(1)*(a)*;

(b) staying execution against the debtor's property to the extent it has not been stayed under section 453(1)*(b)*;

(c) suspending the right to transfer, encumber or otherwise dispose of any property of the debtor to the extent this right has not been suspended under section 453(1)*(c)*;

(d) providing for the examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities;

*(e)* entrusting the administration or realisation of all or part of the debtor's assets located in Virgin Islands to the foreign representative or another person designated by the Court;

*(f)* extending relief granted under section 452(1).

(2) Upon recognition of a foreign proceeding, whether main or ancillary, the Court may, at the request of the foreign representative, entrust the distribution of all or part of the debtor's property located in the Virgin Islands to the foreign representative or another person designated by the Court, provided that the Court is satisfied that the interests of creditors in the Virgin Islands are adequately protected.

(3) In granting relief under this section to a representative of a foreign ancillary proceeding, the Court shall be satisfied that the relief relates to property that, under the law of the Virgin Islands, should be administered in the foreign ancillary proceeding or concerns information required in that proceeding.

## Protection of creditors and other interested persons

**455.** (1) In granting or denying relief under section 452 or 454, or in modifying or terminating relief under subsection (3), the Court shall be satisfied that the interests of the creditors and other interested persons, including the debtor, are adequately protected.

(2) The Court may subject relief granted under section 452 or 454 to such conditions as it considers appropriate, including the giving of any security interest or the filing of any bond.

(3) The Court may, at the request of the foreign representative or a person affected by relief granted under section 452 or 454, or at its own motion, modify or terminate the relief.

## Actions to avoid acts detrimental to creditors

**456.** (1) Subject to subsection (2), upon recognition of a foreign proceeding, the foreign representative shall have power to apply to the Court for an order under section 249 or 405, as the case may be.

(2) The Court shall not make an order under section 249 or 405 on the application of the foreign representative of a recognised foreign proceeding unless it is satisfied that—

*(a)* in the case of an application under section 249, the foreign representative has roles and functions that are equivalent or broadly similar to the roles and functions of a liquidator appointed under this Act; and

*(b)* in the case of an application under section 405, the foreign representative has roles and functions that are equivalent or broadly similar to the roles and functions of a bankruptcy trustee appointed under this Act.

(3) When the foreign proceeding is a foreign ancillary proceeding, the Court shall be satisfied that the action relates to property that, under the law of the Virgin Islands, should be administered in the foreign ancillary proceeding.

### Intervention by foreign representative in proceedings in the Virgin Islands

**457.** Upon recognition of a foreign proceeding, the foreign representative may, if the requirements of the law of the Virgin Islands are met, intervene in any proceedings in which the debtor is a party.

*Cooperation with Foreign Courts and
Foreign Representatives*

### Cooperation and direct communication between court of the Virgin Islands and foreign courts or foreign representatives

**458.** (1) In matters referred to in section 436, the Court shall cooperate to the maximum extent possible with foreign courts or foreign representatives, either directly or through an insolvency administrator.

(2) The Court is entitled to communicate directly with, or to request information or assistance directly from, foreign courts or foreign representatives, subject to the rights of parties to notice and participation at hearings.

### Cooperation and direct communication between the insolvency administrator and foreign courts or foreign representatives

**459.** (1) In matters referred to in section 436, an insolvency administrator shall, in the exercise of his or her functions and subject to the supervision of the Court, cooperate to the maximum extent possible with foreign courts or foreign representatives.

(2) Subject to section 442, the insolvency administrator is entitled, in the exercise of his or her functions and subject to the supervision of the Court, to communicate directly with foreign courts or foreign representatives.

### Forms of cooperation

**460.** Cooperation referred to in sections 458 and 459 may be implemented by any appropriate means, including—

> *(a)* appointment of a person or body to act at the direction of the Court;
>
> *(b)* communication of information by any means considered appropriate by the Court;
>
> *(c)* coordination of the administration and supervision of the debtor's property and affairs;
>
> *(d)* approval or implementation by courts of agreements concerning the coordination of proceedings;
>
> *(e)* coordination of concurrent proceedings regarding the same debtor.

*Concurrent Proceedings*

## Commencement of a Virgin Islands insolvency proceeding after recognition of foreign main proceeding

**461.** After recognition of a foreign main proceeding, a Virgin Islands insolvency proceeding  may be commenced only if the debtor has assets in the Virgin Islands and the effects of the Virgin Islands proceeding shall be restricted to the assets of the debtor that are located in the Virgin Islands and, to the extent necessary to implement cooperation and coordination under sections 458, 459 and 460, to other property of the debtor that, under the law of the Virgin Islands, should be administered in the recognised proceeding.

## Coordination of a Virgin Islands insolvency proceeding and foreign proceeding

**462.** Where a foreign proceeding and a Virgin Islands insolvency proceeding are taking place concurrently regarding the same debtor, the Court shall seek cooperation and coordination under sections 458, 459 and 460, and the following shall apply—

(a) when the Virgin Islands insolvency proceeding is taking place at the time the application for recognition of the foreign proceeding is filed—

   (i) any relief granted under section 452 or 454 shall be consistent with the Virgin Islands insolvency proceeding; and

   (ii) if the foreign proceeding is recognised in the Virgin Islands as a foreign main proceeding, section 453 does not apply;

(b) when the Virgin Islands insolvency proceeding commences after recognition, or after the filing of the application for recognition, of the foreign proceeding—

   (i) any relief in effect under section 452 or 454 shall be reviewed by the Court and shall be modified or terminated if inconsistent with the Virgin Islands insolvency proceeding; and

   (ii) if the foreign proceeding is a foreign main proceeding, the stay and suspension referred to in section 453(1) shall be modified or terminated pursuant to section 453(2) if inconsistent with the Virgin Islands insolvency proceeding;

(c) in granting, extending or modifying relief granted to a representative of a foreign ancillary proceeding, the Court shall be satisfied that the relief relates to property that, under the law of the Virgin Islands, should be administered in the foreign ancillary proceeding or concerns information required in that proceeding.

## Coordination of more than one foreign proceeding

**463.** In matters referred to in section 436, in respect of more than one foreign proceeding regarding the same debtor, the Court shall seek cooperation and coordination under sections 458, 459 and 460 and the following shall apply—

*(a)* any relief granted under section 452 or 454  to a representative of a foreign ancillary proceeding after recognition of a foreign main proceeding shall be consistent with the foreign main proceeding;

*(b)* if a foreign main proceeding is recognised after recognition, or after the filing of an application for recognition, of a foreign ancillary proceeding, any relief in effect under section 452 or 454 shall be reviewed by the Court and shall be modified or terminated if inconsistent with the foreign main proceeding;

*(c)* if, after recognition of a foreign ancillary proceeding, another foreign ancillary proceeding is recognised, the Court shall grant, modify or terminate relief for the purpose of facilitating coordination of the proceedings.

### Presumption of insolvency based on recognition of foreign main proceeding

**464.** In the absence of evidence to the contrary, recognition of a foreign main proceeding is, for the purpose of commencing a Virgin Islands insolvency proceeding proof that the debtor is insolvent.

### Rule of payment in concurrent proceedings

**465.** Without prejudice to secured claims or rights *in rem*, a creditor who has received part payment in respect of his or her claim in a proceeding pursuant to a law relating to insolvency in a foreign country may not receive a payment for the same claim in a Virgin Islands insolvency proceeding regarding the same debtor, so long as the payment to the other creditors of the same class is proportionately less than the payment the creditor has already received.

PART XIX

ORDERS IN AID OF FOREIGN PROCEEDINGS

### Interpretation for this Part

**466.** (1) In this Part—

"foreign proceeding" means a collective judicial or administrative proceeding in a relevant foreign country, including an interim proceeding, pursuant to a law relating to insolvency in which proceeding the property and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganisation,  liquidation or bankruptcy and "debtor" shall be construed accordingly;

"foreign representative" means a person or body, including one appointed on an interim basis, authorised in a foreign proceeding to administer the reorganisation or the liquidation of the debtor's property or affairs or to act as a representative of the foreign proceeding;

"insolvency officer" means the Official Receiver, a liquidator, provisional liquidator, bankruptcy trustee, administrator, receiver, supervisor, or interim supervisor;

"relevant foreign country" means a country, territory or jurisdiction designated by the Commission as a relevant foreign country for the purposes of this Part; and

"Virgin Islands insolvency proceeding" means a collective judicial or administrative proceeding, including an interim proceeding, pursuant to this Act, or to any other enactment in the Virgin Islands, relating—

    *(a)* to the bankruptcy, liquidation, administration or receivership of a debtor; or

    *(b)* to the reorganisation of a debtor's affairs, where, in all cases, the property of the debtor is or will be realised for the benefit of secured or unsecured creditors.

(2) Notwithstanding subsection (1), a country or territory that is designated as a designated country for the purposes of Part XVIII ceases to be a relevant foreign country from the date of its designation as a designated country.

(3) The designation of a country for the purposes of Part XVIII does not affect the validity of any order made under this Part.

### Order in aid of foreign proceeding

**467.** (1) For the purposes of this section "property" means property that is subject to or involved in the foreign proceeding in respect of which the foreign representative is authorised.

(2) A foreign representative may apply to the Court for an order under subsection (3) in aid of the foreign proceeding in respect of which he or she is authorised.

(3) Subject to section 468, upon an application under subsection (1), the Court may—

    *(a)* restrain the commencement or continuation of any proceedings, execution or other legal process or the levying of any distress against a debtor or in relation to any of the debtor's property;

    *(b)* subject to subsection (4), restrain the creation, exercise or enforcement of any right or remedy over or against any of the debtor's property;

    *(c)* require any person to deliver up to the foreign representative any property of the debtor or the proceeds of such property;

    *(d)* make such order or grant such relief as it considers appropriate to facilitate, approve or implement arrangements that will result in a co-ordination of a Virgin Islands insolvency proceeding with a foreign proceeding;

    *(e)* appoint an interim receiver of any property of the debtor for such term and subject to such conditions as it considers appropriate;

    *(f)* authorise the examination by the foreign representative of the debtor or of any person who could be examined in a Virgin Islands insolvency proceeding in respect of a debtor;

    *(g)* stay or terminate or make any other order it considers appropriate in relation to a Virgin Islands insolvency proceeding; or

242            *Insolvency Act*            **LAW OF
VIRGIN ISLANDS**
Revision Date: 1 Jan 2020

> (h) make such order or grant such other relief as it considers appropriate.

(4) An order under subsection (3) shall not affect the right of a secured creditor to take possession of and realise or otherwise deal with property of the debtor over which the creditor has a security interest.

(5) In making an order under subsection (3), the Court may apply the law of the Virgin Islands or the law applicable in respect of the foreign proceeding.

## Matters to be considered by Court in determining application under section 467

**468.** (1) In determining an application under section 467, the Court shall be guided by what will best ensure the economic and expeditious administration of the foreign proceeding to the extent consistent with—

> (a) the just treatment of all persons claiming in the foreign proceeding;
>
> (b) the protection of persons in the Virgin Islands who have claims against the debtor against prejudice and inconvenience in the processing of claims in the foreign proceeding;
>
> (c) the prevention of preferential or fraudulent dispositions of property subject to the foreign proceeding, or the proceeds of such property;
>
> (d) the need for distributions to claimants in the foreign proceedings to be substantially in accordance with the order of distributions in a Virgin Islands insolvency; and
>
> (e) comity.

(2) An order under section 467 shall not, without the consent of the person concerned—

> (a) affect the right of any creditor of the debtor to benefit from set-off as provided for in section 150; or
>
> (b) result in a person who is a preferential creditor of the debtor, or who in a Virgin Islands insolvency proceeding in respect of the debtor would be a preferential creditor, receiving less than he or she would receive in a Virgin Islands insolvency proceeding.

(3) The Court shall not make an order under 467 that is contrary to the public policy of the Virgin Islands.

## Limitation on effect of application under this Part

**469.** (1) Subject to subsection (2), an application to the Court by a foreign representative under section 467 does not submit the foreign representative to the jurisdiction of the Court for any other purpose except with regard to the costs of the proceedings.

(2) The Court may make an order under this Part conditional on the compliance by the foreign representative with any other order of the Court.

26-10769-mg    Doc 77-2    Filed 06/05/26    Entered 06/05/26 16:53:44    Exhibit 2 -
Transcript of the Remote Deposition of Riz Mokal    Pg 758 of 991

LAW OF
VIRGIN ISLANDS                              *Insolvency Act*                              243
Revision Date: 1 Jan 2020

## Additional assistance

**470.** Subject to section 443, nothing in this Part limits the power of the Court or an insolvency officer to provide additional assistance to a foreign representative where permitted under any other Part of this Act or under any other enactment or rule of law of the Virgin Islands.

## Application under this Part

**471.** An application by a foreign representative under this Part shall be made to the Court in accordance with the Rules.

## Authorisation of insolvency officer to act in foreign country

**472.** The Court may, on the application of an insolvency officer, authorise him or her to act in a foreign country on behalf of a Virgin Islands insolvency proceeding as permitted by the applicable foreign law.

PART XX

INSOLVENCY PRACTITIONERS

*Licensing*

## Interpretation for this Part

**473.** In this Part—

"Code of Practice" means the Code of Practice that the Commission is empowered to issue under section 487(1);

"Commission" means the Financial Services Commission  established under the Financial Services Commission Act;

"licence" means a licence to act as an insolvency practitioner granted under section 476;

"licensee" means a licensed insolvency practitioner;

"overseas insolvency practitioner" means an individual resident outside the Virgin Islands appointed to act as an insolvency practitioner under section 483; and

"Regulations" means the Insolvency Practitioners Regulations made under section 486.

## Prohibition on acting as insolvency practitioner without a licence

**474.** (1) For the purposes of this Act, a person acts as an insolvency practitioner by acting as—

> *(a)* the administrator or administrative receiver of a company;
>
> *(b)* the liquidator or provisional liquidator of a company or a foreign company;

*(ba)* a portfolio liquidator appointed under section 152 of the BVI
Business Companies Act; *(Inserted by Act 16 of 2004)*

*(c)* the interim supervisor under a proposal for an arrangement;

*(d)* the supervisor of an arrangement; or

*(e)* the bankruptcy trustee of an individual.

(2) Subject to subsection (3), no person shall act as an insolvency
practitioner unless he or she holds a licence issued under section 476 that is not
suspended under section 479.

(3) Subsection (2) does not apply—

*(a)* to the Official Receiver; or

*(b)* to an overseas insolvency practitioner whilst he or she is acting
jointly with a licensee or with the Official Receiver.

(4) A person who contravenes subsection (2) commits an offence.

## Application for licence

**475.** (1) An individual resident in the Virgin Islands may apply to the
Commission for a licence to act as an insolvency practitioner.

(2) An application under subsection (1) shall—

*(a)* contain the information and be in the form prescribed; and

*(b)* be accompanied by the documentation prescribed.

(3) The Commission may require an applicant for a licence to furnish it
with such other documentation and information as it considers necessary to
determine the application.

## Issue of licence

**476.** (1) The Commission may issue a licence to the applicant if it is
satisfied—

*(a)* that the applicant—

(i) is an individual resident in the Virgin Islands who is fit and
proper and qualified to act as an insolvency practitioner;

(ii) satisfies the requirements of this Act in respect of the
application and will, upon issuance of the licence, be in
compliance with this Act and the Regulations; and

(iii) is not disqualified from holding a licence under section 477;
and

*(b)* that issuing the licence is not against the public interest.

(2) A licence may be issued under subsection (1) subject to such terms
and conditions as the Commission considers fit.

(3) The Commission shall not be required to disclose to an applicant the
reasons for a decision under this section.

(4) The Commission may, upon giving reasonable notice to the licensee—

  (a) vary or cancel any terms or conditions imposed under subsection (1); or

  (b) impose new terms or conditions.

(5) The Commission shall publish the issuance of a licence under this section in the *Gazette*.

## Persons disqualified from holding a licence

477. An individual is disqualified from holding a licence if—

  (a) he or she is a bankrupt; or

  (b) he or she is a disqualified person within the meaning of section 260(4) or a restricted person within the meaning of section 409. *(Amended by Act 11 of 2004)*

*Control of Licensees and Enforcement*

## Production of accounts and records

478. (1) The Commission may, at any time during or after the completion of an insolvency proceeding, require a licensee appointed in respect of the proceeding to produce for inspection, at such place as he or she may specify—

  (a) his or her records and accounts in respect of the proceeding; and

  (b) any reports that he or she has prepared in respect of the proceeding.

(2) The Commission may cause the accounts and records produced to him or her under subsection (1) to be audited.

(3) The licensee shall give the Commission such further information, explanations and assistance in relation to the records, accounts and reports as the Commission may require.

(4) A licensee who contravenes this section commits an offence.

## Suspension and revocation of licence

479. (1) The Commission shall suspend or revoke the licence of a licensee if—

  (a) in the opinion of the Commission, the licensee is no longer a fit and proper person to hold a licence;

  (b) the licensee is disqualified from holding a licence; or *(Amended by Act 11 of 2004)*

  (c) he or she is no longer resident in the Virgin Islands. *(Inserted by Act 11 of 2004)*

(2) The Commission may suspend or revoke the licence of a licensee if the licensee—

  (a) is in breach of any condition of his or her licence;

*(b)* has failed to comply with his or her obligations under this Part, the Regulations or the Code of Practice; *(Amended by Act 11 of 2004)*

*(c)* has provided the Commission with any false, inaccurate or misleading information, whether on making application for a licence or subsequent to the issue of the licence;

*(d)* has committed an offence under this Act; *(Amended by Act 11 of 2004)*

*(e)* has failed to pay the prescribed annual fee payable within six weeks of the date upon which it fell due for payment; or

*(f)* he or she fails to comply with a directive issued by the Commission under section 480A. *(Inserted by Act 11 of 2004)*

(3) The Commission may revoke the licence of a licensee if requested to do so by the licensee.

(4) Subject to subsection (5), the period of suspension of a licence under subsection (1) shall not exceed 30 days.

(5) If it is satisfied that it is in the public interest to do so, the Court may, on the application of the Commission, extend the period of suspension of a licence under this section for one or more further periods not exceeding 30 days each.

(6) Before suspending or revoking a licence under subsections (1) or (2), the Commission shall give written notice to the licensee stating—

*(a)* the grounds upon which it intends to revoke or suspend the licence; and

*(b)* that unless the licensee, by written notice filed with the Commission, shows good reason why its licence should not be revoked or suspended, the licence will be revoked or suspended, as the case may be, on a date not less than 14 days after the date of the notice.

(7) Where the Commission revokes or suspends a licence under this section, it shall send a written notice to the licensee stating—

*(a)* that the licence has been revoked or suspended, as the case may be; and

*(b)* the grounds upon which and the date from which the licence has been revoked or suspended.

(8) Where the Commission revokes or suspends a licence under this section, it shall cause notice of the revocation or suspension to be published in the *Gazette*.

## Right to make representations

**480.** (1) A licensee who receives a notice given under 479(6) may, within 14 days of the date of the notice, make written representations to the Commission.

(2) The Commission shall consider the representations made to it under subsection (1) in determining whether to suspend or revoke the licence.

## Directives

**480A.** (1) Where the Commission is entitled to revoke or suspend the licence of a licensee under section 479(2), the Commission may issue one or more of the following directives—

> *(a)* that the licensee shall take all necessary steps to resign as an insolvency practitioner in respect of certain specified insolvency matters or specified types or descriptions of insolvency matters;

> *(b)* that the licensee shall not accept any new appointments as an insolvency practitioner or any new appointments of a specified type or description;

> *(c)* that the licensee shall take such other action as the Commission considers may be necessary to ensure that he or she properly fulfils his or her duties as an insolvency practitioner either generally or in respect of particular insolvency matters.

(2) Without limiting subsection (1), where it considers it necessary for the exercise of its functions or for the proper supervision of insolvency practitioners, the Commission may issue directives of a special or general nature not inconsistent with this Part.

(3) Where the Commission issues a directive of a general nature under subsection (2), it shall cause the directive to be advertised in the *Gazette*.

*(Inserted by Act 11 of 2004)*

*Obligations of Licensees*

## Filing of returns and other documents

**481.** A licensee shall file with the Commission such returns and other documents as may be specified in the Regulations or the Code of Practice.

*Eligible Insolvency Practitioners*

## Eligible insolvency practitioner

**482.** (1) A person is eligible to act as an insolvency practitioner in relation to a company, a foreign company or an individual if—

> *(a)* he or she is a licensed insolvency practitioner;

> *(b)* he or she has given his or her written consent to act in the prescribed form;

> *(c)* he or she is not disqualified from holding a licence under section 477;

> *(d)* he or she is not disqualified from acting—

>> (i) in the case of a company or a foreign company, under subsection (2); or

>> (ii) in the case of an individual, under subsection (3); and

*Insolvency Act*                    LAW OF
VIRGIN ISLANDS
Revision Date: 1 Jan 2020

*(e)* there is in force such security for the proper performance of his or her functions as may be specified in the Regulations.

(2) A person is disqualified from acting as an insolvency practitioner in respect of a company and a foreign company if he or she is, or at any time in the previous 3 years has been—

*(a)* the auditor of the company or an employee of such auditor; or

*(b)* a director of the company.

(3) An insolvency practitioner is disqualified from acting as an insolvency practitioner in respect of an individual if he or she is connected to the individual within the meaning of section 5(3).

## Appointment of overseas insolvency practitioner

**483.** Notwithstanding any other provision of this Act, an individual resident outside the Virgin Islands may be appointed to act as an insolvency practitioner jointly with a licensee or the Official Receiver if—

*(a)* where he or she is appointed by the Court, or in any other case the person or persons appointing him or her, is or are satisfied that—

(i) he or she has sufficient qualifications and experience to act in the insolvency proceeding in respect of which the appointment is made;

(ii) he or she has given his or her written consent to act in the prescribed form;

(iii) he or she is not disqualified from holding a licence under section 477;

(iv) he or she is not disqualified from acting in the case of a company or a foreign company, under subsection 482(2) or in the case of an individual, under subsection 482(3);

(v) there is in force such security for the proper performance of his or her functions as may be specified in the Regulations; and

*(b)* prior written notice of his or her appointment has been given to the Commission.

## Commission's powers with regard to appointment of overseas insolvency practitioner

**484.** (1) Where an application is made to the Court for the appointment of an overseas insolvency practitioner to act as insolvency practitioner, the Commission may appear and be heard at the hearing of the application for the purpose of objecting to the appointment.

(2) Where the Commission receives notice under section 483*(b)* that an overseas insolvency practitioner is to be appointed by a person to act as an insolvency practitioner, it may give the appointer notice that it intends to apply to the Court for an order that the overseas insolvency practitioner concerned should not be appointed.

(3) Where a person receives a notice from the Commission under subsection (2), it shall not appoint the overseas insolvency practitioner concerned to act as insolvency practitioner unless—

*(a)* the Court approves the appointment at the hearing of the Commission's application under subsection (2); or

*(b)* the Commission approves the appointment.

(4) A person who contravenes subsection (3) commits an offence.

## Overseas practitioner sole appointee

**485.** (1) This section applies where a licensee, for any reason, ceases to act in an insolvency proceeding and an overseas insolvency practitioner appointed jointly with him or her remains as the only insolvency practitioner appointed in the insolvency proceeding.

(2) Where this section applies, the overseas practitioner shall within 3 days after becoming aware that he or she is the only person acting as insolvency practitioner in an insolvency proceeding, give notice in the prescribed form—

*(a)* to the Court, where the Court appointed him or her, or to such person or persons as appointed him or her; and

*(b)* to the Official Receiver.

(3) An overseas insolvency practitioner to whom subsection (1) applies is deemed not to be in contravention of section 474(2) —

*(a)* where he or she gives notice in compliance with subsection (2), at any time during the period commencing with the date upon which he or she became the only person acting as insolvency practitioner in the insolvency proceeding and ending on the later of—

(i) the 14th day after the date on which he or she became the only person acting as insolvency practitioner in the insolvency proceeding; or

(ii) the seventh day after the date upon which he or she became aware that was the only person acting as insolvency practitioner in the insolvency proceeding; or

*(b)* at any time when he or she does not know and could not be expected to have known that he or she is the only person acting in the insolvency proceeding.

## Regulations

**486.** (1) The Cabinet may, on the recommendation of the Commission, make Regulations generally for giving effect to this Part and specifically in respect of—

*(a)* the form and contents of, and the documents that shall accompany, an application for a licence under this Part;

*(b)* the qualifications and experience required of and examinations to be taken and passed by applicants for a licence;

250 *Insolvency Act*

(c) the minimum security, including insurance cover, to be maintained by a licensee;

(d) the records to be kept by a licensee, and the length of time such records shall be kept;

(e) the inspection by the Commission of the records of a licensee;

(f) documents to be filed with and returns to be made to the Commission by licensees;

(fa) the submission to the Commission of complaints and the procedures for dealing with such complaints; *(Inserted by Act 11 of 2004)*

(g) fees payable on application for a licence and by licensees generally; and

(h) any other matter required or permitted by this Part to be specified in the Regulations.
*(Amended by Act 11 of 2004)*

(2) The Regulations may—

(a) make different provision in relation to different persons, circumstances or cases;

(b) where a minimum standard, including a minimum level of security, is specified, authorise the Commission to impose a higher standard or a greater level of security, according to the circumstances of a particular licensee or insolvency proceeding; and

(c) provide for offences and penalties for any prohibition or contravention or failure to comply with a requirement prescribed in the Regulations.

(3) The Regulations, and any amendment to the Regulations, shall be published in the *Gazette*.

(4) Sections 494, 495, 496 and 502 apply in respect of the Regulations. *(Inserted by Act 11 of 2004)*

**Code of Practice**

**487.** (1) Subject to subsections (2) and (3), the Commission may issue a Code of Practice with respect to—

(a) the criteria that will be used in assessing applications for a licence, including  the criteria for determining whether or not an individual is to be regarded as being resident in the Virgin Islands; and

(b) the procedures to be followed by and the conduct expected of a licensee when acting as an insolvency practitioner.

(2) The Code of Practice shall not be inconsistent with the Act, the Rules or the Regulations.

(3) The Regulations may specify matters that shall or may be included in the Code of Practice, including the matters specified in section 486(1), and may limit the scope of the Code of Practice. *(Amended by Act 11 of 2004)*

(4) The Code of Practice may make different provision in relation to different persons, circumstances or cases.

(5) The Commission shall publish the Code of Practice and any amendments thereto in the *Gazette*.

## Insolvency Surplus Account

**487A.** (1) The Commission shall open and maintain an account called the Insolvency Surplus Account with a reputable bank licensed and operating in the Virgin Islands.

(2) The Commission shall pay into the Insolvency Surplus Account all monies representing the unclaimed assets of companies and bankrupts that are received by it in accordance with the Rules.

(3) The Rules may provide for the management of the Insolvency Surplus Account by the Commission, the investment of monies held in the Insolvency Surplus Account and the circumstances in which monies shall or may be paid into and out of the Insolvency Surplus Account.

*(Inserted by Act 11 of 2004)*

PART XXI

OFFICIAL RECEIVER

## Official Receiver

**488.** (1) The Commission shall appoint a suitably qualified and experienced person to be Official Receiver on such terms and conditions as it considers appropriate.

(2) The Official Receiver is an employee of the Commission.

## Deputy Official Receiver and staff

**489.** The Commission shall appoint one of its officers as Deputy Official Receiver and shall provide the Official Receiver with such other staff and resources as he or she requires to perform his or her functions under this Act and the Rules.

## Official Receiver as officer of the Court

**490.** For the purposes of the performance of his or her functions under this Act and the Rules, the Official Receiver is an officer of the Court and him or her—

(a) may apply to the Court for directions in connection with his or her functions; and

(b) shall comply with any directions given to him or her by the Court.

## Functions of Official Receiver

**491.** (1) The Official Receiver has the duties, powers and functions imposed or conferred on him or her by this Act, any other enactment, the Rules and the Regulations. *(Amended by Act 11 of 2004)*

(2) Any assets vested in the Official Receiver on his or her dying or otherwise ceasing to hold office, vest in his or her successor without any conveyance, assignment or transfer.

(3) Subject to any provision in this Act or the Rules to the contrary, a reference to the liquidator, supervisor, interim supervisor, receiver or bankruptcy trustee includes the Official Receiver when acting in that capacity.

## Right of audience

**492.** The Official Receiver and the Deputy Official Receiver have a right of audience in insolvency proceedings before the Court.

PART XXII

MISCELLANEOUS PROVISIONS

## Appointment of 2 or more office holders

**493.** (1) Where this Act provides for the appointment of a liquidator, provisional liquidator, administrator, bankruptcy trustee, supervisor or interim supervisor, 2 or more persons may be jointly appointed to the relevant office.

(2) Where 2 or more persons are jointly appointed to an office, a function or power of the office may be performed or exercised by any one of the office holders, or by any 2 or more of them together, except so far as the order, deed, instrument or resolution appointing them otherwise provides.

## Use of prescribed forms

**494.** (1) If a document required or permitted by this Act or the Rules to be prepared or filed is of a type the form of which is prescribed by the Rules, that form shall be used with such modifications as the circumstances require.

(2) Notwithstanding subsection (1), a prescribed form shall not be varied so as to omit any information or guidance which the form gives to the intended recipient of the form.

## Notices

**495.** (1) Subject to subsection (2), all notices required or authorised to be given by or under this Act or the Rules shall be in writing.

(2) Subsection (1) does not apply where—

(a) this Act or the Rules provide otherwise; or

(b) the Court requires or permits a notice to be given in some other way.

*Insolvency Act*

Revision Date: 1 Jan 2020

### Time

**496.** (1) Unless this Act or the Rules expressly provide otherwise, where the Act or the Rules specify a time within which an action shall or may be done, the Court—

(a) may extend the time either before or after it has expired; or

(b) abridge the time, on such terms as it considers fit.

(2) Without limiting subsection (1), where it is satisfied that an application is urgent, the Court may—

(a) hear the application immediately, either with or without notice to, or the attendance of, other parties; or

(b) authorise a shorter period of service than that provided for by the Act or the Rules.

(3) *(Repealed by Act 11 of 2004)*

### Resolutions

**497.** (1) Anything which is required or permitted to be done under this Act or the Rules by a resolution of the creditors of a company, a bankrupt or an individual debtor, by a resolution of a creditors' committee or by a resolution of the members of a company may be done by written resolution of the creditors, creditors' committee or members in accordance with and subject to any conditions specified in the Rules. *(Substituted by Act 11 of 2004)*

(2) The Rules may specify types or classes of resolution to which subsection (1) does not apply.

(3) Subject to subsection (2)—

(a) a reference in this Act or the Rules to a resolution of a creditors' or members' meeting or to anything done at a creditors' or members' meeting includes a reference to anything done by a written resolution in accordance with this section; and

(b) a requirement to hold a creditors' or members' meeting is satisfied by the passing of a written resolution in accordance with this section.

### Rules

**498.** (1) The Cabinet may make Rules generally for giving effect to this Act and specifically in respect of anything required or permitted to be prescribed by this Act.

(2) The Rules may make different provision for different persons, circumstances or cases.

### Insolvent partnerships

**499.** (1) The Cabinet may make Rules specifying which provisions of this Act shall apply to insolvent partnerships and the modifications applicable to insolvent partnerships.

*Insolvency Act*

(2) The Rules made under subsection (1) may contain such incidental, supplemental and transitional provisions as the Cabinet considers necessary or expedient.

*(Amended by Act 11 of 2004)*

## Insolvent estates

**500.** (1) The Cabinet may make Rules specifying which provisions of this Act shall apply to the administration of insolvent estates of deceased persons and the modifications applicable to the administration of such estates.

(2) The Rules made under subsection (1) may contain such incidental, supplemental and transitional provisions as the Cabinet considers necessary or expedient.

*(Amended by Act 11 of 2004)*

## Offences, general provisions

**501.** (1) A person who commits an offence under this Act is liable on summary conviction—

> *(a)* if an individual, to the penalty stated against the relevant offence in column 4 of Schedule 5; or
>
> *(b)* if not an individual, to the penalty stated against the relevant offence in column 3 of Schedule 5,

and, in either case, to the daily default fine (if any) stated in column 5 of Schedule 5 for each day during which the default continues.

(2) Where an offence under this Act is committed by a body corporate, a director or officer who authorised, permitted or acquiesced in the commission of the offence also commits an offence and is liable on summary conviction—

> *(a)* if an individual, to the penalty stated against the relevant offence in column 4 of Schedule 5; or
>
> *(b)* if not an individual, to the penalty stated against the relevant offence in column 3 of Schedule 5, and, in either case, to the daily default fine (if any) stated in column 5 of Schedule 5 for each day during which the default continues.

## Rules may provide for offences and penalties

**502.** The Rules may provide for offences and penalties for any prohibition or contravention or failure to comply with a requirement prescribed in the Rules.

## Provisions of other enactments not to apply

**503.** Section 101 of the BVI Business Companies Act do not apply in respect of—

> *(a)* any document, including an application to the Court, that is required or permitted to be served or sent; or
>
> *(b)* any notice required or permitted to be given to any person, under this Act or the Rules.

*(Amended by Act 16 of 2004)*

## Disapplication and modification of the Financial Services Commission Act

**503A.** The Financial Services Commission Act is disapplied and modified with respect to the Official Receiver, licensed insolvency practitioners and former licensed insolvency practitioners to the extent specified in Schedule 6. *(Inserted by Act 11 of 2004)*

**504.** *(Omitted)*

## Act binding on Crown

**505.** This Act is binding on the Crown.

_____

# SCHEDULE 1
*(Sections 90 and 144)*

### POWERS OF ADMINISTRATOR AND ADMINISTRATIVE RECEIVER

1.  Power to take possession of, collect and get in the assets of the company and, for that purpose, to take such proceedings as he or she considers expedient to recover possession of any assets of the company.

2.  Power to sell, charge or otherwise dispose of assets of the company.

3.  Power to borrow money, whether on the security of the assets of the company, or otherwise.

4.  Power to appoint a solicitor or accountant or other professionally qualified person to assist him or her in the performance of his or her functions.

5.  Power to commence, continue, discontinue or defend any action or other legal proceedings in the name and on behalf of the company.

6.  Power to refer to arbitration any question affecting the company.

7.  Power to effect and maintain insurances in respect of the business and assets of the company.

8.  Power to draw, accept, make and endorse a bill of exchange or promissory note in the name and on behalf of the company.

9.  Power to appoint any agent to do any business which he or she is unable to do himself or herself or which can be more conveniently done by an agent and power to employ and dismiss employees.

10. Power to do all such things (including the carrying out of works) as may be necessary for the realisation of the assets of the company.

11. Power to make any payment which is necessary or incidental to the performance of his or her functions.

12. Power to carry on the business of the company.

13. Power to establish subsidiaries of the company.

14. Power to transfer to subsidiaries of the company the whole or any part of the business and assets of the company.

15. Power to grant or accept a surrender of a lease or tenancy of any of the assets of the company, and to take a lease or tenancy of any property required or convenient for the business of the company.

16. Power to make any arrangement or compromise on behalf of the company.

17. Power to call up any uncalled capital of the company.

18. Power to rank and claim in the bankruptcy, liquidation, insolvency or sequestration of any person indebted to the company and to receive dividends, and to accede to trust deeds for the creditors of any such person.

19. Power to make or defend an application for the winding up of the company.

20. Power to amend the Memorandum of Association and to change the situation of the company's registered office. *(Amended by Act 11 of 2004)*

21. Power to do all things incidental to the exercise of the foregoing powers.

––––––––––

# SCHEDULE 2

*(Section 186)*

## POWERS OF LIQUIDATOR

1. Power to pay any class of creditors in full.

2. Power to make a compromise or arrangement with creditors or persons claiming to be creditors, or having or alleging that they have any claim against the company, whether present or future, certain or contingent, ascertained or not.

3. Power to compromise, on such terms as may be agreed—

   *(a)* calls and liabilities to calls, debts and liabilities capable of resulting in debts, and claims, whether present or future, certain or contingent, ascertained or not, subsisting or supposed to subsist between the company and any person; and

   *(b)* questions in any way relating to or affecting the assets or the liquidation of the company, and take security for the discharge of any such call, debt, liability or claim and give a complete discharge in respect of it.

4. Power to commence, continue, discontinue or defend any action or other legal proceedings in the name and on behalf of the company.

5. Power to carry on the business of the company so far as may be necessary for its beneficial liquidation.

6. Power to sell or otherwise dispose of property of the company.

7. Power to do all acts and execute, in the name and on behalf of the company, any deeds, receipts or other document.

8. Power to use the company's seal.

9. Power to prove, rank and claim in the bankruptcy, liquidation, insolvency or sequestration of any member or past member for any balance against his or her estate, and to receive dividends, in the bankruptcy, liquidation, insolvency, sequestration or in respect of that balance, as a separate debt due from the bankrupt or insolvent, and rateably with the other separate creditors.

10. Power to draw, accept, make and endorse any bill of exchange or promissory note in the name and on behalf of the company with the same effect with respect to the company's liability as if the bill or note had been drawn, accepted, made or indorsed by or on behalf of the company in the course of its business.

26-10769-mg   Doc 77-2   Filed 06/05/26   Entered 06/05/26 16:53:44   Exhibit 2 -
Transcript of the Remote Deposition of Riz Mokal   Pg 772 of 991

LAW OF
VIRGIN ISLANDS                          *Insolvency Act*                          257
Revision Date: 1 Jan 2020

11.  Power to borrow money, whether on the security of the assets of the company or otherwise.

12.  Power to take out in his or her official name letters of administration to any deceased member or past member or debtor, and to do any other act necessary for obtaining payment of any money due from a member or past member or debtor, or his or her estate, that cannot conveniently be done in the name of the company. For the purpose of enabling the liquidator to take out letters of administration or do any other act under this paragraph, to be due to the liquidator himself or herself.

13.  Power to call meetings of creditors or members for—

(a)  the purpose of informing creditors or members concerning the progress of or matters arising in the liquidation;

(b)  the purpose of ascertaining the views of creditors or members on any matter arising in the liquidation; or

(c)  such other purpose connected with the liquidation as the liquidator considers fit.

14.  Power to appoint a solicitor, accountant or other professionally qualified person to assist him or her in the performance of his or her duties.

15.  Power to appoint an agent to do any business that the liquidator is unable to do himself or herself, or which can be more conveniently done by an agent.

_____

# SCHEDULE 3

*(Section 163)*

## LIQUIDATION OF FOREIGN COMPANY

1.  Part VI applies to the liquidation of a foreign company with the modifications and exclusions specified in this Schedule.

2.  A foreign company is deemed to be insolvent if, in addition to the circumstances specified in section 8(1), it fails to comply with the requirements of a notice issued in accordance with paragraph 4.

3.  Where a person has instituted an action or other proceeding against any member of a foreign company for any debt or demand due, or claimed to be due, from the company or from him or her in his or her character as member, that person may issue a notice to the company in accordance with paragraph 4.

4.  A notice under this Schedule shall—

(a)  be in writing and shall specify the action or proceeding that has been instituted;

(b)  be signed by the person who instituted the action or proceeding or by a person authorised to issue the notice on his or her behalf;

(c)  require the company to pay, secure or compound for the debt or demand, or to procure the action or proceeding to be stayed or to indemnify the defendant to his or her reasonable satisfaction against the action or proceeding, and against all costs, damages and expenses to be incurred by him or her because of it;

*Insolvency Act*

(d)    state that if the notice is not complied with, application may be made to the Court for the appointment of a liquidator; and

(e)    be served in accordance with the Rules.

5.    Unless the context otherwise requires, references in Part VI—

(a)    to a company are to be taken as references to a foreign company, except in sections 159, 161 and 162; and

(b)    to assets are to be taken as references to assets situated in the Virgin Islands.
*(Amended by Act 11 of 2004)*

_____

# SCHEDULE 4

*(Section 325)*

## POWERS OF BANKRUPTCY TRUSTEE

### PART I

### POWERS EXERCISABLE WITH SANCTION

1.    Power to carry on any business so far as may be necessary for winding it up beneficially and so far as the bankruptcy trustee is able to do so without contravening any requirement imposed by or under any enactment.

2.    Power to bring, institute or defend any action or legal proceedings relating to the assets comprised in the bankrupt's estate.

3.    Power to accept as the consideration for the sale of any asset comprised in the bankrupt's estate a sum of money payable at a future time subject to such stipulations as to security or otherwise as the creditor's committee or the Court considers fit.

4.    Power to mortgage or pledge any part of the assets comprised in the bankrupt's estate for the purpose of raising money for the payment of his or her liabilities.

5.    Power, where any right, option or other power forms part of the bankrupt's estate, to make payments or incur liabilities with a view to obtaining, for the benefit of the creditors, any asset which is the subject of the right, option or power.

6.    Power to refer to arbitration, or compromise on such terms as may be agreed on, any claims or liabilities subsisting or supposed to subsist between the bankrupt and any person who may have incurred any liability to the bankrupt.

7.    Power to make such compromise or other arrangement as may be thought expedient with creditors, or persons claiming to be creditors, in respect to bankruptcy liabilities.

8.    Power to make such compromise or other arrangement as may be thought expedient with respect to any claim arising out of or incidental to the bankrupt's estate made or capable of being made on the bankruptcy trustee by any person or by the trustee on any person.

PART 2

GENERAL POWERS

9.   Power to sell any of the assets for the time being comprised in the bankrupt's estate, including the goodwill and book debts of any business.

10.  Power to give receipts for any money received by him or her, being receipts which effectually discharge the person paying the money from all responsibility in respect of its application.

11.  Power to prove, rank, claim and draw a dividend in respect of such debts due to the bankrupt as are comprised in his or her estate.

12.  Power to exercise, in relation to any asset comprised in the bankrupt's estate, any powers the capacity to exercise which is vested in him or her under Part XII of this Act.

13.  Power to deal with any asset comprised in the estate to which the bankrupt is beneficially entitled as tenant in tail in the same manner as the bankrupt might have dealt with it.

14.  Power to at any time summon a general meeting of the bankrupt's creditors.

PART 3

ANCILLARY POWERS

15.  For the purposes of, or in connection with, the exercise of any of his or her powers under Part XII of this Act, the bankruptcy trustee may, by his or her official name—

*(a)* hold assets of every description;

*(b)* make contracts;

*(c)* sue and be sued;

*(d)* enter into engagements binding on himself and herself  and, in respect of the bankrupt's estate, on his or her successors in office;

*(e)* employ an agent;

*(f)* execute any power of attorney, deed or other instrument;

and he or she may do any other act which is necessary or expedient for the purposes of or in connection with the exercise of those powers.

_____

260 *Insolvency Act*

## SCHEDULE 5

*(Section 501)*

### OFFENCES UNDER THIS ACT

| Column 1 Section of Act creating offence | Column 2 General nature of offence | Column 3 Penalty (corporate body) | Column 4 Penalty (individual) | Column 5 Daily default fine |
|---|---|---|---|---|
| 20(2) | Director voting in favour of resolution to appoint interim supervisor without having reasonable grounds for believing that company is insolvent or is likely to become insolvent | $5,000 | $4,000 | |
| 24(2) | Interim supervisor failing to file notice of appointment with Registrar | | $1,000 | $100 |
| 24(2) | Interim supervisor failing to file notice of appointment with Commission | | $1,000 | $100 |
| 25(4) | Officer of company failing to comply with Court order made under section 25(3) | $1,000 | $1,000 | $100 |
| 27(3) | Interim supervisor contravening section 27(1) | | $2,000 | |
| 28(5) | Person failing to attend creditors' meeting | $1,000 | $1,000 | |

| Column 1<br><br>*Section of Act creating offence* | Column 2<br><br>*General nature of offence* | Column 3<br><br>*Penalty (corporate body)* | Column 4<br><br>*Penalty (individual)* | Column 5<br><br>*Daily default fine* |
|---|---|---|---|---|
| 32(5) | Person, as chairman of creditors' meeting, failing to prepare report of meeting | | $1,000 | $100 |
| 32(5) | Person, as chairman of creditors' meeting, failing to send report of meeting to creditors | | $1,000 | $100 |
| 32(5) | Person, as chairman of creditors' meeting, failing to file report of meeting with Registrar | | $1,000 | $100 |
| 33(2) | Supervisor failing to file notice of appointment with Registrar | | $1,000 | $100 |
| 33(2) | Supervisor failing to file notice of appointment with Commission | | $1,000 | $100 |
| 36(3) | Supervisor failing to keep accounting records in accordance with section 36(1) | | $7,500 | |

262    *Insolvency Act*

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 |
|---|---|---|---|---|
| *Section of Act creating offence* | *General nature of offence* | *Penalty (corporate body)* | *Penalty (individual)* | *Daily default fine* |
| 37(5) | Supervisor contravening section 37 (Supervisor to prepare and send out regular accounts and reports) | | $7,500 | |
| 38(3) | Supervisor contravening section 38 (Completion of arrangement) | | $2,000 | $100 |
| 45 | Officer of company making false representation or fraudulently doing or omitting to do anything for the purpose of obtaining the approval of the creditors of the company to an arrangement | $10,000 | $10,000, imprisonment for 2 years or both | |
| 48(2) | Interim supervisor failing to file notice of appointment with Commission | | $1,000 | $100 |

| Column 1

Section of Act creating offence | Column 2

General nature of offence | Column 3

Penalty (corporate body) | Column 4

Penalty (individual) | Column 5

Daily default fine |
|---|---|---|---|---|
| 49(4) | Debtor failing to comply with order of Court made under section 49(3) | | $7,500 imprisonment for one year or both | |
| 58(2) | Interim supervisor failing to call meeting of creditors | | $2,000 | |
| 58(2) | Interim supervisor failing to send to creditor documents required to be sent under section 58(1)*(b)* | | $2,000 | |
| 61(5) | Person, as chairman of creditors' meeting, failing to file any document as required under section 61(1) | | $1,000 | |
| 61(5) | Person, as chairman of creditors' meeting, failing to send notice of result of meeting to a creditor | | $1,000 | $100 |

264 *Insolvency Act*

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 |
|---|---|---|---|---|
| *Section of Act creating offence* | *General nature of offence* | *Penalty (corporate body)* | *Penalty (individual)* | *Daily default fine* |
| 64(3) | Supervisor contravening section 64 (Supervisor's duty to keep accounting records) | | $7,500, imprisonment for one year or both | |
| 65(4) | Supervisor contravening section 65 (Supervisor to prepare and send out regular accounts and reports) | | $7,500, imprisonment for one year or both | |
| 66(3) | Supervisor contravening section 66 (Completion of arrangement) | | $2,000 | |
| 74(2) | Debtor making any false representation or fraudulently doing, or omitting to do, anything for the purpose of obtaining the approval of his or her creditors to an arrangement | | $10,000, imprisonment for 2 years or both | |

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 |
|---|---|---|---|---|
| *Section of Act creating offence* | *General nature of offence* | *Penalty (corporate body)* | *Penalty (individual)* | *Daily default fine* |
| 82(2) | Administrator failing to give notice of his or her appointment in accordance with section 82(1)*(a)* | | $2,000 | |
| 82(2) | Administrator failing to comply with section 82(1)*(b)* | | $1,000 | $100 |
| 82(2) | Administrator failing to send notice of appointment to company or a creditor | | $1,000 | $100 |
| 85(2) | Company contravening section 85(1) (Preservation of charged and other assets) | $7,500 | $5,000 | |
| 86(8) | Company failing to file with Registrar notice of order made under section 86(2) or sealed copy of order | $500 | $500 | $100 |
| 86(8) | Company failing to comply with condition imposed under section 86 | $5,000 | $4,000 | |

266 *Insolvency Act*

LAW OF
VIRGIN ISLANDS
Revision Date: 1 Jan 2020

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 |
|---|---|---|---|---|
| *Section of Act creating offence* | *General nature of offence* | *Penalty (corporate body)* | *Penalty (individual)* | *Daily default fine* |
| 92(6) | Administrator failing to serve or file copy of order in contravention of section 92(5) | | $1,000 | $100 |
| 92(6) | Administrator failing to comply with condition imposed under section 92 | | $10,000 | |
| 100(6) | Administrator contravening section 100(1) | | $2,000 | |
| 101(5) | Person failing to attend creditors' meeting | $1,000 | $1,000 | |
| 102(6) | Administrator failing to report result of creditors' meeting to Court | | $1,000 | $100 |
| 102(6) | Administrator failing to file copy of report of creditors' meeting with Registrar | | $1,000 | $100 |
| 102(6) | Administrator failing to send notice of result of creditors' meeting to every creditor | | $1,000 | $100 |

| Column 1<br><br>*Section of Act creating offence* | Column 2<br><br>*General nature of offence* | Column 3<br><br>*Penalty (corporate body)* | Column 4<br><br>*Penalty (individual)* | Column 5<br><br>*Daily default fine* |
|---|---|---|---|---|
| 104(6) | Administrator failing to report result of creditors' meeting to Court | | $1,000 | $100 |
| 104(6) | Administrator failing to file copy of report of creditors' meeting with Registrar | | $1,000 | $100 |
| 104(6) | Administrator failing to send notice of result of creditors' meeting to every creditor | | $1,000 | $100 |
| 106(3) | Administrator contravening section 106 (Administrator's duty to keep accounting records) | | $7,500, imprisonment for one year or both | |
| 107(4) | Administrator contravening section 107 (Administrator to prepare and send out regular accounts and reports) | | $7,500, imprisonment for one year or both | |
| 108(3) | Company contravening section 108(1) (Notification) | $2,000 | $1,000 | |

268            *Insolvency Act*            **LAW OF VIRGIN ISLANDS**

Revision Date: 1 Jan 2020

| Column 1<br><br>*Section of Act creating offence* | Column 2<br><br>*General nature of offence* | Column 3<br><br>*Penalty (corporate body)* | Column 4<br><br>*Penalty (individual)* | Column 5<br><br>*Daily default fine* |
|---|---|---|---|---|
| 108(3) | Officer or administrator of company causing, permitting or acquiescing in contravention by company of section 108(1) (Notification) | $2,000 | $1,000 | |
| 112(2) | Administrator or former administrator failing to file with the Registrar copy of order varying or discharging administration order | | $1,000 | $100 |
| 116(3) | Person accepting or purporting to accept appointment or acting or purporting to act as a receiver contrary to section 116(1) | $5,000 | $4,000 | |
| 118(4) | Receiver failing to send notice of appointment to company | | $1,000 | |
| 118(4) | Receiver failing to file notice of appointment in accordance with section 118(1)*(b)* | | $2,000 | |

| Column 1<br><br>*Section of Act creating offence* | Column 2<br><br>*General nature of offence* | Column 3<br><br>*Penalty (corporate body)* | Column 4<br><br>*Penalty (individual)* | Column 5<br><br>*Daily default fine* |
|---|---|---|---|---|
| 118(4) | Administrative receiver failing to advertise his or her appointment | | $1,000 | $100 |
| 118(4) | Administrative receiver failing to send notice of his or her appointment to all creditors | | $1,000 | $100 |
| 119(4) | Person contravening or causing, permitting or acquiescing in a contravention of section 119(1) | $2,000 | $1,000 | |
| 120(7) | Receiver failing to vacate his or her office forthwith if he or she ceases to be eligible to act as a receiver | | $4,000 | |
| 120(7) | Receiver failing to give notice in accordance with section 120(3) | | $2,000 | |
| 120(7) | Receiver failing to notify Court that he or she ceases to be eligible to act as a receiver | | $2,000 | |

270 *Insolvency Act*

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 |
|---|---|---|---|---|
| *Section of Act creating offence* | *General nature of offence* | *Penalty (corporate body)* | *Penalty (individual)* | *Daily default fine* |
| 120(7) | Person failing to give notice to Registrar of vacancy in the office of receiver | | $1,000 | $100 |
| 121(3) | Person failing to comply with order made under section 121(2) | $7,500 | $5,000, imprisonment for one year or both | |
| 124(3) | Person failing to comply with order made under section 124(2) | $7,500 | $5,000, imprisonment for one year or both | |
| 136(7) | Receiver contravening section 136 (Receivership accounts to be filed with Registrar) | | $4,000 | $200 |
| 137(5) | Receiver failing to comply with order made under section 137 | | $5,000, imprisonment for one year or both | |
| 145(10) | Administrative receiver failing to file copy of order made under section 145(2) or (7) with the Registrar | | $1,000 | $100 |

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 |
|---|---|---|---|---|
| *Section of Act creating offence* | *General nature of offence* | *Penalty (corporate body)* | *Penalty (individual)* | *Daily default fine* |
| 147(7) | Administrative receiver failing to comply with section 147 (Report by administrative receiver) | | $2,000 | |
| 161(4) | Company failing to give liquidator notice of his or her appointment | $2,000 | $1,000 | |
| 178(2) | Liquidator failing to advertise his or her appointment in accordance with section 178(1)*(a)* | | $1,000 | $100 |
| 178(2) | Liquidator failing to file notice of his or her appointment with Registrar | | $1,000 | $100 |
| 178(2) | Liquidator failing to serve notice of his or her appointment on company | | $1,000 | $100 |
| 178(2) | Liquidator failing to serve notice of his or her appointment on Commission | | $1,000 | $100 |
| 179(5) | Liquidator failing to call meeting of creditors in accordance with section 179(1) | | $2,000 | |

272    *Insolvency Act*    LAW OF
VIRGIN ISLANDS

Revision Date: 1 Jan 2020

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 |
|---|---|---|---|---|
| *Section of Act creating offence* | *General nature of offence* | *Penalty (corporate body)* | *Penalty (individual)* | *Daily default fine* |
| 179(5) | Liquidator failing to furnish documents or information to creditor as required by section 179(2) | | $2,000 | |
| 179(5) | Liquidator failing to attend first creditors meeting or to report to the meeting on any exercise by him or her of his or her powers since his or her appointment | | $2,000 | |
| 191(3) | Company contravening section 191(1) (Notification of liquidation) | $2,000 | $1,000 | |
| 191(3) | Officer, receiver of liquidator of company causing, permitting or acquiescing in contravention by company of section 191(1) (Notification of liquidation) | $2,000 | $1,000 | |

*Insolvency Act* 273

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 |
|---|---|---|---|---|
| *Section of Act creating offence* | *General nature of offence* | *Penalty (corporate body)* | *Penalty (individual)* | *Daily default fine* |
| 209(7) | Person making or authorising the making of a claim under section 209 knowing that the claim is false or misleading in a material matter or that a material fact or matter has been omitted from the claim | $7,500 | $7,500, imprisonment for 2 years or both | |
| 217(4) | Liquidator failing to give notice of disclaimer | | $5,000 | |
| 231(5) | Liquidator failing to comply with order made under section 231(3) | | $7,500, imprisonment for one year or both | |
| 233(7) | Person failing to file sealed copy of the order terminating liquidation with Registrar | | $2,000 | |
| 239(5) | Liquidator failing to advertise his or her appointment in accordance with a direction of the Commission. | | $1,000 | $100 |
| 267 | Disqualified person engaging in prohibited activity | $10,000 | $7,500, imprisonment for 2 years or both | |

274 *Insolvency Act*

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 |
|---|---|---|---|---|
| *Section of Act creating offence* | *General nature of offence* | *Penalty (corporate body)* | *Penalty (individual)* | *Daily default fine* |
| 271(5) | Person failing to comply with order made under section 271(3) | $10,000 | $7,500, imprisonment for one year or both | |
| 277(4) | Relevant person failing, when required, to submit statement of affairs to office holder together with the verifying affidavit | $3,000 | $2,000 | $100 |
| 282(3) | Person failing to comply with notice received under section 282(1) | $5,000 | $4,000 | |
| 288(1) | Person failing to attend examination ordered to be held under section 285 | $7,500 | $5,000, imprisonment for one year or both | |
| 289(1) | Fraudulent conduct within the meaning of section 289(1)*(a)* | $10,000 | $10,000, imprisonment for 3 years or both | |
| 289(1) | Fraudulent conduct within the meaning of section 289(1)*(b)* | $10,000 | $10,000, imprisonment for 3 years or both | |

LAW OF
VIRGIN ISLANDS                                    *Insolvency Act*                                    275

Revision Date: 1 Jan 2020

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 |
|---|---|---|---|---|
| *Section of Act creating offence* | *General nature of offence* | *Penalty (corporate body)* | *Penalty (individual)* | *Daily default fine* |
| 299(5) | Secured creditor failing to account or pay to the trustee the proceeds from any realisation of his or her security interest in accordance with section 299(3)*(b)* | $4,000 | $3,000 | |
| 316(6) | Bankrupt failing to comply with an obligation under section 316 (Duties of bankrupt in relation to his or her assets and affairs) | | $5,000, imprisonment for one year or both | |
| 317(2) | Person failing to comply with an obligation imposed by section 317 (Delivery up by other person) | $7,5000 | $5,000, imprisonment for one year or both | |
| 326(3) | Trustee failing to advertise his or her appointment in accordance with section 326(1)*(a)* | | $1,000 | $100 |
| 326(3) | Trustee failing to serve notice of his or her appointment on bankrupt | | $1,000 | $100 |

276           *Insolvency Act*           **LAW OF
VIRGIN ISLANDS**

Revision Date: 1 Jan 2020

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 |
|---|---|---|---|---|
| *Section of Act creating offence* | *General nature of offence* | *Penalty (corporate body)* | *Penalty (individual)* | *Daily default fine* |
| 326(3) | Trustee failing to serve notice of his or her appointment on Commission | | $1,000 | $100 |
| 326(3) | Trustee failing to send notice of his or her appointment to every creditor | | $1,000 | $100 |
| 326(3) | Trustee failing to file notice of his or her appointment with Commission | | $1,000 | $100 |
| 326(3) | Trustee issuing advertisement that does not comply with section 326(2) | | $1,000 | |
| 336(7) | Person making or authorising the making of a claim under section 336 knowing that the claim is false or misleading in a material matter; or a material fact or matter has been omitted from the claim | $7,500 | $7,500, imprisonment for 2 years or both | |

| Column 1<br><br>*Section of Act creating offence* | Column 2<br><br>*General nature of offence* | Column 3<br><br>*Penalty (corporate body)* | Column 4<br><br>*Penalty (individual)* | Column 5<br><br>*Daily default fine* |
|---|---|---|---|---|
| 354(4) | Undischarged bankrupt or discharged bankrupt whose estate is still being administered failing to do anything that he or she is directed to do by the Court in contravention of section 354(2) | | $7,500, imprisonment for 2 years or both | |
| 358(4) | Trustee failing to give notice of disclaimer to every person whose rights are, to his or her knowledge, affected by the disclaimer | | $5,000 | |
| 366(4) | Bankrupt failing to submit a statement of his or her assets and liabilities in accordance with section 366(1) | | $2,500, imprisonment for 6 months or both | |
| 366(4) | Bankrupt submitting a statement of his or her assets and liabilities that does not comply with the prescribed requirements | | $2,500, imprisonment for 6 months or both | |

278    *Insolvency Act*    LAW OF
VIRGIN ISLANDS

Revision Date: 1 Jan 2020

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 |
|---|---|---|---|---|
| *Section of Act creating offence* | *General nature of offence* | *Penalty (corporate body)* | *Penalty (individual)* | *Daily default fine* |
| 373(1) | Person failing to attend examination ordered to be held under section 370 | $7,500 | $5,000, imprisonment for one year or both | |
| 381(2) | Discharged bankrupt failing to give trustee assistance in the realisation and distribution of such of his or her assets as are vested in his or her trustee | | $5,000, imprisonment for one year or both | |
| 389(1) | Bankruptcy offence (non-disclosure) | | $7,500, imprisonment for 2 years or both | |
| 390 | Bankruptcy offence (concealment of assets) contrary to paragraph *(a)*, *(b)*, *(c)*, *(d)* or *(e)* of section 390 | | $10,000, imprisonment for 3 years or both | |
| 391 | Bankruptcy offence (concealment of books and papers or falsification) contrary to paragraph *(a)*, *(b)*, *(c)*, *(d)*, *(e)* or *(f)* of section 391 | | $10,000, imprisonment for 3 years or both | |

*Insolvency Act*    279

| Column 1<br><br>*Section of Act creating offence* | Column 2<br><br>*General nature of offence* | Column 3<br><br>*Penalty (corporate body)* | Column 4<br><br>*Penalty (individual)* | Column 5<br><br>*Daily default fine* |
|---|---|---|---|---|
| 392 | Bankruptcy offence (false statements) contrary to paragraph *(a)*, *(b)*, *(c)*, *(d)* or *(e)* of section 392 | | $10,000, imprisonment for 3 years or both | |
| 393 | Bankruptcy offence (fraudulent disposal of assets) contrary to paragraph *(a)* or *(b)* of section 393 | | $10,000, imprisonment for 3 years or both | |
| 394 | Bankruptcy offence (absconding) contrary to paragraph *(a)* or *(b)* of section 394 | | $10,000, imprisonment for 3 years or both | |
| 395 | Bankrupt committing bankruptcy offence of fraudulently dealing with assets obtained on credit contrary to section 395(1) | | $10,000, imprisonment for 3 years or both | |
| 395 | Person committing bankruptcy offence of fraudulently dealing with assets obtained on credit contrary to section 395(2) | | $10,000, imprisonment for 3 years or both | |

280    *Insolvency Act*

Revision Date: 1 Jan 2020

| Column 1<br><br>*Section of Act creating offence* | Column 2<br><br>*General nature of offence* | Column 3<br><br>*Penalty (corporate body)* | Column 4<br><br>*Penalty (individual)* | Column 5<br><br>*Daily default fine* |
|---|---|---|---|---|
| 396 | Bankruptcy offence (obtaining credit; engaging in business) contrary to paragraph *(a)* or *(b)* of section 396(1) | | $7,500, imprisonment for 2 years or both | |
| 397(1) | Bankruptcy offence (failure to keep proper accounts of business) contrary to paragraph *(a)* or *(b)* of section 397(1) | | $10,000, imprisonment for 3 years or both | |
| 398 | Bankruptcy offence (gambling) contrary to paragraph *(a)* or *(b)* of section 398 | | $7,500, imprisonment for 2 years or both | |
| 416 | Restricted person engaging in prohibited activity | | $7,500, imprisonment for 2 years or both | |
| 474(4) | Person acting as an insolvency practitioner without holding a licence that is not suspended | $10,000, imprisonment for 2 years or both | $10,000, imprisonment for 2 years or both | |
| 478(4) | Licensee contravening section 478 (Production of accounts and records) | | $7,500, imprisonment for 2 years or both | |

| Column 1<br><br>*Section of Act creating offence* | Column 2<br><br>*General nature of offence* | Column 3<br><br>*Penalty (corporate body)* | Column 4<br><br>*Penalty (individual)* | Column 5<br><br>*Daily default fine* |
|---|---|---|---|---|
| 484(4) | Person appointing an overseas insolvency practitioner to act as an insolvency practitioner contrary to section 484(3) | | $5,000 | |

_____

## SCHEDULE 6

*(Section 503A)*

### DISAPPLICATION AND MODIFICATION OF FINANCIAL SERVICES COMMISSION ACT

The Financial Services Commission Act is disapplied and modified with respect to the Official Receiver, licensed insolvency practitioners and former licensed insolvency practitioners to the extent specified below:

1.    Section 29 and section 49(1)*(c)* of the Financial Services Commission Act do not apply to the Official Receiver in respect of any information, document, record, statement or thing made or disclosed to him or her in the course of discharging any function or duty or exercising any power in his or her capacity as Official Receiver.

2.    Sections 30 and 31 of the Financial Services Commission Act do not apply to any person engaged in or related to the business of acting as an insolvency practitioner.

3.    Sections 32 and 33 of the Financial Services Commission Act do not apply to a licenced insolvency practitioner, a former licenced insolvency practitioner or a person carrying on business as an insolvency practitioner.

4.    Sections 34, 36, 37, 38, 39 and 40 of the Financial Services Commission Act do not apply to a licensed insolvency practitioner.

5.    Section 35 of the Financial Services Commission Act does not apply to a licensed insolvency practitioner or a former licensed insolvency practitioner.

6.    Section 41 of the Financial Services Commission Act does not apply with respect to licensed insolvency practitioners.

*(Inserted by Act 11 of 2004)*

_____



**Campbells Legal (BVI) Limited**
Floor 4, Banco Popular Building| PO Box 4467
Road Town, Tortola VG-1110| British Virgin Islands
klogan@campbellslegal.com
**t.** +1 345 949 2648 |
**campbellslegal.com**

**By Email**

Walkers
171 Main Street
PO Box 92
Road Town
Tortola, VG1110
British Virgin Islands

20 May 2026

Dear Colleagues

**Re: Khoon Group Limited (the "Company")**

1. We refer to your letter dated 24 April 2026 and the previous correspondence between Campbells, Walkers, Oon & Bazul and Interpath in relation to Khoon Group Limited (the "**Company**").

## A. Preliminary Observations on the Approach of the JPLs

2. Before turning to the substantive issues, the Company considers it necessary to record its objection to the manner in which this correspondence has been conducted by the JPLs and their advisers. The tone and content of the correspondence from Walkers has escalated markedly, from information requests to accusations of "*deliberate campaign of delay, obstruction and obfuscation*" and suggestions that the Company's correspondence is "*aggressive and contentious*". The Company categorically rejects those characterisations.

3. What is striking — and deeply troubling from the perspective of the Company — is that the difficulties presently facing the Company are, on any objective analysis, a direct and proximate consequence of Southern Heritage's majority shareholding and the sanctions and law enforcement actions directed at Mr Chen Zhi and the Prince Group of companies, of which Southern Heritage forms a part. The Company's own interim report acknowledges that the sanctions imposed on the Company were a direct consequence of its links to Mr Chen Zhi through Southern Heritage. It is the existence and nature of Southern Heritage's majority shareholding — and not any act or omission on the part of the Board — which has caused the Company's revenue to decline by approximately 60.2%, resulted in the freezing of bank accounts, led to the termination of customer contracts, and precipitated the departure of the Company's auditor.

4. In those circumstances, it is remarkable that the JPLs have not taken the obvious and most constructive step available to them: namely, exploring the appropriately licensed

#7505860v1

**EXHIBIT**

**6**

# CAMPBELLS

divestment of a portion of Southern Heritage's 55% shareholding in the Company so as to enable the Company to return to normal commercial life. Instead, the JPLs appear to be singularly focused on point-scoring, on seeking to assert control over the Company's Board and management, and on generating professional fees — all at the ultimate expense and to the detriment of the very estate they are appointed to protect and, by extension, of the Company's other stakeholders. The Company asks that the JPLs reflect on whether their present course is consistent with the duties they owe to that estate.

5. In this regard, the Company notes with particular concern the JPLs' requests (in Oon & Bazul's letter of 24 February 2026) that the directors confirm they will not frustrate the exercise of Southern Heritage's shareholder rights to "make changes to the Board of Directors" and/or to "*place [the Company] into a liquidation process (whether by voluntary liquidation or otherwise)*". These demands, taken together with the general tenor of the correspondence, suggest that the JPLs' true objective is to take control of the Company rather than to safeguard the value of Southern Heritage's investment. The Board is duty-bound to act in the interests of the Company as a whole.

## B. Fiduciary Duties and the Statutory Inside Information Regime

6. Your letter of 24 April suggests that the Company has relied on the statutory inside information disclosure regime as "*a mechanism by which the Board of Directors of a listed company may avoid engaging with its majority shareholder*". This is a fundamental mischaracterisation of the Company's position.

7. As stated previously, the directors of the Company owe their fiduciary duties to the Company as a separate legal entity and are bound to act in the best interests of the Company as a whole, having regard to all of its shareholders and stakeholders, and not in the interests of any particular shareholder. This is a well-established principle of both Hong Kong and Cayman Islands law, reinforced by HKEX Listing Rule 3.08. Part XIVA of the SFO and the SFC's Guidelines on Disclosure of Inside Information require disclosure to the market as a whole and prohibit selective disclosure of non-public, price-sensitive information to any person, including a shareholder or its representatives.

8. Your letter of 24 April does not engage with the substance of the Company's concern in relation to its obligations. The Company is not imputing any improper motive to the JPLs; it is simply stating the legal position that the Board cannot, and will not, selectively disclose non-public financial or commercial information — including management accounts, contract asset details, and business strategy — in advance of or outside a public announcement, as the advice they have received is that to do so would likely constitute a contravention of the SFO.

# CAMPBELLS

9. Your letter of 24 April asserts that "*there are a number of ways in which the Company may engage with its shareholders … in a manner which is consistent with its fiduciary duties and applicable disclosure regimes*" but conspicuously fails to identify what those ways are.  If the JPLs or their advisers are in fact able to identify a specific mechanism by which the Company may lawfully share non-public information with a single shareholder without contravening Part XIVA of the SFO, they are invited to do so. Until then, the JPLs' reliance on unspecified "*ways*" is hollow, and the Board will continue to comply with the law.

## C. Provision of Information and Documents

10. The Company has already provided the documents and information to which Southern Heritage is entitled as a shareholder. Specifically, in our letter of 26 March 2026, we enclosed a copy of the Company's Memorandum and Articles of Association, directed your attention to the publicly available list of substantial shareholders and public announcements and reports on HKEX, and confirmed that the Company does not have any mortgages or charges.

11. As previously stated, Article 174 of the Articles expressly provides that no shareholder (not being a director) has any right to inspect any account, book or document of the Company except as conferred by the Companies Act, ordered by a court of competent jurisdiction, or authorised by the Board. The Company has complied, and will continue to comply, with its statutory obligations in this regard.

12. The Company notes the suggestion in your letter of 24 April that its responses have been "wholly inadequate" and appear to have been "*copied and pasted from similar correspondence in respect of Geotech Holdings Ltd*". Any inadvertent cross-referencing in prior correspondence is wholly immaterial. The substance of the Company's legal position is in no way affected by any such drafting, and the attempt to discredit the Company's responses on this basis is unwarranted.

## D. The Company's Financial Position and the Interim Report

13. The Company does not accept that the Interim Report contains any "*material deficiencies and omissions*". The Interim Report provides a substantive update to the shareholder and discloses, in full and frank terms, the severe impact that the sanctions have had upon the Company's business, including the decline in revenue, the termination or novation of customer contracts, the suspension of banking services, the reduction in headcount, and the departure of the Company's former auditor, RSM. The Company has not sought to conceal any of these matters from shareholders.

3

# CAMPBELLS

14. As to the specific requests in the Walkers Letter (which can be provided/responded to without breaching the various obligations set out above):

> (a) **Going concern**: The Interim Report sets out the Company's financial position in considerable detail. The Board continues to monitor the Company's ability to continue as a going concern and will make such further disclosures as are required by the Listing Rules and applicable accounting standards. The Company is not obliged to, or able to, provide a running commentary to an individual shareholder on its going concern assessment outside the ordinary reporting cycle.

> (b) **Replacement auditor/ suspension**: Any issues in relation to the Company's auditor/securing a replacement are a direct consequence of the sanctions attributable to Southern Heritage's connection with Mr Chen Zhi. If the JPLs are genuinely concerned about the risk of a suspension of trading and potential delisting, they should direct their efforts towards facilitating the removal of those sanctions — for example, by pursuing a licensed divestment of Southern Heritage's majority shareholding, rather than writing letters demanding explanations from the Board.

> (c) **Steps to address sanctions**: The Board has taken and will continue to take all steps within its power to mitigate the impact of the sanctions on the Company's operations, but a permanent resolution necessarily requires action on the part of those who caused the sanctions to be imposed — not by those who are their collateral victims.

> (d) **Paragraph 2.6/ Revenue decline and operational matters**: The Company has publicly disclosed in the Interim Report that revenue has declined from approximately S$44.2 million to approximately S$17.6 million, and that seven further projects were novated after 31 December 2025, reducing the Company's projects on hand to 11 with a notional contract value of approximately S$41.4 million. The Company will continue to comply with its disclosure obligations and keep the shareholders updated in the ordinary course.

## E. Allegations of Obstruction and Delay

15. The Company rejects in the strongest terms the allegation in your letter of 24 April that it has conducted "*a persistent and deliberate campaign of delay, obstruction and*

# CAMPBELLS

*obfuscation*". The Company, while also attempting to mitigate the various issues the sanctions have caused, has engaged with the JPLs' correspondence in a timely and measured fashion, has provided the documents and information to which Southern Heritage is entitled as a shareholder, and has explained clearly and repeatedly the legal constraints which prevent it from providing further information.

16. The suggestion that the Company's tone has been "*aggressive and contentious*" and "*not characteristic of the correspondence ordinarily exchanged between a company and its majority shareholder*" is rejected. Southern Heritage is in provisional liquidation; its directors have been displaced; it is controlled by court-appointed officers; and the sanctions which are devastating the Company's business flow directly from Southern Heritage's association with a sanctioned individual. The Company's correspondence has not been aggressive or contentious, and in the circumstances the Company is justified in responding with due caution and in ensuring that its directors do not expose themselves or the Company to liability.

## F. The Broader Position

17. The Company wishes to state clearly that the Board remains committed to acting in the best interests of the Company and all of its shareholders. The Board has at no point sought to obstruct any exercise of shareholder rights by Southern Heritage and will continue to co-operate with Southern Heritage as much as it is able to while complying with its obligations.

18. The reality that the present crisis is a direct consequence of the majority shareholding by Southern Heritage and the sanctions and allegations directed at Mr Chen Zhi and the Prince Group cannot be ignored. The Company invites the JPLs to explore the licensed divestment of a portion of Southern Heritage's shareholding to enable the Company to restore its banking relationships, re-engage its customers and rebuild its workforce. The JPLs' resources would be far better deployed in pursuing this constructive solution that would benefit all stakeholders — including Southern Heritage's estate.

## G . Reservation of Rights

19. All of the Company's and the Board's rights remain expressly and entirely reserved.

Yours faithfully,

**CAMPBELLS LEGAL (BVI) LIMITED**

**<u>EXHIBIT B</u>**

**Proposed Order**

**EXHIBIT**

7

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>PRINCE GLOBAL HOLDINGS LIMITED *et al.*,[1]<br><br>Debtors in Foreign Proceedings. | Chapter 15<br><br>Case No. 26-(_____) (__)<br><br>(Joint Administration Requested) |

**ORDER GRANTING**
**RECOGNITION OF FOREIGN MAIN PROCEEDINGS AND RELATED RELIEF**

Upon consideration of the Verified Petition[2] of the Authorized Foreign Representatives for the Debtors requesting entry of an order (this "Order") (i) recognizing the BVI Proceedings as "foreign main proceedings" under section 1517(b)(1) of the Bankruptcy Code; (ii) recognizing each of the Authorized Foreign Representatives as "foreign representatives," as such term is defined in section 101(24) of the Bankruptcy Code, in respect of the BVI Proceedings; and (iii) granting certain related relief; and this Court having found that it has jurisdiction to consider the Verified Petition and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* M-431 of the U.S. District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.); and consideration of the Verified Petition and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P); and venue of this proceeding being proper before this Court pursuant to 28 U.S.C. § 1410(1); and this Court having found that proper and adequate notice of the Verified Petition

---

[1] The Debtors in these Chapter 15 Cases are incorporated in the British Virgin Islands and maintain their registered address at Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands, VG1110. A complete list of the Debtors and their company numbers is attached as Exhibit A to the Verified Petition.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Verified Petition.

and the relief requested therein has been provided in accordance with the Bankruptcy Rules and

the Local Rules, and that no other or further notice is necessary; and this Court having determined

that the relief requested in the Verified Petition is in the best interests of the Debtors; and no

objections or other responses having been filed that have not been overruled, withdrawn or

otherwise resolved; and after due deliberation and sufficient cause appearing therefor;

**THIS COURT HEREBY FINDS AND CONCLUDES THAT**:

1.     The findings and conclusions set forth herein constitute this Court's findings of fact

and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding

pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact

constitute conclusions of law, they are adopted as such.  To the extent that any of the following

conclusions of law constitute findings of fact, they are adopted as such.

2.     Each of the Debtors has property located in the United States, and, therefore,

each of the Debtors is "eligible" to be a debtor in these Chapter 15 Cases pursuant to sections 109

and 1501 of the Bankruptcy Code.

3.     These Chapter 15 Cases were properly commenced pursuant to sections 1504 and

1509 of the Bankruptcy Code.

4.     The Verified Petition satisfies the requirements of section 1515 of the Bankruptcy

Code.

5.     The official form petitions of each of the Debtors satisfy Bankruptcy Rules

1007(a)(4) and 2002.

6.     The BVI Proceedings are "foreign proceedings" as such term is defined in section

101(23) of the Bankruptcy Code.

7.     The BVI Proceedings are pending in the BVI, which is the jurisdiction in which

each Debtor has its "center of main interests" within the meaning of such term in section

1517(b)(1) of the Bankruptcy Code. As such, the BVI Proceedings are "foreign main proceedings" pursuant to section 1502(4) of the Bankruptcy Code, which are thereby entitled to recognition as foreign main proceedings pursuant to section 1517(b)(1) of the Bankruptcy Code and to all relief afforded to foreign main proceedings under section 1520 of the Bankruptcy Code.

8. The Authorized Foreign Representatives are "persons" as such term is defined in section 101(41) of the Bankruptcy Code, and they are the duly appointed "foreign representatives" of the Debtors within the meaning of section 101(24) of the Bankruptcy Code.

9. The relief granted in this Order is necessary and appropriate to protect the Debtors and the interests of their creditors and other parties-in-interest, consistent with the principles of comity, consistent with the purposes and objectives of chapter 15 of the Bankruptcy Code, not inconsistent with the public policy of the United States and warranted pursuant to sections 105(a), 362, 1504, 1507, 1509, 1515, 1517, 1519, 1520 and 1521 of the Bankruptcy Code. The relief granted in this Order will not cause any hardship or inconvenience to any party-in-interest that is not outweighed by the benefits of granting the requested relief to the Authorized Foreign Representatives, the Debtors, their creditors and other parties-in-interest.

10. The principles of comity support recognition of the BVI Orders appointing the Authorized Foreign Representatives as joint provisional liquidators pursuant to section 170 of the BVI Insolvency Act, as well as the enforcement by this Court of the BVI Orders within the territorial jurisdiction of the United States.

11. The Authorized Foreign Representatives have demonstrated that the relief requested with respect to entrustment of the Debtors' assets under section 1521(a)(5) of the Bankruptcy Code is necessary and appropriate, consistent with the principles of comity, consistent with the purposes and objectives of chapter 15 of the Bankruptcy Code, not inconsistent with the

public policy of the United States and warranted pursuant to section 1521(a)(5) of the Bankruptcy Code.

12. All creditors and other parties-in-interest, including the Debtors, are sufficiently protected in the relief granted in this Order as required under section 1522(a) of the Bankruptcy Code.

**IT IS HEREBY ORDERED THAT**:

13. The Verified Petition and the relief requested are GRANTED as set forth herein, and any objections or responses thereto that have not been withdrawn or resolved are overruled with prejudice.

14. The BVI Proceedings are granted recognition as "foreign proceedings" as such term is defined in section 101(23) of the Bankruptcy Code and pursuant to section 1517(a) of the Bankruptcy Code.

15. The BVI Proceedings are granted recognition as "foreign main proceedings" as such term is defined in section 1502(4) of the Bankruptcy Code and pursuant to section 1517(b)(1) of the Bankruptcy Code.

16. Throughout the duration of these Chapter 15 Cases or until otherwise ordered by this Court, all relief and protection afforded to a foreign main proceeding under section 1520 of the Bankruptcy Code is hereby granted to the BVI Proceedings, the Debtors, and the Debtors' property located in the United States, as applicable, including, without limitation, the application of the automatic stay under section 362 of the Bankruptcy Code to the Debtors and their property located in the territorial jurisdiction of the United States.

17. The Authorized Foreign Representatives are recognized as "foreign representatives," as such term is defined in section 101(24) of the Bankruptcy Code, in respect of

the BVI Proceedings. The Authorized Foreign Representatives are authorized to act on behalf of the Debtors in these Chapter 15 Cases.

18.     Each Foreign Representative is entrusted with the administration or realization of all of the Debtors' property within the territorial jurisdiction of the United States as set forth in section 1521(a)(5) of the Bankruptcy Code.

19.     The BVI Proceedings, the BVI Orders and any other orders entered by the BVI Court in the BVI Proceedings as of the date of this Order shall be and hereby are granted comity and given full force and effect in the United States.

20.     This Order is without prejudice to the Authorized Foreign Representatives requesting any additional relief in these Chapter 15 Cases, including seeking recognition and enforcement in the United States of any further orders issued by the BVI Court.

21.     No action taken by the Authorized Foreign Representatives, the Debtors or their respective successors, agents, representatives, advisors or counsel, in preparing, disseminating, applying for, implementing or otherwise acting in furtherance of the BVI Proceedings, the documents contemplated thereunder, this Order, these Chapter 15 Cases, any further order for additional relief in these Chapter 15 Cases or any adversary proceedings in connection therewith, will be deemed to constitute a waiver of the immunity afforded such persons under sections 306 or 1510 of the Bankruptcy Code.

22.     The Authorized Foreign Representatives, the Debtors and their respective agents are authorized to serve or provide any notices required under the Bankruptcy Rules, the Local Rules or the orders of this Court.

23.     The Authorized Foreign Representatives are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

24.     No party shall incur any liability for following the terms of this Order, whether by acting or refraining from acting, except in the case of the party's own gross negligence or willful misconduct.

25.     Notwithstanding any provision in the Bankruptcy Code or the Bankruptcy Rules to the contrary, including, without limitation, Bankruptcy Rules 1018, 7062 and 9014, (a) this Order shall be effective immediately and enforceable upon its entry, (b) the Authorized Foreign Representatives are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order and (c) this Order shall constitute a final order within the meaning of 28 U.S.C. § 158(a).

26.     This Court shall retain jurisdiction with respect to the implementation, enforcement, amendment and modification of this Order.


Dated:     _____

        New York, New York                    The Honorable _____
                                              United States Bankruptcy Judge

## INSOLVENCY RULES

### ARRANGEMENT OF REGULATIONS

### PART I

### PRELIMINARY PROVISIONS

REGULATION
1.  Short title
2.  Interpretation
3.  Prescribed financial services licence

### PART II

### COURT PROCEDURE AND PRACTICE

#### Division 1

#### *General*

4.  Application of CPR
5.  Exercise of Court's powers
6.  Filing of documents with the Court
7.  Filing of documents with the Registrar

#### Division 2

#### *Practice Directions and Guides*

8.  Issue of practice directions
9.  Practice directions to be published in *Gazette*
10.  Compliance with practice directions
11.  Practice guides

#### Division 3

#### *Applications*

12.  Scope of rules
13.  Types of application
14.  Form and content of application
15.  Application for appointment of insolvency practitioner
16.  Filing of applications
17.  Service of applications
18.  Persons entitled to copy of certain applications
19.  Affidavit of service
20.  Hearing of applications

EXHIBIT

8

21. *Ex parte* hearings
22. Affidavits


## Division 4

### *Service*

23. Scope of rules concerning service
24. Application of CPR
25. Responsibility for service
26. Service on company
27. Service on partnership
28. Service on foreign company
29. Service on any other person
30. Sending or delivering other documents


## Division 5

### *General*

31. Advertisements
32. Advertisement of liquidator's appointment
33. Advertisement of bankruptcy trustee's appointment


## Division 6

### *Minors and Patients*

34. Interpretation
35. Appointment of next friend
36. Affidavit in support of application
37. Service of documents and giving of notice
38. Termination of appointment of next friend and variation of conditions
39. Termination of appointment of next friend of minor on majority
40. Directions

PART III

GENERAL PROVISIONS

## Division 1

### *Creditors' and Members' Meetings*

41. Interpretation
42. Scope of this Division

26-10769-mg    Doc 77-2    Filed 06/05/26    Entered 06/05/26 16:53:44    Exhibit 2 -
Transcript of the Remote Deposition of Riz Mokal    Pg 811 of 991

LAW OF
VIRGIN ISLANDS                    *Insolvency Rules*                                35
Revision Date: 1 Jan 2020                                          [Statutory Instrument]

## *Calling of Creditors' Meetings*

43.    Calling of creditors' meetings
44.    Form of notice calling creditors' meeting and accompanying documents
45.    Notice to be given to creditors
46.    Notice of meetings by advertisement
47.    Notice to Registrar, Commission and Official Receiver
48.    Meetings requisitioned by creditors

## *Conduct of Creditors' Meetings*

49.    Chairman
50.    Suspension
51.    Adjournment of meetings
52.    Chairman as proxy holder
53.    Quorum

## *Voting Rights and Majorities*

54.    Resolutions
55.    Creditors' entitlement to vote
56.    Secured creditors and holders of negotiable instruments
57.    Hire purchase, conditional sale and chattel leasing agreements
58.    Admission and rejection of claims
59.    Appeal
60.    Minutes
61.    Members' meetings

# Division 2

## *Proxies and Company Representation*

62.    Interpretation
63.    General provisions concerning proxies
64.    Issue and use of proxy forms
65.    Use of proxies at meetings
66.    Retention of proxies
67.    Right of inspection
68.    Proxy-holder with financial interest
69.    Company representation

# Division 3

## *The Creditors' Committee*

70.    Interpretation for this Division
71.    Committee may establish own procedures
72.    Meetings
73.    Chairman of meetings

74.    Quorum and resolutions
75.    Committee members' representatives
76.    Written resolutions
77.    Cooperation by office holder with committee
78.    Termination of insolvency proceeding

## Division 4

### *Written Resolutions*

79.    Written resolutions

## PART IV

### CREDITORS' ARRANGEMENTS

## Division 1

### *General*

80.    Scope of and interpretation for this Part
81.    Additional matters that may be included in an arrangement
82.    Chairman of creditors' meeting
83.    Voting at creditors' meeting
84.    Appointment of joint supervisors

## Division 2

### *Company Creditors' Arrangement*

85.    Scope of this Division

### *Proposal*

86.    Form and contents of proposal
87.    Statement of affairs
88.    Amendment or withdrawal of proposal before appointment of interim
       supervisor
89.    Amendment or withdrawal of proposal after appointment of interim supervisor
90.    Amendment or withdrawal of proposal before creditors' meeting
91.    Effect of amendment or withdrawal of proposal

### *Appointment of Interim Supervisor*

92.    Appointment of Interim Supervisor by Board
93.    Appointment by administrator or liquidator of another insolvency practitioner
       as interim supervisor

*Reports to Creditors*

94.    Report to creditors on proposal
95.    Report on modification of arrangement


*Withdrawal of Proposal at Creditors' Meeting*

96.    Withdrawal of proposal


*Termination of Arrangement*

97.    Termination of arrangement


*Applications to Court*

98.    Application for appointment of supervisor or interim supervisor
99.    Application where arrangement approved or modified
100.    Application on grounds of unfair prejudice


**Division 3**

***Individual Creditors' Arrangement***

101.    Scope of this Part


*Proposal*

102.    Contents of proposal
103.    Amendment of proposal before appointment of interim supervisor
104.    Amendment of proposal after appointment of interim supervisor
105.    Amendment of proposal before creditors' meeting


*Appointment of Interim Supervisor*

106.    Appointment of interim supervisor


*Moratorium*

107.    Application for moratorium order


*Interim Supervisor's Report on Proposal*

108.    Report to Court
109.    Notice of arrangement


*Applications to Court*

110.    Application concerning supervisor or interim supervisor
111.    Revocation or suspension of arrangement

112.    Service of orders


PART V

ADMINISTRATION

*Preliminary*

113.    Interpretation and scope of this Part


*Obtaining an Administration Order*

114.    Application
115.    Form of application
116.    Affidavit in support
117.    Subsequent application for appointment of liquidator
118.    Service of application
119.    Copies of application to be sent to other persons
120.    Hearing of application


*Administration Order*

121.    Order
122.    Notice of administration order


*Proposal and Statement of Affairs*

123.    Matters to be set out in report on proposals
124.    Advertisement of availability of proposal for members
125.    Statement of affairs
126.    Minutes of creditors' meetings
127.    Requisition of meeting by creditors under section 100(4)
128.    Modification of proposals
129.    Creditors' committee
130.    Final report


*Administrator*

131.    Resignation of administrator
132.    Death of administrator
133.    Application by creditor to remove administrator
134.    Application to replace administrator
135.    Application to appoint joint administrator
136.    Administrator's duties on vacating office
137.    Discharge of administration order
138.    Expenses of administration

## PART VI

## RECEIVERSHIP

### *General*

139.    Scope of this Part
140.    Persons not eligible to be appointed or act as receiver

### *Notices and Advertisement*

141.    Notice and advertisement of appointment
142.    Notice of vacation of office
143.    Report of meeting of unsecured creditors

### *Miscellaneous Provisions*

144.    Application to dispose of charged assets
145.    Death of administrative receiver

## PART VII

## PROVISIONS APPLICABLE TO THE LIQUIDATION OF COMPANIES AND TO THE BANKRUPTCY OF INDIVIDUALS

### Division 1

### *Quantification of Claims*

146.    Claim in currency other than dollars
147.    Discounts
148.    Discount for debt payable after commencement date

### *Statutory Demand*

149.    Statutory demand
150.    Service on individual
151.    Service out of jurisdiction
152.    Setting aside of statutory demand

## PART VIII

## LIQUIDATION

### *Preliminary*

153.    Scope of this Part

## Division 1

### *Appointment of Liquidator*

154. Appointment of liquidator by members
155. Application
156. Affidavit in support
157. Service of application on company
158. Copies of application to be sent to other persons
159. Application seeking appointment of supervisor as liquidator
160. Persons entitled to a copy of the application
161. Advertisement of application
162. Notice of intention to appear
163. List of appearances
164. Affidavit in opposition
165. Leave to withdraw application
166. Appointment of Official Receiver as liquidator
167. Notice of order
168. Application by member of company

## Division 2

### *Interim Relief*

169. Application for appointment of provisional liquidator
170. Affidavit in support of application
171. Hearing of application
172. Order appointing provisional liquidator

## Division 3

### *Notice of Appointment and First Meeting of Creditors*

173. First meeting of creditors

## Division 4

### *Liquidators*

174. Authentication of liquidator's appointment
175. Removal of liquidator
176. Resignation of liquidator under section 188(1)*(a)*
177. Resignation of liquidator under section 188(1)*(b)*
178. Leave to resign
179. Death of liquidator
180. Advertisement of appointment
181. Solicitation

## Division 5

### *Settling List of Members*

182.    Form and contents of list of members
183.    Procedure for settling list of members

## Division 6

### *Claims*

184.    Claim by unsecured creditors
185.    Claim forms
186.    Application to Court to expunge or amend an admitted claim
187.    Negotiable instruments
188.    Inspection of claims

## Division 7

### *Distributions*

189.    Distribution by means of dividend
190.    Notice to submit claim
191.    Distributions
192.    Distribution of dividend

## Division 8

### *Disclaimer*

193.    Notice of disclaimer
194.    Communication of notice of disclaimer
195.    Duty to keep Court informed
196.    Notice to elect
197.    Notice to declare interest in onerous property
198.    Application for vesting order or order for delivery

## Division 9

### *Miscellaneous Provisions*

199.    Prescribed priority

PART IX

GENERAL PROVISIONS WITH REGARD TO COMPANIES THAT ARE
INSOLVENT OR IN LIQUIDATION

### Division 1

### *Statement of Affairs*

200.    Interpretation
201.    Notice requiring statement of affairs
202.    Verification and delivery of statement of affairs
203.    Affidavit of concurrence
204.    Filing of statement of affairs and affidavit of concurrence
205.    Release from duty to submit statement of affairs and extension of time
206.    Application to Court where office holder refuses a request under rule 205
207.    Expenses of statement of affairs
208.    Order of limited disclosure
209.    Application by creditor for disclosure

### Division 2

### *Investigation of Insolvent Company's Affairs*

### *Office Holders Powers*

210.    Request by office holder for information

### *Examination Before Court*

211.    Application for examination
212.    Adjournment of examination
213.    Examinee unfit for examination
214.    Adjournment of examination

PART X

DISQUALIFICATION ORDERS

215.    Application for disqualification order
216.    Affidavits in response and reply
217.    Hearing

PART XI

BANKRUPTCY

### *Preliminary*

218.    Official name of trustee

219.    Appointment of Official Receiver as trustee

## **Division 1**

### ***Bankruptcy Order***

#### *Creditor's Application*

220.    Scope of and interpretation for this Division
221.    Form of creditor's application
222.    Identification of debtor
223.    Particulars of liability
224.    Application based on statutory demand
225.    Application based on unsatisfied execution
226.    Other matters to be specified in application
227.    Filing of application
228.    Affidavit in support
229.    Affidavit of service of statutory demand
230.    Service of application for bankruptcy order
231.    Substituted service
232.    Death of debtor before service
233.    Affidavit of service of application for bankruptcy order
234.    Copies of application to be sent to other persons
235.    Application seeking appointment of supervisor as trustee
236.    Application opposed by debtor
237.    Notice of intention to appear
238.    List of appearances
239.    Hearing of application
240.    Parties who may be heard
241.    Non-appearance of applicant or failure to prosecute application
242.    Extension of time for hearing
243.    Adjournments
244.    Substitution of applicant
245.    Leave to withdraw application

#### *Debtor's Application*

246.    Scope of and interpretation for this Division
247.    Form of application
248.    Admission of insolvency
249.    Filing of application
250.    Application where arrangement in place

#### *Rules Applicable to Bankruptcy Orders*

251.    Scope of and interpretation for this Division
252.    Drawing and content of bankruptcy order
253.    Service of bankruptcy order

44           *Insolvency Rules*         **LAW OF VIRGIN ISLANDS**

[Statutory Intsrument]         Revision Date: 1 Jan 2020

254.    Advertisement of bankruptcy order
255.    Stay of advertisement
256.    Amendment of title of proceedings


**Division 2**

***Interim Relief***

257.    Application for order under section 307(1)
258.    Hearing of application
259.    Order under section 307(1)


**Division 3**

***Bankrupt's Estate***

260.    Duties of bankrupt with respect to after acquired property
261.    Action against person to whom bankrupt disposed assets
262.    Expenses of acquiring title to after-acquired assets
263.    Purchase of replacement property for items of excess value


***Income Payments Orders***

264.    Application for order
265.    Notice of order
266.    Order under section 322(3)*(b)*
267.    Variation or discharge of order


**Division 4**

***Bankruptcy Trustee***

268.    Appointment of trustee by Court
269.    Authentication of trustee's appointment
270.    Removal of trustee
271.    Resignation of liquidator under section 329(1)*(a)*
272.    Resignation of liquidator under section 329(1)*(b)*
273.    Leave to resign
274.    Death of liquidator
275.    Advertisement of appointment
276.    Solicitation


**Division 5**

***Administration by Trustee***

277.    Meetings of creditors
278.    Trustee's duty to report to Official Receiver and creditors

## Division 6

### *Claims and Distribution of Estate*

279.    Claims by unsecured creditors
280.    Claim forms
281.    Application to Court expunge or amend an admitted claim
282.    Negotiable instruments
283.    Inspection of claims
284.    Distribution of dividend
285.    Final meeting

## Division 7

### *Disclaimer*

286.    Notice of disclaimer
287.    Communication of notice of disclaimer
288.    Duty to keep Court informed
289.    Notice to elect
290.    Application for leave to disclaim
291.    Notice to declare interest in onerous property.
292.    Application for vesting order or order for delivery.

## Division 8

### *Investigation of Bankrupt's Affairs*

#### *Statement of Assets and Liabilities*

293.    Statement of assets and liabilities
294.    Scope of rules 295 to 298
295.    Submission and filing of verified statement
296.    Release from duty to submit statement of assets or liabilities and extension of time
297.    Application to Court where office holder refuses a request under rule 296
298.    Expenses of statement of assets and liabilities
299.    Report where statement of assets and liabilities submitted
300.    Statement of affairs dispensed with

#### *Examination*

301.    Application for examination
302.    Advertisement of order
303.    Application required by creditors
304.    Record of examination
305.    Adjournment of examination
306.    Costs of an examination

## Division 9

### *Discharge and Annulment of Bankruptcy*

### *Discharge*

307.   Application in relation to automatic discharge
308.   Application concerning order for suspension of discharge
309.   Application for discharge
310.   Report of Official Receiver

### *Annulment of Bankruptcy Order*

311.   Application for annulment
312.   Notice of application and other documents
313.   Report by trustee
314.   Power of Court to stay proceedings
315.   Notice to creditors who have not submitted a claim
316.   The hearing
317.   Security to be provided by bankrupt
318.   Notice to creditors
319.   Advertisement of annulment
320.   Trustee's final account

## Division 10

### *Miscellaneous Provisions*

321.   Prescribed priority
322.   Register of Bankruptcy Orders
323.   Changes to information entered in the register of bankruptcy orders

### PART XII

### NETTING AND FINANCIAL CONTRACTS

324.   Financial contracts

### PART XIII

### MISCELLANEOUS AND GENERAL

325.   Insolvency practitioner's consent to act
326.   Remuneration

### *Insolvency Surplus Account*

327.   Payments into Insolvency Surplus Account
328.   Investment of monies in Insolvency Surplus Account
329.   Payments out of the Insolvency Surplus Account

SCHEDULE 1:   Provisions of CPR not Applicable in Insolvency Proceedings
SCHEDULE 2:   Preferential Claims
SCHEDULE 3:   Forms

## INSOLVENCY RULES -SECTION 498

*(S.I. 45/2005 and Act 1 of 2008)*

**Commencement**

*[16 August 2004 .. rules 3 and 324*
*30 June 2005 .. Remaining provisions except for Part V]*

## PART I

## PRELIMINARY PROVISIONS

**Short title**

1.   These Rules may be cited as the Insolvency Rules.

**Interpretation**

2.   (1)  In these Rules—

"Act" means the Insolvency Act;

"contact details", in respect of a person, means—

>    *(a)*  a telephone number;

>    *(b)*  a fax number;

>    *(c)*  an e-mail address; or

>    *(d)*  another method of communication, not being a physical address.

"CPR" means the Eastern Caribbean Supreme Court Civil Procedure Rules 2000 and "CPR" followed by a Part or rule by number means the Part or rule with that number in those rules;

"insolvency proceeding" means any proceeding under the Act or the rules, including a creditors' arrangement;

"practice direction" means a direction as to practice and procedure issued by the Court under rule 8;

"Regulations" means the Regulations made under section 486;

"Rules" means these Rules;

"section" means a section of the Act.

(2) For the purposes of section 2(1) [definition of "preferential claims"], the claims set out in Schedule 2 are preferential claims.

(3) Unless otherwise provided, the words and expressions defined in the Act have the same meaning in the rules.

**Prescribed financial services licence**

**3.** For the purposes of section 2(1) (definition of "regulated person"), a prescribed financial services licence is a licence, authorisation, permission or recognition issued under one of the following Acts—

  *(a)* Banks and Trust Companies Act;

  *(b)* Insurance Act;

  *(c)* Company Management Act;

  *(d)* Securities and Investment Business Act

PART II

COURT PROCEDURE AND PRACTICE

## Division 1

### *General*

**Application of CPR**

**4.** (1) Subject to paragraph (2), except so far as inconsistent with the Act or the rules or a practice direction issued under rule 8, the CPR, practice directions issued under CPR Part 4 and practice guidance issued under CPR 4.6 apply to insolvency proceedings, with any necessary modifications.

  (2) The provisions of the CPR specified in Schedule 1 do not apply in insolvency proceedings.

**Exercise of Court's powers**

**5.** Subject to any provision in the Act or the rule s to the contrary or to any practice direction, the functions of the Court under the Act or the rules may be exercised by a master.

**Filing of documents with the Court**

**6.** Every document filed with the Court shall have endorsed upon it the date and time at which it was filed and, if the rules so provide, shall be sealed.

**Filing of documents with the Registrar**

**7.** (1) Where a document is required or permitted under the Act or the rules to be filed with the Registrar, the document is filed by delivering or posting it to the Registrar.

  (2) A document is filed with the Registrar on the day when it is received at the Companies Registry or, where it is received at a time when the Companies Registry is closed, on the next day on which the Companies Registry is open.

## Division 2

### *Practice Directions and Guides*

**Issue of practice directions**

**8.** (1) The Chief Justice may issue a practice direction where required or permitted by the Act or the rules.

(2) Where there is no express provision in the Act or the rules for such a direction, the Chief Justice may issue directions as to the practice and procedure to be followed with regard to insolvency proceedings before the Court.

(3) In the case of any inconsistency between a practice direction issued under this rule and the CPR, or a practice direction or practice guide issued under the CPR, the practice direction issued under this rule prevails.

**Practice directions to be published in *Gazette***

**9.** (1) A practice direction issued under rule 8 shall be published in the *Gazette*.

(2) A practice direction issued under rule 8 comes into effect on its publication in the *Gazette* or on such later date as may be specified in the direction.

**Compliance with practice directions**

**10.** (1) In this rule, "relevant practice direction" means a practice direction made—

    *(a)* under rule 8; or

    *(b)* under CPR Part 4.

(2) Unless there are good reasons for not doing so, a party shall comply with any relevant practice directions.

(3) The Court may make an order under CPR Part 26 (Powers of Court) or CPR Part 64 (Costs – General) against a party who fails to comply with a relevant practice direction.

**Practice guides**

**11.** (1) In this rule, "relevant practice guide" means a practice guide made

    *(a)* under this rule; or

    *(b)* under CPR 4.6.

(2) The Court may issue practice guides to assist parties concerned with insolvency proceedings before the Court.

(3) Parties shall have regard to any relevant practice guide.

(4) The Court may take account of any failure of a party to comply with any relevant practice guide when deciding whether or not to make an order under CPR Part 26 (Powers of the Court) or CPR Part 64 (Costs – General).

## Division 3

### *Applications*

**Scope of rules**

**12.** (1)  Except as otherwise provided in the Act or the rules, this Division applies to every application made to the Court under the Act or the rules.

(2) Notwithstanding this Division, an application for an administration order, for the appointment of a liquidator and for a bankruptcy order shall also comply with the relevant provisions of the Act and the rules.

**Types of application**

**13.** (1)  An application to the Court which is not an application made in insolvency proceedings already before the Court shall be made as an "originating application".

(2) An application to the Court made in insolvency proceedings already before the Court shall be made by way of an "ordinary application".

(3) For the purposes of applying the CPR, an application made in insolvency proceedings, whether originating or ordinary, shall be regarded as a fixed date claim.

**Form and content of application**

**14.** (1)  An application, whether originating or ordinary, shall be in writing and in the prescribed form, with such modifications as are appropriate.

(2) In particular, an application shall state—

*(a)*  the name of the applicant and the names of any respondents;

*(b)*  the nature of the relief or the order applied for or the directions sought from the Court;

*(c)*  the names and addresses of the persons, if any, on whom it is intended to serve the application or that no person is intended to be served;

*(d)*  where the Act or the rules require that notice of the application is to be given to specified persons, the names and addresses of those persons so far as known to the applicant;

*(e)*  the applicant's name and his address for service within the Virgin Islands; and

*(f)*  the applicant's contact details.

(3) Where an application is made on behalf of an applicant by a legal practitioner appointed by the applicant to act for him or her, the application shall state the full address of the legal practitioner, contact details for the legal practitioner and the name or reference of the individual dealing with the matter.

(4) An originating application shall set out the grounds on which the applicant claims to be entitled to the relief or order sought.

(5) The application shall be signed by the applicant if he or she is acting in person or, otherwise, by or on behalf of his or her legal practitioner.

(6) An application may, and where the rules so provide shall, be supported by an affidavit.

(7) Where the address for service of an applicant changes, he or she shall immediately notify the Court and all other parties and any document sent to the original address before notice of the change is given is regarded as validly served.

### Application for appointment of insolvency practitioner

**15.** Any application that seeks the appointment of one or more insolvency practitioners in an insolvency proceeding shall have attached to it, a written statement signed by each of the proposed insolvency practitioners—

> *(a)* stating that the insolvency practitioner consents to accept the appointment;
>
> *(b)* setting out details of any prior professional relationship that he or she has had with the company or individual concerned; and
>
> *(c)* stating that he or she is eligible to act as insolvency practitioner in respect of the company or individual concerned.

### Filing of applications

**16.** (1) An application, with any supporting documents, shall be filed with the Court together with one copy for exhibiting to the affidavit of service, if required, and sufficient additional copies for service.

(2) Unless the rules otherwise provide, or the Court otherwise orders, the Court shall—

> *(a)* fix a venue for the first hearing of the application;
>
> *(b)* seal each application and each copy of the application filed;
>
> *(c)* endorse on the application, and on each copy of the application filed, the date and time of filing and details of the venue fixed; and
>
> *(d)* return the copies of the application to the applicant.

### Service of applications

**17.** (1) A copy of the application, endorsed in accordance with rule 16(2), shall be served on—

> *(a)* the respondent or respondents named in the application; and
>
> *(b)* any other person that the Court may direct.

(2) Subject to paragraph (3), notice of the application shall be given to any person specified in the rules and to any other person that the Court may direct.

(3) Unless the Act or the rules provide otherwise, the Court may, by order, give any of the following directions—

> *(a)* that the giving of notice of an application to any person be dispensed with; and
>
> *(b)* that notice be given in some way other than that specified in the Act or the rules.

(4) Unless the Act or the rules provide otherwise, an application shall be served at least 14 days before the date fixed for the hearing.

**Persons entitled to copy of certain applications**

**18.** (1) Each of the following persons may request the applicant to provide him or her with a copy of an application for an administration order or an application for the appointment of a liquidator—

(a) a director of the company against which the application is made;

(b) a member of the company; and

(c) a creditor of the company.

(2) On receipt of a request made under paragraph (1), the applicant, or where the applicant is represented by a legal practitioner, his or her legal practitioner, shall provide the person making the request with a copy of the application.

**Affidavit of service**

**19.** (1) Where required by the Act or the rules, service of an application or other document shall be verified by an affidavit of service in the prescribed form sworn by the person who effected service specifying the date on which, and the manner in which, service was effected.

(2) A sealed copy of the application or other document served, together with any supporting documents served, shall be exhibited to the affidavit of service.

(3) The affidavit verifying service shall be filed in Court as soon as reasonably practicable after service but, in any event, not less than 2 days prior to the date fixed for the hearing of the application.

**Hearing of applications**

**20.** (1) Unless otherwise provided by the Act or the rules—

(a) an application before the master shall be heard in chambers; and

(b) an application before the judge may be held in chambers or in Court.

(2) An ordinary application shall be made to the master unless—

(a) the Act, the rules or a practice direction issued under rule 8 provide otherwise; or

(b) the master does not have power to make the order sought.

(3) The master may refer to the judge any matter that he or she considers should properly be decided by the judge, and the judge may either dispose of the matter or refer it back to the master with such directions as he or she considers appropriate.

(4) The following originating applications shall be made and heard by the judge—

(a) an application for an administration order;

(b) an application to appoint a liquidator of a company or a foreign company; and

(c) an application for a bankruptcy order.

(5) Nothing in this rule precludes an application being made directly to the judge in a proper case.

(6) Unless the Act or the rules provide otherwise, any person served with or given notice of an application is entitled to appear or be represented at the hearing of the application.

### *Ex parte* hearings

**21.** (1) Where the Act or the rules do not require service of an application on, or notice of it to be given to, any person, the Court may hear the application *ex parte*.

(2) Where the application is made *ex parte* in the circumstances specified in paragraph (1), the Court may—

(a) hear it forthwith, without fixing a venue as required by rule 16(2); or

(b) fix a venue for the application to be heard, in which case rule 16(2) applies.

### Affidavits

**22.** (1) Except as provided otherwise by the Act or the rules, or as the Court otherwise orders, an affidavit in an insolvency proceeding may contain statements of information and belief.

(2) The deponent of an affidavit in an insolvency proceeding—

(a) shall state which of the statements in it are made from the deponent's own knowledge and which are matters of information and belief;

(b) shall specify the means of his or her knowledge or belief as to the matters sworn to; and

(c) if he or she is not an applicant, shall state the capacity in which and the authority by which he or she makes the affidavit.

(3) Subject to paragraphs (1) and (2) and except as provided otherwise by the Act or the rules or as the Court otherwise orders, CPR Part 30 applies to an affidavit sworn under the Act or the rules with such modifications as the circumstances require.

## Division 4

### *Service*

### Scope of rules concerning service

**23.** (1) This Division applies where in an insolvency proceeding—

(a) a document is required or permitted to be served, sent or delivered to any person; or

(b) notice of any matter is required or permitted to be given to any person.

(2) In this Division, "registered office" has the meaning set out in the International Business Companies Act, the Companies Act or the BVI Business Companies Act, as the case may be.

### Application of CPR

**24.** (1) Except as otherwise provided in the Act or the rules—

*(a)* CPR Parts 5 and 7 apply to the service of a document of a type specified in paragraph (2), as if the document was a claim form; and

*(b)* CPR Parts 6 and 7 apply to the service of an ordinary application, a judgment or order and any other document required or permitted to be served, sent or delivered in an insolvency proceeding before the Court; in each case with such modifications as are necessary.

(2) Paragraph (1)*(a)* applies to the documents of the following types—

*(a)* an application for an administration order;

*(b)* an application for the appointment of a liquidator;

*(c)* an application for a bankruptcy order;

*(d)* an originating application;

*(e)* a statutory demand; and

*(f)* an order for the examination of a person under section 284.

(3) A document referred to in paragraph (2) shall be served in accordance with paragraph (1)*(a)* on every person whom the Act or the rules require to be served with the document.

**Responsibility for service**

**25.** (1) Unless the Act or the rules provide otherwise, the service of documents in insolvency proceedings is the responsibility of the parties and will not be undertaken by the Court.

(2) Paragraph (1) applies notwithstanding that a rule in the CPR applicable in insolvency proceedings may state otherwise.

(3) As soon as reasonably practicable after making an order in an insolvency proceeding, the Court shall provide the applicant with, or send to the applicant, sealed copies of the order for service.

**Service on company**

**26.** (1) Subject to paragraphs (2) and (3), service on a company may be effected by one of the methods of service specified in CPR 5.7 (Service on limited company).

(2) Service of a document of a type specified in rule 24(2)*(a)*, *(b)*, *(d)* and *(e)* shall be served on a company—

*(a)* at its registered office—

(i) by serving the application personally on a director, officer or employee of the company;

(ii) by serving the application personally on a person who acknowledges himself or herself to be authorised to accept service of documents on behalf of the company; or

(iii) if service under subparagraphs (i) or (ii) is not possible, by leaving the application at the registered office in such a way that it is likely to come to the attention of a person coming to the office; or

Revision Date: 1 Jan 2020                                                        [Statutory Instrument]

*(b)* if, for any reason, service of a document at the registered office of a company under subparagraph *(a)* is not practicable, or the company has no registered office, the document may be served—

(i) by leaving it at the company's last known principal place of business in the Virgin Islands in such a way that it is likely to come to the attention of a person coming to the office; or

(ii) by serving the document personally on any director, officer or manager of the company.

(3) CPR 5.13 and 5.16 do not apply to the service on a company of a statutory demand or an application for an administration order or for the appointment of a liquidator.

(4) Where the Act or the rules require service of a document on the board of a company, service may be effected by service of a single copy of the document on the company at its registered office.

## Service on partnership

**27.** Service on a partnership may be effected by one of the methods of service specified in CPR 5.8 (Service on firm or partnership).

## Service on foreign company

**28.** (1) Service on a foreign company may be effected—

*(a)* by one of the methods of service specified in CPR 5.9 (Service on body corporate); or

*(b)* by serving the claim form, in the Virgin Islands, personally on any person who acknowledges himself or herself to be authorised to accept service of documents on behalf of the foreign company.

(2) If, for any reason, service of a document in a manner specified in paragraph (1) is not practicable, service may be effected by leaving the document at, or sending it by post to, any place of business established by the foreign company in the Virgin Islands.

## Service on any other person

**29.** (1) Service on any other person may be effected by one of the methods specified in the relevant Part of the CPR or by delivering the document to be served to his or her proper address.

(2) For the purposes of paragraph (1), a person's proper address is any address which he or she has previously notified as his or her address for service or, if he or she has not notified any such address, service may be effected by delivery of the document to his or her usual or last known address.

(3) Delivery of documents to any place or address may be made by leaving them there or by sending them by post.

## Sending or delivering other documents

**30.** (1) Paragraph (2) applies where, under the Act or the rules—

*(a)* a document, other than an application, is required or permitted to be sent or delivered to any person; or

*(b)* written notice of a meeting or any matter is required or permitted to be given to any person.

(2) A document may be sent or delivered and written notice may be given—

*(a)* by any means of service specified in CPR Part 6; or

*(b)* by any other means, including a means of electronic communication, that may be agreed between the person sending the document or notice and the person receiving it.

## Division 5

### *General*

### Advertisements

**31.** (1) Without limiting any specific requirement to advertise contained in the Act or the rules, where a person is required by the Act or the rules to advertise any application, order, notice or other document or matter, he or she shall, within the time specified in the Act or the rules—

*(a)* ensure that a copy of the application, order, notice or other document or matter concerned is delivered to the *Gazette* Office for advertisement; and

*(b)* advertise the application, order, notice or other document or matter concerned in such newspaper or newspapers that the person considers most appropriate for ensuring that the application, order, notice or other document or matter comes to the attention of the creditors of the company or individual who is subject to the insolvency proceeding concerned.

(2) The first meeting of creditors in an administration or a liquidation and the notice specified in section 147(3) shall be advertised in the same newspaper as that in which, as the case may be, the notice of the administration order, the appointment of the liquidator or the appointment of the administrative receiver was advertised.

(3) Where paragraph (2) applies, the administrator, liquidator or administrative receiver may also advertise in such other newspaper as he or she thinks appropriate for ensuring that the notice comes to the attention of the creditors of the company.

### Advertisement of liquidator's appointment

**32.** (1) This rule applies to the advertisement by a liquidator of his or her appointment as required by section 178(1).

(2) A liquidator shall advertise his or her appointment—

*(a)* as specified in rule 31(1)*(a)*;

*(b)* in a newspaper published and circulating in the Virgin Islands; and

*(c)* in such other newspaper or newspapers, if any, that he or she considers most appropriate for ensuring that the application, order, notice or other

document or matter comes to the attention of the creditors of the company.

### Advertisement of bankruptcy trustee's appointment

**33.** (1) This rule applies to the advertisement by a bankruptcy trustee of his or her appointment as required by section 326(1).

(2) A bankruptcy trustee shall advertise his or her appointment—

 *(a)* as specified in rule 31(1)*(a)*; and

 *(b)* in a newspaper published and circulating in the Virgin Islands.

## Division 6

### *Minors and Patients*

### Interpretation

**34.** (1) In this Division—

"minor" means a person who has not attained the age of 18 years; and

"patient" means a person who is incapable of managing his or her assets and affairs—

 *(a)* by reason of his or her mental disorder as defined in section 2 of the Mental Health Ordinance; or

 *(b)* due to physical affliction or disability.

(2) A person is eligible to be appointed as the next friend of a patient or a minor under rule 35 if—

 *(a)* he or she can fairly and competently appear for, represent or act for that patient or minor; and

 *(b)* he or she has no interest adverse to that of the patient or minor.

### Appointment of next friend

**35.** (1) The Court may appoint an eligible person as the next friend to appear for, represent or act for a patient or a minor.

(2) The appointment of a next friend may be made either generally or for the purpose of any particular application or proceeding, or for the exercise of particular rights or powers which the patient or minor is entitled to exercise.

(3) The Court may make the appointment of a next friend either of its own motion or on application by—

 *(a)* a person who has been appointed by a court in a jurisdiction outside the Virgin Islands to manage the affairs of, or to represent, the patient or minor;

 *(b)* a relative or friend of the patient or minor who appears to the Court to be a proper person to make the application;

 *(c)* the Official Receiver;

 *(d)* the person who, in relation to the proceedings, is the responsible insolvency practitioner; or

*(e)*  in the case of a minor, the minor himself or herself.

(4)  Subject to paragraph (5), an application under paragraph (3) may be made *ex parte*.

(5)  The Court may require such notice of the application as it considers appropriate to be given to the patient or minor, or to any other person that it considers appropriate, and may adjourn the hearing of the application to enable notice to be given.

(6)  The Court may make an order appointing a next friend subject to such terms and conditions as it considers just, including a requirement that the next friend take legal or other professional advice or that he or she acts by a legal practitioner, and may limit the next friend's authority to appear for, represent or act for the patient or minor.

**Affidavit in support of application**

**36.** (1)  An application under rule 35(3) made in respect of a patient by a person other than the Official Receiver, shall be supported by an affidavit of a registered medical practitioner as to the mental or physical condition of the patient.

(2)  An application under rule 35(3) made in respect of a patient by the Official Receiver shall be supported by a report made by the Official Receiver.

**Service of documents and giving of notice**

**37.**  Any document or notice served on, or sent to, a person appointed as next friend under rule 35 has the same effect as if it had been served on, or given to, the patient or minor.

**Termination of appointment of next friend and variation of conditions.**

**38.** (1)  The Court may on its own motion, or on the application of the person appointed as the next friend of a minor or patient or of a person specified in rule 35(3)—

*(a)*  terminate the appointment of a person as next friend of the patient or minor;

*(b)*  limit the next friend's authority to appear for, represent or act for the patient or minor;

*(c)*  amend the terms and conditions upon which the person is appointed next friend; or

*(d)*  appoint an eligible person as next friend of the patient or minor in substitution for an existing next friend.

(2)  If an application under paragraph (1) is made by a person other than the next friend of the patient or minor, notice of the application shall be given to the person appointed as best friend.

(3)  Subject to paragraph (2), rule 35 applies to an application made under paragraph (1) as if it was an application for the appointment of a best friend.

**Termination of appointment of next friend of minor on majority**

**39.** (1)  The appointment of the next friend of a minor, who is not also a patient, terminates when the minor reaches the age of majority.

(2) Where the appointment of the next friend of a minor terminates under paragraph (1), the person whose appointment as best friend has been terminated, shall apply to the Court for directions.

(3) On an application under paragraph (2), the Court may make such directions, if any, as it considers necessary or just.

**Directions**

**40.** A person appointed as the next friend of a patient or minor may at any time apply to the Court for directions concerning his or her appointment and upon such application the Court make give such directions as it considers appropriate.

PART III

GENERAL PROVISIONS

**Division 1**

*Creditors' and Members' Meetings*

**Interpretation**

**41.** In this Division—

"convener" means the person calling a creditors' or members' meeting;

"creditors' meeting" means a meeting of creditors required or permitted to be called under the Act or the rules;

"members' meeting" means a meeting of members required or permitted to be called under the Act or the rules;

"notice" means a notice calling a creditors' or members' meeting;

"office holder" means—

> *(a)* in the case of a company, a supervisor, interim supervisor, administrator, administrative receiver or liquidator; and

> *(b)* in the case of an individual, a supervisor, interim supervisor or his or her bankruptcy trustee;

"relevant date" means—

> *(a)* in the case of a company creditors' arrangement, the date of the creditors' meeting or, if the company is in administration or in liquidation, the date that the administration or liquidation commenced;

> *(b)* in the case of an individual creditors' arrangement, the date of the creditors' meeting;

> *(c)* in the case of an administrative receivership, the date of his or her appointment; and

> *(d)* in the case of administration, liquidation or bankruptcy proceedings, the date that the administration, liquidation or bankruptcy commenced.

| 62 | *Insolvency Rules* | LAW OF<br>VIRGIN ISLANDS |
|---|---|---|
| [Statutory Intsrument] | | Revision Date: 1 Jan 2020 |

**Scope of this Division**

**42.** Except to the extent that the Act or the rules otherwise provide—

  *(a)* rules 43 to 60 apply to all creditors' meetings; and

  *(b)* rule 61 applies to all members' meetings.

## *Calling of Creditors' Meetings*

**Calling of creditors' meetings**

**43.** (1) A creditors' meeting is called by the convener sending, or causing to be sent, to every creditor entitled to attend the meeting, a notice complying with the Act and the rules.

(2) Subject to any requirement of the Act or the rules, or any direction of the Court concerning the date or last date for which a creditors' meeting may be called, the venue of a creditors' meeting shall be fixed by the convener and stated in the notice.

(3) In fixing the venue of a creditors' meeting, the convener shall have regard primarily to the convenience of the creditors entitled to attend the meeting and creditors' meetings may be held in or outside the Virgin Islands.

(4) A notice sent to a creditor under paragraph (1) shall be sent in sufficient time for it to be received, or deemed to be received, by him or her at least 14 days before the date of the meeting.

(5) Unless exceptional circumstances justify otherwise, creditors' meetings shall be called for commencement between 10:00 and 16:00 on a business day.

**Form of notice calling creditors' meeting and accompanying documents**

**44.** (1) In addition to any other requirements of the Act or the rules, a notice shall contain—

  *(a)* a statement as to the primary purpose of, or the main business to be conducted at, the meeting; and

  *(b)* an explanation as to—

   (i) the majority required to pass a resolution at the meeting; and

   (ii) the basis on which a person will be admitted to vote at the meeting.

(2) The convener shall send, or cause to be sent, together with every notice —

  *(a)* a proxy form; and

  *(b)* any document required by the Act or the rules to be sent with the notice.

(3) Where a copy of the notice, together with any other documentation, is required by the Act or the rules to be sent to any person not entitled to vote at the meeting, the convener shall send, or cause to be sent, a copy of the notice together with any accompanying documentation in sufficient time for it to be received, or deemed to be received, by that person at least 14 days before the date of the meeting.

(4) Neither the proceedings at, nor any resolutions passed by, a creditors' meeting are invalid by reason only that one or more creditors have not received notice of the meeting.

## Notice to be given to creditors

**45.** (1) The convener of a creditors' meeting shall send a notice to every creditor—

(a) specified in the statement of affairs or statement of assets and liabilities, if any; and

(b) of whom the convener is otherwise aware.

(2) The convener of a creditors' meeting is not in breach of any requirement of the Act or the rules to give notice of the meeting to the creditors of a company by reason only of failing to send a notice to a person who was not known by the convener to be a creditor of the company.

## Notice of meetings by advertisement

**46.** (1) The Court may direct that notice of a creditors' meeting be given by public advertisement, and not, or not only, by individual notice to the persons concerned.

(2) In considering whether to make a direction under this rule, the Court shall have regard to—

(a) the cost of public advertisement;

(b) the assets available in the insolvency proceeding concerned; and

(c) the extent of the interest of creditors or any particular class of either.

## Notice to Registrar, Commission and Official Receiver

**47.** Where a convener is required by the Act to file a notice of a creditors' meeting with the Registrar, the Commission or the Official Receiver, he or she shall file the notice, together with any accompanying documentation, at least 14 days before the date set for the meeting.

## Meetings requisitioned by creditors

**48.** (1) This rule applies where creditors are permitted by the Act to requisition a meeting.

(2) A notice requisitioning a creditors' meeting shall be sent to the office holder concerned by a creditor accompanied by—

(a) a list of creditors supporting the requisition, showing the amounts of their respective claims;

(b) the written confirmation of each creditor on the list that he or she supports the requisition; and

(c) a statement—

(i) specifying the section of the Act under which the meeting is requisitioned;

(ii) that the creditors on the list comprise at least the minimum number of creditors specified by the relevant section; and

(iii) of the purpose of the meeting.

(3) Subject to paragraph (7), the costs of calling and holding a requisitioned creditors' meeting shall be paid by the creditor who sent the notice to the office holder in accordance with paragraph (2).

(4) If the office holder is satisfied that a requisition complies with the Act and the rules, he or she shall, within 5 business days of receiving the notice under paragraph (2), provide the creditor who sent the notice with an estimate of the costs of calling and holding the meeting together with a request that the creditor deposit with the office holder sufficient security to cover those costs.

(5) If the office holder is not satisfied that a requisition complies with the Act and the rules, he or she shall notify the creditor in writing stating the reasons for his or her conclusion.

(6) Upon receipt of the deposit referred to in paragraph (4), the office holder shall fix a venue for the meeting not more than 35 days from his or her receipt of the deposit and shall give not less than 21 days notice of the meeting to creditors.

(7) A meeting held under this rule may resolve that the expenses of calling and holding it are to be payable out of the assets of the company concerned.

(8) To the extent that any deposit paid to the office holder under this rule is not required for the payment of the expenses of calling and holding the meeting, it shall be repaid to the person who paid the deposit.

## *Conduct of Creditors' Meetings*

### Chairman

**49.** (1) Subject to paragraphs (2) and (3), every creditors' meeting shall be chaired by the convener.

(2) Where the convener is an insolvency practitioner or the Official Receiver and he or she is unable to attend the meeting, he or she may, in writing, nominate as chairman—

*(a)* in the case of an insolvency practitioner—

 (i) another eligible insolvency practitioner; or

 (ii) an employee of the insolvency practitioner, or of his or her firm, who is experienced in insolvency matters; or

*(b)* in the case of the Official Receiver, the Deputy Official Receiver or a member of his or her staff.

(3) Where a creditors' meeting convened by an insolvency practitioner or the Official Receiver is to be held outside the Virgin Islands and he or she will not be attending the meeting, he or she may nominate a suitably qualified and experienced individual to act as chairman.

### Suspension

**50.** Once only in the course of any meeting, the chairman may, in his or her discretion and without an adjournment, declare that the meeting is suspended for a period of no more than one hour.

### Adjournment of meetings

**51.** (1) If within 30 minutes of the time fixed for the commencement of a creditors' meeting there is no person present to act as chairman of the meeting, the meeting is

adjourned to the same time and place in the following week or, if that is not a business day, to the same time on the next following business day.

(2) Subject to paragraph (3), unless those persons present, in person or by proxy, pass a resolution to the contrary, the chairman may adjourn a creditors' meeting.

(3) The chairman of a creditors' meeting may not adjourn or further adjourn a meeting under paragraph (2) to a date more than 14 days after the date fixed for the original meeting.

### Chairman as proxy holder

**52.** (1) The chairman shall not by virtue of any proxy he or she holds, vote on a resolution concerning the remuneration or expenses of the office holder unless the proxy specifically directs him or her to vote in that way.

(2) If the chairman uses a proxy contrary to paragraph (1), his or her vote with that proxy does not count towards any majority under this rule.

(3) Where the chairman holds a proxy which requires him or her to vote for a particular resolution, and no other person proposes that resolution—

    *(a)* he or she shall propose it himself or herself, unless he or she considers that there is good reason for not doing so; and

    *(b)* if he or she does not propose it, he or she shall forthwith after the meeting notify his or her principal of the reason why he or she did not propose it.

### Quorum

**53.** (1) The quorum for a meeting of creditors is at least one creditor entitled to vote.

(2) A creditor shall be counted towards the quorum for the purposes of paragraph (1) if he or she is present or represented by proxy by any person, including the chairman.

(3) Where at any meeting of creditors—

    *(a)* a quorum is present by the attendance of the chairman alone or by the chairman together with one additional creditor; and

    *(b)* the chairman is aware, by virtue of claims and proxies received or otherwise, that one or more other persons would, if attending, be entitled to vote, the meeting shall not commence until at least 15 minutes after the time set for its commencement.

*Voting Rights and Majorities*

### Resolutions

**54.** (1) Unless the Act or the rules provide otherwise, the majority required for the passing of a resolution at a creditors' meeting is in excess of 50% in value of the creditors present in person or by proxy who vote on the resolution.

(2) A resolution passed at an adjourned creditors' meeting is treated for all purposes as having been passed on the date of the resolution and not as having been passed on an earlier date.

(3) Where a resolution is proposed which affects a person in respect of his or her remuneration or conduct as an office holder, or as a proposed or former office holder, the vote of that person and of any partner or employee of his or hers, shall not be counted in the majority required for passing the resolution.

(4) Paragraph (3) applies with respect to a vote given by a person whether personally, on his or her behalf by a proxy-holder or as a proxy holder for a creditor.

## Creditors' entitled to vote

**55.** (1) A creditor is entitled to vote at a creditors' meeting only if, no later than 12 noon on the business day before the day fixed for the meeting—

> *(a)* he or she has given written notice of his or her claim to the office holder and the claim is admitted in accordance with rule 58; and
>
> *(b)* any proxy that he or she intends to be used on his or her behalf has been lodged with the office holder.

(2) The office holder may accept a proxy that has been sent to him or her by facsimile transmission as lodged for the purposes of paragraph (1)*(b)*.

(3) The chairman of a creditors' meeting may allow a creditor to vote, notwithstanding that he or she has failed to comply with paragraph (1)*(a)*, if he or she is satisfied that the failure was due to circumstances beyond the creditor's control.

(4) The votes of a creditor are calculated—

> *(a)* where the creditors' meeting is in respect of a company that is in liquidation, on the value of the creditor's claim made in accordance with the provisions of the Act and the rules that relate to a claim in a liquidation;
>
> *(b)* where the creditors' meeting is in respect of a bankruptcy, on the value of the creditor's claim made in accordance with the provisions of the Act and the rules that relate to a claim in a bankruptcy;
>
> *(c)* in any other case, according to the amount of the creditor's debt as at the relevant date, deducting any amounts paid in respect of the debt after that date.

(4) A creditor may not vote in respect of a claim for an unliquidated amount, or on any claim the value of which is not ascertained, except where the chairman agrees to put an estimated minimum value on the claim for the purpose of entitlement to vote and admits the claim for that purpose.

## Secured creditors and holders of negotiable instruments

**56.** (1) At a creditors' meeting, a secured creditor is entitled to vote only in respect of the balance, if any, of his or her debt after deducting the value of his or her security interest as estimated by him or her.

(2) A creditor may not vote in respect of a debt on, or secured by, a current bill of exchange or promissory note, unless he or she is willing—

> *(a)* to treat the liability to him or her on the bill or note of every person who is liable on it antecedently to the debtor, and against whom a bankruptcy order has not been made, or in the case of a company, which has not gone into liquidation, as a security in his or her hands;

*(b)* to estimate the value of the security interest and, for the purposes of entitlement to vote only, to deduct it from his or her claim; and the chairman decides to admit the reduced claim for voting purposes.

### Hire purchase, conditional sale and chattel leasing agreements

**57.** (1) This rule does not apply to a creditors' meeting held in respect of a company that is in liquidation or in respect of a bankruptcy.

(2) Subject to paragraph 3, an owner of goods under a hire purchase or chattel leasing agreement, or a seller of goods under a conditional sale agreement, is entitled to vote in respect of the amount of the debt owed by the debtor to him or her on the relevant date.

(3) In calculating the amount of a debt for the purposes of paragraph 1, no account is taken of any amount attributable to the exercise of any right under the relevant agreement, so far as the right has become exercisable solely by virtue of the relevant insolvency proceeding or any order made in, or matter arising in consequence of, the proceeding.

### Admission and rejection of claims

**58.** (1) Subject to paragraph (5), the chairman of a creditors' meeting shall determine the entitlement of persons wishing to vote and shall admit or reject their claims for voting purposes accordingly.

(2) The chairman may admit or reject a claim in whole or in part.

(3) The chairman of a creditors' meeting may require a creditor to produce any document or other evidence where he or she considers it necessary for the purpose of substantiating the whole or part of the creditor's claim.

(4) If the chairman of a creditors' meeting is in doubt as to whether a claim should be admitted or rejected, he or she shall mark the claim as objected to and allow the creditor to vote, subject to his or her vote being subsequently declared invalid if the objection to the claim is sustained.

(5) Where a creditor's claim in a liquidation or bankruptcy has been admitted by the liquidator or trustee, under section 209 or section 336, as the case may be, the Chairman shall admit the claim in the same amount for the purposes of voting.

### Appeal

**59.** (1) A creditor may appeal to the Court against any decision of an office holder, or the chairman of a creditors' meeting, under rules 55 or 58.

(2) If on an appeal the Court reverses or varies the Chairman's decision, or the vote of a creditor is declared invalid, the Court may make such order as it considers just including, if it considers that the circumstances giving rise to the appeal give rise to unfair prejudice or material irregularity, an order that another meeting be summoned.

(3) An appeal under this rule shall be made within a period of 28 days from the date of the decision in respect of which the appeal is made.

(4) Neither an office holder, nor any person nominated to chair a creditors' meeting on his or her behalf in accordance with rule 49(2) is personally liable for the costs incurred by any person in respect of an appeal to the Court under this rule, unless the Court makes an order to that effect.

## Minutes

**60.** (1) The chairman of a creditors' meeting shall ensure that minutes of its proceedings are kept and that he or she signs the minutes.

(2) Minutes kept under paragraph (1) shall include a list of the creditors who attended the meeting, whether in person or by proxy, the resolutions passed at the meeting and, if a creditors' committee is established, the names and addresses of those persons elected to be members of the committee.

(3) Minutes kept in accordance with this rule shall be retained as a record in the insolvency proceeding.

## Members' meetings

**61.** (1) In fixing the venue of a members' meeting, the convener shall have regard primarily to the convenience of the members and members' meetings may be held in or outside the Virgin Islands.

(2) Rules 49, 51(1), 53(2) and 53(3) apply to members' meetings with necessary modifications.

(3) The quorum for a meeting of members is—

*(a)* where the company or foreign company only has one member or only has one member entitled to vote, that member; or

*(b)* where the company or foreign company has more than one member entitled to vote, at least 2 members of those members.

(4) Subject to this rule, a members' meeting shall be summoned and conducted as if it were a general meeting of the company summoned under the company's articles of association, and in accordance with the applicable provisions of the BVI Business Companies Act.

(5) Where a company is in administration, the chairman of the meeting shall cause minutes of its proceedings to be entered in the company's minute book.

## Division 2

### *Proxies and Company Representation*

## Interpretation

**62.** (1) In this Division—

"meeting" means a meeting of creditors or of members required or permitted to be held under the Act or the rules;

"principal" means the person giving a proxy; and

"proxy-holder" means the person to whom the principal gives his or her proxy.

(2) For the purposes of the Act and the rules, a proxy is an authority given by a principal to a proxy-holder to attend a meeting and to speak and vote as his or her representative.

## General provisions concerning proxies

**63.** (1) Subject to paragraph (2), a person who desires to be represented at a creditors' meeting may give one proxy to an individual aged 18 or over.

(2) Notwithstanding paragraph (1)—

(a) a principal may specify one or more other individuals aged 18 or over to be proxy-holder in the alternative, in the order in which they are named in the proxy; and

(b) a proxy for a particular meeting may be given to the chairman of the meeting who cannot decline to act as proxy-holder in such circumstances.

(3) A proxy requires the holder, either as directed or in accordance with the holder's discretion—

(a) to give the principal's vote on matters arising for determination at the meeting;

(b) to abstain; or

(c) to propose, in the principal's name, a resolution to be voted on by the meeting.

## Issue and use of proxy forms

**64.** (1) A proxy form sent with a notice of a meeting shall not have inserted in it the name or description of any person.

(2) A proxy form shall not be used at a meeting unless it is in the same, or a substantially similar form, as the proxy form sent out with the notice calling the meeting.

(3) A proxy form shall be signed by the principal, or by some person authorised by him or her, either generally or with reference to a particular meeting.

(4) Where a proxy form is signed by a person other than the principal, the nature of the person's authority shall be stated.

## Use of proxies at meetings

**65.** (1) A proxy given for a particular meeting may be used at any adjournment of that meeting.

(2) Where the Official Receiver holds proxies for use at a meeting, his or her deputy, or such other of his or her officers as he or she may authorise in writing, may act as proxy-holder in his or her place.

(3) Where an insolvency practitioner holds proxies to be used by him or her as chairman of a meeting, and some other person acts as chairman, the other person may use the insolvency practitioners proxies as if he or she were themselves the proxy-holder.

(4) Where a proxy directs a proxy-holder to vote for or against a resolution for the nomination or appointment of a person as an officer holder, the proxy-holder may, unless the proxy states otherwise, vote for or against, as he or she thinks fit, any resolution for the nomination or appointment of that person jointly with another or others.

(5) A proxy-holder may propose any resolution which, if proposed by another, would be a resolution in favour of which by virtue of the proxy he or she would be entitled to vote.

(6) Where a proxy gives specific directions as to voting, this does not, unless the proxy states otherwise, preclude the proxy-holder from voting at his or her discretion on resolutions put to the meeting which are not dealt with in the proxy.

**Retention of proxies**

**66.** (1) Subject to paragraph (2), proxies used for voting at any meeting shall be retained by the chairman of the meeting.

(2) Where the chairman is not the responsible insolvency practitioner, he or she shall deliver the proxies, immediately after the meeting, to the responsible insolvency practitioner who shall retain them.

(3) Proxies shall be retained as records in the insolvency proceeding.

**Right of inspection**

**67.** (1) The responsible insolvency practitioner shall allow proxies retained by him or her to be inspected, at all reasonable times on any business day, by—

*(a)* any creditor, in the case of proxies used at a meeting of creditors; and

*(b)* a member, in the case of proxies used at a meeting of the company or of its members.

(2) Subject to paragraph (3), the reference in paragraph (1) to a creditor is—

*(a)* in the case of a liquidation or a bankruptcy, a creditor who has submitted a claim under section 209 or section 336; and

*(b)* in any other case, a person who has submitted a claim, in writing, to be a creditor of the company or individual concerned.

(3) The reference in paragraph (1) to a creditor does not include a person whose claim has been wholly rejected for the purposes of voting, dividend or otherwise.

(4) The right of inspection given by this rule is also exercisable—

*(a)* in the case of an insolvent company, by a director; and

*(b)* in the case of an insolvent individual, by him or her.

(5) Any person attending a meeting is entitled, immediately before or in the course of the meeting, to inspect proxies and associated documents, including claims sent or given, in accordance with directions contained in any notice convening the meeting, to the chairman of that meeting or to any other person by a creditor or member for the purpose of that meeting.

**Proxy-holder with financial interest**

**68.** (1) A proxy-holder shall not vote in favour of any resolution which would directly or indirectly place him or her , or any associate of his or her, in a position to receive any remuneration out of the insolvent estate, unless the proxy specifically directs him or her to vote in that way.

(2) Where a proxy-holder has signed the proxy as being authorised to do so by his or her principal and the proxy specifically directs him or her to vote in the way

mentioned in paragraph (1), he or she shall nevertheless not vote in that way unless he or she produces to the chairman of the meeting written authorisation from his or her principal sufficient to show that the proxy-holder was entitled so to sign the proxy.

(3) This rule applies also to any person acting as chairman of a meeting and using proxies in that capacity under rule 65 and in its application to him or her, the proxy-holder is deemed an associate of his or hers.

### Company representation

**69.** (1) Where a person is authorised under the BVI Business Companies Act to represent a company at a meeting of creditors or of the company or its members, he  or she shall produce to the chairman of the meeting a copy of the resolution from which he or she derives his or her authority.

(2) The copy resolution shall be under the seal of the company, or certified by the secretary or a director of the company to be a true copy.

(3) Nothing in this rule requires the authority of a person to sign a proxy on behalf of a principal, which is a company, to be in the form of a resolution of that company.

## Division 3

### *The Creditors' Committee*

### Interpretation for this Division

**70.** (1)  In this Division—

"committee" means a creditors' committee established under section 421 of the Act; and

"meeting" means a meeting of the committee.

(2) Where the context permits, references in the Act or the rules to a "member" shall include a member's representative.

### Committee may establish own procedures

**71.** (1)  A committee may, by resolution, adopt rules governing its proceedings that are not inconsistent with the Act or this Division.

(2) Without limiting paragraph (1), the committee may agree procedures for—

> *(a)* the participation by members in meetings by telephone or other electronic means; and
>
> *(b)* the passing of circular resolutions.

### Meetings

**72.** (1)  Subject to paragraph (2), meetings—

> *(a)* may be held at such venues as the committee may resolve; and
>
> *(b)* may be called by a member of the committee or by the office holder.

(2) If a meeting has not already been held, the office holder shall call a first meeting to be held not less than 28 days after the committee's establishment.

(3) The person convening a meeting shall give 7 days written notice of the venue of the meeting to each member of the committee and to the office holder.

(4) Notwithstanding paragraph (3), a member of the committee may, before or at the meeting, waive his or her entitlement to notice under that paragraph.

## Chairman of meetings

**73.** (1)  Subject to paragraph (2), every meeting of the creditors' committee shall be chaired by the relevant office holder.

(2) Where the office holder is unable to attend the meeting, he or she may nominate as chairman—

*(a)*  an eligible insolvency practitioner; or

*(b)*  an employee of the insolvency practitioner, or of his or her firm, who is experienced in insolvency matters.

(3) Where a meeting of the creditors' committee is to be held outside the Virgin Islands and the insolvency practitioner will not be attending the meeting, he or she may nominate a suitably qualified and experienced individual to act as chairman.

(4) Where a meeting of the creditors' committee is held pursuant to a notice issued by the committee under section 422(2), the members of the creditors' committee may elect one of the members of the committee to be chairman of the meeting in place of the office holder or his or her nominee.

## Quorum and resolutions

**74.** (1)  A meeting is quorate if notice of the meeting has been given to all members and a majority of its members are present at the meeting.

(2) At a meeting of the committee, each member has one vote and a resolution is passed by a simple majority of those members who are present and vote.

(3) A resolution shall be recorded in writing, signed by the chairman and retained as a record in the insolvency proceeding.

## Committee members' representatives

**75.** (1)  A member of the creditors' committee may, in relation to the business of the committee, be represented by another person duly authorised by him or her for that purpose.

(2) A person acting as a committee-member's representative shall hold a letter of authority entitling him or her so to act (either generally or specially) and signed by or on behalf of the committee member.

(3) The chairman at any meeting of the committee may call on a person claiming to act as a committee member's representative to produce his or her letter of authority, and may exclude him or her if it appears that his or her authority is deficient.

(4) No committee member may be represented by a body corporate, a person who is an undischarged bankrupt, a person who is a disqualified person within the meaning of section 260(4) or a person who is a restricted person within the meaning of section 409.

(5) No person shall, on the same committee, act at one and the same time as representative of more than one committee member.

(6) Where a member's representative signs any document on the member's behalf, the fact that he or she so signs shall be stated below his or her signature.

### Written resolutions

**76.** (1) The office holder may seek to obtain the agreement of members of the creditors' committee to a resolution by sending written notice of the resolution to each member by such method as may be agreed between the office holder and the committee member.

(2) A notice sent to a member under paragraph 1 shall be set out so as to enable the committee member to signify his or her dissent or agreement to each separate resolution on which the office holder seeks agreement.

(3) Any member of the committee may, within 7 days of a notice being sent out under paragraph (1), require the office holder to call a meeting of the creditors' committee to consider the matters raised by the resolution.

(4) If no member requires a meeting to be called, the resolution is deemed to have been passed when the office holder is notified in writing by a majority of the committee members that they agree with it.

(5) A resolution passed under this rule shall be treated as a resolution passed at a meeting of the creditors' committee.

(6) Without limiting paragraph 1, written notice may be given by post, fax or e-mail.

### Cooperation by office holder with committee

**77.** Without limiting section 422(2)*(b)*, a requirement of the committee under that section to provide it with reports or information is not reasonable if the office holder considers that—

    *(a)* the requirement is frivolous or unreasonable;

    *(b)* the cost of complying with the requirement would be excessive having regard to the relative importance of the report or information;

    *(c)* the company or bankrupt does not have sufficient funds to enable him or her to comply with the requirement.

### Termination of insolvency proceeding

**78.** (1) Subject to paragraph (2), the creditors' committee ceases to exist on the termination of the insolvency proceeding in which it was appointed.

(2) Where, on discharging an administration order, the Court makes an order for the appointment of a liquidator under section 111(1)*(a)*, unless the Court otherwise orders, any creditors' committee appointed in the administration continues as if appointed in the liquidation.

## Division 4

### *Written Resolutions*

**Written resolutions**

**79.** (1)  The office holder may seek to obtain the passing of a resolution of creditors or members by sending a notice to every creditor or member who is entitled to be notified of a creditors' or members' meeting together with a blank statement of entitlement to vote.

(2) A notice under paragraph (1) shall specify the time and date by which votes on the resolution shall be received by him or her and a vote shall be counted if—

    *(a)*  the vote is received by the office holder by the time and date specified in the notice; and

    *(b)*  the vote is accompanied by a completed statement of entitlement to vote.

(3) If any votes are received without the statement as to entitlement to vote, or the office holder decides that the creditor or member is not entitled to vote, then that creditor's or member's vote shall be disregarded.

(4) The closing date for receipt of votes shall be set at the discretion of the office holder but shall not be set less than 14 days from the date of issue of the notice under paragraph (1).

(5) Where an office holder sends out a notice under paragraph (1), a meeting to consider the resolution specified in the notice may be requisitioned in accordance with paragraph (6) by—

    *(a)*  in the case of a notice sent to creditors, by any single creditor, or a group of creditors, whose debts amount to at least 10% of the total debts of the company or debtor; or

    *(b)*  in the case of a notice sent to members of a company, by any single member, or a group of members, holding at least 25% of the voting rights in respect of the company.

(6) A meeting is requisitioned under paragraph (5) by sending a notice to the office holder within 7 days after the date that the notices under paragraph (1) are sent out.

(7) If the resolution proposed in the notice is rejected by the creditors or members, the office holder may call a meeting of creditors or members, as the case may be.

(8) A reference in the Act or the rules to anything done, or required to be done, at, or in connection with, or in consequence of, a creditors' or members' meeting, includes a reference to anything done in the course of correspondence in accordance with this rule.

PART IV

CREDITORS' ARRANGEMENTS

## Division 1

### *General*

**Scope of and interpretation for this Part**

**80.** (1)  This Part applies where a debtor makes or intends to make a proposal under Part II of the Act and in respect of any arrangement that may be approved.

(2) In this Part, "creditors' meeting" means a creditors' meeting held under Part II of the Act.

**Additional matters that may be included in an arrangement**

**81.** Subject to section 15(4), and without limiting section 15(1), an arrangement may—

(a) provide for circumstances in which persons who become creditors of the debtor after the approval of an arrangement are entitled to be paid under the arrangement in priority to creditors bound by the arrangement;

(b) specify a date or a time at which liabilities of the debtor will be calculated and provide how liabilities arising after that date are to be dealt with;

(c) be entered into in conjunction with any other arrangement, reorganisation or scheme taking effect under the law of another jurisdiction, whether subject to Court approval or otherwise; and

(d) in the case of a company—

 (i) provide for the whole or partial cancellation of a liability of the company in return for shares of any kind or for the issue by the company, or by any other person, of a debenture or a security interest; and

 (ii) relate to an amendment of the company's memorandum or articles that affects the likelihood of the company being able to pay a debt or satisfy a liability.

**Chairman of creditors' meeting**

**82.**  Subject to rule 49(2) and (3), the interim supervisor or the supervisor shall be the chairman of every creditors' meeting.

**Voting at creditors' meeting**

**83.** (1)  The majority required for the passing of a resolution at a creditors' meeting is—

(a) for the approval of an arrangement or of a modification of an arrangement, 75% or more in value of the creditors present in person or by proxy who vote on the resolution; and

(b) in respect of any other matter, in excess of 50% in value of the creditors present in person or by proxy who vote on the resolution.

(2) A creditor is entitled to vote at a creditors' meeting if written notice of his or her claim is given to the interim supervisor, or supervisor, or the chairman of the meeting either at the meeting or before it.

(3) It is for the chairman to decide whether a creditor is entitled to vote in accordance with paragraph (2).

(4) At any creditors' meeting held under Part II of the Act, a creditor may vote in respect of a claim for an unliquidated amount or on any claim the value of which is not ascertained and for the purposes of voting, but not otherwise, his or her claim shall be valued at $1 unless the chairman agrees to put a higher value on it.

(5) Rules 54 and 55 are modified to the extent provided in this rule in respect of a creditors' meeting held under Part II of the Act.

**Appointment of joint supervisors**

**84.** Where joint supervisors of an arrangement are appointed, they may act jointly or severally unless the arrangement provides otherwise.

## Division 2

### *Company Creditors' Arrangement*

**Scope of this Division**

**85.** This Division applies where, under Part II, Division 2 of the Act, a company makes or intends to make a proposal and in respect of any arrangement that may be approved.

### *Proposal*

**Form and contents of proposal**

**86.** (1) A proposal under section 20(1)*(b)*(ii) shall be in writing and shall include—

(a) details of the name, registered office, registered number, date of incorporation and any trading names of the company;

(b) a summary of the proposed arrangement with a brief explanation as to its main features and as to why the arrangement is desirable and why the board expects the creditors to agree to it;

(c) to the best of the knowledge and belief of the board, particulars of the assets of the company specifying—

(i) the value of each asset or class of assets;

(ii) the extent, if any, to which the assets are charged in favour of creditors; and

(iii) the extent, if any, to which particular assets are to be excluded from the arrangement;

(d) particulars of any assets, other than those of the company, which it is proposed will be included in the arrangement, specifying—

(i) the source of the assets; and

    (ii) the terms upon which they are to be made available to creditors under the arrangement;

*(e)* to the best of the knowledge and belief of the board, particulars of the nature and amount of the company's liabilities, including any disputed claims and any joint obligations, and the manner in which they will be met, modified or postponed or otherwise dealt with under the arrangement, specifying in particular—

    (i) how it is proposed that creditors who are or who claim to be secured creditors will be dealt with, detailing the amount of any secured liabilities;

    (ii) how it is proposed that any creditors or joint, or joint and several, debtors who are connected with the company will be dealt with;

    (iii) whether there are, to the knowledge of the board, any circumstances giving rise to the possibility, in the event that the company should go into liquidation, of claims for a voidable transaction under Part VIII of the Act and, if so, whether and how it is proposed to make provision for wholly or partly indemnifying the company in respect of such claims;

    (iv) whether there are any persons with non-admissible or postponed claims against the company and how it is proposed that they will be dealt with, if at all;

    (v) any creditors who, for the purposes of section 15(4) of the Act, are or are expected to be or claim to be preferential, detailing the amount and nature of each such claim and how it is proposed that the claims will be dealt with;

*(f)* how it is proposed that the claims of any creditor who did not participate in the approval of the arrangement, as provided by paragraph (2), will be dealt with;

*(g)* particulars of any security interest, liens, rights of set-off held by creditors and as to any guarantees of the company's debts given by third parties, specifying which of the sureties, if any, are persons connected with the company;

*(h)* details of the proposed duration of the arrangement;

*(i)* the proposed dates of distributions of assets to creditors of the company, with estimates of their amounts;

*(j)* particulars of the remuneration proposed to be paid to the interim supervisor and to the supervisor and how the remuneration and the other costs of the interim supervisor and the supervisor are to be met;

*(k)* details of any benefits, including guarantees, assets and any security interests that are to be offered by any director or other third party for the purposes of the arrangement;

*(l)* details of any further loans or credit facilities which it is intended to arrange for the company, specifying on what terms and how it is proposed that the additional liabilities, including interest, are to be repaid;

*(m)* details of the business that will be conducted by the company during the course of the arrangement and the manner in which funds payable to the company will be dealt with during the period before the arrangement is approved and during the course of the arrangement, if approved;

*(n)* the manner in which funds or other assets held for the purpose of the arrangement are to be banked, invested or otherwise dealt with pending distribution to the creditors;

*(o)* the manner in which funds or other assets held for the purpose of payment to creditors, and not so paid on the termination of the arrangement, are to be dealt with;

*(p)* the functions to be undertaken by the interim supervisor and by the supervisor if the arrangement is approved; and

*(q)* the name and address of the persons proposed as the supervisor and interim supervisor, who may be the same person, and confirmation that they are, or he or she is, eligible to act in relation to the company.

(2) For the purposes of paragraph (1)*(f)*, a creditor does not participate in the approval of the arrangement if, for whatever reason—

*(a)* he or she was not given notice of the creditors' meeting called under section 27; and

*(b)* he or she did not attend the meeting at which the arrangement was approved, whether in person or by proxy.

(3) Paragraphs (1) and (2) apply to a proposal prepared by the liquidator or administrator of a company under section 22 or 23, with such modifications as are appropriate.

## Statement of affairs

**87.** The statement of affairs provided to the nominated insolvency practitioner under section 21(1)*(c)* shall be verified by at least one director of the company.

## Amendment or withdrawal of proposal before appointment of interim supervisor

**88.** (1) The board of a company or, in the case of a company that is in administration or liquidation, its administrator or liquidator, may before the nominated insolvency practitioner has accepted appointment as interim supervisor—

*(a)* amend a proposal by providing a copy of the amended proposal to the nominated insolvency practitioner; or

*(b)* withdraw the proposal by providing a notice of withdrawal to the nominated insolvency practitioner.

(2) In the case of a company that is not in administration or liquidation, the nominated insolvency practitioner shall also be provided with a copy of the resolution of the board approving the amendment or withdrawal.

(3) The withdrawal of a proposal under section 26(1)*(a)* takes effect from the time that the notice of withdrawal is received by the nominated insolvency practitioner.

(4) The nominated insolvency practitioner shall endorse the notice of withdrawal with the time and date that it was received and return a copy to the board, administrator or liquidator, as the case may be.

**Amendment or withdrawal of proposal after appointment of interim supervisor**

**89.** (1) This rule applies if the board of a company or, in the case of a company in administration or liquidation, its administrator or liquidator, wishes to amend or withdraw a proposal after the appointment of an interim supervisor but before a creditors' meeting is called under section 27.

(2) A proposal is deemed to be amended under this rule if—

*(a)* the amendment is provided to the interim supervisor in writing together with, if appropriate, a copy of the board's resolution before the interim supervisor calls a creditors' meeting under section 27; and

*(b)* the interim supervisor consents to the proposal being amended in the terms of the amendment provided to him or her.

(3) Without limiting paragraph (2)*(b)*, the interim supervisor may refuse to consent to the amendment if he or she considers that he or she does not have sufficient time to prepare a report on the amended proposal before giving notice of the creditors' meeting under section 27.

(4) A proposal may be withdrawn under section 26(1)*(b)* by providing the interim supervisor with a notice of withdrawal together with, if appropriate, a copy of the board's resolution, before the interim supervisor calls a creditors' meeting under section 27.

(5) On receipt of a notice of withdrawal in accordance with paragraph (4), the interim supervisor shall endorse the notice of withdrawal with the time and date that it was received and return a copy to the board, administrator or liquidator, as the case may be.

(6) The withdrawal of a proposal under section 26(1)*(b)*, and the termination of the interim supervisor's appointment, takes effect from the time that he or she receives the notice of withdrawal.

(7) If the interim supervisor has filed a notice of his or her appointment under section 24 with the Registrar and, if appropriate, the Commission, he or she shall, with 2 business days of receiving the withdrawal notice, file a copy of the notice with the Registrar and, if appropriate, the Commission.

(8) Where a proposal is withdrawn under this rule, the company is liable to the former interim supervisor in respect of any remuneration payable to him or her including the costs of complying with paragraph (7).

**Amendment or withdrawal of proposal before creditors' meeting**

**90.** (1) This rule applies if the board of a company or, in the case of a company in administration or liquidation, its administrator or liquidator, wishes to amend or withdraw a proposal after the calling of a creditors' meeting under section 27 but before the meeting is held.

(2) A proposal is deemed to be amended under this rule if—

*(a)* the amendment is provided to the interim supervisor in writing together with, if appropriate, a copy of the board's resolution at least 7 days prior to the date fixed in the notice calling the meeting under section 27; and

*(b)* the interim supervisor consents to the proposal being amended in the terms of the amendment provided to him or her.

(3) Where a proposal is amended under this rule, the interim supervisor shall give at least 2 business days notice of the amendment, together with a brief report on the effect of the amendment, to every person who received the notice calling the meeting under section 27.

(4) Without limiting paragraph (2)*(b)*, the interim supervisor may refuse to consent to the amendment if he or she considers that he or she does not have sufficient time to comply with paragraph (3).

(5) A proposal may be withdrawn under section 26(1)*(c)* by providing the interim supervisor with a notice of withdrawal together with, if appropriate, a copy of the board's resolution, at least 5 business days prior to the date fixed for the creditors' meeting called under section 27.

(6) On receipt of a notice of withdrawal in accordance with paragraph (5), the interim supervisor shall endorse the notice of withdrawal with the time and date that it was received and return a copy to the board, administrator or liquidator, as the case may be.

(7) The withdrawal of a proposal under section 26(1)*(c)*, and the termination of the interim supervisor's appointment, takes effect from the time that he or she receives the notice of withdrawal.

(8) Forthwith on receiving a notice of withdrawal under paragraph (5), the former interim supervisor shall—

(a) send a notice cancelling the creditors' meeting to every creditor, member and director of the company and to the company itself; and

(b) file a copy of the notice of withdrawal with the Registrar and, if the company is a regulated person, with the Commission.

(9) Where a proposal is withdrawn under section 26(1)*(c)*, the company is liable to the former interim supervisor in respect of any remuneration payable to him or her, including the costs of complying with paragraph (8).

**Effect of amendment or withdrawal of proposal**

**91.** Where a proposal is amended under rules 88, 89 or 90, Part II, Division 2 of the Act applies to the amended proposal as if it was the original proposal.

*Appointment of Interim Supervisor by Board*

**Appointment of Interim Supervisor by Board**

**92.** If the insolvency practitioner nominated by the board of a company agrees to act as interim supervisor, he or she shall—

(a) cause a copy of the notice of intention to appoint him or her as interim supervisor to be endorsed with—

(i) an acknowledgement that he or she has received a copy of the resolution of the board together with a copy of the proposal approved by the board and a copy of the company's statement of affairs;

(ii)  the date upon which he or she received the notice of intention to appoint him or her interim supervisor and copies of the resolution, the proposal and the statement of affairs;

(iii) the date or dates upon which he or she received an amended proposal from the board or confirmation that the proposal has not been amended;

(iv)  confirmation that, to the best of his or her knowledge, he or she is eligible to act as an insolvency practitioner in respect of the company; and

(v)  his or her agreement to act as interim supervisor;

*(b)*  deliver the endorsed notice to the board at the address specified in the notice; and

*(c)*  retain a copy of the endorsed notice.

**Appointment by administrator or liquidator of another insolvency practitioner as interim supervisor**

**93.** (1) Where the administrator or liquidator of a company intends to appoint another insolvency practitioner as interim supervisor, the notice of intention to appoint shall be in the form for an appointment made by the board of a company, with suitable modifications.

(2) If the insolvency practitioner who the administrator or liquidator of a company intends to appoint as interim supervisor agrees to act, he or she shall—

*(a)*  cause a copy of the notice of intention to appoint him or her as interim supervisor to be endorsed with—

(i)  an acknowledgement that he or she has received a copy of the proposal;

(ii)  the date upon which he or she received the proposal;

(iii) the date or dates upon which he or she received an amended proposal from the administrator or liquidator or confirmation that the proposal has not been amended;

(iv)  confirmation that, to the best of his or her knowledge, he or she is eligible to act as an insolvency practitioner in respect of the company; and

(v)  his or her agreement to act as interim supervisor;

*(b)*  deliver the endorsed notice to the administrator or liquidator at the address specified in the notice; and

*(c)*  retain a copy of the endorsed notice.

*Reports to Creditors*

**Report to creditors on proposal**

**94.** The report that the interim supervisor is required to make to the creditors' meeting called to consider the board's proposal, shall include—

*Insolvency Rules*

(a) in the case of an interim supervisor appointed by the board of a company, a summary of the affairs of the company and the conduct of its business during the proposal period;

(b) in the case of a company that is not in liquidation or administration, his or her opinion as to whether the company is insolvent or likely to become insolvent;

(c) his or her opinion as to whether the arrangement which is being proposed has a reasonable prospect of being implemented;

(d) the costs to the company of his or her acting as interim supervisor;

(e) any other matters that he or she considers should be brought to the attention of the creditors.

**Report on modification of arrangement**

**95.** The supervisor's written report to creditors on a proposed modification to an arrangement shall include—

(a) details of the proposed modification together with an explanation as to why the supervisor considers that the modification is necessary or desirable;

(b) a brief summary of the implementation of the arrangement to the date of the report, including details of any material differences between the implementation and the proposal approved by creditors; and

(c) any other information that the supervisor considers would assist the creditors in deciding whether to approve the modification.

*Withdrawal of Proposal at Creditors' Meeting*

**Withdrawal of proposal**

**96.** (1) A proposal may be withdrawn at the creditors' meeting under section 31(4) by providing to the chairman of the meeting at any time before the proposal has been accepted by the creditors a notice of withdrawal and, if appropriate, a copy of the board's resolution.

(2) Where a proposal is withdrawn under section 31(4), the chairman's report under section 32 shall state that fact.

(3) The interim supervisor's appointment is terminated with effect from the conclusion of the creditors' meeting at which the proposal was withdrawn.

(4) Where a proposal is withdrawn under section 31(4), the company is liable to the former interim supervisor in respect of any remuneration payable to him or her, including the costs of complying with section 32.

*Termination of Arrangement*

**Termination of arrangement**

**97.** Where an arrangement terminates prior to its completion, the supervisor shall, in the report prepared under section 37(2)*(c)* explain the reason why the arrangement has terminated.

*Applications to Court*

### Application for appointment of supervisor or interim supervisor

**98.** (1) A person, other than the supervisor or interim supervisor, who makes an application to the Court under section 41 shall serve a sealed copy of the application on the supervisor or interim supervisor at least 7 days before the date fixed for the hearing.

(2) Where the Court makes an order under section 41 on the application of a person other than the supervisor or interim supervisor, the person who applied for the order shall serve a sealed copy of the order on the supervisor or interim supervisor.

### Application where arrangement approved or modified

**99.** (1) A person, other than the supervisor, who makes an application to the Court under section 42 shall serve a sealed copy of the application on the supervisor at least 7 days before the date fixed for the hearing.

(2) Where the Court makes an order under section 42 on the application of a person other than the supervisor or interim supervisor, the person who applied for the order shall serve a sealed copy of the order on the supervisor or interim supervisor.

### Application on grounds of unfair prejudice

**100.** (1) In considering whether to make an order under section 43, the Court may take into account the time that has elapsed between the applicant first becoming aware of the circumstances which he or she claims ground a claim under the section and the date of his or her application.

(2) Where the Court makes an order of revocation or suspension under section 43, the person who applied for the order shall serve sealed copies of the order—

> *(a)* on the supervisor; and

> *(b)* on the board of the company or the administrator or liquidator, depending upon who made the proposal for the arrangement.

(3) If the order includes a direction by the Court under section 43 for any further creditors' meetings to be summoned, notice shall also be given, by the person who applied for the order, to whoever is, in accordance with the direction, required to summon the meetings.

(4) The board or the administrator or liquidator, as the case may be, shall—

> *(a)* immediately after receiving a copy of the Court's order, give notice of it to all persons who were sent notice of the creditors' meeting that approved the arrangement or who, not having been sent that notice, appear to be affected by the order;

> *(b)* within 7 days of their receiving a copy of the order, or within such longer period as the Court may allow, give notice to the Court whether it is intended to make a revised proposal to the company and its creditors, or to invite re-consideration of the original proposal.

(5) The person on whose application the order of revocation or suspension was made shall, within 7 days after the making of the order, deliver a copy of the order with the Registrar.

## Division 3

### *Individual Creditors' Arrangement*

**Scope of this Part**

**101.** This Division applies where, under Part II, Division 3 of the Act an individual debtor makes or intends to make a proposal and in respect of any arrangement that may be approved.

## *Proposal*

**Contents of proposal**

**102.** A proposal shall be in writing and shall include—

    *(a)* a summary of the proposed arrangement with a brief explanation as to its main features and as to why the arrangement is desirable and why the debtor expects the creditors to agree to it;

    *(b)* to the best of the debtor's knowledge and belief, particulars of his or her assets specifying—

        (i) the value of each asset or class of assets;

        (ii) the extent, if any, to which the assets are charged in favour of creditors; and

        (iii) the extent, if any, to which particular assets are to be excluded from the arrangement;

    *(c)* particulars of any assets, other than those of the debtor himself or herself, which it is proposed will be included in the arrangement, specifying—

        (i) the source of the assets; and

        (ii) the terms upon which they are to be made available to creditors under the arrangement;

    *(d)* to the best of the debtor's knowledge and belief, particulars of the nature and amount of his or her liabilities, including any disputed claims and any joint obligations, and the manner in which they will be met, modified or postponed or otherwise dealt with under the arrangement, specifying in particular—

        (i) how it is proposed that creditors who are or who claim to be preferential or secured creditors will be dealt with;

        (ii) how it is proposed that any creditors or joint, or joint and several, debtors who are connected with the debtor will be dealt with;

        (iii) whether there are, to the knowledge of the debtor, any circumstances giving rise to the possibility, in the event that a bankruptcy order should be made against the debtor, of claims for a voidable transaction under Part XIV of the Act and, if so, whether and how it is proposed to make provision for wholly or partly making the value of such claims available to the creditors under the arrangement; and

(iv) whether there any persons with non-admissible or postponed claims against the debtor and how it is proposed that they will be dealt with, if at all;

*(e)* particulars of any security interests, liens, rights of set-off held by creditors and as to any guarantees of the debtor's debts given by third parties, specifying which of the sureties, if any, are connected with the debtor;

*(f)* details of the proposed duration of the arrangement;

*(g)* the proposed dates of distributions of assets to creditors of the debtor, with estimates of their amounts;

*(h)* particulars of the remuneration proposed to be paid to the interim supervisor and to the supervisor and how the remuneration and the other costs of the interim supervisor and the supervisor are to be met;

*(i)* details of any benefits, including guarantees, assets and any security interests that are to be offered by any person other than the debtor for the purposes of the arrangement;

*(j)* details of any further loans or credit facilities which it is intended to arrange for the debtor, specifying on what terms and how it is proposed that the additional liabilities, including interest, are to be repaid;

*(k)* details of any business that will be conducted by the debtor during the course of the arrangement and the manner in which funds payable to him or her will be dealt with during the period before the arrangement is approved and during the course of the arrangement, if approved;

*(l)* the manner in which funds or other assets held for the purpose of the arrangement are to be banked, invested or otherwise dealt with pending distribution to the creditors;

*(m)* the manner in which funds or other assets held for the purpose of payment to creditors, and not so paid on the termination of the arrangement, are to be dealt with;

*(n)* the functions to be undertaken by the interim supervisor and by the supervisor if the arrangement is approved; and

*(o)* the name and address of the persons proposed as the supervisor and interim supervisor, who may be the same person, and confirmation that they are, or he or she is, eligible to act in respect of the debtor.

**Amendment of proposal before appointment of interim supervisor**

**103.** (1) A debtor may amend a proposal by providing a copy of the amended proposal to the nominated insolvency practitioner before he or she has accepted appointment as interim supervisor.

(2) Where a proposal is amended under paragraph (1), Part 2, Division 3 of the Act applies to the amended proposal as if it was the original proposal.

**Amendment of proposal after appointment of interim supervisor**

**104.** (1) This rule applies if a debtor wishes to amend a proposal after the appointment of an interim supervisor but before a meeting of creditors is called under section 58.

(2) A proposal is deemed to be amended under this rule if—

(a) the amendment is provided to the interim supervisor in writing before the interim supervisor calls a meeting of creditors under section 58; and

(b) the interim supervisor consents to the proposal being amended in the terms of the amendment provided to him or her.

(3) Without limiting paragraph (2)*(b)*, the interim supervisor may refuse to consent to the amendment if he or she considers that he or she does not have sufficient time to amend the proposal and prepare a report on the amended proposal before giving notice of the creditors' meeting under section 58.

**Amendment of proposal before creditors' meeting**

**105.** (1) This rule applies if a debtor wishes to amend a proposal after the calling of a meeting of creditors under section 58 but before the meeting of creditors is held.

(2) A proposal is deemed to be amended under this rule if—

(a) the amendment is provided to the interim supervisor in writing at least 4 business days prior to the date fixed in the notice calling the meeting under section 58;

(b) the interim supervisor consents to the proposal being amended in the terms of the amendment provided to him or her; and

(c) the interim supervisor gives at least 2 business days notice of the amendment, together with a brief report on the effect of the amendment, to every person who received the notice calling the meeting under section 58.

*Appointment of Interim Supervisor*

**Appointment of interim supervisor**

**106.** If the insolvency practitioner nominated by a debtor agrees to act as interim supervisor, he or she shall—

(a) cause a copy of the instrument of appointment to be endorsed with—

(i) an acknowledgement that he or she has received a copy of the proposal together with the debtor's statement of affairs;

(ii) the date upon which he or she received the instrument of appointment together with a copy of the proposal;

(iii) the date or dates upon which he or she received an amended proposal from the debtor or confirmation that the proposal has not been amended;

(iv) confirmation that, to the best of his or her knowledge, he or she is eligible to act as an insolvency practitioner in respect of the debtor; and

(v)  his or her agreement to act as interim supervisor;

*(b)* deliver the endorsed instrument of appointment to the debtor at the address specified in the instrument of appointment; and.

*(c)* retain a copy of the endorsed notice in his or her records.

## *Moratorium*

**Application for moratorium order**

**107.**  (1)  The affidavit supporting an application for a moratorium order shall—

*(a)* set out the reasons justifying the application;

*(b)* set out particulars of any execution or other legal process which, to the debtor's knowledge, has been commenced against him or her;

*(c)* confirm that, in accordance with section 295, the Court could make a bankruptcy order against the debtor on his or her application;

*(d)* confirm that no previous application for a moratorium order has been made by the debtor in the period of 12 months immediately preceding the date of the application; and

*(e)* confirm that an eligible insolvency practitioner has accepted appointment as interim supervisor.

(2) On receipt of the application and affidavit, the Court shall fix a venue, date and time for the hearing of the application.

## *Interim Supervisor's Report on Proposal*

**Report to Court**

**108.**  (1)  The report submitted by the interim supervisor to the Court under section 56 shall include—

*(a)* a summary of the affairs of the debtor and, if relevant, the conduct of his or her business during the proposal period;

*(b)* his or her opinion as to whether the debtor is insolvent;

*(c)* his or her opinion as to whether the arrangement which the debtor is proposing has a reasonable chance of being approved and implemented;

*(d)* his or her opinion as to whether a meeting of the debtor's creditors should be called to consider the proposal;

*(e)* if, in his or her opinion, such a meeting should be called, the venue he or she proposes for the meeting;

*(f)* the costs of his or her acting as interim supervisor; and

*(g)* any other matters that he or she considers should be brought to the attention of the Court.

(2) The date proposed by the interim supervisor for a creditors' meeting under paragraph (1)*(e)* shall be at least 21 days but no more than 35 days from the date that his or her report is filed with the Court.

## Notice of arrangement

**109.** (1) The notice of arrangement required to be filed with the Official Receiver shall contain the following details—

> *(a)* the name and address of the debtor;
>
> *(b)* the date on which the arrangement was approved by the creditors; and
>
> *(c)* the name and address of the supervisor.

(2) A person who is appointed supervisor of an arrangement, whether as the first supervisor, an additional supervisor or a replacement supervisor, shall file a notice of his or her appointment with the Official Receiver.

(3) A person vacating office as supervisor shall file a notice of vacation of office with the Official Receiver.

## *Applications to Court*

## Application concerning supervisor or interim supervisor

**110.** (1) Where a person intends to apply to the Court under section 69 for the appointment or removal of a supervisor or an interim supervisor, he or she shall give every supervisor or interim supervisor 7 days' notice of his or her application.

(2) The supervisor, or interim supervisor, is entitled to appear and be represented at the hearing of an application referred to in paragraph (1).

## Revocation or suspension of arrangement

**111.** (1) This rule applies where the Court makes an order of revocation or suspension under section 70.

(2) The person who applied for the order shall serve sealed copies of the order on the supervisor and on the debtor.

(3) If the order includes a direction by the Court for any further creditors' meetings to be summoned, notice shall also be given, by the person who applied for the order, to whoever is, in accordance with the direction, required to summon the meetings.

(4) The debtor shall—

> *(a)* immediately after receiving a copy of the Court's order, give notice of it to all persons who were sent notice of the creditors' meeting that approved the arrangement or who, not having been sent that notice, appear to be affected by the order;
>
> *(b)* within 7 days of their receiving a copy of the order, or within such longer period as the Court may allow, give notice to the Court whether he or she intends to make a revised proposal to his or her creditors, or to invite re-consideration of the original proposal.

(5) The person on whose application the order of revocation or suspension was made shall, within 7 days after the making of the order, file a copy of the order with the Official Receiver.

**Service of orders**

**112.**   Where a moratorium order is made or any order is made on the consideration of the interim supervisor's report, at least 2 sealed copies of the order shall be sent by the Court forthwith to the debtor and the debtor shall serve a copy of the order on—

  *(a)*  the interim supervisor; and

  *(b)*  any creditor who, to his or her knowledge has applied for a bankruptcy order against him or her.

PART V

ADMINISTRATION

*Preliminary*

**Interpretation and scope of this Part**

**113.**   (1) In this Part, unless otherwise stated "statutory purpose" means a purpose specified in section 76(1).

  (2) This Part applies to—

  *(a)*  an application for the appointment of an administrator; and

  *(b)*  administration proceedings; under Part III of the Act.

*Obtaining an Administration Order*

**Application**

**114.**   Application for an administration order is made by filing at Court—

  *(a)*  an application complying with rule 115; and

  *(b)*  an affidavit in support of the application complying with rule 116.

**Form of application**

**115.**   (1) An application for an administration order shall—

  *(a)*  specify which of the statutory purposes is sought to be achieved by the making of the administration order;

  *(b)*  state the applicant's belief that the company is or is likely to become insolvent;

  *(c)*  specify the name and address of the insolvency practitioner the applicant proposes for appointment as administrator; and

  *(d)*  state the applicant's address for service which, in the case of an application made by the company itself, shall, in the absence of special reasons to the contrary, be the registered office of the company.

  (2) An application for an administration order made by 2 or more creditors shall name all the creditors as applicants but, from the filing of the application, it is to be treated as the application of the first named creditor applying on behalf of himself or herself and other creditors.

(3) An application for an administration order made by the directors of a company shall, from the filing of the application, be treated as the application of the company.

(4) The address for service stated on an application filed under paragraph (2) shall be that of the first named creditor.

(5) An application for an administration order shall have attached to it a written statement signed by the insolvency practitioner whom the applicant proposes for appointment as administrator that, in his or her opinion, there is a reasonable prospect that the making of the administration order will achieve the statutory purposes specified in the application.

**Affidavit in support**

116. (1) The affidavit in support of an application for an administration order shall—

(a) state the deponent's belief that the company is or is likely to become insolvent; and

(b) to the best of the deponent's knowledge and belief—

(i) provide details of the financial position of the company, specifying its assets and liabilities;

(ii) provide details of any security interest held by creditors of the company, specifying whether the holder of any security interest has the power to appoint a receiver and, if so, whether a receiver has been appointed and stating whether the receiver that may be or has been appointed is an administrative receiver;

(iii) provide details of any insolvency proceedings that have commenced in relation to the company and whether an application has been made for the appointment of a liquidator; and

(iv) set out any other facts or matters that will or may assist the Court in deciding whether to make an administration order in respect of the company.

(2) Where an application for an administration order is made by the liquidator of a company under section 80, the affidavit in support of the application shall also contain—

(a) the date upon which the liquidation commenced and whether it was commenced on an appointment by the Court or by the members;

(b) the reasons why the liquidator considers that an administration order should be made; and

(c) all other matters that the liquidator considers would assist the Court in determining the application and in making provision for the matters specified in section 80(2)*(a)*(ii) to (iv).

(3) An affidavit under paragraph (1) shall be sworn—

(a) in the case of an application made by a company, by a director or the secretary of the company;

(b) in the case of an application made by a creditor, by the creditor or a person authorised by the creditor;

*(c)* in the case of an application made by the supervisor of an arrangement, by the supervisor or a person authorised by him or her;

*(d)* in the case of an application made by the liquidator, by the liquidator or a person authorised by him or her; and

*(e)* in the case of an application made by the Commission, by an authorised officer of the Commission.

### Subsequent application for appointment of liquidator

**117.** If, after the filing of an application in respect of a company, the applicant becomes aware that an application for the appointment of a liquidator of the company has been made, he or she shall notify the Court in writing.

### Service of application

**118.** (1) Service shall be effected on each person specified in section 77(3) by serving him or her with a sealed copy of the application for an administration order, the statement of the insolvency practitioner proposed for appointment as administrator attached to the application and the affidavit in support of the application, including the documents exhibited to the affidavit.

(2) For the purposes of section 77(3)*(h)*, the following persons shall also be served with a copy of an application for an administration order—

*(a)* the insolvency practitioner proposed as administrator; and

*(b)* if a supervisor of an arrangement has been appointed under Part II, Division 2 of the Act, on the supervisor.

### Copies of application to be sent to other persons

**119.** A sealed copy of the application for an administration order shall be sent to—

*(a)* any person who, to the applicant's knowledge, is charged with an execution or other legal process against the company or its assets; and

*(b)* any person who, to the applicant's knowledge, has distrained against the company or its assets.

### Hearing of application

**120.** The following are entitled to appear or be represented at the hearing of an application for an administration order—

*(a)* the applicant;

*(b)* a person entitled under the Act or the rules to be served with a copy of the application;

*(c)* the person proposed to be appointed administrator; and

*(d)* with the leave of the Court, any other person who appears to the Court to have an interest in the application.

*Administration Order*

**Order**

**121.** (1) An administration order shall be in the prescribed form.

(2) Where the Court makes an administration order, the costs of the applicant and of any person whose costs are allowed by the Court, are payable as an expense of the administration.

(3) Where the Court makes an administration order on the application of the liquidator of a company under section 80, it shall—

    *(a)* provide for the payment of the expenses of the liquidator;

    *(b)* make provisions regarding any indemnity given to the liquidator;

    *(c)* make provision regarding the handling or realisation of any of the company's assets in the hands of or under the control of the liquidator; and

    *(d)* treat the application for the administration order as an application by the liquidator for his or her release and make any order that it could make under section 235; and the Court may make such other order as it considers appropriate.

**Notice of administration order**

**122.** (1) Where an administration order is made, the Court shall, as soon as reasonably practicable, send 2 sealed copies of the order to the applicant.

(2) The applicant shall, as soon as reasonably practicable, send a sealed copy of the administration order to the person appointed as administrator.

(3) For the purposes of section 82(1)*(a)*(iv), the following persons shall be given notice of the appointment of an administrator—

    *(a)* any person who, to the administrator's knowledge, is charged with an execution or other legal process against the company or its assets;

    *(b)* any person who, to the applicant's knowledge, has distrained against the company or its assets;

    *(c)* if a supervisor of an arrangement has been appointed under Part II, Division 2 of the Act, on the supervisor; and

    *(d)* if the company is or has been a regulated person, the Commission.

*Proposal and Statement of Affairs*

**Matters to be set out in report on proposals**

**123.** (1) The report of the administrator on his or her proposals prepared under section 100(1)*(a)* shall include the following—

    *(a)* details of the name, registered office, registered number, date of incorporation and any trading names of the company;

*(b)* details relating to his or her appointment as administrator, the purposes for which an administration order was applied for and made, and any subsequent variation of those purposes;

*(c)* the names of the directors and any secretary of the company and details of any shareholdings they may have;

*(d)* an account of the circumstances giving rise to the application for an administration order;

*(e)* if a statement of affairs has been submitted, a copy or summary of it, with the administrator's comments, if any;

*(f)* if an order of limited disclosure has been made under section 280, a statement of that fact, as well as—

  (i) details of the relevant person who provided the statement of affairs;

  (ii) the date of the order of limited disclosure; and

  (iii) the details or a summary of the details that are not subject to that order;

*(g)* if a full statement of affairs is not provided, the names, addresses and debts of the creditors of the company, including details of any security held;

*(h)* if no statement of affairs has been submitted, to the best of his or her knowledge and belief—

  (i) details of the financial position of the company at the latest practicable date, which shall, unless the Court otherwise orders, be a date not earlier than that of the administration order;

  (ii) a list of the company's creditors, including any security held; and

  (iii) an explanation as to why no statement of affairs has been submitted;

*(i)* the manner in which the affairs and business of the company—

  (i) have, since the date of the administrator's appointment, been managed and financed, including where any assets have been disposed of, the reasons for such disposals and the terms upon which such disposals were made; and

  (ii) will, if the administrator's proposals are approved, continue to be managed and financed; and

  *(j)* such other information, if any, that the administrator considers necessary to enable creditors to decide whether or not to vote for the adoption of the proposals.

(2) The proposals of an administrator, including the proposals as amended or modified, shall not, except with the written agreement of the secured creditor or the preferential creditor concerned—

*(a)* affect the right of a secured creditor of the company to enforce his or her security interest or vary the liability secured by the security interest; or

*Insolvency Rules*

(b) result in a preferential creditor receiving less than he or she would receive in a liquidation or bankruptcy of the debtor had it commenced at the time of approval of the arrangement.

(3) Where the administrator intends to apply to the Court under section 110 for the administration order to be discharged before he or she has sent a report to creditors under section 100(1), he or she shall, at least 10 days before the hearing of such an application, send to all creditors of the company a report containing the information required by paragraph (1)*(a)* to *(i)* of this rule.

(4) The Court shall not discharge an administration order under section 110 unless it is satisfied that the administrator has sent a report to creditors under section 100(1) or under paragraph (3).

### Advertisement of availability of proposal for members

**124.** (1) The administrator, instead of sending a copy of a notice calling a meeting of creditors and a copy of his or her report to members under sections 100(1)*(d)* and 104(1)*(d)*, may advertise a notice—

(a) specifying the date and venue of the creditors' meeting; and

(b) undertaking to provide a copy of the statement of proposals free of charge to any member of the company who applies in writing to a specified address.

(2) Rule 31(1) applies to an advertisement under paragraph (1) with the substitution in rule 31(1)*(b)* of "members" for "creditors".

(3) A notice under paragraph (1) shall be advertised no later than 14 days prior to the date set for the meeting of creditors.

### Statement of affairs

**125.** If the administrator receives a statement of affairs after he or she has sent the report on his or her proposals to creditors, he or she shall, as soon as reasonably practicable after receiving the statement of affairs, send a copy of the statement of affairs, or a summary thereof, to the creditors.

### Minutes of creditors' meetings

**126.** In administration proceedings, the minutes required to be kept under rule 60 shall be entered in the company's minute book.

### Requisition of meeting by creditors under section 100(4)

**127.** (1) A request to the administrator of a company to requisition a meeting under section 100(4) shall be delivered to the administrator within 14 days of the date when the administrator sent his or her report to the creditors under section 100(1)*(c)*.

(2) Subject to paragraph (1), rule 48 applies to the requisition of a creditors' meeting under section 100(4).

### Modification of proposals

**128.** The report of the administrator on his or her proposed modifications to approved proposals prepared under section 104(1)*(a)* shall include the following—

(a) the matters specified in rule 123(1), subparagraphs *(a)*, *(b)* and *(c)*;

*(b)* a summary of the initial proposals and the reasons for proposing a modification;

*(c)* details of the proposed modification including details of the administrator's assessment of the likely impact of the proposed modification upon creditors generally or upon each class of creditors;

*(d)* any other information that the administrator thinks necessary to enable creditors to decide whether or not to vote for the proposed modification.

**Creditors' committee**

**129.** (1) When there is any change in the membership of a creditors' committee appointed in an administration, the administrator shall file with the Registrar a copy of the notice filed with the Court under section 425(3)*(a)*.

(2) In the case of a company in administration, a record of each resolution of the creditors' committee shall be entered into the company's minute book.

**Final report**

**130.** The final report prepared by an administrator under section 107(2)*(c)* shall include a summary of—

*(a)* the administrator's proposals;

*(b)* any modifications to those proposals;

*(c)* the steps taken during the administration; and

*(d)* the outcome of the administration.

*Administrator*

**Resignation of administrator**

**131.** (1) The grounds upon which an administrator may resign are—

*(a)* his or her ill health;

*(b)* because he or she intends ceasing to practice as an insolvency practitioner; or

*(c)* because there is some conflict of interest, or change of personal circumstances, which precludes or makes impracticable the further discharge by him or her of the duties of administrator.

(2) The administrator shall give 7 days notice of his or her intention to resign or of an application to the Court under section 94(2)*(a)* for leave to resign—

*(a)* if there is a continuing administrator of the company, to him or her;

*(b)* if there is no continuing administrator, to the creditors' committee, if any; or

*(c)* if there is no administrator or creditors' committee, to the company and its creditors.

(3) An administrator who resigns shall, within 5 days of his or her resignation under section 94(2)*(a)*, file a notice of his or her resignation with the Court and the

Registrar and send a copy of the notice to each person to whom a notice of his or her intention to resign was given under paragraph (2).

(4) Where an administrator resigns under section 94(2)*(b)* (ceasing to be an eligible insolvency practitioner), he or she shall—

(a) forthwith file a notice of his or her resignation, specifying the reason for his or her resignation, with the Court and the Registrar; and

(b) within 5 days of his or her resignation, send a copy of the notice filed with the Court to the persons specified in paragraph (2).

## Death of administrator

**132.** (1) Where the administrator dies, his or her personal representative shall give notice of his or her death to the Court and the Registrar, specifying the date of his or her death, unless notice has already been given to the Court and the Registrar under paragraphs (2) or (3).

(2) If an administrator who dies was a partner in a firm, notice of his or her death may be given to the Court and the Registrar by a partner in the firm who is an insolvency practitioner.

(3) Notice of the death of an administrator may be given by any person producing to the Court and the Registrar the relevant death certificate or a copy of it.

## Application by creditor to remove administrator

**133.** (1) An application by a creditor of a company to remove an administrator from office shall state the grounds on which it is requested that the administrator should be removed from office.

(2) Notice of the application shall be served on the administrator, the person who applied for the administration order, the creditors' committee (if any), any joint administrator and, where there is neither a creditors' committee or a joint administrator, to the company and each of the creditors of the company not less than 5 business days before the date fixed for the application to be heard.

(3) Where a Court makes an order removing the administrator it shall give a copy of the order to the applicant who as soon as reasonably practicable shall send a copy to the administrator.

(4) The applicant shall, within 5 business days of the order being made, send a copy of the order to the Registrar and to each person to whom notice of the application was sent.

## Application to replace administrator

**134.** (1) An application to the Court under section 95 to appoint a replacement administrator—

(a) shall specify the grounds of the application; and

(b) shall be served on the person who applied for the administration order and on any person who was entitled to be served with notice of the application for the administration order.

(2) An application under section 95 shall be supported by an affidavit deposing as to the matters set out in the application and as to any other matters that may assist the Court in determining the application.

### Application to appoint joint administrator

**135.** (1) Application may be made to the Court to appoint a joint administrator.

(2) An application under paragraph (1) and any order made by the Court shall, for the purposes of form of application, notice, hearing and advertisement be treated as an application under section 95.

### Administrator's duties on vacating office

**136.** Where a person, for whatever reason, ceases to hold office as administrator, he or she shall as soon as reasonably practicable deliver up to the person succeeding him or her as administrator—

(a) the assets of the company, after deduction of any expenses properly incurred;

(b) the records of, and relating to, the administration; and

(c) the company's books, papers and other records.

### Discharge of administration order

**137.** (1) Together with an application for an order varying or discharging the administration order under section 110(2)*(a)*, the administrator shall file with the Court a report—

(a) indicating the reasons why the administrator considers that the administration order should be varied or discharged;

(b) if the application is for the discharge of the order, setting out his or her opinion, with reasons, as to whether the Court should make an order under section 111(1)*(a)* or *(b)* or, if not, his or her opinion as to the future prospects for the company; and

(c) if he or she is of the opinion that the Court should make an order under section 111(1)*(a)*, whether he or she seeks appointment, or would consent to being appointed, as liquidator.

(2) The administrator shall send the company and each creditor of the company a copy of an application under section 110(2)*(a)* together with his or her report at least 7 days before the date fixed for hearing of the application.

(3) Together with an application for an order varying or discharging the administration order under section 110(2)*(b)*, the administrator shall file with the Court a report—

(a) indicating, with reasons, whether he or she agrees with the creditors' requirement that he or she make the application;

(b) indicating, with reasons, whether or not he or she considers that the administration order should be varied or discharged;

(c) if he or she considers that the administration order should be discharged, setting out his or her opinion, with reasons, as to whether the Court

[Statutory Intsrument] Revision Date: 1 Jan 2020

should make an order under section 111(1)*(a)* or *(b)* or, if not, his or her opinion as to the future prospects for the company;

*(d)* if he or she is of the opinion that the Court should make an order under section 111(1)*(a)*, whether he seeks appointment, or would consent to being appointed, as liquidator; and

*(e)* if he or she has indicated that he or she would seek appointment, or would consent to being appointed, as liquidator, the date upon which he or she so notified creditors, either in writing or at a meeting of creditors and advised them.

(4) A report filed under paragraphs (1) or (3) shall have the most recent accounts and report prepared by the administrator under section 107 annexed to it and a report filed under paragraph (3) shall also have annexed to it the resolution of the creditors requiring him or her to make the application.

(5) Where, in a report filed under paragraph (1) or (3), the administrator indicates that he or she seeks appointment, or would consent to being appointed, as liquidator, he or she shall, at least 7 days prior to the date fixed for the hearing of the application to discharge the administration order, notify the creditors of this and that they may send him or her written notice of their support or objection to his or her appointment as liquidator which he or she will bring to the attention of the Court.

(6) The administrator may comply with paragraph (5)—

*(a)* by including the notification in his or her report prepared under paragraph (1);

*(b)* by notifying creditors at a meeting of creditors; or

*(c)* by separate written notice.

(7) Where an administration order is discharged or varied, the administrator or where the order is discharged the person who, immediately before the discharge, was the administrator of the company, shall within 21 days of the date of the order send a notice of the order to the company and to each creditor of the company.

**Expenses of administration**

**138.** (1) Subject to paragraph (2), the expenses of an administration are payable in the following order of priority—

*(a)* expenses properly incurred by the administrator in performing his or her functions;

*(b)* the cost of any security provided by the administrator in accordance with the Act or the rules;

*(c)* the costs of the applicant for the administration order and any person appearing on the hearing of the application whose costs are allowed by the Court;

*(d)* any amount payable to a person employed or authorised to assist in the preparation of a statement of affairs or statement of concurrence;

*(e)* any allowance made, by order of the Court, towards costs on an application for release from the obligation to submit a statement of affairs or statement of concurrence;

*(f)* any necessary disbursements by the administrator in the course of the administration including any expenses incurred by members of the creditors' committee or their representatives and allowed for by the administrator under the rules;

*(g)* the remuneration or emoluments of any person who has been employed by the administrator to perform any services for the company, as required or authorised under the Act or the rules;

*(h)* the remuneration of the administrator.

(2) Where the assets of a company are insufficient to satisfy the liabilities specified in paragraph (1), the Court may make an order as to the payment out of the assets of the expenses incurred in the administration in such order of priority as it considers appropriate.


PART VI

RECEIVERSHIP

*General*

**Scope of this Part**

**139.** The rules in this Part apply where Part IV of the Act applies to a receiver of a company or to the appointment of a receiver of a company.

**Persons not eligible to be appointed or act as receiver**

**140.** For the purposes of section 116(1)*(f)*, the following persons are not eligible to be appointed or to act as a receiver—

*(a)* a person who has not attained the age of 18 years;

*(b)* a person who is certified to be insane or otherwise adjudged to be of unsound mind under any law in force in any country.


*Notices and Advertisement*

**Notice and advertisement of appointment**

**141.** (1) Subject to paragraph (2), the notice of appointment referred to in section 118(1) shall—

*(a)* state the receiver's name and address, and the date of his or her appointment;

*(b)* state the name of the person by whom the appointment was made;

*(c)* if the receiver is appointed to act jointly with an existing receiver or in place of a receiver who has vacated office, then state that fact;

*(d)* state the date of the instrument conferring the power under which the appointment was made, and a brief description of the instrument;

*(e)* state a brief description of the assets of the company in respect of which the receiver has been appointed.

(2) The notice of appointment of an administrative receiver required to be sent to the company under section 118(1)*(a)* and to the creditors under section 118(2)*(b)* shall, in addition to the matters specified in paragraph (1), state—

    *(a)* any name with which the company has been registered in the 12 months preceding the date of his or her appointment; and

    *(b)* any name under which the company has traded at any time in those 12 months, if substantially different from its registered name.

(3) The advertisement by an administrative receiver of his or her appointment shall state the matters set out in paragraph (1)*(a)* to *(c)*.

## Notice of vacation of office

**142.** An administrative receiver who, under section 120(3), is required to give notice of his or her resignation or vacation of office shall, if there is no creditors' committee, also give notice to the creditors of the company.

## Report of meeting of unsecured creditors

**143.** (1) If, when he or she sends his or her report to the Registrar under section 147(1), the administrative receiver has not received a statement of affairs, he or she shall in his or her report state that fact and state, to the best of his or her knowledge and belief, the reasons therefore.

(2) The notice calling a meeting of unsecured creditors under section 147(3)*(c)* shall state that creditors whose claims are wholly secured are not entitled to attend or be represented at the meeting.

## *Miscellaneous Provisions*

## Application to dispose of charged assets

**144.** (1) This rule applies where the administrative receiver of a company applies to the Court under section 145 for authority to dispose of assets of the company subject to a security interest.

(2) The administrative receiver shall forthwith give notice of the hearing of an application under section 145 to the person who is the holder of the security interest.

(3) If an order is made under section 145, the administrative receiver shall forthwith serve a sealed copy of the order on the holder of the security interest.

## Death of administrative receiver

**145.** If an administrative receiver dies, the person who appointed him or her shall, forthwith on his or her becoming aware of the death, give notice of it to—

    *(a)* the Registrar;

    *(b)* the company or, if it is in liquidation, the liquidator; and

    *(c)* in any case, to the members of the creditors' committee, if any.

PART VII

PROVISIONS APPLICABLE TO THE LIQUIDATION OF COMPANIES
AND TO THE BANKRUPTCY OF INDIVIDUALS

## Division 1

### *Quantification of Claims*

**Claim in currency other than dollars**

**146.**   The rate of exchange used for the purposes of converting a liability into dollars in accordance with section 154 is the closing mid-point rate published in the Financial Times (US Edition) for the relevant date.

**Discounts**

**147.**   Any trade and other discounts which would have been available to the debtor but for the insolvency proceeding, except any discount for immediate, early or cash settlement, shall be deducted from a creditor's claim.

**Discount for debt payable after commencement date**

**148.**   (1) This rule provides for the discount to be applied to a claim based on a liability that, at the commencement of the insolvency proceeding, was not payable by the company until after the commencement of the insolvency proceeding.

(2) The claim shall be reduced by a percentage calculated as follows—

$$\frac{I \times M}{12}$$

where—

*(a)*  $I = 5\%$; and

*(b)*  M is the number of months, expressed if need be as, or as including, fractions of a month, between the commencement of the liquidation and the date when the liability would otherwise have been due for payment.

## Division 2

### *Statutory Demand*

**Statutory demand**

**149.**   (1)  The minimum sum for which a statutory demand may be issued is $2,000.

(2) Where the amount claimed in a statutory demand made against a person includes—

*(a)*  a charge by way of interest not previously notified to the person as included in his or her liability; or

*(b)*  any other charge accruing from time to time; the amount or rate of the charge shall be separately identified, and the grounds on which payment of it is claimed shall be stated.

(3) Where paragraph (2) applies, the amount claimed shall be limited to that amount that has accrued due at the date of the demand.

*Insolvency Rules*

(4) A statutory demand shall include the name, address and the contact details, if any, of an individual or individuals with whom the debtor may communicate with a view to securing or compounding for the debt to the satisfaction of the creditor.

**Service on individual**

**150.** (1) A creditor shall make all reasonable attempts to effect personal service of a statutory demand on an individual.

(2) Where a creditor is not able to effect personal service, a statutory demand may be served on an individual by leaving the demand addressed to the individual at such of the places specified in paragraph (3) as would be most likely to bring the demand to his or her notice.

(3) The places referred to in paragraph (2) are his or her last known place of residence, place of business or place of employment.

(4) Where the creditor has no knowledge of the last known place of residence, place of business or place of employment of the individual, he or she may serve the statutory demand by advertisement in one or more local newspapers.

(5) Where service is effected in accordance with paragraph (4), the period of time specified in section 155(2)*(d)* for compliance with the demand shall run from the date of publication of the advertisement.

**Service out of jurisdiction**

**151.** Where the Court permits a statutory demand is to be served outside the Virgin Islands in accordance with CPR Part 7, the period of time specified in section 155(2)*(d)* for compliance with the demand shall be increased to 28 days or such longer period of time as the Court may order.

**Setting aside of statutory demand**

**152.** (1) An application to set aside a statutory demand shall be supported by an affidavit—

(a) specifying the date upon which the debtor was served with the statutory demand; and

(b) stating the grounds upon which he or she claims that the statutory demand should be set aside.

(2) A copy of the statutory demand shall be exhibited to the affidavit in support.

PART VIII

LIQUIDATION

*Preliminary*

**Scope of this Part**

**153.** (1) Subject to rule 168, the rules in this Part apply to—

(a) an application to the Court to appoint a liquidator of a company;

26-10769-mg    Doc 77-2    Filed 06/05/26    Entered 06/05/26 16:53:44    Exhibit 2 - Transcript of the Remote Deposition of Riz Mokal    Pg 879 of 991

LAW OF
VIRGIN ISLANDS
*Insolvency Rules*
103
Revision Date: 1 Jan 2020
[Statutory Instrument]

*(b)* the appointment of a liquidator, whether by the members or the Court; and

*(c)* the liquidation of a company and, where appropriate, a foreign company; under Part VI of the Act.

(2) Unless otherwise stated or unless the context otherwise requires, the rules in this Part apply to a foreign company.

(3) Where a liquidator is appointed in respect of a regulated person, the liquidator shall send to the Commission a copy of every notice or other document—

*(a)* required to be sent to creditors of the regulated person; or

*(b)* filed with the Court.

## Division 1

### *Appointment of Liquidator*

**Appointment of liquidator by members**

**154.** (1) The chairman of a meeting of members that, by a qualifying resolution, appoints a liquidator under section 159(2) shall, as soon as practicable, provide the liquidator with—

*(a)* a copy of the resolution by which he or she was appointed; and

*(b)* a certificate of his or her appointment, signed by the chairman.

(2) The provision to the liquidator of the documents specified in paragraph (1) is deemed notice to the liquidator for the purposes of section 161(2).

(3) This rule does not apply to a foreign company.

**Application**

**155.** (1) Application for the appointment of a liquidator is made by filing at Court an application complying with paragraph (2) together with an affidavit in support of the application complying with rule 156.

(2) An application under paragraph (1) shall state—

*(a)* the grounds upon which the appointment is sought; and

*(b)* whether the applicant proposes an eligible insolvency practitioner as liquidator and, if he or she does, it shall—

(i) specify the name and address of the person proposed; and

(ii) state that, to the best of the applicant's knowledge and belief, the person specified is eligible to act as an insolvency practitioner in relation to the company.

(3) No application for the appointment of a liquidator of a company may be made to the Court where the company is in liquidation, whether the liquidator was appointed by the members or by the Court.

**Affidavit in support**

**156.** (1) An application for the appointment of a liquidator shall be supported by an affidavit stating that the statements made in the application are true or are true to the best of the deponent's knowledge, information and belief.

(2) If the application is in respect of debts due to different creditors, the debts due to each creditor shall be separately verified.

(3) The supporting affidavit shall be made—

(a) by the applicant;

(b) if the applicant is a corporate body, by an officer who has been concerned with the matters stated in the application;

(c) by the legal practitioner acting for the applicant; or

(d) by a responsible person who is authorised to make the affidavit and who has the requisite knowledge of the matters sworn in the affidavit.

(4) A supporting affidavit is *prima facie* evidence of the statements in the application to which it relates.

(5) Where an applicant is making applications to appoint a liquidator for more than one company, a separate affidavit shall be filed in respect of each application.

(6) If the applicant proposes an eligible insolvency practitioner as liquidator of the company, a notice of eligibility and consent to act signed by the insolvency practitioner specified in the application shall be exhibited to the affidavit in support of an application for the appointment of a liquidator.

**Service of application on company**

**157.** (1) Unless the company is the applicant, a sealed copy of the application for the appointment of a liquidator, together with the supporting affidavit, shall be served on the company not more than 14 days after the application has been filed.

(2) Service of the application on the company shall be verified by an affidavit of service complying with rule 19.

(3) If an order has been made for substituted service of the application, a sealed copy of the order shall also be exhibited to the affidavit of service.

(4) The affidavit of service shall be filed with the Court as soon as reasonably practicable after service has been effected.

**Copies of application to be sent to other persons**

**158.** (1) A sealed copy of an application for the appointment of a liquidator of a company shall be sent—

(a) if the company is in administration, to its administrator;

(b) if an administrative receiver has been appointed in respect of the assets of the company, to him or her;

(c) if a creditors' arrangement has been proposed or accepted, to the interim supervisor or supervisor appointed in respect of the arrangement or the proposed arrangement, as the case may be;

*(d)* if the company is, or at any time in the previous 2 years has been, a regulated person, to the Commission, unless the Commission is the applicant,

within the time limits specified in paragraph (2).

(2) Documents referred to in paragraph (1) shall be sent—

*(a)* to the persons specified in paragraph (1)*(a)* to *(c)*—

(i) no earlier than the day after service of the application on the company; and

(ii) no later than 4 days after service of the application on the company; and

*(b)* to the Commission under subparagraph *(d)*, as soon as reasonably practicable after the application has been filed but, in any event, no later than 10 a.m. on the day immediately after the date on which the application was filed.

### Application seeking appointment of supervisor as liquidator

**159.** (1) This rule applies where, in an application for the appointment of a liquidator, the applicant proposes as liquidator the supervisor of an arrangement in place in respect of the company.

(2) Within 5 business days of receiving a copy of the application, the supervisor shall send a notice to each creditor of the company—

*(a)* stating that an application has been made for the appointment of a liquidator of the company and that it is proposed that he or she be appointed liquidator; and

*(b)* advising the creditor—

(i) of the date fixed for the hearing of the application; and

(ii) that if the creditor wishes to object to the supervisor's appointment, or respond in any other way, he or she shall send his or her objection or response to the supervisor not later than 12 noon on the day before the date fixed for the hearing.

(3) The supervisor shall file with the Court, before or at the hearing of the application, a report summarising any responses or objections that he or she has received.

### Persons entitled to a copy of the application

**160.** An applicant for the appointment of a liquidator of a company shall, on receiving—

*(a)* a request from any director, member or creditor of the company for a copy of the application; and

*(b)* payment of the prescribed fee,

provide that person with a copy of the application as soon as is reasonably practicable to do so.

## Advertisement of application

**161.** The advertisement of an application to appoint a liquidator shall state—

(a) the name of the company in respect of which the appointment is sought and the address of its registered office or, in the case of a foreign company, the address at which the application was served;

(b) the name and address of the applicant;

(c) the date on which the application was filed;

(d) the venue fixed for the hearing of the application;

(e) the name and address of the legal practitioner acting for the applicant; and

(f) that any person intending to appear at the hearing of the application, whether to support or oppose the application, shall give notice of his or her intention in accordance with rule 162.

## Notice of intention to appear

**162.** (1) A person who intends to appear on the hearing of an application to appoint a liquidator of a company, other than the company itself, shall send a notice of intention to appear to the applicant.

(2) A notice of intention to appear shall be in writing and shall specify—

(a) the name and address of the person giving notice and his or her contact details, if any;

(b) whether it is his or her intention to support or oppose the application; and

(c) if he or she is a creditor, the amount of his or her debt or if he or she is not a creditor the grounds upon which he or she supports or opposes the application.

(3) A notice of intention to appear shall be sent so as to reach the applicant no later than 16:00 hours on the business day before the date fixed for the hearing of the application, or where the hearing has been adjourned, the adjourned hearing.

(4) A person who fails to comply with this rule may appear on the hearing of the application only with the leave of the Court.

## List of appearances

**163.** (1) An applicant for the appointment of a liquidator shall prepare a list of the persons, if any, who have sent him or her a notice of intention to appear in accordance with rule 162, specifying, in respect of each person—

(a) his or her name and address;

(b) his or her legal practitioner, if known; and

(c) whether he or she intends to support or oppose the application.

(2) The list shall be filed with the Court at the hearing of the application.

(3) If the Court grants a person leave to appear on the hearing of the application under rule 162, the applicant shall, as soon as practicable, file an amended list of appearances with the Court.

### Affidavit in opposition

**164.** If a company intends to oppose an application for the appointment of a liquidator it shall, not less than 7 days before the date fixed for the hearing of the application, file with the Court and serve on the applicant—

*(a)* a notice setting out the grounds on which it opposes the application; and

*(b)* an affidavit verifying the matters stated in the notice.

### Leave to withdraw application

**165.** (1) The Court may, on the application of the person applying for the appointment of a liquidator in respect of a company, grant that person leave to withdraw the application in accordance with section 164 if it is satisfied that—

*(a)* the application has not been advertised;

*(b)* no notices of intention to appear have been received by the applicant under rule 162; and

*(c)* the company consents to the application being withdrawn.

(2) An application under paragraph (1) shall be made *ex parte* at least 5 days before the date fixed for the hearing of the application.

### Appointment of Official Receiver as liquidator

**166.** The Court may appoint the Official Receiver as liquidator of a company notwithstanding that—

*(a)* the applicant may, in his or her application, have proposed the appointment of an eligible insolvency practitioner as liquidator under section 162(7);

*(b)* the Official Receiver has not consented to act as liquidator; and

*(c)* the Official Receiver has not been given notice of the application.

### Notice of order

**167.** The Court shall, forthwith on making an order appointing a liquidator, give notice to the liquidator of his or her appointment and send a sealed copy of the order to him or her as soon as is practicable.

### Application by member of company

**168.** (1) Except as provided in this rule or by the Court, this Division does not apply to an application for the appointment of a liquidator made by a member of the company ("a member's application").

(2) A member's application shall be made in accordance with rule 155 and shall be supported by an affidavit complying with rule 156.

(3) A sealed copy of the application and the affidavit in support shall be served on the company not less than 14 days before the date fixed for the hearing of the application.

(4) A member's application shall not, except as directed by the Court, be served on any person other than the company or be advertised.

(5) At the first hearing of the application, the Court shall give such directions concerning the procedures for or in connection with the determination of the application as it considers appropriate.

(6) Without limiting paragraph (5), the Court shall give directions concerning—

    *(a)* service of the application on, or giving notice of the application to, persons other than the company;

    *(b)* whether the application should be advertised and, if so, the manner of its advertisement;

    *(c)* whether a statement of claim, defence and reply to defence are to be delivered; and

    *(d)* the manner in which evidence is to be adduced at the hearing of the application including the matters to be dealt with in evidence.

(7) Rules 162, 163, 165, 166 and 167 apply to a member's application with such modifications as are necessary.

## Division 2

### *Interim Relief*

**Application for appointment of provisional liquidator**

**169.** (1) An application for the appointment of a provisional liquidator of a company shall propose an eligible insolvency practitioner or the Official Receiver for appointment as provisional liquidator.

(2) If the Official Receiver is proposed for appointment as provisional liquidator, he or she shall be given sufficient notice of the hearing to enable him or her to attend the hearing.

**Affidavit in support of application**

**170.** An application for the appointment of a provisional liquidator shall be supported by an affidavit stating—

    *(a)* the grounds upon which the application is being made;

    *(b)* that the proposed appointee has consented to act and, to the best of the applicant's belief is eligible to act as provisional liquidator of the company;

    *(c)* whether, to the applicant's knowledge—

        (i) there has been proposed or is in force for the company a creditor's arrangement under Part II of the Act; or

        (ii) an administrator or administrative receiver is acting in relation to the company;

*(d)* the applicant's estimate of the value of the assets in respect of which the provisional liquidator is to be appointed; and

*(e)* if the Official Receiver is proposed for appointment as provisional liquidator, whether and in what manner he or she has been given notice of the application.

### Hearing of application

**171.** (1) If the Official Receiver is proposed to be appointed as provisional liquidator, he or she is entitled to attend the hearing and make such representations as he or she considers appropriate.

(2) The Court shall not appoint the Official Receiver as provisional liquidator of a company unless he or she has been given notice of the application in accordance with rule 169(2).

### Order appointing provisional liquidator

**172.** (1) The order appointing a provisional liquidator shall specify the functions to be carried out by him or her in relation to the company's affairs and assets.

(2) The Court shall, forthwith on making an order appointing a provisional liquidator, give notice to the provisional liquidator of his or her appointment and, as soon as is practicable—

*(a)* send 2 sealed copies of the order to the provisional liquidator; and

*(b)* send one copy of the sealed order to any administrator or administrative receiver who has been appointed.

(3) The provisional liquidator shall, as soon as practicable, send one copy of the sealed order to the company.

## Division 3

### *Notice of Appointment and First Meeting of Creditors*

### First meeting of creditors

**173.** (1) The notice of the first meeting of creditors required to be sent under section 179(1)*(a)* shall state—

*(a)* the business to be conducted at the meeting, as specified in paragraph (2); and

*(b)* that the liquidator will, at the request of any creditor, during the period before the date of the meeting furnish the creditor with—

(i) a list of the creditors of the company known to the liquidator; and

(ii) such other information concerning the affairs of the company as the creditor may reasonably require and that the liquidator is reasonably able to provide; and shall be accompanied by a claim form as required by rule 185.

(2) The first meeting of creditors may pass only one or more of the following resolutions—

*(a)* such resolutions as are necessary to exercise the powers specified in section 179(4);

*(b)* a resolution to adjourn the meeting for a period of not more than 21 days;

*(c)* where the meeting has been requisitioned in accordance with section 183*(b)*(iii), a resolution that the expenses of calling and holding the meeting are to be payable out of the assets of the company;

*(d)* any other resolution that the chairman allows to be put to the meeting.

**Division 4**

*Liquidators*

**Authentication of liquidator's appointment**

**174.** A copy of the certificate of the liquidator's appointment or, as the case may be, a sealed copy of the Court's order appointing the liquidator, may in any proceedings be adduced as proof that the person appointed is duly authorised to exercise the powers and perform the duties of liquidator in the company's liquidation.

**Removal of liquidator**

**175.** (1) Application for the removal of a liquidator under section 187 is made by filing at Court—

*(a)* an application stating the grounds upon which the removal of the liquidator is sought; and

*(b)* an affidavit setting out the evidence relied upon in support of the application.

(2) A sealed copy of the application and the affidavit shall be served on the liquidator and the Official Receiver, unless it is his or her application, not less than 10 days before the date fixed for the hearing.

(3) The liquidator may file affidavit evidence in opposition to the application not less than 4 days before the date fixed for the hearing of the application.

(4) The liquidator shall, not less than 4 days after being served with an application under paragraph (2) send to the Official Receiver a statement as to whether any of the company's assets have not been realised, applied, distributed or otherwise fully dealt with and, if so, providing details of—

*(a)* the nature, value and location of the assets;

*(b)* any action taken by the liquidator to deal with the assets or his or her reason for not dealing with them; and

*(c)* the current position in relation to the assets.

(5) Unless the Court otherwise directs, an application for the removal of a liquidator shall be held in Chambers.

(6) The Court may require the applicant to make a deposit or provide security for the costs to be incurred by the liquidator on the application.

(7) Subject to any order of the Court to the contrary, the costs of an application to remove the liquidator of a company are not payable out of the assets of the company.

(8) If the Court removes a liquidator under section 187, it shall send a copy of the order removing him or her to—

    *(a)* the liquidator removed;

    *(b)* any remaining liquidator; and

    *(c)* the Official Receiver.

(9) Where the Court removes a liquidator under section 187, it may appoint the Official Receiver as liquidator under section 187(3)*(b)* notwithstanding that the company commenced liquidation on the appointment of a liquidator by the members under section 159(2).

**Resignation of liquidator under section 188(1)(*a*)**

**176.** (1) Where the liquidator resigns under section 188(1)*(a)* [liquidator no longer eligible to act as an insolvency practitioner in relation to the company], he or she shall send the Official Receiver with the notice of his or her resignation, a statement covering the matters specified in rule 175(4).

(2) The liquidator shall, if so directed by the Official Receiver, verify the statement by affidavit.

**Resignation of liquidator under section 188(1)*(b)***

**177.** (1) Unless the liquidator is a joint liquidator resigning in accordance with section 188(4), the notice of a creditors' meeting sent to creditors in accordance with section 188(5) shall be accompanied by an account of the liquidator's administration of the liquidation, including a summary of his or her receipts and payments.

(2) The liquidator shall, not less than 7 days before the date fixed for the creditors' meeting—

    *(a)* send a copy of the notice and account referred to in paragraph (1) and a statement covering the matters specified in rule 175(4) to the Official Receiver; and

    *(b)* if he or she was appointed by the Court, file a copy of the notice and account with the Court.

(3) If at a creditors' meeting called under section 188(5) either of the following resolutions is passed—

    *(a)* that the liquidator's resignation be accepted;

    *(b)* that a new liquidator be appointed; the chairman shall, forthwith, send the Official Receiver a copy of the resolution together with a certificate of the liquidator's appointment, signed by the chairman.

(4) Where a liquidator's resignation is accepted by the creditors, he or she shall forthwith—

    *(a)* send a notice of his or her resignation to the Official Receiver; and

    *(b)* if he or she was appointed by the Court, file a notice of his or her resignation with the Court.

112          *Insolvency Rules*          **LAW OF VIRGIN ISLANDS**

[Statutory Intsrument]          Revision Date: 1 Jan 2020

(5) The liquidator's resignation is effective from the date that the notice of his or her resignation is received by the Official Receiver, which date shall be endorsed on the notice and a copy of the endorsed notice returned to the former liquidator.

(6) Within 14 days of receiving a copy of the endorsed notice from the Official Receiver under paragraph (5), the former liquidator shall file a copy of the endorsed notice with the Registrar.

## Leave to resign

**178.** (1) A liquidator shall, not less than 7 days before the date fixed for the hearing of an application for leave to resign under section 188(6A), give notice of his or her application to—

     *(a)* any joint liquidator;

     *(b)* the creditors' committee, if any; and

     *(c)* the Official Receiver.

(2) If the Court gives the liquidator leave to resign, it may make such provision as it considers appropriate with respect to matters arising in connection with the resignation.

(3) Where the Court gives the liquidator leave to resign, section 187(3) and rule 175(9) apply with such modifications as are necessary.

(4) The Court shall send 2 sealed copies of the order to the liquidator, who shall forthwith send one of the copies to the Official Receiver.

(5) Within 14 days of his or her resignation, the former liquidator shall send a notice of his or her resignation to the Official Receiver and to the Registrar.

## Death of liquidator

**179.** (1) Where the liquidator dies, his or her personal representative shall give notice of his or her death to the Official Receiver and the Registrar, specifying the date of his or her death, unless notice has already been given to the Court and the Registrar under paragraph (2) or (3).

(2) If a liquidator who dies was a partner in a firm, notice of his or her death may be given to the Official Receiver and the Registrar by a partner in the firm who is an insolvency practitioner.

(3) Notice of the death of a liquidator may be given by any person producing to the Court and the Registrar the relevant death certificate or a copy of it.

(4) Where the Official Receiver receives a notice under paragraph (3) and the deceased liquidator was the sole liquidator of the company, the Official Receiver shall as soon as reasonably practicable apply to the Court under section 189(1) for the appointment of a replacement liquidator, unless an application has already been made by the creditors' committee.

## Advertisement of appointment

**180.** (1) A liquidator who is appointed to replace a liquidator who has, for whatever reason, ceased to hold office, shall within 21 days of the date of his or her appointment, advertise his or her appointment.

(2) His or her advertisement shall state that he or she has been appointed in place of a liquidator who ceased office.

### Solicitation

**181.** (1) Where the Court is satisfied that any improper solicitation has been used by or on behalf of a liquidator in obtaining proxies or procuring his or her appointment, it may order that no remuneration, or that reduced remuneration, be payable to the liquidator out of the assets of the company.

(2) An order of the Court under paragraph (1) overrides any resolution of the creditors' committee or any other provision of the rules.

## Division 5

### *Settling List of Members*

### Form and contents of list of members

**182.** (1) The list of members settled by the liquidator of a company under section 193(1) shall identify—

*(a)* the classes of the company's shares, if more than one;

*(b)* the classes of members, if more than one.

(2) The list shall detail, in respect of each member—

*(a)* his or her name and address;

*(b)* the number and class of shares held by him or her, or the extent of any other interest to be attributed to him or her;

*(c)* if the shares are not fully paid up, the amounts that have been called up and paid in respect of them, and the equivalent if his or her interest is other than shares.

### Procedure for settling list of members

**183.** (1) The notice given to each person under section 193(2) shall state—

*(a)* in what character, and for what number of shares or what interest, he or she is included in the list;

*(b)* what amounts have been called up and paid up in respect of the shares or interest;

*(c)* that in relation to any shares or interest not fully paid up, his or her inclusion in the list may result in the unpaid capital being called; and

*(d)* the rights of a person to object under paragraphs (2) and (3) of this rule.

(2) If a person objects to any entry in, or omission from, the list, he or she shall inform the liquidator of his or her objection in writing within 21 days from the date of the notice.

(3) Where the liquidator receives an objection under paragraph (2), he or she shall, within 14 days, give notice to the objector either—

*(a)* that he or she has amended the list, specifying the amendment; or

*(b)* that he or she does not accept the objection and that he or she does not intend to amend the list.

(4) A notice given under paragraph (3) shall contain a summary of the effects of section 193(3) and (4).

## Division 6

### *Claims*

### Claim by unsecured creditors

**184.** A claim made against a company in liquidation by an unsecured creditor under section 209 shall be in the prescribed form and shall specify—

*(a)* the name and address of the creditor;

*(b)* the total amount of his or her claim as at the commencement of the liquidation;

*(c)* whether or not the claim includes uncapitalised interest;

*(d)* whether the whole or any part of the debt or liability, and if so which, is a preferential claim;

*(e)* particulars of how and when the debt or liability was incurred by the company;

*(f)* the documents, if any, by which the debt or liability can be substantiated;

*(g)* particulars of any security interest held, the date when it was given and the value that the creditor places upon it; and

*(h)* the name and address of the person signing the claim, if not the creditor himself or herself.

### Claim forms

**185.** (1) Unless the Court otherwise orders, the liquidator of a company shall send a claim form to each creditor of whom he or she is aware at the same time as he or she sends the creditor—

*(a)* notice of the first meeting of creditors under section 179(1)*(a)*; or

*(b)* notice under section 183*(b)* that he or she does not consider it necessary to call a meeting of creditors.

(2) The liquidator shall as soon as is practicable send a claim form to any creditor that he or she becomes aware of subsequent to sending out a notice under section 179(1)*(a)* or section 183*(b)*.

### Application to Court to expunge or amend an admitted claim

**186.** The applicant for an order expunging or reducing a claim under section 210(2) shall serve a copy of his or her claim—

*(a)* in the case of an application by the liquidator, on the creditor who made the claim; and

*(b)* in the case of an application by a creditor, on the liquidator and on the creditor who submitted the claim.

### Negotiable instruments

**187.** The liquidator may reject a claim in respect of money owed on a bill of exchange, promissory note, cheque or other negotiable instrument or security unless the instrument or security, or a copy certified by the creditor or his or her authorised representative to be a true copy, is produced to the liquidator.

### Inspection of claims

**188.** The liquidator of a company shall allow claims in his or her custody or control to be inspected by—

*(a)* a creditor who has submitted a claim in the liquidation that has not been wholly rejected by the liquidator;

*(b)* a contributory of the company;

*(c)* a person acting on behalf of a person referred to in paragraph *(a)* or *(b)*.

## Division 7

### *Distributions*

### Distribution by means of dividend

**189.** The liquidator shall make a distribution by distributing dividends among the creditors whose claims he or she has admitted.

### Notice to submit claim

**190.** A notice issued under section 216(1) shall state that the liquidator intends to distribute a dividend and that a creditor who does not submit a claim by the date specified in the notice will be excluded from the distribution.

### Distributions

**191.** (1) In determining the funds available for distribution to creditors by way of dividend, the liquidator shall make provision—

*(a)* for any claims which creditors may not have had sufficient time to make;

*(b)* for any claims which have not yet been determined; and

*(c)* for any disputed claims.

(2) A creditor who has not submitted a claim by the date specified in the notice issued under section 216(1) is not entitled to disturb, by reason that he or she has not participated in it, the distribution of the dividend.

(3) When a creditor referred to in subsection (2) makes a claim that is accepted by the liquidator—

*(a)* he or she is entitled to be paid, out of any money for the time being available for distributing a further dividend, a payment in respect of any dividend which he or she has failed to receive; and

*(b)* any payment under subparagraph *(a)* shall be paid before that money is used to distribute a further dividend to creditors.

(4) No action lies against the liquidator for a dividend but if he or she refuses to pay a dividend, the Court may, if it thinks fit, order him or her to pay it and also to pay, out of his or her own money—

*(a)* interest on the dividend, at the Court rate, from the time when it was withheld; and

*(b)* the costs of the proceedings in which the order to pay is made.

## Distribution of dividend

**192.** Where the liquidator distributes a dividend, he or she shall send to each creditor participating in the dividend, a statement containing such particulars with respect to the company, and to its assets and affairs, as will enable creditors to understand the calculation of the amount of the dividend.

## Division 8

### *Disclaimer*

## Notice of disclaimer

**193.** (1) A notice of disclaimer shall contain such details of the property disclaimed as enable it to be easily identified.

(2) The notice shall be signed by the liquidator and filed at Court with a copy.

(3) The original notice and the copy notice shall be sealed by the Court, endorsed with the date of filing and the copy notice shall be returned to the liquidator.

(4) The Court shall either endorse on the copy notice or record on the Court file the method by which the sealed notice of disclaimer was returned to the liquidator.

## Communication of notice of disclaimer

**194.** (1) Written notice of a disclaimer notice shall be given under section 217(3) and 218(2) by sending or giving a copy of the sealed and endorsed disclaimer notice to each person entitled to receive it.

(2) Without limiting section 217, the following are persons whose rights are affected by a disclaimer of property—

*(a)* a person who claims an interest in the disclaimed property;

*(b)* a person who is under a liability in respect of the disclaimed property, that has not been discharged by the disclaimer; and

*(c)* where the disclaimer is of an unprofitable contract, a person who is a party to the contract.

(3) If it subsequently comes to the knowledge of a liquidator that a person's rights are affected by a disclaimer, the liquidator shall forthwith given written notice of the disclaimer to that person in accordance with this rule unless—

*(a)* the liquidator is satisfied that the person has already been made aware of the disclaimer and its date; or

*(b)*   the Court otherwise orders.

(4) A liquidator disclaiming property may at any time, in addition to his or her obligations under the Act and the rules, give notice of the disclaimer to any person who, in his or her opinion, ought in the public interest or otherwise to be informed of the disclaimer.

### Duty to keep Court informed

**195.**   The liquidator shall, as soon as reasonably practicable, notify the Court of each person to whom he or she has given notice of disclaimer in accordance with the Act and the rules, specifying the name and address of each person and his or her interest in the property disclaimed.

### Notice to elect

**196.**   A notice to elect shall be served on a liquidator by delivering the notice to him or her personally or sending it to him or her by registered post.

### Notice to declare interest in onerous property

**197.**   (1) If it appears to the liquidator of a company that a person may have an interest in onerous property, he or she may give notice to that person to declare, within 14 days, whether he or she claims any interest in the property and, if so, the nature and extent of his or her interest.

(2) If a person fails to comply with a notice given under paragraph (1), the liquidator is entitled to assume that, for the purposes of the disclaimer of that property, the person concerned has no interest in it.

### Application for vesting order or order for delivery

**198.**   (1)   An application for a vesting order or an order for delivery under section 221 shall be made within 3 months of—

*(a)*   the applicant first becoming aware of the disclaimer; or

*(b)*   the applicant receiving a notice of the disclaimer from the liquidator; whichever is the earlier.

(2) The application shall be filed with the Court accompanied by a copy of the application for service on the liquidator and an affidavit—

*(a)*   stating whether his or her claim is based upon an interest in the disclaimed property or whether it is based upon an undischarged liability;

*(b)*   specifying the date upon which he or she received a copy of the liquidator's notice of disclaimer or otherwise became aware of the disclaimer; and

*(c)*   specifying the grounds upon which his or her application is based and the order that he or she desires the Court to make under section 221.

(3) Not less than 7 days before the date fixed for the hearing of the application, the applicant shall serve on the liquidator—

*(a)*   a sealed copy of the application endorsed by the Court; and

*(b)*   a copy of the affidavit filed in support.

(4) On the hearing of the application, the Court may give directions as to other persons, if any, who should be given notice of the application and the grounds on which it is made.

(5) Sealed copies of any order made on the application shall be sent by the Court to the applicant and the liquidator.

(6) Unless there is one or more applications pending under section 221, in a case where the property disclaimed is of a leasehold nature, and section 218(2) applies to suspend the effect of the disclaimer, the order of the Court shall include a direction giving effect to the disclaimer.

## Division 9

### *Miscellaneous Provisions*

**Prescribed priority**

199. The following costs and expenses of the liquidation shall be paid in the order of priority in which they are listed (the "prescribed priority")—

    *(a)* the costs and expenses properly incurred by the liquidator in preserving, realising or getting in the property of the company or in carrying on the company's business, including—

        (i) the costs and expenses of any legal proceedings which the liquidator has brought or defended whether in his or her own name or in the name of the company; and

        (ii) the costs of and in connection with an examination ordered under section 285;

    *(b)* the costs and expenses of complying with a notice issued by the Official Receiver under section 271(2);

    *(c)* the remuneration of the provisional liquidator;

    *(d)* the deposit lodged on an application for the appointment of a provisional liquidator;

    *(e)* the costs of the application on which the liquidator was appointed, including the costs of any person appearing on the application whose costs are allowed by the Court;

    *(f)* any costs allowed in respect of the preparation of a statement of affairs;

    *(g)* the cost of and in respect of any creditors' committee appointed in the liquidation;

    *(h)* any disbursements properly paid by the liquidator;

    *(i)* the remuneration of anyone employed by the liquidator;

    *(j)* the remuneration of the liquidator;

    *(k)* any other fees, costs, charges or expenses properly incurred in the course of the liquidation or properly chargeable by the liquidator in carrying out his or her functions in the liquidation.

PART IX

GENERAL PROVISIONS WITH REGARD TO COMPANIES THAT
ARE INSOLVENT OR IN LIQUIDATION

### Division 1

### *Statement of Affairs*

**Interpretation**

**200.** The words and expressions defined in Part XI, Divisions 1 and 2 of the Act have the same meaning in this Division.

**Notice requiring statement of affairs**

**201.** (1) A notice requiring a relevant person to submit a statement of affairs shall state—

> *(a)* the names and addresses of all other persons, if any, to whom the same notice has been sent;

> *(b)* the dates within which the statement of affairs shall be made up to;

> *(c)* the time within which the statement shall be delivered to the office holder;

> *(d)* the effect of section 277(4), (failure to submit statement of affairs and verifying affidavit an offence); and

> *(e)* the effect of section 282, if appropriate (duty to provide information and attend on office holder).

(2) A notice under paragraph (1) shall be accompanied by the forms required for the preparation of the statement of affairs.

(3) For the purposes of paragraph (1)*(b)*, a statement of affairs shall be made up to a date not more than 14 days before—

> *(a)* where the company is in administration, the date of the administration order;

> *(b)* where the company is in administrative receivership, the date that the administrative receiver was first appointed; and

> *(c)* where the company is in liquidation, the date that the liquidation commenced in accordance with section 160.

**Verification and delivery of statement of affairs**

**202.** A statement of affairs—

> *(a)* shall be verified by affidavit; and

> *(b)* shall be delivered to the office holder, together with the affidavit of verification, within the time period specified in the notice issued under rule 201.

## Affidavit of concurrence

**203.** (1) Subject to paragraph (3), an affidavit of concurrence is an affidavit stating that the maker of the affidavit—

    *(a)* has been provided with a statement of affairs of a company prepared and verified by a relevant person in accordance with section 277 pursuant to a notice sent to him or her by an officer holder under section 276;

    *(b)* concurs that the statement of affairs is complete and accurate and is not, in any respect, misleading; and

    *(c)* has sufficient direct knowledge of the company's affairs to make the affidavit.

(2) An affidavit of concurrence shall have exhibited to it the statement of affairs with which the maker concurs.

(3) An affidavit of concurrence may be qualified in respect of matters dealt with in the statement of affairs, where the person making the affidavit of concurrence considers the statement of affairs to be erroneous or misleading or he or she is without the direct knowledge necessary for concurring with it.

## Filing of statement of affairs and affidavit of concurrence

**204.** (1) Subject to section 280 and to paragraph (2), an office holder shall as soon as reasonably practicable after receiving a verified statement of affairs or an affidavit of concurrence, file a copy with the Registrar and with the Court.

(2) A liquidator appointed by the members of a company and an administrative receiver appointed out of court is not required to file a verified statement of affairs or an affidavit of concurrence with the Court.

## Release from duty to submit statement of affairs and extension of time

**205.** (1) Where a relevant person has received a notice requiring him or her to prepare and submit a statement of affairs, he or she may request the office holder who sent him or her the notice for—

    *(a)* a release from his or her obligation; or

    *(b)* an extension of time for submitting the statement of affairs; under section 279.

(2) An office holder may grant a release of an obligation or an extension of time under section 279 at his or her own discretion, without having received a request from the relevant person concerned.

## Application to Court where office holder refuses a request under rule 205

**206.** (1) If an office holder refuses a request made under rule 205, the relevant person concerned may apply to the Court for an order granting him or her the release or the extension.

(2) An applicant shall give the office holder at least 10 business days notice of an application under paragraph (1) and of any affidavit filed in support of his or her application.

(3) The office holder is entitled to appear and make representations at the hearing of an application under paragraph (1) and, whether or not he or she appears, to

file with the Court a written report setting out any matters that he considers should be brought to the attention of the Court.

(4) An office holder shall send the applicant a copy of a report filed under paragraph (3) at least 5 business days prior to the date fixed for the hearing of the application.

(5) On an application to the Court under this rule, the applicant's costs shall be paid in any event by him or her and, unless the Court otherwise orders, no allowance towards them shall be made out of the assets of the company or, in the case of an administrative receivership, out of the assets under the administrative receiver's control.

(6) The Court shall send sealed copies of an order made under this rule to the office holder and to the relevant person who made the application.

### Expenses of statement of affairs

**207.** (1) Subject to paragraph (3), a relevant person preparing a statement of affairs and making a verifying affidavit shall be allowed, and paid by the office holder out of the assets of the company or, in the case of an administrative receivership, out of the assets under the administrative receiver's control, any expenses he or she incurs in so doing which the office holder considers reasonable.

(2) Nothing in this rule relieves a relevant person from any obligation with respect to the preparation, verification and submission of the statement of affairs, or to the provision of information to, the office holder.

(3) No payment may be made to the office holder or any of his or her associates in respect of any assistance given to a relevant person in the preparation of his or her statement of affairs unless approved by the creditors' committee.

### Order of limited disclosure

**208.** (1) Where the Court makes an order of limited disclosure under section 280 in respect of a statement of affairs, the office holder shall, as soon as reasonably practicable, file the verified statement of affairs with the Registrar, to the extent provided by the order.

(2) If there is a material change in circumstances rendering the limit on disclosure, or any part of it, unnecessary, office holder shall, as soon as reasonably practicable after the change, apply to the Court for the order to be varied or rescinded.

(3) The office holder shall, as soon as reasonably practicable after the making of an order under paragraph (2), file the verified statement of affairs with the Registrar, to the extent provided by the order.

### Application by creditor for disclosure

**209.** (1) If a creditor seeks disclosure of a statement of affairs or a specified part of a statement of affairs in relation to which an order has been made under section 280, he or she may apply to the Court for an order that the office holder disclose it or a specified part of it.

(2) An application under paragraph (1) shall be—

    *(a)* supported by an affidavit; and

    *(b)* served on the office holder, together with the supporting affidavit, not more than 3 business days prior to the date fixed for the hearing.

(3) The Court may make an order for disclosure to the creditor subject to any conditions as to confidentiality, duration, the scope of the order in the event of any change of circumstances, or other matters as it sees fit.

(4) CPR Part 28 does not apply to an application under this rule.

## Division 2

### *Investigation of Insolvent Company's Affairs*

#### *Office Holders Powers*

**Request by office holder for information**

**210.** (1) A notice to provide information under section 282(1)*(a)* shall specify the period within which the information shall be submitted to the office holder and shall state whether the office holder requires the information to be verified by affidavit.

(2) Where the office holder requires the recipient of a notice under section 282(1)*(a)* to prepare and submit accounts of the company, rule 207 applies with such modifications as are necessary.

(3) An office holder shall not require accounts to be prepared and submitted to him or her for a period more than 5 years prior to the appropriate date specified in paragraphs *(a)* to *(d)* of the definition of "relevant period" in section 275(1) without the leave of the Court.

(4) The office holder may issue subsequent notices to a person specified under section 282(2), notwithstanding that a previous notice has been fully complied with.

#### *Examination Before Court*

**Application for examination**

**211.** (1) An application for the examination before the Court of a person under section 284 shall be filed with the Court, without notice to the proposed examinee, together with a supporting affidavit.

(2) Neither the application nor the supporting affidavit are open to public inspection unless the Court otherwise orders.

(3) The matters contained in the supporting affidavit shall include—

*(a)* details of the proposed examinee and his or her relationship with the company concerned or a connected company;

*(b)* details of the matters upon which the applicant seeks to examine the proposed examinee and the reasons for his or her belief that the proposed examinee has knowledge of these matters;

*(c)* details of any books, records or other documents relating to the company or a connected company that the applicant believes are in the possession of the proposed examinee that he or she wishes the proposed examinee to produce at the examination;

*(d)* if he or she seeks an order for a public examination, the justification for a public examination;

26-10769-mg   Doc 77-2   Filed 06/05/26   Entered 06/05/26 16:53:44   Exhibit 2 -
Transcript of the Remote Deposition of Riz Mokal    Pg 899 of 991

LAW OF
VIRGIN ISLANDS                    *Insolvency Rules*                    123
Revision Date: 1 Jan 2020                                    [Statutory Instrument]

*(e)* a statement as to whether the matters upon which he or she seeks to examine the proposed examinee are matters that he or she  could examine him or her on using his or her powers under sections 282 and 283 and, if so, whether or not he or she has conducted such an examination;

*(f)* if the applicant has conducted an examination under section 283, the reasons why a further examination before the Court is necessary;

*(g)* if the applicant is entitled to examine the proposed examinee under section 283, but has not done so, the reasons for the application to examine him or her before the Court.

## Adjournment of examination

**212.** (1) An examination held pursuant to an order made under section 285 may be adjourned by the Court either generally or to a fixed date.

(2) Where an examination has been adjourned generally, the Court may, on the application of the liquidator, the Official Receiver or the examinee—

*(a)* fix a venue for the resumption of the hearing; or

*(b)* give directions as to the manner in which, and the time within which, notice is to be given to any person entitled to take part in the examination.

(3) Where the examinee applies under paragraph (2) for the resumption of a public examination, the Court may grant it on condition that the expenses of giving the notices required by that paragraph are paid by the examinee and that, before a venue, date and time for the resumed public examination is fixed, he or she shall deposit with the Official Receiver or liquidator, as the case may be, such sum as the Official Receiver or liquidator considers necessary to cover those expenses.

## Examinee unfit for examination

**213.** (1) Where an examinee is suffering from any mental disorder or physical affliction or disability that renders him or her unfit to undergo or attend for an examination, the Court may, on application, either stay the order for his or her examination or direct that it shall be conducted in such manner and at such place as it considers fit.

(2) Application under this rule shall be made—

*(a)* by a person who has been appointed by a court in the Virgin Islands or elsewhere to manage the affairs of, or to represent, the examinee;

*(b)* by a relative or friend of the examinee whom the Court considers to be a proper person to make the application; or

*(c)* by the Official Receiver.

(3) Where the application is made by a person other than the Official Receiver—

*(a)* it shall be supported by the affidavit of a medical practitioner as to the examinee's mental and physical condition; and

*(b)* at least 7 days' notice of the application shall be given to the Official Receiver and the liquidator, if not the Official Receiver.

(4) Where the application is made by the Official Receiver it may be made *ex parte*, and may be supported by evidence in the form of a report by the Official Receiver to the Court.

## Adjournment of examination

**214.** (1) The Court may, in its discretion, adjourn an examination either to a fixed date or generally.

(2) Where an examination has been adjourned generally, the Court may at any time on the application of the Official Receiver, the liquidator if not the Official Receiver, or of the examinee—

(a) fix a venue for the resumption of the examination; and

(b) give directions as to the manner in which, and the time within which, notice of the resumed examination is to be given to persons entitled to take part in it.

(3) Where application under paragraph (2) is made by the examinee, the Court may grant it on terms that the expenses of giving the notices required by that paragraph shall be paid by him or her and that, before a venue for the resumed examination is fixed, he or she shall deposit with the Court such sum as it considers reasonable to cover those expenses.

PART X

DISQUALIFICATION ORDERS

## Application for disqualification order

**215.** (1) Application for a disqualification order against a person (the respondent) is made by filing at Court an originating application and one or more affidavits in support, at least one of which shall be sworn by the Official Receiver.

(2) The affidavit sworn by the Official Receiver shall specify the facts and matters that the Official Receiver relies upon to support his or her application for a disqualification order.

(3) The application shall be endorsed with the following information—

(a) that if the application is successful, the Court may make a disqualification order against the person concerned for a maximum period of 10 years;

(b) that a disqualified person is for the period of the disqualification order prohibited from engaging in any prohibited activity within the meaning of section 260; and

(c) that any evidence that the respondent wishes to be taken into consideration by the Court shall be filed with the Court and served on the Official Receiver within the time limits specified in rule 216, which shall be set out on the application.

(4) On the filing of an application for a disqualification order, the Court shall fix, and endorse on the application, a date and time for the hearing of the application not less than 8 weeks after the date that the application was filed.

(5) A sealed copy of the application together with the supporting affidavit or affidavits shall be served on the respondent not more than 14 days after the date that the application is filed.

**Affidavits in response and reply**

**216.** (1) The respondent shall, within 28 days of the date of service of the application on him or her, file affidavit evidence in opposition to the application if—

    *(a)* he or she opposes the application for a disqualification order; or

    *(b)* while not opposing the making of a disqualification order, he or she intends to adduce mitigating factors with a view to justifying a short period of disqualification.

(2) In any affidavit filed under paragraph (1), the respondent shall state the basis on which he or she contests the application or seeks a short period of disqualification.

(3) The respondent shall forthwith upon filing an affidavit serve a copy on the Official Receiver.

(4) The Official Receiver shall, within 14 days of receiving a copy of the respondent's affidavit or affidavits, file any further affidavits in reply that he or she wishes the Court to take into consideration and shall forthwith serve a copy of the affidavit or affidavits on the respondent.

**Hearing**

**217.** (1) The Court shall, on the hearing of the application—

    *(a)* determine the application summarily; or

    *(b)* if it considers that questions of law or fact arise that are not suitable for summary determination, give directions for the further conduct of the matter and adjourn it to a fixed date.

(2) The Court may, upon being satisfied that the respondent has been served with the application, make a disqualification order against the respondent whether or not he or she appears and whether or not he or she has filed evidence in opposition in accordance with rule 216.

(3) Any disqualification order made against the respondent in his or her absence may, at any time within 2 years following the date of the order, be set aside or varied by the Court on such terms as it considers fit.

PART XI

BANKRUPTCY

*Preliminary*

**Official name of trustee**

**218.** The official name of a bankruptcy trustee is "the trustee of the estate of (name of bankrupt) a bankrupt" but he or she may be known as the bankruptcy trustee of the bankrupt.

**Appointment of Official Receiver as trustee**

**219.** (1) The Court may appoint the Official Receiver as the bankruptcy trustee of a debtor on an application under Part XII of the Act, notwithstanding that—

> *(a)* the applicant may, in his or his application, have proposed the appointment of an eligible insolvency practitioner as trustee;
>
> *(b)* the Official Receiver has not consented to act as trustee; and
>
> *(c)* the Official Receiver has not been given notice of the application.

(2) Where the Official Receiver is the trustee of a bankrupt, any provision of the Act or the rules requiring the trustee to send or give any notice or other document to the Official Receiver shall be construed as requirement that the notice or document is to be retained by the Official Receiver as a record of the bankruptcy.

## Division 1

### *Bankruptcy Order*

*Creditor's Application*

**Scope of and interpretation for this Division**

**220.** (1) Rules 220 to 245 apply to—

> *(a)* creditor's application for a bankruptcy order under section 296;
>
> *(b)* an application of a creditor or the supervisor of an arrangement under section 301, with such modifications as are appropriate; and
>
> *(c)* the making of a bankruptcy order on an application specified in paragraphs *(a)* or *(b)*.

(2) In this Division, unless the context otherwise requires—

"applicant" means the person making an application;

"application" means an application for a bankruptcy order under section 296 or, where appropriate, under section 301.

**Form of creditor's application**

**221.** An application shall be dated and shall be signed—

> *(a)* by the applicant himself or herself; or
>
> *(b)* on the applicant's behalf by a person who is authorised by him or her and who has the requisite knowledge of the matters referred to in the application; and shall be witnessed.

**Identification of debtor**

**222.** (1) An application shall state the following particulars with respect to the debtor—

> *(a)* his or her name;
>
> *(b)* his or her place of residence;
>
> *(c)* his or her occupation;

26-10769-mg    Doc 77-2    Filed 06/05/26    Entered 06/05/26 16:53:44    Exhibit 2 -
Transcript of the Remote Deposition of Riz Mokal    Pg 903 of 991

LAW OF
VIRGIN ISLANDS                    *Insolvency Rules*                                127
Revision Date: 1 Jan 2020                                        [Statutory Instrument]

*(d)* the nature of his or her business, if any, and the address at which he or she carries it on; and

*(e)* any name other than the one specified under subparagraph *(a)*, including a business name, which, to the applicant's personal knowledge, the debtor has used.

(2) The title of the proceedings shall be determined by the particulars given under paragraph (1)*(a)* and *(e)*.

### Particulars of liability

**223.** An application shall state the following matters with respect to the liability in respect of which the application is made—

*(a)* the amount of the liability at the date of the application;

*(b)* the consideration for the liability or, if there is no consideration, the nature of the liability;

*(c)* if the amount claimed in the application includes interest, penalties, charges or any pecuniary consideration *in lieu* of interest, the amount claimed and the rate at which and the period for which it was calculated, which shall be separately identified;

*(d)* when the liability was incurred or became due;

*(e)* if the liability is founded on a judgment or an order of a court, details of the judgment or order, including the action under which the judgment or order was obtained and the date of the judgment or order; and

*(f)* if the debt is founded on grounds other than a judgment or an order of a court, such details as would enable the debtor to identify the debt.

### Application based on statutory demand

**224.** (1) An application based on the debtor's failure to comply with the requirements of a statutory demand, shall state the date and manner of service of the statutory demand and that to the best of the creditor's knowledge and belief, the demand has neither been complied with nor set aside and that no application to set it aside is pending.

(2) An application may not be made based on a statutory demand served more than 4 months before the filing date of the application.

### Application based on unsatisfied execution

**225.** (1) An application based on an unsatisfied execution or other process shall specify—

*(a)* the judgment, decree or order on which the execution was issued;

*(b)* the court which issued the execution against the debtor;

*(c)* the mode of execution; and

*(d)* the extent, if any, to which the judgment debt has been satisfied as a result of the execution.

(2) An application may not be made based on an execution or other process completed more than 4 months before the filing date of the application.

## Other matters to be specified in application

**226.** (1) An application shall state which of the conditions for making a bankruptcy order specified in section 293(1) apply to the debtor.

(2) An application under section 301 shall provide sufficient details to enable the debtor to understand the grounds on which the bankruptcy order is sought.

## Filing of application

**227.** Application for a bankruptcy order is made by filing at Court an application complying with paragraph (2), together with—

    *(a)* an affidavit verifying service of the statutory demand, if required under rule 229; and

    *(b)* an affidavit in support of the application complying with rule 228.

## Affidavit in support

**228.** (1) An application shall be supported by an affidavit stating that the statements made in the application are true or are true to the best of the deponent's knowledge, information and belief.

(2) If the application is in respect of debts due to different creditors, the debts due to each creditor shall be separately verified.

(3) The supporting affidavit shall be made by the applicant or by the person who signed the application on the applicant's behalf.

(4) A supporting affidavit is *prima facie* evidence of the statements in the application to which it relates.

(5) The following documents shall be exhibited to the affidavit in support of an application—

    *(a)* a copy of the application; and

    *(b)* if the applicant proposes an eligible insolvency practitioner as bankruptcy trustee, a notice of eligibility and consent to act signed by the insolvency practitioner specified in the application.

## Affidavit of service of statutory demand

**229.** (1) Where an application is based on the debtor's failure to comply with the requirements of a statutory demand, an affidavit of service of the statutory demand complying with rule 19 shall be filed together with the application.

(2) Where the statutory demand has been served other than by personal service, the affidavit shall—

    *(a)* give particulars of the steps taken to effect personal service and the reasons for which they have been ineffective;

    *(b)* state the means whereby, attempts at personal service having been unsuccessful, it was sought to bring the demand to the debtor's attention and explain why such means would have best ensured that the demand would be brought to the debtor's attention;

    *(c)* exhibit evidence of such alternative mode or modes of service; and

(d) specify a date by which to the best of the knowledge, information and belief of the person making the affidavit, the demand would have come to the debtor's attention.

(3) If the affidavit specifies a date for the purposes of compliance with paragraph (2)*(d)*, then unless the Court otherwise orders, that date is deemed to have been the date on which the statutory demand was served on the debtor.

(4) The Court shall dismiss the application for a bankruptcy order if it is not satisfied that the creditor has discharged the obligations imposed on him or her by rule 150.

### Service of application for bankruptcy order

**230.**   Subject to rule 231, an application shall be served personally on the debtor by an officer of the Court, by the creditor making the application or his or her solicitor, or by a person in their employment.

### Substituted service

**231.**   (1) If the Court is satisfied by affidavit or other evidence on oath that prompt personal service cannot be effected because the debtor is keeping out of the way to avoid service of a creditor's application, or for any other cause, the Court may order substituted service to be effected in such manner as it considers appropriate.

(2) Where an order for substituted service has been carried out, the application is deemed to have been served on the debtor.

(3) If an order has been made for substituted service of the application, a sealed copy of the order shall also be exhibited to the affidavit of service.

(4) The affidavit of service shall be filed with the Court as soon as reasonably practicable after service has been effected.

### Death of debtor before service

**232.**   If a debtor dies before service on him or her of an application, the Court may order service to be effected on his or her personal representatives or on such other persons as it considers appropriate.

### Affidavit of service of application for bankruptcy order

**233.**   (1) Service of an application on the debtor shall be verified by an affidavit of service complying with rule 19.

(2) If an order has been made for substituted service of the application, a sealed copy of the order for substituted service and any evidence of service shall be exhibited to the affidavit of service.

(3) The affidavit of service shall be filed with the Court forthwith after service has been effected.

### Copies of application to be sent to other persons

**234.**   A sealed copy of an application shall be sent, as soon as reasonably practicable—

(a) if the application is made under section 301, and the applicant is not the supervisor of the arrangement, to the supervisor;

*(b)* if the individual is, or at any time in the previous 2 years has been, a regulated person, to the Commission.

**Application seeking appointment of supervisor as trustee**

**235.** (1) This rule applies where an applicant proposes as trustee the supervisor of an arrangement in place in respect of the debtor.

(2) Within 5 business days of receiving a copy of the application, the supervisor shall send a notice to each creditor of the debtor—

*(a)* stating that an application has been made for a bankruptcy order and that it is proposed that he or she be appointed bankruptcy trustee; and

*(b)* advising the creditor—

(i) of the date fixed for the hearing of the application; and

(ii) that if the creditor wishes to object to the supervisor's appointment, or respond in any other way, he or she shall send his or her objection or response to the supervisor not later than 12 noon on the day before the date fixed for the hearing.

(3) The supervisor shall file with the Court, before or at the hearing of the application, a report summarising any responses or objections that he or she has received.

**Application opposed by debtor**

**236.** If a debtor intends to oppose an application he or she shall, not less than 5 days before the date fixed for the hearing of the application, file with the Court and send to the applicant a notice setting out the grounds on which he or she opposes the application.

**Notice of intention to appear**

**237.** (1) A creditor who intends to appear on the hearing of an application shall send a notice of intention to appear to the applicant.

(2) A notice of intention to appear shall be in writing and shall specify—

*(a)* the name and address of the person giving notice and his or her contact details, if any;

*(b)* whether it is his or her intention to support or oppose the application; and

*(c)* the amount and nature of the liability of the debtor to him or her.

(3) A notice of intention to appear shall be sent so as to reach the applicant no later than 16:00 hours on the business day before the date fixed for the hearing of the application, or where the hearing has been adjourned, the adjourned hearing.

**List of appearances**

**238.** (1) An applicant shall prepare a list of the creditors, if any, who have sent him or her a notice of intention to appear in accordance with rule 237, specifying, in respect of each person—

*(a)* his or her name and address;

*(b)* his or her legal practitioner, if known; and

*(c)*  whether he or she intends to support or oppose the application.

(2)  The list shall be filed with the Court at the hearing of the application.

(3)  If the Court grants a person leave to appear on the hearing of the application under rule 240*(e)*, the applicant shall, as soon as practicable, file an amended list of appearances with the Court.

### Hearing of application

**239.**  (1)  Subject to paragraph (2), an application shall not be heard until the expiration of 14 days, or such longer time as the Court may direct, from the service of the application on the debtor.

(2)  The Court may, on such terms as it considers appropriate, hear the application at an earlier date where—

*(a)*  it is satisfied that the debtor has absconded;

*(b)*  it is satisfied that it is a proper case for an expedited hearing; or

*(c)*  the debtor consents to a hearing within the 14 days.

### Parties who may be heard

**240.**  Any of the following persons may appear and be heard on the hearing of an application—

*(a)*  the applicant;

*(b)*  the debtor;

*(c)*  the supervisor of any arrangement in place in respect of the debtor;

*(d)*  any creditor who has given notice to the Court of his or her intention to appear at the hearing of the application;

*(e)*  a creditor who, having failed to comply with rule 237, is granted leave by the Court to appear; and

*(f)*  the Official Receiver.

### Non-appearance of applicant or failure to prosecute application

**241.**  If the applicant fails to appear on the hearing of the application or fails to prosecute the application diligently, the application may be dismissed and no subsequent application against the same debtor shall be filed by the same creditor in respect of the same debt without the leave of the Court.

### Extension of time for hearing

**242.**  (1)  The applicant may, if the application has not been served, apply to the Court to fix another venue for the hearing of the application.

(2)  An application under paragraph (1) shall state the reasons why the application has not been served.

(3)  No costs occasioned by an application under paragraph (1) shall be allowed in the proceedings unless the Court otherwise orders.

(4)  The application shall be amended before service to reflect the new hearing date.

*Insolvency Rules*

(5) If the Court fixes another venue for the hearing, the applicant shall as soon as reasonably practicable notify any creditor who has given notice under rule 237.

**Adjournments**

**243.** (1) If the Court adjourns the hearing of the application, the applicant shall forthwith send a notice of the order adjourning the hearing to the debtor and any creditor who has given notice under rule 237.

(2) A notice of an order adjourning the hearing of an application shall state the venue for the adjourned hearing.

**Substitution of applicant**

**244.** (1) In the circumstances specified in paragraph (2), the Court may, by order, substitute as applicant, a creditor who—

*(a)* has given notice of his or her intention to appear and support the application under rule 237 and appears at the hearing;

*(b)* wishes to prosecute the application; and

*(c)* was in such a position in relation to the debtor at the date on which the application was filed as would have enabled him or her on that date to file an application against the debtor.

(2) The Court may make a substitution order under paragraph (1) where the Court considers it appropriate to do so—

*(a)* because the applicant applies to withdraw the application, consents to it being dismissed or fails to appear in support of the application on the day fixed for the hearing;

*(b)* because the Court considers that the application is not being diligently proceeded with;

*(c)* where the applicant is not entitled to make the application; or

*(d)* for any other reason.

(3) An order under paragraph (1) may be made on such terms as the Court considers appropriate.

(4) Where the Court makes a substitution order, the original applicant shall not be entitled to the costs of his or her application unless the Court otherwise orders.

(5) Where the Court makes a substitution order, the application shall be amended accordingly and shall be verified, re-filed and re-served on the debtor and the Official Receiver.

**Leave to withdraw application**

**245.** (1) Where the applicant applies to the Court for the application to be dismissed, or for leave to withdraw it, he or she shall, unless the Court otherwise orders, file in Court an affidavit specifying the grounds of the application and the circumstances in which it is made.

(2) If, since the application was filed, any payment has been made to the applicant by way of settlement, in whole or in part, of the liability in respect of which

the application was made, or any arrangement has been entered into for securing or compounding them, the affidavit shall state—

(a) what dispositions of assets have been made for the purposes of the settlement or arrangement;

(b) whether, in the case of any disposition, it was assets of the debtor himself or herself, or of some other person; and

(c) whether, if it was assets of the debtor, the disposition was made with the approval of, or has been ratified by, the Court and, if so, specifying the relevant Court order.

(3) No order giving leave to withdraw an application shall be given before the application is heard.

### *Debtor's Application*

### Scope of and interpretation for this Division

**246.** (1) This Division applies to an application by a debtor for a bankruptcy order under section 294 and for the making of a bankruptcy order on an application under that section.

(2) In this Division, unless the context otherwise requires—

"application" means a debtor's application for a bankruptcy order under section 294.

### Form of application

**247.** (1) An application shall be dated and signed by the debtor and shall state—

(a) his or her name;

(b) his or her residential address;

(c) his or her occupation, if any;

(d) the nature of his or her business, the address at which he or she carries on the business and whether he or she carries on the business alone or with others;

(e) any names, other than the one stated under paragraph *(a)*, by which he or she is or was known or by which he or she carries or has carried on any business.

(2) The title of the proceedings shall be determined by the particulars given under paragraph (1)*(a)* and *(e)*.

(3) The debtor shall state in his or her application which of the conditions for making a bankruptcy order specified in section 293(1) apply to him or her.

### Admission of insolvency

**248.** (1) An application shall contain a statement that the debtor is unable to pay his or her debts as they fall due, an explanation as to the cause of his or her insolvency and a request that a bankruptcy order be made against him or her.

(2) If, within the period of 5 years prior to the date that the application is filed, the debtor has had a bankruptcy order made against him or her, or has made a

composition with his or her creditors in satisfaction of his or her debts or a scheme of arrangement of his or her affairs or has entered into an arrangement under Part II, Division 2 of the Act, particulars of these matters shall be given in the application.

(3) If, at the date of the filing of the application an arrangement under Part II, Division 2 of the Act is in force, the particulars required under paragraph (2) shall contain a statement to this effect and the name and address of the supervisor of the arrangement.

## Filing of application

**249.** (1) Application for a bankruptcy order is made by filing at Court an application complying with this Division, together with—

     *(a)* 3 copies of the application for sealing;

     *(b)* an affidavit in support of the application made by the debtor complying with paragraph (2); and

     *(c)* the verified statements of his or her assets and liabilities required by section 295(2) and 2 additional copies.

(2) The following documents shall be exhibited to the affidavit in support of an application—

     *(a)* a copy of the application; and

     *(b)* if the applicant proposes an eligible insolvency practitioner as bankruptcy trustee, a notice of eligibility and consent to act signed by the insolvency practitioner specified in the application.

(3) The Court shall—

     *(a)* return a sealed copy of the application to the applicant; and

     *(b)* send a sealed copy of the application and a copy of the verified statements of assets and liabilities to the Official Receiver.

## Application where arrangement in place

**250.** (1) Where an application is made by the debtor at a time when an arrangement under Part II of the Act is in force between himself or herself and his or her creditors, he or she shall serve a copy of the application on the supervisor.

(2) Where the debtor proposes the supervisor as his or her trustee, within 5 business days of receiving a copy of the application, the supervisor shall send a notice to each creditor of the debtor—

     *(a)* stating that an application has been made for a bankruptcy order and that it is proposed that he or she be appointed bankruptcy trustee; and

     *(b)* advising the creditor—

         (i) of the date fixed for the hearing of the application; and

         (ii) that if the creditor wishes to object to the supervisor's appointment, or respond in any other way, he or she shall send his or her objection or response to the supervisor not later than 12 noon on the day before the date fixed for the hearing.

(3) The supervisor shall file with the Court, before or at the hearing of the application, a report summarising any responses or objections that he or she has received.

## *Rules Applicable to Bankruptcy Orders*

### Scope of and interpretation for this Division

**251.** This Division applies to bankruptcy orders whether made by the debtor, a creditor or a supervisor.

### Drawing and content of bankruptcy order

**252.** (1) A bankruptcy order shall be drawn by the Court.

(2) A bankruptcy order shall—

    *(a)* state the date that the application on which the order is made was filed;

    *(b)* state the date of the making of the order; and

    *(c)* contain a notice requiring the bankrupt forthwith after the service of the order on him or her to attend on the trustee at the time and place stated in the order.

(3) Where the debtor is represented by a legal practitioner, the bankruptcy order shall be endorsed with the name, address and telephone number of the legal practitioner and any reference.

### Service of bankruptcy order

**253.** (1) The Court shall, forthwith on making a bankruptcy order, give notice to the trustee of his or her appointment and send 3 sealed copies of the order to him or her as soon as is practicable.

(2) The trustee shall, forthwith on receiving the sealed copies of the bankruptcy order from the Court, send one copy to the bankrupt and one copy to the Official Receiver.

### Advertisement of bankruptcy order

**254.** (1) The trustee shall, within 10 days of receiving sealed copies of the bankruptcy order from the Court, advertise the Order.

(2) The advertisement shall state the name and address of the person appointed as trustee.

### Stay of advertisement

**255.** (1) The Court may, on the application of the bankrupt or a creditor, order the trustee not to advertise a bankruptcy order pending a further order of the Court.

(2) An application for a stay of advertisement shall be supported by an affidavit setting out the grounds on which the application is made.

(3) The applicant for an order under paragraph (1) shall serve a sealed copy of the order, if made, on the trustee and on the Official Receiver.

## Amendment of title of proceedings

**256.** (1) At any time after the making of a bankruptcy order, the trustee may apply to the Court for an order amending the title of the proceedings.

(2) The Court may include in an order under paragraph (1), directions for the service and advertisement of a notice of the amendment.

## Division 2

### *Interim Relief*

## Application for order under section 307(1)

**257.** (1) An application for an order under section 307(1) [protection of assets after application for bankruptcy order], shall propose an eligible insolvency practitioner or the Official Receiver for appointment under section 307(1)*(a)*.

(2) If the Official Receiver is proposed for appointment, he or she shall be given sufficient notice of the hearing to enable him or her to attend the hearing.

(3) An application referred to in paragraph (1) shall be supported by an affidavit stating—

*(a)* the grounds upon which the application is being made;

*(b)* where the proposed appointee is not the Official Receiver, that he or she has consented to act and, to the best of the applicant's belief is eligible to act as an insolvency practitioner in relation to the debtor;

*(c)* whether, to the applicant's knowledge, there has been proposed or is in force for the debtor a creditor's arrangement under Part II of the Act;

*(d)* the applicant's estimate of the value of the assets in respect of which the appointment is to be made; and

*(e)* if the Official Receiver is proposed for appointment, whether and in what manner he or she has been given notice of the application.

## Hearing of application

**258.** (1) If the Official Receiver is proposed to be appointed under section 307(1)*(a)*, he or she is entitled to attend the hearing and make such representations as he or she considers appropriate.

(2) The Court shall not appoint the Official Receiver unless he or she has been given notice of the application in accordance with rule 257(2).

## Order under section 307(1)

**259.** (1) An order under section 307(1) shall state the nature and a short description of the assets of which the person appointed is to take control, and the duties to be performed by him or her in relation to the debtor's affairs.

(2) The Court shall, forthwith on making an order under section 307(1), give notice to the person appointed of his or her appointment and, as soon as is practicable send 2 sealed copies of the order to him or her.

(3) The person appointed by the Court shall, as soon as practicable, send one copy of the sealed order to the debtor.

LAW OF
VIRGIN ISLANDS

*Insolvency Rules*

137

Revision Date: 1 Jan 2020

[Statutory Instrument]

## Division 3

### *Bankrupt's Estate*

**Duties of bankrupt with respect to after acquired property**

**260.** (1) The notice required to be given by the bankrupt to the trustee under section 316(4) of assets acquired by, or devolving on him or her, or of any increase of his or her income, is within 21 days of his or her becoming aware of assets or the increased income.

(2) If the bankrupt disposes of property before giving the notice required by this rule or in contravention of section 316(6), he or she shall forthwith disclose to the trustee the name and address of the person to whom he or she disposed of the assets and provide any other information which may be necessary to enable the trustee to trace the assets and recover them for the estate.

(3) Where the bankrupt gives the trustee notice under paragraph (2) of assets acquired by or devolving upon him or her, he or she shall not, without the trustee's consent in writing, dispose of the assets within the period of 42 days beginning with the date of the notice.

(4) Subject to paragraph (5), paragraphs (1) to (3) do not apply to assets acquired by the bankrupt in the ordinary course of a business carried on by him or her.

(5) If the bankrupt carries on a business, he or she shall, at least once in each six month period, provide to the trustee information with respect to the business, showing the total value of goods bought and sold or, as the case may be, services supplied, and the profit or loss arising from the business.

(6) Where paragraph (5) applies, the trustee may by a notice in writing, require the bankrupt to provide such further details of the business, including accounts, as are specified in the notice.

**Action against person to whom bankrupt disposed assets**

**261.** (1) Where assets have been disposed of by the bankrupt, before giving the notice required by rule 260(3) or in contravention of that rule, the trustee may serve notice on the person to whom the assets were disposed of, claiming the property as part of the estate by virtue of section 318(2).

(2) The trustee's notice under this rule shall be served within 28 days of his or her becoming aware of the identity of the person to whom the bankrupt disposed of the assets and an address at which he or she can be served.

**Expenses of acquiring title to after-acquired assets**

**262.** Any expenses incurred by the trustee in acquiring title to after-acquired property shall be paid out of the estate, in the prescribed order of priority.

**Purchase of replacement property for items of excess value**

**263.** (1) A purchase of replacement assets under section 319(3) may be made either before or after the realisation by the trustee of the value of the assets vesting in him or her under the section.

(2) The trustee is under no obligation, by virtue of the section, to apply funds to the purchase of a replacement for assets vested in him or her, unless and until he or she has sufficient funds in the estate for that purpose.

### *Income Payments Orders*

**Application for order**

**264.** (1) An application by the trustee for an income payments order under section 322 is made by filing with the Court an application together with a statement of the grounds upon which the application is made.

(2) The trustee shall send a notice of the application to the bankrupt not less than 28 days before the day fixed for the hearing of the application, together with sealed copies of the documents filed with the Court.

(3) A notice sent to the bankrupt under paragraph (2) shall state that—

*(a)* unless at least 7 days before the date fixed for the hearing the bankrupt sends to the Court and to the trustee written consent to an order being made in the terms of the application, he or she is required to attend the hearing; and

*(b)* if he or she attends, he or she will be given an opportunity to show cause why the order should not be made, or an order should be made otherwise than as applied for by the trustee.

**Notice of order**

**265.** Where the Court makes an income payments order, the trustee shall, forthwith after the order is made, send a sealed copy of the order—

*(a)* to the bankrupt; and

*(b)* if the order is made under section 322(3)*(b)*, to the person to whom the order is directed.

**Order under section 322(3)*(b)***

**266.** (1) Where a person receives notice of an income payments order under section 322(3)*(b)*, with reference to income otherwise payable by him or her to the bankrupt, he or she shall make the necessary arrangements for immediate compliance with the order.

(2) The trustee may, by written notice, authorise a person making payments to him or her in accordance with an order under section 322(3)*(b)* to deduct and retain such fee as may be specified in the notice towards the clerical and administrative costs of compliance with the order.

(3) The trustee shall send a copy of any notice under paragraph (2) to the bankrupt.

(4) Where a person receives notice of an income payments order imposing on him or her a requirement under section 322(3)*(b)*, he or she shall forthwith give notice to the trustee if—

*(a)* he or she is no longer liable to make to the bankrupt any payment of income; or

LAW OF
VIRGIN ISLANDS

*Insolvency Rules*

139

Revision Date: 1 Jan 2020

[Statutory Instrument]

*(b)* having made payments in compliance with the order, he or she ceases to be so liable.

### Variation or discharge of order

**267.** (1) The trustee or the bankrupt may apply to the Court to vary or discharge an income payments order.

(2) Subject to paragraphs (5) and (6), where the application is made by the trustee, rule 264 applies to an application under this rule with such modifications as are necessary.

(3) A bankrupt shall make application under paragraph (1) by filing with the Court an application, a statement of the grounds upon which it is made and any affidavit that he or she intends to rely on.

(4) The bankrupt shall send sealed copies of the application, the statement of grounds and any affidavit filed with the Court to the trustee not less than 28 days before the day fixed for the hearing of the application.

(5) If an income payments order is made under section 322(3)*(a)*, and the bankrupt does not comply with it, the trustee may apply to the Court for the order to be varied, so as to take effect under section 322(3)*(b)* as an order to the person making the payment.

(6) The trustee's application under paragraph (1) may be made *ex parte*.

(7) Where an application under this rule is made by the bankrupt, the trustee may, not less than 7 days before the date fixed for the hearing, file a written report of any matters which he or she considers ought to be drawn to the Court's attention.

(8) The trustee shall, as soon as reasonably practicable after filing a report under paragraph (7) send a sealed copy to the bankrupt.

(9) Where the Court makes an order under this rule, the trustee shall, forthwith after the order is made, whether on his or her application or on the application of the bankrupt, send a sealed copy of the order or variation or discharge—

*(a)* to the bankrupt; and

*(b)* if the order is made under paragraph (5) or the order varies or discharges an order made under section 322(3)*(b)*, to the person making the payment.

## Division 4

### *Bankruptcy Trustee*

### Appointment of trustee by Court

**268.** (1) Where the Court appoints a trustee, it shall as soon as reasonably practicable after the date of the order, send 2 sealed copies of the order to the trustee who shall send one copy to the Official Receiver.

(2) The trustee's appointment takes effect from the date of the order.

## Authentication of trustee's appointment

**269.** A sealed copy of the Court's order appointing a person as trustee of a bankrupt may, in any proceedings, be adduced as proof that the person appointed is duly authorised to exercise the powers and perform the duties of trustee in relation to the bankruptcy.

## Removal of trustee

**270.** (1) Application for the removal of a trustee under section 328 is made by filing at Court—

>    *(a)* an application stating the grounds upon which the removal of the trustee is sought; and

>    *(b)* an affidavit setting out the evidence relied upon in support of the application.

(2) A sealed copy of the application and the affidavit shall be served on the trustee and the Official Receiver, unless it is his or her application, not less than 10 days before the date fixed for the hearing.

(3) The trustee may file affidavit evidence in opposition to the application not less than 4 days before the date fixed for the hearing of the application.

(4) The trustee shall, not less than 4 days after being served with an application under paragraph (2) send to the Official Receiver a statement as to whether any of the bankrupt's assets have not been realised, applied, distributed or otherwise fully dealt with and, if so, providing details of—

>    *(a)* the nature, value and location of the assets;

>    *(b)* any action taken by the trustee to deal with the assets or his or her reason for not dealing with them; and

>    *(c)* the current position in relation to the assets.

(5) Unless the Court otherwise directs, an application for the removal of a trustee shall be held in Chambers.

(6) The Court may require the applicant to make a deposit or provide security for the costs to be incurred by the trustee on the application.

(7) Subject to any order of the Court to the contrary, the costs of an application to remove a trustee are not payable out of the bankrupt's estate.

(8) If the Court removes a trustee under section 328, it shall send a copy of the order removing him or her to—

>    *(a)* the trustee removed;

>    *(b)* any remaining trustee; and

>    *(c)* the Official Receiver.

## Resignation of liquidator under section 329(1)*(a)*

**271.** (1) Where the trustee resigns under section 329(1)*(a)*[trustee no longer eligible to act as an insolvency practitioner in relation to the bankrupt], he or she shall send the Official Receiver with the notice of his or her resignation, a statement covering the matters specified in rule 270(4).

(2) The trustee shall, if so directed by the Official Receiver, verify the statement by affidavit.

**Resignation of liquidator under section 329(1)*(b)***

**272.** (1) Unless the trustee is a joint trustee resigning in accordance with section 329(4), the notice of a creditors' meeting sent to creditors in accordance with section 329(5) shall be accompanied by an account of the trustee's administration of the bankruptcy, including a summary of his or her receipts and payments.

(2) The trustee shall, not less than 7 days before the date fixed for the creditors' meeting, send a copy of the notice and account referred to in paragraph (1) and a statement covering the matters specified in rule 270(4) to the Official Receiver and file a copy of the notice and account with the Court.

(3) If at a creditors' meeting called under section 329(5) a resolution is passed accepting the trustee's resignation, the chairman shall, forthwith, send the Official Receiver a copy of the  resolution signed by the chairman.

(4) Where a trustee's resignation is accepted by the creditors, the trustee shall forthwith—

*(a)*  send a notice of his or her resignation to the Official Receiver, and

*(b)*  file a notice of his or her resignation with the Court.

(5) The trustee's resignation is effective from the date that the notice of his or her resignation is received by the Official Receiver, which date shall be endorsed on the notice and a copy of the endorsed notice returned to the former trustee.

**Leave to resign**

**273.** (1) A trustee shall, not less than 7 days before the date fixed for the hearing of an application for leave to resign under section 329(6A), give notice of his or her application to—

*(a)*  any joint trustee;

*(b)*  the creditors' committee, if any; and

*(c)*  the Official Receiver.

(2) If the Court gives the trustee leave to resign, it may make such provision as it considers appropriate with respect to matters arising in connection with his or her resignation.

(3) Where the Court gives the trustee leave to resign, section 328(3) applies with such modifications as are necessary.

(4) The Court shall send 2 sealed copies of the order to the trustee, who shall forthwith send one of the copies to the Official Receiver.

(5) Within 14 days of his or her resignation, the former liquidator shall send a notice of his or her resignation to the Official Receiver.

**Death of liquidator**

**274.** (1) Where the trustee dies, his or her personal representative shall give notice of his or her death to the Official Receiver, specifying the date of his or her death, unless

notice has already been given to the Court and the Official Receiver under paragraphs (2) or (3).

(2) If a trustee who dies was a partner in a firm, notice of his or her death may be given to the Official Receiver and the Court by a partner in the firm.

(3) Notice of the death of a trustee may be given by any person producing to the Court and the Official Receiver the relevant death certificate or a copy of it.

(4) Where the Official Receiver receives a notice under paragraph (3) and the deceased trustee was the sole trustee of the bankrupt, the Official Receiver shall, as soon as reasonably practicable, apply to the Court under section 330(1) for the appointment of a replacement trustee, unless an application has already been made by the creditors' committee.

## Advertisement of appointment

**275.** (1) A trustee who is appointed to replace a trustee who has, for whatever reason, ceased to hold office, shall within 21 days of the date of his or her appointment, advertise his or her appointment.

(2) His or her advertisement shall state that he or she has been appointed in place of a trustee who has ceased to hold office.

## Solicitation

**276.** (1) Where the Court is satisfied that any improper solicitation has been used by or on behalf of a trustee in obtaining proxies or procuring his or her appointment, it may order that no remuneration, or that reduced remuneration, be payable to the trustee out of the assets of the estate.

(2) An order of the Court under paragraph (1) overrides any resolution of the creditors' committee or any other provision of the rules.

## Division 5

### *Administration by Trustee*

## Meeting of creditors

**277.** (1) This rule applies to a creditors' meeting called under Part XII of the Act.

(2) The trustee shall give the bankrupt not less than 14 days notice of a creditors' meeting.

(3) If a creditors' meeting is adjourned, the chairman of the meeting shall give notice of the fact to the bankrupt, unless—

(a) the bankrupt was present at the meeting; or

(b) the chairman considers it to be unnecessary or impracticable to give notice to the bankrupt.

(4) The chairman of a creditors' meeting may admit the bankrupt or any other person to the meeting, if he or she has given reasonable notice of his or her wish to be present at the meeting.

(5) The chairman's decision is final as to what, if any, intervention may be made by the bankrupt, or by any other person, admitted to the meeting under this paragraph.

(6) If the bankrupt is not present at a creditors' meeting, and it is desired to put questions to him or her, the chairman may adjourn the meeting with a view to obtaining his or her attendance.

(7) Where the bankrupt is present at a creditors' meeting, only such questions may be put to him or her as the chairman may in his or her discretion allow.

**Trustee's duty to report to Official Receiver and creditors**

**278.** (1) Unless otherwise directed by the Official Receiver, a trustee shall at the end of every 6 months file with the Court and send to the Official Receiver and the creditors' committee, if any, a written report stating—

(a) the receipts and payments for the period;

(b) details of the assets realised and the assets remaining unrealised during the period and the reasons why the assets remaining unrealised have not been realised;

(c) the progress of his or her administration of the bankrupt's estate and any matters in connection with his or her administration which he or she considers should be drawn to the Official Receiver's attention; and

(d) such other information as the Official Receiver may require.

(2) Where a creditors' committee is not appointed, the report referred to in paragraph (1) shall be sent to each creditor.

# Division 6

## *Claims and Distribution of Estate*

**Claims by unsecured creditors**

**279.** A claim made against a bankrupt by an unsecured creditor under section 336 shall be in the prescribed form and shall specify—

(a) the name and address of the creditor;

(b) the total amount of his or her claim at the date of the bankruptcy order;

(c) whether or not the claim includes uncapitalised interest;

(d) whether the whole or any part of the debt or liability, and if so which, is a preferential claim;

(e) particulars of how and when the debt or liability was incurred by the bankrupt;

(f) the documents, if any, by which the debt or liability can be substantiated;

(g) particulars of any security interest held, the date when it was given and the value that the creditor places upon it; and

(h) the name and address of the person signing the claim, if not the creditor himself or herself.

**Claim forms**

**280.** (1) Unless the Court otherwise orders, the trustee shall send a claim form to each creditor of whom he or she is aware at the same time as he or she sends the creditor notice of his or her appointment under section 326.

(2) The trustee shall as soon as is practicable send a claim form to any creditor that he or she becomes aware of subsequent to sending out a notice under section 326.

**Application to Court to expunge or amend an admitted claim**

**281.** The applicant for an order expunging or reducing a claim under section 337(2) shall serve a copy of his or her application—

> *(a)* in the case of an application by the trustee, on the creditor who made the claim; and
>
> *(b)* in the case of an application by a creditor, on the trustee and on the creditor who submitted the claim.

**Negotiable instruments**

**282.** The trustee may reject a claim in respect of money owed on a bill of exchange, promissory note, cheque or other negotiable instrument or security unless the instrument or security, or a copy certified by the creditor or his or her authorised representative to be a true copy, is produced to the trustee.

**Inspection of claims**

**283.** The trustee shall allow claims in his or her custody or control to be inspected by—

> *(a)* a creditor who has submitted a claim in the bankruptcy that has not been wholly rejected by the trustee;
>
> *(b)* the bankrupt;
>
> *(c)* a person acting on behalf of a person referred to in paragraph *(a)* or *(b)*.

**Distribution of dividend**

**284.** Where the trustee distributes a dividend, he or she shall send to each creditor participating in the dividend, a statement containing such particulars with respect to the company, and to its assets and affairs, as will enable creditors to understand the calculation of the amount of the dividend.

**Final meeting**

**285.** (1) The trustee shall call a meeting under section 349 by sending a notice of the meeting, together with his or her final report, to all creditors not less than 28 days before the date fixed for the meeting.

(2) A copy of the notice and report sent to creditors under paragraph (1) shall, within the same time period, also be sent to the Official Receiver and the bankrupt.

(3) The trustee's final report shall include a summary of his or her receipts and payments.

(4) At the final meeting, the creditors may question the trustee with respect to any matter contained in his or her report or concerning his or her administration of the bankrupt's estate.

(5) As soon as reasonably practicable after the final meeting has been held, the trustee shall send to the Official Receiver and file with the Court a notice that the meeting has been held and shall file a copy of his or her final report with the Court.

(6) If there is no quorum at the final meeting, the trustee shall report to the Court and the Official Receiver that a final meeting was summoned in accordance with the rules, but there was no quorum present and the final meeting is then deemed to have been held.

## Division 7

### *Disclaimer*

### Notice of disclaimer

**286.** (1) A notice of disclaimer shall contain such details of the property disclaimed as enable it to be easily identified.

(2) The notice shall be signed by the trustee and filed at Court with a copy.

(3) The Court shall return the sealed copy to the trustee.

(4) The Court shall either endorse on the copy notice or record on the Court file the method by which the notice of disclaimer was returned to the trustee.

### Communication of notice of disclaimer

**287.** (1) Written notice of a disclaimer notice shall be given under section 358(3) by sending or giving a copy of the sealed disclaimer notice to each person entitled to receive it.

(2) Without limiting section 358(3), the following are entitled to receive notice of a disclaimer—

(a) where the property disclaimed is of a leasehold nature, every person who, to the trustee's knowledge, claims under the bankrupt as underlessee or mortgagee;

(b) where the disclaimer is of property in a dwelling house, every person who, to the trustee's knowledge, is in occupation of, or claims a right to occupy, the house;

(c) every person who, to the trustee's knowledge—

(i) claims an interest in the disclaimed property; or

(ii) is under a liability in respect of the disclaimed property, that has not been discharged by the disclaimer; and

(d) where the disclaimer is of an unprofitable contract, a person who is a party to the contract.

(3) If it subsequently comes to the knowledge of a trustee that a person's rights are affected by a disclaimer, the trustee shall forthwith give written notice of the disclaimer to that person in accordance with this rule unless—

146                         *Insolvency Rules*
[Statutory Intsrument]                                    Revision Date: 1 Jan 2020

*(a)* the trustee is satisfied that the person has already been made aware of the disclaimer and its date; or

*(b)* the Court otherwise orders.

(4) A disclaimer notice required to be given to a person under the age of 18 years in relation to the disclaimer of property in a dwelling house is sufficiently given if given to the parent or guardian of that person.

(5) A trustee disclaiming property may at any time, in addition to his or her obligations under the Act and the rules, give notice of the disclaimer to any person who, in his or her opinion, ought in the public interest or otherwise to be informed of the disclaimer.

## Duty to keep Court informed

**288.** The trustee shall, as soon as reasonably practicable, notify the Court of each person to whom he or she has given notice of disclaimer in accordance with the Act and the rules, specifying the name and address of each person and his or her interest in the property disclaimed.

## Notice to elect

**289.** (1) A notice to elect shall be served on a trustee by delivering the notice to him or her personally or sending it to him or her by registered post.

(2) Where property cannot be disclaimed by the trustee without the leave of the Court, if the trustee applies to the Court for leave to disclaim within the 28 day period specified in section 360(2), the Court shall extend the time allowed by that section for giving notice of disclaimer to a date not earlier than the date of the application.

## Application for leave to disclaim

**290.** (1) Where the trustee requires the leave of the Court to disclaim property claimed for the bankrupt's estate under section 318 or 319, he or she may apply for that leave *ex parte*.

(2) An application under paragraph (1) shall be accompanied by a report—

*(a)* giving such particulars of the property proposed to be disclaimed as enable it to be easily identified;

*(b)* setting out the reasons why, the property having been claimed for the estate, the Court's leave to disclaim is now applied for; and

*(c)* specifying the persons, if any, who have been informed of the trustee's intention to make the application.

(3) If the report states that any person's consent to the disclaimer has been signified, a copy of that consent shall be annexed to the report.

(4) The Court may, on consideration of the application, grant the leave applied for and it may, before granting leave—

*(a)* order that notice of the application be given to all such persons who, if the property is disclaimed, will be entitled to apply for a vesting or other order under section 362; and

*(b)* fix a venue for the hearing of the application under section 361(2).

### Notice to declare interest in onerous property

**291.** (1) If it appears to the trustee that a person may have an interest in onerous property, he or she may give notice to that person to declare, within 14 days, whether he or she claims any interest in the property and, if so, the nature and extent of his or her interest.

(2) If a person fails to comply with a notice given under paragraph (1), the trustee is entitled to assume that, for the purposes of the disclaimer of that property, the person concerned has no interest in it.

### Application for vesting order or order for delivery

**292.** (1) An application for a vesting order or an order for delivery under section 362 shall be made within 3 months of the earlier of—

(a)  the applicant first becoming aware of the disclaimer; or

(b)  the applicant receiving a notice of the disclaimer from the trustee.

(2) The application shall be filed with the Court accompanied by a copy of the application for service on the trustee and an affidavit—

(a)  stating whether his or her claim is based upon—

 (i)  an interest in the disclaimed property;

 (ii)  an undischarged liability; or

 (iii)  the occupation of a dwelling house;

(b)  specifying the date upon which he or she received a copy of the trustee's notice of disclaimer or otherwise became aware of the disclaimer; and

(c)  specifying the grounds upon which his or her application is based and the order that he or she desires the Court to make under section 362.

(3) The Court shall return a sealed copy of the application to the applicant.

(4) Not less than 7 days before the date fixed for the hearing of the application, the applicant shall serve on the trustee—

(a)  a copy of the sealed application; and

(b)  a copy of the affidavit filed in support.

(5) On the hearing of the application, the Court may give directions as to other persons, if any, who should be given notice of the application and the grounds on which it is made.

(6) Sealed copies of any order made on the application shall be sent by the Court to the applicant and the trustee.

(7) Unless there is one or more applications pending under—

(a)  section 359(2), in a case where the property disclaimed is of a leasehold nature; or

(b)  section 359(4), in a case where the property disclaimed is property in a dwelling house;

and section 359(2) or 359(4), as the case may be, apply to suspend the effect of the disclaimer, the order of the Court shall include a direction giving effect to the disclaimer.

148 | *Insolvency Rules* | **LAW OF VIRGIN ISLANDS**
---|---|---
[Statutory Intsrument] | | Revision Date: 1 Jan 2020

# Division 8

## *Investigation of Bankrupt's Affairs*

### *Statement of Assets and Liabilities*

**Statement of assets and liabilities**

**293.** (1) The statement of assets and liabilities required—

*(a)* to be filed by a debtor under section 295(2) together with his or her application for a bankruptcy order; and

*(b)* to be submitted by a bankrupt under section 366(1); shall be in the prescribed form and shall contain the information required by the form.

(2) Without limiting paragraph (1), a statement of assets and liabilities shall set out—

*(a)* the assets and liabilities of the debtor or bankrupt;

*(b)* the names and addresses of the creditors of the debtor or bankrupt; and

*(c)* the security interests held by creditors of the debtor or bankrupt and the dates upon which the security interests were created.

**Scope of rules 295 to 298**

**294.** Rules 295 to 298 apply in respect of a statement of assets and liabilities required to be submitted by a bankrupt under section 366(1).

**Submission and filing of verified statement**

**295.** (1) The trustee of a bankrupt shall provide him or her with the forms required to complete the statement of assets and liabilities together with instructions for completing the forms.

(2) The bankrupt shall verify his or her statement of assets and liabilities by affidavit and submit it to the trustee together with one copy.

(3) The trustee shall file the verified statement of assets and liabilities in Court.

**Release from duty to submit statement of assets or liabilities and extension of time.**

**296.** (1) A bankrupt may request the trustee—

*(a)* to release him or her from his or her obligation to submit a statement of assets and liabilities; or

*(b)* for an extension of time for submitting the statement; under section 366(3).

(2) The trustee may grant the bankrupt a release or an extension of time under section 366(3) at his or her own discretion, without having received a request from the bankrupt.

### Application to Court where office holder refuses a request under rule 296

**297.** (1) If the trustee refuses a request made under rule 296, the bankrupt may apply to the Court for an order granting him or her the release or the extension.

(2) The bankrupt shall give the trustee at least 10 business days notice of an application under paragraph (1) and of any affidavit filed in support of his or her application.

(3) The trustee is entitled to appear and make representations at the hearing of an application under paragraph (1) and, whether or not he or she appears, to file with the Court a written report setting out any matters that he or she considers should be brought to the attention of the Court.

(4) The trustee shall send the bankrupt a copy of a report filed under paragraph (3) at least 5 business days prior to the date fixed for the hearing of the application.

(5) On an application to the Court under this rule, the bankrupt's costs shall be paid in any event by him or her and, unless the Court otherwise orders, no allowance towards them shall be made out his or her estate.

(6) The Court shall send sealed copies of an order made under this rule to the trustee and to the bankrupt.

### Expenses of statement of assets and liabilities

**298.** (1) If the bankrupt is unable to prepare a statement of assets and liabilities himself or herself, the trustee may, at the expense of the estate—

(a) employ a person to assist the bankrupt in the preparation of the statement; or

(b) authorise an allowance payable out of the estate towards expenses to be incurred by the bankrupt in employing a person approved by the trustee to assist the bankrupt in preparing the statement.

(2) A request by the bankrupt for an authorisation under paragraph (1)(b) shall be accompanied by an estimate of the expenses involved.

(3) An authorisation given by the trustee under this rule shall be subject to such conditions, if any, as he or she considers appropriate with respect to the manner in which any person may obtain access to relevant books and papers.

(4) Nothing in this rule relieves the bankrupt from any obligation with respect to the preparation, verification and submission of his or her statement of assets and liabilities, or to the provision of information to the Official Receiver or the trustee.

### Report where statement of assets and liabilities submitted

**299.** (1) Where the bankrupt submits a statement of assets and liabilities under section 366(1), the trustee shall send to creditors a report containing a summary of the statement and such observations, if any, as he or she considers it appropriate to make with respect to it or to the bankrupt's affairs generally.

(2) The trustee need not comply with paragraph (1) if he or she has previously reported to creditors with respect to the bankrupt's affairs, so far as known to him or her, and he or she is of opinion that there are no additional matters which ought to be brought to their attention.

**Statement of affairs dispensed with**

**300.** (1) Where the bankrupt has been released from the obligation to submit a statement of affairs, the trustee shall, as soon as reasonably practicable, send to creditors a report containing a summary of the bankrupt's assets and liabilities and affairs, so far as within his or her knowledge, and such observations, if any, as he or she considers it would be appropriate for him or her to make.

(2) The trustee need not comply with paragraph (1) if he or she has previously reported to creditors with respect to the bankrupt's affairs (so far as known to him or her) and he or she is of opinion that there are no additional matters which ought to be brought to their attention.

*Examination*

**Application for examination**

**301.** (1) An application to the Court under section 369(1) for the examination of a bankrupt shall state whether the Official Receiver or the trustee seeks the examination to be held in public or in private.

(2) The Official Receiver or trustee shall, together with the application, file with the Court a statement setting out—

*(a)* the person or persons sought to be examined;

*(b)* a general description of the matters the person will be examined on;

*(c)* where the person sought to be examined is not the bankrupt or the bankrupt's spouse, the grounds for the application;

*(d)* whether any further orders or directions are sought under section 370(3) or (6).

(3) Unless the Court gives a direction under section 370(6)*(a)*, the matters upon which the examinee may be examined are not limited to the matters stated in the application in accordance with paragraph (2)*(b)*.

**Advertisement of order**

**302.** Where the Court makes an order for the public examination of a bankrupt—

*(a)* it may give directions for the advertisement of the order; and

*(b)* if it does not give such directions, the Official Receiver or the trustee, as the case may be, may advertise the order in such manner as he or she considers appropriate.

**Application required by creditors**

**303.** (1) A notice to the trustee under section 369(4) shall be in writing and shall be accompanied by—

*(a)* a list of the creditors concurring with the notice and the amount of their respective claims in the bankruptcy;

*(b)* written confirmation of each creditor's concurrence with the notice; and

*(c)* a statement of the reasons why the creditors require the trustee to make application for the examination of the bankrupt.

(2) The trustee shall not make an application as required by the creditors unless there is deposited with him or her such sum as he or she determines to be appropriate by way of security for the expenses of the hearing of the examination, if ordered.

(3) Within 28 days of receiving a notice under section 369(4), the documents specified in paragraph (1) and the security deposit, the trustee shall apply to the Court for the examination of the bankrupt.

(4) If the trustee considers that the request is an unreasonable one, he or she may apply to the Court for an order relieving him or her from the obligation to make the application otherwise required by that subsection.

(5) If the Court makes an order under paragraph (4), and the application for the order was made ex parte, the trustee shall, as soon as reasonably practicable after the order is made, give notice of the order to the creditors named in the notice.

### Record of examination

**304.**  (1)  A written record shall be kept of an examination.

(2) The record shall be read either to or by the examinee and signed by him or her.

(3) The Court may order that the examinee verify the written record of the examination by affidavit.

### Adjournment of examination

**305.**  (1)  An examination may be adjourned by the Court either to a fixed date or generally.

(2) Without limiting paragraph (1), the Court shall adjourn an examination if criminal proceedings have been instituted against the examinee and the Court is of opinion that the continuance of the hearing would prejudice a fair trial of those proceedings.

(3) Where an examination is adjourned generally, the Court may at any time on the application of the trustee, the Official Receiver or the bankrupt—

*(a)* fix a venue for the resumption of the examination; and

*(b)* give such directions concerning the examination as it considers appropriate.

### Costs of an examination

**306.**  (1)  The costs and expenses incurred by an examinee or by a creditor in connection with an examination, including the costs of representation by a legal practitioner, shall be borne by him or her and shall not be payable out of the bankrupt's estate as a cost of the bankruptcy.

(2) Subject to paragraph (3), the costs of the trustee and, if appropriate, the Official Receiver in connection with an examination ordered are a cost of the bankruptcy and shall be paid out of the bankrupt's estate in accordance with the prescribed priority.

(3) Where an examination of the bankrupt has been ordered by the Court on a requisition of the creditors under section 369(4), the Court may order that the expenses

of the examination are to be paid, as to the whole or a specified proportion, out of the deposit under rule 303(2), instead of out of the estate.

## Division 9

### *Discharge and Annulment of Bankruptcy*

#### *Discharge*

**Application in relation to automatic discharge**

**307.** (1) This rule applies to an application made by the Official Receiver or the trustee under section 376(2).

(2) An affidavit, or in the case of the Official Receiver, a report stating the grounds upon which the application is made shall be filed together with the application.

(3) A copy of the endorsed application, together with the affidavit or report in support, shall be sent to the persons specified in paragraph (4) so as to reach them at least 21 days before the date fixed for the hearing.

(4) The following persons are entitled to be given notice of the application—

   *(a)*  the bankrupt;

   *(b)*  where the applicant is the Official Receiver and he or she is not the bankruptcy trustee, the bankruptcy trustee; and

   *(c)*  where the applicant is the bankruptcy trustee (not being the Official Receiver), the Official Receiver.

(5) The bankrupt may, not later than 7 days before the date of the hearing, file with the Court an affidavit specifying any statements in the applicant's affidavit or report which he or she intends to deny or dispute.

(6) An affidavit filed under paragraph (5) shall be sent to the Official Receiver and the bankruptcy trustee, if different, not less than 4 days before the date of the hearing.

(7) If, on the hearing of the application, the Court makes an order under section 376(2), the applicant shall serve a copy on each person entitled to receive notice of the application under paragraph (4).

**Application concerning order for suspension of discharge**

**308.** (1) This rule applies to an application made by the bankrupt under section 377.

(2) The bankrupt shall, together with the application, file an affidavit stating the grounds upon which the application is made.

(3) A copy of the endorsed application, together with the affidavit in support, shall be sent to the Official Receiver and the trustee, if different, so as to reach them at least 28 days before the date fixed for the hearing.

(4) The Official Receiver and the bankruptcy trustee, if different—

   *(a)*  may file with the Court a report of any matters which he or she considers ought to be drawn to the Court's attention; and

   *(b)*  may appear and be heard on the bankrupt's application.

(5) If the Court's order under section 376(2) was for the period for automatic discharge to cease to run until the fulfilment of specified conditions, the Court may request a report from the Official Receiver or the bankruptcy trustee as to whether those conditions have or have not been fulfilled.

(6) If an affidavit is filed under paragraph (4) or a report is filed under paragraph (5), copies shall be sent to the bankrupt and the Official Receiver or the bankruptcy trustee, as the case may be, not later than 14 days before the hearing.

(7) The bankrupt may, not later than 7 days before the date of the hearing, file with the Court an affidavit specifying any statements in the report or affidavit referred to in paragraph (6) which he or she intends to deny or dispute.

(8) An affidavit filed under paragraph (7) shall be sent to the Official Receiver and the trustee, if different, not less than 4 days before the date of the hearing.

(9) If, on the bankrupt's application, the Court discharges the order under section 376(2) it shall issue a certificate to the bankrupt stating that it has done so, with effect from a specified date and the bankrupt shall send copies of the certificate to the Official Receiver and the trustee, if different.

**Application for discharge**

**309.** (1) An application by a bankrupt for his or her discharge under section 378 shall state whether the application is made under subsection (1)*(a)* or (1)*(b)* of that section.

(2) Where a bankrupt makes an application for his or her discharge under section 378, he or she shall deposit with the Official Receiver such sum as the Official Receiver reasonably requires to comply with his or her obligations under paragraph (3).

(3) Subject to paragraph (5), upon receiving an application for discharge by the Court, the Official Receiver shall give notice of the application to every creditor who, to the Official Receiver's knowledge, has a claim outstanding against the estate which has not been satisfied.

(4) Notices under paragraph (3) shall be given not later than 14 days before the date fixed for the hearing of the bankrupt's application.

(5) If the bankrupt fails to comply with paragraph (2)—

    *(a)* the Official Receiver is not obliged to give notice under paragraph (3); and

    *(b)* the Court shall not make an order discharging the bankrupt.

**Report of Official Receiver**

**310.** (1) Where the bankrupt makes an application for his or her discharge under section 378, the bankruptcy trustee shall file an affidavit, and the Official Receiver may file a report, at least 21 days before the date fixed for the hearing of the application as to—

    *(a)* whether paragraphs *(a)* to *(j)* in section 379(4), or any of them, apply to the bankrupt and, if so, providing particulars; and

    *(b)* any other matters that the trustee and the Official Receiver consider should be brought to the attention of the Court.

(2) A copy of the affidavit and report filed under paragraph (1) shall be sent to the bankrupt at least 14 days before the date fixed for the hearing of the application.

*Annulment of Bankruptcy Order*

**Application for annulment**

**311.** An application to the Court under section 382(1) for the annulment of a bankruptcy order shall specify under which paragraph of that subsection it is made and shall be supported by an affidavit stating the grounds on which it is made.

**Notice of application and other documents**

**312.** (1) Notice of an application under section 382(1) shall be given—

         *(a)* to the trustee and, if he or she is not the trustee, to the Official Receiver;

         *(b)* if the application is made under section 382(1)*(a)*, to the person on whose application the bankruptcy order was made; and

         *(c)* if the applicant is not the bankrupt, to the bankrupt.

(2) Any notice required to be given, or document sent, under the rules in this Division relating to annulment to the trustee, shall also be given or sent, if he or she is not trustee, to the Official Receiver within the time periods specified in the relevant rule.

(3) Any notice required to be given, or document sent, under the rules in this Division relating to annulment to the trustee or any other person shall also be given, if he or she is not the applicant, to the bankrupt within the time periods specified in the relevant rule.

**Report by trustee**

**313.** (1) Where the application is made under section 382(1)*(b)*, not less than 21 days before the date fixed for the hearing, the trustee shall file with the Court a report with respect to the following matters—

         *(a)* the circumstances leading to the bankruptcy;

         *(b)* the extent of the bankrupt's assets and liabilities at the date of the bankruptcy order and at the date of the application;

         *(c)* details of the bankrupt's creditors who are known to him or her to have claims, but have not submitted them; and

         *(d)* such other matter as the person making the report considers would assist the Court in making a decision on the application.

(2) The report filed under paragraph (1) shall include particulars of the extent to which, and the manner in which, the debts and expenses of the bankruptcy have been paid or secured and, in so far as the debts and expenses of the bankruptcy are unpaid but secured, the person making the report shall state in it whether and to what extent he or she considers the security to be satisfactory.

(3) A copy of the report shall be sent to the applicant at least 14 days before the date fixed for the hearing.

(4) The applicant for an order annulling the bankruptcy may, if he or she wishes, file further affidavits in reply to the trustee's report.

(5) The applicant shall send a copy of any affidavit sworn under paragraph (4) to the trustee.

(6) Where the Official Receiver is not the trustee, he or she may file a report with the Court, a copy of which shall be sent to the applicant at least 7 days before the hearing.

### Power of Court to stay proceedings

**314.** (1) The Court may, in advance of the hearing, make an interim order staying any proceedings which it thinks ought, in the circumstances of the application, to be stayed.

(2) Except in relation to an application for an order staying all or any part of the proceedings in the bankruptcy, application for an order under this rule may be made *ex parte*.

(3) Where application is made under this rule for an order staying all or any part of the proceedings in the bankruptcy, the applicant shall send a copy of the application to the trustee in sufficient time to enable him or her to be present at the hearing and to make any representations he or she may wish to make.

(4) Where the Court makes an order under this rule staying all or any part of the proceedings in the bankruptcy, the rules in this Division in connection with an annulment continue to apply.

(5) If the Court makes an order under this rule, it shall send copies of the order to the applicant and to the trustee.

### Notice to creditors who have not submitted a claim

**315.** Where an application for annulment is made under section 382(1)*(b)* and the trustee reports under rule 313 that there are creditors of the bankrupt who have not submitted a claim, the Court may—

*(a)* direct the trustee to send notice of the application to such of those creditors as the Court thinks ought to be informed of it, with a view to their submitting a claim for their debts within 21 days;

*(b)* direct the trustee to advertise the application so that creditors who have not submitted a claim may do so within a specified time; and

*(c)* adjourn the application, for a period of not less than 35 days.

### The hearing

**316.** (1) The trustee shall attend the hearing of the application.

(2) If he or she is not trustee, the Official Receiver may but is not required to attend, unless he or she has filed a report under rule 313(6).

(3) If the Court makes an order on the application, it shall send copies of the order to the applicant and the trustee and to the Official Receiver, if he or she is not the trustee.

### Security to be provided by bankrupt

**317.** (1) This rule applies to an application made under section 382(1)*(b)*.

(2) If a debt is disputed, or a creditor who has submitted a claim can no longer be traced, the Court shall not annul the bankruptcy unless the bankrupt has given such security, in the form of money paid into court, or a bond entered into with approved sureties, as the Court considers adequate to satisfy any sum that may subsequently be

found to be due to the creditor concerned together with, if the Court considers it appropriate, costs.

(3) Where under paragraph (2), security has been given in the case of an untraced creditor, the Court may direct that particulars of the alleged debt, and the security, be advertised in such manner as it considers appropriate.

(4) If advertisement is ordered under this paragraph, and no claim on the security is made within 12 months from the date of the advertisement, or the first advertisement, if more than one, the Court shall, on application being made to it, order the security to be released.

**Notice to creditors**

 **318.** (1) Where the trustee has notified creditors of the bankruptcy order, and the bankruptcy order is annulled, he or she shall as soon as reasonably practicable notify them of the annulment.

(2) Expenses incurred by the trustee in giving notice under this rule are a charge in his or her favour on the assets of the former bankrupt, whether or not actually in his or her hands.

(3) Where any assets is in the hands of any person other than the former bankrupt himself or herself, the trustee's charge is valid subject only to any costs that may be incurred by that other person in effecting realisation of the property for the purpose of satisfying the charge.

**Advertisement of annulment**

 **319.** (1) Where a bankruptcy order is annulled, the former bankrupt may require the Official Receiver to advertise the annulment.

(2) Advertisement of the annulment under paragraph (1) shall be at the cost of the former bankrupt, and the Official Receiver is not obliged to advertise the annulment until the former bankrupt has paid the costs of advertisement to him or her.

**Trustee's final account**

 **320.** (1) The annulment of a bankruptcy order under section 382 does not operate to release the trustee from any duty or obligation imposed on him or her by or under the Act or the rules to account for his or her transactions in connection with the former bankrupt's estate.

(2) The trustee shall send to the Official Receiver, and file in Court, a copy of his or her final account as soon as reasonably practicable after the Court's order annulling the bankruptcy order.

(3) The final account shall include a summary of the trustee's receipts and payments in the administration of the former bankrupt's estate.

(4) The trustee is released from such time as the Court may determine, having regard to whether—

    *(a)* paragraph (2) of this rule has been complied with; and

    *(b)* any security given under rule 317(2) has been, or will be, released.

## Division 10

## *Miscellaneous Provisions*

**Prescribed priority**

**321.**   The following costs and expenses of the bankruptcy shall be paid in the order of priority in which they are listed (the "prescribed priority")—

> *(a)* the costs and expenses properly incurred by the trustee in preserving, realising or getting in the property of the bankrupt or in carrying on the bankrupt's business; including—
>
>> (i) the costs and expenses of any legal proceedings which the trustee has brought or defended whether in his or her own name or in the name of the bankrupt; and
>>
>> (ii) the costs of and in connection with an examination ordered under section 370;
>
> *(b)* the remuneration of any person appointed under section 307;
>
> *(c)* the deposit lodged under section 307(3);
>
> *(d)* the costs of the application on which the trustee was appointed, including the costs of any person appearing on the application whose costs are allowed by the Court;
>
> *(e)* any costs allowed in respect of the preparation of a statement of assets and liabilities;
>
> *(f)* the cost of and in respect of any creditors' committee appointed in the bankruptcy;
>
> *(g)* any disbursements properly paid by the trustee;
>
> *(h)* the remuneration of anyone employed by the trustee;
>
> *(i)* the remuneration of the trustee;
>
> *(j)* any other fees, costs, charges or expenses properly incurred in the course of the bankruptcy or properly chargeable by the trustee in carrying out his or her functions in the bankruptcy.

**Register of Bankruptcy Orders**

**322.**   (1)  The Official Receiver shall maintain a register of bankruptcy orders of which he or she receives notice under rule 253(1) or (2).

> (2)  The register of bankruptcy orders shall contain the following information—
>
>> *(a)* the date of the bankruptcy order and the Court reference number;
>>
>> *(b)* the name and any former name, gender, occupation (if any) and date of birth of the bankrupt;
>>
>> *(c)* the bankrupt's last known address;
>>
>> *(d)* where the bankrupt has been an undischarged bankrupt at any time in the period of 15 years ending with the date of the bankruptcy order in question, the date of the most recent of any previous bankruptcy orders,

excluding any bankruptcy order that has been annulled under section 382;

(e) any name by which the bankrupt is known other than his or her true name;

(f) any business or trading names that the bankrupt uses or, during the previous 10 years, has used;

(g) the name and address of the bankruptcy trustee;

(h) subject to paragraph *(i)*, where the bankrupt is eligible for automatic discharge under section 376, the date on which the bankrupt will be discharged or, if the bankrupt is not eligible for automatic discharge under section 376, a statement to that effect;

(i) if the Court makes an order under section 376(2), details of the order together with the revised discharge date, if any;

(j) details of any order made under section 377;

(k) the date on which the bankrupt is discharged and any conditions to which the discharge is subject.

(3) If, pursuant to rule 316(3), the Official Receiver is given notice of the making of an annulment order under section 382, he or she shall enter the annulment order in the register of bankruptcy orders.

(4) Where the Official Receiver enters a discharge or annulment in the register of bankruptcy orders under this rule, he or she shall, on the expiry of 3 years after the date of the discharge or annulment order, delete from the register all information relating to the bankruptcy order.

(5) The register of bankruptcy orders is open to public inspection.

**Changes to information entered in the register of bankruptcy orders**

**323.** (1) If the Official Receiver becomes aware that any information which has been entered in the register of bankruptcy orders is inaccurate he or she shall rectify the information entered in the register.

(2) If the Official Receiver receives notice of the death of a bankrupt in respect of whom bankruptcy information has been entered in the register of bankruptcy orders, he or she shall cause the date of his or her death to be entered in the register.

PART XII

NETTING AND FINANCIAL CONTRACTS

**Financial contracts**

**324.** (1) For the purposes of Part XVII of the Act, a financial contract is a contract, including any terms and conditions incorporated into any such contract, pursuant to which payment or delivery obligations that have a market or an exchange price are due to be performed at a certain time or within a certain period of time.

(2) Without limiting paragraph (1), the following are financial contracts—

*(a)*  a currency, cross-currency or interest rate swap agreement;

*(b)*  a basis swap agreement;

*(c)*  a spot, future, forward or other foreign exchange agreement;

*(d)*  a cap, collar or floor transaction;

*(e)*  a commodity swap;

*(f)*  a forward rate agreement;

*(g)*  a currency or interest rate future;

*(h)*  a currency or interest rate option;

*(i)*  equity derivatives, such as equity or equity index swaps, equity options and equity index options;

*(j)*  credit derivatives, such as credit default swaps, credit default basket swaps, total return swaps and credit default options;

*(k)*  energy derivatives, such as electricity derivatives, oil derivatives, coal derivatives and gas derivatives;

*(l)*  weather derivatives, such as weather swaps or weather options;

*(m)*  bandwidth derivatives;

*(n)*  freight derivatives;

*(o)*  carbon emissions derivatives;

*(p)*  a spot, future, forward or other commodity contract;

*(q)*  a repurchase or reverse repurchase agreement;

*(r)*  an agreement to buy, sell, borrow or lend securities, such as a securities lending transaction;

*(s)*  a title transfer collateral arrangement;

*(t)*  an agreement to clear or settle securities transactions or to act as a depository for securities;

*(u)*  any other agreement similar to any agreement or contract referred to in paragraphs *(a)* to *(t)* with respect to reference items or indices relating to (without limitation) interest rates, currencies, commodities, energy products, electricity, equities, weather, bonds and other debt instruments and precious metals;

*(v)*  any derivative or option in respect of, or combination of, one or more agreements or contracts referred to in paragraphs *(a)* to *(u)*; and

*(w)*  any agreement or contract designated as such by the Commission.

PART XIII

MISCELLANEOUS AND GENERAL

**Insolvency practitioner's consent to act**

**325.** (1) For the purposes of section 482(1)*(b)*, the written consent of an insolvency practitioner shall specify the appointment to which it relates.

(2) The written consent of an insolvency practitioner shall—

(a) where the appointment is to be made by the Court, specify the date of the hearing for which it is provided;

(b) where the appointment is to be made by the members of a company, specify that the consent is valid only for a meeting of the members to be held on a date specified in the consent, or at any adjournment of the meeting,

and, in either case shall state the period of time for which the consent is valid which shall not exceed 6 weeks.

**Remuneration**

**326.** (1) In this rule, "insolvency practitioner" has the meaning specified in section 432(2).

(2) Where an administrator, liquidator or bankruptcy trustee sells assets on behalf of a secured creditor, he or she is entitled to be paid out of the assets reasonable remuneration fixed in accordance with the general principles contained in section 432.

(3) If the administrator, liquidator or bankruptcy trustee cannot agree his or her remuneration with the secured creditor, he or she may apply to the Court to fix the remuneration and the Court shall fix the remuneration in accordance with the general principles contained in section 432.

(4) Where insolvency practitioners are appointed jointly, the remuneration shall be apportioned as agreed between them.

(5) If jointly appointed insolvency practitioners cannot agree how the remuneration should be apportioned between them, the matter may be referred for decision to the Court, to the creditors' committee, if any, or to a meeting of creditors.

(6) If the insolvency practitioner is a legal practitioner and employs his or him own firm, or any partner in it, to act in or in connection with the insolvency proceeding in respect of which he or she is appointed, profit costs shall not be paid unless authorised by the creditors' committee or the Court.

*Insolvency Surplus Account*

**Payments into Insolvency Surplus Account**

**327.** (1) Immediately after the completion of a liquidation or a bankruptcy, the liquidator or bankruptcy trustee shall pay all monies representing unclaimed assets of the company or the bankrupt to the Commission for payment into the Insolvency Surplus Account.

(2) A supervisor of a company or individual creditors' arrangement, an administrator or a receiver may at any time apply to the Court for an order permitting him or her to pay any monies that he or she holds with respect to the arrangement, administration or receivership that represent unclaimed assets to the Commission for payment into the Insolvency Services Account.

(3) The Court shall not make an order under paragraph (2) unless the Commission has been given notice of the hearing.

(4) A liquidator, bankruptcy trustee, supervisor, administrator or receiver paying money to the Commission under paragraph (1), or pursuant to an order of the Court under paragraph (2), shall provide the Commission with such information, documentation and explanations regarding the monies, the assets which they represent and the claims or potential claims that have or may be made in respect of the monies as the Commission may require.

### Investment of monies in Insolvency Surplus Account

**328.** (1) The Commission may invest monies standing to the credit of the Insolvency Account—

> *(a)* in one or more deposit or other interest bearing accounts with a reputable bank or banks licensed and operating in the British Virgin Islands; and
>
> *(b)* in such investments as may be approved by Cabinet for that purpose.

(2) Any interest received on monies standing to the credit of the Insolvency Account or interest or income received in respect of investments made in accordance with paragraph (1) shall be payable to the Commission and shall be treated as the funds of the Commission for the purposes of section 18 of the Financial Services Commission Act and any claimant of monies paid into the Insolvency Surplus Account shall not be entitled to make any claim in respect of such interest or income.

### Payments out of the Insolvency Surplus Account

**329.** (1) The Commission shall, subject to such conditions as it may reasonably impose, pay or distribute monies from the fund to any person that it is satisfied is entitled to claim those monies under, or in respect of, the insolvency proceeding in respect of which the monies were paid into the Insolvency Surplus Account.

(2) The Commission shall keep accounts of the monies in the Insolvency Surplus Account, including those monies that are invested in accordance with rule 328(1), identifying the insolvency proceeding to which each receipt and payment relates and showing the balance remaining in respect of each insolvency proceeding.

(3) Any monies standing to the credit of the Insolvency Surplus Account 20 years after they were paid into the account, shall, provided that there is no outstanding claim in respect of those monies, be paid to and become the property of the Government of the British Virgin Islands and no person shall thereafter be entitled to make any claim to those monies.

––––––––––

162 *Insolvency Rules*

**LAW OF VIRGIN ISLANDS**

[Statutory Intsrument]

Revision Date: 1 Jan 2020

## SCHEDULE 1

### *(Rule 4(2))*

### Provisions of CPR Not Applicable in Insolvency Proceedings

| CPR Part | Provisions not applicable in insolvency proceedings |
|---|---|
| Part 2 (Application and Interpretation) | Rule 2.4 (Definitions), all definitions except:<br><br>- "application" and "applicant";<br>- "court office";<br>- "FAX";<br>- "filing";<br>- "The Hague Convention";<br>- "judge"<br>- "master";<br>- "month";<br>- "order";<br>- "party" and<br>- "the overriding objective".<br><br>Rule 2.5 (Who May Exercise the Powers of the Court), paragraphs (1), (2) and (3) only. |
| Part 3 (Time, Documents) | Rule 3.7      (Filing of documents) does not apply to a document filed with the Registrar of Companies.<br><br>Rule 3.10     (Forms).<br><br>Rule 3.11     (Statements of case – address for service).<br><br>Rule 3.12     (Statement of case – certificate of truth). |
| Part 5 (Service of Claim Form Within Jurisdiction) | Rule 5.2      (Statement of claim to be served with claim form).<br><br>Rule 5.16     (Service of claim by contractually agreed method).<br><br>Rule 5.17     (Service of claim form on agent of principal who is out of jurisdiction).<br><br>Rule 5.18     (Service of claim form for possession of vacant land).<br><br>Rule 5.19     (Deemed date of service), paragraph (3) only. |
| Part 6 (Service of Other Documents) | Rule 6.6      (Deemed date of service), paragraph (3) only. |

| | | |
|---|---|---|
| Part 7<br>(Service of Court Process out of Jurisdiction) | Rule 7.1 | (Scope of this Part), paragraph (2)*(a)* and (2)*(c)* only. |
| | Rule 7.6 | (Acknowledgement of service and defence where claim served out of the jurisdiction) |
| Part 8<br>(How to Start Proceedings) | Entire Part. | |
| Part 9<br>(Acknowledgement of Service and Notice of Intention to Defend) | Entire Part. | |
| Part 10<br>(Defence) | Entire Part. | |
| Part 12<br>(Default Judgements) | Entire Part. | |
| Part 13<br>(Setting Aside or Varying Default Judgement) | Entire Part. | |
| Part 14<br>(Judgement on Admissions) | Entire Part. | |
| Part 15<br>(Summary Judgement) | Entire Part. | |
| Part 16<br>(Assessment of Damages); | Entire Part. | |
| Part 17<br>(Interim Remedies) | Rule 17.5 | (Interim payments – general procedure). |
| | Rule 17.6 | (Interim payments – conditions to be satisfied and matters to be taken into account). |
| | Rule 17.7 | (Powers of Court where it has made an order for an interim payment). |
| Part 18<br>(Ancillary Claims) | Entire Part. | |
| Part 19<br>(Addition and Substitution of Parties) | Entire Part. | |

164                              *Insolvency Rules*                              **LAW OF
VIRGIN ISLANDS**

[Statutory Intsrument]                                                    Revision Date: 1 Jan 2020

| | |
|---|---|
| Part 20<br>(Changes to Statement of Case) | Entire Part. |
| Part 21<br>(Representative Parties) | Entire Part |
| Part 23<br>(Minors and Patients) | Entire Part. |
| Part 26<br>(Case Management – The Court's Powers) | Rule 26.1    (The Court's general powers of management), paragraph (2)*(a)* and (2)*(b)* only. |
| Part 60<br>(Appeals to the High Court) | Entire Part. |

## SCHEDULE 2

### *(Rule 2(2))*

### PREFERENTIAL CLAIMS

1.    In this Schedule—

"debtor" means—

      *(a)*  in the case of a liquidation, the company in liquidation; or

      *(b)*  in the case of a bankruptcy, the bankrupt.

"relevant date" means the commencement of the liquidation or the bankruptcy, as the case may be.

2.    For the purposes of section 2(1), the claims set out in column 1 of the table below are preferential claims up to the maximum amount specified in column 2 of the table or up to an unlimited amount where specified in column 2.

| Column 1<br><br>Nature of claim | Column 2<br><br>Maximum amount of claim to be regarded as preferential |
|---|---|
| The amount due to a person as a present or past employee of the debtor that represents— | $10,000 |
| *(a)*  wages and salary, including commission and any amount payable by way of allowance or reimbursement, due in respect of the whole or any part of the period of 6 months immediately prior to the relevant date; or | |
| *(b)*  accrued holiday pay in respect of any period of employment before the relevant date, whether the employee's contract of employment was terminated before or after the relevant date. | |
| The amount due by the debtor to the BVI Social Security Board— | No limit |
| *(a)*  in respect of employees' contributions deducted from the employee; | |
| *(b)*  in respect of employer's contributions payable for the 6 months immediately before the relevant date. | |
| The amount due in respect of pension contributions or contributions in respect of medical insurance | $5,000 in respect of each employee |

166                          *Insolvency Rules*                          **LAW OF
                                                                        VIRGIN ISLANDS**

[Statutory Intsrument]                                            Revision Date: 1 Jan 2020

payable during the 12 months immediately before
the relevant date by the debtor as the employer of
any person, including any amounts deducted from
the employee.

Sums due to the Government of the Virgin Islands     $50,000
in respect of any tax, duty, including Stamp Duty,
licence fee or permit.

Sums due to the Commission in respect of any fee     $20,000
or penalty.


3.      Preferential claims rank equally between themselves and, if the assets of the company
        are insufficient to meet the claims in full, they shall be paid rateably.

## SCHEDULE 3

### INSOLVENCY RULES

### FORMS

| NO. | FORM | TITLE |
|---|---|---|
| 1 | 86(7) | Notice of Court Order to Dispose of Perishable Assets |
| 2 | 88(2) | Notice of Administrator's Report on Further Enquiries |
| 3 | 98(6) | Notice of Release of Administrator |
| 4 | 120(3) | Notice of Vacation of Office of Receiver |
| 5 | 120(5) | Notice to Registrar of Vacation of Office of Receiver |
| 6 | 145(9) | Notice of Court Order to Dispose of Assets in Receivership Subject to a Security Interest |
| 7 | 147(3) | Advertisement of Administrative Receiver's Report (for Newspaper or Virgin Islands Official Gazette) |
| 8 | 193(1) | Settlement of List of Members |
| 9 | 235(7) | Notice of Release of Liquidator |
| 10 | 265(2) | Notice of Disqualification Order or Undertaking |
| 11 | 266(4) | Notice of Variation of Disqualification Order or Undertaking |
| 12 | 271 | Report on Directors' Conduct |
| 13 | 276(1) | Notice Requiring Preparation and Submission of Statement of Affairs |
| 14 | 277(1) | Statement of Affairs in a Company Creditors' Arrangement, Receivership, Administration or Liquidation |
| 15 | 295(2) | Statement of Assets and Liabilities in Bankruptcy or an Individual Creditors' Arrangement |
| 16 | 383(8) | Notice of Release of Bankruptcy Trustee |
| 17 | 482(1)A | Consent to Act |

168 *Insolvency Rules* **LAW OF
VIRGIN ISLANDS**

[Statutory Intsrument] Revision Date: 1 Jan 2020

| NO. | FORM | TITLE |
|-----|------|-------|
| **18** | 482(1)B | Consent to Act |
| **19** | 485(2)A | Notice by an Overseas Practitioner that he  or she is the Sole Appointee |
| **20** | 485(2)B | Notice by an Overseas Practitioner that he  or she is the Sole Appointee |
| **21** | R14A | Originating Application (Company) |
| **22** | R14B | Ordinary Application (Company) |
| **23** | R184 | Claim Form |
| **24** | R279 | Claim Form |

FORM 86(7)

GOVERNMENT OF THE BRITISH VIRGIN ISLANDS

INSOLVENCY ACT

INSOLVENCY RULES

**NOTICE OF COURT ORDER TO DISPOSE OF PERISHABLE ASSETS**

Section 86(7)                                                  Company Number

To:   The Registrar of Companies
      P.O. Box 418
      Road Town, Tortola
      British Virgin Islands

Name of Company
| *(a)* |
|---|

I
| *(b)* |
|---|

[director/secretary]*(c)*of the above named company give notice that on

*(d)*                                    order was made permitting the company to

dispose of certain perishable assets.

A sealed copy of the order is attached.

Signed*(e)*                                          Date

Please print name

| *(f)* | **For Official Use** |
|---|---|

*(a) Insert Full Name of Company*
*(b) Insert Full Name and Address of Director or Secretary*
*(c) Delete as applicable*
*(d) Insert date*
*(e) Director/secretary*
*(f) Presenter's address and reference (recommended)*

170                              *Insolvency Rules*                              LAW OF
                                                                          VIRGIN ISLANDS
[Statutory Intsrument]                                          Revision Date: 1 Jan 2020

## FORM 88(2)

### GOVERNMENT OF THE BRITISH VIRGIN ISLANDS

### INSOLVENCY ACT

### INSOLVENCY RULES

**NOTICE OF COURT OF ADMINISTRATOR'S REPORT ON
FURTHER ENQUIRIES**

Section 88(2)*(b)*                                              Company Number

To:   The Official Receiver
      P.O. Box 418
      Road Town, Tortola
      British Virgin Islands

Name of Company

*(a)*

I

*(b)*

give notice that I have prepared a report dated *(c)*

under section 88(1) of the Insolvency Act in respect of the above company. In the report

I state that, in my opinion, further enquiries with respect to the matters specified in that

section are desirable

A copy of my report is attached.

Signed _____        Date _____

Please print name

*(d)*                                                  **For Official Use**

---

*(a)  Insert full name of company*
*(b)  Insert full name and address and insolvency practitioner licence number of administrator*
*(c)  Insert date*
*(d)  Presenter's name, address and reference (if any)*

FORM 98(6)

GOVERNMENT OF THE BRITISH VIRGIN ISLANDS

INSOLVENCY ACT

INSOLVENCY RULES

**NOTICE OF RELEASE OF ADMINISTRATOR**

Section 98(6)                                                    Company Number

To:   The Registrar of Companies
      P.O. Box 418
      Road Town, Tortola
      British Virgin Islands

Name of Company

*(a)*

I/We,

*(b)*

former administrator [s] of the company hereby give notice that on *(c)* ;
The court granted [my/our] release [unconditionally/subject to the conditions listed below].

An office copy of the said order of release is attached.

*(d)*

Signed                                                          Date

Please print name

*(e)*                                                **For Official Use**

*(a)  Insert full name of company*
*(b)  Insert full name, address and practitioner licence number of administrator(s)*
*(c)  Insert date*
*(d)  Insert conditions if any*
*(e)  Presenter's name, address and reference (if any)*

FORM 120(3)

GOVERNMENT OF THE BRITISH VIRGIN ISLANDS

INSOLVENCY ACT

INSOLVENCY RULES

**NOTICE OF VACATION OF OFFICE OF RECEIVER**

Section 120(3)                 Company Number

Rule 142

To:  The appointer
     The Company
     Members of the Creditors' Committee
     Creditors (if no Creditors' Committee)
     The BVI Financial Services Commission (if regulated person)

Name of Company

*(a)*

I

*(b)*

the receiver of the above company give notice that on *(c)*                            ,

I vacated office in accordance with section 120(2) of the Insolvency Act for the following

reasons:

*(d)*

Signed  _____  Date  _____

Please print name

*(e)*                           **For Official Use**

*(a)  Insert full name of company*
*(b)  Insert full name, address and insolvency practitioner licence number of receiver*
*(c)  Insert date*
*(d)  Insert brief explanation*
*(e)  Presenter's name, address and reference (if any)*

FORM 120(5)

GOVERNMENT OF THE BRITISH VIRGIN ISLANDS

INSOLVENCY ACT

INSOLVENCY RULES

## NOTICE TO REGISTRAR OF VACATION OF OFFICE OF RECEIVER

Section 120(5)                                                    Company Number

To:   The Registrar of Companies
      P.O. Box 418
      Road Town, Tortola
      British Virgin Islands

      The BVI Financial Services Commission (if regulated person)

Name of Company
*(a)*

I
  *(b)*

the receiver of the above company give notice that on *(c)*                    ,

I ceased to hold the office of receiver for the following reasons:

  *(d)*

Signed _____   Date _____

Please print name
_____

  *(e)*                                              **For Official Use**

*(a)  Insert full name of company*
*(b)  Insert full name, address and insolvency practitioner licence number of receiver*
*(c)  Insert date*
*(d)  Insert brief explanation*
*(e)  Presenter's name, address and reference (if any)*

FORM 145(9)

GOVERNMENT OF THE BRITISH VIRGIN ISLANDS

INSOLVENCY ACT

INSOLVENCY RULES

**NOTICE OF COURT ORDER TO DISPOSE OF ASSETS IN RECEIVERSHIP SUBJECT TO A SECURITY INTEREST**

Section 145(9)          Company Number

To:

*(a)*

Name of Company

*(b)*

I

*(c)*

the administrative receiver of the above company give notice that

on *(d)* _____ an order was made permitting the company to dispose of certain assets.

A sealed copy of the order is attached.

Signed _____ Date _____

Please print name

*(e)*

**For Official Use**

(a) *Insert full name and address of holder of security*
(b) *Insert full name of company*
(c) *Insert full name, address and insolvency practitioner licence number of administrative receiver*
(d) *Insert date*
(e) *Presenter's name, address and reference (if any)*

FORM 147(3)

GOVERNMENT OF THE BRITISH VIRGIN ISLANDS

INSOLVENCY ACT

INSOLVENCY RULES

**ADVERTISEMENT OF ADMINISTRATIVE RECEIVER'S REPORT (FOR NEWSPAPER OR VIRGIN ISLANDS OFFICIAL *GAZETTE*)**

Section147(3)*(b)*                                              Company Number

Rule 31, 143(2)

To:

*(a)*

Name of Company

*(b)*

Please include the following notice in your next published issue:

> Notice of Report of Administrative Receivership
>
> A copy of the administrative receiver's report in respect of
>
> Company name: _____
>
> Company Number: _____
>
> may be obtained from, or and inspected during normal office hours at, the following address:
>
> *(c)*
>
> A meeting of all unsecured creditors of the company will be held on:
>
> *(d)*
>
> **Note: Creditors whose claims are wholly secured are not entitled to attend or be represented at the meeting**

Signed        _____        Date        _____

  By or on behalf of the administrative receiver

Please print name

*(a)  Insert full name and address of publication*
*(b)  Insert full name of company*
*(c)  Insert address*
*(d)  Insert date, time and place of meeting*

176        *Insolvency Rules*        **LAW OF
VIRGIN ISLANDS**

[Statutory Intsrument]        Revision Date: 1 Jan 2020

FORM 193(1)

GOVERNMENT OF THE BRITISH VIRGIN ISLANDS

INSOLVENCY ACT

INSOLVENCY RULES

**SETTLEMENT OF LIST OF MEMBERS**

Section 193(1)        Company Number

Rule 182

To:   The Registrar of Companies
     P.O. Box 418
     Road Town, Tortola
     British Virgin Islands

Name of Company

*(a)*

I/we

*(b)*

the Liquidator(s), have settled the list of the members of the Company, which is attached.

Signed              Date

Please print name

*(c)*             **For Official Use**

*(a) Insert full name of company*
*(b) Insert names of the liquidator(s)*
*(c) Presenter's address and reference (recommended)*

| Class | Nominal value per share | Issue price per share | Total number of shares issued | Total number of shares called up | Total number of shares paid up |
|---|---|---|---|---|---|
|  |  |  |  |  |  |

Signature _____    Date _____

178          *Insolvency Rules*          **LAW OF**
**VIRGIN ISLANDS**

[Statutory Intsrument]        Revision Date: 1 Jan 2020

## LIST OF MEMBERS

| Class | Name and address of member | Class of Member *(d)* | Name of shares held | Number of shares called up | Number of shares paid up |
|---|---|---|---|---|---|
|  |  |  |  |  |  |

Signature _____      Date _____

*(d)  For example: shareholder, member of a company limited by guarantee, member of an unlimited company, etc.*

_____

FORM 235(7)

GOVERNMENT OF THE BRITISH VIRGIN ISLANDS

INSOLVENCY ACT

INSOLVENCY RULES

### NOTICE OF RELEASE OF LIQUIDATOR

Section 235(7)                                                        Company Number

To:   The Registrar of Companies
      P.O. Box 418
      Road Town, Tortola
      British Virgin Islands

Name of Company

*(a)*

I/we

*(b)*

former liquidator [s] of the company hereby give notice that

on *(c)*

The court granted [my/our] release [unconditionally/subject to the conditions listed below].

An office copy of the said order of release is attached.

*(d)*

Signed _____    Date _____

Please print name _____

*(e)*                                                 **For Official Use**

*(a)  Insert full name of company*
*(b)  Insert full names, address and practitioner license number of liquidator(s)*
*(c)  Insert date*
*(d)  Insert conditions if any*
*(e)  Presenter's name, address and reference (if any)*

[Statutory Intsrument]                                      Revision Date: 1 Jan 2020

FORM 265(2)

GOVERNMENT OF THE BRITISH VIRGIN ISLANDS

INSOLVENCY ACT

INSOLVENCY RULES

**NOTICE OF DISQUALIFICATION ORDER OR UNDERTAKING**

Section 265(2)                                      Company Number

To:   The Registrar of Companies
      P.O. Box 418
      Road Town, Tortola
      British Virgin Islands

Name and Address of Company or Individual

*(a)*

I

*(b)*

give notice that *(c)*[a disqualification order / undertaking] for a period of *(d)* [ ] was [made against / given by] *(c)* the above [company / individual] *(c)* on *(e)* [ ]

[A sealed copy of the disqualification order is attached.] *(f)*

Signed  _____    Date  _____

Please print name

*(g)*                                      **For Official Use**

---

*(a)  Insert full name and address of company or individual against whom the order or undertaking is made*
*(b)  Insert full name, address of official receiver*
*(c)  Delete where not applicable*
*(d)  Insert period*
*(e)  Insert date*
*(f)  Delete if not applicable*
*(g)  Presenter's name, address and reference (if any)*

LAW OF
VIRGIN ISLANDS

*Insolvency Rules*

181

Revision Date: 1 Jan 2020

[Statutory Instrument]

FORM 266(4)

GOVERNMENT OF THE BRITISH VIRGIN ISLANDS

INSOLVENCY ACT

INSOLVENCY RULES

**NOTICE OF VARIATION OF DISQUALIFICATION ORDER OR UNDERTAKING**

Section 266(4)                                                          Company Number

To:   The Registrar of Companies
      P.O. Box 418
      Road Town, Tortola
      British Virgin Islands

Name and Address of Company or Individual

*(a)*

I

*(b)*

give notice that the [disqualification order / undertaking]*(c)* [made

against / given by]*(c)* the above [company / individual]*(c)* on*(d)*

was varied. The varied [disqualification order /

undertaking]*(c)* is effective as of*(d)*.

[A sealed copy of the varied disqualification order is attached.]*(e)*

Signed _____   Date _____

Please print name _____

*(f)*                                              **For Official Use**

*(a)   Insert full name and address of company or individual against whom the order or undertaking is made*
*(b)   Insert full name, address of official receiver*
*(c)   Delete where not applicable*
*(d)   Insert date*
*(e)   Delete if not applicable*
*(f)   Presenter's address and reference (recommended)*

182　　　　　　　　　　*Insolvency Rules*　　　　　　　　**LAW OF VIRGIN ISLANDS**

[Statutory Intsrument]　　　　　　　　　　　　　　　　Revision Date: 1 Jan 2020

FORM 271

GOVERNMENT OF THE BRITISH VIRGIN ISLANDS

INSOLVENCY ACT

INSOLVENCY RULES

**REPORT ON DIRECTORS' CONDUCT**

Section 271

---

**A report provided under Section 271 of the Insolvency Act is confidential. The office-holder submitting such a report should not disclose the contents to any person other than the Official Receiver.**

---

Company Number

To:　The Registrar of Companies
　　　P.O. Box 418
　　　Road Town, Tortola
　　　British Virgin Islands

(1)

(2)

(3)

(4)

(5)

(6)

*Insolvency Rules*

(7)

(8)

(9)

(10)

(11)

(12)

(13)

---

(1)   *Name of Company (Please include details of all registered names and trading styles of the company used in the last 2 years.)*
(2)   *Current registered office address*
(3)   *Current (or last) registered agent (if applicable)*
(4)   *Name of office-holder*
(5)   *Licence Number*
(6)   *Name of the firm and contact information of the office-holder*
(7)   *Type of insolvency proceedings (Administrative Receivership, Administration,  Liquidation). Please provide a copy of the appointment document.*
(8)   *Date of appointment*
(9)   *Name of the member of staff with day-to-day responsibility for this matter*
(10)  *Principal trading address*
(11)  *Nature of the company's business*
(12)  *When did the company commence its trading operations? (Please state the month and year)*
(13)  *Details of any other insolvency office-holder in relation to the company (Stating type of appointment, name(s) of office-holder(s), date of appointment)*

184                                  *Insolvency Rules*                          **LAW OF
                                                                                 VIRGIN ISLANDS**
[Statutory Intsrument]                                                           Revision Date: 1 Jan 2020

**(14)  Please complete a box for—**

*a.*   Any person who appears to you to be, or have been, a director (as defined in
Section 6 of the Insolvency Act), voluntary liquidator or receiver of the
company whose conduct, either taken alone or taken together with his or
her conduct as a director, voluntary liquidator or receiver of any other
company, makes him or her unfit to be concerned in the promotion,
formation or management of companies or in their liquidation or
dissolution. Details of the conduct leading you to this view should be set
out in the answer to question 16; and

*b.*   Any other person who appears to you to have been a director of the
company on the date you were appointed, or at any time in the 3 years
before that date.

**ADDITIONAL BOXES MAY BE COPIED AND COMPLETED AS REQUIRED**

---

A. FULL NAME (Include other known names. If director is a company, state company
   name, registration number and country of incorporation):

B. DATE OF BIRTH:

C. CURRENT OR LAST KNOWN ADDRESS:

D. COUNTRY OF RESIDENCE:

E. OCCUPATION, TRADE OR PROFESSION:

F. BRIEFLY, WHAT WERE THE DIRECTOR'S DUTIES IN THE COMPANY?:

G. IS THIS A PERSON WHOSE CONDUCT MAKES IT APPEAR TO YOU THAT HE
   OR SHE  IS UNFIT (as described in 14a above)?: Yes ☐     No ☐

**If yes, please provide details in question 16.**

H. PERIOD AS DIRECTOR:            FROM:            TO:

---

A. FULL NAME (Include other known names. If director is a company, state company
   name, registration number and country of incorporation):

B. DATE OF BIRTH:

C. CURRENT OR LAST KNOWN ADDRESS:

D. COUNTRY OF RESIDENCE:

E. OCCUPATION, TRADE OR PROFESSION:

F. BRIEFLY, WHAT WERE THE DIRECTOR'S DUTIES IN THE COMPANY?:

G. IS THIS A PERSON WHOSE CONDUCT MAKES IT APPEAR TO YOU THAT HE
   OR SHE  IS UNFIT (as described in 14a above)?: Yes ☐     No ☐

**If yes, please provide details in question 16.**

H. PERIOD AS DIRECTOR:            FROM:            TO:

---

A. FULL NAME (Include other known names. If director is a company, state company name, registration number and country of incorporation):

B. DATE OF BIRTH:

C. CURRENT OR LAST KNOWN ADDRESS:

D. COUNTRY OF RESIDENCE:

E. OCCUPATION, TRADE OR PROFESSION:

F. BRIEFLY, WHAT WERE THE DIRECTOR'S DUTIES IN THE COMPANY?:

G. IS THIS A PERSON WHOSE CONDUCT MAKES IT APPEAR TO YOU THAT HE OR SHE IS UNFIT (as described in 14a above)?: Yes ☐    No ☐

**If yes, please provide details in question 16.**

H. PERIOD AS DIRECTOR:          FROM:          TO:

---

A. FULL NAME (Include other known names. If director is a company, state company name, registration number and country of incorporation):

B. DATE OF BIRTH:

C. CURRENT OR LAST KNOWN ADDRESS:

D. COUNTRY OF RESIDENCE:

E. OCCUPATION, TRADE OR PROFESSION:

F. BRIEFLY, WHAT WERE THE DIRECTOR'S DUTIES IN THE COMPANY?:

G. IS THIS A PERSON WHOSE CONDUCT MAKES IT APPEAR TO YOU THAT HE IS UNFIT (as described in 14a above)?: Yes ☐    No ☐

**If yes, please provide details in question 16.**

H. PERIOD AS DIRECTOR:          FROM:          TO:

---

A. FULL NAME (Include other known names. If director is a company, state company name, registration number and country of incorporation):

B. DATE OF BIRTH:

C. CURRENT OR LAST KNOWN ADDRESS:

D. COUNTRY OF RESIDENCE:

E. OCCUPATION, TRADE OR PROFESSION:

F. BRIEFLY, WHAT WERE THE DIRECTOR'S DUTIES IN THE COMPANY?:

G. IS THIS A PERSON WHOSE CONDUCT MAKES IT APPEAR TO YOU THAT HE OR SHE   IS UNFIT (as described in 14a above)?: Yes ☐    No ☐

**If yes, please provide details in question 16.**

H. PERIOD AS DIRECTOR:          FROM:          TO:

186                          *Insolvency Rules*                          **LAW OF
                                                                          VIRGIN ISLANDS**
[Statutory Intsrument]                                        Revision Date: 1 Jan 2020

**15. Please provide details of any other company with which the director(s) in respect of
whom you have answered "yes" at question 14(G) may have had an involvement, which
you consider may be relevant to the consideration of his, her or (their) conduct,
together with any previous insolvencies of which you are aware:**

| Name of director | Company name, registration number & country of incorporation | Relevant information |
|---|---|---|
|  |  |  |

LAW OF
VIRGIN ISLANDS

*Insolvency Rules*

187

Revision Date: 1 Jan 2020

[Statutory Instrument]

**16. Please provide details of unfit conduct. Particular regard should be given to the matters referred to in Sections 262(1) and 263 of the Insolvency Act.**

| Details of unfit conduct and nature of supporting evidence | Name(s) of director(s) |
|---|---|
| | |

| **Details of unfit conduct and nature of supporting evidence** | **Name(s) of director(s)** |
|---|---|
| | |

**17. Are there any other matters that may be taken into account? (for example, ill health, personal guarantees, individual voluntary arrangement, bankruptcy, etc.)**

**Please attach the following documents to your report.**

| | |
|---|---|
| ☐ **Appointment document** | ☐ **Audited accounts, unaudited accounts or management accounts covering the 2 year period prior to insolvency** |
| ☐ **Directors' statement of affairs** | |
| ☐ **Reports to creditors** | ☐ **Any other document you consider to be of assistance** |
| ☐ **Memorandum and Articles of Association** | |

---

**DECLARATION**

---

**I confirm that my answers to all the above questions (including any additional information attached to this report) are to the best of my knowledge and belief true and complete.**

_____                    _____

**Name of office-holder**                    **Signature**

                                            _____

                                            **Date**

**Please send the completed form to;**

**The Official Receiver**
**P.O. Box 418**
**Road Town, Tortola**
**British Virgin Islands**

_____

190 | *Insolvency Rules* | **LAW OF**
**VIRGIN ISLANDS**
---|---|---
[Statutory Intsrument] | | Revision Date: 1 Jan 2020

FORM 276(1)

GOVERNMENT OF THE BRITISH VIRGIN ISLANDS

INSOLVENCY ACT

INSOLVENCY RULES

---

**NOTICE REQUIRING PREPARATION AND
SUBMISSION OF STATEMENT OF AFFAIRS**

---

Section 276(1)                                      Company Number

Rule 201

Name of Company

*(a)*

I

*(b)*

am [one of]*(c)* the [joint] [administrator(s) / administrative receiver(s)/liquidator(s)]*(e)* of

the above company. In accordance with my powers under The Insolvency Act require you

to prepare and submit to me a statement of affairs of the company by *(d)*

A similar notice has been or is being sent to each of the following persons:

*(e)*

Section 282 of The Insolvency Act places duty on you [as ……………………….. of the company]*(f)* to provide me, as office holder, with information and attend upon me if required. I have to warn you that failure to submit the statement of affairs as required by this notice, or to cooperate with me under section 282 of The Insolvency Act may make you liable to a fine and, for continued contravention, to a daily default fine.

Furthermore, under section 263 of The Insolvency Act, a failure by a director or other person to comply with an obligation imposed on him or her under the Act is a matter that may be taken into account by the Court in determining whether a person is unfit to be an officer of, or to be involved in the management or winding up of a company. Unfit conduct may result in a disqualification order being made by the Court.

A form for the preparation of the statement of affairs is enclosed.

Signed _____    Date _____

_____

Please print name

_____

*(a)  Insert full name of company*
*(b)  Insert full name, address and insolvency practitioner licence number of office holder*
*(c)  Delete as applicable*
*(d)  Insert date by which statement must be submitted*
*(e)  Insert names and addresses*
*(f)  State capacity or delete if not applicable*

192            *Insolvency Rules*           **LAW OF**
**VIRGIN ISLANDS**

[Statutory Intsrument]          Revision Date: 1 Jan 2020

## FORM 277(1)

### GOVERNMENT OF THE BRITISH VIRGIN ISLANDS

### INSOLVENCY ACT

### INSOLVENCY RULES

### STATEMENT OF AFFAIRS IN A COMPANY CREDITORS' ARRANGEMENT, RECEIVERSHIP, ADMINISTRATION OR LIQUIDATION

Section 21(1)*(c)*, 146(2), 277 (1)

Rules 87, 202

THE STATEMENT OF AFFAIRS OF        Company Number

*(a)*

on

*(b)*

**Affidavit**

**This affidavit must be sworn or affirmed before a Solicitor or Commissioner of Oaths or an officer of the court duly authorised to administer oaths when you have completed the rest of the form.**

I/we

*(c)*

of

*(d)*

Make oath and say that the several pages exhibited hereto and marked "A" and "B" are to the best of my knowledge and belief a full, true and complete statement as to the assets and liabilities of*(e)*      as at*(f)* and a full, true and complete list of the creditors and securities they hold.

Sworn at

Date          **Signature(s)**

Before me

LAW OF
VIRGIN ISLANDS
*Insolvency Rules*
193
Revision Date: 1 Jan 2020
[Statutory Instrument]

A Solicitor or Commissioner of Oaths or Duly authorised officer

**Before swearing the affidavit the Solicitor or Commissioner is particularly requested to make sure that the full name, address and description of the Deponent are stated, and to initial any crossings-out or other alterations in the printed form. A deficiency in the affidavit in any of the above respects may mean that it is refused by the court, and may need to be re-sworn.**

---

*(a)  Name of partnership or company*
*(b)  Insert relevant date:*
  *• In receivership the date the appointment takes effect*
  *• In administration the date of the order*
  *• In liquidation the date of appointment of liquidator*
  *• In a proposal for an arrangement see s.21(1)(c)*
*(c)  Insert name and occupation*
*(d)  Insert full address*
*(e)  Name of partnership or company*
*(f)  Insert relevant date (see margin note b)*

194        *Insolvency Rules*        **LAW OF VIRGIN ISLANDS**

[Statutory Intsrument]        Revision Date: 1 Jan 2020

**A – Summary of Assets**

| Assets | Book Value (state currency) | Estimated to Realise (state currency) |
|---|---|---|
| **Assets specifically pledged (show the amount claimed against each asset or group of assets separately, not exceeding the "estimated to realise" value)** | | |
| **Assets not specifically pledged:** | | |
| **Estimated total assets available for preferential creditors** | | |

Signature:             Date

**A1– Summary of Liabilities**

|  | Book Value (state currency) | Estimated to Realise (state currency) |
|---|---|---|
| **Estimated total assets (carried from page A)** |  |  |
| **Liabilities**<br>    Preferential creditors |  |  |
| **Estimated deficiency/surplus of assets available after payment of preferential creditors**<br>    Debts secured by a floating charge |  |  |
| **Estimated deficiency/surplus of assets available for other non-preferential creditors**<br>    Other non-preferential claims |  |  |
| **Estimated deficiency/surplus as regards creditors**<br><br>    Issued and called up capital |  |  |
| **Estimated total deficiency/surplus as regards members** |  |  |

Signature:                                    Date

196 *Insolvency Rules* **LAW OF VIRGIN ISLANDS**

[Statutory Intsrument]                                              Revision Date: 1 Jan 2020

**B – Creditors**

Note: You must identify creditors under hire-purchase, chattel leasing or conditional sale agreements and customers claiming amounts paid in advance of the supply of goods or services and creditors claiming retention of title over property in the company's possession.

| Name of creditor or claimant | Address | Amount of debt (state currency) | Details of any security held by creditor | Date security given | Value of security (state currency) |
|---|---|---|---|---|---|
|  |  |  |  |  |  |

Signature:                                                   Date

_____

FORM 295(2)

GOVERNMENT OF THE BRITISH VIRGIN ISLANDS

INSOLVENCY ACT

INSOLVENCY RULES

---

**STATEMENT OF ASSETS AND LIABILITIES IN BANKRUPTCY OR AN INDIVIDUAL
CREDITORS' ARRANGEMENT**

---

Sections 47(1)*(b)*(ii), 295(2), 366(1)
Rule 293

THE STATEMENT OF ASSETS AND LIABILITIES OF

|  |
|---|
| *(a)* |

on

|  |
|---|
| *(b)* |

**Affidavit**

**This affidavit must be sworn or affirmed before a Solicitor or Commissioner of Oaths
or an officer of the court duly authorised to administer oaths when you have completed
the rest of the form.**

**I/we,**

|  |
|---|
| *(c)* |

of

|  |
|---|
| *(d)* |

Make oath and say that the several pages exhibited hereto and marked "A" and "B" are to

the best of my knowledge and belief a full, true and complete statement as to my assets

and liabilities as at*(c)* [                    ] and a full, true and complete

list of the creditors and securities they hold.

Sworn at

Date                                Signature(s)

---

Before me

198                          *Insolvency Rules*                          **LAW OF
                                                                         VIRGIN ISLANDS**

[Statutory Intsrument]                                                   Revision Date: 1 Jan 2020

A Solicitor or Commissioner of Oaths or Duly authorised officer

**Before swearing the affidavit the Solicitor or Commissioner is particularly requested to
make sure that the full name, address and description of the Deponent are stated, and
to initial any crossings-out or other alterations in the printed form. A deficiency in the
affidavit in any of the above respects may mean that it is refused by the court, and may
need to be re-sworn.**

---

*(a) Name of individual*
*(b) Insert relevant date:*
   *• in bankruptcy, the date of order*
   *• in a proposal for an arrangement see S. 47(1)(b)(ii)*
*(c) Insert name and occupation*
*(d) Insert full address*
*(e) Insert relevant date (see margin note b)*

**A – Summary of Assets**

| Assets | Book Value (state currency) | Estimated to Realise (state currency) |
|---|---|---|
| **Assets specifically pledged (show the amount claimed against each asset or group of assets separately, not exceeding the "estimated to realise" value)** | | |
| **Assets not specifically pledged:** | | |
| **Estimated total assets available for preferential creditors** | | |

Signature                                              Date

200                          *Insolvency Rules*                    **LAW OF
                                                                VIRGIN ISLANDS**
[Statutory Intsrument]                                        Revision Date: 1 Jan 2020

**A1– Summary of Liabilities**

|  | Book Value (state currency) | Estimated to Realise (state currency) |
|---|---|---|
| **Estimated total assets (carried from page A)** |  |  |
| **Liabilities**<br>  Preferential creditors |  |  |
| **Estimated deficiency/surplus of assets available after payment of preferential creditors**<br>  Debts secured by a floating charge |  |  |
| **Estimated deficiency/surplus of assets available for other non-preferential creditors**<br>  Other non-preferential claims |  |  |
| **Estimated deficiency/surplus as regards creditors** |  |  |

Signature                              Date

**B – Creditors**

Note: You must identify creditors under hire-purchase, chattel leasing or conditional sale agreements and customers claiming amounts paid in advance of the supply of goods or services and creditors claiming retention of title over property in the company's possession.

| Name of creditor or claimant | Address | Amount of debt (state currency) | Details of any security held by creditor | Date security given | Value of security (state currency) |
|---|---|---|---|---|---|
| | | | | | |

Signature                                                    Date

_____

_____

| 202 | *Insolvency Rules* | **LAW OF VIRGIN ISLANDS** |
|---|---|---|
| [Statutory Intsrument] | | Revision Date: 1 Jan 2020 |

FORM 383(8)

GOVERNMENT OF THE BRITISH VIRGIN ISLANDS

INSOLVENCY ACT

INSOLVENCY RULES

**NOTICE OF RELEASE OF BANKRUPTCY TRUSTEE**

Section 383(8)                                    Court  Reference

To:   The Registrar of Companies
       P.O. Box 418
       Road Town, Tortola
       British Virgin Islands

Name of Bankruptcy Proceedings

*(a)*

I

*(b)*

former bankruptcy trustee hereby give notice that on *(c)*

The court granted my release [unconditionally/subject to the conditions listed below]. An office copy of the said order of release is attached.

*(d)*

Signed _____          Date _____

Please print name

*(e)*                                                          **For Official Use**

(a)  *Insert full name of proceedings*
(b)  *Insert full name, address and practitioner license number of trustee*
(c)  *Insert date*
(d)  *Insert conditions (if any)*
(e)  *Presenter's name, address and reference (if any)*

## FORM 482(1)A

### GOVERNMENT OF THE BRITISH VIRGIN ISLANDS

### INSOLVENCY ACT

### INSOLVENCY RULES

**CONSENT TO ACT**

Section 482(1)*(b)*
Rule 325

Company Number

Name of Company

*(a)*

I/We,

*(b)*

Hereby certify that I am/we are authorised under the provisions of Part XX of The Insolvency Act to act as an insolvency practitioner[s].

I/we consent to act as *(c)* [                ] of the above company if so appointed by the *(d)* [Court at a hearing scheduled on [                ]
] [members at a meeting to be held on [                ], or at any adjournment of that meeting.] [Debtors at a meeting to be held on*(e)* [                ]
, or at any adjournment thereof.]

The period of time for which this consent is valid is *(f)* [                ] from the date that this document is signed.

Signed _____   Date _____

Please print name _____

_____

*(a)  Insert full name of company*
*(b)  Insert full name, address and insolvency practitioner license*
*(c)  Insert whether consenting to act as administrator administrative receiver, liquidator or provisional liquidator (and whether of a company or of a foreign company) interim supervisor or supervisor*
*(d)  Delete or complete alternative details as appropriate*
*(e)  Insert date*
*(f)  Insert period (not to exceed 6 weeks)*

FORM 482(1)B

GOVERNMENT OF THE BRITISH VIRGIN ISLANDS

INSOLVENCY ACT

INSOLVENCY RULES

**CONSENT TO ACT**

Section 482(1)*(b)*
Rule 325

Court reference (if any)

Name of Individual

*(a)*

I/We,

*(b)*

Hereby certify that I am/we are authorised under the provisions of Part XX of The Insolvency Act to act as an insolvency practitioner[s].

I/we consent to act as *(c)* of the above individual

if so appointed by the *(d)* [Court at a hearing scheduled on *(e)*

.] [Creditors at a meeting to be held on *(e)*

or at any adjournment thereof.]

The period of time for which this consent is valid is *(f)* from the date this document is signed.

Signed                                    Date

Please print name

(a)  *Insert full name of individual*
(b)  *Insert full name, address and insolvency practitioner license*
(c)  *Insert whether consenting to act as bankruptcy trustee, interim supervisor or supervisor.*
(d)  *Delete as appropriate or insert alternative details.*
(e)  *Insert date*
(f)  *Insert period (not to exceed 6 weeks)*

LAW OF
VIRGIN ISLANDS                                *Insolvency Rules*                                205

Revision Date: 1 Jan 2020                                                            [Statutory Instrument]

---

FORM 485(2)A

GOVERNMENT OF THE BRITISH VIRGIN ISLANDS

INSOLVENCY ACT

INSOLVENCY RULES

---

**NOTICE BY AN OVERSEAS PRACTITIONER THAT HE OR SHE IS THE SOLE APPOINTEE**

---

Section 485(2)

Company Number

| |
|---|

To:    The Court (if appointed by the Court)
       The Appointer(s) (if not appointed by the Court)
       The Official Receiver

Court reference (if any)

| |
|---|

Name of Company

| *(a)* |
|---|

Type of insolvency proceeding

| |
|---|
| |

I became aware on *(b)* [          ] that I am the only person acting as insolvency

practitioner in the above-mentioned proceedings.

Name and address of former joint appointee: *(c)*

| *(c)* |
|---|

Circumstances in which former joint appointee ceased to act

| *(c)* |
|---|

Signed  _____     Date  _____

Please print name  _____

206          *Insolvency Rules*          **LAW OF VIRGIN ISLANDS**

[Statutory Intsrument]          Revision Date: 1 Jan 2020

*(d)*

**For Official Use**

(a)  *Insert full name of company*
(b)  *Insert date*
(c)  *Insert name(s) and address(es) of former joint appointee(s) and brief details of circumstances*
(d)  *Presenter's name, address and reference (if any)*

FORM 485(2)B

GOVERNMENT OF THE BRITISH VIRGIN ISLANDS

INSOLVENCY ACT

INSOLVENCY RULES

**NOTICE BY AN OVERSEAS PRACTITIONER THAT HE OR SHE IS THE SOLE APPOINTEE**

Section 485(2)

To:   The Court (if appointed by the Court)
      The Appointer(s) (if not appointed by the Court)
      The Official Receiver

Court reference (if any)

Name of Company

*(a)*

Type of insolvency proceeding

I became aware on *(b)* [          ] that I am the only person acting as insolvency practitioner in the above-mentioned proceedings.

Name and address of former joint appointee: *(c)*

*(c)*

Circumstances in which former joint appointee ceased to act

*(c)*

Signed    _____    Date    _____

Please print name

| *(d)* | **For Official Use** |
|---|---|

(a) *Insert full name of company*
(b) *Insert date*
(c) *Insert name(s) and address(es) of former joint appointee(s) and brief details of circumstances*
(d) *Presenter's name, address and reference (if any)*

FORM R14 A

GOVERNMENT OF THE BRITISH VIRGIN ISLANDS

INSOLVENCY ACT

INSOLVENCY RULES

**ORIGINATING APPLICATION (COMPANY)**

RULE 14

| The Eastern Caribbean Supreme Court In the High Court of Justice | |
|---|---|
| Matter No.: | |
| Applicants: | |
| Respondents: | |

In the matter of

| |
|---|
| *(a)* |

| *For Court Use Only* |
|---|
| To *(b)* |
| **This application will be heard by the Master/Judge at ………………….…..……….** **on** |
| **the ………………day of ……………..20 …………..………at …………………..o'clock.** |
| **If you do not attend at the time shown the Court may make an order in your absence.** |

I/We*(c)*
[on behalf of applicant] intend to apply for an order under Section *(d)*…………………… of the Insolvency Act that *(d)*

A draft of the order sought is attached.
The grounds upon which I/ we seek the order are [set out in an affidavit attached] [as follows]: *(e)*

The names and addresses of the persons on whom it is intended to serve the application are as follows [No person is intended to be served]:*(f)*

The names and addresses of the persons required to be given notice of this application pursuant to the Act and the rules (if any) are as follows:*(g)*

This application is filed by*(h)*

[the Solicitors for]*(i)*the Applicant whose address for service is:*(j)*

Signed _____    Date _____

Please print name
_____

_____

*(a)   Insert full name of company*
*(b)   Insert name and address of the person application is directed to*
*(c)   Enter full name of applicant or name of applicant's solicitor*
*(d)   Insert details of order*
*(e)   Delete as applicable*
*(f)   Enter full names and addresses as applicable*
*(g)   Enter full names and addresses as applicable*
*(h)   Enter full name*
*(i)   Delete as applicable*
*(j)   Enter address for service*

_____

FORM R14 B

GOVERNMENT OF THE BRITISH VIRGIN ISLANDS

INSOLVENCY ACT

INSOLVENCY RULES

**ORIGINATING APPLICATION (COMPANY)**

Rule 14

| The Eastern Caribbean Supreme Court<br><br>In the High Court of Justice | |
| --- | --- |
| Matter No.: | |
| Applicants: | |
| Respondents: | |

In the matter of

| *(a)* |
| --- |
| |

| *For Court Use Only* |
| --- |
| To *(b)*<br><br>**This application will be heard by the Master/Judge at …………………………………... on the ……….. day of ………………………. 20 ………… at …………….o'clock.** |
| **If you do not attend at the time shown the Court may make an order in your absence.** |

I/We*(c)*
[on behalf of applicant] intend to apply for an order under Section *(d)*…………………… of the Insolvency Act that *(d)*

A draft of the order sought is attached.
The grounds upon which I/ we seek the order are [set out in an affidavit attached] [as follows]: *(e)*

The names and addresses of the persons on whom it is intended to serve the application are as follows [No person is intended to be served]:*(f)*

The names and addresses of the persons required to be given notice of this application pursuant to the Act and the Rules (if any) are as follows:*(g)*

This application is filed by[h]

[the Solicitors for][i] the Applicant whose address for service is:[j]

Signed _____        Date        _____

Please print name

_____

(a)  *Insert full name of company*

(b)  *Insert name and address of the person application is directed to*

(c)  *Enter full name of applicant or name of applicant's solicitor*

(d)  *Insert details of order*

(e)  *Delete as applicable*

(f)  *Enter full names and addresses as applicable*

(g)  *Enter full names and addresses as applicable*

(h)  *Enter full name*

(i)  *Delete as applicable*

(j)  *Enter address for service*

212 *Insolvency Rules*

LAW OF
VIRGIN ISLANDS

[Statutory Intsrument]

Revision Date: 1 Jan 2020

FORM R184

GOVERNMENT OF THE BRITISH VIRGIN ISLANDS

INSOLVENCY ACT

INSOLVENCY RULES

**CLAIM FORM**

Rule 184

Name of Proceeding:

Date of Appointment of Liquidator:                                     No:

| | | |
|---|---|---|
| 1 | Name of Creditor | |
| 2 | Address of Creditor | |
| 3 | Total amount of claim as at the date of appointment of liquidator | $ |
| 4 | If total amount above includes outstanding uncapitalised interest, please state amount | $ |
| 5 | Give details of whether the whole or any part of the debt falls within any (and if so which) of the categories of preferential debts set out in the Insolvency Rules. | Category<br><br>Amount(s) claimed as preferential $ |
| 6 | Particulars of how and when debt incurred | |
| 7 | Details of any documents by reference to which the debt can be substantiated [Note: the liquidator may call for any document or evidence to substantiate the claim at his or her discretion] | |
| 8 | Particulars of any security held, the date it was given and the value of the security | |
| 9 | Signature of creditor or person authorised to act on his or her behalf | : |
| | Name in BLOCK LETTERS | : |
| | Position with or relation to creditor | : |
| | Address | : |

—————

FORM R184

GOVERNMENT OF THE BRITISH VIRGIN ISLANDS

INSOLVENCY ACT

INSOLVENCY RULES

**CLAIM FORM**

Rule 184

Admitted to vote for ……………………………………………………………………...


$ …………………………………..

Date ……………………………….

Liquidator

………………………………………………………….…………………………...


Admitted preferentially for

……………………………………………………………………………………………
……………………………………………………………………………………………
……………………………………………………………………………………………


$ …………………………………..

Date ……………………………….

Liquidator

……………………………………………………………………………………………

Admitted non-preferentially for

……………………………………………………………………………………………
……………………………………………………………………………………………
……………………………………………………………………………………………


$ …………………………………….

Date ………………………………

Liquidator

……………………………………………………………………………………….....

FORM R279

GOVERNMENT OF THE BRITISH VIRGIN ISLANDS

INSOLVENCY ACT

INSOLVENCY RULES

**CLAIM FORM**

Rule 279

Name of Proceeding:

Date of Bankruptcy Order: No:

| 1 | Name of Creditor | |
|---|---|---|
| 2 | Address of Creditor | |
| 3 | Total amount of claim as at the date of the Bankruptcy Order | $ |
| 4 | If total amount above includes outstanding uncapitalised interest, please state amount | $ |
| 5 | Give details of whether the whole or any part of the debt falls within any (and if so which) of the categories of preferential debts set out in the Insolvency Rules. | Category<br><br>Amount(s) claimed as preferential $ |
| 6 | Particulars of how and when debt incurred | |
| 7 | Details of any documents by reference to which the debt can be substantiated [Note: the trustee may call for any document or evidence to substantiate the claim at his or her discretion] | |
| 8 | Particulars of any security held, the date it was given and the value of the security | |
| 9 | Signature of creditor or person authorised to act on his or her behalf | : |
| | Name in BLOCK LETTERS | : |
| | Position with or relation to creditor | : |
| | Address | : |
| | | |

FORM R279

GOVERNMENT OF THE BRITISH VIRGIN ISLANDS

INSOLVENCY ACT

INSOLVENCY RULES

**CLAIM FORM**

Rule 279

Admitted to vote for …………………………………………………………………………...

$ …………………………………..

Date ………………………………

Bankruptcy Trustee

………………………………………………………………………..………………………...

Admitted preferentially for

…………………………………………………………………………………………………

…………………………………………………………………………………………………

…………………………………………………………………………………………………

$ …………………………………..

Date ………………………………

Bankruptcy Trustee

………………………………………………………………………………………………….

Admitted non-preferentially for

…………………………………………………………………………………………………

…………………………………………………………………………………………………

…………………………………………………………………………………………………

$ ……………………………………

Date ………………………………

Bankruptcy Trustee

…………………………………………………………………………………………….....