Andrew G. Dietderich
Sharon Cohen Levin
Christopher J. Dunne
Jacob M. Croke
Alexa J. Kranzley
**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, NY 10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

*Counsel to the Authorized Foreign Representatives*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| PRINCE GLOBAL HOLDINGS LIMITED *et al,.*[1] | Case No. 26-10769 (MG) |
| Debtors in Foreign Proceedings. | (Jointly Administered) |

**REPLY TO COSIMO BORRELLI'S OBJECTION TO**
**VERIFIED PETITION UNDER CHAPTER 15 FOR RECOGNITION OF**
**FOREIGN MAIN PROCEEDINGS AND RELATED RELIEF**

---

[1]   The Debtors in these Chapter 15 Cases are incorporated in the British Virgin Islands (the "BVI") and maintain their registered address at Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands, VG1110.  A complete list of the Debtors and their company numbers may be found at ECF No. 2-1.

**Table of Contents**

Preliminary Statement....................................................................................................................1

I.      Mr. Borrelli Lacks Standing To Object to Recognition........................................................2

        A.      Mr. Borrelli Has No Article III Standing...................................................................2

        B.      Borrelli Cannot Establish That He Is Authorized To Represent the
                Majority of the Debtors...............................................................................................6

II.     The Objection Lacks Merit and Should Be Overruled. .......................................................10

        A.      The AFRs Established Debtor Eligibility Under Section 109(a)..............................10

        B.      The AFRs Met Their Debtor-By-Debtor Evidentiary Burden. ...............................12

        C.      The BVI Proceedings Are "Foreign Proceedings." .................................................13

        D.      The Relief Sought Is Not Manifestly Contrary to U.S. Public Policy ...................16

        E.      All Discretionary Relief Is Warranted. ...................................................................17

Conclusion ....................................................................................................................................20

### Table of Authorities

**Cases**

*In re Amatex Corp.*,
  755 F.2d 1034 (3d Cir. 1985)................................................................................................4, 6

*In re ARD Fin., S.A.*,
  2026 WL 817458 (Bankr. S.D.N.Y. Mar. 25, 2026) ...........................................................16

*In Re Ascentra Holdings, Inc.*,
  657 B.R. 339 (Bankr. S.D.N.Y. 2023)...................................................................................6

*In re Berau Capital Res. PTE Ltd.*,
  540 B.R. 80 (Bankr. S.D.N.Y. 2015)................................................................................10, 11

*Chartschlaa* v. *Nationwide Mut. Ins. Co.*,
  538 F.3d 116 (2d Cir. 2008)................................................................................................11

*In re Comcoach Corp.*,
  698 F.2d 571 (2d Cir. 1983)................................................................................................4

*Consolidated Rail Corp.* v. *Nevins-Petrillo Warehouse & Distribution Sys., Inc.*,
  619 F. Supp. 900 (S.D.N.Y. 1983) ......................................................................................8

*In re D.L.I.C., Inc.*,
  120 B.R. 348 (Bankr. S.D.N.Y. 1990)..................................................................................12

*In re ENNIA Caribe Holding N.V.*,
  594 B.R. 631 (Bankr. S.D.N.Y. 2018) ..................................................................................15

*In re Foreign Econ. Indus. Bank*,
  607 B.R. 160 (Bankr. S.D.N.Y. 2019)..................................................................................10

*In re Global Cord Blood Corp.*,
  2022 WL 17478530 (Bankr. S.D.N.Y. Dec. 5, 2022)................................................14, 15, 16

*In re Global Ocean Carriers Ltd.*,
  251 B.R. 31 (Bankr. D. Del. 2000) ......................................................................................11

*Kane* v. *Johns-Manville Corp.*,
  843 F.2d 636 (2d Cir. 1988).................................................................................................5

*Maher* v. *Global Factors LLC*,
  2024 WL 3356985 (S.D.N.Y. July 8, 2024) .........................................................................8

*In re McTague*,
  198 B.R. 428 (Bankr. W.D.N.Y. 1996) ................................................................................10

*In re Metcalfe & Mansfield Alt. Invs.*,
    421 B.R. 685 (Bankr. S.D.N.Y. 2010) ................................................................................17

*In re Motors Liquidation Co.*,
    580 B.R. 319 (Bankr. S.D.N.Y. 2018) ..................................................................................3

*In re Quigley Co., Inc.*,
    391 B.R. 695 (Bankr. S.D.N.Y. 2008) ..........................................................................3, 4, 5

*In re SVB Fin. Grp.*,
    2026 WL 1336033 (Bankr. S.D.N.Y. 2026) .........................................................................3

*Truck Insurance Exchange* v. *Kaiser Gypsum*,
    602 U.S. 268 (2024) .............................................................................................................6

*In re U.S. Steel Can. Inc.*,
    571 B.R. 600 (Bankr. S.D.N.Y. 2017) ................................................................................11

*Warth* v. *Seldin*,
    422 U.S. 490 (1975) ..........................................................................................................2, 3

*In re Zhejiang Topoint Photovoltaic Co., Ltd.*,
    No. 14-24549 (GMB), 2015 WL 2260647 (Bankr. D.N.J. May 12, 2015) ..........................4, 6

**Statutes**

11 U.S.C. § 101(23) ...........................................................................................2, 12, 13, 14, 15

11 U.S.C. § 109(a) .....................................................................................................2, 10, 11, 12

11 U.S.C. §§ 329–30 ...........................................................................................................13

11 U.S.C. § 1109(b) .........................................................................................................3, 4

11 U.S.C. § 1515 ....................................................................................................................12

11 U.S.C. § 1517 ...........................................................................................................6, 12, 13

11 U.S.C. § 1521(a) .......................................................................................................6, 17, 19

11 U.S.C. § 1522(a) .......................................................................................................6, 17, 19

Paul Pretlove, David Standish and James Drury, in their capacities as the authorized foreign representatives of the Debtors (collectively, the "Authorized Foreign Representatives" or "AFRs") submit this reply (this "Reply") in response to Cosimo Borrelli's objection [ECF No. 68] (the "Objection") and in further support of (i) the petitions for recognition of the BVI Proceedings[2] as foreign main proceedings under chapter 15 of the Bankruptcy Code and (ii) the *Verified Petition under Chapter 15 for Recognition of Foreign Main Proceedings and Related Relief* [ECF No. 2] (the "Verified Petition" and, together with the petitions, the "Petitions").  In support of this Reply, the AFRs rely on the concurrently filed *Declaration of Christopher J. Dunne in Support of Reply to Cosimo Borrelli's Objection to Verified Petition under Chapter 15 for Recognition of Foreign Main Proceedings and Related Relief*, and respectfully state as follows:

**Preliminary Statement**

1.      The AFRs have satisfied each applicable requirement for recognition of the BVI Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.  Mr. Borrelli's Objection "in his capacity as sole director" of 25 of the Debtors is the only objection received.  Mr. Borrelli has no standing, and his Objection is without merit.

2.      As a threshold matter, Mr. Borrelli does not have standing to prosecute the Objection.  The BVI Court has precluded him from opposing recognition on the Debtors' behalf, and he has provided no evidence of any separate injury in fact that would allow him to object in his individual capacity.  In addition, despite repeated requests, Mr. Borrelli has provided ***no substantiation*** of his claim that he is a director of 19 of the "Borrelli Debtors," and has failed to disclose the terms, conditions or limitations of his purported authority.

---

[2]    Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to them in the Verified Petition.

3.    Even if the Court concludes that Mr. Borrelli has standing, the Objection fails on the merits.   The AFRs have established eligibility under section 109(a).   The BVI Proceedings are "foreign proceedings" under section 101(23) and recognition is not manifestly contrary to United States public policy.   Accordingly, the requested relief is warranted, and the AFRs respectfully submit that the Court should overrule the Objection and grant the Petitions.

## Reply

**I.    Mr. Borrelli Lacks Standing To Object to Recognition.**

**A.    Mr. Borrelli Has No Article III Standing.**

4.    Article III standing "is the threshold question in every federal case" and "a federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action . . . .'" *Warth* v. *Seldin*, 422 U.S. 490, 498-99 (1975).

5.    At this Court's suggestion, the AFRs sought guidance from the BVI Court regarding Mr. Borrelli's authority to oppose chapter 15 recognition of the BVI Proceedings in the name or on behalf of the 25 "Objecting Debtors," as he had purported to do through his earlier filings with this Court.   Having considered detailed written and oral submissions, the BVI Court held that any residual authority of any directors of the Debtors following the appointment of the AFRs is confined to challenging the juridical basis of the BVI Orders, and does not extend to appearing in foreign proceedings in the name or on behalf of the Debtors to challenge any application by the AFRs for recognition[3]

---

3    *See* transcript of May 14, 2026 BVI Court proceedings [ECF. 49-21] (the "May 14 Hearing Tr.") (directors "retain the residuary powers to challenge the very juridical basis for the [BVI Orders] itself, and no more," and may ask the BVI Court to vary the recognition power, but "what they can't do is to say we are going to oppose this in the US" because "they don't have the power to do it"); *id.* 204:22, 209:17–210:21 (framing question as whether directors' residual powers include "the power to cause a company to appear in foreign recognition proceedings to challenge any application by the [AFRs] for recognition and associated relief," and holding that powers extend to opposing liquidation/provisional liquidation, seeking variation, and appeals, but do "not include[e]" the power

2

6.      Nevertheless, Mr. Borrelli seeks to maintain his objections, purporting to do so as the "sole director" of the 25 "Borrelli Debtors." This fails on its face. Article III standing requires him to assert an injury personal to him and a legally protected interest of his own with respect to the issues before the Court. *Warth*, 422 U.S. at 498-99; *In re Quigley Co., Inc.*, 391 B.R. 695, 703-705 (Bankr. S.D.N.Y. 2008). Courts in this District require a party seeking to be heard in bankruptcy court to satisfy Article III and party-in-interest requirements, and to assert only its own rights. *See In re SVB Fin. Grp.*, 2026 WL 1336033, at *17 (Bankr. S.D.N.Y. May 13, 2026); *In re Motors Liquidation Co.*, 580 B.R. 319, 340 (Bankr. S.D.N.Y. 2018). Mr. Borrelli must therefore identify his own interest at stake if he wishes to appear to oppose recognition. He has not done so.

7.      Indeed, Mr. Borrelli acknowledged the opposite during his deposition. He testified that he has no property right or pecuniary interest of his own that would be directly affected by chapter 15 recognition or non-recognition, and admitted that he is not appearing as creditor, shareholder, or in any other capacity. Borrelli Dep. Tr. 74:11-15. He also testified that his compensation does not depend on whether AFRs are discharged or whether recognition is granted. Borrelli Dep. Tr. 61:14-22; 84:8-85:25. Accordingly, Mr. Borelli does not have a personal stake in these cases and lacks Article III standing.

8.      For the same reasons, Mr. Borrelli does not qualify as a "party in interest" under section 1109(b) or Bankruptcy Rule 1012(a). A party in interest "must still satisfy the general requirements of the standing doctrine," and the "'real party in interest' is the one who, under the applicable substantive law, has the legal right which is sought to be enforced or is the party entitled to bring suit." *Quigley*, 391 B.R. at 703-05; *In re Comcoach Corp.*, 698 F.2d 571, 573 (2d Cir.

---

to cause the company to oppose foreign recognition); *id.* 207:15–25, 208:12–18 (Company cannot "speak through the [AFRs]" while also speaking "janus-faced" against them through directors; directors cannot oppose U.S. recognition "on behalf of and in the name of the Company").

1983). Mr. Borrelli identifies no legal right of his own that recognition would affect, and his deposition confirms that point, Borrelli Dep. Tr. 86:8–87:21, 89:11–90:16, nor does he articulate any objection to recognition other than alleged harms to the "Borrelli Debtors" on whose behalf the BVI Court confirmed he cannot act. Therefore, without a personal interest, he does not have "sufficient stake in the proceeding so as to require representation." *In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d Cir. 1985); *see In re Zhejiang Topoint Photovoltaic Co., Ltd.*, No. 14-24549 (GMB), 2015 WL 2260647, at *3-6 (Bankr. D.N.J. May 12, 2015) (applying section 1109(b) party-in-interest standard in a chapter 15 case).

9. Nowhere in the record before the BVI Court is there any suggestion that Mr. Borrelli may appear in this Court as a fiduciary to a Debtor to vindicate the interests of that Debtor in opposition to the AFRs. Mr. Borrelli cites scattered excerpts from the May 14 Hearing Transcript and a statement by the AFRs therein that they did not oppose "directors" appearing to contest recognition. Obj. ¶¶ 10, 14, 31. But Mr. Borrelli fails to mention that the AFRs expressly stated that the directors could appear "in their personal capacity[4]," such as in the case of a director who is a shareholder or who holds a creditor claim against the estate. The BVI Court was clear that no director may appear "on behalf of" a company adverse to the AFRs.[5]

10. Every specific grievance in the Objection alleges injury to the companies, not Mr. Borrelli himself. Mr. Borrelli complains of the AFRs' sealed reports to the BVI Court, information-

---

[4] See May 14 Hearing Tr. (counsel for the AFRs stating that "we have no objection, should the American court, so be minded, to the directors making these points in their personal capacity and it hasn't been suggested to us they can't to do that."); *id.* 109:18-21.

[5] The BVI Court observed that it had "no evidence of New York law or US law" on who may contest recognition under Rule 1012, and held only that Rule 1012 "is not a source of power" to act for the Debtors. May 14 Hearing Tr. 207:1–5, 207:23–25; *see also id.* 207:11–18 (describing that position as permitting directors to appear "as individuals or some other kind of interest," while foreclosing any attempt to have the Debtors take inconsistent positions through competing representatives); *id.* 208:12–18 (directors may proceed only if they have "some other kind of interest", but "they can't do it on behalf of and in the name of the Company"); *id.* 7:23–8:21, 12:14–21, 173:20–176:23; *see also* May 12, 2026 Skeleton Argument on Behalf of the AFRs [ECF No. 49-37] ¶¶ 18–21.

4

sharing, alleged dealings with Debtor assets, alleged asset-realization initiatives, alleged waste, alleged mandate-creep, and cooperation with law enforcement. *See* Obj. ¶¶ 11-12, 58-65. Those are questions of how the Debtors' affairs and assets should be managed, which are matters for the BVI Court. Mr. Borrelli's stated objective is "maintaining the status quo and preserving the assets of the companies." *March 1, 2026 Affidavit of Cosimo Borrelli* [ECF No. 49-20] ¶ 21. But a party-in-interest cannot "assert third-party rights defensively," and the Second Circuit has held that such standing is "of special concern in the bankruptcy context," where one constituency seeks to disturb relief based on rights belonging to others who are already represented. *Quigley*, 391 B.R. at 705; *Kane* v. *Johns-Manville Corp.*, 843 F.2d 636, 644–645 (2d Cir. 1988).[6]

11.    Mr. Borrelli's sole alleged injury that is personal to him in his capacity as director is his claim that recognition will "further impair his authority to do his job." Obj. ¶ 30. But this is entirely circular. Mr. Borrelli's "authority to do his job" is part of the *company's* authority to manage its own affairs, a portion of which a director holds and exercises in a representative capacity on the company's behalf. On this record, Mr. Borrelli has not shown that recognition affects any personal pecuniary, property, contractual, equitable, indemnity, insurance, or other individual right. Any impairment of the authority he invokes would therefore be, at most, an alleged injury to the Debtors, not to Mr. Borrelli personally. Recognition simply gives effect to the BVI Orders under U.S. law; it does not independently impair Mr. Borrelli's personal rights or purported director authority—the BVI Orders already vest authority in the AFRs, to the exclusion of the directors.[7]

---

[6]    Although *Quigley* arose in the plan-confirmation context, its limitation was drawn from general third-party-rights limitations applicable in bankruptcy: a party may assert only its own rights and interests, and standing should be assessed issue-by-issue. 391 B.R. at 702–05. *Kane* confirms the same bankruptcy-specific limitation, holding that even a creditor with a direct pecuniary stake could not assert the rights of future claimants or other present claimants. 843 F.2d at 644–645.

[7]    May 14 Hearing Tr. 202:14–16 ("So [the AFRs] can do an enormous amount of things. Those are big powers which they have been given."); *id*. 203:4–8 ("So saying that the [AFRs]' powers are only limited to the affairs of the Company within the jurisdiction of the BVI is to constrain the powers of the [AFRs] to the top of a pin. It makes no sense."); id. 208:1–11 ("I don't read paragraph 9 as only limiting the [AFRs] to the affairs of the

5

12.      The authorities Mr. Borrelli cites confirm this point.  For example, *Truck Insurance Exchange* v. *Kaiser Gypsum Co.*, 602 U.S. 268, 277-78, 285, recognized party-in-interest status for an insurer with a direct financial stake—a plan that fixed its monetary responsibility for bankruptcy claims.  Likewise, *In Re Ascentra Holdings, Inc.,* 657 B.R. 339, 353 (Bankr. S.D.N.Y. 2023), involved a movant asserting a concrete interest in identified funds it claimed to own.  And *In re Zhejiang Topoint Photovoltaic Co., Ltd.*, No. 14-24549 (GMB), 2015 WL 2260647, at *3-6, permitted intervenor participation only by a movant with a concrete economic interest in specific property that was not being adequately represented by a party in the case.  Mr. Borrelli's reliance on section 1522(a) and *Amatex* does not change the result.  Section 1522(a) protects creditors and other interested entities when the Court grants provisional or discretionary relief under sections 1519 or 1521.  It does not confer standing to oppose recognition under section 1517, or allow a director to bypass Article III and party-in-interest requirements.

**B.    Borrelli Cannot Establish That He Is Authorized To Represent the Majority of the Debtors.**

13.      Even if the Court were to conclude that Mr. Borrelli, in his individual capacity as a director, alleged an injury in fact that would otherwise create Article III standing, Mr. Borrelli would still lack standing to oppose recognition for the vast majority of the Debtors.

14.      At the outset, Mr. Borrelli's asserted authority is limited even on his own account. He acknowledged that there are "30 JPL entities or Debtors in this Chapter 15 proceeding," but confirmed that he was "appointed only over the 25 Borrelli Debtors."  Borrelli Dep. Tr. 37:12-20. He did not identify any role with the remaining five Debtors or with the Prince Group more broadly. *Id.* 38:6-23.  He further testified that he has "no role other than in respect of the Borrelli Debtors,"

---

company in the BVI and the assets within the BVI. . . . It still got those powers.  By having those powers, it has them to the exclusion of the directors. It would need to get recognition from foreign courts to be able to use those powers.  That is the distinction."); *see also* Borrelli Dep. Tr. 76:13-19.

6

has "[n]o position in respect of any other company," and is "not objecting to anything in respect of the non-Borrelli Debtors." *Id*. 39:10–23. Thus, even before considering whether Mr. Borrelli has authority to act for the 25 entities he identifies, the Objection is not brought by, or on behalf of, the "Prince Group," the Debtors collectively, the five non-Borrelli Debtors, or any other Prince Group-affiliated entity.

15.     Worse still, Mr. Borrelli has refused—or is unable—to substantiate his appointment as director for 19 of the 25 companies of which he claims to be a director. His purported appointment for these 19 companies traces to, and is entirely dependent on, the appointment of some unidentified persons as attorneys-in-fact for Chen Zhi. Borrelli Dep. Tr. 39:24-40:4, 42:17-44:10. But Mr. Borrelli has produced no competent evidence establishing the validity or scope of the authority of the purported attorneys-in-fact or even their identities. The validity of Mr. Borrelli's appointment as director of these 19 entities simply cannot be established.

16.     Indeed, Mr. Borrelli not only has failed to offer into evidence the underlying power of attorney or any other documents related to the appointment of the attorneys-in-fact, but he has refused to produce such documents in response to the AFRs' document requests, and further refused to respond to related questions during his deposition. *See* Borrelli R&Os to Authorized Foreign Representatives' First RFPs, Gen. Obj. & Resps. to Def. No. 4 and Specific Obj. and Respons. Nos. 9, 10, 11 ("Q. Will you tell us the identity of those attorneys-in-fact [who appointed you as director of certain of the Debtors] today? A. No, sir. Q. Why not? . . . A. . . . I think going beyond what I've already said . . . would be venturing into privileged conversations, so I'm not going to share them with you.").[8]

---

[8]     Where a party fails to produce evidence in its control that pertains to a material issue in the case, courts have inferred that the evidence is unfavorable to that party. *Consolidated Rail Corp.* v. *Nevins-Petrillo Warehouse & Distribution Sys., Inc.*, 619 F. Supp. 900, 906 (S.D.N.Y. 1983); *see also Maher* v. *Global Factors LLC*, 2024 WL 3356985, at *10 (S.D.N.Y. July 8, 2024) (drawing adverse inference against party that testified to

17.     Mr. Borrelli admitted that he never spoke with Chen Zhi, never witnessed the execution of any power of attorney, cannot testify from personal knowledge regarding the circumstances under which any power of attorney was executed, and took no steps beyond reviewing documents provided by others to satisfy himself that the authority chain was valid.

18.     Mr. Borrelli also claimed that although he had reviewed the "substantial" power of attorney, he could not recall even the length of the document, whether it was subject to revocation, or much at all about its contents. Borrelli Dep. Tr. 91:9-23.[9] His testimony therefore does not establish that the unidentified attorneys-in-fact possessed actual authority to appoint him; it merely establishes that he was told they did. The Court should not credit Mr. Borrelli's assertions regarding the contents, authenticity, execution, or legal effect of documents that have not been produced and that depend upon undisclosed declarants who cannot be examined.

19.     The deficiencies do not end there. Throughout these proceedings, Mr. Borrelli has repeatedly stated under oath that he is the sole director of the "Borrelli Debtors." *Declaration of Cosimo Borrelli* [ECF No. 49-2] ¶ 10. However, for six of those Debtors—Noble Title Limited, Mighty Divine Limited, Bright Team Global Limited, Starry Bloom Limited, Even Sincerity Limited, and Oriental Charm Holdings Investment Limited—Mr. Borrelli has now admitted that he ***does not know*** whether he is, in fact, the sole director, that the written resolutions appointed him as an "additional director," that he does not know whether any other directors remain in office and that he did not communicate or coordinate with any other directors before filing the Objection or taking other actions in the BVI Court. Borrelli Dep. Tr. 120:13-123:13. When asked at his

---

existence of documents, but "resisted providing such documents in discovery and did not produce any at trial").

[9] "An original writing . . . is required in order to prove its content unless these rules or a federal statute provides otherwise." Fed. R. Evid. 1002.

deposition how he knew that he had authority to act unilaterally on behalf of those entities, Mr. Borrelli replied: "That's privileged." Borrelli Dep. Tr. 126:21-127:16.

20. Although Mr. Borrelli portrays himself as a disinterested insolvency professional and independent director, he admitted at his deposition that before accepting his assignment, he communicated with Chen Zhi's personal law firm. *See* Borrelli Dep. Tr. 22:7-23 (Q. . . . And other than Campbells, before accepting your role . . . did you communicate with anyone else concerning potentially accepting a role with the Prince Group? A. To a representative of Lee Law Firm.) When asked about his communications with that law firm, Mr. Borrelli's counsel directed Mr. Borrelli not to answer on the ground that the communication was privileged based on a common interest, which Mr. Borrelli admitted is a common interest between himself and Chen Zhi. *See* Borrelli Dep. Tr. 128:6-18 ("Q. The Lee Law Firm client with which you have a common interest is Chen Zhi; is that correct? . . . A. I think there is more than one. Q. Is Chen Zhi one of them? A. Yes, he is.). Given his connections with Chen Zhi and potential biases, the Court should be wary of accepting, at face value, Mr. Borrelli's unsupported assertions regarding his role, authority, and independence, particularly where he has declined to produce the evidence necessary to support those assertions.

21. Mr. Borrelli's lack of precision or substantiation is not academic. The Debtors have already suffered harm from competing assertions of authority. Persons purporting to act for the Debtors or the "Prince Group" have engaged with counterparties, asserted governance rights, threatened litigation, and otherwise interfered with the AFRs' administration of the estates. The AFRs identified those risks in seeking provisional relief, and the Court granted that relief. Against that backdrop, clarity regarding who is authorized to act for particular Debtors is essential.

9

22.      Mr. Borrelli has asserted that he is the sole director of the 25 "Borrelli Debtors" and asked that the court should accept his purported authority and independence at face value.  It should not do so.  Having failed to establish standing to oppose recognition, Mr. Borrelli cannot prosecute the Objection.  The Court therefore should dismiss the Objection for lack of standing and decline to consider the declarations and other materials submitted in support of it.

## II.      The Objection Lacks Merit and Should Be Overruled.

23.      Even if the Court determines that Mr. Borrelli has standing to prosecute the Objection, each of the Objection's grounds fail and should be overruled.

### A.      The AFRs Established Debtor Eligibility Under Section 109(a).

24.      The Objection argues that the Debtors fail to satisfy section 109(a) because they lack "property in the United States."  11 U.S.C. § 109(a).  But "[b]ankruptcy courts within the Second Circuit have found that section 109(a) sets a low bar to satisfy the eligibility requirements," and the Debtors easily satisfy them here.  *See In re Foreign Econ. Indus. Bank*, 607 B.R. 160, 166 (Bankr. S.D.N.Y. 2019) (citing 8 Collier on Bankr. ¶ 1517.01 (16th ed. 2019)); *see also In re McTague*, 198 B.R. 428, 432 (Bankr. W.D.N.Y. 1996) (finding that section 109 has "such a plain meaning as to leave the Court no discretion to consider whether it was the intent of Congress to permit someone to obtain a bankruptcy discharge solely on the basis of having a dollar, a dime or a peppercorn located in the United States").Accordingly, this Court has held that retainers satisfy section 109(a)'s "property in the United States" requirement.  *See In re Berau Capital Res. PTE Ltd.*, 540 B.R. 80, 82 (Bankr. S.D.N.Y. 2015) (finding in chapter 15 case that retainer held by foreign representative's New York counsel constituted debtor's property in U.S. for section 109(a) purposes); *In re U.S. Steel Can. Inc.*, 571 B.R. 600, 611 (Bankr. S.D.N.Y. 2017) (same).  The

10

Debtors satisfy section 109(a) on the same basis—through a retainer held by S&C on behalf of each Debtor (the "S&C Retainer").[10]

25.      The AFRs retained S&C solely in their capacities as court-appointed representatives of the Debtors and their estates.  *Transcript of May 13, 2026 Deposition of Paul Pretlove* [ECF No. 49-17] (the "Pretlove Tr.").  The AFRs had not yet been able to access funds from the Debtors' estates, so their firm, Interpath, advanced the funds used to establish the S&C Retainer.  The S&C Retainer was created for the benefit of the Debtors and is held for the ratable benefit of all Debtors in connection with these Chapter 15 Cases.  Pretlove Tr. at 113:20–114:4, 172:15–23.  The fact that the S&C Retainer is held ratably on behalf of all Debtors is not disqualifying.  The Objection identifies no authority that allocating retainer funds pro rata among Debtors is impermissible.  Indeed, "[i]t is not relevant who paid the retainer, so long as the retainer is meant to cover the fees of the attorneys for all the Debtors."  *In re Global Ocean Carriers Ltd.*, 251 B.R. 31, 39 (Bankr. D. Del. 2000).

26.      Those beneficial rights entitle the AFRs, acting through the Debtors—not Interpath—to enforce and collect the S&C Retainer if it had to be returned; Interpath would then seek reimbursement as a necessary liquidation expense.  Pretlove Tr. 102:4-20, 172:9-175:20.  This suffices under section 109(a).  *See, e.g.*, *Berau*, 540 B.R. at 83 (finding that contractual rights satisfy section 109(a)); *Chartschlaa* v. *Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008) (same); *In re Octaviar Admin. Pty Ltd.*, 511 B.R. 361, 370 (Bankr. S.D.N.Y. 2014) (holding in chapter 15

---

[10]    The Debtors may possess other "property in the United States" within the meaning of section 109(a) as of the date the AFRs filed petitions in these Chapter 15 Cases.  For example, to the extent that any of the Debtors have funded Boies Schiller Flexner LLP's ("BSF") representation of Mr. Borelli, the AFRs submit that the Debtors have a right to recoup such funds from BSF.  And, to the extent that the Debtors have claims against defendants in the United States under U.S. law, these rights constitute property of the Debtors for section 109(a).  *See In re Octaviar Admin. Pty Ltd.*, 511 B.R. 361, 372-73 (Bankr. S.D.N.Y. 2014) (concluding that claims constitute property located in the U.S. for section 109(a) purposes).

11

that foreign representatives met their burden of establishing debtor's property "in the form of claims or causes of action in the United States"). Accordingly, the Debtors have sufficient property rights through the S&C Retainer to satisfy section 109(a).[11]

### B. The AFRs Met Their Debtor-By-Debtor Evidentiary Burden.

27. The Objection contends that the AFRs proved the recognition requirements "collectively," relying on references to the "Prince Group" and a single "Debtors' COMI." Obj. ¶¶ 37–38. This argument ignores that the evidence is materially identical across all the Debtors, and there is no need for separate debtor-by-debtor evidence.

28. The AFRs described certain background facts at the group level because the Debtors are controlled by the same group of affiliates and are subject to the same underlying allegations, asset-tracing challenges, and investigation and preservation efforts. *See* Pretlove Decl. ¶¶ 11-38. The statutory recognition requirements, however, were established separately as to each Debtor. Each Debtor independently satisfies sections 109(a), 1502, and 1517. Notably, the Objection does not identify a single Debtor that purportedly fails to meet any recognition requirement, nor does it point to any debtor-specific evidence that would alter the result.

29. Recognition under section 1517 turns on the nature of the foreign proceeding, the status of the foreign representative, and compliance with section 1515. *See* 11 U.S.C. §§ 101(23), 1515, 1517. For recognition as a foreign main proceeding, the Court must also determine that the debtor's center of main interests is located in the foreign jurisdiction. *See id*. §§ 1502(4), 1517(b)(1). Nothing in section 1517 requires the AFRs, at the recognition stage, to allocate

---

[11] The Objection's argument (Obj. at ¶ 34) that the S&C Retainer is an advance payment retainer versus a security retainer is unavailing. The two cases it cites do not concern section 109(a) at all; they address retainers in the context of sections 329 and 330 of the Bankruptcy Code regarding compensation of attorneys and estate professionals. *See In re King*, 392 B.R. 62, 70-71 (Bankr. S.D.N.Y. 2008); *In re D.L.I.C., Inc.*, 120 B.R. 348, 350 (Bankr. S.D.N.Y. 1990).

particular creditor or victim claims among the Debtors or otherwise resolve merits issues concerning the ultimate ownership of assets or liabilities.  The AFRs have satisfied their debtor-by-debtor evidentiary burden, and the Objection identifies no debtor-specific evidence to the contrary.

### C.      The BVI Proceedings Are "Foreign Proceedings."

30.      The Objection contends that the BVI Proceedings fail three elements of section 101(23):  that they are not "for the purpose of reorganization or liquidation," not conducted "under a law relating to insolvency or adjustment of debt," and not "collective."  Obj. ¶¶ 39–51. The Objection incorrectly treats the provisional liquidation as a standalone measure rather than an interim process within extant, court-supervised liquidation proceedings.

31.      This Court correctly rejected these arguments at the provisional relief stage, finding that the BVI Proceeding is "likely a 'foreign proceeding' within the meaning of section 101(23)," "was initiated under the BVI Insolvency Act with the express purpose of liquidating the Debtors," and is "collective in nature."  *Memorandum Opinion Granting Provisional Relief* at 28–30 [ECF No. 38] (the "Memorandum Opinion").  The Objection offers no reason to revisit that conclusion.  Properly construed, the BVI Proceedings satisfy each requirement of section 101(23).

32.      **The BVI Proceedings are for the purpose of liquidation.**  The BVI Proceedings comprise the Debtors' provisional liquidation proceedings (interim relief granted under Section 170 of the BVI Insolvency Act) brought within and in support of the BVI Attorney General's extant winding-up applications under Section 162.  Verified Petition ¶ 22; Chissick Decl. ¶¶ 17, 23.  The Objection's attempt to treat the provisional liquidation as something distinct from the liquidation proceeding it was designed to preserve ignores the structure of the BVI Insolvency Act.  The provisional liquidation is an interim process within extant  liquidation proceedings, and

13

section 101(23) expressly includes "an interim proceeding" within the definition of a foreign proceeding.  11 U.S.C. § 101(23).

33.    The BVI Originating Applications state that the proceedings were commenced to "maximise recoveries" for the victims, to "ensure that any recovered assets are properly distributed as part of a collective process," and to "maximise returns to defrauded investors."  *BVI Originating Application* [ECF No. 49-11] ¶¶ 31(h), (j), 39(b).  The Attorney General seeks to have the Debtors "wound up under the supervision of this Honourable Court."  *Skeleton Argument of the BVI Attorney General* [ECF No. 4-4] (the "BVI AG Skeleton") ¶ 49.

34.    The Objection's contrary inference—drawn from the AFRs' investigation and asset preservation efforts—is meritless.  Given the Prince Group's "complex multinational corporate structure" and allegations that its proceeds were "laundered through a variety of complex methods," investigation and preservation are not inconsistent with liquidation; indeed, they are necessary predicates to maximizing recoveries.  Pretlove Decl. ¶¶ 16, 18, 40, 43, 47.  The Objection's reliance on *In re Global Cord Blood Corp.*, 2022 WL 17478530 (Bankr. S.D.N.Y. Dec. 5, 2022), is misplaced.  The provisional liquidators there disclaimed any intention to liquidate; the AFRs, by contrast, do not adopt any equivalent limitation.

35.    Nor do the BVI Orders authorize only preservation and investigation.  They confer on the AFRs "the rights and powers of a liquidator to the extent necessary to maintain the value of the assets," BVI Orders ¶ 2, and expressly empower them to seek recognition in the United States and elsewhere "for the purposes of securing, realising and remitting assets"—so that they may exercise abroad the very powers the BVI Court conferred.  *Id*. ¶ 3(c); May 14 Hearing Tr. 201:13–23.  That the broader powers of sale and payment to creditors under Schedule 2 of the BVI Insolvency Act await the BVI Court's sanction reflects the orderly, supervised sequence of a

14

liquidation in its interim phase, and does not negate its liquidating purpose. *See* BVI Orders ¶ 10; Chissick Decl. ¶¶ 40-43, 52.

36.    **The BVI Proceedings are conducted under a law relating to insolvency**. The statutory test asks only whether the ***governing law*** "relat[es] to" insolvency or the adjustment of debt. *In re Glob. Cord Blood Corp.*, 2022 WL 17478530, at *9 (Bankr. S.D.N.Y. Dec. 5, 2022). The BVI Insolvency Act is such a law, and it governs the BVI Proceedings. The BVI Attorney General's applications seek liquidator appointment under section 162 of the BVI Insolvency Act, which authorizes the BVI Court to appoint a liquidator on insolvency, just-and-equitable, or public-interest grounds alike—each a route to the same court-supervised liquidation under the same statute. Chissick Decl. ¶ 32. The ground invoked does not change the law under which the proceeding runs. The Objection's argument that because the proceeding is on the basis of public-interest it is somehow carved out from insolvency law is incorrect (and not the statutory test). Obj. ¶ 47.

37.    The Objection's reliance on legislative history is also misplaced. It is unremarkable that chapter 15 was enacted with "technically insolvent" and "severely distressed" debtors in mind, H.R. Rep. No. 109-31, pt. 1, at 118 (2005), and that certainly does not engraft an actual-insolvency requirement onto recognition. Section 101(23) asks whether the governing law relates to insolvency—not whether the particular debtor has been adjudged insolvent.

38.    **The BVI Proceedings are collective**. A proceeding is collective when it "considers the rights and obligations of all creditors." *In re ENNIA Caribe Holding N.V.*, 594 B.R. 631, 638 (Bankr. S.D.N.Y. 2018), rather than enforcing the rights of a single creditor or stakeholder. The BVI Proceedings were commenced not by a creditor pursuing its own individual recovery, but by the BVI Attorney General, a public official, in the public interest, and are intended to "enable

15

coordinated administration and recovery" for the benefit of any who have claims against the Debtors.  Chissick Decl. ¶ 58.

39.      In *Global Cord*, the Court found the joint provisional liquidators' acknowledgement that "they seek to avoid the need for [liquidation]" and "hope that they never will" to be "fatal" to the argument that the proceeding is "for the purpose of reorganization or liquidation."  *Global Cord*, at *10–11.  Here, the clear purpose of the BVI Proceedings—expressly supported by both the BVI Originating Applications and the BVI AG Skeleton—is the exact opposite.  *See* BVI Orig. App. ¶¶ 31(h), (j), 39(b); BVI AG Skeleton ¶ 49.  That ultimate purpose is to liquidate the Debtors and distribute proceeds to creditors and victims.  Unlike the *Global Cord* provisional liquidators, the AFRs have never engaged in conduct inconsistent with this purpose.  This Court drew that very distinction at the provisional relief stage: "the Debtors are not positing that a liquidation is a mere hypothetical"—"the BVI Attorney General has initiated a liquidation proceeding," which the Court found "sufficient . . . to conclude that the BVI Proceeding[s] [were] initiated for the purpose of liquidation."  Memorandum Opinion at 30.

### D.      The Relief Sought Is Not Manifestly Contrary to U.S. Public Policy

40.      Section 1506 permits a court to decline an action under chapter 15 where that action "would be manifestly contrary to the public policy of the United States."  11 U.S.C. § 1506.  This exception is narrow.  This Court has described it as "an exacting standard," reserved for cases presenting "exceptional circumstances concerning matters of fundamental importance for the United States," and the qualifier "manifestly" confirms that ordinary divergence from U.S. practice does not suffice.  *In re ARD Fin., S.A.,* 2026 WL 817458, at *19 (Bankr. S.D.N.Y. Mar. 25, 2026) (recognizing foreign proceeding over public-policy objection that it "violate[d] the substantive rights of creditors").

16

41.     The Objection does not even try to clear this high bar. It expressly disclaims any contention that "BVI laws are procedurally unfair as a general matter." Obj. ¶ 55. Having conceded that the system is fair, Mr. Borrelli is left to complain that the AFRs have operated unfairly within that fair system. But even under the very case the Objection cites, the "key determination" under section 1506 is whether the procedures used in [the foreign country] meet our fundamental standards of fairness." *In re Metcalfe & Mansfield Alt. Invs.,* 421 B.R. 685, 697 (Bankr. S.D.N.Y. 2010). The Objection's assertion about supposedly unfair activity within a fair system is not a valid section 1506 objection; it is a grievance for the BVI Court, which supervises the AFRs.

42.     The Objection also mistakenly argues that the *ex parte* character of the AFRs' initial appointment offends fundamental U.S. policy. Obj. ¶ 54. But *ex parte* relief is a common feature of U.S. practice, and the AFRs' appointment was promptly subject to an inter partes process, involving applications filed by the "Borrelli Debtors" and several days of hearings before the BVI Court. Obj. ¶¶ 13, 15-16.

43.     The sealed filings and information-access disputes the Objection raises are ordinary case-management issues appropriate for the BVI Court, not grounds for refusing recognition under section 1506. Accordingly, the Objection fails to establish that the BVI Proceedings are manifestly contrary to any fundamental U.S. policy.

## E.     All Discretionary Relief Is Warranted.

44.     The Objection claims that the discretionary relief sought in the Petitions should be denied because the AFRs fail to satisfy sections 1521(a) and 1522 of the Bankruptcy Code. The Objection provides no evidence to support this conclusion. Instead, it relies on Dr. Mokal's conclusory statements that for the AFRs to claim "that they have authority to seek . . . broader relief [than what the BVI Court has sanctioned] would be inconsistent with BVI law."

17

*Declaration of Riz Mokal* [ECF No. 49-1] ¶ 64; Obj. ¶ 58.  But when asked to review the AFR's initial *Proposed Order* [ECF No. 2-2], Dr. Mokal expressed "no view" on whether any of the requested relief was inconsistent with BVI law.  *Transcript of June 3, 2026 Deposition of Dr. Riz Mokal* ("Mokal Tr.") 143:23–144:24.[12]  And, in any event, under the BVI Orders, "there is broad authority for the [AFRs] to preserve and realize assets," and requesting authority to do so in the U.S. is in no way inconsistent with BVI law.  *Transcript of May 14, 2026 Deposition of Andrew Barrington Chissick* [ECF No. 49-34] 107:21-24.

45.     As noted in the Memorandum Opinion, "[f]oreign law does not preclude the availability of additional relief under chapter 15, particularly when granting such relief does not run contrary to the public policy of the foreign jurisdiction."  Memorandum Opinion at 31–32 (citing *In re Platinum Partners*, 583 B.R. 803, 815).  The Objection does not—and cannot—point to a single instance where the realization of assets would be "contrary to the public policy" of the BVI.  *Id.*  The Objection notes that the BVI Court's "understanding" is that the current provisional liquidation would be reversible if the BVI Court denied the AFR's permanent appointments.  But, the BVI Court was not referring to asset sales, but rather the liquidation proceedings as a whole: "We all know [provisional liquidation is] a prelude . . . to full-blown liquidation, but very often there is some kind of restructuring which allowed the Company to come out of provisional liquidation and continue . . ." *See Transcript of April 16, 2026 BVI Hearing* [ECF No. 49-14] (at 8:18-22).

---

[12]   Dr. Mokal's testimony further underscores the limited scope and weight of his declaration.  Dr. Mokal acknowledged that he has never been retained as an expert on BVI law (Mokal Tr. 10:18-20), that he does not have a full understanding of the issues in the BVI Proceedings and addressed only certain BVI-related issues he was instructed by BSF to address (Mokal Tr. 25:6-26:13), that he assumed the truth of Mr. Borrelli's allegations in the Objection and made no inquiry into their accuracy (Mokal Tr. 26:14-24), and that he was not opining that recognition of these chapter 15 proceedings would impair Mr. Borrelli's ability to run the companies (Mokal Tr. 109:7-23; 111:14-112:4).

46.     Seeking authority to realize assets in a liquidation is neither extraordinary nor unusual relief.    Section 1521(a)(5) expressly provides that a court may "entrust[] the administration or *realization* of all or part of the debtor's assets within the territorial jurisdiction of the United States the foreign representative or another person . . ."  11 U.S.C. § 1521(a)(5) (emphasis added).  This relief may be granted "if the interests of the creditors and other interested entities, including the debtor, are sufficiently protected."  11 U.S.C. § 1522(a).  Here, where an orderly liquidation will benefit creditors and distribute proceeds of the foreign estate substantially in accordance with orders prescribed by the BVI Court and this Court, the interests of creditors and other parties are sufficiently protected.  *See In re Odebrecht Engenharia e Construcao S.A. - Em Recuperacao Jud.,* 669 B.R. 457, 474 (Bankr. S.D.N.Y. 2025).[13]

47.     The Objection also argues that granting comity and effect to orders entered by the BVI Court in the BVI Proceedings as of the date of the entry of the recognition order does not satisfy section 1522(a) of the Bankruptcy Code.  *See* Obj. ¶ 66.  These provisions of the proposed recognition order are consistently included in recognition orders entered by this Court.[14]  However, the Authorized Foreign Representatives will submit to the Court any orders entered in the BVI Court so that the Court will have the opportunity to review such orders before entry of the proposed recognition order and determine whether such orders satisfy section 1521 or any other applicable section of the Bankruptcy Code.

48.     Finally, the Objection takes issue with the routine waiver of the 14-day stay.  Contrary to its characterization of the record as "scant," Obj. ¶ 68, the facts and circumstances

---

[13]    Although the Objection spends paragraphs alleging that the AFRs have been "wasteful" with the Debtors' assets, none of that is relevant to the relief requested by the AFRs (or true).  The AFRs believe that proactively engaging with regulators around the world in a systematic and comprehensive manner will help ensure that the value of the Debtors' assets—wherever located—are maximized for victims and other creditors, consistent with their mandate.

19

here warrant immediate relief.  The AFRs must be authorized to act swiftly to preserve assets and secure documents and information at risk following recognition, particularly because the BVI Court has not yet granted the full liquidation.  Any delay in the effectiveness of the Proposed Order may create a window during which adverse actors may take steps to dissipate or divert the Debtors' assets in the United States before the protections of recognition take effect.  Accordingly, the 14-day stay waiver is appropriate and should be granted.

### Conclusion

WHEREFORE, the AFRs respectfully request that the Court strike the Objection for lack of standing, or overrule it on the merits, and grant the relief requested in the Petitions.

20

Dated: June 5, 2026
     New York, New York

Respectfully submitted,

*/s/ Andrew G. Dietderich*
Andrew G. Dietderich
Sharon Cohen Levin
Christopher J. Dunne
Jacob M. Croke
Alexa J. Kranzley
**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile:  (212) 558-3588
Email:   dietdericha@sullcrom.com
        levinsc@sullcrom.com
        dunnec@sullcrom.com
        crokej@sullcrom.com
        kranzleya@sullcrom.com

*Counsel to the Authorized Foreign Representatives*

21