**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Prince Global Holdings Limited, *et al..*<br><br>Debtors in a Foreign Proceeding. | **FOR PUBLICATION**<br><br>Case No. 26-10769 (MG)<br><br>(Jointly Administered) |

**MEMORANDUM OPINION RECOGNIZING THE BVI PROCEEDINGS AS FOREIGN MAIN PROCEEDINGS AND GRANTING RELATED RELIEF**

*A P P E A R A N C E S:*

SULLIVAN & CROMWELL LLP
*Attorneys for the Joint Provisional Liquidators*
125 Broad Street
New York, New York 10004
By:    Andrew G. Dietderich, Esq.
       Sharon Cohen Levin, Esq.
       Christopher J. Dunne, Esq.
       Jacob M. Croke, Esq.
       Alexa J. Kranzley, Esq.

BOIES SCHILLER FLEXNER LLP
*Attorneys for Cosimo Borrelli in his capacity as the sole director of each of the Borrelli Debtors*
55 Hudson Yards
New York, New York 10001
By:    Matthew L. Schwartz, Esq.
       Peter M. Skinner, Esq.
       Gordon Z. Novod, Esq.

-and-

BOIES SCHILLER FLEXNER LLP
401 E Las Olas Boulevard
Fort Lauderdale, Florida 33301
By:    Laura Femino, Esq.

-and-

BOIES SCHILLER FLEXNER LLP
2029 Century Park East
Los Angeles, California 90067
By:    Dan G. Boyle, Esq.

1

The Prince Group is a complicated series of entities that sit atop an empire of fraud and forced labor.  This empire came crashing down following the arrest of its leader, Mr. Chen Zhi, by Chinese and Cambodian authorities.  On its face, the Prince Group operates in sectors such as real estate, financial services, and consumer services.  However, beneath this facade, the Prince Group is alleged to have operated forced labor compounds throughout Cambodia and engaged in various fraudulent schemes worldwide.  The British Virgin Islands Attorney General, Dawn Smith, initiated liquidation proceedings against certain BVI-based entities affiliated with the Prince Group with the express goal of compensating the victims of the Prince Group's crimes. The joint provision liquidators, who were appointed by the BVI Court, seek recognition of the BVI Proceedings in the United States.  Objecting to recognition is Cosimo Borrelli who purports to have been appointed before the BVI Proceeding to be the sole director of many, if not all, of the debtor entities.  For the reasons discussed below, this Court **OVERRULES** Mr. Borrelli's objection, **RECOGNIZES** the BVI Proceedings as foreign main proceedings and **GRANTS** the related relief as set forth in the recognition order that will be entered separately.

Pending before the Court are the *Chapter 15 Petition for Recognition of Foreign Proceeding* (ECF Doc. # 1) and the *Motion to Approve Verified Petition under Chapter 15 for Recognition of Foreign Main Proceedings and Related Relief* (the "Verified Petition" or "VP," ECF Doc. # 2) filed in the above-captioned chapter 15 cases (the "Chapter 15 Cases") by Paul Pretlove, David Standish, and James Drury as the putative foreign representatives (collectively, the "Joint Provisional Liquidators" or "JPLs") of the ongoing provisional proceedings (the "BVI Proceedings") pending in the High Court of Justice, Commercial Division, of the British Virgin Islands (the "BVI Court") pursuant to section 170 of the BVI Insolvency Act, 2003 ("BVI

Insolvency Act") with respect to each of Prince Global Holdings Limited and 29 of its affiliates (together, the "Debtors" and each a "Debtor").

In support of the Verified Petition, the JPLs have submitted (a) *the Declaration of Paul Pretlove in Support of the (A) Emergency Motion for Entry of Orders Granting (I) Ex Parte Relief and (II) Provisional Relief, Pursuant to Section 1519 of the Bankruptcy Code and (B) the Verified Petition Under Chapter 15 for Recognition of Foreign Main Proceedings and Related Relief* (the "Pretlove Declaration," ECF Doc. # 3) and (b) *the Declaration of Andrew Barrington Chissick in Support of the (A) Emergency Motion for Entry of Orders Granting (I) Ex Parte Relief and (II) Provisional Relief, Pursuant to Section 1519 of the Bankruptcy Code and (B) the Verified Petition Under Chapter 15 for Recognition of Foreign Main Proceedings and Related Relief* (the "Chissick Declaration," ECF Doc. # 4).

Cosimo Borrelli (the "Director"), in opposition, filed the *Corrected Objection to Verified Petition under Chapter 15 For Recognition of Foreign Main Proceedings and Related Relief* (the "Objection," ECF Doc. # 57). In support of the Objection, the Director relies upon the *Second Declaration of Peter M. Skinner in Support of Cosimo Borrelli's Objection to Verified Petition under Chapter 15 for Recognition of Foreign Main Proceedings and Related Relief* (the "Second Skinner Decl.," ECF Doc. # 49), the Declaration of Riz Mokal (the "Mokal Decl."), and the Affidavit of Cosimo Borrelli (the "Borrelli Decl."), which are annexed to the Second Skinner Decl. as Exhibit 1 and Exhibit 2 respectively.

The JPLs, in turn, filed the *Reply to Cosimo Borrelli's Objection to Verified Petition under Chapter 15 for Recognition of Foreign Main Proceedings and Related Relief* (the "Reply," ECF Doc. # 78) and the *Declaration of Christopher J. Dunne in Support of Reply to Cosimo*

3

*Borrelli's Objection to Verified Petition under Chapter 15 for Recognition of Foreign Main Proceedings and Related Relief* (the "Dunne Decl.," ECF Doc. # 77).

## I.      BACKGROUND

### A.  The Verified Petion

1.   General Background

Prince Group Holdings Limited and its affiliated debtors (collectively, the "Debtors") are entities incorporated in the British Virgin Islands ("BVI") as a business company pursuant to the BVI Business Companies Act, 2004, which is a form of limited liability company comparable to a corporation under U.S. law.  (Pretlove Decl. ¶ 11.)  This Court has previously engaged in a fulsome discussion of the Debtors' background, which can be found in this Court's prior decision granting provisional relief pursuant to section 1519 of the Code in *In re Prince Glob. Holdings Ltd.*, No. 26-10769 (MG), 2026 WL 1096899 (Bankr. S.D.N.Y. Apr. 23, 2026).  The Court will, however, recount certain details relevant to this Opinion.

The Debtors are alleged to be associated with a transnational criminal organization referred to as the "Prince Group," a conglomerate alleged to have engaged in widespread patterns of criminal behavior such as cryptocurrency and investment-related fraud and was controlled by Chen Zhi ("Mr. Chen" or "Zhi").  (VP ¶ 1.)  Criminal investigations led by multiple agencies in various jurisdictions were launched into the Prince Group and Mr. Chen. (*Id.* ¶ 2.)

The DOJ charged Mr. Chen in the Easter District of New York with wire fraud conspiracy and money laundering conspiracy for directing the Prince Group's operation of forced-labor scam compounds across Cambodia on October 14, 2025. (*Id.* ¶ 3.)  The same day, the U.S. Attorney's Office for the Eastern District of New York and the DOJ's National Security Division filed a civil forfeiture complaint (the "Forfeiture Complaint") in the U.S. District Court

4

for the Eastern District of New York against approximately 127,271 Bitcoin that are alleged to be proceeds and instrumentalities of Mr. Chen's fraud and money laundering schemes. (*Id.*) The U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") and Financial Crimes Enforcement Network ("FinCEN") and the United Kingdom's Foreign, Commonwealth and Development Office imposed sweeping sanctions on 146 targets within and connected to the Prince Group, including the Debtors. (*Id.* ¶ 4.)

On January 5, 2026, the Attorney General of the BVI, Dawn J. Smith (the "BVI Attorney General"), filed an application with the BVI Court seeking the appointment of the JPLs as liquidators pursuant to sections 162(1)(a) and (c) of the BVI Insolvency Act. (Chissick Decl. ¶ 40.) The BVI Attorney General also sought the appointment of the JPLs as provisional liquidators of the Debtors pursuant to section 170 of the BVI Insolvency Act. (*Id.*) Among the Debtors are 28 entities that were included in the OFAC sanctions, in addition to two (2) companies identified in the Forfeiture Complaint. (VP ¶ 6.)

The Honorable Justice Abbas Mithani of the BVI Court found that it was just, equitable, and in the public interest that provisional liquidators be appointed for the Debtors and granted *ex parte* orders for the appointment of the JPLs from Interpath as joint provisional liquidators (the "BVI Orders"). (*Id.* ¶ 8.)

The BVI Orders permit the JPLs to take control of the Debtors, carry out a full investigation of their affairs and use the tools available to them to trace, secure and preserve their assets, as well as to conduct discovery, investigate and wrest control of assets from the prior stakeholders. (*Id.* ¶¶ 9-10.) The JPLs request recognition of the BVI Proceedings as foreign main proceedings to obtain this Court's assistance in facilitating their efforts to identify, secure,

protect, and trace the Debtors' assets and in investigating the Debtors' businesses, financial affairs, and potential claims against third parties. (*Id.* ¶ 12.)

2. Legal Argument

a. *The BVI Proceedings Are "Foreign Proceedings"*

The JPLs contend that each BVI Proceeding satisfies the requirements of section 101(23) of the Bankruptcy Code. (*Id.* ¶ 21.) The JPLs submit that the BVI Proceedings are (i) judicial proceedings pending in the BVI, commenced under the BVI Insolvency Act, (ii) collective in nature, as they were commenced in the public interest and are not directed toward the enforcement of the rights of a single creditor or stakeholder, (iii) subject to the control and supervision of a foreign court, and (iv) for the purpose of liquidating the Debtors' assets. (*Id.* ¶ 22.) The JPLs also note that this Court has previously granted recognition to other BVI and similar offshore provisional liquidation proceedings as foreign proceedings. (*Id.* ¶ 23.)

b. *The BVI Proceedings Qualify as "Foreign Main Proceedings"*

The JPLs claim that each Debtor's center of main interests ("COMI") is located in the BVI. (*Id.* ¶¶ 27-31.) The JPLs note that under section 1516(c) of the Bankruptcy Code, a non-individual debtor is entitled, in absence of evidence of the contrary, to a presumption that the debtor's center of main interest is the location of the debtor's registered office. (*Id.* ¶ 25.) A debtor's COMI is to be determined as of the date on which the chapter 15 petition is filed, and the JPLs claim that each Debtor has its registered office in the BVI as of the chapter 15 filing date. (*Id.* ¶ 27.)

Further, even without the presumption that the Debtors' COMI is the jurisdiction in which their registered offices are located, the JPLs argue that the Court should find that the Debtors' COMI is the BVI pursuant to the non-exclusive factors identified by courts as relevant

6

to the COMI determination.  (*Id.* ¶ 28.)  The JPLs note that each Debtor is an entity with no fixed operations in a single jurisdiction, and courts traditionally look to the jurisdiction under whose court supervision a debtor's liquidation is being administered.  (*Id.*)  The JPLs note they were appointed by the BVI Court, derive their authority from the BVI Orders, and are officers of, and are supervised by, the BVI Court.  (*Id.*)

Additionally, under section 245 of the BVI Business Companies Act, 2004, the JPLs claim that the situs of the ownership of shares of a BVI company is deemed to be in the BVI. (*Id.* ¶ 29.)  Each Debtor is located in the BVI; therefore, the situs of ownership should be deemed to be in BVI.  (*Id.*)  Furthermore, the JPLs claim that the Debtors' COMI is ascertainable by third parties as the BVI.  (*Id.* ¶ 30.)  The Debtors are incorporated in the BVI, the BVI Proceedings have been noticed, and the JPLs are officers of the BVI Court.  (*Id.*)

      c.   *The Authorized Foreign Representatives Are "Foreign
Representatives" Under Section 101(24) of the Bankruptcy Code*

Next, the JPLs claim that they qualify as a "foreign representative" under section 101(24) of the Code.  (*Id.* ¶ 32.)  The JPLs again note that they were appointed by the BVI Orders as officers of the BVI Court and are expressly authorized to seek recognition of their appointment in this Court and others.  (*Id.*)  The JPLs then point to decisions by this Court and others that have recognized offshore provisional liquidators are "foreign representatives" under section 101(24).  (*Id.* ¶ 33.)

      d.   *The Petitions Satisfy the Requirements of Section 1515*

The JPLs claim that the Verified Petitions satisfy section 1515 of the Code, as they are accompanied by evidence of the foreign proceeding, evidence of the appointment of the foreign representative, and a statement identifying all known foreign proceedings with respect to each

Debtor.  (*Id.* ¶ 34.)  The JPLs have provided certified copies of the BVI Orders, which included

the order commencing the BVI Proceedings and orders appointing the JPLs, as well as a

statement confirming that the BVI Proceedings are the only known foreign proceeding pending

with respect to the Debtors.  (*Id.* ¶ 35.)

### e.   *Recognition Would Not Be Manifestly Contrary to U.S. Public Policy*

Turning to public policy, the JPLs argue that recognition of the BVI Proceedings would

not be contrary to the U.S. public policy interests and would, in fact, advance U.S. policy

interest.  (*Id.* ¶ 37.)  The JPLs claim that the BVI Proceedings were initiated to advance the

public interest and divest a designated transnational criminal organization of control over the

Debtors and preserve the Debtors' assets for those harmed by the conduct of the Prince Group.

(*Id.*)

The JPLs claim that they have been actively engaged in productive conversations with

U.S. law enforcement and regulatory authorities and recognition would continue to support

coordination between U.S. law enforcement, the JPLs, and others who are seeking to preserve

estate assets.  (*Id.* ¶ 38.)

### f.   *The Debtors Are Entitled to Automatic Relief*

The Debtors submit that they are entitled to the automatic protections of section 1520(a)

of the Bankruptcy Code, including the imposition of the automatic stay with respect to property

located within the United States.  (*Id.* ¶ 39.)  The JPLs claim that these protections are important

in this matter because they allege Mr. Chen has taken steps to interfere with the JPLs' duties.

(*Id.* ¶ 40.)

g. *Additional Relief is Necessary and Appropriate*

The JPLs claim that in the event the Court entered an order without granting the BVI

Orders comity, it would unduly restrict the reach of the BVI Orders. (*Id.* ¶ 42.) Additionally, if

the Court entered an order without permitting the JPLs to administer and realize the Debtors'

property in the United States, the JPLs would be unable to maximize the value of estate assets.

(*Id.*)

i.      The BVI Orders Should Be Granted Comity

The JPLs argue the BVI Orders satisfy the standard applied by courts and should be

granted comity. (*Id.* ¶¶ 43-46.) The JPLs claim that the BVI possesses an English-style common

law legal system, and the BVI Proceedings were commenced by the BVI Attorney General in the

public interest. (*Id.* ¶ 46.) The BVI Proceedings resulted in the appointment of independent

licensed insolvency practitioners as officers of the BVI Court. (*Id.*) The JPLs further claim that

the BVI Proceedings provide all interested parties with an impartial court and fundamental

standards of due process. (*Id.*)

ii.      Entrustment is Warranted

The JPLs then contend that the Court should entrust them with the administration and

realization of the Debtors' assets located within the territorial jurisdiction of the United States.

(*Id.* ¶ 47.) The JPLs contend that allies of Mr. Chen are attempting to appoint competing

directors of 25 of the Debtors and hired counsel to challenge the JPLs' authority in the United

States. (*Id.* ¶ 48.) Accordingly, the JPLs request that the Court enter an order entrusting them

with sole authority of the Debtors' U.S. assets. (*Id.* ¶ 49.)

9

### h. *Waiver of the 14-Day Stay of Effectiveness Should Be Granted*

Lastly, the JPLs request that the Court waive the 14-day stay and enter an order that is effective immediately upon entry. (*Id.* ¶ 50.) The JPLs claim that the circumstances of this case warrant immediate relief, and the acts of persons associated with Mr. Chen warrant a waiver of the stay to prevent adverse actors from taking steps to dissipate or divert the Debtors' assets in the United States. (*Id.* ¶ 51.)

## B. The Objection

### 1. General Background

### a. *Criminal and Civil Forfeiture Actions Are Filed in EDNY, and Related Sanctions Are Imposed*

On October 14, 2025, Mr. Zhi was indicted in the Eastern District of New York and charged with one count of wire fraud conspiracy and one count of money laundering (the "EDNY Indictment"). (Objection ¶ 1.) Also on October 14, the U.S. Attorney's Office for the Eastern District of New York initiated a forfeiture action seeking forfeiture of approximately 127,271 Bitcoin (the "Cryptocurrency")[1] in the Eastern District of New York (the "EDNY Forfeiture Action" and, together with the EDNY criminal proceedings commenced by the Indictment, the "EDNY Proceedings"). (*Id.*)

The Director claims that the EDNY Indictment contains allegations that are wrong and should induce skepticism regarding how the government conducted its investigation and brought its case. (*Id.* ¶ 2.)

---

[1] *United States v. Approximately 127,271 Bitcoin ("BTC") Previously Stored at the Virtual Currency Addresses Listed in Attachment A*, No. 25-cv-5745, ECF No. 1 (E.D.N.Y. Oct. 14, 2025) (the "EDNY Forfeiture Complaint," Second Skinner Decl. Ex. 4).

b. *The BVI Attorney General Relies on the Flawed EDNY Filings to Secure Ex Parte Orders in the BVI for Limited JPL Appointments*

Next, the Director recounts how the BVI Attorney General initiated liquidation proceedings against the Debtors. (*Id.* ¶ 4.) The Director notes that because the BVI Attorney General initiated proceedings on public interest grounds, no allegations of insolvency or inquiry into financial distress were made, nor has any party contended that the Debtors are insolvent. (*Id.*) The Director claims that the *ex parte* application submitted to initiate the BVI Proceedings was premised on allegations contained in the EDNY Indictment and EDNY Forfeiture Complaint, many of which he claims are not supported with evidence or are predicated on secondhand reports and statements. (*Id.* ¶ 6.)

The Director contends that the JPLs were provisionally appointed to identify and preserve the Debtors' assets to maintain the status quo. (*Id.* ¶ 8.) The Director also contends that the BVI Orders indicate that provisional relief is investigatory in nature and does not pertain to insolvency or reorganization. (*Id.* ¶ 9.) Instead, the Director argues that the JPLs are tasked with implementing a detailed protocol to facilitate cooperation between the BVI Attorney General and law enforcement and regulatory authorities in other jurisdictions. (*Id.*)

c. *Mr. Borrelli's Appointment*

The Director claims that he was appointed as the sole director of the Borrelli Debtors[2] between February 23, 2026, and February 27, 2026. (*Id.* ¶ 10.) The appointments were made by

---

[2]    Mr. Borrelli purports to be the sole director of each of Prince Global Holdings Limited, Auspicious Tycoon Limited, Bright Team Global Limited, Delightful Thrive Limited, Even Sincerity Limited, Fulam Investment Limited, Giant Victory Holdings Limited, Golden Ascend International Limited, Harmonic State Limited, Luminous Glow Limited, Mighty Divine Limited, Noble Title Limited, Oriental Charm Holdings Investment Limited, Pacific Charm Holdings Investment Limited, Praise Marble Limited, Prince Global Group Limited, Respectful Steed Limited, Retain Prosper Limited, Simply Advanced Limited, Southern Heritage Limited, Star Merit Global Limited, Starry Bloom Limited, Sure Tycoon Limited, Towards Sunshine Limited, and United Riches Global Limited (together, the "Borrelli Debtors").

attorneys who had been granted full powers of attorney by Mr. Chen while he was detained in China. (*Id.*)  The Director opposed the liquidation applications brought in the BVI. (*Id.*)  Mr. Borrelli has refused to produce copies of the documents purporting to appoint Borrelli as a director, asserting attorney-client privilege. (Reply ¶ 16.)

### d.    The JPLs Make Ex Parte Submissions and Stonewall the Director

The Director accuses the JPLs of making repeated *ex parte* communication with the BVI Court, including filing a report under seal which has not been made available to the Borrelli Debtors. (Objection ¶ 11.)  The JPLs have also refused to provide notice of or opportunity to object to proposed dealings with the Debtors' assets. (*Id.* ¶ 12.)  The Director also alleges the BVI Attorney General and her counsel have rejected attempts to compromise, and the JPLs have failed to disclose the fees their counsel has incurred. (*Id.* ¶¶ 13-14.)

### e.    The Borrelli Debtors Oppose the JPLs in the BVI

The Director then details how his BVI counsel, Campbells, filed notices of opposition to the liquidation applications in the BVI Court. (*Id.* ¶ 15.)  The Director claims that at a hearing held on April 16 and 17 2026, the BVI Court echoed many of the concerns raised by the Borrelli Debtors. (*Id.* ¶ 16.)

### f.    The JPLs Seek Greater Powers in Chapter 15

The Director then notes that the JPLs hired Sullivan & Cromwell LLP ("S&C") as counsel in its U.S. restructuring efforts. (*Id.* ¶ 18.)  The JPLs also transferred $25,000 of Interpath's money to a client trust fund account at S&C. (*Id.*)  The JPLs claim that the transfer created a U.S. property interest for each of the 30 Debtor entities, and the JPLs seek recognition on that basis. (*Id.*)

12

The Director claims the JPLs lack the authority to sell the Debtors' assets and that the BVI Orders do not authorize the JPLs to dispose of or realize assets without authorization from the BVI Court.  (*Id.* ¶ 21.)  The Director also disputes Mr. Chissick's claim that the JPLs possess the authority to realize assets by claiming Mr. Chissick's assertion is based on the fact that the BVI Insolvency Act does not forbid them from doing so.  (*Id.* ¶ 22.)  In other words, the statutory basis is that the realization of assets is not forbidden by BVI law.

g.   *Hong Kong Court Restrains Substantially All of the Debtors' Assets*

On May 4, 2026, the Hong Kong High Court granted a restraint order which froze approximately HK$8.94 billion in assets allegedly linked to Mr. Chen and three associates, after an application by the Department of Justice (DOJ) under the Organized and Serious Crimes Ordinance against those four individuals and 38 companies, including 15 of the Debtors.  (*Id.* ¶ 27.)  The Hong Kong case is still active and there is a hearing scheduled for August 3, 2026, to review the status of the frozen assets and ongoing investigations.  (*Id.*)

h.   *The BVI Court Rules that the Director May Direct the Companies to Oppose the JPLs in the BVI but Not in these Chapter 15 Cases*

The BVI Court also heard arguments and concluded that the BVI Orders precluded the Borrelli Debtors from objecting to the Chapter 15 Cases.  (*Id.* ¶ 28.)

2.   Legal Argument

a.   *Mr. Borrelli Has Standing to Object in His Capacity as a Director*

The Director first contends that he has standing to object to recognition of the Chapter 15 Cases because he has authority to run the companies subject to the BVI Orders, and the relief sought by the JPLs would impair his authority to carry out the duties of his office.  (*Id.* ¶¶ 29-30.)

### b. *The JPLs Have Failed to Establish Debtor Eligibility Under § 109(a)*

The Director next argues that the JPLs have failed to establish that they are eligible to be a debtor under section 109(a) of the Bankruptcy Code. (*Id.* ¶¶ 32-33.) The Director argues that the funds that constitute the S&C Retainer did not come from the Debtors, and instead was funded entirely by Interpath, the JPLs law firm. (*Id.* ¶ 33.) Accordingly, the Director claims that this gives Interpath a claim against the Debtors but does not constitute property of the Debtors. (*Id.*) The Director also claims the JPLs have failed to show how each Debtor possesses a "ratable interest" in a portion of the S&C Retainer. (*Id.*)

The Director also claims that regardless of whose funds are in the S&C Retainer, those funds belong to S&C because it is holding an "advance payment retainer" rather than a security retainer. (*Id.* ¶ 34.) The Director also argues that the JPLs could not have funded the S&C Retainer with property of the Debtors because they had not yet been able to access Debtor property due to sanctions and OFAC. (*Id.* ¶ 35.) Therefore, the Director requests that the Court dismiss this matter. (*Id.* ¶ 36.)

### c. *The JPLs Fail to Meet Their Debtor-by-Debtor Evidentiary Burden*

The Director argues that the Verified Petition fails to satisfy the debtor-by-debtor evidentiary burden for sections 109(a), 1502, and 1517 for each Debtor. (*Id.* ¶¶ 37-38.) Instead, the Director claims the Verified Petition relies on generalized allegations regarding the Debtors and fails to provide particular evidence regarding each Debtor's creditors, creditor expectations, financial distress, or foreign proceeding. (*Id.* ¶ 38.) The Directors claim that Mr. Pretlove was unable to identify which Debtor had claims asserted against them by two claimants. (*Id.*)

14

     *d. The BVI Proceedings Are Not "Foreign Proceedings"*

   The Director then argues that recognition should be denied because the BVI Proceedings are "not for the purpose of reorganization or liquidation" as required by the Code.  (*Id.* ¶ 41.) The Director claims that JPLs were appointed to aid the BVI Attorney General's investigation, not to reorganize the Debtors or liquidate their assets.  (*Id.* ¶ 42.)  The Director cites the BVI Court's prior statements that the JPLs wanted to use the liquidation proceeding as an investigatory tool.  (*Id.* ¶ 43.)  The Director argues that this indicates that the appointment of the JPLs does not necessarily involve the liquidation of the Debtors.

   Second, the Director claims that the BVI Proceedings are not "foreign proceedings" because they are not conducted "under a law relating to insolvency or the adjustment of debtors." (*Id.* ¶ 46 (citing 11 U.S.C. § 101(23)).  The BVI Attorney General did not seek to initiate the BVI Proceedings on insolvency grounds and instead proceeded on public-interest and just-and-equitable grounds.  (Objection ¶ 46.)  The Director claims the BVI Attorney General's submissions to the BVI Court provide further evidence that liquidation will not necessarily occur.  (*Id.* ¶ 48.)

   Third, the Director argues that the BVI Proceedings are not "collective" within the meaning of section 101(23).  (*Id.* ¶ 49.)  The Director claims that the BVI Proceedings fail to provide a claims submission process, claim-adjudication process, distribution process, or other restructuring process, and asks this Court to deny recognition.  (*Id.* ¶¶ 50-51.)

     *e. The Director Argues that the Court should Deny Recognition on Public Policy Grounds*

   Next, the Director requests that the Court deny recognition on public policy grounds because the JPLs and the BVI Attorney General have engaged in repeated *ex parte*

communication with the BVI Court, government agencies, and private stakeholders. (*Id.* ¶¶ 52-54.) The Director claims that the JPLs have conducted *ex parte* hearings before the BVI Court without providing notice to the Director or Borrelli Debtors. (*Id.* ¶ 54.) Additionally, the JPLs have submitted multiple sealed reports to the BVI Court, which combined with the *ex parte* communication, indicate that the BVI Proceedings lack certain common elements of U.S. practice. (*Id.*)

### f. *The Director Argues that Even if the Court Grants Recognition, It Should Deny all Discretionary Relief*

The Director further contends that even if the Court grants recognition, it should deny all discretionary relief. (*Id.* ¶ 56.)

#### i. Realization of Debtor Property Violates the Purpose and Scope of the BVI Orders and Risks Irreversible Damage to the Debtors

The Director asks the Court to not permit the JPLs to sell or "realize" estate assets because such authority would be outside the scope and purpose of the BVI Orders. (*Id.* ¶ 58.) The Director argues that the JPLs do not have a legal basis under BVI law or permission from the BVI Court to sell the Debtors' assets. (*Id.* ¶¶ 58-59.) The Director also argues that the sale of the Debtors' assets would be "irreversible" and runs counter to the JPLs representations to the BVI Court, as the JPLs have not obtained the power to sell assets from the BVI Court. (*Id.* ¶ 59.) Therefore, the Director requests that the Court refrain from authorizing the sale of the Debtors' assets pending a decision of the BVI Court on whether the JPLs are permitted to obtain the power to sell assets as full liquidators under BVI law. (*Id.* ¶ 60.)

16

           ii.       The Director Argues that the JPLs Have Been Wasteful with
                            Debtor Assets

The Director then argues that the JPLs have wasted the Debtors' assets, and many of the Debtors' assets are already subject to sanctions and freezing orders in multiple jurisdictions. (*Id.* ¶ 61.) The Director notes that the Hong Kong court issued a freezing order regarding 165 bank and securities accounts frozen presumably overlap with the bank accounts the JPLs sought to seize. (*Id.* ¶ 62.) Therefore, the Director claims that the JPLs actions are unnecessary and are wasting estate assets. (*Id.*)

The Director also claims that the JPLs have admitted they have taken steps to sell estate assets rather than preserve the Debtors' assets, such as seeking licenses to authorize transactions with frozen assets. (*Id.* ¶ 63.) Also, the Director states that through discovery he has obtained information indicating the JPLs plan to expand their mandate globally. (*Id.* ¶ 64.) No information has been provided to the Director regarding what additional law firms the JPLs have engaged in foreign proceedings or how much money has been spent on their efforts. (*Id.*)

           iii.      The Director Argues that the Court Should Not Grant the Other
                            Requested Relief

The Director also requests that the Court deny the other relief requested by the JPLs. (*Id.* ¶ 67.) The Director claims that the JPLs have engaged in an overly broad interpretation of the authority granted to them by the BVI Court and this Court should not grant the JPLs broad authority under the pretense of incidental powers. (*Id.*)

Furthermore, the Director requests that the Court not waive the 14-day stay of effectiveness. (*Id.* ¶ 68.) The Director argues that the 14-day stay of effectiveness is an important procedural protection, and its waiver is not necessary because the BVI Proceedings

17

may soon be drawn to a close due to a "scant evidentiary record" that the Director argues does not provide a basis to support the JPLs' conversion to liquidators with full powers. (*Id.*)

## C. The Reply

### 1. The JPLs Argue that Mr. Borrelli Lacks Standing to Object to Recognition

#### a. *Mr. Borrelli Has No Article III Standing*

First, the JPLs contend that the Director lacks standing to object to the Verified Petition because the BVI Orders limit the ability of any director to object to foreign proceedings. (Reply ¶ 4.) The JPLs argue the Director has not identified a property right or pecuniary interest of his own that would provide him with a personal stake in the litigation. (*Id.* ¶ 7.) Without a personal stake in the litigation, the JPLs argue the Director also does not qualify as a "party in interest" under section 1109(b) of the Code because the Director lacks "sufficient stake in the proceeding so as to require representation." (*Id.* ¶ 8 (quoting *In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d Cir. 1985)).)

The JPLs contend that the BVI Orders do not permit the Director to appear before this Court in a fiduciary capacity. (*Id.* ¶ 9.) The JPLs claim that they specifically stated that a director may appear in a personal capacity to assert a claim against the estate, but a director is not permitted to appear on behalf of a company adverse to the JPLs. (*Id.*) The JPLs also argue that a party-in-interest may not defensively assert third-party rights. (*Id.* ¶ 10.)

Turning to the Director's alleged injury, the JPLs dispute the Director's claim that recognition would impair his authority to do his job. (*Id.* ¶ 11.) The JPLs argue that the Director has not demonstrated that any "personal pecuniary, property, contractual, equitable, indemnity, insurance, or other individual right" would be impacted by recognition and dispute the authorities upon which the Director relies. (*Id.* ¶¶ 11-12.)

18

   b.   *Borrelli Cannot Establish That He Is Authorized to Represent the Majority of the Debtors*

Next, the JPLs contend that the Director also fails to establish that he is authorized to represent the Debtors and has acknowledged in deposition testimony that he was appointed only over the 25 Borrelli Debtors. (*Id.* ¶¶ 13-14.) Additionally, the JPLs claim that the Director has failed to demonstrate his appointment to 19 of the 25 Borrelli Debtors, as his appointment is dependent upon the appointment of unidentified individuals acting as attorneys-in-fact for Mr. Chen, and he has produced no evidence of the authority of the attorneys-in-fact. (*Id.* ¶ 15.)

The JPLs also claim that despite the Director's previous claims that he is the sole director of the Borrelli Debtors, he is unaware as to whether he is in fact the sole director of six (6) of the Borrelli Debtors. (*Id.* ¶ 19.) The Director has also stated that he has communicated with Mr. Chen's personal law firm. (*Id.* ¶ 20.)

   2.   The Objection Lacks Merit and Should be Overruled

   a.   *The JPLs Established Debtor Eligibility Under Section 109(a)*

The JPLs then turn to the Director's argument that the JPLs have failed to establish that the Debtors qualify under section 109(a) of the Code. The JPLs note that they have not yet been able to access the Debtors' funds and funded the S&C Retainer by a payment from the JPLs' law firm, Interpath. (*Id.* ¶¶ 24-25.) The JPLs argue that the funds are held in trust for the ratable benefit of the Debtors is not disqualifying and the Director cites to no authority that it is impermissible. (*Id.* ¶ 25.) The Debtors possess the right to enforce and collect the S&C Retainer if it needed to be returned, and Interpath would be required to seek reimbursement as a necessary liquidation expense, which demonstrates that the S&C Retainer is sufficient under section 109(a). (*Id.* ¶ 26.)

### b.   *The JPLs Met Their Debtor-By-Debtor Evidentiary Burden*

The JPLs next reaffirm their argument that they have met their debtor-by-debtor evidentiary burden, as the argument for the Debtors COMI is materially identical across all Debtors.  (*Id.* ¶ 27.)  The Director does not identify any deficiency for any individual Debtor, and the JPLs contend that they have successfully met their burden.  (*Id.* ¶¶ 28-29.)

### c.   *The BVI Proceedings Are "Foreign Proceedings"*

The JPLs recount their argument that the BVI Proceedings qualify as "foreign proceedings" and are (i) for the purpose of liquidation, (ii) conducted under a law relating to insolvency and are (iii) collective.  (*Id.* ¶¶ 30-39.)

For the purpose of liquidation requirement, the JPLs contend that the BVI Proceedings were brought under the BVI Insolvency Act, and their purpose is to maximize recoveries for the victims and distribute assets to defrauded investors and victims.  (*Id.* ¶¶ 32-33.)  Furthermore, the JPLs claim that the BVI Orders go beyond merely authorizing investigation and include explicit provisions permitting the JPLs to seek recognition "for the purposes of securing, realising and remitting assets" and exercise their powers abroad.  (*Id.* ¶ 35 (quoting BVI Orders ¶ 3(c)).)

Next, the JPLs claim the BVI Proceedings relate to insolvency or the adjustment of debt because the BVI Attorney General sought the appointment of liquidators, and the fact that the BVI Proceedings were initiated on public-interest grounds does not change that the law under which the proceedings were brought.  (*Id.* ¶ 36.)

Lastly, the JPLs repeat their argument that the BVI Proceedings are collective proceedings.  (*Id.* ¶ 38.)  The JPLs also seek to distinguish the *In re Global Cord Blood Corp.*, 2022 WL 17478530, (Bankr. S.D.N.Y. Dec. 5, 2022) decision, noting that the court found that

the JPLs attempts to avoid liquidation were "fatal" to the argument that they were for the purpose of liquidation.  (*Id.* ¶ 39.)

### d.  *The Relief Sought Is Not Manifestly Contrary to U.S. Public Policy*

The JPLs then briefly contend that recognition of the BVI Proceedings would not be manifestly contrary to U.S. public policy and claim the Director fails to establish that the initial *ex parte* nature of the JPLs' appointment offends U.S. public policy.  (*Id.* ¶¶ 40-43.)

### e.  *All Discretionary Relief Is Warranted*

The JPLs final contention is that the requested discretionary relief is warranted.  (*Id.* ¶ 44.)  The JPLs argue that the authority to realize assets is not an unusual request, and section 1521(a)(5) explicitly contemplates such a request.  (*Id.* ¶ 46.)  Additionally, the JPLs offer to provide this Court with the opportunity to review any orders entered by the BVI Court prior to recognition in order to determine whether they satisfy section 1521 or other applicable provisions of the Code.  (*Id.* ¶ 47.)

The JPLs again claim that the waiver of the 14-day stay is necessary to preserve assets and secure documents, and any delay may permit actors to dissipate the assets of the Debtors. (*Id.* ¶ 48.)

## II.   LEGAL STANDARD

### A.  Eligibility to File under Chapter 15

"Foreign debtors seeking relief under chapter 15 must satisfy the debtor eligibility requirements set forth in section 109(a) of the Bankruptcy Code." *In re Servicos de Petroleo Constellation S.A.*, 600 B.R. 237, 268 (Bankr. S.D.N.Y. 2019).  Section 109(a) provides that "only a person that resides or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor" under the Code.  11 U.S.C. § 109(a).  Where a foreign debtor does not have a place of business in the United States, the question often arises whether the foreign debtor has "property in the United States" as a condition precedent to eligibility under section 1517.  *See In re Cell C Proprietary Ltd.*, 571 B.R. 542, 550–52 (Bankr. S.D.N.Y. July 27, 2017).  Section 109(a) does not address how much property must be present or when or how long property must have a situs in the United States.  As this Court explained in *In re U.S. Steel Canada Inc.*, 571 B.R. 600 (Bankr. S.D.N.Y. July 31, 2017):

> Some courts, including this one, have held that an undrawn retainer in a United States bank account qualifies as property in satisfaction of section 109(a).  *See, e.g.*, *In re Octaviar Admin. Pty Ltd.*, 511 B.R. 361, 372–73 (Bankr. S.D.N.Y. 2014) ("There is a line of authority that supports the fact that prepetition deposits or retainers can supply 'property' sufficient to make a foreign debtor eligible to file in the United States.") (citing *In re Cenargo Int'l PLC*, 294 B.R. 571, 603 (Bankr. S.D.N.Y. 2003)); *see also In re Berau Capital Resources Pte Ltd.*, 540 B.R. 80, 82 (Bankr. S.D.N.Y. 2015) ("The Court is satisfied that the retainer provides a sufficient basis for eligibility in this case."); *In re Global Ocean Carriers Ltd.*, 251 B.R. 31, 39 (Bankr. D. Del. 2000) (holding that a $400,000 retainer paid on behalf of the debtors to bankruptcy counsel in that case qualifies as sufficient property in the United States under section 109(a)).
>
> Further, "[c]ontracts create property rights for the parties to the contract. A debtor's contract rights are intangible property of the debtor." *Berau Capital*, 540 B.R. at 83 (citing *U.S. Bank N.A. v. Am. Airlines, Inc.*, 485 B.R. 279, 295 (Bankr. S.D.N.Y. 2013), *aff'd*, 730 F.3d 88 (2d Cir. 2013)).  Those property rights can be and

22

> typically are tied to the location of the governing law of the contract. *See id*. at 84 (holding that the situs of intangible property rights governed by New York law was New York). Accordingly, debt subject to a New York governing law clause and a New York forum selection clause constitutes property in the United States. *See In re Inversora Eléctrica de Buenos Aires S.A.*, 560 B.R. 650, 655 (Bankr. S.D.N.Y. 2016) ("[D]ollar-denominated debt subject to New York governing law and a New York forum selection clause is independently sufficient to form the basis for jurisdiction.") (citation omitted); *Berau Capital*, 540 B.R. at 84 ("The Court concludes that the presence of the New York choice of law and forum selection clauses in the Berau indenture satisfies the section 109(a) 'property in the United States' eligibility requirement.") (footnote omitted).

*Id*. at 610; *see also In re Suntech Power Holdings Co.*, 520 B.R. 399, 412-13 (Bankr. S.D.N.Y. 2014) (concluding that establishment of a bank account in New York prior to commencement of the chapter 15 proceeding was sufficient to satisfy section 109(a)); *Servicos de Petroleo Constellation S.A.*, 600 B.R. at 269 ("This Court has previously held that a debtor's contract rights, including rights pursuant to debt that is governed by New York law and contains a forum-selection clause, constitute intangible property of the debtor in New York for purposes of section 109(a)."); *Berau Capital*, 540 B.R. at 84 ("The Court concludes that the presence of the New York choice of law and forum-selection clauses in the *Berau* indenture satisfies the section 109(a) 'property in the United States' eligibility requirement."); *In re Paper I Partners, L.P.*, 283 B.R. 661, 674 (Bankr. S.D.N.Y. 2002) (finding that debtors' maintenance of original business documents in the United States constituted "property in the United States" under section 109); *see also Wallach v. Nowak (In re Sherlock Homes of W.N.Y., Inc.)*, 246 B.R. 19, 23-24 (Bankr. W.D.N.Y. 2000) (stating that listing contracts between the debtor/broker dealer and prospective sellers bestowed contractual rights upon the parties and the contract rights were assets of the debtor); *Slater v. Town of Albion (In re Albion Disposal, Inc.)*, 217 B.R. 394, 407-08 (W.D.N.Y. 1997) (noting that "it is well-established . . . that a debtor's contractual rights—including rights arising under post-petition contracts—are included in the property of the estate").

23

### B.  Proper Venue for Chapter 15

28 U.S.C. § 1410 governs venue for cases under chapter 15, and provides that chapter 15 proceedings may be

> commenced in the district court of the United States for the district—(1) in which the debtor has its principal place of business or principal assets in the United States; (2) if the debtor does not have a place of business or assets in the United States, in which there is pending against the debtor an action or proceeding in a Federal or State court; or (3) in a case other than those specified in paragraph (1) or (2), in which venue will be consistent with the interests of justice and the convenience of the parties, having regard to the relief sought by the foreign representative.

28 U.S.C. § 1410.  Section 1410 establishes a "hierarchy of choices."  1 ALAN N. RESNICK & HENRY J. SOMMER, COLLIER ON BANKRUPTCY ¶ 4.04[1] (16th ed. 2014) ("Collier") (quoting H.R. REP. NO. 109–31, at 119 (2005)).  "If the debtor maintains its principal place of business or principal assets in the United States in a particular district, venue must be placed in that district; if not, we turn to subparagraph two.  If there is no litigation pending against the debtor in a district, subparagraph three then applies."  *Suntech Power Holdings*, 520 B.R. at 414.

### C.  Section 1517(a): Foreign Proceeding Recognition

In seeking recognition of a foreign proceeding under 11 U.S.C. § 1517, a party must make a showing that:

> (1) The foreign proceeding constitutes a foreign proceeding (either main or nonmain) as are defined under section 1502;
> (2) The foreign representative applying for recognition is a person or body; and
> (3) the petition meets the requirements of section 1515.

11 U.S.C. § 1517(a)(1)-(3).

1.   1517(a)(1): Foreign Main Proceeding Recognition

Section 1517(a) distinguishes between "foreign main" and "foreign nonmain" proceedings.  Section 1517(b) establishes conditions for recognition of each.  In relevant part, section 1517(b)(1) states that a foreign proceeding shall be recognized "as a foreign main proceeding if it is pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1517(b)(1).

a.   *"Foreign Proceeding"*

Section 101(23) defines a "foreign proceeding" as:

> [A] collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).

Based on this definition, courts have held that a "foreign proceeding" requires:

> (i) [the existence of] a proceeding;
> (ii) that is either judicial or administrative;
> (iii) that is collective in nature;
> (iv) that is in a foreign country;
> (v) that is authorized or conducted under a law related to insolvency or the
> adjustment of debts;
> (vi) in which the debtor's assets and affairs are subject to the control or
> supervision of a foreign court; and
> (vii) which proceeding is for the purpose of reorganization or liquidation.

*See Armada (Singapore) Pte Ltd. v. Shah* (*In re Ashapura Minechem Ltd.*), 480 B.R. 129, 136 (S.D.N.Y. 2012) (*citing In re Betcorp Ltd.*, 400 B.R. 266, 277 (Bankr. D. Nev. 2009)); *see also In re Overnight & Control Com'n of Avánzit, S.A.*, 385 B.R. 525, 532–36 (Bankr. S.D.N.Y 2008) (discussing factors).

25

b.   *Center of Main Interest ("COMI")*

While not defined by the Bankruptcy Code, the Code does presume "the debtor's registered office . . . to be the [debtor's COMI]." *Id.* § 1516(c); *see also In re Bear Stearns High–Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 130 (Bankr. S.D.N.Y. 2007), *aff'd,* 389 B.R. 325 (S.D.N.Y. 2008).  The presumption can be overcome when making this determination.  *See, e.g.*, *Id.* (stating that "the COMI presumption may be overcome particularly in the case of a 'letterbox' company not carrying out any business" in the country where its registered office is located) (internal citation omitted).  A debtor's COMI is determined based on the location of the debtor at the time of *filing* of the Chapter 15 petition, not the historic operational activity of the debtor.  *Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 137 (2d Cir. 2013).

In order to determine if the registered office presumption has been overcome, courts within this district have applied a list of non-exclusive factors (the "*SPhinX* factors") to determine a debtor's COMI.  Those factors are: (i) the location of the debtor's headquarters; (ii) the location of those who actually manage the debtor; (iii) the location of the debtor's primary assets; (iv) the location of the majority of the debtor's creditors or a majority of the creditors who would be affected by the case; and (v) the jurisdiction whose law would apply to most disputes. *In re Fairfield Sentry Ltd.*, 714 F.3d at 137 (citing *In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006)).  The Court in *SPhinX*, however, was clear to say that the factors should not be applied "mechanically": Rather, "they should be viewed in light of Chapter 15's emphasis on protecting the reasonable interests of parties in interest pursuant to fair procedures and the maximization of the debtor's value." *SphinX*, 351 B.R. at 117.

26

When determining the "location of those who actually manage the debtor," courts consider more than the location of the board of directors of the debtor in isolation, and their analysis of the location of management is somewhat flexible to reflect the realities of the management of a particular business.  For example,

> The headquarters of a corporate entity is more than the location of its board of directors.  The term headquarters, or head office, contemplates the place where the primary management of an entity's business is undertaken.  Management of a corporate entity includes all relevant business functions, such as the financial, administrative, marketing, information technology, investment, and legal functions.  Other functions may be relevant depending on the nature of the debtor's business.  Here, because [the debtor] operated as an insurance company, actuarial tasks, underwriting, and claims adjustment should be considered.

*In re British Am. Ins. Co. Ltd.*, 425 B.R. 884, 911 (Bankr. S.D. Fla. 2010).

In addition to these factors, courts can also examine what the reasonable expectation of third parties and creditors, and whether there is any "objective evidence that could provide interested parties with notice that a debtor's COMI was in a particular jurisdiction other than the place of its registered office."  *In re Olinda Star Ltd.*, 614 B.R. 28, 44 (Bankr. S.D.N.Y. 2020) (citing *Servicos de Petroleo Constellation*, 600 B.R. at 274).  While creditor support can also be considered, it "only goes so far . . . the bankruptcy court still has the duty to make its own COMI determination."  *In re Sunac China Holdings Ltd.*, 656 B.R. 715, 733 (Bankr. S.D.N.Y. 2024); *see also In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399, 420 (Bankr. S.D.N.Y. 2014) (finding a COMI despite creditor objections).

### 2.  Foreign Nonmain Proceeding

If the requirements for a foreign main proceeding are not met, a foreign proceeding can still be recognized as a nonmain proceeding if the debtor has an "establishment" in the country, defined as "any place of operations where the debtor carries out a nontransitory economic

27

activity.  11 U.S.C. § 1502.  This requires a showing that the location constitutes "a seat for local business activity of the debtor . . . more than mere incorporation and record-keeping and more than just the maintenance of property."  *In re Creative Fin. Ltd.*, 543 B.R. 498, 520 (Bankr. S.D.N.Y. 2016) (quoting *Bear Stearns*, 374 B.R. at 131).

### 3.   1517(a)(2): Foreign Representative Recognition

The term "foreign representative" is defined in section 101(24) of the Bankruptcy Code as follows:

> [A] person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

### 4.   1517(a)(3): Section 1515 Requirements

Per the Bankruptcy Code, an order of recognition shall be entered if the foreign representative meets the requirements of § 1515 in applying for recognition.  11 U.S.C. § 1517(a)(2)-(3).  The requirements provided by section 1515 include presentation of:

> (1) a certified copy of the decision commencing the foreign proceeding and appointing the foreign representative;
> (2) a certificate from the foreign court affirming the existence of the proceeding and appointment of the representative; or
> (3) in the absence of (1) or (2), evidence which the court deems sufficient to confirm the existence of the foreign proceeding and appointment of the foreign representative.

*Id.* § 1515(b).  The petition must also be accompanied by a statement identifying all known foreign proceedings with respect to the debtor, *id.* § 1515(c), and if applicable, a translation of the evidentiary materials into English, *id.* § 1515(d).  The Court is entitled to presume the authenticity of such documents filed in connection with a chapter 15 petition.  *Id.* § 1516(b).

28

### D. Automatic Relief Under Section 1520

Section 1520(a) of the Bankruptcy Code sets forth a series of statutory protections that automatically result from the recognition of a foreign main proceeding, including the application of the protection afforded by the automatic stay under section 362(a) of the Bankruptcy Code to the Debtor and its property located within the territorial jurisdiction of the United States. *See* 11 U.S.C. § 1520(a).

### E. Application of Section 1521 Stay to Debtor and Non-Debtors

There is not a reciprocal automatic stay placed on non-debtors in interest. Courts may grant relief under section 1521 of the Bankruptcy code, which allows a court to grant a foreign representative "any appropriate relief" where necessary to effectuate the purpose of chapter 15 and to protect the debtor's assets or creditors' interests. 11 U.S.C. § 1521. This includes section 1521(a)(7), which allows a court to "grant[] any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a)." *Id.* Courts have in turn utilized section 105(a) of the Bankruptcy Code, which allows for the court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [title 11]," 11 U.S.C. § 105(a), to apply the stay to third parties when "a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate." *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003).

### F. Limitations to Section 1521 Relief

In granting relief under section 1521, the court must also adhere to section 1522(a), which permits the Court to grant relief only if the interests of creditors are "sufficiently protected." "Sufficient protection" embodies "three basic principles: 'the just treatment of all holders of claims against the bankruptcy estate, the protection of U.S. claimants against prejudice

29

and inconvenience in the processing of claims in the [foreign] proceeding, and the distribution of proceeds of the [foreign] estate substantially in accordance with the order prescribed by U.S. law.'" *In re Odebrecht Engenharia e Construcao S.A. - Em Recuperacao Jud.*, 669 B.R. 457, 474 (Bankr. S.D.N.Y. 2025) (citing *In re Atlas Shipping A/S*, 404 B.R. 726, 741 (Bankr. S.D.N.Y. 2009)).

### G. Section 1506 Requirements

Any relief that is appropriate under sections 1507, 1517, 1520, or 1521 still must not run afoul of section 1506. Section 1506 precludes any relief requested under the provisions in Chapter 15 that is "manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506; *see In re Ephedra Prods. Liab. Litig.*, 349 B.R. 333, 336 (S.D.N.Y. 2006) (stating that the public policy exception embodied in section 1506 should be "narrowly interpreted, as the word 'manifestly' in international usage restricts the public policy exception to the most fundamental policies of the United States") (citing H.R.Rep. No. 109–31(I), at 109, *reprinted in* 2005 U.S.C.C.A.N. 88, 172) (grammatical changes omitted). The public policy exception should only be invoked "under exceptional circumstances concerning matters of fundamental importance for the United States." *In re Black Gold S.A.R.L.*, 635 B.R. 517, 528 (B.A.P. 9th Cir. 2022) (collecting cases). In evaluating this "narrow" exception, courts consider the whether the foreign "insolvency laws or procedural protections for creditors" are "repugnant" to U.S. law, not the "misconduct or bad faith" of petitioners. *Id.* at 530.

Congress provided courts additional instructions when interpreting the phrase "manifestly" in the context of section 1506, noting "[t]he word 'manifestly' in international usage restricts the public policy exception to the most fundamental policies of the United States," which is the standard meaning ascribed to the term "manifestly" in international law when

describing a nation's public policy.  H.R.Rep. No. 109–31(I), at 109, *as reprinted in* 2005

U.S.C.C.A.N. 88, 172; *Ephedra Prods. Liab. Litig.*, 349 B.R. at 336.  Moreover, the official

Guide to the Enactment of the Model Law on Cross–Border Insolvency expressly states that

> [t]he purpose of the expression "manifestly," used also in many other international legal texts as a qualifier of the expression "public policy," is to emphasize that public policy exceptions should be interpreted restrictively and that article 6 is only intended to be invoked under exceptional circumstances concerning matters of fundamental importance for the enacting State.

GUIDE TO ENACTMENT OF THE UNCITRAL MODEL LAW ON CROSS–BORDER INSOLVENCY, ¶ 89,

U.N. Doc A/CN.9/442 (1997).  The House Judiciary Committee noted that the Guide "should be

consulted for guidance as to the meaning and purpose of [Chapter 15's] provisions."  H.R.Rep.

No. 109–31(I), at 106 n. 101, *as reprinted in* 2005 U.S.C.C.A.N. 169 n. 101; *see also Ephedra*

*Prods. Liab. Litig.*, 349 B.R. at 336.

In order to determine if foreign proceedings are "manifestly contrary to the public policy

of the United States," federal courts have considered whether a foreign proceeding lacked certain

common elements of American practice.  *In re ARD Fin., S.A.*, No. 25-12794 (MG), 2026 WL

817458, at *17 (Bankr. S.D.N.Y. Mar. 25, 2026).  "As Judge Rakoff noted in *Ephedra.*, as early

as 1895, the Supreme Court held that a foreign judgment should generally be accorded comity if

'its proceedings are according to the course of a civilized jurisprudence,' *i.e.*, fair and impartial."

*Id.* at 336 (quoting *Hilton v. Guyot,* 159 U.S. 113, 205-06 (1895)); *see also In re Asbestos Corp.*

*Ltd.*, 2025 WL 3023332, at *7 (Bankr. S.D.N.Y. Oct. 29, 2025).  The Second Circuit reaffirmed

this approach in *Ackermann v. Levine*, 788 F.2d 830 (2d Cir. 1986), noting the "narrowness of

the public policy exception to enforcement . . . of foreign judgments," adding that, "[a]s Judge

Cardozo so lucidly observed: 'We are not so provincial as to say that every solution of a problem

is wrong because we deal with it otherwise at home.'" *Ackermann*, 788 F.2d at 842 (quoting

*Loucks v. Standard Oil Co. of New York*, 224 N.Y. 99, 111 (1918)).

## III.    DISCUSSION

### A.  Mr. Borrelli's Standing

The Director lacks standing to object to the Verified Petitions on behalf of the Foreign

Debtors.  Parties must meet the requirements of Article III to have standing in bankruptcy court.

*See In re SVB Fin. Grp.*, No. 23-10367 (MG), 2026 WL 1336033, at *17 (Bankr. S.D.N.Y. May

13, 2026).

The Director has submitted that the basis for his standing is that his authority is subject to

the BVI Orders and the Chapter 15 Cases will impair his ability to function in his capacity as a

director of the Borrelli Debtors.  (Objection ¶¶ 29-30.)  The Director also cites *In re Zhejiang

Topoint Photovoltaic Co., Ltd.*, 2015 WL 2260647 (Bankr. D.N.J. May 12, 2015) for the

proposition that parties who are "not otherwise being protected by the entities that maintain the

direct right" may participate.  (*Id.* ¶ 29.)  However, the BVI Orders displaced any authority the

Director had to object to this proceeding.  The BVI Orders state that "directors, former directors,

office holders, and former office holders . . . of [the company] . . . ***are replaced by the joint

provisional liquidators*** . . . ."  (*E.g.*, BVI Orders at 3 (emphasis added).)  The BVI Orders further

prohibit directors from "taking ***any action in relation to the Company's affairs*** without the prior

consent of the joint provisional liquidators."  *Id.* (emphasis added).

Additionally, the BVI Court has explicitly found that directors do not have the authority

to object before this Court.  (Second Skinner Decl. Ex. 21, 204:22-25 "[W]hat they can't do is to

say we are going to oppose this in the US.  We don't, because they don't have the power to do it.

They've got the power to come here and persuade this Court to vary its order, but that is it.")

The BVI Court further noted "put simply, [] the directors do not have the power to go in and

32

oppose the recognition proceedings in the U.S. if it is that they are doing so on behalf of the company. If they have some other kind of interest and they can come within Rule 1012, fine, but they can't do it on behalf of and in the name of the Company." *Id.* 208:13-18.

The Director, therefore, does not appear to have the authority to appear on behalf of the Debtors, and his claim that his right to operate the Debtors is infringed upon by the Chapter 15 Cases is inapposite. The Director lacks standing under BVI law to object to the Chapter 15 Cases and has failed to identify any legal right of his own that would entitle him to standing before this Court. (*See* Dunne Decl. Ex. 1, 86:8-87:21, 89:11-90:16.)

Accordingly, this Court determines that the Director **LACKS** standing.

## B. Eligibility Under Section 109(a) of the Code

The Debtors principal asset in the United States is the S&C Retainer, which is held in an S&C client trust account and each Debtor possesses a ratable interest in it. (VP ¶ 16.) The Director argues that the JPLs have failed to demonstrate that the funds contributed to the S&C Retainer were made by the Debtors and instead argues that the funds were sent by Interpath—the law firm for the JPLs. (Objection ¶ 33.)

Courts have consistently held that section 109(a) is a low bar for chapter 15 eligibility and a retainer with held in a client trust fund is sufficient to establish eligibility. *In re B.C.I. Finances Pty Ltd.*, 671 B.R. 669, 676 (Bankr. S.D.N.Y. 2025); *see also In re Iovate Health Scis. Int' Inc.*, 673 B.R. 516, 526-27 (Bankr. S.D.N.Y. 2025); *ARD Fin., S.A.*, 2026 WL 817458, at *18. The Debtors must have an interest in the funds to qualify under section 109(a), but "[i]t is not relevant who paid the retainer, so long as the retainer is meant to cover the fees of the attorneys for all the Debtors." *Glob. Ocean Carriers Ltd.*, 251 B.R. at 39; *see also In re JPA No. 111 Co., Ltd.*, No. 21-12075 (DSJ), 2022 WL 298428, at *6 (Bankr. S.D.N.Y. Feb. 1, 2022).

33

The JPLs note that although Interpath advanced the funds, the funds are held ratably on behalf of and for the benefit of the Debtors.

Accordingly, the S&C Retainer appears to satisfy section 109(a) of the Code.

**C. The BVI Proceedings are Foreign Main Proceedings**

1. The BVI Proceedings are "Foreign Proceedings" under section 1517(a)(1)

The Debtors have sufficiently demonstrated that the BVI Proceedings are "foreign main proceedings" within the meaning of section 1517 of the Code.  Section 1517 provides that "(1) such foreign proceeding . . . is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502; (2) the foreign representative applying for recognition is a person or body; and (3) the petition meets the requirements of section 1515."  11 U.S.C. § 1517(a).

Section 101(23) of the Code defines "foreign proceeding" as follows:

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).

The Director contends that the BVI Proceedings are not (i) for the purpose of reorganization or liquidation, (ii) conducted under a law relating to insolvency or adjustment of debt, and are not (iii) collective in nature.  (Objection ¶ 40.)

First, the BVI Proceedings are "for the purpose of liquidation" as they were commenced under the BVI Insolvency Act, and the BVI Attorney General preserves the Debtors assets and coordinate administration and recovery for creditors.  The Director points to *In re Global Cord Blood Corp.* as instructive by claiming that Judge Jones found that a Cayman proceeding was not "for the purpose of liquidation" when the JPLs in that case did not have the power to liquidate

34

the debtor company and instead were charged with merely preserving the corporation's assets and investigating company affairs.  *Id.* at \*10.  However, Judge Jones specifically noted the JPLs in that case were not pursuing a liquidation and hoped that they would never have to pursue one. *Id.* at \*11.  In the case at hand, the JPLs have explicitly sought to liquidate the Debtors and the BVI Originating Applications (Second Skinner Decl. Ex. 11) and *Skeleton Argument of the BVI Attorney General* (Chissick Decl. Ex. 4) provide evidence of that purpose.

Despite the Director's objection to the contrary, the BVI Proceedings are predicated on a "law relating to insolvency" as they were commenced under the BVI Insolvency Act.  The court in *Global Cord* noted that the test whether a proceeding is "under a law relating to insolvency" is not whether the proceeding "concerns insolvency or adjustment of debtors" but rather if the proceeding "is being brought under a 'law' that 'relat[es] to' insolvency or adjustment of debt." *Glob. Cord.*, 2022 WL 17478530, at \*9 (alterations in original).  Under this permissive standard, a proceeding need only possess a "unified structure of the external administration provisions" to constitute a law that relates to insolvency.  *Ashapura*, 480 B.R. at 138 (quoting *Betcorp*, 400 B.R. at 282).  There is no doubt that the BVI Insolvency Act meets this permissive standard and constitutes a law "relating to insolvency."

Lastly, the BVI Proceedings are "collective in nature."  The JPLs submit that the BVI Proceedings (i) centralize control of the Debtors' affairs under court supervision, (ii) preserve the Debtors' assets, (iii) facilitate investigation of the Debtors' activities and transactions and (iv) enable coordinated administration and recovery.  (Chissick Decl. ¶ 58.)  Additionally, the BVI Proceedings were not commenced by a single creditor pursuing its own recovery, but rather by the BVI Attorney General with the goal of benefiting all who may have claims against the estate.

35

Accordingly, the BVI Proceedings are collective in nature, and the Court finds that the BVI Proceedings qualify as "foreign proceedings."

2. The Debtors' COMI is the BVI

The Debtors' COMI is located in the BVI. The JPLs have demonstrated that each of the Debtors has a registered office located in the BVI and each is entitled to the presumption under section 1516(c) that the location of their registered office is also its center of main interest. The Director does not meaningfully dispute that the Debtors' COMI is in the BVI and instead focus his objection on whether the JPLs have met their evidentiary burden for each Debtor. The Director does not offer evidence rebutting the presumption that the Debtors' COMI is in the BVI or otherwise offer evidence to the contrary.

Therefore, the JPLs have demonstrated by a preponderance of the evidence that the Debtors' COMI is the BVI, and that the Court recognizes the BVI Proceedings as "foreign main proceedings" pursuant to section 1502(4) and 1517(b)(1) of the Code.

**D. The Public Policy Exception Does Not Bar Recognition**

The Director contends that the BVI Proceedings violate the public policy of the United States. (Objection ¶¶ 52-55.) This Court has noted that the public-policy exception is an "exacting standard," *ARD Fin., S.A.*, 2026 WL 817458, at *19, and an objecting party must demonstrate the existence of "exceptional circumstances concerning matters of fundamental importance for the United States." *Id.* (quoting *Black Gold S.A.R.L.*, 635 B.R. at 528).

The Director focuses his objection on alleged hearings that took place before the BVI Court of which the Director and Borrelli Debtors were not provided notice. The Director does not, however, contend that the BVI Insolvency Act violates public policy as a general matter. (Objection ¶ 55.)

36

The Director's argument fails to demonstrate that the BVI Proceedings are fundamentally contrary to U.S. public policy. Succeeding on a public policy argument in an attempt to deny recognition is a high bar. Courts have noted that "even the absence of certain procedural or constitutional rights will not itself be a bar under [Section] 1506." *In re PT Bakrie Telecom Tbk*, 628 B.R. 859, 871 (Bankr. S.D.N.Y. 2021) (quoting *In re OAS S.A.*, 533 B.R. 83, 104 (Bankr. S.D.N.Y. 2015)). Instead, the purported lack of notice to Mr. Borrelli does not appear to violate U.S. public policy.

The *ex parte* nature of the appointment of the JPLs is not entirely inconsistent with U.S. public policy, nor does it jeopardize the fairness and impartiality of the BVI Proceedings as a whole. The Director and Borrelli Debtors have participated in hearings before the BVI Court, and the Director has admitted he does not contend that the BVI Insolvency Act, in general, is procedurally unfair.

The BVI Proceedings also appear to advance U.S. public policy interests insofar as they assist U.S. regulatory agencies in their investigation and winding up of an alleged transnational criminal organization. Therefore, recognition of the BVI Proceedings would not be manifestly contrary to U.S. public policy.

### E. The Debtors Have Satisfied the Additional Requirements of Section 1515 and Rule 1007

The Debtors have satisfied section 1517(a) of the Code, which requires that the foreign representative that seeks recognition to be a "person or body." *See* 11 U.S.C. § 1517(a)(2). The foreign representative is a "person" as defined by section 101(41) of the Code. The JPLs, acting as foreign representatives, have also satisfied section 1515 of the Code by (i) filing a petition for recognition, (ii) accompanying the petition with a certified copy of the BVI Orders, which demonstrates the commencement of the BVI Proceedings and the appointment of the JPLs as

foreign representative, and (iii) the JPLs have identified the BVI Proceedings as the only "foreign proceeding" with respect to the Debtors.

Accordingly, the JPLs have demonstrated that the (i) the BVI Proceedings are foreign main proceedings and (ii) the Court recognizes JPLs as the Debtors' foreign representatives.

### F. Discretionary Relief

"The grant of additional, discretionary relief under Chapter 15 is largely dependent upon principles of comity. . . ." *In re Agrokor d.d.*, 591 B.R. 163, 187 (Bankr. S.D.N.Y. 2018). Following the recognition of a case as a foreign main proceeding, "Chapter 15 specifically contemplates that the court will exercise its discretion consistent with principles of comity." *Id.* at 187-88. When granting relief under section 1521, the Court must also adhere to section 1522(a), which permits the Court to grant relief only if the interests of creditors are "sufficiently protected." *ARD Fin.*, 2026 WL 817458, at *16.

With respect to the JPLs' request to realize assets, it is clear that section 1521(a)(5) permits the Court to enable the JPLs to realize the Debtors' assets within the territorial jurisdiction of the United States. In *In re Atlas Shipping A/S*, this Court described "sufficient protection" as embodying three basic principles: "the just treatment of all holders of claims against the bankruptcy estate, the protection of U.S. claimants against prejudice and inconvenience in the processing of claims in the [foreign] proceeding, and the distribution of proceeds of the [foreign] estate substantially in accordance with the order prescribed by U.S. law." 404 B.R. at 740 (quoting *In re Artimm, S.r.L.*, 335 B.R. 149, 160 (Bankr. C.D. Cal. 2005)). The BVI Proceedings meet this standard. The proceedings were initiated by the BVI Attorney General in the public interest, seeks to distribute proceeds to victims and claimants, in a manner broadly consistent with U.S. law.

Accordingly, the Court **GRANTS** the discretionary relief as set forth in the Order that will be entered.

### G.  Waiver of the 14-day Stay of Effectiveness

This Court finds that the relief requested by the JPLs is appropriate, and that there is cause to lift the stay so that the JPLs may immediately engage in the implementation of the restructuring steps.  The JPLs have put forth evidence indicating that Mr. Chen and his allies seek to interfere with the Debtors' assets and a delay in the effectiveness of relief would provide additional time for Mr. Chen to obfuscate the Debtors' assets.  Therefore, the Court **GRANTS** the waiver of the 14-day stay of effectiveness.

### IV.    CONCLUSION

For the above-mentioned reasons the Court **GRANTS** the Verified Petition and recognizes the BVI Proceeding of each of the Debtors as a foreign main proceeding.

A separate order granting recognition as a foreign main proceeding, finding that the JPLs are foreign representatives, and granting appropriate relief will be entered.

Dated:    June 11, 2026
          New York, New York

*Martin Glenn*
MARTIN GLENN
Chief United States Bankruptcy Judge