Matthew L. Schwartz
Peter M. Skinner
Gordon Z. Novod
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards
New York, New York 10001
Telephone: (212) 446-2300

Laura Femino (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
401 E Las Olas Boulevard
Fort Lauderdale, Florida 33301
Telephone: (954) 377-0716

Dan G. Boyle
**BOIES SCHILLER FLEXNER LLP**
2029 Century Park East
Los Angeles, California 90067
Telephone: (213) 995-5732

*Counsel to Cosimo Borrelli in his
capacity as the sole director of each
of the Borrelli Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Re ECF No. 71

In re:

PRINCE GLOBAL HOLDINGS LIMITED *et al.*,[1]

Debtors in Foreign Proceedings.

Chapter 15
Case No. 26-10769 (MG)
(Jointly Administered)

## COSIMO BORRELLI'S LIMITED OBJECTION TO THE REVISED PROPOSED RECOGNITION ORDER

---

[1]     The Debtors in these Chapter 15 Cases are incorporated in the British Virgin Islands and maintain their registered address at Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands, VG1110. A complete list of the Debtors and their company numbers may be found at ECF No. 2-1. Notwithstanding the case caption, Cosimo Borrelli, in his capacity as the sole director of each of the Borrelli Debtors, disputes that each of these entities is the subject of a "foreign proceeding" within the meaning of 11 U.S.C. § 101(23).

i

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................................ **iii**

**OBJECTION** ...................................................................................................................... **2**

    I.      Paragraph 21 Should Be Stricken Because It Is an Overbroad Anti-Representation, Non-Debtor, and "Prince Group" Injunction. ................................... 2

    II.    Paragraph 17 Should Not Conflate the JPLs with the Debtors, or Impair the Debtors' BVI Law Right to Legal Counsel. ............................................................... 5

    III.   Paragraph 18 Should Be Made Expressly Subject to Section 363 and Further Order of This Court. ............................................................................................... 6

    IV.   Paragraph 19 Should Separate Discovery from Turnover and Preserve Notice and Objection Rights. ............................................................................................... 6

    V.    Paragraph 20 Should Be Removed as a De Facto Full Force and Effect Order. ........ 10

**CONCLUSION** .............................................................................................................. **13**

## TABLE OF AUTHORITIES

**Cases**

*In re AJW Offshore, Ltd.*,
488 B.R. 551 (Bankr. E.D.N.Y. 2013) ................................................................................ 10

*In re AOG Ent., Inc.*,
558 B.R. 98 (Bankr. S.D.N.Y. 2016) .................................................................................... 7

*In re ARD Fin., S.A.*,
No. 25-12794 (MG), 2026 WL 817458 (Bankr. S.D.N.Y. Mar. 25, 2026) ......................... 10

*In re Cozumel Caribe, S.A. de C.V.*,
482 B.R. 96 (Bankr. S.D.N.Y. 2012) .................................................................................... 3

*In re Cozumel Caribe, S.A. de C.V.*,
508 B.R. 330 (Bankr. S.D.N.Y. 2014) ................................................................................ 10

*In re Fairfield Sentry Ltd.*,
539 B.R. 658 (Bankr. S.D.N.Y. 2015) .................................................................................. 6

*In re Giftcraft Ltd.*,
672 B.R. 173 (Bankr. S.D.N.Y. 2025) ............................................................................... 6, 9

*In re Glitnir Banki HF.*,
No. 08–14757 (SMB), 2011 WL 3652764 (Bankr. S.D.N.Y. Aug. 19, 2011) ...................... 7

*In re Irish Bank Resol. Corp.*,
559 B.R. 627 (Bankr. D. Del. 2016) ..................................................................................... 9

*In re Markus*,
610 B.R. 64 (Bankr. S.D.N.Y. 2019) .................................................................................. 10

*In re Ocean Rig UDW Inc.*,
570 B.R. 687 (Bankr. S.D.N.Y. 2017) .................................................................................. 1

*In re Odebrecht Engenharia e Construção S.A. - Em Recuperação Judicial*,
669 B.R. 457 (Bankr. S.D.N.Y. 2025) ................................................................................ 11

*In re Rede Energia*,
515 B.R. 69 (Bankr. S.D.N.Y. 2014) .................................................................................. 10

*In re Serviços de Petróleo Constellation S.A.*,
600 B.R. 237 (Bankr. S.D.N.Y. 2019) .................................................................................. 1

*In re Three Arrows Cap., Ltd.*,
647 B.R. 440 (Bankr. S.D.N.Y. 2022) .................................................................................. 8

*Krys v. Farnum Place, LLC (In re Fairfield Sentry Ltd.)*,
768 F.3d 239 (2d Cir. 2014) ................................................................................................. 6

**Statutes**

11 U.S.C. § 1501 .................................................................................................................... 4

11 U.S.C. § 1507 .................................................................................................................. 11

11 U.S.C. § 1519 .................................................................................................................... 9

11 U.S.C. § 1520 ................................................................................................................. 6, 9

11 U.S.C. § 1521 ................................................................................................................. 7, 9

11 U.S.C. § 1522 .................................................................................................................... 7

11 U.S.C. § 363 ..................................................................................................................... 6

11 U.S.C. § 542 ..................................................................................................................... 9

**Rules**

Fed. R. Bankr. P. 2004 ........................................................................................................ 7, 9

Fed. R. Civ. P. 45 ................................................................................................................ 7, 9

Cosimo Borrelli, in his capacity as the sole director of twenty-five of the Debtors,[2] by and through his undersigned counsel, hereby submits this limited objection (the "**Objection**") to the Revised Proposed Order Granting Recognition of Foreign Main Proceedings and Related Relief [ECF No. 71-1] (the "**JPL Proposed Order**") filed by Paul Pretlove, David Standish, and James Drury as the putative foreign representatives (the "**Joint Provisional Liquidators**" or "**JPLs**") of the ongoing provisional proceedings (the "**BVI Proceedings**") pending in the High Court of Justice, Commercial Division, of the British Virgin Islands (the "**BVI Court**") with respect to each of Prince Global Holdings Limited and 29 of its affiliates (together, the "**Debtors**"), and proposes that the Court enter the alternative proposed order attached hereto as Exhibit A (the "**Borrelli Proposed Order**").[3]

---

[2] Mr. Borrelli is the sole director of each of Prince Global Holdings Limited, Auspicious Tycoon Limited, Bright Team Global Limited, Delightful Thrive Limited, Even Sincerity Limited, Fulam Investment Limited, Giant Victory Holdings Limited, Golden Ascend International Limited, Harmonic State Limited, Luminous Glow Limited, Mighty Divine Limited, Noble Title Limited, Oriental Charm Holdings Investment Limited, Pacific Charm Holdings Investment Limited, Praise Marble Limited, Prince Global Group Limited, Respectful Steed Limited, Retain Prosper Limited, Simply Advanced Limited, Southern Heritage Limited, Star Merit Global Limited, Starry Bloom Limited, Sure Tycoon Limited, Towards Sunshine Limited, and United Riches Global Limited (together, the "**Borrelli Debtors**").

[3] On June 9, 2026, the Court directed written objections to the form of the Revised Proposed Order [ECF No. 71-1] by noon on Friday, June 12, 2026. June 9 Hr'g Tr. at 76:19–77:7. On June 11, 2026, after the recognition hearing and before expiration of the Court's Friday noon deadline for objections to the form of order, the Court issued its Memorandum Opinion determining that Mr. Borrelli lacks standing and granting recognition and related relief to be set forth in a separate order. Mem. Op. [ECF No. 82] at 32–33, 38–39. The Memorandum Opinion includes a waiver of the 14-day stay of effectiveness proposed in paragraph 27 of the JPL Proposed Order and otherwise applicable pursuant to Bankruptcy Rules 7062 and 1018. *Id.* at 39. In light of that entry, Mr. Borrelli omits from this supplemental briefing his arguments over the propriety of the stay waiver and respectfully preserves all rights to seek review of the standing and recognition rulings, various fact-findings in the Memorandum Opinion, waiver of the 14-day stay, and all other accompanying relief.

Further, Mr. Borrelli respectfully requests that the Court consider his objections and arguments below regardless of its conclusions as to his standing, as the Court maintains an independent duty to address the propriety of the JPLs' proposed order. *In re Serviços de Petróleo Constellation S.A.*, 600 B.R. 237, 246 (Bankr. S.D.N.Y. 2019) (explaining that the court is "require[d] . . . to analyze whether a proceeding should be . . . recognized at all, *regardless of whether objections have been raised*"); *In re Ocean Rig UDW Inc.*, 570 B.R. 687, 692 (Bankr. S.D.N.Y. 2017) ("Because this Court nevertheless must find that the [foreign representatives] have established that recognition is proper in order to grant the recognition motion, the

1

**OBJECTION**

### I.   Paragraph 21 Should Be Stricken Because It Is an Overbroad Anti-Representation, Non-Debtor, and "Prince Group" Injunction.

1.      Paragraph 21 enjoins all persons and entities subject to this Court's jurisdiction from taking actions, including extraterritorial actions, in the name or on behalf of the Debtors, the Debtors' controlled subsidiaries, or the "Prince Group," "Prince Group Holdings," "Prince Holdings Group," "Prince Global Holdings," or similar designations, absent prior authorization of the JPLs or prior order of this Court or the BVI Court.

2.      As this Court is aware from prior filings, Boies Schiller Flexner LLP ("**BSF**") has filed a claim in the EDNY civil forfeiture proceeding on behalf of non-Debtor Prince Holding Group, which is identified in that action as a Cambodian registered entity.  As proposed, this paragraph would derail that civil forfeiture proceeding through a sweeping, de facto injunction with no evidentiary support and no attempt to satisfy the standards for an injunction as required by section 1521(e) of the Bankruptcy Code.  *See* 11 U.S.C. § 1521(e). The relief also risks running afoul of section 1521(d) of the Bankruptcy Code, which provides that "[t]he court may not enjoin a police or regulatory act of a governmental unit, including a criminal action or proceeding, under this section."  11 U.S.C. § 1521(d); *see also* 11 U.S.C. § 362(b)(4).  Paragraph 21 also trespasses on the proper role of Judge Kovner in the Eastern District of New York to decide which parties in proceedings before her have sufficiently definite form as a matter of applicable corporate law to have standing.  While the JPLs may believe the name "Prince Group Holdings" is not sufficiently definite, there is no evidence in the record on this point, it is not a bankruptcy law question, and the JPLs have put forth no viable *bankruptcy law* theory to justify the issuance of such relief.  *See*

---

Court will treat [party's o]bjection as if she had established her standing to object to recognition and rule on her arguments on the merits.").

June 2, 2026 Letter to Chambers at 1–2. As such, this Court has neither an evidentiary basis nor the jurisdiction to tell the EDNY Court how to decide the questions before it—which would be the effect of Paragraph 21 as proposed, by displacing a pending non-debtor claimant in favor of the JPLs.

3.      Subparagraph (b) of paragraph 21 is further prohibited because it extends this improper relief even to non-debtor subsidiaries that are not in liquidation proceedings in the BVI or any other jurisdiction. Though the JPLs did not brief this request, their remarks at the recognition hearing indicate they are asking this Court to extend the automatic stay pursuant to section 105 of the Code. June 9 Hr'g Tr. at 19:17–20:5. They have made no attempt to justify such extraordinary relief or the section 105(a) standard for a stay extension to third parties that would apply. *See In re ARD Finance, S.A.*, No. 25-12794 (MG), 2026 WL 817458, at *16 (Bankr. S.D.N.Y. Mar. 25, 2026) (extending the ch. 15 stay to non-debtors must be separately justified under section 1521 and, where section 105 is invoked, under the standard for third-party stay relief; there is no reciprocal automatic stay for non-debtors in Chapter 15); *see In re Cozumel Caribe, S.A. de C.V.*, 482 B.R. 96, 112–13 & nn.12–13 (Bankr. S.D.N.Y. 2012) (explaining that protection of non-debtor affiliate property may be available under § 1521(a)(7), if at all, only where affected creditors are sufficiently protected under § 1522(a)).

4.      <u>Additionally</u>, for the reasons set forth infra, this relief materially trespasses on the Debtors' right to legal counsel as a matter of BVI law. *See infra* Section II. The Debtors are opposing the JPLs on various fronts in the BVI Court and are entitled to do so as a matter of BVI law. *See* Chissick Dep. Tr. at 23:24–24:19 (directors remain directors and are empowered to retain legal counsel "to contest the originating application and to seek discharge of variation of the BVI orders."). That BSF, Campbells, or the Debtors' or other counsel would be constrained in

3

representing their own clients under subparagraph (a) of this provision renders it far outside the scope of available chapter 15 relief and a serious threat to the principles of comity motivating chapter 15 in the first place. *See* 11 U.S.C. § 1501(a)(1), (3)–(4).

5.      <u>Furthermore</u>, proposed paragraph 21 is prohibited under chapter 15 because it purports to constrain action, including the retention of legal counsel, extraterritorially. *See* JPL Proposed Order ¶ 21 (restraining actions "within or outside of the United States"). The Borrelli Debtors are presently litigating in the BVI whether the provisional liquidation proceedings were properly authorized in the first instance. While that is ongoing, it is up to each other jurisdiction globally to decide whether it is willing to tolerate the suspect foundations and the significant due process failings that have marred those proceedings since the *ex parte* application that launched them. *See* Corrected Objection [ECF No. 68] ¶¶ 4–17. It is not for this Court to decide for England and Wales whether they will constrain Debtor action in the U.K.; it is for England and Wales to decide that.[4]

6.      For all these reasons, the relief sought in paragraph 21 is prohibited under chapter 15 and, as counsel to the JPLs have acknowledged, is wholly without precedent. June 9 Hr'g Tr. at 19:21–22 (MR. DIETDERICH: "I can't point you to a case that has given the relief that we're requesting."), 22:11–12 (MR. DIETDERICH: "Now, again, Your Honor, there is no precedent for this relief.").

7.      If this Court does not remove paragraph 21 in its entirety, it should require a carveout that preserves continuation of the civil forfeiture proceeding.

---

[4]     Paragraph 21 of the JPL Proposed Order would allow the BVI Court to overcome this prohibition. But if this order were entered as proposed, the Debtors would not be able to seek such relief from the BVI Court in the first place, as paragraph 21 would prohibit such an application.

**II.    Paragraph 17 Should Not Conflate the JPLs with the Debtors, or Impair the Debtors' BVI Law Right to Legal Counsel.**

8.     Paragraph 17 of the JPL Proposed Order conflates the JPLs with the Debtors.  They are not the same party.  They are adverse parties.  For the avoidance of all doubt: Walkers and Sullivan & Cromwell ("**S&C**") serve as counsel to the JPLs; Campbells and BSF serve as counsel to the Borrelli Debtors.  *See* Chissick Dep. Tr. at 12:2–21, 54:3–18; Pretlove Dep. Tr. at 10:7–16.

9.     These cases represent an unusual fact pattern where the JPLs are hostile to the Debtors, rather than appointed by the Debtors.  In this case, S&C does not represent the Debtors.  The Debtors are adverse to S&C's clients in multiple jurisdictions.  As such, paragraph 17 of the JPL Proposed Order, which would allow S&C to act for an adverse party in these proceedings, is deeply improper.

10.     Similarly, the recognition order should not purport to override the Debtors' BVI law rights to legal counsel.  The directors' residuary powers include the power to retain counsel to represent the companies in opposing the appointment of the JPLs, which power the companies have exercised by retaining, among other firms, Campbells and BSF.  *See* Chissick Dep. Tr. at 23:24–24:19, 25:18–22 (agreeing that the companies have the power to retain law firms like Campbells).  The JPL Proposed Order risks impeding Mr. Borrelli's and the Debtors' rights to retain legal counsel.  *See* JPL Proposed Order ¶ 20 (which could be used to erroneously give legal effect to the Penal Notice language), ¶ 21 (which appears to prevent the Debtors from appearing in court through their own legal counsel worldwide). The Borrelli Proposed Order suggests protective language that goes no further than protecting the Debtors' BVI law rights to legal counsel, only insofar as they exist under BVI law.

5

**III.     Paragraph 18 Should Be Made Expressly Subject to Section 363 and Further Order of This Court.**

11.     Pursuant to section 1520(a)(2) of the Bankruptcy Code, upon recognition, section 363 applies to "a transfer of an interest of the debtor in property that is within the territorial jurisdiction of the United States to the same extent that the sections would apply to property of an estate."  11 U.S.C. § 1520(a)(2).  In turn, section 363(b)(1) provides that a debtor "may use, sell, or lease, other than in the ordinary course of business, property of the estate" only after notice and a hearing.  *See* 11 U.S.C. § 363(b)(1).

12.     Section 363 applies whether the entered recognition order states as much or not. *See In re Fairfield Sentry Ltd.*, 539 B.R. 658, 673 (Bankr. S.D.N.Y. 2015) (foreign representative "can no more 'opt out' of § 363 than can a debtor in possession under chapter 11 or a trustee under chapter 7. . . . because § 363 applies like it or not."); *In re Giftcraft Ltd.*, 672 B.R. 173, 177 (Bankr. S.D.N.Y. 2025) ("Second Circuit precedent makes clear that sales of assets located in the United States require the [c]hapter 15 court to determine whether the sale of U.S. assets satisfies section 363(b) of the Bankruptcy Code") (citing *Krys v. Farnum Place, LLC (In re Fairfield Sentry Ltd.)*, 768 F.3d 239, 244–47 (2d Cir. 2014)).  Nonetheless, for clarity and the avoidance of doubt, Mr. Borrelli requests that the asset realization powers set forth in paragraph 18 of the JPL Proposed Order be made expressly subject to section 363, as set forth in the Borrelli Proposed Order, consistent with this Court's remarks at the hearing.  June 9 Hr'g Tr. at 38:4–7 (observing that even if the JPLs were able to locate a U.S. asset and take possession, custody, or control, "they can't liquidate it without coming back to the Court and obtaining that additional relief.").

**IV.     Paragraph 19 Should Separate Discovery from Turnover and Preserve Notice and Objection Rights.**

13.     The JPL Proposed Order asks this Court to pre-authorize unlimited blanket discovery as follows:

> The [JPLs] are authorized, by subpoena or otherwise and without further order of this Court, to conduct discovery, issue subpoenas, examine witnesses, take evidence, conduct examinations under Bankruptcy Rule 2004, and seek production of documents and information concerning the assets, affairs, rights, obligations, or liabilities of the Debtors, including any matter that may affect the administration of the Debtors' estates in the BVI Proceedings or these Chapter 15 Cases, pursuant to section 1521(a)(4) of the Bankruptcy Code and Bankruptcy Rules 2004 and 9016.

JPL Proposed Order ¶ 19.

14.     This kind of blanket authorization is not permitted in chapter 15.  In order to authorize discovery under section 1521(a)(4) of the Bankruptcy Code (or under Rule 2004, as imported by 1521(a)(4)),[5] the Court must first be satisfied that, under section 1521(a), such discovery is both "necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of the creditors[.]"  11 U.S.C. § 1521(a).  It must also be satisfied that "the interests of the creditors and other interested [parties], including the debtor, are sufficiently protected."  11 U.S.C. § 1522(a).  The party seeking discovery "has the burden to show good cause for the examination it seeks, and relief lies within the sound discretion of the Bankruptcy Court." *In re AOG Ent., Inc.*, 558 B.R. 98, 108 (Bankr. S.D.N.Y. 2016).  Good cause is shown "by establishing that . . . denial of such request would cause the examiner undue hardship or injustice." *Id.* at 109 (citation omitted).  In deciding whether to grant such a request, the Court must "balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination." *Id.*

---

[5] *See In re Glitnir Banki HF.*, No. 08–14757 (SMB), 2011 WL 3652764, at *6 (Bankr. S.D.N.Y. Aug. 19, 2011) ("Section 1521(a)(4) expressly governs the [f]oreign [r]epresentative's discovery rights.  Bankruptcy Rule 2004 complements those rights, and may provide a procedural mechanism to obtain a subpoena under Rule 9016 of the Federal Rules of Bankruptcy Procedure, but cannot expand those rights beyond what the statute and the order issued pursuant to the statute permit."); Fed. R. Bankr. P. 2004(c), 9016; Fed. R. Civ. P. 45(a)(4).

15.     This Court in prior cases has applied this balancing test. *See, e.g.*, *In re Three Arrows Cap., Ltd.*, 647 B.R. 440, 447 (Bankr. S.D.N.Y. 2022) (noting that the court authorized specific discovery requests because "[a]t the hearing, the [c]ourt was satisfied that the scope of the subpoenas and relief sought in the [s]ubpoena [m]otion was appropriate under the relevant Bankruptcy Code provisions and Bankruptcy Rules"). It should so again here.

16.     The Court also should be satisfied that any subpoenas issued under its authority are enforceable:

> THE COURT: Basically, I'm not satisfied with the evidentiary showing that you've made so far that would lead me to conclude that if I authorize the issuance of a subpoena, particularly by alternative service by Twitter, that that's something other -- that that's an enforceable order that the Court is issuing.
>
> . . .
>
> And look, the issue from my standpoint is would a subpoena under Rule 45 of the Federal Rules of Civil Procedure be enforceable? The Second Circuit ruled, "A district court, however, must have personal jurisdiction over a nonparty in order to compel it to comply with a valid discovery request under Federal Rule of Civil Procedure 45." That's a quote from *Gucci America, Inc. v. Weixing Li*, 768 F.3d 122 at page 141 (2d Cir. 2014). So that's exactly why I'm focusing on this issue.
>
> . . .
>
> And so if the Second Circuit says that a district court, and that would apply to a bankruptcy court as well, must have personal jurisdiction over a nonparty in order to compel it to comply with a valid discovery request under Federal Rule of Civil Procedure 45, well, that's what I'm bound by.

Dec. 2, 2022 Hr'g Tr. at 43:1–9, 44:1–5, 45:1–5, *In re Three Arrows Capital, Ltd.*, No. 22-10920 (MG), ECF No. 77 (Bankr. S.D.N.Y.).

17.     The Court must determine itself whether it has personal jurisdiction over the targets of discovery subpoenas. It cannot delegate that inquiry to the JPLs in their sole discretion to determine without objection or further oversight, as the JPL Proposed Order would have it do. JPL

8

Proposed Order ¶ 19 (purporting to limit the reach of discovery to those over whom the Court has jurisdiction, but leaving it to the JPLs to determine who qualifies).

18.    Paragraph 19 should also make clear that notice is required for third-party discovery. Rule 2004 compels attendance and production through Rule 9016, and Rule 9016 makes Federal Rule of Civil Procedure 45 applicable in bankruptcy cases. Fed. R. Bankr. P. 2004(c), 9016. Rule 45, in turn, requires that before a subpoena commanding document production is served on the person to whom it is directed, "a notice and a copy of the subpoena must be served on each party." Fed. R. Civ. P. 45(a)(4). The same result follows under sections 1519 and 1521: section 1519 authorizes discovery under section 1521(a)(4), and section 1521(a)(4) authorizes examination, evidence-taking, and delivery of information, but neither statute displaces the Bankruptcy Rules governing subpoenas. *See* 11 U.S.C. §§ 1519(a)(3), 1521(a)(4); *Glitnir Banki HF.*, 2011 WL 3652764, at *6.

19.    Finally, paragraph 19 should distinguish between extraterritorial discovery and extraterritorial asset seizure. Paragraph 19 of the JPL Proposed Order asks this Court to pre-authorize turnover of Debtor property, including that located outside the territorial jurisdiction of the United States. Where Debtor property is concerned, the territorial limitations of chapter 15 are clear. *See* 11 U.S.C. §§ 1520(a)(2), 1521(a)(5), 1521(b), 542(a), (e). That section 542 may be used to aid discovery purposes is no basis for upending those clear limitations. Section 542 is still, fundamentally, a property-based provision, and case law supporting extraterritorial discovery cannot be imported as a basis for, e.g., seizing Debtor funds in Hong Kong under the aegis of a U.S. Court order. *See In re Irish Bank Resol. Corp.*, 559 B.R. 627, 644 (Bankr. D. Del. 2016) ("the drafters of § 542(a) made it clear that the turnover obligation applies to property of the estate" and that "the equivalent term of art used in [c]hapter 15 is the property of the debtor 'within the

9

territorial jurisdiction of the United States'"); *In re AJW Offshore, Ltd.*, 488 B.R. 551, 564 (Bankr. E.D.N.Y. 2013) (limiting §542 turnover to assets located within the territorial jurisdiction of the United States); *In re Markus*, 610 B.R. 64, 86–87 (Bankr. S.D.N.Y. 2019), *aff'd*, 620 B.R. 31 (S.D.N.Y. 2020) (allowing turnover of debtor funds only that were already in the United States).

### V.    Paragraph 20 Should Be Removed as a De Facto Full Force and Effect Order.

20.    Paragraph 20 of the JPL Revised Proposed Order provides that "the BVI Orders, and any other orders entered by the BVI Court in the BVI Proceedings as of the date of this Order shall be and hereby are granted comity and given full force and effect in the United States." JPL Proposed Order ¶ 20.

21.    This paragraph should be removed as it seeks a de facto full force and effect ("**FFE**") order without submitting to this Court the orders for which FFE are sought.  *See In re Cozumel Caribe, S.A. de C.V.*, 508 B.R. 330, 336–37 (Bankr. S.D.N.Y. 2014) (explaining that granting comity to foreign orders is not "an all or nothing exercise," because some orders or judgments in the same case may merit comity while others may not).  As this Court explained at the recognition hearing, if the BVI Court later grants final relief and the JPLs then must "come back here and ask that this Court recognize and enforce" that relief, and "that will be very much at issue, but that is not true at this stage of the case."  June 9 Hr'g Tr. at 35:17–25; *see also In re ARD Fin., S.A.*, No. 25-12794 (MG), 2026 WL 817458, at *1 (Bankr. S.D.N.Y. Mar. 25, 2026) ("assuming the [Luxembourg] plan is approved by [the foreign] court the [f]oreign [r]epresentative will have to come back to this [c]ourt with a new motion if it seeks enforcement of such a plan within the territorial jurisdiction of the United States."); *In re Rede Energia*, 515 B.R. 69, 89 (Bankr. S.D.N.Y. 2014) (observing that parties are entitled to an evidentiary hearing on an FFE motion).  Individual scrutiny of orders for which FFE is sought is required under principles of comity. *See In re Odebrecht Engenharia e Construção S.A. - Em Recuperação Judicial*, 669 B.R.

457, 470 (Bankr. S.D.N.Y. 2025) (explaining that comity is not just a reason to grant relief in chapter 15 but a reason to deny it, because "[t]he drafters of [c]hapter 15 referenced principles of comity as limiting factors"); 11 U.S.C. § 1507(b) ("In determining whether to provide additional assistance under this title . . . the court shall consider whether such additional assistance [is] consistent with the principles of comity[.]").

22.     Paragraph 20 also poses due process concerns, as it would amount to a grant of FFE for orders in the BVI that have been entered *ex parte* and that Mr. Borrelli still has not seen, including an unknown sealed order entered on May 29, 2026, which Mr. Borrelli suspects but has been unable to confirm was entered in respect of the JPLs' secret application to the BVI Court for relief related to the Debtors' Hong Kong bank accounts.[6]  *See* Corrected Objection [ECF No. 68] ¶ 11.

23.     Granting FFE even to specific BVI Orders that have been disclosed in these proceedings is problematic because of the persistent confusion caused by the penal notice language at the front page of the BVI Appointment Order (also called the "Mithani Order" in the various filings related to recognition in these cases).  As Dr. Mokal explains: "A penal notice on an order is placed there at the request of the party who may seek to enforce the order.  **However, the penal notice is not itself a part of the order.  It cannot be used as an aid to the order's interpretation**[.]"  Mokal Decl. [ECF No. 49-1] ¶ 44 (emphasis added).

24.     An FFE order by this Court could thus mistakenly give effect to language ***that has no legally operative effect in the BVI***.  As Mr. Chissick conceded, "the appointment of provisional

---

[6] It is appreciated that the JPLs offered to show copies of those and potentially other secret orders to the U.S. Court prior to issuance of FFE relief, but that is very different from notice and an opportunity to be heard for the parties opposing relief in this Court. *See* JPL Reply [ECF No. 78] ¶ 47. That the BVI Proceedings continue to permit persistent *ex parte* contacts is no reason for this Court to allow the same as a matter of U.S. law and procedure.

liquidators does not change who is named on the register of directors[,]" and the directors "are still on the register as directors and they would still be directors of the company." Chissick Dep. Tr. at 18:4–21. He further acknowledged that "most, but not all powers are divested away from the directors," and that "certain limited residuary powers" remain. *Id.* at 143:9–144:21.

25.    As Mr. Chissick has conceded, the BVI Orders do not divest all director powers: "certain limited residuary powers" remain, and "most, but not all powers are divested away from the directors." *Id.* at 144:3–21; *see also id.* at 144:13–21 (testifying that "most, but not all powers are divested away from the directors"), 145:3–11 (explaining that "notwithstanding the appointment of a provisional liquidator or a liquidator," certain powers "continue to sit with the directors" to "direct or take steps on behalf of the company").

26.    The BVI Appointment Orders themselves make clear that ***directors remain directors***; their powers to run the companies' businesses are suspended ***only to the extent those specific powers have been granted to the JPLs.***

> The powers set out in paragraph 3 above are to the exclusion of any power exercised or purported to be exercised by any existing director of the Company in so far as such power concerns the affairs of the Company and its assets within the jurisdiction of the Virgin Islands.

BVI Appt. Orders ¶ 9.

27.    The BVI Court confirmed this in its bench ruling at the May 14 hearing on the extent of director residuary powers, when it ruled that the directors lacked authority only to oppose or interfere with the JPLs' exercise of powers granted under paragraph 3 of the BVI Appointment Orders:

> THE BVI COURT: "The directors of each of the [c]ompanies do not have authority ***in the name of such [c]ompany*** to oppose or interfere with the exercise by the JPLs of the powers granted to them pursuant to paragraph 3 of the Appointment Orders," including various this and that. That order is granted. That order and direction is granted ***in those terms***.

12

May 14 BVI Hr'g Tr. at 212:14–21 (emphasis added).

28. Finally, Mr. Chissick himself has confirmed the "inherent and longstanding power" that remains to directors notwithstanding the appointment of provisional liquidators and notwithstanding the inoperative penal notice language stamped on the front of the BVI Appointment Order:

> A: There are powers that notwithstanding the appointment of a provisional liquidator or a liquidator, continue to sit with the directors, insofar as it relates to their ability to direct or control the company. Actually, let me rephrase that. To direct or take steps on behalf of the company.
>
> Q. How do you know what is a residuary power and what is not?
>
> A. You would look at authority. Essentially, it is steps that, logically speaking, would need to be conducted by the directors in the context of the liquidators and JPLs appointment. And the authority that we have seen refers to contesting the originating application, seeking the discharge or variation of provisional liquidation orders, and should there be a determination of the winding up petition and going to full liquidation, the directors again will have an inherent and longstanding power to appeal that decision

Chissick Dep. Tr. at 145:3–146:2.

## CONCLUSION

For the foregoing reasons, Mr. Borrelli respectfully requests that the Court decline to enter the JPL Proposed Order and instead enter the Borrelli Proposed Order.

Dated: June 12, 2026
     New York, New York

                    Respectfully Submitted,

                    **BOIES SCHILLER FLEXNER LLP**

                    */s/ Peter M. Skinner*
                    Matthew L. Schwartz
                    Peter M. Skinner
                    Gordon Z. Novod
                    55 Hudson Yards
                    New York, New York 10001
                    Telephone: (212) 303-3646
                    mlschwartz@bsfllp.com
                    pskinner@bsfllp.com
                    gnovod@bsfllp.com

                    Dan G. Boyle
                    2029 Century Park East
                    Los Angeles, California 90067
                    Telephone: (213) 995-5732
                    dboyle@bsfllp.com

                    Laura Femino (admitted *pro hac vice*)
                    401 E Las Olas Boulevard
                    Fort Lauderdale, Florida 33301
                    Telephone: (954) 377-0716
                    lfemino@bsfllp.com

                    *Counsel to Cosimo Borrelli in his*
                    *capacity as the sole director of each*
                    *of the Borrelli Debtors*