# EXHIBIT 1

## JPLs' Rule 2004

## Subpoena to BSF

# UNITED STATES BANKRUPTCY COURT

Southern District of New York

In re PRINCE GLOBAL HOLDINGS LIMITED et al.
Debtor

Case No. 26-10769

Chapter 15

## SUBPOENA FOR RULE 2004 EXAMINATION

To: Boies Schiller Flexner LLP, 55 Hudson Yards, New York, NY 10001
*(Name of person to whom the subpoena is directed)*

☐ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure. A copy of the court order authorizing the examination is attached.

| PLACE | DATE AND TIME |
|---|---|
| | |

The examination will be recorded by this method: ____________________

☒ *Production:* You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

See attached Exhibit B.

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: August 24, 2026

CLERK OF COURT

OR

____________________
*Signature of Clerk or Deputy Clerk*

/s/ Howard J. Kaplan
*Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)* Mr. Pretlove et al in capacity as AFRs, who issues or requests this subpoena, are:

Howard J. Kaplan, Ellenoff Grossman & Schole LLP, 1345 Avenue of the Americas, 11th Fl., New York, NY, 10105

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## PROOF OF SERVICE

**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: ______________________________________________

on *(date)* __________ .

☐ I served the subpoena by delivering a copy to the named person as follows: ____________________________________

____________________________________________________________________________________________________

__________________________________ on (*date*) ___________________ ; or

☐ I returned the subpoena unexecuted because: ____________________________________________________________

____________________________________________________________________________________________________

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _______________________ .

My fees are $ _________ for travel and $_________ for services, for a total of $_________ .

I declare under penalty of perjury that this information is true and correct.

Date: _______________

________________________________________________

*Server's signature*

________________________________________________

*Printed name and title*

________________________________________________

*Server's address*

Additional information concerning attempted service, etc.:

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)

**(made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)**

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>PRINCE GLOBAL HOLDINGS LIMITED *et al.*,[1]<br><br>Debtors in Foreign Proceedings. | Chapter 15<br><br>Case No. 26-10769 (MG)<br><br>(Jointly Administered) |

**ORDER GRANTING**
**RECOGNITION OF FOREIGN MAIN PROCEEDINGS AND RELATED RELIEF**

Upon consideration of the Verified Petition[2] of the Authorized Foreign Representatives for the Debtors requesting entry of an order (this "Order") (i) recognizing the BVI Proceedings as "foreign main proceedings" under section 1517(b)(1) of the Bankruptcy Code; (ii) recognizing each of the Authorized Foreign Representatives as "foreign representatives," as such term is defined in section 101(24) of the Bankruptcy Code, in respect of the BVI Proceedings; and (iii) granting certain related relief; and this Court having found that it has jurisdiction to consider the Verified Petition and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* M-431 of the U.S. District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.); and consideration of the Verified Petition and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P); and venue of this proceeding being proper before this Court pursuant to 28 U.S.C. § 1410(1); and this Court having found that proper and adequate notice of the Verified Petition

1 The Debtors in these Chapter 15 Cases are incorporated in the British Virgin Islands and maintain their registered address at Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands, VG1110. A complete list of the Debtors and their company numbers may be found at D.I. 2-1.

2 Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Verified Petition.

and the relief requested therein has been provided in accordance with the Bankruptcy Rules and the Local Rules, and that no other or further notice is necessary; and this Court having determined that the relief requested in the Verified Petition is in the best interests of the Debtors; and no objections or other responses having been filed that have not been overruled, withdrawn or otherwise resolved; and after due deliberation and sufficient cause appearing therefor;

**THIS COURT HEREBY FINDS AND CONCLUDES THAT**:

1. The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

2. Each of the Debtors has property located in the United States, and, therefore, each of the Debtors is "eligible" to be a debtor in these Chapter 15 Cases pursuant to sections 109 and 1501 of the Bankruptcy Code.

3. These Chapter 15 Cases were properly commenced pursuant to sections 1504 and 1509 of the Bankruptcy Code.

4. The Verified Petition satisfies the requirements of section 1515 of the Bankruptcy Code.

5. The official form petitions of each of the Debtors satisfy Bankruptcy Rules 1007(a)(4) and 2002.

6. The BVI Proceedings are "foreign proceedings" as such term is defined in section 101(23) of the Bankruptcy Code.

7. The BVI Proceedings are pending in the BVI, which is the jurisdiction in which each Debtor has "the center of its main interests" within the meaning of such term in section

1517(b)(1) of the Bankruptcy Code. As such, the BVI Proceedings are "foreign main proceedings" pursuant to section 1502(4) of the Bankruptcy Code, which are thereby entitled to recognition as foreign main proceedings pursuant to section 1517(b)(1) of the Bankruptcy Code and to all relief afforded to foreign main proceedings under section 1520 of the Bankruptcy Code.

8. The Authorized Foreign Representatives are "persons" as such term is defined in section 101(41) of the Bankruptcy Code, and they are the duly appointed "foreign representatives" of the Debtors within the meaning of section 101(24) of the Bankruptcy Code.

9. The relief granted in this Order is necessary and appropriate to protect the Debtors and the interests of their creditors and other parties-in-interest, consistent with the principles of comity, consistent with the purposes and objectives of chapter 15 of the Bankruptcy Code, not manifestly contrary to the public policy of the United States and warranted pursuant to sections 105(a), 362, 1504, 1507, 1509, 1515, 1517, 1520, and 1521 of the Bankruptcy Code. The relief granted in this Order will not cause any hardship or inconvenience to any party-in-interest that is not outweighed by the benefits of granting the requested relief to the Authorized Foreign Representatives, the Debtors, their creditors and other parties-in-interest.

10. The principles of comity support recognition of the BVI Orders appointing the Authorized Foreign Representatives as joint provisional liquidators pursuant to section 170 of the BVI Insolvency Act, as well as the enforcement by this Court of the BVI Orders within the territorial jurisdiction of the United States.

11. The Authorized Foreign Representatives have demonstrated that the relief requested with respect to entrustment of the Debtors' assets under section 1521(a)(5) of the Bankruptcy Code is necessary and appropriate, consistent with the principles of comity, consistent with the purposes and objectives of chapter 15 of the Bankruptcy Code, not inconsistent with the

public policy of the United States and warranted pursuant to section 1521(a)(5) of the Bankruptcy Code.

12. All creditors and other parties-in-interest, including the Debtors, are sufficiently protected in the relief granted in this Order as required under section 1522(a) of the Bankruptcy Code.

**IT IS HEREBY ORDERED THAT**:

13. The Verified Petition and the relief requested are GRANTED as set forth herein, and any objections or responses thereto that have not been withdrawn or resolved are overruled with prejudice.

14. The BVI Proceedings are granted recognition as "foreign proceedings" as such term is defined in section 101(23) of the Bankruptcy Code and pursuant to section 1517(a) of the Bankruptcy Code.

15. The BVI Proceedings are granted recognition as "foreign main proceedings" as such term is defined in section 1502(4) of the Bankruptcy Code and pursuant to section 1517(b)(1) of the Bankruptcy Code.

16. Throughout the duration of these Chapter 15 Cases or until otherwise ordered by this Court, all relief and protection afforded to a foreign main proceeding under section 1520 of the Bankruptcy Code is hereby granted to the BVI Proceedings, the Debtors, and the Debtors' property located in the United States, as applicable, including, without limitation, the application of the automatic stay under section 362 of the Bankruptcy Code to the Debtors and their property located in the territorial jurisdiction of the United States.

17. The Authorized Foreign Representatives are recognized as "foreign representatives," as such term is defined in section 101(24) of the Bankruptcy Code, in respect of

the BVI Proceedings. The Authorized Foreign Representatives are authorized to act on behalf of the Debtors in these Chapter 15 Cases.

18. Each Authorized Foreign Representative is entrusted with the administration or realization of all of the Debtors' property within the territorial jurisdiction of the United States as set forth in section 1521(a)(5) of the Bankruptcy Code, subject to section 363 of the Bankruptcy Code pursuant to section 1520(a)(2).

19. The Authorized Foreign Representatives are authorized, by subpoena or otherwise and without further order of this Court, to conduct discovery, issue subpoenas, examine witnesses, take evidence, conduct examinations under Bankruptcy Rule 2004, and seek production of documents and information concerning the assets, affairs, rights, obligations, or liabilities of the Debtors, including any matter that may affect the administration of the Debtors' estates in the BVI Proceedings or these Chapter 15 Cases, pursuant to section 1521(a)(4) of the Bankruptcy Code and Bankruptcy Rules 2004 and 9016. The Authorized Foreign Representatives are further authorized to seek turnover of property under section 542 of the Bankruptcy Code by motion or adversary proceeding as required by the Bankruptcy Rules. The discovery authorized in this paragraph is not limited to documents located within the United States and includes the authority to seek production of documents within the possession, custody, or control of any person or entity subject to this Court's jurisdiction, including documents held by such person's or entity's agents or attorneys, wherever such documents may be located. Any subpoenas served pursuant to this Order shall be without prejudice to the recipient's or any other party-in-interest's rights to object in accordance with applicable law and procedural rules.

20. The BVI Proceedings, the BVI Orders, and any other orders entered by the BVI Court in the BVI Proceedings as of the date of this Order shall be and hereby are granted comity and given full force and effect in the United States.

21. All persons and entities subject to this Court's jurisdiction are hereby enjoined and restrained from taking any actions within or outside of the United States, except with respect to the BVI Proceedings, in the name or on behalf of (a) any of the Debtors, (b) any of the Debtors' controlled subsidiaries or any similar general name or designation that does not clearly refer to a specific legal entity or natural person, in each case without the express prior authorization of the Authorized Foreign Representatives or prior order of this Court or the BVI Court.

22. This Order is without prejudice to the Authorized Foreign Representatives requesting any additional relief in these Chapter 15 Cases, including seeking additional relief under sections 1507 or 1521 of the Bankruptcy Code or seeking recognition and enforcement in the United States of any further orders issued by the BVI Court.

23. No action taken by the Authorized Foreign Representatives, the Debtors or their respective successors, agents, representatives, advisors, or counsel, in preparing, disseminating, applying for, implementing or otherwise acting in furtherance of the BVI Proceedings, the documents contemplated thereunder, this Order, these Chapter 15 Cases, any further order for additional relief in these Chapter 15 Cases or any adversary proceedings in connection therewith, will be deemed to constitute a waiver of the immunity afforded such persons under sections 306 or 1510 of the Bankruptcy Code.

24. The Authorized Foreign Representatives, the Debtors and their respective agents are authorized to serve or provide any notices required under the Bankruptcy Rules, the Local Rules, or the orders of this Court.

25. The Authorized Foreign Representatives are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

26. No party shall incur any liability for following the terms of this Order, whether by acting or refraining from acting, except in the case of the party's own gross negligence or willful

misconduct.

27. Notwithstanding any provision in the Bankruptcy Code or the Bankruptcy Rules to the contrary, including, without limitation, Bankruptcy Rules 1018, 7062 and 9014, (a) this Order shall be effective immediately and enforceable upon its entry, (b) the Authorized Foreign Representatives are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order and (c) this Order shall constitute a final order within the meaning of 28 U.S.C. § 158(a).

28. This Court shall retain jurisdiction with respect to the implementation, enforcement, amendment, and modification of this Order.

Dated: June 18, 2026
New York, New York

**/s/ Martin Glenn**
MARTIN GLENN
Chief United States Bankruptcy Judge

# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>PRINCE GLOBAL HOLDINGS LIMITED *et al.*,<br><br>Debtors in Foreign Proceedings. | Chapter 15<br><br>Case No. 26-10769 (MG)<br><br>(Jointly Administered) |

**AUTHORIZED FOREIGN REPRESENTATIVES' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO BOIES SCHILLER FLEXNER LLP PURSUANT TO FED. R. BANKR. P. 2004**

**PLEASE TAKE NOTICE** that pursuant to the *Order Granting Recognition of Foreign Main Proceedings and Related Relief*, ECF No. 90, as well as rule 2004 of the Federal Rules of Bankruptcy Procedure and rule 2004-1 of the Local Bankruptcy Rules for the Southern District of New York, Paul Pretlove, David Standish and James Drury, in their capacities as Joint Provisional Liquidators of Prince Global Holdings Limited and its affiliated debtors (each, a "Debtor," and collectively, the "Debtors")[1] and the Authorized Foreign Representatives of the Debtors in these proceedings, direct the requests for production of Documents (each, a "Request," and collectively, the "Requests") set forth in **Exhibit A** attached hereto to Boies Schiller Flexner LLP ("Boies Schiller") to be responded to in accordance with the Definitions and Instructions provided therein and all applicable Federal and Local Rules of Civil Procedure and Bankruptcy Procedure, which responses must be delivered to Howard J. Kaplan, Ellenoff Grossman & Schole

[1] The Debtors in the above-captioned action are incorporated in the British Virgin Islands and maintain their registered address at Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands, VG1110. A complete list of the Debtors and their company numbers may be found at *Exhibit A – List of Debtors*, ECF No. 2-1.

LLP, 1345 Avenue of the Americas, 11th Fl., New York, NY, 10105 within 14 days after the date of service hereof.

Dated: August 24, 2026
New York, New York

Respectfully submitted,

*<u>/s/ Howard J. Kaplan</u>*
Howard J. Kaplan
Harry L. Grabow
**ELLENOF GROSSMAN & SCHOLE LLP**
1345 Avenue of the Americas, 11th Fl.
New York, NY 10105
Telephone: (212) 370-1300
Facsimile: (212) 370-7889
Email: HKaplan@egsllp.com
Email: HGrabow@egsllp.com

*Counsel to the Authorized Foreign Representatives*

## EXHIBIT A

## DEFINITIONS

These Requests incorporate by reference the definitions and rules of construction set forth in Local Civil Rule 26.3 of the Southern District of New York, as required by Local Bankruptcy Rule 2004-1. The following additional Definitions apply with respect to each of these Requests, and each of the terms defined below, when used in any Request, Instruction, or Definition, shall have the meaning given herein:

1. "Allied Cigar Group" means, collectively, Allied Cigar Corporation S.L.U.; all predecessors, successors, parents, subsidiaries, affiliates, divisions, branches, business lines, joint ventures, associated entities, and operating companies for the foregoing; and all Persons and entities acting or purporting to act on behalf of any of the foregoing.

2. "Authorized Foreign Representatives" means Paul Pretlove, David Standish and James Drury, in their capacities as Joint Provisional Liquidators of the Debtors and Authorized Foreign Representatives of the Debtors in these proceedings, and any Person, past or present, acting on their behalf, including their agents, attorneys, representatives, employees, and independent contractors.

3. "Awesome Global" means "Awesome Global Investments Limited" or "Awesome Global Investment Group Company Limited."[2]

4. "Beneficial Owner" has the meaning attributed to it in 31 C.F.R. § 1010.230(d) and should be interpreted here as though each Debtor satisfied the definition of "legal entity customer" in § 1010.230(e).

---

[2] Cambodian company number: K002-901705474.

5. "Brooklyn Network Indictment" means the indictment returned by the grand jury in *United States* v. *Zhang*, 1:22-cr-00458 (E.D.N.Y. Oct. 6, 2022), ECF No. 1.

6. "BVI" means the British Virgin Islands.

7. "BVI Proceedings" means the proceedings commenced on January 5, 2026 by the Attorney General of the BVI by way of originating applications for the appointment of joint liquidators over each of the Debtors and associated proceedings.

8. "Chen Zhi Indictment" means the indictment returned by the grand jury in *United States* v. *Zhi*, No. 1:25-cr-00312 (E.D.N.Y. Oct 08, 2025), ECF No. 1.

9. "Director" means any director, de jure director, de facto director, shadow director, nominee director, alternate director, managing director, authorized representative, signatory, attorney-in-fact, or other Person or entity associated with Prince Group or any Debtor who has or had authority to manage, direct, control, approve, authorize, execute, or cause any act, transaction, filing, communication, payment, transfer, agreement, or decision on behalf of any Debtor, whether formally appointed or not.

10. "Forfeiture Action" means the proceedings in *United States* v. *Approximately 127,271 Bitcoin (BTC) previously stored at the virtual currency addresses listed in Attachment A, and all proceeds traceable thereto*, No. 1:25-cv-05745 (E.D.N.Y. Oct. 14, 2025).

11. "Forfeiture Action Complaint" means the United States of America's Verified Complaint in Rem in the Forfeiture Action, ECF No. 1.

12. "FTIG" means Future Technology Investment Group, as identified in the Forfeiture Action Complaint.

13. "Luxury Assets" includes high-value personal, collectible, investment, or status assets, whether tangible or intangible, including, without limitation, artwork, antiques, collectibles,

jewelry, watches, precious metals, gemstones, rare coins, luxury automobiles, aircraft, yachts, boats, real estate, designer goods, handbags, apparel, wine, spirits, memorabilia, non-fungible tokens, digital collectibles, or any other assets customarily marketed, purchased, held, transferred, pledged, consigned, appraised, auctioned, or insured as luxury, collectible, or high-value assets.

14. "Maple Bliss" means Maple Bliss Limited (BVI company number: 2003975).

15. "OFAC" means the United States Department of the Treasury's Office of Foreign Assets Control.

16. "Prince Group" means, collectively, the individuals and entities designated by OFAC in its announcement dated October 14, 2025, pursuant to Exec. Order No. 13581, 76 Fed. Reg. 44757 (July 24, 2011), as amended by Exec. Order No. 13863, 90 Fed. Reg. 34759 (July 21, 2025),[3] and its announcement dated June 23, 2026, pursuant to Exec. Order No. 13581, 76 Fed. Reg. 44757 (July 24, 2011), as amended by Exec. Order No. 13863, 90 Fed. Reg. 34759 (July 21, 2025),[4] as well as any predecessor, successor, parent, subsidiary, affiliate, division, branch, business line, joint venture, associated entity, or operating company of any of the foregoing, and any entity owned, controlled, managed, directed, operated, funded, beneficially owned, or used by Chen Zhi[5] or by any Person acting on his behalf, including any entity or Person alleged in the Chen Zhi Indictment, the Forfeiture Action Complaint, or the foregoing OFAC sanctions action to be affiliated with, controlled by, or acting for or on behalf of Chen Zhi or Prince Group.

[3] U.S. Dep't of the Treasury, *Transnational Criminal Organizations Designations; Issuance of TCO-related General License* (Oct. 14, 2025), https://ofac.treasury.gov/recent-actions/20251014.

[4] U.S. Dep't of the Treasury, *Transnational Criminal Organizations Designations; Cuba Designations; Russia-related Designations Removals; Issuance of TCO-related General License; Publication of OFAC-OFSI Comparative Overview* (June 23, 2026), https://ofac.treasury.gov/recent-actions/20260623.

[5] Chinese Simplified: 陈志; date of birth: December 16, 1987.

17. "Property," or any variant thereof, means any and all assets, rights, interests, claims, or things of value of any nature whatsoever, whether legal, equitable, vested, contingent, matured, unmatured, known, unknown, fixed, disputed, undisputed, tangible, intangible, real, personal, digital, contractual, or statutory, wherever located and by whomever held, including any direct or indirect interest therein. "Property" includes, without limitation: cash, currency, bank accounts, securities, commodities, cryptocurrency and digital assets, Tokens, Wallets, accounts, deposits, receivables, revenues, profits, distributions, choses in action, causes of action, claims, judgments, rights to payment, contractual rights, licenses, intellectual property, books and records, data, electronically stored information, real property, personal property, inventory, equipment, vehicles, vessels, beneficial interests, trust interests, partnership interests, membership interests, shares, options, and any proceeds, products, rents, profits, substitutions, traceable proceeds, or other value derived therefrom.

18. "Relating To," or any variant thereof, means referring to, concerning, pertaining to, discussing, mentioning, containing, reflecting, constituting, describing, displaying, showing, identifying, proving, disproving, consisting of, arising out of, supporting or contradicting.

19. "Relevant Person" means any of the Persons listed on Schedule 1 hereto.

20. "Team Success" means Team Success Ventures Limited (BVI company number: 1984561).

21. "Token," or any variant thereof, means any virtual currency Token or a denomination of a cryptocurrency.

22. "Wallet," or any variant thereof, means any device, program or network address that holds any cryptocurrency or cryptocurrency keys.

23. "You," "Your," or any variant thereof, refers to Boies Schiller, and includes any Debtor or Relevant Person on whose behalf it has purported to act, as well as any affiliates, agents, assigns, Directors, employees, officers, parents, partners, representatives, subsidiaries, or any other Persons acting or purporting to act on behalf of the foregoing, and any predecessor or successor of the foregoing.

24. Where appropriate:

a. the past tense includes the present tense;

b. the word "including" means "including without limitation"; and

c. use of the masculine includes the feminine, and vice versa.

## INSTRUCTIONS

1. Unless otherwise specified, the responsive period for each Request is from January 1, 2015 to present.

2. You are instructed to respond separately and fully to each Request and to respond with all Documents and Communications responsive to each Request that are within Your possession, custody, or control, or in the possession, custody, or control of any other Person or entity acting or purporting to act on Your behalf.

3. If there are no Documents or Communications responsive to any particular Request, Your response shall state so in writing.

4. Unless instructed otherwise, each Request shall be construed independently and not by reference to any other Request for the purpose of limitation or exclusion.

5. If any Document or Communication is withheld from production based on a claim of privilege, immunity, or other ground, furnish a list specifying: (a) the nature of the privilege, immunity, or other ground claimed; (b) the identity of the client(s) or other Person(s) asserting a claim of privilege, immunity or other ground; (c) the authors of the Document or Communication; (d) all Persons who received copies of the Document or Communication, including the Document's or Communication's indicated and blind copy recipients; (e) the date of the Document or Communication; (f) the type of Document or Communication withheld (*e.g.*, memorandum, letter, report, email); and (g) the general subject matter of the Document or Communication sufficient to enable the Authorized Foreign Representatives to assess the applicability of the claimed privilege, immunity, or other ground for refusal to produce the Document or Communication. For each item of information or Document or Communication You withhold based on a claim of privilege, immunity, or other ground, identify such information or Document or Communication with sufficient particularity for purposes of a motion to compel.

6. If a portion of an otherwise responsive Document or Communication contains information subject to a claim of privilege, only that portion of the Document or Communication subject to the claim of privilege shall be deleted or redacted from the Document or Communication following the instructions in the preceding paragraph, and the rest shall be produced.

7. A Request shall be deemed to include a request for the entire Document or Communication requested, including transmittal sheets or memoranda, cover letters, exhibits, enclosures, comments, or attachments to the Document or Communication in addition to the Document or Communication itself. In the case of email attachments, if either the email or any of its attachments is responsive, produce the email and all of the corresponding attachments.

8. You shall produce all Documents and Communications in the manner in which they are maintained in the usual course of Your business.

9. To the extent the Documents and Communications are maintained or are otherwise available electronically, please produce them in that form, including all metadata.

10. For Documents and Communications created by Excel or other spreadsheet programs, PowerPoint or other special presentation programs, database files, or any other file types that reasonably require viewing in their native format for a full understanding of their content and meaning, produce the files in native and TIFF formats. Name the produced native file with the Bates number on the first page of the corresponding TIFF production of the file/document. Group native files within incrementally named "NATIVE" directories, separate from images directories.

11. All Documents and Communications shall be produced in such fashion as to identify the custodian or department in whose possession the Document or Communication was found and the business address of each Document's or Communication's custodian(s).

12. All Documents and Communications produced should be Bates numbered sequentially, with a unique number on each page, and with a prefix identifying the party producing the Document or Communication.

13. The fact that a Document or Communication is produced by another party does not relieve You of the obligation to produce Your copy of the same Document or Communication, even if the two Documents or Communications are identical.

14. These Requests are continuing in nature and require further and supplemental production if additional Documents or Communications are acquired or located following the time of initial production, to the fullest extent required by the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York.

15. If You claim any ambiguity in interpreting a Request, Definition, or Instruction, You should not use that claim as a basis for refusing to respond, but shall set forth as part of Your response the language deemed to be ambiguous.

16. These Requests do not prejudice the Authorized Foreign Representatives from seeking additional discovery pursuant to Bankruptcy Rule 2004 or any other process.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1**

All Documents and Communications Relating To any Debtor or Relevant Person.

**REQUEST NO. 2**

All Documents and Communications Relating To any Property within the United States of the Debtors or Relevant Persons.

**REQUEST NO. 3**

All Documents and Communications Relating To any Property outside the United States of the Debtors or Relevant Persons.

**REQUEST NO. 4**

All Documents and Communications Relating To any civil, criminal, or regulatory proceedings, investigations, lawsuits, or other actions involving any Debtor or Relevant Person.

**REQUEST NO. 5**

All Documents and Communications Relating To any Property interest that any Debtor or Relevant Person has or had in the Bitcoin identified in ¶ 5 of the Forfeiture Action Complaint, including any Property interest Relating To any Debtor's or Relevant Person's role in laundering assets as described in the Forfeiture Action Complaint.

**REQUEST NO. 6**

All Documents and Communications Relating To any Wallets or Tokens held by or associated in any way with any Debtor or Relevant Person.

**REQUEST NO. 7**

All Documents and Communications Relating To Cosimo Borrelli's purported appointment as Director of the "Borrelli Debtors," as defined in ¶ 9 of the *Declaration of Cosimo Borrelli*, ECF No. 49-2.

**REQUEST NO. 8**

All Documents Relating To the appointment of any attorney-in-fact or granting of any power of attorney Relating To any Debtor or Relevant Person.

**REQUEST NO. 9**

Documents and Communications sufficient to identify all entities (incorporated or unincorporated) directly or indirectly controlled, managed, owned, or used by, held for the benefit of, affiliated with, or Related To any Debtor, including any entity used by any Debtor, directly or indirectly, to conduct financial transactions, open bank accounts, conduct cryptocurrency transactions, or receive or transmit funds.

**REQUEST NO. 10**

All Documents and Communications Relating To any account directly or indirectly maintained, held, or owned by any Debtor or Relevant Person, including Documents and Communications reflecting the financial institution at which the account is maintained, bank statements, wire-transfer records, SWIFT messages, payment instructions, deposit records, withdrawal records, internal-transfer records, foreign-exchange records, transaction confirmations, account ledgers, and account-opening Documents.

**REQUEST NO. 11**

All financial statements and other similar Documents and Communications for each Debtor.

**REQUEST NO. 12**

All Documents and Communications Relating To any account associated with any Debtor or Relevant Person at any cryptocurrency platform (including the exchanges identified as Exchanges 1-3 in the Chen Zhi Indictment), including the Debtor or Relevant Person associated with such account, the identity of the exchange, the account numbers, the log-in credentials or

other identifying information associated with such account, records reflecting transactions in such account, and account-opening Documents.

**REQUEST NO. 13**

All Documents and Communications Relating To cryptocurrency mining operations (including Lubian and Warp Data, as described in Chen Zhi Indictment ¶ 49) that are or were connected to, funded by, or used by any Debtor or Relevant Person.

**REQUEST NO. 14**

All Documents and Communications Relating To "spraying" or "funneling" money laundering techniques, as described in Chen Zhi Indictment ¶ 51. To the extent you assert that any such Documents are subject to an attorney-client privilege (or other privilege) held by Chen Zhi, please produce a privilege log in accordance with Instruction No. 5.

**REQUEST NO. 15**

All flow-of-funds diagrams or lists of Persons associated with Bitcoin money laundering maintained by or on behalf of any Debtor or Relevant Person, as described in the Chen Zhi Indictment ¶¶ 46, 51.

**REQUEST NO. 16**

All Documents and Communications Relating To any "laundering houses," "money houses," or "water houses," as described in Chen Zhi Indictment ¶ 46, or any other Person, entity, operation, account, exchange, intermediary, or network that received, transmitted, processed, converted, concealed, or otherwise handled funds on behalf of, for the benefit of, or Related To any Debtor or Relevant Person. To the extent you assert that any such Documents are subject to an attorney-client privilege (or other privilege) held by Chen Zhi, please produce a privilege log in accordance with Instruction No. 5.

**<u>REQUEST NO. 17</u>**

All Documents and Communications Relating To the off-ramping of cryptocurrency (*i.e.*, conversion of cryptocurrency to fiat currency) by any Debtor or Relevant Person, as described in Chen Zhi Indictment ¶ 46.

**<u>REQUEST NO. 18</u>**

All Documents and Communications Relating To any "clean" Bitcoin purchases made with fiat currency derived from off-ramped proceeds, as described in Chen Zhi Indictment ¶ 46. To the extent you assert that any such Documents are subject to an attorney-client privilege (or other privilege) held by Chen Zhi, please produce a privilege log in accordance with Instruction No. 5.

**<u>REQUEST NO. 19</u>**

All Documents and Communications Relating To funds or revenue received by any Debtor or Relevant Person.

**<u>REQUEST NO. 20</u>**

All Documents and Communications Relating To the alleged crimes, fraud schemes, and related misconduct of the Relevant Persons, as detailed in the Chen Zhi Indictment, Forfeiture Action Complaint, and Brooklyn Network Indictment.

**<u>REQUEST NO. 21</u>**

All Documents and Communications Relating To scam compounds, such as those described in the Chen Zhi Indictment, including human trafficking, torture or other abuses associated with such scam compounds.

**<u>REQUEST NO. 22</u>**

All Documents and Communications Relating To any victim of the alleged crimes, fraud schemes, and related misconduct perpetrated by the Relevant Persons, including victims of

human trafficking, torture, kidnapping and similar abuses, as well as frauds, scams or financial crimes.

**REQUEST NO. 23**

All Documents and Communications Relating To payroll or immigration records associated with the alleged crimes, fraud schemes, and related misconduct alleged in the Chen Zhi Indictment, Forfeiture Action Complaint, and Brooklyn Network Indictment.

**REQUEST NO. 24**

All Documents and Communications Relating To Co-Conspirators-1 through -7, as described in the Chen Zhi Indictment, including but not limited to Documents sufficient to identify each such Person's identity and role in or relationship to any Debtor or Relevant Person.

**REQUEST NO. 25**

All Documents and Communications Relating To the role of Co-Conspirator-5 (*i.e.*, Chen Zhi's personal wealth manager), as described in the Chen Zhi Indictment, including Documents and Communications Relating To Co-Conspirator-5 managing funds and/or directing cryptocurrency laundering.

**REQUEST NO. 26**

All Documents and Communications Relating To any actions by the Directors of Amber Hill Ventures Limited[6] (including Fan Yang) and Lateral Bridge Global Limited[7] (including Minyi Tang) Relating To any Debtor or Relevant Person.

---

[6] BVI company number: 1965875.

[7] BVI company number: 2030656.

**REQUEST NO. 27**

All Documents and Communications Relating To FTIG, Maple Bliss, Team Success, or Awesome Global, or any entities (incorporated or unincorporated) directly or indirectly controlled, managed, owned, used by, held for the benefit of, or affiliated with the foregoing.

**REQUEST NO. 28**

All Communications with Persons affiliated with FTIG, Maple Bliss, Team Success, or Awesome Global, including any current or former Directors, officers, managers, shareholders, Beneficial Owners, agents, attorneys-in-fact, affiliates, or Persons acting or purporting to act on behalf of the foregoing.

**REQUEST NO. 29**

All Documents and Communications Relating To “mirror websites” or alternative domains, as described in Chen Zhi Indictment ¶ 48.

**REQUEST NO. 30**

All Documents and Communications Relating To any auction house located in the United States through which Property of any Debtor or Relevant Person was sold, transferred, consigned, or valued, including the New York auction house identified in Forfeiture Action Complaint ¶ 38.

**REQUEST NO. 31**

All Documents Relating To the purchase or transfer of any Luxury Assets by, or on behalf of, any Debtor or Relevant Person and the accounts used to purchase any such assets.

**REQUEST NO. 32**

All Documents and Communications Relating To tangible, movable, or physical assets, other than Luxury Assets, which are or were owned, held, controlled, possessed, or managed by any Debtor or Relevant Person, including the sale or transfer of any such asset.

**REQUEST NO. 33**

Documents sufficient to show Prince Group's organizational structure.

**REQUEST NO. 34**

Documents sufficient to identify any email address, email account, domain name, messaging handle, user account, social media account, encrypted messaging account, telephone number, VOIP account, collaboration platform account, cloud services account, device identifier, online alias, username, screen name, or other electronic identifier Related To, used by, associated with, controlled by, administered by, maintained by, associated with, registered to, or operated for the benefit of any Debtor or Relevant Person.

**REQUEST NO. 35**

All Documents and Communications Relating To Prince Group's online gambling businesses, as described in the Forfeiture Action Complaint and Chen Zhi Indictment.

**REQUEST NO. 36**

All Documents and Communications Relating To actions any Debtor or Relevant Person took on or after October 8, 2025, including any actions taken in connection with the Forfeiture Action, Chen Zhi Indictment, or Brooklyn Network Indictment.

**REQUEST NO. 37**

All Documents and Communications Relating To the role of any Relevant Person in, and the nature of their association with, each Debtor.

**REQUEST NO. 38**

All Documents and Communications Relating To any Person from whom Boies Schiller takes instructions, or that Boies Schiller purports to represent, under the name "Prince Holding Group" or "Prince Holdings Group" in the Forfeiture Action, including Documents and Communications reflecting: (a) whether such Person is a corporation, partnership, joint venture,

or some other form of entity; (b) its jurisdiction of formation or creation; (c) its members, partners, or participants; (d) the identity of the Person who instructed Boies Schiller to file a claim on its behalf in the Forfeiture Action; (e) any engagement letter or similar Documents and Communications between Boies Schiller and the Person; and (f) the means by which the Person or any other Person compensates Boies Schiller for representation in the Forfeiture Action.

**REQUEST NO. 39**

All Documents and Communications Relating To any relationship or connection between (a) the "Prince Holding Group" or "Prince Holdings Group" that Boies Schiller purports to represent in the Forfeiture Action and (b) any Debtor.

**REQUEST NO. 40**

All Documents reflecting the organizational structure of the "Prince Holding Group" or "Prince Holdings Group" that Boies Schiller purports to represent in the Forfeiture Action, including Documents reflecting any parent entities and subsidiary entities affiliated with any Debtor.

**REQUEST NO. 41**

All Documents and Communications Relating To Allied Cigar Group, including all Communications with Renovaire Group Holdings RSC Limited, Skadden, Arps, Slate, Meagher & Flom LLP, Goodwin Proctor LLP, Dentons, and any Person or entity acting or purporting to act on behalf of the foregoing.

**REQUEST NO. 42**

All Documents and Communications Relating To Your representation of any Debtor or Relevant Person, including any Documents and Communications stored within, or otherwise Relating To, Your client file for any Debtor or Relevant Person.

**REQUEST NO. 43**

Documents sufficient to identify any and all Persons from whom Boies Schiller has received compensation, directly or indirectly, or who has otherwise caused Boies Schiller to receive compensation, in connection with its representation(s) of any Debtor (including any "Objecting Debtor") or Cosimo Borrelli, and Documents sufficient to identify the beneficial owner and ultimate source of all funds used to pay Boies Schiller in connection with any representation of any Debtor (including any "Objecting Debtor") or Cosimo Borrelli, including funds provided through any law firm, company, trust, nominee, agent, affiliate, relative, attorney-in-fact, or other intermediary.

**REQUEST NO. 44**

Documents sufficient to show, for each payment or transfer identified in response to Request No. 43: (a) the amount; (b) the date; (c) the method of payment; (d) the originating and receiving accounts or other payment instruments; (e) the Person on whose behalf the payment was made; (f) the matter, client, invoice, or obligation to which the payment was applied; and (g) each intermediary through whom the payment was transmitted.

**REQUEST NO. 45**

All Documents and Communications Relating To any agreement, understanding, commitment, guarantee, indemnity, reimbursement arrangement, or other arrangement under which any Person has paid, agreed to pay, or may become obligated to pay any fees, expenses, or other amounts incurred in connection with Boies Schiller's representation of any Debtor or Cosimo Borrelli.

**REQUEST NO. 46**

All Documents and Communications with or involving Hassan Miah, Miranda Tan, Brookville LLC, Cheetah Miner USA Inc., Paybby Corp., or Tiger Mines New York Inc., Relating

To Chen Zhi, Prince Group, any Debtor, any Relevant Person, the Chen Zhi Indictment, or the Forfeiture Action, including any services or assistance provided by any such Person or entity.

**REQUEST NO. 47**

All Documents and Communications Relating To any Property interest asserted by Hassan Miah, Brookville LLC, Cheetah Miner USA Inc., Paybby Corp., or Tiger Mines New York Inc. in the Forfeiture Action, including Documents and Communications Relating To: (a) the source, ownership, or transfer of the claimed Property; (b) any assignment or transfer of an interest in such Property; (c) the Tether Wallets identified in the Declaration of Hassan Miah in Support of Amended Verified Claim and Statement of Interest or Right in Property Subject to Forfeiture in Rem in the Forfeiture Action, ECF No. 499-1; (d) the freezing or unfreezing of those Wallets; (e) any Communications with Tether or any litigation or settlement with Tether; and (f) the transfer or disposition of any assets from those Wallets following the lifting of the freeze.

**REQUEST NO. 48**

All Communications with Vistra (BVI) Limited Relating To any Debtor or Relevant Person.

## SCHEDULE 1

*Relevant Persons*

| No. | Name |
|---|---|
| 1. | 855 INVESTMENT CORPORATION |
| 2. | A WEE TRADING CO LTD |
| 3. | ABLE MASTER INTERNATIONAL GROUP LIMITED |
| 4. | ABOVE VICTORY LIMITED |
| 5. | ACTIVE PLUS GLOBAL LIMIED |
| 6. | ADMIRAL COURAGE LIMITED |
| 7. | AIK, Paung |
| 8. | ALBERT CHAUNG KA PUN |
| 9. | ALLIED CIGAR CORPORATION |
| 10. | ALPHACONNECT INVESTMENTS CO. LTD. |
| 11. | ALPHACONNECT INVESTMENTS II CO. LTD. |
| 12. | ALPHACONNECT INVESTMENTS II PTE. LTD. |
| 13. | ALPHACONNECT INVESTMENTS PTE. LTD. |
| 14. | AMPLE GLORY INVESTMENT LIMITED |
| 15. | AMPLE LUCK INVESTMENT LIMITED |
| 16. | ANCO BROTHERS CO LTD |
| 17. | ANCO SPECIALIZED BANK LTD |
| 18. | ANCO WATER SUPPLY CO LTD |
| 19. | ANN LI MEE SUN |
| 20. | AQUA PURE WATER INC. (a.k.a. “FRIENDLIN”) |
| 21. | ASIA UNI CORPORATION LIMITED |
| 22. | ATLASWISE CONSULTANTS PTE. LTD. |
| 23. | AURUM CO LTD |
| 24. | AWESOME CONSTRUCTION DESIGN ENGINEERING CO. LTD. |
| 25. | AWESOME GLOBAL INVESTMENT GROUP (a.k.a. “Awesome Global”) |
| 26. | AWESOME GLOBAL INVESTMENT GROUP CO. LTD. |
| 27. | AWESOME SOFTWARE TECHNOLOGIES CO. LTD. |
| 28. | AZURE WONDERS LIMITED |
| 29. | BE SAGE LIMITED |
| 30. | BELT ROAD CAPITAL INVESTMENT GROUP CO. LTD. |
| 31. | BELT ROAD CAPITAL MANAGEMENT CAMBODIA CO. LTD. |
| 32. | BINARY PROPERTIES CO. LTD. |
| 33. | BINARY PROPERTIES PTE. LTD. |
| 34. | BOUNTIFUL VISION GROUP LIMITED |

| No. | Name |
|---|---|
| 35. | BRILLIANCY SIHANOUKVILLE INVESTMENT AND DEVELOPMENT CO LTD (a.k.a. “BOLAI CASINO”; a.k.a. “BOLAI ENTERTAINMENT CITY”; a.k.a. “BOLAI HOTEL AND CASINO”; a.k.a. “BOLAI INTERNATIONAL HOTEL”; a.k.a. “BRILLIANCY CASINO”; a.k.a. “BRILLIANCY SIHANOUKVILLE INVESTMENT & DEVELOPMENT CO LTD”; a.k.a. “PLATINUM LAI INTERNATIONAL GROUP”; a.k.a. “PLATINUM LAI INTERNATIONAL HOTEL”) |
| 36. | BROOKVILLE LLC |
| 37. | BURSON |
| 38. | CAMBODIA AIRWAYS CO., LTD. |
| 39. | CAMBODIAN HENG XIN REAL ESTATE INVESTMENT CO. LTD. |
| 40. | CANOPY SANDS DEVELOPMENT CO. LTD. |
| 41. | CAPITAL ZONE WAREHOUSING PTE. LTD. |
| 42. | CCU COMMERCIAL BANK PLC. |
| 43. | CHANGGUI HUANG (a.k.a “Junwu Chen” “Feng Qin” or “Haozhao Xu”) |
| 44. | CHARCO CHARCO HOLBORN LIMITED |
| 45. | CHASCA LONDON LIMITED |
| 46. | CHAU YAU KEUNG |
| 47. | CHEER CAPITAL LIMITED |
| 48. | CHEETAH MINER USA INC. |
| 49. | CHEN CHEN (a.k.a. “Rodger”) |
| 50. | CHEN, Al Len (a.k.a. “CHEN, Fuzhou”), |
| 51. | CHEN, Bo |
| 52. | CHEN, Xiao’er (updated to HU, Xiaowei on 06/23/2026) (a.k.a. “WU, An Ming”; a.k.a. “HU, Shi”) |
| 53. | CHEN, Xiuling (a.k.a. “CHEN, Karen”) |
| 54. | CHEN, Zhi (a.k.a. “Vincent”) |
| 55. | CHHAY, Guy |
| 56. | CHI WAI LAM |
| 57. | CHINA RESERVE SECURITIES LIMITED |
| 58. | CHIT LINN MYAING MINING AND INDUSTRY COMPANY LIMITED (a.k.a. “CHIT LINN MYAING MINING & INDUSTRY COMPANY LIMITED”) |
| 59. | CHIT LINN MYAING TOYOTA COMPANY LIMITED |
| 60. | CHIT LINN MYING CO., LTD. (a.k.a. “CHIT LIN MYAING COMPANY”; a.k.a. “CHIT LINN MYAING”; a.k.a. “CHIT LINN MYAING CO., LTD”) |
| 61. | CITYLINK CO. LTD. |
| 62. | CK ID CO. LTD |
| 63. | CLASSIC TIARA LIMITED |
| 64. | CLOUD NINE NO. 4 LEASING COMPANY LIMITED |

| No. | Name |
|---|---|
| 65. | CLOUD XERO MANAGEMENT PTE. LTD. |
| 66. | CN BREEZE LIMITED |
| 67. | CN CRYSTAL LIMITED |
| 68. | CROWN RESORTS CO LTD (a.k.a. “CROWN CASINO BAVET”; a.k.a. “CROWN CASINO CHREY THUM”; a.k.a. “CROWN CASINO KENTING”; a.k.a. “CROWN CASINO PAILIN”; a.k.a. “CROWN CASINO PRINCESS”; a.k.a. “DREAMWORLD CASINO”; a.k.a. “GENTING CROWN CASINO”; a.k.a. “HI-SO HOTEL”; a.k.a. “KENTING SKY HOTEL”; a.k.a. “PRINCESS CROWN CASINO”; a.k.a. “GOLDEN CROWN CASINO”; a.k.a. “KING CASINO”) |
| 69. | CUBAN TRADING UK LTD |
| 70. | CUNZHONG LIU |
| 71. | DAI, An (a.k.a. “DAI, Dewen”) |
| 72. | DANNI WENG |
| 73. | DARA, Ing |
| 74. | DELUXE HEAVEN LIMITED |
| 75. | DONG, Lecheng |
| 76. | DOUBLE WELL INVESTMENTS INC. |
| 77. | DREW PROPERTIES CO. LTD. |
| 78. | DREW PROPERTIES II CO. LTD. |
| 79. | DREW PROPERTIES II PTE. LTD. |
| 80. | DREW PROPERTIES PTE. LTD. |
| 81. | DTX WINNERS CLUB LIMITED |
| 82. | DW CAPITAL HOLDINGS PTE. LTD. |
| 83. | EAGLE FORTITUDE LIMITED |
| 84. | EAST LINK LONDON LTD |
| 85. | ENERGY FLEET LIMITED |
| 86. | EVERSTRONG ENTERPRISE DEVELOPMENT LIMITED |
| 87. | FANG, Zhizhen (a.k.a. “KOFI”) |
| 88. | FORTUNE ESTATE INTERNATIONAL LIMITED |
| 89. | FORTUNE NETWORK TECHNOLOGY LTD |
| 90. | FSM HOLDINGS LIMITED |
| 91. | FU, Chao |
| 92. | FULAM INVESTMENT LIMITED |
| 93. | FUNG YUET RESORT HOTEL CO LTD |
| 94. | FUTURE COSMOS LIMITED (a.k.a. “CLOUD NINE NO. 6 LEASING COMPANY”) |
| 95. | FUTURE COSMOS ONE LIMITED (a.k.a. “CLOUD NINE NO. 1 LEASING COMPANY LIMITED”) |

| No. | Name |
|---|---|
| 96. | FUTURE COSMOS TWO LIMITED (a.k.a. "CLOUD NINE NO. 2 LEASING COMPANY LIMITED") |
| 97. | FUTURE ECHO (BVI) LTD. |
| 98. | FUTURE KING INC. |
| 99. | FUTURE OASIS PTE. LTD. |
| 100. | FUTURE TECHNOLOGY INVESTMENT (a.k.a. "FTI") |
| 101. | FUTURE TECHNOLOGY INVESTMENT GROUP (a.k.a. "FTIG") |
| 102. | FUTURE WING FINANCIAL COMPANY LIMITED |
| 103. | GARDEN CITY HOTEL |
| 104. | GARRISON HUI SAI KWONG |
| 105. | GENTLE GIANT LIMITED |
| 106. | GEORESOURCES LIMITED |
| 107. | GEOTECH ENGINEERING LIMITED |
| 108. | GEOTECH HOLDINGS LIMITED |
| 109. | GLAD GLORY LIMITED |
| 110. | GLOBAL TREASURE DEVELOPMENT INC. |
| 111. | GLORY SUN INVESTMENT GROUP LIMITED |
| 112. | GOLDEN ASCEND HK LIMITED |
| 113. | GOLDEN FORTUNE RESORTS WORLD CO. LTD. |
| 114. | GOLDEN GAIN VENTURES LIMITED |
| 115. | GOOD EQUITY TEAM PTE. LTD. |
| 116. | GRAND LEGEND INTERNATIONAL ASSET MANAGEMENT GROUP CO. LTD. |
| 117. | GREENBAY PROPERTIES CO. LTD. |
| 118. | GREENBAY PROPERTIES PTE. LTD. |
| 119. | GREGORY ARMAND |
| 120. | HALO NETWORK TECHNOLOGY LTD |
| 121. | HAORAN SHENG (a.k.a. "Seng Haoran" or "Shen Haoran") |
| 122. | HE, Leting |
| 123. | HENG FENG CAMBODIA BANK PLC |
| 124. | HENG FENG GROUP CO LTD |
| 125. | HENG HE BAVET PROPERTY CO LTD (a.k.a. "HENG HE BAVET CITY"; a.k.a. "HENG HE CASINO"; a.k.a. "HENG HENG CASINO") |
| 126. | HENG YU INTERNATIONAL GROUP LIMITED |
| 127. | HH BANK CAMBODIA PLC (a.k.a. "HENG HE CAMBODIA COMMERCIAL BANK PLC"; a.k.a. "HENGHE CAMBODIA COMMERCIAL BANK PLC"; a.k.a. "HENG HE BANK") |
| 128. | HIGH VIEW SKYLINE INVESTMENT CO. LTD. |

| No. | Name |
|---|---|
| 129. | HILL+KNOWLTON STRATEGIES |
| 130. | HING SENG LIMITED (a.k.a. “Hing Seng”) |
| 131. | HKE HOLDINGS LIMITED |
| 132. | HO MAN KUNG |
| 133. | HO, Ho Ming (a.k.a. “HO, Henry”) |
| 134. | HUA ZHOU |
| 135. | HUAN HAI BO LAI INTERNATIONAL INVESTMENT CO LTD (a.k.a. “SEA RING PLATINUM LAI INTERNATIONAL INVESTMENT COMPANY”) |
| 136. | HUANG, Chieh |
| 137. | HUNTSMAN INVESTMENTS CO. LTD. |
| 138. | HUNTSMAN INVESTMENTS PTE. LTD. |
| 139. | Jacqueline Lee |
| 140. | JIAHUI MIAO |
| 141. | JIN BEI GROUP CO. LTD. (a.k.a. “JINBEI CASINO”) |
| 142. | JIN FU ZHANG |
| 143. | JIN HUA ZHANG (a.k.a. “Yulong Chen” or “Yun Ye”) |
| 144. | JING PIN INC. (a.k.a. “JING PIN CENTURY HOTEL”; a.k.a. “JING PIN INC. CHINA KITCHEN”; a.k.a. “JING PIN OCEAN STAR HOTEL”; a.k.a. “OCEAN STAR GIFT SHOP”; a.k.a. “OCEAN STAR RESTAURANT”) |
| 145. | K B HOTEL CO LTD (a.k.a. “KAIBO HOTEL”; a.k.a. “KB HOTEL”; a.k.a. “KB HOTEL AND CASINO”) |
| 146. | K B X INVESTMENT CO LTD (a.k.a. “KBX INVESTMENT”) |
| 147. | K99 CULTURE AND MEDIA CO LTD (a.k.a. “K99 CULTURE & MEDIA CO LTD”; a.k.a. “K99 GROUP”) |
| 148. | KA WA DANISE TANG |
| 149. | KAI SHENG GROUP HOLDINGS LIMITED |
| 150. | KAISSA TRAVEL CO LTD |
| 151. | KEP HYDROPOWER SVTK AND MSRC CO LTD (a.k.a. “KEP HYDROPOWER SVTK & MSRC CO LTD”) |
| 152. | KEY ADVISORS PTE. LTD. |
| 153. | KHEMREAH CO LTD (a.k.a. “KHEMARAK HOTEL”) |
| 154. | KHMER ELECTRICAL POWER CO LTD |
| 155. | KHOON GROUP LIMITED |
| 156. | KHOON ENGINEERING CONTRACTOR PTE. LTD. |
| 157. | KIN WING SINO YAU |
| 158. | KING CHUNG FRANKLIN |
| 159. | KINGS ROMANS INTERNATIONAL (HK) CO., LIMITED |
| 160. | KINGS ROMANS INTERNATIONAL INVESTMENT CO. LIMITED |

| No. | Name |
|---|---|
| 161. | KOH KONG RESORT (a.k.a. "KOH KONG CASINO RESORT"; a.k.a. "KOH KONG RESORT AND CASINO"; a.k.a. "KOH RONG RESORT AND CASINO") |
| 162. | KOK, An |
| 163. | KONG, Ka On |
| 164. | L.Y.P. GROUP CO., LTD (a.k.a. "L.Y.P. GROUP") |
| 165. | LEE LAW FIRM |
| 166. | LEGEND PERFECT LIMITED |
| 167. | LEI, Bo |
| 168. | LEISURE FOCUS LIMITED |
| 169. | LI HONGCHUN |
| 170. | LI, Caiyun |
| 171. | LI, Hui |
| 172. | LI, Thet (a.k.a. "LI, Tian") |
| 173. | LINGMING ZHEN (a.k.a. "Weiting Chen") |
| 174. | LUBIAN |
| 175. | LUFFA TECHNOLOGY NETWORK COMPANY LIMITED |
| 176. | LUO, Brendon (a.k.a. "LUO, Pinghua") |
| 177. | LUO, Hong |
| 178. | LUXURIANT EAST LIMITED |
| 179. | Ly, Yong Phat (a.k.a. "PAD SUPA"; a.k.a. "PAT SUPAPHA"; a.k.a. "PHAT SUPHAPHA"; a.k.a. "PHAT, Suphapha"; a.k.a. "PUT SUPAPA") |
| 180. | M D S HENG HE INVESTMENT CO LTD |
| 181. | MAJESTY PROPERTIES CO. LTD. |
| 182. | MAJESTY PROPERTIES PTE. LTD. |
| 183. | MAPLE BLISS LIMITED |
| 184. | Marino Murillo Jorge |
| 185. | MAXICITY HOLDINGS LIMITED |
| 186. | MEKONG POTABLE WATER CONSTRUCTION IMPORT EXPORT CO LTD (a.k.a. "MEPOWACIMEX") |
| 187. | MIAH, Hassan |
| 188. | MIGHTY DIVINE FINE ART FUND |
| 189. | MIGHTY DIVINE FUND SPC |
| 190. | MIGHTY DIVINE GLOBAL FUND SPC |
| 191. | MIGHTY DIVINE HK LIMITED |
| 192. | MIGHTY DIVINE INSURANCE BROKERS LIMITED |
| 193. | MIGHTY DIVINE INVESTMENT MANAGEMENT LIMITED |
| 194. | MIGHTY DIVINE MANAGEMENT LIMITED |

| No. | Name |
|---|---|
| 195. | MIGHTY DIVINE PERSONNEL CONSULTANTS LIMITED |
| 196. | MIGHTY DIVINE SECURITIES LIMITED |
| 197. | MIGHTY DIVINE TRUST HONG KONG LIMITED |
| 198. | MINGMEN LONDON LTD |
| 199. | MINYI TANG |
| 200. | MYANMAR YATAI INTERNATIONAL HOLDING GROUP CO., LTD. (a.k.a. “SHWE KOKKO SPECIAL ECONOMIC ZONE”; a.k.a. “YATAI NEW CITY”; a.k.a. “YATAI SMART INDUSTRIAL NEW CITY”) |
| 201. | NAI HUNG KWAN |
| 202. | NAN TIAN INTERNATIONAL HOTEL CO LTD (a.k.a. “NAN HAI INTERNATIONAL HOTEL CO LTD”; a.k.a. “NAN HAI REAL ESTATE DEVELOPMENT CO LTD”) |
| 203. | NOVA LUXE GLOBAL LIMITED |
| 204. | NOVA MANAGEMENT SERVICES LIMITED |
| 205. | OO, Saw Min Min |
| 206. | ORIENT POWER INTERNATIONAL LIMITED |
| 207. | O-SMACH RESORT (a.k.a. “O SMACH RESORT”; a.k.a. “O’SMACH CASINO RESORT”) |
| 208. | PATH-BREAKER LIMITED |
| 209. | PAYBBY CORP. |
| 210. | PEARL COVE LIMITED |
| 211. | PERFECT SKILL HOLDINGS LIMITED |
| 212. | PHNOM PENH HOTEL |
| 213. | PLI NO.2 LIMITED |
| 214. | PREMIUM FINANCIAL LIMITED |
| 215. | PRINCE BANK PLC. (a.k.a. “PRINCE FINANCE PLC”) |
| 216. | PRINCE BUSINESS OPERATING MANAGEMENT CAMBODIA CO. LTD. |
| 217. | PRINCE CLUB MANAGEMENT CAMBODIA CO. LTD. |
| 218. | PRINCE CULTURE AND MEDIA CO. LTD. |
| 219. | PRINCE CULTURE AND TOURISM DEVELOPMENT CO. LTD. |
| 220. | PRINCE FOUNDATION |
| 221. | PRINCE GROUP HOLDINGS LIMITED |
| 222. | PRINCE GROUP PLC. |
| 223. | PRINCE HAPPINESS PLAZA CO. LTD. |
| 224. | PRINCE HOLDING GROUP |
| 225. | PRINCE HOLDING PLC. |
| 226. | PRINCE HOROLOGY VOCATIONAL TRAINING CENTER (a.k.a. “PRINCE HOROLOGY”) |
| 227. | PRINCE HORTICULTURE DEVELOPMENT CO. LTD. |

| No. | Name |
|---|---|
| 228. | PRINCE HOSPITALITY MANAGEMENT CO. LTD. |
| 229. | PRINCE HUAN YU ARCHITECTURAL DECORATION ENGINEERING CAMBODIA CO. LTD. |
| 230. | PRINCE HUAN YU CAMBODIA GEOLOGICAL SURVEY DESIGN CO. LTD. |
| 231. | PRINCE HUAN YU REAL ESTATE CAMBODIA GROUP CO. LTD. (a.k.a. “PRINCE HUAN YU CAMBODIA INVESTMENT CO. LTD.”; a.k.a. “PRINCE HUAN YU REAL ESTATE GROUP”; a.k.a. “UNI MORE GROUP CO. LTD.”) |
| 232. | PRINCE KOH TA KIEV CO. LTD. |
| 233. | PRINCE MARKETING PLANNING AGENCY CAMBODIA CO. LTD. |
| 234. | PRINCE MEDIA GALLERY CO. LTD. |
| 235. | PRINCE PALACE JEWELRY LIMITED |
| 236. | PRINCE PLAZA INVESTMENT CO. LTD. |
| 237. | PRINCE PROPERTY CAMBODIA MANAGEMENT CO. LTD. |
| 238. | PRINCE REAL ESTATE (CAMBODIA) GROUP CO. LTD. |
| 239. | PRINCE REAL ESTATE CAMBODIA |
| 240. | PRINCE REAL ESTATE CAMBODIA GROUP CO. LTD. |
| 241. | PRINCE REAL ESTATE DECORATION ENGINEERING CO. LTD. |
| 242. | PRINCE REAL ESTATE GROUP |
| 243. | PRINCE SEASHORE NO. 1 CO. LTD. |
| 244. | PRINCE SMART GARDEN CO. LTD. |
| 245. | PRINCE SUPER MARKET CAMBODIA CO. LTD. |
| 246. | PRINCE TIAN XI WAN CO. LTD. |
| 247. | PRINCE TIMES HOTEL MANAGEMENT CO. LTD. |
| 248. | PRINCE TIMES PLAZA CO. LTD. |
| 249. | PRINCE VANGUARD DEVELOPMENT CO. LTD. |
| 250. | PRINCE YACHT CLUB CAMBODIA CO. LTD. |
| 251. | QIU, Guoxing |
| 252. | QIU, Weiren (a.k.a. “QIU, Dong”) |
| 253. | QIU, Yong |
| 254. | RICHWAY CONSTRUCTION ENGINEERING LIMITED |
| 255. | RITHY, Raksmei (a.k.a. “ORIYA, Ken”; a.k.a. “XIE, Liguang”) |
| 256. | ROCKET SANDBOX LTD |
| 257. | ROSY REALM INVESTMENTS LIMITED |
| 258. | SAI, Aung Linn (a.k.a. “SAI, Aung Lin”) |
| 259. | SAILING INVESTMENT MANAGEMENT LIMITED |
| 260. | SHE, Zhijiang |
| 261. | SHIH, Ting-yu (a.k.a. “SHIH, Vivian”) |

| No. | Name |
|---|---|
| 262. | SHWE MYINT THAUNG YINN INDUSTRY AND MANUFACTURING COMPANY LIMITED (a.k.a. "SHWE MYINT THAUNG YINN INDUSTRY & MANUFACTURING COMPANY LIMITED") |
| 263. | SINO PERFECT INDUSTRIES LIMITED |
| 264. | SKYLINE INVESTMENT MANAGEMENT PTE. LTD. |
| 265. | SMARTCORD LIMITED |
| 266. | SOLAR SCAPE LIMITED |
| 267. | SPLENDID FAVOUR VENTURES LIMITED |
| 268. | SSDD CONSTRUCTION MATERIAL CO LTD |
| 269. | STARRY DRAGON LIMITED |
| 270. | STERLING CAPITAL MANAGEMENT PTE. LTD. |
| 271. | SU, Guiqin |
| 272. | SU, Liangsheng |
| 273. | SUN AND SUN LIMITED (a.k.a. "SUN & SUN LIMITED") |
| 274. | SUPERIOR WINNER HOLDINGS LIMITED |
| 275. | SUPREME TREASURE INTERNATIONAL LIMITED |
| 276. | T C CAPITAL CO LTD (a.k.a. "GOLDEN SUN SKY CASINO AND HOTEL"; a.k.a. "GOLDEN SUN SKY ENTERTAINMENT CO LTD") |
| 277. | TAIWAN PRINCE REAL ESTATE INVESTMENT CO. LTD. |
| 278. | TANG, Nigel Wan Bao Nabil |
| 279. | TAN, Miranda |
| 280. | TEAM SUCCESS VENTURES LIMITED |
| 281. | TERRA COTTA WARRIORS ISLE OF DOGS LTD |
| 282. | TGC CAMBODIA CO. LTD. |
| 283. | TIGER MINES NEW YORK INC. |
| 284. | TING KAM CHEUNG |
| 285. | TOP BENEFIT INTERNATIONAL HOLDINGS LIMITED |
| 286. | TOP STRIDE INC. |
| 287. | TOP STRIDE INVESTMENT LIMITED |
| 288. | TWO WAY PR (a.k.a "TwoWayPR" or "TWPR") |
| 289. | TYCOON YACHTS HK LIMITED |
| 290. | UNITED FAITH LIMITED |
| 291. | VICTORY QUEST ENTERPRISES LIMITED |
| 292. | WAI SHEUNG CHAN |
| 293. | WANG, Guodan (a.k.a. "WANG, Rose") |
| 294. | WANG, Michelle Reishane |
| 295. | WARP DATA TECHNOLOGY LAO SOLE CO. LTD. |
| 296. | WARPCAPITAL YACHT MANAGEMENT PTE. LTD. |

| No. | Name |
|---|---|
| 297. | WEI, Qianjiang |
| 298. | WHITE HORSE HOTEL MANAGEMENT GROUP COMPANY LIMITED |
| 299. | WIN, Tin (a.k.a. "WIN, Saw Tin") |
| 300. | WISDOM PILOT LIMITED |
| 301. | WU ANN MING |
| 302. | XIA ZENG |
| 303. | XIHU RESORT HOTEL CO LTD (a.k.a. "XI HU INTERNATIONAL HOTEL CO LTD") |
| 304. | XIN JIN ("Hui Chen") |
| 305. | XIN TIAN JIAN CAMBODIA REAL ESTATE DEVELOPMENT CO. LTD. |
| 306. | XING TIAN DI CO LTD |
| 307. | XING YE HENG FU CO., LIMITED |
| 308. | XIONG WEI INVESTMENT CO LTD |
| 309. | XIONG WEI REAL ESTATE DEVELOPMENT CO LTD |
| 310. | XU, Aimin |
| 311. | YANBIN CHEN (a.k.a. "Yuanen Zheng") |
| 312. | YANBING CHEN (a.k.a. "Yehua Huang" or "Yun Ye") |
| 313. | YANG, Fan (a.k.a. "Alex Yang" or "Alex Yeung") |
| 314. | YANG, Jian |
| 315. | YANG, Yanming (a.k.a. "YANG, Kimi") |
| 316. | YATAI INTERNATIONAL HOLDING GROUP LIMITED (a.k.a. "YA TAI INTERNATIONAL HOLDING GROUP COMPANY LIMITED"; a.k.a. "YATAI INTERNATIONAL HOLDING") |
| 317. | YAU WING CONSTRUCTION AND ENGINEERING LIMITED |
| 318. | YEO, Sin Huat Alan |
| 319. | YING HANG IP |
| 320. | YUN KI ESTATE INTERMEDIARY CO., LTD (a.k.a. "Yun Ki") |
| 321. | ZHANG FAN |
| 322. | ZHI XIN INVESTMENT CO. LTD. |
| 323. | ZHI XU INVESTMENT CO. LTD. |
| 324. | ZHI XU KOH RATANAK HOTEL CO. LTD. |
| 325. | ZHONG CHENG GLOBAL LIMITED |
| 326. | ZHONG HENG INTERNATIONAL GROUP LIMITED |
| 327. | ZHONG XING GLOBAL LIMITED |
| 328. | ZHONG YING INVESTMENT LIMITED |
| 329. | Zhou, Guomin |
| 330. | ZHOU XU |
| 331. | ZHOU, Yun (a.k.a. "ZHOU, Sandy") |

| No. | Name |
|---|---|
| 332. | ZHU, Zhongbiao (a.k.a. “ZHU, Jack”) |
| 333. | PRINCE REAL ESTATE (CAMBODIA) INVESTMENT COMPANY, LIMITED |
| 334. | AMIGA ENTERTAINMENT LIMITED |
| 335. | ABLETON PRESTIGE GLOBAL LIMITED |
| 336. | TEO, Cliff (a.k.a. TEO, Kang-Yeow) |