# EXHIBIT 3

## Fourth Affidavit of J. Drury, dated Nov. 11, 2026

Case Number :BVIHCOM2026/0001

FILED
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS

1. Joint Provisional Liquidators
2. James Drury
3. Exhibit JKD-4
4. Sworn: 11 November 2026
5. Filed: 11 November 2026

Submitted Date:11/11/2026 16:29
Filed Date:12/11/2026 08:30
Fees Paid:274.20

**IN THE EASTERN CARIBBEAN SUPREME COURT**
**IN THE HIGH COURT OF JUSTICE**
**BRITISH VIRGIN ISLANDS**
**COMMERCIAL DIVISION**

**CLAIM NOS BVIHC (COM) 2026/0001 - 2026/0030**

**IN THE MATTER OF SURE TYCOON LIMITED AND TWENTY-NINE OTHER COMPANIES**

**AND IN THE MATTER OF THE INSOLVENCY ACT, 2003**

**BETWEEN:**

**THE ATTORNEY GENERAL**

**Applicant**

and

**1. AMBER HILL VENTURES LIMITED**
**2. AUSPICIOUS TYCOON LIMITED**
**3. BRIGHT TEAM GLOBAL LIMITED**
**4. DELIGHTFUL THRIVE LIMITED**
**5. EVEN SINCERITY LIMITED**
**6. FULAM INVESTMENT LIMITED**
**7. GIANT VICTORY HOLDINGS LIMITED**
**8. GOLDEN ASCEND INTERNATIONAL LIMITED**
**9. HARMONIC STATE LIMITED**
**10. JUMBO HIGH LIMITED**
**11. LATERAL BRIDGE GLOBAL LIMITED**
**12. LUMINOUS GLOW LIMITED**
**13. MIGHTY DIVINE LIMITED**
**14. NOBLE TITLE LIMITED**
**15. ORIENTAL CHARM HOLDINGS INVESTMENT LIMITED**
**16. PACIFIC CHARM HOLDINGS INVESTMENT LIMITED**
**17. PRAISE MARBLE LIMITED**
**18. PRINCE GLOBAL GROUP LIMITED**
**19. PRINCE GLOBAL HOLDINGS LIMITED**
**20. RESPECTFUL STEED LIMITED**
**21. RETAIN PROSPER LIMITED**
**22. ROBUST HARMONY LIMITED**
**23. SIMPLY ADVANCED LIMITED**
**24. SOUTHERN HERITAGE LIMITED**
**25. STAR MERIT GLOBAL LIMITED**
**26. STARRY BLOOM LIMITED**
**27. SURE TYCOON LIMITED**

**28. SWORD RIVER LIMITED**
**29. TOWARDS SUNSHINE LIMITED**
**30. UNITED RICHES GLOBAL LIMITED**

**Respondents**

---

**FOURTH AFFIDAVIT OF JAMES KENNETH DRURY**

*-The JPLs' Application for directions in relation to handover, discharge and the JPLs' remuneration-*

---

I, **JAMES KENNETH DRURY**, of Interpath (BVI) Ltd, PO Box 4571, LM Business Centre, Fish Lock Road, Road Town, Tortola, VG1110, Virgin Islands ("**Interpath**") **MAKE OATH** and say as follows:

## A. INTRODUCTION

1. I am a Managing Director of Interpath and one of the joint provisional liquidators of the companies listed in Schedule 1 to this affidavit (each a "**Company**" and together the "**Companies**"). I was appointed together with Mr Paul Pretlove and Mr David Standish (Managing Directors of Interpath Ltd, 10 Fleet Place, London EC4M 7RB) (together, the "**JPLs**") by the Orders of the Honourable Justice Mithani (Ag.) dated 9 January 2026, which appointments were continued by the Orders of Mithani J dated 29 January 2026 (together, the "**Appointment Orders**").

2. The Appointment Orders were made under 30 separate claim numbers (BVIHC (COM) 2026/0001 to 2026/0030) (the "**Originating Applications**"), which are heard together due to the interrelated facts and the common ultimate beneficial owner and controller of the Companies, Mr Chen Zhi ("**Mr Chen**"). Twenty-five of the Companies are represented by Campbells (the "**Campbells Companies**"), two are represented by Kobre & Kim ("**K&K**") (the "**K&K Companies**", being Amber Hill Ventures Limited and Lateral Bridge Global Limited) and the remaining three (Jumbo High Limited, Robust Harmony Limited and Sword River Limited) are unrepresented.

3. This is my fourth affidavit in these proceedings. I am duly authorised by my fellow JPLs to make this affidavit on their behalf, and I make it in support of the JPLs' application for directions filed on 11 November 2026 in relation to the implementation of the terms of the draft Judgment, the handover of the Companies to their director(s), the determination of the JPLs' fees and expenses and related issues, and the discharge

of the JPLs (the "**JPLs' Directions Application**"). A copy of the draft order sought (the "**Draft Order**") is appended to the JPLs' Directions Application. The JPLs' Directions Application is made (and the Draft Order sought) on the basis and subject to the matters set out in paragraphs 7 to 11 below.

4. Unless otherwise indicated, the facts and matters deposed to in this affidavit are within my own knowledge and I believe them to be true. Where facts and matters are outside my personal knowledge, they are derived from the documents or sources identified herein and are true to the best of my knowledge, information and belief. Where I refer to matters of law, I do so on the basis of advice received from the JPLs' BVI legal practitioners, Walkers, and I do not waive privilege in that advice.

5. Produced to me at the time of swearing this affidavit and marked Exhibit "JKD-4" is a bundle of documents referred to in this affidavit. Unless otherwise stated or the context otherwise requires, page references in this affidavit are to the page numbers of Exhibit JKD-4.

6. Nothing in this affidavit is intended to constitute, or constitutes, a waiver of legal privilege, which is expressly reserved.

## B. THE APPLICATIONS BEFORE THE COURT AND THE BASIS OF THIS AFFIDAVIT

7. At the hearing before Wallbank J KC (Ag.) on 21 October 2026, the Court indicated that the Originating Applications should be dismissed, that the Appointment Orders should also be discharged, and that the Court would hear the parties further on all consequential issues, including the orderly implementation of its decision and as to costs. At that hearing, the Court gave directions for the filing of applications in respect of consequential matters and listed the hearing of those matters for 8 and 9 December 2026 (the "**Consequentials Hearing**").

8. There are accordingly the following applications before the Court for determination (or which one or more of the parties has invited the Court to determine) at the Consequentials Hearing. In particular:

    (a) By letters from its solicitors, Withers BVI to the Registrar of the High Court of Justice, Commercial Division, and by Notice of Intention to Appear dated 5 November 2026, LexCollective (a United States non-profit organisation that works with survivors of alleged human trafficking and forced labour connected

with activities under consideration in these proceedings (the "**Survivors**")) gave notice of its intention to appear through counsel at the hearing on 8 December 2026, in support of the Originating Applications and to seek permission to participate and lead further evidence in support thereof and an order deferring the finalisation and hand down of the Court's judgment on the Originating Applications pending the Court's consideration of the same (the "**LexCollective Applications**") (**pages 1 to 12**).

(b) The Attorney General's applications (the "**AG's Applications**") by notice filed on 9 November 2026 for (i) permission to adduce and rely on further evidence set out in the Third Affidavit of the Attorney General and in the affidavit of Inspector Jermaine Agard (the "**Further Evidence Application**") and (ii) an order that the judgment circulated in draft on 22 October 2026 shall not be finalised and handed down and/ or the order giving effect to it shall not be sealed until the hearing and determination of the Further Evidence Application.

9. In addition, K&K indicated in its letter dated 2 November 2026 that the K&K Companies may apply under sections 172(2), 172(4) or 172(5) of the Insolvency Act, 2003 (the "**Act**") for directions as to who should bear the JPLs' remuneration (**pages 13 to 26**).

10. The JPLs are conscious the outcome of the AG's Applications and/ or the LexCollective Applications add a level of uncertainty as to next steps. We are also unaware of what further applications will be made prior to the Consequentials Hearing. As a consequence, it is entirely possible that the Consequentials Hearing will deal with different matters and the relief sought in the Application may not need to be addressed. However, in advance of the Court's determination of those applications and the Consequential Hearing, this affidavit and the JPLs' Directions Application necessarily proceed in line with the Court's present indication and on the footing, therefore, that the Court will dismiss the Originating Applications and/ or discharge the Appointment Orders.

11. Similarly, so far as concerns the K&K Companies' intimated application, the JPLs acknowledge, of course, that the decision as to who should pay the JPLs' fees and expenses is a matter for the Court. However, as matters stand, the general position pursuant to Section 172(2) of the Act is that the costs and expenses of a provisional liquidation are borne by the companies concerned, and the Appointment Orders so provide. For that reason, everything that follows in this affidavit is predicated on the

Court making an order that the JPLs' costs and expenses shall be paid from the assets of the Companies. If the Court were instead to order that those costs and expenses be borne by another person, the JPLs reserve the right to seek further or different directions.

## C. THE JPLS' COSTS AND EXPENSES

12. The JPLs have incurred costs and expenses (including the fees and disbursements of their legal practitioners and other agents in the Virgin Islands and other jurisdictions) in the total amount of US$54,535,011.29 for the period from 9 January 2026 to 31 October 2026[1] (the "**Remuneration**").

13. A breakdown of the current time costs are as follows:

| Firm | Source currency | Fees (USD) | Disburse-ments (USD) | Total (USD) |
|---|---|---|---|---|
| Interpath (9 Jan to 31 Oct 2026) | GBP/HKD/EUR/USD | 15,004,408.94 | 124,821.42 | 15,129,230.36 |
| Walkers (incl. KC invoices) | USD/GBP | 10,137,688.00 | 717,743.30 | 10,855,431.30 |
| Sullivan & Cromwell | USD | 24,232,540.00 | 175,227.17 | 24,407,767.17 |
| Oon & Bazul | SGD | 287,909.02 | 24,140.38 | 312,049.40 |
| Tanner de Witt (incl. SC in-voices) | HKD | 1,755,576.62 | 106,138.31 | 1,861,714.93 |
| PCB Byrne (incl. KC in-voices) | GBP | 651,628.74 | 162,678.10 | 814,306.84 |
| EGS LLP | USD | 165,265.00 | – | 165,265.00 |
| Pillsbury | USD | 490,732.80 | 33.49 | 490,766.29 |
| Duan & Duan | USD | 52,080.00 | – | 52,080.00 |
| Cuatrecasas | EUR | 446,400.00 | – | 446,400.00 |
| **Total** | | **53,224,229.12** | **1,293,837.80** | **54,535,011.29** |

[1] This includes all JPLs' fees to 31 October 2026 and professional fees to 30 September 2026, as the professional fees for October are not yet confirmed. This is subject to final review by the JPLs. The total of the Remuneration will necessarily increase as further costs are incurred by the JPLs and their advisors.

14. The figures set out in the table at paragraph 13 above represent the total time costs and disbursements recorded by the JPLs and their advisors. Certain of those fees may relate to work undertaken solely for, and at the instruction of, a particular entity in its own right, rather than work undertaken by or on behalf of the JPLs in their capacity as joint provisional liquidators of the Companies. By way of example, work carried out in relation to the Fenchurch Property, including the Possession Proceedings brought in the name of Noble Title Limited and related work concerning the security, insurance and management of the Fenchurch Property, has been undertaken for the benefit of, and is properly chargeable to, the relevant entity. Similar considerations may apply to work undertaken in relation to the Allied Cigar Group. The JPLs may not seek to recover the costs of such work as part of the Remuneration in these proceedings, because such costs may not constitute fees and expenses of the JPLs. The JPLs and their advisors are in the process of identifying the relevant entries, and those amounts will be removed from the totals set out above before the JPLs' application for approval of the Remuneration. The JPLs reserve their rights to recover such costs from the relevant entity.

15. Because of the sanctions and restraint orders affecting the assets of the Companies, the JPLs have not secured any readily available liquid assets from which payment can lawfully be made, and so no drawdown has been made from the assets of the Companies on account of the Remuneration. The JPLs have no third-party funding.

16. In the light of the significant financial risk assumed by the JPLs and their advisors, and the significant costs and resource required, the JPLs have agreed with certain of their advisors as part of their engagement an uplift on their fees. Such uplift will be included in the JPLs' application for remuneration and will be subject to the Court’s approval.

**D. WORK UNDERTAKEN**

17. The fees incurred to date are substantial. The matter – or rather 30 matters – are exceptionally complex. The JPLs have sought to take control of 30 companies and multiple subsidiaries whose assets are located in multiple jurisdictions and are largely frozen by sanctions, in the face of material non-cooperation from former officers and sustained opposition from the Campbells Companies, Mr Cosimo Borrelli (the purported director of the Campbells Companies), the K&K Companies and Mr Chen.

18. What follows is a brief summary of the work conducted by the various parties involved. The JPLs have sought throughout to avoid duplication between themselves and their

advisors, and between advisors in different jurisdictions, and I believe that the fees have been reasonably incurred.

**(1) The JPLs (Interpath)**

19. The work undertaken by the JPLs and their staff at Interpath has, by way of example, included the following:

(a) seeking to take control of 30 companies and many subsidiaries whose assets are spread across several jurisdictions and are largely frozen by sanctions, including by notifying directors and service providers of their appointment and requesting information concerning the Companies;

(b) reviewing extensive information obtained from Vistra, the former registered agent of the Companies, and undertaking extensive forensic reconstruction of the Companies' affairs, which has been necessary because other record holders and office holders have not cooperated;

(c) identifying assets of the Companies, including the Fenchurch Street property in London, interests in two companies listed on the Hong Kong Stock Exchange, commercial and residential property in Hong Kong, and investments in a smart technology company and a Cayman exempted limited partnership, and investigating the US$10 million compulsory redemption of the smart technology investment;

(d) engaging with the two HKEX listed companies and their advisors, with the management and service provider to the Cayman ELP and also with the Smart technology company and its legal advisors with a view to preserving the value of those assets and bringing them under the control of the JPLs;

(e) contacting at least 178 banks in Hong Kong, 8 banks in Singapore and 40 banks in Taiwan in the course of tracing assets;

(f) obtaining, following an extensive and urgent engagement process with the relevant authorities (commencing on 20 February 2026 and involving eleven further rounds of engagement with OFAC), sanctions authorisations from OFAC, OFSI and the Cayman Islands and Virgin Islands sanctions authorities, and thereafter navigating extremely complex sanctions restrictions in multiple jurisdictions;

(g) seeking recognition of their appointment abroad, including commencing Chapter 15 proceedings in the United States on 8 April 2026, and obtaining full provisional relief on 22 April 2026 despite objections from Boies Schiller Flexner and Kobre & Kim, and seeking recognition in England and Wales (granted on 17 August 2026), Singapore, Spain and Hong Kong;

(h) obtaining directions from this Honourable Court on 14 May 2026 that the opposing Companies have no power to appear in foreign recognition proceedings, attending the Hong Kong Department of Justice's restraint hearing, seeking variation of the restraint in the restraint proceedings and engaging with the Hong Kong Department of Justice's requests for information;

(i) asset tracing and investigations into the affairs of the Companies, including identifying significant assets omitted from the information provided by Mr Borrelli concerning the Companies' affairs (for example, an account held by Prince Global Holdings Limited with an approximate balance of US$198 million, a number of subsidiaries of the Companies and an investment of at least US$10 million in Aqara Investments Limited);

(j) taking steps to preserve the value of the commercial property at 6-12 Fenchurch Street and 1 Philpot Lane, London (the "**Fenchurch Property**") owned by Noble Title Limited, including seeking possession and insurance for the property and pursuing the possession claim in England, which was successfully pursued notwithstanding Mr Chen's opposition;

(k) taking steps to stabilise the Allied Cigar Group in the light of the sanctions, including appointment of one or more of the JPLs as directors within the Group (at significant personal risk to themselves), engagement with banks, insurance providers, and other service providers and dealing with factories in the Dominican Republic and Honduras, required for the Allied Cigar Group's manufacturing operations, to prevent the threat of imminent closure due to their inability to access banking services, fund payroll or receive payments from customers;

(l) engaging with law enforcement agencies and regulators, including the US Department of Justice and OFAC;

(m) Undertaking a number of Rule 2004 discovery enquiries pursuant to the JPLs' Chapter 15 powers;

(n) requesting, reviewing and seeking to reconcile information concerning the affairs of the Companies, including information concerning the 25 Campbells Companies provided some three months after request, and pursuing the K&K Companies, whose directors have ignored all requests for information;

(o) keeping the Court informed of the progress of the provisional liquidation, on a sealed basis as directed by the Court on 29 January 2026; and

(p) responding to the multiple challenges brought by, or in the names of, the Companies in relation to every substantive step.

**(2) Walkers (BVI and Cayman Islands legal practitioners)**

20. Walkers have acted as the JPLs' BVI and Cayman Islands legal practitioners throughout the provisional liquidation. Walkers' work has included the following:

(a) investigating the Companies through BVI company and court searches and registry searches, and reviewing information obtained from Vistra;

(b) advising on routes to control various Prince Group subsidiaries, on the JPLs' powers under the Act, on compliance with the BVI and Cayman Islands sanctions regimes, and on foreign recognition in the Cayman Islands, England and Wales, Hong Kong and Singapore;

(c) engaging with the BVI and Cayman Islands sanctions authorities and the Cayman Islands Monetary Authority;

(d) taking the corporate steps required for the JPLs to take control of Prince Group entities across several jurisdictions;

(e) preparing for, assisting with and attending the two-day hearing in these proceedings on 16 and 17 April 2026;

(f) attending the Fenchurch Property on 26 February 2026, where access was refused;

(g) seeking recognition of the JPLs in England and Wales under section 426 of the Insolvency Act 1986 and in Hong Kong, and assisting in the US Chapter 15 proceedings, including attending the hearing before Judge Glenn on 22 April 2026;

(h) the JPLs' request in May 2026 for declarations, and the opposition of the Campbells Companies and the K&K Companies (which sought declarations that the directors could oppose foreign recognition of the JPLs), culminating in the Court's determination on 14 May 2026 that the directors of each of the Companies do not have authority in the name of such Company to oppose or interfere with the exercise by the JPLs of their powers conferred on their appointment;

(i) the Campbells Companies' appeal of the order of Wallbank J KC (Ag.) made on 14 May 2026, which held that the directors' residual powers are limited to opposing the liquidation applications, opposing or applying to vary or discharge the provisional liquidation orders, and appealing decisions on those applications, and do not extend to causing the Companies to oppose foreign recognition proceedings (the "**14 May Order**") and their requests for a stay of execution, which were determined not to be urgent by the Court of Appeal on 9 June 2026 and dismissed without a hearing on 22 July 2026;

(j) the Campbells Companies' challenge in May 2026 to the terms of the JPLs' appointment, and their challenge in June 2026 to the Court's requests for assistance from the English and Hong Kong courts, together with the JPLs' steps in July 2026 to have those challenges struck out;

(k) seeking extensions of time for the determination of these proceedings, which the K&K Companies unsuccessfully opposed and in respect of which they were ordered to pay the Attorney General's costs;

(l) extensive engagement with Campbells and K&K concerning requests for information concerning the Companies' affairs, and protracted engagement with Campbells regarding Mr Borrelli's purported appointment as director, and with Vistra, Berkeley Square Solicitors and Lee Law Firm;

(m) identifying professional company secretarial service providers in Hong Kong willing to act notwithstanding the sanctions and associated regulatory risks, and arranging their appointment;

(n) assisting the JPLs in keeping the Court informed; and

(o) preparing for the JPLs' request for directions to be considered at the Consequentials Hearing.

**(3) Sullivan & Cromwell LLP (United States and English counsel)**

21. Sullivan & Cromwell LLP ("**S&C**") was engaged on 9 January 2026. Its New York office acts as the JPLs' US counsel and its London office advises on English-law restructuring, insolvency and corporate matters and UK and EU sanctions. S&C's work during the period to 30 September 2026 has included the following:

(a) United States:

(i) tracing assets across several jurisdictions and coordinating the forensic accounting and blockchain analysis;

(ii) advising the JPLs on US bankruptcy options and acting in the US Chapter 15 proceedings, including filing the verified Chapter 15 petition on 8 April 2026; arguing the provisional relief hearing on 22 April 2026 and the recognition hearing on 9 June 2026; taking the depositions of Mr. Borrelli and his BVI law expert, Dr Riz Mokal; defending the depositions of Mr Pretlove and the JPLs' BVI law declarant, Mr Andrew Chissick; and preparing related filings in the US Chapter 15 proceedings. Both the Campbells Companies and the K&K Companies opposed recognition and, after the 14 May Order, Mr Borrelli opposed recognition in his own name. The US Court held that Mr Borrelli lacked standing and entered an order on 18 June 2026 granting recognition (the "**Recognition Order**");

(iii) responding to the appeal brought by Mr Borrelli against the Recognition Order, including moving to dismiss the appeal for lack of standing;

(iv) leading the US sanctions workstream, including expedited engagement with OFAC from 20 February 2026 and eleven further rounds of

engagement, and advising the JPLs on, and responding to, inquiries from stakeholders, contractual counterparties and service providers of the Companies and their subsidiaries regarding the scope of the OFAC licence;

(v) providing extensive sanctions advice to the JPLs to assist in stabilising the Allied Cigar Group after the October 2025 OFAC designations. S&C also communicated with the Group's banks, insurers and service providers to keep business-critical services running consistent with, and in connection with the implementation of, the OFAC License; and

(vi) engaging with law enforcement agencies, regulators, and victim advocacy organisations, including the US Department of Justice and OFAC.

(b) England and Wales:

(i) Leading the UK and EU sanctions workstreams from London on behalf of the JPLs, including communicating with the UK Foreign, Commonwealth and Development Office and OFSI to obtain the OFSI general licence and its subsequent amendment, and advising on its scope, reporting obligations and related UK financial crime compliance. This work also included engagement with the European Commission on behalf of the JPLs and, alongside local counsel, various national authorities and courts on EU sanctions restrictions and asset freezes related to the Prince Group entities, including seeking relief from sanctions, and communicating with third-parties with respect to the scope of applicable sanctions and the licences received from OFAC and OFSI, as well as coordinating with the UK Foreign, Commonwealth and Development Office, Walkers and S&C New York on the interaction of the UK, EU, BVI, Cayman Islands and US sanctions regimes;

(ii) analysing the routes to recognition in England and Wales under the Cross-Border Insolvency Regulations 2006 and section 426 of the Insolvency Act 1986;

(iii) coordinating with other advisers to the JPLs on recognition proceedings in other jurisdictions and on a proposed cross-border court communication protocol;

(iv) seeking recognition under section 426 of the Insolvency Act 1986 in England and Wales of Noble Title Limited's provisional liquidation and the JPLs' appointment as joint provisional liquidators, and undertaking related workstreams;

(v) identifying and investigating the Companies' UK assets; assisting with matters relating to the preservation and recovery of the Fenchurch Street Property and certain funds, providing advice on the interplay between the recognition and possession proceedings; and

(vi) advising the JPLs on corporate governance and management protocols within the Allied Cigar Group.

**(4) PCB Byrne LLP (English solicitors)**

22. PCB Byrne LLP ("**PCBB**") has acted as the JPLs' English solicitors since 9 March 2026, principally in contentious matters affecting the Fenchurch Property and other assets / claims with a UK nexus. PCBB's work has included the following:

(a) undertaking registry searches in respect of the Fenchurch Property, investigating the existing occupation arrangements, and advising on the JPLs' entitlement to possession against trespassers, and on related sanctions, recognition and supplier issues;

(b) considering service on persons unknown, notifying the trespassers that any licence to occupy the Fenchurch Property was terminated and informing them of the JPLs' intention to bring possession proceedings;

(c) preparing the possession claim, including the evidence and engagement with counsel (the "**Possession Proceedings**");

(d) liaising with the tenants at the Fenchurch Property and the former managing agents in relation to information and assistance required for the Possession Proceedings;

(e) preparing for the hearing of the Possession Proceedings in the High Court, including liaising with Mr Chen's solicitors Berkeley Square Solicitors, and engaging with the tenants' solicitors in relation to the hearing;

(f) obtaining and assisting in arranging the enforcement of a writ of possession in respect of the Fenchurch Property;

(g) obtaining permission from Chief Master Shuman for the Possession Proceedings to be issued in the High Court and arranging for good service of the Possession Proceedings at the Fenchurch Property;

(h) attending the hearing of the Possession Proceedings before Mr Justice Leech, which Berkeley Square Solicitors, for Mr Chen, unsuccessfully opposed and in which Mr Chen was ordered to pay £50,000 of costs by 3 August 2026, which remains unpaid;

(i) considering Mr Chen's attempt to obtain permission from the Court of Appeal to appeal the decision of Mr Justice Leech in the Possession Proceedings and setting out to the Court of Appeal the reasons why permission to appeal should not be granted;

(j) advising generally on sanctions issues affecting the Possession Proceedings, the Fenchurch Property and other claims / assets with a UK nexus;

(k) Engaging with Jones Day, solicitors for Cushman & Wakefield, the former property manager of the Fenchurch Property, to obtain release of funds and information held on behalf of Noble Title; and

(l) engaging with Berkeley Square Solicitors on an ongoing basis, including in relation to the trespassers, the costs order of Mr Justice Leech and other matters relating to the JPLs' dealings with the Fenchurch Property; and

(m) corresponding generally in relation to contentious matters affecting the Fenchurch Property, including with Regent Gas concerning a threatened gas disconnection, with a former contractor and with tenants.

**(5) Tanner De Witt (Hong Kong counsel)**

23. Tanner De Witt ("**TDW**") was engaged on 22 January 2026 as the JPLs' Hong Kong counsel. TDW's work has included the following:

(a) advising the JPLs on the recognition of their appointment and the exercise of their powers in Hong Kong, including contributing to Walkers' work in seeking recognition and assistance in Hong Kong, and providing Hong Kong law, factual and procedural input in connection with related proceedings in the BVI, the United States, England and Wales, Singapore and Spain; and acting for the JPLs in HCMP 1224 of 2026 (the "**HK Recognition Proceedings**"), commenced on 27 July 2026 and opposed by multiple parties, including the Secretary for Justice and Mr Borrelli, with TDW preparing for and attending hearings, and engaging with the Department of Justice, Georgiou Partnership, James K.L. Sin & Associates, Grant Thornton, Lee Law Firm, K.T. Tam & Co., Liva Law & Associates and Howse Williams as representatives of, or parties interested in, the defendants and other parties to those proceedings;

(b) advising the JPLs on the asset restraints imposed by the Hong Kong Police and the restraint obtained by the Secretary for Justice, and acting for certain Companies and Hong Kong subsidiaries named as respondents in HCMP 661 of 2026 (the "**HK Restraint Proceedings**"), including attending the *ex parte* hearing on 4 May 2026 and subsequent hearing; advising on and seeking variation of the restraint, including in relation to legal and administrative expenses and the release of unrestrained funds; preparing for and attending related hearings; engaging extensively with the Department of Justice concerning the JPLs' role and authority; and liaising with Senior Counsel in relation to those proceedings;

(c) advising the JPLs in relation to Geotech Holdings Limited ("**Geotech**") and Khoon Group Limited ("**Khoon**"), the two Hong Kong listed companies (HKEX1707 and HKEX924 respectively) majority-owned by the Companies, including monitoring Hong Kong Stock Exchange ("**HKEX**") developments and advising on the effect of the US and UK sanctions, the restraint and the suspension of trading on the Companies' shareholdings;

(d) engaging with HKEX and the Securities and Futures Commission to seek regulatory cooperation and advising on the HKEX Main Board Listing Rules and other relevant regulatory requirements, shareholder information and intervention rights, options for obtaining further information or control, the effect of trading suspensions and the Restraint Order, and the feasibility of disposing of the Companies' listed shareholdings; and, in relation to Geotech, engaging with its board, HKEX and prospective auditors in an effort to preserve its listing status

and address the risk of accelerated delisting, and in relation to Khoon, advising on and taking steps concerning its suspension and subsequent delisting;

(e) advising on and taking steps to obtain, implement and maintain control of certain Hong Kong incorporated subsidiaries of the Companies (the "**Hong** Kong **Subsidiaries**"), including taking the necessary corporate steps; advising on changes to banking authorities and account signatories; making or advising on Companies Registry compliance; and addressing competing corporate actions and thereafter assisting with their ongoing corporate and regulatory compliance;

(f) advising on and taking steps directed at establishing title to, obtaining access to and information concerning, and securing control or preservation of, the Hong Kong properties at 68 Kimberley Road and House 1, 8 Mount Nicholson Road, including liaising with Walkers, Campbells, relevant property managers, and other parties, and advising on the effect of the Restraint Order on the steps available to the JPLs in relation to those properties;

(g) conducting investigations to identify and preserve assets and obtain information concerning the Companies and their Hong Kong subsidiaries, including searches of the Land Registry and Companies Registry to identify properties, subsidiaries and other interests associated with Prince Group and to ascertain whether the Restraint Order had been registered against them;

(h) engaging extensively with Hong Kong banks, the Inland Revenue Department, property managers, landlords, auditors, company secretarial service providers and other relevant third parties to obtain information concerning the Companies, their Hong Kong subsidiaries, assets and affairs, and to assist the JPLs' continuing investigations; and

(i) advising on the implications of any discharge of the JPLs for the pending requests to vary the Restraint Order in the HK Restraint Proceedings, including the need to inform the Hong Kong Court and any consequential directions that may be required as to the continuation or other disposal of those requests and any subsisting undertakings.

**(6) Oon & Bazul (Singapore counsel)**

24. Oon & Bazul ("**O&B**"), now known as Bazul LLC, was instructed on 21 January 2026 as the JPLs' Singapore counsel. O&B's work has included the following:

(a) tracing assets and gathering information in Singapore, including searches with the Singapore companies registry to verify shareholdings and directorships and identify connected individuals, investigating Mr Chen's Singapore properties, and monitoring court proceedings and public developments;

(b) advising on enforcement and recovery strategies in Singapore, and keeping the JPLs regularly updated on the progress of investigations;

(c) seeking, on behalf of the 30 Companies, recognition by the General Division of the High Court of Singapore of the provisional liquidations of the Companies under the UNCITRAL Model Law on Cross-Border Insolvency (as given effect in Singapore), in proceedings which were subsequently transferred to the Singapore International Commercial Court (the "**SICC**"), advising the JPLs and Walkers on the legal and evidential requirements for recognition, notifying interested parties, and conducting the recognition proceedings through to the substantive hearing on 7 October 2026, including attending case management conferences and assisting with arrangements for court-to-court communication;

(d) responding to the attempts by the K&K Companies, notwithstanding the 14 May Order, to participate in and oppose the recognition proceedings, and to Mr Borrelli's attempts to intervene in his personal capacity, including by objecting to, and seeking to stay, the recognition proceedings;

(e) engaging with Singapore banks to obtain information and preserve assets, and with Campbells concerning Khoon Group Limited; and

(f) engaging with the Singapore law enforcement authorities in relation to assets of, or connected to, the Companies which are held or restrained in Singapore, including asserting the JPLs' interest in those assets.

**(7) Cuatrecasas (Spanish counsel)**

25. Cuatrecasas ("**CC**") acts as the JPLs' Spanish counsel. CC's role is to advise and support the JPLs as directors of the Spanish Subsidiaries of Asia Uni Corporation Limited. CC's work has included the following:

(a) undertaking Commercial Registry searches and investigating the affairs of the Spanish Subsidiaries, including the pre-insolvency court proceedings, their financial position, joint venture arrangements and material contractual arrangements;

(b) advising on directors' duties under Spanish insolvency law, including on the duty to file for insolvency and the absence of a current insolvency situation, and on appointing the JPLs to the boards of the Spanish Subsidiaries and subsequent changes to board composition;

(c) putting in place limits on the CEO's authority in line with the applicable US sanctions requirements;

(d) advising on the pre-insolvency proceedings commenced by the former directors and attending meetings with the Madrid Commercial Court judge, including seeking from the court a suspension of the termination of banking services and coordinating with S&C and Walkers on cross-border strategy and OFAC licensing, and engaging with Teneo, the restructuring expert appointed by the court;

(e) taking the corporate steps necessary to, inter alia, change the directors of the four Spanish Subsidiaries, implement the limits on the CEO's authority and appoint the auditor;

(f) advising on the Spanish Subsidiaries' statutory financial reporting obligations, including the risks and consequences of failing to comply with them within the statutory deadline;

(g) advising on the potential appointment of a further independent director to the boards of the Spanish Subsidiaries, including the related directorship and indemnity arrangements;

(h) seeking recognition in Spain;

(i) providing employment law advice in relation to the management and employees of the Spanish Subsidiaries;

(j) advising, including from a tax and conflicts perspective, on arrangements for the payment of advisors' fees incurred in connection with the Spanish Subsidiaries;

(k) advising on the application of the EU restrictive measures under Council Regulation (EU) 2020/1998 to the Allied Cigar Group, including engaging with the Spanish Treasury; and

(l) coordinating with the management of the Allied Cigar Group on critical payments and on the related authorisations sought from the Spanish Treasury and the group's bank.

**(8) PRC counsel – Duan Duan**

26. The JPLs' PRC counsel has, at a high level, provided updates and summaries in relation to historical criminal proceedings in the PRC against certain individuals purportedly associated with the Prince Group, assisted with the JPLs' strategy for engagement with the PRC authorities, and investigated assets identified and seized in the PRC.

**(9) Other advisors**

27. The JPLs have engaged other advisors, whose costs will be addressed in the Remuneration Application.

**E. ENTITLEMENT TO PAYMENT**

28. The JPLs are entitled under the Appointment Orders to be paid their costs and expenses from the assets of the Companies. In particular:

(a) paragraph 8 of each Appointment Order dated 9 January 2026 provides for the costs of the provisional liquidation to be paid out of the assets of the relevant Company, in priority to all other claims:

"*the costs of the provisional liquidation, including the proper fees and disbursements of the Joint Provisional Liquidators and the Applicant's costs of complying with the Protocol be paid out of the assets of the Company in priority to all other claims*"; and

(b) paragraph 3(k) of each Appointment Order provides:

"*The Joint Provisional Liquidators may draw down payments on account of their remuneration, expenses and disbursements from time to time at a rate of 80% of their time costs and 100% of their expenses and disbursements, subject to these being subsequently approved by the court, and in the event that such sums are not approved, the unapproved sums be repaid to the Company within 7 days.*"

29. There has been no appeal against the Appointment Orders, which as at the date of this Affidavit remain in place.

30. Further, I am advised that, under section 172(2) of the Act, the remuneration of a provisional liquidator is payable out of the assets of the relevant company and that, if a liquidator is appointed, section 172(3), and section 207(1) of the Act and rule 199 of the Insolvency Rules provide for the remuneration of a provisional liquidator to be paid as a liquidation expense in the prescribed priority.

31. The JPLs therefore seek directions for the assessment and approval of the Remuneration.

**F. ALLOCATION**

By paragraph 1(b) of the Draft Order, the JPLs seek directions for the filing of an application for orders that the Remuneration be paid out of the assets of one or more of the Companies, and that the liability of the Companies for payment of the Remuneration be joint and several as between the Companies (the "**Allocation Application**").

32. It was envisaged that the JPLs would apply for a form of provisional pooling order in relation to the payment of their general fees and, thereafter, the JPLs would apply, after further investigations, to apportion their costs and expenses across the various Companies in a manner which is fair, reasonable and for the benefit of the creditors and victims. By way of example, the costs of a recognition application in Hong Kong may allow the JPLs to secure assets of some (but not all) of the Companies, for the benefit of some (but not all) creditors, raising the question whether those costs should be apportioned across (a) all the Companies, (b) only those Companies with a Hong Kong nexus, or (c) only those Companies from which asset recoveries are made.

33. However, in the light of the Court's indication on 21 October 2026, the JPLs may not have the opportunity to complete those investigations before their discharge, and the question of allocation must now be determined as part of the consequential arrangements. Certain of the Companies hold substantial and relatively liquid assets, whereas others appear to hold no assets, or hold assets that are illiquid or subject to the Hong Kong restraint orders. A large proportion of the work of the JPLs and their advisors, including obtaining and maintaining the Sanctions Licences, obtaining recognition in the United States, England and Wales, Singapore and Hong Kong, asset tracing, and responding to the challenges brought by or in the names of the Companies, has been undertaken for the benefit of all of the Companies.

34. It is the JPLs' position that it is appropriate for costs to be apportioned across the 30 Companies in a form to be directed by the Court. The basis for the Allocation Application will be set out in evidence in support.

35. Any order made under section 172(2) of the Act must be sufficiently broad to permit all of the Companies (and not merely individual Companies) to bear the JPLs' costs, such that the assets of one Company may be applied to Remuneration incurred in relation to one or more of the other Companies, as reflected in the wording in the recital to, and paragraph 1(b) of, the Draft Order.

**G. RETENTION OF ASSETS**

36. Section 172(2) provides that the remuneration of a provisional liquidator is payable out of the assets of the relevant company. In support of that position, paragraph 7 of the Draft Order provides that the Remuneration shall, until paid in full, operate as a lien on all the assets of each of the Companies regardless of any change in the assets of the Companies.

**H. HANDOVER**

37. By paragraph 5 of the Draft Order, the JPLs propose that, upon the Remuneration being paid in full, the JPLs promptly arrange the orderly handover of the Companies. The Draft Order includes some suggested wording as to the steps that are likely to be required in relation to the handover, but the JPLs stand ready to conduct the handover in such manner as the Court may direct and I refer to some relevant considerations in this regard further below.

38. Paragraph 6 of the Draft Order provides that the order of the Court giving effect to its decision to dismiss the Originating Applications shall take effect on completion of the handover (and, therefore, after the Court's determination of the Remuneration Application and the Allocation Application and payment in full of the Remuneration), upon which the JPLs' appointment would terminate pursuant to section 173(2) of the Act.

39. By letter to Walkers dated 2 November 2026, K&K stated that the K&K Companies would be content for the Court to decide at the Consequentials Hearing who should bear the JPLs' remuneration and expenses, and to give directions for the later determination of its amount (**pages 13 to 26**). The JPLs' proposal that the handover and their discharge follow determination and payment of the Remuneration is consistent with that sequencing.

40. I set out below the steps that the JPLs have identified as necessary for an orderly handover, such that the Court may make appropriate directions.

**Director and officer changes**

41. The Court will need to determine, for each of the Companies, the persons in whom control would revest on discharge. Mr Chen was the sole director of a majority of the Companies. Different directors were recorded for certain entities. These included Fan Yang (Amber Hill Ventures Limited), Minyi Tang (Lateral Bridge Global Limited), Haoran Sheng (Fulam Investment Limited, Noble Title Limited and Retain Prosper Limited), Xia Zeng (Golden Ascend International Limited), Li Caiyun (Oriental Charm Holdings Investment Limited), Yun Zhou (Bright Team Global Limited and Mighty Divine Limited) and Hui Sai Kwong, Garrison (Praise Marble Limited) and Chao Fu (Jumbo High Limited).

42. Mr Borrelli purports to have been appointed as a director of the Campbells Companies pursuant to powers of attorney issued by Mr Chen to unknown individuals. Despite repeated requests by Walkers on behalf of the JPLs (including letters of 25 February, 5 March, 19 March, 27 March and 1 April 2026 (**pages 27 to 41**)), neither Campbells, Mr Borrelli, Boies Schiller Flexner LLP ("**BSF**") nor Berkeley Square Solicitors has produced the powers of attorney, even in redacted form, or identified the attorneys-in-fact. Mr Borrelli has never provided the JPLs with evidence of his valid appointment.

43. The JPLs are cognisant that returning control of designated entities to a designated person, or to persons acting on his behalf (by way of power of attorney or otherwise) may itself raise significant sanctions issues in the United States, the United Kingdom, the Virgin Islands and the Cayman Islands. The JPLs will need to establish the position and reserve the right to file further evidence on this issue in due course.

44. Campbells initially held itself out as acting for Jumbo High Limited, including at the hearing on 29 January 2026, and provided an unsigned statement of affairs for it. By letters dated 10 and 20 March 2026, Campbells said this was an "administrative error". (**pages 42 to 48**). To the best of my knowledge and belief, no person has since established authority to act for Jumbo High Limited. Campbells has not responded to Walkers' letter of 24 March 2026 asking who sought to give instructions on its behalf (**pages 49 to 50**).

45. In exercising their powers as shareholders, the JPLs have caused changes to the boards of a number of subsidiaries. See at Schedule 2 to this Affidavit the subsidiaries to which directors have been appointed.

46. On discharge, Mr Pretlove, Mr Drury and Mr Standish would resign from those directorships. Resignations, the termination of the governance protocol agreed with the Cigar Group's CEO for approving key operational and financial matters, and the corresponding filings with the Spanish Commercial Registry and other registries would be needed in each relevant jurisdiction.

47. On 16 March 2026, the JPLs removed and replaced the director of the Hong Kong subsidiary that directly owns the Hong Kong commercial property described below. The JPLs also took up directorships of several Hong Kong-registered sanctioned subsidiaries. Those directors would resign and successors would need to be appointed.

48. Vistra resigned as registered agent of the Companies with the Registrar of Corporate Affairs (the “**Registrar**”). Each Company must have a duly appointed and willing registered agent, so that it can meet its obligations under the BVI Business Companies Act, 2004. No replacement registered agent has been appointed to any of the Companies.

49. I believe that any discharge order should specify, entity by entity, the board to be reinstated. It should also address the position of any entity whose recorded directors are designated persons, unable to act or of unverified authority.

**Extant applications**

*BVI*

50. Several applications remain before this Court. They include:

(a) Campbells' applications to vary the powers conferred on the JPLs dated 7 May 2026;

(b) the appeals by Campbells and by K&K against the 14 May Order;

(c) Campbells' application to set aside the 14 May Order dated 24 June 2026 (the "**Set Aside Application**");

(d) The JPLs' application to strike out the Set Aside Application; and

(e) Campbells' application dated 8 October 2026, which seeks declarations and orders restraining the JPLs from marketing or selling the Fenchurch Property.

The JPLs gave notice of their appointment to the Registrar on 13 and 15 January 2026, and the Registrar approved those filings on 21 and 22 January 2026. A corresponding notice of discharge would need to be filed for each Company.

*USA*

51. On 9 June 2026, the US Court heard the JPLs' petition for recognition. By a memorandum opinion dated 11 June 2026, it recognised the BVI proceedings as foreign main proceedings and held that Mr Borrelli lacked standing to oppose recognition, and on 18 June 2026 it entered the Recognition Order. Among other things, the Recognition Order (a) granted comity and full force and effect to the Appointment Orders; (b) enjoined all persons subject to the U.S. Court's jurisdiction from acting in the name of the Companies or their controlled subsidiaries without the prior authorisation of the JPLs, the US Court or this Court; (c) entrusted the administration and realisation of the Companies' assets within the United States to the JPLs; and (d) authorised discovery. I am advised by S&C, and believe, that the entry of a final order discharging the JPLs and terminating the BVI provisional liquidations

would require notification to the US Court and further orders regarding the Chapter 15 cases.[2] The steps required would depend on the terms of this Court's discharge order, including any authority retained by the JPLs to complete the handover and related matters.

52. On 18 June 2026, Mr Borrelli appealed the Recognition Order to the US District Court for the Southern District of New York. The Recognition Order has not been stayed, and the appeal, including the JPLs' motion to dismiss it for lack of standing, remains pending.

53. On 2 November 2026, Mr Borrelli and BSF filed a motion in the US Court seeking to terminate the automatic and discretionary relief granted under the Recognition Order. The JPLs' opposition brief is due 12 November 2026 and a hearing on the motion is listed for 19 November 2026.

*England & Wales*

54. On 17 August 2026, the High Court of England and Wales recognised the BVI provisional liquidation of Noble Title Limited, and the JPLs' appointment, under section 426 of the Insolvency Act 1986. I am informed by S&C, and believe, that discharge would require applications to the English Court to discharge or vary the recognition order and release the JPLs' undertakings. The costs of the adjournment application in the recognition proceedings, awarded against Chen Zhi remain to be assessed.

55. Separately, on 30 June 2026, the English Court granted the JPLs possession of the Fenchurch Property, and the JPLs took possession under a writ of possession on 23 July 2026. Directions would be needed on Mr Chen's appeal against the possession order, and on the costs order against Mr Chen in the amount of £50,000 in the Possession Proceedings, which remains unpaid after the deadline for payment.

*Hong Kong – HK Recognition Proceedings*

56. On 27 July 2026, the JPLs applied to the High Court of the Hong Kong Special Administrative Region for recognition and assistance, under a letter of request issued by this Court. Amongst others, the Hong Kong Secretary for Justice opposes the application, as does Mr Borrelli in his claimed capacity as director.

[2] Notification to US law enforcement and regulators, including OFAC and DOJ, would also be required.

57. At a directions hearing on 3 September 2026, the Honourable Madam Justice Linda Chan directed that the Defendants (i.e. *inter alios*, Secretary for Justice and Mr Borrelli) to file and serve affidavit evidence in opposition by 29 October 2026, and the JPLs to file and serve affidavit evidence in reply and an update on the status of the provisional liquidations within 28 days thereafter, and listed the substantive hearing for 12 January 2027.

58. By the Order of the Honourable Madam Justice Linda Chan dated 2 November 2026 it was ordered that, *inter alia*, (i) the HK Recognition Proceedings be stayed until further order of the Court; (ii) the substantive hearing fixed on 12 January 2027 be vacated; and (iii) the JPLs do within 7 days of the making of any substantive order by the BVI Court in the BVI proceedings, inform the Hong Kong Court and all Defendants of the terms of such order and provide details of any consequential hearing, if any.

59. Discharge would require the application to be withdrawn, with costs consequences to be determined, and the Hong Kong Court to be informed.

*Hong Kong – HK Restraint Proceedings*

60. On 20 July 2026, TDW filed a Notice to Act indicating it acts for 15 of the Companies[3] and 3 Hong Kong subsidiaries[4] which are listed as Respondents in the proceedings.

61. On 30 July 2026, the JPLs sought a variation of the Restraint Order on behalf of the HK Respondent Companies such that these companies be permitted to withdraw certain sums of monies from the restrained accounts to meet their ongoing legal and administrative expenses.

62. The Secretary for Justice opposes the JPLs' standing to act in the name of the Companies in Hong Kong and in turn, their capacity as directors of the HK Respondent Companies without first obtaining recognition in Hong Kong. In the light of the Secretary for Justice's opposition, the JPLs' variation application has been adjourned

[3] (i) Star Merit Global Limited; (ii) Southern Heritage Limited; (iii) Prince Global Holdings Limited; (iv) Harmonic State Limited; (v) Prince Global Group Limited; (vi) Noble Title Limited; (vii) Auspicious Tycoon Limited; (viii) Even Sincerity Limited; (ix) Luminous Glow Limited; (x) Oriental Charm Holdings Investment Limited; (xi) United Riches Global Limited; (xii) Giant Victory Holdings Limited; (xiii) Simply Advanced Limited; (xiv) Mighty Divine Limited; and (xv) Bright Team Global Limited (collectively, the "**BVI Respondent Companies**").

[4] (i) Prince Group Holdings Limited (subsidiary of Prince Global Group Limited); (ii) Cheer Capital Limited (subsidiary of Fulam Investment Limited); and (iii) Asia Uni Corporation Limited ("**Asia Uni**") (subsidiary of Simply Advanced Limited) (collectively, "**HK Respondent Companies**"). Some/all of the JPLs are appointed as directors of the HK Respondent Companies by effecting the JPLs' right as a shareholder in the holding company.

pending the determination of the HK Recognition Proceedings. Considering the above, the JPLs do not intend to make any variation application on behalf of the BVI Respondent Companies unless and until the JPLs have obtained recognition in Hong Kong.

63. Therefore, discharge would require the application to be withdrawn, with costs to the Secretary for Justice. Crucially, the JPLs will not have any capacity to raise any opposition or variation on behalf of the BVI and HK Respondent Companies in the HK Restraint Proceedings and any anticipated confiscation proceedings.

*Singapore*

64. The JPLs, through O&B, have sought recognition in the General Division of the High Court of Singapore (and subsequently the SICC) under the UNCITRAL Model Law in respect of the Companies. The recognition proceedings, and Mr Borrelli's stay applications, were heard by the Honourable Justice Christopher Scott Sontchi on 7 October 2026, and judgment was reserved. The SICC subsequently fixed a hearing on 23 November 2026 to deliver its decision. Mr Borrelli has since then asked for that hearing to be re-fixed to 15 December 2026, to which the JPLs did not object, as the position in the BVI is expected to be clearer following the Consequentials Hearing. On 11 November 2026, the SICC re-fixed the hearing to 15 December 2026.

65. In accordance with the SICC's directions, the JPLs prepared a draft protocol for court-to-court communication between the Singapore, BVI, United States and English courts, having regard to the Judicial Insolvency Network ("**JIN**") Guidelines and the JIN Modalities. Whilst the terms of the draft protocol were agreed with Mr Borrelli, and the agreed draft was filed with the SICC on 25 September 2026, Mr Borrelli declined to endorse the consent summons, on the basis that the protocol was no longer necessary. As a result, the consent summons could not be filed by the SICC's deadline. The JPLs disagree with Mr Borrelli's position, as no order has yet been made dismissing the Originating Applications or discharging the Appointment Orders, and direct communication between the courts is likely to be of greater assistance while stay and appeal applications are expected in the BVI. By letter dated 30 October 2026, Mr Borrelli asked the SICC to reconsider its direction. The JPLs await the SICC's directions on the protocol.

66. Subject to any stay of this Court's order dismissing the Originating Applications, discharge would require the recognition applications to be withdrawn or dismissed (or,

if granted, recognition to be terminated), and any protocol then in place to be terminated.

*Spain*

67. On 23 July 2026, the JPLs sought, through CC, recognition of their appointment in respect of Simply Advanced Limited in Spain. By a decree dated 14 October 2026, Commercial Court No. 5 of Madrid accepted jurisdiction and admitted the proceedings, giving the Public Prosecutor 30 days to make submissions. That application would need to be withdrawn.

68. I am advised by S&C, and believe, that the OFAC and OFSI licences, and the JPLs' representations to the European Commission that Mr Chen exercises no control over the Allied Cigar Group, are founded on the removal of Mr Chen and his appointees. The reappointment of directors associated with Mr Chen would undermine the basis of that relief.

**Assets**

69. The JPLs took possession of the Fenchurch Property on 23 July 2026, and the property is under 24-hour security. Insurance cover, initially limited to £10 million, has been increased to £42.5 million. The property is vacant, and the JPLs are in discussions with three former tenants. Other open matters include the removal of the gas meter by Regent Gas under a warrant, and enquiries into a payment of about £500,000 made shortly before sanctions were imposed to a contractor engaged for renovation works. On discharge, possession, security, insurance and dealings with utility and service providers would need to be handed over. I understand that, without sanctions relief, the building could not be properly managed, insured, let or sold.

70. There is a significant risk that, upon the discharge of the JPLs resulting in the Sanctions Licences no longer applying to certain transactions within the Allied Cigar Group (as they will no longer be under the control or at the direction of the JPLs), I anticipate that the issues facing Allied Cigar prior to the JPLs' appointment will return. In particular:

(a) the OFAC, OFSI, Virgin Islands and Cayman Islands sanctions will immediately take full effect against Simply Advanced and Allied Cigar;

(b) all bank accounts across the group would be frozen immediately;

(c) supplier invoices and staff salaries would go unpaid;

(d) the stock manager would cease to provide services and all stock would be warehoused, unable to be sold, and would deteriorate;

(e) the Pre-Insolvency Proceedings would very likely recommence imminently;

(f) the group would face total collapse, with the loss of thousands of jobs across its operations; and

(g) the value of Simply Advanced's interest in Allied Cigar will ultimately be entirely destroyed.

71. A Company holds about 54.8% of the issued share capital of Geotech, a Cayman Islands company listed on the Hong Kong Stock Exchange. Trading in its shares has been suspended since 1 April 2026. A separate Company also holds approximately 55% of Khoon, a second listed company. Its listing was cancelled with effect from 13 October 2026. The JPLs' correspondence with the boards of both companies, and with Campbells, would be handed over.

72. A Company has an interest in Aqara International Limited. Discussions are in progress to secure that investment, which cannot happen without the Sanctions Licenses being in place.

**Books and records**

73. The JPLs and their advisers have obtained information from the following sources:

(a) Vistra, the former registered agent of the Companies, including information concerning the Companies' corporate and regulatory affairs, their dealings with counterparties and their historical communications;

(b) discovery undertaken in the Chapter 15 proceedings;

(c) the conduct of proceedings in multiple jurisdictions;

(d) engagement with banks, service providers and counterparties;

(e) banks holding accounts of certain of the Companies; and

(f) investigations into certain of the Companies' investments.

I respectfully ask the Court to give directions on the handover of this material, because significant parts of it are subject to restrictions. These include:

(g) Any documents and information held pursuant to the sealing order of 29 January 2026 and exchanged under the Protocol;

(h) documents obtained through the Chapter 15 proceedings which are subject to protective orders and conditions;

(i) all legal advice provided to the JPLs which are subject to legal professional privilege; and

(j) documents subject to the record-retention obligations under the OFAC licence (at least 10 years) and the OFSI general licence (at least six years), which require the JPLs to keep copies.

74. The JPLs are also concerned about the disclosure of investigative findings to persons connected with Mr Chen.

**Correspondence with financial institutions**

75. After engaging with seven banking providers, the JPLs opened operating accounts for all 30 Companies with Customers Bancorp, Inc. (Customers Bank) in New York, and discussions with two further providers are ongoing. I believe those accounts were opened in reliance on the JPLs' appointment and sanctions licensing. On discharge, the accounts would need to be closed, or the bank would need to agree to transfer signatory authority, and any balance would need to be accounted for.

76. The JPLs have made enquiries of 178 banks in Hong Kong, 8 in Singapore and 40 in Taiwan. About 25% of the Hong Kong banks and about 10% of the Taiwanese banks have engaged with those enquiries. The banks will need to be notified of the discharge of the JPLs.

77. The JPLs and their advisers notified more than 85 of Allied Cigar Group's banks, insurers, auditors and service providers of the JPLs' appointment and the sanctions authorisations obtained by the JPLs. As a result, frozen accounts were unfrozen, new banking relationships and credit facilities were established for the manufacturing operations in the Dominican Republic and Honduras, and cancelled insurance was reinstated. Allied Cigar Group holds most of its cash with a single Spanish bank. The

CEO of Allied Cigar Group has expressed the firm view that, if the JPLs were removed or the sanctions authorisations revoked, the Cigar Group would in all likelihood have to commence insolvency proceedings in Spain. On that basis I believe there is a material risk that, upon the JPLs notifying Allied Cigar Group's banks of their discharge, that bank would again freeze or terminate its facilities.

78. As set out above, the Sanctions Licences and related relief were granted to the JPLs specifically, in their capacity as officers of this Court and provisional liquidators of the Companies. On discharge, that relief would cease to have effect over the Companies or their assets. Recognition of the JPLs in the United States and England and Wales would fall away. By contrast, the Restraint Orders described above would remain in place.

79. The potential effect of the removal of the Sanctions Licences is confirmed in a letter dated 5 November 2026 from Berkeley Square Solicitors, Mr Chen's English solicitors, to PCBB, concerning Noble Title Limited and Fenchurch Property (the "**BSS Letter**") (**pages 51 to 52**). The BSS Letter concerns the outstanding costs order for £50,000 made against Mr Chen in favour of Noble Title Limited in the Possession Proceedings on 20 July 2026 (a copy of that order is at **pages 53 to 55**). In the BSS Letter, Mr Chen's solicitors state that "*Mr Chen has not refused to satisfy the costs order. Steps have been taken to establish a lawful mechanism for payment, including seeking the necessary sanctions authorisation from OFSI*." I understand this to be an admission that Mr Chen, through his solicitors, has applied to OFSI for a licence to authorise that payment, but that as at the date of that letter (being nearly 4 months from the date of the Order) no licence has been granted. The licence has been sought for a payment which the JPLs consider is permitted under the OFSI Prince Group general licence in respect of legal costs, and for a relatively modest sum. If even a licence for such a payment has not been obtained, I believe this illustrates how severe the sanctions restrictions bearing on Mr Chen are, and how they clearly prohibit ordinary transactions. Once the JPLs are discharged, I do not believe the companies could carry out the payments and dealings needed to conduct their affairs.

80. The JPLs therefore consider that, without a carefully sequenced transition, there is a significant risk of value destruction, particularly in respect of the Allied Cigar Group and the Fenchurch Property, to the detriment of creditors and other stakeholders.

## I. CONCLUSION

81. For the reasons set out above, and on the premise that the Court orders the Companies to pay the JPLs' remuneration, costs and expenses, I respectfully ask this Honourable Court to make the Draft Order.

**SWORN BY JAMES KENNETH DRURY** )

At *George Town, Cayman Islands* )

on the *11* day of *November* 2026 )

**JAMES KENNETH DRURY**

Before me:

**Commissioner of Oaths**

Naoki Montoya
Notary Public in and for the Cayman Islands
My commission expires January 31st, 2027
Date: 11 November 2026

**Schedule 1**

**(the "Companies" and each a "Company")**

| | **Company** | **High Court Case No.** |
|---|---|---|
| **The Campbells Companies** | | |
| 1. | Auspicious Tycoon Limited | BVIHC (COM) 2026/0002 |
| 2. | Bright Team Global Limited | BVIHC (COM) 2026/0001 |
| 3. | Delightful Thrive Limited | BVIHC (COM) 2026/0004 |
| 4. | Even Sincerity Limited | BVIHC (COM) 2026/0005 |
| 5. | Fulam Investment Limited | BVIHC (COM) 2026/0006 |
| 6. | Giant Victory Holdings Limited | BVIHC (COM) 2026/0007 |
| 7. | Golden Ascend International Limited | BVIHC (COM) 2026/0008 |
| 8. | Harmonic State Limited | BVIHC (COM) 2026/0009 |
| 9. | Luminous Glow Limited | BVIHC (COM) 2026/0012 |
| 10. | Mighty Divine Limited | BVIHC (COM) 2026/0013 |
| 11. | Noble Title Limited | BVIHC (COM) 2026/0014 |
| 12. | Oriental Charm Holdings Investment Limited | BVIHC (COM) 2026/0015 |
| 13. | Pacific Charm Holdings Investment Limited | BVIHC (COM) 2026/0016 |
| 14. | Praise Marble Limited | BVIHC (COM) 2026/0018 |
| 15. | Prince Global Group Limited | BVIHC (COM) 2026/0017 |
| 16. | Prince Global Holdings Limited | BVIHC (COM) 2026/0019 |
| 17. | Respectful Steed Limited | BVIHC (COM) 2026/0020 |
| 18. | Retain Prosper Limited | BVIHC (COM) 2026/0021 |
| 19. | Simply Advanced Limited | BVIHC (COM) 2026/0023 |
| 20. | Southern Heritage Limited | BVIHC (COM) 2026/0024 |
| 21. | Star Merit Global Limited | BVIHC (COM) 2026/0025 |
| 22. | Starry Bloom Limited | BVIHC (COM) 2026/0026 |
| 23. | Sure Tycoon Limited | BVIHC (COM) 2026/0027 |
| 24. | Towards Sunshine Limited | BVIHC (COM) 2026/0029 |
| 25. | United Riches Global Limited | BVIHC (COM) 2026/0030 |
| **The K&K Companies** | | |
| 26. | Amber Hill Ventures Limited | BVIHC (COM) 2026/0003 |
| 27. | Lateral Bridge Global Limited | BVIHC (COM) 2026/0011 |
| **The unrepresented Companies** | | |
| 28. | Jumbo High Limited | BVIHC (COM) 2026/0010 |
| 29. | Robust Harmony Limited | BVIHC (COM) 2026/0022 |
| 30. | Sword River Limited | BVIHC (COM) 2026/0028 |

## Schedule 2

## Directorships

| Company | Company Number | Address | Current Directors | Date of Appointment |
|---|---|---|---|---|
| Cheer Capital Limited | 51220263 | Hong Kong | Interpath Director Services Limited<br>James Kenneth Drury<br>David John Standish | 16 March 2026 |
| Prince Group Holdings Limited | 69148067 | Hong Kong | Interpath Director Services Limited<br>James Kenneth Drury<br>David John Standish | 13 March 2026 |
| Golden Ascend (HK) Limited | 69545499 | Hong Kong | Interpath Director Services Limited<br>James Kenneth Drury<br>David John Standish | 13 March 2026 |
| Asia Uni Corporation Limited | 71820237 | Hong Kong | Paul Lewis Pretlove<br>David John Standish<br>James Kenneth Drury<br>Fouad Fahmi Darwish<br>Ravinder Singh Thakran | 12 February 2026 |
| Supreme Future Limited | 75760451 | Hong Kong | Paul Lewis Pretlove<br>David John Standish<br>James Kenneth Drury | 13 February 2026 |
| Supreme Treasure International Limited | 2035807 | BVI | Paul Lewis Pretlove<br>David John Standish<br>James Kenneth Drury<br>Fouad Fahmi Darwish<br>Ravinder Singh Thakran | 12 February 2026 |
| Allied Cigar GP Limited | 48641 | Cayman Islands | Paul Lewis Pretlove<br>David John Standish<br>James Kenneth Drury<br>Fouad Fahmi Darwish<br>Ravinder Singh Thakran | 3 February 2026 |
| Tabacalera S.L.U. | B86319746 | Spain | Paul Lewis Pretlove<br>David John Standish | 24 March 2026 |
| ITI Cigars, S.L.U. | B83761171 | Spain | Paul Lewis Pretlove<br>David John Standish | 24 March 2026 |
| Tabacalera Brands S.L.U. | B81452732 | Spain | Paul Lewis Pretlove<br>David John Standish | 24 March 2026 |
| Allied Cigar Corporation, S.L.U. | B88560826 | Spain | Paul Lewis Pretlove<br>David John Standish | 24 March 2026 |
| Cigar Holdings 2026 Limited | 2216073 | BVI | James Kenneth Drury<br>Paul Lewis Pretlove<br>David John Standish | 14 August 2026 |

**IN THE EASTERN CARIBBEAN SUPREME COURT**
**IN THE HIGH COURT OF JUSTICE**
**BRITISH VIRGIN ISLANDS**
**COMMERCIAL DIVISION**

**CLAIM NOS BVIHC (COM) 2026/0001 TO 2026/0030**

**IN THE MATTER OF SURE TYCOON LIMITED AND TWENTY-NINE OTHER COMPANIES**

**AND IN THE MATTER OF THE INSOLVENCY ACT, 2003**

**BETWEEN:**

**THE ATTORNEY GENERAL**

**Applicant**

and

**1. AMBER HILL VENTURES LIMITED**
**2. AUSPICIOUS TYCOON LIMITED**
**3. BRIGHT TEAM GLOBAL LIMITED**
**4. DELIGHTFUL THRIVE LIMITED**
**5. EVEN SINCERITY LIMITED**
**6. FULAM INVESTMENT LIMITED**
**7. GIANT VICTORY HOLDINGS LIMITED**
**8. GOLDEN ASCEND INTERNATIONAL LIMITED**
**9. HARMONIC STATE LIMITED**
**10. JUMBO HIGH LIMITED**
**11. LATERAL BRIDGE GLOBAL LIMITED**
**12. LUMINOUS GLOW LIMITED**
**13. MIGHTY DIVINE LIMITED**
**14. NOBLE TITLE LIMITED**
**15. ORIENTAL CHARM HOLDINGS INVESTMENT LIMITED**
**16. PACIFIC CHARM HOLDINGS INVESTMENT LIMITED**
**17. PRAISE MARBLE LIMITED**
**18. PRINCE GLOBAL GROUP LIMITED**
**19. PRINCE GLOBAL HOLDINGS LIMITED**
**20. RESPECTFUL STEED LIMITED**
**21. RETAIN PROSPER LIMITED**
**22. ROBUST HARMONY LIMITED**
**23. SIMPLY ADVANCED LIMITED**
**24. SOUTHERN HERITAGE LIMITED**
**25. STAR MERIT GLOBAL LIMITED**
**26. STARRY BLOOM LIMITED**
**27. SURE TYCOON LIMITED**
**28. SWORD RIVER LIMITED**
**29. TOWARDS SUNSHINE LIMITED**
**30. UNITED RICHES GLOBAL LIMITED**

**Respondents**

**FOURTH AFFIDAVIT OF JAMES KENNETH DRURY**

*- The JPLs' Application for directions in relation to handover, discharge and the JPLs' remuneration -*

**Walkers**

171 Main Street
PO Box 92
Road Town
Tortola
British Virgin Islands

Tel: +1 (284) 494 2204

Fax: 284 494 6683

**Ref: AC/TH/L16832**

**Legal practitioners for the Joint Provisional Liquidators**