Matthew L. Schwartz
Peter M. Skinner
Gordon Z. Novod
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards
New York, New York 10001
Telephone: (212) 446-2300

Dan G. Boyle
**BOIES SCHILLER FLEXNER LLP**
2029 Century Park East
Los Angeles, California 90067
Telephone: (213) 995-5732

*Counsel to Cosimo Borrelli in his capacity as the sole director of each of the Borrelli Debtors, and to Boies Schiller Flexner LLP*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>PRINCE GLOBAL HOLDINGS LIMITED *et al.*,[1]<br><br>Debtors in Foreign Proceedings. | Chapter 15<br>Case No. 26-10769 (KYP)<br>(Jointly Administered)<br><br>Re ECF Nos. 90, 114, 115, 120, 121<br><br>Bankruptcy Appeal<br>Case No. 26 Civ. 05279 (VEC) |

# REPLY IN SUPPORT OF COSIMO BORRELLI & BOIES SCHILLER FLEXNER LLP'S MOTION TO TERMINATE THE AUTOMATIC AND DISCRETIONARY RELIEF GRANTED TO THE JOINT PROVISIONAL LIQUIDATORS IN THE RECOGNITION ORDER

[1] The Debtors in these Chapter 15 Cases are incorporated in the British Virgin Islands and maintain their registered address at Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands, VG1110. A complete list of the Debtors and their company numbers may be found at ECF No. 2-1. Notwithstanding the case caption, Cosimo Borrelli, in his capacity as the sole director of each of the Borrelli Debtors, disputes that each of these entities is the subject of a "foreign proceeding" within the meaning of 11 U.S.C. § 101(23).

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ... 1

BACKGROUND ... 2

ARGUMENT ... 3

I. The Joint Provisional Liquidators' Affirmative Authority Should Be Terminated ... 3

II. The Appeal Did Not Divest this Court of Jurisdiction to Modify the Recognition Order ... 6

III. Mr. Borrelli and BSF Have Standing to Move to Terminate the JPLs' Affirmative Relief ... 9

A. Mr. Borrelli Has Standing ... 10

B. BSF Has Standing ... 11

C. The Court May on Its Own Motion Grant the Remainder of the Relief Sought .. 12

CONCLUSION ... 13

# TABLE OF AUTHORITIES

**Cases**

*Carroll v. Trump*,
88 F.4th 418 (2d Cir. 2023) .......... 6

*Estate of Ungar v. Palestinian Auth.*,
332 F. App'x 643 (2d Cir. 2009) .......... 10

*Horne v. Flores*,
557 U.S. 433 (2009) .......... 10

*In re Ascentra Holdings, Inc.*,
657 B.R. 339 (Bankr. S.D.N.Y. 2023) .......... 11

*In re Bd. of Directors of Hopewell Int'l Ins. Ltd.*,
258 B.R. 580 (Bankr. S.D.N.Y. 2001) .......... 6

*In re Celsius Network LLC*,
656 B.R. 327 (Bankr. S.D.N.Y. 2023) .......... 7, 8

*In re Chevron Corp.*,
749 F. Supp. 2d 170 (S.D.N.Y. 2010) .......... 8

*In re Petition of Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*,
272 B.R. 396 (Bankr. S.D.N.Y. 2002) .......... 9

*In re Prince Glob. Holdings Ltd.*,
No. 1:26-cv-05279 (S.D.N.Y. Oct. 23, 2026) .......... 8

*In re Sonnax Indus., Inc.*,
907 F.2d 1280 (2d Cir. 1990) .......... 5, 6

*In re Teligent, Inc.*,
459 B.R. 190 (Bankr. S.D.N.Y. 2011) .......... 10

*Lago Agrio Pls. v. Chevron Corp.*,
409 F. App'x 393 (2d Cir. 2010) .......... 8

*Larson v. Valente*,
456 U.S. 228 (1982) .......... 11

*United States v. Rodgers*,
101 F.3d 247 (2d Cir. 1996) .......... 6

*United States v. Vazquez*,
145 F.3d 74 (2d Cir. 1998) .......... 10

**Statutes**

11 U.S.C. § 101 .......... i

11 U.S.C. § 1517 .......... 5

11 U.S.C. § 1522 .......... 11, 13

**Rules**

Fed. R. Bankr. P. 8007 .......................................................................................................... 7
Fed. R. Bankr. P. 8008 .......................................................................................................... 8, 9

Cosimo Borrelli, in his capacity as the sole director of each of twenty-five of the Debtors,[2] and Boies Schiller Flexner LLP ("BSF") jointly reply in further support of their *Motion to Terminate the Automatic and Discretionary Relief Granted to the Joint Provisional Liquidators in the Recognition Order* (the "Motion") [ECF No. 114] and respectfully state as follows[3]:

## PRELIMINARY STATEMENT

1. The crux of the JPLs' opposition is that the Recognition Order "protects the Debtors' U.S. property" and that Mr. Borrelli and BSF should not be permitted to "dismantle those protections" while they "remain in office." [ECF No. 120 at 5]. This is wrong for three reasons.

2. First, there are no U.S. assets to protect. That was the Motion's principal point:

> The Borrelli Debtors have no U.S. operations and no U.S. assets; there is nothing to transfer, whether "in a sensible orderly fashion" or otherwise. . . . There is thus no reason for the JPLs to retain affirmative powers under the Recognition Order in the United States.

[ECF No. 114 ¶ 25]. The JPLs do not respond at all, much less identify any U.S. assets or operations that warrant protection going forward.

3. Second, the Recognition Order's primary purpose was not protection, but investigation. The BVI Court granted the JPLs investigatory powers on a temporary, provisional basis. They sought and obtained recognition of those provisional proceedings here primarily to obtain U.S. discovery powers to aid in their investigations. The JPLs have articulated no need for

---

[2] Mr. Borrelli is the sole director of each of Prince Global Holdings Limited, Auspicious Tycoon Limited, Bright Team Global Limited, Delightful Thrive Limited, Even Sincerity Limited, Fulam Investment Limited, Giant Victory Holdings Limited, Golden Ascend International Limited, Harmonic State Limited, Luminous Glow Limited, Mighty Divine Limited, Noble Title Limited, Oriental Charm Holdings Investment Limited, Pacific Charm Holdings Investment Limited, Praise Marble Limited, Prince Global Group Limited, Respectful Steed Limited, Retain Prosper Limited, Simply Advanced Limited, Southern Heritage Limited, Star Merit Global Limited, Starry Bloom Limited, Sure Tycoon Limited, Towards Sunshine Limited, and United Riches Global Limited (together, the "**Borrelli Debtors**").

[3] Capitalized terms used but not defined herein have the meanings ascribed to them in Mr. Borrelli's *Corrected Objection to Verified Petition Under Chapter 15 for Recognition of Foreign Main Proceedings and Related Relief* [ECF No. 68], and Mr. Borrelli and BSF's *Motion to Terminate the Automatic and Discretionary Relief Granted to the Joint Provisional Liquidators in the Recognition Order* [ECF No. 114].

those investigatory powers while the BVI Court implements the dismissal of the BVI AG's applications.

4. Third, Mr. Borrelli and BSF seek not to end protections this Court granted to the Borrelli Debtors, but to end the JPLs' unnecessary use of affirmative powers while their discharge is finalized. The need for this is obvious. The JPLs admit that they continue to pursue U.S. discovery pursuant to the Recognition Order. They have refused to agree to any limits on their activities going forward. And we now know—via recent applications in the BVI—the staggering cost of their activities, which they are seeking to bill to the Debtors: $54 million globally, $24 million for their U.S. counsel alone, and counting. It is past time to put a stop to the JPLs' accumulation of fees and costs. Because they will not act consistent with their fiduciary duties and do so themselves, this Court should do it for them.

## BACKGROUND

5. The JPLs' U.S.-based discovery continues. After filing this Motion, Mr. Borrelli sought confirmation that the JPLs had ceased discovery and were no longer incurring fees and expenses in connection with the Recognition Order. They responded that their "only *material* expenses on pending work" were related to this Motion, conceding that they continue to spend money in connection with the Recognition Order. [Fourth Skinner Decl. Ex. 1] (E-Mail from P. Skinner, BSF, to A. Dietderich, S&C, dated Nov. 5, 2026) (emphasis added). That at least some of this money is being spent on discovery is confirmed by the JPLs' statement in their opposition that they "have limited"—but not eliminated—"their U.S. discovery efforts." [ECF No. 120 at 13]. The JPLs also refused to stipulate that they would cease work going forward in the United States to avoid accruing further expenses. [Fourth Skinner Decl. Ex. 1 ¶ 3].

6. On November 11, 2026, the JPLs applied to the BVI Court for directions for the filing and determination of (1) a Remuneration Application to approve their fees and expenses, including those of their lawyers in all jurisdictions, and (2) an Allocation Application so that the remuneration will be paid from the assets of one or more of the Debtors, with the Debtors jointly and severally liable. [Fourth Skinner Decl. Ex. 2 ¶ 1(a)] (Ordinary Application of the JPLs in the BVI Court, dated Nov. 11, 2026). The fees are astronomical: "The JPLs and their advisors have incurred costs and expenses of approximately US$54,259,406.92 for the period 9 January 2026 to 31 October 2026 . . . , which figure will necessarily increase." *See id.* ¶ 3. *See also* [Fourth Skinner Decl. Ex. 3 ¶¶ 12–13] (Fourth Affidavit of James Kenneth Drury, dated Nov. 11, 2026) (reflecting $54,535,011.29 in costs and expenses from Jan. 9, 2026, to Oct. 31, 2026). Their U.S. counsel, Sullivan & Cromwell, has alone incurred $24.41 million in fees and disbursements through September 30, 2026, which is roughly $2.8 million per month. *See* [Fourth Skinner Decl. Ex. 3 ¶ 13]. The JPLs claim that they "may retain out of the company's assets such sums or assets as are, or may be, required for meeting his or her remuneration." [Fourth Skinner Decl. Ex. 2 ¶ 4]. And they seek an order that their discharge is conditional on their fees having been paid and that they may continue to incur fees until their discharge. *See id.* ¶ 10.

## ARGUMENT

### I. The Joint Provisional Liquidators' Affirmative Authority Should Be Terminated

7. The JPLs do not identify any present need for the powers granted to them under the Recognition Order. Nor could they, as there are no U.S. assets or operations to protect pending their discharge. This Court should eliminate affirmative authority under the Recognition Order that the JPLs no longer need but refuse to relinquish of their own accord.

8. The JPLs maintain that because "the BVI Orders remain unchanged," they are "obliged to carry out their duties as court-appointed officeholders," and they should not be denied "the protections this Court provided to support that responsibility." [ECF No. 120 at 9]. But as far as we can tell, the only thing the JPLs have been doing pursuant to the Recognition Order is pursuing U.S. discovery at the Debtors' expense. They have identified nothing that needs to be protected in the U.S. or any authority they need to exercise pursuant to the Recognition Order pending their final discharge in the BVI. In short, since the JPLs will not agree to stand down in the United States, this Court should make them do so.

9. The JPLs' argument that Justice Wallbank left the provisional liquidation orders in place is also incomplete. [ECF No. 120 at 18–19]. Justice Wallbank reminded the JPLs that, as "professional people who are used to working without any skin in any game," they know the outcome of his decision and the "risks" of not "coming to court for guidance" about their remaining conduct. *See* [ECF No. 112-1 at 29:11–22]. Despite this warning, the JPLs act here as if nothing at all has changed. But the JPLs' "continuing obligations" were made clear by Justice Wallbank: to ensure the "orderly implementation" of the October 21 decision. [ECF No. 112-1 at 15:8–11]. And nothing more. They do not need the affirmative authority granted to them under the Recognition Order to effectuate the transfer of the companies back to Mr. Borrelli's control.

10. Indeed, none of the statutory and discretionary relief in the Recognition Order aids the "orderly implementation" of the October 21 decision or transfer of the companies to their boards. *See id.* Maintaining administration or realization of the Borrelli Debtors' property and businesses in the United States (¶¶ 16–18) is not necessary because they have no property or businesses in the United States. Discovery authority (¶ 19) at this point only serves to increase the JPLs' fees. The JPLs have pointed to no prior BVI Court orders for which comity need be granted

(¶ 20). And the extraordinary injunction restraining all persons or entities within the Court's jurisdiction from acting on behalf of similarly named entities to the Borrelli Debtors within or outside the United States (¶ 21) serves no purpose at all. *See* Recognition Order ¶¶ 16–21.

11. The JPLs' concerns that removing their statutory and discretionary relief "would invite competing assertions of authority over the same companies" are unfounded. [ECF No. 120 at 20]. Mr. Borrelli, as the sole director of the Borrelli Debtors, will not take control of the companies until the JPLs are discharged. [ECF No. 114 at 17 n.8].[4] Until then, the BVI Orders remain in force, and the JPLs can seek relief in the BVI if they believe anyone is improperly asserting corporate authority over the companies. Likewise, the Recognition Order will remain in place, and they can seek relief here if corporate authority is somehow asserted in the United States. But the JPLs should not themselves be acting in the United States, where the Debtors have no assets or operations, pending their discharge.

12. Finally, lifting the automatic stay is within "the discretion of the bankruptcy judge," *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990) (citation and internal quotation marks omitted), and is permissible where the grounds for recognition "have ceased to exist." 11 U.S.C. § 1517(d). That is the case here. The "impact of the stay on the parties and the balance of harms" requires lifting the automatic stay because the BVI Court has stated that the BVI AG adduced no

[4] The JPLs make much in their Opposition of the allegations against Mr. Chen. [ECF No. 120 at 10–11]. But those allegations are not evidence, were not enough for the BVI Court to wind up the companies, and are seriously flawed for the reasons explained in the opening brief. In any event, the companies will be turned over to Mr. Borrelli's control, not Mr. Chen. Mr. Borrelli is a "chartered accountant with more than 35 years of experience working on behalf of and advising lenders and financiers, shareholders, distressed companies, secured and unsecured creditors, investors, courts and other stakeholders on restructuring, insolvency and related corporate advisory arrangements." [ECF No. 49-2 ¶ 5]. He regularly receives "both out of court appointments as receiver, independent financial advisor and director and, often, as an officer of and under the supervision of courts as provisional, official liquidator and court appointed receiver in various jurisdictions." *Id.* ¶ 7. His "mandate as independent director shares substantially the same objective as the primary stated objective of the provisional liquidators, namely to maintain the status quo and to preserve the assets of the companies in question pending the resolution of any underlying issues and with commensurate reporting." *Id.* ¶ 11.

admissible evidence in support of the BVI Proceedings and that they will be dismissed. *See In re Sonnax Indus., Inc.*, 907 F.2d at 1286; *see also* [ECF No. 112-1 at 12:8–14, 13:17–19]. Put simply, where, as here, there is nothing to stay, there is no reason to keep the stay in place pending the JPLs' final discharge.[5]

## II. The Appeal Did Not Divest this Court of Jurisdiction to Modify the Recognition Order

13. The JPLs argue that the pending appeal before the District Court divests this Court of jurisdiction to consider the Motion and that the Court only "retains authority to enforce the Recognition Order and preserve the status quo pending appeal." [ECF No. 120 at 17–18]. But as the JPLs concede, this Court can enforce the Recognition Order while the appeal is pending. And under that same authority, the Court can also modify the order.

14. Filing a notice of appeal does not divest this Court of jurisdiction to enforce or implement the Recognition Order or to decide issues collateral to those on appeal. *See In re Bd. of Directors of Hopewell Int'l Ins. Ltd.*, 258 B.R. 580, 583 (Bankr. S.D.N.Y. 2001) (noting divestiture is "not over any matters that may arise in the matter"). The divestiture rule is "not a per se rule." *Carroll v. Trump*, 88 F.4th 418, 433 (2d Cir. 2023). Instead, it is "designed to avoid confusion or waste of time resulting from having the same issues before two courts at the same time." *Id.*; *see also United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir. 1996) (acknowledging the "superficial attractiveness" of a per se rule, but instead instructing that "application of the divestiture rule must be faithful to the principle of judicial economy from which it springs").

---

5 We recognize this argument cuts both ways, and the Court could follow the same logic to find that there is no harm in maintaining the stay where it is having no practical effect. But this is not the just and equitable result given the lack of evidence supporting the BVI Proceedings.

15. Moreover, the Bankruptcy Rules contemplate that this Court will continue to administer these proceedings while the appeal is pending. For example, this Court retains the authority to stay the Recognition Order and to suspend or modify an injunction pending the appeal. *See* Fed. R. Bankr. P. 8007(a)(1)(A) & (C). It may also "issue any appropriate order to protect the rights of all parties in interest" while the appeal is pending. *See id.* 8007(e)(2).

16. For these reasons, the Motion is properly before the Court while the appeal is pending. Mr. Borrelli and BSF do not ask the Court to revisit whether recognition was proper or whether Mr. Borrelli had standing to object to recognition, which are the core issues on appeal. Rather, they seek to limit the JPLs' affirmative authority pending dismissal of the underlying BVI Proceedings—an issue that is squarely collateral to those on appeal.

17. Bankruptcy courts permit the kind of limited modification sought here while an appeal is pending. In *In re Celsius Network LLC*, for example, then-Chief Judge Glenn approved revised wind-down arrangements while appeals from a confirmation order remained pending, expressly holding that the Court retained jurisdiction even if the requested relief modified the plan and confirmation order. 656 B.R. 327, 349 (Bankr. S.D.N.Y. 2023). As Judge Glenn explained, "[c]ourts that have considered the effect of the divestiture of a bankruptcy court's jurisdiction to modify a confirmation order that has been appealed have held that a bankruptcy court may enter an order modifying a plan where such modifications do not impact the issues on appeal." *Id.* (citing cases).

18. The same principle applies here. Mr. Borrelli and BSF seek to limit the JPLs' prospective authority following the BVI Court's announcement that the underlying proceedings will be dismissed. That relief leaves recognition intact and addresses whether the JPLs should continue exercising affirmative powers in the United States in light of subsequent developments.

It does not require this Court to revisit whether recognition was proper or whether Mr. Borrelli had standing to object to recognition—the questions presented in the pending appeal. As in *Celsius*, this Court can grant the requested relief while leaving the appellate issues for the District Court to resolve.

19. Judicial economy also favors this Court's consideration of the Motion. The District Court extended Mr. Borrelli's reply deadline to January 4, 2027, to allow time for the BVI Court to issue its decision, which will likely moot the appeal. *See In re Prince Glob. Holdings Ltd.*, No. 1:26-cv-05279, ECF No. 27 (S.D.N.Y. Oct. 23, 2026). It is more practicable for this Court to police the scope of its order while the appeal is still being briefed than it is to ask the District Court to review on an emergency basis statutory and discretionary relief that is no longer warranted due to changed circumstances. "The interest in judicial economy that underlies the divestiture of jurisdiction rule would be disserved by any contrary conclusion." *See In re Chevron Corp.*, 749 F. Supp. 2d 170, 180 (S.D.N.Y. 2010), *aff'd sub nom. Lago Agrio Pls. v. Chevron Corp.*, 409 F. App'x 393 (2d Cir. 2010).

20. The JPLs also argue that "[w]ithout authorization from the District Court," this Court may only deny the Motion. *See* [ECF No. 120 at 18] (citing Fed. R. Bankr. P. 8008). But Rule 8008 permits this Court to do more than "deny the Motion." Even if the Court concludes that the appeal divests it of jurisdiction (which it does not), it may indicate whether it would grant the Motion on remand under Rule 8008.

21. When a timely motion seeks relief the bankruptcy court lacks authority to grant because of a pending appeal, the court may: (1) defer considering the motion; (2) deny the motion; (3) state that it would grant the motion if the court where the appeal is pending remands for that purpose; or (4) state that the motion raises a substantial issue. *See* Fed. R. Bankr. P. 8008(a). If the

bankruptcy court states that it would grant the motion or that the motion raises a substantial issue, the district court hearing the appeal may remand for further proceedings on notice from the movant. *See id.* 8008(b) & (c). As a matter of "judicial economy, it is appropriate that a lower court have the limited power to consider a motion to . . . modify its order without first requiring a remand from the appellate court." *In re Petition of Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*, 272 B.R. 396, 404 (Bankr. S.D.N.Y. 2002).

22. This Court need not await authorization from the District Court to consider the Motion and state that it would grant it or conclude that it raises a substantial issue. *See* Fed. R. Bankr. P. 8008(a)(3) & (4). The JPLs should not be permitted to exercise affirmative authority in the United States at the Debtors' expense when that authority serves no necessary handover function. To do so will only increase the JPLs' costs—costs that have already ballooned to more than $54 million—without advancing an orderly transition of the companies. At a minimum, these circumstances warrant a statement that the Court would grant the Motion on remand or that the Motion raises a substantial issue.

## III. Mr. Borrelli and BSF Have Standing to Move to Terminate the JPLs' Affirmative Relief

23. Both Movants have standing because they seek relief from provisions of this Court's Order that directly affect them. Mr. Borrelli is subject to discovery under Paragraph 19 and the injunction imposed under Paragraph 21. BSF is subject to discovery under Paragraph 19. Their Motion rests on their own interests and does not depend on Mr. Borrelli's authority to act for the Debtors. Whether Mr. Borrelli and BSF must also identify specific injuries they have suffered under the remaining paragraphs granting the JPLs affirmative relief (Recognition Order ¶¶ 16, 17, 18, 20, and 22) is beside the point, as the Court can and should grant that relief on its own motion.

**A. Mr. Borrelli Has Standing**

24. Mr. Borrelli has standing because he is directly affected by paragraphs 19 and 21 of the Recognition Order.

25. With respect to paragraph 19, the name on the subpoena does not settle whose interests it affects. [ECF No. 120 at 16]. BSF acts as Mr. Borrelli's agent, and the JPLs' subpoena to BSF demands documents and communications concerning Mr. Borrelli's appointment and arrangements for his representation. [Third Skinner Decl. ¶ 1]; [ECF No. 115-1 at 24, 32]. Mr. Borrelli is directly impacted by a subpoena to his attorneys that implicates his own rights or privileges. *Estate of Ungar v. Palestinian Auth.*, 332 F. App'x 643, 645 (2d Cir. 2009) (summary order) (finding standing because the client claimed privilege in materials subpoenaed from its attorneys); *In re Teligent, Inc.*, 459 B.R. 190, 199 (Bankr. S.D.N.Y. 2011) (citing *Estate of Ungar* for the rule that "a non-party has standing to challenge the discovery of materials in which that non-party asserts a privilege").

26. With respect to paragraph 21, the JPLs do not dispute that Mr. Borrelli is bound by this Court's injunction. He therefore has a personal stake in seeking relief from that command. *See Horne v. Flores*, 557 U.S. 433, 445–46 (2009) (finding a personal stake where a named defendant remained subject to the challenged injunction); *United States v. Vazquez*, 145 F.3d 74, 83 (2d Cir. 1998) (recognizing a "present injury" from an order requiring court permission before disseminating videotapes).

27. The JPLs respond that the Recognition Opinion concluded that Mr. Borrelli lacked authority to object to recognition on the Debtors' behalf and has not identified a personal right supporting his objection. *See* [ECF No. 120 at 14–15]. But again, this Motion identifies a different injury: Paragraph 21 restricts Mr. Borrelli's own conduct. Recognition Order ¶ 21 (binding "[a]ll

persons and entities subject to this Court's jurisdiction," without limiting its application to validly appointed directors). As we pointed out previously, and as the JPLs do not dispute, the JPLs have already relied on that portion of the Recognition Order to argue that Mr. Borrelli is barred from participating in other foreign recognition proceedings. [ECF No. 114 ¶ 32]. Mr. Borrelli therefore has standing to challenge the Recognition Order's injunctive relief without claiming the Debtors' property or corporate powers as his own. In short, terminating Paragraph 21 will remove a judicial restraint on Mr. Borrelli without restoring any corporate authority withheld by the BVI Orders. That relief will redress a discrete injury; Mr. Borrelli need not show that a favorable decision would "relieve his *every* injury." *Larson v. Valente*, 456 U.S. 228, 244 n.15 (1982).

**B. BSF Has Standing**

28. The JPLs concede that BSF "may challenge the discovery authorization and, where necessary to resolve that challenge, its legal predicates." [ECF No. 120 at 16]. That concession concerns the principal affirmative power at issue: Paragraph 19, which authorizes the JPLs to use this Court's discovery machinery "without further order of this Court." Recognition Order ¶ 19. The JPLs exercised that authority to serve BSF with their subpoena dated August 24, 2026. [Third Skinner Decl. ¶ 3 & Ex. 1]. BSF is therefore an entity directly affected by the relief granted under § 1521(a)(4), and this Court has already recognized that discovery targets have standing to object to specific requests. [ECF No. 89 at 11]. BSF may accordingly seek modification or termination of the discovery authority exercised against it. *See* 11 U.S.C. § 1522(c); *In re Ascentra Holdings, Inc.*, 657 B.R. 339, 351–53 (Bankr. S.D.N.Y. 2023) (holding that a party claiming ownership of restrained funds had standing to challenge both the restraint and the recognition on which it depended).

29. BSF's interest in that relief persists because the subpoena remains outstanding. The JPLs claim they have "limited their U.S. discovery efforts," [ECF No. 120 at 13], and are "not seeking further discovery from BSF," *id.* at 17. But they have not withdrawn the subpoena served on BSF despite the firm's express request. [Third Skinner Decl. ¶ 5]. The subpoena describes its requests as "continuing in nature" and seeks supplemental production to the extent required by the applicable rules. [ECF No. 115-1 at 23] (Instruction 14). BSF therefore has ongoing obligations under the subpoena that the JPLs have not withdrawn and standing to move to challenge the relief granted under Paragraph 19.

30. The breadth of the Motion does not defeat BSF's direct challenge to Paragraph 19. The JPLs' authorities, *see* [ECF No. 120 at 16–17], require standing for each claim and form of relief; they do not require every requested modification to stand or fall together. Indeed, the JPLs acknowledge that "[a]ny warranted relief can be directed to that discovery." *Id.* at 13. The Court should therefore terminate the JPLs' continuing discovery authority regardless of its conclusions about the Motion's other requests.

**C. The Court May on Its Own Motion Grant the Remainder of the Relief Sought**

31. Questions about the scope of the JPLs' exercise of their affirmative relief should not defeat this Court's review of the remainder of the Motion. Put simply, we do not know who has been directly injured by the JPLs' exercise of their authority under the remaining paragraphs in the Recognition Order because they will not tell us—or even the Court—what they have been up to. But there is no question that they do not need to exercise affirmative authority in the United States while their discharge is pending. And there is also no question that they will not agree to stand down voluntarily while their discharge is pending. Thus, even if the Court concludes that Movants' injuries support only narrower relief directed to paragraphs 19 and 21, it can and should

review the other discretionary relief granted under paragraphs 16, 17, 18, 20, and 22 on its own motion. *See* 11 U.S.C. § 1522(c) (permitting the Court, "at its own motion," to modify or terminate relief granted under § 1519 or § 1521).

32. The JPLs correctly note that "Section 1522(a) permits termination of discretionary relief only if the Debtors and other interested entities remain sufficiently protected." [ECF No. 120 at 17]. As already noted, however, the Debtors have no assets or operations in the United States to protect. And the relief sought would not terminate protections but rather end the JPLs' ability to continue exercising authority in the United States at the Debtors' expense. Particularly given their staggering costs to date, the Court should rein the JPLs in while their discharge in the BVI is pending.

## **CONCLUSION**

For the foregoing reasons, Mr. Borrelli and BSF respectfully request that this Court terminate the automatic and discretionary relief granted in the Order Granting Recognition of Foreign Main Proceedings and Related Relief, [ECF No. 90], including paragraphs 16, 17, 18, 19, 20, 21, and 22.

Dated: New York, New York
November 16, 2026

Respectfully Submitted,

**BOIES SCHILLER FLEXNER LLP**

*/s/ Peter M. Skinner*
Matthew L. Schwartz
Peter M. Skinner
Gordon Z. Novod
55 Hudson Yards
New York, New York 10001
Telephone: (212) 446-2300
mlschwartz@bsfllp.com
pskinner@bsfllp.com
gnovod@bsfllp.com

Dan G. Boyle
2029 Century Park East
Los Angeles, California 90067
Telephone: (213) 995-5732
dboyle@bsfllp.com

*Counsel to Cosimo Borrelli, in his capacity as the sole director of each of the Borrelli Debtors, and to Boies Schiller Flexner LLP*